1  DONALD F. ZIMMER, JR. (SBN 112279)
   fzimmer@kslaw.com
2  CHERYL A. SABNIS (SBN 224323)
   csabnis@kslaw.com
3  KING & SPALDING LLP
   101 Second Street – Suite 2300
4  San Francisco, CA 94105
   Telephone:  (415) 318-1200
5  Facsimile:  (415) 318-1300
6
7  SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
   sweingaertner@kslaw.com
8  ROBERT F. PERRY
   rperry@kslaw.com
9  BRUCE W. BABER (*Pro Hac Vice*)
   bbaber@kslaw.com
10 KING & SPALDING LLP
   1185 Avenue of the Americas
11 New York, NY 10036-4003
   Telephone:  (212) 556-2100
12 Facsimile:  (212) 556-2222
13
14 Attorneys for Defendant
   GOOGLE INC.
15
16              **UNITED STATES DISTRICT COURT**
17              **NORTHERN DISTRICT OF CALIFORNIA**
18              **SAN FRANCISCO DIVISION**

19 ORACLE AMERICA, INC.              Case No. 3:10-cv-03561-WHA

20           Plaintiff,             Honorable Judge William H. Alsup

21      v.                          **GOOGLE INC.'S ANSWER TO**
                                    **PLAINTIFF'S AMENDED COMPLAINT**
22 GOOGLE INC.                      **FOR PATENT AND COPYRIGHT**
                                    **INFRINGEMENT AND AMENDED**
23           Defendant.             **COUNTERCLAIMS**

24                                  **JURY TRIAL DEMANDED**
25
26
27
28

## GOOGLE INC.'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT FOR PATENT AND COPYRIGHT INFRINGEMENT AND AMENDED COUNTERCLAIMS

Defendant Google Inc. ("Google") answers the "Amended Complaint For Patent And Copyright Infringement" (the "Amended Complaint") filed on October 27, 2010 by plaintiff Oracle America, Inc. ("Oracle") as follows:

### The Parties

1.      Google is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1, and therefore denies them.

2.      Google admits that it is a corporation organized under the laws of the State of Delaware with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google admits that it does business in the Northern District of California. Google denies any remaining allegations of paragraph 2.

### Jurisdiction and Venue

3.      Google admits that this action purports to invoke the patent and copyright laws of the United States, Titles 35 and 17, United States Code.  Google admits that 28 U.S.C. §§ 1331 and 1338(a) confer jurisdiction as to claims arising under the patent laws and claims arising under the laws of the United States upon this Court.  Google denies any remaining allegations of paragraph 3.

4.      Google admits that venue is proper in the Northern District of California.  Google denies any remaining allegations of paragraph 4.

5.      Google admits that this Court has personal jurisdiction over it.  Google admits that it has conducted and does conduct business within the State of California and within the Northern District of California.  Google denies any remaining allegations of paragraph 5.

6.      Google admits that it, directly or through intermediaries, makes, distributes, offers for sale or license, sells or licenses, and/or advertises its products and services in the United States, in the State of California, and the Northern District of California.  Google denies any remaining allegations of paragraph 6.

**Intradistrict Assignment**

7.     Google admits the allegations of paragraph 7.

**Background**

8.     Google is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies them.

9.     Google is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies them.

10.     Google admits that what appear to be copies of U.S. patents numbers 6,125,447, 6,192,476, 5,966,702, 7,426,720, RE38,104, 6,910,205 and 6,061,520 are attached to Oracle's Amended Complaint as exhibits A through G.  Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10, and therefore denies them.

11.     Google admits that what appear to be copies of certificates of registration numbers TX 6-196-514, TX 6-066-538 and TX 6-143-306 issued by the U.S. Copyright Office (the "Asserted Copyrights") are attached to Oracle's Amended Complaint as exhibit H.  Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 11, and therefore denies them.

12.     Google admits that the Android Platform is an open-source software stack for mobile devices that includes an operating system, middleware and applications, and that a feature of Android is the Dalvik virtual machine ("VM"), which executes files in the Dalvik Executable (.dex) format, and can run classes compiled by a Java language compiler that have been converted into the .dex format by the "dx" tool included with Android.  Google admits that the Open Handset Alliance, a group of 78 technology and mobile companies that includes Google, makes the information and source code for Android, including the Dalvik VM and the Android software development kit ("SDK"), openly and freely available for download at http://source.android.com and http://developer.android.com.  Google denies any remaining allegations of paragraph 12.

13.     Google denies the allegations of paragraph 13, and specifically denies that Google has infringed or is liable for infringement of any valid and enforceable claim of the patents identified in paragraph 13.

14.     Google denies the allegations of paragraph 14.

15.     Google denies the allegations of paragraph 15, and specifically denies that Google has infringed or is liable for infringement of any valid and enforceable claim of any patents asserted in this action by Oracle.

## Count I

### (Alleged Infringement of the '447 Patent)

16.     Google incorporates by reference its responses to the allegations of paragraphs 1 though 15 above as its response to paragraph 16 of Oracle's Amended Complaint.

17.     Google admits that U.S. Patent No. 6,125,447 ("the '447 patent"), on its face, is entitled "Protection Domains To Provide Security In A Computer System" and bears an issuance date of September 26, 2000.  Google further admits that what appears to be a copy of the '447 patent was attached to Oracle's Amended Complaint as Exhibit A.  Google is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 17, and therefore denies them.

18.     Google denies the allegations of paragraph 18, and specifically denies that Google has infringed or is liable for infringement of any valid and enforceable claim of the '447 patent.

## Count II

### (Alleged Infringement of the '476 Patent)

19.     Google incorporates by reference its responses to the allegations of paragraphs 1 though 15 above as its response to paragraph 19 of Oracle's Amended Complaint.

