**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.269.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

May 18, 2011

Writer's Direct Contact
415.268.7455
MJacobs@mofo.com

The Honorable Donna M. Ryu
United States Magistrate Judge
Northern District of California
1301 Clay Street, Courtroom 4, 3rd floor
Oakland, CA  94612

Re:    *Oracle America, Inc. v. Google, Inc.*, Case No. 3:10-cv-03561-WHA
       Joint Letter Regarding Oracle's Request For In-House Counsel Access to AEO
       Information

Dear Judge Ryu:

Oracle seeks permission to provide its designated in-house counsel with access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information ("AEO information").  Google has declined Oracle's request.  The parties met and conferred by telephone on May 11, 2011, but were unable to resolve the issue.  Oracle respectfully requests the Court's assistance with this matter.

**Oracle's Statement**

Oracle wishes to provide its designated in-house litigation counsel with access to AEO information, as permitted by the Stipulated Protective Order ("SPO").  As required, Oracle has presented Google with information establishing the qualifications of four Oracle in-house attorneys (Dorian Daley, Deborah Miller, Matthew Sarboraria, and Andrew Temkin) to see AEO information.  Google has objected to all four designees, leaving Oracle without a single in-house attorney privy to AEO information.  Judge Alsup has instructed that confidentiality designations be narrowly tailored and that information not be restricted without good cause (SPO, pp. 1-3 (Dkt. 66)), but Google has designated a large number of its documents as AEO (the highest level) and refused to permit access by any of Oracle's designees.  Accordingly, Oracle is forced to seek the Court's assistance.

The Stipulated Protective Order permits disclosure of AEO information to up to five in-house attorneys who are not involved in "competitive decision-making" and to whom disclosure is reasonably necessary.  SPO, ¶ 7.3(b), 7.4(a) (Dkt. 66).  Oracle's four designees are directly responsible for overseeing and managing this litigation.  Given the fast pace of the case, access to AEO information is critical to enable in-house counsel to:
(1) expeditiously make informed decisions and provide feedback to outside counsel;

pa-1462130

MORRISON | FOERSTER

The Honorable Donna M. Ryu
May 18, 2011
Page Two


(2) advise Oracle's senior management (who are not permitted to receive AEO information) on case decisions; and (3) engage in meaningful settlement discussions.  Oracle is entitled to have its in-house litigators fully engaged in this case, subject to the safeguards imposed by the Stipulated Protective Order.

As required, Oracle provided Google with the following information regarding the job responsibilities of Oracle's designees:

1.  Dorian Daley is General Counsel, Senior Vice President, and Secretary at Oracle.  Her current and reasonably foreseeable future primary job responsibilities are:
    - Manage and oversee Oracle's legal department, and serve as corporate secretary.  In these roles, Ms. Daley is responsible for all company legal and regulatory matters, including litigation, and for advising management and the board as to such matters.
    - Given Ms. Daley's background as a litigator, she is also actively involved in supervising certain litigation matters, including the present case.

2.  Deborah Kay Miller is Vice President and Associate General Counsel of Litigation at Oracle.  Her current and reasonably foreseeable future primary job responsibilities are:
    - Manage all litigation against Oracle and its acquired companies, except employment-related litigation.
    - Supervise the in-house Litigation Group, which consists of 13 attorneys and 5 legal assistants.
    - Prepare quarterly reports on significant litigation and claims to upper management, auditors, and insurers.
    - Supervise the engagement of outside counsel for litigation matters and the review of their bills.
    - Prepare and manage budgets for the litigation group.
    - Supervise Oracle's e-discovery program and its vendors.
    - Evaluate all significant requests for settlement authority for any non-employment claim and make recommendations to senior management.
    - Review all settlements of significant claims and of litigation matters.
    - Provide advice about disputes from all parts of the company.

3.  Matthew Sarboraria is Senior Patent Counsel at Oracle.  His current and reasonably foreseeable future primary job responsibilities are:
    - Patent litigation, including active involvement in select matters.
    - Patent licensing, including review and negotiation of license agreements.

