# EXHIBIT C

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287

Special Discovery Master

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 07-CV-1658 (MJJ)<br><br>JAMS Reference No. 1100053026<br><br>**REPORT AND RECOMMENDATIONS RE: DISCOVERY HEARING NO 3** |

## **JURISDICTION**

The undersigned has been appointed to be the Special Discovery Master pursuant to an order of this Court dated January 8, 2008. The jurisdiction of the Special Discovery Master is to hear all discovery disputes and report and make recommendations to the Court with respect to the resolution of disputes.

1

## AMENDMENT TO REPORT OF HEARING NO. 2

Defendants have requested an amendment to this Master's Report and Recommendations re hearing number 2. Page 4, lines 19-21 of the report stated: "After discussion, the parties agreed as follows: The information from defendant TN will be supplied to plaintiffs by the end of March, and the information from the SAP Companies will be supplied by April 15, 2008."

Defendants first object that they did not <u>agree</u> to that production schedule. The Master's notes of the hearing indicate agreement, but that appears contrary to the later transcript and to the parties' stated positions. Accordingly, the language "the parties agreed as follows" on line 19 of page 4 is changed to read "the Special Discovery Master recommends as follows:"

Defendants also object to the ordered <u>scope</u> of production being "the discovery information". The Master agrees and Page 4, lines 20-21 are amended to read as follows: "information from the priority custodians of defendant TN will be supplied to plaintiffs by the end of March 2008, and the information from the priority custodians of the SAP Companies will be supplied by April 15, 2008. The priority custodians have been identified in correspondence between the parties. The timing of the production should give first priority to information relevant to the depositions of the soon-to-be deposed Rule 30 (b)(6) witnesses."

Since this is an amendment to a prior order, and since it reduces defendants' obligations, this order is entered <u>nunc pro tunc</u> as of the date of Report and Recommendation No. 2, March 19, 2008. The time for defendants to object to the recommendations as amended above shall run from March 19, 2008.

## DISCOVERY HEARING No. 3

The parties each filed discovery motions by letters to the undersigned dated March 11, 2008, and filed oppositions to one another's motions on March 17, 2008. Additional motions and oppositions were filed on March 21, 2008, March 24, 2008, and were submitted to the Master on the date of the hearing, March 25, 2008. In addition, the Master received a declaration of Safra Catz and a tabulation of defendants' responses to specific documents requested in the Rule 30 (b)(6) depositions.

This is the report and recommendations of the Special Discovery Master to the Court with respect to those motions.

2

## ACCESS TO HIGHLY CONFIDENTIAL INFORMATION BY MS. DORIAN DALEY

In the stipulated protected order dated June 6, 2007, Ms. Dorian Daley was designated as an in-house counsel in the legal department of Oracle who could have access to information designated as "Highly Confidential Information – Attorneys' Eyes Only"; ¶10(b). Subsequent to the date of that stipulated order, Ms. Daley was promoted to the positions of general counsel, senior vice president, and corporate secretary of Oracle. Defendants are concerned that by virtue of her new positions the Highly Confidential information to which she has access might be available to the top levels of Oracle's management. They therefore move to have her removed as a person who has access to Highly Confidential information, which information is defined to include trade secrets, current and future business plans, and strategies which would be likely to cause competitive or business injury.

Based on Ms. Daley's new positions, defendants initially have reason for concern. Her original designation was at a lower level of corporate information than her present position. However, the motion has resulted in a more detailed examination of Ms. Daley's prior roles at Oracle, and her actual present job functions.

Ms. Daley's prior legal practice has been litigation. She came to Oracle from a litigation law firm and has spent her years in the Oracle legal department in litigation work. She has not been a corporate or transactional lawyer. She has had access to highly confidential information in other litigation, and there has never been any concern about her disclosing, even inadvertently, any privileged information.

The Master has received the declaration of Safra Catz, the president and chief financial officer of Oracle Corporation. The declaration describes in some detail what Ms. Dailey's new responsibilities are, and that her work will not interface with the company's management regarding competitive decision making. The arbitrator has also reviewed the description of Ms. Daley's job functions in the letter from Oracle's counsel dated March 17, 2008, pages 1-3. Ms. Daley was present at the hearing and verified as true the information contained in the Catz declaration and in that letter.

