# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, New York  10036-4003
(212) 556-2100
www.kslaw.com

June 6, 2011

The Honorable William Alsup
U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, California  94102

     Re:    <u>Oracle America, Inc. v. Google Inc., No. C 10-3561 WHA</u>

Dear Judge Alsup:

In accordance with Your Honor's February 9 and June 2 Orders, Google requests leave to file a *Daubert* or other motion directed at the damages report of Oracle's expert Iain Cockburn.

The Court's November 19, 2010 Case Management Order recognized that an early damages report and early *Daubert* motion at this stage would substantially advance the case. The order provides that, after receiving Oracle's opening damages report, Google "**must** file any *Daubert* or other motion directed at the methodology, reliability or other defect" within fourteen days.  (Dkt. No. 56 at ¶ 9 (emphasis added)).  This is consistent with the recent trend, by the Federal Circuit and other courts, to exclude under *Daubert* speculative and arbitrary damages testimony.  *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *Cornell Univ. v. Hewlett-Packard Co.*, 2008 WL 2222189, *1 (N.D.N.Y. 2008) (Rader, J.).

Cockburn opines that Google, if found to infringe, would owe Oracle ▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

*Contains Confidential and Highly Confidential - Attorneys' Eyes Only Information*

561618.01

The Honorable William Alsup
June 6, 2011
Page 2

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Cockburn's legal errors are fundamental and disqualifying, and allowing him to testify about his conclusions to a jury would prejudice Google.  Although he purports to be calculating a reasonable royalty, he fails to offer any meaningful analysis of the *Georgia-Pacific* factors that would require him to separate out and define the value of the patented technology to both Google and Oracle.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████  This "methodology" bears no resemblance to anything authorized by the law or occurring in any real-world negotiations regarding any aspect of the Java technology.

*First,* Cockburn has no basis for including all of Google's revenue from Android phones into the base of his royalty calculation.  The accused product here is the Android software platform, which Google does not sell (and Google does not receive any payment, fee, royalty, or other remuneration for its contributions to Android).  Cockburn seems to be arguing that Google's advertising revenue from, e.g., mobile searches on Android devices should be included in the royalty base as a convoyed sale, though he never articulates or supports this justification and ignores the applicable principles under *Uniloc* and other cases.  In fact, the value of the Android software and of Google's ads are entirely separate: the software allows for phones to function, whether or not the user is viewing ads; and Google's ads are viewable on any software and are not uniquely enabled by Android.  Cockburn's analysis effectively seeks disgorgement of Google's profits even though "[t]he determination of a reasonable royalty . . . is based not on the

*Contains Confidential and Highly Confidential - Attorneys' Eyes Only Information*

561618.01

The Honorable William Alsup
June 6, 2011
Page 3

infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began." *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986).

*Second,* Cockburn includes Oracle's "lost profits and opportunities" in his purported royalty base. This is an obvious ploy to avoid the more demanding test for recovery of lost profits that Oracle cannot meet. *See, e.g.*, *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). Most audaciously, Cockburn tries to import into his royalty base the alleged harm Sun and Oracle would have suffered from so-called "fragmentation" of Java into myriad competing standards, opining that Oracle's damages from the Android software includes theoretical downstream harm to a wholly different Oracle product. This is not a cognizable patent damages theory, and is unsupported by any precedent or analytical reasoning.

*Third,* after improperly inflating the base of his royalty calculation, Cockburn proceeds to apply an unprecedented *fifty percent* royalty rate to that base through use of improper short-cuts. In contravention of long-settled precedent, he fails to tie his royalty rate to the value of the patented technology actually at issue in this case. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009). He treats the patents and copyrights at issue as a single, indivisible unit, casually dismissing critical differences in the patents (such as the technologies they embody and expiration dates over a decade apart) by deeming them all "essential" to Java, without pointing to any facts that could justify that conclusion. Instead of satisfying the *Lucent* standard, he adopts a presumption that is contrary to *Lucent*, stating that there is "no clear economic basis" for apportioning the total value of Android into value attributable to the patents and copyrights in suit and any additional value added by Google. Under the case law, however,

*Contains Confidential and Highly Confidential - Attorneys' Eyes Only Information*

561618.01

The Honorable William Alsup
June 6, 2011
Page 4

damages must be tied to "***the claimed invention's*** footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (per curiam) (emphasis added).

Cockburn similarly inflates his royalty rate by calculating Oracle's loss based on the alleged value of Java *as a whole*, even though the patented features are only a small part of Java. Indeed, Oracle has conceded that the claimed invention of the '720 patent—the *only* patent discussed in Cockburn's report— ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

*Fourth,* Cockburn cavalierly asserts that infringement of a *single* claim of a single patent would result in the same ▓▓▓▓▓▓▓▓ award as infringement of *all* of the asserted claims. The '720 patent, for example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, it expires nearly eight years after every other patent-in-suit. But according to Cockburn, even if Google does not infringe the '720 patent, the damages should still run throughout its life, which extends to 2025. Cockburn therefore tacks ▓▓▓▓▓▓▓▓ onto his calculation for the eight years during which the ▓▓▓▓▓ '720 patent would be the sole remaining patent.

All these basic legal errors are essential to Cockburn's bottom-line conclusion of ▓▓▓▓ ▓▓▓▓▓▓▓▓ royalty base and a fifty percent royalty rate. Even without considering these errors, however, Cockburn's 50% rate is no less arbitrary than the 25% "rule of thumb" methodology the Federal Circuit recently held cannot satisfy *Daubert*. *See Uniloc*, 632 F.3d at 1315. The critical question is "whether [Cockburn] has justified the application of a general theory to the facts of the case." *Id.* at 1316. He has not.

*Contains Confidential and Highly Confidential - Attorneys' Eyes Only Information*

561618.01

The Honorable William Alsup
June 6, 2011
Page 5

Finally, Cockburn also abandons market evidence about the value of the Java platform in favor of speculation and assumption. He dismisses Oracle's own valuation of ▮▮▮▮ the entire Java platform—not just Java for mobile applications. He ignores Google's actual negotiation history with Sun regarding a Java license for the mobile space, which would have included far more than the patents-in-suit and during which Google *rejected* a proposal to pay Sun ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even more glaring, he mischaracterizes Sun's settlement with Microsoft, asserting that Sun demanded and received *$900 million* to cover the risk of fragmentation to Java, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Cockburn further uses "incompatibility" as a reason to ignore the most pertinent Java licenses, *i.e.*, Java ME licenses, all of which generated revenues that were orders of magnitude lower than Cockburn's damages estimate. And while dismissing Sun's actual Java licenses, Cockburn relies on third-party agreements relating to other wireless technologies and mobile operating systems to inflate his royalty numbers, without any evidence linking these licenses and the claimed invention. *See ResQNet*, 594 F.3d at 871.

Cockburn's analysis of copyright damages is simply nonexistent—a single, conclusory sentence—and conflates the alleged copyright and patent infringement.

Each of these errors is foundational, and renders Cockburn's report unreliable, misleading, and inappropriate for presentation to the jury. Taken together, they are sufficiently critical that the Court should hear a *Daubert* motion now as originally anticipated.

Respectfully submitted,

/s/ Scott T. Weingaertner

Scott T. Weingaertner
Counsel for Defendant Google Inc.

*Contains Confidential and Highly Confidential - Attorneys' Eyes Only Information*