| | |
|---|---|
| ROBERT A. VAN NEST - #84065 | SCOTT T. WEINGAERTNER (*Pro Hac Vice*) |
| rvannest@kvn.com | sweingaertner@kslaw.com |
| CHRISTA M. ANDERSON - #184325 | ROBERT F. PERRY |
| canderson@kvn.com | rperry@kslaw.com |
| KEKER & VAN NEST LLP | BRUCE W. BABER (*Pro Hac Vice*) |
| 710 Sansome Street | bbaber@kslaw.com |
| San Francisco, CA 94111-1704 | KING & SPALDING LLP |
| Telephone: (415) 391-5400 | 1185 Avenue of the Americas |
| Facsimile: (415) 397-7188 | New York, NY 10036-4003 |
| | Telephone: (212) 556-2100 |
| DONALD F. ZIMMER, JR. (SBN 112279) | Facsimile: (212) 556-2222 |
| fzimmer@kslaw.com | |
| CHERYL A. SABNIS (SBN 224323) | IAN C. BALLON (SBN 141819) |
| csabnis@kslaw.com | ballon@gtlaw.com |
| KING & SPALDING LLP | HEATHER MEEKER (SBN 172148) |
| 101 Second Street – Suite 2300 | meekerh@gtlaw.com |
| San Francisco, CA 94105 | GREENBERG TRAURIG, LLP |
| Telephone: (415) 318-1200 | 1900 University Avenue |
| Facsimile: (415) 318-1300 | East Palo Alto, CA 94303 |
| | Telephone: (650) 328-8500 |
| | Facsimile: (650) 328-8508 |

Attorneys for Defendant
GOOGLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. 3:10-cv-03561-WHA |
| Plaintiff, | Honorable Judge William H. Alsup |
| v. | Hearing Date: August 18, 2011 |
| GOOGLE INC. | Hearing Time: 2:00 p.m. |
| Defendant. | **DEFENDANT GOOGLE INC.'S MOTION FOR LEAVE TO SUPPLEMENT INVALIDITY CONTENTIONS** |

# **TABLE OF CONTENTS**

**I. INTRODUCTION** ..................................................................................................................1

**II. LEGAL STANDARDS** ........................................................................................................2

**III. BACKGROUND FACTS** ...................................................................................................3

    A. Google's Difficult Search for Prior Art .........................................................................3

    B. Procedural History .........................................................................................................4

**IV. ARGUMENT** .......................................................................................................................5

    A. '104 Patent Charts A-9 and A-12, § 103 (AAPA/*Rau*) and § 103 (*Gries*/*Rau*) ............................................................................................................................5

    B. '104 Patent, Chart A-10, § 103 (*Tafvelin* in view of dynamic linking as described in *Daley*, *Krakowiak,* and/or *Vyssotsky*) ............................................................6

    C. '702 Patent, § 102 (JavaOS) ...........................................................................................6

    D. '702 Patent, Chart B-4, § 103 (Multics Segment Binder as Described in *Organick*, *Honeywell*, and/or *Vyssotsky*) ............................................................................7

    E. '205 Patent; Charts E-9, E-10, E-11; § 103 (*Wakeling*/*Magnusson*), § 103 (*Lewis*/*Magnusson*), § 103 (*Deutsch*/*Magnusson*) ............................................................8

    F. Defenses raised in February and March 2011 as part of the reexamination proceedings before the U.S. Patent Office......................................................................8

    G. '447 Patent, Chart F-6, § 103 (*Wahbe*/*Java Language Specification*); '476 Patent, Chart G-6, § 103 (*Roskind*/*Roskind Patent*) .......................................................9

    H. '447 patent, Chart F-7, § 103 (*Gong*); '476 patent, Chart G-4, § 103 (*Gong*) ................9

    I. § 101/102 Printed Matter Defense ................................................................................10

**IV. CONCLUSION** ..................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acco Brands, Inc. v. PC Guardian Anti–Theft Products, Inc.*,
   No. 04-cv-03526, 2008 U.S. Dist. LEXIS 88142 (N.D. Cal. May 22, 2008) ............................ 2

*IXYS Corp. v. Advanced Power Tech., Inc.*,
   321 F. Supp. 2d 1133 (N.D. Cal. 2004) ................................................................................. 8

*The Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
   No. 05-cv-04158, 2008 U.S. Dist. LEXIS 16556 (N.D. Cal. Mar. 4, 2008) ................ 2-3, 4, 8

