MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE AMERICA, INC.

Plaintiff,

v.

GOOGLE INC.

Defendant.

Case No. CV 10-03561 WHA

**ORACLE AMERICA, INC.'S OPPOSITION TO GOOGLE INC.'S AMENDED MOTION FOR LEAVE TO SUPPLEMENT INVALIDITY CONTENTIONS**

Hearing Date: August 18, 2011
Time: 2:00 p.m.
Dept.: Courtroom 9, 19th Floor
Judge: Honorable William H. Alsup

## I. INTRODUCTION

The middle of expert discovery is the wrong time for Google to swap out most of its invalidity theories and trade them for different ones. Google's own motion demonstrates that Google inexplicably delayed between four and six months to seek leave to add most of its "new" invalidity theories. This is the exact opposite of diligence, and is enough to end the "good cause" inquiry. Google's stalling tactics have caused significant prejudice to Oracle's trial planning by leaving open the question as to what Google's invalidity case is going to be. The parties are supposed to be narrowing the case, not expanding it right in the middle of expert discovery, which will be well under way by the time the Court hears this motion. The Patent Local Rules exist to ensure patent cases are litigated in a fair and orderly fashion. They are intended to have bite—parties must show good cause to change patent theories mid-stream. Google must show that it was diligent in requesting leave to amend from the Court and that its actions have not prejudiced Oracle. Google fails on both counts.

## II. PROCEDURAL HISTORY

Google served its initial Invalidity Contentions on January 18, 2011, which included thirty-five §§ 102 and 103 charts, §§ 101, 112, and 251 defenses, and a twenty-two page table of 500+ additional references, for which Google did not provide any detailed contentions in the form of prior art charts as required by Patent L.R. 3-3. Declaration of Marc Peters in Support of Oracle's Opposition to Google's Motion for Leave To Amend Invalidity Contentions ("Peters Decl.") at ¶ 1. Next, Google requested reexaminations of the patents in February and March 2011. Although Google asserted many new prior art references in the reexamination requests, it did not then seek to include them in this case. (*Id.* at ¶ 2.)

Not until May 6, 2011, did Google identify any particular references that it desired to add to its Invalidity Contentions, and then, only by name. (*Id.* at ¶ 5.) On May 16, Google provided formal proposed Supplemental Invalidity Contentions, which included twenty-one new or revised prior art charts and extensive additions to its § 101 and 112 defenses. (*Id.*) Google's May 6 letter and May 16 charts did not, however, include theories based on *Krakowiak* or *Vyssotsky* (new '104 chart A-10) or JavaOS (still no chart), or some revisions to earlier charts (revised charts A-2 and

A-3). For those new theories, Oracle had to wait until June 15 to learn about JavaOS and July 8 for the rest. (*Id.* at ¶ 5, 12, 14.)

On May 23, 2011, the Court accepted the agreed-upon portion of the parties' plan to limit issues for trial. (ECF No. 147.) On June 1, in view of Google's then-asserted-and-proposed invalidity defenses (which did not include theories based on *Krakowiak*, *Vyssotsky*, *JavaOS*, *Wahbe/JLS*, and *Roskind/Roskind*), Oracle selected its fifty patent claims. On June 7, counsel for Oracle told counsel for Google that the parties were not likely to reach a compromise and that Google should proceed to file a motion to amend its invalidity contentions. (*Id.* at ¶ 8.) On June 11, Google demanded that Oracle prepare its portion of a joint motion to be filed with Magistrate Judge Ryu. Oracle did so. On June 15, Google announced that it would file a précis with the Court instead. (*Id.* at ¶¶ 10-11.)

Also on June 15, 2011, Google identified invalidity defenses for each patent claim by the names of the references only—no additional Patent L.R. 3-3 charts were provided. Some of the identified invalidity theories were completely new to Oracle and not included in any then-provided chart: *Krakowiak* and *Vyssotsky* for the '104, *Vyssotsky* for the '702, *Wahbe/JLS* for the '447, and *Roskind/Roskind* for the '476. (*Id.* at ¶ 12.) *Gong* for the '447 and '476 had been named but not charted in Google's May 16 disclosure. In all, a majority of Google's selected invalidity grounds were new defenses that Google had not disclosed in January 2011. Also, Google also purported to "reserve" the right to assert alternate defenses in the event the Court denied Google's anticipated motion to supplement its Invalidity Contentions, so the total number of asserted defenses selected exceeded the six permitted by the Court. (*Id.*) Two days later, Google filed its précis asking for permission to file this motion on June 17, 2011.

