# EXHIBIT F

**United States District Court**
For the Northern District of California

1

2

3

4

5

6                      IN THE UNITED STATES DISTRICT COURT

7

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   ORACLE AMERICA, INC.,                          No. C 10-03561 WHA

11              Plaintiff,

12        v.                                        **ORDER GRANTING IN PART
                                                    MOTION TO STRIKE DAMAGE
13   GOOGLE INC.,                                   REPORT OF PLAINTIFF
                                                    EXPERT IAIN COCKBURN**
14              Defendant.

15   ─────────────────────────────── /

16                              **INTRODUCTION**

17        In this patent and copyright infringement action involving features of Java and Android,

18   defendant moves to exclude the report and testimony of plaintiff's damages expert.  For the

19   following reasons, the motion is largely **GRANTED**.

20                              **STATEMENT**

21        The claims asserted in this action relate to the Java software platform, which was

22   described in the claim construction order (Dkt. No. 137).  The seven asserted patents purportedly

23   cover inventions that improve the efficiency and security of Java.  The copyright claim concerns

24   the allegedly expressive elements of source code for Java class libraries.  Java was developed by

25   Sun Microsystems, Inc., in the 1990s, and it has become one of the world's most popular software

26   platforms.  By using a "virtual machine," Java enabled software developers to write programs that

27   were able to run on a variety of different types of computer hardware.  Java is commonly used on

28   desktop computers to facilitate compatibility with application programs distributed through the

United States District Court

For the Northern District of California

1    internet.  A more recent "micro edition" of the Java platform known as Java ME is used in mobile

2    computing devices.

3            The accused product in this action is Android, a software platform that was designed

4    specifically for mobile devices and that competes with Java in that market.  Both Java and

5    Android are complex platforms comprising virtual machines, programming languages,

6    development and testing kits, software libraries, and other elements.  *Significantly, only part of*

7    *Java and part of Android are said to embody the asserted claims.*  For example, the virtual

8    machine concept underlying Java's "write once, run anywhere" solution is *not* covered by the

9    asserted claims and indeed was part of the prior art that predated Java.  And, it is undisputed that

10   the Java programming language is in the public domain and anyone was free to use it without

11   charge, as Android does.  The asserted patent claims purport to disclose only incremental

12   improvements to the efficiency and security of the Java system.  For its part, Android uses the

13   Linux kernel and has many non-Java elements as well.

14           Google acquired Android, Inc., in August 2005 and soon began discussing the possibility

15   of taking a Java license from Sun for use in Android.  The Android project sought to include a

16   virtual machine that used Java technology in an open-source format — but for mobile

17   applications.  Historically, Sun never "refused to license any of the Java technologies," and "the

18   proportion of total Java licensing costs as against total software revenues [for Sun's Java

19   licensees was] de minimis" (Weingaertner Exh. H at 64–65).  Sun, however, seemed reluctant to

20   authorize an open-source implementation of Java technology, possibly for fear that it would

21   decrease other Java licensing revenue (Norton Exh. D).

22           In October 2005, following "discussions with Sun regarding Android's Open Source VM

23   strategy," Google's then Senior Vice President Andy Rubin remarked in an e-mail, "If Sun

24   doesn't want to work with us, we have two options:  1) Abandon our work and adopt MSFT CLR

25   VM and C# language - or - 2) Do Java anyway and defend our decision, perhaps making enemies

26   along the way" (*ibid.*).  Google and Sun continued to negotiate over the next several months, but

27   they were unable to reach a deal.

28

Case 3:10-cv-03561-WHA   Document 230-6   Filed 07/22/11   Page 6 of 6

- • Adjust *upward* due to the necessary assumption that all claims asserted must be deemed valid and infringed (whereas in 2006 this was uncertain).

- • Adjust upward or downward, as the case may be, for any further changes known to the parties between the date of the offer and the date of first infringement.

- • Adjust upward or downward for other comparables and other *Georgia-Pacific* factors.

- • Adjust downward for the fact that the offer included a *copyright* license, an issue not addressed herein (and which will not be addressed until the final report is done).

This order does not absolutely rule out all other formats. The foregoing would seem to be a clear-cut starting point.

**CONCLUSION**

On reflection, the Court erred in inviting the damages report to be submitted earlier than normal. The Court's express thinking was that allowing an earlier report would leave time to vet the analysis and then to adjust for the final report without trial delay. Instead, however, the patent owner here simply served a report that overreached in multiple ways — each and every overreach compounding damages ever higher into the billions — evidently with the goal of seeing how much it could get away with, a "free bite," as it were. Please be forewarned: the next bite will be for keeps. If the next and final report fails to measure up in any substantial and unseverable way, including ways this order did not have time to reach, then it may be excluded altogether without leave to try yet again. While this order has not reached every possible criticism, Oracle must be aware that some of the unaddressed criticisms seem, at least on one reading, to have merit, so it should proceed with caution before overreaching again.

If Oracle believes that it cannot craft a report until it figures out what patent claims (of the many currently asserted) it will actually assert at trial, that is a problem of its own making. If Oracle needs to postpone the October trial date until it settles on which claims it truly believes are triable, then it should bring a prompt motion to do so; otherwise, Oracle's revised damages report limited to the claims actually to be tried will be due **35 DAYS** before the final pretrial conference

**United States District Court**
For the Northern District of California

1   and any responsive defense report will be due **FOURTEEN DAYS** before the final pretrial

2   conference.  The author of the report must, of course, sit for another deposition.

3          With respect to a possible stay pending re-examination, the Court is yet unwilling to give

4   up on the October trial date.  This will be revisited in due course, and in any event at the final

5   pretrial conference.  A factor will be whether this case will be truly trial-ready.

6

7          **IT IS SO ORDERED.**

8

9   Dated:  July 22, 2011.

10                                                                   WILLIAM ALSUP
                                                                     UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

16