KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
DANIEL PURCELL - #191424
dpurcell@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:  (415) 318-1200
Facsimile:  (415) 318-1300

KING & SPALDING LLP
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

GREENBERG TRAURIG, LLP
IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
1900 University Avenue, Fifth Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>GOOGLE INC.,<br><br>                    Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**REPLY IN SUPPORT OF GOOGLE INC.'S AMENDED MOTION FOR LEAVE TO SUPPLEMENT INVALIDITY CONTENTIONS**<br><br>Date:           August 18, 2011<br>Time:          2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge:        The Honorable William Alsup<br><br>Trial Date:  October 31, 2011 |

## I. INTRODUCTION

Despite the storm and fury of Oracle's Opposition, the key facts it cannot deny are that it has been fully apprised of almost all of the defenses at issue for months, and that it will not be prejudiced in any concrete way if this motion is granted. As a result, it is well within the Court's discretion to find that Google has demonstrated "overall diligence" and to grant leave to amend "[i]n the interests of privileging substance over form," despite Oracle's complaints about the timing of this motion. *Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, No. C 05-04158 MHP, 2008 U.S. Dist. LEXIS 17114 at *9 (N.D. Cal. Mar. 4, 2008). Although Oracle suggests that Google is somehow expanding the scope of the case, it is the exact opposite that is the case: Google dramatically *reduced* the number of invalidity theories in play through the elections it made on June 15, many of which were present in Google's original invalidity contentions; and Google has *further reduced* this number by voluntarily relinquishing many of the "new" defenses it elected on June 15 by limiting this motion to only a subset of those "new" defenses.

The timing of Google's motion is reasonable under the circumstances. Oracle complains about the untidiness of the process in this case, but wholly fails to acknowledge that it is largely responsible, because it filed an unmanageably broad suit. Oracle's initial infringement contentions included 132 asserted claims from seven patents, covering several different technology areas and implicating several decades' worth of prior art. As a result, Google's search for prior art and synthesis of its legal theories has been an ongoing process, and the total number of potential invalidity theories it has pursued has been enormous. Had Google moved each time it disclosed each new or revised contention to Oracle, it would have filed motions for leave in February, March, April, May and July, the bulk of which would have been mooted by the parties' elections in June. Google could not have predicted which claims Oracle would elect on June 1, and therefore could not have brought a narrowed motion before then.[1]

---

[1] Although Oracle's factual recitation obliquely suggests that it was prejudiced in its June 1 election by Google's subsequent election of defenses based on new prior art, it is important to note that Google has excluded almost all such defenses from this motion. The only defense at issue that includes references disclosed after June 1 is Chart A-10, which describes a defense that

1    Furthermore, even if Oracle's complaints with regard to timing were valid (and they are
2 not), Oracle cannot deny its own role in any alleged delay.  By Oracle's own admission, the
3 parties first began discussing the possibility of amendment on April 3, but it was not until *June* 7
4 that Oracle finally informed Google that the parties would not be able to reach an agreement.
5 Thus, the majority of the delay of which Oracle complains is of its own making, as it could have
6 told Google far sooner that it would not agree to the requested supplementation.

7    The invalidity defenses at issue in this motion are important to the just resolution of the
8 case, and therefore allowing a full hearing on their merits would benefit not only Google, but
9 also the general public.  As the Supreme Court has long recognized, "[i]t is as important to the
10 public that competition should not be repressed by worthless patents, as that the patentee of a
11 really valuable invention should be protected in his monopoly[.]"  *U.S. v. Glaxo Group Ltd.*,
12 410 U.S. 52, 58 (1973) (quoting *Pope Mfg. Co. v. Gormully*, 144 U.S. 224, 234 (1892)).
13 Because Google has shown good cause for amending its invalidity contentions, and Oracle has
14 failed to demonstrate that it would be prejudiced thereby, leave to amend should be granted to
15 allow Google a full opportunity to challenge the validity of the asserted patents, in its own
16 interest and the general public's interest.

