PAGES 1 - 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE DONNA M. RYU, MAGISTRATE JUDGE

ORACLE AMERICA, INC.,          )
                               )
                               )
          PLAINTIFF,           )          NO. C-10-3561 WHA (DMR)
                               )
  VS.                          )          THURSDAY, JULY 21, 2011
                               )
GOOGLE, INC.,                  )          OAKLAND, CALIFORNIA
                               )
          DEFENDANT.           )
_____)


**REPORTER'S TRANSCRIPT OF TELEPHONIC PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          BOIES SCHILLER & FLEXNER LLP
                           1999 HARRISON STREET, SUITE 900
                           OAKLAND, CALIFORNIA 94612
                  BY:  STEVEN C. HOLTZMAN, ESQUIRE

                           MORRISON & FOERSTER
                           755 PAGE MILL ROAD
                           PALO ALTO, CALIFORNIA 94304
                  BY:  MICHAEL A. JACOBS, ESQUIRE


                           ORACLE CORPORATION
                           500 ORACLE PARKWAY, 50P7
                           REDWOD SHORES, CALIFORNIA 94065
                  BY:  MATTHEW M. SARBORARIA, ESQUIRE


              (APPEARANCES CONTINUED ON NEXT PAGE)

REPORTED BY:          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                      OFFICIAL COURT REPORTER

```
1

2   FOR DEFENDANT:          KEKER & VAN NEST LLP
                            633 BATTERY STREET
3                           SAN FRANCISCO, CALIFORNIA 9411
                      BY:   ROBERT VAN NEST, ESQUIRE
4                           CHRISTA M. ANDERSON, ESQUIRE

5                           KING & SPALDING LLP
                            1185 AVENUE OF THE AMERICAS
6                           NEW YORK, NEW YORK 10036
                      BY:   BRUCE W. BABER, ESQUIRE
7                           CHRISTOPHER C. CARNAVAL, ESQUIRE

8
                            GOOGLE, INC.
9                           1600 AMPHITHEATRE PARKWAY
                            MOUNTAIN VIEW, CALIFORNIA 94043
10                    BY:   RENNY F HWANG, ESQUIRE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | THURSDAY, JULY 21, 2011                                    11:35 A.M. |
| 2 | P R O C E E D I N G S |
| 3 | **THE CLERK:**  CALLING CIVIL CASE C-10-3561 WHA, ORACLE |
| 4 | AMERICA INCORPORATED VERSUS GOOGLE, INCORPORATED. |
| 5 | COUNSEL, PLEASE STATE YOUR APPEARANCES. |
| 6 | **MR. HOLTZMAN:**  FOR ORACLE AMERICA, STEVE HOLTZMAN, |
| 7 | BOIES, SCHILLER & FLEXNER. |
| 8 | **MR. JACOBS:**  MICHAEL JACOBS, MORRISON & FOERSTER. |
| 9 | **MR. SARBORARIA:**  AND MATT SARBORARIA IN-HOUSE |
| 10 | COUNSEL FOR ORACLE. |
| 11 | **THE COURT:**  GOOD MORNING. |
| 12 | **MR. VAN NEST:**  AND FOR GOOGLE IT'S BOB VAN NEST AND |
| 13 | CHRISTA ANDERSON WITH KEKER & VAN NEST.  BRUCE BABER AND CHRIS |
| 14 | CARNAVAL WITH KING & SPALDING.  WE HAVE RENNY HWANG FROM GOOGLE |
| 15 | ON THE LINE AS WELL. |
| 16 | GOOD MORNING. |
| 17 | **THE COURT:**  GOOD MORNING. |
| 18 | GOODNESS, YOU'VE GOT THE WHOLE GANG HERE OR AT LEAST |
| 19 | A GOOD CHUNK OF THE WHOLE GANG. |
| 20 | ALL RIGHT.  SO I DID REVIEW THE JULY 14TH JOINT |
| 21 | LETTER AND I READ IT CAREFULLY.  I DON'T NEED ANYTHING |
| 22 | REPEATED. |
| 23 | WHAT I AM GOING TO DO IS GO THROUGH DEPONENT BY |
| 24 | DEPONENT.  AND I HAVE QUESTIONS FOR ORACLE COUNSEL SO THAT I |
| 25 | CAN GET A BIT MORE DETAIL ABOUT WHAT IT IS THEY THINK IS |

1   IMPORTANT TO LEARN FROM THESE PARTICULAR DEPONENTS.  I WILL

2   THEN GIVE A TENTATIVE AND I WILL ALLOW ARGUMENT ON BOTH SIDES.

3           SO, I AM GOING TO TAKE THEM IN ORDER THAT YOU LISTED

4   THEM IN THE JOINT LETTER STARTING WITH MR. PAGE.  SO THESE

5   QUESTIONS ARE DIRECTED TO ORACLE.

6           ORACLE SAYS THAT MR. PAGE WAS INVOLVED IN

7   NEGOTIATIONS FOR THE JAVA LICENSE.  HOW MUCH TIME DID MR. PAGE

8   SPEND IN THOSE NEGOTIATIONS APPROXIMATELY AND WHAT WAS HIS

9   ROLE?

10          **MR. HOLTZMAN:**  YOUR HONOR, STEVE HOLTZMAN FOR

11  ORACLE.

12          MR. PAGE, WE UNDERSTAND, HAD A NUMBER OF

13  CONVERSATIONS AT THE HIGHEST LEVEL WITH ORACLE.  AND I ACTUALLY

14  DON'T HAVE AN ESTIMATE FOR YOU AS TO EXACTLY HOW MUCH TIME

15  THOSE CONSUMED.  THERE WERE, I BELIEVE, A NUMBER OF

16  CONVERSATIONS.

17          WE WANTED TO ASK ABOUT THAT.  WE, OF COURSE, ALSO

18  WANT TO ASK HIM ABOUT THE INTERNAL GOOGLE SIDE OF DELIBERATIONS

19  AND DISCUSSIONS REGARDING THOSE CONVERSATIONS AND NEGOTIATIONS

20  OVER A SEVERAL YEAR PERIOD, AMONG OTHER THINGS.

21          **THE COURT:**  HOW LONG DID THOSE NEGOTIATIONS LAST?

22          **MR. HOLTZMAN:**  THERE WERE SEVERAL ITERATIONS OF THE

23  NEGOTIATIONS.  THE FIRST ITERATION SPANNED PROBABLY EIGHT OR

24  NINE MONTHS BETWEEN 2005 AND 2006.  THEN THERE WERE ONE OR TWO

25  ADDITIONAL ITERATIONS IN 2008 AND 2009.  AND THEN IN THE MONTHS

1    PRIOR TO THE FILING OF THIS LAWSUIT IN AUGUST OF 2010, THERE

2    WERE SOME ADDITIONAL NEGOTIATIONS AND DISCUSSIONS.

3            **THE COURT:**  OKAY.  NOW ORACLE ALSO SAYS THAT

4    MR. PAGE REPORTEDLY MADE THE DECISION TO ACQUIRE ANDROID,

5    INCORPORATED.  HOW IS THAT RELEVANT TO THIS CASE?

6            **MR. HOLTZMAN:**  THE IMPORTANCE OF ANDROID AND ITS

7    TECHNOLOGY AND THE VALUE OF THAT TECHNOLOGY ARE OF INTEGRAL

8    IMPORTANCE TO THIS CASE, PARTICULARLY WITH REGARD TO ISSUES OF

9    DAMAGES.  AND A LARGE PORTION OF THE VALUE, WE UNDERSTAND, OF

10   ANDROID WAS ITS STRATEGIC VALUE TO GOOGLE'S BUSINESS AS A

11   WHOLE.  THAT'S WHY MR. PAGE, AMONG OTHERS, WAS DEEPLY INVOLVED

12   IN THAT.

13           SO THE DISCUSSIONS AND DECISIONS RELATING TO THE

14   ACQUISITION OF ANDROID, WE THINK, WILL INFORM THESE ISSUES.

15           **THE COURT:**  OKAY.  SO THE REASON YOU THINK IT'S

16   RELEVANT TO ASK MR. PAGE ABOUT THE DECISION TO ACQUIRE ANDROID

17   REALLY HAS TO DO WITH DAMAGES.

18           **MR. HOLTZMAN:**  YES, I THINK SO.  CERTAINLY FIRST AND

19   FOREMOST, IT IS ENTIRELY POSSIBLE, WE DON'T KNOW UNTIL WE HAVE

20   HIS TESTIMONY, THAT ISSUES RELATING TO -- AT THE TIME SUN'S

21   INTELLECTUAL PROPERTY AND WHETHER ANDROID RAN INTO ANY PROBLEMS

22   WITH SUN'S INTELLECTUAL PROPERTY COULD HAVE BEEN DISCUSSED.

23           **THE COURT:**  SORRY FOR THE PAUSES.  I AM TRYING TO

24   TAKE GOOD NOTES AS WE GO ALONG.

25                   (PAUSE IN THE PROCEEDINGS.)

1          NOW, WITH RESPECT TO MR. NISHAR, WHAT WAS

2     MR. NISHAR'S JOB TITLE AT THE TIME -- WELL, NISHAR IS DESCRIBED

3     BY ORACLE AS A FORMER GOOGLE EMPLOYEE WHO STARTED AND MANAGED

4     GOOGLE'S MOBILE INITIATIVES WORLDWIDE FROM 2005 TO 2007.

5          SO, FILL ME IN ON WHAT NISHAR'S TITLE AND POSITION

6     WITHIN THE COMPANY WAS AND WHAT TIME FRAME WE ARE TALKING

7     ABOUT.

8          **MR. HOLTZMAN:**  SURE.

9          YOUR HONOR, I ACTUALLY DON'T HAVE HIS TITLE IN FRONT

10    OF ME.  I APOLOGIZE FOR THAT.  OUR UNDERSTANDING IS THAT HE WAS

11    IN CHARGE OF GOOGLE'S MOBILE BUSINESS, AT LEAST FOR THIS PERIOD

12    2005 TO 2007 AS REFERRED TO IN HIS LINKEDIN PROFILE.

13         THE MOBILE BUSINESS AT GOOGLE IS SOMETHING THAT

14    PRECEDED THE ACQUISITION OF ANDROID, BUT SOMETHING THAT ANDROID

15    FIT INTO.  AND THE INTERACTION BETWEEN THE ANDROID BUSINESS AND

16    GOOGLE'S OTHER MOBILE BUSINESS AND MOBILE STRATEGY IS SOMETHING

17    THAT'S IMPORTANT IN A NUMBER OF RESPECTS IN THIS CASE.

18         MR. NISHAR, AMONG OTHER THINGS, MADE JOINT

19    PRESENTATIONS REGARDING ANDROID AND THE IMPORTANCE OF ANDROID

20    AND STRATEGY RELATING TO INTELLECTUAL PROPERTY IN ANDROID TO

21    THE HIGHEST EXECUTIVES OF GOOGLE, ALONG WITH MR. RUBIN WHO HAD

22    COME IN AND BECAME HEAD OF THE ANDROID BUSINESS.

23         **THE COURT:**  NOW WITH RESPECT TO MR. NISHAR'S

24    INVOLVEMENT IN THE NEGOTIATIONS FOR A JAVA LICENSE, AGAIN, WHAT

25    WAS HIS ROLE IN THAT?  WAS HE SOMEBODY WHO WAS A KEY TO THE

1    NEGOTIATION TABLE OR SOMEBODY WHO WAS MORE TANGENTIAL?

2              **MR. HOLTZMAN:**  HIS NAME COMES UP AND IT'S COME UP IN

3    DOCUMENTS RELATING TO THE NEGOTIATIONS, BUT IT'S MORE -- TO BE

4    HONEST, THAT'S MORE OF A QUESTION MARK FOR US.  WHAT HIS

5    INVOLVEMENT WAS IN PARTICULARLY THE GOOGLE SIDE OF THOSE

