# EXHIBIT A

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT B

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT C

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT D

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT E

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT F

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT G

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT H

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT I

2

Pages 1 - 53

United States District Court

Northern District of California

Before The Honorable William Alsup

Oracle America,
Incorporated,            )
                         )
          Plaintiff,     )
                         )
     vs.                 )      No. C10-3651 WHA
                         )
Google, Incorporated,    )
                         )
          Defendant.     )
_____)
                               San Francisco, California
                               Thursday, July 21, 2011

**Reporter's Transcript Of Proceedings**

**Appearances:**

For Plaintiff:        Morrison & Foerster, LLP
                      755 Page Mill Road
                      Palo Alto, California  94304
            **By: Michael A. Jacobs, Esquire**

For Plaintiff:        Oracle, Incorporated
                      500 Oracle Parkway, M/S 5op7
                      Redwood Shores, California 94065
            **By: Matthew Sarboraria, Esquire**

(Appearances continued on next page.)

*Reported By:*      *Sahar Bartlett, RPR, CSR No. 12963*
                    *Official Reporter, U.S. District Court*
                    *For the Northern District of California*

        (Computerized Transcription By Eclipse)

*Sahar Bartlett, RPR, CSR 12963*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

---

1   Appearances, (continued:)

2   For Plaintiff:          Boies, Schiller & Flexner
                            1999 Harrison Street, Suite 900
3                           Oakland, California  94612
                      **By: Steven Christopher Holtzman, Esquire**
4                           **Meredith Richardson Dearborn, Esquire**

5   For Defendant:          Keker & Van Nest
                            710 Sansome Street
6                           San Francisco, California  94111
                      **By: Robert A. Van Nest, Esquire**
7                           **Christa Anderson, Esquire**
                            **Dan Purcell, Esquire**
8
                            King & Spaulding, LLP
9                           1185 Avenue of the Americas
                            New York, NY  10036
10                    **By: Bruce W. Baber, Esquire**

11

12                          ——oOo——

13

14

15

16

17

18

19

20

21

22

23

24

25

*Sahar Bartlett, RPR, CSR 12963*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

---

3

1   **Thursday, July 21, 2011**                        **2:01 P.M.**

2                   P R O C E E D I N G S

3          THE CLERK:  Calling civil action C10-3561, Oracle

4   America, Inc., versus Google, Inc.

5          Counsel, can you please state your appearances for

6   the record.

7          MR. JACOBS:  Michael Jacobs, Morrison & Foerster,

8   for Oracle.

9          THE COURT:  Welcome.

10         MR. HOLTZMAN:  Steve Holtzman, Boies, Schiller &

11  Flexner, for Oracle.

12         THE COURT:  Thank you.

13         MR. SARBORARIA:  Matt Sarboraria, in-house counsel

14  for Oracle.

15         THE COURT:  Thank you.

16         MS. DEARBORN:  Meredith Dearborn, Boies, Schiller &

17  Flexner, for Oracle.

18         THE COURT:  Welcome.

19         MR. VAN NEST:  Good afternoon, Your Honor.

20         Bob Van Nest, Keker & Van Nest, for Google.

21         I'm here with my partners, Christa Anderson and

22  Dan Purcell and Bruce Baber from King Spaulding.

23         And we have two Google representatives with us,

24  Catherine Lacavera and Renny Hwang.

25         THE COURT:  Welcome to all of you.

*Sahar Bartlett, RPR, CSR 12963*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

---

4

1          All right, we are here for a hearing on the damages

2   study.

3          Mr. Van Nest, it's your motion, so please proceed.

4          I have about 55 minutes, total, and then a 3:00

5   o'clock calendar, so let's try to divide it roughly evenly.

6          MR. VAN NEST:  Thank you, Your Honor.  We appreciate

7   very much your time, and I'll try to be brief in using it.

8          With respect to the Daubert, rarely have we seen a

9   report that seeks so much based on so little.  I'm going to

10  concentrate on three critical flaws that I think should prevent

11  this report, or the testimony that it represents, from going to

12  the jury.

13         The first and most fundamental is, there is a

14  complete failure to link the value of these asserted patents or

15  copyrights to the damages analysis.  Dr. Cockburn completely

16  punts on that.  He says throughout his report that someone else

17  is going to do that.

18         When he gets to the critical factor in the *Georgia*

19  *Pacific* test, he says, and I'll note this, it's from the

20  Appendix C:  "I understand that other witnesses may testify,"

21  may testify, "that the patents and copyrights are individually

22  and jointly important but right now there is no clear economic

23  basis at this point for apportioning the value of Android and

24  the value attributable to these patents and copyrights."

25         Well, that exercise is, as Your Honor knows, now

*Sahar Bartlett, RPR, CSR 12963*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

5

1  required by the Federal Circuit.  And that -- that requirement
2  has increased in the last several years with the *Uniloc* case
3  and the *Lucent* case and these enormous damage reports going in
4  without any attempt to tie the value of the patents to
5  technology.
6        Now, we know --
7        **THE COURT:**  It's more than that, it's the value of
8  the claims asserted, not just the patents.
9        **MR. VAN NEST:**  That's right.
10       **THE COURT:**  I mean, a patent might have ten claims,
11  and if only four are asserted, you got to laser-like zero in on
12  those four.  I agree with that.
13       And Mr. Jacobs, when it's your turn, you need to
14  address that point.  It's a good point.
15       Go ahead.
16       **MR. VAN NEST:**  Couple points about these patents.
17  We are still looking at 50 claims.  We are still looking at
18  seven patents, I'll talk about that a little later.  These are
19  7 patents out of what Oracle claims are 2000 patents covering
20  Java.
21       Now, of the seven --
22       **THE COURT:**  I didn't hear that.  That is a new piece
23  of info.  Say that again.
24       **MR. VAN NEST:**  Oracle claims there are 2000 patents
25  covering Java.

6

1        **THE COURT:**  Where is that in the record?
2        **MR. VAN NEST:**  I'm not sure it's in the brief, Your
3  Honor.  That's in material that they presented to us prior to
4  the commencement of the litigation.  And nowhere did
5  Dr. Cockburn try to take into account the number of patents
6  that even Oracle claims covers Java.
7        **THE COURT:**  Well, but if it's not in the record, how
8  can I rely on that?
9        In other words, you are making a potentially good
10  point, but what am I supposed to cite in my order?
11       **MR. VAN NEST:**  I'll take a look, Your Honor.  It may
12  well be in the record.  It may well be in the record.
13       **THE COURT:**  "May well be" is not the same thing as
14  "is be."
15       **MR. VAN NEST:**  I agree with you there.
16       Now, these patents, seven of them, so far, there is
17  no testimony that any of them are significant to Java.
18  Certainly, Dr. Cockburn doesn't cite any.  We haven't seen an
19  expert report that indicates that they're essential or
20  nonessential.
21       Essentially, as I said, he doesn't promise that
22  someone will say it, he promises that someone may say it.  And
23  unless and until someone says it, there is no basis for the
24  damages analysis whatsoever, and the report fails.
25       The second point which I think Your Honor has

7

1  already recognized is that there is a complete failure to
2  justify, including any Google advertising revenue whatsoever,
3  in the royalty base.  There has been no analysis whatsoever of
4  the Entire Market Value Rule, as you noted in your order.  The
5  Entire Market Value Rule requires not only that they make a
6  linkage between the asserted claims and the damages, but if
7  they want the entire value of the product, and here we are
8  talking about not only the value of the product, which is a
9  handset, but then the advertising on top of that, you have to
10  show that those features are the demand, they create the demand
11  for the product, itself.  Again, absolutely no showing of that
12  here.
13       Obviously, Google earns ad revenue from many
14  different types of products, mobile is a very small part of
15  that.  And Google earns revenue off many different mobile
16  products: iPhone, Rim, BlackBerry, none of these are Android
17  products.
18       Dr. Cockburn hasn't made any effort to show, let
19  alone using Android, but stepping back from Android, linking up
20  the value of these asserted claims, there is nothing in his
21  report that gets anywhere near that.  No showing, really, of a
22  logical basis to believe that these tweaks, if that's what they
23  are, in the Java virtual machine, which is really all they are
24  ever claimed to be, could possibly have a relationship to what
25  ad revenues Google, or anyone else, might earn from the variety

8

1  of handsets that handset makers have published.  So that's the
2  second flaw.
3        The third flaw, and this is really based on *Concord*
4  *Boat*, Your Honor, is that the report ignores undisputed market
5  facts that we know are out there that are cited in
6  Dr. Leonard's declaration and cited in our opposition that they
7  just completely ignore.
8        Fact one is that they went to the federal regulators
9  when Oracle acquired Sun and said that the totality of our
10  revenues from handset makers, from handset makers annually, is
11  a number in mid 8 figures.  It may be a confidential number, so
12  I don't want to put it on the record, but it's a mid 8-figure
13  number for everybody.  And by "everybody," I mean all the big
14  boys:  Nokia, Motorola, Samsung, Rim.  He completely ignores
15  the existence of these, which arguably, are the closest, most
16  comparable thing to a license to an operating system for a
17  smart phone.
18       Secondly, they went ahead and represented to the
19  regulators, when Oracle acquired Sun, we have always licensed
20  this technology, Java, we have never refused to license it, and
21  we have always licensed it at diminimus rates, diminimus rates.
22       And yet, as Your Honor notes from Cockburn's
23  opinion, he is talking about a deal wherein Google would agree,
24  in a hypothetical negotiation, to share 15, 20 percent of its
25  ad revenue on every handset using Google.  Ridiculous.

1   He overlooks the actual negotiations --

2       **THE COURT:**  Repeat that last point again about

3   diminimus and -- say that again.  Where did that come from?

4       **MR. VAN NEST:**  Yeah, that came from Oracle's

5   representations to the federal regulators when they acquired

6   Sun.  And there was an investigation into whether this was

7   anti-competitive or not, that, hey, we have always licensed

8   Java, we have never refused to license Java, and we have

9   licensed it at diminimus rates.

10      And now you have Dr. Cockburn coming in here and

11  claiming that in a hypothetical negotiation, Google would have

12  agreed to pay 15 to 20 percent of all of its ad revenue off

13  every handset sold by every carrier, not only using Android,

14  but as I understand his report, every other platform as well.

15      Now, the actual negotiations, in the actual

16  negotiations, Sun proposed a royalty all in for three years of

17  a hundred million dollars, and that was rejected by Google.

18  That was offered, according to Dr. Cockburn and according to

19  the evidence --

20      **THE COURT:**  Well, what difference does it make?  Why

21  does it matter if Google rejected it?  Google may have been

22  playing -- they may have just been trying to get it on the

23  cheap, that doesn't mean it was reasonable to reject it.

24      **MR. VAN NEST:**  No, Your Honor, Your Honor --

25      **THE COURT:**  It may mean that the offerer was willing

1   to take a hundred million, but the rejection means nothing,

2   does it?  What could it possibly mean?

3       **MR. VAN NEST:**  Well, it doesn't mean nothing, Your

4   Honor, but your point is well taken; it probably means more

5   that that's what Sun offered, that's what Sun was willing to

6   take.  In other words, in the hypothetical negotiation --

7       **THE COURT:**  And then your side -- tell me why there

8   isn't willful infringement here.

9       **MR. VAN NEST:**  I will.

10      **THE COURT:**  Because you went to get the license, you

11  didn't follow through, and now you got a production out there

12  that is in direct violation of these patents?

13      **MR. VAN NEST:**  None of those.

14      **THE COURT:**  That's a very hard scenario -- I am

15  going to ask you, but I bet you've never seen that scenario

16  before.  I have not.

17      **MR. VAN NEST:**  And you won't see it here, either,

18  Your Honor.

19      **THE COURT:**  Well, then, why isn't there willful

20  infringement?

21      **MR. VAN NEST:**  I'll explain why.

22      **THE COURT:**  All right.  Leave enough time.

23      **MR. VAN NEST:**  The negotiation that took place was

24  not a pure licensing negotiation.  And that's been confirmed by

25  all the participants, including Mr. Schwartz, the CEO of Sun at

1   the time.

2       Google had two essential options in building

3   Android:  They could have entered into a technology partnership

4   with another company and contributed resources and engineers

5   and built Android together, that's what they were discussing,

6   in fact, with Sun.

7       They discussed that same thing, Your Honor, with

8   several other companies that already had virtual machines.  So

9   they went to several companies, not just Sun, and said, do you

10  want to build this project with us together?  We'll provide

11  engineers and technology, you provide engineers and technology,

12  and we'll build the product together and the advantage of that

13  was, it might be a little faster.

14      The other option they had was to build it on their

15  own, build it independently and using their own engineers, own

16  technology and/or licensing technology from other third

17  parties, not -- not just Sun, because many other folks were

18  building virtual machines.

19      What happened was, they couldn't come to terms with

20  Sun -- by the way, in those negotiations, there wasn't any

21  specific discussion of the patents.  Nobody showed them Sun

22  patents.  Nobody said, are you infringing these patents.  They

23  didn't see these Sun patents until Oracle showed them to them a

24  month before --

25      **THE COURT:**  Why did they need their license, then?

1       **MR. VAN NEST:**  They were negotiating a technology

2   partnership, they were negotiating an agreement.  They weren't

3   coming to say, we need a license to your technology, they were

4   coming to say, we have a product and a project we would like to

5   build, we would like to build it together, you guys have

6   technology that might be useful, we have technology that might

7   be useful, let's partner together and build it.

8       And that is what was being proposed in 2005 and 2006

9   in these discussions we've been talking about.  That was not

10  acceptable, ultimately, either to Google or to Sun, they

11  couldn't reach term on that.  So Google went out, they built

12  their own.  They used a clean-room environment.  They didn't

13  look at any of these Sun patents we're talking about.

14      And the kicker is, Your Honor, discussions

15  continued, there were further discussions; Sun became more and

16  more and more interested in getting on the Android bandwagon.

17      So when Android was announced in 2007, Sun didn't

18  throw up their hands and say, oh, my gosh, you're infringing,

19  Sun congratulated Google on Android, welcomed Android to the

20  Java community, put Android on Sun products, asked Google how

21  they could help Android.

22      The whole point was that Android was something that

23  Sun saw, then, as beneficial to them, something that would

24  spread the news and the word about Java.  They didn't come in

25  in 2007 --

13

**THE COURT:** So you're saying that Android does not use Java.

**MR. VAN NEST:** I'm saying that Android does not use Java, that we are going to prove noninfringement, that Android uses the Java programming language, which nobody claims is protected by Sun.

The Java programming language, Your Honor, is the alphabet, the language that programmers use to write source code. That is open to everyone. And that is being used not only by Google, but by many, many others in the Java community, and nobody's claiming that that's infringement.

With respect to how the Dalvik virtual machine works and the Dalvik Java libraries that are used, those are original Google technology or licensed from third parties. Google has a license from the Apache Software Foundation. And they have a license to use libraries that the Apache Software Foundation created. And nobody's contesting that they have that license.

And, Your Honor, the proof in this is that when this thing was announced, and we just sat down with Mr. Schwartz yesterday, when Google announced Android in '07 and when they launched it in '08, the reaction from Sun was, welcome aboard, we want to work together, you are another way of spreading the Java programming language. We welcome you, we want to work with you, we want to be a part of Android.

There was never a threat of litigation. There was

14

never a waiving of patents. There was never a waiving of copyrights. All that started only after Mr. Ellison paid 7 billion for Sun and then turned around several months later and sued.

But at the time, the people running Sun, the people who had been in the negotiations, the people who were in direct contact with Mr. Rubin, the people who were talking with Google and who rejected this technology partnership, they didn't come after Google.

**THE COURT:** Well, what do they say now in their depositions?

**MR. VAN NEST:** Just exactly what I told you.

**THE COURT:** So at the time of trial, the former Sun executives are going to come in here and say there was no infringement?

**MR. VAN NEST:** They are going to come in here and say that they negotiated for a technology partnership, they hoped to be part of Android, it didn't work out. But that when Android was launched, they welcomed it, they publicly applauded it. They got aboard it. They said it can help us. They said it will help us sell our hardware, and --

**THE COURT:** What did they say about infringement?

**MR. VAN NEST:** Their view was that Google had built the Dalvik in a clean room, and they had a license from Apache. And Sun said, the Apache license gives them the right to use

15

the Apache code, and we are not going to sue for that.

And they didn't sue for that, they recognized the legitimacy of the third-party license that Google had. They recognized Google's right to publish its own product. They recognized Google's right to --

**THE COURT:** I don't know if this is true or not, but the allegation is made that you have hundreds of lines of code that came straight -- copyright -- exactly the same code that -- it belonged to Sun.

**MR. VAN NEST:** The allegation is not right. There are -- there are a few lines of code that are identical to Java code. And we are still investigating that, but it turns out that probably came from some third-party vendor that created it in either Russia or Eastern Europe, imported it in. We had asked for them to build a module, and that is how it got in there.

**THE COURT:** I got you off track.

**MR. VAN NEST:** Well --

**THE COURT:** We only have about five more minutes, and then I'm going to let you save 3 or 4 minutes for rebuttal. So I'll be quiet for five minutes --

**(Laughter.)**

**THE COURT:** I know what you have in your brief, you don't have to repeat it; I think it's important, though, that -- you have said a few things I haven't heard before, so

16

spend your time on those things you think you want to make sure that I have in mind.

**MR. VAN NEST:** Okay.

The other two things that I want to make sure you have in mind, Your Honor, are, one, it seems to me that the level of scrutiny that the Court should apply to this should go up when you are talking about a $6 billion damage report. It's not as though they threw a $250,000 report on the table. This report is going to be exceedingly confusing for jurors, especially if they would be allowed, through Dr. Cockburn, to present that large a number with this many flaws without a legal link to either the asserted claims or to the ad revenues.

And in your job as gatekeeper, it seems to me that job is even more critical and more important the larger the number is. And in terms of protecting both Google and jurors from the kind of confusion that could result from this sort of report, it's absolutely critical that you take a hard look at it.

Now, what are we asking you to do? We are asking you to strike this report based on all of the flaws that I've identified and any others the Court thinks are meritorious. We are not asking you to bar Oracle from presenting a report. They have expert report deadlines coming up on the 29th; they can redo a report following the principles of *Uniloc*, and *Panduit*, and setting forth the Entire Market Value Rule.

1    But this report should fall, this report should be
2    stricken, and they should be advised that unless and until they
3    come up with a report that meets the requirement of Daubert,
4    they won't have any expert report at all.
5        **THE COURT:** Thank you.
6        **MR. VAN NEST:** Thank you.
7        **THE COURT:** I'll let you have about 4 or 5 minutes,
8    Mr. Jacobs —
9        **MR. JACOBS:** Your Honor, Mr. Holtzman will be —
10       **THE COURT:** Very good.
11       Mr. Holtzman.
12       **MR. HOLTZMAN:** Thank you, Your Honor.
13       I actually, especially in view of the limited time,
14   we have a binder for the Court I would like to hand up.
15       **THE COURT:** All right.
16       **MR. HOLTZMAN:** Hopefully some of which we will be
17   able to actually get to. And it covers, Your Honor, each of
18   the aspects of the hearing today. The Daubert issues are in
19   the first tab, and then the Court asked a number of questions,
20   and the second two tabs cover those.
21       I'd like to address, hopefully briefly, each of the
22   points that Mr. Van Nest made, which I think also will cover
23   the Court's questions in its previous orders. And I would like
24   to do that, I think, in reverse order.
25       I want to start first with the willfulness issue.

1    It's interesting that in his presentation, Mr. Van Nest focused
2    with regard to willfulness entirely on what Sun said,
3    purportedly said regarding, you know, this issue of Android and
4    how they reacted to it. The question with regard to
5    willfulness, the question under the law of willfulness, is what
6    Google knew and whether Google acted, despite an objectively
7    high likelihood there was infringement.
8        **THE COURT:** What have you found in their files? I
9    mean, in other words, do you have — I saw that e-mail that you
10   referred to, but it doesn't call out any patents. So do you
11   have some e-mail inside their files that says one of these
12   seven patents were infringed?
13       **MR. HOLTZMAN:** We have — not as to the specific
14   patents, because, with all due respect, when you think about
15   Google and what we were thinking at the time, it's not like
16   they went through each and every patent and the claim of the
17   patent and said, oh, this one's a problem, this one's not a
18   problem.
19       But, the evidence will show clearly and convincingly
20   that before the infringement began Google said — and we have
21   documents on this — Slides 67 through 70 in the binder. I
22   don't want to discuss those documents at great length when the
23   public's here —
24       **THE COURT:** You said it — listen, there is no
25   restriction. This is a public proceeding. And you lawyers and

1    the companies are not going to handcuff the public from knowing
2    what goes on in its Federal District Court.
3        This is not a wholly-owned subsidiary of Oracle
4    Corporation. So I'm going to have a public order. No one is
5    going to put my order under seal, even if I refer to your
6    secret documents. So you can say anything you want.
7        **MR. HOLTZMAN:** Okay, I completely agree, Your Honor.
8    These are their designations and —
9        **THE COURT:** Fine, you say whatever you want.
10       If Google has a memo in their file saying, we are
11   about to willfully infringe, there is no way I'm going to keep
12   that secret from the public or the investing public.
13       **MR. HOLTZMAN:** Okay. Well, let me —
14       **THE COURT:** So you say whatever you want to say.
15       **MR. HOLTZMAN:** Absolutely. I appreciate that, Your
16   Honor.
17       Let me summarize —
18       **THE COURT:** The same goes for Oracle.
19       **MR. HOLTZMAN:** Yep.
20       **THE COURT:** You don't want to get me started on
21   this. You big companies do not own the U.S. District Court.
22   So, yes, you can have your protective orders, but when it comes
23   to a public hearing, I'm not going to have to resort to Morse
24   Code to understand what you are trying to tell me.
25       **MR. HOLTZMAN:** Okay, Your Honor.

1        **THE COURT:** Go ahead.
2        **MR. HOLTZMAN:** Let me summarize them, in the
3    interest of time, and they are in the slides that we present.
4        Prior to the time the infringement began, Google's
5    executives recognized that Sun's intellectual property was, as
6    they put it, critical and central.
7        **THE COURT:** Where does it say that? I didn't see
8    that e-mail. "Critical and central"; where does it say that?
9        **MR. HOLTZMAN:** Okay, so, looking, for example, at
10   page 67 of the binder —
11       **THE COURT:** Okay, let's look at that.
12       **MR. HOLTZMAN:** This is an excerpt from a document,
13   not the actual document. I'll represent, of course, that it's
14   accurate.
15       **THE COURT:** All right, okay, in 2005, Andy Rubin —
16       **MR. HOLTZMAN:** Yes.
17       **THE COURT:** — "wrote to Larry Page, said Android
18   building a Java OS, and they were, quote, 'making Java central
19   to Android.' He proposed that Google obtain a license. My
20   proposal, quote, 'is that we take a license.'"
21       **MR. HOLTZMAN:** And then —
22       **THE COURT:** And your point is, your argument,
23   anyway, is, well, that's what they said, but they knew they
24   needed a license, and they didn't get it.
25       Did they use the word "license"? I guess they did.

**Page 21**

1    MR. HOLTZMAN:  They did, absolutely did, Your Honor.

2    Perhaps the —

3        THE COURT:  But wait a minute, Mr. Van Nest said it

4    was not a license, that it was a joint venture.

5        MR. HOLTZMAN:  Yeah, I wanted to address that

6    because, of course, the discussions proceeded on a broader

7    basis.  But, again, as it relates to willfulness, the issue is

8    what they thought they needed, what they thought was critical,

9    what they thought was central, what they were willing to do,

10   whether they were willing, in the words of another document, to

11   position ourselves against the industry.  That's on page 68.

12       Whether they are willing to make enemies along the

13   way, that's on page 70, okay?  And they did specifically use

14   the word "license," it was an integral part of those

15   discussions.

16       Perhaps the most telling example of this is in a

17   later document —

18       THE COURT:  Would you — I want to stick with your

19   67, though.

20       MR. HOLTZMAN:  Yep.

21       THE COURT:  You use the word "critical," you put it

22   in quotes, and you say,

23       "Mr. Rubin stated in a presentation to Google's

24   executives, that a license from Sun was, quote, 'critical,'

25   closed quote.  So read to me — but I want to hear it for

**Page 22**

1    myself, read to me the wording.

2        MR. HOLTZMAN:  The exact — I do not have that.

3    Maybe it can be pulled.

4        THE COURT:  Maybe if you can pull it in time?  I

5    would like to maybe even see the document, that would be good.

6        MR. HOLTZMAN:  Absolutely.

7        THE COURT:  I would like to see what the document

8    said.

9        MR. HOLTZMAN:  We can, of course, submit them,

10   Your Honor.

11       THE COURT:  No, no, come to court next time

12   prepared.

13       MR. HOLTZMAN:  Okay.

14       THE COURT:  Go to your next point.

15       MR. HOLTZMAN:  Yeah.  I wanted to, in the interest

16   of time —

17       THE COURT:  Dr. [verbatim] Dearborn is bringing

18   forward — all right, would you show that to the clerk and then

19   let me see it.

20           (Handing up document.)

21       THE COURT:  This does have the word "critical," but

22   it doesn't have the word "license."

23       MR. HOLTZMAN:  That page does not have the word,

24   "license."

25       THE COURT:  Why does your page 67 have the word

**Page 23**

1    license on it when the word license doesn't appear on your

2    cite?

3        MR. HOLTZMAN:  It may be a different page of that

4    document, Your Honor.  I would have to look at it.

5        THE COURT:  That's not so good.  I think you should

6    be more accurate next time.

7        MR. HOLTZMAN:  The slide is accurate, Your Honor.

8        THE COURT:  The word critical is accurate, but the

9    word license is inaccurate.  Just said, why do the deal; well,

10   the deal could be a joint venture.

11       Earlier, you did have one that said license, so see

12   if you can find that one for me.

13       MR. HOLTZMAN:  Okay.

14       Well, in the interest of time, I'm not finding it at

15   the moment.

16       THE COURT:  All right.

17       MR. HOLTZMAN:  Let me switch to another document.

18   If you look at page 74.

19       THE COURT:  All right, let's look at that.

20       MR. HOLTZMAN:  It's a later document, Mr. Lindholm,

21   at Google, and he states in the document.

22       "What we've actually been asked to do by Larry and

23   Sergey" — those are the cofounders of Google — "is to

24   investigate what technical alternatives exist to Java for

25   Android and Chrome.  We have been over a bunch of these and

**Page 24**

1    think they all suck.  We conclude that we need to negotiate a

2    license for Java" —

3        THE COURT:  That's a pretty good document for you.

4        MR. HOLTZMAN:  Yes.

5        THE COURT:  That ought to be, you know, big for you

6    at the trial.

7        MR. HOLTZMAN:  Yep.

8        So these are the kinds of evidence we focus on I

9    think will show clearly and convincingly they knew they needed

10   a license and acted despite that fact.

11       Now, let me go to the Daubert arguments.  Now,

12   Mr. Van Nest articulated three central arguments, he said.  And

13   the third, going in reverse order, he says that the report

14   ignores undisputed market facts.  Well, the first thing about

15   this is that none of the things he then said — he said three

16   things, factually, about what Oracle said to the regulators,

17   about the value of Java revenue from handset manufacturers,

18   what Oracle said about always licensing at diminimus rates, and

19   then they talk about ignoring the actual negotiations between

20   the parties.

21       First of all, none of what he said is undisputed.

22   In other words, he has his evidence, Mr. Van Nest has the

23   evidence that he wants to focus on in terms of valuations or

24   public statements.  But he ignores the fact that Professor

25   Cockburn describes at great length a corpus of evidence,

25

```
 1   including some of the things they want to focus on, assesses
 2   it, and reaches a conclusion.  Daubert is not a battle of
 3   experts, it's not about making -- resolving factual disputes,
 4   and these things are all disputed.  So that is the first point.
 5          The second point on this argument is the things that
 6   Mr. Van Nest pointed to:  Oracle's statement about its Java
 7   revenue, Oracle's statements about its licensing practices and
 8   the actual negotiations between the parties, they are not
 9   comparable.  These are things that under the *Lucent* case that
10   Mr. Van Nest referred to are specifically to be viewed with
11   skepticism.  You can't just take these simple benchmarks and
12   therefore transfer them over.
13          The licenses --
14          THE COURT:  What did *Lucent* say that would make the
15   actual -- let's say that Sun made an offer to license, just to
16   make it simple, these seven patents for $100 million, let's say
17   that; why wouldn't that be a pretty good comparable?
18          MR. HOLTZMAN:  The -- the key fact here -- I mean
19   *Lucent*, the central teaching of *Lucent*, of course, is that past
20   licenses have to be comparable, they have to be on similar
21   economic terms and under similar economic conditions.
22          The fact that --
23          THE COURT:  Or you have to be able to adjust for it.
24   I agree with that, it has to be comparable, but let's say that
25   it involved more than these seven patents, let's just say it
```

*Sahar Bartlett, RPR, CSR 12963*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

26

```
 1   was just a hundred million for these seven patents, why
 2   wouldn't that be comparable?
 3          MR. HOLTZMAN:  Because the conditions of those
 4   licenses, as Professor Cockburn discusses in his report at some
 5   length, revolve around the compatibility, the absence of
 6   fragmentation, the compliance with Sun's, at the time,
 7   technical compatibility kit that promoted the value of the Java
 8   platform in Sun's ancillary products, not destroyed it, not
 9   fragmented it, not forked it.
10          THE COURT:  How do you then respond to Mr. Van Nest,
11   who said as soon as this Android came out, the Sun executives,
12   they didn't recoil in horror and say, my God, fragmentation,
13   this is terrible, they applauded the product.
14          So why -- how can you now say through a hired
15   expert -- how much is he being paid per hour, by the way?
16          MR. HOLTZMAN:  He is being paid -- it's in his
17   report, Your Honor.
18          THE COURT:  How much is it?  I'm just curious.
19          MR. HOLTZMAN:  $700 per hour.
20          THE COURT:  Somebody being paid $700 per hour, of
21   course they are going to come in and -- but at the time, the
22   Sun people said, this is great.  They didn't say it was a
23   terrible thing.  They didn't -- who came up with the idea of
24   fragmentation?  That was after Larry Ellison bought the
25   company.
```

*Sahar Bartlett, RPR, CSR 12963*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

27

```
 1          MR. HOLTZMAN:  Actually, that's not the case, Your
 2   Honor.
 3          THE COURT:  Well, then, tell me --
 4          MR. HOLTZMAN:  In fact, as Andy Rubin testified in
 5   his deposition, Google's Andy Rubin --
 6          THE COURT:  Yes?
 7          MR. HOLTZMAN:  -- in the discussions that the
 8   parties had regarding a license or a partnership or both,
 9   Mr. Rubin commented in his deposition that the Sun people were
10   hypersensitive to fragmentation.  This is before the
11   infringement began.
12          Now, what the factual record -- what the evidence
13   will ultimately show about what Sun executives said at the time
14   is what the record will show.  I would submit that that is not
15   to be resolved at this juncture based on a report that was
16   submitted 70 days before the end of discovery, before there is
17   anything, any record developed at all.  That's simply a factual
18   dispute.
19          The actual negotiations, as well as the past
20   licenses, have to be considered and adjusted for the
21   fundamental differences between them and the hypothetical
22   license which takes the infringement as it occurred.
23          THE COURT:  So if --
24          MR. HOLTZMAN:  And Professor Cockburn does that.
25          THE COURT:  If -- here's what I don't get, though:
```

*Sahar Bartlett, RPR, CSR 12963*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

28

```
 1   If the e-mail from the inside -- Google recognized that Sun was
 2   hypersensitive to fragmentation, why wasn't that sensitivity
 3   already reflected in the 100 million-dollar offer?
 4          MR. HOLTZMAN:  Because that offer, Your Honor, was
 5   an offer for an implementation of the intellectual property
 6   that would have promoted the value of the Java platform
 7   overall, not defeat it.
 8          And Professor Cockburn goes through this and
 9   specifically addresses this issue.  If you take the hundred
10   million dollars, or so, that Mr. Van Nest talked about, and
11   then you add onto that the value -- and this is -- this is
12   evidenced in the contemporaneous documents that Sun had -- if
13   you add the value that that deal in those terms would have
14   generated for Sun, you get to a much, much larger number, a
15   number over a period of a number of years that is similar to
16   the $2.6 billion damages number.
17          Because on an analyzed basis, Sun showed that under
18   that deal, guaranteeing compatibility, guaranteeing a lack of
19   fragmentation, and sharing control, Sun would have generated in
20   just a three-year period ramping up to almost $600 million a
21   year in revenue.  This is what was lost, in part, by Sun, as a
22   result of the infringement.
23          THE COURT:  Is there a single former Sun executive
24   who you have found who will come forward -- who is not on the
25   payroll, by the way -- who will come forward and say, oh,
```

*Sahar Bartlett, RPR, CSR 12963*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

1  fragmentation is terrible.

2      **MR. HOLTZMAN:**  Absolutely, multiple ones.

3      **THE COURT:**  Give me an example.

4      **MR. HOLTZMAN:**  Fragmentation --

5      **THE COURT:**  Somebody at Sun who can come and

6  counter -- make a dent in the argument that when this product

7  came out, Sun embraced it warmly and did not recoil in horror

8  at the idea of fragmentation.

9      So tell me somebody who -- who is the first Sun

10  executive not on the payroll who recoiled in horror?

11      **MR. HOLTZMAN:**  Well, one of them, certainly, is

12  Param Singh, who is now at Oracle.

13      **THE COURT:**  He is where?

14      **MR. HOLTZMAN:**  At Oracle.

15      **THE COURT:**  But he is on the payroll; I'm talking

16  about somebody who is not on the payroll or hired one of your

17  retainers.

18      **MR. HOLTZMAN:**  No, it's an employee.

19      **THE COURT:**  Somebody who maybe today works for

20  somebody completely different and has nothing to do with this

21  case and has no axe to grind, the kind of people that juries

22  tend to believe.

23      **MR. HOLTZMAN:**  Absolutely, Your Honor.

24      So you are talking about former employees of Sun?

25      **THE COURT:**  Former employees who were in a position

1  to know and would be willing to say, I've looked at this, I'm

2  not being paid by either side, and fragmentation is going to

3  ruin Java.

4      Who would that be?

5      **MR. HOLTZMAN:**  I'm a little hesitant to call them

6  out, Your Honor, but, for example, one --

7      **THE COURT:**  I don't care if you don't want to tell

8  me.  Then that's your problem.

9      **MR. HOLTZMAN:**  No, I appreciate that.

10      Rich Green, for example, now at Nokia, is

11  somebody --

12      **THE COURT:**  What's the name?

13      **MR. HOLTZMAN:**  Rich Green.

14      **THE COURT:**  Rich Green, all right.

15      What's he going to say?

16      **MR. HOLTZMAN:**  I don't know if he will testify,

17  Your Honor.  It's up to him, essentially.  We can subpoena him,

18  but we haven't made all those decisions yet.

19      **THE COURT:**  All right.

20      **MR. HOLTZMAN:**  Kathleen Knopoff is another one, and

21  she is also a former Sun employee.

22      **THE COURT:**  All right, I've taken a lot of your

23  time, and I want to give you some quiet time to make your

24  points and without me interrupting you.

25      **MR. HOLTZMAN:**  No, I appreciate that.

1      **THE COURT:**  Please go ahead.  I want to make sure

2  that you have a chance to say the things that you want to make

3  sure I haven't read yet.  I've read a lot, but I want to give

4  you that chance to make your main points.

5      **MR. HOLTZMAN:**  I appreciate that, Your Honor.  And

6  there are, by the way, other former Sun executives in that

7  category.

8      I think I've covered the third point that

9  Mr. Van Nest made, his supposedly undisputed market facts.

10      Professor Cockburn's report discusses, and the

11  record will show, that when you look at these facts, his facts

12  as well as our facts, and you adjust for them properly, you get

13  something that is extremely consistent with our damages number,

14  okay?

15      Now, going to his second -- his second argument that

16  the -- Professor Cockburn's report shouldn't have included,

17  Android or Google advertising revenue in his damages analysis,

18  Google's argument seems to be, and I think is, that there --

19  that damages should be zero in this case.

20      **THE COURT:**  That's ridiculous, too.  And we're

21  not -- that's not going to happen, so you don't have to worry

22  about that.

23      **MR. HOLTZMAN:**  Okay.

24      So let me --

25      **THE COURT:**  It's probably in the millions, I don't

1  know, maybe the billions, I'm not sure what it is.  But zero is

2  ridiculous.

3      **MR. HOLTZMAN:**  Yep.

4      **THE COURT:**  See, you are both just asking for the

5  moon, and you should be more reasonable.

6      **MR. HOLTZMAN:**  Yeah, but the issue on Daubert,

7  Your Honor, is whether the methodology --

8      **THE COURT:**  Yes, that's true.

9      **MR. HOLTZMAN:**  And the use of the -- the way that

10  Google monetizes Android, which is through advertising

11  revenues, is consistent with the economics, and it's consistent

12  with the law, and consistent with the --

13      **THE COURT:**  Well, you don't sell Android as a

14  product, right?

15      **MR. HOLTZMAN:**  That's exactly right, Your Honor, but

16  the way they --

17      **THE COURT:**  So the way you make your money on it --

18  no, the way Google makes the money on it is, it has a value,

19  Android has a value; how do we determine what that value is?

20  Well, one way you would do that is to look at the advertising,

21  the benefits, the advertising revenue that is attributable to

22  it.

23      **MR. HOLTZMAN:**  That's right.

24      **THE COURT:**  Seems to me -- they are totally wrong on

25  that.

33

```
 1            MR. HOLTZMAN:  Okay.
 2            THE COURT:  You don't have to waste your breath on
 3   that one, but you do have to waste your breath on a few other
 4   things.
 5            MR. HOLTZMAN:  Okay, and that's the last one I was
 6   going to get to.
 7            THE COURT:  All right, go ahead.
 8            MR. HOLTZMAN:  There is this is argument that there
 9   is a key failure to link the value of these patents to the
10   damages, and this also --
11            THE COURT:  You don't even know what patents you are
12   going to assert.
13            MR. HOLTZMAN:  Well --
14            THE COURT:  You don't even know -- you can't even
15   tell me now which claims you are going to assert at trial.  And
16   you want me to just gamble that whatever you decide on is going
17   to be the Entire Market Value Rule?
18            MR. HOLTZMAN:  Well, Your Honor, we have --
19            THE COURT:  That is crazy, and you cannot get away
20   with that.
21            MR. HOLTZMAN:  Okay, well, we've asserted a number
22   of patents --
23            THE COURT:  You told me that -- you have gone from
24   123 -- you can't even make up your mind what is infringed.  You
25   go from 123, now you are at 50, and you are heading down to
```

34

```
 1   somewhere below 25.
 2            And now you want me to say, well, maybe, maybe we'll
 3   roll the dice and see if they can come up with some that
 4   translate to the Entire Market Value Rule, which is under
 5   attack in the Federal Circuit and is on its way out?
 6            MR. HOLTZMAN:  Okay --
 7            THE COURT:  Come on, I'm not going to do that.
 8            MR. HOLTZMAN:  Well, there are a lot of things in
 9   there, actually, I disagree with.
10            THE COURT:  Well, you get to be the judge some
11   day --
12            (Laughter.)
13            THE COURT:  -- but right now I'm the gatekeeper.
14   And that one you are going to lose on.
15            MR. HOLTZMAN:  I appreciate that.
16            I do think the Entire Market Value --
17            THE COURT:  You didn't even put in your report on
18   that, you said somebody else is going to do that.
19            MR. HOLTZMAN:  The Court asked your experts --
20            THE COURT:  I said everything you have on damages.
21            MR. HOLTZMAN:  Absolutely --
22            THE COURT:  And this is part of it, and there is
23   nothing there.
24            MR. HOLTZMAN:  Your Honor, of course, we are
25   prepared to supplement or fix, as the case may be.
```

35

```
 1            THE COURT:  I made a big mistake giving you this
 2   chance.
 3            I went to this conference, Mike Jacobs was there; I
 4   was thinking, how can we make these cases more simple?
 5   Everyone in the room, Judge Rader, everyone, they were talking,
 6   these damages reports are out of control, we got to do
 7   something about it.  And so I'm thinking, okay, maybe a way to
 8   do that is to let the lawyers submit their reports in advance,
 9   and then I can say this is good, this is bad, that's good, you
10   know?
11            Instead, I get a report that calls for 6 billion,
12   not million, billion dollars.  You are never going to do it
13   again.  I'm never going to let -- the next time the lawyers are
14   going to take the -- gamble everything, one shot.  And if they
15   lose it, they don't get a report.  Just like Mr. Van Nest said,
16   if you get greedy, it goes out the window, no more report, you
17   just get an injunction, maybe.
18            MR. HOLTZMAN:  Your Honor, the Court's case
19   management order required, among other things, our experts to
20   put in their report based on assumed fact scenarios.  Now,
21   there are two parts to the Entire Market Value Rule analysis.
22   And by the way, this is a copyright case, too, Your Honor.
23            THE COURT:  There is an assumption there.  There is
24   nothing in there but a guy who is being paid $700 an hour who
25   comes up with $6 billion.  Come on.
```

36

```
 1            MR. HOLTZMAN:  That's because the issue here of
 2   what --
 3            THE COURT:  He assumed every important point.
 4            MR. HOLTZMAN:  I don't think every important point.
 5            THE COURT:  What do I do?  This is not a good way to
 6   run a railroad.  Maybe I'm the one that is at fault.
 7            You will get another chance, I'm going to give you
 8   another chance, but it was a mistake for me to do it this way.
 9   I should have just made you gamble on whether or not you would
10   be too greedy, and if you were too greedy, you would not have a
11   damage report, too bad for you.
12            MR. HOLTZMAN:  No -- with all due respect,
13   Your Honor, what we and Professor Cockburn are trying to do is
14   comply with the Court's order.
15            The Court required us to put in our entire damages
16   report, not our entire technical expert report, for example.
17   The one issue here on which he says other witnesses -- and that
18   is fact witnesses as well as expert witnesses -- may testify to
19   is the specific extent to which the particular patents, the
20   particular claims, delivers things like speed, memory, and
21   security to Android.  That's a highly fact-intensive, a highly
22   technical inquiry.
23            Now, that is something that goes to liability as
24   well as damages.  A judgment call has to be made, Your Honor,
25   as to whether that has to be in and whether an economist like
```

37

```
1   Professor Cockburn can competently do that.  That's a judgment
2   call that has to be made.
3          Now, he didn't omit everything, that is the one
4   thing he did omit, and he deferred to other witnesses.
5          THE COURT:  He didn't even tell what the claims
6   were.  He didn't even say what the claims were.
7          MR. HOLTZMAN:  That's true, Your Honor, that's not
8   his fundamental core expertise, that goes to liability.
9          What he did as an economist was address the demand
10  question, he said once -- you take an assumed fact scenario
11  that these claims of these patents provide speed, memory and
12  security.  He looked at the evidence, he discussed some of the
13  evidence and said that is sufficient to form the basis for
14  demand.
15         Now, also, there are copyrights at issue in this
16  case.  And by the way, the test is different under copyright.
17  If we show -- they acknowledge in their reply brief a causal
18  nexus, which doesn't mean forms the basis for demand, it means
19  under the law of the Ninth Circuit that the copyrights
20  materially enhance the value of the infringing product.  Then
21  you get direct and indirect profits as damages.  And that can
22  be in the form of reasonable royalty, or it can be in the form
23  of the infringer's profits.
24         And in terms of the infringer's profits, which in
25  their words are the lion's share of the damages in this case,
```

38

```
1   the damages analysis, it is Google's burden.  It is not our
2   expert's burden, it is not Oracle's burden to show under the
3   Copyright Statute that the profits attributable to other --
4   that some of the profits are attributable to other elements of
5   the infringing product.  And that is an independent validation
6   and justification of the approach that Professor Cockburn has
7   here, both the reasonable royalty and the infringer's profits.
8          THE COURT:  All right, thank you.
9          Mr. Van Nest, I have a question for you:  When was
10  that date of first infringement?
11         MR. VAN NEST:  Well, if -- if -- if --
12         THE COURT:  Ah, ah, ah --
13         MR. VAN NEST:  I would have to look back,
14  Your Honor.  The device was announced in '07.  It was tested --
15
16         THE COURT:  No, no, wouldn't the laboratory work --
17         MR. VAN NEST:  Yes.
18         THE COURT:  I will say this:  It is not the date of
19  first sale.
20         MR. VAN NEST:  No.
21         THE COURT:  That is wrong, that is wrong.  Oracle is
22  wrong on that.  That only applies when it's being shipped into
23  the country.
24         Somebody was using it in the lab or experimenting
25  with it.  So someplace you got to tell me, what was the date of
```

39

```
1   first infringement?
2          MR. VAN NEST:  It was in 2006, is when they used the
3   product in the lab.  2007 is when they announced a software
4   development kit to the public, which would -- included the --
5          THE COURT:  When did Oracle buy Sun?
6          MR. VAN NEST:  2010.
7          So if I can tie this together a little bit --
8          THE COURT:  Go ahead.  You have five minutes.  Yes.
9          MR. VAN NEST:  -- and respond?
10         I want to talk first about a question you asked
11  Mr. Holtzman twice, and he didn't answer.
12         Where were the patents?  Where is the memo about the
13  patents?  The answer is, the patents are not in Google's files.
14  No one was shown these patents during the negotiations.
15  Nobody -- there is no memo out there that says, oh, my gosh, we
16  are infringing these Sun patents, there is none of that.
17         The first time anybody saw these patents is when the
18  Ellison crew came in about a month before this lawsuit was
19  filed and said, here are some Java patents, we think you are
20  infringing, pay up.
21         So it is undisputed that there is nothing back in
22  the files and nothing back in the records that anyone's turned
23  up at this point.  And discovery is almost over.
24         THE COURT:  What do you say to this memo right here?
25  I'm going to read it out loud, this is from Tim Lindholm:
```

40

```
1          "I, Andy" -- Andy; is he the president now?  What is
2   his job now?
3          MR. VAN NEST:  It's Andy Rubin, Your Honor.
4          THE COURT:  Yes.  What's his job now?
5          MR. VAN NEST:  Andy Rubin is still the head of
6   Android at Google.
7          THE COURT:  Okay, so he'll be on the hot seat at
8   trial and have to explain this e-mail, which says in the second
9   paragraph:
10         "What we have actually been asked to do by Larry and
11  Sergey is to investigate what technical alternatives exist to
12  Java for Android and Chrome."
13         MR. VAN NEST:  Two points, Your Honor --
14         THE COURT:  Wait, wait, wait.
15         "We've been over a bunch of these and think they all
16  suck" -- that's a good technical term.
17         "We conclude that we need to negotiate a license for
18  Java under the terms we need."
19         Okay, "license for Java"; well, that's -- okay, I
20  agree with you, it doesn't say patents, but don't you think a
21  good lawyer will convince the jury that that meant a license
22  for patents and maybe for copyright?
23         But, I mean, how are you going to get around that?
24         MR. VAN NEST:  Your Honor --
25         THE COURT:  They -- you know what they used to say
```

41

1  about Joe Alioto?  He needed -- you know, in a big case like
2  this, he would come in, he only needed two documents:  He need
3  a document like this, the one I just read, and the Magna Carta,
4  and he won every case.
5          And you are going to be on the losing end of this
6  document, and with Andy Rubin on the stand.
7          **MR. VAN NEST:**  Judge Alsup, there is --
8          **THE COURT:**  You think about that.
9          And I want to say this:  If willful infringement is
10  found, there are profound implications for a permanent
11  injunction.  So you better think about that, and your client
12  ought to think about that.
13          I'm not saying there was willful, but that is a
14  serious factor when you are talking about an injunction.  If
15  somebody has willfully infringed, they had better be thinking
16  about an injunction.
17          **MR. VAN NEST:**  Your Honor --
18          **THE COURT:**  So you -- so how are you going to get
19  around this?
20          **MR. VAN NEST:**  Number -- two points, two points.
21          Number one, this is August 2010, this is 2010.  This
22  is after the Ellison crew has come in, about a month before the
23  lawsuit starts, and says, here's the patents, we think you're
24  infringing, you should take a license.
25          So this isn't back in the day when they are working

42

1  on the project, this is not in '05, '06, '07, '08, this is
2  2010.  I'm not sure this is even going to come into evidence.
3          These are negotiations by the parties --
4          **THE COURT:**  Why were they looking for an alternative
5  to Java, then?
6          **MR. VAN NEST:**  Because if Oracle comes in and says,
7  okay, you are going to have to spend all this money on a
8  lawsuit, and we are going to seek billions of dollars, the
9  question from the CEO is, is there any other way we can do this
10  and avoid it, altogether?
11          Now, let me point out a couple of things.  The
12  alternatives we're talking about here might be simply
13  alternative languages.  And again, Mr. Holtzman didn't dispute
14  that the Java programming language is open to everybody, open
15  to everybody.  You didn't hear him dispute that.
16          So what is happening in this e-mail --
17          **THE COURT:**  Well, explain that part to me.  Because
18  you keep saying that, but weren't there -- wasn't it open to
19  everyone, so long as there is no fragmentation, or so long as
20  you use their kit?  Is it really open to everyone, or were
21  there conditions?
22          **MR. VAN NEST:**  The programming language was open to
23  everyone.  You could use their virtual machine, if you didn't
24  fragment.  However, just yesterday, the boss -- you asked about
25  third parties that have no axe to grind?  The former CEO of

43

1  Sun, the guy making the decisions, said yesterday in deposition
2  under oath, Android is not a fragmentation of Java, Android is
3  a competitive alternative to Java.  I regarded Android as a
4  positive thing for Sun.  I wish it had been more positive, he
5  said, I wish it had been even more positive, they would have
6  paid me a lot of money, but even as it was, it was a positive,
7  and it is not fragmentation.
8          **THE COURT:**  Okay, wait, wait, that's an important
9  point.
10          Who said that?
11          **MR. VAN NEST:**  Jonathan Schwartz, who was the CEO
12  and president of Sun at the time, in 2007 and 2008.
13          **THE COURT:**  Where is he now?
14          **MR. VAN NEST:**  He's doing his own thing.  He left
15  Sun when Oracle came in and acquired because, as he put it
16  yesterday, I thought they already had a CEO.  So he is doing
17  his own independent development.  And he testified under
18  subpoena yesterday and said Java is not -- excuse me, Android
19  is not fragmentation.
20          But I want to come back to my --
21          **THE COURT:**  I -- you said something -- I'm going to
22  let you come back, but you also said something I want to make
23  sure I grasp.  You said that the Java software is open and
24  unconditional, and it's only the virtual machine that has this
25  kit; is that right?  Did I --

44

1          **MR. VAN NEST:**  The Java -- what I said was -- close.
2  It's the Java programming language; the language that you write
3  programs in is open to everyone.  And not even Oracle disputes
4  that.
5          **THE COURT:**  Okay, wait a minute:  Java program
6  language open, unconditional.
7          **MR. VAN NEST:**  Right.
8          **THE COURT:**  And what is it, then, that is
9  conditional?
10          **MR. VAN NEST:**  What's conditional is, if you want to
11  use Sun -- many other companies developed a virtual machine
12  and a series of code libraries, so let's call them the Java
13  libraries and the Java virtual machine.  Anybody can take a
14  license to that, too.  Anybody can take a license to that for
15  free, nobody has to pay a penny for any of that.
16          But as to that, there are conditions.  The condition
17  is, if you take that license, which again, Your Honor, is open
18  free of charge, if you add your own code to it, you have to
19  make that public.
20          **THE COURT:**  All right, I got that distinction.
21          **MR. VAN NEST:**  Right.
22          **THE COURT:**  So two parts:  Does your Android use the
23  Java virtual machine?
24          **MR. VAN NEST:**  No.
25          **THE COURT:**  All right.

45

1    MR. VAN NEST:  It uses the Dalvik virtual machine.

2    THE COURT:  All right, so let's assume that's right

3  for the moment.

4    Does it use the code libraries?

5    MR. VAN NEST:  It uses code libraries that are

6  licensed from another party, Apache Software Foundation.  It

7  does not use the Java libraries, it uses —

8    THE COURT:  Well, then, what part of Java do you use

9  that you would need a license for?

10    MR. VAN NEST:  None.

11    THE COURT:  Then why did he write this memo?

12    MR. VAN NEST:  Well, what they're saying is — and

13  again, this memo you are looking at is two weeks before the

14  lawsuit starts:  An alternative for us is take a license.

15  That's an alternative, take a license to the whole thing, take

16  a license to the code libraries and the virtual machine.

17    But what they have, and the reason Sun never sued

18  them, was that when they published Android, when they announced

19  it in '07 and launched the product in '08, they had a license

20  from Apache to use the libraries, that's not in dispute.

21    They had developed their own Dalvik virtual machine,

22  which now Oracle says infringes, but at the time, the position

23  of Sun was, welcome to Java, welcome to the community, we want

24  to work with you, I don't think you are a fragmentation, you

25  are a competitive alternative.  So that is from the number one,

46

1  that's the boss, that's the CEO that was running the company —

2    THE COURT:  What is that person's name?

3    MR. VAN NEST:  Jonathan Schwartz.

4    THE COURT:  Is he the one you deposed yesterday?

5    MR. VAN NEST:  Yes, he is, right, deposed under

6  subpoena yesterday here in town.

7    THE COURT:  Hmm.

8    MR. VAN NEST:  So I want to go back to the —

9    THE COURT:  You got two minutes.

10    MR. VAN NEST:  Two minutes.

11    Couple of other key points.  One, they simply can't

12  get over the hump on the Entire Market Value Rule.  They have

13  made no effort to link the asserted claims to any damages.  They can

14  talk about Java all day, they can talk about Android all day,

15  but until they start talking about the claims they are

16  asserting, even all 50 of them at this point, they don't have a

17  report that passes Daubert under *Uniloc* or under the Microsoft

18  *Lucent* case.

19    The other point I want to make is, he said that the

20  facts I gave you were all disputed, but then he didn't dispute

21  any.  In our brief at page 5, we recite all the statements that

22  I cited to you, Your Honor, that Sun made and Oracle made to

23  the SEC when they got approval for this deal.

24    Number one:  We are not aware of any instances where

25  we have refused to license the technology.

47

1    Number 2:  In licensing the entire system, not just

2  seven patents, the entire system in 2008, Sun charged a

3  diminimus percentage of software revenues, diminimus.

4    Third statement:  They said a projection for fiscal

5  year 2011 shows that with respect to all our significant

6  handset licenses, all of them, Nokia, Samsung, LG, Motorola,

7  they are going to generate a total of less than $70 million.

8  That's everybody, not just Google, not just Android, that is

9  the whole handset community.

10    So he said they were disputed, they are not

11  disputed.  They were in our brief.  They haven't disputed them

12  at all.

13    So the other point that I want to make is that if

14  the big issue here is fragmentation, and you kept asking, who

15  is going to come in, who is going to come in, who is going to

16  come in:  The guy in charge of this operation at Sun believed

17  in 2007 and 2008 and 2009 and 2010 and yesterday that Android

18  is not a fragmentation, Android is practicing using the Java

19  programming language with a proper license from Apache for the

20  libraries and its own Dalvik virtual machine.

21    And that is why in his view it was a good thing, not

22  a bad thing for Sun, and why he made the decision in 2007 and

23  2008 not to assert any patents they had, because this was a

24  good thing, not a fragmentation.

25    THE COURT:  Which — the other side contends that

48

1  there is fragmentation; does Oracle contend that the Dalvik

2  virtual machine is fragmentation?

3    MR. VAN NEST:  They contend that Android is

4  fragmentation.  They say that the Android system, because it's

5  not completely compatible with Java, is fragmentation.

6    That's what they say, they say that it's

7  fragmentation.  I say it's — it uses Java programming

8  language, and it uses technology built by Google or licensed

9  properly from third parties; therefore, it doesn't infringe.

10    So our position is going to be, and will be, there

11  is no infringement, there's no willful infringement.  There is

12  still nothing in the record that shows Your Honor that at the

13  time Google was developing Android, at the time they announced

14  Android, or in 2008 when they launched Android, anybody had

15  shown them these Sun patents or anybody was aware of these Sun

16  patents or anybody inside Google thought they were infringing.

17    It's a little hard to imagine that when you announce

18  your product, and the guy at Sun says publicly on a blog, at a

19  conference, and in countless interviews — it's not just what

20  he says now, he said it in interviews, he said it on blogs, he

21  said it at conferences, he said it to anybody that would

22  listen:  We welcome Java and we welcome Android to the Java

23  community.  Android is a pair of rockets strapped to Java.  It

24  is a set of rockets that is going to take our Java community

25  even higher.  It is 180 degrees —

1    **THE COURT:** Is that your term or his term?

2    **MR. VAN NEST:** That's his term.

3    **THE COURT:** Pair of rockets; kind of like the Space

4 Shuttle.

5    **MR. VAN NEST:** Kind of like the Space Shuttle.

6    **THE COURT:** You know, you could have -- at the

7 trial, you can have the --

8    **(Laughter.)**

9    **THE COURT:** -- Space Shuttle going off with the two

10 rockets, that would be a good graphic.

11    I need to ask the other side a question, if you

12 don't mind.

13    Assume for the sake of argument -- I know you

14 contend that this did not occur, but I would like to know what

15 you would say in this event: Let's say someone like Google,

16 but not Google, had used just the Java program language and

17 nothing more; would that be a violation of any of your rights?

18    **MR. HOLTZMAN:** It would not, Your Honor, but --

19    **THE COURT:** All right.

20    **MR. HOLTZMAN:** But the fundamental point is --

21    **THE COURT:** Wait, wait, wait.

22    **MR. HOLTZMAN:** Okay.

23    **THE COURT:** So my next -- if somebody came up with

24 their own virtual machine, would that be a violation of Java?

25    **MR. HOLTZMAN:** It might or it might not. In this

1 case, it is.

2    **THE COURT:** Let's say that they used the Java

3 programming language, which you say is not a violation, and

4 they come up with their own independent virtual machine that is

5 different from the virtual machine that Java has, so I guess,

6 theoretically, a virtual machine, even if you independently

7 developed it, might happen to infringe somebody's patent: Is

8 that your theory, that they went into the clean room and just

9 happened to solve the problem the same way as your patent?

10    **MR. JACOBS:** Can I cover this, Your Honor?

11    **THE COURT:** Yes, of course.

12    **MR. JACOBS:** No, it's more than that, Your Honor.

13    **THE COURT:** Go ahead.

14    **MR. JACOBS:** It started out with Java, it was Java

15 through and through. And then they decided to do some

16 renaming, and they decided to add another layer. And so the

17 basic architecture was retained. It was retained with --

18    **THE COURT:** But you admit that the Java programming

19 language is open to anybody.

20    **MR. JACOBS:** Yes. You and I can program in Java,

21 and we are not infringing anybody's --

22    **THE COURT:** But so could Google.

23    **MR. JACOBS:** But they didn't stay in just

24 programming in Java, Your Honor, they adopted the entire

25 architecture.

1    So actually, and in Android, for example, if I go

2 out and I write an Android application, I compile it in a Java

3 compiler, I output Java byte code at the next level down.

4    And they stuck on another layer and do a translation

5 into what they call dex code. And then they have a virtual

6 machine for an Android's world: Write once/run anywhere, and

7 by copying that architecture, our position is they --

8    **THE COURT:** Wait, wait.

9    Is the patent on the architecture?

10    **MR. JACOBS:** There are patents -- no. There are

11 patents on the patented technologies.

12    Our testimony will show, the Google documents that

13 we will adduce will show, that once they went down that path,

14 in order to get satisfactory performance, in order to get

15 satisfactory memory usage, in order to provide satisfactory

16 security options to the Android community, they had to adopt

17 these technologies. That will be our position. That will be

18 our evidence. That will be our expert's testimony.

19    And that will come in on the 29th, in part, and then

20 we will have Google witnesses on the stand at trial. And we

21 will ask them, why did you adopt this technique? And we will

22 hold them to their public announcement that says, we adopted

23 this technique in order to achieve satisfactory performance.

24 That is what will happen at trial.

25    And that is why our view is, on the fundamental

1 factual questions that underpin our Entire Market Value Rule,

2 we'll make our showing.

3    **THE COURT:** All right, time has run out. It's a

4 very interesting problem.

5    I'm going to get an order out soon, so that's the

6 best I can say to you. And thank you for your hard work on

7 this. A lot of brains -- a lot of talent out there, is what I

8 mean to say.

9    Thank you.

10    **MR. JACOBS:** Thank you, Your Honor.

11    **MR. VAN NEST:** Your Honor?

12    **THE COURT:** Yes?

13    **MR. VAN NEST:** You asked us for a status report

14 on --

15    **THE COURT:** I did. I read your information on that.

16    **MR. VAN NEST:** Do you need any further comment?

17    **THE COURT:** I may -- I have some thoughts in mind.

18 And it was very useful to read your report, but I don't need to

19 take up your time.

20    **MR. VAN NEST:** Thank you.

21    **THE COURT:** But I may have a supplement on that

22 point. Thank you.

23    **MR. VAN NEST:** Appreciate it.

24    **MR. JACOBS:** Thank you, Your Honor.

25    **(Proceedings adjourned at 3:10 p.m.)**

—o0o—

### CERTIFICATE OF REPORTER

I, Sahar Bartlett, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


/s/ Sahar Bartlett
_____

Sahar Bartlett, RPR, CSR No. 12963
Friday, July 22, 2011

Sahar Bartlett, RPR, CSR 12963
Official Court Reporter, U.S. District Court
(415) 626-6060

Sahar Bartlett, RPR, CSR 12963
Official Court Reporter, U.S. District Court
(415) 626-6060

**$**

**$100** [1]   1:25/16
**$100 million** [1]   1:25/16
**$2.6** [1]   1:28/16
**$2.6 billion** [1]   1:28/16
**$250,000** [1]   1:16/8
**$6** [2]   1:16/7 1:35/25
**$6 billion** [1]   1:35/25
**$600** [1]   1:28/20
**$600 million** [1]   1:28/20
**$70** [1]   1:47/7
**$700** [3]   1:26/19 1:26/20
 1:35/24

**'**

**'05** [1]   1:42/1
**'06** [1]   1:42/1
**'07** [4]   1:13/20 1:38/14 1:42/1
 1:45/19
**'08** [3]   1:13/21 1:42/1 1:45/19
**'critical,'** [1]   1:21/24
**'is** [1]   1:20/20
**'making** [1]   1:20/18

**—**

**---o0o** [2]   1:2/12 1:53/2

**/**

**/s** [1]   1:54/15

**1**

**100** [1]   1:28/3
**10036** [1]   1:2/9
**1185** [1]   1:2/9
**123** [2]   1:33/24 1:33/25
**12963** [2]   1:1/23 1:54/16
**15** [2]   1:8/24 1:9/12
**180 degrees** [1]   1:48/25
**1999** [1]   1:2/2

**2**

**20 percent** [2]   1:8/24 1:9/12
**2000** [2]   1:5/19 1:5/24
**2005** [2]   1:12/8 1:20/15
**2006** [2]   1:12/8 1:39/2
**2007** [6]   1:12/17 1:12/25
 1:39/3 1:43/12 1:47/17
 1:47/22
**2008** [5]   1:43/12 1:47/2
 1:47/17 1:47/23 1:48/14
**2009** [1]   1:47/17
**2010** [5]   1:39/6 1:41/21
 1:41/21 1:42/2 1:47/17
**2011** [4]   1:1/11 1:3/1 1:47/5
 1:54/17
**21** [2]   1:1/11 1:3/1
**22** [1]   1:54/17
**25** [1]   1:34/1
**29th** [2]   1:16/23 1:51/19
**2:01** [1]   1:3/1

**3**

**3561** [1]   1:3/3
**3651** [1]   1:1/7
**3:00** [1]   1:4/4
**3:10** [1]   1:52/25

**5**

**50** [3]   1:5/17 1:33/25 1:46/16
**500** [1]   1:1/18
**53** [1]   1:1/1
**55** [1]   1:4/4
**5op7** [1]   1:1/18

**6**

**6 billion** [1]   1:35/11
**67** [4]   1:18/21 1:20/10 1:21/19
 1:22/25
**68** [1]   1:21/11

**7**

**7 billion** [1]   1:14/3
**70** [3]   1:18/21 1:21/13 1:27/16
**710** [1]   1:2/5
**74** [1]   1:23/18
**755** [1]   1:1/15

**8**

**8-figure** [1]   1:8/12

**9**

**900** [1]   1:2/2
**94065** [1]   1:1/19
**94111** [1]   1:2/6
**94304** [1]   1:1/16
**94612** [1]   1:2/3

**A**

**able** [2]   1:17/17 1:25/23
**aboard** [2]   1:13/21 1:14/20
**about** [44]   1:4/4 1:5/16 1:5/18
 1:7/8 1:8/23 1:9/2 1:12/9
 1:12/13 1:12/24 1:14/22
 1:15/19 1:16/7 1:17/7 1:18/14
 1:19/11 1:24/14 1:24/16
 1:24/17 1:24/18 1:24/19
 1:25/3 1:25/6 1:25/7 1:27/13
 1:28/10 1:29/16 1:29/24
 1:31/22 1:35/7 1:39/10
 1:39/12 1:39/18 1:41/1 1:41/8
 1:41/11 1:41/12 1:41/14
 1:41/16 1:41/22 1:42/12
 1:42/24 1:46/14 1:46/14
 1:46/15
**absence** [1]   1:26/5
**absolutely** [8]   1:7/11 1:16/17
 1:19/15 1:21/1 1:22/6 1:29/2
 1:29/23 1:34/21
**acceptable** [1]   1:12/10
**according** [2]   1:9/18 1:9/18
**account** [1]   1:6/5
**accurate** [4]   1:20/14 1:23/6
 1:23/7 1:23/8
**achieve** [1]   1:51/23
**acknowledge** [1]   1:37/17
**acquired** [4]   1:8/9 1:8/19
 1:9/5 1:43/15
**acted** [2]   1:18/6 1:24/10
**action** [1]   1:3/3
**actual** [8]   1:9/1 1:9/15 1:9/15
 1:20/13 1:24/19 1:25/8
 1:25/15 1:27/19
**actually** [7]   1:17/13 1:17/17
 1:23/22 1:27/1 1:34/9 1:40/10
 1:51/1
**ad** [5]   1:7/13 1:7/25 1:8/25
 1:9/12 1:16/12
**add** [4]   1:28/11 1:28/13
 1:44/18 1:50/16
**address** [4]   1:5/14 1:17/21
 1:21/5 1:37/9
**addresses** [1]   1:28/9
**adduce** [1]   1:51/13
**adjourned** [1]   1:52/25
**adjust** [2]   1:25/23 1:31/12
**adjusted** [1]   1:27/20

**admit** [1]   1:50/18
**admitted** [1]   1:51/21
**adopted** [2]   1:50/24 1:51/22
**advance** [1]   1:35/8
**advantage** [1]   1:11/12
**advertising** [6]   1:7/2 1:7/9
 1:31/17 1:32/10 1:32/20
 1:32/21
**advised** [1]   1:17/2
**after** [4]   1:14/2 1:14/9
 1:26/24 1:41/22
**afternoon** [1]   1:3/19
**again** [9]   1:5/23 1:7/11 1:9/2
 1:9/3 1:21/7 1:35/13 1:42/13
 1:44/17 1:45/13
**against** [1]   1:21/11
**agree** [6]   1:5/12 1:6/15 1:8/23
 1:19/7 1:25/24 1:40/20
**agreed** [1]   1:9/12
**agreement** [1]   1:12/2
**ah** [3]   1:38/12 1:38/12 1:38/12
**ahead** [7]   1:5/15 1:8/18 1:20/1
 1:31/1 1:33/7 1:39/8 1:50/13
**Alioto** [1]   1:41/1
**all** [43]   1:3/25 1:4/1 1:7/23
 1:8/13 1:9/12 1:9/16 1:10/22
 1:10/25 1:14/2 1:16/20 1:17/4
 1:17/15 1:18/14 1:20/15
 1:22/18 1:23/16 1:23/19
 1:24/1 1:24/21 1:25/4 1:27/17
 1:30/14 1:30/18 1:30/19
 1:30/22 1:33/7 1:36/12 1:38/8
 1:40/15 1:42/7 1:44/20
 1:44/25 1:45/2 1:46/14
 1:46/14 1:46/16 1:46/20
 1:46/21 1:47/5 1:47/6 1:47/12
 1:49/19 1:52/3
**allegation** [2]   1:15/7 1:15/10
**allowed** [1]   1:16/10
**almost** [2]   1:28/20 1:39/23
**alone** [1]   1:7/19
**along** [1]   1:21/12
**alphabet** [1]   1:13/8
**already** [4]   1:7/1 1:11/8
 1:28/3 1:43/16
**also** [5]   1:17/22 1:30/21
 1:33/10 1:37/15 1:43/22
**Alsup** [2]   1:1/4 1:41/7
**alternative** [6]   1:42/4 1:42/13
 1:43/3 1:45/14 1:45/15
 1:45/25
**alternatives** [3]   1:23/24
 1:40/11 1:42/12
**Alto** [1]   1:1/16
**altogether** [1]   1:42/10
**always** [4]   1:8/19 1:8/21 1:9/7
 1:24/18
**am** [2]   1:6/10 1:10/14
**America** [2]   1:1/5 1:3/4
**Americas** [1]   1:2/9
**among** [1]   1:35/19
**analysis** [6]   1:4/15 1:6/24
 1:7/3 1:31/17 1:35/21 1:38/1
**analyzed** [1]   1:28/17
**ancillary** [1]   1:26/8
**and/or** [2]   1:11/16 1:54/12
**Anderson** [2]   1:2/7 1:3/21
**Android** [52]   1:4/23 1:7/16
 1:7/19 1:7/19 1:9/13 1:11/3
 1:11/5 1:12/16 1:12/17
 1:12/19 1:12/19 1:12/20
 1:12/21 1:12/22 1:13/1 1:13/3
 1:13/4 1:13/20 1:13/24

## A

**Android...** **[33]** 1:14/18
1:14/19 1:18/3 1:20/17
1:23/25 1:26/11 1:31/17
1:32/10 1:32/13 1:32/19
1:36/21 1:40/6 1:40/12 1:43/2
1:43/2 1:43/3 1:43/18 1:44/22
1:45/18 1:46/14 1:47/8
1:47/17 1:47/18 1:48/3 1:48/4
1:48/13 1:48/14 1:48/14
1:48/22 1:48/23 1:51/1 1:51/2
1:51/16
**Android's** **[1]** 1:51/6
**Android.'** **[1]** 1:20/19
**Andy** **[8]** 1:20/15 1:27/4 1:27/5
1:40/1 1:40/1 1:40/3 1:40/5
1:41/6
**announce** **[1]** 1:48/17
**announced** **[7]** 1:12/17 1:13/19
1:13/20 1:38/14 1:39/3
1:45/18 1:48/13
**announcement** **[1]** 1:51/22
**annually** **[1]** 1:8/10
**another** **[10]** 1:11/4 1:13/22
1:21/10 1:23/17 1:30/20
1:36/7 1:36/8 1:45/6 1:50/16
1:51/4
**answer** **[2]** 1:39/11 1:39/13
**anti** **[1]** 1:9/7
**anti-competitive** **[1]** 1:9/7
**any** **[19]** 1:5/4 1:6/17 1:6/18
1:7/2 1:7/18 1:11/20 1:12/13
1:16/21 1:17/4 1:18/10
1:27/17 1:42/9 1:44/15
1:46/13 1:46/21 1:46/24
1:47/23 1:49/17 1:52/16
**anybody** **[8]** 1:39/17 1:44/13
1:44/14 1:48/14 1:48/15
1:48/16 1:48/21 1:50/19
**anybody's** **[1]** 1:50/21
**anyone** **[1]** 1:7/25
**anyone's** **[1]** 1:39/22
**anything** **[2]** 1:19/6 1:27/17
**anyway** **[1]** 1:20/23
**anywhere** **[2]** 1:7/21 1:51/6
**Apache** **[8]** 1:13/15 1:13/16
1:14/24 1:14/25 1:15/1 1:45/6
1:45/20 1:47/19
**appear** **[1]** 1:23/1
**appearances** **[4]** 1:1/13 1:1/21
1:2/1 1:3/5
**Appendix** **[1]** 1:4/20
**applauded** **[2]** 1:14/19 1:26/13
**application** **[1]** 1:51/2
**applies** **[1]** 1:38/22
**apply** **[1]** 1:16/6
**apportioning** **[1]** 1:4/23
**appreciate** **[7]** 1:4/6 1:19/15
1:30/9 1:30/25 1:31/5 1:34/15
1:52/23
**approach** **[1]** 1:38/6
**approval** **[1]** 1:46/23
**architecture** **[4]** 1:50/17
1:50/25 1:51/7 1:51/9
**are** **[94]**
**arguably** **[1]** 1:8/15
**argument** **[7]** 1:20/22 1:25/5
1:29/6 1:31/15 1:31/18 1:33/8
1:49/13
**arguments** **[2]** 1:24/11 1:24/12
**around** **[4]** 1:14/3 1:26/5
1:40/23 1:41/19

**articulated** **[1]** 1:24/12
**as** **[40]** 1:4/13 1:4/21 1:7/3
1:7/4 1:8/22 1:9/14 1:9/14
1:12/23 1:16/8 1:16/13
1:18/13 1:20/5 1:21/7 1:26/4
1:26/11 1:26/11 1:27/4
1:27/19 1:27/19 1:27/22
1:28/21 1:31/12 1:31/12
1:32/13 1:34/25 1:36/18
1:36/18 1:36/23 1:36/24
1:36/25 1:37/9 1:37/21
1:42/19 1:42/19 1:43/3 1:43/6
1:43/15 1:44/16 1:50/9 1:54/9
**ask** **[3]** 1:10/15 1:49/11
1:51/21
**asked** **[9]** 1:12/20 1:15/15
1:17/19 1:23/22 1:34/19
1:39/10 1:40/10 1:42/24
1:52/13
**asking** **[5]** 1:16/19 1:16/19
1:16/22 1:32/4 1:47/14
**aspects** **[1]** 1:17/18
**assert** **[3]** 1:33/12 1:33/15
1:47/23
**asserted** **[8]** 1:4/14 1:5/8
1:5/11 1:7/6 1:7/20 1:16/12
1:33/21 1:46/13
**asserting** **[1]** 1:46/16
**assesses** **[1]** 1:25/1
**assume** **[2]** 1:45/2 1:49/19
**assumed** **[3]** 1:35/20 1:36/3
1:37/10
**assumption** **[1]** 1:35/23
**at** **[63]**
**attack** **[1]** 1:34/5
**attempt** **[1]** 1:5/4
**attributable** **[4]** 1:4/24
1:32/21 1:38/3 1:38/4
**August** **[1]** 1:41/21
**August 2010** **[1]** 1:41/21
**Avenue** **[1]** 1:2/9
**avoid** **[1]** 1:42/10
**aware** **[2]** 1:46/24 1:48/15
**away** **[1]** 1:33/19
**axe** **[2]** 1:29/21 1:42/25

## B

**Baber** **[2]** 1:2/10 1:3/22
**back** **[8]** 1:7/19 1:38/13
1:39/21 1:39/22 1:41/25
1:43/20 1:43/22 1:46/8
**bad** **[3]** 1:35/9 1:36/11 1:47/22
**bandwagon** **[1]** 1:12/16
**bar** **[1]** 1:16/22
**Bartlett** **[4]** 1:1/23 1:54/4
1:54/15 1:54/16
**base** **[1]** 1:7/3
**based** **[5]** 1:4/9 1:8/3 1:16/20
1:27/15 1:35/20
**basic** **[1]** 1:50/17
**basis** **[7]** 1:4/23 1:6/23 1:7/22
1:21/7 1:28/17 1:37/13
1:37/18
**battle** **[1]** 1:25/2
**be** **[62]**
**became** **[1]** 1:12/15
**because** **[13]** 1:10/10 1:11/17
1:18/14 1:21/6 1:26/3 1:28/4
1:28/17 1:36/1 1:42/6 1:42/17
1:43/15 1:47/23 1:48/4
**been** **[12]** 1:7/3 1:9/21 1:9/22
1:10/24 1:12/9 1:14/6 1:23/22
1:23/25 1:40/10 1:40/15

1:43/4 1:43/5
**before** **[1]** 1:10/16
**began** **[3]** 1:11/24 1:15/25 1:18/20
1:27/10 1:27/16 1:27/16
1:39/18 1:41/22 1:45/13
**began** **[3]** 1:18/20 1:20/4
1:27/11
**being** **[8]** 1:12/8 1:13/9
1:26/15 1:26/16 1:26/20
1:30/2 1:35/24 1:38/22
**believe** **[2]** 1:7/22 1:29/22
**believed** **[1]** 1:47/16
**belonged** **[1]** 1:15/9
**below** **[1]** 1:34/1
**benchmarks** **[1]** 1:25/11
**beneficial** **[1]** 1:12/23
**benefits** **[1]** 1:32/21
**best** **[1]** 1:52/6
**bet** **[1]** 1:10/15
**better** **[2]** 1:41/11 1:41/15
**between** **[4]** 1:7/6 1:24/19
1:25/8 1:27/21
**big** **[6]** 1:8/13 1:19/21 1:24/5
1:35/1 1:41/1 1:47/14
**billion** **[6]** 1:14/3 1:16/7
1:28/16 1:35/11 1:35/12
1:35/25
**billions** **[2]** 1:32/1 1:42/8
**binder** **[3]** 1:17/14 1:18/21
1:20/10
**bit** **[1]** 1:39/7
**BlackBerry** **[1]** 1:7/16
**blog** **[1]** 1:48/18
**blogs** **[1]** 1:48/20
**Boat** **[1]** 1:8/4
**Bob** **[1]** 1:3/20
**Boies** **[3]** 1:2/2 1:3/10 1:3/16
**boss** **[2]** 1:42/24 1:46/1
**both** **[4]** 1:16/15 1:27/8 1:32/4
1:38/7
**bought** **[1]** 1:26/24
**bound** **[1]** 1:54/9
**boys** **[1]** 1:8/14
**brains** **[1]** 1:52/7
**breath** **[2]** 1:33/2 1:33/3
**brief** **[6]** 1:4/7 1:6/2 1:15/23
1:37/17 1:46/21 1:47/11
**briefly** **[1]** 1:17/21
**bringing** **[1]** 1:22/17
**broader** **[1]** 1:21/6
**Bruce** **[2]** 1:2/10 1:3/22
**build** **[8]** 1:11/10 1:11/12
1:11/14 1:11/15 1:12/5 1:12/5
1:12/7 1:15/15
**building** **[3]** 1:11/2 1:11/18
1:20/18
**built** **[4]** 1:11/5 1:12/11
1:14/23 1:48/8
**bunch** **[2]** 1:23/25 1:40/15
**burden** **[3]** 1:38/1 1:38/2
1:38/2
**but** **[61]**
**buy** **[1]** 1:39/5
**byte** **[1]** 1:51/3

## C

**C10** **[2]** 1:1/7 1:3/3
**C10-3561** **[1]** 1:3/3
**C10-3651** **[1]** 1:1/7
**calendar** **[1]** 1:4/5
**California** **[8]** 1:1/3 1:1/10
1:1/16 1:1/19 1:1/24 1:2/3
1:2/6 1:54/5

**C**

call [6]  1:18/10 1:30/5
1:36/24 1:37/2 1:44/12 1:51/5
Calling [1]  1:3/3
calls [1]  1:35/11
came [9]  1:9/4 1:15/8 1:15/13
1:26/11 1:26/23 1:29/7
1:39/18 1:43/15 1:49/23
can [29]  1:3/5 1:6/8 1:14/20
1:16/24 1:19/6 1:19/22 1:22/3
1:22/4 1:22/9 1:23/12 1:26/14
1:29/5 1:30/17 1:34/3 1:35/4
1:35/9 1:37/1 1:37/21 1:37/22
1:39/7 1:42/9 1:44/13 1:44/14
1:46/13 1:46/14 1:49/7
1:50/10 1:50/20 1:52/6
can't [4]  1:25/11 1:33/14
1:33/24 1:46/11
cannot [1]  1:33/19
care [1]  1:30/7
carrier [1]  1:9/13
Carta [1]  1:41/3
case [15]  1:5/2 1:5/3 1:25/9
1:27/1 1:29/21 1:31/19
1:34/25 1:35/18 1:35/22
1:37/16 1:37/25 1:41/1 1:41/4
1:46/18 1:50/1
cases [1]  1:35/4
category [1]  1:31/7
Catherine [1]  1:3/24
causal [1]  1:37/17
central [6]  1:20/6 1:20/8
1:20/18 1:21/9 1:24/12
1:25/19
CEO [6]  1:10/25 1:42/9 1:42/25
1:43/11 1:43/16 1:46/1
certainly [2]  1:6/18 1:29/11
CERTIFICATE [1]  1:54/2
certification [1]  1:54/11
certified [1]  1:54/7
certify [1]  1:54/6
chance [5]  1:31/2 1:31/4
1:35/2 1:36/7 1:36/8
charge [2]  1:44/18 1:47/16
charged [1]  1:47/2
cheap [1]  1:9/23
Christa [2]  1:2/7 1:3/21
Christopher [1]  1:2/3
Chrome [2]  1:23/25 1:40/12
Circuit [3]  1:5/1 1:34/5
1:37/19
cite [3]  1:6/10 1:6/18 1:23/2
cited [3]  1:8/5 1:8/6 1:46/22
civil [1]  1:3/3
claim [1]  1:18/16
claimed [1]  1:7/24
claiming [2]  1:9/11 1:13/11
claims [17]  1:5/8 1:5/10
1:5/17 1:5/19 1:5/24 1:6/6
1:7/6 1:7/20 1:13/5 1:16/12
1:33/15 1:36/20 1:37/5 1:37/6
1:37/11 1:46/13 1:46/15
clean [3]  1:12/12 1:14/24
1:50/8
clean-room [1]  1:12/12
clear [1]  1:4/22
clearly [2]  1:18/19 1:24/9
clerk [1]  1:22/18
client [1]  1:41/11
close [1]  1:44/1
closed [1]  1:21/25
closest [1]  1:8/15

Cockburn [14]  1:4/15 1:6/5
1:16/10 1:24/25 1:26/4
1:27/24 1:28/8 1:36/13 1:37/1
1:38/6
Cockburn's [1]  1:8/22 1:31/10
1:31/16
code [14]  1:13/9 1:15/1 1:15/7
1:15/8 1:15/11 1:15/12
1:19/24 1:44/12 1:44/18
1:45/4 1:45/5 1:45/16 1:51/3
1:51/5
cofounders [1]  1:23/23
come [25]  1:9/3 1:11/19
1:12/24 1:14/8 1:14/14
1:14/16 1:17/3 1:22/11
1:26/21 1:28/24 1:28/25
1:29/5 1:34/3 1:34/7 1:35/25
1:41/2 1:41/22 1:42/2 1:43/20
1:43/22 1:47/15 1:47/15
1:47/16 1:50/4 1:51/19
comes [3]  1:19/22 1:35/25
1:42/6
coming [4]  1:9/10 1:12/3
1:12/4 1:16/23
commencement [1]  1:6/4
comment [1]  1:52/16
commented [1]  1:27/9
community [7]  1:12/20 1:13/10
1:45/23 1:47/9 1:48/23
1:48/24 1:51/16
companies [5]  1:11/8 1:11/9
1:19/1 1:19/21 1:44/11
company [3]  1:11/4 1:26/25
1:46/1
comparable [6]  1:8/16 1:25/9
1:25/17 1:25/20 1:25/24
1:26/2
compatibility [3]  1:26/5
1:26/7 1:28/18
compatible [1]  1:48/5
competently [1]  1:37/1
competitive [3]  1:9/7 1:43/3
1:45/25
compile [1]  1:51/2
compiler [1]  1:51/3
complete [3]  1:4/14 1:7/1
1:54/9
completely [6]  1:4/15 1:8/7
1:8/14 1:19/7 1:29/20 1:48/5
compliance [1]  1:26/6
comply [1]  1:36/14
Computerized [1]  1:1/25
concentrate [1]  1:4/10
conclude [2]  1:24/1 1:40/17
conclusion [1]  1:25/2
Concord [1]  1:8/3
condition [1]  1:44/16
conditional [2]  1:44/9 1:44/10
conditions [4]  1:25/21 1:26/3
1:42/21 1:44/16
conference [2]  1:35/3 1:48/19
conferences [1]  1:48/21
confidential [1]  1:8/11
confirmed [1]  1:10/24
confusing [1]  1:16/9
confusion [1]  1:16/16
congratulated [1]  1:12/19
considered [1]  1:27/20
consistent [4]  1:31/13 1:32/11
1:32/11 1:32/12
contact [1]  1:14/7
contemporaneous [1]  1:28/12

contend [2]  1:48/1 1:48/3
contends [1]  1:47/25
contesting [1]  1:13/17
continued [3]  1:1/21 1:2/1
1:12/15
contributed [1]  1:11/4
control [2]  1:28/19 1:35/6
convince [1]  1:40/21
convincingly [2]  1:18/19
1:24/9
copying [1]  1:51/7
copyright [5]  1:15/8 1:35/22
1:37/16 1:38/3 1:40/22
copyrights [6]  1:4/15 1:4/21
1:4/24 1:14/2 1:37/15 1:37/19
core [1]  1:37/8
Corporation [1]  1:19/4
corpus [1]  1:24/25
could [9]  1:7/24 1:10/2 1:11/3
1:12/21 1:16/16 1:23/10
1:42/23 1:49/6 1:50/22
couldn't [2]  1:11/19 1:12/11
counsel [2]  1:3/5 1:3/13
counter [1]  1:29/6
countless [1]  1:48/19
country [1]  1:38/23
couple [3]  1:5/16 1:42/11
1:46/11
course [7]  1:20/13 1:21/6
1:22/9 1:25/19 1:26/21
1:34/24 1:50/11
court [14]  1:1/2 1:1/23 1:16/6
1:16/21 1:17/14 1:17/19
1:19/2 1:19/21 1:22/11
1:34/19 1:36/15 1:54/4 1:54/5
1:54/12
Court's [3]  1:17/23 1:35/18
1:36/14
cover [3]  1:17/20 1:17/22
1:50/10
covered [1]  1:31/8
covering [2]  1:5/19 1:5/25
covers [2]  1:6/6 1:17/17
crazy [1]  1:33/19
create [1]  1:7/10
created [2]  1:13/17 1:15/13
crew [2]  1:39/18 1:41/22
critical [10]  1:4/10 1:4/18
1:16/14 1:16/17 1:20/6 1:20/8
1:21/8 1:21/21 1:22/21 1:23/8
CSR [2]  1:1/23 1:54/16
curious [1]  1:26/18

**D**

Dalvik [7]  1:13/12 1:13/13
1:14/24 1:45/1 1:45/21
1:47/20 1:48/1
damage [3]  1:5/3 1:16/7
1:36/11
damages [17]  1:4/1 1:4/15
1:6/24 1:7/6 1:28/16 1:31/13
1:31/17 1:31/19 1:33/10
1:34/20 1:35/6 1:36/15
1:36/24 1:37/21 1:37/25
1:38/1 1:46/13
Dan [2]  1:2/7 1:3/22
date [3]  1:38/10 1:38/18
1:38/25
Daubert [7]  1:4/8 1:17/3
1:17/18 1:24/11 1:25/2 1:32/6
1:46/17
day [4]  1:34/11 1:41/25

**D**

day... **[2]** 1:46/14 1:46/14
days **[1]** 1:27/16
deadlines **[1]** 1:16/23
deal **[6]** 1:8/23 1:23/9 1:23/10
1:28/13 1:28/18 1:46/23
Dearborn **[3]** 1:2/4 1:3/16
1:22/17
decide **[1]** 1:33/16
decided **[2]** 1:50/15 1:50/16
decision **[1]** 1:47/22
decisions **[2]** 1:30/18 1:43/1
declaration **[1]** 1:8/6
defeat **[1]** 1:28/7
Defendant **[2]** 1:1/9 1:2/5
deferred **[1]** 1:37/4
degrees **[1]** 1:48/25
delivers **[1]** 1:36/20
demand **[5]** 1:7/10 1:7/10
1:37/9 1:37/14 1:37/18
dent **[1]** 1:29/6
deposed **[2]** 1:46/4 1:46/5
deposition **[3]** 1:27/5 1:27/9
1:43/1
depositions **[1]** 1:14/11
describes **[1]** 1:24/25
designations **[1]** 1:19/8
despite **[2]** 1:18/6 1:24/10
destroyed **[1]** 1:26/8
determine **[1]** 1:32/19
developed **[4]** 1:27/17 1:44/11
1:45/21 1:50/7
developing **[1]** 1:48/13
development **[2]** 1:39/4 1:43/17
device **[1]** 1:38/14
dex **[1]** 1:51/5
dice **[1]** 1:34/3
did **[20]** 1:6/4 1:9/3 1:11/25
1:14/22 1:20/25 1:20/25
1:21/1 1:21/1 1:21/13 1:23/11
1:25/14 1:29/7 1:37/4 1:37/9
1:39/5 1:43/25 1:45/11
1:49/14 1:51/21 1:52/15
didn't **[24]** 1:5/22 1:10/11
1:11/23 1:12/12 1:12/17
1:12/24 1:14/8 1:14/18 1:15/2
1:20/7 1:20/24 1:26/12
1:26/22 1:26/23 1:34/17
1:37/3 1:37/5 1:37/6 1:39/11
1:42/13 1:42/15 1:42/23
1:46/20 1:50/23
difference **[1]** 1:9/20
differences **[1]** 1:27/21
different **[6]** 1:7/14 1:7/15
1:23/3 1:29/20 1:37/16 1:50/5
diminimus **[7]** 1:8/21 1:8/21
1:9/3 1:9/9 1:24/18 1:47/3
1:47/3
direct **[3]** 1:10/12 1:14/6
1:37/21
direction **[1]** 1:54/8
disagree **[1]** 1:34/9
disassembly **[1]** 1:54/11
discovery **[2]** 1:27/16 1:39/23
discuss **[1]** 1:18/22
discussed **[2]** 1:11/7 1:37/12
discusses **[2]** 1:26/4 1:31/10
discussing **[1]** 1:11/5
discussion **[1]** 1:11/21
discussions **[6]** 1:12/9 1:12/14
1:12/15 1:21/6 1:21/15 1:27/7
dispute **[5]** 1:27/18 1:42/13

1:42/15 1:45/20 1:46/20
disputes **[2]** 1:25/3 1:44/3
distinction **[1]** 1:44/20
District **[7]** 1:1/2 1:1/3
1:1/23 1:1/24 1:19/2 1:19/21
1:54/5
divide **[1]** 1:4/5
do **[35]** 1:4/17 1:11/9 1:14/10
1:16/19 1:17/24 1:18/9
1:18/10 1:19/21 1:21/9 1:22/2
1:23/9 1:23/22 1:26/10
1:29/20 1:32/19 1:32/20
1:33/3 1:34/7 1:34/16 1:34/18
1:35/6 1:35/8 1:35/12 1:36/5
1:36/5 1:36/8 1:36/13 1:37/1
1:39/24 1:40/10 1:42/9 1:45/8
1:50/15 1:51/4 1:52/16
document **[14]** 1:20/12 1:20/13
1:21/10 1:21/17 1:22/5 1:22/7
1:22/20 1:23/4 1:23/17
1:23/20 1:23/21 1:24/3 1:41/3
1:41/6
documents **[6]** 1:18/21 1:18/22
1:19/6 1:28/12 1:41/2 1:51/12
does **[15]** 1:9/20 1:9/21 1:10/2
1:13/1 1:13/3 1:20/7 1:20/8
1:22/21 1:22/23 1:22/25
1:27/24 1:44/22 1:45/4 1:45/7
1:48/1
doesn't **[10]** 1:6/18 1:6/21
1:9/23 1:10/3 1:18/10 1:22/22
1:23/1 1:37/18 1:40/20 1:48/9
doing **[2]** 1:43/14 1:43/16
dollar **[1]** 1:28/3
dollars **[4]** 1:9/17 1:28/10
1:35/12 1:42/8
don't **[22]** 1:8/12 1:15/6
1:15/24 1:18/22 1:19/20
1:27/25 1:30/7 1:30/7 1:30/16
1:31/21 1:31/25 1:32/13
1:33/2 1:33/11 1:33/14
1:35/15 1:36/4 1:40/20
1:45/24 1:46/16 1:49/12
1:52/18
down **[4]** 1:13/19 1:33/25
1:51/3 1:51/13
Dr **[7]** 1:4/15 1:6/18 1:7/18
1:9/10 1:9/18 1:16/10 1:22/17
Dr. **[2]** 1:6/5 1:8/6
Dr. Cockburn **[1]** 1:6/5
Dr. Leonard's **[1]** 1:8/6
due **[2]** 1:18/14 1:36/12
during **[1]** 1:39/14

**E**

e-mail **[6]** 1:18/9 1:18/11
1:20/8 1:28/1 1:40/8 1:42/16
each **[3]** 1:17/17 1:17/21
1:18/16
Earlier **[1]** 1:23/11
earn **[1]** 1:7/25
earns **[2]** 1:7/13 1:7/15
Eastern **[1]** 1:15/14
Eclipse **[1]** 1:1/25
economic **[3]** 1:4/22 1:25/21
1:25/21
economics **[1]** 1:32/11
economist **[2]** 1:36/25 1:37/9
effort **[2]** 1:7/18 1:46/13
either **[5]** 1:10/17 1:12/10
1:15/14 1:16/12 1:30/2

elements **[1]** 1:38/4
Elisor **[1]** 1:26/24
1:39/18 1:41/22
else **[3]** 1:4/16 1:7/25 1:34/18
embraced **[1]** 1:29/7
employee **[2]** 1:29/18 1:30/21
employees **[2]** 1:29/24 1:29/25
end **[2]** 1:27/16 1:41/5
enemies **[1]** 1:21/12
engineers **[4]** 1:11/4 1:11/11
1:11/11 1:11/15
enhance **[1]** 1:37/20
enormous **[1]** 1:5/3
enough **[1]** 1:10/22
entered **[1]** 1:11/3
entire **[15]** 1:7/4 1:7/5 1:7/7
1:16/25 1:33/17 1:34/4
1:34/16 1:35/21 1:36/15
1:36/16 1:46/12 1:47/1 1:47/2
1:50/24 1:52/1
entirely **[1]** 1:18/2
environment **[1]** 1:12/12
especially **[2]** 1:16/10 1:17/13
Esquire **[8]** 1:1/16 1:1/19
1:2/3 1:2/4 1:2/6 1:2/7 1:2/7
1:2/10
essential **[2]** 1:6/19 1:11/2
essentially **[2]** 1:6/21 1:30/17
Europe **[1]** 1:15/14
even **[18]** 1:6/6 1:16/14 1:19/5
1:22/5 1:33/11 1:33/14
1:33/14 1:33/24 1:34/17
1:37/5 1:37/6 1:42/2 1:43/5
1:43/6 1:44/3 1:46/16 1:48/25
1:50/6
evenly **[1]** 1:4/5
event **[1]** 1:49/15
ever **[1]** 1:7/24
every **[8]** 1:8/25 1:9/13 1:9/13
1:9/14 1:18/16 1:36/3 1:36/4
1:41/4
everybody **[5]** 1:8/13 1:8/13
1:42/14 1:42/15 1:47/8
everyone **[7]** 1:13/9 1:35/5
1:35/5 1:42/19 1:42/20
1:42/23 1:44/3
everything **[3]** 1:34/20 1:35/14
1:37/3
evidence **[11]** 1:9/19 1:18/19
1:24/8 1:24/22 1:24/23
1:24/25 1:27/12 1:37/12
1:37/13 1:42/2 1:51/18
evidenced **[1]** 1:28/12
exact **[1]** 1:22/2
exactly **[3]** 1:14/12 1:15/8
1:32/15
example **[7]** 1:20/9 1:21/16
1:29/3 1:30/6 1:30/10 1:36/16
1:51/1
exceedingly **[1]** 1:16/9
excerpt **[1]** 1:20/12
excuse **[1]** 1:43/18
executive **[2]** 1:28/23 1:29/10
executives **[6]** 1:14/14 1:20/5
1:21/24 1:26/11 1:27/13
1:31/6
exercise **[1]** 1:4/25
exist **[2]** 1:23/24 1:40/11
existence **[1]** 1:8/15
experimenting **[1]** 1:38/24
expert **[6]** 1:6/19 1:16/23
1:17/4 1:26/15 1:36/16
1:36/18

**E**

expert's [2] 1:38/2 1:51/18
expertise [1] 1:37/8
experts [3] 1:25/3 1:34/19
  1:35/19
explain [3] 1:10/21 1:40/8
  1:42/17
extent [1] 1:36/19
extremely [1] 1:31/13

**F**

fact [11] 1:8/8 1:11/6 1:24/10
  1:24/24 1:25/18 1:25/22
  1:27/4 1:35/20 1:36/18
  1:36/21 1:37/10
fact-intensive [1] 1:36/21
factor [2] 1:4/18 1:41/14
facts [7] 1:8/5 1:24/14 1:31/9
  1:31/11 1:31/11 1:31/12
  1:46/20
factual [4] 1:25/3 1:27/12
  1:27/17 1:52/1
factually [1] 1:24/16
fails [1] 1:6/24
failure [3] 1:4/14 1:7/1
  1:33/9
fall [1] 1:17/1
far [1] 1:6/16
faster [1] 1:11/13
fault [1] 1:36/6
features [1] 1:7/10
federal [5] 1:5/1 1:8/8 1:9/5
  1:19/2 1:34/5
few [3] 1:15/11 1:15/25 1:33/3
figure [1] 1:8/12
figures [1] 1:8/11
file [2] 1:19/10 1:54/12
filed [1] 1:39/19
files [4] 1:18/8 1:18/11
  1:39/13 1:39/22
filing [1] 1:54/10
find [1] 1:23/12
finding [1] 1:23/14
Fine [1] 1:19/9
first [12] 1:4/13 1:17/19
  1:17/25 1:24/14 1:24/21
  1:25/4 1:29/9 1:38/10 1:38/19
  1:39/1 1:39/10 1:39/17
fiscal [1] 1:47/4
five [3] 1:15/19 1:15/21
  1:39/8
fix [1] 1:34/25
flaw [2] 1:8/2 1:8/3
flaws [3] 1:4/10 1:16/11
  1:16/20
Flexner [3] 1:2/2 1:3/11
  1:3/17
focus [3] 1:24/8 1:24/23
  1:25/1
focused [1] 1:18/1
Foerster [2] 1:1/15 1:3/7
folks [1] 1:11/17
follow [1] 1:10/11
following [1] 1:16/24
foregoing [2] 1:54/6 1:54/8
forked [1] 1:26/9
form [3] 1:37/13 1:37/22
  1:37/22
former [7] 1:14/13 1:28/23
  1:29/24 1:29/25 1:30/21
  1:31/6 1:42/25
forms [1] 1:37/18

**F** (continued)

forth [1] 1:16/25
forward [3] 1:28/1 1:28/15
  1:28/25
found [1] 1:18/8 1:28/24
  1:41/10
Foundation [3] 1:13/15 1:13/16
  1:45/6
four [2] 1:5/11 1:5/12
fragment [1] 1:42/24
fragmentation [23] 1:26/6
  1:26/12 1:26/24 1:27/10
  1:28/2 1:28/19 1:29/1 1:29/4
  1:29/8 1:30/2 1:42/19 1:43/2
  1:43/7 1:43/19 1:45/24
  1:47/14 1:47/18 1:47/24
  1:48/1 1:48/2 1:48/4 1:48/5
  1:48/7
fragmented [1] 1:26/9
Francisco [2] 1:1/10 1:2/6
free [2] 1:44/15 1:44/18
Friday [1] 1:54/17
full [1] 1:54/9
fundamental [5] 1:4/13 1:27/21
  1:37/8 1:49/20 1:51/25
further [2] 1:12/15 1:52/16

**G**

gamble [3] 1:33/16 1:35/14
  1:36/9
gatekeeper [2] 1:16/13 1:34/13
gave [1] 1:46/20
generate [1] 1:47/7
generated [2] 1:28/14 1:28/19
Georgia [1] 1:4/18
get [23] 1:9/22 1:10/10
  1:17/17 1:19/20 1:20/24
  1:27/25 1:28/14 1:31/12
  1:33/6 1:33/19 1:34/10
  1:35/11 1:35/15 1:35/16
  1:35/17 1:36/7 1:37/21
  1:40/23 1:41/18 1:46/12
  1:51/14 1:51/14 1:52/5
gets [2] 1:4/18 1:7/21
getting [1] 1:12/16
give [4] 1:29/3 1:30/23 1:31/3
  1:36/7
gives [1] 1:14/25
giving [1] 1:35/1
go [12] 1:5/15 1:16/6 1:20/1
  1:22/14 1:24/11 1:31/1 1:33/7
  1:33/25 1:39/8 1:46/8 1:50/13
  1:51/1
God [1] 1:26/12
goes [6] 1:19/2 1:19/18 1:28/8
  1:35/16 1:36/23 1:37/8
going [49] 1:4/9 1:4/11 1:4/17
  1:5/3 1:10/15 1:13/4 1:14/14
  1:14/16 1:15/1 1:15/20 1:16/9
  1:19/1 1:19/4 1:19/5 1:19/11
  1:19/23 1:24/13 1:26/21
  1:30/2 1:30/15 1:31/15
  1:31/21 1:33/6 1:33/12
  1:33/15 1:33/16 1:34/7
  1:34/14 1:34/18 1:35/12
  1:35/13 1:35/14 1:36/7
  1:39/25 1:40/23 1:41/5
  1:41/18 1:42/2 1:42/7 1:42/8
  1:43/21 1:47/7 1:47/15
  1:47/15 1:47/15 1:48/10
  1:48/24 1:49/9 1:52/5
gone [1] 1:33/23
good [16] 1:3/19 1:5/14 1:6/9
  1:17/10 1:22/5 1:23/5 1:24/3

**G** (continued)

  1:25/17 1:35/9 1:35/9 1:36/5
  1:37/21
  1:47/24 1:49/10
Google [51] 1:1/8 1:3/4 1:3/20
  1:3/23 1:7/2 1:7/13 1:7/15
  1:7/25 1:8/23 1:8/25 1:9/11
  1:9/17 1:9/21 1:9/21 1:11/2
  1:12/10 1:12/11 1:12/19
  1:12/20 1:13/10 1:13/14
  1:13/14 1:13/20 1:14/7 1:14/9
  1:14/23 1:15/3 1:16/15 1:18/6
  1:18/6 1:18/15 1:18/20
  1:19/10 1:20/19 1:23/21
  1:23/23 1:28/1 1:31/17
  1:32/10 1:32/18 1:40/6 1:47/8
  1:48/8 1:48/13 1:48/16
  1:48/22 1:49/15 1:49/16
  1:50/22 1:51/12 1:51/20
Google's [8] 1:15/4 1:15/5
  1:20/4 1:21/23 1:27/5 1:31/18
  1:38/1 1:39/13
gosh [2] 1:12/18 1:39/15
got [10] 1:5/11 1:10/11
  1:12/10 1:15/15 1:15/17
  1:35/6 1:38/25 1:44/20 1:46/9
  1:46/23
graphic [1] 1:49/10
grasp [1] 1:43/23
great [3] 1:18/22 1:24/25
  1:26/22
greedy [3] 1:35/16 1:36/10
  1:36/10
Green [3] 1:30/10 1:30/13
  1:30/14
grind [2] 1:29/21 1:42/25
guaranteeing [2] 1:28/18
  1:28/18
guess [2] 1:20/25 1:50/5
guy [4] 1:35/24 1:43/1 1:47/16
  1:48/18
guys [1] 1:12/5

**H**

had [20] 1:11/2 1:11/8 1:11/14
  1:14/6 1:14/23 1:14/24 1:15/3
  1:15/14 1:27/8 1:28/12
  1:41/15 1:43/4 1:43/5 1:43/16
  1:45/19 1:45/21 1:47/23
  1:48/14 1:49/16 1:51/16
hand [1] 1:17/14
handcuff [1] 1:19/1
Handing [1] 1:22/20
hands [1] 1:12/18
handset [9] 1:7/9 1:8/1 1:8/10
  1:8/10 1:8/25 1:9/13 1:24/17
  1:47/6 1:47/9
handsets [1] 1:8/1
happen [3] 1:31/21 1:50/7
  1:51/24
happened [2] 1:11/19 1:50/9
happening [1] 1:42/16
hard [4] 1:10/14 1:16/17
  1:48/17 1:52/6
hardware [1] 1:14/21
Harrison [1] 1:2/2
has [22] 1:5/2 1:6/25 1:7/3
  1:13/14 1:19/10 1:24/22
  1:24/22 1:25/24 1:29/20
  1:29/21 1:32/18 1:32/19
  1:36/24 1:36/25 1:37/2 1:38/6
  1:41/15 1:41/22 1:43/24
  1:44/15 1:50/5 1:52/3
hasn't [1] 1:7/18

## H

**have** [87]
**haven't** [5]  1:6/18 1:15/25
  1:30/18 1:31/3 1:47/11
**he** [60]
**he'll** [1]  1:40/7
**He's** [1]  1:43/14
**head** [1]  1:40/5
**heading** [1]  1:33/25
**hear** [3]  1:5/22 1:21/25
  1:42/15
**heard** [1]  1:15/25
**hearing** [3]  1:4/1 1:17/18
  1:19/23
**help** [3]  1:12/21 1:14/20
  1:14/21
**here** [19]  1:3/21 1:4/1 1:7/7
  1:7/12 1:9/10 1:10/8 1:10/17
  1:14/14 1:14/16 1:18/23
  1:25/18 1:36/1 1:36/17 1:38/7
  1:39/19 1:39/24 1:42/12
  1:46/6 1:47/14
**here's** [2]  1:27/25 1:41/23
**hereby** [1]  1:54/5
**hesitant** [1]  1:30/5
**hey** [1]  1:9/7
**high** [1]  1:18/7
**higher** [1]  1:48/25
**highly** [2]  1:36/21 1:36/21
**him** [3]  1:30/17 1:30/17
  1:42/15
**hired** [2]  1:26/14 1:29/16
**his** [23]  1:4/16 1:7/20 1:9/14
  1:18/1 1:24/22 1:26/4 1:26/16
  1:27/5 1:27/9 1:31/9 1:31/11
  1:31/13 1:31/15 1:31/15
  1:31/17 1:37/8 1:40/2 1:40/4
  1:43/14 1:43/17 1:47/21
  1:49/1 1:49/2
**Hmm** [1]  1:46/7
**hold** [1]  1:51/22
**Holtzman** [6]  1:2/3 1:3/10
  1:17/9 1:17/11 1:39/11
  1:42/13
**Honor** [58]
**Honorable** [1]  1:1/4
**hoped** [1]  1:14/18
**hopefully** [2]  1:17/16 1:17/21
**horror** [3]  1:26/12 1:29/7
  1:29/10
**hot** [1]  1:40/7
**hour** [4]  1:26/15 1:26/19
  1:26/20 1:35/24
**house** [1]  1:3/13
**how** [13]  1:6/7 1:12/20 1:13/12
  1:15/15 1:18/4 1:26/10
  1:26/14 1:26/15 1:26/18
  1:32/19 1:35/4 1:40/23
  1:41/18
**However** [1]  1:42/24
**hump** [1]  1:46/12
**hundred** [4]  1:9/17 1:10/1
  1:26/1 1:28/9
**hundreds** [1]  1:15/7
**Hwang** [1]  1:3/24
**hypersensitive** [2]  1:27/10
  1:28/2
**hypothetical** [4]  1:8/24 1:9/11
  1:10/6 1:27/21

## I

**I'd** [1]  1:17/21

**I'll** [8]  1:4/7 1:4/19 1:5/18
  1:6/10 1:22/14 1:24/12 1:42/2
  1:43/8 1:43/8 1:44/4 1:51/23
  1:20/13
**I'm** [25]  1:3/21 1:4/9 1:6/2
  1:13/3 1:15/20 1:19/4 1:19/11
  1:19/23 1:23/14 1:26/18
  1:29/15 1:30/1 1:30/5 1:32/1
  1:34/7 1:34/13 1:35/7 1:35/13
  1:36/6 1:36/7 1:39/25 1:41/13
  1:42/2 1:43/21 1:52/5
**I've** [5]  1:16/20 1:30/1
  1:30/22 1:31/3 1:31/8
**idea** [2]  1:26/23 1:29/8
**identical** [1]  1:15/11
**identified** [1]  1:16/21
**if** [39]  1:5/11 1:6/7 1:7/6
  1:7/22 1:9/21 1:15/6 1:16/10
  1:19/5 1:19/10 1:22/4 1:23/12
  1:23/18 1:27/23 1:27/25
  1:28/1 1:28/9 1:28/12 1:30/7
  1:30/16 1:34/3 1:35/14
  1:35/16 1:36/10 1:37/17
  1:38/11 1:38/11 1:39/7 1:41/9
  1:41/14 1:42/6 1:42/23
  1:44/10 1:44/17 1:44/18
  1:47/13 1:49/11 1:49/23
  1:50/6 1:51/1
**ignore** [1]  1:8/7
**ignores** [4]  1:8/4 1:8/14
  1:24/14 1:24/24
**ignoring** [1]  1:24/19
**imagine** [1]  1:48/17
**implementation** [1]  1:28/5
**implications** [1]  1:41/10
**important** [6]  1:4/22 1:15/24
  1:16/14 1:36/3 1:36/4 1:43/8
**imported** [1]  1:15/14
**in** [172]
**in-house** [1]  1:3/13
**inaccurate** [1]  1:23/9
**Inc** [2]  1:3/4 1:3/4
**included** [2]  1:31/16 1:39/4
**including** [3]  1:7/2 1:10/25
  1:25/1
**Incorporated** [3]  1:1/5 1:1/8
  1:1/18
**increased** [1]  1:5/2
**independent** [3]  1:38/5 1:43/17
  1:50/4
**independently** [2]  1:11/15
  1:50/6
**indicates** [1]  1:6/19
**indirect** [1]  1:37/21
**individually** [1]  1:4/21
**industry** [1]  1:21/11
**info** [1]  1:5/23
**information** [1]  1:52/15
**infringe** [3]  1:19/11 1:48/9
  1:50/7
**infringed** [3]  1:18/12 1:33/24
  1:41/15
**infringement** [16]  1:10/8
  1:10/20 1:13/11 1:14/15
  1:14/22 1:18/7 1:18/20 1:20/4
  1:27/11 1:27/22 1:28/22
  1:38/10 1:39/1 1:41/9 1:48/11
  1:48/11
**infringer's** [1]  1:37/23
  1:37/24 1:38/7
**infringes** [1]  1:45/22
**infringing** [9]  1:11/22 1:12/18
  1:37/20 1:38/5 1:39/16
  1:39/20 1:41/24 1:48/16

**I'll** [8]  1:47/7 1:41/11
  1:41/14 1:41/16
**inquiry** [1]  1:36/22
**inside** [3]  1:18/11 1:28/1
  1:48/16
**instances** [1]  1:46/24
**Instead** [1]  1:35/11
**integral** [1]  1:21/14
**intellectual** [2]  1:20/5 1:28/5
**intensive** [1]  1:36/21
**interest** [3]  1:20/3 1:22/15
  1:23/14
**interested** [1]  1:12/16
**interesting** [2]  1:18/1 1:52/4
**interrupting** [1]  1:30/24
**interviews** [2]  1:48/19 1:48/20
**into** [8]  1:6/5 1:9/6 1:11/3
  1:38/22 1:42/2 1:50/8 1:51/5
  1:54/8
**investigate** [2]  1:23/24
  1:40/11
**investigating** [1]  1:15/12
**investigation** [1]  1:9/6
**investing** [1]  1:19/12
**involved** [1]  1:25/25
**iPhone** [1]  1:7/16
**is** [219]
**isn't** [3]  1:10/8 1:10/19
  1:41/25
**issue** [9]  1:17/25 1:18/3
  1:21/7 1:28/9 1:32/6 1:36/1
  1:36/17 1:37/15 1:47/14
**issues** [1]  1:17/18
**it** [146]
**it's** [33]  1:4/3 1:4/19 1:5/7
  1:5/7 1:5/13 1:5/14 1:6/2
  1:6/7 1:8/12 1:15/24 1:16/7
  1:16/17 1:18/1 1:18/15
  1:20/13 1:23/20 1:25/3
  1:26/16 1:29/18 1:30/17
  1:31/25 1:32/11 1:38/22
  1:40/3 1:43/24 1:44/2 1:48/4
  1:48/6 1:48/7 1:48/17 1:48/19
  1:50/12 1:52/3
**its** [9]  1:8/24 1:9/12 1:15/4
  1:17/23 1:19/2 1:25/6 1:25/7
  1:34/5 1:47/20
**itself** [1]  1:7/11

## J

**Jacobs** [5]  1:1/16 1:3/7 1:5/13
  1:17/8 1:35/3
**Java** [64]
**job** [4]  1:16/13 1:16/14 1:40/2
  1:40/4
**Joe** [1]  1:41/1
**joint** [2]  1:21/4 1:23/10
**jointly** [1]  1:4/22
**Jonathan** [2]  1:43/11 1:46/3
**judge** [3]  1:34/10 1:35/5
  1:41/7
**judgment** [2]  1:36/24 1:37/1
**July** [3]  1:1/11 1:3/1 1:54/17
**juncture** [1]  1:27/15
**juries** [1]  1:29/21
**jurors** [2]  1:16/9 1:16/15
**jury** [2]  1:4/12 1:40/21
**just** [28]  1:5/8 1:8/7 1:9/22
  1:11/9 1:11/17 1:13/19
  1:14/12 1:23/9 1:25/11
  1:25/15 1:25/25 1:26/1
  1:26/18 1:28/20 1:32/4

**J**

**just... [13]** 1:33/16 1:35/15
1:35/17 1:36/9 1:41/3 1:42/24
1:47/1 1:47/8 1:47/8 1:48/19
1:49/16 1:50/8 1:50/23
**justification [1]** 1:38/6
**justify [1]** 1:7/2

**K**

**Kathleen [1]** 1:30/20
**keep [2]** 1:19/11 1:42/18
**Keker [2]** 1:2/5 1:3/20
**kept [1]** 1:47/14
**key [3]** 1:25/18 1:33/9 1:46/11
**kicker [1]** 1:12/14
**kind [4]** 1:16/16 1:29/21
1:49/3 1:49/5
**kinds [1]** 1:24/8
**King [2]** 1:2/8 1:3/22
**kit [4]** 1:26/7 1:39/4 1:42/20
1:43/25
**knew [3]** 1:18/6 1:20/23 1:24/9
**Knopoff [1]** 1:30/20
**know [17]** 1:5/6 1:8/5 1:15/6
1:15/23 1:18/3 1:24/5 1:30/1
1:30/16 1:32/1 1:33/11
1:33/14 1:35/10 1:40/25
1:41/1 1:49/6 1:49/13 1:49/14
**knowing [1]** 1:19/1
**knows [1]** 1:4/25

**L**

**lab [2]** 1:38/24 1:39/3
**laboratory [1]** 1:38/16
**Lacavera [1]** 1:3/24
**lack [1]** 1:28/18
**language [14]** 1:13/5 1:13/7
1:13/8 1:13/23 1:42/14
1:42/22 1:44/2 1:44/2 1:44/6
1:47/19 1:48/8 1:49/16 1:50/3
1:50/19
**languages [1]** 1:42/13
**large [1]** 1:16/11
**larger [2]** 1:16/14 1:28/14
**Larry [4]** 1:20/17 1:23/22
1:26/24 1:40/10
**laser [1]** 1:5/11
**laser-like [1]** 1:5/11
**last [3]** 1:5/2 1:9/2 1:33/5
**later [4]** 1:5/18 1:14/3
1:21/17 1:23/20
**Laughter [3]** 1:15/22 1:34/12
1:49/8
**launched [4]** 1:21/1 1:14/19
1:45/19 1:48/14
**law [3]** 1:18/5 1:32/12 1:37/19
**lawsuit [4]** 1:39/18 1:41/23
1:42/8 1:45/14
**lawyer [1]** 1:40/21
**lawyers [3]** 1:18/25 1:35/8
1:35/13
**layer [2]** 1:50/16 1:51/4
**Leave [1]** 1:10/22
**left [1]** 1:43/14
**legal [1]** 1:16/12
**legitimacy [1]** 1:15/3
**length [3]** 1:18/22 1:24/25
1:26/5
**Leonard's [1]** 1:8/6
**less [1]** 1:47/7
**let [14]** 1:7/18 1:15/20 1:17/7
1:19/13 1:19/17 1:20/2

1:22/19 1:23/17 1:24/11
1:42/11 1:43/22
**let's [12]** 1:4/5 1:12/7
1:20/11 1:23/19 1:25/15
1:25/16 1:25/24 1:25/25
1:44/12 1:45/2 1:49/15 1:50/2
**level [2]** 1:16/6 1:51/3
**LG [1]** 1:47/6
**liability [2]** 1:36/23 1:37/8
**libraries [10]** 1:13/13 1:13/16
1:44/12 1:44/13 1:45/4 1:45/5
1:45/7 1:45/16 1:45/20
1:47/20
**license [43]** 1:8/16 1:8/20
1:9/8 1:10/10 1:11/25 1:12/3
1:13/15 1:13/16 1:13/17
1:14/24 1:14/25 1:15/3
1:20/19 1:20/24 1:20/25
1:21/4 1:21/14 1:21/24
1:22/22 1:22/24 1:23/1 1:23/1
1:23/9 1:23/11 1:24/2 1:24/10
1:25/15 1:27/8 1:27/22
1:40/17 1:40/19 1:40/21
1:41/24 1:44/14 1:44/14
1:44/17 1:45/9 1:45/14
1:45/15 1:45/16 1:45/19
1:46/25 1:47/19
**license.' [1]** 1:20/20
**licensed [7]** 1:8/19 1:8/21
1:9/7 1:9/9 1:13/14 1:45/6
1:48/8
**licenses [5]** 1:25/13 1:25/20
1:26/4 1:27/20 1:47/6
**licensing [5]** 1:10/24 1:11/16
1:24/18 1:25/7 1:47/1
**like [18]** 1:5/11 1:12/4 1:12/5
1:17/14 1:17/21 1:17/23
1:18/15 1:22/5 1:22/7 1:35/15
1:36/20 1:36/25 1:41/1 1:41/3
1:49/3 1:49/5 1:49/14 1:49/15
**likelihood [1]** 1:18/7
**limited [1]** 1:17/13
**Lindholm [2]** 1:23/20 1:39/25
**lines [2]** 1:15/7 1:15/11
**link [4]** 1:4/14 1:16/12 1:33/9
1:46/13
**linkage [1]** 1:7/6
**linking [1]** 1:7/19
**lion's [1]** 1:37/25
**listen [2]** 1:18/24 1:48/22
**litigation [2]** 1:6/4 1:13/25
**little [6]** 1:4/9 1:5/18
1:11/13 1:30/5 1:39/7 1:48/17
**LLP [2]** 1:1/15 1:2/8
**logical [1]** 1:7/22
**long [2]** 1:42/19 1:42/19
**look [10]** 1:6/11 1:12/13
1:16/17 1:20/11 1:23/4
1:23/18 1:23/19 1:31/11
1:32/20 1:38/13
**looked [2]** 1:30/1 1:37/12
**looking [5]** 1:5/17 1:5/17
1:20/9 1:42/4 1:45/13
**lose [2]** 1:34/14 1:35/15
**losing [1]** 1:41/5
**lost [1]** 1:28/21
**lot [6]** 1:30/22 1:31/3 1:34/8
1:43/6 1:52/7 1:52/7
**loud [1]** 1:39/25
**Lucent [6]** 1:5/3 1:25/9
1:25/14 1:25/19 1:25/19
1:46/18

**M**

**M/S [1]** 1:1/18
**machine [17]** 1:7/23 1:13/12
1:42/23 1:43/24 1:44/11
1:44/13 1:44/23 1:45/1
1:45/16 1:45/21 1:47/20
1:48/2 1:49/24 1:50/4 1:50/5
1:50/6 1:51/6
**machines [2]** 1:11/8 1:11/18
**made [14]** 1:7/18 1:15/7
1:17/22 1:25/15 1:30/18
1:31/9 1:35/1 1:36/9 1:36/24
1:37/2 1:46/12 1:46/22
1:46/22 1:47/22
**Magna [1]** 1:41/3
**mail [6]** 1:18/9 1:18/11 1:20/8
1:28/1 1:40/8 1:42/16
**main [1]** 1:31/4
**make [20]** 1:7/5 1:9/20 1:16/1
1:16/4 1:21/12 1:25/14
1:25/16 1:29/6 1:30/23 1:31/1
1:31/2 1:31/4 1:32/17 1:33/24
1:35/4 1:43/22 1:44/19
1:46/19 1:47/13 1:52/2
**makers [3]** 1:8/1 1:8/10 1:8/10
**makes [1]** 1:32/18
**making [3]** 1:6/9 1:25/3 1:43/1
**management [1]** 1:35/19
**manufacturers [1]** 1:24/17
**many [7]** 1:7/13 1:7/15 1:11/17
1:13/10 1:13/10 1:16/11
1:44/11
**market [12]** 1:7/4 1:7/5 1:8/4
1:16/25 1:24/14 1:31/9
1:33/17 1:34/4 1:34/16
1:35/21 1:46/12 1:52/1
**material [1]** 1:6/3
**materially [1]** 1:37/20
**Matt [1]** 1:3/13
**matter [1]** 1:9/21
**Matthew [1]** 1:1/19
**may [16]** 1:4/20 1:4/21 1:6/11
1:6/12 1:6/13 1:6/22 1:8/11
1:9/21 1:9/22 1:9/25 1:23/3
1:34/25 1:36/18 1:52/17
1:52/21 1:54/11
**maybe [11]** 1:22/3 1:22/4
1:22/5 1:29/19 1:32/1 1:34/2
1:34/2 1:35/7 1:35/17 1:36/6
1:40/22
**me [33]** 1:10/7 1:16/5 1:16/13
1:19/13 1:19/17 1:19/20
1:19/24 1:20/2 1:21/25 1:22/1
1:22/19 1:23/12 1:23/17
1:24/11 1:27/3 1:29/3 1:29/9
1:30/8 1:30/24 1:31/24
1:32/24 1:33/15 1:33/16
1:33/23 1:34/2 1:36/8 1:38/25
1:42/11 1:42/17 1:43/6
1:43/18 1:54/6 1:54/10
**mean [11]** 1:5/10 1:8/13 1:9/23
1:9/25 1:10/2 1:10/3 1:18/9
1:25/18 1:37/18 1:40/23
1:52/8
**means [3]** 1:10/1 1:10/4
1:37/18
**meant [1]** 1:40/21
**meets [1]** 1:17/3
**memo [6]** 1:19/10 1:39/12
1:39/15 1:39/24 1:45/11
1:45/13
**memory [3]** 1:36/20 1:37/11

## M

**memory...** **[1]** 1:51/15
**Meredith** **[2]** 1:2/4 1:3/16
**meritorious** **[1]** 1:16/21
**methodology** **[1]** 1:32/7
**Michael** **[2]** 1:1/16 1:3/7
**Microsoft** **[1]** 1:46/17
**mid** **[2]** 1:8/11 1:8/12
**might** **[9]** 1:5/10 1:7/25
1:11/13 1:12/6 1:12/6 1:42/12
1:49/25 1:49/25 1:50/7
**Mike** **[1]** 1:35/3
**Mill** **[1]** 1:1/15
**million** **[9]** 1:9/17 1:10/1
1:25/16 1:26/1 1:28/3 1:28/10
1:28/20 1:35/12 1:47/7
**million-dollar** **[1]** 1:28/3
**millions** **[1]** 1:31/25
**mind** **[5]** 1:16/2 1:16/5 1:33/24
1:49/12 1:52/17
**minute** **[2]** 1:21/3 1:44/5
**minutes** **[8]** 1:4/4 1:15/19
1:15/20 1:15/21 1:17/7 1:39/8
1:46/9 1:46/10
**mistake** **[2]** 1:35/1 1:36/8
**mobile** **[2]** 1:7/14 1:7/15
**module** **[1]** 1:15/15
**moment** **[2]** 1:23/15 1:45/3
**monetizes** **[1]** 1:32/10
**money** **[4]** 1:32/17 1:32/18
1:42/7 1:43/6
**month** **[3]** 1:11/24 1:39/18
1:41/22
**months** **[1]** 1:14/3
**moon** **[1]** 1:32/5
**more** **[17]** 1:5/7 1:10/4 1:12/15
1:12/16 1:12/16 1:15/19
1:16/14 1:16/14 1:23/6
1:25/25 1:32/5 1:35/4 1:35/16
1:43/4 1:43/5 1:49/17 1:50/12
**Morrison** **[2]** 1:1/15 1:3/7
**Morse** **[1]** 1:19/23
**most** **[3]** 1:4/13 1:8/15 1:21/16
**motion** **[1]** 1:4/3
**Motorola** **[2]** 1:8/14 1:47/6
**Mr** **[1]** 1:17/8
**Mr.** **[25]** 1:4/3 1:5/13 1:10/25
1:13/19 1:14/2 1:14/7 1:17/9
1:17/11 1:17/22 1:18/1 1:21/3
1:21/23 1:23/20 1:24/12
1:24/22 1:25/6 1:25/10
1:26/10 1:27/9 1:28/10 1:31/9
1:35/15 1:38/9 1:39/11
1:42/13
**Mr. Ellison** **[1]** 1:14/2
**Mr. Holtzman** **[4]** 1:17/9
1:17/11 1:39/11 1:42/13
**Mr. Jacobs** **[1]** 1:5/13
**Mr. Lindholm** **[1]** 1:23/20
**Mr. Rubin** **[3]** 1:14/7 1:21/23
1:27/9
**Mr. Schwartz** **[2]** 1:10/25
1:13/19
**Mr. Van** **[12]** 1:4/3 1:17/22
1:18/1 1:21/3 1:24/12 1:24/22
1:25/6 1:25/10 1:26/10
1:28/10 1:35/15 1:38/9
**Mr. Van Nest** **[1]** 1:31/9
**much** **[6]** 1:4/7 1:4/9 1:26/15
1:26/18 1:28/14 1:28/14
**multiple** **[1]** 1:29/2
**my** **[10]** 1:3/21 1:6/10 1:12/18

1:19/5 1:20/19 1:26/12
1:27/11 1:29/12 1:30/10
1:54/8
**myself** **[1]** 1:22/1

## N

**name** **[2]** 1:30/12 1:46/2
**near** **[1]** 1:7/21
**need** **[11]** 1:5/13 1:11/25
1:12/3 1:24/1 1:40/17 1:40/18
1:41/2 1:45/9 1:49/11 1:52/16
1:52/18
**needed** **[5]** 1:20/24 1:21/8
1:24/9 1:41/1 1:41/2
**negotiate** **[2]** 1:24/1 1:40/17
**negotiated** **[1]** 1:14/17
**negotiating** **[2]** 1:12/1 1:12/2
**negotiation** **[5]** 1:8/24 1:9/11
1:10/6 1:10/23 1:10/24
**negotiations** **[10]** 1:9/1 1:9/15
1:9/16 1:11/20 1:14/6 1:24/19
1:25/8 1:27/19 1:39/14 1:42/3
**Nest** **[17]** 1:2/5 1:2/6 1:3/20
1:3/20 1:4/3 1:17/22 1:18/1
1:21/3 1:24/12 1:24/22 1:25/6
1:25/10 1:26/10 1:28/10
1:31/9 1:35/15 1:38/9
**never** **[9]** 1:8/20 1:9/8 1:10/15
1:13/25 1:14/1 1:14/1 1:35/12
1:35/13 1:45/17
**new** **[2]** 1:2/9 1:5/22
**news** **[1]** 1:12/24
**next** **[7]** 1:1/21 1:22/11
1:22/14 1:23/6 1:35/13
1:49/23 1:51/3
**nexus** **[1]** 1:37/18
**Ninth** **[1]** 1:37/19
**no** **[36]** 1:1/7 1:1/23 1:4/22
1:6/17 1:6/23 1:7/3 1:7/11
1:7/21 1:9/24 1:14/14 1:18/24
1:19/4 1:19/11 1:22/11
1:22/11 1:29/18 1:29/21
1:30/9 1:30/25 1:32/18
1:35/16 1:36/12 1:38/16
1:38/16 1:38/20 1:39/14
1:39/15 1:42/19 1:42/25
1:44/24 1:46/13 1:48/11
1:48/11 1:50/12 1:51/10
1:54/16
**nobody** **[5]** 1:11/21 1:11/22
1:13/5 1:39/15 1:44/15
**nobody's** **[2]** 1:13/11 1:13/17
**Nokia** **[3]** 1:8/14 1:30/10
1:47/6
**none** **[6]** 1:7/16 1:10/13
1:24/15 1:24/21 1:39/16
1:45/10
**nonessential** **[1]** 1:6/20
**noninfringement** **[1]** 1:13/4
**Northern** **[3]** 1:1/3 1:1/24
1:54/5
**not** **[90]**
**note** **[1]** 1:4/19
**noted** **[1]** 1:7/4
**notes** **[1]** 1:8/22
**nothing** **[10]** 1:7/20 1:10/1
1:10/3 1:29/20 1:34/23
1:35/24 1:39/21 1:39/22
1:48/12 1:49/17
**now** **[32]** 1:4/22 1:4/25 1:5/6
1:5/21 1:6/16 1:9/10 1:9/15
1:10/11 1:14/10 1:16/19
1:24/11 1:24/11 1:26/14

1:27/12 1:29/12 1:30/10
1:33/25
1:34/2 1:34/13 1:35/20
1:36/23 1:37/3 1:37/15 1:40/1
1:40/2 1:40/4 1:42/11 1:43/13
1:45/22 1:48/20
**nowhere** **[1]** 1:6/4
**number** **[18]** 1:6/5 1:8/11
1:8/11 1:8/13 1:16/11 1:16/15
1:17/19 1:28/14 1:28/15
1:28/15 1:28/16 1:31/13
1:33/21 1:41/20 1:41/21
1:45/25 1:46/24 1:47/1
**NY** **[1]** 1:2/9

## O

**o'clock** **[1]** 1:4/5
**o0o** **[2]** 1:2/12 1:53/2
**Oakland** **[1]** 1:2/3
**oath** **[1]** 1:43/2
**objectively** **[1]** 1:18/6
**obtain** **[1]** 1:20/19
**Obviously** **[1]** 1:7/13
**occur** **[1]** 1:49/14
**occurred** **[1]** 1:27/22
**off** **[4]** 1:7/15 1:9/12 1:15/17
1:49/9
**offer** **[4]** 1:25/15 1:28/3
1:28/4 1:28/5
**offered** **[2]** 1:9/18 1:10/5
**offerer** **[1]** 1:9/25
**Official** **[2]** 1:1/23 1:54/4
**oh** **[4]** 1:12/18 1:18/17 1:28/25
1:39/15
**okay** **[24]** 1:16/3 1:19/7
1:19/13 1:19/25 1:20/9
1:20/11 1:20/15 1:21/13
1:22/13 1:23/13 1:31/14
1:31/23 1:33/1 1:33/5 1:33/21
1:34/6 1:35/7 1:40/7 1:40/19
1:40/19 1:42/7 1:43/8 1:44/5
1:49/22
**omit** **[2]** 1:37/3 1:37/4
**on** **[76]**
**once** **[3]** 1:37/10 1:51/6
1:51/13
**once/run** **[1]** 1:51/6
**one** **[25]** 1:8/8 1:16/5 1:18/11
1:19/4 1:23/11 1:23/12
1:29/11 1:29/16 1:30/6
1:30/20 1:32/20 1:33/3 1:33/5
1:34/14 1:35/14 1:36/6
1:36/17 1:37/3 1:39/14 1:41/3
1:41/21 1:45/25 1:46/4
1:46/11 1:46/24
**one's** **[2]** 1:18/17 1:18/17
**ones** **[1]** 1:29/2
**only** **[10]** 1:5/11 1:7/5 1:7/8
1:9/13 1:13/10 1:14/2 1:15/19
1:38/22 1:41/2 1:43/24
**onto** **[1]** 1:28/11
**open** **[11]** 1:13/9 1:42/14
1:42/14 1:42/18 1:42/20
1:42/22 1:43/23 1:44/3 1:44/6
1:44/17 1:50/19
**operating** **[1]** 1:8/16
**operation** **[1]** 1:47/16
**opinion** **[1]** 1:8/23
**opposition** **[1]** 1:8/6
**option** **[1]** 1:11/14
**options** **[2]** 1:11/2 1:51/16
**or** **[35]** 1:4/11 1:4/14 1:6/19
1:7/25 1:9/7 1:11/16 1:12/10

**O**

or... **[28]**  1:13/14 1:15/6
1:15/14 1:15/20 1:16/12
1:17/7 1:19/12 1:24/23
1:25/23 1:27/8 1:27/8 1:28/10
1:29/16 1:31/17 1:34/25
1:36/9 1:37/22 1:38/24
1:42/19 1:42/20 1:46/17
1:48/8 1:48/14 1:48/15
1:48/16 1:49/1 1:49/25
1:54/12

Oracle **[29]**  1:1/5 1:1/18
1:1/18 1:3/3 1:3/8 1:3/11
1:3/14 1:3/17 1:5/19 1:5/24
1:6/6 1:8/9 1:8/19 1:11/23
1:16/22 1:19/3 1:19/18
1:24/16 1:24/18 1:29/12
1:29/14 1:38/21 1:39/5 1:42/6
1:43/15 1:44/3 1:45/22
1:46/22 1:48/1

Oracle's **[4]**  1:9/4 1:25/6
1:25/7 1:38/2

order **[13]**  1:6/10 1:7/4
1:17/24 1:19/4 1:19/5 1:24/13
1:35/19 1:36/14 1:51/14
1:51/14 1:51/15 1:51/23
1:52/5

orders **[2]**  1:17/23 1:19/22

original **[1]**  1:13/13

OS **[1]**  1:20/18

other **[25]**  1:4/20 1:6/9 1:9/14
1:10/6 1:11/8 1:11/14 1:11/16
1:11/17 1:16/4 1:18/9 1:24/22
1:31/6 1:33/3 1:35/19 1:36/17
1:37/4 1:38/3 1:38/4 1:42/9
1:44/11 1:46/11 1:46/19
1:47/13 1:47/25 1:49/11

others **[2]**  1:13/10 1:16/21

ought **[2]**  1:24/5 1:41/12

our **[22]**  1:8/6 1:8/9 1:14/21
1:31/12 1:34/19 1:35/19
1:36/15 1:36/16 1:38/1
1:46/21 1:47/5 1:47/11
1:48/10 1:48/24 1:51/7
1:51/12 1:51/17 1:51/18
1:51/18 1:51/25 1:52/1 1:52/2

ourselves **[1]**  1:21/11

out **[21]**  1:5/19 1:8/5 1:10/11
1:12/11 1:14/18 1:15/12
1:18/10 1:26/11 1:29/7 1:30/6
1:34/5 1:35/6 1:35/16 1:39/15
1:39/25 1:42/11 1:50/14
1:51/2 1:52/3 1:52/5 1:52/7

output **[1]**  1:51/3

over **[6]**  1:23/25 1:25/12
1:28/15 1:39/23 1:40/15
1:46/12

overall **[1]**  1:28/7

overlooks **[1]**  1:9/1

own **[13]**  1:11/15 1:11/15
1:11/15 1:12/12 1:15/4
1:19/21 1:43/14 1:43/17
1:44/18 1:45/21 1:47/20
1:49/24 1:50/4

owned **[1]**  1:19/3

**P**

p.m **[2]**  1:3/1 1:52/25

Pacific **[1]**  1:4/19

page **[11]**  1:1/15 1:1/21
1:20/10 1:20/17 1:21/11
1:21/13 1:22/23 1:22/25

1:23/3 1:23/18 1:46/21

paid **[7]**  1:14/2 1:26/15
1:26/16 1:26/20 1:30/2
1:35/24 1:43/6

pair **[2]**  1:48/23 1:49/3

Palo **[1]**  1:1/16

Panduit **[1]**  1:16/25

paragraph **[1]**  1:40/9

Param **[1]**  1:29/12

Parkway **[1]**  1:1/18

part **[9]**  1:7/14 1:13/24
1:14/18 1:21/14 1:28/21
1:34/22 1:42/17 1:45/8

participants **[1]**  1:10/25

particular **[2]**  1:36/19 1:36/20

parties **[8]**  1:11/17 1:13/14
1:24/20 1:25/8 1:27/8 1:42/3
1:42/25 1:48/9

partner **[1]**  1:12/7

partners **[1]**  1:3/21

partnership **[5]**  1:11/3 1:12/2
1:14/8 1:14/17 1:27/8

parts **[2]**  1:35/21 1:44/22

party **[3]**  1:15/3 1:15/13
1:45/6

passes **[1]**  1:46/17

past **[2]**  1:25/19 1:27/19

patent **[6]**  1:5/10 1:18/16
1:18/17 1:50/7 1:50/9 1:51/9

patented **[1]**  1:51/11

patents **[46]**  1:4/14 1:4/21
1:4/24 1:5/4 1:5/8 1:5/16
1:5/18 1:5/19 1:5/19 1:5/24
1:6/5 1:6/16 1:10/12 1:11/21
1:11/22 1:11/22 1:11/23
1:12/13 1:14/1 1:18/10
1:18/12 1:18/14 1:25/16
1:25/25 1:26/1 1:33/9 1:33/11
1:33/22 1:36/19 1:37/11
1:39/12 1:39/13 1:39/13
1:39/14 1:39/16 1:39/17
1:39/19 1:40/20 1:40/22
1:41/23 1:47/2 1:47/23
1:48/15 1:48/16 1:51/10
1:51/11

path **[1]**  1:51/13

pay **[3]**  1:9/12 1:39/20 1:44/15

payroll **[4]**  1:28/25 1:29/10
1:29/15 1:29/16

penny **[1]**  1:44/15

people **[7]**  1:14/5 1:14/5
1:14/6 1:14/7 1:26/22 1:27/9
1:29/21

per **[3]**  1:26/15 1:26/19
1:26/20

percent **[2]**  1:8/24 1:9/12

percentage **[1]**  1:47/3

performance **[2]**  1:51/14
1:51/23

Perhaps **[1]**  1:21/2 1:21/16

period **[2]**  1:28/15 1:28/20

permanent **[1]**  1:41/10

person's **[1]**  1:46/2

phone **[1]**  1:8/17

piece **[1]**  1:5/22

place **[1]**  1:10/23

Plaintiff **[4]**  1:1/6 1:1/15
1:1/18 1:2/2

platform **[3]**  1:9/14 1:26/8
1:28/6

playing **[1]**  1:9/22

please **[3]**  1:3/5 1:4/3 1:31/1
1:5/11  1:5/14
1:5/14 1:6/10 1:6/25 1:9/2
1:10/4 1:12/22 1:20/22
1:22/14 1:25/4 1:25/5 1:31/8
1:36/3 1:36/4 1:39/23 1:42/11
1:43/9 1:46/16 1:46/19
1:47/13 1:49/20 1:52/22

pointed **[1]**  1:25/6

points **[8]**  1:5/16 1:17/22
1:30/24 1:31/4 1:40/13
1:41/20 1:41/20 1:46/11

position **[6]**  1:21/11 1:29/25
1:45/22 1:48/10 1:51/7
1:51/17

positive **[4]**  1:43/4 1:43/4
1:43/5 1:43/6

possibly **[2]**  1:7/24 1:10/2

potentially **[1]**  1:6/9

practices **[1]**  1:25/7

practicing **[1]**  1:47/18

prepared **[2]**  1:22/12 1:34/25

present **[2]**  1:16/11 1:20/3

presentation **[2]**  1:18/1
1:21/23

presented **[1]**  1:6/3

presenting **[1]**  1:16/22

president **[2]**  1:40/1 1:43/12

pretty **[2]**  1:24/3 1:25/17

prevent **[1]**  1:4/10

previous **[1]**  1:17/23

principles **[1]**  1:16/24

prior **[2]**  1:6/3 1:20/4

probably **[3]**  1:10/4 1:15/13
1:31/25

problem **[5]**  1:18/17 1:18/18
1:30/8 1:50/9 1:52/4

proceed **[1]**  1:4/3

proceeded **[1]**  1:21/6

proceeding **[1]**  1:18/25

proceedings **[4]**  1:1/12 1:52/25
1:54/6 1:54/9

product **[14]**  1:7/7 1:7/8
1:7/11 1:11/12 1:12/4 1:15/4
1:26/13 1:29/6 1:32/14
1:37/20 1:38/5 1:39/3 1:45/19
1:48/18

production **[1]**  1:10/11

products **[5]**  1:7/14 1:7/16
1:7/17 1:12/20 1:26/8

Professor **[9]**  1:24/24 1:26/4
1:27/24 1:28/8 1:31/10
1:31/16 1:36/13 1:37/1 1:38/6

profits **[6]**  1:37/21 1:37/23
1:37/24 1:38/3 1:38/4 1:38/7

profound **[1]**  1:41/10

program **[3]**  1:44/5 1:49/16
1:50/20

programmers **[1]**  1:13/8

programming **[11]**  1:13/5 1:13/7
1:13/23 1:42/14 1:42/22
1:44/2 1:47/19 1:48/7 1:50/3
1:50/18 1:50/24

programs **[1]**  1:44/3

project **[3]**  1:11/10 1:12/4
1:42/1

projection **[1]**  1:47/4

promise **[1]**  1:6/21

promises **[1]**  1:6/22

promoted **[2]**  1:26/7 1:28/6

proof **[1]**  1:13/18

proper **[1]**  1:47/19

properly **[2]**  1:31/12 1:48/9

## P

**property [2]** 1:20/5 1:28/5
**proposal [1]** 1:20/20
**proposed [3]** 1:9/16 1:12/8 1:20/19
**protected [1]** 1:13/6
**protecting [1]** 1:16/15
**protective [1]** 1:19/22
**prove [1]** 1:13/4
**provide [4]** 1:11/10 1:11/11 1:37/11 1:51/15
**public [10]** 1:18/25 1:19/1 1:19/4 1:19/12 1:19/12 1:19/23 1:24/24 1:39/4 1:44/19 1:51/22
**public's [1]** 1:18/23
**publicly [2]** 1:14/19 1:48/18
**publish [1]** 1:15/4
**published [2]** 1:8/1 1:45/18
**pull [1]** 1:22/4
**pulled [1]** 1:22/3
**punts [1]** 1:4/16
**Purcell [2]** 1:2/7 1:3/22
**pure [1]** 1:10/24
**purportedly [1]** 1:18/3
**put [9]** 1:8/12 1:12/20 1:19/5 1:20/6 1:21/21 1:34/17 1:35/20 1:36/15 1:43/15

## Q

**question [7]** 1:18/4 1:18/5 1:37/10 1:38/9 1:39/10 1:42/9 1:49/11
**questions [3]** 1:17/19 1:17/23 1:52/1
**quiet [1]** 1:15/21 1:30/23
**quote [4]** 1:20/18 1:20/20 1:21/24 1:21/25
**quotes [1]** 1:21/22

## R

**Rader [1]** 1:35/5
**railroad [1]** 1:36/6
**ramping [1]** 1:28/20
**rarely [1]** 1:4/8
**rates [4]** 1:8/21 1:8/21 1:9/9 1:24/18
**reach [1]** 1:12/11
**reaches [1]** 1:25/2
**reacted [1]** 1:18/4
**reaction [1]** 1:13/21
**read [8]** 1:21/25 1:22/1 1:31/3 1:31/3 1:39/25 1:41/3 1:52/15 1:52/18
**really [4]** 1:7/21 1:7/23 1:8/3 1:42/20
**reason [1]** 1:45/17
**reasonable [4]** 1:9/23 1:32/5 1:37/22 1:38/7
**rebuttal [1]** 1:15/20
**recite [1]** 1:46/21
**recognized [6]** 1:7/1 1:15/2 1:15/4 1:15/5 1:20/5 1:28/1
**recoil [2]** 1:26/12 1:29/7
**recoiled [1]** 1:29/10
**record [12]** 1:3/6 1:6/1 1:6/7 1:6/12 1:6/12 1:8/12 1:27/12 1:27/14 1:27/17 1:31/11 1:48/12 1:54/9
**records [1]** 1:39/22
**redo [1]** 1:16/24
**Redwood [1]** 1:1/19

**refer [1]** 1:19/5
**referred [2]** 1:6/24 1:7/2
**reflected [1]** 1:28/3
**refused [3]** 1:8/20 1:9/8 1:46/25
**regard [2]** 1:18/2 1:18/4
**regarded [1]** 1:43/3
**regarding [2]** 1:18/3 1:27/8
**regulators [4]** 1:8/8 1:8/19 1:9/5 1:24/16
**reject [1]** 1:9/23
**rejected [3]** 1:9/17 1:9/21 1:14/8
**rejection [1]** 1:10/1
**relates [1]** 1:21/7
**relationship [1]** 1:7/24
**rely [1]** 1:6/8
**removal [1]** 1:54/12
**renaming [1]** 1:50/16
**Renny [1]** 1:3/24
**repeat [2]** 1:9/2 1:15/24
**reply [1]** 1:37/17
**report [37]** 1:4/9 1:4/11 1:4/16 1:6/19 1:6/24 1:7/21 1:8/4 1:9/14 1:16/7 1:16/8 1:16/9 1:16/17 1:16/20 1:16/22 1:16/23 1:16/24 1:17/1 1:17/1 1:17/3 1:17/4 1:24/13 1:26/4 1:26/17 1:27/15 1:31/10 1:31/16 1:34/17 1:35/11 1:35/15 1:35/16 1:35/20 1:36/11 1:36/16 1:36/16 1:46/17 1:52/13 1:52/18
**reported [2]** 1:1/23 1:54/6
**reporter [4]** 1:1/23 1:54/2 1:54/4 1:54/7
**reporter's [2]** 1:1/12 1:54/10
**reports [3]** 1:5/3 1:35/6 1:35/8
**represent [1]** 1:20/13
**representations [1]** 1:9/5
**representatives [1]** 1:3/23
**represented [1]** 1:8/18
**represents [1]** 1:4/11
**required [3]** 1:5/1 1:35/19 1:36/15
**requirement [2]** 1:5/1 1:17/3
**requires [1]** 1:7/5
**resolved [1]** 1:27/15
**resolving [1]** 1:25/3
**resort [1]** 1:19/23
**resources [1]** 1:11/4
**respect [5]** 1:4/8 1:13/12 1:18/14 1:36/12 1:47/5
**respond [2]** 1:26/10 1:39/9
**restriction [1]** 1:18/25
**result [2]** 1:16/16 1:28/22
**retained [2]** 1:50/17 1:50/17
**retainers [1]** 1:29/17
**revenue [10]** 1:7/2 1:7/13 1:7/15 1:8/25 1:9/12 1:24/17 1:25/7 1:28/21 1:31/17 1:32/21
**revenues [5]** 1:7/25 1:8/10 1:16/12 1:32/11 1:47/3
**reverse [2]** 1:17/24 1:24/13
**revolve [1]** 1:26/5
**Rich [3]** 1:30/10 1:30/13 1:30/14
**Richardson [1]** 1:2/4
**ridiculous [3]** 1:8/25 1:31/20 1:32/2

**right [33]** 1:4/1 1:4/22 1:5/9 1:8/17 1:15/4 1:15/5 1:15/10 1:17/15 1:20/15 1:22/18 1:23/16 1:23/19 1:30/14 1:30/19 1:30/22 1:32/14 1:32/15 1:32/23 1:33/7 1:34/13 1:38/8 1:39/24 1:43/25 1:44/7 1:44/20 1:44/21 1:44/25 1:45/2 1:45/2 1:46/5 1:49/19 1:52/3
**rights [1]** 1:49/17
**Rim [2]** 1:7/16 1:8/14
**Road [1]** 1:1/15
**Robert [1]** 1:2/6
**rockets [4]** 1:48/23 1:48/24 1:49/3 1:49/10
**roll [1]** 1:34/3
**room [4]** 1:12/12 1:14/24 1:35/5 1:50/8
**roughly [1]** 1:4/5
**royalty [4]** 1:7/3 1:9/16 1:37/22 1:38/7
**RPR [2]** 1:1/23 1:54/16
**Rubin [9]** 1:14/7 1:20/15 1:21/23 1:27/4 1:27/5 1:27/9 1:40/3 1:40/5 1:41/6
**ruin [1]** 1:30/3
**Rule [8]** 1:7/4 1:7/5 1:16/25 1:33/17 1:34/4 1:35/21 1:46/12 1:52/1
**run [3]** 1:36/6 1:51/6 1:52/3
**running [2]** 1:14/5 1:46/1
**Russia [1]** 1:15/14

## S

**Sahar [4]** 1:1/23 1:54/4 1:54/15 1:54/16
**said [51]** 1:6/2 1:8/9 1:11/9 1:11/22 1:14/20 1:14/20 1:14/25 1:15/25 1:18/2 1:18/3 1:18/17 1:18/20 1:18/24 1:20/17 1:20/23 1:21/3 1:22/8 1:24/15 1:24/15 1:24/16 1:24/18 1:24/21 1:26/11 1:26/22 1:27/13 1:34/18 1:34/20 1:35/15 1:37/10 1:37/13 1:39/19 1:43/1 1:43/5 1:43/10 1:43/18 1:43/21 1:43/22 1:43/23 1:44/1 1:46/19 1:47/4 1:47/10 1:48/20 1:48/20 1:48/21 1:48/21 1:54/9 1:54/11
**sake [1]** 1:49/13
**sale [1]** 1:38/19
**same [5]** 1:6/13 1:11/7 1:15/8 1:19/18 1:50/9
**Samsung [2]** 1:8/14 1:47/6
**San [2]** 1:1/10 1:2/6
**Sansome [1]** 1:2/5
**Sarboraria [2]** 1:1/19 1:3/13
**sat [1]** 1:13/19
**satisfactory [4]** 1:51/14 1:51/15 1:51/15 1:51/23
**save [1]** 1:15/20
**saw [3]** 1:12/23 1:18/9 1:39/17
**say [48]** 1:5/23 1:6/22 1:6/22 1:9/3 1:12/3 1:12/4 1:12/18 1:14/10 1:14/14 1:14/17 1:14/22 1:19/6 1:19/9 1:19/14 1:19/14 1:20/7 1:20/8 1:21/22 1:25/14 1:25/15 1:25/16 1:25/24 1:25/25 1:26/12

**S**

**say... [24]** 1:26/14 1:26/22 1:28/25 1:30/1 1:30/15 1:31/2 1:34/2 1:35/9 1:37/6 1:38/18 1:39/24 1:40/20 1:40/25 1:41/9 1:48/4 1:48/6 1:48/6 1:48/7 1:49/15 1:49/15 1:50/2 1:50/3 1:52/6 1:52/8

**saying [6]** 1:13/1 1:13/3 1:19/10 1:41/13 1:42/18 1:45/12

**says [14]** 1:4/16 1:4/19 1:6/23 1:18/11 1:24/13 1:36/17 1:39/15 1:40/8 1:41/23 1:42/6 1:45/22 1:48/18 1:48/20 1:51/22

**scenario [3]** 1:10/14 1:10/15 1:37/10

**scenarios [1]** 1:35/20

**Schiller [3]** 1:2/2 1:3/10 1:3/16

**Schwartz [4]** 1:10/25 1:13/19 1:43/11 1:46/3

**scrutiny [1]** 1:16/6

**seal [1]** 1:19/5

**seat [1]** 1:40/7

**SEC [1]** 1:46/23

**second [7]** 1:6/25 1:8/2 1:17/20 1:25/5 1:31/15 1:31/15 1:40/8

**Secondly [1]** 1:8/18

**secret [2]** 1:19/6 1:19/12

**security [3]** 1:36/21 1:37/12 1:51/16

**see [9]** 1:10/17 1:11/23 1:20/7 1:22/5 1:22/7 1:22/19 1:23/11 1:32/4 1:34/3

**seek [1]** 1:42/8

**seeks [1]** 1:4/9

**seems [4]** 1:16/5 1:16/13 1:31/18 1:32/24

**seen [3]** 1:4/8 1:6/18 1:10/15

**sell [2]** 1:14/21 1:32/13

**sensitivity [1]** 1:28/2

**Sergey [2]** 1:23/23 1:40/11

**series [1]** 1:44/12

**serious [1]** 1:41/14

**set [1]** 1:48/24

**setting [1]** 1:16/25

**seven [8]** 1:5/18 1:5/21 1:6/16 1:18/12 1:25/16 1:25/25 1:26/1 1:47/2

**several [4]** 1:5/2 1:11/8 1:11/9 1:14/3

**share [2]** 1:8/24 1:37/25

**sharing [1]** 1:28/19

**she [1]** 1:30/21

**shipped [1]** 1:38/22

**Shores [1]** 1:1/19

**shorthand [1]** 1:54/7

**shot [1]** 1:35/14

**should [11]** 1:4/10 1:16/6 1:16/6 1:17/1 1:17/1 1:17/2 1:23/5 1:31/19 1:32/5 1:36/9 1:41/24

**shouldn't [1]** 1:31/16

**show [12]** 1:7/10 1:7/18 1:18/19 1:22/18 1:24/9 1:27/13 1:27/14 1:31/11 1:37/17 1:38/2 1:51/12 1:51/13

**showed [3]** 1:11/21 1:11/23

1:28/17

**having (3)** 1:52/2

**shown [2]** 1:39/14 1:48/15

**shows [2]** 1:47/5 1:48/12

**Shuttle [3]** 1:49/4 1:49/5 1:49/9

**side [4]** 1:10/7 1:30/2 1:47/25 1:49/11

**significant [2]** 1:6/17 1:47/5

**similar [1]** 1:25/20 1:25/21 1:28/15

**simple [3]** 1:25/11 1:25/16 1:35/4

**simply [3]** 1:27/17 1:42/12 1:46/11

**Singh [1]** 1:29/12

**single [1]** 1:28/23

**skepticism [1]** 1:25/11

**slide [1]** 1:23/7

**slides [3]** 1:18/21 1:20/3

**small [1]** 1:7/14

**smart [1]** 1:8/17

**so [60]**

**software [6]** 1:13/15 1:13/16 1:39/3 1:43/23 1:45/6 1:47/3

**sold [1]** 1:9/13

**solve [1]** 1:50/9

**some [13]** 1:15/13 1:17/16 1:18/11 1:25/1 1:26/4 1:30/23 1:34/3 1:34/10 1:37/12 1:38/4 1:39/19 1:50/15 1:52/17

**somebody [11]** 1:26/20 1:29/5 1:29/9 1:29/16 1:29/19 1:29/20 1:30/11 1:34/18 1:38/24 1:41/15 1:49/23

**somebody's [1]** 1:50/7

**someone [5]** 1:4/16 1:6/22 1:6/22 1:6/23 1:49/15

**someplace [1]** 1:38/25

**something [7]** 1:12/22 1:12/23 1:31/13 1:35/7 1:36/23 1:43/21 1:43/22

**somewhere [1]** 1:34/1

**soon [2]** 1:26/11 1:52/5

**sort [1]** 1:16/16

**source [1]** 1:13/8

**Space [3]** 1:49/3 1:49/5 1:49/9

**Spaulding [2]** 1:2/8 1:3/22

**specific [3]** 1:11/21 1:18/13 1:36/19

**specifically [3]** 1:21/13 1:25/10 1:28/9

**speed [2]** 1:36/20 1:37/11

**spend [2]** 1:16/1 1:42/7

**spread [1]** 1:12/24

**spreading [1]** 1:13/22

**stand [2]** 1:41/6 1:51/20

**start [2]** 1:17/25 1:46/15

**started [3]** 1:14/2 1:19/20 1:50/14

**starts [2]** 1:41/23 1:45/14

**state [1]** 1:3/5

**stated [1]** 1:21/23

**statement [2]** 1:25/6 1:47/4

**statements [3]** 1:24/24 1:25/7 1:46/21

**states [3]** 1:1/2 1:23/21 1:54/5

**status [1]** 1:52/13

**Statute [1]** 1:38/3

**stay [1]** 1:50/23

**stepping [1]** 1:7/19

**Steve [1]** 1:3/10

**stick [1]** 1:21/18

**still [5]** 1:5/17 1:5/17 1:15/12 1:40/5 1:48/12

**straight [1]** 1:15/8

**strapped [1]** 1:48/23

**Street [2]** 1:2/2 1:2/5

**stricken [1]** 1:17/2

**strike [1]** 1:16/20

**stuck [1]** 1:51/4

**study [1]** 1:4/2

**submit [3]** 1:22/9 1:27/14 1:35/8

**submitted [1]** 1:27/16

**subpoena [3]** 1:30/17 1:43/18 1:46/6

**subsidiary [1]** 1:19/3

**suck [2]** 1:24/1 1:40/16

**sue [2]** 1:15/1 1:15/2

**sued [2]** 1:14/4 1:45/17

**sufficient [1]** 1:37/13

**Suite [1]** 1:2/2

**summarize [2]** 1:19/17 1:20/2

**Sun [63]**

**Sun's [3]** 1:20/5 1:26/6 1:26/8

**supplement [1]** 1:34/25 1:52/21

**supposed [1]** 1:6/10

**supposedly [1]** 1:31/9

**sure [8]** 1:6/2 1:16/1 1:16/4 1:31/1 1:31/3 1:32/1 1:42/2 1:43/23

**switch [1]** 1:23/17

**system [4]** 1:8/16 1:47/1 1:47/2 1:48/4

**T**

**tab [1]** 1:17/19

**table [1]** 1:16/8

**tabs [1]** 1:17/20

**take [19]** 1:6/5 1:6/11 1:10/1 1:10/6 1:16/17 1:20/20 1:25/11 1:28/9 1:35/14 1:37/10 1:41/24 1:44/13 1:44/14 1:44/17 1:45/14 1:45/15 1:45/15 1:48/24 1:52/19

**taken [2]** 1:10/4 1:30/22

**takes [1]** 1:27/22

**talent [1]** 1:52/7

**talk [5]** 1:5/18 1:24/19 1:39/10 1:46/14 1:46/14

**talked [1]** 1:28/10

**talking [12]** 1:7/8 1:8/23 1:12/9 1:12/13 1:14/7 1:16/7 1:29/15 1:29/24 1:35/5 1:41/14 1:42/12 1:46/15

**teaching [1]** 1:25/19

**technical [6]** 1:23/24 1:26/7 1:36/16 1:36/22 1:40/11 1:40/16

**technique [2]** 1:51/21 1:51/23

**technologies [2]** 1:51/11 1:51/17

**technology [16]** 1:5/5 1:8/20 1:11/3 1:11/11 1:11/11 1:11/16 1:11/16 1:12/1 1:12/3 1:12/6 1:12/6 1:13/14 1:14/8 1:14/17 1:46/25 1:48/8

**tell [8]** 1:10/7 1:19/24 1:27/3 1:29/9 1:30/7 1:33/15 1:37/5 1:38/25

**telling [1]** 1:21/16

# T

**ten [1]**  1:5/10
**tend [1]**  1:29/22
**term [5]**  1:12/11 1:40/16
1:49/1 1:49/1 1:49/2
**terms [7]**  1:11/19 1:16/15
1:24/23 1:25/21 1:28/13
1:37/24 1:40/18
**terrible [3]**  1:26/13 1:26/23
1:29/1
**test [2]**  1:4/19 1:37/16
**tested [1]**  1:38/14
**testified [2]**  1:27/4 1:43/17
**testify [4]**  1:4/20 1:4/21
1:30/16 1:36/18
**testimony [4]**  1:4/11 1:6/17
1:51/12 1:51/18
**than [4]**  1:5/7 1:25/25 1:47/7
1:50/12
**thank [13]**  1:3/12 1:3/15 1:4/6
1:17/5 1:17/6 1:17/12 1:38/8
1:52/6 1:52/9 1:52/10 1:52/20
1:52/22 1:52/24
**that [320]**
**that's [42]**  1:5/9 1:6/3 1:7/22
1:8/1 1:10/5 1:10/5 1:10/14
1:10/24 1:11/5 1:13/11
1:20/23 1:21/11 1:21/13
1:23/5 1:24/3 1:27/1 1:27/17
1:30/8 1:31/20 1:31/21 1:32/8
1:32/15 1:32/23 1:33/5 1:35/9
1:36/1 1:36/21 1:37/1 1:37/7
1:37/7 1:40/16 1:40/19 1:43/8
1:45/2 1:45/15 1:45/20 1:46/1
1:46/1 1:47/8 1:48/6 1:49/2
1:52/5
**their [21]**  1:11/14 1:11/15
1:11/25 1:12/12 1:12/18
1:14/10 1:14/23 1:18/8
1:18/11 1:19/8 1:19/10 1:35/8
1:35/20 1:37/17 1:37/25
1:42/20 1:42/23 1:45/21
1:49/24 1:50/4 1:51/22
**them [23]**  1:6/16 1:6/17
1:11/21 1:11/23 1:11/23
1:12/23 1:14/25 1:15/15
1:20/2 1:22/9 1:25/12 1:27/21
1:29/11 1:30/5 1:31/12
1:44/12 1:45/18 1:46/16
1:47/6 1:47/11 1:48/15
1:51/21 1:51/22
**then [27]**  1:4/4 1:7/9 1:10/7
1:10/19 1:11/25 1:12/23
1:14/3 1:15/20 1:17/19
1:20/21 1:22/18 1:24/15
1:24/19 1:26/10 1:27/3
1:28/11 1:30/8 1:35/9 1:37/20
1:42/5 1:44/8 1:45/8 1:45/11
1:46/20 1:50/15 1:51/5
1:51/19
**theoretically [1]**  1:50/6
**theory [1]**  1:50/8
**there [61]**
**there's [1]**  1:48/11
**thereafter [1]**  1:54/7
**therefore [2]**  1:25/12 1:48/9
**these [39]**  1:4/14 1:4/24 1:5/3
1:5/16 1:5/18 1:6/16 1:7/16
1:7/20 1:7/22 1:8/15 1:10/12
1:11/22 1:11/23 1:12/9
1:12/13 1:18/11 1:19/8
1:23/25 1:24/8 1:25/4 1:25/9

1:25/11 1:25/16 1:25/25
1:26/24 1:34/1 1:35/9
1:35/6 1:37/11 1:37/11
1:39/14 1:39/16 1:39/17
1:40/15 1:42/3 1:48/15
1:48/15 1:51/17
**they [144]**
**they're [2]**  1:6/19 1:45/12
**thing [13]**  1:6/13 1:8/16
1:11/7 1:13/19 1:24/14
1:26/23 1:37/4 1:43/4 1:43/14
1:45/15 1:47/21 1:47/22
1:47/24
**things [15]**  1:15/25 1:16/1
1:16/4 1:24/15 1:24/16 1:25/1
1:25/4 1:25/5 1:25/9 1:31/2
1:33/4 1:34/8 1:35/19 1:36/20
1:42/11
**think [22]**  1:4/10 1:6/25
1:15/24 1:16/1 1:17/22
1:17/24 1:18/14 1:23/5 1:24/1
1:24/9 1:31/8 1:31/18 1:34/16
1:36/4 1:39/19 1:40/15
1:40/20 1:41/8 1:41/11
1:41/12 1:41/23 1:45/24
**thinking [4]**  1:18/15 1:35/4
1:35/7 1:41/15
**thinks [1]**  1:16/21
**third [10]**  1:8/3 1:11/16
1:13/14 1:15/3 1:15/13
1:24/13 1:31/8 1:42/25 1:47/4
1:48/9
**third-party [2]**  1:15/3 1:15/13
**this [92]**
**those [13]**  1:5/12 1:7/10
1:10/13 1:11/20 1:13/13
1:16/1 1:17/20 1:18/22
1:21/14 1:23/23 1:26/3
1:28/13 1:30/18
**though [4]**  1:15/24 1:16/8
1:21/19 1:27/25
**thought [5]**  1:21/8 1:21/8
1:21/9 1:43/16 1:48/16
**thoughts [1]**  1:52/17
**threat [1]**  1:13/25
**three [5]**  1:4/10 1:9/16
1:24/12 1:24/15 1:28/20
**three-year [1]**  1:28/20
**threw [1]**  1:16/8
**through [9]**  1:10/11 1:16/10
1:18/16 1:18/21 1:26/14
1:28/8 1:32/10 1:50/15
1:50/15
**throughout [1]**  1:4/16
**throw [1]**  1:12/18
**Thursday [2]**  1:1/11 1:3/1
**tie [2]**  1:5/4 1:39/7
**Tim [1]**  1:39/25
**time [29]**  1:4/7 1:10/22 1:11/1
1:14/5 1:14/13 1:16/1 1:17/13
1:18/15 1:20/3 1:20/4 1:22/4
1:22/11 1:22/16 1:23/6
1:23/14 1:26/6 1:26/21
1:27/13 1:30/23 1:30/23
1:35/13 1:39/17 1:43/12
1:45/22 1:48/13 1:48/13
1:52/3 1:52/19 1:54/10
**today [2]**  1:17/18 1:29/19
**together [7]**  1:11/5 1:11/10
1:11/12 1:12/5 1:12/7 1:13/22
1:39/7
**told [2]**  1:14/12 1:33/23
**too [6]**  1:31/20 1:35/22

1:36/10 1:36/10 1:36/11
1:36/12
**took [1]**  1:10/23
**top [1]**  1:7/9
**total [2]**  1:4/4 1:47/7
**totality [1]**  1:8/9
**totally [1]**  1:32/24
**town [1]**  1:46/6
**track [1]**  1:15/17
**transcribed [1]**  1:54/7
**transcript [2]**  1:1/12 1:54/11
**Transcription [1]**  1:1/25
**transfer [1]**  1:25/12
**translate [1]**  1:34/4
**translation [1]**  1:51/4
**trial [7]**  1:14/13 1:24/6
1:33/15 1:40/8 1:49/7 1:51/20
1:51/24
**true [4]**  1:15/6 1:32/8 1:37/7
1:54/9
**try [3]**  1:4/5 1:4/7 1:6/5
**trying [3]**  1:9/22 1:19/24
1:36/13
**turn [1]**  1:5/13
**turned [2]**  1:14/3 1:39/22
**turns [1]**  1:15/12
**tweaks [1]**  1:7/22
**twice [1]**  1:39/11
**two [14]**  1:3/23 1:11/2 1:16/4
1:17/20 1:35/21 1:40/13
1:41/2 1:41/20 1:41/20
1:44/22 1:45/13 1:46/9
1:46/10 1:49/9
**types [1]**  1:7/14
**typewriting [1]**  1:54/8

# U

**U.S [2]**  1:1/23 1:19/21
**ultimately [2]**  1:12/10 1:27/13
**unconditional [2]**  1:43/24
1:44/6
**under [16]**  1:18/5 1:19/5
1:25/9 1:25/21 1:28/17 1:34/4
1:37/16 1:37/19 1:38/2
1:40/18 1:43/2 1:43/17 1:46/5
1:46/17 1:46/17 1:54/8
**underpin [1]**  1:52/1
**understand [3]**  1:4/20 1:9/14
1:19/24
**undisputed [5]**  1:8/4 1:24/14
1:24/21 1:31/9 1:39/21
**Uniloc [3]**  1:5/2 1:16/24
1:46/17
**United [2]**  1:1/2 1:54/5
**unless [2]**  1:6/23 1:17/2
**until [4]**  1:6/23 1:11/23
1:17/2 1:46/15
**up [18]**  1:7/19 1:12/18 1:16/7
1:16/23 1:17/3 1:17/14
1:22/20 1:26/23 1:28/20
1:30/17 1:33/24 1:34/3
1:35/25 1:39/20 1:39/22
1:49/23 1:50/4 1:52/19
**upon [1]**  1:54/11
**us [8]**  1:3/23 1:6/3 1:11/10
1:14/20 1:14/21 1:36/15
1:45/14 1:52/13
**usage [1]**  1:51/15
**use [17]**  1:13/2 1:13/3 1:13/8
1:13/16 1:14/25 1:20/25
1:21/13 1:21/21 1:32/9
1:42/20 1:42/23 1:44/11
1:44/22 1:45/4 1:45/7 1:45/8

**U**

use... [1] 1:45/20
used [7] 1:12/12 1:13/9
1:13/13 1:39/2 1:40/25
1:49/16 1:50/2
useful [3] 1:12/6 1:12/7
1:52/18
uses [6] 1:13/5 1:45/1 1:45/5
1:45/7 1:48/7 1:48/8
using [7] 1:4/7 1:7/19 1:8/25
1:9/13 1:11/15 1:38/24
1:47/18

**V**

validation [1] 1:38/5
validity [1] 1:54/10
valuations [1] 1:24/23
value [27] 1:4/14 1:4/23
1:4/24 1:5/4 1:5/7 1:7/4
1:7/5 1:7/7 1:7/8 1:7/20
1:16/25 1:24/17 1:26/7 1:28/6
1:28/11 1:28/13 1:32/18
1:32/19 1:32/19 1:33/9
1:33/17 1:34/4 1:34/16
1:35/21 1:37/20 1:46/12
1:52/1
Van [17] 1:2/5 1:2/6 1:3/20
1:3/20 1:4/3 1:17/22 1:18/1
1:21/3 1:24/12 1:24/22 1:25/6
1:25/10 1:26/10 1:28/10
1:31/9 1:35/15 1:38/9
variety [1] 1:7/25
vendor [1] 1:15/13
venture [2] 1:21/4 1:23/10
verbatim [1] 1:22/17
versus [1] 1:3/4
very [6] 1:4/7 1:7/14 1:10/14
1:17/10 1:52/4 1:52/18
view [4] 1:14/23 1:17/13
1:47/21 1:51/25
viewed [1] 1:25/10
violation [4] 1:10/12 1:49/17
1:49/24 1:50/3
virtual [19] 1:7/23 1:11/8
1:11/18 1:13/12 1:42/23
1:43/24 1:44/11 1:44/13
1:44/23 1:45/1 1:45/16
1:45/21 1:47/20 1:48/2
1:49/24 1:50/4 1:50/5 1:50/6
1:51/5
void [1] 1:54/11

**W**

wait [12] 1:21/3 1:40/14
1:40/14 1:40/14 1:43/8 1:43/8
1:44/5 1:49/21 1:49/21
1:49/21 1:51/8 1:51/8
waiving [2] 1:14/1 1:14/1
want [33] 1:7/7 1:8/12 1:11/10
1:13/22 1:13/23 1:13/24
1:16/1 1:16/4 1:17/25 1:18/22
1:19/6 1:19/9 1:19/14 1:19/20
1:21/18 1:21/25 1:25/1 1:30/7
1:30/23 1:31/1 1:31/2 1:31/3
1:33/16 1:34/2 1:39/10 1:41/9
1:43/20 1:43/22 1:44/10
1:45/23 1:46/8 1:46/19
1:47/13
wanted [2] 1:21/5 1:22/15
wants [1] 1:24/23
warmly [1] 1:29/7
was [69]

wasn't [3] 1:11/20 1:28/2
1:42/24
waste [2] 1:33/2 1:33/3
way [20] 1:11/20 1:13/22
1:19/11 1:21/13 1:26/15
1:28/25 1:31/6 1:32/9 1:32/16
1:32/17 1:32/18 1:32/20
1:34/5 1:35/7 1:35/22 1:36/5
1:36/8 1:37/16 1:42/9 1:50/9
we [77]
we'll [4] 1:11/10 1:11/12
1:34/2 1:52/2
we're [3] 1:12/13 1:31/20
1:42/12
we've [4] 1:12/9 1:23/22
1:33/21 1:40/15
weeks [1] 1:45/10
welcome [9] 1:3/9 1:3/18
1:3/25 1:13/21 1:13/23
1:45/23 1:45/23 1:48/22
1:48/22
welcomed [2] 1:12/19 1:14/19
well [36] 1:4/25 1:6/7 1:6/12
1:6/12 1:6/13 1:9/14 1:9/20
1:10/3 1:10/4 1:10/19 1:14/10
1:15/18 1:19/13 1:20/23
1:23/9 1:23/14 1:24/14 1:27/3
1:27/19 1:29/11 1:31/12
1:32/13 1:32/20 1:33/13
1:33/18 1:33/21 1:34/2 1:34/8
1:34/10 1:36/18 1:36/24
1:38/11 1:40/19 1:42/17
1:45/8 1:45/12
went [9] 1:8/8 1:8/18 1:10/10
1:11/9 1:12/11 1:18/16 1:35/3
1:50/8 1:51/13
were [28] 1:11/5 1:11/17
1:12/1 1:12/2 1:12/3 1:12/15
1:14/6 1:14/7 1:18/12 1:18/15
1:20/18 1:21/9 1:21/10 1:27/9
1:29/25 1:35/5 1:36/10 1:37/6
1:37/6 1:39/12 1:42/4 1:42/20
1:46/20 1:47/10 1:47/11
1:48/16 1:54/6 1:54/7
weren't [2] 1:12/2 1:42/18
WHA [1] 1:1/7
what [69]
What's [4] 1:30/12 1:30/15
1:40/4 1:44/10
whatever [3] 1:19/9 1:19/14
1:33/16
whatsoever [3] 1:6/24 1:7/2
1:7/3
when [31] 1:4/18 1:5/13 1:8/9
1:8/19 1:9/5 1:12/17 1:13/18
1:13/20 1:13/20 1:14/18
1:16/7 1:18/14 1:18/22
1:19/22 1:23/1 1:29/6 1:31/11
1:38/9 1:38/22 1:39/2 1:39/3
1:39/5 1:39/17 1:41/14
1:41/25 1:43/15 1:45/18
1:45/18 1:46/23 1:48/14
1:48/17
where [9] 1:6/1 1:9/3 1:20/7
1:20/8 1:29/13 1:39/12
1:39/12 1:43/13 1:46/24
wherein [1] 1:8/23
whether [8] 1:9/6 1:18/6
1:21/10 1:21/12 1:32/7 1:36/9
1:36/25 1:36/25
which [21] 1:6/25 1:7/8 1:7/23
1:8/15 1:13/5 1:17/16 1:17/22
1:27/22 1:32/10 1:33/15

1:34/4 1:36/17 1:36/19
1:39/4 1:39/4 1:40/8
1:44/17 1:45/22 1:47/25
1:50/3
who [26] 1:14/6 1:14/6 1:14/7
1:14/8 1:26/11 1:26/23
1:28/24 1:28/24 1:28/24
1:28/25 1:29/5 1:29/9 1:29/9
1:29/10 1:29/12 1:29/16
1:29/19 1:29/25 1:30/4
1:35/24 1:35/24 1:43/10
1:43/11 1:47/14 1:47/15
1:47/15
whole [3] 1:12/22 1:45/15
1:47/9
wholly [1] 1:19/3
wholly-owned [1] 1:19/3
why [17] 1:9/20 1:10/7 1:10/19
1:10/21 1:11/25 1:22/25
1:23/9 1:25/17 1:26/1 1:26/14
1:28/2 1:42/4 1:45/11 1:47/21
1:47/22 1:51/21 1:51/25
will [29] 1:6/22 1:10/9
1:14/21 1:17/9 1:17/16
1:17/22 1:18/19 1:24/9
1:27/13 1:27/14 1:28/24
1:28/25 1:30/16 1:31/11
1:36/7 1:38/18 1:40/21
1:48/10 1:51/12 1:51/13
1:51/13 1:51/17 1:51/17
1:51/18 1:51/19 1:51/20
1:51/21 1:51/21 1:51/24
willful [5] 1:10/8 1:10/19
1:41/9 1:41/13 1:48/11
willfully [2] 1:19/11 1:41/15
willfulness [5] 1:17/25 1:18/2
1:18/5 1:18/5 1:21/7
William [1] 1:1/4
willing [6] 1:9/25 1:10/5
1:21/9 1:21/10 1:21/12 1:30/1
window [1] 1:35/16
wish [2] 1:43/4 1:43/5
without [3] 1:5/4 1:16/11
1:30/24
witnesses [6] 1:4/20 1:36/17
1:36/18 1:36/18 1:37/4
1:51/20
won [1] 1:41/4
won't [2] 1:10/17 1:17/4
word [11] 1:12/24 1:20/25
1:21/14 1:21/21 1:22/21
1:22/22 1:22/23 1:22/25
1:23/1 1:23/8 1:23/9
wording [1] 1:22/1
words [6] 1:6/9 1:10/6 1:18/9
1:21/10 1:24/22 1:37/25
work [6] 1:13/22 1:13/23
1:14/18 1:38/16 1:45/24
1:52/6
working [1] 1:41/25
works [2] 1:13/12 1:29/19
world [1] 1:51/6
worry [1] 1:31/21
would [36] 1:8/23 1:9/11
1:12/4 1:12/5 1:12/23 1:16/10
1:17/14 1:17/23 1:21/18
1:22/5 1:22/5 1:22/7 1:22/18
1:23/4 1:25/14 1:27/14 1:28/6
1:28/13 1:28/19 1:30/1 1:30/4
1:32/20 1:36/9 1:36/10
1:38/13 1:39/4 1:41/2 1:43/5
1:45/9 1:48/21 1:49/10
1:49/14 1:49/15 1:49/17

## W

**would... [2]**  1:49/18 1:49/24
**wouldn't [3]**  1:25/17 1:26/2
 1:38/16
**write [5]**  1:13/8 1:44/2
 1:45/11 1:51/2 1:51/6
**wrong [4]**  1:32/24 1:38/21
 1:38/21 1:38/22
**wrote [1]**  1:20/17

## Y

**Yeah [4]**  1:9/4 1:21/5 1:22/15
 1:32/6
**year [3]**  1:28/20 1:28/21
 1:47/5
**years [3]**  1:5/2 1:9/16 1:28/15
**Yep [4]**  1:19/19 1:21/20 1:24/7
 1:32/3
**yes [12]**  1:19/22 1:20/16
 1:24/4 1:27/6 1:32/8 1:38/17
 1:39/8 1:40/4 1:46/5 1:50/11
 1:50/20 1:52/12
**yesterday [8]**  1:13/20 1:42/24
 1:43/1 1:43/16 1:43/18 1:46/4
 1:46/6 1:47/17
**yet [3]**  1:8/22 1:30/18 1:31/3
**York [1]**  1:2/9
**you [202]**
**you're [3]**  1:12/18 1:13/1
 1:41/23
**you've [1]**  1:10/15
**your [99]**
**Your Honor [5]**  1:22/10 1:30/17
 1:32/7 1:36/13 1:38/14

## Z

**zero [3]**  1:5/11 1:31/19 1:32/1

# EXHIBIT J

**From:** Christa Anderson [mailto:CAnderson@KVN.com]
**Sent:** Thursday, July 21, 2011 8:56 PM
**To:** Oracle-Google; Oracle MoFo Service List
**Cc:** DALVIK-KVN; dalvik-KS
**Subject:** Oracle v. Google

Dear Counsel:

During today's hearing, Oracle submitted to the Court as part of a lengthy slide deck, and read in open Court, documents that Google designated as Protected Material under the governing protective order (the "Order").  That Order provides that "[p]arties shall give the other parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed [Exhibit A] are present at those proceedings."  Order, 12/17/10, Section 5.2(b).  *See also* Order, Sections 7.2-7.4.  Notwithstanding the terms of this Order, Oracle gave Google no advance notice whatsoever prior to its public disclosure of these documents during the hearing.  We expect that Oracle conform its conduct to the terms of the Order and will add this to the agenda for discussion on Monday.  In the meanwhile, Oracle should make no further public disclosure of this confidential information, and Google expressly objects to any inclusion of those materials in any public filings.


Sincerely,
Christa Anderson

# EXHIBIT K

**From:** ECF-CAND@cand.uscourts.gov [mailto:ECF-CAND@cand.uscourts.gov]
**Sent:** Friday, July 22, 2011 2:12 PM
**To:** efiling@cand.uscourts.gov
**Subject:** Activity in Case 3:10-cv-03561-WHA Oracle America, Inc. v. Google Inc. Order on Motion for Miscellaneous Relief

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
***If there is no second hyperlink, there is no electronic document available .***
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from entered on 7/22/2011 2:11 PM and filed on 7/22/2011

**Case Name:**          Oracle America, Inc. v. Google Inc.
**Case Number:**        3:10-cv-03561-WHA
**Filer:**
**Document Number:** 230

**Docket Text:**
**ORDER GRANTING IN PART MOTION TO STRIKE DAMAGE REPORT OF PLAINTIFF EXPERT IAIN COCKBURN by Judge Alsup granting in part and denying in part [171] Motion to Strike Expert Report (whalc1, COURT STAFF) (Filed on 7/22/2011)**

**3:10-cv-03561-WHA Notice has been electronically mailed to:**

Alanna Rutherford    arutherford@bsfllp.com

Beko Osiris Ra Reblitz-Richardson    brichardson@bsfllp.com

Brian Christopher Banner    bbanner@kslaw.com

Bruce W. Baber    bbaber@kslaw.com, rennyhwang@google.com

Cheryl A. Sabnis    csabnis@kslaw.com, ksparker@kslaw.com, rmiller@kslaw.com

Christa M. Anderson    canderson@kvn.com, efiling@kvn.com, gpadilla@kvn.com,
rdarling@kvn.com, rmagat@kvn.com, scole@kvn.com

Christopher C. Carnaval    ccarnaval@kslaw.com, MOrman@KSLAW.com

Dana K Powers    powersdk@gtlaw.com

Daniel Edward Purcell    dpurcell@kvn.com, efiling@kvn.com, jwinars@kvn.com

Daniel Pierre Muino    dmuino@mofo.com, andrew.temkin@oracle.com, TLee@mofo.com

David Boies    dboies@bsfllp.com

Deborah Kay Miller    deborah.miller@oracle.com

Donald Frederick Zimmer , Jr    fzimmer@kslaw.com, balee@kslaw.com

Dorian Estelle Daley    dorian.daley@oracle.com

Eugene Morris Paige    EMP@kvn.com, dfox@kvn.com, efiling@kvn.com,
kbringola@kvn.com

Geoffrey M. Ezgar    gezgar@kslaw.com

Heather Janine Meeker    meekerh@gtlaw.com

Ian Ballon    ballon@gtlaw.com, kolbers@gtlaw.com

Joseph Richard Wetzel    wetzelj@gtlaw.com, mckinneyc@gtlaw.com,
SFOLitDock@gtlaw.com

Marc David Peters    mdpeters@mofo.com, lsova@mofo.com, msmoot@mofo.com

Mark H. Francis    mfrancis@kslaw.com

Matthew M. Sarboraria    matthew.sarboraria@oracle.com

Matthias Andreas Kamber     mxk@kvn.com, efiling@kvn.com, plemos@kvn.com

Meredith Richardson Dearborn     mdearborn@bsfllp.com

Michael A. Jacobs     mjacobs@mofo.com, cknisely@mofo.com

Michael Soonuk Kwun     mkwun@kvn.com, rcirelli@kvn.com

Renny F Hwang     rennyhwang@google.com

Robert Addy Van Nest     rvannest@kvn.com, efiling@kvn.com, scole@kvn.com

Robert F. Perry     rperry@kslaw.com, csplaine@kslaw.com

Roman A Swoopes     rswoopes@mofo.com, ahsia@mofo.com

Ruchika Agrawal     RAgrawal@mofo.com, fsagapolu@mofo.com

Scott T. Weingaertner     sweingaertner@kslaw.com, jschmidt@kslaw.com

Steven Christopher Holtzman     sholtzman@bsfllp.com, ajensen@bsfllp.com,
cduong@bsfllp.com, cseki@bsfllp.com, irivera@bsfllp.com, jchavez@bsfllp.com,
jlipton@bsfllp.com, sbuack@bsfllp.com, sphan@bsfllp.com

Steven T Snyder     ssnyder@kslaw.com, hperez@kslaw.com

Valerie Wing Ho     hov@gtlaw.com, lalitdock@gtlaw.com, secondom@gtlaw.com,
solorzanom@gtlaw.com

William Fred Norton , Jr     fnorton@bsfllp.com, irivera@bsfllp.com

**3:10-cv-03561-WHA Please see General Order 45 Section IX C.2 and D; Notice has NOT been electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**10-3561 Oracle Order Partially Granting Daubert Motion.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=7/22/2011] [FileNumber=7681089-0]
[039bb217ae090b9dc71486147cbf0744b6509633ec3b0d614b53889e4207c709d3135
ac8370cd0d8380742bf33f61ccbc440689c977d1ad2ba40097ef5091e14]]

# EXHIBIT L

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT M

**From:** Baber, Bruce [mailto:BBaber@KSLAW.com]
**Sent:** Friday, July 22, 2011 7:05 PM
**To:** Oracle-Google; Oracle MoFo Service List
**Cc:** DALVIK-KVN; dalvik-KS; Christa Anderson; 'rennyhwang@google.com'
**Subject:** RE: Oracle v. Google

Counsel --

Further to Christa Anderson's message of last night, this will confirm and formally advise all Oracle counsel that at this afternoon's deposition of Dan Bornstein, we provided notice to Oracle on the record under paragraph 13 of the Protective Order that the draft August 2010 e-mail message prepared by Tim Lindholm and addressed to Andy Rubin that Steve Holtzman used yesterday in court was inadvertently produced and is in fact subject to the attorney-client privilege and/or work product doctrine.  Our investigation since yesterday has confirmed that the message was prepared as a result of direction from counsel in anticipation of litigation; the final versions of the message have been identified on Google's privilege log.

We also understand that numerous different copies or iterations of this same message have been produced under different production numbers.  This clawback notice under paragraph 13 applies to all versions of the document.  We will supplement this notice with all of the production numbers known to us as soon as we have completed our investigation.

As you know, this has been occasioned by Oracle's failure to comply with paragraph 5.2 of the Protective Order and its failure to provide Google with any advance notice of Oracle's intent to present Google materials subject to the Protective Order at yesterday's hearing.

I also take this opportunity to remind you that paragraph 13 of the Protective Order requires Oracle upon receipt of this notice to "promptly return or destroy the specified information and any copies it has" and that Oracle "may not sequester, use or disclose the information until the claim [of privilege and work product] is resolved."  Under the unfortunate circumstances that have resulted from Oracle's violation of the Protective Order, we will expect Oracle to comply with this provision of the Protective Order with respect to the documents themselves but not the Court's order of today or the transcript of yesterday's hearing.

Please let me know immediately if you have any questions.

Bruce W. Baber
King & Spalding LLP
212-827-4079 (New York)
404-572-4826 (Atlanta)

**From:** Christa Anderson [mailto:CAnderson@KVN.com]
**Sent:** Thursday, July 21, 2011 11:56 PM
**To:** Oracle-Google@BSFLLP.com; Oracle MoFo Service List
**Cc:** DALVIK-KVN; dalvik-KS
**Subject:** Oracle v. Google

Dear Counsel:

During today's hearing, Oracle submitted to the Court as part of a lengthy slide deck, and read in open Court, documents that Google designated as Protected Material under the governing protective order (the "Order").  That Order provides that "[p]arties shall give the other parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed [Exhibit A] are present at those proceedings."  Order, 12/17/10, Section 5.2(b).  *See also* Order, Sections 7.2-7.4.  Notwithstanding the terms of this Order, Oracle gave Google no advance notice whatsoever prior to its public disclosure of these documents during the hearing.  We expect that Oracle conform its conduct to the terms of the Order and will add this to the agenda for discussion on Monday.  In the meanwhile, Oracle should make no further public disclosure of this confidential information, and Google expressly objects to any inclusion of those materials in any public filings.

Sincerely,
Christa Anderson

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

# EXHIBIT N

**From:** Baber, Bruce [mailto:BBaber@KSLAW.com]
**Sent:** Wednesday, July 27, 2011 11:47 AM
**To:** Oracle-Google; 'Oracle MoFo Service List'
**Cc:** 'DALVIK-KVN'; dalvik-KS; 'rennyhwang@google.com'
**Subject:** RE: Oracle v. Google

Counsel --

This is further to my message (copy below) of this past Friday evening regarding the draft e-mail message prepared by Tim Lindholm that was used by Oracle at last Thursday's hearing.

We have identified the following versions of this same document that have been produced and are all subject to my message of Friday:

GOOGLE -12-00039558
GOOGLE -12-00039559
GOOGLE -12-00039560
GOOGLE -12-00039561
GOOGLE -12-00039562
GOOGLE -12-00039563
GOOGLE -12-00039564
GOOGLE -12-00039565
GOOGLE -12-00039656

In addition, I can confirm that the final version of this draft message was sent to Andy Rubin and Ben Lee (an in-house Google attorney) on August 6, 2010, and two copies of that final message are identified on Google's privilege logs under identification numbers 2551 and 5513.  For reference, those privilege log entries identify the final document as "Email seeking advice of counsel re licensing term alternatives for code used in Android" (document 2551) and "Email seeking advice of counsel re technical alternatives for Java" (document 5513).  We also note that an additional draft version of the document also appears on Google's privilege log as entry 5512, described as "Email reflecting advice of counsel in preparation of litigation re alternatives for Java for Android and Chrome."

Please let me know if you have any questions regarding the above.

Bruce

Bruce W. Baber
King & Spalding LLP
212-827-4079 (New York)
404-572-4826 (Atlanta)

**From:** Baber, Bruce
**Sent:** Friday, July 22, 2011 10:05 PM
**To:** Oracle-Google@BSFLLP.com; Oracle MoFo Service List
**Cc:** DALVIK-KVN; dalvik-KS; Christa Anderson; 'rennyhwang@google.com'
**Subject:** RE: Oracle v. Google

Counsel --

Further to Christa Anderson's message of last night, this will confirm and formally advise all Oracle counsel that at this afternoon's deposition of Dan Bornstein, we provided notice to Oracle on the record under paragraph 13 of the Protective Order that the draft August 2010 e-mail message prepared by Tim Lindholm and addressed to Andy Rubin that Steve Holtzman used yesterday in court was inadvertently produced and is in fact subject to the attorney-client privilege and/or work product doctrine.  Our investigation since yesterday has confirmed that the message was prepared as a result of direction from counsel in anticipation of litigation; the final versions of the message have been identified on Google's privilege log.

We also understand that numerous different copies or iterations of this same message have been produced under different production numbers.  This clawback notice under paragraph 13 applies to all versions of the document.  We will supplement this notice with all of the production numbers known to us as soon as we have completed our investigation.

As you know, this has been occasioned by Oracle's failure to comply with paragraph 5.2 of the Protective Order and its failure to provide Google with any advance notice of Oracle's intent to present Google materials subject to the Protective Order at yesterday's hearing.

I also take this opportunity to remind you that paragraph 13 of the Protective Order requires Oracle upon receipt of this notice to "promptly return or destroy the specified information and any copies it has" and that Oracle "may not sequester, use or disclose the information until the claim [of privilege and work product] is resolved."  Under the unfortunate circumstances that have resulted from Oracle's violation of the Protective Order, we will expect Oracle to comply with this provision of the Protective Order with respect to the documents themselves but not the Court's order of today or the transcript of yesterday's hearing.

Please let me know immediately if you have any questions.

Bruce W. Baber
King & Spalding LLP
212-827-4079 (New York)
404-572-4826 (Atlanta)

**From:** Christa Anderson [mailto:CAnderson@KVN.com]
**Sent:** Thursday, July 21, 2011 11:56 PM
**To:** Oracle-Google@BSFLLP.com; Oracle MoFo Service List
**Cc:** DALVIK-KVN; dalvik-KS
**Subject:** Oracle v. Google

Dear Counsel:

During today's hearing, Oracle submitted to the Court as part of a lengthy slide deck, and read in open Court, documents that Google designated as Protected Material under the governing protective order (the "Order").  That Order provides that "[p]arties shall give the other parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed [Exhibit A] are present at those proceedings."  Order, 12/17/10, Section 5.2(b).  *See also* Order, Sections 7.2-7.4.  Notwithstanding the terms of this Order, Oracle gave Google no advance notice whatsoever prior to its public disclosure of these documents during the hearing.  We expect that Oracle conform its conduct to the terms of the Order and will add this to the agenda for discussion on Monday.  In the meanwhile, Oracle should make no further public disclosure of this confidential information, and Google expressly objects to any inclusion of those materials in any public filings.

Sincerely,
Christa Anderson

---

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

# EXHIBIT O

Sign in 



Lindholm technical alternatives exist to Java for Android they all suck we need to negoti

SafeSearch off ▼

About 308 results (0.09 seconds)

Advanced search

**Q** Everything

**◎** Images

**▦** Videos

**▤** News

**◢** Shopping

More

---

Any time
Past hour
Past 24 hours
Past week
**Past month**
Past year
Custom range...

**Sorted by relevance**
Sorted by date

**All results**
Sites with images
Related searches
Timeline
Dictionary
Reading level
Nearby
Translated foreign pages

Reset tools

---

### Past month ✕

#### [Google, Oracle still battling over **Android** e-mail | IT News](#) 🔍
www.itnews.com/.../google-oracle-still-battling-over-**android**-e-mail - Cached
Aug 8, 2011 - Google insists the e-mail from engineer Tim **Lindholm** is protected under ... is to investigate what **technical alternatives exist to Java for Android** and Chrome," Google ... "We've been over a bunch of these, and think **they all suck**. We conclude that **we need to negotiate a license for Java** under the terms **we need**." ...

#### [Google Engineer: Java Alternatives "All Suck", Android "Needs to ...](#) 🔍
obamapacman.com › iPhone - Cached
Jul 22, 2011 - Oracle presented an email sent from Google engineer Tim **Lindholm** to Andy Rubin, ... [Brin] is to investigate what **technical alternatives exist to Java for Android** and Chrome. We've been over a bunch of these and think **they all suck**. We conclude that **we need to negotiate a license for Java** under the terms **we need**. ...

#### [FOSS Patents: Oracle and Google keep wrangling over potentially ...](#) 🔍
fosspatents.blogspot.com/.../oracle-and-google-keep-wrangling-ove... - Cached
Aug 6, 2011 - The two potential killer emails: the **Lindholm** draft email and the Rubin email ... [Brin]) is to investigate what **technical alternatives exist to Java for Android** and Chrome. We've been over a bunch of these, and think **they all suck**. We conclude that **we need to negotiate a license for Java** under the terms **we need**. ...

#### [The E-Mail That Google Really Doesn't - paidContent - Mobile](#) 🔍
m.paidcontent.org/.../419-the-e-mail-that-google-really-doesn... - Cached
Aug 3, 2011 - The e-mail, from Google engineer Tim **Lindholm** to the head of Google's **Android** division, ... is to investigate what **technical alternatives exist to Java for Android** and Chrome. We've been over a bunch of these and think **they all suck**. We conclude that **we need to negotiate a license for Java** under the terms **we need**. ...

#### [Internal Google emails reveal brazen attitude regarding **Java** ...](#) 🔍
www.edibleapple.com/internal-google-emails-reveal-brazen-attitude... - Cached
2 days ago - If you haven't been paying attention to every **Android**-related lawsuit, who can blame you? ... to investigate what **technical alternatives exist to Java for Android** and Chrome. We've been over a bunch of these, and think **they all suck**. We conclude that **we need to**

# EXHIBIT P

Sign in ⚙



Android Java alternatives suck

🔍

SafeSearch off ▼

About 36,600 results (0.08 seconds)

Advanced search

🔍 **Everything**

📷 Images

🎞 Videos

📰 News

🛒 Shopping

More

Any time
Past hour
Past 24 hours
Past week
**Past month**
Past year
Custom range...

**Sorted by relevance**
Sorted by date

**All results**
Sites with images
Related searches
Timeline
Dictionary
Reading level
Nearby
Translated foreign pages

Reset tools

**Past month**                                                          ☒

**Google Said Alternatives to Java for Android "… all suck"**
www.googlemonopoly.eu/.../google-said-alternatives-to-java-for-android-a...
Aug 8, 2011 -

**Google Engineer: Java Alternatives "All Suck", Android "Needs to ...** 🔍
obamapacman.com › iPhone - Cached
Jul 22, 2011 - Oracle Sun vs. Google **Android Java** patent infringement suit is about to get
serious, with possibility of willful infringement and permanent injunction. ...

**Android boss on the alternatives to licensing Java: "They all suck ...** 🔍
blogs.ft.com › Companies
Aug 2, 2011 - The FTtechhub from the Financial Times writes about the web, Silicon Valley,
innovation and social media.

**Android boss on the alternatives to licensing Java: "They all suck"** 🔍
www.androplex.com/.../android-boss-on-the-alternatives-to-licensin... - Cached
Aug 3, 2011 - **Android** trainer on a **alternatives** to chartering **Java**: "They all **suck**". Posted by
Spider. Every good corporate executive knows that weakly worded inner ...

**Android boss on the alternatives to licensing Java - Peter O ...** 🔍
pbokelly.blogspot.com/2011/.../android-boss-on-alternatives-to.htm... - Cached
Aug 3, 2011 - **Android** boss on the **alternatives** to licensing **Java**: "They all **suck**" | FT Tech Hub |
FTtechhub - Industry analysis – FT.com. This should be straightforward ...

**Android boss on the alternatives to licensing Java: "They all suck ...** 🔍
android.appmobilize.com/.../android-boss-on-the-alternatives-to-lice... - Cached
Aug 3, 2011 - **Android** boss on the **alternatives** to licensing **Java**: "They all **suck**" - **Android**
boss on the **alternatives** to licensing **Java**: "They all **suck**" Financial Times ...

**Google Denied Bid To Have Internal Android Memo Sealed ...** 🔍
www.foxbusiness.com/.../google-denied-bid-to-have-internal-androi... - Cached
Aug 1, 2011 - Google memo proposed licensing Oracle's **Java**. -- **Alternatives** to **Java** for
**Android** found to "**suck**." -- Google lawyer says memo only response to legal threat.

# EXHIBIT Q

**From:** Christa Anderson [mailto:CAnderson@KVN.com]
**Sent:** Thursday, August 11, 2011 11:25 AM
**To:** 'Muino, Daniel P.'
**Cc:** Oracle MoFo Service List; Oracle-Google; DALVIK-KVN; dalvik-KS
**Subject:** Lindholm deposition

Dear Counsel:
In light of Judge Ryu's recent ruling requesting additional information concerning the privilege issues surrounding Mr. Lindholm's documents, and Oracle's stated intent to question Mr. Lindholm on those documents if it were to prevail in its motion, we will need to reschedule Mr. Lindholm's deposition until a date after Judge Ryu decides the privilege issues.  We will propose a new date for Mr. Lindholm's deposition promptly after Judge Ryu's ruling.
Regards,
Christa

**Christa Anderson**

415 676 2276 direct   |   vCard   |   canderson@kvn.com
633 Battery Street, San Francisco, CA 94111-1809   |   415 391 5400 main   |   kvn.com

# EXHIBIT R

-----Original Message-----
From: Baber, Bruce [mailto:BBaber@KSLAW.com]
Sent: Friday, August 12, 2011 6:49 AM
To: Fred Norton
Cc: 'dalvik-kvn@kvn.com'; dalvik-KS; 'dmuino@mofo.com'; 'CAnderson@KVN.com'
Subject: RE: Lindholm deposition


Fred --

There is no contradiction between my message and Christa Anderson's.  Mr. Lindholm's
deposition has been postponed due to the pending motion before Judge Ryu, the
resolution of which is plainly likely to have an impact on the scope of the deposition, and
the timing of that resolution based on Judge Ryu's order of this past Tuesday.  As you
know, Judge Ryu entered that order shortly after the Lindholm deposition had been
tentatively rescheduled for next Tuesday.

The argumentative content of  the remainder of your message is impertinent and, at this
point, premature.  I will respond only by saying that your odd reference to "hiding" Mr.
Lindholm's declaration and your speculation about what you are imagining Google "wants"
or intends are not based on anything Google has communicated to you and are baseless.
Engaging in further debate about them would be unproductive and is unnecessary.

We will be back in touch about the Lindholm deposition after Judge Ryu rules on the
privilege issue.

Regards --

Bruce

Bruce W. Baber
King & Spalding LLP
212-827-4079 (New York)
404-572-4826 (Atlanta)



-----Original Message-----
From: Fred Norton [mailto:fnorton@BSFLLP.com]
Sent: Friday, August 12, 2011 3:12 AM
To: Baber, Bruce
Cc: 'dalvik-kvn@kvn.com'; dalvik-KS; 'dmuino@mofo.com'; 'CAnderson@KVN.com';
OracleMoFoServiceList@mofo.com; Oracle-Google
Subject: RE: Lindholm deposition


Bruce,

Oracle does not waive its right to question Mr. Lindholm about the contents of his
documents.  It is improper of you to condition producing a witness for a court-ordered
deposition, on a date that has been agreed to by all counsel, on such a waiver.

I am perplexed by the contradiction between your email and Christa's.  Christa wrote that
Google would "propose a new date for Mr. Lindholm's deposition promptly after Judge
Ryu's ruling."  Your email says that Google will "assess its options" after Judge Ryu's
ruling.  If Google has no intention of allowing Mr. Lindholm to answer questions about the
emails at issue before Judge Ryu, regardless of how Judge Ryu rules, then you should say

so.  If that is the case, however, then delay of Mr. Lindholm's deposition serves no proper purpose.  Indeed, it seems clear that Google, having failed to hide Mr. Lindholm's declaration by filing it in camera, now wants to prevent him from facing any examination on that declaration.

Please state your position clearly:  if Judge Ryu rules against Google on the issue of privilege, will Google "propose a new date for Mr. Lindholm's deposition promptly after Judge Ryu's ruling"?

I look forward to your response.

Regards,

Fred Norton

_____
From: Baber, Bruce [BBaber@KSLAW.com]
Sent: Thursday, August 11, 2011 9:57 PM
To: Fred Norton
Cc: 'dalvik-kvn@kvn.com'; dalvik-KS; 'dmuino@mofo.com'; 'CAnderson@KVN.com'
Subject: Re: Lindholm deposition

Fred --

This is in response to your message to Christa Anderson of earlier this evening.

Since the time Mr. Lindholm's deposition was rescheduled, Judge Ryu has entered her order that makes clear she will not rule on the privilege issue until next Friday, August 19, at the earliest.  In view of that order, it is not appropriate to proceed with Mr. Lindholm's deposition next Tuesday.  We intend to present Mr. Lindholm for a deposition once, and it makes the most sense for that to happen after Judge Ryu rules -- regardless of how she rules.

If Oracle is prepared to proceed with Mr. Lindholm's deposition on Tuesday and will agree (1) to not ask questions about or derived from the privileged documents and (2) to not seek to depose Mr. Lindholm again at a later date regardless of Judge Ryu's decision, we may reconsider.  In the absence of such an agreement and in view of Judge Ryu's order, the deposition should not take place until after Judge Ryu's ruling.

We also find your self-serving and fictitious assertion of Oracle's "understanding" of Google's intentions to be unfounded, inappropriate and incorrect.  As you well know, Google is not making and has not made any "commitment" of the kind you describe.  Both Google and Oracle will assess their respective options following Judge Ryu's ruling and take appropriate action at that time.

Please let me know if you have any questions or would like to discuss.

Regards --

Bruce


Bruce W. Baber

King & Spalding LLP
212-827-4079 (New York)
404-572-4826 (Atlanta)

----- Original Message -----
From: Fred Norton <fnorton@BSFLLP.com>
To: Christa Anderson <CAnderson@KVN.com>; 'Muino, Daniel P.' <DMuino@mofo.com>
Cc: Oracle MoFo Service List <OracleMoFoServiceList@mofo.com>; Oracle-Google
<Oracle-Google@BSFLLP.com>; DALVIK-KVN <DALVIK-KVN@kvn.com>; dalvik-KS
Sent: Fri Aug 12 00:10:23 2011
Subject: RE: Lindholm deposition

Christa,

We do not agree to postpone Mr. Lindholm's deposition.  On Tuesday, while Oracle's
motion before Judge Ryu was already pending, you proposed that Mr. Lindholm's
deposition be scheduled for the morning of August 16, and we agreed.  Nothing has
happened since then that justifies your change in position.

It is not our present intention to question Mr. Lindholm on Tuesday about the contents of
the documents that are the subject of the motion before Judge Ryu, in light of Google's
stated position that it would not allow Mr. Lindholm to answer any such questions.  There
is no need to waste Mr. Lindholm's time or counsel's time by eliciting privilege objections
that Google has already promised to make.  Instead, we intend to proceed Tuesday with
the rest of the deposition ordered by Judge Ryu, except that we will reserve time for
questioning on the contents of the clawed back and withheld documents, in the event that
Judge Ryu grants Oracle's motion.

To the extent that Google refuses to produce Mr. Lindholm on August 16, but promises to
provide a deposition date "promptly after Judge Ryu's ruling," we understand that Google
is committing to treat Judge Ryu's ruling as final, and that Google will not file any
objections to, or seek any appeal of, that ruling.  Otherwise, of course, the delay that
Google insists upon would serve no purpose but delay.

Please let us know whether you will produce Mr. Lindholm for deposition on Tuesday
morning at 9:30, as previously agreed.

Regards,

Fred Norton

_____
From: Christa Anderson [CAnderson@KVN.com]
Sent: Thursday, August 11, 2011 11:24 AM
To: 'Muino, Daniel P.'
Cc: Oracle MoFo Service List; Oracle-Google; DALVIK-KVN; dalvik-KS
Subject: Lindholm deposition

Dear Counsel:
In light of Judge Ryu's recent ruling requesting additional information concerning the
privilege issues surrounding Mr. Lindholm's documents, and Oracle's stated intent to
question Mr. Lindholm on those documents if it were to prevail in its motion, we will need
to reschedule Mr. Lindholm's deposition until a date after Judge Ryu decides the privilege
issues.  We will propose a new date for Mr. Lindholm's deposition promptly after Judge
Ryu's ruling.

Regards,
Christa

_____

Christa Anderson

[cid:e98d9e51-2a5e-4229-b33a-eed8d5bf17a3]
415 676 2276 direct   |   vCard<http://www.kvn.com/Utilities/vCard.ashx?PostingId=55>   |   canderson@kvn.com
633 Battery Street, San Francisco, CA 94111-1809   |   415 391 5400 main   |   kvn.com<http://www.kvn.com/>

_____
IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, unless we expressly state otherwise, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

_____
The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer.  It is intended exclusively for the individual or entity to which it is addressed.  This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.  If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

_____
The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this

communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

# EXHIBIT S

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT T

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT U

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT V

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT W

Highly Confidential - Attorneys' Eyes Only

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                SAN FRANCISCO DIVISION

 4

 5     ------------------------

 6    ORACLE AMERICA, INC.,    )

 7            Plaintiff,       )

 8    vs.                      ) No. CV 10-03561 WHA

 9    GOOGLE, INC.,            )

10            Defendant.       )

11     ------------------------

12

13

14     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

15

16

17     VIDEOTAPED DEPOSITION OF HASAN RIZVI

18            THURSDAY, JULY 28, 2011

19

20

21    REPORTED BY:

22    JANIS JENNINGS, CSR 3942, CLR, CCRR

23

24

25    PAGES 1 - 275
```

Page 1

Highly Confidential - Attorneys' Eyes Only

```
 1    BY MR. PURCELL:
 2        Q.    Are you aware -- I think you already said
 3    you are aware of communications between Oracle and
 4    Google after the third meeting you had with
 5    Mr. Rubin about a potential business solution;        14:15:41
 6    correct?
 7        A.    Yes.
 8        Q.    What -- what was discussed at that meeting
 9    between Oracle and Google?
10        A.    I don't know.                               14:15:46
11            MR. NORTON:  Objection.  To the extent
12    that your knowledge of the contents of that
13    meeting -- to the extent you know that only from
14    communications with attorneys, then I'm going to
15    assert the privilege and ask you not to answer that  14:15:56
16    question.
17            MR. PURCELL:  Counsel, I don't want to
18    argue with you in detail, but I just think that
19    instruction is overbroad.  If he learns of a
20    nonprivileged fact through a lawyer, that doesn't    14:16:05
21    make the fact privileged.  And all I'm trying to ask
22    for is the nonprivileged fact regarding the
23    communications between Google and Oracle.
24            MR. NORTON:  Let's take a break and I can
25    see if I can --                                      14:16:16
```

Page 173

Highly Confidential - Attorneys' Eyes Only

```
 1              MR. PURCELL:  Okay.

 2              MR. NORTON:  -- clear this up.

 3              MR. PURCELL:  Thanks.

 4              THE VIDEOGRAPHER:  This is the end of disk

 5      number 2, volume 1.                             14:16:22

 6              We are off the record at 2:16 p.m.

 7              (Off the record.)

 8              THE VIDEOGRAPHER:  This is the beginning

 9      of disk number 3, volume 1.

10              We are back on the record at 2:23 p.m.   14:23:19

11              You may proceed.

12              MR. NORTON:  Thanks.  So we've had a

13      chance to speak and I think we've cleared up my

14      understanding, and I certainly agree with you that

15      nonprivileged facts are not privileged.          14:23:32

16              So I think if you continue with your

17      questions, we're probably fine.  If I do have a

18      privilege objection, I'll make it.

19              MR. PURCELL:  Okay.  Thank you.

20      BY MR. PURCELL:                                  14:23:41

21         Q.   So, Mr. Rizvi, again leaving aside

22      anything your lawyer told you by way of commentary

23      about discussions with Google, after the third

24      meeting you had with Mr. Rubin, what did Oracle

25      communicate to Google in further meetings about  14:23:52
```

Page 174