**KEKER & VAN NEST** LLP

**Robert Van Nest**
rvannest@kvn.com

August 16, 2011

The Honorable William Alsup
U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *Oracle America, Inc. v. Google Inc.*, No. 3:10-CV-03561-WHA (N.D. Cal.)

Dear Judge Alsup:

Google seeks leave to file, by the dispositive motions deadline of September 8, 2011, a motion for summary judgment of noninfringement regarding Oracle's infringement allegations under 35 U.S.C. §§ 271(c) & (f). Oracle contends that Google infringes its patents under section 271(f) by supplying Android and Android SDK to foreign contractors and that Google contributorily infringes under section 271(c) by selling or offering to sell Android and Android SDK domestically. (*See* Oracle's Second Supplemental Patent Local Rule 3-1 Disclosure of Asserted Claims and Infringement Contentions.)

The Supreme Court has squarely foreclosed Oracle's allegations of infringement under section 271(f). *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007). In *Microsoft*, the Supreme Court held that software that is "uncoupled from a medium" is not "a combinable component" as contemplated by the statute. *Id*. at 450. Software can be a component of a patented invention only if "it is expressed as a computer-readable 'copy.'" *Id.* at 449. The Court therefore concluded that Microsoft could not be liable because the physical discs and electronic transmissions that it supplied were not the same copies used by the allegedly infringing computers. *Id.* at 453-54.

*Microsoft* is directly on point here. Foreign handset manufacturers that download Android code may modify the downloaded code in whatever manner they wish. If a

The Honorable William Alsup  Page 2
August 16, 2011

manufacturer obtains the code as source code, they then compile that source code, make copies of the binary executable code, and then download those copies onto handsets. Similarly, if a manufacturer obtains binary code, they make copies of the binary code and then download them onto handsets. Whether or not the manufacturer obtains Android code in source or binary object code form, as in *Microsoft*, the copies of the binary executable code that are eventually downloaded onto handsets are both "uncoupled from a medium" for purposes of copying and download and "did not exist until they were generated by third parties outside the United States." *Id.* at 453. A copy of code on a handset is not the same copy as the binary code copied for download, much less the same copy as the source code downloaded from a server prior to compilation or further copying. Google thus does not supply "components of a patented invention," as required by section 271(f).

There are two reasons Oracle's allegations of contributory infringement under section 271(c) fail as a matter of law. First, the reasoning of *Microsoft* applies equally to section 271(c), which applies only to "a *component* of a patented machine, manufacture, combination, or composition, or a *material or apparatus* for use in practicing a patented process . . . ." 35 U.S.C. § 271(c) (emphases added). Under ordinary rules of statutory interpretation, the term "component" must have the same meaning in both statutory subsections. *See FCC v. AT&T Inc.*, 131 S. Ct. 1177, 1185 (2011). Section 271(c) differs from section 271(f) in that it also applies to process claims, but for those claims the contributory infringement is limited to selling or offering for sale "a material or apparatus for use in practicing a patented process." If Android source code unconnected from a medium cannot be a component because it is intangible, then *a fortiori* neither can it be a material or apparatus, which plainly refer to tangible things. Thus, if Oracle's

allegations of infringement under section 271(f) cannot succeed, neither can its theory of contributory infringement under section 271(c).

The second, but no less compelling, reason Oracle's contributory infringement allegations fail is that section 271(c) applies only to offers for sale, sales, and importation, but Google does not sell, offer to sell, or import Android or Android SDK. The Federal Circuit has repeatedly held that the terms "offer to sell" and "sell" in the Patent Act take their ordinary meanings. *See, e.g.*, *PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1356-59 (Fed. Cir. 2007) ("transfer" not a sale); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000); *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308-09 (Fed. Cir. 1999) (offer to donate not an offer to sell). The ordinary meaning of "sale" requires transfer of ownership *for a price*. *See, e.g.*, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005); *Enercon GmbH v. ITC*, 151 F.3d 1376, 1381-82 (Fed. Cir. 1998). Android and Android SDK are offered free of charge to anyone who wishes to download them off the Internet, however, and there is no evidence that Google ever receives any consideration in return. That undisputed fact precludes a finding of contributory infringement.

Summary judgment with respect to these theories would greatly streamline the issues for trial because the vast bulk of Oracle's infringement arguments are directed at devices that are manufactured and sold by third parties, thus requiring an indirect infringement theory. The relevant facts are undisputed, and these issues are ripe for resolution as a matter of law. Google therefore respectfully requests leave to file a motion on these issues.

Sincerely,

/s/ Robert A. Van Nest

576521.01