UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., | No. C-10-03561-WHA (DMR) |
| Plaintiff, | **ORDER RE JOINT DISCOVERY LETTER OF AUGUST 10, 2011 [DOCKET NO. 295]** |
| v. | |
| GOOGLE, INC., | |
| Defendant. | |

Before the court is the parties' joint discovery letter dated August 10, 2011 ("Letter") concerning Plaintiff Oracle America, Inc.'s request for Defendant Google, Inc.'s non-mobile data and financial projections in its effort to calculate possible damages that may arise from Google's alleged patent and copyright infringment. [Docket No. 295.] This court conducted a hearing on August 19, 2011. This order summarizes the rulings made by the court during the hearing.

**Damages in Patent Cases**

When determining damages in patent cases, courts often turn to "the reasonable royalty" method, which calculates what the plaintiff "would have received through arms-length bargaining." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (citations omitted). The law recognizes multiple approaches for calculating a reasonable royalty. The analytical method "focuses on the infringer's projections of profit for the infringing product." *Id.* (citation and quotation marks omitted) (describing analytical method as calculating damages based on infringer's own internal profit projections for infringing item at time infringement began and then apportioning projected profits between patent owner and infringer).

A more common method for determining a reasonable royalty, the "hypothetical negotiation" approach, "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Id.* at 1325 (citations

omitted). This method "tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement. In other words, if infringement had not occurred, willing parties would have executed a license agreement specifying a certain royalty payment scheme." *Id.* Despite the retrospective nature of this approach, evidence of usage after infringement can, under proper circumstances, "provide information that the parties would frequently have estimated during negotiations." *Id.* at 1334 (citation omitted).

**Discussion**

In his July 22, 2011 *Daubert* order, Judge Alsup stated that "[t]he relationship between Android and Google's advertising revenues would have been known to the parties at the time of [a] hypothetical negotiation. Plaintiff may base its damages model on then-expected advertising revenue so long as apportionment is done." [Docket No. 230.] This court takes Judge Alsup's ruling as the basis from which the court should permit Plaintiff to obtain discovery relating to Defendant's non-mobile operations.

Judge Alsup's order repeatedly makes clear that any damage analysis must account solely for the contribution of infringing features. However, because Plaintiff's request arises during discovery, the court will not require Plaintiff to tether its discovery requests to specific infringement claims or make a damage apportionment showing at this time. Nevertheless, the court remains mindful that the discovery process must adhere to the proportionality requirements of Rule 26 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . . .").

As a result of the court-ordered meet and confer process, the parties narrowed their disputes. Oracle pared down its requests, and Google offered to produce certain materials as a compromise. Oracle now asks the court to compel Google to produce the following data:

> For each of 5,000 individual keywords, (keywords to be selected by Oracle), quarterly data for the period 1/1/2004 through 7/31/2011 on the following (limited to the United States):
> • Total search volume (e.g. number of auctions or searches per month per keyword)
> • Average Cost Per Click ("CPC")
> • Average Click Through Rate ("CTR")

2

- Total Search Advertising Revenue

Quarterly aggregate data between and including Q1 2004 and Q1 2011 on the following (limited to the United States):
- Total search volume (e.g. number of auctions or searches per month per keyword)
- Average CPC
- Average CTR
- Total Search Advertising Revenue
-

(Letter at 2-3.) Defendant opposes these requests as overly burdensome in relation to the relevant information that they may provide. (Letter at 6.) The court agrees.

The high specificity, complexity and volume of Oracle's requests, and the significant burdens that they would place upon Google, outstrip the likely benefit to Plaintiff's damages calculation. Oracle seeks the information because its experts "intend to isolate the effect of Android on Google's non-mobile revenues through a statistical analysis of search volume, click-through rates, cost per click, and revenue for keywords before and after the introduction of Android." (Letter at 2.) As such, these requests go well beyond the type of information that would have been available to the parties in a past hypothetical negotiation. *See Lucent Techs., Inc.*, 580 F.3d at 1325.[1] Instead, the court will compel discovery geared toward arming the hypothetical negotiators with information that they would have had about the likely effect of Android on Google's advertising revenues. As noted in *Lucent*, it is appropriate to include some actual post-infringement data. The court will also compel a representative body of Google's non-mobile projections.

The court therefore narrows the scope of Oracle's requests and ORDERS the following: By the close of business on August 22, 2011, Google shall search for and provide Oracle with a list of regularly produced non-mobile revenue projections that would have been prepared for the two highest levels of Defendant's management. The list shall be geared toward providing Oracle with the information it needs to make meaningful decisions about which documents it seeks. At a minimum, that information shall include (1) who prepared the report, and for whom it was intended;

---

[1] Oracle argues that its discovery demands are justified by its claim for damages for copyright infringement. However, Oracle has made absolutely no showing that the alleged infringement of certain Java class libraries is causally connected to Google's advertising revenues. Oracle's copyright damage argument is therefore too speculative to support these discovery requests.

3

1  (2) the types of data captured in the report; and (3) the purpose of the report. The parties then shall
2  meet and confer, and Oracle shall inform Google which documents from the list that it desires no
3  later than close of business on August 23, 2011. With respect to the relevant timeframe for these
4  documents, Google shall produce non-mobile annual third quarter revenue projections for 2005
5  through 2008 and for the first quarter of 2009. If any given projection does not exist, Google shall
6  produce a projection for the following quarter. Google shall provide Oracle with these documents
7  by close of business on August 29, 2011.

8      The court also ORDERS that Google shall prepare and produce actual quarterly data for 1Q
9  2004 through 1Q 2011 regarding Google's total number of searches, average CPC for search ads,
10  average CTR for search ads, and total advertising revenues. Google shall provide this information to
11  Oracle in waves as soon as data sets are generated, completing all production by September 5,
12  2011.[2] As a final matter, the court notes that it is unclear how difficult or time consuming it
13  will be for Google to produce the aforementioned materials, or how voluminous the production will
14  be. This court does not have the authority to grant Oracle permission to supplement its expert
15  damage report with late-produced or unexpectedly voluminous information that it had to move to
16  compel from Google. However, the court notes for the record that Oracle made timely discovery
17  requests and moved promptly to compel responses thereto.

18  IT IS SO ORDERED.

20  Dated: August 23, 2011

                                      DONNA M. RYU
                                      United States Magistrate Judge

---

[2] At the discovery hearing, Google certified to the court that using search terms provided by Oracle, it had searched for documents relating to the impact of Android on any aspect of "network effects," including on Google's advertisement revenues and other non-mobile business. Google certified that all documents discovered as a result of the new searches have now been produced.

4