United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., | No. C-10-03561-WHA (DMR) |
| Plaintiff, | **ORDER RE THE PARTIES' JOINT DISCOVERY LETTER OF AUGUST 5, 2011 [DOCKET NO. 277]** |
| v. | |
| GOOGLE, INC., | |
| Defendant. _____/ | |

Before the court is the parties' joint discovery letter of August 5, 2011 ("Letter"). [Docket No. 277.] In the Letter, Plaintiff Oracle America, Inc. ("Oracle") moves the court to compel Defendant Google, Inc. ("Google") to produce drafts and the final version of an email, over which Google has asserted a claim of privilege. The documents include eight drafts that Google produced, but subsequently clawed back pursuant to Federal Rule of Civil Procedure 26(b)(5)(B),[1] and another draft and two copies of the final email that Google withheld and listed on its privilege log.[2] The court ordered further factual submissions [Docket No. 286], and heard the matter on August 25,

---

[1] These documents are GOOGLE-12-00039558, GOOGLE-12-00039559, GOOGLE-12-00039560, GOOGLE-12-00039561, GOOGLE-12-00039562, GOOGLE-12-00039563, GOOGLE-12-00039564, GOOGLE-12-00039565.

[2] Google listed these versions as 2251, 5512, and 5513 in its privilege log.

2011. Because the court finds that Google has failed to demonstrate that attorney-client privilege or the work product doctrine protects the disputed documents, the court grants Plaintiff's motion.

## Background

An email authored by Tim Lindholm, a Google software engineer, lies at the crux of this dispute. Lindholm wrote the email on the morning of August 6, 2010. In response to discovery requests, Google collected eight "auto save" drafts and two final versions of the email (collectively, "Lindholm Email" or "Email").[3]

The draft email appears, in relevant part, as follows: "Tim Lindholm" is listed in the "From:" portion of the header, and the subject heading is "Context for discussion: what we're really trying to do." The "To" and "Cc" portions are empty. The Email is dated August 6, 2010. The body of the text begins "Hi Andy," referring to Andy Rubin, Google Vice President in charge of Android. In the text, Lindholm writes that "[w]hat we've actually been asked to do (by Larry [Page, Google's CEO,] and Sergei [Brin, co-founder of Google,] is to investigate what technical alternatives exist to Java for Android and Chrome. We've been over a bunch of these, and think they all suck." Lindholm also states in the text that "[w]e conclude that we need to negotiate a license for Java under the terms we need." The text continues for several additional sentences, with two more references to "negotiation" for a Java license.

The final version contains the following additional information. It is addressed in the "To:" header to Andy Rubin and Ben Lee, former Google in-house counsel, and is copied to Lindholm and Dan Grove, another Google engineer. As a preamble to the email's text, Lindholm added the phrases "Attorney Work Product" and "Google Confidential." The text of the document is signed "Tim [Lindholm] and Dan [Grove]."

The Lindholm Email first came to the court's attention on July 21, 2011 during two separate hearings. At the first hearing, before the undersigned, Oracle quoted one of the drafts produced by Google to support its contention that the court should grant it leave to depose Lindholm. (*See*

---

[3] The court reviewed all of the documents *in camera.* Together, they form a sequence of automatically saved drafts of an email that was created during a four minute span before being sent. (Corrected Zmrhal Decl. ¶¶ 1, 3, 15, Aug. 17, 2011; *accord* Corrected Lindholm Decl. ¶¶ 10-11, 14, Aug. 17, 2011.)

*generally* Disc. Hr'g Tr. 32:25-35:22, July 21, 2011.) At a *Daubert* hearing before Judge Alsup later that afternoon, Oracle presented one of the drafts during a discussion on willful infringement. (*See generally Daubert* Hr'g Tr. 23:20-24:7, 40:14-42:16, July 21, 2011.)

That night, Google informed Oracle that the Lindholm Email constituted "Protected Material" under the operative protective order and that "Oracle should make no further public disclosure of this confidential information." (Norton Decl. Ex. J (E-mail from Christa Anderson to Oracle-Google, Oracle MoFo Service List (July 21, 2011)), Aug. 15, 2011.) The following evening, Google asserted that the Lindholm Email was "unintentionally produced privileged material" and clawed it back. (Norton Decl. Ex. L (Bornstein Dep. 186:7-29, July 22, 2011).) A few hours later, Google notified Oracle that they had clawed back the Lindholm Email as "subject to the attorney-client privilege and/or work product doctrine" and now would clawback the other drafts for the same reason. (Norton Decl. Ex. M (E-mail from Bruce Baber to Oracle-Google, Oracle MoFo Service List (July 22, 2011)); *see* Norton Decl. Ex. N (E-mail from Bruce Baber to Oracle-Google, Oracle MoFo Service List (July 27, 2011)) (listing Lindholm Drafts).)

Oracle contests Google's claims of attorney-client privilege and work product protection for the Lindholm Email, and moves the court to compel production of the documents.

**Attorney-Client Privilege**

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted); *accord United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2002) ("[T]he privilege encompasses not only (qualifying) communications *from the client* to her attorney but also communications *from the attorney* to her client . . . ."); *see Vasudevan Software, Inc. v. IBM Corp.*, No. 09-5897-RS, 2011 WL 1599646, at * 1 (N.D. Cal. Apr. 27, 2011). The privilege is "narrowly and strictly construed," and the party asserting it bears the burden of proving that it applies. *Vasudevan Software, Inc.*, 2011 WL 1599646, at *1 (footnotes and quotation marks omitted); *accord United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (holding that party asserting privilege "must make a *prima facie* showing" that privilege applies) (citing *In re Grand Jury Invest.*, 974 F.2d 1068, 1071 (9th Cir.

1992)); *see Richey*, 632 F.3d at 566. The party asserting the privilege must establish all elements of an eight-part test that describes the privilege as attaching when:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Richey*, 632 F.3d at 566 (brackets, citation, and quotation marks omitted). The privilege extends to electronic versions and preliminary drafts of communicated documents, *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 139-40 (E.D. Mich. 2009) (citations omitted), as well as communications with "third parties who have been engaged to assist the attorney in providing legal advice." *Richey*, 632 F.3d at 566 (footnote omitted). If the advice sought from the professional legal advisor is not legal advice, however, the privilege does not apply. *Richey*, 632 F.3d at 566 (citation omitted); *accord id.* at 566 n.3 ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer*." (citation and quotation marks omitted)).

**Analysis**

The court will examine the final version of the Lindholm Email; if it is privileged, then its drafts are as well. *See Laethem Equip. Co.*, 261 F.R.D. at 139-40. After careful analysis of the Email, the parties' arguments, and their supplemental factual submissions, the court concludes that Google has failed to prove the first three prongs of the attorney-client privilege test, namely that the Lindholm Email constitutes a communication related to the purpose of obtaining legal advice from a legal advisor in his capacity as such.

Google characterizes the Email as "a communication to a Google attorney" conveying the fruits of research that Lindholm "performed at the direction of Google attorneys." (Corrected Lindholm Decl. ¶ 2, Aug. 17, 2011; *accord* Lindholm Decl. ¶ 7, Aug. 19, 2011; Corrected Lee Decl. ¶¶ 5-8.) Specifically, Google asserts that after attending a July 20, 2010 meeting, during which Oracle gave a presentation and threatened to sue Google for patent infringement, then-Google Senior Counsel Lee and Google General Counsel Kent Walker directed Lindholm and Grove "to gather certain information related to Oracle's infringement claims," and that the Email was part of

that effort. (Corrected Lindholm Decl. ¶¶ 4-8; *accord* Lindholm Decl. ¶ 7; Corrected Lee Decl. ¶¶ 5-8.)

Google appears to argue that these assertions, together with the fact that the Email was marked "Work Product" and that Lee was one of its recipients, lead inexorably to the inference that the Email is privileged. The court disagrees. As set forth below, the contents of the email itself severely undermine the claim that Lindholm generated this particular email as part of an attorney-directed effort to provide legal advice or prepare for litigation. Moreover, there are many basic gaps in the factual record that Google failed to fill, despite having had ample opportunity to do so. For example, Lee, who no longer works for Google, did not indicate that he reviewed the Email and could competently represent that it was connected to work that he requested from Lindholm as part of the provision of legal advice he describes in his declaration. Neither Lee nor Lindholm discusses whether, during the time period in question, they were communicating with each other solely about the legal advice they each describe. In other words, at that time, Lindholm may well have been communicating with Lee about other non-privileged matters, including the business of negotiating for a Java license. This is a simple and reasonable explanation for the Email that Google makes no effort to foreclose. And as discussed below, neither Lee nor Lindholm states that Rubin, Page, and Brin were involved in the described efforts to formulate legal advice, nor do they attempt to explain why these individuals feature so prominently in the text of the Email. Lee and Lindholm easily could have supplied these basic foundational facts in their declarations without jeopardizing the asserted privilege.

Nothing in the content of the Email indicates that Lindholm prepared it in anticipation of litigation or to further the provision of legal advice. The Email is not directed to Walker or Lee, or indeed to any lawyer. Instead, it is directed to Rubin, the Vice President of Android. It expressly states that Page and Brin (and not the lawyers) instructed Lindholm and Grove to undertake the technological research discussed in the Email. Google has no rejoinder to these central facts. Indeed, Google was fully aware of Oracle's argument that the references to Rubin, Page, and Brin in the Email text were highly relevant to the determination of the Email's privileged status. (*See* Letter at 3-4.) Yet Google's subsequent factual submissions utterly fail to mention any of these three

5

individuals, nor do they attempt to explain the principal role that they play in the subject matter of the Email.[4]

The Email text also never mentions legal advice, lawyers, litigation, Oracle, or patent infringement; rather, it focuses on technological aspects of Chrome and Android, and the need to negotiate a license for Java. These indicia, in conjunction with the fact that Lindholm sent the Email to Rubin and carried out the described work at Page and Brin's request, suggest that the Email is a business discussion and not a proffering of research for an attorney preparing legal advice. The Email's reference to Chrome further erodes Google's claim that the Email stemmed from legal research catalyzed by the July 20, 2010 meeting, because Oracle did not mention Chrome at the meeting, and Chrome has played no role in this litigation. (Simion Decl. ¶¶ 3-5, Aug. 19, 2011; Second Norton Decl. Ex. 4 (July 20, 2010 Oracle presentation to Google discussing alleged Android patent infringement), Aug. 19, 2011.) In sum, the Email appears to be a strategy discussion intended to address business negotiations regarding a Java license, and Google has provided the court scant evidence to the contrary.

The reactions of Google counsel when presented with the Lindholm Email in court reinforce the weaknesses of Google's contention that the Email warrants attorney-client privilege. During the July 21, 2011 hearing before Judge Alsup, Oracle presented one of the produced drafts of the Email. As such, the document did not say "Work Product" and did not indicate that it had been sent to an in-house lawyer. Upon reading the text of the Email, Google's lead counsel represented to Judge Alsup that Lindholm's email was intended to answer "question[s] from the CEO [Larry Page]" about "negotiations between the parties." (*Daubert* Hr'g Tr. 42:3, 42:9.) In other words, when stripped of the address header and boilerplate "Work Product" text, even Google's lead counsel,

---

[4] Lindholm's declarations make vague references to the involvement of "Google top management" (Corrected Lindholm Decl. ¶ 6) or "executive management" (Lindholm Decl. ¶ 7). He does not specify whom he includes in these general descriptions, nor does he explain what role they played, although he easily could have done so. Given Google's large size, Lindholm's general descriptions could apply to a multitude of individuals and not necessarily Page, Brin, and Rubin.

6

who is intimately familiar with the facts of this case, believed that the Email concerned business negotiations and could not identify it as a privileged document.[5]

The fact that Lindholm wrote "Attorney Work Product" and "Confidential," and sent the Email to one of Google's in-house counsel does not establish that the Email deserves privileged status. Boilerplate designations do not mechanically confer privilege, *see Manriquez v. Huchins*, No. 09–CV–456, 2011 WL 3290165, at *8 (E.D. Cal. July 27, 2011); *Enns Pontiac, Buick & GMC Truck v. Flores*, 07-CV-1043, 2011 WL 2746599, at *5 (E.D. Cal. July 13, 2011), nor does merely including an attorney in a communication. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981); *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1069-70, 1075. In fact, Lee's role as in-house counsel warrants heightened scrutiny. In-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters. When attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party therefore "must make a 'clear showing' that the 'speaker' made the communication[] for the purpose of obtaining or providing *legal* advice." *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076 (emphasis added) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)) ("In order to show that a communication relates to *legal* advice, the proponent of the privilege must demonstrate that the 'primary purpose' of the communication was securing legal advice." (citation omitted)). Google has made no such showing.

In light of Google's failure to meet its burden of demonstrating that the Lindholm Email constitutes a communication related to the purpose of obtaining legal advice from a legal advisor in his capacity as such, the court finds that the Email and its drafts are not covered by the attorney-client privilege.

---

[5] During the hearing on this motion, Google's counsel argued for the first time that it is common for companies to engage in pre-litigation license negotiations in patent cases. She asserted that the court consequently should infer that the Email's reference to license negotiations demonstrates that Lindholm prepared the Email to augment in-house counsel's legal advice. Again, if the events transpired in this manner, Google could have explained that in its declarations. Moreover, if such common practice pre-litigation negotiations were occurring in this case, and the Email referenced them, it seems curious that lead counsel could not recognize it as such.

7

**Work Product Doctrine**

The work product doctrine protects from discovery "materials prepared by an attorney in anticipation of litigation," be they "by or for the attorney." *Bergonzi*, 216 F.R.D. at 494 (citations omitted); *accord Richey*, 632 F.3d at 567. It aims to balance the "promotion of an attorney's preparation in representing a client" and "society's general interest in revealing all true and material facts to the resolution of a dispute." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (citation and quotation marks omitted). To qualify for work-product protection, materials must "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party of by or for that other party's representative." *Richey*, 632 F.3d at 567 (citation and quotation marks omitted); *accord Elan Microelecs. Corp. v. Apple, Inc.*, No. 09-1531-RS, 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011) (footnote and citation omitted). The party seeking the protection bears the burden of showing that the disputed materials fall within its scope. *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1080-81 (citations omitted).

**Analysis**

Google did little to advance an argument that the Email constitutes attorney work-product, devoting only two sentences to the issue. (*See* Letter at 8.) For the same reasons discussed above, the court finds that Google has not met is burden in demonstrating that the Lindholm Email was prepared in anticipation of litigation or for trial, and that the Email therefore does not warrant work product protection. The same evidentiary gaps and logical inconsistencies that pervade its attorney-client privilege argument fatally impugn Google's claim of work-product protection. The court therefore finds that work product protection does not apply to the Lindholm Email.[6]

**Conclusion**

Google has not demonstrated that the Lindholm Email falls within the ambit of attorney-client privilege or the work product doctrine. Accordingly, the court GRANTS Oracle's motion to

---

[6] The court notes that Google did not raise the work product dual purpose argument, *see ChevronTexaco Corp.*, 241 F. Supp. 2d at 1080-81, and it therefore is waived. *See FDIC v. Garner*, 126 F.3d 1138, 1145 (9th Cir.1997).

8

compel discovery of the Email and their drafts. Oracle shall immediately produce the documents to Google and shall tender Lindholm for deposition without further delay.[7]

IT IS SO ORDERED.

Dated: August 26, 2011



DONNA M. RYU
United States Magistrate Judge

---

[7] Google indicated during the hearing that it would file objections to this discovery order. However, the filing of objections to a magistrate judge's order on a non-dispositive matter does not stay the order's operation. *Hanni v. Am. Airlines, Inc.*, No. 08-732-CW, 2009 WL 1505286, at *3 (N.D. Cal. May 27, 2009); *accord Blessey Mar. Servs., Inc. v. Jeffboat, LLC*, No. 10-1863, 2011 WL 3349844, at *4 (E.D. La. Aug. 3, 2011) ("The idea that the filing of an objection automatically stays a magistrate judge's discovery order would essentially reduce the magistrate's order to the status of a recommendation." (citation and quotation marks omitted)) (noting that notion that filing of objection operates as automatic stay of magistrate judge's order may provide losing parties with artificial incentive to object and use objection process as device to further delay discovery and derail preparation of case for trial) (collecting cases).

Case3:10-cv-03561-WHA Document361 Filed08/26/11 Page10 of 10