KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
STEVEN A. HIRSCH - #171825
shirsch@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Tel:     415.391.5400
Fax:    415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY  10036
Tel:     212.556.2100
Fax:    212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel:     415.318.1200
Fax:    415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:     650.328.8500
Fax:    650.328-8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>                            Plaintiff,<br><br>   v.<br><br>GOOGLE INC.,<br><br>                            Defendant. | Case No. 3:10-cv-03561-WHA<br><br>**MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Judge:  Hon. William Alsup<br><br>Date Comp. Filed:  October 27, 2010<br>Trial Date:  October 31, 2011 |

## MOTION AND ACTION REQUESTED

Google, Inc. ("Google") moves for relief from the "Order re the Parties' Joint Discovery Letter of August 5, 2011 [Docket No. 277]" (Doc. 361) (hereinafter, "the Order").[1] Google requests the Court to take the actions requested in the accompanying Proposed Order.

## PORTIONS OF THE ORDER TO WHICH GOOGLE OBJECTS

**"Google has failed to prove the first three prongs of the attorney-client privilege test, namely that the Lindholm Email constitutes a communication related to the purpose of obtaining legal advice from a legal advisor in his capacity as such."  Doc. 361 at 4:18-21.**

Objection:  clearly erroneous and contrary to law.  The Magistrate speculated without any factual basis that the email was purely business-related, and she ignored all the uncontradicted evidence linking the email to Google's legal investigation of Oracle's claims.  *See* below.

**"[Former Google in-house counsel Ben] Lee . . . did not indicate that he reviewed the Email and could competently represent that it was connected to work that he requested from Lindholm as part of the provision of legal advice he describes in his declaration."  Doc. 361 at 5:9-11.**

Objection:  clearly erroneous and contrary to law.  Mr. Lee's declaration stated:  "On or about August 6, 2010 I received an email from Mr. Lindholm *regarding the investigation Mr. Walker and I had asked him to conduct*."  Ex. A (Doc. 315) at ¶ 9 (emphasis added).  The Magistrate appears to have concluded that Mr. Lee's statement lacked foundation because he did not add:  "I know what Mr. Lindholm's email was about *because I read it*."  Surely that statement is too obvious to require a declarant to make when he has declared that he received the email in question and has described what it was about.

**"Neither Lee nor Lindholm discusses whether . . . they were communicating with each other solely about the legal advice they each describe. . . . Lindholm may well have been communicating with Lee about other non-privileged matters, including the business of negotiating for a Java license."  Doc. 361 at 5:11-15.**

Objection:  clearly erroneous and contrary to law.  Mr. Lee and Mr. Lindholm declared that they were communicating about the investigation that Google General Counsel Kent Walker had asked Mr. Lindholm to undertake, under Lee's direction, in response to Oracle's infringement claims and in anticipation of Oracle's threatened lawsuit.  Ex. A (Doc. 315) at ¶¶ 5-

---

[1] **Google also objects to the Magistrate's orders contained in Docs. 353, 354, 355, 356, and 360, all of which depend on the finding of non-privilege contained in Doc. 361.**

10; Ex. B (Doc. 316) at ¶¶ 4-8, 14.  One of Mr. Lindholm's declarations *specifically excluded* the possibility that the email was about anything other than Google's legal investigation, such as "general business advice" about Android.  Ex. C (Doc. 331) at ¶¶ 7-8.

**"[N]either Lee nor Lindholm states that Rubin, Page, and Brin were involved in the described efforts to formulate legal advice, nor do they attempt to explain why these individuals feature so prominently in the text of the Email."  Doc. 361 at 5:16-18.**

Objection:  clearly erroneous and contrary to law.  There is no mystery as to why Google co-founders Larry Page and Sergey Brin and Android chief Andy Rubin "feature[ed] so prominently" in Mr. Lindholm's email.  As stated in Mr. Lee's and Mr. Lindholm's declarations, at that time, Google had recently learned that software giant Oracle was threatening to sue Google on a claim that Google's Android platform infringed Oracle's patents and copyrights.  Oracle has claimed billions of dollars in damages.[2]  It is inconceivable that Google's top management would *not* instruct the company's lawyers to analyze and investigate a claim of such magnitude.  Indeed, Mr. Lindholm's declarations confirm that Google's top management attended the July 30, 2010 meeting at which Google's General Counsel tasked Mr. Lindholm and Mr. Grove with investigating facts relating to Oracle's claims, and that the investigation was intended to develop and convey legal advice to Google's executive management.  Ex. B (Doc. 316) at ¶ 6; Ex C (Doc. 331), at ¶ 7.

Moreover, the Magistrate appears to have assumed that a legal investigation can be ordered and supervised *either* by top management, *or* by the company's general counsel—but never by both.  That assumption is baseless.  Corporate attorney-client privilege cases regularly involve facts where both top management and corporate counsel order and supervise the investigation—*e.g.*, where "senior management" instructs managers to give statements to the corporation's counsel (*see Admiral Ins. Co. v. United States Dist. Ct.*, 881 F.2d 1486, 1493 (9th Cir. 1989)) or a board chairman asks general counsel to investigate corporate conduct by interviewing lower-level employees (*see Upjohn Co. v. United States*, 449 U.S. 383, 387 (1981)).

---

[2] Ex. D (Doc. 230) at 4.

1  **"Nothing in the content of the Email indicates that Lindholm prepared it in anticipation of litigation or to further the provision of legal advice.  The Email is not directed to**
2  **[attorneys] Walker or Lee . . . [but rather,] . . . to Rubin, the Vice President of Android.  It expressly states that Page and Brin (and not the lawyers) instructed Lindholm and Grove**
3  **to undertake the technological research discussed in the Email."  Doc. 361 at 5:21-25.**

4      Objection:  clearly erroneous and contrary to law.  *__First__*, the "content of the Email" *does*

5  indicate that it was prepared in anticipation of litigation and to further the provision of legal

6  advice because it includes the words "Attorney Work Product" and "Google Confidential," was

7  sent to the Google in-house lawyer assigned to supervise Lindholm's investigation of Oracle's

8  claims, and concerned alternatives to the technology that Oracle then was claiming Google had

9  infringed.  *__Second__*, the email most assuredly *is* "directed to" Lee.  It says so, right in the "To:"

10 field.  While the salutation is to Mr. Rubin, there is no legal rule that the attorney must be named

11 in the salutation—especially when the communication says "Attorney Work Product" and

12 "Google Confidential" at the top and is directly addressed to an attorney.  While the fact that the

13 communication is addressed to a lawyer may not be dispositive in and of itself, it cannot simply

14 be ignored.  *See In re OM Sec. Litig*., 226 F.R.D. 579, 587 (N.D. Ohio 2005).  *__Third__*, the email

15 does *not* "expressly stat[e] that Page and Brin (and not the lawyers)" instructed Lindholm to

16 conduct the pre-litigation investigation.  "[A]nd not the lawyers" is an inference that the

17 Magistrate mistakenly drew after disregarding (a) the confidentiality statements at the top of the

18 email, (b) the fact that the email is addressed to a lawyer, (c) the fact that the email discusses

19 alternatives to using a technology just accused by Oracle (in a Fed. R. Civ. P. 408

20 communication) of infringing intellectual-property rights, and (d) the many statements in Lee's

21 and Lindholm's declarations explaining that the email reported the results of a pre-litigation

22 investigation launched in response to Oracle's claims.

23      Moreover, the Lindholm declarations state that top management attended the July 30,

24 2010 meeting at which Kent Walker tasked Mr. Lindholm and Mr. Grove with investigating

25 issues related to Oracle's claim—*i.e.*, with "undertak[ing] the technological research discussed in

26 the Email."  Google's general counsel ordered the investigation with the support and approval of

27 Google's top management.  Yet the Magistrate once again assumes that the presence and

28 involvement of top management renders any transaction presumptively non-legal.

1   **"The Email text also never mentions legal advice, lawyers, litigation, Oracle, or patent infringement; rather, it focuses on technological aspects of Chrome and Android, and the
2   need to negotiate a license for Java. . . . [T]he Email appears to be a strategy discussion intended to address business negotiations regarding a Java license . . . ."  Doc. 361 at 6:3-5,
3   12-13.**

4   Objection: clearly erroneous and contrary to law.  The Magistrate held, in substance, that

5   a communication cannot be related to a corporate legal investigation if it fails to refer to

6   litigation or to request legal assistance.  But it is not necessary to expressly request legal

7   assistance; just keeping the attorney abreast of business developments may imply such a request.

8   *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000); *Hercules, Inc. v.*

9   *Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977).  And it would undermine the privilege to

10  hold that every communication generated by a corporate legal investigation must contain

11  boilerplate assertions about the ongoing legal investigation in order to remain privileged.

12  The Magistrate's conclusion that the Lindholm email "appears to be a strategy

13  discussion" about licensing negotiations rather than anything litigation-related is not supported

14  by any evidence and rests on illogical speculation.  The Magistrate did not question the

15  credibility of the declarations stating that Kent Walker asked in-house attorney Ben Lee to

16  continue supervising Lindholm's investigation of facts relating to Oracle's claims.  Ex. E at

17  11:15-21, 23:24-24:19.  Ben Lee is just one of more than 200 in-house attorneys that Google

18  employs world-wide—yet he was the ***only*** Google in-house attorney to whom Mr. Lindholm

19  addressed an email discussing alternatives to Oracle's allegedly infringed programming

20  language, ***and*** he was the attorney initially tasked with leading the investigation of Oracle's

21  claims.  That is no coincidence.

22  The Magistrate's speculation likewise fails to address the timing of Mr. Lindholm's

23  email—sent just one week after the June 30, 2011 meeting with Google lawyers and top

24  management, and less than three weeks after Oracle presented its infringement claims and

25  threatened Google with litigation.  Again, that is no coincidence.[3]

26

---

27  [3] Even if the Lindholm email relates solely to "business negotiations" (and it doesn't), such communications can be privileged, too.  *See United States v. Chen*, 99 F.3d 1495, 1501-02 (9th
28  Cir. 1996) (emphasis added);  *In re Brand Names Prescription Drugs Litig.*, No. 94 C 897, 1995 WL 557412, at *2 (N.D. Ill. Sept. 19, 1995); *OM Sec. Litig.*, 226 F.R.D. at 587.  And there is no

4

1  **"Lee's role as in-house counsel warrants heightened scrutiny. . . . [Google] 'must make a "clear showing" that the "speaker" made the communication[] for the purpose of obtaining or providing legal advice.'" . . . Google has made no such showing." Doc. 361 at 7:9-18.**

3  Objection: clearly erroneous and contrary to law.  The "clear showing" standard originated in the D.C. Circuit; but the Ninth Circuit (whose law governs here) holds that, "[i]n determining the existence of a privilege, no attempt is made to distinguish between 'inside' and 'outside' counsel." *United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996).  Google satisfied the "clear showing" standard anyway, since its declarations establish that Lee was tasked by Google's general counsel with overseeing an investigation of facts relating to Oracle's claims and threat of litigation—a quintessentially legal task calling upon Lee's "'knowledge and discretion in the law.'" *Chen*, 99 F.3d at 1502.  Moreover, under the "clear showing" standard, Ben Lee's status as a member of Google's legal department leads to a presumption that he was giving legal advice.  *See Boca Investerings P'ship v. U.S.*, 31 F. Supp. 2d 9, 12 (D.D.C. 1998).

13  **"The reactions of Google counsel when presented with [an incomplete draft of] the Lindholm Email in court reinforce the weaknesses of Google's contention that the Email warrants attorney-client privilege. . . ." Doc. 361 at 6:15-7:2.**

15  Objection: clearly erroneous and contrary to law.  The surprised reaction of a lawyer confronted for the first time with excerpts from a draft document that has been "stripped" of some of its most telling intrinsic indicia of privilege (and was presented to the public in violation of a protective order) is utterly irrelevant in a case where millions of pages have been produced.

19  **The Magistrate denied the Lindholm email work-product protection "[f]or the same reasons discussed" in its treatment of the attorney-client privilege.  Doc. 361 at 8:16.**

Objection: clearly erroneous and contrary to law for all the reasons stated above.

Dated:  September 8, 2011                    Respectfully submitted,

                                             KEKER & VAN NEST LLP

                                             By: s/ Robert A. Van Nest
                                                 ROBERT A. VAN NEST
                                                 Attorneys for Defendant
                                                 GOOGLE INC.

---

bright line between license negotiations and IP litigation because licenses are a typical component of settlements involving an IP dispute.  *See, e.g, Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097, 1098-99 (Fed. Cir. 2004); *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 349 (Fed. Cir. 1988); *Therasense, Inc. v. Becton, Dickinson & Co.*, C 04-02123 WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008).