ROBERT A. VAN NEST (SBN 84065)
rvannest@kvn.com
CHRISTA M. ANDERSON (SBN 184325)
canderson@kvn.com
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
bbaber@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

DONALD F. ZIMMER, JR. (SBN 112279)
fzimmer@kslaw.com
CHERYL A. SABNIS (SBN 224323)
csabnis@kslaw.com
KING & SPALDING LLP
101 Second Street – Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

IAN C. BALLON (SBN 141819)
ballon@gtlaw.com
HEATHER MEEKER (SBN 172148)
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

Attorneys for Defendant
GOOGLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE INC.<br><br>    Defendant. | Case No. 3:10-cv-03561-WHA<br><br>Honorable Judge William Alsup<br><br>Hearing Date: September 29, 2011<br>Hearing Time: 8:00 a.m.<br><br>**DEFENDANT GOOGLE INC.'S MOTION TO STRIKE PORTIONS OF THE MITCHELL PATENT REPORT** |

PLEASE TAKE NOTICE that on September 29, 2011 at 8:00 a.m., or as soon thereafter as counsel may be heard, Defendant Google Inc. ("Google") will, and hereby does, respectfully move to strike portions of the Opening Expert Report of John C. Mitchell Regarding Patent Infringement (the "Mitchell Report," Ex. A). This Motion is based on the following memorandum of points and authorities in support, the Declaration of Mark H. Francis ("Francis Decl.") and accompanying exhibits, the entire record in this matter and on such evidence as may be presented at a hearing on this motion.

## INTRODUCTION

Oracle presented an expert report that identifies for the first time files and products as central to its patent infringement allegations, which were not previously identified in Oracle's Disclosure of Asserted Claims and Infringement Contentions ("ICs"). In so doing, Oracle circumvents the requirements of the Patent Local Rules and ignores the Court's warning that Oracle must provide full disclosure of its infringement theories in its ICs. *See Transcript of Proceedings* (Dkt. No. 110) at 10:14–11:13 (April 6, 2011). Google therefore requests that all sections of the Mitchell Report discussing or relying upon newly-identified source code files, products or theories be stricken from the report and that Oracle be precluded from introducing these new theories or facts at trial. *See Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, No. 08-cv-04567, 2009 U.S. Dist. LEXIS 101035 (N.D. Cal. Oct. 16, 2009) (granting a motion to strike portions of an expert report relating to products not identified in the infringement contentions).

As per the Court's instructions (Dkt. No. 382), Google raises only three specific points of critique in this motion. They are representative of similar problems in other sections of the Mitchell Report, which are not addressed herein. Google therefore respectfully requests leave to seek appropriate additional relief once this motion is decided.

**<u>CRITIQUE A</u> – To Allege Infringement of Claim 11 in the '104 patent, the Mitchell Report Improperly Relies on Source Code Files That Were not Identified in Oracle's ICs**

Paragraphs 255, 270, 271, 273, 277, 279, 282, 287, 289, 292, and 296 of the Mitchell Report should be stricken. These paragraphs discuss and rely on the DvmDex.h source code file to meet required elements of claim 11 of the '104 patent, and the DvmDex.h file was not

1
GOOGLE'S MOTION TO STRIKE PORTIONS OF THE MITCHELL PATENT REPORT, CIV. NO. CV 10-03561-WHA

identified in Oracle's ICs.

Patent Local Rule 3-1 (c) required Oracle to provide "[a] chart *identifying specifically where each* limitation of *each* asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(c) (emphasis added). "Where the Accused Instrumentality includes computer software based upon source code made available to the patentee, patentees must provide '**pinpoint citations**' to the code identifying the location of each limitation." *Genentech, Inc. v. Trustees of U. of Penn*, 10-cv-2037, Dkt. No. 63 at *4 (N.D. Cal. Dec. 13, 2010) (citations omitted, emphasis added); *see also Vasudevan Software, Inc. v. International Business Machines Corp.*, No. 09-cv-05897, 2011 WL 940263 at *7 (N.D.Cal. February 18, 2011) ("the authority is clear that a plaintiff should provide citations once a plaintiff has had a sufficient opportunity to review the source code, at least with respect to contentions that are or may be based upon it.") (citations omitted).

Oracle's ICs fail to identify a substantial portion of the code that the Mitchell Report now cites as meeting the claim limitations of U.S. Patent No. RE38,104 ("the '104 patent"). One such instance pertains to the requirement in claim 11 for storing a numerical reference. (*See* Ex. B, '104 patent at claim 11 ("determining a numerical reference … <u>storing</u> said numerical references, and obtaining data in accordance to said numerical references" (emphasis added).) The Mitchell Report repeatedly points to code in the file DvmDex.h as allegedly satisfying the "storing" limitation of claim 11. (*See, e.g.,* Mitchell Report at ¶ 271 ("the DvmDex.h file also has dvmDexSetResolvedClass which serves to **store** the resolved symbolic reference after the class name gets resolved..." (emphasis in original)); *id*. at ¶ 277 ("[t]he DvmDex.h file contains the source code for the dvmDexSetResolvedMethod function, which serves to **store** the resolved symbolic reference…" (emphasis in original)); *see also id*. at ¶¶ 255, 270, 273, 279, 282, 287, 289, 292, and 296 (all nine paragraphs identify code in DvmDex.h as storing the reference).) It is evident from the Mitchell Report that Oracle's infringement claims rest on the "storing" limitation in claim 11 being allegedly performed by code in DvmDex.h. *But DvmDex.h is never referenced in Oracle's ICs*. (*See* Ex. C, Oracle's claim chart on the '104 patent (no mention of DvmDex.h).)

The issue here is straightforward. On the one hand, Oracle believes that it may rely on source code files not identified in its ICs for key elements of its infringement theories, so long as those files in some way relate to code identified in the ICs. (*See* Oracle's Opposition to Google's Précis Letter, Dkt. No. 380, at 1-2 (asserting that Oracle's ICs "quote from the Resolve.c source file" that "contains calls" to functions "implemented in the DvmDex.h source file" and thus while the "Report provides more detail," "the ICs disclose the role of that code.").) Google, on the other hand, maintains that Oracle's infringement theories for trial must be consistent with its infringement theories in its ICs. In other words, Oracle is limited to the source code (*i.e.,* the "pinpoint citations" required by the Patent Local Rules), that were identified in its ICs as allegedly meeting the asserted patent claims. Anything less violates the requirement that a plaintiff include "pinpoint citations" to the accused source code. *See Genentech* at *4. Indeed, by failing to include these files in its ICs, Oracle telegraphed an intention *not* to cite them and *not* to rely on them. *See* Dkt. No. 281 at *7. *See generally*, *Fleming v. Escort, Inc.*, No. 09-cv-105, 2011 WL 2173796 at *4 (D. Idaho June 2, 2011) (precluding a party's expert from relying upon "computer files [that] were not referenced in [its] chart accompanying its Invalidity Contentions" because the other party "had no way of knowing how these 12 files related in any way to the limitations and claims of the patents in dispute until [the expert] filed his expert report. That is precisely what Local Patent Rule 3.3 seeks to avoid.").

Oracle's late disclosure is especially egregious given that Android source code and documentation – including the newly identified files – were openly and freely available on the Internet *long before Oracle filed suit*, such that Oracle did not need formal discovery to develop its infringement theories. Moreover, Dr. Mitchell acknowledges that he personally "participated in the analysis and preparation of" the IC claim charts. (*See, e.g.,* Mitchell Report at ¶ 229.) Oracle therefore has no excuse for the discrepancies between the source code files identified in Oracle's ICs and what was eventually put forward in the Mitchell Report.

Accordingly, Google respectfully requests that the Court strike from the Mitchell Report ¶¶ 255, 270, 271, 273, 277, 279, 282, 287, 289, 292, and 296 which improperly refer to and rely upon the DvmDex.h file (and source code within that file) that was not identified in Oracle's ICs.

**CRITIQUE B – To Allege Infringement of Claim 1 in the '702 patent, the Mitchell Report Improperly Relies on Source Code Files That Were Not Identified in Oracle's ICs**

Similarly, paragraphs 459, 460, 461, 468, 476 and 478 of the Mitchell Report should also be stricken because they discuss and rely on source code files to meet a required element of claim 1 of the '702 patent (removing duplicates) that Oracle never identified in its ICs.

As noted above, Patent Local Rule 3-1 (c) required Oracle to provide "[a] chart *identifying specifically* where *each* limitation of *each* asserted claim is found within each Accused Instrumentality." (*Id.*, emphasis added.) And Oracle was also required to provide "pinpoint citations" to the allegedly infringing source code in its ICs.

A required element of Claim 1 of U.S. Patent No. 5,966,702 ("the '702 patent") is removing duplicated elements from class files. (*See* Ex. D, '702 patent at claim 1 ("determining plurality of duplicated elements … forming a shared table … <u>removing said duplicated elements</u> … and forming a multi-class file" (emphasis added).) As a preliminary matter, Oracle's ICs do not provide *any* pinpoint citations to source code for this claim element (*see* Ex. E at 13-17), as required by law and statute, and only makes passing references to a handful of source code files: DexFile.java, TypeIdsSection.java, TypeIdItem.java, ConstantPoolParser.java (*id*. at 17).

Putting that aside, the Mitchell Report now alleges that this required claim element of "removing . . . duplicated elements" occurs by way of a "TreeMap" structure (Mitchell Report at ¶ 458) – however, this infringement theory was never discussed or disclosed in Oracle's ICs. Indeed, Dr. Mitchell now refers to a number of source code files supporting this TreeMap process that were not identified in the ICs either. *See id*. at ¶ 459 (referring to code in files ClassDefsSection.java, UniformItemSection.java, Section.java); *id*. at ¶ 461 (referring to code in file FieldIdsSection.java and noting that "[t]his is the step at which removal of duplicate constants is performed"); *id*. at ¶ 468 ("…The TreeMap will not store more than one copy of a duplicated element. By way of example, the StringIdsSection.java code stores all the strings from the class files into a TreeMap object called "strings," thereby determining the duplicate strings among the class files.").

Dr. Mitchell expressly relies upon these files as his only basis for alleging that Android

implements the removal of duplicates:

> The third element of claim 1, recites "removing said duplicated elements from said plurality of class files to obtain a plurality of reduced class files." The Android dx tool removes the duplicated elements from the plurality of class files (e.g., as part of the process of forming the .dex file multiple copies of the duplicated elements are not added to the tables that will be used to form the .dex file) and **obtains a plurality of reduced class files in the form of the ClassDefSection** (the ClassDefSection including a subset of the code and data contained in the class files) in the manner discussed above and again here. In particular, and as described above in the Android code, as class files are processed to form a .dex file, **TreeMap is used to identify and remove duplicate elements from ClassDefSection** (which generally includes the Dalvik byte code associated with the input class files after the identified duplicates have been removed).

*Id.* at ¶ 476 (emphasis added); *see also id.* at ¶ 478 ("The information in the ClassDefsSection and the data as shown in the slide form the reduced class files").

In short, Oracle purposely chose to ignore this required claim limitation in its ICs – *failing to provide a single pinpoint citation to any source code*. Yet, Oracle now wants to present at trial a whole slew of newly identified source code to justify its allegations for this required claim element. Simply put, Oracle should not be allowed to change its theory this late in the case because the Patent Local Rules require early disclosure of such theories, and further, require leave to amend to change such theories. Accordingly, Google respectfully requests that the Court strike from the Mitchell Report ¶¶ 459, 460, 461, 468, 476 and 478 because they improperly refer to and rely upon the above files that were not identified in Oracle's ICs.

**CRITIQUE C** – **The Mitchell Report Improperly Includes Three Accused Products Not Identified by Oracle in its Infringement Contentions**

Oracle's infringement allegations should be limited to the specific products accused in the ICs: Google Dev Phones, Nexus One, Nexus S, HTC's EVO 4G, HTC's Droid Incredible, HTC's G2, Motorola's Droid, and Samsung's Captivate. (Ex. F, ICs at § I.B.) The Mitchell Report identifies three additional devices not included in Oracle's ICs, all of which should be stricken. (*See* Mitchell Report at ¶ 191 (adding the LG Optimus, HTC Droid Incredible 2 and the Motorola Atrix).)

Patent Local Rule 3-1 requires, in relevant part, that infringement contentions provide:

> **(b)** Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. ***This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known.*** Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> …
>
> **(d)** ***For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement***. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.
>
> …

(Emphasis added.) According to these rules, products accused of direct *or* indirect infringement must be explicitly identified in a plaintiff's infringement contentions. Oracle's generalized assertions of infringement by "Google devices running Android" or "other mobile devices running Android" are insufficient under the Patent Local Rules to extend Oracle's infringement allegations to cover unidentified products, as are attempts to suggest that the identified products are merely "representative." *See Bender v. Advanced Micro Devices, Inc.*, No. 09-cv-1149, 2010 U.S. Dist. LEXIS 11539 at 3 (N.D. Cal. February 1, 2010) ("even if [the plaintiff] can establish that it is appropriate to use representative claim charts, he has not in all instances adequately identified the accused products at issue. Pursuant to Rule 3-1(b), the patentee's identification of which accused products allegedly infringe cannot be so amorphous or imprecise so as to force the opposing party to essentially 'guess which versions of its products' are allegedly infringing. *InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 U.S. Dist. LEXIS 22736, at *6 (N.D. Cal. Nov. 26, 2003)"); *Bender v. Advanced Micro Devices, Inc.*, No. 09-cv-01152, 2010 U.S. Dist. LEXIS 89957 at *9 (N.D. Cal. July 29, 2010) ("plaintiff must identify each accused product and link it to a representative product [claim chart] in order to provide [the defendant] with fair notice of the specific products which are accused in this lawsuit.").

Some courts have held that a party may rely on representative products in ICs *to seek discovery* on similar products (*see, e.g., Honeywell Int'l, Inc. v. Acer America Corp.*, 655 F. Supp. 2d 650 (E.D.Tex. 2009)), however, parties need "good cause" to amend their contentions and identify new products. *See generally LG Elecs., Inc. v. Q-Lity Computer, Inc. v. Asustek Computer, Inc.*, 211 F.R.D. 360 (N.D. Cal. December 4, 2002); *Atmel Corp. v. AuthenTec, Inc.*, No. 06-cv-2138, 2008 U.S. Dist. LEXIS 10846 (N.D. Cal. January 31, 2008). In any event, fact discovery closed without Oracle ever seeking leave to amend its contentions to add newly released or newly identified products. In particular, Oracle never moved for leave to include the LG Optimus, HTC Droid Incredible 2 or the Motorola Atrix as accused products.

Determining which specific products stand accused is of paramount importance to get this case trial-ready and to better understand the full extent of Google's potential exposure regarding Oracle's indirect infringement allegations. Oracle's general accusation against Google's "Android platform" itself is untenable in many respects. First, Oracle's entire indirect infringement allegation is contingent on the same version of Android (*i.e.,* the exact same source code) being implemented in third party devices. Yet, third parties can modify Android source code before placing it on their devices, and Oracle's allegations must account for the specific source code in each of the devices it accuses of infringement. Oracle should not be allowed to hand-wave over its burdens of proof in the same manner it disregards the Patent Local Rules of this Court. Second, many asserted claims are "method" claims (*e.g.,* '104 patent claims 27 and 39; '702 patent claims 1 and 6), and as such, Oracle must demonstrate actual use of the patented functionality on an accused device – not just the capability in software code. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008) ("a method claim is directly infringed only if each step of the claimed method is performed"). Third, many asserted claims explicitly require physical components like a computer processor and memory (*e.g.,* '104 patent claims 22 and 40; '702 patent claims 13, 15 and 16) but Android itself is purely software, so alleged infringement of these claims must be directed at a physical device. Accordingly, Google respectfully requests that any assertions of patent infringement are limited to the products explicitly identified in Oracle's ICs.

**CONCLUSION**

Google will be unfairly prejudiced if Oracle is permitted to circumvent the Patent Local Rules and improperly introduce entirely new theories of liability in the Mitchell Report at this very late stage of the case, so close to trial. And Oracle has no excuse in this case, where it has targeted publicly available open source code.

Google does not seek an order to strike the Mitchell Report in its entirety, but rather to strike the sections that go beyond the allegations set forth in the infringement contentions. For the forgoing reasons, Google respectfully requests the Court grant the relief it deems appropriate, such as an order providing that Oracle and its experts cannot refer to or rely upon source code that was not specifically identified in the infringement contentions to support its allegations of infringement of the '104 patent (*i.e.,* ¶¶ 255, 270, 271, 273, 277, 279, 282, 287, 289, 292, and 296) and of the '702 patent (*i.e.,* ¶¶ 459, 460, 461, 468, 476 and 478), and that any assertions of patent infringement are limited to the products explicitly identified in the infringement contentions (*i.e.,* Google Dev Phones, Nexus One, Nexus S, HTC's EVO 4G, HTC's Droid Incredible, HTC's G2, Motorola's Droid, and Samsung's Captivate). Google further requests leave to file, at the appropriate time, a motion to strike or a motion-in-limine concerning additional portions of the Mitchell Report not raised in this motion.

| | | |
|---|---|---|
| 1 | DATED:  September 8, 2011 | **KEKER & VAN NEST, LLP** |
| 2 | | By:  /s/ Christa M. Anderson |
| 3 | | ROBERT A. VAN NEST (SBN 84065) |
| 4 | | rvannest@kvn.com<br>CHRISTA M. ANDERSON (SBN 184325) |
| 5 | | canderson@kvn.com<br>KEKER & VAN NEST LLP |
| 6 | | 633 Battery Street |
| 7 | | San Francisco, CA 94111-1809<br>Telephone:  (415) 391-5400 |
| 8 | | Facsimile:  (415) 397-7188 |
| 9 | | SCOTT T. WEINGAERTNER (*Pro Hac Vice*) |
| 10 | | sweingaertner@kslaw.com<br>ROBERT F. PERRY |
| 11 | | rperry@kslaw.com<br>BRUCE W. BABER *(Pro Hac Vice)* |
| 12 | | bbaber@kslaw.com<br>KING & SPALDING LLP |
| 13 | | 1185 Avenue of the Americas |
| 14 | | New York, NY 10036-4003<br>Telephone:  (212) 556-2100 |
| 15 | | Facsimile:   (212) 556-2222 |
| 16 | | DONALD F. ZIMMER, JR. (SBN 112279) |
| 17 | | fzimmer@kslaw.com<br>CHERYL A. SABNIS (SBN 224323) |
| 18 | | csabnis@kslaw.com<br>KING & SPALDING LLP |
| 19 | | 101 Second Street – Suite 2300 |
| 20 | | San Francisco, CA 94105<br>Telephone: (415) 318-1200 |
| 21 | | Facsimile:  (415) 318-1300 |
| 22 | | IAN C. BALLON (SBN 141819) |
| 23 | | ballon@gtlaw.com<br>HEATHER MEEKER (SBN 172148) |
| 24 | | meekerh@gtlaw.com<br>GREENBERG TRAURIG, LLP |
| 25 | | 1900 University Avenue |
| 26 | | East Palo Alto, CA 94303<br>Telephone: (650) 328-8500 |
| 27 | | Facsimile: (650) 328-8508 |
| 28 | | ATTORNEYS FOR DEFENDANT<br>GOOGLE INC. |

I hereby attest that Christa M. Anderson concurs in the e-filing of this document.

     /s/ Cheryl A. Sabnis /s/
     Cheryl A. Sabnis