1  KEKER & VAN NEST LLP
   ROBERT A. VAN NEST - #84065
2  rvannest@kvn.com
   CHRISTA M. ANDERSON - #184325
3  canderson@kvn.com
   STEVEN A. HIRSCH - #171825
4  shirsch@kvn.com
   633 Battery Street
5  San Francisco, CA  94111-1809
   Tel:    415.391.5400
6  Fax:    415.397.7188

7  KING & SPALDING LLP
   SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
8  sweingaertner@kslaw.com
   ROBERT F. PERRY
9  rperry@kslaw.com
   BRUCE W. BABER (*Pro Hac Vice*)
10 1185 Avenue of the Americas
   New York, NY  10036
11 Tel:    212.556.2100
   Fax:    212.556.2222

12
   Attorneys for Defendant
13 GOOGLE INC.

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel:    415.318.1200
Fax:    415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:    650.328.8500
Fax:    650.328.8508

14

15                        UNITED STATES DISTRICT COURT

16                      NORTHERN DISTRICT OF CALIFORNIA

17                         SAN FRANCISCO DIVISION

18

19 ORACLE AMERICA, INC.,                    Case No. 3:10-cv-03561-WHA

                              Plaintiff,    **MOTION FOR RELIEF FROM
20                                          NONDISPOSITIVE PRETRIAL ORDER
                                            OF MAGISTRATE JUDGE**
21    v.

22 GOOGLE INC.,                             Date:  October 13, 2011
                                            Time: 8:00 a.m.
23                            Defendant.    Judge:  The Honorable William Alsup

24                                          Date Comp. Filed:  October 27, 2010
                                            Trial Date:  October 31, 2011
25

26

27

28

       MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
                           CASE NO. 3:10-cv-03561-WHA

1

**NOTICE OF MOTION AND MOTION**

2     PLEASE TAKE NOTICE THAT at 8:00 a.m. on October 13, 2011, or as soon thereafter

3 as the matter can be heard, before The Honorable William H. Alsup, in the United States District

4 Court for the Northern District of California, Defendant Google Inc. ("Google") will and hereby

5 does move for relief from Magistrate Judge Ryu's nondispositive orders holding that attorney-

6 client privilege does not protect the Lindholm email and drafts thereof.

7     This motion is based on this Notice of Motion and Motion, the attached Memorandum,

8 the pleadings and papers on file in this action, and on all other matters of record.

9

**REQUESTED RELIEF**

10     Google seeks the relief requested in the accompanying Proposed Order.

11

**MEMORANDUM IN SUPPORT OF OBJECTIONS**

12

**I.      INTRODUCTION**

13     Thirty years ago, the Supreme Court issued a landmark ruling recognizing the importance

14 of allowing corporate counsel to communicate confidentially with low- and mid-level employees

15 when investigating possible legal claims against the corporation.  In that decision, *Upjohn Co. v.*

16 *United States*, 449 U.S. 383 (1981), the Court held that the effectiveness of such investigations

17 depends upon a broadened attorney-client privilege, extending beyond the corporation's "control

18 group" of top-level officers to include communications with lower-level employees, who often

19 possess the knowledge that the attorney needs if he is to render sound legal advice.

20     Now, in a ruling that flouts *Upjohn*'s letter and spirit, the Magistrate in this case has

21 compelled the production of a confidential email communication between Google engineer Tim

22 Lindholm and Google in-house counsel Ben Lee (among others).  The communication concerned

23 an investigation that Mr. Lindholm conducted at the direction of Google's lawyers as part of the

24 legal department's effort to evaluate this lawsuit for the company's senior management.  This

25 was a classic *Upjohn* scenario—a corporation asking its counsel to communicate with a lower-

26 level employee to investigate a threatened legal claim against the corporation.  The final email

27 containing that communication was listed, twice, on Google's privilege log.  The Magistrate also

28 compelled production of nine drafts of that email, which were created automatically by a

1

580543.05

computer backup system during the five minutes in which Mr. Lindholm drafted his message.

For reasons set forth below, the Magistrate's rulings were contrary to law and founded upon clearly erroneous findings of fact. Without any evidentiary support, the Magistrate speculated that the Lindholm email ***could*** concern ordinary, non-privileged business matters— *i.e.*, business negotiations—rather than Google's internal legal investigation of Oracle's claims. The Magistrate then held that Google had failed to disprove that possibility by submitting evidence linking the email to Google's investigation.

To reach that conclusion, the Magistrate had to ignore both intrinsic and extrinsic evidence that the email was privileged. The intrinsic evidence that she ignored included the facts that the email was addressed to a Google attorney, that it said "Attorney Work Product" and "Google Confidential" at the top, and that it concerned an attempt to investigate alternatives to some of the very technology that Oracle had accused Google of infringing. While these facts may not be dispositive, they cannot be simply ignored.

The Magistrate also ignored extrinsic evidence, in the form of declarations by Mr. Lindholm and Mr. Lee, expressly linking the email to Google's legal investigation and specifically refuting the Magistrate's speculation that the email was intended to convey ordinary business information. Although the Magistrate credited the Lindholm and Lee declarations, she ignored the fact that they confirm the link between the Lindholm email and Google's legal investigation of Oracle's claims—the very link that she found to be lacking.

The Magistrate's approach to assessing privilege claims is contrary to *Upjohn*'s teachings and intent because it effectively strips privilege from communications by lower- and mid-level employees to corporate counsel unless those employees are sufficiently savvy and detail-oriented to include specific references to the legal investigation in ***each*** of those communications. Under the Magistrate's approach, the employee's failure to include such references in each communication cannot be remedied later by declarations explaining the connection between the communication and the legal investigation.

Accordingly, the Court should reject the Magistrate's conclusions, sustain Google's objections, and grant the relief set forth in the accompanying Proposed Order.

MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
CASE NO. 3:10-cv-03561-WHA

## II.     STATEMENT OF FACTS

**A.     Google's evidentiary submission to Magistrate Ryu.**

In opposing Oracle's motion to compel, Google submitted *in camera* to Magistrate Judge Ryu the final Lindholm email and all drafts thereof.  Google also filed five declarations regarding the Lindholm email or otherwise responding to Oracle's motion.[1]  The declarations provided the undisputed facts necessary to establish privilege, as summarized below.

**1.     Oracle's threatened litigation and Google's investigation of Oracle's claims.**

On July 20, 2010, Google Senior Counsel Ben Lee attended a meeting at Google headquarters with attorneys representing Oracle.[2]  At that meeting, Oracle asserted that Android infringed on several Oracle patents, which it specifically identified for the very first time.[3]  Oracle threatened to sue Google over those patents.[4]  After the meeting, Mr. Lee asked Google engineer Tim Lindholm to gather information related to Oracle's infringement claims in order to assist Google's legal analysis of those claims.[5]

On July 30, 2010, Google General Counsel Kent Walker convened a meeting to formulate a response to Oracle's infringement claims.[6]  Mr. Lee and Mr. Lindholm attended that meeting, as did Google's top management.[7]  At the meeting, Mr. Walker instructed Mr. Lindholm and Google engineer Dan Grove to continue to work under Mr. Lee's supervision to gather information about Oracle's infringement claims in order for Mr. Lee and Mr. Walker to develop legal advice and convey that advice to Google's executive management.[8]

---

[1] Google filed three "corrected" declarations to reflect its discovery that one of the three versions of the Lindholm email listed on Google's privilege log was a draft, not a copy of the final email. The corrected declarations are otherwise identical in substance to the original declarations.

[2] Ex. A. (Corrected Declaration of Benjamin Lee ("Lee Decl.")) at ¶ 5.

[3] Ex. A (Lee Decl.) at ¶ 5.

[4] Ex. A (Lee Decl.) at ¶ 5.

[5] Ex. A (Lee Decl.) at ¶ 6; Ex. B (Corrected Declaration of Tim Lindholm ("Lindholm Decl.")) at ¶ 5.

[6] Ex. A (Lee Decl.) at ¶ 7.

[7] Ex. A (Lee Decl.) at ¶ 7; Ex. B (Lindholm Decl.) at ¶ 6.

[8] Ex. A (Lee Decl.) at ¶ 8; Ex. B (Lindholm Decl.) at ¶ 7; Ex. C (Response Declaration of Tim Lindholm ("Lindholm Resp. Decl.")) at ¶ 7-8.

### 2.    Lindholm's email regarding technology implicated by Oracle's claims.

On August 6, 2010, Mr. Lindholm sent an email to Mr. Lee and to Andy Rubin (then a Google Vice President in charge of Android).[9]  The final version of the email, sent at 11:05 a.m., contained the phrases "Attorney Work Product" and "Google Confidential" at the top, and was listed twice on Google's privilege log.[10]  Mr. Lindholm's declaration expressly states that his email "report[ed] investigations and analyses *that Mr. Grove and I conducted at the request of Google General Counsel Kent Walker, under the supervision of Mr. Lee, and in anticipation of Oracle's threatened lawsuit.*"[11]  Likewise, Mr. Lee's declaration states:  "*On or about August 6, 2010, I received an email from Mr. Lindholm regarding the investigation Mr. Walker and I had asked him to conduct.*  On information and belief, I understand that two copies of this email were listed on Google's privilege log as entries 2551 and 5513 and that one copy of it has been submitted *in camera* to the Court."[12]  Mr. Lindholm also specifically declared that his email *did not* contain "general business advice" about Android.[13]  Rather, Mr. Lindholm sent the email to assist Mr. Lee and Mr. Walker in their efforts to develop legal advice regarding Oracle's infringement claims and to convey that advice to Google's executive management.[14]

### 3.    Google's inadvertent production of eight "auto-saves" of the Lindholm email.

Google inadvertently produced to Oracle eight drafts of the Lindholm email.[15]  The drafts are "snapshots" of the email that Mr. Lindholm ultimately sent, taken at eight different stages of preparation during the roughly four-minute period between 11:01 a.m. and 11:04 a.m.[16]  None of the eight inadvertently produced drafts contained the phrases "Attorney Work Product" or "Google Confidential" because that was one of the last things that Mr. Lindholm wrote before

---

[9] Ex. A (Lee Decl.) at ¶ 9; Ex. B (Lindholm Decl.) at ¶ 8.

[10] Ex. A (Lee Decl.) at ¶ 9; Ex. B (Lindholm Decl.) at ¶ 9.

[11] Ex. B (Lindholm Decl.) at ¶ 14 (emphasis added).

[12] Ex. A (Lee Decl.) at ¶ 9 (emphasis added).

[13] Ex. C (Lindholm Resp. Decl.) at ¶ 7.

[14] Ex. C (Lindholm Resp. Decl.) at ¶¶ 7-8.

[15] A ninth draft of the email was listed on Google's privilege log as entry 5512.

[16] Ex. B (Lindholm Decl.) at ¶ 11.

580543.05

sending the email.[17]  Likewise, none of those eight drafts contained an addressee in the "To" field because that was the last thing Mr. Lindholm wrote.[18]  Because the Lindholm drafts lack these obvious indicia of privilege, Google's electronic screening mechanisms did not catch those drafts before production.[19]  But Google did designate the eight inadvertently produced drafts as "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY," pursuant to the stipulated protective order in this case.[20]

**B.    Oracle's disclosure of the Lindholm email and Google's immediate clawback.**

On July 21, 2011, Oracle twice disclosed in open court the contents of an auto-save of the Lindholm email without providing prior notice to Google.  Oracle's disclosure violated the protective order, which states that "[p]arties shall give the other parties notice if they reasonably expect a deposition, hearing, or other proceeding to include Protected Material[.]"[21]

The first disclosure occurred in a telephone conference with Magistrate Judge Ryu.  Oracle's counsel read the email into the record without giving Google a copy of the email or any production number.  The second disclosure occurred in a *Daubert* hearing before this Court.  Oracle included a draft of the Lindholm email in an 80-page binder that it handed to Google at the hearing.  During the hearing, Oracle's counsel read the email into the record, implying that the draft was an email that Mr. Lindholm actually had sent.  The Court questioned Google's counsel about the email, and counsel answered the questions without any opportunity to review the draft, let alone an opportunity to determine that the draft was an ***auto-save*** of a privileged email sent to Google Senior Counsel Ben Lee.  After the *Daubert* hearing, Google investigated the issue, determined that the Lindholm email was in fact a draft of an email that had been listed twice on Google's privilege log, and immediately clawed back the eight inadvertently produced

---

[17] Ex. B (Lindholm Decl.) at ¶ 9.

[18] Ex. B (Lindholm Decl.) at ¶ 9.

[19] Ex. D (Corrected Declaration of Kristin Zmrhal ("Zmrhal Decl.")) at ¶¶ 10-15.

[20] Dkt. No. 66 at 2:26-3:2.

[21] Dkt. No. 66 at 7:1-4.

MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
CASE NO. 3:10-cv-03561-WHA

drafts of the Lindholm email.

Oracle then moved Magistrate Judge Ryu to compel production of the Lindholm email and all drafts thereof.[22]

**C.     The proceedings before Magistrate Judge Ryu.**

On August 25, 2011, Magistrate Ryu heard argument on Oracle's motion to compel.  At the outset of the hearing, she announced her tentative ruling granting the motion.  Later that day, she issued a written order requiring Google to produce the final Lindholm email and all related drafts "immediately."  She issued a written statement of her reasons the next day.

Magistrate Ryu made three significant findings that Google does ***not*** challenge.

***First***, the Magistrate concluded, based on her *in camera* review of the documents, that "they form a sequence of automatically saved drafts of an email that was created during a four minute span before being sent."[23]  And the Magistrate correctly recognized that "***if [the final version of the Lindholm Email] is privileged, then its drafts are as well.***"[24]

***Second***, the Magistrate stated that she did not question the honesty or integrity of Google's declarants.  She noted that "it may well be that . . . what is said in the declarations is completely accurate . . . but ***that doesn't mean that this e-mail fell within [the] category***" of documents relating to Google's legal investigation of Oracle's claims.[25]

***Third***, Magistrate Ryu gave no credence to Oracle's arguments that the email should be produced because (in Oracle's erroneous view) its contents will help Oracle prove willful infringement.  That argument was rightly rejected.  "The principal difference between the attorney-client privilege and the work product doctrine, in terms of the protections each provides, is that the privilege cannot be overcome by a showing of need, whereas a showing of need may justify discovery of an attorney's work product."  *Admiral Ins. Co. v. United States Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citation omitted).  Thus, "[r]elevance . . . is not the standard for

---

[22] Dkt. No. 277.

[23] Dkt. No. 361 at p. 2 n.3.

[24] Dkt. No. 361 at p. 4:15-16.

[25] Ex. E (Discovery Hearing Tr.) at 11:15-21 (emphasis added); *id.* at 23:23-24:19.

determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude [that] the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 293 (D. Mont. 1998).

Despite making these findings, the Magistrate's written order concluded that, based on "the contents of the email itself" and on the "many basic gaps in the factual record that Google failed to fill," Google had failed to prove that the Lindholm email ever was privileged.[26] Specifically, the Magistrate held that Google had failed to establish "the first three prongs of the attorney-client privilege test, namely that the Lindholm Email constitutes a communication related to the purpose of obtaining legal advice from a legal advisor in his capacity as such."[27] According to the Magistrate, Google's declarants had failed to "connec[t] the dots" by *specifically linking* the Lindholm email to the pre-litigation investigation described in the declarations.[28]   The Magistrate's reasons for this conclusion are explored in Part III.B, below.

The Magistrate ordered Google to produce the emails immediately, and she denied Google's motions to seal or redact references to the emails in the hearing transcripts.[29]   Google produced the final Lindholm email and all drafts thereof to Oracle on August 26, 2011, accompanied by a written assertion of privilege and a reservation of rights to claw the documents back if this Court or the Federal Circuit finds that they are privileged.[30]

## III.   OBJECTIONS

### A.   Standard of review.

Federal Rule of Civil Procedure 72(a) states that, when timely objections are lodged to a magistrate's nondispositive ruling, "[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law."

---

[26] Dkt. No. 361 at 5:5-8.

[27] Dkt. No. 361 at 4:18-21.

[28] Ex. E (Discovery Hearing Tr.) at 24:9-12.

[29] Dkt. Nos. 355, 356, and 360.

[30] Producing documents under compulsion does not waive privilege if reasonable efforts are taken to protect the privilege. *See Gomez v. Vernon*, 255 F.3d 1118, 1131-32 (9th Cir. 2001);

1 | **B.** **The Magistrate's reasons for finding the attorney-client privilege inapplicable are clearly erroneous because they ignore intrinsic and extrinsic evidence of privilege, and also are contrary to law because they strip a lower-level employee's communications with in-house counsel of privilege unless the employee refers expressly to lawyers, litigation, or a legal investigation in *each* communication.**

The attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn*, 449 U.S. at 389. "The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id.* at 390-91. The privilege therefore "protect[s] not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390; *see also United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996); *Admiral Ins. Co.*, 881 F.2d at 1492-93; *Kimberly-Clark Corp. v. Tyco Healthcare Retail Group*, No. 05-C-985, 2007 WL 1246411 (E.D. Wis. Apr. 27, 2007).

The present dispute concerns a classic *Upjohn* scenario in which corporate counsel (Ben Lee and Kent Walker) enlisted the help of lower-level employees (Tim Lindholm and Dan Grove) to investigate potential legal claims against the corporation. But the Magistrate concluded that Mr. Lindholm's email did not warrant protection under *Upjohn* because Google had failed to establish "the first three prongs of the attorney-client privilege test, namely that the Lindholm Email constitutes a communication related to the purpose of obtaining legal advice from a legal advisor in his capacity as such." To reach that conclusion in the face of the contrary evidence set forth above at Part II, the Magistrate adopted a novel four-step methodology:

*First*, the Magistrate ignored all *intrinsic* evidence that the communication is privileged—*e.g.,* the fact that the email is addressed to an attorney, that it says "Attorney Work Product" and "Google Confidential" at the top, and that it concerns the search for alternatives to technology that Oracle was then claiming Google infringed. *Second*, the Magistrate ignored all *extrinsic* evidence that the communication is privileged—*e.g.*, declarations by the email's author and by the attorney to whom the email was sent, stating that the email relates directly and exclusively to Google's legal investigation of Oracle's claims. *Third*, the Magistrate speculated

---

*Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 650-51 (9th Cir. 1978).

MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
CASE NO. 3:10-cv-03561-WHA

580543.05

1    about then-occurring non-legal business activities to which the communication *might* relate if

2    viewed out of context and stripped of all indicia of privilege—a conjecture unsupported by any

3    evidence.  *Fourth* and finally, the Magistrate declared that the party asserting the privilege had

4    failed to carry its burden of disproving her speculations about how the communication might

5    concern ordinary business matters as opposed to a legal investigation.

6          Employing this methodology, the Magistrate set forth seven reasons, which Google

7    discusses and objects to below, for concluding that the Lindholm email was not privileged.

8          **1.      "[Former Google in-house counsel Ben] Lee . . . did not indicate that he
                     reviewed the Email and could competently represent that it was connected to
9                    work that he requested from Lindholm as part of the provision of legal
                     advice he describes in his declaration."[31]**

10   Objection:  clearly erroneous and contrary to law.  Mr. Lee states: "On or about August 6,

11   2010, I received an email from Mr. Lindholm *regarding the investigation Mr. Walker and I had*

12   *asked him to conduct*."[32]  The Magistrate appears to have concluded that Mr. Lee's statement

13   lacked foundation because he did not add:  "I know what Mr. Lindholm's email was about

14   *because I read it*."  Surely that statement is too obvious to require when the declarant declares

15   that he received the email in question and describes what it was about.

16         **2.      "Neither Lee nor Lindholm discusses whether, during the time period in
                     question, they were communicating with each other solely about the legal
17                   advice they each describe.  In other words, at that time, Lindholm may well
                     have been communicating with Lee about other non-privileged matters,
18                   including the business of negotiating for a Java license."[33]**

19   Objection:  clearly erroneous and contrary to law.  Mr. Lee and Mr. Lindholm expressly

20   declared that Mr. Lindholm's August 6, 2010 email addresses the investigation that Mr. Lee and

21   Google General Counsel Kent Walker had asked Mr. Lindholm to undertake, under Lee's

22   direction, in response to Oracle's infringement claims and in anticipation of Oracle's threatened

23   lawsuit.[34]  There is no basis in the record or elsewhere for the Magistrate's counterfactual

24   speculation that Mr. Lindholm and Mr. Lee "may well have been" communicating about

25

26   [31] Dkt. No. 361 at 5:9-11.

27   [32] Ex. A (Lee Decl.) at ¶ 9 (emphasis added).

     [33] Dkt. No. 361 at 5:11-15.

28   [34] Ex. A (Lee Decl.) at ¶¶ 5-10; Ex. B (Lindholm Decl.) at ¶¶ 4-8; 14.

                                              9

580543.05

something else.  Indeed, Mr. Lindholm's declaration *specifically excluded* the possibility that the email was about anything else, including "general business advice" related to Android.[35]

### 3.   "[N]either Lee nor Lindholm states that Rubin, Page, and Brin were involved in the described efforts to formulate legal advice, nor do they attempt to explain why these individuals feature so prominently in the . . . Email."[36]

Objection:  clearly erroneous and contrary to law.  There is no mystery as to why Google co-founders Larry Page and Sergey Brin and Android Chief Andy Rubin "feature[d] so prominently" in Mr. Lindholm's email.[37]  As stated in Mr. Lee's and Mr. Lindholm's declarations, at that time, Google had just learned that software giant Oracle was threatening to sue Google on a claim that Google's Android platform infringed Oracle's patents and copyrights.  Oracle has claimed billions of dollars in damages from that infringement.  It is inconceivable that Google's top management would *not* instruct the company's lawyers to analyze and investigate a claim of such magnitude.  Indeed, Mr. Lindholm's declaration confirms that Google's top management attended the July 30, 2010 meeting at which Mr. Lindholm discussed Oracle's infringement claims with Google's lawyers.  Mr. Lindholm's declaration also shows that he understood that his investigation would assist Mr. Lee and Mr. Walker in their efforts to "develop legal advice and convey that advice to Google's executive management."[38]  Thus, the references to Page, Brin, and Rubin are consistent with and explained by the Lee and Lindholm declarations.

Moreover, the Magistrate appears to have assumed that a legal investigation can be ordered or supervised either by top management, or by the company's general counsel—but

---

[35] Ex. C (Lindholm Resp. Decl.) at ¶ 7.  *Cf. Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995) (upholding privilege based on in-house counsel's uncontradicted declaration that he prepared lists of employees for termination in order to give legal advice and "did not render business advice").

[36] Dkt. No. 361 at 5:16-18.

[37] In a footnote, the Magistrate speculates that Lindholm's references to "top management" or "executive management" "could" apply to "a multitude of individuals and not necessarily Page, Brin, and Rubin."  Dkt. No. 361 at 6 n.4.  Perhaps it "could"—but it doesn't, as the email itself confirms when it references those individuals.  Google has the burden of establishing privilege.  It does not have the burden of negating every alternative scenario that a creative mind could construct.  Moreover, the fact that the Lindholm and Lee declarations do not also identify Page, Brin, and Rubin by name does not negate the facts that establish the privilege.

[38] Ex. C (Lindholm Resp. Decl.) at ¶ 7.

580543.05

never by both.  This is not the law.  Leading precedents upholding the corporate attorney-client privilege involve situations in which "senior management" instructed managers to give statements to the corporation's counsel (*see Admiral Ins.*, 881 F.2d at 1489, 1493) or a board chairman asked general counsel to investigate questionable corporate conduct by interviewing lower-level employees (*see Upjohn*, 449 U.S. at 387).  Far from destroying the privilege, the involvement of top management confirms the importance of the legal investigation.

> **4.      "Nothing in the content of the Email indicates that Lindholm prepared it in anticipation of litigation or to further the provision of legal advice.  The Email is not directed to [attorneys] Walker or Lee . . . [but rather] to Rubin, the Vice President of Android.  It expressly states that Page and Brin (and not the lawyers) instructed Lindholm and Grove to undertake the technological research discussed in the Email."[39]**

Objection:  clearly erroneous and contrary to law, for at least three reasons.

*First*, the "content of the Email" *does* indicate that it was prepared in anticipation of litigation and to further the provision of legal advice, because it includes the words "Attorney Work Product" and "Google Confidential," was sent to the Google in-house lawyer assigned to supervise Lindholm's investigation of facts related to Oracle's claims, and concerned alternatives to the technology that Oracle then was claiming Google had infringed.

*Second*, the email most assuredly *is* "directed to" Lee.  It says so, right in the "To:" field.  While the salutation is to Mr. Rubin, there is no legal rule that the attorney must be named in the salutation—especially when the communication says "Attorney Work Product" and "Google Confidential" at the top and is directly addressed to an attorney.  While the fact that the communication is addressed to a lawyer may not be dispositive in and of itself, it cannot simply be ignored.  *See In re OM Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005).

*Third*, the email does *not* "expressly stat[e] that Page and Brin (and not the lawyers)" instructed Lindholm to conduct the pre-litigation investigation.  "[A]nd not the lawyers" is an inference that the Magistrate mistakenly drew after disregarding (a) the confidentiality statements at the top of the email, (b) the fact that the email is addressed to a lawyer, (c) the fact that the email discusses alternatives to using a technology that had just been accused by Oracle

---

[39] Dkt. No. 361 at 5:21-25.

MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
CASE NO. 3:10-cv-03561-WHA

580543.05

1    (in a Rule 408 communication) of infringing intellectual-property rights, and (d) the many

2    statements in Lee's and Lindholm's declarations explaining that the email reported the results of

3    a pre-litigation investigation launched in response to Oracle's claims.  Moreover, the Lindholm

4    declaration states that ***both*** top management ***and*** Google's lawyers attended the July 30, 2010

5    meeting at which Google General Counsel Kent Walker asked Mr. Lindholm to, in the

6    Magistrate's words, "undertake the technological research discussed in the Email."  In so doing,

7    Mr. Walker presumably had the support and approval of Google's top management, including

8    Page and Brin.  Again, the Magistrate assumes that the involvement of top management renders

9    any transaction presumptively non-legal—a proposition unsupported by law or logic.

10      **5.**      **"The Email text also never mentions legal advice, lawyers, litigation, Oracle,**
              **or patent infringement; rather, it focuses on technological aspects of Chrome**
11             **and Android, and the need to negotiate a license for Java. . . . [T]he Email**
              **appears to be a strategy discussion intended to address business negotiations**
12             **regarding a Java license . . . ."[40]**

13      Objection:  clearly erroneous and contrary to law.  The Magistrate held, in substance, that

14   a communication cannot be related to a corporate legal investigation if it fails to refer to

15   litigation or to request legal assistance.  But a privileged communication need not expressly

16   request legal assistance.  *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir.

17   2000); *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977).  And it would

18   eviscerate the privilege to hold that ***each*** communication generated by a corporate legal

19   investigation must contain boilerplate assertions about the investigation to remain privileged.

20      The Magistrate's conclusion that the Lindholm email "appears to be a strategy

21   discussion" about licensing negotiations rather than anything litigation-related is not supported

22   by any factual evidence and rests on counterfactual speculation.  The Magistrate does not

23   question the credibility of the declarations stating that Ben Lee supervised Mr. Lindholm's

24   investigation of the facts related to Oracle's infringement claims.  But the Magistrate failed to

25   consider the implications of that undisputed fact.  Ben Lee is just one of more than 200 in-house

26   attorneys that Google employs world-wide.[41]  Yet he is the ***only*** Google in-house attorney to

27   _____

     [40] Dkt. No. 361 at 6:3-5, 12-13.

28   [41] *See* David Hechler, "Best Legal Department 2011 Winner:  Google," May 19, 2011, Law.com,

                                          12

580543.05

1    whom Mr. Lindholm addressed an email discussing alternatives to using Oracle's allegedly

2    infringed technology; he was present at the July 20, 2010 meeting where Oracle presented its

3    infringement claims; and he was the attorney initially tasked with leading the investigation of

4    Oracle's claims.  It is no coincidence that Mr. Lindholm sent his email to Mr. Lee.

5          The Magistrate's speculation likewise fails to consider the timing of Mr. Lindholm's

6    email—sent just one week after his July 30, 2010 meeting with Google lawyers and top

7    management, and less than three weeks after Oracle had presented its infringement claims and

8    had threatened Google with litigation.  Again, it is no mere coincidence that Mr. Lindholm sent

9    his email to Mr. Lee in the immediate wake of Oracle's threatened lawsuit, and while Google

10   was attempting to investigate the facts underlying the technology at issue in that lawsuit.[42]

11        **6.      "Lee's role as in-house counsel warrants heightened scrutiny. . . . [Google]**
               **'must make a "clear showing" that the "speaker" made the communication[]**
12             **for the purpose of obtaining or providing legal advice.'" . . . Google has made**
               **no such showing."[43]**
13

14        Objection:  clearly erroneous and contrary to law.  The Magistrate derives this heightened

15   "clear showing" standard (applicable only to communications with in-house counsel) from a

16   district-court case, *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D.

     Cal. 2002), that relied in turn on a D.C. Circuit case, *In re Sealed Case*, 737 F.3d 94, 99 (D.C.
17
     Cir. 1984).  But the Ninth Circuit takes a different view.  It has held that, "[i]n determining the
18
     existence of a privilege, *no attempt is made to distinguish between 'inside' and 'outside'*
19
     *counsel.*"  *United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996) (emphasis added) (citation,
20
     brackets, and internal quotation marks omitted).  Instead, courts should adhere to "'the principle
21
     that the attorney-client privilege *will* apply to confidential communications concerning legal
22
     matters made between a corporation and its house counsel'"—a principle that "'has been
23

---

24    http://www.law.com/jsp/cc/PubArticleCC.jsp?id=1202494152428 (last visited Sept. 2, 2011).

25   [42] Even if the Lindholm email relates solely to "business negotiations" (which it doesn't), such
     communications can be privileged, too.  *See Chen*, 99 F.3d at 1501-02 (emphasis added).  And
26   there is no bright line between license negotiations and IP litigation.  Licenses are a typical
     component of settlements involving an IP dispute.  *See, e.g., Jacobs v. Nintendo of Am., Inc.*, 370
27   F.3d 1097, 1098-99 (Fed. Cir. 2004); *Therasense, Inc. v. Becton, Dickinson & Co.*, C 04-02123
     WHA, 2008 WL 2323856 at *6 (N.D. Cal. May 22, 2008).
28   [43] Dkt. No. 361 at 7:9-18.

MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
CASE NO. 3:10-cv-03561-WHA

580543.05

1   followed with virtual unanimity by American courts.'"  *Id.* (emphasis added) (citations omitted).

2       Even if the D.C. Circuit's "clear showing" doctrine applies here (which it does not),

3   Google has met that standard.  The Lindholm and Lee declarations clearly show that Mr.

4   Lindholm's email concerned Google's legal investigation of Oracle's claims—not licensing

5   negotiations carried out in the ordinary course of business.  Moreover, the Magistrate failed to

6   mention an important corollary of the "clear showing" doctrine that supports Google's position

7   (if the doctrine applies at all).  Courts applying the "clear showing" doctrine also observe that

8   "[o]ne important indicator of whether a[n in-house] lawyer is involved in giving legal advice or

9   [is acting] in some other activity is his or her place on the corporation's organizational chart.

10  *There is a [rebuttable] presumption that a lawyer in the legal department or working for the*

11  *general counsel is most often giving legal advice*, while the opposite presumption applies to a

12  lawyer . . . who works for . . . some other seemingly management or business side of the house."

13  *Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9, 12 (D.D.C. 1998) (emphasis added).

14  Accordingly, even under the "clear showing" standard, Ben Lee's employment in Google's legal

15  department gives rise to a presumption that he was giving legal advice about Oracle's claims and

16  litigation threat, as opposed to non-legal business advice about unrelated licensing negotiations.

17      7.    **"The reactions of Google counsel when presented with [an incomplete draft**
           **of] the Lindholm Email in court reinforce the weaknesses of Google's**
18         **contention that the Email warrants attorney-client privilege. . . ."**[44]

19      Objection:  clearly erroneous and contrary to law.  The surprised reaction of a lawyer

20  confronted for the first time with an incomplete draft of a document that has been stripped of its

21  most conspicuous intrinsic indicia of privilege is utterly irrelevant, especially in a case where

22  literally millions of pages of documents have been produced.

23      The Magistrate's reasoning poses special dangers in the circumstances of modern

24  litigation, where auto-saved and manually saved drafts of word-processed documents and emails

25  are likely to be inadvertently produced from time to time, for reasons set forth in the Zmrhal

26  Declaration (Ex. D hereto).  It is unrealistic, and harmful to the values protected by the attorney-

27  client privilege and the *Upjohn* decision, to assume that the attorneys working on a case always

28

1    will be able to recognize such documents for what they are at first glance.

2    **C.    The Magistrate cited the same clearly erroneous and legally deficient grounds for denying work-product protection to the Lindholm email.**

3
       "The work product doctrine extends beyond confidential communications between the
4
       attorney and client to 'any document prepared in anticipation of litigation by *or for* the
5
       attorney.'"  *United States v. Bergonzi,* 216 F.R.D. 487, 494-95 (N.D. Cal. 2003) (emphasis
6
       added) (quoting *In re Columbia/HCA Healthcare Billing Practices Litig.,* 293 F.3d 289, 304 (6th
7
       Cir. 2002)); *see also ChevronTexaco Corp.,* 241 F. Supp. 2d at 1081.  The Lindholm email is
8
       exactly that—a document prepared in anticipation of Oracle's lawsuit for Google attorney Ben
9
       Lee, among others.
10
             The Magistrate denied the Lindholm email work-product protection "[f]or the same
11
       reasons discussed" in its treatment of the attorney-client privilege.[45]  Google therefore objects to
12
       the Magistrate's ruling on the same grounds discussed at Part III.B, above.
13
                                    **IV.    CONCLUSION**
14
             For the reasons stated above and in all the papers, declarations, and exhibits submitted to
15
       Magistrate Ryu, both publicly and *in camera*, the Court should grant the relief requested in the
16
       accompanying Proposed Order.
17

18
       Dated:  September 19, 2011                    Respectfully submitted,
19
                                                     KEKER & VAN NEST LLP
20
                                                     By: s/ Robert A. Van Nest
21                                                      ROBERT A. VAN NEST
                                                        Attorneys for Defendant
22                                                      GOOGLE INC.

23

24

25

26

27   ───────────────────────────
     [44] Dkt. No. 361 at 6:15-16.
28   [45] Dkt. No. 361 at 8:16.

                                         15
     MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
     CASE NO. 3:10-cv-03561-WHA