# BOIES, SCHILLER & FLEXNER LLP

1999 HARRISON STREET* SUITE 900* OAKLAND, CA 94612* 510-874-1000 FAX 510-874-1460

September 22, 2011

The Honorable William Alsup
U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Re: Oracle America, Inc. v. Google Inc., No. C 10-3561 WHA

Dear Judge Alsup:

Google's request to file a *Daubert* motion rests on mischaracterizations of Prof. Cockburn's report, this Court's orders, and the law of damages. It should be denied.

Following both *Georgia-Pacific* and the Court's guidance, Prof. Cockburn offers the following damages estimates:

| Patent Damages | Copyright Actual Damages | | Copyright Infringer's Profits |
|---|---|---|---|
| *License Method* | *License Method* | *Lost Profits Method* | *Google Gross Revenues* |
| $176-202 million | $102.6 million | $136.2 million | $823.9 million (subject to apportionment by Google) |

Google's complaint about the amount of damages mistakenly focuses on the gross revenues in the infringer's-profits figure. This is a complaint about the copyright statute, not Prof. Cockburn. The statute provides: "[T]he copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C § 504(b). Prof. Cockburn properly follows this approach, noting that if Google argues that Android gross revenues are attributable to other factors, he may be asked to respond. Google thus mischaracterizes both the $823.9 million figure and the "$1.2 billion for future unjust enrichment damages for 2012 alone." Although the latter figure certainly illustrates some of the enormous profits enabled by Google's infringement, it is not part of Prof. Cockburn's damages estimates.

Google's complaints about Prof. Cockburn's hypothetical-license analyses are meritless.

*First*, Google asserts that a copyright hypothetical license should be limited to the terms of the "starting point" because the parties (so Google says) would not have negotiated an incompatible license. Google is wrong. Adding what Sun expected to earn from a compatible

The Honorable William Alsup
September 22, 2011
Page 2 of 3

Android, but lost when Google infringed the copyrights and fragmented Java, is consistent with Ninth Circuit law, *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707–08 (9th Cir. 2004), Judge Hamilton's clarification of the order on which Google relies, *Oracle USA, Inc. v. SAP AG*, No. C07-1658 PJH, at Dkt. No. 1088, and *Georgia-Pacific*. Google's "one price fits all" approach reverts to the "Soviet-style negotiation" that the Court has already rejected.

Contrary to Google's claim that the upward adjustment "has no record support" and is based on a "single . . . Sun presentation," the adjustment is supported by a wealth of evidence, including *Google* documents contemplating that Sun would provide a commercial implementation of Android. Both economics and *Georgia-Pacific* support accounting for expected convoyed sales that the infringing implementation eliminated. Google says "there is no evidence Sun would have been able to establish a viable business to exploit Android" and "it never did so in reality," but the first is false and the second is a tautology: the ***reason*** Sun never did so was that the incompatibility of Android eliminated the business case.

As Prof. Cockburn explains, using the Sun business model presentation to quantify the adjustment is conservative because both Google documents and other Sun documents show that the model's projections ***omit*** significant revenue streams that Sun anticipated would "dwarf" what that model included. Google complains that the adjustment fails under the *Panduit* lost-profits test, but the *Panduit* factors do not apply to hypothetical-license analysis. To the contrary, the *Georgia-Pacific* analysis "depends" on "the anticipated amount of profits that the prospective licensor reasonably thinks he would lose." 318 F.Supp. 1116, 1121 (S.D.N.Y. 1970).

Google's accusation that the upward adjustment involves "double counting" is false for the same reason. The "starting point" license included a royalty (to replace losses to Sun's Java ME licensing business) ***and*** an opportunity for Sun to earn revenue on top of Android. Because the infringement eliminated both, it is not double counting to account for both in the hypothetical royalty – the former in the "starting point" amount, the latter in the upward adjustment.

*Second*, Google complains about Prof. Cockburn's opinion that 30% of the "starting point" and the upward adjustment should be apportioned to the seven patents-in-suit. Prof.

The Honorable William Alsup
September 22, 2011
Page 3 of 3

Cockburn's apportionment analysis rests on technical benchmarking analyses, contemporaneous Google evidence about the importance of speed and memory, and two separate analyses of actual consumer demand for the precise functionality the patents-in-suit provide.  Google's précis neither mentions nor critiques any of that analysis.  It just asserts that the result – 30% of the starting point – must be too high.  Google's *ipse dixit* is not grounds for a *Daubert* motion.

*Third*, Google complains that Prof. Cockburn does not "provide a firm calculation of future damages."  The Court directed that past and future royalties not be mixed by advancing royalties in a lump-sum payment.  Prof. Cockburn complied.  Oracle intends to strenuously pursue injunctive relief to resolve the key issue in this case: whether Google can use Oracle's intellectual property to create an incompatible clone of Java and thereby undermine Oracle's and many others' investments in "write once, run anywhere."  If future royalties are applied, it is well established that they should be based on a separate, post-verdict assessment.  *See, e.g.*, *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-15 (Fed. Cir. 2007); *Boston Scientific Corp. v. Johnson & Johnson*, No. C 02-0790 SI, 2009 WL 975424 (N.D. Cal. Apr. 9, 2009).

*Fourth*, Google summarily complains that Prof. Cockburn does not provide a "claim-by-claim analysis of the date of first infringement."  In fact, Prof. Cockburn notes that the dates of first infringement for each patent range from mid-2006 to mid-2007, and adopts the earliest date (most favorable to Google) as the date of the hypothetical negotiation.  Selecting a different date anywhere in that range would have zero effect on the royalty calculation.

When Google complained about Prof. Cockburn's report last week, the Court responded: "[I]f you want to bring a motion to knock [Oracle's new damages study] out, *that should be one of your motions in limine*."  (9/15/2011 Tr. at 67:3-7.)  Google's month-in-advance request to file a *Daubert* motion addressing predicted rebuttal opinions that have not even been offered is a calculated attempt to evade the Court's limit on the number of its in limine motions.  None of its current arguments warrant an additional *Daubert* motion.

                Sincerely,

                /s/ Steven C. Holtzman