IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>GOOGLE INC.,<br><br>    Defendant.<br>                                                  / | No. C 10-03561 WHA<br><br>**ORDER PARTIALLY GRANTING AND PARTIALLY DENYING MOTION TO STRIKE PORTIONS OF MITCHELL REPORT AND VACATING HEARING** |

**INTRODUCTION**

In this patent and copyright infringement action involving features of Java and Android, defendant moves to strike portions of an opening expert report regarding patent infringement. For the reasons stated below, the motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

The factual background of this action has been set forth in previous orders (*see* Dkt. Nos. 137, 230, 433). In August 2011, defendant Goolge Inc. sought leave to file a motion to strike portions of the opening expert report of John C. Mitchell regarding patent infringement. Google asserted that many aspects of the report were not supported by plaintiff Oracle America, Inc.'s infringement contentions as required by the Patent Local Rules (Dkt. No. 377). Google was allowed to file the instant motion over Oracle's objections. The motion, however, was limited to three points of critique, with the understanding that additional points could be raised if Google succeeded on the first three (Dkt. Nos. 380, 382). This order follows expedited briefing (*see* Dkt. No. 385).

**ANALYSIS**

Our Patent Local Rule 3-1 requires detailed disclosure of a party's patent infringement contentions. *See* Patent L.R. 3-1. Oracle initially disclosed its infringement contentions in December 2010, and Google challenged their sufficiency two months later (Dkt. No. 79). Oracle agreed to supplement its initial infringement contentions and in fact did so twice. Oracle ultimately chose to stand on its April 2011 second supplemental disclosures, despite Google's position that they still were inadequate. Oracle was warned that if its disclosures later proved inadequate to support its infringement theories, there would be no second chance to cure the defects (Dkt. No. 110 at 10–11).

Google now asserts that the expert report of John C. Mitchell extends to accused products and infringement theories that were not disclosed in Oracle's April 2011 infringement contentions. Neither party has identified any binding authority interpreting the relevant provisions of our local rules.

**1. ACCUSED PRODUCTS.**

Patent Local Rule 3-1(b) required the following information to be disclosed as part of Oracle's infringement contentions (emphasis added):

> Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. *This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known.*

Oracle's April 2011 disclosures accused the following instrumentalities of patent infringement (Francis Exh. F at 2) (footnotes omitted):

> (i) "Android" or "the Android Platform"; (ii) Google devices running Android; and (iii) other mobile devices running Android. Representative examples of Google devices running Android include the Google Dev Phones, the Google Nexus One, and the Google Nexus S. Representative examples of other mobile devices running Android include HTC's EVO 4G, HTC's Droid Incredible, HTC's G2, Motorola's Droid, and Samsung's Captivate.

The Mitchell report referenced three devices that were not specifically named in this list: the LG Optimus, the HTC Droid Incredible 2, and the Motorola Atrix. Specifically, the report stated that

1 a review of source code for particular Android devices, including those three, showed that the
2 device manufacturers made no changes to the source code that would impact the infringement
3 analysis performed on the repository version of the code (Francis Exh. A at ¶ 191).

4 Oracle's infringement contentions did not support infringement theories directed at the
5 LG Optimus, the HTC Droid Incredible 2, or the Motorola Atrix. The Patent Local Rules
6 required *specific* identification of particular accused products. They did not tolerate broad
7 categorical identifications like "mobile devices running Android," nor did they permit the use of
8 mere representative examples. Representative examples may be a useful tool for proving an
9 infringement case at trial, but a full list of accused products must be disclosed as part of a party's
10 infringement contentions. Because the LG Optimus, the HTC Droid Incredible 2, and the
11 Motorola Atrix were not among the products specifically identified in Oracle's disclosure of
12 accused products, Oracle may not now accuse them of infringement.

13 Oracle's arguments to the contrary are unavailing. *First*, Oracle emphasizes its theory that
14 all devices running Android function the same way in all relevant respects. The merits of this
15 theory are irrelevant to the question of whether Oracle's disclosures adequately supported the
16 infringement accusations in the Mitchell report. Even with the intention of relying on
17 circumstantial evidence to prove the similarity of many accused devices, Oracle could have and
18 should have specifically identified all such accused devices. Oracle does not claim that the names
19 of other Android devices were not known to it in April 2011. *See* Patent L.R. 3-1(b) (requiring
20 accused products to be "identified by name or model number, if known").

21 *Second*, contrary to Oracle, Google has not waived the instant critique. Google does not
22 now argue that Oracle's infringement contentions were unclear or inadequate, as in the decision
23 Oracle cites for waiver; instead, Google argues that the Mitchell report *added new accused*
24 *products*. Google could not have known, much less waived, this argument until the report was
25 served. Moreover, the parties formally agreed to disagree on the adequacy of Oracle's April 2011
26 infringement contention disclosures (Dkt. No. 110 at 10).

27 *Third*, Oracle argues that its infringement contentions gave Google adequate notice
28 regarding the scope of the accused products, because the disclosure identified which components

3

1  of Android devices were at issue. The Patent Local Rules, however, placed the burden of
2  specifically identifying all accused devices on the accuser. Even if it would have been easy for
3  Google to compile an accurate list of all the devices Oracle considered to be Android devices,
4  Rule 3-1(b) required Oracle to provide such a list in its disclosure of infringement contentions.

5  As to the accused products newly identified in the Mitchell report, Google's motion
6  is **GRANTED**. Oracle's infringement theories may be directed only toward accused products that
7  were specifically named in its April 2011 disclosure of infringement contentions. Because
8  the LG Optimus, the HTC Droid Incredible 2, and the Motorola Atrix were not among the
9  products specifically listed therein, Oracle may not now accuse them of infringement.

### 2. SOURCE CODE FILE DVMDEX.H ('104 PATENT).

Patent Local Rule 3-1(c) required Oracle's disclosure of infringement contentions to include "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Google asserts that the source code file DvmDex.h was not identified in Oracle's claim charts, but that the Mitchell report now relies on that file as satisfying the "storing said numerical references" limitation of claim 11 of United States patent number RE38,104. Google, however, has not shown that the Mitchell report advanced any new, undisclosed theory regarding this limitation.

Rule 3-1(c) required identification of the precise element of any accused product that was alleged to practice a particular claim limitation; it did *not* require identification of every evidentiary *item of proof* showing that the accused element did in fact practice the limitation. Google confuses this distinction. That a particular document or source code file was not cited in a party's infringement disclosures does not automatically preclude the party from using that document or file to support a *theory* that was timely disclosed. Google's heavy reliance on a non-binding decision requiring "pinpoint citations" to source code files is misplaced. Moreover, the source code cited in Oracle's infringement contentions adequately supported the challenged aspects of the Mitchell report concerning the storing limitation of claim 11.

It is undisputed that the file DvmDex.h was not named in the relevant portion of Oracle's infringement contentions. The DvmDex.h file itself, however, is not the element accused of

4

1 performing the storing limitation of claim 11. Rather, the Mitchell report identified specific
2 *functions* located within that file as satisfying the storing limitation. Those functions also were
3 identified in the relevant portion of Oracle's infringement contentions. The reference to
4 DvmDex.h in the Mitchell report therefore does not constitute a new infringement theory. Just as
5 an accused hammer may later be described as being located in a toolbox, the accused functions
6 disclosed in Oracle's infringement contentions are described more fully in the Mitchell report
7 with reference to the file DvmDex.h.

Google highlights two examples of passages in the Mitchell report it finds objectionable. Neither is problematic. Google quotes a statement that "[t]he DvmDex.h file contains the source code for the dvmDexSetResolvedMethod function, which serves to **store** the resolved symbolic reference" (Francis Exh. A at ¶ 277). The function dvmDexSetResolvedMethod — which is the accused element under this theory — was identified at least twice in the relevant portion of Oracle's infringement contentions (Peters Exh. 1 at 25, 28). Similarly, Google quotes a statement that "[t]he DvmDex.h file also has dvmDexSetResolvedClass which serves to **store** the resolved symbolic reference after the class name gets resolved" (Francis Exh. A at ¶ 271). The function dvmDexSetResolvedClass, too, was identified at least twice in the relevant portion of Oracle's infringement contentions (Peters Exh. 1 at 21, 48).

Google has not shown that the references in the Mitchell report to the source code file DvmDex.h invoke a new infringement theory that was not disclosed in Oracle's infringement contentions. Accordingly, the portion of Google's motion directed at the source code file DvmDex.h is **DENIED**.

**3. TREEMAP THEORY AND RELATED SOURCE CODE FILES ('702 PATENT).**

Again, the Patent Local Rules required disclosure of a chart identifying where each limitation of each asserted claim was found within each accused item. Google asserts that no so-called "'TreeMap' structure" was disclosed in Oracle's April 2011 infringement contentions, but that the Mitchell report now identifies such a structure as satisfying the "removing said duplicated elements" limitation of claim 1 of United States patent number 5,966,702. Google also asserts that the Mitchell report "refers to a number of source code files supporting this TreeMap process"

5

1  that were not cited in Oracle's infringement contentions (Br. 4). Google is correct that Oracle's
2  infringement contentions did not support Mitchell's TreeMap theory. Google, however, has not
3  shown that Oracle should be fully precluded from citing any of the supposedly related source
4  code files.

5  Oracle's infringement contentions identified the Android dx tool as the item accused of
6  infringing claim 1 of the '702 patent (Peters Exh. 2 at 2). With respect to the method step in
7  question, however, the contentions did not explain *how* the dx tool supposedly removed
8  duplicated elements. The contentions illustrated conditions before and after the dx tool was used
9  to form a .dex file from a plurality of class files, inferring that duplicated elements must have
10 been removed along the way. But they did not say *what* did the removing (*id.* at 13–17). In light
11 of the Mitchell report, this vagueness ran afoul of the requirement to identify "specifically where
12 *each limitation* of each asserted claim is found" in the accused item. Patent L.R. 3-1(c).

13 The Mitchell report laid out a precise theory as to where the "removing said duplicated
14 elements" limitation of claim 1 was found within the dx tool process. According to his report, the
15 intern() method calls FieldIds.put, which is an instance of the class TreeMap, and uses it to hold
16 the interned field constants. "This is the step at which removal of duplicate constants is
17 performed" (Francis Exh. A at ¶ 461). That is, "as class files are processed to form a .dex file,
18 TreeMap is used to identify and remove duplicate elements" (*id.* at ¶ 476). Oracle does not
19 contend that the Mitchell report advanced any other theory as to where the "removing said
20 duplicated elements" limitation of claim 1 was found. This theory that a TreeMap object was
21 used to perform the removing limitation of claim 1, however, was not disclosed in Oracle's
22 infringement contentions. Indeed, the contentions did not disclose *any* specific theory as to where
23 this limitation was found in the dx tool process. Oracle may not raise a new infringement theory
24 at this late date.

25 Contrary to Oracle, it is not too late for Google to raise the instant challenge. Google's
26 invalidity contentions are irrelevant, and Google's response to Oracle's non-infringement
27 interrogatory did not lift Oracle's disclosure burden. The TreeMap theory in the Mitchell report
28 simply was not supported by Oracle's infringement contentions.

6

1   On the other hand, Google's attack on the source code files supposedly related to the
2   TreeMap theory goes to far. As explained above, the fact that a particular source code file was
3   not cited in a disclosure of infringement contentions does not necessarily preclude later citations
4   to that file. Google has not shown that the manner in which the Mitchell report relied on
5   particular source code files in discussing claim 1 of the '702 patent was improper. Moreover,
6   Google's broad argument attacking this entire group of code file citations in conjunction with the
7   TreeMap issue ignores the order limiting the motion to three points of critique (Dkt. No. 382
8   ("The three points of critique may not be *categories* of critique with multiple items crammed in;
9   rather, the motion should identify three specific items in the report that supposedly were not
10  timely disclosed")).

11  The portion of Google's motion directed at claim 1 of the '702 patent is **GRANTED IN
12  PART AND DENIED IN PART**. As to the TreeMap infringement theory regarding the removing
13  limitation of claim 1, the motion is **GRANTED**. Mr. Mitchell may not offer any direct testimony
14  about that theory at trial. As to the source code files supposedly related to the TreeMap theory,
15  however, the motion is **DENIED**.

16                              \*          \*          \*

17  Any denial of a motion to strike does not mean that the item at issue in the motion is
18  automatically admitted in evidence — it still must be moved in evidence, subject to any *other*
19  objections, at trial. Similarly, any grant of a motion to strike does not exclude the item at issue in
20  the motion under any and all circumstances; a party who prevailed on a motion to strike may
21  open the door to the stricken material.

22                              **CONCLUSION**

23  For the reasons stated above, defendant's motion to strike portions of the opening expert
24  report of John C. Mitchell regarding patent infringement is **GRANTED IN PART AND DENIED
25  IN PART**. As to the accused products newly identified in the Mitchell report — the LG Optimus,
26  the HTC Droid Incredible 2, and the Motorola Atrix — the motion is **GRANTED**. As to the source
27  code file DvmDex.h, the motion is **DENIED**. As to the TreeMap infringement theory directed at
28  the removing limitation of claim 1 of the '702 patent, the motion is **GRANTED**. As to the source

7

code files supposedly related to the TreeMap theory, the motion is **DENIED**. The hearing set for September 29, 2011, is **VACATED**.

Because defendant raised meritorious critiques in the instant limited motion, defendant may file an additional motion to strike other portions of the Mitchell report. The motion would not count as one of defendant's motions *in limine*. The number of critiques to be raised in the second motion will not be limited, but the supporting memorandum may not exceed twelve pages. Any such motion must be filed by **SEPTEMBER 29, 2011**, and noticed to be heard on **OCTOBER 13, 2011**. An opposition not to exceed fifteen pages would be due on **OCTOBER 4, 2011**. A reply not to exceed three pages would be due on **OCTOBER 6, 2011**.

**IT IS SO ORDERED.**

Dated: September 26, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8