MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
FRED NORTON (Bar No. 224725)
fnorton@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax)

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>    Plaintiff,<br><br>  v.<br><br>GOOGLE, INC.<br><br>    Defendant. | Case No. CV 10-03561 WHA<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF FROM NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

**TABLE OF CONTENTS**

I. Introduction ..................................................................................................................................1

II. Statement of Facts .......................................................................................................................1

    A. The Text Of The Lindholm Email Proves It Is A Business Communication ..........................1

    B. Google Did Not Rebut The Facts Established By The Text Of The Email .............................3

    C. Google's Own Lawyers Understood That The Email Concerned Business Negotiations – And Said So To The Court..........................................................................................................4

    D. Google Waived Any Otherwise Applicable Privilege By Producing The Email After Repeatedly And Closely Reviewing Its Contents, By Arguing The Substance Of The Email In Court, And By Continuing To Publish The Email And Direct People To It On The Internet ...................................................................................................................................5

III. Argument ...................................................................................................................................6

    A. Magistrate Judge Ryu's Order Is Entitled To "Great Deference" And Google Has Not Demonstrated The Clear Error Necessary To Set It Aside ........................................................6

    B. Google Has The Burden Of Establishing The Existence Of The Privilege ............................6

    C. The Lindholm Email Is A Communication Discussing Google's Business Strategy Of Negotiating For A License, Which Is Not Subject To Any Privilege......................................7

    D. Magistrate Judge Ryu Correctly Found That Google Failed To Meet Its Burden Of Establishing That The Email Was A Communication To An Attorney For The Primary Purpose Of Obtaining Legal Advice........................................................................................7

        1. Magistrate Judge Ryu Correctly Found That Mr. Lee's Declaration Lacked A Foundation That He Had Reviewed The Email At Issue ..................................................9

        2. Magistrate Judge Ryu Correctly Found That Google's Declarations Failed To Rebut The Reasonable Inference That Mr. Lee and Mr. Lindholm Were Discussing "Non-Privileged Matters, Including The Business Of Negotiating For A Java License" ...........9

        3. Magistrate Judge Ryu Correctly Found That Google Never Explained Why The Email Focuses On Business Executives Rubin, Page And Brin, Yet None Of The Declarations Describing Legal Advice Refer To The Involvement Of Those Persons. .......................10

        4. Magistrate Judge Ryu Properly Relied On Content Of The Entire Email In Correctly Finding That It Was Not Prepared In Anticipation Of Litigation Or To Further The Provision Of Legal Advice. ..............................................................................................11

        5. Magistrate Judge Ryu Correctly Found That The Email Text Never Mentions Legal Advice, Lawyers, Litigation, Oracle, Or Patent Infringement But Rather Reflects A Strategy Discussion To Address Business Negotiations Regarding A Java License.......12

        6. Magistrate Judge Ryu Correctly Applied The Law Requiring A Clear Showing For Claims of Privilege Involving In House Counsel, But Google Has Not Met Even The Lower Standard It Advocates..........................................................................................12

        7. Magistrate Judge Ryu Correctly Found That The Assertions By Google Counsel To The Court About The Email Undermine Google's Claim Of Privilege.................................13

   E. Magistrate Judge Ryu Correctly Held That Google Failed To Establish Work Product Protection For The Email. .......................................................................................................... 14

   F. Google Has Waived Any Otherwise Applicable Privilege. .................................................... 14

IV. Conclusion ................................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Gateway, Inc.*,
  2003 WL 23787856 (D. Utah 2003) ...................................................................................... 7

*Burdick v. IRS*,
  979 F.2d 1369 (9th Cir. 1992) .............................................................................................. 6

*Conant v. McCoffey,*
  C 97–0139 FMS, 1998 WL 164946 (N.D. Cal. Mar.16, 1998) ........................................... 6

*Conceptus Inc. v. Hologic, Inc.*,
  No. C 09-02280 WHA, 2010 WL 3911943 (N.D. Cal. Oct. 5, 2010) ......................... 14, 15

*Grimes v. City and County of San Francisco*,
  951 F.2d 236 (9th Cir. 1991) ................................................................................................ 6

*Hakim v. Cannon Avent Group, PLC*,
  479 F.3d 1313 (Fed. Cir. 2007) ............................................................................................ 9

*Hardy v. New York News*,
  114 F.R.D. 633 (S.D.N.Y. 1987) ......................................................................................... 7

*In re Horowitz*,
  482 F.2d 72 (2d Cir. 1973), *cert. denied*, 414 U.S. 867 .................................................... 15

*In re Sealed Case*,
  737 F.3d 94 (D.C. Cir. 1984) ............................................................................................. 13

*In re von Bulow*,
  828 F.2d 94 (2d Cir. 1987) ................................................................................................. 15

*Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*,
  2010 WL 275083 (S.D. Cal. Jan 13, 2010) ........................................................................ 15

*Nguyen v. Excel Corp.*,
  197 F.3d 200 (5th Cir. 1999) .............................................................................................. 15

*United States v. AbonceBarrera,*
  257 F.3d 959 (9th Cir. 2001) ................................................................................................ 6

*United States v. Chen*,
  99 F.3d 1495 (9th Cir. 1996) .......................................................................................... 7, 10

*United States v. ChevronTexaco Corp.*,
  241 F. Supp. 2d 1065 (N.D. Cal. 2002) .......................................................................... 7, 13

*United States v. Martin*,
  278 F.3d 988 (9th Cir. 2002) ................................................................................................ 6

*United States v. Rowe*,
  96 F.3d 1294 (9th Cir. 1996) .............................................................................................. 13

*Weil v. Investment/Indicators,*
  647 F.2d 18 (9th Cir. 1981) ................................................................................................ 14

*Wheeling-Pittsburgh Steel Corp. v. Underwriters Labs., Inc.*,
   81 F.R.D. 8 (N.D. Ill. 1978). .................................................................................................. 15

**Other Authorities**

Kenneth S. Broun *et al.*, 1 McCormick on Evidence, at § 10 .................................................... 9

iv

## I.     Introduction

This motion arises from Google's efforts to conceal – through the attorney client privilege and the work product doctrine – an email written by an engineer and directed to a business executive, in which the engineer told the executive that Google had no choice but to pay Oracle for a Java license because there were no technical alternatives. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Although Google begins its brief with an invocation of the Supreme Court's decision in *Upjohn*, this dispute has nothing to do with *Upjohn*, which may explain why Google never cited that case to Magistrate Judge Ryu. The dispute here is whether Google proved that an email that discusses nothing but an engineer's assessment of technical alternatives and business negotiation strategy is, contrary to what it says, a communication seeking legal advice. It is not.

Magistrate Judge Ryu carefully considered the evidence and correctly applied the law. She gave Google a full and fair opportunity to justify its claims of privilege, carefully reviewed the email itself and all of Google's factual submissions, and found that Google had not met its burden. Her Order requiring production of the email suffers from no error at all, much less clear error. The Order should be affirmed.

## II.     Statement of Facts

### A.     The Text Of The Lindholm Email Proves It Is A Business Communication

On July 20, 2010, Oracle lawyers made a presentation to Google, asserting that Android infringed specific patents related to Java. (Dkt. No. 336, Second Norton Decl., Ex. 4.)

About two weeks later, on August 6, 2010, Google engineer Tim Lindholm emailed Google Vice President Andy Rubin, who was in charge of Android. Mr. Lindholm was a Sun engineer working on Java until July 2005, when he joined Google and immediately began advising Mr. Rubin about Android. (Dkt. No. 305, Norton Decl., ¶ 11, Ex. A-G.) This is what Mr. Lindholm wrote in his email:

▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

> What we've actually been asked to do (by Larry and Sergei) is to investigate what technical alternatives exist to Java for Android and Chrome. We've been over a bunch of these, and think they all suck. We conclude that we need to negotiate a license for Java under the terms we need.



(Google *in camera* submission.) After he wrote those words, at literally the last moment, Mr. Lindholm added "Google Confidential" and "Attorney Work Product" at the top of the page, and added Ben Lee, a Google in-house lawyer, to the email's addressees. (*Compare id.* at p. 8 (time stamp of 11:04, omitting header and Mr. Lee); *with id.* at p. 11 (time stamp of 11:05 with header and Mr. Lee added).)

Mr. Lindholm's email is without question a business communication. The text of the email makes no reference, express or implied, to litigation, infringement, lawyers, or legal advice. Three of the four paragraphs refer to negotiation, and in particular, Google's business strategy in negotiating for a Java license. The factors relevant to Mr. Lindholm's analysis are in no way legal or even inputs to providing legal advice, as Magistrate Judge Ryu found. (Dkt. No. 361 at 5:21-22; 6:3-5.)

Indeed, as Magistrate Judge Ryu noted, ***every substantive sentence of the email*** refers to a business or technical consideration, ***never*** a legal one. (*See* Dkt. No. 361 at 2, 5-6.) Mr. Lindholm was given his task by Google founders "Larry and Sergei," not any lawyer. His task was to "to investigate what technical alternatives exist to Java for Android and Chrome," not evaluate claims of infringement or assist with legal analysis. His conclusion that the technical alternatives "all suck," was that of an engineer assessing business options. His conclusion that "we need to negotiate a license for Java under the terms we need" recognized the business consequences of having no viable alternatives to Java.



OPPOSITION TO DEF.'S MOTION FOR RELIEF FROM NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE
CASE NO. CV 10-03561 WHA

1  █████████████████████████████████
2  █████████████████████████████████
3  █████████████████████████████████

Magistrate Judge Ryu expressly relied on Mr. Lindholm's contemporaneous written statements in finding that "the Email appears to be a strategy discussion intended to address business negotiations regarding a Java license" (Dkt. No. 361 at 6:12-13) and that "the contents of the email itself severely undermine the claim that Lindholm generated this particular email as part of an attorney-directed effort to provide legal advice or prepare for litigation." (Dkt. No. 361 at 5:5-7.)

### B. Google Did Not Rebut The Facts Established By The Text Of The Email

While Google argues that Magistrate Judge Ryu's findings were "clearly erroneous," it ignores every single one of Mr. Lindholm's specific statements in the email. Google's five declarations – including two from Mr. Lindholm – do not so much as mention those facts.[1] The after-the-fact declarations assert, in conclusory fashion, that Mr. Lindholm was reporting on investigations he and Dan Grove (another Google engineer) conducted "at the request of Google General Counsel Kent Walker, under the supervision of Mr. Lee, and in anticipation of Oracle's threatened lawsuit." (Dkt. No. 408-2, Lindholm Decl. at ¶ 14.)

Google attempts to bolster that generalized assertion with a declaration from Mr. Lee, stating that "[o]n or about August 6, 2010, I received an email from Mr. Lindholm regarding the investigation Mr. Walker and I had asked him to conduct." (Dkt. No. 301, Lee Decl.) But as Magistrate Judge Ryu found, Mr. Lee, who no longer works for Google, failed to establish that he actually read the email that is in dispute. Indeed, Mr. Lee does not state that he has read that email, but only says he "received an email from Mr. Lindholm" and that "on information and belief" the email he "received" is on Google's privilege log. (Dkt. No. 361 at 5:8-11.) That Mr. Lee did not actually look at the email is demonstrated by the fact that his original declaration – also on information and belief – incorrectly identified the

---

[1] Google appears to contend that Magistrate Judge Ryu found the declarations credible. (Dkt. No. 441 at 2:17-18; 6:14-17). Google is wrong. Magistrate Judge Ryu merely observed – at the hearing – that "***I don't need to reach the issue*** of whether somebody is not credible or is lying, or anything like that." (Dkt. No. 441-5 at 24:17-19 (emphasis added). Her actual written finding in the Order – that the "contents of the email itself severely undermine the claim" of privilege – must be credited over any contention that Google's declarations are credible.

3

privilege log entry associated with the email. (Dkt. No. 441 at 3 n.1.) Moreover, Google's privilege log has **no fewer than 170 separate entries** for emails from Mr. Lindholm to Mr. Lee "on or about August 6, 2010." (Dkt. No. 367-1, Second Norton Decl., Ex. 1, at p. 8-15, 23-29, 57, 78-82 (entries for withheld emails dated August 5 and 6, 2010, from Tim Lindholm to Ben Lee).) Nothing in Mr. Lee's declaration establishes that the email he purports to describe is the one at issue here, and not one of the other 170.

In addition, these carefully crafted declarations undermine any contention that Mr. Lindholm was communicating information to lawyers for the sole (or even primary) purpose of obtaining legal advice. Mr. Lindholm twice concedes that he was gathering information for "***management to consider in evaluating technology issues***." (Dkt. No. 408-2, Lindholm Decl. ¶ 7; Dkt. No. 408-3, Lindholm Response Decl. ¶ 7.)

### C. Google's Own Lawyers Understood That The Email Concerned Business Negotiations – And Said So To The Court

The substance of the email was discussed at two hearings in this case held on July 21, 2011: first, at a telephonic discovery hearing before Magistrate Judge Ryu, and then at the *Daubert* hearing in this Court. At the discovery hearing, Google was represented by Robert Van Nest and Christa Anderson of Keker & Van Nest, Bruce Baber and Chris Carnaval of King & Spalding, and Renny Hwang, in-house counsel at Google. (Dkt. No. 305, Norton Decl. ¶ 18.) At the *Daubert* hearing, Google was represented by Mr. Van Nest, Ms. Anderson, and Dan Purcell of Keker & Van Nest, by Mr. Baber of King & Spalding, and by Google in-house lawyers Catherine Lacavera and Mr. Hwang. (*Id.* ¶ 27).

No Google lawyer objected at either hearing that the email was privileged. To the contrary, at both hearings Google's trial counsel, clearly recognizing and displaying familiarity with the email, argued its substance. (*Id.* ¶¶ 17-37.) Contrary to what Google argues now, this is how Mr. Van Nest explained the email to the Court on July 21:

> Number one, this is August 2010, this is 2010. This is after the Ellison crew has come in, about a month before the lawsuit starts, and says, here's the patents, we think you're infringing, ***you should take a license***. . . . ***These are negotiations by the parties*** –
> \* \* \*
> Oracle comes in and says, okay, you are going to have to spend all this money on a lawsuit, and we are going to seek billions of dollars, ***the question from the CEO is***, is

there any other way we can do this and avoid it, altogether?

(*Id.* ¶¶ 34-35, Ex. I at 41:21-42:3, 42:6-10 (emphases added).)[2]  As Magistrate Judge Ryu found, the fact that Google's own lawyers, who are "intimately familiar with the facts of this case, believed that the Email concerned business negotiations," not legal advice, is by itself compelling evidence that the email really does concern business negotiations, not legal advice.  (Dkt. No. 361 at 6:21-7:2.)[3]

### D. Google Waived Any Otherwise Applicable Privilege By Producing The Email After Repeatedly And Closely Reviewing Its Contents, By Arguing The Substance Of The Email In Court, And By Continuing To Publish The Email And Direct People To It On The Internet

Although Magistrate Judge Ryu found it unnecessary to reach the issue, Google has waived any otherwise applicable privilege, for at least three reasons.

*First*, Google produced at least eight versions of the email, each time affixing the legend "Highly Confidential - Attorney's Eyes Only."  (Dkt. No. 441 at 5:4-6.)  Pursuant to the Protective Order, Google's use of the legend is an implicit representation that it exercised "restraint and care" before making the designation, and each time satisfied itself that the entire document warranted highly confidential treatment.  (Dkt. No. 66 at §§ 5.1, 5.2(a).)  Indeed, Google used a single set of document reviewers to determine whether a given document was privileged, confidential, or highly confidential.  (Dkt. No. 317, Zmrhal Decl., ¶ 10.)  Google's production of the email was not "inadvertent."

*Second*, as noted above, Google made no objection to the use of the Lindholm email at either of the hearings on July 21.  Instead, Google's attorneys argued the substance of the document, asserting

---

[2] Google asserts in its brief that neither Mr. Baber nor Mr. Van Nest had "any opportunity" to review the document before they made assertions in Court about what it meant.  No record evidence supports that claim.  There is no declaration from Mr. Baber, Mr. Van Nest, or any Google lawyer who attended the two July 21 hearings saying that they were unaware of the email until Oracle mentioned it.  Although Mr. Van Nest has retracted other incorrect statements that he has made to the Court (*e.g.*, Dkt. No. 242), he has never retracted the statements he made on July 21 about the Lindholm email.

[3] Although irrelevant here, Google also claims that Oracle violated the Protective Order by using the email in court without giving Google notice.  (Dkt. No. 441 at 5:8-11.)  That claim is false.  The discovery hearing concerned Oracle's request to take Mr. Lindholm's deposition, which Google opposed.  Oracle quoted the email *only after* Google counsel told the Court – incorrectly – that Mr. Lindholm "didn't work on Android at Google and he wasn't involved in negotiations."  (Dkt. No. 305, Norton Decl. ¶¶ 20-23).  In response, Oracle's counsel first identified the document as Highly Confidential, and quoted it in part to correct the record.  (*Id.*)  At the *Daubert* hearing, Oracle counsel explained that he had documents that were designated by Google as Highly Confidential, and did not intend to disclose them in open court.  Only after the Court stated that it would not treat evidence of willful infringement as confidential, the Court directed Oracle counsel to "say whatever you want," and the six Google lawyers in attendance decided not to object, did Oracle refer to the email.  (*Id.* ¶¶ 28-31)  Each time Google had notice under the Protective Order.

5
OPPOSITION TO DEF.'S MOTION FOR RELIEF FROM NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE
CASE NO. CV 10-03561 WHA

privilege only after the Court warned Google counsel "you are going to be on the losing end of this document, and with Andy Rubin on the stand." (Dkt. No. 305, Norton Decl., Ex. I at 40:25-41:6).

*Third*, even after it asserted privilege, Google itself continued to make the contents of the email widely available. Portions of the Lindholm email were widely published in reports of the July 21 *Daubert* hearing. (*Id.* ¶ 47.) Since then, Google searches including the name Lindholm and related terms generate thousands of hits of internet web pages quoting the email. These quotes of purportedly privileged material appear on Google's search page itself, not just in the linked web pages. (*Id.* ¶ 48, Ex. O, P.) Google concedes that it can exclude these links from its search results, but it has chosen not to do so. (Dkt. No. 336, Second Norton Decl., ¶¶ 7-9; Dkt. No. 332, Cutts Decl., ¶ 6.)

### III.     Argument

#### A. Magistrate Judge Ryu's Order Is Entitled To "Great Deference" And Google Has Not Demonstrated The Clear Error Necessary To Set It Aside

For discovery disputes and other non-dispositive matters, such as this one, the decision of the magistrate judge "is entitled to great deference." *United States v. AbonceBarrera,* 257 F.3d 959, 969 (9th Cir. 2001). "A non-dispositive order entered by a magistrate must be upheld unless it is 'clearly erroneous or contrary to law,'" and the reviewing court may not substitute its own judgment for that of the magistrate judge. *Grimes v. City and County of San Francisco,* 951 F.2d 236, 241 (9th Cir. 1991). Magistrate Judge Ryu's ruling would be clearly erroneous *only* if this Court were left with a "definite and firm conviction that a mistake has been committed." *Burdick v. IRS*, 979 F.2d 1369, 1370 (9th Cir. 1992). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Conant v. McCoffey,* C 97–0139 FMS, 1998 WL 164946, *2 (N.D. Cal. Mar.16, 1998). Of Google's seven objections, only one challenges a legal principle; the other six must be considered under the demanding "clearly erroneous" standard.

The Order is entirely correct as to both law and facts and should be affirmed under any standard.

#### B. Google Has The Burden Of Establishing The Existence Of The Privilege

Google has the burden of establishing that the email is privileged. *See, e.g., United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002). Moreover, "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* In seeking to establish

that a document is privileged, Google must prove that the "'*primary purpose*' of the communication was securing legal advice." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (emphasis added).

### C. The Lindholm Email Is A Communication Discussing Google's Business Strategy Of Negotiating For A License, Which Is Not Subject To Any Privilege

The text of the email establishes that Mr. Lindholm was investigating technical alternatives to assist in developing a negotiation strategy. Even if lawyers were involved in formulating that strategy, and even if the motivation to negotiate came from a threat of litigation, communications of that business strategy are not privileged. As another court held on very similar facts,

> Gateway was negotiating with Adams at the same time it was making its investigation. Gateway's good faith negotiations with Adams show Gateway had significant business interests which were at issue in the investigation. These issues may have been similar to those in potential litigation. ***Documents showing business or negotiation strategy are not matters of litigation strategy protected by the work product privilege.***

*Adams v. Gateway, Inc.*, 2003 WL 23787856, *15 (D. Utah 2003) (emphasis added). *See also Hardy v. New York News*, 114 F.R.D. 633, 644-45 (S.D.N.Y. 1987) ("When the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected simply because legal considerations are also involved.").[4]

### D. Magistrate Judge Ryu Correctly Found That Google Failed To Meet Its Burden Of Establishing That The Email Was A Communication To An Attorney For The Primary Purpose Of Obtaining Legal Advice.

Google conveniently summarizes its argument as having four parts. (Dkt. No. 441 at 8:21-9:5) Less conveniently for Google, all fours parts are wrong.

***First***, Google objects that Magistrate Judge Ryu "ignored all ***intrinsic*** evidence that the communication is privileged," by which Google means the last-minute addition of the words "Attorney Work Product" and inclusion of Mr. Lee, and the fact that email concerns some of the same technology that Oracle asserted was infringing. But Magistrate Judge Ryu did not "ignore" anything – she considered all of the "intrinsic" evidence, particularly the words that Mr. Lindholm wrote at the time.

---

[4] Google cites *United States v. Chen*, 99 F.3d 1495, 1501-02 (9th Cir. 1996) as holding that communications related solely to business negotiations can be privileged. (Dkt. 441 at 13 n.42) *Chen* says no such thing. *Chen* merely observes that the labels "business" and "legal" often are not helpful; the issue is whether the attorney is employing his or her knowledge of the law. *Id.*

7

1   (Dkt. No. 361 at 5:3-7 (rejecting argument that "work product" legend and inclusion of Mr. Lee support
2   inference that the Email is privileged, as "the contents of the email itself severely undermine" claim of
3   privilege); 7:3-8 (rejecting argument that boilerplate legend of "work product" or inclusion of attorney
4   is enough to confer privilege; citing cases); 6:7-10 (observing that email's reference to alternatives to
5   Java for Chrome as well as for Android "further erodes Google's claim" of privilege, because Oracle
6   did not mention Chrome at the July 20 meeting, and Chrome has played no role in this litigation).)

7   ***Second***, Google objects that Magistrate Judge Ryu "ignored all *extrinsic* evidence that the
8   communication is privileged," by which Google means its declarations.  Again, Magistrate Judge Ryu
9   "ignored" nothing.  Rather, she carefully analyzed those declarations, and found them inadequate to
10  meet Google's burden or to overcome the specific facts in the email itself.  (Dkt. No. 361, at 4:15-5:2
11  (summarizing the Google declarations); 5:7-20 (listing "basic gaps" in the Google declarations).)

12  ***Third***, Google objects that Magistrate Judge Ryu "speculated about then-occurring non-legal
13  business activities to which the communication might relate."  There was no "speculation."  Rather,
14  Magistrate Judge Ryu focused closely on the text of the email, including its emphasis on business
15  negotiation strategy and considerations unrelated to the litigation; the inconsistencies between what the
16  email says and what Google claims the email is; the inconsistencies between the persons identified in
17  the email (Page, Brin, Rubin, ▬▬▬▬) and the parties involved in the legal investigation (Walker,
18  Lee, and unspecified "senior management"); and Google's inability to explain why the facts stated in
19  the email do not match up to its story now.  (Dkt. No. 361 at 5:3-6:14.)

20  ***Fourth,*** Google objects that Magistrate Judge Ryu "declared that the party asserting privilege
21  had failed to carry its burden of disproving her speculations about how the communication might
22  concern ordinary business matters as opposed to a legal investigation."  This is nonsense.  Magistrate
23  Judge Ryu found that the email itself "severely undermines" any claim of privilege, explained in detail
24  why that was so, and found that Google had "no rejoinder to these central facts."  (Dkt. No. 361 at 5:6,
25  5:25).   Magistrate Judge Ryu did not require Google to "disprove[e] her speculations."  She required
26  Google to meet its burden of establishing privilege by addressing the facts, not just reciting legal
27  standards in formulaic declarations.  Google failed to meet that burden.
28         Having summarized its argument, Google then lists seven quotes from the Order, calls those

Magistrate Judge Ryu's "seven reasons" for concluding the email was not privileged, and objects to each. Google's selective quotes do not, of course, represent all of the reasons that Magistrate Judge Ryu gave for granting the motion to compel. Most importantly, Google still has "no rejoinder" to the "central facts" of the email itself. But all of its specific objections are equally meritless.

### 1. Magistrate Judge Ryu Correctly Found That Mr. Lee's Declaration Lacked A Foundation That He Had Reviewed The Email At Issue

Magistrate Judge Ryu found that Mr. Lee "did not indicate that he reviewed the Email and could competently represent that it was connected to the work he requested from Lindholm as part of the legal advice he describes in his declaration." (Dkt. No. 361 at 5:9-11) Google's objection to this evidentiary ruling is reviewed under the clearly erroneous standard. *See Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1320 (Fed. Cir. 2007). There is no error, clear or otherwise.

Google merely argues that Mr. Lee was *not required* to provide a foundation for his testimony, because his declaration states that he "received the email in question and describes what it is about." (Dkt. No. 361 at 9:14-15). But this statement does not establish Mr. Lee's competence as a witness. Fed. R. Evid. 602. The party offering the testimony bears the burden of laying a foundation showing that the witness "had an adequate opportunity to observe and presently recalls the observation." Kenneth S. Broun *et al.*, 1 McCormick on Evidence, at § 10. Not only did Google fail to provide this foundation, but Mr. Lee's mis-identification of the email in his original declaration, his assertion "on information and belief" that the email he describes is the one on Google's privilege log, and the scores of other entries on Google's privilege log that could be the email he received "on or about August 6, 2010," all provide additional reasons to conclude that the required foundation was absent.

### 2. Magistrate Judge Ryu Correctly Found That Google's Declarations Failed To Rebut The Reasonable Inference That Mr. Lee and Mr. Lindholm Were Discussing "Non-Privileged Matters, Including The Business Of Negotiating For A Java License"

Google next objects to Magistrate Judge Ryu's observation that Mr. Lindholm and Mr. Lee may well have been discussing "non-privileged matters, including the business of negotiating for a Java license" and that Google failed to negate that possibility. Again, this factual finding is reviewed on the clearly erroneous standard, and Magistrate Judge Ryu's ruling is correct.

Contrary to Google's assertion, Magistrate Judge Ryu was not engaged in "counterfactual

9
OPPOSITION TO DEF.'S MOTION FOR RELIEF FROM NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE
CASE NO. CV 10-03561 WHA

speculation;" she was highlighting Google's failure to rebut the obvious, reasonable interpretation of Mr. Lindholm's email as a discussion of business negotiations, not litigation.  Further, Google's claim that Mr. Lindholm "***specifically excluded*** the possibility that the email was about anything else" (Dkt. 441 at 10:1-2) is mere exaggeration.  What Mr. Lindholm actually wrote was that, in preparing the email, he "was not intending to give general business advice to anyone in connection with Android's ongoing business operations."  (Dkt. No. 408-3, Lindholm Response Decl., ¶ 7.)[5]  Even assuming that Mr. Lindholm could credibly claim that his email contained no business advice – and he cannot – that generic statement leaves open the reasonable possibility that he was giving Mr. Rubin specific advice about "technical alternatives to Java" and business strategies for negotiating for a Java license, neither of which was part of "Android's ongoing business operations" in August 2010.

### 3. Magistrate Judge Ryu Correctly Found That Google Never Explained Why The Email Focuses On Business Executives Rubin, Page And Brin, Yet None Of The Declarations Describing Legal Advice Refer To The Involvement Of Those Persons.

In the email, Mr. Lindholm wrote to Mr. Rubin that he had been given his task "by Larry and Sergei."  In his declaration, he described assistance he gave to an investigation at the request of Ben Lee and Kent Walker.  (Dkt. No. 408-2, Lindholm Decl. ¶¶ 5, 7.)  Magistrate Judge Ryu correctly found that neither Lindholm nor Lee explained this discrepancy.  They do not aver that Messrs. Rubin, Page, or Brin were involved in efforts to obtain legal advice.  The reasonable conclusion is that the investigation of technical alternatives described in the email is not the legal advice described by Mr. Lee and Mr. Lindholm, because business executives, not lawyers, were directing Mr. Lindholm.

Google's objection, again, is subject to clearly erroneous review.  Google appears to first assert that Mr. Page and Mr. Brin must have been involved in legal analysis of Oracle's infringement claims, even though none of Google's five declarations says that.  From this conjecture, Google asserts that when Mr. Lindholm wrote about the request from "Larry and Sergei" that he investigate "technical alternatives to Java for Android and Chrome" the only plausible inference is that he was really referring to a request from Mr. Walker and Mr. Lee that he assist them in efforts to "develop legal advice and

---

[5] Courts generally do not credit witnesses' conclusory characterizations of communications as "business" advice or "legal" advice.  *Chen*, 99 F.3d at 1501-02.  Indeed, Mr. Lindholm's declaration leaves open the possibility that he believes – mistakenly – that discussions of business negotiation strategy that include lawyers are not "business" advice.

1  convey that advice to Google's executive management." (Dkt. No. 441 at 10:5-18) But "Larry and
2  Sergei" are not "Kent and Ben;" Mr. Lindholm knows the difference. Google's efforts to fill the "basic
3  gaps" in its declarations with its lawyers' own say-so do not meet its burden.

4  Google then contends that Magistrate Judge Ryu "appears to have assumed that a legal
5  investigation can be ordered or supervised either by top management, or by the company's general
6  counsel – but never by both." (*Id*. at 10:19-11:1.) Magistrate Judge Ryu made no such assumption.
7  She merely pointed out that the email identifies an investigation directed by Mr. Page and Mr. Brin, and
8  the declarations identify an investigation directed by Mr. Walker and Mr. Lee, and despite that
9  significant discrepancy, Google offered no evidence to explain it.

### 4. Magistrate Judge Ryu Properly Relied On Content Of The Entire Email In Correctly Finding That It Was Not Prepared In Anticipation Of Litigation Or To Further The Provision Of Legal Advice.

12  Magistrate Judge Ryu carefully analyzed the text of the email and found that nothing in it
13  indicated "that Mr. Lindholm prepared it in anticipation of litigation or to further the provision of legal
14  advice" and explained why. (Dkt. No. 361 at 5:21-25.)

15  ***First***, Google claims that the "content of the email" supports the claim of privilege. But what
16  Google calls "content" is window dressing. As Magistrate Judge Ryu explained, the text of the email
17  describes business negotiation strategy, not legal advice or litigation strategy. The fact that the email
18  refers to Java technology, which Android infringes, does not undermine in any way the fact that Mr.
19  Lindholm's email was analyzing business options, not assisting in litigation analysis.

20  ***Second***, Google argues that Magistrate Judge Ryu was wrong when she wrote that the email is
21  "not directed to Walker or Lee, or indeed, to any lawyer." (*Id*. at 5:22-23.) In fact, Google says, Mr.
22  Lee's name is in the "To:" line. Google misses the point. The email is "directed to" Mr. Rubin, who is
23  the sole person in the salutation, and the email seeks a response from Mr. Rubin alone.

24  ***Third***, Google argues that Magistrate Judge Ryu was wrong when she wrote that the email
25  "expressly states that Page and Brin (and not the lawyers) instructed Lindholm and Grove to undertake
26  the technological research discussed in the Email." (*Id*. at 5:23-25). But that is exactly what Mr.
27  Lindholm wrote: "what we have been asked to do (by Larry and Sergei) . . . ." Although Google's
28  quibble is difficult to discern, it appears that Google misreads the Order. Magistrate Judge Ryu did ***not***

1  find that the email expressly states that no lawyer asked Mr. Lindholm to investigate technical

2  alternatives.  Instead, Magistrate Judge Ryu found that Page and Brin are expressly mentioned in the

3  email as directing the project, while the lawyers are not mentioned at all.  The omission of the lawyers

4  does, however, strongly support the inference that the investigation described in the email was not

5  performed at the request of lawyers, but by the Google founders who are actually named.

### 5. Magistrate Judge Ryu Correctly Found That The Email Text Never Mentions Legal Advice, Lawyers, Litigation, Oracle, Or Patent Infringement But Rather Reflects A Strategy Discussion To Address Business Negotiations Regarding A Java License.

8  Google's fifth objection is especially frivolous.  Magistrate Judge Ryu examined the email and

9  correctly observed that the text of the email makes no reference to legal advice, lawyers, litigation,

10  Oracle, or patent infringement.  She found that it focused on "technological aspects of Chrome and

11  Android, and the need to negotiate a license for Java."  Based on the entirety of the email text, she

12  concluded that the email "appears to be a strategy discussion intended to address business negotiations

13  regarding a Java license" (*Id.* at 6:3-5, 12-13)

14  Based on those findings, Google accuses Magistrate Judge Ryu of holding that a communication

15  cannot be privileged unless it contains an express reference to litigation.  (Dkt. No. 441 at 12:13-19).

16  No such holding, implied or express, is in the Order.  Magistrate Judge Ryu simply did what Google

17  still refuses to do:  read the email and apply the plain meaning of its words.  For good reason,

18  Magistrate Judge Ryu found that those words, quoted in full at the outset of this brief, but ***nowhere in***

19  ***Google's brief***, "severely undermine" the claim of privilege.  It is neither novel nor offensive to the

20  privilege to point out that a communication that focuses entirely on alternatives, price, and negotiation

21  strategy, and never mentions litigation, lawyers, or legal claims, probably is not privileged.

22  Google also accuses Magistrate Judge Ryu of engaging in "speculation" by characterizing the

23  email as "a strategy discussion intended to address business negotiations regarding a Java license."

24  Google's argument still fails to deal with the email's repeated references to "negotiation,"

25  "alternatives," "options," "license," "terms," and "price."

### 6. Magistrate Judge Ryu Correctly Applied The Law Requiring A Clear Showing For Claims of Privilege Involving In House Counsel, But Google Has Not Met Even The Lower Standard It Advocates.

28  This Court has held that "[w]ith respect to internal communications involving in-house

1   counsel," the party claiming privilege must make a *'clear showing'* that the 'speaker' made the
2   communications for the purpose of obtaining or providing legal advice." *ChevronTexaco*, 241 F. Supp.
3   2d at 1076 (following now-Justice Ginsburg's opinion in *In re Sealed Case*, 737 F.3d 94, 99 (D.C. Cir.
4   1984)). Magistrate Judge Ryu cited that standard in her Order; Google says she is wrong. She is not.

5   Google cites *United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996) as supposedly rejecting
6   the rule of *In re Sealed Case*. But *Rowe* did not concern this issue, and Google quotes it out of context.
7   In *Rowe*, lawyers performed an internal investigation of improprieties at their own law firm. The
8   government also investigated and served subpoenas on the lawyers. The government argued that
9   communications among the lawyers were not privileged, because there was no communication with a
10  client. *See id.* The Ninth Circuit held that the lawyers were acting, effectively, as in house counsel, and
11  that as such, their confidential communications concerning the investigation were privileged. The
12  Ninth Circuit never purported to address the *showing* necessary to establish privilege for in-house
13  communications, and the treatise it cited did not address that point either. *See id.* In short, *Rowe* stands
14  only for the uncontroversial rule that in-house lawyers have a "client" for purposes of the attorney-
15  client privilege. No case has ever cited it for the rule Google attributes to it.

16  Google then argues that under the "clear showing" standard, there is a rebuttable presumption
17  that a lawyer in the legal department is "most often" giving legal advice. (Dkt. No. 441 at 14:7-13).
18  But this rule is unavailing to Google, as it has provided no evidence whatsoever about Mr. Lee's role at
19  Google. Moreover, as Google itself has argued in this very case, lawyers with responsibility for
20  litigation matters also have responsibility for making business decisions.[6]

21  In any event, Google failed under either standard to establish that the email was for the primary
22  purpose of obtaining legal advice, as opposed to a discussion of business negotiation strategy.

23  **7. Magistrate Judge Ryu Correctly Found That The Assertions By Google Counsel To
        The Court About The Email Undermine Google's Claim Of Privilege**
24
25  The substance of the Lindholm email was discussed at two hearings on July 21. Not only did
26  Google's inside and outside counsel make no objection that the document was privileged, they actually

---

27  [6] *See, e.g.*, Dkt. No. 145 at 5-10 (Google's objections to disclosure of Highly Confidential material to
    Oracle in-house lawyers Dorian Daley, Deborah Miller, Matthew Sarboraria, and Andrew Temkin, on
28  grounds that these attorneys are responsible for competitive decision making).

13

1  argued the document's substance.  Mr. Van Nest went further, asserting that Mr. Lindholm was acting
2  at the direction of the CEO, and that the email reflected the parties' "negotiations" for a "license."
3      In an effort to evade its own lawyers' words, Google contends that those lawyers were
4  "surprised" and seeing the email for the "first time."   That claim has no support in the record.  Mr.
5  Baber and Mr. Van Nest did not tell the Court they were unfamiliar with the document; to the contrary,
6  they made affirmative representations about what the email meant.  There is no declaration from any
7  Google lawyer professing that he or she had not seen the email before July 21, and for good reason:  the
8  July 21 discovery hearing included Oracle's motion to take Mr. Lindholm's deposition.  It is
9  implausible that Google counsel opposed allowing Oracle to take Mr. Lindholm's deposition without
10 even reviewing documents he produced that contained words like Android, Java, license, and negotiate.
11     In any event, Google again misses the point.  As Magistrate Judge Ryu noted, sophisticated
12 Google lawyers who know the facts of the case saw the Lindholm email and concluded that it discusses
13 business negotiation strategy, not privileged communications.  They reached that conclusion, not
14 because they were "surprised" or ill-informed but because that is what the document indicates.

### E. Magistrate Judge Ryu Correctly Held That Google Failed To Establish Work Product Protection For The Email.

Magistrate Judge Ryu found that Google failed to prove that the email was prepared for the purpose of litigation.  She also found that Google waived any work product dual purpose argument, a finding that Google does not challenge. (Dkt. No. 361 at 8:15-21 & n.6).  Accordingly, Google can establish work product protection only if the email was created exclusively in preparation for litigation.  Because the document concerns negotiations, not litigation, Google cannot demonstrate that this email was created in preparation for litigation at all, and its claim of work product protection must fail.

### F. Google Has Waived Any Otherwise Applicable Privilege.

Google has the burden of establishing that it did not waive the privilege.  *See Weil v. Investment/Indicators,* 647 F.2d 18, 23-25 (9th Cir. 1981); *Conceptus Inc. v. Hologic, Inc.*, No. C 09-02280 WHA, 2010 WL 3911943, *1 (N.D. Cal. Oct. 5, 2010).  Google has waived any applicable privilege for three independent reasons, none of which it addresses in its brief.

*First*, Google originally produced eight copies of drafts of the email after its attorneys carefully

1  reviewed them and decided – eight separate times – to designate them as Attorneys' Eyes Only, but not
2  privileged.  Google's production after making that designation – presumably with restraint and care,
3  (Dkt. No. 66 at 5) cannot be inadvertence.  *See Conceptus,* 2010 WL 3911943, *2.

4  ***Second***, Google waived the privilege when it not only failed to object to Oracle's use of the
5  documents at two separate hearings, but Google itself actually argued the substance of those
6  documents.  "[I]f a privileged document is used at a deposition, and the privilege holder fails to object
7  immediately, the privilege is waived." *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, 2010
8  WL 275083, *5 (S.D. Cal. Jan 13, 2010) (privilege waived by failure to object to use of document ***for***
9  ***two minutes*** at deposition); *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 206–08 (5th Cir. 1999);
10 *Wheeling-Pittsburgh Steel Corp. v. Underwriters Labs., Inc*., 81 F.R.D. 8, 9-10 (N.D. Ill. 1978).

11 ***Third***, Google waived the privilege by affirmatively publishing the ostensibly privileged
12 information on the google.com search page and directing members of the public to the document's
13 contents.  As Judge Friendly warned nearly forty years ago: "[i]t is not asking too much to insist that if
14 a client wishes to preserve the privilege under such circumstances, he must take some affirmative action
15 to preserve confidentiality." *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973), *cert. denied*, 414 U.S. 867;
16 *see also In re von Bulow*, 828 F.2d 94, 101-02 (2d Cir. 1987) (client waived attorney-client privilege
17 when client promoted book published by his attorney that included client's privileged material).

### IV.    Conclusion

19 For all of the reasons stated above and in the Order itself, the Order should be affirmed.

Respectfully submitted,

Dated: September 26, 2011            BOIES, SCHILLER & FLEXNER LLP

By:  */s/ Fred Norton*
     Fred Norton
     *Attorneys for Plaintiff*
     ORACLE AMERICA, INC.