ROBERT A. VAN NEST (SBN 84065)
rvannest@kvn.com
CHRISTA M. ANDERSON (SBN 184325)
canderson@kvn.com
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
bbaber@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

DONALD F. ZIMMER, JR. (SBN 112279)
fzimmer@kslaw.com
CHERYL A. SABNIS (SBN 224323)
csabnis@kslaw.com
KING & SPALDING LLP
101 Second Street – Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

IAN C. BALLON (SBN 141819)
ballon@gtlaw.com
HEATHER MEEKER (SBN 172148)
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

Attorneys for Defendant
GOOGLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. 3:10-cv-03561-WHA<br><br>Honorable Judge William Alsup<br><br>Hearing Date: October 13, 2011<br>Hearing Time: 8:00 a.m.<br><br>**DEFENDANT GOOGLE INC.'S SECOND MOTION TO STRIKE PORTIONS OF THE MITCHELL PATENT REPORT** |

PLEASE TAKE NOTICE that on October 13, 2011 at 8:00 a.m., or as soon thereafter as counsel may be heard, Defendant Google Inc. ("Google") will, and hereby does, respectfully move to strike portions of the Expert Reports of John C. Mitchell Regarding Patent Infringement (the "Mitchell Report," Ex. A; "Mitchell Reply Report," Ex. B). This Motion is based on the following memorandum of points and authorities in support, the Declaration of Brian C. Banner ("Banner Decl.") and accompanying exhibits, the entire record in this matter and on such evidence as may be presented at a hearing on this motion.

## INTRODUCTION

In accordance with the Court's Order granting leave to file an additional motion to strike (Dkt. No. 464 at 8), Google raises herein additional critiques of the Mitchell Report, and in other instances, critiques of Dr. Mitchell's *Reply* report. In presenting the critiques below, Google is mindful of the stated rationale in the Court's Order and only identifies issues that align with that guidance. This motion starts with Critique "D" to avoid overlapping with critiques A-C in the first motion.

**CRITIQUE D – To Demonstrate Infringement of the '720 patent, the Mitchell Report Adds New Theories Regarding Android's Use of The Functions *vfork()* and *clone()***

Oracle's infringement contentions ("ICs") allege that Android infringes asserted claims of the '720 patent by way of the *fork()* cloning mechanism in the Linux kernel (a software layer beneath the Dalvik VM). (*See* Ex. C, Oracle's claim chart on the '720 patent at 15-17). In connection with asserted claim 1 of the '720 patent, Dr. Mitchell relies on this theory and claims that "[t]he Linux fork executed by Android provides the 'copy-on-write process cloning mechanism' in its *fork()* system call." (Ex. A at ¶ 606.) Dr. Mitchell then adds that "Linux provides ***additional*** 'process cloning mechanisms' in its *vfork()* and *clone()* system calls" and even quotes a book that explains the distinctions between the "fork(), vfork(), and clone() System Calls." (*Id.* (emphasis added).)

Neither of the *vfork()* and *clone()* mechanisms were ever identified in Oracle's ICs. Like the TreeMap theory in Google's first motion, these are new theories that Oracle failed to disclose previously. They qualify as a new theory because Oracle is **not** asserting that *vfork()* or *clone()*

are part of its *fork()* theory, of a more detailed explanation thereof. Rather, Oracle is asserting that these mechanisms can be used **instead** of the *fork()* theory in its ICs.

This distinction is of particular importance in regard to asserted claim 6. Whereas Oracle's ICs for claim 6 identify only the *fork()* mechanism as meeting various claim elements (Ex. C at 34-35), Dr. Mitchell's report does **not** rely on *fork()* and instead relies exclusively on the *clone()* mechanism. (*See* Ex. A at ¶¶ 622-627.) Dr. Mitchell identifies a feature of *clone()* called the "CLONE_VM flag" (*id.* at ¶ 624) and explains that when the "CLONE_VM flag" is not set, the *clone()* mechanism allegedly infringes claim 6. (*See id.* at ¶¶ 624, 627.)

It is firmly established that a plaintiff cannot introduce infringement theories that were not disclosed in its ICs. *See O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006) (*citing Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006) ("The [patent local] rules are designed to require parties to crystallize their theories of the case early in the litigation *and to adhere to those theories once they have been disclosed.*" (emphasis added))).

Accordingly, Google respectfully requests that the Court strike from the Mitchell Report the relevant portion of ¶ 606 and all of ¶¶ 622-627 because they improperly refer to and rely upon the *vfork()* and *clone()* mechanisms that were not identified in Oracle's ICs.

**CRITIQUE E – The Mitchell Report Improperly Adds A New "mBS Mobile" Infringement Theory for the '476 Patent**

Oracle's ICs for the '476 Patent generally allege that certain API libraries within Android's operating system provide the security functionality claimed in the '476 Patent. But an introductory section of the Mitchell Report that precedes his detailed infringement analyses appears to offer a very different theory of infringement. In particular, Dr. Mitchell identifies a third party Android application called "mBS Mobile" and notes that "mBS Mobile is shipped with the Java Security Manager turned on and a default security policy…" (Ex. A at ¶¶ 70, 77.)[1]

---

[1] Paragraph 70 of Dr. Mitchell's Report appears to relate to the '447 patent, which is no longer asserted in this case. However, paragraph 70 is an exact copy of paragraph 77, which appears to relate to the presently-asserted '476 patent. Because neither paragraph mentions either patent by name, Google moves to strike both paragraphs so that it is clear that the mBS Mobile product may not be offered as evidence of infringement of the '476 patent.

Dr. Mitchell appears to be arguing that, instead of the security functionality being entirely provided by *Android's* source code, a foreign, third party application could theoretically be installed on an Android device and provide <u>its own</u> security functionality that interacts with Android code to practice the '476 Patent.[2] While Google cannot guess at what Oracle attempts to achieve here, it knows that there was no mention of mBS Mobile anywhere in Oracle's ICs. Thus, Dr. Mitchell should be precluded from offering any infringement theories in connection with the mBS Mobile product. For example, if Oracle contends mBS Mobile is relevant for indirect infringement, it should have been disclosed pursuant to Patent L.R. 3-1(d). *See generally Bender v. Advanced Micro Devices, Inc.*, No. 09-cv-01152, 2010 U.S. Dist. LEXIS 89957 at *9 (N.D. Cal. July 29, 2010) ("plaintiff must identify each accused product and link it to a representative product [claim chart] in order to provide [the defendant] with fair notice of the specific products which are accused in this lawsuit.")

Accordingly, Google respectfully requests that paragraph 70 and 77 be stricken from the Mitchell Report, or alternatively, Dr. Mitchell be precluded from offering any infringement theories based on mBS Mobile.

**CRITIQUE F – The Mitchell *Reply* Report Adds a New Infringement Theory Regarding the '476 Patent**

Oracle's ICs allege that asserted claims of the '476 Patent are met, in part, by execution of the SecurityManager class (which has been disabled in Android). (*See* Ex. D, Oracle's claim chart on the '476 patent at 5, 20-21 (use of SecurityManager) and 74-76 (asserted claims 13-15).) Dr. Mitchell similarly identifies execution of the SecurityManager class as meeting Claim 10, "element B" of the '476 patent. (*See* Ex. A at ¶¶ 734-36; 763.)

A new theory appearing for the first time in Dr. Mitchell's *Reply* Report posits that, for the '476 patent, "[e]ven if the SecurityManager is *disabled*, the Java security framework may still be used . . ." (*See* Ex. B at ¶ 115 (emphasis added).) Although Dr. Mitchell is vague on the

---

[2] It doesn't help that many of the web links cited in these paragraphs by Dr. Mitchell no longer work.

details, he is essentially offering a new infringement theory that departs from Oracle's earlier allegations in that it does not require execution of the SecurityManager class.

Just because Oracle's existing infringement theories have not been borne out does not give it a license to posit new theories, after discovery, in a reply report. The entirety of paragraph 115 of the Reply report should be stricken because it represents a new infringement theory that was never previously disclosed by Oracle. *See Nova*, 417 F. Supp. 2d at 1123 ("The [patent local] rules are designed to require parties to crystallize their theories of the case early in the litigation *and to adhere to those theories once they have been disclosed*." (emphasis added))). Furthermore, paragraph 115 of the Reply report should be stricken because the Court specifically instructed the parties that "[r]eply reports must be limited to true rebuttal and should be very brief. They should not add new material that should have been placed in the opening report…" Case Management Order, Dkt. No. 56 at ¶ 8.

**<u>CRITIQUE G</u> – The Mitchell Reply Report Adds New Infringement Theories Regarding the '520 Patent**

According to the infringement theory presented in Oracle's ICs, Android's dx tool allegedly infringes the asserted claims of the '520 patent where it successfully creates a single new instruction, referred to as a fill-array-data instruction, that replaces a less efficient series of Java bytecode instructions for initializing individual elements of a static array. Specifically, Oracle's ICs allege that the asserted claims are met when the dx tool calls the parseNewarray() method to identify the static initialization of an array, and creates a single fill-array-data instruction for initializing the static array. (*See* Ex. E, Oracle's claim chart on the '520 patent at 15-20 (pointing to the parseNewarray() method as satisfying "simulating execution" step), 20 (identifying slides 41-45 of the Dalvik Presentation as satisfying the "storing . . . an instruction" step) and at 29-30 (showing the fill-array-data instruction in the dx tool output).) In his opening Report, Dr. Mitchell relies upon this same theory of infringement for the '520 patent claims. (*See, e.g.*, Ex. A at ¶¶ 524, 526, 541.)

In his Reply Report, Dr. Mitchell presents two new theories of infringement that were not disclosed in Oracle's ICs. The first new theory posits that the dx tool can infringe the '520

patent claims by "creat[ing] (and stor[ing]) one *or more* instructions requesting the static initialization of the array." (Ex. B at ¶ 92 (emphasis added).) This new theory departs from Oracle's ICs, where Oracle's infringement theory is limited to instances where the dx tool allegedly creates *a single* fill-array-data instruction for initializing a static array. (*See, e.g.*, Ex. A at ¶¶ 524, 526, 541.) In contrast, Dr. Mitchell's new allegations of infringement now include instances where more than one instruction is created.

The second new theory presented for the first time in Dr. Mitchell's Reply Report posits that an unsuccessful simulated execution can somehow infringe the '520 patent, meaning that the claimed step of "simulating execution" doesn't need to identify a series of instructions for initializing individual elements of the array. Now, just translating the less efficient series of Java bytecode instructions for initializing individual elements of the array into a functionally identical series of Dalvik instructions is allegedly sufficient to infringe the '520 patent. Dr. Mitchell explains: "The claims do not require the simulating step to succeed in identification of the static initialization of the array in all cases," and that code without the fill-array-data instruction "is evidence of infringement, because . . . [the resulting] instructions [are] fewer than the original number of bytecodes from the .class file." (Ex. B at ¶ 92.)

This theory bears no resemblance to Oracle's original theory, which required the creation of the new fill-array-data instruction. In its place, Dr. Mitchell's new theory suggests that any translation of a Java bytecode array initialization sequence would infringe as long as the resulting code has fewer instructions than were present in the original Java .class file.

Dr. Mitchell's attempt at introducing two new theories of infringement is improper. Accordingly, the "one or more instructions" phrase and the last three sentences of paragraph 92 of the Reply report should be stricken. *See Nova*, 417 F. Supp. 2d at 1123 ("The [patent local] rules are designed to require parties to crystallize their theories of the case early in the litigation *and to adhere to those theories once they have been disclosed.*" (emphasis added)).

## CONCLUSION

For the forgoing reasons, Google respectfully requests the Court grant the relief it deems appropriate, such as an order providing that:

(a) Oracle and its experts cannot refer to or rely upon new theories concerning the *vfork()* and *clone()* mechanisms with respect to the '720 patent (*i.e.,* a portion of ¶ 606 and ¶¶ 622-627);

(b) Oracle and its experts cannot refer to or rely upon any infringement theories based on mBS Mobile with respect to the '476 Patent (*i.e.,* ¶¶ 70, 77);

(c) Oracle and its experts cannot refer to or rely upon any infringement theories for the '476 Patent that do not require the SecurityManager (*i.e.,* Reply ¶ 115);

(d) Oracle and its experts cannot refer to or rely upon any infringement theories for the '520 patent where static array initialization is performed by more than one instruction (*i.e.,* Reply ¶ 92); and

(e) Oracle and its experts cannot refer to or rely upon any infringement theories for the '520 patent that do not require the fill-array-data instruction (*i.e.,* Reply ¶ 92).

| | | |
|---|---|---|
| 1 | DATED: September 29, 2011 | **KING & SPALDING, LLP** |
| 2 | | By: /s/ Scott T. Weingaertner /s/ |
| 3 | | Scott T. Weingeartner |
| 4 | | ROBERT A. VAN NEST (SBN 84065) |
| | | rvannest@kvn.com |
| 5 | | CHRISTA M. ANDERSON (SBN 184325) |
| | | canderson@kvn.com |
| 6 | | KEKER & VAN NEST LLP |
| 7 | | 633 Battery Street |
| | | San Francisco, CA 94111-1809 |
| 8 | | Telephone: (415) 391-5400 |
| | | Facsimile: (415) 397-7188 |
| 9 | | |
| 10 | | SCOTT T. WEINGAERTNER (*Pro Hac Vice*) |
| | | sweingaertner@kslaw.com |
| 11 | | ROBERT F. PERRY |
| | | rperry@kslaw.com |
| 12 | | BRUCE W. BABER *(Pro Hac Vice)* |
| | | bbaber@kslaw.com |
| 13 | | KING & SPALDING LLP |
| 14 | | 1185 Avenue of the Americas |
| | | New York, NY 10036-4003 |
| 15 | | Telephone: (212) 556-2100 |
| | | Facsimile: (212) 556-2222 |
| 16 | | |
| 17 | | DONALD F. ZIMMER, JR. (SBN 112279) |
| | | fzimmer@kslaw.com |
| 18 | | CHERYL A. SABNIS (SBN 224323) |
| | | csabnis@kslaw.com |
| 19 | | KING & SPALDING LLP |
| 20 | | 101 Second Street – Suite 2300 |
| | | San Francisco, CA 94105 |
| 21 | | Telephone: (415) 318-1200 |
| | | Facsimile: (415) 318-1300 |
| 22 | | |
| 23 | | IAN C. BALLON (SBN 141819) |
| | | ballon@gtlaw.com |
| 24 | | HEATHER MEEKER (SBN 172148) |
| | | meekerh@gtlaw.com |
| 25 | | GREENBERG TRAURIG, LLP |
| 26 | | 1900 University Avenue |
| | | East Palo Alto, CA 94303 |
| 27 | | Telephone: (650) 328-8500 |
| | | Facsimile: (650) 328-8508 |
| 28 | | |
| | | ATTORNEYS FOR DEFENDANT |
| | | GOOGLE INC. |

I hereby attest that Scott T. Weingaertner concurs in the e-filing of this document.

Dated: September 29, 2011         /s/ Cheryl A. Sabnis /s/
                                  Cheryl A. Sabnis