KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:     415.391.5400
Facsimile:     415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY  10036
Tel:            212.556.2100
Fax:           212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel:            415.318.1200
Fax:            415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:           650.328.8500
Fax:          650.328-8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>         Plaintiff,<br><br>   v.<br><br>GOOGLE INC.,<br><br>         Defendant. | Case No. 3:10-cv-03561-WHA (DMR)<br><br>**GOOGLE'S CASE MANAGEMENT STATEMENT ON THE STATUS OF THE PTO REEXAMINATIONS, THE VALUE OF A STAY, AND AN ESTIMATE OF TIME NEEDED FOR TRIAL**<br><br>Dept.:      Courtroom 9, 19th Floor<br>Judge:      Hon. William Alsup<br><br>Date Comp. Filed:    October 27, 2010<br>Trial Date:              October 31, 2011 |

Pursuant to the Court's September 26, 2011 request, Defendant Google Inc. ("Google") hereby presents its case management statement regarding the status of the PTO reexaminations, an update on Google's views as to whether this case should be stayed pending completion of the reexaminations, a statement on the extent to which plaintiff's latest damage study rests on copyright issues, and a statement regarding time needed for trial of the remaining issues.

Months ago, the Court encouraged Oracle to narrow its claims in a manner that would allow this case to be tried in a reasonable fashion.  As the Court has noted, "the larger the number of patents and patent claims asserted, [] the more practical it will then seem to simply stay this case and see which claims survive PTO reexamination."  (Dkt. 147 at 1:21–23.)  Indeed, the Court has suggested that something on the order of three patent claims would be appropriate for trial in this case.  (Dkt. 131 at 1:22–24.)  The Court also indicated that if Oracle was not willing or able to properly narrow the case, "trial will either be put over until it is trial-ready and/or a trial stay pending re-examination will be entered."  (Dkt. 147 at 2:5–7.)  Just last week, the Court requested that Oracle explain how many claims it continues to assert and "explain why the total number of such claims is consistent with prior representations made to the Court."  (Dkt. 458 at 1:23–26.)

Oracle's September 29, 2011 case management statement (Dkt. 471) simply ignores the Court's instruction to reduce the asserted claims to a manageable and triable number, positing instead a case management train wreck featuring 26 claims from 6 unrelated patents and a separate, complex copyright case, presented by more than 35 witnesses – many of them experts. The accompanying proposed verdict form contains more than 100 separate questions for the jury, spread across six technology areas.  Such an undertaking – even if it could be made understandable to a jury – could not possibly be conducted within the time allotted by the Court. Given this, the alternative of staying the case to allow the PTO to complete its work is more practical, and the PTO should therefore be given the opportunity to separate the wheat from the chaff in the first instance.

If the case is to proceed as it currently exists, Google requests at least 75 hours of trial time to properly try all liability issues covering the alleged infringement of 26 separate claims of

six unrelated patents, the invalidity of those patents (which involves almost two dozen distinct prior art references), the alleged infringement of copyrights unrelated to the patents, and Google's waiver, estoppel, and other equitable defenses.

## I. THE REEXAMINATIONS ARE LIKELY TO NARROW THE SET OF ASSERTED CLAIMS SIGNIFICANTLY.

The reexaminations of five of the six patents in suit remain ongoing, with roughly two thirds of the currently asserted claims standing rejected. Indeed, eighty percent of the asserted claims as to which the PTO has issued an office action as part of the reexamination process have been rejected. As of this date, the PTO has rejected all of the asserted claims of four of the six patents; the PTO has not yet issued an office action with respect to one of the patents; and the PTO has confirmed the patentability of the asserted claims of only a single patent over the cited art.

The table below shows the current status of the reexaminations as to the asserted patents:

| Patent No. (reexam type) | Reexam Filed | Reexam Ordered | Office Action Issued | Oracle Response Due / Filed | Google Response Due | Asserted Claims Subject to Reexam | Asserted Claims Currently Rejected | Asserted Claims Currently Allowed |
|---|---|---|---|---|---|---|---|---|
| 6,192,476 (ex parte) | 2/15 | 3/23 | 6/29 | Filed 8/29 | n/a | **All** (14) | **All** (14) | None |
| 5,966,702 (ex parte) | 2/15 | 3/23 | 6/6 | Filed 9/6 | n/a | **All** (1, 6, 7, 12, 13, 15, 16) | **All** (1, 6, 7, 12, 13, 15, 16) | None |
| 7,426,720 (inter partes) | 2/15 | 4/18 | 5/5 | Filed 7/5 | Filed 8/4 | **All** (1, 6, 10, 19, 21, 22) | **All** (1, 6, 10, 19, 21, 22) | None |
| RE38,104 (ex parte) | 3/1 | 3/28 | Pending | | n/a | **All** (11, 27, 29, 39, 40, 41) | | None |
| 6,910,205 (inter partes) | 2/17 | 4/14 | 8/19 | Due 10/19 | Due 11/19 | **All** (1, 2) | **All** (1, 2) | None |
| 6,061,520 (ex parte) | 3/1 | 3/23 | 6/23 | Filed 8/23 | n/a | **All** (1, 8, 12, 20) | | **All** (1, 8, 12, 20) |

## II. A STAY PENDING REEXAMINATION IS THE MOST PRACTICAL CASE MANAGEMENT APPROACH.

Oracle's assertion of 26 separate claims of six unrelated patents, in addition to its assertion of copyrights that are not related to any of the patents, render this case untriable within a reasonable amount of time in its current form. Oracle's recent case management statement (Dkt. 471) barely reduced the number of patent claims for trial, and did almost nothing to reduce the number of patents at issue in the case.[1] Indeed, Oracle has moved *backwards* from its previous representations to the Court. In May of this year, Oracle proposed that it would narrow its patent case by September 1 to "no more than 21 asserted claims" (from 132 previously-asserted claims). Not only did Oracle fail to reduce the number of claims by that date, it is now asserting *more* than 21 separate claims. (Dkt. 144 at 2:4–7; *see also* Dkt. 133 at 4:10–11.)

Through its current rejection of the majority of the asserted claims, the PTO is on course to meaningfully narrow the scope of this case through the reexamination process, something Oracle has not done despite multiple invitations by the Court. Allowing the PTO to continue the reexamination process through to completion would promote judicial efficiency and lower the costs to all involved by weeding out invalid claims that Oracle has so far refused to drop and to flush out more fully Oracle's positions on patentability.

The alternative − proceeding to trial on all 26 separate patent claims, along with Oracle's copyright infringement allegations − invites a case management disaster.

### A. The Time Needed to Try This Case Far Exceeds the Three Weeks Allotted.

This Court has already questioned whether this case could be tried in the available three week period,[2] yet Oracle insists on attempting to try 26 separate claims across 6 unrelated

---

[1] Oracle will no doubt point to its decision to drop the '447 patent from the case as progress. However, as Oracle has conceded previously, the '447 and the '476 patent "have similar specifications," (Dkt. 129 at 3:8), and thus there is little, if any, reduction achieved by removing one of a pair of similar patents.

[2] Copyright Mot. Summ. J Hr'g Tr. 26:5–20 (Sept. 15, 2011) ("How long is it going to take? You know, you told me you will try this case, both sides, three weeks. That's 15 days counting everything. How much of your case are you going to take up with the copyright part? Because you are only going to get half of that time. . . .  It won't be worked out by more time.").

1  patents, in addition to separate copyright infringement claims.  Oracle's "narrowing" to 26
2  separate claims removes all doubt that the liability phase of the case is not triable in that period.
3  Oracle's verdict form has over 110 questions of fact for the jury.  Oracle's "will call" witness list
4  includes 24 live witnesses, while Google's non-overlapping witnesses on its "will call" list could
5  add a dozen more.  The parties' "may call" lists would expand the number of witnesses even
6  further.  Finally, because Oracle has refused to narrow the number of patents in any significant
7  way, Google's shortened list of prior art references still contains 21 references.  Instead of
8  proceeding to trial with an unworkable number of issues, witnesses, and fact questions for the
9  jury to resolve, this Court should exercise its discretion to stay the case long enough to allow the
10 examiners in the pending reexamination proceedings to complete their reviews of the asserted
11 claims to final rejection or confirmation of patentability.

12       Oracle argues that it is presenting fewer claims than it appears, asserting that its set of 26
13 separate asserted claims amount to 15 "effective" claims.  Yet it concedes that the different types
14 of claims "ha[ve] different consequences for direct versus indirect infringement."  (Dkt. 471 at
15 4:15-16.)  Because of various infirmities in Oracle's infringement claims for the different patents
16 as to both direct and indirect infringement, Google anticipates that it will need to offer differing
17 evidence in opposition to Oracle's various theories under these various patents.  Yet rather than
18 confront this problem of its own making, Oracle asks Google to stipulate that infringement of
19 one of a set of so-called "mirrored" claims will result in a finding of infringement as to each of
20 that set of claims.  (Dkt. 471 at 5.)  This tactic is an attempt by Oracle to forego the need to
21 reduce the asserted claims, while at the same time seeking to avoid Oracle's burden of proof on
22 issues of direct and indirect infringement.  A so-called "mirrored" claim set – including a system
23 claim, a method claim, and a computer-readable medium claim – is claimed by Oracle to
24 represent an opportunity to save time at trial, but this is extremely misleading.  Each type of
25 claim targets differing infringing acts (performed by differing actors) and presents unique
26 questions of proof that will eliminate any perceived time savings.  For example, it appears that
27 Oracle aims to circumvent its proof problems by simply pointing to the GIT repository (a third-
28 party source code server to which third-party developers can submit changes to Android source

code) as evidence of infringement of the computer-readable medium claims and then to ask the jury to infer that non-parties duplicate that code in each Android device.  No such inference is possible because handset makers are free to modify any Android source code before compiling it and installing it on any accused handsets.  Even assuming, without conceding, that Oracle can prove that the code on the GIT repository (a third-party source code server) satisfies the computer-readable medium claims (which it cannot), Oracle must further prove acts by non-parties that infringe method and systems claims as a precondition to its indirect infringement case.  And it will also need to present sufficient proof of other issues unique to indirect infringement, such as knowledge and intent.  Oracle's suggestion that Google agree to treat infringement of one of what it calls the "mirrored claims" as a finding of infringement on all such claims is nothing more than an attempt to relieve itself of its burden of proof.

Even if the Court accepts Oracle's position that it reduced the number of asserted claims to an "effective" number of 15, Oracle continues to assert many claims of different types from six totally unrelated patents alongside its copyright allegations.  No matter how the number of asserted claims are counted in view of Oracle's recent submission to the Court, the parties would need to educate the jury on:

- six different technology areas, ranging from internal virtual machine modifications to compilers, security mechanisms, and data compression;
- at least eight[3] separate infringement theories;
- multiple accused products (and even the extent of the products accused in this case is still not clear, given Oracle's precis letter filed late last night seeking leave to amend its infringement contentions to inject additional products into the case at the eleventh hour);
- invalidity theories based on 21 highly-technical prior art references;
- statutory invalidity theories; and

---

[3] Oracle is asserting two different infringement theories for both the '104 and '205 patents, and is asserting infringement via the doctrine of equivalents for the latter.

- the numerous contested issues concerning the copyright claims.

For the liability phase of this trial, the 26 separate claims across the 6 unrelated patents asserted in this case will require roughly 6 to 7 weeks (or 150 to 175 trial hours) and the copyright claims will take an additional non-trivial amount of time. Oracle could have tightly focused its case, but chose instead to proceed with a shotgun approach that has resulted in wasted effort by the parties and the Court.[4]

A stay pending completion of all the reexamination proceedings will allow this case to proceed efficiently and with the full benefit of the PTO's decisions and an awareness of Oracle's responses and their effects on the construction, validity, infringement and enforceability of the claims. These reexaminations – which have already resulted in the rejection of a majority of the asserted claims – may narrow significantly the number of patents involved in the case, as well as narrow the permissible scope of any damages. Indeed, should this case be narrowed to only a few claims modified in the course of the reexamination, any damages claim would be materially limited by, among other things, the doctrine of intervening rights. *See Marine Polymer Techs, Inc. v. Hemcon, Inc.*, ___ F.3d ____, 2011 WL 4435986, at *7–8 (Fed. Cir. Sept. 26, 2011) (reversing judgment of infringement based on absolute intervening rights flowing from patentee arguments during a co-pending reexamination). Such a narrowed case will also eliminate the need for those efforts specifically directed at the claims rejected through reexamination, including motion practice and trial preparation, as well as make it more likely that the parties could reach an informal resolution of the matter. In short, both the parties and the Court would benefit from a stay pending reexamination.

**B.     The Pending Reexaminations May Significantly Narrow the Case.**

As can be seen from the table above, the pending reexaminations of the asserted patents have rejected nearly two thirds of the asserted claims and may yet bring that total to 85% when the first office action is issued for the '104 patent. The reexaminations may narrow the case by

---

[4] Oracle's expert on damages, Dr. Iain M. Cockburn, has opined that two of the asserted patents − the '476 patent and the '520 patent − each amount to a tiny fraction of the aggregate portfolio reasonable royalty.

eliminating claims through final rejection. Even if they confirm the patentability of some claims, they could streamline the case by precluding infringement where Oracle has narrowed the scope of its claims by argument or amendment. Of the 26 presently asserted claims in this case, the only claims that have come through reexamination are the remaining four claims of the '520 patent – a patent to which Oracle's own damages expert assigned a minuscule value of the overall value of the asserted patents – but even these claims have not survived intact, as explained below.

While the PTO is actively reexamining the asserted claims, this Court may exercise its discretion to stay the case to allow for further developments at the PTO with respect to the asserted claims. The claims may change in scope as a result of a final rejection,[5] but may also result from an amendment or an unequivocal *argument* made by the patent holder in the reexamination proceeding, as confirmed by a very recent Federal Circuit holding. *See Marine Polymer*, 2011 WL 4435986, at *5 (Fed. Cir. Sept. 26, 2011) (holding that unambiguous arguments for narrower scope in a reexamination acts as an immediately effective disavowal of any broader scope even if the examiner does not accept the argument). The reexamination records already show at least one such narrowing argument. In the reexamination of the '520 patent, Oracle made statements that should be considered in view of *Marine Polymer*. Specifically, Oracle argued that "an instruction" – a claim term of significance in the infringement analysis – should be limited to exactly one instruction to avoid reading on the prior art.

Nor is it correct to assert, as Oracle has previously argued, that a decision by this Court affirming the validity of the patents subject to inter partes reexamination (i.e., the '720 and '205 patents) would cause those reexamination proceedings to terminate. This argument is simply incorrect on the law. A decision by this Court regarding the validity of either of those patents

---

[5] Although a final rejection of a claim during a reexamination is not a final decision that is binding on this Court until a reexamination certificate issues confirming the invalidity of that claim, the presence of a final rejection should send a strong signal to the Court that litigating the claim may not be a good use of judicial and private resources.

would not be final for the purposes of 35 U.S.C. § 317(b) until Google no longer has a right to further appeal. *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, ___ F.3d ____, 2011 WL 4537797, at *14 (Fed. Cir. Oct. 3, 2011).[6]

### III. ORACLE'S COPYRIGHT CLAIM WILL ADD FURTHER COMPLEXITY AND REQUIRE ADDITIONAL TRIAL TIME.

Oracle's revised damages expert opinion depends significantly on its copyright claims. After this Court struck Oracle's initial damages estimate, which offered a median $2.6 billion figure for patent damages and *no* calculation of copyright damages, Oracle and its expert Dr. Iain Cockburn recalculated, though their bottom-line number is about the same – a total of $2.7 billion. Out of this total, $404.9 million is attributable to patent damages ($201.8 million in royalties up to 2011 and $203.1 million more for 2012). The remaining $2.3 billion is copyright damages, broken out as follows: (1) $823.9 million, for all of Google's gross revenue on Android advertising and applications through 2011; (2) $1.2 billion in projected Google gross Android revenue for 2012; (3) $136.2 million in actual damages for alleged lost profits; and (4) $102.6 million in alleged lost fair-market licensing fees through 2011, and an equal amount in alleged lost licensing fees for 2012. Cockburn acknowledges that a copyright plaintiff may not double-recover the same amounts under different damages theories, but offers no methodology for separating out these different amounts and avoiding double-counting. Neither does he offer any opinion on the amount of future damages, other than a bare conclusion that future damages would be even larger than past damages.

The copyright damages calculation will require significant expert testimony and careful attention at trial. Under 17 U.S.C. § 504(b), a plaintiff may recover the infringer's wrongful profits, subject to deductible expenses proven by the defendant and a further deduction for portions of the profits attributable to other factors besides the infringement. Cockburn took the position that he did not have to address the apportionment issues in his initial report, deeming it

---

[6] While this authority is new, the result is not surprising in view of preexisting authority. *See Sony Computer Entm't Am. Inc. v. Dudas*, No. 1:05-cv-1447, 2006 WL 1472462, at *6 (E.D. Va. May 22, 2006); M.P.E.P. § 2686.04 (preventing an examiner from terminating an inter partes reexamination unless "the Federal Court decision [was] a final decision[] after all appeals").

to be rebuttal to Google's expert report.  Yesterday, Google served its report, covering the apportionment issue, among other points.

### IV. GOOGLE ESTIMATES IT WILL NEED APPROXIMATELY 75 HOURS FOR DIRECT AND CROSS EXAMINATION.

As discussed above, Oracle is asserting 26 separate claims across 6 patents in addition to copyright claims.  There are dozens of witnesses on the parties' "will call" lists alone.  The parties will need to put on evidence of numerous theories of liability, and of invalidity.  Multiple expert witnesses will be needed to provide the jury with the proper context for determinations on the issues of infringement and validity of the patents.  And all of that leaves aside the need to mount proper affirmative and defensive cases on copyright issues.  As explained above, Oracle's own proposed verdict form underscores the complexity of the case, since it presently lists some 110 separate questions to be answered by the jury.  In light of the complexity of the case as it currently stands, Google anticipates that it will need approximately 75 hours, or approximately 15 days at 5 hours per trial day, for its direct and cross examinations.

DATED:  October 4, 2011                                   KEKER & VAN NEST LLP


                                                          By: s/ Robert A. Van Nest
                                                              ROBERT A. VAN NEST
                                                          Attorneys for Defendant
                                                          GOOGLE INC.