KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:     415.391.5400
Facsimile:     415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY  10036
Tel:     212.556.2100
Fax:     212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel:     415.318.1200
Fax:     415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:     650.328.8500
Fax:     650.328-8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>                           Plaintiff,<br><br>      v.<br><br>GOOGLE INC.,<br><br>                           Defendant. | Case No. 3:10-cv-03561-WHA<br><br>**GOOGLE'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE PORTIONS OF COCKBURN REPORT ON DAMAGES**<br><br>Judge:     Hon. William Alsup<br><br>Date Comp. Filed:     October 27, 2010<br><br>Trial Date:     October 31, 2011 |

**MOTION AND RELIEF REQUESTED**

Under Federal Rules of Evidence 401, 403 and 702, case law interpreting those rules, and this Court's July 22, 2011 Order, Docket No. 230 ("Order"), defendant Google Inc. ("Google") hereby moves the Court for an order excluding *in limine* certain aspects of the damages expert report of Dr. Iain Cockburn ("Cockburn Report"), submitted by Oracle America, Inc. ("Oracle") in this case.

**DISCUSSION**

When it rejected Oracle's damages expert Dr. Iain Cockburn's first attempt at a damages report two months ago, this Court gave Oracle one more try, issuing clear guidelines governing the scope of any revised report. The Court expressly told Oracle that "[i]f the next and final report fails to measure up in any substantial and unseverable way … then it may be excluded altogether without leave to try again." Order at 15. Cockburn's second try, served on September 13, 2011, fails to follow the Court's instructions and ignores governing law in numerous critical respects. The Court should strike the deficient aspects of Cockburn's new report and preclude Oracle from offering expert testimony on those issues, as set forth below.

Critically, Cockburn has not backed off his bottom-line conclusion that Oracle is entitled to billions of dollars in damages, although he has significantly changed the logic underlying his damages number. ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████ He was able to blackboard these huge numbers only by failing to analyze the value of the specific asserted claims of the Oracle patents at issue or the contribution of the allegedly infringing features to Google's Android platform. Cockburn offered no analysis whatsoever regarding Oracle's alleged copyright damages. Based on those and other failings, the Court ordered Cockburn back to the drawing board.

Cockburn's revised report takes a different route, but ends up in almost exactly the same
████████████████████████████████████████
post a huge patent-damages number rebuffed, Cockburn has loaded those same amounts onto

1

1  Oracle's copyright claim.  After offering no analysis of copyright damages in his first report, he
2  now opines that Oracle is entitled to about *$2.3 billion* in copyright damages through 2012.
3  █
4  █
5  █
6  █
7  █
8  █
9  █
10 █
11 █
12 █
13 █
14 █ He doesn't offer any calculation of damages Oracle
15 will suffer after 2012, although he contends that future damages would be even larger than past
16 damages.[1]
17  Most fundamentally, Oracle's and Cockburn's pursuit of the largest conceivable damages
18 number ignores Sun's valuation of the intellectual property at issue around the time the alleged
19 infringement began. █
20 █
21 █
22 █
23 █
24 █

---

[1] Due to the Court's order restricting Google to only 200 total pages of materials supporting its motions *in limine*, Google has submitted only the relevant excerpts of the revised Cockburn Report.  The revised Cockburn Report, by itself, is 202 pages, and the exhibits and appendices to that report are about that long as well.  Google believes that this Court would benefit from reviewing the entire report prior to deciding the admissibility of Cockburn's opinions, and would promptly provide the full report to the Court if directed.

1 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Cockburn ignores all this.

2 But for purposes of this *Daubert* motion, Cockburn's revised report is not only incorrect and unreliable, it is excludable under the Federal Rules of Evidence and this Court's Order. Cockburn commits factual and legal errors similar to those in his first report. With respect to the factual basis of Cockburn's opinion, to be admissible, expert opinions must "sufficiently [tie the expert testimony on damages] to the facts of the case." *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1315 (Fed. Cir. 2011) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 591 (1993)) (alteration in original). Here, Cockburn again fails to tie his opinions to the facts of the case. Cockburn also ignores the legal framework governing both patent and copyright damages, violating the requirement "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert,* 509 U.S. at 589. Since governing law provides that damages must be calculated a certain way, and puts various categories of purported damages off limits, expert testimony that ignores those limitations is necessarily irrelevant to the jury's damage analysis. *See Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMbH,* 408 F.3d 1374, 1380 (Fed. Cir. 2005) (barring expert from providing "testimony on the entire market value rule" that "bore no relation to that rule"). Cockburn also fails to do several things that the Court specifically directed him to do in its July 22, 2011 Order.

**A.   Cockburn's opinion regarding the value of a lost copyright license with Google should be excluded, because it ignores the governing legal standard and has no factual basis.**

*First,* this Court should exclude Cockburn's opinion regarding the value of a fair-market copyright license between Sun and Google, because his opinion ignores the legal standard for calculating the value of such a license and has no basis in the record. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and then a further $102.6 million for 2012, *id.* at 23 & ¶ 59.

The law governing recovery of hypothetical copyright license damages is clear—to prove its entitlement to such damages, a party is "required to show that, but for infringement, the

1  parties would have agreed to license the use of the copyrighted works at issue." *Oracle USA,*
2  *Inc. v. SAP AG,* 2011 WL 3862074 at *7 (N.D. Cal. Sept. 1, 2011) (citing *Polar Bear Prods.,*
3  *Inc. v. Timex Corp.,* 384 F.3d 700, 711 (9th Cir. 2004)).  To make this showing, a plaintiff must
4  offer objective and non-speculative evidence "of benchmark transactions, such as licenses
5  previously negotiated for comparable use of the infringed work, and benchmark licenses for
6  comparable uses of comparable works." *Id.* (citing *Jarvis v. K2 Inc.,* 486 F.3d 526, 533-35 (9th
7  Cir. 2007) & *Polar Bear,* 384 F.3d at 709).  When it is clear that the parties "would never have
8  agreed to a license" as is proposed by the plaintiff's damages expert, no hypothetical license
9  damages can be awarded.  *Id.*  In other words, to recover hypothetical license damages here,
10 Oracle must offer evidence that it actually would have offered Google the same license it now
11 hypothesizes.  Not only is there no evidence to support that conclusion here, all the evidence
12 proves the contrary.

13 ████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████
20 ████

21         This is improper as a matter of law.  In seeking a hypothetical copyright license, Oracle is
22 limited to recovering what Sun actually would have received from Google ***in exchange for a***
23 ***license***.  Oracle cannot import Sun's lost profits into a licensing calculation, because those were
24 never the subject of any licensing discussion between Google and Sun.  As this Court recently
25 explained in reversing a massive (but baseless) copyright damages award for Oracle, the notion
26 that a copyright plaintiff is entitled "to seek 'hypothetical' license damages … in the form of lost
27 license fees … has no support in the law."  *Oracle,* 2011 WL 3862074 at *8.  Put another way, a
28 hypothetical license calculation must be based on Sun's actual behavior in pre-suit licensing

1  negotiations, which presupposed *a partnership* with Google.  But Cockburn's upward
2  adjustments are based on revenues Sun allegedly lost because the opposite happened—Sun *could*
3  *not* partner with Google, because Google chose to compete with Sun instead.  The Ninth Circuit
4  has never affirmed a hypothetical license calculation in a case involving competitors (who do not
5  commonly license each other), as opposed to partners.  *See id.* at *8 & n.2.  Needless to say,
6  there is no evidence that Sun would actually have offered any sort of license to a competitor, and
7  Cockburn cites none.  In the real world, Sun never gave a license to Google for Android.
8      In addition to violating the law, Cockburn's hypothetical copyright license has no factual
9  support, or at least none that a reasonable expert would ever rely on.  Cockburn's upward
10 adjustment of his $14.8 million baseline to $102.6 million relies entirely on a single internal Sun
11 presentation roughly sketching a projection of the money Sun might earn from a partnership with
12 Google.  ████████████████████████████████████████████████████████████
13 ███████████████████████  The presentation contains a few slides with general ideas about
14 how Sun might monetize Android, but the numbers in the presentation are pure speculation.
15 There are no underlying financial data backing them up.  Neither is there any particular reason to
16 believe Sun thought the vague concepts in the presentation were viable.  ████████████
17 ████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████
20 ████████████████████████████████████████  *Daubert* makes clear that, to be
21 admissible, expert testimony must "connote[ ] more than subjective belief or unsupported
22 speculation."  *Daubert,* 509 U.S. at 590.  At most, the presentation reflects Sun's optimistic
23 hope, without any grounding in experience or past practice, that it might be able to earn money
24 by partnering with Google.  But there is no actual evidence that Sun could have established a
25 viable business to exploit Android.  It never actually did so in the real world, despite its
26 familiarity with the Java platform and its long-standing relationships with device manufacturers
27 and mobile carriers.  Because this presentation provides Cockburn's entire factual foundation for
28 his upward adjustment, that adjustment is unreliable and excludable under *Daubert*.

**B. Cockburn's upward adjustments to his patent-damages calculation improperly add lost profits to a purported reasonable royalty calculation, and also lacks any reasonable factual foundation.**

*Second,* the Court should exclude Cockburn's upward adjustments to his patent damages calculation. [redacted]

1   This is an express (and unlawful) attempt to recover lost profits damages under the guise
2   of a reasonable royalty, without any attempt to satisfy the lost-profits standard of *Panduit Corp.*
3   *v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152 (6th Cir. 1978).  Cockburn does not even try to
4   disguise what he is doing.  He directly uses Sun's projected profits from monetizing a potential
5   partnership with Google as the basis of his upward adjustment.  Purcell Decl. Ex. 31 (Cockburn
6   Report Ex. 15).  This is not using a patentee's likely lost profits as one factor bolstering a
7   reasonable royalty, as *Georgia-Pacific* permits; this is direct recovery of projected lost profits.  It
8   is improper under the law and this Court's order, which directed Cockburn to perform a
9   reasonable royalty calculation.  Moreover, just as was the case with his (equally improper)
10  upward hypothetical copyright license calculation, the sum total of the factual support for
11  Cockburn's upward patent-damages adjustment is the same single, tentative Sun presentation
12  speculating about amounts Sun might earn from partnering with Google.  For the same reasons
13  discussed above, this document is not a valid basis of any expert opinion.  But Cockburn relies
14  on nothing else.  For all these reasons, the Court should exclude Cockburn's patent-damages
15  calculation.

### C.   Cockburn fails to provide any calculation of future damages.

17  *Third,* although Cockburn has calculated damages through 2012, he fails to offer any firm
18  calculation of damages after 2012, as to either the patent or copyright claims.  This Court could
19  not have instructed Cockburn more clearly on this point in its Order:

> The hypothetical license, therefore, should be structured as a series of yearly payments ***with no additional lump sum to be paid up front***.  This structure should be adopted as an assumption in any damages analysis, so that the jury can more easily divide the amount of damages between past and future infringement.  If and when a permanent injunction is entered, the damages award will then be adjusted accordingly.  Furthermore, any projection of future damages must take into account the varying expiration dates of the asserted patent claims.

24  Order at 11 (emphasis in original).  Cockburn simply ignored this directive.  Although he asserts
25  that Oracle will continue suffering the consequences of Google's alleged infringement after trial,
26  [redacted]
27  [redacted]
28  [redacted] He then contends, without any quantification, that his

7

methodology for calculating past damages would undercalculate future damages. *Id.* at 23 ¶ 59. But he does not provide any number, much less "take into account the varying expiration dates of the asserted patent claims" on future damages, as this Court ordered. Order at 11.

Even worse, he ignores both the law and the Order, opining that "if I am asked to put an estimate of an appropriate royalty for future infringement before the jury or the Court"—which the Court did in fact direct him to do—future damages should be based on a hypothetical negotiation taking place *after the jury verdict*. As the Court made clear in its Order, the law requires that the hypothetical negotiation take place at the time of first infringement. Order at 6-7. There is no separate hypothetical negotiation standard for future damages. Cockburn asserts, without citing authority, that assuming a post-trial negotiation is necessary to take account of "the immediate prospect of an injunction," but that is nonsensical. ***Every*** hypothetical negotiation presumes a finding of infringement and thus the immediate prospect of an injunction. *See Cummins-Allison Corp. v. SBM Co., Ltd.,* 584 F. Supp. 2d 916, 918 (E.D. Tex. 2008) ("[A] jury finding of infringement and no invalidity … merely confirms the original assumption of those facts" in the hypothetical negotiation analysis); *Ariba, Inc. v. Emptoris, Inc.,* 567 F. Supp. 2d 914, 918 (E.D. Tex. 2008) (same).[2]

In any event, regardless of what standard applies, the fundamental problem is Cockburn's failure to offer any future damages calculation, or any reasoning that could support such a

---

[2] In a letter to the Court on September 22, 2011, Oracle cited two cases for the proposition that a post-trial damages award should be based on a separate hypothetical negotiation taking place after the jury verdict. Oracle's first case, *Paice LLC v. Toyota Motor Corp.,* 504 F.3d 1293 (Fed. Cir. 2007), does not hold that post-trial damages must be calculated via a post-verdict hypothetical negotiation. It provides only that a trial court has discretion in setting a reasonable royalty for post-trial infringement. *See id.* at 1314-15. Oracle's other case, *Boston Scientific Corp. v. Johnson & Johnson,* No. C 02-00790 SI, 2009 WL 975424 (N.D. Cal. Apr. 9, 2009), relies on a misapplication of the Federal Circuit's opinion in *Amado v. Microsoft Corp.,* 517 F.3d 1353 (Fed. Cir. 2008), which discussed only how post-verdict infringement damages should be adjusted "[w]hen a district court concludes that an injunction is warranted, but is persuaded to stay the injunction pending an appeal." *Amado,* 517 F.3d at 1362. In that context, a court may adjust damages based on factors such as "the infringer's likelihood of success on appeal, the infringer's ability to immediately comply with the injunction, [and] the parties' reasonable expectations if the stay was entered by consent or stipulation." *Id. Amado* never suggests, much less holds, that post-trial damages must be based on a hypothetical post-verdict negotiation. To the extent *Boston Scientific* supports such a conclusion, it is inconsistent with the better-reasoned *Cummins-Allison* and *Ariba* cases, which recognize that ***any*** hypothetical negotiation already assumes validity, infringement, and the looming possibility of an injunction.

calculation, despite being told to do so.  The Court should preclude Oracle from offering any expert testimony on future damages at trial.

**D.     Cockburn fails to conduct any analysis at the level of the individual patent claims.**

*Fourth,* Cockburn again ignores this Court's Order by omitting a claim-by-claim analysis of any of the asserted patents, either with respect to the date of first infringement or their contribution to the Android platform.  Instead, he treats each patent as an indivisible whole.  *See* Purcell Decl. Ex. 20 (Cockburn Report Ex. 2) (describing functionality on patent-by-patent basis); *id.* Exs. 21-30 (Cockburn Report Exs. 4-13) (calculating value of each patent as a whole without any analysis of individual patent claims).  But in its Order, the Court made clear that "determining the date of first infringement requires a *claim-by-claim* analysis."  Order at 7 (emphasis added).  Similarly, some of the asserted patent claims might be less valuable, or easier to design around, than other claims contained within that same patent, but Cockburn conducts no analysis of any of those issues.

Accordingly, the Court should bar Oracle and Cockburn from presenting any evidence or testimony that the date of first infringement of any of the asserted patents postdates the date of first infringement of the first patent infringed.  Because Cockburn has refused to apportion patent value among the asserted claims in his report, the Court should also preclude him from doing so at trial.  The Court should further instruct the jury that, because Oracle has no evidence of the value of individual patent claims, if the jury finds any asserted claim of any patent not infringed, it may assume that the non-infringed claim represented the full value of that patent, and thus that Oracle is entitled to no damages for infringement of other claims of that patent.

**E.     Cockburn should not be permitted to inflate his damages estimate by presenting data about licenses for noncomparable technologies or settlements of noncomparable litigation.**

*Finally,* Cockburn continues to bolster his conclusions by referring to licenses involving unrelated technology and parties—such as a semiconductor license negotiated between Nokia and Qualcomm.  Purcell Decl. Ex. 15 (Cockburn Report) at 37-38 & ¶¶ 104-05.  This is just an effort to put big numbers before the jury.  The Federal Circuit has repeatedly instructed courts to exercise "vigilance" in permitting experts to testify about "past licenses to technologies *other*

9

1  than the patent in suit." *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 869 (Fed. Cir. 2010)
2  (emphasis in original); *see also Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1329 (Fed.
3  Cir. 2009).  This Court should bar Cockburn from testifying about licenses for technologies
4  other than those embodied by the patents-in-suit, or licenses involving neither Sun nor Google.

5     Likewise, Cockburn persists in justifying his billion-dollar damages estimate by reference
6  to Sun's settlement of its lawsuit with Microsoft.  Cockburn's rationale for injecting the Sun-
7  Microsoft settlement into this case is that Sun purportedly was concerned there, as Oracle is here,
8  about fragmentation of Java.  Purcell Decl. Ex. 15 (Cockburn Report) at 26-27 & ¶¶ 70-71.  But
9  the Microsoft lawsuit was about a lot more than fragmentation, as Cockburn admits when he
10 notes that Sun sued Microsoft for marketing its own competing virtual machine ***using the Java***
11 ***brand,*** something Google has never done.  *Id.* at 26 & ¶ 71.  Cockburn has made no effort to
12 separate out the value of the different components of that settlement.  As discussed already,
13 [redacted]
14 [redacted] It would obviously be tremendously prejudicial to Google to allow
15 Cockburn to reference the $900 million amount of the Sun-Microsoft settlement, without having
16 any basis to connect that settlement to Oracle's claims in this case or explain the dollar value of
17 fragmentation generally.  Accordingly, the Court should exclude any references to that
18 settlement.

19                 Respectfully submitted,

20

21 Dated:  September 24, 2011          KEKER & VAN NEST LLP

22

23

24                By: s/ Robert A. Van Nest
                 ROBERT A. VAN NEST
                 Attorneys for Defendant
25                  GOOGLE INC.

26

27

28