KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
DANIEL PURCELL - #191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:     415.391.5400
Facsimile:     415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY  10036
Tel:     212.556.2100
Fax:     212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel:     415.318.1200
Fax:     415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:     650.328.8500
Fax:     650.328.8508

Attorneys for Defendant
GOOGLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>                               Plaintiff,<br><br>        v.<br><br>GOOGLE INC.,<br><br>                               Defendant. | Case No. 3:10-cv-03561-WHA<br><br>**DECLARATION OF REID MULLEN IN SUPPORT OF GOOGLE INC.'S OPPOSITIONS TO ORACLE AMERICA, INC.'S MOTIONS *IN LIMINE***<br><br>Judge:       Hon. William Alsup<br><br>Date Comp. Filed:       October 27, 2010<br><br>Trial Date:       October 31, 2011 |

582820.01

I, Reid Mullen, declare as follows:

1.      I am an associate in the law firm of Keker & Van Nest LLP, counsel to Google Inc. ("Google") in the present case.  I submit this declaration in support of Google Inc.'s Oppositions to Oracle America, Inc.'s ("Oracle") Motions *in Limine*.  I have knowledge of the facts set forth herein, and if called to testify as a witness thereto could do so competently under oath.

2.      Attached hereto as **Exhibit 1** are true and correct copies of the Responses to Interrogatories Nos. 14 and 17, from Plaintiff Oracle America, Inc.'s Objections and Responses to Defendant Google, Inc.'s Fourth Set of Interrogatories, dated July, 14, 2011.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the March 2, 2011 from Google's counsel (Scott Weingaertner) to Oracle's counsel (Marc Peters).

4.      Attached hereto as **Exhibit 3** is a true and correct copy of pages 1, 19-21, 38-39, 43-44, 77-78 from the transcript of the July 21, 2011 Rule 30(b)(6) deposition of Patrick Brady (along with the Errata sheet and signature pages) (highlights added).  Google's confidentiality designation has been removed from the cover page and the pages included in Exhibit 3.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of the cover page, page 66 and page 384 from the August 8, 2011 *Opening Expert Report of John C. Mitchell Regarding Patent Infringement Submitted on Behalf of Plaintiff Oracle America, Inc*. (highlights added).  A confidentiality designation has been removed from the cover page because confidential information is not included in the excerpts included in Exhibit 4.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of the cover page and pages 1-2 of *Oracle's Second Supplemental Patent Local Rule 3-1 Disclosure of Asserted Claims and Infringement Contentions*, served on April 1, 2011 (highlights added).

7.      Attached hereto as **Exhibit 6** is a true and correct copy of a document entitled ACIS Fact Sheet, available at http://www.interop.org/fact-sheet.html.

8.      Attached hereto as **Exhibit 7** is a true and correct copy of a document produced by Google Inc. in this litigation at production number GOOGLE-03369758.

9.      Attached hereto as **Exhibit 8** is a true and correct copy of a document entitled

1   Oracle Data Sheet – Interoperability and Oracle Solaris 10, available at

2   http://www.oracle.com/us/products/servers-storage/solaris/interoperability-solaris-10-

3   ds067316.pdf.

4       10.     Attached hereto as **Exhibit 9** is a true and correct of relevant excerpts of the

5   August 25, 2011 Transcript of Proceedings in front of the Honorable Donna M. Ryu.

6       11.     Attached hereto as **Exhibit 10** is a true and correct copy of the September 22,

7   2011 Declaration of Tim Lindholm in Support of Google's Motion in Limine No. 1 to Exclude

8   Mr. Lindholm's August 6, 2010 Email and Drafts Thereof.

9       12.     Attached hereto as **Exhibit 11** is a true and correct copy of relevant excerpts from

10  the September 7, 2011 deposition transcript of Tim Lindholm.

        I declare under penalty of perjury that the foregoing is true and correct and that this

11

12  declaration was executed at San Francisco, California on October 4, 2011.

13

14                          By:    ___/s  Reid Mullen_____
                                   REID MULLEN
15

16

17

18

19

20

21

22

23

24

25

26

27

28

582820.01

MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street
Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900
Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway
Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| Plaintiff, | **PLAINTIFF ORACLE AMERICA, INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT GOOGLE INC.'S FOURTH SET OF INTERROGATORIES (NOS. 14-17)** |
| v. | |
| GOOGLE INC. | |
| Defendant. | **CONTAINS CONFIDENTIAL INFORMATION** |

1   PROPOUNDING PARTY:    Defendant GOOGLE INC.

2   RESPONDING PARTY:      Plaintiff ORACLE AMERICA, INC.

3   SET NO.:                       Four (Nos. 14-17)

4        Pursuant to Rule 33 of Federal Rules of Civil Procedure, Plaintiff Oracle America, Inc.

5   ("Oracle") hereby responds to Defendant Google Inc.'s ("Google") Fourth Set of Interrogatories.

6   **INTERROGATORY NO. 14:**

7        Identify (by setting forth the date, individual participants, form of communication,

8   substance of communication and, if applicable, relevant document production number) all

9   communications between Oracle and Google on which Oracle relies to support any allegation or

10  contention of willful patent or copyright infringement.

11  **RESPONSE TO INTERROGATORY NO. 14:**

12       Oracle sets forth below the communications between Oracle and Google that are

13  responsive to this interrogatory.  This is only a small subset of the evidence and information on

14  which Oracle may rely to support its contention that Google's infringement of the patents and

15  copyrights in suit is and has been willful.  Among other things, Google was well aware that

16  Oracle had purchased Sun and thereby acquired Sun's well-known portfolio of Java-related

17  patents.  Google was also aware that Sun, and hence Oracle, asserted copyright protection over

18  Java application programming interfaces and code.  For example, in 2005 and 2006, Google and

19  Sun held extensive negotiations over a possible intellectual property license and collaboration

20  relating to Java and Android.  Sun and Google discussed licensing of Sun's Java platform

21  technologies, including Java copyrighted elements and Java-related patents.  In addition, in 2009,

22  Sun and Google discussed licensing of Sun's Java platform technologies for Android and other

23  Google products.  Also, Eric Schmidt held various engineering and management positions at Sun

24  from 1983 to 1997.  He was the President of Sun Technology Enterprises from 1991 to 1994, and

25  Sun's Chief Technology Officer from 1994 to 1997.  During his tenure at Sun, Sun engineers

26  made large contributions to the Java platform and filed numerous Java-related patent applications,

27  many of which have since issued.  Schmidt subsequently became Google's Chief Executive

28  Officer and Chairman, bringing his knowledge of the Java platform to Google.  Moreover,

Google has hired former Sun engineers who were key developers of the Java platform.  For example, Google currently employs at least four named inventors and co-inventors of the patents-in-suit:  Lars Bak, James Gosling, Robert Griesemer, and Frank Yellin.  Google thus had knowledge of the Java platform and Java intellectual property rights and knew that its actions constituted patent and copyright infringement, or acted with reckless disregard for Oracle's rights.

Responsive to this interrogatory, Oracle identifies the following communications between Oracle and Google that it may rely upon to demonstrate Google's willful infringement:

***BEGIN CONFIDENTIAL INFORMATION***

- In 2010, Larry Ellison of Oracle, and Eric Schmidt and Larry Page of Google discussed a potential Google-Oracle partnership.  (Rubin Tr. 119:5-121:17.)

- In 2010, Thomas Kurian of Oracle and Andy Rubin of Google met on multiple occasions to discuss Android and the Java platform.  (Rubin Tr. 121:9-17; 122:21-133:4; and 134:17-135:24.)  Also, in 2010, representatives of Oracle met with Andy Rubin to discuss the same.  (Rubin Tr. 14:20-15:3; and 138:19-142:5.)

- On May 27, 2010, TJ Angioletti and George Simion of Oracle had a discussion with Tim Porter of Google about Oracle's patents.

- In June 2010, Safra Catz and Thomas Kurian of Oracle had a discussion with Alan Eustace of Google about Android and the Java platform.  The communication leading to the discussion can be found at OAGOOGLE0006901553.

- On July 20, 2010, representatives of Oracle and Google met to discuss Oracle's Java-related patents, including the patents-in-suit.  Oracle explained how Android infringes the patents-in-suit and why Google's invalidity defenses are meritless.  The following representatives attended the discussion:  TJ Angioletti, Matthew Sarboraria, and George Simion of Oracle; and Benjamin Lee, Josh McGuire, and Eric Schulman of Google.  The presentation used during the July 20, 2010 meeting can be found at GOOGLE-00392259.

***END CONFIDENTIAL INFORMATION***

- On August 12, 2010, Oracle filed a complaint against Google in the present action.  The complaint lists the patents-in-suit and copyrights-in-suit.

1    Discovery is ongoing, and Oracle has not yet completed its investigation of the documents

2    and facts relevant to the claims and defenses asserted in this action.  Accordingly, Oracle's

3    responses are based on the information reasonably available at this time and Oracle will

4    supplement this response as appropriate under the Federal Rules of Civil Procedure.

5    **INTERROGATORY NO. 15:**

6    Identify, by reference to the relevant portions of the source code and the date on which

7    such portions were first included in the code, the specific functionality within JavaOS 1.0 that

8    Oracle contends practices the Asserted Claims of U.S. Patent No. 5,966,702.

9    **RESPONSE TO INTERROGATORY NO. 15:**

10   Oracle does not contend that JavaOS 1.0 practiced the Asserted Claims of U.S. Patent

11   No. 5,966,702.

12   **INTERROGATORY NO. 16:**

13   Identify, by reference to the relevant portions of the source code and the date on which

14   such portions were first included in the code, the specific functionality within JDK 1.2 that Oracle

15   contends practices the Asserted Claims of U.S. Patent No. 6,910,205.

16   **RESPONSE TO INTERROGATORY NO. 16:**

17   The functionality that practices the Asserted Claims of U.S. Patent No. 6,910,205 is

18   implemented in the TemplateTable::_fast_invokevfinal() method, which is included in

19   templateTable_i486.cpp of the HotSpot virtual machine.  The HotSpot virtual machine first

20   became an optional component of JDK 1.2 in version 1.2.1_004 on or about March 18, 1998.

21   Discovery is ongoing, and Oracle has not yet completed its investigation of the documents

22   and facts relevant to the claims and defenses asserted in this action.  Accordingly, Oracle's

23   responses are based on the information reasonably available at this time and Oracle will

24   supplement this response as appropriate under the Federal Rules of Civil Procedure.

25   **INTERROGATORY NO. 17:**

26   State all facts supporting any allegation or contention by Oracle that any product listed in

27   Oracles Patent Local Rule 3-1(g) Asserted Practice of the Claimed Inventions disclosure was

28   marked in accordance with 35 U.S.C. § 287.

1    **RESPONSE TO INTERROGATORY NO. 17:**

2         Oracle is not aware of any product listed in Oracle's Patent Local Rule 3-1(g) Asserted

3    Practice of the Claimed Inventions that was marked with the patent number of any of the

4    patents-in-suit.  Oracle notes that method claims do not require marking under 35 U.S.C. § 287.

5    Also, section 287 has no application with respect to Oracle's copyright claim.

6         Discovery is ongoing, and Oracle has not yet completed its investigation of the documents

7    and facts relevant to the claims and defenses asserted in this action.  Accordingly, Oracle's

8    responses are based on the information reasonably available at this time and Oracle will

9    supplement this response as appropriate under the Federal Rules of Civil Procedure.

10

11   Dated: July 14, 2011                   MICHAEL A. JACOBS
                                            MARC DAVID PETERS
12                                          DANIEL P. MUINO
                                            MORRISON & FOERSTER LLP

13

                                            By:  */s/ Daniel P. Muino*
14                                              Daniel P. Muino

15                                          *Attorneys for Plaintiff*
                                            ORACLE AMERICA, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS AND RESPONSES TO GOOGLE'S 4TH SET OF INTERROGATORIES (NOS. 14-17)
CASE NO. CV 10-03561 WHA
pa-1470046

4

1

**CERTIFICATE OF SERVICE**

2

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 755 Page Mill Road, Palo Alto, California  94304-1018.  I am not a party to the within cause, and I am over the age of eighteen years.

3

4

I further declare that on July 14, 2011, I served a copy of:

5

**PLAINTIFF ORACLE AMERICA, INC.'S OBJECTIONS**
**AND RESPONSES TO DEFENDANT GOOGLE INC.'S**
**FOURTH SET OF INTERROGATORIES (NOS. 14-17)**

6

7

**BY ELECTRONIC SERVICE [Fed. Rule Civ. Proc. rule 5(b)]** by electronically mailing a true and correct copy  through Morrison & Foerster LLP's electronic mail system to the e-mail address(es) set forth below, or as stated on the attached service list per agreement in accordance with Federal Rules of Civil Procedure rule 5(b).

8

9

10

| | |
|---|---|
| Robert F. Perry | Timothy T. Scott |
| Scott T. Weingaertner | Geoffrey M. Ezgar |
| Bruce W. Baber | Leo Spooner III |
| Mark H. Francis | KING & SPALDING, LLP |
| Christopher C. Carnaval | 333 Twin Dolphin Drive, Suite 400 |
| KING & SPALDING LLP | Redwood Shores, CA  94065 |
| 1185 Avenue of the Americas | |
| New York, NY  10036-4003 | TScott@kslaw.com |
| | GEzgar@kslaw.com |
| RPerry@kslaw.com | LSpooner@kslaw.com |
| SWeingaertner@kslaw.com | |
| bbaber@kslaw.com | Fax:     650.590.1900 |
| mfrancis@kslaw.com | |
| ccarnaval@kslaw.com | |
| | |
| Google-Oracle-Service-OutsideCounsel@kslaw.com | |
| | |
| Fax:     212.556.2222 | |
| | |
| Donald F. Zimmer, Jr. | Steven Snyder |
| Cheryl Z. Sabnis | KING & SPALDING LLP |
| KING & SPALDING LLP | 100 N. Tryon Street, Suite 3900 |
| 101 Second Street, Suite 2300 | Charlotte, NC 28202 |
| San Francisco, CA  94105 | |
| | ssnyder@kslaw.com |
| fzimmer@kslaw.com | |
| csabnis@kslaw.com | Fax:     704.503.2622 |
| | |
| Fax: 415.318.1300 | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     Brian Banner                                   Renny F. Hwang

King & Spalding LLP                       GOOGLE INC.

2     401 Congress Avenue                    1600 Amphitheatre Parkway

Suite 3200                                    Mountain View, CA  94043

3     Austin, TX  78701

rennyhwang@google.com

4     bbanner@kslaw.com

Fax:    650.618.1806

5     Fax.  512.457.2100

6     Ian C. Ballon                                  Joseph R. Wetzel

Heather Meeker                            Dana K. Powers

7     GREENBERG TRAURIG LLP         GREENBERG TRAURIG, LLP

1900 University Avenue, 5th Floor      153 Townsend Street, 8th Floor

8     East Palo Alto, CA  94303            San Francisco, CA  94107

9     ballon@gtlaw.com                        wetzelj@gtlaw.com

meekerh@gtlaw.com                   powersdk@gtlaw.com

10

Fax:    650.328.8508                  Fax:  415.707.2010

11

12     Valerie W. Ho                               Robert A. Van Nest

GREENBERG TRAURIG LLP         Christa M. Anderson

13     2450 Colorado Avenue, Suite 400E      Michael S. Kwun

Santa Monica, CA  90404           Daniel Purcell

Eugene M. Paige

14     hov@gtlaw.com                           Matthias A. Kamber

KEKER & VAN NEST LLP

15     Fax:  310.586.7800                   710 Sansome Street

San Francisco, CA  94111-1704

16                                              rvannest@kvn.com

canderson@kvn.com

17                                              mkwun@kvn.com

dpurcell@kvn.com

18                                              epaige@kvn.com

mkamber@kvn.com

19

Fax:  415.397.7188

20

        I declare under penalty of perjury under the laws of the United States that the foregoing is

21    true and correct.

22         Executed at Palo Alto, California, this 14th day of July, 2011.

23

24

25

       _____       _____

26                Cynthia D. Fix                     /s/ Cynthia D. Fix

                  (typed)                         (signature)

27

28

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, New York  10036-4003
www.kslaw.com

Scott T. Weingaertner
Direct Dial:  (212) 556-2227
Direct Fax:  (212) 556-2222
sweingaertner@kslaw.com

March 2, 2011

**VIA E-MAIL**

Marc D. Peters
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, CA   94304-1018
mdpeters@mofo.com

Re:      *Oracle America, Inc. v. Google Inc.*,  Civil Action No.  3:10-cv-03561-WHA (N.D. Cal.)

Dear Marc:

I write in response to your letter of February 21, regarding certain of Oracle's Requests for Production (RFPs).  With respect to RFP 1, Google has already produced source code from http://android.git.kernel.org/ and is in the process of making non-public source code available for inspection pursuant to the parties' discussions on a suitable mechanism.  Google has not identified any other code sets for production other than an updated version of the code available at http://android.git.kernel.org/, which it intends to produce toward the end of fact discovery as discussed in previous correspondence.

Non-privileged communications responsive to RFP 40 and RFP 52, to the extent they exist, would have been included in Google's production of its internal Android-related web pages and wiki sites, or will be produced in custodial production, which Google expects to substantially complete in the upcoming weeks.  Finally, Google has collected agreements with third parties and complied with protective order provisions regarding notice and non-disclosure provisions.  Those agreements are currently being processed for production by the end of this week.

With respect to your letter generally, I take issue with the notion that you need discovery from Google to supplement your infringement contentions.  While I acknowledge that Oracle has chosen to rely on an assumption as to the operation of *all* handsets in lieu of performing diligence related to the handsets themselves, we have been clear that Google's position is that this assumption is insufficient for Oracle to carry its burden and that no amount of discovery from Google is going to provide Oracle with what it is apparently hoping for—some sort of blanket representation across all devices to bolster that assumption.  You previously asked for

Marc D. Peters
March 2, 2011
Page 2

such a representation despite the fact Oracle has been on notice at least since the time of Google's Answer that no such representation is even possible.  We explicitly declined that request and further explained Google's position in papers to the Court regarding the deficiencies in Oracle's Infringement Contentions.  (*See* Dkt. 79.)

Our understanding from discussions during the meet and confer was that Oracle would analyze third party materials and devices, and if, necessary, seek discovery from third parties. To be clear, Oracle has been on notice for months that Google would not and could not be the source of the detail that Oracle apparently needs to establish the operation of third party devices. Oracle has chosen to proceed by relying on an assumption in lieu of analysis or discovery into third party devices and does so at its own peril.

Regards,

Scott T. Weingaertner

cc:    Michael A. Jacobs *(via email)*
       Google's outside counsel *(via email)*

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

4

5     ------------------------

6     ORACLE AMERICA, INC.,    )

7             Plaintiff,       )

8         vs.                  ) No. CV 10-03561 WHA

9     GOOGLE, INC.,            )

10            Defendant.       )

11    ------------------------

12

13

14

15         Videotaped Federal Rule 30(b)(6), Topic 7,

16         deposition of PATRICK BRADY, taken at the Law

17         Offices of King & Spalding LLP, 333 Twin Dolphin

18         Drive, Redwood Shores, California, commencing at

19         9:36 a.m., Thursday, July 21, 2011, before

20         Leslie Rockwood, RPR, CSR No. 3462.

21

22

23

24

25    PAGES 1 - 133

                                              Page 1

```
 1    code -- the Android source code that your team was

 2    providing to HTC, LG and Samsung for loading on their

 3    devices, are you aware that that Android source code was

 4    installed on those devices?

 5              MR. KAMBER:  Object to the form.          09:56:52

 6              THE WITNESS:  I can't -- I mean, the source

 7    code that we provided to OEMs, I don't know if that

 8    specific source code was installed on the systems.  Many

 9    of the handset manufacturers made changes to the source

10    code and then loaded it onto their devices.           09:57:11

11         Q.  BY MR. MUINO:  Let's focus just on the -- on

12    HTC for a moment.

13         A.  Uh-huh.

14         Q.  You mentioned the HTC Dream device.

15         A.  Yep.                                         09:57:22

16         Q.  Are you aware that the HTC Dream was

17    installed with Android code?

18              MR. KAMBER:  Object to the form.

19              THE WITNESS:  I'm aware that the HTC Dream

20    ran a compiled version of the Android operating system,  09:57:39

21    yes.

22         Q.  BY MR. MUINO:  And do you know if the Android

23    operating system installed on HTC Dream included the

24    Dalvik Virtual Machine?

25         A.  I believe it did, yes.                       09:57:52
```

Page 19

1        Q.  Do you know if it included the dexopt tool?

2        A.  I don't know.

3        Q.  Do you know if it included the Zygote

4   process?

5        A.  I would believe it did.                    09:58:02

6        Q.  Do you have any reason to think the code --

7   Android code installed on the HTC Dream did not include

8   the dexopt tool?

9            MR. KAMBER:  Object to the form, lack of

10  foundation.                                          09:58:14

11           THE WITNESS:  I don't know enough about the

12  dexopt tool to know one way or another if it was

13  installed.

14       Q.  BY MR. MUINO:  Do you have any knowledge with

15  respect to the HTC Dream that HTC made any modifications  09:58:22

16  to the Dalvik Virtual Machine installed on that device?

17       A.  They made many modifications to the source

18  code, and it -- the level of modifications varied on

19  where they were shipping the HTC Dream.  I don't know --

20  I don't know specifically what modifications they made or  09:58:48

21  where exactly those changes were made.

22       Q.  How do you know that HTC made many

23  modifications, as you put it, to the Android source code

24  installed on HTC Dream?

25       A.  I remember at the time we -- you know, due to  09:59:04

                                                        Page 20

1    limited resources, Google really worked with HTC and

2    designed the platform, really, just for the initial

3    product launch in the U.S.  HTC made modifications for

4    everywhere that the handset was shipped outside of the

5    U.S. where we -- at that point we'd open sourced the          09:59:23

6    source code and told them, you know, "You can ship this

7    as long as it's compatible with the original, with the

8    Android platform."

9         Q.  With respect to the HTC Dream in particular

10   that your team was helping HTC with --                        09:59:44

11        A.  Uh-huh.

12        Q.  -- in the 2007 time period, did your team

13   test or examine that phone in its final form?

14        A.  That wasn't a responsibility of my team.

15        Q.  What insight did your team have as to the            10:00:02

16   installed code on that phone in its final form?

17        A.  What insight?  I'm not sure I understand what

18   you mean by insight.

19        Q.  Did your team have any knowledge of the

20   installed code on -- strike that.                             10:00:21

21             I assume your team had some knowledge about

22   the code that was actually installed on the HTC Dream?

23             MR. KAMBER:  Object to the form.

24             THE WITNESS:  Yes.

25        Q.  BY MR. MUINO:  And how did -- how did your           10:00:31

                                                        Page 21

1    particular and the modifications that they represent?

2                MR. KAMBER:  Object to the form.

3                THE WITNESS:  There are tens of thousands of

4    patches if not more, so I did not study any particular

5    patches there.                                      10:24:54

6         Q.  BY MR. MUINO:  You previously mentioned the

7    Open Source change log.

8         A.  Yes.

9         Q.  And you said you reviewed that in preparation

10   for today.                                          10:25:03

11        A.  Yes.

12        Q.  What does the Open Source change log show?

13               MR. KAMBER:  Object to the form.

14               THE WITNESS:  The Open Source change log

15   shows patches -- patches that were accepted by the   10:25:14

16   maintainers of the Open Source Project or the component

17   in Open Source that were then merged into the code base.

18   So not the full set of patches that were sent to the Open

19   Source Project, but those that were actually accepted and

20   merged in.                                          10:25:41

21        Q.  BY MR. MUINO:  And when you say the Open

22   Source code base, do you mean the Android code base?

23        A.  Yes.  The Android Open Source Project.

24        Q.  So this was code submitted by OEMs that

25   ultimately was included in Android itself?          10:25:55

                                                    Page 38

```
1              MR. KAMBER:  Objection to form.

2              THE WITNESS:  The code -- the patches or the

3    change log that I reviewed, did not indicate who -- the

4    company for the author of each of these patches, so I

5    have no way of knowing if they came from OEMs or, you        10:26:16

6    know, silicon vendors, carriers or anonymous third

7    parties.  Most of these just come in with a personal

8    email address.

9         Q.  BY MR. MUINO:  Do you know if any of those

10   changes reflected on the change log are indicative of        10:26:33

11   changes made on actual Android devices?

12             MR. KAMBER:  Objection to form.

13             THE WITNESS:  Are they indicative of changes

14   made?  I would assume that many of the changes that are

15   being contributed are being contributed for purposes of      10:26:54

16   shipping on an Android device.  Again, these are a small

17   subset of changes that any third party would make when

18   shipping Android on hardware.  So they would submit some

19   small portion of those to the Open Source Project.

20        Q.  BY MR. MUINO:  Who maintains the Open Source         10:27:18

21   change log?  Is that in Google's possession?

22        A.  No.  It's operated by a third party,

23   kernel.org.

24        Q.  Is that publicly accessible?

25        A.  It is.                                               10:27:32
```

Page 39

1          Q.  BY MR. MUINO:  Was the dexopt tool installed

2     on Samsung Galaxy?

3               MR. KAMBER:  Objection to form.

4               THE WITNESS:  Again, I do not know.

5          Q.  BY MR. MUINO:  Was the Zygote process          10:32:22

6     capability installed on Samsung Galaxy?

7               MR. KAMBER:  Objection to Form.

8               THE WITNESS:  I can't say for sure, but I

9     would assume that the Zygote process was installed.

10          Q.  BY MR. MUINO:  And does that formulation make   10:32:36

11     sense to you, Mr. Brady?  I understand your pushback that

12     Zygote process is a process that happens.

13          A.  Yes.

14          Q.  If I say Zygote process capability, do you

15     understand that to refer to the ability of the phone to   10:32:47

16     use a Zygote process to generate virtual machines to run

17     other applications?

18               MR. KAMBER:  Objection.  Form.

19               THE WITNESS:  Yes.  I think I -- yes.  I

20     understand that -- that use now that we've used it      10:32:59

21     several times.

22          Q.  BY MR. MUINO:  Are you aware of any changes

23     that Samsung made to the Android code on the Galaxy?

24          A.  They made extensive changes.  I don't know

25     the specifics.                                         10:33:14

                                                    Page 43

1          Q.   What do you know in that regard?

2               MR. KAMBER:  Objection.  Form.

3               THE WITNESS:   What I do remember that jumps

4     out at me specifically, they made several changes to the

5     user interface.  I believe at the time -- I'm not sure if        10:33:29

6     this was on the Galaxy.  It may have been other devices,

7     but Samsung was making changes to -- to the Dalvik

8     Virtual Machine, but I don't remember the specifics.

9     They were changing the way that bytecode would be

10    interpreted or executed on the device.  I believe they          10:33:53

11    were adding an ahead of time compiler and changing other

12    things.

13         Q.   BY MR. MUINO:  Let's move on to the Galaxy S.

14    Was the Android platform installed on the Galaxy S?

15         A.   I believe it was.                                      10:34:22

16         Q.   And what work did your team do with Samsung

17    in connection with the Galaxy S?

18         A.   Similar to the other devices, general support

19    when Samsung ran into issues and helping them to --

20    general operational, so helping them apply security             10:34:41

21    patches, helping them with compatibility issues related

22    to third-party applications.

23         Q.   Was the Dalvik Virtual Machine installed on

24    the Galaxy S?

25               MR. KAMBER:  Objection to form.                       10:34:59

                                                            Page 44

1          A.  I do.

2          Q.  The first sentence there is:  "Device

3     implementations must support the full Dalvik Executable

4     (DEX) bytecode specification and Dalvik Virtual Machine

5     semantics."                                          11:36:50

6              Do you see that?

7          A.  I do.

8          Q.  Under this requirement, is it necessary to

9     have a Dalvik Virtual Machine in your Android

10    implementation in order for the implementation to be    11:37:04

11    compatible?

12              MR. KAMBER:  Objection to form.

13              THE WITNESS:  Absolutely not.  You must have

14    a virtual machine that's capable, as it says here, of

15    supporting the Dalvik executable bytecode.              11:37:15

16              So you could create another clean room

17    implementation virtual machine that was able to execute

18    this bytecode.

19          Q.  BY MR. MUINO:  Are you aware of any OEMs --

20    Android OEMs that have done that, created an alternative   11:37:33

21    implementation of the virtual machine capable of

22    executing the Dalvik bytecode?

23          A.  Well, I think, you know -- and it's hard to

24    distinguish what constitutes creating an alternative

25    version.  So as I said, <mark>many of our partners make</mark>     11:37:52

                                                          Page 77

1   extensive modifications to Android, the platform in

2   general, and some to Dalvik as well.

3           And so I would say that each one of them is

4   creating a kind of unique version of Android.  And in

5   some cases, of the Dalvik -- the Dalvik -- or a Dalvik        11:38:06

6   Virtual Machine that runs this bytecode.  And, in fact,

7   sometimes, you know, this causes compatibility problems

8   that we find out later on.

9       Q.  Have any OEMs told you that they intended to

10  replace the Dalvik Virtual Machine with their own virtual     11:38:27

11  machine implementation?

12          MR. KAMBER:  Objection to form.

13          THE WITNESS:  Yeah, I don't think -- I don't

14  recall any OEMs telling us specifically that they

15  intended to replace the Dalvik Virtual Machine.              11:38:43

16          As I said earlier, you know, many OEMs have

17  told us portions they intended to change in what is

18  provided -- in the source code that's provided in the

19  Android Open Source Project for their implementations of

20  the Dalvik Virtual Machine.                                  11:39:01

21      Q.  I'm going to show you what was previously

22  marked as Exhibit 235 (indicating).  This is the

23  Compatibility Test Suite framework user manual for

24  Android 1.6.

25          Have you seen this document before,               11:39:42

**ERRATA SHEET**
**Patrick Brady - TOPIC 7**
**Deposition date:  July 21, 2011**

I, PATRICK BRADY, hereby certify that I have carefully read the foregoing transcript, and that the same is a true and correct transcription of my deposition, except:

| Page | Line | Change | Reason |
|------|------|--------|--------|
| 46 | 14 | "adjustment time compiler" should read "AOT compiler" | Transcription error |
| 47 | 23 | "duel core processor" should read "dual-core processor" | Spelling |
| 65 | 14 | "skew" should read "SKU" | Spelling |
| 72 | 13 | "Goggle" should be "Google" | Transcription error |
| 75 | 6 | "Java in the name set" should be "java in the namespace" | Misheard |
| 85 | 15 | "Android" should be "droid" | Misheard |
| 91 | 11 | "information" should be "implementation" | Misheard |
| 93 | 10 | "understand" should be "understanding" | Misheard |
| 99 | 8 | "dexopt implementation" should be "DEX optimization" | Misheard |
| 120 | 21 | "Is it – the high quality" should be "is it high quality" | Misheard |
| 120 | 25 | "better than not up-stirring" should be "better to not upstream" | Misheard |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Witness Signature: _____        Date: _Sept. 1, 2011_

```
 1   STATE OF CALIFORNIA      ) ss:

 2   COUNTY OF MARIN          )

 3

 4          I, LESLIE ROCKWOOD, CSR No. 3462, do hereby

 5   certify:

 6          That the foregoing deposition testimony was

 7   taken before me at the time and place therein set forth

 8   and at which time the witness was administered the oath;

 9          That testimony of the witness and all

10   objections made by counsel at the time of the examination

11   were recorded stenographically by me, and were thereafter

12   transcribed under my direction and supervision, and that

13   the foregoing pages contain a full, true and accurate

14   record of all proceedings and testimony to the best of my

15   skill and ability.

16          I further certify that I am neither counsel

17   for any party to said action, nor am I related to any

18   party to said action, nor am I in any way interested in

19   the outcome thereof.

20          IN WITNESS WHEREOF, I have subscribed my name

21   this 26th day of July, 2011.

22

23

24

25          LESLIE ROCKWOOD, CSR. NO. 3462

                                        Page 131
```

1          I declare under the penalty of perjury

2     under the laws of the State of California that the

3     foregoing is true and correct.

4          Executed on ___September 1st___, 2011,

5     at ___Mountain View___, ___CA_____.

6

7

8

9

10

11     _____

12              SIGNATURE OF THE WITNESS

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 145

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE AMERICA, INC.

               Plaintiff,

    v.

GOOGLE INC.

               Defendant.

Case No. CV 10-03561 WHA

**OPENING EXPERT REPORT OF JOHN C. MITCHELL
REGARDING PATENT INFRINGEMENT**

**SUBMITTED ON BEHALF OF PLAINTIFF
ORACLE AMERICA, INC.**

194.    Individually and collectively, the terms of these agreements (which I understand that Google has with every major Android device manufacturer) mean that Google exerts significant control over Android devices made and sold by others and what software they run. Google provides infringing code to device manufacturers, discourages or prevents any changes to Android with respect to the infringing functionality, and could change the Android software running on devices made by others to avoid infringement if its chose.  For these reasons, I conclude that Google induces and contributes to infringement by the entities that make, use, and sell Android devices, such as device manufacturers, carriers, application developers, and end users.

### E.    Experimental Work

195.    Appendix A discusses the experimental work I performed to confirm infringement of the patents-in-suit, in supplementing the analysis detailed below.  Appendix A is an integral part of my report, and discusses my study of the following Android devices to confirm infringement in support of my analysis:

- Nexus One;
- Nexus S;
- HTC's Droid Incredible 2;
- LG Optimus;
- Samsung Captivate; and
- Motorola Atrix.

196.    In support of my analysis and rendered opinions, I also rely on the performance benchmark and testing analysis completed by Bob Vandette, Noel Poore, and Erez Landau, as detailed in their respective summaries and reports submitted to Google with my Opening Patent Infringement Report.  Their work was conducted at my request and direction.  I engaged in numerous conversations with these Java engineers in carrying out this work.

## XIII.   CONCLUSION

767.   For the foregoing reasons, it is my opinion that Android infringes:

- Claims 11, 12, 15, 17, 22, 27, 29, 38, 39, 40, and 41 of United States Patent No. RE38,104;

- Claims 1, 2, 3, and 8 of United States Patent No. 6,910,205;

- Claims 1, 6, 7, 12, 13, 15, and 16 of United States Patent No. 5,966,702;

- Claims 1, 4, 8, 12, 14, and 20 of United States Patent No. 6,061,520;

- Claims 1, 4, 6, 10, 13, 19, 21, and 22 of United States Patent No. 7,426,720;

- Claims 10 and 11 of United States Patent No. 6,125,447; and

- Claims 13, 14, and 15 of United States Patent No. 6,192,476

It is also my opinion that Google is liable for direct and indirect infringement in the manner described above.

768.   For the forgoing reasons, it is my opinion that the patents-in-suit form the basis for consumer demand for Android by developers and end-users.

769.   For the forgoing reasons, it is my opinion that once Google decided to adopt the Java execution model in Android, the patents-in-suit became necessary to Android achieving satisfactory performance and security.

Dated: August 8, 2011

John C. Mitchell

1  MORRISON & FOERSTER LLP
   MICHAEL A. JACOBS (Bar No. 111664)
2  mjacobs@mofo.com
   MARC DAVID PETERS (Bar No. 211725)
3  mdpeters@mofo.com
   DANIEL P. MUINO (Bar No. 209624)
4  dmuino@mofo.com
   755 Page Mill Road
5  Palo Alto, CA  94304-1018
   Telephone: (650) 813-5600 / Facsimile: (650) 494-0792
6
   BOIES, SCHILLER & FLEXNER LLP
7  DAVID BOIES (Admitted *Pro Hac Vice*)
   dboies@bsfllp.com
8  333 Main Street
   Armonk, NY  10504
9  Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
   STEVEN C. HOLTZMAN (Bar No. 144177)
10 sholtzman@bsfllp.com
   1999 Harrison St., Suite 900
11 Oakland, CA  94612
   Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
12
   ORACLE CORPORATION
13 DORIAN DALEY (Bar No. 129049)
   dorian.daley@oracle.com
14 DEBORAH K. MILLER (Bar No. 95527)
   deborah.miller@oracle.com
15 MATTHEW M. SARBORARIA (Bar No. 211600)
   matthew.sarboraria@oracle.com
16 500 Oracle Parkway
   Redwood City, CA  94065
17 Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

18 *Attorneys for Plaintiff*
   ORACLE AMERICA, INC.
19

20              UNITED STATES DISTRICT COURT

21              NORTHERN DISTRICT OF CALIFORNIA

22                 SAN FRANCISCO DIVISION

23 ORACLE AMERICA, INC.            Case No. 3:10-cv-03561-WHA

24            Plaintiff,           **ORACLE'S SECOND
                                   SUPPLEMENTAL PATENT LOCAL RULE
25       v.                        3-1 DISCLOSURE OF ASSERTED
                                   CLAIMS AND INFRINGEMENT
26 GOOGLE, INC.                    CONTENTIONS**

27            Defendant.

28

Pursuant to Patent Local Rule 3-1 and agreement between the parties, Plaintiff Oracle America, Inc. ("Oracle") hereby submits the following Second Supplemental Disclosure of Asserted Claims and Infringement Contentions.

Fact discovery is ongoing, and Google has yet to produce substantial quantities of information that may affect Oracle's infringement contentions.  In addition, depositions that are directly relevant to Oracle's claims of infringement will be scheduled for after the date of this statement.  Not all information about the various versions of the Accused Instrumentalities is publicly available.  For example, Google has neither released nor produced the source code for Honeycomb, preventing Oracle from analyzing it.  Further still, Oracle understands that Google plans to release future versions of the Accused Instrumentalities.[1]

As such, Oracle's investigation into the extent of infringement by Google is ongoing, and Oracle makes these disclosures based on present knowledge of Google's infringing activities.  In light of the foregoing, Oracle reserves the right to supplement or amend these disclosures as further facts are revealed during the course of this litigation.

## I.   DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS.

### A.   Patent Local Rule 3-1(a) — Asserted Claims.

Oracle asserts that Defendant Google is liable under Title 35 U.S.C. § 271(a), (b), (c), and (f) for infringement of:

- Claims 11-41 of United States Patent No. RE38,104 ("the '104 reissue patent") (infringement claim chart attached as Exhibit A);
- Claims 1, 2, 3, 4, and 8 of United States Patent No. 6,910,205 ("the '205 patent") (infringement claim charts attached as Exhibits B-1 and Exhibit B-2);
- Claims 1, 5-7, 11-13, 15, and 16 of United States Patent No. 5,966,702 ("the '702 patent") (infringement claim chart attached as Exhibit C);

---

[1] *See, e.g.*, http://en.wikipedia.org/wiki/Android_(operating_system) (last visited March 31, 2011) (Android version "Ice Cream" scheduled for 2011 launch).

- Claims 1-24 of United States Patent No. 6,125,447 ("the '447 patent") (infringement claim chart attached as Exhibit D);

- Claims 1-21 of United States Patent No. 6,192,476 ("the '476 patent") (infringement claim chart attached as Exhibit E);

- Claims 1-4 and 6-23 of United States Patent No. 6,061,520 ("the '520 patent") (infringement claim chart attached as Exhibit F); and

- Claims 1-8, 10-17, and 19-22 of United States Patent No. 7,426,720 ("the '720 patent") (infringement claim chart attached as Exhibit G).

**B.      Patent Local Rule 3-1(b) — Accused Instrumentalities.**

Based on Oracle's investigation thus far, Oracle accuses the following Accused Instrumentalities of infringing the asserted claims specified above in the manner described in Exhibits A-G: (i) "Android" or "the Android Platform";[2] (ii) Google devices running Android; and (iii) other mobile devices running Android.  Representative examples of Google devices running Android include the Google Dev Phones, the Google Nexus One, and the Google Nexus S.[3]  Representative examples of other mobile devices running Android include HTC's EVO 4G, HTC's Droid Incredible, HTC's G2, Motorola's Droid, and Samsung's Captivate.  Android applications, including those written by Google, when built or run will necessarily use the infringing functionality in the manner described in Exhibits A-G.  For example, application developers like Google use the Google-provided dx tool from the Android SDK to convert .class

---

[2] "Android" or "the Android Platform" means "Android" as referred to in Google's Answer (Docket No. 32) at Background ¶ 12 and in Google's Answer to Amended Complaint (Docket No. 51) at Background ¶ 12 and at Factual Background ¶¶ 11-17,  and includes any versions thereof (whether released or unreleased) and related public or proprietary source code, executable code, and documentation.

[3] *See, e.g.*, JR Raphael, *The Nexus S and Google: Everything There Is To Know*, PCWORLD (Nov. 11, 2010), available at http://www.pcworld.com/article/210460/the_nexus_s_and_google_everything_there_is_to_know. html (last visited Nov. 29, 2010) ("Today's buzz is all about the Samsung Nexus S -- a still-under-wraps smartphone believed to be the successor to Google's Nexus One. According to various leaks, the Nexus S will be a 'Google experience' device, meaning it'll run a stock version of Android without any of those baked-in manufacturer UIs. And, if the latest rumors prove to be true, the Samsung Nexus S will be rocking the as-of-yet-unannounced Android Gingerbread release.").  The "leaks" proved to be true: the Nexus S runs a stock version of Gingerbread.



# Fact Sheet

## Organization:

ACIS is a voluntary organization of more than 30 corporations in the computer industry. Members include: Advanced Micro Devices; Amdahl Corporation; Bull HN Information Systems, Inc.; NCR Corporation; Seagate Technology Corporation; StorageTek Corporation; Sun Microsystems, Inc.; and 3Com Corporation.

## Purpose:

The organization supports policies and principles of intellectual property law that provide a balance between rewards for innovation and the belief that computer systems developed by different vendors must be able to communicate fully with each other. This ability to communicate is termed interoperabilty, and involves the interchange of information that benefits all computer users.

## Membership:

There are no dues or membership for joining ACIS. Members contribute time and resources in support of ACIS activities on a voluntary basis. Application for membership in ACIS is open to companies in the information technology industry which endorse the ACIS Statement of Principles, and is subject to approval by members of ACIS.

**Panel of Academic Advisors:**

- Howard Anawalt, Professor Law - University of Santa Clara
- Stephen Barnett, Professor of Law - University of California, Berkeley
- John Barton, Professor - Stanford University
- Dan Burk, Professor of Law - Seton Hall University School of Law
- Julie Cohen, Professor of  Law - Georgetown University Law Center
- Gideon Frieder, Dean of Engineering & Applied Sciences - The George Washington University
- Allan Gottlieb, Professor of Computer Science/Director of Ultra Computer Research Laboratory - New York University
- Peter Jaszi, Professor of Law - Washington College of Law, The American University
- Gerald Johnson, Academic Vice President - National Technological University
- Dennis Karjala, Professor of Law - Arizona State University
- David Lang, Professor of Law - Duke University Law School
- Mark Lemley, Professor of Law - University of California, Berkeley
- Jessica Litman, Professor of Law - Wayne State University
- Robert Merges, Professor of Law - University of California, Berkeley
- L. Ray Patterson, Professor of Law - University of Georgia Law School
- Jerome Reichman, Professor of Law - Duke University School of Law
- David Rice, Professor of Law - Rober Williams University School of Law
- Pamela Samuelson - Professor of Law - University of California, Berkeley
- Diane Zimmerman, Professor of Law - New York University

ACIS Sister Organizations:
ACIS Coordinates closely with the like-minded organizations in Europe, Canada and Australia. These organizations are the:

- European Committee for Interoperable Systems (ECIS)
- Canadian Association for Interoperable Systems (CAIS)
- Supporters of Interoperable Systems in Australia (SISA)

Questions or comments? webmaster@interop.org

ORACLE
Oracle Websites    Sun Quick Links ▾

Downloads
Hardware
Software
Support
Documentation
Training

Sun Log In
Sun Contacts
How to Buy

Oracle and Sun
Sun Worldwide
Sun Developers
Java Developers
Java.com

secure search     Oracle.com

- Home
- Products and Services
- Industries
- Support
- Store
- Partners
- Communities
- About

Home > Products > Software > Operating Systems > Solaris Operating System > Previous > Solaris 9 Operating System (SPARC) >

# Features and Benefits - Compatibility



- Services Platform features
- Manageability features
- Security features
- Scalability features
- Availability features

Evaluate
» Product Home
» Promotions
» Data Sheets
» Tours
» Case Studies
» White Papers
» News & Events

Product Home
» Features and Benefits
» Data Sheet
» Family Comparison
» FAQ
» System Requirements

**Get the Software**



Get
» Get the Software
» Licensing Information
» Programs & Promotions
» Support & Services
» Training

Use
» Documentation
» Code Examples
» Community & Resources
» Developer Resources
» Newsletters

Maintain
» Upgrades & Add-Ons
» Patches & Support
» Alerts
» Previous Versions

| Feature | Function | Benefit |
|---|---|---|
| Enhanced Linux Compatibility | Sun has built many features into the Solaris OS to make it compatible with Linux, including APIs, commands, tools, utilities, and services. Some of the freeware libraries and supporting utilities that were on the Solaris 8 Companion CD are now integrated in the Solaris 9 OS. LinCAT, the Linux Compatibility Assurance Toolkit, is available to run against source code to help port to the Solaris platform | Software application developers can easily deploy and run their Linux applications on the Solaris OS. They can also develop and compile their freeware applications more easily. |
| Guarantee Test Suite/Certification Test Suite | Guarantee Test Suite uses static analysis tools to check an application's system interface usage against the Solaris API. Includes appcert, apptrace and appcheck. | Protects your existing application investments. Tests compliance with Solaris OS API and ensures applications can run on future releases of Solaris software with full binary compatibility. |
| Enhanced Accessibility | New features have been added to increase accessibility of the Solaris OS desktop for people with disabilities. This is in compliance with Section 508 of the Federal Rehabilitation Act. | People with disabilities will be able to have better access to the Solaris OS desktop. |
| Expanded Language Support | The Solaris 9 OS now includes support for 133 locales, covering 39 languages. Includes broadened support for Asian languages; improved data interoperability; European and middle Eastern keyboard | Internationalized architecture allows developers to write one single binary which can be distributed around the world. |

| | | |
|---|---|---|
| | support; true type fonts; expanded unicode support and new global freeware. | |
| Improved Standards Support | Sun has set the pace for nearly all international standards, such as Unicode, ANSI, IEEE, ISO, Uniforum, and Open Group forums. Sun is also driving internationalization standards for the entire open community via GNOME, Mozilla, OpenOffice, and Java, as well as the Linux Internationalization initiative that Sun leads. The Solaris Operating System further exemplifies Sun's commitment to established, open industry standards. Solaris OS certifications include POSIX 1003.1b, X/Open UNIX 95 (Spec 1170), and UNIX 98 Branding. | With Sun's established and ongoing commitment to open standards, users can be confident that their investment in Sun technology will support the industry's best-of-breed solutions now and in the future. |
| Sun ONE Application Server (formerly iPlanet Application Server) Integration Coming Soon | Sun ONE Application Server with web services will be integrated into the Solaris platform. | Enables customers to develop and deploy web enabled applications for enterprise class systems. |
| GNOME Coming Soon | A unified, open, and accessible desktop for the Solaris OS. | Provides an advanced and intuitive user desktop for the Solaris OS and provides investment protection by delivering a unified user environment for UNIX[r] platforms including Linux. |
| Industry-Leading ISV Support | The Solaris OS enjoys outstanding support from the leading enterprise application developers, making it a premier environment for | More of the tools and applications that you need to run your business are available on the Solaris |

Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-03369760

| | | |
|---|---|---|
| | deploying your IT infrastructure. In terms of ISV enthusiasm, the Solaris platform ranks at or near the top of the list across all computing environments. In the context of UNIX[r] operating systems, the Solaris platform is the clear leader. The advantages of Solaris are well-recognized throughout the industry. In one example -- Network Computing's 7th Annual Well-Connected Awards, Infrastructure category -- the Solaris Operating System emerged as the clear winner. Solaris software was the "hands-down favorite operating system for rock-solid Internet-enabled applications." | Operating System. |
| Apache Web Server | Widely used, open source web server is integrated and supported with the Solaris OS. | Provides standard functionality for web services with one-stop support available from Sun. |
| Mobile IP | Mobile IP enables the transfer of information to and from mobile computers, such as laptop and wireless communications. The mobile computer can change its location to a foreign network and still access and communicate with and through the mobile computer's home network. | Helps provide current information anywhere, anytime. |
| mp Print Filter Enhancement | Enables X Window server support to improve Asian printing and use of PC-printers | mp Program accepts international text files from various locales and produces output for the specified locale. |
| Removable Media | Removable media management now fully supports devices such as | Enhances portability of information. |

DVD-ROMs, Zip drives,
Jaz drives, CD-ROMs,
and diskettes.

Oracle is reviewing the Sun product roadmap and will provide guidance to customers in accordance with Oracle's standard product communication policies. Any resulting features and timing of release of such features as determined by Oracle's review of roadmaps, are at the sole discretion of Oracle. All product roadmap information, whether communicated by Sun Microsystems or by Oracle, does not represent a commitment to deliver any material, code, or functionality, and should not be relied upon in making purchasing decisions. It is intended for information purposes only, and may not be incorporated into any contract.

**SOFTWARE. HARDWARE. COMPLETE.**   About Oracle | Oracle and Sun | 🔲 | Subscribe | Careers | Contact Us | Site Maps |
Legal Notices | Terms of Use | Your Privacy Rights



**SOLARIS**

# INTEROPERABILITY AND ORACLE SOLARIS 10

INTEROPERABILITY FROM THE DESKTOP TO THE DATA CENTER AND ACROSS A RANGE OF SYSTEMS, SOFTWARE, AND TECHNOLOGIES

**KEY FEATURES**

• Support for open standards such as UDDI, SOAP, WSDL, and XML

• Source and binary compatibility for Linux applications and interoperability with Microsoft Windows

• IPerl, PHP, and other popular scripting languages

• Apache, Samba, Sendmail, IP Filter, BIND, and other open source software

• Support for Java-based application development and deployment with Java 2 Platform, Enterprise Edition and Standard Edition

• Source-level compatibility that allows Oracle Solaris and Linux applications to compile and run on both platforms

*Oracle Solaris 10 meets the challenges of complex, heterogeneous computing environments with an array of key features, including interoperability with both Linux- and Microsoft Windows–based systems and support for a wide range of open standards and open source applications.*

## Investment Protection in Heterogeneous Environments

Modern businesses rely on large, geographically dispersed computing infrastructures that often incorporate hundreds of heterogeneous hardware and software platforms from a wide variety of vendors. If these environments are to remain manageable, organizations must ensure that these diverse products function well together. At the same time, as organizations update their computing environments to improve cost-effectiveness and total cost of ownership, they must protect major investments in servers, operating systems (OSs), and applications and avoid dependence on specific hardware or software vendors.

## Interoperability with Java Technology

By freeing application design from the limitations of a specific platform, the Java technology revolution has changed the way people think about interoperability. Because it runs on every major hardware platform and is supported by virtually every software vendor, Java technology enables business applications to be developed and operated regardless of the OSs being used. Oracle Solaris 10 provides a rich set of features for Java technology–based development and deployment, including two types of Java 2 Platform, Enterprise Edition (J2EE platform)–compliant application servers—Oracle GlassFish Server and the open source Tomcat server.

## Interoperability with Microsoft Windows

Oracle Solaris 10 has key features for interoperability with Microsoft Windows. Samba, which is integrated into Oracle Solaris 10, allows Oracle clients and servers to access file and print services in a Microsoft Windows network. The Oracle Open Office suite provides interoperability with Microsoft Office file formats. Users can even run Microsoft Windows on a Sun Oracle x64 system running Oracle Solaris using Oracle VM VirtualBox. Oracle Solaris also supports open standards and interfaces that make it easier to interoperate with Microsoft Windows systems, including integration with Microsoft Active Directory environments via Oracle Solaris features such as Kerberos protocol support. Separately, LDAP authentication can also be used to access a Microsoft Active Directory server from an Oracle Solaris client.

### Interoperability with Linux

Sharing the same roots as the Linux OS, Oracle Solaris 10 functions efficiently with that OS in nearly any environment. As Linux interfaces continue to evolve, Oracle Solaris maintains source-level compatibility, helping to ensure that applications developed for either Oracle Solaris or Linux software will compile and run on both platforms. This includes the addition in Oracle Solaris 10 of libraries such as GLib, zlib, and Tcl/Tk; scripting; shell utilities such as Perl, Python, zsh, tcsh, and bash; and common user and administrative interfaces such as GNOME, KDE, and Webmin. In addition, an update to Oracle Solaris 10, the Oracle Solaris Linux application environment will allow users on x86 systems to run existing, unmodified Linux binaries on the Oracle Solaris platform. This new level of interoperability will give users access to the applications they choose while enabling them to reap the benefits of Oracle Solaris 10 functionality.

### Common Desktop and Infrastructure Software

In addition to providing interoperability for Java-based development, Oracle provides integrated applications and environments that run across multiple OSs. These include the Java Desktop System and the Java Enterprise System, both of which are available on Oracle Solaris and Linux platforms. Oracle Solaris 10 now includes the Java Desktop System—an integrated, full-featured client environment that includes the Mozilla Web browser and the Oracle Open Office suite— providing a unified desktop interface across Oracle Solaris and Linux platforms. Components of the Java Enterprise System are also included with Oracle Solaris 10, introducing an end-to-end software system that can support all of your infrastructure service needs on both Oracle Solaris and Linux platforms.

### Common Free and Open Source Software and Tools

In addition to contributing software to the open source community, Oracle helps you leverage the power of free and open source software (F/OSS) by providing it with Oracle Solaris 10. You don't have to download, compile, test, and integrate the tools you need. Oracle Solaris 10 includes 187 software products from the F/OSS community, also popular on Linux platforms, including the following:

• Apache, Tomcat, and multiple Zebra routing protocols for network and Web services

• Bison, GCC, Perl, and Python tools for software development

• IP Filter, TCP Wrappers, and Secure Shell utilities for security

• GNOME, Mozilla, and Evolution software for desktop usability

These free software components are either integrated directly into Oracle Solaris 10 distribution or are included on the Oracle Solaris software companion CD. In addition, F/OSS tools integrated into Oracle Solaris 10 include the standard GNU development utilities. Library support includes UNIX standard functions as well as the most popular F/OSS libraries such as Glib, GTK, JPEG, PNG, Tcl/Tk, TIFF, XML, and zlib, which can be used across Oracle Solaris and Linux platforms.



## Conclusion

For businesses that rely on heterogeneous environments, Oracle Solaris 10 empowers users with new technologies and tools that let them take advantage of the innovation, security, and performance of Oracle Solaris 10 software while protecting existing investments in applications, hardware, and training.

## Contact Us

For more information about interoperability and Oracle Solaris 10, visit oracle.com/solaris or call +1.800.ORACLE1 to speak to an Oracle representative.

 Oracle is committed to developing practices and products that help protect the environment

Copyright © 2009, 2010, Oracle and/or its affiliates. All rights reserved.

This document is provided for information purposes only and the contents hereof are subject to change without notice. This document is not warranted to be error-free, nor subject to any other warranties or conditions, whether expressed orally or implied in law, including implied warranties and conditions of merchantability or fitness for a particular purpose. We specifically disclaim any liability with respect to this document and no contractual obligations are formed either directly or indirectly by this document. This document may not be reproduced or transmitted in any form or by any means, electronic or mechanical, for any purpose, without our prior written permission.

Oracle and Java are registered trademarks of Oracle and/or its affiliates. Other names may be trademarks of their respective owners.

AMD, Opteron, the AMD logo, and the AMD Opteron logo are trademarks or registered trademarks of Advanced Micro Devices. Intel and Intel Xeon are trademarks or registered trademarks of Intel Corporation. All SPARC trademarks are used under license and are trademarks or registered trademarks of SPARC International, Inc. UNIX is a registered trademark licensed through X/Open Company, Ltd. 0310

**SOFTWARE. HARDWARE. COMPLETE.**



Pages 1 — 32

United States District Court

Northern District of California

Before The Honorable Donna M. Ryu

| | | |
|---|---|---|
| Oracle America, Incorporated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. C10–3561 DMR |
| Google, Incorporated, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

San Francisco, California
Thursday, August 25, 2011

**Reporter's Transcript Of Proceedings**

**Appearances:**

For Plaintiff:          Boies, Schiller & Flexner, LLP
                        1999 Harrison Street, Suite 900
                        Oakland, California  94612
                    **By:  William Fred Norton, Jr., Esquire**
                        **Steven Christopher Holtzman, Esquire**
                        **Meredith Richardson Dearborn, Esquire**


                        Oracle, USA, Incorporated
                        Legal Department
                        500 Oracle Parkway, Esquire
                        Redwood City, California  94065
                    **By:  Deborah K. Miller, Esquire**
                        **Andrew Temken, Esquire**

(Appearances continued on next page.)

**Reported By:       Sahar Bartlett, RPR, CSR No. 12963**
                        **Official Reporter, U.S. District Court**
                        **For the Northern District of California**

(Computerized Transcription By Eclipse)

```
 1   Appearances (continued):

 2   For Defendant:          Keker & Van Nest
                             710 Sansome Street
 3                           San Francisco, California  94111
                       By:  Christa M. Anderson, Esquire
 4                          Reid Mullen, Esquire

 5                           Google, Incorporated
                             1600 Amphitheatre Parkway
 6                           Mountain View, California  94043
                       By:  Renny Hwang, Esquire
 7

 8

 9                           ---oOo---

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

11



**THE COURT:**

       The other point I want to make is, it may well be that -- that what is said in the declarations is completely accurate, as to presentation of -- by Oracle and meetings that followed and directions to -- to people to gather technological or other -- well, to gather information in anticipation of litigation, but that doesn't mean that this e-mail fell within that category.



23          **MS. ANDERSON:**  Yes.

24              It appears from Your Honor's comments and throughout

25      the course of argument that there is a concern from Your Honor

1  perhaps about the honesty or integrity or credibility of some

2  of these declarations.

3       *THE COURT:*  No, actually, quite to the contrary.

4       I -- I don't know that I -- what I said earlier in

5  my announcement of the tentative is that it may well be that

6  Mr. Lee and Mr. Lindholm worked on something together that came

7  out of that Oracle presentation and that may, you know, if

8  something were presented to me, might have fallen under the

9  attorney-client privilege or Work Product Doctrine; I'm not

10 precluding that that possibility exists and that those

11 declarations are talking about that, but Google has not

12 connected the dots to show that this e-mail was part of that.

13       There may have been other things going on; Mr. Lee

14 and Mr. Lindholm may have been communicating about other things

15 that had nothing to do with direction by an attorney or seeking

16 legal advice or that kind of thing.  It's Google's burden, as

17 I've been pointing out all along.  So I don't need to reach the

18 question of whether somebody is not credible or is lying, or

19 anything like that.



## CERTIFICATE OF REPORTER

I, Sahar Bartlett, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


/s/ Sahar Bartlett
_____

Sahar Bartlett, RPR, CSR No. 12963

Tuesday, August 30, 2010

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:    415.391.5400
Facsimile:    415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY  10036
Tel:    212.556.2100
Fax:    212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel:    415.318.1200
Fax:    415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:    650.328.8500
Fax:    650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>                              Plaintiff,<br><br>    v.<br><br>GOOGLE INC.,<br><br>                              Defendant. | Case No. 3:10-cv-03561-WHA<br><br>**DECLARATION OF TIM LINDHOLM IN SUPPORT OF GOOGLE'S MOTION IN LIMINE # 1 TO EXCLUDE MR. LINDHOLM'S AUGUST 6, 2010 EMAIL AND DRAFTS THEREOF**<br><br>Judge:      Hon. William H. Alsup<br><br>Date Comp. Filed:      October 27, 2010<br><br>Trial Date:      October 31, 2011 |

581161.01

I, Tim Lindholm, state:

1.    I have been employed since 2005 by defendant Google Inc. ("Google") as a Software Engineer in the Systems Infrastructure group at Google.

2.    I have knowledge of the facts set forth herein, and if called to testify as a witness thereto could do so competently under oath.

3.    I am the author of the August 6, 2010 email and drafts thereof that I understand are the subject of Google's pending Motion in Limine #1. I submit this Declaration in support of that motion.

4.    When I wrote the August 6, 2010 email, all of the following was true:

a.    I had never reviewed the patents asserted by Oracle in this lawsuit. Moreover, I had no knowledge about what copyrights Oracle ultimately would claim were infringed by Android, and had never reviewed any of the copyright registrations asserted by Oracle in this lawsuit.

b.    I had not reviewed any of the source code or implementation for the aspects of the Android platform accused by Oracle in this lawsuit.

c.    I did not have the legal training necessary to analyze whether the Android platform infringes any of the patents or copyrights asserted by Oracle in this lawsuit.

d.    I did not, in fact, undertake to analyze whether the Android platform infringes any of the patents or copyrights asserted by Oracle in this lawsuit.

e.    Accordingly, I had no opinion as to whether the Android platform infringes any of the patents or copyrights asserted by Oracle in this lawsuit.

5.    My August 6, 2010 email concerned alternatives to technology that Oracle had recently accused Google of infringing. Again, I conducted no analysis of, and had no opinion about, whether the Android platform actually infringes any of the patents or copyrights asserted

1

581161.01

1  by Oracle in this lawsuit.

2  I declare under penalty of perjury that the foregoing is true and correct.  Executed on

3  September 22, 2011.

4

5

6  By: _____

TIM LINDHOLM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

581161.01

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--------------------------

ORACLE AMERICA, INC.,         )

            Plaintiff, )

        vs.              ) No. CV 10-03561

GOOGLE, INC.,                 )

           Defendant. )

--------------------------

    HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

    Videotaped Deposition of TIM LINDHOLM, taken

    at 333 Twin Dolphin Drive, Redwood Shores,

    California, commencing at 9:56 a.m., Wednesday,

    September 7, 2011, before Ashley Soevyn,

    CSR No. 12019.

    PAGES 1 - 115

b7bf30da-14ac-467a-9214-80c6d94237a1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 101



14   BY MR. NORTON:

15       Q.   Mr. Lindholm --                          12:17:28

16       A.   Yes.

17       Q.   -- you've seen Exhibit 532 before?

18       A.   Yes, I have.

19       Q.   It's an e-mail from you to Mr. Rubin,

20   Mr. Grove, Mr. Lee, and Mr. -- and yourself,

21   correct?

22       A.   Well, specifically, it's to Andy and Ben

23   Lee, cc'd to Dan and myself.

24       Q.   And you see the body of the e-mail?

25       A.   I do see the body of the e-mail.

b7bf30da-14ac-467a-9214-80c6d94237a1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 102

1      Q.    You sent this e-mail on August 6, 2010; is

2    that right?

3      A.    I believe that to be true.                    12:17:59

4      Q.    Would you please begin reading at ▁▁▁▁

5    ▁▁▁▁    And read the entire e-mail out loud for the

6    record.

7           MS. ANDERSON:  Objection.  We state all of

8    our objections and preserve our right on appeal.

9    You may read the face of this e-mail.



b7bf30da-14ac-467a-9214-80c6d94237a1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 103



```
10      Q.   Thank you.  So when you wrote,              12:19:28
11
12                                         can you tell
13  me what technical alternatives you looked at?
14          MS. ANDERSON:  Objection.  Instruct the
15  witness not to answer on the grounds of
16  attorney-client privilege or work product to the
17  extent responding to the question requires you to
18  reveal work that you did at the direction of counsel
19  or communications you had with counsel for Google in
20  confidence.
21          THE WITNESS:  So the investigation and the   12:19:58
22  technical alternatives was strictly done on the
23  request of counsel, was done with the understanding
24  of the work product.  So outside of -- outside of
25  those things covered by -- by that situation, there
```

b7bf30da-14ac-467a-9214-80c6d94237a1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 104

1    were no -- there were no investigations.



20   BY MR. NORTON:

21        Q.    What were the specific alternatives that

22   you have investigated for Android?

23        MS. ANDERSON:  Objection, form.  And also

24   objection on the basis of attorney-client,

25   work-product privilege.  To the extent responding to

Veritext National Deposition & Litigation Services
866 299-5127

b7bf30da-14ac-467a-9214-80c6d94237a1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 105

1    this question would require you to reveal

2    communications with Google counsel in confidence or

3    work done under the direction of Google counsel, I

4    instruct you not to answer on the grounds of

5    privilege.                                          12:21:28

6         THE WITNESS:  Once again, the work we --

7    the work we did on this was entirely done under the

8    direction of counsel.  There was no work done

9    outside of that or for any other purpose, so I

10   cannot answer that question either.

11   BY MR. NORTON:

12        Q.   What were the technical alternatives you

13   investigated to Java for Chrome?

14        MS. ANDERSON:  Objection, form.  Also

15   object on the basis attorney-client, work-product

16   privilege.  Instruct the witness not to answer to

17   the extent responding would require you to reveal   12:21:59

18   communications with Google's counsel in confidence

19   or work that you did at the direction of Google.

20        THE WITNESS:  Again, the work that we did

21   relating to Chrome was entirely done under the

22   direction of counsel and was work product.  We -- we

23   did no such work outside of direction of counsel on

24   alternatives to Chrome.

25   BY MR. NORTON:

b7bf30da-14ac-467a-9214-80c6d94237a1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 106

1       Q.    What did you mean by ████████

2    ████████

3           MS. ANDERSON:  Objection.  Caution the

4    witness to the extent responding to this question

5    requires you to reveal attorney-client                    12:22:29

6    communications or work product under the direction

7    of counsel, I instruct you not to answer.

8    ███████████████████████████████████████████

9    ███████████████████████████████████████████

10          MS. ANDERSON:  Objection.  Caution the

11   witness.  You can't respond to the extent it would

12   require you to reveal a communication with Google

13   counsel.  And if you can't answer the question --

14          THE WITNESS:  I can't answer the question

15   in that case.

16          MR. NORTON:  When you wrote, ██████████

17   █████████████████████████████████████████

18   ████████████████████    what were terms you had in

19   mind?

20          MS. ANDERSON:  Objection.  Caution the

21   witness that to the extent responding to this          12:22:58

22   question requires you to reveal conversations with

23   Google counsel, I instructed you not to answer on

24   the grounds of privilege.

25          THE WITNESS:  This was done by -- this was

b7bf30da-14ac-467a-9214-80c6d94237a1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 107

1   done on direction of counsel.  We did do nothing

2   outside of the direction of counsel that led up to

3   that conclusion or any --



b7bf30da-14ac-467a-9214-80c6d94237a1

Highly Confidential - Attorneys' Eyes Only

1    STATE OF CALIFORNIA    ) ss:

2    COUNTY OF MARIN       )

3        I, ASHLEY SOEVYN, CSR No. 12019, do hereby

4    certify:

5        That the foregoing deposition testimony was

6    taken before me at the time and place therein set

7    forth and at which time the witness was administered

8    the oath;

9        That the testimony of the witness and all

10   objections made by counsel at the time of the

11   examination were recorded stenographically by me,

12   and were thereafter transcribed under my direction

13   and supervision, and that the foregoing pages

14   contain a full, true and accurate record of all

15   proceedings and testimony to the best of my skill

16   and ability.

17       I further certify that I am neither counsel for

18   any party to said action, nor am I related to any

19   party to said action, nor am I in any way interested

20   in the outcome thereof.

21       IN THE WITNESS WHEREOF, I have transcribed my

22   name this 8th day of September, 2011.

23

24

                        ASHLEY SOEVYN, CSR 12019

25

                                      Page 111