MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
MARC DAVID PETERS (CA SBN 211725)
MDPeters@mofo.com
DANIEL P. MUINO (CA SBN 209624)
DMuino@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted Pro Hac Vice)
dboies@bsfllp.com
333 Main Street
Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900
Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway
Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

Attorneys for Plaintiff
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC,<br><br>Defendant. | Case No.    CV 10-03561 WHA<br><br>**ORACLE AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF DISPUTED JURY INSTRUCTIONS**<br><br>Date:        Oct. 7, 2011<br>Judge:      Honorable William H. Alsup<br>Trial Date: Oct. 31, 2011 |

# TABLE OF CONTENTS

**Page**

I.     COPYRIGHT – GENERAL OBJECTIONS ....................................................... 1

    A.     The Court Should Determine Copyrightability and Then Instruct the Jury
        On Copyright Protection ...................................................................................... 1

    B.     Use of the "Java-related works" Instead of "asserted works" ............................... 3

II.    COPYRIGHT – OBJECTIONS TO SPECIFIC INSTRUCTIONS ........................... 4

    A.     Disputed Jury Instruction No. 1 re Preliminary Instruction – Copyright .............. 4

        1.     Introductory Paragraph ........................................................................... 4

        2.     Google Improperly Omits "Display" As Exclusive Rights of
            Copyright ................................................................................................ 5

        3.     Oracle's Additions To the "Definition of Copyright" Are Proper,
            Whereas Google's Additions Are Not ...................................................... 5

        4.     The Jury Should Be Informed of Oracle's Registered Copyrights
            and the Presumption of Validity .............................................................. 7

        5.     Google's Inclusion Of Language That Oracle Is Bound By Sun's
            Actions And Conduct Is Improper. .......................................................... 8

        6.     Google's Miscellaneous Modifications are Improper ............................... 9

    B.     Disputed Jury Instruction No. 6 re Copyright – Definition of Copyright ............ 10

        1.     Transforming and Adapting the Copyrighted Work Is a Derivative
            Work ...................................................................................................... 10

        2.     The Jury Should Be Informed That the "Exclusive" Rights to Copy
            Are Not Mutually Exclusive .................................................................. 10

        3.     Virtually Identical Copying Is Not the Proper Infringement
            Standard To Analyze Google's Copying ................................................ 11

        4.     The Copyright Owner Retains Rights to Copied Work ........................... 12

    C.     Disputed Jury Instruction No. 7 re Copyright- Subject Matter Generally ........... 12

        1.     "Computer Programs" Is An Inadequate Description of the Java-
            Related Copyrights ................................................................................ 12

        2.     Copyright May Protect Both Literal and Nonliteral Elements Of
            Computer Programs ............................................................................... 13

    D.     Disputed Jury Instruction No. 8 re Copyright- Subject Matter – Ideas and
        Expression ....................................................................................................... 15

    E.     Disputed Jury Instruction No. 9 re Copyright- Subject Matter – Functional
        Requirements ................................................................................................... 17

    F.     Disputed Jury Instruction No. 10 re Copyright – Elements – Ownership and
        Copying ........................................................................................................... 18

        1.     Oracle is the owner of valid copyrights. ................................................ 18

        2.     Google is Directly Liable for the Resulting Copying by Others .............. 19

3.  Google's Proposed Language Addresses "Protected" Elements In An Imbalanced, Incomplete and Unnecessary Way. .............................. 19

4.  Google's Discussion of Defenses is Incorrect As a Matter of Law and Better Addressed in the Defense Instructions. .................................. 20

G.  Disputed Jury Instruction No. 11 re Copyright – Registration With the Copyright Office. ...................................................................................... 20

H.  Disputed Jury Instruction No. 12 re Copyright Infringement – Originality ......... 21

1.  Google's Proposed Modifications to Model Instruction 17.12................. 21

2.  Google's Proposed Additions Are Improper ........................................... 23

I.  Disputed Jury Instruction No. 13 re Copyright- Subject Matter – Selection, Arrangement of Names ...................................................................................... 24

J.  Disputed Jury Instruction No. 14 re Copyright Interests – Derivative Work ....... 25

K.  Disputed Jury Instruction No. 15 re Copyright – Copying – Access and Substantial Similarity ........................................................................................ 26

1.  Explaining that Copying May be Proved By Circumstantial Evidence. ................................................................................................. 26

2.  The Presumption of Copying ................................................................... 27

3.  The Inverse Ratio of Access and Similarity............................................. 27

4.  Virtual Identity is Not the Standard To Apply To Copying .................... 29

5.  Google's Addition of the Word "Protectable" to Restrict the Description of Elements Is Confusing. ..................................................... 29

L.  Disputed Jury Instruction No. 16 re Copyright Infringement – Copying – Access Defined ................................................................................................. 30

M.  Disputed Jury Instruction No. 17 re Copyright – Substantial Similarity – Extrinsic and Intrinsic Test ............................................................................... 31

N.  Disputed Jury Instruction No. 18 re Copyright Infringement – Copying From Third Party............................................................................................... 32

O.  Disputed Jury Instruction No. 19 re Copyright Liability – Vicarious Infringement – Elements and Burden of Proof .................................................... 33

P.  Disputed Jury Instruction No. 20 re Copyright Liability – Contributory Infringement ...................................................................................................... 34

Q.  Disputed Jury Instruction No. 21 re Copyright Liability – Willful Infringement ...................................................................................................... 34

R.  Disputed Jury Instruction No. 22 re Copyright Defenses – De Minimis ............. 35

S.  Disputed Jury Instruction No. 23 re Copyright Defenses – Merger ..................... 37

T.  Disputed Jury Instruction No. 24 re Copyright Defenses – Scenes a Fair............ 38

U.  Disputed Jury Instruction No. 25 re Copyright Defenses – Affirmative Defense – Fair Use ............................................................................................ 40

1.  Introductory Paragraphs .......................................................................... 40

2.  Google's Alleged Transformative Use..................................................... 41

3.  Other Fair Use Factors ............................................................................ 43

4.    Oracle's Additions Are Proper .................................................. 44

III.    **PATENT – GENERAL OBJECTIONS** .................................................. **45**

    A.    Google's Use of "Offering for Free" ................................ 45

IV.    **PATENT – SPECIFIC OBJECTIONS TO INSTRUCTIONS** .................................... **48**

    A.    Disputed Jury Instruction No. 2 re Patent – Preliminary Instruction – What a Patent Is and How One is Obtained ................................ 48

        1.    "Oracle Patents" is More Informative Than the "Asserted Patents." ........ 48

        2.    Reference to Patent Re-examinations Is Improper .................... 49

    B.    Disputed Jury Instruction No. 4 re Patent –Preliminary Instruction – Summary of Contentions ........................................ 51

        1.    Any Reference to Patent Re-examinations Is Improper ............... 51

    C.    Disputed Jury Instruction No. 26 re Patent – Summary of Contentions ........... 51

    D.    Disputed Jury Instruction No. 27 re Patent – Presumption of Validity ............... 52

    E.    Disputed Jury Instruction No. 32 re Patent – Direct Infringment ...................... 54

        1.    Giving a Away A Product For Free Constitutes "Use" Under § 271(a). ....................................................... 54

    F.    Disputed Jury Instruction No. 33 re Patent – Literal Infringement ..................... 54

    G.    Disputed Jury Instruction No. 34 re Patent – Direct Infringement Under the "Doctrine of Equivalents" ...................................... 54

    H.    Disputed Jury Instructions No. 35 Regarding Patent – Limitations on Direct Infringment Under the "Doctrine of Equivalents" .................. 56

        1.    Prosecution History Estoppel as to the '205 patent. .................. 56

        2.    Google Has Never Before Disclosed A Prosecution History Estoppel Defense to Infringement under the Doctrine of Equivalents. ....................................................... 56

        3.    Prosecution History Estoppel Does Not Limit Application of the Doctrine of Equivalents for the Asserted '205 Patent Claims. ........ 59

    I.    Disputed Jury Instruction No. 36 re Patent – Indirect Infringement – Generally ............................................................. 61

    J.    Disputed Jury Instruction No. 38 re Patent – Induced Infringement ................ 61

    K.    Disputed Jury Instruction No. 37 re Patent – Contributory Infringement ............ 62

        1.    Google's Language Regarding Sale/Offers for Sale Should Not be Included .................................................... 62

        2.    Google's Additional Definition of Direct Infringement is Unnecessary in This Instruction .................................. 63

        3.    Google's Reference to Components Under § 271(f) is Improper. ........... 64

        4.    Oracle's Proposed "Willful Blindness" Language Should be Included .................................................... 66

        5.    All Android mobile devices are the subject of indirect infringement ....... 67

    L.    Disputed Jury Instruction No. 39 re Patent – Willful Blindness .................... 68

    M.    Disputed Jury Instruction No. 40 re Patent – Willful Infringement .................. 69

1   1. Willfulness only requires awareness of the patent portfolio, rather than knowledge of the specific patents. ....................................... 69

2   2. Patent does not have to be valid and enforceable. ................................... 71

3   3. Willfulness belongs in the liability phase of trial..................................... 71

4  N. Disputed Jury Instruction No. 41 re Patent – Burden of Proof ............................ 72

  O. Disputed Jury Instruction No. 43 re Patent – Invalidity – Obviousness ............... 74

5   1. Google's Proposed Instructions Fail to Adequately Instruct the Jury on the Factual Predicates Legally Necessary to Support a Finding of Obviousness. ................................................................................ 74

7   2. Google's Complex Verdict Form on Obviousness is Unduly Burdensome to the Jury........................................................................ 77

8   3. Google's Complex Verdict Form on Obviousness Does Not Properly Account for the Factual Inquiries Underlying an Obviousness Determination. ...................................................... 79

10   4. A Simple Verdict Form Question on Invalidity Is an Appropriate Solution. ................................................................... 81

11  P. Disputed Jury Instruction No. 46- 49 re Equitable Defenses – Equitable Estoppel, Laches, Waiver and Implied License ..................................... 81

12   1. Equitable Issues Are For the Court, Not the Jury .................................... 81

13   2. Equitable Estoppel - Disputed Instruction No. 47 ................................... 82

14   3. Laches - Disputed Instruction No. 46 ..................................................... 84

15    a. The Facts of the Case Do Not Support a Laches Defense ........... 84

16    b. Oracle's Proposed Instruction More Accurately Addresses The Period of Delay and Relevant Justifications. ....................... 84

17   4. Disputed Jury Instruction No. 48 - Waiver .............................................. 86

18    a. The Facts Do Not Support a Waiver Defense.............................. 86

    b. Any Instruction Should Include Only "True Waiver" as "Implied Waiver" Does Not Apply in This Case........................ 86

19

20   5. Disputed Jury Instruction No. 49 - Implied License ................................ 87

    a. The facts in this case do not support finding an implied license.................................................................................... 87

21

22    b. Oracle's Proposed Instruction More Closely Follows the Legal Standard for Implied License ........................................... 88

23 V. **DAMAGES INSTRUCTIONS**................................................................................ 89

  A. Disputed Jury Instruction No. 52 re Copyright – Actual Damages ..................... 89

24  B. Disputed Jury Instruction No. 53 re Copyright – Damages – Hypothetical Negotiation............................................................................................ 91

25

26  C. Disputed Jury Instruction No. 54 re Copyright – Damages – Defendant's Profits ..................................................................................................... 93

27  D. Disputed Jury Instruction No. 55 re Patent – Damages – Burden of Proof ......... 95

28  E. Disputed Jury Instruction No. 56 re Patent – Reasonable Royalty – Definition ................................................................................................ 96

F.     Disputed Jury Instruction No. 57 re Patent – Reasonable Royalty – Relevant Factors ............................................................................................... 99

G.    Disputed Jury Instruction No. 58 re Patent –  Damages – Extraterritorial Acts ........................................................................................................... 100

H.    Disputed Jury Instruction No. 59 re Patent – Damages – Date of Commencement ............................................................................................. 101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to the Court's Guidelines for Trial and Final Pretrial Conference in Civil Jury

Cases, Oracle America, Inc. ("Oracle") submits this Memorandum of Law in support of its

proposed language for the disputed jury instructions.

## I.     COPYRIGHT – GENERAL OBJECTIONS

### A.     The Court Should Determine Copyrightability and Then Instruct the Jury On Copyright Protection

The Court should instruct the jury on the copyrightability of the 37 core API design

specifications and the 12 source code files that Google copied.  Copyrightability is a question of

law for the court.  *See Jonathan Browning, Inc. v. Venetian Casino Resort LLC*, No. C 07-03983

JSW, 2009 U.S. Dist. LEXIS 57525, at *2 (N.D. Cal. June 18, 2009) ("Determinations of

copyrightability are indeed questions of law reserved for the judge, and not the jury.").  The Ninth

Circuit has held that the court should determine both copyright protection and its scope.  *Apple*

*Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443, 1447 (9th Cir. 1994).

However, to the extent there are facts underlying copyrightability these may be for the

jury to decide.  *See* 3-12 *Nimmer on Copyright* § 12.10[B][1] ("to the extent that the defendant

challenges the quantum of plaintiff's originality or creativity as a matter of law, or urges other

such legal challenges to copyright subsistence, these matters should be resolved solely by the

judge.  But threshold factual determinations in this regard, of course, are for the jury.")  In

addition, courts in this Circuit recognize that originality is a question of fact.  *Dongxiao Yue v.*

*Chordiant Software, Inc.,* No. C-08-00019, 2009 U.S. Dist. LEXIS 118824, at *7 (N.D. Cal.

Dec. 21, 2009) ("Whether a work is sufficiently original to warrant copyright protection is a

question of fact.") (citing *Dezendorf v. Twentieth Century-Fox Film Corp.,* 99 F.2d 850, 850 (9th

Cir. 1938).  When there are no genuine issues of fact, originality may be resolved as a matter of

law.  *Jacobsen v. Katzer*, No. C 06-01905 JSW, 2009 U.S. Dist. LEXIS 115204, at *9-10 (N.D.

Cal. Dec. 10, 2009).

In this case, Google purports to raise several factual issues relating to the copyrightability

of the APIs.  Google contends, for example, that its copying of the APIs was required by

"industry demand."  Google's Motion for Summary Judgement (Dkt. 260) at 21.  It also tries to

1    justify its copying on the grounds of compatibility (*id*. at 19), even though it does not deny that

2    Android fragmented Java and is incompatible with it.  Google is also challenging the originality

3    of the 37 API design specifications that it copied.  Oracle does not believe that any of these

4    factual challenges are valid.  But the Court should consider this evidence as it relates to

5    copyrightability and originality over the course of the trial, and determine if there are any issues

6    of fact for the jury to determine.  Oracle believes the Court will conclude, as a matter of law, that

7    the 37 API design specifications are both original and copyrightable.

8         As described above, the API design specifications set forth a very intricate, and creative

9    design, that contains thousands of different elements and defines the many complex relationships

10   among them.  Google cannot raise a serious challenge to the expressive nature of the APIs or their

11   originality.   Copyright law protects expression in software design, including the selection and

12   structure of software elements.  Courts have recognized the copyrightability of programs with

13   much simpler structures than the Java API design specifications herethan Java.  For example, the

14   Tenth Circuit upheld a district court's finding of likelihood of success on copyrightability of  the

15   "organization, structure and sequence" of a computer program designed to teach reading skills,

16   including a "keying procedure" that required students to respond by pressing the 1, 2 or 3 keys.

17   *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1492, 1495 n.23 (10th Cir. 1993).

18   Similarly, in *CMAX/Cleveland, Inc. v. UCR, Inc.,* 804 F. Supp. 337, 355 (M.D. Ga. 1992), the

19   court held that the file structures for a software program design for companies in the "rent to

20   own" business constituted copyrightable expression.  *See also Eng'g Dynamics, Inc. v. Structural

21   Software, Inc.*, 26 F.3d 1335, 1345-46 (5th Cir. 1994) (rejecting argument that input data formats

22   in structural engineering software program did not contain original expression because they were

23   purportedly "organized in a particular fashion to effectuate the performance of mathematical

24   calculations").  Certainly the API design specifications reflect a far more complex structure and

25   organization than the software in these cases.

26        Google's main challenge to the copyrightability of the API design specifications was that

27   they are supposedly unprotectable "methods of operation."  The Court has already has already

28   rejected this argument on summary judgment, concluding that, "This order finds that the API

1   package specifications at issue are not 'methods of operation' under 17 U.S.C. 102(b)."  9/15/11

2   Summary Judgment Order (Dkt. 433) at 10-11.

3         As for the 12 copied source and object code files, Google has never challenged that these

4   files are protected by copyright.  "Source and object code, the literal components of a program,

5   are consistently held protected by a copyright on the program."  *Johnson Controls, Inc. v.*

6   *Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989).

7         Accordingly, at the conclusion of the evidentiary phase of the trial, Oracle will ask the

8   Court to instruct the jury that the 37 core API design specifications and the 12 source code files

9   that Google copied are protected by copyright.  *See Pivot Point Int'l, Inc. v. Charlene Prods.,*

10   *Inc.*, 932 F. Supp. 220, 225 (N.D. Ill. 1996) (Easterbrook, C.J., sitting by designation) (,"[i]f the

11   court determines that mannequin heads are copyrightable subject matter, the jury will be so

12   instructed").  The Court should also instruct the jury on the scope of protection to be afforded to

13   the copyrighted works – in this case, substantial similarity – and the frame of reference for

14   comparing the copyrighted works to the infringing works within which they should be compared.

15         **B.    Use of the "Java-related works" Instead of "asserted works"**

16         The instructions should refer to the asserted copyrighted works in an appropriate and

17   consistent way.  Oracle proposes that the copyrighted works that Google infringed be identified as

18   the "Java-related works."  This lawsuit is indisputably about Java.  At the outset of this case, this

19   Court characterized Oracle's lawsuit against Google as a "**Java**-fueled battle over the Android

20   platform."  ECF No. 42 (emphasis added).  And so it is.  There are many registered works that

21   Google copied from.  The 37 core library API design specifications at issue in this suit were

22   developed over a long period of time, and as they evolved in different versions of the Java

23   platform and were described in different books, were registered by Sun with the Copyright

24   Office.  To identify the asserted works, as Google does, as "Java 2 Standard Edition versions 1.4

25   and 5.0 ('Asserted Works')" and then as "Java 2 Standard Edition versions" is both inaccurate

26   and unhelpful.  The historical, documentary evidence from both sides refer to the copyrighted

27   works as "Java."  For example, Google's Android Developer website states that "Android

28   includes a set of core libraries that provides most of the functionality available in **the core**

1    **libraries of the Java programming language**.”  Trial Ex. 833, Android Developer website,

2    available at http://developer.android.com/guide/basics/what-is-android.html (emphasis added).

3    Google's filings with the Court also refer to the works as "Java":  "The specifications for the

4    thirty-seven Java language API packages at issue were published or made available in various

5    forms, including in books and on the Java website, starting in 1996."  ECF No. 260 at 6, Google

6    Inc.'s Notice of Motion and Motion for Summary Judgment on Count VIII of Plaintiff Oracle

7    America's Amended Complaint (August 1, 2011).  But Google's instructions use the word "Java"

8    only once—and that is when Google repeats the Court's construction of "reduced class file" from

9    the '702 patent.  Google's consistent omission of the word "Java" is unhelpful.  It will prevent

10   jury confusion to tailor the instructions to refer to the asserted works as the "Java-related works,"

11   and thereby match the language in the evidence the jury will hear.

## II.      COPYRIGHT – OBJECTIONS TO SPECIFIC INSTRUCTIONS

### A.      Disputed Jury Instruction No. 1 re Preliminary Instruction – Copyright

14           The parties agree that the Court should give the jury a preliminary instruction on

15   copyright.  The parties also agree that this preliminary instruction should be based on Model

16   Instruction 17.0 Preliminary Instruction — Copyright.  The parties' disputes on this instruction

17   are below.

#### 1.      Introductory Paragraph

19           The competing proposals for the introductory paragraph are not far apart.  Both track the

20   Model Instruction.  The parties dispute how the copyrighted work should be identified and

21   Google's insertion of language on its equitable defenses.

22           Oracle generally identifies the work as the "Java software platform."  Google identifies

23   the work as "Java 2 Standard Edition versions 1.4 and 5.0 ('Asserted Works')."  This is too

24   narrow, as Oracle identified more than these two works as being infringed through discovery.

25   Oracle submits that its identification will better assist the jury in understanding what is at issue in

26   this case.  Google's shorthand of "Asserted Works" to mean "Java 2 Standard Edition versions" is

27   unhelpful in this regard.  It does not adequately frame the copyright dispute.  Indeed, the

28

1   historical, documentary evidence from both sides refer to the copyrighted work as "Java."

2   Accordingly, the jury instructions should be tailored to the evidence the jury will hear.

3       Oracle objects to Google's language flagging all of its equitable defenses, "that its use of

4   the work was justified given Oracle's past statements and actions."  As discussed above and

5   below, equitable defenses are for the Court to decide.  *See supra* Equitable Defenses Are For The

6   Court To Decide *and infra* discussion on disputed instructions for Equitable Estoppel, Laches,

7   Waiver, and Implied License.

8       **2.    Google Improperly Omits "Display" As Exclusive Rights of Copyright**

9       Under the "Definition of Copyright" section, Oracle objects to Google's deletion of

10  "display" as an exclusive right held by the copyright owner.  *See* 17 U.S.C. § 106(5) (stating

11  public display of literary work is an exclusive right in copyrighted works).  Moreover, "display"

12  is in the Model Instruction, which Oracle's proposed instruction closely tracks.  NINTH CIRCUIT

13  MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.0 (2007) ("The owner of a copyright has

14  the right to exclude any other person from reproducing, preparing derivative works, distributing,

15  performing, *displaying*, or using the work covered by copyright for a specific period of time.")

16  (emphasis added).  Oracle submits that Google's omission is material and that the jury would be

17  best advised as to "display," which is at issue in this case.  Google displays infringing copied

18  material on a website it controls.

19      **3.    Oracle's Additions To the "Definition of Copyright" Are Proper,**
20                  **Whereas Google's Additions Are Not**

21      Oracle's two material additions to the "Definition of Copyright" section are proper.  First,

    Oracle adds "computer code, or elements of computer software" to the second sentence of the
22
    model language.  This will help the jury.  It is tailored to the issues in this case, as well as an
23
    accurate statement of the law.  *See Merch. Transaction Sys., Inc. v. Nelcela, Inc.,* No. CV 02-
24
    1954-PHX-MHM, 2009 U.S. Dist. LEXIS 25663, at *29 (D. Ariz. Mar. 17, 2009) ("[Copyright]
25
    protection extends not only to the 'literal' elements of computer software — the source code and
26
    object code — but also to a program's nonliteral elements, including its structure, sequence,
27
    organization, user interface, screen displays and menu structures.").
28

Second, Oracle adds to the last paragraph of the "Definition of Copyright" section:

> The level of originality required to grant copyright protection is minimal, however. In copyright law, the "original element" of a work need not be new or novel. Copyright law will protect an original element of a work as long as it does not utterly lack creativity.

Because originality for copyright protection is a hotly contested issue, this short explanation on originality will assist the jury as it sifts through the evidence the parties will present. Moreover, Oracle's proposed explanation tracks Model Instruction 17.12 on originality and controlling precedent. NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.12 (2007) (stating "the 'original element' of a work need not be new or novel" and second factor for originality requires "at least some minimal creativity."); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359 (1991) (holding that copyright protection is unavailable to "a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent").

In the third paragraph of the "Definition of Copyright" section, Oracle objects to Google's language of "names and functional requirements." This addition is not part of the Model Instruction's list of statutory factors on not copyrightable subject matter. *See* NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.0 (2007); 17 U.S.C. § 102(b). Moreover, the Court has previously stated that, even if something is not subject to copyright, it is not automatically and totally exempt from copyrightability.

Second, Google's blanket message that "functional requirements" are not copyrightable is incorrect. Google invites to jury to conclude that most or all computer programs are not protectable simply because of their utilitarian features. Google's categorical approach is legal error. *See infra* Disputed Jury Instruction No. 9 re Copyright – Subject Matter – Functional Requirements.

Third, whether names are subject to copyright is addressed in its own separate jury instruction. *See infra* Disputed Jury Instruction No. 13 re Copyright – Subject Matter – Selection, Arrangement of Names. The Court has already held that the selection and arrangement of the names in the Java API specifications may be copyrightable, and there is an instruction that

1   describes when that is the case.  *See* ECF No. 433 at 8, Order Partially Granting and Partially

2   Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011).

3   Thus, it is misleading to have a preliminary instruction that simply says "names" are not

4   copyrightable without including this context.  In sum, Google's language of "names and

5   functional requirements" within the third paragraph should be denied.

6         **4.**        **The Jury Should Be Informed of Oracle's Registered Copyrights and the Presumption of Validity**

7

8         Under the "How Copyright is Obtained" section, Oracle objects to Google's deletion of

9   the third sentence of the Model Instruction, which begins with "After examination and a

10  determination that the material deposited constitutes copyrightable subject matter . . . ."  NINTH

11  CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.0 (2007).  This model language

12  will aid the jury in understanding the process for obtaining a copyright registration.  It provides

    helpful background that is neither misleading nor unnecessary.

13        Oracle also objects to Google's language again flagging all of its equitable defenses,

14  "Oracle is bound by Sun's actions, inaction and prior statements."  As discussed above and

15  below, equitable defenses are for the Court to decide.  *See supra* Equitable Defenses Are For The

16  Court To Decide *and infra* discussion on disputed instructions for Equitable Estoppel, Laches,

17  Waiver, and Implied License.

18        Due to the model language on copyright registration, the "How Copyright is Obtained"

19  section is the best place to introduce the jury to Oracle's federal registration of the Java-related

20  copyrights and the presumption of validity that results from such registration.  Inclusion of

21  Oracle's additional paragraph on both points properly frames the parties' respective burdens on

22  the disputed originality issue.  *Bibbero Sys., Inc. v. Colwell Sys. Inc*., 893 F.2d 1104, 1106 (9th

23  Cir. 1990) ("In judicial proceedings, a certificate of copyright registration constitutes *prima facie*

24  evidence of copyrightability and shifts the burden to the defendant to demonstrate why the

25  copyright is not valid."); *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) ("Because *One* has

26  a valid certificate of registration with the copyright office, however, Swirsky is entitled to a

27  presumption of originality.").  The jury will benefit from a preliminary instruction on the

28

presumption of validity and how it operates on Oracle's copyright claims.  This is especially true where the case also involves patents and a presumption of patent validity from that intellectual property regime.

### 5. Google's Inclusion Of Language That Oracle Is Bound By Sun's Actions And Conduct Is Improper.

The parties agree that the Court's instructions should provide a background on how Sun Microsystems, Inc. became Oracle America, Inc. through a merger and acquisition.  The parties also agree that these two companies are the same legal entity.  However, Oracle opposes Google's proposal to add language instructing the jury that Oracle is bound by Sun's actions, inactions, and prior statements to the liability instructions, as this principle is only relevant to the Court's consideration of Google's equitable defenses.

The Court should deny Google's proposed language because it is irrelevant to the issues the jury will be tasked to resolve in this case.  An entity's actions, inactions, and prior statements are most applicable to an affirmative defense of equitable estoppel.  *See e.g., A.C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc) (considering patentee's "specific statements, action, inaction, or silence where there was an obligation to speak" in equitable estoppel inquiry).  Also, an entity's inaction could be applicable to an affirmative defense of laches.  *See id.* (considering "patentee's delay in bringing suit" in laches inquiry).  As discussed, equitable estoppel and laches are equitable defenses "committed to the sound discretion of the trial judge."  *Id.*  Therefore, there is no reason the jury must consider Sun's actions, inactions, and prior statements as part of the case.

Nevertheless, if the court finds that the jury should offer advisory opinions on Google's affirmative defenses of equitable estoppel and laches, Oracle requests that the Court instruct the jury that Oracle is "bound" by Sun's statements and conduct only to the extent Google satisfies the elements of those defenses.  Specifically, Oracle proposes the following language: "Oracle is bound by the prior actions, inactions, and prior statements of Sun only to the extent that Google proves by a preponderance of the evidence the defenses of laches or estoppel."  Without this clarification, the jury is likely to improperly overemphasize the significance of Sun's conduct in

1   determining the factual issues in this case. Oracle would be prejudiced if the Court allowed facts

2   regarding Sun's conduct to influence the jury's determination on these factual issues.

3       Accordingly, the Court should deny Google's proposal to add language regarding how

4   Sun's previous conducts should bind Oracle.

5          **6.**     **Google's Miscellaneous Modifications are Improper**

6       On the "Plaintiff's Burden of Proof" section, Oracle objects to Google's statement that

7   there are "11 code files" at issue. In fact, there are twelve disputed code files. *See* ECF No. 433

8   at 5, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment

9   on Copyright Claim (September 15, 2011).

10       On the "Proof of Copying" section, Oracle objects to Google's additional language on

11   virtually identical copying. *See infra* discussion on Disputed Jury Instruction No. 6 re Copyright

12   — Definition of Copyright, Virtually Identical Copying Is Not the Standard to Analyze Google's

13   Copying. Instead of Google's language, the Court should use Oracle's proposed instruction,

14   which tracks the Model Instruction.

15       On the "Liability for Infringement" section, Oracle objects to Google's repeated insertion

16   of "original, protectable elements." None are included in the same section of the Model

17   Instruction. Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.0 (2007).

18   Moreover, each side's copyright instructions as a whole are adequate to explain what copyright

19   law does and does not protect. There is no need to raise that here. This preliminary instruction is

20   meant to be a general sketch of copyright law.

21       On the "Defenses to Infringement" section, Oracle objects to Google's language saying in

22   absolute terms that "[t]here is no copyright infringement, for example, if Google copied

23   unprotected or unoriginal elements of the copyrighted work." Oracle objects to this blanket

24   proclamation because it is misleading. The jury may mistakenly believe that Google's copying of

25   unprotected elements absolves it from unlawful copying of protected elements. Thus, Google's

26   language should be modified to state there is no copyright infringement "if Google ***only*** copied

27   unprotected or unoriginal elements of the copyrighted work." Oracle also objects to Google's

28   statement that there is no copyright infringement "if Google made a fair use of a copyrighted

work."  This is legally incorrect.  *See Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1521 (9th Cir. 1992) ("Section 107 [on fair use], by contrast, establishes a defense to an otherwise valid claim of copyright infringement.  It provides that particular instances of copying that otherwise would be actionable are lawful, and sets forth the factors to be considered in determining whether the defense applies.").

### B.  Disputed Jury Instruction No. 6 re Copyright – Definition of Copyright

The parties agree that the Court should give the jury an instruction on the definition of a copyright.  The parties also agree that this instruction should be based on Model Instruction 17.1 Copyright — Defined.  The parties' disputes on this instruction are below.

#### 1.  Transforming and Adapting the Copyrighted Work Is a Derivative Work

Model Instruction 17.1 lists specific, exclusive rights that flow from the copyright owner's exclusive right to copy.  Oracle objects to Google's deletion of "transform, adapt the work" from the model language on the exclusive right to prepare derivative works.  Including this phrase will help the jury to understand the abstract concept of "derivative works" based on the copyrighted work.  For this reason, Oracle's instruction (which closely tracks the Model Instruction) is better suited to educating the jury as to their charge.  Moreover, Google keeps the model language of "recasting, transforming or adapting" in its proposed substantive instruction on Copyright Interests — Derivative Work.  Thus, inclusion of "transform, adapt the work" in the general instruction on copyright definition would be consistent with Google's proposed specific instruction on derivative works.

#### 2.  The Jury Should Be Informed That the "Exclusive" Rights to Copy Are Not Mutually Exclusive

Oracle proposed instruction adds two sentences:  "'Copying' or 'infringement' of a copyright refers to one or more of the various activities that violate any of the copyright owner's exclusive rights.  A product can infringe a copyright in more than one way."  The jury should hear this.  Both sentences clarify for the jury the relevant nature of a copyright owner's exclusive rights.  Both points are also legally sound.  *See* NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.4 Comment (2007) ("The Ninth Circuit considers the word

'copying' as 'shorthand' for the various activities that may infringe 'any of the copyright owner's . . . exclusive rights described at 17 U.S.C. § 106.'  *S.O.S., Inc., v. Payday, Inc*., 886 F.2d 1081, 1085 n.3 (9th Cir. 1989).") (ellipses in Comment); H.R. Rep. No. 94-1476, at 21 (1976) ("Rights of Reproduction, Adaptation, and Publication.  The first three clauses of section 106, which cover all rights under a copyright except those of performance and display, extend to every kind of copyrighted work.  The exclusive rights encompassed by these clauses, though closely related, are independent; they can generally be characterized as rights of copying, recording, adaptation, and publishing.  *A single act of infringement may violate all of these rights at once, as where a publisher reproduces, adapts, and sells copies of a person's copyrighted work as part of a publishing venture*.") (emphasis added).

> **3.      Virtually Identical Copying Is Not the Proper Infringement Standard To Analyze Google's Copying**

Oracle objects to Google's material changes on the third to last sentence of the Model Instruction, which reads:  "In general, copyright law protects against [production] [adaptation] [distribution] [performance] [display] of substantially similar copies of the owner's copyrighted work without the owner's permission."  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.1 (2007).

First, Oracle objects to Google's insertion of "virtually identical" copying as an applicable standard for determining whether the latter infringed Oracle's copyrights.  The Court has already held

> Because Google has not proven that a substantial portion of the specifications [are] unprotected, Google's justification for applying the virtual identity standard fails.

*See* ECF No. 433 at 11, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011).  Thus, Google's inclusion of virtually identical copying improperly instructs the jury to consider a higher legal standard than is actually applicable.  Its proposed instruction will confuse and mislead the jury.

As between substantially similar versus virtually identical copying, the Court should determine which legal standard the jury will apply to the different portions of Oracle's

copyrighted works that Google copied and derived from.  This is true based on Google's case law regarding virtual identity from the copyright originality instruction.  *See Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1443 (9th Cir. 1994) ("Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright — that is, decide whether the work is entitled to 'broad' or 'thin' protection."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (in reversing preliminary injunction, holding as matter of law that plaintiff "possesses a thin copyright that protects against only virtually identical copying").

Second, Oracle objects to Google's deletion of "production" and "adaptation" from the third to last sentence of Model Instruction 17.1.  Unlawful production or adaptation of substantially similar copies is important to proving copyright infringement.  Otherwise, substantially similar copying would be unduly restricted, because the jury may incorrectly believe that copyright law only protects against identical reproductions.

### 4.   The Copyright Owner Retains Rights to Copied Work

Oracle objects to Google's deletion of the last sentence from the Model Instruction: "Even though one may acquire a copy of the copyrighted work, the copyright owner retains rights and control of that copy, including uses that may result in additional copies or alterations of the work."  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.1 (2007).  This language is relevant to the case and would help the jury to understand the extent of Oracle's legally authorized right to exclusively control its copyrighted works.

### C.   Disputed Jury Instruction No. 7 re Copyright- Subject Matter Generally

### 1.   "Computer Programs" Is An Inadequate Description of the Java-Related Copyrights

In accordance with Model Instruction 17.2, Oracle proposes to identify the copyrighted works at issue in this case: "the Java software platform, the Java core API package specifications, Java class libraries, and Java source code files."  After describing how these elements constitute literary works or computer programs, Oracle proposes to add language further identifying what it has accused Google of copying: "Specifically, Oracle contends that Google has infringed the

1    Java-related works by copying 37 core library API design specifications and by creating

2    derivative works from those designs by implementing them in Android API specifications and

3    core libraries.  In addition, Oracle accuses Google of copying 12 software code files."  This text

4    provides context to enable the jury to apply the court's instructions to the specific copying claims

5    at issue.

6           Google's proposal, which mentions only "computer programs," implicitly excludes the

7    API specifications Oracle alleges that Google copied.  The 37 core library API design

8    specifications are not "programs."  Google's proposal thus unfairly limits Oracle's claims.

9           Relatedly, Oracle also proposes to explain that the Java-related works at issue are literary

10   works and computer programs, largely following the language of Model Instruction 17.2.

11   Describing literary works and computer programs will allow jurors to see how software and

12   documentation fit with other familiar types of copyrighted products.  Oracle proposes adding

13   "disks or compilations of data, and computer databases" to the list of items in Model Instruction

14   17.2.  The Comment to this instruction includes Oracle's proposed additions:

15              [T]he term 'literary works' "does not connote any criterion of
                literary merit or qualitative value: it includes catalogs, directories
16              and similar factual, reference, or instructional works and
                *compilations of data*. It also includes *computer data bases*, and
17              computer programs to the extent that they incorporate authorship
                in the programmer's expression of original ideas, as distinguished
18              from the ideas themselves."

19   (quoting H.R. Rep. No. 94-1476, at 54 (1976)) (emphasis added).  Including the examples of

20   "compilations of data and computer databases" will illustrate that copyright may protect

21   computer-related products analogous to Oracle's API specifications.  The fact that the drafters

22   included these examples in the Model Instructions indicates that the scope of "literary works"

23   may not be obvious without explanation.

24                  **2.      Copyright May Protect Both Literal and Nonliteral Elements Of
                             Computer Programs**
25

26          The parties dispute how to describe the applicable level of copyright protection.  Google

27   lists numerous categories of things not protected by copyright: "any idea, procedure, process,

28

1   system, method of operation, concept, name, or functional requirement."  But Google departs

2   from Model Instruction 17.2 by avoiding any mention that literary works or computer programs,

3   let alone the specific works in this case, can be protected by copyright law.  Without some

4   instruction to the contrary, a jury might mistakenly believe that copyright does not protect

5   software.

6        Oracle's proposed instruction that "[c]omputer programs are expressly subject to

7   copyright protection by law" is a well-settled principle.  *See, e.g*, *Sega Enters. Ltd. v. Accolade,*

8   *Inc.*, 977 F.2d 1510, 1519 (9th Cir. 1992) ("the 1980 amendments to the Copyright Act

9   unambiguously extended copyright protection to computer programs.") (citing  Pub.L. 96-517,

10   sec. 10, 94 Stat. 3028 (1980) (codified at 17 U.S.C. §§ 101, 117)).  Oracle's proposed addition to

11   the Model clarifies further: "Copyright protection also extends to the source code, object code,

12   and other elements of computer software, such as structure, sequence, organization, user

13   interface, screen displays, and menu structures."  *See Merch. Transaction Sys., Inc. v. Nelcela,*

14   *Inc.* No. CV 02-1954-PHX-MHM, 2009 U.S. Dist. LEXIS 25663, at *29 (D. Ariz. Mar. 17, 2009)

15   ("[Copyright] protection extends not only to the 'literal' elements of computer software – the

16   source code and object code – but also to a program's nonliteral elements, including its structure,

17   sequence, organization, user interface, screen displays and menu structures.") (quoting *Gen.*

18   *Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004)).  Because much of this case

19   concerns nonliteral elements, and the scope of protection for such elements may not be obvious to

20   jurors, Oracle requests that that Court include its proposed language in the jury instruction.

21        The other language Google seeks to add limiting copyright protection for software is

22   either redundant or misleading.  Google's paragraph that begins "copyright protection only

23   extends to elements of computer programs that incorporate material that is original and creative"

24   is redundant with Disputed Jury Instruction No. 12 concerning originality.  Discussing originality

25   in multiple instructions risks inconsistency and juror confusion.

26        Google's proposed language that copyright does not extend to any "name, or functional

27   requirement" inaccurately states the law, as does Google's language regarding "[w]ords and short

28   phrases such as names, titles, and slogans, including the names of the Java language API files,

packages, classes, and methods."  Even if individual names are uncopyrightable, this Court has

"not foreclose[d] the possibility that the selection or arrangement of those names is subject to

copyright protection."  ECF No. 433 at 8, Order Partially Granting and Partially Denying

Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011).

Disputed Jury Instruction No. 13 also addresses the selection and arrangement names and thus

renders discussion here redundant.  Finally, discussing functional requirements, without

distinguishing between the requirements in the abstract and a work expressing the requirements,

invites further confusion.

**D.     Disputed Jury Instruction No. 8 re Copyright- Subject Matter – Ideas and Expression**

There are four issues in dispute.  First, Oracle objects to the final sentence of Google's

first paragraph: "In order to protect any ideas in the work from being copied, the author must

secure some other form of legal protection, *such as a patent*, because ideas cannot be

copyrighted."  (emphasis added).  This sentence is optional in Model Instruction 17.3, but the text

"such as a patent" is not present in the Model.  Mentioning patents in this instruction, without

further discussion, may confuse the jury into thinking that patent protection is somehow superior

to copyright protection.  Copyright is not a second-class intellectual property right.  Patents and

copyrights simply protect different subject matter.  Having separate instructions on patents and

copyrights will help prevent the jury from inappropriately importing concepts from one body of

law into the other.

Second, Oracle proposes to add text to the first paragraph to distinguish between an

unprotectable idea and a written work that expresses or describes that idea.  Oracle's proposed

language is consistent with this Court's summary judgment order and with Ninth Circuit law.  *See*

ECF No. 433 at 11 ("Even if Google could show that APIs are methods of operation, that would

not mean that a written work that describes or embodies APIs is automatically exempt from

copyright protection."); *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173,

1175 (9th Cir. 1989) ("Whether a particular component of a program is protected by a copyright

depends on whether it qualifies as an 'expression' of an idea, rather than the idea itself.").  Oracle

1    submits that its proposed language will help to explain a distinction that may not be obvious,

2    given that all software contains "methods" and "processes."

3        Next, Oracle objects to Google's paragraph defining "method of operation."  The Ninth

4    Circuit has not adopted the analytical approach of the case from which Google obtained its

5    definition.  "We think that 'method of operation,' as that term is used in § 102(b), refers to the

6    means by which a person operates something, whether it be a car, a food processor, or a

7    computer."  *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807 (1st Cir. 1995) , *aff'd by an*

8    *evenly divided court*, 516 U.S. 233 (1996).  The *Lotus* court's definition of a method of operation

9    is confusingly close to the definition of a computer program under the Copyright Act, which "is a

10   set of statements or instructions to be used directly or indirectly in a computer in order to bring

11   about a certain result."  17 U.S.C. § 101.  Adopting Google's language—particularly without

12   expressly acknowledging that copyright law protects the literal and nonliteral elements of

13   computer programs—may lead the jury to infer incorrectly that copyright does not generally

14   protect software at all.  Moreover, Google's statement that "a method of operation is not

15   protectable" is redundant.  The parties have agreed to text in the opening paragraph of this

16   instruction indicating that copyright does not protect methods of operation.

17       Finally, both sides' proposals acknowledge that the 37 API design specifications at issue

18   are not methods of operation.  *See* ECF No. 433 at 11.  Oracle follows this idea with: "therefore

19   this is not a basis for finding that these API design specifications are not copyrightable."  The jury

20   can put Oracle's explanation to immediate use.  Google's proposal, by contrast, states: "By 'API

21   package specifications,' I refer to the written documentation for the APIs that describe the APIs.

22   I have not decided whether the APIs are methods of operation."  Google's proposed language will

23   confuse the jury for at least two reasons.  First, it is unclear what the jury should do with this

24   information.  If the question of whether APIs are methods of operation is undecided, then the jury

25   cannot tell whether they are copyrightable.  More fundamentally, Google's language defines "API

26   package specifications" in terms of APIs, but it does not define what an API is.  Oracle submits

27   that to avoid confusion, this portion of the instruction should focus on API *specifications*, and

28   nothing else.

**E.     Disputed Jury Instruction No. 9 re Copyright- Subject Matter – Functional Requirements**

Oracle objects to Google's proposed instruction on functional requirements because it inaccurately states the law, is made redundant by other instructions.  The thrust of Google's proposed instruction is that computer programs are inherently less worthy of copyright protection than other works, but the case Google cites for its instruction does not support its argument.  Google omits key context from *Sega v. Accolade*:

> Computer programs pose unique problems for the application of the "idea/expression distinction" that determines the extent of copyright protection. *To the extent that there are many possible ways of accomplishing a given task or fulfilling a particular market demand, the programmer's choice of program structure and design may be highly creative and idiosyncratic.* However, computer programs are, in essence, utilitarian articles-articles that accomplish tasks. As such, they contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility requirements and industry demands.

*Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) (emphasis added).

Google's instruction is also inconsistent with the copyright statute, which explicitly covers a "computer program." 17 U.S.C. § 101.  "[T]he 1980 amendments to the Copyright Act unambiguously extended copyright protection to computer programs." *Sega*, 977 F.2d at 1519 (citing Pub.L. 96-517, sec. 10, 94 Stat. 3028 (1980) (codified at 17 U.S.C. §§ 101, 117)).

Google invites the jury to conclude that most or all programs are, "in essence," not protectable, even though the number of "possible ways of accomplishing a given task" varies widely between programs.  Google's categorical approach is legally erroneous.  "The copyright status of the written rules for a game or a system for the operation of a machine is unaffected by the fact that those rules direct the actions of those who play the game or carry out the process.  Nor has copyright been denied to works simply because of their utilitarian aspects." *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 524 (9th Cir. 1984) (quoting Final Report of the National Commission on New Technological Uses of Copyright Works (CONTU) at 21).  This Court's summary judgment ruling outlined a proper approach for Google and the jury.  "If Google believes, for example, that a particular method declaration is a *scene a faire* or is the only

possible way to express a given function, then Google should provide evidence and argument supporting its views as to that method declaration."  ECF No. 433 at 9, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011).

The proposed instruction is also redundant.  The parties have submitted disputed instructions on ideas and expression that include at least seven separate categories of items that copyright does not protect.  *See* Disputed Jury Instruction No. 8 ("Copyright law does not give the copyright owner the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries.").  Google has submitted *additional* proposed instructions on merger and *scenes a faire*.  *Compare* Google Proposed Jury Instruction No. 9 ("Copyright also does not protect any expressive elements of the work that must necessarily be used in order to express the functional concepts") *with* Google Proposed Jury Instruction No. 23 ("A defendant may copy a copyrighted work if there is only one way or only a few ways of expressing the ideas or other unprotected matter in a work.")  Because further discussion here would not aid the jury's understanding but would unfairly prejudice Oracle, the Court should reject Google's attempt to categorically limit copyright protection for programs with no regard to their content.

**F.    Disputed Jury Instruction No. 10 re Copyright – Elements – Ownership and Copying**

**1.    Oracle is the owner of valid copyrights.**

This instruction lays out the two-element test of proving copyright infringement. Oracle contends that first element of this test – that "Oracle is the owner of a valid copyright" – will have been satisfied and that the Court should so instruct the jury.  First, Oracle's ownership of the copyrights is undisputed.  The parties have stipulated that Sun registered with the U.S. Copyright Office Java 2 Standard Edition Versions 1.4 and 5.0.  Oracle will submit registration certificates for all major revisions of the Java-related works.  The validity of the registrations is a matter for the Court, to which Oracle is entitled a presumption.  *See* 17 U.S.C. 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication

1   of the work shall constitute prima facie evidence of the validity of the copyright and of the facts

2   stated in the certificate.").   Thus, there is no real dispute that Sun—now Oracle America—owns a

3   valid copyright in these works.   To aid the jury in its charge, Oracle contends that the Court

4   should instruct the jury that the first prong has been satisfied – that Oracle owns valid copyrights

5   in the works at issue – and that the jury's duty is to determine the second prong: whether Google

6   copied original elements from the copyrighted work..

### 2.   Google is Directly Liable for the Resulting Copying by Others.

8   Next, Oracle proposes to add a sentence to instruct that Google may directly infringe even

9   though many Android devices are manufactured—and many downstream acts of copying occur—

10  overseas: "If Google infringed Oracle's copyright in the United States, Google is also liable to the

11  extent it earned profits because its infringement resulted in further copying by others – regardless

12  of where that further copying occurred."   This sentence is adapted from the holding of *L.A. News

13  Serv. v. Reuters Tel. Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998) ("A plaintiff's right to damages

14  is limited to those suffered during the statutory period for bringing claims, regardless of where

15  they may have been incurred.   We therefore hold that LANS is entitled to recover damages

16  flowing from exploitation abroad of the domestic acts of infringement committed by

17  defendants.")   Because U.S. law generally governs conduct only within the United States, it

18  would not be obvious to a jury that Google can be legally and directly responsible for others'

19  overseas copying.   Oracle's proposed language thus prevents juror confusion.   This sentence is

20  important because it clarifies that an infringer can be *directly* liable for the resulting copying by

21  others, apart from proving indirect infringement. This concept is not automatically obvious to a

22  layperson, it is good law, and it is directly relevant to the facts of this case. The jury should be

23  informed of this aspect of direct infringement.

### 3.   Google's Proposed Language Addresses "Protected" Elements In An Imbalanced, Incomplete and Unnecessary Way.

26  The third point of dispute is that Google seeks to require the copying of "protected" or

27  "protectable" elements to find infringement.   Google's proposal departs from Model Instruction

28  17.4 and provides an imbalanced treatment of "protected" and "unprotected" elements.   Whether

copyright law protects specific elements of a work is better addressed in separate instructions on the relevant limiting doctrines.  The parties' instructions on ideas and expression, merger, and *scenes a faire* provide helpful context.  Instructing the jury that they must only look at "protected" or "protectable" elements, without any instruction on what is protected, is likely to cause confusion.  The jury may even question the significance of using "protected" and "protectable" instead of a single term.  This language should not be included.

> **4.     Google's Discussion of Defenses is Incorrect As a Matter of Law and Better Addressed in the Defense Instructions.**

Finally, Oracle objects to the fact that Google conditions infringement on finding that Google's defenses do not apply: "If you find that Oracle has proved both of these elements, your verdict should be for Oracle, *unless you determine that one or more of Google's asserted defenses applies*."  This language appears in neither Model Instruction 17.4 nor in 17 U.S.C. § 501(a)-(b). It is also misleading.  Some of Google's defenses, if proven true, may negate infringement, while others would merely limit available remedies.  Because Google's proposed language fails to capture this nuance, Oracle submits that Google's asserted defenses are better discussed in other instructions.

> **G.     Disputed Jury Instruction No. 11 re Copyright – Registration With the Copyright Office.**

The Model Instructions do not contain a proposed instruction regarding the presumption of validity for a registered copyright. Because, however, Oracle's copyright claims concern registered copyrights, the jury would benefit from this instruction clarifying the nature of registered copyrights and the presumptions and burdens that arise from it.

The first paragraph of Oracle's proposed instruction is taken verbatim from the Model Instructions.  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.0 (2007). These instructions clearly explain the procedure for registering a copyright and should therefore be adopted.  Google's argument that this instruction is misleading is unfounded.  Computer programs are copyrightable subject matter and while Google may present arguments as to the validity of Oracle's copyrights, there is no question that they cover copyrightable subject matter. *See generally*, 17 U.S.C. §§ 101, 117.

Registered copyrights enjoy a presumption of validity.  *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) ("Because [the work] has a valid certificate of registration with the copyright office… [plaintiff] is entitled to a presumption of originality.")  This presumption of validity shifts the burden to the defendant to demonstrate that the copyright is not valid.  *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990) ("In judicial proceedings, a certificate of copyright registration constitutes *prima facie* evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid.").  This presumption applies to registered copyrights covering software, shifting the burden onto the defendant to overcome the presumption of validity.  *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984) ("Under the Copyright Act, Apple's certificates of copyright registration constitute *prima facie* evidence of the validity of Apple's copyrights, 17 U.S.C. § 410(c), and Formula has the burden of overcoming the presumption of validity.").

Because Oracle's copyrights have been registered, they benefit from a presumption of validity.  *See Swirsky*, 376 F.3d at 851.  This *prima facie* evidence of the validity of Oracle's copyrights shifts the burden to Google demonstrate that Oracle's copyrights are not valid.  *See Bibbero*, 893 F.2d at 1106; *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 523 (9th Cir. 1984).  Oracle's proposed jury instructions accurately reflect the law and will assist the jury in determining what weight to give to registered copyrights and where the evidentiary burden lies.

**H.      Disputed Jury Instruction No. 12 re Copyright Infringement – Originality**

Both parties based this disputed instruction on Model Instruction 17.12 Copyright Infringement — Originality.  While the parties agree on the two numbered elements in the Model Instruction, Oracle objects to Google's proposed changes to other parts of that instruction.  Its edits improperly deviate from the Model Instruction.

**1.      Google's Proposed Modifications to Model Instruction 17.12**

On the opening sentence, Google's desired language is, "An original work may include or incorporate elements taken from prior works."  Oracle's proposed language, which tracks the Model Instruction, is, "An original work may include or incorporate elements taken from prior works, works from the public domain, or works owned by others, with the owner's permission."

1   NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.12 (2007).  Oracle

2   submits the jury would benefit from hearing more examples of preexisting works.  They are

3   relevant to the facts and issues for trial.

4       Google's other modifications to Model Instruction 17.12 misstate the law by requiring the

5   original parts of Oracle's work to be new.  Google (1) inserts "new" into the second sentence of

6   the Model Instruction, and (2) strikes "new" from that instruction's last sentence:  "In copyright

7   law, the 'original element' of a work need not be new or novel."  NINTH CIRCUIT MANUAL OF

8   MODEL JURY INSTRUCTIONS – CIVIL No. 17.12 (2007).  These changes improperly raise the legal

9   standard for originality and, thus, copyright protection.  Google's blatant attempt to impose a non-

10  existent "new" requirement cannot stand.  "Original, as the term is used in copyright, ***means only***

11  that the work was independently created by the author (as opposed to copied from other works),

12  and that it possesses at least some minimal degree of creativity."  *Feist*, 499 U.S. at 345

13  (emphasis added) ("Originality does not signify novelty.").  None of Google's case law supports

14  its position.  Moreover, Model Instruction 17.12 (which Oracle's proposed instruction tracks)

15  flatly contradicts Google's "new" requirement.  Because the jury will also decide patent claims, it

16  should be instructed that copyright originality need not be new.  Otherwise, there is a strong

17  possibility of jury confusion, as patentable inventions must be new or novel.  Google's proposed

18  edits are misleading and should be denied.

19      Oracle's proposed additions to the Model Instruction will aid the jury in understanding the

20  legal concept of originality in general, originality vis-à-vis works of selection and arrangement,

21  and the relevant triable issues it must decide.  By saying "Copyright law will protect an original

22  element of a work as long as it does not utterly lack creativity," Oracle's proposed sentence

23  further explains the definition of originality.  This proposal is taken from controlling Supreme

24  Court precedent.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 359 (1991)

25  (stating that "[t]he sine qua non of copyright is originality," and holding that copyright protection

26  is unavailable to "a narrow category of works in which the creative spark is utterly lacking or so

27  trivial as to be virtually nonexistent").

28

1    Similarly, the jury will benefit from Oracle's proposed paragraph on the requisite

2    originality for works of selection and arrangement that use unprotectable names.  This paragraph

3    properly and fairly explains how the abstract concept of originality applies to the type of works at

4    issue.  *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("*Apple*

5    *Computer* and its progeny do, however, require that the unprotected elements be identified to the

6    jury."); ECF No. 433 at 8, Order Partially Granting and Partially Denying Defendant's Motion for

7    Summary Judgment on Copyright Claim (September 15, 2011) ("the selection and arrangement of

8    those names is subject to copyright protection"); *Dream Games*, 561 F.3d at 988 ("a claim of

9    copyright infringement can be based on infringement of a combination of unprotected elements")

10   (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) and *Three*

11   *Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2009)).  Oracle's remaining additions

12   regarding the Java API specifications will help the jury to understand how the originality

13   instruction actually fits with the specific triable issues it must decide.

### 2.    Google's Proposed Additions Are Improper

15   Google's proposed instruction on originality adds two new paragraphs to Model

16   Instruction 17.12.  Neither is warranted.

17   Google's paragraph on "sweat of the brow" is unnecessary and will only serve to confuse

18   the jury.  This lawsuit is not about Oracle's industriousness.  Indeed, Google's additional

19   paragraph is not tethered to any facts, arguments, or issues in this case.  As such, Google's "sweat

20   of the brow" paragraph is irrelevant to the issues for trial and will needlessly add to the number

21   jury instructions.  But, if the Court decides to instruct the jury on the "sweat of the brow," Oracle

22   offers its short one sentence as an alternative to Google's proposed paragraph:  "Copyright

23   protection rests on the originality of the selection and arrangement of names in the Java API

24   specifications, rather than on the industriousness of the efforts to develop the information."  *Feist*,

25   499 U.S. at 360 (quoting *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1369-70 (5th Cir.

26   1981)).

27   Likewise, Google's final paragraph on "thin" copyright protection and virtually identical

28   copying is unnecessary.  The level of copyright protection is a question of law for the Court to

decide.  Google's own case law holds this.  *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright — that is, decide whether the work is entitled to 'broad' or 'thin' protection."); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (in reversing preliminary injunction, holding as matter of law that plaintiff "possesses a thin copyright that protects against only virtually identical copying").  But, if Google's final paragraph must be a jury instruction at all, it should go elsewhere.  The jury instruction at issue is devoted to originality for copyright protection.  Google's final paragraph concerns the totally different issue of the level of copyright protection and illicit copying needed to show infringement.  The Court should deny Google's proposed paragraph.

## I.  Disputed Jury Instruction No. 13 re Copyright- Subject Matter – Selection, Arrangement of Names

The parties appear to agree that copyright protects an original selection and arrangement of elements.  The main dispute is over the requisite level of originality.  Oracle objects to Google's proposed instruction because it misleadingly omits language from *Feist* that emphasizes the minimal measure of creativity a compilation needs to qualify for copyright protection.

Google proposes that protection requires a "creative spark."  Google omits the context for this quotation: "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  Google suggests that copyright does not protect "mechanical" or "routine selections of elements."  Again, Google omits context:

> The question that remains is whether Rural selected, coordinated, or arranged these uncopyrightable facts in an original way. As mentioned, originality is not a stringent standard; *it does not require that facts be presented in an innovative or surprising way.* It is equally true, however, that *the selection and arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever.* The standard of originality is low, but it does exist.

*Id.* at 362 (emphasis added).  Google also fails to point out that the Supreme Court's example of a "garden-variety" work was an alphabetically-arranged telephone directory.  "The end product is a

1  garden-variety white pages directory, devoid of even the slightest trace of creativity."  *Id.*  If

2  Google wants to argue to the jury that the selection and arrangement of names within the Java

3  API specifications are not original, the jury needs the correct legal standard.  Google's proposed

4  instruction does not provide it.  Oracle's proposal, by including appropriate context, does.

5          Oracle's proposed instruction, moreover, clarifies that copyright may protect a

6  combination of elements even though the elements are not independently copyrightable.  "[A]

7  combination of unprotectable elements is eligible for copyright protection only if those elements

8  are numerous enough and their selection and arrangement original enough that their combination

9  constitutes an original work of authorship."  *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345

10  F.3d 1140, 1147 (9th Cir. 2003).  Oracle's proposed language merely omits the word "only" from

11  the above quotation.  Google's proposed language—"[t]he selection and arrangement of these

12  elements may be protected under copyright law, if *they* reflect a creative spark"—may mislead

13  the jury into believing that all elements must be independently copyrightable to obtain a

14  compilation copyright.

15          Consistent with the Court's copyright summary judgment order, *see* ECF No. 433 at 8,

16  Oracle's proposed instruction, unlike Google's, applies the above rule to "the selection and

17  arrangement of the names that are used in the 37 API design specifications at issue."  Rather than

18  simply presenting the jury with a rule of law, Oracle's language informs the jury of the context in

19  which they will apply it.  Oracle's proposal also prevents confusion that might otherwise ensue

20  from separately instructing the jury that names themselves are not protected.  Oracle submits that

21  additional context is essential to prevent the jury from applying an incorrect legal standard.

22          **J.      Disputed Jury Instruction No. 14 re Copyright Interests – Derivative Work**

23          The Model Instruction on Derivative Work is aimed at defining what a derivative work is.

24  Google proposes to insert an extra sentence about unprotected elements to the Model language:

25  "The recasting, transforming or adapting unprotected elements of a copyrighted work is not a

26  derivative work."  Google's proposed language is not present in 17 U.S.C. § 101, nor is it present

27  in the case Google cites in support of its instruction, nor is it present in Model Instruction 17.13.

28  Oracle believes that there is good reason not to include it.

Google's proposed language shifts the focus of this instruction from defining what a derivative work is—creating a new work based on preexisting works—to an instruction about original elements and which elements of a work are protected.  Oracle opposes this addition because mixing an instruction on unprotected elements with an instruction defining derivative works will confuse the jury.  For example, Oracle might rely on the principle that "a claim of copyright infringement can be based on infringement of a combination of unprotected elements." *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009).  A jury deciding whether Google created a derivative work would have great difficulty reconciling this principle with Google's proposed language.  The jury would not know which elements need to be transformed or adapted to constitute a derivative.  Oracle submits that addressing unprotected elements separately will clarify the meaning of "derivative work."

Moreover, multiple other instructions already address elements not protected by copyright.  *See, e.g.*, Disputed Jury Instructions Nos. 12-13 regarding originality; Disputed Instruction No. 23 regarding merger; Disputed Instruction No. 24 regarding *scenes a faire*. Mentioning "unprotected elements" without the context that these other instructions provide will only hinder the jury's analysis.

**K.**  **Disputed Jury Instruction No. 15 re Copyright – Copying – Access and Substantial Similarity**

**1.**  **Explaining that Copying May be Proved By Circumstantial Evidence.**

After an introductory sentence from the Model, Oracle's proposed instruction begins with an explanation of what access and similarity have to do with the burden of proving copying. "Because, in most cases, direct evidence of copying is not available, a plaintiff may establish copying by showing that the infringer had access to the work and that the two works are substantially similar."  *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990) (citing *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. Cal. 1989)).  Without this simple explanation preceding the two elements of proving copying by circumstantial evidence (access and similarity), it is possible that the jury may feel obligated to find that a lack of direct evidence of copying would prohibit a finding of copying.  Oracle's addition to the Model language is a correct statement of the law and

is directly relevant to the jury's charge of determining whether copying has been sufficiently

proven.  It should be included.

### 2.	The Presumption of Copying

Next, Oracle contends that the jury should be instructed that the burden of proving

independent creation shifts to the defendant if both elements of copying are met. Google opposes

Oracle's addition of language from the Model's Supplemental Instruction. Oracle has adopted it

in order to clarify the jury's charge. The Model's Supplemental Instruction to 17.15 states:

> If a plaintiff shows the defendant had access to the plaintiff's work
> and that there is a substantial similarity between the infringed and
> infringing works, a presumption of copying arises shifting the
> burden to the defendant to rebut or to show that the alleged
> infringing work was independently created.

NINTH CIRCUIT MODEL JURY INSTRS. NO. 17.15 SUPPLEMENTAL INSTR. (citing *Three Boys Music*

*Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000).  The Supplemental Instruction quotes the

Ninth Circuit's holding in *Three Boys Music*, and it is this quote that Oracle uses in its proposed

instruction:

> By establishing reasonable access and substantial similarity, a
> copyright plaintiff creates a presumption of copying.  The burden
> shifts to the defendant to rebut that presumption through proof of
> independent creation.

This language is important because it explains to the jury how a presumption works, by shifting

the burden to the defendant to prove independent creation. The concept of independent creation is

not addressed elsewhere in these instructions, so it is valuable to note it here.

### 3.	The Inverse Ratio of Access and Similarity.

Oracle contends that the jury would benefit from an instruction on how they are to balance

their findings on access and substantial similarity in order to determine if there was copying.  In

the final two paragraphs of the instruction, Oracle includes language from the Supplemental

Instruction to Model Instruction No. 17.15 that explains that "in the Ninth Circuit, the access and

substantial similarity elements of infringement are 'inextricably linked' by an inverse ratio rule."

NINTH CIRCUIT MODEL JURY INSTRUCTIONS. NO. 17.15 SUPPLEMENTAL INSTRUCTION (2007)

(citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000)).  Oracle adopts

1  verbatim the Model Instruction's description of the holding in *Swirsky v. Carey*, 376 F.3d 841,

2  844-45 (9th Cir. 2004) that "where the defendant has a high degree of access to the copyrighted

3  work, a lower standard of proof of substantial similarity is required."  NINTH CIRCUIT MANUAL OF

4  MODEL JURY INSTRUCTIONS – CIVIL, No  17.15 Comment (2007) (discussing Ninth Circuit's

5  "inverse ratio rule" and explaining the holding in *Swirsky v. Carey*, 376 F.3d 841, 844-45 (9th

6  Cir. 2004); s*ee also Rice v. Fox Broadcasting Co.*, 330, F.3d 1170, 1178 (9th Cir. 2003) (under

7  the "inverse ratio rule," the court requires a lower standard of proof of substantial similarity when

8  a high degree of access is shown and "a prominent factor" in using inverse ratio analysis is a

9  "concession of access by the defendant to the plaintiff's copyrighted work").  Without this

10  explanation, the jury would not otherwise know that the law "requires a lesser showing of

11  substantial similarity if there is a strong showing of access."  *Three Boys Music Corp,* 212 F.3d at

12  486.

13       Similarly, Oracle explains that "where there is a striking similarity between the two

14  works, you may infer that the defendant had access to the copyrighted works."  *Three Boys Music*

15  *Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (in the absence of any proof of access, "a

16  copyright plaintiff can still make out a case of infringement by showing that the songs were

17  'strikingly similar'").  *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.) (access may be inferred

18  from "striking similarity"), *cert. denied*, 484 U.S. 954 (1987); *see also Herbert Rosenthal Jewelry*

19  *Corp. v. Kalpakian*, 446 F.2d 738, 741 (9th Cir. 1971) ("It is true that defendants had access to

20  plaintiff's [copyrighted] pin and that there is an obvious similarity between plaintiff's pin and

21  those of defendants. These two facts constitute strong circumstantial evidence of copying. But

22  they are not conclusive, and there was substantial evidence to support the trial court's finding that

23  defendant's pin was in fact an independent creation.") (citations omitted).  These points are

24  directly relevant to the facts of the case because the jury will be presented with evidence of

25  access, as Google disputes it.

26       Lastly, Google opposes Oracle's sentence, quoted directly from the Model's Supplemental

27  Instruction that defines "striking similarity" for the jury – a concept introduced in the preceding

28  sentence.  *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir. 1984) (cited by NINTH CIRCUIT MANUAL OF

MODEL JURY INSTRUCTIONS – CIVIL No. 17.15 Comment (2007) for the assertion that "[a] striking similarity is one sufficiently unique or complex as to make it unlikely that it was independently created.").

### 4.    Virtual Identity is Not the Standard To Apply To Copying

It is not appropriate to include in this instruction that the standard of comparison is the "virtual identity" standard of comparison. Google adds a paragraph instructing the jury to apply the "virtually identical" standard of copying when comparing the two works. Oracle objects to this language on several grounds. First, this is not the place for explaining the similarity standards, as there is a dedicated instruction to that (Instruction No. 17 re Copyright – Substantial Similarity – Objective and Subjective Tests). Second, the issue of which legal standard to apply to the comparison of the works is a question of law, to be determined by the Court, not the jury (see argument *supra* re Instr. No. 6 re Copyright – Definition of Copyright). Third, if the Court determines that it will allow the jury to determine which standard to apply, then this instruction should give equal attention to both standards – the substantial similarity standard and the virtual identity standard – which Google's proposed language does not do.

### 5.    Google's Addition of the Word "Protectable" to Restrict the Description of Elements Is Confusing.

The final dispute in this instruction is a recurring one in which Oracle objects to Google's addition of the word "protectable" to restrict the description of elements that are alleged to have been copied. Additionally, Oracle objects to Google's addition of the word "protectable" to the Model language. As discussed above, Google contends that the addition of the word "protectable" to the Model's phrase, so that it reads "original *protectable* elements," will confuse jurors because this instruction does not explain what the word "protectable" or the concept of "protectability" means. Indeed, neither do the other instructions. Instead, the Model has taken the approach of addressing the notion of copyright "protectability" in the originality instruction. Hence, the Model language consistently and deliberately uses the word "original," instead, to qualify elements of copyrighted works that are alleged to have been infringed. By inserting the word "protected" to every such reference, Google effectively creates an additional requirement

1   for the jurors to consider, without giving them the proper tools to determine if it has been

2   satisfied.  Oracle contends that adding the word "protected" to this instruction (as well as

3   peppering it throughout the entire set of copyright instructions) will likely confuse the jury.

4       **L.   Disputed Jury Instruction No. 16 re Copyright Infringement – Copying – Access Defined**

5       Both parties based this disputed instruction on Model Instruction 17.16 Copyright

6   Infringement – Copying – Access Defined.

7       Oracle objects to Google's general instruction as unhelpful to the jury for understanding

8   the disputed access issue.  Because Google refused to stipulate that it had access to the Java-

9   related works, the jury should be specifically instructed on how access to Oracle's copyrighted

10  works can be proven.  This instruction, moreover, should be tailored to the evidence and issues of

11  this case.  Thus, Oracle's proposed instruction is better suited to educating the jury as to their

12  charge.

13      By saying, "Proof of access requires a reasonable possibility that the defendant had the

14  opportunity to view or read or copy the plaintiff's work," Oracle's instruction accurately and

15  specifically explains to the jury what the legal concept of "access" means.  *See* Ninth Circuit

16  Manual of Model Jury Instructions – Civil No. 17.16 Comment (2007); *Sid & Marty Krofft

17  Tel. Prods., Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1172 (9th Cir. 1977) (proof of access

18  requires "an opportunity to view or to copy plaintiff's work"); *Jason v. Fonda*, 698 F.2d 966, 967

19  (9th Cir. 1982) (reasonable possibility, not bare possibility, of seeing or hearing the work); *Kamar

20  Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981) (access and reasonable

21  opportunity).  Relatedly, Oracle's instruction also appropriately identifies the specific copyrighted

22  and allegedly infringing works at issue, "the Java API design specifications and code files before

23  Google created the Android API design specifications and code files."

24      Oracle's proposed instruction also uses the Supplemental Instruction to Model Instruction

25  17.16.  Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.16 Supplemental

26  Instruction (2007) ("Depending on the evidence at trial of the defendant's access to the allegedly

27  infringed work, the court may instruct the jury about factors that show such access, by adding the

28

1   following after the last paragraph of this instruction").  Inclusion of model language from the

2   Supplemental Instruction will specifically illustrate for the jury how access to the copyrighted

3   works can be proven.  This will aid the jury in deciding the disputed access issue.

4          On the first access factor regarding chain of events, Oracle's instruction regarding former

5   employees is properly tailored to the factual scenario at issue in this case.  *Johnson Controls,*

6   *Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1176 (9th Cir. 1989) ("Access is clear in this

7   case, and Phoenix Control appears to concede this.  Several employees of Phoenix Control are

8   former employees of Johnson, and worked on several versions of the JC-5000S [copyrighted

9   work].")  Indeed, the Model Instruction indicates the parties should insert the applicable factual

10  scenario.  *See* NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.16

11  Supplemental Instruction (2007) ("[such as dealings through a third party (such as a publisher or

12  record company) that had access to the plaintiff's work and with whom both the plaintiff and the

13  defendant were dealing]").  Similarly, on the second and third access factors, Oracle's instruction

14  is appropriately modified to fit the factual context of this case.  At issue are both wide

15  dissemination of and striking similarity to the Java API design specifications and code files.

16  Accordingly, the Court should adopt Oracle's proposed instruction.  It is better suited to

17  educating the jury on the disputed issue of access for copyright infringement.

18          **M.      Disputed Jury Instruction No. 17 re Copyright – Substantial Similarity –**
                **Extrinsic and Intrinsic Test**

19

20         Oracle objects to Google's proposed instruction.  Jury confusion would result from

21  instructing the jury to engage in a multi-step analysis involving very abstract legal concepts in

22  order to determine any copyright protection and the scope of that protection.  Even a cursory

23  review of Google's proposed language makes this plain.  Moreover, Google's own case law

24  expressly states that the district court must determine copyright protection and its scope.  *Apple*

25  *Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443, 1447 (9th Cir. 1994) (holding court must

26  apply two-part extrinsic and intrinsic test to determine copyright protection and define scope of

27  protection).  Google's proposed instruction on the extrinsic and intrinsic test should be denied.

28

1    Instead, the Court should decide copyrightability during the course of the trial and then

2    instruct the jury on any copyright protection as to the Java platform and the scope of that

3    protection.  The court should also instruct the jury on the frame of reference to apply when

4    determining similarity.

5    After hearing these instructions from the Court, the jury can follow Oracle's proposed

6    language.  Oracle's proposal employs useful analogies to enable the jury to better understand the

7    components of the Java-related works.  The average juror will more likely understand literary

8    concepts such as plot, theme, and characters than they will understand "syntax," "methods," and

9    "classes" without such an analogy.  Indeed, the Ninth Circuit has used just these sorts of

10   analogies in articulating the test for infringement in software cases:

> In particular, the extrinsic test for literary works requires analytic
> dissection of several "objective components of expression," *Shaw*,
> 919 F.2d at 1361, within a literary work such as plot, theme,
> characters, and dialogue. *Id.* at 1356-57. Similarity of these
> objective components in two literary works logically gives rise to a
> triable issue of similarity. *Id.* at 1357. Likewise, computer
> programs are subject to a *Shaw-type analytic dissection of various*
> *standard components*, e.g., screens, menus, and keystrokes.

16   *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1477 (9th Cir.1992).  Oracle's proposed

17   instruction, moreover, sets out the appropriate similarities to examine in determining

18   infringement: "the similarities between what was allegedly copied, not on any additions to the

19   work made by Google."  *See Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir 1990) ("No

20   plagiarist can excuse the wrong by showing how much of his work he did not pirate.").  Finally,

21   Oracle's proposed instruction is consistent with the Court's summary judgment order in applying

22   the substantial similarity test instead of the virtual identity test that Google advocates.  *See*

23   Disputed Jury Instruction No. 6, *supra*.

### N.    Disputed Jury Instruction No. 18 re Copyright Infringement – Copying From Third Party

The Model Instructions do not contain a proposed instruction regarding copyright

infringement liability for copying from a third party.  The facts of this case, however, involve just

such a scenario. Because of this, the jury should be instructed on the law governing liability for copying from a third party.

Oracle's proposed instruction is brief and clear. A defendant is liable for copyright infringement even if it copied the copyrighted work from a third party. *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("Secondly, a defendant may be liable where he copied with or without a license, from a third party, who in turn had copied from the plaintiff."). Thus, if a third party infringes Oracle's copyrights, Google can not escape liability merely because it copies from the third party infringer instead of directly from Oracle. *See Pye*, 574 F.2d at 481; s*ee also Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981) ("[E]vidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access [to the copyrighted work] by the defendant.") (citation omitted). Whether Google had a good faith belief that it did not infringe Oracle's copyright is irrelevant. *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198 (1931) ("Intention to infringe is not essential under the act."); *see also* 17 U.S.C. § 501 (no knowledge requirement for copyright infringement). Thus, if Google copied Oracle's copyrighted works from a third party, Google is still liable for infringement. Oracle's proposed instructions explain the law on this point to the jurors, and provide guidance on how to determine liability in the event that it finds that Google did copy from a third party.

**O.     Disputed Jury Instruction No. 19 re Copyright Liability – Vicarious Infringement – Elements and Burden of Proof**

Oracle and Google agree on the majority of the language for this instruction on vicarious infringement. The main dispute is over Oracle's proposal to add the sentence: "Google's ability to block or police use of its Android platform is evidence of the right and ability to supervise." Oracle is simply following the recommendation of the Comment to Model Instruction 17.20 to clarify the meaning of "supervise and control":

> In certain cases, it may be appropriate to instruct the jury upon the meaning of "control" or "financial benefit" for purposes of vicarious infringement. *See Napster*, 239 F.3d at 1023–24 (defendant's ability to block or police use of its internet service is evidence of the right and ability to supervise).

*A&M Records Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) provides a helpful example of supervision in an online service context.  "Napster had the right and ability to police its system and failed to exercise that right to prevent the exchange of copyrighted material."  *Id.* at 1023.

Oracle will present evidence at trial that, like Napster, Google makes infringing materials available online, and third parties copy and distribute these materials on the devices they sell.  Oracle will present evidence, moreover, that Google exercises more control than Napster by requiring that Android device manufacturers "NOT modify the publicly exposed APIs on the Android platform by changing any method or class signatures."  Trial Ex. 749 at 8, Android 2.2 Compatibility Definition, http://static.googleusercontent.com/external_content/untrusted_dlcp/source.android.com/en/us/compatibility/2.2/android-2.2-cdd.pdf.  Oracle will present additional evidence showing that Google has the right to supervise and control its Android licensees' activities and products.  Without Oracle's proposed language, the jury may not have a concrete idea of what "supervise and control the infringing activity" means.

### P.      Disputed Jury Instruction No. 20 re Copyright Liability – Contributory Infringement

The parties here are not far apart.  Oracle adds a sentence to the Model Language that explains to the jury what a "material contribution" is in the context of contributory liability.  Oracle's proposed language is taken directly from a recent Ninth Circuit case involving a jury trial on copyright infringement.  *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, -- F.3d --, 2011 WL 4014320, at *4 (9th Cir. Sept. 9, 2011).   That case states that "[m]aterial contribution turns on whether the activity in question 'substantially assists' direct infringement." *Id.* (citing *Amazon.com*, 487 F.3d at 729).

### Q.      Disputed Jury Instruction No. 21 re Copyright Liability – Willful Infringement

Oracle proposes an instruction on the elements of willful copyright infringement.  Google objects to this instruction, on the grounds that willful infringement is relevant only for statutory damages.  Google is mistaken.  As explained below with respect to Disputed Instruction No. 54, a willful infringer may not deduct certain fixed expenses from the statutorily authorized award of

1    infringers' profits.  Google has deducted those expenses, so the jury must decide whether the

2    copyright infringement was willful.

3         Oracle has modified the model jury instruction in reliance on recently decided Ninth

4    Circuit authority, which reaffirms that willful copyright infringement may be established when

5    the infringer acts with reckless disregard or willful blindness to the copyright-holder's rights.

6    *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, --- F.3d ----, 2011 WL 4014320, at *5 (9th

7    Cir. Sept. 9, 2011) ("To prove 'willfullness' under the Copyright Act, the plaintiff must show (1)

8    that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions

9    were the result of 'reckless disregard' for, or 'willfull blindness' to, the copyright holder's

10   rights.").

11        **R.    Disputed Jury Instruction No. 22 re Copyright Defenses – De Minimis**

12        The Model Instructions do not contain a proposed instruction on *de minimis* copying.  The

13   parties disagree on one linguistic issue and three legal questions.

14        Both sides adopt the general principle that copying is only *de minimis* where it is

15   qualitatively and quantitatively insignificant.  The parties offer different language for this point,

16   however.  Oracle's proposes: "You must consider the qualitative and quantitative significance of

17   the copied portions in relation to the works as a whole."  Oracle's proposal quotes relevant

18   authorities nearly verbatim.  *See, e.g.*, ECF No. 433 at 5-6, Order Partially Granting and Partially

19   Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011)

20   ("The extent of the copying 'is measured by considering the qualitative and quantitative

21   significance of the copied portion in relation to the plaintiff's work as a whole.'") (quoting

22   *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004)).  Google, on the other hand, offers: "If

23   only a small amount of relatively unimportant protected material has been copied, then the

24   copying is 'de minimis,' and you should not find infringement."  Oracle submits that its proposed

25   language better reflects the legal standard and offers a point of reference—the plaintiff's work as

26   a whole—from which the jury can measure significance.

27        Next, Oracle proposes a sentence on the "average audience" test:  "In the copyright

28   infringement context, copying is considered '*de minimis*' only if it is so meager and fragmentary

1    that the average audience would not recognize the appropriation."  This language is taken almost

2    directly from the Court's summary judgment order and Ninth Circuit authority: "In the copyright

3    infringement context, 'a taking is considered *de minimis* only if it is so meager and fragmentary

4    that the average audience would not recognize the appropriation.'"  ECF No. 433 at 5, Order

5    Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on

6    Copyright Claim (September 15, 2011) (quoting *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir.

7    1986)).  Google's proposal contains no similar language.  Oracle submits that the average

8    audience test is the clearest available articulation of the *de minimis* defense under Ninth Circuit

9    law.

10           Additionally, Oracle proposes to specify the frame of reference for evaluating whether

11   Google's copying was *de minimis*: "The 'work as a whole' is not the entire Java platform, but

12   rather each individual code file.   In evaluating whether the copying was *de minimis*, you should

13   consider the qualitative and quantitative significance of the copied portions of code from an

14   individual file in relation to the total amount of code in that file."  Oracle's proposal is consistent

15   with the Court's summary judgment order: "at least on the present record, Google has not shown

16   that the Java platform as a whole is the work to which Google's alleged copying should be

17   compared."  ECF No. 433 at 7, Order Partially Granting and Partially Denying Defendant's

18   Motion for Summary Judgment on Copyright Claim (September 15, 2011); *see also Tattoo Art,*

19   *Inc. v. TAT Int'l, LLC*, --- F. Supp. 2d. ---, No. 2:10cv323, 2011 WL 2585376, at *15-16 (E.D.

20   Va. June 29, 2011) ("the copyrights in multiple works may be registered on a single form, and

21   thus considered one work *for the purposes of registration* while still qualifying as separate

22   'works' for purposes of awarding statutory damages").  Without Oracle's proposed language,

23   Google might try to repeat its failed summary judgment argument that its code copying was

24   permissible essentially due to the Java platform's sheer size.

25           Oracle's final disputed issue informs the jury that: "The *de minimis* defense does not

26   apply if you find that Google infringed Oracle's copyrights in the 37 API design specifications,

27   because, collectively, the copying in the API design specifications and the code files would be

28   more than *de minimis*."  In its motion for summary judgment on copyright, Google limited its *de*

*minimis* argument to code files and did not even try to argue that the alleged specification copying was *de minimis*.  *See* ECF No. 260 at 22-24, Defendant Google Inc.'s Notice of Motion and Motion for Summary Judgment on Count VIII of Plaintiff Oracle America's Amended Complaint (August 1, 2011).  Oracle expects that Google will separate its code and specification arguments at trial as well.  Oracle's proposed language clarifies the scope of Oracle's allegations.  The jury should not get the false impression that 12 files are all that Oracle alleges Google has copied.

### S.       Disputed Jury Instruction No. 23 re Copyright Defenses – Merger

There is no Model Instruction for merger.  Oracle bases its instruction on two quotes taken from Ninth Circuit cases, one of which was adopted by this Court when it ruled on the doctrine of merger on Google's motion for summary judgment on the copyright claim.

Specifically, the first sentence of Oracle's proposed instruction quotes from Satava v. Lowry, 323 F.3d 805, 812 n.5, which states: "Under the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, so that there cannot be a monopoly on the underlying idea." This same quotation appears at page 9 of the Court's summary judgment order.  (9/15/11 Order (Dkt. 433) at 9  This same quote appears in Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763, 765 (9th Cir. 2003) (quoting Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000).

The second sentence in Oracle's instruction is taken from *Apple Computer, Inc. v. Microsoft, Corp.*, which states, "First, when an idea and its expression are indistinguishable, or 'merged,' the expression will only be protected against nearly identical copying."  35 F.3d 1435, 1444 (1994).

Google's instruction, which is based on the much lengthier ABA model instruction but significantly departs from it, is contrary to Ninth Circuit law.  First, Google states at the end of its proposed instruction, contrary to the Apple v. Microsoft holding, that, "If you find that the expression allegedly copied by the defendant has 'merged' with the idea being expressed, your verdict should be for the defendant.."  But under Microsoft, the expression will still be protected against "nearly identical copying," 35 F.3d at 1444, so the finding of merger is just the first step.

1   Google also adds a passage to the ABA model instruction that fundamentally misstates the

2   law.  Google's instruction states that, "Merger is evaluated based on the conditions and

3   constraints faced by the defendant at the time of the alleged infringement."  But none of the Ninth

4   Circuit cases cited by Google hold that the merger doctrine is evaluated in this way.  Instead,

5   Google relies upon a Fifth Circuit case that considered the very different question of whether the

6   defendant could be held liable for copyright infringement because he posted the building codes of

7   two Texas towns on his website.  See Veeck v. S. Bldg. Code Cong., Int'l, 293 F.3d 791, 801 (5th

8   Cir. 2002), cert. denied, 537 U.S. 1043 (2002).  It is hardly surprising that the court found that

9   posting the law of a town was not copyright infringement: as the Court emphasized, the building

10  codes "are 'facts' under copyright law. They are the unique, unalterable expression of the 'idea'

11  that constitutes local law.  Id.  The facts in Veeck have nothing in common with the facts here.

12  Google makes matters worse by including an analogy in its instruction to the copying of a law,

13  presumably based on Veeck.  Including such an instruction would be highly prejudicial to Oracle,

14  as it suggests that the jury should apply the same standard here, in a completely different factual

15  scenario.

16      **T.      Disputed Jury Instruction No. 24 re Copyright Defenses – *Scenes a Fair***

17  The parties agree on the majority of this instruction.  The main differences between the

18  parties' proposals lie in the final two sentences of the first paragraph.  Oracle attempts to simplify

19  the end of the Model paragraph, while Google cites a Second Circuit case for examples of

20  constraints on software design.

21  Oracle objects to Google's sentence that begins: "In the case of computer programs, for

22  example, in many instances it is virtually impossible to write a program to perform particular

23  functions in a specific computing environment without employing standard techniques."  Google

24  cites no binding authority for this language and instead takes it almost directly from *Computer*

25  *Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 709-10 (2d Cir. 1992).  The problem with this

26  language is that it is an unsupported generalization.  The Ninth Circuit requires an analysis of the

27  particular expressive content of each program:  "Whether the nonliteral components of a program,

28  including the structure, sequence and organization and user interface, are protected depends on

1  whether, on the particular facts of each case, the component in question qualifies as an expression

2  of an idea, or an idea itself." *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173,

3  1175 (9th Cir. 1989); s*ee also* ECF No. 433 at 9 ("If Google believes, for example, that a

4  particular method declaration is a *scene a faire* or is the only possible way to express a given

5  function, then Google should provide evidence and argument supporting its views as to that

6  method declaration.").  Google's categorical approach here does just the opposite.  The jury might

7  believe that because "in many instances" a programmer cannot avoid "standard techniques," there

8  is no need to analyze the Java-related works in *this* case, which may or may not contain *scenes a*

9  *faire*.  To prevent this unfairly prejudicial result, the Court should reject Google's proposed

10  language.

11          The second dispute between the parties concerns Oracle's proposal to remove a sentence

12  from the Model Instruction and replace it with simpler language.  Oracle proposes omitting:

13  "These elements of a work are given only limited copyright protection, because they are not

14  likely to be original and because, as a type of idea, they are necessary for the creation of other

15  works."  In its place, Oracle proposes: "They are treated like ideas and are therefore not protected

16  by copyright.  Further, the indispensable expression of these ideas may only be protected against

17  virtually identical copying."  Oracle's proposed text accurately states the law of the Ninth Circuit:

18              As we explained in *Frybarger v. International Business Machines*
                 *Corp.*, 812 F.2d 525 (9th Cir.1987), when similar features in a
19              videogame are "'as a practical matter indispensable, or at least
                 standard, in the treatment of a given [idea],' " *they are treated like*
20              *ideas and are therefore not protected by copyright. Id.* at 530
                 (quoting *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*,
21              672 F.2d 607, 616 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct.
                 176, 74 L.Ed.2d 145 (1982)). Furthermore, as *Frybarger* holds,
22              "the mere *indispensable expression of these ideas*, based on the
                 technical requirements of the videogame medium, *may be protected*
23              *only against virtually identical copying*." *Id.*

24  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994), *cert. denied*, 513

25  U.S. 1184 (1995) (emphasis added).

26

27

28

U.      **Disputed Jury Instruction No. 25 re Copyright Defenses – Affirmative Defense – Fair Use**

Both parties base this disputed instruction on Model Instruction 17.18 Copyright – Affirmative Defense – Fair Use (17 U.S.C. § 107).  While the parties agree on the third numbered factor in the Model Instruction, Oracle objects to Google's proposed changes to other parts of that instruction.

1.      **Introductory Paragraphs**

The parties are not far apart on the two paragraphs preceding the Model Instruction's verbatim recitation of the four statutory fair use factors.  *Compare* 17 U.S.C. § 107 *with* NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.18 (2007).  Two disputes remain.

First, in the opening paragraph, Oracle objects to Google's replacement of "public interest" from the Model Instruction with "purpose of copyright, which is to promote the progress of science and the useful arts."  Instead, the Court should use Oracle's proposed instruction on the opening paragraph.  It is identical to the Model Instruction.

Second, in the paragraph two, Oracle objects to Google's insertion of "making transformative use" as the purported purpose behind its alleged fair use.  As discussed immediately below, transformative use is not an issue that should go to the jury.  Moreover, even if this issue goes to the jury, "making transformative use" is too vague for the jury to understand.  Instead, Oracle's description of "allowing applications written in the Java language to run on the Android platform" is a neutral, specific, and factual statement tailored to this case.  In fact, this description is Google's own statement of purported "transformative purpose" taken directly from its court papers in this lawsuit.  *See* ECF No. 260 at 19:15-16, Google Inc.'s Notice of Motion and Motion for Summary Judgment on Count VIII of Plaintiff Oracle America's Amended Complaint (August 1, 2011).

## 2.    Google's Alleged Transformative Use

Google's fair use defense rests on one theory:  Its use of the copyrighted works is not otherwise actionable because Android is a transformative product.  Given this theory, Google's proposal on the first fair use factor states (emphasis added):

> The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes, *and whether the use is transformative.  The central question this factor asks is whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.*

Oracle objects to Google's language on transformative use (italicized).  Addition to the Model Instruction is not necessary.  Also, Google's language improperly treats transformative use as if it were dispositive.

Google's proposal is unnecessary.  It does not have a legally sufficient evidentiary basis to support a jury finding of transformative use.  This is not an issue that should go to the jury and potentially confuse it.  Google's use of the copyrighted works is simply not transformative.  Google is doing the same thing Oracle is — that is, Oracle has a Java operating system for mobile devices.  Because Oracle already offers a Java operating system for mobile handsets, Android has no new purpose and no transformation.  Moreover, Google copied the Java API specifications to use them the same way Oracle does by licensing a Java operating system to computer and mobile device manufacturers.  *See Elvis Presley Enters., Inc. v Passport Video*, 349 F.3d 622, 627, 629 (9th Cir. 2003) (finding unauthorized use was not transformative because its purpose was not different than original's, where unauthorized use "serves the same intrinsic entertainment value that is protected by Plaintiffs' copyrights").  The same logic applies here.  Google's use adds no transformative value through a "further purpose or different character, altering the first with new expression, meaning, or message."  *Campbell v. Acuff-Rose Music, Inc*. 510 U.S. 569, 579 (1994) (emphasis added).  Google did not make any transformative changes to the Java core API specifications it copied.  For a work to be transformative, there must be a "real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and not merely the facile use of the scissors; or extracts of the essential parts, constituting the chief value

of the original work." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (quoting *Folsom v. Marsh*, 9 F. Cas. 342, 345 (C.C.D. Mass. 1841)).

Google's case law on transformative use reinforces this conclusion.  In *Campbell*, the Supreme Court held that a rap parody of an earlier rock song had an "obvious claim to transformative value," because the parody was a "comment or criticism" of the original song. 510 U.S. at 579, 583.  Thus, the parody had a further purpose, even though both works were musical songs.  Here, Android has no comment, criticism, or any further purpose beyond the copyrighted works.  Both Oracle and Google use the Java API specifications for Java operating systems.  In *Sony Computer Entm't, Inc. v. Connectix*, 203 F.3d 569 (9th Cir. 2000), the Ninth Circuit found modest transformative value in the defendant's software, because it was a "wholly new product" when compared to the copyrighted work.  *Id.* at 606.  Significantly, the Ninth Circuit emphasized that the software contained entirely new object code, and that the plaintiff did not claim infringement by the final software product.  *Id.* at 602, 606-07 (holding fair use to reverse engineer and thereby infringe copyrighted work during intermediate step toward developing final product).  Here, Oracle alleges infringement by Android itself as a derivative work based on the design of the Java API specifications.

Lastly, Google improperly elevates transformative use as if it were the first statutory factor in the fair use defense.  It is not.  Where applicable, transformative use may be one consideration in the larger inquiry on the purpose and character of the unauthorized use. Google's case law says this much.  *Sony*, 203 F.3d at 607 (weighing extent of transformation in defendant's final software product against commercialism and compatibility to plaintiff's product).  Google cannot make transformative use dispositive over the overwhelming evidence of the commercial nature of Android.

Notwithstanding the above, if the Court were to instruct the jury on transformative use, Oracle proposes alternative language:

> Regarding this first factor, a use may be fair if it is "transformative."  To be transformative, you must consider whether Google's use merely supersedes the original creation, or instead adds something new, with a further purpose or differing character,

altering the first with new expression, meaning, or message.  If the later use serves the same purpose, then it is not transformative.

*Campbell*, 510 U.S. at 579 ("merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or differing character, altering the first with new expression, meaning or message.").  Google's proposal on transformative use should be denied.

### 3. Other Fair Use Factors

Google's instruction on the second fair use factor states (emphasis added):

> The nature of the copyrighted work, *including whether the work is creative or functional.  Not all copyrighted works are entitled to the same level of protection.  As I have explained in prior instructions, copyright protection does not extend to the ideas underlying a work or to the functional or factual aspects of the work.  The functional aspects of a work that are not protected by copyright include functional requirements for compatibility.  To the extent that a work is functional or factual, it may be copied.  The expressive elements of the work that must necessarily be used as incident to expression of the underlying ideas, functional concepts, or facts may also be copied.  Works of fiction receive greater protection than works that have strong factual elements, such as historical or biographical works, or works that have strong functional elements, such as accounting textbooks.*

Oracle objects to Google's gratuitous addition to the Model Instruction (italicized).  Each side's competing copyright instructions as a whole explain what copyright law does and does not protect.  There is no need to repeat those explanations here.

Moreover, Google's two authorities on functional elements are distinguishable.  The focus of the Ninth Circuit's inquiry in both cases was whether it was fair use to reverse engineer a copyrighted product where "disassembly is the only way to gain access to the ideas and functional elements embodied in a copyrighted [work]."  *See Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527 (9th Cir. 1993); *Sony*, 203 F.3d at 603-04.  But here, Oracle's Java APIs were in plain view for anyone to see, so there was no need to copy them to discover their functional elements.  Another key to both decisions was that they concern intermediate copying only.  The final product was not alleged to infringe the copyright.  *See Sega*, 977 F.2d at 1527-28; *Sony*, 203 F.3d at 604 n.7.  As the Ninth Circuit noted in *Sega*, "[o]ur conclusion does not, of course, insulate [defendant] from a claim of copyright infringement with respect to its finished products."

1   977 F.2d at 1528.  Here, of course, Oracle accuses the final Android APIs and code of

2   infringement.  The reasoning in *Sega* and *Sony* does not apply.

3       On the fourth fair use factor, Google's instruction states, "However, some economic loss

4   by Oracle as a result of legitimate competition does not compel a finding of no fair use."  Oracle

5   objects to this sentence.  Again, the Model Instruction does include Google's proposed language.

6   As support, Google again relies on *Sony* and *Sega*.  *Sony*, 203 F.3d at 607; *Sega*, 977 F.2d at

7   1523-24.  Neither applies here for reasons above.  Furthermore, unlike *Sega,* end users will not

8   typically purpose more than one Java operating system for their mobile device.  977 F.2d at 1524

9   (holding notwithstanding "minor economic loss," fourth factor favored defendant because

10  "consumer might easily purchase" competing video games).  In *Sony*, the Ninth Circuit concluded

11  that "some economic loss" did not result in lack of fair use because defendant's final software

12  product was a transformative use.  203 F.3d at 607.  That is not the case here.  Accordingly,

13  Google's proposed sentence should be denied.

### 4.   Oracle's Additions Are Proper

15      At the end of each fair use factor in the Model Instruction, Oracle adds a short explanation

16  to guide the jury on what it is suppose to do with each factor.  The short explanations will help the

17  jury to understand its charge.  Also, Oracle's additions are neutral and accurate statements of the

18  law that come directly from the Comment to the Model Instruction.  NINTH CIRCUIT MANUAL OF

19  MODEL JURY INSTRUCTIONS – CIVIL No. 17.18 Comment (2007).

20      On the first fair use factor, Oracle adds:  "Commercial use weighs against a finding of fair

21  use."  *See Elvis*, 349 F.3d at 627 (citing *Harper & Row Publishers, Inc. v. Nation Enters*., 471

22  U.S. 539, 562 (1985); *see Harper*, 471 U.S. at 562 ("The crux of the profit/ nonprofit distinction

23  is not whether the sole motive of the use is monetary gain but whether the user stands to profit

24  from exploitation of the copyrighted material without paying the customary price.").

25      On the second fair use factor, Oracle adds:  "If the original copyrighted work is creative in

26  nature, this cuts against concluding that the later use was fair."  *See A&M Records, Inc. v.

27  Napster, Inc*., 239 F.3d 1004, 1015 (9th Cir. 2001) (cited for same assertion by NINTH CIRCUIT

28  MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.18 Comment (2007)).

On the third fair use factor, Oracle adds a first sentence: "This factor evaluates both the quantity of the work taken and the quality and importance of the portion taken." *See Elvis*, 349 F.3d at 630 (citing *Campbell*, 510 U.S. at 586). Oracle also adds a second sentence: "Copying the key portions extracts the most valuable part of the Plaintiff's copyrighted works." *See Elvis*, 349 F.3d at 630.

On the fourth fair use factor, Oracle adds a first sentence: "This is the most important of the four fair use factors." *See Harper*, 471 U.S. at 566 (the effect of the defendant's infringing work on the market for the plaintiff's work is the most important of the fair use factors) (cited with same parenthetical in NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.18 Comment (2007)); *Sony Computer Ent. Am., Inc. v. Bleem*, 214 F.3d 1022, 1026 (9th Cir. 2000) (effect on market "factor may be the most important [but] all factors must be considered"). Oracle also adds a second sentence: "When the defendant's use of the copyrighted work competes in the same market as the copyrighted work, then it is less likely a fair use." *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1336 (9th Cir. 1995) (cited for same assertion by NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.18 Comment (2007)). In sum, Oracle's neutral and accurate explanations will be helpful to the jury in analyzing the four statutory fair use factors.

## III.   PATENT – GENERAL OBJECTIONS

### A.   Google's Use of "Offering for Free"

Google contends that any accused products that are offered for free are not subject to liability under contributory or inducing infringement. Google contends that it makes Android available for free, and therefore cannot be considered to be using, offering for sale, or selling the patented invention as required under § 271(b) and 271(c). Federal courts have made clear that providing a product for free may still satisfy the "use" and "offer for sale or sale" prongs and therefore Google's instruction should be rejected.

Section 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Infringement applies to "whoever without authority makes, *uses*, offers to sell, or sells any patented invention[.]" 35 U.S.C. § 271(c) (emphasis

1  added).  The Federal Circuit has interpreted the term "use" broadly, as "to put into service any

2  invention," *i.e.*, to "control the system as a whole and obtain benefit from it."  *Centillion Data*

3  *Sys., LLC v. Qwest Comm'cns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) (citing *NTP,*

4  *Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1316–17 (Fed. Cir. 2005)).

5        Federal courts have held that giving away an infringing product for free is a "use" under

6  § 271(a).  *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 754 (D. Minn.

7  2008) (holding that free software may "use" accused technology and infringe under § 271); *Thorn*

8  *EMI N. Am., Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272, 275 (D. Del. 1993) ("Each delivery of a

9  free sample of an allegedly infringing product is a potential sale lost to the patentee (or its

10  licensee).  Viewing ownership of a patent as ownership of the right to exclude, *each delivery of a*

11  *free sample consequently impinges on the patentee's right to exclude others from interfering with*

12  *the patentee's monopoly on the patented product*.  A patentee's monopoly would be worthless,

13  for example, if, in an attempt to solicit business, a person delivered free samples to all of the

14  patentee's potential customers.  Mere solicitation, in contrast, does not tangibly affect the

15  patentee's monopoly.  In sum, because delivery of free samples of allegedly infringing samples

16  tangibly impinges on the patentee's monopoly rights in a way that ordinary solicitation does not,

17  such delivery must be regarded as 'use' of an allegedly infringing product for the purposes of

18  § 271(a)."); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991)

19  (mailing samples of an infringing product may constitute direct patent infringement); *Patent Tube*

20  *Corp. v. Bristol-Myers Co.*, 25 F. Supp. 776, 777 (S.D.N.Y. 1938) ("The distribution of the

21  patented device only for advertising purposes and without actual monetary compensation

22  therefore [sic], in my opinion, creates no exception to the general rule that use of the patented

23  device is forbidden.").  If providing a free sample may satisfy the "use" prong of infringement,

24  then clearly Google's licensing of Android to third party device manufacturers, under which

25  Google receives a variety of consideration, including adherence to Google's strict compatibility

26  requirements, is considered a "use."  Therefore, Google's proposed modifications to say that

27  providing Android for free does not constitute infringement should be denied.

28

1    Google's Android licensing practices result in infringement under § 271(c) and well as

2    § 271(a).  Contributory patent infringement under § 271(c) applies to "[w]hoever offers to sell or

3    sells[.]"  The Federal Circuit treats the "offer to sell" provision of § 271(a) as the same as

4    § 102(b).  *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000)

5    (defining § 271(a)'s "'offer to sell' liability according to the norms of traditional contractual

6    analysis") (citing *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998)).  The "offer to sell" provision in

7    § 271(c) should be analyzed similarly.  Google does not *give* Android away—Google *licenses*

8    Android and receives consideration in return.  Under the license selected by Google (the Apache

9    License, Version 2.0), licensees agree to certain conditions for further distribution and to waive

10   Google's liability arising out of Android, among other obligations.  *See*

11   http://www.apache.org/licenses/LICENSE-2.0.  These are things of value that Google receives

12   from its licensees, so it is accurate to say that Android is "sold."  Google has other licensing

13   agreements with the phone manufacturers under which it receives other forms of consideration for

14   Android.  All of this is more than enough to establish infringement liability under the statute.

15   Federal courts interpret "offers to sell or sells" as including products given for free if the

16   defendant derives an economic gain.  *Northbrook Digital, LLC v. Vendio Servs., Inc.,* 625 F.

17   Supp. 2d 728, 755 (D. Minn. 2008) ("Because usage is a sufficient theory to establish jurisdiction

18   over the infringement claims here, it is not necessary to consider whether Vendio derives any

19   other economic gain that may constitute a sale under § 271(a). But there is little question that,

20   even though Vendio distributes Dealio software for free, it does so to its commercial

21   advantage."); *see Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073,

22   1086-87 (C.D. Cal. 2003) (holding that where accused software was available for free and was

23   used to facilitate copyright infringement, distribution to the forum state was "an essentially

24   commercial act" for "the singular purpose of facilitating advertising and generating income".).

25   Here, Google derives a significant economic benefit by offering Android "for free."  It receives

26   millions of dollars in advertising revenue generated from the users of Android phones.  Google

27   provides Android to third party device manufacturers for the purpose of "facilitating advertising

28

1   and generating income."  As the number of infringing products increase, as many as 600,000 new

2   devices per day, Google derives ever more economic benefits.

3          Further, Google has provided no support for why "sale" excludes items offered without

4   charge, but with a variety of obligations incurred in return, often including strict compliance

5   requirements.  Google has cited, however, *Hollyanne Corp. v. TFT, Inc.*, which Google asserts for

6   the proposition that *donations* are not deemed "for sale."  In *Hollyanne*, the alleged infringer

7   offered to donate cable home alert devices to schools at a private meeting with school officials.

8   *Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999).  The court looked to whether

9   there were delivery dates, quantity, potential customer relations, and things that would result in a

10  continued relationship.  *Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308-09 (Fed. Cir. 1999).

11  The court held that "a mere offer to donate, where a donation is never made, cannot be an offer

12  for sale."  *Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1309 (Fed. Cir. 1999).  This is quite

13  different from the present facts.  Google has already licensed Android to the mobile device

14  manufacturers, unlike the alleged infringer in *Hollyanne*, who never made the "donation."

15  Moreover, Google does not donate Android.  Google makes Android available for purchase for

16  those who are willing to pay the price.  The price is to comply with compatibility requirements

17  and various restrictions placed on the software.  These restrictions are in place so Google can turn

18  a profit.

19         For these reasons, Google's attempt to exclude itself from liability because the Android is

20  "free" is unfounded and should be rejected.

21  **IV.     PATENT – SPECIFIC OBJECTIONS TO INSTRUCTIONS**

22         **A.      Disputed Jury Instruction No. 2 re Patent – Preliminary Instruction – What a
                    Patent Is and How One is Obtained**

23

24                 **1.      "Oracle Patents" is More Informative Than the "Asserted Patents."**

25         The Parties dispute the collective name given to the patents-in-suit within the jury

26  instructions.  This global issue spans a number of Google's proposed jury instructions (*e.g.*, nos.

    1, 3-5, 8, 10-12, 15-17, 19, 29).

27

28

It makes sense to refer to the patents-in-suit as the "Oracle Patents" instead of the "Asserted Patents."  Each of the patents-in-suit identifies "Sun Microsystems, Inc." on the front page as the owner of the patent.  Referring to the patents-in-suit as the "Oracle Patents" in the jury instructions will reduce any potential ambiguity or jury confusion about the ownership of the patents and the identity of the parties in the suit.  *See, e.g.*, *Florida Power & Light Co. v. R. O. Prods., Inc.*, 489 F.2d 549, 552 (5th Cir. 1974).

As just one example, here is Google's Proposed Jury Instruction No. 3 containing two instances of "Asserted patents":

> Oracle filed suit in this court seeking money damages from Google for allegedly infringing the Asserted patents by making, using, selling, or offering for sale products and methods that Oracle argues are covered by particular asserted claims of the Asserted patents.

Replacing "the Asserted patents" with "the Oracle Patents" would be clearer and should be adopted instead.

### 2.        Reference to Patent Re-examinations Is Improper.

Google proposes a modification to the Model Instruction to refer to the reexaminations of the patents-in-suit, and to the fact that there is a "substantial new question as to patentability." This is highly prejudicial to Oracle.

Oracle's motion in limine no. 1 to exclude any evidence or argument relating to the reexaminations directly addresses this issue.  Federal courts have routinely relied on Federal Rule Evidence 403 to exclude evidence at trial regarding co-pending, non-final reexaminations of the patents at issue, on the grounds that such reexamination proceedings are not probative of patent invalidity, are prejudicial to the plaintiff, and are highly likely to confuse the jury.  *See, e.g., SRI Int'l Inc. v. Internet Sec. Sys., Inc.*, 647 F. Supp. 2d 323, 356 (D. Del. 2009) ("Absent unusual circumstances . . . non-final decisions made during reexamination are not binding, moreover, they are more prejudicial (considering the overwhelming possibility of jury confusion) than probative of validity"); *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 583 (E.D. Tex. 2009) ("As explained elsewhere in this opinion, the simple fact that a reexamination decision has been made by the PTO is not evidence probative of any element regarding any claim of invalidity. . . . Even

1   if it were, the evidence was substantially more prejudicial than probative."); *Amphenol T & M*

2   *Antennas, Inc. v. Centurion Int'l, Inc.*, No. 00 C 4298, 2002 U.S. Dist. LEXIS 822, at *5 (N.D.

3   Ill. Jan. 17, 2002).  A non-final patent reexamination proceeding, of course, is not probative of

4   invalidity, unpatentability, or willfulness.  *Procter & Gamble Co. v. Kraft Foods Global, Inc.*,

5   549 F.3d 842, 848 (Fed. Cir. 2008) ("As this court has observed, a requestor's burden to show

6   that a reexamination order should issue from the PTO is unrelated to a defendant's burden to

7   prove invalidity by clear and convincing evidence at trial.") (citation omitted); *Hoechst Celanese*

8   *Corp. v. BP Chems., Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) ("[T]he grant by the examiner of a

9   request for reexamination is not probative of unpatentability."); *Volterra Semiconductor Corp. v.*

10  *Primarion, Inc.*, No. C-08-05129 JCS, 2011 U.S. Dist. LEXIS 49574, at *24 (N.D. Cal. Mar. 8,

11  2011) ("With respect to the PTO Initial Office Actions and reexamination orders, … preliminary

12  decisions and actions by the PTO in the course of a reexamination proceeding are not probative of

13  invalidity.").

14          Moreover, even if the reexaminations were relevant, the prejudicial effect of disclosing

15  them to the jury would vastly outweigh any probative value.  *See Boston Scientific Corp. v.*

16  *Cordis Corp.*, No. 10-315-SLR, 2011 U.S. Dist. LEXIS 46210, at *1-2 (D. Del. Apr. 28, 2011)

17  ("It is generally not the court's practice to admit the reexamination record as trial evidence.

18  Rejections on reexamination are not binding, and such evidence is almost always more prejudicial

19  than probative."); *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, No. 08-CV-335-IEG

20  (NLS), 2009 U.S. Dist. LEXIS 106795, at *5 (S.D. Cal. Nov. 13, 2009) ("[E]ven if the

21  reexamination proceedings are somehow relevant on the issues of obviousness or willfulness,

22  they are nevertheless unfairly prejudicial.") (citation omitted); *Realtime Data, LLC v. Packeteer,*

23  *Inc.*, No. 6:08-cv-144-LED-JDL (E.D. Tex. Dec. 30, 2009), ECF No. 805 at 4 ("[A]lthough an

24  ongoing reexamination proceeding and the USPTO's actions therein could be considered by the

25  Court as a factor in a willfulness determination at the summary judgment stage, during trial in a

26  request for judgment as a matter of law as to willful infringement, and/or post-verdict, it should

27  not be introduced before the jury due to the highly prejudicial effect the USPTO's actions would

28  have on the jury"); *Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*, No. 6:06-cv-

1    551 (E.D. Tex. Apr. 9, 2009), ECF No. 518 at 4 ("[W]ithout any conclusions of the PTO to rely

2    upon, evidence that the PTO is currently reexamining the patent may work to unduly alleviate

3    Defendants' 'clear and convincing' burden for both invalidity and willfulness in front of the

4    jury"); *Amphenol*, 2002 U.S. Dist. LEXIS 822, at *5 ("[T]elling the jury that the patent has been

5    called into question by the Patent Office may significantly influence the jury's application of the

6    presumption of validity and significantly prejudice [the patentee].  The prejudicial potential of

7    this evidence far outweighs any probative value it may have.").  Oracle's patents are entitled to a

8    presumption of validity and may only be invalidated based on clear and convincing evidence.  *See*

9    *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246 (2011) (applying the clear and

10    convincing standard to all prior art references regardless of their use in initial examination); *z4*

11    *Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1354 (Fed. Cir. 2007) (invalidity must be shown

12    by clear and convincing evidence).  Informing the jury that the PTO is reexamining the patents

13    may cause jurors to erroneously conclude that the patents are invalid or no longer entitled to a

14    presumption of validity.  Jurors may well mistake the PTO's interim rejections of certain patent

15    claims as indicative of the government's final position on the validity of those claims.  Therefore,

16    Google's proposed modification should be denied.

17    **B.**    **Disputed Jury Instruction No. 4 re Patent –Preliminary Instruction – Summary of Contentions**

19            **1.**    **Any Reference to Patent Re-examinations Is Improper.**

20    Oracle objects to Google's proposed modification to the Model Instruction to add

21  reference to the reexaminations of the patents-in-suit, and to the fact that there is a "substantial

22  new question as to patentability. As discussed fully in the section above regarding Instruction

23  No. 2 re Preliminary – Patent – What A Patent Is and How One Is Obtained, this is highly

24  prejudicial to Oracle.

25    **C.**    **Disputed Jury Instruction No. 26 re Patent – Summary of Contentions**

26    The sole dispute between the parties here is whether to refer to the patents at issue as the

27  "Oracle Patents" or the "Asserted Patents."  Oracle refers the Court to its argument on this issue

28

in Disputed Jury Instruction No. 2 (Preliminary – Patent – What A Patent Is and How One Is Obtained).

### D.       Disputed Jury Instruction No. 27 re Patent – Presumption of Validity

Oracle's proposed modification to include the presumption of validity in the Model Instruction is appropriate.

Section 282 of the Patent Code states that "[a] patent shall be presumed valid."  Oracle's patents are entitled to this presumption of validity and may only be invalidated based on a showing of clear and convincing evidence.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2243 (2011) ("In asserting an invalidity defense, an alleged infringer must contend with the first paragraph of § 282, which provides that '[a] patent shall be presumed valid' and '[t]he burden of establishing invalidity . . . rest[s] on the party asserting such invalidity.'") (citation omitted); *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1354 (Fed. Cir. 2007) (invalidity must be shown by clear and convincing evidence).  The clear and convincing standard is deeply rooted in the presumption of validity.  Oracle's proposed instruction will not confuse the jury on this point, but will instead explain the relationship between these important concepts so that the jury can properly appreciate the strength of the asserted patents and the significant evidence Google needs to present to invalidate them.

Google does not appear to contest the presumption of validity itself or its relationship to the clear and convincing burden of proof.  Indeed, it cannot. Instead, Google contends that if the Court includes the presumption of validity instruction, then the door to evidence regarding re-examination proceedings will open.  Google's argument is misdirected for at least two reasons.

First, Google's position has no legal support.  *Presidio Components v. Am. Tech.* does not apply here.  In *Presidio* the court excluded reference to the "presumption of validity" by granting the defendant's properly filed motion *in limine* on that issue.  Although the court mentioned this prior ruling in a footnote in a separate motion *in limine* directed to re-examinations, the court did not exclude reference to the presumption because of the re-examination.  *Presidio*, 2009 U.S. Dist. LEXIS 106795, at *5.

1      Other Federal courts have similarly refused to find a link between re-examinations and the

2      presumption of validity, excluding references to pending reexaminations, but not the presumption

3      of validity, at trial.  *See, e.g., Amphenol T & M Antennas, Inc. v. Centurion Int'l, Inc.*, No. 00 C

4      4298, 2002 U.S. Dist. LEXIS 822, at *5 (N.D. Ill. Jan. 17, 2002) ("[T]elling the jury that the

5      patent has been called into question by the Patent Office may significantly influence the jury's

6      application of the presumption of validity and significantly prejudice [the patentee].  The

7      prejudicial potential of this evidence far outweighs any probative value it may have.").  Similarly,

8      in *Hochstein*, the patentee moved *in limine* to exclude any reference to pending reexaminations.

9      The defendant stated that it planned to introduce evidence of the reexaminations only if the

10     patentee referred to the presumption of validity at trial.  *Hochstein v. Microsoft Corp.*, No. 04-

11     CV-73071, 2008 U.S. Dist. LEXIS 64677, at *7-8 (E.D. Mich. Aug. 21, 2008) ("Microsoft

12     responds that it would only introduce the fact of the reexamination if Plaintiffs argue at trial that

13     that the '125 patent has a statutory presumption of validity. Microsoft points out that the USPTO

14     granted its request for a reexamination because the USPTO failed to consider prior art at the time

15     of the original examination. Microsoft has not moved to stay the case pending the

16     reexamination.").  The court in *Hochstein* ultimately excluded evidence regarding the

17     reexaminations, but it did not exclude any reference to the presumption of validity.  The instant

18     case is no different; the re-examinations are irrelevant to the presumption.

19         Google's untimely attempt to strike any reference to the "presumption of validity" at trial

20     provides a second basis to reject its position.  The Court allowed each party five motions *in

21     limine*.  Although it is common practice for patentees to refer to the presumption of validity,

22     Google strategically chose not to file a motion to exclude reference to the presumption.  Now

23     Google wants to secure that exclusion through the jury instruction process.  Google's obvious

24     attempt to circumvent the Court's pre-trial orders should not be condoned.

25         Oracle's proposed instruction referencing the presumption of validity should be adopted.

26

27

28

1    **E.      Disputed Jury Instruction No. 32 re Patent – Direct Infringement**

2         **1.      Giving a Away A Product For Free Constitutes "Use" Under § 271(a).**

3    Oracle objects to Google's proposed language that "A sale or offer to sell must include an

4    exchange of something of value or offer to exchange something of value and does not include

5    giving something away for free." Federal courts have made clear that providing a product for free

6    may still satisfy the "use" and "offer for sale or sale" prongs.  Oracle refers the Court to its

7    argument on this issue in Section III.A (Google's Use of "Offering for Free").

8    **F.      Disputed Jury Instruction No. 33 re Patent – Literal Infringement**

9    The sole dispute between the parties here is whether to refer to the patents at issue as the

10   "Oracle Patents" or the "Asserted Patents."  Oracle refers the Court to its argument on this issue

11   in Disputed Jury Instruction No. 2 (Preliminary – Patent – What A Patent Is and How One Is

12   Obtained).

13   **G.      Disputed Jury Instruction No. 34 re Patent – Direct Infringement Under the
          "Doctrine of Equivalents"**

14

15   The parties agree on the form of this instruction and that it applies to the '205 patent.

     Their sole disagreement is whether this instruction applies to the '702 patent.

16
     Oracle requests that the Court instruct the jury that Oracle asserts the doctrine of
17
     equivalents for the '702 patent as well as the '205 patent.  In Oracle's infringement contentions,
18
     Oracle identified the Android SDK's dx tool as performing the step of "forming a shared table
19
     comprising said plurality of duplicated elements":
20
21           The Android dx tool forms a shared table of the duplicated elements from
             the plurality of class files.  This process is explained in the Dalvik Video at
             time 7:20–9:25 and Dalvik Presentation, slides 15-20, where the recited
22           shared table includes, e.g., one or more of the "string_ids constant pool,"
             "type_ids constant pool," "proto_ids constant pool," "field_ids constant
23           pool," and "method_ids constant pool."

24           The Dalvik Presentation shows the elements of the class files combining
             into a shared constant pool (shared tables) in the .dex file.
25

26

27

28

(Dalvik Presentation, slide 15)

Trial Ex. 3071, Ex. C at 9-10.  Oracle's infringement contentions identified the five .dex file

constant pools as being either examples of the claimed shared table or together being equivalent

to a collective shared table:

> In the illustration above, each of "string_ids," "type_ids" and "method_ids"
> are examples of the shared tables (or, equivalently, a collective shared
> table).

Trial Ex. 3071, Ex. C at 10.  Oracle made the same identification for dependent claims 5 and 6 of

the '702 patent, and referred to those identifications for claims 12, 13, 15, and 16 of the '702

patent, which have analogous "shared table" elements.  In paragraph 10 of his patent infringement

expert report, Prof. Mitchell identified the doctrine of equivalents as applying to both the '205

and '702 patents: "To the extent Android does not literally infringe the claim limitations of the

asserted claims of the '205 and '702 patents, Android contains equivalent elements corresponding

to each and every requirement of the claim limitations at issue for the reasons detailed below."

Trial Ex. 712 ¶ 10.  Prof. Mitchell identified five constant pools shown in the figure as being

equivalent to a collective shared table in paragraphs 471, 483, and 486 of his report with respect

to claims 1, 5, and 6, and refers back to this information when discussing claims 12, 13, 15, and

16.  Paragraphs 494-496 of Prof. Mitchell's report concerned a doctrine of equivalents argument

about all of the claim 1 elements that Oracle agreed would be struck; but the argument in those

1   paragraphs is not at issue here.  Google did not move to strike any parts of paragraphs 10, 471,

2   483, and 486, despite being given the opportunity to do so by the Court.

3       This instruction is necessary because, in discussing the jury instructions between counsel,

4   Google's counsel refused to acknowledge that Google did not contest literal infringement of this

5   claim element—even though Google's noninfringement interrogatory response and its '702

6   noninfringement expert report do not argue that the Android SDK's dx tool does not perform the

7   "forming a shared table" step—despite repeated requests to do so to resolve this dispute.  In order

8   to prevent possible surprise at trial with respect to the "shared table" elements of the asserted '702

9   patent claims, Oracle requests that the jury be instructed that the doctrine of equivalents applies to

10   the '702 patent as well as the '205 patent.

**H.   Disputed Jury Instructions No. 35 Regarding Patent – Limitations on Direct Infringement Under the "Doctrine of Equivalents"**

**1.   Prosecution History Estoppel as to the '205 patent.**

14       Because Google did not properly present any defense of prosecution history estoppel with

15   respect to the '205 patent, the Court should not instruct the jury on the defense.  Google requests

16   an instruction that "[b]ecause Oracle made certain claim changes or statements during the patent

17   application process for the '205 patent, the doctrine of equivalents analysis cannot be applied to

18   the following requirements of the asserted claims 1 and 2 of the '205 patent."  Google's Proposed

19   Jury Instruction No. 35.  But Google did not identify in discovery any claim change or statement

20   that it contends gives rise to prosecution history estoppel.  As of this writing, Oracle literally does

21   not know which amendments or statements in the '205 patent prosecution Google is relying on to

22   support its jury instruction – Google has withheld that information.  Google's attempt to sandbag

23   Oracle through a proposed jury instruction should be rejected.

**2.   Google Has Never Before Disclosed A Prosecution History Estoppel Defense to Infringement under the Doctrine of Equivalents.**

25       Oracle disclosed its doctrine of equivalents infringement theory for the '205 patent on

26   December 2, 2010 in its Patent Local Rule 3-1 infringement contentions.  Oracle's contentions

27   explained how Google's Android JIT includes equivalents to the "generating . . . a new virtual

28   machine instruction" element of independent claim 1 and the corresponding "new virtual machine

1   instruction" element of dependent claim 2.  Oracle also produced the '205 prosecution history to

2   Google pursuant to Patent Local Rule 3-2.

3         On December 2, 2010, Oracle also served Google with Interrogatory No. 3 asking Google

4   to "explain the factual and legal bases for Google's pleading of its first affirmative defense: No

5   Patent Infringement."  Google's answer to this interrogatory, which it amended three times on

6   February 18, April 1, and April 27, failed to disclose any theory of about prosecution history

7   estoppel.  On July 26—just days before the close of fact discovery—Google provided its fourth

8   supplemental response to Interrogatory No. 3, which contained only a single sentence regarding a

9   prosecution history estoppel non-infringement defense:

10     **Oracle is estopped as a matter of law from relying on the doctrine of**
   **equivalents to enlarge the scope of the '205 patent claims to cover the**
11     **Accused Instrumentalities. *See Festo Corp. v. Shoketsu Kinzoku Kogyo***
   ***Kabushiki*, 243 F.3d 558 (Fed. Cir. 2000) (en banc).**  Alternatively,
12     Oracle cannot rely on the doctrine of equivalents to prove infringement
   because the asserted scope of equivalency of what is literally claimed
13     would encompass the prior art. *Wilson Sporting Goods Co. v. David*
   *Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990), cert. denied, 498
14     U.S. 992 (1990). In any event, the functionality identified by Oracle as
   infringing under the doctrine of equivalents is substantially different from
15     that described and claimed by the '205 patent. In addition, Oracle's
   identification of an entry in the jitEntry table works in a completely
16     different manner from the claimed "new instruction."

17   (emphasis added.)  The use of the word "alternatively" in Google's second sentence and the

18   identification of *Wilson Sporting Goods* shows Google asserts a second, different legal theory;

19   *Wilson Sporting Goods*, unlike *Festo*, is not a prosecution history estoppel case.  *Wilson Sporting*

20   *Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990), *overruled in part on*

21   *other grounds*, *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83 (1993).

22         Two things are immediately apparent from Google's interrogatory response.  First,

23   Google's legal basis for a prosecution history estoppel defense is at best ambiguous, because the

24   particular *Festo* case it cited was vacated by the Supreme Court.  *Festo Corp. v. Shoketsu Kinzoku*

25   *Kogyo Kabushiki Co.*, 535 U.S. 722, 742 (2002).

26         More importantly, Google's response does not disclose any factual bases for its last-

27   minute prosecution history estoppel defense.  Google did not identify any claim amendment or

28   statement made during prosecution of the '205 patent that would justify invocation of the doctrine

1    of prosecution history estoppel.  Google did not even identify any specific claim element that

2    would be affected by application of the doctrine.  It certainly did not identify the two claim

3    phrases that are now identified in its proposed jury instruction.

4            Google's disclosure is not sufficient to preserve a defense of prosecution history estoppel.

5    Prosecution history estoppel arises only when there is a clear and unmistakable surrender of

6    subject matter in prosecution.  Surrender may be accomplished by amendment, *Festo*, 535 U.S. at

7    736 ("Estoppel arises when an amendment is made to secure the patent and the amendment

8    narrows the patent's scope."), or by argument.  *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F. 3d

9    1449, 1458 (Fed. Cir. 1998) ("This court has acknowledged that even arguments made during

10   prosecution without amendments to claim language – if sufficient to evince a clear and

11   unmistakable surrender of subject matter – may estop an applicant from recapturing that

12   surrendered matter under the doctrine of equivalents.").  In its interrogatory response, Google did

13   not identify any ***narrowing*** amendment or argument or identify any surrender of claim scope as to

14   any specific element of any specific claim.

15           Google's failure to explain the factual and legal bases of a prosecution history estoppel

16   defense in its interrogatory response means that the jury should not be instructed on the defense.

17   *See, e.g.*, *Doe v. Reddy*, No. C 02-05570 WHA, 2004 U.S. Dist. LEXIS 30792, at *14 (N.D. Cal.

18   Mar. 24, 2004) ("So as to [facts requested by interrogatory], plaintiffs appear correct that

19   defendants have identified no admissible evidence.  This is dispositive.  Defendants will be held

20   to their discovery answers . . . .");  *Tech. Licensing Corp. v. Thomson, Inc.*, No. CIV. S-03-1329,

21   2005 U.S. Dist. LEXIS 24239, at *16-17 (E.D. Cal. June 30, 2005) (limiting evidence at trial to

22   information disclosed in response to interrogatory).  Even if Google's one-sentence, completely

23   uninformative response were enough to preserve the defense, Google did not cure its failure to

24   disclose a factual basis for prosecution history estoppel in expert discovery.  Google's '205

25   noninfringement expert presented a *Wilson Sporting Goods* analysis, but not a *Festo* prosecution

26   history estoppel analysis.  Like Google's interrogatory response, its expert report contained no

27   identification of narrowing amendments or arguments.

28

Google's request for a jury instruction on prosecution history estoppel comes as a surprise to Oracle. The instruction goes well beyond what Google provided in discovery. The factual or legal arguments that Google makes in support of its proposed jury instruction are advanced for the first time today. For this reason alone, the Court should not instruct the jury on the doctrine.

### 3.   Prosecution History Estoppel Does Not Limit Application of the Doctrine of Equivalents for the Asserted '205 Patent Claims.

Not only is Google's requested prosecution history estoppel instruction procedurally unjustified, but it is also substantively unjustified. There were no amendments or arguments in connection with claims 1 or 2 that surrendered claim scope to create an estoppel.

In the prosecution history of the '205 patent, what issued as claim 1 was originally numbered claim 32. Issued claim 2 was originally numbered claim 2, and depended from original claim 1. Claim 2 originally read:

> 2.      The method of claim 1, further comprising overwriting a selected virtual machine instruction of the function with a new virtual machine instruction, the new virtual machine instruction specifying execution of the at least one native machine instruction.

Trial Ex. 4017, OAGOOGLE0000052602-859 ('205 file history) at OAGOOGLE0000052699. In the first Office Action, claim 2 was rejected for obviousness-type double patenting over the '205's parent patent, but it was not rejected over Walters, a prior art reference, as other claims were. Trial Ex. 4017 at OAGOOGLE0000052806. In response to the first Office Action, the applicant filed a terminal disclaimer to overcome the double patenting rejection (Trial Ex. 4017 at OAGOOGLE0000052821), and broadened the language of claim 2 by amendment:

> 2.      **(Currently Amended)** The method of claim **32** [[1]], further comprising overwriting a selected virtual machine instruction of the function with a new virtual machine instruction, the new virtual machine instruction specifying execution of the at least one native machine instruction.

Trial Ex. 4017 at OAGOOGLE0000052727. The phrase "of the function" was deleted in claim 2—this was a broadening amendment, not a narrowing one. (The phrase "of the function" erroneously appears in Google's proposed jury instruction even though it does not appear in the

issued patent.)  Applicants made clear that claim 2 was amended only "to clarify the subject

matter regarded as the invention."  Trial Ex. 4017 at OAGOOGLE0000052721.  No application

of prosecution history estoppel with respect to claim 2 is appropriate.  *Honeywell Int'l, Inc. v.*

*Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004 (*en banc*) ("However,

prosecution history estoppel may bar the patentee from asserting equivalents ***if the scope of the***

***claims has been narrowed*** by amendment during prosecution.") (emphasis added).  Claim 2 was

also amended to depend from claim 32 rather than original claim 1, but this does not serve to bar

any equivalents to the elements of claim 2.

    In the same response, the '205 patent applicants added new claim 32, which ultimately

issued as claim 1:

> 32.    (New)  In a computer system, a method for increasing the execution speed of
> virtual machine instructions at runtime, the method comprising:
>
>     receiving a first virtual machine instruction;
>
>     generating, at runtime, a new virtual machine instruction that represents or
> references one or more native instructions that can be executed instead of said first
> virtual machine instruction; and
>
>     executing said new virtual machine instruction instead of said first virtual machine
> instruction.

Trial Ex. 4017 at OAGOOGLE0000052730.  The claim was never amended or narrowed, and

applicants made no argument about the claim to overcome a prior art rejection – it was never

rejected based on prior art.  Trial Ex. 4017 at OAGOOGLE0000052806.  As claim 2 recited

"overwriting a selected virtual machine instruction with a new virtual machine instruction," the

applicant pointed out in the response to the office action that the Walters reference did not teach

the broader claim element "generating, at runtime, a new virtual machine instruction that

represents or references one or more native instructions that can be executed instead of said first

virtual machine instruction."  Trial Ex. 4017 at OAGOOGLE0000052723.  Because the Examiner

had not rejected claim 2 based on the Walters reference, the amendment and this statement were

not narrowing and did not surrender any subject matter.

For the reasons described, the '205 patent applicants did not surrender claim scope of what are now claims 1 and 2.  Therefore, prosecution history estoppel does not limit application of the doctrine of equivalents for the '205 patent and the jury should not receive Google's requested instruction.

## I.   Disputed Jury Instruction No. 36 re Patent – Indirect Infringement – Generally

The sole dispute between the parties here is whether to refer to the patents at issue as the "Oracle Patents" or the "Asserted Patents."  Oracle refers the Court to its argument on this issue in Disputed Jury Instruction No. 2 (Preliminary – Patent – What a Patent Is and How One Is Obtained).

## J.   Disputed Jury Instruction No. 38 re Patent – Induced Infringement

Google's proposed instruction omits a significant element of induced infringement, as explained in the recent Supreme Court decision *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011).  Google relies on MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No. B.3.10, which was completed on November 29, 2007.  But this Model Instruction does not include the Supreme Court's recent holding in *Global-Tech*, which clarified that the knowledge requirement for inducing infringement under the § 271(b) standard may be satisfied by "willful blindness."  *Global-Tech*, 131 S. Ct. at 2069 ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C. § 271(b).")  Oracle's proposed instruction is consistent with *Global-Tech* and should be adopted.

Indeed, courts have already begun to confirm that jury instructions including the willful blindness standard for induced infringement are appropriate.  In *ePlus, Inc. v. Lawson Software, Inc.*, for example, the Eastern District of Virginia held that an instruction given *before* the *Global-Tech* decision was nevertheless consistent with *Global-Tech*.  No. 3:09cv620, 2011 WL 3584313, at *4 (E.D. Va. Aug. 12, 2011).  In *ePlus*, the Court gave the following instruction, which applied willful blindness:  "Knowledge of the patent may be established by a finding that [the alleged infringer] had actual knowledge of the patent or that [the alleged infringer] deliberately

1   disregarded a known risk that ePlus had a protective patent." *ePlus,* 2011 WL 3584313, at *5.

2   Oracle's proposed instruction, like the one adopted in *ePlus*, merely incorporates the new

3   Supreme Court standard.  Google offers no credible reason to ignore this standard; accordingly,

4   Oracle's proposed instruction should be adopted.

### K.    Disputed Jury Instruction No. 37 re Patent – Contributory Infringement

6   There are four disputed points on this jury instruction.  First, in the hopes of excluding its

7   own distribution practice, Google proposes to add two separate descriptions of what constitutes a

8   sale or offer for sale.  Google also seeks to include an unnecessary definition of direct

9   infringement as well as language regarding software as a component under § 271(f).  All three of

10  these proposed additions are irrelevant and confusing and none of them should be included in the

11  jury instructions.  The fourth point of dispute is whether the "willful blindness" standard recently

12  announced by the Supreme Court should be included.  As this is the current standard for

13  infringement under § 271(c), Oracle's proposal to include this language is proper.

### 1.    Google's Language Regarding Sale/Offers for Sale Should Not be Included

16  Google's proposal to add the following language to the Model Instruction should be

rejected:

> A sale or offer to sale must include an exchange of something of value or offer to exchange something of value and does not include giving something away for free
>
> You may not find Google liable merely for transferring or supplying Android to others.  Rather, you must find that Google sold Android or offered it for sale.  A sale requires transfer of the component for a price.  Therefore, if you find that Google makes Android available for free, you may not find Google liable for contributory infringement.

21   Google has provided no support for its position that a "sale" excludes items offered for

22  free, but with obligations including compliance requirements.  Incredibly, Google attempts to

23  liken its product distribution to a donation, citing *Hollyanne Corp. v. TFT, Inc.*, for the

24  proposition that *donations* are not deemed "for sale."  But Google does not donate Android.

25  Google makes Android available for purchase for those who are willing to pay the price.  The

26  price is various restrictions placed on the software and often includes forced compliance with

27  compatibility requirements.  Courts have routinely held that this is not "for free" as Google

28  suggests.  *See, e.g., Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 754 (D.

1  Minn. 2008) (holding that free software may "use" accused technology and infringe under § 271);

2  *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272, 275 (D. Del. 1993) ("Each

3  delivery of a free sample of an allegedly infringing product is a potential sale lost to the patentee

4  (or its licensee)"); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del.

5  1991) (mailing samples of an infringing product may constitute direct patent infringement);

6  *Patent Tube Corp. v. Bristol-Myers Co.*, 25 F. Supp. 776, 777 (S.D.N.Y. 1938) ("The distribution

7  of the patented device only for advertising purposes and without actual monetary compensation

8  therefore [sic], in my opinion, creates no exception to the general rule that use of the patented

9  device is forbidden.")

10       *Hollyanne* is further distinguishable because, in that case, the court concluded that "a mere

11  offer to donate, where a donation is ***never made***, cannot be an offer for sale." *Hollyanne*, 199

12  F.3d  at 1309 (emphasis added).  In the instant case, however, Google has licensed Android to the

13  third-party device manufacturers.  *Hollyanne* does not apply here, and Google's proposed

14  modification should be rejected.

15              **2.**        **Google's Additional Definition of Direct Infringement is Unnecessary**

16                     **in This Instruction**

     Google's proposal to add the following language regarding direct infringement to the

17  Model Instruction should also be rejected:

18

19        To prove direct infringement, Oracle must either prove that Android necessarily infringes
      an asserted claim or prove specific acts of direct infringement by others.

20       Google provides no support for this modification, and its proposed language is misplaced.

21  Google appears to have adapted this language from the MODEL PATENT JURY INSTRUCTIONS FOR

22  THE NORTHERN DISTRICT OF CALIFORNIA No. B.3.10 regarding ***inducing infringement***. ("In order

23  to prove induced infringement, [patent holder] must either prove that the [accused product]

24  necessarily infringes the [patent in suit] or prove acts of direct infringement by others that were

25  induced by [accused infringer].")  But this language is inapplicable here for several reasons.

26  First, the Model Instruction for contributory infringement adequately discloses that "[i]n order for

27  there to be contributory infringement by Google, someone other than Google must directly

28

infringe a claim of the Java-related patents; if there is no direct infringement by anyone, there can be no contributory infringement." There is no reason to go beyond this language, and doing so only causes confusion. Second, Google claims that the accused product in this case is Android, but in fact Oracle defines a much broader range of accused products, including Android and Google's Android phones. Third, Google adds a new limitation that Oracle must "prove specific acts of direct infringement by others." Neither the contributory nor the inducing Model Instruction require "specific acts." This is because Federal courts have made clear that circumstantial evidence may be presented to prove contributory and inducing infringement. *Brantingson Fishing Equip. Co. v. Shimano Am. Corp.*, 8 U.S.P.Q.2d 1669, 1675 (Fed. Cir. 1988) (Baldwin, J.; Markey, C.J. and Re, C.J. "concurring in the result only") ("[I]f there is no evidence of direct infringement, there can be no inducement of or contributory infringement"; "[D]irect infringement need not be proved by direct evidence. For purposes of § 271(b) or (c), direct infringement may be proven by circumstantial evidence. ... including evidence which shows that the accused device has no practical use other than in an infringing system."); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986), *on remand,* 666 F. Supp. 661 (D. Del. 1987), *rev'd,* 872 F.2d 407 (Fed. Cir. 1989) (inducement of infringement of a method claim of a patent may be established by circumstantial evidence that direct infringement occurs as a result of the infringer's acts).

The appropriate jury instructions regarding direct infringement are expressly discussed in proposed [Disputed] Model Instruction 33. There is no need to include additional, confusing limitations in a completely different instruction.

### 3.      Google's Reference to Components Under § 271(f) is Improper.

Google's proposal to add the following language to the Model Instruction also should be rejected:

> Finally, Google can be liable for contributory infringement only if you find that the copies of Android sold or offered for sale by Google were the same actual, tangible copies used by another person to directly infringe. If you find that the other person copies Android and uses those copies in an infringing product, then you may not find Google liable for contributory infringement. Likewise, if you find that Google sells or offers to sell only source code, you may not find Google liable for contributory infringement because source code cannot be a tangible component.

Here again, Google seeks to inject language into the jury instructions that is unnecessary and not supported. Indeed there is no compelling reason to present this extremely technical legal principle to the jury, and Google offers none.

Google appears to argue that the extraterritorial reach of U.S. patent law under 35 U.S.C. § 271(f) should also be applied to domestic infringement under 35 U.S.C. § 271(c). In Google's précis to the court, it argued that the Supreme Court's ruling in *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007) supported this position. But as Oracle explained in its response, Google is mistaken. The *Microsoft* Court never suggested that its ruling applied to § 271(c), and Google points to no authority that requires § 271(c) and § 271(f) to be treated similarly. In fact, at least one district court has specifically rejected Google's arguments:

> This Court has no reason to interpret [*Microsoft v.*] *AT&T* so expansively. One of the key concerns regarding § 271(f) is the effect of U.S. patent law on extraterritorial activities. "The traditional understanding that our patent law operates only domestically and does not extent to foreign activities … is embedded in the Patent Act itself, which provides that a patent confers exclusive rights in an invention within the United States." [*Microsoft*] at 1758 (internal questions and citation omitted). This concern does not infect § 271(c). While domestic patent laws more readily govern facilitation and inducement of infringement, § 271(f) is limited to components supplied for a combination that will be made outside the United States.

*Lucent Techs., Inc. v. Gateway, Inc.*, 509 F. Supp. 2d 912, 929-30 (S.D. Cal. 2007), *aff'd* 525 F.3d 1200 (Fed. Cir. 2008). The court in *Lucent* concluded that "[t]here is no precedent for limiting the scope of §271(c)" and deferred to "the legislature to consider whether supplying software as an 'intangible' should be exempted from § 271(c)." *Lucent*, 509 F. Supp. 2d at 930.

Google also contends that the term "component" as used in both §271(c) and §271(f) requires a similar interpretation. But the rules of statutory construction are not so rigid. As the *Lucent* court recognized, supplying a combinable "component" giving rise to extraterritorial liability under § 271(f) is different from simply selling a "component" of a patented device in the United States. Moreover, the purpose behind § 271(f) is to prevent parties from avoiding infringement in the United States under the other subparts of § 271 by shipping a patented device in small components and then assembling the components overseas. In this sense, § 271(f)

1    expands patent protection.  Google's attempt to confine §271(c) to a similar definition of

2    "component" has just the opposite effect—it severely limits the protections afforded under

3    § 271(c).

4         By offering source code and binary versions of the Android software for download and

5    installation in the United States, Google is supplying "components" of the infringing Android

6    devices and is liable as a contributory infringer under § 271(c).  Modifying the jury instruction to

7    reflect irrelevant standards will not change that.  Google's proposed modification should be

8    rejected.

9              **4.      Oracle's Proposed "Willful Blindness" Language Should be Included**

10        Oracle proposes adding "willful blindness" to the knowledge inquiry for contributory

11   infringement.  This is consistent with the Supreme Court's decision in *Global-Tech*.  In *Global-*

12   *Tech*, the Supreme Court found that Sections 271(b) and 271(c) have a common origin, are

13   ambiguous as to the intent needed to impose liability, and require the same level of knowledge.

14   *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011) ("While both the

15   language of § 271(b) and the pre-1952 case law that this provision was meant to codify are

16   susceptible to conflicting interpretations, our decision in *Aro II* resolves the question in this case.

17   In *Aro II*, a majority held that a violator of § 271(c) must know 'that the combination for which

18   his component was especially designed was both patented and infringing,' 377 U.S., at 488, 84 S.

19   Ct. 1526, and as we explain below, that conclusion compels this same knowledge for liability

20   under § 271(b).").  After determining that the same knowledge requirement applies to both

21   inducing and contributory infringement, the Court then applied willful blindness to the knowledge

22   inquiry of inducing infringement under § 271(b).  *Global-Tech*, 131 S. Ct. at 2069 ("Given the

23   long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no

24   reason why the doctrine should not apply in civil lawsuits for induced patent infringement under

25   35 U.S.C. § 271(b).")  Although the Court did not expressly apply willful blindness to

26   contributory infringement, its reasoning behind the application of willful blindness is instructive.

27   If sections 271(b) and 271(c) share the same knowledge requirement, then they must share willful

28   blindness as well.  Other courts agree.  *See, e.g,. Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*,

1   No. 10 C 715, 2011 U.S. Dist. LEXIS 99415, at *13 (N.D. Ill. Sept. 2, 2011) ("As noted above, in

2   *Global-Tech* the Supreme Court established that the plaintiff must show the alleged infringer

3   must have knowledge of the patent at issue (or at least 'willful blindness' to the patent) and

4   knowledge that the infringer's product infringed on that patent to prove a claim for contributory

5   infringement (35 U.S.C. § 271(b)) and inducing infringement (35 U.S.C. § 271(c)). *See Global-*

6   *Tech*, 131 S. Ct. at 2068-69.").

7   　　　Oracle's proposed modification, which simply inserts this basic principle, should be

8   adopted.

9   　　　　　　　**5.**　　　**All Android mobile devices are the subject of indirect infringement**

10   　　　The parties dispute which Android mobile devices are at the subject of indirect

11   infringement of the '104, '205, '476, and '720 patents.  Google's proposed language limits

12   Google's indirect liability to specific Android mobile devices: HTC Nexus One (third party

13   sales), Samsung Nexus S (third party sales), HTC Evo 4G, HTC Droid Incredible, HTC G2,

14   Motorola's Droid, and Samsung Captivate.  Oracle contends that all Android mobile devices are

15   at issue in this case.

16   　　　Oracle should be allowed to explain to the jury that Google induced and contributed to

17   third parties' direct infringement by making, using, selling, and/or offering to sell any Android

18   mobile devices.  In the Court's September 26, 2011 order, the Court explained that evidence

19   relating to Android mobile devices that were not identified in Oracle's Infringement Contentions

20   by name could be presented to the jury under certain circumstances:

21   　　　　　[A]ny grant of a motion to strike does not exclude the item at issue in the motion
　　　　　under any and all circumstances; a party who prevailed on a motion to strike may
22   　　　　　open the door to the stricken material.

23   ECF No. 464 at 7, Order Partially Granting and Partially Denying Motion to Strike Portions of

24   Mitchell Report and Vacating Hearing (September 26, 2011).  Therefore, it is inappropriate for

25   Google to try to limit the jury instructions on indirect infringement to only the Android mobile

26   devices specifically mentioned in Oracle's Infringement Contentions by name.  We have yet to

27

28

1    see what evidence will be admitted at trial.  The Court should instruct the jury on indirect

2    infringement without limiting it to seven particular Android mobile devices.

3           In addition, with all due respect to the Court's orders issued on September 26, 2011 (ECF

4    No. 464) and October 5, 2011 (ECF No. 486), Oracle maintains that it complied with the Patent

5    Local Rules and disclosed how Google indirectly infringes the patents-in-suit.  Patent Local Rule

6    3-1(d) requires the following (emphasis added):

7           For each claim which is alleged to have been indirectly infringed, ***an
       identification of any direct infringement and a description of the acts of the***
8       ***alleged indirect infringer that contribute to or are inducing that direct***
       ***infringement***.  Insofar as alleged direct infringement is based on joint acts of
9       multiple parties, the role of each such party in the direct infringement must be
       described.
10

11   Oracle identified the third parties who directly infringe the '104, '205, '476, and '720 patents,

12   because Oracle's Infringement Contentions explained that the direct infringers "copy, sell,

13   distribute, re-distribute, and use products that embody or incorporate" infringing portions of

14   Android.  Trial Ex. 3071 at 7, Oracle's Second Supplemental Infringement Contentions.  In

15   addition, Oracle accused "other mobile devices running Android" as directly infringing the

16   patents-in-suit and even identified representative third-party Android devices.  (*Id.* at 2.)

17   Therefore, Oracle's Infringement Contentions provided sufficient notice that Oracle accuses

18   Google of inducing and contributing to third-party's direct infringement concerning any Android

19   mobile devices, and the jury should be instructed accordingly.

20          **L.        Disputed Jury Instruction No. 39 re Patent – Willful Blindness**

21          As discussed in the contributory and inducing infringement sections above, willful

22   blindness may be used to satisfy the knowledge requirement of contributory and inducing

23   infringement.  Oracle's proposed instruction on this point comes directly from the Supreme

24   Court's opinion in *Global-Tech*.  *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060

25   (2011).

26          In *Global-Tech*, the Supreme Court held that there were two basic requirements for willful

27   blindness:  "(1) the defendant must subjectively believe that there is a high probability that a fact

28   exists and (2) the defendant must take deliberate actions to avoid learning of that fact."  *Global-*

1    *Tech*, 131 S. Ct. at 2070.  The Court went on to find that "a willfully blind defendant is one who

2    takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost

3    be said to have actually known the critical facts."  *Global-Tech*, 131 S. Ct. at 2070-71.  Oracle's

4    proposed instruction on willful blindness maps the Supreme Court's holding in *Global-Tech*.

5           Google provides no alternative proposed instruction, but instead argues that Oracle's

6    proposed construction incorrectly imposes a duty of care.  Google contends that the Federal

7    Circuit in *Seagate* removed the duty of care from the willfulness analysis.  Google is wrong.  The

8    Supreme Court issued its opinion on *Global-Tech* in 2011, well after the 2007 Federal Circuit

9    decision in *Seagate*.  Moreover, *Seagate* related to willfulness of patent infringement generally,

10   not willful blindness.  The *Global-Tech* opinion (and Oracle's proposed instruction), specifically

11   lays out the willful blindness inquiry for contributory and inducing infringement under 35 U.S.C.

12   § 271(b) and § 271(c).

13          In *ePlus*, the U.S. District Court for the Eastern District of Virginia delivered a willful

14   blindness instruction to the jury.  *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2011 WL

15   3584313, at *4 (E.D. Va. Aug. 12, 2011) ("The Supreme Court found no reason why willful

16   blindness should not apply in civil actions for induced patent infringement under § 271(c), and

17   determined that 'a willfully blind defendant is one who takes deliberate actions to avoid

18   confirming a high probability of wrongdoing and who can almost be said to have actually known

19   the critical facts.'") (citation omitted).  Arguably, the *ePlus* court's jury instruction imposes more

20   of a duty of care than Oracle's proposed construction: "Knowledge of the patent may be

21   established by a finding that [the alleged infringer] had actual knowledge of the patent or that [the

22   alleged infringer] deliberately disregarded a known risk that ePlus had a protective patent."

23   *ePlus,* 2011 WL 3584313, at *5.  Oracle's proposed instruction should be granted.

### M.    Disputed Jury Instruction No. 40 re Patent – Willful Infringement

#### 1.    Willfulness only requires awareness of the patent portfolio, rather than knowledge of the specific patents.

26          Google proposes to add "In addition, to prove willful infringement of any of the asserted

27   patents, Oracle must persuade you that it is highly probable that, prior to the filing date of the

complaint, Google acted with reckless disregard of the claims of that specific patent.  General

knowledge of potential patent rights does not suffice; Google must have been aware of the patent

itself in order to be found to willfully infringe." Google provides no support for this modification.

Here, Google is adding several limitations that are not currently in the Model Instruction.  In

particular, Google is asking the Court to require Oracle to show that "Google must have been

aware of the patent itself in order to be found to willfully infringe."  Indeed, Federal courts

disagree with Google's proposed modification, and have found that knowledge of the patents is

not necessarily required.  *Krippelz v. Ford Motor Co.*, 636 F. Supp. 2d 669, 671 n.2 (N.D. Ill.

2009) ("Knowledge of [a] patent is not the same thing as knowledge of the high likelihood that

one's actions constituted infringement of a valid patent. However, one is far more likely to know

of the infringement risk if one knows of the patent."); *PalTalk Holdings, Inc. v. Microsoft Corp.*,

No. 2:06-CV-367 (DF), 2009 U.S. Dist. LEXIS 131087, at *6-7 (E.D. Tex. Feb. 2, 2009).  In

*PalTalk*, defendants submitted a motion for summary judgment on the basis that it had no

knowledge of the specific patents-in-suit prior to the lawsuit.  Patentee responded by presenting

circumstantial evidence to show that defendant had knowledge of the patents-in-suit and their

related technology.  *PalTalk*, 2009 U.S. Dist. LEXIS 131087, at *6-7.  The court found that

"knowledge may be actual or constructive.  *See In re Seagate*, 497 F.3d at 1371 (constructive

knowledge may satisfy the '*should have known* of an objectively high risk of infringement' test)."

*Id*. at *5.  Patentee identified the fact that defendant entertained the prospect of licensing

patentee's portfolio, talks about possible mergers, and such.  *Id*. at *6-7.  The patentee contended

that "these events demonstrate that [defendant] was aware both of the innovative characteristics

of [patentee's] technology and [its] development of a patent portfolio."  *Id*.  The court held that

"[a] reasonable jury could find based on the direct and circumstantial evidence presented that

[defendant] had actual knowledge of the patents-in-suit."  *Id*. at *7.

   Further, Oracle's proposed instruction matches the Federal Circuit's language in *Seagate*.

The Federal Circuit held that "objective recklessness" requires that the patentee show that "the

infringer acted despite an objectively high likelihood that its actions constituted infringement of *a

valid patent*."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (emphasis added).

1    Further, the *Seagate* court found that "[t]he state of mind of the accused infringer is not relevant

2    to this objective inquiry."  *Id.*  Therefore, Google's proposed modification should be denied.

3                    **2.        Patent does not have to be valid and enforceable.**

4           Google proposes modification to the Model Instruction to add a requirement that "Google

5    … knew or should have known that the patent in question was valid and enforceable."  As

6    discussed above, Oracle need not show that Google had knowledge of a specific patent to satisfy

7    the "objective recklessness" prong of the willfulness analysis.  Oracle proposed instruction is the

8    Federal Circuit's Model Instruction which specifically cites to *Seagate*.  In *Seagate*, the Federal

9    Circuit held that "objective recklessness" requires that the patentee show that "the infringer acted

10   despite an objectively high likelihood that its actions constituted infringement of *a valid patent*."

11   *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (emphasis added).  The court in

12   *Seagate* did not require that the knowledge be of an enforceable patent.  Patent validity and patent

13   enforceability are not the same things.  Google provides no support for why "enforceable" should

14   be added to this instruction.  Therefore, Google's proposed modification should be denied.

15                   **3.        Willfulness belongs in the liability phase of trial.**

16          If this Court bifurcates the trial into liability and damages phases, the issue of willful

17   infringement should be tried during the liability phase.  There is a significant overlap between the

18   evidence proving infringement and willful infringement.  For example, numerous internal Google

19   documents on Android's architecture also discuss aspects of the Java platform and reveal

20   Google's knowledge of the need to take a Java license.  Oracle also intends to examine the same

21   Google witnesses for both infringement and willful infringement.

22          The evidence of willful infringement is relevant to other issues that the jury must decide in

23   the liability phase as well.  Oracle asserts that Google is liable for both direct and indirect

24   infringement of the Oracle patents.  While the parties do not agree on the instructions for

25   willfulness or indirect infringement, they do agree that both require proof of knowledge and

26   intent.

27          Further, Google is asserting equitable defenses to infringement.  Google has failed to

28   articulate factual bases for these defenses, but if Google is allowed to present them during the

1    liability phase, Google's evidence and Oracle's in response will bear directly on the issue of

2    willfulness.  *See Haworth, Inc. v. Herman Miller, Inc.*, No. 1:92CV877, 1993 WL 761974, at *3-

3    4 (W.D. Mich. July 20, 1993) (willfulness to be tried in liability phase along with defendant's

4    equitable defenses since proof of willful infringement could provide a basis for the plaintiff to

5    negate the defendant's equitable defenses); *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, No.

6    CV 92-4698 JGD, 1994 WL 471414, at *2 (C.D. Cal. Mar. 3, 1994), *aff'd on other grounds*, 103

7    F.3d 1571 (Fed. Cir. 1997) (willfulness bears on equitable estoppel defense and thus should be

8    tried with liability).

9            These closely related issues would become intertwined at trial.  *See Kos Pharms., Inc. v.*

10   *Barr Labs., Inc.*, 218 F.R.D. 387, 393 (S.D. N.Y. 2003) ("questions regarding infringement and

11   willfulness cannot always be neatly disaggregated into distinct evidentiary foundations grounded

12   on entirely different witnesses and documents"); *THK Am., Inc. v. NSK Co. Ltd.*, 151 F.R.D. 625,

13   629 (N.D. Ill. 1993) ("A willfulness determination . . . is a finding of fact inextricably bound to

14   the facts underlying the alleged infringement.").  If the issue of willful infringement is left for the

15   damages phase, Oracle will need to present much of the same evidence again.  Accordingly,

16   trying both infringement and willful infringement issues during the liability phase would promote

17   judicial efficiency, conserve judicial resources, and respect the time commitment asked of the

18   jurors.

19           **N.      Disputed Jury Instruction No. 41 re Patent – Burden of Proof**

20           Oracle objects to Google's additional language on its burden of proving that the asserted

21   patent claims are invalid.  Google proposes that the jury decide whether Google met its burden of

22   establishing "factual matters concerning invalidity" even though it has the burden of establishing

23   invalidity as a whole.  *See Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1373 (Fed.

24   Cir. 2010).

25           Instead, the Court should use Oracle's proposed instruction, which tracks the Federal

26   Circuit's Model Instruction and states: "To prove that any claim of a patent is invalid, [Google]

27   must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction

28   that the claim is invalid."  Oracle is willing to agree to use the Northern California's Model

1    Instruction, which has a similar language but uses the phrase "highly probable" instead of "clear

2    and convincing evidence."  Google's additional language does not appear in the Federal Circuit's

3    or the Northern California's Model Instructions, and would likely mislead and confuse the jury.

4           First, Google's proposed instruction suggests that Google has the burden of establishing

5    only "factual matters concerning invalidity" and ignores the fact that Google has the burden of

6    establishing invalidity as a whole by clear and convincing evidence.  The additional language

7    could mislead the jury into believing that a lower standard of proof is applicable to Google's

8    invalidity defense.

9           Second, Google's proposed instruction would confuse the jury as to how it should decide

10   whether an asserted patent claim is anticipated by prior art.  Anticipation is a factual

11   determination.  *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007).

12   Therefore, the jury's anticipation inquiry would only involve "factual matters."  The additional

13   language expressly calling out such "factual matters" could mislead the jury into thinking that the

14   anticipation inquiry requires non-factual analysis.

15          Third, Google's proposed instruction would confuse the jury as to how it should decide

16   whether an asserted patent claim is obvious in view of prior art.  Determination of obviousness

17   under 35 U.S.C. § 103 involves several factual inquiries: the scope and content of the prior art;

18   differences between the prior art and the claim at issue; and the level of ordinary skill in the

19   pertinent art.  *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).  The jury would be confused as

20   to how it should render a verdict of nonobviousness or obviousness if it were instructed to

21   separate its role to find facts from the role of trial judge in reaching the ultimate legal conclusion

22   of obviousness.  Separating the two roles should be left for the Court.  A far simpler task for the

23   jury is to render a nonobviousness or obviousness verdict based on its factual findings.  "[W]hen

24   a jury returns a general verdict, the law presumes the existence of fact findings implied from the

25   jury's having reached that verdict."  *R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1516

26   (Fed. Cir. 1984).  There is no need to specifically ask the jury whether Google proved the facts

27   underlying the nonobviousness or obviousness determination, for there are too many disputed

28   issues to put into a special verdict form.  Neither Oracle's nor Google's proposed verdict forms

include a list of any "factual matters concerning invalidity" that the jury is to decide.  Google's requested jury instructions do not match the approach that it took in its verdict form.  Oracle's instruction hews closely to the form instruction and will help, not confuse, the jury.

Accordingly, Google's proposed additional language regarding the burden of proof as to invalidity should be denied.

### O.      Disputed Jury Instruction No. 43 re Patent – Invalidity – Obviousness

Obviousness forms the bulk of Google's patent invalidity case against Oracle.  Google argues obviousness against *17* of Oracle's 26 patent claims, covering five of the six patents-in-suit.  But Google's proposed jury instructions do not do enough to guide the jury on the analysis required to decide obviousness.  There is no question that obviousness is a fact-intensive inquiry.  Yet Google's proposed jury instructions omit the numerous factual predicates necessary to reach a determination of obviousness (*e.g.*, that the jury must avoid hindsight bias).

In comparison, Google's proposed verdict form on obviousness is completely unwieldy and yet still misses the complexities underlying factual determinations in support of an ultimate conclusion on obviousness (*e.g.*, weight and credibility determinations).

Oracle proposes a simple verdict form question asking the jury to decide validity, supported by a full set of jury instructions tracking the Federal Circuit Model Patent Jury Instructions (dated Feb. 18, 2010) and Alternative 2 of the Model Patent Jury Instructions for the Northern District of California (dated Nov. 29, 2007).  The aim of this approach is to have the jury reach a defensible conclusion with guidance sufficient to capture the factual inquiries needed to make an obviousness determination.

### 1.      Google's Proposed Instructions Fail to Adequately Instruct the Jury on the Factual Predicates Legally Necessary to Support a Finding of Obviousness.

Determination of obviousness is a complex inquiry with many factual predicates.  Laying out the *Graham* factors, the Supreme Court defined the framework for applying the statutory language of § 103 as follows:

> "Under § 103, the scope and content of the prior art are to be determined;
> differences between the prior art and the claims at issue are to be ascertained;
> and the level of ordinary skill in the pertinent art resolved. Against this

1
2
3

> background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."

4   *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere*

5   *Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).

6        The question of obviousness turns on numerous factual inquiries underlying each of the

7   *Graham* factors.  *See, e.g.*, *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir.

8   2007) (factors to consider in determining the level of ordinary skill); *In re Icon Health & Fitness,*

9   *Inc.*, 496 F.3d 1374, 1379-80 (Fed. Cir. 2007) (standards for determining scope and content of

10  prior art).  The Federal Circuit Model Patent Jury Instructions (dated Feb. 18, 2010) explain to the

11  jury the factual predicates necessary to make an obviousness determination (pp. 59-63); the

12  Model Patent Jury Instructions for the Northern District of California (dated Nov. 29, 2007)

13  provide an example that tracks the Federal Circuit model (pp. 34-38).

14       But Google's proposal on obviousness omits many jury instructions necessary to make a

15  determination of obviousness that is consistent with the law.  For example, in asking the jury to

16  determine whether the claimed invention of the patents-in-suits was obvious, nowhere does

17  Google include the following instructions (as excerpted from either the Federal Circuit Model

18  Patent Jury Instructions (dated Feb. 18, 2010) or Model Patent Jury Instructions for the Northern

19  District of California (dated Nov. 29, 2007)):

20  • "Do not use hindsight, *i.e.*, consider only what was known at the time of the invention."
    This principle was reiterated in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 421
21  (2007) ("A factfinder should be aware, of course, of the distortion caused by hindsight
    bias and must be cautious of arguments reliant upon ex post reasoning.") (citing *Graham*,
22  383 U.S., at 36 (warning against a "temptation to read into the prior art the teachings of
    the invention in issue" and instructing courts to "'guard against slipping into use of
23  hindsight'") (internal citation omitted)).

24  • "Keep in mind that the existence of each and every element of the claimed invention in
    the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on
25  building blocks of prior art."  As the Supreme Court explained:

26         As is clear from cases such as *Adams*, a patent composed of several
           elements is not proved obvious merely by demonstrating that each of its
27         elements was, independently, known in the prior art. Although common
           sense directs one to look with care at a patent application that claims as
28         innovation the combination of two known devices according to their

established functions, it can be important to identify a reason that would
have prompted a person of ordinary skill in the relevant field to combine
the elements in the way the claimed new invention does. This is so
because inventions in most, if not all, instances rely upon building
blocks long since uncovered, and claimed discoveries almost of
necessity will be combinations of what, in some sense, is already known.

*KSR*, 550 U.S. at 418-19.

- "In considering whether a claimed invention is obvious, you may but are not required to
find obviousness if you find that at the time of the claimed invention [or the critical date]
there was a reason that would have prompted a person having ordinary skill in the field of
[the invention] to combine the known elements in a way the claimed invention does,
taking into account such factors as (1) whether the claimed invention was merely the
predictable result of using prior art elements according to their known function(s); (2)
whether the claimed invention provides an obvious solution to a known problem in the
relevant field; (3) whether the prior art teaches or suggests the desirability of combining
elements claimed in the invention; (4) whether the prior art teaches away from combining
elements in the claimed invention; (5) whether it would have been obvious to try the
combinations of elements, such as when there is a design need or market pressure to solve a
problem and there are a finite number of identified, predictable solutions; and (6) whether the
change resulted more from design incentives or other market forces. To find it rendered the
invention obvious, you must find that the prior art provided a reasonable expectation of
success. Obvious to try is not sufficient in unpredictable technologies." *See, e.g., KSR*, 550
U.S. at 414 ("That it might have been obvious to try the combination of Asano and a
sensor was likewise irrelevant, in the court's view, because " ' "[o]bvious to try" has long
been held not to constitute obviousness.'"") (citations and quotations omitted); *id.* at 419-
20; *see also*, *e.g.*, *In re Brimonidine Patent Litig.; Allergan, Inc. v. Exela Pharmsci Inc.*,
643 F.3d 1366, 1376 (Fed. Cir. 2011) ("Apotex's "obvious to try" arguments, based on
KSR, are unavailing in light of the district court's factual findings.").

- "The presence of any of the [appropriate list of non-obviousness objective evidence] may be
considered by you as an indication that the claimed invention would not have been obvious at
the time the claimed invention was made, and the presence of the [appropriate list of
obviousness objective evidence] may be considered by you as an indication that the claimed
invention would have been obvious at such time. Although you should consider any evidence
of these factors, the relevance and importance of any of them to your decision on whether the
claimed invention would have been obvious is up to you." *See, e.g., Hynix Semiconductor
Inc. v. Rambus Inc.*, 645 F.3d 1336, 1353 (Fed. Cir. 2011) ("First, in *KSR*, 550 U.S. at
419, the Supreme Court noted that "market demand" is a legitimate consideration in
determining obviousness. Lowering cost is a ubiquitous market demand, and the fact that
a combination is expected to increase cost has some bearing on the obviousness of that
combination."); *id.* ("Second, the district court's statement referring to the ease of
recognizing the benefits of a combination was to explain why the 'incentive to combine
existing pieces of circuitry' was not controlling, i.e., because it was unclear whether the
combination would be beneficial or detrimental. How well a combination is expected to
work is certainly a legitimate consideration in an obviousness inquiry."); *Pentec, Inc. v.
Graphic Controls Corp.*, 776 F.2d 309, 315 (Fed. Cir. 1985) ("Indeed, evidence of
secondary considerations may often be the most probative and cogent evidence in the
record. It may often establish that an invention appearing to have been obvious in light of
the prior art was not.") (citation omitted).

- "In considering whether the claimed invention was obvious, you must first determine the
scope and content of the prior art. The scope and content of prior art for deciding whether the
invention was obvious includes prior art in the same field as the claimed invention, regardless

of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine if familiar so as to solve the problem, like fitting together the pieces of a puzzle." *KSR*, 550 U.S. at 420; *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1379-80 (Fed. Cir. 2007); *Princeton Biochems., Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1339 (Fed. Cir. 2005).

- "When a party attacking the validity of a patent relies on prior art which was specifically considered by the Examiner during the prosecution of the application leading to the issuance of the patent, that party bears the burden of overcoming the deference due a qualified government agency official presumed to have performed his or her job." *See, e.g.*, *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F. 2d 1350, 1359 (Fed. Cir. 1984) ("When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.")

Google's obviousness proposal fails to include these important instructions and should be rejected.

For these reasons, Google's proposed jury instructions are inadequate to aid the jury in making a proper determination of obviousness. Oracle's instructions track the Federal Circuit Model Patent Jury Instructions (dated Feb. 18, 2010) and Alternative 2 of the Model Patent Jury Instructions for the Northern District of California (dated Nov. 29, 2007). Oracle's proposed instructions, in contrast to Google's, adhere to the legal requirements necessary to explain the obviousness inquiry to the jury. Therefore, Oracle's instructions should be adopted.

### 2. Google's Complex Verdict Form on Obviousness is Unduly Burdensome to the Jury.

Google's proposed verdict form on obviousness exhibits the following pattern (footnote in the original):

> 20. The ultimate legal conclusion on the obviousness question will be made by the court. However, in order for the court to do so, you must answer the following preliminary factual questions:[1]

---

[1] This formulation of the verdict form for obviousness is taken from the Sample Verdict Form from the Model Patent Jury Instructions for the Northern District of California corresponding to the use of Alternative 1 of the model instruction regarding Obviousness, which Google proposes adopting.

1      '720 Patent

2      a. What was the level of ordinary skill in the field that someone would have had at the time the claimed invention was made? (check the applicable answer)

3

4                _____[Oracle's contention]
               _____[Google's contention]

5                _____[other, specify ]

6      b. What was the scope and content of the prior art at the time of the claimed invention? (check the applicable answer)

7

8                _____[set forth what Google has offered as the invalidating prior art]
               _____[set forth what Oracle asserts was within the scope and content of the prior art]

9                _____[other, specify ]

10      c. What difference, if any, existed between the claimed invention and the prior art at the time of the claimed invention?

11

12                _____[set forth Google's contention as to the difference]
               _____[set forth Oracle's contention as to the difference]

13                _____[other, specify]

14      d. Which of the following factors has been established by the evidence with respect to the claimed invention: (check those that apply)

15      [verdict form should list only those factors for which a *prima facie* showing has been made]:

16

17                _____commercial success of a product due to the merits of the claimed invention

18                _____a long felt need for the solution that is provided by the claimed invention

19                _____unsuccessful attempts by others to find the solution that is provided by the claimed invention

20                _____copying of the claimed invention by others unexpected and superior results from the claimed invention

21                _____acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention

22                _____independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it

23

24                _____[other factor(s) indicating obviousness or nonobviousness—describe the factor(s) ]

25 Google adopted the Sample Verdict Form from the Model Patent Jury Instructions for the

26 Northern District of California corresponding to the use of Alternative 1 of the model instruction

27 regarding obviousness, but there is a serious problem with that approach: that sample addresses

28 **one patent claim**.

1    In this case, Google's obviousness verdict form must be expanded to cover *17* claims of *5*

2    patents-in-suit in light of *12* alleged prior art references – some of which are voluminous – in six

3    combinations.  In other words, had Google actually listed its proposed verdict form questions for

4    each of its obviousness defenses, Google's proposed verdict form would have been 17 pages

5    longer.  Had Google listed each combination for each patent claim at issue, Google's proposed

6    verdict form would be 21 pages longer.

7    Google's verdict form is already 15 pages long without these additions.  A 36-page verdict

8    form is completely unwieldy and overly burdensome on a jury already tasked with a factually

9    complex and difficult inquiry.

10          **3.     Google's Complex Verdict Form on Obviousness Does Not Properly
                     Account for the Factual Inquiries Underlying an Obviousness
11                   Determination.**

12    Google's proposed verdict form on obviousness misses the complexities underlying

13    factual determinations in support of an ultimate conclusion on obviousness.  Obviousness is a

14    question of law based on underlying findings of fact.  *KSR*, 550 U.S. at 427 ("The ultimate

15    judgment of obviousness is a legal determination."); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d

16    963, 968 (Fed. Cir. 2006) ("Because patents are presumed to be valid, *see* 35 U.S.C. § 282, an

17    alleged infringer seeking to invalidate a patent on obviousness grounds must establish its

18    obviousness by facts supported by clear and convincing evidence.") (citation omitted).

19          But the division of labor between the Court and the jury to meet this legal standard is

20    anything but clear-cut.  Google's unwieldy obviousness verdict form is inadequate because the

21    underlying questions of fact to support an obviousness determination are not all amenable to

22    yes/no answers.  For example, the "scope and content of the prior art" is not a yes/no inquiry and

23    must be determined under *Graham*, 383 U.S. at 17-18.  The dispute between the parties is not

24    whether "Reference X" is or is not prior art, the dispute between the parties is what the disclosure

25    of "Reference X" *means*, and that is not reflected in the verdict form.  Likewise, secondary

26    considerations such as commercial success, copying, acceptance by others are not amenable to a

27    yes/no answer.  *How* successful were the products embodying the invention?  *How many* others

28    copied the invention?  *How much* praise did the invention receive, and *how many* others licensed

1    it?  Asking jurors to merely side with patent holder or alleged infringer does not resolve the issue

2    because the evidence relevant to an obviousness determination must be weighed, with the jury

3    making credibility determinations.  *See, e.g.*, *Novo Nordisk A/S v. Becton Dickinson & Co.*, 304

4    F.3d 1216, 1219 (Fed. Cir. 2002) ("Novo stresses its evidence of commercial success and

5    copying. Although Novo points to the absence of documentary evidence of motivation and

6    criticizes the presentation of 'conclusory' testimony by Becton's witnesses, these are matters of

7    weight and credibility.").  For another example, jurors must weigh the relative strengths of

8    competing secondary considerations of obviousness and non-obviousness.  *See, e.g.*, *Specialty*

9    *Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988) ("Weight was given to the

10   commercial success of the earplugs and the court determined (after considering the alternative

11   explanations for success advanced by Specialty) that this success was due to the merits of the

12   invention."); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 317 (Fed. Cir. 1985) ("GC's

13   copying argument can, accordingly, be given little weight.").  For these reasons, Google's 21-

14   page special verdict form for obviousness is ***too short***.  It does not do enough to help the jury

15   make all of the factual findings needed for obviousness.

16      Because of these practical problems, district courts have submitted the ultimate question

17   of obviousness to the jury.  *See, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336,

18   1353 (Fed. Cir. 2011) (appeal from the Northern District of California) ("The district court

19   submitted the question of obviousness of claims 24 and 33 of the '918 patent; claim 33 of the

20   '120 patent; claims 9, 28, and 40 of the '916; and claim 16 of the '863 patent to the jury."); *Novo*

21   *Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1218 (Fed. Cir. 2002) ("The jury

22   concluded that the '535 and '323 patents are invalid on the ground of obviousness, in view of

23   several references offered by Becton.").  Indeed, there is no need to adopt Google's approach.

24   For further reasons described below, Oracle proposes taking a simple approach of adopting the

25   form obviousness jury instructions from the Federal Circuit Model Patent Jury Instructions (dated

26   Feb. 18, 2010) and Alternative 2 of the Model Patent Jury Instructions for the Northern District of

27   California (dated Nov. 29, 2007) and a simple verdict form question that captures an obviousness

28   determination that is both true to the law and within the jury's ability to understand.

### 4. A Simple Verdict Form Question on Invalidity Is an Appropriate Solution.

Oracle proposes that a simple verdict form question asking the jury to decide validity is the way to go, assuming the jury is given a proper instruction on obviousness.

In fact, courts have adopted the approach of asking the jury the determine anticipation and obviousness in the form of a single question, *e.g.*:  "Did Defendant prove by clear and convincing evidence that X claims of Y patent are invalid?"  *See, e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 845 (Fed. Cir. 2010) ("The verdict form did not require the jury to make separate findings for the different pieces of prior art. Instead, the form asked: 'Did Microsoft prove by clear and convincing evidence that any of the listed claims of the '449 patent are invalid?' The jury was instructed to answer 'yes' if it found a particular claim invalid, but otherwise answer 'no.' The jury found all the asserted claims not invalid."); *id.* at 846 ("Because we must view the evidence in the light most favorable to the verdict, all of these questions must be resolved against Microsoft, and in favor of i4i.  In light of the jury's implicit factual findings, Microsoft has not established that the asserted claims would have been obvious.") (citations omitted); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1581-83 (Fed. Cir. 1986) (upholding jury verdict based on a general verdict on validity).

Here, too, a simple verdict form question asking the jury to decide validity can and should be submitted to the jury.

### P. Disputed Jury Instruction No. 46- 49 re Equitable Defenses – Equitable Estoppel, Laches, Waiver and Implied License

### 1. Equitable Issues Are For the Court, Not the Jury

Google has raised a number of equitable defenses in this case, including laches, equitable estoppel, waiver and implied license.  None of these defenses should be presented to the jury.  *See also ABB Robotics Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995) ("Being an equitable doctrine, estoppel is committed to the sound discretion of the trial judge whose decision we review under the abuse of discretion standard."); *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court."); *A. C. Aukerman Co. v. R. L. Chaides*

1   *Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) ("As equitable defenses, laches and equitable

2   estoppel are matters committed to the sound discretion of the trial judge and the trial judge's

3   decision is reviewed by this court under the abuse of discretion standard."); *Met-Coil*, 803 F.2d at

4   687 ("The sole disputed issue decided by the trial court, the existence of an implied license, is a

5   question of law."); *see also Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003)

6   ("Relevant to this case, the existence *vel non* of an implied license is a question of law that we

7   review *de novo*.").  Indeed, the parties have already stipulated in the Joint Proposed Pre-Trial

8   Conference Order that these defenses are matters reserved for the Court.  ECF No. 525 at 10, 12,

9   Parties' Joint Proposed Pretrial Order (October 13, 2011).

10   Nevertheless, Google continues to insist that the jury be instructed on these equitable

11   issues.  Google's rationale is unclear.  Equitable issues may be submitted to a jury only with the

12   consent of both parties.  And here, Oracle has not consented.  *See* Fed. R. Civ. P. 39(c); *Wang*

13   *Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997) ("The parties

14   agreed to submit Mitsubishi's implied license defense to the jury and the jury found an implied

15   license to exist").  There is simply no basis to provide the jury with additional, detailed

16   instructions that will not be useful.

17   If the Court does, however, decide to present these equitable defenses in an advisory

18   instruction to the jury, then Oracle's proposed instructions should be adopted for the reasons

19   discussed below.

**2.      Equitable Estoppel - Disputed Instruction No. 47**

21   Oracle notes the following problems with Google's proposed instruction on equitable

22   estoppel, which would be remedied by adopting Oracle's proposal instead.  First, while Google's

23   proposed instruction references the standards for equitable estoppel for both patent and copyright

24   cases, it is confusing because it does not clearly explain which standard applies to patents and

25   which applies to copyrights.  Oracle's proposed instruction, on the other hand, defines the two

26   standards separately and clearly explains the relevant differences.

27   Second, Google's instruction fails to mention the requirement that it must satisfy a duty of

28   care with respect to Oracle's copyrights.  *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100,

1   104 (9th Cir. 1960) ("The doctrine of equitable estoppel does not erase the duty of due care and is

2   not available for the protection of one who has suffered loss solely by reason of his own failure to

3   act or inquire."). Google cannot avail itself of the defense of equitable estoppel if it failed to act

4   or inquire about Oracle's copyrights. *See id.* The jury should be instructed on this point because

5   it clarifies Google's burden.

6       Third, Google's instruction improperly suggests that silence alone can create an estoppel.

7   Oracle's proposed instruction correctly explains that this is not the case. *Hemstreet v. Computer*

8   *Entry Sys. Corp.*, 972 F.2d 1290, 1295 (Fed. Cir. 1992) ("Although defendant correctly notes that

9   equitable estoppel may in some instances be based upon a misleading silence, mere silence must

10  be accompanied by some other factor which indicates that the silence was sufficiently misleading

11  as to amount to bad faith."). Moreover, Google has, in its Amended Answer, already admitted

12  that it relied on more than just Oracle's silence. ECF No. 51 at 9 ¶ 7, Google Inc.'s Answer to

13  Plaintiff's Amended Complaint for Patent Infringement and Amended Counterclaims (November

14  10, 2010) ("[T]he statements and actions of Oracle and its predecessor Sun Microsystems, Inc.

15  ("Sun") were such that it was reasonable to infer that Oracle did not intend to enforce its patents,

16  Google relied on the misleading conduct, and Google will be materially prejudiced if Oracle is

17  allowed to proceed with its claim."). Google cannot now suggest or contend that any silence of

18  Oracle was sufficient to create an estoppel.

19      Fourth, Google's proposed instruction nowhere mentions that Oracle's conduct must have

20  supported an inference by Google that Oracle did not intend to bring an infringement suit. *A. C.*

21  *Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) ("The

22  patentee's conduct must have supported an inference that the patentee did not intend to press an

23  infringement claim against the alleged infringer."). This is an important point because it clarifies

24  the nature of Google's reliance on Oracle's allegedly misleading conduct, and the elements of

25  equitable estoppel require Google to show such reliance. *See id.* at 1041.

26      Finally, Google's instruction improperly includes reference to evidentiary harm.

27  Although this language is taken from the Model Instructions, it has no place in the instant case.

28

1   Google has not argued that it suffered evidentiary harm by relying on any alleged misleading

2   conduct.  Including such an instruction will only confuse the jury on a non-issue.

3           **3.**        **Laches - Disputed Instruction No. 46**

4           **a.**        **The Facts of the Case Do Not Support a Laches Defense**

5           Oracle contends that it is not necessary to provide a jury instruction on laches here, as

6   Google has not articulated facts sufficient to support this defense.  Laches requires that Oracle's

7   delay in filing the lawsuit was unreasonable and inexcusable. Additionally, any delay by Oracle is

8   measured from the time Oracle discovered, or should have discovered, that Google was infringing

9   Oracle's patents.  Oracle's actions in determining that Google infringed its patents and

10  subsequent filing of this lawsuit fall far short of a laches claim.  For example, Oracle was

11  obligated to obtain and examine Android source code to determine that it infringed.  Yet Google

12  did not make this code available until October of 2008.  And Oracle brought suit in August of

13  2010.  Thus, less than two years elapsed between the time that Oracle could have known that

14  Android infringed, and the time that Oracle brought suit.  This is hardly an unreasonable amount

15  of time.  Furthermore, Oracle's use of that time, to examine Android source code, was not

16  unreasonable.  Google has not presented facts showing otherwise.  A laches claim in this case is

17  simply not possible.

18          If, however, the Court offers such an instruction, Oracle offers its proposed instruction

19  below and asks that the actual instruction be further tailored to what proof Google purports to

20  offer at trial in support of this defense.

21          **b.**        **Oracle's Proposed Instruction More Accurately Addresses The
    Period of Delay and Relevant Justifications.**

22

23          Neither the Model Instructions nor Google's proposed instructions advise the jury on how

    to measure the time period of delay.  Oracle's proposed instruction does.  For both patent and

24
    copyright, delay is measured from the time that Oracle knew, or should have known, of Google's

25  infringement.  *A. C. Aukerman*, 960 F.2d at 1032 ("[T]he plaintiff delayed filing suit for an

26  unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably

27  should have known of its claim against the defendant."); *Kling v. Hallmark Cards Inc*., 225 F.3d

28

1030, 1036 (9th Cir. 2000) ("[A]ny delay is to be measured from the time that the plaintiff knew or should have known about the potential claim at issue."). Because unreasonable delay is one of the elements necessary to prove laches, the jury should be instructed on how to measure it.

Google's proposed instruction also misleads the jury as to the standard for unreasonable delay in copyright. Google's instruction acknowledges the six year presumption applicable to laches in the patent context, but then gives another fixed time period – three years – for copyright. While Google does not state outright that a fixed three-year presumption applies, its proposed instruction strongly suggests it. But unlike patents, there is not fixed time period for laches in a copyright case. Google's reference to *Danjaq LLC v. Sony Corp.* on this point is inapposite. 263 F.3d 942 (9th Cir. 2001). In *Danjaq*, the court considered whether a copyright infringement claim brought within the time period for the statute of limitations could nonetheless be barred by laches. *See id.* at 955 ("The very purpose of laches as an equitable doctrine – and the reason that it differs from a statute of limitations – is that the claim is barred because the plaintiff's delay occasioned the defendant's prejudice."). This is not an issue in the present case. Moreover, the copyright claims in *Danjaq* were delayed between nineteen and thirty-six years. *See id.* at 952. Regardless, the *Danjaq* court observed that finding laches within three years, the copyright limitations period, requires "extraordinary circumstances." *Id.* at 954. Google's proposed instructions mislead the jury by making this extraordinary case an ordinary instruction.

Unreasonable delay, for the purposes of laches, is not predicated upon a certain time period. Rather, a finding of laches requires an investigation into whether the delay was unreasonable. *See id.* at 951; *Winn v. Opryland Music Group, Inc.*, 22 Fed. Appx. 728, 729 (9th Cir. Cal. 2001). Oracle's proposed instruction accurately reflects the law and correctly instructs the jury on this point

Lastly, Oracle objects to Google's suggestion that a particular species of delay (*i.e.* if a company delays while considering whether it would be profitable to bring suit) is impermissible. Some courts have held that this kind of delay will not excuse laches (*see Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1014 (7th Cir. 1970)), while others have found that this profitability provides a valid excuse. *Cf. Tripp v. United States*, 406 F.2d 1066, 1071 (Ct. Cl.

1   1969) ("[P]laintiff, an individual, could reasonably delay bringing suit until he could determine

2   that the extent of possible infringement made litigation monetarily ripe.").  Given the uncertainty

3   and the fact that the jury will already have an adequate instruction--both Oracle's and Google's

4   proposed instructions agree that there must be unreasonable delay and that delay on the part of

5   Oracle may be justified in some instances—there is no reason to provide additional, confusing

6   detail.

7               **4.      Disputed Jury Instruction No. 48 - Waiver**

8                    **a.      The Facts Do Not Support a Waiver Defense.**

9        As a threshold matter, Oracle contends that it is not necessary to provide an instruction on

10  waiver, because Google has not articulated facts sufficient to support this defense.  On the patent

11  claims, Google cites *Qualcomm* in support of its instruction.  But *Qualcomm* is inapplicable

12  because the court in that case dealt with a failure to disclose patents in a standards- setting

13  context.  *Qualcomm*, 548 F.3d. at 1008.  Oracle does not face a similar duty on its Java-related

14  patents.

15       Google's copyright argument fares no better.  Google cites to *United States v. King*

16  *Features Entertainment, Inc.*, where the Ninth Circuit concluded that "the[] facts demonstrate that

17  there is no genuine issue remaining with respect to waiver."  843 F.2d 394, 399 (9th Cir. 1988).

18  The court there held that the appellant "did not intentionally relinquish any of its known rights,"

19  as evidenced by the appellant's interpretation of a copyright license agreement, documented in an

20  internal memorandum and handwritten notes.  In the instant case, there are no facts showing that

21  Oracle intended to waive its known rights in the Java-related copyrights.

22               **b.      Any Instruction Should Include Only "True Waiver" as**
                          **"Implied Waiver" Does Not Apply in This Case**
23

24       Oracle also objects to Google's proposed jury instruction because it improperly instructs

25  the jury as to implied waive*r*.  As the Ninth Circuit found in *Qualcomm*, "the application of

26  implied waiver in the [standards-setting organization] context where the district court found

27  intentional nondisclosure in the face of a duty to speak" warrants an instruction on implied

28  waiver.  *Qualcomm*, 548 F.3d at 1021-22. The facts of this case are completely different.  Here,

1    there was no silence in the face of an affirmative duty to speak from which the jury can infer that

2    Oracle intended to relinquish its intellectual property rights.

3         Because "implied waiver" does not apply, at most, the waiver instruction should describe

4    "true waiver."  In fact, because the jury may be evaluating various equitable defenses that sound

5    similar (*e.g.*, waiver, laches, estoppel, implied license), an instruction regarding "true waiver"

6    may help to distinguish waiver from the other equitable defenses.  Language such as the

7    following, which is derived from the Court's ruling in the *Novell* case, would be useful:  "Waiver

8    exists where there is unequivocal intent to knowingly and intentionally waive one's rights to

9    claim infringement of its intellectual property."  *Novell, Inc. v. Weird Stuff, Inc.*, No. C92-20467

10   JW/EAI, 1993 U.S. Dist. LEXIS 6674, at *54 (N.D. Cal. May 14, 1993) ("Novell manifested its

11   unequivocal intent to discard the disputed disk and to keep the disks off the market, and therefore,

12   did not knowingly and intentionally waive its right to claim copyright infringement."); s*ee also*

13   *Adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1074-75 (D. Or. 2008)

14   (because defendant did not proffer evidence of a "clear, decisive and unequivocal" intent by

15   plaintiff to relinquish any of its trademark or trade dress rights, there was no waiver) (quoting

16   *United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-03 (9th Cir. 1995)).

17        Oracle notes that to the extent an instruction on waiver is offered at all, the last sentence

18   of Google's instruction—that "[w]aiver does not require any act or conduct by the other party"—

19   contradicts this Court's holding in *Novell*, which explained that "failure to act, without more, is

20   insufficient evidence of a trademark owner's intent to waive its right to claim infringement."

21   *Novell*, 1993 U.S. Dist. LEXIS 6674, at *41, *54. *See Adidas-Am., Inc. v. Payless Shoesource,*

22   *Inc.*, 546 F. Supp. 2d 1029, 1074 (D. Or. 2008) ("Although mere silence can be a basis for a claim

23   of estoppel when a legal duty to speak exists, waiver must be manifested in an unequivocal

24   manner").

25        **5.    Disputed Jury Instruction No. 49 - Implied License**

26             **a.    The facts in this case do not support finding an implied license.**

27        Oracle objects to this proposed instruction at the outset because the facts of this case do

28   not support an implied license defense.  Implied licenses arise out of a transaction between the

parties where the patented device is the subject of a sale **by the patent owner**.  Thus, the analysis

used by courts begins with a sale, a fact which is not present in this case: Google did not buy or

even license anything from Oracle.  *See e.g.*, *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350

(Fed. Cir. 2003) ("A patentee grants an implied license to a purchaser when (1) the patentee sells

an article that has no noninfringing uses and (2) the circumstances of the sale plainly indicate that

the grant of a license should be inferred."); *Met-Coil Systems Corp. v. Korners Unlimited, Inc.*,

803 F.2d 684, 686 (Fed. Cir. 1986) ("This court set out two requirements for the grant of an

implied license by virtue of a sale of nonpatented equipment used to practice a patented

invention.  First, the equipment involved must have no noninfringing uses . . . .  Second, the

circumstances of the sale must plainly indicate that the grant of a license should be inferred")

(internal quotations omitted).  Including this instruction where no legitimate claim exists is

unnecessary and prejudicial.

> **b.**      **Oracle's Proposed Instruction More Closely Follows the Legal Standard for Implied License**

If the court nevertheless finds that a jury instruction for an implied license is warranted,

there are numerous problems with Google's proposed instruction. Oracle's instruction remedies

many of these problems and should be adopted.

First, Google improperly instructs the jury that "acts of acquiescence or acts of

misrepresentation" can constitute conduct sufficient to support an implied license.  The case law

does not support this lower threshold.  In fact, more than misleading conduct is required as this is

what sets an implied license apart from equitable estoppel.  In an implied license, the plaintiff

must have made an affirmative grant of permission to the accused infringer to use the patented

inventions or copyrighted works. *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571,

1581 (Fed. Cir. 1997) ("The primary difference between the estoppel analysis in implied license

cases and the analysis in equitable estoppel cases is that implied license looks for an affirmative

grant of consent or permission to make, use, or sell: i.e., a license.  Equitable estoppel, on the

other hand, focuses on 'misleading' conduct suggesting that the patentee will not enforce patent

1    rights.") (citations omitted).  By failing to make this distinction, Google's proposed instruction

2    conflates the standard for these very different defenses and likewise misleads the jury.

3        Second, to prove the existence of an implied license, the defendant must show that the

4    device purchased from the plaintiff has no non-infringing uses.  *Glass Equip. Dev., Inc. v. Besten,*

5    *Inc.*, 174 F.3d 1337, 1342 (Fed. Cir. 1999) ("When, as here, a party argues that the sale of a

6    device carries with it an implied license to use that device in practicing a patented invention, that

7    party has the burden to show that, *inter alia*, the purchased device has no noninfringing uses.");

8    *Met-Coil*, 803 F.2d at 686 ("First, the equipment involved must have no noninfringing uses.").

9    Google's proposed instruction omits this key component.

10       Lastly, the third paragraph of Google's proposed instruction, which directs the jury to

11   determine the existence of an implied license based solely on the conduct of Oracle, is incorrect.

12   To support an implied license defense, Google must also prove that it properly inferred Oracle's

13   consent to Google's use of the patented invention or copyrighted works.  *Wang*, 103 F.3d at 1580

14   ("Any language used by the owner of the patent, or any conduct on his part exhibited to another

15   from which that other may properly infer that the owner consents to his use of the patent in

16   making or using it, or selling it, upon which the other acts, constitutes a license and a defense to

17   an action for a tort.").  Google's proposed instruction neglects this important requirement and is

18   therefore an incomplete statement of the law.  In addition, this third paragraph is needlessly long

19   and confusing, combining instructions on both patent and copyright.  This paragraph also fails to

20   acknowledge that Google has the burden of proving an implied license.

21       Oracle's proposed jury instruction on implied license is a more accurate statement of the

22   law and should be adopted.

23   **V.       DAMAGES INSTRUCTIONS**

24       **A.       Disputed Jury Instruction No. 52 re Copyright – Actual Damages**

25       Oracle and Google have both made stylistic changes to the model instruction.  Oracle

26   believes that its changes make clear to the jury that it may calculate actual damages for copyright

27   infringement using either of two methods:  hypothetical negotiation or lost profits.  *See Polar*

28   *Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) ("Actual damages are

1  usually determined by the loss in the fair market value of the copyright, measured by the profits

2  lost due to the infringement *or* by the value of the use of the copyrighted work to the infringer.")

3  (citations omitted) (emphasis added).

4      In addition, Google has added a full paragraph that does not appear in the model

5  instruction.  Google offers the following:

> To collect actual damages, Oracle must establish with reasonable probability that
> the infringement caused it to lose revenue, and the amount of that lost revenue.
> You may not make an award of actual damages that is unduly speculative.  If you
> conclude that Oracle would have incurred increased expenses related to its
> damages, such as increased overhead costs, you must deduct those expenses when
> calculating Oracle's actual damages.

10  Oracle objects to this additional language.  Stipulated Instruction No. 51, taken from the form,

11  already provides that "Oracle is entitled to recover the actual damages suffered as a result of the

12  infringement" and that "Oracle must prove damages by a preponderance of the evidence."   Both

13  parties have additional causation language ("caused by the infringement") in the second sentence

14  of their competing versions of Instruction No. 52.  Google's additional language on causation is

15  just for added emphasis, not for any proper purpose.  In addition, neither *Polar Bear*, nor *Taylor v.*

16  *Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983), contains the "reasonable probability" language of

17  causation that Google urges.  *Polar Bear*'s holding on causation is, in fact, considerably broader,

18  requiring only a "causal link" or "causal nexus" between the infringement and actual damages:

19  "From the statutory language, it is apparent that a casual link between the infringement and the

20  monetary remedy sought is a predicate to recovery of both actual damages and profits."  *Polar*

21  *Bear*, 384 F.3d at 708; *id.* at 711 (using "causal nexus").  Google's language would encourage the

22  jury to impose a burden of proof on causation that is more demanding than the law requires.

23      Google's added language about deducting "increased costs" is confusing and unnecessary.

24  Google is not proposing an instruction on the law, it is proposing an instruction on how Google

25  would calculate lost profits as a matter of economics, once again emphasizing the element of the

26  calculation that it would prefer the jury focus on.  It would be equally proper to instruct the jury to

27  consider scale economies that reduce costs as revenues increase, or network effects that reduce the

28  cost of customer acquisition.  Oracle does not seek instruction on these or other matters – they are

1  factual, and the experts and counsel can ably explain what "lost profits" are without the need to

2  instruct the jury on a single element that might reduce that measure of damage.

3       **B.       Disputed Jury Instruction No. 53 re Copyright – Damages – Hypothetical**
4              **Negotiation**

5       Google and Oracle have each submitted an instruction to guide the jury as to how to

6  calculate a reasonable royalty for Google's copyright infringement.  Oracle's instruction largely

7  tracks its proposed instruction for calculating a reasonable royalty for patent infringement.  This

8  makes sense as a matter of law, and as a matter of economics.  The Ninth Circuit has held that a

9  copyright holder may seek a hypothetical license fee as damages for infringement, *Polar Bear*,

10 384 F.3d at 708-09.  Nothing in the language or policy of the Copyright Act suggests that an

11 infringer such as Google should be able to evade that remedy, by arguing that it would never have

12 paid for, or the copyright owner never would have given up, what the infringer actually

13 misappropriated.  Yet that is Google's argument.  As a matter of economics, it makes no sense to

14 say that a copyright license is valued one way, yet a patent license is valued another way.  Yet

15 that is also Google's argument.

16      Thus, Google would instruct the jury that "[t]o recover a lost license fee, Oracle is

17 required to show that the parties would have agreed to license the use of the copyrighted works at

18 issue."   Google also seeks an instruction that the license value "must be based on objective

19 measurements, such as evidence of other Oracle licenses for similar use of the work and

20 benchmark licenses for comparable uses of comparable works."  Google persists in citing a

21 September 1, 2011, Order by Judge Hamilton in *Oracle v. SAP* as authority for these propositions.

22 But Google is wrong.  As Oracle has pointed out in prior briefing in this case, Judge Hamilton

23 herself clarified the September 1 Order on which Google relies, stating:

24        The court did not hold as a matter of law . . . that copyright damages based upon the
          amount a willing buyer would reasonably have paid a willing seller under a hypothetical
25        license are available only if the copyright owner provides evidence of actual licenses it
          entered into or would have entered into for the infringed works, and/or actual
26        "benchmark" licenses entered into by any party for comparable use of the infringed or
          comparable works.

27

28

1   *Oracle USA, Inc. v. SAP AG*, No. C07-1658 PJH, at Dkt. No. 1088 (September 16, 2011).  She

2   further clarified that "evidence of licenses previously negotiated" is **one way** to prove an

3   objective, non-speculative license price.  It is not the only way.

4         Google's instruction risks misleading the jury into the belief that, unless Oracle can show

5   that Sun and Google in 2006 would have bargained for a license that would permit Google's

6   actual use of the Java-related copyrights (a fragmenting use that harms the Java platform and

7   excludes Sun from the ecosystem), a license fee is unavailable.  That statement of the law would

8   not, however, measure the "actual damages suffered by [Oracle] as a result of the infringement."

9   17 U.S.C. § 504(b).  In *On Davis*, the Second Circuit held that § 504(b) "permits a copyright

10  owner to recover actual damages, in appropriate circumstances, for the fair market value of a

11  license **covering the defendant's infringing use.**"  *On Davis v. The Gap, Inc.*, 246 F.3d 152, 172

12  (2d Cir. 2001).  Google's instruction also risks misleading the jury into believing that Google

13  should have to pay no more now, after gambling on litigation, than it did in 2006.  Google's

14  instruction that a lost license fee should not turn on "what [Oracle] thought it should have

15  obtained" sounds like authorization to reject any offer that Google didn't accept.  That is not the

16  law.  *Polar Bear*, 384 F.3d at 709 ("Having taken the copyrighted material, Timex is in no better

17  position to haggle over the license fee than an ordinary thief and must accept the jury's valuation

18  unless it exceeds the range of the reasonable market value.")

19        Google insists that a copyright hypothetical license may not be evaluated with reference to

20  the *Georgia-Pacific* factors, but there is no principled reason why that would be so, and Google

21  cites no binding authority for that proposition.  The *Georgia-Pacific* factors are simply those that

22  economically rational bargaining parties would take into account when trying to reach an

23  agreement.  Indeed, a host of copyright cases considering actual damages have examined factors

24  that, in the aggregate, look a lot like the *Georgia-Pacific* list.  *Polar Bear*, 384 F.3d at 708–09,

25  *Jarvis v. K2*, 486 F.3d 526, 534 (9th Cir. 2007) (value of the infringing use to the infringer,

26  bargaining history between the parties, expert testimony); *On Davis*, 246 F.3d at 166 n.5, 167–69

27  (nature and extent of actual infringing use, term and scope of license, customary license rates);

28  *McRoberts Software, Inc. v. Media 100, Inc*, 329 F.3d 557, 566–67 (7th Cir. 2003) (actual and

1   projected sales, cost of developing comparable software, market share); *Getaped.com, Inc. v.*

2   *Cangemi*, 188 F.Supp.2d 398 404, 405–06 (S.D.N.Y. 2002) (infringing work's "tendency to

3   promote the sales of other products," competitive relationship between parties).

4        Finally, Google would instruct the jury that in valuing a copyright license, in contrast to

5   its patent instruction, "[t]he fair market value cannot be based on evidence of things that

6   happened after the infringement began."  In fact, the fair market value, as a matter of economics

7   and as a matter of law, should include evidence of subsequent events, "to the extent that it sheds

8   light on what the parties would have anticipated at the time of the hypothetical negotiation."  That

9   is the language that the parties have agreed to in Instruction No. 56, for patents damages, and

10  Google offers no principled justification for its exclusion here.

11      **C.**    **Disputed Jury Instruction No. 54 re Copyright – Damages – Defendant's Profits**

12       Oracle's proposed instruction regarding Google's infringer's profits uses the language of

13  the model jury instruction, with five necessary additions described below.  Google's changes to

14  the model instruction (including its change to the title) are unnecessary and prejudicial—designed

15  only to steer the jury toward Google's case themes.  The substantive areas of disagreement are as

16  follows.

17       ***First***, Oracle has modified the model instruction to note that avoided costs may count as

18  infringer's profits.   This is a correct statement of the law.  *Roeslin v. District of Columbia*, 921

19  F. Supp. 793, 799 (D.D.C. 1995) (holding that under the infringer's profits clause of 17 U.S.C. §

20  504(b), "Costs that the defendant did not incur because it infringed a copyright are considered

21  profits for this purpose.") (citations omitted).  The instruction is necessary and appropriate here

22  because, based on the report of its copyright damages expert, Alan Cox, Google intends to present

23  evidence and argument that Android has no profits at all, and that this assertion, if true, would

24  eliminate the possibility of infringer's profits.  At the same time, Google concedes that it is

25  possible to measure the amount by which Google's supposed losses were decreased by Google's

26  acts of copyright infringement.  The jury should be instructed that these avoided losses represent

27  infringer's profits recoverable by Oracle.

28

1     **Second**, Oracle has modified the model instruction to instruct the jury not to deduct

2     Google's overhead if it finds that the infringement was willful.  This is a correct statement of law.

3     A willful infringer may not deduct certain fixed expenses from the statutorily authorized award of

4     infringers' profits.  *See, e.g.*, *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985)

5     ("A portion of an infringer's overhead properly may be deducted from gross revenues to arrive at

6     profits, ***at least where the infringement was not willful, conscious, or deliberate***") (emphasis

7     added); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) ("Overhead may not be deducted from

8     gross revenues to arrive at profits when an infringement was deliberate or willful.") (citing *Frank*

9     *Music*); *Sheldon v. MGM Pictures, Corp.*, 106 F.2d 45 (2d Cir. 1939), *aff'd*, 309 U.S. 390 (1940)

10    ("a plagiarist may not charge for his labor in exploiting what he has taken"); *Kamar Int'l, Inc. v.*

11    *Russ Berrie & Co.*, 752 F.2d 1326, 1331 (9th Cir. 1984) (citing *Sheldon*).  Google has in fact

12    claimed these fixed expenses, and the jury must be instructed that it is not entitled to do so if its

13    infringement was willful.

14       **Third**, Oracle added a sentence explaining that Google's gross revenue "includes

15    advertising or other revenues with a causal relationship to Google's copyright infringement."

16    This addition is appropriate given Google's repeated efforts to confuse the issue of revenue and

17    profit by arguing that it gives Android away for "free."

18       **Fourth**, Oracle has added a clause to the explanation of the types of expenses that can be

19    deducted, "Expenses are all operating costs, overhead costs, and production costs that were

20    incurred by Google and of actual assistance in producing the gross revenue."  This instruction is

21    necessary to clarify to the jurors that they are not to deduct all Google expenses, or even all

22    Android expenses.  Rather, "a deduction for overhead should be allowed 'only when the infringer

23    can demonstrate that [the overhead expense] was of actual assistance in the production,

24    distribution or sale of the infringing product.'"  *Frank Music Corp. v. Metro-Goldwyn-Mayer,*

25    *Inc.* , 772 F.2d 505, 516 (9th Cir. 1985) (alteration in original, citation omitted).

26       **Fifth**, Oracle has added the statement, "if you find that Google committed an act of

27    copyright infringement in the United States, Oracle is entitled to recover all of Google's profits

28    attributable to that act of infringement, including profits Google earned because its infringement

1    resulted in further copying by others, regardless of where that further copying occurred."  Once

2    again, this is a correct statement of law.  *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,

3    149 F.3d 987, 992 (9th Cir. 1998) (*Reuters III*); *see also Los Angeles News Serv. v. Reuters*

4    *Television Int'l, Ltd.*, 340 F.3d 926, 932–33 (9th Cir. 2003) (clarifying *Reuters III*'s holding to

5    apply to infringer's profits).  The jury will be instructed as to the extraterritorial limitation for

6    patent damages.  (*See* Stipulated Jury Instruction # 37.)  If they are not instructed as to the

7    difference, the jury could mistakenly conclude that they may not award damages for Google's

8    overseas profits that flow from domestic acts of copyright infringement.  Oracle's modification

9    will ensure that the standards are properly differentiated.

10         Google's changes mis-state or distort the applicable law by repeating concepts that

11   already appear in the instruction, but that Google would like to emphasize to the jury.  Thus,

12   Google's instruction twice states that Oracle must establish a causal relationship between the

13   infringer's revenues and the infringement, and the further notes that Oracle must prove Google's

14   revenues by a preponderance of the evidence.  Having emphasized repeatedly Oracle's burden,

15   Google adds a lengthy series of sentences that effectively water down its own burden, stressing to

16   the jury that "Google is not required to establish with certainty the portion attributable to the non-

17   infringing elements.  If the evidence suggests some division that may rationally be used to decide

18   what portion of the profits are due to factors other than infringement, it is your duty to do so."  An

19   evidentiary burden that requires no more than a suggestion that "some division" can be made

20   relieves Google of its statutory burden under 17 U.S.C. § 504(b).  Moreover, in amending the

21   form instruction, Google offers no parallel instruction concerning any uncertainty about Oracle's

22   proof, implying incorrectly and yet again that Oracle's burden of proof and causation is somehow

23   greater than Google's.

24         **D.    Disputed Jury Instruction No. 55 re Patent – Damages – Burden of Proof**

25         The only issue in dispute for this instruction is how the patents shall be identified.  *See*

26   Section III.A.1, above.  It is otherwise stipulated.

27

28

**E.       Disputed Jury Instruction No. 56 re Patent – Reasonable Royalty – Definition**

Oracle and Google agree on certain modifications to the model jury instructions for a hypothetical negotiation, which need not be spelled out here.  Oracle's remaining modification to the model jury instructions for a reasonable royalty is minor, and correct. Oracle has modified the Northern District model jury instruction to ensure that the jury understands that the hypothetical license fee must "grant[] Google the right to make, use, and sell the patented inventions in the manner that it actually did."  Google's instruction contains much the same language: a royalty provides the licensee the right to "make, use or sell the claimed invention in the manner in which defendant made, used or sold it."  Both are correct statements of the law; the hypothetical license must compensate for "for the use made of the invention by the infringer."  35 U.S.C. § 284. Oracle's modification is plainer, however, and will be easier for the jury to understand and apply correctly.

Google's other modifications, in contrast, insert incorrect statements of the law.  Google has requested that the following paragraph be added:

> In determining a reasonable royalty, you may not award damages based on Google's entire revenue from the accused products.  Instead, you may award damages based only on the revenue that is attributable to the use of the patented technology in infringing feature(s) of a product.  In addition, you may not award damages based on Google's revenue from products that you do not find to have infringed.

***First,*** and most importantly, Google's instruction would be improper under the facts of the case and Federal Circuit law.  In their licensing negotiations in 2006, the parties actually discussed and negotiated over a license based on Google's Android-enabled advertising revenues. Google's instruction would require the jury to ignore the actual real-world evidence of the license that the parties actually considered.  None of the cases Google cites support, much less require, such a result.  Indeed, the law is the opposite.  *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561–63 (Fed. Cir. 1983) (overturning royalty determination where "notably absent from [the court's] findings is any consideration of the actual negotiations between the parties"); *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 216 F. Supp. 2d 1188, 1197 (D. Colo. 2002) *aff'd*, 342 F.3d 1298 (Fed. Cir. 2003) ("A hypothetical negotiation should take into account the actual facts as they occurred in the matter both before and after the hypothetical negotiations would occur.").

1    **Second**, Google's proposed instruction is incorrect and contradicts an order of this Court

2    in this case:  "Any valuation of Android must take [Google's] business model into account," and

3    "Google is incorrect in asserting that the overall value of Android is irrelevant and is further

4    incorrect in asserting that advertising revenues have nothing to do with the overall value."  (Dkt.

5    No. 230 at 9.)  The language is not needed because the Court also has instructed Oracle that it

6    must apportion damages, and that is exactly what Oracle's expert has done.  Although Google

7    may dispute the amount of the apportionment, there is no dispute as to the principle or whether it

8    has been applied.

9    **Third**, Google is essentially trying to instruct the jury that the entire market value rule –

10   which the jury will have no inkling of – should not apply in this case.  But that instruction is

11   irrelevant now that the Court has identified a structure for calculating a reasonable royalty based

12   on the parties' real world "starting point," apportioned and adjusted in light of various factors,

13   and both parties have accepted that structure as appropriate.  In light of that agreed structure,

14   which starts with a real world negotiation that included a share of all Android advertising

15   revenue, an instruction about the entire market value rule is a non sequitur that can only mislead.

16   Google also has proposed a modification that would instruct the jury that "The amount of

17   the reasonable royalty should not exceed the profit that Google would have reasonably expected

18   to realize by using the patented invention."  That is actually the opposite of what the law requires.

19   "[A]lthough an infringer's anticipated profit from use of the patented invention is among the

20   factors to be considered in determining a reasonable royalty, ***the law does not require that an***

21   ***infringer be permitted to make a profit***."  *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir.

22   2004) (citing *Georgia-Pacific*, 318 F. Supp. at 1120) (internal punctuation omitted; emphasis

23   added).  Google should not be permitted to place a cap on a reasonable royalty that the law does

24   not permit.

25   Google also has proposed to instruct the jury that a reasonable royalty should not "exceed

26   the incremental cost of a non-infringing substitute, if any, available at the time of the hypothetical

27   negotiation."  It is unclear what Google means by this language, and even less clear what the jury

28   will understand it to mean.  It should not be included in the instruction.

1    What the instruction appears to suggest is another avenue for Google to argue that there

2    must be a hard ceiling on the amount of the royalty, as determined by some accounting figure.

3    Once again, that is not the law.  *Monsanto*, 382 F.3d at 1384.

4    To the extent it is intelligible, Google's formulation not only appears to cap the amount of

5    the royalty, it does so arbitrarily.  It is certainly relevant to a negotiation consider the available

6    alternatives – if any existed – and their costs and benefits.  But cost savings is just "one element

7    in constructing the reasonable royalty."  *Smith Int'l, Inc. v. Hughes Tool Co.*, 1986 WL 4795, *23

8    (C.D. Cal Mar. 12, 1986) (citing *Alpine Valley*, 718 F.2d at 1080-81; *see also Deere & Co. v.*

9    *Int'l Harvester Co.*, 710 F.2d 1551, 1558 (Fed. Cir. 1983) (upholding reasonable royalty rate

10   which included costs savings and increased profitability); *Funai Elec. Co., Ltd. v. Daewoo Elec.*

11   *Corp.*, 595 F.Supp.2d 1088, 1107 (upholding reasonable royalty rate based on estimated cost-

12   savings and the value of the patented technology to the infringer); *cf. Stickle v. Heublein, Inc.*,

13   716 F.2d 1550, 1563 (Fed. Cir. 1983) ("[T]he trial court may award an amount of damages

14   greater than a reasonable royalty so that the award is adequate to compensate for the

15   infringement.").

16   But the "incremental cost of a non-infringing substitute" bears no relationship to the value

17   of the intellectual property that was misappropriated.  Rather, it would seem to represent one

18   element of the infringer's costs of walking away from the negotiating table.  For example, if the

19   value of the patent license Google took is, as Prof. Cockburn opines, approximately $200 million,

20   and Google were to offer evidence that it could have built an inferior, non-infringing version of

21   Android for $300 million, damages would not be $100 million.  They would be exactly what

22   Oracle claims.  But Google's instruction suggests something different, and economically

23   irrational.

24   In support of its instruction, Google cites *Grain Processing Corp. v. Am. Maize Prods.*

25   *Co.*, 185 F.3d 1341, 1348-51 (Fed. Cir. 1999) and *Hanson v. Alpine Valley Ski Area, Inc.*, 718

26   F.2d 1075, 1080-81 (Fed. Cir. 1983).  However, neither case establishes a rule that the amount of

27   reasonable royalty should be limited to the infringer's cost savings.  In *Grain Processing*,

28   reasonable royalty is discussed only in *dicta* by the Federal Circuit in describing the lower court's

1  decision to deny lost profits and cap the reasonable royalty award to an amount that was

2  approximately 130% of the total cost of using the alternative.  The Federal Circuit emphasized

3  that this award was directly tied to the lower court's finding that "buyers viewed [the non-

4  infringing alternative] as an equivalent." 185 F.3d at 1347.  Similarly in *Hanson Valley*, the

5  Federal Circuit affirmed the lower court's award of a reasonable royalty rate based on the

6  infringer's cost saving when it concluded that other methods of calculating the royalty were

7  unavailable and where expert testimony established that both parties in an arm's length license

8  negotiation would have accepted a license that was a function of the defendant's anticipated cost

9  savings. 718 F.2d at 1077, 1080.

10       Thus, it was only in considering all of the factors that a willing licensor and licensee

11  would have considered in a hypothetical negotiation that the courts in *Grain Processing* and

12  *Hanson Valley* determined that cost-savings was an appropriate factor in determining a

13  reasonable royalty.  Accordingly, both decisions are in line with established case law that cost

14  savings is just one element in constructing a reasonable royalty – not a cap.

15       **F.    Disputed Jury Instruction No. 57 re Patent – Reasonable Royalty – Relevant**
            **Factors**

16

17       Oracle requests an instruction listing the *Georgia-Pacific* factors.  Google has objected to

18  such an instruction, claiming that the factors "have the potential to confuse and mislead."  But

19  this Court has already disagreed with Google.  In its *Daubert* Order, July 22, 2011, the Court

20  wrote, "the normal *Georgia-Pacific* factors, which have been approved by the Court of Appeals

21  for the Federal Circuit ***and which are more understandable to the average fact-finder***, will guide

22  our reasonable royalty analysis." (Dkt. No. 230 at 13–14 (emphasis added)  The Federal Circuit

23  also disagrees with Google.  Not only has that court "consistently upheld experts' use of a

24  hypothetical negotiation and *Georgia-Pacific* factors for estimating a reasonable royalty," *i4i Ltd.*
    *P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd on other grounds*, 131 S.Ct.

25  2238 (June 9, 2011) (citations omitted), but the Federal Circuit Bar Association model

26  instructions contains a list of the *Georgia-Pacific* factors—a model that Oracle uses with almost

27

28

no modification.  In fact, this Court has used a *Georgia-Pacific* instruction in at least one patent

case.  *Norian Corp. v. Stryker Corp.*, No. C01-00016-WHA, 2002 WL 34415032, Instr. XXXIX.

Both Oracle's and Google's damages experts have submitted reports outlining the

application of the *Georgia-Pacific* factors to this case, and an instruction providing the jury with

the signposts to the experts' analysis will make their testimony more comprehensible to the jury.

By contrast, Google's approach— selectively calling out some, but not all, of the relevant factors

in the general hypothetical-license instruction—creates a risk that the jury will be misled into

thinking that Google's preferred factors are more important than those that it chose not to

emphasize.  That is a proposition that courts have squarely rejected.  "We need not identify any

particular *Georgia-Pacific* factor as being dispositive.  Rather, the flexible analysis of all

applicable *Georgia-Pacific* factors provides a useful and legally-required framework for assessing

the damages award in this case."  *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301,

1335 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 3324 (2010)

### G.        Disputed Jury Instruction No. 58 re Patent – Damages – Extraterritorial Acts

For patent infringement, Google proposes to instruct the jury that "The patent laws do not

operate beyond the limits of the United States.  You may not find Google liable for, or award

damages based on, any making, using, selling, or offering to sell the accused product in other

countries."

Oracle objects to this instruction.  First, it is an overbroad and incorrect statement of the

law.  For example, Oracle has asserted claims for indirect infringement, and Google may be held

liable if it has induced third parties to import infringing products into the United States, even if

those products were manufactured elsewhere.  *See, e.g., Spindelfabrik Suessen-Schurr v. Schubert

& Salzer Maschinenfabrik Aktiengesellschaft*, 903 F.2d 1568, 1578 (Fed. Cir. 1990);

*Semiconductor Energy Laboratory Co. Ltd. v. Chi Mei Optoelectronics Corp.* 531 F.Supp.2d

1084, 1112 (N.D. Cal. 2007).  Google's instruction may confuse jurors into believing that such

conduct is not infringing.

1    Second, the instruction is not necessary.  Oracle's expert, Prof. Cockburn, has excluded

2  Google's United States revenues from his patent damage calculations.  Given that the damages

3  experts agree that this is appropriate, the dispute for the jury, if any, will simply be the proper

4  division of US and non-US revenues.

5       **H.      Disputed Jury Instruction No. 59 re Patent – Damages – Date of
                  Commencement**

6       Google's oversimplified instruction regarding notice is incorrect and incomplete, and it

7  will mislead the jury.  Oracle's proposed instruction, on the other hand, lays out the specific rules

8  to be applied on a patent-by-patent basis.  Oracle's proposed language is the most helpful and

9  should be adopted.

10       At the outset, Google misrepresents the basic law on patent damages.  The statement:

11  "[i]n all cases, damages should be calculated from the earliest date, after each patent issued, that

12  Google received actual written notice of the particular patent and the specific product alleged to

13  infringe" is not correct.   Actual notice need not be given in every case, and in any event the

14  precise form of that notice is not specified.  For example, as explained in Oracle's proposed

15  instruction, actual notice may be satisfied by an offer to license the patent.  *See SRI Int'l, Inc. v.*

16  *Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (1997) ("Although there are numerous possible

17  variations in form and content, the purpose of the actual notice requirement is met when the

18  recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of

19  the notice may be an infringer. Thus, the actual notice requirement of § 287(a) is satisfied when

20  the recipient is informed of the identity of the patent and the activity that is believed to be an

21  infringement, accompanied by a proposal to abate the infringement, whether by license or

22  otherwise."); *see also Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1577 (Fed. Cir.

23  1985) ("The offering of a license is actual notice.") (citing *Leinoff v. Louis Milona & Sons, Inc.*,

24  726 F.2d 734, 743 (Fed. Cir. 1984).  Even Google itself has admitted that it received ***actual*** notice

25  of all the Java-related patents no later than July 20, 2010.  ECF No. 521 at 3, Letter re: précis on

26  marking issues (October 12, 2011) ("Google contends Oracle first gave Google actual notice of

27  the patents-in-suit on July 20, 2010").

28

1   By requiring the trier of fact to first determine whether "Oracle makes, sells, or offers to

2   sell or Sun made, sold or offered to sell a product that embodies each patent" Google's instruction

3   also improperly suggests that Oracle must practice each and every claim of the asserted patents in

4   order to collect damages.  But Oracle is entitled to damages regardless of whether it practices

5   every claim.  *Toro Co. v. McCulloch Corp.*, 898 F. Supp. 679, 682 (D. Minn. 1995) (holding that

6   § 287(a) does not "limit recovery in a patent infringement action when an unmarked article,

7   which has been made or sold, contains one of the inventions disclosed in the patent but does not

8   contain the invention of the predicate suit").

9   Lastly, Google's instruction states only that a patentee may mark its patented product, but

10  it does not explain what that means in the context of this case.  For example, Oracle is not

11  required to mark products covered by patents where only method claims are asserted.  *Hanson v.*

12  *Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082-83 (Fed. Cir. 1983) (holding that the marking

13  requirement of 35 U.S.C. § 287(a) does not apply when only method claims are asserted); *see*

14  *also Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1310, 1317 (Fed.

15  Cir. 2009).

16  Oracle's proposed instruction takes the guesswork out of how these standards apply to the

17  various asserted patents, it properly reflects the relevant legal principles, and it should be adopted.

18

19

20  Dated: October 14, 2011                    MICHAEL A. JACOBS
                                               MARC DAVID PETERS
21                                             DANIEL P. MUINO
                                               MORRISON & FOERSTER LLP
22

23                                             By:    /s/ Daniel P. Muino

24                                                   Daniel P. Muino

25                                             Attorneys for Plaintiff
                                               ORACLE AMERICA, INC.
26

27

28