[Counsel Signatures Appear at the End]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA (DMR) |
| Plaintiff, | **PARTIES' JOINT PROPOSED JURY INSTRUCTIONS** |
| v. | |
| GOOGLE INC. | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

DISPUTED JURY INSTRUCTION NO. 1 PRELIMINARY INSTRUCTION –
COPYRIGHT INFRINGEMENT OFFERED BY ORACLE............................................. 1

DISPUTED JURY INSTRUCTION NO. 1 PRELIMINARY INSTRUCTION –
COPYRIGHT INFRINGEMENT OFFERED BY GOOGLE ........................................... 5

DISPUTED JURY INSTRUCTION NO. 2 PRELIMINARY INSTRUCTION –
PATENT – WHAT A PATENT IS AND HOW ONE IS OBTAINED  OFFERED
BY ORACLE ..................................................................................................................... 9

DISPUTED JURY INSTRUCTION NO. 2 PRELIMINARY INSTRUCTION –
PATENT – WHAT A PATENT IS AND HOW ONE IS OBTAINED  OFFERED
BY GOOGLE..................................................................................................................... 12

STIPULATED JURY INSTRUCTION NO. 3 PRELIMINARY INSTRUCTION –
PATENT – PATENTS AT ISSUE ................................................................................... 15

DISPUTED JURY INSTRUCTION NO. 4 PRELIMINARY INSTRUCTION –
PATENT – SUMMARY OF CONTENTIONS OFFERED BY ORACLE ................... 16

DISPUTED JURY INSTRUCTION NO. 4 PRELIMINARY INSTRUCTION –
PATENT – SUMMARY OF CONTENTIONS OFFERED BY GOOGLE................... 19

STIPULATED JURY INSTRUCTION NO. 5 PRELIMINARY INSTRUCTION –
PATENT – OVERVIEW OF APPLICABLE LAW............................................................ 21

DISPUTED JURY INSTRUCTION NO. 6 PRELIMINARY – DEFINITION OF
COPYRIGHT  OFFERED BY ORACLE ....................................................................... 23

DISPUTED JURY INSTRUCTION NO. 6 COPYRIGHT – DEFINED OFFERED BY
GOOGLE ........................................................................................................................... 25

DISPUTED JURY INSTRUCTION NO. 7 COPYRIGHT – SUBJECT MATTER –
GENERALLY  OFFERED BY ORACLE ....................................................................... 27

DISPUTED JURY INSTRUCTION NO. 7 COPYRIGHT – SUBJECT MATTER –
GENERALLY  OFFERED BY GOOGLE....................................................................... 29

DISPUTED JURY INSTRUCTION NO. 8 COPYRIGHT – SUBJECT MATTER –
IDEAS AND EXPRESSION  OFFERED BY ORACLE................................................. 32

DISPUTED JURY INSTRUCTION NO. 8 COPYRIGHT – SUBJECT MATTER –
IDEAS AND EXPRESSION  OFFERED BY GOOGLE ............................................... 33

DISPUTED JURY INSTRUCTION NO. 9 COPYRIGHT – SUBJECT MATTER –
FUNCTIONAL REQUIREMENTS OFFERED BY ORACLE....................................... 35

DISPUTED JURY INSTRUCTION NO. 9 COPYRIGHT – SUBJECT MATTER –
FUNCTIONAL REQUIREMENTS OFFERED BY GOOGLE ..................................... 36

DISPUTED JURY INSTRUCTION NO. 10 COPYRIGHT INFRINGEMENT –
ELEMENTS – OWNERSHIP AND COPYING  OFFERED BY ORACLE.................. 37

DISPUTED JURY INSTRUCTION NO. 10 COPYRIGHT INFRINGEMENT –
ELEMENTS – OWNERSHIP AND COPYING  OFFERED BY GOOGLE ................ 38

DISPUTED JURY INSTRUCTION NO. 11 COPYRIGHT INTERESTS –
REGISTRATION WITH THE COPYRIGHT OFFICE  OFFERED BY ORACLE ...... 39

DISPUTED JURY INSTRUCTION NO. 11 COPYRIGHT – REGISTRATION  NONE PROPOSED BY GOOGLE ....................................................................... 40

DISPUTED JURY INSTRUCTION NO. 12 COPYRIGHT INFRINGEMENT – ORIGINALITY  OFFERED BY ORACLE .................................................... 41

DISPUTED JURY INSTRUCTION NO. 12 COPYRIGHT INFRINGEMENT – ORIGINALITY  OFFERED BY GOOGLE .................................................. 42

DISPUTED JURY INSTRUCTION NO. 13 COPYRIGHT INFRINGEMENT – SELECTION AND ARRANGEMENT OF NAMES  OFFERED BY ORACLE .......... 43

DISPUTED JURY INSTRUCTION NO. 13 COPYRIGHT – SUBJECT MATTER – SELECTION, ARRANGEMENT, ORGANIZATION OFFERED BY GOOGLE ....... 44

DISPUTED JURY INSTRUCTION NO. 14 COPYRIGHT INTERESTS – DERIVATIVE WORK OFFERED BY ORACLE ....................................................... 45

DISPUTED JURY INSTRUCTION NO. 14 COPYRIGHT INTERESTS – DERIVATIVE WORK OFFERED BY GOOGLE .................................................... 46

DISPUTED JURY INSTRUCTION NO. 15 COPYRIGHT – COPYING – ACCESS AND SUBSTANTIAL SIMILARITY OFFERED BY ORACLE ................... 48

DISPUTED JURY INSTRUCTION NO. 15 COPYING – ACCESS AND SUBSTANTIAL SIMILARITY OFFERED BY GOOGLE ............................. 49

DISPUTED JURY INSTRUCTION NO. 16 COPYRIGHT – DIRECT INFRINGEMENT – COPYING – ACCESS DEFINED OFFERED BY ORACLE ...... 51

DISPUTED JURY INSTRUCTION NO. 16 COPYRIGHT INFRINGEMENT – COPYING – ACCESS DEFINED OFFERED BY GOOGLE ........................................ 52

DISPUTED JURY INSTRUCTION NO. 17 COPYRIGHT – SUBSTANTIAL SIMILARITY – OBJECTIVE AND SUBJECTIVE TESTS OFFERED BY ORACLE .................................................................................................... 53

DISPUTED JURY INSTRUCTION NO. 17 SUBSTANTIAL SIMILARITY – EXTRINSIC TEST; INTRINSIC TEST OFFERED BY GOOGLE ............................. 56

DISPUTED JURY INSTRUCTION NO. 18 COPYRIGHT INFRINGEMENT– COPYING FROM THIRD PARTY OFFERED BY ORACLE ................... 60

DISPUTED JURY INSTRUCTION NO. 18 COPYRIGHT INFRINGEMENT– COPYING FROM THIRD PARTY OFFERED BY GOOGLE ................... 61

DISPUTED JURY INSTRUCTION NO. 19 COPYRIGHT LIABILITY – VICARIOUS INFRINGEMENT – ELEMENTS AND BURDEN OF PROOF OFFERED BY ORACLE ................................................................................................. 62

DISPUTED JURY INSTRUCTION NO. 19 LIABILITY – VICARIOUS INFRINGEMENT – ELEMENTS AND BURDEN OF PROOF OFFERED BY GOOGLE ............................................................................................... 63

DISPUTED JURY INSTRUCTION NO. 20 COPYRIGHT LIABILITY – CONTRIBUTORY INFRINGEMENT OFFERED BY ORACLE ................... 64

DISPUTED JURY INSTRUCTION NO. 20 LIABILITY – CONTRIBUTORY INFRINGEMENT OFFERED BY ORACLE ................................... 66

DISPUTED JURY INSTRUCTION NO. 21 COPYRIGHT LIABILITY – WILLFUL INFRINGEMENT OFFERED BY ORACLE ................................... 68

DISPUTED JURY INSTRUCTION NO. 21 COPYRIGHT LIABILITY – WILLFUL INFRINGEMENT OFFERED BY GOOGLE ................................... 69

DISPUTED JURY INSTRUCTION NO. 22 COPYRIGHT DEFENSE – DE MIMINIS COPYING OFFERED BY ORACLE ............................................................................... 70

DISPUTED JURY INSTRUCTION NO. 22 COPYRIGHT INFRINGEMENT– DE MIMINIS COPYING OFFERED BY GOOGLE ................................................................... 71

DISPUTED JURY INSTRUCTION NO. 23 COPYRIGHT DEFENSE – MERGER OFFERED BY ORACLE ............................................................................................... 72

DISPUTED JURY INSTRUCTION NO. 23 COPYRIGHT – MERGER OFFERED BY GOOGLE ................................................................................................................... 73

DISPUTED JURY INSTRUCTION NO. 24 COPYRIGHT DEFENSE – SCENES A FAIRE OFFERED BY ORACLE ......................................................................................... 75

DISPUTED JURY INSTRUCTION NO. 24 COPYRIGHT – *SCENES A FAIRE* OFFERED BY GOOGLE ........................................................................................... 77

DISPUTED JURY INSTRUCTION NO. 25 COPYRIGHT DEFENSE – FAIR USE OFFERED BY ORACLE ............................................................................................... 79

DISPUTED JURY INSTRUCTION NO. 25 COPYRIGHT – FAIR USE OFFERED BY GOOGLE ................................................................................................................... 81

DISPUTED JURY INSTRUCTION NO. 26 PATENT – SUMMARY OF CONTENTIONS OFFERED BY ORACLE ................................................................... 83

DISPUTED JURY INSTRUCTION NO. 26 PATENT – SUMMARY OF CONTENTIONS OFFERED BY GOOGLE .................................................................. 85

DISPUTED JURY INSTRUCTION NO. 27 PATENT – PRESUMPTION OF VALIDITY OFFERED BY ORACLE ............................................................................................... 87

DISPUTED JURY INSTRUCTION NO. 27 PATENT – PRESUMPTION OF VALIDITY OFFERED BY GOOGLE .............................................................................................. 89

STIPULATED JURY INSTRUCTION NO. 28 PATENT – HOW A CLAIM DEFINES WHAT IT COVERS ...................................................................................................... 90

STIPULATED JURY INSTRUCTION NO. 29 PATENT – INDEPENDENT AND DEPENDENT CLAIMS ..................................................................................................... 92

STIPULATED JURY INSTRUCTION NO. 30 PATENT – INTERPRETATION OF CLAIMS ................................................................................................................................. 94

STIPULATED JURY INSTRUCTION NO. 31 PATENT INFRINGEMENT – BURDEN OF PROOF ................................................................................................................... 95

DISPUTED JURY INSTRUCTION NO. 32 PATENT – DIRECT INFRINGEMENT OFFERED BY ORACLE ............................................................................................... 96

DISPUTED JURY INSTRUCTION NO. 32 DIRECT INFRINGEMENT OFFERED BY GOOGLE ................................................................................................................... 98

DISPUTED JURY INSTRUCTION NO. 33 PATENT – LITERAL INFRINGEMENT OFFERED BY ORACLE ............................................................................................. 100

DISPUTED JURY INSTRUCTION NO. 33 LITERAL INFRINGEMENT OFFERED BY GOOGLE ................................................................................................................. 101

DISPUTED JURY INSTRUCTION NO. 34 PATENT – DIRECT INFRINGEMENT "UNDER THE DOCTRINE OF EQUIVALENTS" OFFERED BY ORACLE .......... 102

DISPUTED JURY INSTRUCTION NO. 34 DIRECT INFRINGEMENT "UNDER THE DOCTRINE OF EQUIVALENTS" OFFERED BY GOOGLE ................................... 104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

pa-1492148

DISPUTED JURY INSTRUCTION NO. 35 PATENT – LIMITATIONS ON DIRECT
    INFRINGEMENT UNDER THE  "DOCTRINE OF EQUIVALENTS" OFFERED
    BY ORACLE ........................................................................................................ 106

DISPUTED JURY INSTRUCTION NO. 35 PATENT – LIMITATIONS ON DIRECT
    INFRINGEMENT  UNDER THE "DOCTRINE OF EQUIVALENTS" OFFERED
    BY GOOGLE........................................................................................................ 107

STIPULATED JURY INSTRUCTION NO. 36 PATENT – INDIRECT
    INFRINGEMENT – GENERALLY OFFERED BY ORACLE .................................. 108

DISPUTED JURY INSTRUCTION NO. 37 PATENT – CONTRIBUTORY
    INFRINGEMENT OFFERED BY ORACLE ........................................................... 109

DISPUTED JURY INSTRUCTION NO. 37 CONTRIBUTORY INFRINGEMENT
    OFFERED BY GOOGLE...................................................................................... 111

DISPUTED JURY INSTRUCTION NO. 38 PATENT – INDIRECT INFRINGEMENT –
    ACTIVE INDUCEMENT OFFERED BY ORACLE .................................................. 113

DISPUTED JURY INSTRUCTION NO. 38 INDIRECT INFRINGEMENT – ACTIVE
    INDUCEMENT OFFERED BY GOOGLE .............................................................. 115

DISPUTED JURY INSTRUCTION NO. 39 PATENT – INFRINGEMENT – WILLFUL
    BLINDNESS AS KNOWLEDGE OFFERED BY ORACLE...................................... 117

DISPUTED JURY INSTRUCTION NO. 39 PATENT – INFRINGEMENT – WILLFUL
    BLINDNESS AS KNOWLEDGE OFFERED BY GOOGLE ..................................... 118

DISPUTED JURY INSTRUCTION NO. 40 PATENT – WILLFUL INFRINGEMENT
    OFFERED BY ORACLE ...................................................................................... 119

DISPUTED JURY INSTRUCTION NO. 40 WILLFUL INFRINGEMENT OFFERED
    BY GOOGLE....................................................................................................... 121

DISPUTED JURY INSTRUCTION NO. 41 PATENT DEFENSE – INVALIDITY –
    BURDEN OF PROOF OFFERED BY ORACLE ..................................................... 123

DISPUTED JURY INSTRUCTION NO. 41 INVALIDITY – BURDEN OF PROOF
    OFFERED BY GOOGLE...................................................................................... 124

STIPULATED JURY INSTRUCTION NO. 42 PATENT – INVALIDITY –
    ANTICIPATION .................................................................................................. 125

DISPUTED JURY INSTRUCTION NO. 43 PATENT – INVALIDITY –
    OBVIOUSNESS OFFERED BY ORACLE............................................................. 127

DISPUTED JURY INSTRUCTION NO. 43 INVALIDITY – OBVIOUSNESS
    OFFERED BY GOOGLE...................................................................................... 130

STIPULATED JURY INSTRUCTION NO. 44 PATENT – INVALIDITY –
    DIFFERENCES OVER PRIOR ART...................................................................... 131

STIPULATED JURY INSTRUCTION NO. 45 PATENT – INVALIDITY – LEVEL OF
    ORDINARY SKILL ............................................................................................. 132

DISPUTED JURY INSTRUCTION NO. 46 EQUITABLE DEFENSE – LACHES
    OFFERED BY ORACLE ...................................................................................... 133

DISPUTED JURY INSTRUCTION NO. 46 EQUITABLE DEFENSE – LACHES
    OFFERED BY GOOGLE...................................................................................... 136

DISPUTED JURY INSTRUCTION NO. 47 EQUITABLE DEFENSE – EQUITABLE
    ESTOPPEL OFFERED BY ORACLE .................................................................... 139

DISPUTED JURY INSTRUCTION NO. 47 EQUITABLE DEFENSE – EQUITABLE ESTOPPEL OFFERED BY GOOGLE ............................................................ 142

DISPUTED JURY INSTRUCTION NO. 48 EQUITABLE DEFENSE – WAIVER OFFERED BY ORACLE .................................................................................... 144

DISPUTED JURY INSTRUCTION NO. 48 EQUITABLE DEFENSE – WAIVER OFFERED BY GOOGLE ................................................................................. 145

DISPUTED JURY INSTRUCTION NO. 49 EQUITABLE DEFENSE – IMPLIED LICENSE OFFERED BY ORACLE .................................................................. 146

DISPUTED JURY INSTRUCTION NO. 49 EQUITABLE DEFENSE – IMPLIED LICENSE OFFERED BY GOOGLE ................................................................ 147

STIPULATED JURY INSTRUCTION NO. 50 DAMAGES – INTRODUCTION ................ 148

STIPULATED JURY INSTRUCTION NO. 51 COPYRIGHT – DAMAGES ....................... 149

DISPUTED JURY INSTRUCTION NO. 52 COPYRIGHT – ACTUAL DAMAGES OFFERED BY ORACLE .................................................................................... 150

DISPUTED JURY INSTRUCTION NO. 52 COPYRIGHT –DAMAGES – ACTUAL DAMAGES OFFERED BY GOOGLE ............................................................... 151

DISPUTED JURY INSTRUCTION NO. 53 COPYRIGHT – DAMAGES – HYPOTHETICAL NEGOTIATION  OFFERED BY ORACLE ................................. 152

DISPUTED JURY INSTRUCTION NO. 53 COPYRIGHT – DAMAGES –  ACTUAL DAMAGES DUE TO LOST LICENSE FEE OFFERED BY GOOGLE .................... 153

DISPUTED JURY INSTRUCTION NO. 54 COPYRIGHT – DAMAGES – DEFENDANTS' PROFITS OFFERED BY ORACLE ............................................... 154

DISPUTED JURY INSTRUCTION NO. 54 COPYRIGHT – DAMAGES – DEFENDANTS' PROFITS ATTRIBUTABLE TO COPYRIGHT INFRINGEMENT OFFERED BY GOOGLE ............................................................ 156

DISPUTED JURY INSTRUCTION NO. 55 PATENT – DAMAGES – BURDEN OF PROOF  OFFERED BY ORACLE ..................................................................... 158

DISPUTED JURY INSTRUCTION NO. 55 PATENT – DAMAGES – BURDEN OF PROOF  OFFERED BY GOOGLE .................................................................... 159

DISPUTED JURY INSTRUCTION NO. 56 PATENT – DAMAGES – REASONABLE ROYALTY - DEFINITION  OFFERED BY ORACLE ............................................ 160

DISPUTED JURY INSTRUCTION NO. 56 PATENT – DAMAGES – REASONABLE ROYALTY - DEFINITION  OFFERED BY GOOGLE ......................................... 161

DISPUTED JURY INSTRUCTION NO. 57 PATENT – DAMAGES – REASONABLE ROYALTY – RELEVANT FACTORS OFFERED BY ORACLE ............................ 163

DISPUTED JURY INSTRUCTION NO. 57 PATENT – DAMAGES – REASONABLE ROYALTY – RELEVANT FACTORS OFFERED BY GOOGLE ........................... 165

DISPUTED JURY INSTRUCTION NO. 58 PATENT – DAMAGES – EXTRATERRITORIAL ACTS OFFERED BY ORACLE ........................................ 166

DISPUTED JURY INSTRUCTION NO. 58 PATENT – DAMAGES – EXTRATERRITORIAL ACTS OFFERED BY GOOGLE ...................................... 167

DISPUTED JURY INSTRUCTION NO. 59 PATENT – DAMAGES – DATE OF COMMENCEMENT OFFERED BY ORACLE ................................................... 168

v

DISPUTED JURY INSTRUCTION NO. 59 PATENT – DAMAGES – DATE OF
COMMENCEMENT OFFERED BY GOOGLE ......................................................... 170

**DISPUTED JURY INSTRUCTION NO. 1**
**PRELIMINARY INSTRUCTION – COPYRIGHT INFRINGEMENT**
**OFFERED BY ORACLE**

The plaintiff, [name of plaintiff]Oracle America, Inc. (referred to as "Oracle"), claims ownership of a copyrightcopyrights and seeks damages against the defendant, [name of defendant]Google Inc. (referred to as "Google"), for copyright infringement of various components of the Java software platform. The defendant denies infringing the copyright [and] [copyrights, contends that parts of the copyright iscopyrights are invalid] [, and asserts an affirmative defense, e.g., that it made a fair use of the work]. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial. At the conclusion of trial, I will provide you with written instructions that explain these legal terms in more detail.

**DEFINITION OF COPYRIGHT**

The owner of a copyright has the right to exclude any other person from (1) reproducing, (2) preparing derivative works, (3) distributing, performing,or (4) displaying, or using the work covered by copyright for a specific period of time.

Copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording,architectural work, mask works fixed in semiconductor chip products, or a computer program, computer code, or elements of computer software.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. The level of originality required to grant copyright protection is minimal, however. In copyright law, the "original element" of a work need not be new or novel. Copyright law will protect an original element of a work as long as it does not utterly lack creativity. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

[COPYRIGHT INTERESTS]

1

1  [The copyright owner may [transfer] [sell] [convey] to another person all or part of the owner's

2  property interest in the copyright, that is, the right to exclude others from reproducing, preparing

   a derivative work from, distributing, performing, or displaying, the copyrighted work. To be

3  valid, the [transfer] [sale] [conveyance] must be in writing. The person to whom a right is

   transferred is called an assignee.

4

5  One who owns a copyright may agree to let another reproduce, prepare a derivative work [of],

   distribute, perform, or display the copyrighted work. [To be valid, the [transfer] [sale]

6  [conveyance] must be in writing.] The person to whom this right is transferred is called an

   exclusive licensee. The exclusive licensee has the right to exclude others from copying the work

7  [to the extent of the rights granted in the license.]

8  **[HOW COPYRIGHT IS OBTAINED]**

9  [Copyright automatically exists in a work the moment it is fixed in any tangible or stable

10 medium of expression.  In the case of software, this could be expressed in source code or

11 machine-readable code.  The owner of the copyright may register the copyright by delivering to

12 the Copyright Office of the Library of Congress (which I shall refer to as the "Copyright Office")

13 a copy of the copyrighted work.  After examination and a determination that the material

14 deposited constitutes copyrightable subject matter and that legal and formal requirements are

15 satisfied, the Register of Copyrights registers the work and issues a certificate of registration to

16 the copyright owner.]

17     The case involves Java-related works created by Sun Microsystems, Inc. (referred to as

18 "Sun"), as part of Sun's development of the Java computer software platform. Sun changed its

19 name to "Oracle America, Inc." when it became a subsidiary of Oracle Corporation. Oracle

20 America, Inc. is the same legal entity that was the original owner of the copyrights at issue in this

21 case. It continues to own these copyrights. In this trial, I will refer to Oracle America, Inc. simply

22 as "Oracle."

23     Oracle's Java-related works at issue in this case are registered with the Copyright Office.

24 Because the works have been registered, the defendant, Google, has the burden to demonstrate

25 why the copyrights are not valid.  You may presume, for example, that the Java-related works at

26 issue are original because they have a valid copyright registration.  It is Google's burden to rebut

27 that presumption.

28

2

1    **[PLAINTIFF'S BURDEN OF PROOF]**

2    In this case, the plaintiff, ~~[name of plaintiff]~~Oracle, contends that the defendant, ~~[name of~~

3    ~~defendant], has infringed the plaintiff's copyright.~~ Google, has infringed Oracle's copyrights in

4    the Java software platform by copying 37 design specifications for core library application

5    programming interfaces (known as "APIs"), and by creating derivative works from those designs

6    by implementing them in Android API specifications and core libraries.  In addition, Oracle

7    accuses Google of copying 12 software code files.  A "derivative work" is a work that is based on

8    one or more pre-existing works.  The plaintiff has the burden of proving by a preponderance of

9    the evidence that the plaintiff is the owner of the copyright and that the defendant copied original

10   elements of the copyrighted work.  Preponderance of the evidence means that you must be

11   persuaded by the evidence that it is more probably true than not true that the copyrighted work

12   was infringed.

13   **[PROOF OF COPYING]**

14   To prove that ~~the defendant~~Google copied ~~the plaintiff~~Oracle's work, ~~the plaintiff~~Oracle

15   may show that ~~the defendant~~Google had access to ~~the plaintiff~~Oracle's copyrighted work and that

16   there are substantial similarities between ~~the defendant~~Google's work and ~~the plaintiff~~Oracle's

17   copyrighted work.

18   **LIABILITY FOR INFRINGEMENT**

19   One who [~~reproduces]~~[ a copyrighted work, prepares derivative works from]~~[ a

20   copyrighted work, distributes]~~ [performs][ a copyrighted work or displays] a copyrighted work

21   without authority from the copyright owner during the term of the copyright, infringes the

22   copyright.

23   [Copyright may also be infringed by [vicariously infringing][ and][ contributorily

24   infringing].] the copyright.

25   **[VICARIOUS INFRINGEMENT]**

26   [A person is liable for copyright infringement by another if ~~the~~that person has profited

27   directly from the infringing activity and if that person had the right and ability to supervise the

28   infringing activity, whether or not ~~the~~that person knew of the infringement.]  In this case, Oracle

3

1   claims that Google has vicariously infringed the Java-related works by profiting from its failure to

2   use its ability to supervise or control the infringement of the Java-related works by mobile device

3   manufacturers, mobile service providers, and developers.

4   **[CONTRIBUTORY INFRINGEMENT]**

5   [A person is liable for copyright infringement by another if the~~the~~that person knows or

6   should have known of the infringing activity and [~~if that person~~ induces][~~,~~ causes][~~,~~ or][

7   materially contributes to~~] the activity.~~] the infringing activity.  In this case, Oracle claims that

8   Google has contributorily infringed the Java-related works by inducing or materially contributing

9   to the infringement of the Java-related works by mobile device manufacturers, mobile service

10   providers, and developers.

11   **[DEFENSES TO INFRINGEMENT]**

12   [~~The defendant~~Google contends that there is no copyright infringement.  There is no

13   copyright infringement where [the defendant independently created the challenged work][~~,~~ or the

14   defendant made fair use of a copyrighted work by reproducing copies for criticism, comment,

15   news reporting, teaching, scholarship, or research] [[~~the plaintiff has abandoned ownership of the~~

16   ~~copyrighted work].~~].

17

18   AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.0 (2007)
(modified) (citing 17 U.S.C. §101 *et seq.*); 17 U.S.C. § 101; *Merch. Transaction Sys., Inc. v.
Nelcela, Inc.* No. CV 02-1954-PHX-MHM, 2009 U.S. Dist. LEXIS 25663, at *29 (D. Ariz.
19   Mar. 17, 2009) ("copyright protection extends not only to the 'literal' elements of computer
software – the source code and object code – but also to a program's nonliteral elements,
20   including its structure, sequence, organization, user interface, screen displays and menu
structures."); *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir.
21   1989), 2011 U.S. App. LEXIS 15913 (9th Cir. Cal. Apr. 11, 2011) ("The standard of originality
required for a copyright is minimal."); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,
22   359 (1991); *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990) ("In
judicial proceedings, a certificate of copyright registration constitutes *prima facie* evidence of
23   copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not
valid."); *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) ("Because [the work] has a valid
24   certificate of registration with the copyright office… [plaintiff] is entitled to a presumption of
originality."); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005); NINTH
25   CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.6 Comment, 17.13 (2007).

26

27

28

4

1

2

**DISPUTED JURY INSTRUCTION NO. 1**
**PRELIMINARY INSTRUCTION – COPYRIGHT INFRINGEMENT**
**OFFERED BY GOOGLE**

3

4

The plaintiff, [*name of plaintiff*]Oracle America, Inc. (referred to as "Oracle"), claims ownership

5

of a copyright copyrights and seeks damages against the defendant, [*name of defendant*]Google

6

Inc. (referred to as "Google"), for copyright infringement of the Java 2 Standard Edition versions

7

1.4 and 5.0 ("Asserted Works"). The defendant Google denies infringing the copyright [and] [,

8

contends that the material copied, if any, is not protectable by copyright is invalid] [, and asserts

9

*an* affirmative *defense*defenses, *e.g.*, that it made a fair use of the work], and that its use of the

10

work was justified given Oracle's past statements and actions. To help you understand the

11

evidence in this case, I will explain some of the legal terms you will hear during this trial.  At the

12

conclusion of trial, I will provide you with written instructions that explain these legal terms in

13

more detail.

14

**DEFINITION OF COPYRIGHT**

15

The owner of a copyright has the right to exclude any other person from reproducing, preparing

16

derivative works, or distributing, performing, displaying, or using the work covered by copyright

17

for a specific period of time.

18

Copyrighted

19

 A copyrighted work can be a literary work, musical work, dramatic work, pantomime,

20

choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual

21

work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a

22

computer program.

23

24

    Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or

25

discoveries names and functional requirements cannot themselves be copyrighted.

26

27

28

5

The copyrighted work must be original.  An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

**[COPYRIGHT INTERESTS]**

[The copyright owner may [transfer] [sell] [convey] to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, preparing a derivative work from, distributing, performing, or displaying, the copyrighted work. To be valid, the [transfer] [sale] [conveyance] must be in writing. The person to whom a right is transferred is called an assignee.

One who owns a copyright may agree to let another reproduce, prepare a derivative work [of], distribute, perform, or display the copyrighted work. [To be valid, the [transfer] [sale] [conveyance] must be in writing.] The person to whom this right is transferred is called an exclusive licensee. The exclusive licensee has the right to exclude others from copying the work [to the extent of the rights granted in the license.]

**[HOW COPYRIGHT IS OBTAINED]**

[Copyright automatically exists in a work the moment it is fixed in any tangible or stable medium of expression.  In the case of software, this could be expressed in source code or machine-readable code.  The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress (which I shall refer to as the "Copyright Office") a copy of the copyrighted work. After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues and obtaining a certificate of registration to the copyright owner.].  The copyright registrations in this case were obtained by Sun Microsystems, Inc. (referred to as "Sun").  Sun changed its name to "Oracle America, Inc." when Oracle Corporation purchased Sun, but it is still the same legal entity, such that Oracle is bound by Sun's actions, inaction and prior statements.

**[PLAINTIFF'S BURDEN OF PROOF]**

In this case, the plaintiff, [*name of plaintiff*]Oracle, contends that the defendant, [*name of defendant*], has infringed the plaintiff's copyright. Google, has infringed Oracle's copyrights in its Asserted Works by copying from 11 code files and 37 design specifications for application

6

programming interfaces (known as "APIs") and creating derivative works based on those API design specifications.  A "derivative work" is a work that is based on one or more pre-existing works.  The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyright and that the defendant copied original, protectable elements of the copyrighted work.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

**[PROOF OF COPYING]**

To prove that the defendantGoogle copied the plaintiffOracle's work, the plaintiffOracle may show that the defendantGoogle had access to the plaintiffOracle's copyrighted work and that there are substantial similarities between the defendantGoogle's work and the plaintiffOracle's copyrighted work, or, if the range of protectable and unauthorized expression is narrow, that they are virtually identical.

**LIABILITY FOR INFRINGEMENT**

One who [reproduces] [ original, protectable elements of a copyrighted work, prepares derivative works from] [distributes] [performs] [displays] original, protectable elements of a copyrighted work, or distributes original, protectable elements of a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.

[

Copyright may also be infringed by [vicariously infringing] [ and] [ contributorily infringing].] the copyright.
[VICARIOUS INFRINGEMENT]

[A person is liable for copyright infringement by another if thethat person has profited directly

from the infringing activity and if that person had the right and ability to supervise the infringing activity, whether or not ~~the~~that person knew of the infringement.]
[CONTRIBUTORY INFRINGEMENT]

[A person is liable for copyright infringement by another if ~~the~~that person knows or should have known of the infringing activity and [if that person intentionally induces] [causes] [ or] [ materially contributes to] the infringing activity.]
[DEFENSES TO INFRINGEMENT]

[~~The defendant~~Google contends that there is no copyright infringement. There is no copyright infringement ~~where [the defendant independently created the challenged work] [the defendant~~, for example, if Google copied unprotected or unoriginal elements of the copyrighted work, or if Google made a fair use of a copyrighted work ~~by reproducing copies for criticism, comment, news reporting, teaching, scholarship, or research] [[the plaintiff has abandoned ownership of the copyrighted work].]~~.

***SOURCES:***

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.0 (2007) (modified) (citing 17 U.S.C. §101 *et seq.*); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994), *cert. denied*, 513 U.S. 1184 (1995); Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim ("Copyright MSJ Order"), at 7-8 (September 15, 2011) (Dkt. No. 433); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 (2005); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636 (9th Cir. 2008).

8

1

2

3

**DISPUTED JURY INSTRUCTION NO. 2**
**PRELIMINARY INSTRUCTION – PATENT –**
**WHAT A PATENT IS AND HOW ONE IS OBTAINED**
**OFFERED BY ORACLE**

4   This case involves a dispute relating to ~~a~~ United States ~~patent~~patents.  Before summarizing

5   the positions of the parties and the legal issues involved in the dispute, let me take a moment to

6   explain what a patent is and how one is obtained.

7   Patents are granted by the United States Patent and Trademark Office (sometimes called

8   ~~the PTO || ).~~"the PTO").  The PTO has granted six patents to Oracle's Java-related products and

9   methods at issue in this case.  I refer to these as "the Oracle Patents."  The process of obtaining a

10   patent is called patent prosecution.  A valid United States patent gives the patent owner the right

11   ~~[for~~ – for 17 years from the date the patent issued for patents filed before June 8, 1995, and up to

12   20 years from the date the patent application was filed~~] [for 17 years from the date the patent~~

13   ~~issued]~~ for others – to prevent others from making, using, offering to sell, or selling the patented

14   invention within the United States or from importing it into the United States without the patent

15   holder's permission.  A violation of the patent owner~~'~~'s rights is called infringement.  The patent

16   owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in

17   federal court~~.~~, as the plaintiff Oracle America, Inc. has done here.

18   To obtain a patent one must file an application with the PTO. The PTO is an agency of the

19   federal government and employs trained examiners who review applications for patents.  The

20   application includes what is called a "specification," which must contain a written description of

21   the claimed invention telling what the invention is, how it works, how to make it and how to use

22   it so others skilled in the field will know how to make or use it.  The specification concludes with

23   one or more numbered sentences.  These are the patent "claims."  When the patent is eventually

24   granted by the PTO, the claims define the boundaries of its protection and give notice to the

25   public of those boundaries.

26   After the applicant files the application, a PTO patent examiner reviews the patent

27   application to determine whether the claims are patentable and whether the specification

28   adequately describes the invention claimed. In examining a patent application, the patent

9

1   examiner reviews records available to the PTO for what is referred to as "prior art."  The

2   examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is

3   defined by law, and I will give you at a later time specific instructions as to what constitutes prior

4   art.  However, in general, prior art includes things that existed before the claimed invention, that

5   were publicly known, or used in a publicly accessible way in this country, or that were patented

6   or described in a publication in any country.  The examiner considers, among other things,

7   whether each claim defines an invention that is new, useful, and not obvious in view of the prior

8   art.  A patent lists the prior art that the examiner considered; this list is called the "cited

9   references."

10      After the prior art search and examination of the application, the patent examiner then

11  informs the applicant in writing what the examiner has found and whether any claim is

12  patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office

13  action."  If the examiner rejects the claims, the applicant then responds and sometimes changes

14  the claims or submits new claims.  This process, which takes place only between the examiner

15  and the patent applicant, may go back and forth for some time until the examiner is satisfied that

16  the application and claims meet the requirements for a patent.  The papers generated during this

17  time of communicating back and forth between the patent examiner and the applicant make up

18  what is called the "prosecution history."  All of this material becomes available to the public no

19  later than the date when the patent issues.

20      The fact that the PTO grants a patent does not necessarily mean that any invention

21  claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not

22  have had available to it all the information that will be presented to you.  A person accused of

23  infringement has the right to argue here in federal court that a claimed invention in the patent is

24  invalid because it does not meet the requirements for a patent.  Here, since the PTO found the

25  Oracle Patents patentable, you shall presume that they are valid.  Google has the burden of

26  establishing invalidity of a patent or any claim thereof by clear and convincing evidence.

27

28  AUTHORITY:  35 U.S.C. § 282 (Presumption of Validity; defenses); MODEL PATENT JURY
    INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No. A.1 (Nov. 29, 2007) (modified);

10

1   Federal Circuit Bar Association Model Patent Jury Instructions No. A.1 (Feb. 18,
2   2010).

**DISPUTED JURY INSTRUCTION NO. 2**
**PRELIMINARY INSTRUCTION – PATENT –**
**WHAT A PATENT IS AND HOW ONE IS OBTAINED**
**OFFERED BY GOOGLE**

This case involves a dispute relating to United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The PTO has granted six patents at issue in this case. I refer to these as "the Asserted Patents." The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right – for 17 years from the date the patent issued for patents filed before June 8, 1995, and up to 20 years from the date the patent application was filed for others – [for up to 20 years from the date the patent application was filed] [for 17 years from the date the patent issued] to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court, as the plaintiff, Oracle America, Inc. has done here.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent

12

1     examiner reviews records available to the PTO for what is referred to as "prior art."  The

2     examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is

3     defined by law, and I will give you at a later time specific instructions as to what constitutes prior

4     art.  However, in general, prior art includes things that existed before the claimed invention, that

5     were publicly known, or used in a publicly accessible way in this country, or that were patented

6     or described in a publication in any country.  The examiner considers, among other things,

7     whether each claim defines an invention that is new, useful, and not obvious in view of the prior

8     art.  A patent lists the prior art that the examiner considered; this list is called the "cited

9     references."

10           After the prior art search and examination of the application, the patent examiner then

11     informs the applicant in writing what the examiner has found and whether any claim is

12     patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office

13     action."  If the examiner rejects the claims, the applicant then responds and sometimes changes

14     the claims or submits new claims.  This process, which takes place only between the examiner

15     and the patent applicant, may go back and forth for some time until the examiner is satisfied that

16     the application and claims meet the requirements for a patent.  The papers generated during this

17     time of communicating back and forth between the patent examiner and the applicant make up

18     what is called the "prosecution history."  All of this material becomes available to the public no

19     later than the date when the patent issues.

20           The fact that the PTO grants a patent does not necessarily mean that any invention

21     claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not

22     have had available to it all the information that will be presented to you.  Under some

23     circumstances, a patent might undergo a process know as "reexamination."  A reexamination is a

24     procedure that allows the PTO to reopen its examination of a patent to verify whether the claims

25     were properly issued.  Anyone can ask for the PTO to reexamine a patent, and can use materials

26     that either were or were not previously before the PTO to support that request, but must provide

27     documents that raise a "substantial new question of patentability."  The documents supporting a

28     request for reexamination are frequently documents that the PTO has not yet reviewed in the

1   context of the patent being reexamined.  Once sued, A person a company accused of infringement

2   has the right to argue here in federal court that a claimed invention in the patent is invalid because

3   it does not meet the requirements for a patent.  Here, since the PTO found the Asserted Patents

4   patentable, you shall presume that they are valid.  Google has the burden of establishing invalidity

5   of a patent or any claim thereof by clear and convincing evidence.

6

7   AUTHORITIES:  35 U.S.C. 301 et seq.; MODEL PATENT JURY INSTRS. FOR THE N. DIST. OF

8   CAL., Nov. 29, 2007, No.A1 (modified); FED. CIR. BAR ASS'N MODEL PATENT JURY INSTRS., Feb.

9   18, 2010, No. A1.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

1

2

**STIPULATED JURY INSTRUCTION NO. 3**
**PRELIMINARY INSTRUCTION – PATENT – PATENTS AT ISSUE**

3       [The court should show the jury the ~~patent~~six patents at issue and point out the parts

4   including the specification, drawings and claims ~~including the claims~~at issue.  The court could at

5   this point also hand out its construction of any claim terms and the glossary.]

6

7   AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA
No. A.2 (Nov. 29, 2007) (modified).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DISPUTED JURY INSTRUCTION NO. 4**
2    **PRELIMINARY INSTRUCTION – PATENT – SUMMARY OF CONTENTIONS**
     **OFFERED BY ORACLE**

3    To help you follow the evidence, I will now give you a summary of the positions of the

4    parties.

5    The parties in this case are Oracle America, Inc. and Google Inc. (referred to as

6    "Google"). The case involves six United States patents obtained by Sun Microsystems, Inc.

7    (referred to as "Sun"), as part of Sun's development of the Java computer software platform. Sun

8    changed its name to "Oracle America, Inc." when it became a subsidiary of Oracle Corporation.

9    Oracle America, Inc. is the same legal entity that was the original owner of the patents at issue in

10   this case. It continues to own these patents. In this trial, I will refer to Oracle America, Inc. simply

11   as "Oracle." I will refer collectively to the six patents involved in this case as "the Oracle

12   Patents."

13   Oracle filed suit in this court seeking money damages from Google for allegedly

14   infringing the Oracle Patents by making, using, selling, or offering for sale products and methods

15   that Oracle argues are covered by 26 asserted claims of the Oracle Patents.

16   The ~~parties in this case are [patent holder] and [alleged infringer]. The case involves a United~~

17   ~~States patent obtained by [inventor], and transferred by [inventor] to [patent holder]. The patent~~

18   ~~involved in this case is United States Patent Number [patent number] which lists [inventor] as the~~

19   ~~inventor.~~ Oracle Patents are United States Patent Numbers RE38,104; 5,966,702; 6,061,520;

20   6,190,205; 6,192,476; and 7,426,720.  For convenience, the parties and I will often refer to ~~this~~

21   ~~patent as the [~~the individual patents by the last three numbers of the ~~patent] patent, [last three~~

22   ~~numbers of patent] being the last three numbers of its~~ patent number.  Thus, the Oracle Patents are

23   the "'104 patent" the "'702 patent," the "'520 patent," the "'205 patent," the "'476 patent," and

24   the "'720 patent."  The claims of the Oracle Patents that are asserted by Oracle are as follows:

25   For the '104 patent: claims 11, 27, 29, 39, 40, and 41;

26   For the '702 patent: claims 1, 6, 7, 12, 13, 15, and 16;

27   For the '520 patent: claims 1, 8, 12, and 20;

28   For the '205 patent: claims 1 and 2;

16

1      For the '476 patent: claim 14; and

2      For the '720 patent: claims 1, 6, 10, 19, 21, and 22.

3      [Patent holder] filed suit in this court seeking money damages from [alleged infringer] for

4   allegedly infringing the [ ] patent by [making], [importing], [using], [selling], and [offering for sale]

5   [products] [methods] that [patent holder] argues are covered by claims [ ] of the patent. [[Patent

6   holder] also argues that [alleged infringer]Oracle also argues that Google has [actively induced

7   infringement of these claims of the [ ] patent by others] [and] [and contributed to the infringement

8   of these claims of the [ ] patentOracle Patents by others].]  The [products] [methods] that are

9   alleged to infringe are [list of accused products or methods]. the Oracle Patents are certain Android

10  mobile devices and software and the Android Software Development Kit ("SDK").  The Android

11  SDK is a set of development tools that a programmer can use to develop applications for Android.

12      Oracle claims that Google itself infringes the Oracle Patents and is also legally responsible

13  for the infringement of the Oracle Patents by others.

14      [Alleged infringer]Google denies that it has infringed claims [ ] of the [ ] patentOracle

15  Patents and argues that, in addition, that the claimspatents are invalid. [Add other defenses, if

16  applicable].

17      Your job will be to decide whether any of the 26 asserted claims [ ] of the [ ] patentOracle

18  Patents have been infringed and whether those claims are invalid.  If you decide that any claim of

19  the [ ] patentOracle Patents has been infringed and is not invalid, you will then need to decide any

20  money damages to be awarded to [patent holder]Oracle to compensate it for the infringement.

21  [You will also need to make a finding as to whether the infringement was willful.  If you decide

22  that any infringement was willful, that decision should not affect any damage award you give.  I

23  will take willfulness into account later.]

24      It is my job as judge to determine the meaning of any claim language that needs

25  interpretation.  You must accept the meanings I give you and use them when you decide whether

26  any claim of the patent has been infringed and whether any claim is invalid.

27

28  AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA
    No. A.3 (Nov. 29, 2007) (modified); *see* FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT

17

1   JURY INSTRUCTIONS No. A.3 (Feb. 18, 2010); *Trans-World Mfg. Corp. v. Al Nyman & Sons*, Inc.,
2   750 F.2d 1552, 1567 (Fed. Cir. 1984).

**DISPUTED JURY INSTRUCTION NO. 4**
**PRELIMINARY INSTRUCTION – PATENT – SUMMARY OF CONTENTIONS**
**OFFERED BY GOOGLE**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Oracle America, Inc. and Google Inc. (referred to as "Google"). The case involves a~~ six~~ United States patents obtained by Sun Microsystems, Inc. (referred to as "Sun")~~, and transferred by [inventor] to [patent holder].~~ Sun changed its name to "Oracle America, Inc." when Oracle Corporation purchased Sun, but it is still the same legal entity, such that Oracle America, Inc. is bound by Sun's actions, inaction and prior statements. In this trial, I will refer to Oracle America, Inc. simply as "Oracle."

Oracle filed suit in this court seeking money damages from Google for allegedly infringing the ~~[ ] patent~~ Asserted Patents by making, using, selling, or offering for sale products and methods that Oracle argues are covered by 26 asserted claims ~~[ ]~~ of the ~~patent~~ Asserted Patents.

The Asserted Patents are ~~patent involved in this case is~~ United States Patent Numbers RE38,104; 5,966,702; 6,061,520; 6,190,205; 6,192,476; and 7,426,720 ~~which lists [inventor] as the inventor~~. For convenience, the parties and I will often refer to ~~this as~~ the individual patents by the last three numbers of the patent~~, [last three numbers of patent] being the last three numbers of its patent~~ number. Thus, the Asserted Patents are the "'104 patent" the "'702 patent," the "'520 patent," the "'205 patent," the "'476 patent," and the "'720 patent." The claims of the Asserted Patents that are asserted by Oracle are as follows:

For the '104 patent: claims 11, 27, 29, 39, 40, and 41;

For the '702 patent: claims 1, 6, 7, 12, 13, 15, and 16;

For the '520 patent: claims 1, 8, 12, and 20;

For the '205 patent: claims 1 and 2;

For the '476 patent: claim 14; and

For the '720 patent: claims 1, 6, 10, 19, 21, and 22.

1    The products that are alleged to infringe the Asserted Patents are certain Android mobile

2    devices and software and the Android Software Development Kit ("SDK").  The Android SDK is

3    a set of development tools that a programmer can use to develop applications for Android.

4    Oracle claims that Google infringes the Oracle Patents itself and is also legally responsible

5    for the infringement of the Oracle Patents by others.  [[Patent holder] also argues that [alleged

6    infringer] has [actively induced infringement of these claims of the [ ] patent by others] [and]

7    [contributed to the infringement of these claims of the [ ] patent by others].]

8    Google denies that it has infringed claims [ ] of the [ ] patent the Oracle Patents and

9    argues that, in addition, that the claims patents are invalid.

10    Your job will be to decide whether any of the asserted claims [ ] of the[ ] patent

11    Asserted Patents have been infringed and whether those claims are invalid.  If you decide that any

12    claim of the [ ] patent Asserted Patents has been infringed and is not invalid, you will then need

13    to decide any money damages to be awarded to Oracle to compensate it for the infringement.

14    You will also need to make a finding as to whether the infringement was willful.  If you decide

15    that any infringement was willful, that decision should not affect any damage award you give.  I

16    will take willfulness into account later.

17    It is my job as judge to determine the meaning of any claim language that needs

18    interpretation.  You must accept the meanings I give you and use them when you decide whether

19    any claim of the patent has been infringed and whether any claim is invalid.

20    AUTHORITIES:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF

21    CALIFORNIA No. A.3 (Nov. 29, 2007) (modified); *see* FEDERAL CIRCUIT BAR ASSOCIATION

22    MODEL PATENT JURY INSTRUCTIONS No. A.3 (Feb. 18, 2010); *National Union Fire Ins. Co. of*

23    *Pittsburgh, Pa. v. Stauffer Chemical Co.*, 1991 WL 138431 (Del.Super. July 15, 1991).

24

25

26

27

28

20

1

**STIPULATED JURY INSTRUCTION NO. 5**
**PRELIMINARY INSTRUCTION – PATENT – OVERVIEW OF APPLICABLE LAW**

2

3    ~~[The Court may wish to give preliminary instructions that are applicable to the specific issues in~~
~~the case. This may help focus the jury on the facts that are relevant to the issues it will have to~~
4    ~~decide. Even if preliminary instructions are given, the Court would, nonetheless, give complete~~
~~instructions at the close of evidence.]~~

5        In deciding the issues I just discussed, you will be asked to consider specific legal

6    standards. I will give you an overview of those standards now and will review them in more

7    detail before the case is submitted to you for your verdict.

8        The first issue you will be asked to decide is whether ~~[alleged infringer]~~Google has

9    infringed the asserted claims of the ~~[ ] patent.~~Oracle Patents. Infringement is assessed on a claim-

10   by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to

11   another. There are a few different ways that a patent may be infringed. ~~I will explain the~~

12   ~~requirements for each of these types of infringement to you in detail at the conclusion of the case.~~

13   ~~In general, however, [alleged infringer]~~In general, Google may infringe any of the ~~[ ]~~

14   ~~patent~~Oracle Patents by making, using, selling, or offering for sale, in the United States~~, or by~~

15   ~~importing into the United States,~~ a product or by using a method meeting all the requirements of

16   ~~a~~at least one claim of the ~~[ ] patent. [Alleged infringer]~~Oracle Patents. Google may also

17   indirectly infringe the ~~[ ] patent~~Oracle Patents by contributing to infringement by another entity,

18   or by inducing another person or entity to infringe. I will provide you with more detailed

19   instructions on the requirements for each of these types of infringement at the conclusion of the

20   case.

21        Another issue you will be asked to decide is whether the ~~[ ] patent is~~Oracle Patents are

22   invalid. A patent may be invalid for a number of reasons, including because it claims subject

23   matter that is not new or is obvious. For a claim to be invalid because it is not new, ~~[alleged~~

24   ~~infringer]~~Google must show, by clear and convincing evidence, that all of the elements of a claim

25   are present in a single previous device or method, or sufficiently described in a single previous

26   printed publication or patent. We call these "prior art." If a claim is not new, it is said to be

27   anticipated. Another way that a claim may be invalid is that it may have been obvious. Even

28

21

though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.  You will need to consider a number of questions in deciding whether the ~~invention(s)~~inventions claimed in the ~~[ ] patent~~Oracle Patents are obvious.  I will provide you detailed instructions on these questions at the conclusion of the case.

~~[Where a written description or enablement defense is presented: A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement. In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent.1 The disclosure of a patent must also meet the "enablement" requirement. To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.]~~

~~1 Under review in Ariad v. Lilly, Appeal No. 2008-1248 (Fed. Cir. appeal reinstated Aug. 21, 2009) (en banc).~~

~~If you decide that any claim of the [ ] patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder] to compensate it for the infringement. A damages award should put [patent holder] in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what [patent holder] would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate [patent holder] and not to punish [alleged infringer]. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate [patent holder] for the infringement, in order to punish [alleged infringer]. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.~~

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. A.4 (Feb. 18, 2010) (modified); *see* MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No.A.4 (Nov. 29, 2007); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1567 (Fed. Cir. 1984).

**DISPUTED JURY INSTRUCTION NO. 6**
**COPYRIGHT – DEFINITION OF COPYRIGHT**
**OFFERED BY ORACLE**

Copyright is the exclusive right to copy. This right to copy includes the exclusive ~~right[s]~~rights to:

~~(1) [[authorize~~1. Authorize, or make additional copies, or otherwise~~]~~ reproduce the copyrighted work in ~~[copies]~~ ~~[phonorecords]]~~;

~~(2) [[recast~~2. Recast, transform,~~ or~~ adapt the work, that is~~]~~ to prepare derivative works based upon the copyrighted work~~]~~;

~~(3) [distribute~~3. Distribute copies~~]~~ ~~[sound recordings]~~ of the copyrighted work to the public or by ~~[~~sale or other transfer of ownership~~]~~ ~~[~~, or by ~~[rental or lease or~~ lending~~]]~~; or

4. Display publicly a copyrighted work.

~~(4) [perform publicly a copyrighted [literary work,] [musical work,] [dramatic work,] [choreographic work,] [pantomime work,] [motion picture] [or] [specify other audiovisual work]];~~

~~(5) [display publicly a copyrighted [literary work,] [musical work,] [dramatic work,] [choreographic work,] [pantomime work,] [pictorial work,] [graphic work,] [sculptural work,] [the individual images of a motion picture] [or] [specify other audiovisual work]]; and~~

~~(6) [perform a sound recording by means of digital audio transmission].~~

It is the owner of a copyright who may exercise ~~[this]~~ [these] exclusive ~~right[s] to copy.~~ ~~The term "owner" includes [the author of the work] [an assignee] [an exclusive licensee]~~ rights to copy. In general, copyright law protects against ~~[the (1)~~ production~~]~~ ~~[~~, (2) adaptation~~]~~ ~~[~~, (3) distribution~~]~~ ~~[performance]~~ ~~[~~, and (4) display~~]~~ of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce ~~the[se] right[s]~~these rights to exclude others in an action for copyright infringement. ~~[~~ Even though one may acquire a copy of the copyrighted work, the copyright owner retains rights and control of that copy, including uses that may result in additional copies or alterations of the work.~~]~~

Copying, or "infringement" of a copyright, refers to one or more of the various activities that violate any of the copyright owner's exclusive rights. A product can infringe a copyright in more than one way.

pa-1492148

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.1 (2007) (modified) (citing 17 U.S.C. § 106; *Kalantari v. NITV, Inc.*, 352 F.3d 1202, 1207–08 (9th Cir. 2003) ("Upon obtaining a copyright, an author automatically acquires certain rights that are inherent in the very nature of a copyright.  Specifically, the copyright owner obtains the six exclusive rights of copyright… as well as the right to transfer any or all of those rights…."));  *Merch. Transaction Sys., Inc. v. Nelcela, Inc.* No. CV 02-1954-PHX-MHM, 2009 U.S. Dist. LEXIS 25663, at *29 (D. Ariz. Mar. 17, 2009); *see* NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.4 Comment (2007).

1

**DISPUTED JURY INSTRUCTION NO. 6**
**COPYRIGHT – DEFINED**
**OFFERED BY GOOGLE**

2

3

4    Copyright is the exclusive right to copy. This right to copy includes the exclusive ~~right[s]~~rights

5    to:

6

7    (1) [[authorize, or ~~make additional copies, or~~ otherwise] reproduce the copyrighted work in

8    [copies] ~~[phonorecords]]~~;

9    ~~.~~

10   (2) [[recast, transform~~, or~~ adapt the work, that is]~~, prepare derivative works based upon the

11   copyrighted work];

12

13   (3) [distribute [copies] ~~[sound recordings]~~ of the copyrighted work to the public by [sale or other

14   transfer of ownership] ~~[or by [rental *or* lease *or* lending]]~~;

15

16   ~~(4) [perform publicly a copyrighted [literary work,] [musical work,] [dramatic work,]~~

17   ~~[choreographic work,] [pantomime work,] [motion picture] [or] *[specify other audiovisual work*]];~~

18

19   ~~(5) [~~; or

20        (4) display publicly a copyrighted ~~[literary work,] [musical work,] [dramatic work,]~~

21   ~~[choreographic work,] [pantomime work,]~~ [pictorial work,] [graphic work,] [sculptural work,]

22   ~~[the individual images of a motion picture] [or] [*specify other audiovisual work*]];~~ and

23

24   ~~(6) [perform a sound recording by means of digital audio transmission]~~work.

25

26   It is the owner of a copyright who may exercise ~~[this] [these]~~ exclusive ~~right[s] to copy. The term~~

27   ~~"owner" includes [the author of the work] [an assignee] [an exclusive licensee]~~rights to copy. In

28   general, copyright law protects against ~~[production] [adaptation]~~ [reproduction and distribution]

25

1    [performance] [display] of substantially similar or virtually identical copies of the owner's

2    copyrighted work without the owner's permission. An owner may enforce the[se] right[s]these

3    rights to exclude others in an action for copyright infringement. [Even though one may acquire a

4    copy of the copyrighted work, the copyright owner retains rights and control of that copy,

5    including uses that may result in additional copies or alterations of the work.]

6    *SOURCES:*

7    NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.1 (2007) (modified);
     *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994), *cert. denied*, 513

8    U.S. 1184 (1995); *MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 89 F.3d 1548, 1558 (11th Cir.
     1996), 17 U.S.C.A. §106.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 7**
**COPYRIGHT – SUBJECT MATTER – GENERALLY**
**OFFERED BY ORACLE**

The ~~work[s] [identify the~~ works ~~at issue]~~ involved in this trial – the Java software platform, the Java core API package specifications, Java class libraries, and Java source code files – are known as:

~~[1.] [literary~~1. Literary works ~~[~~in which words, numbers, or other verbal or numerical symbols or indicia are expressed in such material objects like books, periodicals, manuscripts, ~~phonorecords, films, tapes,~~ disks or ~~cards];]~~compilations of data, and computer databases; and

~~[2.] [musical works, including any accompanying words;]~~

~~[3.] [dramatic works, including any accompanying music;]~~

~~[4.] [pantomimes;]~~

~~[5.] [choreographic works;]~~

~~[6.] [pictorial works;] [graphic works;] [sculptural works;] [such as two-dimensional and three-dimensional works of fine, graphic and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models and technical drawings, including architectural plans;]~~

~~[7.] [motion pictures] [and other audiovisual works] [in which a series of related images which, when shown in succession, convey an impression of motion];]~~

~~[8.] [sound recordings][;] [, which are works that result from fixation of a series of musical, spoken, or other sounds, be it on disks, tapes or other phonorecords;]~~

~~[9.] [architectural works][;] [, which are plans for the design of a building;]~~

~~[10.] [mask works fixed in semiconductor chip products;]~~

~~[11.] [computer~~2.    Computer programs~~][~~, that is, a literary work composed of a set of statements or instructions to be used directly or indirectly in a computer to bring about a certain result~~]]~~.

Specifically, Oracle contends that Google has infringed the Java-related works by copying 37 core library API design specifications and by creating derivative works from those designs by implementing them in Android API specifications and core libraries.  In addition, Oracle accuses Google of copying 12 software code files.

27

Computer programs are expressly subject to copyright protection by law.  You are instructed that a copyright may be obtained in [identify the work[s] at issue] the 37 API design specifications at issue in this case and the derivative works from them.  Copyright protection also extends to the source code, object code, and other elements of computer software, such as structure, sequence, organization, user interface, screen displays, and menu structures.

[These work[s]] The works involved in this trial can be protected by the copyright law. Only that part of the work[s] those parts of the software platforms, computer code files, and API design specifications that are comprised of original works of authorship [fixed] [and are produced] in any tangible [medium] [, fixed, or stable form] of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is, are protected by the Copyright Act.]

[Copyright protection for an original work of authorship does not extend to any [idea] [procedure] [process] [system] [method of operation] [concept] [principle] [discovery], regardless of the form in which it is described, explained, illustrated, or embodied.]

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.2 (2007) (modified) (citing 17 U.S.C. § 102); ECF No. 433 at 1, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim ("MSJ Order") (September 15, 2011); 17 U.S.C. § 101; *Merch. Transaction Sys., Inc. v. Nelcela, Inc.* No. CV 02-1954-PHX-MHM, 2009 U.S. Dist. LEXIS 25663, at *29 (D. Ariz. Mar. 17, 2009); NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.3 (2007).

**DISPUTED JURY INSTRUCTION NO. 7**
**COPYRIGHT – SUBJECT MATTER – GENERALLY**
**OFFERED BY GOOGLE**

1

2

3

4   ~~The work[s] [*identify the works at issue*]~~The Asserted Works involved in this trial are known as~~:~~

5

6   ~~[1.] [literary works [in which words, numbers, or other verbal or numerical symbols or indicia are~~

7   ~~expressed in such material objects like books, periodicals, manuscripts, phonorecords, films,~~

8   ~~tapes, disks or cards];]~~

9

10  ~~[2.] [musical works, including any accompanying words;]~~

11

12  ~~[3.] [dramatic works, including any accompanying music;]~~

13

14  ~~[4.] [pantomimes;]~~

15

16  ~~[5.] [choreographic works;]~~

17

18  ~~[6.] [pictorial works;] [graphic works;] [sculptural works;] [such as two-dimensional and three-~~

19  ~~dimensional works of fine, graphic and applied art, photographs, prints and art reproductions,~~

20  ~~maps, globes, charts, diagrams, models and technical drawings, including architectural plans;]~~

21

22  ~~[7.] [motion pictures] [and other audiovisual works] [in which a series of related images which,~~

23  ~~when shown in succession, convey an impression of motion];]~~

24

25  ~~[8.] [sound recordings][;] [, which are works that result from fixation of a series of musical,~~

26  ~~spoken, or other sounds, be it on disks, tapes or other phonorecords;]~~

27

28  ~~[9.] [architectural works][;] [, which are plans for the design of a building;]~~

29

1

2   [10.] [mask works fixed in semiconductor chip products;]

3

4   [11.] [computer programs][, that is, a literary work composed of a set of statements or instructions

5   to be used directly or indirectly in a computer to bring about a certain result]].

6

7   You are instructed that a copyright may be obtained in *[identify the work[s] at issue]*.

8

9   [These work[s] can be protected by the copyright law. Only that part of the work[s] computer

10  programs.

11       Specifically, Oracle accuses Google of copying 11 software code files and 37 design

12  specifications for application programming interface packages ("APIs") and creating a derivative

13  work from those 37 specifications in the Android API specifications and in Android's

14  implementation of the API specifications.

15       Copyright protection only extends to elements of computer programs that incorporate

16  material is that is original and creative.  Material that was previously created, or which is

17  mundane or otherwise not creative, is not entitled to copyright protection.

18       Only that part of the works comprised of original works of authorship [fixed] [produced]

19  in any tangible [medium] [ form] of expression from which it can be perceived, reproduced, or

20  otherwise communicated, either directly or with the aid of a machine or device is protected by the

21  Copyright Act.]

22

23  [

24       Copyright protection for an original work of authorship does not extend to any [idea] [,

25  procedure] [, process] [, system] [, method of operation] [, concept] [principle] [discovery], name,

26  or functional requirement regardless of the form in which it is described, explained, illustrated, or

27  embodied.]  I will explain these concepts further later in these instructions.

28

1        Words and short phrases such as names, titles, and slogans, including the names of the

2   Java language API files, packages, classes, and methods, are not protectable by copyright.

3   *SOURCES:*

4   NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.2 (2007) (modified);

5   *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992); *Incredible Techs v.*

6   *Virtual Techs*, 400 F.3d 1007, 1012 (7th Cir. 2005); 37 C.F.R. 202.1(a); *Planesi v. Peters*, No.

7   04-16936, slip op. at *1 (9th Cir. 27 Aug. 15, 2005);  Copyright MSJ Order at 7-8, Dkt. No. 433;

8   *Lotus Dev. Corp. v. Borland Int'l, Inc.* 49 F.3d 807, 815 (1st Cir. 1995), *aff'd by an equally*

9   *divided court*, 516 U.S. 233 (1996).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 8**
**COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION**
**OFFERED BY ORACLE**

Copyright law allows the ~~author~~owner of an original work to prevent others from copying the way or form the author used to express the ideas in the ~~author's~~copyrighted work.  Only the particular [way of expressing] [expression of] an idea can be copyrighted.  Copyright law does not give the ~~author~~copyright owner the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries. ~~[In order to protect any ideas in the work from being copied, the author must secure some other form of legal protection, because ideas cannot be copyrighted]~~ However, just because a written work describes or embodies a procedure, process, system, method of operation, concept, principle or discovery does not mean that it is automatically exempt from copyright protection.  Whether a component of a work is protected depends on whether, on the particular facts of each case, the component in question qualifies as the expression of an idea, or an idea itself.

I have already determined that the 37 API design specifications at issue in this case are not methods of operation; therefore this is not a basis for finding that these API design specifications are not copyrightable.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work.  The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular [way of expressing] [expression of] that idea in the work is not copied.

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.3 (2007) (modified) (citing 17 U.S.C. § 102(b)); ECF No. 433 at 10-11, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011); *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989); *L.A. News Serv. v. Reuters Tv Int'l*, 149 F.3d 987, 990-91 (9th Cir. 1998); *L.A. News Serv. v. Reuters Tv Int'l*, 340 F.3d 926 (9th Cir. 2003); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir. 1939); s*ee also Rundquist v. Vapiano*, No. 09-2207 (BAH), 2011 U.S. Dist. LEXIS 78781, at *53-54 (D.D.C. July 20, 2011).

**DISPUTED JURY INSTRUCTION NO. 8**
**COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION**
**OFFERED BY GOOGLE**

Copyright law allows the ~~author~~owner of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular [way of expressing] [expression of] an idea can be ~~copyrighted.~~protected under copyright law. The Copyright ~~law~~Act does not give the ~~author~~copyright owner the right to prevent others from copying or using the underlying ideas contained in ~~the~~a work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries. [In order to protect any ideas in the work from being copied, the author must secure some other form of legal protection, such as a patent, because ideas cannot be copyrighted].

.

A method of operation is the means by which a person operates something, whether it be a car, a food processor, or a computer. A method of operation is not protectable by copyright.

The API package specifications at issue are not "methods of operation."  By "API package specifications," I refer to the written documentation for the APIs that describe the APIs.  I have not decided whether the APIs are methods of operation.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work. The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular [way of expressing] [expression of] that idea in the work is not copied.

***SOURCES:***
NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.3 (2007) (modified); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994), *cert. denied*, 513 U.S. 1184 (1995); *Computer Associates Intern., Inc. v. Altai, Inc.*, 982 F. 2d 693, 707-10 (2d Cir. 1992); *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir.), *cert. denied*, 469 U.S.

1037 (1984); *Allen v. Academic Games*, 89 F.3d 614, 617-18 (9th Cir. 1996). Copyright MSJ Order at 10-11 (Dkt. No. 433).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 9**
**COPYRIGHT – SUBJECT MATTER – FUNCTIONAL REQUIREMENTS**
**OFFERED BY ORACLE**

[Oracle contends that a "Functional Requirements" instruction is not necessary here and that Google's proposed instruction is both misleading and an inaccurate statement of the law.]

1

2

**DISPUTED JURY INSTRUCTION NO. 9**
**COPYRIGHT – SUBJECT MATTER – FUNCTIONAL REQUIREMENTS**
**OFFERED BY GOOGLE**

3

4

5

6

7

8

9

10

        Computer programs are, in essence, utilitarian articles that accomplish tasks.  As such,

they contain many logical and structural elements that are dictated by the function to be

performed, or by external factors such as compatibility requirements and industry demands.

These functional requirements are not protectable by copyright.  Copyright also does not protect

any expressive elements of the work that must necessarily be used in order to express the

functional concepts, so the copyright is not violated when someone uses these functional

concepts, functional requirements, or necessary expressive elements from a copyrighted work.

11

12

13

*SOURCE:*

*Sega Enters. Ltd. v. Accolade, Inc., 977 F.2d 1510, 1522, 1524 (9th Cir. 1992).*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

pa-1492148

**DISPUTED JURY INSTRUCTION NO. 10**
**COPYRIGHT INFRINGEMENT – ELEMENTS – OWNERSHIP AND COPYING**
**OFFERED BY ORACLE**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On ~~the plaintiff~~Oracle's copyright infringement claim, ~~the plaintiff~~Oracle has the burden of proving both of the following by a preponderance of the evidence:

1. ~~the plaintiff~~Oracle is the owner of a valid copyright; and

2. ~~the defendant~~Google copied original elements from the copyrighted work.

If you find that ~~the plaintiff~~Oracle has ~~proved~~proven both of these elements, your verdict should be for ~~the plaintiff~~Oracle.  If, on the other hand, ~~the plaintiff~~Oracle has failed to prove either of these elements, your verdict should be for ~~the defendant.~~Google.

If Google infringed Oracle's copyright in the United States, Google is also liable to the extent it earned profits because its infringement resulted in further copying by others – regardless of where that further copying occurred.

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No.  17.4 (2007) (modified) (citing 17 U.S.C. § 501(a)–(b); *Three Boys Music Corp v. Bolton*, 212 F.3d 477, 481–82 (9th Cir. 2000) (citing *Arnstein v. Porter*, 154 F.2d 464, 469 (2d Cir. 1946) (copying and improper appropriation are issues of fact for the jury); *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *see Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004); *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989); *L.A. News Serv. v. Reuters Tv Int'l*, 149 F.3d 987, 990-91 (9th Cir. 1998); *L.A. News Serv. v. Reuters Tv Int'l*, 340 F.3d 926 (9th Cir. 2003); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir. 1939); *see also Rundquist v. Vapiano*, No. 09-2207 (BAH), 2011 U.S. Dist. LEXIS 78781, at *53-54 (D.D.C. July 20, 2011); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 2010 U.S. Dist. LEXIS 85266 (N.D. Cal. Mar. 19, 2010).

37

**DISPUTED JURY INSTRUCTION NO. 10**
**COPYRIGHT INFRINGEMENT – ELEMENTS – OWNERSHIP AND COPYING**
**OFFERED BY GOOGLE**

Anyone who copies original and protected elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On ~~the plaintiff~~Oracle's copyright infringement claim, ~~the plaintiff~~Oracle has the burden of proving both of the following by a preponderance of the evidence:

~~1. the plaintiff~~

1.      Oracle is the owner of a valid copyright; and

~~2. the defendant~~

2.      Google copied original, protectable elements from the copyrighted work.

If you find that ~~the plaintiff~~Oracle has proved both of these elements, your verdict should be for ~~the plaintiff.~~Oracle, unless you determine that one or more of Google's asserted defenses applies.  If, on the other hand, ~~the plaintiff~~Oracle has failed to prove either of these elements, your verdict should be for ~~the defendant~~Google.

***SOURCES:***

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.4 (2007) (modified); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994), *cert. denied*, 513 U.S. 1184 (1995).

38

1

**DISPUTED JURY INSTRUCTION NO. 11**
**COPYRIGHT INTERESTS – REGISTRATION WITH THE COPYRIGHT OFFICE**
2
**OFFERED BY ORACLE**

3    [Copyright automatically exists in a work the moment it is fixed in any tangible medium

4    of expression. The owner of the copyright may register the copyright by delivering to the

5    Copyright Office of the Library of Congress a copy of the copyrighted work.  After examination

6    and a determination that the material deposited constitutes copyrightable subject matter and that

7    legal and formal requirements are satisfied, the Register of Copyrights registers the work and

8    issues a certificate of registration to the copyright owner.]

9         Oracle's Java-related works at issue in this case are registered with the Copyright Office.

10   Here, Oracle Corporation acquired Sun Microsystems, Inc.  In that transaction, Sun changed its

11   name to Oracle America, Inc. and became a subsidiary of Oracle Corporation.  Oracle America,

12   Inc. is the same legal entity that was the original owner of the Java-related copyrights at issue in

13   this case.  It continues to own these copyrights.  I will refer to Oracle America, Inc., the plaintiff

14   in this case, simply as "Oracle."

15        Because the works have been registered, the defendant, Google, has the burden to

16   demonstrate why the copyright is not valid.  You may presume, for example, that the Java-related

17   works at issue are original copyrightable expression because they have a valid copyright

18   registration. It is Google's burden to rebut that presumption.

19
AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.0 (2007)
20   (modified) (How a Copyright Is Obtained); *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d
     1104, 1106 (9th Cir. 1990) ("In judicial proceedings, a certificate of copyright registration
21   constitutes *prima facie* evidence of copyrightability and shifts the burden to the defendant to
     demonstrate why the copyright is not valid."); *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir.
22   2004) ("Because [the work] has a valid certificate of registration with the copyright office…
     [plaintiff] is entitled to a presumption of originality.").

23

24

25

26

27

28

39

1

**DISPUTED JURY INSTRUCTION NO. 11**
**COPYRIGHT – REGISTRATION**
**NONE PROPOSED BY GOOGLE**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 12**
**COPYRIGHT INFRINGEMENT – ORIGINALITY**
**OFFERED BY ORACLE**

An original work may include or incorporate elements taken from [prior works][, works from the public domain][, or works owned by others, with the owner's permission]. The original part[s]parts of the plaintiff's work [is][are] the part[s]parts created:

1. independently

1. Independently by the [work's] author, that is, the author did not copy it from another work; and

2. by By use of at least some minimal creativity.

[In copyright law, the "original element" of a work need not be new or novel.] Copyright law will protect an original element of a work as long as it does not utterly lack creativity.

AUTHORITY: NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.12 (2007) (modified) (citing *Urantia Found. v. Maaherra*, 114 F.3d 955, 958-59 (9th Cir. 1997)); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991); *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) (citing *Sid & Marty Krofft Tel. Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 n.5 (9th Cir. 1977); ECF No. 433 at 8, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.1 (2007).

41

**DISPUTED JURY INSTRUCTION NO. 12**
**COPYRIGHT INFRINGEMENT – ORIGINALITY**
**OFFERED BY GOOGLE**

An original work may include or incorporate elements taken from [prior works] [works from the public domain] [works owned by others, with the owner's permission]. The original part[s] of the plaintiff's work [is] [are] the part[s] . The original parts of Oracle's work are the new parts created:

1. independently by the [work's]

    1.    independently by the work's author, that is, the author did not copy it from another work; and

    2.

    2.    by use of at least some minimal creativity.

[In copyright law, the "original element" of a work need not be new or novel.]

Copyright does not protect any hard work or effort that may have been expended in compiling unprotected elements.  This work or effort is sometimes referred to as the "sweat of the brow."  The amount of effort used to create the work is completely irrelevant to whether it is original.

Where a work contains only the minimum of creativity necessary for copyright, it is said to have "thin" copyright protection.  A work with "thin" protection is protected only against virtually identical copying.

**SOURCES:**

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.12.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359-60 (1991); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1259-61 (9th Cir. 1999); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994), *cert. denied*, 513 U.S. 1184 (1995); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir. 1989); *Satava v. Lowry*, 323 F.3d 805, 810-12 (9th Cir.), *cert. denied*, 540 U.S. 983 (2003).

42

**DISPUTED JURY INSTRUCTION NO. 13**
**COPYRIGHT INFRINGEMENT – SELECTION AND ARRANGEMENT OF NAMES**
**OFFERED BY ORACLE**

In this case, one of the items for which Oracle claims it is entitled to copyright protection is the selection and arrangement of the names that are used in the 37 API design specifications at issue.

The individual names that are used are not themselves protected by copyright. However, the *selection and arrangement* of these names may be eligible for copyright protection as an original work of authorship. A combination of unprotectable elements is eligible for copyright protection if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

You must decide whether Oracle's selection and arrangement of names in the Java API specifications are original enough that their combination constitutes an original work of authorship. Originality does not require that the names be presented in an innovative or surprising way. But the selection and arrangement cannot be so mechanical or routine as to require no creativity whatsoever.

AUTHORITY: ECF No. 433 at 8, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011) ("the selection and arrangement of these names may be subject to copyright") (quoting *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("a claim of copyright infringement can be based on infringement of a combination of unprotected elements") (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994; *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2009)); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 362 (1991).

1

2

**DISPUTED JURY INSTRUCTION NO. 13**
**COPYRIGHT – SUBJECT MATTER –SELECTION, ARRANGEMENT,**
**ORGANIZATION OFFERED BY GOOGLE**

3   The works at issue contain a variety of elements.  The selection and arrangement of these

4   elements may be protected under copyright law, if they reflect a creative spark.  However,

5   copyright does not protect mechanical, obvious, garden-variety, or routine selections of elements,

6   so the copyright is not violated when someone uses the same selection or arrangement as a

7   copyrighted work unless the selection or arrangement reflects original and creative effort.

8   *Source:*

9   *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 362-63 (1991).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 14**
**COPYRIGHT INTERESTS – DERIVATIVE WORK**
**OFFERED BY ORACLE**

~~A~~In addition to excluding others from creating reproductions of copyrighted work or distributing copyrighted work, a copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work.  The term "derivative work" refers to a work based on one or more pre-existing works, such as a ~~[~~translation~~] [~~, musical arrangement~~] [~~, dramatization~~] [~~, fictionalization~~] [~~, motion picture version~~] [sound recording] [art reproduction] [abridgement] [condensation] [~~, or any other form in which the pre-existing work is recast, transformed, or adapted~~]~~.  Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

~~If the copyright owner exercises the right to [create] [allow others to create] a derivative work based upon the copyrighted work, this derivative work may also be copyrighted. Only what was newly created, such as the editorial revisions, annotations, elaborations, or other modifications to the pre-existing work, is considered to be the derivative work.~~

~~Copyright protection of a derivative work covers only the contribution made by the author of the derivative work. If the derivative work incorporates [pre-existing work by others] [work in the public domain], the derivative author's protection is [limited to elements added by the derivative author to the [pre-existing work of others] [public domain work]] [, or] [limited to the manner in which the derivative author combined the [pre-existing elements by other persons] [pre-existing elements in the public domain work] into the derivative work].~~

~~The owner of a derivative work may enforce the right to exclude others in an action for copyright infringement.~~

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.13 (2007) (modified) (citing 17 U.S.C. §§ 101, 106(2)).

45

**DISPUTED JURY INSTRUCTION NO. 14**
**COPYRIGHT INTERESTS – DERIVATIVE WORK**
**OFFERED BY GOOGLE**

A In addition to excluding others from creating reproductions of copyrighted work or distributing copyrighted work, a copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work.  The term "derivative work" refers to a work based on one or more pre-existing works, such as a [translation] [, musical arrangement] [, dramatization] [, fictionalization] [, motion picture version] [sound recording] [art reproduction] [abridgement] [condensation] [, or any other form in which the pre-existing work is recast, transformed, or adapted].  Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the original, protectable elements of a copyrighted work without the owner's permission.

If the copyright owner exercises the right to [create] [allow others to create] a derivative work based upon the copyrighted work, this derivative work may also be copyrighted. Only what was newly created, such as the editorial revisions, annotations, elaborations, or other modifications to the pre-existing work, is considered to be the derivative work.

Copyright protection of a derivative work covers only the contribution made by the author of the derivative work. If the derivative work incorporates [pre-existing work by others] [work in the public domain], the derivative author's protection is [limited to elements added by the derivative author to the [pre-existing work of others] [public domain work]] [, or] [limited to the manner in which the derivative author combined the [pre-existing elements by other persons] [pre-existing elements in the public domain work] into the derivative work].

The owner of a derivative work may enforce the right to exclude others in an action for copyright infringement.

46

1    The recasting, transforming or adapting unprotected elements of a copyrighted work is not

2    a derivative work.

3

4    *SOURCES:*

5    NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.13 (2007) (modified)
     (citing 17 U.S.C. §§ 101, 106(2)); *Mirage Editions v. Albuquerque A.R.T. Co.*, 856 F.2d 1341,
     1343 (9th Cir. 1988).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

pa-1492148

**DISPUTED JURY INSTRUCTION NO. 15**
**COPYRIGHT – COPYING – ACCESS AND SUBSTANTIAL SIMILARITY**
**OFFERED BY ORACLE**

Instruction [insert cross reference to the pertinent instruction, e.g., Instruction 17.4]No. 10 states that the plaintiffOracle has the burden of proving that the defendantGoogle copied original elements from the plaintiffOracle's copyrighted work. Theworks.

Because, in most cases, direct evidence of copying is not available, the law allows a plaintiff may showto prove that the defendant copied from the work by showing by a preponderance of the evidence that (1) the defendant had access to the plaintiff's copyrighted work and (2) that there are substantial similarities between the defendant's work and original elements of the plaintiff's work.

By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying.  The burden shifts to the defendant to rebut that presumption through proof of independent creation.

Where the defendant has a high degree of access to the copyrighted work, a lower standard of proof of substantial similarity is required between the copyrighted work and the allegedly infringing work.

Likewise, where there is a striking similarity between the two works, you may infer that the defendant had access to the copyrighted works.  A striking similarity is one sufficiently unique or complex as to make it unlikely that it was independently created.

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.15 AND SUPPLEMENTAL INSTRUCTION TO NO. 17.15 (2007) (modified); ECF No. 433 at 5, 11, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011) (copying can be proven by showing that the alleged infringer had access to the copyrighted work and that the protected portions of the works are substantially similar) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008)); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636-37 (9th Cir. 2008); *Swirsky v. Carey*, 376 F.3d 841, 844-45 (9th Cir. 2004); *Rice v. Fox Broad. Co.*, 330, F.3d 1170, 1178 (9th Cir. 2003); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485-86 (9th Cir. 2000); *Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir. 1996); *Baxter v. MCA, Inc.*, 812 F.2d 421, 423, 424 n.2 (9th Cir. 1987); *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir. 1984); *see also Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741 (9th Cir. 1971); *Shaw v. Lindheim*, 919 F.2d 1353, 1362-63 (9th Cir. 1990); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, (1985); 4 *Nimmer on Copyright* § 13.03[B][1][a].

48

pa-1492148

**DISPUTED JURY INSTRUCTION NO. 15**
**COPYING – ACCESS AND SUBSTANTIAL SIMILARITY**
**OFFERED BY GOOGLE**

~~Instruction [*insert cross reference to the pertinent instruction, e.g., Instruction 17.4*] states~~ ~~that the plaintiff~~An instruction given earlier stated that Oracle has the burden of proving that ~~the defendant~~Google copied original, protectable elements from ~~the plaintiff~~Oracle's copyrighted work. ~~The plaintiff~~ Oracle may show ~~the defendant~~Google copied from the work by showing by a preponderance of the evidence (1) that ~~the defendant~~Google had access to ~~the plaintiff~~Oracle's copyrighted work and ~~that there are substantial similarities between the defendant~~(2) that Google's work and original elements of ~~the plaintiff's work.~~ Oracle's Asserted Works are substantially similar or virtually identical.

*Supplemental Instruction*

~~For guidance in modifying the instruction so that the jury may consider evidence of a "striking similarity" between works to infer access, s*ee Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir.2000) (in the absence of any proof of access, "a copyright plaintiff can still make out a case of infringement by showing that the songs were 'strikingly similar'") (citing *Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir.1996) and *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.) (access may be inferred from "striking similarity"), *cert. denied*, 484 U.S. 954 (1987); *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir.1984) (a striking similarity is one sufficiently unique or complex as to make it unlikely that it was independently created).~~

~~If a plaintiff shows the defendant had access to the plaintiff's work and that there is a substantial similarity between the infringed and infringing works, a presumption of copying arises shifting the burden to the defendant to rebut or to show that the alleged infringing work was independently created. *Three Boys Music Corp.*, 212 F.3d at 486 ("By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation." (citing *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 721 (9th Cir.1976)) *See also Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741 (9th Cir.1971) ("It is true that defendants had access to plaintiff's [copyrighted] pin and that there is an obvious similarity between plaintiff's pin and those of defendants. These two facts constitute strong circumstantial evidence of copying. But they are not conclusive, and there was substantial evidence to support the trial court's finding that defendant's pin was in fact an independent creation.") (citations omitted).~~

~~In the Ninth Circuit, the access and substantial similarity elements of infringement are "inextricably linked" by an inverse ratio rule. *See Three Boys Music Corp.*, 212 F.3d at 486 (the rule "requires a lesser showing of substantial similarity if there is a strong showing of access" but noting "[w]e have never held…the inverse … [that] a weak showing of access requires a stronger showing of substantial similarity."); *Swirsky v. Carey*, 376 F.3d 841, 844-45 (9th Cir.2004) (holding that where a high degree of access is shown, a lower standard of proof of substantial similarity is required and noting that this burden is carried by the plaintiff); *Rice v. Fox Broadcasting Co.*, 330, F.3d 1170, 1178 (9th Cir.2003) (under the "inverse ratio rule," court requires a lower standard of proof of substantial similarity when a high degree of access is shown and "a prominent factor" in using inverse ratio analysis is a "concession of access by the defendant to the plaintiff's copyrighted work").~~

49

1

2

        If you find that the range of protectable and unauthorized expression is narrow, the

3

appropriate standard for illicit copying is virtual identity, meaning Google's work and protectable

4

elements of the copyrighted work must be virtually identical.

5

***SOURCES:***

6

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.15.  *Apple Computer,*

7

*Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994), *cert. denied*, 513 U.S. 1184 (1995).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 16**
**COPYRIGHT – DIRECT INFRINGEMENT – COPYING – ACCESS DEFINED**
**OFFERED BY ORACLE**

[As part of its burden in Instruction ~~[insert cross reference to the pertinent instruction e.g.,~~ ~~Instruction 17.4],~~ No. 10, the plaintiff must show by a preponderance of the evidence that [[the defendant] ~~[whoever created the work owned by the defendant]]~~ had access to the plaintiff's work.]

You may find that ~~the defendant~~Google had access to ~~the plaintiff~~Oracle's work if [[the ~~defendant] [whoever created the work owned by the defendant]]~~Google had a reasonable opportunity to ~~[view] [~~, read] ~~[hear] [~~, or copy] ~~the plaintiff's work before the defendant's work~~ ~~was created.~~ the Java API design specifications and 12 code files before Google created the Android API design specifications, code files, and derivative works.

~~Supplemental Instruction~~

~~Depending on the evidence at trial of the defendant's access to the allegedly infringed work, the~~ ~~court may instruct the jury about factors that show such access, by adding the following after the~~ ~~last paragraph of this instruction:~~

Access may be shown by:

[1. ~~a~~A chain of events connecting ~~plaintiff's work and the defendant~~the Java API design specifications and code files and Google's opportunity to ~~[view] [hear] [copy] that~~ ~~work [such as dealings through a third party (such as a publisher or record company)~~ ~~that had access to the plaintiff's work and with whom both the plaintiff and the~~ ~~defendant were dealing] [or]~~view, or copy those works, such as when employees of the defendant were former employees of the plaintiff and those employees were involved in creating the copyrighted works; or

~~[2. the plaintiff's work being~~2.       The Java API design specifications and code files were widely disseminated~~]~~[; or]

[3. ~~a~~A similarity between the ~~plaintiff's work and the defendant's work~~Java API design specifications and code files and Google's allegedly copied Android API design specifications and code files that is so "striking" that it is highly likely the works were not created independent of one another].

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.16 (modified) and SUPPLEMENTAL INSTRUCTION and Comment (2007); *Sid & Marty Krofft Tel. Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977); *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981); *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1176 (9th Cir. 1989).

**DISPUTED JURY INSTRUCTION NO. 16**
**COPYRIGHT INFRINGEMENT – COPYING – ACCESS DEFINED**
**OFFERED BY GOOGLE**

As part of its burden in Instruction *[insert cross reference to the pertinent instruction e.g., Instruction 17.4]*, the plaintiff, Oracle must show by a preponderance of the evidence that [[the defendant] [whoever created the work owned by the defendant]] had access to the plaintiff's work.]Google had access to Oracle's work. You may find that the defendant had access to the plaintiff's work if [[the defendant] [whoever created the work owned by the defendant]]Google had access to Oracle's work if Google had a reasonable opportunity to [view] [read] [hear] [copy] the plaintiffcopy Oracle's work before the defendantGoogle's work was created.

*Supplemental Instruction*

Depending on the evidence at trial of the defendant's access to the allegedly infringed work, the court may instruct the jury about factors that show such access, by adding the following after the last paragraph of this instruction:

Access may be shown by:

[1. a chain of events connecting plaintiff's work and the defendant's opportunity to [view] [hear] [copy] that work [such as dealings through a third party (such as a publisher or record company) that had access to the plaintiff's work and with whom both the plaintiff and the defendant were dealing] [or]

[2. the plaintiff's work being widely disseminated] [or]

[3. a similarity between the plaintiff's work and the defendant's work that is so "striking" that it is highly likely the works were not created independent of one another].

Regarding the evidence necessary to demonstrate access, *see Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482–484 (9th Cir.2000) (reasonable opportunity is more than a "bare possibility," such as one based on mere speculation or conjecture; reasonable access can be shown by a chain of events connecting the plaintiff's work and the defendant's access or by the plaintiff's work being widely distributed; often the widespread dissemination approach is coupled with a theory of "subconscious copying" (citing 4 **Nimmer & D. Nimmer**, **Nimmer on Copyright**, § 13.02[A] (1999)); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059 (9th Cir.1981) (access shown by dealings between the parties and the third party on a chain of events theory relating to the same subject matter). Where the subject matter of dealings between parties and third party differs, the chain is broken and access is not shown. *See Meta-Film Assocs. v. MCA*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984).

As to the plaintiff demonstrating that there is a "striking similarity" between works to support an inference of access, *see Three Boys Music Corp.*, 212 F.3d 477 at 483 (in the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the songs were "strikingly similar").

***SOURCE:***

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.16.

DISPUTED JURY INSTRUCTION NO.  17
COPYRIGHT – SUBSTANTIAL SIMILARITY –
OBJECTIVE AND SUBJECTIVE TESTS
OFFERED BY ORACLE

The committee has withdrawn the instruction on substantial similarity. That instruction set forth the Ninth Circuit's Extrinsic/Intrinsic Test for isolating the protectable expression of a work in order to assess whether it is substantially similar to that in another work. See Cavalier v. Random House, 297 F.3d 815, 824 (9th Cir.2002) (noting there can be no finding of substantial similarity unless the plaintiff satisfies both the extrinsic and intrinsic tests).

The committee concluded that the general statement of the test embodied in the former instruction was not helpful in light of the diverse facts that might arise at trial pertinent to a substantial similarity assessment. The committee also concluded that the court and counsel would be best served by specifically crafting instructions in this area based upon the particular work(s) at issue, the copyright in question, and the evidence developed at trial. The following cases may provide guidance in formulating substantial similarity instructions in specific subject areas:

Literary or Dramatic Works: Shaw v. Lindheim, 919 F.2d 1353, 1357 (9th Cir.1990) (literary or dramatic works); Sid & Marty Krofft Television Productions v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir.1977) (commercials infringed television production; general application of specific criteria to assessment of substantial similarity). See also Grosso v. Miramax Film Corp., 383 F.3d 965, 967 (9th Cir.2004) (Shaw factors applied to literary works, screenplay and movie), and Pasillas v. McDonald's Corp., 927 F.2d 440, 442–43 (9th Cir.1991) (noting Shaw "is explicitly limited to literary works" and Kroft test still applicable to other than dramatic or literary works).

Musical Compositions: Swirsky v. Carey, 376 F.3d 841, 848–49 (9th Cir.2004) (noting factors and constituent elements applicable to "analyzing musical compositions" and that "we have never announced a uniform set of factors to be used. We will not do so now" because "each allegation of infringement will be unique."); Newton v. Diamond, 388 F.3d 1189, 1196 (9th Cir.2003) (musical elements; Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485–86 (9th Cir.2000) (identifying "areas" of similarity of musical works).

Computer Programs and Similar Technologies: Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1445 (9th Cir.1994) (audiovisual and literary component of computer program); Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1477 (9th Cir.1992) ("computer programs are subject to a Shawtype analytic dissection of various standard components, e.g., screens, menus, and keystrokes") (emphasis in original); Data E. USA, Inc. v. Epyx, Inc., 862 F.2d 204, 210 (9th Cir.1988) (karate game and home-computer karate game); Frybarger v. Int'l Bus. Mach. Corp., 812 F.2d 525, 529–30 (9th Cir.1987) (video game).

Motion Picture, Television Production or Copyrighted Script: Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1177–78 (9th Cir.2003) (video and television specials); Metcalf v. Bochco, 294 F.3d 1069 (9th Cir.2002) (screenplay and television series); Kouf v. Walt Disney Pictures Television, 16 F.3d 1042, 1045 (9th Cir.1994) (movie and screenplay); Berkie v. Crichton, 761 F.2d 1289, 1293 (9th Cir.1985) (novel and motion picture); Litchfield v. Spielberg, 736 F.2d 1352, 1356–57 (9th Cir.1984) (musical play and movie).

53

"Other Than Dramatic or Literary Works": Cavalier v. Random House, Inc., 297 F.3d 815, 826 (9th Cir.2002) (works of visual art); Sid & Marty Krofft Television Productions, 562 F.2d at 1164 (dicta concerning application of specific criteria to plaster recreation of the nude human figure); Pasillas, 927 F.2d at 442–43 (noting Kroft test applicable to other than dramatic or literary works; using test to assess similarity of Halloween mask and mask used in television commercial).

"Ordinary Observer" Test: Micro Star v. Formgen, Inc., 154 F.3d 1107, 1112 (9th Cir.1998) (ordinary reasonable person standard); Johnson Controls Inc. v. Phoenix Control Sys., 886 F.2d 1173, 1176 n.4 (9th Cir.1989) (computer software); Data E. USA, Inc., 862 F.2d at 209–10 (intended audience); Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir.1987) (perception of the children); Berkic, 761 F.2d at 1293 (reasonable reader or moviegoer).

[Oracle submits that upon the close of evidence, the Court should instruct the jury as to which works are protected by copyright, and which standard of similarity and frame of reference to use when comparing the allegedly infringing works to the copyrighted works.]

Oracle contends that Google has infringed the Java-related works by copying 37 core library API design specifications and by creating derivative works from those designs by implementing them in Android API specifications and core libraries.  In addition, Oracle accuses Google of copying 12 software code files.  In order to determine whether the API specifications and code files in Google's Android platform are substantially similar to Oracle's Java platform, and whether Google's implementation of the API specification constitutes a derivative work, you must examine them objectively and subjectively.

First, the objective test is a test for similarity of ideas and expression based on external criteria.  You may consider testimony from expert witnesses, if you find it helpful.

In considering objective similarity, you may consider the components of expression that make up those works.  For instance, if you were determining whether two plays were substantially similar, you would likely compare the components of the two works – the plot, theme, characters, and dialogue.  The sequence of events of a plot by which the author expresses his idea constitutes a pattern which is sufficiently concrete so as to warrant a finding of substantial similarity if it is common to both the plaintiff's and defendant's works.  Here, you may consider whether the elements that make up the API specifications and code files are similar.  For instance, you may consider, the syntax used, the "methods" that perform particular services,

54

the "classes" of methods, the organizational structure for the class files, the "class libraries" that comprise a well-developed set of API packages, and more.

Second, the subjective test is a test for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance.  The subjective test measures expression subjectively, and considers the total concept and feel of the works.

In determining whether there was substantial similarity between the plaintiff's copyrighted work and the defendant's work, your analysis should focus on the similarities between what was allegedly copied, not on any additions to the work made by Google.  Copying may not be excused merely because it is insubstantial with respect to the infringing work.  A defendant cannot excuse its copying by showing how much of its work it did not copy.

Finally, even if the copied portion is relatively small in proportion to Oracle's copyrighted work, you may properly find substantial similarity if it is qualitatively important.

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.17 comment; *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1477 (9th Cir.1992); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998) (citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1356-57 (9th Cir. 1984); ECF No. 433 at 1, 11, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. Cal. 2008); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994); *Shaw v. Lindheim*, 919 F. 2d 1353, 1362 (9th Cir. 1990) (citing *Sheldon v. Metro-Goldwyn Pictures, Corp.*, 81 F.2d 49 (2d Cir.) *cert. denied*, 298 U.S. 669 (1936)); s*ee also Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 210 (9th Cir.1988); *Frybarger v. Int'l Bus. Mach. Corp.*, 812 F.2d 525, 529-30 (9th Cir. 1987).

**DISPUTED JURY INSTRUCTION NO. 17**
**SUBSTANTIAL SIMILARITY – EXTRINSIC TEST; INTRINSIC TEST**
**OFFERED BY GOOGLE**

**(Withdrawn)**

As part of its burden as described in an instruction given earlier, Oracle must show that there are substantial similarities between Google's work and protectable, original elements of Oracle's work, or, if the range of protectable and unauthorized expression is narrow, that they are virtually identical. You should take the following three steps to assess the similarity between Google's work and the protectable, original elements of Oracle's work.

(1) Oracle must identify which features are the source of the alleged similarity between its works and Google's work.

(2) You must determine whether any of these allegedly similar features are protected by copyright.[1] For instance, ideas, names and methods of operation are not protected by copyright, so they must be separated from potentially protectable expression. You must then apply relevant limiting doctrines, such as merger and *scenes a faire* (which will be explained further in later instructions) through the eyes of the ordinary consumer of that product, and identify any materials that may be permissibly copied under those doctrines.

(3) Having dissected the alleged similarities and considered the scope of possible protectable and unprotectable expression, you must define the scope of Oracle's copyright — that is, decide whether the work is entitled to "broad" or "thin" protection. Depending on the degree of protection, you must set the appropriate standard for a subjective comparison (substantial similarity or virtual identity) of the works to determine whether those protectable portions are sufficiently similar to support a finding of illicit copying.

If you find that Oracle has identified similar features, and those features are protected by copyright, and that the works as a whole (after identifying and filtering out unprotectable

---

[1] Google contends that copyrightability is a question of law that the Court should decide prior to jury deliberations, and that the Court should then instruct the jury regarding what allegedly infringed elements of plaintiff's works are copyrightable, or should direct verdict for Google on the copyright claim. Google offers this proposed jury instruction for use only in the event that the Court, over Google's objection, allows the jury to decide the issue of copyrightability; otherwise, references to disputed issues of copyrightability should be omitted.

pa-1492148

elements) are (as appropriate) either substantially similar or virtually identical, your verdict should be for Oracle unless you determine that one or more of Google's asserted defenses applies. If, on the other hand, the features identified are not protected by copyright, or the works as a whole (after identifying and filtering out unprotectable elements) are not substantially similar or virtually identical, then your verdict should be for Google.

**Comment**

The committee has withdrawn the instruction on substantial similarity. That instruction set forth the Ninth Circuit's Extrinsic/Intrinsic Test for isolating the protectable expression of a work in order to assess whether it is substantially similar to that in another work. *See Cavalier v. Random House*, 297 F.3d 815, 824 (9th Cir.2002) (noting there can be no finding of substantial similarity unless the plaintiff satisfies both the extrinsic and intrinsic tests).

The committee concluded that the general statement of the test embodied in the former instruction was not helpful in light of the diverse facts that might arise at trial pertinent to a substantial similarity assessment. The committee also concluded that the court and counsel would be best served by specifically crafting instructions in this area based upon the particular work(s) at issue, the copyright in question, and the evidence developed at trial. The following cases may provide guidance in formulating substantial similarity instructions in specific subject areas:

**Literary or Dramatic Works:** *Shaw v. Lindheim*, 919 F.2d 1353, 1357 (9th Cir.1990) (literary or dramatic works); *Sid & Marty Krofft Television Productions v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir.1977) (commercials infringed television production; general application of specific criteria to assessment of substantial similarity). *See also Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir.2004) (*Shaw* factors applied to literary works, screenplay and movie), and *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442–43 (9th Cir.1991) (noting *Shaw* "is explicitly limited to literary works" and *Kroft* test still applicable to other than dramatic or literary

1    works).

2

3    **Musical Compositions:** *Swirsky v. Carey*, 376 F.3d 841, 848–49 (9th Cir.2004) (noting factors

4    and constituent elements applicable to "analyzing musical compositions" and that "we have never

5    announced a uniform set of factors to be used. We will not do so now" because "each allegation

6    of infringement will be unique."); *Newton v. Diamond*, 388 F.3d 1189, 1196 (9th Cir.2003)

7    (musical elements); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485–86 (9th Cir.2000)

8    (identifying "areas" of similarity of musical works).

9

10   **Computer Programs and Similar Technologies:** *Apple Computer, Inc. v. Microsoft Corp.*, 35

11   F.3d 1435, 1445 (9th Cir.1994) (audiovisual and literary component of computer program);

12   *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1477 (9th Cir.1992) ("computer

13   programs are subject to a *Shaw*type analytic dissection of various standard components, e.g.,

14   screens, menus, and keystrokes") (emphasis in original); *Data E. USA, Inc. v. Epyx, Inc.*, 862

15   F.2d 204, 210 (9th Cir.1988) (karate game and home-computer karate game); *Frybarger v. Int'l

16   Bus. Mach. Corp.*, 812 F.2d 525, 529–30 (9th Cir.1987) (video game).

17

18   **Motion Picture, Television Production or Copyrighted Script:** *Rice v. Fox Broadcasting Co.*,

19   330 F.3d 1170, 1177–78 (9th Cir.2003) (video and television specials); *Metcalf v. Bochco*, 294

20   F.3d 1069 (9th Cir.2002) (screenplay and television series); *Kouf v. Walt Disney Pictures

21   Television*, 16 F.3d 1042, 1045 (9th Cir.1994) (movie and screenplay); *Berkic v. Crichton*, 761

22   F.2d 1289, 1293 (9th Cir.1985) (novel and motion picture); *Litchfield v. Spielberg*, 736 F.2d

23   1352, 1356–57 (9th Cir.1984) (musical play and movie).

24

25   **"Other Than Dramatic or Literary Works":** *Cavalier v. Random House, Inc.*, 297 F.3d 815,

26   826 (9th Cir.2002) (works of visual art); *Sid & Marty Krofft Television Productions*, 562 F.2d at

27   1164 (dicta concerning application of specific criteria to plaster recreation of the nude human

28   figure); *Pasillas*, 927 F.2d at 442–43 (noting *Kroft* test applicable to other than dramatic or

58

1   literary works; using test to assess similarity of Halloween mask and mask used in television

2   commercial).

3

4   **"Ordinary Observer" Test:** *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1112 (9th Cir.1998)

5   (ordinary reasonable person standard); *Johnson Controls Inc. v. Phoenix Control Sys.*, 886 F.2d

6   1173, 1176 n.4 (9th Cir.1989) (computer software); *Data E. USA, Inc.*, 862 F.2d at 209–10

7   (intended audience); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 902 (9th Cir.1987) (perception of

8   the children); *Berkic*, 761 F.2d at 1293 (reasonable reader or moviegoer).

9   *SOURCE:*

10      *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443, 1446 (9th Cir. 1994), *cert.*

11   *denied*, 513 U.S. 1184 (1995).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**DISPUTED JURY INSTRUCTION NO. 18**
**COPYRIGHT INFRINGEMENT– COPYING FROM THIRD PARTY**
**OFFERED BY ORACLE**

3

4

5

6

7

A defendant cannot excuse what would otherwise be copyright infringement by claiming

that it copied from a third party.  Google is liable for copyright infringement if it copied, with or

without a license, from a third party, who in turn had copied from Oracle.  This is true even if

Google believed in good faith that it was not infringing a copyright.

8

9

AUTHORITY: *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978); *Buck v. Jewell-LaSalle Realty Co.*, 283 U.S. 191, 197 (1931); *Cnty. of Ventura v. Blackburn*, 362 F.2d 515, 520 (9th Cir. 1966); 2 *Nimmer on Copyright* § 8.01[C].

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

60

1

2

**DISPUTED JURY INSTRUCTION NO. 18
COPYRIGHT INFRINGEMENT– COPYING FROM THIRD PARTY
OFFERED BY GOOGLE**

3

4

5

Google cannot excuse what would otherwise be copyright infringement by claiming that it copied, with or without a license, from a third party, who in turn had copied from Oracle.

6

7

***Sources:***

8

9

*Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978); *Buck v. Jewell-LaSalle Realty Co.*, 283 U.S. 191, 197 (1931); *Cnty. of Ventura v. Blackburn*, 362 F.2d 515 (9th Cir. 1966); 2 *Nimmer on Copyright* § 8.01[C].

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

61

1
2
3

**DISPUTED JURY INSTRUCTION NO. 19**
**COPYRIGHT LIABILITY – VICARIOUS INFRINGEMENT –**
**ELEMENTS AND BURDEN OF PROOF**
**OFFERED BY ORACLE**

4   If you find that ~~[name of direct infringer] infringed the plaintiff's copyright in [name of~~

5   ~~allegedly infringed work]~~mobile device manufacturers, mobile service providers, and developers

6   infringed Oracle's Java-related works, you may consider ~~the plaintiff~~Oracle's claim that ~~[name of~~

7   ~~alleged vicarious infringer]~~Google vicariously infringed ~~that copyright. The plaintiff~~those

8   copyrights.  Oracle has the burden of proving each of the following by a preponderance of the

9   evidence:

10   1.  ~~the defendant~~Google profited directly from the infringing activity of ~~[name of direct~~
     ~~infringer];~~the mobile device manufacturers, mobile service providers, and developers.

11
12   2.  ~~the defendant~~Google had the right and ability to ~~[supervise][ and~~ control~~]~~ the
     infringing activity of ~~[name of direct infringer][.] [; and]~~mobile device manufacturers,
     mobile service providers, and developers. Google's ability to block or police use of its
13   Android platform is evidence of the right and ability to supervise.

14   ~~[3.  the defendant~~Google failed to exercise that right and ability.~~]~~

15   If you find that ~~the plaintiff~~Oracle proved each of these elements, your verdict on

16   vicarious infringement should be for ~~the plaintiff~~Oracle if you also find that ~~[name of direct~~

17   ~~infringer] infringed plaintiff's copyright~~mobile device manufacturers, mobile service providers,

18   and developers infringed Oracle's copyrights.  If, on the other hand, ~~the plaintiff~~Oracle has failed

19   to prove any of these elements, your verdict on vicarious infringement should be for ~~the~~

20   ~~defendant [name of alleged vicarious infringer]~~Google.

21
22   AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.20 (2007)
     (modified); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1023–24 (9th Cir. 2011); *Metro-*
23   *Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005).

24
25
26
27
28

62

**DISPUTED JURY INSTRUCTION NO. 19**
**LIABILITY – VICARIOUS INFRINGEMENT –**
**ELEMENTS AND BURDEN OF PROOF**
**OFFERED BY GOOGLE**

If you find that [*name of direct infringer*] infringed the plaintiff's copyright in [*name of allegedly infringed work*]mobile device companies, mobile service providers, and developers infringed Oracle's Asserted Works, you may consider the plaintiffOracle's claim that [*name of alleged vicarious infringer*]Google vicariously infringed that copyright. The plaintiff Oracle has the burden of proving each of the following by a preponderance of the evidence:

1. the defendant

    1.  Google profited directly from the infringing activity of [*name of direct infringer*];

       2. the defendantthe mobile device companies, mobile service providers, and developers.

    2.  Google had the right and ability to [supervise][ and control] the infringing activity of [*name of direct infringer*][.] [; and]

       [3. the defendantmobile device companies, mobile service providers, and developers.

    3.  Google failed to exercise that right and ability.]

If you find that the plaintiffOracle proved each of these elements, your verdict on vicarious infringement should be for the plaintiffOracle if you also find that [*name of direct infringer*] infringed plaintiff's copyright.mobile device companies, mobile service providers, and developers infringed Oracle's copyrights. If, on the other hand, the plaintiffOracle has failed to prove any of these elements, your verdict on vicarious infringement should be for the defendant [*name of alleged vicarious infringer*]Google.

**SOURCE:**
NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.20 (2007) (modified).

pa-1492148

**DISPUTED JURY INSTRUCTION NO. 20**
**COPYRIGHT LIABILITY – CONTRIBUTORY INFRINGEMENT**
**OFFERED BY ORACLE**

A defendant may be liable for copyright infringement engaged in by another if [he] [she] [it ] knew or had reason to know of the infringing activity and intentionally [induces] [induced or materially contributes contributed to] that infringing activity.  In this case, Oracle alleges that Google materially contributed to and induced the infringement of the Java-related works by mobile device manufacturers, mobile service providers, and developers.

If you find that [name of direct infringer] infringed the plaintiff's copyright in [allegedly infringed work] mobile device manufacturers, mobile service providers, and developers infringed Oracle's copyrights in the API design specifications or in the Java code files, you may proceed to consider the plaintiff Oracle's claim that the defendant Google contributorily infringed that copyright.  To prove contributory copyright infringement, the plaintiff Oracle must prove both of the following elements by a preponderance of the evidence:

1. the defendant Google knew or had reason to known know of the infringing activity of [name of direct infringer] mobile device manufacturers, mobile service providers, and developers; and

2. the defendant Google intentionally [induced] [ or materially contributed to] [name of direct infringer's] the infringing activity. of the Java-related works by mobile device manufacturers, mobile service providers, and developers.  Material contribution turns on whether Google's activity in question "substantially assisted" direct infringement by mobile device manufacturers, mobile service providers, and developers.

If you find that [name of direct infringer] mobile device manufacturers, mobile service providers, and developers infringed the plaintiff's copyright Oracle's Java-related works and you also find that the plaintiff Oracle has proved proven both of these elements, your verdict on whether Google is liable for contributory infringement should be for the plaintiff Oracle.  If, on the other hand, the plaintiff Oracle has failed to prove either or both of these elements, your verdict on whether Google is liable for contributory infringement should be for the defendant. Google.

AUTHORITY: NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.21 (2007) (modified) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.* 76 F.3d 259, 261-63 (9th Cir. 1996); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 931 (2005); *Louis Vuitton Malletier, S.A. v. Akanoc*

64

1

*Solutions, Inc.*, No. 10-15909, 2011 U.S. App. LEXIS 18815, at *12-15 (9th Cir. Cal. Sept. 9, 2011); ECF No. 51 ¶ 41, Google Inc.'s Answer to Plaintiff's Amended Complaint for Patent Infringement and Amended Counterclaims (November 10, 2011).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 20**
**LIABILITY – CONTRIBUTORY INFRINGEMENT**
**OFFERED BY ORACLE**

A defendant may be liable for copyright infringement engaged in by another if [he] [she] [it ] knew or had reason to know of the infringing activity and intentionally [induces] [induced or materially contributes contributed to] that infringing activity.

If you find that [*name of direct infringer*] infringed the plaintiff's copyright in [*allegedly infringed work*]  In this case, Oracle alleges that Google materially contributed to and induced the infringement of the Asserted Works by mobile device companies, mobile service providers, and developers.

If you find that mobile device companies, mobile service providers, and developers infringed Oracle's copyrights in the Asserted Works, you may proceed to consider the plaintiff Oracle's claim that the defendant Google contributorily infringed that copyright.  To prove contributory copyright infringement, the plaintiff Oracle must prove both of the following elements by a preponderance of the evidence:

1. the defendant

1.   Google knew or had reason to known know of the infringing activity of [*name of direct infringer*]; and

2. the defendant mobile device companies, mobile service providers, and developers; and

2.   Google intentionally [induced] [induced or materially contributed to] [*name of direct infringer's*] infringing activity.

If you find that [*name of direct infringer*] infringed the plaintiff's copyright and you also find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either or both of these elements, your verdict should be for the defendant.  the infringing activity of the mobile device companies, mobile service providers, and developers.

If you find that mobile device companies, mobile service providers, and developers infringed Oracle's Asserted Works and you also find that Oracle has proven both of these

66

1   elements, your verdict on whether Google is liable for contributory infringement should be for

2   Oracle.  If, on the other hand, Oracle has failed to prove either or both of these elements, your

3   verdict on whether Google is liable for contributory infringement should be for Google.

5   *SOURCES*:

6       NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.21 (2007) (modified).

**DISPUTED JURY INSTRUCTION NO. 21**
**COPYRIGHT LIABILITY – WILLFUL INFRINGEMENT**
**OFFERED BY ORACLE**

~~An~~Copyright infringement is considered willful ~~when the plaintiff~~if Oracle has proved

both of the following elements by a preponderance of the evidence:

    1. ~~the defendant~~ Google engaged in acts that infringed ~~the copyright~~Oracle's Java-related works; and

    2. ~~the defendant~~ Google either knew that those acts infringed ~~the copyright.~~ Oracle's Java-related works, or Google's actions were the result of reckless disregard for, or "willful blindness" to, Oracle's copyrights.

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.27 (2007); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. 10-15909, 2011 U.S. App. LEXIS 18815, at *12-15 (9th Cir. Sept. 9, 2011).

1

2

**DISPUTED JURY INSTRUCTION NO. 21**
**COPYRIGHT LIABILITY – WILLFUL INFRINGEMENT**
**NONE PROPOSED BY GOOGLE**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

pa-1492148

1
2

### DISPUTED JURY INSTRUCTION NO. 22
### COPYRIGHT DEFENSE – DE MIMINIS COPYING
### OFFERED BY ORACLE

3      Regarding the twelve Java source and object code files that were copied, Google asserts

4      the defense that it's alleged copying was insignificant, also called "*de minimis*."  In the copyright

5      infringement context, copying is considered "*de minimis*" only if it is so meager and fragmentary

6      that the average audience would not recognize the appropriation.

7      You must consider the qualitative and quantitative significance of the copied portions in

8      relation to the works as a whole.  The "work as a whole" is not the entire Java platform, but rather

9      each individual code file.  In evaluating whether the copying was *de minimis*, you should consider

10     the qualitative and quantitative significance of the copied portions of code from an individual file

11     in relation to the total amount of code in that file.

12     The *de minimis* defense does not apply if you find that Google infringed Oracle's

13     copyrights in the 37 API design specifications, because, collectively, the copying of the API

14     design specifications and the code files would be more than *de minimis*.

15

16     AUTHORITY: 37 C.F.R. 202.3(b)(4)(i)(A); ECF No. 433 at 5-7, Order Partially Granting and
       Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim
       (September 15, 2011) (citing *Fisher v. Dees*, 794 F.2d 432, 432 n.2 (9th Cir. 1986)); *Newton v.*
17     *Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004); *Tattoo Art, Inc. v. TAT Int'l, LLC*, --- F. Supp. 2d
       --- No. 2:0cv323, 2011 WL 2585376, at *15-16 (E.D. Va. June 29, 2011); *Idearc Media Corp. v.*
18     *Nw. Directories, Inc.*, 623 F. Supp. 2d 1223, 1230-31 (D. Or. 2008); Compendium II of
       Copyright Office Practices, Chapter 600, at § 607.01 (citing 37 C.F.R. 202.3(b)(3)(A)).

19

20

21

22

23

24

25

26

27

28

70

1

**DISPUTED JURY INSTRUCTION NO. 22**
**COPYRIGHT INFRINGEMENT– DE MIMINIS COPYING**
2
**OFFERED BY GOOGLE**

3       For an unauthorized use of a copyrighted work to be actionable, the use must be

4   significant enough to constitute infringement. This means that even where copying is established,

5   no legal consequences will follow from that fact unless the copying is substantial.  Whether or not

6   copying is substantial is determined by considering the qualitative and quantitative significance of

7   the copied portion in relation to Oracle's Asserted Work as a whole.

8       If only a small amount of relatively unimportant protected material has been copied, then

9   the copying is "de minimis," and you should not find infringement.

10  ***Source:***

11  *Newton v. Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2004), *cert. denied*, 545 U.S. 1114 (2005).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

pa-1492148

1

**DISPUTED JURY INSTRUCTION NO. 23**
**COPYRIGHT DEFENSE – MERGER**
2
**OFFERED BY ORACLE**

3          Under the merger doctrine, courts will not protect a copyrighted work from infringement

4    if the idea underlying the copyrighted work can be expressed in only one way, so that there

5    cannot be a monopoly on the underlying idea.  In such an instance, it is said that the work's idea

6    and expression "merge."  When an idea and its expression are indistinguishable, or "merged," the

7    expression will only be protected against nearly identical copying.

8

9    AUTHORITY:  *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765 (9th Cir. 2003)(quoting *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000)); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994), *cert. denied*, 513 U.S. 1184 (1995);
10   *Satava v. Lowry*, 323 F.3d 805, 812 n.5 (9th Cir. 2003).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

72

**DISPUTED JURY INSTRUCTION NO. 23**
**COPYRIGHT – MERGER**
**OFFERED BY GOOGLE**

~~I have already instructed you that an author may copy the unprotected matter in any literary work, but may not copy the means of expression of that matter. However, there is an exception to that prohibition that defendant asserts is applicable here. This exception applies~~A defendant may copy a copyrighted work if there is only one way or only a few ways of expressing the ideas or other unprotected matter in a work. In those cases, an author is permitted to copy the expression in the work to the extent necessary to express that unprotected matter, because otherwise it would be difficult if not impossible to express it.

This doctrine is called the "~~"~~merger doctrine,~~"~~" because when there is only one way of expressing ~~unprotected matter~~an idea, the expression is said to have "merged" with that ~~matter~~idea. The merger doctrine may apply to any sort of unprotected matter, such as ideas or, in the case of factual works, facts or events. The doctrine may apply to ~~literal text~~software, such as when ~~factual content can be effectively~~an icon representing a document stored in a computer program can only be expressed ~~only by using specific words or~~in a limited ~~range of words.~~number of ways, such as an image shaped like a page.  The merger doctrine may also apply to non-literal elements of a ~~literary~~ work, such as when it is necessary to recount factual events in the same order as another work so as to present historical facts accurately and intelligibly.

~~The merger doctrine also applies to pictorial, graphic, and sculptural works, such as when there are a limited number of ways of representing certain sorts of objects. For example, a sculpture that depicts a German Shepherd dog will necessarily have certain similarities to other sculptures of dogs of that breed. It will have four legs, a tail, two prominent ears standing upward, and a long nose. These necessary similarities among sculptures of German Shepherd dogs cannot, under the merger doctrine, be the basis for a finding of infringement, because otherwise copyright law would protect the idea of a German Shepherd dog.~~

Merger is evaluated based on the conditions and constraints faced by the defendant at the time of the alleged infringement.  For example, a drafter of a law may be able to make a variety of choices when drafting the law, but once the law is passed, there is no other way to express the actual law, and so the idea of the law and the expression of the law are said to have merged.

If you find that the expression allegedly copied by the defendant has "merged" with the idea being expressed, your verdict should be for the defendant.

73

1   ***SOURCES:***

2          Todd S. Holbrook et al., American Bar Association Model Jury Instructions: Copyright,

3   Trademark, and Trade Dress Litigation 1.4.7 (2008); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d

4   1068, 1082 (9th Cir. 2000); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th

5   Cir. 1994), *cert. denied*, 513 U.S. 1184 (1995); *Veeck v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791,

6   802 (5th Cir.), *cert. denied*, 537 U.S. 1043 (2002); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d

7   1510, 1524 (9th Cir. 1992).

**DISPUTED JURY INSTRUCTION NO. 24**
**COPYRIGHT DEFENSE – SCENES A FAIRE**
**OFFERED BY ORACLE**

~~Defendant~~Google asserts that ~~his~~its work does not infringe ~~plaintiff's copyright~~Oracle's

*[Google must identify work at issue for instruction]* because of the doctrine of *scenes a faire*.

Under the doctrine of *scenes a faire*, which means "scene setting," a standard or typical theme,

setting, or background that is common to a large number of works, such as a common plot device~~,~~

is unprotected matter that may be copied. Under the 'scenes a faire' doctrine, when certain

commonplace expressions are indispensable and naturally associated with the treatment of a

given idea, those expressions are treated like ideas and therefore not protected by copyright.  The

doctrine applies to plot devices, incidents, characters, ~~or~~ settings or other features that are, as a

practical matter, indispensable, or at least standard, in the treatment of ~~certain subjects. These~~

~~elements of a work are given only limited copyright protection, because they are not likely to be~~

~~original and because, as a type of idea, they are necessary~~a given idea.  They are treated like ideas

and are therefore not protected by copyright.  Further, the indispensable expression of these ideas

may only be protected against virtually identical copying. ~~for the creation of other works.~~

However, even though these stock literary devices may be copied, the particular way in

which they are expressed or implemented in a work, for example, in the details of a plot or the :

particular words used to describe characters and settings, are still protected matter. Therefore,

defendant may still be liable for infringement if he went beyond copying the general themes or

devices used in a literary work and went on to copy the particular way in which they were

expressed. For example, if Shakespeare's Romeo and Juliet were copyrighted, an author could

still write a play about two young people who fell in love but came to a tragic end because of a

feud between their families. But the author could not copy the detailed plot of Shakespeare's play,

even if he did not copy Shakespeare's language.  In drawing the line between protected and

unprotected matter, you should follow the principle that copyright protection should not extend so

far that it will interfere with the "tools of the trade" that other authors should be able to use in

creating future works.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AUTHORITY:  Todd S. Holbrook et al., AMERICAN BAR ASSOCIATION MODEL JURY INSTRUCTIONS: COPYRIGHT, TRADEMARK, AND TRADE DRESS LITIGATION 1.4.8 (2008); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994), *cert. denied*, 513 U.S. 1184 (1995); *Frybarger v. Int'l Business Machines Corp.,* 812 F.2d 525 (9th Cir. 1987); ECF No. 433 at 8-9, Order Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011).

**DISPUTED JURY INSTRUCTION NO. 24**
**COPYRIGHT – *SCENES A FAIRE***
**OFFERED BY GOOGLE**

~~Defendant~~Google asserts that ~~his~~its work does not infringe ~~plaintiff's copyright~~Oracle's Asserted Works because of the doctrine of ~~scènes~~scenes a faire. Under the doctrine of ~~scènes~~scenes a faire, which means ~~"~~"scene setting,~~"~~" a ~~stan dard~~standard or typical theme, setting, or background that is common to a large number of works, such as a common plot device~~,~~ is unprotected matter that may be copied. Under the 'scenes a faire' doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright. The doctrine applies to plot devices, incidents, characters, ~~or~~settings or other features that are, as a practical matter, indispensable, or at least standard, in the treatment of ~~certain subjects.~~a given idea. These elements of a work are given only limited or no copyright protection, because they are not likely to be original and because, as a type of idea, they are necessary for the creation of other works. In the case of computer programs, for example, in many instances it is virtually impossible to write a program to perform particular functions in a specific computing environment without employing standard techniques because of mechanical specifications, compatibility requirements, manufacturers' design standards, industry demands or widely accepted programming practices.

However, even though these stock literary devices may be copied, the particular way in which they are expressed or implemented in a work, for example, in the details of a plot or the particular words used to describe characters and settings, are still protected matter. Therefore, defendant may still be liable for infringement if he went beyond copying the general themes or devices used in a literary work and went on to copy the particular way in which they were expressed. For example, if Shakespeare's Romeo and Juliet were copyrighted, an author could still write a play about two young people who fell in love but came to a tragic end because of a feud between their families. But the author could not copy the detailed plot of Shakespeare's play, even if he did not copy Shakespeare's language. In drawing the line between protected and unprotected matter, you should follow the principle that copyright protection should not extend so

77

far that it will interfere with the "tools of the trade" that other authors should be able to use in creating future works.

If you find that the expression allegedly copied by Google are *scenes a faire,* your verdict should be for Google.

***SOURCES:***

Todd S. Holbrook et al., American Bar Association Model Jury Instructions: Copyright, Trademark, and Trade Dress Litigation 1.4.8 (2008); *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1444 (9th Cir. 1994), *cert. denied,* 513 U.S. 1184 (1995); *Incredible Techs, Inc. v. Virtual Techs, Inc.,* 400 F.3d 1007, 1014 (7th Cir. 2005); *Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d 1366, 1376 (10th Cir. 1997); *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1547 (11th Cir. 1994); *Computer Associates Intern., Inc. v. Altai, Inc.* 982 F.2d 693, 709 -10 (2d Cir. 1992).

**DISPUTED JURY INSTRUCTION NO. 25**
**COPYRIGHT DEFENSE – FAIR USE**
**OFFERED BY ORACLE**

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest.  Such use of a copyrighted work is called a fair use.  The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

~~Defendant~~Google contends that ~~defendant~~it made fair use of the Java-related copyrighted ~~work for the purpose of [criticism] [comment] [news reporting] [teaching] [scholarship] [research] [other purpose alleged]. The defendant~~works for the purpose of "allowing applications written in the Java language to run on the Android platform."  Google has the burden of proving this defense by a preponderance of the evidence.

In determining whether the use made of the work was fair, you should consider the following four factors:

1. ~~the~~ The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes~~;~~.  Commercial use weighs against a finding of fair use.

2. ~~the~~ The nature of the copyrighted work~~;~~. If the original copyrighted work is creative in nature, this cuts against concluding that the later use was fair.

3. ~~the~~ The amount and substantiality of the portion used in relation to the copyrighted work as a whole~~;~~.  This factor evaluates both the quantity of the work taken and the quality and importance of the portion taken. Copying the key portions extracts the most valuable part of the Plaintiff's copyrighted works.

4. ~~the~~ The effect of the use upon the potential market for or value of the copyrighted work~~; and[5.] [insert any other factor that bears on the issue of fair use]~~.  This is the most important of the four fair use factors.  When the defendant's use of the copyrighted work competes in the same market as the copyrighted work, then it is less likely a fair use.

If you find that ~~the defendant~~Google proved by a preponderance of the evidence that ~~the defendant~~it made a fair use of ~~the plaintiff~~Oracle's work, your verdict should be for ~~the defendant~~Google.

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.18 (2007) (citing 17 U.S.C. § 107); *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 630 (9th Cir. 2003) (citing *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 586 (1994)); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001); *Harper & Row Publishers, Inc. v. Nation*

79

1   *Enters.*, 471 U.S. 539, 562 (1985); *Sony Computer Ent. Am., Inc. v. Bleem*, 214 F.3d 1022, 1027

2   (9th Cir. 2000); *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 579, 585, 590 (1994); *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1336 (9th Cir. 1995); ECF No. 433 at 12-13, Order

3   Partially Granting and Partially Denying Defendant's Motion for Summary Judgment on Copyright Claim (September 15, 2011); ECF No. 260 at 19:15-16, Google Inc.'s Notice of

4   Motion and Motion for Summary Judgment on Count VIII of Plaintiff Oracle America's Amended Complaint (August 1, 2011).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

pa-1492148

**DISPUTED JURY INSTRUCTION NO. 25**
**COPYRIGHT – FAIR USE**
**OFFERED BY GOOGLE**

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the ~~public interest.~~ purpose of copyright, which is to promote the progress of science and the useful arts. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

Defendant contends that defendant made fair use of the copyrighted work for the purpose of ~~[criticism] [comment] [news reporting] [teaching] [scholarship] [research] [*other purpose alleged*]~~ making a transformative use. The defendant has the burden of proving this defense by a preponderance of the evidence.

In determining whether the use made of the work was fair, you should consider the following factors:

1. ~~the~~ The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes~~;~~.

~~2. the~~, and whether the use is transformative.  The central question this factor asks is whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.

2. The nature of the copyrighted work~~;~~.

~~3. the~~, including whether the work is creative or functional. Not all copyrighted works are entitled to the same level of protection. As I have explained in prior instructions, copyright protection does not extend to the ideas underlying a work or to the functional or factual aspects of the work.

81

The functional aspects of a work that are not protected by copyright include functional requirements for compatibility.  To the extent that a work is functional or factual, it may be copied. The expressive elements of the work that must necessarily be used as incident to expression of the underlying ideas, functional concepts, or facts may also be copied. Works of fiction receive greater protection than works that have strong factual elements, such as historical or biographical works, or works that have strong functional elements, such as accounting textbooks.

3. The amount and substantiality of the portion used in relation to the copyrighted work as a whole;.

4. theThe effect of the use upon the potential market for or value of the copyrighted work. However, some economic loss by Oracle as a result of legitimate competition does not compel a finding of no fair use.; and

[5.] *[insert any other factor that bears on the issue of fair use].*

If you find that the defendant proved by a preponderance of the evidence that the defendant made a fair use of the plaintiff's work, your verdict should be for the defendant.

***SOURCES:***

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.18; 17 U.S.C. § 107; *Sony v. Bleem*, 214 F.3d 1022, 1026 (9th Cir. 2000); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524-26 (9th Cir. 1992); *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir.), *cert. denied*, 531 U.S. 871 (2000).

82

1
2

**DISPUTED JURY INSTRUCTION NO. 26**
**PATENT – SUMMARY OF CONTENTIONS**
**OFFERED BY ORACLE**

3    ~~As I did at the start of the case,~~ I will first give you a summary of each side's contentions

4    in this case.  I will then ~~provide you with detailed instructions on~~tell you what each side must

5    prove to win on each of its contentions.

6        As I previously told you, ~~[patent holder]~~Oracle seeks money damages from ~~[alleged~~

7    ~~infringer]~~Google for allegedly infringing the ~~[ ] patent by [making], [importing], [using],~~

8    ~~[selling], and [offering for sale] [products] [methods] that [patent holder] argues are covered by~~

9    ~~claims [ ] of the [ ] patent. These are the asserted claims of the [ ] patent. [Patent holder] also~~

10   ~~argues that [alleged infringer] has [actively induced infringement of these claims of the [ ] patent~~

11   ~~by others] [contributed to the infringement of these claims of the [ ] patent by others]. The~~

12   ~~[products] [methods] that are alleged to infringe are [list of accused products or~~

13   ~~methods].~~following 26 asserted claims of the six Oracle Patents.

14        For the '104 patent, entitled "Method And Apparatus For Resolving
15        Data References In Generated Code": claims 11, 27, 29, 39, 40, and
         41;

16        For the '520 patent, entitled "Method and System for Performing
17        Static Initialization": claims 1, 8, 12, and 20;

18        For the '205 patent, entitled "Interpreting Functions Utilizing A
         Hybrid Of Virtual And Native Machine Instructions": claims 1, and
19        2;

20        For the '702 patent, entitled "Method And Apparatus For
         Preprocessing And Packaging Class Files": claims 1, 6, 7, 12, 13,
21        15, and 16;

22        For the '720 patent, entitled "System And Method For Dynamic
         Preloading Of Classes Through Memory Space Cloning Of A
23        Master Runtime System Process": claims 1, 6, 10, 19, 21, and 22;

24        For the '476 patent, entitled "Controlling Access To A Resource":
         claim 14.

25        The products that allegedly infringe the Oracle Patents are certain Android mobile devices

26   and software and the Android SDK.  The Android SDK is a set of development tools that a

27   programmer can use to develop applications for Android.  The Android SDK includes a set of

28   libraries, documentation, an emulator for emulating an Android device on a computer, a

83

1    debugger, and a sample set of code.  For brevity, I will refer to the Android mobile devices and

2    software and the Android SDK in these jury instructions as "Android."

3        Oracle contends that certain Android mobile devices and software and the Android SDK

4    infringe the '104, '205, '476 and '720 patents.  Oracle further contends that the Android SDK

5    also infringes the '520 and '702 patents.  Oracle also claims that Google is legally responsible for

6    the use by others of the Oracle Patents.

7        [Alleged infringer]Google denies that it has infringed the asserted claims of the [ ] patent

8    [six Oracle Patents and argues that, in addition, all of the claims [ ] are invalid.] [Add other

9    defenses if applicable.]

10       Your job is to decide whether [alleged infringer]Google has infringed the asserted claims

11   of the [ ] patentOracle Patents and whether any of the asserted claims of the [ ] patentOracle

12   Patents are invalid.  If you decide that any claim of the [ ] patentOracle Patents has been infringed

13   and is not invalid, you will then need to decide any money damages to be awarded to [patent

14   holder]Oracle to compensate it for the infringement. [ You will also need to make a finding as to

15   whether the infringement was willful.  If you decide that any infringement was willful, that

16   decision should not affect any damages award you make.  I will take willfulness into account

17   later.]

18

19   AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.1
     (Feb. 18, 2010) (modified); MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF
20   CALIFORNIA No. B.1 (Nov. 29, 2007); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
     750 F.2d 1552, 1567 (Fed. Cir. 1984).

21

22

23

24

25

26

27

28

84

1
2

**DISPUTED JURY INSTRUCTION NO. 26**
**PATENT – SUMMARY OF CONTENTIONS**
**OFFERED BY GOOGLE**

3    ~~As I did at the start of the case,~~ I will first give you a summary of each side's contentions

4    in this case.  I will then tell you ~~provide you with detailed instructions on~~ what each side must

5    prove to win on each of its contentions.

6        As I previously told you, Oracle seeks money damages from Google for allegedly

7    infringing the ~~[ ] patent by [making], [importing], [using], [selling], and [offering for sale]~~

8    ~~[products] [methods] that [patent holder] argues are covered by claims [ ] of the [ ] patent. These~~

9    ~~are the asserted claims of the [ ] patent.  [Patent holder] also argues that [alleged infringer] has~~

10   ~~[actively induced infringement of these claims of the [ ] patent by others] [contributed to the~~

11   ~~infringement of these claims of the [ ] patent by others].~~  following 26 asserted claims of the six

12   Asserted Patents:

13             For the '104 patent, entitled "Method And Apparatus For Resolving
             Data References In Generated Code": claims 11, 27, 29, 39, 40, and
14           41;

15             For the '520 patent, entitled "Method and System for Performing
             Static Initialization": claims 1, 8, 12, and 20;
16

17             For the '205 patent, entitled "Interpreting Functions Utilizing A
             Hybrid Of Virtual And Native Machine Instructions": claims 1, and
             2;
18

19             For the '702 patent, entitled "Method And Apparatus For
             Preprocessing And Packaging Class Files": claims 1, 6, 7, 12, 13,
             15, and 16;
20

21             For the '720 patent, entitled "System And Method For Dynamic
             Preloading Of Classes Through Memory Space Cloning Of A
             Master Runtime System Process": claims 1, 6, 10, 19, 21, and 22;
22

23             For the '476 patent, entitled "Controlling Access To A Resource":
             claim 14.

24       The products that are alleged to infringe are certain Android mobile devices and software

25   and the Android SDK.  The Android SDK is a set of development tools that a programmer can

26   use to develop applications for Android.  The Android SDK includes a set of libraries,

27   documentation, an emulator for emulating an Android device on a computer, a debugger, and a

28   sample set of code.

1    Oracle contends that certain Android mobile devices and software and the Android SDK
2    infringe the '104, '205, '476 and '720 patents.  Oracle further contends that the Android SDK
3    also infringes the '520 and '702 patents.  Oracle also claims that Google is legally responsible for
4    the use by others of the Asserted Patents.

5        Google denies that it has infringed any of the asserted claims of the [  ] patent Asserted
6    Patents [and.  Google further denies that it legally responsible for the infringement of the
7    Asserted Patents by others.  Google also argues that, in addition, the asserted claims [  ] are
8    invalid.]

9        Your job is to decide whether Google has infringed the asserted claims of the [  ] patent
10   Asserted Patents and whether any of the asserted claims of the [  ] patent Asserted Patents are
11   invalid.  If you decide that any claim of the [  ] patent Asserted Patents has been infringed and is
12   not invalid, you will then need to decide any money damages to be awarded to Oracle to
13   compensate it for the infringement.  You will also need to make a finding as to whether the
14   infringement was willful.  If you decide that any infringement was willful, that decision should
15   not affect any damages award you make.  I will take willfulness into account later.

16       AUTHORITIES:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS
17   No. B.1 (Feb. 18, 2010) (modified); MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN
18   DISTRICT OF CALIFORNIA No. B.1 (Nov. 29, 2007); *Trans-World Mtg. Corp. v. Al Nyman & Sons,*
19   *Inc.*, 750 F.2d 1552, 1567 (Fed. Cir. 1984).

20

21

22

23

24

25

26

27

28

86

1

2

**DISPUTED JURY INSTRUCTION NO. 27**
**PATENT – PRESUMPTION OF VALIDITY**
**OFFERED BY ORACLE**

3

4

~~This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.~~

5

Patents are granted by the United States Patent and Trademark Office (sometimes called

6

~~the PTO). The process of obtaining a patent is called patent prosecution. A valid United States~~

7

~~patent gives the patent owner the right [for up to 20 years from the date the patent application was~~

8

~~filed] [for 17 years from the date the patent issued] to prevent others from making, using, offering~~

9

~~to sell, or selling the patented invention~~ within the United States ~~or from importing it into the~~

10

~~United States without the patent holder's permission. A violation of the patent owner's rights is~~

11

~~called infringement. The patent owner may try to enforce a patent against persons believed to be~~

12

~~infringers by a lawsuit filed in federal court.~~ "the PTO").  To obtain a patent one must file an

13

application with the PTO. The PTO is an agency of the federal government and employs trained

14

examiners who review applications for patents. ~~The application includes what is called a~~

15

~~specification, which must contain a written description of the claimed invention telling what the~~

16

~~invention is, how it works, how to make it and how to use it so others skilled in the field will~~

17

~~know how to make or use it. The specification concludes with one or more numbered sentences.~~

18

~~These are the patent claims. When the patent is eventually granted by the PTO, the claims define~~

19

~~the boundaries of its protection and give notice to the public of those boundaries.~~

20

After the applicant files the application, a PTO patent examiner reviews the patent

21

application to determine whether the claims are patentable and whether the specification

22

adequately describes the invention claimed. In examining a patent application, the patent

23

examiner reviews records available to the PTO for what is referred to as ~~prior art. The examiner~~

24

~~also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law,~~

25

~~and I will give you at a later time specific instructions as to what constitutes prior art. However,~~

26

~~in general, prior art includes things that existed before the claimed invention, that were publicly~~

27

~~known, or used in a publicly accessible way in this country, or that were patented or described in~~

28

pa-1492148

1  a publication in any country. The examiner considers, among other things, whether each claim

2  defines an invention that is new, useful, and not obvious in view of the prior art. A patent lists the

3  prior art that the examiner considered; this list is called the —cited references."prior art."

4  After the prior art search and examination of the application, the patent examiner then

5  informs the applicant in writing what the examiner has found and whether any claim is

6  patentable, and thus will be "allowed. This writing from the patent examiner is called an office

7  action. " If the examiner rejects the claims, the applicant then responds and sometimes changes

8  the claims or submits new claims.  This process, which takes place only between the examiner

9  and the patent applicant, may go back and forth for some time until the examiner is satisfied that

10  the application and claims meet the requirements for a patent. The papers generated during this

11  time of communicating back and forth between the patent examiner and the applicant make up

12  what is called the prosecution history.  All of this material becomes available to the public no

13  later than the date when the patent issues.

14  A patent shall be presumed valid. Each claim of a patent (whether in independent,

15  dependent, or multiple dependent form) shall be presumed valid independently of the validity of

16  other claims; dependent or multiple dependent claims shall be presumed valid even though

17  dependent upon an invalid claim.

18  The fact that the PTO grants a patent does not necessarily mean that any invention

19  claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not

20  have had available to it all the information that will be presented to you.  A person accused of

21  infringement has the right to argue here in federal court that a claimed invention in the patent is

22  invalid because it does not meet the requirements for a patent.

23  Here, since the PTO found the Oracle Patents patentable, you shall presume that they are

24  valid.  Google has the burden of establishing invalidity of a patent or any claim thereof by clear

25  and convincing evidence.

26

27  AUTHORITY:  35 U.S.C. § 383 (Presumption of Validity; defenses); MODEL PATENT JURY
   INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No. A.1 (Nov. 29, 2007) (modified);
   FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. A.1 (Feb. 18,
28  2010).

88

1
2

**DISPUTED JURY INSTRUCTION NO. 27**
**PATENT – PRESUMPTION OF VALIDITY**
**OFFERED BY GOOGLE**

3

*Google objects to such an instruction.*

4

Neither the Northern District of California Model Patent Jury Instructions nor the Federal

5

Circuit Bar Association Model Patent Jury Instructions contain a separate instruction on the

6

presumption of validity—and with good reason.  The presumption of validity is already

7

accounted for in the heightened burden of proving invalidity.  Indeed, that is reflected in the

8

citation to 35 U.S.C. § 282 in Federal Circuit Bar Association Model Patent Jury Instruction 4.1.

9

To provide an additional instruction on the presumption would therefore be akin to double

10

counting.

11
12

*See* Defendant Google Inc.'s Memorandum in Support of its Disputed Jury Instructions.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

pa-1492148

1
2

**STIPULATED JURY INSTRUCTION NO. 28**
**PATENT – HOW A CLAIM DEFINES WHAT IT COVERS**

3

~~I will now explain how a claim defines what it covers.~~

4

~~A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a~~
~~single sentence. If a device or a method satisfies each of these requirements, then it is covered by~~

5

~~the claim.~~

6

~~There can be several claims in a patent. Each claim may be narrower or broader than~~

7

~~another claim by setting forth more or fewer requirements.~~ The coverage of a patent is assessed

8

claim-by-claim.  In patent law, the requirements of a claim are often referred to as "claim

9

elements" or "claim limitations."

10

There can be several claims in a patent.  A claim sets forth, in a single sentence, a set of

11

requirements.  When a thing (such as a product or a process) meets all of the requirements of a

12

claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of

13

that claim. ~~In other words, a claim covers a product or process where each of the claim elements~~

14

~~or limitations is present in that product or process~~ If a device or a method satisfies each of these

15

requirements, then it is covered by the patent claim.

16
17

~~Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to~~
~~understand what requirements these words impose. It is my job to explain to you the meaning of~~
~~the words in the claims and the requirements these words impose.~~

18
19

~~As I just instructed you, there are certain specific terms that I have defined and you are to apply~~
~~the definitions that I provide to you.~~

20
21
22

~~By understanding the meaning of the words in a claim and by understanding that the words in a~~
~~claim set forth the requirements that a product or process must meet in order to be covered by that~~
~~claim, you will be able to understand the scope of coverage for each claim. Once you understand~~
~~what each claim covers, then you are prepared to decide the issues that you will be asked to~~
~~decide, such as infringement and invalidity.~~

23

24
25
26
27
28

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.2.2
(Feb. 18, 2010) (modified) (explaining that for "comprising," *see, e.g., Cook Biotech Inc. v.*
*ACell, Inc.*, 460 F.3d 1365, 1373-78 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*,
327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim . . . is
open-ended and allows for additional steps."); for "consisting of," *see, e.g., Conoco, Inc. v.*
*Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358-61 (Fed. Cir. 2006); *Vehicular Techs. Corp. v.*
*Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1383 (Fed. Cir. 2000) ("In simple terms, a drafter uses the
phrase 'consisting of' to mean 'I claim what follows and nothing else.'"); for "consisting
essentially of," *see, e.g., CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir.

90

1   2007); *AK Steel Corp. v. Sollac & Ugine,* 344 F.3d 1234, 1239 (Fed. Cir. 2003) ("consisting

2   essentially of" is a middle ground between open-ended term "comprising" and closed-ended phrase "consisting of")).

91

**STIPULATED JURY INSTRUCTION NO. 29**
**PATENT – INDEPENDENT AND DEPENDENT CLAIMS**
[This instruction should only be given where both dependent and independent claims are at issue.]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claim(s) [ ] of the [ ]the patents have the following "independent" claims:

> '104 patent: claims 11, 27, 29, 39, 40, and 41

> '702 patent: claims 1, 7, and 13;

> '520 patent: claims 1 and 12

> '205 patent: claim 1

> '476 patent: claim 14; and

> '720 patent: claims 1, 10, and 19 are each independent claims.

The remainder of the claims in the [ ] patentpatents are "dependent claims."  Specifically, the dependent claims are:

> '104 patent: none

> '702 patent: claims 6, 12, 15, and 16

> '520 patent: claims 8 and 20

> '205 patent: claim 2

> '476 patent: none

> '720 patent: claims 6, 21, and 22.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the claim(s) to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers.  A product [or process] that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

[Note: It may be helpful to submit to the jury a chart setting forth all dependencies for each dependent claim.]

| Java-Related Patent | Independent Claims | Dependent Claims |
|---|---|---|
| '104 | 11, 27, 29, 39, 40, 41 | None |
| '702 | 1, 7, 13 | 6, 12, 15, 16 |
| '520 | 1, 12 | 8, 20 |
| '205 | 1 | 2 |
| '476 | 14 | None |
| '720 | 1, 10, 19 | 6, 21, 22 |

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.2.2a (Feb. 18, 2010) (modified).

1
2

**STIPULATED JURY INSTRUCTION NO. 30
PATENT – INTERPRETATION OF CLAIMS**

3      I have interpreted the meaning of some of the language in the patent claims involved in

4  this case.  You must accept those interpretations as correct.  My interpretation of the language

5  should not be taken as an indication that I have a view regarding the issues of infringement and

6  invalidity.  The decisions regarding infringement and invalidity are yours to make.

7  [Court gives its claim interpretation. This instruction must be coordinated with instruction 3.5
8  — Means-Plus-Function Claims – Literal Infringement ‖  if the claims at issue include means-
   plus-function limitations.]

9      For the '104 patent, both of the terms "intermediate form code" and "intermediate form

10  object code" mean "executable code that is generated by compiling source code and is

11  independent of any computer instruction set."

12      For the '104 patent, the term "symbolic reference" means "a reference that identifies data

13  by a name other than the numeric memory location of the data, and that is resolved dynamically

14  rather than statically."

15      For the '104 patent, the term "resolving" a symbolic reference means "at least determining

16  the numerical memory-location reference that corresponds to the symbolic reference."

17      For the '702 patent, the term "reduced class file" means that which remains after one or

18  more duplicated elements have been removed from a class file.  This definition does not either

19  require or prohibit reduced class files from qualifying as Java class files.

20

21  AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA
   No. B.2.1 (Nov. 29, 2007) (modified) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S.
22  370, 384-391 (1996); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed.
   Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc); *Markman v.*
23  *Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc)); ECF No. 137 at 11, 16,
   20, 22, Claim Construction Order (May 9, 2011); *see also* FEDERAL CIRCUIT BAR ASSOCIATION
24  MODEL PATENT JURY INSTRUCTIONS No. B.2.2 (Feb. 18, 2010).

25

26

27

28

pa-1492148

1

**STIPULATED JURY INSTRUCTION NO. 31**
**PATENT INFRINGEMENT – BURDEN OF PROOF**

2

3        I will now instruct you on the rules you must follow in deciding whether [patent

4   holder]Oracle has proven that [alleged infringer] has infringed one or more of the asserted claims

5   of the [ ] patent. six patents at issue in this case have been infringed.  To prove infringement of

6   any claim, [patent holder]Oracle must persuade you that it is more likely than not that [Google or

7   the alleged direct infringer] has infringed that claim.

8

9   AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA
     No. B.3.1 (Nov. 29, 2007) (modified) (citing *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*,
10   418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*,
     172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-
11   69 (Fed. Cir. 1993)); FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS
     No. B.3.1 (Feb. 18, 2010).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 32**
**PATENT – DIRECT INFRINGEMENT**
**OFFERED BY ORACLE**

A patent's claims define what is covered by the patent.  A [product] [ or method] directly infringes a patent if it is covered by at least one claim of the patent.  In this case, Oracle claims that Android mobile devices and software and the Android SDK infringe the '104, '205, '476 and '720 patents.  Oracle contends that Android SDK also infringes the '520 and '702 patents.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, [and I will instruct you later as to the meaning of the asserted patent claims] [andand, in Instruction Number 8, I have already instructed you as to the meaning of some of the asserted patent claims].

The second step is to decide whether [alleged direct infringer]Google has [made,] [ used,] [ sold,] [ or offered for sale] or [imported] within the United States a [product] [ or method] covered by a claim of the [ ] patent.[†]Oracle Patents.  I have already determined that by offering and distributing Android, Google made a use or sale in the United States.  You, the jury, must still make this decision.the decision to whether Google made, used, sold or offered for sale within the United States a product or method that is covered by a claim of the Oracle patents.

[With one exception,] you must consider each of the asserted claims of the patentOracle Patents individually, and decide whether [alleged direct infringer]'s [product] [method]Google infringes that claim.

[The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.]

There are two ways in which a patent claim may be directly infringed.  A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents. "  The following instructions will provide more detail on these two types of direct infringement.  [You should note,

96

1    however, that what are called —means-plus-function requirements in a claim are subject to

2    different rules for deciding direct infringement. These separate rules apply to claims [ ]. I will

3    describe these separate rules shortly.]

4

5    AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA
     No. B.3.2 (Nov. 29, 2007) (modified) (citing 35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v.*

6    *Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor
     Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*,

7    239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172
     F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573,

8    1576 (Fed. Cir. 1993)); FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS
     No. B.3.1 (Feb. 18, 2010).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**DISPUTED JURY INSTRUCTION NO. 32**
**DIRECT INFRINGEMENT**
**OFFERED BY GOOGLE**

3

4

Oracle alleges that Google directly infringes the Asserted patents.  Specifically, Oracle alleges the following:

5

6

7

8

- That Google's making, using, selling, and/or offering for sale of certain Android mobile devices and software and the Android SDK infringe the '104, '205, '476 and '720 patents.  The specific mobile devices accused of infringing the '104, '205, '476 and '720 patents are the Android Dev Phone 1, Android Dev Phone 2, Nexus One (developer phone), Nexus One (direct sales), and Nexus S (developer phone).

9

- That Google's making, using, selling, and/or offering for sale of the Android SDK also infringes the '520 and '702 patents.

10

11

12

A patent's claims define what is covered by the patent.  A product or method directly infringes a patent if it is covered by at least one claim of the patent.

13

14

15

16

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and, in Instruction Number 10, I have already instructed you as to the meaning of some of the asserted patent claims.

17

18

19

20

21

The second step is to decide whether Google has made, used, sold, or offered for sale ~~or imported~~ within the United States a product or method covered by a claim of the ~~[ ] patent~~ Asserted Patents.  You~~,~~ the jury~~,~~ make this decision.  A sale or offer to sell must include an exchange of something of value or offer to exchange something of value and does not include giving something away for free.

22

23

24

25

26

27

With one exception, you must consider each of the asserted claims of the ~~patent~~ Asserted Patents individually, and decide whether Google~~'s product or method~~ infringes that claim.   The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim

28

1   has been infringed, you must still separately decide whether the additional requirements of its

2   dependent claims have also been infringed.

3        There are two ways in which a patent claim may be directly infringed.  A claim may be

4   "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following

5   instructions will provide more detail on these two types of direct infringement.  [You should note,

6   however, that what are called "means-plus-function" requirements in a claim are subject to

7   different rules for deciding direct infringement.  These separate rules apply to claims [ ].  I will

8   describe these separate rules shortly.]

9        AUTHORITIES:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF

10  CALIFORNIA No. B.3.2 (Nov. 29, 2007) (modified) (citing 35 U.S.C. § 271); FEDERAL CIRCUIT

11  BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.3.1 (Feb. 18, 2010).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

99

**DISPUTED JURY INSTRUCTION NO. 33**
**PATENT – LITERAL INFRINGEMENT**
**OFFERED BY ORACLE**

To decide whether ~~[alleged infringer]'s [product] [method]~~Google's accused products and methods literally ~~infringes~~infringe a claim of the ~~[ ] patent~~six Oracle Patents, you must compare ~~that [the accused~~ product~~]~~~~[ or~~ method~~]~~ with ~~the~~that particular patent claim and determine whether every requirement of ~~the~~any particular claim is included in ~~that [~~an accused product~~]~~~~[ or~~ method~~]~~.  If ~~so, [alleged infringer]'s [product] [method]~~it is, then Google literally infringes that claim.  If, however, ~~[alleged infringer]'s [~~the accused product~~]~~~~[ or~~ method~~]~~ does not ~~have~~meet every requirement in the ~~patent~~particular asserted claim, ~~[alleged infringer]'s [product]~~ ~~[method]~~Google does not literally infringe that claim.  You must decide literal infringement for each asserted claim separately.  Oracle must prove literal infringement of the claim by a preponderance of the evidence.

~~[~~If ~~[alleged infringer's] [~~Google's product~~]~~~~[ or~~ method~~]~~ does not itself include every requirement in the patent claim, ~~[alleged infringer] cannot be~~Google is not liable for literal infringement~~ merely because~~, even if other parties supplied the missing elements~~, unless [accused~~ ~~infringer]~~.  If Google directed or controlled the acts ~~by~~of others, however, it is responsible for those ~~parties.]~~acts.

A<small>UTHORITY</small>:  M<small>ODEL</small> P<small>ATENT</small> J<small>URY</small> I<small>NSTRUCTIONS FOR THE</small> N<small>ORTHERN</small> D<small>ISTRICT OF</small> C<small>ALIFORNIA</small> No. B.3.3 (Nov. 29, 2007) (modified); F<small>EDERAL</small> C<small>IRCUIT</small> B<small>AR</small> A<small>SSOCIATION</small> M<small>ODEL</small> P<small>ATENT</small> J<small>URY</small> I<small>NSTRUCTIONS</small> No. B.3.1a (Feb. 18, 2010).

100

**DISPUTED JURY INSTRUCTION NO. 33**
**LITERAL INFRINGEMENT**
**OFFERED BY GOOGLE**

To decide whether Google's accused products and methods literally infringe a claim of the ~~[ ] patent~~ Asserted Patents, you must compare ~~that~~ the accused product or method with ~~the~~ that particular patent claim and determine whether every requirement of ~~the~~ any particular claim is included in ~~that~~ an accused product or method.  If ~~so~~ it is, then Google~~'s product or method~~ literally infringes that claim.  If, however, ~~[alleged infringer]'s~~ the accused product or method does not meet ~~have~~ every requirement in the particular asserted ~~patent~~ claim, Google~~'s product or method~~ does not literally infringe that claim.  You must decide literal infringement for each asserted claim separately.  Oracle must prove literal infringement of the claim by a preponderance of the evidence.

If Google's product or method does not itself include every requirement in the patent claim, Google ~~cannot be~~ is not liable for literal infringement, even if ~~merely because~~ other parties supplied the missing elements.~~, unless~~  If Google directed or controlled the acts of others, however, it is responsible for those acts. ~~by those parties.~~

AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No. B.3.3 (Nov. 29, 2007) (modified); FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.3.1a (Feb. 18, 2010).

101

**DISPUTED JURY INSTRUCTION NO. 34**
**PATENT – DIRECT INFRINGEMENT "UNDER THE**
**DOCTRINE OF EQUIVALENTS"**
**OFFERED BY ORACLE**

[This next instruction should only be given where the patentee asserts infringement under the doctrine of equivalents.]applies only to the '205 patent and the '702 patent.  If a [person] [company] makes, uses, sells, offers to sell within, or imports into the United States a [product][ or process] that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that [product or process] satisfies that claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a [product or process] infringes a claim if the accused [product or process] [contains elements or performs steps] corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused [product or process].  You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the [structure or action]: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. In order for the [structure or action] to be considered interchangeable, the [structure or action] must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. In order to prove infringement by "equivalents," [patent holder]Oracle must prove the equivalency of the [structure or action]s to a claim element by a preponderance of the evidence.

If claims with means-plus-function clauses are at issue:

When the claim requirement that is not met by the [product or process] is a ["means-plus-function" or "step-plus-function"] requirement, and if you determined that there is no "literal infringement" because there is no [structure or set of structures/action or set of actions] in the [product or process] that performs the specific function of the means-plus-function requirement,, you may decide that the [structure or action] nonetheless corresponds to the requirements of the claim under the doctrine of equivalents if it performs an "equivalent" function and has an "equivalent" [structure or action].

102

~~On the other hand, if you find that the accused [product or process] has no corresponding [structure or set of structures/action or set of actions] to [any of] the [set(s) of] [structure(s) or action(s)] that I defined as performing that function, then you must find that there is no infringement under the doctrine of equivalents. This is the case even if you find that the accused [product or process] has some other [structure or set of structures/action or set of actions] that performs the specific function of the means-plus-function requirement. In other words, for a means-plus-function requirement, a determination that there is no "equivalent" structure for purposes of "literal infringement" precludes you from finding infringement under the "doctrine of equivalents."~~

You may not use the doctrine of equivalents to find infringement if you find that Google's method is the same as what was in the prior art before the application for the '205 patent or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.  If Google has offered evidence sufficient to show that the accused method is in the prior art, the burden shifts to Oracle to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art.

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.3.1c (Feb. 18, 2010) (modified); MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No. B.3.4 & n.2 (Nov. 29, 2007).

103

pa-1492148

**DISPUTED JURY INSTRUCTION NO. 34**
**DIRECT INFRINGEMENT "UNDER THE DOCTRINE OF EQUIVALENTS"**
**OFFERED BY GOOGLE**

[This instruction should only be given where the patentee asserts infringement under the doctrine of equivalents.] This next instruction applies only to the '205 patent. If a company makes, uses, sells, or offers to sell within, or imports into the United States a product or process that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or process satisfies that claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a product or process infringes a claim if the accused product or process [contains elements or performs steps] corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused product or process. You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the [structure or action]: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. In order for the [structure or action] to be considered interchangeable, the [structure or action] must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. In order to prove infringement by "equivalents," Oracle must prove the equivalency of the [structure or actions] to a claim element by a preponderance of the evidence.

You may not use the doctrine of equivalents to find infringement if you find that Google's method is the same as what was in the prior art before the application for the '205 patent or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office. If Google has offered evidence sufficient to show that the accused method is in the prior art, the burden shifts to Oracle to prove

104

1    that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not

2    have been obvious from the prior art.

3    ~~If claims with means-plus-function clauses are at issue:~~

4    ~~When the claim requirement that is not met by the [product or process] is a ["means-plus-~~

5    ~~function" or "step-plus-function"] requirement, and if you determined that there is no "literal~~

6    ~~infringement" because there is no [structure or set of structures/action or set of actions] in the~~

7    ~~[product or process] that performs the specific function of the means-plus-function requirement,,~~

8    ~~you may decide that the [structure or action] nonetheless corresponds to the requirements of the~~

9    ~~claim under the doctrine of equivalents if it performs an "equivalent" function and has an~~

10   ~~"equivalent" [structure or action].~~

11   ~~On the other hand, if you find that the accused [product or process] has no corresponding~~

12   ~~[structure or set of structures/action or set of actions] to [any of] the [set(s) of] [structure(s) or~~

13   ~~action(s)] that I defined as performing that function, then you must find that there is no~~

14   ~~infringement under the doctrine of equivalents. This is the case even if you find that the accused~~

15   ~~[product or process] has some other [structure or set of structures/action or set of actions] that~~

16   ~~performs the specific function of the means-plus-function requirement. In other words, for a~~

17   ~~means-plus-function requirement, a determination that there is no "equivalent" structure for~~

18   ~~purposes of "literal infringement" precludes you from finding infringement under the "doctrine of~~

19   ~~equivalents."~~

20   AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS

21   No. B.3.1c (Feb. 18, 2010) (modified); N.D. Cal. Model Patent Jury Instr. B.3.4 & n.2.

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 35**
**PATENT – LIMITATIONS ON DIRECT INFRINGEMENT UNDER THE**
**"DOCTRINE OF EQUIVALENTS"**
**OFFERED BY ORACLE**

[Oracle contends that an instruction on the limitations of the doctrine of equivalents (prosecution history estoppel) is improper, as Google did not adequately disclose this theory in discovery and it does not apply here.]

pa-1492148

1

**DISPUTED JURY INSTRUCTION NO. 35**
**PATENT – LIMITATIONS ON DIRECT INFRINGEMENT**

2

**UNDER THE "DOCTRINE OF EQUIVALENTS"**
**OFFERED BY GOOGLE**

3

4      Because Oracle made certain claim changes or statements during the patent application

5    process for the '205 patent, the doctrine of equivalents analysis cannot be applied to the following

6    requirements of the asserted claims 1 and 2 of the '205 patent:

7
- "generating, at runtime, a new virtual machine instruction that represents or references one or more native instructions that can be executed instead of said first virtual 50 machine instruction;" and

8

9
- "overwriting a selected virtual machine instruction of the function with a new virtual machine instruction, the new virtual machine instruction specifying execution of the at least one native machine instruction."

10

11

12      Unless each of these requirements is literally present within the [alleged infringer]'s

13    [product] [method], a part of the accused methods, there can be no infringement of the claims.

AUTHORITY:  N.D. Cal. Model Patent Jury Instr. B.3.7.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**STIPULATED JURY INSTRUCTION NO. 36**
**PATENT – INDIRECT INFRINGEMENT – GENERALLY**
**OFFERED BY ORACLE**

3   ~~[Patent holder] [also] argues that [alleged infringer] [contributed to infringement by another~~

4   ~~of] [and] [or] [induced another to infringe] claims [ ] of the [ ] patent. [[Patent holder] has not argued~~

5   ~~that the [product] [method] made, used, sold, offered for sale or imported by [alleged infringer]~~

6   ~~includes all of the requirements of an asserted patent claim.] [Alleged infringer] cannot~~ [In addition

7   to claiming that Google directly infringed the Oracle Patents, Oracle argues that Google is legally

8   responsible for the infringement of the Oracle Patents by others, based on contributory

9   infringement and inducing infringement.  Google cannot contributorily infringe]~~[~~ or~~][~~ induce

10   infringement] unless ~~[patent holder]~~Oracle proves that someone other than ~~[alleged~~

11   ~~infringer]~~Google directly infringes the patent claim by making, using, selling, offering for sale~~or~~

12   ~~importing~~ a [method or product]~~[method]~~ that includes all of the requirements of the asserted

13   claims.  If there is no direct infringement~~, [alleged infringer]~~ by anyone in the United States,

14   Google cannot have ~~[contributed to infringement]~~[~~ or~~][~~ induced infringement].

15

16   AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA
     No. 3.8 (Nov. 29, 2007) (modified) (citing *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
     909 F.2d 1464, 1468-69 (Fed. Cir. 1990)); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,

17   750 F.2d 1552, 1567 (Fed. Cir. 1984).

18
19
20
21
22
23
24
25
26
27
28

**DISPUTED JURY INSTRUCTION NO. 37**
**PATENT – CONTRIBUTORY INFRINGEMENT**
**OFFERED BY ORACLE**

[Patent holder] [also]In addition to claiming that Google directly infringed the Oracle Patents, Oracle argues that [alleged infringer]Google has contributed to infringement by another.mobile device manufacturers, mobile service providers, developers, and end-users of Android.  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by [alleged infringer]Google, someone other than [alleged infringer]Google must directly infringe a claim of the [ ] patentOracle Patents; if there is no direct infringement by anyone, there can be no contributory infringement.  In this case, Oracle claims that Google contributes to the infringement of Android mobile device manufacturers, mobile service providers, developers and end users of the '104, '205, '476 and '720 patents.  Oracle contends that Google also contributes to the infringement of Android mobile device manufacturers and developers of the '520 and '702 patents.

If you find someoneone of these mobile device manufacturers, mobile service providers, developer, or end-users of Android, has directly infringed any of the [ ] patentOracle Patents, then Google is liable for contributory infringement exists if:

(1) [Alleged infringer]1.	Google supplied an important component of the infringing part of the [product] or [method];.;

(2)2. The component is not a common component suitable for non-infringing use; and

(3) [Alleged infringer]3.	Google supplied the component with the knowledge of the [ ] patentOracle Patents and knowledge that the component was especially made or adapted for use in an infringing manner.

In order to establish Google's "knowledge" of the Oracle Patents, actual knowledge is not required – instead, intent may be shown if Google was "willfully blind" to the fact that Oracle had a protective patent.  I will explain "willful blindness" in Instruction Number 19.

AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No. 3.9 (Nov. 29, 2007) (modified) (citing 35 U.S.C. § 271(c); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption*

109

1   *Devices, Inc. v. Minn. Mining & Mfr. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986)); *see also*
2   *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 U.S. Dist. LEXIS 99415, at *13 (N.D. Ill. Sept. 2, 2011); *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011).

110

**DISPUTED JURY INSTRUCTION NO. 37**
**CONTRIBUTORY INFRINGEMENT**
**OFFERED BY GOOGLE**

Oracle argues that Google has contributed to infringement by others ~~another~~.  Specifically, Oracle alleges the following:

- Google contributed to the infringement of the '104, '205, '476 and '720 patents by device manufacturers, mobile service providers, developers, and end-users.  The specific mobile devices accused of infringing the '104, '205, '476, and '720 patents are the HTC Nexus One (third party sales), Samsung Nexus S (third party sales), HTC Evo 4G, HTC Droid Incredible, HTC G2, Motorola's Droid, and Samsung Captivate.

- By providing the Android SDK, Google contributed to the infringement of the '520 and '702 patents by device manufacturers and developers.

Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by Google, someone other than Google must directly infringe a claim of the ~~[ ] patent~~ Asserted Patents; if there is no direct infringement by anyone, there can be no contributory infringement.  To prove direct infringement, Oracle must either prove that Android necessarily infringes an asserted claim or prove specific acts of direct infringement by others.

If you find that a person has directly infringed ~~the [ ] patent~~ an Asserted Patent, then ~~contributory infringement exists~~ Google is liable for contributory infringement if:

1. Google ~~supplied~~ sold or offered for sale an important component of the infringing part of the product ~~or [method]~~;

2. The component is not a common component suitable for non-infringing use; and

3. Google ~~supplied~~ sold or offered for sale the component with knowledge of the ~~[ ] patent~~ Asserted Patent and knowledge that the component was especially made or adapted for use in an infringing manner.

As noted in the context of direct infringement, a sale or offer to sell must include an exchange of something of value or offer to exchange something of value and does not include giving something away for free.

111

1    Finally, Google can be liable for contributory infringement only if you find that

2  Google sold or offered for sale a tangible thing that was actually used by another person to

3  directly infringe.  If you find that the other person instead copies Android and uses those copies in

4  an infringing product, then you may not find Google liable for contributory infringement.

5  Likewise, if you find that Google sells or offers to sell only source code, you may not find Google

6  liable for contributory infringement because source code cannot be a tangible component.

7    AUTHORITIES:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF

8  CALIFORNIA No. 3.9 (Nov. 29, 2007) (modified) (citing 35 U.S.C. § 271(c)).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 38**
**PATENT – INDIRECT INFRINGEMENT – ACTIVE INDUCEMENT**
**OFFERED BY ORACLE**

~~[Patent holder]~~Oracle alleges that ~~[alleged infringer]~~Google is liable for infringement by actively inducing ~~[someone else] [some other company]~~mobile device manufacturers, mobile service providers, developers, and end-users of Android to directly infringe the ~~[ ] patent~~Oracle Patents literally or under the doctrine of equivalents.  In this case, Oracle claims that Google actively induces the infringement by Android mobile device manufacturers, mobile service providers, developers and end users of the '104, '205, '476 and '720 patents.  Oracle contends that Google also actively induces the infringement by Android mobile device manufacturers and developers of the '520 and '702 patents.

As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

~~[Alleged infringer]~~Google is liable for active inducement of a claim only if ~~[patent holder]~~Oracle proves by a preponderance of the evidence that:

~~(1) [alleged infringer]~~1.       Google took action ~~during the time the [ ] patent was in force~~ intending to cause acts by ~~[insert name or other description of alleged direct infringer]~~these mobile device manufacturers, mobile service providers, developers, and end-users of Android;

~~(2) [alleged infringer]~~2.       Google was aware of the ~~[ ] patent~~Oracle Patents and knew or should have known that  the acts, if taken, would constitute infringement of that patent; and

~~(3)~~ 3. the acts are actually carried out by ~~the [insert name or other description of alleged direct infringer]~~these mobile device manufacturers, mobile service providers, developers, and end-users of Android and directly infringe that claim.

In order to establish that Google "knew or should have known" of the Oracle Patents, actual knowledge is not required – instead, intent may be shown if Google was "willfully blind" to the fact that Oracle had a protective patent.  I will explain "willful blindness" in Instruction Number 39.

In order to establish active inducement of infringement, it is not sufficient that ~~[insert name or other description of alleged direct infringer] itself~~mobile device manufacturers, mobile service providers, developers, and end-users of Android directly ~~infringes~~infringe the claim.  Nor

113

is it sufficient that ~~[alleged infringer]~~Google was aware of the ~~act(s) by [insert name or other description of alleged direct infringer]~~acts by one of those parties that allegedly constitute the direct infringement.  Rather, you must find that ~~[accused infringer]~~Google specifically intended ~~[insert name or other description of alleged direct infringer]~~one of those parties to infringe the ~~[ ] patent~~Oracle Patents, in order to find inducement of infringement.

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.3.2 (Feb. 18, 2010) (modified) (citing 35 U.S.C. § 271(b); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006); *MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005); *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003)); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068-70 (2011); *Nazomi Commc'ns, Inc. v. Nokia Corp.*, No. 10-CV-4686, 2011 U.S. Dist. LEXIS 76057, at *9 (N.D. Cal. July 14, 2011) (J. Fogel); *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2011 WL 3584313, *5 (E.D. Va. Aug. 12, 2011).

**DISPUTED JURY INSTRUCTION NO. 38**
**INDIRECT INFRINGEMENT – ACTIVE INDUCEMENT**
**OFFERED BY GOOGLE**

Oracle argues that Google has actively induced ~~another~~ others to infringe the ~~[ ] patent~~ Asserted Patents.  Specifically, Oracle alleges the following:

- Google induced device manufacturers, mobile service providers, developers, and end-users to infringe the '104, '205, '476 and '720 patents.  The specific mobile devices accused of infringing the '104, '205, '476, and '720 patents are the HTC Nexus One (third party sales), Samsung Nexus S (third party sales), HTC Evo 4G, HTC Droid Incredible, HTC G2, Motorola's Droid, and Samsung Captivate.

- By providing the Android SDK, Google induced device manufacturers and developers to infringe the '520 and '702 patents.

As with contributory infringement, in order for there to be ~~inducement of~~ contributory infringement of a claim by Google, someone ~~else~~ other than Google must directly infringe ~~a~~ that claim ~~of the [ ] patent~~; if there is no direct infringement by anyone, there can be no induced infringement.

~~In order to be~~ Google is liable for active inducement ~~of infringement, [alleged infringer]~~ ~~must~~ of a claim only if Oracle proves by a preponderance of the evidence that Google:

1. intentionally took ~~have intentionally taken~~ action that actually induced direct infringement by another;

2. was ~~have been~~ aware of the asserted ~~[ ]~~ patent; and

3. knew ~~have known~~ or should have known that its actions would cause direct infringement by another.

To establish active inducement of infringement, it is not sufficient that there is direct infringement by another.  Nor is it sufficient that Google was aware of the acts by another that allegedly constitute the direct infringement.  Rather, in order to find inducement of infringement, you must find that Google specifically intended the infringement of the Asserted Patents.  ~~In order to prove induced infringement, [patent holder] must either prove that the [accused product] necessarily infringes the [patent in suit] or prove acts of direct infringement by others that were induced by [accused infringer].~~  Oracle must further prove the number of direct acts of infringement of the ~~[patent in suit]~~ Asserted Patents because the amount of damages for induced infringements is limited by the number of specific instances of direct infringement.

115

1          AUTHORITIES:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF

2    CALIFORNIA No. 3.10 (Nov. 29, 2007) (modified) (citing

3          *See also* FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS

4    No. B.3.2 (Feb. 18, 2010) (modified) (citing 35 U.S.C. § 271(b)).

116

**DISPUTED JURY INSTRUCTION NO. 39**
**PATENT – INFRINGEMENT – WILLFUL BLINDNESS AS KNOWLEDGE**
**OFFERED BY ORACLE**

Oracle alleges that Google knew that the Java platform was protected by the Oracle Patents, but that Google infringed the patents anyway and contributed to and induced others to infringe them as well.  Google claims that it did not know about the Oracle Patents.

Actual knowledge is not required in order to establish that Google "knew" or was aware of the Oracle Patents for purposes of contributory infringement and inducing infringement – instead, intent may be shown if Google was "willfully blind" to the fact that Oracle had protective patents.   A willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.  In order to show that Google willfully blinded itself to the fact that Oracle had protective patents to the Java-platform, Oracle must show that:

1.  Google subjectively believed that there was a high probability that Oracle had protective patents covering the Java platform; and

2.  Google took deliberate actions to avoid learning of that fact.

If Oracle proves these two elements by a preponderance of the evidence, you must conclude that Google willfully blinded itself, and thus had knowledge of the Oracle Patents.

AUTHORITY:  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067, 2070-71 (2011); *Nazomi Commc'ns, Inc. v. Nokia Corp.*, No. 10-CV-4686, 2011 U.S. Dist. LEXIS 76057, at *9 (N.D. Cal. July 14, 2011); *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011); *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060, 2067, 2070-71, n.9 (2011); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 U.S. Dist. LEXIS 99415, at *13 (N.D. Ill. Sept. 2, 2011); *see PalTalk Holdings, Inc. v. Microsoft Corp.*, No. 2:06-CV-367 (DF), 2009 U.S. Dist. LEXIS 131087, at *6-7 (E.D. Tex. Feb. 2, 2009).

117

1

2

**DISPUTED JURY INSTRUCTION NO. 39**
**PATENT – INFRINGEMENT – WILLFUL BLINDNESS AS KNOWLEDGE**
**OFFERED BY GOOGLE**

3

*Google objects to such an instruction.*

4

Oracle's proposed instructions for both active inducement of infringement and

5

contributory infringement include an express statement that "willful blindness" can substitute for

6

actual knowledge of the patents-in-suit, and Oracle also requests a separate, lengthy jury

7

instruction explaining so-called "willful blindness."  As explained in the related briefing, an

8

instruction on willful blindness should not be given absent proof of extraordinary circumstances

9

that would justify doing so, and even in that case, the instructions Oracle has requested are

10

duplicative and therefore unduly prejudicial.

11

12

*See* Defendant Google Inc.'s Memorandum in Support of its Disputed Jury Instructions.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 40**
**PATENT – WILLFUL INFRINGEMENT**
**OFFERED BY ORACLE**

[This instruction should be given only if willfulness is in issue.]

In this case, [patent holder]Oracle argues both that [alleged infringer]Google infringed and, further, that [alleged infringer]Google infringed willfully.  If you have decided that [alleged infringer]Google has infringed, you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine by clear and convincing evidence that [alleged infringer]Google acted recklessly.  To prove that [alleged infringer]Google acted recklessly, [patent holder]Oracle must prove two things by clear and convincing evidence: The first part of the test is objective: the patent holder must persuade you that [alleged infringer]Google acted despite a high likelihood that [alleged infringer]Google's actions infringed a valid and enforceable patent.  In making this determination, you may not consider [alleged infringer]Google's state of mind.  Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.  Only if you conclude that the [alleged infringer]Google's conduct was reckless do you need to consider the second part of the test.

The second part of the test does depend on the state of mind of the [alleged infringer].Google.  The patent holder must persuade you that [alleged infringer]Google actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.  In evaluating this, you may consider whether Google was aware that Oracle had a patent portfolio relating to the Java software platform.  To determine whether [alleged infringer]Google had this state of mind, consider all facts which may include, but are not limited, to:

(1) 1. Whether or not [alleged infringer]Google acted in accordance with the standards of commerce for its industry;

(2) 2. Whether or not [alleged infringer]Google intentionally copied a product of [patent holder]or method of Oracle's that is covered by the [ ] patent; Oracle Patents;

(3) 3. Whether or not there is a reasonable basis to believe that [alleged infringer]Google did not infringe or had a reasonable defense to infringement;

119

(4) 4. Whether or not [alleged infringer]Google made a good-faith effort to avoid infringing the [ ] patentOracle Patents, for example, whether [alleged infringer]Google attempted to design around the [ ] patent; [Oracle Patents; and]

(5) 5. Whether or not [alleged infringer]Google tried to cover up its infringement[.*; and] (6) [Give this instruction only if [alleged infringer] relies upon an opinion of counsel as a defense to an allegation of willful infringement:

[Alleged infringer] argues it did not act recklessly because it relied on a legal opinion that advised [alleged infringer] either (1) that the [product] [method] did not infringe the [ ] patent or (2) that the [ ] patent was invalid [or unenforceable]. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.]

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.3.8 (Feb. 18, 2010) (modified) (citing 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (standard for finding willfulness); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990)); *see PalTalk Holdings, Inc. v. Microsoft Corp.*, No. 2:06-CV-367 (DF), 2009 U.S. Dist. LEXIS 131087, at *6-7 (E.D. Tex. Feb. 2, 2009); *see also Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060 (2011); MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No B.3.11 (Nov. 29, 2007); National Jury Instruction Project Model Patent Jury Instructions No. 4.1 (Willful Infringement) (June 17, 2009).

120

**DISPUTED JURY INSTRUCTION NO. 40**
**WILLFUL INFRINGEMENT**
**OFFERED BY GOOGLE**

In this case, Oracle argues that Google willfully infringed Oracle's patents.

The issue of willful infringement relates to the amount of damages Oracle is entitled to recover in this lawsuit.  If you decide that Google willfully infringed the claims of Oracle's patent, then it is my job to decide whether or not to award increased damages to Oracle.  You should not take this factor into account in assessing the damages, if any, to be awarded to Oracle.

To prove willful infringement, [patent holder] must first persuade you that the [alleged infringer] infringed a valid and enforceable claim of the [patent holder]'s patent. The requirements for proving such infringement were discussed in my prior instructions.

In addition, To prove willful infringement of any of the asserted patents, Oracle must persuade you that it is highly probable that, prior to the filing date of the complaint, Google acted with reckless disregard of the claims of [the patent holder]'s that specific patent.  General knowledge of potential patent rights does not suffice; Google must have been aware of the patent itself in order to be found to willfully infringe.

To demonstrate such "reckless disregard," Oracle must satisfy a two-part test.  The first part of the test is objective.  Oracle must persuade you that Google acted despite an objectively high likelihood that its actions constituted infringement of a the valid and enforceable infringed patent.  Google's The state of mind of the [alleged infringer] is not relevant to this inquiry.  Rather, the appropriate inquiry is your job is to determine whether the defenses put forth by Google, fail to raise any substantial question with regard to infringement, validity or enforceability.  If Google has legitimate or credible defenses to infringement, even if those defenses ultimately were not successful, that demonstrates a lack of recklessness.  Only if you conclude that the Google's defenses fail to raise any substantial question with regard to about infringement, validity, or enforceability, do you need to consider move on to the second part of the test.

pa-1492148

The second part of the test does depend on Google's ~~the~~ state of mind ~~of the [alleged infringer]~~. Oracle must persuade you that Google (1) either actually knew that its actions constituted infringement of the patent in question, or ~~it was~~ that infringement was so obvious that Google should have known~~,~~ that its actions constituted infringement of ~~a valid and enforceable patent~~ the patent in question; and also (2) knew or should have known that the patent in question was valid and enforceable.

~~In deciding whether [alleged infringer] acted with reckless disregard for [patent holder]'s patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:~~

~~1.        Whether [alleged infringer] acted in a manner consistent with the standards of commerce for its industry; [and]~~

~~2.    Whether [alleged infringer] intentionally copied a product of [patent holder] covered by the patent[.] [;and]~~

~~3.    Whether [alleged infringer] relied on a legal opinion that was well-supported and believable and that advised [alleged infringer] (1) that the [product] [method] did not infringe [patent holder]'s patent or (2) that the patent was invalid [or unenforceable].]~~

AUTHORITIES:  N.D. Cal. Model Patent Jury Instr. B.3.11; modified per National Jury Instruction Project, Model Patent Jury Instruction 4.1; *In re Seagate Technology, LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007).

**DISPUTED JURY INSTRUCTION NO. 41**
**PATENT DEFENSE – INVALIDITY – BURDEN OF PROOF**
**OFFERED BY ORACLE**

I will now instruct you on the rules you must follow in deciding whether or not [alleged infringer]Google has proven that claims [ ] of the [ ] patent are invalid.  Google argues that all of the claims of the six Oracle Patents are invalid.  To prove that any claim of a patent is invalid, [alleged infringer]Google must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

During the course of this trial, Google has presented you with a number of references that it contends are relevant prior art.  The fact that any particular reference was not before the PTO examiner during prosecution of the patent application does not change Google's burden of proof or the presumption that the patent is valid.  However, in making your decision whether Google has met its burden of proof by clear and convincing evidence as to a particular patent claim, you may consider whether you have heard prior art references that are materially new that the Patent Office had no opportunity to evaluate.

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.4.1 (Feb. 18, 2010) (modified) (citing 35 U.S.C. § 282; *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986)); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) (applying the clear and convincing standard to all prior art references regardless of their use in initial examination).  *See also* Model Patent Jury Instructions for the Northern District of California No. B.4.1 (Nov. 29, 2007).

**DISPUTED JURY INSTRUCTION NO. 41**
**INVALIDITY – BURDEN OF PROOF**
**OFFERED BY GOOGLE**

I will now instruct you on the rules you must follow in deciding whether or not Google has proven that ~~claims [ ] of the [ ]~~ an asserted claim patent ~~is~~ are invalid.  To prove invalidity of ~~that~~ any ~~claim of a~~ patent ~~is invalid~~ claim, Google must establish factual matters concerning invalidity ~~persuade you~~ by clear and convincing evidence, ~~i.e., you must be left with a clear conviction that the claim is invalid~~ which means that it must persuade you that it is highly probable that Google's factual contentions concerning invalidity are correct.

During the course of this trial, Google has presented you with a number of prior art references.  The fact that any particular reference was not before the PTO examiner during prosecution of the patent application does not change Google's burden of proof or the presumption that the patent is valid.  However, in making your decision whether Google has met its burden of proof by clear and convincing evidence as to a particular patent claim, you may consider whether you have heard prior art references that are materially new that the Patent Office had no opportunity to evaluate.

AUTHORITIES:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.4.1 (Feb. 18, 2010) (modified) (citing 35 U.S.C. § 282); *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986)); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) (applying the clear and convincing standard to all prior art references regardless of their use in initial examination).

*See also* Model Patent Jury Instructions for the Northern District of California No. B.4.1 (Nov. 29, 2007).

1
2

**STIPULATED JURY INSTRUCTION NO. 42**
**PATENT – INVALIDITY – ANTICIPATION**

3   ~~In order for someone to be entitled to a~~A patent~~,~~ claim is invalid if the claimed invention

4   ~~must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of~~

5   ~~an application claiming the invention~~is not new. In general, inventions are new when the identical

6   ~~[~~product or process~~]~~ has not been made, used, or disclosed before. Anticipation must be

7   determined on a claim-by-claim basis.~~[Alleged infringer] contends that claim(s) [ ] of the [ ] patent~~

8   ~~is/are invalid because the claimed invention(s) is/are anticipated or because [patent holder] lost the~~

9   ~~right to obtain a patent. [Alleged infringer]~~ To prove a patent claim invalid as anticipated, Google

10   must convince you ~~of this~~ by clear and convincing evidence, i.e., that the evidence highly

11   probably demonstrates that the ~~claim(s) is/~~claims are invalid.

12   The description in the written reference does not have to be in the same words as the

13   claim, but all of the requirements of the claim must be there, either stated or necessarily implied,

14   so that someone of ordinary skill in the field of the invention at the time the invention was made

15   looking at that one reference would be able to make and use the claimed invention.

16   Here is a list of ways that ~~[alleged infringer]~~Google can show that a patent claim was not

17   new ~~or that the patentee lost the right to patent the claim(s) [choose those that apply based on alleged~~

18   ~~infringer's contentions]~~:

19   ~~(1)~~

20   1.  An invention is not new if it was ~~known to or used by others in the United States before~~
21          ~~the [insert date of invention]. An invention is known when the information about it was~~
              ~~reasonably accessible to the public on that date.~~

22   ~~(2) An invention is not new if it was already patented or described in a printed publication, anywhere~~
        ~~in the world before the [insert date of invention]. [A description is a "printed publication" only if it~~
23   ~~was publicly accessible.]~~
        ~~(3) [Patent holder] has lost her or his rights if the claimed invention was already patented or described~~
24   ~~in a printed publication, anywhere in the world by [patent holder] or anyone else, more than a year~~
        ~~before [insert date], which is the effective filing date of the application for the [ ] patent. An invention~~
25   ~~was patented by another if the other patent describes the same invention claimed by [patent holder] to~~
        ~~a person having ordinary skill in the technology.~~
26   ~~(4) [Patent holder] has lost her or his rights if the claimed invention was publicly used, sold, or~~
        ~~offered for sale in the United States more than one year before [insert date], which is the effective~~
27   ~~filing date of the application for the [ ] patent. An invention was publicly used when it was either~~
        ~~accessible to the public or commercially exploited. An invention was sold or offered~~

28

for sale when it was offered commercially and what was offered was ready to be patented, i.e., a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.

(5) [Patent holder] has lost his or her rights if he or she abandoned the invention.

(6) [Patent holder] has lost her or his rights if she or he had already obtained a patent for the invention in a foreign country before the filing date of the application in the United States or the patent application was filed in a foreign country more than a year before the filing date of the application for the patent in the United States.

(7) An invention is not new if it was described in a published patent application filed by another in the United States [or under the PCT system and designated the United States, and was published in English] before [insert date of invention].already patented or described in a printed publication, anywhere in the world before December 22, 1992 for the '104 patent; before October 31, 1997 for the '702 patent; before December 11, 1997 for the '476 patent; before April 7, 1998 for the '520 patent; before July 12, 2002 for the '205 patent; and before December 22, 2003 for the '720 patent.

(8) 2. An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States [or under the PCT system and designated the United States, and was published in English] and the application was filed before [insert date of reduction to practice or the filing date of the application for the [ ] patent]December 22, 1992 for the '104 patent; before October 31, 1997 for the '702 patent; before December 11, 1997 for the '476 patent; before April 7, 1998 for the '520 patent; before July 12, 2002 for the '205 patent; and before December 22, 2003 for the '720 patent.

(9) [Patent holder] is not entitled to the [ ] patent if [named inventor] did not himself invent the invention.

(10) An invention is not new if the invention was made by someone else in the United States before the invention was made by [patent holder] and the other person did not abandon, suppress, or conceal the invention.

If an interference proceeding has been declared, additional instructions should be given on this issue.

AUTHORITY: FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS NO. 4.3b (Feb. 18, 2010) (modified); *see* MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA NO. 4.3a1 (Nov. 29, 2007).

126

1
2

**DISPUTED JURY INSTRUCTION NO. 43**
**PATENT – INVALIDITY – OBVIOUSNESS**
**OFFERED BY ORACLE**

3   Even though an invention may not have been identically disclosed or described before it

4   was made by an inventor, in order to be patentable, the invention must also not have been obvious

5   to a person of ordinary skill in the field of technology of the patent at the time the invention was

6   made.

7   [Alleged infringer]Google may establish that a patent claim is invalid by showing, by clear

8   and convincing evidence, that the claimed invention would have been obvious to persons having

9   ordinary skill in the art at the time the invention was made in the field of [insert the field of the

10  invention]fields of programming language compilers and interpreters for the '104 patent;

11  interpreter execution speed optimizations for the '205 patent; optimizing space and memory

12  usage of Java applications for the '702 and '520 patents; managed code platform optimizations

13  for the '720 patent; and computer system security in a networked environment for the '476 patent.

14  In determining whether a claimed invention is obvious, you must consider the level of

15  ordinary skill in the field [of the invention]inventions that someone would have had at the time the

16  claimed invention wasinventions were made, [or at the critical date for art triggering a statutory

17  bar], the scope and content of the prior art, and any differences between the prior art and the

18  claimed invention.

19  Keep in mind that the existence of each and every element of the claimed invention in the

20  prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building

21  blocks of prior art.  In considering whether a claimed invention is obvious, you may but are not

22  required to find obviousness if you find that at the time of the claimed invention [or the critical

23  date] there was a reason that would have prompted a person having ordinary skill in the field of

24  [the invention]inventions to combine the known elements in a way the claimed invention does,

25  taking into account such factors as (1) whether the claimed invention was merely the predictable

26  result of using prior art elements according to their known function(s); (2) whether the claimed

27  invention provides an obvious solution to a known problem in the relevant field; (3) whether the

28  prior art teaches or suggests the desirability of combining elements claimed in the invention; (4)

127

1    whether the prior art teaches away from combining elements in the claimed invention; (5)

2    whether it would have been obvious to try the combinations of elements, such as when there is a

3    design need or market pressure to solve a problem and there are a finite number of identified,

4    predictable solutions; and (6) whether the change resulted more from design incentives or other

5    market forces.  To find it rendered the invention obvious, you must find that the prior art provided

6    a reasonable expectation of success.  Obvious to try is not sufficient in unpredictable

7    technologies.

8          In determining whether the claimed invention was obvious, consider each claim

9    separately. Do not use hindsight, i.e., consider only what was known You must be careful not to

10   determine obviousness using the benefit of hindsight; many true inventions might seem obvious

11   after the fact.  You should put yourself in the position of a person of ordinary skill in the field at

12   the time of the claimed invention [or the critical date]was made and you should not consider what

13   is known today or what is learned from the teaching of the patent.

14         In making these assessments, you should take into account any objective evidence

15   (sometimes called "secondary considerations") that may have existed at the time of the invention

16   [or the critical date] and afterwards that may shed light on the obviousness or not of the claimed

17   invention, such as:

18         a.   Whether the invention was commercially successful as a result
              of the merits of the claimed invention (rather than the result of
19            design needs or market-pressure advertising or similar
              activities);
20

21         b.   Whether the invention satisfied a long-felt need;

22         c.   Whether others had tried and failed to make the invention;

23         d.   Whether others invented the invention at roughly the same time;

24         e.   Whether others copied the invention;

25         f.   Whether there were changes or related technologies or market
              needs contemporaneous with the invention;

26         g.   Whether the invention achieved unexpected results;

27         h.   Whether others in the field praised the invention;

28

i.  Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j.  Whether others sought or obtained rights to the patent from the patent holder; and

k.  Whether the inventor proceeded contrary to accepted wisdom in the field.

When a party attacking the validity of a patent relies on prior art which was specifically considered by the Examiner during the prosecution of the application leading to the issuance of the patent, that party bears the burden of overcoming the deference due a qualified government agency official presumed to have performed his or her job.

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS NO. B.4.3c (Feb. 18, 2010) (modified); MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA NO. B.4.3bii – Alternative 2 (Nov. 29, 2007) (modified); MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA NO. B.4.3b – Alternative 2 (Nov. 29, 2007); *A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).

129

**DISPUTED JURY INSTRUCTION NO. 43**
**INVALIDITY – OBVIOUSNESS**
**OFFERED BY GOOGLE**

Not all innovations are patentable. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed [as of [insert date]]. The court, however, is charged with the responsibility of making the determination as to whether a patent claim was obvious based upon your determination of several factual questions. First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. Second, you must decide the scope and content of the prior art. Third, you must decide what difference, if any, existed between the claimed invention and the prior art. Finally, you must determine which, if any, of the following factors have been established by the evidence:

> (1) commercial success of a product due to the merits of the claimed invention;

> (2) a long felt need for the solution provided by the claimed invention;

> (3) unsuccessful attempts by others to find the solution provided by the claimed invention;

> (4) copying of the claimed invention by others;

> (5) unexpected and superior results from the claimed invention;

> (6) acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

> (7) other evidence tending to show nonobviousness;

> (8) independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

> (9) other evidence tending to show obviousness.

***Source***

N.D. Cal. Model Patent Jury Instr. B.4.3b.

pa-1492148

1
2

**STIPULATED JURY INSTRUCTION NO. 44**
**PATENT – INVALIDITY – DIFFERENCES OVER PRIOR ART**

3          In reaching your conclusion as to whether or not a claim [] would have been obvious at

4    the time the claimed invention was made, you should consider any difference or differences

5    between the [identify prior art reference(s)]references and the claimed requirements.

6
7    AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA
     No. B.4.3bii (Nov. 29, 2007) (modified).

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED JURY INSTRUCTION NO. 45**
**PATENT – INVALIDITY – LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the particular field of [for each invention] is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. 4.3c(i) (Feb. 18, 2010) (modified) (citing *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000).  For authority on the standards for determining the scope and content of prior art, *see, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007); *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1379-80 (Fed. Cir. 2007); *Princeton Biochems., Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1339 (Fed. Cir. 2005)); MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No. B.4.3biii (Nov. 29, 2007).

**DISPUTED JURY INSTRUCTION NO. 46**
**EQUITABLE DEFENSE – LACHES**
**OFFERED BY ORACLE**

[Alleged infringer] contends that [patent holder]Oracle contends that it is not necessary to provide a jury instruction on laches here, as Google has not articulated facts sufficient to support this defense.  If the Court offers such an instruction, Oracle offers its proposed instruction below and asks that the actual instruction be further tailored to what proof Google purports to offer at trial in support of this defense.]

In response to Oracle's clams for copyright infringement of the Java-related works and patent infringement of the six Oracle Patents, Google asserts the defense of laches.

Google contends that Oracle is not entitled to recover damages for acts that occurred before it filed a lawsuit because: (1) [patent holder] delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) [alleged infringer] has been or will be prejudiced in a significant way due to [patent holder]'s delay in filing the lawsuita) Oracle's delay in filing the lawsuit was unreasonable and inexcusable, and (b) Google has suffered material prejudice due to Oracle's delay.  This is referred to as laches. [Alleged infringer] Google must prove delay and prejudice by a preponderance of the evidence.  If you find that Google's infringement was willful, then the defense of laches is not available to Google.

Whether [patent holder]Oracle's and/or Sun's delay in filing suit is measured from the time Oracle and/or Sun discovered, or should have discovered, that Google was infringing Oracle's patents .  Whether Oracle's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches.  If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. This presumption shifts the burden of proof to [patent holder] to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if [patent holder] presents such evidence, the burden of proving laches remains with [alleged infringer]. Laches may be found for delays of less than six years if there is proof of unreasonably

long and unjustifiable delay causing material prejudice to [alleged infringer] Google.  Facts and

circumstances that can justify a long delay can include:

> (1)  being involved in other litigation during the period of delay;

> (2)  being involved in negotiations with [alleged infringer] Google during the period of
> delay;

> (3) poverty or illness during the period of delay; (4) wartime conditions during the period of
> delay; (5)  being involved in a dispute about ownership of the patent during the period
> of delay; or

> (64)    minimal amounts of allegedly infringing activity by [alleged infringer] Google
> during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also

determine if [alleged infringer] Google suffered material prejudice as a result of the delay.

Prejudice to [alleged infringer] Google can be evidentiary or economic.  Whether [alleged

infringer] Google suffered evidentiary prejudice is a question that must be answered by evaluating

whether delay in filing this case resulted in [alleged infringer] Google not being able to present a

full and fair defense on the merits to [patent holder] Oracle's infringement claim.  Not being able

to present a full and fair defense on the merits to an infringement claim can occur due to the loss

of important records, the death or impairment of an important witness(es), the unreliability of

memories about important events because they occurred in the distant past, or other similar types

of things.  Economic prejudice is determined by whether or not [alleged infringer] Google changed

its economic position in a significant way during the period of delay resulting in losses beyond

merely paying for infringement (such as if [alleged infringer] Google could have switched to a

noninfringing product if sued earlier), and also whether [alleged infringer] Google's losses as a

result of that change in economic position likely would have been avoided if [patent holder] Oracle

had filed this lawsuit sooner.

In all scenarios though, the ultimate determination of whether laches should apply in this

case is a question of fairness, given all the facts and circumstances.  Thus, you may find that

laches does not apply if there is no evidence establishing each of the three elements noted above

(unreasonable delay, lack of excuse or justification, and significant prejudice).  You may also find

134

1    that even though all of the elements of laches have been proved, it should not, in fairness, apply,

2    given all the facts and circumstances in this case.

3

4    AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.5.2
     (Feb. 18, 2010) (modified) (citing 35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
5    60 F.3d 770, 773-74 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d
     1020, 1039 (Fed. Cir. 1992) (en banc)); *Winn v. Opryland Music Group, Inc.*, 22 Fed. Appx. 728,
6    729 (9th Cir. Cal. 2001) ("[L]aches is not available in a case of willful infringement, when the
     infringing conduct occurs 'with knowledge that the defendant's conduct constitutes copyright
7    infringement.") (internal citations omitted); *A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*,
     960 F.2d 1020, 1032 (Fed. Cir. 1992). ([T]he plaintiff  delayed filing suit for an unreasonable and
8    inexcusable length of time from the time the plaintiff knew or reasonably should have known of
     its claim against the defendant.").

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DISPUTED JURY INSTRUCTION NO. 46**
**EQUITABLE DEFENSE – LACHES**

2

**OFFERED BY GOOGLE**

3         Google contends that Oracle is not entitled to recover damages for acts that occurred

4    before it filed a lawsuit because: (1) Sun and/or Oracle delayed filing the lawsuit for an

5    unreasonably long and inexcusable period of time, and (2) Google has been or will be prejudiced

6    in a significant way due to Sun and/or Oracle's delay in filing the lawsuit. This is referred to as

7    laches.  Google must prove delay and prejudice by a preponderance of the evidence.

8         Whether Sun and/or Oracle's delay was unreasonably long and unjustified is a question

9    that must be answered by considering the facts and circumstances as they existed during the

10   period of delay. There is no minimum amount of delay required to establish laches. If a patent

11   infringement suit was delayed for six years, a rebuttable presumption arises that the delay was

12   unreasonable and unjustified, and that material prejudice resulted. For an assertion of copyright

13   infringement, the presumption arises after three years. This presumption shifts the burden of proof

14   to Oracle to come forward with evidence to prove that the delay was justified or that material

15   prejudice did not result, and if Oracle presents such evidence, the burden of proving laches

16   remains with Google. Laches may be found for delays of less than six years for patent actions and

17   less than three years for copyright actions if there is proof of unreasonably long and unjustifiable

18   delay causing material prejudice to Google.

19        Facts and circumstances that can justify a long delay can include:

20        (1) being involved in other litigation during the period of delay, provided that the other

21   litigation involved the same patents and that adequate notice of those proceedings was given to

22   Google.  Notice is adequate if it informed Google of the other proceedings and of Oracle's/Sun's

23   intention to enforce its patents upon completion of those proceedings;

24        (2) being involved in negotiations with Google during the period of delay, provided that

25   Oracle/Sun did not unreasonably delay filing of the lawsuit after negotiations ended;

26        (3) poverty or illness during the period of delay;

27        (4) wartime conditions during the period of delay;

28

(5) being involved in a dispute about ownership of the patent during the period of delay; or

(6) minimal amounts of allegedly infringing activity by Google during the period of delay. Delay is *not* permissible when its purpose is to determine whether the infringing conduct will be profitable.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if Google suffered material prejudice as a result of the delay. Prejudice to Google can be evidentiary or economic. Whether Google suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in Google not being able to present a full and fair defense on the merits to Oracle's infringement claims. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Economic prejudice is determined by whether or not Google changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if Google could have switched to a noninfringing product if sued earlier), and also whether Google's losses as a result of that change in economic position likely would have been avoided if Oracle/Sun had filed this lawsuit sooner. In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice). You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.

### ***Sources***

Fed. Cir. Bar Ass'n Model Jury Instr. 5.2 (Rev. 2/18/2010) (modified); *see Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001); *Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D.N.Y. 1916); 17 U.S.C. § 507(b); *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1572-73 (Fed. Cir. 1987); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155 1162-63 (6th

1  Cir. 1980); *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1552-53 (Fed. Cir.
   1988); *American Home Prods. Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1123 (6th Cir. 1973);
2  *General Elec. Co. v. Sciaky Bros., Inc.*, 304 F.2d 724, 727 (6th Cir. 1962); *Baker Mfg. Co. v.
   Whitewater Mfg. Co.*, 430 F.2d 1008, 1013-14 (7th Cir. 1970); *Whitman v. Walt Disney Prods.,
3  Inc.*, 263 F.2d 229, 231 (9th Cir. 1958).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

138

**DISPUTED JURY INSTRUCTION NO. 47**
**EQUITABLE DEFENSE – EQUITABLE ESTOPPEL**
**OFFERED BY ORACLE**

[Oracle contends that it is not necessary to provide a jury instruction on equitable estoppel here, as Google has not articulated facts sufficient to support this defense.  If the Court offers such an instruction, Oracle offers its proposed instruction below and asks that the actual instruction be further tailored to what proof Google purports to offer at trial in support of this defense.]

In response to Oracle's clams for copyright infringement of the Java-related works and patent infringement of the six Oracle Patents, Google asserts the defense of equitable estoppel.

~~The owner of a patent may forfeit its right to any~~ With regard to relief from ~~an infringer where~~ copyright infringement, the defense of equitable estoppel has four elements:

(1) ~~the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the infringer relies upon the misleading communication from the patent holder, and (3) the~~___   The copyright holder must know the facts of the defendant's infringing conduct;

(2) The copyright holder must intend that its conduct shall be acted on or must act so that the party asserting the estoppel has a right to believe this is what the copyright holder intended;

(3) The infringer must be ignorant of the true facts; and

(4) The infringer must rely on the copyright holder's conduct to his injury.

With regard to relief from patent infringement, equitable estoppel has three elements:

(1) The patent owner, through misleading conduct, led the alleged infringer to reasonably infer that the patent owner did not intend to enforce its patent against the alleged infringer;

(2) The alleged infringer relied on this conduct; and

(3) Due to the reliance, the alleged infringer will be materially ~~harmed~~prejudiced if the patent ~~holder~~owner is allowed to ~~assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication. This is referred to as an "equitable estoppel" and it is a defense that [alleged infringer] contends precludes any recovery by [patent holder] in this lawsuit. [Alleged infringer] must prove each of these~~proceed on its claim.

"Conduct" may include specific statements, action, inaction, or silence when there was an obligation to speak. A suggestion of infringement, coupled with an offer to license followed by

1  silence is insufficient to establish equitable estoppel.  You may not presume misleading conduct

2  from the passage of time.

3      To establish equitable estoppel for either copyright or patent infringement, Google must

4  prove each of the required elements by a preponderance of the evidence, but. But even if all these

5  elements are proven, equitable estoppel need not be found if such a finding would be unfair in

6  light of the conduct of the parties.  Furthermore, equitable estoppel does not erase Google's duty

7  of due care and is not applicable if the harm Google will suffer is the result of its own failure to

8  act or inquire about Oracle's copyrights or patents.

9      [Alleged infringer] contends that [patent holder] made a misleading communication about [ ]

10  before [patent holder] filed this lawsuit. A communication may be made through written or spoken

11  words, conduct, silence, or a combination of words, conduct, and silence. Conduct may include action

12  or inaction. Whether in fact [patent holder]Whether in fact Oracle or Sun communicated with

13  [alleged infringer] about [ ]Google about having no intention of enforcing the six Oracle Patents or

14  the Java-related copyrights prior to the filing of this lawsuit, and whether in fact that

15  communication, if you find there to have been any, was misleading, are questions that must be

16  answered by considering the facts and circumstances as they existed at the time.

17      Material harm to [alleged infringer]Google can be evidentiary or economic in form.

18  Whether [alleged infringer] suffered evidentiary harm is a question that must be answered by

19  evaluating whether [alleged infringer] will be unable to present a full and fair defense on the

20  merits of [patent holder]'s claim(s). Not being able to present a full and fair defense on the merits

21  of [patent holder]'s claim(s) can occur due to the loss of important records, the death or

22  impairment of an important witness(es), the unreliability of memories about important events

23  because they occurred in the distant past, or other similar types of things. Whether [alleged

24  infringer] Whether Google suffered economic prejudice is a question that must be answered by

25  evaluating whether [alleged infringer]Google changed its economic position as a result of its

26  reliance on any misleading communication from [patent holder] about [ ]Oracle or Sun about

27  whether it intended to enforce the six Oracle Patents or the Java-related copyrights, resulting in

28  losses beyond merely paying for infringement (such as if [alleged infringer]Google could have

140

1   switched to a noninfringing product if sued earlier) and whether losses as a result of any change

2   in economic position could have been avoided.

3

4   AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.5.3
    (Feb. 18, 2010) (modified) (citing 35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,

5   60 F.3d 770, 776-777 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d
    1020 (Fed. Cir. 1992) (en banc)); *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294-

6   95 & n.5 (Fed. Cir. 1992); *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.
    1960); *Netbula, LLC v. Chordiant Software, Inc.*, No. C-08-00019 JW, 2009 U.S. Dist. LEXIS

7   58690 (N.D. Cal. July 9, 2009); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776
    (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir.

8   1992); *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1294-95 & n.5 (Fed. Cir.
    1992); *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) ("The doctrine

9   of equitable estoppel does not erase the duty of due care and is not available for the protection of
    one who has suffered loss solely by reason of his own failure to act or inquire.").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 47**
**EQUITABLE DEFENSE – EQUITABLE ESTOPPEL**
**OFFERED BY GOOGLE**

Even if you find Google liable for infringing any of the patents or copyrights Oracle asserts in this case, it is possible that one or more of the other defenses Google has asserted may bar Oracle from some or all of the relief it seeks.

The owner of a patent may forfeit its right to any relief from an infringer where: (1) the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the infringer relies upon the misleading communication from the patent holder, and (3) the infringer will be materially harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with Oracle's/Sun's prior misleading communication. This is referred to as an "equitable estoppel" and it is a defense that Google contends precludes any recovery by Oracle in this lawsuit.  Google must prove each of these elements by a preponderance of the evidence, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

Similarly, Google also contends that equitable estoppel applies to Oracle's copyright infringement claims.  In the copyright context, the owner of a copyright may forfeit its right to any relief from an infringer where: (1) the copyright holder knows of the infringement, (2) the copyright holder intends that its conduct or communication will be acted on, or acts so that the infringer has a right to believe the copyright holder intends its conduct or communication to be acted on, (3) the infringer must be ignorant of the true facts, and (4) the infringer must rely on the copyright holder's conduct or communication to the infringer's injury or material harm.

Google contends that Sun and/or Oracle made one or more a misleading communications about its intent to use its patents and copyrights only defensively, or about the product or conduct that Oracle now claims infringes the patents or copyrights at issue before Oracle filed this lawsuit. A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence. Conduct may include action or inaction. Whether in fact Sun and/or Oracle communicated with Google about its intent to use its patents and

142

1   copyrights only defensively, or Google's making, using or selling of products that Oracle now

2   claims infringe the patents or copyrights at issue prior to the filing of this lawsuit, and whether in

3   fact that communication, if you find there to have been any, was misleading, intended to cause

4   Google to act, or gave Google a right to believe that Sun and/or Oracle intended the

5   communication to be acted on, are questions that must be answered by considering the facts and

6   circumstances as they existed at the time.

7          Material harm to Google can be evidentiary or economic in form. Whether Google

8   suffered evidentiary harm is a question that must be answered by evaluating whether Google will

9   be unable to present a full and fair defense on the merits of Oracle's claims. Not being able to

10  present a full and fair defense on the merits of Oracle's claims can occur due to the loss of

11  important records, the death or impairment of an important witness(es), the unreliability of

12  memories about important events because they occurred in the distant past, or other similar types

13  of things.  Whether Google suffered economic prejudice is a question that must be answered by

14  evaluating whether Google changed its economic position as a result of its reliance on any

15  misleading communication from Sun and/or Oracle about [], resulting in losses beyond merely

16  paying for infringement (such as if Google could have switched to a noninfringing product if sued

17  earlier) and whether losses as a result of any change in economic position could have been

18  avoided.

19

20  ***Sources***

21  Fed. Cir. Bar Ass'n Model Jury Instr. 5.3 (Rev. 2/18/2010) (modified); *see Hampton v.*

22  *Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).

23

24

25

26

27

28

143

1

2

**DISPUTED JURY INSTRUCTION NO. 48**
**EQUITABLE DEFENSE – WAIVER**
**OFFERED BY ORACLE**

3

[Oracle contends that it is not necessary to provide a jury instruction on waiver here, as

4

Google has not articulated facts sufficient to support this defense.  If the Court offers such an

5

instruction, Oracle offers its proposed instruction below and asks that the actual instruction be

6

further tailored to what proof Google purports to offer at trial in support of this defense.]

7

In response to Oracle's clams for copyright infringement of the Java-related works and

8

patent infringement of the six Oracle Patents, Google asserts the defense of waiver.  Waiver is the

9

intentional relinquishment of a known right with knowledge of its existence and the intent to

10

relinquish it.  Waiver exists where there is unequivocal intent to knowingly and intentionally

11

waive one's rights to claim infringement of one's intellectual property.

12

In order to prove that Oracle waived its rights to protect its patents, Google must show by

13

clear and convincing evidence that Oracle, with full knowledge of the material facts, intentionally

14

relinquished its rights to enforce the '104, '520, '205, '702, '720, and '476 patents.

15

In order to prove that Oracle waived its rights to protect its copyrights, Google must show

16

by a preponderance of the evidence that Oracle, with full knowledge of the material facts,

17

intentionally relinquished its rights to enforce the copyrights protecting the 37 API design

18

specifications and 12 code files.

19

20

21

AUTHORITY:  *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988);
*Qualcomm v. Broadcom*, 548 F.3d 1004, 1020 (Fed. Cir. 2008); *Novell, Inc. v. Weird Stuff, Inc.*,
No. C92-20467 JW/EAI, 1993 U.S. Dist. LEXIS 6674, at *54 (N.D. Cal. May 14, 1993);
*Qualcomm v. Broadcom*, 548 F.3d 1004, 1020 (Fed. Cir. 2008).

22

23

24

25

26

27

28

144

**DISPUTED JURY INSTRUCTION NO. 48**
**EQUITABLE DEFENSE – WAIVER**
**OFFERED BY GOOGLE**

Google contends that Sun and/or Oracle waived its rights to enforce the patents and copyrights at issue.  In order to prove the defense of waiver for patent, Google must show by clear and convincing evidence either that either that (1) Sun and/or Oracle, with full knowledge of the material facts, intentionally relinquished its rights to enforce the patents, or (2) that Sun and/or Oracle acted inconsistently with an intent to enforce the patents at issue and that a reasonable person would have believed that Oracle/Sun did not intend to enforce the patents at issue against Google.

In order to prove waiver of its rights to protect its copyrights, Google must show by a preponderance of the evidence that Oracle, with full knowledge of the material facts, intentionally relinquished its rights to enforce the copyrights it asserts.

A waiver may be expressed, based on the words of the waiving party, or implied, based on conduct so inconsistent with the intent to force a right as to induce a reasonable belief that such right has been relinquished.  Waiver does not require any act or conduct by the other party.

***Sources***

*Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019-1021 (Fed. Cir. 2008); *United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988).

145

1

2

**DISPUTED JURY INSTRUCTION NO. 49**
**EQUITABLE DEFENSE – IMPLIED LICENSE**
**OFFERED BY ORACLE**

3

4

5

6

7

[Oracle contends that it is not necessary to provide a jury instruction on implied license here, as Google has not articulated facts sufficient to support this defense.  If the Court offers such an instruction, Oracle offers its proposed instruction below and asks that the actual instruction be further tailored to what proof Google purports to offer at trial in support of this defense.]

8

Google asserts that Oracle gave it an implied license to use its patents and copyrights.

9

10

11

12

13

A party who has the right to exclude others from making, using, or selling what is claimed under a patent, may agree to let another do one or more of those acts. Similarly, a party who has the right to exclude others from copying, modifying or distributing a copyrighted work may agree to let another do one or more of those acts.  This is called a license, and the person allowed to do the set of acts is a licensee.

14

15

16

17

18

19

20

21

22

An implied license is a form of contract that is implied from the facts of the conduct of the parties. In order to prove the defense of implied license, Google must establish by a preponderance of the evidence that the entire course of conduct between Oracle and/or Sun and Google over the relevant time period led Google reasonably to infer consent by Oracle and/or Sun to Google's making, using, or selling products that Oracle now claims infringe the six Oracle Patents and the Java-related copyrights at issue.  However, to prove that there was an implied license, more than just misleading conduct is required.  Oracle and/or Sun must have made an affirmative grant of permission to Google to use the six Oracle Patents or the Java-related copyrighted works.

23

24

25

26

AUTHORITY:  *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.,* 103 F.3d 1571, 1576, 1581-82 (Fed. Cir. 1997), *cert. denied,* 522 U.S. 818 (1997); *Effects Assocs. v. Cohen,* 908 F.2d 555, 558 (9th Cir. 1990); *McCoy v. Mitsuboshi Cutlery,* 67 F.3d 917, 920 (Fed. Cir. 1995) ("In some circumstances, however, the entire course of conduct between a patent or trademark owner and an accused infringer may create an implied license."); *Glass Equip. Dev., Inc. v. Besten, Inc.,* 174 F.3d 1337, 1342 (Fed. Cir. 1999).

27

28

146

**DISPUTED JURY INSTRUCTION NO. 49**
**EQUITABLE DEFENSE – IMPLIED LICENSE**
**OFFERED BY GOOGLE**

A party who has the right to exclude others from making, using, or selling what is claimed under a patent, may agree to let another do one or more of those acts.  Similarly, a party who has the right to exclude others from copying, modifying or distributing a copyrighted work may agree to let another do one or more of those acts.  This is called a license, and the person allowed to do the set of acts is a licensee.

An implied license is a form of contract that is implied from the facts of the conduct of the parties. In order to prove the defense of implied license, Google must establish by a preponderance of the evidence that the entire course of conduct between Sun and/or Oracle and Google over the relevant time period led Google reasonably to infer consent by Sun and/or Oracle to Google's making, using, or selling products that Oracle now claims infringe the patents at issue.  The conduct that grants the license may include acts of acquiescence or acts of misrepresentation by Sun and/or Oracle.  The license may alternately be granted orally, or even implied from the conduct of a licensing party.

If you find that a right to make, use, or sell the inventions under the patents, or a right to copy, modify, or distribute the copyrighted works, was granted to Google as a result of Sun and/or Oracle's statements or conduct, then you should find an implied license for the patents and/or copyrights was granted to Google by Sun and/or Oracle.

***Sources***

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.,* 103 F.3d 1571, 1576, 1581-82 (Fed. Cir. 1997), *cert. denied,* 522 U.S. 818 (1997); *Effects Assocs. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990); *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927).

pa-1492148

1

2

**STIPULATED JURY INSTRUCTION NO. 50**
**DAMAGES – INTRODUCTION**

3

4

    I will instruct you about the measure of damages.  I will provide you with separate

instructions for Oracle's copyright claim and for Oracle's patent claims.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED JURY INSTRUCTION NO. 51**
**COPYRIGHT – DAMAGES**

~~If you find for the plaintiff on the plaintiff's~~[*Having found for Oracle*] [*If you found in favor of Oracle*] on its copyright infringement claim, you must determine ~~the plaintiff~~Oracle's damages. ~~The plaintiff~~ Oracle is entitled to recover the actual damages suffered as a result of the infringement.  In addition, ~~the plaintiff~~Oracle is also entitled to recover any profits of ~~the defendant~~Google attributable to the infringement to the extent you did not account for those profits in determining actual damages. ~~The plaintiff~~ Oracle must prove damages by a preponderance of the evidence.

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.22 (2007) (modified).

149

**DISPUTED JURY INSTRUCTION NO. 52**
**COPYRIGHT – ACTUAL DAMAGES**
**OFFERED BY ORACLE**

~~The copyright owner~~Oracle is entitled to recover the actual damages suffered as a result of the infringement.  Actual damages means the amount of money adequate to compensate ~~the copyright owner~~Oracle for the reduction of the fair market value of the copyrighted ~~work~~works caused by the infringement.  The reduction of the fair market value of the copyrighted ~~work is~~works can be measured either of two ways.  It can be measured as the amount Google, as a willing buyer would have been reasonably required to pay Oracle, as a willing seller, at the time of the infringement for the actual use made by ~~the defendant~~Google of ~~the plaintiff's work. That amount~~Oracle's works.  It can also ~~could~~ be ~~represented~~measured by ~~the lost license fees the plaintiff~~Oracle's lost profits, which is the amount of profits Oracle would have ~~received for the defendant~~earned absent Google's unauthorized use of ~~the plaintiff~~Oracle's ~~work~~works.

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.23 (2007) (modified); 17 U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004).

**DISPUTED JURY INSTRUCTION NO. 52**
**COPYRIGHT –DAMAGES – ACTUAL DAMAGES**
**OFFERED BY GOOGLE**

The copyright owner is entitled to recover the actual damages suffered as a result of the infringement.  Actual damages means the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement.  The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work.  That amount also could be represented by the lost license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's work., which is the amount of profits the plaintiff would have earned absent the defendant's unauthorized use of the plaintiff's work.

To collect actual damages, Oracle must establish with reasonable probability that the infringement caused it to lose revenue, and the amount of that lost revenue.  You may not make an award of actual damages that is unduly speculative.  If you conclude that Oracle would have incurred increased expenses related to its damages, such as increased overhead costs, you must deduct those expenses when calculating Oracle's actual damages.

*SOURCES:*
NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.23 (2007) (modified); 17
U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004);
*Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir. 1983)

151

**DISPUTED JURY INSTRUCTION NO. 53**
**COPYRIGHT – DAMAGES – HYPOTHETICAL NEGOTIATION**
**OFFERED BY ORACLE**

The copyright owner is entitled to recover the actual damages suffered as a result of the infringement. Actual damages means the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work. That amount also could be represented by the lost license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's work.

In considering the amount that Google, as a willing buyer, would have been reasonably required to pay Oracle, as a willing seller, to license the Java-related works, you should focus on what the expectations of Oracle and Google would have been had they entered into an agreement at the time of the infringement and acted reasonably in their negotiations.

You must assume that both parties believed the Java-related works were valid and infringed.  In addition, you must assume that Oracle and Google were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation for the actual use made by Google of Oracle's Java-related works and not simply what either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringement began.  That evidence can be considered only to the extent that it sheds light on what the negotiators might have agreed to at the time the infringement began.  You may not limit or increase the royalty based on the actual profits Google made.

There are fifteen non-exclusive factors that you may consider in calculating damages for both copyright and damages, and I will go through those fifteen factors with you in connection with the patent damages instructions.

AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.23 (2007) (modified); MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No. B.5.7 (Nov. 29, 2007) (modified); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004).

pa-1492148

**DISPUTED JURY INSTRUCTION NO. 53**
**COPYRIGHT – DAMAGES –**
**ACTUAL DAMAGES DUE TO LOST LICENSE FEE**
**OFFERED BY GOOGLE**

As discussed above, Oracle's "actual damages" for alleged copyright infringement may be calculated by the amount of the lost license fee Oracle would have received for Google's unauthorized use of Oracle's work. A lost license fee potentially may be awarded as Oracle's lost revenue, but not as wrongful profits, and only if the fair market value may be proven by objective evidence.

To recover a lost license fee, Oracle is required to show that the parties would have agreed to license the use of the copyrighted works at issue. Oracle must prove by a preponderance of the evidence the fair market value of the license it would have received for the actual use of the work. The fair market value of the license is the amount that a willing buyer and willing seller would have agreed for the use of the works at issue at the time of the alleged infringement. The fair market value must be based on objective measurements, such as evidence of other Oracle licenses for similar use of the work and benchmark licenses for comparable uses of comparable works, and not subjective concerns by Oracle such as what it thought it should have obtained or what it wished to obtain. The fair market value cannot be based on evidence of things that happened after the infringement began. The license fee also cannot be unduly speculative.

The circumstances under which a retroactive copyright license may be awarded under copyright law to compensate a copyright owner for lost revenue are different than the factors for determining a "reasonable royalty" under patent law. As a result, you must apply this instruction when evaluating damages for copyright and not the "reasonable royalty" instruction for patent infringement.

***Sources:***
*On Davis v. Gap, Inc.,* 246 F.3d 152, 164 (2d. Cir. 2001); *Polar Bear Prods. Inc. v. Timex Corp.,* 384 F.3d 700, 709-10, 714 (9th Cir. 2004); *Oracle USA, Inc. v. SAP AG,* No. C 07-1658 PJH, 2011 WL 3862074 (N.D. Cal. Sept. 1, 2011); *Mattel, Inc. v. MGA Entertainment, Inc.,* No. CV 04-9049 DOC, 2011 WL 836418 (C.D. Cal. Mar. 4, 2011).

153

pa-1492148

**DISPUTED JURY INSTRUCTION NO. 54**
**COPYRIGHT – DAMAGES – DEFENDANTS' PROFITS**
**OFFERED BY ORACLE**

In addition to actual damages, ~~the copyright owner~~Oracle is entitled to any profits of ~~the defendant~~Google attributable to the copyright infringement.  You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of ~~the defendant~~Google's profits only if you find that ~~the plaintiff~~Oracle showed a causal [relationship] [nexus] between the copyright infringement and ~~the [profits generated indirectly from the infringement] [defendant's gross revenue]. The defendant~~Google's gross revenue.  You need not find Google earned a net profit from its infringement to make an award of Google's profits; losses that Google avoided because of its infringement are considered profits for this purpose.

Google's profit is determined by [deducting] [subtracting] all certain expenses from ~~the defendant~~Google's gross revenue. ~~The defendant~~

Google's gross revenue is all of ~~the defendant~~Google's receipts from the [use] [ or sale] of a [[product] [work]] [[products containing or using the copyrighted work] [associated with the. This includes advertising or other revenues with a causal relationship to Google's copyright infringement]]. ~~The plaintiff~~ Oracle has the burden of proving ~~the defendant~~Google's gross revenue by a preponderance of the evidence.

Expenses are all [operating costs] [, overhead costs] [, and] production costs that were incurred by Google and of actual assistance in producing the ~~defendant's gross revenue. The defendant~~gross revenue.  However, if you determine that Google's infringement of Oracle's copyrights was willful, you should not deduct any of Google's overhead expenses from its gross revenue.  Google has the burden of proving ~~the defendant~~Google's expenses by a preponderance of the evidence. ~~Unless~~

All of the profit is to be attributed to the infringement unless you find that a portion of the profit from the [use] [sale] of a [product] [work] containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, ~~all of the profit is to be attributed to~~

154

1   the infringement. The defendant. Google has the burden of proving the [portion] [percentage] of

2   the profit, if any, attributable to factors other than [copying] [infringing] the copyrighted work.

3       If you find that Google committed an act of copyright infringement in the United States,

4   Oracle is entitled to recover all of Google's profits attributable to that act of infringement,

5   including profits Google earned because its infringement resulted in further copying by others,

6   regardless of where that further copying occurred.

7

8   AUTHORITY:  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.24 (2007)
    (modified); 17 U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th
9   Cir. 2004); *L.A. News Serv. v. Reuters Tv Int'l*, 149 F.3d 987, 990-91 (9th Cir. 1998); *L.A. News
    Serv. v. Reuters Tv Int'l*, 340 F.3d 926 (9th Cir. 2003); *Kamar Int'l, Inc. v. Russ Berrie & Co.*,
10  752 F.2d 1326, 1332 (9th Cir.1984); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992);
    *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir. 1939); *see also Rundquist v.
11  Vapiano*, No. 09-2207 (BAH), 2011 U.S. Dist. LEXIS 78781, at *53-54 (D.D.C. July 20, 2011);
    *Roeslin* v. District of Columbia, 921 F. Supp. 793, 799 (D.D.C. 1995).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 54**
**COPYRIGHT – DAMAGES – DEFENDANTS' PROFITS**
**ATTRIBUTABLE TO COPYRIGHT INFRINGEMENT**
**OFFERED BY GOOGLE**

~~In~~If you conclude that Google infringed Oracle's copyrights, in addition to actual damages, ~~the copyright owner~~Oracle is entitled to any of Google's profits ~~of the defendant~~ attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of ~~the defendant~~Google's profits attributable to infringement only if you find that ~~the plaintiff~~Oracle showed a causal ~~[relationship]~~ [nexus] between the infringement and ~~the [profits generated indirectly from the infringement] [defendant~~Google's gross revenue~~].~~

~~The defendant.~~

Google's profit is determined by ~~[deducting] [subtracting] all~~starting with the gross revenue that Oracle has proved has a causal relationship with the infringement, and then subtracting the expenses ~~from the defendant's gross~~incurred in producing that revenue.

~~The defendant~~

Google's gross revenue is all of ~~the defendant's~~its receipts from the ~~[use]~~ [ or sale] of a ~~[[product] [work]] [[~~products containing ~~or using~~ the copyrighted work~~] [associated with the infringement]].~~ The plaintiff.  Oracle has the burden of proving ~~the defendant~~Google's gross revenue by a preponderance of the evidence.

~~Expenses~~

The expenses to be subtracted from that gross revenue are all ~~[~~operating costs~~][,~~ overhead costs~~][,~~ and~~]~~ production costs incurred in producing ~~the defendant's gross revenue. The~~

156

1   ~~defendant~~it.  Google has the burden of proving ~~the defendant's~~its expenses by a preponderance of

2   the evidence.

3

4   ~~Unless you find that a portion of the profit from the [use] [sale] of a [product] [work] containing~~

5   ~~or using the copyrighted work is attributable to factors other than use of the copyrighted work, all~~

6   ~~of the profit is to be attributed to the infringement. The defendant~~

7        Google has the burden of proving ~~the [portion] [percentage]~~by a preponderance of the

8   evidence the portion of the profit, if any, attributable to factors other than ~~[copying] [infringing]~~

9   ~~the copyrighted work~~infringing the copyrighted work.  To the extent that Google proves that

10   some of its profits are attributable to factors other than infringing the copyrighted work, you

11   should subtract those profits.  If it is clear that not all of the profits are attributable to the

12   infringing material, Google is not required to establish with certainty the portion attributable to

13   the non-infringing elements. If the evidence suggests some division that may rationally be used to

14   decide what portion of the profits are due to factors other than infringement, it is your duty to do

15   so.

16

17   *SOURCES:*

18        NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.24; 17 U.S.C. §

19   504;   *Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826, 829 (9th Cir. 1985).

20

21

22

23

24

25

26

27

28

1

2

**DISPUTED JURY INSTRUCTION NO. 55**
**PATENT – DAMAGES – BURDEN OF PROOF**
**OFFERED BY ORACLE**

3        I will instruct you about the measure of damages on Oracle's patent claims. By

4   instructing you on damages, I am not suggesting which party should win on any issue.  If you find

5   that [alleged infringer]Google infringed any valid claim of the [ ] patentasserted patents, you must

6   then determine the amount of money damages to be awarded to [patent holder]Oracle to

7   compensate it for the infringement.

8        The amount of those damages must be adequate to compensate [patent holder]Oracle for

9   the infringement. A damages award should put the patent holder in approximately the financial

10  position it would have been in had the infringement not occurred, but in no event may the

11  damages award be less than a reasonable royalty for any patents you have found valid and

12  infringed. You should keep in mind that the damages you award are meant to compensate the

13  patent holder and not to punish anthe infringer.

14       [Patent holder]Oracle has the burden to persuade you of the amount of its damages.  You

15  should award only those damages that [patent holder]Oracle more likely than not suffered.  While

16  [patent holder]Oracle is not required to prove its damages with mathematical precision, it must

17  prove them with reasonable certainty. [Patent holder]Oracle is not entitled to damages that are

18  remote or speculative.

19

20  AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA
    NO. B.5.1 (Nov. 29, 2007).

21

22

23

24

25

26

27

28

158

**DISPUTED JURY INSTRUCTION NO. 55**
**PATENT – DAMAGES – BURDEN OF PROOF**
**OFFERED BY GOOGLE**

~~I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue.~~ [If you find that/Having found that] Google infringed certain valid claims of the Asserted patents, you must [then/now] determine the amount of money damages to be awarded to Oracle to compensate it for the infringement.

The amount of those damages must be adequate to compensate Oracle for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Oracle has the burden to persuade you of the amount of its damages. You should award only those damages that Oracle more likely than not suffered. While Oracle is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Oracle is not entitled to damages that are remote or speculative.

AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA No. B.5.1 (Nov. 29, 2007) (modified).

**DISPUTED JURY INSTRUCTION NO. 56**
**PATENT – DAMAGES – REASONABLE ROYALTY - DEFINITION**
**OFFERED BY ORACLE**

Oracle seeks damages in connection with its patent claim calculated as a reasonable royalty.

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the ~~claimed invention~~patented technology.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder, such as Oracle, and the infringer, such as Google, taking place at the time when the ~~infringing sales first~~alleged infringement began.

In considering the nature of this negotiation, ~~the~~you should focus ~~is~~on what the expectations of ~~the patent holder~~Oracle and ~~infringer~~Google would have been had they actually entered into an agreement at that time of first infringement and acted reasonably in their negotiations. ~~However, you~~ You must assume that both parties believed the ~~patent was~~patents were valid and infringed.  In addition, you must assume that ~~patent holder~~Oracle and ~~infringer~~Google were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation granting Google the right to make, use, and sell the patented inventions in the manner that it actually did, and not simply what either party would have preferred.

In this trial, you have heard evidence of things that happened after the ~~infringing sales first began.~~alleged infringement first began, including evidence of sales of devices incorporating Android and profits made by Google related to Android.  That evidence can be considered only to the extent that ~~[add appropriate limitations on consideration of later occurring events].~~it sheds light on what the parties would have anticipated at the time of the hypothetical negotiation.  You may not limit or increase the royalty based on the actual profits ~~[alleged infringer]~~Google made.

AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA NO. B.5.7 (Nov. 29, 2007) (modified).

160

**DISPUTED JURY INSTRUCTION NO. 56**
**PATENT – DAMAGES – REASONABLE ROYALTY - DEFINITION**
**OFFERED BY GOOGLE**

Oracle seeks damages in connection with its patent claim calculated as a reasonable royalty.

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention in the manner in which defendant made, used or sold it.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder, such as Oracle, and the infringer, such as Google, taking place at the time when the ~~infringing sales~~ alleged infringement ~~first~~ began.

In determining a reasonable royalty, you may not award damages based on Google's entire revenue from the accused products.  Instead, you may award damages based only on the revenue that is attributable to the use of the patented technology in infringing feature(s) of a product.  In addition, you may not award damages based on Google's revenue from products that you do not find to have infringed.

In considering the nature of this negotiation, you should focus on what the expectations of Oracle and Google would have been had they actually entered into an agreement at that time and acted reasonably in their negotiations.  ~~However,~~ You must assume that both parties believed the patents were valid and infringed.  In addition, you must assume that Oracle and Google were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.  The amount of the reasonable royalty should not exceed the profit that Google would have reasonably expected to realize by using the patented invention. Nor should the amount of the reasonable royalty exceed the incremental cost of a non-infringing substitute, if any, available at the time of the hypothetical negotiation.

In this trial, you have heard evidence of things that happened after the infringing sales first began, including evidence of sales of devices incorporating Android and profits made by Google related to Android.  That evidence can be considered only to the extent that evidence sheds light

1   on what the negotiators would have anticipated at the time of the hypothetical negotiation.  You

2   may not limit or increase the royalty based on the actual profits Google made.

3       AUTHORITY:  MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF

4   CALIFORNIA No. B.5.7 (Nov. 29, 2007) (modified); *Garretson v. Clark*, 111 U.S. 120, 121

5   (1884); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337-38 (Fed. Cir. 2009); *Imonex*

6   *Services, Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1380 (Fed. Cir.

7   2005); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-50 (Fed. Cir. 1995) (en banc); *Uniloc*

8   *USA, Inc. v. Microsoft Corp.*, 640 F. Supp. 2d 150, 185 (D.R.I. 2009); *Riles v. Shell Exploration*

9   *& Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002); *Grain Processing Corp. v. American Maize*

10  *Prods. Co.*, 185 F.3d 1341, 1348-51(Fed. Cir. 1999); *Hanson v. Alpine Valley Ski Area, Inc.*, 718

11  F.2d 1075, 1080-81 (Fed. Cir. 1983)..

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 57**
**PATENT – DAMAGES – REASONABLE ROYALTY – RELEVANT FACTORS**
**OFFERED BY ORACLE**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

~~(1)~~ 1. The royalties received by ~~the patentee~~Oracle for the licensing of the ~~patent~~patents-in-suit, proving or tending to prove an established royalty.

~~(2)~~ 2. The rates paid by ~~the licensee~~Google for the use of other patents comparable to the ~~patent~~patents-in-suit.

~~(3)~~ 3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

~~(4) The licensor~~4.      Oracle's established policy and marketing program to maintain ~~his or her~~its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

~~(5)~~ 5. The commercial relationship between ~~the licensor~~Oracle and ~~licensee~~Google, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

~~(6)~~ 6. The effect of selling the patented ~~specialty~~invention in promoting sales of other products of ~~the licensee~~Google, the existing value of the invention to ~~the licensor~~Oracle as a generator of sales of ~~his~~its nonpatented items, and the extent of such derivative or convoyed sales.

~~(7)~~ 7. The duration of the patent and the term of the license.

~~(8)~~ 8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

~~(9)~~ 9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

~~(10)~~ 10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by ~~the licensor~~Oracle, and the benefits to those who have used the invention.

~~(11)~~ 11. The extent to which ~~the infringer~~Google has made use of the invention and any evidence probative of the value of that use.

~~(12)~~ 12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

~~(13)~~ 13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

163

(14) 14. The opinion and testimony of qualified experts.

(15) 15. The amount that a licensor (such as ~~the patentee~~Oracle) and a licensee (such as ~~the infringer~~Google) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— — who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— — would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between ~~the patent holder~~Oracle and ~~the infringer~~Google taking place at a time prior to when the infringement began.

AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS NO. B.6.7 (Feb. 18, 2010) (modified).

1

**DISPUTED JURY INSTRUCTION NO. 57**
**PATENT – DAMAGES – REASONABLE ROYALTY – RELEVANT FACTORS**

2

**OFFERED BY GOOGLE**

3

*Google objects to an instruction regarding the Georgia-Pacific factors.*

4

*The factors are not a part of the Northern District of California Model Jury Instructions,*

5

*for good reason:  they have the potential to confuse and mislead.  The reasonable royalty*

6

*instruction, coupled with expert testimony on the Georgia-Pacific factors, suffices.*

7

*See* Defendant Google Inc.'s Memorandum in Support of its Disputed Jury Instructions.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**DISPUTED JURY INSTRUCTION NO. 58**
**PATENT – DAMAGES – EXTRATERRITORIAL ACTS**
**OFFERED BY ORACLE**

3

4

[Oracle contends that it is not necessary to provide an instruction on extraterritorial acts, as Google has not articulated facts sufficient to support this theory.]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED JURY INSTRUCTION NO. 58**
**PATENT – DAMAGES – EXTRATERRITORIAL ACTS**
**OFFERED BY GOOGLE**

The patent laws do not operate beyond the limits of the United States.  You may not find Google liable for, or award damages based on, any making, using, selling, or offering to sell the accused product in other countries.

***Sources***

*See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007); *Deepsouth Packing Co., Inc. v. Laitram Corp.*, 406 U.S. 518, 525 n.7, 527, 531 (1972); *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 650 (1915); *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 195-96 (1856); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1358, 1362-65 (Fed. Cir. 2009) (en banc).

pa-1492148

1
2

**DISPUTED JURY INSTRUCTION NO. 59**
**PATENT – DAMAGES – DATE OF COMMENCEMENT**
**OFFERED BY ORACLE**

3       In determining the amount of damages, you must determine when the damages began.

4    ~~Damages commence on the date that [alleged infringer] has both infringed and been notified of the~~

5    ~~alleged infringement of the [ ] patent [choose those that apply]:~~ For some patent claims, but not all,

6    damages may begin only once infringement had begun and Oracle had given Google notice of

7    infringement.  You should apply the following rules in determining when damages began:

8    ~~Alternative A: [Patent holder] and [alleged infringer] agree that date was [insert date].~~

9    ~~Alternative B: If you find that [patent holder] sells a product that includes the claimed invention, you~~

10   ~~must determine whether [patent holder] has "marked" that product with the patent number. "Marking"~~
     ~~is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially~~

11   ~~all of the products that include the patented invention. [Patent holder] has the burden of establishing~~
     ~~that it substantially complied with the marking requirement. This means [patent holder] must show~~

12   ~~that it marked substantially all of the products it made, offered for sale, or sold under the [ ] patent,~~
     ~~[and that [patent holder] made reasonable efforts to ensure that its licensees who made, offered for~~

13   ~~sale, or sold products under the [ ] patent marked the products].~~

14      1.  For the '205 patent, there is no notice requirement, and damages began on the date you
15         find Google began infringement.

16      2.  For any Java-related patent that did not cover a product sold by Sun or Oracle during
        the period of infringement by Google, there is no notice requirement, and damages

17         began on the date you find Google began infringement.  A product is covered by a
        patent only if it contains every requirement of a claim in that patent.

18      3.  Any Java-related patent where you find that Google infringes only method claims,
        there is no notice requirement, and damages began on the date you find Google began

19         infringement.  The "method claims" are

20           for the '104 patent - claims 15, 17, 27, and 39

21           for the '520 patent - claims 1, 4, and 8

22           for the '702 patent - claims 1 and 6 and

23           for the '720 patent - claims 10, 13, and 22.

24      For any Java-related patent that satisfies any one of the above three categories, damages

25   should be calculated as of the date you determine the infringement began.

26   ~~[If [patent holder] has not marked that product with the patent number, you must~~For any

27   Java-related patents that do not fit any of the three categories above, damages began on the later

28   of these two dates: (1) the date that you determine the infringement began or (2) the date that

pa-1492148

1   [alleged infringer] received Oracle gave actual notice of the [ ] patent and the specific product

2   alleged to infringe.] [ Actual notice means that [patent holder] Oracle communicated to [alleged

3   infringer] Google, or to Google's predecessor in interest, Android, Inc., a specific charge of

4   infringement of the [ ] patent by a specific accused product or device. The filing of the complaint

5   in this case qualified as actual notice, so the damages period begins no later than the date the

6   complaint was filed.] [However, [patent holder] claims to have provided actual notice prior to filing

7   of the complaint, on [date], when it [sent a letter to [alleged infringer]]. [Patent holder] Actual notice

8   may also be satisfied by an offer to license the patent.  Google admits that it received actual

9   notice of all the Java-related patents no later than July 20, 2010.  Oracle has the burden of

10  establishing that it is more probable than not [alleged infringer] Google received notice of

11  infringement on [any earlier date].]

12  [If you find that [patent holder] [choise A] does not sell a product covered by the [ ] patent [or choise
13  B] sells such a product but marks the product with the patent number, damages begin without the
    requirement for actual notice. If you find that the [ ] patent was granted before the infringing activity
14  began, damages should be calculated as of the date you determine that the infringement began. If you
    find that the [ ] patent was granted after the infringing activity began, damages should be calculated as
15  of [date patent issued].]

16
17  AUTHORITY:  FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS No. B.3.2
    (Feb. 18, 2010) (modified) (citing 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech
18  Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed.
19  Cir. 1996); *Am. Med. Sys. Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices
    for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *see also Crown Packaging Tech.,
20  Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1310, 1317 (Fed. Cir. 2009); *SRI Int'l, Inc. v.
    Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997).

21

22

23

24

25

26

27

28

169

**DISPUTED JURY INSTRUCTION NO. 59**
**PATENT – DAMAGES – DATE OF COMMENCEMENT**
**OFFERED BY GOOGLE**

The allowable time frame for damages may differ from patent to patent in this case. Oracle is entitled to damages on any individual patent starting on the date that Google has both (1) infringed that patent and (2) received actual notice of that patent.

The question when Google received actual notice of a patent must be determined on a patent-by-patent basis, as follows:

First, you must determine whether Oracle makes, sells, or offers to sell, or Sun made, sold, or offered to sell a product that embodies each patent. If you determine Oracle makes, sells or offers to sell, or Sun has made, sold, or offered to sell such a product, you must then determine whether Sun or Oracle ever marked any of those products with the number of that patent. If you conclude that Sun or Oracle did mark a product embodying the patent, damages commence on the date of first marking. If you conclude that Sun or Oracle did not mark any products with the number of the patent, you must determine the date that Google received actual written notice of (1) the patent and (2) the specific product alleged to infringe that patent. That is the date of actual notice for purposes of commencement of damages.

Second, if you conclude that neither Sun nor Oracle has made, sold, or offered to sell a product covered by a given patent, then damages begin without the requirement for actual notice as follows. If the patent was issued before the infringing activity began, damages should be calculated as of the date you determine that the infringement began. If the patent was issued after the infringing activity began as determined by you, damages should be calculated as of the date the patent issued.

In all cases, damages should be calculated from the earliest date, after each patent issued, that Google received actual written notice of the particular patent and the specific product alleged to infringe.

Damages that [patent holder] may be awarded by you commence on the date that [alleged infringer] has both infringed and been notified of the [ ] patent: [use those that apply to this case]

[ [Patent holder] and [alleged infringer] agree that date was [insert date];]

170

1  [  Since [patent holder] sells a product that includes the claimed invention but has not

2  marked that product with the patent number, you must determine the date that [alleged

3  infringer] received actual written notice of the [ ] patent and the specific product alleged to

4  infringe;]

5  [  Since [patent holder] [marks the product] or [does not sell a product covered by the

6  patent], then damages begin without the requirement for actual notice under the following

7  circumstances:

8      If the [ ] patent was granted before the infringing activity began, damages should

9      be calculated as of the date you determine that the infringement began; or

10     If the [ ] patent was granted after the infringing activity began as determined by

11     you, damages should be calculated as of [date patent issued].]

12 ***Source***

13 N.D. Cal. Model Patent Jury Instr. B.5.8; 35 U.S.C. § 287(a).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

171

Dated: October 14, 2011

MORRISON & FOERSTER LLP


By:  /s/ Daniel P. Muino
         Daniel P. Muino

MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street
Armonk, NY  10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900
Oakland, CA  94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar
No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway
Redwood City, CA  94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

172

1   Dated: October 14, 2011                   KEKER & VAN NEST LLP

2
                                              By:  /s/ Matthias Kamber
3                                                     Matthias Kamber

4                                             ROBERT A. VAN NEST (SBN 84065)
                                              rvannest@kvn.com
5                                             CHRISTA M. ANDERSON (SBN184325)
                                              canderson@kvn.com
6                                             DANIEL PURCELL (SBN 191424)
                                              dpurcell@kvn.com
7                                             710 Sansome Street
                                              San Francisco, CA 94111-1704
8                                             Telephone: (415) 391-5400
                                              Facsimile: (415) 397-7188
9
                                              SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
10                                            sweingaertner@kslaw.com
                                              ROBERT F. PERRY
11                                            rperry@kslaw.com
                                              BRUCE W. BABER (*Pro Hac Vice*)
12                                            bbaber@kslaw.com
                                              KING & SPALDING LLP
13                                            1185 Avenue of the Americas
                                              New York, NY 10036-4003
14                                            Telephone:  (212) 556-2100
                                              Facsimile:  (212) 556-2222
15
                                              DONALD F. ZIMMER, JR. (SBN 112279)
16                                            fzimmer@kslaw.com
                                              CHERYL A. SABNIS (SBN 224323)
17                                            csabnis@kslaw.com
                                              KING & SPALDING LLP
18                                            101 Second Street - Suite 2300
                                              San Francisco, CA 94105
19                                            Telephone: (415) 318-1200
                                              Facsimile:  (415) 318-1300
20
                                              GREENBERG TRAURIG, LLP
21                                            IAN C. BALLON (SBN 141819)
                                              ballon@gtlaw.com
22                                            HEATHER MEEKER (SBN 172148)
                                              meekerh@gtlaw.com
23                                            1900 University Avenue
                                              East Palo Alto, CA 94303
24                                            Telephone: (650) 328-8500
                                              Facsimile: (650) 328-8508
25
                                              *Attorneys for Defendant*
26                                            GOOGLE INC.

27

28

173

pa-1492148