IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., | No. C 10-03561 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |
| GOOGLE INC., | |
| Defendant. | |

## INTRODUCTION

In this patent and copyright infringement action involving features of Java and Android, defendant moves for relief from a non-dispositive pretrial order of a magistrate judge. For the reasons stated below, the motion is **DENIED**.

## STATEMENT

The facts of this action have been set forth in previous orders (*see* Dkt. Nos. 137, 230, 433). In the weeks before this action was filed, lawyers for Oracle America, Inc. communicated with lawyers for Google Inc. about the alleged infringement. On July 20, 2011, Google Senior Counsel Ben Lee met with Oracle lawyers to discuss Oracle's patent-infringement allegations (Lee Decl. ¶ 5). Ten days later, Google General Counsel Kent Walker convened a meeting to formulate a response to Oracle's infringement claims. Attorney Lee attended the meeting, as did Google software engineer Tim Lindholm (Lee Decl. ¶ 7). A week later, Mr. Lindholm wrote the email that is the subject of the instant motion.

1    The final version of the email was sent at 11:05 a.m. on August 6, 2010. In addition to the
2 final version, nine different drafts were saved automatically by Mr. Lindholm's computer while
3 he wrote the email between 11:01 and 11:05 that morning. The nine drafts saved during this
4 four-minute period were stored by the computer without specific direction from Mr. Lindholm.

5    The "To:," "Cc:," and "Bcc:" fields of all the drafts were blank. The "To:" field of the
6 final version listed Andy Rubin, who was the Google Vice President in charge of Android, and
7 Attorney Lee. The "Cc:" field listed Dan Grove, who was another Google engineer, and
8 Mr. Lindholm himself. The "Bcc:" field was blank. The final version of the email and the last
9 draft also included two headings within the body of the email which were not present in any of
10 the earlier drafts. These headings labeled the email as "Attorney Work Product" and
11 "Google Confidential."[1]

12    The "Subject:" field of the final version and all drafts of the email read, "Context for
13 discussion: what we're really trying to do." The full text of the body of the final email that
14 actually was sent read as follows:

---

[1] The final version of the email and all nine drafts were reviewed *in camera*. "The proper procedure for asserting the attorney-client privilege as to particular documents" is "to submit them *in camera* for the court's inspection." *In re Horn*, 976 F.2d 1314, 1318 (9th Cir. 1992).

2

> Attorney Work Product
> Google Confidential
>
> Hi Andy,
>
> This is a short pre-read for the call at 12:30. In Dan's earlier email we didn't give you a lot of context, looking for the visceral reaction that we got.
>
> What we've actually been asked to do (by Larry and Sergei) is to investigate what technical alternatives exist to Java for Android and Chrome. We've been over a bunch of these, and think they all suck. We conclude that we need to negotiate a license for Java under the terms we need.
>
> That said, Alan Eustace said that the threat of moving off Java hit Safra Katz hard. We think there is value in the negotiation to put forward our most credible alternative, the goal being to get better terms and price for Java.
>
> It looks to us that Obj-C provides the most credible alternative in this context, which should not be confused with us thinking we should make the change. What we're looking for from you is the reasons why you hate this idea, whether you think it's a nonstarter for negotiation purposes, and whether you think there's anything we've missed in our understanding of the option.
>
> -- Tim and Dan

The nine sequential drafts show that Mr. Lindholm generally wrote the email from top to bottom, with the exception that the headings "Attorney Work Product" and "Google Confidential" were added in the last minute before the email was sent. There is no evidence that Attorney Lee — the only attorney who received the email — actually read it or responded to it, much less used it in constructing any legal advice.

    Oracle filed this infringement action six days after Mr. Lindholm sent the email. During discovery, Google produced the first eight drafts of the email to Oracle. The ninth draft and the final version, however, were held back and listed on Google's privilege log. Google explains that its electronic scanning mechanisms "did not catch those drafts before production" because those drafts did not contain the confidentiality or privilege headings and did not contain any addressees. Google did, however, designate the eight drafts it produced as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" pursuant to the protective order, which required restraint and care for such designations (Br. 5; Dkt. No. 66 at 5).

3

1    On July 21, 2011, Oracle referenced one of the email drafts at two different hearings —
a discovery-dispute hearing before Magistrate Judge Ryu, and a *Daubert* hearing before the
undersigned judge. Part of the email draft was read into the record at the latter hearing, and
Google attorneys addressed its substance. They did not object to the email draft as privileged
or confidential.

The night after those hearings, Google informed Oracle that the email draft constituted
"Protected Material" under the protective order and requested that Oracle not make any further
public disclosure of its content. The following evening, Google asserted that the email draft was
"unintentionally produced privileged material" and clawed it back. A few hours later, Google
notified Oracle that the reason the email draft had been clawed back was because it was "subject
to the attorney-client privilege and/or work product doctrine." Google then clawed back the other
produced drafts for the same reason.[2]

The parties proceeded to litigate the matter of the Lindholm email and drafts. The
undersigned judge denied Google's request to file motions to seal and redact portions of the
*Daubert* hearing transcript and *Daubert* order that referenced the email draft (Dkt. No. 255).
After briefing, factual submissions, and a hearing, Magistrate Judge Ryu found that "Google has
not demonstrated that the Lindholm Email falls within the ambit of attorney-client privilege or the
work product doctrine." Based on that finding, she ordered Google to produce or re-produce the
final version and all nine drafts of the Lindholm email and to tender Mr. Lindholm for deposition
(Dkt. No. 361 at 8–9).

Google's instant motion challenges that order, which was issued on August 26, 2011.
Contrary to the order, Google asserts that it *did* establish that the final version and all nine drafts
of the Lindholm email were privileged. Google timely sought and received permission to file the
instant motion for relief from Magistrate Judge Ryu's August 26 order. This order follows full
expedited briefing and a hearing.

---

[2] Google's post-hearing claims of confidentiality and privilege were chronicled, with reference to the documentary record, in the August 26 order by Magistrate Judge Ryu (Dkt. No. 361 at 3). That aspect of the order is not challenged.

4

**ANALYSIS**

The district judge in a case must consider timely objections to any non-dispositive pretrial order of a magistrate judge and must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FRCP 72(a). Thus, "[a] non-dispositive order entered by a magistrate must be deferred to unless it is 'clearly erroneous or contrary to law.'" *Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). In contrast to dispositive matters, orders of a magistrate judge on non-dispositive matters "are not subject to *de novo* determination," and "[t]he reviewing court may not simply substitute its judgment for that of the deciding court." *Ibid.* Google cites no binding authority for its argument that legal conclusions (as opposed to factual findings) in a non-dispositive pretrial order of a magistrate judge are reviewed *de novo* (Reply Br. 2–3).[3]

Google asserts that Magistrate Judge Ryu's August 26 order was clearly erroneous and contrary to law. It was not. The order set forth a detailed review of the email itself and the extrinsic evidence bearing on the question of privilege. Then, based on holistic consideration of all the intrinsic and extrinsic evidence, the order found that Google had failed "to meet its burden of demonstrating that the Lindholm Email constitutes a communication related to the purpose of obtaining legal advice from a legal advisor in his capacity as such." In light of this factual finding, the order then found that the email and its drafts were not protected by the attorney-client privilege or the work-product doctrine (Dkt. No. 361 at 7–8). Google raises seven categories of objections to the order. Each category is addressed in turn below.

**1.  CONTENT OF THE EMAIL.**

Having considered the full text of the email, the challenged order found that "[n]othing in the content of the email indicates that Lindholm prepared it in anticipation of litigation or to further the provision of legal advice" (Dkt. No. 361 at 5). Google asserts that this finding and the specific findings on which it was based were clearly erroneous and contrary to law.

---

[3] The parties' briefs cite decisions by the United States Courts of Appeals for the Ninth Circuit and for the Federal Circuit, among other authorities. The Federal Circuit "applies the law of the regional circuit . . . with respect to questions of attorney-client privilege." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1346 (Fed. Cir. 2005). Thus, Ninth Circuit case law controls here.

5

*First*, Google asserts that the content of the email "*does* indicate that it was prepared in anticipation of litigation and to further the provision of legal advice, because it includes the words 'Attorney Work Product' and 'Google Confidential,' was sent to the Google in-house lawyer assigned to supervise Lindholm's investigation of facts related to Oracle's claims, and concerned alternatives to the technology that Oracle then was claiming Google had infringed" (Br. 11). The challenged order considered and rejected all of those points.

Simply labeling a document as privileged and confidential or sending it to a lawyer does not automatically confer privilege. *See, e.g.*, *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09-md-2032, 2011 WL 3268091, at *4 (N.D. Cal. July 28, 2011) (Corley, M.J.) ("Merely labeling a communication as an 'attorney-client privileged draft' . . . or adding an attorney as a recipient are insufficient to confer privilege when the communication is not otherwise for the purpose of facilitating legal advice or services."). Moreover, the technology mentioned in the email included both accused and non-accused products. The Google product Chrome was not mentioned at the meeting with Oracle's lawyers and has played no role in this litigation (Dkt. No. 361 at 6). The finding that these aspects of the email did not support Google's claim of privilege was not clearly erroneous or contrary to law.

*Second*, the challenged order noted that the email was "directed to Rubin, the Vice President of Android," and not "to Walker or Lee, or indeed to any lawyer." This statement analyzed the salutation of the email (Dkt. No. 361 at 5). Google argues that it was clearly erroneous because the email was "directed to" Attorney Lee in that Attorney Lee was listed in the "To:" field (Br. 11). Google's critique takes the "directed to" statement out of context. The challenged order acknowledged elsewhere that Attorney Lee was included in the "To:" field. The statement at hand made a separate point concerning the salutation as evidence of the writer's intent. The salutation of the final email addressed only a non-attorney. The attorney, at most, was a mere "To." There was no evidence that he actually read or responded to the email, much less used it in constructing any legal advice. Again, merely adding an attorney as a recipient does not automatically confer privilege. *See In re Chase Bank*, 2011 WL 3268091, at *4.

6

*Third*, the challenged order noted that the email "expressly states that Page and Brin (and not the lawyers) instructed Lindholm and Grove to undertake the technological research discussed in the Email" (Dkt. No. 361 at 5). Google complains that the email did not expressly state that the lawyers did *not* direct the research (Br. 11). Google misreads the order. The parenthetical statement "and not the lawyers" emphasized that *the email did not identify the lawyers* as directing the research, but rather it identified other individuals as directing the research. This was true. Contrary to Google, the parenthetical did not imply that the email affirmatively stated that the lawyers did not direct the research. Google's objection tortures the language.

The conclusion that "[n]othing in the content of the email indicates that Lindholm prepared it in anticipation of litigation or to further the provision of legal advice" was not clearly erroneous or contrary to law.

### 2. LACK OF REFERENCE TO LITIGATION AND FOCUS ON NON-LITIGATION MATTERS.

The challenged order noted that the email text "never mentions legal advice, lawyers, litigation, Oracle, or patent infringement; rather, it focuses on technological aspects of Chrome and Android, and the need to negotiate a license for Java." This was true. After considering this observation in conjunction with other facts, the order found that "the Email appears to be a strategy discussion intended to address business negotiations regarding a Java license" (Dkt. No. 361 at 6). Google challenges these statements as clearly erroneous and contrary to law. They were not.

*First*, Google argues that the "conclusion that the Lindholm email 'appears to be a strategy discussion' about licensing negotiations rather than anything litigation-related is not supported by any factual evidence and rests on counterfactual speculation" (Br. 12). Not so. The challenged order cited copious record facts, including the text of the email itself, as suggesting that the email may have concerned a different matter. For example, the order noted that the email referenced Chrome, a Google product that was not mentioned at the meeting with Oracle's lawyers and which has played no role in this litigation (Dkt. No. 361 at 6).

7

*Second*, Google argues that the challenged order "held, in substance, that a communication cannot be related to a corporate legal investigation if it fails to refer to litigation or to request legal assistance" (Br. 12). Again, not so. This interpretation grossly mischaracterizes the challenged order. No such requirement was articulated or implied. The lack of any reference to litigation was cited as only one of many factors contributing to the ultimate conclusion that the email was not privileged.

Neither the observation that the email lacked any reference to litigation nor the conclusion that it focused on non-litigation matters was clearly erroneous or contrary to law.

### 3. FIRST EVIDENTIARY GAP: LACK OF FOUNDATION FOR LEE DECLARATION STATEMENTS.

The challenged order found that "there are many basic gaps in the factual record that Google failed to fill, despite having had ample opportunity to do so." It then cited three examples of such gaps. One example was that Attorney Lee, "who no longer works for Google, did not indicate [in his declaration] that he reviewed the Email and could competently represent that it was connected to work that he requested from Lindholm as part of the provision of legal advice he describes in his declaration" (Dkt. No. 361 at 5).

Google argues that this observation was clearly erroneous and contrary to law because Attorney Lee's declaration stated, "On or about August 6, 2010, I received an email from Mr. Lindholm regarding the investigation Mr. Walker and I had asked him to conduct." According to Google, a foundational statement that Attorney Lee actually read the email "is too obvious to require when the declarant declares that he received the email in question and describes what it was about" (Br. 9).

Personal knowledge is a required foundation for any factual testimony. FRE 602. Google does not cite any authority for a "too obvious" exception to this rule. Attorney Lee's declaration did not state that he ever read the email or that he recalled the specific circumstances under which he received it (Dkt. No. 408-1). The finding that Attorney Lee's declaration lacked adequate foundation showing that he could competently represent that the email was connected to work that he requested from Lindholm as part of the provision of legal advice was not clearly erroneous or contrary to law.

8

### 4. SECOND EVIDENTIARY GAP: FAILURE TO FORECLOSE THE POSSIBILITY THAT THE EMAIL CONCERNED A DIFFERENT, NON-PRIVILEGED MATTER.

The challenged order cited the following as a second example of a "basic gap[] in the factual record that Google failed to fill" (Dkt. No. 361 at 5):

> Neither Lee nor Lindholm discusses whether, during the time period in question, they were communicating with each other solely about the legal advice they each describe. In other words, at that time, Lindholm may well have been communicating with Lee about other non-privileged matters, including the business of negotiating for a Java license. This is a simple and reasonable explanation for the Email that Google makes no effort to foreclose.

Google argues that this observation was clearly erroneous and contrary to law. Google identifies three bases for its objection.

*First*, Google asserts that "Mr. Lee and Mr. Lindholm expressly declared that Mr. Lindholm's August 6, 2010 email addresses the investigation that Mr. Lee and Google General Counsel Kent Walker had asked Mr. Lindholm to undertake, under Lee's direction, in response to Oracle's infringement claims and in anticipation of Oracle's threatened lawsuit" (Br. 9). As to Attorney Lee, the challenged order found that his statements about the email lacked foundation. This order already has found that that finding was not clearly erroneous or contrary to law. As to Mr. Lindholm, the cited portions of his declaration do not specifically tie the email to the particular investigation described, because they do not describe the purpose for which the email was sent (Dkt. No. 408-2).

*Second*, Google argues that "[t]here is no basis in the record or elsewhere for the Magistrate's counterfactual speculation that Mr. Lindholm and Mr. Lee 'may well have been' communicating about something else" (Br. 9–10). Not so. As detailed throughout this order, the challenged order cited ample record support for the view that the email concerned some other, non-privileged matter.

*Third*, Google asserts that Mr. Lindholm's reply declaration "specifically excluded the possibility that the email was about anything else" (Br. 10). Again, Google stretches Mr. Lindholm's statements. The cited paragraph stated that the email was not intended "to give general business advice to anyone in connection with Android's ongoing business operations," but this statement did not foreclose the possibility that the email concerned something other than

9

an investigation for purposes of obtaining legal advice in preparation for this lawsuit (Dkt. No. 408-3 at ¶ 7).

In sum, the finding that Google failed to foreclose the reasonable possibility that the email concerned another, non-privileged matter was not clearly erroneous or contrary to law.

### 5. THIRD EVIDENTIARY GAP: FAILURE TO EXPLAIN PROMINENCE OF NON-LAWYERS.

The challenged order cited the following as a third example of a "basic gap[] in the factual record that Google failed to fill" (Dkt. No. 361 at 5):

> [N]either Lee nor Lindholm states that [Andy] Rubin, [Larry] Page, and [Sergei] Brin were involved in the described efforts to formulate legal advice, nor do they attempt to explain why these individuals feature so prominently in the text of the Email. Lee and Lindholm easily could have supplied these basic foundational facts in their declarations without jeopardizing the asserted privilege."

The challenged order noted that the salutation in the body of the email addressed only Andy Rubin, who was not a lawyer. Similarly, it noted that the email reported on an investigation requested by Google executives Larry Page and Sergei Brin, who also were not lawyers. The "gap" identified above refers to Google's failure to explain why these individuals featured so prominently in an email supposedly sent for the purpose of obtaining legal advice.

Google asserts that this observation was clearly erroneous and contrary to law. Google is incorrect. *First*, Google argues that it is logical that Rubin, Page, and Brin would have been involved in an investigation of Oracle's infringement claims. Google, however, does not cite any declaration or other evidence showing that they *were* involved in directing technical research by Google engineers for the purpose of obtaining legal advice in preparation for this lawsuit (Br. 10). On the contrary, Google's declarations stated that the technical investigation of Oracle's infringement claims was directed by Attorneys Lee and Walker, whereas the email referred to an investigation directed by Messrs. Page and Brin. This discrepancy was not explained.

*Second*, Google argues that Magistrate Judge Ryu "appears to have assumed that a legal investigation can be ordered or supervised either by top management, or by the company's general counsel — but never by both" (Br. 10–11). The order, however, contained no such

10

1 statement and relied on no such logic. It merely observed that Google failed to address the
2 discrepancy described above. That observation was not clearly erroneous or contrary to law.

### 6. ROLE OF ATTORNEY LEE AS IN-HOUSE COUNSEL.

The challenged order stated that Attorney Lee's "role as in-house counsel warrants heightened scrutiny," because in-house counsel may serve both business and legal functions. The order stated that a party attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status must make a clear showing that the speaker made the communication for the purpose of obtaining or providing *legal* advice (Dkt. No. 361 at 7).

Google argues that this reasoning was clearly erroneous and contrary to law because the "clear showing" standard for in-house counsel has been rejected by our court of appeals. Not so. The challenged order cited a 2002 decision from this district court that applied the "clear showing" standard. Our court of appeals has yet to address that standard. It has been applied primarily by district courts following now-Justice Ginsburg's opinion in *In re Sealed Case*, 737 F.3d 94, 99 (D.C. Cir. 1984). *See, e.g.*, *United States v. ChevronTexaco Corporation*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (Chesney, J.) (adopting report and recommendation of Brazil, M.J.).[4]

Google cites a 1996 decision from our court of appeals, which stated that in "determining the existence of a privilege," no attempt is made to distinguish between inside and outside counsel. *United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996). Google takes this language out of context. The *Rowe* decision did not address the "clear showing" standard or any other standard for establishing privilege. Rather, the cited portion of *Rowe* found that attorneys conducting an internal investigation at their own law firm "were, effectively, in-house counsel" and therefore in an attorney-client relationship with their employer. The decision did not address

---

[4] In his prior career, the undersigned judge practiced in a large civil litigation firm for 25 years and had considerable experience with and exposure to the practice of company officers and employees routinely copying internal (and even external) counsel on all manner of business communications as an attempt to cloak a business message in privilege. Adding the name of a lawyer to a list of business recipients is exceedingly easy and is very often done without any intention that it be used to frame legal advice. For that reason, the rule adopted by now-Justice Ginsburg in *In re Sealed Case* makes considerable sense and addresses real-world practices. This experience is added for the benefit of the record and for any appellate review. It has not colored the outcome of this order save and except to reinforce the wisdom of the holding in *In re Sealed Case*.

11

the *standard* for determining whether the existence of an attorney-client privilege had been *shown*. *Ibid.* Requiring a clear showing of privilege in light of Attorney Lee's role as in-house counsel was not clearly erroneous or contrary to law.

Google also argues that "the Magistrate failed to mention an important corollary of the 'clear showing' doctrine" — the existence of a rebuttable presumption that in-house counsel are "most often giving legal advice" (Br. 14). The challenged order, however, cited sufficient record evidence to rebut any such presumption in this instance. The fact that the challenged order did not explicitly reference this supposed presumption did not render it clearly erroneous or contrary to law.

### 7. REACTIONS OF GOOGLE LITIGATION COUNSEL.

The challenged order stated that "[t]he reactions of Google counsel when presented with the Lindholm Email in court reinforce the weaknesses of Google's contention that the Email warrants attorney-client privilege" (Dkt. No. 361 at 6). Google objects to this statement as clearly erroneous and contrary to law. Google argues that the "surprised reaction of a lawyer confronted for the first time with an incomplete draft of a document that has been stripped of its most conspicuous intrinsic indicia of privilege is utterly irrelevant, especially in a case where literally millions of pages of documents have been produced" (Br. 14).

Google cites no evidence that its lawyers were surprised or unable to identify the Lindholm email when confronted with it at the July 21 hearings. Moreover, the challenged order did not rely on their reactions to show that privilege had been waived or did not apply. It simply observed that the reactions of Google's lawyers were consistent with the interpretation of the email set forth in the order: "In other words, when stripped of the address header and boilerplate 'Work Product' text, even Google's lead counsel, who is intimately familiar with the facts of this case, believed that the Email concerned business negotiations and could not identify it as a privileged document" (Dkt. No. 361 at 6–7). The reaction of Google's lawyers was cited only as a further indication that the order's assessment of the email based on *other* evidence was reasonable. This observation was not clearly erroneous or contrary to law.

12

### 8. *UPJOHN* AND GOOGLE'S REPLY BRIEF.

In addition to Google's specific objections addressed above, Google argues that the result reached by the challenged order "guts *Upjohn*." Google argues that the supposed errors in the order eviscerate the principle that "[c]orporate counsel need to be able to communicate freely with low-level employees in order to gather information, develop legal advice, and relay that advice to corporate decision-makers." According to Google, "[t]hat is the premise of *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)" (Reply Br. 3). Google, however, did not cite the *Upjohn* decision to Magistrate Judge Ryu.

This order already found that the challenged order was not clearly erroneous or contrary to law in any specific respect. Additionally, the challenged order as a whole did not run afoul of *Upjohn* and its progeny, including the *Admiral* decision counsel cited at the hearing. *See Admiral Ins. Co. v. U.S. Dist. Ct. for the Dist. of Ariz.*, 881 F.2d 1486 (9th Cir. 1989). True, corporate counsel need to be able to communicate freely with low-level employees for purposes of providing legal advice. But the privilege protecting such communications must be shown to apply before it can be invoked as to a particular document. The challenged order held that Google failed to meet its burden of *showing* that the Lindholm email was generated in a privileged scenario, whether of the type described in *Upjohn* or otherwise. The order did not narrow the *scope* of scenarios which, if proven, would give rise to privilege. *Upjohn* and *Admiral* addressed the scope of the attorney-client privilege, not the standard for proving its applicability in a particular case.

Google's reply brief catalogues a number of supposed errors which, in its view, create conflict between the challenged order and *Upjohn*. Many of those supposed errors are simply fictions created by Google's mischaracterization of the order. For example, this order already explained that the challenged order did not hold "that a communication is not privileged unless it expressly discusses litigation or legal advice" (Reply Br. 4). To the extent the reply brief repeats supposed errors that were set forth in Google's opening brief, those issues already were addressed above. To the extent the reply brief identifies new supposed errors, those arguments are untimely

13

and need not be addressed.  The parties' arguments concerning waiver of privilege — which was not addressed in the challenged order — also need not be addressed.

\*            \*            \*

Google has failed to identify any aspect of the challenged order that was clearly erroneous or contrary to law.  Accordingly, Google's motion for relief from the order is **DENIED**.  The order by Magistrate Judge Ryu finding that Google failed to establish that the Lindholm email was protected by attorney-client privilege or work-product immunity was not clearly erroneous or contrary to law.

### 9.   CONFIDENTIALITY.

In addition to disputing the privilege status of the Lindholm email and drafts, the parties also dispute the confidentiality status of those documents.  Google designated the documents as "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" under the stipulated protective order when it produced them to Oracle.  Oracle then requested that Google re-designate the documents as only "CONFIDENTIAL," a category providing lesser protection under the protective order.  Google has filed a motion to retain its more restrictive confidentiality designation (Dkt. No. 513).

This order makes no comment on the merits of that pending motion.  The parties are reminded, however, that confidentiality designations governing the litigants' treatment of discovery materials do *not* entitle such materials to automatic protection when filed or used in court.  The order adopting the stipulated protective order warned that filings will be sealed only by court order in accordance with the Ninth Circuit's strict caution against sealing records (Dkt. No. 68).

Having considered the full text of the Lindholm email quoted herein and all related declaration testimony, this order finds that the Lindholm email does not contain any truly sealable material.  Accordingly, this order will be filed in the public docket.  The pendency of Google's motion to retain its confidentiality designation is irrelevant to this determination.

14

**CONCLUSION**

For the reasons set forth above, defendant's motion for relief from the August 26 non-dispositive pretrial order of Magistrate Judge Ryu is **DENIED**. The Lindholm email and drafts will not be treated as protected by attorney-client privilege or work-product immunity.

**IT IS SO ORDERED.**

Dated: October 20, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE