# EXHIBIT A

MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA, INC.'S CASE MANAGEMENT STATEMENT SELECTING CLAIMS FOR TRIAL**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

Pursuant to the Court's September 26, 2011 Order Requesting Case Management Statements, Plaintiff Oracle America submits this case management statement in advance of the final pretrial conference to explain how Oracle will narrow the patent claims to a manageable number for trial.

First, Oracle will narrow the patent claims by not trying the '447 patent (Claims 10 and 11 are presently asserted), Claims 12, 17, 22, and 38 of the '104 patent, Claim 3 of the '205 patent, Claims 4 and 14 of the '520 patent, Claims 4 and 13 of the '720 patent, or Claims 13 and 15 of the '476 patent. Given the forcefulness with which Google has advocated for claim reduction (*see, e.g.*, 9/15/2011 Hearing Tr. at 64-67), we continue to understand that enforcement of the Court's order that "any claim not asserted will be deemed foregone as to all accused matters" will apply to Google's invalidity contentions for these claims as well.

For the remainder of the asserted claims, Oracle proposes to reduce the number of effective claims to just 15 claims from six patents through a claim-grouping approach. Many groups of the asserted claims have the same technical substance, but are drafted as different types of claims: method, apparatus, and computer-readable medium. We refer to pairs or triples of these claims as "mirrored claims." As the Court learns the parties' arguments, it will see that infringement and validity issues for each patent rest on the same accused functionalities and the same prior art references. Accordingly, mirrored claims can efficiently be treated as a single claim for purposes of trial. The Court may recall that the undersigned indicated this approach at the recent copyright summary judgment hearing. (9/15/2011 Hearing Tr. at 66.)

In referring to "the same technical substance" above, we have in mind the evidence on both infringement and validity issues. For infringement, Google's Android software is the linchpin of the infringement of each type of claim in a mirrored triple. Installing Android software on a phone creates a system that infringes the apparatus claim, the use of the Android phone infringes the method claim, and the Android phone's storage media infringes the computer-readable media claim. In each case, infringement arises from meeting identical limitations across the three mirrored claims.

Two examples of mirrored claims illustrate this principle. Claims 39 and 40 of the '104 patent are two claims of a mirrored triple. As is readily apparent, the apparatus of Claim 40 is a system having a processor and a memory that contains a program for carrying out the method of Claim 39:

| '104 claim 39. A computer-implemented method comprising: | '104 claim 40. A data processing system, comprising: a processor; and a memory comprising a control program for causing the processor to |
| --- | --- |
| receiving a program formed of instructions written in an intermediate form code compiled from source code; | (i) receive a program formed of instructions written in an intermediate form code compiled from source code, |
| analyzing each instruction to determine whether it contains a symbolic field reference; and | (ii) analyze each instruction to determine whether it contains a symbolic field reference, and |
| executing the program by performing an operation identified by each instruction, | (iii) execute the program by performing an operation identified by each instruction, |
| wherein data from a storage location identified by a numeric reference is thereafter used for the operation when the instruction contains a symbolic field reference, the numeric reference having been resolved from the symbolic field reference. | wherein data from a storage location identified by a numeric reference is thereafter used for the operation when the instruction contains a symbolic field reference, the numeric reference having been resolved from the symbolic field reference. |

Similarly, Claims 1 and 13 of the '702 patent are two claims of a mirrored triple. Claim 1 is a method claim and Claim 13 is an apparatus claim. Although the two claims do not use the same language *in haec verba*, and the ordering of elements is different, the technical overlap is clear:

| '702 claim 1. A method of pre-processing class files comprising: determining plurality of duplicated elements in a plurality of class files; forming a shared table comprising said plurality of duplicated elements; removing said duplicated elements from said plurality of class files to obtain a plurality of reduced class files; and forming a multi-class file comprising said plurality of reduced class files and said shared table. | '702 claim 13. An apparatus comprising: a processor; a memory coupled to said processor; a plurality of class files stored in said memory; a process executing on said processor, said process configured to form a multi-class file comprising: a plurality of reduced class files obtained from said plurality of class files by removing one or more elements that are duplicated between two or more of said plurality of class files; and a shared table comprising said duplicated elements. |
| --- | --- |

1    Both claims are directed to forming a multi-class file that comprises a plurality of reduced
2    class files obtained by removing one or more duplicated elements and a shared table that
3    comprises the duplicated elements. According to Oracle's infringement contentions and Prof.
4    Mitchell's report, Android developers using the Android SDK infringe Claim 1 for the same
5    technical reason that they infringe Claim 13.

6    Confirmation of this technical identity among mirrored claims may be found in Google's
7    non-infringement and invalidity expert reports. Many of Google's noninfringement or invalidity
8    arguments are not made on a detailed, limitation-by-limitation basis across each claim, but are
9    instead made by referring back to arguments for earlier claims. For example, in Google's '104
10   noninfringement report, the three-paragraph arguments for mirrored claims 39, 40, and 41 are
11   identical, except for the claim numbers. Each begins: "For the same reasons discussed above
12   with respect to claim 11, it is my opinion that the dexopt and Resolve.c do not infringe claim [39,
13   40, or 41] of the '104 patent." Mirrored claims 1, 7 and 13 of the '702 patent provide another
14   example. In Google's '702 noninfringement report, Prof. Parr wrote for Claim 7 that "it is my
15   opinion that the Android dx tool does not include code for performing the claimed steps of claim
16   7 of the '702 patent for the same reasons discussed above in relation to claim 1" and for Claim 13
17   that "it is my opinion that a computer with an installed copy of the Android dx tool does not have
18   a process configured to perform the claimed steps of claim 13 of the '702 patent for the same
19   reasons discussed above in relation to claim 1." A third example is Google's '520 invalidity
20   report, in which Prof. Dewar stated that "the basis of my opinion [that *Lewis* anticipates all the
21   asserted claims] is detailed in Exhibit C, a detailed element-by-element invalidity chart
22   comparing the disclosure of *Lewis* with the limitations of the '520 patent claims" and that "the
23   basis of my opinion [that *Cierniak* is anticipating] is detailed in Exhibit D, a detailed element-by-
24   element invalidity chart comparing the disclosure of *Cierniak* with the limitations of the '520
25   patent claims." Prof. Dewar's Exhibits C and D use identical quotations from the *Lewis* and
26   *Cierniak* references for his invalidity arguments for Claims 8 and 20. The same similarities
27   appear in Google's experts' invalidity charts for other mirrored claims. The only additional
28   invalidity argument that is different is that Google has asserted a Section 101 patentability

defense against some (not all) of the computer-readable medium claims. But patentable subject matter is an issue for the Court to decide, so it is not a defense that affects whether the case can be tried to a jury.

With respect to the infringement evidence of products and acts, there is a substantial overlap among patents that leads to the same presentation of evidence for each type of claim. The evidence that Oracle will submit about how Android devices are made and used (and thus who is a direct and indirect infringer) will apply to each patent's method claims, apparatus claims, and computer-readable medium claims in the same way. So the amount of trial time and information that need be digested by the jury is proportional to the number of effective claims, taking mirrored claims into account, and not proportional to the absolute total number of asserted claims.

Because of the technical overlap of the mirrored claims that leads to overlapping infringement/noninfringement and validity/invalidity arguments, the mirrored claim approach will streamline the presentation of evidence to the jury to the bare minimum needed while still preserving the parties' right to a jury trial on their claims and defenses. Oracle is constrained to assert each claim in a mirrored pair or triple owing to the fact that each type of claim has different consequences for direct versus indirect infringement (which matters when it comes to issues of knowledge and intent, which Google denies)—but again, the evidence of these acts are common across the asserted patents. But because of the overlap in both technical evidence and Google product evidence, both within patents and among patents, the result is the same.

Applying the mirrored claim approach, Oracle proposes to try the following patent claims:

**'104 patent – 3 effective claims:** Claims 11, 27, and 40, and mirrored Claim 29 (a mirror of Claim 27) and Claims 39 and 41 (mirrors of Claim 40).

**'205 patent – 2 claims:** Claims 1 and 2.

**'702 patent – 3 effective claims:** Claims 13, 15, and 16, and mirrored Claims 1 and 7 (mirrors of Claim 13) and Claims 6 and 12 (mirrors of Claim 15).

**'520 patent – 3 effective claims:** Claims 1, 8, and 12, and mirrored Claim 20 (a mirror of Claim 8).

**'720 patent – 3 effective claims:** Claims 1, 6, and 21, and mirrored Claims 10 and 19 (mirrors of claim 1) and Claim 22 (a mirror of Claim 21).

**'476 patent – 1 claim:** Claim 14.

Oracle's proposal reduces the number of patents to six, the asserted claims to twenty-six, and the effective number of claims to be tried to fifteen. In the parties' May 18, 2011 Joint Memorandum Regarding the Court's Tentative Case Plan, Oracle proposed to reduce the number of asserted claims to 21 patent claims. Grouping the claims by technical subject matter improves upon that limit by more than 25%, ensuring that the case is ready for trial.

Should the Court remain concerned with the absolute number of asserted claims, despite their overlapping subject matter, Oracle suggests that the solution would be for Google to stipulate that if one claim of a mirrored pair or triple were infringed, then all two or three claims would be. For example, if Google would agree that if the jury found that a device with accused Android code infringed an apparatus claim, then use of the device would also infringe the mirrored method claim and storage media storing the accused code would infringe the mirrored computer-readable medium claim (because in each case the code carries out the method). Given the substantial overlap of the technical issues, this is not a significant concession, especially when compared to the narrowing of trial to which Oracle has agreed. Recall that at the outset of the case, Oracle asserted 132 claims and provided detailed claim charts for each. Since then, under direction from the Court, Oracle has streamlined its case for trial down to fewer than 20% of those claims—just over 10% when the overlap of the mirrored claims is considered. Oracle is amenable to a stipulation along these lines. The parties could reach a similar stipulation on the invalidity arguments (perhaps excepting the patentability defense, which presents a unique issue for just a few claims).

ORACLE AMERICA, INC.'S CASE MANAGEMENT STATEMENT SELECTING CLAIMS FOR TRIAL
CASE NO. CV 10-03561 WHA
pa-1488478

5

| | | |
|---|---|---|
| 1 | Dated: September 29, 2011 | MICHAEL A. JACOBS |
| 2 | | MARC DAVID PETERS |
| | | DANIEL P. MUINO |
| 3 | | MORRISON & FOERSTER LLP |
| 4 | | By: /s/ Michael A. Jacobs |
| 5 | | *Attorneys for Plaintiff* |
| | | ORACLE AMERICA, INC. |