| | |
|---|---|
| 1 | MORRISON & FOERSTER LLP |
| | MICHAEL A. JACOBS (Bar No. 111664) |
| 2 | mjacobs@mofo.com |
| | MARC DAVID PETERS (Bar No. 211725) |
| 3 | mdpeters@mofo.com |
| | DANIEL P. MUINO (Bar No. 209624) |
| 4 | dmuino@mofo.com |
| | 755 Page Mill Road, Palo Alto, CA 94304-1018 |
| 5 | Telephone: (650) 813-5600 / Facsimile: (650) 494-0792 |
| 6 | BOIES, SCHILLER & FLEXNER LLP |
| | DAVID BOIES (Admitted *Pro Hac Vice*) |
| 7 | dboies@bsfllp.com |
| | 333 Main Street, Armonk, NY 10504 |
| 8 | Telephone: (914) 749-8200 / Facsimile: (914) 749-8300 |
| | STEVEN C. HOLTZMAN (Bar No. 144177) |
| 9 | sholtzman@bsfllp.com |
| | 1999 Harrison St., Suite 900, Oakland, CA 94612 |
| 10 | Telephone: (510) 874-1000 / Facsimile: (510) 874-1460 |
| | ALANNA RUTHERFORD |
| 11 | 575 Lexington Avenue, 7th Floor, New York, NY 10022 |
| | Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax) |
| 12 | |
| 13 | ORACLE CORPORATION |
| | DORIAN DALEY (Bar No. 129049) |
| 14 | dorian.daley@oracle.com |
| | DEBORAH K. MILLER (Bar No. 95527) |
| 15 | deborah.miller@oracle.com |
| | MATTHEW M. SARBORARIA (Bar No. 211600) |
| 16 | matthew.sarboraria@oracle.com |
| | 500 Oracle Parkway, Redwood City, CA 94065 |
| 17 | Telephone: (650) 506-5200 / Facsimile: (650) 506-7114 |
| 18 | *Attorneys for Plaintiff* |
| | ORACLE AMERICA, INC. |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| Plaintiff, | **ORACLE AMERICA INC.'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORTS OF GREGORY K. LEONARD AND ALAN J. COX** |
| v. | |
| GOOGLE, INC. | Dept.: Courtroom 8, 19th Floor |
| Defendant. | Judge: Honorable William H. Alsup |

ORACLE'S MOTION TO EXCLUDE PORTIONS OF LEONARD AND COX
CASE NO. CV 10-03561 WHA

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

STANDARD OF REVIEW ............................................................................................................. 3

ARGUMENT ................................................................................................................................... 4

    I.    Leonard's and Cox's Technical Opinions That Google Had "Good" And "Multiple Acceptable And Effective Non-Infringing Alternatives" Do Not Meet The Standards Established For Expert Testimony And Should Be Stricken. .................................................................................................................. 4

        A.    Leonard and Cox Are Not Qualified To Provide Technical Opinions Concerning Google's Non-Infringing Alternatives And Other Technical Matters. ............................................................................. 4

        B.    Leonard's and Cox's Opinions Are Overwhelmingly Based On Spoon-Fed Interview Statements By Google Employees ................................ 6

        C.    The Interviews on Which Drs. Leonard and Cox Rely Are Inconsistent With The Record Evidence .............................................................. 8

        D.    Drs. Leonard and Cox Offer Opinions Unsupported By Any Evidence At All ........................................................................................... 9

    II.    Leonard And Cox Have No Experience, Skill, Or Qualifications That Would Permit Them To Testify As To The Level Of Fragmentation Or "Stagnation" In Java. ........................................................................................... 11

    III.    Leonard And Cox Offer Opinions Based On Incorrect Legal Assumptions. ............................................................................................... 12

    IV.    Leonard Lacks The Knowledge And Expertise To Offer Any Opinions Critical Of The Conjoint Survey. ..................................................... 13

CONCLUSION .............................................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES**

*AT&T Wireless Services of California LLC v. City of Carlsbad*,
308 F.Supp.2d 1148 (S.D. Cal. 2003) .................................................................................. 12

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998) ............................................................................................. 14

*Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*,
55 F.Supp.2d 1024 (N.D. Cal. 1999) .................................................................................. 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 578 (1993) ....................................................................................................... passim

*DSU Medical Corp. v. JMS Co., Ltd.*,
296 F.Supp.2d 1140 (N.D. Cal 2003) ................................................................................... 3

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ............................................................................................................ 10

*Geo. M. Martin Co. v. Alliance Machine Systems Int'l, LLC*,
2008 WL 2008638 (N.D. Cal. May 6, 2008) ........................................................................ 6

*Integra Lifesciences, Ltd. v. Merck KGaA*,
331 F.3d 860 (Fed. Cir. 2003) ............................................................................................... 3

*Kilgore v. Carson Pirie Holdings, Inc.*,
2006 WL 3253490 (6th Cir.) ............................................................................................... 11

*Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996) ................................................................................................... 4

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
290 F. Supp. 2d 1083 (C.D. Cal. 2003) .............................................................................. 12

*Nuveen*,
262 Fed. Appx. at 824-25 .................................................................................................... 11

*Polar Bear Prods, Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ............................................................................................... 13

*Rambus Inc. v. Hynix Semiconductor Inc.*,
254 F.R.D. 597 (N.D. Cal. 2008) .......................................................................................... 6

*Riles*,
298 F.3d at 1311 .................................................................................................................... 9

*Robinson v. G.D. Searle & Co.*,
  286 F. Supp. 2d 1216 (N.D. Cal. 2003) ...................................................................................... 9

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ................................................................................................ 13

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008) ................................................................................................ 5

*Therasense, Inc. v. Becton, Dickinson and Co.*,
  2008 WL 2323856 (N.D. Cal. May 22, 2008) .............................................................. 2, 6, 8, 9

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ............................................................................................ 3, 8

*Wal-Mart Stores, Inc. v. Qore, Inc.*
  2009 WL 279096 (N.D. Miss. Feb. 5, 2009) ........................................................................... 12

**STATUTES**

17 U.S.C. § 504(b) ........................................................................................................................ 13

**RULES**

FED. R. EVID. 702 .................................................................................................................. passim

FED. R. EVID. 703 ........................................................................................................... 1, 3, 6, 11

FED. R. EVID. 401 ......................................................................................................................... 1

FED. R. EVID. 402 ......................................................................................................................... 1

FED. R. EVID. 403 ......................................................................................................................... 1

Plaintiff Oracle America, Inc. moves to strike significant portions of the expert reports of Dr. Gregory K. Leonard and Dr. Alan J. Cox, damages experts for Defendant Google, Inc. Those Reports, fail to meet the standards for expert opinion and testimony established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 578 (1993) and as set forth in Federal Rules of Evidence 401, 402, 403, 702, and 703.

**INTRODUCTION**

On October 3, 2011 Google served the damages expert reports of Professor Leonard (patent) and Professor Cox (copyright). (Declaration of Meredith Dearborn ("Dearborn Decl.") at Ex. 1 (Leonard Report); Ex. 2 (Cox Report).) Dr. Cox's report incorporates Dr. Leonard's report in its entirety, and the two reports contain numerous passages that are identical. Dr. Leonard opines that Oracle is entitled to a reasonable royalty of $27.8 million for Google's infringement of its patents. Using the same evidence, Dr. Cox opines that an appropriate award to Oracle for copyright infringement would be $6.2 million under the theory of lost fair market value license or $21.1 million based on purportedly comparable licenses that Sun had with Danger and handset manufacturers. Drs. Leonard and Cox reach these conclusions by adopting essentially the same framework for calculation of damages used by Oracle's damages expert, Prof. Cockburn, but adjusting downward because, in their opinions, Google had non-infringing alternatives to the patented and copyrighted elements, and any injury to Sun and Java was actually lessened by Google's infringement restoring order to a "highly fragmented" Java mobile platform. Neither of these "opinions" is admissible.

*First*, Drs. Leonard and Cox, both economists with no technical expertise, offer extensive opinions that Google had "multiple acceptable and effective non-infringing alternatives" to each of the Java patents and the copyrights in suit. (Leonard Report, 10-31, 74-78, 80; Cox Report, 23-27, 61.) These opinions purport to assess the technical and performance attributes of the asserted alternatives, not their business implications. In large measure, as discussed below, they are based on Drs. Leonard's and Cox's own say-so and last-minute interviews with Google employees. Even where they refer to Google's technical experts, Drs. Leonard and Cox do not merely adopt the opinions of those experts; they go further to affirmatively assert that Oracle's technical expert is wrong on technical matters. Neither Dr. Cox nor Dr. Leonard is competent to offer such opinions. Neither should be permitted to

1

ORACLE'S MOTION TO EXCLUDE PORTIONS OF LEONARD AND COX
CASE NO. CV 10-03561 WHA

testify about purported non-infringing alternatives or base any economic analysis on their purported assessment of the presence of such alternatives.

*Second*, Drs. Leonard and Cox fail to tie their damages opinions – including but not limited to their core opinions regarding supposed non-infringing alternatives – to the contemporaneous evidence or even the sworn testimony of witnesses. Instead, Drs. Leonard and Cox rely extensively on interviews with Google employees arranged only after Prof. Cockburn had submitted his amended damages report. Indeed, Dr. Leonard cites a grand total of *14* Google documents, compared to *66* citations to interviews. Dr. Cox cites only *18* Google documents (mostly the same ones Dr. Leonard cites) but *44* interview references.

Analyses based on spoon-fed "facts" are inherently unreliable. *See Therasense, Inc. v. Becton, Dickinson and Co.,* 2008 WL 2323856, *1-3 (N.D. Cal. May 22, 2008) (Alsup, J.). But these opinions are doubly unreliable because many of the supposed "facts" Drs. Leonard and Cox glean from the interviews are contradicted by the contemporaneous record evidence. In many cases what the interviewees supposedly said contradicts documents those very witnesses wrote. On still other factual matters, Drs. Leonard and Cox cite to no evidence at all – they just say so. The failure to use reliable, contemporaneous evidence, and instead substitute *ex post* interview statements and the experts' own invented facts render the reports unreliable and inconsistent with the standards of *Daubert* and the Rules of Evidence. Each and every proposition in the reports that rests solely on interview statements or *ipse dixit* should be stricken, and Drs. Leonard and Cox should be precluded from providing trial testimony regarding or based on such points.

*Third,* Drs. Leonard and Cox opine – based, yet again, on interviews and web searches – that Java was already "heavily fragmented" or "stagnant" before Google's infringement began. Neither Dr. Leonard nor Dr. Cox applies any standard or metric, scientific or otherwise, to measure the level of supposed pre-existing fragmentation. Neither has any training, experience, or expertise that would allow him to testify competently as to the level of fragmentation in a software standard or the extent to which it is vital and dynamic, as opposed to "stagnant." Consequently, their opinions regarding the supposed fragmentation of Java, and the impact of such fragmentation on any hypothetical negotiation between the parties or any Sun or Oracle lost profits, should be stricken and excluded at trial.

*Fourth*, Drs. Leonard and Cox both offer opinions that are contrary to law. Dr. Leonard argues that Oracle's patent damages should be reduced for failure to mitigate damages, despite the fact Google pled no such defense, and it has sought no jury instruction for such a defense. Dr. Cox opines that Google's liability for infringer's profits should be reduced if Google had non-infringing alternatives to the Java copyrights, contrary to the very principle of disgorgement.

*Fifth*, Dr. Leonard ventures beyond his expertise to critique the scientific analysis – a conjoint survey – conducted by Dr. Steven Shugan. Dr. Shugan is an expert in using surveys and sophisticated statistical methods to assess consumer preferences. Dr. Leonard is not. As explained in Dr. Shugan's accompanying declaration, Dr. Leonard is unfamiliar with the relevant literature, cites articles for propositions they do not contain or actually reject, advocates methodologies that are novel and untested in place of the established and reliable techniques used by Dr. Shugan, and misapplies basic terms and concepts that would be familiar to anyone with actual expertise in the field. The entirety of Dr. Leonard's report regarding conjoint analysis should be stricken. Dr. Leonard should be precluded from offering testimony regarding Dr. Shugan's work, Dr. Cockburn's reliance on it, or conjoint analysis more generally.

## STANDARD OF REVIEW

A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if the testimony is based on sufficient facts or data. *See* FED. R. EVID. 702. Expert opinion based on methodologies that are scientifically unreliable and on data upon which no reasonable expert would rely is inadmissible. *See* FED. R. EVID. 702, 703; *see also DSU Medical Corp. v. JMS Co., Ltd.*, 296 F.Supp.2d 1140, 1156 (N.D. Cal 2003) ("There is a threshold issue of admissibility, however, requiring the Court to examine the connection between the opinion proffered and the reconstructed market data."). A damages expert, in particular, must sufficiently "tie the expert testimony on damages to the facts of the case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (citing *Daubert*) (internal punctuation marks omitted); *Integra Lifesciences, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003) ("although an exercise in approximation," the hypothetical negotiation analysis "must be based on sound economic and factual predicates"); *vacated on other grounds*, 545 U.S. 193 (2005).

Because expert testimony can "be both powerful and misleading, the Supreme Court emphasized the "gatekeeping responsibility" federal judges have over the admission of expert testimony. *Daubert*, 509 U.S. at 595, 597. As the proponent of the expert, Google has the burden of proving admissibility. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## ARGUMENT

### I. Leonard's and Cox's Technical Opinions That Google Had "Good" And "Multiple Acceptable And Effective Non-Infringing Alternatives" Do Not Meet The Standards Established For Expert Testimony And Should Be Stricken.

A core premise for both Dr. Leonard and Dr. Cox is that Google had good and acceptable non-infringing alternatives to the Java patents and copyrights in suit. Drs. Leonard and Cox have neither the qualifications nor the record support to proffer opinions on the technical subject of non-infringing alternatives. They base those opinions on their own unqualified assertions and undocumented interviews that occurred after Prof. Cockburn submitted his amended report.

#### A. Leonard and Cox Are Not Qualified To Provide Technical Opinions Concerning Google's Non-Infringing Alternatives And Other Technical Matters.

"A witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data . . . ." FED. R. EVID. 702. Drs. Leonard's and Cox's opinions that Google had "good" and "multiple acceptable and effective" non-infringing alternatives to the patents and copyrights in suit (Leonard Report, 10-31, 74-78, 80; Cox Report, 23-27, 61), and that Oracle's technical expert, Dr. Mitchell, is wrong about alternatives (Leonard Report, 27-29), fail this test.

Dr. Leonard holds a Bachelor of Science in Applied Mathematics-Economics and a Doctorate in Economics. (Leonard Report, App'x A.) Dr. Cox holds a Masters degree in Economics and a Doctorate in Business Administration. (Cox Report, App'x A.) Neither has any experience with or training in computer science or other technical fields.

Nonetheless, Dr. Leonard offers extensive technical opinions, including that:

- ███████████████████████████████████████ Leonard Report, 11-13 (citing interviews and a blog, but no technical experts));
- ███████████████████████████████████████ (*id.*, 13-19 (primarily citing "interviews" and only one Google-produced document));

4
ORACLE'S MOTION TO EXCLUDE PORTIONS OF LEONARD AND COX
CASE NO. CV 10-03561 WHA

- ███████████████████████████████████████ without Oracle's patents (*id.*,20-24 (citing interviews in 20 out of 30 footnotes, and no Google documents)); and
- ███████████████████████████████████████████████████████████████████████████████████ (*id.*,28).

Where Drs. Leonard and Cox occasionally cite to Google's technical experts concerning non-infringing alternatives, their opinions extend beyond what they cite. For example, Dr. Leonard opines that C++ "would have had certain advantages" over choosing Java. (*Id.*,14.) However, only one of the purported advantages that Dr. Leonard lists is attributable to Google's technical experts. (*Id.*, 14 n.31.) Similarly, while Dr. Leonard cites to Google's technical expert in opining that the functionality provided by the '520 patent could have been removed (*Id.*,20 n.56, n.57, n.59), he has no citation to that expert for his conclusion that "Google could have not included this functionality without any performance loss for Android that was noticeable to end users" (*id.*, 20). And in discussing the '720 patent, Leonard cites to Google's technical expert to state that "[i]t is trivial to remove this functionality," but fails to cite to any technical expert for his opinion that a non-infringing alternative was the removal of the Zygote process that uses that functionality. (*Id.*, 23.)

In all, his assessment of supposed non-infringing alternatives leads Dr. Leonard to conclude that "Google would not have been willing to pay much of a royalty to obtain a license to the patents-in-suit." (*Id.* 18.) Dr. Cox incorporates Dr. Leonard's opinions into his report and also independently opines that Google could have used a programming language other than Java and hence relied upon different patents and copyrights. (Cox Report, 23.)

Neither Dr. Leonard nor Dr. Cox is "qualified as an expert" in computer science or programming, and neither can "assist the trier of fact to understand the evidence or to determine a fact in issue." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364-65 (Fed. Cir. 2008) ("Allowing a patent law expert without any technical expertise to testify on the issues of infringement and validity amounts to nothing more than advocacy from the witness stand.") Technical opinions proffered by either expert are unreliable and cannot be presented to the jury. To qualify as an expert on technical issues such as infringement or validity, a witness must be a person "of an ordinary skill in the art.") *Id. at* 1361; *see also Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 603-05 (N.D.

Cal. 2008) (expert with 33 years experience in electrical engineering and semiconductor design precluded from providing certain opinions about commercial success).

### B. Leonard's and Cox's Opinions Are Overwhelmingly Based On Spoon-Fed Interview Statements By Google Employees

Rule of Evidence 703 permits an expert to offer opinion testimony based on materials of a type reasonably relied on by experts in a given field. In *Therasense*, this Court warned: "One of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion." 2008 WL 2323856, at *1; *see also Geo. M. Martin Co. v. Alliance Machine Systems Int'l, LLC*, 2008 WL 2008638, at *1 (N.D. Cal. May 6, 2008) (Alsup, J.) ("Important factual points should not be proven through experts spoon-fed by wholly biased sources."). Drs. Leonard and Cox are guilty of this abuse. Unable to find adequate support for their opinions in the reports and testimony of Google's technical experts or in record evidence, they rely primarily on interviews with Google employees conducted the week prior to service of the Reports and after the conclusion of fact depositions. In over 25 pages of purported analysis regarding non-infringing alternatives (Leonard, 10-31, 74-78, 80), Dr. Leonard cites interviews with Google employees 56 times; he cites precisely *2* Google documents. Similarly, in over 5 pages of discussion (Cox Report, 23-27, 61), Dr. Cox cites interviews 24 times, and *zero* contemporaneous documents.

Such heavy reliance on interviews, to the near exclusion of the record evidence, eliminates the reliability of Drs. Leonard's or Cox's technical opinions that Google supposedly had non-infringing alternatives. Permitting such testimony would improperly allow Google to circumvent the hearsay rules by filtering supposed facts through experts, while simultaneously keeping the facts secret from the other side until after the close of discovery. *Therasense*, 2008 WL 2323856, at *1. That is precisely what Google has done. Over and over again, Google's damages experts rely only on interviews for critical propositions. As just a few examples of many, Dr. Leonard:

- cites *only* an interview with Android engineer Dan Bornstein to opine that [redacted] (Leonard, 12)

- cites *only* interviews with Google employees Tim Bray and Brian Swetland for the double hearsay assertion that ███████████████████████████████████████ (*Id.* at 14);
- cites *only* interviews with Google employees Andy Rubin, Bornstein, and Swetland to opine tha ███████████████████████████████████████ (*Id.* at 18);
- cites *only* interviews with Bray to opine tha ███████████████████████████████████████ (*Id.* at 26);
- cites *only* an interview with Bornstein to opine that Google had ███████████████████████████████████████ (*Id.* at 27);
- cites *only* an interview with Rubin to opine that OEMs ███████████████████████████████████████ *Id.* at 30.)

Similarly, Dr. Cox relies almost exclusively on interviews with Google employees for his opinion regarding non-infringing alternatives, citing to interviews 24 times, 14 of which serve as the sole source for his stated opinion. For example, Dr. Cox

- cites *only* an interview with Bray to opine that the choice of the Java language has imposed ███████████████████████████████████████ (Cox Report, 22-23);
- cites *only* interviews with Bray and Swetland to opine that ███████████████████████████████████████ (*Id.*, 25);
- cites *only* interviews with Rubin, Bornstein, and Swetland to opine ███████████████████████████████████████ *d.*, 61.)

Opinions such as these – based on interview testimony without sufficient factual predicate – do not meet the established standard for expert testimony, are unreliable, and must be stricken.

### C. The Interviews on Which Drs. Leonard and Cox Rely Are Inconsistent With The Record Evidence

Compounding the problem inherent in its experts' extensive reliance on interviews, Google has refused to make available five of the seven interviewees even for limited two-hour depositions regarding the interviews, all of which took place well after the close of fact discovery. (Dearborn Decl. Ex. 3.)_ But even such depositions could not cure the defect in the Reports, because the spoon-fed "facts" culled from these interviews – in many cases the *only* evidence cited for critical propositions – contradict the record evidence, virtually all of which Drs. Leonard and Cox ignore. Consequently, Drs. Cox and Leonard fail to "sufficiently tie the expert testimony on damages to the facts of the case." *Uniloc*, 632 F.3d at 1315.

The incurable problem with this practice occurs when the expert is permitted to regurgitate what he has been fed as though it were, *contrary to fact*, the product of his independent analysis of an objective record. As this Court has held, "no professional should reasonably rely on such a rigged and biased source of information for any materially important fact to his or her opinion." *Therasense,* 2008 WL 2323856, at *2. Drs. Leonard and Cox have gone one step further, relying on the "rigged and biased source of information" *to the exclusion* of the record evidence. To list just a few examples:

- Drs. Leonard and Cox opine that C++ was a viable alternative to the Java programming language, citing to interviews with Andy Rubin, Dan Bornstein, and Brian Swetland. (Leonard Report at 13; Cox Report at 24), But they ignore that in October 2005 ███████████ ███████████ (Dearborn Decl. Ex. 4 (GOOGLE-01-00019527)) ███████████ ███████████ (Dearborn Decl. Ex. 5 (GOOGLE-01-00019511)); ███████████ earborn Decl. Ex. 6 (GOOGLE-01-00075935).

- Dr. Leonard states, citing to his interview of Andy Rubin, that in the late 2005 time frame, Google was considering both the native compiler approach and the virtual machine approach, and it was a close call for Google as to which direction to take (Leonard Report at 11), but he ignores documents that – as early as August 2005 – made clear that ███████████ ███████████ ███████████ (Dearborn Decl. Ex. 8 (GOOGLE-04-00055169).)

8
ORACLE'S MOTION TO EXCLUDE PORTIONS OF LEONARD AND COX
CASE NO. CV 10-03561 WHA

- Dr. Cox states that "From my conversations with Mr. Rubin and other Google employees, it is clear that they believe that it would have been as easy for Google to use other programming languages to develop the Android architecture and that there was a very large community of programmers able to write applications in those alternative languages" (Cox Report at 20), but completely ignores documents such as the October 2005 internal e-mail in which Mr. Rubin told Google co-founder and current CEO Mr. Page that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dearborn Decl. Ex. 4 (GOOGLE-01-00019527).)

The spoon-fed "facts" obtained during interviews conducted days prior to the service of the Reports which are contradicted by contemporaneous record evidence are not "sufficient facts or data" as required by Rule 702, nor do they form an adequate "factual predicate" as required by the Federal Circuit. *See Riles*, 298 F.3d at 1311; *Therasense,* 2008 WL 2323856, at *1-2; *Robinson v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216, 1221 (N.D. Cal. 2003) (expert's testimony inadmissible when based on factual premise directly contradicted by evidence on the record).

Moreover, the "facts" on which Drs. Leonard and Cox rely as to non-infringing alternatives are materially important to their damages analyses. Dr. Leonard relies heavily on the alleged availability of non-infringing alternatives to Google in concluding that Sun's bargaining position was weak and Google's was strong (Leonard Report at 10, 44) and as a rationale for downward or neutral pressure from *Georgia-Pacific* factors 6, 7, 8, 9,11, 13 (*id.* at 68-71) in his patent damages analysis. Dr. Cox relies on alleged alternatives to conclude that copyright damages should be zero (Cox Report at 27, 61); to assert that the "'element of profit' that is attributable to the allegedly infringed API claim contained in the Android framework is very small or zero" (*id.* at 38); to explain why Google was unwilling to enter into a license with Sun (*id.*); to determine that Sun could not have prevented any losses by denying a license to Google (*id.* at 48); and as a significant factor in his hypothetical negotiation analysis (*id.* at 60-61).

Each aspect of the reports relying on assessments of non-infringing alternatives should be stricken and Drs. Leonard and Cox should be precluded from offering opinions at trial based on the conclusion that Google had non-infringing alternatives to the copyrights and patents in suit.

**D. Drs. Leonard and Cox Offer Opinions Unsupported By Any Evidence At All**

In many cases, Drs. Leonard and Cox cite no evidence at all for key propositions. For example, Dr. Leonard states that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Leonard Report at 12), that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*id.* at 15), that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*id.* at 25), and that smartphone manufacturers ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* at 30.) In each case, Dr. Leonard cites *nothing* in support of the proposition.

Such reliance on *ipse dixit* is impermissible. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."); *Daubert,* 509 U.S. at 590 (expert testimony must connote "more than subjective belief or unsupported speculation"). This is particularly true where the *ipse dixit* is not within the expert's area of expertise, as with Dr. Leonard's opinions about native compilers, attractiveness of programming languages, and the importance of application speed.

Many of Dr. Cox's opinions suffer from the same defect. Without citation, he speculates that "it was not until handset manufacturers such as Motorola and Samsung decided to design and market Android handsets that Android became successful" (Cox Report at 26) and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*) Without citation, he opines that the APIs at issue contribute a small part of the functionality of the Dalvik VM. Without citation, he states that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* at 28). Without citation, he declares that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*) Dr. Cox then uses this unsupported assertion to support his claim ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and thus a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* at 28) These unsupported, *ipse dixit* propositions render Dr. Cox's analysis of supposed non-infringing alternatives unreliable and inadmissible.

## II. Leonard And Cox Have No Experience, Skill, Or Qualifications That Would Permit Them To Testify As To The Level Of Fragmentation Or "Stagnation" In Java.

In near-verbatim sections of their respective reports, Drs. Leonard and Cox each opine that Sun did not suffer significant losses from the deployment of Android because Java was already "stagnant" and "highly fragmented" at the time of Android's launch (Leonard Report at 31-37; Cox Report at 43-48). Drs. Leonard and Cox have no expertise that would allow them to offer these opinions. Fed. R. Evid. 702. Instead, they rely heavily on an interview with John Rizzo (Leonard Report at 35-36; Cox Report at 47), internet blog posts and random comments on internet bulletin boards (Leonard Report at 35-36; Cox Report at 44, 46-48), and "various online sources" (Leonard Report at 35; Cox Report at 47),[1] but ignore record evidence, including Google documents that extol the virtues of Java technology based on its minimal fragmentation. For example, a document written by one of the interviewees himself in April 2006 made clear:

(Dearborn Decl. Ex. 9 (GOOGLE-02-00111218).)

Similarly, Drs. Leonard and Cox completely ignore documents that show that Sun fought to ensure compatibility, including in the license agreement that was being negotiated between Sun and Google. (Dearborn Decl. Ex. 4 (GOOGLE-01-00019527 at 528) .)

In short, both Dr. Leonard and Dr. Cox fail to rely on facts or data customarily relied upon by experts in the field. FED. R. EVID. 703; *Nuveen*, 262 Fed. Appx. at 824-25; *Kilgore v. Carson Pirie Holdings, Inc.*, 2006 WL 3253490, at *4 (6th Cir.) (internet article an unreliable basis for methodology where expert did not know on what methodology the article was based and conducted no independent research); *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1086 (C.D.

---

[1] Both also repeatedly cite a YouTube video of James Gosling speaking on November 17, 2010 – three months after this lawsuit was filed – and falsely refer to him as a "then Sun employee," when he in fact he had left Sun seven months earlier. (Leonard Report, 35-36; Cox Report, 47-48).

Cal. 2003) (expert reports "irrelevant" where they "merely recite hearsay statements, often verbatim, culled from a variety of Internet websites").

Moreover, Drs. Leonard and Cox neither attempt to define "stagnant" or "fragmented" nor apply any methodology, scientific or otherwise, that would distinguish between "stagnant" and "dynamic" software platforms, or between "highly fragmented" and "minimally fragmented" ones. Expert opinions that neither employ nor can be evaluated against objective criteria do not meet the threshold standard of admissibility. *AT&T Wireless Servs. of Cali. LLC v. City of Carlsbad*, 308 F.Supp.2d 1148, 1157 (S.D. Cal. 2003); *see also Daubert*, 509 U.S. at 593 ("Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested."). As one court held:

> *Daubert's* gatekeeping function is specifically designed to keep standardless testimony out of evidence. Majors opines on a variety of subjects, but he offers no guide as to where his conclusions came from or how one might judge the value of those conclusions. Operating in a standardless world allows Majors to get on the stand and make any assertion he chooses without regard for the truth. There is no way to judge those who operate without bounds. It is unfair to put a jury in the position of having to try.

*Wal-Mart Stores, Inc. v. Qore, Inc.*, 2009 WL 279096, *2 (N.D. Miss. Feb. 5, 2009). Drs. Leonard's and Cox's standardless opinions on "stagnation" and "fragmentation" fare no better.

### III. Leonard And Cox Offer Opinions Based On Incorrect Legal Assumptions.

Prof. Cockburn made an upward adjustment to the starting point license to account for Sun's expectation of revenue from providing implementations for a compatible Android. Dr. Leonard opines that this adjustment should be "zero" because Sun "could have mitigated" the loss of that opportunity (Leonard Report at 83; *see also id.* at 84 n.278.) But Google pleaded no mitigation defense and it has not offered any jury instruction on mitigation. Google should not be able to plead a defense it has never once raised by offering an opinion through its expert.

Dr. Cox's discussion of infringer's profits also rests on an error of law. Dr. Cox argues that infringer's profits should be "very small or zero" because Google supposedly had non-infringing alternatives to the APIs and code files that it infringed. (Cox Report, 38). That is wrong. A prevailing plaintiff in a copyright case is entitled to recover the infringer's profits attributable to the infringement,

12
ORACLE'S MOTION TO EXCLUDE PORTIONS OF LEONARD AND COX
CASE NO. CV 10-03561 WHA

to the extent not captured by actual damages. 17 U.S.C. § 504(b). The defendant is not permitted to avoid disgorgement by arguing that it would have been able to earn those same profits without infringing. To allow such a result would undermine the purpose of infringer's profits, which requires simple disgorgement in order "[t]o take away incentives for would-be infringers and to prevent the infringer from unfairly benefitting from a wrongful act." *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (citations and quotations omitted).

## IV. Leonard Lacks The Knowledge And Expertise To Offer Any Opinions Critical Of The Conjoint Survey.

In analyzing apportionment, Oracle's damages expert Prof. Cockburn worked with an expert in conjoint marketing surveys, Dr. Steven M. Shugan, to conduct a survey and assess the importance to consumers of the attributes provided by the patents and copyrights in suit. Dr. Leonard, offering absolutely no affirmative apportionment analysis of his own, tries to critique the conjoint analysis and claims that it cannot be used to calculate damages, but his attack shows only that he lacks the necessary expertise. Dr. Shugan, who actually *is* an expert in survey-based research methods and statistical analyses of their results, has submitted a declaration detailing the ways in which Dr. Leonard's analysis is inexpert, incorrect, and unreliable. (Declaration of Steven M. Shugan ("Shugan Decl.").)

Dr. Leonard begins with an inappropriate bias against survey-based research that cannot be reconciled with its proven and accepted use in courts, academia, and business. (Compare Leonard Report at 109 (characterizing survey-based methods as "controversial") *with Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997) (holding that "survey evidence should ordinarily be found sufficiently reliable under *Daubert*").) Given his hostility toward survey-based research, it is perhaps unsurprising that he demonstrates little familiarity with its literature, methods, research, and principles. Specifically,

- Dr. Leonard asserts that there are "established results in the literature demonstrating hypothetical bias in conjoint studies" (Leonard Report at 111 fn.340). In fact, there are not. The literature establishes that hypothetical bias is irrelevant with established consumer products, such as smartphones, and is a factor only in the context of abstract goods, such as environmental clean-up. (Shugan Decl. ¶¶ 10, 12.)

- Dr. Leonard cites articles from the consumer behavior and psychological literature for propositions that they do not contain. (*Id.* ¶ 13).

13

ORACLE'S MOTION TO EXCLUDE PORTIONS OF LEONARD AND COX
CASE NO. CV 10-03561 WHA

- Dr. Leonard cites articles from the consumer behavior and psychological literature for propositions that they actually ***reject***. (*Id.* ¶ 14.)

- Dr. Leonard ignores the fact that even the articles that he himself cites recognize that conjoint analysis methods and related choice-based survey methods are routine, reliable, and based on years of research. (*Id.* ¶ 15.)

- Dr. Leonard misinterprets the work of Prof. Min Ding on hypothetical bias as a critique of conjoint analysis and as indicating that Dr. Shugan's research is inaccurate. In fact, Prof. Ding ***affirms*** the reliability of conjoint analysis. If Prof. Ding's analyses were relevant, they would establish that Dr. Shugan's conclusions are conservative. (*Id.* ¶¶ 16-19.)

- Dr. Leonard's challenge to the conjoint survey is based on his mistaken belief that the conjoint survey is a "stated preference survey." It is not. Anyone with expertise in the field would know the difference between conjoint analysis and stated preference surveys, and would further know that the problems with stated preference surveys cited by Dr. Leonard do not apply to conjoint analysis. (*Id.* ¶¶ 20-21.)

- Dr. Leonard incorrectly assumes that consumers will always choose a lower price if other attributes are held constant, despite extensive literature demonstrating that this is not so, and explaining why. (*Id.* ¶ 22.)

- Dr. Leonard mischaracterizes standard robustness measures for conjoint analysis, such as $U^2$ and hit rate, as "tests" for "hypothetical bias." (*Id.* ¶ 24.)

In short, Dr. Leonard's discussion of the conjoint analysis (1) "fails to understand or apply the basic principles that are accepted in the field of survey-based research" (Shugan Decl. ¶ 8); (2) "suffers from sufficient ambiguities, errors and misrepresentations that any submitted article based on that analysis would not survive a peer-review process of a scholarly journal" (*id.*); and (3) "reveal a fundamental lack of understanding of choice-based-conjoint or statistical analyses" (*id.* ¶ 25). *See Daubert*, 509 U.S. at 593-94 (emphasizing importance of peer review standards); *Cabrera v. Cordis Corp.*, 134 F.3d 1418 (9th Cir. 1998) (expert testimony unreliable because it was specifically prepared for trial and had no support in medical literature); *Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55 F.Supp.2d 1024, 1032-33 (N.D. Cal. 1999) (exclusion of expert testimony upon finding that studies relied upon were not sufficient individually or in combination to support expert's opinion).

## CONCLUSION

For the aforementioned reasons, Oracle respectfully requests that the Court strike those portions of the Leonard and Cox reports relating to, and preclude Drs. Cox or Leonard from offering opinions as to (1) whether Google had acceptable non-infringing alternatives to the patents- and copyrights-in-suit; (2) whether Java was fragmented at the time of the hypothetical negotiation; (3) whether Android causes

fragmentation of Java; (4) whether Prof. Shugan's survey and conjoint analysis is unreliable; (5) the impact of mitigation on damages; (6) the effect on copyright infringer's profits damages of the presence or absence of non-infringing alternatives; and (6) any matter that either Dr. Cox or Dr. Leonard learned only through an interview.   A proposed order consistent with the foregoing is submitted herewith.

Dated: October 21, 2011                                   BOIES, SCHILLER & FLEXNER LLP

By: */s/ Steven C. Holtzman*
    Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.