MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax)

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>             Plaintiff,<br><br>      v.<br><br>GOOGLE, INC.<br><br>             Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA INC.'S RESPONSIVE SUPPLEMENTAL BRIEF IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE PORTIONS OF COCKBURN REPORT ON DAMAGES**<br><br>Dept.:  Courtroom 8, 19th Floor<br>Judge:  The Honorable William Alsup |

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

    A.    Prof. Cockburn's Apportionment Analysis Is Legally and Factually Correct ................................................................................................................ 3

    B.    Prof. Cockburn's Upward Adjustment Based On Sun's Loss Of Compatibility And Control Is Warranted Under the Facts And The Law ................... 8

    C.    Cockburn's Calculation Of A Hypothetical License Damages Award For Google's Copyright Infringement Is Valid And Supported ........................................ 14

    D.    Cockburn's Calculation Of Patent Damages By Features And Calculation Of Copyright Damages Without Any Individual Copyright Breakdown Is Appropriate .................................................................................................. 15

    E.    There Is No Reason To Bar Dr. Cockburn From Testifying About Other Relevant Licenses And Settlements, Including The Sun v. Microsoft Agreements .............................................................................................. 17

CONCLUSION ................................................................................................................. 19

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

ORACLE'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 3
CASE NO. CV 10-03561 WHA

# TABLE OF AUTHORITIES

### CASES

*Cf. Cornell Univ. v. Hewlett-Packard Co.*,
    609 F. Supp. 2d 279 (N.D.N.Y. 2009) ........................................................................ 17

*Finjan Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) ................................................................................. 5

*Function Media, L.L.C. v. Google Inc.*,
    No. 2:07-CV-279-CE, 2010 WL 272409 (E.D. Tex. Jan. 15, 2010) ........................ 5, 16

*Garretson v. Clark*,
    111 U.S. 120 (1884) .................................................................................................. 4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................................................ 4, 9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ............................................................................................. 10

*ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*,
    249 F. Supp. 2d 622, *amended*, 268 F. Supp. 2d 448 (E.D. Pa. 2003) ...................... 11

*Interactive Pictures Corp. v. Infinite Pictures, Inc*,
    274 F.3d 1371 (Fed. Cir. 2009) ......................................................................... 9, 10, 13

*Lucent Techs, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ........................................................................... 10, 18

*Medtronic, Inc. v. Boston Scientific Corp.*,
    Civ. No. 99-1035, 2002 WL 34447587 (D. Minn. Aug. 8, 2002) ........................ 5, 6, 7

Metallic Rubber Tire Co. v. Hartford Rubber Works Co.,
    275 F. 315 (2d Cir. 1921) ......................................................................................... 16

*Oracle USA, Inc. v. SAP AG*,
    No. C07-1658 PJH, at Dkt. No. 1088 .................................................................. 14, 15

*Panduit Corp. v. Stahlin Bros. Fibre Works*,
    575 F.3d 1152 (6th Cir. 1978) ......................................................................... 2, 9, 11

*Polar Bear Prods. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ................................................................................... 15

*ResQNet.com v. Lansa, Inc.*,
    594 F.3d 860 (Fed Cir. 2010) ............................................................................... 4, 18

ORACLE'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 3
CASE NO. CV 10-03561 WHA

*SEB S.A. v. Montgomery Ward & Co., Inc.*,
   594 F.3d 1360 (Fed. Cir. 2010) ................................................................................. 10

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
   862 F.2d 1564 (Fed. Cir. 1988) ................................................................................... 7

*TAS Distrib. Co. v. Cummins Engine Co.,
   Inc.*, 491 F.3d 625 (7th Cir. 2007) ............................................................................ 11

*TK-7 Corp. v. Estate of Barbouti*,
   993 F.2d 722 (10th Cir. 1993) .................................................................................... 11

*Trademark Research Corp. v. Maxwell Online, Inc.*,
   995 F.2d 326, 332 (2d Cir. 1993) ............................................................................... 11

*VS Techs., LLC v. Twitter, Inc.*,
   2:11CV43, 2011 WL 4744572 (E.D. Va. Oct. 5, 2011) ............................................. 16

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ................................................................................. 10

*Zenith Electronics Corp. v. WH-TV Broad. Corp.*,
   395 F.3d 416 (7th Cir. 2005) ...................................................................................... 11

**RULES**

Fed. Rules of Evid. 403 ....................................................................................................... 3

Fed. Rules of Evid. 701 ..................................................................................................... 11

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

ORACLE'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 3
CASE NO. CV 10-03561 WHA

Pursuant to the Court's September 27, 2011 order (Dkt. No. 470), Oracle submits this supplemental brief in opposition to Google's supplemental brief (Dkt. No. 549) regarding Google's motion *in limine* to exclude the testimony of Oracle's damages expert, Prof. Iain M. Cockburn.

## INTRODUCTION

Google's supplemental brief does not raise any additional arguments that warrant excluding or limiting Prof. Cockburn's testimony.  Although the Court directed that this round of briefing be "based on Dr. Cockburn's reply report and deposition" (Dkt. No. 470), nothing from Prof. Cockburn's reports replying to the opinions of Google's damages experts, Drs. Cox and Leonard, nor in Prof. Cockburn's October 17, 2011 deposition testimony provides any new basis for Google's *Daubert* challenge. Google simply restates and repackages it original arguments, cutting and pasting carefully selected snippets from Prof. Cockburn's deposition that, taken out of context and ignoring the rest of the testimony, it believes supports its original arguments.  The deposition taken as a whole confirms that Prof. Cockburn's analysis is based on a wealth of evidence, detailed economic analysis, and the methodology suggested by this Court, and therefore passes muster under *Daubert*.

*First*, Google argues that Prof. Cockburn's reasonably royalty calculations—for both patents and copyrights—should be excluded because Prof. Cockburn does not value all the intellectual property that is ***not*** in suit.  But Google cites no case that requires such an endeavor, particularly where the expert—as Prof. Cockburn does—provides a detailed, multifaceted analysis, (including econometric analysis, conjoint analysis, and consideration of numerous contemporaneous Google documents) of the demonstrated value of both the full package of intellectual property over which the parties were negotiating in 2006 and the specific intellectual property at issue.  Rather than address these issues in a *Daubert* motion, Google acknowledges Prof. Cockburn's exhaustive methods of valuing the intellectual property at issue in this case, but relegates to a footnote the weak rejoinder that it intends to challenge the scientific basis for these methods "at trial."  (Supp. Br. at 5 n. 1.)  Google neither attacks the reliability or scientific basis of Prof. Cockburn's valuation of the specific patents and copyrights at issue, nor provides any legal basis for its assertion that more is required.  In all respects, Prof. Cockburn's valuation analysis withstands Google's purported *Daubert* challenge.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

ORACLE'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 3
CASE NO. CV 10-03561 WHA

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

**Second**, Google again argues that Prof. Cockburn's analysis is flawed because he adjusts the hypothetical license to account for Sun's contemporaneous expectations for convoyed sales in the jointly controlled Android ecosystem without fulfilling the four-factor *Panduit* test for recovery under a lost profits measure. This argument is inconsistent with both the real-world considerations of the negotiating parties and the law governing patent and copyright damages. Unlike recovery of damages using a lost-profits measure, which is what the *Panduit* factors relate to, a reasonable royalty must be based on the parties' expectations at the time of the negotiation. Numerous Federal Circuit cases approve of using internal projections to calculate a reasonable royalty, and it is commonplace to use the patentee's expectation of convoyed sales as part of the reasonable royalty analysis as a whole, as Prof. Cockburn does. Google completely ignores the law governing recovery of a reasonable royalty based on a hypothetical negotiation, instead relying entirely on cases addressing the recovery of lost profits in contract, civil conspiracy, and antitrust cases. Those cases are all governed by different standards that are not, as the hypothetical license must be, based on the parties' reasonable expectations. Google's argument is baseless, and Prof. Cockburn's analysis is sound.

Google also again argues that Prof. Cockburn's upward adjustment to the "starting point" reasonable royalty should be stricken because it is supposedly based on a single, "unreliable" Sun business planning document. Google conveniently ignores that, with regard to the same upward adjustment, Google's own damages experts rely on a single document of their own (a license between Sun and a third party, Danger)—indeed, a distortion of that document. Google also ignores that Prof. Cockburn explained at deposition and in his report that the adjustment is based on far more than the one Sun document. But even putting those facts aside, Google fails to explain how or why reliance on a contemporaneous revenue projection, especially where it declined to take the author's deposition to even try to establish that those projections are unreliable, is problematic under *Daubert*. It is not.

**Third,** Google again argues that Prof. Cockburn's copyright hypothetical license calculations should be stricken because Google contends there are no comparable real-world licenses. Even though Oracle pointed out in its opposition that the only legal authority for Google's argument had been revised in a matter of weeks by its own author, Google persists in its faulty legal argument. Google's argument also fails as a matter of fact. Prof. Cockburn calculates the hypothetical lost copyright license

fee with reference **only** to real-world contemporaneous documents, not speculation or "subjective" evidence of the sort Google says is insufficient. (By contrast, Google's experts rely heavily on subjective interview evidence that reinvents history and contradicts documents written by those same interviewees in Google's own contemporaneous documents.) Prof. Cockburn quantifies those aspects of the hypothetical license that are objectively grounded in the parties' actual negotiations. There is neither a factual nor a legal basis for Google's attack.

**Fourth**, Google repeats its argument that Prof. Cockburn is required to assign value to each individual asserted claim of each patent and each portion of the copyright claim. Google failed to cite a single case that would establish this hyper-granular apportionment requirement in its opening brief, and it fails to do so again. Prof. Cockburn carefully evaluates each of the individual patented features at issue in this case. Google has not suggested that the opinions would be any different on a claim-by-claim basis, and provides no basis on which to exclude Prof. Cockburn's opinions.

**Fifth,** Google again argues that Prof. Cockburn should be barred from discussing certain other technology licenses, including the license entered into between Sun and Microsoft. Prof. Cockburn's treatment of the Sun-Microsoft dispute is correct under applicable legal principles and correct under the facts. Google does not make a *Daubert* argument so much as an argument under Rule 403, but the relevance of the Sun-Microsoft settlement far outweighs its prejudicial force. The jury should be able to decide what weight to give that agreement. Moreover, Google had the opportunity to file a motion *in limine* to exclude those agreements from evidence, and it declined. Google should not be able to shoehorn a second in limine motion into its *Daubert* motion.

Oracle respectfully requests that the Court deny Google's motion.

## ARGUMENT

### A. Prof. Cockburn's Apportionment Analysis Is Legally and Factually Correct

Google now focuses its *Daubert* challenge on its assertion that Prof. Cockburn's entire reasonable royalty analysis, for both patents and copyrights, should be stricken because Prof. Cockburn's opinion is limited to the value of the intellectual property **in suit** and he did not assign a value to intellectual property that is **not in suit**. (Supp. Br. at 1–6 ("Having no sense of the whole, he has no basis to opine on the value of any of the parts.").) This argument is meritless on its face. Prof.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1  Cockburn has a detailed, multifaceted "basis to opine on the value" of **precisely** the parts that are at

2  issue in this case—an analysis that, as the Court directed, starts from "the whole" and then specifically

3  apportions, based on econometric analysis and multiple contemporaneous data points, to value the

4  relevant parts: the patents and copyrights in suit.  Google's complaint that Prof. Cockburn somehow

5  committed an error by not assigning value to technology that is not claimed here has no basis in law or

6  reason.

7          The underlying legal principles are not new.  "When a patent is for an improvement, and not for

8  an entirely new machine or contrivance, the patentee must show in what particulars his improvement

9  has added to the usefulness of the machine or contrivance."  *Garretson v. Clark*, 111 U.S. 120, 121

10  (1884); *see also ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed Cir. 2010) ("the trial court must

11  carefully tie proof of damages to the claimed invention's footprint in the market place.") (citing cases).

12  The calculation of damages should consider the "portion of the realizable profit that should be credited

13  to the invention as distinguished from non-patented elements, the manufacturing process, business

14  risks, or significant features or improvements added by the infringer."  *Georgia-Pacific Corp. v. U.S.*

15  *Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

16          Professor Cockburn's analyses are consistent with these principles and the Court's order.  He

17  evaluates how the claimed intellectual property "added to the usefulness" of the infringing Android

18  devices and what portion of the starting point should be "credited to the invention."  (*See* Dkt. No. 230

19  (July 22, 2011 *Daubert* order) at 9 ("we must ultimately isolate the infringing features' contribution").)

20  He does this by considering (a) contemporaneous Google documents discussing the importance of the

21  functionality provided by the patents and copyrights in suit, (b) benchmarking analyses that measure the

22  precise performance enhancements contributed by the patents in suit, (c) an econometric analysis

23  measuring consumers' willingness to pay for the patented enhancements and the value of the large

24  number of applications facilitated by the use of the copyrighted Java APIs, and (d) a conjoint marketing

25  analysis, based on survey data, measuring the value that consumers place on the particular performance

26  enhancements and number of applications.[1]  Having valued both the whole and the relevant

27  _____

28  [1] Google contends in a footnote, without providing any basis for its contention, that all of these
methodologies must have been rigged because Oracle engineers conducted some of the benchmarking

[Footnote continued on next page]

ORACLE'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 3
CASE NO. CV 10-03561 WHA

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1  components, Prof. Cockburn is not obligated to separately value any non-infringing components.  *See,*

2  *e.g.*, *Function Media, L.L.C. v. Google Inc.*, No. 2:07-CV-279-CE, 2010 WL 272409, at *4 (E.D. Tex.

3  Jan. 15, 2010); *Finjan Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) (finding

4  that, based on internal documents calling the patented features "important," the jury could infer that a

5  substantial fraction of the accused products' profits stemmed from the patented method).

6      Google cites only one case for its argument—an unpublished opinion from the District of

7  Minnesota, *Medtronic, Inc. v. Boston Scientific Corp.*, Civ. No. 99-1035, 2002 WL 34447587 (D. Minn.

8  Aug. 8, 2002).  That case provides no basis for excluding or limiting Prof. Cockburn's testimony.  In

9  *Medtronic*, the court excluded testimony by the plaintiff's expert because the expert had claimed that

10  the patents-in-suit were worth "virtually all" of the value of the purchase price of the portfolio that

11  defendants had paid to acquire them.  *Id.* at *7–12.  The expert opined that the patents-in-suit accounted

12  for "all or substantially all" of the value of the portfolio based on his "gut feeling," his "speculation"

13  that the patents-in-suit were "broad and cover a lot of applications," and his vague recollection of a

14  separate deposition in which an outside law firm had referred to the patents as "very valuable."  *Id.* at

15  *6–7.  The expert relied on one piece of documentary evidence to back up his assertions: an internal

16  memorandum from the defendants that stated that the three patents-in-suit were the "primary value" of

17  the portfolio.  *Id.* at *12.  The court found that "primary value" did not necessarily translate into or

18  support the expert's opinion that the patents supplied "virtually all of the value."  *Id.*  Accordingly, the

19  court concluded that there was not a reliable factual basis for the expert's opinion regarding the value of

20  the patents-in-suit and excluded his testimony.  *Id.*

21      This case bears no resemblance to *Medtronic*.  As Google concedes, Prof. Cockburn's

22  apportionment analysis is not based on a "gut feeling."  (Supp. Br. at 5 (Cockburn's analysis based on

23  "three performance-based studies").)  First, Prof. Cockburn's evaluation of the contribution of the

24  

_____

25  [Footnote continued from previous page]
   analyses (using established, standard methods) underlying them.  (Supp. Br. at 5 n.1.)  They were not.
26  In fact, Google's expert's profound misunderstanding of one of the methodologies that Prof. Cockburn
   considered—the conjoint—is detailed in Oracle's *Daubert* motion to exclude Dr. Leonard's testimony.
27  (*See* Dkt. Nos. 558–560.)  As noted above, it is telling that Google has not raised any actual *Daubert*
   challenge to the scientific basis for Prof. Cockburn's apportionment methodologies, and instead just
28  indicated that it will do so at trial.

ORACLE'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 3
CASE NO. CV 10-03561 WHA

intellectual property rests on multiple economic analyses based on two separate and independent measures of consumer preferences, input from the technical experts, and the review of many contemporaneous documents that establish Google's appraisal of the value of the patented functionality and the importance of adopting copyrighted Java API to attract application developers. ████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

This is more than enough "reliable factual basis." *Medtronic*, 2002 WL 34447587, at *12. Second, rather than looking at just one document, as the expert did in *Medtronic*, Prof. Cockburn takes into account numerous Google documents that establish that an incremental increase in speed (provided by several of the patents in suit) is vitally important:



Third, Prof. Cockburn does not assert that 100% of the starting point should be apportioned to the intellectual property, nor does he claim that the patents and copyrights account for "virtually all of the value" of that starting-point license, as did the expert in *Medtronic*. His opinion is that the proper apportionment percentage is at least 30% for the patents and 15% for the copyrights. *Medtronic* provides no basis to exclude any of Prof. Cockburn's testimony.

Google's attack on Prof. Cockburn also relies on a false factual proposition regarding the components of the starting point license. Google's contends that Prof. Cockburn should have accounted for the value of "Sun's JAVA trademark" and Google's "access to Sun's engineers" (Supp. Br. at 2), and presumably reduced his apportionment percentages by some amount as a result. But the draft

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

contract sent by Sun to Google in March 2006 specifies what was covered by Google's $100 million payment to Sun: ███████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████   The payment clause did not refer to any trademark or access to any engineers.  In fact, Sun and Google both stood to benefit in other ways from that agreement, but none of those other benefits were tied to the payment term, ████████ ██████████████████████████████████████████   Sun defined "Sun Technology" to include its patents and copyrights (not trademarks) pertaining to the new platform.  But in any event, Prof. Cockburn values the whole agreement under consideration by the parties in 2006 and then apportions from there based on his analysis of the portion of the value of *Android* attributable to the intellectual property in suit.  It does not matter—at least not in ***this*** case— what specifically is included in the remainder of the valuation of the unconcluded 2006 agreement.[2]

If Google truly believed it was important to value the intellectual property not in suit, it could have asked its experts to conduct that analysis, and then presented that analysis at trial.  Google did not. Instead, Google decided to ask Prof. Cockburn a series of questions at his deposition in an effort to tie this case to the unpublished *Medtronic* decision, and to attack Prof. Cockburn for not doing something

---

[2] It is true that the fact that Sun and now Oracle ordinarily license Java patents in a bundle should be relevant to the hypothetical license here.  *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1568 (Fed. Cir. 1988) ("[T]he patentee's usual licensing approach should be considered in assessing a reasonable royalty.").  Sun, and now Oracle, are not in the custom of licensing particular patents; instead, they license the bundle of intellectual property that comprises the Java platform as a whole.  Both parties' experts agree that there are no comparable benchmark licenses on which to base a reasonable royalty for these particular isolated patents, nor is there a clean economic way to apportion all the way down to the patent level.  In fact, under similar circumstances in a different case, Google's own expert, Dr. Leonard, employed the entire market value rule:  "The problem is, how much is that component worth versus the whole product?  It makes it difficult. . . . So like let's take a car.  And let's say you had a patent on the engine.  You could base a royalty for that using a patented technology on the price of the whole car.  That's really what I'm talking about here.  Or you could somehow try to figure out what the value of the engine is.  But the problem is that the engine isn't really sold separately. It's really hard to figure out what that value is. And you're going to get into disputes between the two sides, the person who is paying the royalty is going to say, oh, the engine isn't worth much.  And the person receiving the royalty is going to say, oh, the engine is worth everything. So to avoid those kind of disputes you just set the royalty base as being the whole car."  (Dearborn Decl. Ex. G (Trial Tr., Day 7, November 15, 2007, 1342:9-11, 1342:23-1343:10, *Bard Peripheral Vascular v. W.L. Gore & Associates*, No. CV-03-597-PHX-MEM).)

ORACLE'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 3
CASE NO. CV 10-03561 WHA

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

that he had no obligation to do.  Google's arguments are baseless, and the motion should be denied.

**B. Prof. Cockburn's Upward Adjustment Based On Sun's Loss Of Compatibility And Control Is Warranted Under the Facts And The Law**

Google's second attack on Prof. Cockburn's opinions repeats an argument raised in its original motion *in limine*:  that Prof. Cockburn should not be permitted to consider and account for the substantial revenues that Sun expected from commercial licensing in connection with a compatible Android, despite the fact that the entire agreement with Google was based on the assumption that Sun would obtain those revenues.  (Supp. Br. at 6–11.)  Google adds nothing new in substance to its prior attack, and there is no basis to force the experts and the jury to ignore those substantial expected revenues in calculating damages in this case.  Google's argument mischaracterizes Prof. Cockburn's report and testimony, misunderstands the facts, and ignores governing law.

First, Google contends that Prof. Cockburn "admitted the sole source" of this adjustment is "profits Sun allegedly lost the chance to earn because Google deployed the Android position."  (Supp. Br. at 6–7.)  Google mischaracterizes Prof. Cockburn's testimony.  Although Google's counsel designed its questions to try to get Prof. Cockburn to adopt the "lost profits" terminology, Prof. Cockburn testified that it was ***incorrect*** to characterize the calculation as "being lost profits" and that they instead reflect—as described in Prof. Cockburn's reports—"a method of capturing the value to Sun of compatibility and control."  (Dearborn Decl. Ex. H (Cockburn Dep. at 135:17–136:2).)  Prof. Cockburn later elaborated:



(*Id.* at 192:11–194:20.)  Prof. Cockburn properly applies the difference between a lost profits measure of damages and the appropriate components of a reasonable royalty.  As a measure of ***copyright*** damages, he calculates lost profits from Sun's Java ME licensing revenues and its own plan for a full mobile software stack, Project Acadia, as an alternative measure of actual damages for Google's copyright infringement in this case.  (Cockburn Report ¶¶ 439–98.)  The upward adjustment to the

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P

O A K L A N D ,  C A L I F O R N I A

8

hypothetical license is not actual lost profits—it reflects Sun's expectations in 2006 for convoyed sales to third parties as a result of a license agreement with Google.  Notably, Prof. Cockburn does not include the loss of such convoyed sales—which would have been realized only had there been a license, not in the but-for world (no infringement) that informs lost profits analysis—in his lost-profits calculation.  The expected convoyed sales are only, and appropriately, relevant to valuation of the patents and copyrights using a hypothetical license measure that seeks to measure (a) the value of a compatible, jointly controlled Android, plus (b) the value lost if compatibility is changed to incompatibility.

Second, Google's legal challenge to Prof Cockburn's adjustment, which Google repeats from its original motion *in limine*, is still meritless.  As Oracle described in its original opposition brief (Dkt. No. 494-1 at 12), Google's argument about the relationship between lost profits and reasonable royalty analysis is foreclosed by *Panduit* and *Georgia-Pacific* Factor 6, which specifically permits the expert to consider convoyed and ancillary sales in the hypothetical license analysis.  In fact, Google now admits that "a patentee's likely lost profits is [*sic*] one factor that *can be used* to justify a reasonable royalty calculation."  (Supp. Br. at 7 (emphasis added).)  This legal standard makes sense, given that negotiating parties of course consider expected gains and losses when negotiating a license.  Yet Google now claims, with no case citation, that the established *Georgia-Pacific* rule permitting consideration of any reasonably expected losses must not apply to this case.  Google is incorrect.

Sales projections are routinely used to calculate damages based on the parties' reasonable expectations at the time of the hypothetical negotiation.  The Federal Circuit's opinion in *Interactive Pictures Corp. v. Infinite Pictures, Inc*, 274 F.3d 1371, 1385 (Fed. Cir. 2009), a case that Oracle cited in its opposition to Google's original motion (Dkt. No. 494-1 at 12) and which Google still ignores in its supplemental brief, is fatal to Google's position.  In *Interactive Pictures*, the plaintiff based its reasonable-royalty *base* on the infringer's business plan and projections for future sales—a document that was prepared two months before infringement began.  274 F.3d at 1385.  The defendant argued that this royalty base was outdated, and contained overly optimistic assumptions of future revenue growth that never actually materialized.  The Federal Circuit disagreed with the defendant.  The court first observed that "[w]e have previously upheld awards of damages premised on a lump sum royalty

ORACLE'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* NO. 3
CASE NO. CV 10-03561 WHA

payment based on an infringer's expected sales." *Id.*  The court also rejected the defendant's argument that the projections were too speculative, even though the projections were not ultimately realized. "The fact that Infinite did not subsequently meet those projections is irrelevant to Infinite's state of mind at the time of the hypothetical negotiation.  Nor does Infinite's subsequent failure to meet its projections imply that they were grossly excessive or based only on speculation and guesswork. Instead, Infinite's subsequent failure to meet its projections may simply illustrate the 'element of approximation and uncertainty' inherent in future projections." *Id.*  In fact, the court said that the opposite rule—requiring only *actual, realized* sales revenue to be considered, rather than *expected* sales revenue—would "essentially eviscerate the rule that recognizes sales expectations at the time when infringement begins as a bases for a royalty base[.]" *Id.*  Finally, the court concluded that convoyed sales were properly included in the royalty base. *Id.* (citing cases calling such an approach "eminently reasonable").)  The court thus refused to disturb the jury's damages award.

Because of the hypothetical license's focus on expectations, many cases apply this same standard with regard to both infringer's ***and the patentee's*** profit projections.  *See Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) (reasonable royalty can be calculated from the "infringers' profit projections for infringing sales"); *Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) (citing *Interactive Pictures* for the proposition that reasonable royalty can be calculated based on "the patentee's business plan and its projections for future sales prepared two months before infringement began") (internal quotation marks omitted); *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1380 (Fed. Cir. 2010), *aff'd sub nom. Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011) (refusing to reverse hypothetical license damages award based on plaintiff's argument that it expected to obtain a 40 to 45 percent profit margin, because the "hypothetical construct seeks the percentage of sales or profit likely to have induced the hypothetical negotiators to license use of the invention" and "this court sees no reason to preclude a jury from hearing attorney argument based on an expectation of success.") (citations omitted).  Google has offered no response to any of these cases.

Rather than addressing the governing law, Google relies on five irrelevant, nonbinding cases for the proposition that projections cannot form the basis for an adjustment to a hypothetical license.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

(Supp. Br. at 10-11.)  **None of these cases is a patent or a copyright case, and none concerns a hypothetical license.**  The hypothetical license, of course, is a damages measure unique to intellectual property law, and focuses (unlike lost profits analysis) on the parties' reasonable expectations at the time of the hypothetical negotiation.  Google's foray into unrelated areas of law—lost-profit damages for breach of contract,[3] civil conspiracy,[4] and antitrust[5]—where such expectations are not part of the damages calculation confirms the weakness of its position.  Patent and copyright law provide no support for Google's argument.

Google's attempt to knock out the upward adjustment would, as Oracle has previously described, allow Google to pay **less** than it could have paid if it had just taken the license it needed in 2006.  But:

> The setting of a reasonable royalty after infringement cannot be treated, as it was here, as the equivalent of ordinary royalty negotiations among truly 'willing' patent owners and licensees. That view would constitute a pretense that the infringement never happened.  It would also make an election to infringe a handy means for competitors to impose a 'compulsory license' policy upon every patent owner.

*Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.3d 1152, 1158 (6th Cir. 1978).  It is for this precise reason that the *Panduit* court, in considering a reasonable royalty, remanded to the district court with instructions to consider "the future business and attendant profit Panduit would expect to lose."  *Id.* at 1164.  Google's arguments are wrong on the law.

Third, as a matter of fact, Professor Cockburn does not, as Google incorrectly suggests, consider Sun's convoyed sales projections in a vacuum or rely only on a single document to support the upward adjustment.  Instead, he considers the reasonableness of the adjustment in light of Sun's business model, Sun's experience in the industry, Sun's other documents, and Google's contemporaneous expectation that Sun would have generated significant convoyed sales had a compatible license with

---

[3] *Zenith Electronics Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005) (contract lost profits, concerning lay opinion testimony under Rule 701); *TAS Distrib. Co. v. Cummins Engine Co., Inc*., 491 F.3d 625, 633 (7th Cir. 2007) (contract lost profits, construing Illinois state law); *Trademark Research Corp. v. Maxwell Online, Inc*., 995 F.2d 326, 332 (2d Cir. 1993) (breach of contract, construing New York state law).

[4] *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 723 (10th Cir. 1993) (civil conspiracy lost profits)

[5] *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc*., 249 F. Supp. 2d 622, *amended*, 268 F. Supp. 2d 448 (E.D. Pa. 2003) (lost profits under antitrust and state law claims)

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   shared control been concluded. (Cockburn Report ¶ 286–307; *see also* Agrawal 10/7 Decl. (Dkt. No.

2   509) at Ex. 3-6, 3-7, 3-8 (documents confirming that Google knew Sun would have a commercial

3   implementation).) Whereas Google provides the Court snippets of Prof. Cockburn's deposition

4   testimony relating specifically to the Sun business model, it omits that Prof. Cockburn also clearly

5   testified that he (1) assessed the model ████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ██████████████████████████   Google's challenge rests on a mischaracterization and selective

14  misreading of both Prof. Cockburn's report and Prof. Cockburn's deposition.[6]

15      Fourth, Google's continued insistence that the Sun convoyed sales projections are unreliable is

16  off-base, especially in the context of a *Daubert* challenge. Google certainly may wish to try to cast

17  doubt on the reliability of the projections at trial, based on examination of the relevant witnesses (none

18  of whom it saw fit to depose) and use of the documents relating to the projections. But that is not the

19  stuff of a motion in limine. Even if it were, Google is incorrect. The reliability of the projections is

20  confirmed by the fact that the kinds of convoyed and ancillary sales projected were precisely the types

21  of sales—licenses to OEMs for commercial implementations of Java technology—with which Sun had

22  extensive experience, and which formed a core portion of Sun's Java business. (*See, e.g.,* Dearborn

---

[6] Google's argument is particularly ironic in light of the fact that Google's own damages experts rely on a single, unrelated license agreement between Sun and a third party called Danger Inc. as the basis for their conclusion that the upward adjustment properly attributable to the fact that the hypothetical license would have been for an incompatible implementation is an amount double the royalty for a compatible license. (Dearborn Decl. Ex. J (excerpts from Leonard Report at pp. 45–49).) The irony is multiplied by the fact that Google's experts' complete reliance on the Sun-Danger license simply misreads the license and incorrectly conflates the impact on the royalty (double) from whether Danger's implementation would be ***branded*** as "Java" with the impact on the royalty if the Danger implementation were to be ***incompatible***, which is not addressed in the Danger license because compatibility was absolutely required.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

Decl. Ex. I (Singh Dep. Tr. 47:9-13) ("Sun had engineering services that would do implementations for customers, but consistent with the specification and consistent with the TCK."); *id.* 99:18-23 ("Our business model is based on, as I mentioned, on runtime licensing revenue for – for the platform functionality as well as adding in services revenue on top of that.").)  Sun had offered engineering services on its commercial licenses for years, and the projections correspond to commercial licensing that Sun could have earned and expected to earn if it had been part of the Android story.  (*See* Purcell 10/20 Decl. (Dkt. No. 550-4, 550-3) Ex. D & C (OAGOOGLE0100166873, OAGOOGLE0100166874 at 882).)   In other words, the projections considered monetizing Android in a manner very similar to the way Sun was accustomed to monetizing Java.  Google is incorrect in characterizing the projections as "a completely new line of business for Sun."  (Supp. Br. at 10.)

Nor does anything in the document itself suggest unreliability.  The projections are reflected in a presentation created in early 2006, just before the infringement began, making it particularly relevant to shed light on Sun's reasonable contemporaneous expectations.  *See Interactive Pictures*, 274 F.3d at 1385.  The projections were presented to Sun's finance department.  As described in Oracle's prior brief, nothing in the cover e-mail suggests that the presentation containing the projections disclaims the accuracy of the projections.  Kathleen Knopoff, the former Sun employee who is the author of the document and the sender of the e-mail that attached it is on Oracle's trial witness list (*see* Dkt. No. 523-2 at 3) and has been listed on Oracle's initial disclosures since June 2011.  Prof. Cockburn discussed and cited the projections in his May 2011 Report.  Despite all of this, Google declined to take any fact discovery at all relating to the projections, including not taking Ms. Knopoff's deposition.  The *only* deposition testimony in the record relating to the projections is the testimony of another former Sun employee, Vineet Gupta, who participated in the 2005-2006 negotiations with Google and testified as follows with the Sun projections in front of him:

Q.  Do you know Kathleen Knopoff?

A.  Yes.

Q.  Do you find her to be a trustworthy and valuable employee of Sun?

A.  Yes. Yes.

Q.  Do you have any reason to doubt the integrity of the information she would send you?

A.  No, no. That's why I said I let other people do their jobs. And I would trust. But that's the cost, and that's the area. That's what it is.

(Dearborn Decl. Exh. K (Gupta Dep. at 307:24-309:24).).)  Google should not be permitted to use a *Daubert* challenge in lieu of its failure to take timely discovery or try to rebut this uncontested testimony.[7]

### C.  Cockburn's Calculation Of A Hypothetical License Damages Award For Google's Copyright Infringement Is Valid And Supported

In its motion in limine, Google argued that Oracle must show "evidence of benchmark transactions, such as licenses previously negotiated for a comparable use of the infringed work" in order to prove a lost copyright hypothetical license fee.  (Dkt. No. 494 at 4.)  In its opposition, Oracle pointed out that the author of the quoted language, Judge Hamilton, clarified soon after issuing the opinion including that language that "the court did not hold as a matter of law" that a copyright hypothetical license is "available only if the copyright owner provides evidence of actual licenses . . . and/or actual 'benchmark' licenses."  *Oracle USA, Inc. v. SAP AG*, No. C07-1658 PJH, at Dkt. No. 1088.  In its supplemental brief, Google concedes that Judge Hamilton rejected Google's interpretation.  (Supp. Br. at 13.)  And yet Google ***again*** relies on the earlier, disowned standard.  (*Id.* at 12, 13.)

Google's supplemental brief also shows that Google misunderstands Prof. Cockburn's copyright hypothetical-license analysis.  Google claims that there can be no copyright hypothetical license because, in Google's view, there is no "objective" evidence that Sun would have licensed an incompatible implementation of Java.  But Prof. Cockburn relies precisely on objective evidence: documents underlying the parties' actual negotiations, which, as this Court has put it, are the "real-world 'comparable' close on point."  (Dkt. No. 230 at 14.)

Google repeatedly ignores the objective evidence.  For example, it argues that the Ninth Circuit has not "affirmed hypothetical-license damages in a case involving competitors (who do not commonly license each other)."  (Supp. Br. at 14.)  But to the extent they were competitors at all at the time, Sun and Google did not in 2006 consider their competitive relationship an impediment to a license.  Indeed,

---

[7] Ironically, Google complains that Prof. Cockburn did not interview Ms. Knopoff.  (Supp. Br. at 10.) Unlike Google's damages experts, Prof. Cockburn preferred to base his opinions on the contemporaneous documents and record evidence, rather than spoofed facts in interviews.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

even in his deposition, █████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

Similarly, Prof. Cockburn quantifies the "starting point" license by taking the $100-million starting point[8] and apportioning down to isolate the contributions of the copyrights-in-suit. (*See* Cockburn Report Exhibit 23.) The starting point is based on an actual, real-world offer, not "speculation." Google understood that the purpose of the starting-point license was to compensate Sun not only for the right to license its intellectual property, but also for short-term revenue loss as it moved into an open-source business model. ████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████) Prof. Cockburn's starting point is based on the objective, real-world facts. Google wants to characterize it as somehow "subjective" or "speculative," but it nowhere deals with the indicia of objectivity in Prof. Cockburn's report and deposition testimony.

Prof. Cockburn's copyright damages calculations are consistent with the principles set forth by the Ninth Circuit in *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). Judge Hamilton's since-clarified decision in *Oracle v. SAP* provides no basis for Google's motion.

**D. Cockburn's Calculation Of Patent Damages By Features And Calculation Of Copyright Damages Without Any Individual Copyright Breakdown Is Appropriate**

In its motion in limine, Google claimed that it was error for Prof. Cockburn to assess patent damages on a patent-by-patent, rather than claim-by-claim, basis. (Dkt. No. 494 at 9.) Google cited no

---

[8] Google continues to insist that this starting point is incorrect. (Supp. Br. at 1–2.) Prof. Cockburn used the $100 million offer not only because that is what the Court directed but because that $100 million was linked to a proposed contract that more closely resembles the hypothetical license—one where Sun has less control. Google mischaracterizes the $28 million offer as a lower offer for the same consideration. Google could have tried to calculate the value of the additional control granted to Sun with the new contract, and adjusted the $28 million offer accordingly to come up with an alternative starting point, but Google chose not to.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

case in which any court required apportionment on a claim-by-claim basis.  Despite the fact that Oracle noted that deficiency in its opposition to Google's motion (Dkt. No. 494-1 at 16), although Google now repeats the argument in its supplemental brief, and although Google in fact has now *expanded* its argument and contends that Prof. Cockburn should have separately calculated damages for each of the different categories of copyrighted materials (Supp. Br. at 16), Google has *still* not cited a single case for the proposition that apportionment must be so granular.  Nor does Google provide either any indication or any argument that the results would have been different on a claim-by-claim basis as opposed to a feature-by-feature basis.

As described in Oracle's prior brief (Dkt. No. 494-1), neither the law nor this court's prior order requires apportionment down to a granular claim-by-claim basis.  Most of the cases instructing how to do a proper apportionment focus on the incremental benefit attributable to the infringing *feature* or work, without any mention of any claim-by-claim or copyright-by-copyright analysis—exactly the analysis that Prof. Cockburn performs.  The cases all focus on the incremental benefit provided by the infringing feature—not the claim.

For example, in *VS Techs., LLC v. Twitter, Inc*., 2:11CV43, 2011 WL 4744572 (E.D. Va. Oct. 5, 2011), the court recently upheld an expert's apportionment analysis that measured the incremental value of the infringing feature.  There, the expert calculated damages based on three methods for measuring incremental value, including a calculation of how use of the infringing feature led to increased use of the Twitter system and revenue to Twitter, and a calculation of the expected incremental economic benefit attributable to the infringing feature, and an evaluation of how, in his experience, that benefit would have been shared between Twitter and VS Technologies.  *Id.*  Defendant challenged the expert under *Daubert* and cases that have emphasized the apportionment rule.  The court rejected that challenge, because the "proposed testimony does not seek to extend damages to any features not encompassed within the claimed invention."  *Id.* at *7.   *See also Function Media*, 2010 WL 272409, at *4 (refusing to exclude plaintiff's expert on apportionment grounds when he evaluated only the incremental profit); *Metallic Rubber Tire Co. v. Hartford Rubber Works Co.*, 275 F. 315, 322-23 (2d Cir. 1921) (using infringers'-profits rule, calculating damages from an improvement based on the difference in defendant's profits on improved, infringing tires and ordinary, non-infringing tires).)

1    Similarly, for the copyrights, Prof. Cockburn calculates the incremental benefit to Android's market

2    share, and therefore to Google's advertising revenues, of offering a platform with more available

3    apps—a direct consequence of Google's intentional choice to leverage the Java developer community

4    by providing them with familiar Java APIs.  (Dearborn Decl. Ex. H (Cockburn Dep. 201: 24–204:1).)

5        Prof. Cockburn's analysis comports with established standards, and Google has cited no

6    authority permitting exclusion of Prof. Cockburn's analysis on the basis that he should have done an

7    even more granular analysis.  Oracle detailed in its responsive brief the reasons why more granular

8    apportionment is not warranted as a matter of fact, law, case management, or economics.  (Dkt. No.

9    494-1 at 16–17.)  But even if there were a claim-by-claim apportionment requirement (which there

10   isn't), Google's argument simply exalts form over substance.  By insisting that Prof. Cockburn slice and

11   dice damages ever more granularly, without once offering an illustration as to how one would

12   accomplish that task, Google has invented an economic principle that is untethered both to facts and to

13   the policies underlying intellectual-property damages.  Prof. Cockburn's analysis goes much farther

14   than the "smallest salable unit" practicing the patents in suit, which is the economically rational royalty

15   base; instead he measured only the incremental benefit to Google of the claimed invention.  *Cf. Cornell*

16   *Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283–92 (N.D.N.Y. 2009) (smallest salable unit).

17   There was no reason for Prof. Cockburn to do anything more, and there is no basis for Google's

18   *Daubert* challenge.

19   **E.    There Is No Reason To Bar Dr. Cockburn From Testifying About Other Relevant Licenses
20          And Settlements, Including The Sun v. Microsoft Agreements**

21       In the last section of its supplement brief Google repeats yet another set of arguments from its

22   original motion: that Prof. Cockburn's citation to and consideration of the Qualcomm-Nokia license and

23   the Sun-Microsoft settlement in his report is impermissible.  (*See* Dkt. No. 494 at 9-10.)  Google seeks

24   an order barring Prof. Cockburn from "testifying about licenses for technologies other than those

25   embodied in the patents-in-suit, or licenses involving neither Sun nor Google" and also barring Prof.

26   Cockburn from making "any reference at trial to the Sun-Microsoft settlement."  (Supp. Br. at 16.)  It

27   does so even though Google's own damages experts rely heavily on other licenses involving Sun, most

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1    notably the Sun-Danger license, as discussed above.  (*See* Dearborn Decl. Ex. J (Excerpts from Leonard

2    Report at pp. 45–49).)

3         As explained in Oracle's opposition to Google's original motion, the Sun-Microsoft litigation

4    and resulting settlement is relevant.  That litigation involved—as does this case—an incompatible,

5    platform-specific Java implementation that undermined the core value of Java.  Sun and Microsoft

6    resolved that dispute after years of litigation with a set of agreements resulting in nearly $2 billion paid

7    by Microsoft to Sun.  That included a license for Microsoft to use Sun's Java patents.  Among other

8    things, the Sun-Microsoft litigation and resulting settlement are relevant to Sun's perspective with

9    respect to any hypothetical license negotiation here—precisely the sort of "objective" historical

10   evidence that Google elsewhere erroneously complains is missing from Prof. Cockburn's analysis.

11   Google cannot have it both ways.

12        Moreover, neither of the two cases cited by Google warrant an order precluding Prof. Cockburn

13   from testifying about any other agreements.  In *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869

14   (Fed. Cir. 2010), the court cited *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir.

15   2009) for the proposition that courts should be "vigilant" when considering licenses other than for

16   patents in suit, but neither case forbids consideration or testimony regarding such other licenses.  Prof.

17   Cockburn appropriately heeds this guidance, not using any other licenses as the basis for any

18   quantification of damages (unlike Google's damages experts, who rely on a misreading of the Sun-

19   Danger license as the sole basis for their quantification of the upward adjustment for incompatibility).

20   He simply reviews those mobile licenses and finds that their terms underscore the reasonableness of his

21   calculations.  The Federal Circuit decisions on which Google relies involved situations where the expert

22   actually relied on the other agreements in calculating damages, which is not the case here.  *See*

23   *ResQNet*, 594 F.3d at 870 (expert "used licenses with no relationship to the claimed invention to drive

24   the royalty rate up to unjustified double-digit levels"); *Lucent*, 580 F.3d at 1329 (expert used licenses to

25   calculate damages where it was "doubtful that the technology of those license agreements is in any way

26   similar to the technology being litigated" in that case).  Prof. Cockburn's use of other licenses is well

27   within the legal limits.  There is no basis for exclusion of any or all reference to them.

28

**CONCLUSION**

The court should reject Google's meritless *Daubert* challenge.

Dated: October 27, 2011                    BOIES, SCHILLER & FLEXNER LLP

By: *_/s/_____*
       Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.