MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S OPPOSITION TO GOOGLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT GOOGLE IS NOT LIABLE FOR DAMAGES FOR ALLEGED PATENT INFRINGEMENT THAT OCCURRED BEFORE JULY 20, 2010**<br><br>Date: TBD<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

## I. INTRODUCTION

Google's motion is a classic case of a litigant wanting to "have its cake and eat it too." For purposes of its motion for summary judgment to limit damages, Google relies on Oracle's *contention* that Google infringes the asserted non-method patent claims, even though Google disputes that it infringes. But if Google were found to infringe only method claims, then there was no duty to mark, and there can be no limitation on recovering damages. In addition, Google relies on Oracle's *contention* that its Java products practice the patents. *E.g.*, Google's undisputed "fact" no. 2: "Oracle has identified many 'markable' products that, *it contends*, practice the asserted claims of the patents-at-issue." (Mot. at 2 (emphasis added).) But Google refuses to stipulate to that contention for all purposes in the case. In other contexts—such as the remarkable commercial success of Oracle's Java, which shows non-obviousness of the patents and demand for the inventions—Google disputes that Oracle's Java products practiced the asserted claims of the patents-in-suit. If the products do not practice the patented inventions, then there was no marking obligation. Google cannot contend that Oracle did practice the patents for purposes of the marking statute and also contend Oracle did not practice the patents for other purposes.

Given the disputed facts regarding Oracle's practice of the patents and Google's infringement, it would be improper on the present record to decide as a matter of law that the marking statute limits damages. The proof of the relevant facts must wait for trial. Google's motion for partial summary judgment should be denied.

## II. THERE IS A GENUINE DISPUTE ABOUT WHETHER GOOGLE INFRINGES THE NON-METHOD CLAIMS

It is possible that the jury will find that, for a given patent, only the method claims are infringed. If the jury so finds, then there would have been no marking obligation. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed. Cir. 1983) (holding that the failure to mark products did not limit damages—even though the patent contained apparatus claims—because "[t]he only claims that were found infringed in this case, however, were claims 1, 2, and 6 of the Hanson patent, which are drawn to '[t]he method of forming, distributing and depositing

1  snow upon a surface...."). *Hanson* remains binding precedent on this point. *See Vas-Cath Inc. v.*
2  *Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) ("To the extent that *Kennecott* conflicts with
3  *Wilder*, we note that decisions of a three-judge panel of this court cannot overturn prior
4  precedential decisions."). Accordingly, Google's motion is premature.

5      In a footnote, Google tries to brush this off. But to do so, Google draws factual inferences
6  in *its* favor, which is forbidden. To support its motion, Google points to Oracle's contention that
7  "its apparatus, computer-readable-medium, and method claims 'mirror' each other, contain
8  essentially 'identical limitations,' and are all necessarily infringed whenever Android software is
9  loaded onto a phone and used." (Mot. at 7 n.13.) For inferences to be drawn in Oracle's favor,
10 the Court must instead turn to *Google's* contention that "[e]ach type of claim targets differing
11 infringing acts (performed by differing actors) and presents unique questions of proof . . . ."
12 (ECF No. 480 at 5, Google's Case Management Statement (Oct. 4, 2011).) So, although Oracle
13 strongly disagrees with Google's incorrect position, the fact that Google makes it means that the
14 Court must infer—for purposes of this motion—that the jury will find for Google on the non-
15 method claims, which relieves Oracle of any marking obligation. *Hanson*, 718 F.2d at 1083.
16 Were Google to concede that if one claim in a "mirror" pair or triple were infringed, then they all
17 are, the result could be different.

18     **III.    THERE IS A GENUINE DISPUTE ABOUT WHETHER ORACLE'S JAVA PRODUCTS ARE "PATENTED ARTICLES" UNDER THE MARKING**
19     **STATUTE**

20     **A.    Google's Failure to Concede That Oracle's Products Practice The Patents Prevents Summary Judgment**
21

22     Google is trying to hedge its bets. Google has been unwilling to concede that Oracle's
23 Java products practice each of the asserted claims, because it does not want to face the
24 consequences that flow from that admission. Instead, it bases its motion on Oracle's *contentions*.
25 But Oracle's contentions are not sufficient to grant summary judgment—the law requires that
26 there be no dispute over a material *fact*. In deciding this motion, the Court must draw factual
27 inferences in Oracle's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This
28 means that, even though Oracle contends otherwise, the Court must infer that Oracle's Java

1  products are not covered by the five patents, meaning that Section 287 does not limit Oracle's
2  damages recovery.

### B. Google Disputes That Oracle's Products Practice The Asserted Patent Claims

Whether or not Oracle's Java products practice any of the asserted claims of the patents is an issue of fact. Google must establish that there is no genuine dispute over that factual issue in order to obtain summary judgment. But Google has so far been trying to avoid making that concession. Google's experts, in particular, have been maintaining an ambiguous position on the point, apparently to allow Google the flexibility to try to gain advantage on the marking issue but avoid the negative consequences that follow from the evidence of remarkable commercial success of Oracle's Java products, which shows non-obviousness of the patents and demand for the inventions. Google cannot have it both ways.

The '702 patent provides a good example of Google's unwillingness to take a position on whether Oracle's Java products are "patented articles." Oracle's infringement contentions identify the following Java products as practicing the asserted claims of the '702 patent: CDC RI, CDC-HI, CDC AMS, CLDC RI, CLDC-HI, among others. CDC and CLDC are the two main configurations for Java ME, Oracle's Java platform for mobile devices such as consumer products, embedded devices, and smartphones. *See Java ME Technology Overview*, *available at* http://www.oracle.com/technetwork/java/javame/java-me-overview-402920.html (attached as Exhibit A to the Declaration of Marc Peters ("Peters Decl.") in Support of Oracle's Opposition to Google's Motion for Partial Summary Judgment). Yet Google's invalidity expert John Levine, according to his report, will testify that "Sun never incorporated this functionality [the '702 patent] into its mainstream Java products." Expert Reply Report of John R. Levine, Ph.D. Regarding Invalidity of U.S. Patent Nos. 5,966,702 and 6,061,520 ¶ 25 (Peters Decl. Ex. B). Dr. Levine's argument contradicts the position Google has taken in this motion. So there appears to be a genuine dispute over whether Oracle's mainstream Java products (which include Java ME) are "patented articles" or not.

1  The '104 patent is another example of how Google's experts dance around the issue.
2  Oracle contends that, from the beginning, its Java virtual machines have used the '104 patented
3  technology. Not long after the first Java commercial release, the '104 patent inventor James
4  Gosling extolled the advantages of the Java interpreter's storing and reusing numeric references
5  resulting from symbolic reference resolution, rather than resolving symbolic references more than
6  once:

> The Java compiler doesn't compile references down to numeric values—instead, it passes symbolic reference information through to the byte code verifier and the interpreter. The Java interpreter performs final name resolution once, when classes are being linked. Once the name is resolved, the reference is rewritten as a numeric offset, enabling the Java interpreter to run at full speed.

10  James Gosling & Henry McGilton, *White Paper, The Java Language Environment* § 5.1.2 (May
11  1996), *available at* http://java.sun.com/docs/white/langenv/ (Peters Decl. Ex. C). A comparison
12  of Dr. Gosling's white paper to his '104 patent specification shows the direct relationship
13  between the two. Based on this and other evidence, Oracle's validity expert Benjamin Goldberg
14  will testify that the inclusion of the '104 patented technology in Java virtual machines increased
15  their execution speed, just as described by Dr. Gosling. *See* Expert Report of Dr. Benjamin F.
16  Goldberg Regarding Validity of Patents-In-Suit ¶¶ 423-25 (Peters Decl. Ex. D). The asserted
17  claims are directly connected to Oracle's Java technology. For example, asserted claim 40 of the
18  '104 patent requires that "data from a storage location identified by a numeric reference is
19  thereafter used for the operation when the instruction contains a symbolic field reference, the
20  numeric reference having been resolved from the symbolic field reference." (ECF No. 36-5 ('104
21  Patent) at 12:30-34.) "Thereafter" in the claim means that the interpreter obtains data based on
22  the stored numeric reference on the second and subsequent times the instruction is interpreted.
23  Thus there is a direct relationship between the language of claim 40 and the feature of the Java
24  virtual machine as described by Dr. Gosling.
25  But Google's invalidity expert Dennis Allison will—apparently—testify to the contrary.
26  But on this point, Dr. Allison maintains as much ambiguity as he can. In reference to Dr.
27  Goldberg's discussion of the Gosling white paper, Dr. Allison stated in his reply report that "none
28  of the asserted claims require that the interpreter obtains data a second time based on the stored

numeric reference. Yet this requirement is the basis for Dr. Goldberg's conclusion that the '104 patent results in faster interpretation. Because none of the claims actually claim this feature, there is no basis to conclude that a nexus exists between the claimed features of the '104 patent and the alleged commercial success of the Java virtual machine." Expert Reply Report of Dennis Allison Regarding the Invalidity of U.S. Patent No. RE38,104 ¶ 53 (Peters Decl. Ex. E). While the evidence shows that Dr. Allison is mistaken about what the '104 patent claims, he sidesteps the question of whether Oracle's Java virtual machines are embodiments of the '104 patent claims, and whether the '104 claimed technology is what enables the Java interpreter to performs resolution only once, and thereby run at full speed.

So long as Google is unwilling to concede that Oracle's products embody the asserted claims, there is a genuine dispute of material fact, and summary judgment should be denied.

### C. Unmarked Products That Were Not Made Or Sold During The Period Of Google's Infringement Do Not Limit Damages Under Section 287

There is a temporal aspect to the marking issue that also prevents summary judgment. The statute only limits damages during the period that the patentee (or its licensees) are making or selling "patented articles." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002) ("The recovery of damages is not limited where there is no failure to mark, *i.e.*, . . . where there are no products to mark."); *Wokas v. Dresser Indus., Inc.*, 978 F. Supp. 839, 848 (N.D. Ind. 1997) (holding that failure to properly mark covered products did not preclude recovery of damages for infringement occurring during period of time patentee was not producing any covered products). But not every Oracle Java product was being made and sold during the period of Google's infringement, which did not occur before Android development began in 2005.

Oracle's JavaOS product is a good example of a product for which there is evidence that it was not sold during Google's infringement. Oracle contends that different versions of JavaOS practiced the '104 and '702 patents. (The JavaOS product may be particularly pertinent to this motion, because Google may argue that it is a "non-mainstream" Java product that it concedes practiced the '702 patent, where it disputes that Sun's "mainstream" Java products also practiced

the patent, according to its expert Dr. Levine.) Google sought to establish during deposition that the JavaOS product was cancelled in 1999. *See* Stephen Shankland, *Sun, IBM decaffeinate JavaOS* (August 23, 1999), *available at* http://news.cnet.com/2100-1001-230175.html (Google's Exhibit DX290 to the Pampuch 30(b)(6) deposition) (Peters Decl. Ex. F). If the Court draws factual inferences in Oracle's favor, as it must, then whether or not any version of JavaOS was marked with any patent numbers is irrelevant, because there was no product for Oracle to mark when Google started infringing. Oracle's contention that versions of JavaOS practiced the patents cannot justify summary judgment.

### IV. CONCLUSION

Google's motion remains premature. Because Google disputes its infringement of the non-method claims and has not established that Oracle's practice of its own patents is an undisputed fact, summary judgment is not warranted.

Dated: October 28, 2011

MICHAEL A. JACOBS
MARC DAVID PETERS
DANIEL P. MUINO
MORRISON & FOERSTER LLP

By: /s/ Michael A. Jacobs

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.