MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
FRED NORTON (Bar No. 224725)
fnorton@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax)

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| Plaintiff, | **ORACLE AMERICA, INC.'S REPLY TO GOOGLE INC.'S OPPOSITION TO MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORTS OF GREGORY K. LEONARD AND ALAN J. COX** |
| v. | |
| GOOGLE, INC. | |
| Defendant. | Dept.: Courtroom 8, 19th Floor<br>Judge: The Honorable William H. Alsup |

Google defends Drs. Leonard and Cox largely by relying on two false premises: first, that it is an acceptable expert practice to adopt, without qualification or analysis, the post-discovery statements of Google employees (Opp. at 3, 4, 5, 7); and second, that the ends-based advocacy by Google's experts is justified because *Oracle's* experts supposedly offer "made-for-litigation" or "results-oriented" opinions. (Opp. at 1, 5–6, 12–13, 14–15.) Both arguments are wrong. Unlike Oracle's experts, Drs. Leonard and Cox rely on interview statements that are *contradicted* by the record evidence, which they justify ignoring because contemporaneous documents must yield to what they now know, based on other witnesses for whom they vouch, law they misapply, and expertise beyond any they might legitimately claim. This approach is fundamentally subjective and scientifically unsound.

**I.   Drs. Leonard And Cox Rely On Spoon-Fed Facts From Google Employees In Ways That Further Discovery Cannot Cure**

The extraordinary extent of Drs. Leonard's and Cox's reliance on interviews is even clearer now that they have been deposed. Neither questioned the witnesses about what they had written in the past.[1] (Declaration of Fred Norton ("Norton Decl.") Ex. A ("Leonard Dep.") at 97:13–23; Norton Decl. Ex. B ("Cox Dep.") at 160:21–24.) Dr. Leonard's role as scrivener was so ministerial that he simply typed everything he was told by Google employee Brian Swetland straight into his report. (Leonard Dep. at 93:10–24; 310:22–311:1.) When asked what he had done as an expert to evaluate the viability of alternatives, Dr. Leonard's answer was that he knew how to ask "the right questions." (*Id.* at 259:9–21.) Whatever those questions were, once Google's employees told him that switching would be costless, he considered his job "done" and "there's no reason to go further." (*Id.* at 259:9–21 ('720), 254:12–257:10 ('205/JIT).)

This abdication of the role of the expert cannot be cured by cross-examination. "[W]hile Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion."

---

[1] Each witness was interviewed once, and with only one exception, for 45 minutes or less. (*See* Leonard Dep. at 310:18–314:19.) Drs. Leonard and Cox took notes for only a few interviews, and then usually only a cryptic page or two. (*See id.* (testimony about 8 handwritten pages of notes for all interviews); Cox Dep. at 160:21–167:25 (testimony about 15 handwritten pages of notes for all).)

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005).

Drs. Leonard's and Cox's interview-based opinions repeatedly contradict documents written by the interviewees.  *Compare* Cox Dep. at 181:4–181:15 *with* Norton Decl. Ex. C (GOOGLE-01-00025575 at 584) (2006 wireless industry adoption of Java); Cox. Dep. at 275:17–278:1 *and* Leonard Dep. at 308:23–309:22 *with* Dearborn 10/21 Decl. Ex. 9 (Dkt. No. 585-1 at 20) (lack of Java fragmentation in 2006); Cox Dep. at 239:10–255:3 *with* Dearborn 10/21 Decl. Ex. 5 (Dkt. No. 585-1 at 5–7) (advantages of Java over C++); Leonard Dep. at 274:22–275:12 *with* Dearborn 10/27 Decl. Exs. B–E (Dkt. No. 573-1) (importance of speed).  Reliance on interviews inconsistent with the evidence warrants exclusion of the testimony.  *See IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690 (E.D. Tex. 2010) (excluding opinion founded on "blatant oversight" and assumptions contrary to record evidence).

Google defends its experts' cherry-picking by claiming that it "will, and accepts that it must, offer the underlying factual testimony from the percipient witnesses first, before its experts may testify based on those facts" (Opp. at 3); that "the interviews constitute facts and data 'of a type reasonably relied by experts in the particular field,'" (*id.* at 4 (citing only Rule 703)); and that this Court has not held that "party employee interviews are an inherently unreliable basis for an expert opinion."  (*Id.*) None of these arguments justifies what Drs. Cox and Leonard did.

Google has not eliminated the hearsay problem.  Its experts will offer opinions at trial based on information they were given during post-discovery interviews.  When an expert ignores extensive record evidence to rely uncritically on interviews with "highly partisan" employees of the client, the opinion fails the standards for admissibility.  *Therasense Inc. v. Becton, Dickinson & Co.*, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008) ("any opinion based on such untested and partisan foundation is not based on sufficient facts and data within the meaning of Rule 702").[2]  Even if further additional

---

[2] The other two cases cited by Google for its reliance on interviews (Opp. at 4) do not rescue its experts either.  Both cases involved accounting experts, and AICPA standards specifically allow accountants to base their opinions on interviews with their clients.  *See, e.g., Inline Connection Corp. v. AOL Time Warner, Inc.*, 470 F. Supp. 2d 435, 443 (D. Del. 2007) (quoting AICPA standards).  Neither case holds that an economist may sit back and claim that party employees told them alternatives would be costless, as Google's experts have done here.  Additionally, *Inline* specifically noted that the experts' opinion in that case (unlike the situation here) did ***not*** clearly contradict other factual evidence.  *Id.*

discovery could fully cure this defect, Google refuses any new depositions for five of the seven interviewees. (*See* Opp. at 6–7; Norton Decl. Ex. D.) Google's references to the depositions that *have* been taken (Opp. at 6–7) do not help, as they could not have addressed the accuracy of the experts' paraphrases, their omission of bad facts disclosed by employees, or other aspects of the interviews.

## II.     Drs. Leonard And Cox Offer No Competent *Economic* Opinions On Alternatives

Drs. Leonard and Cox devote lengthy portions of their reports to technical opinions on non-infringing alternatives,[3] despite their lack of expertise on that subject. (Oracle Br. at 4–5.) Google contends that Drs. Leonard and Cox actually provide only *economic* opinions based on those "foundational" facts. (Opp. at 1, 2.) Google is wrong.

Drs. Cox and Dr. Leonard provide no economic analysis of Google's purported alternatives. Dr. Cox admitted at deposition that he did not account for costs that Google avoided as a result of infringement because he had "been told" that "the evidence will show, that there are not substantial costs, and possibly zero additional costs, that are avoided" by using a C-based language rather than Java. (Cox Dep. at 83:1–85:10.) The entire "economic analysis" supporting that conclusion appears in one sentence in Dr. Cox's report: "The incremental cost and time to Google of going with C++ or another programming language other than the Java programming language would not have been significant." (Cox Report at 27.) In support of that "analysis," Dr. Cox cites only his interviews with three Google employees. (*Id.* at 28 n. 105.) Despite Google's uncontroverted documents and testimony admitting that the launch window for Android was critical, Dr. Cox has no analysis of the economic impact of delay as a result of the supposed alternative. (Cox Dep. at 88:21–89:22.)

Similarly, Dr. Leonard does not quantify—by any metric—costs, risks, benefits, or market effects of Google's purported alternatives. For example, for the "alternative" of using a native compiler instead of a virtual machine, he simply accepts the representations of Google employees that the out-of-pocket cost and time would have been the same for either choice. (Leonard Dep. at 212:11–24.) He does the same with regard to the "alternative" of using C++, accepting without analysis interviewees'

---

[3] Dr. Leonard discusses Google's purported non-infringing alternatives in his report on pages 10–30, 31, 37, 45, 48, 63, 69 (*Georgia-Pacific* factor 7), 70 (*Georgia-Pacific* factor 9), 71 (*Georgia-Pacific* factor 13), 72, 74, 75, 80, 88, 89, 94, 95, 97, 98, and 118. Dr. Cox discusses Google's purported non-infringing alternatives in his report on pages 7, 15, 23–27, 38, 48, 59, 60, and 61.

statements that the added development time "would not have been significant."[4] (*Id.* at 36:13–39:24.) His patent-by-patent analysis was similarly superficial. (See, e.g., *id.* at 238:7–242:12 (no quantification of effect of removing '702).)

Drs. Leonard and Cox do not merely "rely for technical background on the opinions of Google's technical experts" (Opp. at 1); they try to bolster Google's technical experts by citing interviews that they claim—but cannot competently testify—support those experts' opinions and vouch for the technical witnesses that must be believed for their "economic opinions" to *have* a basis. That is impermissible. *See, e.g.*, Dkt. No. 56 ¶ 12 ("experts lacking percipient knowledge should avoid vouching for the credibility of witnesses, *i.e.*, whose version of the facts in dispute is correct."); *Loeffel*, 387 F. Supp. 2d at 808 ("[a] scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science.").

**III.     Drs. Leonard and Cox Offer No Competent *Economic* Opinions As To "Fragmentation"**

Drs. Leonard and Cox opine that Sun had little to lose by abandoning Java to Google, because Java was already "stagnant" or "fragmented." Drs. Cox and Leonard have no expertise in assessing the vitality of a complex software platform, and they have applied no economic analysis to assess the effects of any stagnation or fragmentation of Java. Google admits as much. It defends Drs. Leonard and Cox by arguing that they rely on witnesses, documents, and testimony that supposedly say the same thing. (Opp. at 10–11.) But an expert "may not simply parrot or recite the opinions and knowledge of other expert and fact witnesses." *Ash Grove Cement Co. v. Emp'rs Ins. Co.*, 246 F.R.D. 656 at 661 (D. Kan. 2007); *see also Stein v. Pacific Bell,* 2007 WL 831750, at *11 (N.D. Cal. Mar. 19, 2007).

**IV.     Drs. Leonard And Cox Offer Opinions That Are Contrary To Law**

Dr. Cox improperly reduces wrongful profits damages by arguing that Google could have

---

[4] The experts also improperly apply ex post facts to *ex ante* hypothetical negotiations. For example, Google claims that Dr. Cox can claim that using a non-Java language was a viable alternative because of "massive success of Apple's iPhone," (Opp. at 10), but it is legally improper to use the ultimate success of the iPhone—which contains its own *hardware* and was launched in *2007*—to ratify alternatives the parties might have considered in the hypothetical negotiation for a *software platform* in *2006*. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1333–34 (Fed. Cir. 2009) (describing proper use of later-dated evidence). Similarly, Dr. Leonard's entire basis for concluding that Sun's business model projections in 2006 are unreliable is hearsay within hearsay—a newspaper article reporting analyst report statements—from late 2008. (Leonard Dep. at 191:6-193:22).

earned those profits without infringing. Google defends that error by citing the copyright statute's causation requirement. (Opp. at 13–14.) But Google cites no case holding that profits actually caused by the infringement may be ignored because the infringer *could have* chosen to sell a non-infringing product—***but didn't***. The Copyright Act awards the profits that are "attributable to the infringement." *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707–08 (9th Cir. 2004) (causal-link standard; quoting 17 U.S.C. § 504(b)). "If the infringer has earned a profit, this award makes him disgorge the profit to insure that he not benefit from his wrongdoing." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001). The causation test for this disgorgement remedy is not, as Dr. Cox assumes, whether the infringer had alternatives; such a requirement would gut the purpose of wrongful profits. (Oracle Br. at 13.) The Court should strike Dr. Cox's wrongful-profits analysis.

Google's mitigation argument is also wrong. Dr. Leonard claims the upward adjustment for Project Armstrong is "inappropriate because it is counting as 'damages' something that Sun could have mitigated," so the adjustment should be "zero." (Leonard Report at 83.) Google concedes it has no mitigation defense, but says Dr. Leonard is really testifying about causation. (Opp. at 13.) Dr. Leonard has no expertise that would allow him to conclude it was feasible to monetize the infringing Android. In any event, Oracle's decision not to pursue a business with a ***Java-incompatible*** Android is irrelevant to its ability to monetize a ***Java-compatible*** Android. This testimony could only confuse the jury.

**V.     Dr. Leonard Lacks Expertise Necessary To Testify On Conjoint Analysis**

Dr. Leonard purports to critique Dr. Shugan's conjoint survey and analysis of consumer preferences for the attributes provided by the copyrights and patents in suit. As explained in Dr. Shugan's declaration, submitted with Oracle's opening brief, Dr. Leonard lacks the expertise necessary to critique Dr. Shugan's work and fundamentally misunderstands the marketing literature on conjoint analysis. Dr. Leonard's response is to file a declaration that simply misreads a larger number of articles, compounding his errors and confirming his lack of expertise. (Shugan Response Decl. ¶¶ 4–22.) Dr. Leonard's testimony on conjoint analysis should be excluded.

Dated: November 1, 2011

BOIES, SCHILLER & FLEXNER LLP

By: /s/ *Steven C. Holtzman*
      Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.