KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
DANIEL PURCELL - #191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:     415.391.5400
Facsimile:     415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY  10036
Tel:     212.556.2100
Fax:     212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel:     415.318.1200
Fax:     415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:     650.328.8500
Fax:     650.328-8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>          Plaintiff,<br><br>  v.<br><br>GOOGLE INC.,<br><br>          Defendant. | Case No. 3:10-cv-03561-WHA<br><br>**GOOGLE'S RESPONSE TO PROPOSED TRIAL PLAN**<br><br>Judge:  Hon. William Alsup |

1    In its October 26, 2011 Order (Dkt. No. 564), the Court proposed a trifurcated jury trial

2  and invited counsel to critique its proposed trial plan.  Google agrees with the Court that the trial

3  should be trifurcated into three phases, with copyright liability in phase one, patent liability in

4  phase two, and damages and willfulness in phase three.  The Court's proposal would reduce the

5  likelihood of juror confusion and is more likely to lead to a just result than a non-trifurcated trial.

6    Google also renews its request for a stay of the patent case pending completion of the

7  reexamination proceedings.  Those proceedings are actively affecting the scope of this litigation.

8  For example, the PTO recently closed prosecution proceedings for the '720 patent with rejections

9  on all of the asserted claims of that patent, which represent almost a quarter of the patent claims

10  asserted in this case.  And throughout the reexamination proceedings, Oracle has been forced to

11  change the scope of its patent claims, making unambiguous arguments for a narrow construction

12  of certain claim terms as well as amending and adding new claims.  The patent case should be

13  stayed to allow the reexamination proceedings to run their course so that this Court's

14  proceedings are not merely duplicative of PTO activity or, worse, unnecessary.  Should the Court

15  decline to stay the patent case, Google requests that the Court allow the parties to videotape live-

16  witness testimony in the copyright case (phase one) and present that evidence by videotape in

17  subsequent phases, if necessary, in order to minimize the burden a trifurcated trial might impose

18  upon witnesses, especially third parties not affiliated with Google or Oracle.

19  **A.    A trifurcated trial is the most practical and efficient way to try this case.**

20    "For convenience, to avoid prejudice, or to expedite and economize, the court may order

21  a separate trial of one or more separate issues [or] claims[.]"  Fed. R. Civ. P. 42(b).  The trial

22  court has broad discretion in deciding how to manage the trial, including whether to sever issues

23  or claims.  *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005);

24  *Netflix, Inc. v. Blockbuster, Inc.*, C 06-02361 WHA, 2006 WL 2458717 (N.D. Cal. Aug. 22,

25  2006); *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 448 (N.D. Cal. 2001); *Arnold v. United*

26  *Artists Theater Circuit, Inc.*, 158 F.R.D. 439, 458 (N.D. Cal. 1994);  *Gardco Mfg., Inc. v. Herst*

27  *Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987).

28    In determining whether to sever claims for trial, courts consider a variety of factors.

1

1    These factors include whether such severing would:  (1) reduce the complexity of the case or

2    increase juror comprehension, (2) result in significant delay or redundancy in the trial, or (3)

3    prejudice either party.  *See*, *e.g.*, *Arnold*, 158 F.R.D. at 458; *Ciena Corp. v. Corvis Corp.*, 210

4    F.R.D. 519, 521 (D. Del. 2002); *WeddingChannel.Com, Inc. v. The Knot, Inc.*, 03 CIV. 7369

5    (RWS), 2004 WL 2984305 (S.D.N.Y. Dec. 23, 2004); *Real v. Bunn-O-Matic Corp.*, 195 F.R.D.

6    618, 621 (N.D. Ill. 2000).  In this case, all of these factors support trifurcation.

7    **1.     A trifurcated trial would reduce complexity and increase juror comprehension.**

8

9    Severing claims or issues for trial is a well-established method of managing complex

10   patent cases.  *See, e.g.*, *Ciena Corp.*, 210 F.R.D. at 521 (noting that "bifurcation of complex

11   patent trials has become common"); *Smith v. Alyeska Pipeline Service Co.*, 538 F. Supp. 977,

12   984 (D. Del. 1982) (finding "that one trial of both issues [*i.e.*, liability and damages] would tend

13   to clutter the record and to confuse the jury.").  "Experienced judges use bifurcation and

14   trifurcation both to simplify the issues in patent cases and to maintain manageability of the

15   volume and complexity of the evidence presented to a jury."  *Ciena Corp.*, 210 F.R.D. at 521

16   (quoting Thomas L. Creel, *Bifurcation, Trifurcation, Opinions of Counsel, Privilege and

17   Prejudice*, 424 PLI/Pat 823, 826 (1995)); *see also* Manual for Complex Litigation (Fourth) §

18   33.27 (2004) ("Bifurcation of a patent jury trial or a phased trial considering major issues

19   separately can sometimes assist in properly focusing the jury's attention").

20   This case plainly is complex.  Concepts like "application programming interfaces" and

21   "virtual machines" will be foreign to most jurors.  The sheer breadth of the case adds to the

22   complexity.  Oracle's patent case alone involves 26 claims of six unrelated patents.  Oracle

23   proposes 59 jury instructions.  Its verdict form includes 110 questions of fact for the jury.  The

24   joint exhibit list is 161 pages long and lists thousands of potential exhibits.  It is unreasonable to

25   expect a jury to digest all of this information over the course of a single, colossal, multi-week

26   trial.  And it is no wonder that the Court repeatedly has urged Oracle to narrow the claims to a

27   manageable number for trial.  (*See*, *e.g.*, Dkt. Nos. 131 and 458.)  Oracle simply refuses to do so.

28   Trifurcating the case into three phases would reduce complexity by allowing the jurors to

1   focus on only those issues relevant to a particular phase.  *Ciena Corp.*, 210 F.R.D. at 521 (noting

2   that trifurcation can "enhance jury decision making in two ways: (1) by presenting the evidence

3   in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal

4   issues the jury must address at any particular time."  (quoting Steven S. Gensler, *Bifurcation*

5   *Unbound*, 75 Wash. L. Rev. 705, 751 (2000))).  For example, in the copyright phase, the jury

6   will not need to hear evidence of what the patent claims are, how the claim terms have been

7   construed, or how the Dalvik virtual machine works—none of which are relevant to the

8   copyright issues.  By narrowing the scope of the issues the jury must consider at any given time,

9   trifurcation would increase overall juror comprehension and lead to a more just result than in a

10   non-trifurcated trial.

11          **2.      A trifurcated trial would not result in significant delay or redundancy.**

12          A trifurcated trial would not result in significant redundancy in the presentation of

13   evidence or argument, nor would it significantly lengthen the overall trial time, because all three

14   phases would be ***tried to the same jury***.  *See Laitram Corp. v. Hewlett-Packard Co.*, 791 F.

15   Supp. 113, 117-18 (E.D. La. 1992) (ordering a "single trial" to proceed in "three separate and

16   distinct phases" before the same jury); *see also Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842,

17   849 (D. Del. 1991) (noting possibility of bifurcating issues into "separate phases of a single

18   trial").  As the Court noted in its October 26, 2011 Order (Dkt. No. 564):  "All evidence

19   presented in an earlier phase can be used by counsel and by the jury in a subsequent phase as

20   relevant to the issues then on trial."  Most background narrative evidence—the identity of the

21   parties, the history of Java, the general purpose of Android—likely would need to be presented

22   to the jury only once.  Any redundancy that might result from the parties' need to re-present

23   more specific or more complicated evidence would be offset by the gains in juror comprehension

24   that would result from a trifurcated proceeding in which the issues are more focused.  *See In re*

25   *Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) ("In deciding whether one trial or

26   separate trials will best serve the convenience of the parties and the court, avoid prejudice, and

27   minimize expense and delay, the major consideration is directed toward the choice most likely to

28   result in a just final disposition of the litigation.")

GOOGLE'S RESPONSE TO PROPOSED TRIAL PLAN
CASE NO. 3:10-cv-03561-WHA

**3.      A trifurcated trial would not prejudice the parties.**

In assessing the risk of prejudice, the Court should consider two types of prejudice: *first*, the prejudice that may arise from juror confusion if severance is denied; and *second*, prejudice caused by delay that might result from severance.  *Real*, 195 F.R.D. at 621.  As discussed above, a trifurcated trial would reduce the likelihood of juror confusion.  Trifurcation therefore reduces—not creates— the first type of prejudice.  And trifurcation would not significantly delay the trial of this action.  Severing the case would crystallize the issues for the jurors and allow them to understand complex facts faster and with greater ease.  Thus, by trying all necessary phases *in seriatim* to a single jury, the case can be presented as expeditiously as it could be in a single, sprawling, unitary trial.  Thus, a trifurcated trial would not prejudice the parties.

Accordingly, and for all the foregoing reasons, Google agrees with the Court's proposal for a trifurcated trial as described in the Court's October 26, 2011 Order (Dkt. No. 564).

**B.      The PTO's reexamination proceedings are actively affecting the scope of this case and the patent trial should be stayed pending completion of those proceedings.**

The primary trial management problem in this case is Oracle's refusal to narrow its patent claims to a reasonable number for trial.  The PTO's reexamination proceedings, however, *have narrowed* (and will continue to narrow) the scope of some of the asserted claims.  Accordingly, the Court should stay the patent case pending completion of the reexamination proceedings.

As explained in Google's October 4, 2011 Case Management Statement (Dkt. No. 480), reexamination proceedings may significantly reduce the number of claims to be tried in this case.  Just two days ago, the PTO examiner closed prosecution for the '720 patent, with rejections on all asserted claims.  The PTO's rejection of the asserted claims of the '720 patent is significant—according to Oracle's damages expert, "the '720 patent alone would be approximately 10% [$20.2 million] of the aggregate (portfolio) reasonable royalty" Oracle seeks.  These claims of the '720 patent represent almost a quarter of Oracle's asserted patent claims for trial.  In total, almost two-thirds of the asserted patent claims Oracle intends to try in this case have been rejected.[1]

[1] The PTO has yet to issue an office action on the six claims of the '104 patent.  As for the other

4

1    Even if the asserted patent claims are not ultimately rejected in the reexamination

2  process, the reexamination proceedings will affect the scope of the claims to be tried in this case.

3  Indeed, the reexamination proceedings ***already have*** resulted in a narrowing of some of Oracle's

4  asserted claims.[2]  That is because, in the reexamination proceedings, Oracle has made

5  unambiguous arguments for a narrow construction of certain claim terms.  Oracle's narrowing

6  arguments act as an immediately effective disavowal of any broader scope for those claims, even

7  if the claims are not ultimately amended.  *See Marine Polymer Techs, Inc. v. HemCon, Inc.*, 659

8  F.3d 1084, 2011 WL 4435986, *5 (Fed. Cir. 2011) ("[W]e have consistently held that arguments

9  made to the PTO on reexamination can create an estoppel or disavowal and thereby change the

10  scope of claims even when the language of the claims did not change.").

11    Oracle has made the following narrowing arguments in the reexamination proceedings:

12    • That the claims of the '702 patent require that the "multi-class file" contain the same
        bytecodes as the original "class files." (USPTO Reexam Control No. 90/011,492,
13      Response to Office Action at 20 (Sept. 6, 2011)).

14    • That the term "an instruction" as used in the claims of the '520 patent refers to
        exactly one instruction rather than one or more instructions (USPTO Reexam Control
15      No. 90/011,489, Interview Summary (Aug. 4, 2011)).

16  These arguments limit the scope of the claims to be tried in this case.  *See Marine Polymer*, 2011

17  WL 4435986, *6 ("[I]f the scope of the claims actually and substantively changed because of

18  Marine Polymer's arguments to the PTO, the claims have been amended by disavowal or

19  estoppel and intervening rights apply.  This is so even though Marine Polymer did not amend the

20  language of its claims on reexamination.").  Further narrowing of claims likely will occur as the

21  reexamination proceedings progress.  Accordingly, in order to conserve judicial resources and

22  _____

    patents, 80% of the claims as to which the PTO has issued an office action have been rejected.

23  [2] At the October 19, 2011 case management conference, the Court noted that only 11 percent of
    all claims ultimately get rejected in reexamination proceedings.  The more relevant statistic for
24  assessing the utility of a stay, however, is the number of claims that are cancelled ***or*** changed as
    a result of reexamination proceedings.  In *ex parte* reexamination proceedings 76% of all claims
25  are ultimately cancelled or changed.  United States Patent and Trademark Office, Reexamination
    Filing Data, September 30, 2011, *available at*
26  http://www.uspto.gov/patents/stats/Reexamination_Information.jsp.  In *inter partes*
    reexamination proceedings, the number is even higher:  89% of all claims ultimately are
27  cancelled or changed in the reexamination process.  *Id.*  The reexamination proceedings for the
    patents at issue in this case are of both types—the proceedings for the '720 and '205 patents are
28  *inter partes*; the proceedings for the '702, '476, '104, and '520 are *ex parte*.

5

1  avoid duplication in this court of the PTO's efforts in the reexamination proceedings, the Court

2  should stay the patent case pending completion of the reexamination proceedings.[3]

3  **C.      The Court should allow the parties to videotape testimony from the copyright trial
           and replay that videotape, if necessary, in subsequent phases.**

4

5        If the Court declines to stay the patent trial, the Court should allow the parties to

   videotape live-witness testimony from the copyright trial (phase one) and replay that testimony,

6

   as needed, in subsequent phases.  Doing so will ensure fairness to the parties and minimize the

7

   burden on party and nonparty witnesses whose testimony may be relevant to all three phases of

8

   the trial.

9

        Both Google and Oracle intend to call several witnesses whose testimony likely will be

10

   relevant to all three phases of a trifurcated trial.  Many of these witnesses are senior executives

11

   with extremely busy schedules or third parties who may be unwilling or unable to testify three

12

   different times.  Rather than forcing these witnesses to remain "on call" throughout three trial

13

   phases—or, in the case of third-party witnesses, risking their unavailability for one or more

14

   phases—Google proposes that the Court allow the parties to videotape live witness testimony

15

   from the copyright phase and replay that evidence, as necessary, in subsequent phases.  Doing so

16

   will minimize the burden on party and nonparty witnesses, while still allowing the parties to re-

17

   present certain evidence that jurors are unlikely to recall from a previous trial phase.

18

19  Dated:  November 18, 2011                        KEKER & VAN NEST LLP

20

21

22                                                  By: *s/ Robert A. Van Nest*
                                                       ROBERT A. VAN NEST
                                                       Attorneys for Defendant
23                                                     GOOGLE INC.

24

25  [3] Any delay in the completion of the reexamination proceedings is a product of Oracle's own
   doing.  Oracle has requested several extensions of time—USPTO Reexam Control Nos.
   95/001,560 (Apr. 29, 2011), 90/011,521 (July 15, 2011), and 90/011,492 (July 5, 2011)—and has
26  filed each response on the final day possible.  Moreover, in one reexamination proceeding,
   Oracle actually *added* claims, which could delay further the issuance of a final office action.
27  (USPTO Reexam Control No. 95/001,548, Amendment (Oct. 19, 2011)).  Oracle's tactics in the
   reexamination proceedings belie any argument that a stay of the patent case pending completion
28  of those proceedings would somehow prejudice Oracle by delaying its right to relief.

6