IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>GOOGLE INC.,<br><br>  Defendant. | No. C 10-03561 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORTS OF GREGORY K. LEONARD AND ALAN J. COX** |

## INTRODUCTION

In this patent and copyright infringement action involving Java and Android, plaintiff moves to strike portions of the reports by defendant's damages experts. For the following reasons, with one exception explained below, the motion is **DENIED**.

## STATEMENT

The factual background of this action has been set forth in previous orders (*see* Dkt. Nos. 137, 230, 433). The damages aspect of this action has been controversial. The parties and their retained damages experts have advanced extremely divergent outcomes. Oracle's expert, Professor Iain Cockburn, opined in his first report that a hypothetical license for the alleged infringement would have been "at least $1.4 billion" and "could be as much as $6.1 billion" (Dkt. No. 230 at 4). Responding, Google's experts estimated much lower damages: $27.8 million and $6.44 million for the alleged patent and copyright infringement, respectively (Dearborn Exh. 1 [Leonard Report] at 72; Dearborn Exh. 2 [Cox Report] at 64). The complexity of calculating potential patent and copyright damages, and starkly conflicting expert testimony, led to the appointment under Rule 706 of an independent expert to testify as to damages (Dkt. No. 374).

Plaintiff Oracle has now moved to strike portions of Google's expert reports on patent-infringement damages by Dr. Gregory K. Leonard and copyright-infringement damages by Dr. Alan J. Cox.  This order follows full briefing.

**ANALYSIS**

"A witness qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FRE 702. District courts thus "are charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008).

Here, Oracle seeks to strike significant portions of both of Google's damages reports. Oracle contends that the reports contained unqualified technical opinions, were based on unreliable "spoon-fed" facts, and were inconsistent with established damages principles. Each of Oracle's arguments will be addressed in turn.

1. **UNQUALIFIED TECHNICAL OPINIONS.**

Oracle argues that Drs. Leonard and Cox, both economists with no technical expertise, offered unqualified opinions regarding technical matters. Specifically, Oracle seeks to strike sections of the reports that stated that Google had "good" and "multiple acceptable and effective non-infringing alternatives" to the patents and copyrights in suit at the time of the hypothetical negotiation (Br. 4). This objection is overruled. Both experts relied on Google's non-infringement experts, interviews with Google's employees, and documentary evidence for the technical points. Expert reliance on foundational facts supplied by Google's engineers can be proper so long as they testify to the foundational facts with firsthand knowledge. *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2323856 at *2 (N.D. Cal. May 22, 2008) (Alsup, J.) ("The traditional and correct way to proceed is for a foundational witness to testify first-hand at trial to the foundational fact . . . and to be cross-examined. Then the expert can offer his or her opinion on the assumption that the foundational fact is accepted by the jury.").

2

Google acknowledged in its opposition brief that it will "offer the underlying factual testimony from the percipient witnesses first, before its [damages] experts may testify based on those facts" (Opp. 3).

Oracle's supposed examples of inappropriate technical opinions are not persuasive (Br. 4–5). For instance, Oracle objects to the statement, "Google could have used a programming language other than Java" in Dr. Leonard's report as an inappropriate technical opinion (Br. 4). But Dr. Leonard cites interviews with three different Google engineers and non-infringement expert reports for that proposition (Leonard Report 13 n. 25). This order will not address each of Oracle's examples individually. Having reviewed the record, this order finds that in each example, the damages experts did rely on sources of information reasonably relied upon as long as the foundational facts are properly laid at trial. Of course, the expert should make clear that he assumes this point and is not himself qualified to make expert findings on the technical point.

### 2. RELIANCE ON INTERVIEWS WITH GOOGLE EMPLOYEES.

In a parallel way, Oracle argues that Drs. Leonard and Cox inappropriately based their calculations on "spoon-fed" facts given by Google employees (Br. 6). As discussed above, expert reliance on interviews with Google's engineers can be proper so long as they can testify to the foundational facts with firsthand knowledge. *See Therasense, Inc.*, 2008 WL 2323856 at *2. If Oracle is worried about bias, then it should make its arguments on cross-examination.

Oracle also argues that the timing of these interviews is unfair because most were conducted the "week prior to service of the Reports and after the conclusion of fact depositions" (Br. 6). A recent order, however, addressed this concern by allowing additional depositions of three of the "spoon-feeders," the three to be selected by Oracle (Dkt. No. 617). All but one of the seven interviewees referenced in the damages reports had already been deposed or offered for deposition (*ibid.*).

Oracle also argues that Drs. Leonard and Cox have inappropriately relied on interviews at odds with documents produced in discovery (Br. 8–9). This argument overstates the record evidence favoring Oracle. While Oracle can point to discovery documents that support its contentions, Google can similarly rely on its own witnesses to rebut those contentions. Who is to

3

1  say at this stage which is more accurate? Documents produced in discovery are not judicial
2  admissions. They are only data points. Company witnesses can try to explain away and even
3  contradict those data points. Subject to the rules of evidence, Oracle will have its chance during
4  trial to make the contrary case with Google's own documents. *See Hangarter v. Provident Life &*
5  *Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) (holding that the factual basis of an expert
6  opinion goes to the credibility of the testimony, not the admissibility, and that it is up to the
7  opposing party to examine the factual basis for the opinion in cross-examination).

### 3.  OPINIONS NOT SUPPORTED BY ANY EVIDENCE.

Oracle argues that Drs. Leonard and Cox cite no evidence for some key propositions (Br. 9–10). This argument is plainly wrong. The allegedly unsupported sentences in the expert reports were actually part of broader discussions with citations. For example, Oracle objects to the phrase, "demand for a smartphone is a complex function of all of its attributes, and a smartphone with slower application speed can still be highly demanded by consumers" (Br. 10) as being unsupported. This passage has been taken out of context; instead, the entire sentence included the introductory phrase "As discussed above . . ." (Leonard Report 25). And above that sentence, on the same page in the report, Dr. Leonard cited a record document, a market research study, and a deposition of an Oracle engineer for the proposition that there are many different attributes that drive consumer demand (Leonard Report 25). Oracle has made no attempt to debunk these citations.

Oracle takes issue with another phrase, "[smartphone manufacturers] would have accepted small reductions in performance or somewhat more demanding handset specification in order that they could still be able to offer Android smartphones" (Br. 10). Contrary to Oracle's assertion that this was *ipse dixit*, this phrase actually had a citation to an interview with Andy Rubin, founder of Android and the head of Google's Android division (Leonard Report at 30). Likewise, the other examples in Oracle's brief either have supporting citations attached to it or are part of a broader discussion where support can be inferred from surrounding text.

### 4. OPINIONS ON FRAGMENTATION AND STAGNATION.

Oracle argues that Google's damages experts were unqualified to opine on stagnation and fragmentation in the Java community and relied on unreliable sources in doing so (Br. 11). This order disagrees. The term "stagnation" was used in a business sense to describe dissatisfaction among carriers, device manufacturers, and developers for the Java platform (*see* Leonard Report 31–33; Cox Report 44–45). Similarly, "fragmentation" was used in a business sense to describe how Java's "write once, run anywhere" marketing concept was being eroded by a proliferation of incompatible devices and platforms (*see* Leonard Report 34–37; Cox Report 45–48). Notably, Oracle's own damages expert, Professor Cockburn, has opined on this same fragmentation issue without having a background in computer science (Dkt. No. 230 at 9).

Oracle also argues that Google's damages experts failed to rely on facts or data customarily relied upon in their opinions on fragmentation and stagnation. Oracle does not meet its burden to support this argument because it makes no attempt to debunk the citations. In their reports, Google's experts cited depositions with former and current Oracle employees, including Hasan Rizvi (Senior Vice President of Java), Jeet Kaul (former Vice President of the Java Clients Software Group at Sun Microsystems), and Vineet Gupta (Senior Director, Chief Technology Strategy Officer at Sun Microsystems, and subsequently an employee of Oracle). Google's damages experts also relied on interviews with John Rizzo (a third-party witness who has experience with Java licenses), postings on internet blogs by James Gosling (former Chief Technology Officer at Sun), and other online sources. These are sources of information the damage experts can reasonably rely upon as long as the foundational facts are properly laid at trial. Oracle has not meet its burden to show that these sources are unreliable.

### 5. LITTLE OR NO UPWARD ADJUSTMENT FOR LOST BUSINESS OPPORTUNITY.

Oracle's expert, Professor Cockburn, opined that the starting point for patent damages should be upwardly adjusted because infringement would have prevented Sun from offering a commercial version of the Java platform that would run within Android (Br. 12). That is, Sun would not be able to develop a potential business opportunity to create an Android-compatible Java platform. Oracle now seeks to exclude portions of Dr. Leonard's report that criticized this

5

upward adjustment by arguing that Dr. Leonard's opinion constitutes an inappropriate mitigation defense (Br. 12–13).  Google's Dr. Leonard opined that there should be little or no upward adjustment because this business opportunity was not lost and was not worth that much to begin with (Leonard Report 82–83).  Despite using the word "mitigate" in his report, Dr. Leonard's opinion was not based on the legal assumptions of a contract-style mitigation defense.  Instead, Dr. Leonard merely opined on the value of this allegedly lost business opportunity.  This objection is overruled.

      **6.**    **MISUSE OF NON-INFRINGING ALTERNATIVES TO REDUCE DISGORGEMENT DAMAGES.**

Turning to the copyright side, Oracle argues that Google's Dr. Cox inappropriately opined that non-infringing alternatives would provide a basis for calculating wrongful profit (Br. 11–12).  Copyright law provides recovery for "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. 504(b).  In his damages report, Dr. Cox opined:  "The ready availability of obviously acceptable non-infringing alternatives also provide [sic] basis that the 'element of profit' that is attributable to the allegedly infringed API claim contained in the Android framework is very small or zero" (Cox Report 38).  Dr. Cox did not explain how the availability of non-infringing alternatives supposedly decreased the wrongful profits attributable to infringement.  In its opposition brief, Google argues that the existence of non-infringing alternatives suggests that profits are attributable to other, non-infringing features added by the alleged infringer (Opp. 14).  This is not convincing.

There is no controlling authority on the issue of whether the existence of non-infringing alternatives should be considered when calculating disgorgement damages under Section 504(b).  But our court of appeals' interpretation of the purpose behind Section 504(b) sheds light on this issue.  Our court of appeals has held that Section 504(b) was enacted to explicitly provide for two *distinct* monetary remedies — actual damages and recovery of wrongful profits — to serve different purposes.  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004).  Damages for lost license fees, derived from a hypothetical negotiation, fall under the rubric of actual damages.  *Id.* at 708–709.  As Dr. Cox makes clear in his report, the existence of "multiple

6

acceptable and effective" non-infringing alternatives "at little or no additional cost" greatly reduces the lost license fees (Cox Report 61). This order finds this aspect acceptable. Not acceptable, however, is allowing the existence of non-infringing alternatives to reduce recovery of wrongful profits. This is a distinct remedy for the purpose of *disgorgement*. Non-infringing alternatives have nothing to do with this. The motion to strike portions of Dr. Cox's report that opined that non-infringing alternatives would provide a basis for calculating wrongful profit is **GRANTED**.

### 7. CRITIQUE OF CONJOINT ANALYSIS.

Oracle argues that Dr. Leonard was unqualified to critique the conjoint analysis — a type of consumer-preference marketing study — conducted by Dr. Shugan (Br. 13–14), and attacks Dr. Leonard's interpretation of the relevant academic literature in the field of survey-based research. This order disagrees. Dr. Leonard's opinions on conjoint analysis are proper expert testimony. Dr. Leonard has published and conducted studies in the field of survey-based research (Leonard Decl. ¶¶ 22–23). He extensively cited to academic literature in his criticisms of Dr. Shugan's conjoint study. If Oracle has problems with Dr. Leonard's interpretation of the literature, then it should save its critiques for trial.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to exclude portions of Dr. Leonard's and Dr. Cox's expert reports is **GRANTED IN PART** and **DENIED IN PART**. As to Dr. Cox's opinions that non-infringing alternatives were a basis for calculating wrongful profits, the motion is **GRANTED.** Any opinion in the Expert Report of Dr. Alan M. Cox that stated, in substance, that non-infringing alternatives should in any way affect the calculation of infringer's profits under 17 U.S.C. 504(b) is **STRICKEN**. As to Oracle's other contentions, the motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 28, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7