MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax)

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>  Plaintiff,<br><br>  v.<br><br>GOOGLE, INC.<br><br>  Defendant. | Case No. CV 10-03561 WHA<br><br>**PLAINTIFF'S RESPONSE TO TENTATIVE ORDER ON GOOGLE'S MOTION IN LIMINE NO. 3 TO EXCLUDE PORTIONS OF COCKBURN REPORT ON DAMAGES**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

## I. INTRODUCTION

This brief addresses Parts 4, 5, 7 and 8 of the December 6, 2011 tentative order (Dkt. 642).

Part 4 of the tentative order finds that "Dr. Cockburn had a reliable basis for valuing the patents and copyright-in-suit's relative contribution to the success of Android." (Tentative Ord. at 8.)  But it faults Prof. Cockburn for using this relative contribution to inform his apportionment of the 2006 license bundle.  The tentative order reasons that the value of Android might not be equivalent to the value of the 2006 license bundle, and suggests that Dr. Cockburn consequently may not be permitted to opine on a reasonable royalty derived from a hypothetical negotiation.  (*Id.* at 9.)

Prof. Cockburn faithfully sought to follow the Court's July 22, 2011 Order.  He did so reliably and in a scientific manner.  The reasonable royalty analysis in this case is complex, and the tentative order notes the absence of case law to guide the analysis.  Oracle thus appreciates the opportunity to further explain Prof. Cockburn's approach, especially given the serious potential remedy and the fact that Google did not brief the calculation issue that the tentative order identifies.

As Prof. Cockburn emphasizes, using the patents' and copyrights' relative contribution to Android to allocate the value of the 2006 bundle is appropriate because the value of Android is equal to or greater than the value of the bundle.  Google provides no basis to conclude it could be less; Google's experts contend it is much more.  This is why Prof. Cockburn's apportionment analysis is reasonable and conservative.  If the value of Android is equal to or greater than the value of the 2006 license bundle, then the calculation of the patents' and copyrights' relative contribution to Android necessarily *understates* their relative contribution to the bundle.

No case, including *Medtronic*, the unpublished opinion cited in the tentative order, has required a plaintiff to directly value components of a bundle that are not in suit.  Such an analysis would ignore the complementary relationship among components and focus the jury on an immense collection of components, costs, and benefits not at issue.  Indeed, in a recent article, **Google's** damages expert argues that trying to directly apportion the value of all the components of a bundle is economically unsound.  Prof. Cockburn's use of the value of Android as a substitute for that endeavor is a reliable, conservative approach.

Even if the Court were to preclude use of the relative contribution to Android to allocate the

value of the bundle, Prof. Cockburn's full analysis provides ample basis for testimony regarding a reasonable royalty. Prof. Cockburn's apportionment opinion is based on far more than his calculations, including the measure of that relative contribution, which the tentative order finds reliable, and other extensive record evidence. He should be permitted to explain his analysis and conclusions at trial, subject to cross examination by Google, the testimony of Google's experts, and Dr. Kearl's testimony.

Oracle also disagrees with Part 5 of the tentative order. Oracle is not aware of any case requiring damages to be calculated on a claim-by-claim basis. The hypothetical negotiation should reflect that parties negotiate licenses for patents, not claims of patents. Moreover, the record, including Google's experts' own analysis, does not support the conclusion that the overlapping claims at issue in each patent have different values. Google's proposed remedy—to instruct the jury that it may assume the entire value of the patent is attributable to any claim it finds has not been infringed—is contrary to the facts and the law. If Google infringes any claim, Oracle is entitled to damages.

Part 7 of the tentative ruling should be reconsidered in view of holdings of the Federal Circuit and this District that any future royalty is an equitable matter that should be assessed after trial in connection with a request for a permanent injunction, based on a new hypothetical negotiation that occurs after a finding of liability. In any event, Prof. Cockburn complied with the Court's directions, by omitting any lump sum that combines past and future damages and providing both the framework and the data necessary to project future damages should such a calculation be required at trial.

Finally, Part 8 of the tentative ruling should be reconsidered in view of Prof. Cockburn's anticipated testimony about the Sun/Microsoft agreement because he segregates out the antitrust component of that license. That license addressed Microsoft's fragmentation of the Java platform similar to Android's fragmentation of Java here. The testimony is relevant and should be permitted.

## II. ARGUMENT

### A. Apportionment Analysis

#### 1. Using The Relative Contribution Of The Patents And Copyrights In Suit To Android Is A Reasonable Basis For Apportionment

Based on the Court's "strong" suggestion to calculate the reasonable royalty starting from the $100 million value proposed for the 2006 license bundle and adjusting downward for apportionment

(*see* Dkt. 230 at 14), Prof. Cockburn recognized that he had to estimate what portion of that offer (and the upward adjustment) was attributable to the patents and copyrights in suit.  This could be stated as:

$$\frac{\text{Value of Patents and Copyrights in Suit To Google}}{\text{Value of (Patents- and Copyrights-In-Suit} + \textbf{All Other Java Bundle Components}\text{) To Google}}$$

Using performance, econometric, and conjoint studies, Prof. Cockburn directly measured the numerator of this equation, and the tentative order finds that measurement reliable.  (Tentative Ord. at 8 ("Dr. Cockburn had a reliable basis for valuing the patents and copyright-in-suit's relative contribution to the success of Android.").)  However, Prof. Cockburn also recognized that the denominator of the equation is difficult to measure reliably because Google did not adopt the full bundle, because the bundle includes numerous complex components, and because synergies among the components make simple addition undesirable as a method of valuation.  (Cockburn Report ¶¶ 246–51.)  Thus, instead of trying to determine the denominator with false precision, Prof. Cockburn used a denominator he could be certain was greater than the value of the bundle to Google: the value of Android over Google's next best alternative for generating mobile advertising revenue.  (*See id.* ¶¶ 264–67; 272 n.327.)  Thus, Prof, Cockburn calculated his apportionment percentage as:

$$\frac{\text{Value of Patents and Copyrights in Suit To Google}}{\text{Value of (Patents- and Copyrights-in-Suit} + \textbf{All Other Android Components}\text{) To Google}}$$

As the tentative order finds, this calculation would be a complete answer to apportionment if the royalty base consisted of some measure of the infringer's profits.  (Tentative Ord. at 8–9.)  This is because the apportionment inquiry focuses on "the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer."  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor 13).  Prof. Cockburn applied the calculation to the bundle to adhere to the Court's previous suggestion that the reasonable royalty be based on the adjusted value of the 2006 license bundle rather than Google's profits from Android.

As Prof. Cockburn emphasized, the value of All Other Android Components To Google is greater than or equal to the value of All Other Java Bundle Components To Google.  (*See* Cockburn Report ¶ 272 n. 327.)  Google has pointed to nothing suggesting it could be less.  Indeed, Google's

experts argue that Android's value to Google is largely, if not entirely, the result of Google's own contributions, not the result of the bundle of Java technologies and intellectual property it considered licensing in 2006. (Leonard Report at 6–8, 17.) It is not necessary to directly value each component of the bundle or the full bundle to reach the reasonable conclusion that the value of Android is greater than or equal to the value of the bundle to Google.

Based on this conclusion, Prof. Cockburn's apportionment calculation ***cannot overstate the apportionment percentage in Oracle's favor.*** Using contribution to Android's success would be a reasonable basis for valuation in a licensing negotiation and is economically valid. The tentative order notes that Prof. Cockburn "admitted" the value of Android could be more than the value of the 2006 license bundle. (Tentative Ord. at 8.) But this is not a damaging "admission"; it is an important affirmative conclusion that confirms a conservative measure of apportionment. Similarly, the tentative order's statement that "the value of Android could have been more *or less*" than the value of the 2006 license bundle to Google is inconsistent with both Prof. Cockburn's analysis and the evidence. (*Id.*) It would be inappropriate to strike Prof. Cockburn's methodology based on a *factual* conclusion that the incremental value of Android "could have" been more or less than the value of the bundle, particularly where neither Google's motion nor Google's experts anywhere challenges that denominator.[1] Prof. Cockburn's application of sound methodology to fact should be "tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998).

### 2. Requiring Prof. Cockburn To Value The Elements Of The 2006 License Bundle That Are Not In Suit Is Not Supported By Law Or Economics

Prof. Cockburn's report states his opinion that the value of Android is greater than or equal to

---

[1] Google's argument is limited to the conclusory (and false) proposition that "[h]aving no knowledge of the whole, [Prof. Cockburn] lacks any logical or legal basis for calculating the value of any of the parts." (Google Supp. Br. at 5–6.) As the tentative order finds, Prof. Cockburn *does* have a reliable basis for calculating the value of the relevant parts. Google has raised no challenge to the use of this value—the relative contribution of the patents and copyrights in suit—as the basis for apportionment of the value of the bundle, based on the logical conclusion that the value of the bundle could not exceed the value of Android. A district court has no "independent mandate" to exclude evidence where the parties have asserted no objection. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 3324 (2010).

the value of the 2006 license bundle; Google had the opportunity to probe the factual basis for that opinion when it took his deposition. Instead, as demonstrated by Google's brief (Google Supp. Br. at 3–5), Google chose to simply ask him questions about individual valuation of components of the bundle that are not in suit. Neither Google nor the tentative order points to any authority that requires an expert to value components not in suit. *Medtronic*, the only authority cited, did make reference to "determin[ing] the value to Medtronic of any of the items in that portfolio other than the patents-in-suit," but this dictum cannot reasonably be read as imposing such a requirement. Nothing in the facts or reasoning of *Medtronic* suggests that the decision turned on whether the expert valued components of the portfolio other than the patents-in-suit. Instead, the decision rested on the fact that the expert had cited the entire acquisition price of a larger portfolio, which included the patents in-suit, and then concluded, based on his "impression" or "gut feeling," that the patents-in-suit constituted the "overwhelming percentage" of the value of the portfolio. The court found that no evidence supported the expert's opinion that *all* of the value of the portfolio was attributable to the patents. *Medtronic, Inc. v. Boston Scientific Corp.*, No. 99-1035, 2002 WL 34447587, at *6–12 (D. Minn. Aug. 8, 2002). Nothing in the holding of *Medtronic* requires direct valuation of components not in suit. To the contrary, in *Finjan Inc. v. Secure Computing Corp.*, the Federal Circuit held that an expert can opine, and a jury can find, that patents-in-suit provided a "substantial fraction" of the value of an accused product, without making any effort to value other technology incorporated into that product. 626 F.3d 1197, 1211 (Fed. Cir. 2010).

Holding that Prof. Cockburn had to directly value the full bundle or the components of the bundle not in suit would ignore an important economic reality: a technology portfolio cannot be apportioned simply by treating the portfolio as the sum of its parts, because those various parts may be complementary, redundant or synergistic. Prof. Cockburn explained this in detail in his report (*see* Cockburn Report ¶¶ 246–51), and Google's patent damages expert, Dr. Leonard, concurs:

> When the combined use of two or more assets is worth more than their individual use, there is no unique way to apportion the overall value of the product among the assets. Unless a particular apportionment scheme was specified by legislation, substantial legal ambiguity would be created, and courts, juries, and parties would bear a heavy litigation burden. Moreover, any mechanical rule to apportion the synergies among the various assets needed to create the synergies would be arbitrary.

(Bailey, Leonard & Lopez, "Apportionment Treats The Symptom, Not The Disease," Law360, Dec. 9,

2011, http://www.law360.com/ip/articles/289544 ("Law360 Article").)  As discussed above, Prof. Cockburn found a reliable, conservative way around this problem, permitting him to undertake the analysis suggested by the Court in its July Order.  There is no basis on which to exclude his approach.

### 3. Beyond Application of The Apportionment Calculation, Prof. Cockburn's Report Provides A Sufficient And Reliable Basis For An Opinion Regarding Apportionment And Reasonable Royalty Damages

Prof. Cockburn calculated the value of the patents and copyrights in suit to Google in terms of incremental advertising revenue that Google has earned from Android, without factoring in expected, rapidly growing future revenues and strategic benefits Google obtains (and expected in 2006) from Android.  The calculation itself, which the tentative order finds reliable (Tentative Ord. at 8), is a standalone, conservative measure of at least one portion of damages that could proceed completely independent of any concern about applying that valuation to the 2006 license bundle.  As Dr. Leonard wrote this month:  "Under a sound economic approach, the dollar amount of the reasonable royalty award should reflect the incremental dollar value of the patented technology to the defendant as compared to the next best alternative."  (Law360 Article; *see also* R. Higgins & D. Martin, "The Economics Of The Entire Market Value Rule: As Applied to Complex Products" at p. 5 (2011), http://ssrn.com/abstract=1961276 ("An efficient royalty is equal to the marginal contribution of specific IP to the net value of the product or component whose creation the IP enables.").)  Preventing Prof. Cockburn from testifying *at all* as to a reasonable royalty would be a draconian remedy when reliable analyses he has already conducted permit him to do exactly that.[2]

In addition to the quantitative analysis, Prof. Cockburn supports his apportionment opinion with an extensive discussion of contemporaneous record evidence and economic considerations, explaining why the patents and copyrights in suit represent significant portions of the value of the portfolio.  (*See, e.g.*, Cockburn Report ¶¶ 26, 252–63.)  The contemporaneous documents and deposition testimony show that the speed and memory provided by the patents-in-suit and the access to application

---

[2] If the Court disagrees with Oracle's position, it would be relatively simple for Prof. Cockburn to revise his calculation based on his determination of the relative contribution to Android and the other *Georgia Pacific* factors he has already analyzed, and he should be given the chance to do so.  Relying on the Court's ruling that "Counsel will be given an opportunity to submit statements" on the question of whether Dr. Cockburn should be given an opportunity to revise his calculations if the tentative ruling is upheld (Tentative Ord. at 9), Oracle does not address that issue here.

developers provided by the copyrights-in-suit were extraordinarily important to Android, that Android was extraordinarily valuable to Google, and that the advertising revenues to which Prof. Cockburn's calculations are limited were just a fraction of that extraordinary value.  And Prof. Cockburn expressly discusses Prof. Mitchell's conclusion that developing an operating system *using Java but without the patented functionality* would have resulted in a "crippled" operating platform.  (*Id.* ¶ 253.)

All of this evidence—not just the use of his calculation of the relative contribution of the patents- and copyrights-in-suit to inform allocation of the 2006 bundle—permits Prof. Cockburn to offer an expert opinion as to the incremental value of the patents and copyrights to Google, whether expressed as a percentage of the adjusted 2006 license bundle or a percentage of the value of Android.[3] The calculation *corroborates* rather than *constitutes* this opinion.  (*Id.* ¶ 31.)  As the tentative order observes, the Federal Circuit has held that "based on internal documents calling the patented features important, the jury could infer that a substantial fraction of the accused products' profits stemmed from the patented invention."  (Tentative Ord. at 9, citing *Finjan*, 626 F.3d at 1208–11.)  Prof. Cockburn's multifaceted analysis permits a similar inference here.  Accordingly, even if the Court confirms the tentative ruling as to Prof. Cockburn's use of relative contribution to the value of Android to apportion the value of the 2006 bundle, there is no basis for excluding his apportionment or reasonable royalty opinion as a whole.

### B. Claim-By-Claim Patent Damages Analysis

Imposing a claim-by-claim patent damages requirement is unjustified by law.  Neither Google nor the tentative order cites any case that has required analysis of damages at the claim level.  There is good reason why the law imposes no such requirement: the hypothetical license negotiation should conform to how parties would license in the real world.  Parties do not negotiate for patent rights on a claim-by-claim basis.  But because Prof. Cockburn has not undertaken such an analysis, the tentative order proposes adopting Google's remedy that the jury "be instructed that if they find any asserted claim not infringed, they may assume that the non-infringed claim represented the full value of that

---

[3] There is no rule that damages cannot exceed the value of the 2006 license bundle.  *Spectralytics, Inc. v. Cordis Corp.*, 650 F. Supp. 2d 900, 910–11 (D. Minn. 2009), *aff'd in part, rev'd in nonpertinent part*, 649 F.3d 1336, 1346 (Fed. Cir. 2011) (rejecting argument that reasonable-royalty award should be capped at purchase price of portfolio).  The qualitative evidence here shows that damages should not be so capped.

patent." (Tentative Ord. at 10).[4]  Google's proposed remedy is contrary to law.  Oracle is entitled to damages if the jury finds Google infringed *any* claim of the patents.

Google's proposed remedy is also contrary to the facts.  There is no basis in the record for concluding that any of the claims of the patents are more valuable than others, let alone provide all of the value.  The claims of each patent are interrelated and overlapping, and are often infringed in exactly the same way.  (*See, e.g.,* Mitchell Report ¶¶ 301–02, 307, 310, 312–18 (describing how Google infringes all claims at issue in '104 patent in the same manner)).  Oracle's technical expert has opined that there are no practical workarounds for these patents at all, and Google's experts have not opined that any claim of a given patent would be easier to work around than others.  Indeed, Google has offered only lawyer's speculation, not evidence, that one claim of a given patent might be more valuable than another.  In the absence of such evidence, it is irrelevant that the jury might find only some claims of a patent to be infringed or that the PTO may reject some claims.

The tentative order suggests that claim-by-claim analysis is "necessary to get the correct timeline to calculate past damages," but in this case, there is no material dispute between the parties as to the date of the hypothetical negotiation.  Consistent with the facts and the Court's prior holding that infringement often begins before commercial release (Dkt. 230 at 7), Prof. Cockburn concluded that the hypothetical negotiation would have occurred in 2006.  The vast majority of the royalty would have been paid based on Android's revenues after its October 2008 commercial release.  For each patent, Google's experts also assume a hypothetical negotiation at or prior to Android's commercial release, and make no adjustments to Prof. Cockburn's damages calculations based on dates of first infringement.  (*See, e.g.,* Leonard Report at 9–10.)  Thus, the hypothetical negotiation—for all claims of all patents—would occur prior to any event that could affect the timeline for past damages, and a claim-by-claim breakdown is unnecessary.

Finally, because the Court has previously required Oracle to reduce the number of claims it may try, and because the Court has indicated that the dropped claims must be "forsaken" both in this and in any subsequent actions (*see* Dkt. 131; Dkt. 458), assigning damages to particular claims rather than to

---

[4] Oracle did not understand the Court's prior order to require claim-by-claim damages analysis.  The order referred to such analysis only as to computing the date of first infringement.  (Dkt. No. 230 at 7.)

patents threatens Oracle's due-process rights if there are any difference in the value of claims. Further, Oracle could lose valuable rights if the Court instructs the jury that, if just one claim is not infringed, the entire patent is valueless, in the absence of any evidence, much less any finding, that the value of the claims varies. If the Court does require claim-by-claim analysis, it should give Prof. Cockburn the opportunity to provide that analysis, or explain why such an analysis would make no difference here.

**C.  Future Damages**

The Court's prior *Daubert* order directed Prof. Cockburn not to include a lump sum combining past and future damages. He complied.

Future royalties, if any, are determined under 35 U.S.C. § 283 (injunctive relief), not 35 U.S.C. § 284 (damages). An ongoing royalty is properly a matter for the court, not the jury. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1316 (Fed. Cir. 2007); *Boston Scientific Corp. v. Johnson & Johnson*, No. C 02-0790-SI, 2008 WL 5054955, at *3–4 (N.D. Cal. Nov. 25, 2008). Moreover, the Federal Circuit has held that in most cases where a permanent injunction is not warranted, the court should allow parties to negotiate a license before imposing an ongoing royalty. *See Paice*, 504 F.3d at 1313–15. The appropriate procedure is a post-trial hearing in which the court considers evidence based on a hypothetical negotiation as of the date of the jury verdict. *See Amado v. Microsoft Corp.,* 517 F.3d 1353, 1361–62 (Fed. Cir. 2008) (remanding case for lower court to "take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability"); *Boston Scientific*, 2008 WL 5054955, at *3–5 (court set evidentiary hearing, with new expert testimony, after finding that "the hypothetical negotiation for post-judgment royalties should occur on the date of the verdict, when the determination of liability altered the parties' bargaining positions"). If the Court permits Prof. Cockburn to testify at such a hearing, Oracle has no objection to Part 7 of the tentative order.

But if the Court, contrary to these precedents, determines that the jury should consider future damages, Prof. Cockburn has provided what is needed, setting forth a royalty calculation consisting of a 10% revenue share and an annual fee proportionate to Android distribution. (Cockburn Report Exs. 18, 25.) Determining the projected value of both simply requires choosing a set of market projections of Android ad revenue and units, several sets of which Prof. Cockburn has disclosed. (Cockburn Report

App'x F at F-37–38.)  It is simple math to apply the formula going forward.  There is no reason to preclude Prof. Cockburn from converting his damages formula into dollar figures or offering the opinion that it would be appropriate for Google to make running or periodic payments consistent with the royalty formula as applied until the date each patent expires.

### D. Other Licenses

Oracle requests reconsideration of the tentative order's analysis of the Sun-Microsoft agreement.  The order recognizes the 2001 action resulted in separate settlements relating to antitrust and patent issues, but would exclude the patent license because "[t]his second settlement was about more than fragmentation, patent, and copyright infringement.  That litigation featured antitrust issues." (Tentative Ord. at 10.)  But as the tentative order also notes, the patent issues were specifically separated out and separately valued in the 2004 agreement, which allocated $900 million to the patent issues and $700 million to the antitrust issues.  Prof. Cockburn does not discuss or rely on the antitrust portion.  There will be no "bleed" from the antitrust settlement into the patent settlement.

Prof. Cockburn does not use the Sun-Microsoft agreement to quantify the damages in this case.  Rather, he uses it as a check on the damages calculation and as background to help place the value of fragmentation in perspective.  Google paints fragmentation of Java as a non-issue.  The Sun/Microsoft agreement belies that claim.  The lawsuit involved a situation similar to this one, where a dominant market player fragmented Java by deliberately incorporating a similar, but incompatible version into its operating system.  In the case of Microsoft it was Windows; here it is Android.  The harm to Sun/Oracle is very much the same.  Excluding the agreement will allow Google to misleadingly minimize the impact of fragmentation on Java and the value the parties would have attributed to it.  Prof. Cockburn should be allowed to testify regarding the patent portion of the Microsoft agreement.

Dated:  December 20, 2011

DAVID BOIES
STEVEN C. HOLTZMAN
ALANNA RUTHERFORD
BOIES, SCHILLER & FLEXNER LLP

By:  */s/ Steven C. Holtzman*
Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.