IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>GOOGLE INC.,<br><br>    Defendant.<br>_____ / | No. C 10-03561 WHA<br><br>**REQUEST FOR FURTHER BRIEFING** |

By **NOON ON JANUARY 5, 2012**, both sides are invited to address the following in simultaneous memoranda each not to exceed ten pages (no declarations) with five-page simultaneous replies due at noon the following Monday (again, please, no declarations).

The July order stated that the Court was strongly of the view that the hypothetical negotiation should begin with the $100 million offer and make adjustments, but expressly stated that this was not the only possible format and other formats were not absolutely ruled out (Dkt. No. 230 at 14–15). This request concerns an alternate format, but it also involves legal issues in the matter already under consideration. In framing its ruling, the Court would prefer to be consistent with proper answers to the following.

In analyzing the parties' submissions on reasonable royalty issues, the judge would like to have the benefit of counsel's guidance on the extent to which the following approach would be proper under appellate law. Significantly, this approach would *not* place the burden on Oracle to allocate among the items in the $100 million offer by Sun in 2006. Here are the steps in the possible line of reasoning:

1. Through its econometric and conjoint statistical analyses, Oracle claims to be able to spread the 2011 value of Android across various features. This methodology, standing alone, has not been challenged by Google. These analyses allow Oracle to opine on a value for a particular feature (such as processing time) in the 2008–2011 marketplace and, in turn, opine on the value of that feature to Android (meaning to Google) in 2008–2011. This, of course, is a stand-alone value independent of the 2006 offer.

2. The 2008–2011 value is today an arguable indicator of the value Google would have placed on that feature in 2006. True, it is not a precise value because it derives from data as yet unknown in 2006, but it might be a rough indicator of how vital that feature was expected to turn out so long as the marketplace events, as they eventually unfolded, were reasonably predictable in 2006. For example, if in 2011 we now know that feature X has proven to be extremely important to consumers, then the argument would be that the parties in 2006 could reasonably have expected that feature to turn out approximately this way. This expectation then, in turn, would have informed their 2006 negotiation. Again, so far, this line of reasoning has nothing to do with the $100 million offer.

3. The value of a feature must be apportioned among all of the know-how inputs that enabled it. That a license to a particular patent claim in suit is now needed to practice a feature does not justify attributing the entire value of the feature to that patent claim, for other know-how may also be required to practice the feature, such as licenses from other competitors and Google's own independent know-how contribution to developing that feature. Again, the fact that a license to practice an Oracle patent claim is essential to the feature does not justify appropriating the full market value of the feature to that claim. This is a question of apportionment but it differs from the issue of apportionment of the 2006 package.

2

4. Thus, in the 2006 hypothetical negotiation, both sides would be informed, the argument would go, as to the expected importance of a feature but would also be informed as to the relative contribution of the claimed invention in comparison to all *other* know-how needed to enable the particular feature. Only the expected percentage contribution of the claimed invention to the overall expected value would be on the negotiating table.

5. Finally, under this line of analysis, the relevance of the $100 million offer in 2006 would be *defensive*, meaning Google would be entitled to rebut by showing that Sun would not have extracted the vast sums now suggested by Dr. Cockburn because Sun was willing to license, not just the claimed inventions, but the entire package for $100 million. If Google wishes to argue further that only a small percentage of the $100 million should be attributed to the claimed inventions, then it would be Google's burden to allocate the $100 million between the claimed inventions versus the rest of the 2006 package, subject to adjustments for fragmentation and so on.

Under this line of reasoning, to repeat, there would be no need for Oracle, in order to meet its initial burden, to allocate the $100 million among the thousands of items in the 2006 package (or even to address the 2006 offer). Oracle would, on the other hand, have to allocate the value of a feature as between the claimed invention and all other know-how contributing to that feature.

This order does *not* bless this format of analysis (please do not call it "the Court's proposal"), but invites comment on it generally and particularly with respect to: (a) Under appellate law, to what extent are hypothetical negotiators in 2006 allowed to peek into the future to see how events unfolded through 2011? (b) Is it correct that the burden would be on Oracle to apportion the value of a feature as between the claimed invention versus all other know-how contributions to that feature? (c) Is it correct that although Google might raise the $100 million offer by way of defense, Oracle would have no duty in its case in chief, if it used the above approach to allocate the $100 million as between the claimed invention versus the many other thousands of items in the 2006 package?

The above line of reasoning, the Court realizes, is different from the suggested approach in the July 2011 order, which suggested approach was to start with the $100 million offer and

3

make adjustments. Harping on that point will be unhelpful. What will be helpful is to illuminate the above questions. Although the Court continues to believe that using the 2006 real-world $100 million offer as a starting point and making adjustments is the most persuasive and practical approach, it may not be the only viable approach.

**IT IS SO ORDERED.**

Dated: December 27, 2011.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

4