Highly Confidential - Attorneys' Eyes Only

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3               SAN FRANCISCO DIVISION
 4
 5   ------------------------
 6   ORACLE AMERICA, INC.,    )
 7            Plaintiff,      )
 8   vs.                      ) No. CV 10-03561 WHA
 9   GOOGLE, INC.,            )
10            Defendant.      )
11   ------------------------
12
13
14     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
15
16
17        VIDEOTAPED DEPOSITION OF HASAN RIZVI
18              THURSDAY, JULY 28, 2011
19
20
21   REPORTED BY:
22   JANIS JENNINGS, CSR 3942, CLR, CCRR
23
24
25   PAGES 1 - 275
```

Page 1

**EXHIBIT 1-12**

```
 1  further discussions?
 2    A.  I don't remember the exact words, but the
 3  third discussion itself was, like I said, a
 4  non discussion.  There was nothing really to
 5  discuss, so as we left the meeting, there wasn't
 6  anything scheduled as a follow up.
 7    Q.  Did Mr. Rubin say anything at that third
 8  meeting to indicate to Oracle that Google was no
 9  longer interested in discussing a potential business
10  solution?
11    A.  Again, I don't remember the exact words,
12  but the   I don't remember the exact words, no.
13    Q.  Did Mr. Rubin give any indication, verbal
14  or otherwise, that Google was not interested in
15  continuing the discussions after that third meeting?
16    A.  From what I recall, he said this is
17  again, not necessarily his words, but the
18  implication was that this is a non starter, there is
19  really nothing to discuss given the range of the
20  business that we are talking about.  That's the
21  that's the recollection I have.
22    Q.  Do you mean that he suggested that it was
23  a non starter for Google to compensate Oracle in the
24  range of $300 to $500 million?
25    A.  That's
                                                Page 170
```

```
 1        MR. NORTON:  Objection to form.
 2        You can answer.
 3        THE WITNESS:  Yeah.  That's kind of the
 4  way I remember it, yeah.
 5  BY MR. PURCELL:
 6    Q.  Did Mr. Rubin suggest a different range in
 7  which Google might be willing to compensate Oracle?
 8    A.  Not that I remember, no.
 9    Q.  Did Oracle attempt to make any follow up
10  with Mr. Rubin after the third meeting prior to the
11  filing of this lawsuit?
12    A.  I don't know about Oracle, but I didn't.
13    Q.  Are you aware of anyone else from Oracle
14  following up with Mr. Rubin about a potential
15  business solution prior to this lawsuit being filed?
16        MR. NORTON:  Objection to form.
17        THE WITNESS:  With Mr. Rubin, no.  I'm
18  not   I don't know who it would   I don't know if
19  anybody followed up with Mr. Rubin.
20  BY MR. PURCELL:
21    Q.  Are you aware from   of   strike that.
22        Are you aware of anybody at Oracle
23  following up with anybody at Google regarding a
24  potential business solution prior to this lawsuit
25  being filed?
                                                Page 171
```

```
 1    A.  Yes.
 2    Q.  Who is that?
 3    A.  That   is that privileged?
 4        MR. NORTON:  Do you mind if we take a
 5  short break?
 6        MR. PURCELL:  Sure.
 7  BY MR. PURCELL:
 8    Q.  I mean, just so it's clear, I'm not asking
 9  anything Oracle's lawyers might have told you.  But
10  if you learned of the fact of a meeting between
11  Google and Oracle about a certain subject, the fact
12  of the meeting between Google and Oracle isn't
13  privileged.
14        MR. NORTON:  I   I think he's already
15  answered that question, though.  On to another
16  question about the substance of the communication,
17  if there   if there was one, so
18        MR. PURCELL:  Well, it would be the
19  substance of the communication between Google and
20  Oracle, which isn't privileged.  That's all I want
21  to know.
22        MR. NORTON:  Again, I just don't think
23  that was the question.
24        MR. PURCELL:  Okay.  Well, let me ask
25  let me ask the question, then.
                                                Page 172
```

```
 1  BY MR. PURCELL:
 2    Q.  Are you aware   I think you already said
 3  you are aware of communications between Oracle and
 4  Google after the third meeting you had with
 5  Mr. Rubin about a potential business solution;
 6  correct?
 7    A.  Yes.
 8    Q.  What   what was discussed at that meeting
 9  between Oracle and Google?
10    A.  I don't know.
11        MR. NORTON:  Objection.  To the extent
12  that your knowledge of the contents of that
13  meeting   to the extent you know that only from
14  communications with attorneys, then I'm going to
15  assert the privilege and ask you not to answer that
16  question.
17        MR. PURCELL:  Counsel, I don't want to
18  argue with you in detail, but I just think that
19  instruction is overbroad.  If he learns of a
20  nonprivileged fact through a lawyer, that doesn't
21  make the fact privileged.  And all I'm trying to ask
22  for is the nonprivileged fact regarding the
23  communications between Google and Oracle.
24        MR. NORTON:  Let's take a break and I can
25  see if I can
                                                Page 173
```

44 (Pages 170 - 173)