Highly Confidential - Attorneys' Eyes Only

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                SAN FRANCISCO DIVISION
 4
 5    _____
 6    ORACLE AMERICA, INC.,    )
 7             Plaintiff,      )
 8        vs.                  ) No. CV 10-03561 WHA
 9    GOOGLE, INC.,            ) VOLUME I
10             Defendant.      )
11    _____)
12
13     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15        Videotaped Patent Issues Deposition
16        of JOHN C. MITCHELL, Ph.D., taken at
17        755 Page Mill Road, Palo Alto, California,
18        commencing at 9:43 a.m., Tuesday,
19        September 6, 2011, before Leslie Rockwood,
20        RPR, CSR No. 3462.
21
22
23
24
25    PAGES 1 - 270
```

Page 1

**EXHIBIT 2-6**

Highly Confidential - Attorneys' Eyes Only

```
 1      A.  I believe it's important to have adequate and
 2  attractive networking connections.  Something that's not
 3  state-of-the-art would probably impede -- stands to
 4  reason something that's not state-of-the-art may impede
 5  sales.
 6          As an additional factor, I just would point
 7  out that as far as I understand -- and it should be easy
 8  to find more information about it -- there are various
 9  manufacturers of wireless networking hardware, and one
10  may be substitutable for another.
11      Q.  So having a 3G air interface or above is also
12  the basis for consumer demand for Android products?
13      A.  I think I've explained the importance of that
14  factor.
15      Q.  Is it more or less important in the patents
16  patents-in-suit, sir?
17      A.  Well, one factor that comes to mind -- and
18  there may be others -- that would occur to me on
19  reflection is that there is -- I believe a -- some degree
20  of substitutability across available networking hardware,
21  whereas as I've laid out in this report, based on my
22  study and evaluation to the best that I'm able to do
23  this, it doesn't appear that there is reasonable
24  substitutability of another platform for the platform
25  that draws critically on the patents-in-suit.
                                                Page 78
```

```
 1  11:59 a.m.
 2          You may proceed.
 3      Q.  BY MR. PAIGE:  Welcome back, Professor
 4  Mitchell.
 5      A.  Thank you.
 6      Q.  You say that the Oracle employees Landau,
 7  Poore and Vandette conducted certain experiments at your
 8  direction; correct?
 9      A.  I believe that's what it says in that report.
10      Q.  Why did you choose to use Oracle employees
11  rather than an independent consulting firm?
12      A.  I believe that I asked if it was possible to
13  get someone to help with some kinds of experiments like
14  that or perhaps someone asked me if I knew students, and
15  I suggested that perhaps someone who works for Oracle
16  could be one possibility of doing that.
17      Q.  Are there no consulting firms capable of
18  doing the type of work that those employees did?
19      A.  There may be.  I didn't -- I didn't research
20  that.
21      Q.  Did you think it might be better to have
22  someone independent rather than a partisan with a stake
23  in the matter doing these experiments?
24          MR. PETERS:  Objection.  Form.
25          THE WITNESS:  I didn't really even make that
                                                Page 80
```

```
 1      Q.  So in your opinion, the patents-in-suit are
 2  more important than having a 3G air interface on an
 3  Android device?
 4      A.  That's not what I said.
 5      Q.  Well, what is your opinion?  Are the
 6  patents-in-suit more important or is having a 3G air
 7  interface more important?
 8          MR. PETERS:  Objection.  Form.
 9          THE WITNESS:  I believe that the -- and it
10  would be possible to look into this if this is an
11  absolutely critical issue, and maybe other people know
12  more about it, but it strikes me that there are likely a
13  number of different ways to assemble a phone with
14  adequate networking so that an individual chip to provide
15  networking could be replaced with another, whereas as I
16  think I tried to explain, I don't see that as being an
17  aspect of the patents-in-suit in the software technology
18  at issue.
19          MR. PAIGE:  Okay.  We need to take a break to
20  change the tape, please.
21          THE VIDEOGRAPHER:  This is the end of Disk
22  Number 1, Volume 1.  We are off the record at 11:38 a.m.
23          (Recess.)
24          THE VIDEOGRAPHER:  This is the beginning of
25  Disk Number 2, Volume 1.  We are back on the record at
                                                Page 79
```

```
 1  judgment.  It didn't strike me that this would be an
 2  issue where partisanship or opinion would have much
 3  bearing on it.  What I believe those engineers have done
 4  is modify the system in various ways that's easily
 5  documented and run the system with certain measurements
 6  afterwards.  I think the results there are probably
 7  concrete and can be evaluated objectively.
 8      Q.  BY MR. PAIGE:  Did you design the experiments
 9  conducted by Landau, Poore and Vandette?
10      A.  I believe I did to a certain degree.  That
11  is, the experiments are to the -- as far as I recall,
12  basically comparisons against the Android system or
13  components of it as it exists now versus some
14  modification.  As far as I recall, those modifications
15  were modifications that I suggested.
16      Q.  Okay.  So you're the one who came up with the
17  actual modifications they implemented; is that right?
18      A.  At some degree of detail, I believe so.
19      Q.  Okay.  You might not have done the actual low
20  level code, but you told them on a high level, "This is
21  what I'd like you to do in order to carry out this
22  experiment"?
23      A.  I don't remember the exact, you know, wording
24  of the discussion, but I believe I handled it the same
25  way I would with a graduate student.  I want them to feel
                                                Page 81
```

21 (Pages 78 - 81)

Veritext National Deposition & Litigation Services
866 299-5127

**EXHIBIT 2-6**