MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway
Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. 3:10-cv-03561-WHA |
| Plaintiff, | **ORACLE'S SECOND SUPPLEMENTAL PATENT LOCAL RULE 3-1 DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS** |
| v. | |
| GOOGLE, INC. | |
| Defendant. | |

ORACLE'S SECOND SUPPLEMENTAL INFRINGEMENT CONTENTIONS
CASE NO. 3:10-CV-03561-WHA
pa-1456177

**EXHIBIT 5-1**

1    • Claims 1-24 of United States Patent No. 6,125,447 ("the '447 patent")
2      (infringement claim chart attached as Exhibit D);
3    • Claims 1-21 of United States Patent No. 6,192,476 ("the '476 patent")
4      (infringement claim chart attached as Exhibit E);
5    • Claims 1-4 and 6-23 of United States Patent No. 6,061,520 ("the '520 patent")
6      (infringement claim chart attached as Exhibit F); and
7    • Claims 1-8, 10-17, and 19-22 of United States Patent No. 7,426,720 ("the '720
8      patent") (infringement claim chart attached as Exhibit G).

**B.    Patent Local Rule 3-1(b) — Accused Instrumentalities.**

Based on Oracle's investigation thus far, Oracle accuses the following Accused Instrumentalities of infringing the asserted claims specified above in the manner described in Exhibits A-G: (i) "Android" or "the Android Platform";[2] (ii) Google devices running Android; and (iii) other mobile devices running Android. Representative examples of Google devices running Android include the Google Dev Phones, the Google Nexus One, and the Google Nexus S.[3] Representative examples of other mobile devices running Android include HTC's EVO 4G, HTC's Droid Incredible, HTC's G2, Motorola's Droid, and Samsung's Captivate. Android applications, including those written by Google, when built or run will necessarily use the infringing functionality in the manner described in Exhibits A-G. For example, application developers like Google use the Google-provided dx tool from the Android SDK to convert .class

---

[2] "Android" or "the Android Platform" means "Android" as referred to in Google's Answer (Docket No. 32) at Background ¶ 12 and in Google's Answer to Amended Complaint (Docket No. 51) at Background ¶ 12 and at Factual Background ¶¶ 11-17, and includes any versions thereof (whether released or unreleased) and related public or proprietary source code, executable code, and documentation.

[3] *See, e.g.*, JR Raphael, *The Nexus S and Google: Everything There Is To Know*, PCWORLD (Nov. 11, 2010), available at http://www.pcworld.com/article/210460/the_nexus_s_and_google_everything_there_is_to_know.html (last visited Nov. 29, 2010) ("Today's buzz is all about the Samsung Nexus S -- a still-under-wraps smartphone believed to be the successor to Google's Nexus One. According to various leaks, the Nexus S will be a 'Google experience' device, meaning it'll run a stock version of Android without any of those baked-in manufacturer UIs. And, if the latest rumors prove to be true, the Samsung Nexus S will be rocking the as-of-yet-unannounced Android Gingerbread release."). The "leaks" proved to be true: the Nexus S runs a stock version of Gingerbread.

1  files to a .dex file when building their applications, and thereby infringe the '520 and '702
2  patents. That is the intended use of the dx tool, and there is no substantial non-infringing use of
3  the dx tool.

4  Google directly infringes the asserted claims enumerated above under 35 U.S.C. § 271(a)
5  because Google, without authority, makes, uses, offers to sell, sells, or imports the Accused
6  Instrumentalities within or into the United States. Further, Google induces the infringement of
7  others under 35 U.S.C. § 271(b) because it contracts with, instructs, and otherwise induces others
8  to make, use, offer to sell, sell, or import the Accused Instrumentalities within or into the United
9  States. Google also contributes to the infringement of others under 35 U.S.C. § 271(c) because it
10 offers to sell, sells, or imports part or all of the Accused Instrumentalities within or into the
11 United States. With respect to the asserted non-method claims of the asserted patents, the
12 Accused Instrumentalities are specially made or adapted for infringement, and are not a staple
13 article suitable for substantial non-infringing use. Further, Google supplies part or all of the
14 Accused Instrumentalities in or from the United States to foreign contractors, including HTC, in
15 violation of 35 U.S.C. § 271(f).

16 Oracle is not aware of any evidence indicating that anyone, such as a Google partner,
17 OHA member, or downstream licensee, has altered the infringing portions of Google's Android
18 or Android Platform in any way that is material to the infringement. To the contrary, all available
19 evidence suggests that device manufacturers do not alter the Android operating system in general
20 or the Dalvik virtual machine in particular; and that the changes they do make are generally
21 aimed at the kernel and device drivers (to account for the manufacturer's particular hardware
22 platform).

23 The manufacturers' websites confirm this. Google advertises the Nexus S as "Pure
24 Google" and "The new Android phone from Google."[4] Samsung states that "Beacuse Nexus S is
25 google experience device, source codes are opened by Google. So, You can find source code for

---

[4] http://www.google.com/nexus/#/index

|   |   |
|---|---|
| 1 | the Nexus S at Android Open Source Project site."[5]  With respect to Samsung's Captivate, as far |
| 2 | as Oracle has been able to determine, for those Android source code files identified in Exhibits A- |
| 3 | G that were present in the source code archive for Samsung's Captivate, those files were identical |
| 4 | to those from Google's Éclair version of Android.[6]  With respect to the source code for the |
| 5 | Motorola Droid, Motorola states "All Droid source consists entirely of code found at the Android |
| 6 | repo site."[7]  With respect to the particular HTC-manufactured devices listed above, the only |
| 7 | source code provided by HTC[8] was for the Linux kernel, WebKit and BlueZ, and there was none |
| 8 | for Dalvik, the core libraries, or development tools. |
| 9 |      Developers have no reason to modify the infringing tools provided by Google for |
| 10 | developing Android applications, and Google discourages them from doing so.  Google's |
| 11 | Android SDK license states: |

> 3.3 Except to the extent required by applicable third party licenses, you may not copy (except for backup purposes), modify, adapt, redistribute, decompile, reverse engineer, disassemble, or create derivative works of the SDK or any part of the SDK. Except to the extent required by applicable third party licenses, you may not load any part of the SDK onto a mobile handset or any other hardware device except a personal computer, combine any part of the SDK with other software, or distribute any software or device incorporating a part of the SDK.[9]

|   |   |
|---|---|
| 17 |      Google actively discourages modifications to core Android features through a variety of |
| 18 | licensing schemes.  For example, Google prohibits anyone from using the Android trademark on |
| 19 | a device unless the device is determined to be "Android compatible."  Through this requirement, |
| 20 | Google ensures that Android devices sold by others will function in the same manner as if they |

---

[5] http://opensource.samsung.com/

[6] There was just one exception: the Captivate version of the file *fork.c* in the Linux kernel was identical to the default linux 2.6.29 *fork.c*; there were minor differences with respect to the version of *fork.c* in http://android.git.kernel.org/?p=kernel/linux-2.6.git.  These differences had no relation to the infringement by Android that is detailed in Exhibits A-G.

[7] https://opensource.motorola.com/sf/sfmain/do/viewProject/projects.droid

[8] http://developer.htc.com/

[9] http://developer.android.com/sdk/terms.html

("Cupcake"), 1.6 ("Donut"), 2.0/2.1 ("Éclair"), 2.2 ("Froyo"), and 2.3 ("Gingerbread");

- the '447 patent (infringement claim chart previously served as Exhibit D): infringed by all versions of Android subsequent to Oct. 21, 2008, including Android 1.1, 1.5 ("Cupcake"), 1.6 ("Donut"), 2.0/2.1 ("Éclair"), 2.2 ("Froyo"), and 2.3 ("Gingerbread");

- the '476 patent (infringement claim chart previously served as Exhibit E): infringed by all versions of Android subsequent to Oct. 21, 2008, including Android 1.1, 1.5 ("Cupcake"), 1.6 ("Donut"), 2.0/2.1 ("Éclair"), 2.2 ("Froyo"), and 2.3 ("Gingerbread");

- the '520 patent (infringement claim chart previously served as Exhibit F): infringed by all versions of Android subsequent to Oct. 21, 2008, including Android 1.1, 1.5 ("Cupcake"), 1.6 ("Donut"), 2.0/2.1 ("Éclair"), 2.2 ("Froyo"), and 2.3 ("Gingerbread"); and

- the '720 patent (infringement claim chart previously served as Exhibit G): infringed by all versions of Android subsequent to Oct. 21, 2008, including Android 1.1, 1.5 ("Cupcake"), 1.6 ("Donut"), 2.0/2.1 ("Éclair"), 2.2 ("Froyo"), and 2.3 ("Gingerbread").

**D.  Patent Local Rule 3-1(d) — Indirect Infringement.**

In addition to the acts of direct infringement described above, Google actively contributes to and induces infringement by third parties of each of the asserted claims of the asserted patents. On information and belief, Google purposely and actively distributes the Accused Instrumentalities to manufacturers of products and application developers with the intention that they be used, copied, and distributed to consumers, who in turn use them. Google induces and contributes to the infringement of the asserted claims of each asserted patent, because Google encourages manufacturers, application developers, and service providers (including the members of the Open Handset Alliance), as well as end users, to copy, sell, distribute, re-distribute, and use products that embody or incorporate the Accused Instrumentalities. Google's admissions in its

1  Amended Counterclaims prove its intent and encouragement of others.  (*See, e.g.*, Google's
2  Amended Counterclaims ¶¶ 6-7, 13.)  Google contributes to the infringement of others because it
3  offers to sell, sells, or imports part or all of the Accused Instrumentalities within or into the
4  United States.  With respect to the asserted non-method claims of the asserted patents, the
5  Accused Instrumentalities are specially made or adapted for infringement, and are not a staple
6  article suitable for substantial non-infringing use.

7  By providing infringing code and discouraging (and even preventing) modifications,
8  Google further demonstrates the intent necessary for indirect infringement.  As discussed below,
9  Google has actual knowledge of Oracle's patents and its infringement is willful.

### E. Patent Local Rule 3-1(e) — Nature of Infringement.

Oracle asserts that each element or limitation of each asserted claim of each asserted patent is literally present in the Accused Instrumentalities, except where explicitly indicated.  To the extent that any element or limitation of the asserted claims is not found to have literal correspondence in the Accused Instrumentalities, Oracle alleges, on information and belief, that any such elements or limitations are present under the doctrine of equivalents in the Accused Instrumentalities.

### F. Patent Local Rule 3.1(f) — Priority Dates.

The '104 reissue patent has a priority date of Dec. 22, 1992, being a continuation of 08/755,764 (filed Nov. 21, 1996) resulting in RE36,204 which is a Reissue of 07/994,655 (filed Dec. 22, 1992) which is U.S. Patent No. 5,367,685.

The '205 patent is a continuation of U.S. Pat. No. 6,513,156, having a priority date of Jun. 30, 1997, the filing date of U.S. patent application number 08/884,856.