**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

11
12
13   ORACLE AMERICA, INC.,                    No. C 10-03561 WHA

14            Plaintiff,

15      v.                                    **OMNIBUS ORDER ON
                                              MOTIONS IN LIMINE FOR**
16   GOOGLE INC.,                             **PRETRIAL CONFERENCE**

17            Defendant.

18   ─────────────────────────────/

19          The pretrial conference in this action was heard on December 21, 2011.  In advance of that

20   conference, plaintiff submitted five motions in limine and defendants submitted five.

21
22          **GOOGLE MOTION IN LIMINE NUMBER ONE (TO EXCLUDE LINDHOLM
            EMAIL AND DRAFTS)**

23          Google's motion in limine number one is **DENIED**.  Google seeks to exclude the Lindholm

24   email under FRE 403, assuming that its pending petition for writ of mandamus is eventually

25   denied.  In support, Google submits the declaration of the email's author, Tim Lindholm, stating

26   that prior to writing the email, he never reviewed the patents or copyrights asserted by Oracle, he

27   never reviewed any of the source code or implementation for the allegedly infringing aspects of

28   Android, and he did not (and had no legal training necessary to) analyze whether

1 Android infringed.

2      This attorney-prepared declaration is unpersuasive.  Mr. Lindholm was a former Sun

3 engineer who co-wrote the book, "The Java Virtual Machine Specification," and was a member of

4 early Java development teams.  Mr. Lindholm joined Google in July 2005 and immediately

5 worked on Android as a "generalist and interpreter of the engineering/business/legal ecosystem."

6 One of Mr. Lindholm's roles on the Android team was to help negotiate a license for Java.

7 Mr. Lindholm's background shows that he was quite knowledgeable about Java and Android

8 technology as separate platforms and any potential crossover between the two platforms, or so a

9 reasonable jury could find.  His admission that Google needed a Java license is relevant to the

10 issue of infringement.

11      The email is also relevant to damages.  It goes to show that Google had no viable

12 alternatives to Java.  It also goes to willfulness because the email was sent after Oracle accused

13 Google of infringement.  Since Mr. Lindholm had a deep background in Java and Android

14 technology, the email goes to show that there was an objectively high likelihood that Google's

15 actions constituted infringement of a valid patent.

16      The risk of *unfair* prejudice does not outweigh the email's relevance.  Google is worried

17 that the jury will interpret the email without context and overvalue its importance.  Subject to this

18 order's ruling on Oracle's motion in limine number five, counsel can try to explain it away or

19 reduce the email's significance by introducing testimony along the same lines as Mr. Lindholm's

20 declaration.  But the probative value outweighs any unfair prejudice.

21     **GOOGLE MOTION IN LIMINE NUMBER TWO (TO EXCLUDE ALLEGED
PERFORMANCE BENEFITS OF ANDROID WITH THE ACCUSED**

22 **FUNCTIONALITY)**

23      Google's motion in limine number two is **DENIED**.  Oracle can present the performance

24 tests as evidence of Android's performance improvements with the accused functionality.  Google

25 argues that the performances tests were unreliable because (i) it was unclear which Oracle

26 engineer modified the Android code, (ii) the code could have been modified more cleanly

27 (without affecting non-infringing functionalities), and (iii) the tests had limited relevance to

28 real-world use of Android devices.

Oracle responds that the performance tests were performed by experienced engineers who will testify at trial that their modifications were reasonable and reliable and be subject to cross-examination before the results are introduced.  The engineers had years of experience conducting performance analyses on similar software.  The engineers downloaded Android source code from Google's website.  They followed Google's instructions on building the Android code.  The tests were conducted with widely accepted benchmarks that Google itself identified on its website. The tests were conducted both on emulators and on actual Android phones.  The tests used hardware that Google used internally to test Android.  The results using unmodified code were consistent with Google's own benchmark results.  And the results and methods were reproducible.

While Oracle did not eliminate all the possible shortcomings of these performance tests, the relevance of the results seem to outweigh the prejudice of any potential imprecision. Furthermore, the reliability of the performance test passes FRE 702 and *Daubert* scrutiny.  Oracle explained who was responsible for what during the testing, and must do so again at trial.  Oracle explained why the engineers had to remove specific sections of code to remove the patented functionalities at issue, and must do so again at trial.  The tests used benchmarks that were widely accepted by the industry, including Google, as reliable proxies for real-world performance. Unfortunately for Google, it did not design its own performance tests.  Without competing results from Google, it is difficult to know how Oracle's results are biased and unreliable.

Google also argues that evidence of performance testing is irrelevant to liability and therefore should be limited to the damages phase of trial.  This order disagrees.  The performance tests show that the accused code ran on Android-operated devices.  The tests also show that Google would have induced device manufacturers to install Android with the allegedly infringing functions.

**GOOGLE MOTION IN LIMINE NUMBER THREE (TO STRIKE EXPERT DAMAGES OPINION)**

This motion will be addressed in a separate order.

**United States District Court**
For the Northern District of California

**GOOGLE MOTION IN LIMINE NUMBER FOUR (TO EXCLUDE PORTIONS OF GOLDBERG REPORT DISCUSSING COMMERCIAL SUCCESS)**

Google's motion *in limine* number four is **GRANTED ONLY AS FOLLOWS**:  Before Dr. Goldberg testifies, Oracle must introduce before the jury sufficient evidence from which it could reasonably conclude that the disputed nexus exists.  No reference shall be made to Dr. Goldberg in the opening statements (but he should be cleared for contacts during voir dire and jury selection).

**GOOGLE MOTION IN LIMINE NUMBER FIVE (TO EXCLUDE EVIDENCE OBTAINED FROM MOTOROLA MOBILITY, INC.)**

Google's motion in limine number five is **GRANTED AS FOLLOWS**.  Subject to other rules of evidence, Oracle can present evidence that tends to show infringement by the Motorola Droid, which was listed in Oracle's infringement contentions.  Similarly, Oracle can also present evidence to show that Motorola engineers used Android SDK's dx tool to write Android applications.  Evidence relevant to the Motorola Droid and dx tool can be presented even if it also suggests that other Motorola devices, which were not included in the infringement contentions, performed the allegedly infringing functionalities.

The jury will be told that the only Motorola device accused of infringement is the Motorola Droid and that other Motorola devices cannot be considered for infringement or damages.  Oracle cannot argue that other Motorola devices infringed or that damages should be awarded for other Motorola devices.

\*                    \*                    \*

**ORACLE'S MOTION IN LIMINE NUMBER ONE (TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PATENT REEXAMINATIONS)**

Oracle's motion *in limine* number one is **DENIED IN PART AND GRANTED IN PART**.  The '720, '476, and '520 patent reexaminations have run their course before the examiners.  The examiners have rejected all asserted claims in the '720 and '476 patents and closed prosecution.  The '520 patent has finished reexamination with all asserted claims allowed.  To be sure, the initiation of reexamination and the customary first office action prove little; but here, the

4

United States District Court
For the Northern District of California

1    examiners have gone to the end of their process.  It would be wrong to conceal this important

2    information from the jury.

3         Subject to the rules of evidence, the parties will be permitted to introduce the office

4    actions on reexamination for these three patents during phases two and three of trial.  Invalidity

5    experts for both sides may promptly update their reports, counsel may update their invalidity

6    contentions, the updates being restricted just to these items, meaning the specific reasons given by

7    the examiner for validity or invalidity.

8         The presumption of validity is based on the expertise of the examiner, but now the

9    examiner has come out in favor of rejection on two patents in suit.  The recent rejections are

10   based, in part, on prior art not previously supplied to the examiner.  Juries can take into account

11   the extent to which the prior art reference was raised or not in the procedure leading to approval.

12   *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2251 (2011).  This is because the

13   rationale underlying the presumption of validity is much diminished where the evidence before

14   the factfinder was not before the PTO during the examination process.  *KSR Intern. Co. v.*

15   *Teleflex Inc.*, 550 U.S. 398, 426 (2007).

16        The decisions cited in opposition to this ruling did not involve re-examinations that had

17   reached a final rejection by the examiner.  In the Court's view, it would be misleading to instruct

18   the jury on the presumption of validity while concealing from the jury the fact that the rationale

19   for the presumption — PTO examiner expertise — has been drawn into question by more recent

20   examiner rejections based in part on prior art previously not disclosed to the PTO.

21        With respect to all other patents, the probative value is outweighed by the time and

22   confusion that would be involved.  Information regarding the reexaminations of the other patents

23   are excluded under Rule 403, subject to one caveat:  Either side may request permission to

24   present to the jury some specific item of information from the reexamination of the other patents

25   (other than the '520, '720, and '476 patents).  Such a request must precisely specify the

26   application and relevance of the information.  The request must be made in a timely fashion to

27   give the other side time to respond.

28

**United States District Court**
For the Northern District of California

1

**ORACLE'S MOTION IN LIMINE NUMBER TWO (TO EXCLUDE EVIDENCE
OR ARGUMENT THAT GOOGLE RELIED ON LEGAL ADVICE IN MAKING
ITS DECISION TO DEVELOP AND RELEASE ANDROID)**

2

3       Oracle's motion *in limine* number two is **GRANTED AS FOLLOWS**.  No reference shall be

4   made by either side to advice of counsel to Google without a specific proffer and approval by the

5   Court in advance.

6

**ORACLE'S MOTION IN LIMINE NUMBER THREE (TO EXCLUDE EVIDENCE
OR ARGUMENT THAT THIRD-PARTY OEMS CHANGED INFRINGING
COMPONENTS OF ANDROID)**

7

8       Oracle motion *in limine* number three is **DENIED**.  Google will be held to its discovery

9   responses and will not be allowed to present Google employees, officers, or directors on the

10  subject of original equipment manufacturer (OEM) modifications of Android code, having said

11  that it is ignorant on the subject.  Google is not barred, however, from presenting third-party

12  percipient witnesses or third-party documents obtained via trial subpoena from OEMs on the

13  same topic.  Nor will it be barred from cross-examining Oracle's own witnesses that OEMs did use

14  unmodified code.  Oracle must prove direct infringement by OEMs as a predicate for proving

15  indirect infringement by Google.  That Google is ignorant on the subject of direct OEM

16  infringement does not translate to affirmative proof of direct infringement.

17

**ORACLE'S MOTION IN LIMINE NUMBER FOUR (TO EXCLUDE EVIDENCE
OR ARGUMENT REGARDING ORACLE'S PAST ACTIONS WITH
APPLICATION PROGRAMMING INTERFACES)**

18

19      Oracle's motion *in limine* number four is **GRANTED IN PART AND DENIED IN PART**.

20  While objections may eventually be sustained to some aspects of the broad theater of contentions

21  Oracle now seeks to exclude, a broad categorical exclusion of the magnitude requested on

22  grounds of irrelevance is unwarranted.  That said, anything that happened long before 2006 is too

23  far removed from Sun's policy and industry custom and usage at the time of the alleged

24  infringement.  Historical information that is too old has only marginal relevance to Google's

25  equitable defenses.  And any marginal relevance would be greatly outweighed by the unfair

26  prejudice, waste of time, and confusion from presenting to the jury statements and documents

27  from the last century as indicative of Sun's policy and industry custom at the time of alleged

28  infringement in 2006.

United States District Court
For the Northern District of California

1    This exclusion includes the September 1994 testimony of Eric Schmidt (Dkt. No. 263-7

2    Exh. G), any reference to the American Committee for Interoperable Systems, Sun's pre-2006 use

3    of APIs originally developed for older spreadsheet software (Dkt. No. 262-1 Exh. 1 ¶¶ 63–68),

4    Sun's pre-2006 distribution of Linux APIs (*id.* ¶¶ 69–79), Oracle's pre-2006 distribution of the

5    Oracle Database that contained APIs originally developed by IBM (*id.* at 80–86).  Importantly,

6    testimony and evidence regarding Oracle's and Sun's policies and practices after January 1, 2006,

7    is *not* excluded even if those same policies and practices began before 2006.

8    **ORACLE'S MOTION IN LIMINE NUMBER FIVE (TO EXCLUDE EVIDENCE AND ARGUMENT CONTRARY TO STATEMENTS IN THE LINDHOLM EMAIL)**

9    Oracle's motion in limine number five is **GRANTED IN PART AND DENIED IN PART**.  Tim

10   Lindholm will not be allowed to testify on matters he claimed were privileged during his

11   deposition.  During his deposition, Mr. Lindholm refused to answer questions on the technical

12   investigation leading up to his writing of the email.  Specifically, Tim Lindholm refused to

13   answer, on grounds of attorney-client privilege and work-product doctrine, the following

14   questions:  *First*, what technical alternatives to Java he investigated; *second*, who thought the

15   alternatives "all sucked"; *third*, what he meant by technical alternatives; *fourth*, what license

16   terms he had in mind; *fifth*, whether any statements of fact or opinion he made in the email were

17   false.  In the interest of fairness, Mr. Lindholm cannot testify on matters he refused to address

18   during his deposition.  *Columbia Pictures Television, Inc. v. Krypton Broadcasting of*

19   *Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001).

20   Oracle also seeks to preclude *Google* from arguing that it had viable alternatives to the

21   patents-in-suit or Java, that it did not need a license for Java generally and for each patent-in-suit,

22   and that not all statements in the Lindholm email were true.  This broad exclusion is unwarranted

23   and equates to a motion for summary judgment, which is too late at this stage.

24   **CONCLUSION**

25   Two caveats:  Any denial above does not mean that the evidence at issue in the motion is

26   admitted into evidence — it must still be moved into evidence, subject to other possible

27   objections, at trial.  And, a grant of a motion in limine does not exclude the evidence under any

28

7

and all circumstances; the beneficiary of a grant may open the door to the disputed evidence, for example.

**IT IS SO ORDERED.**

Dated:   January 4, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

8