KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
DANIEL PURCELL - #191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:     415.391.5400
Facsimile:     415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY  10036
Tel:    212.556.2100
Fax:   212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel:    415.318.1200
Fax:   415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:    650.328.8500
Fax:   650.328-8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE INC.,<br><br>　　　　　　　　　　Defendant. | Case No. 3:10-cv-03561-WHA<br><br>**GOOGLE'S REPLY TO ORACLE'S RESPONSE TO COURT'S DECEMBER 27, 2011, REQUEST FOR FURTHER BRIEFING ON DAMAGES**<br><br>Dept.　　　Courtroom 8, 19th Floor<br>Judge:　　Hon. William Alsup |

There are three fundamental problems with Oracle's Response to the Court's December 27, 2011 Order ("Order") and its discussion of the proposed damages framework described in that Order.  *First,* Oracle fails to meaningfully discuss governing Federal Circuit case law regarding the limited relevance of future events to a hypothetical patent-royalty negotiation.  The case law draws a clear line: future market events may be used only as one factor to check the reasonableness of a hypothetical negotiation at the time of first infringement.  A plaintiff may not simply point to future market facts as establishing the starting point or result of the hypothetical negotiation.  Although Oracle elides this critical difference in its brief, it plainly understands the limitation.  Several months ago, Oracle stipulated to a jury instruction that correctly set forth the law, stating that evidence of future events "can be considered ***only to the extent*** that it sheds light on what the parties would have ***anticipated at the time of the hypothetical negotiation***."  In this case there is no need to use future events as a starting point; the parties' actual negotiations at the time of the alleged first infringement provide concrete evidence of what the parties expected.

*Second,* after glossing over that problem, Oracle then adopts the approach in the Order in full—except for the single, critical step that would actually require it to do a meaningful apportionment of the allegedly infringing features of Android between its intellectual property and all the other work Google did to implement those features—for example, thousands of lines of source code written over hundreds of hours by dozens of engineers.  Contrary to the assertion in its brief, Oracle has never even attempted to calculate the value of Google's contributions to any Android feature.  Moreover, as Google pointed out previously, an approach that starts with the full current value of any Android feature (necessarily measured as a percentage of Google's profits), followed by a deduction of Google's contribution, would violate the decades-old ban on measuring patent damages by an infringer's profits—a calculation that is rarely even possible.

*Third,* Oracle yet again attempts to inflate its damages award by claiming entitlement to Google's profits from a slew of non-Android products.  This request has nothing to do with the Court's Order and has no legal or factual basis.  Oracle cannot prove any connection between Android and other Google products, and its expert has never offered any opinion, in either of his reports, as to how such ancillary, downstream damages could be calculated.

**A.  Oracle fails to acknowledge the difference between "peering into" the future and substituting future events for expectations at the time of infringement.**

Oracle fails to engage in any meaningful analysis of the relevant legal standard, offering only the vague statement that the "Federal Circuit has repeatedly held that the jury may in appropriate circumstances consider evidence that came into existence only after the actual negotiation." Oracle Resp. at 3 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333-34 (Fed. Cir. 2009); *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933)). But this does not answer the relevant question. As Google explained in its opening brief, Google Resp. at 3-6, although evidence of post-negotiation events is admissible, the Federal Circuit has repeatedly made clear that such evidence can only be used as a check on what the parties would have agreed to *at the time of negotiation*, not as a substitute for the parties' expectations at the time of alleged first infringement. *See Integra Lifesciences I, Ltd v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003) (if hypothetical negotiation took place in 1994, negotiators would not be allowed to consider expectations of FDA approval arising in 1995); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1373 (Fed. Cir. 2001) (royalty must be based on parties' "sales expectations at the time when infringement begins … as opposed to an after-the-fact counting of actual sales"); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983) (reasonable royalty should "be determined not on the basis of a hindsight evaluation of what actually happened, but on the basis of what the parties to the hypothetical license negotiation would have considered at the time of the negotiation").

Oracle knows this. It quotes from the parties' stipulated joint jury instructions, where it agreed that evidence of things that happened after the alleged infringement first began "can be considered *only to the extent* that it sheds light on what the parties would have *anticipated at the time of the hypothetical negotiation*. You may not limit or increase the royalty based on the actual profits Google made." Oracle Resp. at 3 (quoting Jury Instruction No. 56, Dkt. No. 539) (emphases added). This is the correct rule: the 2008-11 value of the Android features that allegedly practice Oracle's patents (which can only be calculated as a percentage of Google's actual Android profits) is relevant only to the extent it sheds light on what the parties would have

1  expected in 2006, at the time of the hypothetical negotiation.  As Google already explained, the
2  difficulty with the approach in the Order is that it does not merely use future profits to "shed
3  light" on what the parties would have expected; it directly substitutes the present value of the
4  patented features for what the parties would have agreed to in 2006.  In addition to the legal
5  problems described above, as a factual matter this approach ignores the parties' ***actual***
6  negotiations, which are direct evidence of how the parties valued Sun's IP at the time of alleged
7  first infringement.  *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1556-61 (Fed. Cir. 1983).[1]

**B.     Oracle improperly resists the only meaningful damages limitation in the Order.**

The one aspect of the Order's approach that Oracle rejects is the only aspect that would force Oracle to do meaningful, rigorous work in apportioning damages, rather than simply claiming the entire pie for itself.  Oracle objects to the requirement in Step 3 of that Order that Oracle separate out all the contributions Google has made to the allegedly infringing features of Android—copyrighted source code, other intellectual property, and engineering know-how—for which Oracle deserves no credit.  Oracle Resp. at 3-6.  According to Oracle, Dr. Cockburn has already done this work by calculating the incremental difference between how those features work with the claimed inventions and the purportedly lesser functionality that would exist without those inventions.  *Id.* at 4.  This is wrong; Dr. Cockburn has never looked at any feature of Android and separated the value of the claimed inventions from all the things Google did to incorporate those inventions into the android software.  Oracle's brief simply repeats Dr. Cockburn's fundamental analytical mistake—equating the value of a *feature* of Android with the value of the *intellectual property* allegedly partially responsible for enabling that feature.

One of Oracle's claims in this case is that Google has used its patented methods to boost the processing speed of Android phones.  But although the patents may describe a method that contributes to increased processing speed, they do not, by themselves, enable anything.  Even

---

[1]  Oracle's assertion that "[e]vidence of the ***value consumers place on the patented functionality and copyrighted expression*** as of 2011 corroborates what Google itself anticipated in 2006," Oracle Resp. at 3 (emphasis added), is pure *ipse dixit* unsupported by any evidence.  Similarly, Google has never conceded that it lacked alternatives to the claimed inventions, or that its only viable alternative was abandoning the Java language, as Oracle says.  Oracle Resp. at 4.  Google has only confirmed that one significant alternative was to use a different programming language.

1  Oracle does not assert Google engineers could, and did, merely enter the text of the patents into a
2  programming interface and come up with a faster smartphone.  Even assuming Google engineers
3  used a patented method related to speed, those engineers also had to spend many hours writing
4  thousands of lines of source code, then many more hours testing and refining that code, to make
5  the patented method operational.  That source code is Google's copyrighted work.  Even then,
6  the operational patented method, by itself, would not result in increased processing speed.  It
7  could do so only in combination with numerous other Android components, such as the Linux
8  kernel operating system and other features of the virtual machine, none of which are alleged to
9  infringe.  Whether Google developed these features itself or licensed them from others, either
10 way Oracle can have no claim to them.  Oracle is asserting that Android utilizes a patented
11 method, and that all those many lines of code, which certainly did not write themselves, and all
12 the other, complementary features of the software, have no independent value.  That is nonsense.
13         Oracle is fighting the hypothetical in the Order, just as it has consistently fought the legal
14 limitations on patent damages at every stage of this case.  As Google explained in its Response,
15 Google objects to the approach set forth in the Order because it bases damages on an
16 apportionment of Google's profits—a measure of patent damages rejected by Congress decades
17 ago, the logic of which rejection was summarized in *Georgia-Pacific Corp. v. United States*
18 *Plywood Corp.,* 243 F. Supp. 500, 519, 521-22, 525 (S.D.N.Y. 1965).  But even if one accepts
19 the validity of the approach in the Order, it would be legally improper to give Oracle credit for
20 Google's work.  *See* Order at 2 (because non-patented "know-how may also be required to
21 practice the feature … the fact that a license to practice an Oracle patent claim is essential to the
22 feature does not justify appropriating the full market value of the feature to the claim.").  Prior to
23 the change in the law, courts never entertained the sort of argument Oracle is making.  To the
24 contrary, they required apportionment because they always understood that, even where a
25 product uses a patented method, the infringer also added value to a patented product through its
26 own work.  *See Georgia-Pacific,* 243 F. Supp. at 525.  It was the "insoluble" difficulty involved
27 in apportioning between patented and nonpatented contributions that caused Congress to change
28 the patent damages statute in the first place.  *Id.* at 521-22.

1   Even Oracle seems to understand this. Although it initially asserts that it deserves 100%
2   of the credit for the allegedly patented features, it then argues, as a fallback, that apportionment
3   would be too difficult. Oracle is right about that, but in making the argument it necessarily
4   concedes that Google must have done something substantial to make Android what it is today.[2]

**C.     The Court should reject Oracle's latest effort to lay claim to downstream damages.**

Finally, Oracle suggests that the parties should be assumed to have known, back in 2006, all the details of Google's current business lines, including Google+, Google's music and digital content services, and Google's 2011 acquisition of Motorola. Oracle Resp. at 7. The reference to the Motorola acquisition is yet another attempt to put a multi-billion dollar number in front of the jury—exactly what the Court precluded in barring Oracle from offering evidence of Sun's settlement of its litigation with Microsoft. Further, none of the cases Oracle cites suggest that a patentee can recover damages based on purported "synergies" between an allegedly infringing product and other products that company happens to sell five years after the hypothetical negotiation. More importantly, in neither of his two expert reports did Dr. Cockburn offer any opinion calculating a reasonable royalty including Google's other product lines. Even if it were legally permissible or logically sound, it would be far too late in the day for Oracle to shoehorn these new damages amounts into the case. This is another brazen attempt by Oracle to boost its damages. The Court should reject it.

Dated: January 9, 2012                                          KEKER & VAN NEST LLP

                                                                By: */s/ Robert A. Van Nest*
                                                                    ROBERT A. VAN NEST
                                                                    Attorneys for Defendant
                                                                    GOOGLE INC.

---

[2] The three cases that Oracle cites to bolster its proposed abandonment of step 3 are inapposite. *Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1375-76 (Fed. Cir. 2010), and *Bose Corp. v. JBL, Inc.,* 274 F.3d 1354, 1361 (Fed. Cir. 2001), involved application of the entire market value rule, which Dr. Cockburn has never even argued, much less demonstrated, applies here. *Funai* did not even involve a royalty calculation; it was a lost-profits case. *See* 616 F.3d at 1375-76. In *Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1211 (Fed. Cir. 2010), the Federal Circuit merely concluded that the jury's damages award did not violate *Georgia-Pacific,* because there was evidence that the patent was fundamental to the product. Nothing in any of these cases justify what Oracle wants to do here—awarding the entire value of a product feature to a claimed invention, notwithstanding the obvious contribution of substantial added, alleged-infringer-owned intellectual property to that feature.