MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax)

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC. <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE, INC. <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE AMERICA, INC.'S RESPONSE TO THE COURT'S JANUARY 9, 2012 ORDER ON GOOGLE MOTION *IN LIMINE* NO. 3 (DKT. 685)** <br><br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William H. Alsup |

ORACLE AMERICA, INC.'S RESPONSE TO JANUARY 9, 2012 ORDER ON GOOGLE MOTION IN LIMINE NO. 3
CASE NO. CV 10-03561 WHA

In its January 9, 2012 Order on Google's Motion in Limine # 3, the Court allowed the parties to submit briefs on whether Oracle's damages expert, Prof. Cockburn, "should be allowed a third try" at an expert report providing an analysis of the stricken elements of his previous report. (Dkt. 685 at 12-13.) The January 9 Order struck the following from Prof. Cockburn's report: (1) "apportionment of the patent claims and copyrights-in-suit," and therefore the ultimate amount of a reasonable royalty for Google's alleged patent infringement and a "lost license fee" for Google's alleged copyright infringement; (2) references to nonparty licenses and settlements; and (3) calculation of damages after the end of 2012. (*Id.*) As the Court notes, Prof. Cockburn's "calculations of copyright unjust enrichment and copyright lost profits" have not been stricken and may be presented at trial. (*Id.* at 13.)

Subsequently, in its January 12, 2012 Order, the Court responded to Oracle's request for a February trial date and prompt resolution of Oracle's claim for an injunction by stating that "the Court will not set a trial date until Oracle adopts a proper damages methodology, even assuming a third try is allowed (or unless Oracle waives damages beyond those already allowed to go to the jury)." (Dkt. 694 at 1.) The Court also stated that "[a]nother roadblock to setting a trial date is the pending petition for writ of mandate over the email. If Oracle will waive reliance on that email, then this roadblock would vanish." (*Id.*)

While this case awaits trial, more than 700,000 Android-based devices are activated *every day*, all fundamentally built around the copyrighted Java APIs and the enhanced performance enabled by Oracle's patents. Each day's worth of activations likely generates approximately $10 million in annual mobile advertising revenue for Google.[1] Analysts have predicted that the number of new Android devices will reach 2.5 million per day within twelve months. Google's misappropriation of Oracle's intellectual property unjustly enriches Google at Oracle's expense, but also inflicts irreparable harm on

---

[1] This revenue does not even include all the other value Android generates for Google, ranging from Android Market revenue, to other Android-related services, to ensuring that Google will not be locked out of the mobile business, to lucrative relationships with manufacturers of myriad devices on which Android can and does run, to the inordinately valuable access Android provides to customers for its new social network service, Google+. Indeed, Android has enabled Google to wield such power with regard to search and other services that its Android distribution and licensing practices – far from the "open" practices Google has proclaimed it lives by – are under investigation by competition law agencies in the United States, Europe and elsewhere.

Oracle by diverting the Java developer ecosystem to the free, incompatible Android platform and fragmenting the Java platform. The longer trial is delayed, the greater that irreparable harm.

Oracle respects the Court's rulings and skepticism regarding large intellectual property damages claims. Indeed, Oracle often finds itself on the opposite side of such claims. In this case, however, Oracle contends that its damages claims and analyses are reasonable and correct in light of the evidence, and are consistent with the Supreme Court and Federal Circuit precedents on the issues of apportionment, claim-by-claim analysis, and calculation of future royalties. Given the astounding magnitude of Google's Android business and the infringement on which it is based, Prof. Cockburn's damages calculations are far from the "stratospheric numbers" the Court assumes (Dkt. 694 at 1). Oracle believes the Court has taken an unduly strict and improperly narrow approach to the analysis of damages in this case, and reserves its right to appeal the Court's *Daubert* and *in limine* orders.

The Court's orders present Oracle with a choice. Oracle can seek leave to file a third damages report, with a resulting delay that could push the trial of this matter to as late as next year (Dkt. 694 at 1), while Oracle suffers increasing and irreparable injury. Or Oracle can stand on the damages analyses that the Court has permitted thus far, agree not to use the Lindholm email if the Federal Circuit has not ruled by the conclusion of the trial, and renew its request that this Court set this case for trial on the merits at the first possible date.

To expedite trial, Oracle requests that the Court proceed as follows: Oracle requests that the Court sever and stay the patent claims, and set the trial of the copyright claims without the benefit of a third report for the first possible date in the winter or spring of 2012, subject to continuance if the Federal Circuit does not rule on Google's mandamus petition before the scheduled trial date. If, however, the Court declines to set such a trial date or if the patent or copyright phase of the trial will be delayed beyond spring 2012 for any other reason, Oracle requests that it be given leave to prepare and submit a third damages report on reasonable royalty damages. We provide the reasons why such an approach is appropriate, and the specific details of Oracle's proposals, in the sections below.

## I.   The Court Should Sever And Stay The Patent Claims And Set A Date For A Near-Term Trial On Copyright Liability And Copyright Damages.

*First*, Oracle respectfully requests that the Court remove the expert report obstacle to trial by severing and staying the patent claims for nine months,[2] and setting a date certain for the trial of copyright liability and copyright damages at the earliest possible opportunity – March 19, 2012 or another date during the winter or spring of 2012 – followed by a hearing on Oracle's request for a copyright injunction, should Oracle prevail on liability.  This approach would enable trial to be completed in less than three weeks, applying the time limits previously set by the Court.

During the pendency of the stay of the patent claims, Prof. Cockburn would prepare and submit a third damages report, which should be permitted for the reasons stated in Part II of this brief, below. If the Court were to accept this proposal, Oracle understands that it would sacrifice the opportunity to prove copyright damages with the benefit of a third report, but believes that this sacrifice to obtain a winter or spring trial date is necessary, given the mounting, irreparable injury caused by Google's infringement.

The setting of a trial date should not await the Federal Circuit's ruling on Google's mandamus petition, and Oracle should not be required to forfeit evidence that this Court has found to be relevant and admissible simply to obtain a place on the Court's trial calendar.  It is very likely that the Federal Circuit will decide the mandamus petition by March.  As the parties stated in their December 7, 2011, case management conference statement, the Federal Circuit has ruled on other mandamus petitions within two to five months of the date briefing was completed. (Dkt. 644 at 3:20–4:4.)  In the last week, the Federal Circuit has issued opinions on mandamus petitions that were briefed a month before, and a few days after, the completion of briefing on Google's petition.  (Google's petition is docketed as MISC-106.  The Federal Circuit has recently denied petitions for mandamus with docket numbers MISC-105 and MISC-111.)  In the unlikely event that the Federal Circuit has not decided the

---

[2] Oracle proposes that at the end of the nine-month stay the Court would assess the status of the reexaminations and other aspects of the litigation and decide whether the stay should be continued or the patent claims should be tried, in which case Oracle should be allowed to submit a third damages report as discussed below.

mandamus petition one week before the copyright trial is to commence, Oracle would agree to a continuance.

***Second***, if the Court will not sever and stay the patent claims, Oracle respectfully requests that the Court dismiss the patent claims without prejudice and set a date certain for the trial of copyright liability and copyright damages for spring 2012, followed by a hearing on Oracle's request for a copyright injunction if Oracle prevails on liability. If the Court were to accept this proposal, the issue of a third damages report would be moot. As in the above proposal, Oracle would sacrifice its opportunity to prove lost copyright damages with the benefit of a third report. This approach would also prevent delay and enable trial to be completed in two to three weeks, applying the time limits previously set by the Court.

***Third***, if the Court will neither sever and stay the patent claims nor dismiss the patent claims without prejudice, Oracle requests that the Court set a winter or spring 2012 trial date on both the copyright and patent claims. Under this scenario, Oracle would seek damages without the benefit of a complete expert reasonable royalty or lost hypothetical license fee analysis. Instead, Oracle's damages case would rely on the elements of the damages analysis that have been sanctioned by the Court, including proof of copyright lost profits and/or infringer's profits and, as appropriate, the documentary evidence and the testimony to be obtained through direct and cross examination of fact witnesses for any missing elements of a reasonable royalty and lost license fee. As the Federal Circuit has held with regard to patent damages:

> [T]he district court expressed an inability to calculate damages after excluding the testimony of Dow's damages expert. Dow does not appeal the district court's exclusion of its expert's reasonable royalty testimony. Rather Dow urges that reasonable royalty damages can be awarded even without such testimony; that there is a presumption of damages where infringement has been established; and that there is other evidence in the record, including the evidence supporting Perc's excluded opinions, that the district court must consider. We agree.
>
> * * *
>
> The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty. *Id.; see also Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.,* 895 F.2d 1403, 1406 (Fed.Cir.1990) ("In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated.") (citing 5 *Chisum on Patents* § 20.03[3], at 20-142 (1986)). Further, section 284 is clear that expert testimony is not necessary to the award of damages, but rather "*may* [be] receive[d] ... as an aid." 35 U.S.C. § 284 (2000) (emphasis added).

*Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003) (holding that plaintiff was entitled to prove reasonable royalty damages without the benefit of expert testimony).

Adopting any of these approaches would remove the problem of waiting for further expert damages analysis. Consistent with the schedule previously set by the Court, Oracle expects that Dr. Kearl could complete his own report, responding to the remaining elements of Prof. Cockburn's analysis, in the next two months. In any event, Oracle does not withdraw Prof. Cockburn's previous reports or waive its claim for reasonable royalty or lost license fee damages because it believes it would be improper to do so under the statutory and decisional law and unnecessary under the circumstances.

## II. If Trial Is Delayed, Oracle Should Be Given The Opportunity To Submit A Third Damages Report.

If the Court will not start the trial of this matter by the spring of 2012, it appears that it will be months before any damages phase could commence. If trial of the entire matter will not begin by spring 2012, Oracle seeks leave to submit a third damages report by Prof. Cockburn that includes a revised calculation of reasonable royalty (and lost license fee damages, if the copyright trial also will not begin in the spring). A third report would be warranted in light of the complexity of calculating damages in this case, the evolving and uncertain requirements for doing so in light of recent Federal Circuit decisions, the particularly demanding requirements imposed by this Court in this case, the fact that Oracle's existing analysis has largely withstood scrutiny, and the fact that exclusion of Prof. Cockburn's reasonable royalty testimony would prejudice Oracle and could result in a windfall for Google.

The essential portions of Prof. Cockburn's reasonable royalty analysis have either survived challenge or gone unchallenged except in one respect – apportionment of the 2006 license portfolio. As explained below, Prof. Cockburn can promptly prepare a report that applies the Court's recent guidance and addresses the Court's concerns on that issue. Any delay works prejudice only on Oracle, which has made clear that it needs an early trial date and a prompt injunction to stop Google's infringement. Google has no principled objection to delay, as it has repeatedly sought to stay these proceedings in their entirety.

### A. A Third Report Is Warranted In Light Of The Complexity Of Calculating Reasonable Royalty Damages, The Evolving And Uncertain Legal Standards In This Area Of Law, The Demanding Requirements Imposed By This Court, And The Substantial Degree To Which Prof. Cockburn's Existing Analyses Have Withstood Scrutiny.

It is common practice for courts to permit parties submit revised expert reports. *See, e.g.*, *In re Ephedra Products Liab. Litig.*, 04 M.D. 1598, 2007 WL 4643885, at *1 (S.D.N.Y. Apr. 3, 2007); *Kroger v. Legalbill.com LLC*, CIV A 04-2189 ESH, 2007 WL 4730719, at *1 (D.D.C. Feb. 5, 2007). It is particularly reasonable to do so where, as here, the damages report has largely withstood scrutiny. This Court has permitted supplemental damages studies in just such an instance. In *Gutierrez v. Wells Fargo & Co.*, C07-05923 WHA, 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010), the Court ruled that the plaintiffs' first damages study was "woefully inadequate," and the Court ordered the plaintiffs to prepare and serve a new report. *Id.* at *2–3. The plaintiffs' revised damages report largely withstood *Daubert* scrutiny, but parts of the new study were again inadmissible. *Id.* at *8–*12. Nonetheless, concluding that an "additional damages analysis" remedying the flaws "would greatly assist the fact-finder in the upcoming bench trial," the Court ordered plaintiffs' counsel to complete an additional damages analysis promptly enough to allow the defendant a fair opportunity to review it and respond before trial. *Id.* at *14.

There are compelling reasons to allow a third report in this case as well if any part of the trial is postponed past the spring of 2012.

*First*, the measure of damages in this case is unusually complex, particularly with regard to apportionment. Sun licensed its patents (or patent claims) and copyrights only on a portfolio basis. The unsuccessful 2005-2006 negotiations between the parties involved a complex intellectual property portfolio, as well as related business arrangements. Moreover, in those negotiations, Sun expected to be compensated largely through convoyed sales related to Android, in addition to a direct license fee; the incompatible nature of Google's infringing use significantly compounded the relevant harm; the accused product (an open source mobile smartphone platform) was a new product in a dynamic industry; Google claims to have made almost no business projections for Android; and Google primarily monetized the accused product through advertising rather than through direct sales.

*Second*, the legal standards governing the measure of damages are in flux. In the last few years, the Federal Circuit has discarded what had been accepted methods of calculating patent damages, and has imposed different requirements and standards. *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311–18 (Fed. Cir. 2011) (rejecting "25% rule of thumb" despite its "widespread acceptance" and the Federal Circuit's having previously "passively tolerated" the rule). Experts in the valuation of intellectual property have observed that "the case law in this area now appears to be developing at a comparatively rapid pace" and "many questions and problems remain involving the calculation of reasonable royalty damages in patent infringement cases." John N. Zarian, *Uniloc and the Developing Law of Patent Damages: Is There Still A Need for Reform?*, 54 ADVOCATE 22, 24 (2011). With respect to patent damages, we are in a "changing legal and technological landscape." Patricia Dyck, *Beyond Confusion—Survey Evidence of Consumer Demand And The Entire Market Value Rule*, 4 HASTINGS SCI. & TECH. L.J. 209, 210 (2012). As the law changes, economists— including Google's own damages expert, Dr. Leonard—have noted the difficulties of apportioning complex products and have questioned whether it can be done at all with precision. *See, e.g.*, Damien Geradin & Anne Layne-Farrar, *Patent Value Apportionment Rules for Complex, Multi-Patent Products*, 27 SANTA CLARA COMPUTER & HIGH TECH. L.J. 763, 772–77 (2011). Indeed, this Court has noted the absence of authority governing the apportionment analysis in the circumstances presented in this case. (Dkt. 642 at 8:25–26 ("There is no controlling law on point to guide this inquiry into the reliability of Dr. Cockburn's [apportionment] methodology.").) Google's own experts have not even tried to apportion. In their reports, Google's experts just assume Prof. Cockburn's apportionment percentages of 30% for patents and 15% for copyrights, while critiquing the measurements that support those numbers, and adjust other aspects of his analysis.

*Third*, this Court's application of the *Daubert* and Federal Circuit standards has been particularly demanding. The Court initially required that Oracle serve any damages reports before the close of fact discovery, before most depositions in the case were taken, and before the submission of technical reports evaluating the technical importance of the patent claims or the technical viability of purported alternatives. It directed Prof. Cockburn to prepare a report based on "assumed fact scenarios," yet faulted Prof. Cockburn for assuming that the infringed patent claims were essential to

the success of Android, as Oracle's technical expert and other witnesses would testify. (Dkt. 56 at 4:19; Dkt. 230 at 5:11–16.) The Court rejected the application of the entire market value rule, despite the fact that Oracle's technical expert has concluded that Android would be "crippled" without the benefit of the infringed patent claims, and Google's own copyright expert has conceded that the infringed APIs were "essentially required" once Google decided on Java as the Android programming language. (Mitchell Patent Infringement Report ¶¶ 42, 49, 53, 62; Astrachan Copyright Infringement Report ¶ 130.) The Court rejected use of the Nash bargaining solution, a mathematical model devised by a Nobel prize-winning economist, accepted by economists since the 1950s, advocated by other experts specifically for the calculation of infringement damages, and accepted by other courts as a reliable basis for measuring damages. *See Amakua Dev. LLC v. Warner*, 05-C-3082, 2007 WL 2028186, at *20 (N.D. Ill. July 10, 2007); Mark A. Lemley & Carl Shapiro, *Patent Holdup and Royalty Stacking*, 85 TEX. L. REV. 1991, 1995–96 (2007) (using Nash bargaining; noting that "[w]e believe our model is the simplest possible game-theoretic model rich enough for this purpose."). The Court has required calculation of damages on a claim by claim basis, despite the fact that no court apparently has ever imposed such a requirement. *Cf. Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1201, 1205, 1208–11 (Fed. Cir. 2010) (affirming damages award in its entirety, despite fact that damages were calculated on a per patent basis, every patent included method and non-method claims, and the court reversed jury's infringement judgment as to all method claims). Oracle does not seek to revisit the Court's prior rulings on these matters now. But it does contend that Prof. Cockburn's two prior damages reports were appropriate, well-supported, good faith efforts to address the complexity of damages in this case.

The Court has expressed skepticism about the *size* of the claimed damages in this case, and has suggested that Oracle and its experts have deliberately and improperly tried to inflate those damages. (Dkt. 694 at 1.) Oracle regrets that the Court has formed that view. The amount of damages in this case is directly related to Google's decision to infringe vitally important patent claims and copyrights to enable a product that Google itself has called a "critical" contribution to its overall success and which Google values in the billions of dollars. Conversely, Sun had plans and the means to use that intellectual property to develop a smartphone platform that would have generated hundreds of millions

ORACLE AMERICA, INC.'S RESPONSE TO JANUARY 9, 2012 ORDER ON GOOGLE MOTION IN LIMINE NO. 3
CASE NO. CV 10-03561 WHA – Page 8

1  of dollars in revenues.  These plans were undermined by Google's release of an incompatible Android
2  for free.  The damages that Oracle has sought in this case are a small fraction of Sun's losses and a still
3  smaller fraction of Google's gains from the infringement, and would not prevent Android from still
4  being enormously profitable for Google.

5  *Fourth*, the bulk of Prof. Cockburn's analysis has withstood Google's *Daubert* challenges or
6  has not been challenged.  The only portion of the analysis essential to the reasonable royalty that has
7  been stricken is the apportionment of the 2006 license bundle.  As explained below, Prof. Cockburn can
8  prepare a report that adds an apportionment approach employing guidance from the Court in its January
9  9 Order.  At the same time, he can incorporate an analysis based on the "Alternate Approach" that the
10 Court described in its December 27 Order (Dkt. 657), and which also builds on analyses that have
11 already been disclosed and have withstood challenge or gone unchallenged by Google.

12 *Fifth*, to deny Oracle a third report could grant Google a windfall, even though Google's experts
13 concede the fact of patent damages, and measure those damages in the tens of millions of dollars
14 (Leonard Report at 71-72).  The Patent Act provides that, "Upon finding for the claimant the court shall
15 award the claimant damages adequate to compensate for the infringement, but in no event less than a
16 reasonable royalty for the use made of the invention by the infringer, together with interest and costs as
17 fixed by the court."  35 U.S.C. § 284.  If Prof. Cockburn's testimony on reasonable royalty is excluded,
18 and Google is found to be liable for patent infringement, there is a danger that Oracle would be left
19 without an adequate monetary remedy.

20 **B.     Oracle Can Promptly Provide A Third Damages Report That Complies With The Court's Recent Guidance And Other Rulings in This Case.**

21 Oracle can provide a third damages report that would satisfy the requirements of *Daubert* and
22 Federal Circuit law, as construed by this Court's prior rulings.
23 Oracle has identified at least three approaches to calculating reasonable royalty damages that
24 would comply with this Court's directions and rulings, each described below.  Prof. Cockburn could
25 submit a report that employs any or all of these three approaches, each of which would provide an
26 independent basis for the calculation of a reasonable royalty.  The building blocks for these alternative
27 methodologies either remain unchallenged or have been explicitly approved by the Court.
28

1. **Methods 1 and 2: Start with 2006 negotiations for a compatible portfolio license and adjust upward and downward as appropriate (Method of July 2011 *Daubert* Order)**

Prof. Cockburn has already submitted a report that seeks to implement the method described in the Court's order of July 22, 2011, focusing on the 2006 negotiation. (Dkt. 230.) All of the essential steps of that analysis, save one, have withstood Google's *Daubert* challenges or have gone unchallenged by Google. In a third report, Prof. Cockburn would replace the one step that the Court has rejected – the downward adjustment required to apportion to the specific patent claims and contributions in suit – while leaving the remainder of the analysis unchanged. The third report would retain the starting point and upward adjustment analyses that have already survived Google's challenge as well as the unchallenged overall discussion of the *Georgia-Pacific* factors and downward adjustments for the limitation of accused products, limitation of the hypothetical license to the United States, and concerns about patent marking. It would then add two independent methods of resolving the apportionment issue, based on the additional guidance included in the Court's January 9 Order.

*First*, Oracle could, albeit with concerns, follow the direction of the Court's January 9, 2012 order: "divide the thousands of items into coherent groups," "evaluate the relative importance of the groups," and "apportion the $100 million across the groups in proportion to their relative importance," and based on that information Prof. Cockburn can further apportion the "group or groups including the 26 claims in suit" versus the rest of the group members. (Dkt. 685 at 8–9.) The grouping and evaluation could be accomplished by relying on information that has already been the subject of extensive discovery (the actual negotiations and communications between the parties in 2006); Google's contemporaneous 2006 descriptions of the features and technical specifications of Android and the virtual machine it would require; information from witnesses that Google has already deposed; and publicly available data (the detailed information in the patents themselves).[3]

---

[3] The already disclosed technical benchmarking data, conjoint survey, and econometric analyses would remain in Prof. Cockburn's third report, and would still be relevant and admissible on both the apportionment issue and as direct evidence of the importance and value of the patent claims and copyrights in suit, under Supreme Court cases, Federal Circuit cases, and *Georgia Pacific* itself. *See Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 697 (1933) ("The use that has been made of the patented device is a legitimate aid to the appraisal of the value of the patent at the time of the breach."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333–34 (Fed. Cir. 2009) ("Consideration of evidence of usage after infringement started can, under appropriate circumstances,

[Footnote continued on next page]

1  ***Second***, the contemporaneous evidence – Google emails, presentations, and internal memoranda – of the importance that Google placed on the features enabled by the patents and copyrights provides a sufficient basis for Prof. Cockburn to opine as to the fraction of the 2006 bundle represented by the patent claims and copyrights in suit. *See Finjan*, 626 F.3d at 1208-11; *see also* Dkt. No. 642 (Dec. 6, 2011 Tentative Order) ("based on internal documents calling the patented features important, the jury could infer that a substantial fraction of the accused product's profits stemmed from the patented invention"). In *Finjan*, the only evidence that the patents represented a "substantial fraction" of the value of the accused product for the purpose of determining "the portion of the realizable profit that should be credited to the invention" under *Georgia Pacific* was (i) the plaintiff's expert's opinion that the defendant's documents established that the feature enabled by the patents was "fundamentally important to the product"; (ii) the defendant's expert's concession that the technology was "important" and "perceived as the next wave"; and (iii) the defendant's promotional materials emphasizing its ability to provide the functionality afforded by the patents. *See Finjan*, 626 F.3d at 1211. Notably, the plaintiff's expert in *Finjan* did not need to measure the value of the other elements of the accused product to conclude that the patented functionality represented a "substantial fraction" of its value. The contemporaneous evidence, including numerous internal Google documents emphasizing the importance of the specific functionality these patent claims contribute to Android, is considerably more extensive and objective than that cited by the plaintiff's expert in *Finjan*. Indeed, Prof. Cockburn's September report already cites that contemporaneous evidence as an input to his apportionment analysis and discloses his reasoning.

In short, the only new analysis would be to apportion the patent claims and copyrights in suit vis-à-vis the other benefits on the table in the 2006 negotiation. All other analyses and materials have been fully disclosed in prior reports, and have gone unchallenged or have withstood challenge under *Daubert*.

---

[Footnote continued from previous page]
be helpful to the jury and the court in assessing whether a royalty is reasonable. Usage (or similar) data may provide information that the parties would frequently have estimated during the negotiation."). However, using the approach described here, Prof. Cockburn would not be dependent on the benchmarking data, conjoint survey, and econometric analyses.

**C. Method 3: Start with the contribution of the patent claims and copyrights in suit to the value and performance of Android, adjust for any other required inputs to achieve those benefits, and divide the value of the contribution between the parties as the result of a negotiation informed by the *Georgia Pacific* factors ("Alternate Approach" described in Order of December 27, 2011)**

The Court's December 27, 2011 Order described an approach to calculating reasonable royalty damages that used, as a starting point, the economic value of the contribution of the patent claims and copyrights in suit, as demonstrated by econometric analyses and a conjoint survey using 2008 to 2011 data. For the reasons stated in its January 5, 2012 brief (Dkt. No. 682), Oracle believes that such an approach is generally consistent with Federal Circuit law and could be accomplished in this case subject to a small number of caveats. In particular, Prof. Cockburn could calculate reasonable royalty damages by employing the following steps, almost all of which have been fully disclosed and have withstood Google's *Daubert* challenges or have gone unchallenged. The analysis represented by these steps would be an independent or alternative measure of damages, but also complement the 2006 negotiation-based methodology described above.

1. ***Measure the value to Android of the improvements in speed, performance, and memory provided by the patent claims.*** The patent claims in suit provide significant performance benefits in terms of speed, memory, and stability that are essential to obtaining commercially adequate performance from a virtual machine on a small, memory-constrained device such as a smartphone. As noted above, Prof. Cockburn's September report documents the evidence from 2005 and 2006 that shows that Google believed that such speed, memory, and stability benefits were very important to Android's success. (Cockburn Report ¶¶ 260–63 & Exhibits 6–12.) The copyrighted APIs are essential, Google concedes, once a decision has been made to use the Java programming language. (Astrachan Report ¶ 130.) Prof. Cockburn's September report extensively documents the evidence from 2005 and 2006 that shows that Google believed that the Java programming language provided unique benefits to a smartphone platform, in terms of an established developer community, familiarity, and the demands of wireless operators, such that Java was the only language that Google seriously considered and the language that Google decided was superior to all others. (Cockburn Report ¶¶ 260–63, 387-416, & Exhibits 6–12.)

1    The September report also quantified the actual incremental benefit to Android from its exploitation of the specific patent claims and copyrights in suit. (Cockburn Report ¶¶ 264–84, Exhibits 4–13, & App'x C–D.) This analysis had three components: technical analysis of the actual performance benefits afforded by the patent claims, econometric analysis of the value of those benefits, and conjoint analysis of the value of those benefits.

Oracle engineers built modified Android phones that disabled the patented functionality, allowing specific measurement of the actual incremental performance benefits provided by the patent claims, alone and in various combinations, using industry standard benchmarks and direct observations. (Cockburn Report ¶¶ 9, 27, 254–59, 269, 428–435, & Exhibit 2, 6–12.) Google made a separate *Daubert* challenge to this work, which the Court rejected. (Dkt. 676 at 2-3.)

Prof. Cockburn then used two independent quantitative analyses to determine the extent to which Google's market share would have been affected if it had gone to market with a version of Android that lacked the speed and memory benefits provided by the patent claims and/or lacked the full number of applications enabled by use of the copyrighted APIs. One of those quantitative analyses, the econometric analysis, examined transaction data from 20,000 auctions of smartphones on eBay to determine the frequency with which consumers would switch to a non-Android phone if Android's performance ***with respect to speed alone*** were reduced to the extent indicated by the benchmarking and technical analyses. This data allowed Dr. Cockburn to calculate the reduction in Android market share, and the resulting effect on Android advertising revenues, if Android did not have the improvements to speed provided by the specific patent claims.[4] Google did not challenge that econometric analysis, which was described in detail in Appendix D to Prof. Cockburn's September report, on *Daubert* grounds.

In addition to the econometric analysis, Prof. Cockburn worked with Dr. Steven Shugan to develop a commonly used survey and statistical approach called conjoint analysis. Conjoint analysis is

---

[4] Prof. Cockburn does not assume that a 1% reduction in Android market share would result in a 1% reduction in Android revenues. Rather, he assumes that for a significant percentage of consumers who switch away from Android, Google would still earn advertising dollars from those consumers using Google search on different platforms. He then measures the incremental benefit to Google of such revenue being generated on Android phones versus alternatives.

an established method of measuring the relative value to consumers of various attributes of a multi-featured product. In conjoint analysis, survey participants are ***not*** asked to simply rank order or score the attributes that they say they find valuable. Rather, they are shown a set of products with different combinations of attributes (in this case, one of several brands; one of several operating systems; a high, low or middle price; high, low or middle speed expressed in terms of seconds to launch an application; large or small screen size; and the number of available applications for that particular phone). The participants are then asked to choose which particular combination, in the set provided, they would purchase. Each participant is shown multiple sets of differing combinations, numerous times, and asked to choose the most desirable one. The resulting data set from these simulated purchases allows for a robust statistical analysis of the relative value that consumers place on particular attributes. As with the econometric analysis, these data allow Prof. Cockburn to determine how many consumers would switch to a non-Android phone if Android lacked the attributes afforded by the specific patent claims and copyrights, to calculate the resulting effect on market share, and the resulting effect on revenues. Google did not challenge Prof. Cockburn's and Dr. Shugan's analysis on *Daubert* grounds. Indeed, one of Google's own experts, Dr. Alan Cox, has written articles describing this type of choice modeling analysis as a "rigorous" method of calculating damages in intellectual property infringement cases. *See* Dr. Alan Cox & Louis Guth, "Survey Techniques for Rigorous Measurement of Damages in Trade Dress Confusion Cases" (Jan. 8, 2007), available at http://www.nera.com/extImage/PUB_Trade_Dress_Confusion_NPL-FINAL.pdf; *see also* Dr. Alan Cox, "A Better Consumer Survey for Better Damages" (April 11, 2003), available at http://www.nera.com/extImage/5958.pdf.

    2.  ***Consider the contemporaneous, 2005 and 2006 evidence of the importance and value of the features, augmented and confirmed by the technical and quantitative analyses, to reach a conclusion as to the actual value that the parties would have placed on the patent claims and copyrights in suit as of 2006.*** For the reasons explained in Oracle's January 5 and January 9 submissions, it is appropriate under Federal Circuit law to consider auction data, survey data, and the actual value of the specific patent claims and copyrights to Android after infringement began, to inform the measure of a reasonable royalty. (*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1333 (Fed.

1   Cir. 2009) (holding it is appropriate to rely on data such as "consumer surveys, focus group testing, and
2   other sources"); Dkt. No. 682 at 3; Dkt No. 684 at 1–4.)

3         3.   ***Adjust downward to account for any additional know-how inputs that were required to***
4   ***achieve the incremental benefits.***  As explained in Oracle's January 5 submission (Dkt. 682 at 3–6), it
5   is not necessary here to make any additional reduction in the value of the contributions by the patent
6   claims and copyrights because the quantitative analyses measure only the incremental benefits from
7   infringement.  Google's counsel has argued that the software code that Google wrote to enable the
8   infringement has some independent intrinsic value (Dkt. 683 at 1), but it cited no evidence in support of
9   that argument, and its own technical and economic experts have never made that claim.  But to the
10  extent that Google's engineering efforts or software code contribute to the measured performance
11  benefit, Prof. Cockburn would account for the value of that additional know-how input from Google.

12        4.   ***Use the Georgia-Pacific factors to analyze a negotiation, at the time of the***
13  ***infringement, for the incremental value contributed by the patent claims and copyrights.***  Having
14  identified and quantified the value to Android of the performance and other enhancements provided by
15  the patent claims and copyrights, in terms of increased advertising dollars, Prof. Cockburn would then
16  estimate a reasonable royalty, using the *Georgia-Pacific* factors.

17        5.   ***Use the 2006 negotiations to adjust for incompatibility and the lost strategic benefit of***
18  ***Project Armstrong.***  As explained in Oracle's January 5 submission, limiting the negotiation to
19  Google's anticipated incremental advertising dollars would ignore the strategic benefits and convoyed
20  sales that Sun expected to derive from the success of Android, as indicated in Sun's Project Armstrong
21  projections from 2006, as well as the value of compatibility and control that Sun insisted upon.
22  Consistent with his prior analyses, as disclosed in his September report, Prof. Cockburn's third report
23  would adjust upward for incompatibility and the strategic benefit that Sun expected to receive through
24  Project Armstrong, apportioned as described above with respect to the 2006 negotiation.  The Court
25  rejected Google's *Daubert* challenge to this upward adjustment in Prof. Cockburn's prior analysis.
26  (Dkt. 685 at 5-7.)

27        6.   ***Adjust patent damages downward based on Court's limitation of accused products.***
28  Prof. Cockburn's third report would adjust damages downward based on the Court's limitation of the

1   accused devices to specific products, using the same unchallenged approach that he used in his October
2   reply report.

3      7. ***Adjust patent damages downward provisionally, in the event that the jury finds a failure to mark.*** Prof. Cockburn's third report would adjust damages downward in the event that the jury determines that Sun or Oracle was required to mark products that infringe the patents, but failed to do so. This work also was already done in Prof. Cockburn's October reply report, and would require only slight adjustment in a third report.

   **C.** **Consistent With The Court's Directions, A Revised Report Would Include A Reasonable Royalty Damages Calculation On A Claim-By-Claim Basis.**

   In a third report, Oracle would state the value of each distinct claim, as the Court has required. Oracle continues to contend that this requirement is unnecessary in this case, as the value of each asserted claim of a patent in this case is the same as the others, because all provide the same value to Android.

   In his September report, Prof. Cockburn lists each asserted patent claim, identifies the Android functionality that the technical experts say is provided by those claims, and then values that specific functionality. (Cockburn Report Exhibits 6–12.) That valuation is based on a number of disclosed inputs.

   Oracle's technical expert, Prof. Mitchell, asserts that every asserted claim of a given patent is infringed by the same aspect of Android. Google disputes infringement, but Google does not challenge that particular component of Professor Mitchell's analysis. In addition, Prof. Mitchell asserts that the purported alternatives to every asserted claim of a given patent are the same. Here, again, Google has not challenged Prof. Mitchell's assessment. As a result, the Android functionality provided by infringement of each claim of any patent is the same, and its value is the same.

   It would be inappropriate to apportion among the claims, because the value of every claim is identical and duplicative, not cumulative or overlapping. In a third report, Prof. Cockburn would explain how infringement of any one claim of a particular patent would justify a reasonable royalty tied to the full value of the infringed feature. That analysis would then, of course, be subject to review by

1  Dr. Kearl and Google's own experts, who would be free to present some alternative calculations on a
2  claim-by-claim basis, if supported by the evidence or previously disclosed technical analysis.

### III. Conclusion

For the reasons stated above, Oracle requests that the Court sever and stay the patent claims, and set the trial of the copyright claims for the first possible date in the winter or spring of 2012, subject to continuance if the Federal Circuit does not rule on Google's mandamus petition before the scheduled trial date. If the Court declines to set such a trial date or if the patent or copyright phase of the trial will be delayed beyond spring 2012 for any other reason, Oracle requests that it be given leave to prepare and submit a third damages report on reasonable royalty damages.

Respectfully submitted,

Dated: January 17, 2012                     BOIES, SCHILLER & FLEXNER LLP

                                            By: */s/*_____
                                                Steven C. Holtzman

                                            *Attorneys for Plaintiff*
                                            ORACLE AMERICA, INC.