KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
DANIEL PURCELL - #191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:     415.391.5400
Facsimile:     415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY  10036
Tel:    212.556.2100
Fax:    212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel:    415.318.1200
Fax:    415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:    650.328.8500
Fax:    650.328-8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>                     Plaintiff,<br><br>   v.<br><br>GOOGLE INC.,<br><br>                    Defendant. | Case No. 3:10-cv-03561-WHA<br><br>**GOOGLE'S REPLY TO ORACLE'S RESPONSE TO THE COURT'S JANUARY 9, 2012 ORDER ON GOOGLE MOTION *IN LIMINE* NO. 3**<br><br>Dept.:    Courtroom 8, 19th Floor<br>Judge:    Hon. William Alsup |

The Court is now dealing with the issue whether to give Oracle a third chance at serving a viable, legally compliant damages expert report because Oracle has twice served overreaching damages reports that ignored governing law.  Even worse, Oracle's second try at a damages report ignored the unambiguous instructions in the Court's July 22, 2011 Order.  The Court ordered Oracle to serve a second report that (1) apportioned the intellectual property at issue in the 2006 negotiations between "the asserted claims" and "the rest of the Java platform," July 22, 2011 Order [Dkt. No. 230] at 5-6; and (2) was based on "claim-by-claim analysis." *Id.* at 7. Oracle's second report did neither of these things.  Nowhere in the many briefs filed on this issue has Oracle ever explained why it ignored these clear instructions.

More disturbingly, Oracle's response goes even further—implying that, if the Court gives it a third try, it will yet again ignore the Court's explicit rulings and shoot for the moon using the same, repeatedly rejected analysis.  Oracle pays lip service to the Court's rulings, but makes clear it rejects the premises of those decisions, insisting that "its damages claims and analyses are reasonable and correct in light of the evidence, and are consistent with the Supreme Court and Federal Circuit precedents on the issues of apportionment, claim-by-claim analysis, and calculation of future royalties." Oracle Resp. [Dkt. No. 698] at 2.  It criticizes the Court for "tak[ing] an unduly strict and improperly narrow approach to the analysis of damages in this case." *Id.*  Although it "regrets that the Court has formed [the] view" that Oracle has improperly inflated its damages, it "does not withdraw Prof. Cockburn's previous reports … because it believes it would be improper to do so under the statutory and decisional law." *Id.* at 5.  These statements confirm that a third report would again ignore the law and the Court's rulings.

In fact, in its latest brief Oracle appears to backtrack to an overbroad concept of damages based on Google's use of the public-domain ***Java programming language***, contending that:

> The copyrighted APIs are essential, Google concedes, once a decision has been made to use ***the Java programming language***.  Prof. Cockburn's September report extensively documents the evidence from 2005 and 2006 that shows that Google believed that the ***Java programming language*** provided unique benefits to a smartphone platform, in terms of an established developer community, familiarity, and the demands of wireless operators, such that ***Java was the only language*** that Google seriously considered and the language that Google decided was superior to all others.

1

1  Oracle Resp. [Dkt. No. 698] at 12 (emphases added).  This case is not about the value of the Java
2  language.  Oracle has conceded repeatedly in open court that anyone is free to use the language.
3  (Indeed, Oracle's response concedes that the APIs on which its copyright claim is based are an
4  essential part of the language and accordingly should be freely usable by anyone.)  This is the
5  same tack taken by Oracle in its *original* May 2011 damages report, in which it purported to
6  calculate damages based on the value of "Java," rather than the asserted inventions.  The Court
7  emphatically rejected that effort.  *See* July 22, 2011 Order [Dkt. No. 230] at 5.
8       With respect to the Court's instruction that Oracle undertake a claim-by-claim analysis of
9  damages, Oracle does not even pretend it would follow the Court's direction in a third report.
10 Instead, it insists that "[i]t would be inappropriate to apportion among the claims, because the
11 value of every claim is identical and duplicative, not cumulative or overlapping."  Oracle Resp.
12 at 16.  This is the same argument that Oracle has already made repeatedly, *see* Oracle Opp. to
13 Google MIL No. 3 [Dkt. No. 494-1] at 16-17; Oracle Supp. Br. [Dkt. No. 572] at 15-17, and this
14 Court rejected.  *See* Jan. 9, 2012 Order [Dkt. No. 685] at 9-10.  If this is so, one is left to wonder
15 why Oracle is still asserting 26 separate patent claims.  In any event, given Oracle's fundamental
16 refusal to accept the Court's repeated prior rulings, a third report would be an exercise in futility.

17 **A.     Courts do *not* routinely grant experts *third* chances to offer viable damages reports.**

18      Oracle cites two cases in which courts have given experts leave to submit revised reports,
19 *see In re Ephedra Products Liab. Litig.*, 04 M.D. 1598, 2007 WL 4643885 (S.D.N.Y. Apr. 3,
20 2007); *Kroger v. Legalbill.com LLC*, CIV A 04-2189 ESH, 2007 WL 4730719 (D.D.C. Feb. 5,
21 2007), but neither of those cases involved leave to serve a *third* expert report after two previous
22 failures, or where the expert had previously ignored express instructions from the court.  Indeed,
23 in one of the two cases, the court allowed a revised report without striking the expert's previous
24 report at all.  *In re Ephedra*, 2007 WL 4643885, at *1.  Those cases are inapposite.
25      Oracle also cites this Court's decision to allow a third expert report in one case, *Gutierrez*
26 *v. Wells Fargo & Co.*, C07-05923 WHA, 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010), but that
27 case is nothing like this one factually.  There, the Court initially rejected class plaintiffs'
28 damages report because it failed to calculate damages "on a member-by-member basis."  *Id.* at

*2. The Court substantially upheld the second report, but struck minor aspects of that report for reasons having nothing to do with the exclusion of the first report. *Id.* at *12. The Court gave plaintiffs the chance to fix the limited flaws with the second report, but they had not done what Oracle did here: ignoring the Court's identification of errors and express instructions in the order striking its first report, and willfully repeating those same errors in the second report. Moreover, Dr. Cockburn's stricken apportionment analysis was not a minor component of his report; it was the starting point and fundamental basis of his entire patent and copyright royalty analysis.

**B.     None of Oracle's three proposed methods for Dr. Cockburn are acceptable.**

Oracle suggests three "new" methods that Dr. Cockburn could employ, but all three have already been rejected by this Court in its prior rulings.

*First,* Oracle's "Method 1" purports to be a grudging agreement, "with concerns," to use the framework in the Court's January 9, 2012 Order. Oracle Resp. [Dkt. 698] at 10. But Oracle offers only the briefest explanation of how Dr. Cockburn would identify and value the components of Sun's $100 million demand—and, at deposition, Dr. Cockburn admitted having no idea what those components even were. Further, even Oracle's sketchy explanation reveals that it is still planning to conflate the lesser value of the asserted inventions (which Dr. Cockburn is obligated to value) with the greater value of "features and technical specifications of Android," *id.,* just as it did in its rejected second report. Google and Sun were not negotiating over Android's "features." They were negotiating for a partnership that would have given Google the right to inventions that could be used, along with Google's IP and hard work, to enable features.

*Second,* Oracle's "Method 2" is an even worse iteration of the same bad idea—proposing to allow Dr. Cockburn to calculate the value of certain Android features to Google, then ascribe some or all of the value of those features to the asserted inventions, without any further analysis. Again, this compares apples and oranges. The claimed inventions are not equivalent to Android's processing speed, which is the complex result of myriad pieces of intellectual property, including hardware, Google's source code, and other components of the Dalvik virtual machine which are not alleged to infringe, as well as other licensed or open-source technology, including the Linux kernel. Oracle suggests that Dr. Cockburn's "analysis" would amount to a

1  subjective judgment about what represents the "substantial fraction" of the Android feature that
2  is enabled by the claimed inventions.
3      This approach is not grounded in economics. It ignores the Court's mandate that "a fair
4  apportionment of the $100 million as between the *technology in suit* and the *remainder of the*
5  *technology then offered* must be made." Jan. 9, 2012 Order [Dkt. No. 685] at 8 (emphases
6  added). And, contrary to Oracle's argument, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d
7  1197 (Fed. Cir. 2010), offers no support for a damages analysis that conflates the value of
8  features of an accused product with the value of an invention. There, the defendant challenged a
9  royalty award by arguing about the sufficiency of evidence under several of the *Georgia-Pacific*
10 factors. The language Oracle cites is from the court's brief discussion of *Georgia-Pacific* factor
11 13, where it ruled that the expert's opinion that the patented inventions were "fundamentally
12 important to the product" was probative under factor 13. *Id.* at 1211. But that was just one of 15
13 non-exclusive factors bearing on a royalty calculation, one input in a more sophisticated analysis.
14 Neither the *Finjan* court, nor any other Google is aware of, has ever suggested, much less held,
15 that a plaintiff could arbitrarily assign part or all of the value of a given product feature to an
16 invention based on purported "importance."
17     *Third,* Oracle's "Method 3" is exactly the same approach Oracle proposed in its January
18 5, 2012 response to the Court's December 27, 2011 Order. [Dkt. No. 682] The Court did not
19 adopt the proposed approach discussed in the December 27, 2011 Order, and rejected the logic of
20 Method 3 in its January 9, 2012 Order. The Court was right to reject it. Just as Google has
21 previously explained in its Response to the Court's December 27, 2011 Request [Dkt No. 681],
22 "Method 3" improperly substitutes the *2011 value* of Android and *its features* for the value
23 negotiators hypothetically would have placed on the *claimed inventions* in *2006*. Federal Circuit
24 case law requires that a patent royalty be determined based on the parties' "sales expectations at
25 the time when infringement begins … as opposed to an after-the-fact counting of actual sales."
26 *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1373 (Fed. Cir. 2001). The
27 facts of this case show that in 2006 it was uncertain whether Android would be successful at all.
28 But even more distressingly, despite repeated statements from the Court, *see, e.g.,* Dec. 27, 2011

1  Request [Dkt. No. 657] at 2 ("The value of a feature must be apportioned among all of the know-
2  how inputs that enabled it."), Oracle continues to insist that Google's work in allegedly turning
3  the inventions at issue into Android features was worth nothing. Oracle Resp. [Dkt. 698] at 15.
4  First Oracle claims it has already isolated Oracle's contribution by measuring the "incremental
5  benefit" of the claimed inventions to Android, even though it has never accounted for Google's
6  work in allegedly implementing those inventions. Oracle criticizes Google's experts for failing
7  to value Google's contribution to the relevant features, but that valuation was Oracle's burden.
8  Finally, without explaining how, Oracle asserts that, "to the extent" Google contributed anything,
9  "Prof. Cockburn would account for the value" of Google's work. *Id.* The Court has heard this
10 song before. It is clear that Oracle plans to yet again ignore the law and this Court's orders.

**C.      Response to Oracle's unsolicited trial plan comments.**

Finally, with respect to Oracle's extensive discussion of potential alternative trial plans, those same issues were briefed by the parties and decided by the Court just last week, and the Court did not ask the parties for further comment on those issues. But Oracle's belated claims of irreparable harm are fictional. Oracle waited nearly three years after Android's public announcement in 2007 and nearly two years after the release of the first Android phone in 2008 even to file suit. In the nearly 18 months since filing suit, it has never sought a preliminary injunction. Even its own damages expert has expressed the opinion that any future harm to Oracle could be compensated with money damages, and the Court established a protocol in its January 9, 2012 Order for such a calculation. Jan. 9, 2012 Order [Dkt. No. 685] at 11. Second, to the extent Oracle justifies its various trial plans on the grounds that they would permit Dr. Cockburn to draft a third report, there is no justification for permitting a third report, as set forth above. In any event, Oracle concedes it is perfectly capable of presenting a damages case even without a further report from Dr. Cockburn. Oracle Resp. [Dkt. 698] at 4-5.

Dated:  January 19, 2012                               KEKER & VAN NEST LLP

By: s/ Robert A. Van Nest
ROBERT A. VAN NEST
Attorneys for Defendant
GOOGLE INC.