[counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
|---|---|
| Plaintiff, | **JOINT STATEMENT REGARDING ORACLE PRODUCTS PRACTICING PATENTS** |
| v. | |
| GOOGLE INC. | |
| Defendant. | Dept.:  Courtroom 8, 19th Floor<br>Judge:  Honorable William H. Alsup |

1    Pursuant to the Court's December 6, 2011 Supplemental Order Regarding Patenting

2    Marking (ECF No. 641) and the agreement between the parties as set forth in their December 30,

3    2011 Joint Statement Regarding Supplemental Order Regarding Patenting Marking (ECF

4    No. 661), Plaintiff Oracle America, Inc. ("Oracle") and Defendant Google Inc. ("Google") hereby

5    submit the following statement regarding Oracle products, Oracle-licensed products, Sun

6    products, and Sun-licensed products ("Oracle Products") that practice or have practiced the

7    asserted claims of the patents-in-suit ("claims-in-suit").

8    **I.      STIPULATION**

9    Pursuant to Paragraph 3 of the parties' December 30, 2011 Joint Statement Regarding

10   Supplemental Order Regarding Patenting Marking (ECF No. 661), the parties stipulate as

11   follows:

12   JDK version 6 practices asserted claim 14 of the '476 patent; and

13   JavaOS 1.1 practices asserted claim 7 of the '702 patent.

14   **II.     ORACLE'S STATEMENT**

15   On October 21, 2011, Google filed a motion for partial summary judgment, asking the

16   Court to find, as a matter of law, that it was not liable for damages for any infringement of five of

17   the six patents-in-suit before July 20, 2010, claiming undisputed facts established Oracle was

18   practicing the patents-in-suit but had not marked its products.  That motion was denied.  Now,

19   perhaps more concerned about an injunction than patent marking in light of the Court's recent

20   damages rulings, Google has *completely reversed its position*.  Raising a host of evidentiary

21   objections, Google does a tactical about-face, and will agree only that two versions of Oracle

22   products practice *two* of the twenty-six claims at issue in this case.

23   Following the denial of Google's summary judgment motion, the Court ordered the parties

24   to work together to streamline this issue for trial.  The parties stipulated to a procedure, based on

25   a proposal that originated with Google, under which Oracle would identify which products it

26   claims practice the patents and Google would state whether it agreed or disagreed, and why.

27   Oracle went to great lengths to carry out its part of that stipulation.  Google ignored it, serving

28   Oracle with a response consisting entirely of objections instead of the information it agreed to

1    provide.  Google's evidentiary objections have no place in this procedure.  The purpose of the

2    stipulation was to try to avoid the need to present evidence on these issues at trial.

3        Having placed an enormous burden on Oracle, Google is now essentially refusing to

4    engage in the narrowing process that it proposed (ECF No. 635 at 1, 3-4) and the Court ordered

5    (ECF No. 636).  For four of the patents—the '104, '205, '520 and '720—Google has provided no

6    useful information at all.  At the last minute, Google agreed to stipulate that one Oracle product

7    practices the claim at issue in the '476 patent, and that one Oracle product practices one of the

8    seven claims at issue in the '702 patent.  Even as to these two patents, Google has still not taken a

9    position on whether the many other products identified by Oracle practice the claims, and has not

10   squarely addressed the remaining six claims at issue in the '702 patent.

11       Oracle identified its position as to all of the products and claims at issue as the parties

12   agreed, but Google is still playing possum.  Google should be required to comply with the parties'

13   December 30, 2011 Joint Statement and provide a clear statement of which Oracle products it

14   contends do, or do not, practice the patents, and why.

15   **A.      Google Has Not Complied With The Parties' Stipulated Procedure**

16       When the Court denied Google's summary judgment motion on patent marking, it

17   expressed concern that the marking issue would "devolve into an 'infringement' type analysis at

18   trial of various Oracle products and methods to determine if they practiced any of the claims to be

19   tried, throwing yet another complication into the trial."  (ECF No. 621 at 4.)  The Court ordered

20   the parties to work together to find a way to mitigate this problem, ordering specifically that

21   "Both sides shall meet and confer in person and devise a fully agreeable procedure regarding the

22   marking statute."  (ECF No. 641 at 1.)

23       The parties subsequently stipulated that Oracle would identify the products that practiced

24   the 26 asserted claims, along with "source code citations and/or other documentation" supporting

25   its contentions, fact witnesses and a summary of expected testimony.  (ECF No. 661.)  Google, in

26   turn, would respond by identifying "which Oracle Products it contends do (or do not) practice the

27   asserted claims, and why."  (*Id.*)  Notably, this stipulation embodied a process that was proposed

28   by Google, in the November 30 statement it filed with the Court:

1

2

3

4

> In short, Oracle needs to take a position on whether its products or those of its licensees practice the patents-in-suit and stick to it.  Google proposes that by **December 9, 2011**, for each of the 26 asserted patent claims, Oracle identify each Oracle product or Oracle-licensed product that allegedly practices the claim, and the time period during which the product allegedly was marked.  By **December 16**, Google will respond and identify which contentions in Oracle's submissions it would be able to stipulate to, and which contentions it will challenge at trial.

5 (ECF No. 635 at 3-4.)  Google represented that: "*The above disclosures could resolve most, if not*

6 *all, of the marking dispute, and will significantly shorten the time that will need to be allocated to*

7 *this issue at trial.*"  (*Id.* at 4 (emphasis added).)

8      Google's representation made sense.  Oracle had identified its products embodying the

9 claimed inventions early in the case, and Google had ample opportunity to take discovery.  And

10 Google had just moved for summary judgment on this issue, asking the Court to find that Oracle

11 practiced the patents.  (ECF No. 552.)

12      Oracle satisfied its obligations, and expended more than a hundred hours of its engineers'

13 and attorneys' time complying with the parties' agreed-upon procedure.  For each of the six

14 patents at issue, Oracle identified the specific products, and versions of products, that practice the

15 patents, provided citations to source code files, identified fact witnesses who could provide

16 supporting testimony, and summarized their expected areas of testimony.  A copy of Oracle's

17 submission is attached to this Joint Statement as Appendix A ("Oracle Response").  It was

18 provided to Google, as the parties agreed, on January 6, 2012.

19      But now Google has reversed course completely and has refused to engage substantively

20 in the issue-narrowing process it proposed.  Instead of responding with a statement identifying

21 which Oracle products it contends do, or do not, practice the patents, Google served Oracle with a

22 litany of objections. Google's response did not, as the parties agreed, go through the list of

23 products identified by Oracle and state Google's position as to whether the products practice the

24 patents or not, and why.  Nor did it identify whether Google claims any additional products

25 practiced the patents, as Google was also required to do.  (*See* ECF No. 661 at 2; Google

26 Response, attached as Appendix B.)  For three of the patents – the '520, '702, and '476 patents –

27 Google simply ignored the question of which Oracle products practice the patents.  (Google

28 Response at 9-14.)  For the remaining three, the '104, '205 and '720 patents, Google's only

1   response was to state that according to the claim construction provided by its own experts, no

2   Oracle products practice the patents.  (*Id.* at 5-6, 8-9, 13-14.)  This, of course, invites precisely the

3   infringement-type argument the Court was hoping to avoid.  Moreover, if Google intended to

4   maintain these claim construction positions, it never should have moved for summary judgment

5   on the marking statute, as the two arguments are mutually exclusive.  In the case of the '104 and

6   '205 patents, Google's contention that Oracle's products do not practice its own claims turns on

7   claim construction issues that Google has never presented to the Court.

8         Google has stated that it does not want its response on the patent marking issue to be used

9   to impeach its experts on the issue of infringement.  To address this concern, Oracle offered to

10  stipulate that the parties' agreement regarding which Oracle products practice the patents will not

11  be used to support claim construction or infringement arguments at trial.  Google refused.

12        The parties were directed by the Court to cooperate to try to work out this issue.  Google

13  urged a procedure that required Oracle to go first and identify the products that practiced the

14  claims and promised to respond.  Google's position now is essentially that it does not have to

15  respond based on the evidentiary objections that it is raising: during recent meet and confer on

16  this issue, Google has stated that it should not be required to respond because Oracle does not

17  have admissible evidence on these issues.  As will be seen below, Google's argument is based

18  primarily on the incorrect claim that 30(b)(6) deposition testimony—completed in the summer of

19  2011, *four months before it proposed this procedure*—was insufficient.  Google also contends

20  that it should not have to respond because Oracle cannot present the right witnesses at trial.  But

21  Google was also aware of its own contention when it proposed the procedure, since it specifically

22  referred to Oracle's proposed trial witnesses in the November 30 statement in which it argued that

23  its procedure would save time by eliminating the need to put this evidence on at trial.  (*See* ECF

24  No. 635 at 1 & n.2.)

25        If this was Google's position, it should never have proposed and agreed to this process.

26  Essentially all of the evidentiary arguments it raises now were known to Google at the time it

27  stipulated to the procedure.  Oracle spent an enormous amount of time and resources relying upon

28

the parties' agreement.  Google should be required to comply with the parties' December 30, 2011 Joint Statement immediately.

**B.      Google's Objections Are Meritless.**

Google's numerous evidentiary objections have no place in the joint statement procedure that the parties agreed to and the Court ordered.  The purpose of this procedure was for the parties to try to reach agreement on which Oracle products practice the patents so that, to the extent possible, the parties would not have to present evidence on these issues at trial.

Nonetheless, Oracle feels it has little choice but to address Google's objections, because Google's response consisted of little else, and Oracle does not want the Court to be left with the misimpression that these objections are valid.  Google has mischaracterized the record and Google's complaints principally stem from its own failure to develop the record during discovery.

**1.      The '104 Patent**

Google's first objection to Oracle's identification of products that practice the '104 patent is that it cannot respond because Oracle supposedly failed "to actually cite any source code or documentation" reflecting how the patent is practiced.  (Google Response at 3.)  Google repeats this same rote objection for each of the six patents-in-suit.  (*See id.* at 6, 9, 11, 12, 13.)  The objection is baseless as to the '104 patent and as to the other five patents as well.  Oracle identified specific source code files for each of the products it claims practices the six patents. (*See, e.g.,* Oracle Response at 2-12.)  These are not "a laundry list of names of various source code files" as Google claims.  (Google Response at 1.)  To the contrary, Oracle has identified specific source code files relevant to each product or product version—typically less than five files—that illustrate where and how the patent is practiced.  (*See, e.g.,* Oracle Response at 2, 12.) If Google felt these responses were somehow deficient, it could have raised that with Oracle before its response was due.  But it never did.  In fact, although it had a full two weeks to respond, Google's counsel waited until *three days* before Google's response was due to ask for copies of only some of the referenced source code files (which had all been produced last year as part of the parties' procedure for producing confidential source code).  Google did not make a good faith effort to prepare its response or to meet and confer during this two-week period, and if

it did not have enough time to review the files to verify Oracle's position, it has only itself to blame.

Google's evidentiary objections are equally meritless.  Google has had ample discovery concerning Oracle's use of the '104 patent.  There is no legitimate dispute that Oracle practices the claims at issue in the '104 patent.  It is a fundamental patent that is practiced in essentially every Oracle Java virtual machine product.  Oracle first identified products practicing the '104 patent in its December 2, 2010 Disclosure of Asserted Claims and Infringement Contentions ("Oracle 12/2/2010 Disclosure") and subsequently made the source code available for Google's inspection.  (Oracle 12/2/2010 Disclosure at 5-6.)  These same products were identified in Oracle's January 2012 disclosure, with only minor version clarifications or deletions.  Google chose not to serve any interrogatories directed to Oracle's practice of the '104 patent, although it had five interrogatories left at the close of discovery.  (Oracle Response at 2-5.)

Google's complaints are directed to the 30(b)(6) deposition of Dr. Peter Kessler, who testified on both the '104 and '205 patents.  Google paints a highly misleading picture of Dr. Kessler's testimony to try to make it seem as though he was unprepared.  But Dr. Kessler testified that he spent "days" reviewing source code specifically to prepare for the 30(b)(6) deposition. (Kessler Dep. 40:21-41:3.)[1]  Google's claim that Dr. Kessler was not a qualified 30(b)(6) witness because he supposedly "had no percipient knowledge of the functionality in Oracle's products allegedly implementing the '104 patent" is nonsense.  (*See* Google Response at 5.)  It is true that Dr. Kessler is not the inventor of the '104 patent—the inventor is James Gosling, who was working *for Google* at the time this 30(b)(6) deposition was taken.  However, Dr. Kessler is a "principal member of technical staff" at Oracle America, a position he has held "since the early 1990s" at Sun, where he worked extensively on Java.  (Kessler Dep. 8:8-21, 15:15-16:23.)  He described his main job responsibilities as "I write code, I review code, I advise other people on the meaning and writing of code."  (*Id.* at 8:11-14.)  Because the '104 patent is practiced in

---

[1] To avoid burdening the Court with additional paper, the parties agreed not to submit deposition transcripts and other materials with this filing, but are prepared to file copies of the cited documents promptly if the Court wishes.

1    virtually all of Oracle's Java virtual machine products, no one person could be expected to have

2    personal familiarity with them all.  Dr. Kessler testified that, to prepare for the deposition, "I

3    examined the source code for the JRE.  I examined the source code for HotSpot.  And for the

4    others, I relied upon the opinions of other engineers who were more familiar with those source

5    code bases."  (*Id.* at 198:9-18.)

6         Google chose to spend a very short amount of deposition time on the '104 patent.  The

7    entire examination spans less than 20 transcript pages.  (*See id*. at 183:14-203:8.)  Dr. Kessler

8    testified fully and appropriately.  It is simply not true, as Google claims, that Dr. Kessler could

9    not testify as to which Oracle products other than the JDK, JRE and HotSpot practice

10   "implemented symbolic resolution or where."  (Google Response at 4.)  Dr. Kessler was asked

11   about, and confirmed, based on his own review and consultation with others, which Oracle

12   products practiced the '104 patent.  (*See* Kessler Dep. 197:17-199:24.)  He explained what he did

13   to look for the "symbolic references" that are the subject of the '104 patent, and how he could tell

14   if it had been transformed into a "numeric reference."  (*Id.* at 183:23-185:15.)  Dr. Kessler also

15   identified at least three places in the Oracle source code where symbolic references are "resolved"

16   into numeric references—class names, method names and field names and explained how that

17   process worked.  (*Id.* at 185:8-190:13.)  He testified that, for the products other than the ones he

18   personally examined, his understanding was that "the functionality is the same, even if the file

19   names or the method names are different."  (*Id.* at 201:20-202:5.)

20        Google faults Dr. Kessler for not being able to provide it with the specific names of files

21   or methods that implement the patent.  (Google Response at 4.)[2]  But this is an entirely

22   _____

23        [2] Google also asserts generally that the 30(b)(6) witnesses are not "qualified" because they
     could not answer questions directed to "Oracle's actual practice of the patent claims."  (Google
     Response at 3.)  These types of questions are improper because they call for a legal conclusion
24   that depends on the legal construction of the patent.  As noted above, Dr. Kessler and the other
     30(b)(6) witnesses all properly testified as to the products that practiced the technology described
25   in the patents.  This is how Oracle will present its evidence at trial, as Oracle informed the Court
     on Nov. 30, 2011.  (ECF No. 634.)  Oracle's experts, as part of their testimony regarding
26   infringement and validity, will discuss the technology within the scope of the claims (as informed
     by the Court's claim constructions).  The Java engineers will testify as to which Oracle products
27   include the relevant technologies.

28

1    unreasonable expectation.  A new version of the source code is generated for every type of virtual

2    machine, and the versions have changed over time.  There are literally hundreds of versions of the

3    source code, and a witness at a 30(b)(6) deposition cannot be expected to testify as to exact file or

4    method names.  Dr. Kessler testified that he could not provide specific names without looking at

5    source code, but Google's counsel chose not to show him any.  (Kessler Dep. 192:10-24.)  A

6    deposition is not a memory test, and it would have been impossible for Dr. Kessler to memorize

7    all of the source code file and method names in any event.  Dr. Kessler spent extensive time

8    preparing for the deposition, and testified as to the products that practiced the use of symbolic

9    references and how he made that determination.  Oracle made a good faith effort to prepare and

10   present a 30(b)(6) witness on an extremely broad topic, and Google has more than enough

11   information to proceed to trial.  But, if Google felt this was insufficient, it should have followed

12   up with Oracle to request further information, or filed a motion to compel.  It did neither.

13        Google also states that it declined to provide its position in response to Oracle's January

14   2012 disclosure because its experts construe the claims differently from Oracle.  (*See* Google

15   Response at 5-6.)  But these differing constructions are based on a particular interpretation of

16   terms that Google chose not to place before the Court when it was given the chance to do so.  (*See*

17   11/8/2011 Order Regarding Construction Of Claims To Be Tried, ECF No. 603.)  In any event,

18   Oracle has proposed a compromise that would resolve this issue.  Google should be ordered to

19   respond, on the understanding that its response will not be used at trial for the purpose of claim

20   construction or infringement.

21                        **2.       The '205 Patent**

22        Google had more than sufficient identification and information about Oracle's products

23   that practice the '205 to respond as required by the parties' stipulation.  Instead of providing a

24   straightforward response, however, Google again ducks the question, stating only that, under the

25   claim construction proposed by its expert, Oracle does not practice the claims.  (Google Response

26   at 8-9.)  Once again, however, this argument depends on a claim construction argument that

27   Google chose not to submit to the Court when it had the opportunity to do so.  (*See* ECF No.

28   603.)  Google should be required to respond substantively.

Oracle first identified products practicing the '205 patent in its December 2, 2010 Disclosure and subsequently made the source code available for Google's inspection. (Oracle 12/2/2010 Disclosure at 6-7.) In Oracle's January 6, 2012 disclosure, Oracle confirmed the products practicing the '205 patent, deleting one product and making some minor clarifications. (Oracle Response at 5-8.)

Google served one interrogatory regarding the '205 patent. Notably, while the '205 patent is practiced in many Java products, Google's interrogatory was directed only to JDK 1.2. The interrogatory asked Oracle to:

> Identify, by reference to the relevant portions of the source code and the date on which such portions were first included in the code, the specific functionality within JDK 1.2 that Oracle contends practices the Asserted Claims of U.S. Patent No. 6,910,205.

(Google 6/16/2011 Corrected Interrogatory No. 16.) Oracle understood this interrogatory as asking it to identify the first time the specific functionality within JDK 1.2 that practiced the '205 patent at the time was included in the code, and answered accordingly:

> The functionality that practices the Asserted Claims of U.S. Patent No. 6,910,205 is implemented in the TemplateTable::_fast_invokevfinal() method, which is included in templateTable_i486.cpp of the HotSpot virtual machine. The HotSpot virtual machine first became an optional component of JDK 1.2 in version 1.2.1_004 on or about March 18, 1998.

(Oracle 7/14/2011 Response to Google Corrected Interrogatory No. 16.) It is apparent that Google had a different interpretation of this interrogatory, and its response complains that the interrogatory response did not list all of the portions of the source code that practice the patent. (*See* Google Response at 7.) Oracle identified additional source code files in the portion of its January 2012 disclosure relating to JDK 1.2, because those files were implemented later. Even the January 2012 disclosure is illustrative, however, since, again, there are literally hundreds of different versions of this code. Google should not require anything more for the purposes of responding to the parties' stipulated procedure.

The two inventors of the '205 patent—Lars Bak and Robert Griesemer—have been employed by Google through the entirety of this litigation. Accordingly, Oracle designated Dr. Kessler on the deposition topics relating to products practiced by the '205 patent. These were

topic 11 (an overbroad topic directed to "evidence of conception, reduction to practice or actual use" of the inventions of all the asserted claims) and topic 10, which related specifically to "[t]he practice of the asserted claims of U.S. Patent No. 6,910,205 by JDK...." (Google 6/21/2011 30(b)(6) Deposition Notice.)  Robert Griesemer was deposed by Oracle in his personal capacity on June 23, 2011.

Google again misrepresents Dr. Kessler's preparation for the deposition and his responses. Google's suggestion that Dr. Kessler only "knew about some source code that Oracle's counsel directed him to consider in advance of his 30(b)(6) deposition" is false.  (*See* Google Response at 8.)  As noted above, Dr. Kessler spent days reviewing code specifically to prepare for his deposition, and he also testified that, in relation to the litigation more generally, he looked for evidence relating to conception, reduction to practice, and actual use of the '205 patent over a period of about six months, and consulted with other Oracle employees about these issues.  (*See* Kessler Dep. 36:23-37:5, 40:21-41:3, 119:11-120:22.)

Google does not dispute that Dr. Kessler gave extensive testimony as to how the method fast_invokevfinal practices the patent.  (*See* Google Response at 7-8; *see, e.g.*, Kessler Dep. 68:1-70:10, 78:4-79:5.)  This method, as noted above in response to Interrogatory 16, and at the deposition, is found in the source code file TemplateTable.  There are different versions of TemplateTable for different computer platforms (such as those CPUs made by Sun, Intel, and AMD).  Google quarrels that Dr. Kessler could not identify which of the "hundreds of versions" of the source code file TemplateTable_i486 practice the patent.  (Google Response at 8.)  While this functionality is disabled in some of these hundreds of versions (Kessler Dep. 82:22-84:13), it is not reasonable to expect that all of the individual practicing versions could be identified by a witness in deposition, or even in response to an interrogatory, or why such a burdensome inquiry is necessary or relevant.   Oracle clearly practices the patent.

Dr. Kessler also brought to his deposition two versions of the source code file bytecodes.hpp (which had previously been produced to Google), another file that implements the '205 patent.  Oracle's counsel prepared multiple copies of these files so that they could be marked as exhibits, and handed them to Google's counsel at the outset of the deposition, stating that they

had been reviewed in preparation for the deposition.  (*Id.* at 5:13-18.)  Google apparently already

appreciated the significance of this file because, later in the deposition, Google's counsel marked

as an exhibit of its own, the closely related source code file bytecodes.cpp (bytecodes.hpp is its

header file), and then, realizing that it was not the file that had been brought to the deposition by

Oracle's counsel, left it unaddressed:

> MR. KAMBER: Please mark as Exhibit 328 the bytecodes.cpp file, I'm sorry, that your counsel provided us this morning.
>
> (Exhibit Google 328 was marked for identification.)
>
> Q. BY MR. KAMBER: What is Exhibit 328?
>
> A. Exhibit 328 is a copy of bytecodes.cpp version 1.85, dated December 23, 2003, but I do not believe this was the document provided by my counsel.
>
> MR. KAMBER: You're right.  I grabbed the wrong file so I apologize.  We can just leave that marked as Exhibit 328.

(*Id.* at 174:13-24.)

Inexplicably, Google never came back to ask any question about Exhibit 328, nor marked

or asked questions about the bytecodes.hpp files brought to the deposition by Oracle.  If it had,

Dr. Kessler would have testified that these source code files also implemented the invention in the

'205 patent, as Google itself apparently had already concluded.  This is Google's fault, not

Oracle's.

Various versions of TemplateTable and bytecode.hpp are listed as source code files that

evidence practice of the '205 patent as to all but one product in Oracle's January 2012 disclosure.

(*See* Oracle Response at 5-8.)  Dr. Kessler testified further at his deposition that Java EE 1.2 and

Java Realtime 1.0 both run on top of JDK 1.2, and practice the '205 patent to the same extent it is

practiced in JDK 1.2.  (Kessler Dep. 180:15-24.)  This mirrors the chart in the January 2012

disclosure for these two products.  (*See* Oracle Response at 7.)

There is no reason why Oracle should be precluded from putting on evidence at trial that

its products practice the '205 patent given that Dr. Kessler testified that they did, and Oracle

provided ample evidence supporting that claim.  If Google believed Dr. Kessler was inadequately

prepared for the '205 deposition or that his responses were insufficient, it should have raised this

1  with Oracle, and either asked for another witness or filed a motion to compel, instead of raising

2  the issue for the first time here.

3  **3.      The '702 Patent**

4  In its January 2012 disclosure, Oracle confirmed that the '702 patent is used in two Oracle

5  products: JavaOS (version 1.1 and variants, such as JavaPC) and Java Card (platform 2.1 and

6  subsequent versions).  (Oracle Response at 8-9.)  Google has responded as to one product only—

7  and even for that product as to only one of the seven claims—stipulating that Java OS version 1.1

8  practices claim 7 of the '702 patent.  Google should be required to state its position clearly for all

9  of the products identified by Oracle, and for all seven claims, as it agreed to do, and for those

10  products it contends do not practice the claims, Google must explain why.  (ECF No. 661 at 2.)

11  Oracle first identified these products as patent embodiments in its December 2010

12  Disclosure (Oracle 12/2/2010 Disclosure at 7) and later produced the relevant source code for

13  inspection.

14  In addition, last summer, in response to a Google interrogatory regarding JavaOS, Oracle

15  identified the directories that contained the source code that implemented the '702 patent in

16  JavaOS 1.1, and identified the files Jld.java, classloader.c, FileLoader.java, and JavaOSVM.java

17  within those directories for Google's convenience.  (Oracle 7/22/2011 Response to Google

18  Amended Interrogatory No. 15.)  The files identified for JavaOS in Oracle's January 12

19  disclosure correspond to the directories that Oracle identified last year and include the same four

20  files previously called out by name.  (*Compare id. with* Oracle Response at 8.)  Google did not

21  serve any interrogatories aimed at Java Card.

22  Google also took a 30(b)(6) deposition on Oracle's use of the '702 patent.  Again, this

23  deposition was limited to JavaOS, and did not include JavaCard.  Google's Topic 9 concerned

24  "The practice of the asserted claims of U.S. Patent No. 5,966,702 by JavaOS…."  (Google

25  6/21/11 30(b)(6) Deposition Notice.)  John Pampuch was Oracle's designee with respect to this

26  topic. [3]

---

27  [3] Mr. Pampuch was designated on two other topics that also related solely to JavaOS,
Topic 13, which concerned Oracle's production of JavaOS documents, and Topic 14, which

28  (Footnote continues on next page.)

Mr. Pampuch testified at length about how JavaOS 1.1 created and used the multiclass files that are the subject of the '702 patent.  (Pampuch Dep. 139:13-22, 147:15-150:9, 151:5-153:23, 155:10-161:12, 166:14-167:1.)  Google misleadingly excerpts Mr. Pampuch's testimony, to make it appear that he was not aware if the "'702 patent concept of 'multiclass files' *was ever practiced*."  (Google Response at 10 (emphasis in original).)  This claim is false.  As the excerpt itself shows, the testimony cited by Google was in response to questioning as to whether Mr. Pampuch was aware of "*anyone outside of Sun*, including developers, other companies who licensed JavaOS, for example, ever having used multiclass files or created multiclass files."  (*Id.* (emphasis added); *see also id.* (question referring to "multiclass files, *having been apparently implemented*, based on what you have seen") (emphasis added).)  Google's assertion that this testimony relates to Sun's own implementation or use of the claimed inventions is blatantly misleading, to say the least.

Moreover, Google excised more than a page out of the testimony from Mr. Pampuch that it cites, replacing it with an ellipsis.  In the missing portion, Mr. Pampuch confirmed that JavaOS practiced the "'702 patent concept of 'multiclass files'":

Q: It is possible, then, that by default, JavaOS was set to not even use multiclass files; is that correct?

A: So JavaOS 1.1, as far as I can tell, you know, it would always be able to load multiclass files. But the developer who was creating the application might choose to use multiclass files to create one or not.

(Pampuch Dep. 207:24-208:6.)  Earlier in the deposition, Mr. Pampuch expressly identified the specific portions in the JavaOS source code where multiclass files are created and subsequently read in:

Q: In your view, which source code files implement the multiclass functionality?

---

(Footnote continued from previous page.)

concerned the retention of JavaOS 1.0 source code.  (*See* Pampuch Dep. 12:12-18; Google 7/9/2011 and 7/18/2011 30(b)(6) Deposition Notices.)  No deposition was taken with respect to the '702 patent under Google's overbroad topic 11 ("evidence of conception, reduction to practice or actual use" of the inventions of all the asserted claims).

A: Classloader.c implements a portion of the multiclass loading and the Java Virtual Machine and Jld.java and some related source files in the same directory implement the creation of multiclass files from regular class files.  It may turn out FileLoader.java is used, as well, but the implementation of multiclass is in classloader.c.

(Pampuch Dep. 139:13-22.)

The record is clear:  Mr. Pampuch testified that the '702 technology was implemented in JavaOS 1.1, a subject for which he was Oracle's designee and for which he prepared to testify.  Google's argument that Mr. Pampuch contradicted Oracle's contention that JavaOS practiced the '702 patent is preposterous.

Google also complains that Mr. Pampuch could not give testimony as to one of the four specific source code files identified in the December 2, 2010 Disclosure and the January 2012 response, FileLoader.java.  (*See* Google Response at 10-11.)  But this is only because Google did not show Mr. Pampuch the file at the deposition, which was produced in discovery months before and accessible to Google at the time of Mr. Pampuch's deposition.  Google showed Mr. Pampuch copies of Jld.java and classloader.c and Mr. Pampuch was able to fully testify about them.  (*See, e.g.,* Pampuch Dep. 139:13-22, 147:15-150:9, 151:5-153:23, 155:10-161:12, 166:14-167:1. )  But Google chose not to show FileLoader.java to Mr. Pampuch, so it is not surprising that he could not answer questions about a source code file on the fly, unassisted by the code itself.  Had Google provided a copy of the code, it would have elicited the testimony Mr. Pampuch will give at trial.  Google also never pursued this issue with Oracle after the deposition.  In this case, Google did subsequently make a self-serving statement, without explanation, that "Mr. Pampuch was not prepared to testify about numerous issues within the scope of the designated topics, a letter regarding this and other issues will be forthcoming."  (*See* 8/2/2011 Letter from M. Francis to M. Peters.)  But Google never sent the letter or otherwise followed up.  If Google had, Oracle could have addressed this issue by interrogatory or by offering further deposition testimony.  Google cannot use its failure to properly pursue this discovery to bar Oracle from presenting testimony.

Finally, Google complains that Mr. Pampuch was not prepared to give testimony as to Java Card.  But Java Card was expressly excluded from Google's 30(b)(6) deposition topic, and

1    Google chose not to propound any other discovery directed at Java Card either. Two things

2    follow from the fact that there was no 30(b)(6) deposition on Java Card: First, as a practical

3    matter, Mr. Pampuch did not review any Java Card code before his deposition to refresh his

4    recollection about how Java Card works, because Google did not identify it as a deposition topic.

5    Second, as a legal matter, he was not testifying as Oracle's corporate representative when he was

6    asked about Java Card, so Oracle is not bound by his testimony.

7          To streamline the trial presentation, Oracle proposed to have Mr. Pampuch testify about

8    the use of the '702 patent as well in Java Card as well as in JavaOS—though others could testify

9    as well.  Google put Mr. Pampuch on its witness list to "testify about Oracle's alleged practice of

10   U.S. Patent No. 5,966,702, including by JavaOS."  (Google's Trial Witness Disclosure Pursuant

11   To Fed. R. Civ. P. 26(a)(3) at 7, ECF No. 491-2.)  That is exactly what Oracle has proposed he

12   do.  Google has had ample opportunity to investigate Oracle's specific assertions concerning its

13   practice of the '702 patent.  It is free to cross-examine Mr. Pampuch at trial, but there is no reason

14   or basis to exclude his testimony.

### 4.       The '476 Patent

16          The '476 patent has been and is used in almost all mainline Java products (such as Java

17   SE, Java ME, and Java EE).  Li Gong's invention is one of the foundations of the celebrated Java

18   Security Framework and has been part of Java since version 1.2.  The products that practice the

19   '476 patent were identified in Oracle's January 2012 disclosure.  (Oracle Response at 9-11.)

20   These products were all first identified in Oracle's December 2, 2010 Disclosure, and the source

21   code was made available for inspection.  (Oracle 12/2/2010 Disclosure at 7-8.)

22          Google stated in its response that it would consider entering into a stipulation regarding

23   the '476 patent.  Earlier today, it agreed to stipulate that one version of one of the many products

24   identified by Oracle (JDK version 6) practices the claim at issue.  It has not, as it was required to

25   do, stated its position as to whether the remaining products do or do not practice the patents and

26   why.

27          Google's response did not identify any legitimate reason why it could not provide this

28   information.  Its response contained no evidentiary objections for the '476 patent.  Instead, it

1    provides a series of creative footdragging excuses.  Google proclaims, "Oracle provides no

2    information to support its contention that the witnesses identified in its Disclosures have any

3    *percipient* knowledge with regard to actual embodiments." (Google Response at 12.)  But, of

4    course, Oracle was never required to provide this under the parties' agreement, and it is not

5    needed for Google to determine whether the identified products practice the patents.

6           Similarly, Google claims in its response that it is "unclear" whether the source code files

7    identified by Oracle for guidance "actually create the required protection domains and

8    permissions."  (*Id.* at 11.)  But Google made absolutely no effort in the two weeks following

9    Oracle's disclosure to ask for any clarification or assistance on this issue.  And Google knows full

10   well where the Java code performs that function, since both parties' experts analyzed and

11   discussed the corresponding Android code in their expert reports.  Information about whether the

12   Java source code was compiled into executable instructions is readily available on the Internet.[4]

13          Upon receiving Google's response, Oracle contacted Google to arrange for a meet and

14   confer.  Oracle provided Google with the information it requested during that meet and confer,

15   and the end result was that Google stipulated with respect to a single product only, and took no

16   position as to the rest.  Google should be ordered to comply with the parties' December 30

17   Agreement and identify the products that do, or do not, practice the '476 patent and why.

### 5.    The '520 Patent

19          In its January 2012 disclosure, Oracle confirmed that the '520 patent is used in three

20   Oracle products: CLDC HI (1.1.3 and subsequent versions), CLDC RI (1.1.1 and subsequent

21   versions), and Java Card (platform 2.1 and subsequent versions).  (Oracle Response at 11-12.)

22   Oracle also identified a handful of source code files that support that conclusion.  Oracle first

23   identified these products as patent embodiments in its December 2010 Disclosure (Oracle

24   12/2/2010 Disclosure at 8) and produced the relevant source code for inspection.

25   _____

26          [4] *See, e.g.*, Oracle Java Archive, http://www.oracle.com/technetwork/java/archive-139210.html (downloadable executables); Java 2 SE 1.4.2 ClassLoader API documentation, available at http://docs.oracle.com/javase/1.4.2/docs/api/java/lang/ClassLoader.html

27   (documentation showing creation of protection domains and association with classes).

1    Rather than stating its position as to whether these products practice the identified claims,

2    and explaining why, Google states only that "the products identified by Oracle cannot be proven

3    at trial to practice the asserted claims of the '520 patent." This does not comply with the parties'

4    Dec. 30, 2011 stipulation, and Google should be ordered to properly respond.

5    The inventors of the '520 patent are no longer at Oracle—one is employed by Google. As

6    a result, last summer, Oracle did not offer a witness to testify about the '520 patent for Google's

7    deposition topic No. 11, on the "Evidence of conception, reduction to practice or actual use" of

8    the inventions in the '520 patent claims, and so is subject to the Court's Supplemental Order.

9    (ECF No. 26 at 7-8 ("If an organization cannot reasonably locate a witness to testify based on

10   personal knowledge, there is no requirement under Rule 30(b)(6) for the organization to

11   'woodshed' or to 'educate' an individual to testify on the subject. If the organization does not

12   produce any such deponent, however, the organization may not present case-in-chief evidence at

13   trial or on summary judgment on that topic from any witness it could have so designated."); *see*

14   8/9/2011 Email from D. Muino to M. Francis.) However, while Oracle agreed that it would "not

15   present an Oracle employee or officer at trial to testify regarding [those issues]," it expressly

16   reserved the right to put on testimony from former Sun/Oracle employees. (*See id.* ("We reserve

17   the right, of course, to present testimony on these subjects from our experts, the inventors

18   (Messrs. Yellin, Tuck, and Fresko), and other former Oracle/Sun personnel with knowledge of the

19   patented inventions.").) It can present evidence of Oracle/Sun's use of the '520 patent through

20   such witnesses at trial.

21   In order to promote efficiency at trial and reduce the number of witnesses, Oracle

22   proposed having Mark Reinhold testify about CLDC HI and CLDC RI and John Pampuch about

23   Java Card as they pertain to the '520 patent. Oracle expects to call both engineers to testify at

24   trial in any event, so it would take up little extra time to have them address these issues. Oracle

25   has offered to make Mr. Reinhold and Mr. Pampuch available for deposition about the practice of

26   the '520 patent. Given the amount of time before trial begins, that no Google expert opined on

27   whether any Oracle product did or did not practice the patent, and that, until recently, Google

28   maintained that the '520 patent was subject to the marking requirement as a matter of law because

Oracle's products practiced it, there would be no undue prejudice to Google to take these limited depositions now. Google declined Oracle's offer.

At the time Google proposed the procedure that the parties ultimately adopted and agreed to, it was well aware that Oracle had not presented a 30(b)(6) witness on the '520 patent. It even referenced this fact in its November 30 statement to the Court. (*See* ECF No. 635 at 2.) If Google's intention was to use this as a basis for *not responding* to Oracle's identification of the products that practice the '520 patent, it never should have proposed this procedure. Google is playing games. Now that Oracle has done its work and provided Google with the information it requested, it is too late for Google to refuse to respond on this ground.

### 6.     The '720 Patent

In its January 2012 disclosure, Oracle confirmed that the '720 patent is used in the Oracle product CDC AMS (versions 1.0, 1.0_1, 1.0_2, Personal Basis Profile and Personal Profile versions). Oracle first identified CDC AMS as a '720 patent embodiment in its December 2010 Disclosure, and made the source code available for inspection. (Oracle 12/2/2010 Disclosure at 8.) Google did not serve any interrogatories directed to the '720 patent or CDC AMS.

Oracle's January 2012 disclosure identifies three source code files (ansi_java_md.c, mtask.c, and Warmup.java) that show its practice of the '720 patent. The disclosure also refers Google to a description of the implementation of the '720 patented technology in Oracle's product (mtask.html). This description is very detailed, and serves as a guide to the three source code files, explaining exactly how the implementation functions. With this information, and so few files at issue, confirming Oracle's contention should have been simple. But Google again failed to do so.

Instead, Google only states that its non-infringement expert, Dr. Jack Davidson, construes the claims at issue in the '720 patent differently from Oracle. (Google Response at 13.) Dr. Davidson has never been cleared by Google under the protective order, so has *never examined the CDC AMS source code*. His differing interpretation relates to one of the claim construction disputes presented to the Court (concerning the phrase "obtaining a representation of at least one class…"). Having not examined the code, it is not clear how Dr. Davidson is in any position to

1    say it does not practice the patent.  The source code at issue was written by the inventor of the

2    '720 patent, Nedim Fresko, to implement his own invention.  The fact that, under Dr. Davidson's

3    proposed special construction, the source code written by the inventor would no longer be an

4    embodiment also suggests that Google's proposed construction is wrong.  The Court recently

5    postponed resolving the claim construction dispute until a fuller record is established at trial.

6    (ECF No. 704 at 10.)

7          Mr. Fresko is no longer employed by Oracle, and subject to the same agreement as the

8    '520 patent, Oracle did not present a 30(b)(6) witness on the "conception, reduction to practice, or

9    actual use" of the invention in the '720 patent.  (8/9/2011 Email from D. Muino to M. Francis.)

10   After the agreement was reached, however, Google chose to elicit deposition testimony from

11   Oracle engineer Erez Landau about the use of the '720 patent in CDC AMS.  (Landau Dep.

12   25:12-27:18.)  By pursuing this line of questioning, Google opened the door to having Mr.

13   Landau testify at trial regarding CDC AMS and its use of the '720 patent, notwithstanding

14   Oracle's agreement not to present an employee witness on this topic.  Google would not be

15   prejudiced, since it deposed Mr. Landau on this issue, and it would be convenient for Mr. Landau

16   to testify about the use of the '720 in CDC AMS to the jury because Mr. Landau will be testifying

17   about the '720 patent in any event.  Mr. Landau did the performance testing that demonstrated

18   Android's use of the '720 patented technology and measured the benefits it offers, and will be

19   testifying on these topics.

20         But even if Mr. Landau does not testify about the implementation of the '720 patent in

21   Oracle products, there are alternative witnesses.  Mr. Fresko, who is not an Oracle employee, can

22   testify about that subject, and Oracle expressly reserved the right to present testimony from him.

23   (*See* 8/9/2011 Email from D. Muino to M. Francis ("We reserve the right, of course, to present

24   testimony on these subjects from our experts, the inventors (Messrs. Yellin, Tuck, and Fresko),

25   and other former Oracle/Sun personnel with knowledge of the patented inventions.").)  Mr.

26   Fresko was subpoenaed by Google and has been deposed in this case.  Google identified

27   Mr. Fresko on its trial witness list as someone who may testify regarding the work that led to the

28   issuance of the '720 patent and the documents authored by him, which is what Oracle would call

1  him at trial to do, if necessary.  (Google's Trial Witness Disclosure Pursuant To Fed. R. Civ. P.

2  26(a)(3) at 5, ECF No. 491-2.)  Those documents include the very same materials identified by

3  Oracle in its January 2012 disclosure.

4      In addition, as is the case with the '520 patent, Google was fully aware of the fact that

5  Oracle had not presented a 30(b)(6) witness on the '720 patent when it proposed the procedure

6  that was adopted by the parties, and made reference to this in its November 30 statement.  (ECF

7  No. 635 at 2.)  It cannot use this fact now as a basis for refusing to respond.

8      **III.    GOOGLE'S STATEMENT**

9      The purpose of the agreed procedure on disclosures was to determine whether the parties

10  would be able to stipulate as to evidence that Oracle proposed to present at trial regarding its

11  alleged practice of the asserted claims of the patents.  (*See generally* Dkt. No. 661.)  Contrary to

12  Oracle's arguments in this paper, Google has never said it would prove that Oracle practiced any

13  of these claims. Instead, it argued that if Oracle were to prove, as it contended it could, that it

14  practiced these patents, then its damages would be limited by its admitted failure to mark any

15  articles with the patent numbers.  (Oracle, ironically, opposed the motion for summary judgment,

16  arguing that whether it practiced the patents was an unresolved question of fact, such that its

17  damages could not be limited as a matter of law.)  Google agreed to this stipulated procedure in

18  order to determine what, if anything, Oracle proposed to present at trial regarding its alleged

19  practice of these patents, and to determine whether Google could agree to stipulate that Oracle

20  would not need to provide such proof at trial.

21      Given Oracle's refusal to present evidence on certain of the patents during discovery, and

22  the positions that it took in its opposition to Google's motion regarding patent marking, Google

23  expected that Oracle might not contend that it practiced some of the patents.  To the contrary,

24  Oracle provided a disclosure asserting that it practiced all six of the remaining patents.

25      As to the '476 patent, Google has considered the additional technical information that

26  Oracle has offered after the parties met-and-conferred, and has made a good faith effort to

27  conduct its own examination of the source code for the Java Development Kit (JDK), version 6.

28  While Google does not believe that the information Oracle presented showed the practice of the

patent, Google was able to identify code that it believes perform each of the steps of the only asserted claim, e.g., in the AppletPanel and URLClassLoader classes, and determined that it can therefore stipulate to the practice of that patent by the JDK, version 6.  With respect to Oracle's other identified products, Google explained in meet and confer that it does not believe those products satisfy that claim's requirement for a protection domain.

As to the '702 patent, Google is willing to stipulate that the software development tools provided for use with the JavaOS 1.1 product fall within the scope of claim 7 of the '702 patent. But Google is not aware of (and Oracle has not provided any evidence of) developers actually using those tools to perform the method of claim 1 or thereby creating the apparatus of claim 13. And while Oracle criticizes Google for not engaging in a claim-by-claim analysis of the various products, Oracle's Disclosure itself contained no such detail; it declared that certain products practiced the patents without addressing any claims individually.  With respect to the only other product Oracle claims to practice the '702 patent—Java Card—Google is not in a position to stipulate given the state of the record.  Specifically, the very witness that Oracle has identified to testify on the practice of the '702 patent by Java Card testified at deposition that he did not know if the Java Card platform implemented the '702 patent. (Pampuch Dep. at 192:10-15.)  Given the inability of Oracle's own chosen witness to identify even whether, much less how, Java Card practices the '702 patent (and nothing in Oracle's disclosures would give any detail as to how it is allegedly practiced), Google can't be expected to make such a determination in a few weeks' time.

As to the remaining patents, Google cannot stipulate.  In some cases, that is because the parties have fundamental disagreements on the interpretation of claim terms.  In other cases, it is because Oracle now seeks an end-run around its discovery representations that it could not find a 30(b)(6) witness regarding Oracle's practice of the patents; therefore, Oracle agreed it would not present an Oracle witness on such issues at trial.  (And, in any event, Oracle has not disclosed any expert opinions that Java practices the patents.)  For at least these reasons, Google cannot stipulate that Java practices the '104, '205, '520, and '720 patents.

1    Google's response to Oracle's disclosures lays out its position on the various patents in

2    detail.  *See* Appendix B.  Rather than attempting to rebut Oracle's long-winded response, which

3    was first provided after the close of business on Thursday night, Google focuses below on the

4    crux reasons why it cannot stipulate to Oracle's practice of the remaining four patents.

5         **The '104, '205, and '720 patents.**   At bottom, Google cannot agree that Oracle practices

6    these patents because Google and Oracle read the claims differently.  That is apparent from the

7    non-infringement reports.  Specifically, the problems are as follows:

8    - **'104 Patent**:  Google disputes that Android contains symbolic references in the
     instructions.  Instead, Android uses indexes into tables, which even Oracle's expert
9    Dr. Mitchell agrees are numeric references.  Because the identified Java products
     also do not use symbolic references in the instructions, and instead only uses
10   indexes into tables, Google cannot agree that Oracle practices the '104 Patent.

11   - **'205 Patent**:  Google disputes that Android performs runtime optimizations that
     replace virtual machine instructions.  The code identified by Oracle also fails to
12   perform such optimizations, such that Google cannot agree that Java practices the
     '205 patent.  In fact, Google elicited deposition testimony from one of the
13   inventors that the invention disclosed in the '205 patent was not effective and
     therefore never implemented in any released version of a Java product.
14

15   - **'720 Patent**:  As highlighted in the claim construction briefing, Google contends
     that the asserted claims require a class loader capable of runtime compilation of
16   source code into Java classes.  Oracle argues that the class loader only need be
     capable of loading classes.  The Java code that Oracle has identified only meets
17   Oracle's interpretation of the asserted claims; it does not perform runtime
     compilation of source code into classes as Google contends.  As such, Google
18   cannot agree that the code Oracle has identified practices the '720 patent.

19   Notably, during the meet-and-confer procedure, Google previewed that the parties' differing

20   positions would likely mean that Google could not stipulate as to Oracle's practice of these

21   patents.  Oracle can hardly feign surprise that Google cannot agree to stipulate as to these patents.

22        Now Oracle contends that, because Google did not submit the claim construction dispute

23   to the Court, Google's experts cannot take the position that the plain meaning of the claims differs

24   from what Oracle's experts say they mean.  There is no support for Oracle's position.  Nor has

25   Oracle ever raised this complaint before, despite being aware of Google's experts' reading of the

26   claims since last September.  Simply put, Google and Oracle differ in their reading of the claims

27   on Android, such that Google cannot stipulate that those same claims cover any Java product.

28

1   **The '520 and '720 patents.**  In discovery, Oracle refused to present a 30(b)(6) witness on

2   its use of these patents, claiming—remarkably—that *no one* at Oracle had such knowledge.

3   Oracle then expressly stated that it would not present any Oracle officer or employee at trial to

4   testify as to alleged use by Oracle of these patents, while apparently purporting to reserve the

5   right to elicit such testimony from non-Oracle personnel, or from expert witnesses.  But Oracle

6   never disclosed any expert testimony on its own alleged practice of these patents (or any of the

7   other four asserted patents, for that matter).  And when Oracle served its disclosures on Google, it

8   took the position that it would have current Oracle employees offer testimony as to its use of

9   these patents.  When asked about this about-face in the meet and confer, Oracle's counsel took

10  the position that this was just more convenient than offering expert testimony or the testimony of

11  inventors.  But Oracle can offer neither of those things; the inventors are not on Oracle's witness

12  list, and its experts have disclosed no opinions relating to the practice of the patents.  In essence,

13  for "convenience," Oracle is now asking to re-open discovery many months after it has closed so

14  that it can present self-serving testimony that it refused to provide the first time around.  With

15  both fact and expert discovery long since complete, it is too late for Oracle's change of heart;

16  Oracle's gamesmanship on these patents should be rejected.

17      Beyond these crux issues lie a variety of discovery failures.  These failures make Oracle's

18  claims that it practices the remaining four patents impossible for Google to confirm and Oracle to

19  prove at trial.  As discussed in more detail in Google's Disclosure (Ex. B), these failures include:

20  - The question of whether Oracle's products practice the patents is a matter of expert
21  opinion.  Yet Oracle never submitted any expert reports regarding Oracle's alleged
    practice of the patents.

22  - Oracle has, at most, *fact* witnesses who cannot opine regarding its alleged practice
    of the asserted claims.  *See* Fed. R. Evid. 701; *Fresenius Medical Care Holdings,*
23  *Inc. v. Baxter Int'l, Inc.*, No. 03-cv-1431-SBA, 2006 WL 1330002 at *3 (N.D. Cal.
    May 15, 2006) (forbidding a lay witness from comparing a device to a patent claim
24  (citing Rules 701 and 702)).  Many of those witnesses admitted that they are not
    qualified to opine on the asserted claims, and Oracle's counsel objected to
25  questions about Oracle's practice of those claims as calling for expert testimony.

26  - Even Oracle's purported fact witnesses aren't qualified to testify about the alleged
    *use* of particular code in particular products because they are ***not*** percipient
27  witnesses.  They have been spoon-fed by Oracle's counsel for the purpose of
    offering testimony about use of the asserted patents, but have no personal
28  knowledge about which code was ultimately implemented in product versions that

were commercially released and actually used.  As such, their testimony is not admissible.  *See Pacheco v. Homecomings Fin., LLC*, No. 08-cv-3002, 2010 U.S. Dist. LEXIS 64400, at *10 (N.D. Cal. June 29, 2010) ("The testimony of a witness who does not have personal knowledge of the subject of his or her testimony is inadmissible." (citing Fed. R. Evid. 602)), *aff'd*, 2011 U.S. App. LEXIS 25826 (9th Cir. Dec. 27, 2011).

- Finally, Oracle's Disclosures rely on information that it withheld during discovery. Specifically, Oracle's 30(b)(6) witnesses on "[e]vidence of ... actual use of the invention(s) allegedly set forth in the asserted claims" could not testify regarding Oracle's practice of any asserted claims.  Oracle is bound by that testimony.  *See Calpine Corp. v. Ace Am. Ins. Co.*, No. 05-cv-00984-SI, 2007 U.S. Dist. LEXIS 75985 at *23-24 (N.D. Cal. Oct. 12, 2007) ("Where a party seeks to depose a corporation, the corporation shall designate a person to testify to matters 'known or reasonably available' to the corporation.  Fed. R. Civ. P. 30(b)(6). The answers given by the person designated by the corporation in a Rule 30(b)(6) deposition are binding on the corporation." (emphasis added)).

Given these issues, Google cannot stipulate that Oracle practices the patents—it simply does not believe that to be the case based on the parties' differing reading of the claims and the failures in Oracle's discovery disclosures.

| | |
|---|---|
| 1 | Dated: January 27, 2011 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Dated: January 27, 2011                MORRISON & FOERSTER LLP


By:   /s/ Marc David Peters

MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street
Armonk, NY  10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900
Oakland, CA  94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway
Redwood City, CA  94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

Dated: January 27, 2011

KEKER & VAN NEST LLP


By: /s/ Eugene M. Paige

SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

DONALD F. ZIMMER, JR. (SBN 112279)
fzimmer@kslaw.com
CHERYL A. SABNIS (SBN 224323)
csabnis@kslaw.com
KING & SPALDING LLP
101 Second Street - Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
ballon@gtlaw.com
HEATHER MEEKER (SBN 172148)
meekerh@gtlaw.com
1900 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508

KEKER & VAN NEST LLP
ROBERT A. VAN NEST (SBN 84065)
rvannest@kvn.com
CHRISTA M. ANDERSON (SBN184325)
canderson@kvn.com
DANIEL PURCELL (SBN 191424)
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

*Attorneys for Defendant*
GOOGLE INC.

**ATTESTATION**

I, Marc David Peters, am the ECF User whose ID and password are being used to file this **JOINT STATEMENT REGARDING ORACLE PRODUCTS PRACTICING PATENTS**. In compliance with General Order 45, X.B., I hereby attest that Eugene M. Paige has concurred in this filing.


Date: January 27, 2011                     /s/ Marc David Peters_____