**KEKER & VAN NEST** LLP

**Daniel Purcell**
(415) 773-6697
dpurcell@kvn.com

February 7, 2012

Honorable William Alsup
U.S. District Court
Northern District of California
Courtroom 8 – 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Oracle America, Inc. v. Google Inc.*, No. 3:10-cv-03561 WHA
      Joint Letter Regarding Google's Request for Additional Depositions

Dear Judge Alsup:

Google respectfully requests that the Court permit Google to notice and take five additional depositions of Oracle engineers. Google contends that all five provided Dr. Iain Cockburn information that he used in his February 3, 2012 Expert Report ("Feb. Cockburn Report"). Oracle contends that only one engineer, Dr. Mark Reinhold, provided Prof. Cockburn with information or was relied on by Prof. Cockburn. The parties met and conferred by email between February 4 and February 6, 2012. Oracle agreed to produce Dr. Reinhold for a two-hour deposition, but refuses to produce the other four engineers.

**Google's Statement**

In his most recent report, served on February 3, Dr. Cockburn apportioned the 2006 intellectual property bundle between the patents and copyrights that are at issue in this case, and those that are not, as required by the Court's January 9, 2012 Order [Dkt. No. 685]. One of Dr. Cockburn's new methods of apportionment is what he describes as the "group and value" approach. Under this approach, Dr. Cockburn "analyze[d] the elements of the bundle and divide[d] up the value of the bundle between the elements." Feb. Cockburn Report at ¶ 325. To determine the value of the various elements of the bundle, Dr. Cockburn said that he:

> consulted with Dr. Mark Reinhold, Chief Architect of Oracle's Java Platform Group (formerly with Sun), and with other Java engineers employed by Sun and now Oracle, who identified the Sun technologies and functionalities that reasonable parties would have expected to be useful in designing a smartphone platform in 2006. . . . At my request, Dr. Reinhold and the other Java engineers

> also reviewed more than 1,300 Sun patents relating to Java that were issued before June 30, 2006, and determined which would have been potentially relevant to the then-expected features and requirements of a smartphone platform generally, and specifically in light of Android's requirements. As a result of this process, I received a list of 569 Java-related patents that I assume would have been potentially relevant to some degree to the Project Plan and corresponding portfolio license of the kind that Sun and Google were negotiating in 2006.

*Id.* at ¶¶ 344-45. Dr. Cockburn identified the "other Java engineers" with whom he had spoken as John R. Rose, Peter Kessler, Christopher Plummer, and Hinkmond Wong. *Id.* at ¶ 344 n.369.

On February 4, after reviewing Dr. Cockburn's report, Google's counsel requested that Oracle make the five engineers with whom Dr. Cockburn had consulted and now relies upon (for the first time) available for deposition. Google's counsel noted that this request was "consistent with the discovery of Google employees that Oracle took following the Leonard and Cox reports, and the fact that we have not previously deposed most of the witnesses at issue." February 4, 2012 email from Purcell to Holtzman. Oracle's counsel refused for all engineers other than Dr. Reinhold, arguing that Dr. Cockburn "spoke to, and relies only on, Dr. Reinhold. The other engineers simply assisted Dr. Reinhold given the short period of time allotted for the revised report and the large number of patents involved, and Prof. Cockburn listed their names for the sake of complete disclosure." February 5, 2012 email from Holtzman to Purcell.

Oracle's refusal to produce its engineers for deposition is a remarkable about-face on an issue the parties litigated just a few months ago. In connection with Google's experts' reports, Oracle sought to depose the five Google employees and two third parties with whom Google's experts had consulted in preparing their reports, even though Oracle had already deposed four of the five current employees about the subject matter of their communications with the experts—Google's non-infringing alternatives to the Oracle technology at issue. Dkt. No. 614. Google agreed to produce for deposition the two third parties that Oracle had not had the opportunity to depose. But Oracle asked the Court to order Google to produce all seven witnesses for deposition. In its motion, Oracle relied heavily on the Court's statement that:

> I don't like spoon feeding, so my suggestion to you is that some depositions be taken of the alleged sources, trained seals who said what they were supposed to say, and then the expert relied on it.

Dkt. No. 614 at 1 (quoting 10/19/11 Tr. at 58:13-21). The Court ultimately allowed Oracle to select three of the seven interviewees for deposition. Dkt. No. 617. Oracle was thus able to not only take the deposition of the two third parties who had not yet been deposed, who Google had voluntarily made available for deposition, but also to depose Google employee Dan Bornstein for a third time in this case. By contrast, Google has only deposed two of the five Oracle engineers at issue, Mark Reinhold and Peter Kessler. Google has never had the opportunity to question the other three engineers at all, and has never had the chance to examine any of the five engineers about their apportionment work because it was undertaken for the first time in, and specifically

for the purpose of, preparing Dr. Cockburn's most recent report. Google is entirely in the dark about what analysis these engineers undertook in valuing the patents at issue.

Oracle claims it need offer only Dr. Reinhold for deposition because none of the other engineers had any direct contact with Dr. Cockburn. Instead, Oracle suggests that the other engineers merely fed information to Dr. Reinhold, who in turn fed it to Dr. Cockburn. There is nothing in Dr. Cockburn's report that suggests this to be the case. Dr. Cockburn wrote that he "consulted with Dr. Mark Reinhold . . . and with other Java engineers employed by Sun and now Oracle." Feb. Cockburn Report at ¶ 344. If, however, Dr. Cockburn did not speak directly with the other four engineers, that only makes their depositions more important. Oracle surely cannot avoid the spoon-feeding problem by double-spoon-feeding, with certain engineers spoon-feeding another engineer who in turn spoon-feeds Oracle's expert.

Furthermore, as Oracle argued in its motion to strike Google's expert reports, Dkt. No. 585 at 6, if Oracle wants to admit Dr. Cockburn's testimony regarding his "group and value" apportionment at trial, the Oracle engineers who reviewed the patents will have to testify at trial. *See* Order Granting in Part and Denying in Part Motion to Exclude Portions of the Expert Reports of Gregory K. Leonard and Alan J. Cox, Dkt. No. 632, at 3 ("[E]xpert reliance on interviews with Google's engineers can be proper *so long as they can testify to the foundational facts with firsthand knowledge*." (emphasis added)); *Therasense, Inc. v. Becton, Dickinson and Co.*, 2008 WL 2323856 (N.D. Cal. 2008). At trial, Dr. Reinhold's testimony as to what the other Oracle engineers allegedly told him would be inadmissible hearsay. Thus, in order to lay the foundational facts for Dr. Cockburn's testimony, Oracle would need Messrs. Rose, Kessler, Plummer and Wong to testify. If those witnesses are going to testify at trial, Google should have the opportunity to depose them beforehand.[1]

Contrary to Oracle's suggestion, it cannot avoid the hearsay problem by purporting to identify Dr. Reinhold as an employee expert. To begin with, Oracle did not disclose Dr. Reinhold as an employee expert by the July 29, 2011 deadline, and served a supplemental disclosure only yesterday, after Google asked for the depositions of the five engineers. Further, the Court specifically noted in its order allowing Dr. Cockburn's third report that "[a]t this late hour, Oracle may not substitute a different damages expert or add a different damages expert." Jan. 20, 2012 Order [Dkt. No. 702] at 4. But even putting that issue aside, disclosing Dr. Reinhold as an expert does nothing to mitigate the hearsay and credibility problems inherent in having interested party employees spoon-feed purported factual information to an expert, as this Court noted in *Therasense*.

Google respectfully requests that the Court order Oracle to produce for deposition all five Oracle engineers on whom Dr. Cockburn relied.

---

[1] Of Oracle's five engineers, only Mark Reinhold and Peter Kessler appear on Oracle's October 13, 2011 Witness List. Dkt. No. 525. Google reserves its right to object to the other three engineers testifying at trial because they were not timely disclosed.

Honorable Judge William Alsup
February 7, 2012
Page 4

**Oracle's Statement**

Oracle has readily agreed to produce *every* Oracle engineer with whom Prof. Cockburn spoke and on whom Prof. Cockburn relied in connection with his recently submitted damages report. There is only *one* such person: Dr. Mark Reinhold. Prof. Cockburn has never spoken to or otherwise communicated with John R. Rose, Peter Kessler, Christopher Plummer, or Hinkmond Wong. Oracle acknowledges that Prof. Cockburn's report, one paragraph of which notes that he "consulted" with Dr. Reinhold and the four other engineers, may have left the impression that Prof. Cockburn spoke with or relied on the four assisting engineers. However, as Oracle's counsel has tried to explain to Google, that was simply an error of poor drafting. That it was an error is corroborated by the fact that Prof. Cockburn did not list the four engineers either as persons who provided information considered in Appendix F to his report or as persons with whom he spoke in the footnote to Exhibit 33 of his report, both of which were accurate. Oracle regrets the drafting error, but there is no reason for it to lead to cumulative discovery that has no legal basis.

The facts are simple: with a very short period in which to prepare the portfolio analysis to inform Prof. Cockburn's report, the four engineers assisted Dr. Reinhold in going through more than 1,300 patents, which Dr. Reinhold ultimately categorized and prioritized. The four engineers provided no factual information to Prof. Cockburn, and Prof. Cockburn relied only on Dr. Reinhold's ultimate engineering judgment. However, Google refuses to accept Oracle's representations to this effect, and argues that Dr. Reinhold's deposition is not enough. That demand should be rejected.

Oracle agrees that Google is entitled to test the validity of the damages opinions expressed by Prof. Cockburn, and Google is in fact taking Prof. Cockburn's deposition later this week, as required by the Court's order (Dkt. 702 at 2). Oracle also agrees that Google is also entitled to test the accuracy of the information that Prof. Cockburn received from Dr. Reinhold, and immediately agreed to Google's request to depose Dr. Reinhold. But Google is not entitled to depose, under the guise of "expert discovery," every person with whom Dr. Reinhold discussed the work he did to assist Prof. Cockburn.

In his amended report, one of the ways that Prof. Cockburn calculates a reasonable royalty for patent damages is by relying on the 2006 license negotiations between the parties. As suggested by the Court, he uses the value of that proposed license as a starting point, and adjusts downward by, among other things, apportioning between the value of the patents in suit and the value of the other patents that Sun would have licensed to Google in that transaction. Feb. Cockburn Report ¶¶ 52, 53, 344-45, 391-412.

Dr. Reinhold assisted Prof. Cockburn in that apportionment analysis by (i) identifying the specific Sun patents that likely would have been included in the technology license contemplated by the 2006 negotiations, (ii) classifying those patents into various technology groups relevant to a smartphone platform, and (iii) ranking the technology groups in terms of their technical importance to a smartphone platform such as Android, and (iv) ranking the individual patents in

Honorable Judge William Alsup
February 7, 2012
Page 5

terms of their technical importance to a smartphone platform such as Android. Dr. Reinhold's work is summarized in a spreadsheet that is included as an exhibit to Prof. Cockburn's report (Exhibit 33). Dr. Reinhold, *and no other Oracle engineer*, is the sponsor of that technical work, takes responsibility for the technical analysis and the judgments that inform it, and is the only Oracle engineer with whom Prof. Cockburn discussed it. *See* February 3, 2012 Cockburn Report Appendix F.

Moreover, Dr. Reinhold is fully competent to testify to the accuracy and completeness of the information he provided to Prof. Cockburn, both as a percipient witness and, if necessary, as an employee expert on technical issues necessary to inform the grouping of elements of the 2006 Bundle under Rule 26(a). He has a Ph.D. in computer science from the Massachusetts Institute of Technology. He began working as a Sun engineer in 1996. From the beginning, he shared responsibility for the Java virtual machine, and was lead engineer for several releases of the Java VM. He is now Chief Architect of the Java Platform Group. If Google wishes to understand what assistance the other engineers provided to Dr. Reinhold, there is a simple mechanism for doing so: they should ask Dr. Reinhold, just as they may ask Dr. Reinhold about any experiences, things he has read, other people he has spoken to over the years, or anything else that may have informed his technical evaluation of the patents in Sun's Java portfolio. The information that Dr. Reinhold gathered and considered – technology related to the Java platform – is information that he was already familiar with as a result of more than 15 years working at Sun and Oracle as within his job responsibilities as Chief Architect of the Java Platform Group. Dr. Reinhold personally reviewed that information, and considered it in light of his professional experience. Dr. Reinhold then prepared a detailed summary of the voluminous information (in the form of the nearly 600-line spreadsheet fully disclosed in Exhibit 33 to Prof. Cockburn's report) and discussed his analysis of the information with Prof. Cockburn directly.

Given these facts – which Google will have very opportunity to confirm at the depositions of both Prof. Cockburn and Dr. Reinhold – there is no basis for Google's request to depose the other four engineers who worked with Dr. Reinhold.[2]

Google's arguments to the contrary are unavailing. First, Google asserts that Prof. Cockburn "had spoken with" the other four engineers. Although Oracle understands why Google originally believed this to be the case, and regrets that the choice of words in one paragraph of the report caused its confusion, that assertion is simply false, as explained above.

Second, Google argues that it must be allowed the depositions of the other engineers because they "merely fed information to Dr. Reinhold, who in turn fed it to Dr. Cockburn." That assertion – which Google calls "double spoon-feeding," apparently because it prefers a clever pejorative to a fact – is also false. Dr. Reinhold was personally involved in gathering, classifying, and ranking all of the information that was provided to Prof. Cockburn, and was the only person ultimately responsible for the technical analysis. "Spoonfeeding" is simply not at

---

[2] In addition to Dr. Reinhold, Google has already deposed Dr. Kessler, also for a full day.

issue here: some technical understanding of the Java-related patents in the 2006 Bundle is obviously necessary for Prof. Cockburn to undertake valuation of the bundle along the lines previously suggested by both Google and the Court, and Prof. Cockburn, who does not have that technical knowledge himself, must rely on someone in Dr. Reinhold's position for that understanding.

Third, Google misconstrues this Court's earlier order regarding Google's experts' reliance on interviews with Google and third party employees.  Google's damages experts interviewed and relied on seven individuals, three of whom had never been deposed, to support their reports in numerous respects.  The Court compelled Google to produce three of those witnesses for two-hour depositions, and allowed Oracle to choose which three.  The logic of that order does not help Google.  Google's experts spoke with and relied upon all seven witnesses; three had not been deposed; Oracle was allowed to depose only three.  Oracle's expert spoke with and relied on only one witness; that witness has already been deposed; yet Oracle agrees that Google can depose him for a second time.

Fourth, Google argues that Prof. Cockburn's "group and value" analysis is inadmissible unless all five engineers testify at trial.  This is neither correct nor supported by Oracle's previous arguments regarding Google's experts' reliance on fact witnesses.  Prof. Cockburn may rely on information provided to him in out of court statements if an expert in his field would reasonably rely on such information in forming an opinion.  *See* Fed. R. Evid. 703.  (In contrast, Google's expert economists cannot testify about the costs of designing around infringement by relying on what a Google engineer admitted was his "hand-wavy," hearsay speculation about the amounts of those costs.)  In any event, Dr. Reinhold is a disclosed trial witness who is competent to testify concerning all of the information he gave to Prof. Cockburn.  The fact that other engineers may also be competent to do so is irrelevant, as Oracle does not expect to rely on any of the other engineers to support Prof. Cockburn's group and value analysis at trial.

Google's argument is also internally inconsistent.  Google argues that all five engineers must testify at trial, so it must have five depositions.  In a footnote, however, it argues that ***only*** Dr. Reinhold and Dr. Kessler may testify at trial because the other three engineers were not on Oracle's trial witness list, which was served almost five months before the February report.

Oracle has agreed to produce Dr. Reinhold, the sole engineer on whom Prof. Cockburn relied, for two hours.  Google's motion to compel depositions of four other engineers, who have never communicated with Prof. Cockburn at all, should be denied.

Sincerely,

KEKER & VAN NEST, LLP                                              BOIES, SCHILLER AND FLEXNER LLP


*/s/ Daniel Purcell*                                                              */s/ Steven C. Holtzman*

621376.03

Honorable Judge William Alsup
February 7, 2012
Page 7

# ATTESTATION OF FILER

    I, Daniel Purcell, have obtained Steven C. Holtzman's concurrence to file this document on his behalf.

Dated: February 7, 2012

KEKER & VAN NEST LLP

By: */s/ Daniel Purcell*
Daniel Purcell
Attorneys for Plaintiff
GOOGLE INC.

621376.03