# EXHIBIT E

```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION

APPLE, INC., and NEXT              )
SOFTWARE, INC., formerly known     )
as NeXT COMPUTER, INC.,,           )
                                   )
                                   )
Plaintiffs/Counter-Defendants,     )  Case No. 11 C 8540
                                   )
-vs-                               )  Chicago, Illinois
                                   )  January 23, 2012
                                   )  1:34 p.m.
MOTOROLA, INC., and MOTOROLA       )
MOBILITY, INC.,                    )
                                   )
                                   )
Defendants/Counter-Plaintiffs.     )


                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE RICHARD A. POSNER

APPEARANCES:

For the Plaintiffs:    MR. MATTHEW D. POWERS
                       Tensegrity Law Group, LLP
                       555 Twin Dolphin Drive
                       Suite 360
                       Redwood Shores, CA  94065
                       (650) 802-6000

                       MR. BRIAN E. FERGUSON
                       Weil, Gotshal & Manges, LLP
                       1300 Eye St., NW
                       Suite 900
                       Washington, DC  20005
                       (202) 682-7516

Court Reporter:

              KATHLEEN M. FENNELL, CSR, RMR, FCRR
                     Official Court Reporter
                   United States District Court
           219 South Dearborn Street, Suite 2144-A
                     Chicago, Illinois  60604
                  Telephone:  (312) 435-5569
               e-mail:  Kathyfennell@earthlink.net
```

| | | |
|---|---|---|
| 1 | APPEARANCES: (Continued) | |
| 2 | For the Plaintiffs: | MS. DANIELLE ROSENTHAL |
| | | Weil, Gotshal & Manges, LLP |
| 3 | | 767 Fifth Avenue |
| | | New York, NY  10153 |
| 4 | | (212) 310-8267 |
| 5 | | MR. DAVID EDWARD MELAUGH |
| | | MS. WENDY ANNA HERBY |
| 6 | | Apple |
| | | 1 Infinite Loop, MS 36-3NYJ |
| 7 | | Cupertino, CA  95014 |
| | | (408) 862-1962 |
| 8 | | |
| | For the Defendants: | MR. EDWARD DE FRANCO |
| 9 | | MR. RAY NIMROD |
| | | Quinn, Emanuel, Urquhart & Sullivan, LLP |
| 10 | | 51 Madison Avenue |
| | | Fl22 |
| 11 | | New York, NY  10010 |
| | | (212) 849-7000 |
| 12 | | |
| | | MR. DAVID A. NELSON |
| 13 | | MR. STEPHEN A. SWEDLOW |
| | | Quinn, Emanuel, Urquhart & Sullivan, LLP |
| 14 | | 500 W. Madison Street |
| | | Suite 2450 |
| 15 | | Chicago, IL  60661 |
| | | (312) 705-7400 |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

1  THE COURT: Yeah.

2  MR. DE FRANCO: Yeah, we agree with that, your Honor.

3  THE COURT: Are we going to have *Daubert* motions
4  soon?

5  MR. DE FRANCO: I think it's likely, your Honor, yes.
6  The only thing I would suggest is we also include in other
7  cases, again, we've been able to work some of these issues out
8  when they go in both directions, so we would include a date
9  for the parties to meet and confer to try to resolve them
10 first.

11 THE COURT: Well, when do you want to have the
12 *Daubert* hearings?

13 MR. DE FRANCO: If your Honor would allow us to -- a
14 few days to work out a proposed schedule, we'll incorporate
15 dates.

16 THE COURT: So you'll propose a date.

17 Let me skip to my little addendum. I'm puzzled by
18 the damages. I'm puzzled by the damages issue.

19 Why would there be significant damages in a case like
20 this?

21 I mean, take something like a vertical swipe, so
22 suppose that -- which is it, which of you has the 27-degree
23 tolerance range?

24 MR. POWERS: That's an Apple patent.

25 THE COURT: Pardon?

1           MR. POWERS:  That's an Apple patent.
2           THE COURT:  That's your patent.  Okay.  So
3  Motorola -- so you're accusing Motorola of infringing, or what
4  do I have?
5           MR. POWERS:  That's the '949 patent that is the
6  method by which, using heuristics, you determine --
7           THE COURT:  Right.
8           MR. POWERS:  -- what a gesture -- you translate a
9  gesture into --
10          THE COURT:  Right, right, I understand that.  But
11 what's the status of it?
12          So you're arguing infringement or what?
13          MR. POWERS:  Yes.
14          THE COURT:  And they're arguing invalidity or no
15 infringement or what?
16          MR. DE FRANCO:  Both, your Honor.
17          MR. NELSON:  Both.
18          MR. DE FRANCO:  Yes.
19          THE COURT:  Okay.  So suppose -- so suppose you prove
20 infringement.  How would you show damages?
21          MR. POWERS:  That's actually a good example of a
22 patent for which there could be very significant damages.
23          THE COURT:  I don't believe it, but go ahead.
24          MR. POWERS:  That's why there's trials and evidence
25 and testimony and experts.

1      THE COURT: Okay. You tell me why.

2      MR. POWERS: The -- if you have a device that is a
3 touch-screen device, and it is not at all far-fetched for
4 anyone who's been using them, that the benefits of a
5 touch-screen device drive sales of that device. That is
6 something that is interesting, it's an intuitive, great user
7 interface, and that has taken over these devices, and Apple
8 innovated that.

9      So if, in fact, you start from the premise that a
10 touch-screen device, the touch-screen nature of these phones
11 is important to their sale -- which I think is not going to be
12 seriously disputed; there will probably be some disputes, but
13 that's, I think, obvious -- then the ability of that
14 touch-screen device to interpret touches into commands is
15 obviously critical to its functioning. And it is, I think,
16 from those two premises fairly easy to understand how a device
17 that depends on touch-screen functionality would have
18 significant exposure to damages from a patent that claims how
19 to convert touches into commands.

20      THE COURT: Well, but suppose they -- suppose they
21 didn't infringe. They still have this touch screen, and you'd
22 swipe your finger, and if you didn't -- if you weren't exactly
23 vertical, it would go diagonally, is that the problem?

24      MR. POWERS: No. The patent -- well, if they didn't
25 infringe, there wouldn't be damages, of course. But if they

1  do infringe, then they infringe the Patent --

2          THE COURT: No, no, no, what you compare, you
3  compare -- you compare the success they have, or the success
4  you have when they're infringing with the success they would
5  have if they weren't infringing, right?

6          So if they weren't infringing and I put my finger on
7  their smartphone, it will go up and down, won't it?  But if
8  I'm off by, you know, a few degrees, then it doesn't work as
9  well, right?

10         MR. POWERS: I understand your Honor's point, but I
11 think it begins from a false premise.

12         The premise is that they would have a useable touch
13 screen though not infringing.  There is a body of law in
14 damages law which says if there's a noninfringing --

15         THE COURT: No, I don't understand you.  They'd have
16 a touch screen, right?

17         MR. POWERS: They do.

18         THE COURT: And would they be able to swipe a finger
19 on it or not?

20         MR. POWERS: That is a question that will be --

21         THE COURT: Well, I want your answer.

22         If they swipe a finger on their smartphone and
23 they're not infringing, that is, they're not using your
24 27-degree tolerance, what happens?

25         MR. POWERS: That is -- there is no answer to that

1 because we don't --

2 THE COURT: What do you mean there's no answer to
3 that?

4 MR. POWERS: I mean there is no answer to that
5 because that proceeds from a factual premise that we don't
6 think exists.

7 THE COURT: Oh, come on. Why are you fencing with
8 me? I'm asking you a simple question.

9 They have a smartphone. You put your finger on it.
10 You move your finger up and down. What happens?

11 MR. POWERS: If -- if you move it up and down on
12 theirs --

13 THE COURT: Don't say if. I just told you what my
14 example is.

15 MR. POWERS: Under that hypothetical, on their
16 current smartphone, you would get the command.

17 THE COURT: Not the current smartphone. The
18 current -- the smartphone that doesn't infringe.

19 MR. POWERS: Under that hypothetical smartphone, it
20 depends on how it was programmed. I don't know.

21 THE COURT: How it was what?

22 MR. POWERS: How it was programmed. That is the
23 point of the patent.

24 THE COURT: I didn't hear your word, how it was what?

25 MR. POWERS: Programmed. That's the point of the

1  patent is that --
2          THE COURT:  Oh, come on.
3          MR. POWERS:  That is the point of the patent.
4          THE COURT:  What happens, what -- all right.  What is
5  the -- what is the plausible alternative?
6          Suppose they didn't copy your patent.  They're
7  afraid, all right?  They wanted to sell a touch screen that
8  could swipe.
9          Now, what would they have done?
10         MR. POWERS:  That is a -- that is a -- you're asking
11 exactly the right question but to the wrong person.  That's
12 their burden of proof on that issue.
13         THE COURT:  You tell me.
14         MR. POWERS:  I haven't seen their proof on that yet.
15         THE COURT:  All right.  I'll ask them.  What happens
16 if -- in this example?
17         MR. SWEDLOW:  Your Honor, just to make sure I'm
18 answering the question that you want an answer to, so we have
19 a device that doesn't infringe because we design around their
20 patent.  Let's say it's held to be valid and infringed.  So
21 now we have a device where we can't use, for example, a
22 27-degree heuristics where it would go diagonally as you point
23 out.
24         THE COURT:  Right.
25         MR. SWEDLOW:  Then we'd have a touch screen where we

1  couldn't use that aspect of the smartphone, but we'd still
2  have the smartphone where we designed around whatever was
3  determined to be a valid part of their patent.
4  　　　　So we still have the Motorola Droid.  We just can't
5  use whatever the metes and bounds are of the actual claim.
6  　　　　THE COURT:  So what happens when someone in this --
7  what happens when someone swipes his finger vertically on your
8  hypothetical noninfringing machine?
9  　　　　MR. SWEDLOW:  If they go like that, up, it goes to
10 the next screen, just like as if it were infringing or not
11 infringing.  It doesn't matter.
12 　　　　THE COURT:  But if they're off vertical even a
13 little, it's going to be diagonal, be cockeyed?
14 　　　　MR. SWEDLOW:  If their patent was actually inventive,
15 yes, it would be cockeyed.
16 　　　　THE COURT:  It'd be cockeyed.
17 　　　　MR. SWEDLOW:  The programming, as Mr. Powers referred
18 to, it's going to have to decide somehow does it want to go
19 up?  Does it want to go sideways?  Does it want to go
20 diagonally?  So whatever the noninfringing substitute would be
21 for the patented invention, we would present that.
22 　　　　THE COURT:  It would be more likely -- you'd be more
23 likely to have these undesired diagonal shifts than with
24 this -- than with Apple's.
25 　　　　MR. SWEDLOW:  Or maybe our noninfringing substitute

1    would be it goes up if it's less than 45 degrees and it goes
2    sideways if it's more than 45 degrees because they can't own
3    the entire spectrum --
4        THE COURT:  Are there any devices on the market which
5    don't have this 27-degree tolerance?
6        MR. SWEDLOW:  Well, we think all devices on the
7    market don't have it because we think it's 33 degrees is
8    actually the tolerance.
9        So I don't know the answer because I don't know the
10   specs of all the touch-screen devices.
11       THE COURT:  Okay.  Thanks.
12       So isn't the damages question, for this vertical
13   thing, if -- if Motorola couldn't have used this vertical
14   swipe with the 27-degree latitude, how would its sales -- how
15   would Apple's sales have been more, have been greater, right?
16   Isn't that the issue?
17       MR. POWERS:  That's one of the issues.  There are --
18   if we were seeking lost profits, that would be the issue.
19       On a reasonable royalty analysis, it's not the issue.
20   Under a reasonable royalty analysis, the question is what
21   would Motorola have paid for the value of that invention that
22   it's using to have a touch screen.
23       THE COURT:  That clearly is related to how much
24   business they would get.
25       MR. POWERS:  Undeniably, that's one of many, many

1 factors.
2 THE COURT: I don't get -- I am not buying many, many
3 factors.
4 MR. POWERS: The --
5 THE COURT: I'm not going to let a jury -- I'm not
6 going to let a jury throw up its hands and say we have many
7 factors, and you look at all these factors and we decide X.
8 It has to be -- it has to be systematic.
9 MR. POWERS: Understood, your Honor.
10 THE COURT: And it seems to me that what you have to
11 show, and Motorola on its argument of infringement, you have
12 to show that you would have lost sales to them. I think you
13 have to show that.
14 MR. POWERS: The law does not require that for a
15 reasonable royalty.
16 THE COURT: I don't believe it.
17 MR. POWERS: We will brief it --
18 THE COURT: Because if you wouldn't sell -- if you
19 wouldn't lose any business, the reasonable royalty would be
20 zero, right? They wouldn't need your device.
21 Suppose that people don't care if they occasionally
22 get a diagonal. Suppose they wouldn't pay a penny to have
23 your beautiful 27-degree range. Then they wouldn't pay you
24 any royalty, right?
25 Right or wrong?

1       MR. POWERS:  If --
2       THE COURT:  Don't "if" me.  Answer my question.
3       MR. POWERS:  The question, I believe, is slightly
4  ambiguous.  May I clarify --
5       THE COURT:  Look, you answer my question.
6       MR. POWERS:  If the value is zero, the royalty would
7  be zero to negligible.
8       THE COURT:  Exactly.  So you can't divorce the
9  royalty from the lost profits.
10      MR. POWERS:  With that I disagree.  The law does --
11  you can have --
12      THE COURT:  That doesn't make any sense.  If the
13  market would produce a zero royalty because there are no lost
14  profits, then you have no damages claim because you haven't
15  lost anything.
16      MR. POWERS:  The -- I'll be happy to brief --
17      THE COURT:  If you haven't lost anything, you can't
18  get any damages.
19      MR. POWERS:  That's not the law.
20      THE COURT:  That --
21      MR. POWERS:  If I sell --
22      THE COURT:  I do not believe you because how can you
23  get damages --
24      MR. POWERS:  We'll brief it.
25      THE COURT:  -- if there's no loss?

1  MR. POWERS: If I sell nothing --
2  THE COURT: You might be able to get restitution.
3  MR. POWERS: If I sell nothing, I get a reasonable
4  royalty, a reasonable royalty being defined by the value that
5  the two parties would have agreed to, and that has nothing to
6  do with my lost sales.
7  THE COURT: But if -- if -- if it's -- if it's proved
8  that your patent has no value because consumers are
9  indifferent to its tiny little improvement, then you haven't
10 lost anything.
11 MR. POWERS: I agree with that. That's tautological.
12 If it has no value, it has no value.
13 THE COURT: And if you haven't lost anything, you
14 can't get damages because damages are for losses.
15 MR. POWERS: Those two are separate things, the law
16 says --
17 THE COURT: No, they're not separate.
18 MR. POWERS: I suggest we brief it.
19 THE COURT: They're not.
20 MR. POWERS: The law says we get a reasonable royalty
21 at a minimum even with no lost profits.
22 THE COURT: A reasonable royalty is zero if the
23 invention is valueless.
24 MR. POWERS: I agree with that.
25 THE COURT: So what are we disagreeing about?

1     MR. POWERS: That valueless is not defined by how
2  many sales we did or did not lose.
3     THE COURT: Well, of course, it is, because if it
4  doesn't give you any sales, it has no value. You put
5  something into a machine at some expense to yourself and it
6  has zero value.
7     MR. POWERS: Proof of our lost sales is not required
8  for a reasonable royalty.
9     The question is -- and your Honor is raising a fair
10 issue. I suggest we brief it because there's a lot of law
11 developed on this, and a lot of it is very recent.
12    THE COURT: The law is in such chaos on patent
13 damages. It's in chaos. Everybody knows that.
14    MR. POWERS: Many people would agree with that.
15    THE COURT: And I'm not going to submit chaos to the
16 jury. If that's courting reversal, it's courting reversal.
17    MR. POWERS: I don't think either side is asking for
18 that. What I think both sides would ask your Honor to do is
19 not -- is not just to throw a *Georgia Pacific* panoply of
20 factors and say you figure it out. I don't think either side
21 is asking for that.
22    What I do think both sides would be asking for is to
23 say the law says that Factors A, B and C are relevant to the
24 value of a reasonable royalty. And here's the evidence on A,
25 B and C, on both sides. And if your Honor -- and that's a

1 question that your Honor would decide on motions *in limine* and
2 *Daubert*s to decide whether you agree that the evidence is
3 sufficient on A, B and C, sufficiently relevant, sufficiently
4 admissible, all of that, that's your decision, but there is
5 law about Factors A, B and C being relevant.
6 THE COURT: But you tell me how if a company -- if a
7 company adds to a handheld a piece of code that has no value
8 to consumers, they don't know about it, they don't care about
9 it, no value, why would that company be able to charge a
10 reasonable royalty?
11 I mean how would anybody -- why would anybody pay a
12 royalty to use something which has no value? That's --
13 MR. POWERS: I think we're in agreement on part of it
14 and in disagreement on another part of it.
15 We're in agreement that if the patented feature has
16 zero value, the royalty would probably be zero. Where we're
17 in disagreement is how do you measure whether it has zero
18 value.
19 THE COURT: Okay. So tell me how you measure it has
20 positive value.
21 MR. POWERS: One way is to talk to consumers and find
22 out if they like it. One way is to look at how the products
23 are marketed.
24 THE COURT: I'm not going to ask consumers how they
25 like it. That is a totally -- that is a totally fraudulent

1  way of determining -- I mean, look, you go out and start
2  asking consumers, oh, this device had X and meant that if you
3  were off the vertical by only a small amount, you'd still
4  get -- you'd have this confusing diagonal --
5      MR. POWERS: Both sides --
6      THE COURT: -- would you pay more for that? Of
7  course, they'll say yes, right, because you're focusing them
8  on some feature.
9      That's not a good way --
10     MR. POWERS: Your Honor is absolutely right. The law
11 with regard to surveys is fairly well developed, and the law
12 on surveys has guidelines about what type of survey questions
13 are too suggestive so that they are thrown out.
14     THE COURT: It's not the suggestive question. It's
15 the point, you're pointing to someone -- someone who never in
16 his life dreamed of a diagonal problem is suddenly asked what
17 he thinks about it, so naturally he starts thinking, whoa,
18 yeah, they're asking me, a problem, yeah, don't know about it,
19 yeah.
20     MR. POWERS: The issue your Honor is raising is an
21 issue that comes up in competing expert testimony about those
22 questions, and that would be for you to decide.
23     THE COURT: Yeah, I'm not going to have competing
24 experts talking about their marketing surveys. I regard that
25 evidence as totally worthless.

1    I want to see sales, I want to see evidence that
2 Apple would have sold less or did sell less when all of a
3 sudden Motorola started offering this -- I mean, maybe
4 Motorola advertised and they said, wow, we're worried about
5 your finger is not swiping a hundred percent vertical.
6 Doesn't matter.  We've cured that.  That would certainly be
7 probative evidence.
8    But what I don't understand is if at the end of the
9 day, a jury finds or I find that there is -- that there was no
10 loss to Apple because this was -- I mean, it's a clever
11 feature and so on, but it was useless, consumers don't care
12 about it, I don't see how you get from that to saying but
13 nevertheless, if it had known that it was infringing, Motorola
14 would have paid a royalty.
15    MR. POWERS:  One distinction perhaps that where I
16 sense a difference between where we're coming out is the
17 difference between the absence of evidence from Apple about
18 the impact of a feature on its sales and conclusive evidence
19 that the feature had no effect on sales.
20    In the first instance, I would argue it's irrelevant
21 to the question of what a reasonable royalty is.  It's not
22 Apple's burden under the law --
23    THE COURT:  Of course, it is.  You have the burden of
24 proving damages.
25    MR. POWERS:  We do, but not to prove that as the