1   [counsel listed on signature page]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| 12          Plaintiff, | **SUPPLEMENTAL JOINT** |
| | **STATEMENT REGARDING** |
| 13      v. | **ORACLE PRODUCTS** |
| | **PRACTICING PATENTS** |
| 14  GOOGLE INC. | |
| 15          Defendant. | |
| 16 | Dept.:  Courtroom 8, 19th Floor |
| | Judge:  Honorable William Alsup |
| 17 | |

18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to the Court's January 31, 2012 Order Regarding Patent Marking Dispute (ECF

2  No. 707) and the agreement between the parties as set forth in their December 30, 2011 Joint

3  Statement Regarding Supplemental Order Regarding Patenting Marking (ECF No. 661), Plaintiff

4  Oracle America, Inc. ("Oracle") and Defendant Google Inc. ("Google") hereby submit the

5  following statement regarding Oracle products, Oracle-licensed products, Sun products, and Sun-

6  licensed products ("Oracle Products") that practice or have practiced the asserted claims of the

7  patents-in-suit ("claims-in-suit").

8    **I.    STIPULATIONS**

9    In order to narrow the issues to be addressed at trial, the parties have agreed on a number

10  of stipulations.  Almost all of the disputes that the parties have regarding whether Oracle practices

11  the asserted claims are  based on the same technical arguments underlying the parties' respective

12  positions on the alleged infringement of the patents by the accused Android instrumentalities.

13  Accordingly, as to many of the patents, the parties have worked on conditional stipulations that

14  tie the issues together: *i.e.*, if the accused Android functionality infringes, then Oracle's products

15  practice the patent.

16    The parties agree that as to the unconditional stipulation they have reached, the stipulation

17  may be used in all phases of trial, as it is not conditional on the resolution of the dispute between

18  the parties.

19    The parties have not been able to agree upon the evidentiary effect of the conditional

20  stipulations.  The positions of the parties are as follows:

21    Oracle argues that in order for such a conditional stipulation to be fair, it must be effective

22  for *all* purposes as the Court suggested (ECF No. 641) and the parties agreed (ECF No. 661), and

23  be applied to secondary considerations of nonobviousness in the patent liability phase of the trial

24  as well as to marking or injunction issues in later phases; an explanation and limiting instruction

25  from the Court would prevent any jury confusion.  Oracle maintains that to streamline the trial

26  and avoid the need for "infringement-like" analysis or testimony on Oracle's products, the

27  conditional stipulations *must* be effective in the patent liability phase of the trial.  Otherwise, just

28  as the Court has tried to prevent (ECF No. 707), Google will indeed "have it both ways" and

1    benefit from this procedure in the damages phase without having to admit items that may hurt

2    Google in the liability phase.  The parties agreed to "jointly submit to the Court a list of the

3    Oracle Products that they stipulate practice the asserted claims, which shall have the effect of

4    establishing that fact for all purposes at trial" (ECF No. 661), and if Google is unwilling to accept

5    that the conditional stipulations apply to all phases of the trial, then they are not actually

6    stipulations according to the agreed-upon procedure approved by the Court.

7            Oracle notes that the agreed-upon procedure concerns only Oracle's practice of the patents

8    and not the marking issue, so no stipulation regarding marking "must" be made, as Google

9    suggests below.  The legal effect of Oracle's discovery admissions on the marking issue cannot

10   be addressed until after the patent liability phase of the trial, given the conditional stipulations

11   below.

12           Google believes that it and Oracle have unbridgeable technical disagreements as to what

13   does and does not infringe the patents, as demonstrated by their expert reports on infringement

14   issues.  In an attempt to simplify the proof required in the case, Google has agreed to allow the

15   jury to be the arbiter of who is right on coverage of the claims as to both the accused

16   instrumentalities and the Oracle products (with one small exception for the '520 patent, where the

17   technical dispute encompasses issues beyond those raised by Oracle's infringement theories as to

18   the Google accused instrumentalities).  It would be both confusing to the jury, and prejudicial to

19   Google, to be told that they can presume that Oracle practices its patents if they end up deciding

20   that Google infringes those patents.  Much mischief could be created by the use of this stipulation

21   outside the context for which it is intended, perhaps even leading the jury to believe that Google

22   agrees with Oracle's technical arguments for infringement—which is precisely the opposite of the

23   truth.

24           With respect to Oracle's claim about the potential savings in the presentation of evidence,

25   the only issue to which Oracle has pointed in meet and confer discussions or here is that of the

26   secondary considerations of non-obviousness of commercial success of its products.  First, that

27   issue would only arise if Google presses a claim at trial that a particular patent is invalid as

28   obvious.  Second, if Oracle wishes to argue that the alleged inventions of its patents are

1   responsible for the commercial success of its products, it would need to present evidence of a

2   nexus between the commercial success and those patents.  The evidentiary showing there would

3   overlap with, and dwarf, any evidence that Oracle would contemplate putting on regarding how

4   its products allegedly practiced the patents.

5       Nor is Google "trying to have it both ways" as Oracle claims.  It has worked with Oracle

6   to identify technical issues despite its evidentiary objections to what Oracle can prove (and the

7   stipulations here do not waive any objections to evidence that Oracle seeks to introduce at trial).

8   It has stipulated unconditionally as to the patent and products where the parties have no remaining

9   technical issues, which fact is established for all purposes at trial.  And Oracle gains the ability to

10  say that its products practice any infringed patents during Phase 3 of the trial without putting on

11  any additional evidence, which allows trial to be streamlined in a fair manner.  But without

12  actually agreeing with Oracle as to the technical merits of its infringement read, Google cannot

13  agree to Oracle seeking to imply to the jury that, in effect, if Oracle practices its patents, Google

14  must be an infringer.  Indeed, it is Oracle that is trying to have its cake and eat it too.  Google

15  believes that Oracle must stipulate that the products enumerated below were not marked with the

16  patent numbers pursuant to 35 U.S.C. § 287—a position with which Oracle does not disagree

17  factually.  But Oracle has refused to include those facts as part of the stipulation.  Google believes

18  that it would be appropriate for the parties to remove those factual issues from the need for

19  presentation at trial as well, and thinks this stipulation would be an appropriate place to do so.

20          **A.      '702 patent**

21              **1.      Java OS 1.1 products**

22      The parties stipulate that Java OS 1.1 (and variants, including Java PC) practice the

23  asserted claims of the '702 patent.

24              **2.      Java Card platform 2.1 products**

25      There is a dispute between the parties as to the proper application of the claims of the '702

26  patent.  Oracle argues that the .CAP file created by the use of Java Card includes "reduced class

27  files" as the phrase was construed by the Court, because the removal of additional elements is not

28  excluded by the claim, which is written in an open manner.  Google argues that Java Card does

1   not practice the '702 patent for some of the same reasons that Google argues that the accused

2   Android functionality does not practice the '702 patent, namely that the .CAP file created by the

3   use of Java Card is not comprised of "reduced class files" that contain what remains after

4   duplicate constants have been removed from the class files.  Google contends that the .CAP file

5   does not contain reduced class files that contain reduced constant pools.  The parties therefore

6   stipulate as follows:

7       If the accused Android functionality infringes the '702 patent, then Oracle's Java Card

8   platform 2.1 product and subsequent versions practice the '702 patent.

9                   **B.      '104 patent**

10      There is a dispute between the parties as to the proper application of the claims of the '104

11   patent.  Oracle contends that Oracle's Java products do practice the '104 patent because data

12   references in the intermediate form object code instructions of Java class files are "symbolic

13   references" as the phrase was construed by the Court because they are platform-independent and

14   "identify data by a name other than the numeric memory location of the data," which would be

15   different on different computers.  Oracle contends that Google's argument is inconsistent with

16   both the Court's claim construction and the manner in which Google's invalidity expert has

17   applied the claims to the prior art.  Google argues that Oracle's Java products do not practice the

18   '104 patent for some of the same reasons that Google argues that the accused Android

19   functionality does not practice the '104 patent, namely that the intermediate form object code

20   instructions used in Oracle's Java products do not "contain[] one or more symbolic references."

21   Google contends that the Java bytecode instructions in Oracle's Java products contain numeric

22   references (i.e., indices), and not symbolic references.  Google further observes that it is common

23   for validity experts to take a broader view of the patent claims (which may be consistent with

24   what the patentee is asserting in terms of infringement) than non-infringement experts.  The

25   parties therefore stipulate as follows:

26      If the accused Android functionality infringes the '104 patent, then the following Oracle

27   products practice the '104 patent: JDK 1.0 and subsequent versions; JRE 1.1.1 and subsequent

28   versions; HotSpot 1.0 and subsequent versions; Java SE for Embedded 1.4.2_11 and subsequent

versions; J2EE 1.2 (later called Java EE) and subsequent versions; Java Real Time 1.0 and subsequent versions; CDC RI 1.0 and CDC HI 1.0 and subsequent versions of each; CDC AMS 1.0, 1.0_1, and 1.0_2 (Personal Basis Profile and Personal Profile versions); Personal Profile RI 1.0 and subsequent versions; Personal Profile HI 1.1.1; Personal Basis Profile RI 1.0 and subsequent versions; Personal Basis Profile HI 1.1.1; Foundation Profile 1.0 and subsequent versions; CDC ToolKit 1.0 or Java ME SDK 3.0 EA and subsequent versions; CLDC RI 1.0 and 1.1; WTK 1.0 or Java ME SDK 3.0 EA and subsequent versions; CLDC HI 1.0 and subsequent versions; Oracle Java Wireless Client (formerly Sun Java Wireless Client) 1.0 and subsequent versions; PersonalJava 1.0 and subsequent versions; EmbeddedJava 1.0 and subsequent versions; JavaOS 1.0 (and variants, including Java PC) and subsequent versions; and Java Card connected platform 3.0 and subsequent versions.

### C.    '205 patent

There is a dispute between the parties as to the proper application of the claims of the '205 patent.  Oracle argues that its Java products and Android do practice the '205 patent, and that Google's argument is based on a claim construction position that Google waived and that is inconsistent with both the plain meaning of the phrase and the manner in which Google's invalidity expert has applied the claims to the prior art.  Google argues that Oracle's Java products do not practice the '205 patent for some of the same reasons that Google argues that the accused Android functionality does not practice the '205 patent, namely that Oracle's Java products do not "generat[e], at runtime, a new virtual machine instruction."  Google contends that Oracle's Java products use instructions that are pre-existing virtual machine instructions (i.e., bytecode) with defined meanings such that these instructions are neither "new" nor "generated."  Google further observes that it is common for validity experts to take a broader view of the patent claims (which may be consistent with what the patentee is asserting in terms of infringement) than non-infringement experts.  The parties therefore stipulate as follows:

If the accused Android functionality infringes the '205 patent, then the following Oracle products practice the '205 patent: JDK 1.2 and subsequent versions; JRE 1.2 and subsequent versions; HotSpot 1.0 and subsequent versions; Java SE for Embedded 1.4.2 and subsequent

Supp. Joint Statement Regarding Oracle Products Practicing Patents
Case No. CV 10-03561 WHA
pa-1513291

5

versions; J2EE 1.2 (later called Java EE) and subsequent versions; Java Real Time System 1.0 and subsequent versions; CDC HI 1.1.1 and subsequent versions; Personal Profile HI 1.1.1; Personal Basis Profile HI 1.1.1; CDC AMS 1.0, 1.0_1, and 1.0_2 (Personal Basis Profile and Personal Profile versions); CLDC HI 1.1 and subsequent versions; and CLDC RI 1.1.1.

### D.     '720 patent

As reflected in the related claim-construction briefing, there is a dispute between the parties as to the proper interpretation of the claims of the '720 patent.  Oracle argues that "obtain[ing] a representation of at least one class from a source definition provided as object oriented program code" covers loading from class files and other object code.  Google argues that "obtain[ing] a representation of at least one class from a source definition provided as object oriented program code" requires "compiling object oriented source code."  In light of the pending claim construction issue, the parties stipulate as follows:

If the Court adopts Oracle's proposed construction, then Oracle's CDC AMS product practices the '720 patent.   On the other hand, if the Court adopts Google's proposed construction, then Oracle's CDC AMS product does not practice the '720 patent.

### E.     '520 patent

#### 1.     Oracle's CLDC HI 1.1.3 and CLDC RI 1.1.1 products

There is a dispute between the parties as to the proper application of the claims of the '520 patent.  Oracle maintains that its CLDC HI 1.1.3 and CLDC RI 1.1.1 products and Android practice the asserted claims, because both interpret class initialization code to identify the static initialization of the array. Google argues that the Oracle products do not practice the '520 patent for some of the same reasons that Google argues that the accused Android functionality does not practice the '520 patent, namely that the Oracle code at issue uses parsing or pattern matching, rather than simulation of execution, to identify the initialization of a static array.  The parties therefore stipulate as follows:

If the accused Android functionality infringes the '520 patent, then Oracle's CLDC HI 1.1.3 and CLDC RI 1.1.1 products and subsequent versions practice the '520 patent.

1   II.      **DISPUTED PRODUCTS**

2          A.      **'520 patent**

3                  1.      **Oracle's Java Card products**

4          The parties dispute whether Oracle's Java Card products create "an instruction" within the

5   meaning of the claims of the '520 patent.  This is a technical dispute separate and distinct from

6   the allegations involving the accused Android functionality.

7          Oracle contends that when the Java Card converter stores a value indicating the presence

8   of static array initialization data, the array type, the array size, and the initialization values in the

9   Static Field Component of the output .CAP file (Java Card™ 2.1.1 Virtual Machine Specification

10  100-101 (rev. 1.0, 2000), it creates "an instruction" as claimed in the '520 patent.

11         Google contends that, when creating a .CAP file, the Java Card converter does not create

12  "an instruction" within the meaning of the claims of the '520 patent.  Rather, the converter itself

13  statically initializes the array and stores the initialized data value into the .CAP file.  (*See* Z.

14  Chen, Java Card Technology for Smart Cards, section 3.3.2 (Prentice Hall 2000).)

Dated: February 21, 2012                     MORRISON & FOERSTER LLP


                                             By:  /s/ Marc David Peters

                                             MORRISON & FOERSTER LLP
                                             MICHAEL A. JACOBS (Bar No. 111664)
                                             mjacobs@mofo.com
                                             MARC DAVID PETERS (Bar No. 211725)
                                             mdpeters@mofo.com
                                             DANIEL P. MUINO (Bar No. 209624)
                                             dmuino@mofo.com
                                             755 Page Mill Road
                                             Palo Alto, CA  94304-1018
                                             Telephone: (650) 813-5600
                                             Facsimile: (650) 494-0792

                                             BOIES, SCHILLER & FLEXNER LLP
                                             DAVID BOIES (Admitted *Pro Hac Vice*)
                                             dboies@bsfllp.com
                                             333 Main Street
                                             Armonk, NY  10504
                                             Telephone: (914) 749-8200
                                             Facsimile: (914) 749-8300
                                             STEVEN C. HOLTZMAN (Bar No. 144177)
                                             sholtzman@bsfllp.com
                                             1999 Harrison St., Suite 900
                                             Oakland, CA  94612
                                             Telephone: (510) 874-1000
                                             Facsimile: (510) 874-1460

                                             ORACLE CORPORATION
                                             DORIAN DALEY (Bar No. 129049)
                                             dorian.daley@oracle.com
                                             DEBORAH K. MILLER (Bar No. 95527)
                                             deborah.miller@oracle.com
                                             MATTHEW M. SARBORARIA (Bar No. 211600)
                                             matthew.sarboraria@oracle.com
                                             500 Oracle Parkway
                                             Redwood City, CA  94065
                                             Telephone: (650) 506-5200
                                             Facsimile: (650) 506-7114

                                             *Attorneys for Plaintiff*
                                             ORACLE AMERICA, INC.

1    Dated: February 21, 2012                    KEKER & VAN NEST LLP

2
                                                 By:  /s/ Eugene M. Paige
3
                                                 SCOTT T. WEINGAERTNER (*Pro Hac Vice*)
4                                                sweingaertner@kslaw.com
                                                 ROBERT F. PERRY
5                                                rperry@kslaw.com
                                                 BRUCE W. BABER (*Pro Hac Vice*)
6                                                bbaber@kslaw.com
                                                 1185 Avenue of the Americas
7                                                New York, NY 10036-4003
                                                 Telephone:  (212) 556-2100
8                                                Facsimile:   (212) 556-2222

9                                                DONALD F. ZIMMER, JR. (SBN 112279)
                                                 fzimmer@kslaw.com
10                                               CHERYL A. SABNIS (SBN 224323)
                                                 csabnis@kslaw.com
11                                               KING & SPALDING LLP
                                                 101 Second Street - Suite 2300
12                                               San Francisco, CA 94105
                                                 Telephone: (415) 318-1200
13                                               Facsimile:  (415) 318-1300

14                                               GREENBERG TRAURIG, LLP
                                                 IAN C. BALLON (SBN 141819)
15                                               ballon@gtlaw.com
                                                 HEATHER MEEKER (SBN 172148)
16                                               meekerh@gtlaw.com
                                                 1900 University Avenue
17                                               East Palo Alto, CA 94303
                                                 Telephone: (650) 328-8500
18                                               Facsimile: (650) 328-8508

19                                               KEKER & VAN NEST LLP
                                                 ROBERT A. VAN NEST (SBN 84065)
20                                               rvannest@kvn.com
                                                 CHRISTA M. ANDERSON (SBN184325)
21                                               canderson@kvn.com
                                                 DANIEL PURCELL (SBN 191424)
22                                               dpurcell@kvn.com
                                                 633 Battery Street
23                                               San Francisco, CA 94111
                                                 Telephone: (415) 391-5400
24                                               Facsimile: (415) 397-7188

25                                               *Attorneys for Defendant*
                                                 GOOGLE INC.
26

27

28

**ATTESTATION**

I, Marc David Peters, am the ECF User whose ID and password are being used to file this **JOINT STATEMENT REGARDING ORACLE PRODUCTS PRACTICING PATENTS**. In compliance with General Order 45, X.B., I hereby attest that Eugene M. Paige has concurred in this filing.

Date: February 21, 2012                  /s/ Marc David Peters

Supp. Joint Statement Regarding Oracle Products Practicing Patents
Case No. CV 10-03561 WHA
pa-1513291

10