MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD
arutherford@bsfllp.com
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br>v.<br><br>GOOGLE, INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA, INC.'S MOTION TO STRIKE PORTIONS OF GREGORY LEONARD'S SUPPLEMENTAL REPORT**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO STRIKE ......................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

I.    INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ......................................................................................................................... 2

    A.   Dr. Leonard's Forward Citations Analysis Is Profoundly Flawed And
        His Results From That Analysis Are Unreliable And Irrelevant ................................ 2

    B.   Dr. Leonard Includes Misleading And Irrelevant Calculations Based On
        An Accounting Document Prepared For Oracle In 2010 ............................................ 5

    C.   Dr. Leonard's Claim That Google's Expected Gains Are Determinative
        With Respect To The Amount Of Any Reasonable Royalty Awardable
        To Oracle Is Wrong And Improper ............................................................................. 8

III.  CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

### CASES

*Georgia-Pacific v. U.S. Plywood Corp.*,
  318 F.Supp. 1116 (S.D.N.Y. 1970) ......................................................................................... 8, 9

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
  355 F.3d 1327 (Fed. Cir. 2004) ................................................................................................. 9

*Lucent Techs, Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ................................................................................................. 6

*Monsanto Co. v. Ralph*,
  382 F.3d 1374 (Fed. Cir. 2004) ................................................................................................. 9

*Panduit Corp v. Stahlin Bros. Fibre Works, Inc.*,
  575 F.2d 1152 (6th Cir. 1978) ................................................................................................... 9

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) ................................................................................................... 9

*Ticketmaster Corp. v. Tickets.com, Inc.*,
  No. CV 99-07654 HLH (VBKx), 2003 WL 25781901 (C.D. Cal. Feb. 10, 2003) ..................... 10

# NOTICE OF MOTION AND MOTION TO STRIKE

PLEASE TAKE NOTICE that Plaintiff Oracle America, Inc. ("Oracle") hereby moves to exclude portions of the opinions and testimony of Google, Inc.'s ("Google's") patent damages expert Dr. Gregory K. Leonard. This motion is based on the following memorandum of points and authorities, the declarations of Beko Reblitz-Richardson and Prof. Iain Cockburn and accompanying exhibits, the entire record in this matter, and on such evidence as may be presented at any hearing on this Motion, on a date to be determined by the Court, as well as any other ground the Court deems just and proper.

DATED: February 24, 2012                    BOIES, SCHILLER & FLEXNER LLP

/s/ *Steven C. Holtzman*
Steven C. Holtzman
Attorneys for Plaintiff
ORACLE AMERICA, INC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Oracle requests that the Court strike three portions of the February 17, 2012 supplemental report of Google's patent damages expert, Dr. Gregory Leonard.  (*See* Declaration of Beko Reblitz-Richardson ("Richardson Decl.") Exh. A ("Supplemental Leonard Report").)  As explained below, these portions contain calculations and assertions that are unreliable, irrelevant, and would serve no purpose other than to mislead and confuse the jury regarding the calculation of damages in this case.

*First*, Oracle requests that the Court strike Dr. Leonard's "forward citation" patents analysis.  (Leonard Report at 7.)  To calculate the relative value of certain patents owned by Sun, Dr. Leonard counts the number of times those patents were cited by later-issued patents.  Even assuming that forward citation analysis is a reliable valuation tool, there are two fundamental flaws in Dr. Leonard's approach, each of which makes his results unreliable:  (1) Dr. Leonard fails to account for the fact that certain patents (such as the '104) were re-issued, and fails to include counts for the predecessor patents; and (2) Dr. Leonard fails to control for the fact that certain patents (such as the '720) issued years after the other patents, and therefore naturally would not be cited as frequently as the older patents.  A correction for the first error alone results in the '104 patent being ranked 1st based on the total number of citations, not 11th, as Dr. Leonard erroneously claims in his report.

*Second*, Oracle requests that the Court strike Dr. Leonard's testimony and calculations based on a 2010 accounting document prepared for Oracle in connection with its acquisition of Sun.  (Supplemental Leonard Report at 9.)  The document on which Dr. Leonard relies reflects an effort to allocate, purely for bookkeeping purposes, the specific amount that Oracle paid to acquire Sun, not measure the actual worth of any of the Sun assets, different elements of which possessed varying characteristics and investment value.  The document – and thus Dr. Leonard's calculations – bears no relationship to the value of any particular intellectual property to Sun or to Google, let alone the relative value of the patents-in-suit and the full 2006 Bundle.  Dr. Leonard's calculations are both misleading and irrelevant, and permitting him to present those calculations to the jury would be contrary to the Court's prior rulings in this case, including the Court's refusal to permit testimony regarding the amount of the settlement in the earlier *Sun v. Microsoft* litigation.

1

1   ***Third***, Oracle requests that the Court strike Dr. Leonard's suggestion that the reasonable royalty should be limited to "the value that Google was expecting to receive" from the infringement. (Supplemental Leonard Report at 2.)  It is well-established that a patentee's expected revenues and losses should be considered in calculating a reasonable royalty, and that the infringer's expected revenue from the infringement does not cap the amount of a reasonable royalty or lost license fee. Permitting Dr. Leonard to offer contrary testimony would confuse the jury and intrude on the Court's role in instructing the jury as to the relevant considerations for calculating a reasonable royalty.

Striking these misleading, inaccurate, and irrelevant portions of Dr. Leonard's supplemental report is especially important given the Court's ruling that "no deposition shall be taken of Google's experts, Oracle may not serve a further reply report, and Oracle will not be allowed to present Dr. Cockburn as a rebuttal witness on the new materials." (Dkt. 702 at 2.)  Opportunities to depose an expert prior to cross-examination at trial and have another expert rebut those opinions at trial are important checks on the reliability and relevance of expert testimony.  Here, the absence of those checks creates a greater risk of the jury being misled by Dr. Leonard, with prejudice to Oracle.

## II.     ARGUMENT

### A.     Dr. Leonard's Forward Citations Analysis Is Profoundly Flawed And His Results From That Analysis Are Unreliable And Irrelevant

In response to Prof. Cockburn's group and value apportionment analysis, Dr. Leonard offers a "forward citations" analysis with respect to certain patents included in the 2006 Bundle.  (*See* Supplemental Leonard Report at p. 7.)  The citations analysis consists of counting the number of times each patent is cited by later patents and using the counts as a proxy for the value of each patent. Dr. Leonard did not previously refer to forward citations or citation counts in his previous reports or testimony in this case.  Dr. Leonard's supplemental report contains one paragraph that concerns that new analysis, which states in full:



2



(*Id.* (footnote omitted).)

Prof. Cockburn has worked extensively with patent counts and citations since he wrote his Ph.D. thesis in the 1980s, and has since conducted substantial research on citations analysis. (*See* Richardson Decl. Exh. B (Cockburn Depo. Tr. at 112:10-113:13); Declaration of Iain M. Cockburn in Support of Oracle America, Inc.'s Motion to Strike Portions of Gregory Leonard's Supplemental Report ("Cockburn Leonard Decl.") at ¶ 3).) As he testified in detail at his deposition, analysis of forward citations is not a useful way to measure the relative value of the specific patents-in suit in this case. In particular, Prof. Cockburn testified that

> If you count those up in circumstances where it's meaningful to do so and make adjustments where necessary, you will find often that that measure will correlate with other things. . . .
>
> I considered it [citation analysis]. Considered it quite carefully and did not do it for a couple of reasons. One is a purely practical one, which is most of the patents in this portfolio are relatively young and that means that not enough patents have been issued subsequently to be able to have the possibility of citing these patents, especially once you take into account lags between application and issuance and so forth.
>
> So a recent cohort of patents is going to be one which is very difficult to assess using citation analysis just because, if you like, the signal-to-noise ratio buried in the number of citations that a patent attracts is not favorable. So that's a practical problem.
>
> More generally there's the question of, are these citation types of measures particularly useful at discriminating at the level of individual patents? Where they have been shown to be useful, generally speaking, is in the context of statistical studies with very large sample sizes where much of the noise, if you like, can come out in the wash or you have sufficient numbers of observations and statistical power to use the kinds of methodologies which will apply appropriate adjustments so that you can meaningfully compare one patent to another.

> Those are the circumstances under which I think citation analysis stands a chance of working reliably. They don't apply here.

(Richardson Decl. Exh. B (Cockburn Depo. Tr. at 112:21-114:13).) Dr. Leonard's report does not state that he has ever conducted a citation count analysis before, nor does it contain any discussion of the methodological challenges specifically identified by Prof. Cockburn. But even if a forward citations analysis were appropriate in this case – and it is not for the reasons identified by Prof. Cockburn and academic studies[1] – Dr. Leonard's attempt at such an analysis in this case is fundamentally flawed and misleading.

Dr. Leonard does not disclose any exhibit or calculations that actually show his forward citation counts or the methods he uses to reach those numbers. However, the backup data that Google produced following submission of the report reveals that Dr. Leonard's forward citations analysis suffers from at least two fundamental flaws, both of which render Dr. Leonard's analysis and calculations unreliable, misleading, and inadmissible under the *Daubert* standard. The backup spreadsheet with his citation counts is attached as Exhibit C to the Richardson Declaration.

*First*, Dr. Leonard failed to account for the fact that certain patents were re-issued. For example, the predecessor to the '104 is USRE36204E1 (applied for in November 1996 and issued in April 1999), which has 1 citation. The predecessor to USRE36204E1 is US5367685 (applied for in December 1992 and issued in November 1994), which has 73 citations. (Cockburn Leonard Decl. ¶ 5.) Dr. Leonard failed to attribute the '204's one citation to the '104 and failed to count *any* of the 73 citations to the '685 at all. Instead, Dr. Leonard counts only *three* citations for the '104 patent. (*See* Richardson Decl. Exh. C.) In fact, the '104 patent and its predecessors have been cited **77 times** in all. (Cockburn Decl. ¶ 6.) Correcting Dr. Leonard's elementary but substantial counting errors for re-issued patents changes the rank of the '104 patent from 11th under Dr. Leonard's approach to 1st,

---

[1] *See, e.g.,* Bhaven Sampat & Arvids Ziedonis, "Patent Citations and the Economic Value of Patents," Handbook of Quantitative Science and Technology Research 2005, Part 2, p. 295 ("Our primary finding is that whilst patent citations are good predictors of whether a university patent is licensed, they are not good predictors of the license revenues earned by technologies conditional upon its licensing.").

1   with more than double the number of citations than the next patent.  (*Id.*)  The significant change in

2   ranking among the patents highlights the significance of Dr. Leonard's error.

3   ***Second***, in counting forward citations for the top 22 patents in Dr. Cockburn's analysis, all of

4   which were issued (or re-issued) between April 27, 1999 and February 1, 2011 (*see* Richardson Exh.

5   C), Dr. Leonard treats all citations as equal, disregarding the fact that some patents (such as the '720)

6   were issued many years after other patents in the group.

7   Citations of course take place over time, so newer patents will tend to have been cited fewer

8   times than older patents, irrespective of value.  (*See* Cockburn Decl. ¶ 7.)   In other words, absolute

9   citation counts are partly (and largely) a function of age, not just a function of value.  Dr. Leonard

10  makes no effort to control for the obvious effect of time. (*See id.*)   As a result, his analysis

11  systematically understates the value of newer patents.  This is particularly relevant to the assessment

12  of the citations for the patents-in-suit, given that the '720 was issued on September 16, 2008, making

13  it the second most recent patent in the list of 22, and that the '205 patent was issued on June 16, 2005,

14  also relatively recently.  (*Id.* ¶¶ 9-11.)

15  The problem with ignoring the issue dates of the patents is obvious in Dr. Leonard's results:

16  all of the top six patents in Dr. Leonard's ranking were issued in 2004 or earlier (each receiving over

17  10 citations), while the three bottom spots in the ranking are occupied by patents issued in 2008 or

18  later (each receiving zero citations).  Dr. Leonard includes a second ranking, but that second ranking

19  also fails to deal with this issue.  (*See id.* ¶ 8.)

20  Dr. Leonard's failure to account in any way for the more than ten-year span covering the

21  issuance of these 22 patents is a serious methodological flaw that has a substantial impact on the

22  outcome of the ranking.  (*Id.* ¶¶ 7-12.)  Permitting Dr. Leonard to testify about this flawed citation

23  analysis, particularly without rebuttal testimony by Prof. Cockburn, would mislead and confuse the

24  jury regarding the relative importance of the patents-in-suit.

25  **B.   Dr. Leonard Includes Misleading And Irrelevant Calculations Based On An Accounting Document Prepared For Oracle In 2010**

26  In his new report, Dr. Leonard improperly relies on a single document, ████████████

27  ████████████████████████████████████████████████████████████████████████████████

28

5

ORACLE'S MOTION TO STRIKE PORTIONS OF LEONARD'S SUPPLEMENTAL REPORT
CASE NO. CV 10-03561 WHA

1 ▮
2 ▮
3 ▮
4 ▮
5 ▮ It is not a comparable license or a valuation of comparable intellectual property, and cannot be used as an indicator of the value of the patents and copyrights that Google infringed.  *See Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325-32 (Fed. Cir. 2009).

Dr. Leonard contends that calculations based on the 2010 accounting document show that Prof. Cockburn's damages calculations are "unreliable."  (Supplemental Leonard Report at p. 9.)  The full text of the relevant paragraph is:



(*Id.* (emphasis in original, footnotes omitted).)

Dr. Leonard's purported justification for invoking the $505 million to cap Oracle's damages is mere pretext.  Dr. Leonard states that he is "[u]sing Dr. Cockburn's own methodology" for these calculations.  (*Id.*)  But Prof. Cockburn's methodology does not rely on any accounting valuation of Oracle's 2010 acquisition of Sun at all.

Dr. Leonard's calculations are ▮



23  Dr. Leonard not only misconstrues the one document he relies upon; he shuts his eyes to the
24  substantial evidence that points in the opposite direction.  Sun generated hundreds of millions of

---

[2] The full document is 389 pages long, but Dr. Leonard cited only these three pages in footnote 9 of his report.  Oracle has submitted only those three pages with this motion, to try to limit the number of pages submitted to the Court in connection with these *Daubert* motions, but will of course supply a full copy of the document if the Court requests.

7

ORACLE'S MOTION TO STRIKE PORTIONS OF LEONARD'S SUPPLEMENTAL REPORT
CASE NO. CV 10-03561 WHA

1  dollars in revenue each year by licensing its Java technology to third parties.  When Oracle
2  announced that it would acquire Sun for $7.4 billion, Oracle CEO Larry Ellison stated publicly that
3  "Java is the single most important software asset we have ever acquired."  (Richardson Decl. Exh. F.)
4
5
6
7
8
9  Dr. Leonard ignores all of that evidence.
10  Dr. Leonard has plucked an irrelevant number from an irrelevant document that was prepared
11  for an irrelevant purpose almost five years after the hypothetical negotiation.  Without reference to
12  any of the specifics of the hypothetical negotiation or any *Georgia Pacific* factor, he opines that a
13  small fraction of that irrelevant number is the maximum reasonable royalty in this case.  That
14  "analysis" has no basis in either law or fact, is not a relevant comparable or benchmark, and is
15  nothing more than an attempt to prejudice the jury by picking out a low number.  Permitting Dr.
16  Leonard to testify to the jury about these calculations would mislead the jury.  Consistent with this
17  Court's previous order regarding the dollar figure of the *Sun v. Microsoft* settlement, it should be
18  stricken.

19  **C.   Dr. Leonard's Claim That Google's Expected Gains Are Determinative With Respect To The Amount Of Any Reasonable Royalty Awardable To Oracle Is Wrong And Improper**
20
21  Dr. Leonard opines in his supplemental report:



26  (Supplemental Leonard Report at p. 2 (emphasis added).)

1   The statement that "It is the value that Google was expecting to receive that matters for the

2   reasonable royalty analysis" is an incorrect statement of the law of patent damages. For example, in

3   *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995), the court ruled:

> The district court here conducted the hypothetical negotiation analysis. It determined that Rite-Hite would have been willing to grant a competitor a license to use the '847 invention *only* if it received a royalty of no less than one-half of the per unit profits that it was foregoing. In so determining, the court considered that the '847 patent was a "pioneer" patent with manifest commercial success; that Rite-Hite had consistently followed a policy of exploiting its own patents, rather than licensing to competitors; and that Rite-Hite would have had to forego a large profit by granting a license to Kelley because Kelley was a strong competitor and Rite-Hite anticipated being able to sell a large number of restraints and related products. *It was thus not unreasonable for the district court to find that an unwilling patentee would only license for one-half its expected lost profits and that such an amount was a reasonable royalty. The fact that the award was not based on the infringer's profits did not make it an unreasonable award.*

11  *Id.* at 1554-55 (emphasis added and citations omitted); *see also Golight, Inc. v. Wal-Mart Stores, Inc.*,

12  355 F.3d 1327, 1338 (Fed. Cir. 2004) ("There is no rule that a royalty be no higher than the

13  infringer's net profit margin.") (citations omitted); *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed.

14  Cir. 2004) ("[A]lthough an infringer's anticipated profit from use of the patented invention is among

15  the factors to be considered in determining a reasonable royalty, the law does not require that an

16  infringer be permitted to make a profit.") (citing *Georgia-Pacific v. U.S. Plywood Corp.*, 318 F.Supp.

17  1116, 1120 (S.D.N.Y. 1970)) (internal punctuation omitted).

18  Here, the Court already ruled that "lost convoyed sales also remain relevant to a reasonable

19  royalty even where the patent owner's proof is insufficient to show lost profit." (Dkt. 685 at 6.)

20  Other courts have confirmed that expected sales by the licensor should be considered. *See also*

21  *Georgia Pacific*, 318 F. Supp. at 1121 (factors include "the anticipated amount of profits that the

22  prospective licensor reasonably thinks he would lose as a result of licensing the patent as compared to

23  the anticipated royalty income"); *Panduit Corp v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152,

24  1163 (6th Cir. 1978) ("expectant loss is an element to be considered in retroactively determining a

25  reasonable royalty"). Permitting Dr. Leonard to testify to the contrary would not only confuse the

26  jury but also potentially create a conflict with the Court's jury instructions. Such testimony is

27  impermissible. *See, e.g.*, *Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV 99-07654 HLH (VBKx),

28

1  2003 WL 25781901, at *1 (C.D. Cal. Feb. 10, 2003) ("the sole source of the law for the jury is the
2  judge, not the expert witness").

3  The Court should strike the paragraph quoted above from Dr. Leonard's supplemental report
4  and preclude any testimony or argument that only "the value that Google was expecting to receive"
5  matters for the reasonable royalty analysis.

### III. CONCLUSION

For these reasons, Oracle respectfully requests that the Court preclude Dr. Leonard from providing any testimony regarding forward citation analysis, the 2010 accounting document, or any purported limitation of a reasonable royalty or actual damages to "the value that Google was expecting to receive." The corresponding portions of Dr. Leonard's supplemental report should be stricken.

Dated: February 24, 2012                    BOIES, SCHILLER & FLEXNER LLP

By: */s/ Steven C. Holtzman*
    Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.