KEKER & VAN NEST LLP
ROBERT A. VAN NEST, #84065
rvannest@kvn.com
CHRISTA M. ANDERSON, #184325
canderson@kvn.com
MICHAEL S. KWUN, #198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Tel:   415 391 5400
Fax:  415 397 7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER
(*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY  10036
Tel: 212.556.2100
Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA  94105
Tel: 415.318.1200
Fax: 415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel: 650.328.8500
Fax:650.328-8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 3:10-CV-03561-WHA <br><br> **GOOGLE'S OPPOSITION TO ORACLE'S MOTION TO EXCLUDE PORTIONS OF THE SUPPLEMENTAL EXPERT REPORT OF DR. ALAN J. COX** <br><br> Dept.:   Courtroom 8, 19th Floor <br> Judge:   Hon. William Alsup |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

    A. Dr. Cox's alterative calculations of lost profits and infringer's profits are directly responsive to changes Dr. Cockburn made in his third expert report. ........................................................................................ 1

    B. Dr. Cox's alternative calculation of lost profits is admissible. ........................... 2

    C. Dr. Cox's alternative calculations of wrongful infringer's profits are admissible. ........................................................................................................ 4

        1. The evidence in support of apportionment of an infringer's profits can be a reasonable approximation ........................... 4

        2. Dr. Cox's alternative analyses of wrongful infringer's profits rely on evidence that "may rationally be used as a springboard" for apportionment .................................................. 6

III. CONCLUSION ................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Amini Innovation Corp. v. Anthony Cal., Inc.*
   439 F.3d 1365 (Fed. Cir. 2006)..................................................................................................4

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*
   754 F.2d 826 (9th Cir. 1985) ................................................................................................4-8

*Fiskars, Inc. v. Hunt Mfg. Co.*
   279 F.3d 1378 (Fed. Cir. 2002).................................................................................................4

### FEDERAL STATUTES

17 U.S.C. § 504(b) ..........................................................................................................2, 6, 7

## I. INTRODUCTION

In response to Dr. Cockburn's third expert report, Dr. Cox offered several supplemental opinions that directly responded to new material in Dr. Cockburn's latest report. Oracle seeks to exclude some of Dr. Cox's supplemental opinions, because they relate to lost profits and infringer's profits, while Dr. Cockburn's revisions concerned damages for an alleged lost license fee. But the Court granted Google's experts leave to supplement their prior reports in response to *new material* in Dr. Cockburn's latest report—it did not limit the manner in which Google's experts could respond to that new material. Dr. Cox's entire supplemental report is squarely within the scope allowed by the Court.

Oracle also argues that Dr. Cox's supplemental opinions are without foundation and unreliable. Dr. Cox, however, has explained the bases for all of his opinions, including the evidence upon which he relies and the methodology he uses to reach his conclusions. His supplemental opinions are well-founded and admissible.

Oracle's motion should be denied.

## II. ARGUMENT

### A. Dr. Cox's alterative calculations of lost profits and infringer's profits are directly responsive to changes Dr. Cockburn made in his third expert report.

In granting Oracle leave to serve a third damages report from Dr. Cockburn, the Court also allowed Google's damages experts to revise their opinions. The Court ordered that "[o]nly revisions directly responsive to new material by Dr. Cockburn will be allowed." Order Conditionally Allowing Third Report [Dkt. 702] at 2. Oracle now argues that because Dr. Cockburn's third report does not revise his lost profits or wrongful infringer's profits numbers, Dr. Cox was not allowed to supplement his opinions on those topics, either.

Oracle is wrong. The Court did not limit Google's experts to supplemental opinions regarding the *categories of damages* for which Dr. Cockburn offered new opinions. Instead, the Court allowed revisions directly responsive to "*new material* by Dr. Cockburn." *Id.* (emphasis added). In his prior report, Dr. Cox twice made use of Dr. Shugan's analysis—which Dr. Cockburn had himself relied upon—to explain why Dr. Cockburn's calculations overstated

damages for lost profits and infringer's profits. Declaration of Meredith Dearborn in Support of Oracle America, Inc.'s Motion to Strike Portions of Alan J. Cox's Supplemental Report [Dkt. 735] ("Dearborn Decl."), Ex. A. (excerpts from revised Expert Report of Dr. Alan J. Cox ("Cox Rep.")) at 38-42, 58. Now in his new report, Dr. Cockburn offered two entirely **new** methodologies to calculate damages in this case, which he terms the "group and value" approach and the "independent significance" approach. Dr. Cox directly responded to these newly disclosed methodologies, in particular by incorporating material from Dr. Cockburn's new "group and value" approach to offer alternative methods of correcting Dr. Cockburn's calculations of damages, including damages based on lost profits and infringer's profits. Dearborn Decl. [Dkt. 735], Ex. B (Supplemental Expert Report of Dr. Alan J. Cox ("Supp. Cox. Rep.") ¶ 5. Accordingly, Dr. Cox's supplemental opinions regarding lost profits and wrongful infringer's profits are directly within the scope of revisions allowed by the Court. *See* Order Conditionally Allowing Third Report [Dkt. 702] at 2.

### B. Dr. Cox's alternative calculation of lost profits is admissible.

Oracle argues that the Copyright Act does not allow apportionment of lost profits. Mot. at 12. But the Copyright Act allows the copyright owner only to recover "actual damages suffered by him or her *as a result of the infringement.*" 17 U.S.C. § 504(b) (emphasis added). Dr. Cox's apportionment method merely seeks to limit any claimed damages to those allegedly caused by the alleged infringement, rather than allowing all damages that were allegedly caused by *all of Android*.

As an initial matter, Oracle's direct attack on apportionment is untimely. In his prior report, Dr. Cox performed precisely the same type of apportionment that Oracle now claims is improper. Dearborn Decl. [Dkt. 735], Ex. A (Cox Rep.) at 58. ("Applying this apportionment percentage results in a revised Java ME lost profits damages estimate . . ."; "if I were to . . . attribute the failure of Project Acadia all to Android . . . and apportion it to the alleged copyright infringement, the revised Project Acadia lost profits damages estimate . . ."). The Court granted Oracle leave only to challenge any "revision" made by Dr. Cox. Order Conditionally Allowing Third Report [Dkt. 702] at 3. Dr. Cox's choice to apportion lost profits is not a revision; the only

thing that Dr. Cox did was to offer *an alternative way* (in direct response to the new methodologies advanced by Dr. Cockburn in his third report) of calculating that apportionment. Dearborn Decl. [Dkt. 735], Ex. B (Supp. Cox Report) ¶ 44. To the extent that Oracle argues that *any* form of apportionment of lost profits is improper, that argument comes too late.

Further, the alternative methodology that Dr. Cox discloses in his supplemental report rests on firm foundation. Oracle argues that Dr. Cox has not explained why using the "group and value" figure overstates the value of the API copyrights. Mot. at 10-12. He has. Dr. Cox's supplemental approach makes use of the lower bound of Dr. Cockburn's apportionment figure from his new "group and value" methodology. Dearborn Decl. [Dkt. 735], Ex. B (Supp. Cox Report) ¶ 44. Dr. Cox selected the lower bound for the range because Dr. Cockburn relied on four assumptions, each of which overstates the value of the allegedly infringed APIs. *Id.* ¶¶ 15-20. "Because all of [Dr. Cockburn's] errors have the effect of overstating the value of the API copyrights, to the extent that his range is meaningful at all, I conclude that only the low end of that range is meaningful." *Id.* ¶ 21.

Oracle also accuses Dr. Cox of relying on the same reasoning that the Court rejected in striking portions of Dr. Cockburn's second report. Mot. at 9-10. But, unlike Dr. Cockburn, Dr. Cox *explained* why the approach he used was conservative, and thus why the "group and value" apportionment figure, which according to Dr. Cockburn is the percentage of the 2006 negotiation bundle that is due to the API copyrights, can be used to apportion lost profits in a manner that, if anything, favors Oracle. The "group and value" apportionment "purports to represent the percentage of the value of the intellectual property that Sun proposed to license in the 2006 proposal that the API copyrights represent." Dearborn Decl. [Dkt. 735], Ex. B (Supp. Cox Report) ¶ 32. The rights that Sun proposed to license in 2006, however, are only some of the inputs that created Android. *See id.* This means that, if anything, using the "group and value" percentage to apportion lost profits overstates the lost profits attributable to the alleged copyright infringement. *See id.*

This is a far cry from Dr. Cockburn's conclusory assertion that a calculation was "conservative." *See* Order re Google's MIL No. 3 [Dkt. 685] at 8 ("It is no answer to say, as Dr.

Cockburn did in footnote 327, that his approach is 'conservative.'"). Dr. Cockburn's "bewildering" footnote, *id.*, did nothing more than state an unsupported conclusion. In contrast, Dr. Cox—in several paragraphs rather than a single "turbid" footnote, *id.*—has explained *why* his approach is conservative. Dearborn Decl. [Dkt. 735], Ex. B (Supp. Cox Report) ¶¶ 15-21, 32. If Oracle disagrees with that reasoning, that is a matter for cross-examination.

### C. Dr. Cox's alternative calculations of wrongful infringer's profits are admissible.

Oracle argues that the alternative calculations of wrongful infringer's profits in Dr. Cox's supplemental report are so unreliable that they should be stricken. Mot. at 8-10. Unlike patent damages in this case, which generally are governed by Federal Circuit law, *see Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1381 (Fed. Cir. 2002), copyright damages are governed by Ninth Circuit law. *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1368 (Fed. Cir. 2006). The Ninth Circuit has held that where "it is clear . . . that not all of the profits are attributable to the infringing material," there is a duty to apportion damages so long as "'. . . the evidence suggests some division which may rationally be used as a springboard'" for apportionment. *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985) (quoting *Orgel v. Clark Boardman Co.*, 301 F.2d 119, 121 (2d Cir. 1962)).

#### 1. The evidence in support of apportionment of an infringer's profits can be a reasonable approximation.

In *Cream Records,* the Ninth Circuit addressed an appeal by the plaintiff from a judgment that awarded wrongful infringer's profits of $5,000, out of approximately $5 million in profits—one-tenth of one percent. 754 F.2d at 828. The jury found infringement based on Schlitz's use of a short passage from "The Theme from Shaft," to which Cream Records owned the copyright, in a beer commercial. *Id.* at 827, 828. The parties agreed that the court would decide damages. *Id.* at 827. The district court found that the infringement was "minimal," that the passage did not substantially add to the value of the commercial, but that the commercial must have sold some beer, and the music must have played some role in those sales. *Id.* at 828. The court concluded,

> So I have to find some profit of the defendants which is allocable to the infringement, but, as I say, I think it's miniscule. I have interpolated as best I can. They made a profit of $5 million. One-tenth of 1 percent is $5,000, so I will add

that . . . .

*Id.* (quoting district court). The district court reached this conclusion even though the defendant offered *no evidence* on apportionment. *See id.*

The Ninth Circuit affirmed this portion of the judgment. Quoting the Honorable Learned Hand, the Ninth Circuit explained:

> But we are resolved to avoid the one certainly unjust course of giving the plaintiffs everything, because the defendants cannot with certainty compute their own share. In cases where plaintiffs fail to prove their damages exactly, we often make the best estimate we can, even though it is really no more than a guess (*Pieczonka v. Pullman Co.*, 2 Cir., 102 F.2d 432, 434), and under the guise of resolving all doubts against the defendants we will not deny the one fact that stands undoubted.

*Id.* at 829 (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 51 (2d Cir.1939), *aff'd*, 309 U.S. 390 (1940)). The Copyright Act does not require perfection in apportioning profits. "As to the amount of profits attributable to the infringing material, 'what is required is . . . only a reasonable approximation.'" *Id.* (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940)).

The *Cream Records* standard—under which the Ninth Circuit affirmed a 0.1% apportionment that was based on *no* apportionment evidence—not only is binding law, but good policy. Apportioning profits with precision between infringement and other factors will generally be the most difficult where, as Dr. Cox opines is the case here, the infringement played only a small role in generating profits. In such a situation, the margin of error could sometimes be larger than the actual value one is trying to calculate. Recognizing this issue, *Cream Records* requires apportionment even where the evidence in support arguably allows only an imperfect calculation of damages. Here, Dr. Cox has opined that little or none of Google's profits are attributable to the alleged infringement. And, relying on evidence that Oracle has itself sponsored, he has offered alternative ways of calculating the profits attributable to the alleged infringement. Dr. Cox's evidence and methodologies easily meet the *Cream Records* standard, under which the Ninth Circuit affirmed an apportionment of *99.9% of profits to noninfringing factors* that was based on *no apportionment evidence at all*, but only a common-sense "interpolation" by the finder of fact.

### 2. Dr. Cox's alternative analyses of wrongful infringer's profits rely on evidence that "may rationally be used as a springboard" for apportionment.

Dr. Cox's alternative analyses comport with *Cream Records*. Dr. Cox has opined that none or close to none of Google's profits are attributable to the alleged copyright infringement, and Oracle never moved to strike that analysis. Dr. Cox's supplemental report includes alternative methods of apportionment that are based on evidence that meets the *Cream Records* standard, and Dr. Cox's opinions about those methods are thus admissible.

In his first expert report, Dr. Cox opined that essentially none of Google's Android-related profits are attributable to the alleged copyright infringement:

> The evidence demonstrates that the success of the Android architecture is almost entirely, if not entirely, due to Google. At the very least this evidence, weighed against the evidence provided by Dr. Cockburn, indicates that Dr. Cockburn's measure of the contribution of the API claim is too speculative to merit an award of damages.

Declaration of Reid P. Mullen In Support of Google's Opposition to Oracle's Motion to Exclude Portions of the Supplemental Expert Report of Dr. Alan J. Cox ("Mullen Decl."), Ex. A (Cox Rep.) at 16. Dr. Cox explained that the open source nature of Android was a key driver of its success. *Id.* at 17-21. Moreover, in contrast to Apple's "app" market approach, Google gave developers a higher percentage of app revenues, and blocked fewer applications, which also drove Android's success. *Id.* at 19. Dr. Cox also opined that Google's strong brand was a significant reason for Android's success. *Id.* at 21-22. The APIs at issue, meanwhile, are only a small part of Android. *Id.* at 27-28. For these reasons, Dr. Cox concluded,

> the contribution of the material covered by Oracle's API claim provided little in value compared to the elements contributed by Google to the success of the platform. Consequently, a low or zero damage for the alleged copyright infringement is appropriate.

*Id.* at 28. As mentioned above, Oracle did not move to strike this analysis.[1]

If the jury agrees with Dr. Cox, then it will award no damages for wrongful infringer's

---

[1] Oracle did move to exclude a single factor considered by Dr. Cox—non-infringing alternatives to the APIs at issue—and the Court did strike that discussion, while denying the rest of Oracle's motion to strike. *See* Order re Motion to Exclude Portions of Leonard and Cox Expert Reports [Dkt. 632] at 7. Oracle did not, however, move to exclude the portions of the analysis discussed above, or Dr. Cox's ultimate opinion that the APIs at issue contributed little if anything to Android's success.

profits (*i.e.* "profits of the infringer that are attributable to the infringement"). 17 U.S.C. § 504(b).[2] In case the jury concludes that some of Google's profits are attributable to the alleged infringement, however, Dr. Cox has also offered alternative analyses the jury could use "as a springboard" for apportioning wrongful infringer's profits. *Cream Records,* 754 F.2d at 829.

Two of the alternatives that Dr. Cox discussed in his first expert report made use of Dr. Shugan's conjoint study, on which Dr. Cockburn had himself relied in other aspects of his own (second) report. Just as Oracle did not try to exclude Dr. Cox's analysis explaining why little or none of Google's profits are attributable to the alleged infringement, Oracle did not move to exclude these analyses in Dr. Cox's first report, which were based in part on Dr. Shugan's conjoint study.

In his supplemental report, Dr. Cox offered <u>two</u> further alternative approaches in direct response to, and making use of, Dr. Cockburn's new "group and value" approach. By making use of Dr. Cockburn's "group and value" range, Dr. Cox's alternative analyses use Dr. Shugan's study only to estimate the ***relative*** value of the copyright material at issue and the patents-in-suit. Dearborn Decl. [Dkt. 735], Ex. C (Cockburn Dep. Tr.) at 30:10-23 (explaining the limited role of the conjoint study in the "group and value" approach). As Dr. Cox explained in his supplemental report, by artificially limiting the universe of features tested to seven, Dr. Shugan's conjoint study "likely overstates the absolute value of those factors." Dearborn Decl. [Dkt. 735], Ex. B (Supp. Cox Rep.) ¶ 18. But in Dr. Cox's opinion, "[d]espite the problems with Dr. Shugan's analysis the conjoint analysis can offer some insight into the relative importance of having many applications versus applications that launch quickly. That is, Dr. Shugan's analysis may provide some support for the conclusion that having a large number of applications is less important that ensuring that applications launch quickly." Dearborn Decl. [Dkt. 735], Ex. B (Supp. Cox Rep.) ¶ 18.

<u>First</u>, Dr. Cox repeated one of the analyses from his prior report that made use of Dr. Shugan's conjoint study, but substituted the low end of Dr. Cockburn's "group and value" range

---

[2] That is not to say that in that case the jury would award no damages at all. If the jury finds copyright infringement, and awards no damages for wrongful infringer's profits, it would still need to determine actual damages. *See* 17 U.S.C. § 504(b).

for the percentages Dr. Cox previously derived from Dr. Shugan's conjoint study. Dearborn Decl. [Dkt. 735], Ex. B (Supp. Cox Report) ¶ 31. As Dr. Cox explained, the apportionment from Dr. Cockburn's "group and value" range represents a different ratio than the one from Dr. Shugan's study. *Id.* ¶ 32. However, as noted above in connection with Dr. Cox's lost profits analysis, Dr. Cox explained why using the "group and value" approach is acceptable in this context, and if anything favors Oracle. *Id.* ¶¶ 15-21, 32.

Second, Dr. Cox offered an alternative analysis that did not directly substitute the "group and value" apportionment for numbers from Dr. Shugan's study. Under this approach, Dr. Cox analyzed the 2006 proposal that Dr. Cockburn has relied upon, and concluded that the 10% revenue sharing term of that proposal is the aspect of Sun's proposal that most closely resembles a running royalty. *See id.* ¶¶ 38-40. Although apportioning profits based on this 10% figure does not *directly* measure the *exact* portion of Google's profits that are attributable to the alleged infringement, Dr. Cox explained that this approach allows him to "*estimate* the proportion of the revenue attributable to the relevant APIs." *Id.* ¶ 37 (emphasis added). This is true because even though the 2006 bundle of intellectual property rights is not the same as the actual 2011 Android platform, *id.* ¶ 36, that does not mean that there is *no* relationship between them. Given Dr. Cox's opinion that most or all of Google's profits are attributable to factors other than the alleged infringement, he is entitled to rely on this evidence, because it "may rationally be used as a springboard" for an apportionment. *Cream Records,* 754 F.2d at 829.

Dr. Cox's analyses are based on far more reliable evidence than the district court's "interpolation" in *Cream Records.* Dr. Cox's supplemental opinions are admissible.

/ /

/ /

## III. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court deny Oracle's Motion to Strike Portions of the Supplemental Expert Report of Alan J. Cox.

Dated: March 2, 2012                                              KEKER & VAN NEST LLP

                                                        /s/ Robert A. Van Nest
                                                   By: ROBERT A. VAN NEST

                                                   Attorneys for Defendant GOOGLE INC.