KEKER & VAN NEST LLP
ROBERT A. VAN NEST, #84065
rvannest@kvn.com
CHRISTA M. ANDERSON, #184325
canderson@kvn.com
DANIEL PURCELL, #191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Tel:    415.391.5400
Fax:    415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER
(Pro Hac Vice)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (Pro Hac Vice)
1185 Avenue of the Americas
New York, NY 10036
Tel:    212.556.2100
Fax:    212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel:    415.318.1200
Fax:    415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel:    650.328.8500
Fax:    650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No. 3:10-cv-03561-WHA<br><br>**GOOGLE INC.'S OPPOSITION TO ORACLE AMERICA, INC.'S MOTION TO STRIKE PORTIONS OF GREGORY LEONARD'S SUPPLEMENTAL REPORT**<br><br>Dept.:      Courtroom 8, 19th Floor<br>Judge:      Hon. William H. Alsup |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT ...................................................................................................... 2

    A.  Dr. Leonard's forward citation analysis is reliable. ........................................ 2

    B.  Dr. Leonard's use of Oracle's estimation of the fair value of
        Sun's "core technology" assets is reasonable. .................................................. 7

    C.  Dr. Leonard's economic, not legal, opinion concerning what
        would have been important in the Sun-Google negotiations is
        admissible. ................................................................................................... 11

III. CONCLUSION ................................................................................................... 12

632173

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Hammes v. Yamaha Motor Corp. U.S.A., Inc.*
   CIV. 03-6456 2006 WL 1195907 at \*6 (D. Minn. May 4, 2006) ...............................8

*ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*
   249 F. Supp. 2d 622 *amended*, 268 F. Supp. 2d 448 (E.D. Pa. 2003) ........................7

*In re TMI Litig.*
   193 F.3d 613 (3d Cir. 1999) *amended*, 199 F.3d 158 (3d Cir. 2000) .........................5

*Ruff v. Ensign-Bickford Indus., Inc.*
   168 F. Supp. 2d 1271 (D. Utah 2001).........................................................................5

*Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*
   161 F.3d 77 (1st Cir. 1998).......................................................................................5

## FEDERAL STATUTES

35 U.S.C. § 251.............................................................................................................3

## OTHER AUTHORITIES

Elizabeth Webster & Paul H. Jensen, *Do Patents Matter for Commercialization?*, 54 J. L. &
   Econ. 431 (2011)......................................................................................................4

GOOGLE'S OPPOSITION TO MOTION TO STRIKE SUPPLEMENTAL LEONARD REPORT
Case No. 3:10-cv-03561-WHA

## I.     INTRODUCTION

Once again, Oracle has filed a tit-for-tat *Daubert* motion purporting to challenge aspects of the analysis of Google's damages expert, Dr. Gregory Leonard.  In its 10-page attack on Dr. Leonard's 13-page Supplemental Report, Oracle attempts to discredit three points made by Dr. Leonard.  Each of these challenges is baseless.

*First*, Oracle's criticism of Dr. Leonard's use of forward citation analysis in rebutting Dr. Cockburn's valuation of the patents-in-suit is completely off-base.  Oracle's primary criticism is that Dr. Leonard rigged his analysis by omitting citations to the predecessors of the patents-in-suit.  This is nonsense.  The only one of the patents-in-suit Oracle identifies specifically as having predecessors is the twice-reissued '104 patent, and Oracle neglects to mention that the claims in the predecessors are entirely distinct from the claims in the '104.  Indeed, not one of the claims from the predecessors remains in the '104.  The '104 therefore covers a different range of technology, and counting the citations from those patents would distort the value of the '104.  More generally, Oracle cannot—and does not—dispute that forward citation analysis is a widely recognized method of estimating the economic value of a patent, regardless of whether Dr. Cockburn chose to use it in his own report.  Oracle also criticizes Dr. Leonard for failing to adjust citation counts for the age of each patent, but this is simply untrue.  As even Dr. Cockburn recognized, Dr. Leonard did, in fact, explicitly control for the age of each patent by comparing their forward citation counts to other patents in the same technology class *that were issued within three years before or after the patent in question* (*i.e.*, of approximately the same age). To the extent that Oracle quibbles with this method for controlling for age, that is at most a matter for cross-examination.  Moreover, any quibbles Oracle has are baseless.  The conclusion of the forward citation analysis—that the patents-in-suit are in the middle of the pack—does not change if a one- or two-year window is used instead of a three-year window, or if an alternative adjustment for patent age is made.

*Second*, as it did in its attempt to strike Dr. Leonard's earlier report, Oracle attempts to turn a *Daubert* proceeding into an evidentiary dispute.  Oracle argues that Dr. Leonard was not entitled to rely on a document ████████████████████████████████████

1

1  ████████████████████████  This argument is a disagreement about

2  what evidence Dr. Leonard should have relied on, and the Court should reject it.  Similarly,

3  because the document was prepared by Oracle as part of a submission to federal regulators and

4  investors, and valued Sun's intellectual property, including the IP at issue in this action, this

5  document is very different from the *Sun v. Microsoft* settlement.

6       *Third*, Oracle misconstrues Dr. Leonard's economic opinion about the considerations that

7  would have driven Google in a negotiation as a misstatement of patent damages law.  Dr.

8  Leonard is not a lawyer and was not purporting to state (and did not cite to) any legal rule.  Dr.

9  Leonard's opinion is only that, in a hypothetical negotiation, Google would have evaluated how

10  much to pay based on *its* own projected gains or losses, because no businessperson would ever

11  make a deal based on whether *the other* party would make out well.  Dr. Leonard made no

12  statement excluding other evidence from consideration in resolving the hypothetical negotiation,

13  and indeed evaluated all the appropriate evidence under the *Georgia-Pacific* factors in his initial

14  expert report.

15       Finally, the Court should dismiss Oracle's suggestion that the Court must apply a higher

16  level of *Daubert* scrutiny to Dr. Leonard's report because Oracle is not permitted to take a

17  second deposition of Dr. Leonard or offer further rebuttal testimony from Dr. Cockburn.  Motion

18  to Strike at 2.  That Oracle would even raise this complaint shows chutzpah.  Oracle has already

19  deposed Dr. Leonard once, and had a full opportunity to rebut Dr. Leonard's initial report.  As it

20  knows, it has only itself to blame for limitations on further depositions or rebuttal, because Dr.

21  Leonard has only offered a supplemental report as a result of Oracle's and Dr. Cockburn's

22  repeated failures to identify a viable damages methodology.  That is no reason to punish Google

23  or its experts.  Oracle will have the opportunity to cross-examine Dr. Leonard at trial, where it

24  can question Dr. Leonard concerning any of the issues in its Motion to Strike.

25  **II.**  **ARGUMENT**

26      **A.**  **Dr. Leonard's forward citation analysis is reliable.**

27       In discussing why the three patents-in-suit that Oracle's engineers ranked among the top

28  22 in the entire Sun Java mobile portfolio (the '104, '205, and '720 patents) are not the three

1    most valuable patents among those 22, Dr. Leonard considered each patent's "forward citation

2    count"—the number of prior-art citations each of those 22 patents received from future patents.

3    Based on the number of forward citations received by each of the 22 patents, Dr. Leonard

4    concluded that the three patents-in-suit "are not the three most valuable patents of the 22, as Dr.

5    Cockburn assumes in determining the top of the range for his apportionment percentage."

6    Declaration of Beko Reblitz-Richardson in Support of Oracle America, Inc's Motion to Strike

7    Portions of Gregory Leonard's Supplemental Report ("Richardson Decl.") Ex. A (Supp. Leonard

8    Rep.) at 7.  Instead, he concluded that the "patents-in-suit are worse than the middle of the set of

9    22 patents.  This, in turn, suggests that only the lower bound on Dr. Cockburn's range has any

10   support."  *Id.*  Dr. Leonard thus used these studies for the limited purpose of questioning Dr.

11   Cockburn's assumption that the three patents-in-suit are the three most important patents of the

12   entire set of 569 examined by Dr. Reinhold and his team.

13            Oracle offers three objections to Dr. Leonard's analysis, none of which has merit.

14            ***First***, Oracle offers the astonishing argument that Dr. Leonard rigged the game by failing

15   to include forward citations to predecessors of the patents-in-suit, thereby undercounting total

16   citations and undervaluing those patents.  But the only one of the patents-in-suit Oracle calls out

17   as purportedly undervalued is the twice-reissued '104 patent.  And as to the '104, as Oracle must

18   have known, there is a very good reason why Dr. Leonard did not include citations to the '104's

19   two predecessors—neither the first patent in the chain (U.S. Patent 5,367,685) nor the second

20   (U.S. Patent RE36,204E1) included ***any*** of the claims of the '104 patent that are asserted against

21   Google in this case.  *Compare* Declaration of David Zimmer in Support of Google's Opposition

22   to Oracle America, Inc.'s Motion to Strike Portions of Gregory Leonard's Supplemental Report

23   ("Zimmer Decl.") Ex. A ('104) *with* Zimmer Decl. Ex. B ('204) *and* Zimmer Decl. Ex. C ('685).

24   Not only is the '104 different in scope from the '685, but it is a disputed issue in this case as to

25   whether the '104 is sufficiently broader than the '685 such that it is invalid under 35 U.S.C. §

26   251.[1]  *See* Order Denying Leave to File Motion for Summary Judgment on '104 Patent [Dkt.

27   _____

28   [1] There are numerous distinctions between the technology covered by the ten claims in the '685
     and the 31 claims in the '104.  One important distinction between the '104 and the '685 is that

3

632173

No. 327].  In other words, Oracle is making the same mistake it has made throughout the

damages phase of the case, by thinking in terms of the ***patents*** instead of the ***specific claims*** of

those patents.  In fact, Sun itself forfeited the ten claims in the '685 patent as part of the reissue

proceedings.  Whatever Sun's reason for forfeiting those claims, Oracle cannot now argue that

the value of the '104 is based on citations to ten claims that are nowhere to be found in the '104.

Not only did Dr. Leonard analyze the '104's citations correctly, it would have been an error for

him to do as Oracle now demands, by counting citations to other, irrelevant patents that include

claims abandoned by the patent holder and that do not include the claims that Google is accused

of infringing.

   ***Second***, Oracle argues that forward citation analysis is not a "useful" way to measure the

relative value of the specific patents-in-suit, Motion to Strike at 3, but there is a large body of

literature using exactly that analysis for this precise purpose.  For example, as Dr. Leonard noted

in his report, the Harhoff study on which Dr. Cockburn relied in his apportionment analysis, and

which had the goal of "generat[ing] an assessment of the value of patent rights from publicly

available data," concluded that "the number of . . . citations a patent receives [is] positively

related to a patent's value."  Zimmer Decl. Ex. D (Harhoff Study) at 1344, 1345.  Numerous

other published articles have reached similar conclusions.  *See* Elizabeth Webster & Paul H.

Jensen, *Do Patents Matter for Commercialization?*, 54 J. L. & Econ. 431, 453 n.17 (2011) ("A

number of studies have found that both technological significance and commercial value are

correlated with U.S. Patent and Trademark Office (USPTO) forward citations.").[2]

---

both independent claims of the '685 patent require "a computer system comprising a program in
source code form" and thus relate strictly to a combined compiler-interpreter apparatus.  Zimmer
Decl. Ex. C ('685) Claims 1, 6.  By contrast, the source code requirement is not found in any of
the claims of the '104, which implicates precompiled bytecode—the basis of Oracle's
infringement theory in this case.  Zimmer Decl. Ex A ('104) Claims 11-41.

[2] *See also, e.g., id.* ("For example . . . Trajtenberg (1990), Hall, Jaffe, and Trajtenberg (2005),
Allison et al. (2004), Guellec and van Pottelsberghe (2000), and Lanjouw and Schankerman
(1997) establish a link between forward citations and commercial value."); Zimmer Decl. Ex. E
(Manuel Trajtenberg, *A Penny for Your Quotes: Patent Citations and the Value of Innovations*,
21 The RAND Journal of Economics 172 (1990)) at 172 ("The central hypothesis is that patent
citations (i.e., references to patents appearing in the patent documents themselves), long
presumed to be indicative of something like technological importance, may be informative of the
economic value of innovations as well.  Indeed, patent counts weighted by a citations-based

1   Oracle attempts to get around this widely-held understanding that forward citation counts

2   are relevant to a patent's value by pointing out that Dr. Cockburn chose not to use forward

3   citation analysis, and by citing a single article that to some extent critiqued the predictive value

4   of forward citation analysis.  However "*Daubert* neither requires nor empowers trial courts to

5   determine which of several competing scientific theories has the best provenance." *Ruiz-Troche*

6   *v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998); *see also In re TMI*

7   *Litig.*, 193 F.3d 613, 682 (3d Cir. 1999) *amended*, 199 F.3d 158 (3d Cir. 2000) ("However, this

8   apparent dispute between the two collaborators does not render Gunckel's methodology

9   unreliable. The dispute goes to the weight to be afforded Gunckel's expert opinion, not the

10  reliability of his methodology."); *Ruff v. Ensign-Bickford Indus., Inc.*, 168 F. Supp. 2d 1271,

11  1283 n. 11 (D. Utah 2001) ("The Court need not choose between competing theories to satisfy its

12  gatekeeping function.").  Oracle cannot prevent Dr. Leonard's use of forward citation analysis

13  from going to the jury just because Oracle can identify one article disagreeing with the numerous

14  studies concluding that forward citations are correlated with economic value.  And Oracle

15  certainly cannot prevent the jury from hearing the results of Dr. Leonard's forward citation

16  analysis because its own damages expert, who this Court has previously found guilty of

17  "overreach[ing] in multiple ways [to] compound[] damages ever higher into the billions," Dkt.

18  No. 230 at 15, made a decision to value the patents through subjective metrics less reliable than

19  forward citation analysis.

20  **Third**, Oracle's accusation that Dr. Leonard "makes no effort to control for the obvious

21  effect of time," Motion to Strike at 5, is just false.  In addition to ranking the 22 alleged top

22  patents based on the simple total of forward patent citations, Dr. Leonard also noted in his report

23  that "[e]ven more informative is the number of forward citations for a patent relative to the

24  average number of forward citations for a patent in the same class as the patent in question."

25  Richardson Decl. Ex. A (Leonard Supp. Rep.) at 7.  Under this analysis, Dr. Leonard explicitly

26

27

28  index are found to be highly correlated (over time) with independent measures of the social gains
    from innovations in Computed Tomography.").

accounted for the age of patents in his analysis of forward citation counts by only comparing each patent to patents in the same class that were ***issued either 3 years prior to or 3 years after the date of issuance of the patent being analyzed***.  He then calculated the percentage of patents within this comparison group that had an equal or greater number of citations.  It is disturbing that Oracle would tell the Court that Dr. Leonard did not perform such an analysis, particularly when Oracle ***attaches as Exhibit C to its Richardson Declaration*** Dr. Leonard's own chart showing this time-adjusted ranking.  Richardson Decl. Ex. C.  Even Dr. Cockburn discussed Dr. Leonard's relative rankings in his Declaration supporting Oracle's motion.  Declaration of Iain M. Cockburn in Support of Oracle America, Inc.'s Motion to Strike Portions of Gregory Leonard's Supplemental Report ("Cockburn Decl.") ¶¶ 8-10.  Despite knowing that Dr. Leonard conducted this analysis, and attaching it to its filing, Oracle falsely asserts in its brief that the analysis never happened.  Motion to Strike at 5.

Dr. Cockburn's criticisms of Dr. Leonard's relative citation count ranking in his declaration, which appear nowhere in Oracle's brief, are largely incoherent.  Dr. Cockburn's argument appears to be that ***within*** each comparison group, older patents have more citations than newer patents.  Cockburn Decl. at ¶¶ 8-10.  But this is why each patent is compared to a group of patents that stretches three years ***forward and backward*** from that patent's issuance date—in order to mitigate exactly that effect.  Declaration of Gregory Leonard in Support of Google's Opposition to Oracle's Motion to Strike Portions of Gregory Leonard's Supplemental Report ("Leonard Decl.") ¶ 4.  By comparing each patent's citation count to the counts of patents in a group of ***older and newer*** patents, Dr. Leonard was able to control for the effects of time on citation count.  *Id.*  Oracle is free to raise this issue on cross-examination, but it is not a methodological flaw implicating *Daubert*.

Oracle also states, without any evidence or supporting analysis from Dr. Cockburn, that Dr. Leonard's alleged failure to adjust the citation counts for patent age "has a substantial impact on the outcome of the ranking."  Motion to Strike at 5.  As already discussed, Dr. Leonard did adjust for patent age, as Oracle knows.  But in any event, Dr. Leonard's conclusion that the three patents-in-suit "are worse than the middle of the set of 22 patents," Richardson

1   Decl. Ex. A (Leonard Supp. Rep.) at 7, is completely resilient to different methods of accounting

2   for the patents' age.  For example, if the size of the window used in Dr. Leonard's original

3   method is reduced from three years before and after the patent issuance date to two years before

4   and after that date, the rankings of the patents-in-suit are 9th, 10th, and 16th, for an average

5   ranking of 11.7 out of 22.  Leonard Decl. ¶ 4.  If the size of the window is reduced even further

6   to one year before and after the patent issuance date, then the rankings of the patents-in-suit are

7   9th, 10th, and 17th, for an average ranking of 12 out of 22.  *Id.*  Similarly, using an alternative

8   approach of dividing each patent's forward citation count by the number of years since the patent

9   was issued, the rankings of the patents-in-suit are 10th, 13th, and 15th, for an average ranking of

10  12.7 out of 22.  *Id.* ¶ 5, Ex. A.  The fact is that whether ranked based on unadjusted citation

11  counts, any of Dr. Leonard's comparison groups, or by citation counts divided by age, the

12  patents' forward citation counts strongly suggest that the three patents-in-suit are in the middle of

13  the pack, or worse, with respect to the 22 patents that Oracle contends were the most valuable in

14  Sun's mobile Java portfolio.[3]  *Id.* ¶ 6.

15      **B.      Dr. Leonard's use of Oracle's estimation of the fair value of Sun's "core
              technology" assets is reasonable.**

16
        Just as it did in its original motion to exclude portions of Dr. Leonard's report [Dkt. No.

17  585], Oracle attacks Dr. Leonard for relying on evidence that does not favor Oracle's view of the

18  case.  The Court should again reject Oracle's attempt to turn a *Daubert* motion into an

19  evidentiary dispute.  Dkt. No. 632 at 3-4; *see also, e.g.*, *ID Sec. Sys. Canada, Inc. v. Checkpoint

20  Sys., Inc.*, 249 F. Supp. 2d 622, 655 *amended*, 268 F. Supp. 2d 448 (E.D. Pa. 2003) ("That Dr.

21  Asher's theory rested on a particular interpretation of a disputed fact in this case does not mean

22  that his testimony, based on a methodology that the court previously found to be reliable, should

23

24  ───────────────────────

25  [3] Moreover, not all analysts agree that adjusting citation counts for patent age is either necessary
    or appropriate.  One study, concerned that "it could be that older patents are cited more often

26  simply because they have had more opportunities to be cited," tested this question statistically
    and concluded that "neither age nor truncation could possibly account for the observed

27  distribution of citation counts" and that "the null hypothesis that older patents received more
    citations just because of the passage of time is rejected by a wide margin."  Zimmer Decl. Ex. E

28  (Trajtenberg study) at 176-77.

1   have been excluded from evidence."); *Hammes v. Yamaha Motor Corp. U.S.A., Inc.*, CIV. 03-

2   6456 MJD/JSM, 2006 WL 1195907 at *6 (D. Minn. May 4, 2006) ("Yamaha's primary objection

3   to this testimony is based upon Berke's interpretation of the evidence that Yamaha received

4   notice of throttle problems in 2000.  This is primarily a factual dispute over which experts could

5   reasonably disagree and does not undermine the reliability of Berke's opinion.").

GOOGLE'S OPPOSITION TO MOTION TO STRIKE SUPPLEMENTAL LEONARD REPORT
Case No. 3:10-cv-03561-WHA

1 ████████████████████████████████████████████████

2 █████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ██████████████

5        Oracle's citations to other evidence that it prefers at most create a factual dispute.  This is

6 what trial is for—to resolve disputes just like this, about which evidence deserves the most

7 weight.  And, in any event, the evidence Oracle cites is hardly compelling.  The selections from

8 Douglas Kehring's deposition almost entirely concern the allocation methodology of Oracle's

9 10-K filing, *see* Richardson Decl. Ex. E (Kehring Dep.) at 142:9-147:4, and Kehring was not

10 even sure whether the allocation methodology in the 10-K was based on the similar analysis in

11 the Report, instead replying "I don't know" when asked that question.  *Id.* at 148:15-18.

12 Kehring's testimony does nothing to discredit the use of the Report in valuing Sun's intellectual

13 property holding.  And even to the extent Kehring's testimony is relevant, Dr. Leonard was not

14 required to credit the interested testimony during litigation of an Oracle executive over pre-

15 litigation statements in Oracle's financial reporting documents.  Oracle may use the other

16 valuations of Java—two of which were made by Oracle officers outside the context of financial

17 reporting—on cross-examination, but an evidentiary dispute is not grounds for disbelieving or

18 excluding the Report.

19        ***Second***, the Report is nothing like evidence of the *Sun v. Microsoft* settlement, which the

20 Court excluded earlier in the proceedings.  There, Oracle was offering the settlement valuation as

21 an affirmative matter to bolster its weak case for injunctive relief, whereas here Google is

22 offering the Report as Oracle's own evidentiary admission, as one of many pieces of evidence

23 that rebuts Oracle's damages case.  Moreover, the Court struck Dr. Cockburn's discussion of the

24 *Sun v. Microsoft* settlement because "[d]amages experts cannot use noncomparable licenses, with

25 ***little relationship to the claimed invention or parties-in-suit***, as a basis for calculating

26 reasonable royalties."  Dkt. No. 685 at 11 (citing *ResQNet, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870

27 (Fed. Cir. 2010)) (emphasis added).  Here, the Report on which Dr. Leonard relied is a valuation,

28 by Oracle, of Sun's entire intellectual property portfolio, whereas most of the money Microsoft

632173

1   paid to settle its litigation with Sun was related to alleged antitrust violations or other issues

2   having nothing to do with the value of the mobile Java technology at issue here. *Id.* at 11-12.  It

3   would be reasonable for the jury to decide that Oracle's own valuation of a set of things that

4   includes the patents and copyrights at issue in this case and many other valuable items, should

5   place a cap on damages.  Dr. Leonard is entitled to testify to that effect, as a matter of

6   economics, without converting his opinion into a legal instruction.

7          ***Third***, Oracle misrepresents the use that Dr. Leonard makes of the Report.  Dr. Leonard

8   used the Report to demonstrate the weakness of Dr. Cockburn's patent portfolio mapping

9   methodology.  He first noted that ████████████████████████████████████████

10   ███████████████████████ Richardson Decl. Ex. A (Leonard Supp. Rep.) at 9.  He also noted

11   that Sun owned over 14,000 patents.  *Id.*  Dr. Leonard assumed the allegedly three most valuable

12   patents-in-suit were the three most valuable of all 14,000 patents, as had Dr. Cockburn.  *Id.*  He

13   then applied Dr. Cockburn's patent apportionment method of mapping the distribution of the

14   14,000 patents onto the distribution of the PatVal data and multiplying the resulting

15   apportionment by the entire bundle's value.  *Id.*

16          Oracle claims Dr. Leonard cannot be "[u]sing Dr. Cockburn's own methodology"

17   because Dr. Cockburn's "methodology does not rely on any accounting valuation of Oracle's

18   2010 acquisition of Sun at all."  Motion to Strike at 5-6.  This makes no sense.  Of course Dr.

19   Leonard had to change some aspect of Dr. Cockburn's methodology in order to test how robust it

20   was; otherwise he would have been performing the same operations, in the same order, with the

21   same data.  In applying Oracle's admissions in the Report to the analysis, Dr. Leonard grew the

22   size of the portfolio from 569 to 14,000 and also increased Oracle's (or Sun's) valuation of the

23   relevant intellectual property, ██████████████████████████ Richardson

24   Decl. Ex. A (Supp. Leonard Rep.) at 9.  When Dr. Leonard mapped the distribution in the PatVal

25   study to the altered portfolio, and applied the rest of Dr. Cockburn's methodology, the patents-

26   in-suit returned a much lower value.  *Id.*  If Google is able to convince the jury that the numbers

27   in the Report reflect reality, as Google is entitled to try to do, Dr. Leonard's analysis would be

28   helpful in calculating damages.

1    Oracle also claims Dr. Leonard used the Report as "an absolute limit on the reasonable

2  royalty Google and Sun would have agreed to in 2006." Motion to Strike at 5-6. This is wrong.

3  Dr. Leonard did write that the "reasonable royalty in this case must be less than the total value of

4  the patents-in-suit." Richardson Decl. Ex. A (Leonard Supp. Rep.) at 9. But, again, he is

5  testifying to an economic opinion, not purporting to state a legal rule. Dr. Leonard is entitled to

6  testify to his opinion that certain results make more economic sense than others. That is all he

7  was doing here by using the Report to cast doubt on Dr. Cockburn's apportionment analysis.

8         **C.      Dr. Leonard's economic, not legal, opinion concerning what would have been
                    important in the Sun-Google negotiations is admissible.**
9
         Oracle's third argument takes one stray sentence of Dr. Leonard's Supplemental Report,
10
  gives it a meaning contrary to common sense, and again asks the Court to believe Dr. Leonard is
11
  attempting to instruct the jury on the appropriate legal rule to apply. Dr. Leonard began his
12
  description of Dr. Cockburn's apportionment methodology by writing:
13

14           Dr. Cockburn starts with the value that he claims Sun would have
             expected to generate from the proposed agreement with Google,
15           apparently under the assumption that the parties would have
             expected to receive equal value from the proposed agreement. I
16           note that there is no reason to believe this was necessarily the case;
             Sun may have expected to receive greater value (e.g., through
17           Project Armstrong) than Google was expecting to receive. It is the
             value that Google was expecting to receive that matters for the
18           reasonable royalty analysis.

19  Richardson Decl. Ex. A (Supp. Leonard Rep.) at 2. Dr. Leonard went on for several additional

20  pages describing and criticizing Dr. Cockburn's apportionment methodology.

21         Out of all this text, Oracle takes the last sentence of the above paragraph as an attempt by

22  Dr. Leonard to instruct the jury as a matter of law about what evidence it can and cannot

23  consider in calculating a reasonable royalty. Motion to Strike at 8-9. For some reason, even

24  though it only objects to the last sentence, it asks that the Court strike the entire paragraph.

25  Motion to Strike at 10. Again, Dr. Leonard is an economist, not a lawyer. Dr. Leonard's point

26  was that, standing in Google's shoes at the time of the hypothetical negotiation, Google would

27  have decided how much it was willing to pay Sun based on its expectations of the value of the

28  partnership to Google, not the value to Sun—particularly since the purported value of the deal to

11

1   Sun was contingent on Sun's unproven ability to start up and grow an entirely new business line.

2   Even in a hypothetical negotiation, every party has a bottom line.  Dr. Leonard is stating only

3   that a party to a business deal decides what terms it ultimately will accept based on its own

4   interests, not the interests of the party across the table.

5   Google has no intention of arguing, and Dr. Leonard has no intention of testifying at trial,

6   about any issue of law, including the extent to which the jury can consider Sun's anticipated lost

7   profits.  That issue will be governed by this Court's instruction and the *Georgia-Pacific* factors.

8   Indeed, in his first report, Dr. Leonard considered all the evidence Oracle now uses to support its

9   calculation of Sun's lost profits, and offered an opinion under the *Georgia-Pacific* framework as

10  to the impact that evidence should have on the reasonable royalty.  Dr. Leonard is entitled to

11  state his opinion, as a matter of economic logic, about the factors that would have guided Google

12  in the hypothetical negotiation, including the maximum amount Google would have been willing

13  to pay as a royalty.  The Court should not strike any part of the paragraph.

14  **III.  CONCLUSION**

15  For all of these reasons, Google respectfully requests that the Court deny Oracle's Motion

16  to Strike Portions of Gregory Leonard's Supplemental Report.

17  Dated: March 2, 2012                          KEKER & VAN NEST LLP

18

19                                                    */s/ Robert A. Van Nest*
                                              _____
20                                        By:   ROBERT A. VAN NEST

21                                              Attorneys for Defendant
22                                              GOOGLE INC.

23

24

25

26

27

28

632173