MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
FRED NORTON (Bar No. 224725)
fnorton@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax)

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF DR. ALAN J. COX'S SUPPLEMENTAL REPORT**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: The Honorable William H. Alsup |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A.    Google's Pretextual Excuse For Amending The Cox report Should Be Rejected........................ 2

    B.    Dr. Cox's Application Of The Apportionment Percentage In The 2006 License Bundle To Real-World Infringer's Profits And Lost Profits Calculations Is Irreparably Flawed.................................... 3

    C.    The Ninth Circuit *Daubert* Standard Has Always Applied To The Admissibility Of Expert Testimony In This Case, Whether For Patent Or Copyright................................................................ 5

    D.    Google Misconstrues *Cream I* And Fails To Cite *Cream II* – The Ninth Circuit Opinion That Rejected Google's Interpretation Of The Copyright Apportionment Requirement. ............................ 5

    E.    Google's Defense Of Dr. Cox's "Alternative" Way To Calculate Infringer's Profits Is Unsupportable Under This Court's Previous Rulings............................................................................ 8

    F.    Google's Revised Lost Profits Arguments Are Fatally Flawed....................................................... 8

III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTOHRITIES

**Cases**

*Cream Records, Inc. v. Joseph Schlitz Brewing Co.*,
  754 F.2d 826 (9th Cir. 1985)......................................................................................................passim

*Cream Records, Inc. v. Joseph Schlitz Brewing Co.*,
  864 F.2d 668 (9th Cir. 1989)................................................................................................ 1, 5, 6, 7

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985).............................................................................................................7

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003).........................................................................................................5

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)..........................................................................................................................4

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004).............................................................................................................9

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000).............................................................................................................7

*United States v. Silverman*,
  859 F.2d 1352 (9th Cir. 1988)...........................................................................................................4

## I.      INTRODUCTION

Google previously argued to the Court, and the Court agreed, that it was improper to equate the percentage of Android revenues attributable to the patented and copyrighted inventions with the percentage of the 2006 Sun-Google license fee attributable to those inventions.  (Dkt. No. 685 at 8.)  Now, Google seeks to defend its own expert's unprovoked use of the ***exact same methodology*** in reverse, and in the process expressly belittles the distinctions between real-world Android and the 2006 license bundle that it previously emphasized.  Google's arguments fail to justify Dr. Cox's new foray into infringer's profits and lost profits, are inconsistent with this Court's previous rulings on apportionment, and are based on a distortion of Ninth Circuit law.

Google claims that Dr. Cox's use of the hypothetical-license apportionment figure in apportioning infringer's profits and lost profits is acceptable because Cox supposedly explains why his conflation of the 2006 Bundle and the value of real-world Android is reasonable and conservative.  But the only supposed explanation in Dr. Cox's supplemental report is indistinguishable from Prof. Cockburn's earlier explanation, which the Court rejected both on the merits and for lack of sufficient explanation.

To try to suggest that Dr. Cox may testify to what Prof. Cockburn may not, Google claims that, under Ninth Circuit copyright law, Google is not required to have any evidentiary basis for its expert's apportionment opinion.  Google relies entirely on a single Ninth Circuit case, *Cream Records*, for this proposition, even though *Cream I* does not support its argument and—worse still—was distinguished by a subsequent Ninth Circuit opinion in the same case (*Cream II*).

Undeterred, Google argues that because ***Dr. Cox*** opines that "the infringement played only a small role in generating profits" in this case, apportioning profits is "difficult" and therefore may be approached leniently. (Dkt. 759 at 5.)  This argument – that Dr. Cox's apportionment opinion should be held to a low standard of reliability because Dr. Cox himself says the appropriate apportionment percentage is low – is mere tautology, and has no support in Ninth Circuit or any other law.

Google has not explained why Dr. Cox's revised methodology is either economically sound or warranted by the plain language of this Court's order regarding supplemental reports.  Oracle respectfully requests that the Court grant Oracle's motion to strike.

## II. ARGUMENT

### A. Google's Pretextual Excuse For Amending The Cox report Should Be Rejected.

Pursuant to the Court's January 20, 2012 order, Prof. Cockburn's third report revises *only* his hypothetical license methodology.  Dr. Cox now purports to respond to Prof. Cockburn's revised hypothetical license measure of copyright damages by reducing two wholly different calculations—copyright infringer's profits numbers and lost profits—by **more than 90% and 60%,** respectively.  Dr. Cox's newly disclosed revisions are not authorized by the Court's order.

The Court's order authorizing Prof. Cockburn to submit a third report allowed him to "revise only those items stricken by the recent order [on Google's motion *in limine*] and the [econometric and conjoint] studies[.]"  (Dkt. 702 at 2.)  Accordingly, Prof. Cockburn was forbidden from revising his calculations of copyright infringer's profits and lost profits, and he made no changes to those opinions.  (Dkt. 685 at 13 (holding that "calculations of copyright unjust enrichment and copyright lost profits are not stricken").)  Neither Prof. Cockburn nor Prof. Shugan made any changes at all to the conjoint study.  The Court's limits on Google's experts mirrored the limits on Prof. Cockburn:  "Only revisions directly responsive to new material by Dr. Cockburn will be allowed."  (Dkt. 702 at 2.)

Google nonetheless claims that the Court's order did not limit Google's experts to supplemental opinions on the "categories of damages" that Prof. Cockburn revised, but rather authorized its experts to change anything they wanted to so long as they characterized the new opinions as "responsive" to *any* "new material" included in Prof. Cockburn's third report, even if it concerns a completely different topic.  (Dkt. 759 at 1.)  Neither the plain words nor the purpose of the Court's order can be reconciled with Google's logic.  Google dances around the Court's orders by claiming that Dr. Cockburn offered new "methodologies to calculate damages" and that "Dr. Cox directly responded to those newly disclosed methodologies" as to "calculations of damages, including damages based on lost profits and infringer's profits."  (*Id.* at 2.)  If Google's argument were correct, its experts could revise their opinions on *any* "methodology" having to do with "damages."  The Court's limitation of the scope of Google's expert's revisions would be meaningless.

Dr. Cox disclosed an opinion as to infringer's profits and lost profits last October.  Prof. Cockburn responded to, and rebutted, those opinions in the proper course by timely serving a reply

2
ORACLE'S REPLY RE MOTION TO STRIKE PORTIONS OF DR. ALAN J. COX'S SUPPLEMENTAL REPORT
CASE NO. CV 10-03561 WHA

report, also in October.  Oracle and Prof. Cockburn would have no such opportunity to rebut Dr. Cox's new opinions on infringer's profits and lost profits.  (*See* Dkt. 702 at 2.)  By having Dr. Cox revise his lost profits and infringer's profits calculations now, even though Prof. Cockburn has not touched his analysis of lost profits and infringer's profits, Google would have the Court insulate Dr. Cox's ultimate analyses from attack at trial.  Google's foray beyond the boundaries of the Court's order permitting revisions would be highly prejudicial and should be rejected.  Google nowhere addresses this concern.

**B.     Dr. Cox's Application Of The Apportionment Percentage In The 2006 License Bundle To Real-World Infringer's Profits And Lost Profits Calculations Is Irreparably Flawed.**

Dr. Cox's new calculations treat apportionment of the 2006 bundle as equivalent to apportionment of Android profits.  In moving to strike Prof. Cockburn's second report, Google argued that this very apportionment approach was impermissible under *Daubert*.  The Court held that the 2006 bundle cannot be conflated with the real-world Android:

- "[T]he rest of the 2006 bundle does not bear any relationship to the rest of the modern Android, for all the record shows. Reasonable parties in 2006 might well have viewed the rest of Java as worth far more than the claims conveniently selected for litigation after the fact."  (Dkt. 685 at 8.)
- "But Android is not equivalent to the value of the license bundle discussed during the 2006 negotiations. The value of Android could [have] been more or less."  (Dkt. 642 at 8 (Tentative Order).)

Google now argues that its own expert can make the same assumption that the Court previously rejected: that Dr. Cox may use Prof. Cockburn's estimate of the lowest possible percentage of value for the asserted copyrights in the 2006 offer (5.1%) to calculate the percentage of Android's real-world profits attributable to those copyrights, even though Dr. Cox himself *admits* that this comparison is inapt (Dearborn Decl. Ex. B (Supplemental Cox Report) ¶¶ 32, 36), and even though Google must recognize that infringer's profits is an *ex post*, not an *ex ante*, analysis.

Google's only substantive attempt to explain Dr. Cox's disregard of the Court's ruling is its argument that "even though the 2006 bundle of intellectual property rights is not the same as the actual 2011 Android platform, that does not mean there is *no* relationship between them."  (Dkt. 759 at 8 (emphasis in original, citation omitted).)  But neither Google nor Dr. Cox makes any attempt to explain what that relationship is, how significant or reliable it is, or even in what direction it points.  Indeed, the

3

Court rejected exactly this argument when it held that Prof. Cockburn "failed to account for [the] disconnect" between the 2006 offer and Android's profits. (Dkt. 685 at 8; *see also* Dkt. 642 (Tentative Order) at 7–8 (noting that the value of Android could have been "more or less" than the value of the 2006 license bundle).)  There is no principled reason in *Daubert* or in copyright law why this holding should apply differently to Dr. Cox.

While asserting that Dr. Cox's use of apportionment of the 2006 bundle to measure apportionment of Google's real-world profits is acceptable because Dr. Cox "*explained* why the approach he used was conservative" whereas Prof. Cockburn did not (Dkt. 759 at 3 (emphasis in original)), all Google has in support of that assertion is paragraph 32 of Dr. Cox's supplemental report. Paragraph 32 recites the bare assertion that the 2006 bundle necessarily included less total value than "the value of the [actual] platform as a whole." (Dearborn Decl. Ex. B (Supplemental Cox Report) ¶ 32.)   This is the ***very same*** explanation Prof. Cockburn provided as to why applying the percentage of the value of the whole platform as a proxy for the percentage of the 2006 bundle was proper and conservative.  (*See* Dkt. 652 (Oracle response to tentative order on Google Motion *in Limine* # 3) at 1.) ***Nothing*** about Dr. Cox's supposed "explanation" distinguishes it from what Prof. Cockburn explained, and what the Court rejected.[1]

Dr. Cox's use of apportionment of the 2006 bundle to apportion after-the-fact profits simply cannot be reconciled with Google's previous arguments or this Court's previous orders.  Google should not be permitted to profit from such directly contradictory positions; the law of the case should control. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position") (internal quotation marks and citation omitted); *Cf. United States v. Silverman*, 859 F.2d 1352, 1353 n.1 (9th Cir. 1988) ("Under the 'law of the case'

---

[1] In any event, Google cannot credibly claim that Dr. Cox's methodology is actually conservative.  Dr. Cox cannot claim that 5.1% understates the proportion of Google's ***infringer's profits*** due to the copyrights simply by asserting that the percentage overstates the amount of ***the bundle*** due to copyrights, which is the only explanation Google offers in support of its claim of "conservatism." (Dkt. 759 at 3.)  As Oracle argued in its opening brief, Dr. Cox's use of this number is not conservative at all. (Dkt. 735 at 10.)

4
ORACLE'S REPLY RE MOTION TO STRIKE PORTIONS OF DR. ALAN J. COX'S SUPPLEMENTAL REPORT
CASE NO. CV 10-03561 WHA

doctrine a court is generally precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.").

C.  **The Ninth Circuit *Daubert* Standard Has Always Applied To The Admissibility Of Expert Testimony In This Case, Whether For Patent Or Copyright.**

Google implies that the difference in standards between the law of the Ninth Circuit (which governs procedural matters and substantive issues of copyright law) and Federal Circuit (which governs substantive issues of patent law) requires that Dr. Cox's apportionment analysis be held to a different standard than Prof. Cockburn. (Dkt. 759 at 4.) That is incorrect. When the Court held that "the 2006 bundle does not bear any relationship to the rest of modern Android, for all the record shows," the Court did not cite any Federal Circuit law peculiar to patent analysis, nor did it confine its holding to any principle of patent law. (Dkt. 685 at 8.) Instead, its holding was based on *Daubert* and the Federal Rules of Evidence, and it applied to ***both*** the patent and copyright damages.

The Federal Circuit applies Ninth Circuit law in reviewing an evidentiary decision to admit or exclude expert testimony. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003) ("Whether proffered evidence should be admitted in a trial is a procedural issue not unique to patent law, and therefore we review the district court's decision whether to admit expert testimony under the law of the regional circuit[.]"). Thus, this Court's *Daubert* rulings, for both copyright and patent damages, consistently are, and have been, subject to Ninth Circuit *Daubert* law. The Rules of Evidence and principles of fairness and logic that governed the Court's prior decision govern here, too.

D.  **Google Misconstrues *Cream I* And Fails To Cite *Cream II* – The Ninth Circuit Opinion That Rejected Google's Interpretation Of The Copyright Apportionment Requirement.**

Google relies exclusively on the Ninth Circuit's decision in *Cream Records, Inc. v. Joseph Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985 ("*Cream I*") to argue that it does not matter how defective Dr. Cox's analysis is because Google is actually not required to offer any apportionment evidence at all. (Dkt. 759 at 4–8.) But neither *Cream I*, on which Google relies, nor the Ninth Circuit's follow-up decision in *Cream Records, Inc. v. Joseph Schlitz Brewing Co.*, 864 F.2d 668 (9th Cir. 1989) ("*Cream II*"), which Google inexplicably fails to cite, supports such an absurd result.

Google's omission of *Cream II* is particularly problematic because that opinion, not *Cream I*, controls on these facts.

In *Cream I*, the plaintiff, Cream Records, sought infringer's profits from two defendants for use of a ten-note motif from its song, *The Theme From Shaft*, in a beer commercial.  After a jury verdict on infringement, the parties agreed to a bench trial on damages, Cream argued that infringer's profits were equal to 1.37% of the total profits that one defendant, Schlitz, earned on all malt liquor for the entire period when the infringing commercial ran.  754 F.2d at 827–28.  Cream's reasoning was that the commercial represented 13.7% of Schlitz's advertising budget, and the infringing use represented 10% of the "advertising power" of the commercial.  *Id.*  The district court, acting as fact-finder, concluded that the evidence showed that the contribution of the infringing use to beer sales was "miniscule," and thus supported an apportionment percentage of only 0.1% of Schlitz's malt beer profits.  *Id.* at 828.  The Ninth Circuit affirmed, noting that the district court's reasoning was supported by evidence and was "no less speculative" than Cream's reasoning.  *Id.* at 829.

Google relies on *Cream I* to assert—falsely—that the Ninth Circuit affirmed an apportionment award that was "*based on no apportionment evidence at all."*   (Dkt. 759 at 5 (emphasis Google's).) That is not the holding of *Cream I*, which specifically **rejected** the argument by Schlitz that no apportionment evidence supported the district court's award:

> Defendants respond that Cream failed to establish that any part of the profits from the sale of malt liquor were attributable to the commercial, much less to its infringing portion, and was therefore entitled to no share of the profits at all. One of the court's formal findings, prepared by defendants, might be read as stating that no causal connection had been shown between the infringement and defendants' profits. It is clear from the court's statements, including those quoted above, however, that the court concluded from the jury's verdict and from the evidence that some of the profits from malt liquor sales were in fact attributable to the use of plaintiff's copyrighted music in the commercial. The court determined the share of the profits attributable to the infringing material as best it could and awarded Cream 1/10th of 1% of those profits.

*Cream I*, 754 F.2d at 828.  Thus, Google's misstates the holding of *Cream I.*

Moreover, Google completely fails to address *Cream II.*   In *Cream I,* the Ninth Circuit held that the district court had failed to make a separate award against a second defendant (the advertising firm Benton & Bowles, which produced the infringing TV commercial), and remanded.  Cream claimed all of Benton's profits from the infringing TV commercial.  754 F.2d at 829.  On remand, the district court

determined that 1% of those profits were attributable to the infringement. *Cream II*, 864 F.2d at 669–70. Cream appealed and the Ninth Circuit reversed, holding that the district court's determination of the proportion of profits attributable to the infringement was "clearly erroneous." *Id.*

In *Cream II*, the Ninth Circuit rejected the district court's finding that the infringing commercial contributed 1% of Benton's profits, just as it had contributed 1% of Schlitz's. *Id.* The Ninth Circuit explained that the evidence of Benton's profits was limited to the $175,872.78 that the firm earned from the infringing commercial, in contrast to "total profits Schlitz earned from its nationwide sale of malt liquor." *Id.* at 669–70 & n.2. Accordingly, the evidence that had supported the apportionment of Schlitz's profits was plainly insufficient to support apportionment for Benton. *Id. Cream I* and *Cream II* thus foreclose Google's argument that copyright apportionment requires no evidence.[2] Indeed, other Ninth Circuit cases also reject the argument that Google has no evidentiary burden for apportioning infringer's profits. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 518–19 (9th Cir. 1985); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000).

Google compounds its error by arguing that its burden is reduced because ***its own expert*** claims that the copyrights were unimportant to the success of Android. (Dkt. 759 at 5 ("Apportioning profits with precision between infringement and other factors will generally be the most difficult where, as Dr. Cox opines is the case here, the infringement played only a small role in generating profits."); *id.* at 6 (arguing that Dr. Cox's analyses "comport with *Cream Records*" because he "has opined that none or close to none of Google's profits are attributable to the alleged copyright infringement").) This argument is pure tautology: Google claims its expert's opinion on apportionment of infringer's profits meets the *Daubert* standard because the *Daubert* standard is reduced based on that same expert's opinion that there is little or nothing to apportion. Google's argument is wrong legally, factually, and logically.

---

[2] Moreover, although neither opinion helps Google, this case is factually consistent with *Cream I*: Prof. Cockburn did ***not*** simply identify Google's gross revenues, from all products and services, during the infringement period, but instead calculated Google's revenue that is directly attributable to Android. (Cockburn Report ¶¶ 94, 643–49 (noting that infringer's profits figure includes only the "gross revenue earned from Android-based advertising, sales of Nexus smartphones, and sales of applications on Android Market.").)

**E. Google's Defense Of Dr. Cox's "Alternative" Way To Calculate Infringer's Profits Is Unsupportable Under This Court's Previous Rulings.**

In his supplemental report, Dr. Cox plucks one term from the draft 2006 license negotiations—the proposal that Google share 10% of its Android revenues with Sun—and claims that this 10% figure, multiplied by the 5.1% lower bound apportionment for copyright, measures the percent of the Android's real-world profits attributable to the copyright infringement. Google devotes a single paragraph to defending Dr. Cox's use of the 2006 license agreement between the parties as a "different way" to apportion profits (Dkt. 759 at 8), relying again on its argument that although it is true that the revenue-share provision of the license that the parties contemplated in 2006 does not "*directly* measure the *exact* portion of Google's profits that are attributable to the alleged infringement," it is an "estimate" and that there must be *some* relationship between that single term in the negotiations of the 2006 bundle of IP rights and actual Android revenues. (*Id.* (emphasis in original).)

As discussed above, Google does not attempt to explain the direction of the "relationship" between the license fee and profits; indeed, Google fails to address Oracle's argument that a license fee *cannot* be a proper proxy for the actual profits a defendant earns through its infringement because a rational bargaining party will necessarily offer *less* for a licensing fee than it expects to earn from that license. (*See* Dkt. 733 at 10–11 (explaining these and other flaws).) Google cites no case that suggests, much less holds, that a proposed, *ex ante* revenue share term operates as a cap on *ex post*, real-world infringer's profits. Google offers no response to Oracle's argument that such a rule would create an incentive to willfully infringe. Dr. Cox's new approach does not meet the standards for expert testimony.

**F. Google's Revised Lost Profits Arguments Are Fatally Flawed.**

Google's defense of its lost-profits apportionment (Dkt. 759 at 2–4) is also meritless.

*First*, Google argues that Oracle should not be able to challenge Dr. Cox's application of the 5.1% apportionment figures to lost profits now, because Dr. Cox tried to apportion lost profits in a prior report. (*Id.*) But if the apportionment of lost profits in Dr. Cox's Supplemental Report is new, then Oracle should be permitted to challenge it. (Dkt. 702 at 2.) If it is not new, then it is procedurally improper under the Court's orders permitting revisions. (*Id.*)

*Second*, Google claims that Dr. Cox's application of the 5.1% apportionment figure to Oracle's lost profits is intended to "limit any claimed damages to those allegedly caused by the infringement." (Dkt. 759 at 2.) But Google provides no explanation why taking 5.1% of Oracle's lost profits is a proper proxy for causation. Google has elsewhere conceded that lost profits are a straight measure of the "amount of profits the plaintiff would have earned absent the defendant's unauthorized use of the plaintiff's work." (Dkt. 539 at 151 (Google proposed jury instruction regarding actual damages for copyright).) This is not an apportioned figure: it simply measures "the copyright holder's losses." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707–08 (9th Cir. 2004). Indeed, it is well-established that of the plaintiff's losses should not be mechanically apportioned to account for causation. It is commonly the case that infringement of less than all of the copyrighted work destroys all of the copyright holder's ability to earn any profit from that work. In *Cream I*, for example, the evidence showed that Schlitz's use of the ten-note motif—considerably less than all of the song— in a television commercial "destroy[ed] its value to other advertisers for that purpose." 754 F.2d at 827. Neither Dr. Cox, nor Google, explains why multiplying Oracle's lost profits by 5.1% accurately calculates the amount of profits Oracle would have earned absent the defendant's unauthorized use of the Java copyrights at issue.

*Third*, Google has failed to explain why Dr. Cox's choice to borrow the 5.1% is proper. Just as the percentage of the *2006 license* bears no necessary relationship to the percentage of *Google's actual profits* from Android, the percentage of *Google's actual profits* due to the infringement bears no necessary relationship to *Oracle's actual losses*. Google has offered no explanation at all as to why this selection does not suffer from the oranges-to-apples problem that Oracle identifies. (*See* Dkt. 733 at 12–13.) And for all of the reasons explained above, this argument cannot withstand *Daubert* scrutiny.

//

//

//

## III.     CONCLUSION

For the reasons explained herein and in Oracle's Motion to Strike, Oracle requests that the Court grant its Motion to Exclude Portions of the Supplemental Expert Report of Dr. Alan J. Cox.

Dated: March 6, 2012

BOIES, SCHILLER & FLEXNER LLP

By:  */s/ Steven C. Holtzman*
         Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.