KEKER & VAN NEST LLP
ROBERT A. VAN NEST, #84065
rvannest@kvn.com
CHRISTA M. ANDERSON, #184325
canderson@kvn.com
MICHAEL S. KWUN, #198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Tel: 415.391.5400
Fax: 415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER
(*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA 94105
Tel: 415.318.1200
Fax: 415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel: 650.328.8500
Fax: 650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 3:10-CV-03561-WHA <br><br> **GOOGLE'S OPENING COPYRIGHT LIABILITY TRIAL BRIEF** <br><br> Judge: Hon. William Alsup |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. BRIEF SUMMARY OF REMAINING COPYRIGHT CLAIMS AND ISSUES ................................................................................................................... 1

III. THE SPECIFICATIONS CLAIMS ..................................................................... 2

    A. The Court must decide whether the selection, arrangement and structure of the API elements are copyrightable, including any subsidiary fact questions. ................................................................. 2

        1. The APIs and the selection, arrangement and structure of the API elements are uncopyrightable under 17 U.S.C. § 102(b). ................................................................................................ 4

        2. Alternatively, the selection, arrangement and structure of the APIs are unprotected *scenes a faire*. ............................................... 7

        3. Alternatively, any expression in the selection, arrangement and structure of the APIs has merged with the underlying ideas. ............................................................................ 9

    B. The Court must decide whether the standard of substantial similarity or virtual identity applies to Oracle's Specifications Claims. ................................................................................................. 10

    C. To the extent there are material disputed facts, the jury must decide whether Google's use is a fair use. .............................................. 11

IV. THE DERIVATIVE WORK CLAIMS ................................................................ 12

V. THE FILE CLAIMS ............................................................................................ 13

    A. The Court should hold that the File Claims are moot. ................................ 13

    B. If the File Claims are not moot, the Court should determine the relevant "work as a whole," and the jury should decide whether the alleged infringement was *de minimis*. ................................................. 13

VI. GOOGLE'S EQUITABLE DEFENSES ............................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Academic Games League of Am., Inc.*
  89 F.3d 614 (9th Cir. 1996) ...................................................................................................9, 10

*Apple Computer, Inc. v. Microsoft Corp.*
  35 F.3d 1435 (9th Cir. 1994) ..........................................................................................3, 5, 9, 10

*Brown Bag Software v. Symantec Corp.*
  960 F.2d 1465 (9th Cir. 1992) .....................................................................................................11

*Campbell v. Acuff-Rose Music, Inc.*
  510 U.S. 569 (1994) ...............................................................................................................11, 12

*Computer Assocs. Int'l, Inc. v. Altai*
  982 F.2d 693 (2d Cir. 1992) ....................................................................................7, 8, 9, 10, 14

*Ets-Hokin v. Skyy Spirits, Inc.*
  323 F.3d 763 (9th Cir. 2003) .......................................................................................................11

*Gates Rubber Co. v. Bando Chemical Industries, Ltd.*
  9 F.3d 823 (10th Cir. 1993) ........................................................................................................10

*Harper House, Inc. v. Thomas Nelson, Inc.*
  889 F.2d 197 (9th Cir. 1989) ........................................................................................................4

*Jada Toys, Inc. v. Mattel, Inc.*
  518 F.3d 628 (9th Cir. 2008) .....................................................................................................7, 9

*Jonathan Browning, Inc. v. Venetian Casino Resort LLC*
  No. C 07-03983 JSW, 2009 U.S. Dist. LEXIS 57525 (N.D. Cal. June 18, 2009) ....................3

*Kelly v. Arriba Soft Corp.*
  336 F.3d 811 (9th Cir. 2003) ..................................................................................................11, 12

*Lotus Dev. Corp. v. Borland Int'l, Inc.*
  788 F. Supp. 78 (D. Mass. 1992) ..........................................................................................3, 5, 6

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) .....................................................................................................................13

*Mirage Editions v. Albuquerque A.R.T. Co.*
  856 F.2d 1341 (9th Cir. 1988) .....................................................................................................13

*MiTek Holdings, Inc. v. ArcE Eng'g Co.*
  89 F.3d 1548 (11th Cir. 1996) .....................................................................................................14

*Montgomery v. Noga*
  168 F.3d 1282 (11th Cir. 1999) ....................................................................................................3

*Newton v. Diamond*
  388 F.3d 1189 (9th Cir. 2004) .....................................................................................................14

*Pivot Point, Int'l, Inc. v. Charlene Prods., Inc.*
932 F. Supp. 220 (N.D. Ill. 1996) .......... 3

*Satava v. Lowry*
323 F.3d 805 (9th Cir. 2003) .......... 10

*Sega Enters. Ltd. v. Accolade, Inc.*
977 F.2d 1510 (9th Cir. 1992) .......... *passim*

*Sony Comp. Ent't, Inc. v. Connectix Corp.*
203 F.3d 596 (9th Cir. 2000) .......... 12

*Sony v. Bleem*
214 F.3d 1022 (9th Cir. 2000) .......... 11

*Swirsky v. Carey*
376 F.3d 841 (9th Cir. 2004) .......... 7

*Tattoo Art, Inc. v. TAT Int'l, LLC*
794 F. Supp. 2d 634 (E.D. Va. 2011) .......... 14

**Federal Statutes**

17 U.S.C. § 102(b) .......... 4, 5, 6

17 U.S.C. § 107 .......... 11

## I. INTRODUCTION

The Android platform includes over 150 source code libraries[1] for use by Android developers. Among those libraries are ones that implement the specifications for over 50 Java API packages that facilitate the use of the freely available Java programming language to write applications. These Java API packages were originally developed by Sun and/or third parties, and have been public for many years. They are well-known to and commonly used by application developers, and have in the past been independently implemented and publicly distributed by third parties. Like the other independent implementations, the Android API libraries—37 of which are at issue in Oracle's copyright claim—utilize the functional elements of the API specifications (including the names, structure and organization of elements of the APIs), coupled with implementing source code independently developed by Google or based on existing, open-source independent implementations. The purpose of the API implementations in Android is to facilitate the use of the freely available Java programming language, consistent with application developers' expectations and enabling code written by third-party developers to be compatible between Android and other Java programming language environments.

## II. BRIEF SUMMARY OF REMAINING COPYRIGHT CLAIMS AND ISSUES

Oracle alleges that Android infringes versions 1.4 and 5.0 of the Java 2 Standard Edition platform (collectively, "J2SE"). Am. Compl. [Dkt. 36], Ex. H. Oracle asks that the jury address three forms of alleged copyright infringement:

(1) Oracle claims that the Android specifications infringe the specifications of 37 Java API packages—that is, the documentation that describes the selection, arrangement and structure of the API elements, and the narrative descriptions that explain how the APIs can be used and what they do (the "Specifications Claims").

(2) Oracle claims that the source code implementation of the Android core libraries is a derivative work of the Oracle specifications (the "Derivative Work Claims").

(3) Oracle claims that 12 Android files—out of over 50,000 files in Android—include code or comments taken from 11 Oracle files (the "File Claims").

See Oracle's Proposed Verdict Form [Dkt. 531-1], Question 1.a-c.[2]

---

[1] "Libraries" can also be referred to as "packages." The terms have the same meaning.

[2] Oracle refers to "[c]opying 12 Java software code files." *Id.* But two of the Android files

1

GOOGLE'S OPENING COPYRIGHT LIABILITY TRIAL BRIEF
Case No. 3:10-CV-03561-WHA

631407.04

Google contends that the selection, arrangement and structure of the API elements are not copyrightable, for several reasons. First, the selection, arrangement and structure are uncopyrightable ideas, processes, systems or methods of operation. Second, the selection, arrangement and structure are functional requirements for compatibility, and thus not protectable. Third, the selection, arrangement and structure are unprotectable *scenes a faire,* and/or their expression has merged into unprotected underlying ideas. Even if they are copyrightable, Google contends that any similarities arising from use of any protectable elements either are not substantial and are therefore noninfringing, or are a fair use.

Google contends that the File Claims are moot, because Oracle is entitled to neither damages nor injunctive relief in connection with these claims. To the extent that the File Claims are not moot, Google contends any alleged copying is *de minimis,* and thus not actionable.

Finally, Google contends that Oracle's copyright claims are barred by the equitable doctrines of laches, estoppel, waiver and implied license.

### III.  THE SPECIFICATIONS CLAIMS

In support of the Specifications Claims, Oracle argues (1) that the selection, arrangement and structure of the API elements are copyrightable—separate and apart from the code that *implements* the APIs—and that for the 37 API packages at issue, the Android specifications use substantially the same selection, arrangement and structure as the J2SE specifications; and (2) that the narrative descriptions in the Android specifications for the APIs are substantially similar to the narrative descriptions in Oracle's specifications for J2SE.

#### A.  The Court must decide whether the selection, arrangement and structure of the API elements are copyrightable, including any subsidiary fact questions.

The Court has already held that the *names* of the API elements are not copyrightable. Copyright MSJ Order [Dkt. 433] at 7-8 ("Because names and other short phrases are not subject to copyright, the names of the various items appearing in the disputed API package specifications are not protected."). Moreover, aside from the File Claims, which are discussed separately below, Oracle does not claim that any of the Android source code that *implements* the

---

allegedly copied the same nine lines from a single Oracle file. Thus, although there are 12 allegedly infringing files, there are only 11 files from which material was allegedly copied.

APIs was copied. Finally, Oracle does not claim copyright protection for the Java programming language itself. *See id.* at 3 ("The Java programming language has been made freely available for use by anyone without charge. Both sides agree on this.").

Oracle nonetheless argues that Google has copied the selection, arrangement and structure of API elements from the J2SE specifications. There is no dispute that the Android specifications for the 37 API packages at issue have substantially the same selection, arrangement and structure of API elements as the J2SE specifications. The parties disagree whether this selection, arrangement and structure is protected by copyright.

Copyrightability is a question of law. The Ninth Circuit has held that "[u]sing analytic dissection . . . *the court* must determine whether any of the allegedly similar features are protected by copyright." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (emphasis added).[3]

The Court must resolve any factual issues relevant to copyrightability; there are no subsidiary fact issues for the jury. *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 788 F. Supp. 78, 96 (D. Mass. 1992) ("issues of copyrightability, *including any fact questions bearing upon them,* must be determined by the court, not the jury." (emphasis added)). As Judge Easterbrook has explained, "[a] jury has nothing to do with" the copyrightability determination. *Pivot Point, Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 225 (N.D. Ill. 1996).[4]

Indeed, there is no practicable way for the jury to decide any subsidiary fact issues. The issue of copyrightability must be decided before the jury deliberates, so that the Court can

---

[3] *See also Jonathan Browning, Inc. v. Venetian Casino Resort LLC*, No. C 07-03983 JSW, 2009 U.S. Dist. LEXIS 57525, at *2 (N.D. Cal. June 18, 2009) ("Determinations of copyrightability are indeed questions of law reserved for the judge, and not the jury.").

[4] Oracle has suggested that there are "threshold factual determinations" for the jury. *See* 10/27/11 Jacobs Ltr. [Dkt. 566] at 3 (citing 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.10[B][1], which cites *Montgomery v. Noga*, 168 F.3d 1282, 1291 n.14 (11th Cir. 1999)). Oracle is incorrect. Although there was a jury trial in *Montgomery, see* 168 F.3d at 1286, the Eleventh Circuit explained that as to copyrightability it was reviewing a factual finding by *the district court,* and made no reference to any subsidiary fact findings by the jury. *Id.* at 1291 n.14. The court expressly noted that it was reviewing the district court's factual findings for clear error, *id.*, which is the standard of review applicable to findings by a *court,* not a jury. Thus, while the question of *infringement* was of course submitted to the jury, the threshold legal question of copyrightability was decided by the district court, without the jury being asked to make any subsidiary findings of fact.

instruct the jury what elements should be considered when deciding whether there was infringement.[5] If there were threshold facts for the jury to decide prior to a copyrightability determination, the jury would first have to deliberate and decide those factual issues, the Court would then have to decide copyrightability and instruct the jury thereon, and the jury would thereafter have to continue its deliberations. Google is aware of no case where any court has ever adopted such a convoluted procedure for a copyright trial.[6]

Different courts have applied different doctrines to conclude that software interfaces are not copyrightable. While the doctrines relied upon by these courts have varied—with some concluding that the interfaces are unprotectable methods of operation or otherwise excluded by 17 U.S.C. § 102(b), others that the interfaces are unprotected *scenes a faire,* and others that any expression has merged with the underlying ideas—the end result has been the same. And the principles relevant to the inquiry are often the same, regardless of which doctrine is invoked.

### 1. The APIs and the selection, arrangement and structure of the API elements are uncopyrightable under 17 U.S.C. § 102(b).

The Court must first decide whether the selection, arrangement and structure of the API elements are copyrightable subject matter. The Copyright Act states:

> In no case does copyright protection for an original work of authorship extend to any *idea,* procedure, *process, system, method of operation,* concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b) (emphasis added). In the order on Google's copyright motion for summary judgment, the Court held that the API package *specifications* are not methods of operation.

---

[5] *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 207-08 (9th Cir. 1989) ("Given the extremely limited protection that Harper House's organizers receive, the jury instructions covering copyright infringement liability did not adequately distinguish between protectable and unprotectable material. . . . We hold that, viewing the jury instructions as a whole, the trial court's instructions on copyrightability were not adequate to ensure that the jury fully understood the issues, and therefore constituted error requiring a new trial on the liability and damages phase of the infringement claim.").

[6] Notably, Oracle's proposed verdict form does not ask the jury to decide any factual questions on which the issue of copyrightability supposedly depends. *See* Dkt. 531-1. Instead, in its proposed jury instructions, Oracle states that "upon the close of evidence, the Court should instruct the jury as to which works are protected by copyright . . . ." Joint Proposed Jury Instructions [Dkt. 539] at 54. Thus Oracle proposes that the Court decide copyrightability without first having the jury make any threshold factual determinations.

1 Copyright MSJ Order [Dkt. 433] at 11.

2 The Court, however, expressly left open whether the APIs described in the specifications are methods of operation. *Id.* at 10 ("Because the issue is not properly teed up for summary judgment, this order does not decide whether APIs are methods of operation."). "[T]he party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements." *Apple,* 35 F.3d at 1446 (quotation marks and citation omitted). Thus, even if the *specifications* are not methods of operation, Oracle cannot rely on any similarity between Android and J2SE that results from any *elements* of the specifications (such as the APIs, and the selection, arrangement and organization of the elements of the APIs) that are methods of operation (or ideas, processes or systems).

The API package specifications at issue provide access to standard Java language libraries that programmers learn to use when they learn to program in the Java programming language. The APIs themselves, which are described in the API package specifications, are the means by which developers can access the implementing code in the Java language libraries. They provide, in a very literal sense, the methods for operating the libraries. In the words of Oracle's expert, Dr. Mitchell, "an API consists of a set of names that can be used to access features of the library, together with specified conventions about their use," and an "API specification . . . describes a set of rules that the code implementing the library must follow." Mitchell Copyright Opening Report [Dkt. 341-1] ¶¶ 52, 175. The APIs (including the individual elements of the APIs) are thus uncopyrightable methods of operation. *See Lotus Development Corp. v. Borland Int'l, Inc.,* 49 F.3d 807, 815-16 (1st Cir. 1995), *aff'd by an evenly divided court,* 516 U.S. 233 (1996) ("We hold that the Lotus menu command hierarchy is an uncopyrightable 'method of operation.' The Lotus menu command hierarchy provides the *means by which users control and operate* Lotus 1-2-3." (emphasis added)).

The Court has asked "whether or not the copyrightability of the selection, arrangement, and structure of the APIs depend on the underlying programming language being Java as opposed to Python or QBASIC or other non-Java programming language." Order Requesting Discussion in Copyright Briefs [Dkt. 754] at 1. It does not. In offering the opinions quoted

above, Dr. Mitchell was explaining what APIs are *generally*, and did not limit his description to the Java language APIs. Similarly, in *Lotus,* which did not involve the Java language, "Borland did not copy any of Lotus's underlying computer code; it copied only the words and structure of Lotus's menu command hierarchy." 49 F.3d at 810. "As the Lotus menu command hierarchy *serves as the basis for Lotus 1-2-3 macros*, the Lotus menu command hierarchy is a 'method of operation.'" *Id.* at 818 (emphasis added). As with the unprotectable Lotus menu hierarchy (which functioned as an API for a macro programming language), APIs in any programming language serve as the means for accessing and controlling the code in the associated libraries.

The Ninth Circuit has held that 17 U.S.C. § 102(b) precludes copyright protection for "functional requirements for compatibility." *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1522 (9th Cir. 1992) (citing 17 U.S.C. § 102(b)).[7] The selection, arrangement and structure upon which Oracle relies to prove infringement are functional requirements for compatibility with code that uses the Java language APIs. Even according to Oracle's expert, in order to be compatible with the 37 Oracle API package specifications at issue, Google had to ensure that the Android libraries that implemented those specifications used the same "set of names" and the same "specified conventions" for their use, and that the packages followed the "set of rules" described in the specifications. Mitchell Copyright Opening Report [Dkt. 341-1] ¶¶ 52, 175. Oracle's expert thus confirmed that the APIs at issue—and, necessarily, the selection, arrangement and structure of the API elements described in the API specifications—are excluded from copyright protection by 17 U.S.C. § 102(b).

Because *all* API specifications, by design, describe precisely the elements of APIs that are needed for compatibility between implementations of the APIs, and with programs that use the APIs, *Sega* applies to APIs regardless of the programming language. As Oracle's expert has

---

[7] *Sega* is a fair use decision, but its analysis of section 102(b) is not limited to that context. The Ninth Circuit held that Accolade's copying and disassembly of Sega object code was a fair use, because the "disassembly [was] the only means of gaining access to . . . unprotected aspects of the program . . . ." *Id.* at 1520. The reason the Ninth Circuit so held was because it agreed with Accolade that the disassembly of Sega's code was "necessary in order to gain access to the ideas and functional concepts embodied in the code, which are not protected by copyright." *Id.* at 1519. The *Sega* court's ultimate finding of fair use depended on the predicate legal principle that section 102(b) precludes copyright protection for functional requirements for compatibility.

explained, APIs provide the "rules" that must be followed when implementing the specifications. Thus, because functional requirements for compatibility are not copyrightable, *Sega,* 977 F.2d at 1522, APIs are not copyrightable, regardless of the programming language.

Google does not believe there are any facts material to copyrightability that truly can be disputed. To the extent that the Court must resolve any subsidiary fact questions to decide whether the APIs are copyrightable subject matter, however, Oracle bears the burden of proof. A copyright plaintiff "must show that he or she owns the copyright and that defendant copied *protected* elements of the work." *Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628, 636 (9th Cir. 2008) (quotation marks and citation omitted, and emphasis added). Because Oracle bears the burden of proving that protected elements were copied, it necessarily bears the burden of proving the elements are copyrightable and thus protected.

### 2. Alternatively, the selection, arrangement and structure of the APIs are unprotected *scenes a faire*.

"Under the *scenes a faire* doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright." *Swirsky v. Carey,* 376 F.3d 841, 850 (9th Cir. 2004). In the computer context, this includes situations where

> a programmer's freedom of design choice is . . . circumscribed by extrinsic considerations such as (1) the mechanical specifications of the computer on which a particular program is intended to run; (2) *compatibility requirements of other programs with which a program is designed to operate in conjunction;* (3) computer manufacturers' design standards; (4) *demands of the industry being serviced;* and (5) *widely accepted programming practices within the computer industry.*

*Computer Assocs. Int'l, Inc. v. Altai,* 982 F.2d 693, 709-10 (2d Cir. 1992) (emphasis added).

Here, Google had to use the same selection, arrangement and structure of API elements in the 37 API package specifications to ensure compatibility with the APIs described in those specifications (*Computer Assocs.* point 2); to meet demands of the Java language programming community (*Computer Assocs.* point 4); and to comply with accepted Java language programming practices (*Computer Assocs.* point 5).

Oracle's expert essentially concedes these points. As discussed above, he has opined that

7
GOOGLE'S OPENING COPYRIGHT LIABILITY TRIAL BRIEF
Case No. 3:10-CV-03561-WHA

631407.04

the specifications provide the "rules" that implementations of those specifications "must" follow. And although Dr. Mitchell argues that Google did not *need* to implement the APIs, he does not dispute that Java language programmers *expect* to be able to use the APIs, and that it is *accepted practice* to use the APIs when programming in the Java language. Indeed, Dr. Mitchell claims that if Google had not adopted the Java APIs, it would have "went to market with an unfamiliar application development environment . . . ." Mitchell Copyright Opp. Report [Dkt. 341-2] ¶ 60. Dr. Mitchell even suggests that Java programmers "may want and expect" Java APIs *in addition* to the ones that Google implemented. *Id.* ¶ 107. Industry demand and accepted programming practices are also evidenced by the fact that two other major independent and open source Java library implementations (Apache Harmony and GNU Classpath) include implementations of all 37 of the API package specifications at issue, and have done so openly for years.[8]

But according to Oracle, the constraints that Google faced when designing Android are irrelevant. Oracle urges the Court to look only at the constraints Sun may have faced at the time the APIs were designed. Copyright MSJ Opp. [Dkt. 339] at 16 (citing *Control Data Sys., Inc. v. Infoware, Inc.*, 903 F. Supp. 1316, 1323 (D. Minn. 1995)). The Ninth Circuit, however, has held that when "specific [computer] instructions, *even though previously copyrighted,* are the only and essential means of accomplishing a given task, their later use by another will not amount to infringement." *Sega*, 977 F.2d at 1524 (quotation marks and citation omitted, and emphasis added). While the Ninth Circuit did not specifically identify the legal doctrine on which it was relying, the result is that APIs are not copyrightable.[9]

Similarly, in *Baystate Techs. v. Bentley Sys.*, the court explained that "[u]nder the *scenes a faire* doctrine, protection is denied to those elements of a program that have been dictated by external factors." 946 F. Supp. 1079, 1088 (D. Mass. 1996) (citing *Gates Rubber Co. v. Bando*

---

[8] At trial, Jonathan Schwartz, who was Sun's CEO when Android was being developed and when it was released, will testify that he was well aware of the Apache Harmony and GNU Classpath API implementations, that Sun never objected to those implementations, and that he believed that widespread use of the APIs was good for Sun.

[9] *See also* PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT § 2.3.2.1 (3d ed. 2011) (in the Ninth Circuit, "it is the range of expressive choice *that existed at the time the competing product was created*—not the range of expression that existed at the time the copyrighted work was created—that controls" (emphasis added)).

*Chemical Industries, Ltd.,* 9 F.3d 823, 838 (10th Cir. 1993)). The *Baystate* court concluded that the selection and organization that the defendant had copied was dictated by external factors:

> The product being developed is a data translator that is designed to "read" the data files of CADKEY. The process of "reading" the CADKEY data files requires that the elements contained within the data structures of the Translator be organized in the same manner as the elements in the data structures of CADKEY. Without such compatibility, the Translator would not function because it would "misread" the CADKEY data files.

946 F. Supp. at 1088. That the *plaintiff* could have chosen a different selection and organization for the elements of the CADKEY data files did not keep the district court from concluding that the *scenes a faire* doctrine precluded copyrightability. *See id.*

These principles apply to any set of APIs that is considered standard by that language's developer community. Such APIs are unprotectable *scenes a faire* because, regardless of the language, the APIs represent standard tools learned and then used by that particular developer community. *See Sega,* 977 F.2d at 1524; *Computer Assocs.,* 982 F.2d at 709-10.

Finally, although Google has the burden of raising the doctrine of *scenes a faire, Sega* demonstrates that Oracle has the ultimate burden of persuasion. In *Sega,* the Ninth Circuit held there was no infringement by relying on the absence of evidence showing alternatives to the defendant's copying of a twenty to twenty-five byte segment of the plaintiff's software. 977 F.2d at 1524 n.7. If the defendant had the burden of proof, that lack of evidence could not have cut against the plaintiff's position. Implicitly, then, the Ninth Circuit held that the plaintiff has the burden of proof. This is consistent with the court's statement, in *Jada Toys,* that the plaintiff has the burden of proving that *protected* elements have been copied. 518 F.3d at 636.

### 3. Alternatively, any expression in the selection, arrangement and structure of the APIs has merged with the underlying ideas.

The merger doctrine is closely related to the doctrine of *scenes a faire.* When an idea "can only be expressed in so many ways," the expression has "merged" with the idea. *Apple,* 35 F.3d at 1444. In such a situation, "even verbatim reproduction of a factual work may not constitute infringement." *Allen v. Academic Games League of Am., Inc.,* 89 F.3d 614, 617-18 (9th Cir. 1996).[10]

---

[10] *See also Computer Assocs.,* 982 F.2d at 707 (in analyzing computer programs, "expression

9

In *Allen,* the Ninth Circuit noted that the doctrine of merger is "particularly applicable with respect to games" because they "consist of abstract rules and play ideas." 89 F.3d at 617-18 (quotation marks and citation omitted). The same principle applies here, where the Court has already noted that an API is "the abstract concept of an interface between programs." Copyright MSJ Order [Dkt. 433] at 10. "In order not to confer a monopoly of the idea upon the copyright owner, such expression should not be protected." *Computer Assocs.,* 982 F.2d at 708 (citing *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 742 (9th Cir. 1971)).

The *Allen* court held that the plaintiff had "not shown that it is possible to distinguish the expression of the rules of his game manuals from the idea of the rules themselves." 89 F.3d at 618. Here, the selection, arrangement and structure of the APIs are, according to Oracle's own expert, "rules" that must be followed by implementing libraries. Mitchell Copyright Opening Report [Dkt. 341-1] ¶¶ 52, 175. This result does not depend on the Java programming language in particular, but is true for APIs generally.

And, as with *scenes a faire,* Oracle bears the burden of persuasion. In *Allen,* the Ninth Circuit affirmed the district court's grant of summary judgment because "Allen has not shown that it is possible to distinguish the expression of the rules of his game manuals from the idea of the rules themselves." 89 F.3d at 618. A mere failure of proof would not support summary judgment for the defendant unless the plaintiff had the burden of proof.

### B. The Court must decide whether the standard of substantial similarity or virtual identity applies to Oracle's Specifications Claims.

Choosing between the substantial similarity and virtual identity standards is an issue for the Court. *See Apple*, 35 F.3d at 1443 ("Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying."). If the Court concludes that the range of protectable expression is narrow, the standard for copying is not just substantial similarity but virtual identity. *See id.* at 1446; *see also Satava v. Lowry,* 323 F.3d

---

necessarily incidental to the idea being expressed" is unprotectable); *Gates Rubber,* 9 F.3d at 836-38 (software that is "inseparable from or merged with the ideas, processes, or discoveries underlying the expression" is unprotectable to avoid "unwittingly grant[ing] protection to an idea by granting exclusive rights to the only, or one of only a few, means of expressing that idea.").

805, 812 (9th Cir. 2003) ("Satava possesses a thin copyright that protects against only virtually identical copying."); *Ets-Hokin v. Skyy Spirits, Inc.,* 323 F.3d 763, 766 (9th Cir. 2003) ("When we apply the limiting doctrines, subtracting the unoriginal elements, Ets-Hokin is left with only a 'thin' copyright, which protects against only virtually identical copying.").

Once the Court resolves the copyrightability issue, Google believes that it will be entitled to a judgment as a matter of law of noninfringement.[11] If, however, the Court concludes that the infringement question should be sent to the jury, Google believes that the virtual identity standard should apply. Whichever standard applies, Oracle bears the burden of proof. *E.g., Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1472 (9th Cir. 1992).

  **C.** **To the extent there are material disputed facts, the jury must decide whether Google's use is a fair use.**

Although fair use can be decided by the Court if the relevant facts are undisputed, *see, e.g., Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 817-22 (9th Cir. 2003), fair use is a jury issue where there are material disputes of fact. The Copyright Act lists several non-exhaustive factors to be considered in determining whether a use is fair: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

"The four factors are to be considered together in light of the purposes of copyright, not in isolation." *Sony v. Bleem,* 214 F.3d 1022, 1026 (9th Cir. 2000) (citation omitted). Copyright's "very purpose" is "'[t]o promote the Progress of Science and useful Arts. . . .'" *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 575 (1994) (quoting U.S. Const., Art. I, § 8, cl. 8).

With respect to the first factor, the Supreme Court has explained that

> The central purpose of the investigation is to see, in Justice Story's words, whether the new work merely "supersede[s] the objects" of the original creation, or instead adds something new, with a further purpose or different character,

---

[11] If the Court concludes the selection, arrangement and structure of the API elements is not copyrightable, Oracle may still argue that the narrative descriptions in the Android specifications infringe. Google, however, believes that no reasonable jury could find infringement on that basis, and that it therefore will be entitled to judgment as a matter of law.

> altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative."

*Campbell*, 510 U.S. at 579 (citations omitted).

According to the Ninth Circuit,

> The second statutory factor, the nature of the copyrighted work, reflects the fact that not all copyrighted works are entitled to the same level of protection. The protection established by the Copyright Act for original works of authorship does not extend to the ideas underlying a work or to the functional or factual aspects of the work. 17 U.S.C. § 102(b). To the extent that a work is functional or factual, it may be copied, *Baker v. Selden,* 101 U.S. (11 Otto) 99, 102-04, 25 L.Ed. 841 (1879), as may those expressive elements of the work that "must necessarily be used as incident to" expression of the underlying ideas, functional concepts, or facts, *id.* at 104. Works of fiction receive greater protection than . . . works that have strong functional elements, such as accounting textbooks, *Baker,* 101 U.S. at 104.

*Sega,* 977 F.2d at 1524.

With respect to the third factor, "[i]f the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 820-21 (9th Cir. 2003).

Finally, although the fourth factor considers market harm, not all "harms" are cognizable. In *Sony Comp. Ent't, Inc. v. Connectix Corp.,* 203 F.3d 596 (9th Cir. 2000), the Ninth Circuit explained, for example, that "an attempt to monopolize the market by making it impossible for others to compete runs counter to the statutory purpose of promoting creative expression and cannot constitute a strong equitable basis for resisting the invocation of the fair use doctrine." *Id.* at 607-08 (citing *Sega,* 977 F.2d at 1523-24). In particular, a transformative use that "does not merely supplant" the original work can render the secondary user a "legitimate competitor," in which case "some economic loss . . . does not compel a finding of no fair use." *Id.* at 607.

Weighing these factors together, the evidence will show that Google's use is a fair use. *See* Google's Copyright MSJ [Dkt. 260] at 19-22; Copyright MSJ Reply [Dkt. 368] at 9-10.

## IV. THE DERIVATIVE WORK CLAIMS

Oracle also claims that the source code implementation of the Android core libraries is a derivative work, because it allegedly is "derived" from Oracle's specifications. Oracle's argument is breathtaking. If Oracle is correct, *any* implementation of *any* API specification is a derivative work, because as Oracle's expert concedes, implementing the APIs requires following

the "rules" described in the specifications. Mitchell Copyright Opening Report [Dkt. 341-1] ¶¶ 52, 175. Thus, although the Ninth Circuit has held that "functional requirements for compatibility" are not copyrightable, *Sega,* 977 F.2d at 1522, following functional requirements for compatibility—according to Oracle—leads directly to infringement.

Regardless, material only qualifies as an unlawful derivative work if derived from material that is itself infringing.[12] Thus, if the Specifications Claims fail, then the source code implementation of the Android core libraries is not a derivative work. The legal issues relevant to the Specifications Claims are therefore also relevant to the Derivative Work Claims.

## V. THE FILE CLAIMS

### A. The Court should hold that the File Claims are moot.

The Court should hold that the File Claims are moot, and thus that there is no need to present them to the jury. As the Court has noted, Oracle's damages expert performed no analysis of damages caused by the alleged copying of portions of the 11 Oracle files. Order re Google's MIL No. 3 [Dkt. 685] at 10. Indeed, Oracle has never articulated any damages theory based on the File Claims. Moreover, the allegedly copied portions of these files have all been removed from Android. Thus, there is no basis or need for injunctive relief.

Because Oracle is entitled neither to damages nor equitable relief with respect to the File Claims, a verdict in Oracle's favor would not redress any alleged harm arising from the File Claims. On these facts, Oracle's File Claims are moot. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) ("the irreducible constitutional minimum of standing contains three elements," the third of which is redressibility).

### B. If the File Claims are not moot, the Court should determine the relevant "work as a whole," and the jury should decide whether the alleged infringement was *de minimis*.

If, however, the File Claims are tried, the jury will need to decide whether any alleged copying in the 12 Android files is *de minimis*. *De minimis* acts of copying are not actionable.

---

[12] *Mirage Editions v. Albuquerque A.R.T. Co.,* 856 F.2d 1341, 1343 (9th Cir. 1988) ("a work will be considered a derivative work only if it would be considered an infringing work if the material which it has derived from a preexisting work had been taken without the consent of a copyright proprietor of such preexisting work") (quotation marks and citation omitted).

*Newton v. Diamond,* 388 F.3d 1189, 1192-93 (9th Cir. 2004). Where the only similarity is as to "nonessential matters," the copying is *de minimis*. *See id.* at 1195 (quoting 4 NIMMER ON COPYRIGHT § 13.03[A][2], at 13-48). Where a defendant copies only "a portion of the plaintiff's work exactly or nearly exactly . . . the dispositive question is whether the copying goes to trivial or substantial elements." *Id.* That substantiality is judged by "considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole." *Id.* (emphasis added); *see also Computer Assoc.*, 982 F.2d 693 at 714-15. Oracle bears the burden of proving the significance of any copied code. *MiTek Holdings, Inc. v. ArcE Eng'g Co.*, 89 F.3d 1548, 1560 (11th Cir. 1996) ("The burden is on the copyright owner to demonstrate the significance of the copied features, and, in this case, MiTek has failed to meet that burden.").

To instruct the jury, the Court will need to determine what the relevant "work as a whole" is. Google contends that the relevant "work as a whole" is J2SE, the works that Oracle registered with the Copyright Office. Oracle, in contrast, has previously argued that the allegedly copied material in each of the 12 Android files must be compared to the individual file from which the material allegedly was taken. Oracle's Opp. to Copyright MSJ [Dkt. 339] at 23.

The Court has not yet decided this issue. *See* Copyright MSJ Order [Dkt. 433] at 6-7. To the extent that the Court concludes that an individual Oracle code file could ever be the "work as a whole" for purposes of the *de minimis* analysis, Oracle has the burden of proving, at a minimum, that the individual files have "independent economic value." *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 652 (E.D. Va. 2011) (quoting *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993), and considering what constitutes a "work" for purposes of statutory damages). Google is unaware of any evidence suggesting that the individual code files have any independent economic value.

## VI. GOOGLE'S EQUITABLE DEFENSES

The Court should follow its inclination to "ask the jury for an advisory verdict on all equitable defenses." Final Pretrial Order [Dkt. 675] at 2. The evidence will demonstrate that Oracle's claims are barred by Google's defenses of laches, estoppel, waiver and implied license.

As early as 2005, Sun was fully aware of Google's efforts to develop the free, open

source, full stack Android mobile operating platform partly written in the Java programming language. Despite this knowledge, Sun never said a cross word to Google when Android was publicly announced in 2007 and then released in late 2008. Certainly Sun never asserted that Android infringed copyright or threatened to sue over it. Sun didn't change its tune until after it changed its name to Oracle America in early 2010, by which time Google and its many partners in the Open Handset Alliance had invested enormous amounts of time, money and sweat in building the Android platform into a commercial success.

By its actions and inactions, Sun conceded that Google was not infringing any Sun copyright. Indeed, Sun publicly applauded Android's release as an open source platform. When Google first announced Android in 2007, Sun CEO Jonathan Schwartz publicly congratulated Google, and declared that "Google and the Open Handset Alliance just strapped another set of rockets to the community's momentum." And Sun and Oracle have both consistently treated APIs as unprotectable, both by copying and incorporating third-party APIs into their own products, even to this day, and by not challenging as infringements other implementations of the Java API specifications.

These and other similar statements by Sun establish Google's equitable defenses—each premised on the fact that Sun expressly and publicly approved of Android and never suggested it would sue Google. In fact, even before it completed its acquisition of Sun, Oracle applauded the Android platform, announcing in 2009 at the Java One conference that it was "flattered" by Android and further emphasizing that there were likely to be Android netbooks using the Java programming language as a result of the efforts of "our friends at Google." Oracle cannot renege on these representations, claiming entitlement to revenues associated with Android now that Android is a success.

Dated: March 9, 2012                KEKER & VAN NEST LLP

                                    /s/ Robert A. Van Nest
                                By: ROBERT A. VAN NEST

                                    Attorneys for Defendant GOOGLE INC.