Pages 1 - 43

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES WARE

MFORMATION TECHNOLOGIES, INC., a  )
Delaware corporation,              )
                                   )
   Plaintiff/Counterclaim Defendant, )
                                   )
   VS.                             ) No. C 08-04990 JW
                                   )
RESEARCH IN MOTION Limited, a      )
Canadian corporation,              )
                                   )
   AND                             )
                                   )
RESEARCH IN MOTION CORPORATION, a  )
Delaware corporation,              )
                                   )
   Defendants/                     ) San Francisco, California
   Counterclaim Plaintiffs.        ) Monday
_____) March 12, 2012


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          FOLEY & LARDNER
                            3579 Valley Centre Drive, Suite 300
                            San Diego, California  92130
                      BY:   **AMAR L. THAKUR, ESQUIRE**
                            **JUSTIN E. GRAY, ESQUIRE**


**For Defendants:**         KIRKLAND & ELLIS LLP
                            950 Page Mill Road
                            Palo Alto, California  94304
                      BY:   **MARC H. COHEN, ESQUIRE**


(Appearances continued on next page)

**Reported By:**   *Katherine Powell Sullivan, CSR #5812*
                   *Official Reporter - U.S. District Court*

**APPEARANCES (CONTINUED):**

**For Defendants:**                KIRKLAND & ELLIS LLP
                                   300 North LaSalle
                                   Chicago, Illinois  60654
                            BY:    **LINDA S. DeBRUIN, ESQUIRE**
                                   **MEREDITH ZINANNI, ESQUIRE**
                                   **MICHAEL DALEY KARSON, ESQUIRE**

**P R O C E E D I N G S**

**MARCH 12, 2012**                                          **9:24 A.M.**


        **THE CLERK:**  Calling case C 08-4990, Mformation

Technologies versus Research In Motion Limited.

        Counsel, please approach and state your name for the

record.

        **MR. THAKUR:**  Amar Thakur and Justin Gray for

Mformation Technologies, Inc.

        **MR. COHEN:**  Good morning, Your Honor.  Mark Cohen.

With me today is Linda DeBruin, whom you've met, Meredith

Zinanni, Mike Karson.  And then from Research In Motion we have

Barbara Parvis, Tony Kim, and Frank Geng.

        We did hand up some materials, but I notice we have

additional people here.  And I have extra materials if you

would like --

        **THE COURT:**  Give them to the clerk.  She will make

sure they are distributed in a way that might assist the Court.

        **THE CLERK:**  They only need the two.

        **MR. COHEN:**  Ms. DeBruin will be handling the argument

today.

        **MR. THAKUR:**  Your Honor, do you have a preference

from which side you hear from first?

        **THE COURT:**  Well, it's always my preference to hear

first from the owner of the patent with respect to language of

1  the claim itself.

2          **MR. THAKUR:**  Your Honor, brought a handful of slides

3  that hopefully help us go through our argument.

4          So, first of all, let's talk about where we stand

5  today.  What is the issue?  The issue is interpretation of the

6  claim term "establishing a connection between the wireless

7  device and the server."

8          Clearly, based upon preceding language the issue is

9  that the server establish the connection.  Not an issue in

10 dispute.

11         All communications have to be done pursuant to using

12 a communication protocol.  And that was part of the discussion

13 this court already entertained when entertaining RIM's motion

14 for summary judgment of non- --

15         **THE COURT:**  I'm sorry, I missed that middle party.

16         **MR. THAKUR:**  I'm sorry.

17         RIM had previously filed a motion for summary

18 judgment of non-infringement.  And the Court interpreted, at

19 that point, the fact that the UDP protocol, which is a

20 communication protocol, could not be excluded as a matter of

21 law.

22         And the point I would make, Your Honor, is that a

23 communication protocol has to be used.  And to send data there

24 are various different communication protocols, such as UDP and

25 TCP.  And so we were just saying the -- the only additional

1  language that we added was that the server establishes a

2  connection, but it does so using a communication protocol.

3  Just to clarify that there are more than -- there's more than

4  one way of establishing the connection.

5          **THE COURT:**  All right.  Now, is there a difference

6  between -- because these are protocols.  I'm not totally

7  familiar with them.  Is there a difference between the

8  establishing of connection step and the transmission step?

9          **MR. THAKUR:**  Of course there is, Your Honor.

10          **THE COURT:**  And are the protocols all exclusively

11  establishing a connection step and not the transmission step?

12          **MR. THAKUR:**  Correct.  Because you select a protocol,

13  or whatever protocol you selected it would be the analogous of

14  whether you decide to send via FedEx or UPS.  The transmission

15  is not relevant to the sending portion, establishing the

16  connection portion.

17          The communication protocol is basically determining,

18  if you will, the analogy of which vendor is going to be used to

19  send out the data.

20          **THE COURT:**  So using that analogy, then, the choice

21  of vendors --

22          **MR. THAKUR:**  Correct.

23          **THE COURT:**  -- does it connect?

24          **MR. THAKUR:**  The question, yes, is yes.  Once you

25  have chosen the vendor, you know which way it's going to go.

1          **THE COURT:**  Yes.  But has it connected?

2          **MR. THAKUR:**  No.  That's -- Your Honor, you've

3   actually hit the key point.  The issue is not establishing the

4   connection and transmitting.  Those are two different steps.

5   But the connection does not need to occur before --

6   establishing the connection does not need to occur before

7   transmission can begin.

8              There are three steps.  Your Honor, if you want to,

9   perhaps, take a look at Claim 1.  The purpose is to deliver the

10  command.

11         **THE COURT:**  Wait.  Let's get a clear answer to my

12  question.

13         **MR. THAKUR:**  Sorry.

14         **THE COURT:**  So when you've selected the protocol --

15         **MR. THAKUR:**  Correct.

16         **THE COURT:**  -- have you connected?

17         **MR. THAKUR:**  Not necessarily.

18         **THE COURT:**  "No" would be the answer I hear.

19         **MR. THAKUR:**  Yes.

20         **THE COURT:**  When you say "not necessarily," in other

21  words, you can select a protocol and connect?

22         **MR. THAKUR:**  Correct.  Because there's certain

23  protocols that you would select the protocol, and pursuant to

24  the protocol you would communicate with the device and, if you

25  will, complete the connection step.

1           **THE COURT:**  All right.  And that is not transmission?

2           **MR. THAKUR:**  That is not transmission.  Transmission

3  is the command itself.

4           **THE COURT:**  All right.  And so there are protocols

5  where you can connect to the wireless device, and there are

6  protocols where you do not connect to the protocol device.

7           **MR. THAKUR:**  You're establishing the connection.

8  Eventually you will have to connect.

9           **THE COURT:**  So establishing a connection in some

10  instances is different from connecting.

11           **MR. THAKUR:**  Correct.

12           Your Honor, I'm going to slip to a slide I think

13  really helps.

14           Here's the issue.  We have to deliver the command.

15  The command -- there are three steps to it.  There is

16  establishing the connection.  The second part is then, again,

17  transferring the data.  And the third step is accepting.

18           And one potential embodiment is obviously

19  establishing is finished, transferring is finished, and then

20  accepting occurs.  But, clearly, there is no requirement,

21  whatsoever, that those steps -- not only that they be performed

22  in order, but that one step be completed before the other.

23           So if I could just summarize for Your Honor, this is

24  what is the biggest point, if you will, of today's argument.

25  The point of today's argument is not actually our proposed

1    construction; it's actually the deficiency in RIM's proposed

2    construction by adding a limitation.

3              What RIM is saying, with reference to Claim 1, is

4    that the claim steps must be performed in order.  But that is

5    confusing.  It's not the fact that the steps must be performed

6    in order.  They're importing the limitation.  The establishing

7    the connection must be complete before starting the -- before

8    starting the transmitting of the content.

9              So what they're saying is the only potential claim --

10   the claim can only operate in the way it's depicted up above.

11   The establishing must be completed; transferring must be

12   completed; and accepting will then follow.

13             **THE COURT:**  So let me understand this.

14             You agree that transferring and accepting are in an

15   order.  You cannot accept until you transfer.

16             **MR. THAKUR:**  Your Honor, actually, the issue before

17   the Court --

18             **THE COURT:**  No, no.  I'm asking that question.

19             **MR. THAKUR:**  Yes.  I'm sorry.

20             **THE COURT:**  Is that correct?

21             **MR. THAKUR:**  The answer is, A, it can occur

22   concurrently, or A following B.  So you could have

23   establishing --

24             **THE COURT:**  Let me test the concurring.

25             **MR. THAKUR:**  Right.

1              THE COURT:  Before you can accept, something has to

2    be transmitted.

3              MR. THAKUR:  Correct.  But --

4              THE COURT:  But that the entire transmission doesn't

5    have to be complete before the accepting start step can be

6    performed.

7              MR. THAKUR:  That is absolutely correct.

8              THE COURT:  All right.  But your argument is that

9    unlike those two sub-steps, with respect to establishing a

10   connection it does not have to start prior to the commencement

11   of the transmission step.

12             MR. THAKUR:  Your Honor, you are hitting the issue

13   spot on.

14             THE COURT:  I'm asking a question.

15             MR. THAKUR:  The issue is absolutely yes, it has to

16   start.  It does not have to finish.

17             THE COURT:  So the establishing step has to commence

18   before the transferring step commences.

19             MR. THAKUR:  Before or concurrently with.

20             THE COURT:  So the establishing step can start, and

21   the transmitting step can start simultaneously.

22             MR. THAKUR:  Correct.

23             THE COURT:  Where does the specification tell me

24   that?

25             MR. THAKUR:  Your Honor, so, the specification says

1    these steps must occur.

2           From the claim itself, if I may point you to where

3    the Claim 1 is, it says, "delivering the command from the

4    mailbox at the server to the wireless device by establishing a

5    connection."

6           Clearly, the word there is "establishing."  It

7    doesn't say, establish a connection would then do Y.

8           What I'm arguing, Your Honor, is if the Court

9    wanted -- if Mformation wanted to limit the claim to step A

10   being followed by step B, but more importantly step A,

11   establishing, being completed before step B can begin, which is

12   transmitting, it would have said so.  It would have said,

13   complete the connection and then transmit.  The claims did not

14   say that.

15          **THE COURT:**  Now, the inventors used the word

16   "establishing" earlier, in establishing a mailbox.

17          **MR. THAKUR:**  Correct.

18          **THE COURT:**  Does it have the same meaning?

19          **MR. THAKUR:**  It has the same meaning, correct.

20          **THE COURT:**  So that, is establishing a mailbox

21   something that is ongoing?  Or does it happen, and once it

22   happens it doesn't happen again?

23          **MR. THAKUR:**  Well, once the step is complete, it's

24   completed.

25          **THE COURT:**  All right.  And with respect to the

1 delivering step, though, that is a dynamic process; and it has

2 a different meaning, doesn't it?

3      **MR. THAKUR:**  Absolutely.  I mean, the delivering

4 process is the process of taking the command from the mailbox

5 and delivering it to the device for acceptance.  And that

6 requires three sub-steps, and were clearly written as three

7 sub-steps.

8      But nowhere in the claim did it say that sub-step has

9 to be completed before sub-step 2 can begin, that has to be

10 completed before sub-step 3 can begin.

11      **THE COURT:**  The point that I'm asking your

12 clarification is, why should I construe it as simultaneous?

13      **MR. THAKUR:**  The beginning of.

14      **THE COURT:**  I know.  But why -- how can I get to an

15 understanding of the inventor conceiving of that sub-step or

16 writing that that sub-step can start simultaneously with the

17 transmitting sub-step?

18      **MR. THAKUR:**  Because the patent claim, the '917

19 claim -- and I can cite to the column -- refers to various

20 communication protocols.  And different communication protocols

21 deal with those steps being performed in a different order.

22 And even within the protocols, some alternatives exist where

23 within a particular protocol the step will be -- the connection

24 will be established then transmission will begin.

25      Other protocols will start the transmission process

1  and will start -- the delivery process by starting a connection

2  process --

3          **THE COURT:**  What you're inviting me to do is turn to

4  those with skill in the art and take from what is written in

5  the specification a protocol where the establishing a

6  connection step is performed simultaneously with the

7  transmission step.

8          **MR. THAKUR:**  The answer, Your Honor -- the ideal

9  answer is to not really address the issue of whether it must be

10 simultaneously, but address the issue of whether -- Your Honor,

11 I think what I'm saying is, you're trying to explain fully

12 whether step A must be performed, B must be performed, and A

13 and B must start at the same time.

14         But the issue before the Court is not whether steps A

15 and B must start at the same time.  The issue before the Court

16 is whether step A must be completed before step B can begin.

17         **THE COURT:**  That's your characterization, but I'm not

18 limiting myself to that.  In other words, I understand that

19 point.

20         In fact, I think that, as I've expressed myself in

21 previous opinions, even if you have an order of steps, and that

22 is something that is necessary to the performance of the

23 method, the earlier step must commence before what is ordered

24 to be in the patent, the second step, can commence; but that

25 the first step doesn't have to be completed before the second

1    step is completed.

2            But now you're actually addressing the commencement

3    part, as I understand it.  If you want to accept the Court's

4    understanding that the first step has to commence before the

5    second step commences, even if the step is -- first step isn't

6    completed before the second step commences, then I'm done.

7            Are you willing to accept that?  I thought you were

8    asking me to construe the second step as starting

9    simultaneously.

10           **MR. THAKUR:**  Your Honor, we believe it can start

11   simultaneously.

12           **THE COURT:**  That's what I'm searching for.  So what I

13   would have to educate myself is, one skilled in the art reading

14   the specification would see a protocol where it can start

15   simultaneously.  The order is not important because then there

16   is no order.

17           **MR. THAKUR:**  Right.

18           **THE COURT:**  They are both performed at the same time.

19           **MR. THAKUR:**  They can start at the same time.

20           **THE COURT:**  To say "they can start at the same time"

21   means there is no order.  They are both number one.

22           **MR. THAKUR:**  Right.

23           Your Honor, there is nothing, when you have one, two,

24   three steps, that says you cannot have two items that start at

25   the same time.

1          **THE COURT:**  I understand that.  What I'm asking is

2    whether or not your position is, one skilled in the art reading

3    this patent would find that there is no order between the

4    establishing step and the transmitting step, that they aren't

5    in any particular order.

6          **MR. THAKUR:**  Your Honor, I'm saying -- the

7    interpretation you're asking is much broader.  I'm not saying

8    they are not in any order.  I'm not saying accepting can occur

9    before transmission.

10          **THE COURT:**  No, I'm talking about these two

11    sub-steps --

12          **MR. THAKUR:**  Even in those two steps.  I'm not

13    arguing that transmitting can begin before establishing can

14    begin.  But I --

15          **THE COURT:**  I didn't talk about the transmitting step

16    with respect to this order.  I'm talking about between

17    establishing and transmitting.  Those are the only two

18    sub-steps we are concerned about.

19          **MR. THAKUR:**  Right.  And I would say, Your Honor,

20    unless the spec limits it to a particular embodiment, where it

21    says A and B must begin at different times, I believe this

22    court does not need to go there because the issue before the

23    hearing today is not whether A needs to begin before B begins.

24          **THE COURT:**  All right.  Now, so there has to be

25    something -- since we agreed earlier that the transmitting step

1  and the accepting step do have an order, what is it that

2  removes -- that's how I got to this question.

3          **MR. THAKUR:**  Right.

4          **THE COURT:**  What is it that removes this other

5  sub-step from an order that is evident from the second and the

6  third steps?

7          **MR. THAKUR:**  What I think removes it is you can have

8  the -- in a real sense of the world, you can take the command

9  first and start moving it into the pipeline and package it with

10  a protocol that sends the delivery later.

11          If you will, maybe I can use a real-world analogy.

12  I've got a gift to give.  I start the gift down the pipeline.

13  But the final decision whether I'm going to put it into a FedEx

14  envelope or a UPS envelope is done later, or can be done

15  essentially as part of that step.

16          **THE COURT:**  So what does the inventor mean here by

17  "connection"?

18          **MR. THAKUR:**  What the inventor means by a connection,

19  Your Honor, is exactly what I would like to turn to.

20          So here is what we proposed, which is basically

21  communication between -- the server uses a communication

22  protocol to communicate with a wireless device.

23          Your Honor, what RIM has done is proposed to you

24  essentially entirely based on extrinsic evidence.  They have

25  one citation to intrinsic evidence, which relates to

1   distribution of software, which is the final software pursuant

2   to CD-ROMs or communication links.  That's the actual

3   delivering the software, not the user of the software.

4           So there is no intrinsic evidence that they rely on

5   for communication.  What they rely on for a communication link

6   is extrinsic evidence entirely.

7           First, they say -- they talk about a prior court

8   construction:  Construing connection is establishing the

9   ability to communicate.  They use a handful of definitions,

10  Your Honor:  A line of communication between two points.  A

11  means of channel.  A means of communication.

12          Your Honor, I want to be absolutely clear, we would

13  accept every single one of those definitions that RIM has

14  proposed as secondary, based on technically extrinsic evidence.

15          What they do, however, is take that alternative

16  construction proposal and convert it into a physical link.

17  Remember the physical link is relating to the delivery of the

18  software.  Has nothing to do with the mobile device management.

19          **THE COURT:**  I appreciate that advocacy causes you to

20  go this way, but I want to hear from the specification because

21  this is claim construction.  RIM's out of the picture.

22          **MR. THAKUR:**  Right.

23          **THE COURT:**  We're back at the point where the patent

24  is being issued.

25          **MR. THAKUR:**  Correct.

1              THE COURT:  And I want to know what one of skill in

2  the art would understand "connection" to be at that point.

3  What does -- what is a connection?

4              MR. THAKUR:  A means of communication.  A method of

5  communication.

6              THE COURT:  So that if you broadcast, and there is no

7  receipt, you have established a connection within that sense of

8  the word?

9              MR. THAKUR:  That step, correct, yes.

10             The step of connection just means the ability of

11  communicating.  Because in -- in the world of wireless you have

12  push contact and pull contact.  Push you just send the

13  information.

14             THE COURT:  You send it.

15             MR. THAKUR:  Right.

16             THE COURT:  And is there a connection when it is

17  sent?

18             MR. THAKUR:  Yes.  That step has been established

19  because the connection -- no, excuse me.  Yes.  I want to be

20  precise.

21             The establishing the connection involves the idea of

22  identifying the recipient, and either in a push connection

23  sending the package in a way that once it gets to the recipient

24  the recipient will know, I can accept it.

25             THE COURT:  So that's a broadcast?

1          **MR. THAKUR:**  Well, see, the problem is in the

2    communication world "broadcast" actually refers sending stuff

3    that goes to multiple people, instead of unicast.

4          **THE COURT:**  But it is a broadcast.

5          **MR. THAKUR:**  It's -- the broadcast can be to one

6    person.  It can be a unicast, where I am sending the

7    information just to you --

8          **THE COURT:**  Let's use unicast.

9          **MR. THAKUR:**  Right.

10          **THE COURT:**  So a unicast, that is broadcasting to a

11    single recipient.

12          **MR. THAKUR:**  Right.

13          **THE COURT:**  You would actually define that as

14    establishing a connection with that single recipient?

15          **MR. THAKUR:**  Absolutely, correct.

16          **THE COURT:**  Why?

17          **MR. THAKUR:**  Because the tools for the recipient in a

18    push environment, which is one of the alternative embodiments

19    in the patent claim, you can take the information that I am

20    sending.  I want to put the information in so that the

21    recipient -- it can only go to one recipient.

22          **THE COURT:**  What if the recipient is off?

23          **MR. THAKUR:**  It won't get there.

24          **THE COURT:**  Has there been a connection if it's off?

25          **MR. THAKUR:**  No, because the connection won't be --

1  establishing the connection will have begun, but the connection

2  will not have been established.

3          That's why it's so important to understand.  The step

4  can begin, but the step does not have to finish in particular

5  order.

6          **THE COURT:**  Well, but when is the step complete?

7          **MR. THAKUR:**  The step is complete when that

8  connection is established, which is when the device knows that,

9  I'm now getting the transmission.

10          **THE COURT:**  I'm finally kind of getting there.  So

11  you would have "establishing a connection" construed to not

12  require an actual connection?

13          **MR. THAKUR:**  I would require the connection not be

14  completed.  The steps to the connection, the first part of the

15  connection is sending the -- identifying the person you're

16  going to send it to, and starting the packaging of a

17  communication protocol to send it.

18          **THE COURT:**  I didn't get a yes or no.  Let me try it

19  again.

20          Would you have the Court define "establishing a

21  connection" in a way does not require an actual connection?

22          **MR. THAKUR:**  Correct, but before the steps are

23  completed.

24          **THE COURT:**  Very well.

25          **MR. THAKUR:**  Your Honor, I would like to save a

1    couple of minutes before I -- just for a rebuttal.

2              **THE COURT:**  You have.  I've interrupted you.

3              **MR. THAKUR:**  No, no, no.  I think -- I think I've

4    essentially gotten to my argument, which is, in fact, this

5    court has already given me what I, frankly, think I came here

6    to ask for, which is that the step A need not be completed

7    before step B begins.

8              **THE COURT:**  I haven't given you that.

9              **MR. THAKUR:**  No.

10             **THE COURT:**  I've given you a chance to argue that.

11             **MR. THAKUR:**  I would say if it just simply is whether

12   the steps have to be performed in order, Your Honor, I believe

13   that's something this court does not need to address.  That's

14   what I was going to say.

15             One last point I want to make, Your Honor, is a lot

16   of reliance by opposing counsel on what arguments I made during

17   claim construction on a prior hearing.  And I just want to

18   again emphasize, those points that I made during prior oral

19   argument are in regards to a threshold condition.  They talked

20   about steps being performed in the order.

21             Two points on that one.  I never said step A has to

22   be completed before step B begins.

23             **THE COURT:**  Don't worry.

24             **MR. THAKUR:**  Thank you.

25             **THE COURT:**  Counsel.

1           **MS. DeBRUIN:**   Good morning, Your Honor.   Linda

2   DeBruin on behalf of Research In Motion.

3           We're looking at the claim language "establishing a

4   connection between the wireless device and the server."   I

5   underlined that language in the claim.

6           I would like to, first, talk about RIM's

7   construction.   RIM's construction tracks the claim language and

8   is supported by the intrinsic and extrinsic evidence.   I would

9   like to take it piece by piece.

10          First, "establishing."   The Court has already

11  construed what establishing meant, and has talked about

12  establishing meaning to bring into existence or set up.   We've

13  adopted the term "set up."

14          Next slide, please.

15          Even Mr. Thakur, at the last claim construction

16  hearing, when he was talking about establishing a connection,

17  said a pipe is set up.   He used the setup language.

18          There shouldn't be any dispute about "establishing"

19  meaning that.   What we need to talk about is what is being set

20  up.   A connection is being set up.

21          That is not hiring the vendor or deciding what vendor

22  to use, in Mr. Thakur's terms.

23          **THE COURT:**   Why?

24          **MS. DeBRUIN:**   That was done by the company that built

25  the system.   Whoever built the system that's being used decided

1   what protocol to use.

2           A protocol is just how you're going to do things, how

3   things are going to work, how the steps are going to go.

4           A protocol is not something that you select on the

5   fly in the system.  Instead, what is set up here is a

6   connection.  And Mr. Thakur, once again, just as he did

7   previously, referred to that as a pipe.

8           What you have to do in establishing the connection is

9   build the pipe.  You're going to build the thing over which you

10  are communicating.

11          **THE COURT:**  Why?  I mean, it just seems to me that

12  limits the word -- if I used 20th century technology, and used

13  a telephone, when I pick up the phone and I get a dial tone and

14  I dial a number, have I established a connection?

15          **MS. DeBRUIN:**  Once the person at the other end has

16  answered, once that telephone is picked up, yes, you have, Your

17  Honor.

18          In fact, that's the example --

19          **THE COURT:**  That's why I'm bothered by what is

20  required for establishing a connection.  Your client would have

21  me construe it to say establishing a connection is only

22  complete when the connection is complete.

23          **MS. DeBRUIN:**  Establishing connection is complete

24  when you have set up the connection, when you have set up the

25  pipe, when you have set up, in the terms we used in the

1 claim -- in our proposed language, the communication link.

2          **THE COURT:**  Well, my communication link is set up in

3 the telephonic world when a telephone number is assigned to a

4 particular device.

5          **MS. DeBRUIN:**  No, it isn't, Your Honor.

6          **THE COURT:**  It's not?

7          **MS. DeBRUIN:**  Because you need to have your

8 communication link between your phone -- if you're calling our

9 office -- I guess it would usually happen the other way around;

10 we would be calling your office.  But if I'm calling your

11 office, then the connection is not set up between us until I

12 call your office and your office answers.  Then we have a

13 connection.

14          And the purpose for that connection is so that we can

15 communicate over it.  The connection, establishing a

16 connection, is not the communication.  The purpose of it is to

17 set it up something so that we may communicate.

18          **THE COURT:**  But aren't we -- haven't we set up a

19 connection when I buy a phone, you buy a phone, and we

20 subscribe to a service?

21          **MS. DeBRUIN:**  No, we haven't, because there's no

22 connection between my phone and your phone.

23          **THE COURT:**  But that's what -- I asked that, and

24 maybe I didn't hear your answer.

25          **MS. DeBRUIN:**  Okay.

1    **THE COURT:**  Your client would have me construe

2   "establishing a connection" is only complete when the

3   connection has been completed.

4    **MS. DeBRUIN:**  When you buy your phone --

5    **THE COURT:**  Yes or no to that?

6    **MS. DeBRUIN:**  It would be complete when the

7   connection is completed, yes.  You would have established the

8   connection when you have the thing established over which

9   you're going to communication.

10    And you're buying a phone --

11    **THE COURT:**  You have said it two different ways for

12  me, and I'm trying to make sure I understand what you are

13  saying that sounds different to me, and that is, to set up a

14  telephonic connection doesn't necessarily require a connection;

15  it just requires the ability to connect.

16    But if I were to make a phone call using that system,

17  I could say, well, I haven't connected, you know.  But what

18  does it mean to establish a connection?  Could be

19  euphemistically referred to as my dialing.  It could be

20  subscribing to the system so that we could communicate.

21    There's a continuum of things that could be used by

22  one who would wish to use words to describe this process, this

23  method.  So our job is to figure out what this inventor, these

24  inventors, were meaning when they talked about delivering it.

25  And they say one of the sub-steps is establishing a connection.

1        Was there any other place in the patent -- this might

2   be one way to approach it -- where we could define this

3   sub-step because it doesn't exclude -- include something that's

4   already disclosed?

5        **MS. DeBRUIN:**  Yes, Your Honor.  A couple of places.

6        One, if you look at the language that I have up on

7   the screen, on slide 7, in the patent it describes, upon the

8   connection being established, the commands are transmitted.  In

9   other words, after the connection is established, the commands

10  are transmitted.  You have to establish a connection before you

11  transmit the commands.

12       And Mformation has argued that the patent describes a

13  broad definition of wireless networks and protocols.

14       Your Honor, that misses the point.  That language

15  shows up in the preamble of Claim 1.  That language about

16  wireless networks and the protocols that could be used with

17  them is not in the step that we're looking at here of

18  establishing a connection between the wireless device and the

19  server.

20       Now, Mformation, when they first filed their patent

21  application back in August of 2001, they had that broad

22  language about wireless networks in there.  They also had an

23  original Claim 1.

24       And I've included in the handout the various pieces

25  from the prosecution history that I'm going to refer to.  But

1    in that first version that they had of Claim 1, it didn't

2    require establishing a connection.  All that it required was

3    delivering the command from the mailbox to the device.

4           Now, they were not entitled to that claim, the Patent

5    Office determined.  And the Patent Office made them add certain

6    language.  They had them amend twice to get a claim that was

7    allowed.

8           First, they had to add language requiring that it be

9    without a request from the wireless device.  And then they had

10   to add language that showed that you had these three sub-steps

11   for the delivering step.

12          What Mformation is trying to do -- I've put on the

13   board, at slide 14, an orange circle.  That's the scope of a

14   wireless network and the protocols that could be used within

15   it, as described in the '917 patent specification.  That's what

16   they wrote in August of 2001.

17          But that's not the scope of Claim 1.  That's the

18   mistake here, Your Honor.  Mformation says that you have to

19   make, somehow, this claim term of establishing a connection

20   match that orange circle, match that scope of this term in the

21   patent.

22          But Claim 1, even as originally filed, had a more

23   narrow scope than that.  And its scope got narrower as

24   Mformation had to make amendments to it.

25          What we need to focus on here, Your Honor, is what

1   does "establishing a connection between the wireless device and

2   the server" mean?

3          Mformation wants to equate that with communicating.

4   Now, Mformation's construction is not supported by even the

5   claim language.  Mformation's construction doesn't even deal

6   with establishing.  Mformation is basically saying that

7   establishing a connection between the wireless device and the

8   server means to communicate.

9          Where in Mformation's construction is there anything

10  about setting up anything?  We all agree that establishing

11  means to set up.  But there's nothing in Mformation's

12  construction that deals with that.  Instead, they refer to

13  using a communication protocol.  That happens in any system,

14  any wired system, any wireless system.  That's how you

15  communicate.  That's just the -- how -- the steps we're going

16  to follow.

17         That adds no meaning to that claim, Your Honor.  And

18  what they've done is they basically made a -- they basically

19  are saying "establishing a connection" must mean simply

20  communicating.

21         **THE COURT:**  Let me -- you're doing a good job here

22  and I hesitate to interrupt, but I need to have you go to this

23  push protocol.

24         Do you agree that the push protocol can be read by

25  those skilled in the art as covered by this claim?

1        **MS. DeBRUIN:**  It could be if you use -- if you use a

2   system in which a connection is established, let's say a TCP

3   connection.

4        **THE COURT:**  Well, let me just -- because that "if"

5   bothers me because it seems to me that by putting a condition

6   on it you're saying no, it can't be used, you need some other

7   conditions before push protocol can be used.

8        And so that's why I'm not sure I would agree with

9   you, because one of the things I understand from this patent is

10  that a push protocol was contemplated; that you don't get a

11  request, you just push out to the wireless device.  Now --

12       **MS. DeBRUIN:**  And I see what you're saying, Your

13  Honor.  Let's go back to the slide with the circle.

14       **THE COURT:**  Well, but I haven't asked me question

15  yet.

16       **MS. DeBRUIN:**  I'm sorry.

17       **THE COURT:**  So if you agree that a push protocol can

18  be used, in what sense, as you understand the push protocol,

19  would the establishing a connection sub-step be performed?

20       **MS. DeBRUIN:**  If there is a connection established

21  between the entity -- let's say the server -- and the device

22  before the information that's to be sent or pushed is

23  transmitted.

24       A push protocol doesn't really -- by saying the push

25  protocol --

1      **THE COURT:**  So the push protocol, as you would have

2  the Court understand it, is not the transfer -- is the

3  transmission step.  And the establishing step is not a part of

4  the push protocol.

5      **MS. DeBRUIN:**  Well, it's also the setting up the

6  connection.  And I have a slide -- actually, let's forget the

7  circle slide and let's go to the slide that -- correct.

8      (Slide displayed.)

9      **MS. DeBRUIN:**  What Mformation is doing -- and you

10  raised an interesting point, Your Honor -- Mformation is

11  basically attempting to read out the step of establishing a

12  connection from this patent claim.

13      And I'm going to explain to you why.  And this is a

14  really important point.

15      Mformation, when it submitted its patent -- as you

16  know, you're talking about push -- they first sought to have

17  patent claims that covered pull and that covered push.  They

18  wanted both.  But the Patent Office said, you're not entitled

19  to those claims that cover pull.

20      Patent Office looked to a reference called Lo Vasco.

21  And what Lo Vasco taught was the device establishing a

22  connection, and then the server transmitting over that

23  connection.

24      That's not push, Your Honor.  That's pull.  The

25  device is setting up the connection, and then the server is

1     using that connection to transmit.

2            That's not covered by Claim 1 because Claim 1

3     requires that the server, not the device, and it requires that

4     by the language, and without a request from the wireless device

5     performing the following steps.  And those steps include, after

6     the final amendment of Claim 1, they include establishing a

7     connection.

8            Now, what mischief is Mformation trying to do?  Think

9     about that situation, the situation that Mformation was told

10    they weren't permitted to have, which is the device setting up

11    a connection, and then the server and device communicating

12    using that connection.

13           We put that type of arrangement in front of

14    Mformation's expert, Dr. Madisetti.  So the device,

15    establishing a connection.  But he simply said, oh, that

16    connection, that's not what we're thinking about.  That's not

17    what Claim 1 is talking about.  Not that connection.

18           The problem with what he did is this.  Let's look at

19    our device.  Establishing a connection with the server.  What

20    Mformation wants to say is when that server uses that pipe

21    that's now set up between that device and the server, when that

22    server uses a communication protocol to communicate with the

23    wireless device, which we have just shown up on slide 22,

24    Mformation says, oh, well, there, that server is setting up a

25    connection.

1      That's what Mformation's claim language says.  It

2 says that the server using a communication protocol to

3 communicate with the wireless device is establishing a

4 connection.  And they want to say that even if you're doing

5 that over an already established connection.

6      That's exactly what the Patent Office said Mformation

7 was not entitled to have.  And that is the reason, Your Honor,

8 that Mformation's construction is not correct.

9      Now, RIM's construction, RIM's construction reflects

10 the patent claim.  It's true to the patent claim.  It indicates

11 that we established, we set up something.  It describes what is

12 being set up.  There's various ways that's been described.

13      Mformation's counsel has referred to that as a

14 communication link.  There's a treatise from Dr. Tannenbaum, a

15 well-known computer science professor, where he refers to it as

16 a tube.  We chose the language from the patent that talked

17 about a communication link being transmission media.

18      But whatever you call it, it's something that's going

19 to be set up in order to communicate over.  It's not just

20 selecting a protocol.  As I said, that protocol was selected

21 when the system was designed, not during the operation of the

22 system.

23      And you talked with Mr. Thakur about order.  Order

24 matters here.  Order matters because, first, from a matter of

25 logic, if you're going to use something to communicate over,

1  you have to set it up before you communicate.

2          The specification said that.  "Upon connection being

3  established, the commands that were stored in the mailbox are

4  transmitted."  First you connect, then you transmit.

5          Dr. Kushwaha, the named inventor of the '917 Patent,

6  said the same thing in his deposition.  He said, "You establish

7  the connection based on a threshold condition, and after, after

8  you establish the connection, you send the command.

9          That's what the claim language of Claim 1 requires,

10  Your Honor.  Mformation wasn't entitled to just a claim that

11  had just the delivering step.  But that's basically what

12  they're trying to revert to here now.  But they weren't

13  entitled to that.  They had to do that without a request from

14  the wireless device, and they had to perform these three

15  specific sub-steps.  One being the one we're talking about

16  here, establishing a connection.

17          THE COURT:  Well, let's assume I follow that.  What

18  is the timing requirement?  In other words, this all can happen

19  in a sequence, or it can all happen at once, or it can all

20  happen asynchronistically.

21          What is it that tells me that one has to occur before

22  the other, other than the admission of the inventor here?

23  Because that's extraneous information.

24          MS. DeBRUIN:  I understand.  And what we mainly

25  relied on for that point, Your Honor, is the language from

1    specification:  "Upon the connection being established, the

2    commands that were stored in the mailbox are transmitted."

3           That's what it means to establish a connection.  You

4    establish a connection, and then after that happens, only after

5    that connection is established, are the commands transmitted.

6    That's what the patent says.  And that's the only thing that

7    the patent says.

8           There's no other embodiment described in the patent.

9    The patent doesn't describe any embodiment in which you

10   transmit before you connect, or you connect and transmit at the

11   same time.  This is all that the patent describes.  And this is

12   the logical way to interpret the patent claim.

13          You're setting up something over which you wish to

14   communicate.  You set up the connection, and then you use it to

15   transmit.

16          **THE COURT:**  I'm still not sure I understand your

17   argument with respect to the push process.

18          Now, maybe your argument is, push doesn't work for

19   this invention.  But I was waiting for you to explain how you

20   reconcile this language with the push protocol, as I understand

21   the push protocol.

22          Maybe I don't understand the push protocol, but it

23   did seem to me that when I looked at it, especially since it's

24   mentioned in the specification, I had to give to the inventors

25   that this could be used in that kind of protocol.

1          **MS. DeBRUIN:**  And it could be, Your Honor, but my

2     answer is that not -- just saying push doesn't say whether the

3     claim would cover that protocol or not.  And here's why.  You

4     could push without establishing connection.

5          The broadcast example that you gave, where you just

6     send something out, you don't know whether it's going to get

7     there or not -- maybe it does, maybe it don't -- that would be

8     pushing information without a connection being established.

9          In fact, that's what RIM does.  RIM sends out

10    information.  And it doesn't know whether a device is going to

11    be able to receive that or not.  It doesn't know whether the

12    device is on.  It doesn't know whether the device is somewhere

13    that it can reach, that signal can reach it.  But it sends it.

14    And it has other ways of making sure that the communication is

15    reliable.  But it doesn't set up a connection.

16          Alternatively, you could have a push arrangement

17    where the first thing you do is the server would establish a

18    connection with the device, and then it pushes information to

19    the device.  That would all be done without a request from the

20    wireless device.

21          But what Claim 1 requires -- so to read Claim 1 in an

22    infringement analysis on any kind of protocol, you have to look

23    for a step of establishing a connection and then a step of

24    transmitting.  If you don't have the step of establishing a

25    connection, then Claim 1 doesn't apply.

1    **THE COURT:**  Now, let me ask -- I see our time is up,

2  but -- can we turn off the red light because we are way out of

3  time here anyway.

4    What I wonder about is the construction that I was

5  discussing with your opponent a moment ago, as to whether or

6  not in steps just in general, if you say that steps have to be

7  performed in an order, does that necessarily mean that step 1

8  has to be completed before step 2 commences?  Or are the steps

9  in an order, if step 1 commences, and step 2 commences after

10  step 1 has commenced, without necessity of step 1 having to be

11  completed?

12    **MS. DeBRUIN:**  It's hard to say in the abstract, Your

13  Honor.  I would say in the case here you need to establish a

14  connection before you use it to communicate over.  And the

15  language from the specification says that.

16    **THE COURT:**  Well, does the transmitting step require

17  that you transmit over the connection that has been

18  established?

19    **MS. DeBRUIN:**  It requires that you transmit using

20  that connection.

21    **THE COURT:**  Where does it say that?  Where does it

22  say that?

23    **MS. DeBRUIN:**  It says, upon connection being

24  established the commands that were stored in the mailbox --

25    **THE COURT:**  That's from the specification.  The claim

1   says nothing about that "upon"; does it?

2           **MS. DeBRUIN:**  That's assumed, Your Honor --

3           **THE COURT:**  Right.

4           **MS. DeBRUIN:**  -- from establishing a connection.

5           **THE COURT:**  The claim language itself doesn't require

6   that whatever we're calling a connection be used for the -- it

7   says, transmitting the content.  It doesn't say using the

8   connection that has been established.

9           Now, maybe one skilled in the art would read it that

10  way, but that's not the claim language.  Right?

11          **MS. DeBRUIN:**  One skilled in the art would understand

12  that that language requires a connection to be set up.

13          Now, we're not saying that an actual physical

14  connection is being set up and the information is going to flow

15  over that physical connection; but, rather, that we establish a

16  connection and then information is going to flow between us

17  using that connection.

18          **THE COURT:**  But that's -- again, both sides, it seems

19  to me -- this may be one of those instances where I need the

20  trial, and I need to say to the jury, I haven't come up with a

21  definition of this term yet; or just keep it to myself and give

22  them that definition after I've heard more.  Because I'm having

23  difficulty, at this point, in giving a good definition because

24  I need to learn more.

25          Maybe I need to have a separate proceeding, where I

1  have a better tutorial on the various technologies and how they

2  operate.  Someone told me there is such a thing as a

3  connectionless connection.  I don't understand that at all.

4         **MS. DeBRUIN:**  Your Honor, we certainly would be

5  willing to do -- I think it would be useful to have this term

6  construed before trial.  And we could make our expert

7  available.  I'm sure that Mformation could make their expert

8  available.  We could put on a tutorial and talk about this in

9  more detail.

10         **THE COURT:**  It does seem to me -- let me have your

11  opponent back.

12         What I would have you address -- and I can anticipate

13  your answer but I want to hear it on this record, of the

14  threshold conditions.

15         The threshold conditions, I've already construed

16  that.  But does that factor into whether or not the

17  establishing step is something that is a protocol that is

18  infrastructure oriented?  Or is that -- those threshold

19  conditions something that are very dynamic, that happen as part

20  of the delivering step; and, therefore, the establishing step

21  is a dynamic process as opposed to something that is based on

22  some protocol that is already there?

23         **MR. THAKUR:**  Your Honor, what I would suggest is -- I

24  think you've clearly grasped -- in my opinion, you've clearly

25  grasped the issue that establishing and transmitting must occur

1  in some sort of order, whether they begin at the same time or

2  whether A must occur.  The word there is "establishing a

3  connection."  And in fact, even in RIM's slide 7 --

4          **THE COURT:**  You didn't answer my question.

5          **MR. THAKUR:**  Okay.  I guess what I'm saying is, the

6  last step, the establishing begins, the transmitting can begin,

7  but the connection is established.  So the completion is based

8  upon a threshold condition.

9          **THE COURT:**  All right.  Now, just a moment.

10         **MR. THAKUR:**  Sorry.

11         **THE COURT:**  So tell me your best argument as to the

12  relationship of the wherein step would be establishing.

13         **MR. THAKUR:**  The establishing can begin at some

14  point.  At some point in the establishing step, there has to be

15  a threshold condition that has been checked.  This court had

16  actually construed that.  The --

17         **THE COURT:**  Just a moment.

18         So you don't believe the threshold conditions have

19  anything to do with the commencement of the establishing?

20         **MR. THAKUR:**  With the commencement, correct, because

21  commencement occurs up above.  It is the completion.

22         Your Honor, this is the keyword there: establishing.

23  And then the last step is where the connection is established.

24  And I would argue that that almost reaffirms what I've been

25  arguing all along.  The step A can begin.  Step A is only

1  completed when that occurs, the threshold condition is

2  satisfied.

3      **THE COURT:**  So I would have to read the threshold

4  conditions as not conditions which are satisfied when we are

5  establishing a connection.  And somehow the inventor

6  contemplates that those threshold conditions come into

7  existence during the process of establishing a connection,

8  without disclosing when that is or how we know it, but

9  completed at the point where the connection is established.

10     **MR. THAKUR:**  Correct.  The threshold condition

11 evaluation can begin when the connection is being established.

12 And, again, slide 7, RIM's counsel says "upon being

13 established."  It doesn't say "upon establishment."

14     **THE COURT:**  But what tells the world when those

15 threshold conditions are evaluated?

16     **MR. THAKUR:**  Because those threshold conditions can

17 be evaluated -- all of this is occurring, as we said, at the --

18 without a request from the wireless device.

19     So the software package would start the process of

20 evaluating the threshold condition.  But the connection cannot

21 be established until the threshold condition is met.

22     **THE COURT:**  But we're adding to the claim, at that

23 point.  In other words, we're adding to this method --

24     **MR. THAKUR:**  Correct.

25     **THE COURT:**  -- some process of the threshold

```
1   conditions coming into existence, which perhaps did exist
2   before the established step.
3              MR. THAKUR:  Correct.
4              THE COURT:  And then some evaluation of that before
5   the connection is established.
6              MR. THAKUR:  Correct.  So this must be completed
7   before it can -- the threshold condition must be evaluated
8   before the connection can be completed, not before it can
9   begin.
10             THE COURT:  Well, let me think about all of this.  I
11  really appreciate the effort that has gone into this process.
12             What is your reaction to the Court's notion that
13  maybe this is extrinsic evidence that the Court can take in a
14  separate hearing from the various experts?
15             You've provided me with the technical advisor, so
16  might be listening with a learned ear by my side.  I think I
17  might benefit from that.
18             MR. THAKUR:  Your Honor, we're in our fourth year.
19  We're a small company.  The resources they have -- their
20  methodology to date has been, If you fail, try, try again.
21             The answer is, Your Honor, you have a technical
22  expert.  The patent says push technology.  You have the
23  briefing of the parties.  You've heard oral argument.  You have
24  two opposing experts say the same thing.
25             THE COURT:  Where is your expert located?
```

1    **MR. THAKUR:**  Your Honor, he's located in Atlanta.  He

2  teaches at Georgia Tech.

3    **THE COURT:**  Is there a time when you know when he

4  will be out here in advance of the trial?

5    **MR. THAKUR:**  I don't know.  I don't --

6    **THE COURT:**  Where is your technical expert located?

7    **MS. DeBRUIN:**  He's in San Diego, Your Honor.

8    **THE COURT:**  Why don't you meet and confer and see

9  whether, without undue expense, there's a time and place -- and

10  get my staff involved -- where that might happen.  Do you have

11  a trial date?

12    **MR. THAKUR:**  We do, Your Honor.

13    **THE COURT:**  What's your trial date?

14    **MR. THAKUR:**  June 19th.

15    **THE COURT:**  June 19th.  So it would surprise me if

16  you don't contemplate having your expert at your disposal

17  between now and June 19th.  And so I'm suggesting maybe we

18  could take advantage of that.  And if you knew about it well

19  enough ahead of time, we could clear our calendar.  Maybe we

20  could take advantage of a time when it wouldn't be an

21  extraordinary expense to your client.

22    But if you tell me no, we can't make that

23  arrangement, I'll take that into consideration, as well.  Your

24  argument is, it's clear and you shouldn't need that.

25    **MR. THAKUR:**  Honestly, yes, it is clear, Your Honor.

1          This is our third claim construction.  And how many

2    summary judgment motions, Your Honor -- I would take a picture

3    of my client -- actually, use RIM's slide 13, and take a look

4    where they show a picture of my client.

5          This is really important, Your Honor.  If you switch

6    over to the slide.

7          **THE COURT:**  This has your --

8          **MR. THAKUR:**  This is their slides, Your Honor.

9          There's a step where they show a picture of my

10   client.  I want to say this.  Your Honor, if you want to see a

11   picture of someone exhausted, that's a picture of someone

12   exhausted.

13          (Slide displayed.)

14          **THE COURT:**  I would say that's determined.

15          **MR. THAKUR:**  All I would -- yes.

16          In any case, Your Honor, yes, we will do what this

17   court asks of us.  But we implore this court, implore this

18   court, to issue a ruling.

19          **THE COURT:**  Where is your client located?

20          **MR. THAKUR:**  In New Jersey, Your Honor.

21          **THE COURT:**  They chose this venue?

22          **MR. THAKUR:**  Your Honor, they did choose this venue.

23   We think it's a good venue.  So at least we thought it was a

24   good venue.  I say that in jest.  We still belief it's a good

25   venue.

```
 1          THE COURT:  Thank you, all.  The matter is submitted.

 2          Just one moment.

 3          (Pause)

 4          THE COURT:  Thank you.  The matter is submitted.

 5          MS. DeBRUIN:  Thank you, Your Honor.

 6          THE CLERK:  All rise.

 7          (At 10:19 a.m. the proceedings were adjourned.)

 8                          -   -   -   -

 9

10

11

12

13              CERTIFICATE OF REPORTER

14        I certify that the foregoing is a correct transcript

15  from the record of proceedings in the above-entitled matter.

16

17  DATE:   Tuesday, March 13, 2012

18

19                s/b Katherine Powell Sullivan
            _____

20        Katherine Powell Sullivan, CSR #5812, RPR, CRR
                      U.S. Court Reporter

21

22

23

24

25
```