MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD
arutherford@bsfllp.com
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br>v.<br><br>GOOGLE, INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF THE SUPPLEMENTAL EXPERT REPORT OF DR. ALAN J. COX**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. COPYRIGHT DAMAGES STANDARD .............................................................................. 2

III. BACKGROUND ..................................................................................................................... 3

    A. Prof. Cockburn's Copyright Damages Calculations ...................................................... 3

    B. Dr. Cox's Copyright Damages Calculations ................................................................. 4

IV. ARGUMENT ........................................................................................................................... 6

    A. Cox's Changes To His Infringer's Profits And Lost Profits Calculation Are Impermissible Under The Court's Order .................................................................. 6

    B. Dr. Cox's Application of Prof. Cockburn's Lowest Apportionment Percentage To Calculate Infringer's Profits Does Not Rest On A Reliable Foundation And Should Be Striken ................................................................. 8

    C. Cox's Alternative Calculation Of Infringer's Profits Based On The Parties' Revenue Sharing Discussion Should Be Stricken ........................................... 10

    D. Cox's Revisions To Lost Profits Do Not Rest On A Reliable Foundation And Should Be Stricken ............................................................................. 12

V. CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*On Davis v. The Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001) .................................................................................................. 12

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ................................................................................ 2, 3, 10, 11

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) .................................................................................................. 3

## STATUTES

17 U.S.C. § 504(b) .................................................................................................... 2, 3, 8, 12

**NOTICE OF MOTION AND MOTION TO STRIKE**

PLEASE TAKE NOTICE that Plaintiff Oracle America, Inc. ("Oracle") hereby moves to exclude portions of the opinions and testimony of Google, Inc.'s ("Google's") copyright damages expert Dr. Alan Cox.  This motion is based on the following memorandum of points and authorities, the Declaration of Meredith Dearborn and accompanying exhibits, the entire record in this matter, and on such evidence as may be presented at any hearing on this Motion, on a date to be determined by the Court, as well as any other ground the Court deems just and proper.

DATED: February 24, 2012                    BOIES, SCHILLER & FLEXNER LLP

                                                                                                     _____
Steven C. Holtzman
Attorneys for Plaintiff
ORACLE AMERICA, INC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In October 2011, Google's copyright damages expert, Dr. Alan Cox, calculated infringer's profits at $39.6 million and lost profits at $5.7 million. In a supplemental report served on February 17, 2012, Dr. Cox reduced those calculations to $2.3 million and $2.1 million, respectively, and added an entirely new infringer's profits analysis that estimates recoverable profits at $3.5 million. With his new report, Dr. Cox has thus reduced his infringer's profits calculations by approximately 90% and his lost profits calculations by approximately 65%.

These revised and new calculations should be stricken.

*First*, Dr. Cox's revised and new infringer's profits and lost profits calculations are impermissible under the Court's prior orders. On January 9, 2012, the Court struck Prof. Cockburn's reasonable royalty and lost license fee calculations, but did not strike his infringer's profits or lost profits calculations. (Dkt. 685 at 9.) On January 20, 2012, the Court entered an order permitting Prof. Cockburn to revise the stricken calculations and update his discussion of the econometric and conjoint studies. (Dkt. 702 at 2–3.) The Court permitted Google to serve revised damages reports in response, but stated: "Only revisions directly responsive to new material by Dr. Cockburn will be allowed." (*Id.*) Prof. Cockburn did not revise his opinions as to infringer's profits, lost profits, or the conjoint analysis. Dr. Cox's revisions to his infringer's profits and lost profits calculations, and his entirely new infringer's profits calculation, are all beyond the scope of what the Court permitted, and therefore should be stricken.

*Second*, Dr. Cox's new calculations should be stricken because they are fundamentally flawed. For infringer's profits, the copyright statute requires Dr. Cox to measure the portion of Android's real world profits that are attributable to factors other than the copyrighted APIs. Dr. Cox does not perform that analysis. He does not measure the contributions of the other elements of Android at all. Instead, he simply assumes that 5.1% of Android's profits would be attributable to Google's copyright infringement. This number comes from the lowest bound of Prof. Cockburn's hypothetical license fee determination, in which Prof. Cockburn determined that at least 5.1% of the *value of the 2006 license that Sun offered Google* was attributable to the copyrights in suit. Dr. Cox

1

applies the same 5.1% figure to reduce Oracle's lost profits damages. But the Court has previously held that there is no relationship between the value of the Bundle and the value of ***actual Android profits*** (or Oracle's actual lost profits) attributable to the infringed copyrights. (*See* Dkt. 685 at 7–9.) Indeed, Google previously accused Prof. Cockburn of mixing apples and oranges by using data showing the actual value to Android from 2011 to apportion the value of the 2006 Bundle. Dr. Cox has now done the same thing, only in reverse: by applying a 2006 apportionment to profits and losses through 2011, he has compared oranges to apples. His analysis must be stricken.

Dr. Cox's unauthorized and illogical revisions are particularly pernicious given that the Court has indicated that it will not permit Oracle to depose Dr. Cox about his new opinions or permit Prof. Cockburn to rebut them at trial. (Dkt. 702 at 2.) Dr. Cox's opinions that violate the Court's order will be highly prejudicial to Oracle and particularly misleading to the jury.

Oracle respectfully requests that the Court strike Sections VIII.B and VIII.D from Dr. Cox's supplemental report, which contain Dr. Cox's improper and flawed revisions to his infringer's profits and lost-profits calculations.

## II.     COPYRIGHT DAMAGES STANDARD

The copyright damages statute provides, in full:

> (b) **Actual Damages and Profits**. — The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

"Congress explicitly provides for two distinct monetary remedies—actual damages and recovery of wrongful profits. These remedies are two sides of the damages coin—the copyright holder's losses and the infringer's gains." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707–08 (9th Cir. 2004). "Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Id.* (quotation marks and citations omitted).

1   This Court recognized this important distinction between actual damages and infringer's

2   profits in its November 2011 ruling on Oracle's *Daubert* motion concerning the original reports of

3   Google's damages experts. In that ruling, the Court held that non-infringing alternatives are

4   irrelevant to recovery of wrongful profits. (Dkt. 632 at 7.) The Court wrote:

> Not acceptable, however, is allowing the existence of non-infringing alternatives to reduce recovery of wrongful profits. This is a distinct remedy for the purpose of *disgorgement*. Non-infringing alternatives have nothing to do with this. The motion to strike portions of Dr. Cox's report that opined that non-infringing alternatives would provide a basis for calculating wrongful profit is GRANTED.

8   (*Id.* (emphasis in original).)

9   The infringer's profits remedy eliminates incentives for would-be infringers, and prevents

10  "the infringer from unfairly benefitting from a wrongful act." *Polar Bear*, 384 F.3d at 708 (quotation

11  marks and citation omitted). Pursuant to this policy, Congress expressly provided that apportionment

12  of infringer's profits is the defendant's burden. 17 U.S.C. § 504(b). Oracle "is required to present

13  proof only of the infringer's gross revenue," *id.*, and then Google "bears the burden of apportioning

14  the profits that were not the result of infringement." *Polar Bear*, 384 F.3d at 711. Where there is

15  "imprecision in the computation of expenses, a court should err on the side of guaranteeing the

16  plaintiff a full recovery." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000)

17  (quotation marks and citation omitted).

### III.    BACKGROUND

#### A.     Prof. Cockburn's Copyright Damages Calculations

20  In his September 2011 report, Prof. Cockburn calculated Google's gross Android revenue

21  attributable to its infringement to be $823.9 million through the end of 2011. This calculation was

22  based on his review of evidence demonstrating the importance of the copyrighted APIs to attracting

23  Java developers and the importance of those developers to Android's success. Any further

24  apportionment of that $823.9 million was and is Google's burden under the Copyright Act.

25  Prof. Cockburn also calculated lost profits in two ways. [REDACTED]

26  [REDACTED]

27  [REDACTED]

28  [REDACTED]

3

ORACLE'S MOTION TO EXCLUDE PORTIONS OF SUPPLEMENTAL COX REPORT
CASE NO. CV 10-03561 WHA

██████████████████████ He calculated that Oracle's combined lost profits from these two sources are $136.2 million.

In his February 2012 report, Prof. Cockburn did not revise either the lost profits or the infringer's profits calculation. (*See* Cockburn Report ¶¶ 621–49, 650, 671–94, Ex. 20–22.)[1] This was consistent with the Court's orders. In its previous *Daubert* order striking portions of Prof. Cockburn's damages analysis, the Court specifically noted that "calculations of copyright unjust enrichment and copyright lost profits are not stricken." (Dkt. 685 at 13.) The Court permitted Prof. Cockburn only to revise "only those items stricken by the recent order" as well as the conjoint and econometrics analyses. (Dkt. 702 at 2–3.) Neither Prof. Cockburn nor Prof. Shugan revised any portion of the conjoint analysis; instead, Prof. Cockburn now uses that analysis in a manner that is consistent with the Court's orders. (*See* Cockburn Report ¶¶ 470–79 (discussing conjoint analysis); *id.* ¶¶ 416–20 (describing current use of the conjoint analysis); *id.* Exh. 5.)

### B. Dr. Cox's Copyright Damages Calculations

On October 3, 2011, Google served a copyright damages expert report signed by Dr. Cox. On October 24, 2011, Google served an errata list with a revised Dr. Cox report. In that revised report, Dr. Cox responded to Prof. Cockburn's infringer's profits calculation and opined that just $39.6 million of the $823.9 million in Android revenue is profit attributable to the copyrights-in-suit. (Declaration of Meredith Dearborn ("Dearborn Decl.") Ex. A (10/21/2011 Cox Report) at pp. 38–42 and Ex. 3a.) Dr. Cox also included alternative calculations in which he opined that Google's net profits from Android are negative, which would result in no infringer's profits. (*Id.* Ex. 2a, 2b.) Dr. Cox also opined that Oracle's lost profits were $5.7 million. (*Id.* pp. 58.)

Dr. Cox has never offered an affirmative infringer's profits analysis. In his October 2011 report, Dr. Cox relied—"for the sake of argument" only, despite the fact that Google has the affirmative burden of proving apportionment—on the conjoint analysis conducted by Dr. Shugan. (10/21/2011 Cox Report at p. 38, Ex. 3a).) Dr. Shugan's conjoint survey showed that consumers

---

[1] All references to the Cockburn Report refer to the February 9, 2012 revision to the February 3, 2012 report, which was submitted to the Court.

4

ORACLE'S MOTION TO EXCLUDE PORTIONS OF SUPPLEMENTAL COX REPORT
CASE NO. CV 10-03561 WHA

1   place significant value on the number of applications available, and, if fewer applications were
2   available, Android's market share would have declined by at least 8% to 19%, depending on certain
3   assumptions about the but-for world. (*See* Cockburn Report ¶ 653.) Ignoring the fact that Dr.
4   Shugan's measurements represented a floor, not a ceiling, and also ignoring the fact that Dr. Shugan
5   measured the *incremental* benefit of Google's copyright infringement over the next best alternative,
6   not the total benefit Google derived from its infringement, Dr. Cox nonetheless borrowed that figure,
7   reduced it to 8.1%, and applied that adjusted figure to his calculation of Google's Android revenues.
8   Dr. Cox did not perform any independent analysis that would enable him to apportion Google's
9   infringer's profits.
10   On February 17, 2012, in "response" to Prof. Cockburn's February 3 report, Google served a
11   supplemental damages report by Dr. Cox that significantly changes his analysis as to both infringer's
12   profits and lost profits. (Dearborn Decl. Ex. B (Supplemental Expert Report of Dr. Alan J. Cox)
13   ("Supp. Cox Report")) ¶¶ 29–44, Ex. 2a, 2b, 4a.)
14   On infringer's profits, Dr. Cox substantially reduces the figure that was included in his
15   October report. He includes two alternative calculations.
16   *First*, Dr. Cox, again "for the sake of argument," uses the lower end of the range of Prof.
17   Cockburn's "group and value" copyright apportionment percentage (5.1%) and applies that
18   percentage to all of Google's Android revenues, which ultimately yields infringer's profits of
19   "between $2.3 million" [*sic*]. (*Id.* ¶¶ 31, 33.)
20   *Second*, Dr. Cox treats Sun's 2006 proposal to license its intellectual property to Google in
21   exchange for a 10% revenue share (plus a license fee) as establishing that no more than 10% of real
22   world Android revenues could be attributable to Sun intellectual property. (*Id.* ¶¶ 37–39.) Dr. Cox
23   assumes that only 5.1% of that 10% (or 0.51% of the total) is attributable to the asserted copyrights.
24   (*Id.* ¶¶ 39–41.) Thus, he multiplies his estimate of Android's revenues by 0.51%, and arrives at an
25   amount of $3.5 million. (*Id.* ¶¶ 37–42.) In this alternate approach, Dr. Cox artificially limits the
26   value of the transaction to the 10% revenue share, disregarding the facts that the 2006 proposal he
27   relies on (a) would have provided Sun an additional $60 million in license fees, (b) included a grant
28   to Sun of rights to Google intellectual property, (c) would have required Google to promote the Sun

5
ORACLE'S MOTION TO EXCLUDE PORTIONS OF SUPPLEMENTAL COX REPORT
CASE NO. CV 10-03561 WHA

brand for the mobility market, and (d) would have allowed Sun to earn hundreds of millions of dollars from convoyed sales.

Although both of Dr. Cox's calculations rely on Prof. Cockburn's "group and value" lower bound copyright apportionment percentage, Dr. Cox concedes that percentage expressly applies only to the 2006 Bundle—not real world Android. (*See id.* ¶ 36.)

Dr. Cox also revises his lost profits figures, applying the same lower-bound "group and value" 5.1% figure with no explanation as to why it would be appropriate to use that number. (*Id.* ¶ 44, Ex. 4a.) His new opinion would award a total of $1.2 million for Java ME lost profits, or $0.9 million for Acadia lost profits, a substantial reduction from his previous opinion.

## IV.    ARGUMENT

### A.    Cox's Changes To His Infringer's Profits And Lost Profits Calculation Are Impermissible Under The Court's Order

In its order permitting Prof. Cockburn to file a third report, the Court limited the scope of any reports filed by Google's experts: "Only revisions directly responsive to new material by Dr. Cockburn will be allowed." (Dkt. 702 at 2.) That limitation was important because the Court was seeking to "streamline" this process. (*Id.*) Further, the Court's order limited Oracle's ability to challenge any revised reports filed by Google's experts, stating "no deposition shall be taken of Google's experts, Oracle may not serve a further reply report, and Oracle will not be allowed to present Dr. Cockburn as a rebuttal witness on the new material." (*Id.*) These limitations made it critically important that Google's experts not stray beyond the scope of Prof. Cockburn's revised report, because Oracle would not have a full opportunity to test any new opinions or revised calculations.

Dr. Cox's supplemental report violates the Court's order and prejudices Oracle. The Court did not permit Prof. Cockburn to make any changes to his infringer's profits or lost profits calculations, and Prof. Cockburn did not make any changes to those calculations. (*See* Dkt. 685 at 12–13; Dkt. 702 at 2–3.) Neither Prof. Cockburn nor Prof. Shugan revised the conjoint analysis. Nonetheless, Dr. Cox's supplemental report includes significant changes to his previous infringer's profits and lost profits calculations. As described above, those changes reduce Dr. Cox's prior

6

ORACLE'S MOTION TO EXCLUDE PORTIONS OF SUPPLEMENTAL COX REPORT
CASE NO. CV 10-03561 WHA

1  infringer's profits calculations from $39.6 million to $2.3–3.5 million, and reduce his lost profits
2  calculations from $5.7 million to $2.1 million.

3  Dr. Cox's arguments for why it was appropriate to make these changes are meritless. Dr. Cox
4  seeks to bypass the Court's order by stating: "Because Dr. Cockburn has revised his copyright
5  apportionment analysis, I now similarly revise my analysis of Google's allegedly wrongful profits, as
6  shown in Exhibits 2a and 2b." (Dearborn Dec. Ex. B (Supp. Cox Report) ¶ 31).) This is nonsense.
7  Prof. Cockburn revised his apportionment analysis only for the purpose of calculating a reasonable
8  royalty and lost license fee, and only as to the portion of the *2006 license bundle that Sun offered*
9  *Google* properly attributable to the intellectual property in suit. Prof. Cockburn offered no
10 affirmative opinion at all as to the percentage of *Android's profits* attributable to the copyrighted
11 APIs in suit, other than to opine that the copyrighted APIs are a material and indeed very significant
12 element in Android's success. Any more is Google's burden. As discussed below, conflating the
13 2006 license bundle and Android's actual profits is precisely what the Court has previously rejected.
14 Prof. Cockburn does not have a "copyright apportionment analysis" in the sense in which Dr. Cox is
15 attempting to use that term, and he made no revision to any infringer's profits analysis that warrants
16 Dr. Cox's changes.

17 Dr. Cox also asserts that "Dr. Cockburn backs away from his reliance on Dr. Shugan, and
18 instead proposes two new methodologies, 'group and value' and 'independent significance.'"
19 (Dearborn Decl. Ex. B (Supp. Cox Report) ¶ 36; *see also id.* ¶ 44 (claiming that revisions to lost
20 profits are appropriate because "Dr. Cockburn is now placing little weight on the Shugan analysis.").)
21 This is both false and inconsistent with what Google itself repeatedly argues in its *Daubert* motion—
22 filed precisely the same day—regarding Prof. Cockburn's third report. (*See* Dkt. 720 at 3, 14–15
23 (arguing that Prof. Cockburn "relies" on the conjoint analysis in multiple respects).) Prof. Cockburn
24 continues to use the conjoint analysis. (*See* Cockburn Report ¶¶ 411–12, 416–20, 459, Exs. 5–11,
25 35–36; *see also* Dearborn Decl. Ex. C (Excerpts from the 2/10/12 Deposition of Iain M. Cockburn) at
26 30:15–23, 31:1–32:21.) Prof. Cockburn did not "back away" from the conjoint analysis at all, much
27 less in any way that justifies Dr. Cox's modifications to his infringer's profits or lost profits
28 calculations. Dr. Shugan's conjoint analysis has not been changed in any respect at all.

But even if Prof. Cockburn completely abandoned conjoint analysis as a basis for his opinions—or if Google succeeded in its efforts to exclude —that would not justify Dr. Cox's belated introduction of a completely new method of measuring infringer's profits. It has always been Google's burden to apportion infringer's profits. Google decided it would meet that burden by relying on evidence that it simultaneously argues should never be admitted, and if admitted, should never be believed by a jury. Now Google faces the consequence of its own cynical tactics, but it cannot blame that consequence on Prof. Cockburn.

Dr. Cox also offers a "different way" to calculate infringer's profits in his supplemental report, which never appeared in his prior report and which is in no way "directly responsive to new material by Dr. Cockburn." (Dkt. 702 at 2.) Dr. Cox begins from the license the parties were actually negotiating in 2006, and he then suggests that the revenue share portion of that license (10%) was an "implicit proposal" that 90% of revenues would be "available to Google to recover all its costs and cover any profit attributable to factors other than Sun's IP." (Dearborn Decl. Ex. B (Supp. Cox Report) ¶ 37–39). The *only* step Prof. Cox takes that is borrowed from Prof. Cockburn's new report is to apply the 5.1% lower-bound "group and value" apportionment figure to the 10% of revenues Sun would have earned. (*Id.* ¶ 41.) With or without the use of that apportionment figure, this is an *entirely new framework* by which Dr. Cox purports to calculate infringer's profits. It is fatally flawed, as described below, but it is also a naked attempt to shoehorn a wholly new analysis into what should have been a narrowly cabined rebuttal report. Like his "revised" infringer's profits analysis, this wholly new "different" approach should be stricken as procedurally improper, particularly in light of the fact that Oracle may not depose Dr. Cox or rebut this wholly new opinion at trial.

### B. Dr. Cox's Application of Prof. Cockburn's Lowest Apportionment Percentage To Calculate Infringer's Profits Does Not Rest On A Reliable Foundation And Should Be Stricken

Google's burden for apportioning infringer's profits is straightforward: it must prove "the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Dr. Cox did not try to do that. Instead, he assumed that the percentage of Android's real world profits

1  attributable to Google's infringement of copyrighted API specifications must be the same as the
2  percentage of the 2006 Bundle attributable to copyrighted API specifications.

3  When the Court struck the apportionment analysis in Prof. Cockburn's second damages
4  report, it held that Prof. Cockburn erroneously "failed to account for [the] disconnect" between the
5  universe of know-how included in Sun's 2006 offer of a license and the universe of know-how
6  included in Android during 2008–2011.  (Dkt. 685 at 8.)  The Court concluded that Prof. Cockburn's
7  apportionment of the 2006 Bundle had an "apples-and-oranges problem" because the 2006 Bundle
8  "does not bear any relationship" to 2008–11 Android revenues, "for all the record shows."  (*Id.*)

9  Dr. Cox's revised calculations are impermissible for the same reasons articulated in the
10  Court's order striking Prof. Cockburn's second report.  Dr. Cox borrows the lowest possible bound of
11  the apportionment percentage from Prof. Cockburn's analysis of *the 2006 license bundle*—5.1%, out
12  of a range of 5.1% to 16.4% (*see* Cockburn Report ¶ 420)—and applies that apportionment
13  percentage to *actual Android revenues* through 2011 to reduce his infringer's profits calculation to
14  $2.3 million.  (Dearborn Decl. Ex. B (Supp. Cox Report) ¶ 33.)  This is not appropriate.  The Court
15  has already rejected the notion that there is a direct correlation between the relative value of the
16  copyrights to the 2006 license bundle, on the one hand, and the relative value of the copyrights to
17  revenues generated for Google by Android, on the other hand.  (Dkt. 685 at 7–9.)  Dr. Cox just
18  ignores the Court's ruling.

19  In fact, Dr. Cox admits that his use of Prof. Cockburn's apportionment percentage is
20  inappropriate.  Dr. Cox writes:

> In his latest report, Dr. Cockburn backs away from his reliance on Dr. Shugan, and instead proposes two new methodologies, "group and value" and "independent significance."  Neither of these approaches purports to determine the portions of the sales attributable to the APIs at issue in this case.  Instead, they purport to determine the portion of *the 2006 bundle of rights* attributable to the APIs.  This means they cannot serve as a direct replacement for the conjoint-based apportionment that Dr. Cockburn previously relied upon.

25  (Dearborn Decl. Ex. B (Supp. Cox Report) ¶ 36) (emphasis in original).  Dr. Cox does not explain
26  *why* his use of Prof. Cockburn's apportionment analysis is scientifically or logically sound at all.
27  Instead, he only claims, without any analysis or explanation, that his use of those percentages
28  "overstates the profits attributable to the API copyrights."  (*Id.* ¶ 32.)  This is, of course, the same

1   reasoning that the Court previously found inadequate . (*See* Dkt. 685 at 8 ("It is no answer to say, as
2   Dr. Cockburn did in his footnote 327, that his approach is 'conservative.'").)
3         Even if Dr. Cox's use of the 5.1 percentage figure were analytically sound—and it is not—it
4   could not be conservative. Prof. Cockburn, through the group-and-value approach, measured the
5   *relative* value of the copyrights and the patents as compared to the other elements of the 2006 license
6   bundle. Google's burden with respect to infringer's profits, by contrast, is to present some
7   methodology by which to measure the *absolute* value that the copyrights provided to Google's
8   advertising revenues, to avoid full disgorgement. Anything less would not accomplish the
9   disgorgement aims of the statute. *See Polar Bear*, 384 F.3d at 708. Moreover, Prof. Cockburn
10  determined that the proper apportionment percentage of the 2006 Bundle for the copyrights could be
11  16.4% or higher. (Cockburn Report ¶ 420.) Dr. Cox has not explained why the lower bound of Prof.
12  Cockburn's range is appropriate to use in the context of his infringer's profits analysis.

### C. Cox's Alternative Calculation Of Infringer's Profits Based On The Parties' Revenue Sharing Discussion Should Be Stricken

15        Dr. Cox's new and "different way" to calculate Google's profits attributable to the
16  infringement fares no better. In his alternative calculation, Dr. Cox begins with the $690 million in
17  revenues that he claims Android had earned as of September 2011. Once again, he fails to prove the
18  elements of profit attributable to factors other than the copyrighted work. Instead, he constructs the
19  following argument: In 2006, Sun proposed to license its technology to Google in exchange for a
20  10% royalty. (Dearborn Decl. Ex. B (Supp. Cox Report) ¶ 39.) According to Dr. Cox, that
21  establishes that no more than 10% of real world Android revenues could be attributable to Sun
22  intellectual property. (*Id.*) Dr. Cox once again relies on Prof. Cockburn's 5.1% lower bound
23  apportionment figure to assert that no more than 5.1% of the 10% of real world Android revenues
24  (0.51%) could be attributable to Google's copyright infringement. Ergo, reasons Dr. Cox, 99.49% of
25  Android's real world profits are attributable to factors other than the copyrighted Java API
26  specifications. (*Id.*) Thus, he multiplies his estimate of Android's revenues by 0.51%, and arrives at
27  an amount of $3.5 million. (*Id.* ¶¶ 37–42.)
28        This method is even more profoundly flawed than Dr. Cox's first method. No court has ever

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1  approved of a defendant using a previously negotiated royalty rate to meet its burden to apportion the
2  profits it subsequently earned through infringement.

3  *First*, this approach suffers from the same problem that undermines his other calculation, as
4  explained above. The fact that Prof. Cockburn concludes that, at the lowest bound, the copyrighted
5  APIs represented at least 5.1% of the 2006 license bundle does not permit Dr. Cox to conclude that
6  the same apportionment percentage applies to Android's real world revenues.

7  *Second*, Dr. Cox's analysis cannot meet Google's burden under Section 504(b). Whatever
8  amounts the parties hypothetically might have agreed on in 2006, that *ex ante* division of value does
9  not establish the amount by which Google subsequently actually profited from Android's
10 infringement of the Java APIs.

11 *Third*, using a royalty rate negotiated *ex ante* to apportion infringer's profits will
12 systematically understate copyright damages. The amount that Google rationally would have been
13 willing to pay Sun for a license necessarily will be less than the amount Google expected to profit
14 from that same license. Of course, the point of the infringer's profits remedy is to deter infringement
15 by forcing the infringer to disgorge whatever gains it earned as a result of the infringement. *Polar*
16 *Bear*, 384 F.3d at 707–08 (discussing "infringer's gains"). Dr. Cox's approach would subvert that
17 rule. A willful infringer would bargain for the lowest possible royalty, break off negotiations once
18 favorable terms were proposed, and then deliberately infringe. If the infringer avoided getting
19 caught, it would pay nothing. If it were caught, it would argue—just as Google does now—that the
20 infringer's profits remedy should be no greater than what Google was prepared to pay in the first
21 place. This is even more brazen than the "Soviet-style negotiation" Google previously advocated,
22 and the Court rejected. (Dkt. 230 at 10.)

23 *Fourth*, even if Dr. Cox's second approach were sound—and it is not—his use of the 10%
24 revenue share to cap the value of the copyrights is nonsensical. The 2006 proposal would have
25 provided Sun with substantial value above and beyond a 10% share of Android revenues, including a
26 license fee of $60 million for the first three years, rights to Google intellectual property, the
27 advantage of having Google promote the Java brand in the mobile market, a compatible Android
28 implementation, and hundreds of millions of dollars from convoyed sales.

11

ORACLE'S MOTION TO EXCLUDE PORTIONS OF SUPPLEMENTAL COX REPORT
CASE NO. CV 10-03561 WHA

Dr. Cox's alternate approach to infringer's profits is unsound factually, legally, and logically, and it should be stricken.

### D. Cox's Revisions To Lost Profits Do Not Rest On A Reliable Foundation And Should Be Stricken

Dr. Cox has revised his lost profits analysis to apply the same 5.1% apportionment percentage, derived from Prof. Cockburn's group-and-value apportionment analysis. (Dearborn Decl. Ex. B (Supp. Cox Report) ¶ 44).) This is unsound for the same reasons described above. Dr. Cox does not explain why it is appropriate to apply a figure derived from a group-and-value apportionment exercise to Sun's lost profits, and there is no basis to do so. On this ground alone, as well as the fact that Prof. Cockburn made no revisions to his lost profits analysis and Dr. Cox therefore may not either, the Court should strike Dr. Cox's supplemental lost profits opinions.

Moreover, the Copyright Act does not provide for any apportionment of lost profits at all. *See* 17 U.S.C. § 504(b). Prof. Cockburn already accounted for the degree to which Google's infringement caused Sun, and now Oracle, harm in calculating the lost-profits figures shown in his Report. (Cockburn Report ¶¶ 671–94.)



The Copyright Act provides for "actual damages" to account for the copyright holder's actual losses. Lost profits are lost revenue less costs avoided. *See On Davis v. The Gap, Inc*., 246 F.3d 152, 164–65 (2d Cir. 2001). Prof. Cockburn already deducted avoided costs. (*See* Cockburn Report Exs. 20 & 21.) Oracle will show at trial that the entirety of the remaining losses are attributable to Android's infringement. Google may argue otherwise, but Dr. Cox should not be permitted to present a misleading and unreliable calculation that mechanically applies an inapposite 5.1%

apportionment figure to Oracle's lost profits with no explanation at all as to why that figure bears any relationship to the harm caused by Android's infringement.

## V.  CONCLUSION

For all these reasons, the revisions in Dr. Cox's supplemental report to the infringer's profits and lost profits figures should be stricken, and Dr. Cox should not be permitted to testify regarding them.

Dated: February 24, 2012              BOIES, SCHILLER & FLEXNER LLP

By: */s/ Steven C. Holtzman*
    Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.