# EXHIBIT D

Highly Confidential - Attorneys' Eyes Only

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3           SAN FRANCISCO DIVISION

4                ---oOo---

5

6   ORACLE AMERICA, INC.,          )

7          Plaintiff,              )

8     vs.                          )   No. CV 10-03561 WHA

9   GOOGLE, INC.,                  )

10         Defendant.              )

11   _____)

12

13

14

15      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16      VIDEOTAPED DEPOSITION OF HINKMOND WONG

17        THURSDAY, FEBRUARY 16, 2012

18

19

20

21

22

23

24

25   PAGES 1 - 161

                                        Page 1

Highly Confidential - Attorneys' Eyes Only

1

2

3

4

5

6

7        Videotaped Deposition of HINKMOND WONG, taken on

8   behalf of Defendant, at Morrison & Foerster, 755 Page

9   Mill Road, Palo Alto, California, commencing at

10   9:40 a.m., Thursday, February 16, 2012, before Sandra

11   Lee Hockin, CSR 7372.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    Page 2

Highly Confidential - Attorneys' Eyes Only

```
1    APPEARANCE OF COUNSEL:

2

3    FOR PLAINTIFF ORACLE AMERICA, INC.:

4              BOIES, SCHILLER & FLEXNER, LLP

5              BY:  FRED NORTON, ESQ.

6              1999 Harrison Street, Suite 900

7              Oakland, California 94612

8              (510) 874-1000

9              fnorton@bsfllp.com

10

11   FOR DEFENDANT GOOGLE, INC.:

12             KEKER & VAN NEST

13             BY:  EUGENE M. PAIGE, ESQ.

14             710 Sansome Street

15             San Francisco, California 94111

16             (415) 391-5400

17             emp@kvn.com

18

19   Also present:

20   Sean Grant, Videographer

21   Andrew Temkin, in-house counsel for Oracle

22

23

24

25

                                      Page 3
```

Highly Confidential - Attorneys' Eyes Only

1                       HINKMOND WONG

2           having been duly sworn, testified as follows:

3                          ---o0o---

4               THE VIDEOGRAPHER:  Good morning.  We are on

5     the record.  The time is 9:42 a.m. and the date is          09:42

6     February 16, 2012.  This is the videotaped deposition

7     of Mr. Hinkmond Wong.

8               My name is Sean Grant, here with our court

9     reporter, Sandy Hockin, here from Veritext National

10    Deposition and Litigation Services at the request of       09:42

11    counsel for the defendant.

12              This deposition is being held at Morrison

13    Foerster in Palo Alto, California.  The caption of

14    this case is Oracle America, Inc., versus Google,

15    Inc., Case No. CV 10-03561 WHA.                            09:43

16              Please note that audio and video recording

17    will take place unless all parties agree to go off of

18    the record.  Microphones are sensitive and may pick up

19    whispers, private conversations, and cellular

20    interference.                                              09:43

21              At this time, will counsel and all present

22    please identify themselves, beginning with the

23    witness.

24              THE WITNESS:  My name is Hinkmond B. Wong.

25              MR. NORTON:  Fred Norton of Boies, Schiller &    09:43

                                                          Page 4

Highly Confidential - Attorneys' Eyes Only



Page 87

Highly Confidential - Attorneys' Eyes Only



11:46

Page 88

Highly Confidential - Attorneys' Eyes Only



Page 89

Highly Confidential - Attorneys' Eyes Only



Page 90

Highly Confidential - Attorneys' Eyes Only



Page 92

Highly Confidential - Attorneys' Eyes Only



Page 93

Highly Confidential - Attorneys' Eyes Only

11          I think we have to take a break to change the

12    tape now, unfortunately.

13          THE VIDEO OPERATOR:  Going off the record.

14    The time is 11:52 a.m.

15          (Recess taken.)                              11:52

16          THE VIDEO OPERATOR:  Back on the record.  The

17    time is 11:59 a.m.

18    BY MR. PAIGE:

19       Q.  Mr. Wong, welcome back.  Do you understand

20    you're still under oath?                           11:59

21       A.  Yes.

22       Q.  I've put before you Exhibit 431, which is

23    the '104 patent; Exhibit 131, which is the '520

24    patent; Exhibit 429, which is the '476 patent;

25    Exhibit 164, which is the '205 patent; Exhibit 24,   11:59

                                                    Page 94

Highly Confidential - Attorneys' Eyes Only

```
1    which is the '720 patent; and Exhibit 18, which is

2    the '702 patent.

3         A.  Yes.
```



Page 95

Highly Confidential - Attorneys' Eyes Only



Page 96

Highly Confidential - Attorneys' Eyes Only



Page 97

Highly Confidential - Attorneys' Eyes Only

```
 1              MR. NORTON:  Objection to form.

 2              THE WITNESS:  Again, I don't -- I don't know.

 3   BY MR. PAIGE:

 4       Q.  Was it five? ten?

 5       A.  It was probably less than five.          12:04

 6       Q.  Okay.  So fewer than five patents, you spent

 7   30 minutes on.  Is that it?

 8              MR. NORTON:  Objection to form.

 9              THE WITNESS:  Given -- given that we spent

10   time covering all of the patents, then there was no   12:04

11   patent that we covered more than 30 minutes

12   individually.

13   BY MR. PAIGE:

14       Q.  When you were deciding the scale of 1 to 3 to

15   rank these six patents --                         12:04

16       A.  Yes.

17       Q.  -- did you draw on the past work you had done

18   to perform that evaluation of 1 to 3?

19       A.  On the past work that I have done?

20       Q.  Yes.                                      12:04.

21       A.  So that means for the patent analysis?

22       Q.  Yes.

23       A.  I -- I had that knowledge, but I couldn't

24   find that, so that I used mainly -- what the goal of

25   the project was at hand was to match what Google had  12:04
```

Page 98

Highly Confidential - Attorneys' Eyes Only

1    requested and required in 2006 during the business

2    negotiation.  That was foremost on my mind and my

3    focus when rating the 1-through-3 scale --

4        Q.  Okay.

5        A.  -- for the patents.                           12:05

6        Q.  And I hear you saying "mainly" and "mostly."

7        A.  Right.

8        Q.  I want to know if you used any of the past

9    analysis that you had done when evaluating these on a

10   1 to 3 scale for purposes of this project.           12:05

11       A.  No, not consciously.

12       Q.  What do you mean by "not consciously"?

13       A.  Of course I had the knowledge of doing

14   analysis, but I made sure to confine my bias and

15   confine my focus when I'm doing the rating to just the   12:05

16   goal at hand, which is to match what Google had

17   requested in 2006.

18       Q.  When you say "confine my bias," what do you

19   mean by "bias"?

20       A.  Well, whatever information I had from the    12:05

21   patent analysis.

22       Q.  How was that a bias?

23       A.  Actually, maybe it's not bias.  It's more of

24   knowledge, whatever my knowledge was from 2006.

25       Q.  Okay.  So you chose not to take into account   12:06

Page 99

1    information that you had about those patents in

2    carrying out this analysis; is that right?

3        A.  I chose to make it first and foremost about

4    what Google had requested and required in 2006 in the

5    business negotiations.                          12:06

6        Q.  But did you use the information you had

7    learned from past analysis in order to rank these

8    1 through 3?

9        A.  Not to my knowledge.

10       Q.  What do you mean, "not to your knowledge"?   12:06

11       A.  Of course it was in my brain, so all that

12   experience of the patent analysis was in my brain, but

13   I confined that so -- I confined that so that I

14   focused only on the task at hand, which was the --

15   qualifying that as what Google had requested for a     12:06

16   smartphone for what we were doing in business

17   negotiations during 2006.

18       Q.  Did you have any writings memorializing your

19   analysis of those six patents?

20       A.  Did I have any writings?                 12:06

21           MR. NORTON:  Objection to form.

22           THE WITNESS:  So, personally, it wasn't my

23   writings, but -- well, that's privileged information,

24   but I don't -- I don't know if we -- I can give that?

25           MR. NORTON:  Can I help a little bit?     12:07

Page 100

Highly Confidential - Attorneys' Eyes Only



```
1          THE WITNESS:  I'm not sure --

2          MR. NORTON:  I think -- I don't think there's

3     a privilege issue here.  He may misunderstand your

4     question.  If you want me to help or...

5     BY MR. PAIGE:                              12:07
```

Page 101

Highly Confidential - Attorneys' Eyes Only



Page 102

Highly Confidential - Attorneys' Eyes Only



Page 139

Highly Confidential - Attorneys' Eyes Only



```
22          MR. PAIGE:   Okay.   With that, I don't believe

23   I have any further questions four Mr. Wong.   Thank you

24   very much for your time.

25          MR. NORTON:   I will have a question, but I'd      01:44
```

Page 140

Highly Confidential - Attorneys' Eyes Only

1    like to change chairs, if you don't mind.  I don't

2    think we need to go off the record.  Why don't you

3    just stay in your seat.

4            THE WITNESS:  All right.

5            (Discussion off the record.)

6            MR. NORTON:  All right.  We'll still on the

7    record.

8                         EXAMINATION

9    BY MR. NORTON:

10       Q.  Mr. Wong, I just have a couple of questions        01:46

11   for you.  I don't want to take too much more of your

12   time.

13           In the stack of documents that were marked

14   originally, one of them is Exhibit 563, and it's the

15   document that was identified as a blog entry by you.     01:46

16       A.  Oh, okay.

17       Q.  And I apologize, I need you to look at 564,

18   which was the other version of the blog entry by you.

19       A.  I have 564, yes.

20       Q.  You have that in front of you?                    01:46

21       A.  Yes, I do.

22       Q.  All right.  And if you would turn to the page

23   that includes the comment by you --

24       A.  Yes.

25       Q.  -- that Mr. Paige asked you some questions        01:46

                                              Page 141

1    STATE OF CALIFORNIA    ) ss:

2

3      I, SANDRA LEE HOCKIN, C.S.R. No. 7372, do hereby

4    certify:

5        That the foregoing deposition testimony was

6    taken before me at the time and place therein set

7    forth and at which time the witness was administered

8    the oath;

9        That the testimony of the witness and all

10   objections made by counsel at the time of the

11   examination were recorded stenographically by me,

12   and were thereafter transcribed under my direction

13   and supervision, and that the foregoing pages

14   contain a full, true and accurate record of all

15   proceedings and testimony to the best of my skill

16   and ability.

17       I further certify that I am neither counsel for

18   any party to said action, nor am I related to any

19   party to said action, nor am I in any way interested

20   in the outcome thereof.

21       IN WITNESS WHEREOF, I have subscribed my name

22   this 17th day of February, 2012.

23

24       _Sandra Lee Hockin_

25       SANDRA LEE HOCKIN, C.S.R. No. 7372

                                        Page 158