MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
FRED NORTON (Bar No. 224725)
fnorton@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax)

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>             Plaintiff,<br><br>     v.<br><br>GOOGLE, INC.<br><br>             Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA, INC.'S STATEMENT RESPONDING TO THE COURT'S ORDER CONCERNING DR. COCKBURN'S THRID REPORT [DKT. NO. 785]**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: The Honorable William H. Alsup |

Oracle America, Inc. submits this statement in response to the Court's order concerning Prof. Cockburn's third report. (Dkt. 785.) The Court directed the parties to address three issues: (1) how Prof. Cockburn calculates the value of the '520 patent, (2) whether Oracle's dismissal of patents other than the '104 and '520 affects the copyright allocation, and (3) how the allocation of the value of the copyrights in the 2006 bundle will be presented to the jury if Oracle asserts only the '104 and '520 patents at trial. (*Id.* at 18-19.)

## I.     Request For Clarification of Starting Point Adjustment

In order to provide calculations along with the explanations requested by the Court, Oracle requests a clarification of the Court's required adjustment to the starting point.

In the group and value approach described in his Report, Prof. Cockburn deducted $86.15 million from the 2006 starting point to reflect expenses that Sun expected to incur in connection with Project Armstrong, including expenses to develop and implement additional class libraries and to develop a virtual machine to Android's specifications. (Cockburn Third Report ¶¶ 363, 371, 382.) In its Order, the Court directed Prof. Cockburn to make an additional deduction: to "adjust his group-and-value calculation by deducting $37 million, his calculated value of the unasserted copyrights, from the adjusted starting point of $598 million. Accordingly, $561 million shall be the total value of the copyrights in suit and 569 patents in Sun's Java mobile patent portfolio." (Dkt. 785 at 10-11.)

Oracle seeks clarification of how the Court calculated the $37 million figure. Prof. Cockburn determined that the cost of writing code to develop and implement all of the class libraries in Android, including class libraries that did not yet exist, was no greater than $32.4 million. (Cockburn Third Report ¶ 379 & Exh. 30.) Separately, Prof. Cockburn determined that the value to Google of taking an already-written virtual machine from Sun could be no greater than $11.3 million, which is Google's entire actual cost of developing the Dalvik VM. (*Id.* ¶ 366.) The $37 million measure does not appear in Prof Cockburn's report as the value of any unasserted copyrights.

The Court may have calculated the $37 million by adding the $3.8 million that appears in Exhibit 29 (all Google engineering internal engineering costs for all APIs) and the $32.41 million that appears in Exhibit 30 (Google cost of developing Android packages, libraries, and APIs), of Prof. Cockburn's third report. (These two figures add up to $36.2 million.) However, it would be incorrect

1

to add those together because the relevant portion of $3.8 million calculated in Exhibit 29 is already included in Exhibit 30. The total engineering expense associated with API packages that Google possibly could have avoided by partnering with Sun is $32.4 million, not $37 million. (*Id.* ¶¶ 379-80.)

It is thus unclear to Oracle whether the Court intended to require

(1) a deduction for the cost of implementing all class libraries (both existing and to be developed), which would be $32.4 million;

(2) a deduction for the cost of implementing all class libraries (both existing and to be developed) <u>and</u> for the full cost of developing the Dalvik virtual machine, which would be $43.7 million; or

(3) some other deduction or combination of deductions that equal $37 million.

Absent further guidance, Oracle will assume that the Court intended the second set of deductions described above, amounting to $43.7 million.[1] All calculations below assume a further deduction of $43.7 million, and consequently adjust the relevant starting point to $553.8 million. If the Court orders Prof. Cockburn to use some other amount, Prof. Cockburn can re-calculate these amounts.

## II.   Calculation of Patent Damages Pursuant to the Court's Order

The Court ruled that Prof. Cockburn would be permitted to offer a reasonable royalty opinion based only on his lower bound calculation, "in which each patent in his top 22 has equal value to each other." (Dkt. 785 at 5.) Using the adjusted starting point of $553.8 million, and after allocating $27.7 million of the 2006 Bundle to the copyrighted APIs,[2] the 569 patents in the Sun mobile Java portfolio would have a total value of at least $526.1 million (based only on Google's anticipated payments to Sun and Sun's Project Armstrong projections, and only for the first three years). Applying the same patent value distribution curve used in the third report, the top 22 patents in the portfolio of 569 would have an

---

[1] Oracle still contends that no such further adjustment is appropriate, for the reasons described in Prof. Cockburn's report and Oracle's briefing to the Court. Nonetheless, Oracle understands that the Court has ruled, and will of course abide by that ruling. Oracle seeks clarification solely to ensure that Prof. Cockburn is able to explain to the jury the specific bases for, and amounts of, all adjustments to the 2006 starting point.

[2] To apply the apportionment approach allowed by the Court, Prof. Cockburn would have to assume that each of the patents in the top 22 of the 569 has equal value, and that the top 22 patents represent at least 77.1% of the value of the patents in the 2006 Bundle. As previously disclosed, Prof. Cockburn would further assume that the value of the copyrights in the Bundle is one half the combined value of the '104, '205, and '720 patents. A formula expressing this relationship, which can be solved to provide numbers for the patents and copyrights, is $(22x / 0.771) + (3x / 2) = \$553.8$ million, in which $x$ is the average value of each patent in the top 22.

2

ORACLE'S STATEMENT RE THE COURT'S ORDER ON COCKBURN'S REPORT [DKT. NO. 785]
CASE NO. CV 10-03561 WHA

aggregate value of $406 million, and an average value of $18.4 million per patent. Thus, under the only approach permitted by the Court's order, the value of the '104 patent, before any other adjustments, would be at least $18.4 million for the first three years.[3] The other potential adjustments are identified below:

| | |
|---|---|
| Value of '104 patent: | $18.4 million |
| US only damages: | $18.1 million |
| US only damages and reduced for marking: | $15.3 million |
| US only damages, reduced for marking, limited to accused devices: | $4.1 million |

Prof. Cockburn can calculate the three-year value of the '520 patent, under the only approach permitted by the Court, based on the average value of the 547 patents in the portfolio that are not included in the top 22. Again, the 569 patents in the Sun mobile Java portfolio had a total value of $526.1 million over the first three years; the top 22 patents in the portfolio of 569 would have an aggregate value of $406 million. Accordingly, the 547 lower-ranked patents would be worth $120 million ($526 – $406) in aggregate, and the average value of those patents, under the only approach permitted by the Court, would be at least $0.22 million. Because the engineers' rating of the '520 patent and its technology block indicated that it was more important, in terms of its technological significance, than most of the patents in the portfolio, using this average would likely understate the value of the '520 patent. Thus, the value of the '520 patent, before any other adjustments, would be at least $0.22 million for the first three years. The other potential adjustments are:

| | |
|---|---|
| Value of '520 patent: | $0.22 million |
| US only damages: | $0.22 million |
| US only damages and reduced for marking: | $0.18 million |
| US only damages, reduced for marking, limited to accused devices: | $0.05 million |

These calculations are consistent with the methodology approved by the Court. If necessary, Prof. Cockburn could serve a one-page supplement to his report that includes these calculations.

---

[3] Oracle uses the term "value" in this statement to be consistent with the Court's order. (Dkt. 785 at 18-19.) As explained in Prof. Cockburn's report, these calculations do not account for substantial unquantifiable losses to Oracle (including fragmentation) and gains to Google. These calculations do not represent the actual value of the intellectual property or the full measure of damages, but rather represent the minimum value for the two patents and copyrights based on the lower bound of the group-and-value method for a three-year license.

### III. Calculation of Copyright Damages Pursuant to the Court's Order

The Court directed the parties to address how the order on Prof. Cockburn's third report "affects, if at all, the copyright allocation, and how the one-half formula will be presented to the jury if Oracle only asserts one-third of the original denominator, the *three* patents in suit." (Dkt. 785 at 19 (emphasis in original).)

In his third report, Prof. Cockburn concluded that if the lower bound of the group and value apportionment method must be applied, the copyright lost license fee is at least $34.7 million through the end of 2011. (Cockburn Third Report ¶ 6.) This amount, like the patent apportionment, was based only on Google's anticipated payments to Sun and Sun's Project Armstrong projections for the first three years, and does not fully account for the substantial harm that Sun would have reasonably expected from an incompatible Android. This amount must be re-calculated based on the Court's Order and the requirement of an additional reduction of the starting point. Removing $43.7 million (assuming this is the required reductions for the value of unasserted copyrights) from the starting point and assuming that each of the '104, '205, and '720 patents have an equal value, this amount becomes at least $27.7 million. (See footnote 2, above.)

Other than that adjustment, the Court's order does not disturb Prof. Cockburn's allocation between the copyrights and the rest of the 2006 Bundle. At the March 7 hearing, both counsel for Google and counsel for Oracle agreed that even if the patents were invalid or not infringed, the value attributed to the copyrights would still be the same. (*See* 3/7/2012 Tr. at 107:16-108:3 (Google counsel agreeing that if Prof. Cockburn were allowed to use the 2:1 ratio indicated by the conjoint survey, "that would allow for a patent by patent liability determination" "[w]ith the copyright, still, I think being half of what the broader number would have been had all those patents been invalid and infringed."); 3/7/2012 Tr. at 108:25-109:21 (Oracle counsel agreeing that the "copyright API number remains the same regardless, regardless of which patents are valid or not").)

The conjoint survey did not directly measure the value of copyrights or patents. It measured the consumer demand for particular Android attributes enabled by Google's copyright and patent infringement. As previously disclosed, Oracle engineers disabled the Android features that are enabled by infringement of the '104, '205, and '720 patents, alone and in various combinations. When they did

4

1   so, application launch speed was adversely affected. (Cockburn Third Report ¶¶ 24, 428, 456, Exhs. 4-
2   5). The conjoint survey measured the demand for the incremental increase in application launch speed
3   enabled by those infringing Android features (as well as the features that infringe only the '104 and
4   '205 patents). The conjoint survey also measured consumer demand for having a large number of
5   available applications, an attribute associated with the infringing use of the copyrighted APIs.

6   As Prof. Cockburn has explained, the data yielded by the survey indicates that consumers value
7   the incremental speed benefits twice as much as they value the incremental number of applications.
8   That relationship exists independent of any particular claim of infringement. Moreover, using the
9   group and value approach in the manner permitted by the Court, a minimum value for the '104, '205,
10  and '720 patents can be established. That minimum value is derived by apportioning the 2006 Bundle
11  in the manner permitted by the Court, using the Java engineers' analysis and the PatVal distribution
12  curve. Consequently, that minimum apportioned value for those three patents, for a three-year license,
13  is independent of any claim that the '104, '205, and '720 patents are in fact valid or infringed.

14  At trial, Prof. Cockburn can (1) explain to the jury the relationship between the value of
15  incremental speed and incremental applications as demonstrated by the conjoint analysis, (2) explain
16  that the combination of the '104, '205, and '720 patents would be expected to provide, and in fact has
17  been demonstrated to provide, performance enhancements equivalent to the application launch speed
18  benefit tested in the conjoint analysis, and (3) testify as to the combined value of those three patents as
19  indicated by the lower bound group and value approach permitted by the Court. This testimony would
20  allow the jury to conclude that the value of the copyrighted APIs in the 2006 bundle would be worth at
21  least one half of the apportioned value of the '104, '205, and '720 patents, using the lower bound group
22  and value approach permitted by the Court. This would be the case regardless of the number of patents
23  that Oracle asserts are infringed.

24  It should be unnecessary, in that testimony, to discuss whether the '205 or '720 patent was ever
25  asserted against Google, is valid, or is infringed. If, nonetheless, it became necessary to explain that
26  patents had been asserted and withdrawn, that fact can be explained to the jury without explaining why
27  they were withdrawn, and in a way that prevents any prejudice to either party. Indeed, any reference to
28  the reasons for withdrawal should be excluded, as irrelevant to the merits of the claims that remain in

1  suit, and unduly prejudicial to Oracle.  *See* Fed.. R. Evid. 401, 403; *Cardiovention, Inc. v. Medtronic,*
2  *Inc.*, 483 F. Supp. 2d 830, 838-39 (D. Minn. 2007).

4  Dated: March 19, 2012                        BOIES, SCHILLER & FLEXNER LLP

5                                               By:  */s/ Steven C. Holtzman*
                                                     Steven C. Holtzman

6                                               *Attorneys for Plaintiff*
                                                ORACLE AMERICA, INC.