1   KEKER & VAN NEST LLP
    ROBERT A. VAN NEST - # 84065
2   rvannest@kvn.com
    CHRISTA M. ANDERSON - # 184325
3   canderson@kvn.com
    DANIEL PURCELL - # 191424
4   dpurcell@kvn.com
    633 Battery Street
5   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
6   Facsimile:    415 397 7188

7   KING & SPALDING LLP
    SCOTT T. WEINGAERTNER
8   (*Pro Hac Vice*)
    sweingaertner@kslaw.com
9   ROBERT F. PERRY
    rperry@kslaw.com
10  BRUCE W. BABER (Pro Hac Vice)
    1185 Avenue of the Americas
11  New York, NY 10036
    Tel: 212.556.2100
12  Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: 415.318.1200
Fax: 415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel: 650.328.8500
Fax: 650.328.8508

13

Attorneys for Defendant
14  GOOGLE INC.

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17                        SAN FRANCISCO DIVISION

| | |
|---|---|
| 18  ORACLE AMERICA, INC., | Case No. 3:10-cv-03651 WHA |
| 19          Plaintiff, | **GOOGLE INC.'S BRIEF RE CALCULATION OF REASONABLE ROYALTY FOR REMAINING PATENTS AND COPYRIGHTS IN RESPONSE TO COURT'S *DAUBERT* ORDER [DKT. NO. 785]** |
| 20        v. | |
| 21  GOOGLE INC., | |
| 22          Defendant. | Dept.:    Courtroom 8, 19th Floor |
| 23 | Judge:    Hon. William Alsup |

24

25

26

27

28

638389.01

1      **I.      INTRODUCTION**

2            In its Order Granting in Part and Denying in Part Google's *Daubert* Motion to Exclude

3      Dr. Cockburn's Third Report [Dkt. No. 785], the Court requested that the parties advise the Court

4      concerning how Dr. Cockburn's report could be used to calculate a reasonable royalty for each

5      remaining patent in light of the items stricken by the Order.  Dkt. No. 785 at 19.  Dr. Cockburn's

6      report provides two potential ways of calculating a reasonable royalty for the remaining patents.[1]

7            First, Dr. Cockburn could adjust the calculations in Exhibit 35 of his Report to reflect that

8      (1) he will only be permitted to opine that the entire bundle is worth $560.5 million rather than

9      $597.5 million, and (2) Oracle has dropped all patents other than the '104 and '520 from the case.

10     This adjustment would allow Dr. Cockburn to testify to an unadjusted reasonable royalty for the

11     '104 patent of $18.5 million and an unadjusted reasonable royalty for the '520 patent of $0.7

12     million.  Declaration of Dr. Gregory K. Leonard ("Leonard Decl.") ¶ II.A.6.  This accords with

13     the Court's conclusion regarding what Dr. Cockburn believes to be the top set of patents that "Dr.

14     Cockburn can only opine on this 'lower bound' calculation ($20 million per patent before

15     offsets), and *not* the 'upper bound' calculation."  Dkt. No. 785 at 7-8 (emphasis in original).

16           Second, Oracle may argue that Dr. Cockburn can value the patents based on the figures in

17     Exhibit 36 of Dr. Cockburn's report.  In Exhibit 36, Dr. Cockburn purports to list the proportion

18     of the value of all six patents attributable to each individual patent.  This would yield an

19     unadjusted reasonable royalty for the '104 of $48.5 million and an unadjusted reasonable royalty

20     for the '520 of $2.1 million.  Leonard Decl. ¶ II.B.  But this approach is not only inconsistent with

21     the more robust analysis set forth in Exhibit 35, it does not account for the critical fact that there

22     are now only two patents left in this case, rather than six.  Furthermore, this approach contradicts

23     the logic of the Court's most recent *Daubert* Order.  Accordingly, and as is explained in more

24     detail in the declaration of Google's expert Dr. Gregory Leonard, filed with this brief, the only

25     reliable approach under Dr. Cockburn's methodology is to use Exhibit 35.

26     _____

       [1]  In submitting this statement, Google does not intend to support the correctness of what remains

27     of Dr. Cockburn's analysis, or the damages figures discussed herein, all of which Google intends
       to contest at trial.   This brief only provides Google's position concerning what testimony Dr.

28     Cockburn's may offer at trial in light of the Court's recent *Daubert* Order.

                                                    1

638389.01

1    Dr. Cockburn's copyright valuation also must be adjusted to account for the Court's

2    adjustment to his valuation of the overall 2006 Sun intellectual property bundle, which

3    established a new cap of $560.5 million, down from the previous total of $597.5 million.  Making

4    that adjustment, Dr. Cockburn's value of the copyrights-in-suit should be adjusted from $34.7

5    million to $32.6 million.  Leonard Decl. ¶ II.A.5.

6    **II.    DISCUSSION**

7        **A.    Valuation of the remaining patents-in-suit ('104 and '205)**

8    Dr. Cockburn's report provides two potential ways Dr. Cockburn could calculate the value

9    of the two remaining patents-in-suit.

10    ***First***, and most logically, Dr. Cockburn could adjust his calculations in Exhibit 35 of his

11    report to account for the Court's Order and Oracle's decision to drop all patents other than the

12    '104 and '205.  This adjustment would require the following steps.

13    - Dr. Cockburn initially calculated the total value of the Sun intellectual property
        bundle at $597.5 million. The bundle included the six Sun patents and the handful
14      of copyrights asserted in this case, along with hundreds of other patents and
        copyrighted works. If the value of the unasserted copyrights in the bundle is $37
15      million, deducting that amount from the total leaves a value of $560.5 million for
        the asserted copyrights and all the Sun patents in the bundle. Dkt. No. 785 at 19;
16      Leonard Decl. at ¶ II.A.1.

17    - Dr. Cockburn then separated out the value of the six asserted patents from the rest
        of the bundle, beginning with an estimation of the value for the 22 purportedly
18      most valuable patents in the portfolio.  Relying on the PatVal study, Dr. Cockburn
        concluded that those 22 patents are worth 77% of the total portfolio.  As the Court
19      recognized, the record contains no information that would allow Dr. Cockburn to
        opine that any of what he considers to be the top 22 patents is more valuable than
20      any other.  Using the logic of Dr. Cockburn's lower bound,[2] Dr. Cockburn can
        testify that the '104 is worth 1/22 of the total value of what he calls the top 22
21      patents.  Thus Dr. Cockburn can testify that the '104 is worth (1/22)*(0.77), or
        3.5%, of all of the patents.  Leonard Decl. ¶ II.A.2.
22
23    - Using the same methodology Dr. Cockburn used in Exhibit 35, Dr. Cockburn can
        testify that the value of the '520 patent is 3/75 of the value of the '104 patent.
24      Leonard Decl. ¶ II.A.3.

25

_____

26    [2]  The Court ruled that Dr. Cockburn could value what he calls the top patents, including the '104,
      by using his "lower bound" calculation, in which each of those patents have equal value.  Dkt.
27    No. 785, at 7.  It then concluded that "Dr. Cockburn can only opine on this 'lower bound'
      calculation ($20 million per patent before offsets), and *not* the 'upper bound' calculation."  Dkt.
28    No. 785, at 7-8.

RESPONSE TO *DAUBERT* ORDER [DKT. NO. 785]
Case No. 3:10-CV-03561 WHA

638389.01

- With these adjustments, combined with the revised valuation of the asserted copyrights at $32.6 million, it is possible to solve for the value of the '104 patent using the equation in paragraph 414 of the most recent Cockburn Report. Cockburn Report ¶ 414.  Solving the equation results in a reasonable royalty for the '104, prior to any downward adjustments for foreign sales, non-accused devices, or failure to mark, of $18.5 million.  Leonard Decl. ¶ II.A.6.

- Again applying the rule that the '520 is worth 3/75 as much as the '104, Dr. Cockburn can testify that a reasonable royalty for the '520, prior to any downward adjustments, is $0.7 million.  Leonard Decl. ¶ II.A.6.

- When downward adjustments for foreign sales, non-accused devices, and failure to mark are made, Dr. Cockburn can testify that the adjusted reasonable royalty is $4.7 million for the '104 and $0.2 million for the '520, resulting in a total adjusted royalty of $4.9 million for the two remaining patents.  Leonard Decl. ¶ II.D.

*Second*, Oracle may argue that Dr. Cockburn can testify that the reasonable royalty for the remaining individual patents could be calculated using Dr. Cockburn's Exhibit 36, which purports to apportion the value of the individual patents based on the proportion of the value of the six-patent bundle attributable to each of the individual six patents.  *See* Cockburn Report Ex. 36.  As Dr. Leonard explains in his Declaration, adjusting the calculations in Exhibit 36 to account for the lower total value of the 2006 bundle results in an unadjusted valuation of the '104 patent of $48.5 million and an unadjusted valuation of the '520 patent of $2 million.  Leonard Decl. ¶ II.B.  When downward adjustments are made, the adjusted reasonable royalty for the '104 is $12.5 million, and the adjusted reasonable royalty for the '520 is $0.5 million, resulting in a total adjusted reasonable royalty of approximately $12.9 million.  Leonard Decl. ¶ II.D.

But, as Dr. Leonard notes, there are several logical problems with valuing the '104 and '520 based on the figures in Dr. Cockburn's Exhibit 36, rather than the calculations in Exhibit 35. *See* Leonard Decl. ¶ II.B.  Most seriously, the percentages in Exhibit 36 reflect the value of each individual patent as a percentage of the total value of the six-patent bundle that Oracle was asserting at the time of Dr. Cockburn's report.  With four of those six patents now out of the case, it would make little sense (and likely confuse the jury) to offer evidence as to the value of the '104 or '520 as a percentage of a six-patent bundle that is no longer at issue, and about which the jury will presumably hear no testimony at trial.

Exhibit 36 is also inconsistent with the Court's most recent Order.  For example, the Court ordered that Dr. Cockburn can only testify to his "lower bound" calculation, in which, as the

3

638389.01

1    Court described it, "each patent in his top 22 has equal value to each other."  Dkt. No. 785 at 7-8.

2    But Exhibit 36 offers calculations at odds with this principle.  Although the '104, '205, and '720

3    patents are all in Dr. Cockburn's top 22, Exhibit 36 gives different valuations for those patents,

4    listing the '104 and '205 as each being worth 75% of the six-patent bundle, but the '720 as being

5    worth only 40% of the six-patent bundle, about half as much.  Cockburn Report, Ex. 36.

6    Similarly, if the '104 is worth 75% of the six-patent bundle, that one patent alone would be worth

7    7.1% of the total 2006 bundle.  Leonard Decl. ¶ II.B.  That is twice the 3.5% value one would

8    calculate if one assumes, as the Court's Order requires, that each of Dr. Cockburn's top 22 patents

9    (which collectively amount to 77% of the value of the total bundle) is of equal value.  Leonard

10   Decl. ¶ II.A.2.  Accordingly, to the extent Dr. Cockburn's Exhibit 36 could be read to support an

11   apportionment that is inconsistent with Exhibit 35, the methodology in Exhibit 35 should control.

12             **B.       Valuation of the asserted copyrights**

13             Based on the calculation of relative consumer preferences in Dr. Shugan's conjoint study,

14   Dr. Cockburn opined that the value of the Sun copyrights at issue was roughly half of the value of

15   the six patents Oracle was asserting at the time of Dr. Cockburn's third report.  Because the set of

16   asserted copyrights has not changed, the value of the copyrights should remain constant despite

17   Oracle's decision to abandon four of the six patents discussed in Dr. Cockburn's most recent

18   report.  Accordingly, the only adjustment that needs to be made to the copyrights is to account for

19   the Court's adjustment to his valuation of the overall 2006 Sun intellectual property bundle, which

20   established a new cap of $560.5 million, as compared to the previous cap of $597.5 million.

21   Once that adjustment is made, Dr. Cockburn's valuation of the asserted copyrights drops slightly,

22   from $34.7 million to $32.6 million.  Leonard Decl. ¶ II.A.5.

23   **III.     CONCLUSION**

24             For all these reasons, the soundest way to apply Dr. Cockburn's damages methodology in

25   light of the Court's Order and Oracle's decision to limit its patent case to just the '104 and '205

26   patents is to adjust the calculations in Exhibit 35 of Dr. Cockburn's most recent Report.  Under

27   the methodology set forth in Exhibit 35, as modified by the Court's Order, Dr. Cockburn can

28   testify to an unadjusted reasonable royalty of $18.5 million for the '104 patent and $0.7 million

                                                         4

638389.01

1   for the '205 patent, an adjusted reasonable royalty of $4.7 million for the '104 and $0.2 million

2   for the '205, and a total reasonable royalty of $32.6 million for the asserted copyrights.

3

4   Dated:  March 19, 2012                          KEKER & VAN NEST LLP

5

6                                                              /s/ Robert A. Van Nest
                                                    By:        ROBERT A. VAN NEST

7

8                                                   Attorneys for Defendant
                                                    GOOGLE INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO *DAUBERT* ORDER [DKT. NO. 785]
Case No. 3:10-CV-03561 WHA

638389.01