KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MICHAEL S. KWUN - #198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Tel: 415.391.5400
Fax: 415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER
(*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (*Pro Hac Vice*)
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second St., Suite 2300
San Francisco, CA 94105
Tel: 415.318.1200
Fax: 415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel: 650.328.8500
Fax: 650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No. 3:10-CV-03561-WHA<br><br>**GOOGLE'S REPLY COPYRIGHT LIABILITY TRIAL BRIEF**<br><br>Judge: Hon. William Alsup |

# TABLE OF CONTENTS

**Page**

I. **Languages and APIs provide the tools for expression, but their vocabularies are not copyrightable expression** ....................................................... 1

    A. The Java API specifications are analogous to a dictionary, not to an outline of a multi-volume history ................................................................. 1

    B. The APIs are free for anyone to use, just as the Java programming language is free for anyone to use ................................................................. 4

II. **Oracle, not Google, has the burden of persuasion on the issue of copyrightability** ....................................................................................................... 5

    A. Oracle's registrations do not entitle it to a presumption that the selection, arrangement and structure of its APIs are copyrightable ............... 6

    B. Oracle has the burden of persuasion at all times; any presumption of validity places only a burden of *production* on Google, not a burden of *persuasion* ......................................................................................... 7

    C. Functionality, *scenes a faire*, and merger are all part of the copyrightability inquiry, and thus issues for which Oracle bears the burden of persuasion ......................................................................... 8

III. **Originality and copying are, at least in part, not disputed issues** ........................ 9

    A. The API packages as a whole meet the "extremely low" threshold for originality, but they are not copyrightable for reasons of originality .............................................................................................................. 9

    B. The parties agree that Android implements 37 API packages from J2SE, but disagree whether that constitutes actionable copying .................... 9

IV. **To prove indirect infringement, Oracle must prove that a third party infringed** ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Allen v. Academic Games League of America, Inc.
  89 F.3d 614 (9th Cir. 1996) ........................................................................................... 9

Apple Computer, Inc. v. Microsoft Corp.
  35 F.3d 1435 (9th Cir. 1994) ......................................................................................... 10

Baker v. Selden
  101 U.S. 99 (1879) ......................................................................................................... 3

Entertainment Research v. Genesis Creative Group
  122 F.3d 1211 (9th Cir. 1997) ...................................................................................... 7, 8

Feist Pubs., Inc. v. Rural Tele. Serv. Co.
  499 U.S. 340 (1991) ....................................................................................................... 9

Jada Toys, Inc. v. Mattel, Inc.
  518 F.3d 628 (9th Cir. 2008) ......................................................................................... 10

Lanard Toys Ltd. v. Novelty, Inc.
  375 Fed. Appx. 705 (9th Cir. 2010) ........................................................................ 5, 7, 8

Sega Enters. Ltd. v. Accolade, Inc.
  977 F.2d 1510 (9th Cir. 1992) ..................................................................................... 8, 9

**Federal Statutes**

17 U.S.C. § 102(b) .................................................................................................... 2, 3, 5, 8

17 U.S.C. § 410(c) ........................................................................................................... 6

**Federal Rules**

Fed. R. Evid. 301 ........................................................................................................... 7, 8

**Federal Regulations**

37 C.F.R. § 202.1(a) ........................................................................................................ 2

**Miscellaneous**

Guy Steele, *Growing a Language* (Oct. 1998) ........................................................... 1, 2, 5

## I. Languages and APIs provide the tools for expression, but their vocabularies are not copyrightable expression.

### A. The Java API specifications are analogous to a dictionary, not to an outline of a multi-volume history.

Oracle seeks to analogize its API implementations (i.e., its Java API libraries) to "a multi-volume history, such as the Durants' eleven-volume *The Story of Civilization*" and its specifications to "the author's [sic] meticulously detailed outline of those works." Oracle Br. [Dkt. 780] at 2. This analogy is inapposite. Oracle's Java API libraries (which implement the Java API specifications) do not tell a story, and do not have any narrative structure at all. The libraries are a collection of source code snippets, each of which performs a discrete task. There is no beginning, middle or end to a narrative in the Java API libraries.

As Guy Steele, an early member of the Java team and now an Oracle Software Architect, has explained, "[a] *library* is a vocabulary designed to be added to a programming language to make the vocabulary of the programming language larger." Guy Steele, *Growing a Language* (Oct. 1998) at 7 ("*Steele*").[1] Thus, the API specifications are analogous to a *dictionary,* not a history. The specifications provide an alphabetical list of the methods, fields and interfaces in the API packages—the "vocabulary" to which Steele refers—just as a dictionary has an alphabetical list of words. The specifications also include explanations for the methods, fields and interfaces, just as a dictionary has a definition for each word. And just as copyright law does not prevent Webster from publishing a dictionary that defines the same words, in the same alphabetical order, that Oxford does, copyright law does not prevent Google from implementing the same APIs, in the same alphabetical order, that Sun did. Oxford's copyright in the *Concise Oxford English Dictionary* covers its definitions, not its "selection" of words, or the "arrangement" or "structure" of its dictionary.

Nor it is it true that the API specifications are an "outline" for the implementations. The implementations (i.e., the libraries) represent merely another version of the dictionary—this one, for the computer rather than for the developer. The libraries repeat the "declarations" from the specifications, but also include source code that implements the APIs. The declarations are,

---

[1] *Available at* http://labs.oracle.com/features/tenyears/volcd/papers/14Steele.pdf.

from the computer's perspective, the list of words in the dictionary. The implementing code, in turn, provides the "definitions" of those words—the code tells the computer what the API elements are or do. The implementations are the dictionary that the computer uses for the "vocabulary," *Steele* at 7, that the libraries add to the Java programming language.

It is no better to argue, as Oracle might, that the structure and interrelationships among the API elements distinguish the APIs from a dictionary's list of words. In human languages, words fall within a grammatical structure (e.g., "cat" is a noun), and have interrelationships (e.g., "learning" is the gerund form of the verb "to learn"). Those functional characteristics are parts of the ideas represented by the words. Not only are words and short phrases not subject to copyright,[2] the ideas embodied in them are uncopyrightable. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea . . . .").

The APIs embodied in the specifications and implementations are an uncopyrightable system, *id.*, not creative expression. The purpose of the words defined in a dictionary is not to express, but to provide a set of tools that an author can use for expression. Similarly, the purpose of the APIs is not to express, but to provide a set of tools—a system—for Java language developers. The stories told by authors using the words defined in dictionaries may be expressive; the list of words in a dictionary is not. The programs Java language developers write may be expressive; the building blocks provided by the APIs are not. The code *implementing* the APIs and the *explanations*[3] of the APIs in the specifications may be expressive[4] (subject to governing copyright limiting doctrines); the APIs *themselves* (including the selection, arrangement and structure of their elements) are functional and not copyrightable.

Oracle's claim that copyright protects the system described by its API specifications is

---

[2] Copyright MSJ Order [Dkt. 433] at 7; *see also* 37 C.F.R. § 202.1(a) ("[w]ords and short phrases such as names, titles, and slogans" are "not subject to copyright").

[3] Oracle claims that the explanations in Google's specifications infringe. First, Google believes it will be entitled to judgment as a matter of law on this point. Second, Oracle has no damages theory tied to this alleged form of infringement.

[4] When Oracle cites the "more than 11,000 pages" of "expression" in Oracle's API specifications, *see* Oracle Br. [Dkt. 780] at 2, the majority of this is its explanations. The fact that a dictionary, including its definitions, is thousands of pages long does not make the list of words defined copyrightable.

foreclosed by *Baker v. Selden*, 101 U.S. 99 (1879), the seminal case on what has come to be called the idea-expression dichotomy, now codified at 17 U.S.C. § 102(b). Selden created a system for double-entry bookkeeping, which he described in a series of books. 101 U.S. at 100. Selden's particular system was new, consisting of his own "peculiar arrangement of columns and headings." *Id.* Baker wrote a book that described essentially the same system, such that if Selden's system were protected by copyright, "it would be difficult to contend that the defendant does not infringe it . . . ." *Id.* But, even though Selden had described his particular method in great detail, including illustrations of the ruled lines and headings he created, the Supreme Court denied copyright protection to the *system* he described:

> The copyright of a book on perspective, no matter how many drawings and illustrations it may contain, gives no exclusive right to the modes of drawing described, though they may never have been known or used before. By publishing the book, without getting a patent for the art, the latter is given to the public.

*Id.* at 103. The same principle applies here. Sun created a new computer programming language, with a diverse set of APIs. It described the APIs in the API specifications. Copyright does not protect the system documented by the specifications, and it is that system that Google is alleged to have infringed. *See id.*; 17 U.S.C. § 102(b). As the Supreme Court held:

> Charles Selden, by his books, explained and described a peculiar system of book-keeping, and illustrated his method by means of ruled lines and blank columns, with proper headings on a page, or on successive pages. Now, whilst no one has a right to print or publish his book, or any material part thereof, as a book intended to convey instruction in the art, any person may practise and use the art itself which he has described and illustrated therein. The use of the art is a totally different thing from a publication of the book explaining it. The copyright of a book on book-keeping cannot secure the exclusive right to make, sell, and use account-books prepared upon the plan set forth in such book. Whether the art might or might not have been patented, is a question which is not before us. It was not patented, and is open and free to the use of the public. And, of course, in using the art, the ruled lines and headings of accounts must necessarily be used as incident to it.

*Baker*, 101 U.S. at 104. Sun described the Java language APIs through its specifications. While copyright may protect the descriptions in the specifications, "any person may practise and use the art itself," *see id.*—any person may implement the APIs. Oracle did not assert a patent covering its APIs, and the APIs are "open and free to the use of the public." *See id.* And, of course, in using the APIs, the selection, arrangement and structure of the APIs "must necessarily be used as incident to it." *See id.*

**B. The APIs are free for anyone to use, just as the Java programming language is free for anyone to use.**

The Court has asked for an explanation of "the mechanism by which the Java programming language is free and open for anyone to use but the APIs are not," and has asked, "If the Android platform does not infringe Oracle's copyrights by using the Java programming language, how has Google infringed Oracle's copyrights by using by using the Java APIs?" Request [Dkt. 793] at 1. The answers are that the APIs are also free for anyone to use, and Google has not infringed Oracle's copyrights by implementing the Java APIs.

Oracle has repeatedly conceded that anyone can use the Java programming language.[5] In light of Oracle's concessions, the Court has twice stated that the language is free and open for all to use, including Google. *See* Order Striking First Cockburn Report [Dkt. 230] at 2 ("it is undisputed that the Java programming language is in the public domain and anyone was free to use it without charge, as Android does"); Copyright MSJ Order [Dkt. 433] at 3 ("The Java programming language has been made freely available for use by anyone without charge. Both sides agree on this."). At the Copyright MSJ hearing, Oracle confirmed to the Court that it stood by its prior concessions:

> THE COURT: I think you've said in the past that anyone can use the Java progressing [sic] language.
>
> MR. JACOBS: We have, because we make no claim that that is a violation of our copyright rights.
>
> THE COURT: That is a—are you trying to reclaim something here?
>
> MR. JACOBS: No.
>
> THE COURT: I'm going to be disturbed if that's true. *I heard you say in the past Java programming language is in the public domain and anyone can use it.* Now, if you are saying "oh, we're just not making that," that reminds me of an earlier case. So be clear on this. Are you taking back what you said earlier?
>
> MR. JACOBS: *I'm not taking back what I said earlier in any way, Your Honor.*
>
> THE COURT: All right.

---

[5] 2/9/11 Tr. at 8 ("the Java programming language, we're not asserting that we own that programming language for purposes of this case"); 7/21/11 Tr. at 50 ("THE COURT: But you admit that the Java programming language is open to anybody. MR. JACOBS: Yes."); 9/15/11 Tr. at 12 ("we are making no claim for the protect[a]b[i]lity under copyright of the Java programming language, in and of itself").

9/15/11 Tr. at 12-13 (emphasis added).

The Court has also asked whether the "statements that made the Java programming language available for all to use expressly reserve the Java APIs?" Request [Dkt. 793] at 1. The answer is no. Indeed, to the contrary, Oracle has disclaimed any reliance on distinguishing between the Java programming language and the APIs. 9/15/11 Tr. at 13 ("I think what I'm suggesting is that what the analytical move I don't think we have to make is to somehow in some deep technical way distinguish between a programming language and an application programming interface for purposes of argument [sic] we're making.").[6]

The APIs at issue are *part* of the Java programming language. *See Steele* at 7. Moreover, regardless of whether Oracle is allowed to argue that APIs are not part of the language that it concedes everyone is free to use, if the Court accepts Oracle's argument that the APIs are "expressive," that type of assertion would allow one to claim copyright over any newly created language, including even human languages, or newly coined words in a language—an improper result.[7] Designing a new system for expression necessarily requires numerous design choices (for example, whether to make a programming language object oriented). Languages can have complex grammars, with detailed interrelationships between different elements. Some languages have more or fewer words for expressing similar concepts. This cannot and does not change the underlying fact that languages (and the APIs at issue) are not themselves *expressive*—they are uncopyrightable *systems* that allow expression. *See* 17 U.S.C. § 102(b).

II.   **Oracle, not Google, has the burden of persuasion on the issue of copyrightability.**

Oracle relies on a single footnote in *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 711 n.4[8] (9th Cir. 2010), an unpublished and non-precedential case, for the proposition that Google has the burden of proving that the API elements are not copyrightable. Oracle is wrong:

---

[6] Oracle may point out that it placed copyright notices on its specifications. The specifications, however, are not the APIs themselves, and thus the copyright notices on the *specification* did not "expressly reserve" copyright to the Java *APIs*. *See* Copyright MSJ Order [Dkt. 433] at 10 (distinguishing between APIs and API specifications).

[7] A newly coined word is uncopyrightable under the words and short phrases doctrine. *See* 37 C.F.R. § 202.1(a).

[8] Oracle's brief cites page 711, but the material it quotes appears in footnote 4 on that page.

the presumption of copyrightability does not apply to the APIs and their elements. And even if it did apply, it would shift only a burden of production, not of persuasion.

### A. Oracle's registrations do not entitle it to a presumption that the selection, arrangement and structure of its APIs are copyrightable.

A "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). This means, for example, that Oracle's timely registration of J2SE 5.0 is prima facie evidence that (a) the copyright for J2SE 5.0 is valid, and (b) the facts stated in the registration certificate are valid.

As the Court has previously explained, a presumption regarding a *registered work* is not a presumption regarding "*specific elements* of a registered work." Copyright MSJ Order [Dkt. 433] at 8. Whether Oracle has a valid copyright for the J2SE *platform,* however, is irrelevant, and thus so too is a presumption applicable to the *registered work.* The facts stated in the registration do not support the presumption Oracle seeks either, because they do not refer to the APIs at all, let alone the selection, arrangement and structure of the API elements. For example, the titles listed in the J2SE 5.0 certificate of registration—"Java 2 Standard Edition, Version 5.0," with the alternative titles "J2SE 5 0, Java 2 Platform, Standard Edition, Version 5.0," *see* Am. Compl. [Dkt. 36], Ex. H—do not suggest a copyright on the APIs or their elements. The only other potentially relevant facts in the certificate state that the registered work is a derivative work of prior versions of the platform, and that the material added by this work "and in which copyright is claimed" are "[n]ew and revised computer code and accompanying documentation and manuals." *See id.* While that registration language might give notice that Sun sought to copyright its *implementations* ("computer code") and its *documentation* ("documentation and manuals"), no reference is made to the APIs themselves, or to the selection, arrangement and structure of the API elements.[9]

---

[9] Oracle notes that it also obtained other copyright registrations, including for an "early version" of the API specifications. *See* Oracle Br. [Dkt. 780] at 1 n.1. First, none of these registrations were pled in Oracle's Amended Complaint. *See* Am. Compl. [Dkt. 36], Ex. H. Second, even the narrowest of these registrations is for API *specifications,* which include explanations of the APIs in addition to the APIs themselves. *See* Copyright MSJ Order [Dkt. 433] at 11 ("*API specifications are written documentation.*") None of the registrations are limited to the APIs or

Finally, the basic premise that Oracle relies upon to explain why it is entitled to a presumption of copyright validity is that the Copyright Office has examined the material deposited and concluded that it constitutes copyrightable subject matter. Oracle Br. [Dkt. 780] at 5 (citing *Lanard Toys*, 375 Fed. Appx. at 711[10]). First, as already noted, this at best applies to the entire registered work, and not specifically to the selection, arrangement and structure of the APIs. Second, the Sun source code deposits were only excerpts. For example, the source code deposit for J2SE 5.0 included only *50 pages* of source code, *see* Trial Ex. 607, a mere fraction of the over 11,000 pages Oracle claims the specifications fill in printed form, *see* Oracle Br. at 2.

### B. Oracle has the burden of persuasion at all times; any presumption of validity places only a burden of *production* on Google, not a burden of *persuasion.*

Even if the certificate of registration raises a presumption of validity, this at most shifts to Google a burden of *production* not of *persuasion.* Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."). In a published and precedential decision, the Ninth Circuit has explained that to rebut the presumption of copyrightability based on timely registration, "an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Entertainment Research v. Genesis Creative Group*, 122 F.3d 1211, 1218 (9th Cir. 1997) (citation omitted). If the defendant's evidence raises a "serious question" whether the material in question is copyrightable, then the defendant has "rebutted the statutory presumption," and this "shift[s] the burden of proving validity—the threshold issue for copyright infringement lawsuits—back to" the plaintiff. *Id.*

Thus, when the *Lanard Toys* court stated that the defendant had the burden of "proof," this at most could have been a reference to a burden of *production*, not of *persuasion.* The

---

the selection, arrangement and structure of their elements, and none of the registrations state that Sun was seeking to copyright the APIs or the selection, arrangement and structure of their elements. Thus, none of those registrations can give rise to a presumption regarding the APIs or their elements.

[10] As noted above, the correct citation is to footnote 4. *See* 375 Fed. Appx. at 711 n.4.

defendant in *Lanard Toys*, however, "did not present any expert testimony or other relevant evidence to prove that any functional elements of these toys were not subject to copyright protection," 375 Fed. Appx. at 711, and thus failed to satisfy even a burden of production.[11]

Testimony from Google's witnesses, and indeed Oracle's own expert, will show that the APIs and their elements are not copyrightable. Google will therefore discharge any burden of *production* that it might have, even assuming any presumption of copyrightability applies here. Oracle, however, will retain the burden of *persuasion*. *Entertainment Research*, 122 F.3d at 1218; Fed. R. Evid. 301.

### C. Functionality, *scenes a faire*, and merger are all part of the copyrightability inquiry, and thus issues for which Oracle bears the burden of persuasion.

Whether the elements of the APIs are functional requirements for compatibility is part of the section 102(b) inquiry, and thus should be addressed in deciding copyrightability. When the Ninth Circuit held that "functional requirements for compatibility" are not protected by copyright, it cited section 102(b). *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992) (citing 17 U.S.C. § 102(b)). In *Sega*, the court held that intermediate copying of *implementing code* was a fair use when done for the purpose of determining functional requirements for compatibility. That is, the fair use analysis in *Sega* applied to the implementing code, not to the functional requirements for compatibility. "Copying" functional requirements for compatibility is allowed by virtue of section 102(b), without any need to address fair use.

*Scenes a faire* and merger similarly are doctrines that should be considered in deciding the issue of copyrightability. Google agrees that it has the burden of coming forward with evidence about the applicability of these doctrines, but Google's burden is again one of *production*. The ultimate question that the Court must answer is whether the allegedly copied elements of the APIs are protected, and on that issue Oracle retains the burden of *persuasion*. As Google demonstrated in its opening brief, placing the burden of persuasion on Oracle is consistent with Ninth Circuit cases that have found for the defendant based on a *lack* of evidence, while relying on the doctrines of *scenes a faire* or merger. *See Sega*, 977 F.2d at 1524

---

[11] All of the cases Oracle cites are consistent with this view—that is, that the statutory presumption shifts a burden of *production* to the defendant, but not a burden of *persuasion*.

n.7; *Allen v. Academic Games League of America, Inc.*, 89 F.3d 614, 618 (9th Cir. 1996).

### III. Originality and copying are, at least in part, not disputed issues.

#### A. The API packages as a whole meet the "extremely low" threshold for originality, but they are not copyrightable for reasons of originality.

Google witnesses will offer substantial evidence that the Java APIs were not created out of whole cloth. Instead, the APIs build on previous programming languages and long-accepted conventions. The packages as a whole, however, are not completely lacking in originality. Thus, while reserving the right to present evidence that many aspects of the APIs are unoriginal, Google does not dispute that the APIs as a whole meet the "extremely low" threshold for originality required by the Constitution. *Feist Pubs., Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 345 (1991). The jury therefore need not be asked to address whether the APIs are original.

Originality, however, is of limited significance. First, originality is beside the point where, as here, the material at issue is not copyrightable. Second, even if the elements of the APIs are "original" in the sense required by the Constitution, any copyright to the selection, arrangement and structure of the API elements is, at most, "thin." Among other things, this is relevant to the second fair use factor, which "reflects the fact that not all copyrighted works are entitled to the same level of protection." *Sega*, 977 F.2d at 1524. Because any copyright protection for the APIs is, at most, thin, the second factor favors a finding of fair use. *See id.*

#### B. The parties agree that Android implements 37 API packages from J2SE, but disagree whether that constitutes actionable copying.

There is no dispute that Android incorporates substantially the same selection, arrangement and structure of API elements as J2SE does for the 37 API packages at issue—as does Apache Harmony, the open source project that served as the starting point for much of the code in the Android libraries at issue. There further is no dispute that, aside from portions of 12 out of over 50,000 Android files, none of which are still part of Android, the Android code implementing the APIs is not copied.[12]

The parties disagree, however, whether the Android APIs use *protected* elements of

---

[12] Google *does* dispute that the *descriptions* in its specifications are virtually identical or substantially similar to the descriptions in Oracle's specifications. And as to the portions of the 12 Android files, Google contends any similarities are *de minimis* and thus non-actionable.

637857.02

J2SE. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636 (9th Cir. 2008). "[T]he party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (quotation marks and citation omitted). For the reasons given above and in Google's opening brief, Oracle will not be able to prove that any *protected* elements of J2SE were copied.[13]

### IV. To prove indirect infringement, Oracle must prove that a third party infringed.

Oracle correctly notes that to prove contributory infringement it must prove, as one element of its claim, that Google knew or had reason to know of "the infringing activity of others." Oracle Br. [Dkt 780] at 9. To prove vicarious infringement, Oracle must prove, among other things, that Google profited directly from "the infringing activity of others." *Id.* at 10. For both of Oracle's indirect infringement theories, then, Oracle *must prove* that third parties infringed. Oracle cannot rest on evidence that *Google* infringed; that is relevant only to Oracle's *direct* infringement case. Oracle also cannot rest on evidence that Google allegedly provided the means for infringement, or directed that its partners act in a manner that allegedly infringes. Unless Oracle proves that third parties *actually did* infringe, any alleged inducement or material contribution by Google is irrelevant.

Moreover, to prove vicarious infringement, Oracle must prove that Google profited *directly* from the infringing activity of others. Oracle cannot rely on *indirect* profits, such as revenue Google receives from third party advertisements shown on Android handsets manufactured by other third parties.

Dated: March 23, 2012                    KEKER & VAN NEST LLP

                                         /s/ Robert A. Van Nest
                                  By:    ROBERT A. VAN NEST

                                         Attorneys for Defendant
                                         GOOGLE INC.

---

[13] To the extent that the Court concludes that any of the material at issue is protected by copyright, Google further contends that its use is a fair use, and that its equitable defenses bar Oracle's claims, as Google explained in its opening brief.