MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
KENNETH A. KUWAYTI (Bar No. 145384)
kkuwayti@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S MARCH 23, 2012 BRIEF REGARDING COPYRIGHT ISSUES**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

**INTRODUCTION**

Google finally admits what everyone has known all along: "the Android specifications for the 37 API packages at issue have *substantially the same selection, arrangement and structure* of API elements as the J2SE specifications." (ECF No. 778 ("Google Br.") at 3 (emphasis added).) This was no accident. Google intentionally copied Oracle's copyrighted Java API specifications.

Google tries to excuse its copying by claiming that no API can be copyrighted, regardless of its level of creative expression. But no court has ever so held, nor that a structure as rich, complex, and creative as the 37 Java API packages at issue in this case is ineligible for copyright protection. Much of Google's submission re-hashes its summary judgment briefing, repeating arguments the Court has already rejected, at the expense of the questions it was asked to brief.

Google also tries to justify its copying on "compatibility" grounds. But Google did not have to copy the Java APIs to be compatible with the Java programming language. And Android is not compatible with Java. Google took only what it wanted from the Java specifications and left out the rest. As a result, many Java-compliant programs will not run on Android, and programs written for Android will not run on the Java platform. Compatibility is a misnomer.

Notwithstanding the above, the parties agree on many of the procedural issues the Court identified. Oracle identifies and discusses the points of agreement and disagreement below.

**I.     COPYRIGHTS IN SUIT**

The parties appear to agree on the asserted Oracle Java works from which Google copied: (a) 37 Java API design specifications and implementations and (b) 11 Java software code files. (Google Br. at 1.) However, Oracle's allegations are not limited only to versions 1.4 and 5.0 of the Java 2 Standard Edition, as Google implies. (*See id.*) The registrations at issue were identified in response to interrogatories and are listed in Oracle's opening brief. They are also incorporated and listed in the registration for J2SE 5.0. (*See* ECF No. 780 ("Oracle Br.") at 1, 4.)

**A.     Google Copied The 37 Java API specifications**

Google concedes that "[t]here is no dispute that the Android specifications for the 37 API packages at issue have substantially the same selection, arrangement and structure of API elements as the J2SE specifications." (Google Br. at 3.) It follows that Android's selection,

arrangement and structure of the names of the elements is similar as well.  As a result, Google would be liable for infringement even if it could prove these individual API elements and names are unprotectable, "if those elements are numerous enough, and their selection and arrangement original enough that their combination constitutes an original work of authorship." (*See* ECF No. 433 at 8 (quoting *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003).)  Google cannot possibly prove that the selection and arrangement of the thousands of elements in the specifications was the result of something other than original creative effort.

### B. Google copied source code, object code and comments from 11 Java code files into Android

Google does not dispute that it copied from the 11 Oracle source code files.  Google argues that the infringement claim is moot because it removed the copied code after it was caught.

Not so.  Oracle's counsel confirmed after Google filed its brief that Google still makes copied code available for download from its website.  But even if Google had in fact deleted the code, Oracle's claim for injunctive relief would still not be moot.  Oracle does not have to take Google's word that it will not start using the code it copied again once this suit is over.  *See Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 43 (1944) ("Voluntary discontinuance of an alleged illegal activity does not operate to remove a case from the ambit of judicial power.").

Google's damages argument is also incorrect.  The Court ruled only that "the jury will be instructed that if Google is found not liable for infringing the selection, arrangement, and structure of the API packages, then Dr. Cockburn's copyright damages analysis is inapplicable." (ECF No. 685 at 2.)  The Court did not hold Oracle was not entitled to *any* damages.  And Oracle may elect statutory damages "at any time before final judgment is rendered," 17 U.S.C. § 504(c)(1), although the Supreme Court suggests the election may not be made after a jury awards actual damages.  *See Feltner v. Columbia Pictures Television*, 523 U.S. 340, 347 n.5 (1998).  Costs and attorneys' fees can also be awarded to the prevailing party.  17 U.S.C. § 505.

Google's code copying is also relevant because it proves Google's access to Oracle's copyrighted materials, puts the lie to Google's "clean room" claim and proves Google's copying was knowing and willful.  Google cannot hide its line-for-line copying from the jury.

## II. ORACLE'S COPYRIGHT LIABILITY CLAIMS

### A. Direct Infringement

#### 1. Google Must Demonstrate the Works Are Not Copyrightable

The parties disagree over who has the burden on copyrightability. Google's brief does not challenge ownership or registration. Oracle's copyright registration entitles it to a presumption of validity, shifting the burden to Google to demonstrate that the works are not copyrightable. (*See* Oracle Br. at 4-6 (citing cases).) *See also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985) *overruled on other grounds in Bellevue Manor Assoc. v. United States*, 165 F.3d 1259, 1256 (9th Cir. 1999) ("This presumption shifts the burden of proof to the challenging party to demonstrate why the item in question is not copyrightable."). Google, citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636-37, n.6 (9th Cir. 2008)—where copyrightability was "tangentially" disputed and the presumption was not addressed—ignores the presumption.

Google is required to overcome the presumption of copyrightability as to each element it is challenging. In *Swirsky v. Carey,* the court held the defendant bore the burden of overcoming the presumption of originality as to the first measure of the chorus of a copyrighted song. 376 F.3d 841, 851 (9th Cir. 2004) ("Carey can overcome this presumption only by demonstrating that Swirsky's chorus is not original."). *Swirsky* was recently followed in *Straughter v. Raymond:*

> As an initial matter, defendants misapprehend the burden of proof based on their faulty argument that plaintiff is not entitled to a presumption of copyright validity. *See, e.g.*, Songwriters' Supp. Mem. at 6 ("Plaintiff does not enjoy a presumption of copyright validity or originality, and therefore, must demonstrate that the 18 elements at issue are original to him."). As discussed above, it is defendants' burden to rebut the statutory presumption of validity.

2011 U.S. Dist. LEXIS 93068, at *22-24 (C.D. Cal. Aug. 19, 2011) (applying *Swirsky* to find defendants failed to carry burden). (*See also* Oracle Br. at 5-6 (citing cases).)

#### 2. Google Cannot Demonstrate That The Java APIs Do Not Contain Copyrightable Expression

Google's challenge to the copyrightability of the Java APIs relies on the same cases and arguments it made in its failed summary judgment motion and other briefing. Google does not challenge the copyrightability of the source code it copied.

Google's argument that the APIs are unprotectable "methods of operation" again relies on

the First Circuit's decision in *Lotus v. Borland*. But *Lotus* is not the law in the Ninth Circuit: "Whether the non-literal components of a program, including the structure, sequence and organization and user interface, are protected depends on whether, on the particular facts of each case, the component in question qualifies as the expression of an idea, or an idea itself." *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989).

Further, *Lotus* is inapposite. The consumer menu command hierarchy at issue in *Lotus* was far simpler than that of the Java APIs, which are comprised of thousands of elements, layers of complex interdepencies, and data structures. Google's expert and employees concede the creativity and skill required to design them. (*See* Oracle Br. at 9, 12-13.)

In the 17 years since *Lotus* was decided, no other circuit court has adopted its reasoning, and several have rejected it. The Tenth Circuit, for example, has expressly disagreed with *Lotus*:

> We conclude that although an element of a work may be characterized as a method of operation, that element may nevertheless contain expression that is eligible for copyright protection. Section 102(b) does not extinguish the protection accorded a particular expression of an idea merely because that expression is embodied in a method of operation at a higher level of abstraction.

*Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997). (*See also* ECF No. 339 at 9-11.)

Additionally, Google continues to distort *Sega*. The Ninth Circuit held:

> We conclude that where disassembly is the only way to gain access to the ideas and functional elements embodied in a copyrighted computer program and where there is a legitimate reason for seeking such access, disassembly is a fair use of the copyrighted work, as a matter of law. Our conclusion does not, of course, insulate Accolade from a claim of copyright infringement with respect to its finished products.

*Sega Enters Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527-28 (9th Cir. 1993).

This case could hardly be more different. Unlike *Sega,* Oracle accuses Google's finished product of infringement. Unlike *Sega,* Google had no need to copy to gain access to any ideas and functional elements expressed in the Java APIs because they were published on Sun's website, subject to copyright. And, whereas the *Sega* defendant copied a four letter code (S-E-G-A) consisting of only *20 to 25 bytes* of data mandatory for its program to function with the Sega console, *id.* at 1515-16, Google copied API elements spanning *11,000 printed pages*, and even its own expert concedes it would have been "technically possible" for Google to write its own APIs

for the 37 packages at issue. (Astrachan Dep. 251:21-252:2; 253:2-4.)

*Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832 (Fed. Cir. 1992) is much more on point. The Federal Circuit applied Ninth Circuit law to find the key to Nintendo's console was entitled to copyright protection because it contained a "unique sequence" of code, and "[e]xternal factors did not dictate the design." *Id.* at 840. Atari could reverse engineer the code to learn its unprotected features, but could not replicate it without infringing the copyrights. *Id.* at 844.

Indeed, Google's entire compatibility argument is a fallacy. Its copying was not required for compatibility. Android is not compatible with Java. Google copied the specifications to tap into the developer community Sun had created through years of work and investment. Google took only those parts of the Java APIs it wanted and left out the rest, creating its own APIs in some instances and modifying others. The result is incompatibility and fragmentation.

### 3. The Court Can Refer Threshold Issues Of Fact To The Jury

Both parties agree it is unlikely the Court will need to refer threshold issues of fact to the jury. The parties dispute only whether the Court can do so. (*See* Google Br. at 3-4, n.3.) Cases in this Circuit have recognized that fact issues relating to copyrightability—in particular to originality—may be submitted to the jury. *See Kikker 5150 v. Kikker 5150 USA, LLC*, 2004 U.S. Dist. LEXIS 16859, at *27 (N.D. Cal. Aug. 13, 2004) ("Here the Court cannot say, as a matter of law—although a jury may well say, as a matter of fact—that the originality required by the copyright rules is lacking."). One case has held disputed fact issues relating to originality must be submitted to the jury. *See N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1034 (9th Cir.1992) (district court erred by not allowing issue of whether fashion design was sufficiently similar to preexisting work to lack originality to go to jury). *See also* Comment to Ninth Circuit Model Civil Trial Jury Instruction 17.2 ("*Generally*, whether a subject matter is copyrightable is a question of law to be determined by the court.") (emphasis added). Here, the Court could refer a fact issue to the jury through properly structured jury instructions or verdict forms.

### 4. Copying

Google intentionally modeled the selection, arrangement and structure of the elements in the 37 Android APIs at issue on their Java counterparts, and does not dispute copying the 11

source code files. (*See, e.g.,* Google Br. at 3.)  There is accordingly no need for the Court to determine whether the standard of substantial similarity or virtual identity applies, as Google contends. (*See id.* at 10.)  "'Substantial similarity' is not an element of [] copyright infringement." *Range Road Music, Inc. v. East Coast Foods, Inc.*, 2012 U.S. App. LEXIS 3173, at *10 (9th Cir. Feb. 16, 2012).  It is irrelevant where, as here, there is direct evidence of copying:

> A showing of "substantial similarity" is irrelevant in a case like this one, in which the Music Companies produced evidence that the public performances entailed direct copying of copyrighted works.  *See id.* (noting that a demonstration of substantial similarity is only necessary to prove infringement "[a]bsent evidence of direct copying").

*Id.* (quoting *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006).)

Further, Google is wrong that Oracle would need to show "virtual identity."  The Court previously rejected Google's attempt to apply a "virtual identity" standard on summary judgment. (*See* ECF No. 433 at 11.)  This case is nothing like *Ets-Hokin v. Skyy Spirits Inc.*, where there was a narrow range of protectable expression because there are "not very many" ways of shooting an advertising photograph of a blue vodka bottle.  323 F.3d 763, 764, 766 (9th Cir. 2003).  The range of creative expression reflected in the APIs is exponentially more complex, with many different possible structures and design choices extending across thousands of elements.

### 5. Originality

Google's brief does not challenge originality, nor could it prevail on such a challenge.

## B. Indirect Infringement

Google's brief also does not address indirect infringement.

## III. GOOGLE'S AFFIRMATIVE DEFENSES

### A. Merger and *scenes a faire*

The parties disagree on burden.  In the Ninth Circuit, merger and *scenes a faire* are treated as defenses to infringement, and Google has the burden of proof.  (*See* Oracle Br. at 10.)  *See also Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("The Ninth Circuit treats *scenes a faire* as a defense to infringement rather than as a barrier to copyrightability.") (citing *Ets-Hokin*).

Google cites no authority to the contrary.  Instead it contends certain cases "implicitly" placed the burden on the plaintiff.  (*See* Google Br. at 9-10.)  Google is incorrect.  Google infers

the Ninth Circuit placed the burden on plaintiff in *Sega* because it "held there was no infringement by relying on the absence of evidence showing alternatives to the defendant's copying." (*Id.* at 9.) This is not true. *Sega* discusses the evidence in detail and concludes: "In summary, the record clearly establishes that disassembly of the object code in Sega's video game cartridges was necessary in order to understand the functional requirements for Genesis compatibility." *Sega*, 977 F.2d at 1525-26. Defendant simply satisfied its burden of proof.

Google also argues that under merger and *scenes a faire,* the APIs as a whole are uncopyrightable. The Court rejected this sweeping approach in its order denying summary judgment. (ECF No. 433 at 9.) Google must make a showing as to individual elements. (*See id.*)

To prove merger, Google must show "the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea." (*Id.* (quoting *Satava*, 323 F.3d at 812 n.5).) Google cannot possibly meet this burden as to the APIs as a whole, or entire categories or packages. Oracle is not claiming "a monopoly" on the idea of an API or an API package. It had innumerable design choices for the complex array of packages at issue and is claiming copyright protection for the particular choices it made as to the selection, arrangement, and structure of elements in them. This case is nothing like *Allen v. Academic Games League of Am., Inc.*, where the court found the rules of a game were not copyrightable because, "[t]o hold otherwise would give Allen a monopoly on such commonplace ideas as a simple rule on how youngsters should play their games." 89 F.3d 614, 618 (9th Cir. 1996).

Similarly, for *scenes a faire,* Google must prove individual elements are "commonplace expressions [that] are indispensable and naturally associated with the treatment of a given idea." (ECF No. 433 at 8 (quoting *Swirsky*, 376 F.3d at 850).) Google does not even try to show this. It cannot. The APIs express an elaborate set of interdepencies and relationships within and across different packages, that are neither commonplace nor preordained. (Oracle Br. at 2.)

Google turns *scenes a faire* on its head, arguing that because the Java APIs are widely used by developers, and developers wish to have them available, they have become unprotectable *scenes a faire*. (*See* Google Br. at 7-8.) Google miscites *Computer Associates*. Google's citation refers to external constraints faced by the *plaintiff* in developing its copyrighted work. *See*

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 710 (2d Cir. 1992) (court must "examine the structural content *of an allegedly infringed program* for elements that might have been dictated by external factors.") (emphasis added).  Google's argument was rejected by the Tenth Circuit in *Mitel*.  *See Mitel*, 124 F.3d at 1375 ("The court's analytical focus should have remained upon the external factors that dictated Mitel's selection of registers, descriptions, and values.").

Google continues to rely on *Baystate Techs. v. Bentley Sys.*, 946 F. Supp. 1079 (D. Mass. 1996), a case from the First Circuit that is bound by *Lotus*.  *Baystate* is contrary to Ninth Circuit law on merger and *scenes a faire*, and is factually distinguishable.  (*See* ECF No. 339 at 17.)

### B. Fair Use

The parties agree Google will need to make its fair use case to the jury.  (*See* Google Br. at 11.)  Although Google does not mention it, Google bears the burden of proof on fair use.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007).

### C. *De Minimis* Copying

The parties agree the Court instructs the jury on what "work" to consider as the reference for determining whether Google's copying was *de minimis*, but disagree over who has the burden of proof.  (*See* Google Br. at 14.)  It is Google.  *See Merch. Transaction Sys., Inc. v. Nelcela, Inc.*, 2009 U.S. Dist. LEXIS 25663, at *61 (D. Ariz. Mar. 17, 2009) ("Thus, Nelcela will not escape liability unless it can show that the protectable elements in the Lexcel software constitute an insignificant (quantitatively and qualitatively) portion or aspect of the Lexcel software.").  Google relies only on cases from outside the Ninth Circuit.

### D. Equitable Defenses

The parties agree the equitable defenses are for the Court to decide.  (*See* Google Br. at 14.)  Google's brief does not address the burden, but it is on Google.  (*See* Oracle Br. at 14.)

The equitable defenses are baseless and there is insufficient evidence to justify bringing them to the jury even for an advisory verdict.  For example, while reasonable reliance is an element of equitable estoppel, laches, and implied license, Google deliberately chose to develop Android knowing it did not possess the required license, deciding to "Do Java anyway and defend our decision, perhaps making enemies along the way."  (ECF No 398-6.)

1   Google argues that Apache Harmony and GNU Classpath "include implementations of all 37 of the API package specifications at issue, and have done so openly for years" and thus it was perfectly acceptable to copy the Harmony APIs. (Google Br. at 8.) But Google was well aware that Sun's field-of-use restrictions prohibited it from using Harmony's API specifications in mobile devices. Google knew of Sun and Apache's highly publicized dispute over this exact issue. Indeed, Google signed a public letter urging Sun to lift the restriction. But Sun never did. Google's documents show that it knew using Harmony code did not give Android any kind of license from Sun or Oracle. Similarly, GNU Classpath is irrelevant because the GPL open source license has express restrictions that limit commercial use, which Google never followed.

Google's equitable defenses are lawyer-crafted hindsight ― a patchwork of statements on which Google did not rely, and could not reasonably have relied, such as blog entries or internal statements it learned about later. Google's documents reflect over and over that it knew the API specifications at issue were copyrighted and it could not simply take them. And during the period Google claims it believed it was free to go forward, the parties continued to negotiate a license. Even as late as August 2010, Mr. Lindholm told Google's top executives it still needed a license, just as he and others had said five years before. Google's equitable defenses are a sham.

The evidence relating to the equitable issues significantly overlap with willfulness. Proof of willful infringement can negate Google's equitable defenses. *Haworth, Inc. v. Herman Miller, Inc.*, 1993 WL 761974, at *3-4 (W.D. Mich. July 20, 1993); s*ee also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 1994 WL 471414, at *2 (C.D. Cal. Mar. 3, 1994), *aff'd on other grounds*, 103 F.3d 1571 (Fed. Cir. 1997) (willfulness bears on equitable estoppel defense). The jury should not be asked to render any advisory verdict on these defenses, and the Court should defer its ruling on the defenses until after the third phase of trial.

### IV.     JAVA PROGRAMMING LANGUAGE VERSUS ORACLE'S JAVA API IMPLEMENTATIONS AND DOCUMENTATION

The Court has asked the parties to "explain the mechanism by which the Java programming language is free and open for anyone to use but the APIs are not," and "If the Android platform does not infringe Oracle's copyrights by using the Java programming language,

1   how has Google infringed Oracle's copyrights by using Java APIs?"  (ECF No. 793.)  The short

2   answer is that Oracle owns the copyrights to its Java API specifications and source code; those

3   rights are distinct from any rights Oracle has in the Java language, which are not asserted in this

4   case.  (Oracle's statements to the Court on this issue can be found at ECF No. 87 at 8:5-9:8, ECF

5   No. 110 at 17:1-22:18, and ECF No. 445 at 12:9-17:9.)

6          The Java language and the Java API specifications are two different things.  Only a very

7   small number of elements in the Java APIs are required for the Java programming language.

8   Oracle's Java API specifications and source code implementations are original works of

9   authorship, written partly in Java and partly in English.  These works contain the expression of

10  the Java API designers' ideas.  Google copied expression from Oracle's works into its own API

11  specifications and source code.  The English language may be free for anyone to use, but a book

12  or poem written in English is copyrightable, and when others copy from it without permission,

13  they infringe.  Works written in the Java programming language are copyrightable as well.

14         Finally, the Court asks: "Did Sun statements that made the Java programming language

15  available for all to use expressly reserve as to the Java APIs?"  The answer is "yes."  Sun

16  expressly and publicly asserted its copyrights and reserved its rights as to the Java APIs.  There

17  has never been any uncertainty on this point.  The API documentation reserves all rights, and the

18  API specification license only permits use on specified terms.  *See, e.g.*, Java™ 2 Platform

19  Standard Edition 5.0 API Specification, http://docs.oracle.com/javase/1.5.0/docs/api/index.html

20  ("Copyright © 2004, 2010 Oracle and/or its affiliates.  All rights reserved.  Use is subject to

21  license terms."); http://docs.oracle.com/javase/1.5.0/docs/relnotes/license.html (specification

22  license terms).  The API specification license requires complete compatibility, no derivation from

23  Oracle source code or binary materials, and passing Oracle's compatibility test suites.  Android

24  fails on all counts.

25  Dated: March 23, 2012                         MORRISON & FOERSTER LLP

26                                               By:  /s/  Michael A. Jacobs

27                                               *Attorneys for Plaintiff*
                                                 ORACLE AMERICA, INC.
28