# EXHIBIT D

PUBLIC REDACTED VERSION

Highly Confidential - Attorneys' Eyes Only

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                SAN FRANCISCO DIVISION

 4

 5   ORACLE AMERICA, INC.,              )

 6          Plaintiff,                  )

 7       vs.                            )    No. CV 10-03561 WHA

 8   GOOGLE, INC.,                      )

 9          Defendant.                  )

10   _____)

11

12

13

14      -- HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY--

15

16

17      Videotaped deposition of ALAN J. COX, PH.D.,

18      taken at the law offices of Keker & Van Nest LLP,

19      633 Battery Street, San Francisco, California,

20      commencing at 9:24 a.m., on Wednesday, October 26,

21      2011, before Leslie Rockwood, RPR, CSR No. 3462.

22

23

24

25   PAGES 1 - 306
```

Highly Confidential - Attorneys' Eyes Only

```
 1          Q.   Do you recall who that was?

 2          A.   No.

 3          Q.   How long did the conversation last?

 4          A.   It was about 15, 20 minutes at the most.

 5          Q.   And based on your conversation with              10:22:11

 6   Mr. Agarwal, are you relying on your conversation with

 7   Mr. Agarwal on October 24th in support of any of the

 8   opinions that you expect to offer in this case?

 9               MR. KWUN:  Objection.  Form.

10               THE WITNESS:  Well, it just provides             10:22:32

11   confirmation of -- contamination of what it I was -- let

12   me put it better.

13               It provides further confirmation that I what

14   did in terms of deducting costs from revenues and

15   calculating the wrongful profits was appropriate.           10:22:49

16          Q.   BY MR. NORTON:  And you had, in your

17   background explanation of what Exhibit 669 was, you said

18   that you had done an allocation of expenses based on your

19   prior conversations with Mr. Agarwal, the pertinent

20   deposition testimony, and your review of the Android P&L.  10:23:07

21               Is that right?

22               MR. KWUN:  Objection.  Form.

23               THE WITNESS:  Let me correct one part of the

24   premise.  I didn't do an allocation.  I just took the

25   expenditures that Google had booked on its P&Ls for        10:23:17
```

Page 46

```
 1   Android, having determined based on the sources that you

 2   cited that it was appropriate to do so.

 3          Q.   All right.  So you reached an opinion prior

 4   to October 3rd that the allocation of expenses on the

 5   Android P&L was appropriate?                                10:23:41

 6          THE WITNESS:  Objection.  Form.

 7          THE WITNESS:  You keep using the word

 8   "allocation," and let me just say as a blanket statement

 9   that there was no allocation involved, as far as I could

10   tell.  That these were just bookings of expenditures made  10:23:56

11   on the Android platform.

12          Q.   BY MR. NORTON:  And to reach that conclusion,

13   you looked at the Android P&L, the pertinent depositions,

14   and you had a conversation or conversations with

15   Mr. Agarwal?                                                10:24:11

16          A.   That's correct.

17          Q.   All right.  And when you say "pertinent

18   depositions," which depositions are you referring to?

19          A.   Well, his certainly.

20          Q.   Anyone -- anyone other than Mr. Agarwal?        10:24:20

21          A.   Not -- none that I can recall as I sit here.

22          MR. NORTON:  I think it might be expeditious

23   to take a short break because I'm going to mark a bunch

24   of exhibits, and I won't make you sit here and watch me.

25          THE WITNESS:  Okay.                                  10:24:46
```

Page 47

| | | |
|---|---|---|
| 1 | Mr. Schmidt or anything, but I was retained, as I | |
| 2 | describe in my report, to calculate damages in this | |
| 3 | matter as an economist, and I believe I have done that. | |
| 4 | And I can rely on my own professional training and the | |
| 5 | methodologies of the discipline to do that. | 11:06:44 |
| 6 | Q.  All right.  And one of the things that you | |
| 7 | have to do in order to calculate wrongful profits is to | |
| 8 | determine what expenses are attributable to Android; | |
| 9 | correct? | |
| 10 | A.  That's correct. | 11:06:56 |
| 11 | Q.  All right.  And in order to determine what | |
| 12 | expenses are attributable to Android, you reviewed the | |
| 13 | Android P&L; right? | |
| 14 | A.  Yes. | |
| 15 | Q.  You spoke to Mr. Agarwal? | 11:07:05 |
| 16 | A.  Yes. | |
| 17 | Q.  And you reviewed Mr. Agarwal's deposition | |
| 18 | transcript? | |
| 19 | A.  That's correct. | |
| 20 | Q.  All right.  And it's -- using the standards | 11:07:12 |
| 21 | in your discipline, you believe that that is a sufficient | |
| 22 | basis for you to determine what the appropriate costs are | |
| 23 | for Android? | |
| 24 | A.  Yes. | |
| 25 | Q.  All right.  Now, you have -- in your stack | 11:07:27 |

Page 69

```
 1   there of exhibits, one of them is Exhibit 278 -- I'm
 2   sorry.  678.  I'm 400 behind.
 3           MR. KWUN:  I don't have a copy of that
 4   document.
 5           MS. DEARBORN:  (Indicating.)              11:07:45
 6       Q.  BY MR. NORTON:  And you also have 679.
 7       A.  Yes.
 8       Q.  All right.  Let me draw you to 679 first.
 9       A.  Okay.
10       Q.  I think 679 is the -- yeah.  There we go.   11:07:54
11           MR. KWUN:  Which one is 679?
12           MR. NORTON:  679 should be the --
13           THE WITNESS:  (Indicating.)
14           MR. KWUN:  Okay.
15       Q.  BY MR. NORTON:  So have you ever seen -- do  11:08:04
16   you recognize Exhibit 679 at all?
17       A.  Yes.
18       Q.  All right.  And what do you recognize it to
19   be?
20       A.  The deposition of Mr. Agarwal.              11:08:12
21       Q.  All right.  And did you read that before you
22   submitted your report?
23       A.  I certainly read parts of it, yes.
24       Q.  All right.  Do you know whether you read the
25   parts that I've handed to you?                      11:08:23
```

```
 1          A.   I don't -- I don't recall without reading it.
 2          Q.   How did you decide which parts of
 3     Mr. Agarwal's deposition testimony you should read?
 4          A.   Well, I had my staff look it over.  I asked
 5     them to point me to areas of relevance, and I looked at         11:08:40
 6     other parts as I've -- as I saw fit.
 7          Q.   Okay.  So on Exhibit 679, the second page of
 8     it, which has the actual testimony from pages 50 to 53,
 9     and if you -- I'm going to refer you to page 50,
10     beginning at line 16, and I'll give you a moment to look        11:09:14
11     at it.
12               Why don't you go ahead and read page 52 to
13     yourself, page 52, line 14, about halfway down, and just
14     let me know when you've finished.
15          A.   Okay.                                                 11:09:26
16               Okay.  I've looked it over.
17     [REDACTED]
18     [REDACTED]
19          A.   I think I have, yes.  I remember the
20     confusion about gross and growth.                               11:10:35
21          Q.   All right.  And that's on page 53?
22          A.   Yes.
23          Q.   All right.  And on page -- the excerpt that I
24     asked you to read from page 50 to 52, you understand that
25     Mr. Agarwal was testifying at that point in part about          11:10:48
```

Page 71

```
1    the Android P&L?
2         A.  Yes.
```



Page 72



Page 73



Page 74

Highly Confidential - Attorneys' Eyes Only



```
19        Q.   BY MR. NORTON:  And so the only person at           11:14:28
20   Google that you spoke to to determine whether or not the
21   allocation on the P&L was an appropriate one, that is the
22   manner in which the expenses were booked was an
23   appropriate one, was Mr. Agarwal; correct?
24        A.   Yes.  I spoke with Mr. Agarwal.  I think the
25   first time I spoke with Mr. Agarwal there was somebody     11:14:48
```

Page 75

Highly Confidential - Attorneys' Eyes Only

| | |
|---|---|
| 1 | else in the room, but, basically, the discussion was |
| 2 | through Mr. Agarwal. |
| 3 | Q.  All right.  And in your report the only |
| 4 | person you cite in support of the allocation of expenses |
| 5 | is Mr. Agarwal; right?                                   11:15:00 |
| 6 | A.  That's -- that's correct, yes. |
| 7 | Q.  All right.  And when I asked you in your |
| 8 | deposition testimony here today the bases for your |
| 9 | conclusion that the allocation was appropriate, the only |
| 10 | person that you've ever mentioned is Mr. Agarwal;        11:15:14 |
| 11 | correct? |
| 12 | MR. KWUN:  Objection.  Form. |
| 13 | THE WITNESS:  That's correct.  Though, as I |
| 14 | said in reference to these notes that we talked about |
| 15 | earlier, I did do an additional test that determined to  11:15:23 |
| 16 | my satisfaction that my original conclusion after those |
| 17 | discussions was correct. |
| 18 | Q.  BY MR. NORTON:  And your test was to go back |
| 19 | and to ask Mr. Agarwal again? |
| 20 | A.  Well, I went back and asked Mr. Agarwal      11:15:35 |
| 21 | again, and he provided me with specific numbers that |
| 22 | explained a change in expenditures on engineering. |
| 23 | Q.  Now, you also have Exhibit 678 in front of |
| 24 | you; right?  Should be the handwritten notes. |
| 25 | MR. COOPER:  Are the handwritten notes 678 or   11:16:02 |
Page 76

```
 1   679?
 2           MR. NORTON:  I apologize.  679.
 3           MR. KWUN:  679 I was told was the
 4   transcript -- the Agarwal transcript.
 5           THE WITNESS:  That is correct.            11:16:13
 6           MR. NORTON:  All right.  I'll do that again
 7   before the day is out.  679 is the transcript.  678, the
 8   witness actually knows best, but should have the sticker
 9   that says 678.
10           THE WITNESS:  678 are the handwritten notes.  11:16:25
11       Q.  BY MR. NORTON:  Okay.  Thank you.
12           And those are your notes?
13       A.  Yes.
14       Q.  And these are notes of your conversations
15   with Google employees?                               11:16:39
16       A.  Yes.
17       Q.  Are these all of your notes of your
18   conversations with Google employees?
19       A.  They're all the ones that I could find, yes.
20   And there were other interviews where I didn't take   11:16:55
21   notes.
22       Q.  How many times did you interview -- before
23   October 3rd did you interview Mr. Agarwal?
24       A.  At least once.  I'm trying to think if there
25   was a second occasion.  It may have been twice.       11:17:26
```

Page 77

```
 1          Q.  And in Exhibit 678, are there any notes of
 2   any of your conversations with Mr. Agarwal?
 3          A.  I don't believe so, no.
 4          Q.  Were your interviews with Mr. Agarwal prior
 5   to October 3rd in person or by telephone?             11:17:46
 6          A.  By telephone.
 7          Q.  Did any members of your staff participate --
 8   NERA staff participate in that phone call or phone calls?
 9          A.  Yes.  They did.
10          Q.  Did they take notes?                       11:18:03
11          A.  They may have.
12          Q.  Did you direct them to?
13          A.  No.
14          Q.  Did you direct them not to?
15          A.  No.                                        11:18:09
16          Q.  Do you know whether any members of your staff
17   have a practice of keeping notes?
18          A.  Generally, they don't.
19          Q.  Do you know was there a particular person on
20   your staff who participated in your conversations with  11:18:20
21   Mr. Agarwal?
22          A.  No.
23          Q.  All right.  So the three things that you
24   relied on to determine whether the allocation or booking
25   of expenses for Android was appropriate were your      11:18:45
```

```
 1   interviews with Mr. Agarwal -- or interview, his

 2   deposition testimony and the P&L itself?

 3           MR. KWUN:  Objection.  Form.

 4           THE WITNESS:  Well, I also had some

 5   discussion with counsel.  But I didn't rely on that.      11:19:08

 6       Q.  BY MR. NORTON:  So the only -- let me ask it

 7   a little differently, then.

 8           The only bases you're relying upon to reach

 9   your opinion that the allocation of expenses that appears

10   on the Android P&L is an appropriate one, those bases     11:19:20

11   that you're relying on are Mr. Agarwal's deposition

12   testimony, your conversation or conversations with

13   Mr. Agarwal before October 3rd, the P&L itself?

14           MR. KWUN:  Objection.  Form.

15           THE WITNESS:  That's -- that's -- so far,         11:19:34

16   that's correct.  I mean, before October 3rd, that's

17   correct.

18       Q.  BY MR. NORTON:  And then on October 24th, you

19   went back to Mr. Agarwal and asked some additional

20   questions to test?                                         11:19:48

21           MR. KWUN:  Objection.  Form.

22           THE WITNESS:  That's correct.

23       Q.  BY MR. NORTON:  Okay.  Did you ever ask to

24   speak to someone other than Mr. Agarwal in order to

25   determine the accuracy or correctness of the allocation   11:20:03
```

```
 1   of expenses on the Android P&L?
 2        A.  No.
 3        Q.  Now, the Android P&L that you reviewed, where
 4   did you get it?
 5        A.  I don't recall how we got it.  I just asked        11:20:26
 6   my staff to make sure we got it.  And when we got it,
 7   they pointed me to where it was.
 8        Q.  If you would look at your report -- and
 9   again, let's use the most recent version of it.
10        A.  Okay.                                              11:20:59
11        Q.  That's Exhibit 672.
12        A.  Okay.
13        Q.  And if you would turn to your exhibit --
14            MR. KWUN:  Fred, I don't think 672 has the
15   exhibits.  That's the redline.                              11:21:21
16            MR. NORTON:  Oh, is it the redline?  I
17   apologize.  671.  Thank you, Michael.
18            THE WITNESS:  So we're looking at 671?
19        Q.  BY MR. NORTON:  Yes, which has your exhibits.
20   Exhibit 3B.                                                 11:21:43
21        A.  Okay.  Okay.  Got it.
22        Q.  All right.  And that's the profit and loss
23   statements of the Android platform?
24        A.  Yes.
25        Q.  And Item 1 -- or Note 1 under your "Notes and      11:21:55
```

```
 1    Sources," says, "Android P&L through August 20.xls,
 2    received from counsel September 29, 2011."
 3         A.   Yes.
 4         Q.   All right.  So is that correct, you got the
 5    P&L from counsel?                                         11:22:11
 6         A.   That's correct.  We did have an earlier
 7    version of this, of the P&L.  But the version we used for
 8    finishing the full report was based on the transmission
 9    that is reported in footnote 1.
10         Q.   And are you relying on the earlier version     11:22:33
11    that you had, or are you relying upon the one that's
12    cited in Exhibit 3B?
13         A.   The one that's cited in 3B.
14         Q.   Okay.  And that's the one that you got from
15    counsel?                                                  11:22:44
16         A.   Well, I presume we got the other one from
17    counsel, too.  But yes, we did get that one from counsel.
18         Q.   All right.  And the Android P&L through
19    August 20.xls, that document, is that an audited
20    financial statement?                                      11:22:56
21         A.   No.  It's based -- as I understand it, it's a
22    printout of their own internal reporting system -- of
23    Android's internal reporting system.
24         Q.   Now, it has historical data going back a few
25    years; right?                                             11:23:08
```

```
 1            A.   Yes.
 2            Q.   And are any of the numbers audited numbers?
 3            A.   No.  Well, I'll say not that I know of.
 4            Q.   Did you look at any other financial documents
 5   to -- other than the P&L itself, did you look at any        11:23:41
 6   other Google financial documents to verify the accuracy
 7   of the booking of expenses on the Android P&L?
 8            MR. KWUN:  Objection.  Form.
 9            THE WITNESS:  I had it in my mind that I did
10   see something else, but I can't remember what it was.  So   11:24:34
11   basically, the P&Ls are all that I can actually visualize
12   or remember looking at.
13            I will say that P&Ls are the sorts of
14   things -- that I saw, were the sorts of things that were
15   consistent with what I've seen in other companies for       11:24:48
16   their internal reporting of their operations.
17            Q.   BY MR. NORTON:  Did you look at P&Ls for
18   any -- P&Ls for any of Google's other lines of business
19   to see if the P&L you were looking at was consistent with
20   the way Google books expenses in other parts of its         11:25:06
21   business?
22            A.   No.  I don't think I did.
23            Q.   Did anybody tell you you could not do that,
24   if you wanted to?
25            A.   No.                                            11:25:17
```

Page 82

Highly Confidential - Attorneys' Eyes Only

```
 1          Q.   In your report at page 30 --
 2          A.   Yes.
 3          Q.   -- where you discuss your five-year -- your
 4   decision to use a five-year period; right?
 5          A.   Yes.                                              13:17:58
 6          Q.   And you cite the Bureau of Economic Analysis
 7   in Footnote 111; right?
 8          A.   Yes.
 9          Q.   And then the FASB standard that you cite
10   actually doesn't say anything about five years.  It talks    13:18:10
11   about whether it's a straight line or ratio of current
12   year revenue divided by future expected revenue.
13          A.   Yes.  Yes.
14          Q.   So if you're talking about five years, you're
15   relying on the citation of the Bureau of Economic            13:18:23
16   Analysis; right?
17          A.   And my own introspection on the issue.
18          Q.   All right.  And you're not an accountant;
19   right?
20          A.   Well, this is not an accounting issue.  But      13:18:31
21   no, I'm not.
22          Q.   Well, FASB is an accounting standard; right?
23          A.   Yes.
24          Q.   Okay.  The -- when you say that a five-year
25   amortization period is consistent with prevailing            13:18:52
```

303

```
1   STATE OF CALIFORNIA    ) ss:
2   COUNTY OF MARIN        )
3
4              I, LESLIE ROCKWOOD, CSR No. 3462, do hereby
5   certify:
6              That the foregoing deposition testimony was
7   taken before me at the time and place therein set forth
8   and at which time the witness was administered the oath;
9              That testimony of the witness and all
10  objections made by counsel at the time of the examination
11  were recorded stenographically by me, and were thereafter
12  transcribed under my direction and supervision, and that
13  the foregoing pages contain a full, true and accurate
14  record of all proceedings and testimony to the best of my
15  skill and ability.
16             I further certify that I am neither counsel
17  for any party to said action, nor am I related to any
18  party to said action, nor am I in any way interested in
19  the outcome thereof.
20             IN WITNESS WHEREOF, I have subscribed my name
21  this 27th day of October, 2011.
22
23
24                    _____
25                    LESLIE ROCKWOOD, CSR. NO. 3462
```