KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
MICHAEL S. KWUN - # 198945
mkwun@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Tel: 415.391.5400
Fax: 415.397.7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER
(*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (Pro Hac Vice)
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: 415.318.1200
Fax: 415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel: 650.328.8500
Fax: 650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>      Plaintiff,<br><br>   v.<br><br>GOOGLE INC.,<br><br>      Defendant. | Case No. 3:10-cv-03651 WHA<br><br>**GOOGLE'S 4/5/12 COPYRIGHT LIABILITY TRIAL BRIEF**<br><br>Dept.:    Courtroom 8, 19th Floor<br>Judge:   Hon. William Alsup |

# TABLE OF CONTENTS

**Page**

I. Oracle cannot retract its concession about the Java programming language.......................1

II. Section 102(b) denies copyright protection to the 37 APIs. .................................................1

    A. Section 102(b) excludes eight categories from copyright protection. .....................1

    B. There is no numerosity exception to Section 102(b). ..............................................5

    C. Oracle's other Section 102(b) cases are inapposite. .................................................6

III. The merger doctrine bars copyright protection for the 37 APIs. .........................................8

IV. Computer programming languages are not copyrightable....................................................8

V. Subject to the terms of the Patent Act, one can try to patent a selection of APIs................9

VI. There is no basis for a motion to attack Google's equitable defenses. ..............................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Academic Games League of Am., Inc.*
   89 F.3d 614 (9th Cir. 1996) .................................................................................................. 9

*American Dental Ass'n v. Delta Dental Plans Ass'n*
   126 F.3d 977 (7th Cir. 1997) ................................................................................................ 6

*Apple Computer, Inc. v. Formula Int'l, Inc.*
   725 F.2d 521 (9th Cir. 1984) ................................................................................................ 4

*Atari Games Corp. v. Nintendo of Am. Inc.*
   975 F.2d 832 (Fed. Cir. 1992) ........................................................................................ 8, 10

*ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions*
   402 F. 3d 700 (6th Cir. 2005) ............................................................................................... 7

*Brief English Sys., Inc. v. Owen*
   48 F.2d 555 (2d Cir. 1931) ................................................................................................... 9

*CDN Inc. v. Kapes*
   197 F.3d 1256 (9th 1999) ..................................................................................................... 5

*eScholar, LLC v. Otis Educ. Sys.*
   76 U.S.P.Q.2d (BNA) 1880 (S.D.N.Y. 2005) ...................................................................... 4

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*
   499 U.S. 340 (1991) .............................................................................................................. 5

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*
   446 F. 2d 738 (9th Cir. 1971) ............................................................................................... 8

*Hutchins v. Zoll Med. Corp.*
   492 F.3d 1377 (Fed. Cir. 2007) ............................................................................................ 4

*Incredible Techs., Inc. v. Virtual Techs., Inc.*
   400 F.3d 1007 (7th Cir. 2005) .............................................................................................. 4

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*
   886 F.2d 1173 (9th Cir. 1989) ..................................................................................... 4, 5, 8

*Lotus Dev. Corp. v. Borland Int'l, Inc.*
   49 F.3d 807 (1st Cir. 1995) ............................................................................................. 3, 4

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*
   132 S. Ct. 1289 (2012) ......................................................................................................... 9

*Mazer v. Stein*
   347 U.S. 201 (1954) ........................................................................................................... 10

*Mitel, Inc. v. Iqtel, Inc.*
   124 F.3d 1366 (10th Cir. 1997) .................................................................................... 2, 3, 4

*O'Reilly v. Morse*
   56 U.S. 62 (1854) ................................................................................................................ 9

*Practice Mgmt. Info. Corp. v. American Med. Ass'n*
   121 F.3d 516 (9th Cir. 1997) ............................................................................................. 6

*Reiss v. National Quotation Bureau, Inc.*
   276 F. 717 (S.D.N.Y. 1921) ............................................................................................... 9

*Satava v. Lowry*
   323 F.3d 805 (9th Cir. 2003) ............................................................................................. 5

*Sega Enters. Ltd. v. Accolade, Inc.*
   977 F.2d 1510 (9th Cir. 1992) ........................................................................................... 5

*Taylor Instrument Cos. v. Fawley-Brost Co.*
   139 F.2d 98 (7th Cir. 1943) ............................................................................................. 10

*Toro Co. v. R&R Prods. Co.*
   787 F.2d 1208 (8th Cir. 1986) ....................................................................................... 4, 9

*TRW Inc. v. Andrews*
   534 U.S. 19 (2001) .............................................................................................................. 1

**Federal Statutes**

17 U.S.C. § 101 .............................................................................................................. 2, 3, 9

17 U.S.C. § 102(b) ........................................................................................................ *passim*

**Other Authorities**

Arthur R. Miller, *Copyright Protection for Computer Programs, Databases, and
   Computer-Generated Works*, 106 HARV. L. REV. 977 (1993) ....................................... 4

Pamela Samuelson, *Why Copyright Law Excludes Systems and Processes from the
   Scope of Protection,* 85 TEX. L. REV. 1921, 1923 (2007) ................................................ 1, 2, 4

**I.      Oracle cannot retract its concession about the Java programming language.**

Oracle seeks to rewrite its concession that the Java programming language is free and open for anyone to use.  Although again conceding that anyone can use the language to *write* programs, Oracle now claims that if developers want a computer to *understand what they have written,* that requires a license.  *See* Oracle 4/3/12 Br. [Dkt. 853] at 5.

The Court should not condone this legal sophistry.  It is both contrary to Oracle's prior representations to the Court, *see* Google 3/23/12 Br. [Dkt. 823] at 4-5, and internally inconsistent. When developers write programs that include API calls, they invoke the structure and arrangement of the APIs.  For example, in order to retrieve content from a website using the getContent() method, the developer must include statements in the source code that indicate that the getContent() method is in the URL class in the java.net package.  Oracle *concedes that this requires no license.*  Yet Oracle argues that Google could not *implement* this method with its own source code because, according to Oracle, the structure and arrangement of this method are copyrighted.  Oracle's concession that the language is free and open for anyone to use is fundamentally inconsistent with its claim that Google's use of the APIs infringes.[1]

**II.     Section 102(b) denies copyright protection to the 37 APIs.**

**A.      Section 102(b) excludes eight categories from copyright protection.**

Oracle claims that Professor Samuelson incorrectly argues that Section 102(b) means what it says.  Professor Samuelson argues that the eight categories of exclusion in Section 102(b)— "idea, procedure, process, system, method of operation, concept, principle, or discovery"—must each be given meaning.  *See* Pamela Samuelson, *Why Copyright Law Excludes Systems and Processes from the Scope of Protection,* 85 TEX. L. REV. 1921, 1923 (2007) ("*Samuelson*").

Professor Samuelson is, of course, correct.  "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews,*

---

[1] Oracle argues that Google's counterclaims state the APIs are not part of the language.  That is not true.  Google distinguished between the language, the runtime, and the entire platform. Google's Am. Counterclaims [Dkt. 51], ¶ 1.  Those things *are* different.  The runtime, for example, includes a virtual machine.  The platform further includes written documentation.

534 U.S. 19, 31 (2001) (quotation marks and citation omitted).  Oracle concedes that "[t]o the extent that a system or method of operation *is an idea,* it cannot be copyrighted."  Oracle 4/3/12 Br. at 2 (emphasis added).  But Section 102(b) says more than that—it says that systems and methods of operation cannot be copyrighted, period.  Had Congress intended to say that systems and methods of operation were unprotectable only if they also are "ideas," it would have so said.

Oracle relies on the fact that many courts have referred to Section 102(b) as a codification of the so-called idea/expression dichotomy.  But the word "idea" in "idea/expression dichotomy" is shorthand for the longer list of unprotectable categories in Section 102(b):

> Section 102(b) codifies one of copyright law's fundamental distinctions—copyright protection extends to an author's ***original expression*** and not to the ***ideas*** embodied in that expression.  Thus, when considering whether a defendant copied protectable elements of a copyrighted work, we must determine whether or to what extent the copied portions constitute ideas, ***processes, systems, or methods of operation,*** on one hand, or protectable expression, on the other.

*Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d 1366, 1370-71 (10th Cir. 1997) (emphases added).

We also know that Section 102(b) excludes more than ideas because that is what Section 102(b) says, and the legislative history confirms it.  "Section 102(b) in no way enlarges or contracts the scope of copyright protection under the present law."  H.R. Rep. No. 94-1476, at 57 (1976).  "[P]resent law" was pre-1976 Act cases.  That Section 102(b) was intended to "restate, in the context of the new single Federal system of copyright, that the basic dichotomy between expression and idea remains unchanged," *id.,* confirms that the "idea/expression dichotomy" is shorthand for referring to the limitations developed through pre-1976 Act cases.  *See Samuelson,* 85 TEX. L. REV. at 1924-44 (discussing pre-1976 Act cases).

That said, there is no dispute that "computer programs" may be copyrightable subject matter.  A computer program is "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result."  17 U.S.C. § 101.  The Court thus should not interpret Section 102(b) to render computer programs *per se* unprotectable.  But this does not require limiting excluded "systems" and "methods of operation" to "ideas," as Oracle argues.  Section 102(b) already excludes ideas expressly, so excluding "systems" and "methods of operation" only if they are also ideas would render those terms superfluous.

Whatever the limits of Section 102(b), the selection, arrangement and structure of the APIs fall on the unprotected side of the divide. The APIs "*tell the programmer how to use the library*, and include a set of names that can be *used to access different features of the library,* together with conventions about their use." Oracle Copyright MSJ Opp. [Dkt. 339] at 2 (emphasis added). That is, they are a system or method of operation. And as Oracle implicitly concedes,[2] the APIs, divorced from the noninfringing source code, do not even qualify as a set of instructions for bringing about "a certain result." *See* 17 U.S.C. § 101; Google 4/3/12 Br. [Dkt. 852] at 5-6. The APIs thus are at the abstract, unprotectable end of the dichotomy.

Oracle argues that the reasoning in *Lotus Dev. Corp. v. Borland Int'l, Inc.,* 49 F.3d 807 (1st Cir. 1995), *aff'd by an evenly divided court,* 516 U.S. 233 (1996), proves too much, and would preclude copyright protection for all computer programs. Nothing suggests that the *Lotus* court intended such a result. First, Lotus did not allege that Borland had copied any computer code, so that issue was not before the First Circuit. Second, the menu hierarchy arguably was not even a series of instructions for "bringing about *a certain result*," 17 U.S.C. § 101 (emphasis added), but was a general purpose system or method of operation for bringing about whatever result a spreadsheet user might want. But even if the Lotus menu hierarchy could qualify as a "computer program," the accused aspects of the Oracle APIs are more abstract than that. They are not limited to the use of a spreadsheet program; they apply to the use of a programming language. Thus, even if Oracle were correct that the *Lotus* reasoning *could* be misapplied*, on the facts of the present case* the accused aspects of the APIs are uncopyrightable.

The Tenth Circuit's disagreement with the *Lotus* reasoning does not help Oracle either. The Tenth Circuit "conclude[d] that although an element of a work may be characterized as a method of operation, that element may nevertheless *contain* expression that is eligible for copyright protection." *Mitel,* 124 F.3d at 1372 (emphasis added). Such expression may be protectable, even if at a "higher level of abstraction" the material is a method of operation. *Id.*[3]

---

[2] Oracle concedes that the APIs do not bring about any results unless paired with an underlying implementation. *See* Oracle 4/3/12 Br. [Dkt. 853] at 5 ("whoever runs a program that includes API calls . . . needs an executable implementation of the APIs.").

[3] The other cases cited by Oracle as disagreeing with the *Lotus* approach*, eScholar, LLC v. Otis*

3

Google *agrees*. The source code Google wrote to implement the APIs is copyrightable expression, even though it implements what is, at a higher level of abstraction, an unprotectable method of operation.[4]

But *the Tenth Circuit never held that the command codes at issue were not a method of operation.* Instead, it affirmed based on a lack of *originality*. *See id.* at 1373-76. In fact, after explaining that a method of operation can contain expression, the decision never again uses the phrase "method of operation." Because it affirmed on other grounds, the Tenth Circuit *did not need to address* whether there was protectable expression at a level of abstraction below the unprotected method of operation at issue.[5]

Oracle's dogged reliance on the pre-*Feist* decision in *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.,* 886 F.2d 1173 (9th Cir. 1989), also does not help it. The Ninth Circuit did not hold that "some discretion and opportunity for creativity" compels the conclusion that material is expressive. *See id.* at 1176. Instead, on a review for clear error of a preliminary injunction, it concluded that this fact "supports" a finding of expression, while also noting that "[t]his issue will no doubt be revisited at trial . . . ." *Id. Johnson Controls* held only that "structure, sequence and organization" will *sometimes* be protected. *See id.* at 1175.

---

*Educ. Sys.,* 76 U.S.P.Q.2d (BNA) 1880, 1897 (S.D.N.Y. 2005), and *Toro Co. v. R&R Prods. Co.,* 787 F.2d 1208, 1212 (8th Cir. 1986), are no different, holding only that what is a method of operation at one level of abstraction may contain expression at a lower level of abstraction. Oracle also ignores other circuit court opinions that adopt analyses of Section 102(b) similar to that used in *Lotus. See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1012 (7th Cir. 2005); *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1383-84 (Fed. Cir. 2007).

[4] In a non-sequitur, Oracle argues that the Court should not follow *Lotus* because "the Java class libraries . . . qualify for copyright protection because they are computer programs written in source code." Oracle 4/3/12 Br. at 12. But there is no dispute that, aside from the nine-line rangeCheck() method, the source code is not at issue. In a similar non-sequitur, Oracle cites *Apple Computer, Inc. v. Formula Int'l, Inc.,* 725 F.2d 521 (9th Cir. 1984), a pre-*Feist* case. In that case, the Ninth Circuit rejected Formula's argument that operating systems are unprotectable methods of operation. *Id.* at 523-25. But that case did not address whether the *non-literal* aspects of an operating system are copyrightable, because Formula *conceded* that its *code* was substantially similar to Apple's code. *See id.* at 522-23. Apple, meanwhile, conceded that it sought "to copyright only its particular set of instructions, not the underlying computer process." *Id.* at 525. *Apple v. Formula* does not address any of the disputed issues in the present case.

[5] Oracle cites an article by Professor Miller about the scope of *Lotus. See* Arthur R. Miller, *Copyright Protection for Computer Programs, Databases, and Computer-Generated Works*, 106 HARV. L. REV. 977 (1993). Professor Miller wrote that article while serving as counsel to Lotus in that case. *See Samuelson,* 85 TEX. L. REV. at 1949 n.191.

Moreover, under Ninth Circuit precedent, Section 102(b) precludes copyright protection for functional requirements for compatibility. *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1522 (9th Cir. 1992). Google has not "mischaracterized" *Sega*. The Ninth Circuit explained:

> The declarations of Accolade's employees indicate, and the district court found, that Accolade copied Sega's software solely in order to discover the functional requirements for compatibility with the Genesis console—aspects of Sega's programs that are not protected by copyright.

977 F.2d at 1522 (citing 17 U.S.C. § 102(b)). That passage indicates two things. First, as a *factual* matter, Accolade copied Sega's software (Sega's *implementing* code) for the purpose of discovering functional requirements for compatibility. Second, as a *legal* matter, those functional requirements for compatibility "are not protected by copyright," and the *legal* basis for that is Section 102(b). *Id.* (citing 17 U.S.C. § 102(b)). The ultimate question was whether Accolade's "intermediate copying" was a fair use, to which the court answered "yes." *Id.* at 1527-28. But the court could only reach that conclusion by relying on the *legal principle* that Section 102(b) excludes functional requirements for compatibility from copyright protection.[6]

### B. There is no numerosity exception to Section 102(b).

Oracle argues that because its APIs meet the "extremely low" constitutional threshold for originality, *see Feist Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991), and because the 37 APIs at issue have many elements, they are copyrightable. Oracle 4/3/12 Br. at 1-2 (citing *Satava v. Lowry,* 323 F.3d 805, 811 (9th Cir. 2003)). But *Satava* held only that such a work "is eligible" for copyright protection, *id.,* explaining only how a combination might meet the extremely low constitutional threshold for originality, and not other requirements for copyrightability.[7] "*In no case*" does protection for even an "*original work of authorship*" extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such a

---

[6] The Section 102(b) issues distinguish this case from *CDN Inc. v. Kapes,* 197 F.3d 1256 (9th 1999). CDN did not seek protection for a *system* of coin pricing, or a *method of operation* for coin pricing. Nor could Kapes argue that there were any functional requirements of compatibility requiring its use of CDN's prices.

[7] The focus on originality is apparent in the court's citation to *Feist* for the proposition that the "principal focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection." *Id.* (quoting *Feist,* 499 U.S. at 358).

work." 17 U.S.C. § 102(b) (emphases added).

### C.  Oracle's other Section 102(b) cases are inapposite.

Oracle claims that *Practice Mgmt. Info. Corp. v. American Med. Ass'n,* 121 F.3d 516, 518-19 (9th Cir. 1997), supports its position. It does not, because that case addressed only whether a *book describing* a code system was copyrightable.[8] And the Seventh Circuit's similar decision in *American Dental Ass'n v. Delta Dental Plans Ass'n,* 126 F.3d 977 (7th Cir. 1997), was either wrongly decided, or unclear about its scope. The court claims to have addressed whether the ADA's "taxonomy" for dental procedures was copyrightable subject matter. *Id.* at 977. But in concluding that the "taxonomy" was expressive, the Seventh Circuit relied on *the text descriptions* the ADA employed. *See id.* at 979. That suggests the issue was the copyrightability of the ADA's *book about the taxonomy,* not the taxonomy itself.[9]

Moreover, the Seventh Circuit held that *using* the taxonomy would not infringe. *See id.* at 981 (citing 17 U.S.C. § 102(b)). But, according to the Seventh Circuit, Section 102(b) did "not permit Delta to copy *the Code itself*, or make and distribute a *derivative work based on the Code,* any more than Baker could copy Selden's book." *Id.* (emphasis added). Thus, although the Seventh Circuit claimed it was deciding whether a "taxonomy" was copyrightable, the only thing it actually held was that copying "the Code" (earlier described as *a book, see id.* at 979) would infringe, as would making and distributing a "derivative work" based on the Code. *Id.* at 981. The court did not address the standard for determining what would be derivative, concluding that "[w]hether there are other obstacles to the relief the ADA seeks is a subject best left to the district court in the first instance." *Id.*[10]

---

[8] The work at issue was the AMA's *book,* the *Physician's Current Procedural Terminology* ("*CPT*"). *Id.* at 517. The *CPT* identifies "more than six thousand medical procedures and provides a five-digit code *and brief description* for each." *Id.* (emphasis added). Nothing in the opinion suggests that the *code system,* divorced from the AMA's *book*, was at issue. *See id.* at 518-20. The Ninth Circuit affirmed the AMA's copyright in "the CPT," which the opinion earlier defined as the book itself, and which included the text descriptions. *See id.* at 517, 520.

[9] The court further relied on the fact that the codes for the taxonomy could have been different in length, or used different numbers. *See id.* The court did not, however, explain what was "expressive" about that.

[10] That said, the Seventh Circuit does appear to have concluded that the actual numbers used by the ADA were copyrightable subject matter under Section 102(a). *Id.* at 979.

In a better reasoned opinion, the Sixth Circuit has commented that the Seventh Circuit's "rationale for holding that the individual procedure numbers were copyrightable is rather opaque." *ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions,* 402 F.3d 700, 708 (6th Cir. 2005). The Sixth Circuit concluded that none of the factors considered by the Seventh Circuit "evidences any creativity by the ADA that would render the numbers eligible for copyright protection." *Id.* "Original and creative *ideas,* however, are not copyrightable, because 17 U.S.C. § 102(b) provides that 'in no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of [its] form.'" *Id.* at 707. "And all of the creative aspects of the ATC classification scheme are just that: ideas. ATC cannot copyright its prediction of how many types of sealing ring will be developed in the future, *its judgment that O-rings and sealing rings should form two separate categories of parts, or its judgment that a new part belongs with the retainers as opposed to the pressure plates.*" *Id.* (emphasis added). Similarly, Oracle cannot copyright its decisions about how to group classes or the other aspects of the selection, arrangement and structure of the APIs.

The Sixth Circuit also rejected ATC's argument that the combination of the elements of its classification was protectable:

> As a last resort, ATC suggested during oral argument that even if neither the ideas that gave rise to the parts numbers, nor the individual part numbers, qua expressions of those ideas, are copyrightable, the part numbers taken as a whole were somehow copyrightable as a middle ground between the two, much in the same way that while neither the basic idea behind a novel nor the individual words used to write it are protected, the story that those words form when taken together is copyrightable. The flaw in this argument is that there is no such middle ground in this case. Unlike the words that comprise a novel, which add up to a story, **the numbers used in ATC's catalog only add up to a long list of numbers. Putting all the numbers together does not make them expressive in the way that putting words together makes a narrative.**

*Id.* at 710. Oracle's argument is equally unavailing, because its organization similarly is inexpressive.[11] Whether the Court relies directly on a lack of expression or on the exclusions in Section 102(b), the selection, arrangement and structure of Oracle's APIs are not copyrightable.

---

[11] The sole example of alleged expressiveness in Oracle's brief is based on a hearsay Wikipedia article and attorney argument. *See* Oracle 4/3/12 Br. [Dkt. 853] at 4.

7
GOOGLE'S 4/5/12 COPYRIGHT LIABILITY TRIAL BRIEF
Case No. 3:10-CV-03561 WHA

644952.02

### III. The merger doctrine bars copyright protection for the 37 APIs.

In the part of its brief addressing merger Oracle argues that the selection, arrangement and structure of its APIs are "expression." *See* Oracle 4/3/12 Br. [Dkt. 853] at 3-4. That misses the point. Merger *denies protection to expression* that has merged with the underlying idea. "When the 'idea' and its 'expression' are thus inseparable, *copying the 'expression' will not be barred,* since protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner free of the conditions and limitations imposed by the patent law." *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F. 2d 738, 742 (9th Cir. 1971) (emphasis added) (citing, among other cases, *Baker v. Selden,* 101 U.S. 99, 103 (1879)).

The merger case cited by Oracle elsewhere in its brief, *Atari Games Corp. v. Nintendo of Am. Inc.,* 975 F.2d 832 (Fed. Cir. 1992), does not help it. As in *Johnson Controls,* the Federal Circuit in *Atari* was reviewing a preliminary injunction under the clear error standard. *Id.* at 835, 840. Based on the preliminary injunction record, the court found "no clear error in the district court's conclusion" that the expression in Nintendo's "unlock" code did not merge with the underlying "process" because Nintendo had "produced expert testimony showing a multitude of different ways to generate a data stream which unlocks the NES console." *Id.* at 840. Here, the opposite is true—source code written by developers using the 37 APIs at issue *would not work* if Android did not have substantially the same selection, arrangement and structure of elements for those APIs as J2SE 5.0. *Atari*, in contrast, copied aspects of the structure of Nintendo's unlock program that were unnecessary to unlock the NES console. *Id.* at 844-45.

Moreover, as Google has explained, the Ninth Circuit does not limit application of the merger doctrine to high levels of abstraction. *See* Google 4/3/12 Br. [Dkt. 852] at 8-9. To the contrary, the Ninth Circuit has applied the merger doctrine to deny copyright protection for one person's *particular expression* of his own *particular rules* for his own *particular games*. *See Allen v. Academic Games League of Am., Inc.,* 89 F.3d 614, 618 (9th Cir. 1996).

### IV. Computer programming languages are not copyrightable.

Oracle offers no affirmative basis for concluding that a computer programming language

can be copyrighted, noting only that it is unaware of any "federal"[12] judicial decision holding otherwise. Oracle cites a Southern District of New York holding copyrightable a set of codes that lacked any meaning or grammar, *see Reiss v. National Quotation Bureau, Inc.,* 276 F. 717, 718 (S.D.N.Y. 1921) (Learned Hand, J.)), but that decision is of doubtful value, because ten years later the Second Circuit held that a published system for shorthand could *not* be protected by copyright. *See Brief English Sys., Inc. v. Owen,* 48 F.2d 555 (2d Cir. 1931).[13]

Regardless, the Court did not ask whether a set of codes that is free of any semantics can be copyrighted. The Court asked whether a computer programming language can be copyrighted. The fact that a language—or indeed, the APIs at issue—can be used *by others* to express, and has a structure designed to support that expression by others, distinguishes it from the code book at issue in *Reiss,* and is precisely what makes it a *system* for expression, or a *method for operation* for communication. Section 102(b) forecloses copyright protection for that reason.[14]

### V.   Subject to the terms of the Patent Act, one can try to patent a selection of APIs.

Oracle agrees with Google that it is possible to try to patent a selection of classes for APIs, though the selection of classes would need to be part of a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101; *see* Oracle 4/3/12 Br. at 6.[15] Oracle notes, however, that it is commonplace for patents to include copyright notices. But the fact that patent specifications can *contain* copyrighted material is of no relevance. As the Federal Circuit has recognized, copyright and patent are fundamentally distinct legal regimes protecting

---

[12] Opinions outside the United States have so held. *See* Google 4/3/12 Br. [Dkt. 852] at 14-16.

[13] Judge Hand's reasoning is also at odds with *Toro,* relied upon by Oracle elsewhere in its brief. In *Toro,* the Eighth Circuit held that an arbitrary collection of part numbers does not even cross the originality threshold required by the Copyright Act. 787 F.2d at 1213. Under this reasoning, the codes at issue in *Reiss,* which had "as yet no meaning," could not have been copyrightable.

[14] Oracle also fails to state whether a computer language is patentable. Oracle's citation to *O'Reilly v. Morse,* 56 U.S. 62 (1854), is irrelevant, because Morse code is not a language (as Oracle as much as concedes, noting that it lacks a vocabulary or grammar), let alone a computer language. However, computer programming languages are not patentable. *See* Google 4/3/12 Br. at 16-17. That does not imply that a computer language must be copyrightable, because not everything is protected by copyright or parent. *Cf. Mayo Collaborative Servs. v. Prometheus Labs, Inc.,* 132 S. Ct. 1289, 1293 (2012) ("Laws of nature, natural phenomena, and *abstract ideas*' are not patentable.") (quotation marks and citation omitted, and emphasis added).

[15] Google reiterates that such a patent claim would be subject to challenge on any ground allowed by the Patent Act.

different types of intellectual property.  *Atari,* 975 F.2d at 839 ("Thus, patent and copyright laws protect distinct aspects of a computer program.").  That distinction was well understood in the pre-1976 Copyright Act case law codified in Section 102(b) of the Copyright Act.[16]  That the source code *implementing* a patented process, for example, can be copyrighted does not mean that the process *itself* can be copyrighted.  *See* 17 U.S.C. § 102(b) ("processes" not protected).

**VI.     There is no basis for a motion to attack Google's equitable defenses.**

Oracle belatedly seeks leave to attack two of Google's four equitable defenses, arguing Google has not produced evidence of reliance.  Such a motion would be both too late and an improper attempt to seek summary judgment through an *in limine* motion.  *See* Order [Dkt. 384] at 1 (limiting parties to five *in limines* and warning that a "disguised summary judgment motion" would be "highly disfavored").  Moreover, Oracle's characterization of discovery on this issue is inaccurate.  Both parties challenged the adequacy of the other's responses to contention interrogatories, the parties ultimately agreed on the level of supplementation and detail to be provided, and Oracle did not challenge Google's supplemental response.  Most importantly, Oracle's assertion that these two defenses "turn on" statements made in 2011 is simply incorrect.  As Oracle is well aware, it deposed Google witnesses such as Eric Schmidt and learned that they knew of Sun's statements approving of Android years ago, and understood them to mean that Sun had no issue with Android.

Dated:  April 5, 2012                                                               KEKER & VAN NEST LLP

                                                                                                  /s/ Robert A. Van Nest
                                                                               By:        ROBERT A. VAN NEST

                                                                                          Attorneys for Defendant
                                                                                          GOOGLE INC.

---

[16] *See, e.g., Taylor Instrument Cos. v. Fawley-Brost Co.,* 139 F.2d 98 (7th Cir. 1943) ("Thus it appears that Congress has provided two separate and distinct fields of protection, the copyright and the patent.").  *Mazer v. Stein,* 347 U.S. 201 (1954), is not to the contrary.  There the Court held that "the patentability of [Stein's] statuettes, fitted as lamps or unfitted, does not bar copyright as works of art."  *Id.* at 217.  The patent in that case, however, was not for a "useful art"—it was a *design* patent, covering the ornamental design of the lamp.  *Id.* at 215.

10
GOOGLE'S 4/5/12 COPYRIGHT LIABILITY TRIAL BRIEF
Case No. 3:10-CV-03561 WHA

644952.02