1  KEKER & VAN NEST LLP                KING & SPALDING LLP
   ROBERT A. VAN NEST - # 84065        DONALD F. ZIMMER, JR. - #112279
2  rvannest@kvn.com                    fzimmer@kslaw.com
   CHRISTA M. ANDERSON - # 184325      CHERYL A. SABNIS - #224323
3  canderson@kvn.com                   csabnis@kslaw.com
   DANIEL PURCELL - # 191424           101 Second Street, Suite 2300
4  dpurcell@kvn.com                    San Francisco, CA  94105
   633 Battery Street                  Tel:  415.318.1200
5  San Francisco, CA 94111-1809        Fax: 415.318.1300
   Telephone:    415 391 5400
6  Facsimile:    415 397 7188

7  KING & SPALDING  LLP                GREENBERG TRAURIG, LLP
   SCOTT T. WEINGAERTNER               IAN C. BALLON - #141819
8  (*Pro Hac Vice*)                    ballon@gtlaw.com
   sweingaertner@kslaw.com             HEATHER MEEKER - #172148
9  ROBERT F. PERRY                     meekerh@gtlaw.com
   rperry@kslaw.com                    1900 University Avenue
10 BRUCE W. BABER (Pro Hac Vice)       East Palo Alto, CA  94303
   1185 Avenue of the Americas         Tel: 650.328.8500
11 New York, NY 10036                  Fax: 650.328.8508
   Tel:  212.556.2100
12 Fax: 212.556.2222

13

   Attorneys for Defendant
14 GOOGLE INC.

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17              SAN FRANCISCO DIVISION

18 ORACLE AMERICA, INC.,              Case No. 3:10-cv-03651 WHA

19          Plaintiff,                **GOOGLE INC.'S OPPOSITION TO
                                      ORACLE AMERICA, INC.'S MOTION TO
20      v.                            STRIKE PORTIONS OF DR. JAMES
                                      KEARL'S EXPERT REPORT**
21 GOOGLE INC.,
                                      Dept.:     Courtroom 8, 19th Floor
22          Defendant.                Judge:     Hon. William Alsup

23

24

25

26

27

28

---

GOOGLE'S OPPOSITION TO ORACLE'S MOTION TO STRIKE PORTIONS OF KEARL REPORT
Case No. 3:10-CV-03561 WHA

645742.01

1    Although it styles its request as a motion to strike only "one aspect" of the opinion of the

2    Court's Rule 706 damages expert, Dr. James R. Kearl, Oracle's motion actually seeks a

3    preemptive evidentiary ruling from the Court that would bar Dr. Kearl, Google's expert Dr. Alan

4    Cox, or *any* Google witness from offering *any* testimony about Google's Android-related costs.

5    Ultimately, Oracle gives the game away by confessing what the relief it requests would mean for

6    this case. Oracle Mot. at 9:22-10:2. If the Court were to preclude all testimony on Android-

7    related costs, that ruling alone could give Oracle ██████████ windfall (a result that could

8    only rest on the absurd assumption that Google spent *nothing* on Android development), as

9    compared with Dr. Kearl's opinion that Google's Android-related profits through September

10   2011 are ████████ Simply put, Oracle has filed a motion to bar Google from offering any

11   evidence on a matter that it concedes is worth ██████████████ Oracle talks about

12   prejudice, but the prejudice to Google from precluding any evidence related to Android's costs—

13   the result Oracle is really asking for, even if it refuses to say so explicitly—would be staggering.

14       In seeking what amounts to a preclusive issue sanction deeming Google's Android-related

15   profits equal to its revenues, Oracle's motion also directly flouts this Court's prior orders. The

16   Court's order on pretrial filings explain that "motions *in limine* must be directed at excluding

17   specific items of evidence; categorical motions and disguised summary judgment motions are

18   highly disfavored." Sept. 9, 2011 Order [Dkt. 384] at 1. There can be no dispute that Oracle's

19   motion seeks categorical exclusion of *all* evidence regarding Google's Android-related costs.

20   Further, even if Oracle's motion were a properly narrowed motion *in limine,* only two weeks ago

21   this Court directly instructed the parties: "Please do not file more in limine motions." Mar. 20,

22   2012 Order [Dkt. 820] at 1.

23       On the merits, Oracle's motion makes no sense legally or logically. Oracle points out that

24   Dr. Kearl relies on the opinions of Google's expert Dr. Alan Cox, who relied on a foundation

25   provided by Google documents and an interview with employee Aditya Agarwal, who is not on

26   Google's witness list. Accordingly, Oracle argues, it is impossible for Google to provide any

27   foundation for Dr. Cox's opinions, and thus impossible for Dr. Cox's report to provide any basis

28   for Dr. Kearl to rely on, either.

1

GOOGLE'S OPPOSITION TO ORACLE'S MOTION TO STRIKE PORTIONS OF KEARL REPORT
Case No. 3:10-CV-03561 WHA

645742.01

1    The mistaken central premise of Oracle's motion is that Google can only offer testimony

2   about Android costs from Agarwal.  Nothing in any of this Court's orders, or any case Oracle

3   cites, imposes that limitation.  As Oracle concedes, Dr. Cox's opinions are primarily based not on

4   anything Agarwal told him, but on ███████████████████████████████████

5   Oracle Mot. at 6:4-9.  That is the evidence that provides the foundation for the numbers in his

6   report.  As Agarwal made clear, █████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████  Declaration of David Zimmer in Support of Google's Opposition

9   ("Zimmer Decl.") Ex. A (Agarwal Dep.) at 41:5-42:8.  And despite Agarwal's absence from

10  Google's witness list, there are several other Google witnesses who were disclosed on that list on

11  subjects that encompass Android financial data.  Most obviously, Google disclosed Android

12  project head Andy Rubin as a witness expected to testify about, among other subjects, "the efforts

13  and costs incurred in developing and ultimately open sourcing the Android platform."  Google's

14  Trial Witness Disclosure [Dkt. 525-3] at 4.  At trial, Rubin (or others[1]) should be able to

15  authenticate the Android financial documentation and explain the figures contained therein, and

16  thus lay the necessary foundation for Dr. Cox (and Dr. Kearl) to rely on those figures.

17    Indeed, Oracle has already brought this motion before, when it sought to strike portions of

18  the Cox report last year, and the Court rejected it.  When Oracle complained that Google's

19  damages experts improperly relied on interviews with Google witnesses, the Court made clear

20  that "the damages experts did rely on sources of information reasonably relied upon *as long as*

21  *the foundational facts are properly laid at trial*.  Of course, the expert should make clear that he

22  assumes this point and is not himself qualified to make expert findings on the technical point."

23  Nov. 28, 2011 Order [Dkt. 632] at 3.  Again, the Court did not order that those foundational facts

24  _____

[1]  Google disclosed former CEO *Eric Schmidt* and current CEO *Larry Page* as witnesses who
25  may testify on, among other topics, "Google's business model and goals in the mobile market"
    and "Google's background, history, product development, advertising business, and revenues."
26  Google's Trial Witness Disclosure [Dkt. 525-3] at 7 & 8.  Google also disclosed *Hiroshi
    Lockheimer* and *Andy McFadden* as witnesses who may testify about, among other subjects, "the
27  process of developing Android, including his work on development of the Android platform and
    for Google's Android team," categories which necessarily include costs incurred by Google
28  during development.  *Id.* at 6 & 7.

2

645742.01

1  explaining the documentary evidence could only be laid by the same individuals Dr. Cox spoke to

2  prior to completing his report.  In the case of the financial data, Oracle is free to cross-examine

3  Google's foundational witness about bias, or an alleged lack of expertise, or to point out gaps in

4  his knowledge or the financial documents themselves.  Oracle is likewise free, when it cross-

5  examines Dr. Cox, to criticize him for relying on Google's accounting without having verified

6  them through his own audit, or his lack of an accounting certificate, or any other relevant issue.

7  Oracle may offer Agarwal's deposition testimony in its own case and has included Agarwal on its

8  witness list.  This is a matter for cross-examination, not categorical exclusion of evidence.

9      Oracle's motion goes on for several more pages, but offers no reason to strike any expert

10  testimony now, before Google has had the chance to lay the appropriate foundation at trial.

11  Oracle raises several issues related to the fact that Agarwal was Google's Rule 30(b)(6) designee

12  on Android finances, but none provide a reason to strike anything.  This Court's initial case

13  management order made clear "Rule 30(b)(6) testimony ***never constitutes an irrebuttable***

14  ***judicial admission***.  It will normally, however, be admissible against the organization producing

15  the witness."  Sept. 22, 2010 Order [Dkt. 26] at 8, ¶ 23(d) (emphasis added).  Again, if Oracle is

16  complaining that Dr. Cox's opinions are inconsistent with Agarwal's deposition testimony,

17  Oracle can try to introduce Agarwal's testimony to impeach Dr. Cox.  To the extent Oracle is

18  objecting that Agarwal could not explain the categories in the financial documentation in enough

19  detail, Oracle may argue that the jury should not accord that evidence much, or any, weight.

20      Oracle's real complaint appears to be that Google didn't adequately prepare Agarwal for

21  his deposition, but, again, Oracle fails to tell the Court the full story of the discovery process.

22  Oracle's Rule 30(b)(6) deposition topic 2, for which Agarwal was Google's designee, was both

23  compound—at least four topics in one—and extremely broad as to each (sub)topic.

> Google's revenues related to Android, including (i) the identity of each person
> with knowledge regarding such revenues, (ii) how Google accounts for Android-
> related revenues and expenses, (iii) all profits and losses, revenues, expenses, and
> costs associated with Android, including those associated with Android Market
> and advertising on Android-enabled devices, (iv) any financial projections
> relating to Android, including the bases for Eric Schmidt's statement that "Google
> is positioning itself to earn $10 billion or more per year in the mobile device
> business, thanks to its Android operating system."

3

645742.01

1   Zimmer Decl. Ex. B (Oracle's Mar. 10, 2011 Rule 30(b)(6) Deposition Notice) Topic 2. Oracle

2   served this overbroad and compound notice despite the Court's case-management order, which

3   warned that "[i]f a notice includes an overbroad topic, the overbroad topic *shall be unenforceable*

4   and may not be later replaced with a proper topic." Sept. 22, 2010 Order [Dkt. 26] at 7, ¶ 23(a)

5   (emphasis added).

6        Before the deposition, Google told Oracle that it considered the topic unenforceable and

7   would not present a witness on the entire topic as written. It specifically objected that the topic

8   was both overbroad and unduly burdensome, and particularly because it was compound

9       in view of paragraph 23(a) of [this Court's Sept. 22, 2010] Supplemental Order,
insofar as this Topic improperly combines multiple subject matters into a single

10  Topic, namely (1) identification of persons having knowledge regarding certain
matters; (2) information regarding past revenues, if any, derived from Android
and related financial information; and (3) future projections relating to Android.

11

12  Zimmer Decl. Ex. C (Google's March 25, 2011 Objections to Oracle's Rule 30(b)(6) Deposition

13  Notice) at 2-3. Google agreed only to produce a witness "available for deposition as its Rule

14  30(b)(6) designee in connection with any unobjectionable portions of this Topic." *Id.* at 3. This

15  reveals yet another false premise underlying Oracle's motion; Google never agreed to designate

16  Agarwal to testify about the entire breadth of Oracle's all-encompassing topic, including Google's

17  precise methodology for associating particular costs with Android.

18       If Oracle disagreed with, or had any uncertainty as a result of, Google's objections, or felt

19  after taking the deposition that Agarwal was not sufficiently prepared to testify as required,

20  Oracle could and should have told Google (and, if necessary, informed the Court) and sought a

21  further deposition during the discovery period. It never did. It did not even raise that objection

22  and reserve its rights during the deposition itself. As a quick glance at the docket confirms, both

23  Oracle and Google moved to compel Rule 30(b)(6) testimony from the other during discovery,

24  where the moving party believed the other side had failed to comply with its obligations under the

25  Rule. *See* Joint Letters re Oracle Request to Compel Google Testimony Under Rule 30(b)(6)

26  [Dkt. 276, 290]; Joint Letter re Google Request to Compel Oracle Testimony Under Rule 30(b)(6)

27  [Dkt. 280]. But in this instance, Oracle sat mute until the eve of trial, when it filed its motion for

28  ▓▓▓▓▓▓▓▓▓▓▓▓ evidentiary sanction.

4

645742.01

1    Indeed, many of Oracle's objections about Agarwal's purported lack of knowledge, Oracle

2    Mot. at 5:11-21, are either obvious issues for cross-examination or trivial irrelevancies.  First,

3    Oracle asserts that ███████████████████████████████████████████████████████

4    ███████████████████████████████  To the extent Google's accounting practices as to

5    other business lines—a topic on which Oracle didn't seek Rule 30(b)(6) testimony and on which

6    Agarwal wasn't designated—are even relevant in a case that is entirely about Android, that is a

7    prototypical cross-examination issue.  Second, Oracle complains that Agarwal ██████████

8    █████████████████████████████████████████████████████████████████████████

9    █████████████████████████████████████████████████████████████████████████

10   ██████  this shouldn't make any difference.  In other words, ████████████████████

11   █████████████████████████████████████████████████████████████████████████

12   ██████    Third, Oracle criticizes Agarwal for ████████████████████████████████

13   ███████████████████████████████████  This makes no difference either;

14   Google is entitled to deduct Android-related costs from its Android-related revenues regardless

15   whether those costs were incurred during the development phase or after launch.  Fourth, Oracle

16   complains that ████████████████████████████████████████████████████████████

17   █████████████████████████  but Dr. Cox did in fact amortize those expenses over

18   a five-year period before deducting them from Android revenues.  Nov. 25, 2011 Corrected Cox

19   Report at 29-31.  Dr. Kearl concurred with Dr. Cox's amortization analysis entirely.  March 21,

20   2012 Kearl Report at 47, ¶ 121.

21       Oracle also mistakenly asserts that, to allow a witness other than Agarwal to testify about

22   Android finances at trial, and then permit Dr. Cox to rely on that testimony, would mean that Dr.

23   Cox would be changing the basis of his opinion.  Oracle misunderstands the basis of Dr. Cox's

24   opinion, which is the ***Android financial documentation***.  That documentation, and the numbers it

25   contains setting forth Android financial data, remain the same regardless of which Google witness

26   vouches for its accuracy and explains its contents.  Again, to the extent that any Google trial

27   witness explains that document differently from Agarwal, Oracle would be entitled to object at

28   that time, or to cross the trial witness on any purported inconsistency.

645742.01

Finally, in an effort to overstate Google's modest burden of proof regarding its Android-related costs, Oracle cites *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505 (9th Cir. 1985). *Frank Music* stands for the unexceptional proposition that a copyright infringer has the burden of proving deductible costs. Google has never argued to the contrary. But even *Frank Music*—in a passage Oracle neglects to quote—made clear that this requirement does not "mean that an infringer must prove his overhead expenses and their relationship to the infringing product in minute detail." *Id.* at 516. Instead, the infringer bears only "the burden of explaining, **at least in general terms**, how claimed overhead actually contributed to the production of the infringing work." *Id.* (emphasis added). The proof in *Frank Music* fell short because the infringer offered only evidence of general, company-wide overhead expenses, and attributed a percentage of those to the infringing work, rather than providing a calculation of expenses specifically tied to the infringing work. *See id.* Here, Google has already done far more; the documentation Agarwal authenticated ████████████████████████████████████████ ███████████████████████ At trial, Google will explain the document and the contribution of each cost category to the development and success of the Android platform.

Moreover, Oracle ignores more forgiving Ninth Circuit guidance explaining that complete precision is not required in calculation of a copyright infringer's wrongful profits. As Google has pointed out before, in *Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826 (9th Cir. 1985), the Ninth Circuit affirmed a judgment awarding wrongful infringer's profits of $5,000, out of approximately $5 million in profits—or one-tenth of one percent—based on Schlitz's use of a short passage from "The Theme from Shaft" in a beer commercial. *See id.* at 827, 828. There, Schlitz offered **no** proof of the contribution of that musical snippet to its beer sales. *Id.* at 828. Even so, the district court based its modest damages award on a finding that the infringement was "minimal" and the music did not substantially add to the value of the commercial. *Id.*

Quoting Judge Learned Hand, the Ninth Circuit affirmed that apportionment:

> But we are resolved to avoid the one certainly unjust course of giving the plaintiffs everything, because the defendants cannot with certainty compute their own share. In cases where plaintiffs fail to prove their damages exactly, we often make the best estimate we can, even though it is really no more than a guess (*Pieczonka v.*

6

645742.01

1

2

*Pullman Co.*, 2 Cir., 102 F.2d 432, 434), and under the guise of resolving all
doubts against the defendants we will not deny the one fact that stands undoubted.

*Id.* at 829 (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 45, 51 (2d Cir. 1939). As

3

4

discussed already, "the one fact that stands undoubted" with respect to Google's development of

Android is that Google was not able to create a successful smartphone platform for nothing.

5

6

Although *Cream Records* involved the apportionment of profits rather than the deduction of

costs, the overriding principle remains the same: the Copyright Act does not require perfection in

7

8

financial calculations. "As to the amount of profits attributable to the infringing material, 'what is

required is ... only a reasonable approximation.'" *Id.* (quoting *Sheldon v. Metro-Goldwyn*

9

*Pictures Corp.,* 309 U.S. 390, 408 (1940)).

10

11

Oracle is right that this Court has made clear, as it did in its earlier opinion in *Therasense,*

*Inc. v. Becton, Dickerson & Co.,* No. C04-02123 WHA, 2008 WL 2323856, *2 (N.D. Cal. May

12

13

22, 2008), that the factual foundation of an expert's testimony, particularly as to hotly contested

issues, must be supplied by authenticated documents and witnesses with personal knowledge.

14

15

But Google is not proposing, and has never proposed, to do anything less here. It will prove its

deductible Android-related expenses through its authenticated Android financials, as explained by

16

17

a witness with personal knowledge. Of course, the question whether Google has substantial

deductible Android-related expenses is actually not hotly contested at all. Obviously Google does

18

19

have such expenses; Oracle does not argue otherwise. The relief Oracle seeks—barring ***any***

evidence of Android-related costs from trial—would lead to a tremendously punitive result that

20

21

everybody knows also would be factually wrong. Because nothing in case law or any prior order

of this Court supports that result, the Court should deny Oracle's motion.

22

23

Dated:  April 6, 2012                                         KEKER & VAN NEST LLP

24

25

                                                             */s/ Robert A. Van Nest*
                                             By:   ROBERT A. VAN NEST

26

                                                   Attorneys for Defendant
                                                   GOOGLE INC.

27

28

GOOGLE'S OPPOSITION TO ORACLE'S MOTION TO STRIKE PORTIONS OF KEARL REPORT
Case No. 3:10-CV-03561 WHA

645742.01