MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br>v.<br><br>GOOGLE, INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA'S OPPOSITION TO GOOGLE'S MOTION *IN LIMINE* RE PRESENTATION OF FINANCIAL EVIDENCE AND TESTIMONY**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

1    Without offering a single case in support of its argument, Google moves to exclude all
2 financial evidence and testimony from the copyright portion of the trial. However, the plain language
3 of the Copyright Act and numerous decisions make clear that the financial evidence and testimony
4 *are* relevant – to Google's fair use defense to copyright infringement. Google's request for a broad
5 exclusion of all such evidence must be denied.

6    The evidence Oracle plans to offer directly rebuts Google's contentions and alleged defenses
7 in this case. Contrary to Google's suggestion, Oracle does not intended to present damages evidence
8 in this phase of the trial; rather the evidence is relevant to Google's fair use defense fails for multiple
9 reasons, including that Google's infringement has and will have substantial adverse effect on the
10 market for and value of the infringed materials. Establishing the immense value of Java technology
11 as a whole - as to which the testimony will show that Sun's and now Oracle's copyrighted APIs
12 account for a substantial portion - is relevant to this fair use factor.

13    Indeed, it is disingenuous for Google to argue that presentation of financial evidence and
14 testimony about Java and Sun is improper when Google itself has opened the door to this very
15 evidence. From the inception of this case, to dispute Oracle's longstanding statement that "Java is
16 the foundation of Oracle's Fusion Middleware and the single-most important software asset" the
17 company ever acquired (TX 2040 at 2), Google has argued that Sun's technology is stagnant, old, and
18 had lapsed compared to what Google was offering to the market. As recently as last night, Google
19 has given notice that it intends to continue this attack in its opening statement. Among the opening
20 slides disclosed by Google yesterday were: a slide titled "Sun's Failed Efforts to Build a Java
21 Platform for Smartphones", a slide titled "Oracle's Failed Attempt to Create Smartphone"; a slide
22 showing Dr. Cockburn with a text bubble containing the symbol "$0"; and statements such as "Java
23 is perceived as stagnant and legacy" and "Stagnant innovation". Google intends to put squarely at
24 issue the nature of the copyrighted works, including the vibrancy of the Java community and the
25 value of Oracle's intellectual property. Granting Google's motion to preclude all discussion of the
26 value of Java would deny Oracle the ability to rebut Google's assertion of fair use and the inaccurate
27 statements in the opening.

28

1

### A. Evidence Pertaining to Valuations and Finances May Be Proffered To Establish Fair Use

The financial evidence about Java and Sun is, at a minimum, relevant to Oracle's response to Google's fair use defense. "'In determining whether the use made of a work in any particular case is a fair use the factors to be considered include (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 529 (9th Cir. 2008) (quoting 17 U.S.C. §107). The Supreme Court has noted that the fourth factor "is undoubtedly the single most important element of fair use." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566-68 (1985).

"In evaluating [the fourth] factor, a court must consider not only the primary market for the copyrighted work, but the current and potential market for derivative works." *Gaylord v. United States*, 595 F.3d 1364, 1375 (Fed. Cir. 2010) (citation omitted). "As a general matter, examining the effect on the marketability of the composite work containing a particular individual copyrighted work serves as a useful means to gauge the impact of a secondary use upon the potential market for or value of that individual work, since the effect on the marketability of the composite work will frequently be directly relevant to the effect on the market for or value of that individual work." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 928 (2d Cir. 1994).

Oracle's offer and valuation for a package of Sun's software assets in connection with its acquisition of Sun is relevant to establish the value of and potential market for the Java API packages and source code. The 37 Java API packages are the core libraries of the Java platform, the API packages that developers commonly expect to use and see, and are integral to the Java platform. By copying the 37 Java API packages and source code, Google not only harmed the value of the Java API packages, but the value of Java, and the value of Oracle's business which depended on Java.

These are precisely the "secondary" and "derivative" markets that should be considered as part of the fair use equation.

Google mischaracterizes the centrality of Java in Oracle's valuation by stating that Java was "only one" of "a package of software assets" considered in Oracle's acquisition. (MIL at 2:2-3.) Core to Sun's (now Oracle's) entire business is the continued vitality of Java. A glance through the list of the software assets to be included in Oracle's acquisition shows that the assets considered were either part of the Java business or Sun's support services for Java users and developers.[1] Indeed, Oracle Chief Corporate Architect Edward Screven testified at deposition that he would have paid the entire $7.4 billion price for Sun "just to get Java." (Screven Dep. at 59:17-23.)

### B. Evidence of Android's Finances Will Assist The Jury In Assessing The Commercial Nature of Android and Android's Impact of the Market for Java – The First and Fourth Factors in A Fair Use Defense

17 U.S.C. § 107(1) states that "[i]n determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." On its face, the Copyright Act requires the jury to consider the "commercial nature" of Android – which necessarily includes whether or not it is profitable and the scale of revenues it has earned. The revenue and profits that Google made from Android are evidence of "[t]he *degree to which the new user exploits the copyright for commercial gain* –as opposed to incidental use as part of a commercial enterprise – [which] affects the weight we afford commercial nature as a factor." *Elvis Presley Enter., Inc. v. Passport Video*, 349 F.3d 622, 627-28 (9th Cir. 2003) (emphasis added) (rev'd on other grounds, as recognized by *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d

---

[1] In a footnote, Google objects on hearsay grounds (the only objection it makes) to Oracle's proposal to introduce TX 2038, a letter from Oracle CEO Larry Ellison to Sun, through Mr. Ellison's testimony, as evidence of "the truth of Oracle's supposed valuation of 'Java.'" (MIL at 1 n. 1.) The objection is unfounded. The letter, which Mr. Ellison wrote on Oracle's behalf long before the commencement of this litigation, offered Sun $2 billion for its software assets, including Java. The letter is not hearsay because it will not be offered for the truth of the matter asserted – the value of Java – but as evidence that Oracle made a $2 billion offer for Sun's software and considered the software to be valued at least that much.

3
ORACLE'S OPP. TO GOOGLE'S MOTION IN LIMINE RE PRESENTATION OF FINANCIAL EVIDENCE AND TESTIMONY
CASE NO. CV 10-03561 WHA

1   989 (9th Cir. 2011).  Determining whether the infringing use is "of a commercial nature" thus
2   requires examining "the value obtained by the secondary user from the use of the copyrighted
3   material."  *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d at 922.  "The more revenue obtained as a
4   result of an infringer's use of the copyrighted work, the less likely the use will be considered fair."
5   *FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 579 (E.D. Pa. 2005) (citation omitted).

6         Deciding whether Google's use has been fair requires the jury to assess the commercial nature
7   of Android (the first fair use factor) and Android's impact on the market for Java (the fourth fair use
8   factor).  Excluding all evidence of Android's revenues would impermissibly obstruct that analysis.
9   Evidence of Android's finances will help the jury assess whether Google "stands to profit from
10  exploitation of the copyrighted material," part of the analysis under the first factor.  *Leadsinger, Inc.*
11  *v. BMG Music Pub.*, 512 F.3d at 530 (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*,
12  471 U.S. 539, 562 (1985)).   Even if the evidence of Android's finances is not dispositive of this
13  factor, it is unquestionably relevant, and Google does not muster a single citation to the contrary.

14        As for the fourth fair use factor, Oracle intends to argue that the use of Android affected every
15  part of the market for the copyrighted work.  Mr. Agrawal's testimony regarding Android's market
16  success – the growth in Android's revenues and licensing – is key evidence of Android's impact on
17  the market that would otherwise be available to Java.  The impact on the market of a $1 million
18  business compared with a $1 billion business is obviously quite different.  The jury should be able to
19  hear which type of operation Android is.

20        Because the financial evidence and testimony at issue directly addresses Google's defenses
21  and planned opening statement, the probative value and relevance to the evidence could not be
22  clearer.  Oracle should be permitted to present it to the jury.  Google's argument that such evidence
23  belongs only in the damages phase is wrong as a matter of law.  Oracle will not suggest that this
24  evidence shows how much Oracle has been damaged; rather, that the value of Java and Android
25  demonstrate that Google's fair use defense is without merit.

1  Dated: April 15, 2012               BOIES, SCHILLER & FLEXNER LLP

2                                      By: *Steven C. Holtzman*
                                           Steven C. Holtzman
3
                                       *Attorneys for Plaintiff*
4                                      ORACLE AMERICA, INC.