MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
arutherford@bsfllp.com
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>            Plaintiff,<br>       v.<br><br>GOOGLE, INC.<br><br>            Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA, INC.'S MOTION TO ADMIT TRIAL EXHIBIT 1026**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

**Danger License**

On April 20, 2012, Oracle offered into evidence TX 1026, which is a copy of the license agreement entered into between Sun Microsystems and Danger, Inc. (the "Danger license"). Google objected based on relevance and under Rule 403. (4/20/2012 Tr. at 1061:10-12.) The Court ruled: "[W]e're not going to show this to the jury and it won't be admitted just yet until we can have a further conversation out of the presence of the jury. So 1026 will be in limbo for awhile." (4/20/2012 Tr. at 1061:18-22.)

Oracle submits this brief in further support of its proffer of TX 1026. As explained below, the Danger license is relevant to specific issues in this phase and there is no basis to exclude it under Rule 403.

*First*, the Danger license establishes Mr. Rubin's knowledge of Sun's licensing practices and requirements, and confirms that Mr. Rubin sought and obtained a license for Danger ***without*** Danger having used any Sun source code. Paragraph 4 of Attachment F to the Danger license (TX 1026 at p. 31 of 32) is titled "No Original Code" and includes an acknowledgement that Sun had not provided and Danger had not accessed any Sun source code, in effect doing an independent implementation of the specification. Thus, Danger paid for a license to nothing but the Java specifications. (4/20/2012 Trial Tr. at 948:24-950:4 (Swetland); 1062:16-1063:1 (Cizek).) Danger's interest in Sun's specifications as opposed to Sun's source code is confirmed by Danger's SEC filing identifying the various licenses that Danger obtained, including: "Sun Microsystems, Inc., for the use of its Java ***specifications***." (TX 3109 at p. 17 of 204 (emphasis added).)

Google has attempted to argue and to elicit evidence that Mr. Rubin and others at Android believed that they needed a license only if Android used Sun source code. (4/17/2012 Tr. at 246:24-25 (Opening Statement by Google) (Google "didn't need a license because they didn't use Sun technology to build Android."); *id.* at 276:1-3 ("They didn't need a license from Sun. Didn't need a license. They weren't using Sun technology.").) The Danger license confirms that Sun required licenses for the use of its Java specifications alone, and that Mr. Rubin knew this long before Android began infringing those specifications. (*See also* 4/17/2012 Trial Tr. 370:15-382:6 (Kurian); TX 610.1

(specification license).)  Having argued that a license was required only when a party used Sun source code, and not for independent implementations based on the Java specifications, Google should not be permitted to exclude evidence to the contrary.  The fact that Google's use was not authorized by any license is relevant to Google's fair use defense.  *See Atari Games Corp. v. Nintendo of Am. Inc*., 975 F.2d 832, 843 (Fed. Cir. 1992) ("Because Atari was not in authorized possession of the Copyright Office copy of 10NES, any copying or derivative copying of 10NES source code from the Copyright Office does not qualify as a fair use").

*Second*, the Danger license is relevant because it provides context for other evidence regarding Danger and the negotiations with Sun.  For example, on March 24, 2006, Mr. Rubin, then already a Google employee, wrote: "Java.lang apis are copyrighted.  And sun gets to say who they license the tck to …."  (TX 18.)  When asked about that document during his deposition, Mr. Rubin testified that he understood that the Java.lang APIs were copyrighted based on his experience while at Danger.  (Rubin 7/27/2011 Individual Dep. at 149:18-150:13.)  Mr. Swetland testified that he also worked at Danger and understood, based on the Danger negotiations, that Sun's position was that the method signatures contained in the Java APIs were copyrighted.  (4/20/2012 Trial Tr. at 951:8-12). Mr. Swetland further testified that Danger took that license, despite having a clean room implementation and no contact with Sun source code, because Danger feared litigation by Sun over Danger's use of the specifications alone.  (4/20/2012 Trial Tr. 948:24-950:15, 973:21-974:2)  Given the number of Android engineers who previously worked at Danger (Mr. Rubin, Mr. Swetland, Mr. Bornstein, and Mr. Lockheimer), the Danger license provides an important context to understand their experience, knowledge of Sun's IP rights and assertions and, consciousness of guilt.  All of these facts are to be weighed by the jury when they consider whether Google's use of the Java specifications was fair.  *See, e.g. Religious Tech. Ctr. v. Netcom On-Line Commc'n Services, Inc.*, 923 F. Supp. 1231, 1244 (N.D. Cal. 1995) (defendant's conduct is "properly a factor to be considered with the first statutory factor regarding the character of the use" for fair use) (citing Nimmer).  It also provides a means of further understanding their trial testimony.

*Third*, the Danger license is relevant to address Google's argument that Oracle's claim that API specifications are independently subject to intellectual property protection was invented for this case. (4/20/2012 Trial Tr. 1114:5-7 (Google counsel arguing: "This API thing is an invented-after-the-fact deal by Oracle.  This is all made up.  None of these people were talking about APIs back then.").  In fact, the Danger license shows that Sun has required a license for API specifications for at least a decade.

*Fourth*, the Danger license is relevant because it rebuts Google's contention that Java technology was never used for any smartphone, and that Google's copying was therefore transformative and excusable as fair use.  In Google's opening, Mr. Van Nest stated: "Google transformed Java.  They transformed those APIs into something that would work on a smart phone and that means they made fair use of those APIs in Android." (4/17/2012 Tr. at 247:11-13.)  He later stated: "Google transformed these APIs into something that no one else is able to do.  No one else was able to build a smart phone platform using Java, but a lot of people tried." (4/17/2012 Tr. at 270:20-22; *see also id.* at 277:2-5.)  During the 10-minute summary on April 20, Mr. Van Nest stated again that Google "transformed Java from something that wouldn't work on a smart phone to something that works great on a smart phone." (4/20/2012 Tr. at 942:25-943:2.)

Google's claim that Sun's Java technology was never used for any smartphone is incorrect, and the Danger license will assist the jury in evaluating the accuracy of Google's claim.  In response to questioning by Google's counsel, Mr. Swetland testified that Danger "was building a next generation smart phone." (4/20/2012 Tr. at 959:20-22.)  That smartphone was based on and incorporated Java technology, and the Java specifications in particular.  Mr. Cizek agreed that Danger's device could be characterized as a smartphone, and also testified that RIM licensed Java technology for the Blackberry, another smartphone. (4/20/2012 Tr. at 1075:11-17; 1102:3-10.)  Having asserted to the jury that Java technology was never used for any smartphone, Google should not be permitted to prevent the jury from now considering concrete, documentary evidence that establishes the opposite.

*Fifth*, there is no basis to exclude the Danger license under Rule 403. The jury is aware that Sun granted a license to Danger, and has heard testimony regarding that license. Providing a copy of the Danger license agreement provides a complete and accurate record with respect to those negotiations and the resulting license. There has been no uncertainty in the testimony regarding the fact that Danger and Google are two separate companies, and there is no reason to believe that admitting the Danger license into evidence will confuse or mislead the jury in any way.

Dated: April 22, 2012                              BOIES, SCHILLER & FLEXNER LLP

By: *Steven C. Holtzman*
     Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.