KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: 415.318.1200
Fax: 415.318.1300

KING & SPALDING LLP
SCOTT T. WEINGAERTNER
(*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (Pro Hac Vice)
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel: 650.328.8500
Fax: 650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE AMERICA, INC.,

Plaintiff,

v.

GOOGLE INC.,

Defendant.

Case No. 3:10-cv-03561 WHA

**GOOGLE'S APRIL 25 COPYRIGHT BRIEF**

Dept.: Courtroom 8, 19th Floor
Judge: Hon. William Alsup

# TABLE OF CONTENTS

**Page**

I. The Court should instruct the jury that the SSO is "copyrightable" or "copyrighted." ....... 1

II. The Java platform in its entirety, as registered with the Copyright Office, must be considered to be the "work as a whole" for all purposes. ....... 3

III. Based on Oracle's newest theories of its copyright claim, Oracle can only rely on the work as a whole, as registered. ....... 6

A. THE WORKS WERE NOT REGISTERED AS "COLLECTIVE WORKS." ....... 6

B. IF THE WORKS ARE TREATED AS COLLECTIVE WORKS, ORACLE HAS FAILED TO PROVE THAT IT HAS ANY RIGHTS OTHER THAN IN THE ENTIRE WORK. ....... 7

IV. The Court should not adopt either the "interwoven" or "independent economic value" test. ....... 9

## TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*American Geophysical Union v. Texaco, Inc.*
60 F.3d 913 (2d Cir. 1994)........................................ 4, 9

*Bryant v. Media Right Productions, Inc.*
603 F.3d 135 (2d Cir. 2010)........................................ 11

*Express, LLC v. Fetish Group, Inc.*
424 F. Supp. 2d 1211 (C.D. Cal. 2006) ........................................ 5

*Hustler Magazine, Inc. v. Moral Majority, Inc.*
796 F.2d 1148 (9th Cir. 1986) ........................................ 9, 10, 11

*Morris v. Business Concepts, Inc.*
283 F.3d 502 (2d Cir. 2002)........................................ 9

*NXIVM Corp. v. The Ross Institute*
364 F.3d 471 (2d Cir. 2004)........................................ 3, 4, 5

*Pacific and Southern Co. v. Duncan*
744 F.2d 1490 (11th Cir. 1984) ........................................ 10

*Triangle Publications v. Knight-Ridder Newspapers, Inc.*
626 F.2d 1171 (5th Cir. 1980) ........................................ 10

**Federal Statutes**

17 U.S.C. § 101........................................ 6, 8

17 U.S.C. § 103(b) ........................................ 5, 7, 8, 9, 10

17 U.S.C. § 107(3) ........................................ 4

1909 Copyright Act, § 3........................................ 10

Google submits this supplemental brief (1) in response to the Court's statements regarding how the Court may instruct the jury on the copyrightability of the alleged "SSO" of the 37 accused API packages (RT 445:1-445:18, 1145:25-1146:16); (2) in response to the Court's further questions regarding the "work as a whole" issues (RT 1136:7-1151:23); and (3) regarding additional copyright issues that have arisen based on Oracle's most recent articulation of its copyright theories and resulting failure of proof during its case.

## ARGUMENT

### I. The Court should instruct the jury that the SSO is "copyrightable" or "copyrighted."

Before calling in the jury on Monday morning, the Court responded to Google's argument that the structure, sequence, and organization of the 37 API packages at issue here ("SSO") is not copyrightable by stating:

> THE COURT: I've already said that I'm going to instruct the jury, subject to a motion under Rule 50 later at the end of the case. I'm going to instruct the jury that the copyrights extend to the Structure, Sequence, and Organization.
>
> Now, I'm reserving on that ultimately. I see both arguments on that point, but we ought to get the verdict on that. If you were to win on fair use, for example, then the judge doesn't have to decide those hard questions.

RT 1145:25-1146:7; *see also* RT 445:1-445:18.

Google respectfully objects to an instruction that tells the jury affirmatively that the SSO ***is either "copyrightable" or "copyrighted."*** (*See* RT 1146:2-3, 9-11 ("I'm going to instruct the jury that the copyrights extend to the Structure, Sequence and Organization."; "the way it's going to be presented to the jury is that the "Structure, Sequence and Organization is covered by copyright.")). The Court directed the parties to present evidence in this phase bearing on the legal question of whether the SSO and other elements of the Java platform merit copyright protection, are unprotectable systems or methods of operation, are functional requirements for compatibility, or are for other reasons uncopyrightable. As a result, both Google and Oracle have offered extensive documents and testimony relating to whether the SSO and other elements are copyrightable. Oracle argued in its opening statement that the SSO deserves copyright

protection; Google responded in its opening statement that the SSO does not. Almost certainly, the jury is keenly aware that whether the SSO is copyrightable is a hotly disputed issue in the case. The jury has now also heard testimony from several witnesses (including Mr. Schmidt and Mr. Rubin) regarding their understanding, as computer scientists, regarding whether API specifications are protected by copyright.

As a result, instructing the jury that the SSO is copyrightable, prior to sending them to deliberate on the infringement and fair use issues, and Google's equitable defenses—and prior to the Court actually resolving the copyrightability issue—would explicitly tell the jury that a fundamental premise of Google's defense case is wrong (rather than simply undecided). Inevitably, the instruction will leave the jury wondering what Google and its witnesses have been talking about for the past two weeks—even though Google's presentation of evidence on this point was essential to the Court's decision of the key legal issue. Most problematic, instructing the jury that the SSO is copyrightable would prejudice the jury against Google on the issues the jury will actually decide.

To more accurately reflect the procedure the Court plans to use here, and to avoid unfairly influencing the jury's decision on the infringement, fair use, and equitable defense issues, the Court should advise the jury that the copyrightability of the SSO is an issue for the Court that has yet to be decided but will not be decided until after the jury has rendered its decision. The Court should then instruct the jury to ***assume***, for purposes of its deliberations, that the SSO is copyrightable, and to proceed to decide the remaining issues. The Court has already acknowledged the possibility that it may phrase the instruction to the jury as an assumption. *See* RT 1147:12-1147:15 ("Something like that is the way we're going to put it to the jury and let them go on the assumption that that's correct."). Google agrees that is the appropriate approach. It permits the jury to render its verdict while leaving both parties on equal footing in the jury room.

To present the issues to the jury simply—and in a manner consistent with the parties' claims and defenses—the Court should limit the instruction about the copyrightability of the SSO

to the jury's consideration of Oracle's claim of infringement based on the SSO and the documentation. So as not to prejudice Google's *de minimis* arguments, the Court should further instruct the jury that it should make the opposite assumption for purposes of Oracle's claims based on the so-called "copied files." In other words, for purposes of those claims, the jury should assume that the SSO is ***not*** copyrightable. This will preserve Google's *de minimis* arguments as to the miniscule amounts of "copied" materials, which Google has advanced in conjunction with its arguments that the SSO is not copyrightable.[1]

**II. The Java platform in its entirety, as registered with the Copyright Office, must be considered to be the "work as a whole" for all purposes.**

The only works as to which Oracle attempted to prove infringement during its case are versions 1.4 and 5.0 of the complete Java 2 SE "platform," which are the subject of copyright registrations TX 6-196-514 (Trial Exhibit 464) and TX 6-066-538 (Trial Exhibit 475). The applications for registration filed by Sun contain little information regarding the works in which Sun was seeking to register its claim of ownership, other than to state the names of the works ("Java 2 Standard Edition 1.4" and "Java 2 Standard Edition, Version 5.0") and that the works include both pre-existing elements, identified as "prior works by [Sun] and licensed-in components," and new material, identified as "new and revised computer code and accompanying documentation and manuals." TX 464 at 2 (space 6), TX 475 at 2 (space 6).

Based on the authorities previously cited by Google (*see* Google 4/22 Brief, Dkt. No. 955, at 5-12) and the additional authorities cited below, the "work as a whole" must, as a matter of law, be the complete work in which Sun claimed its copyright rights, namely, the relevant Java platforms as a whole. In addition to the authorities cited in its prior brief, *see* Dkt. No. 955 at 5-12, Google has identified additional authorities bearing on this issue.

In the fair use context, the Second Circuit has rejected an effort by plaintiffs who, like Oracle, sought to tailor their copyright to their litigation strategy by "selecting" and claiming as a new "work as a whole" only part of the complete work. In *NXIVM Corp. v. The Ross Institute*,

[1] Google continues to believe that the Court should decide the issue of copyrightability *before* instructing the jury, rather than reserving the issue.

364 F.3d 471 (2d Cir. 2004), the plaintiffs' work was a "265-page manual" for a seminar training program. 364 F.3d at 475. The defendant published reports critical of the plaintiffs' program, which included 17 quotes from several sections of the manual. *Id.* The plaintiffs sued for copyright infringement and moved for a preliminary injunction. The district court denied the motion, finding that the defendant was likely to succeed on its fair use defense. Plaintiffs appealed.

On appeal, plaintiffs argued that the district court should have considered different "modules" of the manual as separate, self-contained "entire" works. The plaintiffs therefore argued that analysis of the third statutory fair use factor—"the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3)—should have weighed in their favor because the defendant had "copied some entire works." 364 F.3d at 481. The plaintiffs based their argument on *American Geophysical Union v. Texaco, Inc.*, 60 F.3d 913 (2d Cir. 1994), on which Oracle relied in its April 22 brief. *See* Dkt. No. 956, at 5-6.

The Second Circuit rejected the *NXIVM* plaintiffs' attempt to re-cast their work as multiple smaller works:

> If plaintiffs' argument were accepted by courts — and, not surprisingly, plaintiffs cite no authority to support it — the third factor could depend ultimately on a plaintiff's cleverness in obtaining copyright protection for the smallest possible unit of what would otherwise be a series of such units intended as a unitary work. ***The proper analogy in this case is not to separate articles in a magazine, but instead to a book by a single author containing numerous chapters, which are not separately copyrightable.*** *See id.* at 925-26 (treating individual articles in a journal as the appropriate level of copyright protection when the author of each article is different). ***The "modules" in this case were written by the same author and they combine to produce one unitary work.***

364 F.3d at 481 (emphases added).[2]

In *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211 (C.D. Cal. 2006), the court held that "it is the registration that sets the scope for the copyright protection." 424 F. Supp. 2d at 1218. In beginning its analysis, the court noted that the "registration process may only be a formality, but it does not necessarily follow that its status as a formality means that its particulars should be disregarded." *Id.* at 1219. After citing two cases (including the *Nicholls* case cited by Google in its April 22 brief), the *Express* court held that "the scope of the registered copyright is relevant to the scope of the presumption of validity, and that the scope of the registered copyright is determined by the actual registration application." *Id.*

The *Express* court then analyzed the scope of the plaintiff's copyright rights based on the deposit materials—which had been deposited with the Copyright Office as showing the work that was the subject of the application—and the representations made to the Copyright Office regarding what was "new" in the work and therefore the subject of the copyright protection being sought. *Id.* at 1219-22; *see* 17 U.S.C. § 103(b). The court held the plaintiff to the representations made to the Copyright Office, limiting the scope of the copyright based on the materials the plaintiff had submitted and what the plaintiff had told the Copyright Office. The end result was that the plaintiff's copyright was not as broad in scope as the plaintiff contended.

Consistent with the above and the authorities cited by Google in its April 22 brief, the Court must as a matter of law consider the entire work as registered by Sun—and nothing less—to be the "work as a whole" for all liability purposes, and should so instruct the jury. There is no legal or evidentiary basis on which the work as a whole, as registered, could properly be

---

[2] The *NXIVM* decision is also instructive for a second reason. The court noted that the district court had in fact "over-counted" the portion of the plaintiffs' work used by the defendant, because it had counted "as entire pages quotes as short as a single sentence." *Id.* at 480. To the extent Oracle's claim based on the "declarations" or method signatures is not barred in its entirety by the Court's ruling that "the names of the various items appearing in the disputed API specifications are not protected," (Summary Judgment Order, Dkt. No. 433, at 7-8), the *NXIVM* decision suggests that only the number of declaration lines appearing in the Android API libraries' source code files—which are the only elements that reflect any "structure," "selection" or "organization" in the code files—should be used as the measure of the "amount" of the copyrighted work "used" for purposes of fair use analysis, and that they should be compared to the total lines of code in Oracle's copyrighted work.

"subdivided" into smaller parts as Oracle requests. Neither the infringement analysis nor the fair use analysis in this case should be manipulated by the "cleverness" of Oracle's counsel's attempt to claim protection for isolated parts of Sun's registered work that were not sold as standalone works and may or may not be separately copyrightable. *See NXIVM*, 364 F.3d at 481.

**III. Based on Oracle's newest theories of its copyright claim, Oracle can only rely on the work as a whole, as registered.**

In its most recent brief, filed on April 22, Oracle asserted that its two Java platform works at issue were registered as "collective works." *See* Oracle April 22 Brief, Dkt. 956, at 4 ("J2SE 5.0 and J2SE 1.4 . . . were registered as collective works"). This theory is disproven by the facts. Even more importantly, however, Oracle has failed to make the showing necessary for it to rely on this theory to argue that its copyrights in the platform works protect any works smaller than the entire platform.

**A. The works were not registered as "collective works."**

"Collective works" and "compilations" are both specifically defined in the Copyright Act, and "compilation" is defined to include "collective works." 17 U.S.C. 101 (definitions).[3] Sun registered the Java platform works using Copyright Form TX, which is the typical form used for "nondramatic literary works," including software. That form requires that specific information be provided for compilations and derivative works, in space 6 of the form. The copyright claimant must identify the "preexisting material" contained in the new work in space 6a and the new "material added to this work" in space 6b. The instructions for Form TX require that "If the work is a *compilation*, describe both the compilation itself and the material that has been compiled." *See* Copyright Office Form TX, attached hereto as Exhibit A, at 2 (Instructions for "SPACE 6: Derivative Work or Compilation") (emphasis in original). The instructions further state that "A

[3] A "collective work" is "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101. A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* The definition of "compilation" provides that "The term 'compilation' includes collective works." *Id.*

work may be both a derivative work and compilation, in which case a sample statement might be: 'Compilation and additional new material.'" *Id*. If Oracle's platform works were indeed being registered as "collective works," they would be both collective works (because they contained multiple elements) and derivative works (because they were based on prior versions).

But the copyright applications filed by Sun say nothing about the works being a collective work of any kind. While they do identify the preexisting work and the new material added, they do not "describe the compilation [which includes collective work] itself," nor do they identify the works as both derivative works and compilations [or collective works]. In short, Sun did not register versions 1.4 or 5.0 of the Java 2 SE platform as collective works.

Based on the registration certificates, the Court should not permit Oracle to now argue that the works should be treated as "collective works." They were not registered as such by Sun in 2004 and 2005, and Oracle's lawyers cannot now try to revise them, eight years later, to pretend that they were. Oracle should also not be permitted in the middle of trial to recharacterize its works or any parts of them as "collective works" or any other form of "compilation." Indeed, just two weeks ago, in its brief filed on April 3, Oracle argued that "[t]he 37 APIs should not be viewed as a compilation."[4] (Oracle 4/3 Brief, Dkt. No. 853, at 1).

**B. If the works are treated as collective works, Oracle has failed to prove that it has any rights other than in the entire work.**

A plaintiff in a copyright must prove that it has a registration that covers the works that are the basis of its infringement claim.[5] If Oracle's eleventh-hour attempt to re-cast its works as

---

[4] The issues arising from Oracle's last-minute attempt to argue that the works are "collective works" have been identified as potential issues throughout this case. In the pretrial order (Dkt. No. 525, filed October 13, 2011), for example, the parties ***jointly*** identified as ***issues of law to be decided*** whether, by virtue of the copyright registrations of the J2SE and JDK materials, Sun registered "its copyrights in the 37 Java API design specifications" and "its copyrights in the twelve Java code files that Oracle has accused Google of copying." (Dkt. 525 at 10). In addition, Google identified as fact issues to be determined whether Sun registered with the U.S. Copyright Office "the code and documentation from various versions of" J2SE and the JDK and whether Oracle is the owner of rights in the "Java-related works registered with the Copyright Office." (Dkt. 525 at 15).

[5] For reasons relating to the registration procedures applicable to the works and copyright registrations at issue, Google believes that Oracle is not entitled to any presumptions based on the issuance of the registrations for Java 1.4 and 5.0.

"collective works" is permitted—and, for the reasons just given, it should not be so permitted—that position has significant legal consequences that impose on Oracle a substantial burden of proof if it wishes to claim that the registrations protect any subset or portions of the entire works covered by the registration. Oracle failed to meet that burden; in fact, it did not even try.

Section 103(b) of the Copyright Act is clear:

> (b) ***The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work,*** and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

17 U.S.C. § 103(b) (emphasis added). The definitions in section 101 reinforce this section; they make clear that all compilations must be a "resulting work as a whole" that "constitutes an original work of authorship" separate from its individual component parts, and a "collective work" must be "assembled into a collective whole." 17 U.S.C. § 101 (definitions of "compilation" and "collective work").

These statutory provisions are significant in light of Oracle's present claim. As a result of these provisions:

- Even if Oracle's claim to have registered the Java platform as a collective work were valid, those resulting copyright would cover ***only*** the complete work as a whole ***unless*** Oracle has proven that it is the "author" of any individual parts in which it seeks to enforce rights;[6] and

- In the absence of such proof, Oracle's copyrights would cover ***only*** the complete works, and only the contributions that distinguish the works from prior versions, including any "selection, coordination or arrangement" that was part of the compilation process.

Oracle has introduced no evidence whatsoever that it (or Sun) was the author of or owned exclusive rights to any of the specific, individual underlying components of the platform works

[6] Under the Copyright Act, an "author" includes an employer whose employees create works in the scope of their employment. *See* 17 U.S.C. § 101 (definition of "work made for hire, subsection (1)); 201(b) (employer considered the "author" of a "work made for hire").

that are registered, including any portions of the 166 API packages in Java 5.0.[7] The evidence is to the contrary. Several witnesses have testified about how numerous authors outside Sun, through the Java Community Process, contributed to the platform works or parts of them, including the API packages that are at issue. And the certificates of registration confirm that at least some components of the works are "licensed-in components" that Sun—as a licensee—presumably did not own. Based on the record as it now stands, the registrations can cover at most only the "collective work" as a whole. Indeed, the record evidence suggests that Oracle might not be able to cure this evidentiary gap, even were it allowed to reopen its case in chief.

Oracle's failure to prove ownership of the constituent parts of its registered works provides a separate and independent basis for holding that the "work as a whole" is, in this case, the entire work. Oracle did not prove (or even attempt to prove) that it has any greater rights than that. The state of the record is as if Oracle owned a copyright in an issue of a newspaper, but not a single article, editorial or advertisement in that issue.

This failure of proof on Oracle's part distinguishes the present case from *American Geophysical Union v. Texaco, Inc.*, 60 F.3d 913 (2d Cir. 1994), where the plaintiff journal owner in fact proved that it owned all the rights in the constituent parts, i.e., the collected articles. *See* 60 F.3d at 918. Instead, the analogous case is *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 506 (2d Cir. 2002), in which the court held—consistent with the clear language of section 103(b)—that "unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to a constituent part."

**IV. The Court should not adopt either the "interwoven" or "independent economic value" test.**

Google is not aware of any "test" the Court or jury could properly use to determine that something less than the entire works should be used for infringement or fair use purposes. Neither the "interwoven" test applied in the Ninth Circuit *Hustler* fair use decision nor the

[7] Oracle also failed during its case to prove the contents of the works that are the subject of its registrations for the Java platform versions 1.4 and 5.0.

"independent economic value" test applied by some courts in the statutory damages context is appropriate in this context.

*Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir. 1986), applied a test focusing on "the relationship of the copied parody to the periodical as a whole" and found that the appropriate "work as a whole" for purposes of fair use analysis was a single page advertisement published in a 154-page magazine.  796 F.2d at 1154-55.  The Court found significant that the parody represented the "essence" of Hustler Magazine and that the parody was not "an interwoven component of the magazine, but can stand totally alone."  *Id.* at 1155-56.

The *Hustler* court, however, relied on two prior cases: *Triangle Publications v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171 (5th Cir. 1980), and *Pacific and Southern Co. v. Duncan*, 744 F.2d 1490 (11th Cir. 1984).   Both are distinguishable.

*Triangle Publications* (the TV Guide cover case) involved a copyright that arose under the 1909 Copyright Act, not the current Act, which did not go into effect until January 1, 1978.  Under the 1909 Act, works that are known as "compilations" and "collective works" under the current Copyright Act were called "composite works."  Section 3 of the 1909 Act provided that copyrights under the Act protected "***all the copyrightable component parts of the work copyrighted***," and that a copyright on a "composite work" gave the copyright owner "***all the rights in respect thereto which he would have if each part were individually copyrighted under this title.***"  1909 Copyright Act, § 3 (emphasis added).

The current law is demonstrably different.  *See* 17 U.S.C. § 103(b).  *Triangle Publications* therefore cannot provide meaningful guidance on the issues relating to Oracle's copyright.

Nor can the *Pacific and Southern* case (the TV Video Clips case) provide assistance.  The individual program segment at issue in *Pacific and Southern* "was copyrighted separately and was stored separately from the rest of the broadcast" from which it was taken.  *See Hustler*, 796 F.2d at 1154.  Oracle has no such separate copyrights for any sub-part of the Java platform.

The *Hustler* court therefore based its fair use "work as a whole" analysis on precedents that are of limited, if any, current value.  *See* 796 F.2d at 1154 (referring to "each component of a

composite work" and "a component of a copyrighted composite work"). The *Hustler* court's analysis of "the relationship of the copied component to the composite work" is inconsistent and meaningless under the current Copyright Act, which no longer uses the terminology "composite work" for any post-1978 copyrights.

Moreover, even if the *Hustler* test applies, the API packages *are* interwoven together, and with the rest of the Java 2 SE platform. Oracle's witnesses have testified that Oracle will not license subsetted versions of the platform. They have also testified that the API packages are interdependent on each other. In addition, the libraries are interwoven with other parts of the Java 2 SE platform, with which they were designed to operate. In contrast, the advertisement in *Hustler* did not cross-reference, cite, or otherwise refer to any other part of the magazine. Thus, if the *Hustler* test applies, it compels the conclusion that the relevant work is the Java 2 SE platform, not its constituent parts.

Cases applying an "independent economic value" test in the statutory damages context are equally unhelpful to Oracle. The test has been applied in only a limited number of cases and only in the statutory damages context. The test has also recently been severely criticized by the Second Circuit even in the statutory damages context. In *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010), a case involving copyrighted music albums containing ten songs each, the Second Circuit held as follows:

> ***This Court has never adopted the independent economic value test, and we decline to do so in this case.*** The Act specifically states that all parts of a compilation must be treated as one work for the purpose of calculating statutory damages. ***This language provides no exception for a part of a compilation that has independent economic value, and the Court will not create such an exception.*** *See UMG Recordings, Inc.*, 109 F.Supp. 2d at 225 (stating that to award statutory damages on a per-song basis would "make a total mockery of Congress' express mandate that all parts of a compilation must be treated as a single `work' for purposes of computing statutory damages"). We cannot disregard the statutory language simply because digital music has made it easier for infringers to make parts of an album available separately. This interpretation of the statute is consistent with the Congressional intent expressed in the Conference Report that accompanied the 1976 Copyright Act, which states that the one-award restriction applies even if the parts of the compilation are "regarded

> as independent works for other purposes." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 162, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5778.

603 F.3d at 142 (emphases added).

The "independent economic value" test is a renegade in copyright law, inconsistent with the plain statutory language, and has never been used to determine what the "copyrighted work as a whole" is for any liability issue. Especially in view of the Second Circuit's decision in *Bryant*, this Court should not be the first to extend the "independent economic significance" test beyond the single limited context in which it has been applied—and criticized.

Dated: April 25, 2012

KEKER & VAN NEST LLP

By: /s/ Robert A. Van Nest
ROBERT A. VAN NEST

Attorneys for Defendant
GOOGLE INC.