MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**COPYRIGHT BRIEF REGARDING WORK AS A WHOLE**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

## I. THE COURT SHOULD DETERMINE THE RELEVANT "WORKS AS A WHOLE."

After searching further, Oracle has still found no case law that squarely addresses whether determination of what constitutes a "work as whole" for purposes of the defenses of *de minimis* copying and fair use is properly determined by the court or the jury. However, courts frequently decide disputed issues regarding the scope of the "work as a whole" in the context of motions for summary judgment, strongly suggesting it is a question of law for the court. Moreover, courts also routinely decide the "work as a whole" issue in bench trials, and here both sides have asked the Court to decide that issue.

### A. Judges often grant summary judgment on the issue of fair use even when the scope of the "work as a whole" is contested.

In its April 22, 2012 brief, Oracle identified several cases where courts have determined the scope of the "work as whole" in the context of the third factor of the fair use analysis: "the amount and the substantiality of the portion [of the copyrighted work] used." Cases in which the parties contested the scope of the "work as a whole" and the court nevertheless resolved the issue on summary judgment are discussed further below.

#### 1. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir. 1986).

The defendants copied a one-page parody from a 154-page Hustler magazine and used the parody in mailers and in connection with their fundraising activities. The "Defendants argue[d] that they did not copy an entire work, but only one page from a 154-page magazine." 796 F.2d at 1154. The district court granted summary judgment in the defendants' favor based on fair use, and the Ninth Circuit affirmed. Both the district court and the Ninth Circuit determined the scope of the "entire work" in the context of the third factor of the fair use analysis, with the Ninth Circuit determining that the defendants had "copied an entire work" when it copied the one-page parody. *Hustler Magazine, Inc.*, 796 F.2d at 1154-1155.

### 2. *Super Future Equities v. Wells Fargo Bank Minnesota*, 553 F. Supp. 2d 680 (N.D. Tex. 2008).

The plaintiff in *Super Future Equities* copied a webpage from one of the defendant's websites and posted the page on its own website to criticize the defendant. The defendant counterclaimed for copyright infringement. When the plaintiff moved for summary judgment on the copyright claim, the defendant argued that the work as a whole for fair use should be the page that was copied, while the plaintiff argued that it should be the entire website. *Super Future Equities*, 553 F. Supp. 2d at 699-700. On summary judgment the district court determined that the "work as the whole" for purposes of the fair use defense was the one page that was copied, not the entire website, but nonetheless found fair use. *Id.*

### 3. *Los Angeles Times v. Free Republic*, 1999 WL 33644483 (C.D. Cal. Nov. 8, 1999).

The defendant operated an online bulletin board that allowed its members to post news articles and add commentary. The plaintiffs, the Los Angeles Times and the Washington Post, sued for unauthorized reposting of their copyrighted news articles. The plaintiffs filed a motion for summary judgment, arguing that the defendants could not rely on fair use. The parties contested the scope of the "work as a whole" for purposes of the third prong of the fair use analysis. Defendants contended that plaintiffs' "work" was the entire daily newspaper because the copyright registration covered the paper as a whole rather than any particular article. The court rejected this argument and held that the individual articles were the "works as a whole." *Los Angeles Times*, 1999 WL 33644483, at *18-20.

### 4. *Religious Tech. Ctr. v. Arnaldo Pagliarina Lerma*, 1996 U.S. Dist. LEXIS 15454 (E.D.Va. Oct. 4, 1996).

The defendant posted on the Internet portions of documents that were copyrighted by the Church of Scientology. The plaintiff moved for summary judgment of copyright infringement, and the court granted the motion. In the fair use analysis the parties disputed the scope of the "work as the whole" for purposes of the third prong of the analysis. The plaintiff argued that it should be each of the documents contained in the collection that was copyrighted, whereas the

defendant argued it should be the entire collection of documents.  The court held that the plaintiff's approach was correct and was supported by the Code of Federal Regulations regarding copyrighted collections.  37 C.F.R. §202.3(b)(3)(B).

### B. Courts often conduct bench trials on the issue of fair use and, in the course of those bench trials, rule on the scope of the "work as a whole."

Google and Oracle agree that the "work as a whole" should be determined by the Court.  Submitting this question to the Court is appropriate, just as if the parties had agreed to a bench trial, as in the cases discussed below.

#### 1. *Pacific and Southern Co., Inc. v. Duncan*, 744 F.2d 1490 (11th Cir. 1984).

Plaintiff was a news station that broadcast programming on television.  Plaintiff alleged that defendant infringed its copyrights by videotaping the news broadcasts, and selling clips to individuals shown in the different segments of the news broadcasts.  The district court held after a bench trial that the defendant had infringed plaintiff's copyrighted material and that defendant's use did not qualify as "fair use."  In conducting the fair use analysis, the district court considered the entire work to be the segments of the broadcast that were copied, and not the entire newscast.  The Second Circuit affirmed both the district court's determination that the segments were works as a whole, and the finding of copyright infringement.  *Pac. & S. Co., Inc.*, 744 F.2d at 1496-97.

#### 2. *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994).

The plaintiff, American Geophysical Union, along with 82 other publishers of scientific and technical journals brought a class action claiming that Texaco's unauthorized photocopying of articles from their journals was copyright infringement.  *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d at 914.  The parties agreed to try fair use in a bench trial.

American Geophysical Union published a periodical entitled the Journal of Catalysis.  Each issue of the journal contained between 20 and 25 articles.  The district court ruled that "the photocopying of eight articles from the Journal of Catalysis for use by one of Texaco's researchers was not fair use."  *Id*.

1   On appeal the defendant argued that the copyrighted journal should be considered the
2  work as a whole for the purpose of the third factor of the fair use analysis.  The Second Circuit
3  rejected that argument, holding that "Texaco copied [] entire works" by copying individual
4  articles within the journal.  60 F.3d at 926.  On that basis, the Second Circuit agreed with the
5  district court that defendants could not carry their burden in proving fair use.

6  **II.  THE 37 API PACKAGES, TAKEN INDIVIDUALLY AND AS A UNIT, COMPRISE THE WORKS AS A WHOLE FOR PURPOSES OF COMPARISON TO THE INFRINGING PRODUCT.**
7

8  The copyrighted works at issue are the APIs for the 37 packages and their associated class
9  libraries (and their associated source code) and the 11 individual computer program code files.
10 Those works were encompassed within the copyright registration for J2SE 5.0 and J2SE 1.4, and
11 also in various earlier registrations identified in the registrations for J2SE 5.0 and J2SE 1.4.
12 Google argues that the entire Java platform is necessarily the "work as a whole" because
13 that is what was registered with the Copyright Office.  Courts have soundly rejected that
14 argument..  As  explained in *Los Angeles Times v. Free Republic*, *supra*:

15  > Defendants contend that plaintiffs' "work" is the entire daily newspaper because their copyright registration covers the paper as a whole rather than any particular
16  > article. Thus, they assert, copying an individual article constitutes reproduction of only a small portion of the entire work. This proposition is not supported by the
17  > case law. See *Texaco, supra*, 60 F.3d at 925-26 (copying an entire article from a journal where the copyright registration covered the journal as a whole constituted
18  > a copying of the entire work); *Hustler Magazine, supra*, 796 F.2d at 1155 (finding that "[a] creative work does not deserve less copyright protection just because it is
19  > part of a composite work" and holding that the copying of a one-page parody from a 154-page magazine constituted a copying of the entire work); *Netcom On-Line
20  > II, supra*, 923 F.Supp. at 1247 ("although many of Hubbard's lectures, policy statements, and course packets are collected into larger volumes, and registered as
21  > a whole, they may still constitute separate works for the purposes of this factor"); *Lerma, supra*, 1996 WL 633131 at *9 ("we find that the Works at issue in this case
22  > are combined in 'collections' and that each subpart must be considered a 'single work' for the purposes of fair use analysis").
23

24 1999 WL 33644483, at *19; *see also* 37 C.F.R. 202.3(b)(4)(i)(A); *Am. Geophysical Union v.
25 Texaco Inc.*, 802 F. Supp. at 17 (holding that each article within a journal was protected by a
26 copyright even though the publisher chose to register only each issue of the journal with the
27 Copyright Office); *Religious Tech. Ctr.*, 1996 U.S. Dist. LEXIS 15454, at *27 (E.D.Va. Oct. 4,
28 1996) ("[a]lthough Lerma did not post the entirety of [the materials registered with the Copyright

COPYRIGHT BRIEF REGARDING WORK AS A WHOLE
CASE NO. CV 10-03561 WHA
pa-1525720

4

Office], he did post the entirety of certain discrete subparts of these series. Under the Code of Federal Regulations and under case law, these subparts constitute single works and are the benchmark against which to compare Lerma's actions.") Thus each of the 37 API packages stands as a "work as a whole" entitled to copyright protection.

Each individual API package can be considered a work as a whole.  The evidence at trial established that they have been individually developed over a long period of time through a formal process.  (RT at 624:3-627:17 (Reinhold).)  The 37 API packages as a unit also constitute a work as a whole for purposes of copyright protection.  Google has argued that the 37 API packages it copied form a natural subset of the total number of Java API packages, and Google's testimony supports grouping the 37 API packages together as a "work as a whole" for the purposes of the fair use analysis.  Specifically, Google has introduced evidence that these 37 API packages are the core API packages to running Java on a smartphone platform.  As Google's engineer Dan Bornstein testified on April 25, 2012:

> **Q.** Did Android implement all the API packages present in any particular Java Platform?
>
> **A.** No.
>
> **Q.** All right. And why not?
>
> **A.** That wasn't a goal of the project. The goal of the project was to provide something that was familiar to developers. It wasn't to provide any particular preexisting set of packages.
>
> **Q.** Did you make any judgments in deciding what packages would be implemented in the core library based on whether or not certain APIs are even appropriate for a mobile platform?
>
> **A.** Yeah, absolutely.
>
> **Q.** And, please, explain what you mean by that?
>
> **A.** Well, if you look at the -- say, the universe of packages that have been made for the Java language in general, some of them just don't really apply in -- or, you know, didn't apply in the case of what we were doing with Android.  And you can remember that, again, the point was to be a good mobile platform and there are certain constraints that that makes. You know, you can assume that the thing that you're running on is running on a battery, and that's -- that's a particular limitation.

> You can know that there's going to be less memory available than, say, on a desktop or a server. You'll know that, say, the typical CPU speed is going to be slower than you would find on a -- you know, on a desktop or server. And you'll also know that -- just the sorts of things that you would do as a mobile application are going to be different than the things that you would do if you're, say, sitting in a data center running a web server, for example. It's just -- there's different -- there are different needs. And so to the extent that some of those needs are represented in potential Java packages, those are Java packages that we wouldn't necessarily -- you know, or, we wouldn't really want to -- to have an implementation for, especially in that it takes -- implementation takes up space and, you know, storage space on a mobile device an also limited.
>
> **Q.** So did you, in fact, exclude from the API packages in the core library certain Java language APIs because you believed they were not appropriate for the mobile platform?
>
> **A.** That's right.

(RT at 1783:15-1785:4 (April 25, 2012).)

Regardless of how the Court ultimately defines the "work as a whole," in determining whether Google's use of the 37 Java API packages constitutes "fair use," the jury must consider the amount and substantiality of the portion used in relation to the copyrighted work as a whole. *Harper & Row*, 471 U.S. 539, 564 (1984). Thus, in addition to instructing the jury about the appropriate scope of the "work as a whole," the Court should also instruct the jury that in determining whether or not the portion used was substantial (the quantitative analysis), the jury should conduct a qualitative analysis. Whether or not a use of the work is *quantitatively* substantial, it may nonetheless be *qualitatively* substantial if the infringer takes the parts of the work that are among the best or most important, as Google admits it has done here. *See e.g., Harper & Row*, 471 U.S. at 610 (300 words out of a book was not insubstantial when they were "among the most powerful" in the book.); *Roy Export Co. Establishment etc. v. CBS*, 503 F. Supp. 1137, 1144 (S.D.N.Y. 1980) (holding that snippets of Charlie Chaplin films, even as small as fifty-five seconds out of an one hour and twenty-nine minute film, could nonetheless be considered qualitatively substantial, when the material was chosen because it was among the best in the film.) Google's testimony establishes that its copying of the 37 Java API packages cannot be fair use, regardless of its quantitative significance in relation to the work as a whole

COPYRIGHT BRIEF REGARDING WORK AS A WHOLE
CASE NO. CV 10-03561 WHA
pa-1525720

6

| | | |
|---|---|---|
| 1 | Dated: April 25, 2012 | MORRISON & FOERSTER LLP |

By: /s/ *Michael A. Jacobs*
      Michael A. Jacobs

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.