| | |
|---|---|
| 1 | MORRISON & FOERSTER LLP<br>MICHAEL A. JACOBS (Bar No. 111664) |
| 2 | mjacobs@mofo.com<br>KENNETH A. KUWAYTI (Bar No. 145384) |
| 3 | kkuwayti@mofo.com<br>MARC DAVID PETERS (Bar No. 211725) |
| 4 | mdpeters@mofo.com<br>DANIEL P. MUINO (Bar No. 209624) |
| 5 | dmuino@mofo.com<br>755 Page Mill Road, Palo Alto, CA 94304-1018 |
| 6 | Telephone: (650) 813-5600 / Facsimile: (650) 494-0792 |
| 7 | BOIES, SCHILLER & FLEXNER LLP<br>DAVID BOIES (Admitted *Pro Hac Vice*) |
| 8 | dboies@bsfllp.com<br>333 Main Street, Armonk, NY 10504 |
| 9 | Telephone: (914) 749-8200 / Facsimile: (914) 749-8300<br>STEVEN C. HOLTZMAN (Bar No. 144177) |
| 10 | sholtzman@bsfllp.com<br>1999 Harrison St., Suite 900, Oakland, CA 94612 |
| 11 | Telephone: (510) 874-1000 / Facsimile: (510) 874-1460 |
| 12 | ORACLE CORPORATION<br>DORIAN DALEY (Bar No. 129049) |
| 13 | dorian.daley@oracle.com<br>DEBORAH K. MILLER (Bar No. 95527) |
| 14 | deborah.miller@oracle.com<br>MATTHEW M. SARBORARIA (Bar No. 211600) |
| 15 | matthew.sarboraria@oracle.com<br>500 Oracle Parkway, Redwood City, CA 94065 |
| 16 | Telephone: (650) 506-5200 / Facsimile: (650) 506-7114 |
| 17 | *Attorneys for Plaintiff*<br>ORACLE AMERICA, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S COMMENTS REGARDING THE COURT'S PROPOSED JURY INSTRUCTIONS (PHASE ONE)**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

At the Court's request, Oracle America, Inc. ("Oracle") discusses below the three issues of greatest concern regarding the Court's proposed jury instructions distributed on April 26, 2012. Oracle may raise additional items regarding the jury instructions and the Court's special verdict form at the charging conference on Aprl 27, 2012.

### I. THE JURY SHOULD BE INSTRUCTED THAT THE STRUCTURE, SEQUENCE, AND ORGANIZATION OF THE 37 JAVA API PACKAGES AS EXPRESSED IN THE API DOCUMENTATION IS ALSO AT ISSUE

Oracle objects to the Court's Instruction No. 21 that "For the API documentation issue, you do not need to be concerned with structure, sequence, and organization, a concept that applies only to the compilable code part of the case." (ECF No. 994 at 12-13.) The structure, sequence, and organization ("SSO") of the API packages exists within the API documentation as well and Google should be liable for copying it.[1] It would be error to instruct the jury to disregard it.

Dr. Reinhold, Chief Java Architect at Oracle, explained that the structure expressed in the API documentation is the same as the structure within the compilable code because the code is run through the Java Documentation Extractor (or "Javadoc") to pull out the structure and English language comments, and produce a webpage that reflects the same SSO of the API that is in the code. (RT at 606:14-608:3 (Reinhold); TX 1046 at p.19 of 24.)

> Now, we also run that source file through another tool called the Java Documentation Extractor or JavaDoc for short. That tool processes this file. It pulls out the structure, the names. It ignores the actual instructions in the methods. It also pulls out the English prose, which is in comments in this file, and produces the web page that we have been looking at already.

---

[1] The Court has acknowledged the importance of the structure, sequence, and organization expressed within the API documentation, explaining:

> The specification for a class library—much like the specification for an automobile—is an item of detailed documentation that explains the organization and function of all packages, classes, methods, and data fields in the library. The class library specification for a given software platform, sometimes called the 'API Specification' is an important reference item for programmers."

(ECF No. 433 at 3.)

> So in a very real sense this is software that contains its own blueprint. All right. An API is a blueprint, well, the blueprint is in the source file along with all of the instructions that actually wind up in the class library.

(*Id.*)  In response to the Court's questions, Dr. Reinhold explained that, "In terms of the actual text, the words [in the documentation] are copied over, the API structure is copied over from the source file, and all of the words describing each method or field are also copied over."  (RT at 609:1-9.)  (*See also* RT 1169:8-15 (Lee agreeing that like Java documentation, Android documentation was "created by a tool that actually reads portions of the source code and then places it in a kind of template that's available on the web as a source of documentation.")

Regardless of whether the SSO is expressed in the compilable code or the API documentation, it is protectable expression in both cases.  In *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, Judge Easterbrook found that the structure of dental code which organized various dental procedures into a hierarchy represented in three formats – numerically, by short description, and by long description – was equally protectable regardless of which format was copied.  126 F.3d 977, 979, 980-981 (7th Cir. 1997) ("The long description is part of the copyrighted work, and original long descriptions make the work as a whole copyrightable.  But we think that even the short description and the number are original works of authorship.").  The infringer copied "most of the numbering system and short descriptions from the ADA's Code," and the Court did not distinguish one format from the other.  It explained that taxonomies, such as the West Key Number System and the dental code, are not "systems" and are protectable as expression.  126 F.3d at 978 (7th Cir. 1997) (noting that "[b]lueprints for large buildings (more committee work), instruction manuals for repairing automobiles, used car value guides, dictionaries, encyclopedias, maps" are protectable original expression).[2]  Analogously, if the SSO of the 37 Java API packages is protectable as expressed in source code, it is also protectable as

---

[2] The court explained that "Facts do not supply their own principles of organization. Classification is a creative endeavor.  Butterflies may be grouped by their color, or the shape of their wings, or their feeding or breeding habits, or their habitats, or the attributes of their caterpillars, or the sequence of their DNA; each scheme of classification could be expressed in multiple ways."  *Id.* at 979.

expressed in the API documentation. Far less creative structures have been found subject to copyright protection in this Circuit. *See, e.g., CDN Inc. v. Kapes,* 197 F.3d 1256, 1262 (9th Cir. 1999) (prices in guide for collectible coins); *Practice Mmgt. Info. Corp. v. Am. Med. Ass'n,* 877 F. Supp. 1386, 1390-92 (C.D. Cal. 1994), *aff'd in relevant part*, 121 F.3d 516 (9th Cir. 1997) (numerical codes for medical procedures); *Jacobsen v. Katzer*, 2009 U.S. Dist. LEXIS 115204, at *9-10 (N.D. Cal. Dec. 10, 2009) (text files reflecting decoder information from model railroad manufacturers).

The trial evidence shows that Google copied the English language descriptions of API elements within the API documentation into Android. (*See* RT 1169-1176 (Lee comparing the wording between Java and Android documentation). But Oracle's claim should not be limited to that form of copying. Oracle is also entitled to submit to the jury that the SSO expressed within the API documentation was copied, in addition to the English language descriptions. (RT 1174:1-16 (Lee) ("Q. And the structure of the documentation is identical; correct, sir? And if you think of it as an outline, the outline would match identically; correct, sir? A. Yes. Q. And that's because on the Android side you're documenting the same application programming interfaces as were documented on the Java side; correct, sir? 16 A. Yes.".)

On a related point, in Instruction No. 25, Oracle disagrees that the jury should be instructed to apply the "virtually identical" standard to API documentation "because the documentation for the API packages describe narrow technical functions and it is to be expected that the same words and phrases would be more likely used." The structure, sequence, and organization of the documentation involves equally as many design choices as the implementation does. Copying the SSO from the API documentation should be subject to the same substantial similarity test used for copying the compilable code. *See Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1176 (9th Cir. 1989) (applying substantial similarity standard to copied non-literal elements of computer software).

**II. THE JURY SHOULD BE INSTRUCTED THAT THE NAMES OF JAVA API PACKAGE ELEMENTS ARE PROTECTABLE AS PART OF THE STRUCTURE, SEQUENCE, AND ORGANIZATION OF THOSE PACKAGES**

The Court's Proposed Instruction No. 20 states that "copyrights do not cover the names given to files or packages because under the law, names cannot be copyrighted." This sentence tracks the Court's earlier ruling that individual names are not protectable by copyright. (*See* ECF No. 433 at 7-8.) Instruction No. 20 does not, however, reflect the issue that the Court left open regarding names – "the possibility that the selection or arrangement of those names is subject to copyright protection." (*Id.* at 8.) As currently drafted, the instruction omits the concept that names may be protectable *as part of* the SSO of the 37 Java API packages. Instruction No. 20 may be misinterpreted by the jury as a directive to disregard the names completely, which would make it difficult or impossible to assess the SSO of the 37 API packages of which the names are an integral part. To clarify this point, Oracle proposes adding at least one sentence to Instruction No. 20: "While individual names are not protectable on a standalone basis, the names are protectable as part of the structure, sequence, and organization of the 37 API packages."

The Court's prior ruling that names are not protectable was limited to individual names or short phrases taken on a standalone basis. (ECF No. 433 at 7-8 (citing *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 n.7 (9th Cir. 1992) ("Sega's security code is of such de minimis length that it is probably unprotected under the words and short phrases doctrine")).) The Court expressly acknowledged that "[c]opyright protection for the selection and arrangement of elements within a work is a separate question from whether the elements themselves are protected by copyright." (*Id.* (*citing Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) ("a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship")).) The law is clear that elements that are unprotectable on an individual basis may be combined into a protectable whole if their selection and arrangement is sufficiently original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 362 (1991) ("[t]he question that remains is whether

1  Rural selected, coordinated, or arranged these uncopyrightable facts in an original way.  As
2  mentioned, originality is not a stringent standard . . .").  *See also Merchant Transaction Sys. v.*
3  *Nelcela, Inc.*, 2009 U.S. Dist. LEXIS 25663, at *49 (D. Ariz. 2009) ("the Court cannot conclude
4  that no reasonable juror could not find creativity in the selection and arrangement of the Lexcel
5  software's field names, let alone the remaining allegedly similar non-literal elements of the
6  Lexcel software, sufficient to render the compilation original enough for protection.").
7       In this case, the SSO of the 37 API packages is manifested, in part, in a hierarchy of
8  named packages, classes, methods, and other elements such as interfaces and fields.  Dr.
9  Reinhold, Chief Java Architect at Oracle, provided the following example showing the hierarchy
10  of some of the classes in the "java.nio.channels" package:

**java.nio.channels**
    **- Object**
        **- Channels**
        **- FileLock**
        **- Pipe**
        **- SelectionKey**
        **- Selection**
        **- AbstractInterruptibleChannel**
            - FileChannel
            - SelectableChannel
                - AbstractSelectableChannel
                    - DatagramChannel
                    - ServerSocketChannel
                    - SocketChannel

21  (RT at 594:2-596:22 (Reinhold); TX 1046 at slide 9 (p.11 of 24).)  To meaningfully evaluate the
22  SSO of the API packages, the jury will need to consider the named elements as part of the
23  structure.  Without the named elements, the upper portions of the hierarchy (everything above the
24  method declarations) would be incomprehensible:

____.____._____
    **- Object**
        - _____
        - _____
        - _____

```
                    - _____
                      - _____
                        - _____
                          - _____
                            - _____
                              - _____
                                - _____
                                  - _____
```

This cannot be the intended result of the Court's earlier ruling regarding names. The method declarations themselves consist of words and short phrases that might not be copyrightable in isolation (e.g., "public static int max (int arg1, int arg2)"), yet this does not mean that the declarations are unprotectable. (RT at 786:1-787:8 (Bloch).)[3] While the Court ruled that individual names are unprotectable, names in the context of the SSO are part of what is protectable. Instruction No. 20 should reflect that distinction, as suggested by Oracle's proposed edits.

### III.  THE JURY SHOULD BE GIVEN MORE GUIDANCE ON THE ELEMENTS OF GOOGLE'S FAIR USE DEFENSE

The Court's Instruction No. 28 regarding Google's fair use defense should be supplemented to provide additional guidance to the jury on how each of the statutory factors is to be applied. Factors 1, 3, and 4 currently provide no indication as to whether those elements weigh for or against fair use, and factor 2 is ambiguous without further explanation. To provide clarity, Oracle proposes a few additions to this instruction:

First, to help orient the jury to the concept of "fair use," the instruction should include the following preamble language from Section 107:

> [F]air use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

17 U.S.C. § 107. This language provides useful examples of the types of activities that may constitute fair use of a copyrighted work.

---

[3] Dr. Bloch acknowledged that the selection of names for API elements is important. (RT at 744:16-745:20.)

1  Second, Oracle proposes the following additions to the fair use factors in Instruction No. 28, drawn from the caselaw cited in the Model Instructions (NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.18 Comment (2007)):

**Factor 1**: Oracle proposes adding –"Commercial use weighs against a finding of fair use." *See Elvis Presley Enters., Inc. v Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003) ("the fact that a new use is commercial as opposed to non-profit weighs against a finding of fair use").

**Factor 2**: Oracle proposes adding – "If the original copyrighted work is creative in nature, this cuts against a finding of fair use." *See A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1015 (9th Cir. 2001) ("[w]orks that are creative in nature are 'closer to the core of intended copyright protection' than are more fact-based works").

**Factor 3**: Oracle proposes adding – "The greater the quantity and quality of the work taken, the less that fair use applies. Copying may not be excused merely because it is insubstantial with respect to the infringing work." *See Elvis*, 349 F.3d at 630 ("[C]opying may not be excused merely because it is insubstantial with respect to the infringing work.").

**Factor 4**: Oracle proposes adding – "When the defendant's use of the copyrighted work competes with the copyrighted work, then it is less likely a fair use." *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995) (defendant's use of plaintiff's software in providing a competing service was not a fair use).

In sum, Oracle's neutral and accurate explanations will be helpful to the jury in analyzing the four factors.

Dated: April 26, 2012                MORRISON & FOERSTER LLP

                                     By:   /s/ Michael A. Jacobs

                                     *Attorneys for Plaintiff*
                                     ORACLE AMERICA, INC.