MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S OBJECTIONS TO PROPOSED NEW JURY INSTRUCTION ON FAIR USE**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge:  Honorable William H. Alsup |

1    Oracle submits this brief to address the new proposed instruction on fair use that was

2    proposed by the Court for the first time at the charging conference on Friday, April 27.  The

3    instruction should not be delivered in the current form because it has incorporated additions from

4    Google that have the potential to greatly mislead the jury.

5    **I.    THE COURT'S PROPOSED NEW INSTRUCTION ON FAIR USE HAS ADOPTED SUGGESTIONS FROM GOOGLE THAT HAVE GREAT**
6    **POTENTIAL TO MISLEAD THE JURY.**

7    The Court submitted a revised proposed fair use instruction at the charging conference on

8    April 27.  That instruction incorporated suggested additions from both parties.  It incorporated three

9    requested additions from Google that should not be adopted: (1) a statement that "You may

10   consider any additional factors you believe are appropriate to assist in your determination of

11   whether Google's use was fair use" (Proposed Jury Instruction No. 28); (2) a proposed insert to the

12   instruction regarding transformative use; and (3) a proposed insert to the instruction regarding the

13   "functional" nature of a work.  For the reasons stated below these three additions should not be

14   adopted.

15   **A.    The Jury Should Not Be Told That It May Consider Any Additional Factors It Believes Are Appropriate.**
16

17   At Google's prompting, the Court has incorporated language into proposed Instruction

18   No. 28 which provides that "You may consider any additional factors you believe are appropriate to

19   assist in your determination of whether Google's use was fair use."  Proposed Instruction No. 28.

20   Including this language in the instruction would be legal error and would be extremely prejudicial

21   to Oracle.  As worded, it would invite the jury to consider any factor it wishes in reaching its verdict

22   on fair use.  Fair use law is not so unbounded, however.

23   The Copyright Act enumerates four statutory factors that may be considered in conducting a

24   fair use analysis.  17 U.S.C. § 104.  Oracle agrees that these four statutory factors are not

25   necessarily an exhaustive list.  As Google notes, the Supreme Court has stated that the "factors

26   enumerated in the statute in the section are not meant to be exclusive" and that each case must be

27   decided on its own facts.  (ECF No. 996 at 1 (quoting *Harper & Row Publishers, Inc. v. Nation*

28   *Enters.*, 471 U.S. 539, 560 (1985) (citation omitted).)  It does not follow, however, that the jury has

1  unbridled discretion to consider whatever factor it wishes as part of fair use.  The jury may only

2  consider factors that legitimately relate to the doctrine of fair use and the purpose behind it.

3     In *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994), the Supreme Court explained

4  that the rationale behind the fair use doctrine is to further the underlying purpose of the Copyright

5  Act itself: "From the infancy of copyright protection, some opportunity for fair use of copyrighted

6  materials has been thought necessary to fulfill copyright's very purpose, 'to promote the Progress

7  of Science and useful Arts . . . .' U.S. Const., Art. I, § 8, cl. 8." 510 U.S. at 575.  Accordingly, the

8  Court emphasized that the fair use doctrine authorizes consideration of additional factors that go to

9  the issue of stifling creativity: "The fair use doctrine thus 'permits [and requires] courts to avoid

10  rigid application of the copyright statute when, on occasion, it would stifle the very creativity which

11  that law is designed to foster.'" *Id.* at 577 (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)

12  (internal quotation marks and citation omitted in original).

13     While courts endorse the notion that additional factors may be considered in evaluating a

14  fair use defense, in practice, courts have been willing to consider very few additional factors.  The

15  jury should not be permitted to consider any additional factors in reaching its verdict that are

16  unrelated to the purpose of the fair use doctrine, that is to avoid "stifling the very creativity which

17  the law is designed to foster." *Campbell*, 510 U.S. at 577.  Citing *Campbell*, the Ninth Circuit has

18  emphasized that the fair use analysis needs to be grounded in the purpose of copyright law:

19
20
21
22

> We are mindful that fair use is a tool for adapting copyright law to brisk
> technological advances and for tempering the over-technical application of
> copyright law. Nonetheless, in re-weighing the four fair use factors on appeal, "in
> light of the purposes of copyright," *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S.
> 569, 578, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994), we conclude that the Sheriff's
> Department is not entitled to the fair use defense.

23  *Wall Data, Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2005).  *See also id.* at

24  777 ("The fair use defense buttresses the basic goal of copyright law: to put copyrighted works to

25  their most beneficial use so that "the public good fully coincides . . . with the claims of individuals.")

26  (citation omitted) (omission in original).

27     Accordingly, the jury should not be permitted to base its verdict on additional factors that

28  have nothing to do with fair use law, or its purpose of avoiding stifling creativity, such as whether

1    Google believed it had a license, or whether Sun waited too long to sue.  Evidence on these, and

2    other similar issues, has played a prominent role in Google's defense.  This evidence relates to

3    Google's equitable defenses of laches, waiver, estoppel and implied license, not fair use.

4            The parties have all agreed that these equitable defenses are an issue for the Court to decide,

5    and Oracle objected to the jury hearing this evidence in the first place.  But as drafted, this

6    instruction could lead the jury to conclude that it is entitled to take any of the evidence it has heard

7    relating to the equitable defenses into account in determining fair use.  The jury may effectively

8    render a verdict on fair use based on issues that are the province of the Court alone.  Moreover the

9    jury would render its verdict without any knowledge of the actual elements of those equitable

10   defenses to apply, since Google has proposed that the jury be provided with an over-simplified

11   instruction on the equitable defense issues that leaves out many of the elements that it must prove.

12   (*See* ECF No. 1004.)

13          These are only examples.  If the jury is literally told it can take anything into account, it may

14   assume it is free to decide what is "fair" generally, as opposed to what is "fair use."  It is likely that

15   the jury will assume it can base its verdict on other Google arguments that have nothing to do with

16   fair use, such as Google's legally incorrect argument concerning the Apache Harmony license.

17   There will be no way for the parties to determine whether this legal error occurred and as a result,

18   any finding in favor of Google on fair use would be tainted by error.  The proposed instruction will

19   give Google's counsel free reign to argue that any or all of these issues should be considered as part

20   of fair use.

21          For all the above reasons, Google's proposed addition to the instruction regarding

22   consideration of additional factors should be removed.  If the Court believes that the jury should

23   consider factors beyond the four statutory ones, the Court should specifically identify them and

24   include them as part of the instruction so that the jury is not misled into believing that it has an

25   unfettered discretion to consider whatever factors it wishes, including those that are legally

26   irrelevant in determining fair use.  This would be in line with the Ninth Circuit's Model Jury

27   Instructions, which suggest that the Court "*insert any other factor that bears on the issue of fair*

28

*use*," rather than deliver an open-ended instruction of the type Google has proposed.  *See* Ninth Circuit Civil Model Jury Instructions (Copyright) § 17.18 (emphasis in original).

   **B.**  **The Fair Use Instruction Should Not Include Language Regarding Transformative Use.**

   The Court's proposed fair use instruction would also tell the jury, as part of its explanation of the first enumerated factor ("purpose and character of the use"), that the jury should consider "whether such work is transformative (meaning whether the [sic] Google's use of the copyrighted material was for a purpose distinct from the purpose of Oracle's original material)."  Giving that part of the instruction would be error because (1) Google has presented no evidence to support a conclusion that its use of Java APIs is "transformative" within the meaning of controlling case law, and (2) while much preferable to Google's proposed definition of "transformative," the proposed definition—"for a purpose distinct from the purpose of Oracle's original material"—is unsupported by case law and has potential to mislead the jury in a way unfairly prejudicial to Oracle.

   Google relies for this "transformative" addition to the "purpose and character" part of the fair use instruction on *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994).  *Campbell*, which involved a claim of fair use for a song parody, held that "parody, like other comment or criticism, may claim fair use under § 107."  510 U.S. at 579.  In so holding, the Court explained the "purpose and character" factor with reference to whether the new work is "transformative":

> The enquiry here may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like, see § 107.  The central purpose of this investigation is to see, in Justice Story's words, whether the new work merely "supersede[s] the objects" of the original creation, ("supplanting" the original), or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative." . . . [T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.

510 U.S. at 578-79 (citations omitted).

   Google's use of the copied materials in Android is nothing like "the examples given in the preamble to § 107," and the Court should be cautious in adopting a definition of "transformative" that is not guided in any way by that context as *Campbell* suggests it should be.  *See* 17 U.S.C.

§ 107.  In *Leadsinger, Inc. v. BMG Music Publ'g*, for example, the Ninth Circuit started its analysis by considering whether the allegedly transformative use of copying song lyrics for karaoke fell within the statutory examples.  512 F.3d 522, 530 (9th Cir. 2008).  The Court concluded it did not, and emphasized that "Leadsinger's basic purpose remains a commercial one — to sell its karaoke device for a profit.  And commercial use of copyrighted material is 'presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.'"  *Id.* at 530 (citation omitted).

Ninth Circuit cases following *Campbell* have emphasized that "transformative" is intended to refer to a work—like a criticism or a parody—that has a purpose entirely different from the original and is not intended to apply to a competing work with a parallel object or purpose.  For example, in *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003), in holding that a search engine operator's use of "thumbnail" pictures of copyrighted images was "transformative" fair use, the court explained that,

> [T]he thumbnails were much smaller, lower-resolution images that served ***an entirely different function*** than Kelly's original images.  Kelly's images are artistic works intended to inform and to engage the viewer in an aesthetic experience . . . . Arriba's use of Kelly's images in the thumbnails is ***unrelated to any aesthetic purpose***.

336 F.3d at 818 (emphasis added); *id.* at 819 (emphasis added) ("Arriba's use of the images serves a different function than Kelly's use—improving access to information on the internet versus artistic expression . . . .  Because Arriba's use is not superseding Kelly's use but, rather has created a different purpose for the images, Arriba's use is transformative.").

Similarly, in *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007), which followed *Kelly* and held that Google's search engine "thumbnail" photographs were "transformative" uses of the plaintiff's photographs and hence fair use, the Ninth Circuit emphasized that the search engine used the photographs for an entirely different function:

> Although an image may have been created originally to serve an entertainment, aesthetic, or informative function, a search engine transforms the image into a pointer directing a user to a source of information . . . . [A] search engine provides social benefit by incorporating an original work into a new work, namely, an electronic reference tool . . . . In other words, a search engine puts images in a different context so that they are transformed into a new creation.

1   487 F.3d at 721 (emphasis added) (internal citations and quotations omitted); *id*. at 721 ("a search

2   engine provides an entirely new use for the original work"); *id*. at 722 ("Here, Google uses Perfect

3   10's images in a new context to serve a different purpose.")

4          In *Worldwide Church of God v. Phila. Church*, 227 F.3d 1110 (9th Cir. 2000), the Ninth

5   Circuit found no "transformative" use where a non-profit church used for its own religious

6   observances a book copyrighted by another church.  The court explained that, far from

7   transformative, "where the 'use is for the same intrinsic purpose as [the copyright holder's] . . . such

8   use seriously weakens a claimed fair use.'"  227 F.3d at 1117, quoting *Weissmann v. Freeman*,

9   868 F.2d 1313, 1324 (2d Cir. 1989).

10          Here, Google uses the Java APIs not for "an entirely different function" (*Kelly*, 336 F.3d at

11   818) or "in a new context to serve a different purpose" (*Perfect 10*, 487 F.3d at 722) but for "the

12   same intrinsic purpose" (*Worldwide Church of God*, 227 F.3d at 1117) in a competing product and

13   to attract Java developers.  There is nothing "transformative" about that use.  That Google licenses

14   Android under a particular "open source" license (the Apache license, which allows a licensee to

15   get without giving back) while Oracle licenses Java both commercially and under a different open

16   source license (the GPL, which allows a licensee to get in return for giving back) "transforms"

17   nothing.  Otherwise, taking someone's copyrighted material and giving it away under a license of

18   one's choice would be rendered "transformative" merely by attaching the label "open source."

19          Nor can the fact that Android is a smart phone platform and the Java APIs are typically

20   deployed in other computing and mobile phone contexts possibly render Google's use

21   "transformative."  Google has done nothing more than take technology that was already present in

22   one billion mobile phones, copy it without modification, and place that same technology in several

23   hundred million competing mobile phones.  Further, there is nothing "transformative" in the fact

24   that Android is a smartphone platform: there was uncontroverted evidence at trial that the Java

25   APIs are used in the Blackberry smartphones manufactured by RIM, and were used in the

26   Sidekick/Hiptop smartphones manufactured by Andy Rubin's company Danger, and Nokia's

27   Series 60 phones.  (Tr. 959:20-23 (Swetland); 1585:21-23 (Rubin); 300:18-19 (Ellison); 383:6-9

28   (Kurian); 1102:3-9 (Cizek); 1922:22-25 (Gering).)  If Google's argument were accepted, the idea

1  of "transformation" would swallow up copyright protection: anyone claiming to have a better

2  business model for distributing the copyrighted work would be able to copy it, sell it, and claim

3  "fair use."  Movie makers would be hard-pressed to enforce their copyrights against infringing

4  distributors where there were no previous distributors; book publishers could not enforce against

5  e-Book publishers if they were not already distributing e-Books; musicians could not enforce

6  against FM or satellite radio stations if their songs were broadcast only on AM stations.  This is not

7  the law.  As the Ninth Circuit noted in *Perfect 10*:

8  > In contrast, duplicating a church's religious book for use by a different church was
> not transformative.  *See Worldwide Church of God v. Phila. Church of God, Inc.*,

9  > 227 F.3d 1110, 1117 (9th Cir. 2000).  Nor was a broadcaster's simple retransmission
> of a radio broadcast over telephone lines transformative, where the original radio

10 > shows were given no "new expression, meaning, or message."  *Infinity Broad.*
> *Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir.1998).

11

12 487 F.3d at 722; *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008)

13 (applying song lyrics to enable sing-along not transformative).[1]

14      Here, Google took 37 Java API packages that are implemented by Oracle, or by others

15 under license, in the Java documentation and computer software and copied them into the Android

16 documentation and computer software.  This is not "an entirely different function" (*Kelly*, 336 F.3d

17 at 818); it is the same function and "the same intrinsic purpose" (*Worldwide Church of God*,

18 227 F.3d at 1117).  Google's Android platform may have been highly disruptive to existing markets,

19 as Google intended, but that does not make its use "transformative" within the meaning of fair use

20 law.

21

22 [1] *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527-28 (9th Cir. 1993) and *Sony Computer Entm't, Inc v. Connectix Corp.*, 203 F.3d 596, 603-04 (9th Cir. 2000), which involved

23 reverse engineering in the video game context, are not contrary to these general principles.  Those cases involved so-called "intermediate copying" where the final products were not accused of

24 infringement.  The issue was whether game console manufacturers could prevent video game developers from reverse engineering a short code that locked the games to the manufacturer's

25 console (*Sony*) or prevented the game cartridge maker from developing games that were compatible with the console (*Sega*).  The issue in both was the ability of the console makers to

26 restrict game makers, who made products that were complementary to and not substitutes for the plaintiffs.  In neither case was there a nexus between that which was infringing (the intermediate

27 copy) and any impairment of the market for the plaintiffs' products.  These cases present *sui generis* fact patterns that are inapplicable here, where Google has developed an *incompatible*

28 *substitute* for the Java class libraries.

Google's parallel use of the Java APIs is thus not "transformative" as a matter of law. There is, therefore, no basis to instruct the jury on a "transformative" defense, and the reference to "transformative" in the first ("purpose and character of the use") fair use factor in Instruction No. 28 should be stricken in its entirety.

Even if there were a basis to instruct the jury on whether a work is "transformative" (which there is not), the current definition of "transformative" in Instruction No. 28—"meaning whether the [sic] Google's use of copyrighted material was for a purpose distinct from the purpose of Oracle's original material"—is inaccurate. As demonstrated above, the principle of "transformative" does not apply whenever there is *any* distinction in use but only when the accused infringer's use is for "an entirely different function" and is "unrelated" to the original use of the copyrighted work. *Kelly*, 336 F.3d at 818.

The current definition of "transformative" in Instruction No. 28 is unsupported by case law and is likely to mislead the jury. For example, having been told that they must find only "a purpose distinct from the purpose of Oracle's original material" in order to apply the "transformative" principle, jurors may believe that simply because Google has used the Java API packages to create a different product, "distinct" from prior products using the Java API packages, Google's use is "transformative." Such a conclusion would be erroneous under controlling case law.

Therefore, if Instruction No. 28 is to refer to "transformative" at all—which it should not—it should define "transformative," consistent with Ninth Circuit law, as "meaning whether Google's use of copyrighted material was for a distinct purpose unrelated to the function and purpose of Oracle's original material."

## C.     The Fair Use Instruction Should Not Include Google's Proposed "Functional" Language

Finally, the Court has proposed to adopt Google's language, under the second fair use factor, as to whether a work is "functional" or "factual". The authority Google relies upon for this proposed addition to the instruction is *Sega*, 977 F.2d at 1524. (*See* ECF No. 996 at 2.) But Google's excerpt omits much of the important context for the Court's discussion. The opinion goes

1   on to state that computer programs cannot be so easily slotted into the functional/creative

2   dichotomy:

3   > Computer programs pose unique problems for the application of the
    > "idea/expression distinction" that determines the extent of copyright protection. To
4   > the extent that there are many possible ways of accomplishing a given task or
    > fulfilling a particular market demand, the programmer's choice of program structure
5   > and design may be highly creative and idiosyncratic.  However, computer programs
    > are, in essence, utilitarian articles - articles that accomplish tasks. As such, they
6   > contain many logical, structural, and visual display elements that are dictated by the
    > function to be performed, by considerations of efficiency, or by external factors
7   > such as compatibility requirements and industry demands.

8   *Sega*, 977 F.2d at 1524 (citation omitted).  The court continues:

9   > Because of the hybrid nature of computer programs, there is no settled standard for
    > identifying what is protected expression and what is unprotected idea in a case
10  > involving the alleged infringement of a copyright in computer software. We are in
    > wholehearted agreement with the Second Circuit's recent observation that '[t]hus
11  > far, many of the decisions in this area reflect the courts' attempt to fit the proverbial
    > square peg in a round hole.'
12

13  *Id.* (citation omitted).  Ultimately, the court concluded in *Sega* that the second factor weighed in

14  favor of fair use because it was a reverse engineering case and "disassembly of the object code in

15  Sega's video game cartridges was necessary in order to understand the functional requirements for

16  Genesis compatibility."  *Id.* at 1526.  The facts here are completely different.

17        Google's proposed insert to the instruction completely ignores these complexities, and

18  invites the jury to slot a square peg into a round hole.  Every computer program is functional, but as

19  the Ninth Circuit has recognized, aspects of computer programs may be highly creative.  Oracle

20  accordingly requests that this portion of the proposed instruction be omitted as well.

21                                    **CONCLUSION**

22        For all the above reasons, the three proposed additions to the Court's fair use instruction

23  should not be adopted.

24

25

26

27

28

1

Dated: April 29, 2012                                MICHAEL A. JACOBS
2                                                    MARC DAVID PETERS
                                                     DANIEL P. MUINO
3                                                    MORRISON & FOERSTER LLP

4                                                    By:  /s/ *Michael A. Jacobs*
                                                          Michael A. Jacobs
5                                                        *Attorneys for Plaintiff*
                                                          ORACLE AMERICA, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28