MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax)

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE, INC.<br><br>　　　　　　Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA, INC.'S MOTION TO EXCLUDE PORTIONS OF THE RULE 706 EXPERT REPORT OF DR. JAMES KEARL [REDACTED]**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

# **NOTICE OF MOTION AND MOTION TO STRIKE**

PLEASE TAKE NOTICE that Plaintiff Oracle America, Inc. ("Oracle") hereby moves to exclude portions of the opinions and testimony of the court-appointed Rule 706 expert Dr. James Kearl. This motion is based on the following memorandum of points and authorities, the declaration of Meredith Dearborn and accompanying exhibits, the entire record in this matter, and on such evidence as may be presented at any hearing on this Motion, on a date to be determined by the Court, as well as any other ground the Court deems just and proper.

Dated:  April 2, 2012                    STEVEN C. HOLTZMAN

By:  */s/Steven C. Holtzman*
Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Oracle moves to strike one aspect of the copyright infringer's profits analysis by the Court-appointed damages expert, Dr. James Kearl.

On infringer's profits Google bears the burden of proving its deductible expenses for Android. The only costs that Google may deduct are those that actually contributed to sales of the infringing work. Dr. Kearl has not tried to determine whether Google's claimed Android expenses are in fact attributable to Android, or whether they contributed to infringing sales of Android. Instead, he adopts the figures that Google's copyright damages expert, Dr. Alan Cox, used in the infringer's profits calculation in his October 2012 damages report.

But Dr. Cox also conducted no examination or analysis of the allocation of expenses to Android. To determine the deductible expenses for Android, Dr. Cox relied on two things: (a) an unaudited P&L statement that his staff "received from counsel," and (b) an interview with a Google employee, Aditya Agarwal, who had already testified – as Google's corporate designee on Android revenues and expenses – that he <u>did not know</u> how Google's expenses were allocated to Android on its P&L statements. Mr. Agarwal is not on Google's trial witness list, and consequently cannot appear at trial to provide the factual basis for Dr. Cox's – or Dr. Kearl's – allocation of expenses to Android.

Dr. Kearl's opinion is based on an assumption that Google cannot prove. Google cannot establish that its P&L statements properly account for deductible Android expenses—its corporate representative Mr. Agarwal conceded he could not answer that question. Dr. Cox cannot supply the foundation for the accounting of expenses – his sole basis is Mr. Agarwal. Mr. Agarwal cannot show up at trial with different testimony – he is not on Google's witness list. In short, the foundation for Dr. Kearl's opinion on expenses is like the proverbial turtle, and "it is turtles all the way down."[1]

---

[1] *Rapanos v. United States*, 547 U.S. 715, 754 n.14 (2006) (Scalia, J.). As Justice Scalia explains the allusion, "an Eastern guru affirms that the earth is supported on the back of a tiger. When asked what supports the tiger, he says it stands upon an elephant; and when asked what supports the elephant he says it is a giant turtle. When asked, finally, what supports the giant turtle, he is briefly taken aback, but quickly replies 'Ah, after that it is turtles all the way down.'" *Id.*

Dr. Kearl cannot offer testimony on Android costs that rests on nothing more than Google's expert's unfounded opinion. The proof of Pursuant to Federal Rules of Evidence 702, 703, and 403, Oracle moves to strike this single aspect of Dr. Kearl's testimony.

## II.     ARGUMENT

Last fall, Oracle moved to strike Dr. Cox's opinions insofar as they relied on interviews with Google employees, one of whom was Mr. Agarwal. (Dkt. No. 558 at 6–10.) In its opposition, Google conceded that the interviewees had to establish the foundational facts at trial before its experts could testify based on those facts. (Dkt. No. 581 at 3 ("Google has already explained that it will, and accepts that it must, offer the underlying factual testimony from the percipient witnesses first, before its experts may testify based on those facts.").) Oracle pointed out that Mr. Agarwal was not even on Google's witness list, and thus would never be able to "offer the underlying factual testimony" at trial. (Dkt. No. 614 at 3.) In denying Oracle's *Daubert* motion, the Court emphasized that Google's experts could testify only so long as the interviewees on which its experts relied could "testify to the foundational facts with firsthand knowledge" at trial. (Dkt. No. 632 at 3 (citing *Therasense, Inc. v. Becton, Dickerson & Co.*, No. C04-02123 WHA, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008) (Alsup, J.).) Oracle seeks to enforce that Order. On the issue of Android expenses, Google has no competent witness who can provide the foundational facts on which Dr. Cox relied. As Dr. Kearl has no basis for his allocation of expenses other than Dr. Cox, he too has no proper factual basis for those deductions, and his opinion must be excluded on this score.

### A.     Google bears the burden to show that the costs it claims should be deducted from its infringer's profits actually contributed to Android's profits.

In calculating infringer's profits as a measure of copyright damages, Oracle must "present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Google therefore has the statutory burden of proof to show its deductible costs. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985) ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff. . . . If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits.") (citation

omitted); *see also Taylor v. Meirick*, 712 F.2d 1112, 1121–22 (7th Cir. 1983) ("It is too much to ask a plaintiff who has proved infringement also to do the defendant's cost accounting.").

The only costs that Google may deduct are those that "actually contributed to sales of the infringing work." *Frank Music*, 772 F.2d at 516.[2] Before deducting any category of costs from the raw revenue, a defendant must offer evidence showing how the costs contributed to the production of the infringing work.

In *Frank Music*, the defendant, MGM, introduced evidence at trial that segregated overhead expenses into general categories, such as general and administrative costs, sales and advertising, and engineering and maintenance. MGM then allocated a portion of these costs to the production of the infringing show, Hallelujah Hollywood, based on a ratio of the revenues from that production as compared to MGM Grand's total revenues. *Id.* The district court adopted the defendant's approach, but the Ninth Circuit reversed, holding that the district court's finding that MGM had established that its overhead contributed to the infringing show was clear error.

The court noted that settled law permitted a deduction for overhead only "when the infringer can demonstrate that [the overhead expense] was of actual assistance in the production, distribution or sale of the infringing product." *Id.* (*citing Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) and *Sheldon v. Metro-Goldwyn-Mayer Pictures, Co.*, 106 F.2d 45, 54 (2d Cir. 1939), *aff'd*, 309 U.S. 390 (1940)). Although the infringer need not "prove his overhead expenses and their relationship to the infringing production in minute detail," the defendant nonetheless "bears the burden of explaining, at least in general terms, how claimed overhead actually contributed to the production of the infringing work." *Frank Music*, 772 F.2d at 516. On the facts before it, although it did not doubt that "some of defendants' claimed overhead contributed to the production of Hallelujah Hollywood," the Court held that the defendants had

> offered no evidence of what costs were included in general categories such as 'general and administrative expenses,' nor did they offer any evidence concerning how these costs contributed to the production of *Hallelujah Hollywood*. The defendants contend their burden was met when they introduced evidence of their total overhead costs allocated on a reasonable

---

[2] Although *Frank Music* construed an earlier version of the Copyright Act, Congress's amendments do not affect these holdings. Later cases have continued to rely on *Frank Music* for this proposition. *See, e.g.*, *Folkens v. Wyland*, C-01-1241 EDL, 2002 WL 1677708, at *6 (N.D. Cal. July 22, 2002).

3

basis. The district court apparently agreed with this approach. That is not the law of this circuit. Under *Kamar International*, a defendant additionally must show that the categories of overhead actually contributed to sales of the infringing work. 752 F.2d at 1332. We can find no such showing in the record before us.

*Id.* Here, therefore, Google bears the burden of demonstrating that the expenses that it seeks to deduct actually contributed to Android's profits.

### B. Google has no competent witness who can testify to the "foundational facts" on which Dr. Cox and Dr. Kearl rely.

On April 8, 2011, Oracle deposed Mr. Adyita Agarwal, a senior financial analyst at Google, who was Google's Rule 30(b)(6) designee on Google's revenues and expenses relating to Android. (Declaration of Meredith Dearborn ("Dearborn Decl.") Ex. A (Plaintiff's Notice of Deposition of Defendant Google, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated March 10, 2010).) By proffering Mr. Agarwal, Google represented that he spoke for the company on "how Google accounts for Android-related revenues and expenses." (*Id.*, Topic 2.) Mr. Agarwal testified that he was "prepared to speak to all profits, losses, revenues, expenses and costs associated with Android, including those associated with Android market and advertising on Android-related enabled devices." (Dearborn Decl. Ex. B (Agarwal Dep. 10:20–25).) Google had a duty to "make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter.'" *Bd. of Tr. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 526 (C.D. Cal. 2008) (citations omitted). Mr. Agarwal, as Google's 30(b)(6) deponent, had an "affirmative obligation to educate himself" on how Google accounts for Android's revenues and expenses, because he had to be prepared to "testify to the knowledge of the corporation, <u>not</u> the individual." *Id.* (citations omitted, emphasis in original).



4

ORACLE'S MOTION TO EXCLUDE PORTIONS OF RULE 706 EXPERT REPORT OF DR. JAMES KEARL
CASE NO. CV 10-03561 WHA



(*Id.* 51:1–17.) Google's corporate representative on Android revenues therefore testified that he could not explain why an engineering expense, or a sales expense, should be allocated to Android, as opposed to some other business unit within Google.

Mr. Agarwal also testified that:

- He did not know whether the methodology used to allocate expenses for Android was the same as that used for other Google business units. (*Id.* 51:7-22.)

- He did not know whether the "consistent methodology" that generates the Android P&L had been used before January 2010, when he joined the Android finance team. (*Id.* 52:1–14.)

- He did not know who at Google would know what methodology was used to generate Android P&Ls before January 2010. (*Id.*)

- He did not know whether Android's booked development engineering expenses, which he admitted were a significant portion of the operating expenses for Android, included any costs incurred prior to Android's launch. (*Id.* 75:10–76:17.)

- He did not know whether Android's engineering expenses had been amortized. (*Id.*)

- He did not know who at Google would know whether Android's engineering expenses had been amortized. (*Id.*)



    **C.**    **Dr. Cox relied, and Dr. Kearl indirectly relies, on Mr. Agarwal and the P&L, despite the fact that Mr. Agarwal could not confirm that all of the Android expenses contributed to Android's profits.**

In his calculation of infringer's profits, Dr. Cox testified that he himself did not try to determine

1  what Google expenses were properly allocable to Android.  (Dearborn Decl. Ex. D (Cox Dep. 46:16–
2  47:21) ("I didn't do an allocation.  I just took the expenditures that Google had booked on its P&Ls for
3  Android, having determined based on the sources that you cited that it was appropriate to do so.")  Dr.
4  Cox is not an accountant.  (*Id.* 145:18–21.)  The "sources" on which Dr. Cox relied were limited to
5  what appears to be a recent version of the Android P&L document, the transcript of Mr. Agarwal's
6  30(b)(6) deposition cited above, and two off-the-record conversations with Mr. Agarwal.  (*Id.* 47:3–21;
7  78:23-80:2).)  ███████████████████████████████████████████
8  ████████████████████████████████████████████████████████
9  ████  That document was produced to Oracle as part of "backup" to Dr. Cox's reports in October,
10 several months after the close of discovery.  Dr. Cox conceded that the document was not audited, and
11 that as far as he knew, none of the historical figures in the P&L had been audited either.  (Dearborn
12 Decl. Ex. D (Cox Dep. 80:22 –82:3).).
13 ████████████████████████████████████████████
14 ██████████████████████████████████████████
15 ████████████████████████████████████████████
16 ████████████████████████████████████████████
17 ██████████████████████████████████████████
18 ████████████████████████████████████████████
19 ████████████████████████████████████████████
20 ████████████████████████████████████████████
21 ██████████████
22 The sole basis for Dr. Cox's determination that the engineering expenses in Google's P&L are
23 attributable to the Android platform is an interview he conducted with Mr. Agarwal.  ████████
24 ████████████████████████████████████████████
25 ████████████████████████████████████████████
26 ██████████████████████████████████████
27 At his deposition, Dr. Cox testified that he understood that he was required to calculate which
28 expenses were attributable to Android.  (Dearborn Decl. Ex. D (Cox Dep. 69:6–10).)  He also

acknowledged that Mr. Agarwal, the sole source identified in his report, testified that he "didn't know what the methodology is," that "[h]e didn't know exactly the manner in which the engineering expenses were booked, or in his words allocated, to Android, and the sales expenses for Android," that he did not know what methodology was used prior to January 2010, and that he did not know whether that methodology had changed before 2010. (*Id.* 69:11–82:25.) Yet he conceded that he relied on no sources other than Mr. Agarwal and the P&L to determine the allocation of expenses was appropriate, and did no diligence other than talking with Mr. Agarwal to verify the statement in his report. (*See id.* 79:6–80:7.)

### D.  Dr. Kearl relies on Dr. Cox, and did no independent analysis of his own.

In his report, Dr. Kearl deducted the same expenses as Dr. Cox. His sole basis for those deductions is Dr. Cox's report. (Dearborn Decl. Ex. E (Kearl Report ¶¶ 121, 122, Table 9); Ex. F (Kearl Dep. 207:21–209:13).) He testified that he had "not gotten involved in sort of whether these numbers in the Google reports are accurate," nor did he have any way to determine whether or not the actual expense item was properly allocated to Android as opposed to another business operation. (Dearborn Decl. Ex. F (Kearl Dep. 207:24–208:17).)

### E.  Google will not be able to establish that the costs contributed to Android's profits, because it has no witness who can speak to the proper allocation of costs to Android.

Based on the record evidence, Google will not be able to establish a key foundational fact for each element of cost it seeks to deduct—that the cost "actually contributed to sales of the infringing work." *Frank Music*, 772 F.2d at 516.

<u>First</u>, Mr. Agarwal is not on Google's witness list. (*See* Dkt. No. 525-3; Dkt. No. 840.) The court has limited each party to the witnesses disclosed in the joint proposed pretrial order. (Dkt. No. 675 ¶ 4.) Google may argue that it reserved the right to call any person on Oracle's witness list, but Mr. Agarwal is only listed as testifying by <u>deposition</u> on Oracle's list. (Dkt. 525-2 at 13.) As described above, Mr. Agarwal's deposition provides no basis for concluding that any cost in the P&L should be allocated to Android.

<u>Second</u>, even if Google could call Mr. Agarwal to testify at trial, he could not testify that any of the costs were "entirely and directly attributable to the Android platform" (Dearborn Decl. Ex. C (Cox

1  Report at p. 32 and n. 117)), because he conceded in his deposition that he did not know how Google
2  made that determination.  (Dearborn Decl. Ex. B (Agarwal Dep. 51:1–17).)  Mr. Agarwal was not
3  testifying based on "firsthand knowledge."  (Dkt. No. 632 at 3.)  He was Google's corporate
4  representative.  His answers bind the company as admissions, but cannot be used by Dr. Kearl or
5  Google's experts to fulfill or comment on Google's burden.  He cannot be permitted to profess
6  ignorance of Google's P&L cost allocation methodology in his deposition as a corporate designee, but
7  suddenly remember that methodology in interviews with Google's experts and at trial.  *See*
8  *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc*., 201 F.R.D. 33, 36 (D. Mass. 2001) (holding
9  that interpreting Rule 30(b)(6) to require a company's witness to prepare for the deposition is
10 "necessary in order to make the deposition a meaningful one and to prevent the 'sandbagging' of an
11 opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one
12 before the trial.  This would totally defeat the purpose of the discovery process.")  (citations omitted);
13 *see also* Dkt. No. 676 at 7 (Omnibus Order on Motions in Limine) ("In the interest of fairness, Mr.
14 Lindholm cannot testify on matters he refused to address during his deposition.").

15 Third, Dr. Cox explained that he did no other due diligence to understand the methodology in
16 the Android P&L document, or to determine whether the costs it lists were properly allocated to
17 Android, other than discussing that document with Mr. Agarwal.  (Dearborn Decl. Ex. D (Cox Dep
18 75:19–76:22).)  As a consequence, even if the P&L document is admitted into evidence, neither Dr.
19 Cox nor Dr. Kearl can testify as to whether any of its costs contributed to Android's revenues because
20 neither did any independent verification of their own to determine whether that allocation was correct.
21 *See Kilgore v. Carson Pirie Holdings, Inc*., 205 F. App'x 367, 372 (6th Cir. 2006) (expert testimony
22 was "not supported by sufficient data or reliable methodology" where expert relied on an article but
23 "did not know on what research or methodology the article was based, and he admitted that he did not
24 conduct any independent research on this subject.").

25 Fourth, Google should not be permitted to have some other witness at trial support Dr. Cox's
26 expense calculations, and Dr. Kearl's assumption that Dr. Cox's calculation are correct, by testifying
27 that the allocation of expenses on the Android P&L is correct.  To permit Google to do so would
28 undermine the purpose of discovery in at least three critical ways:  (1) Google would be allowed to

circumvent the testimony of its 30(b)(6) designee, who was unable to provide any information that would confirm that Google correctly accounted for Android expenses; (2) Google would benefit from its failure to present a 30(b)(6) witness who could testify intelligently about Android expense allocation; and (3) Google would evade the rule that an expert must disclose the bases for his or her opinions, by citing one basis in discovery, and substituting a different one at trial, when the original basis collapses.

Thus, no witness at trial will be able to support Dr. Cox's assumptions, or Dr. Kearl's adoption of Dr. Cox's assumptions, as to the allocation of costs between Android and Google's other business units.

### F.     Allowing Dr. Kearl to testify as to the proper cost deductions would be improper under *Daubert* and prejudicial to Oracle.

Because no witness at trial can support Dr. Cox's assumptions as to the allocation of Android costs and Dr. Kearl relies on Dr. Cox's assumptions, Dr. Kearl's lacks foundation and this defect cannot be cured at trial.

An expert must base his testimony on relevant facts or data.  *See* FED. R. EVID. 702, 703; *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (a damages expert must "tie the expert testimony on damages to the facts of the case.").  As this court wrote in *Therasense*:

> The more central the "fact" issue is in the overall opinion and overall trial and the more controverted the "fact" is in the context of the case, the more due diligence an expert should exercise before merely taking a partisan's word. At some point, as here, the supposed fact is too important and too controverted and should be addressed by witnesses with firsthand knowledge.

*Therasense*, 2008 WL 2323856, at *2.

The proper allocation of costs has crossed this threshold of importance.  Prof. Cockburn has shown that Google's Android revenues through 2011 amount to more than ▮▮▮▮▮▮▮  After accepting that <u>all</u> of Dr. Cox's cost adjustments contributed to Android's profits, Dr. Kearl is prepared to testify that the measure of infringer's profits damages (as of September 2011) is just ▮▮▮▮▮ (Dearborn Decl. Ex. E (Kearl Report Table 9).)  Dr. Kearl assumed that the cost allocations in Dr. Cox's report were correct; Dr. Cox assumed that Mr. Agarwal could confirm the accuracy of the cost allocation on the Android P&L; and Mr. Agarwal admitted that he had no understanding of how that

9

1   allocation was done in the first place.  Dr. Kearl has no reliable or reasonable basis on which to rely on
2   Dr. Cox's opinion.
3          Dr. Kearl acknowledged at his deposition that "if the evidence is these costs are less, or they
4   should have been amortized differently, then the methodology would have – you know, I would tell the
5   jury, if asked, that the jury needs to make those adjustments, or I would make the adjustments for the
6   jury and present the numbers to them." (Dearborn Decl. Ex. F (Kearl Dep. 208:18–209:13).)  But the
7   only opinion Dr. Kearl has offered in his report is that, in effect, all of the cost deductions are
8   attributable to Android, because he has accepted Dr. Cox's categories of deductions.  (Dearborn Decl.
9   Ex. E (Kearl Report Table 9).)  The Court has repeatedly emphasized that expert testimony will be
10  confined to the material disclosed in the reports.  If an exception were made for Dr. Kearl, it would
11  undermine the discovery process and prejudice Oracle.  Google would be able to avoid the testimony of
12  its Rule 30(b)(6) witness and the disclosed opinions of its retained expert by withholding, and then
13  offering, more favorable evidence at trial, which Dr. Kearl would then incorporate into newly disclosed
14  analyses at trial.   Thus, Dr. Kearl can proffer no other opinion as to allocation or accounting of costs at
15  trial.[3]

### III.     CONCLUSION

For the reasons stated above, the Court should prohibit Dr. Kearl from testifying as to the amount of Google's cost deductions in his infringer's profits analysis.

Dated: April 2, 2012                             STEVEN C. HOLTZMAN

                                                 By:  */s/Steven C. Holtzman*
                                                      Steven C. Holtzman

                                               *Attorneys for Plaintiff*
                                               ORACLE AMERICA, INC.

---

[3] In contrast, it is appropriate for the experts to apply their previously disclosed methodologies to updated revenue, profit, and loss data from the months between the close of discovery and trial.  In that circumstance, the nature of the opinion and the character of the evidence is unchanged – the data is merely updated.