MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350 (fax)

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC. <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE, INC. <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE AMERICA, INC.'S MOTION TO EXCLUDE PORTIONS OF THE RULE 706 EXPERT REPORT OF DR. JAMES KEARL** <br><br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William H. Alsup |

# NOTICE OF MOTION AND MOTION TO STRIKE

PLEASE TAKE NOTICE that Plaintiff Oracle America, Inc. ("Oracle") hereby moves to exclude portions of the opinions and testimony of the court-appointed Rule 706 expert Dr. James Kearl. This motion is based on the following memorandum of points and authorities, the declaration of Meredith Dearborn and accompanying exhibits, the entire record in this matter, and on such evidence as may be presented at any hearing on this Motion, on a date to be determined by the Court, as well as any other ground the Court deems just and proper.

Dated: May 1, 2012
STEVEN C. HOLTZMAN

By: */s/Steven C. Holtzman*
    Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Oracle moves again to strike one aspect of Dr. James Kearl's infringer's profits analysis: the accounting for and deduction of Google's Android expenses, as derived from the opinion of Google's copyright damages expert, Dr. Alan Cox. This motion follows this Court's previous order granting in part and denying in part Oracle's Daubert Motion Against Dr. Kearl and providing Google with an opportunity to remedy the defect underlying the previous report. (Dkt. No. 891).

In its original April 2, 2012 motion to strike this aspect of Dr. Kearl's opinion (Dkt. No. 850, at 1), Oracle argued, and the Court accepted, that Dr. Kearl "used figures for Android-related expenses from Google's expert Dr. Alan Cox's October 2011 damages report" and that those figures were from an "Android Profit-and-Loss Statement." (April 10, 2012 Order, Dkt. No. 891, at 4.) Dr. Kearl relies on Dr. Cox, who relies on a P&L statement that does not, on its face, establish that the costs it itemizes are properly attributed to Android or that they are "deductible expenses" within the meaning of 17 U.S.C. § 504. Dr. Cox, in turn, "did not conduct an independent audit of the P&L statement to determine its reliability" but instead "relied on interviews of Aditya Agarwal, a senior financial analyst at Google." (*Id.*) As stated in our previous motion (Dkt. 850), however, Mr. Agarwal was unable to explain the methodologies underlying that P&L statement when he testified as Google's Rule 30(b)(6) witness on "how Google accounts for Android-related revenues and expenses" in April 2011. (Dkt. 850 Ex. B (Agarwal Dep.) at 51:1-17.) Moreover, Mr. Agarwal was not on Google's trial witness list and thus was precluded from giving testimony at trial to establish the foundation for how Google accounts for Android expenses.

Based on these facts, the Court denied Oracle's motion without prejudice and ordered Google to provide a supplemental report "revising only the foundational interviewee(s) for the P&L statements" and also ordered Google to provide Oracle with an opportunity to depose the interviewee. (Order at 7.)

On April 16, 2011, Google provided Oracle with a "supplement report" by Dr. Cox, redlined to show that Dr. Cox had simply substituted the name "Rubin" for "Agarwal" in three places. (*See* Declaration of Meredith Dearborn ("Dearborn Decl.") Ex. A (Supp. Expert Rep. of Dr. Alan J. Cox) at 32 n.117, 41, 42.) Mr. Rubin appeared for deposition on Friday, April 27, 2012.

1

Mr. Rubin's testimony suffers from the same defects as Mr. Agarwal's: Mr. Rubin is unable to testify as to how Google allocates expenses for Android as reflected on the Android P&L, and unable to ascertain which expenses, if any, are directly attributable to the infringement. Consequently, Dr. Kearl still cannot offer testimony on Android costs that rest on anything more than Google's expert's unfounded assumption. Accordingly, pursuant to Federal Rules of Evidence 702, 703, and 403, Oracle moves to strike this single aspect of Dr. Kearl's testimony.

## II.     ARGUMENT

### A.     Google bears the burden to show that the costs it claims should be deducted from its infringer's profits actually contributed to Android's profits.

In calculating infringer's profits as a measure of copyright damages, Oracle must "present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Google therefore has the statutory burden of proof to show its deductible costs. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985) ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff. . . . If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits.") (citation omitted); *see also Taylor v. Meirick*, 712 F.2d 1112, 1121–22 (7th Cir. 1983) ("It is too much to ask a plaintiff who has proved infringement also to do the defendant's cost accounting.").

Google may only deduct costs that "actually contributed to sales of the infringing work." *Frank Music*, 772 F.2d at 516.[1] Before deducting any category of costs from the raw revenue, a defendant must offer evidence showing how the costs contributed to the production of the infringing work.

In *Frank Music*, the defendant, MGM, introduced evidence at trial that segregated overhead expenses into general categories, such as general and administrative costs, sales and advertising, and engineering and maintenance. MGM then allocated a portion of these costs to the production of the infringing show, Hallelujah Hollywood, based on a ratio of the revenues from that production as compared to MGM Grand's total revenues. *Id.* The district court adopted the defendant's approach, but

---

[1] Although *Frank Music* construed an earlier version of the Copyright Act, Congress's amendments do not affect these holdings. Later cases have continued to rely on *Frank Music* for this proposition. *See, e.g.*, *Folkens v. Wyland*, C-01-1241 EDL, 2002 WL 1677708, at *6 (N.D. Cal. July 22, 2002).

2

the Ninth Circuit reversed, holding that the district court's finding that MGM had established that its overhead contributed to the infringing show was clear error.

The court noted that settled law permitted a deduction for overhead only "when the infringer can demonstrate that [the overhead expense] was of actual assistance in the production, distribution or sale of the infringing product." *Id.* (*citing Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) and *Sheldon v. Metro-Goldwyn-Mayer Pictures, Co.*, 106 F.2d 45, 54 (2d Cir. 1939), *aff'd*, 309 U.S. 390 (1940)). Although the infringer need not "prove his overhead expenses and their relationship to the infringing production in minute detail," the defendant nonetheless "bears the burden of explaining, at least in general terms, how claimed overhead actually contributed to the production of the infringing work." *Frank Music*, 772 F.2d at 516. On the facts before it, although it did not doubt that "some of defendants' claimed overhead contributed to the production of Hallelujah Hollywood," the Court held that the defendants had

> offered no evidence of what costs were included in general categories such as 'general and administrative expenses,' nor did they offer any evidence concerning how these costs contributed to the production of *Hallelujah Hollywood*. The defendants contend their burden was met when they introduced evidence of their total overhead costs allocated on a reasonable basis. The district court apparently agreed with this approach. That is not the law of this circuit. Under *Kamar International*, a defendant additionally must show that the categories of overhead actually contributed to sales of the infringing work. 752 F.2d at 1332. We can find no such showing in the record before us.

*Id.* Here, therefore, Google bears the burden of demonstrating not just that Google incurred expenses in developing Android, but that those expenses are "deductible" under 17 U.S.C. § 504 in that they actually contributed to the realization of Android profits. Nothing in the P&L statements cited by Dr. Cox, or in Mr. Rubin's testimony, allows Dr. Cox or Dr. Kearl to express an opinion that would meet that burden.

### B. Mr. Rubin was not competent to testify to the "foundational facts" on which Dr. Cox and Dr. Kearl ultimately rely.

On April 15, 2012 Google served Oracle with a "supplement report" that consisted of another copy of the same Cox report with only three changes. Google substituted (1) the name "Andy Rubin" for "Aditya Agarwal" (Dearborn Decl. Ex. A at 32 n.117); (2) the name and title "Andy Rubin, Vice

1  President for Android" for "Aditya Agarwal, Senior Financial Analyst" (*id.* at 41); and (3) "Mr. Rubin"
2  for "Mr. Agarwal" (*id.* at 42).
3       At his deposition, Mr. Rubin revealed that he had limited knowledge, and in significant cases,
4  no knowledge, of the facts necessary to determine whether the Android P&L accurately reflects
5  Google's deductible expenses under 17 U.S.C. § 504.   Mr. Rubin testified that:



Despite the fact that Google offered Mr. Rubin as the witness who would establish the accuracy of
the P&L statement and the allocation of Android expenses, he testified repeatedly that he did not know
because he is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Further, after he denied knowing
the methodology underlying the P&L statement and was asked who could explain it, Mr. Rubin named
Mr. Agarwal.  (*Id.* 62:6-25.)

     **C.**     **Dr. Cox did not in fact rely on any conversation with Mr. Rubin**

     Dr. Cox could not have actually relied on Mr. Rubin in creating his report.  The conversation
between Dr. Cox and Mr. Rubin did not include the factual assertions for which Dr. Cox supposedly
"relied" on Mr. Rubin.  Mr. Rubin testified that he and Dr. Cox ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1  for ███████████████████████████████████████████ He admitted that he had not
2  discussed with Dr. Cox the few things that Dr. Cox had attributed to him in the "supplement" report.
3  For example:

████████████████████████████████████████

████████████████████

████████████████████████

(*Id.* 10:20-11:3; *compare* Ex. A (Cox Report) at 32.) ████████████████████

████████████████████████████████████████

██████) Indeed, Mr. Rubin testified that he could not support that proposition, because as to the
time period prior to 2008, ████████████████████████████████

██████ (Dearborn Decl. Ex. B (Rubin Dep.) at 11:16-18.)[2]

Similarly, Mr. Rubin testified:

████████████████████████████████████████

████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

████████████

---

[2] Google may argue that it has dealt with this problem ████████████████
(*See, e.g.,* Ex. A (Cox Report), at 33 ████████████████████████
████████████████████████████████████████ ")
████████████████████████████████████████
████████████████████████████████████████
████████ Dr. Cox has disclosed nothing in this regard.

5

1
2
3
4
5
6
7
8
9
10
11
(Ex. B (Rubin Dep.) at 21:2-24; *compare* Ex. A (Cox Report), at 41.) ▬▬▬
12
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
13
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
14
   And still further:
15
16
17
18
19
20
 (Ex. B (Rubin Dep.) at 24:18-23; *compare* Ex. A (Cox Report) at 42) ("▬▬▬
21
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
22
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
23
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"); *see also id.* 23:5-13 (
24
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
25
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
26
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"). The only three
27
topics for which Mr. Rubin is cited in Dr. Cox's report were the three aforementioned points.
28

Thus, it is clear that Mr. Rubin (like Mr. Agarwal) did not and could not provide a basis for how Drs. Cox and Kearl calculated costs. Since Google has not provided a basis to support its claims regarding deductible costs for infringer's profits, it cannot offer expert testimony on this point.

### D. Neither the P&L Statement, Nor Mr. Rubin's Testimony, Specifically Identifies the Android Expenses that "Actually Contributed to the Production of the Infringing Work"

Google is not entitled to deduct all Android expenses from its revenues to establish infringer's profits. Rather, it may deduct only the expenses that "actually contributed to the production of the infringing work." *Frank Music*, 772 F.2d at 516. Mr. Rubin's deposition revealed that at least some of the expenses on the Android P&L were incurred for items that did not contribute to sales of the infringing work. For example, Mr. Rubin testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*E.g.*, Ex. B (Rubin Dep.) at 51:2-20.) Such expenses represent the cost of exploring alternatives to infringement, or alternative means of infringing, but cannot be said to contribute to the production of the infringing work. Similarly, the largest category of expense on the Android P&L is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮t. (*See* TX 1079.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. B (Rubin Dep.) at 46:5-12; 51:2-20.) Such expenses may belong on a P&L for the business unit, but they are not "deductible expenses" for purposes of copyright infringer's profits. *Frank Music*, 772 F.2d at 516. It is impossible to determine from the P&L or from Mr. Rubin's testimony which expenses should be so classified, or how large those expenses are.

### III. CONCLUSION

The Court ordered Google to provide a foundational interviewee to support the analysis in the Kearl report. Google failed to do so. Consequently, the Court should prohibit Dr. Kearl from testifying as to the amount of Google's cost deductions in his infringer's profits analysis.

Dated: April 30, 2012                    STEVEN C. HOLTZMAN

                                               By:  */s/Steven C. Holtzman*
                                                           Steven C. Holtzman

                                                           *Attorneys for Plaintiff*
                                                           ORACLE AMERICA, INC.