KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER
(*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (Pro Hac Vice)
1185 Avenue of the Americas
New York, NY 10036
Tel:  212.556.2100
Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA  94105
Tel: 415.318.1200
Fax: 415.318.1300

GREENBERG TRAURIG, LLP
IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
1900 University Avenue
East Palo Alto, CA  94303
Tel: 650.328.8500
Fax: 650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No. 3:10-cv-03651 WHA<br><br>**GOOGLE INC.'S OPPOSITION TO ORACLE AMERICA, INC.'S RENEWED MOTION TO STRIKE PORTIONS OF DR. JAMES KEARL'S EXPERT REPORT**<br><br>Dept.:     Courtroom 8, 19th Floor<br>Judge:    Hon. William Alsup |

Predictably, Oracle has renewed its demand for an ▬▬▬ evidentiary gotcha, trying to preclude Google from offering any evidence of Android-related costs—this time because its designated trial witness on that subject, Android team head Andy Rubin, is purportedly not intimately familiar with every last detail of Google's accounting practices and did not add the numbers in Google's regularly-generated Android financial statements himself. There is nothing in copyright law or this Court's prior orders that imposes this sort of standard for admissibility of a business record. This motion is yet another request from Oracle for an evidentiary shortcut that would free it from the burden of having to try this case on its merits. The Court should deny it.

Oracle's new motion styles itself as a "renewal" of a prior motion, but it starts from a very different premise from its prior motion. Oracle's first motion to strike was based on a purported concern that Aditya Agarwal, the witness who had provided foundation for the opinion of Google's copyright damages expert Dr. Alan Cox, was not on Google's trial witness list. Google opposed the motion based on the fact that there were other qualified witnesses who could speak to the same subject matter. The Court agreed, and permitted Google to designate a new trial witness to testify on that subject. Apr. 10, 2012 Order [Dkt. 891] at 5-7. Google designated Rubin, who was deposed for three hours last Friday, April, 27, 2012. Now Oracle has "renewed" its motion based on a different argument, that Rubin cannot lay the required foundation for Android-related financial documents at trial, because he does not know what brand of accounting software Google uses and did not tally up Google's cost items himself.

*First,* the Court made clear multiple times in its prior order that the proper time, if any, for Oracle to renew its objection is during the testimony of Google's foundational witness "at trial." Apr. 10, 2012 Order [Dkt. 891) at 5 ("If the proper foundation is laid at trial," Dr. Cox may rely on Google's documentary evidence); *id.* at 7 (Oracle may renew its motion if Google's witness is unable "to lay the proper foundation at trial"). As the Court has already directed, Google must (and will) present Rubin to testify on these issues during the damages phase of this trial in order for Dr. Cox to rely on him at all. If Google fails to lay the necessary foundation for admission of its financial data during Rubin's direct examination, Oracle may renew its objection then. The fact that Oracle's copyright infringement claim is already in the hands of the jury, which may find

1

no liability (and thus no need to consider damages), is another reason why it would be premature to decide this motion now, as opposed to during the damages phase (if there is one).

*Second,* the Court made clear the extent of Google's obligation to lay foundation through Rubin, Apr. 10, 2012 Order [Dkt. 891] at 5, and Rubin amply satisfied the Court's requirements. As the Court wrote, "If the proper foundation is laid at trial that" Google's evidence of Android-related costs "were 'routinely updated every quarter by Google in the ordinary course of business" and the figures therein accurately "encompass Android financial data" (Opp. at 2), then Dr. Cox can reasonably rely on those figures for calculating Android expenses." *Id.*

This is exactly what Rubin attested to at deposition:

> Q.  ... Is the accounting information that's reflected in the Android profit and loss document that's been marked Trial Exhibit 1079, is that *routinely updated every quarter* by Google?
>
> A.  *It is*. We do reports like this every quarter and they get given to me at the end of the quarter, when the reports are generated.
>
> Q.  And is it updated by your accounting department and *reviewed by you in the ordinary course of business*?
>
> A.  *Yes, it is*.
>
> Q.  On a regular basis?
>
> A.  Yes, quarterly.
>
> Q.  And does the information in Trial Exhibit 1079, the Android profit and loss information, *accurately encompass Android's financial data* for the time period shown in the documentation?
>
> A.  *Yes,* I believe so, to the—you know, *for the time period shown absolutely*. As I mentioned previously, before 2008 we didn't have procedures to generate these reports.

Declaration of Daniel Purcell in Opposition to Renewed Motion to Strike ("Purcell Decl.") Ex. A (Rubin Dep.) at 71:10-72:5 (emphases added). Rubin went on to testify that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  [REDACTED]
2  [REDACTED]
3     This testimony by itself is more than enough to lay a foundation for admitting the Google
4  financial statements into evidence as a reasonable basis for expert testimony. But Rubin's
5  testimony also provided additional specific details tying each cost category in the financial
6  documents to Android specifically. He began by explaining the limits of his discussion with Dr.
7  Cox, which involved "the cost associated with developing Android." Purcell Decl. Ex. A at 6:11-
8  12. He noted a couple of limitations in Google's accounting of costs. First, he explained that the
9  financial documents did not include costs incurred prior to 2008, when Google did not track
10 Android related costs specifically. *Id.* at 11:5-13. (This is a non-issue, because Dr. Cox excluded
11 any pre-2008 Android costs from his analysis, even though those costs would likely be
12 substantial, including two-and-a-half years of foundational engineering work on Android. Oct. 2,
13 2011 Cox Report at 33 ("I would also deduct the cost incurred by Google between July 11, 2005
14 and January 2008, but I understand that such separate accounting is not available.").) Second,
15 Rubin testified that, although the Android financial reports should include only Android-specific
16 data, there was an "odd chance" they could include some other costs. *Id.* at 11:5-12:9. Oracle's
17 counsel didn't ask any questions to follow up on that point.
18    Rubin went on to explain the content of any of the line items on the financial documents
19 related to Android that Oracle chose to ask about. Purcell Decl. Ex. A at 13:2-19 (explaining
20 content of [REDACTED]; *id.* at 18:13-21:1 (explaining that [REDACTED]
21 [REDACTED]; *id.* at
22 23:14-8 (explaining [REDACTED]; *id.* at 24:25-26:20 (providing
23 examples of fixed versus variable Android costs); *id.* at 29:5-15 (explaining [REDACTED]
24 [REDACTED]; *id.* at 46:24-47:25 (identifying [REDACTED]
25 [REDACTED]; *id.* at 47:1-2 (identifying [REDACTED]
26 [REDACTED]; *id.* at 47:3-6 (identifying [REDACTED]; *id.* at 48:10-49:4
27 (discussing [REDACTED]; *id.* at 51:2-20
28 (explaining that [REDACTED].

3

This amply satisfied both the Court's order that Google lay a foundation for admitting its financial documents and Ninth Circuit law regarding deductible expenses related to an allegedly infringing product—which, in this case, is the entire Android platform. Under Ninth Circuit law, an accused copyright infringer does not have the burden to "prove his overhead expenses and their relationship to the infringing product in minute detail." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985). Instead, the infringer bears only "the burden of explaining, *at least in general terms*, how claimed overhead actually contributed to the production of the infringing work." *Id.* (emphasis added). As Google pointed out previously, the proof in *Frank Music* fell short because the infringer offered only evidence of general, company-wide overhead expenses, and attributed a percentage of those to the infringing work, rather than providing a calculation of expenses specifically tied to the infringing work. *See id.* Here, Rubin made clear that the foundational documents were Android-specific and explained the relationship of each cost item to Android, to the extent Oracle asked him.

Oracle's specific objections to Rubin's testimony range from the bizarre—that he did not know "what accounting system is used to track Android expenses" or what specific person "at Google produces" the financial documents—to the incomprehensible—that he could not say "how Google divides overhead," whatever that means. Oracle Mot. at 4. As discussed already, Rubin testified that, to the best of Google's ability to determine, the financial statements collect Android related overhead only. Moreover, Oracle's complaint that Rubin could not vouch for pre-2008 Android costs is meaningless, because Dr. Cox excluded such costs from his analysis. Oracle admits Dr. Cox said so in his report. Oracle Mot. at 5 n.2 (Oct. 21, 2011 Cox Report at 33). In other words, Dr. Cox's analysis already leaves out a potentially massive category of Android-related costs because of the unavailability of specific supporting evidence. Oracle's response to this is to suggest that the 2008 Android numbers might actually include pre-2008 amounts. Of course, there is no evidence of this, and in any event Google would be *entitled* to claim any pre-2008 Android-related costs to the extent those could be identified. Rather than giving Google credit for using a conservative, evidence-based damages methodology that could only work in Oracle's favor, Oracle moves to strike it.

1  Oracle also complains that Dr. Cox could not actually have relied on anything Rubin said,
2  because Rubin did not "discuss[ ] with Dr. Cox the few things that Dr. Cox had attributed to
3  him." Oracle Mot. at 5. This is a hypertechnical objection that misses the entire point of the
4  revised Cox report. Google revised Dr. Cox's report only to the extent permitted under the
5  Court's April 10, 2012 order, which directed Google to "submit a supplement report revising *only*
6  the foundational interviewee(s)" for the financial documents. Apr. 10, 2012 Order [Dkt. 891] at 7
7  (emphasis added). That was exactly what Google did—it substituted Rubin's name for Aditya
8  Agarwal's and nothing more. The point of the revised report was not to represent to Oracle that,
9  on the eve of trial, Google had arranged for Rubin to identically replicate each word of Agarwal's
10 prior conversation with Dr. Cox; it was to give Oracle fair notice of which Google witness would
11 be providing foundational testimony to support admissibility of the Google financial documents.
12 If Oracle wants to object to Dr. Cox offering certain testimony at trial because Rubin did not
13 provide foundational factual testimony to support it, that is one thing, but that should wait for
14 trial. Rubin provided more than enough foundation to support admission of the financial
15 documents as Google business records, and certainly to support Dr. Cox's reasonable reliance on
16 them as part of the basis of his expert opinion.[1]

17 Oracle's objection that Rubin cannot lay the required foundation is also misplaced in light
18 of the Court allowing Oracle to call—on the very last day of the copyright trial—a witness who
19 had never at any time in this case been on Oracle's witness list, Oracle copyright counsel Tiki
20 Dare. Oracle called Dare for the specific purpose of admitting a purported Oracle business record
21 establishing Oracle's registration of the asserted copyrighted work with the Copyright Office. RT

---

[1] Oracle also cites *Frank Music* in support of an argument that Google is not entitled to deduct its Android-related research-and-development costs unless those costs actually resulted in material that made it into the platform. Oracle Mot. at 7:6-21 (objecting to inclusion of "costs of 'investigations' that Google made into alternative ways to develop Android"). But there is nothing in *Frank Music* that puts such costs off-limits, and Oracle cites no other case. Part of developing a product is evaluating various options, some of which may prove to be blind alleys—but even blind alleys but may lead to insights that contribute to the final product anyway. Of course, no business tracks its expenses so minutely, and there is no way to disentangle these categories after the fact. To take the example of the musical revue in *Frank Music,* Oracle would argue that costs related to scenic or costume designs that did not make the final production, or to understudies who were never forced to take the stage, would be non-deductible. Such a limitation has no legal basis and would make no logical sense in light of obvious business realities.

2256:7-2267:2. The Court permitted two rounds of *voir dire* from Google's counsel that showed that Dare did not have personal knowledge of every fact related to creation of the business records at issue. *Id.* at 2260:9-2261:12, 2263:12-2264:14 (Dare). Eventually the Court admitted the contested evidence under the business records exception, but instructed the jury that it was up to them to decide how much weight they wanted to give Dare's testimony. *Id.* at 2267:3-23 (Dare). The Google financials present a similar situation, but, unlike Dare, Rubin at least would be in the position of testifying about business records created at Google for the Android business unit while he was in charge of that business unit and which he personally reviewed at the time of their creation. Dare was testifying about purported business records that were created by an outside law firm, not by Sun itself. *Id.* at 2260:20-2261:10 (Dare). Having argued for and won the admission of important foundational evidence in its case, Oracle is in no position to complain about Rubin's authentication of Android financials.

There is also no way to reconcile Oracle's motion with the Court's prior order or with the Ninth Circuit's opinion in *Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826 (9th Cir. 1985), which the Court quoted at length in that order. Apr. 10, 2012 Order [Dkt. 891] at 6-7. There, in discussing the related issue of how specifically an infringer must prove the extent to which its profits are the result of non-infringing elements of its work, the court explained that

> [W]here it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements. "In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.
>
> …
>
> But we are resolved to avoid the one certainly unjust course of giving the plaintiffs everything, because defendants cannot with certainty compute their own share. In cases where plaintiffs fail to prove their damages exactly, we often make the best estimate we can, even though it is really no more than a guess, and under the guise of resolving all doubts against the defendants we will not deny the one fact that stands undoubted.

*Id.* (quoting *Cream Records,* 754 F.2d at 828-29). As the Court went on to note, even before the evidence came in during the copyright phase,

> Here, it is clear that Android's gross revenue through 2011 was not entirely profit attributable to the allegedly infringing material. There were undoubtedly expenses that went into the development and marketing of Android. It would be unjust to hide these expenses from the jury.

*Id.* at 7.

Since the Court wrote those words three weeks ago, it has become even clearer, based on the testimony just elicited in the copyright trial, that Android's gross revenue through 2011 was not entirely (if at all) profit attributable to the structure, sequence, and organization ("SSO") of the 37 Java API packages at issue. As both parties' experts agreed, the SSO accounts for just 7,000 to 10,000 lines of code—most of them brief and all of them required for interoperability—out of about 15 million lines in the Android platform as a whole. RT 2191:9-20 (Astrachan); *id.* at 2194:6-10 (Astrachan); *id.* at 2244:10-24 (Reinhold); *id.* at 2301:1-7 (Mitchell). Oracle is asking that the Court ignore this established fact and give it 100% of Google's revenues attributable to the functions provided by every one of the 15 million lines of code in the entire platform. As Google pointed out the last time Oracle brought this motion, "the one fact that stands undoubted" with respect to Google's development of Android is that Google was not able to create a successful smartphone platform for nothing. It is now equally well established that the SSO of the 37 API packages is a tiny fraction of the Android platform as a whole. As the *Cream Records* court explained, in dealing with these artificial, after-the-fact apportionment calculations, the Copyright Act does not require perfection. "As to the amount of profits attributable to the infringing material, 'what is required is … only a reasonable approximation.'" 754 F.2d at 829 (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940)). Google has exceeded that standard by offering admissible business records and a competent foundational witness in Rubin. Oracle is yet again looking for a windfall. The Court should deny this motion.

Dated: May 1, 2012

KEKER & VAN NEST LLP

By: */s/ Robert A. Van Nest*
ROBERT A. VAN NEST

Attorneys for Defendant
GOOGLE INC.