KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

KING & SPALDING  LLP
SCOTT T. WEINGAERTNER
(*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (Pro Hac Vice)
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA  94105
Tel:  415.318.1200
Fax: 415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA  94303
Tel: 650.328.8500
Fax: 650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>             Plaintiff,<br><br>        v.<br><br>GOOGLE INC.,<br><br>             Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**GOOGLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND MOTION FOR JUDGMENT AS A MATTER OF LAW ON COUNT VIII OF ORACLE'S AMENDED COMPLAINT**<br><br>Dept.:    Courtroom 8, 19th Floor<br>Judge:    Hon. William Alsup |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................1

II. LEGAL STANDARD ......................................................................................2

III. ARGUMENT ..................................................................................................2

A. The SSO of the 37 API packages is not copyrightable, and Google is entitled to judgment as a matter of law on the entirety of Oracle's copyright count...............................................................................................................2

B. Oracle failed to prove the actual contents of the works that are the subject of its registrations or that the copyrights cover any component parts of the works..............................................................................................................2

    1. Oracle has not proved the contents of the works that were registered with the Copyright Office. ....................................................................2

    2. Oracle has not proved that its copyright registrations cover the individual components of the works on which it bases its claims of infringement.......................................................................................5

C. Google is entitled to judgment as a matter of law that the source code and object code implementing the 37 API packages are not derivative works of Oracle's specifications. ...............................................................................7

D. Google is entitled to judgment as a matter of law that the names and declarations from the 37 API packages that appear in the Android source code are not copyrightable. .........................................................................8

E. The alleged literal copying is *de minimis* and thus non-actionable. .......................9

    1. Oracle failed to prove that Google's use of the rangeCheck method is more than *de minimis*. ...................................................................10

    2. Oracle failed to prove that the use of the allegedly copied comments in CodeSourceTest.java and CollectionCertStoreParametersTest.java is more than *de minimis*. ...........11

    3. Oracle failed to prove that the use of the eight "Impl" and "ACL" files is more than *de minimis*. ...................................................................12

F. Google is entitled to judgment as a matter of law that its specifications for the 37 API packages do not infringe Oracle's copyrights. ...................................14

    1. The evidence cannot support a finding that Android's English-language documentation was copied from the Java API specifications...............................................................................................14

    2. The evidence cannot support a finding that the SSO of Android's English-language documentation was copied from the Java API specifications...............................................................................................17

GOOGLE'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF SECOND COPYRIGHT JMOL
Case No. 3:10-cv-03561 WHA

660843.01

G.    Google is entitled to judgment as a matter of law on Oracle's claims based on alleged literal copying, because Oracle failed to prove that either of the two copyright registrations on which it relies provides protection for the individual files on which the literal copying claims are based. ............................18

H.    If the Court accepts Oracle's now-withdrawn "collective work" argument, Google is entitled to judgment as a matter of law of non-infringement of each of the component parts of the registered works, because Oracle has not proved authorship of the constituent elements. .................................................18

I.     Google is entitled to judgment as a matter of law on the entirety of Oracle's copyright count, because Oracle's copyright claims are barred by the equitable doctrines of laches, equitable estoppel, waiver and implied license. ...................................................................................................................19

IV.    CONCLUSIONS...............................................................................................................19

GOOGLE'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF SECOND COPYRIGHT JMOL
Case No. 3:10-cv-03561 WHA

660843.01

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Academic Games League of Am., Inc.*
   89 F.3d 614 (9th Cir. 1996) ........................................................................... 16

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ....................................................................................... 2

*Apple Computer, Inc. v. Microsoft Corp.*
   35 F.3d 1435 (9th Cir. 1994) ......................................................................... 6

*Baker v. Selden*
   101 U.S. 99 (1879) ...................................................................................... 7, 8

*Computer Assoc. Int'l, Inc. v. Altai, Inc.*
   982 F.2d 693 (2d Cir. 1992) ........................................................................... 9

*Data East USA, Inc. v. Epyx, Inc.*
   862 F.2d 204 (9th Cir. 1988) ......................................................................... 2

*Feist Pubs., Inc. v. Rural Tele. Serv. Co.*
   499 U.S. 340 (1991) ..................................................................................... 16

*Incredible Techs., Inc. v. Virtual Techs., Inc.*
   400 F.3d 1007 (7th Cir. 2005) ..................................................................... 16

*Johnson v. Gordon*
   409 F.3d 12 (1st Cir. 2005) .......................................................................... 16

*Kodadek v. MTV Networks, Inc.*
   152 F.3d 1209 (9th Cir. 1998) ....................................................................... 2

*Lakeside-Scott v. Multnomah County*
   556 F. 3d 797 (9th Cir. 2005) ...................................................................... 14

*Mazer v. Stein*
   347 U.S. 201 (1954) ....................................................................................... 8

*MiTek Holdings, Inc. v. ArcE Eng'g Co.*
   89 F.3d 1548 (11th Cir. 1996) ..................................................................... 10

*Newton v. Diamond*
   388 F.3d 1189 (9th Cir. 2004) ........................................................... 9, 12, 13

*Sega Enters. Ltd. v. Accolade, Inc.*
   977 F.2d 1510 (9th Cir. 1992) ..................................................................... 8, 9

*Seiler v. Lucasfilm, Ltd.*
   808 F.2d 1316 (9th Cir. 1986) ....................................................................... 2

660843.01

*Weisgram v. Marley Co.*
    528 U.S. 440 (2000) ..................................................................................................... 2

*Willis v. Marion County Auditor's Office*
    118 F.3d 542 (7th Cir. 1997) ...................................................................................... 15

**Federal Statutes**

17 U.S.C. § 101 ............................................................................................................ 7

17 U.S.C. § 102 .......................................................................................................... 16

17 U.S.C. § 102(b) .............................................................................................. 7, 9, 10

17 U.S.C. § 103(b) ................................................................................................. 6, 18

**Federal Rules**

Fed. R. Civ. P. 50 ............................................................................................... 1, 2, 18

**Federal Regulations**

37 C.F.R. § 202.1(a) ..................................................................................................... 8

**Other Authorities**

4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.01[A] ........................ 6

GOOGLE'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF SECOND COPYRIGHT JMOL
Case No. 3:10-cv-03561 WHA

660843.01

1

## I.   INTRODUCTION

2

It is time to put Oracle's copyright claims to rest.

3

The structure, sequence and organization ("SSO") of the API packages at issue is not

4

copyrightable, because the SSO is an unprotectable idea, system or method of operation, and

5

because any arguable expression in the SSO is unprotectable under the doctrines of merger and

6

*scenes a faire.*  The grounds for these conclusions will be given in full in Google's Proposed

7

Findings of Fact and Conclusions of Law, and have been stated in Google's prior briefs on

8

copyrightability.  *See* Dkts. 260, 368, 562, 601, 778, 823, 831, 852, 860, 897, 898, 955, 993.

9

In addition, Oracle's copyright count fails in its entirety because Oracle has not proven the

10

contents of the two works at issue that Sun registered with the Copyright Office, versions 1.4 and

11

5.0 of Java 2 Standard Edition ("J2SE").  Oracle offered various discs into evidence that

12

purportedly contain copies of versions 1.4 and 5.0 of J2SE.  It also offered evidence that shows

13

that a disc might have been submitted to the Copyright Office along with its application for

14

registration of version 5.0.  And it offered Dr. Reinhold's testimony that the source code excerpts

15

submitted with the applications come from versions 1.4 and 5.0 of J2SE.  But there have been

16

*multiple releases* of each version of J2SE, and Oracle has not offered evidence from which a

17

reasonable jury could find that any of the code that is in evidence is a complete copy of the

18

*actual, specific* releases of versions 1.4 and 5.0 that were registered with the Copyright Office.

19

This basic failure of proof—and the evidence in the record that contradicts Oracle's assertion that

20

the correct entire works are in the record—prevents Oracle from obtaining any judgment of

21

copyright infringement.

22

In addition, Google is entitled to judgment as a matter of law on Oracle's claim that

23

Android's implementing code is a derivative work of Oracle's 37 API packages, its copyright

24

claims based on the names and declarations in those packages, its literal copying claims, and its

25

copyright claims based on the specifications (i.e., the documentation) in the 37 API packages.

26

For these reasons, Google is entitled to judgment as a matter of law pursuant to Rule 50 of

27

the Federal Rules of Civil Procedure on the entirety of Count VIII of the Amended Complaint.

28

GOOGLE'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF SECOND COPYRIGHT JMOL
Case No. 3:10-cv-03561 WHA

660843.01

## II.     LEGAL STANDARD

Judgment as a matter of law is proper when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1).  Rule 50 "allows the trial court to remove . . . issues from the jury's consideration when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.,* 528 U.S. 440, 448 (2000) (internal quotations omitted).  The standard for granting judgment as a matter of law, in practice, mirrors the standard for granting summary judgment, and "the inquiry under each is the same." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986).

## III.    ARGUMENT

### A.     The SSO of the 37 API packages is not copyrightable, and Google is entitled to judgment as a matter of law on the entirety of Oracle's copyright count.

The Court should adopt Google's proposed findings of fact and conclusions of law regarding the uncopyrightability of the SSO, which Google will be filing tomorrow.  For those reasons, as well as the reasons stated in Google's prior briefs, Google is entitled to judgment as a matter of law that the SSO of the J2SE API packages at issue is not copyrightable. *See* Dkts. 260, 368, 562, 601, 778, 823, 831, 852, 860, 897, 898, 955, 993.

Google is also entitled to judgment as a matter of law on the remainder of Oracle's copyright count—directed to the specifications and the alleged literal copying—for the reasons given below.  Google therefore is entitled to judgment as a matter of law on the entirety of Count VIII of Oracle's Amended Complaint.

### B.     Oracle failed to prove the actual contents of the works that are the subject of its registrations or that the copyrights cover any component parts of the works.

#### 1.     Oracle has not proved the contents of the works that were registered with the Copyright Office.

It is a fundamental requirement of a copyright claim that a plaintiff introduce into evidence a complete copy of the work on which it suing. *See, e.g., Data East USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 207 (9th Cir. 1988); *see also Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209 (9th Cir. 1998); *Seiler v. Lucasfilm, Ltd.,* 808 F.2d 1316 (9th Cir. 1986).  This requirement is

2

especially important in a case such as this, where a complete copy of the work in which the copyright is registered cannot be obtained from the Copyright Office.  It was up to Oracle to prove at trial what the works consist of and which parts of the complete works it owns.

Oracle has not offered proof sufficient to support a jury verdict regarding the actual contents of the works that are the subject of its copyright registrations.  More specifically, there is no evidence that either trial exhibit 610.2 or 623, the exhibits that Dr. Reinhold sponsored and identified as "a DVD containing an electronic copy of the Java 5—the JDK documentation," including "the API specification for Java 5" (TX 610.2), and a DVD containing "the source code for Version 5" (TX 623), *see* RT 672:16-19, 691:14, [1] is in fact a true, complete and accurate copy of ***J2SE version 5.0 as it was when Sun's application was submitted to the Copyright Office in December 2004***.

Dr. Reinhold's testimony that the DVDs in evidence (TX 622, 623) are source code for versions 1.4 and 5.0 of J2SE (RT 691:6-14) does not cure this evidentiary gap, because the testimony fails to establish that the DVDs in evidence are in fact the *specific releases* of these versions of J2SE that are covered by the registrations.  *See* RT 2236:9-2237:13 (Reinhold) (admitting that there were multiple releases of version 5.0 of Java 2 Standard Edition).  Nor could Dr. Reinhold testify that trial exhibit 1076, another disc he identified as containing a version 5.0 of J2SE, contained the particular release of version 5.0 of J2SE that actually was registered with the Copyright Office.  *See* RT 2235:10-2238:18.  Finally, Dr. Reinhold carefully identified the disc marked as TX 1076 as one that contained "the *binary distribution* of J2SE 5.0, together with documentation and some tools and things like that."  RT 2235:11-13 (emphasis added).  A "binary distribution," however, is compiled code—bytecode, not source code.  Yet the fifty pages of redacted deposit materials that accompanied the copyright application for J2SE version 5.0 was *source code* (TX 3530), and Oracle's entire infringement case (except for the eight allegedly copied "Impl"/"ACL" test files) was based on analysis of and allegations of copying of *source*

---

[1] Dr. Reinhold first testified that trial exhibit 623 contained the source code for version 1.4 (RT 689:22-24).  After being told by counsel for Oracle that exhibit "623 is the java.nio" (RT 691:13), Dr. Reinhold changed his testimony, stating that exhibit 623 is "the source code for Version 5." RT 691:14.

*code.*[2]  There is plainly a disconnect between the work that Oracle now says is the work and what the evidence shows.[3]

The disconnect is most troubling, moreover, because—to the best of Google's knowledge after review and analysis of the disc introduced into evidence—the disc that Oracle now says is the "complete work*" does not* contain the source code that was redacted to create the deposit materials filed with the Copyright Office.  While the disc does contain some of the 37 accused API packages in source code format, it does not contain them all; at least six of the 37 packages are on the disc only in compiled code—rather than source code—format.  So the disc does not contain all of the 37 packages at issue in any form that is human-readable.  Surprisingly, ***the disc also does not contain source code files that contain the source code pages that were redacted and submitted to the Copyright Office.***[4]  Finally, the disc also does not contain *any* version, in either source or complied code form, of at least one of the eight "test" files on which Oracle bases its claim of "direct line-by-line copying," namely the "AclEnumerator" file.  Nor does the disc contain a source code version of the "PolicyNodeImpl" file.[5]

---

[2] As a matter of common sense, it was incumbent on Oracle to introduce into evidence the works in some format that is readable by humans; otherwise, there would be no practical way for Oracle to prove its code-based claims or for Google, the Court or the jury to assess them.  This is the reason why Oracle's proof at trial was based on source code—readable by humans—and not compiled code, and why all of the code exhibits the parties showed to the jury consisted of source code rather than compiled code.

[3] The testimony of Tiki Dare does not address this failure of proof, because Ms. Dare could not testify that trial exhibit 1076 is the same as the disc that Oracle believes may have been submitted to the Copyright Office or, indeed, whether *any* disc was in fact submitted to the Copyright Office.  *See* RT 2261:2-10, 2264:4-13.  Oracle did not need to prove that any of the discs in evidence are the same as any disc that was or was not submitted to the Copyright Office in 2004 or 2005, moreover, since the discs were not required by the Copyright Office regulations and the one disc that the Copyright Office apparently received (for version 1.4) was not even examined. *See* TX 3530 at 1.  Oracle only needed to prove that *some* disc that is in evidence in fact contains the complete work as it existed at the time the registration was sought.  Oracle failed to do so.

[4] The source code that was redacted and submitted to the Copyright Office appears to be taken from at least 38 different source code files.  *See* TX 3529.  As far as Google has been able to determine, there are ***no*** source code files in TX 1076—which Oracle now says is the "complete work"—that contain ***any*** of the pages submitted to the Copyright Office.  If the disc does not contain the files from which the source code deposit was excerpted, the disc cannot be the complete work that was registered.

[5] The trial exhibit that Oracle presumably relies on to prove the contents of the "AclEnumerator" file (TX 896.8)—like the corresponding exhibits for ***all eight*** of the "copied" test files (TX 896.1-896.8, 897)—bears a legend indicating that the source code in that exhibit comes from release "5.0u22," which would be the twenty-second release of version 5.0 after its initial release.  *See*

4

1    Oracle, in short, did not prove that *any* exhibit in evidence is the actual "work" that is the

2    subject of the registrations for either version 1.4 or 5.0 of J2SE.  Instead, the evidence

3    demonstrates that there is no complete copy of the works at issue in the record.  Neither the Court

4    nor Google should at this point be forced to speculate what the complete works are—that is a

5    fundamental, basic element of Oracle's proof.  Without evidence proving the actual contents of

6    the complete works it registered— the contents of the actual works registered, not of releases that

7    may bear the same version number but are not the same —Oracle cannot prevail on its copyright

8    count.  Google is therefore entitled to judgment as a matter of law on the entirety of Count VIII of

9    the Amended Complaint.

### 2.    Oracle has not proved that its copyright registrations cover the individual components of the works on which it bases its claims of infringement.

12    Even if Oracle had proven the contents of the complete works, it failed to prove that the

13    copyrights cover individual components of the works standing alone.[6]  As a result, its rights in

14    the works it registered are limited to the specific *combination* of the individual elements that

15    make up those specific versions, and any *individual* components of the work to which Oracle

16    proved it owns the copyrights.  Oracle made no such showing.

RT 2237:6-13 (Reinhold).  Dr. Reinhold testified that releases "generally" occurred "every few months."  RT 2236:19-20.  Given that the registration states that the first date of publication of version 5.0 was on September 30, 2004 (*see* TX 3529 at 2, space 3b) and that the application was filed less than ninety days later on December 20, 2004 (*see* TX 3529 at 2), Dr. Reinhold's testimony suggests that release 5.0u22 *postdates* the registration application.

Thus, there is no evidence that the "decompiled files" are related to files that are in the work that is the subject of the registration.  Indeed, the materials in TX 897 that come from release 5.0u22 bear **copyright notices with dated as late as 2009**—five years after the copyright registration.  *See* TX 897.  These exhibits, moreover, were stipulated into evidence at Oracle's request.  No witness testified about them, *see* RT 1256:25-1262:1 (Mitchell), and Dr. Reinhold testified that he could not state when the various releases of version 5.0 occurred or whether any release after 5.0 was released before December 20, 2004.  *See* RT 2236:9-2237:13.

[6] Oracle has suggested that Google waived this argument during proceedings outside the presence of the jury when Dr. Reinhold was on the stand.  What counsel for Google said, however, is that Google is "not disputing ownership *of the copyrights*."  RT 713:19-20 (emphasis added).  This was directly in response to a statement by counsel for Oracle that "[t]here is no question that Oracle has the right, as a matter of ownership, to assert *the copyrights* at issue here."  RT 713:16-18 (emphasis added).  And that is correct—Google does not dispute that Oracle owns and can assert the copyrights that it registered, for versions 1.4 and 5.0 of J2SE.  What Google disputes is whether Oracle has proved what is *in* those works, and whether Oracle's copyrights cover *particular parts* of those works.  *See* RT 1884:10-1885:8 (counsel for Google); RT 1887:16-23 (Court).

As the registrations confirm, Oracle's works are derivative works; they include both new material and material from prior works, namely the prior versions of the Java platform.  *See* TX 464 at space 6, TX 475 at space 6 (identifying pre-existing materials and new materials).  The registrations also establish that Sun did not own at least some parts of the works—they identify the "pre-existing" materials as including "licensed-in components."  *Id.*  The registrations and materials submitted to the Copyright Office do not, however, identify whether the "licensed-in components" were new to the versions being registered, also present in earlier versions, or some combination of those two possibilities.

Section 103(b) of the Copyright Act provides:

> (b) ***The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work,*** and does not imply any exclusive right in the preexisting material.  The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

17 U.S.C. § 103(b) (emphasis added).  In order to maintain any claim based on anything less than all of version 1.4 or 5.0 of J2SE taken as a whole, Oracle must at a minimum, as part of its burden of proving that its copyright covers or extends to the matter sued on, establish that it owns any individual component parts on which it is basing a claim.  *See generally Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447-48 (9th Cir. 1994); 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.01[A] (a plaintiff that is not the author of a work must prove "a transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff as the valid copyright claimant").  For purposes of this action, those parts would include (1) the 37 packages that form the basis of Oracle's SSO claim; (2) the files that contain the English-language comments on which Oracle bases its "specifications" claim; and (3) the individual files that contain all of the code and comments that were allegedly copied literally.

These principles are best illustrated by a simple example.  Oracle claims that the eight test files that appear in Android were "copied" from its work.  In order to sustain a claim that asks the Court to treat each individual file as the "work as a whole" for purposes of Oracle's allegations,

6

1   Oracle must have proven that (1) each file is in fact a part of the version of the work on which it

2   is suing; and (2) Oracle owns all rights to each file as a standalone work.  Oracle proved neither

3   one.

4            **C.      Google is entitled to judgment as a matter of law that the source code and
                 object code implementing the 37 API packages are not derivative works of
5                Oracle's specifications.**

6            Oracle claims that Google's *implementing source code* is a derivative work *of Oracle's*

7   *English-language descriptions* because Google's source code *does the things that the English*

8   *descriptions describe.  See* Dkt. No. 859 at 10 (Oracle is claiming infringement based on

9   "Google's creation of derivative works from the English-language descriptions of the elements in

10  the API specifications").  That is nothing but an assertion that *Google's expression* infringes

11  *Oracle's ideas.*  Oracle thus stands as an exception to the Supreme Court's statement that "no one

12  would contend that the copyright of the treatise would give the exclusive right to the art or

13  manufacture described therein."  *Baker v. Selden,* 101 U.S. 99, 102 (1879).

14           Because Oracle's position is barred by section 102(b) of the Copyright Act, Google is

15  entitled to judgment as a matter of law that the source code and object code implementing the 37

16  API packages are not derivative works of Oracle's specifications.  *See* 17 U.S.C. § 102(b).  This

17  issue raises a question of law that does not depend on any disputed issues of fact.

18           Oracle's derivative work claim is a "classic case of trying to lay claim to the ownership of

19  an idea."  RT 1869:15-16 (Court).  The specifications "explain in detail what the module is

20  supposed to accomplish," and writing implementing code that *does* what the specifications

21  *explain* is like "creative writing."  RT 1869:18-21 (Court); *see also* RT 1368:25-1369:1 (Court)

22  (Oracle's derivative work argument "just seems to me to be invalid under the basic tenets of

23  copyright law"); RT 1375:22-24 (Court) (Oracle's derivative work claim doesn't "add[] anything,

24  except violating the principle of you can't get a monopoly and ownership over an idea"); RT

25  2434:13-2435:16 (Court) (rejecting Oracle's derivative work theory).

26           Oracle's derivative work claim is contrary to the idea/expression dichotomy that is

27  codified in section 102(b) of the Copyright Act.  It also is contrary to the statutory definition of a

28  derivative work, which is a work based on "one or more preexisting works," 17 U.S.C. § 101, not

                                                    7

1   a work based on preexisting *ideas*.

2     Oracle's approach is barred by *Baker v. Selden*:

3      To give to the author of the book an exclusive property in the art described therein,
    when no examination of its novelty has ever been officially made, would be a
4      surprise and a fraud upon the public.  That is the province of letters-patent, not of
    copyright.  The claim to an invention or discovery of an art or manufacture must
5      be subjected to the examination of the Patent Office before an exclusive right
    therein can be obtained; and it can only be secured by a patent from the
6      government.

7   101 U.S. at 102.  It is also barred by *Mazer v. Stein*:  "Unlike a patent, a copyright gives no

8   exclusive right to the art disclosed; protection is given only to the expression of the idea—not the

9   idea itself."  347 U.S. 201, 217 (1954).  And it is barred by *Sega Enters. Ltd. v. Accolade, Inc.*,

10  under which "functional requirements for compatibility" with a system described by or

11  implemented in a copyrighted work cannot be protected by copyright law.  977 F.2d 1510, 1522

12  (9th Cir. 1992).

13     **D.**  **Google is entitled to judgment as a matter of law that the names and
    declarations from the 37 API packages that appear in the Android source
14        code are not copyrightable.**

15    The Court has already held that the names of API elements are not protectable.  Copyright

16  MSJ Order [Dkt. 433] at 7:24-8:4.  The Court reached this holding based on the "words and short

17  phrases" doctrine.  *See id.;* 37 C.F.R. § 202.1(a).

18    For the same reason, the declarations (i.e., the method signatures)[7] in the 37 API packages

19  are not protectable.  A declaration (e.g., "public static int max(int arg1, int arg2)"[8]) is a short

20  series of words—a short phrase.  A short phrase is not protectable, just as a name cannot be

21  protected.  37 C.F.R. § 202.1(a); *see also* Copyright MSJ Order [Dkt. 433] at 7:24-8:4.  Indeed, in

22  *Sega*, the Ninth Circuit held that computer code of a similar length was "probably unprotected

23  under the words and short phrases doctrine."  977 F.2d at 1524 n.7.

24    Moreover, the declarations are purely functional, and *must* remain exactly the same in

25  order to ensure compatibility with Java language programs calling on the methods in those 37

26  API packages.  Because computers are very literal, "[i]f you get anything even a little bit wrong,

27    ―――――――――――――
    [7] RT 796:2-25 (Bloch) (explaining what a method signature, or declaration, is).
28  [8] RT 796:19:21 (Bloch).

660843.01

1    if you type a capital letter when the method name has lower case letter in Java your program

2    won't run." RT 765:6-8 (Bloch).  In contrast, as Oracle's expert Professor Mitchell conceded, if

3    you implement an API consistent with its specification—i.e., so that "it uses the same API"—

4    "you would expect the same outcome."  RT 2293:5-8.

5         Thus, code written that uses methods from the 37 packages is "compatible" with both the

6    Android and J2SE platforms.  *See* RT 2293:9-14 (Mitchell) (agreeing that this is "a great

7    definition of 'compatible'); *see also* RT 2185:5-9 (Astrachan) (structure of the elements of the

8    API packages have to be the same "so that the code will work on both platforms, be compatible,

9    inter-operate").  If Google had instead created its own APIs that were different than the APIs in

10   the 37 API packages, developers would have had to be re-educated to use the new APIs.  *See* RT

11   520:3-6 (Screven).  Because Google implemented the Java language APIs for the 37 API

12   packages, the Android and J2SE platforms are compatible with respect to those 37 API packages.

13   RT 2171:19-2172:11 (Astrachan); *see also* RT 2287:23-2288:5 (Mitchell) (J2SE core libraries

14   and Android core libraries are incompatible "beyond the 37 packages," but for the 37 packages

15   they "overlap").  Because the names and declarations in the 37 API packages are functional

16   requirements for compatibility, those names and declarations are not protected by copyright.

17   *Sega,* 977 F.2d at 1522 (citing 17 U.S.C. § 102(b)).

18        In sum, the names and declarations from the 37 API packages are unprotectable both by

19   virtue of the words and short phrases doctrine, and section 102(b) of the Copyright Act.  Thus,

20   Google is entitled to judgment as a matter of law that its use of the names and declarations from

21   the 37 API packages is not copyright infringement.

22        **E.      The alleged literal copying is *de minimis* and thus non-actionable.**

23        *De minimis* acts of copying are not actionable.  *Newton v. Diamond,* 388 F.3d 1189, 1192-

24   93 (9th Cir. 2004).  Where the only similarity is as to "nonessential matters," the copying is *de*

25   *minimis.  See id.* at 1195 (quoting 4 NIMMER ON COPYRIGHT § 13.03[A][2]).  Where a defendant

26   copies only "a portion of the plaintiff's work exactly or nearly exactly . . . the dispositive question

27   is whether the copying goes to trivial or substantial elements."  *Id.*  That substantiality is judged

28   by "considering the qualitative and quantitative significance of the copied portion in relation to

1    the plaintiff's work as a whole."  *Id.* (emphasis added); *see also Computer Assoc. Int'l, Inc. v.*

2    *Altai, Inc.,* 982 F.2d 693, 714‑15 (2d Cir. 1992).  Oracle bears the burden of proving the

3    significance of any copied code.  *MiTek Holdings, Inc. v. ArcE Eng'g Co.,* 89 F.3d 1548, 1560

4    (11th Cir. 1996) ("The burden is on the copyright owner to demonstrate the significance of the

5    copied features, and, in this case, MiTek has failed to meet that burden.").

6          Oracle hired Dr. Marc Visnick to compare the code in the Java JDK to Android 2.2.  RT

7    1309:8-1310:18 (Mitchell).  This entailed a comparison of hundreds of thousands, or even

8    millions, of lines of code as well as "thousands and thousands" of separate files.  RT 1310:19-

9    1311:1 (Mitchell).  Despite this "very extensive" search, RT 1310:24-1311:1, Dr. Visnick only

10   identified 12 files that allegedly contained copied code.  *See* RT 1313:1-11 (Mitchell).  These

11   files consist of a nine-line function called rangeCheck, two comment files that never appeared on

12   a phone, and ten test files that never appeared on a phone.  *See* RT 1314:2-1320:6 (Mitchell).

### 1.    Oracle failed to prove that Google's use of the rangeCheck method is more than *de minimis*.

15        The evidence cannot support a finding that the nine-line rangeCheck method is

16   *qualitatively* significant.  RT 813:7-8 (Bloch) (rangeCheck is a "very short simple method); RT

17   815:5-9 (Bloch) (rangeCheck "simply makes these three checks"); RT 815:13-16 (Bloch)

18   (rangeCheck is a "[v]ery, very simple" method that "[a]ny competent high school programmer

19   could write").  Even Oracle's expert Dr. Mitchell conceded that "a good high school

20   programmer" could write rangeCheck.  RT 1316:24-25.  In fact, the rangeCheck method is not

21   even a part of the most recent and current versions of Android.  *See* RT 825:8-19 (Bloch).  When

22   asked whether the rangeCheck method has any economic significance outside of the library it is a

23   part of, Dr. Mitchell stated that he was "not sure" it had any such significance.  RT 1316:12-18.

24        Even within the library, Dr. Mitchell did not opine that it was *significant,* only that it was

25   "useful."  *Id.*  The purported subtlety to the code, according to Dr. Mitchell, "is figuring out

26   exactly what you wanted the function to do, more than realizing that function in Java code once

27   that's understood."  RT 1317:3-5.  That, however, confirms that while the *idea underlying* the

28   code might have some importance, the *code itself* is not qualitatively significant.  The idea, of

10

660843.01

1   course, is not copyrightable.  17 U.S.C. § 102(b).

2          Dr. Mitchell also testified that the rangeCheck method is purportedly called over 2,600

3   times when an Android emulator is started up.  *See* RT 1329:15-21.  But he offered no testimony

4   that would allow a reasonable jury to conclude that a method called that many times is

5   qualitatively significant.  He offered no testimony, for example, whether there are other methods

6   that are called tens of thousands of times, hundreds of thousands of times, or even millions of

7   times during startup.  Nor did he offer any testimony about the qualitative significance of the calls

8   to rangeCheck.  Mere frequency of use of a trivial element cannot support a finding of qualitative

9   significance.  A typical novel might include the word "the" thousands of times, but that does not

10  render the word "the" qualitatively significant to *Moby Dick*.  During a business meeting,

11  attendees might blink their eyes hundreds or thousands of times, but that does not mean the act of

12  blinking was qualitatively significant.  Professor Mitchell's testimony about how many times

13  rangeCheck is purportedly called during the startup of an Android emulator, standing alone and

14  without any frame of reference, cannot support a finding of qualitative significance.

15         The evidence also cannot support a finding that the nine-line rangeCheck method is

16  *quantitatively* significant.  The rangeCheck method is only nine lines long—thirteen lines, if four

17  lines of comments are included.  TX 623 at 25 (lines 1314-26).  The Arrays.java file in J2SE that

18  includes this method is 3,179 lines long.  TX 623 at 61 (final line number in file is 3,179).  Thus,

19  even assuming Oracle's "work as a whole" is just the Arrays.java file,[9] the method is less than

20  three-tenths of one percent of the work as a whole.

21         Because Oracle has not proven that the rangeCheck method is qualitatively or

22  quantitatively significant, its use is at most *de minimis,* and therefore not actionable.

23                 **2.      Oracle failed to prove that the use of the allegedly copied comments in
24                          CodeSourceTest.java and CollectionCertStoreParametersTest.java is
                            more than *de minimis*.**

25         The evidence cannot support a finding that the allegedly copied comments in

26  CodeSourceTest.java and CollectionCertStoreParametersTest.java are qualitatively significant.

27  _____
    [9] Google continues to assert that the works as a whole should, for all purposes, be the entire
28  platforms registered by Sun.  *See, e.g.,* Dkt. 993.

GOOGLE'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF SECOND COPYRIGHT JMOL
Case No. 3:10-cv-03561 WHA

660843.01

Because they are comments, they have absolutely no effect on any compiled code.  *See* RT 1317:6-14 (Mitchell).  All that Dr. Mitchell was able to say is that "comments are for other programmers or users of the code."  RT 1317:24-25.  But whether comments *generally* can offer guidance to programmer fails to address whether *these* comments offer *qualitatively significant* guidance to programmers.  There is no evidence of the purported qualitative significance of these comments.

The evidence also cannot support a finding that the comments are *quantitatively* significant.  The comments at issue are less than three percent of one file, and only one quarter of the other.  *See* TX 623.9, 623.10.

The ultimate test is that alleged copying is *de minimis* "if the average audience would not recognize the appropriation." *Newton,* 388 F.3d at 1193.  Here, there is *no evidence* that anyone even noticed the alleged copying until an extensive forensic analysis was performed, using specialized computer tools.  *See* RT 1309:8-1313:11 (Mitchell) (testifying about Dr. Visnick's forensic analysis).  On this record, no reasonable jury could find that the average audience would recognize the alleged appropriation in these files.

Finally, Google again notes that, as it has addressed in its prior briefs, the proper "work as a whole" is the entire registered work, or at least that there is no evidence supporting using the individual files as the works as a whole.  Because the work as a whole should be larger than the individual files, the allegedly copied comments are even more quantitatively insignificant.

Because Oracle has not proven that the allegedly copied comments are qualitatively or quantitatively significant, Google's use of them is at most *de minimis,* and thus not actionable.

### 3.    Oracle failed to prove that the use of the eight "Impl" and "ACL" files is more than *de minimis.*

Oracle failed to prove that there was *any* copying (let alone copying of more than a *de minimis* amount) from Oracle's works as a whole for these eight files, even assuming that the individual Oracle files are the proper works as a whole for this analysis.  Oracle offered into evidence the *source code* for *seven* Oracle "Impl" files.  *See* TX 623.2-623.8.[10]  Oracle does not

---

[10] Oracle did not introduce into evidence the source code for any file named "AclEnumerator.java," only what appears be a decompiled file named "AclEnumerator.jad."

claim, however, that Google copied anything from these *source code* files.  Instead, Oracle argues that Google copied from *object code* using a *decompiler.*  *See* RT 1257:3-1258:6 (Mitchell).  Dr. Mitchell testified that the source code in the eight Android "Impl" and "ACL" files is similar to the *decompiled versions* of certain Oracle object code files.  *See* RT 1259:16-1260:18.  Dr. Mitchell did not testify, however, that the object code files he examined are the compiled versions of the *source code files* in evidence as trial exhibits 623.2-623.8.  *See id.*

Oracle also moved into evidence by stipulation what appear to be decompiled versions of the eight "Impl" and "ACL" files, with filenames ending in ".jad".  *See* RT 1153:8-13; TX 896.1-896.8.  There was, however, *no testimony* explaining what these files are.  Moreover, Dr. Mitchell *did not identify the names of the allegedly copied Oracle files that he purportedly examined.  See* RT 1259:16-1260:18.  In fact, Dr. Mitchell did not even testify that the unnamed Oracle files he examined were part of either of the registered works at issue in this case.  *See* RT 1259:16-1260:18.  Because of this failure of proof, Oracle has not established that the eight Android "Impl" and "ACL" files involved more than *de minimis* copying from any files that are part of either of the registered works at issue in this case or are owned by Oracle.

Moreover, as with the comments, there is *no evidence* that anyone noticed the alleged copying in the eight "Impl" and "ACL" files until an extensive forensic analysis was performed, using specialized computer tools.  *See* RT 1309:8-1313:11 (Mitchell) (testifying about Dr. Visnick's forensic analysis).  Thus, there is no evidence that the average audience would recognize the alleged appropriation.  *See Newton,* 388 F.3d at 1193.  Oracle therefore as not proven that the alleged copying was more than *de minimis.*

Furthermore, Oracle offered no evidence that the code in these files is qualitatively significant.  Dr. Mitchell testified that the code has some connection to access control lists, which relate to security.  *See* RT 1329:22-1330:5.  He did not, however, explain what the code does, or why it is *qualitatively significant.*  Moreover, Dr. Mitchell testified that he had no reason to believe that these files were ever placed on a handset.  *See* RT 1319:15-20.  There is no other

---

There is no evidence in the record that this eighth allegedly copied file, "AclEnumerator.java," is part of either of the two registered works at issue in this case.  *See* n.5, *supra.*

660843.01

evidence in the record suggesting that these files were ever placed on a handset.  There is also no evidence in the record that these files had any significance at all to the functioning of either J2SE or Android.[11]

Finally, properly compared to the proper works as a whole, as addressed by Google's prior briefs, the code in these eight files is quantitatively insignificant whether considered individually or collectively.

### F.   Google is entitled to judgment as a matter of law that its specifications for the 37 API packages do not infringe Oracle's copyrights.

Oracle alleges that Google's specifications (i.e., the documentation) for the 37 accused API packages infringe Oracle's copyrights.  Specifically, Oracle alleges that (a) the substance of Android's English-language documentation infringes; and (b) the SSO of that documentation also infringes.  The Court should grant judgment as a matter of law as to the first allegation because the evidence cannot support a finding that the contents of the documentation describing the 37 accused API packages in Android was copied from the J2SE documentation.  The Court should also dismiss the second allegation because it simply collapses into Oracle's claim that Google copied the SSO of the 37 accused API packages; the documentation is generated by an automated program, such that the SSO of the documentation is a natural derivative of the SSO of the API packages it represents.  *See* RT 1169:3-4 (Lee).  Moreover, the second allegation is barred because, for the reasons stated in Google's proposed findings of fact and conclusions of law, the SSO of the 37 accused API packages is not copyrightable.

### 1.   The evidence cannot support a finding that Android's English-language documentation was copied from the Java API specifications.

Oracle presented evidence of precisely three examples of alleged substantial similarity between Google's and Oracle's specifications for the 37 API packages.  A "mere scintilla" of

---

[11] Dr. Mitchell did testify that *test files generally* are an important part of software development. RT 1330:15-24.  However he never testified as to how many test files there are in J2SE or Android, or to the role played by *these particular* test files.  The best Dr. Mitchell could do was to state that "*if* [these files] helped [Google] test other code they were developing, and speed up and lessen the cost of testing and quality assurance, then that would have a big value to [Google]." RT 1331:3-5 (emphasis added).  There is no evidence in the record that these eight files, out of the tens of thousands of files in both Android and J2SE, were anything other than trivial and insignificant.

1    evidence is insufficient to support a jury verdict. *See Lakeside-Scott v. Multnomah County,* 556

2    F.3d 797, 802 (9th Cir. 2005) (quoting *Willis v. Marion County Auditor's Office,* 118 F.3d 542,

3    545 (7th Cir. 1997)).  Oracle's three examples—out of over 11,000 pages of specifications (RT

4    617:2-7 (Reinhold))[12]—cannot support a jury verdict.

5          In its first example, Oracle focused on the descriptions in the J2SE and Android

6    specifications for the CipherInputStream class in the javax.crypto package.  Counsel for Oracle

7    asked Bob Lee to compare the following portions of the descriptions of CipherInputStream in the

8    J2SE 5.0 and Android specifications:

| **J2SE 5.0** | **Android** |
|---|---|
| A CipherInputStream is composed of an InputStream and a Cipher so that read() methods return data that are read in from the underlying InputStream but have been additionally processed by the Cipher. The Cipher must be fully initialized before being used by a CipherInputStream. | This class wraps an InputStream and a cipher so that read() methods return data that are read from the underlying InputStream and processed by the cipher.<br><br>The cipher must be initialized for the requested operation before being used by a CipherInputStream. |

15   *Compare* TX 610.2 *with* TX 767; *see also* RT 1169:25-1170:19 (Lee).  These are sufficiently

16   different that no reasonable jury could find that they are virtually identical.  Oracle's second and

17   third examples are no better.  *See* RT 1171:3-1172:25 (Lee) (comparing descriptions in the

18   Android and J2SE specifications for the Cipher class in the javax.crypto package); RT 1174:17-

19   1175:9 (Lee) (comparing descriptions in the Android and J2SE specifications for the Pipe class in

20   the java.nio.channels package).

21         As Mr. Lee explained, any similarities between the specifications are to be expected,

22   given that the thing being described *is the same* in both specifications:

23   Q.      Highly similar?  Not so similar?  What's your judgment?

24   A.      In this case they contain the same words, certainly, but that's to be
25   expected when you're trying to—you're describing various specific concepts in as
     few words as possible.  You're trying to provide, like, a very concise explanation.

26

---
27   [12] The 11,000 page figure is the length of the specifications for just the 37 API packages.  The
     specifications for all 166 API packages of the J2SE 5.0 platform presumably are several-fold
28   longer, and the size of the J2SE 5.0 platform *as a whole* is larger still.

660843.01

1   Like, for example, the first sentence.  What is a pipe, in one sentence.
Certainly, if you're trying to do it in that few words, they are going to contain
2   similar words because these are kind of, I guess, the common language or
currency of these APIs and simply the technology.
3
Like, "pipe" isn't even actually a—it's not necessarily a Java term.  It
4   predates Java.

5   Q.   So you would—

6   A.   Like, it's a common technical term.

7   RT 1175:10-24 (Lee).  On these facts, any protection in the descriptions in the J2SE 5.0

8   specifications is, at best, thin, and protected only against virtually identical copying.  *See Allen v.*

9   *Academic Games League of Am., Inc.,* 89 F.3d 614, 618 (9th Cir. 1996) (applying merger doctrine

10   to deny protection to written expression of game rules); *Incredible Techs., Inc. v. Virtual Techs.,*

11   *Inc.,* 400 F.3d 1007, 1013 (7th Cir. 2005) ("utilitarian explanations" of a system "are not

12   sufficiently original or creative to merit copyright protection," or alternatively are protected "only

13   against virtually identical copying").[13]  And no reasonable jury could find that the Android and

14   J2SE specifications are virtually identical.

15   Professor Mitchell's testimony does not help Oracle's case because he did not apply the

16   correct standard.  When asked whether the description "Returns a reference to the private key

17   component of this key pair" (J2SE) is substantially similar to the description "Returns the private

18   key" (Android), Professor Mitchell testified, "I think if you were considering using this method,

19   both would *tell you the same information,* that you can use this method to get the private key

20   component of the key pair."  RT 1327:14-24, 1328:2-4 (emphasis added).  When asked again, he

21   testified, "I think in the context of the rest of the description they *mean the same thing*."  RT

22   1328:9-10 (emphasis added).  When asked a *third* time whether the descriptions are substantially

23   similar, and directed by the Court to answer "yes" or "no," Professor Mitchell responded, "Yes."

24   RT 1328:24.  The only reasonable conclusion that a jury can draw from this series of responses is

25   that Professor Mitchell is basing his conclusion of substantial similarity on the fact that both

26   ───────────────────────
[13] *See also Johnson v. Gordon,* 409 F.3d 12, 19 (1st Cir. 2005) ("copyright law protects original
27   expressions of ideas but it does not safeguard either the ideas themselves *or banal expressions of
them*" (emphasis added)  (citing  *Feist Pubs., Inc. v. Rural Tele. Serv. Co.,* 499 U.S. 340, 345-51
28   (1991)).

660843.01

descriptions express the same *idea*.  That, however, is not infringement.  *See* 17 U.S.C. § 102.

Moreover, as the Court has held, the test for infringement for the documentation is "virtual

identity."  Because Professor Mitchell did not opine that the documentation for Android and J2SE

are virtually identical, it cannot support a jury verdict.  Professor Mitchell's opinion about alleged

substantial similarity between the Android and J2SE specifications must therefore be disregarded

entirely.

Given the thin protection for these descriptions, no reasonable jury could conclude that the

Android specifications infringe Oracle's copyrights.

**2.     The evidence cannot support a finding that the SSO of Android's English-language documentation was copied from the Java API specifications.**

Oracle elicited testimony that the SSO of the documentation for the 37 accused API

packages lines up with that of the corresponding Java documentation.  Mr. Lee testified as

follows:

> Q.     And the structure of the documentation is identical; correct, sir?  And if you think of it as an outline, the outline would match identically; correct, sir?
>
> A.     Yes.
>
> Q.     And that's because on the Android side you're documenting the same application programming interfaces as were documented on the Java side; correct, sir?
>
> A.     Yes.

RT 1174:9-16.  But this is no surprise.  As Mr. Lee also testified, the documentation for both

J2SE and Android is created automatically by a tool that reads demarcated portions of the source

code for inclusion in a template.  *See* RT 1168:21-1169:15 (Lee).  In short, the creation of the

documentation is mechanized.  *See* RT 607:18-24, 614:1-4 (Reinhold).  Since the documentation

is based on the same starting point—the names of the methods in the 37 API packages at issue—

the SSO of the Android and J2SE documentation inevitably will be the same.

Given that the documentation is generated automatically, Oracle's allegation that the SSO

of the Android documentation infringes Oracle's copyrights on the J2SE specification collapses

into Oracle's separate, overriding claim that Google's use of the names in the 37 API packages

GOOGLE'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF SECOND COPYRIGHT JMOL
Case No. 3:10-cv-03561 WHA

660843.01

infringes Oracle's copyrights in the SSO of its API packages.  Similarities in the SSO of the documentation are an inevitable byproduct of using the same names in those API packages and their elements; they are not a separate act of infringement.  Put another way, the similarities derive from Google's use of the names in the 37 API packages at issue, not from a separate act of copying any Oracle documentation for those 37 API packages.  Accordingly, Oracle's separate claim that the SSO of the documentation infringes should be dismissed as a matter of law, leaving the actual issue—Google's use of the names in the 37 accused API packages—for the jury to decide.

**G.      Google is entitled to judgment as a matter of law on Oracle's claims based on alleged literal copying, because Oracle failed to prove that either of the two copyright registrations on which it relies provides protection for the individual files on which the literal copying claims are based.**

As noted above in Part III.B.2, Sun's registration of the works as derivative works means that, absent proof that it owns individual components, Oracle's copyright in version 5.0 "extends only to material contributed by [Sun, as] the author of the derivative work."  *See* 17 U.S.C. § 103(b).  Over Google's objection, Oracle convinced the Court to define the "works as a whole" for its literal copying claims as *the individual files* in which the allegedly copied materials (code or comments) appear in version 5.0 of J2SE.  Oracle made no attempt to prove that it owns any of those individual files, let alone when those files and the allegedly copied material were first added to the J2SE platform.  *See* Part III.B.2, *supra.*  Absent such proof, Oracle's claims based on copying of specific files as separate protected works must fail.

**H.      If the Court accepts Oracle's now-withdrawn "collective work" argument, Google is entitled to judgment as a matter of law of non-infringement of each of the component parts of the registered works, because Oracle has not proved authorship of the constituent elements.**

Oracle has now confirmed that it has withdrawn its "collective work" argument.  If Oracle had not done so, and had the Court accepted the "collective work" argument, Google would be entitled to judgment as a matter of law of non-infringement of each of the component parts of the registered works, because Oracle has not proved authorship of the constituent elements, for the reasons set forth in Google's prior Rule 50 motion.  *See* Dkt. 984 at 11-12.

GOOGLE'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF SECOND COPYRIGHT JMOL
Case No. 3:10-cv-03561 WHA

660843.01

**I.     Google is entitled to judgment as a matter of law on the entirety of Oracle's copyright count, because Oracle's copyright claims are barred by the equitable doctrines of laches, equitable estoppel, waiver and implied license.**

The Court should adopt the proposed findings of fact and conclusions of law regarding Google's equitable defenses that Google will be filing tomorrow.  For those reasons, Google is entitled to judgment as a matter of law that Oracle's copyright claims are barred by the equitable doctrines of laches, equitable estoppel, waiver and implied license.

**IV.     CONCLUSIONS**

For the foregoing reasons, Google respectfully requests that the Court grant its motion for judgment as a matter of law on the entirety of Count VIII of Oracle's Amended Complaint.

Dated:  May 1, 2012                              KEKER & VAN NEST LLP


                                                /s/ Robert A. Van Nest
                                        By:       ROBERT A. VAN NEST

                                                Attorneys for Defendant
                                                GOOGLE INC.

660843.01