Volume 11

Pages 2332 - 2449

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

ORACLE AMERICA, INC.,                )
                                     )
            Plaintiff,               )
                                     )
  VS.                                )   No. C 10-3561 WHA
                                     )
GOOGLE, INC.,                        )
                                     )
            Defendant.               )   San Francisco, California
_____)   April 27, 2012


**TRANSCRIPT OF PROCEEDINGS - JURY INSTRUCTION CONFERENCE**

**APPEARANCES**:

**For Plaintiff:**          MORRISON & FOERSTER
                            755 Page Mill Road
                            Palo Alto, California  94304
                    BY:  **MICHAEL A. JACOBS, ESQUIRE**
                         **KENNETH A. KUWAYTI, ESQUIRE**
                         **MARC DAVID PETERS, ESQUIRE**
                         **DANIEL P. MUINO, ESQUIRE**

                            BOIES, SCHILLER & FLEXNER
                            333 Main Street
                            Armonk, New York 10504
                    BY:  **DAVID BOIES, ESQUIRE**
                         **ALANNA RUTHERFORD, ESQUIRE**


(Appearances continued on next page)



*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 Official Reporter - US District Court
                 Computerized Transcription By Eclipse

**APPEARANCES (CONTINUED):**

**For Plaintiff:**          BOIES, SCHILLER & FLEXNER
                           1999 Harrison Street, Suite 900
                           Oakland, California  94612
                   BY:  **WILLIAM FRED NORTON, ESQUIRE**
                        **STEVEN C. HOLTZMAN, ESQUIRE**


                           ORACLE AMERICA, INC.
                           500 Oracle Parkway
                           Redwood Shores, California  94065
                   BY:  **ANDREW C. TEMKIN, CORPORATE COUNSEL**
                        **DORIAN DALEY, GENERAL COUNSEL**


**For Defendant:**          KEKER & VAN NEST
                           633 Battery Street
                           San Francisco, California  94111-1809
                   BY:  **ROBERT ADDY VAN NEST, ESQUIRE**
                        **CHRISTA MARTINE ANDERSON, ESQUIRE**
                        **DANIEL PURCELL, ESQUIRE**
                        **MICHAEL S. KWUN, ESQUIRE**


                           KING & SPALDING LLP
                           1185 Avenue of the Americas
                           New York, New York 10036-4003
                   BY:  **BRUCE W. BABER, ESQUIRE**


                           GOOGLE, INC.
                           1600 Amphitheatre Parkway
                           Mountain View, California  94043
                   BY:  **RENNY HWANG, LITIGATION COUNSEL**



**Also Present:**           **SAFRA CATZ, President and CFO**
                           Oracle Corporate Representative

                           **CATHERINE LACAVERA**
                           Google Corporate Representative

                               —   —   —

PROCEEDINGS

1                    **P R O C E E D I N G S**

2  **APRIL 27, 2012**                                    **1:59 p.m.**

3

4          (Proceedings held in open court, outside

5           the presence and hearing of the jury.)

6          **THE COURT:**  Okay.  Ready to go?

7          **MR. JACOBS:**  Ready, your Honor.

8          **MR. KWUN:**  Ready, your Honor.

9          **THE COURT:**  Who is going to be the principal

10  spokespersons.

11          **MR. JACOBS:**  I will be the principal spokesperson for

12  our side, your Honor.

13          **MR. KWUN:**  And I will be for Google, your Honor.

14          **THE COURT:**  Here is the drill.  You all have the

15  document that was sent out yesterday that has the proposed

16  charge and you've already commented on it in part, but now what

17  we will do is go through every single paragraph and I will give

18  you a chance to say, "object" or "not object" or maybe you

19  might want to modify something, or you might see a typo,

20  something that just to make it even better.  So that's the way

21  we'll do it.

22          And then at some point where it's logical, or at the

23  end if there is no logical place, if there is something you

24  want to add that is not in here, you should bring it up.

25          All right?

```
 1              So I will just say "paragraph," like "Paragraph 1,"
 2   and then you tell me whether or not you have any objections.
 3              So, here we.
 4          THE COURT:  Paragraph one.
 5          MR. JACOBS:  No objection, your Honor.
 6          MR. KWUN:  No, objections, your Honor.
 7          THE COURT:  Two?
 8          MR. KWUN:  No objections, your Honor.
 9          MR. JACOBS:  Same.
10          THE COURT:  All right.  Three.
11          MR. KWUN:  No objections.
12          THE COURT:  Let's go back -- let's go back to No. 2
13   for a second, because there were some things that I did not
14   read to the jury as admitted facts or something.
15          MR. BABER:  Deemed facts.
16          THE COURT:  Deemed facts.
17          MR. JACOBS:  I don't think they will know what that
18   is.
19          THE COURT:  So why don't I say, "any stipulated
20   facts" or "facts I told you were admitted"?
21          MR. BABER:  "Deemed admitted"?
22          MR. KWUN:  I just don't remember what was in the
23   transcript.
24          MR. BABER:  Your Honor, I think some of them, like
25   the names one, is a question of law.  "Matters deemed
```

1  admitted."  "Matters that I told you were deemed established

2  or" -- no, that wasn't it.

3          **THE COURT:**  I didn't say they were established.

4          **MR. KWUN:**  You did not say they were established.

5          **THE COURT:**  I didn't go that far.  I'll just say,

6  "facts..."

7          **MR. KWUN:**  "Facts or issues"?

8          **THE COURT:**  No.  "Fact I told you were..."

9          **MR. BABER:**  "Had been deemed to be evidence"?

10          **MR. KWUN:**  I think you said "evidence."

11          **THE COURT:**  All right.  I would say deemed -- "facts

12  I told you were deemed to be evidence."  How is that?

13          **MR. JACOBS:**  That's acceptable, your Honor.

14          **THE COURT:**  Okay.  Number three.

15          (No response.)

16          **THE COURT:**  Three.  Speak up now.  Any objection?

17          **MR. KWUN:**  No objections.

18          **MR. JACOBS:**  You know, the only thing about this,

19  it's one that's a bug in the general way we think about this.

20  You said it orally correctly, which is, of course, if a lawyer

21  on cross-examination makes a statement and the witness agrees

22  with it, then that is evidence.  And you explained that, your

23  Honor, when you were explaining how this works.

24          The standard formulation "what lawyers say is not

25  evidence" doesn't capture that and there were a lot of good

2337

```
 1   facts elicited on cross in this trial.
 2             MR. KWUN:  Your Honor, I think that's actually
 3   encompassed in instruction two.
 4             THE COURT:  I do say in number two:
 5             "A suggestion in the question by counsel or the
 6        Court is not evidence unless it is adopted by the
 7        answer."
 8             MR. JACOBS:  Thank you, your Honor.
 9             THE COURT:  Doesn't that pick it up?
10             MR. JACOBS:  Yes.
11             THE COURT:  All right.  Any other points on number
12   three?
13             MR. KWUN:  I don't know that it's necessary, but if
14   you want to get into the details, you could also address the
15   fact that depositions read into evidence are evidence.
16             MR. JACOBS:  I think that's --
17             THE COURT:  I already said that in No. 2-1.
18             MR. KWUN:  Oh, you're right.  Okay.
19             THE COURT:  Next.  Number four.
20             (No response.)
21             THE COURT:  You've got to speak up.
22        MR. KWUN:  No objections.
23             MR. JACOBS:  No objection, your Honor.
24             THE COURT:  Number five.
25             MR. KWUN:  No objections.
```

1          **MR. JACOBS:**  No objection.

2          **THE COURT:**  Six.

3          **MR. KWUN:**  No objections.

4          **MR. JACOBS:**  No objection.

5          **THE COURT:**  Number seven.

6          **MR. KWUN:**  No objections.

7          **MR. JACOBS:**  No objection.

8          **THE COURT:**  Now, before this goes to final, we will

9  fix it so that no number appears at the bottom of the page like

10  on this draft.  This is just a draft.

11          Okay.  Number eight.

12          **MR. KWUN:**  No objection.

13          **MR. JACOBS:**  No objection.

14          **THE COURT:**  Number nine, "Java Documentation."

15          **MR. KWUN:**  No objections.

16          **MR. JACOBS:**  No objection.

17          **THE COURT:**  Ten.

18          **MR. KWUN:**  No objections.

19          **MR. JACOBS:**  "Charts and summaries" --

20          **THE COURT:**  Have any charts and summaries been

21  received in evidence?

22          **MR. KWUN:**  There have been, your Honor.  There's

23  been -- Dr. Reinhold had a summary of his investigation, for

24  example, that was received into evidence.

25          **THE COURT:**  All right. Then we should have number 10.

1          **MR. JACOBS:**  I think it mischaracterizes where we

2    are.  May I ask what counsel is thinking of?

3          **MR. KWUN:**  There is his investigation of what methods

4    he says -- what classes he said are required by the compiler or

5    required by the language spec.  There's also your list of what

6    are the packages at issue.  I mean, there's a few things like

7    that.  Those are the ones that come to mind.

8          **MR. JACOBS:**  It seems to over-criticize those kinds

9    of documents.

10          "Charts and summaries are only as good as the

11          underlying supporting material or testimony pursuant

12          to which they came into evidence."

13          **THE COURT:**  I can say "testimony or material."  How

14    is that?

15          **MR. JACOBS:**  Good.

16          **MR. KWUN:**  That's fine, your Honor.

17          **THE COURT:**  All right.  Number 11.

18          **MR. KWUN:**  No objections.

19          **MR. JACOBS:**  No objection.

20          **THE COURT:**  12.

21          **MR. KWUN:**  No objections.

22          **MR. JACOBS:**  No objection.

23          **THE COURT:**  13.

24          **MR. KWUN:**  No objection -- 13.  13, yeah.  Your

25    Honor, you have in here that:

1           "Oracle seeks damages against Google for alleged
2     copyright infringement."
3           We would request that you identify that they "seek
4     damages and an injunction for alleged copyright infringement."
5           **THE COURT:**  I will say "seeks relief."  Because I
6     don't want to get into the problem of the jury thinking, Oh,
7     the judge will fix this by issuing an injunction so we don't
8     have to award damages.
9           It is true that both are being sought, but what is of
10    concern to the jury is damages.  But there could be an
11    injunction, so I'll change that word to "relief."
12          Any objection to that?
13          **MR. JACOBS:**  No, your Honor.
14          **MR. KWUN:**  No objection.
15          Also, your Honor, you have a sentence that starts,
16    "To the extent that you find liability..."  We would request
17    that you just say, "If you find liability."  I think it is
18    easier for the jury.
19          **THE COURT:**  All right.  That's fine.  And that's
20    because I got the "extent" phrase already in the last part of
21    that anyway.  So that's redundant.  All right.  "If" is better.
22          Anything else on 13?
23          **MR. BABER:**  Your Honor, in the second sentence it
24    starts, "Google denies infringing any such 'copyright'
25    material."

2341

```
1            THE COURT:  Yes.
2            MR. BABER:  Could we change that to, "Google denies
3    infringing any 'copyrighted' material."
4            THE COURT:  That's what I meant to say.
5            MR. BABER:  Thank you, your Honor.
6            THE COURT:  I want you to help me find things like
7    that because it's a challenge for us to catch all those little
8    glitches like that.
9            Okay.  What else on 13?
10           MR. KWUN:  I don't think we have anything else, your
11   Honor.
12           THE COURT:  How about the plaintiff?
13           MR. JACOBS:  No, your Honor, not on 13.
14           THE COURT:  All right.  Now we go to number 14.
15           MR. JACOBS:  14 has a lurking ownership issue which
16   may be addressed when we get to ownership.  But it says:
17           "The term 'owner' includes the author of the work
18       or someone who has purchased the copyright."
19           That could be confusing because Mr. Reinhold, of
20   course, testified that he did the work, but he's not the
21   author.  So the "author" or "the employer of the author" or
22   something like that would help.
23           THE COURT:  All right.
24           MR. KWUN:  So, I'm sorry.  What are you proposing?
25           MR. JACOBS:  "Includes the author or the author's
```

```
 1   employer."

 2           MR. KWUN:  Well, it doesn't necessarily include the

 3   author's employer.

 4           MR. JACOBS:  It does.

 5           MR. KWUN:  Well, no.  I mean, it would depend.  If

 6   you're an author and you're employed by someone, it doesn't

 7   mean that your employer --

 8           THE COURT:  If it's written in the scope of your

 9   employment.

10           MR. KWUN:  Even then, you would have to have an

11   assignment --

12           MR. JACOBS:  That's not true.

13           THE COURT:  But in this case, in this case --

14           MR. JACOBS:  In this area of law, literary works,

15   there is no need for written assignment from employee to

16   employer.

17           MR. BABER:  Where in the instructions is the --

18           MR. KWUN:  We're in 14.

19           MR. BABER:  14?  Okay.

20           MR. KWUN:  Last sentence, "the term 'owner'

21   includes."

22           MR. JACOBS:  But my suggestion would be, your Honor,

23   that maybe we just kick this sentence for now.  We don't

24   exactly know -- I raised with Mister -- with Google's counsel

25   where they are going on ownership for that ownership paragraph
```

1    and maybe we could address it there.

2            THE COURT:  Well, I will -- so you're saying take

3    that whole sentence out here?

4            MR. JACOBS:  Yes.

5            MR. KWUN:  Or at least a further consideration of it

6    pending...

7            THE COURT:  All right.  I will -- remind me now not

8    to drop the ball on this.  I'm sure you will.

9            Okay.  Number 15 --

10           MR. BABER:  Your Honor, still on 14?

11           THE COURT:  Sure.

12           MR. BABER:  Could I suggest just for consistency with

13   the statute, the first sentence, it says:

14           "By federal statute copyright is an exclusive

15        right to copy a work."

16           I think technically it's:

17           "By federal statute copyright includes a number

18        of exclusive rights with respect to the work."

19           The right to copy is only one of six.  So a copyright

20   is actually much more than a right to copy.

21           THE COURT:  Well, isn't that all that's at stake

22   here?

23           MR. BABER:  Well, but then you spell out -- the ones

24   that are in here are four of the six in the statute.  So it's

25   sort of inflating things.

2344

```
 1            THE COURT:  I thought putting in the entire statute
 2   of things that don't have any relationship to this case would
 3   just confuse --
 4            MR. BABER:  Oh, absolutely agree with that, your
 5   Honor.  We don't need any more categories.  I just was
 6   quibbling with the first two sentences where you equate the
 7   copyright with just the right to copy.
 8            THE COURT:  Well, all right.  Why don't I say,
 9   "Copyright" --
10            MR. BABER:  "Includes."
11            THE COURT:  (Continuing) -- "includes an exclusive
12   right."
13            MR. BABER:  (Continuing) -- "a number of exclusive
14   rights."
15            And then the four, it says, "These rights include."
16   It includes all four of them.  Those are four of the six.
17            THE COURT:  You must be a plaintiff in another case
18   and you want to use this.
19            (Laughter.)
20            THE COURT:  All right.  I'll make those changes.
21            MR. BABER:  And then in little two under that.
22   "Recast, transform or adapt the work."  The word "or."
23            THE COURT:  Is "or" in there?  It's not?  All right.
24   Fine.
25            Anything more on 14?
```

2345

```
 1            MR. JACOBS:  No, your Honor.

 2            THE COURT:  15.

 3            MR. KWUN:  No objections your Honor.

 4            MR. JACOBS:  No objections your Honor.

 5            THE COURT:  16.

 6            MR. JACOBS:  16 just a wording suggestion.  The

 7   parenthetical "except in certain circumstances I will describe

 8   below."  It's not exactly sure -- it's not exactly clear later

 9   on that you're referring back to this parenthetical, so we

10   would just suggest take out the parenthetical.

11            MR. KWUN:  Your Honor, we would object to taking out

12   the parenthetical because it renders the statement incorrect.

13            THE COURT:  Well, the only defense later on addressed

14   is fair use, right?

15            MR. KWUN:  Well, I mean, your Honor, the only --

16   there's other circumstances, however, where it still would not

17   be infringement; such as, if it's not substantially similar; if

18   it's for the documentation, as you have it framed right now; if

19   it's not virtually identical; if it is diminimus.

20            MR. JACOBS:  As stated:

21            "The owner of a copyright has the exclusive right

22        to make copies of all or part of the copyrighted

23        work."

24            That seemed pretty clear to us in 16.

25            MR. KWUN:  I would suggest if somebody makes a copy
```

```
 1   of any part of the work, that that is an infringement unless
 2   you have the parenthetical.
 3          THE COURT:  Well, let's just take that whole sentence
 4   out and go with the first sentence.  Can you both agree to
 5   that?
 6          MR. BABER:  Well, there's a -- the second line should
 7   be "all or part" instead of "of part."  Right?  I think.
 8          THE COURT:  That should say "all or," correct.
 9          MR. KWUN:  Bruce is in charge of all typos.
10          MR. BABER:  And I do think in that context, your
11   Honor, the "or part" is misleading because then it will just
12   say:
13              "As stated, the owner of a copyright has the
14          exclusive right to make copies of all or part of the
15          copyrighted work."
16              So, in theory, if you copied five words, that's part
17   of the copyrighted work.
18          THE COURT:  All right.  All right.  Just a second.
19   The diminimus thing, I put the burden on the plaintiff,
20   didn't I?
21          MR. BABER:  You did, your Honor.
22          THE COURT:  All right.  So I want to say -- I'll just
23   say, "make copies of all or more than a diminimus part."
24          MR. BABER:  Your Honor, if I may make a simpler
25   suggestion?
```

1          **THE COURT:**  What is that?

2          **MR. BABER:**  Just, "has the exclusive right to make

3    copies of the copyrighted work."  That's what the section says.

4          So that suggests you've got -- the right to copy is

5    really the whole work.  If it's less than that, it's a

6    derivative work or it's a part of it or just a little bit that

7    makes it substantially similar, but the --

8          **THE COURT:**  Why would it be a derivative?  If I were

9    to copy one page out of an important work and it wasn't fair

10   use, why is that derivative?

11         Like the advertisement point.  If I start -- if I get

12   them to publish an ad then I make 100 copies of the ad and

13   circulate it, I'm only doing part of it.  That's not a

14   derivative work.

15         **MR. BABER:**  No.  But that would be enough -- if the

16   facts were right, that might be enough to have it be an

17   infringing work, but it still wouldn't be necessarily a copy, I

18   don't think.  If taking out "all or part" works, then...

19         **MR. JACOBS:**  I think, your Honor, that you're trying

20   to state -- we're trying to state for the jury a basic

21   proposition in Paragraph 16 that will be unpacked in later

22   paragraphs.  This is trying to say, this is what the word

23   "infringement" means.  Because I suspect the word

24   "infringement" will be used in closing argument.  It's an

25   important paragraph.

```
 1          MR. KWUN:  Your Honor, I think "infringement"
 2  actually is defined -- is better defined later on when we
 3  provide the test for it.
 4          I mean, if we're going to reduce this to one
 5  sentence, I think that instruction 14 actually sufficiently
 6  states what --
 7          THE COURT:  I'm going to say, "more than a diminimus
 8  part."
 9          MR. KWUN:  Your Honor, I think that prejudges the
10  infringement question, which is -- which requires substantial
11  similarity, and that's also their burden of proof.
12          MR. JACOBS:  I think the -- well.
13          MR. BABER:  Your Honor, the statutory language is
14  that:
15          "The copyright owner has the exclusive right to
16      reproduce the copyrighted work in copies or in phone
17      records."
18          You don't need phone records in this case.  This is
19  just saying, "to reproduce the copyrighted work in copies."
20          THE COURT:  No.  You two are trying to get me to
21  argue your case for you to the jury, but I have a new way to do
22  this.  Hang on a minute.
23          (Brief pause.)
24          THE COURT:  Okay.  Here is what I'm going to say:
25          "As stated, the owner of a copyright has the
```

1          exclusive right to make copies of all or more than a

2          diminimus part of the copyrighted work, subject only

3          to the right of the public to of all or part of any

4          copyrighted material as will be explained below."

5               All right?

6          MR. BABER:  Fine by us, your Honor.

7          MR. JACOBS:  Yes, your Honor.

8          THE COURT:  Great.

9               Number 17.

10         MR. JACOBS:  17 raises -- we object.  It races

11    concerns about how the jury could be readily confused.

12              The Court should and will in these instructions tell

13    the jury that which is protectable and that which is not.  So

14    to restate in 17 the idea expression dichotomy and to include

15    method of operation, process system and the game example is to

16    invite confusing argument and confusing deliberations.

17         MR. KWUN:  Your Honor, the model instructions include

18    an idea expression instruction.  We think it's appropriate.

19         THE COURT:  I'm going to give this.  I -- I want to

20    explain why.  There is an exceedingly high risk that a jury in

21    this case will think that because Oracle put -- not Oracle.

22    Sun put so much money and time into this, that there must be

23    some form of federal protection in it and, you know, treat it

24    like a patent or something, and it's not true.

25              There will be somebody on that jury tempted to say,

1  "Well, Sun is the one that came up with this idea.  Sun is the

2  one that came up with this."  And they will over -- they will

3  expand beyond any bounds of what a copyright is supposed to

4  protect.  And we need to remind them, no, copyright protects

5  the expression.  It does not protect the idea.

6          And my intent was to cure the legal problem -- not

7  legal problem, but cure the -- to define them, tell them,

8  instruct them that they must treat SSO as subject properly to

9  copyright.

10          Now, there is a very tough issue there that I will

11  eventually resolve, but I think this is a correct statement of

12  the law, and it does -- and I believe it is necessary to

13  prevent the jury from overinflating what a copyright is

14  supposed to protect.

15          So your objection is noted.  Overruled.

16          **MR. KWUN:**  Your Honor, in the same vein as what you

17  have in here, I think given the arguments and the testimony

18  that we've heard, there has been a lot of testimony from Oracle

19  about the amount of effort it took to create these APIs and the

20  amount of work that went into it, and we would request that you

21  have a sweat of the brow instruction in informing the -- I

22  mean, the language we would request is:

23          "A copyright does not protect any hard work or

24      effort that may have been expended in compiling

25      unprotected elements."

1          And if you want to give a further explanation, you

2   can go on:

3          "This work or effort is sometimes referred to" --

4          **THE COURT:**  No.  I was already thinking about that as

5   a possibility, but I haven't done it yet.  And I would have to

6   be -- I'll think about it.

7          **MR. JACOBS:**  Then, your Honor, I think --

8          **THE COURT:**  There is a risk there of -- it depends on

9   -- in a way it depends on -- this is one reason that judges

10  sometimes -- I mean, always -- shouldn't say "always," but

11  usually instruct after the arguments because if I were to hear

12  a sweat of the brow argument from Oracle, even if it wasn't in

13  the draft, I would put it in there because arguments like

14  that -- if you invite it, I'll just change the instructions and

15  put in something that said:

16          "You heard of the sweat of the brow argument.

17       That is a bogus argument under the law."

18          And I would do that, because you can't -- you

19  can't -- merely because we don't put something in the

20  instructions means you have a license to run roughshod over

21  what the law would be.  I'm not saying that you would do that,

22  but I have not yet decided whether or not a sweat of the brow

23  type instruction ought to go in here.  Possibly, but I'm still

24  thinking about that one.

25          So your request is noted.  Not yet granted.

2352

1          **MR. KWUN:**  We would also request, there has been a

2   lot of testimony about this alleged creativity in the design.

3   But the proper question for copyright is whether there is

4   creative expression.  And we would request an instruction that

5   originally creative ideas are not copyrightable and that would

6   be --

7          **THE COURT:**  Say that again?

8          **MR. KWUN:**  That original and creative ideas are not

9   copyrightable.

10         **THE COURT:**  Well, I already say that the idea -- see,

11  that's going too far.  I already say that the idea -- that's

12  what 17 does.  It goes too far arguing your case for you.  I'm

13  not going to do that one.

14         **MR. KWUN:**  The third point that we would ask in this

15  section is an instruction on the fact that copyright programs

16  are utilitarian articles and that the fact that they are

17  dictated by a function plays a role in how copyrightable they

18  are or that --

19         **THE COURT:**  No.  That's a legal question for me later

20  on.  I'm not going to do that.  I think that's an excellent

21  point to be made on Rule 50 and on the legal issue that ought

22  to go up to the Court of Appeals, but I'm not going to give

23  them that.  I don't think you need to give them that.

24         All right.  18 --

25         **MR. JACOBS:**  Your Honor, on 17?

1        **THE COURT:**  Yes, of course.

2        **MR. JACOBS:**  I think what -- absent taking it out, I

3   think what the -- the issue lurking here is that we don't have

4   an originality instruction, and this is a take-away instruction

5   without a give instruction.

6        So we haven't explained to the jury how you could

7   have a book that would have original expression in it even if

8   it has rules because of the selection, coordination,

9   arrangement, for example.  And so this is our concern with the

10  formulation if it remains in.

11       We don't understand there to be an originality issue

12  remaining in the case, but I guess we'll find that out.

13       **THE COURT:**  Well, now, that may be a fair point.  I

14  don't want to say yes to that.  But if you will give me a half

15  a page that will -- or less, one paragraph that I could

16  evaluate for that purpose, I would be happy to consider putting

17  it in.

18       **MR. BABER:**  Your Honor, if I might remind the Court

19  and Mr. Jacobs, there is either a deeming motion or an

20  admission.

21       We admitted that the overall platform works as a

22  whole met the minimal originality requirement for the copyright

23  laws.  I think you read that to the jury during the trial.

24       **MR. JACOBS:**  We did not ask for it because it's

25  really not the question.

```
 1              THE COURT:  Well --
 2              MR. JACOBS:  So in any case, your Honor, we'll give
 3  you a paragraph on this.
 4              THE COURT:  All right.  And I'm not saying for sure I
 5  will grant it.  I will consider it.
 6              Number 18.
 7              MR. NORTON:  Sorry.  On 17?
 8              THE COURT:  All right.
 9              MR. NORTON:  In the first sentence there is a typo,
10  which is, "copyright infers ownership over the particular
11  expression."
12              THE COURT:  Thank you.  What's going on with me?
13              Okay.  All right.  Now what?
14              MR. KWUN:  Are we moving on to 18?
15              THE COURT:  18.
16              MR. KWUN:  So there is a typo in 18, which is that:
17              "TX 464 is a registration for Java 2 Standard
18         Edition Version 1.4."
19              Not "Java Standard Edition."
20              THE COURT:  I'm sorry.  464 is what?
21              MR. KWUN:  In Line 2 on Page 11 you say:
22              "Namely, Java Standard Edition Version 1.4."
23              It's:
24              "Java two Standard Edition Version 1.4."
25              So exactly the same as the next one you have in
```

```
 1   there, except for the version number.

 2              THE COURT:  I've got it.

 3          MR. KWUN:  And then, your Honor, in Lines 5 to 6,

 4   although you state that:

 5          "The copyright generally covered the compilable

 6       code and documentation for the API packages..."

 7              What they actually cover is more than that.  We would

 8   request that you indicate that they also -- that they generally

 9   cover the compilable code, the documentation, the Java virtual

10   machine, the Java compiler and other software tools.

11              THE COURT:  I will say "among other things the

12   registered copyrights."

13          MR. BABER:  Your Honor?

14              THE COURT:  Yes.

15          MR. BABER:  I just want to make sure that the jury

16   doesn't get the wrong impression by use of the word "cover."

17   I think what you're intending to tell the jury at this point

18   is, look, we have works that include several different things.

19   It's not that the registered copyrights cover something, which

20   sounds like copyrightability coverage.  If the sense is that,

21   let me just tell you --

22              THE COURT:  What word would you use "include"?

23          MR. BABER:  I would change it to say:

24          "The copyrighted works generally include

25       compilable code and documentation, among other
```

1          things."

2               **THE COURT:**  That's okay with me.  Is it okay with the

3   plaintiff?

4               **MR. JACOBS:**  I think the point that just got lost is

5   the registration.  So, "the registered."

6               **MR. BABER:**  I think we call it "the copyrighted

7   works" throughout.

8               **THE COURT:**  Well, here.  I would say, "The registered

9   copyrights generally include."  How is that?

10              **MR. JACOBS:**  Yes.

11              **MR. BABER:**  It's really the works include all these

12  things, your Honor.  What the copyrights include is -- that's

13  the question of law for you.  It's the difference between the

14  copyright and the works.

15              **MR. JACOBS:**  The -- this is perfectly adequate as

16  stated.

17              **MR. BABER:**  You could say, "the works in which the

18  copyrights are registered."

19              **MR. JACOBS:**  That's more words.  It says the same

20  thing.

21              **THE COURT:**  I'm going to -- I will change "cover" to

22  "include," but otherwise it stays the same.

23              **MR. KWUN:**  And, your Honor, on the next line, two

24  lines down, Line 7 where you say:

25               "The main issues you must decide concern these

```
 1          two."

 2                  And then you say:

 3              "General types of work contained therein."

 4                  Since "work" is a term of art, we would -- which is

 5      not -- and it's not being referred to work as work as a whole

 6      or work as used in the Copyright Act, we would request that you

 7      change "work" in that line to "material."

 8              MR. JACOBS:  No objection, your Honor.

 9              THE COURT:  Great.

10              MR. KWUN:  "General types of material."

11              THE COURT:  To "general types of material," got it.

12              Anything else?

13              MR. JACOBS:  In the technical discussion there are a

14      couple of -- we struggled with whether we can do better than

15      compilable code, and we can't.  We tried various alternatives.

16                  We would note, just in case this bothers the Court or

17      Google, that we're including in compilable code the resulting

18      object code which is a technical --

19              THE COURT:  That's what I heard people -- is that not

20      correct?

21              MR. JACOBS:  No.  The compilable code would be the

22      source code less the -- what I think the intent here is the

23      compilable code is the source code less the comments.  And the

24      compiled code is the resulting object code.

25                  This will work for present purposes in terms of what
```

```
 1   issues the jury has to decide, but I didn't -- I wanted to just
 2   aprise the Court of that.
 3            THE COURT:  I did specifically want the resulting
 4   object code to be part of this.
 5            MR. JACOBS:  Exactly.
 6            THE COURT:  Because -- well, so --
 7            MR. JACOBS:  One possibility that we thought of -- we
 8   can test and see if it works with your Honor and with Google --
 9   is "computer code."
10            MR. KWUN:  I think, your Honor, that "computer code"
11   is ambiguous.  And I think we want to capture the fact that
12   this also includes the compiled code.  We could say, "the
13   compilable and compiled code."
14            THE COURT:  Then we are going to have a long phrase
15   each time we want to use it.
16            MR. BABER:  You can just say, your Honor, how about:
17            "The term 'compilable code' refers to these
18        things (whether in source code or object code
19        format)."
20            THE COURT:  I say that on Line 10 and 11.
21            MR. BABER:  Instead of, "as well as the resulting,"
22   which sounds like, well, you have one group and then another
23   group.  Just say it covers this whether it's in source code or
24   object code.
25            THE COURT:  Where would you put that?
```

2359

1          **MR. BABER:**  The part that's in the parenthetical.  I

2    would just change "as well as the resulting object code" to

3    "whether in the form of source code or object code."

4          **THE COURT:**  I'm good with that.  Are you okay with

5    that, Mr. Jacobs?

6          **MR. JACOBS:**  I thought your other language was

7    better, but I have no substantive objection.

8          **THE COURT:**  Okay.

9          **MR. JACOBS:**  So the sentence in this connection.

10         "The source code that implements the function of

11      the API is called the implementation."

12         It's -- you've just -- we've just defined in the

13    previous sentence what API compilable code is and now we're

14    saying, "The source code that influence the function of the API

15    is called the implementation," and those are amiss.

16         **THE COURT:**  I'm happy to take out -- I'm happy to

17    change it and say, "Sometimes this has been referred to as the

18    implementation."

19         **MR. JACOBS:**  I think that would be clearer.

20         **THE COURT:**  Both sides okay with that?

21         **MR. KWUN:**  Your Honor, there has been a lot of

22    testimony that defined "implementation code" to exclude the

23    declarations which are not excluded from compilable code.

24         **MR. JACOBS:**  And that's just wrong, your Honor.

25         **THE COURT:**  Well, but, I mean, there is testimony on

2360

 1   this point.

 2          MR. KWUN:  And, your Honor, I actually don't think

 3   there has been any -- if there was any testimony to the

 4   contrary.  So whether Mr. Jacobs thinks it's wrong or not, that

 5   actually is our record.

 6          MR. JACOBS:  In any case, our recommendation, your

 7   Honor, would be to take that sentence out since you -- the

 8   previous sentence refers to an implementation, so

 9   implementation is covered there.

10          THE COURT:  Well, I will consider taking out that one

11   sentence, but if I need the word "implementation" later on, I

12   have to come back to that.  I put that in there for a reason

13   and now I'm trying to remember.  It had something to do with

14   one of the witnesses yesterday.

15          MR. KWUN:  Your Honor, just for the record, we think

16   that the sentence explaining what implementation is is useful

17   since it's used in the prior sentence and it -- and for that

18   reason we would request that you keep that sentence.

19          THE COURT:  Is the difference between you whether the

20   declaration is part of the implementation?

21          MR. JACOBS:  Yes, your Honor.

22          MR. KWUN:  Yes, your Honor.

23          The implementation -- I don't think there has been

24   any contrary testimony.  The only way "implementation" has been

25   used at trial is to define the material that's inside the curly

1    braces.

2           **MR. JACOBS:**  Your Honor, there was testimony, because

3    I elicited testimony that the material in black in the box is

4    part of the code for purposes of what is --

5           **THE COURT:**  Is it part of the implementation?

6           **MR. JACOBS:**  That's correct.

7           **THE COURT:**  Code versus --

8           **MR. KWUN:**  Yes, your Honor.  I mean, it would be part

9    of the compilable code and I think that that is captured by the

10   instruction.

11          I think that given the amount of testimony that is

12   talked about, the various distinctions, it's very useful to

13   have a word that refers to the material inside the curly

14   braces.  It will allow the jury to discuss these things more.

15          **THE COURT:**  What if I said something like:

16          "In this connection, the source code implements

17          the function of the API is called the implementation,

18          but be mindful that the two sides disagree on whether

19          the declaration is part of the implementation."

20          **MR. JACOBS:**  I think maybe the -- where your Honor

21   started should work.

22          "In this connection, the source code that

23          implements the function of the API has sometimes been

24          referred to as the implementation."

25          **MR. KWUN:**  Your Honor, that would be fine.

2362

1              THE COURT:  It's okay?

2              MR. KWUN:  Yes.

3              THE COURT:  All right.  Okay.

4              Say that again.

5              MR. JACOBS:  "Has sometimes been referred" -- "is

6    sometimes referred to as the implementation."

7              THE COURT:  All right.

8              MR. JACOBS:  Then in the documentation sentence we

9    have kind of a parallel thought.  So it would read as follows:

10              "Instead, the English language comments are part

11         of what I will call the API documentation."

12              Insert, "sometimes referred to as the, quote,

13   specification, close quote."

14              MR. KWUN:  That's fine, your Honor.

15              THE COURT:  Wait a minute.  "Sometimes referred to as

16   the, quote, specification."

17              MR. JACOBS:  And then one of the -- on Line 20 is the

18   word "method," and method is going to come up in the

19   instructions and I'm sure argument.

20              One of the problems we have in Paragraph 17 is the

21   reference to "method of operation" and the possible confusion

22   between the statutory class method of operation and the Java

23   programming rubric method.

24              THE COURT:  Just a minute.  Show me -- what line are

25   you on?

2363

1          MR. JACOBS:  Line 20.

2          MR. NORTON:  And, also, Line 9.

3          MR. KWUN:  Your Honor, we also have a similarly

4   confusing term that has been in evidence, although it's been

5   explained in testimony, but "interface."

6          "Interface" is a term of art in Java, but is also

7   used obviously in API.  Perhaps we should just have another

8   paragraph that explains that two of the terms that have come up

9   in this case that describe certain aspects of the Java language

10  are "method" and "interface" and that those are distinct from

11  the legal terms "method of operation" or -- I guess, well, the

12  terms "method of operation" and "Application Programming

13  Interface."

14         MR. JACOBS:  An alternative, your Honor, would be to

15  add as follows:

16         "A 'method' in this context means a software

17     program that performs particular services."

18         MR. KWUN:  Your Honor, we would object to the

19  characterization of it as a program.

20         MR. JACOBS:  "Means software that performance

21  particular services."

22         THE COURT:  Source code.

23         MR. JACOBS:  And, your Honor, one of the things we

24  did, I want to flag for you, is we went back to your MSJ order,

25  which was -- which has withstood the test of time in this

1    trial.

2            **THE COURT:**  What MSJ order?  Oh, summary judgment,

3    okay.

4        **MR. JACOBS:**  I'm sorry, on copyright.  And your --

5    this is the -- this language is adopted from that order, ECF

6    433.

7            "A method in this context means a software

8        program that performs particular services."

9        **MR. KWUN:**  Your Honor, I would just note the

10   objection to the term "program" because I don't think that's

11   accurate and it suggests --

12           **THE COURT:**  I can change that in a second.  Let me

13   give you -- "a method in this context."

14           **MR. JACOBS:**  "Means a software program that

15   performance particular services."

16           **THE COURT:**  "In this context the term 'method'

17   means."  Tell me the rest of it?

18           **MR. JACOBS:**  "A software program that performs

19   particular services."

20           **THE COURT:**  How about if we say -- "services," I

21   don't like that word.  I would say means source code --

22   actually, why don't we say:

23           "Implementation means an implementation to

24        perform a function."

25           **MR. KWUN:**  Your Honor, I think a method actually can

1  refer to the implementation or it can refer to the declaration.

2  You have, "a method declaration which," I don't know --

3          **THE COURT:**  "Means source code that carries out a

4  function."  How is that?  Is that okay?

5          **MR. JACOBS:**  Yes.

6          **MR. KWUN:**  And actually, your Honor, here, in

7  particular, the reference to "method" is actually to method

8  names.  So to suggest that that is code is -- I mean, it's

9  somewhat confusing, I think.

10          If we decoupled this from this instruction --

11          **THE COURT:**  Oh, I see.  Method names.

12          **MR. KWUN:**  If we had a separate instruction just

13  saying that:

14          "There are two terms that come up both in terms

15      of technical concepts in Java, in the Java language,

16      as well as in other aspects of the case, and you must

17      keep in mind that method, as used in the Java

18      language, has a different meaning than method of

19      operation; and interface, as used in the Java

20      language, has a different meaning than application

21      programming interface."

22          It would avoid the juxtaposition with the method name

23  there.

24          **THE COURT:**  You know, how about if we say "English

25  language comments as well as method name..."  I'm going to put

2366

1    in the word "names."  ..."method names and class names."

2            I think there has been -- I don't think we need any

3    more definitions.  The jury knows good and well what a method

4    is and for me to try to now explain that to them -- let you two

5    fight over that.

6            **MR. KWUN:**  That's fine with us, your Honor.

7            **THE COURT:**  I'm going to leave out any further

8    description.

9            What was the other point that you wanted to have?

10   "Interface."  No, I'm not going to put that in either.  That's

11   for argument.  Just argue from the facts in the record what

12   "interface" means.

13           All right.  What's next?

14           Now, I will say this if anybody in the closing

15   argument even halfway suggests that these methods are methods

16   of operation and, therefore, the statute doesn't even cover it,

17   then I'm going to interrupt and say that's a bogus argument and

18   you will wish that you had not made that argument.

19           **MR. KWUN:**  We will not, your Honor.

20           **THE COURT:**  All right.  So don't even go there.  But

21   I think the jury will understand -- now, that is a legitimate

22   possible argument on Rule 50, but it's not for the jury

23   argument because I am telling them the SSO is a permissible

24   copyright.

25           Okay.  Anything more on 18?

1          **MR. JACOBS:**  No, your Honor.

2          **THE COURT:**  19?

3          **MR. JACOBS:**  Our concern with 19, your Honor, is

4   there is -- maybe just could be the way this draft came out,

5   but there's too much rumination in the instruction.  The kind

6   of -- the jury should be told what the law is.

7          You've told the parties that your decision on the

8   scope of protection is provisional and you're going to look at

9   it again after we're all done.  The parties need to know that.

10  The jury doesn't really need to know that.  The juries should

11  just be instructed and told -- and make its decision.

12          In addition, there's probably, in our view, too much

13  characterization of Google's argument.  So we would propose as

14  follows.  On Line 8 and 9:

15          "Google states that its use was protected by a

16      statutory rule permitting the public to make fair use

17      of copyrighted works."

18          And then jump all the way to 14:

19          "For purposes of your deliberations the

20      copyrights cover the Structure, Sequence and

21      Organization of the compilable code."

22          **MR. KWUN:**  Your Honor, this is essentially the topic

23  we briefed the other night and we would -- well, we disagree.

24  We think that it's important that the jury know that this

25  decision hasn't been reached and that the Court has not

```
 1   declared that what Oracle has been telling them is correct.

 2           THE COURT:  Well, I have, I think, the authority to

 3   do that even though, it's true, I haven't yet made that

 4   decision.

 5           I don't have to do it the way Google wants, but I

 6   don't want anyone to have some -- I don't like the way I

 7   phrased this.  "I will not be able to decide this question

 8   until after your verdict job."

 9           MR. KWUN:  Your Honor, we would just recommend

10   deleting "be able to."  "I will not decide this question."

11           I don't know if that addresses the concern that you

12   seem to have on that, but shortens the sentence and get us to

13   the point.

14           MR. JACOBS:  It's odd.

15           THE COURT:  Hmm?

16           MR. JACOBS:  I think it's just odd.  Here are your

17   instructions, but I'm not sure these instructions are right.

18   What kind are verdict are we eliciting from them?

19           MR. BABER:  Your Honor, I don't think that conveys to

20   the jury that, "Here are my instructions.  I don't know if they

21   are right."

22           You're just saying, the issue of copyrightability.

23   I'll deal with that.  For purposes of your job, just assume

24   that it is copyrightable.  And we think this fairly does that.

25           THE COURT:  Well, I am going to take the sentence out
```

```
1   that says, I will not be able to do that, and leave the rest of
2   it there.  And I don't think anyone is prejudiced one way or
3   the other by this.
4          MR. JACOBS:  So in Line 9 this --
5          THE COURT:  I think I should tee up the arguments
6   that are being made.  Is there something wrong?  You call it
7   ruminations.  That's not a legal objection.
8          I have the right -- I think sometimes the duty -- to
9   help explain to the jury what the issues are.  And is there
10  something that's inaccurate about 19?
11         MR. KWUN:  Your Honor, we would add something that we
12  think is inaccurate, which is that right now instruction 19
13  does not explain to the jury that one of the issues you're
14  going to have to decide is substantial similarity.
15         It says that:
16         "Google states that the elements it has used are
17      either not copyrightable in the first place or its
18      use was protected by fair use."
19         But there's actually three things.  We say that --
20  that the material is not copyrightable; that it's not
21  infringing; and that even if there is a prima facie case of
22  infringement, it's a fair use.
23         So we believe there is a concept between the two that
24  you have there that should be added --
25         THE COURT:  What would be that phrase?
```

1             **MR. KWUN:**  It would say -- right now it says:

2        "Google states that the elements it has used are

3     either not copyrightable in the first place."

4             Right after that we would add:

5        "Comma, that Google's work and Oracle's work are

6     not substantially similar when compared as a whole,

7     comma."

8             And then the rest of the phrase that you have there.

9             **MR. JACOBS:**  So let me -- can I take those one by

10    one?

11            **THE COURT:**  Yes.

12            **MR. JACOBS:**  Sorry.

13            **THE COURT:**  Go ahead.

14            **MR. JACOBS:**  On Line 9:

15        "Google states that the elements it has used are

16     not copyrightable in the first place."

17            I guess what you're -- maybe I should run with this.

18    What you're saying to the jury here is you're rejecting

19    Google's argument.

20            I think it invites Google to argue copyrightability

21    to the jury.  If they are not going to argue copyrightability

22    to the jury, notwithstanding that the instructions express that

23    this is their argument.  Because it's really an argument that

24    they are making to the Court, that they are not copyrightable,

25    not to the jury.  Because you're telling the jury not to listen

1   to an argument that these things are not copyrightable.

2          MR. KWUN:  Well, your Honor --

3          MR. JACOBS:  The more -- I guess I could live with it

4   either way.  I still think the instruction would be better if

5   what the jury was told is:  Here is your direction.  Decide

6   these questions.

7          MR. KWUN:  Well, your Honor, you state what the

8   arguments are, although we would suggest there is one missing,

9   and then you state immediately after that that copyrightability

10  is an issue for you to decide.  I think it's pretty clear

11  exactly what the issue is.  The Court has formulated that

12  correctly.

13         THE COURT:  I have a better idea.  Since neither of

14  you like No. 19, I am going to take that sentence that says:

15             "For purposes of your deliberations, I instruct

16         you that the copyrights in question do cover the

17         Structure, Sequence and Organization of the" -- and

18         I'm supposed to put in "compilable code."

19             Is that it?

20         MR. JACOBS:  I think just for consistency, your

21  Honor, yes.

22         THE COURT:  Then I'm going to take that sentence and

23  take it back to Paragraph 17, and it will go at the end of

24  Line 25.

25         MR. BABER:  Your Honor, I think that's --

1   **THE COURT:**  Too bad.  You talked me into it with all

2 your other objections.  So that's where it's going to go.  I'm

3 going to take that.

4   "For purposes of your deliberations I instruct

5   you that the copyrights in question do cover the

6   Structure, Sequence and Organization."

7   I'm going to leave out the fact that you're

8 arguing -- the jury doesn't know that you have been arguing

9 that it's not been covered by copyright.  From their point of

10 view you've conceded that and everybody knows that.  So I don't

11 need to even inject that.

12   **MR. KWUN:**  Your Honor, if you're going to instruct

13 them that they are to, that the copyrights do cover the

14 Structure, Sequence and Organization of the code, of the

15 compilable code, we would request that you add after that:

16   "It is my job to decide whether or not the

17   copyrights on the computer program do or do not

18   extend to protect," blah blah blah.

19   In other words, the sentence that you have before

20 that, because it's -- again, we think it's prejudicial to say

21 to the jury that that issue has been decided, because it

22 hasn't.

23   **THE COURT:**  Why not?  Why is that?  They don't even

24 know it's an issue.  It's just like I'm telling them what the

25 statute of limitations is.

```
 1          MR. KWUN:  Your Honor, they have heard witnesses

 2   testify that they believe that they are free to use these

 3   and --

 4          THE COURT:  I guess that's too bad.  That happens in

 5   trials all the time; that one side or the other is -- that the

 6   -- no.  I don't see how that can possibly prejudice you.

 7          MR. KWUN:  Well, your Honor, when it happens in cases

 8   where -- where testimony has been given and then there's a

 9   legal determination that that activity was contrary to the law,

10   that's one thing.  But there has been no determination here in

11   this case and we think it would be prejudicial to suggest to

12   the jury that there has been.

13          THE COURT:  Well, the point is noted.  In my mind it

14   works the other way.  This actually benefits you, because some

15   juries would say, Oh, the judge has already -- he's going to

16   take care of that.

17          So, no.  I'm not going to do that.  I'm going to tell

18   them that it does cover and you still have all your other

19   arguments.  I don't think in puts you in a bad light at all.

20          So, but let's go back to the paragraph where we were.

21          "Google states that the elements it has used" --

22        will take out, "not copyrightable in the first

23        place."

24          "Google states that... it has used are not

25        infringing...  Its use was protected by a statutory
```

2374

 1          rule permitting the public, including competitors, to

 2          make fair use of copyrighted works."

 3              I think that adequately states your position.  And

 4     it's not prejudicial in any way to you.

 5              All right.  Do you have more objections?

 6              **MR. KWUN:**  Yes.

 7              **MR. JACOBS:**  Well, this --

 8              **MR. KWUN:**  Go ahead.

 9              **THE COURT:**  I want to hear the plaintiff's

10     objections.

11              **MR. JACOBS:**  "Including competitors," you know, they

12     are arguing that as a competitor, they are entitled to use

13     this.  As phrased, it's not clear that that's their argument.

14              And, again, you're going to be instructing them on

15     various --

16              **THE COURT:**  I know the inference it might be, well,

17     the public can do it, but those are people who -- how about

18     competitors?  The judge didn't stay competitors.  He just must

19     mean strangers or something.  You know, the entire world.  How

20     about, why don't I put in "the entire world"?

21              You know, the right to fair use is an important

22     right.  It has First Amendment overtones.  So I don't want it

23     to --

24              **MR. JACOBS:**  How about --

25              **THE COURT:**  (Continuing) -- water it down.

1          **MR. JACOBS:**  How about just crisper, your Honor.

2          "Protected by a statutory rule permitting the

3      'fair use' of copyrighted works."

4          And later on you're going to explain what "fair use"

5  is.

6          **THE COURT:**  I will say "anyone."  I'll say

7  "Permitting anyone to make fair use."

8          **MR. JACOBS:**  And then how would this end if you --

9          **THE COURT:**  That's where it ends, right there now,

10  "Fair use of copyrighted works" period.  And then that other

11  sentence about SSO goes back earlier.

12          **MR. BABER:**  And, "It is my job" sentence out?

13          **THE COURT:**  Which?  That sentence will go out.

14          **MR. BABER:**  That will go out then.  I think that was

15  a mistake to try to explain that.

16          **MR. KWUN:**  Your Honor, we would have two other parts

17  in Section 19.

18          **THE COURT:**  Sure.

19          **MR. KWUN:**  First of all, in the first sentence where

20  you say, "There are more than 37 API packages."

21          **THE COURT:**  Yes.

22          **MR. KWUN:**  "So does the accused Android platform."

23          **THE COURT:**  Sure.

24          **MR. KWUN:**  I think that's just going to lead the jury

25  to wonder exactly how many more and we would request that you

1  indicate, "Both platforms have more than 160 API packages."

2          THE COURT:  There has been evidence on that.  I don't

3  need to do that.

4          MR. KWUN:  The other than thing that we would request

5  is that in light of the change in plaintiff's position on

6  collective work, it's inappropriate on Page 12, Line 5 to say,

7  "individually as 37 separate packages."

8          THE COURT:  That's true.  That's true.

9          MR. JACOBS:  I'm sorry -- yes, that's correct your

10  Honor.

11          THE COURT:  So that phrase will come out.

12          MR. JACOBS:  I think you could simply end it at, "for

13  the 37 API packages period."

14          THE COURT:  That's what we'll do.  That's a very good

15  change.

16          MR. KWUN:  Well, your Honor, I think as a --

17          MR. BABER:  It has to stay.  Collectively as a single

18  group.

19          MR. KWUN:  I think that -- otherwise it's going to

20  not --

21          THE COURT:  We'll say "as a group."

22          MR. KWUN:  That's fine, your Honor.

23          MR. JACOBS:  That's fine.

24          THE COURT:  All right.

25          MR. BABER:  One typo, your Honor.

1           THE COURT:  Sure.

2           MR. BABER:  Line 7, the fifth word "on" should be

3  "in."

4           THE COURT:  Okay.  Thank you for that.

5           Now, 20.

6           MR. JACOBS:  We briefed 20, your Honor and that's one

7  of our top three.  There's potential for uncertainty about what

8  the intent of 20 was.

9           There is uncertainty on our side about what the

10 intent of 20 is because, literally, it says the names of files

11 or packages and there are a lot of names that are at issue and

12 we didn't want to have -- we didn't want to -- we could live

13 with -- our chart and our brief that shows the empty hierarchy

14 is not as empty with just files or names -- with just files or

15 packages, but the selection of names for packages is part of

16 the selection --

17          THE COURT:  Well, I think I'm willing to put in this

18 language that you requested.

19          "While individual names are not protectable on a

20      stand-alone basis, the names are protectable as part

21      of the Structure, Sequence and Organization of the 37

22      API packages."

23          That's what you requested.  Any objection to that?

24          MR. KWUN:  Your Honor, I don't think it's that the

25 names are protectable.  It's that the selection -- that the

1  Structure, Sequence and Organization of the names are

2  protectable.   The names were never protectable.

3           MR. JACOBS:  I think the Court said it well.

4           "Names are protectable as part of the Structure,

5        Sequence and Organization of the 37 packages."

6           MR. KWUN:  Your Honor, I think that just invites the

7  jury to read out the statement that names are not protectable.

8  I think that the point is that the structure -- the Structure,

9  Sequence and Organization is protectable and if you say that,

10 that says all that needs to be said.

11          THE COURT:  I'm going to go with this language that I

12 gave you because in the context of everything else, this

13 paragraph says -- I don't think it -- I think it makes both

14 points.

15          MR. BABER:  Your Honor, could I propose a slight

16 tweak to Mr. Jacobs's language that you're adopting?

17          THE COURT:  I will listen to you.  What is it?

18          MR. BABER:  To be, "While individual names are not

19 protectable..."  And I didn't catch exactly --

20          THE COURT:  On a stand-alone basis.

21          MR. BABER:  "...they may be considered as elements of

22 the overall SSO."

23          MR. JACOBS:  I think that's pretty weak, your Honor.

24 Who is the "may" directed to?  The jury now deciding

25 originality on the names?

```
 1              MR. BABER:  How about this?

 2         "While the individual names are not protectable

 3     on a stand-alone basis, it is the entire SSO, which

 4     includes the names, that..."

 5         Whatever you say prior, "are covered by the

 6 copyrights."

 7              MR. JACOBS:  I think given the focus in the previous

 8 sentences on the names, that is misdirected.

 9              THE COURT:  Mr. Baber, what was your --

10              MR. BABER:  While the individual names are not

11 protectable on a stand-alone basis, the entire SSO --

12              THE COURT:  No, no.  Your other suggestion.  Before

13 that.

14              MR. BABER:  Oh, before that?

15              THE COURT:  Something that Mr. Jacobs said was --

16              MR. BABER:  Yes.

17         "While individual names are not protectable on a

18     stand-alone basis, you may consider the fact that the

19     names are part of the SSO."

20              THE COURT:  No, that's -- that is too weak.

21              MR. BABER:  I don't remember what I said.

22         I think the point, your Honor, was that when you have

23 SSO, yeah, you may consider the names to be elements of the

24 overall SSO.

25              THE COURT:  How about:
```

2380

```
 1              "Names are a necessary part of Structure,
 2         Sequence and Organization."
 3         MR. JACOBS:  I think that the important point --
 4    since the previous sentences refer to "cannot be copyrighted,"
 5    we need to say -- and, actually, now that I look at it what
 6    really needs to be parallel.
 7              "Names cannot be copyrighted".  Maybe, "Names cannot
 8    be protected by copyright."  But in any case what we want to
 9    say in the sentence that we're urging is that as part of the
10    Structure, Sequence and Organization of the 37 packages, the
11    names are protected by copyright.  You're saying they're not in
12    one sentence.  We better say they are now that they may be.
13              (Brief pause.)
14         THE COURT:  Here is the answer.
15              "While individual names are not protectable on a
16         stand-alone basis, names must necessarily be used as
17         part of the SSO spelled out, and are to that extent
18         protected by copyright."
19         MR. JACOBS:  That's fine, your Honor.
20         MR. BABER:  I would suggest maybe just -- fine up til
21    the very end, "are to that extent protected as part of the
22    SSO."
23              In other words, not protected alone, only as part of
24    the SSO.
25         THE COURT:  I am saying, "to that extent."
```

```
 1              MR. BABER:  Okay.  That's fine.

 2              THE COURT:  "And to that extent protected by

 3   copyright."

 4              I'm going to go with what I came up with.

 5              MR. BABER:  That's still -- the point, your Honor, is

 6   that the names are never protected.  They may be protected as

 7   part of something -- as you know, it's the SSO that's

 8   protected.

 9              THE COURT:  You've got to use symbols in order to

10   have an SSO.  It won't work otherwise.

11              So if you have a bunch of blanks in there, Mr. Jacobs

12   is right, it can't work.

13              MR. BABER:  What about, "It's the overall SSO" --

14              MR. KWUN:  "Which can include names."

15              MR. BABER:  (Continuing) -- "which includes the

16   names."

17              THE COURT:  I like my phrasing.

18              "Names must necessarily be used as part of the

19       SSO and are to that extent protected by copyright."

20              This is the best we're going to be able to do unless

21   in my sleep -- sometimes I wake up at 1:00 a.m. with a better

22   idea.

23              (Laughter.)

24              THE COURT:  I think this is the best I can do on this

25   one.
```

1              Okay.  So where was that?

2          **MR. JACOBS:**  End of 20, your Honor.

3          **THE COURT:**  That was the end of 20.  Wait a minute.

4   Is that right?

5          **MR. KWUN:**  Yes, your Honor.

6          **THE COURT:**  Now I wanted this thing in here about

7   Java.  Nobody asked for this, but I can just see.  I know, I've

8   seen enough off-track reasoning.  I know what would happen.

9   They will go in there and say, Well, Java, that belongs to

10  Oracle and they use Java.  It's right there in that code.

11         **MR. BABER:**  Your Honor, could we put in the -- I

12  think that's a great point.

13             Can we put in the instructions that the parties are

14  in agreement -- I'm asking Oracle.

15             "The parties are in agreement that there is

16      nothing improper about the use of Java in the names

17      of the API elements written in the Java programming

18      language."

19             Or something along those lines.  There is no problem

20  with that.

21         **MR. JACOBS:**  I propose a simpler answer.

22         **THE COURT:**  Which is?

23         **MR. JACOBS:**  That:

24             "Although Java has been registered as a

25      trademark, there is no trademark claim in this

2383

```
 1        lawsuit.  The name Java cannot be copyrighted, nor

 2        can any other name whether one or two words or longer

 3        in length."

 4             And then we would go to your formulation.

 5             THE COURT:  All right.

 6             MR. BABER:  How about:

 7          "Anyone may use Java when referring to the

 8        language."

 9             MR. JACOBS:  We don't need to get into the law of

10   nominative, fair use, et cetera.

11             THE COURT:  I think we're okay.  I think Mr. Jacobs'

12   solution works.

13             Okay.  All right.  Anything more on 20?

14             MR. JACOBS:  No, your Honor.

15             THE COURT:  21.

16             MR. JACOBS:  Okay.  So we briefed this one, too.  And

17   perhaps I could read you what we would propose, just as a way

18   of teeing up the issue.

19          "With respect to the API documentation, Oracle

20        contends Google copied the Structure, Sequence and

21        Organization of the 37 API packages and the English

22        language comments into the documentation for the 37

23        API packages in Android."

24             And then we would continue with the next sentence.

25          "Google agrees that there are similarities in the
```

2384

```
 1        language, but pointing to differences as well, denies

 2        that its documentation is a copy of the Java

 3        documentation."

 4            I think we don't need to have "every Google argument"

 5    in here.  So we would delete the next sentence and then:

 6        "Google, again, asserts the statutory defense of

 7        fair use."

 8            And we would delete the last sentence.

 9        THE COURT:  Well, here is what I don't -- let me

10    first, what -- does Google, "yes" or "no"?

11        MR. KWUN:  No.

12        THE COURT:  Don't get into an argument yet.  You

13    don't go for that?

14        MR. KWUN:  No.

15        THE COURT:  Here is my concern.  The comments are

16    ordinary English prose.  It's true that they are in -- they are

17    in the -- like a word processing document, they are embedded in

18    the software, but it's just English.  It gets extracted.  And I

19    don't see that -- it has any SSO to it.  The SSO part comes

20    from the log that deals with computer programs.

21            So if we're going to deal with this as a literary

22    work, like an operating manual, don't we just look at the plain

23    language -- not the plain language, the English language.

24            Now, I know you have this argument about taxonomy and

25    the West code system, keynote system.
```

1          **MR. JACOBS:**  With substantial authority, your Honor,

2     for that proposition.

3          **THE COURT:**  Not in the Ninth Circuit.  Only just

4     *Easterbrook* in the Seventh Circuit.

5          **MR. BABER:**  May I --

6          **MR. JACOBS:**  I think one of the points we were

7     driving at in our brief is that this is not just any operating

8     manual.  This is an API document derived from a source code

9     and, in fact, the documentation represents the Structure,

10    Sequence and Organization of the source code.  That's how it

11    extracted.  That is the intent of the documentation.

12         And so the documentation as a -- as documentation for

13    a computer program should have the same scope of protection,

14    the same copyrightable material as the computer program.

15         **MR. BABER:**  Your Honor, if I may?

16         I think you're absolutely correct on this one and the

17    proof is this.  All of the proof they put in at trial of the

18    documentation, it was never anything hierarchical.  It was

19    those things from the website that looked like a book, looked

20    like a dictionary; words on the left, definitions on the right.

21         There was no SSO to those when you put all the

22    comments together.  It was just a bunch of English words in a

23    list.  And the -- and any SSO claim --

24         **MR. JACOBS:**  Your Honor --

25         **MR. BABER:**  (Continuing) -- on the documentation

1   would add nothing whatsoever to the SSO claim on the code.

2   Because it's -- if I understand what Mr. Jacobs is saying, if

3   he's saying, well, there's SSO to the comments because they are

4   embedded in the code, that's the same issue we're asking the

5   jury for in number one, which is the overall SSO.

6            But if you are extracting all the documentation,

7   which I understand your definition, that's what you're doing,

8   you're pulling all the documentation out and putting it in sort

9   of a separate pot and saying we'll treat this as a literary

10  work, then there is no SSO to that.

11           **MR. JACOBS:**  Your Honor, two things.  First, they are

12  both literary works under copyright.  Computer programs are in

13  the category literary work.

14           Secondly, I elicited the following testimony from

15  Mr. Lee.

16       **"QUESTION:** And the structure of the documentation is

17       identical; correct, sir?  And if you think of it as a

18       outline, the outline would match identically;

19       correct, sir?

20       **"ANSWER:** Yes.

21       **"QUESTION:** And that's because on the Android side

22       you're documenting the same Application Programming

23       Interfaces as were documented on the Java side;

24       correct, sir?

25       **"ANSWER:** Yes."

1        There was other testimony from both Dr. Mitchell and

2   others about the hierarchical structure of the elements of the

3   Application Programming Interface in the documentation.

4        **MR. KWUN:**   Your Honor, that's exactly -- the way

5   Mr. Jacobs just formulated the end is exactly what's going on,

6   whether the -- the documentation describes something that has

7   Structure, Sequence and Organization and it describes elements

8   that in the API have that Structure, Sequence and Organization.

9        And to allow them to argue this is part of their

10  documentation claim is -- raises all the problems about the

11  read before claim.   Raises -- and is -- raises 102(b) problems.

12  The document itself does not have Structure, Sequence and

13  Organization.

14       Also, your Honor, it seemed to me that part of -- I

15  don't know if this was your goal, but part of what your

16  instructions do is separate out the SSO question and the

17  English language question.   And by injecting SSO back into this

18  question it essentially, you know, muddies the two.

19       **THE COURT:**   That's what I was going to say, is

20  that -- what if the -- see, I could imagine some scenarios

21  that, as follows.

22       One scenario would be this.   The jury decides

23  that -- the jury decides that it was fair use to use the SSO.

24  Then the jury would then decide, well, based on that, it must

25  be fair use to use the manual.   English words.   They stand or

1    fall together.  If that were to happen -- let me back up.

2         Take that scenario and compare it with this.  I

3    actually think one scenario that could happen is that the jury

4    would decide that, yes, it was fair game to use the SSO, that

5    that was fair use, but that Google copied the text and that

6    is -- the text is infringing, but not the SSO.  That's one

7    scenario.

8         A similar scenario could be that the judge says the

9    SSO is a method of operation and therefore 102(b) knocks it out

10   as a copyright.  But even if that were to occur, you could

11   still have a -- the plain English words being so close that

12   they infringe.

13        So you are correct.  My thought was to separate the

14   item that I thought was the SSO argument from the traditional

15   argument because even if it's fair use to use the same taxonomy

16   or outline, it's not necessarily fair use to plagiarize

17   somebody else's manual.

18        So I'm not saying you did plagiarize it.  I'm just

19   saying a reasonable jury could come to that conclusion.  That's

20   the way I was thinking about this.  And for us to have -- put

21   the SSO back in, everything would then turn or fall on SSO.

22        **MR. KWUN:**  And, also, your Honor if there were a

23   plaintiff verdict on the documentation and then on the reserved

24   issue, we concluded that the SSO was not copyrightable, we

25   wouldn't know the meaning of the documentation.

1          **THE COURT:**  I'm going to leave it the way I have it.

2    Mr. Jacobs may convince other judges to the contrary, but it's

3    going to stay the way -- I think this way we will know what the

4    jury has decided and we will not know it without putting in

5    extra questions.

6          So it's going to say -- the SSO will not be part of

7    the plain English part.

8          **MR. KWUN:**  Your Honor, we would have two edits to 21

9    for clarity, which is, "You have the copyrighted Java work,

10   which" --

11         **THE COURT:**  Where is that?  I'm getting tired here.

12   You have to help me.

13         **MR. KWUN:**  Line 27.

14         **THE COURT:**  Yes, okay.

15         **MR. KWUN:**  We would request that you have "from

16   Version 1.4 or 5.0 of Java 2 Standard Edition."  That the

17   "Java" term --

18         **THE COURT:**  Can I say "registered copyrighted work"?

19         **MR. KWUN:**  "The registered copyrighted work," that

20   would be fine too, your Honor.

21         **THE COURT:**  All right then.

22         **MR. KWUN:**  And then on Page 13, Line 2.

23         **THE COURT:**  Wait.  "Registered copyrighted work."

24   I'm just going to take out the word "Java," okay.

25         All right.  Say where?

1          **MR. KWUN:**  And Page 13, Line 2, where you say, "the

2     Java documentation."  It's all Java documentation of something

3     related to Java.

4          So I would -- we would suggest that you either say

5     "the Oracle documentation," or "the Sun documentation," or "the

6     Java 2 Standard Edition documentation."  So let me make clear

7     that this is not a reference to Java documentation generally.

8          **THE COURT:**  I will just say, "denies that it's

9     documentation as a copy, period."

10          **MR. KWUN:**  That's fine, your Honor.

11          **MR. BABER:**  One last tweak, your Honor?

12          **THE COURT:**  Yes.

13          **MR. BABER:**  Line 1, it's also that, "There are

14     similarities in the language," and we don't want any confusion

15     with the Java programming language so maybe change "language"

16     to "wording."  "There are some similarities in the wording."

17          **THE COURT:**  Fine.

18          **MR. JACOBS:**  I'm sorry, your Honor.  I'm trying to

19     catch up to you.

20          **THE COURT:**  That's a good change.  It doesn't

21     prejudice anybody.  It makes things clearer.

22          All right.  Anything else on 21?

23          **MR. JACOBS:**  What would it say instead of

24     "similarities in the language."

25          **MR. KWUN:**  "In the wording."

2391

```
 1              MR. JACOBS:  We have no concern with that, your
 2    Honor.
 3              THE COURT:  21.
 4              (No response.)
 5              THE COURT:  22.
 6              MR. KWUN:  No objections, your Honor.
 7              MR. JACOBS:  I just thought that just a minor word
 8    suggests, your Honor.
 9              "I will now describe an additional list of
10         specific items that Oracle contends" --
11              THE COURT:  Wait a minute.  Here I've got the law as
12    diminimus.  All right.  I do place the burden of diminimus on
13    Oracle, right?
14              MR. KWUN:  Yes, your Honor.
15              THE COURT:  All right.  I'm going to leave that.  I
16    still think this is a fair statement.
17              All right.  22?  Anything more on 22?
18              MR. JACOBS:  I'm sorry.  Just let me -- on 22 -- I'm
19    missing the reference to the burden of proof, your Honor.
20              THE COURT:  Where is that?
21              MR. KWUN:  There isn't one.
22              MR. BABER:  It's later.
23              MR. JACOBS:  Okay.  So on 22 all we were proposing is
24    to change "a shorter" in Line 10 to "an additional list."
25              MR. BABER:  How about just "a list"?  "I will now
```

1  describe a list of specific items."

2          **THE COURT:**  Fine.  "Shorter" comes out.

3          **MR. JACOBS:**  That's a little confusing because in the

4  previous paragraph of the instructions is about documentation

5  where --

6          **MR. BABER:**  There is no list.

7          **THE COURT:**  I'm just going to say "list."

8          All right.  23.

9          (No response.)

10         **THE COURT:**  24.  Ownership.  This is where you were

11  going to be good lawyers and come up with the right answer.

12         **MR. JACOBS:**  I have asked Google's counsel where they

13  are on ownership in light of this morning's proceedings.  I

14  think Google is still considering where they are on ownership

15  in light of this morning's proceedings.

16         **MR. BABER:**  I don't know, your Honor, that there is

17  any ownership issue for the jury.  And I wonder if you can just

18  say something like:

19         "Now we will turn to the more detailed law."

20          Something like:

21         "The only issue for you to decide with respect to

22      infringement" --

23          What I'm trying to distinguish is there is, I don't

24  think, a fact question about ownership.  There may be some

25  legal questions that you have to address later based on the

```
1   evidence that was adduced this morning, but the issue of what

2   that covers as a matter of law, I don't think there is any jury

3   issue and it would be hopelessly complicated to try and explain

4   it to the jury.

5           So I don't see a jury issue --

6           THE COURT:  Look, you may be right that there is some

7   issue for me.  And don't treat this transcript as me agreeing

8   that there is.  I don't know.  I'm not saying "yes" or "no" to

9   that.

10          But if I hear you right, then we don't need

11  Paragraph 24.  We can just go with No. 23.

12          MR. BABER:  That's correct, your Honor.

13          And I actually don't know if we need 23 either, to

14  tell you the truth.  Since -- since there is no issue of

15  originality and there is no issue of ownership, all the jury

16  really needs to decide is substantial similarity.

17          THE COURT:  Well, why don't I say that Oracle's work

18  is original and the owner -- and owner.  And then say:

19          "These, for your purposes the parties agree that

20      these points have been proven."

21          How is that?

22          MR. BABER:  I strongly prefer, for the same reasons

23  we briefed, the "assume" articulation.  You know, "You may

24  assume that these have been established for purposes of your

25  deliberations," or "They are not disputed," or something.
```

```
 1          THE COURT:  I will say "established, but not proven."
 2          MR. BABER:  Okay.
 3          THE COURT:  But just between us and for all other
 4   purposes it will be recognized, out of the presence of the
 5   jury, that you may have some legal issue that you want to raise
 6   later and I will consider that, but I don't recognize what it
 7   is.  I'm not saying you're wrong.  That would be for another
 8   day.
 9          MR. BABER:  And do we want to be clear, your Honor,
10   and say to the jury, you know, what you just wrote, that, you
11   know, you may consider this.
12          "There are no issues of originality or ownership
13      for you, the jury, to decide."
14          MR. JACOBS:  I prefer that formulation, your Honor.
15          THE COURT:  Say it.  All right.  "The parties agree
16   that" --
17          MR. BABER:  "...there are no issues of ownership or
18   originality for you, the jury, to decide."
19          THE COURT:  Okay.
20          MR. BABER:  And then the last thing you need to do,
21   your Honor, just so it's complete, is Paragraph 23.  And it
22   will make the transition good.  23 will say:
23          "Now I will turn to the more detailed law.  In
24      order to prove infringement, Oracle must prove by a
25      preponderance of the evidence that Oracle's work is
```

1          original, that it is the owner of the part of the

2          work allegedly copied, and that Google has infringed

3          Oracle's copyright."

4              **THE COURT:**  Well, I see your point.  I've got a

5    better way to do it.  I'm going to say that they must prove

6    that it is the owner original, blah blah blah, allegedly copied

7    and then say that the parties agree these are not issues for,

8    for you to decide.

9              Then I'm going to say -- where 25 is, I will delete

10   "to prove infringement."  I will say, "Oracle must also prove

11   that Google copied."

12             How is that?

13             **MR. BABER:**  In the transition, that's fine.  The

14   substance is not fine of the rest of the sentence.

15             **THE COURT:**  What sentence?

16             **MR. BABER:**  Well, the sentence says, to prove

17   infringement they just need to show copying all our protected

18   part.  Your Honor, that is not an infringement test.

19             **THE COURT:**  I see your point.  All right.  How about

20   "must first prove"?

21             **MR. BABER:**  "Must first prove ownership,

22   originality."

23             **THE COURT:**  Say, "In order to prove infringement

24   Oracle must first prove by," blah blah blah.  And then say,

25   "These point are not for you.  The parties agree."  Then go on

1    to say, "and Oracle must also prove."

2              All right?

3              **MR. BABER:**  That will work, your Honor, as long as we

4    get the rest of the paragraph right.

5              **THE COURT:**  All right.  Well, I think we will.  I

6    think the intent -- I understand the intent.

7              Okay.  All right.  Anything on 25?

8              **MR. BABER:**  Yes, your Honor.  Yes, your Honor.

9              **THE COURT:**  What's that.

10             **MR. BABER:**  Paragraph 25 as written basically equates

11   "copying" with "infringement."  And we briefed a couple of

12   times the law, you know, from the Supreme Court on down, not

13   all copying is infringement.

14             So we think this whole question should be recast in

15   terms of Oracle must also prove that Google infringed the --

16   its copyrights.  You don't infringe a part.  They have to prove

17   that we infringed their copyright rights.

18             And there are two ways to prove infringement.  One is

19   by proof of direct copying.  The other is to show -- I'm sorry.

20   I take it back.  I don't have this prewritten, and Mr. Kwun may

21   have to help me, but the notion is that the test of

22   infringement is substantial similarity, not whether there's any

23   copying at all.  And that's where this, I think, sort of gets

24   off track.

25             **THE COURT:**  The law is -- the Ninth Circuit itself

 1  has said that you don't even need to get into substantial

 2  similarity if there is direct copy.

 3       **MR. BABER:**  Your Honor, I think in the cases we cited

 4  last week, the Ninth Circuit, like all the others, said that

 5  you've got to show substantial similarity.

 6       The diminimus cases all say --

 7       **THE COURT:**  It's identical.

 8       **MR. BABER:**  It is.  It's identical copying.  And

 9  that's -- but it still has to result in a finding that there is

10  enough that the two works, whatever you define to be works as a

11  whole at the end of the day, there has to be enough similarity

12  to support a finding of infringement, which is substantial

13  similarity comparing A to B, whatever you choose A and B to be,

14  but they end of the day what has to be proven is substantial

15  similarity between the two of them.

16       **MR. JACOBS:**  We disagree that that's the right way to

17  think about this.  Where there is copying and there is no claim

18  that the copying is excused or of unprotectable elements, then

19  you're done.

20       If the claim is that the copying is excused, then you

21  show the excuse.

22       If the claim is that you didn't copy protectable

23  elements, the claim is that you didn't misappropriate protected

24  expression.  So there's copying and misappropriation of

25  protected expression is the right way to think about it in this

```
 1   context.

 2           And in that context, I don't think you really need to

 3   get the jury involved in this misappropriation of protected

 4   expression issue because we have an admission of copying and

 5   you're deciding what's protected and what's not.  So the

 6   substantial similarity test is in a different -- is a component

 7   of access in substantial similarity, which is part of proving

 8   copying; but as your question indicated, there is no question

 9   of copying here.  So there is no question of substantial

10   similarity.

11           THE COURT:  On the documentation there's a question.

12           MR. JACOBS:  That -- I'm sorry.  I was distinguishing

13   the -- the -- you're right.  Another way -- but you could say

14   it the same way.  There is actually no question of copying the

15   documentation so much of it is identical.

16           What there is a question of whether the protected

17   expression in the English language text, now that you've teed

18   it up that way, was misappropriated and you would use -- given

19   the way you're teeing it up -- the virtual identity test for

20   that.

21           THE COURT:  I like the way I've got it.  "Oracle must

22   prove Google copied."  So I'm going to leave that as it is.

23   Your point is preserved for appeal.

24           All right.

25           MR. KWUN:  Two typographical errors, your Honor.
```

1       THE COURT:  Yes.

2       MR. KWUN:  On Page 14, Line 5, between "copyrighted

3  work" there should be the word "the."

4       THE COURT:  Yes.

5       MR. KWUN:  And on Line 10, same page, end of the

6  line, it should be "such comparisons," plural.

7       THE COURT:  I'm sorry.  I didn't catch the second

8  one.

9       MR. KWUN:  Line 10 on the same page, the last word

10  should be plural.

11       THE COURT:  Okay.

12       MR. JACOBS:  So just to be clear, your Honor, we

13  object to the this instruction 25 on the basis of the virtual

14  identity test.

15       And I -- we're also concerned that "though use of

16  literary work" at Line 8 is going to be confusing to the jury,

17  the Court is telling the jury its substantial similarity tests

18  and to start comparing it to a work of literature, which, I

19  think, is what they'll think of.  When they read "literary

20  work," will confuse them.

21       THE COURT:  Look, I'm trying to explain to them why

22  we even have a tighter test and a looser test.  And the concept

23  is that when you're talking about a narrow technical subject,

24  you don't have much latitude.  You've got to use certain words.

25  But if this was Moby Dick, you would have more words to use.

2400

```
 1        MR. JACOBS:  Maybe just suggest -- I would suggest

 2  take out "literary."  "This is in contrast to a work in which

 3  there will be a broad range of creativity."

 4        THE COURT:  How about this?  Take out "literary" and

 5  put in "fictional work."

 6        MR. JACOBS:  I think what's problematic here is we

 7  have a lot of testimony from both sides on how much creativity

 8  is involved in expressing an Application Programming Interface

 9  including it's Structure, Sequence and Organization.

10        THE COURT:  But that's why on SSO you get the benefit

11  of substantial similarity.  But when we're talking about just

12  the operating manual, in my mind when you're trying to explain

13  how the cosign method works, there are probably only 50 words

14  in the whole English language that would come to mind to

15  describe that.  Less.  12 words.  So to my mind these operating

16  manuals are highly cabined by the narrow subject matter.

17        The creativity -- I agree with you.  The creativity

18  is in that, in the broad outline to begin with.  But that's the

19  SSO part.  And you're getting the benefit of the broader test

20  on that.  Right?

21        MR. JACOBS:  I'm just concerned with "literary" or

22  "fictional," that the jury will start -- will focus less on the

23  specific instructions here and start thinking about other areas

24  of copyright law.

25        THE COURT:  Well, I don't think so.
```

2401

```
 1              All right.  Anything else on this one?

 2          MR. JACOBS:  The -- especially I think now on the

 3  documentation, we probably need more of an instruction on what

 4  "access" means.  "Access" is an opportunity to view, and I

 5  don't think we have explained "access."

 6          THE COURT:  I don't think it needs to be explained.

 7  Isn't there proof in the record that they had the -- they had

 8  the operating manual right there in the clean room?

 9          MR. JACOBS:  Yes, your Honor.

10          THE COURT:  That's access.  I don't think we have to

11  explain that word.

12              All right.  25 I've made a few minor changes, but it

13  basically stays the same.

14              And now we have the follow-on one on objective

15  subjective.  The ideal answer that I would like to hear is you

16  both agreed we don't even need to get into it.

17          MR. JACOBS:  Your Honor, we would agree with that,

18  your Honor.

19          MR. KWUN:  Your Honor we would request a short

20  statement.  It doesn't actually have to go into a lengthy

21  explanation of the extrinsic and intrinsic test.

22          THE COURT:  All right.  Let me hear it.

23          MR. KWUN:  It's three sentences:

24          "To determine whether the copyrighted work and

25      the accused work are substantially similar, or if
```

1        appropriate virtually identical, you must compare the

2        works as a whole."

3             Second sentence, and perhaps a new paragraph.

4        "However, in comparing the works as a whole, you

5        cannot consider similarity to unprotectable elements

6        of Oracle's works."

7             And then if you want to give them a bit of a guidance

8   on where that is mentioned in the instructions, you could have

9   this third sentence.

10        "I have instructed you about the protectable and

11        unprotectable elements of Oracle's works in

12        instructions 17, 19 and 20."

13             THE COURT:  Let me see that.

14             (Whereupon, document was tendered

15              to the Court.)

16             MR. KWUN:  It's scribbled.

17             THE COURT:  Do you have any heartburn over there,

18   Mr. Jacobs?  The only thing I would change -- if this is

19   okay -- is I don't like to call out other instruction numbers

20   because as they change --

21             MR. KWUN:  Yes, your Honor.  We could either leave

22   out the third sentence or say, "I have previously instructed

23   you on."

24             THE COURT:  How does that sound, Mr. Jacobs?

25             MR. JACOBS:  I think that's confusing and unhelpful,

2403

1   your Honor.  I think if -- the previous instruction makes it

2   clear that they are supposed to -- what test they are supposed

3   to apply and what the expression as to Structure, Sequence and

4   Organization for the program is.

5          So to now tell them, "Oh, whatever I just told you,

6   do something else is," is -- it's confusing and unnecessary,

7   really very separate from are the extrinsic/intrinsic or

8   objective/subjective question and not directed at meeting the

9   decisions that recite that standard.

10         **MR. KWUN:**  Your Honor, the previous instruction

11  explains for which classes you should use "virtual identity"

12  and for which you should use "substantial similarity," but it

13  doesn't tell the jury what they are supposed to do with those

14  tests, and that was our aim with this instruction, instruction

15  26.  And it's drawn from *Apple v Microsoft*.

16         **THE COURT:**  All right.  I like this.  I think it's --

17  I want to cover the *Apple*.  I think the Court of Appeals would

18  be possibly upset if I didn't cover the *Apple* point, and this

19  does cover it.  And it's very short and straight to the point

20  and I think it's a correct statement.

21         **MR. JACOBS:**  We object, your Honor.

22         **THE COURT:**  All right.  Your objection is noted.

23  This will go as Paragraph 26.

24         **MR. BABER:**  Your Honor, I just noticed two typos back

25  in 25, if you want to catch them.

2404

```
 1          In Line 5 towards the end "virtual identity between
 2   the copyrighted work."
 3          MR. KWUN:  Got that.
 4          MR. BABER:  The end of Line 10 --
 5          MR. KWUN:  Got that one, too.
 6          MR. BABER:  I was asleep, your Honor.  I apologize.
 7          THE COURT:  Mr. Baber, what planet have you been on
 8   the last...
 9          (Laughter.)
10          THE COURT:  Okay.  All right.  Now we're up to 27.
11          MR. JACOBS:  Just a typo, your Honor.  We propose to
12   delete in the second sentence at Line 19 "a" to just start with
13   "copying."
14          THE COURT:  Got it.
15          MR. JACOBS:  And this is, I think, different from the
16   verdict form, so I just wanted to be sure this was the Court's
17   intention.
18          ""The burden is on Oracle to prove that the
19       copied material" --
20          THE COURT:  Well, I have been going back and forth on
21   that in my own mind.  And my law clerk tells me that the best
22   view of the law is that, while, it's not 100 percent clear, is
23   that the burden is on the plaintiff.
24          MR. JACOBS:  So we object, your Honor.
25          THE COURT:  All right.  That's fine.  I don't blame
```

```
 1   you.  And it's not a hundred percent clear.  It's just our best

 2   view of what the Ninth Circuit law is.

 3         Okay.  28.

 4         MR. KWUN:  Your Honor, one other thing.  Just that

 5   the language on not actionable, I think that actually does

 6   appear in the cases, but I think it would be more jury friendly

 7   to say "not infringing."  They are not going to necessarily be

 8   familiar with the term "actionable."

 9         MR. JACOBS:  No objection, your Honor.

10         THE COURT:  All right.  That's a good change.

11         All right.  What else?

12         MR. JACOBS:  That brings us to fair use, and both of

13   us briefed the fair use instruction.

14         THE COURT:  My law clerk will now hand out -- let's

15   go ahead and hand out --

16         LAW CLERK:  I didn't realize you wanted me to have

17   that.

18         THE COURT:  Do you have your copy?

19         LAW CLERK:  No, I do not.  Do you want me to get a

20   copy?

21         THE COURT:  Run get a couple of copies of that thing

22   that we worked up.

23         LAW CLERK:  Okay.

24         THE COURT:  I basically took all of your changes that

25   you wanted.  I think I have 90 percent of what each of you want
```

1    in and, therefore, you should both be 90 percent happy.

2            MR. KWUN:  As long as it's the right 90 percent, your

3    Honor.

4            THE COURT:  And you'll see it in just a moment.

5            MR. KWUN:  Your Honor, while we're waiting, do you

6    want to move on to 29?  We have a short simple point on 29.

7            THE COURT:  All right.  Let's go to 29.

8            MR. KWUN:  On 29, "Google admits that the accused"

9    line.  We would request and change it to "does not contest."

10           Dr. Bloch, when he testified, for example, said he

11   didn't remember whether or not he had copies of these, but he

12   was willing to believe that he did.

13           THE COURT:  I will change it to "agrees," to

14   "agrees."  But I think you have admitted that.  And the

15   witnesses did.  And you're going to admit it.  I think you even

16   admitted it in your opening.  So I'm going to say "agrees."

17           All right?

18           MR. JACOBS:  Yes, your Honor.

19           MR. BABER:  I think that's all right.

20           MR. KWUN:  Yes, your Honor.

21           THE COURT:  All right.  How about the -- okay.

22           My law clerk is going to hand out a revised 28.

23           (Whereupon document was tendered

24            to counsel.)

25           MR. JACOBS:  Can we have a moment, your Honor?

```
 1              THE COURT:  Yes, sure.

 2              Do we have the bolded stuff in there.

 3              LAW CLERK:  No, I didn't give them the bolded --

 4              THE COURT:  My copy had some bolding in there.  If

 5   you take a moment.

 6          (Brief pause.)

 7              THE COURT:  Okay.  I've given you four or five

 8   minutes.   Comments?

 9              MR. KWUN:  Your Honor, consistent with one of your

10   earlier instructions, we would suggest that the "public" in the

11   second sentence be changed to "anyone."

12              THE COURT:  All right.

13              MR. KWUN:  And a couple typos.  In the first

14   paragraph, last sentence, it should be "commercial use cuts

15   against fair use."

16              THE COURT:  Yes.

17              MR. KWUN:  And the second factor at the end of the

18   first line should be "whether the work is creative."

19              THE COURT:  Where?

20              MR. BABER:  Second factor, your Honor.

21              MR. KWUN:  End of first line of the second factor,

22   "the work is."

23              THE COURT:  "Whether the work is creative"?

24              MR. KWUN:  Yes.

25              THE COURT:  All right.  I see that point.  That's all
```

2408

1    your complaints.

2           **MR. KWUN:**  It was the right 90 percent, your Honor.

3           **THE COURT:**  Okay.  How about the plaintiff?

4           **MR. JACOBS:**  So, your Honor, we're going to be moving

5    for judgment on this claim.  Under the decisional law, it's

6    quite apparent to us that notwithstanding the law -- the mixed

7    law, the fact, nature of fair use, Google's use is not fair.

8           With that in mind, the elements of this instruction

9    that are particularly problematic from the standpoint of

10   declaring the law for the jury is whether the work is

11   transformative.  Under the law there is no possible way what

12   Google did -- that is, taking someone else's code and putting

13   it into free code for use on platforms -- could be considered

14   transformative.

15          So including "transformative" in these instructions

16   is -- we object to.

17          "Commercial does cut against fair use while

18      transformative use supports fair use."

19          Again, is the same -- is the same point.  We object

20   to that sentence.

21          We also object to "functional" being included in two.

22   There are cases that, I think, are what the Court had in mind

23   when referring to "functional," but this case is not those.

24   And the functional use cases talk about a very narrow

25   situation.  That is not the situation here.

2409

1          So the inclusion of "functional" on two we believe is

2     contrary to law in view of the undisputed facts here.

3          And then No. 5:

4          "You may consider additional factors you believe

5           are appropriate."

6          We think gives the jury too much freedom to decide

7     what is a -- what is the, quote, right, unquote, thing to do

8     here in their view.  And, in fact, looking at the decisional

9     law on fair use, the range of discretion for the factor finder

10    is quite narrow.  Many, many cases hold the fair use question

11    as a matter of law.

12          **THE COURT:**  Are you saying it's never a jury

13    question?

14          **MR. JACOBS:**  No.  It's not never.  But when the facts

15    are as the facts are here, it is not an unbounded decision.

16    And, in fact, the cases on fair use repeatedly recite that

17    while the statute has this certain quality to it, discretion is

18    quite limited.  And case after case holds against a defendant

19    arguing fair use.  The Ninth Circuit itself is quite rigorous

20    in patrolling fair use claims.  So, we object to No. 5.

21          "And then it is up to you to decide how much weight,"

22    similarly is contrary to law.  The Supreme Court has said that

23    if you're commercial, then there's a presumption that you're

24    going to have an effect on the potential market for a value of

25    the work.  Some factors are more equal than others.  So I

2410

1   understand what the Court was trying to do here.  I do need to

2   note our objections on these points.

3           **THE COURT:**  Isn't there --

4           **MR. JACOBS:**  Sorry, one more.

5           **THE COURT:**  Isn't there law on No. 5?  Isn't there

6   law that says this is not an exhaustive list?

7           **MR. KWUN:**  Your Honor, it's right in the statute.

8   It's certainly in cases as well, but it's right in the statute.

9           **MR. JACOBS:**  The statute also starts off, though,

10  your Honor, with the kinds of uses that fair use is typically

11  found in.  And so it's in that context, with that predicate

12  that that statement is made.

13          **MR. KWUN:**  Your Honor, the list of types of fair uses

14  in the statute is not intended to say that these are the only

15  types of things that are fair use.  It's merely examples.  And

16  the cases find fair use, for example, for copying the entirety

17  of the computer work in order to reverse engineer the

18  functional elements in a -- say, to the accolade and *Sony v*

19  *Connectix* pretty clearly shows that the fair use cannot be

20  cabined to the -- the examples listed in the statute.

21          **THE COURT:**  Where does the statute say other factors?

22          **MR. BABER:**  It's right above the numbered one your,

23  Honor.  It says:

24          "In determining whether the use made of a work in

25      any particular case is a fair use, the factors to be

1        considered shall include."

2             **THE COURT:**  So you're putting a lot of weight on the

3   word "include."

4             **MR. BABER:**  Yes, your Honor.  And the courts have

5   said it's not an exhaustive list.  It is not intended to limit

6   the inquiry to just the four factors.

7             **MR. JACOBS:**  Your Honor, *Harper and Row* says:

8             "Fair use when properly applied is limited to

9             copying by others which does not materially impair

10            the marketability of the work which is copied."

11             Sony says -- these are Supreme Court decisions:

12            "A challenge to a non-commercial use of a

13            copyrighted work requires proof either that the

14            particular use is harmful or that, if it should

15            become widespread, it would adversely affect the

16            potential market for the copyrighted work.  If the

17            intended use is for commercial gain, that likelihood

18            [of market harm] bracket may be presumed."

19             That's Sony Corp. --

20             **THE COURT:**  What was that first phrase you gave me

21   about *Harper*?

22             **MR. JACOBS:**  *Harper* was:

23            "Fair use when properly applied as limited to

24            copying by others which does not materially impair

25            the marketability of the work which is copied."

```
 1         That's 471 U.S. 539 at 566-67.

 2              And then Sony, and later cases including Napster in

 3    the Ninth Circuit, and Leadsinger in the Ninth Circuit.

 4              So Napster 239 F.3d 1004, 1016 recites this

 5    presumption that if it's a commercial --

 6              "If the intended use is for a commercial gain,

 7         the likelihood of market harm may be presumed."

 8              And then Leadsinger says -- Leadsinger was an

 9    interesting case.  It was a karaoke case in which the music,

10    lyrics, were applied to a karaoke display system.  That's 512

11    F.3d 522.  Leadsinger at 532 said:

12              "We have not hesitated to apply this

13         presumption."

14               So it's not unbounded.  Particularly where we have a

15    commercial use and particularly where the -- yeah, particularly

16    where there is a commercial use.  Market impairment is presumed

17    and they then have to turn around and rebut it.

18               So they've got a very uphill battle here and these

19    instructions make it quite open ended.

20         MR. BABER:  Your Honor, two points.

21              First on the just the issue of statutory use of

22    "including."  17 USC Section 101, which is the definition

23    section of the Copyright Act says:

24              "The terms 'including' and 'such as' are

25         illustrative and not limited."
```

2413

```
 1              And, your Honor, the presumption that Mr. Jacobs is

 2   talking about if it's commercial, it should be presumed not to

 3   be fair.  The Supreme Court did away with that in *Campbell*

 4   *versus Acuff-Rose,* 1994.

 5          "If indeed commerciality had a presumptive force

 6       against a finding of fairness, the presumption would

 7       swallow nearly all of the illustrative uses listed in

 8       the preamble paragraph of Section 107, including news

 9       reporting, comment, criticism, teaching, scholarship

10       and research since these activities are generally

11       conducted for profit in this county.

12          "Congress could not have intended such a rule,

13       which certainly is not inferable from the common law

14       cases arising, as they did, from the world of letters

15       in which Samuel Johnson could pronounce that 'no man

16       but a block head ever wrote except for money.'"

17          "Sony itself called for no evidentiary part,

18       evidentiary presumption.  There we have emphasize the

19       need for a sensitive balancing of interests noting

20       that Congress had eschewed a rigid bright line

21       approach to fair use."

22          **MR. JACOBS:**  Your Honor, it is -- that is a correct

23   recitation of *Acuff-Rose,* which was a parity case; pretty

24   woman, a pretty woman parity case.

25          **THE COURT:**  Yes, I remember the case.
```

2414

 1          **MR. JACOBS:**  But the Ninth Circuit has reaffirmed the

 2    viability of the presumption.  The *Leadsinger* case that I

 3    mentioned -- or *Leadsinger*, I guess -- is a 2008 case.  It's

 4    actually granting a motion to dismiss.  And it cites the *Matel*

 5    case, which cites *Harper and Row Publishers*.

 6          So, and in the Ninth Circuit the law on the

 7    presumption is, as I read from the -- as I read the

 8    presumption, is alive and well.

 9          **THE COURT:**  All right.  I will think about your

10    objections.  I'm not going to give you a ruling right now.

11    You'll just have to wait and open the envelope when it comes.

12          **MR. JACOBS:**  Thank you, your Honor.  Thank you for

13    listening.

14          **THE COURT:**  All right.  So that's 28.

15          How about 29?

16          **MR. JACOBS:**  Give me a minute, your Honor, to get

17    reorganized here.

18          **THE COURT:**  We have already done 29.

19          30.

20          **MR. JACOBS:**  So now in 30 that we have receded from

21    our package-by-package determination, we can simplify from

22    Lines 15 to 21 and delete -- yes, delete "for purposes of the

23    first two subquestions," all the way down in line --

24          **THE COURT:**  20.

25          **MR. JACOBS:**  (Continuing) -- 20 "for that individual

1   API package."

2          So just to be clear, we'll be doing, "The test for

3   infringement on both the documentation and the code for the 37

4   packages," and not package-by-package even as to the

5   documentation.  That was the topic I had noted this morning.

6          **MR. BABER:**  But then don't we have to say, "For

7   purposes of questions numbers one and two?"  Because one is the

8   SSO and two is the documentation.

9          **THE COURT:**  So it will be a parallel.  Parallel

10  number two.

11         **MR. JACOBS:**  Yes.  Mr. Baber is correct.

12         **THE COURT:**  I will just make a note to do that.  All

13  right.

14         **MR. BABER:**  And, your Honor, just so the jury knows

15  what they are supposed to be comparing, can we say it has to be

16  compared with all of the 166 API packages, not just the 37?

17         **THE COURT:**  No.  Too argumentative.

18         **MR. BABER:**  Okay.  And, your Honor, we do continue to

19  object to the work as a whole being something less than the

20  entire registered work.

21         What I'm concerned about especially, however, is your

22  Honor telling the jury that work as a whole means different

23  things for different bases of their infringement claim.  They

24  are making a claim that we infringed their copyright.  There is

25  one copyright.  They have advanced several theories as to how

1  we infringed that copyright, but now you're telling the jury,

2  Well, based on which part of their infringement theory you're

3  looking at, it's infringement of a different work.

4        So I think we're fine with 166 API packages, all

5  their Java packages, but we think that same work as a whole --

6  make it easier for the jury.  They will have one work as a

7  whole that applies across the board.  We think once you have

8  decided to carve out a smaller work from the whole work, that

9  should apply.

10        **THE COURT:**  We all agree -- are you complaining now

11  about the 12 code files?  Is that what you're getting at?

12        **MR. BABER:**  That would be question three, your Honor,

13  yes.

14        **THE COURT:**  Why don't you both just stipulate?  Come

15  on.  You could make it simpler for the jury.  We'll take the

16  166 packages as -- in their entirety as the work as a whole.

17        **MR. JACOBS:**  The code files --

18        **THE COURT:**  For all purposes the comparative

19  benchmark will be work as a whole equals 166.

20        **MR. BABER:**  I think that works, your Honor.

21        **MR. JACOBS:**  We endorse the decision you made so far

22  in part because those files aren't necessarily in the 166.

23        **THE COURT:**  I thought they were.

24        **MR. JACOBS:**  Only rangeCheck, your Honor.

25        **THE COURT:**  That's in the 37.  I'm talking about the

1   166.

2           **MR. JACOBS:**  I don't believe they are in the --

3           **MR. KWUN:**  Your Honor, the issue is that the test

4   files aren't part of an implementation of any package.

5           **MR. BABER:**  No, no.  But it's where they are in Java

6   that counts, not where they are in Android.  In Java they are

7   in a securities slash something -- I don't know.

8           **MR. KWUN:**  Two of the files are not in the 166 in

9   Java.  Two of the files -- the file from which comments appear

10  are in a -- well, they are in a different namespace.  They are

11  not in the Java namespace.  They are in the Sun.something

12  namespace.

13          **MR. PETERS:**  Excuse me.  I think it's backwards.  The

14  A files that were copied were in the Sun namespace.  The files

15  that --

16          (Court reporter interruption.)

17          **THE COURT:**  The court reporter just can't hear you.

18  Say your name, and repeat that.

19          **MR. PETERS:**  I apologize to everyone.  My name is

20  Mark Peters.

21          I just wanted to comment that the eight decompiled

22  files were decompiled in the Sun product.  They were in the Sun

23  namespace rather than the Java namespace, so they are not part

24  of the 166 API packages.

25          The two files from which comments were taken were

2418

1  taken or copied from files in the Java namespace in the Sun

2  product, but were not in the Java namespace in Android.

3         **THE COURT:**  I'm going to leave it just as I had it

4  "in the same file."

5         **MR. BABER:**  Okay.

6         **THE COURT:**  Because I didn't realize.  I thought they

7  were at least within the 166.

8         **MR. BABER:**  I forgot that as well, your Honor.

9         **THE COURT:**  Huh?

10        **MR. BABER:**  I said, I had forgotten that as well.

11        **THE COURT:**  All right.  So, number one and two will

12  be the 166, "all the API packages."  But number three is the

13  same.

14        **MR. KWUN:**  Your Honor, just for the record, we do

15  object to that formulation and we continue to -- our objection

16  is to anything less than J2SE as a whole.

17        **THE COURT:**  That point is preserved for appeal.

18        All right No. 31.

19        **MR. KWUN:**  Your Honor, I believe that 31 is a license

20  instruction, instruction of a license defense.  We -- although

21  we asserted a license defense in our answer, in the final

22  pretrial order we omitted -- we intentionally omitted the

23  license defense.  I think that 31 can be deleted.

24        **MR. JACOBS:**  Actually, your Honor, I think that 31 is

25  important.  We would propose that it be made a little more

```
 1   specific to the facts of the case, and that reference be made

 2   to Apache Harmony --

 3        THE COURT:  I'm not going to do that.  That's arguing

 4   your case for you.

 5        But that is one of the reasons I have this in here,

 6   is of the danger that the jury will not understand how

 7   licensing works and they will somehow think that there has been

 8   a license via Apache.

 9        But I don't want to call out Apache by name.  You'll

10   have to argue that point.

11        MR. JACOBS:  Is there a way to take advantage,

12   though, of Google's concession that there is no license defense

13   here and inform the jury of that, rather than leave it as the

14   burden is on Google to prove that it had any such license or

15   sublicense rights?

16        THE COURT:  Well, how about this as a compromise?  We

17   take 31 out all together and say:

18        "Google makes no claim that it acquired any

19      license from anybody to use any of the copyrighted

20      works."

21        MR. KWUN:  Your Honor, I think that that's probably

22   an incorrect statement because we do contend that we have a

23   license from Apache.  So we do have a license to the

24   copyright -- well, to the works, to the code that we use --

25        THE COURT:  That's a license defense.
```

```
 1           MR. KWUN:  No, but we don't intend that that's a
 2   defense in this case.  It's just not true that we don't have a
 3   license.
 4           MR. BABER:  Your Honor, we have a -- we have a
 5   license under the Harmony license, but the reason why we could
 6   use the SSO is because that's unprotectable.  We don't need a
 7   license to the SSO.
 8           THE COURT:  Well, I'm saying to the jury that you do.
 9           MR. BABER:  I understand.
10           THE COURT:  So for purposes of what the jury has got
11   to decide --
12           MR. BABER:  If you tell the jury we agree we don't
13   have a license and you tell them the SSO is copyrightable, then
14   they have to find infringement in effect.
15           THE COURT:  They can find --
16           MR. KWUN:  The bigger problem, your Honor, is we
17   offered testimony that we do have a license and if you say that
18   we now say that we don't have a license, then it sounds like
19   we --
20           THE COURT:  You can say:
21           "Google agrees it does not have any license which
22        covers the copyrighted work."
23           How is that?
24           MR. KWUN:  But if --
25           MR. BABER:  Licensed from Sun.
```

2421

1          **MR. KWUN:**  What if we said we agree that we do not

2   have an express license from Sun.  We do have an implied

3   license defense.

4          **THE COURT:**  No.  I thought you said you gave up all

5   your license defenses.

6          **MR. KWUN:**  We -- we don't have a license defense,

7   which is -- we do have an implied license defense, which is an

8   equitable defense.

9          **THE COURT:**  Well, that's for the judge.

10          **MR. KWUN:**  Right.

11          **THE COURT:**  But for purposes of the jury, why don't

12   you say:

13          "Google agrees that it has no license that would

14      allow it to use any of the copyrighted works."

15          **MR. KWUN:**  Well, your Honor, can we just remove the

16   license discussion here and instead have an instruction

17   saying -- I mean, I believe there was actually one that both

18   parties had that was pretty similar that -- I'm trying to

19   remember what it was in the original briefing, but that we

20   cannot be...  Just a second your Honor.  I will have to find

21   it.

22          **THE COURT:**  No, I'm not going to do that.  I want --

23   look.  You have put a lot of evidence before the jury about

24   Apache Harmony and all these other people, and you're slowly

25   convincing me that I better put Apache Harmony in here by name.

2422

```
 1          I think that there is a risk that the jury is going
 2    to think that you somehow had permission, because you had the
 3    license from Harmony and you thought it was fine and didn't
 4    know that you needed a license and all this stuff about nobody
 5    ever complained to Apache Harmony and the committee and they
 6    had a vote and there were dissenters.  All that is before the
 7    jury.
 8          Now, I also note that that was, in part, for my
 9    benefit so that I could make the decisions I've good to make on
10    the equitable defenses.  So there is nothing wrong with what
11    you did.  But because it was a joint trial, I want to protect
12    against a misimpression off-track reasoning, and the off-track
13    reasoning would be that you had some kind of permission and it
14    was okay to use it.
15          So I'm going to address this for sure one way or the
16    other, and I like my own way to address it.  But if you're
17    willing to just agree that for -- for jury purposes you agree
18    that there is no license, Google had no license that would
19    permit it to use any copyrighted -- copyrighted works in
20    question.
21          MR. KWUN:  Your Honor, I just think that the jury is
22    going to read into that more than it says.  They are going to
23    read into that that you're directing a judgment of
24    infringement.
25          THE COURT:  No, I'm not.
```

1           **MR. KWUN:**  I understand that you're not, but I think

2      that they are going to look at that --

3           **THE COURT:**  Then reword what I just said in a more

4      favorable way and maybe it will work.

5           **MR. KWUN:**  Well, I mean, other than those few small

6      points, your Honor, which says if you don't have a license then

7      you -- then you don't have permission, and that's not true

8      because even without a license, there could be lack of

9      infringement.  There could be diminimus infringement.

10          **THE COURT:**  Of course.

11          **MR. KWUN:**  There could be fair use.

12          **THE COURT:**  I explained that.  You don't even get to

13     this until I've explained all that.

14          **MR. JACOBS:**  Your Honor, may I make a parole that

15     captures the language that's in 31 as best as I think we can?

16          If we start with:

17          "Google had no right to copy any elements of the

18          Java Platform protected by copyright unless it had a

19          written license to do so from Sun or Oracle or had a

20          written sublicense to do so from a third party, we

21          would propose, such as Apache, who had a license from

22          Sun or Oracle conferring the right to grant such

23          sublicenses.  Google does not contend that it has any

24          such license rights."

25          **THE COURT:**  Is that okay?

2424

1              MS. ANDERSON:  No.

2              MR. KWUN:  Your Honor, it invites the jury to read

3   that as negating --

4              THE COURT:  I'm going to leave it just the way I got

5   it.  I'm not going to put the thing in about Apache, but I'm

6   just going to say the burden is on Google to prove it had any

7   such license or sublicense rights.

8              MR. KWUN:  Your Honor, can we add a clause in the

9   beginning that says:

10              "Unless Google proves fair use or some other

11         exception, some other exception to infringement."

12              Or even:

13              "Unless you find fair use for some other

14         exception to infringement."

15              THE COURT:  I'm going to start it off by saying:

16              "Unless you find fair use or non-infringement,

17         Google had no right," et cetera, et cetera.

18              Okay?

19              MR. JACOBS:  Your Honor, that --

20              THE COURT:  Yes?

21              MR. JACOBS:  Just -- I'm sorry.  I didn't mean to

22   interrupt.

23              THE COURT:  Anything more on 31?

24              MR. JACOBS:  Yes.  Similarly, if Google -- Lines 7

25   to 9.

2425

```
 1              "Similarly if Google contends that Oracle or Sun

 2         had dedicated elements protected by copyright to the

 3         public domain for free and open use, the burden is on

 4         Google to prove such a public dedication."

 5              There is a lot of law around public dedication, what

 6    you would actually have to do to affirmatively lose your

 7    copyright rights.  I don't think that Google actually contends

 8    that.

 9              THE COURT:  Well, all right.  Can I just say, "and

10    Google makes no such contention."

11              MR. BABER:  No, your Honor.  We contend that the Java

12    programming language has been dedicated to the public and it's

13    free and open for everyone to use.  And --

14              THE COURT:  What elements do you have to prove for

15    that to happen?

16              MR. BABER:  Well, I think we had the deeming motion.

17              THE COURT:  No.  But for purposes of the jury, not

18    for purposes of what I have to decide.  Is there any jury issue

19    about public dedication?

20              MR. BABER:  No, your Honor.  Not that I'm aware of,

21    no.

22              THE COURT:  All right.  So then why don't I say, "The

23    burden would be" --

24              MR. BABER:  Why don't we take the sentence out, your

25    Honor?
```

```
1           THE COURT:  Why don't we say, "Then similarly" --
2           MR. BABER:  I don't think we need it at all.
3           THE COURT:  I don't want the jury to speculate about
4  it because they have heard about public domain.
5           MR. KWUN:  Your Honor, if you want to include
6  something there, you could say:
7           "The burden would be on Google to prove such
8       public dedication.  There is no jury issue of public
9       dedication."
10          THE COURT:  I could say -- how did I phrase that
11 before?  "But the parties agree there is no issue" -- "parties
12 agree that there is no such issue for you to decide."
13          How is that?
14          MR. BABER:  That works, your Honor.
15          THE COURT:  Okay.
16          MR. JACOBS:  Your Honor, I'm worried that the
17 introductory language that was proposed for 31.  We're getting
18 wheels within wheels here.
19          In general, you're not cross referencing back each
20 time.  You're laying these out very crisply and it could be
21 quite confusing.
22          THE COURT:  I'm -- no, no.
23          I'm going to 32 now.  32.
24          MR. JACOBS:  Hang on just a minute.
25          THE COURT:  Can I ask you all to just stipulate?  Why
```

```
 1  do you want to complicate the life of the jury with this?  Why

 2  don't you just stipulate between you that if the jury finds

 3  liability, it has found liability on these vicarious theories?

 4          MR. KWUN:  Your Honor, we would actually suggest

 5  something different, which is we don't see how vicarious or

 6  contributory infringement, A, be proven without proving direct

 7  infringement; and, B, what it adds to their case in that

 8  circumstance if they have proven direct infringement.

 9          So, we don't see that there is any reason to raise

10  the issue at all.

11          MR. JACOBS:  The reason is a damages issue.  If

12  Google would stipulate that we don't have to have a verdict of

13  liability for indirect infringement to make out the damages

14  claim that we have made, then I don't think -- then I think we

15  could probably live without this.

16          MR. KWUN:  Your Honor, none of the experts have

17  addressed alternative damages theories depending on whether or

18  not there is indirect liability.

19          MR. JACOBS:  Well --

20          THE COURT:  Well, but the -- I don't know if you're

21  trying to split hairs over there.  I think what Mr. Jacobs is

22  saying, let's say that a jury turns out to be very sympathetic

23  to Oracle and you get hit for $6 billion, whatever the number

24  is.  Then you come back and say, "Wait a minute.  That includes

25  some other things that would only have been permissible if
```

1   there had been indirect infringement and they never got a

2   verdict on infringement."  Mr. Jacobs wants to be protected

3   against you making that argument later.

4           So if you were to stipulate now, "We won't make that

5   argument later, we give that line of argument up now," then you

6   know we could leave this Paragraph 32 out.

7           **MR. KWUN:**  Well, I mean, I'd like to just quickly

8   confer with my client.

9           **THE COURT:**  Okay.  Let me first -- is that acceptable

10  to the plaintiff?  I don't want to speak for you.  I'm just

11  imagining that you were.

12          **MR. JACOBS:**  You understood, your Honor, yes.  That

13  would be acceptable to us.

14          (Discussion held off the record

15           amongst defense counsel.)

16          **MR. KWUN:**  Your Honor, if we can get a stipulation

17  that they are not arguing that there is any particular element

18  of damages that are based on the indirect liability theories.

19          I mean, we don't know what the -- what we're

20  stipulating to because we don't know what they are claiming are

21  the indirect liability damages.  We don't see any incremental

22  damages that are due to indirect liability.

23          And, as I mentioned, I don't think -- actually, I'm

24  quite certain that none of the experts have stated any sort of

25  alternative calculations that depend on whether or not indirect

2429

 1   liability is proven.  There is just a number of -- or a range

 2   of numbers under various scenarios that all of the experts

 3   said, all three of the copyright damages experts --

 4           THE COURT:  Well, would you then -- I mean, you know

 5   what -- what the theories are, right?  And is there anything in

 6   any of those reports that you think is indirect infringement

 7   and would argue later was impermissible because it was based on

 8   indirect infringement?

 9           MR. KWUN:  There is nothing within the expert report.

10   Their expert report of Dr. Cockburn we would object to on that

11   basis.

12           I don't know whether they are planning on raising

13   some fact issue that is distinct from that or something like

14   that.

15           MR. JACOBS:  How about Dr. Curl?

16           MR. KWUN:  Same for Dr. Curl.

17           MR. JACOBS:  Then I think we can -- our theories are

18   our theories as set forth in those reports.  If Google is

19   saying they won't challenge those theories if there is -- on

20   the basis that there is no verdict of indirect infringement,

21   whether vicarious or contributory under Paragraphs 32 or 33 of

22   the proposed instruction, then I think we can accept the

23   removal the theories from the instructions.

24           MR. NORTON:  I just want to make sure I understand.

25           THE COURT:  Mr. Norton, how many people are going to

2430

1  speak for Oracle?

2           **MR. NORTON:**  Well, no more than speak for Google.

3           **MR. JACOBS:**  Just a minute your Honor.  Just a

4  minute.

5           (Discussion held off the record

6           amongst plaintiff's counsel.)

7           **THE COURT:**  All right.  I'm going to say it in my own

8  words.  There was only two permissible answers.  "Yes."  "No."

9           **MR. JACOBS:**  The Court is together to articulate

10 there for us.

11          **THE COURT:**  You listen to what I have to say and you

12 can either say "yes" or "no," but you can't give conditions.

13          If Google withdraws its request for Paragraph 32 in

14 the corresponding verdict forms on indirect infringement --

15          **MR. KWUN:**  If Oracle, you mean.

16          **THE COURT:**  What did I say?

17          **MR. KWUN:**  If Google.

18          **THE COURT:**  Thank you.

19          If Oracle withdraws its request based upon 32 and

20 corresponding verdict form, then Oracle will not be prejudiced

21 in any way with respect to the damages theories that have been

22 articulated by the experts in this case on damages.

23          Both side agree to that?

24          **MR. KWUN:**  Your Honor, I think we actually have to

25 confer with our client at greater length on that.  I don't

```
 1  think we can agree to that.
 2           THE COURT:  All right.  Here is what --
 3           MR. JACOBS:  We would say yes.
 4           THE COURT:  All right.  Here is what -- okay.  Now,
 5  you all think about this.  Here you are with 90 minutes, 90
 6  minutes between you and a $6 billion verdict maybe.  There's
 7  more to go on this.  And you want to use up 12 of those 90
 8  minutes explaining why there is no indirect infringement when
 9  it's absolutely clear that if you infringe, all those Motorola
10  units are infringing.  And you want to preserve that issue and
11  use your time on that, okay.  I salute you.
12           MR. BABER:  We said we would think about it.  We have
13  to talk to the client.
14           THE COURT:  I believe you're some of the best lawyers
15  in America and if anybody can do all those things in 90
16  minutes, you can do it.
17           I suggest this.  I'm going to leave it exactly as it
18  is.  It's going to stay in there and it's going to go to the
19  jury unless I get some word pretty soon after this hearing that
20  you both agree to take it out.
21           MS. ANDERSON:  Yes, your Honor.  We will get back
22  promptly.
23           THE COURT:  I recommend that you get back to me
24  promptly.
25           Same thing on Paragraph 33.
```

1    **MR. JACOBS:**  Yes, your Honor.  We understood they

2  went together.

3    **THE COURT:**  Is there anything else all the way to the

4  bitter end that you care about?

5    **MR. JACOBS:**  On 33, your Honor, just -- and 32.

6    33 contends that "Google" -- at the bottom there on

7  Line 28 -- "should be found liable for contributory liability."

8    And then on the next page Line 9, "Google knew or had

9  reason to know."

10    **THE COURT:**  Yes.

11    **MR. JACOBS:**  And if I could just have a may not.

12    (Discussion held off the record

13    amongst plaintiff's counsel.)

14    **MR. JACOBS:**  That's it on those, your Honor.

15    **THE COURT:**  All right.

16    **MR. JACOBS:**  And then we had nothing.

17    **THE COURT:**  34 to the end, anybody got any --

18    **MR. KWUN:**  Your Honor, just back on 32 and 33.  Two

19  items that apply to both of them.

20    **THE COURT:**  Sure.

21    **MR. KWUN:**  First of all, the formatting of this,

22  there are three things that actually they would need to find in

23  order to find contributory liability or vicarious, and those

24  three things are the two indented paragraphs, plus the fact of

25  third party infringement.

```
 1              So the way it's -- I know that it says they have to
 2    find third-party infringement, but the way it's formatted lends
 3    a jury to believe there's actually only two things they need to
 4    find.
 5              So that's issue number one.  We would suggest having
 6    all three items listed in indented tabs.
 7              THE COURT:  All right.  Fine.  I can put that in.
 8              What else?
 9              MR. KWUN:  Pardon me?
10              THE COURT:  It's a little redundant, but I see your
11    point.
12              MR. KWUN:  And then the other issue is, you can say
13    that your verdict should be for Oracle, and we would request
14    could say that "in your answer on question" whatever it is --
15              THE COURT:  No, no.  That's all right.  I'm not going
16    to make that change.
17              All right.  That's all.  Anyone have anything more
18    all the way to the end?
19              MR. BABER:  Typo, your Honor, on Line 14 I think.
20    "You may consider the Oracle's claim."  Take out "the," "the
21    Oracle."
22              THE COURT:  Thank you for that.
23              Anything more?  On the instructions?
24              (No response.)
25              MR. JACOBS:  Your Honor, just --
```

2434

```
 1            THE COURT:  Let's go to the verdict form.
 2            MR. JACOBS:  Your Honor, I think you had the
 3   placeholder for instructions that are not in the instruction.
 4            THE COURT:  Yes, that's right.  I forgot.
 5            MR. JACOBS:  We briefed this, your Honor, and I just
 6   want to make sure it's preserved; that's the derivative works
 7   issue.  We believe there should be an instruction on the
 8   creation of a derivative work in the code from the
 9   documentation.
10            THE COURT:  All right.  You briefed this on your Rule
11   50, correct?
12            MR. KWUN:  Yes, your Honor.
13            THE COURT:  Here.  I will say it as clearly as I can
14   late in the day, and that is this:  If someone were to get --
15   give you an assignment, give anybody an assignment and say, go
16   write a book, a guide on how to drive from San Francisco to
17   Monterey, California and, you know, everybody could sit down
18   and write their own two page thing on that.  There would be
19   some similarities, but the idea is not protected.  It is the
20   classic difference between the idea and the expression.
21   Everyone in this room would write it a little bit differently.
22   And every single one of those versions would be entitled to
23   their own copyright.  It would not be a copy of somebody else's
24   work.
25            So to my mind when the -- when somebody looks at an
```

 1  idea of a specification saying this input and these two

 2  outputs, and this is -- this will be the declaration, but

 3  you've got to have all this code underneath there, sometimes

 4  many hundreds of lines of code, the programmers each use their

 5  own creativity in the same way that there is creativity

 6  involved in designing the overall outline.  To my mind there is

 7  five times as much creativity involved in the lines of code

 8  that get you that implementation.

 9           So the implementations are not derivative works.

10  They are independent works that simply start with the idea of

11  the specification.

12           And that's the whole point of the clean room, is they

13  go in there with a goal.  They are told to work this up.

14  Assuming that is a clean room, each of those are independent

15  compositions.  And that is the classic idea versus expression

16  situation and it is not a derivative work in my view.

17           So your point is preserved for appeal.

18           **MR. JACOBS:**  Thank you, your Honor.

19           **THE COURT:**  All right.  Now, what else does anyone

20  want to add in here?

21           There is one thought that I have not yet put in,

22  which I'm going to try to work in and that is one that Oracle

23  has raised several times.  Maybe it is in here and maybe I just

24  missed it.

25           I want to make sure that I say that the fact a Google

2436

```
1    added a lot more additional things to its work would not excuse
2    copying if it did -- infringement, if it did occur.  So the
3    work as a whole is the work compared to the copyrighted work.
4    It's not -- it's not compared to Google's additional work.  So
5    somewhere I want to make sure I make that point clear.
6              MR. JACOBS:  And we so request, your Honor.
7              THE COURT:  All right.
8              MR. BABER:  Your Honor, may I just comment on that?
9              THE COURT:  You may.
10             MR. BABER:  I think that that would be perhaps an
11   appropriate instruction if we did wind up with, let's say, a
12   comparison of 166 API packages to the whole Android platform,
13   but given what you're doing with reducing the size of the works
14   as a whole, you're basically comparing one set of APIs to
15   another set of APIs.  And I think the test is just substantial
16   similarity.  It's not a question of whether something was
17   added.  You don't have the same kind of dynamic of the
18   15 million lines.
19             THE COURT:  I'll consider what you have to say.
20             Back on the special verdict form.  Question 1-A.  All
21   right.  How does that work for you?  Question 1-A.
22             MR. KWUN:  No objection, your Honor.
23             (Brief pause.)
24             MR. JACOBS:  Your Honor, this has the "owned by
25   Oracle."  I guess the instructions will say that there isn't an
```

1  ownership issue, but to add in "owned by Oracle" seems to

2  suggest that there is a proof issue here.

3         **MR. BABER:**  Why don't we just say "the copyrighted

4  work"?

5         **THE COURT:**  I will just say "the copyrighted work."

6         **MR. BABER:**  Say again, your Honor?

7         **THE COURT:**  "The copyrighted work."

8         **MR. BABER:**  Works for us, your Honor.

9         **THE COURT:**  All right.

10        **MR. JACOBS:**  That's fine, your Honor.

11        **THE COURT:**  Okay.  Now, on No. 2 I will do somewhat

12 similar parallel language, correct?

13        **MR. JACOBS:**  Yes, your Honor.

14        **THE COURT:**  And then I take out this long -- this

15 long thing.  Old No. 2 comes out.

16        **MR. BABER:**  The --

17        **THE COURT:**  And now we go to old three, which will be

18 new three.

19        Are these -- I had a question.  We have source coded

20 eight Impl Java files, but I thought there were only seven and

21 that there was some other strange file.  It would be easier to

22 just say eight.

23        **MR. BABER:**  There is eight of them.  I think,

24 though --

25        **MR. KWUN:**  One of them doesn't have Impl at the end.

2438

```
 1          MR. BABER:  One he have them doesn't have Impl at the
 2   file.  We could say the ACL files.
 3          MR. KWUN:  I don't know they all say ACL unless you
 4   use the whole path name.
 5          MR. JACOBS:  The seven Impl files, Impl.java files
 6   and the single ACL file.
 7          MR. KWUN:  Alternatively, we could just list the
 8   eight file names.
 9          THE COURT:  What was that ACL?
10          MR. JACOBS:  ACL, your Honor.
11          THE COURT:  How do you spell that.
12          MR. KWUN:  Capital A, capital C, capital L.
13          THE COURT:  All right.  And the one ACL.
14          All right.  With that change, is number three okay?
15          MR. BABER:  No, your Honor.  Have you already changed
16   the burden of proof to conform to the instructions or not?  You
17   had it with "Google" on the verdict.
18          THE COURT:  Okay.  "Has Oracle."
19          MR. KWUN:  "Proven that Google's."
20          THE COURT:  Then we should  -- we should just change
21   that to:  "Has Oracle proven that Google infringed its
22   copyright" --
23          MR. BABER:  That's fine.
24          THE COURT:  (Continuing) -- its copyright by -- and
25   you do concede it, right?
```

```
 1            MR. BABER:  Conceded use, absolutely.

 2            THE COURT:  "And its conceded use of Android in the

 3   following items."

 4            MS. ANDERSON:  Yes.

 5            THE COURT:  Can I -- do you all -- can I put in

 6   there, just to remind them, paren, "the issue here is

 7   diminimus."

 8            MR. BABER:  Why don't we say:

 9            "Has Oracle proven infringement by virtue of

10        Google's conceded use of the following items, which

11        Google contends is diminimus," or something like

12        that.

13            THE COURT:  That's putting the burden on you.

14            MR. JACOBS:  How about:

15            "Has Oracle proven that Google's conceded use in

16        Android of the following items was not diminimus."

17            MR. BABER:  We still have the proof -- I don't think

18   that's right.

19            MR. JACOBS:  That's what you said our burden is, is

20   to prove that it's not diminimus.

21            THE COURT:  I know.  You've got to prove infringement

22   and the burden is on you to prove it's not diminimus.

23            How about:

24            "Has Oracle proven that Google's conceded use of

25        the following files was infringing, the only issue
```

1        being whether such use was diminimus."

2            How is that?

3            **MR. BABER:**  Your Honor, they are not all files.  One

4  is a method -- two are methods, two are comments and eight are

5  files.

6            **THE COURT:**  I will just then say the following and

7  not say the files:

8            "Has Oracle proven that Google's conceded use of

9        the following was infringing, the only issue being

10       whether such use was diminimus."

11           **MR. JACOBS:**  That's fine with us, your Honor.

12           **MR. BABER:**  That's fine with us, your Honor.

13           **MR. KWUN:**  Your Honor, there is a quote missing after

14  Impl.java.

15           **THE COURT:**  Yes, I caught that just a moment ago.

16  Thanks.

17           **MR. BABER:**  That should be in C, the second file is

18  CollectionCertStoreParameters, I think.

19           **THE COURT:**  Parameters.

20           **MR. KWUN:**  Not parametriums.  I think it's

21  "parameters."  Definitely not parametriums.  That's correct,

22  your Honor.

23           **THE COURT:**  Sound like parametriums.

24           **MR. KWUN:**  We are pretty sure they won't be able to

25  prove that, your Honor.

```
 1              THE COURT:  Germs.  We don't like germs.
 2              MR. JACOBS:  Your Honor, I may have misheard a plural
 3    for a singular on 1-A.  Could you just reread what you have
 4    there?
 5              THE COURT:  1-A is:
 6              "As to all the compilable code for the 37 Java
 7         packages in question taken as a group, has Oracle
 8         proven that Google has infringed the overall
 9         Structure, Sequence and Organization of the
10         copyrighted work."
11              MR. JACOBS:  Could we add an "s" to "work."
12              THE COURT:  Fine.
13              MR. JACOBS:  And then the "all" in the very beginning
14    it's a very strong word.  "All the compilable code."  I think
15    if it said, "As to the compilable code for the 37 Java API
16    packages in question taken as a group."
17              THE COURT:  All right.  As to compilable code because
18    it says as a group.  Okay.
19              Now, I want to go back to No. 4, the blanks.  I need
20    you to help me fill in the blanks on the third-party mobile
21    manufacturers.
22              MR. JACOBS:  We'll have to do some homework, your
23    Honor, on what's in the record.  I think there was quite a long
24    list read by Mr. Rubin, I believe, of the Android adopters and
25    I don't know that it matters name by name.
```

2442

```
 1          THE COURT:  If it matters at all, it's certainly
 2   going to matter name-by-name.  I don't know why it matters at
 3   all, but if it does matter, then I can see the argument later,
 4   "Oh, you only proved it up as to Motorola."  "Oh, you only had
 5   evidence about" -- or if we don't get a verdict on this.
 6          I think this is yet another reason why you lawyers
 7   should work this piece out.  This is nothing compared to the
 8   big issues.  And you should take this off the table and not
 9   have the jury -- I can see so many reasons why the lawyers
10   would want to simplify this and get it down to the real issues
11   and not let the jury be getting frustrated over something.
12          And don't think that them getting frustrated could
13   lead to a deadlock.  It could work the other way.  They could
14   say, "You know, why is Google contesting all of this?  Of
15   course, they use it.  Motorola uses this."  Let's say, "They
16   deserve to get hit with $6 billion."
17          I just think that the lawyers should be sensitive to
18   the burden we're placing on the jury in asking them to come to
19   grips with the things that the jury can appreciate are good
20   issues for them to decide, not give them something that
21   complicated.
22          You have made progress.  I'm not being -- I don't
23   mean to be critical because you've taken out that long-winded
24   No. 2.  That has a huge step forward.  So I ask you to take
25   another step forward on this indirect thing.
```

2443

```
 1              MR. KWUN:  Your Honor, we will try to do that, but I
 2    suggest in case we don't, in Question 4 you need blanks for
 3    "yes" "no" for Parts B and C.
 4              THE COURT:  Yes, I do.
 5              MS. ANDERSON:  A, B and C.
 6              MR. KWUN:  A, B and C.
 7              THE COURT:  Yes, that's a good point.  That was just
 8    me anticipating that you were going to solve this problem.
 9              (Laughter).
10              THE COURT:  Now, that brings us to the end.  I have a
11    lot of work to do here and I'm going to -- I cannot work --
12    I've got to be at the Judicial Conference, supposed to be there
13    now, but I will be there in the morning, all day tomorrow and
14    most of Sunday.  So the earliest -- if I don't get it to you
15    today, it will be Sunday night or maybe Monday morning.  And I
16    hate to put you in that position, but all I can do is work as
17    hard as I can.
18              MS. ANDERSON:  I'm sorry, your Honor.  There is one
19    quick question for you.
20              You had mentioned the other trial day that the Court
21    was -- instead of issuing instructions and multiple questions
22    on the actual defenses which your Honor will decide, there was
23    one question that you were going to potentially include as a
24    special question which we jotted down, and we wanted to request
25    your Honor to include that.
```

1           THE COURT:  What was that question?

2           MS. ANDERSON:  What I have from the transcript was:

3  "Has Google proven that" -- and you said Oracle and then you

4  said Sun, and I wrote it down as, "Sun or Oracle led it to

5  believe through its affirmative actions that it did not need a

6  license for what it was doing."

7           That is what I had written down.

8           THE COURT:  Why don't we give that question

9  especially if you all will get rid of No. 4?  And it wouldn't

10 be binding, but it would be -- it would be --

11          MS. ANDERSON:  We can live with your Honor's

12 question.  That's fine with us.

13          THE COURT:  I don't even think we need this in the

14 instructions other than to say it's an advisory special

15 interrogatory and the Court would request that they answer that

16 after they have reached a verdict.

17          MR. JACOBS:  I think it really understates the

18 requirements for any of the equitable defenses.  That's the

19 problem.  The legal standard --

20          THE COURT:  In what way?

21          MR. JACOBS:  The legal standard knowing --

22 intentional relinquishment of a knowing right.  To merely say

23 was there some affirmative step that led Google believe it was

24 off the hook is a pretty thin rule for a finding.

25          THE COURT:  Well, maybe we could improve on it.  I'm

1     going to think about it.

2              Do you have that written down, Ms. Anderson.

3              **MS. ANDERSON:**  I do, your Honor.

4              **THE COURT:**  Can you hand that up to me --

5              **MS. ANDERSON:**  Can I write it a little neater for

6     you?  I have terrible handwriting.

7              **THE COURT:**  Write it a little neater.  I'm not saying

8     yes to it.  I'm just saying I'm going to think about it.

9              **MS. ANDERSON:**  Thank you.  Yes, I will rewrite it

10    right now.

11             **THE COURT:**  Counsel, I'm going to adjourn here.

12             **MR. JACOBS:**  Real quick.  Schedule?

13             **THE COURT:**  Yes.

14             **MR. JACOBS:**  You will get us the instructions

15    probably Sunday night.

16             **THE COURT:**  It could be today.  I'm going to try my

17    best to get you a set today.  But it is -- it's 50/50.  That's

18    the best I can say.

19             **MR. JACOBS:**  So we have some things that are due.  We

20    have our Rule 50 outlines to you and we have our opposition to

21    their Rule 50 close of plaintiff's case motion.  Could we get

22    both to you on Sunday evening?

23             **THE COURT:**  Sure.  I won't be able to read them until

24    probably Sunday night anyway.  How about 3:00 p.m.?

25             **MR. JACOBS:**  5:00 p.m.?

1          **THE COURT:**  All right.  That's fine.  But I just

2    want -- I know I won't read it if it's 5:00 p.m.  I will read

3    it the next morning.

4          I just want to be clear on what you can do.  You are

5    free, once I give you this set, to put it up on the screen and

6    argue from it.  You can put the special verdict form up there

7    and say fill in "yes" or fill in "no."

8          You're free to use these jury instructions, and the

9    only caveat I give you is that if I -- I have to keep this

10   back.  If there is something about the way the arguments are

11   structured that I think requires -- justice requires it, I will

12   add an instruction, or maybe even modify one, if I think that

13   some unintended argument is being made that should not be made;

14   that it's exploiting some unintended hidden meaning.

15         In 12-and-a-half years I don't think I've had to do

16   that more than twice.  Very rarely does that occur, but I have

17   to hold back that limited possibility.

18         But that small thing being said, I expect you to put

19   up on the screen the instructions that you like and argue from

20   them.  That's perfectly okay.

21         Now, you know the rule against sandbagging on the

22   plaintiff's side.  Sandbagging means in your rebuttal you can

23   save up half of your time in rebuttal, but in your rebuttal

24   section you cannot go to something -- you can only touch on

25   matters that the other side touched on or that you touched on

1   in your opening argument.

2           You can't -- for example, a classic case is -- we

3   don't have punitive damages here yet, but it would be the

4   plaintiff does not say a word about punitive damages.  Defense

5   said, Ah-hah, now I can leave that alone.  And then in the

6   closing few minutes the plaintiff's lawyer hammers on punitive

7   damages.

8           That's the classic case of sandbagging.  You just

9   can't do it.  You've got to bring it up if you want to preserve

10  the right to go back to it.  Otherwise, if the other side let's

11  it go, you don't get a second shot at it.  But if you leave it

12  alone and they go to it, anything that the defense brings up in

13  there is true rebuttal.  That's perfectly okay.

14          **MR. JACOBS:**  Thank you, your Honor.

15          **THE COURT:**  The other thing that you should be aware

16  of is that professional rules of conduct do not allow you to

17  vouch for witnesses.  You know what I mean by that?

18          **MS. ANDERSON:**  Yes, your Honor.

19          **THE COURT:**  You cannot say, "I believe Mr. So-and-so

20  told the truth."  Or, "We believe Mr. So-and-so told the

21  truth."  You can say, "Mr. So-and-so told the truth."  That's

22  just an argument.

23          But when you suggest that we, as professionals,

24  believe it, you are putting your prestige and your Bar card, so

25  to speak, right there in front of the jury saying, "I'm a

1    professional person.  I have been doing cases for 25 years and

2    I'm telling you I believe my client."  You can't do that.  The

3    rules say you can't do that.

4         You can say "I submit."  That phrase is perfectly

5    okay.  "I submit he told the truth."  You can say that.  You

6    can't say "I think" and you can't say "we think," and you can't

7    say "we believe" or "we think."  Those are the four big ones.

8         There could be other -- and if you get carried way

9    and you do it once or twice, I'm not going to say a word.  But

10   if you do it more than a couple of times, I'm going to say

11   something to you because you must be mindful that it does have

12   an impact on juries if they think the lawyer is going out on a

13   limb and vouching for their credibility.

14        All right.  Ms. Anderson?

15        **MS. ANDERSON:**  Thank you, your Honor.

16        I tried to write it a little better.  It's still not

17   great.

18        **THE COURT:**  Hand it to Dawn.

19        (Whereupon, document was tendered

20         to the Court.)

21        **THE COURT:**  I'm going to let you all go to work on

22   your closing arguments and hope -- I can't wait to hear them.

23        **MR. JACOBS:**  Thank you, your Honor.

24        **THE COURT:**  You're most welcome.

25        (Whereupon at 4:33 p.m. further proceedings

1            in the above-entitled cause was adjourned

2            until Monday, April 30, 2012 at 7:30 a.m.)

3

4                          -   -   -   -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certifies that the foregoing proceedings in C 10-3561 WHA, **Oracle America, Inc., vs. Google, Inc.,** were reported by her, certified shorthand reporter, and were thereafter transcribed under her direction into typewriting; that the foregoing is a full, complete and true record of said proceedings at the time of filing.

/s/ Debra L. Pas
_____

Debra L. Pas, CSR #11916, RMR CRR

Saturday, April 28, 2012