Volume 13

Pages 2612 - 2656

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

ORACLE AMERICA, INC.,            )
                                 )
            Plaintiff,           )
                                 )
   VS.                           )  No. C 10-3561 WHA
                                 )
GOOGLE, INC.,                    )
                                 )
            Defendant.           )  San Francisco, California
_____)  May 1, 2012


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          MORRISON & FOERSTER
                            755 Page Mill Road
                            Palo Alto, California  94304
                    BY:  **MICHAEL A. JACOBS, ESQUIRE**
                         **KENNETH A. KUWAYTI, ESQUIRE**
                         **MARC DAVID PETERS, ESQUIRE**
                         **DANIEL P. MUINO, ESQUIRE**

                            BOIES, SCHILLER & FLEXNER
                            333 Main Street
                            Armonk, New York 10504
                    BY:  **DAVID BOIES, ESQUIRE**
                         **ALANNA RUTHERFORD, ESQUIRE**


(Appearances continued on next page)



Reported By:  Katherine Powell Sullivan, RPR, CRR, CSR #5812

**APPEARANCES (CONTINUED):**

For Plaintiff:          BOIES, SCHILLER & FLEXNER
                         1999 Harrison Street, Suite 900
                         Oakland, California  94612
            BY:  **WILLIAM FRED NORTON, ESQUIRE**
                    **STEVEN C. HOLTZMAN, ESQUIRE**

                         ORACLE AMERICA, INC.
                         500 Oracle Parkway
                         Redwood Shores, California  94065
            BY:  **ANDREW C. TEMKIN, CORPORATE COUNSEL**
                    **DORIAN DALEY, GENERAL COUNSEL**

For Defendant:         KEKER & VAN NEST
                         633 Battery Street
                         San Francisco, California  94111-1809
            BY:  **ROBERT ADDY VAN NEST, ESQUIRE**
                    **MATTHIAS A. KAMBER, ESQUIRE**
                    **CHRISTA MARTINE ANDERSON, ESQUIRE**
                    **DANIEL PURCELL, ESQUIRE**

                         KING & SPALDING LLP
                         1185 Avenue of the Americas
                         New York, New York 10036-4003
            BY:  **BRUCE W. BABER, ESQUIRE**

                         GOOGLE, INC.
                         1600 Amphitheatre Parkway
                         Mountain View, California  94043
            BY:  **RENNY HWANG, LITIGATION COUNSEL**

Also Present:          **SAFRA CATZ, President and CFO**
                         Oracle Corporate Representative

                         **CATHERINE LACAVERA**
                         Google Corporate Representative

1                    **P R O C E E D I N G S**

2  **MAY 1, 2012**                                    **10:00 A.M.**

3

4             (The following proceedings were held in open court,

5             outside the presence of the jury.)

6        **THE COURT:**  I had asked you to be here for a

7  different reason, but now we have a couple of notes from the

8  jury.

9             Have you seen these notes?

10       **MR. JACOBS:**  Yes, Your Honor.

11       **MR. VAN NEST:**  Yes, we have, Your Honor.

12       **THE COURT:**  So let me read them out loud.  Note No.

13  1:

14             "For Q1A Infringement - of 37 APIs in

15             question, are we able/permitted/restricted to

16             determine availability of these 37 via

17             non-license-required locations (ie:

18             Java/Sun/Oracle-owned sites, or Apache, or

19             other) and free-to-use/not-to-use?  Or is

20             this for the judge to decide?"

21             That's question one, signed by -- I'm not sure.

22  Looks like "R."  Not sure who that person is.

23             Next question, No. 2, from Greg Thompson:

24             "On page 16 of our instructions, the sentence

25             beginning, 'Similarly if Google ...' defines

1              elements reserved for the judge to decide.

2              Does this restriction on the jury prevent us,

3              in regard to deciding if infringement took

4              place, from considering whether the 37 APIs

5              are accessible from other sources (not

6              directly from Oracle/Java 2 SE)?"

7              So page 16, the sentence in question says:

8              "Similarly, if Google contends that Oracle or

9              Sun had dedicated elements protected by

10              copyright to the public domain for free and

11              open use, the burden would be on Google to

12              prove such a public dedication.  But the

13              parties agree that that issue is for me to

14              decide, not for you as the jury to decide."

15              All right.  So what do counsel have to say about

16  this?

17              **MR. JACOBS:**  The answer to the second question is

18  pretty clear under the instruction.

19              The answer, I believe, should be:

20              "Yes, the instruction prevents the jury or

21              restricts the jury, in regard to deciding if

22              infringement took place, from considering

23              whether the 37 APIs are accessible from other

24              sources."

25              The answer to question number one is a little bit

1   more complicated because it's framed as "able/permitted/

2   restricted" and "is this for the judge to decide?"

3           So there are, actually, as I read it, four questions

4   lurking there.  It's possible that the answer to the second

5   question may answer the first, but it's probably advisable to

6   answer both directly.

7           So the answer to the third -- to the first question

8   would be:

9               "No, you are not able or permitted to

10              determine availability of these 37 via other

11              locations, and you are restricted from

12              determining that availability.  This issue is

13              for the judge to decide."

14          There is a common misconception lurking in the

15   question, which may also be worth tackling directly.  The

16   common misconception is that if the accused infringer doesn't

17   copy directly from the copyright holder, how can there be

18   infringement?

19          That question is answered in Instruction No. 30, if

20   one properly reads Instruction No. 30.  But it may be helpful

21   to answer it directly.

22          In general, infringement is not excused because the

23   intellectual property infringer had access to a third party's

24   work unless that third party had express license or sub-license

25   rights as stated in Instruction No. 30.

PROCEEDINGS                    2617

1           **THE COURT:**  What does Google say?

2           **MR. VAN NEST:**  I don't think that's right at all,

3   Your Honor.

4           I think the jury should be told that they are to

5   consider any evidence in the record in determining whether

6   infringement occurred.

7           The argument that I made yesterday was that there are

8   two ways to evaluate infringement.  One is copying the

9   copyrighted work.  The other is substantial similarity.

10           And the evidence in the record is that the Google

11   engineers took the code from Apache; and the Apache code, at

12   that point in time, was considered to be an independent

13   implementation.

14           And so the jurors, in evaluating infringement, are

15   certainly free to determine whether copying occurred from the

16   copyrighted work or whether the source of Google's code was

17   from another source.

18           Clearly, here, since the code is now undisputably

19   different in Android, it's pretty clear that it didn't come

20   from a Sun source, it came from Apache.

21           So I think it would be -- it would be wrong to say

22   that this evidence could not be considered.

23           The question of whether there's a license, that's

24   what question [sic] 30 deals with.  Your Honor has said that

25   that issue, public dedication, is for you.  But we certainly

PROCEEDINGS                                                          2618

1    can't tell jurors that --

2              **THE COURT:**  License is for the judge.  You don't even

3    contend for an express license.  You contend for an implied

4    license.

5              **MR. VAN NEST:**  Right.

6              **THE COURT:**  So that is for the judge.

7              **MR. VAN NEST:**  Right.

8              **THE COURT:**  So license or public dedication would be

9    for the judge.

10             **MR. VAN NEST:**  Right.  But what they're asking is,

11   "Are we able to determine availability of these via

12   non-license-required locations?"  And/or, in the second

13   question, does it prevent us from considering, in regard to

14   deciding if infringement took place, whether they are

15   accessible from other sources?

16             So, clearly, since Oracle's argument was no, no, no,

17   they copied directly from the copyrighted work, so you don't

18   have to consider substantial similarity, and since our argument

19   is no, no, they didn't copy from the copyrighted work, they

20   took code from an open source subject, so you have to consider

21   substantial similarity, it would be wrong to tell them that

22   that evidence is out of bounds.

23             So, again, I don't think we could possibly tell

24   jurors that they couldn't take it into account.

25             If Your Honor wanted to tell jurors that the question

1  of dedication is for Your Honor, that's consistent with what

2  you told them yesterday.  But to say you can't consider this

3  evidence, that would be wrong.

4          **THE COURT:**  So what do you say, Mr. Jacobs?

5          **MR. JACOBS:**  There's one other place where I think

6  the jury might have gotten confused.  It was the subject of one

7  of our comments about the paragraph that was inserted.  And it

8  has to do with the definition of infringement.

9          And so on Instruction 19, which I think answers all

10 of Google's counsel's last argument, Instruction 19 says, at

11 the end:

12          "Google agrees that the structure, sequence

13          and organization of the 37 accused API

14          packages in Android is substantially the same

15          as the structure, sequence and organization

16          of the corresponding 37 API packages in Java.

17          Google states, however, that the elements it

18          has used are not infringing.  And, in any

19          event, its use was protected by a statutory

20          rule permitting anyone to make fair use of

21          copyrighted works."

22          It may be confusing to the jury to say that Google

23 states that the elements that it's used are not infringing, in

24 clear view of the clear direction that structure, sequence and

25 organization is protected, and Google acknowledges that the

 1   structure, sequence and organization is substantially similar.

 2          What could the possible out for infringement be under

 3   those circumstances?

 4          **THE COURT:**  37 over 166 may not be substantially

 5   similar.  That's a possible rationale on this record.

 6          **MR. JACOBS:**  That's the only possible rationale on

 7   this record, but it's possible that the jury didn't -- that the

 8   jury is trying to figure that out.

 9          **THE COURT:**  Okay.  I guess we should try to -- it's

10   okay for us to speculate about what's going on in the jury

11   room, but I'm very reluctant to start getting into sending in a

12   lot of -- a lot of maybe-they're-worried-about-this

13   instructions on speculative things that may be bugging them.

14   Unless you both agreed, of course, I would do it if you both

15   agreed.

16          **MR. VAN NEST:**  No, Your Honor.

17          **MR. JACOBS:**  Then as to the questions that have been

18   asked, I think as a matter of law Google's argument to you is

19   just simply wrong.

20          **THE COURT:**  Well, do you both agree with this much,

21   that I can tell them that the issue -- that Google makes no

22   contention that it had a license -- an express license, and

23   makes -- and any contention that it had an implied license

24   would be for the judge to decide.  And any contention that the

25   copyright material was dedicated to the public domain would be

 1    for the judge to decide.

 2                Isn't that correct?

 3          **MR. VAN NEST:**  Your Honor, I think unless you also

 4    said that they're free to consider any evidence in the record

 5    in determining whether or not copyright infringement took

 6    place, I think that would be misleading.

 7                But I think if you said both of those things, that

 8    would be fine.  As long as you told them that the evidence

 9    itself is not out of bounds in terms of their evaluation of

10    infringement, telling them --

11          **THE COURT:**  Why isn't that right, Mr. Jacobs?

12          **MR. JACOBS:**  Because it's not right.  And it's not

13    consistent with the instructions.

14                There is no contention here that if Google copied the

15    structure, sequence and organization through Apache, as opposed

16    to through directly from Sun/Oracle, that that excuses its

17    copying.

18                And that's what the jury is, in essence, asking.  So

19    it is not proper for them to consider all evidence in the

20    record on the question of infringement.

21          **MR. VAN NEST:**  Your Honor, that's just not right.

22                There's two ways to prove infringement.  You can

23    prove that you copied the copyrighted work, or you can prove

24    substantial similarity.  And it's been clear from day one that

25    what Google did was go out and get the Apache code.  They

PROCEEDINGS                              2622

 1   didn't copy from the copyrighted work.  And if we tell the jury

 2   they can't even consider that, that's just wrong.

 3          **THE COURT:**  Mr. Jacobs' point is, so what if they

 4   copied the SSO from Apache.  The whole point was to make it

 5   compatible symbol by symbol at the specification level.

 6          So wouldn't that -- what good does it do you legally

 7   that it came via Apache?

 8          **MR. VAN NEST:**  If the copyrighted work was not the

 9   source, then we have the -- then the only alternative in

10   evaluating infringement is whether or not there is substantial

11   similarity, which is exactly what I argued yesterday without

12   any objection from Oracle.

13          That was the argument that I made to the jury, is

14   that they hadn't proved copying.  All they had proved is that

15   the -- they had attempted to prove that the SSO was similar and

16   that the standard was you compare the 37 to the 166.

17          And so, again, I just don't think there's any basis

18   to be talking about evidence out of bounds.

19          I have no problem with Your Honor indicating that

20   express license isn't contended, and that's for you anyway.

21   That's okay.  But it's got to be balanced with something that

22   says you are entitled to consider any evidence in evaluating

23   Question 1.A., whether or not there was infringement.  That's

24   clearly what they're asking is, can they look at that evidence

25   or consider it.

1          (Pause)

2          **THE COURT:**  All right.  Here is my proposal, two

3   sentences or three sentences:

4               "Google makes no contention that it had a

5               license express, or otherwise, to use the

6               SSO" -- I would spell that out -- "of the

7               copyrighted work.  This issue would be for

8               the judge to decide, in any event, as would

9               be any issue of dedication to the public

10              domain.

11              "However, you may consider the evidence you

12              have referenced for whatever value you think

13              it has on the issues that are for you to

14              decide."

15         **MR. VAN NEST:**  That's fine, Your Honor.

16         **MR. JACOBS:**  I think there's legal confusion that

17  that answer will not address.  And you can see the legal

18  confusion when the jury asks "determine availability of these

19  37 via non-license-required locations."

20          And in the question whether the 37 APIs, in Question

21  No. 2, are accessible from other sources, they are confused

22  about indirect infringement.

23         **MR. VAN NEST:**  They are not one bit confused, Your

24  Honor.  This is the instruction that Oracle asked for and got

25  on copying.  And that's in Instruction 24:

```
 1              "There are two ways to prove copying.  One is

 2              by proof of direct copying, as where the

 3              copyrighted work itself is used to duplicate

 4              or restate the same words and symbols on a

 5              fresh page."

 6         I think Your Honor's proposed instruction is

 7    balanced.  They are entitled to consider all evidence, whatever

 8    value it has.

 9         And we have no problem with your telling them that

10    express license, et cetera, is for you -- or that we make no

11    contention as to that, and implied license is for you.  But we

12    certainly --

13         THE COURT:  Okay.  I would have to say you don't make

14    any contention they had a license, express or otherwise; nor

15    does Google contend that the structure, sequence and

16    organization was dedicated to the public domain.

17         Fair?

18         MR. VAN NEST:  I don't think so, Your Honor.  I think

19    the instruction that you gave, that's for you to decide.

20         THE COURT:  I know, but it's not for them to decide.

21         MR. VAN NEST:  That's right.

22         THE COURT:  It's not for them to --

23         MR. VAN NEST:  But with respect to terms of fair use

24    and all these other issues, the fact that these APIs were out

25    there, I just don't want -- what you told them yesterday,
```

 1  remember we had a discussion about this, what you told them in

 2  the instruction was that, The issue is for me to decide; not

 3  for you as the jury to decide.

 4          I don't mind you reiterating that.

 5          **THE COURT:**  Well, what would you let them decide in

 6  that regard?

 7          **MR. VAN NEST:**  In what regard?

 8          **THE COURT:**  Well, with respect to dedicating to the

 9  public domain.  If I'm supposed to decide whether that

10  occurred, how can they decide?  How can they use that at all?

11          **MR. VAN NEST:**  That evidence is relevant to plenty of

12  questions, including fair use, and our equity, and all of that.

13          **THE COURT:**  The evidence is, but not the idea of

14  public dedication.

15          **MR. VAN NEST:**  Can you read what you proposed, Your

16  Honor?  Because I thought you covered that.  What is it you're

17  proposing to say?

18          **THE COURT:**  What I had originally said was:

19          "Google makes no contention that it had a

20          license, express or otherwise, to use the SSO

21          of the copyrighted work."

22          What I want to continue on to say:

23          "Nor does it contend that the SSO was

24          dedicated to the public domain."

25          **MR. VAN NEST:**  I just think that's too misleading,

1   and going to be confusing for them in light of the argument

2   that was made yesterday and the fact that we, again, argued

3   without any objection from Oracle that at the time Android was

4   put together, Sun had made these APIs available as part of the

5   language, and that Google's understanding was that as long as

6   you didn't copy the code, the implementing source code, you

7   were free to use it.

8            So, again, telling the jury that that issue is for

9   you to decide, that's fine.  But telling the jury that we don't

10  make any contention at all in that regard, I think, is going to

11  be confusing.

12           **MR. JACOBS:**  And to put our concern in a nutshell,

13  Your Honor, it is that they are confusing the source from which

14  the copying occurred with the question of infringement.

15           **THE COURT:**  So I'm going to say:

16           "The issue would be for the judge to decide,

17           in any event, as would be any issue of

18           dedication to the public domain, and you may

19           not presume that there was any such public

20           dedication."

21           Doesn't that solve the problem?

22           **MR. VAN NEST:**  Your Honor, that contradicts what you

23  told them yesterday.

24           And, again, they're not going to -- you and I think

25  of "dedication to the public domain" as a formal legal

1    doctrine.  But jurors aren't -- won't understand that.

2           And I really think since what you decided to do

3    yesterday, at our request, was simply leave it at the point

4    that you did, which is currently that this is for the judge to

5    decide --

6           THE COURT:  You want to have it both ways.  You want

7    me to tell them that it's for me to decide it, but you want

8    them to decide it and then use it on other issues.

9           MR. VAN NEST:  No.  I don't.

10           All I want is for them to be free to consider the

11   evidence they reference.

12           THE COURT:  If I agree with that, and I think I do,

13   but I think I need to be clear where -- where they can't go

14   with the evidence.

15           I don't think they can say in the jury room, hey,

16   this was dedicated to the public domain; therefore, it was a

17   fair use.

18           MR. VAN NEST:  Again, they don't think of public

19   domain or dedication as a legal doctrine the way we do.  And I

20   just don't -- since they are not asking about that, I just

21   don't see any -- any reason to get -- to sew confusion in

22   there.

23           THE COURT:  They're asking about this very

24   instruction that says "Similarly, if."  That's what's reserved

25   for the judge.  I do think they are asking about this very

PROCEEDINGS                                                      2628

1    point.

2              MR. VAN NEST:  And I'm not arguing with the idea in

3    your original proposal that you ought to reiterate what you

4    said yesterday, that, Such a public dedication is for me to

5    decide; not for you as the jury to decide.  That's fine.  All

6    I'm -- all I'm saying is --

7              THE COURT:  I think that means that they cannot then

8    use as some building block in their analysis on the other

9    issues that it was dedicated to the public domain.

10             MR. VAN NEST:  But if you say that in the way you're

11   proposing, Your Honor, you're, in fact, telling them they can't

12   consider that evidence.  That's all I'm --

13             THE COURT:  That's not true.  That's not true.

14             Tell me how you would rephrase it so as to solve the

15   problem that I'm trying to solve.

16             MR. VAN NEST:  Can you read what you had, your

17   original proposal?

18             THE COURT:  Well, no, the add-on sentence is, "Nor

19   does Google" -- no, it would be "nor may you presume that there

20   was any such public dedication."

21             MR. VAN NEST:  "As this is an issue for the judge to

22   decide."

23             THE COURT:  All right.  "As this is an issue for the

24   judge to decide."  I'm okay with that.

25             MR. VAN NEST:  Now, can I hear the whole thing?

 1          **THE COURT:**  You have every right to hear it.  I don't

 2   know that my notes are good enough to do it though.

 3          (Laughter)

 4          **THE COURT:**  I'm going to have to write it out again.

 5          (Pause)

 6          **THE COURT:**  All right.  I'll read it again, and then

 7   I'll hand it down and let you see it.

 8          "Google makes no contention that it had a

 9          license, express or otherwise, to use the

10          structure, sequence and organization of the

11          37 packages of the copyrighted work.  This

12          issue would be for the judge to decide, in

13          any event, as would be any question of

14          dedication to the public domain.

15          "You may not presume that there was any such

16          public dedication, as this would be an issue

17          for the judge to decide.  However, you may

18          consider the evidence you have referenced for

19          whatever value you think it has on the issues

20          that are for you to decide.

21          "Beyond this, the questions you have asked

22          are already adequately covered by my

23          instructions."

24          I'll hand this down to let all of you look at it.

25          **MR. VAN NEST:**  I guess my only question, Your Honor,

 1   is, since you're telling them, since you're telling them the

 2   issue would be for the judge to decide, in any event, as would

 3   be any question of dedication to the public domain, why do you

 4   have to say that again?

 5            "You may not presume that there was any such

 6   dedication" --

 7            **THE COURT:**  Because I don't -- the fact that I

 8   have -- I think what you're trying to do is work in the

 9   possibility that even though I'm going to decide it, they can

10   make an intermediate conclusion that there was such a

11   dedication on their way to deciding one of these other issues.

12            I think that would be an improper line of argument

13   and an improper conclusion for the jury to reach.

14            **MR. VAN NEST:**  And I didn't argue that yesterday.

15   It's fine.

16            **THE COURT:**  No, you did not.  You didn't.  You came

17   close, but you didn't argue that.  But, you're right, you being

18   the good lawyer you are, you crafted your argument in a way

19   that is fine with the jury instructions.

20            **MR. VAN NEST:**  It's okay.  That's fine, Your Honor.

21   So long as --

22            **MR. JACOBS:**  Your Honor --

23            **THE COURT:**  Yes.

24            **MR. JACOBS:**  So, for our side, this sentence bears a

25   little addition.

PROCEEDINGS                                    2631

1              "However, you may consider the evidence you

2              have referenced for whatever value you think

3              it has on the issues that or are for you to

4              decide."

5         We would propose to add:

6              "Insofar as allowed by these instructions."

7         And why is that?  Because it is our view that, in

8    fact, there is no other place in the instructions where this

9    does bear, where the source of the materials bears on the issue

10   for them.  And we would be concerned that this would suggest

11   some kind of open-ended allowance for considering the source of

12   the materials.

13        I have an alternative and shorter formulation.  I

14   realize you have done work on this, but let me try this out on

15   you:

16              "Where Google got the structure, sequence and

17              organization of the 37 API packages is

18              irrelevant to infringement."

19        **MR. VAN NEST:**  No, no, no.

20        **MR. JACOBS:**  (Reading:)

21              "Because whether the APIs were dedicated to

22              the public domain or the subject of any kind

23              of license is for the Court to decide."

24        **MR. VAN NEST:**  No, Your Honor.  That flies right in

25   the face of Instruction 24, which they requested.

```
 1              24 says there are two ways to prove copying.  One is

 2      by proof of direct copying, as where the copyrighted work

 3      itself is used to duplicate or restate the same words and

 4      symbols.  So, that's completely improper.  And I don't think we

 5      need to add anything more than what you say here.

 6              "Beyond this, the questions you have asked

 7              are already adequately covered by my

 8              instructions."

 9              That's a better formulation than, "insofar as these

10      are" -- you know, "as allowed," which suggests that maybe they

11      are not.

12          MR. JACOBS:  And they're not.

13          MR. VAN NEST:  They are.

14          THE COURT:  Well, can I have my note back?

15          MR. VAN NEST:  Sure.

16          THE COURT:  All right.  Here's the thing that I need

17      to say:

18              The instructions were given to the jury.  The

19      arguments were made.  The judge has to be very careful in

20      responding to questions, to avoid altering the instructions.

21              Even if what you say is correct, Mr. Jacobs -- and

22      it's possible I would have given such an instruction upfront --

23      I think what you're requesting is just too strong a statement

24      to make at this point.  I think I have to be -- I have to try

25      to answer their question without going beyond that and
```

1    intruding into their deliberations.

2            So I don't want to give the instruction that you

3    have -- you have suggested.

4            **MR. JACOBS:**  And how about the -- the tag line for

5    the "you may consider this evidence"; make it clear that that

6    consideration has to be consistent with the instructions?

7            **MR. VAN NEST:**  That's what your last sentence says

8    now, Your Honor.

9            **MR. JACOBS:**  You could combine those two, and I think

10   it would have the effect that I am proposing.

11           **THE COURT:**  Here's the thing, though.  I don't call

12   out in the instructions where they can use particular evidence

13   or not.

14           So what they might do is literally take what I say

15   and look at the instructions and say, well, the judge didn't

16   allow us to consider X or Y, and, therefore, he's telling us we

17   can't even consider this evidence unless it's specifically

18   called out in the instructions.

19           And you know there's very little evidence called

20   out -- there is some evidence, but there's not much evidence

21   called out in the instructions.  And I feel that they might

22   misunderstand that and just throw the evidence completely out

23   the window because it was not referenced.  Like Apache is not

24   referenced in the instructions.

25           **MR. VAN NEST:**  We agree with that, Your Honor.  And

PROCEEDINGS                                              2634

1    we're satisfied with the instruction you drafted.

2              **THE COURT:**  I think that juries are pretty good, and

3    they may themselves see a relevant way that the Apache thing

4    legitimately can bear on issues that are for them to decide.

5    And I should not be restricting the way -- their mental

6    process.  And I just am reluctant to go where you want me to

7    go.

8              I'm going to give this -- if you have any other

9    objections, tell me what they are.

10             **MR. JACOBS:**  The only other point I would make, Your

11   Honor, is that from the first time, early on in the trial when

12   Apache came up, we expressed concern about the source of

13   confusion for the jury, and asked for an Apache-specific

14   ruling.  And, now, our fears seem to be being realized.  And

15   it's in that context that we're urging that the jury be given

16   clear direction.

17             **THE COURT:**  Well, I think my paragraph 30 was

18   extremely clear on that already.

19             You did, in fact, raise that at some point.  You are

20   correct.  And you even requested a special instruction.  I

21   thought your form of instruction was way too overboard in your

22   favor, but I crafted my own in paragraph 30, which is a more

23   general statement.  But, nonetheless, if it's followed by the

24   jury then you should not have any worries.

25             You know, we all must remember that as long as the

1   jury is properly instructed, the fact that they get in the jury

2   room and may make some mistake and misunderstand the

3   instructions, or whatever, or misunderstand the evidence,

4   that's one of the possible frailties of our system.  In my

5   view, they usually do a good job.  Almost always do a perfect

6   job.  But we can't control it to that extent that you're asking

7   for.

8            So, you are right.  You raised that point.  And my

9   paragraph 30 was the -- was my answer to that.

10           I think the best thing is to bring the jury back in

11  rather than try to write this up and send it in, unless you

12  both have a better view.

13           **MR. VAN NEST:**  That's fine with us, Your Honor.

14           **MR. JACOBS:**  That's fine, Your Honor.

15           **THE COURT:**  Dawn, can we bring the jury in.

16           (Jury enters at 10:42 a.m.)

17           **THE COURT:**  Okay.  Welcome.  Please, have a seat.

18           We got two notes from you.  And I need to try to

19  answer them as best I can.

20           So, first, I can read the handwriting on one.  Greg

21  Thompson.  We got that.  We got that.  I can read that.  Here's

22  one I can't read.  "R" something.

23           **JUROR MR. RUTHERFORD:**  That's mine.

24           **THE COURT:**  Who wrote No. 1?

25           **JUROR MR. RUTHERFORD:**  That's me.

 1          **THE COURT:**  All right.  You have a very stylized

 2   signature.  Good for you.

 3          **JUROR MR. RUTHERFORD:**  Apologize.

 4          **THE COURT:**  I'm going to read these in just a moment,

 5   but before I do that, let me explain the process that we go

 6   through when a note comes out from the jury room.

 7          First I show it to the lawyers.  Then we have a

 8   discussion about it and what is the best way to answer the

 9   question.

10          And the -- sometimes in trials the answer to the

11   jury -- and I would say about half the time, the answer to the

12   jury is:  This was adequately covered in the jury instructions.

13   Please go back to the jury room and continue your work.  And no

14   further elaboration is given.

15          There are reasons for that, but I don't want to get

16   into the reasons.  I'll just say that sometimes that is the

17   answer.

18          And there are some restrictions on what I can say at

19   this point.  And I can say some things, in some instances, that

20   may be of help to you.  But we've gone a long way, and there's

21   a lot of water under the bridge, and I cannot just start

22   answering every single question with a long essay.

23          So I must be very careful to try to assist you on the

24   one hand, but at the same time be mindful of the restrictions

25   on what I can say at this point, as well.

PROCEEDINGS                                               2637

```
 1              So, that's just background.

 2              Now, I want to read to you your questions so this

 3   will make sense to those of you who didn't read this before it

 4   came out.  Question number one, and that was by Mr. Rutherford,

 5   for the record, says:

 6              "For Q1A Infringement - of 37 APIs in

 7              question, are we able/permitted/restricted to

 8              determine availability of these 37 via

 9              non-license-required locations (ie:

10              Java/Sun/Oracle-owned sites, or Apache, or

11              other) and free-to-use/not-to-use?  Or is

12              this for the judge to decide?"

13              Okay.  That was one question.  And the other question

14   was -- had a lot of similarity, but wasn't exactly the same.

15   And it was from Mr. Thompson.  It says:

16              "On page 16 of our instructions, the sentence

17              beginning, 'Similarly if Google ...' defines

18              elements reserved for the judge to decide.

19              Does this restriction on the jury prevent us,

20              in regard to deciding if infringement took

21              place, from considering whether the 37 APIs

22              are accessible from other sources (not

23              directly from Oracle/Java 2 SE)?"

24              In the question you referred to page 16 and the

25   sentence beginning "similarly."  So this will all make perfect
```

PROCEEDINGS                                                    2638

1    sense to you, I will read that sentence from the instruction so

2    it will be in context.  This was from the instructions you were

3    given:

4                "Similarly, if Google contends that Oracle or

5                Sun had dedicated elements protected by

6                copyright to the public domain for free and

7                open use, the burden would be on Google to

8                prove such a public dedication but the

9                parties agree that the issue is for me to

10               decide."

11               Not for you to decide, as the jury to decide.

12               "This statement of the law regarding licenses

13               is simply to put some of the evidence you

14               heard in context."

15               Now, that's the questions that were asked.  I'm about

16   to read to you my answer.  And I think it is at least a partial

17   answer, but you may think it is somewhat incomplete.  But it is

18   the best I can do in the position that I'm in.  So here is the

19   answer:

20               "Google makes no contention that it had a

21               license, express or otherwise, to use the

22               structure, sequence and organization of the

23               37 packages of the copyrighted work.  This

24               issue would be for the judge to decide, in

25               any event, as would be any question of

PROCEEDINGS                                                    2639

```
 1                 dedication to the public domain.

 2                 "You may not presume that there was any such

 3                 public dedication, as this would be an issue

 4                 for the judge to decide.  However, you may

 5                 consider the evidence you have referenced" --

 6                 in the question is what I mean.

 7                 "You may consider the evidence you have

 8                 referenced in the question for whatever value

 9                 you think it has on the issues that are for

10                 you to decide.

11                 "Beyond this, the questions you have asked

12                 are adequately -- are already adequately

13                 covered by my instructions."

14          Does anyone over there want me to read this again?  I

15    will, if you do.

16          JUROR MS. MICHALS:  Yes.

17          THE COURT:  Yes?  I will try it again.  This will be

18    the only time you will hear it, so I'm happy to read it as many

19    times as you want.  Here we go.

20                 "Google makes no contention that it had a

21                 license, express or otherwise, to use the

22                 structure, sequence and organization of the

23                 37 packages of the copyrighted work.  This

24                 issue would be for the judge to decide, in

25                 any event, as would be any question of
```

```
 1              dedication to the public domain.

 2              "You may not presume that there was any such

 3              public dedication, as this would be an issue

 4              for the judge to decide.  However, you may

 5              consider the evidence you have referenced for

 6              whatever value you think it has on the issues

 7              that are for you to decide.

 8              "Beyond this, the questions you have asked

 9              are already adequately covered by my

10              instructions."

11              Anyone want it read again?

12              So I think I must just ask you to go back into the

13 jury room and continue your deliberations.

14              Thank you very much.

15         THE CLERK:  All rise.

16         (At 10:50 a.m. the jury retired to resume

17              deliberations.)

18         THE COURT:  Okay.  Please, be seated.

19              I had wanted to hold this conference, since we have

20 some time, to look ahead to the next phase of the trial and

21 make sure that you're ready to go.  And if there's any snafu

22 that I can deal with now, this would be the time to bring it

23 up.

24              Anything you want to bring up in that regard?

25         MR. JACOBS:  I think we're moving along and getting
```

PROCEEDINGS                                                    2641

1   ready to begin.  We're trying to work out with Google exactly

2   how we're going to make what exchanges when, given the

3   uncertainty of when the trial will start and the compression of

4   doing the closing and all that work with the new trial.  But I

5   think we'll -- the rule of reason will, I suspect, result in

6   all those issues being worked out.

7           **THE COURT:**  Well, I rather doubt -- I have no inside

8   information.  I'm just guessing.  But I rather doubt we'll get

9   a verdict today.  We could.  But we might get one today, and

10  you'd need to be ready to go in the morning.

11          So -- and if they were to render a verdict early in

12  the morning, we would go that day.  We would resume right away.

13  So I want you to be in the ready position to start -- to get

14  your openings done.

15          Mr. Van Nest.

16          **MR. VAN NEST:**  A couple of issues, Your Honor.  And

17  you can tell me if these are premature, but given your comments

18  I don't think so.

19          We'll be ready to go, number one.  We have a couple

20  of witness issues and one expert issue that would bear on

21  timing, and so on.

22          The witness issues are that with respect to two of

23  the witnesses that are Google witnesses on Oracle's list, they

24  were already called in Phase One.  I don't think there's

25  anything additional that they would be able to say relevant to

1   Phase Two.

2           I -- I understood that you couldn't recall a witness

3   to say the same thing in Phase Two that he or she said in Phase

4   One.

5           **THE COURT:**  That part is true.  But how do we know

6   they can't say something new?

7           **MR. VAN NEST:**  Well, the two people at issue, one is

8   Mr. Lindholm.  And Mr. Lindholm didn't work on either of the

9   accused functionalities here in Phase Two.  And he's not an

10  inventor on any of the patents.

11          **THE COURT:**  What is the point of calling

12  Mr. Lindholm?  Is it just to put that e-mail up there again?

13          We're not going to do that.  They've heard so much

14  about that Lindholm e-mail, there is no point in doing that.

15  You have already beaten that to death.

16          What can he possibly add on the patent issues?

17          **MR. JACOBS:**  Mr. Lindholm is a witness on knowledge

18  of the patent, which is relevant to the inducement claims of

19  Phase Two.

20          **THE COURT:**  All right.  That's fine.  But we're not

21  going to get into the e-mail again.

22          **MR. JACOBS:**  Understood, Your Honor.

23          **THE COURT:**  All right.

24          **MR. VAN NEST:**  The other witness in that category is

25  Dan Morrill.  Remember, he was the guy that worked with third

1    parties and had the compatibility test responsibility.

2            He testified fully about that in phase one.  We

3    haven't heard anything from Oracle that suggests there's some

4    additional area.  He's not an engineer that worked on any of

5    the accused features.  He's not an inventor.

6            **THE COURT:**  Let's see.  What more do you want to get

7    from Mr. Morrill?

8            **MR. JACOBS:**  He's also relevant to inducement, Your

9    Honor.

10           **MR. VAN NEST:**  How?

11           **THE COURT:**  They don't have to explain how.  I think

12   if they say he's relevant, they want to use their time that

13   way, that's fine.

14           So those two witnesses are okay.

15           **MR. VAN NEST:**  Question, Your Honor.  Is it -- can --

16   can we read to the jury, in Phase Two, testimony from Phase

17   One?  In other words, if it's in the transcript and relevant to

18   Phase Two?

19           **THE COURT:**  You can do that -- certainly, you can do

20   it in your opening.  And, certainly, you can do it in your

21   closing.

22           Now, can you read -- you mean just read, again,

23   testimony they've already heard?  I would say only if it's

24   necessary to set up something, like to set up a -- you know, a

25   one-two punch, where you read a paragraph from some testimony

1    and then you have something that builds on that, and you're

2    reminding the jury what that prior testimony was, and it's a

3    short passage.  I guess that's okay.  But the idea of just

4    reading a lot of testimony that they've already heard, I don't

5    like that idea.

6            **MR. VAN NEST:**  No, you've got it right.  This is

7    short.  And it was focused on issues that are relevant to Phase

8    Two.  But that's how we'd intend to use it; opening, closing,

9    and very brief reading as part of the relevant issues.

10           **THE COURT:**  It will still come out of your time, but,

11   yeah, I think that part is okay.  But long-winded read-ins.

12           **MR. VAN NEST:**  Okay.

13           **THE COURT:**  I don't see the point in that.

14           Mr. Jacobs wants to be heard on this.

15           **MR. JACOBS:**  Yes, I think so, Your Honor.  I think

16   it's subject to all of the usual restrictions.

17           Truly, if it's just a setup, there probably wouldn't

18   be an objection.  But if they want to read Jonathan Schwartz

19   again to the jury, saying everything was fine, everything was

20   hunky-dory with Android, I would object.

21           **MR. VAN NEST:**  That's actually not what we had in

22   mind, Your Honor.  These would be party admissions.  There may

23   be some from Schwartz, but that's not really what I was focused

24   on.

25           **THE COURT:**  Let's do this.  If either side wants to

 1   read to the jury in case-in-chief material or cross -- other --

 2   openings and closings it's fair game.  But if it's in the

 3   actual giving of the testimony, then you need to let the other

 4   side know what you're going to use so that it can be -- in some

 5   kind of summary form, so that they will have enough information

 6   to bring a motion to prevent it.  So both sides can do that.

 7           There can't be that many instances of it, so it won't

 8   be a burden on you to let the other side know that you're going

 9   to do that with your next group of witnesses.

10           **MR. VAN NEST:**  Fair enough.  We'll do that.

11           **THE COURT:**  All right.

12           **MR. VAN NEST:**  The other issue I had was, we had a --

13   we had a ruling from Your Honor in Phase One that I assume will

14   apply in Phase Two, and that is that when your expert is on in

15   your case-in-chief, he can only rely on his opening report, not

16   his reply report.

17           **THE COURT:**  Correct.  That's true.

18           **MR. VAN NEST:**  Fair enough.  Other than that, are

19   there any other issues that we need to seek guidance on?

20           **MR. KAMBER:**  I don't believe so.

21           **THE COURT:**  How much time did I give you?  I know I

22   took one hour and moved it up.  With the benefit of that --

23   don't guess at it.  My law clerk might remember.

24           **LAW CLERK:**  Eleven hours.

25           **THE COURT:**  All right.  So you have 11 hours per

1  side.  That's 22 hours.  That is about five to six days total.

2  So it will be a while.  That phase will last two-thirds as long

3  as the one we just went through.

4          MR. VAN NEST:  Maybe less, Your Honor.

5          THE COURT:  Possibly.  But, you know, what they've

6  already heard is a very good tutorial for the patent part.  I

7  think this will assist the jury to be up to speed on the

8  technology.

9          MR. VAN NEST:  The -- the only other issue is just a

10  witness heads up.

11          Mr. Bornstein was a Phase One witness.  He was

12  excused from subpoena, allowed to be released.  Oracle has

13  asked that he be available for Phase Two.

14          We accepted a subpoena for him with the condition

15  that he's had a long-planned vacation starting Friday.  So

16  although he wasn't under subpoena, we accepted service with

17  that condition that he go on before Friday so he can go on his

18  vacation.

19          THE COURT:  Well, Friday, we may not have a verdict

20  by Friday.

21          MR. VAN NEST:  We may not, but I just want to alert

22  the Court to that, that he was released from subpoena.  Again,

23  he's --

24          THE COURT:  They are entitled to subpoena him again.

25  Aren't they?

 1          **MR. VAN NEST:**  Well, they are entitled to subpoena

 2  him, but we qualified any acceptance of that.

 3          **THE COURT:**  Well, then, they can subpoena him

 4  directly.

 5          Mr. Jacobs, you ought to send -- if this won't be

 6  unqualified, you send your process server out there and serve

 7  him at home.

 8          **MR. JACOBS:**  Understood, Your Honor.

 9          **THE COURT:**  I'm not ruling on whether it would be

10  quashed or not.  I'm not going -- but I can't just give him a

11  blank check to go on vacation, if he's -- if they have

12  testimony they need to get from him in the patent part.

13          **MR. VAN NEST:**  My point, Your Honor, is that we tried

14  to accommodate them.  They released him.  He was

15  unconditionally released.

16          We're not trying to make him unavailable, obviously.

17  We've agreed to accept the subpoena.  But we did request, as a

18  condition of that, and Oracle agreed, that they respect his

19  vacation.  That's all.

20          **THE COURT:**  What you did was reasonable.

21          Why did you release him if you now need him for the

22  patent case?

23          **MR. JACOBS:**  I think it was just -- honestly, Your

24  Honor, it was an oversight.  We're not claiming any -- the

25  significance of keeping him on recall would have been he

1  couldn't have sat in the courtroom, he couldn't have learned

2  about the trial.

3          But if a witness is needed, I think what was said

4  earlier is exactly right.  We're re-subpoenaing him.

5          **MR. VAN NEST:**  I don't think we have anything else,

6  Your Honor.

7          **THE COURT:**  Well, I would like to find a way to

8  accommodate his vacation.  So if he is subpoenaed, and if there

9  is time to put him on out of turn, that's what we should do.

10          But if it comes down to it, and you really need him,

11  then he's going to be here, or the U.S. marshals may have to be

12  activated to go find him.  I'm not saying I would.  I just say

13  I'm going to enforce the subpoena if he doesn't show up.

14          **MR. VAN NEST:**  I sure hope it doesn't come to that,

15  Your Honor.

16          **THE COURT:**  I hope it doesn't either.

17          **MR. VAN NEST:**  We've done everything we can to

18  accommodate them.

19          **THE COURT:**  You lawyers are working out problems like

20  this.  So -- but I cannot give him a blank check to go on

21  vacation and not be present.  If the timing of it works out

22  that it wrecks his vacation, I'm afraid that may have to be the

23  case.  But we ought to do everything we can to avoid that.

24  That ought to be the last alternative.

25          **MR. JACOBS:**  And we commit, obviously, to working

1  very hard to avoid that, as well, Your Honor.

2          **THE COURT:**  All right.  What's next?

3          **MR. VAN NEST:**  That's all I have, Your Honor.

4          **MR. JACOBS:**  It occurs --

5          **THE COURT:**  Mr. Jacobs.

6          **MR. JACOBS:**  We're going to pull up the order in

7  question, but we were discussing the other day, among

8  ourselves, and now consider it a good idea to raise with you,

9  the following question:

10          The Court directed the parties to mark up the claims

11  with the elements that are genuinely in dispute for validity

12  and infringement purposes.  And our recollection of the order

13  is that if you don't have a mark, a marking, then you are

14  deemed to have waived a claim --

15          **THE COURT:**  You deem that that element is in there.

16  That's what I'm going to tell the jury.

17          **MR. JACOBS:**  And then, just procedurally, because we

18  had a -- a kind of a deemed-admission approach in Phase One, do

19  we need to go through that in Phase Two, or can we just take

20  the language of the order and port it into Phase Two?

21          The language of the order says:  "Nine highlighted

22  phrases will be deemed conceded as to those references" --

23          **THE COURT:**  You don't have to bring such a motion.

24          Let me tell you how I do it in all the other patent

25  trials, at least for the last three or four years.  And I think

1  this works great.

2          And jury definitely appreciates this.  We give them

3  each a handout that's color coded.  And the highlighted part is

4  what you contest.  So if you're the defendant accused of

5  infringement, you highlight those items, the language in the

6  claim language that you say is not resident in the accused

7  product.  So, hopefully, you just highlight two or three

8  things.  Or one maybe.

9          I had a case where they only highlighted "NH" for

10  ammonia, or "NH3" for ammonia, whatever ammonia is.  That was

11  it.  They had a long claim.  There were the two letters that

12  were highlighted.  And they won.

13          If you highlight everything, you are going to look

14  bad, I think.  You can highlight.  If you want to take that

15  gamble, go ahead.  But, in my judgment, the less you highlight

16  the better off you are.

17          Wait.  Let me finish.

18          **MR. JACOBS:**  Well, procedurally, we are already

19  passed that here, because we have already exchanged these

20  highlightings.

21          **THE COURT:**  Fine.  All right.  I'm thinking out loud.

22          And then you, on the other side, have got to do the

23  same thing on the invalidity.  If they say that the Smith

24  reference in 1947 anticipated this, then you highlight the

25  items in the claim language that you think are not resident in

1   Smith.

2            And, so, it works both ways.  This is a burden that

3   falls on both sides.

4            And then we hand it out to the jury.  And I will

5   explain to them that everything else is conceded.

6            Now, I want to make sure no one is going to stand up

7   and object to that.  I assume you all agree that that's what

8   I'm going to tell the jury.

9            Mr. Van Nest, is that right?

10           **MR. VAN NEST:**  I'll let Mr. Kamber -- what's the

11   question?

12           **THE COURT:**  The question is, if you didn't highlight

13   it, I'm going to tell the jury you stipulate it's in the

14   product.

15           And, just like Mr. Jacobs, I'm going to say if he

16   didn't highlight it, he stipulates that it's in the reference

17   for invalidity purposes.

18           **MR. KAMBER:**  Your Honor, Matthias Kamber from Keker

19   Van Nest, for Google.

20           There is one sort of issue with this, and that is the

21   direct versus indirect infringement distinction.  And in this

22   particular case, we wouldn't disagree with the conceding or

23   with the waiver with respect to the direct infringement

24   inquiry.  But it's a complicated issue with respect to indirect

25   infringement, particularly whether this code is on devices from

1  the different manufacturers, which Google does not know and is

2  something that is Oracle's burden of proof.

3            **THE COURT:**  Well, is there an accused item that is in

4  Google's possession?  Surely, there must be.  Android.  Isn't

5  there such a thing as Android --

6            **MR. KAMBER:**  Android is in Google's possession.

7            **THE COURT:**  It's on your website, probably.

8            **MR. KAMBER:**  Correct.

9            **THE COURT:**  All right.

10            **MR. KAMBER:**  The issue, Your Honor, is that we don't

11  know what happens with Android once HTC or Motorola get their

12  hands on it, and whether the code that's being accused of

13  infringement is actually on that --

14            **THE COURT:**  I hadn't thought of that problem.  And I

15  am only suggesting that I am going to say to the jury that it's

16  the Android on the website, or it's the Android that you ought

17  to know what's on there, it's the Google version.

18            And I'm being silent right now on the versions that

19  are in the hands of third parties.  That I don't know the

20  answer to.  And I'm not saying yes or no to that.  But that

21  does seem -- that's a problem I haven't had in past cases.

22            So, Mr. Jacobs, what do you say to that?

23            **MR. JACOBS:**  We can live with that outcome, Your

24  Honor.

25            **THE COURT:**  All right.

1             **MR. JACOBS:**  I just need one more --

2             **THE COURT:**  And you're going to stipulate that

3   anything you didn't underline on the prior art is -- is

4   resident in the prior art reference?

5             **MR. JACOBS:**  Yes.  To be really clear about it, Your

6   Honor, we're looking at your order that was filed November 1st,

7   2011.  And on anticipation, it says:

8             "Non-highlighted phrases will be deemed

9             conceded as to those references."

10            And on infringement it says:

11            "As to each claim to be tried, defendant

12            shall highlight in pink each phrase it

13            contends is missing from the accused device

14            or method.  The remainder will be deemed

15            conceded."

16            And I think we changed -- maybe did something with

17   the colors, but the point is, it goes both ways, and we just

18   wanted to be sure we didn't need an additional process.

19            **THE COURT:**  No, I think you're okay.

20            Now, I think what I deemed to be conceded on

21   invalidity is anticipation only.

22            **MR. JACOBS:**  That's correct.

23            **THE COURT:**  It's too hard to try to make that work on

24   obviousness.  All right -- yes.

25            **MR. JACOBS:**  So, I'm sorry, just because I don't want

 1  to miss a beat on this.

 2          These charts, then, become part of the evidentiary

 3  record.  They are marked as exhibits in evidence.  Is that

 4  correct?

 5          **THE COURT:**  We'll do that.  We'll also give out a

 6  handy reference copy to each member of the jury.

 7          **MR. JACOBS:**  Great.  Thank you, Your Honor.

 8          **THE COURT:**  And you ought to have a big blowup chart

 9  to show the jury, or at least put it on the electronic

10  equipment.

11          What else do we have to take up on this?

12          **MR. VAN NEST:**  I can't think of anything else, Your

13  Honor.

14          **MR. JACOBS:**  Nothing from us, Your Honor.

15          **MR. VAN NEST:**  I guess the only thing I would say is,

16  in terms of timing, if -- and it's impossible to predict.  But

17  I think if we get a verdict mid-morning or late morning

18  tomorrow, it would make sense to give the jurors a little

19  cooling off time and start arguments first thing the next day.

20          **THE COURT:**  I would do that.  But if it's early in

21  the morning, we need to get rolling.

22          **MR. VAN NEST:**  I get that.  I get that.

23          **THE COURT:**  So if it's -- I don't know when I would

24  draw the line, but if it was 11 o'clock we would send them

25  home.  If it was 8:45, we would roll on to the next phase.

```
 1              MR. VAN NEST:  I'll bid 10:00.  What's your bid, Your

 2    Honor?

 3              THE COURT:  I'll have to flip a coin.

 4              (Laughter)

 5              MR. JACOBS:  Your Honor, we had findings of fact and

 6    conclusions of law.  I think they were due at noon.  And we

 7    have been here, and I would like to take a look at --

 8              THE COURT:  I think they are due -- are they due

 9    today or tomorrow?  Didn't you change it so two days?  Or is

10    it --

11              MR. VAN NEST:  You gave us an extra day, but it was

12    two days after the close of the evidence.

13              THE COURT:  That was yesterday.

14              MR. VAN NEST:  Well --

15              MR. JACOBS:  Two business days.

16              MR. VAN NEST:  -- that sounds fine.  If they are due

17    tomorrow at noon, we can live with that.

18              MR. JACOBS:  I'm sorry.  Great.

19              (Laughter)

20              MR. JACOBS:  I should take victory when I get it.

21              (Laughter)

22              THE COURT:  I have been assuming it was noon

23    tomorrow.

24              MR. JACOBS:  Fabulous.

25              (Laughter)
```

PROCEEDINGS                                    2656

1             MR. BABER:  Sold.

2             MR. VAN NEST:  The customer is always right, Your

3   Honor.  So that will be the order.

4             THE COURT:  All right.  Well, you all stand by.

5   There may be a new note any moment.

6             MR. JACOBS:  Thank you, Your Honor.

7             MR. VAN NEST:  Thank you, Your Honor.

8             THE COURT:  All right.

9             (At 11:11 a.m. the proceedings were adjourned as the

10            jury deliberations continued.)

11                          - - - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

## CERTIFICATE OF REPORTERS

I, KATHERINE POWELL SULLIVAN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 10-3561 WHA, **Oracle America, Inc., vs. Google, Inc.,** was reported by me, certified shorthand reporter, and was thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings at the time of filing.


_____
/s/ Katherine Powell Sullivan


Katherine Powell Sullivan, CSR #5812, RPR, CRR
U.S. Court Reporter


Tuesday, May 1, 2012