```
                                         Volume 14

                                         Pages 2657 - 2679

            UNITED STATES DISTRICT COURT

         NORTHERN DISTRICT OF CALIFORNIA

     BEFORE THE HONORABLE WILLIAM H. ALSUP

ORACLE AMERICA, INC.,           )
                                )
          Plaintiff,            )
                                )
  VS.                           ) No. C 10-3561 WHA
                                )
GOOGLE, INC.,                   )
                                )
          Defendant.            ) San Francisco, California
_____) May 2, 2012
```

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**

**APPEARANCES:**

**For Plaintiff:**          MORRISON & FOERSTER
                            755 Page Mill Road
                            Palo Alto, California  94304
                     **BY: MICHAEL A. JACOBS, ESQUIRE
                          KENNETH A. KUWAYTI, ESQUIRE
                          MARC DAVID PETERS, ESQUIRE
                          DANIEL P. MUINO, ESQUIRE**

                            BOIES, SCHILLER & FLEXNER
                            333 Main Street
                            Armonk, New York 10504
                     **BY: DAVID BOIES, ESQUIRE
                          ALANNA RUTHERFORD, ESQUIRE**

(Appearances continued on next page)

**Reported By:**   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                  *Official Reporter - US District Court*
                  *Computerized Transcription By Eclipse*

**APPEARANCES (CONTINUED):**

| | | |
|---|---|---|
| **For Plaintiff:** | | BOIES, SCHILLER & FLEXNER |
| | | 1999 Harrison Street, Suite 900 |
| | | Oakland, California  94612 |
| | **BY:** | **WILLIAM FRED NORTON, ESQUIRE** |
| | | **STEVEN C. HOLTZMAN, ESQUIRE** |

ORACLE AMERICA, INC.
500 Oracle Parkway
Redwood Shores, California  94065
  BY: **ANDREW C. TEMKIN, CORPORATE COUNSEL**
      **DORIAN DALEY, GENERAL COUNSEL**


**For Defendant:**    KEKER & VAN NEST
                     633 Battery Street
                     San Francisco, California  94111-1809
              BY:    **ROBERT ADDY VAN NEST, ESQUIRE**
                     **CHRISTA MARTINE ANDERSON, ESQUIRE**
                     **DANIEL PURCELL, ESQUIRE**
                     **MICHAEL S. KWUN, ESQUIRE**

                     KING & SPALDING LLP
                     1185 Avenue of the Americas
                     New York, New York 10036-4003
              BY:    **BRUCE W. BABER, ESQUIRE**

                     GOOGLE, INC.
                     1600 Amphitheatre Parkway
                     Mountain View, California  94043
              BY:    **RENNY HWANG, LITIGATION COUNSEL**


**Also Present:**    **SAFRA CATZ, President and CFO**
                     Oracle Corporate Representative

                     **CATHERINE LACAVERA**
                     Google Corporate Representative

                          —  —  —

```
 1                    P R O C E E D I N G S
 2   MAY 2, 2012                                          8:45 a.m.
 3
 4            THE CLERK:  Please remain seated and come to order.
 5            (Proceedings held in open court, outside
 6             the presence and hearing of the jury.)
 7            THE COURT:  Okay.  We've got some notes.  Have you
 8   read the two notes?
 9            MR. VAN NEST:  We have, your Honor.
10            THE COURT:  So No. 3.  Note No. 3 from Greg Thompson,
11   who sent us one of the notes yesterday, reads:
12            "On Page 13 of our instructions, the
13        first of the four fair use includes the terms
14        'commercial nature' and 'commercial use.'  In
15        the given context, does commercial use/nature
16        include so-called downstream revenue, i.e.,
17        expected advertising revenue from use by
18        third parties (smart phone users)?  Or, is
19        the definition of commercial use limited in
20        this case by virtue of Android being freely
21        distributed, in other words it is not sold
22        directly?  Can we consider indirect revenue
23        from the copyrighted work?"
24            That's question No. 3.
25            Question No. 4 from Julie Chin [sic] is:
```

1            "When considering the purpose and
2       character of the use of copyrighted works for
3       the purpose of fair use, can we consider
4       indirect commercial uses?"
5            So the Page 13, I'll just read the paragraph in
6  question.
7            "In determining whether the use made of
8       the work was fair, you should consider the
9       following factors:
10           "One, The purpose and character of the
11      use, including whether such use is of a
12      commercial nature, for non-profit educational
13      purposes, and whether such work is
14      transformative, meaning whether Google's use
15      added something new with a further purpose or
16      different character, altering the copied work
17      with new expression, meaning or message.
18      Commercial use cuts against fair use while
19      transformative use supports fair use."
20           I won't read the other three factors.
21           All right.  Comments, please?
22           **MR. JACOBS:**  Your Honor, consistent with the approach
23  yesterday to advising the jury of what they may consider, we
24  would urge that the questions be answered -- that they be
25  answered directly and crisply and that they be answered as

1   follows.

2           On question No. 3, there are three questions.  And
3   they should be answered "yes," "no," and "yes."

4           And on question No. 4 it should be answered "yes."

5           That's the simple crisp way to explain to the jury
6   that they may consider this evidence for this purpose.  I'm
7   pulling up the formulation that was used yesterday to advise
8   them that they may consider evidence.

9           If one wanted to add more words around "yes," "no,"
10  and "yes" and "yes," one could say, "You may consider such --
11  this evidence for this -- under this factor."

12          Both of those would, I think, answer their questions
13  correctly and without tilting them in any particular direction.
14  It's simply saying they may consider the evidence.

15          After yesterday's discussion, it would seem to me to
16  be hard to give -- about considering evidence for purposes
17  consistent with the instructions, it would be -- it's hard for
18  me to imagine that we could give a different answer.

19          **THE COURT:**  What does Mr. Van Nest say?

20          **MR. VAN NEST:**  I think that would be wrong to put --
21  to put any sort of hand on the scale, your Honor, of what
22  particular evidence they can or cannot consider.

23          I really think this is one in which the only proper
24  answer is to say that, "Your questions are already adequately
25  addressed in the instruction."

```
 1              I note that the first three lines of point one were
 2   directly from the statute.  Nobody asked your Honor to give a
 3   more specific definition of "commercial use" or "commercial
 4   nature."  We argued about transformative use and so on and so
 5   forth, and you added something for us, the transformative use.
 6   You added something for them, the commercial use cuts against
 7   fair use.  And I think it would be improper, given the specific
 8   nature of these questions, for your Honor to be giving them
 9   anything like the guidance that Oracle suggests where you're
10   picking out specific items of evidence and either saying "yes"
11   or "no."
12              It seems to us that these, these issues are
13   adequately addressed in the instructions, and that's really all
14   you would need to tell the jurors at this point.  Otherwise, I
15   think you're getting into the deliberations and indicating what
16   is relevant and what is not.
17              If we had a -- if someone had asked for something
18   more specific on "commercial use" or "commercial nature," your
19   Honor would have considered that.  No one did.  And that's how
20   the instruction went to the jury.
21          THE COURT:  Anything more?
22          MR. JACOBS:  Again, to amplify the point about our
23   discussion yesterday, the question that came out was whether
24   third-party sources could be considered for any purpose under
25   the instructions.  And we urged that the jury be given more
```

1  focused guidance.  Google urged that the formulation, "You may
2  consider this evidence for any other purpose," I think was
3  something like the ultimate language -- I haven't been able to
4  pull it up yet -- and the Court adopted that approach.
5          All they're asking is whether this evidence can be
6  considered under the commercial use and commercial purpose leg
7  of the first factor.  The answer is, of course, yes.
8          **MR. VAN NEST:**  Again, your Honor, I think this is one
9  you told them yesterday; that sometimes the only answer you can
10 give is, "These are addressed in the instructions," and I think
11 that's the appropriate answer here, particularly in light of
12 the very nature of these questions and the specificity of them,
13 pointing out specific evidence.
14         **THE COURT:**  Well, that's not exactly what I said
15 yesterday.
16         Anything more?
17         **MR. VAN NEST:**  I think if your Honor were going to
18 address anything beyond, "These are adequately addressed in the
19 instructions," you would -- you would need to point out, I
20 think, that if you're going to say anything at all about
21 evidence, it ought to pertain to either all factors or at least
22 all of factor one.
23         Factor One, they are asking -- particularly
24 Ms. Chiu's question -- when considering the purpose and
25 character of the use, it would be, I think, improper to say

1  anything specific about commercial use one way or the other

2  given that Factor One also includes transformative use and

3  Factor One is one of four factors in which your Honor has said

4  they have to consider them all.

5      So we would, again, urge that the response be very

6  general and really limited to simply, "This is already covered

7  by the instructions."

8      **MR. JACOBS:**  One more point, your Honor.

9      My best recollection of Google's closing argument is

10 that Google did not actually argue that the use was not

11 commercial.  Google argued that the use was transformative and

12 noted that it had been made available freely and under an Open

13 Source license, but did not argue that it wasn't commercial.

14     **MR. VAN NEST:**  I'm not sure why that would matter,

15 your Honor, but I did tell jurors, as your Honor will recall,

16 that Android was not something that was either sold or

17 licensed; that Google made money based on the way it makes

18 money on all platforms, selling advertising.  But that Android,

19 itself, was not licensed or sold.  It was given away.  It was

20 free and open.

21     So, again, I think a very general response, your

22 Honor, is the only thing appropriate here.

23     **THE COURT:**  What the Court proposes to do is to say

24 that the word "use" includes both direct and indirect uses and

25 that -- in the Court's judgment, that adequately answers both

```
 1  questions.
 2           Any objection?
 3       MR. JACOBS:  No, your Honor.
 4       MR. VAN NEST:  Yes, we would object, your Honor.
 5  I really think that's putting your finger too heavily on the
 6  scale to tell them, yes, you can consider this; or, no, you
 7  can't.
 8           I think if you're going to say anything, it should be
 9  limited to, "You may consider any evidence, give it the weight
10  you think it deserves."  Right?  That's what you said
11  yesterday.  I think you said something like "if any" or "any
12  value it deserves."
13           To say just a flat-out "yes" in response to this more
14  specific question would be inconsistent with what we did
15  yesterday.  "Any value you think it has," I believe, was the
16  language that we used.
17           Here it is:
18        "Whatever value you think it has on the
19     issues that are for you to decide.  You may
20     consider the evidence you have referenced for
21     whatever value you think it has."
22           That would certainly be better than flat-out "yes" or
23  "no."
24       THE COURT:  Well, what I can do is repeat what I said
25  at the bottom of that instruction:  "All of the factors should
```

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

```
 1  be weighed together to decide," et cetera, et cetera, in the
 2  first two sentences of that.  I can -- I don't have any problem
 3  reminding them of the totality of that paragraph.
 4          MR. VAN NEST:  That would be fine, your Honor.
 5          MR. JACOBS:  If you're going to remind them of the
 6  totality of it, your Honor, I would suggest reminding them of
 7  the totality of the instruction.
 8          THE COURT:  Why is that?  What totality?
 9          MR. JACOBS:  The introductory language of the
10  instruction focuses on exemplary uses as well.
11          But I would come back.  I think the Court's
12  formulation is perfectly adequate and doesn't go beyond
13  anything necessary.  It doesn't tilt it one way or the other;
14  whereas, adding a tag line that weakens the answer by saying
15  you can consider everything, might tilt them -- might suggest
16  to the jury that they are --
17          THE COURT:  We're splitting hairs here in trying to
18  put too fine a point on it.  I have heard you out on both
19  sides.
20          Please bring back the jury and I will tell them the
21  answer.
22          (Jury enters courtroom at 8:58 a.m.)
23          THE COURT:  Okay.  Welcome.  Have a seat.
24          Thank you for your last two notes.  I'm going to try
25  to answer them.  And just so you all know what I'm answering, I
```

 1  will read them for you.
 2          First from Mr. Thomas, I will read your note.
 3          "On Page 13 of our instructions, the
 4      first of the four fair use factors includes
 5      the terms 'commercial nature' and 'commercial
 6      use.'  In the given context does, commercial
 7      use/nature include so-called downstream
 8      revenue, i.e., expected advertising revenue
 9      from third parties (smart phone users)?  Or,
10      is the definition of commercial use limited
11      in this case by virtue of Android being
12      freely distributed?  In other words, it is
13      not sold directly?  Can we consider indirect
14      revenue from the copyrighted work?"
15          Okay.  That's one question.
16          Another question relating to the same question is
17  No. 4.  From Ms. Julie Chin [sic].
18          **JUROR CHIU:**  Chiu.
19          **THE COURT:**  Chiu, I'm sorry.  I can't read your
20  handwriting.  I apologize.  Chiu.
21          "When considering the purpose and
22      character of the use of copyrighted works,
23      for the purpose of fair use, can we consider
24      indirect commercial uses?"
25          So here is the answer.  Again, you will remember the

```
 1  caveats I gave you about the mode in which I must address
 2  questions like this.  I try my best, but there are traditional
 3  limitations on what a judge can say at this point.
 4          First, I want to begin by saying that all of this
 5  arises under Paragraph 26 in the instructions.  That's the one
 6  that deals with fair use and it's about a page and a half long.
 7  So it's important whenever you hear an answer like I'm about to
 8  give you, that you remember that there is an entire paragraph.
 9          And I don't want to give undue weight to anything.  I
10  want you to remember that you must apply the entirety of the
11  law that I give you and not leave the room thinking that I've
12  given you some secret code to how to resolve the case by
13  answering a limited question.  That's not my intent.  My intent
14  is to remind you of the overall instructions, not single out
15  one and so forth.
16          However, you did ask a question and I think that the
17  entirety of both questions can be adequately answered by saying
18  that with respect to the first factor that calls out the
19  purpose and the character of the use, that phrase contemplates
20  both direct and indirect uses.  All right?
21          So you may now retire to the jury room and continue
22  your deliberations.
23          **THE CLERK:**  All rise.
24          (Jury exits courtroom at 9:02 a.m.)
25          **THE COURT:**  All right.  Anything more?
```

```
 1              MR. JACOBS:  Not from us, your Honor.
 2              MR. VAN NEST:  No, your Honor.
 3              THE COURT:  I had a different question.
 4         Now, you're all still on track to get me your rulings
 5   by noon, right?
 6              MR. VAN NEST:  Right.
 7              MR. JACOBS:  Yes.
 8              THE COURT:  I'm anxious to start reading those.  Did
 9   I give you three days after that or two days after that to do
10   your responses?
11              MR. JACOBS:  By our calculation the responses are due
12   on Saturday.  I don't remember -- I actually don't remember how
13   we got there.
14              THE COURT:  You file on Saturday.  Don't push it over
15   til Monday now.  File them on Saturday.
16         All right.  We'll continue right on.  Stand by.
17   Thank you.
18            (Whereupon further proceedings were adjourned
19              for jury deliberations.)
20            (Time noted:  10:19 a.m.)
21              THE COURT:  All right.  We have another note, No. 6,
22   from Jennifer Michals.
23         "Please bring equipment to play a DVD.
24      Thanks."
25         So let me just ask a practical question.  Do we --
```

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

```
 1  there were some DVDs placed in evidence, weren't there?
 2          MR. JACOBS:  Yes, there were, your Honor.
 3          THE COURT:  All right.  So that's a legitimate
 4  request.
 5          Do the lawyers have equipment we can take into the
 6  jury room?
 7          MR. JACOBS:  We do.  We anticipated this possibility,
 8  had an earlier exchange with Google in which we were unable to
 9  reach agreement in advance on providing computers or other
10  mechanisms to play the DVDs.
11          But we are ready to go.  Some computers are on the
12  way over.  We will ask Google's tech person to take a look at
13  them to make sure that they are comfortable with what we're
14  giving to the jury.  They have been -- the wi-fi has been
15  disabled so that roaming around on the internet can't be done
16  from these laptops.  They will play DVDs.  They have various --
17  they have software on them, such as Adobe Reader, to read the
18  exhibits in the format in which they are on the DVDs.
19          I'm told they will be here in about 20 or 25 minutes
20  or so.  I would like Google to look at them, and I think Google
21  wants to look at them, to make sure they are comfortable with
22  them and then we can provide them to the jury.
23          MR. VAN NEST:  That's fine, your Honor.
24          THE COURT:  So how much longer do you think it will
25  be?
```

```
 1              MR. VAN NEST:  Once they are here, it just should
 2   just be a few minutes for us to look at them.  It's a question
 3   of getting them here.
 4              MR. JACOBS:  And they are on the way as we speak,
 5   so...
 6              THE COURT:  Give me a time estimate.
 7              MR. JACOBS:  How about if we said they will go in by
 8   11:00 o'clock?
 9              THE COURT:  11:00 o'clock?
10              MR. JACOBS:  Uh-huh.
11              THE COURT:  I'm going to write on the note:
12         "Equipment will be brought to you by
13      11:00 a.m.  The Judge."
14         All right?
15              MR. VAN NEST:  That's fine, your Honor.
16              THE COURT:  What does it say, 10:25?  Now, both sides
17   agree to that?
18              MR. JACOBS:  Yes, your Honor.
19              MR. VAN NEST:  That's fine.
20              THE COURT:  Now, you need to know if they reach a
21   verdict before 11:00 o'clock, that's their prerogative.  They
22   don't have to wait for a thing.  They can decide they don't
23   need to see it.  They are the boss.  So here we have a
24   35-minute hiatus.  That's life.
25              So, Dawn, please take this note back into the jury
```

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

```
 1  room and the lawyers will let us know as soon as you can get
 2  that here.
 3           All right.  I got a question while I've got you here.
 4  I'm doing work on other items.  I don't know what the exhibit
 5  number is, but there is a document called "Specification Java 2
 6  Platform, Standard Edition Development Kit, 5.0 Specification."
 7  Then it says, quote, Specification, close quote.  And then the
 8  word "specification" is used throughout, but it's never
 9  defined, and I can't -- I'd like to know where the word
10  "specification," if at any place, is defined or is it just this
11  thing at the top that says "Specification."  Is that somehow
12  intended to be the definition?
13           So you don't have to answer right now, unless you do
14  know the answer, but I would like to know if there is an
15  alternative definition, because it's an initial cap word.  I
16  would like to be using the right definition.
17           **MR. JACOBS:**  Can we take a quick look?
18           **THE COURT:**  I don't have a trial exhibit number.
19           **MR. NORTON:**  610.
20           **MR. JACOBS:**  Understood, your Honor.
21           **THE COURT:**  The other thing is, you know, those two
22  books that you put in evidence that were referenced several
23  times.  One was called the API something, and the other --
24  there were two books.
25           **MR. JACOBS:**  One is the *Programming Language*
```

1  *Specification*, I believe, and the other is the *Application*
2  *Programming Interface.*
3           **THE COURT:**  Yes.  If you two could agree upon a -- I
4  would like to have a work copy of that, those two books, and
5  if -- if you could get it for me, but I wouldn't want you to do
6  it unless you both agree -- I mean, I can look at the one in
7  the jury room, but the jury is using that.  So I'd like for you
8  to both give me a working copy.
9           **MR. BABER:**  Your Honor, just to be clear, I think
10 there were three books.  One book was the *Programming Language*
11 *Specification*.  And then there was the *API Volume 1, Core*
12 *Packages*, and then there was *API Volume 2*, Applets and other
13 things.
14          **THE COURT:**  Let's do all three then.
15          **MR. KWUN:**  Your Honor, actually there was a fourth.
16 There's also the *First Edition of the Java Language*
17 *Specification*.
18          **THE COURT:**  All right.  I'll take all four, but I
19 want you to agree on it and write the exhibit number there so I
20 can have that handy.
21          **MR. VAN NEST:**  Your Honor, just so I understand, you
22 want -- these are things that are in evidence, but you want a
23 working copy of whatever that thing in evidence is?
24          **THE COURT:**  Because I have an issue that I'm supposed
25 to be deciding and I'm doing my homework.

```
 1              MR. VAN NEST:  We will get them to you.
 2              THE COURT:  And meanwhile some of the things I need
 3   to do my homework are in the jury room.  I would like to have a
 4   work copy of those documents.
 5              So to go back to the DVD player.  When you bring it
 6   up here, show it to Dawn.  When you both agree it's in good
 7   form to go in, she will just take it in without further adieux
 8   and not have to have another hearing.
 9              MR. VAN NEST:  Understood.
10              THE COURT:  She is not going to do it until both of
11   you tell her it's okay.  All right?
12              Yes, sir.
13              MR. BABER:  Back on the books, your Honor.  We can
14   provide you with photocopies of the books right now.
15              THE COURT:  No, no.  I want a real book.  I don't
16   like photocopies as much.
17              MR. BABER:  Fair enough.
18              THE COURT:  Can I have a real book?
19              MR. BABER:  You absolutely can.  I was just trying to
20   give it to you faster.
21              THE COURT:  That's okay.  I can wait.  I can even
22   wait til tomorrow.  I would just like to have the book.
23              All right.  Anything more?
24              MR. JACOBS:  Nothing from us, your Honor.
25              MR. VAN NEST:  No, your Honor.
```

```
 1            THE COURT:  I will let you all go back to work.
 2   Thanks.
 3            (Whereupon further proceedings were pending
 4             jury deliberations.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

**CERTIFICATE OF REPORTER**

      DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certifies that the foregoing proceedings in C 10-3561 WHA, **Oracle America, Inc., vs. Google, Inc.,** were reported by her, certified shorthand reporter, and were thereafter transcribed under her direction into typewriting; that the foregoing is a full, complete and true record of said proceedings at the time of filing.


           /s/ Debra L. Pas
           Debra L. Pas, CSR #11916, RMR CRR


           Wednesday, May 2, 2012