| | |
|---|---|
| KEKER & VAN NEST LLP | KING & SPALDING LLP |
| ROBERT A. VAN NEST - # 84065 | DONALD F. ZIMMER, JR. - #112279 |
| rvannest@kvn.com | fzimmer@kslaw.com |
| CHRISTA M. ANDERSON - # 184325 | CHERYL A. SABNIS - #224323 |
| canderson@kvn.com | csabnis@kslaw.com |
| DANIEL PURCELL - # 191424 | 101 Second Street, Suite 2300 |
| dpurcell@kvn.com | San Francisco, CA 94105 |
| 633 Battery Street | Tel: 415.318.1200 |
| San Francisco, CA 94111-1809 | Fax: 415.318.1300 |
| Telephone: 415 391 5400 | |
| Facsimile: 415 397 7188 | |
| KING & SPALDING LLP | IAN C. BALLON - #141819 |
| SCOTT T. WEINGAERTNER | ballon@gtlaw.com |
| (*Pro Hac Vice*) | HEATHER MEEKER - #172148 |
| sweingaertner@kslaw.com | meekerh@gtlaw.com |
| ROBERT F. PERRY | GREENBERG TRAURIG, LLP |
| rperry@kslaw.com | 1900 University Avenue |
| BRUCE W. BABER (Pro Hac Vice) | East Palo Alto, CA 94303 |
| 1185 Avenue of the Americas | Tel: 650.328.8500 |
| New York, NY 10036 | Fax: 650.328.8508 |
| Tel: 212.556.2100 | |
| Fax: 212.556.2222 | |

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., | Case No. 3:10-cv-03561 WHA |
| Plaintiff, | **MOTION IN LIMINE RE EVIDENCE ALLEGEDLY SUPPORTING KNOWLEDGE REQUIREMENT FOR INDIRECT INFRINGEMENT** |
| v. | |
| GOOGLE INC., | Dept.: Courtroom 8, 19th Floor |
| Defendant. | Judge: Hon. William Alsup |

## I. INTRODUCTION

The patents that Oracle has asserted in this case contain method claims that in many instances are allegedly infringed not by Google itself, but by developers or end users of open source software originally created by Google. In order to prove that Google is liable for such alleged infringement by others (and to collect damages for any such alleged indirect infringement), the law requires Oracle to show that Google knew of the specific patents on which Oracle is suing at the time of the alleged infringement by those other persons. It is not sufficient to show that Google knew generally that Sun or Oracle had patents, nor to show that Google could have looked at Sun's or Oracle's portfolios and determined that they contained patents that might cover the relevant functionality. And the inconvenient -- and undisputed -- truth is that Oracle never informed Google of the patents Google was allegedly infringing until July 20, 2010 -- mere weeks before this lawsuit was filed.

Because of its decision to wait until the eleventh hour to reveal the patents that were allegedly infringed, Oracle has no proof of an essential element of its claims for alleged indirect infringement occurring before that time. Accordingly, it is now seeking to muddy the waters by designating deposition testimony from Google executive Andy Rubin stating, in substance, that Google had not researched Sun's patent portfolio in the years leading up to this lawsuit. Oracle undoubtedly wishes to introduce such testimony in order to confuse the jury into believing that whether Google investigated Sun's patents at some point in the past is relevant to the question whether Google had the requisite knowledge and state of mind to support liability for indirect infringement. But that is not the law. Accordingly, the testimony that Oracle seeks to offer from Mr. Rubin's deposition should be excluded under Federal Rule of Evidence 402 and/or 403.

## II. ARGUMENT

### A. Oracle must show knowledge of the patents-in-suit in order to establish liability for indirect infringement

It is black-letter law that "[a] patent owner must prove the defendant's knowledge of the infringed patent to prove indirect infringement by inducement or contribution." *Avidyne Corp. v. L-3 Comm'ns Avionics Sys., Inc.*, No. 05-11098-GAO, 2012 U.S. Dist. LEXIS 43149 (D. Mass.

1

1  Mar. 29, 2012), at *2 (granting summary judgment of no indirect infringement by an accused
2  infringer for the time prior to receipt of notice by way of a cease and desist letter).  Here, the
3  evidence is undisputed that Oracle never provided Google with notice of the patents Google was
4  allegedly infringing prior to a July 20, 2010 meeting between representatives of the companies.
5  There will be evidence introduced in Phase 2 regarding Oracle's failure to provide notice to
6  Google of the specific patents that Oracle alleged were infringed.  However, there is already
7  evidence in the record on this point from Phase 1.  Oracle's own President and Chief Financial
8  Officer confirmed during her trial testimony that Google was not provided with notice of the
9  patents Oracle alleged Google was infringing prior to the July 2010 meeting:

> **Q.**  And did Mr. Eustace have a response?
>
> **A.**  He -- he asked -- he asked specifically, what IP?  And I said the lawyers would follow up with their lawyers on that.  And we made a -- a financial proposal, and he was supposed to respond back to us in a little while.

13  RT 2314:3-7 (Catz).  Because it is undisputed that Oracle did not give notice of these patents to
14  Google prior to the July 20, 2010 meeting, Oracle wishes to confuse the jury into thinking that
15  Google had an affirmative duty to seek out information on patents held by others in order to avoid
16  liability for indirect infringement.  But it was not Google's burden to look into Oracle's patent
17  holdings; it was Oracle's duty to put Google on notice of patents that it claimed to be infringed.
18  Allowing Oracle to introduce a repeated series of questions regarding any investigation of
19  potential patent infringement by Google (or the lack thereof) could only serve to mislead the jury
20  into thinking that such testimony is relevant to any of the issues they are to decide.  It is not.
21  Moreover, inquiries into what investigation Google conducted into patent infringement
22  allegations naturally runs a risk of trenching on privileged communications, something that the
23  Court held in its January 4, 2012 motion in limine order should not be brought into the case
24  without a specific proffer and approval in advance.  ECF No. 676 at 6.

**B.**     **The evidence proffered by Oracle would not suffice to prove willful blindness**

26  Since Oracle cannot show that Google had actual knowledge of either of the two patents-
27  in-suit prior to July 2010, Oracle will likely argue that the Court should instruct the jury that they
28  could determine that the knowledge requirement is satisfied if it finds that Google was "willfully

2

blind" with respect to the patents. But the case law will not support such a notion. In the case that recently approved the possibility of willful blindness substituting for actual knowledge, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011), the accused infringer had "purchased an SEB fryer in Hong Kong and copied all but its cosmetic features." *Id.* at 2064. The Hong Kong device did not bear any U.S. patent markings, and the accused infringer subsequently hired a patent attorney to conduct a right-to-use study without "telling the attorney that its design was copied directly from SEB's." *Id.* Such an active attempt to avoid knowledge of infringement is a far cry from the testimony that Oracle seeks to put before the jury here. Samples of the questions posed by Oracle's counsel, which Oracle now seeks to introduce into evidence, include: "Why did you not conduct a review of Sun, later Oracle America's patents as they might relate to Android?" (Rubin July 27 Dep. Tr. at 10:4-6) (portions designated by Oracle attached hereto as Exhibit A) and "To the best of your knowledge, between Google's acquisition of Android and the filing of the lawsuit in this action, did Google ever investigate Sun's, later Oracle America's patent portfolio as it might relate to Android?" (*Id.* at 19:20-24). Leaving aside the questions of privileged communications lurking in such queries, putting on such evidence is no more than an attempt to make the jury think that the shoe is on the other foot with respect to the burden of proving Google's knowledge of the patents-in-suit. Elsewhere, Oracle's counsel questioned Mr. Rubin about an email suggesting that Sun had threatened to sue over patent violations. (Rubin April 5 Tr. at 28:5-30:24) (portions designated by Oracle attached hereto as Exhibit B). Those questions, however, were never tied to the specific patents-in-suit here. Again, the net effect would be to raise questions in the mind of the jury as to Google's knowledge of the patents-in-suit, while there is no evidence suggesting that the testimony had any connection with these specific patents.

The case law in the wake of *Global-Tech* has made clear that the standard for willful blindness liability is not whether a company could have found patents if it had tried. For example, *Apeldyn Corp. v. AU Optronics Corp.*, No. 08-CV-568-SLR, 2011 U.S. Dist. LEXIS 134759 (D. Del. Nov. 15, 2011), held that an accused infringer could not be held to have been willfully blind even where it was "a large company with thousands of patents," had "a large

intellectual property division and ample resources to monitor patents," and had lawyers who did not "collect patents issued to competitors unless asked to do so." *Id.* at *28. *Apeldyn* demonstrates that knowledge that a litigious adversary may sue for patent infringement does not create a duty to affirmatively investigate the patents held by that company.

Even if Oracle were permitted to attempt to demonstrate that Google had knowledge of the patents-in-suit through its repeated questions about Google not investigating Oracle patents (and that legal theory is fatally flawed for the reasons discussed above), that still would not suffice to demonstrate liability for inducement of infringement. Courts recognize that knowledge a patent exists is not sufficient; the patentee must also show that the defendant intended to induce infringement of that patent, which in turn requires knowledge that the induced acts constitute infringement. In *Mikkelsen Graphic Eng'g Inc. v. Zund America, Inc.*, No. 07-C-0391, 2011 U.S. Dist. LEXIS 141546 (E.D. Wis. Dec. 8, 2011), the court granted summary judgment as to inducement of infringement because there was insufficient evidence that the accused infringer had the intent to induce acts of patent infringement. Specifically, the most the accused infringer could have done "was to induce Zund to commit acts that would constitute patent infringement if the patent was, at some point in the future, construed in a particular way." *Id.* at *19. The same is true here. The parties hotly contest whether the claims of the two patents-in-suit, properly interpreted, cover what the Android SDK or Android devices do when run. Thus, even actual knowledge of the patents (which Google undisputedly did not have prior to July 2010) would not suffice to allow imposition of liability for inducing infringement. The testimony that Oracle seeks to elicit is thus not merely confusing and prejudicial, but also insufficient to prove an element of its case, and Oracle's attempt to introduce this testimony should be rejected for this reason as well.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant a motion in limine excluding certain passages of the testimony that Oracle has designated from Mr. Rubin's deposition transcripts. Specifically, the Court should exclude from evidence the following pages and lines from Mr. Rubin's July 27, 2011 deposition: 8:14-9:4; 10:4-12:4; 13:5-9; 16:4-16; 19:8-20:15; 26:5-23; and

4

28:22-29:10.  The Court should also exclude the following pages and lines from Mr. Rubin's April 5, 2011 deposition: 28:5-30:1; 30:13-24; 111:12-112:5; and 112:12-25.

Dated:  May 6, 2012                                          KEKER & VAN NEST LLP

                                                             /s/ Robert A. Van Nest
                                                       By:   ROBERT A. VAN NEST

                                                       Attorneys for Defendant
                                                       GOOGLE INC.