# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--------------------------

ORACLE AMERICA, INC., )
Plaintiff, )
vs. ) No. CV 10-03561 WHA
GOOGLE, INC., )
Defendant. )

--------------------------

-- HIGHLY CONFIDENTIAL, ATTORNEYS' EYES ONLY--

Videotaped Personal Capacity deposition of ANDREW E. RUBIN, taken at the law offices of King & Spalding LLP, 333 Twin Dolphin Drive, Suite 400, Redwood Shores, California, commencing at 8:39 a.m., on Wednesday, July 27, 2011, before Leslie Rockwood, RPR, CSR No. 3462.

PAGES 1 - 296

~~Foerster, counsel for Oracle.~~

~~MS. TERAGUCHI: Yuka Teraguchi of Morrison & Foerster, counsel for Oracle.~~

~~MR. HOLTZMAN: Steve Holtzman, Boies, Schiller & Flexner, counsel for Oracle America. 08:40:33~~

~~MR. REBLITZ-RICHARDSON: Beko Reblitz-Richardson, Boies, Schiller & Flexner, on behalf of Oracle America.~~

~~MS. TIPTON: Jessica Tipton, Morrison & Foerster, on behalf of Oracle America. 08:40:44~~

~~MS. ANDERSON: Christa Anderson for Google, Inc., and the witness.~~

~~MR. BABER: Bruce Baber, King & Spalding, for Google.~~

~~MR. HWANG: Renny Hwang of Google. 08:40:49~~

~~THE VIDEOGRAPHER: Thank you.~~

~~The witness will be sworn in, and we can proceed.~~

THE REPORTER: Would you raise your right hand, please.

You do solemnly state that the evidence you shall give in this matter shall be the truth, the whole truth and nothing but the truth, so help you God.

THE WITNESS: Yes.

~~THE REPORTER: Thank you.~~

~~A. Okay.~~

~~Q. Before Google acquired Android Inc. --~~

~~MS. ANDERSON: Sorry, Counsel, before you start your question, could you clarify which deposition you're starting on? Because you've noticed a few things 08:42:15 for today.~~

~~MR. JACOBS: Yes.~~

~~MS. ANDERSON: And I just want to make sure we're clear on the record.~~

~~MR. JACOBS: Fair enough. So this is the 08:42:22 individual deposition, and I'll -- we'll be clear when we go into 30(b)(6) territory.~~

~~MS. ANDERSON: Thank you, Counsel.~~

Q. BY MR. JACOBS: Before Google acquired Android, did you conduct any review of Sun patents as 08:42:31 they might relate to your planned development of what became the Android system?

A. No, I didn't.

Q. From the acquisition to the filing of the lawsuit by Oracle America against Google on August 12th, 08:42:55 2010, did you conduct any review of Sun, later Oracle America, patents as they related to Android -- the Android system?

~~MS. ANDERSON: And objection. Just caution the witness to the extent if responding to the question 08:43:11~~

~~would cause you to reveal any communications with counsel, I instruct you not to answer on grounds of privilege, but otherwise, you may answer the question.~~

THE WITNESS: No.

~~Q. BY MR. JACOBS: Let's just spend a minute on that privilege instruction. One of the things I need to do today in order to do my job is to make a clear record of where you've been instructed not to answer, where you've followed that instruction, and where, but for the instruction, there might have been testimony, so that the Judge can look at the record and determine clearly where Google, as the litigant, is taking a position on the privilege.~~ ~~08:43:23~~ ~~08:43:36~~

~~So your counsel just instructed you not to answer to the extent the answer might reveal privileged information, and you're following that instruction; correct?~~ ~~08:43:48~~

~~A. That's correct.~~

~~Q. But for her instruction, would you have been able -- would you have provided testimony on the question of a review of Sun, later Oracle America's patents in connection with Android?~~ ~~08:43:59~~

~~A. Can you ask the question in -- I don't understand.~~

~~Q. Did that instruction cause you to answer the~~ ~~08:44:13~~

~~question differently than had the instruction not been given?~~

~~A. No.~~

Q. Why did you not conduct a review of Sun, later Oracle America's patents as they might relate to 08:44:28 Android?

A. Well, look, I looked at the nature of Sun's business, I looked at the nature of Oracle's business. I'm a computer scientist. I graduated with a degree in computer science. I had, in 1978, a Commodore PET 08:44:43 computer that, you know, used the basic language that had a bytecode interpreter.

So I knew generally the area that I was working in, obviously, and I didn't think there was any conflict. So I didn't think there was a need to review 08:44:58 any patents. This stuff has existed for a very long time.

Q. You were aware that Sun, later Oracle America, had an extensive patent portfolio in the area of Java; correct? 08:45:14

~~MS. ANDERSON: Objection. Form.~~

THE WITNESS: I -- you know, again, I didn't look specifically at the breadth of their intellectual property. I assume, you know, if you're in a business, you're going to protect your work. But also it was my 08:45:26

assumption that this work had been there, you know, pretty much, you know, part of computer science that you're taught in college.

Q. BY MR. JACOBS: So you were aware that Sun had an extensive portfolio of Java-related patents? 08:45:39

~~MS. ANDERSON: Objection. Form.~~

THE WITNESS: That's not what I said.

Q. BY MR. JACOBS: Were you -- were you not aware of that?

A. I didn't -- I honestly didn't spend a lot of time thinking about it. 08:45:48

□□ 155
(~~Exhibit PX305~~ was marked for identification.)

□□ 155
Q. BY MR. JACOBS: ~~Exhibit 305~~ is an email string. The last email on the string is dated November 12, 2006. 08:46:39

Do you see that?

A. Yes.

Q. I'd like to ask you about your email to -- I believe to Chris DiBona, but maybe you can help interpret how the string should be read. It's the one from you dated November 12, 2006 that reads as follows: "I've been advised that Sun will offer a link exception to GPL so that you can link your app with their class libraries and not have the copy left force you to Open Source your 08:46:48 08:47:11

app. If they do not, then it's a play for a dual license. They still have patents and trademarks."

Do you see that?

A. Uh-huh.

~~Q. That is what you wrote; correct?~~ ~~08:47:17~~

~~A. Correct.~~

~~Q. And who did you write that to?~~

~~MS. ANDERSON: I just want to -- objection. Form. The witness should have an opportunity to review the document before you begin asking a series of~~ ~~08:47:25~~ ~~questions about it.~~

~~If you need an opportunity, go ahead. If you don't --~~

~~THE WITNESS: It's quite a detailed document, but it mostly contains a forward of a press release made~~ ~~08:47:33~~ ~~by Sun Microsystems. I believe I was responding -- well, I was responding to the entire thread which had an alias on it, which was the Open Source team, which included Chris DiBona.~~

~~Q. BY MR. JACOBS: And who is Greg Stein?~~ ~~08:47:54~~

~~A. Greg Stein, I believe, was one of the product guys on the Open Source team. He was an evangelist for Open Source, I believe.~~

~~Q. The Open Source team is -- what is the Open Source team?~~ ~~08:48:11~~

~~A. It's a team of evangelists that is managed by Chris DiBona, and they go out and educate people about Open Source, what it means to be Open Source, how Open Source can benefit their businesses, and so forth.~~

Q. You wrote: "They still have patents and trademarks." Correct? 08:48:24

A. That's correct.

Q. And the "they" is Sun; correct?

A. That's correct.

~~Q. And you were saying -- you were noting this in order to make sure that people understood that there's a range of intellectual property rights associated with the program in question; correct?~~ ~~08:48:31~~

~~MS. ANDERSON: Objection to form.~~

~~THE WITNESS: No, that's not correct.~~ ~~08:48:47~~

~~Q. BY MR. JACOBS: Well, what did you mean by "they still have patents and trademarks"?~~

~~A. Well, the email was discussing -- so this is in response to Sun basically announcing that they were Open Sourcing parts of Java, and the conversation was about Sun's dual license strategy. Because with GPL, it's effectively useless to Open Source something under GPL and use it in embedded devices like cell phones because there's this trick in the GPL which is of viral nature.~~ ~~08:48:58~~ ~~08:49:17~~

~~access, and then forcing people to come back to Sun because the threat of a suit, if you adopt their stuff, was real.~~

Q. When you wrote "they still have patents and trademarks," what was in your mind about what patents Sun had? 08:51:39

A. Look, like I said before, I assume they're running a business, they're inventing intellectual property, they're protecting it through the patent system. Through GPL, I didn't know what they were, but I knew that it was dangerous to use the stuff without knowing exactly what it was. 08:51:53

So effectively you have to go back to Sun, ask them what they considered their intellectual property and, you know, try to figure out what the trick was if you wanted to use the technology. 08:52:06

~~Q. Now, by that time, by 2006, you had applied for patents over the course of your carrier; correct?~~

~~A. Yes.~~

~~Q. You had applied for a patent -- for several patents while you were at Danger; correct? 08:52:15~~

~~A. Yes.~~

~~Q. And since Google acquired Android, you've applied for patents; correct?~~

~~A. Google has applied for patents with my name 08:52:29~~

~~intellectual property?~~

~~MS. ANDERSON: Objection. Form.~~

~~THE WITNESS: Well, look, I mean, so this article looks great. I haven't read it. All sorts of analysts are making speculations about Sun's business. 08:55:04 This is dated 2008. My email is 2006. I don't think they're related at all.~~

Q. BY MR. JACOBS: But my question is: As of November 12th, 2006, when you wrote "they," referring to Sun, "still have patents," were you aware that Sun had a 08:55:18 broad and deep portfolio of intellectual property?

~~MS. ANDERSON: Objection. Form.~~

THE WITNESS: Yeah, I was not.

Q. BY MR. JACOBS: You were not?

A. I didn't know how -- I didn't know the 08:55:26 breadth of Sun's portfolio.

Q. Were you aware that -- sorry.

A. I never investigated the breadth of Sun's portfolio.

Q. To the best of your knowledge, between 08:55:35 Google's acquisition of Android and the filing of the lawsuit in this action, did Google ever investigate Sun's, later Oracle America's patent portfolio as it might relate to Android?

~~MS. ANDERSON: Objection. Again caution to 08:55:53~~

~~the witness to the extent that responding to this question would cause you to reveal any communications with counsel, I instruct you not to answer on grounds of privilege. But otherwise, you may answer~~.

THE WITNESS: Yeah, of the parts of Google 08:56:04 that I manage and I operate, the -- there was no instruction to go investigate the breadth of Sun's patent portfolio.

Q. BY MR. JACOBS: You referred to an instruction. You said there was no instruction? 08:56:17

A. Yeah. Me as managing a division with Google didn't instruct anybody to go off and do something. I have no knowledge of somebody underneath me going off and doing something to investigate the breadth of Sun's portfolio. 08:56:32

~~Q. The -- and you're following your counsel's -- I just need to do this privilege thing again. You're following your counsel's instruction?~~

~~A. Yeah. Obviously, like I don't have insight into every -- you know, every team at Google. These are 08:56:43 large organized teams so they don't report to me. If there's another team that goes off and does something, I may not know about it.~~

~~Q. So but for your counsel's instruction, would your answer have been different to my question? 08:56:56~~

~~answer the question?~~

~~THE WITNESS: Yes, I am.~~

~~Q. BY MR. JACOBS: The lawsuit was filed on October 12, 2010 -- excuse me, August -- start over~~.

The lawsuit was filed on August 12, 2010. 09:02:43
After the lawsuit was filed, did you conduct any review of Oracle America's patent portfolio in connection with Android development?

~~MS. ANDERSON: Objection to the extent that responding to this question would cause you to reveal any 09:03:04 communications with counsel, I instruct you not to answer on grounds of privilege. Otherwise, you may answer.~~

THE WITNESS: I mean, look, all right, you asked the question before whether I have personally done reviews of the legal situation, and I answered no. It 09:03:18 didn't change throughout the release cycles whether I did or not.

Q. BY MR. JACOBS: So and just to be clear, my earlier question was before the lawsuit, and now I was asking after the lawsuit, and your answer is the same: 09:03:30 You have conducted no review?

A. I personally am not responsible for legal reviews for the Android system.

~~Q. Are you aware of any review that has been conducted of the Android system in view of Oracle 09:03:43~~

~~enhancements, especially since we've been sued by Oracle America, before we go off in a particular direction?~~

~~MS. ANDERSON: Objection. Form. And instruct the witness not to answer to the extent it calls for any communications or would reveal any communications with any counsel on the grounds of privilege.~~ ~~09:04:48~~

~~THE WITNESS: I mean, generally speaking, we see software development as an innovation process so we don't really second-guess innovation. We do the innovation -- we do it in a way that, you know, our education and training, you know, teaches us to do, and our goal is just to build great products that consumers love.~~ ~~09:05:01~~

~~Q. BY MR. JACOBS: So the answer to my question is "no"?~~ ~~09:05:11~~

~~MS. ANDERSON: Objection. Form. And the same privilege instruction.~~

~~Q. BY MR. JACOBS: Are you --~~

~~A. I don't know. You can ask that question again.~~ ~~09:05:21~~

~~Q. Okay. Fair enough. Let's start over.~~

As you have added functionality to Android over time, have you ever conveyed to anyone at Google, as we're adding enhancements, we should look at Oracle America's patents and decide whether we're going to go 09:05:41

off in a particular direction or not?

MS. ANDERSON: Objection and instruct the witness not to answer to the extent it would cause you to reveal any communications with counsel on the grounds of privilege. 09:05:54

THE WITNESS: I mean, generally speaking, the way you do innovation isn't you don't go look at somebody else's work. You just do innovation in your own little world and make sure it's the best it can possibly be. So the answer would be no. 09:06:05

Q. BY MR. JACOBS: Similarly, as you have expanded the markets in which Android is applied, say, to tablets, have you asked or conveyed that any such review should be conducted?

MS. ANDERSON: Objection. Form. And also 09:06:17 same instruction on grounds of privilege. You shouldn't disclose communications with counsel.

THE WITNESS: It's true for every Android release, independent of what the form factor it's released in. 09:06:27

Q. BY MR. JACOBS: And by "form factor," you're referring to, for example, tablets as opposed to handsets?

A. Yeah, you know, four-inch screens versus ten-inch screens. There's no difference, in my mind. 09:06:37

~~negotiations with the execs.~~

~~Q. And that's so that you can protect the option of going clean room; correct?~~

~~A. Yeah. I don't want to taint myself.~~

~~Q. And we've talked about your clean room, the~~ ~~15:57:11~~ ~~way the clean room got established and how you communicated the rules of the clean room.~~

One thing we didn't talk about specifically in the context of clean room is patent issues. So did you have an understanding that the clean room would bear 15:57:23 on the question of whether Android would infringe Sun/Oracle America patents?

~~MS. ANDERSON: Objection. Form.~~

~~Also, caution the witness to the extent responding would cause you to reveal communication with~~ ~~15:57:36~~ ~~counsel, I instruct you not to answer on the grounds of attorney-client privilege.~~

THE WITNESS: No. Generally speaking, a clean room approach doesn't protect against patents. There's no expectation. 15:57:47

As I said previously, VM technology has been around forever. I didn't think the stuff that we were doing was going to be a violation of anybody's IP.

~~Q. BY MR. JACOBS: And so that was based without reviewing the IP? That was kind of an intuition on your~~ ~~15:57:56~~

Highly Confidential - Attorneys' Eyes Only

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on AUGUST 31, 2011, at MOUNTAIN VIEW, CA.

SIGNATURE OF THE WITNESS

STATE OF CALIFORNIA ) ss:
COUNTY OF MARIN )

I, LESLIE ROCKWOOD, CSR No. 3462, do hereby certify:

That the foregoing deposition testimony was taken before me at the time and place therein set forth and at which time the witness was administered the oath;

That testimony of the witness and all objections made by counsel at the time of the examination were recorded stenographically by me, and were thereafter transcribed under my direction and supervision, and that the foregoing pages contain a full, true and accurate record of all proceedings and testimony to the best of my skill and ability.

I further certify that I am neither counsel for any party to said action, nor am I related to any party to said action, nor am I in any way interested in the outcome thereof.

IN WITNESS WHEREOF, I have subscribed my name this 28th day of July, 2011.

Leslie Rockwood

LESLIE ROCKWOOD, CSR. NO. 3462

I N D E X

WEDNESDAY, JULY 27, 2011

| WITNESS | EXAMINATION |
|---|---|
| ANDREW E. RUBIN, Personal Capacity | |
| By Mr. Jacobs | 7 |