MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S OPPOSITION TO MOTION IN LIMINE RE EVIDENCE ALLEGEDLY SUPPORTING KNOWLEDGE REQUIREMENT FOR INDIRECT INFRINGEMENT**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

Oracle America, Inc. opposes Google's motion *in limine* to exclude certain deposition testimony of Mr. Andy Rubin (Dkt. 1078).

**INTRODUCTION**

Oracle designated deposition testimony by Mr. Rubin showing that (1) Mr. Rubin was aware that Sun had Java-related patents, (2) Mr. Rubin had discussions with Sun about licensing those patents for Android, and (3) Mr. Rubin and Google, after failing to obtain a license from Sun, deliberately avoided investigating whether Android would infringe any of those Java-related patents. Mr. Rubin's testimony is highly relevant to the issues that the jury must decide in Phase 2, including whether Google should be held liable for indirect patent infringement based on its "willful blindness" of Sun's patents.

In Phase 2, Oracle intends to present substantial evidence – including but not limited to the deposition testimony of Mr. Rubin – demonstrating that Google both had actual knowledge of Sun's patents and that Google was "willfully blind" with respect to Android's infringement of those patents. That evidence will include the fact that Mr. Tim Lindholm, who was a Project Advisor for Android (TX 6 at p. 7), was one of the authors of the "The Java Virtual Machine Specification" book that specifically referred to a predecessor of the '104 patent. (TX 25 at p. 389.) Furthermore, in 2005 and 2006, Mr. Rubin sought to negotiate an agreement with Sun that would have specifically covered Sun's patents, and would have provided a license for Android. (TX 618 at p. 9-10.) This is not a case where an unknown company later claims infringement. Google knew of Sun's patents and sought a license that would have covered the '104 and other patents. Mr. Rubin's deliberate failure to take any steps to evaluate whether Android would infringe those patents is very relevant to proving Google's knowledge and willfulness.

There is no basis to exclude Mr. Rubin's testimony. That testimony, along with the other evidence that Oracle has offered and will offer in Phase 2, is relevant to prove Google's knowledge and willful disregard of Sun's and now Oracle's intellectual property rights. There is no risk of confusion or prejudice to Google, but it would be prejudicial to Oracle to prevent the

jury from hearing such testimony from Mr. Rubin, who is in charge of Android. Google's motion should be denied.

## ARGUMENT

In *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2069 (2011), the Supreme Court held: "Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C. § 271(b)." The Supreme Court articulated two basic requirements for willful blindness: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." Id. at 2070. Lower courts have already applied the Global Tech willful blindness standard as an alternative to direct knowledge for proving indirect infringement. *See McRee v. Goldman*, No. 11-CV-00991-LHK, 2012 U.S. Dist. LEXIS 36793 (N.D. Cal. Mar. 19, 2012); *Dataquill Ltd. v. High Tech Computer Corp.*, No. 08cv543-IEG, 2011 U.S. Dist. LEXIS 138565 *27 (S.D. Cal. Dec. 1, 2011) ("the Supreme Court explained that under this standard actual knowledge is not required, and that the intent may be shown under the willful blindness doctrine"); *Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC*, 2012 U.S. Dist. LEXIS 46990 *5 (E.D. Va. Apr. 2, 2012) (citing Global-Tech for holding that induced infringement under § 271(b) "requires knowledge, or willful blindness, that the induced acts constitute patent infringement") (emphasis added).

Sections 271(b) and 271(c) share the same knowledge requirement, and the Court's reasoning indicates that they must share willful blindness as well. Other courts agree. *See, e.g.*, *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 U.S. Dist. LEXIS 99415, at *13 (N.D. Ill. Sept. 2, 2011) ("As noted above, in *Global-Tech* the Supreme Court established that the plaintiff must show the alleged infringer must have knowledge of the patent at issue (or at least 'willful blindness' to the patent) and knowledge that the infringer's product infringed on that patent to prove a claim for contributory infringement (35 U.S.C. § 271(b)) and inducing infringement (35 U.S.C. § 271(c)).").

ORACLE'S OPPO. TO MIL RE EVIDENCE ALLEGEDLY SUPPORTING KNOWLEDGE REQUIREMENT FOR INDIRECT INFRINGEMENT
CASE NO. CV 10-03561 WHA
sf-3142247

2

Mr. Rubin's testimony is relevant to establishing Google's willful blindness, and there is no basis to exclude that testimony. The testimony that Google seeks to exclude includes the following points:

- When questioned about the negotiations with Sun, Mr. Rubin testified that he recalled "some discussions around patents. … there was a notion of a partnership where we could actually license both technology, implementation, and patents, where the patents would be used to protect the open platform." (4/5/2011 Rubin Tr. at 111:12-112:5.)

- When questioned about an email where Mr. Rubin referred to the fact that Sun owned patents, in connection with a Java-related announcement, Mr. Rubin testified: "I assume they're running a business, they're inventing intellectual property, they're protecting it through the patent system. Through GPL, I didn't know what they were, but I knew that it was dangerous to use the stuff without knowing exactly what it was." (7/27/2011 Rubin Tr. at 13:5-9, 16:4-16.)

- Despite those discussions with Sun and his awareness of Sun owning Java-related patents, Mr. Rubin testified that he "never investigated the breadth of Sun's portfolio" and never conducted any review of Sun's or Oracle's patents as they related to Android. (7/27/2011 Rubin Tr. at 8:14-9:4; 19:8-20; 20:5-15; 26:5-23.)

- When questioned about an email in which he wrote that Sun "threatened to sue us over patent violations," Rubin testified, contrary to what he wrote in the email, "I don't think Sun ever threatened to sue us over patent violations." (4/5/2011 Rubin Tr. at 28:5-30:1, 30:13-24.)

This testimony, along with the other evidence that is already in the record and evidence that will be offered in Phase 2, demonstrates that Google knew of Sun's patents but decided to proceed without a license. In July 2010, Oracle informed Google that Android infringed the '104 and '520 patents. One month later, Mr. Lindholm wrote that Google needed a Java license from Oracle for Android. (TX 10.) Given Mr. Lindholm's familiarity with the technology covered by the '104 patent, it is a reasonable inference that Mr. Lindholm was referring at least in part to that patent when he wrote that Google needed a license from Oracle. The designated testimony by Mr. Rubin's is consistent with this other evidence, and should not be excluded. Excluding Mr. Rubin's testimony at this stage would be both premature and prejudicial to Oracle.

Mr. Rubin oversaw the development of Android, and he and others repeatedly referred to the "JVM" or "Java Virtual Machine" that Google was developing for Android. Before Google

ORACLE'S OPPO. TO MIL RE EVIDENCE ALLEGEDLY SUPPORTING KNOWLEDGE REQUIREMENT FOR INDIRECT INFRINGEMENT
CASE NO. CV 10-03561 WHA
sf-3142247

3

even acquired Android, Mr. Rubin made a presentation in which he stated that Android planned to include a "JVM" that would be based on "Java licensed from Sun, mods by Android." (TX 4 at p. 28.) After Google acquired Android, in presentations and emails to Google's top executives, Mr. Rubin repeatedly referred to the "JVM" that the Android team was working on. (TX 1 at p. 9; TX 3 at p. 2; TX 6 at p. 11; TX 7 at p. 1.) Google employees stated in internal emails that "the JVM is going to be a central piece of the system we're building" and that "the JVM is core to our platform architecture and strategy." (TX 5 at p. 3; TX 20 at p. 1.) Google employees also acknowledged in internal documents that the license from Sun was "critical" for Android. (TX 17 at p. 1.) After Google was unable to negotiate any deal with Sun that would provide that critical license, Google decided to move forward anyways. Even then, Mr. Rubin and others continued to refer to the virtual machine that they were working on as a "JVM." (TX 151 at p. 5.) There were extensive negotiations between Google and Sun, and Mr. Rubin's plan all along was to build a Java-based platform with a high-performance JVM. That was exactly what he had done at Danger, and what Mr. Rubin wanted to do at Google. Mr. Rubin recognized early on that one option was to proceed without a license and risk making "enemies." (TX 7 at p. 2.) Mr. Rubin's admissions that he did nothing whatsoever to evaluate what Sun patents Google might infringe with Android is not only relevant but strong evidence of Google's willfulness.

Google cites *Apeldyn Corp. v. AU Optronics Corp.*, Civ. No. 08-CV-568-SLR, 2011 U.S. Dist. LEXIS 134759 (D. Del. Nov. 15, 2011), but that decision provides no basis to exclude Mr. Rubin's testimony. In *Apeldyn*, the court cited quoted *Global-Tech*: a "willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at *29. There, in stark contrast to this case, the *only* evidence cited by the court was testimony that the defendant would generally not review patents issued to other companies unless there was a request from the internal lawyers to do so. *Id.*

Here, unlike in *Apeldyn*, there were years of negotiations between Google and Sun leading up to Google's release of Android, and the evidence presented during Phase 2 will demonstrate that those negotiations focused on Sun's patents. Google employees at various times referred to a

license from Sun as "critical" for Android (TX 17), and Mr. Rubin made a presentation to Google's very top management regarding the deal with Sun in which he indicated that the deal would result in "patent grants" by Sun for Android (TX 22 at p. 9). After launching Android, Google considered buying "the rights to Java from Sun (patents, copyrights, etc)" in part because the result would be "Our Java lawsuits go away." (TX 326 at p. 2-3.) From the very beginning, Google sought a license to use Sun's patented technology. Google then proceeded to distribute Android to manufacturers without any license, knowing that Sun could sue. Google's actions, and Mr. Rubin's testimony, evidence an active intent to induce infringement by others.

Ultimately, Google is seeking to exclude Mr. Rubin's testimony and other evidence because that evidence is fundamentally inconsistent with the story that Google wants to tell the jury. The parties exchanged openings, and Google's opening includes the following assertion: "Google independently developed Android not knowing of the Sun patents." That assertion is false, and the testimony by Mr. Rubin – and the trial testimony of Mr. Lindholm – is relevant to showing that any lack of knowledge was based on Google's deliberate decision to proceed without any investigation, knowing that it might make "enemies" doing so, and that it would eventually face "Java lawsuits."

Google's final argument is that Mr. Rubin's testimony should be excluded because that testimony would not suffice to show that Google "intended to induce infringement of the patent, which in turn requires knowledge that the induced acts constitute infringement." (Dkt. 1078 at p. 5.) There are two flaws with this argument.

First, there is no requirement that Mr. Rubin's testimony in itself establish each and every element of Oracle's claims. Google seeks exclusion on the basis that Mr. Rubin's testimony is "insufficient to prove an element of its [Oracle's] case" (Dkt. 1078 at p. 5), but that is not the question on this motion. The only question on this motion is whether Mr. Rubin's testimony is relevant to *any* of the issues in Phase 2, and if so whether it should nonetheless be excluded under Rule 402 or 403. As explained above, Mr. Rubin's testimony is relevant to proving willful blindness. There is no risk of confusion of prejudice with that testimony. Whether that testimony

ORACLE'S OPPO. TO MIL RE EVIDENCE ALLEGEDLY SUPPORTING KNOWLEDGE REQUIREMENT FOR INDIRECT INFRINGEMENT
CASE NO. CV 10-03561 WHA
sf-3142247

5

proves some other element is immaterial, and provides no basis to exclude this otherwise relevant testimony.

Second, Google's argument is nothing more than an untimely and meritless attempt to seek judgment as a matter of law on Oracle's inducement claim. Google's argument focuses less on the designated testimony and more on the legal standard for proving inducement. Under Google's proposed standard, an inducement claim would fail in every case where the parties "hotly contest" infringement. (Dkt. 1078 at p. 5.) Google contends that it could not even be liable for inducing infringement after July 2010, when Oracle specifically identified the '104 and '520 patents. That is not the law. Regardless, Oracle will offer evidence showing that Google knew of the '104 patent but nonetheless enabled and encouraged the broad adoption of Android by handset manufacturers.

Oracle also opposes Google's motion on the basis that it is procedurally improper, leading to unnecessary briefing. The Court's Jury Trial Guidelines establish a process for designating and objecting to deposition testimony. For Mr. Rubin's testimony, the parties followed the Court's procedure up to the point when Google announced at 3 pm today that it would be filing this motion *in limine*. Google had already served its objections and counter-designations, and the next step according to the Court's rules was for Oracle to evaluate those objections, to "meet and confer as reasonable," and for Oracle to then "provide the Court with the final packet, with any objected-to portions highlighted and annotated" as required by the Court's rules. The parties used the Court's required procedures for all deposition testimony played during Phase 1, and Oracle sees no reason to change that now.

//
//

**CONCLUSION**

The evidence that will be presented in this next phase, including the testimony of Mr. Rubin, clearly fit the standard set in *Global-Tech* and other decisions regarding indirect patent infringement. There is no basis to exclude Mr. Rubin's testimony, and Oracle therefore requests that the Court deny Google's motion.

Dated: May 6, 2012

MICHAEL A. JACOBS
MARC DAVID PETERS
DANIEL P. MUINO
MORRISON & FOERSTER LLP

By: /s/ *Daniel P. Muino*

Attorneys for Plaintiff
ORACLE AMERICA, INC.

ORACLE'S OPPO. TO MIL RE EVIDENCE ALLEGEDLY SUPPORTING KNOWLEDGE REQUIREMENT FOR INDIRECT INFRINGEMENT
CASE NO. CV 10-03561 WHA
sf-3142247

7