MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
arutherford@bsfllp.com
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br>v.<br><br>GOOGLE, INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S OPPOSITION TO GOOGLE'S MOTION TO PRECLUDE TESTIMONY OF TIMOTHY LINDHOLM**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

**I.     INTRODUCTION**

The evidence establishes that Mr. Lindholm, an early member of the Android team at Google, had specific, detailed working knowledge of the '104 patent. Indeed, Mr. Lindholm devoted an entire chapter of *The Java Virtual Machine Specification*, which he wrote, to describing an implementation of that patent. Moreover, in rejecting Google's last attempt to conceal Mr. Lindholm, the Court already held that "Mr. Lindholm's background shows that he was quite knowledgeable about Java and Android technology as separate platforms and any potential crossover between the two platforms, or so a reasonable jury could find. His admission that Google needed a Java license is relevant to the issue of infringement." (Dkt. No. 676 at 2 (emphasis added).) Mr. Lindholm's deep knowledge of Sun's Java virtual machines, including the patents that Sun obtained on them, is also directly relevant to the Phase 2 issue of inducement.

Google's motion should be denied.

**II.     BACKGROUND**

Mr. Lindholm worked at Sun Microsystems from 1994 to 2005, where, at the time he left, he held the title Distinguished Engineer. (Lindholm at RT 839:3–8.) At Sun, Mr. Lindholm worked on the original Java team, which was involved in creating the Java platform. (Lindholm at RT 839:9–13.) As Google admits, while he was employed by Sun, Mr. Lindholm co-wrote (with ex-Sun and now-Google employee Frank Yellin), *The Java Virtual Machine Specification*, both first and second editions. (TX 25 (first edition); TX 987 (second edition).) That book is "a definitive source for anyone who wants to know exactly how the Java programming language works." (TX 25 at 14.) In Chapter 9 of the First Edition, Messrs. Lindholm and Yellin described "An Optimization," which specifically notes: "The technique documented in this chapter is covered by U.S. Patent 5,367,685." (TX 25 at 401.) As Google admits, this patent was the predecessor to the '104 patent-in-suit. (Dkt. 1077 at 1.) In addition, as a Distinguished Engineer at Sun, Mr. Lindholm oversaw the development of Sun's efforts in the Java ME space. In short, Mr. Lindholm is very knowledgeable about the technology in Java virtual machines, and he knows about the patents that cover them.

Immediately after he left Sun and joined Google in July 2005, Mr. Lindholm met with Mr. Rubin about Android's plans to implement a "clean room JVM" for small devices, and Mr. Lindholm

1

began negotiating with his former colleagues at Sun for a "critical" Java license.  (Dkt. 331 (Lindholm Decl.); TX 140, TX 317.)  Although Google has consistently tried to minimize Lindholm's involvement with Android, his documents tell a different tale.  (*See* Dkt. 676 at 2 (finding Lindholm's "attorney-prepared declaration" disclaiming knowledge of Android to be "unpersuasive").)

In addition to providing strategic advice about Sun's motivations and bargaining position (*see* TX 3, TX 9, TX 125), Lindholm actually reviewed the Java license that Google considered taking and provided Rubin and others with advice about particular license clauses.  (TX 213)  Lindholm's role in Android's early development also involved technical advice.  Lindholm was a "Project Advisor" for Android, and described his "main value" as being a "J2ME runtime generalist and interpreter of the engineering/business/legal ecosystem."  (TX 321, TX 6 at 7)  He gave Mr. Rubin technical advice on Sun's virtual machine implementations for J2ME, including his opinions on the specific Sun technology that might be valuable to Android.  (TX 131)  Although he now claims to be ignorant of the technical workings of Android, his documents show that he "[g]ot a run through the Android technology" (TX 325) and was one of the Android team members whose participation was "mandatory" for a 2006 meeting in which Sun engineers would "detail their CDC stack to us, what it's [*sic*] capabilities are, and to get feedback from us (in realtime) about how much work will have to be done to it to get it working for our platform," and the Android engineers would "share with them an architectural view of our system, especially as it relates to the Java VM."  (TX 212.)  In short, Mr. Lindholm was deeply involved in Android from the very beginning.

**III.   ARGUMENT**

The evidence establishes that an early member of the Android team—Mr. Lindholm—had specific working knowledge of the '104 patent.  This highly relevant fact should not be hidden from the jury.  Google's argument that the prejudicial value of this fact outweighs its probative force is meritless.  There is no prejudice.  There are only directly relevant facts that Google cannot explain away.

First, Mr. Lindholm's testimony is relevant to direct infringement.  The Court has already held that

> Mr. Lindholm's background shows that he was quite knowledgeable about Java and Android technology as separate platforms and any potential crossover between the two platforms, or so a reasonable jury could find. His admission that Google needed a Java license is relevant to the issue of infringement.

(Dkt. 676 at 2.) The Court's statement is true not just of Mr. Lindholm's August 6, 2010 email (TX 10), but of the rest of Mr. Lindholm's words and actions. Mr. Lindholm himself admits that he was involved for "about a year" in the Android project. (Lindholm at RT 868:20-869:1) He had deep working knowledge of the Java technology, including the patents it covered, and understood the Android technology. (TX 325, 212)

Throughout this case, Google repeatedly mischaracterized Mr. Lindholm's role on the Android team in a futile effort to drag him, and his documents, out of view. For example,

| **Google Claim** | **Lindholm Documents** |
|---|---|
| Mr. Lindholm "never worked on any aspect of Android at all." (Statement by Google counsel, July 21, 2011 Discovery Hearing Tr. at 31:13-32:2) | TX 2 (Notes of Android GPS meeting attended by Mr. Lindholm, Mr. Rubin, and Google founders Larry Page and Sergey Brin) <br><br> TX 325 ("Got a run through the Android technology") <br><br> *See also* TX 3, 6, 9, 10, 125, 131, 212, 213, 321 etc. |
| "I don't believe he attended any negotiating sessions." (Statement by Google counsel, July 21, 2011 Discovery Hearing Tr. at 33:14-23) | TX 1 at 9 ("Google/Android, with support from Tim Lindholm, negotiates the first OSS J2ME JVM license with Sun") <br><br> TX 325 ("Two Sun meetings on Android licensing") <br><br> TX 140 ("As you might vaguely be aware, I have been helping Andy Rubin with some issues associated with his Android platform. This has mostly taken the form of helping negotiate with my old team at Sun for a critical license.") |

| | |
|---|---|
| Mr. Lindholm "had never reviewed the patents asserted by Oracle in this lawsuit."<br><br>(Dkt. 492, Google MIL No. 1, at 2:2) | TX 25 at 401 (The Java Virtual Machine Specification, ("The technique documented in this chapter is covered by US Patent 5,367,685.")) |

Despite Google's efforts to pretend that Mr. Lindholm had no meaningful involvement with Android, and had never even *reviewed* (much less written a chapter of a book about) the patents-in-suit, the jury is entitled to draw exactly the inference that the Court previously identified: that he was "quite knowledgeable about Java and Android technology as separate platforms and any potential crossover between the two platforms." (Dkt. 676 at 2.)

Moreover, Google's insistence that Lindholm was not involved in "designing or coding the Android software" and had no "technical responsibilities" for Android, even if that were true, would not be relevant. Lindholm knew that Sun had a specific patent, that patent aided performance, that patent read on Sun's Java virtual machine, and the successor to that patent is the patent-in-suit. In addition, Mr. Lindholm knew that Android was implementing a Java virtual machine. (TX 1, at 9.) Mr. Lindholm's detailed knowledge of the specific Java and Android technology and his admissions in 2006 that a license was "critical," are relevant to a finding of infringement. Google cannot exclude that relevant evidence by relitigating an issue that the Court has already decided against it.

Second, Google is simply wrong that the "difference" in claim language between the '104 and '685 has any bearing on infringement, or on the relevance of Mr. Lindholm's knowledge of the '685. Google observes only that the claims "differ," but does not discuss which direction the differences cut. (Dkt. 1077 at 2, 3.) That is because Google itself has insisted that every claim of the '104 is broader than the claims in the '685. (*See* Dkt. No. 311 at 2 (précis "All the claims of the '104 patent are broader than the claims of the '685 patent.").) As a result, if a method or apparatus is covered by the '685, Google has taken the position that the same method or apparatus would be also necessarily

covered by the '104.[1] This sort of issue is precisely what testimony at trial should sort out. Mr. Lindholm's knowledge of the '685 patent is therefore unquestionably relevant, and not misleading.

Third, in addition to its relevance for direct infringement, Mr. Lindholm's knowledge of the '104 patent is relevant to Oracle's claims of inducing infringement. Oracle need not show that Google had knowledge of the patents-in-suit by number, but inducement under 35 U.S.C. § 271(b) nonetheless "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). Mr. Lindholm's knowledge of the predecessor to the '104—which he identified specifically and described in detail in a book he published—is unquestionably relevant to an essential element of one of Oracle's claims.

Fourth, Google is simply incorrect that the standard for inducement would require Oracle to show that Google was "made aware of the patents-in-suit" by Mr. Lindholm. As the Supreme Court held in *Global-Tech*, willful blindness suffices. *Global-Tech*, 131 S. Ct. at 2069. Mr. Lindholm knew that (at least one) patent existed on technology that Android was building. He likely knew that there were hundreds more. Mr. Lindholm was a member of the Android team, advising Mr. Rubin on technology to incorporate into Android's JVM. The jury should be entitled to draw an inference from the admitted failure by Mr. Rubin, Mr. Lindholm, and the rest of the Android team to conduct any further inquiry at all that Google took deliberate actions to avoid learning of any patents that it was likely to infringe. *Id.* at 2071 (describing standard for willful blindness in the context of inducement); *see also ePlus Inc. v. Lawson Software, Inc.*, Civil No. 3:09-cv-620, 2011 WL 3584313, at *4–5 (E.D. Va. Aug. 11, 2011) (instructing jury that "[k]nowledge of the patent may be established by a finding that Lawson had actual knowledge of the patent or that Lawson deliberately disregarded a known risk that ePlus had a protective patent.").

Fifth, Mr. Lindholm's actual knowledge of the predecessor patent to the '104 is nothing like Mr. Schmidt's prior testimony before Congress. Mr. Schmidt's outdated articulation of a policy position on what Sun then advocated the law ought to be has no bearing on any claim or fact to be

---

[1] Google's request to file a summary judgment motion for invalidity based on the broadening re-issue was denied (Dkt. 327), and Google no longer asserts any invalidity defense.

decided by the jury.  In contrast, Mr. Lindholm's knowledge goes directly to essential elements of Oracle's infringement and inducement claims—<u>specific knowledge</u> of a patent by an expert on the technology who was later employed by Google and worked in an advisory role on Android.  Google's argument is simply that both pieces of evidence are more than ten years old.  By Google's absurd logic, the '104 patent itself should be excluded, as it was first issued in 1994.

## IV.     CONCLUSION

Mr. Lindholm's testimony is relevant to Phase 2, notwithstanding the fact that it may also be relevant to willful infringement in Phase 3.  The probative value of Mr. Lindholm's testimony is substantial; its prejudicial effect is nil.  Google's motion to preclude Mr. Lindholm's testimony should be denied.

Dated: May 6, 2012                                       BOIES, SCHILLER & FLEXNER LLP

By: */s/ Steven C. Holtzman*
    Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.