1  KEKER & VAN NEST LLP
   ROBERT A. VAN NEST - # 84065
2  rvannest@kvn.com
   CHRISTA M. ANDERSON - # 184325
3  canderson@kvn.com
   MICHAEL S. KWUN - # 198945
4  mkwun@kvn.com
   633 Battery Street
5  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
6  Facsimile:    415 397 7188

7  KING & SPALDING  LLP
   SCOTT T. WEINGAERTNER
8  (*Pro Hac Vice*)
   sweingaertner@kslaw.com
9  ROBERT F. PERRY
   rperry@kslaw.com
10 BRUCE W. BABER (Pro Hac Vice)
   1185 Avenue of the Americas
11 New York, NY 10036
   Tel: 212.556.2100
12 Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA  94105
Tel:  415.318.1200
Fax: 415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA  94303
Tel: 650.328.8500
Fax: 650.328.8508

13
14 Attorneys for Defendant
   GOOGLE INC.

15           UNITED STATES DISTRICT COURT

16          NORTHERN DISTRICT OF CALIFORNIA

17             SAN FRANCISCO DIVISION

18 ORACLE AMERICA, INC.,

19           Plaintiff,

20      v.

21 GOOGLE INC.,

22           Defendant.

Case No. 3:10-cv-03561 WHA

**GOOGLE'S OPPOSITION TO ORACLE'S
RULE 50(A) MOTION AT THE CLOSE
OF PHASE ONE EVIDENCE**

Dept.:    Courtroom 8, 19th Floor
Judge:    Hon. William Alsup

23
24
25
26
27
28

661524.01

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  ARGUMENT .......................................................................................................1

A.   Oracle is not entitled to judgment as a matter of law of infringement. ..................1

1.   Oracle has not demonstrated ownership of the materials allegedly copied by Google. .......................................................................................1

2.   The evidence does not compel a finding of direct copying. .......................2

3.   The evidence does not compel a finding that, by virtue of the SSO of the 37 API packages, Google's implementation of the 37 API packages is substantially similar to compilable code for the 166 API packages in J2SE...................................................................................2

4.   Oracle is not entitled to judgment as a matter of law that the allegedly infringing portions of the 12 Android files are more than *de minimis*. ...........................................................................................3

B.   Google, not Oracle, is entitled to judgment as a matter of law on Oracle's specifications claim, because Android's specifications for the 37 API packages do not infringe Oracle's API specifications. ...............................................4

C.   Oracle failed to establish that no reasonable jury could find fair use. ....................5

1.   A reasonable jury could find that the purpose and character of Google's use of the SSO of the 37 API packages favors a finding of fair use. ...............................................................................................5

2.   A reasonable jury could find that the nature of the SSO of the 37 API packages is highly functional, and that this favors a finding of fair use. ...............................................................................................9

3.   A reasonable jury could find that Google took only so much of the J2SE API packages as is necessary for compatibility, and that this either favors fair use, or is at least neutral. ...................................................9

4.   A reasonable jury could find that there has been no adverse impact on the actual or potential market for Oracle's work, and that the fourth factor thus favors fair use. ......................................................10

D.   Google is entitled to judgment as a matter of law that the SSO of the 37 API packages is not copyrightable........................................................................12

E.   Google is entitled to judgment as a matter of law on Oracle's SSO derivative work claim. ......................................................................................13

F.   Google is entitled to judgment in its favor on its equitable defenses. ...................14

III. CONCLUSION....................................................................................................15

661524.01

1

## TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3

<u>Federal Cases</u>

4    *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*
        960 F.2d 1020 (Fed. Cir. 1992) .................................................................................... 15
5
     *Baker v. Selden*
6        101 U.S. 99 (1879) .......................................................................................... 9, 13, 14

7    *Bateman v. Mnemonics, Inc.*
        79 F.3d 1532 (11th Cir. 1996) ........................................................................................ 8
8
     *Boisson v. Banian. Ltd.*
9        273 F.3d 262 (2d Cir. 2001) ........................................................................................... 1

10   *Campbell v. Acuff-Rose Music, Inc.*
        510 U.S. 569 (1994) ...................................................................................... 5, 6, 7, 10
11
     *Carmichael Lodge No. 2103 v. Leonard*
12       CIV S-07-2665, 2009 WL 2985476 (E.D. Cal. Sept. 16, 2009) ............................... 15

13   *Collegenet, Inc. v. XAP Corp.*
        483 F. Supp. 2d 1058 (D. Or. 2007) ............................................................................ 14
14
     *Corp. of Am. v. Universal City Studios, Inc.*
15       464 U.S. 417 (1984) ..................................................................................................... 10

16   *Danjaq LLC v. Sony Corp.*
        263 F.3d 942 (9th Cir. 2001) ....................................................................................... 14
17
     *Effects Associates, Inc. v. Cohen*
18       908 F.2d 555 (9th Cir. 1990) ....................................................................................... 15

19   *Haas v. Leo Feist, Inc.*
        234 F. 105 (S.D.N.Y. 1916) ........................................................................................ 14
20
     *Hampton v. Paramount Pictures Corp.*
21       279 F.2d 100 (9th Cir. 1960) ....................................................................................... 15

22   *Harper & Row, Publishers, Inc. v. Nation Enters*
        . 471 U.S. 539 (1985) ..................................................................................................... 5
23
     *Hynix Semiconductor Inc. v. Rambus Inc.*
24       609 F. Supp. 2d 988 (N.D. Cal. 2009) *aff'd,* 645 F.3d 1336 (Fed. Cir. 2011)......... 15

25   *Hynix Semiconductor Inc. v. Rambus Inc.*
        645 F.3d 1336 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 1540 (2012) ................... 15
26
     *Kelly v. Arriba Soft Corp.*
27       336 F.3d 811 (9th Cir. 2003) ....................................................................................... 10

28

ii

661524.01

*Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.*
    668 F.2d 699 (2d Cir. 1982) ................................................................................... 4

*Lotus Dev. Corp. v. Borland Int'l, Inc.*
    49 F.3d 807 (1995), *aff'd by an equally divided court,* 516 U.S. 233 (1996)
    (Boudin, J., concurring) ...................................................................................... 8

*Lulirama Ltd., Inc. v. Axcess Broad. Services, Inc.*
    128 F.3d 872 (5th Cir. 1997) ............................................................................ 15

*Mazer v. Stein*
    347 U.S. 201 (1954) ......................................................................................... 14

*McCoy v. Mitsuboshi Cutlery, Inc.*
    67 F.3d 917 (Fed. Cir. 1995) ............................................................................ 15

*Newton v. Diamond*
    388 F.3d 1189 (9th Cir. 2004) ............................................................................ 3

*Qualcomm Inc. v. Broadcom Corp.*
    548 F.3d 1004 (Fed. Cir. 2008) ........................................................................ 15

*Ringgold v. Black Enter. Tele., Inc.*
    126 F.3d 70 (2d Cir. 1997) ................................................................................. 3

*Sega Enters. Ltd. v. Accolade, Inc.*
    977 F.2d 1510 (9th Cir. 1992) ...................................................... 9, 10, 11, 13, 14

*Sony Computer Enter. v. Connectix Corp.*
    203 F.3d 596 (9th Cir. 2000) .................................................................... *passim*

*Ty, Inc. v. GMA Accessories, Inc.*
    132 F.3d 1167 (7th Cir. 1997) (Posner, J.) ........................................................ 2

*United States v. King Features Ent., Inc.*
    843 F.2d 394 (9th Cir. 1988) ............................................................................ 15

*Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*
    103 F.3d 1571 (Fed. Cir. 1997) ........................................................................ 15

**Federal Statutes**

17 U.S.C. § 101 .................................................................................................... 13

17 U.S.C. § 102(b) ....................................................................................... 8, 9, 13

17 U.S.C. § 410(c) ................................................................................................. 1

**Other Authorities**

Pierre N. Leval, *Toward a Fair Use Standard,* 103 HARV. L. REV. 1105, 1111
    (1990) ................................................................................................................ 6

iii

661524.01

## I.      INTRODUCTION

The Court should deny Oracle's motion for judgment as a matter of law.  In large measure, its motion merely cites disputed evidence.  It does not establish that no reasonable jury could find for Google.  Indeed, on many of the issues raised by Oracle's motion, Google, not Oracle, is entitled to judgment as a matter of law.

## II.     ARGUMENT

### A.      Oracle is not entitled to judgment as a matter of law of infringement.

#### 1.      Oracle has not demonstrated ownership of the materials allegedly copied by Google.

Oracle correctly states that the registrations for *J2SE 1.4 and 5.0* are not contested, but incorrectly claims that this means that it "is entitled to judgment that it is the owner of valid copyrights to J2SE 1.4 and J2SE 5.0, *covering all components of those works, including the individual code files and the SSO of the API packages.*"  Oracle JMOL [Dkt. 1044] at 3:12-14 (emphasis added).  Ownership of the *copyright registrations* does not imply ownership of "all components of those works," and certainly not of the "individual code files" or the "SSO of the API packages."  As the Second Circuit succinctly held in *Boisson v. Banian. Ltd.,* "[s]imply because a work is copyrighted does not mean every element of that work is protected."  273 F.3d 262, 268 (2d Cir. 2001).

To the contrary, the certificates of registration in evidence affirmatively state that Oracle *does not* own "all components" of the works.  *See* TX 464 at 2, 475 at 2 (stating in part 6a that the registered works include "licensed-in components").  The registrations are "prima facie evidence . . . of the facts stated in the certificate[s]," 17 U.S.C. § 410(c), which means that they are evidence that Oracle *does not* own all of the components of versions 1.4 and 5.0 of J2SE.  Because Oracle has not established *which* components of the registered works it owns, it has not established that it owns the material that it alleges Google copied.

Indeed, for the reasons given in Google's brief in support of its second motion for judgment as a matter of law, *see* Dkt. 1043 at 2:23-5:9, Oracle has not established what is included in the complete works that are the subject of the registrations.

1

        **2.**      **The evidence does not compel a finding of direct copying.**

2

      Oracle claims that the evidence compels a finding that Google directly copied from

3

Oracle's works.  The testimony Oracle cites, however, is not evidence of direct copying, but

4

evidence of *access*.  "Obviously, access does not entail copying.  An eyewitness might have seen

5

the defendant buy the copyrighted work; this would be proof of access, but not of copying."  *Ty,*

6

*Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170 (7th Cir. 1997) (Posner, J.).  Bob Lee

7

testified that he *consulted* the J2SE API specifications, but not that he *copied* expression from

8

them.  RT 982:25-983:3.  He testified that Noser was hired to *implement* libraries that followed

9

the J2SE API specifications, but not that Noser *copied* expression from them.  RT 985:3-6.  Dan

10

Bornstein testified that he and his team *looked* at the specifications, and used *information* from

11

them, but not that he or his team *copied* expression from them.  RT 1836:19-1837:2.  Oracle

12

argues that Android engineers "effectively" had "access" to the SSO of the source code itself, but

13

even if the inference Oracle asks the Court to draw were correct (and Oracle fails to establish that

14

a reasonable jury would have no choice but to draw this inference), having effective access to the

15

SSO of the source code is very different from directly copying expression from the source code.

16

      None of the evidence cited by Oracle comes close to compelling a finding of direct

17

copying.  *Ty,* 132 F.3d at 1170.  Indeed, the only arguable evidence of *direct copying* is the code

18

and comments that allegedly were literally copied, for which Google relies on Oracle's failure to

19

prove more than *de minimis* copying, as explained below.

20

        **3.**      **The evidence does not compel a finding that, by virtue of the SSO of the 37 API packages, Google's implementation of the 37 API packages is substantially similar to compilable code for the 166 API packages in J2SE.**

21

22

      For purposes of determining whether Google's use of the SSO for the 37 API packages

23

infringes, the Court instructed the jury that Oracle's work as a whole is "all of the compilable

24

code associated with all of the 166 API packages (not just the 37) in the registered work."  Dkt.

25

1018, JI 29.[1]  Professor Astrachan testified that the Android platform as a whole is not

26

substantially similar to the J2SE platform as a whole.  RT 2181:12-2182:12.  Professor Astrachan

27

28

---

[1] Google reserves its objections to this jury instruction.

661524.01

1    further testified that, for the 37 packages in particular, there are similarities in the method

2    signatures, but the implementing code is completely different.  RT 2182:13-2183:1.  Professor

3    Astrachan also compared the code in the 166 API packages in J2SE to the 37 accused packages in

4    Android, and opined that they are very different.  RT 2185:10-2187:3.  Professor Astrachan

5    testified that the SSO of the 37 API packages is represented in approximately 7,000 lines of code

6    out of the approximately 2.8 million lines of code in the 166 API packages in J2SE.  *See* RT

7    2185:10-14, 2189:22-2191:20.  He further testified that this SSO, standing alone, "doesn't

8    actually do anything."  RT 2191:3-7.  Based on this testimony, a reasonable jury could find that

9    the 37 accused API packages in Android are not substantially similar to the 166 J2SE packages.

10           **4.       Oracle is not entitled to judgment as a matter of law that the allegedly
              infringing portions of the 12 Android files are more than *de minimis*.**

11

12           Oracle's literal copying claims are directed to three groups of files.  First, Oracle claims

13    that two Android files include the nine-line rangeCheck method from Oracle's Arrays.java file—a

14    file that is over 3,000 lines long.  Second, Oracle claims that eight Android test files—files that

15    do not contribute even a *single byte* to the code that ships on Android phones—are decompiled

16    versions of eight Oracle files.  Third, Oracle claims that two Android test files include *comments*

17    that were taken from two Oracle files, while conceding that the comments have *no effect*

18    *whatsoever* on the compiled code that ships on Android phones.

19           *De minimis* acts of copying are not actionable.  *Newton v. Diamond,* 388 F.3d 1189, 1192-

20    93 (9th Cir. 2004); *see also Ringgold v. Black Enter. Tele., Inc.,* 126 F.3d 70, 74 (2d Cir. 1997)

21    ("*de minimis* can mean that copying has occurred to such a trivial extent as to fall below the

22    quantitative threshold of substantial similarity, which is always a required element of actionable

23    copying").  A use is *de minimis* "if the average audience would not recognize the appropriation."

24    *Newton,* 388 F.3d at 1193.  Oracle presented *no* evidence that *anyone* ever noticed any of this

25    allegedly misappropriated code or comments until an extensive forensic analysis of the Android

26    source code was undertaken as part of this litigation.  *See* RT 1308:2-1313:11 (Mitchell)

27    (testifying about forensic analysis).  On this basis alone, a reasonable jury could find for Google

28    on all of Oracle's literal copying claims.

1    Moreover, a reasonable jury could *only* find that the rangeCheck method is both

2    qualitatively and quantitatively insignificant, whether judged against the Arrays.java file alone (as

3    the Court instructed the jury to do) or either of the registered works as a whole (as Google

4    requested the jury be instructed).  *See* Dkt. 1043 at 9:22-11:22 (brief in support of Google's

5    second motion for judgment as a matter of law).  As to the other files, the jury once again could

6    only find that Google's use—which does not affect any code that ships on an Android device—is

7    *de minimis.  See Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.,* 668 F.2d 699, 702-03 (2d

8    Cir. 1982) (use of plaintiff's work in a mock-up product display that was never used in a

9    production run was *de minimis*); *see also* Dkt. 1043 at 11:23-14:6.  For these reasons, Google, not

10    Oracle, is entitled to judgment as a matter of law on the issue of whether the alleged literal

11    copying is *de minimis*.  Even if Oracle proved that it owned the eleven individual files that it

12    claims were copied (and it did not), Oracle is not entitled to judgment as a matter of law on its

13    claim that Google's use of portions of material allegedly from the 11 files was more than *de*

14    *minimis*.

15    **B.    Google, not Oracle, is entitled to judgment as a matter of law on Oracle's**
      **specifications claim, because Android's specifications for the 37 API packages**
16    **do not infringe Oracle's API specifications.**

17    Google, not Oracle, is entitled to judgment as a matter of law on Oracle's claim that

18    Android's specifications for the 37 API packages infringe the English-language descriptions in

19    Oracle's specifications for the 166 API packages in J2SE.  Oracle presented only three examples

20    of alleged similarities between the Android and J2SE specifications, and no reasonable jury could

21    conclude that even those examples are virtually identical.  RT 1169:25-1170:19, 1171:3-1172:25,

22    1174:17-1175:9 (Lee).  Indeed, the few similarities in those examples are due to the fact that, as

23    to the 37 API packages, the Android and J2SE specifications *are describing the same things.  See*

24    RT 1175:10-24 (Lee).  A reasonable jury could only find that the Android specifications for the

25    37 packages are *not* virtually identical to the specifications for the 166 J2SE API packages.  *See*

26    *also* Dkt. 1043 at 14:20-17:8.

27    Oracle's other claim—that the Android specifications include the SSO for the 37 API

28    packages—fails because the SSO is not copyrightable.  *See* Part II.D, *infra*.  For these reasons,

Oracle is not entitled to judgment as a matter of law on its claim that Android's specifications for the 37 API packages infringe Oracle's API specifications.

### C.   Oracle failed to establish that no reasonable jury could find fair use.

For the reasons given below, a reasonable jury could find that all four of the statutory fair use factors favor Google, or at least that three factors favor Google while the other is neutral. Weighing these factors together, a reasonable jury could find that Google is making a fair use of the SSO of the 37 API packages.

### 1.   A reasonable jury could find that the purpose and character of Google's use of the SSO of the 37 API packages favors a finding of fair use.

"The language of the statute makes clear that the commercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 584 (1994). "Congress resisted attempts to narrow the ambit of this traditional enquiry by adopting categories of presumptively fair use, and it urged courts to preserve *the breadth of their traditionally ample view of the universe of relevant evidence*." *Id.* (citing *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 561 (1985)) (emphasis added). "Accordingly, the mere fact that a use is educational and not for profit does not insulate it from a finding of infringement, *any more than the commercial character of a use bars a finding of fairness*." *Campbell,* 510 U.S. at 584 (emphasis added). Indeed, most of the exemplary fair uses listed in the preamble to section 107 are "generally conducted for profit in this country." *Id.* (quotation marks and citation omitted). The Ninth Circuit has recognized that, after *Campbell,* it is improper to apply a presumption against fair use based on a defendant's commercial purpose. *Sony Computer Enter. v. Connectix Corp.,* 203 F.3d 596, 606 (9th Cir. 2000). Instead, a commercial purpose "is only a 'separate factor that tends to weigh against a finding of fair use.'" *Id.* (quoting *Campbell,* 510 U.S. at 585).

But even a commercial use does not imply that the first factor must weigh against fair use, because the more the purpose and character of the defendant's use is transformative, "the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell,* 510 U.S. at 579. A use is transformative where it "adds something new, with a

5

1   further purpose or different character, altering the first with new expression, meaning, or

2   message[.]" *Id.* (citing Pierre N. Leval, *Toward a Fair Use Standard,* 103 HARV. L. REV. 1105,

3   1111 (1990)). "[T]he goal of copyright, to promote science and the arts, is generally furthered by

4   the creation of transformative works . . . ." *Campbell,* 510 U.S. at 579.

5           In *Sony v. Connectix,* the Ninth Circuit found that Connectix's Virtual Game Station

6   software ("VGS") was a product that "creates a new platform, the personal computer, on which

7   consumers can play games designed for the Sony PlayStation." 203 F.3d at 606. Because VGS

8   was an "innovation" that "affords opportunities for game play in new environments," the Ninth

9   Circuit found that VGS was "modestly transformative." *Id.* The court so found "notwithstanding

10  the similarity of uses and functions between the Sony PlayStation and the Virtual Game

11  Station"—that is, notwithstanding that the very purpose of VGS was to allow users to play *the*

12  *same games* that users play using the Sony PlayStation. The Ninth Circuit was "at a loss" to see

13  "how Connectix's drafting of entirely new object code for its VGS program could not be

14  transformative, despite the similarities in function and screen output." *Id.* at 606-07.

15          When Google created Android, it, too, created a new platform. Sun itself recognized that

16  Android was innovative. *See* TX 435 (email from Schwartz to Schmidt stating, "Sun is ready

17  embrace Google's innovation . . . ."). In contrast to J2SE, Android provides a "full stack"

18  solution for mobile computing. RT 1938:10-1939:12 (Rizvi). Android builds on the SSO of the

19  37 API packages to provide developers with access to a full application framework suitable for

20  smartphone applications. RT 1682:23-1684:1 (Rubin). All of this work required approximately

21  three years of development to complete. RT 1684:20-24 (Rubin). Through these efforts, Android

22  created opportunities to use the APIs in the 37 packages in a new environment, namely the

23  Android smartphone platform. RT 2182:3-7 (Astrachan) (Android is a mobile platform that has a

24  very different purpose than J2SE).

25          And although there are similarities between Android and the J2SE platforms in the

26  structure, sequence and organization of the API elements in the 37 packages, the structure,

27  sequence and organization of the *implementing code* is very different in Android, as compared

28  with J2SE. RT 2182:25-2183:1 (Astrachan) ("The implementation code in Android is completely

6

1   different than the implementation code in Java."); *see also* RT 2184:8-21, 2185:10-2186:17

2   (Astrachan) (implementing code "completely different"); RT 2297:7-2299:13 (Mitchell)

3   (agreeing code is different).  In fact, the nine-line rangeCheck method is the only evidence of any

4   similarities in the *implementing code* itself.  *See* RT 1309:8-1313:11 (Mitchell); RT 2182:13-

5   2183:1 (Astrachan).  Thus, notwithstanding any similarities between how those APIs are used in

6   Android and the J2SE platforms, a reasonable jury could find that Android is, at a minimum,

7   "modestly transformative."  *See Sony v. Connectix,* 203 F.3d at 606-07.  Oracle's motion does not

8   address any of this evidence.  Based on this evidence, a reasonable jury could find that Android

9   is, like VGS was, at least modestly transformative.

10       Oracle argues that in order to be transformative, the defendant's work must have an

11   *entirely* different purpose than the plaintiff's work.  This ignores the Supreme Court's definition

12   of "transformative" in *Campbell.*  510 U.S. at 579 (use is transformative where it "adds

13   something new, with a further purpose or different character, altering the first with new

14   expression, meaning, or message").  Indeed, in *Campbell,* the transformative use was a popular

15   song recording that parodied the plaintiff's popular song recording.  While the original was a rock

16   ballad and the other from the hip hop genre, the two works both were commercial entertainment

17   targeting mainstream audiences.  Moreover, although the cases Oracle cites involved situations

18   where the defendant's work had a very different purpose than the plaintiff's work, none of those

19   cases hold that a work *cannot* be transformative if it has a less than entirely different purpose.

20   Thus, none of those cases narrow *Campbell*—nor could they, given that *Campbell* is a Supreme

21   Court decision that is binding on the Ninth Circuit.

22       Here, Android not only provided a further purpose and different character to the 37 API

23   packages at issue, allowing them to be used in a new environment and platform, but also added

24   over one hundred new API packages that interact with and inter-depend on those 37 packages,

25   transforming the SSO of the API packages at issue into something new.  RT 1680:24-1682:5,

26   1682:23-1684:1 (Rubin); TX 51 (list of API packages in Android version 2.1).  In addition, the

27   purpose of implementing the API packages was to achieve compatibility with code written to use

28   APIs from those 37 packages.  RT 1782:6-17 (Bornstein); RT 2183:6-11 (Astrachan); RT 803:9-

7

661524.01

1    20 (Bloch).

2        To reach a final finding on the first factor, the *Sony v. Connectix* court weighed VGS's

3    modestly transformative purpose against Connectix's commercial use of Sony's copyrighted

4    work.  Connectix had reverse engineered Sony's code in order to determine its functional

5    requirements.  203 F.3d at 601.  Because the final VGS product did not incorporate Sony's

6    copyrighted code, the court found that Connectix's commercial use was only indirect or

7    derivative.  *Id.* at 607.  Moreover, the use was for the purpose of achieving compatibility, a

8    legitimate use under the first factor.  *Id.; see also Bateman v. Mnemonics, Inc.,* 79 F.3d 1532,

9    1547 (11th Cir. 1996) (external factors such as compatibility can negate a finding of infringement

10   "per 17 U.S.C. § 102(b)" or "a finding of fair use, copyright estoppel, or misuse"); *Lotus Dev.*

11   *Corp. v. Borland Int'l, Inc.,* 49 F.3d 807, 821 (1995), *aff'd by an equally divided court,* 516 U.S.

12   233 (1996) (Boudin, J., concurring) (suggesting Borland's use of Lotus's menu hierarchy, in

13   addition to being noninfringing by virtue of 17 U.S.C. § 102(b), might also be a fair use).

14   Weighing these facts together, the Ninth Circuit found that the first factor favored Connectix.

15       Assuming, for the limited purpose of opposing Oracle's motion for judgment as a matter

16   of law on Google's fair use defense, that the SSO is copyrightable,[2] Android uses copyrighted

17   material.  Although the commerciality of Google's use would not be indirect in exactly the same

18   sense as in *Sony v. Connectix, see* 203 F.3d at 607, the commerciality of Google's use would

19   nonetheless still be indirect, because Google does not directly generate revenue by selling or

20   licensing the SSO of the API packages or the APIs themselves.  Instead, Google generates

21   revenue from Android indirectly, mostly by way of revenue received on advertisements that

22   appear on Android phones, which is the same way that Google generally generates most of its

23   revenue from any platform, mobile or otherwise.  *See* RT 1458:12-16 (Schmidt).  And, as was the

24   case in *Sony v. Connectix,* Google's challenged use is for the purpose of achieving

25   compatibility—in this case compatibility with the APIs in the 37 packages at issue.  RT 1782:6-

26   17 (Bornstein); RT 2183:6-11 (Astrachan); RT 803:9-20 (Bloch).  Weighing these facts together,

27   _____

28   [2] The SSO is not copyrightable, *see* Part II.D, *infra*, but unless the SSO is copyrightable, there is
     no need to reach the issue of fair use.

661524.01

1    a reasonable jury could reach the same result that was reached in *Sony v. Connectix*—that the first

2    factor favors a finding of fair use.

3            **2.     A reasonable jury could find that the nature of the SSO of the 37 API**
                     **packages is highly functional, and that this favors a finding of fair use.**

4

5            The second fair use factor, the nature of the copyrighted work, "reflects the fact that not

6    all copyrighted works are entitled to the same level of protection."  *Sega Enters. Ltd.  v.*

7    *Accolade, Inc.,* 977 F.2d 1510, 1524 (9th Cir. 1992).  Of particular note here, the Copyright Act

8    does not protect "functional or factual aspects of the work."  *Id.* (citing 17 U.S.C. § 102(b)).

9    Works having "strong functional elements" are entitled to less protection than, for example,

10   works of fiction.  *Id.* (citing *Baker v. Selden,* 101 U.S. 99, 104 (1879)).

11           The testimony at trial established that the SSO of the 37 API packages is functional.  *See,*

12   *e.g.,* Dkt. 1047, Findings of Fact 8-9, 14-15 (citing RT 772:17-24, 773:14-16 (Bloch), RT 289:8-

13   9, 290:8-12 (Ellison), RT 364:3-10 (Kurian), RT 1959:12-1960:18 (Schwartz), RT 784:9-21

14   (Bloch), RT 1304:5-20 (Mitchell, TX 3542, Mitchell Depo. at 120:18-24, 121:1-10), RT 746:24-

15   747:9, 747:25-748:6 (Bloch)).  A reasonable jury would therefore be entitled to find that the SSO

16   of the 37 API packages is strongly functional, that this fact outweighs any creativity in the

17   process of designing the APIs, and that the functional nature of the SSO of the APIs therefore

18   favors a finding of fair use.

19           **3.     A reasonable jury could find that Google took only so much of the**
                     **J2SE API packages as is necessary for compatibility, and that this**
                     **either favors fair use, or is at least neutral.**

20

21           The third fair use factor considers the amount and substantiality of the portion used in

22   relation to the work as a whole.  Oracle's infringement claim is based on the use of the SSO of

23   only 37 of the 166 API packages in J2SE.  RT 597:18-19 (Reinhold) (166 API packages in J2SE

24   5.0); TX 1072 (37 accused API packages).  In addition, the Android *implementing* code for those

25   API packages is different than the J2SE implementing code.  RT 2182:25-2183:1 (Astrachan)

26   ("The implementation code in Android is completely different than the implementation code in

27   Java.").  Based on these facts, a reasonable jury could find that the third factor favors Google.

28           Moreover, even if the jury found that the portion of the work that Google used is

9

significant, "[i]f the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 820-21 (9th Cir. 2003).  Here, by using only the SSO and not the implementing code, and by limiting its use of the SSO to the API packages that developers are most likely to expect to be able to use to write programs in the Java language for a smartphone platform, Google used only as much of Oracle's work as necessary.  *See* RT 2196:7-2202:11 (Astrachan) (all 37 API packages at issue provide basic functionalities needed to make practical use of the Java language and are expected by developers).  At a minimum, then, a reasonable jury could find that the third factor weighs neither for nor against fair use.  *See id.* at 821 (copying of entire copyrighted images did not weigh against fair use where "[i]t was necessary for Arriba to copy the entire image to allow users to recognize the image and decide whether to pursue more information about the image or the originating web site").

> **4.    A reasonable jury could find that there has been no adverse impact on the actual or potential market for Oracle's work, and that the fourth factor thus favors fair use.**

"Whereas a work that merely supplants or supersedes another is likely to cause a substantially adverse impact on the potential market of the original, *a transformative work is less likely to do so.*" *Sony v. Connectix,* 203 F.3d at 607 (citing *Campbell,* 510 U.S. at 591) (emphasis added).  "No 'presumption' or inference of market harm that might find support in *Sony* [*Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417 (1984),] is applicable to a case involving something beyond mere duplication for commercial purposes." *Campbell,* 510 U.S. at 591.  At most, such a presumption applies to "verbatim copying of the original in its entirety for commercial purposes . . . ." *Id.*  But where the defendant's "use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Id.*  The Ninth Circuit's analysis in *Sony v. Connectix* is instructive:

> The district court found that "[t]o the extent that such a substitution [of Connectix's Virtual Game Station for Sony PlayStation console] occurs, Sony will lose console sales and profits." Order at 19.  We recognize that this may be so. But **because the Virtual Game Station is transformative, and does not merely supplant the PlayStation console, the Virtual Game Station is a legitimate competitor in the market for platforms on which Sony and Sony-licensed games can be played.** *See Sega,* 977 F.2d at 1522-23.  For this reason, some

10

1   economic loss by Sony as a result of this competition does not compel a finding of
    no fair use. **Sony understandably seeks control over the market for devices**

2   **that play games Sony produces or licenses. The copyright law, however, does**
    **not confer such a monopoly.** *See id.* at 1523-24 ("[A]n attempt to monopolize

3   the market by making it impossible for others to compete runs counter to the
    statutory purpose of promoting creative expression and cannot constitute a strong

4   equitable basis for resisting the invocation of the fair use doctrine."). **This factor**
    **favors Connectix.**

5   203 F.3d at 607-08 (emphasis added). As discussed above, a reasonable jury could conclude that

6   Google's use is at least modestly transformative, and that Android is a "legitimate competitor" in

7   the market for platforms that implement the 37 API packages, not just the manufacturer of a

8   product that supplants those APIs. The record suggests that Oracle seeks to control the market for

9   software implementing the API packages at issue, just as Sony sought to control the market for

10  devices that play Playstation games. *See, e.g.,* RT 374:21-375:5 (Kurian). However, just as

11  copyright law does not give Sony a monopoly over the market for devices that play games Sony

12  produces or licenses, copyright law does not give Oracle a monopoly over the market for software

13  that implements the 37 API packages. Because Google's use is transformative, the fourth factor

14  favors Google, just as the fourth factor favored Connectix in *Sony v. Connectix*.

15      Moreover, a reasonable jury could reject Oracle's evidence of market harm based on

16  alleged fragmentation. First, according to a report Oracle Corporation prepared and submitted to

17  the European Community in connection with its acquisition of Sun, in 2009 vendors already had

18  and would continue to "'fragment' Java as a programming language and environment for

19  developers." TX 2237 at 13 (¶ 15); RT 572:6-20 (Screven). Indeed, Oracle maintains numerous

20  different versions and profiles of the Java platform, with different sets of APIs for each, and code

21  written for one version or profile will not necessarily run on a different version or profile of the

22  Java platform. *See* RT 719:12-725:6 (Reinhold); *see also* TX 3508 at 2 ("Fragmented between

23  Java SE and Java ME, and between Java ME mobile and TV and within  mobile and TV."). Dr.

24  Reinhold testified, however, that the different sets of APIs available on different versions of the

25  Java platform are not a problem:

26          Write once, run anywhere was never a promise that if you wrote code for

27          one Java platform that it would automatically/magically work on another.

28

---

11

661524.01

1

**The write once, run anywhere promise is relative to a specific one of the Java platforms.** If you write an application that uses Java SE 5, then you can run it on Sun's implementation, on Oracle's implementation, on IBM's implementation, and on others.

2

3

Will that same code run on a particular configuration of Java ME? Well, it depends. It might. It might not. It depends which APIs it uses.

4

5   RT 725:10-20 (emphasis added); *see also* RT 563:10-564:1 (Screven) (different version of Java

6   are not "forks" of each other because they are "each editions of Java specifically designed for a

7   particular purpose"). That is, Oracle witnesses testified that "fragmentation" is harmful only if it

8   occurs *within* a platform. Indeed, Oracle's counsel specifically argued to the jury that differences

9   *between* platforms are not harmful. RT 930:13-19 (summary by Jacobs). A reasonable jury could

10  find that Android could not "fragment" J2SE, because it is a separate platform that was designed

11  for a particular purpose distinct from the purpose for which J2SE was designed.

12          Finally, the jury is entitled to rely on evidence at trial that supports a finding that Android

13  *helped* Oracle's Java business rather than harming it. The evidence shows that Oracle's Java

14  business continues to grow at a double-digit rate. TX 573 at 5; RT 1925:23-1927:6 (Java

15  platforms business was growing 13% year over year as of 2010); TX 3532 (Rizvi Depo. at

16  229:13-229:21) (played at RT 1927:14-18) (Java platforms business continues to grow at a rate of

17  approximately 10%). Jonathan Schwartz testified that Android was helping Sun's Java business.

18  RT 1992:2-19. Had Google taken a *different* route and *not* implemented the Java language and

19  APIs, Mr. Schwartz testified that this "would have been horrible for Sun's business." RT

20  1992:16-19.

21          Thus, on the trial record, a reasonable jury could find that Android is transformative, that

22  Oracle's evidence of fragmentation harm is contradicted by the testimony of its own witnesses,

23  and that far from harming the market for Oracle's Java platforms, Android helped that market.

24  Based on the record, a reasonable jury could find, as the Ninth Circuit did in *Sony v. Connectix,*

25  that the fourth factor favors fair use.

26      **D.      Google is entitled to judgment as a matter of law that the SSO of the 37 API packages is not copyrightable.**

27  Google has addressed the lack of copyrightability of the SSO of the 37 API packages in

28

661524.01

1   prior briefs at great length.  *See* Dkts. 260, 368, 562, 601, 778, 823, 831, 852, 860, 897, 898, 955,

2   993.  The SSO of the 37 API packages is not copyrightable by virtue of the express terms of 17

3   U.S.C. § 102(b) (systems and methods of operation not protected), the Ninth Circuit's

4   interpretation of section 102(b) in *Sega,* 977 F.2d at 1522 ("functional requirements for

5   compatibility" not protected), and the doctrines of merger and *scenes a faire.*  For these reasons,

6   and based on Google's proposed findings of fact and conclusions of law, Google is entitled to

7   judgment that the SSO of the 37 API packages is not copyrightable.  *See* Dkt. 1047, Findings of

8   Fact 1-36, Conclusions of Law 1-20.  Oracle therefore is not entitled to judgment as a matter of

9   law on that the SSO of the 37 API packages is copyrightable.

### E.   Google is entitled to judgment as a matter of law on Oracle's SSO derivative work claim.

12       Google, not Oracle, is entitled to judgment as a matter of law on Oracle's claim that

13   Google's implementation of the 37 API packages is an unlawful derivative work of the English

14   language *descriptions* of those packages in Oracle's specifications.  As the Court has recognized,

15   Oracle's derivative work claim is a "classic case of trying to lay claim to the ownership of an

16   idea."  RT 1869:15-16; *see also* RT 1368:25-1369:1 (Oracle's derivative work argument "just

17   seems to me to be invalid under the basic tenets of copyright law"); RT 1375:22-24 (Oracle's

18   derivative work claim doesn't "add[] anything, except violating the principle of you can't get a

19   monopoly and ownership over an idea").

20       The Court has already rejected Oracle's derivative work theory.  *See* RT 2434:13-

21   2435:16.  The Court's conclusion is sound, because Oracle's derivative work claim is contrary to

22   the idea/expression dichotomy that is codified in section 102(b) of the Copyright Act.  It also is

23   contrary to the statutory definition of a derivative work, which is a work based on "one or more

24   preexisting works," 17 U.S.C. § 101, not a work based on preexisting *ideas.*

25       Oracle's approach is barred by *Baker v. Selden*:

26       To give to the author of the book an exclusive property in the art described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public.  That is the province of letters-patent, not of copyright.  The claim to an invention or discovery of an art or manufacture must be subjected to the examination of the Patent Office before an exclusive right

661524.01

1    therein can be obtained; and it can only be secured by a patent from the
     government.

2    101 U.S. 99, 102 (1879).  It is also barred by *Mazer v. Stein*:  "Unlike a patent, a copyright gives

3    no exclusive right to the art disclosed; protection is given only to the expression of the idea—not

4    the idea itself."  347 U.S. 201, 217 (1954).  And it is barred by *Sega*, under which "functional

5    requirements for compatibility" with a system described by or implemented in a copyrighted

6    work cannot be protected by copyright law.  977 F.2d at 1522.

7         For these reasons, and those expressed in Google's brief in support of its second motion

8    for judgment as a matter of law (*see* Dkt. 1043 at 7:4-8:12), Oracle is not entitled to judgment as a

9    matter of law on its derivative work claim.

10        **F.    Google is entitled to judgment in its favor on its equitable defenses.**

11        For the reasons given in Google's proposed findings of fact and conclusions of law

12   regarding its equitable defenses, Google, not Oracle, is entitled to judgment on those defenses.

13   Sun knew about and approved unlicensed, open source implementations of the Java API packages

14   as long as the implementation did not use the Java brand.  *See* Dkt. 1047, Findings of Fact 37-52.

15   As early as 2005, Sun knew Google intended to implement Java API packages in Android, and

16   Sun never told Google it needed a license to do so.  *See id.,* Findings of Fact 53-61.  After Google

17   publicly announced Android, Sun congratulated Google and welcomed Google to the Java

18   community.  *See id.,* Findings of Fact 62-72  After Google's announcement of Android and

19   release of the Android SDK, Sun continued to talk with Google and publicly support Android.

20   *See id.,* Findings of Fact 73-81.  Google was aware of and relied on Sun's public statements of

21   approval and acts of support for the Android platform.  *See id.,* Findings of Fact 82-87.  Oracle

22   initially encouraged Android and tried to partner with Google.  *See id.,* Findings of Fact 88-92.

23        Based on these facts, Oracle's copyright claims are barred by the doctrine of laches.

24   *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951-52, 956 (9th Cir. 2001); *Collegenet, Inc. v. XAP Corp.*,

25   483 F. Supp. 2d 1058, 1061 (D. Or. 2007); *Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D.N.Y. 1916

26   (L. Hand, J.); Dkt. 1047, Conclusions of Law 24-26.

27        These facts also establish that Oracle's copyright claims are barred by equitable estoppel.

28

14

661524.01

1    *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960); *United States v. King*

2    *Features Ent., Inc.*, 843 F.2d 394, 399-400 (9th Cir. 1988); *Hynix Semiconductor Inc. v. Rambus Inc.*,

3    609 F. Supp. 2d 988, 1025 (N.D. Cal. 2009) *aff'd*, 645 F.3d 1336 (Fed. Cir. 2011); *A.C. Aukerman*

4    *Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992); *Carmichael Lodge No. 2103 v.*

5    *Leonard*, CIV S-07-2665 LKK/GGH, 2009 WL 2985476 at *15 (E.D. Cal. Sept. 16, 2009); Dkt.

6    1047, Conclusions of Law 27-34.

7         In addition, the equitable doctrine of implied license bars Oracle's copyright claims.

8    *Lulirama Ltd., Inc. v. Axcess Broad. Services, Inc.*, 128 F.3d 872, 879 (5th Cir. 1997); *Wang*

9    *Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1576, 1580, 1581-82

10   (Fed. Cir. 1997); *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990); *McCoy*

11   *v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995); Dkt. 1047, Conclusions of Law

12   24-25, 29-32, 38-39.

13        Finally, the doctrine of waiver bars Oracle's copyright claims.  *United States v. King*

14   *Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988); *Hynix Semiconductor Inc. v. Rambus Inc.*,

15   645 F.3d 1336, 1348 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 1540 (2012); *Qualcomm Inc. v.*

16   *Broadcom Corp.*, 548 F.3d 1004, 1019-20 (Fed. Cir. 2008); Dkt. 1047, Conclusions of Law 42-44.

17        Because the record supports each of Google's equitable defenses, Oracle is not entitled to

18   judgment on those defenses.

19   **III.    CONCLUSION**

20        For the foregoing reasons, Google respectfully requests that the Court deny Oracle's

21   motion.

22   Dated:  May 7, 2012                         KEKER & VAN NEST LLP

23

24                                              /s/ Robert A. Van Nest
                                       By:       ROBERT A. VAN NEST

25                                              Attorneys for Defendant
26                                              GOOGLE INC.

27

28

661524.01