MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
KENNETH A. KUWAYTI (Bar No. 145384)
kkuwayti@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| Plaintiff, | **ORACLE AMERICA, INC.'S OPPOSITION TO GOOGLE'S SECOND MOTION FOR JUDGMENT AS A MATTER OF LAW ON SECTIONS OF COUNT VIII OF ORACLE'S AMENDED COMPLAINT** |
| v. | |
| GOOGLE INC. | |
| Defendant. | |
| | Dept.:  Courtroom 8, 19th Floor |
| | Judge:  Honorable William H. Alsup |

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ........................................................................................................... 1

4

ARGUMENT .................................................................................................................. 1

5

I.   ORACLE, NOT GOOGLE, IS ENTITLED TO JUDGMENT AS A MATTER OF
     LAW ON ORACLE'S CLAIM FOR COPYRIGHT INFRINGEMENT OF THE
6
     SSO OF THE 37 API PACKAGES ...................................................................... 1

7    II.  ORACLE PROVED THE CONTENTS OF THE WORK THAT WAS
          REGISTERED AND THAT THE COPYRIGHTS COVER THE COMPONENT
          PARTS AT ISSUE ................................................................................................ 2
8
          A.   Oracle Has Proved The Contents Of The Works At Issue ....................... 2
9
          B.   It Is Too Late For Google To Raise A Challenge To Ownership Based On
               Alleged Contributions From Third Parties .............................................. 5
10
          C.   Oracle Is The Author Of The Works At Issue ......................................... 6

11   III. GOOGLE'S IMPLEMENTATION OF THE SSO OF THE 37 JAVA API
          PACKAGES INTO ANDROID IS A DERIVATIVE WORK OF ORACLE'S
12        SPECIFICATIONS ............................................................................................... 8

13   IV.  THE NAMES AND DECLARATIONS ARE PROTECTABLE AS PART OF
          THE SSO OF THE 37 JAVA API PACKAGES ............................................... 11

14   V.   GOOGLE'S LITERAL COPYING IS NOT DE MINIMIS ............................... 14

15        A.   Google's Copying Of rangeCheck Was Not De Minimis ...................... 15

          B.   Google's Copying Of Comments Was Not De Minimis ........................ 17
16
          C.   Google's Copying Of Eight Decompiled Files—the Eight "Iml" and
               "ACL" Files—Was Not De Minimis ..................................................... 18
17
18   VI.  ANDROID'S SPECIFICATIONS INFRINGE ORACLE'S COPYRIGHTS ................. 19

          A.   Google Should Be Held Liable For Its Admitted Copying of The SSO
19             From Java Documentation Into Android Documentation ....................... 20

20        B.   Android's English-Language Descriptions Were Copied From The Java
               API Specifications ................................................................................. 23
21
     VII. THE EVIDENCE SHOWS THE INDIVIDUALLY COPIED CODE FILES
22        WERE OWNED BY ORACLE .......................................................................... 24

     VIII. GOOGLE'S COLLECTIVE WORKS OWNERSHIP CHALLENGE IS MOOT ........... 25
23
     IX.  ORACLE'S COPYRIGHT CLAIMS ARE NOT BARRED BY LACHES,
          EQUITABLE ESTOPPEL, WAIVER OR IMPLIED LICENSE .................................... 25
24
     CONCLUSION .............................................................................................................. 25

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3
CASES

4
*Aalmuhammed v. Lee*,
5
    202 F.3d 1227 (9th Cir. Cal. 2000) ........................................................................ 8

6
*Aharonian v. Gonzales*,
    No. C04-5190, 2006 U.S. Dist. LEXIS 13 (N.D. Cal. Jan. 3, 2006) ..................... 17
7

8
*Am. Dental Ass'n v. Delta Dental Plans Ass'n*,
    126 F.3d at 978 (7th Cir. 1997).................................................................... 21, 22

9
*Apple Computer, Inc. v. Microsoft Corp.*,
10
    35 F.3d 1435 (9th Cir. 1994)................................................................................ 20

11
*Atari Games Corp. v. Nintendo of Am. Inc.*,
    975 F.2d 832 (Fed. Cir. 1992) .............................................................................. 12
12

13
*Baker v. Selden*,
    101 U.S. 99 (1879).................................................................................... 20, 21

14
*Baxter v. MCA, Inc.*,
    812 F.2d 421 (9th Cir. 1987).............................................................................. 17
15

16
*Brocade Commc'ns Sys. v. A10 Networks, Inc.*,
    No. 10-CV-03428-LHK, 2011 U.S. Dist. LEXIS 91384 (N.D. Cal. Aug. 16, 2011) ............. 17

17
*Burrow-Giles Lithographic Co. v. Sarony*,
18
    111 U.S. 53 (1883)............................................................................................... 8

19
*Data East USA, Inc. v. Epyx, Inc.*,
    862 F.2d 204 (9th Cir. 1988)............................................................................ 4, 5
20

21
*Dream Games of Ariz., Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009).............................................................................. 6

22
*eScholar LLC v. Otis Educ. Sys., Inc.*,
23
    2005 U.S. Dist. LEXIS 40727 (S.D.N.Y. Nov. 3, 2005) ...................................... 9

24
*Fisher v. Dees*,
    794 F.2d 432 (9th Cir. 1985)............................................................................ 14
25

*Harper & Row Publishers, Inc. v. Nation Enters.*,
26
    471 U.S. 539 (1985)........................................................................................... 17

27
*Jacobsen v. Katzer*,
28
    2009 U.S. Dist. LEXIS 115204, at *9-10 (N.D. Cal. Dec. 10, 2009)................... 20

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*,
  886 F.2d 1173 (9th Cir. 1989)..........................................................................13, 21

*Key Publ'n v. Chinatown Today Publ'g Enter.*,
  945 F.2d 509 (2d Cir. 1991)........................................................................... 20

*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998)......................................................................... 4

*L.A. Printex Indust., Inc. v.Aeropostale, Inc.*,
  2012 U.S. App. LEXIS 7079 (April 9, 2012) ..................................................... 20

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
  345 F.3d 1140 (9th Cir. 2003).......................................................................... 11

*Merch. Transaction Sys. v. Nelcela, Inc.*,
  2009 U.S. Dist. LEXIS 25663 (D. Ariz. Mar. 17, 2009) ...........................11, 14, 17

*Micro Star v. Formgen, Inc.*,
  154 F.3d 1107, 1114 (9th Cir. 1998)................................................................ 9

*Mktg. Tech. Solutions, Inc. v. Medizine LLC*,
  No. 09 Civ. 8122 (LMM), 2010 U.S. Dist. LEXIS 50027 (S.D.N.Y. Apr. 23, 2010)........... 17

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004)......................................................................... 14

*Ringgold v. Black Entm't Television, Inc.*,
  126 F.3d 70 (2d Cir. 1997)...................................................................14, 23, 24

*Roy Export Co. v. CBS, Inc.*,
  503 F.Supp.1137 (S.D.N.Y. 1980) .................................................................. 16

*Russell v. Price*,
  612 F.2d 1123 (9th Cir. 1979)......................................................................... 24

*Sandoval v. New Line Cinema Corp.*,
  147 F.3d 215 (2d Cir. 1998), 26 F.3d 70 (2d Cir. 1997)....................................... 14

*SAS Inst., Inc. v. S&H Computer Sys. Inc.*,
  605 F. Supp. 816 (M.D. Tenn. 1985) ............................................................. 9, 10

*Sega Enter., Ltd. v. Accolade, Inc.*,
  977 F.2d 1510 (9th Cir. 1993)......................................................................... 12

*Seiler v. Lucasfilm, Ltd.*,
  808 F.2d 1316 (9th Cir. 1987)........................................................................ 4, 5

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  81 F.2d 49, 50-56 (2nd Cir. 1936) ................................................................ 8, 10

*Situation Mgmt. Systems Inc. v. ASP. Consulting LLC,*
    560 F.3d 53 (1st Cir. 2009) ........................................................................ passim

*Twentieth Century-Fox Film Corp. v. MCA, Inc.,*
    715 F.2d 1327 (9th Cir. 1983) ............................................................................ 9

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.,*
    630 F.3d 1255 (9th Cir. 2011) ........................................................................ 2, 6

**STATUTES**

17 U.S.C. § 201(d) .................................................................................................. 7

17 U.S.C. § 410(c) ............................................................................................. 2, 6

**OTHER AUTHORITIES**

2 Nimmer & Nimmer, *Nimmer on Copyright,* § 8.01[G], at 8-26 .............................. 15

**INTRODUCTION**

Like Google's first JMOL motion, Google's Second Motion for Judgment as a Matter of Law fails to establish that Google is entitled to judgment as a matter of law on any of the issues on which it has moved.  Google devotes much of its brief to trying to escape a finding of infringement by raising technicalities relating to registration or claimed evidentiary gaps.  Google's arguments are meritless.  The copyrighted material was properly registered, Google miscites the relevant law, and all of the evidence Google claims is missing from the record is present.  When Google finally does get to the substance, Google ignores record evidence on which the jury could find in Oracle's favor and misconstrues the law on key points, just as it did in its first JMOL motion.  This motion should be denied.

**ARGUMENT**

**I.     ORACLE, NOT GOOGLE, IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ORACLE'S CLAIM FOR COPYRIGHT INFRINGEMENT OF THE SSO OF THE 37 API PACKAGES**

Google cannot establish judgment as a matter of law on Oracle's copyright claim relating to the SSO of the 37 API packages.  Google makes no serious effort to request this relief from the Court.  Instead, Google simply refers back to its prior briefs and its proposed findings.  They do not support its claim.  The only conclusion the Court can reach on the evidence presented at trial is that the SSO is copyrightable and has been infringed.  The uncontroverted testimony is that the design of the Java APIs is highly creative and original and is expressed in extensive detail; the Ninth Circuit decided more than 20 years ago that the SSO of computer programs is copyrightable; Google admits it engaged in extensive copying; and Google's expert testified that the SSO of the APIs for the 37 packages is "virtually identical" in Android and in Java.  Oracle's recent motion for judgment as a matter of law (ECF No. 1044), Oracle's proposed findings of fact and conclusions of law (ECF No. 1049), and its earlier copyright briefing set forth the arguments and evidence in detail.  (*See* ECF Nos. 339, 611,780, 824, 833, 853, 859, 900, 956, and 986.)

II.    **ORACLE PROVED THE CONTENTS OF THE WORK THAT WAS REGISTERED AND THAT THE COPYRIGHTS COVER THE COMPONENT PARTS AT ISSUE.**

Google asserts technical challenges to Oracle's copyright registration.  The arguments are legally and factually incorrect.  In addition, Google sandbagged Oracle by raising a last minute challenge to ownership.  The Court should not consider this ownership argument.

A.    **Oracle Has Proved The Contents Of The Works At Issue**

Oracle proved the contents of the registered works at trial.  The J2SE 1.4 and J2SE 5.0 copyright registrations were admitted into evidence and claim on their face to cover "Java 2 Standard Edition 1.4" and "Java 2 Standard Edition, Version 5.0."  (TX 464, 475, 476.)  The chief architect of the Java platform group at Oracle, Mark Reinhold, authenticated the full contents of both these platform versions.  (RT at 689:21-691:23 (Reinhold); TX 622, 623.)  Oracle is entitled to a presumption that the facts stated on the front of the copyright registrations are correct.  17 U.S.C. § 410(c) (certificate of registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate").  Google "has the burden of rebutting the facts set forth in the copyright certificate."  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).  It never did.

Because Google insisted on pursing this issue, Oracle submitted additional evidence of the contents of the copyright registrations.  To register computer software, the Copyright Office requires the relevant form and 50 pages of source code, which can be submitted in redacted form to protect confidentiality.  Copyright Office Circular 61.  Oracle introduced the written source code deposit that was submitted with each of the registrations, and Dr. Reinhold testified that these deposits were part of the source code for versions 1.4 and 5.0 respectively.  (RT at 2233:18-2234:19 (Reinhold); TX 3530 (version 1.4); RT at 2234:20-2238:19 (Reinhold); TX 3529 (version 5.0).)

This was all Oracle needed to do to establish the validity of the registration.  However, Oracle also submitted into evidence at the trial TX 1076, a copy of a disk submitted to the Copyright Office along with the registration.  (*See* TX 1077-78.)  Dr. Reinhold testified that the

1    disk contains "the binary distribution of J2SE 5.0, together with documentation and some tools

2    and things like that." (RT at 2235:10-16 (Reinhold).)

3         Google challenges Oracle's proof at trial claiming that Oracle failed to submit source code

4    into evidence for various items.  (*See* ECF No. 1043 at 3-4).  All of these challenges are directed

5    to TX 1076.  (Swoopes Decl. ¶ 10.)  As noted above, however, Dr. Reinhold never stated that

6    Exhibit 1076 contains all of the source code.  It contains the binary distribution for version 5.0

7    and documentation.  (RT at 2235:11-16 (Reinhold).)  The version 5.0 source code was admitted

8    separately as Exhibit 623.  (RT at 689:21-691:23 (Reinhold).)

9         The parties agree that Exhibit 623 contains all of the items Google claims are "missing."[1]

10   Exhibit 623 contains the source code for all 37 packages at issue, all of the redacted source code

11   files submitted as the copyright registration deposit, and the source code for all eight files that

12   Google decompiled.  (Swoopes Decl. ¶ 1-4.)  The fact that Exhibit 1076 does not also contain the

13   source code is irrelevant.  Oracle was not even required to submit a disk to the Copyright Office

14   in the first place.  That disk is further useful proof of the registered work, and there is no rule that

15   it needed to be in source code form.

16        Google has not raised any real challenge to registration at all, and certainly a reasonable

17   jury could conclude Oracle proved registration of the copyrighted works and their content.

18   Google never presented any evidence to show that Exhibit 623 is anything else.  The best Google

19   could do was point out that there may have been an update created between October 2004 when

20   Sun sent the disk to the Copyright Office and December 17, 2004 when the copyright was

21   registered.  (RT at 2236:2-2238:6 (Reinhold).)  But Google did not show that there was such a

22   release, that the later release is what was filed with the Copyright Office rather than version 5.0,

23   or that a subsequent release varied in any material way.  Dr. Reinhold referred to these periodic

24   updates as "maintenance releases."  (RT at 2236:12-13 (Reinhold).)

25

26   _____

27        [1] So that the Court would not be confronted with conflicting views of the evidence,
     Oracle's counsel contacted Google's counsel after receiving its brief and the two parties conferred
     and agreed that Exhibit 623 does in fact contain all of these materials.  (Swoopes Decl. ¶ 1.)

28

1    Google is also wrong on the law.  A plaintiff can prove the contents of the registration in

2    the same way it proves the content of any other document.  Google claims that, "It is a

3    fundamental requirement of a copyright claim that a plaintiff introduce into evidence a complete

4    copy of the work on which it is suing."  (ECF No. 1043 at 2.)  But the very first case Google cites

5    for this proposition, *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204 (9th Cir. 1988) proves

6    Google's claim is wrong.  The copyrighted work at issue in *Data East* was an arcade game.  The

7    plaintiff never produced the arcade game or a video of the arcade game at trial but instead relied

8    upon still photographs as evidence of its audiovisual work.  *Id.* at 207.  The defendant made the

9    same argument Google does here, claiming the plaintiff needed to put the actual arcade game

10   before the court.  *Id.*  The Ninth Circuit disagreed:

11        The issue here, then, is whether sufficient evidence to support the district court's
          findings as to the contents of the arcade game's audio-visual work was present.
12        Along with the photographs, testimony as to the content of the original was also
          presented.  We find the still photographs, which depict all images and all moves
13        that occur when the game sequences through the various skill levels, along with
          testimony, to constitute sufficient evidence of the contents of the arcade game's
14        audio-visual work to make a fair comparison with Epyx's game.

15   *Id.*

16   Google's other two cases also do not support its claim.  *Data East* distinguished the

17   second case Google relies upon, *Seiler v. Lucasfilm, Ltd.*, because in that case, when the plaintiff

18   introduced "reconstructions" of the copyrighted works, the defendant objected on "best evidence"

19   grounds and the reconstructions were kept out because there was evidence that the plaintiff had

20   fraudulently destroyed the originals.  *Id.* (citing *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319

21   (9th Cir. 1987)).  Google's last case, *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209 (9th Cir.

22   1998) has no application here either.  In *Kodadek* plaintiff's original copyright registration was

23   improper because he never submitted his original drawings to the Copyright Office.  *Id.* at 1212.

24   Google makes no such claim here.  Oracle complied with Copyright Office procedure by

25   submitting the required application and source code deposits which, as noted above, Dr. Reinhold

26   authenticated.

27   Google never made a best evidence objection when Exhibits 622 and 623 were introduced

28   into evidence.  (*See* RT at 689:19-691:19 (Reinhold).)  There is no claim of fraud here, like there

1    was in the *Lucasfilm* case, and no dispute as to copying.[2]  Even if Google had some basis for

2    saying that a subsequent maintenance update of version 5.0 was in fact what was filed with the

3    Copyright Office Exhibit 623 still would be sufficient evidence of the content of what was filed

4    "to make a fair comparison" with Android.  *Data East*, 862 F.2d at 207.  Google has not shown

5    that any of this makes a bit of difference.

6                          **B.      It Is Too Late For Google To Raise A Challenge To Ownership Based**
                                  **On Alleged Contributions From Third Parties**
7

8              On Wednesday, April 25, Google's counsel argued for the first time that Oracle does not

9    have ownership rights over the 37 API packages at issue because third parties contributed to

10   them.  Google's belated challenge to ownership is classic sandbagging.  Google had many

11   opportunities to raise this argument previously, and was obligated to do so, but did not.

12   Moreover, Google represented to Oracle and the Court on the third day of Oracle's case-in-chief

13   that it was not disputing ownership.  Google changed its position literally at the end of trial.  It is

14   too late for Google to raise this ownership challenge now.

15             Google stated it was only going to pursue this as an alternative argument in the event

16   Oracle designated the copyright as a "collective work."  (See ECF No. 1007 at 1-2 ("To the extent

17   Oracle has not already withdrawn with prejudice its 'collective work' argument, Google is

18   entitled to judgment as a matter of law of non-infringement as to all constituent elements of the

19   registered works.").  *See also*  ECF No. 984 at 11 ("If, however, the Court accepts Oracle's

20   'collective work' argument, then Google is entitled to judgment as a matter of law of non-

21   infringement of each of the component parts of the registered works, because Oracle has not

22   proved authorship of the constituent elements.").)  Oracle withdrew its characterization of the

23   registration as "collective work" in part based on Google's representation in its April 25 brief.

24   _____

25             [2] There is no doubt what Google copied here.  Google's statement of work with its outside
     contractor, Noser Engineering, required Noser to implement each of the 37 accused packages in
26   Android in accordance with J2SE 1.5 (another name for J2SE 5.0).  (TX 30.)  Google *stipulated*
     that the jury would be told that, "For the 37 accused API packages, Android and Java 2 SE
27   Version 5.0 have substantially the same selection, arrangement and structure of API elements"
     and this stipulation was read to the jury.  (ECF No. 946 at 1, RT at 1337: 21-24.)
28

1    (*See* RT at 2134:11-17, 2134:7-11.)  Because Google has not withdrawn its argument, however,

2    Oracle will take the Court up on its offer to file a motion on this issue and will do so immediately.

3                    **C.      Oracle Is The Author Of The Works At Issue**

4           In any event, even if Google is permitted to raise its untimely challenge to ownership now,

5    Oracle is the author of the works at issue.

6           A copyright registration is "prima facie evidence of the validity of the copyright and the

7    facts stated in the certificate."  17 U.S.C. § 410(c).  "A certificate of registration raises the

8    presumption of copyright validity and ownership."  *Dream Games of Ariz., Inc. v. PC Onsite*, 561

9    F.3d 983, 987 n.2 (9th Cir. 2009).  That presumption applies equally to underlying derivative

10   works.  The Ninth Circuit recently considered this issue in a similar context in *United Fabrics*

11   *Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011).  In *United Fabrics*, the plaintiff held

12   a copyright on a collection of fabric designs.  The defendant, Macy's, challenged United's

13   entitlement to pursue a copyright infringement claim on a design that United purchased from an

14   Italian design house and then modified.  *Id.* at 1257.  The district court dismissed the action,

15   finding that United had "not clearly established the chain of title giving it rights in the source

16   artwork" because its evidence of transfer did not clearly establish ownership of the underlying

17   design.  *Id.*  The Ninth Circuit reversed, holding:

18           United did not have to produce any evidence.  As the copyright claimant, United is
19           presumed to own a valid copyright, 17 U.S.C. § 410(c), and the facts stated
             therein, including the chain of title in the source artwork, are entitled to the
20           presumption of truth.

21   *Id.* at 1258.  The Court thus rejected defendant Macy's challenge to title: "Macy's argues that

22   United failed to establish the chain of title to the underlying artwork and therefore does not have a

23   valid copyright.  But Macy's skips a step; nowhere does it set forth facts that rebut the

24   presumption of validity to which United's copyright is entitled…."  *Id.* at 1257.

25           Like the defendant's argument in *United*, Google's challenge to ownership "skips a step."

26   Google's motion does not point to any evidence showing that Oracle is not the owner of these

27   copyrights.  It simply argues that Oracle failed to meet its burden.  *(See* ECF No. 1043 at 5-7.)

28   The mere fact that the registration refers to "licensed in components" does not show that Oracle

1   does not own the copyrights to the works asserted here.  A copyright claimant may acquire

2   ownership through a transfer of rights.  17 U.S.C. § 201(d).

3          The effect of the presumption is sufficient for Oracle to prevail on the ownership issue.

4   But in addition Oracle did present evidence establishing that it was the author and copyright

5   holder of the 37 API packages.  Mark Reinhold testified that he conducted a review of the J2SE

6   5.0 source code to determine whether any of the 37 APIs at issue were developed by third parties.

7   (RT at 2231:6-9).  He testified that Sun went through a thorough code review as part of an audit

8   process in 2006-2007, long before this litigation, when it was open sourcing the code:

9          The point of that was to verify that the code we were – that Sun was open
           sourcing, Sun had all the rights to.  There were some bodies of code which Sun
10         had licensed from other companies under terms that didn't allow Sun to open
           source it, so we couldn't open source those segments.  So we had to review every
11         single line, every line in every file, to make sure that what we were releasing under
           the GPL, we were allowed to review.
12
13  RT at 2231:10-25.  Dr. Reinhold testified that he did a similar review for the 37 API packages at

14  issue and found "that Sun had a copyright notice in every single one of the API class source

15  files."  *Id.* at 2231:24-2232:4.  He identified the one area where part of the APIs were copyrighted

16  jointly between Sun and Taligent or IBM, several classes in java.text, and related classes in

17  java.util.  *Id.* at 2232:5-23.  Dr. Reinhold testified that he was personally involved in this project

18  and that Sun "worked closely with an engineer from Taligent to revise [the code], to make it fit

19  into the rest of the Java platform.  And that's why there are joint copyright notices with Sun in

20  those files."  *Id.* at 2233:2-17.[3]  Dr. Reinhold testified further that nobody has ever asserted that

21  Sun does not own all right, title and interest to the 37 packages.  *Id.* at 2254:23-2255:1.  Google

22  does not cite any evidence contradicting Dr. Reinhold's testimony.  Oracle also introduced into

23  evidence the copyright registrations for the prior versions of the Java platform.  *See* TX 450-455,

24  460-463, 509-511, 513, 518, 520-526.

25         [3] As mentioned above, the source code for J2SE 5.0 is in evidence as exhibit 623.  It
    shows the copyright notices to which Dr. Reinhold referred.  (*See* TX 623, Swoopes Decl. ¶ 5.)
26  During Dr. Reinhold's examination, the Court asked a question about areas in the source code
    that do not have an affirmative copyright notice.  (RT at 2252:7-2253:7.)  There is only one such
27  segment of code in the APIs at issue, a small segment of code written by Josh Bloch.  (TX 623,
    Swoopes Decl. ¶ 5.)  Dr. Bloch was employed by Sun.  (RT at 732:5-7.)
28

1    Dr. Reinhold also testified that 7 or 8 of the API packages at issue were released before

2    the JCP process was instituted, and that Sun was the specification lead as to all of the JSRs (Java

3    Specification Requests) relating to the 37 API packages (RT at 2239:16-23).  Dr. Reinhold

4    described the role of the specification lead in his earlier testimony: "So a specification lead at the

5    end of the day is responsible for all technical aspects of an API design."(RT at 593:22-594:1).

6    *See also* RT at 709:3-5 (specification lead is "the person who is in charge, broadly speaking, of

7    developing a particular API").  These facts further confirm that Sun was the author of the 37 API

8    packages at issue.  An author is "the person to whom the work owes its origin and who

9    superintended the whole work, the 'master mind.'"  *Aalmuhammed v. Lee*, 202 F.3d 1227, 1233

10   (9th Cir. Cal. 2000) (citing *Burrow-Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 58 (1883); see

11   also *id*. at 1232 ("authorship is not the same thing as making a valuable and copyrightable

12   contribution.").

13    Google has not shown that it is entitled to judgment as a matter of law on ownership.

14   **III.    GOOGLE'S IMPLEMENTATION OF THE SSO OF THE 37 JAVA API**
        **PACKAGES INTO ANDROID IS A DERIVATIVE WORK OF ORACLE'S**
15      **SPECIFICATIONS**

16    Oracle's derivative work claim is that by deliberately basing Android on the structure,

17   sequence, and organization ("SSO") of the 37 Java API packages as expressed in Oracle's API

18   documentation, Google created a derivative work.  Numerous cases hold copying structure in this

19   way constitutes infringement.

20    Google claims that Oracle's derivative work allegation is "nothing but an assertion that

21   *Google's expression* infringes *Oracle's ideas*."  (ECF Dck. No. 1043 at 7).  But the law does not

22   consider the structure of a writing to be unprotectable ideas when they are taken *en masse* as

23   Google did here.  In *Sheldon v. Metro-Goldwyn Pictures Corp.*, Judge Learned Hand found

24   copyright infringement when the defendant created a movie that copied much of  the detailed plot

25   outline of the plaintiff's play, although the movie included none of the dialogue and changed

26   many specifics:  "The play is the sequence of the confluents of all these means, bound together in

27   an inseparable unity; *it may often be most effectively pirated by leaving out the speech, for which*

28   *a substitute can be found, which keeps the whole dramatic meaning.*  That as it appears to us is

1   exactly what the defendants have done here; the dramatic significance of the scenes we have

2   recited is the same, almost to the letter."  81 F.2d 49, 50-56 (2nd Cir. 1936) (emphasis added).

3   *See also Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327 (9th Cir. 1983)

4   (reversing district court decision as to whether plots of Star Wars and Battlestar Galactica were

5   sufficiently similar to form basis for copyright infringement claim).

6        Courts have applied the reasoning in *Sheldon* to cases involving infringement of computer

7   programs.  The court in *eScholar LLC v. Otis Educ. Sys., Inc.*, for example, compared the

8   copyright protection of the structure of a computer program to protection afforded the plot

9   elements in *Sheldon*.  2005 U.S. Dist. LEXIS 40727, at *25 (S.D.N.Y. Nov. 3, 2005).  In *Micro

10  Star v. Formgen, Inc.*, the Ninth Circuit applied a similar analysis in reversing the district court

11  and remanding for entry of a preliminary injunction because plaintiff had shown it was likely the

12  defendant created an infringing derivative work of its video game.  154 F.3d 1107, 1114 (9th Cir.

13  1998).  The court rejected defendant's argument that it had not copied plaintiff's actual

14  expression because it used different artwork, and held that the preliminary injunction should be

15  entered because the defendant had misappropriated the elements of the plaintiff's story:

16      In particular, Micro Star makes much of the fact that the fact that the N/I MAP
        files reference the source art library, but do not actually contain any art files
17      themselves.  Therefore, it claims, nothing of D/N-3D's is reproduced in the MAP
        files.  In making this argument, Micro Star misconstrues the protected work.  The
18      work that Micro Star infringes is the D/N-3D story itself—a beefy commando type
        named Duke who wanders around post-Apocalypse Los Angeles, shooting Pig
19      Cops with a gun, lobbing hand grenades, searching for medkits and steroids, using
        a jetpack to leap over obstacles, blowing up gas tanks, avoiding radioactive slime.
20

21  *Id.* at 1112.

22        Likewise, in *SAS Inst., Inc. v. S&H Computer Sys. Inc.*, 605 F. Supp. 816, 830 (M.D.

23  Tenn. 1985), the court held defendant created an infringing derivative work that was "based on"

24  the SAS statistical analysis software by copying its structure.  The defendant tried to downplay its

25  copying by emphasizing there were only 44 examples where it had coped specific lines of code,

26  but the court flatly rejected the argument:  "In addition, the copying proven at trial does not affect

27  only the specific lines of code cited by Dr. Peterson in his testimony.  Rather, to the extent that *it*

28

1    *represents copying of the organizational and structural details of SAS, such copying pervades the*

2    *entire S&H product.*"  *Id*. (emphasis added).

3         The reasoning of these cases applies equally to Google's use of Java's API structure in

4    Android.  As with the plot elements in *Sheldon, Twentieth Century-Fox Film* and *Micro Star*, and

5    the structure of the software in *eScholar* and *SAS*, even though ideas behind particular individual

6    elements in the documentation for the 37 API packages that Google copied may not be

7    copyrightable, Google chose to copy the protectable selection, structure, sequence and

8    organization of the Java APIs.  The copying was much more extensive here, moreover, than in

9    those cases.  The uncontroverted evidence showed Google copied thousands of elements

10   expressed in Oracle's documentation, and the relationships among them, in nearly identical

11   fashion, and effectively gave all of the elements the same "dramatic meaning" within that copied

12   structure.  *Sheldon*, 81 F.2d at 56.  As in *SAS*, Google's deliberate copying of the SSO "pervades

13   the entire" 37 Android API packages, notwithstanding Google's claim that, apart from the

14   thousands of lines of source code expressing declarations and the 11 copied files, it wrote most of

15   its source code itself.  *SAS*, 605 F. Supp. at 830.

16        The Court should enter JMOL in Oracle's favor, not Google's, on the derivative work

17   claim, because the evidence of copying was undisputed at trial and no reasonable jury could find

18   Google coincidentally wound up with 7000 identically named and organized API elements.

19   Google engineers Bob Lee and Dan Bornstein both confessed that they were looking at the

20   specifications on the Sun website while implementing the APIs.  (RT at 982:25-983:18 (Lee);

21   1836:19-1837:2 (Bornstein).)  Google expert Owen Astrachan conceded that the structure of the

22   37 Android APIs is "virtually identical" to the Oracle APIs.  (RT at 2214:6-9 (Astrachan) ("Q.

23   And the Structure, Sequence and Organization of the API elements is virtually identical across

24   those 37 packages, correct? A. That's right.").)  He further testified that the method declarations

25   in the Android code are like the detailed headings in an outline:

26        Q. And the method declarations are like the sub-sub-sub-chapter headings in this
             structure, sequence and organization; correct, sir?

27        A. I think that's one analogy that's reasonable.

28

1  (RT at 2215:2-5 (Astrachan).)

2       Google thus copied Oracle's extremely detailed outline into the Android code.  If the

3  Court concludes that the Java class library SSO is protectable, the conclusion that Google created

4  an infringing derivative work follows as a matter of law.

5          **IV.**     **THE NAMES AND DECLARATIONS ARE PROTECTABLE AS PART OF**

6                 **THE SSO OF THE 37 JAVA API PACKAGES**

     Attempting to bootstrap the Court's prior ruling that individual names are not protectable

7  under the "words and short phrases" doctrine, Google moves without legal or factual support for

8  judgment that its use of declarations as well as names from the 37 Java API packages is not

9  infringement.  Google's motion should be denied for at least three reasons.

10       First, as explained in Oracle's comments regarding the Court's proposed jury instructions

11  (ECF No. 997 at 4-6) and discussed at the April 27, 2012 charging conference, while individual

12  names and short phrases (including short declarations) are not protectable on a stand-alone basis,

13  they are protectable as part of the SSO of the 37 API packages.  (RT at 2380:14-2381:25.)  Oracle

14  is not claiming that Google infringed its copyrights by copying any single name or declaration,

15  but by copying the SSO of the 37 Java API packages, which includes the names and declarations.

16       As the Court properly instructed the jury:

17

18         While individual names are not protectable on a stand-alone basis, names must
       necessarily be used as part of the structure, sequence, and organization and are to

19         that extent protected by copyright.

20  (ECF No. 1017 at 10.)  This instruction tracks Oracle's copyright infringement claim and

21  properly recites the law on "words and short phrases."  *See* ECF No. 433 at 7-8 (Court's prior

22  ruling that "[c]opyright protection for the selection and arrangement of elements within a work is

23  a separate question from whether the elements themselves are protected by copyright"); *Lamps*

24  *Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) ("a combination of

25  unprotectable elements is eligible for copyright protection only if those elements are numerous

26  enough and their selection and arrangement original enough that their combination constitutes an

27  original work of authorship"); *Merch. Transaction Sys. v. Nelcela, Inc.*, No. CV 02-1954-PHX-

28  MHM, 2009 U.S. Dist. LEXIS 25663, at *49 (D. Ariz. Mar. 17, 2009) ("the Court cannot

1    conclude that no reasonable juror could not find creativity in the selection and arrangement of the

2    Lexcel software's field names, let alone the remaining allegedly similar non-literal elements of

3    the Lexcel software, sufficient to render the compilation original enough for protection").

4           *Sega Enter., Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1993), the only case Google

5    cites in support of its argument, is not to the contrary.  Google relies on *Sega*'s footnote statement

6    in dicta that "Sega's security code is of such de minimis length that it is probably unprotected

7    under the words and short phrases doctrine."  977 F.2d at 1524.  But in the same footnote, the

8    court distinguished protection of security code in *Atari Games Corp. v. Nintendo of Am. Inc.*, 975

9    F.2d 832 (Fed. Cir. 1992) on the basis that "creativity and originality went into the design of that

10   program."  *Id*.  Unrebutted evidence here established that the choice of names and declarations in

11   the 37 Java APIs was highly creative and original and an essential part of the SSO of the APIs.

12   The API designers thoughtfully selected thousands of names for aesthetic purposes and

13   consistency.  (RT at 628:2-21 (Reinhold); TX 624 (Bloch presentation) at 17 ("Code should read

14   like prose."); RT at 746:20-748:13 (Bloch); RT at 1248:14-20 (Mitchell).)  The names and

15   declarations are organized within the same complex and creative structure as the API elements

16   they label, and Oracle's selection and arrangement of those names and declarations is

17   copyrightable.

18          As the Court recognized at the charging conference, the SSO of the 37 API packages is

19   manifested in a hierarchy of named packages, classes, methods, interfaces, and fields.  (RT at

20   2381:9-12 ("The Court:  You've got to use symbols in order to have an SSO.  It won't work

21   otherwise.").)

22          Second, while *short* declarations for methods or classes may not be protectable on a stand-

23   alone basis, not all of the declarations within the 37 API packages are short.  Two examples of

24   longer declarations from the source code include:

25      •   In java.security.cert.Certificate (method declaration):

26          *public abstract void verify(PublicKey key, String sigProvider)*
27              *throws CertificateException, NoSuchAlgorithmException,*
                *InvalidKeyException, NoSuchProviderException,*

28

*SignatureException;*

- In java.nio.channels (class declaration):

    *public abstract class DatagramChannel*
        *extends AbstractSelectableChannel*
        *implements ByteChannel, ScatteringByteChannel, GatheringByteChannel {*

TX 623.

These declarations are in source code, and are long enough that they may be protectable on their own. *See Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) ("Source and object code, the literal components of a program, are consistently held protected by a copyright on the program"). But of course, Oracle is not asserting infringement based on Google's copying of these declarations alone, but based on copying of the SSO of the 37 Java API packages, which includes thousands of these declarations.

Finally, Google's argument that the declarations "must remain exactly the same in order to ensure compatibility with Java programs calling on those 37 API packages" is a red herring. Google chose to take the 37 Java API packages because it believed they were the most appropriate for Android. (RT at 1783:23-1785:4 (Bornstein).) Google did not have to copy the 37 packages. Google's own expert admitted that Google could have designed its own APIs. (RT at 2212:25-2213:10 (Astrachan).) Every other witness at the trial confirmed the same thing. (*See, e.g.,* RT at 684:16-685:24 (Reinhold) (no need to use Oracle APIs); RT at 1335:9-24 (Mitchell) (no need for Google to use Oracle APIs); RT at 290:15-291:9 (Ellison) (same).) Google chose not to take the time and incur the expense of doing so.

Moreover, the evidence at trial showed Google chose only a subset of the full group of Java API packages, and that Android is *incompatible* with Java, damaging Java's "write once / run anywhere" promise. (RT at 1007:6-11 (Morrill); RT at 1331:16-1332:2, 2287:23-2288:5 (Mitchell); TX 383 at 8 ("Q49. Is Android Java compatible?  / A. No.").) As Google engineer Dan Bornstein testified, Google did not even attempt full compatibility with the Java platform:

    Q. Did Android implement all the API packages present in any particular Java
    Platform?

1    A. No.

2    Q. All right. And why not?

3    A. That wasn't a goal of the project. The goal of the project was to provide
     something that was familiar to developers. It wasn't to provide any particular
4    preexisting set of packages.

5    (RT at 1783:15-22 (Bornstein).)

6        Google took what it wanted and left the rest.  By doing so, it disrupted many years of

7    effort by members of the Java community at maintaining Java compatibility.  Google cannot hide

8    behind compatibility to try to justify its conduct here.

9    **V.     GOOGLE'S LITERAL COPYING IS NOT *DE MINIMIS***

10       Google admits that it copied protected Java code into twelve Android code files but argues

11   that the copying was *de minimis*.[4]  Copying is *de minimis* only "if it is so meager and fragmentary

12   that [compared to the work as a whole] the average audience would not recognize the

13   appropriation."  ECF No. 1018, JI 28; *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1985).

14       A *de minimis* defense is closely related to the requirement of substantial similarity.

15   *Situation Mgmt. Systems Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 58-59 (1st Cir. 2009).

16   "Substantiality is measured by considering the qualitative and quantitative significance of the

17   copied portion in relation to the plaintiff's work as a whole."  *Newton v. Diamond*, 388 F.3d

18   1189, 1195 (9th Cir. 2004); *see also Merch. Transaction Sys.*, 2009 U.S. Dist. LEXIS 25663, at

19   *61 ("Thus, Nelcela will not escape liability unless it can show that the protectable elements in

20   the Lexcel software constitute an insignificant (quantitatively and qualitatively) portion or aspect

21   of the Lexcel software.").  "Where substantial similarity exists and the fair use doctrine, as here is

22   inapplicable, 'the overwhelming thrust of authority upholds liability even under circumstances in

23

24       [4] The Court's instructions provide that Oracle has the burden of proving that "the part
     copied was more than *de minimis* when compared to the work as a whole."  ECF 1017, JI 24.  As
25   previously briefed, it is Oracle's position that this is error and Google has the burden of proof on
     its *de minimis* defense.  *See, e.g., Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir.
26   1998), 26 F.3d 70, 74 (2d Cir. 1997), quoting *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d
     70, 74 (2d Cir. 1997)  ("To establish that the infringement of a copyright is *de minimis*, and
27   therefore not actionable, the alleged infringer must demonstrate that the copying of the protected
     material is so trivial 'as to fall below the qualitative threshold of substantial similarity, which is
28   always a required element of actionable copying.'")

1  which the use of the copyrighted work is of minimal consequence.'" *Situation Mgmt. Sys.*,

2  560 F.3d at 59, quoting 2 Nimmer & Nimmer, *Nimmer on Copyright*, § 8.01[G], at 8-26.

3      Here, Oracle presented evidence that Google literally copied either the entirety of the

4  accused files or a quantitatively or qualitatively significant portion.  That evidence was more than

5  sufficient for a reasonable juror to conclude that the copied code was not "so meager and

6  fragmentary" as to be unrecognizable as an appropriation.

7      **A.      Google's Copying Of rangeCheck Was Not *De Minimis*.**

8      The evidence established the qualitative significance of the copied rangeCheck method.

9  rangeCheck is included in one of the 37 API packages primarily at issue.  (RT 1254:19-1255:2

10  (Mitchell).)  The rangeCheck method operates on Android mobile devices, and the rangeCheck

11  "code appears in the source code archive of Samsung," indicating that it "very likely appears on

12  the Samsung phones."  (RT at 1255:22-25, 1264:19-23 (Mitchell).)  Professor Mitchell testified

13  that the rangeCheck method is qualitatively significant and "useful" to Android as part of the API

14  libraries.  (RT at 1316:17-19 (Mitchell).)  He testified that he analyzed the significance of

15  rangeCheck to other code in the same class file and found "a number of other source code [sic] in

16  other files" that called upon it.  (RT at 1329:9-14 (Mitchell).)

17      In addition, to further determine the significance of the rangeCheck method, Professor

18  Mitchell also experimented with an Android device and found that it called the rangeCheck

19  method no less than 2,600 times during start up:

20      Q. Did you conduct an analysis of the significance of rangeCheck to other code in the
        same class file?

21
22      A. Yes.

        Q. What did you conclude?
23
24      A. I found a number of other source code in other files that called that function.  And,
        also, I did an experiment with the phone source code instrumented, and counted the
        number of times that rangeCheck was called in starting up the phone. And I found that it's
25      called 2600 times just in powering on the device or starting the emulator.

26  (RT at 1329:9-21 (Mitchell).)

27      Google presented no evidence rebutting any of this testimony.  Google argues that

28  Professor Mitchell did not "offer any testimony about the qualitative significance of the calls to

1    rangeCheck" (ECF 143, at 11), but in fact Professor Mitchell did indicate that this was a large

2    number, stating  that "2600 seems like a pretty big number for the number of calls to this

3    function."  (RT at 1329:20-21 (Mitchell).)

4          Google selectively quotes from Professor Mitchell's testimony to try to trivialize the

5    rangeCheck method.  (ECF No. 984 at 5 ("Dr. Mitchell conceded that 'a good high school

6    programmer' could write rangeCheck.").)  But Professor Mitchell actually testified that "a good

7    high school programmer or graduate student, *if told exactly what was needed*, could write the

8    code."  (RT at 1316:24-25 (Mitchell) (emphasis added).)  In fact, the "code has some subtlety"

9    and "the interesting part is figuring out exactly what you wanted the function to do, more than

10    realizing that function in Java code once that's understood."  (RT at 1317:1-5 (Mitchell).)  The

11    method might seem "[v]ery, very simple" to Dr. Bloch, who originally wrote the code while he

12    was working at Sun, but other programmers might not find writing the method so simple.  (RT at

13    815:13-16 (Bloch); *see also id.* at 755:6-8 (Bloch).)

14          More importantly, the ease or difficulty of creating this code is not relevant to whether

15    Google's copying was *de minimis*.  Professor Mitchell's unrebutted testimony supports that the

16    copied rangeCheck method was qualitatively significant—that is, not "so meager and fragmentary

17    that compared to the work as a whole the average audience would not recognize the

18    appropriation."  (ECF 1017, JI 28.)

19          Google argues that copying of rangeCheck was not quantitatively significant because it

20    represented only 13 of the 3,179 lines in the Arrays.java file or "less than three-tenths of one

21    percent of the work as a whole."  (ECF 1043, at 11.)  Courts have found in the fair use context,

22    however, that copied segments of similar comparable length to the work as a whole were

23    quantitatively substantial.  In *Roy Export Co. v. CBS, Inc.*, 503 F.Supp.1137, 11145 (S.D.N.Y.

24    1980), for example, the court held that the jury could reasonably have found use of film excerpts,

25    including a fifty-five second excerpt from a one hour and twenty-nine minute film—less than two

26    percent—was "quantitatively substantial."

27          In any event, "[e]ven if a copied portion be relatively small in proportion to the entire

28    work, if qualitatively important, the finder of fact may properly find substantial similarity."

1   *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987); *see also Mktg. Tech. Solutions, Inc. v.*

2   *Medizine LLC*, No. 09 Civ. 8122 (LMM), 2010 U.S. Dist. LEXIS 50027, at *9 (S.D.N.Y. Apr. 23,

3   2010) (even if copied material is a "quantitatively very small part" of the work as a whole, "[t]he

4   smallness alone is not enough by itself to avoid liability.").   In *Baxter*, the Ninth Circuit upheld

5   denial of summary judgment for the defendant even assuming the similarity between the two

6   musical works could be reduced to six-note sequence and cited a long line of cases finding

7   substantial similarity even where the copied portion was a very small fraction of the work as a

8   whole.   812 F.2d at 425; s*ee also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539,

9   565-66, 579 (1985) (holding in fair use context that copying of 300 words from 200,000 word

10   manuscript of presidential memoir was substantial).

11   ### B.     Google's Copying Of Comments Was Not *De Minimis*

12   Professor Mitchell compared Oracle's CodeSource.java file (TX 623.9) against Android's

13   CodeSourceTest.java file (TX 1039) and concluded that except for some HTML commands,

14   certain English-language comments are "syntactically . . . identical."  (RT at 1262:13-1263:4

15   (Mitchell).)  He also testified that Android's CollectionCertStoreParametersTest.java (TX 1040)

16   contained the "same kind of comment copying" from Oracle's

17   CollectionCertStoreParameters.java (TX 623.10).  (RT at 1263:9-10 (Mitchell).)

18   Google argues that the comments are not qualitatively significant because "they have

19   absolutely no effect on any compiled code."  (ECF 1043, at 12.)  But Google cannot just freely

20   copy comments to code written by others because they are not compiled.  Comments in computer

21   programs warrant protection from copying under copyright law *because* they represent an

22   expressive element of a computer program.  *See, e.g., Merch. Transaction Sys.*, 2009 U.S. Dist.

23   LEXIS 25663, at *52 (noting "commenting" as among the discretionary, creative and therefore

24   protectable aspects of programming); *Brocade Commc'ns Sys. v. A10 Networks,, Inc.*, No. 10-

25   CV-03428-LHK, 2011 U.S. Dist. LEXIS 91384, at *7-8 (N.D. Cal. Aug. 16, 2011) (because

26   comments are "the equivalent of explanatory asides, they are likely capable of being expressed in

27   many different ways and therefore may be protectable expression");  *see also Aharonian v.*

28

*Gonzales*, No. C04-5190, 2006 U.S. Dist. LEXIS 13, 14-15 (N.D. Cal. Jan. 3, 2006) (noting that programmer has "great discretion . . . how to comment the code").

The literally copied comments here are qualitatively significant because they "give some guidance to programmers reading source code."  (RT at 1317:21-25 (Mitchell).)  They are also quantitatively significant.  Google acknowledges that they amount to about 25% of Oracle's CollectionCertStoreParameters.java file (31 lines out of 124 lines in the file) (TX 623.10) and about 2.90% of Oracle's CodeSource.java file (18 lines out of 621 lines in the file) (TX 623.9).

### C. Google's Copying Of Eight Decompiled Files—the Eight "Iml" and "ACL" Files—Was Not De Minimis.

The evidence showed that Google decompiled eight Java files and copied them each in their entirety.  By definition, the copied code was qualitatively and quantitatively significant to each file.  No reasonable jury could find otherwise.

Google's response is to raise yet another technical argument, complaining that adequate evidence of copying was not presented.  But the source code for the copied files was admitted (TX 623; 623.2-623.8)[5], decompiled versions of the Java code files were admitted, and corresponding decompiled Android code files were admitted (TX 1031-1040).  Professor Mitchell testified at length about the decompilation process, how he determined that the eight files were decompiled and how, in a side-by-side comparison he found "that the actual code matches completely.  (RT at 1259:16- 1260:18 (Mitchell).)  Dr. Mitchell showed the jury a side-by-side comparison of a decompiled version of Oracle's PolicyNodeImpl.class file (TX 896.1) and Android's PolicyNodeImpl.java file (TX 1031).  (RT at 1259:16-25 (Mitchell).)  He also confirmed that Android contains decompiled versions of Oracle's PolicyNodeImpl.class, AclEntryImpl.class, AclImpl.class, GroupImpl.class, PermissionImpl.class, PrincipalImpl.class, AclEnumeratorImpl.class.  (RT at 1259:16-25; 1260:5-18 (Mitchell).)  And Dr. Mitchell walked the jury through another side by side comparison of OwnerImpl.java from both Java and Android

---

[5] Google again mistakenly states that only 7 files were admitted.  All 8 files are contained in these exhibits, but two of the copied files are contained in a single exhibit.  (Swoopes Decl. ¶ 2; *see* TX 623.4.)

1    (TX 623.6).  (RT at 1261:14-1262:2 (Mitchell).)  The copied Android files were also identified in

2    Exhibit TX 1072.  (*See* RT 1334:18-1335:7 (Mitchell).)  Dr. Reinhold also authenticated the

3    copied Oracle source code files.  (*See* RT at 693:2-694:14.)

4          Despite all of this, Google seems to be complaining now that Dr. Mitchell did not further

5    identify the names of the copied files he examined.  (ECF No. 1043 at 13.)  But if Google had

6    some issue with the foundation for Dr. Mitchell's testimony it needed to object.  It never did.

7    There was more than ample evidence for the jury to conclude that Google engaged in this

8    copying, particularly since Google chose not to have its own expert—or any other witness—

9    refute it.

10         In addition, though no further proof was necessary, the evidence showed that the

11   decompiled code is also qualitatively significant to more than the files from which they were

12   taken.  The eight Oracle files concern the security governing access to files in a network.  Dr.

13   Mitchell testified that "[t]hey have to do with access control lists, which are a standard

14   mechanism in computer security to govern access to a file or a network or other resource."  (RT at

15   1329:22-1330:5 (Mitchell).)  Google did not challenge this testimony.  While Google has claimed

16   in the past that these files were simply "test files" for Google, Google did not present evidence at

17   trial that these were test files except to note that the file paths for these files contain the word

18   "test."  (RT at 1319:1-3 (Mitchell).)  Dr. Mitchell testified that they are not test files as used by

19   Oracle.  (RT at 1330:6-11 (Mitchell).)  In addition, the possibility that the corresponding Android

20   files might be test files in no way decreases their value.  Companies invest significant time and

21   money into testing because it is important to ship their devices bug-free and thus these test files

22   could have had a "big value" for Google as well.  (RT at 1330:6-1331:5 (Mitchell).)

23         **VI.    ANDROID'S SPECIFICATIONS INFRINGE ORACLE'S COPYRIGHTS**

24         Google copied the Java API specifications for the 37 packages into Android's

25   specifications.  It did so in three ways: it copied the selection, structure, organization and

26   sequence of the Java APIs; it copied the selection and arrangement of the names; and it copied the

27   English language definitions by paraphrasing them.  Google wants the Court to view each of

28   these elements in isolation.  As a result there is a striking similarity between the documentation

1   for these 37 packages for the two platforms.  For roughly 11,000 pages, Android's packages are

2   laid out in the same organization, with thousands of the same names, nearly all the same

3   packages, classes and methods and a paraphrased English definition next to each.

4          The Court should consider Google's extensive copying of these three elements together

5   when evaluating Google's documentation copying.  *See, e.g., Apple Computer, Inc. v. Microsoft*

6   *Corp.*, 35 F.3d 1435, 1447 (9th Cir. 1994) (works should be "considered as a whole" under

7   intrinsic test, including protectable elements and selection and arrangement of unprotectable

8   elements).  *See also L.A. Printex Indust., Inc. v.Aeropostale, Inc.*, 2012 U.S. App. LEXIS 7079

9   (April 9, 2012) (holding plaintiff's original selection, coordination, and arrangement of fabric

10  design was protectable and remanding for jury determination of substantial similarity)

11  Collectively, and individually, they establish copyright infringement.

12           **A.     Google Should Be Held Liable For Its Admitted Copying of The SSO**
                      **From Java Documentation Into Android Documentation**
13
          The SSO of documentation is protectable.  In *Jacobsen v. Katzer*, for example, the court
14
    followed the Supreme Court's decision in *Feist* to hold that the "selection, ordering and
15
    arrangement" of text files reflecting decoder information from model railroad manufacturers was
16
    protected by copyright.   2009 U.S. Dist. LEXIS 115204, at *9-10 (N.D. Cal. Dec. 10, 2009).  *See*
17
    *also Key Publ'n v. Chinatown Today Publ'g Enter.*, 945 F.2d 509 (2d Cir. 1991) (holding
18
    business directory copyrightable because of selection of businesses and arrangement of
19
    businesses into categories).
20
          *Baker v. Selden* stands for the proposition that the description in a document may be
21
    copyrightable even when the underlying system it describes is not.  *Baker v. Selden*, 101 U.S. 99
22
    (1879).  In *Situation Mgmt. Sys.*, the First Circuit applied this principle in reversing the district
23
    court and extending copyright protection to the plaintiff's training materials for teaching effective
24
    techniques of communication and negotiation within the workplace.  *Situation Mgmt. Sys.*,
25
    560 F.3d at 61 (1st Cir. 2009).  As the court explained, "[t]he fact that SMS's works describe
26
    processes or systems does not make their *expression* noncopyrightable. . . SMS's creative choices
27
    in describing those processes and systems, including the works' overall arrangement and
28

1   structure, are subject to copyright protection." *Id.* (emphasis in original).  Though "others may

2   freely describe that process or system by using their own original expression," they "may not

3   appropriate SMS's expression when describing that process or system." *Id.*

4          As the Seventh Circuit explained in *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, in

5   affording copyright protection to American Dental Association code on dental procedures and

6   nomenclature:

7          *Section 102(b)* permits Delta Dental to disseminate forms inviting dentists to use
           the ADA's code when submitting bills to insurers.  But it does not permit Delta to
8          copy the Code itself, or make and distribute a derivative work based on the Code,
           any more than Baker could copy Selden's book.

9

10   126 F.3d 977, 980-81 (7th Cir. 1997).  The court stated that taxonomies, such as the West Key

11   Number System and the dental code, are not "systems" and are protectable as expression.

12   126 F.3d at 978 (7th Cir. 1997) (noting that "[b]lueprints for large buildings (more committee

13   work), instruction manuals for repairing automobiles, used car value guides, dictionaries,

14   encyclopedias, maps" are protectable original expression).

15          Unlike *Baker v. Selden* and *Situation Mgmt*, in this case the structure that is described by

16   the Java API documentation is itself copyrightable because it is the structure of a computer

17   program.  *Johnson Controls*, 886 F.2d at 1175 (9th Cir. 1989).  The parties agree here that the

18   structure expressed in the documentation is the same as the structure expressed in the source

19   code.  (*See* RT at 606:14-608:3 (Reinhold) (code is run through Java Documentation Extractor to

20   pull out structure and English language comments); ECF No. 1043 at 14 ("the documentation is

21   generated by an automated program, such that the SSO of the documentation is a natural

22   derivative of the SSO of the API packages it represents.").)  The structure is no less protectable in

23   documentation than it is in the code.

24          Google did not dispute copying the SSO in the documentation was not disputed by Google

25   at trial and does not do so here.  Dr. Mitchell testified to comparing the documentation side by

26   side on the web:

27          Because the APIs in both cases are available on the web, it's fairly straightforward to open
           two web browsers side by side and navigate through the two APIs and libraries

28

1  simultaneously in the same way and compare the way one looks on the screen with the other.

2

3  By and large, that – they are really identical.  They are displayed in different colors and so on.  But the content is the same.  You see the same classes in the same hierarchy in the same – in packages of the same name supporting the same interfaces and arranged in – in the same way.

4

5  (RT at 1244:17-1246:3 (Mitchell).)

6  Professor Mitchell further testified:  "I don't think there's any way that a separate team

7  could have come up with so many things that are identical except by copying the original API.

8  There are just thousands of things that match and I don't see how that could have happened in any

9  other way than by copying."  (RT at 1249:18-25 (Mitchell).)

10  Google's expert confirmed the SSO for the 37 packages is virtually identical:

11  Q. We have the 37, where the API is virtually identical, correct?

12  A. Correct.

13  Q. And the Structure, Sequence and Organization of the API elements is virtually identical across those 37 packages, correct?

14  A. That's right.

15

16  (RT at 2214:3-9 (Astrachan).)  Google developer Bob Lee agreed.  (RT at 1174:9-12 (Lee)

17  (Q. And the structure of the documentation is identical, correct, sir? And if you think of it as an

18  outline, the outline would match identically, correct, sir? A. Yes.).)

19  Google does not claim in this motion that the SSO for documentation is generally

20  unprotectable or that it did not copy.  Rather it argues that the Java APIs generally is not

21  copyrightable, whether expressed in code or in documentation.  That, of course, is the larger issue

22  being decided by the Court.  Google's only other argument is that because the documentation is

23  generated automatically, Oracle's claim for infringement of the documentation "collapses" into

24  its claim for infringement of the SSO of the code.  (ECF No. 1043 at 17-18.)  This argument

25  makes no sense.  Accepting Google's logic would lead to the perverse and unacceptable result

26  that the Court can find Google infringed by copying the SSO in the source code but that Google

27  somehow remains free to distribute documentation describing the same copyrightable structure.

28

Google infringes Oracle's copyrights in more than one form.  Oracle is entitled to relief from that infringement as to all of the forms in which it occurred.  In *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, the structure of the dental code that organized various dental procedures into a hierarchy was represented in three formats—numerically, by short description, and by long description.  126 F.3d at 980-981.  The court found each format was protectable.  ("The long description is part of the copyrighted work, and original long descriptions make the work as a whole copyrightable.  But we think that even the short description and the number are original works of authorship.")  Google cites no case law to support "collapsing" Oracle's claims by dismissing one in Google's favor.

> **B.      Android's English-Language Descriptions Were Copied From The Java API Specifications.**

The evidence at trial also showed that Google engineers copied Oracle's English language descriptions into Android.  Google claims that Oracle failed to introduce sufficient evidence at trial to support a finding of infringement because it limited its proof to three examples.  This misrepresents the record at trial.

Google's copying was so extensive that Oracle could not possible have displayed all of it to the jury.  While Android developer Bob Lee did testify regarding three examples that were shown to him, he acknowledged that these examples were representative of the copying that occurred:

> Q. So you would expect the same level of similarity that the jury has seen in these examples so far across the documentation for the 37 package, sir?
>
> A. Generally, yes.

(RT at 1175:25-1176:3 (Lee).)  One of the examples is shown below:

| J2SE 5.0 | Android |
|---|---|
| A pair of channels that implements a unidirectional pipe.<br><br>A pipe consists of a pair of channels: A writable sink channel and a readable source channel. Once some bytes are written to the sink channel they can be read from source channel in exactly the order in which they were written. | A pipe contains two channels, forming a unidirectional pipe. One is the writable sink channel, and the other is the readable source channel. When bytes are written into the writable channel they can be read from the readable channel. Bytes are read in the order in which they were written. |

1   Mr. Lee also admitted that the English-descriptions in Android were paraphrased from

2   Sun's documentation and were therefore "substantially similar."  (RT at 1191:4-13 (Lee).)

3   Indeed, he even expressed regret that such re-writing had occurred:

4       I actually wasn't even a big fan of including these.  I would have preferred that we
        just point people to Sun's site for this specific documentation because you
5       shouldn't really be rewriting a contract.  And in doing so they are going to be
        substantially similar.
6

7   *Id.*

8   Based on Mr. Lee's admission that the English-language descriptions in the Android

9   specifications were paraphrased from the Java specifications, that they were substantially similar,

10  and the English language descriptions that were provided, a reasonable jury could find for Oracle

11  on this claim.

12  **VII.   THE EVIDENCE SHOWS THE INDIVIDUALLY COPIED CODE FILES
            WERE OWNED BY ORACLE**
13

14  Google also tries to raise a last minute ownership challenge to the 11 individual files that

15  it copied.  As discussed in section II.B, it is far too late for Google to make this argument now.

16  The challenge is also baseless.  Google does not offer any proof that anyone other than Sun

17  employees wrote the code.  Josh Bloch testified that he authored the rangeCheck code while he

18  was working for Sun.  (RT at 754:17-755:8 (Bloch).)  The source code for each of the eight files

19  that Google decompiled and copied bears a copyright notice for Sun, indicating that Sun had

20  determined in the course of its 2006-07 audit that it owned the rights to the code.  (Swoopes Decl.

21  ¶ 5; Ex. 623; RT at 2231:6-2232:4 (Reinhold).)[6]  The source code for the two files from which

22  Google copied comments also bear Sun copyright notices.  (Swoopes Decl. ¶ 5; Ex. 623.)

23  ───────────────

24      [6] Google's claim that Oracle's submission of code from J2SE 5.0u22 as well as version
    5.0, excuses its copying is baseless.  (See ECF No. 1043 a5 4 n. 5).  Copying the same material
25  from a later version of a work infringes the underlying copyright:  "The established doctrine
    prevents unauthorized copying or other infringing use of the underlying work or any part of that
26  work contained in the derivative product so long as the underlying work itself remains
    copyrighted."  *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979).  Google does not claim that
27  the code it decompiled and copied is not present in any sub-release of J2SE 5.  Regardless of
    which sub-release it copied, Google is liable.  Further, Oracle introduced the registration for
28  J2SE 6.0 at trial as well.  *See* TX 659.

1

## VIII.   GOOGLE'S COLLECTIVE WORKS OWNERSHIP CHALLENGE IS MOOT

2

3

Google's challenge to authorship based on Oracle characterizing its copyrighted works as

"collective works" is now moot.  Oracle withdrew the characterization of the registered works as

4

"collective works," in part in response to Google's complaint.  (*See* RT at 2134:11-17, 2134:7-

5

11).  However, as shown in Sections II.B. and VII above, Google has waived any right to

6

challenge ownership and has failed to show that Oracle does not own the copyrighted works in

7

any event.

8

## IX.   ORACLE'S COPYRIGHT CLAIMS ARE NOT BARRED BY LACHES, EQUITABLE ESTOPPEL, WAIVER OR IMPLIED LICENSE

9

10

Google does not cite one fact or case supporting its equitable defenses.  Oracle's Proposed

11

Findings of Fact and Conclusions of Law, filed on May 2, 2012 (ECF No. 1049), and its

12

Response to Google's Proposed Findings of Fact and Conclusions of Law (ECF No. 1081) which

13

Oracle incorporates herein by reference, demonstrate that Google has failed to carry its burden of

14

establishing equitable defenses of laches, equitable estoppel, waiver or implied license.

15

### CONCLUSION

16

Google has not shown that it is entitled to judgment as a matter of law on any aspect of

17

Oracle's copyright claims.  Google's motion should be denied in its entirety.

18

19

Dated: May 7, 2012                          MORRISON & FOERSTER LLP

20

By:  /s/ *Michael A. Jacobs*
                                                     Michael A. Jacobs

21

*Attorneys for Plaintiff*

22

ORACLE AMERICA, INC.

23

24

25

26

27

28