1
MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
2
mjacobs@mofo.com
KENNETH A. KUWAYTI (Bar No. 145384)
3
kkuwayti@mofo.com
MARC DAVID PETERS (Bar No. 211725)
4
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
5
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
6
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

7
BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
8
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
9
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
10
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
11
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

12
ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
13
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
14
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
15
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
16
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

17
*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

18

19
UNITED STATES DISTRICT COURT

20
NORTHERN DISTRICT OF CALIFORNIA

21
SAN FRANCISCO DIVISION

| | |
|---|---|
| 22  ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| 23           Plaintiff, | **ORACLE AMERICA, INC.'S MOTION TO PRECLUDE GOOGLE FROM DISPUTING OWNERSHIP** |
| 24      v. | |
| 25  GOOGLE INC. | Dept.:  Courtroom 8, 19th Floor |
| 26           Defendant. | Judge:  Honorable William H. Alsup |

27

28

1  Oracle submits this motion pursuant to the Court's statement at trial on April 27, 2012

2  inviting Oracle to file a motion regarding whether Google should be precluded from disputing

3  ownership.  (*See* RT at 2130:8-2131:19.)

4  **INTRODUCTION**

5  On Wednesday, April 25, Google argued for the first time that Oracle does not have

6  ownership rights to the copyrighted works at issue because third parties may have contributed to

7  them.  Google never identified this issue previously in the numerous pre-trial filings the parties

8  made to the Court.  Google did not identify third-party contribution as an issue in the parties Joint

9  Pre-Trial Order, it did not request a jury instruction on ownership, it did not identify this as an

10  issue in its trial brief, and it did not include this in the extensive briefing the parties were ordered

11  to complete in March 2012 setting forth the major liability issues for trial.  Google's newfound

12  position also squarely contradicts the representation it made to Oracle and the Court during the

13  first week of trial, when it stated, consistent with its prior conduct, that Google was "not disputing

14  ownership of the copyrights."  (RT at 713:7-23.)

15  The Court has a process in place for preventing this type of ambush.  Google had many

16  opportunities along the way to identify this as an issue for trial, and was obligated to do so.  It is

17  far too late for Google to raise this issue now.  Oracle asks that Google be held to its word and

18  that the Court preclude Google from disputing ownership on the basis that any third party may

19  have contributed to the copyrighted works.

20  **ARGUMENT**

21  **I.     GOOGLE'S "COLLECTIVE WORK" ARGUMENT IS A PRETEXT**

22  Google's explanation to the Court for raising the third-party ownership issue so late has

23  been inconsistent, and is contradicted by the record.  When Google raised the ownership issue on

24  April 25, the reason it gave was that Oracle had supposedly stated in a recent brief for the first

25  time that Java SE 5.0 had been registered as a collective work.  (RT at 1661:6-9 (raising "[s]ome

26  very hairy copyright issues that arise because of what they said in their last brief that they just

27  filed this past Monday."); *see also* RT at 1670:14-17 ("Mr. Jacobs said this is a surprise.  As I

28

1    started when I said, two weeks ago they said it's not a compilation.  This Monday they said it's a

2    collective work, in their brief this Monday.").)

3           By the next morning, however, Google's position had completely shifted.  When Oracle

4    demonstrated to the Court that it had made the collective work assertion previously, Google did

5    an abrupt about face, and stated the issue had been in the case all along.  (*See* RT at 1885:16-20

6    ("That second issue about whether or not these copyrights give them any protection in the

7    underlying individual code files, that is exactly the 103(b) issue that we discussed yesterday.

8    We've known about this issue for a long time. It's not new."); 1885:22-1886:4 ("[T]hey have

9    from time to time during the case made noise that, well, they think it's a collective work. And

10   we've said we don't agree. But there's never been an issue about it.").)

11          The collective work argument is a pretext.  Partly in response to Google's complaints,

12   Oracle withdrew its characterization of the registration as a collective work on Friday, April 27.

13   (*See* RT at 2134:11-17, 2136:7-11.)  Yet Google continues to raise the same ownership issue,

14   both in seeking judgment as a matter of law and in opposing it.  (*See* ECF No. 1043 at 5-7; ECF

15   No. 1092 at 1.)  As this shows, Google's decision to raise this issue at the end of trial had nothing

16   to do with whether Oracle was claiming the registration as a collective work.  Google tried to use

17   that as an excuse to justify its untimely claim.

18          In fact, there is no excuse.  Google was well aware of these issues from the outset of the

19   case.  Oracle attached the registration statements identifying "licensed-in components" to its

20   original and amended complaints.  (ECF No. 1 Ex. H; ECF No. 36 Ex. H.)  In addition, Google is

21   not only a member of the Java Community Process, it sits on the Executive Committee.  Josh

22   Bloch is its current representative.  (RT at 827:18-21 (Bloch); 1181:15-20 (Lee).)  Google is fully

23   aware of the process by which specifications are developed.  Most of the fourteen other Java API

24   packages that Google copied were dropped from this case nearly a year ago because Google

25   claimed it had a license to use them.  (*See* ECF No. 260 at 1 n.3.)  Oracle narrowed the issues and

26   the parties proceeded to trial on the 37 API packages whose ownership Oracle understood Google

27   was not disputing.

28

## II.   GOOGLE NEVER RAISED THE THIRD PARTY OWNERSHIP ISSUE IN ITS PRETRIAL FILINGS

As far as Oracle can recall, Google never identified any third-party ownership issues at any time with respect to the copyrighted works at issue in the trial.  Google certainly did not identify any third-party ownership issue in the many pre-trial findings it made to the Court.  The parties submitted lengthy briefs in March 2012 in response to an order from the Court, which stated that "To help frame copyright issues, this order requests that the parties each submit briefs regarding the main copyright liability issues at trial."  (ECF No. 708.)  In its opening brief on March 9, Oracle listed the elements of its claims, and identified the J2SE 5.0 registration as a collective work as well as the fact that the registration covered "licensed-in components."  Specifically, under the heading "Ownership," Oracle stated:

> Oracle's copyrights in J2SE 5.0 materials were registered with the U.S. Copyright Office under registration numbers TX 6-066-538 and TX 6-143-306.  J2SE 5.0 was registered as a collective work, comprising prior works by Sun, licensed-in components, and new and revised computer code and accompanying documentation and manuals.

(ECF No. 780 at 4.)

In the opening brief Google filed on March 9, Google included a section entitled "BRIEF SUMMARY OF REMAINING COPYRIGHT CLAIMS AND ISSUES."  (ECF No. 778 at 1-2.)  But Google did not raise contributions by third parties as a remaining issue in either the summary section or the remainder of its brief.  (*See id.*)

On March 23, 2012, the parties filed simultaneous responsive briefs.  In its response, Google addressed the registration issue at length, but again did not assert that it was challenging ownership on the basis that third parties had contributed to the 37 API packages and said nothing about "licensed-in components" even though that phrase had specifically been referenced in Oracle's opening brief.  To the contrary, Google's argument was focused on a series of technical legal challenges to the registration, such as whether, by registering the whole work, Oracle was entitled to a presumption of copyrightability as to individual elements, whether the APIs were included in the registration, and the effect of the copyright deposit.  (ECF No. 823 at 7.)

1    These legal challenges are the only ownership attack Google raised heading into trial.

2  Contrary to what Google represented to the Court, the third-party ownership issue Google now

3  asserts was never identified in the pre-trial statement or any of the filings that accompanied it.

4  The Court's pre-trial order requires the parties to include, among other things: "(i) a brief

5  description of the substance of claims and defenses which remain to be tried" and "(iv) a list of all

6  factual issues which remain to be tried, stating the issue with the same generality/specificity as

7  any contested elements in the relevant jury instructions, all organized by counts."  (Guidelines for

8  Trial and Final Pretrial Conference In Civil Jury (Alsup) at 2.)  Google now claims it was aware

9  of this issue at the time the parties filed their Joint Proposed Pre-Trial Order (RT at 1884:19-

10  1886:4), but it failed to comply with either provision.

11    Google did not identify the third-party ownership issue in its description of the substance

12  of claims and defenses to be tried.  (*See* ECF No. 525 at 1-2.)  It also did not identify ownership

13  by third parties in the 37 API packages as a factual issue in the pre-trial statement.  (*See id.* at 13-

14  16.)  The only factual ownership issue it identified was "Whether Oracle is the current owner of

15  rights, title, and interest in the Java-related works registered by Sun with the U.S. Copyright

16  Office," not whether third parties had rights because of any contributions that they made.  (*Id.* at

17  14 ¶ 9.)  If Google truly intended this to be an issue, as it now claims was the case all along,

18  Oracle was not required to guess that this was so.  The Court's order required Google to identify

19  the issue with enough specificity to make Oracle aware that this would be an issue for trial.

20    At a hearing before the Court on April 26, 2012, Google claimed that its third-party

21  ownership claim was identified in a different provision of the Joint Pre-Trial Order included

22  under the heading "Issues of Law Which Remain To Be Resolved."  That provision states

23  "Whether, by virtue of the copyright registrations of the J2SE and JDK materials, Sun registered

24  its copyrights in the 37 Java API design specifications that Oracle has accused Google of copying

25  into Android."  (ECF No. 525 at 10, RT 1885:6-20.)  Google claimed, "that is exactly the 103(b)

26  issue that we discussed yesterday."  (RT at 1885:16-19.)  This is false.  This joint issue of law

27  referred to the same set of technical legal challenges Google raised in its March 23, 2012 brief,

28  such as whether the registration of the J2SE 5.0 platform could be construed to be a registration

of the 37 API packages.  (*See* ECF No. 823 at 7.)  The question of whether third parties have an ownership interest in the copyrighted works is, of course, a question of fact for the jury, not a question of law.  *Del Madera Props. v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 979 (9th Cir. 1987) ("authorship of a copyrighted work is a question of fact for the jury").  If Google wanted to place this at issue, it would have listed it under the category of "Factual Issues That Remain To Be Tried" not "Issues of Law Which Remain To Be Resolved."  And it needed to identify it clearly.

The other pre-trial filings confirm that Google is opportunistically trying to re-write the record after the fact.  If Google sought to place ownership at issue, it was required to propose an ownership jury instruction.  (Guidelines for Trial and Final Pretrial Conference In Civil Jury Cases § 2(b).)  There is a Ninth Circuit Model Jury Instruction on the definition of ownership, Model Instruction 17.5.  (*See* Ninth Circuit Civil Model Jury Instruction (Copyright) § 17.5, Copyright Infringement – Ownership of Valid Copyright – Definition.)  Neither party included it or any equivalent instruction.  (*See* ECF No. 539.)  Instead the parties submitted a standard instruction that refers to the elements of copyright infringement as ownership and copying.  (ECF No. 539 Disputed Instruction No. 10.)

Google also failed to identify this as an issue in the parties' jury instruction briefing.  Google objected to Oracle's proposed instruction, which included a presumption of copyrightability of the individual works at issue based on the registration.  (ECF No. 539 Disputed Instruction No. 11.)  But in response, Google made no claim that the presumption of copyrightability does not apply because the registration refers to "licensed-in components," as it does now.  Instead Google made the same legal argument it raised in its March 23, 2012 brief, that the presumption of copyrightability applies only to the work as a whole.  (*See* ECF No. 535 at 12-13.)

Another opportunity for Google to raise this ownership issue was its trial brief.  But the trial brief also makes no mention of any challenge to ownership based on third-party contributions or licensed-in components.  (*See* ECF 534 at 12-15.)

Oracle thus entered the trial with the understanding that Google was not challenging ownership based on any alleged third-party contributions.

### III.   GOOGLE TOLD ORACLE AND THE COURT THAT IT WAS NOT DISPUTING OWNERSHIP

Oracle's understanding that Google was not challenging ownership was confirmed during a key exchange at the trial that took place on the third day in Oracle's case-in-chief, when Google's counsel was questioning Oracle witness Mark Reinhold about contributions to API packages by others in the Java Community Process.  (*See* RT at 708:19-712:15.)  Mr. Jacobs, counsel for Oracle, expressed his concern at the break that this line of questioning was likely to cause confusion for the jury:

> Mr. Jacobs: Your Honor, I see a potential for confusion in a complex area about a matter of law.  And, so, at some point we may be asking you for an instruction on this.
>
> The Court: What is that?
>
> Mr. Jacobs: Google's questioning may suggest to the jury a dispute about ownership of the 37 API packages that are in dispute here.  The jury confuses the percentage of or the packages or classes or whatever that were developed by third-parties.
>
> There is no ownership dispute here.  There is no question that Oracle has the right, as a matter of ownership, to assert the copyrights at issue here.
>
> Mr. Purcell: Your Honor, ***we're not disputing ownership of the copyrights***.  We're responding to a request from the Court regarding the involvement of other members in the community in the Java Community Process and API development.

(RT at 713:7-23 (emphasis added).)

Oracle was entitled to rely on this unequivocal representation and did.  Google is trying to retract the representation now, claiming its statement only acknowledged that Oracle owned the copyrights at issue, but still disputed "whether Oracle has proved what is *in* those works, and whether Oracle's copyrights cover *particular parts* of those works."  (ECF 1043 at 5 n.6.)  But that latter point, of course, was precisely the basis for Mr. Jacobs' concern.  Immediately before the break, Google's counsel had been questioning Dr. Reinhold about "collaboration with other members of the JCP," whether other companies sometimes acted as the specification lead, and how "for some Java APIs, Sun and Oracle don't even own the copyrights in the underlying source

1  code." (RT at 709:14-712:9.)  It is disingenuous for Google to suggest now, in the context of the

2  questioning that took place, that when it stated it was "not disputing ownership of the copyrights,"

3  it was intending to preserve the right to make this argument.  As the Court itself has stated,

4  Google's counsel's statement about not disputing ownership "was in the context of a very

5  concrete statement by Mr. Jacobs about finding out whether there was an ownership dispute on

6  the 37 API packages." (RT at 2130:6-2131: 19.)

7  　　Google has continued to mislead Oracle about its intent to pursue this issue even after it

8  raised it, representing in two filings that it only intended to continue its ownership challenge as an

9  alternative argument in the event the registration was deemed to be a collective work.  (*See* ECF

10  No. 1007 at 1-2 ("To the extent Oracle has not already withdrawn with prejudice its 'collective

11  work' argument, Google is entitled to judgment as a matter of law of non-infringement as to all

12  constituent elements of the registered works."); ECF No. 984 at 11 (stating it was raising dispute

13  if "the Court accepts Oracle's 'collective work' argument.").)  Oracle withdrew its

14  characterization of the registration as "collective work" in part based on the statements made by

15  Google in its April 25 filing (ECF No. 984).  (*See* RT at 2134:11-17, 2136:7-11.)

16  **CONCLUSION**

17  　　Google's last minute change in position was highly prejudicial.  Oracle was left

18  scrambling at the end of trial, with very limited time left, to defend against an issue Google never

19  identified in its pre-trial filings and stated it did not dispute.  Google should be held to its word.

20  The Court should preclude Google from disputing ownership on the basis that any third party may

21  have contributed to the copyrighted works.

22

23  Dated: May 7, 2012                                      MORRISON & FOERSTER LLP

24  　　　　　　　　　　　　　　　　　　　　By:  /s/ *Michael A. Jacobs*

25  　　　　　　　　　　　　　　　　　　　　　　　Michael A. Jacobs

26  　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
   　　　　　　　　　　　　　　　　　　　　ORACLE AMERICA, INC.

27

28