MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA 94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
arutherford@bsfllp.com
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

ORACLE AMERICA, INC.

Plaintiff,

v.

GOOGLE, INC.

Defendant.

Case No. CV 10-03561 WHA

**ORACLE AMERICA, INC.'S BRIEF IN RESPONSE TO COURT'S QUESTIONS**

Dept.: Courtroom 8, 19th Floor
Judge: Honorable William H. Alsup

Oracle submits this brief to respond to the questions posed by the Court on May 7, 2012, regarding Oracle's possible claim for infringer's profits with respect to rangeCheck, and to address damages issues arising from the jury's verdict in the first phase of the trial relating to copyright liability. We discuss below several possible approaches to simplify and expedite the resolution of this matter, most of which would require the consent of Google or the Court, or both. We also set forth our position with respect to rangeCheck.

**A. PROCEDURAL PROPOSALS**

The jury's failure to reach a verdict on Google's fair use defense means that, without some action by the Court and/or the parties, the trial cannot proceed to a final verdict with this jury. Sometime after the patent phase ends, the Court will need to empanel and instruct another jury, the parties will have to re-try the issue of fair use, and only then can the copyright damages phase of this trial be completed. Presenting the case to a second jury would be expensive, time-consuming, and duplicative, and may impose a substantial additional delay.

Our first, and simplest, proposal is that the parties stipulate, if the Court agrees, that the Court will decide the issue of fair use with respect to Google's infringement of the Sun API specifications as the trier of fact. Either the Court will hold that Google's infringement was fair use, in which case the Court will have disposed of Oracle's claim, or the Court will hold that Google's infringement was not fair use, in which case we will proceed in Phase 3 to try the issues of Oracle's damages and Google's infringer's profits. This claim has always been by far the most important of Oracle's copyright claims, and if Google were prepared to stipulate to this approach, Oracle would be prepared to abandon its claim for infringer's profits with respect to rangeCheck, and to stipulate that the Court could, based on the existing record, set the statutory damages for rangeCheck. This would mean that if the Court decided that Google's infringement was fair use, there would be no copyright damages for the jury to decide; and if the Court decided that Google's infringement was not fair use, the jury would have a single set of remedy issues relating to the API specifications.

If Google is not prepared to stipulate to the Court as trier of fact resolving the single issue of fair use, we would propose that the parties waive the jury on all remaining issues (except to whatever extent the Court believed it was appropriate to retain the jury as an advisory jury). This, too, avoids



BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

the necessity of a substantial trial of any copyright issues, and would also have the advantage of permitting the Court, rather than the jury, to deal with whatever allocation issues arise as the result of Oracle's damages and infringer's profits claims.

If Google is not prepared to stipulate to either of these proposals, we would propose to wait until the Court resolves Oracle's pending JMOL motion with respect to the fair use issue. Whichever way the court decides the JMOL motion, we would be prepared to stipulate that the Court could resolve Oracle's remedy claims with respect to rangeCheck as a trier of fact.

We set forth below why we believe that, contrary to Google's argument, and contrary to the Court's initial views expressed yesterday, Oracle has a valid infringer's profits claim with respect to rangeCheck.

**B. RANGECHECK**

RangeCheck is, as the parties have agreed, protected by copyright. Google copied rangeCheck in its entirety. The jury rejected Google's argument that the copying of rangeCheck was *de minimis*, and found Google liable for copyright infringement as a result of its copying of rangeCheck. However, because rangeCheck represents only a very small part of Android's code, Oracle has not been able to quantify under the applicable legal standards its damages caused by Google's copying of rangeCheck. Google's argument that rangeCheck therefore should not be the basis for an infringer's profits claim either (and that Oracle's remedy should be limited to statutory damages) misses the point in two ways.

First, the Copyright Act, unlike patent law and unlike tort law generally, allows a copyright holder who proves infringement to recover both the plaintiff's damages and the infringer's profits. The threshold issue is, therefore, not an issue of how much of Google's Android profits Oracle should receive as a result of the rangeCheck infringement, but a question of who has the burden of proof with respect to that issue. Once Oracle establishes (a) that Android infringes and (b) what Android's revenue is, the Copyright Act clearly places the burden of determining how much of the resulting profits are allocable to the infringing material on the infringer. As numerous courts have recognized, this rule has sound public policy underpinnings. Where the defendant combines infringing material with non-infringing material, separating out the profits allocable to the infringing





BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

material is likely to be (a) difficult and (b) dependent on evidence under the control of the infringer. As between the innocent copyright holder and the guilty infringer, it is sensible that this burden should fall on the infringer. This is more, not less, true when the infringing material is a relatively small part of the work into which it is incorporated. Under those circumstances, separating out profits allocable to the infringing material alone is particularly difficult, and virtually impossible for the plaintiff, compared to the infringer who will control most of the relevant evidence. A rule that places the burden on the copyright holder is tantamount to a rule that enables infringers to infringe with impunity given the limitations of statutory damages.

Second, the issue of how much of Android's profits are allocable to rangeCheck is not a function of how many lines of code rangeCheck represents. The evidence is that rangeCheck plays a significant role in Android's functioning. For example, Dr. Mitchell conducted an analysis into the significance of rangeCheck to other code in the same class file. (Mitchell at RT 1329:5–11.) He found that a number of other source code files in other files called on rangeCheck. He also did an experiment in which he counted the number of times that rangeCheck was called in booting up a phone, and found that the function was called 2,600 times just in powering on the device or starting the emulator: "a pretty big number for the number of calls to this function." (*Id.* at 1329:5–21.) Although Google has apparently removed rangeCheck from the latest release of Android, Google has admitted that all of the previous releases of Android are still available on Google's website, and we believe that the evidence in Phase 3 will show that these releases (including the infringing rangeCheck code) continue to be used by Android handset manufacturers. (*See* March 28, 2012, Hearing Tr. 24:10–25:17; Bornstein at RT 1832:3–10.)

Although whether rangeCheck's nine lines of code should be compared to 15 million lines or a much smaller number is a matter of dispute, there is no dispute that, unlike the 37 API specifications, rangeCheck is not the heart and soul of Android. However, the fact that it, like a short poem in a large anthology, makes a much smaller contribution does not insulate Google from paying infringer's profits.

//

//

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

### C. APPLICABLE LAW

#### 1. Under prevailing case law, except in the case of a *de minimis* finding, entitlement to infringer's profits does not depend on how much infringing material is included in an infringing work.

The Copyright Act provides:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). The statute could not be clearer that the burden of apportionment of infringer's profits to "factors other than the copyrighted work" is on the defendant. *See also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 518 (9th Cir. 1985) ("*Frank Music I*") (1909 Act) ("The burden of proving apportionment, (i.e., the contribution to profits of other elements other than the infringed property), is the defendant's."). Oracle is not claiming that it is entitled to all Android profits due to Google's infringement of just rangeCheck. Instead, Oracle can and will meet its burden by showing Android revenues. Google, not Oracle, has the burden to whittle damages down from there.

The cases make clear that, if the infringing material is included in a revenue-producing product together with other material, even a very small amount of infringing material supports an infringer's profits award. In *On Davis v. The Gap, Inc.*, the Second Circuit discussed what would be sufficient to carry the plaintiff's burden under the Copyright Act:

> if a publisher published an anthology of poetry which contained a poem covered by the plaintiff's copyright, we do not think the plaintiff's statutory burden would be discharged by submitting the publisher's gross revenue resulting from its publication of hundreds of titles, including trade books, textbooks, cookbooks, etc. In our view, <u>the owner's burden would require evidence of the revenues realized from the sale of the anthology containing the infringing poem.</u> The publisher would then bear the burden of proving its costs attributable to the anthology and the extent to which its profits from the sale of the anthology were attributable to factors other than the infringing poem, including particularly the other poems contained in the poem.

246 F.3d 152, 160 (2nd Cir. 2001) (emphasis added). In other words, the plaintiff could carry any

initial burden by providing evidence of the revenues generated by the overall work containing a small infringing poem.

In *On Davis*, the court held that even revenues that were not received as a direct result of an infringing work could qualify under § 504(b). In *On Davis*, an advertisement for The Gap included a photograph of a man wearing copyrighted eyeglasses. The court held that it was not sufficient to shift the burden under § 504(b) to merely prove the corporate revenue of The Gap's parent corporation. *On Davis*, 246 F.3d at 160–61. However, the court stated that proof of defendant's revenues from eyeglasses (of all kinds) and accessories (and perhaps all revenues for Gap stores, as opposed to other stores owned by the parent corporation) would have been sufficient to shift the burden to the defendant to "prove his or her deductible expenses and the elements of proof attributable to factors other than the copyrighted work." *Id.* at 159–60.

In *Cream Records, Inc. v. Joseph Schlitz Brewing Co.*, the defendant copied ten notes from a song, "The Theme From Shaft," and used those ten notes without permission in a beer commercial. The plaintiff provided proof of the total fees that the advertising company, Benton & Bowles, was paid for producing the infringing commercial, and sought those fees as an infringer's profits award. The Ninth Circuit observed that "Cream met its burden" when it provided that proof; it was then up to the defendant to provide evidence of its deductible expenses and the elements of profit attributable to factors other than the infringement. 864 F.2d 668, 669 (9th Cir. 1989) ("*Cream II*"). In fact, the appellate court held that it was clear error for the district court to award one percent of the fees figure based only on its opinion that the infringement was minimal. *Id.* at 669–70.

In *Frank Music*, the plaintiffs owned the copyrights on a play called *Kismet*. Twenty years after the play was first copyrighted, the defendant, the Las Vegas MGM Grand Hotel, premiered a musical revue called *Hallelujah Hollywood* in its theater. *Frank Music I*, 772 F.2d at 510. *Hallelujah Hollywood* featured ten acts of singing, dancing, and variety performances; it featured a live tiger, jugglers, and the magicians Siegfried and Roy. One of the ten acts included a "tribute" to *Kismet*, with six minutes of selected musical numbers. *Id.* at 510. Notwithstanding the fact that the infringement was just a few minutes out of a much longer and more complicated revue, the plaintiffs were held to be entitled not just to profits on ticket sales, but also to indirect profits amounting to a



BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

percent of "the hotel's guest accommodations, restaurants, cocktail lounges, star entertainment in the 'Celebrity' room, the movie theater, Jai Alai, the casino itself, convention and banquet facilities, tennis courts, swimming pools, [and the] gym and sauna," all of which were recoverable because *Hallelujah Hollywood* had some promotional value for the hotel as a whole. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1550 & n.4 (9th Cir. 1989) ("*Frank Music II*") (1909 Act).

There were obviously many, many reasons why people ate in the casino's restaurants, stayed at the hotel's rooms, used the hotel's spa services, and gambled in the hotel's casinos unrelated to the revue at all, let alone the six minutes of musical numbers. That did not, however, mean plaintiff was entitled to zero infringer's profits or that the tiny influence of the six minutes of musical numbers somehow excused the infringer from its statutory burden.

Moreover, the Ninth Circuit rejected the defendant's argument that

> the relative unimportance of the *Kismet* music was proved by its omission and the show's continued success thereafter. *Hallelujah Hollywood* was a revue, comprised of many different entertainment elements. Each element contributed significantly to the show's success, but no one element was the sole or overriding reason for that success. Just because one element could be omitted and the show goes on does not prove that the element was not important in the first instance and did not contribute to establishing the show's initial popularity.

*Frank Music I*, 772 F.2d at 518.

In *Polar Bear Productions, Inc. v. Timex Corp.*, Timex included Polar Bear's copyrighted material in a promotional video shown at a trade show and in a joint promotional booklet prepared with Mountain Dew. 384 F.3d 700, 704 (9th Cir. 2004). Timex did not record any revenue from either promotion. Instead, Polar Bear claimed three types of infringer's profits—profits based on revenues from watches sold at the trade shows, profits based on revenues from watches sold as part of the Mountain Dew promotion, and profits based on revenue from price increases over a four year period on Timex watches, which Polar Bear attributed to the use of the promotional videos at trade shows. *Id.* at 712–13.

The *Polar Bear* court held that plaintiff was entitled to receive infringer's profits based on the first two categories, but not the third, noting: "Actual retail purchasers were never exposed to the



BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

infringing image from the trade shows, nor did the evidence link retail consumers to the trade show promotion nor was there evidence that vendors at the trade shows somehow transmitted enthusiasm to retail customers." *Id.* at 715.

*Polar Bear*, like *Frank Music*, upon which the *Polar Bear* court relied, involved "indirect profits." Indirect profits are those with an attenuated nexus to the infringement, such as hotel and gaming operations at the Las Vegas hotel where an infringing show was displayed (*Frank Music I*, 772 F.3d at 517); revenues from sales of watches while an infringing promotion ran (*Polar Bear*, 384 F.3d at 710); an increase in symphony ticket sales after an infringing direct mailing (*Mackie v. Rieser*, 296 F.3d 909, 915–16 (9th Cir. 2002)); the parent company's net revenue during and shortly after an infringing advertisement campaign (*On Davis*, 246 F.3d at 159–60); or sales of an automobile, the Audi TT Coupe, which were promoted by an infringing ad, (*Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 795–96 (8th Cir. 2003)). What the indirect profits cases establish is that even in this attenuated context, the burden of allocation is on the infringer once it is established that the work including the infringing material has resulted in revenue to the infringer.

Here, Google itself records revenues as a direct result of Android. The infringing code is an "integral part of the product itself." *Garcia v. Coleman*, No. C-07-2279-EMC, 2009 WL 799393, at *3–4 (N.D. Cal. Mar. 24, 2009) (finding that use of an infringing photograph on a wine bottle label was "more akin to a direct profit case than an indirect profit case" because "the copyrighted photograph was not separate from the product ultimately sold but rather came as part of that product"). It is contained in the source code for multiple versions of Android; continues to exist in downloadable form on Google's website; remains integrated into millions of existing phones; and is called upon thousands of times every time one of those phones boots. According to Google's Chairman and CEO at the time, Eric Schmidt: "the primary reason to have something like Android is that people will do more searches, and then we'll get more money as a result." (Schmidt at RT 1458:13–16.) In indirect profits cases, by contrast, it is disputed whether the work containing the infringing element results in the revenue claimed. *See Mackie*, 296 F.3d at 912; *see also* NINTH CIRCUIT MODEL JURY INSTR. 17.24 (causal nexus instruction given where a copyright holder seeks indirect profits or gross revenue).



BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

Cases where (as here) an infringer is proven to have received revenue as a direct result of the distribution of a work that includes infringing material consistently hold that the plaintiff has met its burden when it simply shows the revenues derived from distributing that work. Where a plaintiff seeks profits from activity not itself involving infringement (e.g., the sale of Timex watches; sales of the Audi TT Coupe; MGM's casino and restaurant operations), the plaintiff has the burden of showing a causal nexus between the revenue from such activity and the infringement. However, there is simply no support for Google's premise that, other than the *de minimis* threshold, there is any particular quantum or percentage of infringing material that is required to shift the burden pursuant to § 504(b), where the infringing material is included in a larger work from which the defendant admittedly receives revenue.

Oracle will not rely on Google's gross revenues, or even the total revenues from search, but will instead begin with the fraction of Google's total revenues that Google itself says are its revenues from Android—direct-to-consumer phone sales of Android devices, advertising revenue from Android phones, and Android Market app sales. These revenues represent a small fraction of Google's total revenues, and they are directly tied to the infringing software. Oracle needs to make no additional causal showing. Oracle will not simply "offer an overall gross revenue number—like $11.5 billion—and sit back." *Polar Bear*, 384 F.3d at 711.

**2. Any further apportionment is Google's burden.**

Google may, of course, argue that rangeCheck is too small, or too unimportant, to support a substantial infringer's profits award. Google is entitled to make this argument, and to introduce evidence to support it. But the cases and the Copyright Act are crystal clear that this is Google's burden. In *Cream II*, as noted above, notwithstanding the fact that the infringement was just ten notes long, the plaintiff met its burden in proving infringer's profits when it showed the full amount that the advertising company was paid to produce the commercial. "[T]he defendant introduced no evidence of either its deductible expenses or the elements of profit attributable to factors other than the infringement. If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits." *Cream II*, 864 F.2d at 669 (citations and internal punctuation omitted). Congress has made the studied choice to put the burden on Google, which is



BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

where it properly belongs.

Where a work (in this case Android) includes infringing material (in this case rangeCheck), the plaintiff must prove the revenues the infringer received as a result of the work. In some cases this will be easily demonstrated—a publisher will have records for its sales of an anthology; Google has records of its Android's revenues. In other cases, plaintiff's burden will be harder—proving, for example, that a promotional video at a wholesaler's conference increased the retail prices of Timex watches, *see Polar Bear*, 384 F.3d at 715, or that a show at a hotel's showroom increased the hotel's gambling and restaurant revenues, *see Frank Music II*, 886 F.2d at 1550, or that an advertisement featuring copyrighted eyeglasses increased sales of other eyeglasses and accessories, *see On Davis*, 246 F.3d at 160, or that an advertisement for Volkswagen that included limited infringing material increased sales of Volkswagens generally, or of a particular model. *Andreas*, 336 F.3d at 795–800.

Where a plaintiff can meet its burden of showing that the defendant received revenue from an infringing work (i.e. a work that includes infringing material), it has met its burden and the burden shifts to the defendant.

Because the jury has found that the use of rangeCheck in Android infringes Oracle's copyright, and because certain of Google's revenues from Android are not a matter of dispute, no further evidence (including no expert testimony) is required until and unless Google carries its burden under § 504(b) to prove Google's "deductible expenses and the elements of profit attributable to factors other than the copyrighted work."

Dated: May 8, 2012

BOIES, SCHILLER & FLEXNER LLP

By: /s/ David Boies
David Boies

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**GENERAL ORDER 45 ATTESTATION**

I, Steven C. Holtzman, am the ECF User whose ID and password are being used to file ORACLE AMERICA, INC.'S BRIEF IN RESPONSE TO COURT'S QUESTIONS. In compliance with General Order 45, I hereby attest that I have obtained Mr. David Boies's concurrence to file this document on his behalf.

Dated: May 8, 2012

BOIES, SCHILLER & FLEXNER LLP

By: */s/ Steven C. Holtzman*
Steven C. Holtzman

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.