KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER
(*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (Pro Hac Vice)
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: 415.318.1200
Fax: 415.318.1300

GREENBERG TRAURIG, LLP
IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
1900 University Avenue
East Palo Alto, CA 94303
Tel: 650.328.8500
Fax: 650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 3:10-cv-03561 WHA <br><br> **GOOGLE INC.'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE COPYRIGHT DAMAGES** <br><br> Dept.:   Courtroom 8, 19th Floor <br> Judge:  Hon. William Alsup |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. As a matter of law, Oracle could be entitled to a disgorgement remedy based on rangeCheck or the decompiled files only if it could first prove a causal link between the infringing files and some amount of Google's gross revenue. ...................................................................................................................2

    B. Given the evidence in the record, no reasonable jury could possibly find a causal link between Google's use of rangeCheck or the eight test files and any Android revenues. ..........................................................................................8

        1. The trial record shows that rangeCheck has no link to Android revenue. ..................................................................................................................8

        2. The trial record shows that the eight decompiled test files have no link to Android revenue. ........................................................................................10

    C. Oracle should be precluded from offering testimony about any alleged nexus between rangeCheck or the decompiled files and any Google revenue. ...................................................................................................................11

III. CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Mackie v. Rieser*
  296 F.3d 909 (9th Cir. 2002) .......................................................................................... 4, 5, 6

*On Davis v. The Gap, Inc.*
  246 F.3d 152 (2d Cir. 2001) ............................................................................................ 6, 7, 8

*Polar Bear Prods., Inc. v. Timex Corp.*
  384 F.3d 700 (9th Cir. 2004) ................................................................................................. 4

*Taylor v. Meirick*
  712 F.2d 1112 (7th Cir. 1983) ............................................................................................... 4

*Woodford v. Ngo*
  548 U.S. 81 (2006) ................................................................................................................. 7

**Federal Statutes**

17 U.S.C. § 504(b) .......................................................................................................... 2, 3

## **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that Defendant Google Inc. ("Google") hereby moves for summary judgment that Oracle America, Inc. ("Oracle") cannot recover any of Google's profits based on infringement of Oracle's copyrights in a file called Arrays.java, from which Google copied a nine-line method called rangeCheck, and eight decompiled test files. This Motion is based on the following memorandum of points and authorities in support, the Declaration of David Zimmer ("Zimmer Decl.") in support of this motion and accompanying exhibits, the entire record in this matter, and on such evidence as may be presented at any hearing of this Motion, on a date and at a time to be determined by the Court. The parties have met and conferred regarding this Motion, and have agreed that Oracle will file an Opposition by 10:00 PM on Sunday, May 13, and that Google will waive its right to a Reply.

Dated: May 12, 2012                                          KEKER & VAN NEST LLP

                                                                         By: s/ Robert A. Van Nest
                                                                              ROBERT A. VAN NEST

                                                                         Attorneys for Defendant
                                                                         GOOGLE INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This Court should grant summary judgment for Google on Oracle's right to recover any of Google's profits based on infringement of Oracle's copyrights in (1) a 3,000-line file called Arrays.java, from which Google copied a nine-line method called rangeCheck; and (2) eight decompiled test files, which were copied by a third-party contractor called Noser in violation of Noser's contract with Google and unwittingly used by Google (and which never actually appeared on any Android phone).  Oracle has no evidence, and cannot possibly prove, that Google earned *any* revenue causally linked to either the nine lines of rangeCheck or the eight superfluous test files.

Oracle's only possible argument for disgorgement is legally baseless.  Oracle has argued, and will argue in response to this motion, that all it needs to do is offer the amount of Google's gross revenue for Android, at which point it can sit back and relax as the burden shifts to Google to prove its deductible costs and the portion of its Android profits not attributable to the nine lines and eight files.  This fundamentally misunderstands how copyright damages work.  Before the burden shifts to Google, Oracle must prove an amount of gross revenue that is causally linked to the infringing work—which is the two Android files containing rangeCheck and the eight test files, not all of Android.  The Android platform contains over 15,000,000 lines of code, including 168 API packages, a virtual machine, an applications framework, and numerous applications. Settled Ninth Circuit law makes clear Oracle cannot just wave its hands at a gross revenue number for the entire platform without showing how the *infringed files* contributed to the adoption of that platform or the sale of Android phones.

Oracle has no such evidence and no witness on its witness list who could be competent to offer it anyway.  After Oracle's damages expert failed to analyze literal-copying damages in either of his first two reports, the Court barred him from offering such testimony at trial.  Jan. 9, 2012 Order [Dkt. 685] at 10.  Oracle's counsel even admitted in Court just yesterday that it had no expert testimony that could prove a causal link.  RT 3788:25-3789:1 (Boies).  Neither does it

1

1  have any fact testimony to offer; it has no witness on its list who could speak to the issue of how
2  the infringing files caused Google to make money from Android.  And the trial record to date is
3  replete with evidence showing those files did not generate any revenue.  First, the rangeCheck
4  method makes up an almost imperceptible fraction of the 15 million lines of code in the Android
5  platform—less than .00006%, or *six ten-millionths*, of Android's total content.  The evidence in
6  the trial record shows that the method is trivial and could be written by a good high-school
7  programmer, was not even in Android when it was launched, and has not been in Android for
8  over a year now.  Second, the eight test files are likewise trivial—they never even appeared on
9  any Android phone, the devices that generated every penny of the revenue Oracle wants to claim.
10 It is inconceivable that any of these files contributed even a penny to Android's profits.

11 The Court has reacted skeptically to Oracle's disgorgement claim, commenting at various
12 times that the claim "borders on the ridiculous," "would be way out there," and is "the height of
13 ridiculousness."  RT 2892:13, 23-24, 3720:20-22.  It is.  Consistently throughout this case, Oracle
14 has tried to peg its damages claims to "Android" generally, rather than any incremental benefits
15 to Google of the specific, limited infringing technology.  But copyright law, favorable though it
16 might be to a plaintiff seeking an infringer's profits, forecloses that strategy without some proof
17 of a causal link.  There is and could be no such proof here.  The Court should grant summary
18 judgment on the issue for Google.

### II.   ARGUMENT

**A.   As a matter of law, Oracle could be entitled to a disgorgement remedy based on rangeCheck or the decompiled files only if it could first prove a causal link between the infringing files and some amount of Google's gross revenue.**

22 Oracle has no right to disgorgement of Google's profits based on Google's infringement
23 of rangeCheck because it has no evidence that Google made any revenue attributable *to the*
24 *copyrighted work that was found infringed*.  *See* 17 U.S.C. § 504(b).  Oracle has always tried to
25 maximize its damages by presenting this case as an epic struggle between its entire Java platform
26 and Google's whole Android platform, but the Court has always—rightly—rejected that effort
27 and directed Oracle to focus on the specific intellectual property and alleged infringing features at
28 issue.  Just before opening statements, the Court reiterated this basic point:

> But, Mr. Jacobs, you must remember. I'm going to say to the jury many times in this case: **The issue is not Java. It's not Android.** It's very specific parts about Java that are protected, if at all, by copyrights or patents and very specific parts of Android that are accused. So if we start getting off onto this is Java versus Android, the judge is going to intervene and say it's not.

RT 21:21-22:2 (emphasis added); *see also* July 22, 2011 Order Granting in Part Motion to Strike First Cockburn Report [Dkt. 230] at 5-6 (rejecting damages analysis based on purported harm to all of Java from the entirety of Android).

      The jury did not find that Google's Android platform infringed Oracle's Java platform. It found only that two Android files, TimSort and ComparableTimSort, infringed a single Java file called Arrays.java based on the nine-line rangeCheck method. The Court subsequently found as a matter of law, May 11, 2012 Order [Dkt. 1123], that eight Android test files also infringed eight Java files. In other words, the infringing works here are ten files out of many tens of thousands in the 15,000,000-line Android platform. *See* Final Charge to the Jury (Phase One) [Dkt. 1018] ¶ 29, at 15 ("For purposes of Question No. 3, the "work as a whole" is the compilable code for the individual file except for the last two files listed in Question No. 3, in which case the "work as a whole" is the compilable code and all the English-language comments in the same file."); Special Verdict Form [Dkt. 1018] at Question 3(a) (calling for verdict on infringement by TimSort files).

      It was Oracle that asked, over Google's objection, for the jury instructions that led to the specific findings of file-to-file copying. RT 2414:20-2418:13 (Charging Conference). The Court overruled Google's objection and gave Oracle the instruction it requested. *Id.* Oracle undoubtedly wanted a charge that defined the "work as a whole" narrowly—as individual Java files, not the entire Java platform—in order to increase its chances of an infringement verdict on its literal copying claims and decrease the chances that the copied materials would be found to be *de minimis* in the vastness of the Java platform. Oracle got what it wanted, but now it must live with the consequences for damages purposes.

      The expressly limited scope of the jury's verdict means we are no longer talking generally about Google's "Android revenues" with respect to wrongful profits. Oracle must prove that Google made an identifiable amount of revenue *from the infringing work*—the two Android files containing the rangeCheck method and the eight test files. The Ninth Circuit has laid out this

3

standard repeatedly, explaining that an infringer may not just point to a gross revenue number that is not sufficiently closely linked to the infringing item.  Most recently, in *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 710-12 (9th Cir. 2004), the Ninth Circuit explained that, "[a]lthough the statute references only the broad term 'gross revenue,' to conclude that a copyright plaintiff need only provide the company's overall gross revenue, without regard to the infringement, would make little practical or legal sense." *Id.* at 711.  Instead, "the causation element of the statute serves as a logical parameter to the range of gross profits a copyright plaintiff may seek." *Id.*  "The standard is straightforward: a copyright plaintiff is bound to no more and no less than its statutory obligation to demonstrate a causal nexus between the infringement and the profits sought." *Id.* at 712.  Even where an infringer "derived some quantum of profits from the infringement because its infringement was part of" a larger part of its business, "it nevertheless remains the duty of the copyright plaintiff to establish ***a causal connection between the infringement and the gross revenue reasonably associated with the infringement***." *Id.* at 715 (citing *On Davis v. The Gap, Inc.,* 246 F.3d 152, 160 (2d Cir. 2001)) (emphasis added).  "Only then would [the infringer] bear the responsibility for apportioning profits." *Id.*  This is the law in other circuits too.  As Judge Posner wrote nearly thirty years ago,

> It was not enough to show [defendant's] gross revenues from the sale of everything he sold, which is all, really, that [plaintiff] did.  If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits.

*Taylor v. Meirick,* 712 F.2d 1112, 1122 (7th Cir. 1983).  In other words, Oracle is seeking to shift the burden too soon.  Before Google has to make any showing, Oracle first must prove up not Google's gross revenue generally, or even Google's gross revenue from the Android platform as a whole, but an identifiable amount of gross revenue that is causally linked to the infringement.

*Polar Bear* only repeated what the Ninth Circuit had previously made clear.  In *Mackie v. Rieser,* 296 F.3d 909 (9th Cir. 2002), the Ninth Circuit held that, to the extent it seeks disgorgement of a defendant's *indirect* profits, "a copyright holder must establish the existence of a causal link" between the infringement and any such indirect profits.  *Id.* at 914.  In this context, indirect profits are those resulting from "revenue that has a more attenuated nexus to the

4

infringement" than revenue from "selling an infringing product." *Id.* Thus, in order to obtain a disgorgement of Google's profits from either Android-related advertising revenue or Android-related application revenue—both of which are indirect profits under *Mackie*—it must prove that there is a causal link between the infringement of Arrays.java or the eight decompiled files and Google's revenues. This requires a "threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits"—exactly what Google is asking the Court to conduct on this motion. *Id.* at 915. "Such an approach dovetails with common sense—there must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment." *Id.* "[A] copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Id.* at 915-16. Oracle has no such evidence here; it has never even tried to offer any.

In *Mackie,* the copyrighted work at issue was a sidewalk art installation called "The Dance Steps." *Id.* at 912. The defendant Reiser had incorporated a photograph of the work into a collage illustrating Seattle culture, which was then incorporated into a promotional brochure for the "Pops" series of the Seattle Symphony Orchestra, which was also a defendant in the case. *Id.* Among other remedies, Mackie sought disgorgement of any of the Symphony's profits allegedly attributable to the promotional brochure. *Id.* at 912-13.

The Ninth Circuit held that Mackie had failed to carry his initial burden to establish gross revenues casually connected to the Symphony's infringement:

> Intuitively, we can surmise virtually endless permutations to account for an individual's decision to subscribe to the Pops series, reasons that have nothing to do with the artwork in question. For example, was it because of the Symphony's reputation, or the conductor, or a specific musician, or the dates of the concerts, or the new symphony hall, or the program, or the featured composers, or community boosterism, or simply a love of music, or . . . ? In the absence of concrete evidence, Mackie's theory is no less speculative than our effort in this paragraph to enumerate even a relatively short list of the myriad factors that could influence an individual's purchasing decisions.

*Id.* at 916. Even had Mackie been able to offer evidence tending to show that a percentage of the Symphony's sales were tied to the infringing brochure, "such a rudimentary analysis cannot determine how many of those individuals subscribed ***because of Rieser's work***." *Id.* at 916

(emphasis in original).  Because the collage that incorporated a photograph of Mackie's artwork was "but one page in a multi-page brochure that advertised a series of concerts that were unrelated to the artwork itself," the Ninth Circuit flatly rejected Mackie's theory as "[r]ank speculation" that was legally insufficient to support a claim for indirect profits.  *Id.*  Oracle's proof here is far more speculative than even Mackie's inadequate evidence, given that there is so much more content in Android as a whole than in a single promotional brochure.  If the *Mackie* photo was a needle in the brochure's haystack, Android contains thousands upon thousands of haystacks.  The rangeCheck method is but nine lines in over 15 million lines of code for Android, RT 2179:19-23 (Astrachan), and the eight test files at issue never appeared on an Android phone, RT 1319:15-1320:6 (Mitchell), and thus could never have caused any consumer to purchase a phone, much less to use any of the Google-hosted services (like search, advertising, and applications) that actually generated Android-related revenue for Google.

In its last brief on this issue, Oracle's Br. in Response to Court's Questions ("Oracle Br.") [Dkt. 1106] at 4-8, Oracle offered the glib and erroneous argument that, because the copied files are part of Android, all it needs to do to carry its burden is point to a gross revenue number for Google's Android business unit, including all revenues from advertisements, digital content, and anything else.  But its own lead case rejects that argument.  Oracle cited *On Davis,* 246 F.3d at 160, for the proposition that, if a copyright owner proved infringement of a poem, it would satisfy its initial burden by identifying the infringer's gross revenue from "the sale of the anthology containing the infringing poem." *Id.*  Fair enough.  But directly after making that statement, the *On Davis* Court made clear that "we do not think the plaintiff's statutory burden would be discharged by submitting the publisher's gross revenue resulting from its publication of hundreds of titles, including trade books, textbooks, cookbooks, etc." *Id.*  The latter example is far closer to what Oracle is trying to do here, but even that comparison significantly understates the vast difference between nine lines of rangeCheck and the 15 million lines in the Android platform.  If the rangeCheck method were analogous to a poem, the "anthology" would be the 900-line TimSort file; it would certainly not be Android.  The larger platform includes not only 168 API packages (of which rangeCheck is but one method in two class files), but an operating system, an

6

applications framework, a virtual machine, and numerous applications.  It is no mere poetry anthology.  It is an entire warehouse of books, videos, music, and all the necessary apparatus for reading and playing all those media.  *On Davis* explicitly refutes the idea that this Court could simply assume a causal link between something as minute as nine lines of code and eight test files and gross revenues from something as massive as Android.

Moreover, even leaving the quantitative problems with Oracle's case alone and focusing on quality, rangeCheck is nothing like a poem in an anthology.  Oracle's counsel admitted this in court last week in arguing, unsuccessfully, for judgment as a matter of law on Google's fair use defense: "Obviously, software is not a symphony.  Software is not a poem."  RT 3368:17. (Jacobs).  When consumers buy a poetry anthology, it is reasonable to assume they do so because of the content of that anthology—and equally reasonable to infer that a single infringing poem might have played some causal role in the purchase.  But there is no evidence supporting the argument, and it would make no sense to assume, that Google's Android-related revenues are somehow connected to the presence of rangeCheck on some Android devices and eight test files that never made it onto a phone.  For Google to make money from Android, it is necessary but not sufficient for a consumer to buy an Android phone, and there is no evidence that rangeCheck or the test files caused any consumer to buy a phone.  And, even if there were, Google does not make money off any phone until a consumer uses that phone to conduct a Google search, tap on a Google-hosted advertisement, or purchase an application from GooglePlay (formerly Android Market).  There is (and could be) nothing in the record to support a finding that rangeCheck plays any role in enabling, or persuading a consumer to access, any service that generates revenue for Google.  The test files, which are not even contained on the phones consumers purchase, cannot have any influence over a consumer's use of Google-hosted services.  Oracle does not even have evidence suggesting a *correlation* between rangeCheck and the decompiled files on the one hand and Google's revenues on the other.  And, of course, even establishing correlation would not establish a *causal* connection between the literal copying claims and Google's revenues.  *Cf. Woodford v. Ngo,* 548 U.S. 81, 95 (2006) ("this mistakes correlation for causation").  There is no causal link here.

7

Even Oracle's damages expert, who is forbidden from offering testimony on this issue, agrees that profits are recoverable only if they can be causally connected to infringing acts. Third Cockburn Report (Feb. 9, 2012) at 235, ¶ 643 ("I also understand that, as with actual profits, the infringing acts must have had an effect on profits"). Dr. Cockburn then explained why he believed that the *APIs* "materially enhanced" Android revenues, triggering § 504(b)'s burden-shifting. *Id.* at 236, ¶ 645. This makes clear that until two days ago, even Oracle recognized that it was required to demonstrate a causal relationship between the infringement and the revenue before being entitled to lost profits. It also makes clear that Oracle's failure to offer any expert testimony—or any other testimony—on this issue was no mere oversight, but a reflection of the fact that no evidence of a nexus exists.

**B.     Given the evidence in the record, no reasonable jury could possibly find a causal link between Google's use of rangeCheck or the eight test files and any Android revenues.**

In a more fundamental sense, Oracle's failure of proof on Google's gross revenues related to the copied files is beside the point, because the argument that any of Google's Android profits could possibly be the result of Google's use of that material in Android defies belief. No reasonable jury could reach that conclusion. To the contrary, the record establishes that, between them, rangeCheck and the test files are responsible for exactly 0.0% of Google's revenues.

**1.     The trial record shows that rangeCheck has no link to Android revenue.**

To begin with, as the Court noted after the jury rendered its verdict, rangeCheck makes up a tiny fraction of the Android platform in a quantitative sense. It is nine lines of source code out of a platform that contains more than 15 million lines, RT 2179:19-23 (Astrachan), amounting to .00006% of Android. That does not qualify even as *de minimis*.

But rangeCheck is indisputably insignificant as a qualitative matter too. The testimony at trial, from both sides of the aisle, has been unequivocal that rangeCheck is a "very short simple method" that checks three parameters of an array: the starting point, the end point, and that the end point is greater than the starting point. RT 813:7-8, 815:5-9 (Bloch). Josh Bloch, who wrote rangeCheck, testified that "[a]ny competent high school programmer could write" that method. RT 815:13-16 (Bloch). Even Oracle's expert Dr. Mitchell conceded that "a good high school

1  programmer" could write rangeCheck with guidance.  RT 1316:24-25 (Mitchell).

2  In addition to being trivial to create and easily replicable by a beginner, rangeCheck offers
3  no performance benefit to Android.  The rangeCheck method is nine lines out of a file called
4  TimSort.  Bloch testified that TimSort is useful to Android because it makes arrays sorts much
5  faster.  RT 812:19-813:3 (Bloch).  But Bloch also made clear that not one bit of that performance
6  improvement is due to rangeCheck, as opposed to the other 900-plus lines of code in TimSort.
7  RT 814:1-4.  In fact, rangeCheck is a "private method" that is "not part of the API."  Its
8  declaration cannot be called from outside of the TimSort class, only from within that class, so it
9  cannot have an effect on any other file in Android.  RT 813:12-25 (Bloch).  Oracle did not cross-
10 examine Bloch on these points, much less offer evidence to contradict him.[1]

11 Moreover, rangeCheck was not even in Android when Google announced the platform in
12 November 2007 and made its code available to handset partners for inclusion on phones.  Neither
13 was rangeCheck in Android when the first Android phones were released in October 2008.  Bloch
14 did not even join the Android team until December 2008 or January 2009.  RT 733:8-11 (Bloch).
15 He finished TimSort at some point in early 2009, at which point he contributed that file both to
16 Sun's OpenJDK project and to Android.  RT 822:4-9 (Bloch).  Further, rangeCheck has been out
17 of the current release of Android for about a year.  RT 825:8-19 (Bloch); RT 1700:25-1701:10
18 (Rubin).  The proven facts that both the platform's initial adoption by handset makers and carriers
19 and its recent growth happened in the absence of rangeCheck are additional reasons why no
20 reasonable jury could link any of Android's profits to the temporary inclusion of those nine lines
21 in Android.

22 Oracle's lone piece of contrary evidence is that the rangeCheck method is allegedly called
23 2,600 times when powering on a smartphone or starting an emulator.  Oracle Br. [Dkt. 1106] at
24 3:13-17 (citing RT 1329:5-21 (Mitchell)).  This is vacuous.  It is meaningless to cite an arbitrary
25 number of calls to a given method in the absence of context, and neither Dr. Mitchell nor any

---

[1] Dr. Mitchell testified that "I found a number of other source code in other files that called that function," RT 1329:13-14 (Mitchell), but the phrase "a number of other source code" is barely intelligible.  Dr. Mitchell never actually identified any Android file outside of TimSort that called rangeCheck, or explained how that could be possible for a private method like rangeCheck.

9

other witness testified whether rangeCheck was called any more or less than any other method in the Android software, during the startup sequence or any other time. In the world of sophisticated and ultrafast computer microprocessors, 2,600 calls to a function during the startup sequence of a smartphone could be a *low* number relative to other functions. There is nothing in the record to enable the Court or a jury to tell either way. Equally, just because a software function is called frequently does not mean it is important; it would stand to reason that a trivial nine-line piece of code that accomplishes a Programming 101 parameter test, like rangeCheck does, might be invoked fairly frequently. Dr. Mitchell never opined that there is any correlation between the number of calls to a function and its significance, much less that rangeCheck itself is significant. He certainly did not say that rangeCheck offered a performance boost to Android—and Bloch, who wrote it, made clear it does not.

For all those reasons, even if Oracle had any evidence (and it doesn't) of Google revenue causally linked to the TimSort files, it would make no difference. Google has carried its burden of proving that none of its Android profits are attributable to rangeCheck.

### 2. The trial record shows that the eight decompiled test files have no link to Android revenue.

Oracle also seeks disgorgement of Android profits on the basis of the copying of eight test files—files that were incorporated by Noser into Android code in contradiction to the express instructions of Google as set forth in the Noser-Google contract. RT 1696:21-1698:10, 1701:18-21 (Rubin); RT 1798:17-1803:6, 1810:11-13 (Bornstein); TX 2765 at 11. Like with the TimSort files, Oracle can present no causal link between the eight test files and any Android revenue.

As Oracle's expert conceded, the eight testing files do not appear on Android handsets. RT 1318:20-1320:6 (Mitchell). In other words, there is no interaction whatsoever between users of Android devices and the eight test files. Unsurprisingly, therefore, Oracle has proffered no evidence, either at trial or in its expert reports, to support a finding that these eight files have any causal effect on Android revenues generated by user activity on the handsets. *See* Third Cockburn Report (Feb. 9, 2012) at 235-36, ¶ 645. In fact, these files were removed from current releases of the Android platform more than a year ago to no moment. RT 1807:25-1810:1

(Bornstein). Accordingly, Oracle cannot as a matter of law establish a right to any damages other than statutory damages for these eight test files.

### C. Oracle should be precluded from offering testimony about any alleged nexus between rangeCheck or the decompiled files and any Google revenue.

Not only is the argument that the copied files generated any Android revenue implausible, and not only does the evidence in the record already prove that those files had no impact on Android revenues, Oracle has no possible vehicle for offering any contrary evidence in a damages phase that could create a factual dispute on this issue.

As the Court knows, Oracle has always shot for the moon when it has come to damages in this case, choosing to offer evidence only of Google's gross revenue from the Android platform as a whole. Oracle's damages expert Dr. Iain Cockburn could have presented a gross revenue figure allegedly linked to rangeCheck or the test files in either his of his first two damages reports, but he never made the attempt. Instead, after ignoring copyright damages altogether in his first report, Dr. Cockburn's second and third reports offered an opinion only as to alleged gross revenue from all Android ad and applications sales. Second Cockburn Report (Sept. 15, 2011) at 186-88, ¶¶ 463-68, & Ex. 22 (presenting Android gross revenue calculation through 2011); Third Cockburn Report (Feb. 9, 2012) at 235-37, ¶¶ 643-49, & Ex. 22 (same). Indeed, based on Oracle's and Dr. Cockburn's deliberate choice to focus on Android revenues generally, the Court barred Oracle from offering any expert opinion on damages for any of Oracle's literal copying claims, including the claims for infringement of rangeCheck and the test files:

> Dr. Cockburn has not adequately valued that [allegedly copied] code in his report and cannot do so at trial. This order holds that the jury will be instructed that if Google is found not liable for infringing the selection, arrangement, and structure of the API packages, then Dr. Cockburn's copyright damages analysis is inapplicable.

Jan. 9, 2012 Order [Dkt. 685] at 10. Oracle chose to maximize its potential damages recovery by focusing on the structure, sequence, and organization of the Java API packages and using the alleged literal copying as window dressing. Oracle's counsel conceded, as he had to, that Oracle cannot offer expert testimony to sustain its burden of proving Google's revenue causally linked to the infringement. RT 3788:25-3789:1 (Boies).

1    Neither does Oracle have any fact witness on its witness list who could offer evidence of a
2 causal link between Android revenues and the rangeCheck method, the two Android files
3 containing that method, the API package containing those files, or the Android core libraries, the
4 eight test files, or any other possibly divisible component of the Android platform.  In fact, not
5 only did Oracle prepare no expert and disclose no fact witness on this subject, it ***never disclosed***
6 ***the underlying damages theory*** at any time during discovery.
7    Oracle first disclosed its damages theory, as Rule 26(a) requires, in its December 2, 2010
8 initial disclosures.  There, Oracle did not refer to the rangeCheck method or the decompiled files
9 at all.  Indeed, the only fact Oracle disclosed relating to damages at all was that Eric Schmidt had
10 said Android's revenues were "large enough to pay for all of the Android activities and a whole
11 bunch more."  *See* Zimmer Decl. Ex. A (Oracle's 12/2/10 Disclosures) at 7:6-7.  Oracle also
12 noted that it had not completed its damages calculation, because "it will require expert evaluation
13 of information in Google's possession."  *Id.* at 6:10-11.  Oracle twice supplemented this response,
14 but neither supplemental response referred to the rangeCheck method or the decompiled files,
15 much less stated any facts suggesting a causal link between that material and any Android
16 revenue.  *See* Zimmer Decl. Ex. B (Oracle's 6/3/11 Disclosures), Ex. C (Oracle's 8/10/11
17 Disclosures).  Both supplemental responses referenced Oracle's damages expert's reports—
18 which, as noted above, omitted any discussion of literal copying damages.  *See* Zimmer Decl.
19 Exs. B, C.
20   Oracle's failure to disclose any evidence supporting this theory continued throughout the
21 discovery period.  On January 6, 2011, Oracle answered Google's first set of interrogatories,
22 including Google's Interrogatory No. 1, which asked for a detailed statement of "Oracle's factual
23 bases for each allegation of damage or harm that Oracle claims to have suffered as a result of any
24 act or omission of Google."  Zimmer Decl. Ex. D (Oracle's 1/6/11 'Rog Responses) at 1:7-8.
25 With regard to its "claim for recovery of Google's profits attributable to the infringement," Oracle
26 disclosed various facts about Google's revenues and business model, but stated no facts tying
27 those revenues to rangeCheck or the eight decompiled files.  *Id.* at 3:5-4:8.  Oracle also noted that
28 it would provide further information about its claimed damages, including about "disgorgement

of Google's profits from the infringement," when it served its damages expert's report. *Id.* at 5:24-6:4. Oracle twice supplemented this response, but neither supplemental response disclosed any facts related to the rangeCheck method or the decompiled files. *See* Zimmer Decl. Ex. E (Oracle's 4/25/11 Supp. 'Rog Responses) at 5:11-6:16; Zimmer Decl. Ex F (Oracle's 7/29/11 Supp. 'Rog Responses) at 6:1-18.

In short, Oracle has never disclosed any intent to rely on testimony from any fact witness to establish a nexus between Google's infringement and its Android-related revenues. Instead, Oracle has always taken the position that it would rely on expert testimony to connect the dots between any alleged infringement and Google's revenues, but, as already noted several times, Dr. Cockburn never connected those dots and eventually the Court ruled he was forbidden from trying. Dr. Cockburn only ever opined that Google's Android-related revenues are causally linked to Google's use of the structure, sequence, and organization of 37 API packages in the J2SE platform, material Google was not found liable for infringing. Third Cockburn Report (Feb. 9, 2012) at 227-37, ¶¶ 624-649.

None of this is surprising, because Oracle came up with its current disgorgement theory only days ago, when the jury failed to return a liability verdict on the SSO. While the jury was deliberating on its copyright claims, Oracle conceded it had no remedy for any of its literal copying claims besides statutory damages. RT 2775:25-2776:1 (Mr. Boies: "[T]hat, I believe, would only be statutory damages on [Verdict Form Question] 3"). It was only on this Monday, after the jury delivered its partial verdict on copyright issues, that Oracle announced it might seek disgorgement of Google's profits based on its literal copying claims.

Oracle is long since out of time. Oracle repeatedly failed to disclose a factual basis for its disgorgement remedy on the copied files, and has never disclosed any witness on that subject. It is unclear what evidence Oracle possibly could offer of a causal link, but it would be deeply unfair to allow Oracle to spring that surprise on Google now, at the very end of trial.

### III.   CONCLUSION

For all the foregoing reasons, this Court should not conduct a trial on Oracle's entitlement to disgorgement of profits for Google's infringement of the nine-line rangeCheck method and the

1  eight test files.  The Court should grant summary judgment for Google on that issue.

3  Dated:  May 12, 2012                              KEKER & VAN NEST LLP

5                                                                    By:   */s/ Robert A. Van Nest*
                                                                           ROBERT A. VAN NEST

6                                                                          Attorneys for Defendant
                                                                           GOOGLE INC.