# Exhibit D

MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
755 Page Mill Road
Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street
Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900
Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway
Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>                Plaintiff,<br><br>        v.<br><br>GOOGLE INC.<br><br>                Defendant. | Case No. CV 10-03561 WHA<br><br>**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT GOOGLE INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF ORACLE AMERICA, INC. (NOS. 1-10)**<br><br>Dept.:  Courtroom 9, 19th Floor<br>Judge:  Honorable William H. Alsup |

1    PROPOUNDING PARTY:    Defendant GOOGLE INC.

2    RESPONDING PARTY:    Plaintiff ORACLE AMERICA, INC.

3    SET NO.:    One (Nos. 1-10)

4    Pursuant to Rule 33 Federal Rules of Civil Procedure, Plaintiff Oracle America, Inc.

5    ("Oracle") hereby responds to Defendant Google Inc.'s ("Google") First Set of Interrogatories.

6    **INTERROGATORY NO. 1:**

7    State in detail Oracle's factual bases for each allegation of damage or harm that Oracle

8    claims to have suffered as a result of any act or omission of Google.

9    **RESPONSE TO INTERROGATORY NO. 1:**

10    As Oracle's damages and harm contentions are subject to ongoing discovery and expert

11    analysis, Oracle objects to this interrogatory as premature.  Oracle has not yet completed its

12    investigation of the documents and facts relevant to the claims and defenses asserted in this

13    action, and has not received relevant documents and information from Google or third parties.

14    Accordingly, Oracle's responses are based on the information reasonably available at this time

15    and Oracle will supplement this response as appropriate under the Federal Rules of Civil

16    Procedure.  Subject to these objections, Oracle responds as follows:

17    Oracle is entitled to all legal, statutory, and equitable remedies available.  This potentially

18    includes, for example, damages in the form of lost profits Oracle would have made without the

19    infringement, the value of or a reasonable royalty for a license for the rights infringed, and

20    disgorgement of profits made by Google that are attributable to the infringement.  The relevant

21    factual inquiries are with respect to past and future damages on a worldwide basis.  In addition,

22    because Google's infringement has been willful and intentional, Oracle is entitled to recover

23    treble damages, pursuant to 35 U.S.C. § 284.  Oracle is also entitled to recover the costs of suit,

24    prejudgment interest, and attorney's fees under 35 U.S.C. § 285.  Oracle also seeks injunctive

25    relief.

26    The factual basis for recovery of the value of the infringed intellectual property includes

27    evidence relating to the reasonable royalty amount a willing buyer would have been reasonably

28

1  required to pay a willing seller in a hypothetical negotiation for a license to the infringed property

2  at the time of the infringement.  These facts include, for example:

3    •  the licensing history for Java and other patents and software, viewed in the context of

4       conditions necessary to protect Oracle's and Sun's business model and marketing

5       program for Java, including the importance of preventing fragmentation of Java;

6    •  the amount Oracle and/or Sun invested to obtain, develop and improve the intellectual

7       property at issue as well as Java more generally;

8    •  the value to Oracle and/or Sun of protecting Java and related or ancillary products and

9       services from fragmentation;

10   •  amounts Google has recouped and expected to earn as a consequence of using the

11      infringed intellectual property in Android, including Google's use of and plans to use

12      Android (and the infringed intellectual property) to promote sales and licensing of

13      other Google products, such as search and advertising, and reap revenue from third-

14      party development and other sources;

15   •  licenses obtained by Google for other intellectual property;

16   •  the availability, viability and cost of reasonable non-infringing alternatives;

17   •  the relationship between Oracle and Google in the provision of platform software for

18      mobile and other devices;

19   •  the substantial value (both absolutely and as a portion or component of Android) and

20      remaining economic life of the intellectual property at issue;

21   •  the short and longer term business strategies of Oracle and Google, including

22      strategies for realizing economic return including licenses; and

23   •  actual and expected demand for mobile and other devices using Android, and the

24      actual and expected popularity of those devices.[1]

25

26

27  [1] *See generally Mobile Entertainment*, "Mobile Entertainment's Guide to Android," May 2010 (available at
    http://www.androidtapp.com/android-growth-statistics-projections/) (presenting projections and assumptions on sales
    and penetration of Android devices).

28

1   Some of the evidence of these facts, as well as evidence of other relevant factors about which

2   Oracle does not yet know, is uniquely within Google's and others' possession.  Google has made

3   public statements regarding some of these facts, including for example the success of distribution

4   of Android, Google's expectation of revenue therefrom, and the profitability thereof.[2]

5         The factual basis for a claim for recovery of Google's profits attributable to the

6   infringement also includes, for example: (1) Google's business model for realization of revenue

7   from Android, including, at a minimum, revenue and gross profits from the sale or licensing of

8   Android-compatible applications,[3] developer access to Google resources or accounts,[4] and

9   Google mobile search, location services, advertising, and other services[5] (in addition to other

10  Android-related revenue and profit streams obtained by third-party application developers, device

11  manufacturers and others); (2) Google's strategic goal of ensuring that it is not dependent on third

12  _____

[2] For example:

- Google CEO Eric Schmidt was recently reported to note that "Google is positioning itself to earn $10 billion or more per year in the mobile device business, thanks to its Android operating system," *see  Wall Street Journal*, July 28, 2010 (available at http://blogs.wsj.com/digits/2010/07/28/eric-schmidt-on-google%E2%80%99s-next-tricks/);

- Google's Andy Rubin recently stated that activation of Android devices has reached 300,000 per day, *see Wall Street Journal*, December 9, 2010 (available at http://blogs.wsj.com/digits/2010/12/09/google-more-than-300000-android-phones-activated-each-day/);

- It was reported in December 2010 that "Google executives said the company was on track to generate $1 billion annually in mobile-related revenue," *see Wall Street Journal*, "Google to Release new 'Nexus' Phone," December 7, 2010 (available at http://online.wsj.com/article/SB10001424052748704156304576003454213544140.html);

- Google's CEO Eric Schmidt has been reported as stating that "Android-based phones already generate enough new advertising revenue to cover the cost of the software's development"; *Newsweek*, "Android Invasion," October 3, 2010 , at 3 (available at http://www.newsweek.com/2010/10/03/how-android-is-transforming-mobile-computing.html)

- Mr. Schmidt has also been reported as stating: "Trust me that revenue is large enough to pay for all of the Android activities and a whole bunch more."  *International Business Times*,, "Does Google Have an Android Revenue-Model?," August 10, 2010 (available at http://www.fool.com/investing/general/2010/08/10/does-google-have-an-android-revenue-model.aspx).

[3] *See, e.g.*, *Mobile Entertainment*, "Mobile Entertainment's Guide to Android," May 2010 (available at http://www.androidtapp.com/android-growth-statistics-projections/) (presenting projections and assumptions on growth and average pricing of, and revenue from, Android applications).

[4] *See, e.g.*, Pocketnow.com, *"How Does Google Make Money with Android?,"* October 3, 2010 (available at http://pocketnow.com/android-apps/how-does-google-make-money-with-android).

[5] *See, e.g., Wall Street Journal*, "Google Executive Says Local Advertising Is Top Focus," December 7, 2010 (available at http://blogs.wsj.com/digits/2010/12/07/google-executive-says-local-advertising-is-top-focus/) (statements regarding success and growth of Google's mobile advertising business).

party (particularly competitor) platforms for success in the mobile environment, including losses or reductions in revenue Google did and does not incur because it was able to avoid certain challenges to its core businesses;[6] and (3) the costs Google avoided as a consequence of the infringement, including costs of developing or acquiring non-infringing alternatives (to the extent they existed or exist), either within or outside the Java context, that would have enabled Google to achieve its revenue and strategic objectives.  Some of the evidence of these facts, as well as evidence of other relevant factors about which Oracle does not yet know, is uniquely within Google's possession.

In addition to the above, the factual basis for a claim for recovery of Oracle's lost profits (both with respect to diverted or lost revenues and profits and loss of ancillary, convoyed or other opportunities) includes, for example: (1) Oracle's business model for Java, which is premised in significant part on preventing or minimizing "forks" in Java and developing and maintaining a wide base of use by both programmers and end users; (2) loss of Java licensing opportunities, price or royalty erosion, reduction in market opportunities in markets for Oracle's Java-related products, and other losses as a direct or indirect consequence of demand for and Google's distribution of Android; (3) additional costs Oracle has incurred or will incur to undo the damage caused by the infringement; and (4) harm to Oracle's reputation and goodwill, including any loss in value to the reputation and brand value of Java.  Google itself recognizes the value and importance of avoiding fragmentation of software platforms, including Android.[7]  Oracle's Java

---

[6] For example, as Google reported in a recent public filing, "More individuals are using devices other than personal computers to access the internet. If users of these devices do not widely adopt versions of our web search technology, products, or operating systems developed for these devices, our business could be adversely affected."  Google Form 10Q for the period ended September 30, 2010, p. 46 (available at http://investor.google.com/documents/20100930_google_10Q.html).

[7] *See, e.g.*, Ars Tecnica, "Google: carriers should give Android users freedom to unlock bootloader," December 2010 (available at http://arstechnica.com/gadgets/news/2010/12/google-carriers-should-give-android-users-freedom-to-unlock-bootloader.ars) ("Google has very effectively used its exclusive control over the Android Market and Google-branded applications as a means of forcing most of the carriers and handset makers to refrain from fragmenting the platform. . . ."); *Newsweek*, "Android Invasion," October 3, 2010, at 4 (available at http://www.newsweek.com/2010/10/03/how-android-is-transforming-mobile-computing.html) ("Such fragmentation has been the Achilles' heel of every open-source project.  To counter it, Rubin and his team have created a compatibility test suite, a list of things a phone must have in order to carry the Android brand and to run applications like Google Maps.").

1    technology has generated significant revenue for Sun and Oracle, much of it related to high-

2    margin licensing, application sales, and other revenue opportunities in the mobile environment

3    and elsewhere that have been and continue to be diminished by Google's infringement of

4    Oracle's Java patents and copyrights.

5            In addition to many of the items described above, the factual basis for Oracle's claim of

6    irreparable harm includes, for example:

7        •   Oracle practices the copyrights and patents in suit in its own Java-related products and

8            authorizes others to practice them through its Java licensing program.

9        •   Google has violated Oracle's exclusive rights to practice and to authorize others to

10           practice the copyrights and patents.

11       •   Google's infringement depresses the market for Oracle's Java-related products and

12           causes Oracle customers to question the value of their Java licenses, damaging the

13           goodwill associated with Oracle's Java products and brand.

14       •   Google's infringement has caused fragmentation, including through the fact that

15           Android runs an unauthorized version of various Java libraries (Apache Harmony),

16           thereby causing confusion among software developers.  Particularly in light of

17           Android's popularity, Oracle is irreparably harmed each time a programmer learns and

18           practices Android over Java.

19       •   Google's infringement impedes the growth of a Java applications market that would

20           fuel demand for authorized Java and Java-related products, causing further loss of

21           market share.

22           The foregoing answer supplements Oracle's initial disclosures pursuant to Fed. R. Civ.

23   Proc. 26(a)(1).  When available, additional documents and information will be provided in

24   conformity with Rule 26(a)(2) and/or any relevant Orders entered by the Court.  In this regard,

25   and in light of the date specified by the Court for disclosure of affirmative expert reports on

26   damages, Oracle notes that because significant evidence relating to Oracle's damages claims—

27   including, for example, disgorgement of Google's profits from the infringement, Google's

28   expectations as to the value of the infringed intellectual property, and the appropriate amount of

ORACLE AMERICA'S RESPONSES AND OBJECTIONS TO GOOGLE'S FIRST SET OF INTERROGATORIES
CASE NO. CV 10-03561 WHA                                                                    5
pa-1435675

1   damages corresponding to Google's willful infringement—is in Google's possession, timely

2   production of information and documents relating to damages by Google will be necessary in

3   order for Oracle's experts to be able to provide detailed quantifications of Oracle's damages in

4   their initial reports.

5   **INTERROGATORY NO. 2:**

6         State in detail Oracle's factual bases for its claim of direct copyright infringement,

7   specifically including a comparison of each element of Java software, including without

8   limitation any class libraries, API packages, method names, class names, definitions,

9   organizational elements, parameters, structural elements, and documentation, to the

10  corresponding Android element, as Oracle did in Exhibit J to its Amended Complaint.

11  **RESPONSE TO INTERROGATORY NO. 2:**

12        Oracle owns many copyrights in the code, documentation, specifications, libraries, and

13  other materials that comprise the Java platform.  As new versions of the Java platform were

14  developed and the materials revised, the copyrights were registered with the United States

15  Copyright Office, including TX0004416302; TX0004326014; TX0004616088; TX0005271787;

16  TX0005316757; TX0005316758; TX0005359984; TX0005359985; TX0005359986;

17  TX0005359987; TX0005392885; TX0006066538; TX0006143306; and TX0006196514.  Google

18  has infringed Oracle's copyrights.

19        Android Application Programmer Interface (API) package specifications (whether or not

20  from the Apache Harmony project) that correspond to Oracle's Java API specifications are

21  unauthorized derivative work, and Google's unauthorized copying and distribution of them is

22  copyright infringement.  A comparison of Android's API package specifications (available at

23  http://developer.android.com/reference/packages.html) with Oracle's copyrighted Java API

24  package specifications (for example, available at

25  http://download.oracle.com/javase/1.5.0/docs/api/,

26  http://download.oracle.com/javase/1.4.2/docs/api, and

27

28

1   information regarding the nature of the relationship with these and any of the other inventors of

2   the patents-in-suit.

3          Discovery is ongoing, and Oracle has not yet completed its investigation of the documents

4   and facts relevant to the claims and defenses asserted in this action.  Accordingly, Oracle's

5   responses are based on the information reasonably available at this time and Oracle will

6   supplement this response as appropriate under the Federal Rules of Civil Procedure.

7

8   Dated: January 6, 2011                    MICHAEL A. JACOBS
                                              MARC DAVID PETERS
9                                             RICHARD S. BALLINGER
                                              MORRISON & FOERSTER LLP
10

11                                            By: /s/  Richard S. Ballinger

12                                                *Attorneys for Plaintiff*
                                                  ORACLE AMERICA, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28