| | |
|---|---|
| KEKER & VAN NEST LLP<br>ROBERT A. VAN NEST - # 84065<br>rvannest@kvn.com<br>CHRISTA M. ANDERSON - # 184325<br>canderson@kvn.com<br>MICHAEL S. KWUN - # 198945<br>mkwun@kvn.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Tel: 415.391.5400<br>Fax: 415.397.7188 | KING & SPALDING LLP<br>DONALD F. ZIMMER, JR. - #112279<br>fzimmer@kslaw.com<br>CHERYL A. SABNIS - #224323<br>csabnis@kslaw.com<br>101 Second Street, Suite 2300<br>San Francisco, CA  94105<br>Tel:  415.318.1200<br>Fax: 415.318.1300 |
| KING & SPALDING  LLP<br>SCOTT T. WEINGAERTNER<br>(*Pro Hac Vice*)<br>sweingaertner@kslaw.com<br>ROBERT F. PERRY<br>rperry@kslaw.com<br>BRUCE W. BABER (Pro Hac Vice)<br>1185 Avenue of the Americas<br>New York, NY 10036<br>Tel: 212.556.2100<br>Fax: 212.556.2222 | IAN C. BALLON - #141819<br>ballon@gtlaw.com<br>HEATHER MEEKER - #172148<br>meekerh@gtlaw.com<br>GREENBERG TRAURIG, LLP<br>1900 University Avenue<br>East Palo Alto, CA  94303<br>Tel: 650.328.8500<br>Fax: 650.328.8508 |

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>GOOGLE INC.,<br><br>  Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**GOOGLE'S MAY 14, 2012 COPYRIGHT LIABILITY TRIAL BRIEF**<br><br>Dept.:     Courtroom 8, 19th Floor<br>Judge:     Hon. William Alsup |

# TABLE OF CONTENTS

**Page**

I.     The structure, sequence and organization of the 37 API packages is not copyrightable ................................................................................................................ 1

II.    The APIs in the 37 packages are unprotectable ideas, and that is true even though alternative APIs could have been designed. ................................................................. 3

III.   The SSO of the 37 API packages is functionally required for compatibility, and thus is not copyrightable. ......................................................................................... 3

IV.   The doctrines of merger and *scenes a faire* bar copyright protection for any arguable expression in the SSO of the 37 API packages. ........................................... 5

V.    The cases cited by Oracle are inapposite and/or unpersuasive. .................................. 7

VI.   The SSO of the 37 API packages is an uncopyrightable idea, system or method of operation, and thus cannot be protected by copyright. ............................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Dental Ass'n v. Delta Dental Ass'n*
   126 F.3d 977 (7th Cir. 1997) .................................................................................................. 7

*Apple Computer, Inc. v. Microsoft Corp.*
   35 F.3d 1435 (9th Cir. 1994) .................................................................................................. 6

*Baker v. Selden*
   101 U.S. 99 (1879) .................................................................................................................. 1

*Baystate Techs. v. Bentley Sys.*
   946 F. Supp. 1079 (D. Mass. 1996) ........................................................................................ 6

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*
   489 U.S. 141 (1989) ............................................................................................................ 1, 2

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*
   982 F.2d 693 (2d Cir. 1992) ................................................................................................... 8

*Educational Testing Serv. v. Simon*
   95 F. Supp. 2d 1081 (C.D. Cal. 1999) .................................................................................... 8

*Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East*
   542 F.2d 1053 (9th Cir. 1976) ............................................................................................ 7, 8

*Engineering Dynamics, Inc. v. Structural Software, Inc.*
   46 F.3d 408 (5th Cir. 1995) .................................................................................................... 8

*Feist Publications, Inc. v. Rural Telephone Service Co.*
   499 U.S. 340 (1991) ............................................................................................................ 1, 9

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*
   446 F. 2d 738 (9th Cir. 1971) ................................................................................................. 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
   387 F.3d 522 (6th Cir. 2004) .................................................................................................. 6

*Lotus Dev. Corp. v. Borland Int'l, Inc.*
   49 F.3d 807 (1st Cir. 1995),
   *aff'd by an equally divided court,* 516 U.S. 233 (1996) ......................................................... 6

*Mitel, Inc. v. Iqtel, Inc.*
   124 F.3d 1366 (10th Cir. 1997) .............................................................................................. 6

*Practice Mgmt. Info. Corp. v. American Medical Ass'n*
   121 F.3d 516 (9th Cir. 1997) .................................................................................................. 7

*Sega Enters. Ltd. v. Accolade, Inc.*
   977 F.2d 1510 (9th Cir. 1992) ........................................................................................ passim

*Sony Computer Entm't., Inc. v. Connectix Corp.*
  203 F.3d 596 (9th Cir. 2000) .................................................................................................. 2

*Swirsky v. Carey*
  376 841, 850 (9th Cir. 2004) .................................................................................................. 6

**Federal Statutes**

17 U.S.C. § 102(b) ............................................................................................................... *passim*

**Constitutional Provisions**

U.S. CONST., art. I, § 8, cl. 8 ...................................................................................................... 1

**Other Authorities**

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 57 (1976), *reprinted in* 1976
  U.S.C.C.A.N. ........................................................................................................................ 9

## I. The structure, sequence and organization of the 37 API packages is not copyrightable.

The Supreme Court has repeatedly rejected the argument that the Constitutional goal of promoting the progress of science (U.S. CONST., art. I, § 8, cl. 8) is achieved through a one-sided grant of rights. Instead, the Court has held that the basic building blocks all authors need to create must remain free for use. Thus, the Supreme Court explained in *Feist Publications, Inc. v. Rural Telephone Service Co.* that there is nothing improper or untoward about allowing others to use unprotected aspects of a copyrighted work:

> It may seem unfair that much of the fruit of the compiler's labor may be used by others without compensation. As Justice Brennan has correctly observed, however, **this is not "some unforeseen byproduct of a statutory scheme." It is, rather, "the essence of copyright," and a constitutional requirement.** The primary objective of copyright is not to reward the labor of authors, but "[t]o promote the Progress of Science and useful Arts." Art. I, § 8, cl. 8. To this end, **copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.** This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship.

499 U.S. 340, 349-50 (1991) (case citations omitted) (emphases added). As the Court further explained, "[t]his result is neither unfair nor unfortunate. It is the means by which copyright advances the progress of science and art." *Id.* at 350.

It is for this reason that the Copyright Act protects the expression of ideas, but not the ideas themselves, nor systems and methods of operation. *See* 17 U.S.C. § 102(b); *Baker v. Selden,* 101 U.S. 99, 102 (1879) ("To give to the author of the book an exclusive property in the art described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public. That is the province of letters-patent, not of copyright."). Indeed, "the efficient operation of the federal patent system depends upon substantially free trade in publicly known, unpatented design and *utilitarian* conceptions." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 156 (1989) (emphasis added). Thus, "[w]here an item in general circulation is unprotected by patent, '[r]eproduction of a functional attribute is *legitimate competitive activity.*'" *Id.* at 164 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 863 (1982) (White, J., concurring in result)) (emphasis added).

In *Bonito Boats,* the Supreme Court held that a Florida statute that offered "patent-like

1

protection for ideas deemed unprotected under the present federal scheme" was preempted by the Supremacy Clause. *Id.* at 167-68. The same principle—that protection for functional features is left to patent law—applies to copyright law, because the Copyright Act does not protect functional aspects of an original work of authorship. *See* 17 U.S.C. § 102(b); *see also Sony Computer Entm't., Inc. v. Connectix Corp.,* 203 F.3d 596, 599 (9th Cir. 2000) ("Copyrighted software ordinarily contains both copyrighted and *unprotected or functional elements.*") (emphasis added) (citing *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1520 (9th Cir. 1992), and 17 U.S.C. § 102(b)). The functional aspects of a computer program are "aspects that were expressly denied copyright protection by Congress." *Sega,* 977 F.2d at 1520 (citing 17 U.S.C. § 102(b)).

And the structure, sequence and organization ("SSO") of the 37 API packages is undeniably functional. Java language developers use the fully-qualified names of API elements—the names of the packages, classes and methods (or fields, constructors, interfaces or initializers)—to identify where in the 37 API packages those elements can be found, in a manner analogous to how people use street addresses to identify where buildings are located. RT 772:17-24, 773:14-16 (Bloch). The SSO is the command structure that Java language developers use when they write Java language programs. RT 289:8-9, 290:8-12 (Ellison); RT 364:3-10 (Kurian); RT 1959:12-1960:18 (Schwartz). The SSO strictly follows the rules of the Java programming language. RT 2187:18-2188:4, 2190:16-23 (Astrachan); RT 769:23-770:9, 774:4-775:5 (Bloch). The very purpose of the J2SE APIs is to provide access to functionality that the Java programming language would otherwise lack—without the J2SE APIs, the Java programming language is, in practical effect, useless. RT 683:14-684:4, 707:18-21 (Reinhold); RT 782:9-14 (Bloch); RT 1477:2-13 (Schmidt); RT 1960:4-8 (Schwartz). Oracle and its witnesses do not dispute any of this.

Moreover, the functionality of the SSO of the APIs is fundamental. To invoke or call an API, a Java language developer *must* write source code that conforms to the method header of the API. RT 2154:2-8 (Astrachan). In contrast, the developer is indifferent to the implementing code—from the developer's perspective, the implementing code is in a "black box," the contents

2

of which are irrelevant, so long as the method accepts inputs and provides an output consistent with the API's specification. RT 2160:18-2161:7 (Astrachan) (adopting the Court's explanation). That is, the specification identifies the functional requirements an implementation must meet to be compatible with the API described by the specification. *Sega,* 977 F.2d at 1522; *see also* RT 364:3-10 (Kurian) (explaining that the functionality of the class libraries is "abstracted" through the APIs).

Oracle's SSO claim is an attempt to gain patent-like protection under the guise of a copyright claim. Both the language of 17 U.S.C. § 102(b) and Ninth Circuit precedent preclude such an approach. The Court should therefore hold that the SSO of the 37 API packages is not copyrightable.

**II.   The APIs in the 37 packages are unprotectable ideas, and that is true even though alternative APIs could have been designed.**

In its most recent copyrightability brief, Oracle offered examples of two different ways to design methods for drawing rectangles. In the first example, one draws rectangles by designating a starting point using *x* and *y* coordinates, and then stating a width and a height. *See* Oracle 5/10/12 Br. [Dkt. 1118] at 5:4-14. In Oracle's second example, one draws rectangles by stating a starting point using *x* and *y* coordinates, and then using "turn" and "draw" methods to draw each side of the rectangle. *See id.* at 5:15-26. Oracle's assumption is that because there is more than one way to draw rectangles, each different way must be a different "creative expression."

Oracle's assumption is plainly incorrect. If Oracle were correct, then anyone who read Oracle's brief would forever need to avoid creating an API for drawing rectangles using either of the two approaches Oracle described, lest he or she be sued for copyright infringement by Oracle. The fact that there are many ways to do the same thing does not mean that any given way is protected by copyright. The two approaches Oracle describes for drawing rectangles are, simply put, different ideas, systems or methods of operation—and thus both are uncopyrightable, regardless of the fact that alternative approaches may exist. 17 U.S.C. § 102(b).

**III.   The SSO of the 37 API packages is functionally required for compatibility, and thus is not copyrightable.**

In *Sega,* the Ninth Circuit held that functional requirements for compatibility are not

3

1 copyrightable. 977 F.2d at 1522. Google has explained that the SSO of the 37 API packages is
2 functionally required for compatibility with the APIs in those 37 packages. *See* Google 5/10/12
3 Br. [Dkt. 1116] at 16:12-17:15.

4 But even under the position advanced by Oracle, the Court should conclude that the SSO
5 of the 37 API packages is not copyrightable. Oracle argues that "compatible" means whatever
6 Oracle's business model wants it to mean, and more specifically that an implementation is
7 compatible only if it passes Oracle's TCK. *See* Oracle 5/10/12 Br. [Dkt. 1118] at 18:7-11.
8 According to Oracle, this would require, among other things, implementing *all* of the SSO of *all*
9 of the 166 J2SE 5.0 API packages. Thus, under Oracle's definition, *all* of the SSO of *all* 166
10 J2SE 5.0 API packages is functionally required for compatibility—which includes the SSO of
11 each and every one of those packages.

12 Under *Sega,* this means that the SSO of all 166 J2SE 5.0 API packages is
13 uncopyrightable. 977 F.2d at 1522. Notably, although *Sega* was a fair use case, the Ninth Circuit
14 did not rely on fair use to conclude that functional requirements for compatibility are not
15 copyrightable. Instead, the court relied on section 102(b). Indeed, the ultimate fair use holding
16 *depends* on this statement of law. Accolade had copied and disassembled the code from three
17 copyrighted Sega game cartridges:

> Accolade used a two-step process to render its video games compatible with the Genesis console. First, it "reverse engineered" Sega's video game programs in order to discover the requirements for compatibility with the Genesis console. As part of the reverse engineering process, Accolade transformed the machine-readable object code contained in commercially available copies of Sega's game cartridges into human-readable source code using a process called "disassembly" or "decompilation." Accolade purchased a Genesis console and three Sega game cartridges, wired a decompiler into the console circuitry, and generated printouts of the resulting source code.

*Id.* at 1514-15 (footnote omitted). The question was whether this wholesale copying was justifiable as a fair use. According to the court,

> [A]lthough Accolade's ultimate purpose was the release of Genesis-compatible games for sale, its direct purpose in copying Sega's code, and thus its direct use of the copyrighted material, was simply to study the functional requirements for Genesis compatibility so that it could modify existing games and make them usable with the Genesis console.

*Id.* at 1522. The court further noted that these functional requirements are not protectable:

4
GOOGLE'S MAY 14, 2012 COPYRIGHT LIABILITY TRIAL BRIEF
Case No. 3:10-CV-03561 WHA

665226.01

> Accolade copied Sega's software solely in order to discover the functional requirements for compatibility with the Genesis console—**aspects of Sega's programs that are not protected by copyright.** 17 U.S.C. § 102(b).

*Id.* (emphasis added). The fact that functional requirements for compatibility are not copyrightable was key to the court's conclusion that "Accolade copied Sega's code for *a legitimate, essentially non-exploitative purpose,* and that the commercial aspect of its use can best be described as of minimal significance." *Id.* at 1522-23 (emphasis added).

The Ninth Circuit's direct statement that "functional requirements for compatibility" are not copyrightable—citing 17 U.S.C. § 102(b)—cannot be explained away as a special rule applicable only in the fair use context. First, that is not what *Sega* says. 977 F.2d at 1522 ("functional requirements for compatibility . . . are not protected by copyright") (citing 17 U.S.C. § 102(b)). Second, were "functional requirements for compatibility" unprotected only if they served a fair use, then *Sega* would be circular, because the fact that the Sega Genesis interfaces were not copyrightable was a substantial part of the basis for concluding that Accolade's copying and disassembly of code was a fair use.

The accurate reading of *Sega* is that the Ninth Circuit meant exactly what it said—that section 102(b) requires that functional requirements for compatibility are not copyrightable. And if the SSO of the 166 J2SE API packages is not copyrightable—because it is functionally required for compatibility with J2SE—then it cannot change character and become copyrightable when only part of it is used. That is, whether the issue of compatibility is framed by stating that the SSO of *all—i.e., each and every one* of the—166 J2SE API packages is required for compatibility with J2SE 5.0, or by stating that the SSO of the 37 API packages at issues is required for compatibility with those 37 API packages, the end result is that the SSO of the 37 API packages is not copyrightable under *Sega*.

**IV. The doctrines of merger and *scenes a faire* bar copyright protection for any arguable expression in the SSO of the 37 API packages.**

Even if the Court were to conclude that section 102(b) does not bar copyright protection for the SSO of the 37 API packages, the doctrines of merger and *scenes a faire* preclude copyright protection. "When the 'idea' and its 'expression' are thus inseparable, *copying the*

5
GOOGLE'S MAY 14, 2012 COPYRIGHT LIABILITY TRIAL BRIEF
Case No. 3:10-CV-03561 WHA

665226.01

*'expression' will not be barred,* since protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner free of the conditions and limitations imposed by the patent law." *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F. 2d 738, 742 (9th Cir. 1971) (emphasis added) (citing, among other cases, *Baker v. Selden,* 101 U.S. 99, 103 (1879)). Similarly, under the *scenes a faire* doctrine, creative expression is treated as an idea—and thus not protected—where it is "indispensable and naturally associated with the treatment of a given idea." *Swirsky v. Carey,* 376 841, 850 (9th Cir. 2004). In the Ninth Circuit, the Court must consider these doctrines in light of the constraints on *Google* at the time of the alleged infringement. *Sega,* 977 F.2d at 1524; *see also Lotus Dev. Corp. v. Borland Int'l, Inc.,* 49 F.3d 807, 818 (1st Cir. 1995), *aff'd by an equally divided court,* 516 U.S. 233 (1996); *Baystate Techs. v. Bentley Sys.,* 946 F. Supp. 1079, 1087-90 (D. Mass. 1996). And, in order to be compatible with the APIs in the 37 packages, Google *had* to implement the SSO of those packages.

These doctrines are regularly applied in the software context. *See, e.g., Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1444 (9th Cir. 1994) (icon representing a document can only be expressed in a limited number of ways, and therefore is unprotectable under merger); *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 535-36 (6th Cir. 2004) (in the software context, the *scenes a faire* doctrine applies to "elements of a program dictated by practical realities—e.g., by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computing practices"); *Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d 1366, 1376 (10th Cir. 1997) ("although Mitel's values constitute nonarbitrary original expression, they are unprotectable as scenes a faire because they were dictated by external functionality and compatibility requirements of the computer and telecommunications industries").

The evidence in the record establishes that any arguable expression in the SSO of the 37 API packages is tightly constrained, and the doctrines of merger and *scenes a faire* therefore preclude copyright protection for the SSO. *See* Google's Proposed Findings of Fact and Conclusions of Law [Dkt. 1047], Findings 1-9, 11-36, Conclusions 13-20.

**V. The cases cited by Oracle are inapposite and/or unpersuasive.**

The Seventh Circuit's decision in *American Dental Ass'n v. Delta Dental Ass'n,* 126 F.3d 977 (7th Cir. 1997)—a decision never cited or adopted by the Ninth Circuit—was either only about the copyrightability of a book *describing* a taxonomy, in which case it is irrelevant to the issues before the Court, or it was poorly reasoned and wrongly decided. *See* Google 5/10/12 Br. [Dkt. 1116] at 13:10-15:6. In discussing *American Dental Ass'n,* Oracle cites several cases, none of which are relevant to the issues before the Court.

First, the Ninth Circuit's decision in *Practice Mgmt. Info. Corp. v. American Medical Ass'n,* 121 F.3d 516 (9th Cir. 1997), held that a *book describing* a code system was copyrightable. The work at issue was the AMA's *book,* the *Physician's Current Procedural Terminology* ("*CPT*"). *Id.* at 517. The *CPT* identifies "more than six thousand medical procedures and provides a five-digit code *and brief description* for each." *Id.* (emphasis added). Nothing in the opinion suggests that the *code system,* divorced from the AMA's *book*, was at issue. *See id.* at 518-20. The Ninth Circuit affirmed the AMA's copyright in "the CPT," which the opinion earlier defined as the book itself, and which included the text descriptions. *See id.* at 517, 520.

Moreover, the Ninth Circuit did not address whether the code system in the *CPT,* as opposed to the book itself, was unprotectable because it was required for compatibility with the system adopted by Health Care Financing Administration. There was no need to address this issue because the Ninth Circuit held that the AMA's copyright was unenforceable due to copyright misuse. *See id.* at 518-20. Had the issue been raised, however, the panel would have been bound by the Ninth Circuit's decision in *Sega,* and *Sega* would have required a holding that the code system itself was not protected by copyright. 977 F.2d at 1522; 17 U.S.C. § 102(b).

Second, in *Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East,* 542 F.2d 1053 (9th Cir. 1976), the Ninth Circuit held that a book that included both blank forms and "several pages of instructions" was copyrightable. *Id.* at 1060-61. The defendant had distributed a book that was "almost identical" to the plaintiff's book. *Id.* at 1061. The copyrightability of the blank forms alone was not at issue. Oracle offers no explanation why this decision is relevant to the present case. *See* Oracle 5/10/12 Br. [Dkt. 1118] at 14:19-24.

7
GOOGLE'S MAY 14, 2012 COPYRIGHT LIABILITY TRIAL BRIEF
Case No. 3:10-CV-03561 WHA

665226.01

Third, *Educational Testing Serv. v. Simon,* 95 F. Supp. 2d 1081 (C.D. Cal. 1999), which Oracle suggests is similar to *Edwin K. Williams,* is similarly irrelevant.  The *ETS* court held that a coaching service that copied questions used in a standardized test infringed the testing service's copyrights.  *Id.* at 1087-90.  Among other distinguishing facts, there was no claim that the material the defendant used was an idea, system or method of operation.  Nor was there any claim that the material used was functionally required for compatibility.

### VI.     The SSO of the 37 API packages is an uncopyrightable idea, system or method of operation, and thus cannot be protected by copyright.

The facts and law cited above and in Google's prior copyrightability filings reflect well the reasons why courts have consistently and repeatedly cautioned that software—while potentially copyrightable—is a technical form of expression for which only limited copyright protection is available.  As the Second Circuit explained in its groundbreaking decision concerning alleged non-literal infringement of computer software, "[t]he essentially utilitarian nature of a computer program further complicates the task of distilling its idea from its expression. . . .  Thus, compared to aesthetic works, computer programs hover even more closely to the elusive boundary line described in § 102(b)."  *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 704 (2d Cir. 1992).  The Ninth Circuit concurred:  "Under a test that breaks down a computer program into its component subroutines and sub-subroutines and then identifies the idea or core functional element of each, such as the test recently adopted by the Second Circuit in *[Computer Assocs. Int'l],* many aspects of the program are not protected by copyright.  In our view, in light of the essentially utilitarian nature of computer programs, the Second Circuit's approach is an appropriate one."  *Sega,* 977 F.2d at 1524 (citation omitted); *see also Engineering Dynamics, Inc. v. Structural Software, Inc.,* 46 F.3d 408, 409 (5th Cir. 1995), *clarifying* 26 F.3d 1335 (5th Cir. 1994) ("copyright only protects originality of user interface to the extent that the selection of variable inputs form the universe of potential inputs reflects non-functional judgments").  Software is unlike novels, plays, poems, paintings, movies or songs, and analogies to those more traditional types of creative works are not appropriate when dealing with software.  *See* RT 3368:17 (Jacobs) ("Obviously, software is not a symphony.  Software is not a poem.").

Moreover, even cases considering the extent to which executable computer programs should be protected by copyright are an ill fit with respect to the API packages at issue. A typical executable computer program has a "sequence" for its instructions—i.e., the author of the program writes implementing source code with instructions that are executed in a specific order. But there is no way to "execute" the J2SE API packages in a "sequence" chosen by the "author" of the APIs, because that is not how they are used. Sun did not choose a sequence in which the multitude of methods that are part of the 37 API packages should be ordered when they are executed.[1] Instead, Java language developers invoke the elements of the 37 API packages in whatever order is needed for their computer programs. A developer may invoke one, several or none of them in his or her program.

There are many alternative bases for concluding that the SSO of the 37 API packages is not copyrightable, the most direct of which is the idea/expression dichotomy. The House Report that accompanied section 102(b) of the Copyright Act explained:

> Section 102(b) is intended, among other things, to make clear that the expression adopted by the programmer is the copyrightable element in a computer program, and that the actual processes or methods embodied in the program are not within the scope of the copyright law.

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 57 (1976), *reprinted in* 1976 U.S.C.C.A.N.N. 5659, 5670. The code implementing the 37 API packages is, like other computer code, on the creative expression side of the idea/expression dichotomy, and thus is protected by copyright unless such protection is precluded by other limiting doctrines, such as merger and *scenes a faire*. The SSO of the 37 API packages, however, is on the other side of the divide, and is an unprotectable idea, system or method of operation.

*Feist* teaches that the promotion of the progress of science is a two-sided coin and that the unprotectable side of the divide is just as important as the protected side. A ruling that the SSO of the 37 API packages is not protectable is neither unfair nor unfortunate. To the contrary, it is

---

[1] The authors of the *implementations* of the J2SE APIs chose sequences for instructions in the *implementing code*. That is, within a given method body, the code is implemented in a sequence specified by the author of that code. But, of course, aside from the nine-line rangeCheck method, Google is not accused of having copied any *implementing code* from Oracle's implementation of the 37 J2SE API packages.

the only possible way to promote the Constitutional goal of the Copyright Act.

Dated: May 14, 2012                  KEKER & VAN NEST LLP

By:    /s/ Robert A. Van Nest
       ROBERT A. VAN NEST

Attorneys for Defendant
GOOGLE INC.