20.     Google admits that U.S. Patent No. 6,192,476 ("the '476 patent"), on its face, is entitled "Controlling Access To A Resource."  Google denies that the '476 patent bears an issuance date of February 20, 2000, and states that the '476 patent bears an issuance date of February 20, 2001.  Google further admits that what appears to be a copy of the '476 patent was

3

attached to Oracle's Amended Complaint as Exhibit B.  Google is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 20, and therefore denies them.

21.     Google denies the allegations of paragraph 21, and specifically denies that Google has infringed or is liable for infringement of any valid and enforceable claim of the '476 patent.

### Count III

### (Alleged Infringement of the '702 Patent)

22.     Google incorporates by reference its responses to the allegations of paragraphs 1 though 15 above as its response to paragraph 22 of Oracle's Amended Complaint.

23.     Google admits that U.S. Patent No. 5,966,702 ("the '702 patent"), on its face, is entitled "Method And Apparatus For Preprocessing And Packaging Class Files" and bears an issuance date of October 12, 1999.  Google further admits that what appears to be a copy of the '702 patent was attached to Oracle's Amended Complaint as Exhibit C.  Google is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 23, and therefore denies them.

24.     Google denies the allegations of paragraph 24, and specifically denies that Google has infringed or is liable for infringement of any valid and enforceable claim of the '702 patent.

### Count IV

### (Alleged Infringement of the '720 Patent)

25.     Google incorporates by reference its responses to the allegations of paragraphs 1 though 15 above as its response to paragraph 25 of Oracle's Amended Complaint.

26.     Google admits that U.S. Patent No. 7,426,720 ("the '720 patent"), on its face, is entitled "System And Method For Dynamic Preloading Of Classes Through Memory Space Cloning Of A Master Runtime Process" and bears an issuance date of September 16, 2008.  Google further admits that what appears to be a copy of the '720 patent was attached to Oracle's Amended Complaint as Exhibit D.  Google is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 26, and therefore denies

them.

27.     Google denies the allegations of paragraph 27, and specifically denies that Google has infringed or is liable for infringement of any valid and enforceable claim of the '720 patent.

**Count V**

**(Alleged Infringement of the '104 Reissue Patent)**

28.     Google incorporates by reference its responses to the allegations of paragraphs 1 though 15 above as its response to paragraph 28 of Oracle's Amended Complaint.

29.     Google denies that U.S. Patent No. RE38,104 ("the '104 reissue patent") is entitled "Method And Apparatus For Resolving Data References In Generate Code."  Google admits that the '104 reissue patent, on its face, is entitled "Method And Apparatus For Resolving Data References In Generated Code" and bears an issuance date of April 29, 2003.  Google further admits that what appears to be a copy of the '104 reissue patent was attached to Oracle's Amended Complaint as Exhibit E.  Google is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 29, and therefore denies them.

30.     Google denies the allegations of paragraph 30, and specifically denies that Google has infringed or is liable for infringement of any valid and enforceable claim of the '104 reissue patent.

**Count VI**

**(Alleged Infringement of the '205 Patent)**

31.     Google incorporates by reference its responses to the allegations of paragraphs 1 though 15 above as its response to paragraph 31 of Oracle's Amended Complaint.

32.     Google admits that U.S. Patent No. 6,910,205 ("the '205 patent"), on its face, is entitled "Interpreting Functions Utilizing A Hybrid Of Virtual And Native Machine Instructions" and bears an issuance date of June 21, 2005.  Google further admits that what appears to be a copy of the '205 patent was attached to Oracle's Amended Complaint as Exhibit F.  Google is without knowledge or information sufficient to form a belief as to the truth of any remaining

allegations of paragraph 32, and therefore denies them.

33.     Google denies the allegations of paragraph 33, and specifically denies that Google has infringed or is liable for infringement of any valid and enforceable claim of the '205 patent.

**Count VII**

**(Alleged Infringement of the '520 Patent)**

34.     Google incorporates by reference its responses to the allegations of paragraphs 1 though 15 above as its response to paragraph 34 of Oracle's Amended Complaint.

35.     Google admits that U.S. Patent No. 6,061,520 ("the '520 patent"), on its face, is entitled "Method And System For Performing Static Initialization" and bears an issuance date of May 9, 2000.  Google further admits that what appears to be a copy of the '520 patent was attached to Oracle's Amended Complaint as Exhibit G.  Google is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 35, and therefore denies them.

36.     Google denies the allegations of paragraph 36, and specifically denies that Google has infringed or is liable for infringement of any valid and enforceable claim of the '520 patent.

**Count VIII**

**(Alleged Copyright Infringement)**

37.     Google incorporates by reference its responses to the allegations of paragraphs 1 though 15 above as its response to paragraph 37 of Oracle's Amended Complaint.

38.     Google is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38, and therefore denies them.

39.     Google denies the allegations of paragraph 39, and specifically denies that Google has infringed or is liable for any infringement of any valid and enforceable copyrights or copyright rights of Oracle.

40.     Google denies the allegations of paragraph 40, and specifically denies that Google has infringed or is liable for any infringement of any valid and enforceable copyrights or

copyright rights of Oracle.   Google further denies that the document attached to Oracle's Amended Complaint as Exhibit J contains a true and correct copy of a class file from either Android or "Oracle America's Java."  Google states further that Oracle has redacted or deleted from the materials shown in Exhibit J both expressive material and copyright headers that appear in the actual materials, which are significant elements and features of the files in question.

41.     Google admits that Google has made the Android Platform available to companies interested in the mobile device market, including the members of the Open Handset Alliance.  Google denies the remaining allegations of paragraph 41, and specifically denies that Google has infringed or is liable for any infringement of any valid and enforceable copyrights or copyright rights of Oracle.

42.     Google denies the allegations of paragraph 42, and specifically denies that Google has infringed or is liable for any infringement of any valid and enforceable copyrights or copyright rights of Oracle.

43.     Google denies the allegations of paragraph 43, and specifically denies that Google has infringed or is liable for any infringement of any valid and enforceable copyrights or copyright rights of Oracle.

44.     Google denies the allegations of paragraph 44, and specifically denies that Google has infringed or is liable for any infringement of any valid and enforceable copyrights or copyright rights of Oracle.

45.     Google denies the allegations of paragraph 45.

46.     Google denies the allegations of paragraph 46.

47.     Google denies the allegations of paragraph 47.

**Prayer For Relief**

These paragraphs set forth the statement of relief requested by Oracle to which no response is required.  Google denies that Oracle is entitled to any of the requested relief and

7

denies any allegations contained in the Prayer For Relief to which a response is required.

## Jury Demand

Oracle's demand that all issues be determined by a jury trial does not state any allegation, and Google is not required to respond.  To the extent that any allegations are included in the demand, Google denies these allegations.

Google denies each and every allegation of Oracle's Amended Complaint not specifically admitted or otherwise responded to above.  Google specifically denies that Google has infringed or is liable for infringement of any valid and enforceable patents of Oracle.  Google further denies that Google has infringed or is liable for infringement of any valid and enforceable copyrights or copyright rights of Oracle.  Google further specifically denies that Oracle is entitled to any relief whatsoever of any kind against Google as a result of any act of Google or any person or entity acting on behalf of Google.

## Defenses

### First Defense – No Patent Infringement

1.      Google does not infringe, has not infringed (directly, contributorily, or by inducement) and is not liable for infringement of any valid and enforceable claim of U.S. Reissue Patent No. RE38,104 ("the '104 reissue patent"), and U.S. Patent Nos. 5,966,702 ("the '702 patent"), 6,061,520 ("the '520 patent"), 6,125,447 ("the '447 patent"), 6,192,476 ("the '476 patent"), 6,910,205 ("the '205 patent"), and 7,426,720 ("the '720 patent") (collectively "the Patents-in-Suit").

2.      No claim of the Patents-in-Suit can be properly construed to cover any of Google's products.

### Second Defense – Patent Invalidity

3.      Each of the Patents-in-Suit is invalid under 35 U.S.C. § 101 because one or more claims are directed to abstract ideas or other non-statutory subject matter.

8

4.      Each of the Patents-in-Suit is invalid because it fails to meet the "conditions for patentability" of 35 USC §§ 101, 102, 103, and/or 112 because the alleged invention thereof lacks utility; is taught by, suggested by, and/or, obvious in view of, the prior art; and/or is not adequately supported by the written description of the patented invention.

5.      The '104 reissue patent is invalid under 35 U.S.C. §§ 251 and 252 on the grounds that the reissue patent enlarged the scope of one or more claims of the original patent more than two years from the grant of the original patent.

### Third Defense – Patent Unenforceability (Waiver, Estoppel, Laches)

6.      Each of the Patents-in-Suit is unenforceable because, as is explained more fully in Google's counterclaims below, Oracle's delay in bringing suit was unreasonable and inexcusable, and Google has suffered material prejudice due to the delay.

7.      Each of the Patents-in-Suit is unenforceable because, as is explained more fully in Google's counterclaims below, upon information and belief, the statements and actions of Oracle and its predecessor Sun Microsystems, Inc. ("Sun") were such that it was reasonable to infer that Oracle did not intend to enforce its patents, Google relied on the misleading conduct, and Google will be materially prejudiced if Oracle is allowed to proceed with its claim.

8.      Each of the Patents-in-Suit is unenforceable because, as is explained more fully in Google's counterclaims below, upon information and belief, Oracle knowingly waived any right it may have to enforce the Patents-in-Suit.

9.      The '104 reissue patent is unenforceable because the applicant exercised unreasonable delay and neglect in bringing forward claims that were broader than those in the original application by waiting over four years to file a broadening reissue and prosecuting the reissue application for almost nine years after the original patent issued.

### Fourth Defense – Substantial Non-Infringing Uses (Patent)

10.      Any and all products or actions accused of infringement have substantial uses that do not infringe and do not induce or contribute to the alleged infringement of the asserted claims of the Patents-in-Suit.

9

**Fifth Defense – Limitation On Patent Damages**

11.    Oracle's claim for damages, if any, against Google for alleged infringement of the Patents-in-Suit are limited by 35 U.S.C. §§ 286, 287 and 288.

**Sixth Defense – Misuse**

12.    Oracle's claims against Google for alleged infringement of the Patents-in-Suit are barred by the doctrine of misuse because, as is explained more fully in Google's counterclaims below, upon information and belief, Oracle and its predecessor Sun have attempted to impermissibly expand the scope of the Patents-in-Suit by requiring licensees to license items not covered by Oracle's alleged intellectual property in order to receive a license to Oracle's alleged intellectual property.

**Seventh Defense – Exceptional Case**

13.    This is an exceptional case under 35 U.S.C. § 285, and accordingly, Google is entitled to its attorneys' fees incurred in defending against Counts I through VII of Oracle's Amended Complaint.

**Eighth Defense – Use By The United States**

14.    Oracle's claims for relief against Google are barred by 35 U.S.C. § 1498 in that, upon information and belief, the accused subject matter is used or manufactured by or for the United States, including but not limited to the Department of Defense.

**Ninth Defense – No Copyright Infringement**

15.    Google has not infringed, does not infringe (either directly or indirectly), and is not liable for infringement of any valid copyright or copyright rights of Oracle, including, without limitation, any copyright rights in the works that are the subject of the Asserted Copyrights.

**Tenth Defense – Elements Not Protected by Copyright**

16.    Oracle's copyright claims are barred to the extent that Oracle claims rights to elements of Oracle software or other works that are functional, are  not original, or are otherwise not protectable by copyright and/or are not protected by the Asserted Copyrights.

**Eleventh Defense – Copyright Unenforceability (Waiver, Estoppel, Laches)**

17.     Oracle's Asserted Copyrights are unenforceable because, as is explained more fully in Google's counterclaims below,  Oracle's delay in bringing the suit was unreasonable and inexcusable, and Google suffered material prejudice due to the delay.

18.     Oracle's Asserted Copyrights are unenforceable because, as is explained more fully in Google's counterclaims below, upon information and belief, Oracle's and Sun's statements and actions were such that it was reasonable to infer that Oracle did not intend to enforce its copyrights, Google relied on the misleading conduct, and Google will be materially prejudiced if Oracle is allowed to proceed with its claim.

19.     Oracle's Asserted Copyrights are unenforceable because, as is explained more fully in Google's counterclaims below, upon information and belief, Oracle knowingly waived any right it may have to enforce its Asserted Copyrights.

**Twelfth Defense – Fair Use**

20.     Oracle's claims for copyright infringement are barred by the doctrine of fair use pursuant to 17 U.S.C. § 107 in view of the nature of the works asserted by Oracle and covered by the Asserted Copyrights, the amount (if any) and substantiality of the portions of such works used by Google in relation to the works as a whole, the purpose and character of any use thereof made by Google, and the effect, if any, of such use on the potential market for the works.

**Thirteenth Defense – De Minimis Copying**

21.     Oracle's claims for copyright infringement are barred by the doctrine of de minimis copying, as any protectable portions of the works that are the subject of the Asserted Copyrights used by Google have been de minimis.

**Fourteenth Defense – No Intent to Induce Copyright Infringement**

22.     Google has not engaged in purposeful, culpable expression or conduct designed or intended to result in others infringing Oracle's Asserted Copyrights and thus is not liable under Oracle's inducement claims.

**Fifteenth Defense – Independent Creation**

23.     The Android Platform, including the Android operating system, the Android Software Development Kit and the Dalvik Virtual Machine, was created independently and without reference to any works protected by the Asserted Copyrights.

**Sixteenth Defense – Third Party Liability**

24.     Any use in the Android Platform of any protected elements of the works that are the subject of the Asserted Copyrights was made by third parties without the knowledge of Google, and Google is not liable for such use.

**Seventeenth Defense – License**

25.     Upon information and belief, users of the Android Platform, including, without limitation, manufacturers and software developers, are licensed to use the Patents-in-Suit and the copyrights in the works that are the subject of the Asserted Copyrights.

**Eighteenth Defense – Implied License**

26.     Upon information and belief, as is explained more fully in Google's counterclaims below, Oracle's and Sun's statements and actions were such that it was reasonable to infer that users of the Android Platform, including, without limitation, manufacturers and software developers, had permission to use the Patents-in-Suit and the Asserted Copyrights.

**Nineteenth Defense – Unclean Hands**

27.     Oracle's claims against Google are barred because, upon information and belief, Oracle has come to the Court with unclean hands due to its practice of requiring licensees of its purportedly open software to pay for licenses to items not covered by Oracle's alleged intellectual property in order to receive a license under Oracle's alleged intellectual property.

**Twentieth Defense – No Injunctive Relief**

28.     Oracle has not suffered any irreparable injury, Oracle has an adequate remedy at law, and injunctive relief would be contrary to the public interest, and Oracle is not entitled to injunctive relief.

## AMENDED COUNTERCLAIMS

As and for its amended counterclaims against plaintiff Oracle America, Inc., Google respectfully shows as follows:

### The Parties

1.      Google Inc. ("Google") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

2.      Upon information and belief, Oracle America, Inc. ("Oracle") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 500 Oracle Parkway, Redwood City, California 94065.  Upon information and belief, Oracle is a wholly-owned subsidiary of Oracle Corporation ("Oracle Corp."), a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 500 Oracle Parkway, Redwood City, California 94065.

### Jurisdiction and Venue

3.      Subject to Google's defenses and denials, Google alleges that this Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338(a), 1367, 2201, and 2202, and venue for these Counterclaims is proper in this district.

4.      This Court has personal jurisdiction over Oracle.

### Factual Background

**A.      The Java Platform and Programming Language**

1.      Upon information and belief, the Java programming language and the Java platform – a software platform that includes a runtime environment that enables programs written in the Java programming language to execute – were developed by Sun Microsystems, Inc. ("Sun") in the mid-1990s.  While they are distinct elements, the term "Java" is commonly used to refer to the programming language, the runtime environment, as well as the platform.

2.      The Java programming language was designed to use a syntax that was similar to well-known, existing object-oriented languages at the time, such as C++.  Instead of compiling programs into machine-executable code that could only be run on a particular computer system, the Java platform implemented a well-known technique wherein programs written in the Java programming language were compiled into intermediate instructions called "bytecode" that could only be executed on a computer that implements a Java "virtual machine."  The virtual machine, typically a program, receives the bytecode and can convert it into instructions appropriate for the particular computer upon which the virtual machine was running, and then execute those instructions on that computer.  So long as there is a Java virtual machine available for a given computer system, any program compiled from the Java programming language into Java bytecode could theoretically run on the Java virtual machine for that computer.  Sun's Java virtual machines implement a stack-oriented architecture, where data and parameters are loaded onto data structures in the computer's memory called "stacks," and instructions are then executed using the data and parameters from the stack.

3.      Upon information and belief, the Java platform comprises many different components, including utilities to assist with the development of source code written in the Java programming language, a Java compiler that converts Java programming language statements to Java bytecode, a Java runtime environment consisting of Java virtual machines written to operate on a number of different computer platforms and a set of standard class libraries that can be accessed and reused by Java platform applications to perform common software functions, such as writing to files or sorting data.

4.      Upon information and belief, Sun developed and distributed the Java Standard Edition ("Java SE"), along with other editions of the Java platform.  Each of these editions of the Java platform contain a development environment, a Java compiler, Java virtual machine, a set of standard class libraries, and documentation files describing the functionality and operation of the specific Java platform edition.  Though there are many similarities between each of these editions, one of the significant differences is that each edition provides a different set of standard

class libraries based on the types of applications and environment at which each edition is targeted.

5.      Upon information and belief, in response to the urging of open-source advocates and in the hopes of increasing the number of Java users, Sun officially announced that Java would become open-source.  In 2006 and 2007, Sun released some but not all of the source code for Java SE (as well as the other editions of the Java Platform) under the terms of the GNU Public License, version 2 ("GPLv2") open source license.  This open-source aspect of Java contributed to its widespread acceptance among software developers.

6.      Upon information and belief, Sun also released the specifications for Sun's Java platform, including Sun's Java virtual machine, under a free-of-charge license that can be found at                 http://java.sun.com/docs/books/jls/third_edition/html/jcopyright.html                 and http://java.sun.com/docs/books/jvms/second_edition/html/Copyright.doc.html, respectively.  The license allows developers to create "clean room" implementations of Sun's Java specifications. If those implementations demonstrate compatibility with the Java specification, then Sun would provide a license for any of its intellectual property needed to practice the specification, including patent rights and copyrights.  One example of a "clean room" implementation of Sun's Java is Apache Harmony, developed by the Apache Software Foundation.  The only way to demonstrate compatibility with the Java specification is by meeting all of the requirements of Sun's Technology Compatibility Kit ("TCK") for a particular edition of Sun's Java. Importantly, however, TCKs were only available from Sun, initially were not available as open source, were provided solely at Sun's discretion, and included several restrictions, such as additional licensing terms and fees.  In essence, although developers were free to develop a competing Java virtual machine, they could not openly obtain an important component needed to freely benefit from Sun's purported open-sourcing of Java.

7.      Sun came under significant criticism from members of the open source community, including Oracle Corp., for its refusal to fully open source Java.  For example, in August of 2006, the Apache Software Foundation ("ASF"), a not-for-profit corporation that

provides organizational, legal, and financial support for open source software projects, attempted to obtain a TCK from Sun to verify Apache Harmony's compatibility with Java.  Although Sun eventually offered to open source the TCK for Java SE, Sun included field of use ("FOU") restrictions that limited the circumstances under which Apache Harmony users could use the software that the ASF created, such as preventing the TCK from being executed on mobile devices.  In April of 2007, the ASF wrote an open letter to Sun asking for either a TCK license without FOU restrictions, or an explanation as to why Sun was "protect[ing] portions of Sun's commercial Java business at the expense of ASF's open software" and violating "Sun's public promise that any Sun-led specification [such as Java] would be fully implementable and distributable as open source/free software."  However, Sun continued to refuse the ASF's requests.

8.     Oracle Corp., as a member (along with Google and ASF) of the Executive Committee ("EC") of the Java Community Process ("JCP"), the organization tasked with managing Java standards, voiced the same concerns regarding Sun's refusal to fully open source the Java platform.  Later that year, in December of 2007, during a JCP EC meeting, Oracle Corp. proposed that the JCP should provide "a new, simplified IPR [intellectual property rights] Policy that permits the broadest number of implementations."  At that same meeting, BEA Systems – which at the time was in negotiations that resulted in Oracle Corp. purchasing BEA – proposed a resolution that TCK licenses would be "offered without field of use restrictions . . . enabling the TCK to be used by organizations including Apache."  Oracle Corp. voted in favor of the resolution.

9.     Just over a year later, in February of 2009, Oracle Corp. reiterated its position on the open-source community's expectation of a fully open Java platform when it supported a motion that "TCK licenses must not be used to discriminate against or restrict compatible implementations of Java specifications by including field of use restrictions on the tested implementations or otherwise.  Licenses containing such limitations do not meet the requirements of the JSPA, the agreement under which the JCP operates, and violate the

1    expectations of the Java community that JCP specs can be openly implemented."

2         10.    Only two months later, in April of 2009, Oracle Corp. announced that it would be

3    acquiring Sun (renamed Oracle America after the acquisition was completed in January of 2010).

4    Since that time, and directly contrary to Oracle Corp.'s public actions and statements, as well as

5    its own proposals as an executive member of the JCP, Oracle Corp. and Sun (now Oracle

6    America) have ignored the open source community's requests to fully open-source the Java

7    platform.

8    **B.    The Open Handset Alliance and Development of the Android Platform**

9         11.    The Android Platform ("Android") is a freely-distributed, open-source software

10   stack for mobile devices that includes an operating system, middleware and key mobile

11   applications.  Android was released in 2007 by a group of seventy-eight technology and mobile

12   companies known as the Open Handset Alliance ("OHA") who have come together to accelerate

13   innovation in mobile devices and offer consumers a richer, less expensive, and better mobile

14   experience.  The members of the OHA, which include Google, mobile operators, handset

15   manufacturers, semiconductor companies, software companies and commercialization

16   companies, are each strongly committed to greater openness in the mobile ecosystem.

17        12.    The OHA believes that an open platform – a platform that provides equal access

18   to any who would choose to develop software for the platform – is essential to allow wireless

19   carriers, handset manufacturers, software developers and others to more rapidly bring innovative

20   ideas to the marketplace and to better respond to consumers' demands.  An open platform also

21   ensures that there is no threat of a central point of failure, so that no single industry player can

22   restrict or control the innovations of any other.  The objective of Android is an open and shared

23   product that each contributor can freely tailor and customize.  The members of the OHA,

24   including Google, have invested heavily in Android by contributing significant intellectual

25   property as well as economic and engineering resources to the development and maintenance of

26   Android.

27

28

13.     The Android platform includes, among other things, the Android Software Development Kit ("SDK") and the Dalvik Virtual Machine ("VM").  The Dalvik VM relies on a version of the Linux kernel for core system services such as security, memory management, process management, network stack, and driver model, and as an abstraction layer between the hardware and the rest of the software stack.  The core class libraries of the Dalvik VM incorporate a subset of Apache Harmony, a clean room, open source implementation of Java from the Apache Software Foundation.  Other than the Harmony libraries, the Android platform – including, without limitation, the Dalvik VM – was independently developed by the OHA.

14.     The Android Open Source Project ("AOSP") is tasked with the maintenance and further development of Android, including incorporating code and submissions from the community of developers who contribute to Android and the tens of thousands of developers who create applications for Android.  The goal of the Android Open Source Project (AOSP) is to ensure that the open-source Android software is implemented as widely and consistently as possible, to the benefit of the developer and user communities, and others involved in Android.  Google, along with several corporate partners and volunteer technology enthusiasts, contributes resources, including engineers and financial support, to the AOSP.

15.     The information and source code for the Android Platform is openly and freely available for developers, manufacturers, or any member of the general public to download at http://source.android.com  and  http://developer.android.com.   The majority of the Android software is made available under the permissive open source license terms of the Apache Software License, 2.0 ("Apache 2.0").  Certain aspects of Android, such as the Linux kernel patches, are made available under the GPLv2 license.

16.     Developers are free to modify the source code of the Android platform to fit their particular purpose.  Android's permissive open-source license allows a developer to adopt the Android platform and freely build software and enhancements on top of the platform, while maintaining the flexibility to release the software and enhancements to the public under either an open source license, or alternatively under a commercial license, which would protect the

developer's proprietary investment in Android.

17.    Google does not receive any payment, fee, royalty, or other remuneration for its contributions to the Android Platform.

**C.    Android and the Java Programming Language**

18.    Developers for Android can create software applications for Android-based mobile devices using various programming languages, including the Java programming language.  For use on the Android platform, these software applications are converted into a set of intermediate instructions – i.e., Dalvik "bytecode," typically stored in files in the Dalvik Executable (.dex) format – with the "dx" tool included with the Android platform.  These .dex files can be executed on any mobile device with a Dalvik VM.  The Dalvik VM implements a register-based architecture (distinct from a stack-oriented architecture), where data and parameters are loaded directly into virtual machine registers.  The Dalvik VM and .dex format are optimized for battery-powered mobile devices that are more limited in terms of computing and memory resources than desktop computers.

19.    Although software applications for the Android platform may be written in the Java programming language, the Dalvik bytecode is distinct and different from Java bytecode.  The Dalvik VM is not a Java VM.

20.    The Android Platform has been a success in the mobile handset industry.  Although Android was a latecomer to the smartphone market – first becoming generally available in late 2008 – there are currently approximately ninety different Android-based mobile devices made by over twenty different manufacturers available for purchase in dozens of countries.  Indeed, approximately 200,000 Android-based handsets are activated every day on over fifty different wireless carriers.  Android Market – a store where developers can sell applications ("apps") that they create for Android-based devices – has over 80,000 apps available for download.

21.    Android's popularity has proven to be a catalyst for the Java open source community and the increased use of the Java programming language.  Indeed, when Android was

first released in November of 2007, Sun CEO Jonathan Schwartz confirmed this fact, congratulating Android and stating that "needless to say, Google and the Open Handset Alliance just strapped another set of rockets to the community's momentum – and to the vision defining opportunity across our (and other) planets."

22.     The success of the Android platform is due in large part to its open nature, which benefits the entire open source community of consumers, developers, manufacturers, and mobile operators.  Android's permissive open source license allows developers and manufacturers to innovate rapidly under their own terms while simultaneously protecting their proprietary intellectual property, if so desired.  Because Android provides open and comprehensive access to handset capabilities and developer tools, developers experience increased productivity and are better able to optimize their Android applications.  Mobile operators and handset manufacturers benefit from the innovation, and have great flexibility to customize Android to differentiate their product lines.  Handset manufacturers also benefit from lower software costs and faster time-to-market for handsets.  Finally, and consistent with the mission of the Open Handset Alliance, all of the benefits to developers, manufacturers, and mobile operators are passed on to consumers who receive more innovative and cost-effective mobile devices and services, and a rich portfolio of applications, that more rapidly respond to their needs and demands.

**E.     Oracle's Amended Complaint**

23.     In its Amended Complaint, Oracle asserts that Google, by way of the Android Platform and certain of its components, infringes U.S. Reissue Patent No. RE38,104 ("the '104 reissue patent"), and U.S. Patent Nos. 5,966,702 ("the '702 patent"), 6,061,520 ("the '520 patent"), 6,125,447 ("the '447 patent"), 6,192,476 ("the '476 patent"), 6,910,205 ("the '205 patent"), and 7,426,720 ("the '720 patent") (collectively "the Patents-in-Suit").  Oracle also asserts that Google infringes and induces Android users and developers to infringe the copyrights in the works that are the subject of the copyright registrations that are attached to Oracle's Amended Complaint as Exhibit H (the "Asserted Copyrights").

24.     Google does not infringe any valid and enforceable claim of the Patents-in-Suit, either directly or indirectly, and does not infringe any valid copyright rights of Oracle, either directly or indirectly.

25.     Consequently, there is an actual case and controversy between the parties over the patents-in-suit.

## COUNT ONE

### Declaratory Judgment of Non-Infringement of U.S. Reissue Patent No. RE 38,104

26.     Google restates and incorporates by reference its allegations in paragraphs 1-25 of its Counterclaims.

27.     An actual case or controversy exists between Google and Oracle as to whether the '104 reissue patent is infringed by Google.

28.     A judicial declaration is necessary and appropriate so that Google may ascertain its rights regarding the '104 reissue patent.

29.     Google has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '104 reissue patent.

30.     This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT TWO

### Declaratory Judgment of Invalidity of U.S. Reissue Patent No. RE 38,104

31.     Google restates and incorporates by reference its allegations in paragraphs 1–30 of its Counterclaims.

32.     An actual case or controversy exists between Google and Oracle as to whether the '104 reissue patent is invalid.

33.     A judicial declaration is necessary and appropriate so that Google may ascertain its rights as to whether the '104 reissue patent is invalid.

34.     The '104 reissue patent is invalid because it fails to meet the "conditions for patentability" of 35 USC §§ 101, 102, 103, and/or 112 because the alleged invention thereof

lacks utility; is taught by, suggested by, and/or, obvious in view of, the prior art; and/or is not adequately supported by the written description of the patented invention, and no claim of the '104 reissue patent can be properly construed to cover any of Google's products.

35.    The '104 reissue patent is invalid under 35 U.S.C. §§ 251 and 252 on the grounds that the reissue patent enlarged the scope of one or more claims of the original patent more than two years from the grant of the original patent.

36.    This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

**COUNT THREE**

**Declaratory Judgment of Non-Infringement of U.S. Patent No. 5,966,702**

37.    Google restates and incorporates by reference its allegations in paragraphs 1-36 of its Counterclaims.

38.    An actual case or controversy exists between Google and Oracle as to whether the '702 patent is infringed by Google.

39.    A judicial declaration is necessary and appropriate so that Google may ascertain its rights regarding the '702 patent.

40.    Google has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '702 patent.

41.    This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

**COUNT FOUR**

**Declaratory Judgment of Invalidity of U.S. Patent No. 5,966,702**

42.    Google restates and incorporates by reference its allegations in paragraphs 1–41 of its Counterclaims.

43.    An actual case or controversy exists between Google and Oracle as to whether the '702 patent is invalid.

22

44.    A judicial declaration is necessary and appropriate so that Google may ascertain its rights as to whether the '702 patent is invalid.

45.    The '702 patent is invalid because it fails to meet the "conditions for patentability" of 35 USC §§ 101, 102, 103, and/or 112 because the alleged invention thereof lacks utility; is taught by, suggested by, and/or, obvious in view of, the prior art; and/or is not adequately supported by the written description of the patented invention, and no claim of the '702 patent can be properly construed to cover any of Google's products.

46.    This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT FIVE

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,061,520

47.    Google restates and incorporates by reference its allegations in paragraphs 1-46 of its Counterclaims.

48.    An actual case or controversy exists between Google and Oracle as to whether the '520 patent is infringed by Google.

49.    A judicial declaration is necessary and appropriate so that Google may ascertain its rights regarding the '520 patent.

50.    Google has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '520 patent.

51.    This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT SIX

### Declaratory Judgment of Invalidity of U.S. Patent No. 6,061,520

52.    Google restates and incorporates by reference its allegations in paragraphs 1–51 of its Counterclaims.

53.    An actual case or controversy exists between Google and Oracle as to whether the '520 patent is invalid.

23

54.     A judicial declaration is necessary and appropriate so that Google may ascertain its rights as to whether the '520 patent is invalid.

55.     The '520 patent is invalid because it fails to meet the "conditions for patentability" of 35 USC §§ 101, 102, 103, and/or 112 because the alleged invention thereof lacks utility; is taught by, suggested by, and/or, obvious in view of, the prior art; and/or is not adequately supported by the written description of the patented invention, and no claim of the '520 patent can be properly construed to cover any of Google's products.

56.     This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT SEVEN

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,125,447

57.     Google restates and incorporates by reference its allegations in paragraphs 1-56 of its Counterclaims.

58.     An actual case or controversy exists between Google and Oracle as to whether the '447 patent is infringed by Google.

59.     A judicial declaration is necessary and appropriate so that Google may ascertain its rights regarding the '447 patent.

60.     Google has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '447 patent.

61.     This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT EIGHT

### Declaratory Judgment of Invalidity of U.S. Patent No. 6,125,447

62.     Google restates and incorporates by reference its allegations in paragraphs 1–61 of its Counterclaims.

63.     An actual case or controversy exists between Google and Oracle as to whether the '447 patent is invalid.

24

64.    A judicial declaration is necessary and appropriate so that Google may ascertain its rights as to whether the '447 patent is invalid.

65.    The '447 patent is invalid because it fails to meet the "conditions for patentability" of 35 USC §§ 101, 102, 103, and/or 112 because the alleged invention thereof lacks utility; is taught by, suggested by, and/or, obvious in view of, the prior art; and/or is not adequately supported by the written description of the patented invention, and no claim of the '447 patent can be properly construed to cover any of Google's products.

66.    This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

### COUNT NINE

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,192,476

67.    Google restates and incorporates by reference its allegations in paragraphs 1-66 of its Counterclaims.

68.    An actual case or controversy exists between Google and Oracle as to whether the '476 patent is infringed by Google.

69.    A judicial declaration is necessary and appropriate so that Google may ascertain its rights regarding the '476 patent.

70.    Google has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '476 patent.

71.    This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

### COUNT TEN

### Declaratory Judgment of Invalidity of U.S. Patent No. 6,192,476

72.    Google restates and incorporates by reference its allegations in paragraphs 1–71 of its Counterclaims.

73.    An actual case or controversy exists between Google and Oracle as to whether the '476 patent is invalid.

74.     A judicial declaration is necessary and appropriate so that Google may ascertain its rights as to whether the '476 patent is invalid.

75.     The '476 patent is invalid because it fails to meet the "conditions for patentability" of 35 USC §§ 101, 102, 103, and/or 112 because the alleged invention thereof lacks utility; is taught by, suggested by, and/or, obvious in view of, the prior art; and/or is not adequately supported by the written description of the patented invention, and no claim of the '476 patent can be properly construed to cover any of Google's products.

76.     This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT ELEVEN

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,910,205

77.     Google restates and incorporates by reference its allegations in paragraphs 1-76 of its Counterclaims.

78.     An actual case or controversy exists between Google and Oracle as to whether the '205 patent is infringed by Google.

79.     A judicial declaration is necessary and appropriate so that Google may ascertain its rights regarding the '205 patent.

80.     Google has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '205 patent.

81.     This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT TWELVE

### Declaratory Judgment of Invalidity of U.S. Patent No. 6,910,205

82.     Google restates and incorporates by reference its allegations in paragraphs 1–81 of its Counterclaims.

83.     An actual case or controversy exists between Google and Oracle as to whether the '205 patent is invalid.

26

84.     A judicial declaration is necessary and appropriate so that Google may ascertain its rights as to whether the '205 patent is invalid.

85.     The '205 patent is invalid because it fails to meet the "conditions for patentability" of 35 USC §§ 101, 102, 103, and/or 112 because the alleged invention thereof lacks utility; is taught by, suggested by, and/or, obvious in view of, the prior art; and/or is not adequately supported by the written description of the patented invention, and no claim of the '205 patent can be properly construed to cover any of Google's products.

86.     This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT THIRTEEN

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,426,720

87.     Google restates and incorporates by reference its allegations in paragraphs 1-86 of its Counterclaims.

88.     An actual case or controversy exists between Google and Oracle as to whether the '720 patent is infringed by Google.

89.     A judicial declaration is necessary and appropriate so that Google may ascertain its rights regarding the '720 patent.

90.     Google has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '720 patent.

91.     This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT FOURTEEN

### Declaratory Judgment of Invalidity of U.S. Patent No. 7,426,720

92.     Google restates and incorporates by reference its allegations in paragraphs 1–91 of its Counterclaims.

93.     An actual case or controversy exists between Google and Oracle as to whether the '720 patent is invalid.

27

94. A judicial declaration is necessary and appropriate so that Google may ascertain its rights as to whether the '720 patent is invalid.

95. The '720 patent is invalid because it fails to meet the "conditions for patentability" of 35 USC §§ 101, 102, 103, and/or 112 because the alleged invention thereof lacks utility; is taught by, suggested by, and/or, obvious in view of, the prior art; and/or is not adequately supported by the written description of the patented invention, and no claim of the '720 patent can be properly construed to cover any of Google's products.

96. This is an exceptional case under 35 U.S.C. § 285 because Oracle filed its Amended Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT FIFTEEN

### Declaratory Judgment of Non-Infringement of the Asserted Copyrights

97. Google restates and incorporates by reference its allegations in paragraphs 1-96 of its Counterclaims.

98. An actual case or controversy exists between Google and Oracle as to whether the Asserted Copyrights are infringed by Google.

99. A judicial declaration is necessary and appropriate so that Google may ascertain its rights regarding the Asserted Copyrights.

100. Google has not infringed and does not infringe, directly or indirectly, the Asserted Copyrights.

## PRAYER FOR RELIEF

WHEREFORE, having fully responded to Oracle's Amended Complaint and asserted its Amended Counterclaims against Oracle, Google prays for judgment as follows:

a. A judgment dismissing Oracle's Amended Complaint against Google with prejudice;

b. A judgment in favor of Google on all of its Counterclaims;

c.    A declaration that Google has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid and enforceable claims of the Patents-in-Suit;

d.    A declaration that the Patents-in-Suit are invalid;

e.    A declaration that Google has not infringed, either directly or indirectly, any of the Asserted Copyrights;

f.    A declaration that Oracle's claims are barred by the doctrines of laches, equitable estoppel, and/or waiver;

g.    A declaration that this case is exceptional and an award to Google of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees; and

h.    Such other and further relief as this Court may deem just and proper.

DATED:  November 10, 2010            **KING & SPALDING LLP**


                                     By:  /s/ Donald F. Zimmer, Jr. /s/


                                     SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
                                     sweingaertner@kslaw.com
                                     ROBERT F. PERRY
                                     rperry@kslaw.com
                                     BRUCE W. BABER *(Pro Hac Vice)*
                                     bbaber@kslaw.com
                                     1185 Avenue of the Americas
                                     New York, NY 10036-4003
                                     Telephone:  (212) 556-2100
                                     Facsimile:   (212) 556-2222

                                     DONALD F. ZIMMER, JR. (SBN 112279)
                                     fzimmer@kslaw.com
                                     CHERYL A. SABNIS (SBN 224323)
                                     csabnis@kslaw.com
                                     KING & SPALDING LLP
                                     101 Second Street – Suite 2300
                                     San Francisco, CA 94105
                                     Telephone: (415) 318-1200
                                     Facsimile:  (415) 318-1300

                                     ATTORNEYS FOR DEFENDANT
                                     GOOGLE INC.

29

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Civil L.R. 3-6(a),

Google Inc. respectfully demands a jury trial of all issues triable to a jury in this action.

DATED:  November 10, 2010                    **KING & SPALDING LLP**


By:  /s/ Donald F. Zimmer, Jr. /s/
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER *(Pro Hac Vice)*
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

DONALD F. ZIMMER, JR. (SBN 112279)
fzimmer@kslaw.com
CHERYL A. SABNIS (SBN 224323)
csabnis@kslaw.com
KING & SPALDING LLP
101 Second Street – Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1200
Facsimile:  (415) 318-1300

ATTORNEYS FOR DEFENDANT
GOOGLE INC.