**MORRISON | FOERSTER**

The Honorable Donna M. Ryu
May 18, 2011
Page Three

- Patent threat evaluation, including review and analysis of offers to sell and license patents.
- Assist Corporate Legal group with IP related due diligence for M&As.
- Investigate IP matters and advise management.
- Respond to third-party subpoenas.
- Counsel the company with respect to miscellaneous legal issues.
- Serve on the board of directors of the Coalition for Patent Fairness.

4.   Andrew Temkin is Corporate Counsel in the Litigation Group at Oracle.  His current and reasonably foreseeable future primary job responsibilities are:
- Supervise and manage outside counsel in commercial and IP litigations.
- Investigate patent threats and indemnification requests.
- Investigate and advise management with respect to commercial disputes with customers.
- Provide legal advice and support for Oracle's business lines with respect to customer and product issues.
- Respond to third-party subpoenas.
- Counsel the company with respect to miscellaneous legal issues.

Google's objection to Oracle's four designees is based on the incorrect assumption that the designees are involved in competitive decision-making at Oracle.  As Oracle has explained to Google, they are not.  Oracle's designees are lawyers with solely legal responsibilities – they are not business personnel charged with competitive decision-making. The issue of whether Ms. Daley is a competitive decision-maker was evaluated in 2008 by Judge Charles Legge, sitting as a Special Master in *Oracle Corp, et al. v. SAP AG, et al.*, Case No. 07-1658 (N.D. Cal.).  Judge Legge concluded that Ms. Daley is not involved in competitive decision-making in her capacity as General Counsel, Senior Vice President, and Secretary at Oracle (the same positions that she holds today).  *See* Case No. 07-1658, Dkt. 72 at 3-4 (available on Pacer).  In reaching this conclusion, Judge Legge considered the following information about Ms. Daley's background and job responsibilities:

- Before joining Oracle, Ms. Daley was a litigator at Landels, Ripley & Diamond.
- For all of her career at Oracle up until she was named General Counsel in September 2007, her work focused principally on litigation, dispute resolution, and government investigation matters.  During her time with Oracle, she has made court appearances, taken and defended depositions, and managed in-house and outside litigation counsel.  She has had access to the opposing party's Highly Confidential information in a number of cases.
- At the time the protective order was entered in the *SAP* case, Ms. Daley was Vice President and Associate General Counsel of Litigation (the same position that

MORRISON | FOERSTER

The Honorable Donna M. Ryu
May 18, 2011
Page Four

> Ms. Miller holds today).  She was designated as a recipient of Highly Confidential information without objection from defendants in that case.

- In her capacity as General Counsel, Ms. Daley has continued to supervise certain Oracle litigation matters.  Her name has appeared on the captions of cases that she manages, as it has in this case.  To enable Ms. Daley to effectively manage these cases, she has sought and obtained access to the opposing party's highly confidential information.

- Ms. Daley is not involved in making competitive decisions for Oracle – that is the responsibility of other senior executives and committees within the company.  While Ms. Daley does attend meetings of Oracle's Board of Directors, her role is to provide legal advice as requested.

Based on this information, Judge Legge concluded that Ms. Daley was not a competitive decision-maker and was entitled to continue receiving Highly Confidential information.

As Google observes, Ms. Daley has titles and board memberships in connection with several Oracle subsidiaries.  Her role in this capacity is purely to ensure alignment of governance policies and practices, as well as board processes.  She is not a competitive decision-maker in connection with any of these subsidiaries.  Ms. Daley also had the title of President of Sun Microsystems following its acquisition by Oracle.  That title was a construct for transition, integration, tax, and signature-signing purposes.  She had no management responsibility and no involvement in competitive decision-making in connection with that title.  Finally, with respect to the Java Community Process, Ms. Daley is not a participant in that process.  She was involved in a single JCP-related conference call (not an official JCP meeting) that was organized at Google's behest, but has had no other connection to the JCP.

Likewise, Oracle's other three designees – all litigation attorneys who directly or indirectly report to Ms. Daley – are not involved in competitive decision-making (although his title is "Corporate Counsel," Mr. Temkin is primarily responsible for managing litigation).  While they certainly have responsibilities relating to litigation, licensing, and other legal matters, they are not charged with making decisions vis-à-vis Oracle's competitors in light of competitor information.  Google suggests that Oracle's designees should be barred from AEO access because they advise others at Oracle (including competitive decision-makers) regarding litigation, settlements, licensing, and other legal matters.  But this interpretation of the AEO access provision would effectively block any in-house attorney from qualifying for access, all of whom provide legal advice in the course of their duties.  The Stipulated Protective Order clearly permits in-house attorneys to receive AEO information, so long as they are only operating as lawyers and not as competitive decision-makers.  Oracle's designees meet this requirement.

MORRISON | FOERSTER

The Honorable Donna M. Ryu
May 18, 2011
Page Five

Oracle has met and conferred at length with Google in an effort to resolve this issue: (1) on April 6, 2011, Oracle sent a letter identifying its designees and providing detailed information on their background and job responsibilities; (2) on April 20, 2011, Google objected to all four designees, stating that their job duties make them competitive decision-makers; (3) on April 22, 2011, the parties conferred telephonically, with Oracle's outside counsel explaining that the designees' responsibilities are solely legal; (4) on April 25, 2011, Oracle sent a letter providing further information about Ms. Daley's duties and highlighting Judge Legge's conclusion in the *SAP* case that Ms. Daley was not involved in competitive decision-making; (5) on April 27, 2011, Google refused, without exception, to grant Oracle's designees access to AEO information; and (6) on May 11, 2011, following further discussion by telephone, Google again refused to grant access to any of Oracle's designees.

Under the Stipulated Protective Order, Google bears the burden of proving that the risk of harm resulting from disclosure of AEO information to Oracle's in-house litigation attorneys outweighs the attorneys' need to receive that information.  SPO, ¶ 7.4(c) (Dkt. 66).  Google cannot meet this burden.  Disclosure of AEO information to Oracle's designees would pose no risk of harm to Google:  (1) as experienced litigators, the designees are fully cognizant of their duties under the Protective Order and would strictly abide by its requirements; and (2) as lawyers not involved in competitive decision-making, there would be no risk of information being inadvertently used against Google for competitive purposes.  Google has not explained how disclosure of AEO information to these lawyers, with the safeguards imposed by the Protective Order, would cause harm to Google.

For these reasons, Oracle respectfully requests permission to provide AEO information to its designated in-house attorneys.  Should the Court wish, Oracle would be happy to provide further information, including copies of the briefing on this issue in the *SAP* case, a copy of Judge Legge's report, and/or a declaration setting forth the facts stated herein.  Pursuant to the Court's guidelines, Oracle has not submitted these items with this joint letter.

**Google's Statement**

The Joint Stipulated Protective Order (Dkt. 66) allows access to "[u]p to five (5) Designated House Counsel of the Receiving Party (1) who has no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation . . ."  (*Id.* at ¶ 7.3(b).)  It expressly defines "competitive decision-making" as:

> decision-making relating to any and all decisions made in light of or that take into account information regarding a competitor or potential competitor, including but not limited to such decisions regarding contracts, marketing, employment, pricing, product or service development or design, product or service offerings, research and

MORRISON | FOERSTER

The Honorable Donna M. Ryu
May 18, 2011
Page Six

> development, or licensing, acquisition or enforcement of intellectual
> property rights (other than this action), provided, however, that this phrase
> shall be interpreted in accordance with the relevant case law.

(*Id.* at ¶ 7.4(a).)  It further requires the Party that seeks to disclose to Designated House Counsel any HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information to "describe[] the Designated House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision-making."  (*Id.*)

Oracle's disclosure demonstrates that each of the individuals Oracle designated is "involved in competitive decision-making," under any reasonable interpretation of that phrase in view of the express definition and prevailing case law.  Oracle states Ms. Daley "is responsible for all company legal and regulatory matters, including litigation, and for advising management and the board as to such matters."  Oracle makes much of the fact that Ms. Daley and the others are attorneys providing legal advice, yet this entire provision of the Stipulated Protective Order applies only to "counsel."  Therefore, the Order presumes that – as common sense would suggest – attorneys are often involved in competitive decision-making by providing advice to others (such as to other Board members, as Ms. Daley does).  Oracle is apparently basing its position on an extremely narrow reading of involvement in competitive decision-making, suggesting it is a question of whether the in-house counsel are "business personnel charged with competitive decision-making."  *See* Oracle's Statement, *supra.*  This contrived definition is not only incompatible with the express definition quoted above from the Stipulated Protective Order, but it also reads out the modifier "involvement" from the inquiry entirely, and is nonsensical as the provision applies only to "counsel" and non-counsel business personnel would not even be considered under this provision.

Oracle's description of Ms. Daley's job responsibilities is drastically incomplete and fails to include sufficient detail as to many aspects such as details of her representations to the Java Community Process, her participation in the acquisition of Sun, her position as the President and CEO of Sun, her participation on twenty-three boards, and her position as the President and CEO of Art Technology Group, Inc., and Phase Forward, Inc. – all activities that have led to her involvement in competitive decision-making.  Instead, Oracle provides only conclusory denials of involvement in competitive decision-making for some, but not all, of these responsibilities.  Oracle further fails to provide details as to those reporting to Ms. Daley, directly or through subordinates, including whether they include transactional attorneys.  Ms. Daley, Oracle's General Counsel, is integrally involved in mergers and acquisitions.  *See, e.g., Big Deals*, http://www.law.com/jsp/tal/PubArticleTAL.jsp?id=1202431809384 (last visited May 16, 2011) (listing Ms. Daley as primary "In-house: Corporate" attorney involved in acquisition of Sun Microsystems, Inc.); *see also* Petra Pasternak, *New Oracle GC Gets Initiation M&A Fight*, THE RECORDER (Oct. 16, 2007),

MORRISON | FOERSTER

The Honorable Donna M. Ryu
May 18, 2011
Page Seven

http://www.law.com/jsp/ca/PubArticleCA.jsp?id=900005493477 (last visited May 16, 2011) (stating that Ms. Daley would be "calling the shots" in acquisition of BEA Systems, and noting that due to her promotion "she will no doubt play a much bigger role in overseeing mergers and acquisitions for Oracle"). These statements demonstrate that Ms. Daley is far from just a litigator overseeing litigation. Oracle's own description states that she is responsible for "advising management" on "all company legal and regulatory matters." It is difficult to imagine how a General Counsel providing legal advice on all matters could be more involved in competitive decision-making. This is particularly true if she has transactional attorneys reporting to her and is providing advice on these matters to other members of senior management.

Oracle's description also shows that each of the other three individuals is also plainly involved in competitive decision-making. Deborah Kay Miller "[e]valuate[s] all significant requests for settlement authority for any non-employment claim and make[s] recommendations to senior management" and "[r]eview[s] all settlements of significant claims and of litigation matters." Matthew Sarboraria performs "review and negotiation of patent license agreements," "[p]atent threat evaluation, including review and analysis of offers to sell and license patents," and provides "M&A Support" by "[a]ssist[ing] Oracle's Corporate Legal group with IP related due diligence." Andrew Temkin "[i]nvestigate[s] patent threats and indemnification requests," and "[p]rovides legal advice and support for Oracle's business lines with respect to customer and product issues."

Oracle offers no case law or substantive discussion to refute that the limited job description disclosures Oracle provides demonstrate on their face that each of the proposed designees is "involved in competitive decision-making." The inquiry is not, as Oracle would have it, whether they are "business personnel charged with competitive decision-making." The relevant inquiry is whether these counsel, in their roles as attorneys, *advise others* on areas involving competitive decisions. *See U.S. Steel Corp v United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984) ("The phrase ['competitive decision-making'] would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to *involve counsel's advice* and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.") (emphasis added). Reviews of settlements and making recommendations to senior management, evaluating threats and providing M&A support, and providing legal advice and support for Oracle's business lines are precisely the types of involvement in competitive decision-making explicitly prohibited by the Stipulated Protective Order.

Oracle's position as to the meaning of involvement in competitive decision-making in this instance, when it is requesting broad, unfettered access to all of Google's HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information, is plainly at odds with its

MORRISON | FOERSTER

The Honorable Donna M. Ryu
May 18, 2011
Page Eight

position in other cases when it is Oracle's information at issue. *See, e.g.,* Joint Motion for Entry of Protective Order, *Vasudevan Software, Inc. v. International Business Machines Corp.*, No. 5:09-CV-05897 (N.D. Cal. July 22, 2010), Dkt. 152 (hereinafter "Vasudevan Motion") (Oracle opposing access to in-house counsel of Plaintiff by citing the following cases: *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 580 (N.D. Cal. 2008) (patent prosecution counsel seeking license on behalf of client was a competitive decision maker); *Intel Corp. v. Via Technologies, Inc.,* 198 F.R.D. 525, 530–31 (N.D. Cal. 2000) (finding in-house counsel involved in patent licensing in the context of litigation settlements was competitive decision maker)) (parentheticals in Oracle and IBM's original brief). As discussed above, each of the four Oracle designees engages in activities the same as, or very similar to, "seeking license," or being "involved in patent licensing in the context of litigation settlement," which Oracle has explicitly argued was competitive decision-making in trying to restrict access to its own information.

Oracle relies almost exclusively on the Special Master's ruling in the SAP case, which addressed the question of whether there was "sufficient reason for terminating Ms. Daley's access to Highly Confidential information" *See* Report and Recommendations Re: Discovery Hearing No. 3 at 3, *Oracle Corp. v. SAP AG*, No. 07-1658 (N.D. Cal. Apr. 4, 2008), Dkt. 72. Needless to say, the fact that SAP agreed in the first instance to allow Ms. Daley to have access to its HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information undoubtedly factored into Judge Legge's analysis. Further, the information pertaining to Ms. Daley in that report is out of date. For example, the Special Master relied on the fact that "she is not a member of the board," *see id.* at 4, but since that determination, Ms. Daley was appointed to the Oracle Financial Services board of directors (as well as 22 other companies). Judge Legge also explicitly relied on his belief that Ms. Daley "has not been a corporate or transactional lawyer." (*Id.* at 3.) It does not appear that Oracle disclosed to Judge Legge that in her role as General Counsel Ms. Daley would have both corporate and transactional lawyers reporting to her. Also, Judge Legge's rationale counsels against access for Mr. Temkin, who is a corporate lawyer. In any event, that analysis is certainly not binding here as each request should be considered in view of the specific facts at the time of the request. *See U.S. Steel Corp.*, 730 F.2d at 1468.

Oracle has fallen far short in demonstrating that it is reasonably necessary for any or all of its designees to have access to all of Google's HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY. Oracle's reasons – managing outside counsel, advising management, and engaging in settlement discussions – do not rise to the level of a demonstrated "need." *See Intel Corp. v. VIA Technologies, Inc.,* 198 F.R.D. at 529 ("The party seeking access [by in-house counsel] must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage outside litigation counsel."). None of Oracle's justifications for access go to prejudice in litigating its case. Oracle has retained two sizeable outside counsel firms with seven outside counsel appearing in the case on behalf of Oracle,

MORRISON | FOERSTER

The Honorable Donna M. Ryu
May 18, 2011
Page Nine

as well as at least twice that number having actively participated. *See* Vasudevan Motion at 9 (Oracle citing *A. Hirsh, Inc. v. United States*, 657 F.Supp. 1297, 1305 (C.I.T. 1987) for support of its position that "in view of retained counsel's competence, it is not clear how plaintiff's position will be prejudiced by excluding [in-house] counsel from access"). Oracle has not shown any need for the disclosures it seeks. Oracle does not cite to any prejudice in the ability to litigate its case, and at most suggests a preference or a convenience.

Because Oracle has not shown that the individuals are not involved in competitive decision-making, or that disclosure is reasonable necessary, the burden should not shift to Google, particularly in view of Oracle's unwillingness to provide requested information that would further demonstrate the potential harm during meet and confer. Nevertheless, both the risk of harm and magnitude of harm to Google is substantial. Oracle has alleged that "Google's Android competes with Oracle America's Java as an operating system and software development platform for cellular telephones and other mobile devices." Amended Complaint at ¶ 12, Dkt. 36 (Oct. 27, 2010). Oracle has sought incredibly broad discovery on virtually every competitive aspect of Google's business including, *e.g.*, "Google's business model business model with respect to Android, including all drafts of any revenue model, marketing strategy, distribution model, costs, licensing strategies, and financial projection relating to Android," and "Documents relating to communication with any handset manufacturer, other mobile device manufacturer, or mobile operator or carrier relating to any business projections, business model, results, revenues, profits, or costs relating to Android." These are but two of the *one hundred seventy-four* requests for production that Oracle has served on Google, which cover innumerable HIGHLY CONFIDENTIAL areas, such as licenses, business plans, board minutes, market analysis, forecasts, etc.

Recently Oracle has greatly expanded its damages theories and has requested essentially all of Google's financial data dating back eleven years, to 2000. The timing of these expansive requests for information dating back to eight years before the first Android device hit the market, coupled with the demand for broad access to four of Oracle's in-house counsel who are involved in competitive decision-making issues such as mergers and acquisitions, licensing, and settlement valuation, make both the risk of harm and magnitude of harm readily apparent. Oracle's reliance on a presumption that Oracle's in-house counsel will endeavor to abide by the Stipulated Protective Order is no answer. In fact, if such a presumption was enough, there would be no need for a distinction between in-house counsel and outside counsel in protective orders such as this one. The existence of this provision and the related case law makes clear that the question is one of inadvertent disclosure. *See, e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). The risk of inadvertent disclosure by the identified in-house counsel would be acute, as it would be difficult, if not impossible, for Oracle's in-house counsel to compartmentalize and not reveal or improperly rely on, even if subconsciously, Google HIGHLY CONFIDENTIAL information in providing legal advice to others on issues such a mergers and acquisitions,

MORRISON | FOERSTER

The Honorable Donna M. Ryu
May 18, 2011
Page Ten

settlements, and licensing.  Contrary to Oracle's assertion that no in-house counsel could qualify under the Protective Order, an in-house litigator who was **solely** involved in overseeing litigation could qualify, but not those with an interest in litigation who also have many other responsibilities providing advice in the context of competitive decision-making as is the case with the four individuals identified by Oracle.

During the parties' meet and confer discussions, Oracle was unwilling to provide additional requested information relevant to this inquiry, including the production of documents that have been outstanding for months.  If the Court does not agree that this is a clear case of Oracle seeking access by those with involvement in competitive decision-making based on its own descriptions, Google requests that the Court compel Oracle to provide complete disclosures as to the job responsibilities of the individuals, organizational charts, and the additional information requested by Google, such as detail as to Ms. Daley's presentation to the Java Community Process and Mr. Sarboraria's participation in public panels relating to maximizing intellectual property potential.  Google further notes that although Oracle is required by the Stipulated Protective Order to "assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk," Oracle has made no good faith effort to do either.  Instead, Oracle argues that the "designees' responsibilities are solely legal," *see supra* at 1, and then tautologically concludes that they are not involved in competitive decision-making and thus there is no risk of harm to Google.  Oracle's unwillingness to acknowledge any risk to Google by the disclosure of its most confidential business information to Oracle's General Counsel is indicative of its extreme and unreasonable position.

For the foregoing reasons, Google respectfully requests that the Court deny Oracle's request.  In the alternative, Google requests that Oracle be required to produce the detailed information requested herein before additional briefing or a hearing takes place.  Google does not believe Oracle's offer to bolster only the selected information it chose to include is sufficient, when Google is aware of many facts (some cited above) that suggest Oracle is in possession of considerable additional information that is very relevant to this inquiry.  Oracle should not be able to benefit from withholding that information and disclosing only a self-serving subset.

Respectfully submitted,

MORRISON & FOERSTER LLP                    KING & SPALDING LLP

*/s/ Michael A. Jacobs*                        */s/ Scott T. Weingaertner*
Michael A. Jacobs                             Scott T. Weingaertner
Counsel for Plaintiff Oracle America, Inc.     Counsel for Defendant Google Inc.