Based upon that information, the Master does not believe that there is sufficient reason for terminating Ms. Daley's access to Highly Confidential information in this case. Her principal job functions will continue to be managing the legal department of Oracle, and to be the senior

3

decision maker on litigation issues. She will not be called upon to counsel the board of directors or management on business or competitive matters. The decisions on those issues are made by the board or by other officers or other committees. Although she will be present at board meetings, she is not a member of the board and will not be participating in competitive issues. And as stated, in her past duties, which have included access to Highly Confidential information, her maintenance of confidentiality has never been questioned. Finally, under the terms of the protective order Ms. Daley remains personally bound by the obligation to maintain the confidentiality of all such information in this case that comes to her.

The Master therefore recommends that defendants' motion to preclude plaintiffs from disclosing Highly Confidential information to Ms. Daley be denied, and that she remain as a person entitled to see such information within the terms of the protective order.

## PROCEDURES REGARDING RULE 30 (b)(6) DEPOSITIONS

The parties have various disputes with one another about Rule 30 (b)(6) depositions, although the general process of such depositions seems to be functioning. The questions concern the scope of the Rule 30 (b)(6) deposition notices, and the degree to which the witnesses are, or can be made, able to respond to questions within the broad scope of some of the notices.

These problems are virtually inherent in the use of Rule 30 (b)(6) procedures, particularly in large intellectual property litigation. The Master understands that 30(b)(6) procedures are being used in part because the pre-trial order of September 25, 2007 presently limits the parties to 20 depositions apiece, and the necessary individual depositions would undoubtedly be in excess of that number. The Master recommends that the Court consider increasing the number of individual depositions allowable in discovery so that the 30(b)(6) problems might be reduced, if not entirely eliminated.

At the present time defendants request the following relief: "at the conclusion of each deposition, if Oracle believes that a witness's preparation or testimony was deficient, Oracle will notify defendants so the parties can resolve the issue informally or by motion. If Oracle fail[s] to notify defendants, it would be understood that defendants had met their obligations in connection with these depositions and plaintiffs would therefore be precluded from moving to exclude testimony at trial based on alleged deficiencies in the Rule 30(b)(6) testimony." (Defendants'

4

letter of March 21, 2008, page 3, last paragraph). At the hearing and in the briefing, the parties discussed their various concerns and the possible misuse of such a procedure, particularly as it might impact pre-trial motions and the witnesses' testimony at trial.

If the number of permissible individual depositions is increased, so that usual deposition procedures could be used, it is likely that this problem will be eased or disappear. But even if the problem still exists and will exist in the future, the parties and the Master cannot predict all of the ways in which the problems of lack of specificity or lack of preparation and knowledge might arise, or what the consequences might be. It is the opinion of the Master that the parties are over-analyzing the presently unknown problems. And even if the problems are accurately defined now, it would be nearly impossible for the Master to devise a remedy which would not create as many problems as it solves. The Master believes that the remedies have to be left to the negotiations of the parties as the problems arise, or be left to the operation of the usual Federal Rules of Civil Procedure and Local Rules. The Master therefore recommends that defendants' motion regarding special procedures for the Rule 30(b)(6) depositions be denied, without prejudice.

## PROMPT PRODUCTION BY ORACLE OF CERTAIN DISCOVERY

Defendants complain about slow production of the documents which Oracle has already agreed to produce. Indeed, both sides complain about the other's productions in that regard, as will be discussed below on page 6 et seq. Defendants have listed five categories of documents they would like produced immediately. See defendants' letter of March 11, 2008, pages 3 and 4.

Oracle's reply (letter of March 17, 2008, pages 6-8) acknowledges Oracle's obligation to provide the documents and, generally stated, agrees to produce them shortly.

Accordingly, the Master recommends that Oracle be required to produce those catagories of documents to defendants by May 6, 2008. That production should also include: (1) The documents formerly in the custody of Mr. Uwe Lueck, referred to in footnote 3 of Oracle's letter. And (2) all versions of Oracle's "third party risk analysis" documents that Oracle has presently identified; and Oracle's earlier versions promptly as such documents are disclosed in the files or databases of the custodians whose information is being reviewed.

5

## ORACLE'S REQUEST FOR PRODUCTION OF DOCUMENTS IDENTIFIED IN RULE 30(b)(6) DEPOSITIONS OF TOMORROW NOW WITNESSES

The parties have agreed that the Master's consideration of this motion be deferred to the hearing scheduled for April 15, 2008.

## ORACLE'S REQUEST FOR FURTHER ANSWERS TO INTEROGATORIES

Oracle moves that defendants be compelled to "supplement interrogatory responses improperly relying on Rule 33(d)"; Oracle's letter of 3/11/08, pages 2-6. That is, in prior responses to interrogatories, defendants have produced documents and invoked Federal Rule of Civil Procedure 33 (d).

While Oracle does not dispute defendants' general use of Rule 33 (d), it objects to defendants' use of that procedure in response to certain interrogatories. Generally stated, Oracles' objections are: (1) Oracle cannot locate in the Rule 33 (d) productions where the answers to some interrogatories are; (2) it needs more specific information in response to some of the interrogatories, specifically the names of participants and the identity of documents in each of the allegedly illegal downloads; (3) defendants have not conducted a wide enough search; and (4) defendants are not producing all of the documents, and hence delaying their 33 (d) answers, until defendants have reviewed all of the mass of information which they are assembling.

Both sides are assembling large quantities of documents, electronic information, and oral information in order to first review it and then respond to the discovery requests of the other side. That is taking a great deal of person-power and a great deal of time. Until the mass of documentary and electronic data (not to mention oral interviews) is assembled and reviewed, the producing parties are reluctant to produce just selected information. However, the case has now reached a point – where the present discovery deadlines are of concern and depositions are to occur in the near future – that the <u>immediate</u> need for certain information must trump the parties' desires to review and produce all of their responses <u>en</u> <u>mass</u>.

From the briefing and oral arguments, the Master concludes that the basic information about the downloads (what they were, who did them, their circumstances, what was done with them, and where they are now) are probably contained in the following sources. (1) The SAS

6

database. The Master previously recommended that engineers of each company meet to assist in locating the necessary information in that database. However, the parties do not appear to have as yet undertaken that procedure. (2) The "onboarding" documents. Defendants have apparently produced all of these documents, but Oracle says that it needs to identify where they are in the volume of the documents produced. (3) The BUOI files. These have apparently been produced, except for the so-called "master" files, which may or may not have been erased in the process of breaking the "master" files into separate sub-files. (4) Interviews of Tomorrow Now personnel. The Master assumes that many interviews have occurred, because some persons were produced as 30(b)(6) witnesses, and some have been identified as key or priority custodians of information. The Special Master does not know how many interviews have yet to be conducted, but they are undoubtedly very extensive. (5) The so-called "environments" where some of the downloads have been deposited, and perhaps modified, after being transferred from the DL Servers and the DL Library. The Special Master is uncertain to what extent these environments have been tendered to Oracle. Oracle has mentioned asking to "image" the data in the environments, but no motion is presently before the Master.

The Special Master turns now to the specific questions to which Oracle wants further answers because of allegedly improper reliance on Rule 33 (d).

Initially, it should be noted that in using Rule 33 (d) the specification of the record from which the information can be obtained must "be in sufficient detail to permit [Oracle] to locate and to identify, as readily as [defendants], the records from which the answer may be ascertained." So the Master proceeds from the premise that if defendants want to use Rule 33(d), which they are of course entitled to do, the burden is upon them to show Oracle where the information can be located in the material they have produced.

(1) Oracle Corporation's first set of interrogatories to Tomorrow Now, interrogatory number 10:

In essence this interrogatory asks for as much detail as possible on each specific event and customer who had contact with Tomorrow Now regarding each download, including passwords and related documents. Defendants' response provided some general narrative information, but otherwise stated that the information was contained under Rule 33(d) in the contracts and the onboarding documents produced to Oracle. The supplemental response

7

provided some more specific information about Bates ranges, but still referred generally to the document production. Assuming that the onboarding documents have been produced to Oracle by defendants, the burden still remains on defendants to identify for Oracle where it can find them. The Master recommends to the Court that defendants be compelled to do so.

(2) In interrogatory number 11 of the same set, Oracle seeks the identify of all of the software and support materials that Tomorrow Now downloaded.

Defendant replied that the most complete known set of those materials is "located on Tomorrow Now file servers." It then refers Oracle under Rule 33(d) to the relevant files and folders from those servers included in Tomorrow Now's document production. Again, the burden is on Tomorrow Now to produce all such files and folders from those servers, or to give Oracle an accurate identification of the location of that information in defendants' production. The Special Master recommends to the Court that defendants be compelled to do so.

(3) Interrogatory number 12 of the same set seeks information on policies, practices and procedures that Tomorrow Now has to ensure that software and support materials for a customer are not mixed among the customers or sent to SAP. Defendants reply that each customer's material is generally downloaded into a separate folder for that particular customer only, and in its supplemental response Tomorrow Now identified certain Bates ranges. However, the more complete response is again to refer Oracle under Rule 33(d) to documents which were produced.

The Special Master concludes from defendants' answers and briefing, that Tomorrow Now had no pre-existing manuals or statements of policies and procedures on the matters of interest in this case. Rather, their "policies and procedures" were really <u>practices</u> which had been followed by individual employees of Tomorrow Now in working with Tomorrow Now's clients. Whether those practices have been uniform enough to constitute a "policy" or "procedure" is something that can only be determined by a detailed analysis of the documents produced with respect to each client and custodian, and perhaps from interviews or deposition testimony of the custodians. This does not lend itself to a clean, neat specific answer to a question, but only a series of conclusions from multiple transactions. Since defendants are stating that Tomorrow Now had no pre-set policies and procedures, the Special Master does not believe it is fruitful to proceed with the use of interrogatories in exploring the <u>practices</u>. That

may well be an issue of fact in the case, and as stated will have be determined from the documents produced and from interviews or depositions of the personnel. The Master therefore recommends that this request be denied.

(4) Interrogatory 16 of the same set seeks the identification of all persons involved in the downloads.

Defendants gave a short narrative answer identifying certain of its employees. They further referenced information contained in a spreadsheet referred to in their response to interrogatory number 2. However, the Master has not seen that spreadsheet and does not know the length, scope, or degree of specificity. It is apparent that what Oracle seeks is the identification of <u>all</u> persons involved in <u>each</u> of the downloads. It does not seem likely that all of such information is contained in the spreadsheet.

The Master recommends to the Court that defendants be compelled to give further answers to interrogatory 16 as to the downloads regarding the 69 customers who have been previously identified. As additional customers are identified by Oracle, defendants should be obliged to provide answers as to each of those transactions.

(5) Oracle Corporation's second set of interrogatories to Tomorrow Now, number 4

This interrogatory again asks about policies and procedures. For policies and procedures <u>on</u> and <u>after July 7, 2007</u>, defendants have provided a narrative responsive answer, albeit not supported by identification of specific documents. With respect to policies and procedures <u>prior to</u> that date, defendants have again made a Rule 33(d) response.

The Master incorporates the discussion and the recommendation under interrogatory number 12 above.

(6) Plaintiff Oracle USA's first set of interrogatories to Tomorrow Now, interrogatory number 4

Oracle asks defendants to identify the terms of all agreements between Oracle and its customers on which defendants base the allegations made in their affirmative defenses.

In this motion, defendants have now agreed to provide the information by identifying the agreements and the relevant terms regarding the 69 customers who have been identified by Oracle to date. The Master recommends that defendants should be ordered to produce that information as they have agreed; and in addition, as Oracle identifies other customers whose

9

information was allegedly involved in illegal downloads, that defendants be obliged to produce the same information.

The Special Master is not setting any date for defendants to produce the above information. It is undoubtedly extensive, although the Master hopes that the procedures of having the engineers meeting with the attorneys to identify the <u>location</u> of information can still be useful. The Master appreciates that the above recommendations will require defendants to "cut across" the mass of information which is being assembled in order to select the specific information necessary to respond to the above interrogatories. The Master does not apologize for that requirement, because that is what seems to be necessary to move meaningful discovery forward. But the Master does recognize the substantial additional burdens. Defendants can now assess what they must do, and can engage in a dialog with Oracle to attempt to work out a schedule. If they cannot agree, the parties can request the Master to set or change dates.

## **CONFIDENTIALITY DESIGNATIONS OF DOCUMENTS PRODUCED BY THIRD PARTIES**

The parties have served subpoenas duces tecum on several third parties, and will undoubtedly be serving more. There is a problem that when their documents are received, some may have to be designated Confidential or Highly Confidential for purposes of the protective order.

The parties obviously need a few days after receipt of each group of documents in order to review them and decide upon a confidentiality category. The parties have negotiated back and forth without reaching a singular conclusion on the appropriate length of time.

The Master recommends to the Court that the documents produced by the third parties receive the designation of Highly Confidential for ten business days. After that, the parties must exercise their rights under paragraph (6)(b) of the protective order to designate the documents Confidential or Highly Confidential; if not, the documents will not have such protection.

The Special Discovery Master submits this report and recommendations to the Honorable Phyllis Hamilton pursuant to the paragraph 3(a) of the stipulation and order of January 8, 2008. Respectfully submitted.

Dated: April 4, 2008

_Charles A. Legge_
Hon. Charles A. Legge (Ret.)
Special Discovery Master

11

# PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Oracle Corporation, et al. vs. SAP AG, et al.
Reference No. 1100053026

I, Melissa Ornstil, not a party to the within action, hereby declare that on April 4, 2008 I served the attached Report and Recommendation Re: Discovery Hearing No. 3 on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, via U.S. Mail, at San Francisco, CALIFORNIA, addressed as follows:

Robert A. Mittelstaedt
Jones Day
555 California St.
26th Fl.
San Francisco, CA 94104 U.S.A.
Tel: 415-626-3939
Email: ramittelstaedt@jonesday.com

Tharan Gregory Lanier Esq.
Jones Day
1755 Embarcadero Rd.
Palo Alto, CA 94303
Tel: 650-739-3939
Email: tglanier@jonesday.com
Fax: 650-739-3900

Scott W. Cowan Esq.
Jones Day
717 Texas
Suite 3300
Houston, TX 77002-2712
Tel: 832-239-3721
Email: swcowan@jonesday.com

Jason S. McDonell Esq.
Jones Day
555 California St.
26th Floor
San Francisco, CA 94104 U.S.A.
Tel: 415-875-5820
Email: jmcdonell@jonesday.com
Fax: 415-875-5700

Zachary J. Alinder Esq.

Geoffrey Howard Esq.

Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2226
Email: zachary.alinder@bingham.com

Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2000
Email: geoff.howard@bingham.com
Fax: 415-393-2286

Dorian Daley Esq.
Oracle USA, Inc.
500 Oracle Parkway
MS 5op7
Redwood City, CA 94070
Tel: 650-506-4846
Email: dorian.daley@oracle.com

Jennifer Gloss Esq.
Oracle USA, Inc.
500 Oracle Parkway
MS 5op7
Redwood City, CA 94070
Tel: 650-506-4846
Email: jennifer.gloss@oracle.com
Fax: 650-506-7114

- Clerk of the Court
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102  USA
Tel: 415-556-3167
Email: NOT AVAILABLE

Chad Russell
Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2000
Email: chad.russell@bingham.com
Fax: 415-393-2286

Bree Hann Esq.
Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2000
Email: bree.hann@bingham.com

Donn P. Pickett Esq.
Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2000
Email: donn.pickett@bingham.com
Fax: 415-393-2286

Holly A. House Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111 USA
Tel: 415-393-2000
Email: holly.house@bingham.com

Jane L. Froyd Esq.
Jones Day
1755 Embarcadero Rd.
Palo Alto, CA 94303
Tel: 650-739-3939
Email: jfroyd@jonesday.com
Fax: 650-739-3900

Joshua L. Fuchs Esq.
Jones Day
717 Texas
Suite 3300
Houston, TX 77002-2712
Tel: 832-239-3939
Email: jlfuchs@jonesday.com

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on April 4, 2008.

*[signature]*

Melissa Ornstil
JAMS The Resolution Experts
melissaornstil@jamsadr.com