*Vasudevan Software, Inc. v. IBM*,
   No. 09-cv-05897, 2011 U.S. Dist. LEXIS 33132 (N.D. Cal. Feb. 18, 2011) ........................... 2

*Yodlee, Inc. v. CashEdge, Inc.*,
   No. 05-cv-1550, 2007 U.S. Dist. LEXIS 39564 (N.D. Cal. May 17, 2007) ............................. 2

**STATUTES**

35 U.S.C. § 101 ............................................................................................................................ 10

35 U.S.C. § 102 ..................................................................................................................... 6-7, 10

35 U.S.C. § 103 ...................................................................................................................... passim


**OTHER AUTHORITIES**

Patent L.R. 3-3 ................................................................................................................................ 8

Patent L.R. 3-6 ........................................................................................................................ passim

PLEASE TAKE NOTICE that on August 18, 2011 at 2:00 p.m., or as soon thereafter as counsel may be heard, Defendant Google Inc. ("Google") will, and hereby does, respectfully move for leave to supplement its invalidity contentions. This Motion is based on the following memorandum of points and authorities in support, the Declaration of Mark H. Francis ("Decl.") and accompanying exhibits, the entire record in this matter, and on such evidence as may be presented at the hearing of this Motion.

## I. INTRODUCTION

In this motion, Google seeks leave to supplement its invalidity contentions with certain invalidity defenses that it has now determined are among its strongest in the case. In the five and a half months that have passed since Google served its invalidity contentions ("Initial Contentions"), the Court has issued a claim construction order that opened the door to some additional invalidity defenses and Google has developed others in the course of discovery and its ongoing search and analysis of the voluminous and highly technical prior art in the case – both of which are recognized grounds for "good cause" under Patent Local Rule 3-6. Although Oracle has refused to consent to supplementation, it cannot deny that during that five and a half months Google has repeatedly informed it of potential changes to Google's invalidity contentions. Oracle also cannot deny that its refusal to provide discovery into its JavaOS product has delayed Google's investigation of a key piece of prior art. Oracle's claim of prejudice rings hollow in light of the fact that it has had invalidity claim charts for almost all of the references at issue since May 16, and in some cases months earlier.

Both parties have known since May that the scope of this case would soon be reduced by more than half, once Oracle clarified which 50 claims – out of the 132 claims originally asserted – it actually intended to pursue at trial. Had Google filed this motion before Oracle narrowed its case and included *all* of the potential changes to its invalidity contentions, the resulting motion would have been several times larger than this one, and the bulk of it would have been mooted almost immediately by the parties' narrowing decisions. The burden on the parties and the Court would have been even more severe had Google filed successive motions for each set of

1  discoveries over the course of the spring.  Under these circumstances, where the contents of the
2  supplemental contentions have already been disclosed, leaving no reason to subject the parties
3  and the Court to unnecessary briefing, it would elevate form over substance to penalize Google
4  by depriving it of several of its strongest invalidity defenses.  See *Yodlee, Inc. v. CashEdge, Inc.*,
5  No. 05-cv-1550, 2007 U.S. Dist. LEXIS 39564 at *4 (N.D. Cal. May 17, 2007) ("The Patent
6  Local Rules supplement the Civil Local Rules and the Federal Rules of Civil Procedure, which
7  are to be construed to secure the just, speedy, and inexpensive determination of every action. …
8  [I]t would be unjust for information so highly material to the merits to be avoided on the basis of
9  such mere technicalities") (citations and quotations omitted).
10      For the foregoing reasons, as explained further below, Google respectfully requests that
11  the Court grant leave for it to supplement its invalidity contentions.
12  **II.     LEGAL STANDARDS**
13      Patent Local Rule 3-6 provides that a party may supplement its contentions "by order of
14  the Court upon a timely showing of good cause."  The rule provides "[n]on-exhaustive
15  examples" of circumstances that may support a finding of good cause, including "a claim
16  construction by the Court different from that proposed by the party seeking amendment" and
17  "recent discovery of material, prior art despite earlier diligent search."  Other factors that courts
18  consider in the good cause determination include "the relevance of the newly-discovered prior
19  art, whether the request to amend is motivated by gamesmanship, [and] the difficulty of locating
20  the prior art," *Acco Brands, Inc. v. PC Guardian Anti–Theft Products, Inc.*, No. 04-cv-03526,
21  2008 U.S. Dist. LEXIS 88142  at *5 (N.D. Cal. May 22, 2008), whether movants were diligent in
22  amending their contentions, and whether the other party would be prejudiced if the motion were
23  granted.  *Vasudevan Software, Inc. v. IBM*, No. 09-cv-05897, 2011 U.S. Dist. LEXIS 33132 at
24  *4-5 (N.D. Cal. Feb. 18, 2011).  In weighing the effect of any alleged delay in moving for leave
25  to amend, courts consider whether movants acted promptly in communicating potential changes
26  to their contentions to opposing parties, thereby minimizing or eliminating the risk of prejudice.
27  *See*, *e.g., The Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, No.
28

05-cv-04158, 2008 U.S. Dist. LEXIS 16556 at *8-9 (N.D. Cal. Mar. 4, 2008).

## III. BACKGROUND FACTS

### A. Google's Difficult Search for Prior Art

The accompanying Declaration of Mark H. Francis details Google's search for relevant art. (Decl. at ¶ 1-3.) In brief, the asserted patents relate to virtual machine technology that was first developed in the 1960s, and they claim techniques that have been widely used in software other than virtual machines since the early days of computers. As a result, Google's review of the prior art encompassed many thousands of publications, patents, and products that span at least five decades, much of which was not easily searchable or was only available in hard copy in various locations. (Decl. at ¶ 2, 4-16.)

Compounding the difficulty of the search was the fact that technical terms used in the patents are not used consistently in the prior art – not because the prior art does not disclose the concepts, but because the terms used to describe the same techniques have changed over the past fifty years. As a result, even where documents were electronically available, keyword searching was often ineffective and a more traditional brute force review was necessary. (Decl. at ¶ 13.)

Moreover, Google lacked access to one of the key starting points for a prior art search: the inventors' documents and records. Here, there are seven inventors named on the seven asserted patents, none of whom are still employed by Oracle. Throughout the duration of discovery, Oracle represented that all documents from the named inventors of the patents had been destroyed, and provided testimony to that effect on April 14, 2011.[1] (*See* Exs. A and B.) As a result, Google has been hampered in investigating when the inventions were conceived, who was involved, whether any products actually implemented the invention, and what prior art was known to the inventors.[2]

---

[1] Oracle did produce documents from one named inventor, James Gosling, but not during the 1990-93 timeframe, and Gosling's '104 patent bears an initial filing date of December 22, 1992.

[2] Just weeks ago, however, Google was informed that Oracle had suddenly discovered documents associated with two of the named inventors (one of whom had already been deposed), but it is unclear if Oracle has produced those documents yet. (*See* Ex. C.) To the extent Oracle

3

GOOGLE'S MOTION FOR LEAVE TO SUPPLEMENT INVALIDITY CONTENTIONS, CIV. NO. CV 10-03561-WHA

Google's search for relevant prior art has been ongoing throughout this litigation, and the wide-ranging scope of the relevant art means that additional avenues for research have appeared along the way, as in the case of the five references discovered after Oracle narrowed its claims. Google only learned of those references by speaking with additional experts it retained in May. In total, Google has expended over fifteen hundred person hours in the search process, involving over fifteen individuals, including technical consultants and experts. (Decl. at ¶ 17.)

**B.     Procedural History**

Google served its Initial Contentions in January of this year.  It disclosed additional invalidity defenses to Oracle in February and March 2011, when Google filed reexamination requests with the U.S. Patent Office, including detailed claim charts.  Oracle and the law firm of Morrison & Foerster, Oracle's trial counsel here, have been actively involved in the reexamination proceedings and thus privy to Google's disclosures in that context.  Google repeatedly requested Oracle's non-opposition to the instant motion for leave, and even disclosed a draft of its supplemental contentions and claims charts to Oracle in May 2011.  (*See* Exs. D-G.) *See Bd. of Trustees*, 2008 U.S. Dist. LEXIS 16556 at *10-11 (granting a motion for leave to supplement when the disclosing party "did not have its head in the sand" and "it immediately served amended contentions" upon discovery of new grounds).  On June 1, by agreement of the parties (Dkt. No. 144) and approval of the Court (Dkt. No. 147), Oracle limited its allegations to 50 patent claims.  On June 15, Google responded by limiting its invalidity defenses to six grounds per patent claim, for a total of 48 invalidity defenses, only five of which were previously unknown to Oracle.

Oracle's counsel Marc Peters conceded during a meet-and-confer call on May 23, 2011 that there would be no prejudice to Oracle if Google supplemented its invalidity contentions. Google memorialized Mr. Peters' concession in a letter to Oracle's counsel on May 25, and in a response to that letter on May 31, Oracle did not dispute it.  (*See* Exs. H and I.)  Although Oracle

---

discovers and produces new documents that are material to Google's invalidity defenses, Google reserves the right to seek permission from the Court to provide further supplementation.

4

now claims that it would not have made that statement had it known how many of the subsequently-disclosed defenses Google intended to use at trial, that argument makes no sense. If Oracle would not have been prejudiced by Google's adding *all* of its subsequently-disclosed defenses to its original Invalidity Contentions, it cannot be any more prejudiced by the addition of just a small subset of those defenses.

## IV. ARGUMENT

Google's bases for good cause align directly with the examples prescribed by the Patent Local Rules.

### A. '104 Patent Charts A-9 and A-12, § 103 (AAPA/*Rau*) and § 103 (*Gries*/*Rau*)

Google seeks to add new charts A-9 and A-12 that disclose 35 U.S.C. § 103 ("§ 103") obviousness combinations based on the *Rau* reference. These defenses respond to the Court's Claim Construction Order, which rejected Google's proposed claim constructions for both "intermediate form (object) code" and "resolve." (*See* Dkt. No. 137 at 17, 23-25.) Specifically, Google's proposed construction of "resolve" required that a symbolic reference be "replace[d] at least for the life of the process." In contrast to Google's proposed construction, *Rau* warns that "[a]ttempting to retain the [resolved] version [of an instruction] for extended periods of time will entail the use of large amounts of memory . . . [and may] defeat the purpose of using an [interpreted language]." (*See* Ex. J, *Rau* at 71.) Thus, *Rau*'s disclosure did not read directly on Google's proposed construction. However, *Rau* does read on the Court's construction, which requires only the "determining [of] the numerical memory-location reference that corresponds to [a] symbolic reference." Accordingly, the *Rau* reference has become more important in light of the Court's construction of "resolve."

*Rau*'s materiality is further emphasized in light of the Court's construction of "intermediate form (object) code," which requires that the code be "executable" (Dkt. No. 137 at 17), because *Rau* discloses an intermediate form that is executable (i.e., may be interpreted). (*See* Ex. J, *Rau* at 67 ("Given a host architecture and a high level language, one could either interpret the latter directly, compile it into the machine language or compile it into an

5

intermediate language which is then interpreted.").)  Accordingly, Google's supplementation is warranted.  *See* Patent L.R. 3-6(a).

Oracle suffers no prejudice as a result of this supplementation, as supplemental charts A-9 and A-12, or their equivalent, were provided to Oracle on or before May 16, 2011.

**B.   '104 Patent, Chart A-10, § 103 (*Tafvelin* in view of dynamic linking as described in *Daley*, *Krakowiak,* and/or *Vyssotsky*)**

Google seeks to add new chart A-10 that discloses a § 103 obviousness combination based on *Tafvelin* in view of *Daley*, *Krakowiak*, and/or *Vyssotsky*.  Google discovered each of these references only after serving its Initial Contentions, despite earlier diligent search.  (Decl. at ¶ 18.)[3]  See Patent L.R. 3-6(b).  Google provided chart A-10 based on *Tafvelin* and *Daley* to Oracle on May 16, 2011.  *Daley* was cited for its disclosure of the dynamic linking feature that has been part of the Multics operating system since the 1960s.  After Google disclosed *Tafvelin* and *Daley* to Oracle, one of Google's retained experts discovered *Krakowiak* and *Vyssotsky*.  These two references disclose the same Multics dynamic linking system that is disclosed in *Daley*, and simply provide additional information about this feature.  Because Oracle was already aware of Multics dynamic linking as a result of Google's disclosure of *Daley*, Oracle does not suffer any prejudice as a result of the later disclosure of *Krakowiak* and *Vyssotsky*.  For at least these reasons, the Court should allow supplemental chart A-10.  *See* Patent L.R. 3-6(b) ("good cause include[s] … recent discovery of material, prior art despite earlier diligent search").

**C.   '702 Patent, § 102 (JavaOS)**

Google seeks to rely on Oracle's JavaOS product as anticipating the claims of the '702 patent.  Oracle stated in its infringement contentions that its "JavaOS" product implements the '702 patent, and it is undisputed that JavaOS was publicly released and licensed more than a year before the filing date of the '702 patent, invalidating the '702 patent under 35 U.S.C. § 102 ("§

---

[3] *Tafvelin* was published in 1975, *Daley* in 1968, and *Vyssotsky* in 1965.  These publication dates illustrate the breadth of Google's search for prior art – and that the well-known techniques claimed in the '104 patent date back to the early days of computers.

1  102"). (*See* Exs. K and L.) However, Oracle did not produce *any* JavaOS source code until May
2  2011, *and has still not produced* the JavaOS source code that predates the '702 patent by a year.
3  In view of Google's persistence on this subject, Oracle just sent Google a letter trying to amend
4  its infringement contentions without leave of the Court, and argue that its identification of
5  JavaOS 1.0 as a product practicing the patent was "in error." (*See* Ex. M.) Thus, Google's
6  difficulty in understanding and charting the relevant JavaOS information is a direct result of
7  Oracle's own discovery abuse, as Oracle desperately tries to keep its own invalidating product
8  out of the case. Given Oracle's untimely production of this highly relevant prior art evidence,
9  Oracle should not now be heard to complain that Google has not provided invalidity charts for
10 JavaOS. *See* Patent L.R. 3-6(c) ("good cause [in the context of infringement contentions]
11 include[s] … recent discovery of nonpublic information…"); *see also* Patent L.R. 3-6(b).
12 Google specifically requests the ability to further supplement its contentions with invalidity
13 charts based on JavaOS after Oracle has produced all relevant documents and source code.

14 **D.    '702 Patent, Chart B-4, § 103 (Multics Segment Binder as Described in *Organick*,**
15 ***Honeywell*, and/or *Vyssotsky*)**

16         With the exception of *Vyssotsky*, Google disclosed everything in this supplemental
17 defense in its Initial Contentions. Google discovered the *Vyssotsky* reference only after serving
18 its Initial Contentions, despite earlier diligent search. *See* Patent L.R. 3-6(b). As discussed
19 above in section IV.A.2, *Vyssotsky* discloses the dynamic linking feature of the Multics operating
20 system. This feature, also known as the Multics segment binder, is similarly described in
21 *Organick* and *Honeywell*, and Google seeks to supplement chart B-4 with the additional
22 description of this system that is found in *Vyssotsky*. Because Google disclosed this system to
23 Oracle in the Initial Contentions, Oracle suffers no prejudice as a result of this supplementation.
24 Furthermore, supplemental chart B-4 has already been provided to Oracle, weeks in advance of
25 expert reports, and in particular the rebuttal expert reports to which these contentions will be
26 most relevant. For at least these reasons, the Court should allow supplemental chart B-4. *See*
27 Patent L.R. 3-6(b) ("good cause include[s] … recent discovery of material, prior art despite
28

earlier diligent search").

E.      **'205 Patent; Charts E-9, E-10, E-11; § 103 (*Wakeling/Magnusson*), § 103 (*Lewis/Magnusson*), § 103 (*Deutsch/Magnusson*)**

Google seeks to add supplemental charts E-9, E-10, and E-11. These charts represent § 103 obviousness combinations based on references that were charted in Google's Initial Contentions as § 102 anticipation references. In its Initial Contentions, Google specifically disclosed its intention to use its § 102 references as § 103 prior art in combinations with other charted references. (*See* Ex. N.) *See Bd. of Trustees*, 2008 U.S. Dist. LEXIS 16556 at *9 (citing *IXYS Corp. v. Advanced Power Tech., Inc.*, 321 F. Supp. 2d 1133, 1153 n.19 (N.D. Cal. 2004) (finding that plaintiff "has long been on notice of these potential combination [sic]. In the interests of privileging substance over form, the court will proceed to address these most pertinent-and most well-known-of combinations.")). Except for the fact that the *Magnusson* reference is combined with *Wakeling*, *Lewis*, and *Deutsch*, no new material has been added to any of the charts that Google previously provided in its Initial Contentions. Accordingly, Oracle has been on notice of the specific prior art references and Google's reservation of rights to combine these references as § 103 combinations. Oracle suffers no prejudice as a result of this supplementation, as supplemental charts E-9 through E-11, or their equivalents, were provided to Oracle on or before May 16, 2011.

F.      **Defenses raised in February and March 2011 as part of the reexamination proceedings before the U.S. Patent Office.**

Google seeks to supplement charts A-2 and A-3 ('104 patent); to add new charts C-8, C-9, C-11 ('720 patent); to add new charts D-5 and D-6 ('520 patent); and to add new chart F-5 ('447 patent). Within four to eight weeks of serving its Initial Contentions, these references were all submitted to the U.S. Patent Office in reexamination requests (and thereby disclosed to Oracle). Each reexamination request included detailed invalidity charts for these references in conformance with Patent L.R. 3-3. Accordingly, Oracle suffers no prejudice as a result of this supplementation as it has been on notice of these invalidity defenses since at least early March.

8

G.     **'447 Patent, Chart F-6, § 103 (*Wahbe/Java Language Specification*); '476 Patent, Chart G-6, § 103 (*Roskind/Roskind Patent*)**

Google seeks to add new charts F-6 and G-6 that disclose § 103 obviousness combinations that render the claims of the '447 and '476 patents invalid.  While Google possessed the *Java Language Specification* and the *Roskind Patent* before serving its Initial Contentions, neither was sufficient on its own to anticipate the claims of the respective patent. Google discovered *Wahbe* and the other *Roskind* reference only after serving its Initial Contentions, despite earlier diligent search.  *See* Patent L.R. 3-6(b).  Oracle suffers no prejudice as a result of this supplementation, as charts F-6 and G-6 have already been provided to Oracle, weeks in advance of expert reports, and in particular the rebuttal expert reports to which these contentions will be most relevant.

H.     **'447 patent, Chart F-7, § 103 (*Gong*); '476 patent, Chart G-4, § 103 (*Gong*)**

Google seeks to add new charts F-7 and G-4 that disclose § 103 obviousness defenses for the '447 and '476 patents.  While Google had the *Gong* reference when it served its Initial Contentions, the materiality of *Gong* was not apparent because it was published *after* the filing date of the '447 and '476 patents.  Thus, it is not *technically* prior art.  Upon further inspection, however, *Gong* turns out to be highly material to the question of these patents' validity.  The reference, which was authored by the named inventor on both the '447 and '476 patents, essentially admits that the security methods claimed in the patents would have been obvious since they are just a collection of well-known security techniques.  (*See* Ex. O, *Gong* at Introduction ("It is worth emphasizing that this work by itself does not claim to break significant new ground in terms of the theory of computer security.  Instead, it offers a real world example where well-known security principles are put into engineering practice to construct a practical and widely deployed secure system.").)  Oracle suffers no prejudice as a result of this supplementation, as supplemental charts F-7 and G-4, or their equivalent, were provided to Oracle as early as May 16, 2011.

### I. § 101/102 Printed Matter Defense

Google also seeks to provide further elaboration of its invalidity defense based on the fact that the identified claims are non-statutory subject matter. Although Google originally identified that defense as one based on § 101, it has since learned that courts conduct what is in effect the same analysis under both § 101 and § 102. Although it is unclear if it is even necessary for Google to amend its contentions to raise this point, which simply clarifies the potential legal bases for a "printed matter" defense, Google has included this contention in the interest of clear and open disclosure. This issue is essentially a question of law and thus has no impact on fact or expert discovery. Because the basic defense was identified in Google's Initial Contentions and presented in its present form as early as May 16, 2011, Oracle suffers no prejudice as a result of this supplementation.

### IV. CONCLUSION

For the forgoing reasons, Google respectfully requests that it be granted leave to include in its narrowed invalidity contentions certain theories not included in its Initial Contentions.

| | |
|---|---|
| 1    DATED: July 8, 2011 | **KING & SPALDING LLP** |

By: /s/ Scott Weingaertner

ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER *(Pro Hac Vice)*
bbaber@kslaw.com
MARK H. FRANCIS *(Pro Hac Vice)*
mfrancis@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

DONALD F. ZIMMER, JR. (SBN 112279)
fzimmer@kslaw.com
CHERYL A. SABNIS (SBN 224323)
csabnis@kslaw.com
KING & SPALDING LLP
101 Second Street – Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

I hereby attest that Mark H. Francis concurs in the e-filing of this document.

/s/ Cheryl A. Sabnis /s/

11