Astonishingly, even though the Court granted Google leave to file this motion on June 21, 2011, Google waited more than two weeks to file it—until July 8, 2011. And there were many problems with the invalidity theories that Google sought to advance. Google's July 8 motion sought leave to add *Vyssotsky* (revised chart B-4), *Wahbe/JLS*, *Roskind/Roskind*, *Gong*, among other invalidity theories. Three hours before filing, Google sent an email purporting to send a "complete set of Google's invalidity claim charts." Later that day, Oracle pointed out that there

were differences between Google's May 16 and July 8 chart disclosures: the May 16 set did not include charts for *Wahbe/JLS*, *Roskind/Roskind*, or *Gong*. Google acknowledged that its May 16 version of the B-4 chart did not include *Vyssotsky*. On July 10, Oracle pointed out that Google had not provided a chart for the *Griffin/JLS* invalidity theory. (*Id.* at ¶ 14.)

What followed was a quick series of retractions. (*Id.*) On July 13, Google withdrew its *Griffin/JLS* invalidity theory. Shortly thereafter, Google withdrew its *Wahbe/JLS*, *Roskind/Roskind*, and *Gong* invalidity theories. (Because Google admitted in its July 8 motion that *Gong* was not prior art, this may have been wise.) Shortly before midnight on July 13, Google filed an amended motion that dropped *Vyssotsky* from its proposed revised chart B-4.

In sum, in the time between May 6 and July 13, Google advanced forty-two new invalidity theories based on prior art combinations and withdrew twenty-five of the new theories and most of the January ones, leaving Oracle still to guess as to what Google's invalidity case will look like at trial. Oracle has been whipsawed since the end of May. Google's behavior is a flagrant violation of the Patent Local Rules and the values they codify.

## III. GOOGLE HAS NOT SHOWN GOOD CAUSE TO AMEND UNDER PATENT L.R. 3-6

The Patent Local Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases . . . ." *IXYS Corp. v. Advanced Power Tech., Inc.*, No. C 02-03942 MHP, 2004 U.S. Dist. LEXIS 10934, at *8 (N.D. Cal. June 16, 2004). Failure to adhere to the deadlines established by the rules can be very disruptive, which is why "[a]mendment of . . . the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. "[T]he 'good cause' inquiry first considers whether the moving party was diligent in amending its contentions and then considers prejudice to the non-moving party should the motion to amend be granted." *West v. Jewelry Innovations, Inc.*, No. C 07-1812 JF (HRL), 2008 U.S. Dist. LEXIS 84928, at *4 (N.D. Cal. Oct. 8, 2008). Google has not shown that it was diligent in amending its contentions.

To be diligent, a party must seek to amend its contentions promptly after discovering the new information. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-67

(Fed. Cir. 2006). A delay of a few months shows a lack of diligence. *See id.* at 1367 (holding that party waiting three months to move to amend was not diligent); *Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 9:07-CV-46 (E.D. Tex. June 7, 2008) (Peters Decl. Ex. 4) (denying motion for leave to amend invalidity contentions where defendant moved three months after discovering the prior art and less than a month before the close of fact discovery).

Google has the burden of establishing its diligence. *O2 Micro*, 467 F.3d at 1366. Merely asserting that it made "diligent inquiries" does not meet this burden. *West*, 2008 U.S. Dist. LEXIS 84928, at *10. If Google "fails to establish diligence, the 'good cause' inquiry should end." *Id.*, at *11 (citation omitted); *O2 Micro*, 467 F.3d at 1368 ("Having concluded that the district court could properly conclude that O2 Micro did not act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to MPS.").

**A. The Court Should Reject Charts A-9 & A-12 Because Google Could Have Asserted These Invalidity Theories Earlier Had It Been Diligent**

Google identified the *Rau* article in its January 18 Invalidity Contentions, but did not then apply it against the '104 patent. In fact, Google stated that *Rau* was among the references that were "not the most pertinent" and "unnecessarily duplicative." (Peters Decl. Ex. 5 at 24, 43.) Google may have changed its mind, but that does not show diligence. *See Brilliant Instruments, Inc. v. GuideTech, Inc.*, No. C 09-5517 CW, 2011 U.S. Dist. LEXIS 48865, at *4-6 (N.D. Cal. Apr. 29, 2011) (denying defendants' motion for leave to add new prior art because defendant did not investigate it promptly after discovering it).

What excuse does Google give for adding *Rau* at this late date? Google says that *Rau* only became important after the Court construed the terms "resolve" and "intermediate form (object) code." But Google learned Oracle's proposed definitions in February 2011 (ECF No. 91 at 7-8), and the Court adopted Oracle's proposals almost verbatim. Google could have foreseen the Court's claim construction and should have analyzed the *Rau* article in light of Oracle's proposed definitions, not just its own. *See Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 669 (E.D. Tex. 2007) ("The court concludes that this definition was not so different from the parties'

proposal as to warrant amended infringement contentions based on the claim construction."). Google is using this Court's claim construction as an excuse to add a theory that it could have presented in February. Oracle assumed Google was telling the truth in January when it said *Rau* was "unnecessarily duplicative." Oracle relied on Google's representation, and it would prejudice Oracle to allow Google to assert *Rau* now when it could have done so months ago.

**B. The Court Should Reject Chart A-10 Because Google Could Have Asserted These Invalidity Theories Earlier Had It Been Diligent**

The Court should reject Google's attempt to add an obviousness combination based on *Tafvelin* in view of "Multics dynamic linking as described in *Daley*, *Krakowiak*, and/or *Vyssotsky*." Supplementation is improper where "there is no showing that the publication prior art references were difficult to locate and no showing that any diligence was exercised in discovering them." *Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807 SBA (EMC), 2009 U.S. Dist. LEXIS 85425, at *9 (N.D. Cal. June 12, 2009).

*Tafvelin*, *Daley*, *Krakowiak*, and *Vyssotsky* are not obscure or hard to find. On the contrary, Google could have found all of these references by using its own online database, Google Scholar, where Google has indexed them for searching.[1] Indeed, searching for the term "Multics" on Google Scholar brings up *Daley* as the sixth hit and *Vyssotsky* as the tenth hit. *See* http://scholar.google.com/scholar?hl=en&q=multics. A diligent search would have led Google right to the publications in enough time for disclosure in January. Google's counsel's declaration fails to explain why Google could not have found these four references earlier. (ECF No. 214-1 at 1-2.) The Court is left to wonder why Google made a point of saying "[m]any of these older prior art documents were not indexed or easily searchable" (*Id.* at ¶ 10) when the references in question had been indexed, by Google no less. And as Google did not find *Krakowiak* and *Vyssotsky* until the last minute, what would be the harm to leave them out? Google has not shown they are significant in any way. Google's motion should be denied.

---

[1] *See* http://scholar.google.com/scholar?start=10&q=Tafvelin+&hl=en&as_sdt=0,5; http://scholar.google.com/scholar?hl=en&q=multics; http://scholar.google.com/scholar?hl=en&q=Krakowiak+multics (last visited July 26, 2011).

### C. The Court Should Reject The JavaOS Defense Because Google Has Not Satisfied The Patent Local Rules

The JavaOS part of Google's motion is premature, at best. Google is asking the Court for permission to reserve a future on-sale bar contention based on Sun's JavaOS product. Google has not provided invalidity charts to explain such a contention. Because Google has not complied with Patent L.R. 3-3(c), this Court should deny Google's request for "the ability to further supplement its contentions with invalidity charts based on JavaOS" at some day in the indefinite future. (ECF No. 214 at 7.) If there ever comes a time when Google can adequately describe how some version of JavaOS allegedly contained each and every patent claim limitation and was on sale more than one year before the application date, then that is the time that the Court should consider whether Google was diligent in advancing this theory. That time has not come.

The supposed discovery issues surrounding JavaOS are a red herring. Oracle produced JavaOS code in May, as Google concedes. (*Id.*) That production includes JavaOS source code that predated the '702 patent by more than a year. If Google disputes that, it could have filed a motion with Magistrate Judge Ryu.

Some context on the origin of the JavaOS issue may be helpful to the Court. Oracle identified JavaOS 1.0 (mistakenly, as it turns out) as an embodiment of the '702 patent in its December 2, 2010 infringement contentions. If this were enough to raise an on-sale bar issue, Google could have included it in its January invalidity contentions, informed by the public announcement of JavaOS 1.0. (ECF No. 214-1 Ex. L.) But it did not. After Google waited until June 15, 2011 to contend there was a JavaOS on-sale bar, Oracle discovered the mistake in its contentions. The source code that implements the '702 invention was first put into the then-unreleased JavaOS 1.1 product in May 1997 (and not into the JavaOS 1.0 product). The May 20, 1997 JavaOS 1.1 release notes plainly identify the mclass technology as a "New Feature": "***New*** Java 'linker' that combines multiple .class files into one .mclass file. ***New*** ROMizer – rewrite to be more modular, Handles ***new*** .mclass files." (Peters Decl. Ex. 6 at 33, emphasis added.) Google has received these materials in discovery and stubbornly refuses to believe them. Notably, Google could have asked at the deposition of one inventor of the '702 patent about when the

invention was conceived and reduced to practice—but failed to do so. Google has not sought to depose the second inventor.

Oracle has since notified Google that Oracle would not be relying on JavaOS 1.0 as an embodiment of the ’702 patent for any reason, because it was not in fact an embodiment. (ECF No. 214-1 Ex. M.) Google argues that this was an attempt to amend Oracle’s infringement contentions without leave. Not so. The Patent Local Rules only say that if a patent owner wishes to reserve the right to rely on its own product as being an embodiment, it must make certain disclosures. Oracle, discovering the mistake, has relinquished its rights with respect to the mistaken version. It is up to Google to prove that the invention was on sale more than a year before the patent filing date by clear and convincing evidence, and this it will not be able to do, because it is not true. If the Court wishes to grant Google’s motion without a proper claim chart, Oracle asks that it be allowed to amend its infringement contentions to drop JavaOS 1.0 from its contentions, for formality’s sake if no other.

### D. The Court Should Reject Charts E-9, E-10 and E-11 Because Google Could Have Asserted These Invalidity Theories Earlier Had It Been Diligent

The Court should reject Charts E-9, E-10, and E-11, because Google waited almost six months to seek leave to add these obviousness theories to the case. The charts disclose combinations of *Magnusson* with *Wakeling*, *Lewis*, or *Deutsch*. In January, 2011, Google asserted all four references as anticipatory references and provided charts, but did not provide obviousness charts based on combinations of these references, even though it certainly could have. After Oracle pointed out in an interrogatory response how Google’s anticipation arguments were defective, Google abandoned them and now seeks to use the references for obviousness.

Google has not shown good cause to allow this change in legal theories. All Google can argue is lack of prejudice, but good cause is much more than that. Google had all this art in January—why not make an obviousness contention then? On this point, Google’s motion and declaration are silent. The truth is that Google developed these new theories only after Oracle demonstrated that Google’s anticipation arguments would fail. But Invalidity Contentions are not supposed to be reply briefs. Allowing Google to respond to Oracle’s validity arguments would

lead to the "shifting sands" approach that the Patent Local Rules expressly aim to eliminate. *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-198 FMS, 1998 U.S. Dist. LEXIS 17564, at *7 (N.D. Cal. Nov. 5, 1998). Google must "put all [its] cards on the table up front" and stick to them. *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) (quotation omitted).

In place of a true diligence showing, Google argues that Oracle has been on notice of Google's reservation of rights to combine these § 102 references. This is very weak tea. In its initial Invalidity Contentions, Google stated:

> To the extent that any one of the previously discussed anticipatory references is found not to anticipate one or more Asserted Claims, various references described herein and/or the knowledge and skill of a person of ordinary skill in the art at the time of the invention, in combination with any one of the anticipatory references, render the claim invalid as obvious.

(ECF No. 214-1 Ex. N at 9.) But Google's Invalidity Contentions included not only the charted § 102 and § 103 art, but also a twenty-two page table of 500+ uncharted references. Google purported to "reserve" the right to combine the § 102 art with any of the hundreds of identified references. This ploy cannot serve to put Oracle on notice of all the thousands of potential combinations, let alone the particular three that Google wishes to assert now. Google's cases (*IXYS* and *Stanford v. Roche*) are distinguishable because Oracle was not effectively put on notice of Google's new obviousness combinations, unlike the parties in those cases.

### E. The Court Should Reject the Reexamination References Because Google Did Not Diligently Move to Add Them to the Case

The Court should not allow Google to add new prior art references and theories that it used to request reexamination of the asserted patents for one simple reason: Google intentionally delayed seeking to add them to the litigation. Google concedes in its opening brief that it had prepared claim charts for these references in February and March. (ECF No. 214 at 8.) And yet it sat on its hands until July before filing this motion. Perhaps this is why Google does not even describe the "good cause" for adding these references—it only argues lack of prejudice. (ECF No. 214 at 8.) Google does not explain or justify the choices it made.

One factor that courts consider whether a party has shown good cause is "whether the request to amend is motivated by gamesmanship." *West*, 2008 U.S. Dist. LEXIS 84928, at *4. That may well be the case here. Since March, Google has requested that the Court stay the litigation in favor of the reexaminations at every opportunity. Perhaps Google thought that its chances of obtaining a stay would be improved if it were not also simultaneously seeking to expand the scope of its invalidity case. One thing that is known for certain is the story of charts D-5 and D-6. In April, Google requested a second reexamination of the '520 patent based on charts D-5 and D-6. In June, the examiner concluded that Google's D-5 and D-6 charts did not raise a substantial new question of patentability, and denied the request. (Peters Decl. at ¶ 3.) In July, Google made those charts part of this motion. So after Google's new theories were shut out of the reexamination, Google filed a motion to include them in the litigation. Not only does this suggest gamesmanship, but the examiner's action is also evidence that these references are not as important as the others. *West*, 2008 U.S. Dist. LEXIS 84928, at *4 n.5 (holding that "the relevance of the newly-discovered prior art" is relevant to the good-cause inquiry). Because Google delayed moving to amend with respect to the reexamination references and has not adequately explained the delay, there is a "lack of diligence and therefore a lack of 'good cause.'" *O2 Micro*, 467 F.3d at 1368.

### F. The Court Should Reject § 101/§ 102 Printed Matter Defense Because Google Could Have Asserted The Invalidity Theory Earlier Had It Been Diligent

The Court should reject Google's attempt to add a new § 101 / § 102 printed matter defense against the "computer-readable medium" (and similarly worded) claims of the '720, '447, and '476 patents, because there is no reason Google could not have asserted it before. In January 2011, Google merely contended that all of the asserted claims reflected abstract ideas and so were not patentable as governed by 35 U.S.C. § 101" and that the "computer-readable medium" (and similarly worded) claims were invalid under § 101 because they cover "signals per se." (Peters Decl. Ex. 5 at 17-18.) It did not identify any defense under the printed matter doctrine. Google claims that it "has since learned that courts conduct what is in effect the same analysis under both § 101 and §102" (ECF No. 214 at 8), and seeks to add a new "printed matter" invalidity theory in

addition to its "signals-per-se" theory. But the printed matter doctrine has been in existence since the 1930s, *In re Russell*, 48 F.2d 668, 669 (C.C.P.A. 1931), so Google has no legitimate excuse for failing to assert it earlier. Also, the most recent significant printed matter decision binding on this court, *King Pharms. Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010), issued on August 2, 2010, well before Google served its January Invalidity Contentions. The declaration of Google's counsel fails to explain why Google could not have conducted the legal research to develop a "printed matter" theory in January 2011 to join its "signals-per-se" theory.

## IV. GRANTING GOOGLE'S MOTION WOULD PREJUDICE ORACLE

Google's supplementations at this late stage in the case would prejudice Oracle. Although Google states that Oracle's counsel conceded there would be no prejudice in late May 2011, that discussion was based on an expectation of a prompt resolution. (Peters Decl. at ¶¶ 6-7.) Google's stalling in June and July has changed things substantially for the worse for Oracle since then.

By unilaterally deciding to bring this matter to the overburdened Court rather than the assigned Magistrate Judge, by delaying filing a précis requesting permission to file this motion, and by further delaying filing the motion once it received the Court's permission, Google ensured the parties' dispute would be resolved in August rather than May. This motion could have been heard promptly by Magistrate Judge Ryu; instead, the motion ended up on the regular 35-day motion calendar. Google's ***inexplicable two-week delay in filing its motion after receiving leave*** pushed out the hearing even more. Thus the resolution of Google's motion, which could have occurred in June, will not happen until on or after August 18, well into expert discovery. This is highly prejudicial—Oracle should not be required to work through expert discovery and prepare its case based on guesswork as to what is in and what is out.

## V. CONCLUSION

Google has not established diligence in seeking to amend its Invalidity Contentions. Its delay in filing this motion has heightened the prejudice to Oracle if the Court were to allow the supplementations. Google has not established good cause to amend at this time, under these circumstances. Therefore, this Court should deny Google's motion for leave to amend its Invalidity Contentions.

Dated: July 27, 2011

MICHAEL A. JACOBS
MARC DAVID PETERS
DANIEL P. MUINO
MORRISON & FOERSTER LLP

By: /s/ Marc David Peters

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.