17                          **II.    ARGUMENT**

18 **A.    The Court's Claim Construction Supports the Supplementation Based on *Rau***

19    Oracle does not dispute that it has had Charts A-9 and A-12 since May 16, 2011, shortly
20 after the Court issued its May 9 Claim Construction Order (Dkt. No. 137), and also does not
21 dispute that *Rau* is more relevant under the Court's claim constructions than under the
22 constructions Google proposed.  Instead, Oracle argues that Google should have planned its
23 invalidity defenses around both its own proposed claim constructions *and Oracle's*, citing a case
24 from the Eastern District of Texas.

25 ───────────────────────────
26 Google originally disclosed to Oracle in chart form on May 16, but later supplemented with additional citations to newly-discovered prior art.  *See* Defendant Google's Am. Mtn. for Leave to Supplement Invalidity Contentions ("Mtn. for Leave") (Dkt. No. 214) at 6:14-7:4; Decl. of
27 Mark H. Francis in Support of Defendant Google Inc.'s Amended Motion for Leave to Supplement Invalidity Contentions ("Francis Decl.") (Dkt. No. 214-1) ¶ 18.  Notably, and
28 unsurprisingly, Oracle has not specified any prejudice relating to those additional citations.

1    The local rule in East Texas, however, *is not the same* as the local rule here.  The local rule applied in the case Oracle cites provides for amendment where "a party claiming patent infringement believes in good faith that the Court's Claim Construction Ruling so requires." *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667 (E.D. Tex. 2007).  The local rule in this jurisdiction, however, specifically supports a finding of good cause in the event of "a claim construction by the Court different from that proposed *by the party seeking amendment*."  Patent L.R. 3-6(a) (emphasis added).  The Northern District of California could easily have limited good cause to cases where the issued constructions differed from those proposed by any party, rather than those proposed "by the party seeking amendment," and could also have adopted language similar to the Eastern District of Texas', but did neither.  Good cause therefore lies for Google's proposed supplementation based on *Rau* under Local Rule 3-6(a), as written.

**B.    Google Has Been Diligent in Identifying its Defenses**

Oracle challenges Google's diligence in identifying the following subset of the defenses at issue in this motion, arguing that it could have discovered all of them earlier in the case:

- Chart A-10, based on *Tafvelin* in view of *Daley, Krakowiak*, and/or *Vyssotsky* (original Chart A-10 disclosed on May 16, and supplemented with an additional reference to the later-discovered *Vyssotsky* and *Krakowiak* references on July 8)*;*

- Charts E-9, E-10 and E-11 (obviousness combinations based on references fully charted as anticipation defenses in Google's invalidity contentions and fully charted as obviousness defenses in re-exam proceedings in February and March);

- Printed matter defense under § 101/§ 102 (disclosed on May 16 as a supplement to the § 101 "abstract ideas" and "signals per se" defense in Google's invalidity contentions).[2]

The standard of diligence that Oracle espouses ignores reality, because the alleged ease with which these specific defenses may be identified is entirely the product of hindsight.  Yes, it is easy to find specific references and flesh out defenses once one knows what one is looking for – and when they are the *only* things one is looking for – but that is not the situation Google was in seven months ago, when it was instead simultaneously investigating potential invalidity

---

[2] Charts A-2, A-3, C-8, C-9, C-11, D-5, D-6, and F-5 are not included in this list because Oracle does not appear to assert this argument against them, but the diligence arguments herein are equally applicable to them.

1  defenses for 132 patent claims against a wide and crowded field of prior art.  In that context, it
2  would have been impossible for Google to simultaneously discover all of the one hundred and
3  fifty plus invalidity defenses it has disclosed to Oracle over the course of the case.
4        The law recognizes these realities by making the "difficulty of locating the prior art" a
5  factor in the good cause analysis.  *Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, No.
6  04-cv-03526, 2008 U.S. Dist. LEXIS 88142 at *5 (N.D. Cal. May 22, 2008).  For instance, in
7  *Advanced Micro Devices, Inc. v. Samsung Electronics Co.*, No. C 08-00986 SI, 2009 WL
8  890515 (N.D. Cal. Apr. 1, 2009), the court granted a motion for leave to amend invalidity
9  contentions filed three months after the defendant's discovery of some of the underlying prior
10  art, taking into account the "'immense body of prior art,'" the fact that many pieces of prior art
11  had to be examined individually because of the absence of "standard terms" for the relevant
12  concepts, and the fact that one of the references was fifteen years older than the patent on which
13  it read.  *Id.* at *1.
14        As Google has established, *see* Francis Decl., ¶¶2-17, and Oracle has not contested, the
15  prior art search in this case has been difficult and involved many of the same challenges as the
16  search in *Advanced Micro Devices*, plus additional ones based on Oracle's destruction of and/or
17  failure timely to produce the named inventors' documents.  *Id.* at ¶¶19-21. Moreover, Google's
18  prior art case team consisted of more than 15 individuals, *see* Francis Decl. ¶17, pursuing in-
19  depth research in many different directions on different patent claims; it should not be surprising
20  that it took time to synthesize and appreciate the significance of even the information that they
21  had collectively found.

22  **C.  Google's "Overall Diligence" Was Adequate in Light of Case Circumstances and Oracle's Failure to Indicate Its Opposition to Amendment Promptly**
23  
24        Oracle cannot deny that it has had full information about almost all of the defenses at
25  issue in this motion at least since May 16, and in many cases for much longer.[3]  Oracle
26  nevertheless argues that Google failed to exercise reasonable diligence by failing to bring its

---

[3] The only relevant information disclosed to Oracle after May 16 were two prior art references added to the Chart A-10 that Oracle received on May 16.  *See* n.1, *supra*.

1  motion for leave to amend sooner.  In making this argument Oracle relies primarily on the
2  Federal Circuit's application of this District's local rule in *O2 Micro International Ltd. v.*
3  *Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006).  As the *Board of Trustees* court
4  specifically noted, however, *O2 Micro* "merely held that the district court did not abuse its
5  discretion by disallowing amendments brought after a three-month delay," and did not *mandate*
6  such disallowance.  2008 U.S. Dist. LEXIS 17114 at *10.[4]

7  Before and since *O2 Micro*, courts in this District have granted leave to amend despite
8  delays in moving that were comparable to, and indeed longer than, the one here.  *See*, *e.g.*,
9  *Advanced Micro Devices,* 2009 WL 890515 (motion filed three months after discovery of one of
10 the underlying references, without any comment on the time interval); *Bd. of Trustees,* 2008 U.S.
11 Dist. LEXIS 17114 (motion filed five months after formal disclosure of new contentions to
12 opposing party, and four months after the opposing party objected to amendment); *Avago Techs.*
13 *Gen. IP Pte Ltd. v. Elan Microelecs. Corp.*, No. C04-05385 JW (HRL), 2007 U.S. Dist. LEXIS
14 39543 (N.D. Cal. May 15, 2007) (motion filed six months after defendant had full possession of
15 the facts underlying the proposed supplemental defense).  Indeed, in *IXYS Corp. v. Advanced*
16 *Power Tech., Inc.*, No. C 02-03942 MHP, 2004 U.S. Dist. LEXIS 10945 (N.D. Cal. June 16,
17 2004), the court granted leave with regard to prior art that defense counsel discovered just *three*
18 *weeks* before expert rebuttal reports were due, and in *Lexar Media, Inc. v. Pretec Electronics*
19 *Corp.*, No. C00-04770 MJJ, 2007 U.S. Dist. LEXIS 32825 (Apr. 18, 2007), the court granted
20 leave to amend after the close of fact discovery, even though defendant had disclosed the
21 invalidity theory at issue to the plaintiff *three years earlier*.  *Id.*

22 As these cases show, where the non-moving party had actual notice of the proposed
23 contentions well in advance of the actual motion, and as a result was not prejudiced in
24 prosecuting the case, courts have repeatedly found a movant's "overall diligence" adequate and
25 granted leave to amend "'[i]n the interest of privileging substance over form.'"  *Bd. of Trustees,*

---

[4] Oracle also cites a slip opinion from the Eastern District of Texas in support of its argument, *see* Opp. at 4:2-6 & Peters Decl., Exh. 4, but needless to say, Google believes that the authority it offers from this jurisdiction should be given greater weight.

1  2008 U.S. Dist. LEXIS 7114 at *9 (quoting *IXYS Corp. v. Advanced Power Tech., Inc*., 321 F.
2  Supp. 2d 1133, 1153 n. 19 (N.D. Cal. 2004)); *see also Lexar*, 2007 U.S. Dist. LEXIS 32825 at
3  *3; *Avago*, 2007 U.S. Dist. LEXIS 39543 at *2.  And, despite Oracle's accusation that Google is
4  somehow engaging in "gamesmanship" by attempting to add certain defenses from the re-exam
5  proceedings, Opp. at 9:1-14, it is hard to see how it is "gamesmanship" for Google to wish to
6  pursue defenses it believes to be meritorious, about which Oracle has not only long been aware,
7  but in fact has been engaged in litigating in the PTO.

8  In this matter it would have imposed a much greater – and ultimately unnecessary –
9  burden on the parties and the Court if Google had moved to amend earlier than it did.  Because
10 of the scale of the case Oracle chose to bring, had Google moved for leave at the same time it
11 discovered and disclosed each new or revised defense, it would have at least filed a motion in
12 February regarding three new charts, a motion in March regarding four new charts, a motion in
13 April regarding two new charts, and a motion in May regarding ten new charts and several
14 revised charts.  Supplemental Declaration of Mark H. Francis in Support of Google Inc.'s
15 Amended Motion to For Leave to Supplement Invalidity Contentions ("Suppl. Francis Decl."),
16 ¶¶2-5.  The parties had been in discussions about narrowing the case since mid-February, and
17 narrowing was a near-certainty as of April 24, 2011, when the Court asked the parties to submit
18 case-narrowing proposals, and as a result it has long been known that many of the asserted
19 claims and defenses would not remain in the case.  Suppl. Francis Decl. ¶6; (Dkt. No. 124).
20 Thus, any motion for leave to amend that Google brought before Oracle made its June 1
21 elections would necessarily have sought relief that would ultimately prove unnecessary, because
22 Google could not have predicted which patents, let alone which claims, Oracle would elect to
23 pursue and thus which defenses it would need leave to add.

24 Oracle also disregards its own role in the delay about which it complains.  Oracle admits
25 that Google first raised the possibility of amendment on April 3, Peters Decl. ¶4, but that it took
26 over two months of correspondence and meet and confer before Oracle's counsel finally stated
27 that he "did not think it likely that the parties would be successful in reaching a further
28 compromise."  Peters Decl. ¶9.  Thus, a sizeable fraction of the delay about which Oracle

complains is in part of its own making, as it could have told Google far earlier that it would not agree to the requested supplementation.[5]

And, as for the passage of a month between Oracle's indication that agreement was "not likely," Opp. at 2:7, and the filing of this motion, that time only appears lengthy in a vacuum. In reality, that month was one of the busiest in the case. Between June 7 and July 8 there are no fewer than 40 docket entries for this matter, including, for instance, all the briefing on Google's *Daubert* motion on Dr. Cockburn's damages opinions. Because of the looming discovery cutoff, the parties were also extremely active on the discovery front in this period. Between the beginning of June and July 8, Oracle served six deposition notices or subpoenas, six 30(b)(6) deposition notices, 6 interrogatories, 244 requests for admission, and 29 requests for production – all which required responsive action within a month – and Google served five deposition notices or subpoenas, ten 30(b)(6) deposition notices, 35 requests for production, 429 requests for admission, 7 interrogatories; amended its initial disclosures; responded to written discovery; produced over a million pages, supplemented its privilege log and took or defended three depositions. Suppl. Francis Decl. ¶7. Google was diligent in preparing and filing its motion in light of these competing case demands.[6]

### D. Google's Inability to Formulate a Defense Based on Oracle's JavaOS Product Is a Direct Result of Oracle's Misstatements and Failure to Provide Required Discovery

Google is still gathering evidence on version 1.0 of Oracle's JavaOS product, which Oracle had previously asserted to practice the '702 patent. Google gained additional evidence regarding the source code for that product just last Friday in a 30(b)(6) deposition of Oracle, and

---

[5] Indeed, while Oracle criticizes Google for taking two weeks to file its motion after receiving leave to do so, it cannot deny that it took *over 3 weeks* after receiving the detailed disclosures of May 16 to decide (or at least to tell Google that it had decided) that it would oppose amendment.

[6] Although Google believes the timing of its motion was reasonable under the circumstances, should the Court determine that Oracle deserves some compensation for the timing of this motion, a less drastic solution exists than depriving Google of key defenses. A court may, as this Court has done in the past, assess the costs and fees involved in opposing a motion for leave to amend against the movant if the court determines that the movant unduly delayed in bringing the motion. *See, e.g., Comcast Cable Comm'ns Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 U.S. Dist. LEXIS 98476 (N.D. Cal. Mar. 2, 2007); *Avago Techs.*, 2007 U.S. Dist. LEXIS 39543.

1    is continuing to pursue the facts underlying the defense.  It would be unjust to reward Oracle for
2    thus far failing to provide the most relevant evidence with respect to version 1.0 of JavaOS.

### E.  Oracle Will Not Be Prejudiced If This Motion Is Granted

Significantly, despite its bluster, Oracle cannot point to any concrete prejudice that it would suffer if this motion were granted.  It has not identified any discovery it failed to take or any positions it would have changed had this motion been brought earlier.  Instead, it relies on alleged prejudice resulting from uncertainty about which defenses Google will ultimately be permitted to pursue.  *See* Opp. at 10:9-22.  This argument is perplexing.  Google has already voluntarily declined to pursue some of the defenses it elected on June 15, and there are already fewer defenses in play than Oracle requested when it entered into the parties' narrowing agreement in May.  Instead, what is clear is that the only party who stands to lose as a result of the timing of this motion is *Google*, because of the possibility that the Court may disallow some of its elected defenses.

In a final attempt to construct a prejudice argument, Oracle now accuses Google of improperly directing this motion to the Court, rather than Magistrate Judge Ryu, implying that it has been prejudiced by the notice period required under this District's local rules.  Oracle did not, however raise this argument in its letter opposing leave for Google to file the motion, Dkt. No. 183, and did not ask for this motion to be heard on shortened time, and thus was again complicit in creating the delay about which it complains.

### F.  Amendment Should Be Permitted Because the Defenses At Issue Are Among the Few Defenses That Google Selected on June 15

A final consideration in this motion is the fact that the defenses at issue are strong, as demonstrated by the fact that Google elected them on June 15.  In ruling on a motion for leave to amend a party's contentions, a court may properly consider whether it would be "unjust" to exclude material that is "highly material" to the merits of the case.  *Yodlee, Inc. v. CashEdge, Inc.*, No. C05-01550 SI, 2007 U.S. Dist. LEXIS 39564 at *4 (N.D. Cal. May 17, 2007); *see also Acco Brands*, 2008 U.S. Dist. LEXIS 88142 at *5 ("relevance of the newly-discovered prior art" a factor to consider in good cause determination).

The strength of these defenses means that not only Google, but also the general public, stands to benefit from a full and fair hearing of their merits.  As Judge Gajarsa of the Federal Circuit has noted, both that court and the Supreme Court have "recognized that there is a significant public policy interest in removing invalid patents from the public arena," citing a range of cases including the *U.S. v. Glaxo* case quoted in the Introduction.  *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1322 (Fed. Cir. 2004) (Gajarsa, J., concurring).[7]

Oracle's attempt to defeat Google's defenses on procedural grounds, versus on their merits, is a fitting strategy for the company.  Instead of competing in the marketplace with better, more innovative products, Oracle has resorted to the courtroom in an attempt to take a cut of Google's business – a business built on a fundamentally different business model and fundamentally different products than Oracle's – using patents that, even if valid and infringed, contribute at most "incremental improvements" to the accused system.  (Dkt. No. 230 at 2:11-12).  In the interests of justice, Google should be permitted a full opportunity to test the validity of these patents.

### III.     CONCLUSION

For all the foregoing reasons, Google respectfully requests that the Court grant its Amended Motion for Leave to Supplement Invalidity Contentions.


Dated:  August 3, 2011                                                         KEKER & VAN NEST LLP

                                                                              By: */s/ Daniel Purcell*
                                                                                  DANIEL PURCELL
                                                                                  Attorneys for Defendant
                                                                                  GOOGLE INC.

---

[7] *SmithKline Beecham* was later vacated upon hearing en banc and superseded by another opinion, but neither of those decisions implicates the accuracy of Judge Gajarsa's historical summary.  *See* 403 F.3d 1328 (Fed. Cir. 2005) *and* 403 F.3d 1331 (Fed. Cir. 2005).