6    DELIBERATIONS AND THE INTERNAL GOOGLE SIDE.  I DON'T HAVE A

7    GOOD SENSE OF THAT.

8              **THE COURT:**  SO YOU DO KNOW THAT HE WAS INVOLVED IN

9    THE NEGOTIATIONS BUT YOU HAVE NO IDEA WHETHER IT WAS ONE

10   MEETING OR WHETHER HE WAS CONSTANTLY AT THE TABLE?

11             **MR. HOLTZMAN:**  NO, I DON'T HAVE A SENSE OF THAT.

12             I AM NOT RECALLING RIGHT NOW ANY QUANTIFICATION OF

13   THAT THAT WE HAVE GOTTEN FROM SUN OR ORACLE PEOPLE WHO WE HAVE

14   BEEN ABLE TO TALK TO.  RECOGNIZE THAT SOME OF THESE

15   NEGOTIATIONS, AS I SAID BEFORE, TOOK PLACE A NUMBER OF YEARS

16   AGO AND SOME OF THE PEOPLE INVOLVED IN THEM ON THE SUN SIDE ARE

17   NO LONGER WITH ORACLE.

18             **THE COURT:**  CAN YOU FOCUS FOR THE MOMENT ON THE

19   THEORY AROUND WILLFULNESS.  TO WHAT EXTENT DO YOU BELIEVE

20   MR. NISHAR HAS INFORMATION THAT ORACLE BELIEVES IS RELEVANT TO

21   WILLFUL INFRINGEMENT?

22             **MR. HOLTZMAN:**  I BELIEVE, ALTHOUGH I WOULD HAVE

23   TO -- TO BE ABSOLUTELY SURE, I WOULD HAVE TO LOOK BACK AT THE

24   DOCUMENT, BUT I BELIEVE SOME OF THE PRESENTATION DOCUMENTS THAT

25   I REFERRED TO EARLIER ON WHICH MR. NISHAR IS A CO-AUTHOR REFER

1   TO THE NEED FOR A LICENSE AND THE EXTENT TO WHICH THE

2   INTELLECTUAL PROPERTY INVOLVED IN JAVA INCLUDING THE PATENTS

3   AND THE COPYRIGHTS IN SUIT WERE CORE, WERE CRITICAL, WERE

4   CENTRAL TO ANDROID.

5          **THE COURT:**  OKAY.

6          **MR. HOLTZMAN:**  THESE ARE RECOGNITIONS BEFORE THE

7   INFRINGEMENT BEGAN, AND THAT'S HOW IT RELATES TO WILLFULNESS.

8          **THE COURT:**  I SEE.  SO JUST TO RECAP HERE TO MAKE

9   SURE I UNDERSTAND.

10          IT'S YOUR REPRESENTATION TO THE COURT THAT

11   MR. NISHAR WAS INVOLVED IN PRESENTATIONS AT THE HIGHEST

12   EXECUTIVE LEVELS IN WHICH HE -- THE PRESENTATION REPRESENTED

13   THAT THERE WAS A NEED FOR LICENSES FOR THIS PARTICULAR PIECE OF

14   THE MOBILE BUSINESS?

15          **MR. HOLTZMAN:**  YES.  AND I WANT TO BE CAREFUL NOT TO

16   UNWITTINGLY MISREPRESENT ANYTHING.

17          THERE ARE A NUMBER OF PRESENTATIONS.  I DON'T HAVE

18   THEM IN FRONT OF ME RIGHT NOW.  SOME OF THEM HAVE NAMES ON THEM

19   SPECIFICALLY, INCLUDING MR. NISHAR'S, AND OTHERS DON'T.  SO WE

20   DON'T KNOW WHO ALL THE AUTHORS OF THOSE PRESENTATIONS ARE.  AND

21   IT IS THIS COLLECTION OF PRESENTATIONS THAT RAISE THE ISSUES I

22   DESCRIBED.

23          **THE COURT:**  DO YOU HAVE ANYTHING TO SUPPORT THAT

24   MR. NISHAR WAS, IN FACT, PART OF THESE PRESENTATIONS WHERE THAT

25   REPRESENTATION WAS MADE?

1          **MR. HOLTZMAN:**  THE CONNECTION BETWEEN THOSE SPECIFIC

2   REPRESENTATIONS WITH REGARD TO THE NEED FOR A LICENSE AND HIS

3   NAME IS WHAT I AM UNCERTAIN ABOUT.  WE DO HAVE CONCRETE

4   EVIDENCE ON THE FACE OF THE DOCUMENTS THAT HE WAS ONE OF THE

5   AUTHORS OF SOME OF THESE PRESENTATIONS.

6          **THE COURT:**  HOW MANY OTHER AUTHORS ARE WE TALKING

7   ABOUT?

8          **MR. HOLTZMAN:**  ONE.

9          **THE COURT:**  WHO'S THAT?

10         **MR. HOLTZMAN:**  MR. RUBIN.

11         **THE COURT:**  OKAY.  BUT IT'S JUST THE TWO OF THEM

12  THAT MADE THESE JOINT PRESENTATIONS AT WHICH THE PARTICULAR

13  REPRESENTATION WAS MADE ABOUT LICENSING?

14         **MR. HOLTZMAN:**  AS I SAID, SOME OF THE PRESENTATIONS

15  DON'T HAVE IDENTIFYING INFORMATION IN TERMS OF WHO THE AUTHORS

16  WERE.

17         **THE COURT:**  ARE THEY IN THE SAME TIME PERIOD?

18         **MR. HOLTZMAN:**  YES.

19         **THE COURT:**  LET'S TURN TO MR. LEE.

20         MR. LEE IS DESCRIBED IN YOUR PAPERS AS A FORMER

21  GOOGLE EMPLOYEE, A SENIOR SOFTWARE ENGINEER AT THE TIME WHO LED

22  CORE LIBRARY DEVELOPMENT FOR ANDROID.

23         SO, FIRST, LET ME CONFIRM WHEN HE WAS AT GOOGLE, WAS

24  HIS TITLE SOMETHING LIKE SENIOR SOFTWARE ENGINEER?

25         **MR. HOLTZMAN:**  THAT'S MY UNDERSTANDING YOUR HONOR.

1          **THE COURT:**  WHAT IS THE TIME FRAME THAT HE WAS AT

2     GOOGLE?

3          **MR. HOLTZMAN:**  I DON'T HAVE A SPECIFIC TIME FRAME

4     HERE.  WE HAVE SEEN NUMEROUS E-MAILS WITH HIS NAME ON THEM,

5     BOTH AUTHORED AND RECEIVED, THAT SPAN A NUMBER OF YEARS.  I CAN

6     SAY THAT, BUT I DON'T HAVE A START AND END DATE.

7          **THE COURT:**  CAN YOU GIVE ME A ROUGH ESTIMATE?  I

8     WON'T HOLD YOU TO IT, BUT I DON'T KNOW IF YOU ARE TALKING ABOUT

9     THE '90S, OR IN THE 2000'S, OR WHAT?

10          **MR. HOLTZMAN:**  BETWEEN 2005 AND 2010.

11          **THE COURT:**  OKAY.  SO THE DESCRIPTION LETTER IS

12     FAIRLY VAGUE.  ORACLE CLAIMS THAT HE WAS INVOLVED IN QUOTE

13     "CERTAIN ANDROID LIBRARIES" AND THAT DOCUMENTS REFLECT

14     COMMUNICATIONS BY OR FROM HIM THAT QUOTE "RELATE TO OTHER

15     MATTERS THAT ARE RELEVANT TO THE CLAIMS AND ISSUES IN THIS

16     CASE".

17          **MR. HOLTZMAN:**  RIGHT.

18          **THE COURT:**  SO YOU'RE GOING TO HAVE TO GIVE ME MORE

19     THAN THAT FOR ME TO BE ABLE TO ASSESS THIS.

20          **MR. HOLTZMAN:**  OKAY.  THE -- SO HE, AS WE DESCRIBE

21     IN THE LETTER, MR. LEE LED CORE LIBRARY DEVELOPMENT FOR

22     ANDROID.  AND AS WE EXPLAINED IN THE LETTER, I GRANT YOU

23     GENERALLY, THE COPYRIGHT CLAIMS IN THIS CASE HAVE TO DO WITH

24     GOOGLE'S COPYING OF CORE CLASS LIBRARIES THAT ARE PART OF JAVA.

25     THEY'RE JAVA CLASS LIBRARIES.

1          SO TO THE EXTENT THAT MR. LEE LED CORE LIBRARY

2     DEVELOPMENT, IT IS NATURAL TO CONCLUDE, CERTAINLY ASSUME THAT

3     HE HAS AWARENESS, AS THE LEADER OF THAT EFFORT, OF ISSUES

4     RELATING TO THE INFRINGEMENT IN THE COPYING OF CORE CLASS

5     LIBRARIES FROM JAVA.

6          NOW, AS I MENTIONED BEFORE, HIS NAME ALSO APPEARS ON

7     A LARGE NUMBER OF DOCUMENTS DISCUSSING A VARIETY OF ISSUES

8     RELATING TO BOTH COPYRIGHT AND I BELIEVE THE PATENT

9     INFRINGEMENT CLAIMS.  NOW, I DON'T HAVE A LIST OR QUOTES IN

10    FRONT OF ME TODAY, BUT I CAN REPRESENT THAT THERE'S A

11    SIGNIFICANT CORPUS OF MATERIAL THAT RELATE TO DAMAGES AND

12    LIABILITY ISSUES IN THE CASE.

13         **THE COURT:**  CAN YOU BE MORE SPECIFIC THAN THAT?  IN

14    WHAT WAYS DO THEY -- WHAT IS THE MEAT OF THE -- THAT YOU WOULD

15    BE QUESTIONING HIM ABOUT?

16         **MR. HOLTZMAN:**  DISCUSSIONS OF THE VALUE OF JAVA

17    TECHNOLOGY GENERALLY AND CLASS LIBRARIES SPECIFICALLY, SO GOING

18    TO DAMAGES, AND OTHER ISSUES RELATING TO AWARENESS OF THE NEED

19    FOR A LICENSE OR THE AWARENESS OF INTELLECTUAL PROPERTY ISSUES.

20    THAT'S PROBABLY AS SPECIFIC TO BE TRUTHFUL AS I CAN BE.  AGAIN,

21    I DON'T WANT TO MISREPRESENT ANYTHING.

22         **THE COURT:**  LET ME ASK YOU FURTHER ABOUT YOUR LAST

23    STATEMENT ABOUT QUESTIONING LEE ABOUT HIS AWARENESS OF THE NEED

24    FOR LICENSES.

25         YOU DID WRITE IN YOUR LETTER THAT DOCUMENTS QUOTE

1    "EVIDENCE INTIMATE KNOWLEDGE OF SUN'S LICENSING PRACTICES WHICH

2    IS RELEVANT TO CLAIMS OF WILLFUL INFRINGEMENT".

3            AGAIN, I AM NOT REALLY SURE WHAT THAT MEANS, BUT I

4    AM GOING TO GIVE YOU AN OPPORTUNITY TO EXPLAIN THAT TO ME.

5            **MR. HOLTZMAN:**  SURE.

6            SUN, AT THE TIME BEFORE IT WAS ACQUIRED BY ORACLE,

7    HAD A VARIETY OF TYPES OF LICENSES FOR INTELLECTUAL PROPERTY

8    RELATING TO JAVA.  FOR EXAMPLE, ONE OF THOSE WAS WHAT'S

9    KNOWN --

10           **THE COURT:**  I'M SORRY, MR. HOLTZMAN, WE ARE ACTUALLY

11   HAVING THIS REPORTED, SO OUR REPORTER NEEDS YOU TO SLOW DOWN A

12   LITTLE BIT AND ESPECIALLY WHEN YOU COME TO THINGS LIKE THOSE

13   NAMES.

14           **MR. HOLTZMAN:**  I APOLOGIZE.

15           **THE COURT:**  PLEASE RESTATE THEM.

16           **MR. HOLTZMAN:**  IT'S THE GPL, NEW PUBLIC LICENSE, IF

17   I HAVE THAT RIGHT, AND THERE ARE QUESTIONS INTERNAL TO GOOGLE

18   AS TO WHETHER IT WOULD BE ACCEPTABLE AS A BUSINESS MATTER TO

19   TAKE A LICENSE TO JAVA TECHNOLOGY PURSUANT TO THE TERMS OF THE

20   GPL.

21           THE PROBLEM FOR GOOGLE, AS WAS DISCUSSED INTERNALLY,

22   WAS THAT THE GPL CARRIED WITH IT RESTRICTIONS ON WHAT COULD BE

23   DONE SORT OF DOWNSTREAM WITH THE TECHNOLOGY.  AND THAT MADE IT

24   UNACCEPTABLE TO GOOGLE, AS GOOGLE INTERNALLY CONCLUDED,

25   INCLUDING DISCUSSIONS INVOLVING MR. LEE TO TAKE A LICENSE UNDER

```
1    THAT REGIME.

2              THIS, IN TURN, OF COURSE, RELATES TO ISSUES OF

3    WILLFULNESS AND AWARENESS OF THE NEED FOR A LICENSE.

4              THE COURT:  YOU ARE SAYING THAT THAT CORPUS OF

5    DOCUMENTS THAT HAS TO DO WITH THIS GPL POINTS VERY CLEARLY AND

6    SIGNIFICANTLY AT MR. LEE'S INVOLVEMENT IN THESE QUESTIONS?

7              MR. HOLTZMAN:  I BELIEVE SO, YOUR HONOR.

8              THE COURT:  LET ME ASK ABOUT MR. LINDHOLM NOW WHO IS

9    DESCRIBED AS A FORMER SUN MICRO SYSTEMS EMPLOYEE AND A CURRENT

10   ANDROID SOFTWARE ENGINEER.

11             SO, WHEN WAS HE AT SUN AND WHEN DID HE COME OVER TO

12   ANDROID?

13             MR. HOLTZMAN:  AGAIN, SITTING HERE TODAY I DON'T

14   KNOW THE EXACT TIME.  I BELIEVE IT WAS IN THE, I WANT TO SAY

15   2004-2005 TIME FRAME.  THAT MAY BE OFF.

16             THE COURT:  OKAY.  BUT AROUND THEN YOU THINK HE

17   MOVED OVER TO ANDROID?

18             MR. HOLTZMAN:  TO GOOGLE.  I AM HAPPY TO STAND

19   CORRECTED IF ANYONE ELSE ON THE CALL KNOWS THE ANSWER TO THAT.

20             THE COURT:  WHEN HE -- SO YOUR LETTER SAYS THAT

21   MR. LINDHOLM WAS INVOLVED IN THE GOOGLE/SUN LICENSE

22   DISCUSSIONS.  AGAIN, WHAT WAS HIS ROLE AT THE TIME BY WAY OF

23   JOB TITLE AND WHAT WAS HIS ROLE IN THOSE NEGOTIATIONS?

24             MR. HOLTZMAN:  I DON'T KNOW HIS EXACT JOB TITLE.

25   HIS INVOLVEMENT, I BELIEVE, GOES TO THOSE EIGHT OR NINE MONTHS
```

1    IN 2005 AND 2006 JUST PRIOR TO THE TIME THE INFRINGEMENT BEGAN.

2    AND I BELIEVE HIS INVOLVEMENT, BASED ON TALKING TO PEOPLE AT

3    ORACLE AND THE DOCUMENTS THAT WE HAVE SEEN, HAD TO DO WITH THE

4    NATURE OF THE LICENSE AND COLLABORATION FROM A TECHNICAL

5    STANDPOINT THAT THE PARTIES CONTEMPLATED ENTERING INTO.

6            SO HIS TESTIMONY IN THIS COULD GO TO, YOU KNOW,

7    WILLFULNESS ISSUES.  THEY COULD GO TO INFRINGEMENT ISSUES, AS

8    WELL AS DAMAGES ISSUES TO THE EXTENT THOSE DISCUSSIONS COMBINE

9    BUSINESS ISSUES HAVING TO DO WITH, FOR EXAMPLE, THE AMOUNT OR

10   STRUCTURE OF A LICENSE AS WELL AS THE TECHNICAL ASPECT OF HOW

11   JAVA TECHNOLOGY WOULD BE USED BY ANDROID.

12           **THE COURT:**  OKAY.  SO JUST TO SUMMARIZE, YOU BELIEVE

13   THAT HIS INVOLVEMENT IN THOSE NEGOTIATIONS WAS CONFINED TO THE

14   EIGHT-MONTH, 2005, 2006 DISCUSSIONS THAT HE -- HIS ROLE WAS AS

15   A TECHNICAL SORT OF ENGINEER WHO WAS LOOKING AT THE ASPECTS OF

16   THE LICENSE THAT WAS BEING DISCUSSED?

17           **MR. HOLTZMAN:**  YES, YOUR HONOR.  BUT I -- THAT WAS

18   NOT -- THE QUESTIONS WE HAVE FOR HIM -- WE WOULD HAVE FOR HIM

19   WOULD NOT BE CONFINED TO THAT PERIOD OF TIME.

20           HE IS SOMEONE WHO HAS ALSO PARTICIPATED IN VERY

21   HIGH-LEVEL DISCUSSIONS WITHIN GOOGLE AS WE UNDERSTAND IT FROM

22   THE DOCUMENTS RELATING TO ISSUES SUCH AS WHETHER GOOGLE HAD

23   VIABLE NONINFRINGING ALTERNATIVES TO THE PATENTS AND COPYRIGHTS

24   AT ISSUE.

25           **THE COURT:**  SORRY, WHETHER GOOGLE HAD VIABLE

```
1    NONINFRINGING --

2              MR. HOLTZMAN:  ALTERNATIVES.

3              THE COURT:  WHEN WERE THOSE DISCUSSIONS?

4              MR. HOLTZMAN:  AT LEAST IN THE MONTHS PRIOR TO THE

5    FILING OF THIS LAWSUIT IN 2010.

6              THE COURT:  OKAY.  GIVE ME A MOMENT.  I AM GOING TO

7    REVIEW MY NOTES.  I WILL GIVE YOU MY THINKING AND THEN I WILL

8    ALLOW ARGUMENT.

9                   (PAUSE IN THE PROCEEDINGS.)

10             THE COURT:  OKAY.  HERE IS MY TENTATIVE.

11             WITH RESPECT TO -- SO, I WOULD ALLOW ALL FOUR

12   DEPOSITIONS, BUT FOR LIMITED PERIODS OF TIME -- SORRY, LIMITED

13   AMOUNT OF TIME FOR THE DEPOSITION AND ON LIMITED SUBJECTS.

14             SO FOR MR. PAGE, MY TENTATIVE IS FOUR HOURS -- NONE

15   OF THESE ARE COUNTING BREAKS.  SO FOUR HOURS EXCLUSIVE OF

16   BREAKS ON THE TOPICS OF WILLFULNESS AND ALSO THE VALUE OF

17   ANDROID TO GOOGLE.

18             WITH RESPECT TO MR. NISHAR, FOUR HOURS ON THE ISSUE

19   OF WILLFULNESS.  SO QUESTIONS ABOUT THE JOINT PRESENTATIONS

20   THAT HAVE TO DO WITH SOME INDICATION THAT GOOGLE BELIEVED THAT

21   IT NEEDED A LICENSE.

22             WITH MR. LEE, SAME THING, FOUR HOURS ON WILLFULNESS

23   AND ALSO ON THE VALUE OF THIS PARTICULAR TECHNOLOGY.

24             TWO HOURS ON MR. LINDHOLM ON THE ISSUE OF

25   WILLFULNESS AND WHETHER THAT'S ABOUT THE 2005, 2006
```

1   NEGOTIATIONS OR THE MORE RECENT DISCUSSIONS AT GOOGLE ABOUT

2   WHETHER GOOGLE HAD VIABLE NONINFRINGING ALTERNATIVES.

3           THAT'S MY TENTATIVE, BUT I WILL NOW HEAR ARGUMENT.

4           SO, MR. VAN NEST?

5       **MR. VAN NEST:**  THANK YOU, YOUR HONOR.  I WILL TAKE

6   THE FOUR IN ORDER, BUT I WANT TO MAKE A COUPLE OF GENERAL

7   COMMENTS FIRST.

8           AND ONE IS THAT I DON'T WANT THE COURT TO LOSE SIGHT

9   OF THE FACT THAT THEY HAVE ALREADY HAD TEN INDIVIDUAL

10  DEPOSITIONS AND 15 ADDITIONAL DEPOSITIONS ON 30(B)(6) TOPICS.

11      **THE COURT:**  MR. VAN NEST, I PROMISE YOU THAT I READ

12  THE LETTER VERY CAREFULLY, AND I AM AWARE OF THE CONTEXT.

13      **MR. VAN NEST:**  FAIR ENOUGH.

14      **THE COURT:**  AND THE RULES -- I HAVE ALSO READ, GONE

15  BACK AND READ RULE 30(A)(2).  I HAVE READ JUDGE ALSUP'S ORDER.

16  THERE ARE PRESUMPTIVE LIMITS, BUT THERE'S LEEWAY TO ALLOW MORE

17  DEPOSITIONS, BOTH UNDER THE FEDERAL RULE AND UNDER JUDGE

18  ALSUP'S ORDER.  BUT I AM REQUIRING A HIGHER SHOWING BECAUSE IT

19  HAS TO BE CONSISTENT WITH RULE 26(B)(2) AND THAT IT NOT BE

20  UNREASONABLY CUMULATIVE OR DUPLICATIVE.

21          SO THOSE WERE THE CONCEPTS I HAD IN MIND AS I WAS

22  LISTENING TO THE PRESENTATION AND AS I READ THE LETTER.

23      **MR. VAN NEST:**  FAIR ENOUGH.

24      **THE COURT:**  PLEASE BEGIN.

25      **MR. VAN NEST:**  LET ME TALK ABOUT MR. PAGE FIRST.

1          WE MENTIONED, OBVIOUSLY, HE'S THE CEO OF GOOGLE.

2     WE'D ASKED FOR APEX BRIEFING ON HIM, WHICH WASN'T POSSIBLE TO

3     DO WITHIN A TWO-PAGE LIMIT, BUT WHAT I DO KNOW ABOUT MR. PAGE

4     IS THIS:  HE WAS NOT AN ACTIVE PARTICIPANT IN ANY OF THESE

5     DISCUSSIONS.  HE HAS BEEN A SENIOR PERSON AT GOOGLE THROUGHOUT.

6          AS YOUR HONOR NOTED, THE ACQUISITION OF ANDROID IS

7     HARDLY RELEVANT TO THESE PATENT CLAIMS.  AND WHAT I HEARD

8     MR. HOLTZMAN SAY WAS HE'S PRIMARILY RELEVANT TO DAMAGES IN THAT

9     HE EVALUATED PURCHASING ANDROID AND THE LIKE.

10          WE NOW HAVE THEIR DAMAGES REPORT, THEIR EXPERT

11     REPORT.  THERE'S NO MENTION IN THERE OF THE VALUE OF THE

12     ANDROID FRANCHISE OR ANY DELIBERATIONS THAT MR. PAGE MAY HAVE

13     PARTICIPATED IN.  IT'S A LENGTHY, EXTENSIVE EXPERT REPORT.

14     THERE IS SIMPLY NOTHING IN IT ABOUT MR. PAGE OR THE PURCHASE OF

15     ANDROID, OR ANYTHING LIKE THAT.

16          AND WITH RESPECT TO LICENSE NEGOTIATIONS, AS YOUR

17     HONOR CAN IMAGINE, THOSE WERE ALWAYS LED BY MR. RUBIN, WHOM

18     THEY HAVE ALREADY DEPOSED FOR A DAY, AND HAVE ASKED FOR YET

19     ANOTHER DAY, AND MR. PAGE WAS NOT AN ACTIVE PARTICIPANT IN

20     THOSE, ALTHOUGH I AM SURE HE WAS KEPT APPRISED OF THE DETAILS.

21          SO IF THE POINT OF PAGE IS TO VALUATION OF ANDROID,

22     THAT'S SIMPLY NOT SOMETHING THAT'S ANYWHERE NEAR THEIR EXPERT

23     REPORT, NOT SOMETHING THAT IS COMMENTED UPON BY COCKBURN, IT'S

24     IRRELEVANT.  AND GIVEN WHO HE IS, IF YOUR HONOR WOULD BE

25     INCLINED TO ALLOW IT, WE WOULD LIKE TO HAVE A CHANCE TO DO SOME

1    APEX BRIEFING.

2          I HAVEN'T SEEN ANY OF THE DOCUMENTS THAT

3    MR. HOLTZMAN IS REFERRING TO.  I DON'T THINK HE IDENTIFIED ANY

4    DOCUMENTS PARTICULARLY RELEVANT TO MR. PAGE, AND AS TO HIM, I

5    THINK THEY HAVEN'T MET EVEN THE MINIMAL BURDEN TO GET AT

6    SOMEONE'S CEO.

7          **THE COURT:**  ARE YOU SAYING -- WHEN YOU CALL HIM NOT

8    AN ACTIVE PARTICIPANT, I AM NOT SURE WHAT THAT MEANS.  ARE YOU

9    SAYING HE DIDN'T PARTICIPATE AT ALL, ZERO?

10         **MR. VAN NEST:**  NO.  I AM SAYING I DON'T THINK HE WAS

11   INVOLVED IN ANY FACE-TO-FACE NEGOTIATIONS EITHER ON THE SUN

12   PART OF IT IN '05 OR '06, OR '08 OR '09.  I AM NOT SURE ABOUT

13   THE ORACLE DISCUSSIONS IN 2010.  BUT THOSE OCCURRED, YOU KNOW,

14   WITHIN A COUPLE OF WEEKS OR SO BEFORE THE LAWSUIT WAS FILED.

15   SO, THAT'S HARDLY THE CORE OF RELEVANCE.

16         I AM NOT AWARE THAT MR. PAGE WAS INVOLVED IN ANY

17   NEGOTIATIONS WITH SUN IN '05, '06, '08 OR '09.  HE MAY HAVE

18   BEEN KEPT APPRISED OF WHAT WAS HAPPENING.  I AM NOT EVEN SURE

19   OF THAT, BUT I AM NOT AWARE THAT HE WAS INVOLVED IN ANY OF THE

20   NEGOTIATIONS THEMSELVES.

21         AND, AGAIN, WHILE HE MAY HAVE BEEN INVOLVED IN

22   MAKING THE ULTIMATE DECISION TO ACQUIRE ANDROID, THAT'S JUST

23   NOT A FACTOR THAT'S PLAYED ANY ROLE IN THEIR EXPERT'S DAMAGE

24   REPORT.

25         **THE COURT:**  OKAY.  SO WHAT I WILL DO ON PAGE, I AM

```
1    STILL GOING TO ALLOW IT.  I DON'T NEED APEX BRIEFING.  I HAVE
2    READ THE APEX CASES.  I AM GOING TO CONFINE IT TO TWO HOURS.
3    AND, YOU KNOW, IT WILL BE SHORTER IF IT TURNS OUT THAT -- THEY
4    MAY NOT NEED ALL TWO HOURS IF IT TURNS OUT HE REALLY HAS VERY
5    LITTLE TO SAY ABOUT HIS KNOWLEDGE OF THE NEGOTIATIONS.  BUT TO
6    THE EXTENT HE WAS BEING KEPT APPRISED, I THINK THIS DOES GO TO
7    WILLFULNESS.  IF THERE IS A CLAIM THAT GOOGLE KNEW IT SHOULD
8    HAVE GOTTEN A LICENSE AND HAD BEEN THINKING ABOUT THAT ALL
9    ALONG AND DECIDED TO GO FORWARD WITHOUT ONE, THAT IS -- THAT'S
10   RELEVANT.
11           AS TO THE STRATEGIC VALUE OF ANDROID, IT MAY OR MAY
12   NOT PLAY INTO THE VALUATION OF THE DAMAGE REPORT.  I THINK
13   THAT'S GOING TO DEPEND A BIT ON WHAT HAPPENS IN YOUR HEARING
14   THIS AFTERNOON IN FRONT OF JUDGE ALSUP.  BUT I WILL ALLOW IT ON
15   THOSE TOPICS, ONLY THOSE TOPICS, AND FOR NO MORE THAN TWO
16   HOURS.
17           MR. VAN NEST:  YOUR HONOR, MAY I JUST SAY ONE
18   MORE -- MAKE ONE MORE COMMENT ON MR. PAGE?
19           THE COURT:  OKAY.
20           MR. VAN NEST:  AND THAT IS THAT I THINK APEX
21   REQUIRES THAT TO GET SOMEONE AT THIS LEVEL, HE HAS TO HAVE
22   UNIQUE KNOWLEDGE.  AND CERTAINLY THERE'S NOTHING THAT HE KNOWS
23   ON ANY OF THESE SUBJECTS THAT ISN'T KNOWN BY A NUMBER OF OTHER
24   PEOPLE.
25           I MEAN, MR. RUBIN WAS ON THE FRONT LINE OF THE
```

1    NEGOTIATIONS.  AND I DON'T WANT YOUR HONOR TO UNDERSTAND THAT

2    MR. PAGE KNEW ANYTHING UNIQUE OR DIFFERENT.  HE DIDN'T.

3              AND SO IF THERE'S GOING TO BE A WILLFULNESS

4    ARGUMENT, AND WE WILL BE TALKING ABOUT THAT LATER ON, I AM

5    SURE, TOO, IT'S NOT THAT MR. PAGE HAD ANY UNIQUE KNOWLEDGE.

6    AND I THINK THAT IS WHAT APEX REQUIRES.  THAT'S ALL I WILL SAY

7    ABOUT MR. PAGE.

8              **THE COURT:**  OKAY.  WELL, I AM ASSUMING THAT THESE

9    WERE FAIRLY IMPORTANT DISCUSSIONS THAT PAGE WAS INVOLVED IN.

10   IT MAKES SENSE TO ME THAT HE WOULD BE KEPT APPRISED OF THAT AND

11   WOULD BE MAKING BUSINESS DECISIONS BASED ON THAT.  I AM NOT

12   ALLOWING -- I AM SETTING APPROPRIATE LIMITS.  I AM FINDING THAT

13   THE INFORMATION IS LIKELY -- HE LIKELY HAS UNIQUE INFORMATION

14   ABOUT THESE HIGH LEVEL AND VERY IMPORTANT NEGOTIATIONS THAT LED

15   TO DECISIONS THAT AFFECT THE CASE.

16             SO, LET'S TURN TO MR. NISHAR.  MR. VAN NEST?

17             **MR. VAN NEST:**  YES.

18             MR. NISHAR WAS, HIS TITLE WAS ACTUALLY SENIOR

19   DIRECTOR FOR PRODUCTS IN ASIA PACIFIC.  SO, HIS PRIMARY ROLE AT

20   GOOGLE WAS NOT MOBILE.  HIS PRIMARY ROLE WAS NOT IN THE U.S.

21   HE MAY HAVE WORKED UNDER RUBIN EARLY ON IN MR. RUBIN'S CAREER

22   AT GOOGLE, BUT HE CERTAINLY WAS NOT A MAJOR PLAYER.  HE

23   CERTAINLY WAS NOT A DECISION MAKER.

24             MR. HOLTZMAN SAYS HE HAS SEEN HIS NAME ON SOME

25   PRESENTATIONS.  I DON'T HAVE THOSE PRESENTATIONS, SO I AM NOT

1    SURE WHAT HE IS REFERRING TO, BUT, AGAIN, MR. RUBIN LED THE

2    NEGOTIATIONS.  HE WAS THE ONE IN THE FACE-TO-FACE MEETINGS.  I

3    AM NOT SURE MR. NISHAR EVEN ATTENDED ANY MEETINGS.  I HAVE NOT

4    HEARD THAT.

5             SO, AS I UNDERSTAND IT FROM HIS JOB TITLE AND WHERE

6    HE WORKED, NUMBER ONE, HE IS PERIPHERALLY RELEVANT, IF AT ALL.

7    HE CERTAINLY WOULDN'T HAVE BEEN A MAJOR ACTOR.  AND THE MAJOR

8    ACTORS IN THE NEGOTIATIONS ARE ALREADY -- HAVE ALREADY BEEN

9    DEPOSED.  MR. RUBIN FOR ONE AND HE IS GOING TO BE DEPOSED

10   AGAIN.  SO I DON'T REALLY SEE THAT NISHAR HAS ANY KNOWLEDGE

11   THAT WOULD BE PARTICULARLY RELEVANT, PARTICULARLY IMPORTANT.

12             AND, AGAIN, IF ALL THEY CAN COME UP WITH IS HIS NAME

13   ON SOME PRESENTATIONS AND THAT'S ENOUGH, THERE ARE DOZENS AND

14   DOZENS AND DOZENS OF PEOPLE WHOSE NAMES ARE ON PRESENTATIONS

15   THAT HAVEN'T BEEN DEPOSED.

16             **THE COURT:**  LET ME ASK YOU --

17             **MR. VAN NEST:**  I HAVE NEVER --

18             **THE COURT:**  SORRY TO INTERRUPT YOU, MR. VAN NEST.

19             MR. NISHAR THEY DESCRIBED AS SOMEBODY WHO WAS IN

20   CHARGE OF THE MOBILE BUSINESS AND THAT APPEARS TO HAVE COME

21   PERHAPS FROM, YOU KNOW, PUFFERY IN MR. NISHAR'S OWN LINKEDIN

22   PAGE.  BECAUSE WHAT I AM HEARING FROM YOU IS THAT THAT WASN'T

23   HIS ROLE AT ALL; THAT HE WAS NOT IN CHARGE OF THE MOBILE

24   BUSINESS DURING THAT TIME.

25             **MR. VAN NEST:**  I DON'T BELIEVE SO.  CERTAINLY NOT

1    WHEN MR. RUBIN GOT THERE.  AND I AM NOT SURE WHAT ROLE HE HAD

2    IN MOBILE BEFORE THAT.  BUT, AGAIN, BEFORE MR. RUBIN GOT THERE,

3    THE MOBILE BUSINESS AT GOOGLE WAS NOT PARTICULARLY RELEVANT TO

4    THIS.

5            MR. RUBIN BROUGHT ANDROID WITH HIM, AND THAT'S

6    WHAT'S AT ISSUE.

7            **THE COURT:**  WHEN DID --

8            **MR. HOLTZMAN:**  YOUR HONOR, IF I MAY --

9            **THE COURT:**  JUST A MINUTE.  SORRY.

10           WHEN DID MR. RUBIN COME TO GOOGLE?

11           **MR. VAN NEST:**  I BELIEVE 2005 OR '6.  2005.

12           RENNY, DO YOU KNOW THE ANSWER BETTER THAN I DO?

13           **MR. BABER:**  HE SAYS THAT'S CORRECT.

14           **MR. CARNAVAL:**  2005, YES.  JULY 2005.

15           **MR. VAN NEST:**  2005, YOUR HONOR.  SO HE WAS THERE

16   AND RUNNING MOBILE FROM THE DAY HE GOT THERE.

17           **THE COURT:**  OKAY.

18           BECAUSE ORACLE HAS REPRESENTED, YOU KNOW, BASED ON

19   WHAT THEY HAVE ACCESS TO, AND I REALIZE THAT'S LIMITED, THAT

20   MR. NISHAR WAS IN CHARGE OF THE MOBILE BUSINESS FROM 2005

21   FORWARD, BUT IT SOUNDS LIKE GOOGLE'S POSITION IS THAT'S NOT

22   TRUE; RUBIN WAS IN CHARGE AND CAME IN 2005, 2006, AND THAT

23   NISHAR'S TITLE WAS SENIOR DIRECTOR FOR PRODUCTS IN ASIA

24   PACIFIC.

25           IS THAT AN ACCURATE SUMMARY OF WHAT YOU JUST SAID?

1          **MR. VAN NEST:**  I THINK SO.  I THINK IT IS, YOUR

2    HONOR.  I AM NOT SURE WHETHER OR NOT MR. RUBIN RAN ALL OF

3    MOBILE OR NOT, BUT CERTAINLY ANY OF THE MOBILE BUSINESS THAT'S

4    RELEVANT TO THIS LAWSUIT HE WAS IN CHARGE OF.  THAT WAS

5    ANDROID.

6          **THE COURT:**  OKAY.

7          **MR. HOLTZMAN:**  YOUR HONOR, THAT'S WHAT I WANTED TO

8    CORRECT.  STEVE HOLTZMAN HERE.

9          WE HAVE TESTIMONY, FOR EXAMPLE, FROM MR. MINOR, ONE

10   OF THE OTHER CO-FOUNDERS OF ANDROID, INC. THAT MR. NISHAR, AS

11   MR. MINOR PUT IT IN HIS DEPOSITION AT PAGE 149, "AT THE TIME OF

12   OUR ACQUISITION HE WAS RESPONSIBLE FOR MOBILE INSIDE AT

13   GOOGLE."

14         HE WAS NOT, AS MR. VAN NEST SUGGESTED, SOMEBODY WHO

15   REPORTED TO MR. RUBIN AT THAT TIME.  HE WAS A PRE-EXISTING

16   PERSON WHO WAS RESPONSIBLE FOR MOBILE.

17         **THE COURT:**  SORRY, I WISH THESE FACTS WERE IN FRONT

18   OF ME, SO I AM JUST TRYING TO TAKE THEM DOWN AS YOU TELL ME.

19         MR. MINOR WAS DEPOSED.  HE WAS A CO-FOUNDER OF

20   ANDROID.  MINOR TESTIFIED THAT NISHAR WAS RESPONSIBLE FOR

21   MOBILE INSIDE AT GOOGLE.

22         **MR. HOLTZMAN:**  THAT WAS A DIRECT QUOTE FROM

23   MR. MINOR'S TESTIMONY.

24         **THE COURT:**  BUT HE DIDN'T SAY ANYTHING MORE ABOUT

25   HIS -- MR. NISHAR'S DUTIES OR SUPERVISORY ROLE WITH RESPECT TO

1    MR. RUBIN OR TIME FRAME, OR ANYTHING LIKE THAT?

2             **MR. HOLTZMAN:**  HE DID TESTIFY THAT HE HAD BEEN AT

3    GOOGLE PRIOR TO THE ACQUISITION OF ANDROID, INC.  HE DID AGREE

4    THAT HIS NAME WAS ON ONE OF THE PRESENTATIONS THAT I DISCUSSED.

5             **THE COURT:**  DO YOU HAVE ANYTHING ELSE?

6             **MR. VAN NEST:**  YOUR HONOR --

7             **MR. BABER:**  YOUR HONOR, JUST SO IT'S CLEAR, THIS IS

8    BRUCE BABER FOR GOOGLE.

9             WHEN MR. MINOR TESTIFIED ABOUT MR. NISHAR BEING IN

10   CHARGE OF MOBILE WHEN ANDROID WAS ACQUIRED, THAT OBVIOUSLY

11   RELATED TO THINGS OTHER THAN ANDROID.  THINGS LIKE, IPHONES AND

12   OTHER SMART PHONES, NOT THE ANDROID BUSINESS AT ALL BECAUSE IT

13   WASN'T AT GOOGLE BEFORE THE ACQUISITION THAT MR. MINOR AND

14   MR. RUBIN CAME IN THROUGH.

15                  (SIMULTANEOUS COLLOQUY.)

16            **THE COURT:**  STOP, PLEASE.  HAVE MERCY ON OUR

17   REPORTER.  IT'S VERY HARD FOR HER TO TAKE THIS DOWN

18   TELEPHONICALLY.  SHE'S DOING A TERRIFIC JOB.  BUT IF WE HAVE

19   PEOPLE TALKING OVER EACH OTHER AND NOT IDENTIFYING WHO THEY

20   ARE, AND IT'S ALREADY HARD FOR ME HAVING MULTIPLE PEOPLE

21   ARGUING, IT'S GOING TO BE IMPOSSIBLE.

22            SO, PLEASE, EVERYBODY SPEAK SLOWLY, DON'T SPEAK OVER

23   EACH OTHER, IDENTIFY CLEARLY WHO THE SPEAKER IS BEFORE YOU GO

24   ON TO SPEAK.

25            **MR. HOLTZMAN:**  MR. HOLTZMAN HERE.  I APOLOGIZE.

```
1              IT'S TRUE THAT MR. NISHAR PRECEDED THE ACQUISITION

2    OF ANDROID AS I SAID AND WAS RESPONSIBLE FOR MOBILE OTHER THAN

3    ANDROID.

4              HOWEVER, AS I SAID, HE PARTICIPATED IN PRESENTATIONS

5    AT THE HIGHEST LEVEL RELATING TO THE IMPORTANCE OF ANDROID TO

6    GOOGLE'S LARGER BUSINESS.  AND, MOREOVER, THE ISSUE OF THE

7    RELATIVE VALUE OF ANDROID AND APPLICATIONS SEARCH AND

8    ADVERTISING ON ANDROID COMPARED TO THE VALUE OF PROVIDING IT ON

9    OTHER MOBILE PLATFORMS, WHICH IS WHAT MR. NISHAR APPEARS TO

10   HAVE BEEN IN CHARGE OF IS SQUARELY RELEVANT TO THIS CASE AND IT

11   IS SOMETHING DISCUSSED AT LENGTH IN THE DAMAGES REPORT THAT

12   ORACLE SUBMITTED.

13             AND BY THE WAY, THE SAME THING APPLIES TO MR. PAGE.

14   I DISAGREE WITH MR. VAN NEST'S DESCRIPTION EARLIER THAT THE

15   STRATEGIC VALUE OF ANDROID IS NOWHERE DISCUSSED IN

16   MR. COCKBURN'S DAMAGES REPORT.  IT IS EXTENSIVELY DISCUSSED.

17             THE COURT:  OKAY.  SO WHAT I AM HEARING WITH RESPECT

18   TO NISHAR IS THAT THE INFORMATION THAT ORACLE HAS ABOUT

19   MR. NISHAR'S ROLE IS NOT QUITE AS CLEAR AS PERHAPS ORACLE WOULD

20   LIKE.  AND SO IT'S NOT CLEAR AT ALL THAT NISHAR HAS INFORMATION

21   RELEVANT TO THE WILLFULNESS ISSUE.

22             TO THE EXTENT THAT HE DOES HAVE INFORMATION THAT

23   WOULD GO TO THE IMPORTANCE OF ANDROID FOR PURPOSES OF DAMAGES,

24   I DON'T FIND THAT THAT IS COMPELLING ENOUGH TO GRANT ANOTHER

25   DEPOSITION.  SO NISHAR IS OFF.
```

```
1              LET'S TURN TO LEE.

2              MR. VAN NEST:  YOUR HONOR, WITH RESPECT TO MR. LEE,

3    YOU IDENTIFIED HIM AS SOMEONE THAT WOULD -- OR ORACLE DID,

4    SOMEONE HAVING TO DO WITH LICENSE, AND SO ON.  THAT IS NOT THE

5    CASE.

6              MR. LEE IS A TECHNICAL PERSON.  HE WORKED FOR DAN

7    BORNSTEIN IN BUILDING THE DALVIK VIRTUAL MACHINE.  HE'S AN

8    ENGINEER.  HE MIGHT KNOW SOMETHING ABOUT LICENSING, BUT SO DOES

9    EVERY ENGINEER THAT LIVES IN SILICON VALLEY.  IT'S NOT UNIQUE.

10   HE WAS NOT INVOLVED IN ANY OF THE LICENSE NEGOTIATIONS WITH

11   SUN.  AGAIN, HE WAS AN ENGINEER WORKING UNDER BORNSTEIN ON THE

12   PROJECT.

13             THEY SAID SOMETHING ABOUT CORE LIBRARIES AND

14   COPYING.  WELL, OF THE 12 LIBRARIES THEY ARE ACCUSING, I

15   BELIEVE EIGHT WERE FROM A THIRD PARTY, TWO WERE FROM GOOGLE,

16   AND THEY WERE WRITTEN ESSENTIALLY BY A MAN NAMED JOSH BLOCK

17   (PHONETIC), AND HE'S BEEN DEPOSED.  TWO OTHERS WERE PART OF

18   CODE THAT GOOGLE IMPORTED FROM INTEL.

19             SO, AS FAR AS I KNOW, MR. LEE HAS NEVER BEEN

20   IDENTIFIED WITH ANY OF THE COPYRIGHT VIOLATIONS WE ARE TALKING

21   ABOUT.  HE'S NOT A LICENSING PERSON.  HE'S NOT A BUSINESS

22   EXECUTIVE.  HE'S AN ENGINEER AND HE WORKED ON THE DALVIK

23   VIRTUAL MACHINE.

24             SO THE IDEA THAT HE WOULD BE RELEVANT SOMEHOW

25   BECAUSE HE'S SOMEHOW A DECISION-MAKER ON LICENSES OR WAS
```

1    INVOLVED IN THE NEGOTIATIONS, THAT'S JUST NOT TRUE.

2              BOB LEE IS AN ENGINEER WORKING ON THE DALVIK TEAM

3    UNDER MR. BORNSTEIN WHO WAS EXTENSIVELY DEPOSED AND TALKED ALL

4    ABOUT THE DEVELOPMENT THERE.  SO I DON'T SEE ANY REASON THAT

5    MR. LEE SHOULD HAVE TO SUBMIT TO ANY DEPOSITION.

6              **THE COURT:**  NOW ORACLE SAYS THAT LEE LED THE CORE

7    LIBRARY DEVELOPMENT FOR ANDROID.  IS THAT CORRECT, MR. VAN

8    NEST?

9              **MR. VAN NEST:**  BRUCE, THAT'S NEVER BEEN MY

10   UNDERSTANDING.  MY UNDERSTANDING IS THAT DAN BORNSTEIN RAN IT

11   AND THAT MR. LEE WORKED FOR HIM.

12             **THE COURT:**  MR. BABER, IS THAT -- WHAT IS YOUR

13   UNDERSTANDING?

14             **MR. BABER:**  IT IS OUR UNDERSTANDING THAT MR. LEE DID

15   WORK UNDER MR. BORNSTEIN AND HE DID WORK ON THE CORE LIBRARIES.

16   WE DON'T DISPUTE THAT.  AND THERE ARE -- THE DALVIK VIRTUAL

17   MACHINE WORKS WITH THE CORE LIBRARIES, BUT THEY ARE SEPARATE

18   AND MR. LEE WAS INVOLVED WITH THE CORE LIBRARIES SORT OF

19   GENERALLY.

20             **THE COURT:**  HAS MR. BORNSTEIN BEEN DEPOSED?

21             **MR. BABER:**  YES, AND HE HAS TESTIFIED AT LENGTH

22   ABOUT THE CORE LIBRARIES AND WHAT LIBRARIES WERE INCLUDED AND

23   WHAT SOURCES THEY CAME FROM, AND LOTS OF OTHER ISSUES.  AND HE

24   WILL BE DEPOSED AT LEAST FOR ANOTHER DAY AS A 30(B)(6) DESIGNEE

25   ON SOME RELATED TOPICS.

1          **MR. JACOBS:**  YOUR HONOR, THIS IS MICHAEL JACOBS FROM

2    MORRISON & FOERSTER.

3          MR. VAN NEST'S UNDERSTANDING OF THE ALLEGATIONS HERE

4    ISN'T CORRECT, BOTH IN TERMS OF NUMEROSITY AND IN TERMS OF

5    ROLE, BUT I HAVE THE ADVANTAGE OF SITTING IN FRONT OF A

6    COMPUTER AS WE ARE TALKING.

7          IF YOU SEARCH ON BOB LEE, THE FIRST HIT YOU GET IS A

8    CLAIM AS FOLLOWS.  IT'S A TWITTER FEED.

9          "DALVIK'S DESIGN" -- DALVIK IS THE ANDROID VIRTUAL

10   MACHINES THAT CORRESPONDS TO THE JAVA VIRTUAL MACHINE.  HE

11   SAYS:

12         "DALVIK'S DESIGN WAS DRIVEN BY TECHNICAL CONCERNS.

13   "TMK", WHICH MEANS TO MY KNOWLEDGE, "IP WASN'T A FACTOR."

14         SO HE'S MAKING PUBLIC STATEMENTS ABOUT WHAT DROVE

15   THE VARIOUS DESIGN CHOICES IN DALVIK AND HE'S DISCLAIMING ANY

16   KNOWLEDGE OF INTELLECTUAL PROPERTY ISSUES IN PUBLIC.  AND THAT,

17   TO ME, MAKES HIM SORT OF CENTER OF THE BULL'S-EYE IN TERMS OF

18   TAKING HIS DEPOSITION.

19         **THE COURT:**  WELL, PEOPLE SAY ALL KINDS OF THINGS IN

20   PUBLIC, WHETHER THEY SHOULD OR SHOULDN'T AND WHETHER THEIR ROLE

21   IS CENTRAL OR TANGENTIAL.

22         **MR. HOLTZMAN:**  YOUR HONOR, STEVE HOLTZMAN HERE.

23         AGAIN I WOULD URGE THE COURT TO JUXTAPOSE WHAT

24   MR. JACOBS REFERRED TO PUBLICLY WITH AT LEAST ONE EXAMPLE OF AN

25   INTERNAL DOCUMENT.  THIS IS AN E-MAIL FROM MR. LEE TO ERIC

1    SCHMIDT, THE CURRENT CEO OF GOOGLE.

2              AND IN THIS E-MAIL IN 2008 MR. LEE STATES:

3              "OBVIOUSLY DEPEND HEAVILY ON JAVA INTERNALLY."

4              SO YOU CAN SEE THE JUXTAPOSITION IN CONTRAST BETWEEN

5    THOSE.  THERE ARE NUMEROUS, AS I SAID BEFORE, THERE ARE

6    NUMEROUS OTHER INTERNAL DOCUMENTS THAT MR. LEE AUTHORED

7    INVOLVED IN DELIBERATION ABOUT THE IMPORTANCE OF THE

8    INTELLECTUAL PROPERTY AT ISSUE.

9              **MR. BABER:**  YOUR HONOR, IF I MAY, BRUCE BABER FOR

10   GOOGLE.

11             **THE COURT:**  OKAY.

12             **MR. BABER:**  THERE IS NO QUESTION AT ALL THAT GOOGLE

13   RELIES ON JAVA HEAVILY.  JAVA IS A PROGRAMMING LANGUAGE THAT

14   GOOGLE USES IN MANY DIFFERENT WAYS THROUGHOUT THE GOOGLE

15   ENTERPRISE.

16             AND PLAINTIFFS CONTINUE TO CONFLATE A PROGRAMMING

17   LANGUAGE AS TO WHICH MR. JACOBS IN OPEN COURT HAS SAID THERE IS

18   NO CLAIM IN THIS LAWSUIT ABOUT THE PROGRAMMING LANGUAGE PERIOD.

19   EVERYONE IS FREE TO USE IT.

20             AND WHEN MR. LEE SAYS THAT GOOGLE RELIES HEAVILY ON

21   JAVA, IT DOES RELY ON JAVA, THE LANGUAGE; PARTS OF ANDROID ARE

22   WRITTEN IN THE JAVA LANGUAGE, OTHER GOOGLE ACTS ARE WRITTEN IN

23   THE JAVA LANGUAGE, INTERNAL GOOGLE PROGRAMS ARE WRITTEN IN THE

24   JAVA LANGUAGE, BUT THAT HAS NOTHING TO DO WITH THE PATENT

25   CLAIMS OR THE COPYRIGHT CLAIMS IN THIS LAWSUIT.

1          **MR. HOLTZMAN:**  WELL -- WELL -- STEVE HOLTZMAN AGAIN

2     HERE, YOUR HONOR.

3          THEN CONSIDER A 2006 E-MAIL FROM MR. LEE TO ERIC

4     SCHMIDT IN WHICH HE TALKS ABOUT -- HE SAYS, "SUN PUTS FIELD OF

5     USE RESTRICTIONS IN THE JAVA SC TTK LICENSES WHICH PROHIBIT

6     JAVA SC IMPLEMENTATIONS FROM RUNNING ON ANYTHING BUT A DESKTOP

7     OR A SERVER," AND HE GOES ON.

8          THAT'S, OF COURSE, YOUR HONOR, EXACTLY WHAT'S AT

9     ISSUE HERE, A MOBILE IMPLEMENTATION, NOT DESKTOP, NOT SERVER.

10    SO THAT'S AN EXAMPLE OF AN E-MAIL THAT GOES SPECIFICALLY TO THE

11    ISSUE OF THE NEED FOR A LICENSE AND THE LICENSING RESTRICTIONS

12    THAT ARE AT ISSUE IN ANSWERING YOUR QUESTIONS EARLIER.

13         **MR. VAN NEST:**  YOUR HONOR, THIS IS BOB VAN NEST.

14         JUST TO BRING IT BACK TO WHERE I STARTED, THEY

15    TALKED ABOUT THIS AS A WILLFULNESS AND A LICENSING PERSON.

16    HE'S NOT THAT.  HE'S AN ENGINEER.  HE WORKED ON THE DALVIK.

17    HIS BOSS HAS BEEN DEPOSED EXTENSIVELY.  NO ONE IS DISPUTING

18    THAT HE HAD NO INVOLVEMENT IN THE NEGOTIATIONS WITH SUN.

19         AND THE IDEA THAT SOME ENGINEER AT GOOGLE OR

20    ANYWHERE ELSE WOULD BE FAMILIAR WITH AND KNOW THE PUBLIC

21    LICENSES THE JOB IS SUBJECT TO IS CERTAINLY NOT UNIQUE.  THESE

22    ARE PUBLIC LICENSES THAT HAVE BEEN OUT THERE FOR YEARS AND

23    EVERYBODY KNOWS ABOUT THEM.  THEY HAVEN'T JUSTIFIED THEIR NEED

24    TO TAKE A DEPOSITION OF LEE.

25         **THE COURT:**  OKAY.  I AM GOING TO ALLOW TWO HOURS ON

1    LEE AND ON THE ISSUE OF WILLFULNESS.

2              I UNDERSTAND THAT YOU'VE -- MR. BORNSTEIN HAS BEEN

3    DEPOSED, WILL BE DEPOSED FURTHER, THAT HE'S THE KEY PERSON ON

4    THE ACTUAL LIBRARIES, BUT I THINK HAVING -- IT APPEARS THAT

5    MR. LEE, AS A TECHNICAL PERSON, HAS OPINED ABOUT WHERE -- YOU

6    KNOW, WHAT IS NEEDED AND THAT WILL LEAD TO WHETHER OR NOT THERE

7    WAS A NEED FOR LICENSES, WHICH I THINK DOES GET AT THE

8    WILLFULNESS ISSUE.

9              I AM GOING TO LIMIT IT TO TWO HOURS AND IT WILL BE

10   SOLELY ON THE TOPIC OF WILLFULNESS AND NOT ABOUT THE VALUE OF

11   JAVA TECHNOLOGY OR ANYTHING THAT HAS TO DO WITH DAMAGES.

12             LET'S TURN FINALLY TO MR. LINDHOLM.

13             **MR. VAN NEST:**  YOUR HONOR, WITH RESPECT TO

14   MR. LINDHOLM, AGAIN, HE'S AN ENGINEER.  HE DID COME TO GOOGLE

15   FROM SUN SOMETIME AGO, BUT HE NEVER WORKED ON ANY ASPECT OF

16   ANDROID AT ALL.

17             AND THE IDEA THAT HE WOULD BE A NONINFRINGING

18   ALTERNATIVES PERSON IS JUST NOT CORRECT.  HE'S AN ENGINEER THAT

19   CAME OVER.  HE WAS INVOLVED EARLY ON AT SUN WITH SOME OF THE

20   JAVA DEVELOPMENT.  THEY HAVE KNOWN, OBVIOUSLY, ABOUT

21   MR. LINDHOLM FROM DAY ONE, BUT SINCE HE HAS BEEN AT GOOGLE HE

22   HASN'T WORKED ON ANDROID.  NOT PART OF THE ANDROID TEAM, NOT

23   PART OF MR. BORNSTEIN'S TEAM, NOT PART OF THE NEGOTIATIONS.

24   HE'S ON THE PERIPHERY OF THAT.

25             HE IS SOMEBODY THAT WORKED AT SUN AND HE IS SOMEBODY

1    THAT WORKED ON JAVA AT SUN, BUT HE DIDN'T WORK ON ANDROID AT

2    GOOGLE AND HE WASN'T INVOLVED IN NEGOTIATIONS.

3              **THE COURT:**  SO --

4              **MR. VAN NEST:**  WE DON'T SEE ANY BASIS EVEN FOR A

5    TWO-HOUR EXAMINATION OF MR. LINDHOLM.

6              **THE COURT:**  OKAY.  LET ME -- MAYBE I NEED TO CLARIFY

7    SOMETHING.

8              ORACLE HAS REPRESENTED THAT MR. LINDHOLM

9    PARTICIPATED IN NEGOTIATIONS BETWEEN SUN AND GOOGLE.  WAS HE

10   WORKING FOR SUN OR GOOGLE AT THE TIME?

11             **MR. HOLTZMAN:**  FOR GOOGLE, YOUR HONOR.  THIS IS

12   STEVE HOLTZMAN SPEAKING.

13             **THE COURT:**  OKAY.

14             **MR. HOLTZMAN:**  I THINK THAT THE -- HIS PRIOR

15   EMPLOYMENT AT SUN IS ACTUALLY ALSO RELEVANT HERE.  IT MAKES

16   MR. LINDHOLM UNIQUELY QUALIFIED TO ADDRESS BOTH ISSUES OF

17   WILLFULNESS AND TECHNICAL ISSUES, GIVEN THAT HE WORKED ON JAVA

18   SPECIFICALLY AT SUN.

19             I ALSO DISAGREE WITH MR. VAN NEST ON THE ISSUE OF

20   WHETHER HE, AS A FACTUAL MATTER, HAD ANY INVOLVEMENT IN

21   EVALUATION OF TECHNICAL ALTERNATIVES TO THE INFRINGED

22   TECHNOLOGY.

23             **MR. JACOBS:**  YOUR HONOR, THIS IS MICHAEL JACOBS.  IF

24   I CAN AMPLIFY ON THAT SLIGHTLY.

25             I HAVE AN E-MAIL IN FRONT OF ME FROM MR. LINDHOLM TO

1    MR. RUBIN FROM 2006 IN WHICH HE STARTS OFF:  "I HAVE BEEN

2    HELPING ANDY RUBIN WITH SOME ISSUES ASSOCIATED WITH HIS ANDROID

3    PLATFORM.  THIS IS MOSTLY TAKEN THE FORM OF HELPING NEGOTIATE

4    WITH MY OLD TEAM AT SUN FOR A CRITICAL LICENSE."

5            THAT'S A 2006 MESSAGE.  HIS INVOLVEMENT CONTINUES.

6    IN 2010 HE WRITES, AND THIS HAS BEEN PRODUCED ON AN AEO BASIS,

7    SO I'M GOING TO JUST ELIDE SOME OF THE LANGUAGE HERE.

8            "WE HAVE BEEN ASKED TO INVESTIGATE TECHNICAL

9    ALTERNATIVES TO JAVA."  AND HE GOES ON TO SAY, "THEY ALL SUCK."

10            SO HE'S KIND OF A BOOKEND IN TERMS OF THE TIME SPAN.

11    AND THE TESTIMONY HE COULD GIVE, ESPECIALLY WHEN GOOGLE IS SO

12    AGGRESSIVELY CHALLENGING THE VALUE OF THE INTELLECTUAL PROPERTY

13    THAT'S AT ISSUE IN THE CASE, COULD BE VERY, VERY IMPORTANT.

14            **MR. VAN NEST:**  AGAIN, YOUR HONOR, THIS IS VAN NEST.

15            THEY SAID HE WAS SOMEBODY THAT PARTICIPATED IN

16    NEGOTIATIONS.  I DON'T BELIEVE HE ATTENDED ANY NEGOTIATING

17    SESSIONS.  HE CERTAINLY WAS NOT LEADING THOSE.  HE'S CERTAINLY

18    NOT AT THE CENTER OF THOSE.  AND, AGAIN, HE IS NOT SOMEONE WHO

19    WAS ON BORNSTEIN'S DALVIK TEAM.  HE HAD NO ROLE IN BUILDING THE

20    ANDROID.

21            FOR THOSE REASONS, AGAIN, SINCE THEY ARE NOW BEYOND

22    THEIR LIMIT, I DON'T SEE ANY REASON WHY HE SHOULD BE SUBJECTED

23    TO ANOTHER -- TO EVEN A TWO-HOUR DEPOSITION.

24            **THE COURT:**  WELL, THERE DOESN'T SEEM TO BE A LOT OF

25    AGREEMENT HERE ABOUT WHAT HE -- WHETHER HE WORKED IN THE

1    NEGOTIATIONS OR NOT, WHETHER HE EVALUATED THE NEED FOR LICENSES

2    OR NOT.

3            I AM GOING TO ALLOW IT.  I AM GOING TO ALLOW TWO

4    HOURS, BUT SOLELY ON THE ISSUE OF WILLFULNESS AND NOT ON DAMAGE

5    OR VALUE TO GOOGLE TYPES OF QUESTIONS.

6            **MR. JACOBS:**  YOUR HONOR, THIS IS MICHAEL JACOBS

7    AGAIN.

8            IN VIEW OF THE SPECIFIC E-MAIL IN WHICH HE SAID HE

9    WAS EVALUATING TECHNICAL ALTERNATIVES AND WHETHER THEY ARE OF

10   ANY QUALITY OR NOT, IT SEEMS TO ME THAT IT WOULD BE IMPORTANT

11   TO BE ABLE TO ASK HIM ABOUT THAT MESSAGE, ABOUT THE ANALYSIS HE

12   DID, AND WHY HE CONCLUDED THAT THE ALTERNATIVES DIDN'T EXIST IN

13   ANDROID, WHICH IS WHAT THIS MESSAGE --

14           **THE COURT:**  YES.  NO, I THINK YOU SHOULD BE ALLOWED

15   TO QUESTION HIM ON THAT.  IN MY MIND, I GUESS THAT GOES, IN

16   PART, TO WILLFULNESS, WHAT WERE THE ALTERNATIVES.

17           **MR. BABER:**  YOUR HONOR, IF I MAY JUST A SECOND.

18   BRUCE BABER FOR GOOGLE.

19           I DON'T HAVE THE EXACT E-MAIL IN FRONT OF ME THAT

20   MR. JACOBS IS REFERRING TO, BUT IT'S MY UNDERSTANDING THAT THE

21   ALTERNATIVES TO JAVA THAT MR. LINDHOLM WAS TALKING ABOUT WERE

22   ALTERNATIVES TO THE LANGUAGE, I.E. COULD WE USE A DIFFERENT

23   PROGRAMMING LANGUAGE.

24           **MR. JACOBS:**  NO.  THIS IS MICHAEL JACOBS AGAIN.

25           THIS IS VERY MUCH AN E-MAIL ABOUT NEGOTIATIONS,

```
1    ABOUT NEGOTIATION STRATEGY, AND WHETHER IN THE CONTEXT OF A
2    NEGOTIATION ABOUT ANDROID AND JAVA INTELLECTUAL PROPERTY, IT
3    WOULD BE POSSIBLE FOR GOOGLE TO TELL ORACLE WE'VE GOT VIABLE
4    ALTERNATIVES, AND THIS IS WHY THE PRICE SHOULD GO DOWN.
5    LITERALLY IT SAYS THAT IN THE MESSAGE.
6            MR. HOLTZMAN:  JUST TO COMPLETE THAT.  THE TEXT OF
7    THAT MESSAGE ALSO SAYS, "WE CONCLUDE THAT WE NEED TO NEGOTIATE
8    A LICENSE FOR JAVA UNDER THE TERMS WE NEED."
9            THE COURT:  OKAY.  JUST ONE MOMENT.
10                   (PAUSE IN THE PROCEEDINGS.)
11           OKAY.  I AM GOING TO ALLOW IT.  I THINK THERE'S
12   ENOUGH QUESTION HERE SO THAT ORACLE SHOULD BE ABLE TO EXPLORE,
13   BUT I AM LIMITING AGAIN, THE SUBJECT WILL BE ON WILLFULNESS,
14   ISSUES GOING TO WILLFULNESS.
15           I AM ALLOWING THE THREE DEPOSITIONS, PAGE, LEE AND
16   LINDHOLM TWO HOURS APIECE, NOT COUNTING BREAKS.
17           AND LET'S SEE.  WITH RESPECT TO SUBJECT MATTER,
18   MR. PAGE WENT A LITTLE BEYOND WILLFULNESS TO INCLUDE THE
19   STRATEGIC VALUE OF ANDROID, SO THAT GOES A BIT TO DAMAGES.
20           OKAY.  ANYTHING FURTHER?
21           MR. HOLTZMAN:  NOT FROM ORACLE, YOUR HONOR.
22           MR. VAN NEST:  AND NOT FROM GOOGLE.
23           THANK YOU, YOUR HONOR.
24           THE COURT:  JUST SO YOU KNOW, I AM AWARE THAT
25   THERE'S A JULY 1 JOINT LETTER REQUEST.  I KNOW THERE WERE SOME
```

1    ISSUES ABOUT THE PARTIES NOT HAVING FILED IT CORRECTLY, BUT I

2    HAVE REVIEWED IT.

3              AND I VIEW IT AS VERY CLOSELY TIED IN TO THE HEARING

4    THAT YOU ARE GOING TO HAVE IN FRONT OF JUDGE ALSUP THIS

5    AFTERNOON SINCE THE INFORMATION REQUESTED BY ORACLE IS DIRECTLY

6    TIED TO THE COCKBURN EXPERT REPORT.  SO I WILL BE WATCHING VERY

7    CAREFULLY FOR JUDGE ALSUP'S ORDER ON THAT AND I PROMISE TO MOVE

8    QUICKLY ONCE I HAVE ENOUGH INFORMATION TO THEN TAKE UP THE NEXT

9    MATTER.

10             SO, IN OTHER WORDS, YOU DIDN'T FALL OFF THE RADAR.

11   THERE WAS A REASON WE ARE HOLDING IT IN ABEYANCE.

12             **MR. HOLTZMAN:**  THANK YOU, YOUR HONOR.  WE APPRECIATE

13   IT.

14             **THE COURT:**  OKAY.  THANK YOU.

15             **MR. VAN NEST:**  THANK YOU, YOUR HONOR.

16             **MR. BABER:**  THANK YOU, JUDGE.

17

18             (PROCEEDINGS ADJOUREND AT 12:30 P.M.)

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE UNITED

STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

THAT THE FOREGOING PROCEEDINGS IN C-10-3561 WHA, ORACLE

AMERICA, INC. VERSUS GOOGLE, INC., PAGES NUMBERED 1 THROUGH 36,

WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE

THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING;

THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID

PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.


/S/ DIANE E. SKILLMAN

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR