KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

KING & SPALDING LLP
SCOTT T. WEINGAERTNER
(*Pro Hac Vice*)
sweingaertner@kslaw.com
ROBERT F. PERRY
rperry@kslaw.com
BRUCE W. BABER (Pro Hac Vice)
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222

KING & SPALDING LLP
DONALD F. ZIMMER, JR. - #112279
fzimmer@kslaw.com
CHERYL A. SABNIS - #224323
csabnis@kslaw.com
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: 415.318.1200
Fax: 415.318.1300

IAN C. BALLON - #141819
ballon@gtlaw.com
HEATHER MEEKER - #172148
meekerh@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue
East Palo Alto, CA 94303
Tel: 650.328.8500
Fax: 650.328.8508

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE INC.,<br><br>　　　　Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**MOTION IN LIMINE TO EXCLUDE EVIDENCE OF GOOGLE'S ANDROID-RELATED REVENUES UNTIL ORACLE PROVES A CAUSAL NEXUS WITH THE INFRINGINGEMENT**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Hon. William Alsup |

## I. INTRODUCTION

In order carry its initial burden with respect to its claim for Google's profits under 17 U.S.C. § 504(b), Oracle "must first show a causal nexus between the infringement and the gross revenue" it is seeking to recover. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004). The only acts of copyright infringement Oracle has proved are that Google (1) included a nine line method called rangeCheck in two files called TimSort.java and ComparableTimSort.java; and (2) used eight decompiled test files that never appeared on any Android phone. Thus in order for Google's Android-related revenues to be relevant to Oracle's damages for these violations, Oracle must show a "causal nexus" between these specific acts of infringement and some identifiable amount of Google revenues.

Oracle has repeatedly announced its intention to try to sidestep this obligation. Instead of opening its damages case with evidence of a causal nexus between Google's infringement and Google's Android-related revenues, Oracle's witness disclosures reveal that it intends to begin its case by offering data on Google's gross Android-related revenues, which do not have any relationship to the minuscule components of Android found to have infringed. Oracle's first three witnesses in the damages phase are Larry Page, Eric Schmidt, and Andy Rubin, senior Google executives who are not Android engineers and who may have knowledge about Google's gross Android-related revenues but certainly have none regarding the extent to which Google's revenues were generated by the infringing code files. Oracle's goal is clear: to bias the jury by throwing out large numbers untethered to the limited claims of infringement. This over-reaching strategy is particularly prejudicial to Google in this instance because it would result in the public exposure of Google's aggregate Android financial data, which Google does not publicly release. Because Oracle cannot possibly prove a causal nexus between Google's Android-related revenue and its use of 9 lines of code or eight test files that never even appeared on a handset, the Court should exclude evidence of Google's gross Android-related revenue and require Oracle to prove some amount of revenue that is causally tied to the infringement, as the Copyright Act requires.

II.     ARGUMENT

    A.     **Oracle must prove a causal nexus between the infringing works—TimSort, ComparableTimSort and the eight test files—and Google's revenue.**

In order for Google's Android-related revenue to be relevant, Oracle must prove a causal nexus between those revenues and the infringement.  *See* 17 U.S.C. § 504(b).  Contrary to Oracle's repeated and completely unsupported assertions in its Opposition to Google's Motion for Summary Judgment, the "infringing work" is not "Android."  *See, e.g.*, Dkt. 1135 at 4, 6.  Based on arguments Oracle made to the Court in the copyright charging conference—arguments with which Google disagreed—the jury was asked whether TimSort.java and ComparableTimSort.java each infringed Oracle's Array.java file, and whether the eight test files each individually infringed separate Oracle files, not whether Android as a whole infringed Oracle's copyright in the entire J2SE platform.  RT 2414:20-2418:13 (Charging Conference); Final Charge to the Jury (Phase One) [Dkt. 1018] ¶ 29, at 15; Special Verdict Form [Dkt. 1018] at Question 3(a).  It is no surprise that Oracle asked for this instruction.  Had the jury been instructed to compare the works as a whole rather than being told to consider infringement on a file-by-file basis, the only reasonable conclusion the jury could have reached is that the copying of the nine-line rangeCheck method and the eight test files that never even appeared on an Android phone was *de minimis*.

Oracle cannot now switch courses, allege that "Android" has infringed its copyrights, and argue that offering gross Android-related revenues is enough to satisfy its burden under § 504(b).  Instead, Oracle must prove that Google made an identifiable amount of revenue *from the infringement*—the two Android files containing the rangeCheck method and the eight test files.  The Ninth Circuit has laid out this standard repeatedly, explaining that an infringer may not just point to a gross revenue number that is not sufficiently closely linked to the infringing item.  Most recently, in *Polar Bear,* 384 F.3d at 710-12, the Ninth Circuit explained that, "[a]lthough the statute references only the broad term 'gross revenue,' to conclude that a copyright plaintiff need only provide the company's overall gross revenue, without regard to the infringement, would make little practical or legal sense."  *Id.* at 711.  Instead, even where an infringer "derived some quantum of profits from the infringement because its infringement was part of" a larger part of its

business, "it nevertheless remains the duty of the copyright plaintiff to establish *a causal connection between the infringement and the gross revenue reasonably associated with the infringement*." *Id.* at 715 (citing *On Davis v. The Gap, Inc.,* 246 F.3d 152, 160 (2d Cir. 2001)) (emphasis added). "Only then would [the infringer] bear the responsibility for apportioning profits." *Id.* This is the law in other circuits too. As Judge Posner wrote nearly thirty years ago,

> It was not enough to show [defendant's] gross revenues from the sale of everything he sold, which is all, really, that [plaintiff] did. If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits.

*Taylor v. Meirick,* 712 F.2d 1112, 1122 (7th Cir. 1983). In other words, Oracle is seeking to shift the burden too soon. Before Google has to make any showing, Oracle first must prove up not Google's gross revenues generally, or even Google's gross revenues from the Android platform as a whole, but an identifiable amount of gross revenues that is causally linked to the infringement.

*Polar Bear* only repeated what the Ninth Circuit had previously made clear. In *Mackie v. Rieser,* 296 F.3d 909 (9th Cir. 2002), the Ninth Circuit held that, to the extent it seeks disgorgement of a defendant's *indirect* profits, "a copyright holder must establish the existence of a causal link" between the infringement and any such indirect profits. *Id.* at 914. In this context, indirect profits are those resulting from "revenue that has a more attenuated nexus to the infringement" than revenue from "selling an infringing product." *Id.* Thus, in order to obtain a disgorgement of Google's profits from either Android-related advertising revenue or Android-related application revenue—both of which are indirect profits under *Mackie*—Oracle must prove that there is a causal link between the infringement of Arrays.java or the eight test files and Google's revenues. This requires a "threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits." *Id.* at 915. "Such an approach dovetails with common sense—there must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment." *Id.*

In *Mackie,* the copyrighted work at issue was a sidewalk art installation called "The Dance Steps." *Id.* at 912. The defendant Rieser had incorporated a photograph of the work into a

collage illustrating Seattle culture, which was then incorporated into a promotional brochure for the "Pops" series of the Seattle Symphony Orchestra, which was also a defendant in the case. *Id.* Among other remedies, Mackie sought disgorgement of any of the Symphony's profits allegedly attributable to the promotional brochure. *Id.* at 912-13.

The Ninth Circuit held that Mackie had failed to carry his initial burden to establish gross revenues casually connected to the Symphony's infringement:

> Intuitively, we can surmise virtually endless permutations to account for an individual's decision to subscribe to the Pops series, reasons that have nothing to do with the artwork in question. For example, was it because of the Symphony's reputation, or the conductor, or a specific musician, or the dates of the concerts, or the new symphony hall, or the program, or the featured composers, or community boosterism, or simply a love of music, or . . . ? In the absence of concrete evidence, Mackie's theory is no less speculative than our effort in this paragraph to enumerate even a relatively short list of the myriad factors that could influence an individual's purchasing decisions.

*Id.* at 916. Even had Mackie been able to offer evidence tending to show that a percentage of the Symphony's sales were tied to the infringing brochure, "such a rudimentary analysis cannot determine how many of those individuals subscribed **because of Rieser's work**." *Id.* at 916 (emphasis in original). Because the collage that incorporated a photograph of Mackie's artwork was "but one page in a multi-page brochure that advertised a series of concerts that were unrelated to the artwork itself," the Ninth Circuit flatly rejected Mackie's theory as "[r]ank speculation" that was legally insufficient to support a claim for indirect profits. *Id.*

Oracle had no response to *Mackie* in its Opposition to Google's Motion for Summary Judgment; it did not even cite, much less discuss or distinguish, that controlling case. Instead, it cited other cases that do not help its cause. Oracle's reliance on *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985), is particularly misplaced. *Frank Music* was the first Ninth Circuit case to address the question whether a copyright plaintiff could recover indirect profits—as Oracle is trying to do here with respect to Google's downstream advertising and applications revenue. The court ruled that indirect profits were "recoverable if ascertainable." *Id.* at 517. By contrast, indirect profits that "are only remotely or speculatively attributable to the infringement" are not recoverable. *Id.* (citing 3 Nimmer, *Nimmer on Copyright,* § 14.03[A], at 14-15 (1985)). In other words, in *Frank Music* as in *Mackie* the Ninth

Circuit required a causal link between the copyright infringement and any profits sought.  The facts in *Frank Music* were far different from those of this case and *Mackie* for two primary reasons.  First, *Frank Music* involved a musical revue called *Hallelujah Hollywood,* 6-8% of which consisted of infringing materials.  772 F.2d 505, 510 (9th Cir. 1985).  Here, the rangeCheck function consists of 0.00006%, a **ten thousand times smaller** proportion, and the test files never even made it onto any Android phones.  Second, in *Frank Music* the hotel and casino hosting the revue had publicly admitted that "[t]he hotel and gaming operations of the MGM Grand-Las Vegas continue to be materially enhanced by the popularity of the hotel's entertainment[, including] 'Hallelujah Hollywood', the spectacularly successful production revue. . . ."  *Id.* at 517 (alterations in original).[1]  Google has never made any such statement as to either rangeCheck or the eight test files.  Indeed such a statement would be preposterous.

      Oracle also relies on several cases involving profit disgorgement based on infringing advertisements.  *See Polar Bear; Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789 (8th Cir. 2003).  However, those cases also support Google's argument that the plaintiff has the burden to establish a causal nexus between infringement and profits.  *Polar Bear*, 384 F.3d at 711 ("[T]he copyright claimant must first show a causal nexus between the infringement and the gross revenue."); *Andreas*, 336 F.3d at 796 ("The plaintiff has the burden to demonstrate a nexus between the infringement and the indirect profits before apportionment can occur" (internal alterations omitted)).  The Eighth Circuit in *Andreas* warned specifically against what Oracle is attempting to do here, writing: "The burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits."  *Andreas*, 336 F.3d at 796.  Both cases required significant evidence linking the infringing advertisements to the profits from the advertised goods before

---

[1] In its Opposition, Oracle wrote: "The plaintiff in *Frank Music* was not required to show that the portions of *Kismet* had any relationship to, for example, gambling revenues at all.  Instead, it had to show only that *Kismet* was shown in the casino."  Opp. at 12.  Oracle notably cited nothing for this proposition, as it is directly contradicted by the Ninth Circuit's decision, which nowhere states that showing *Kismet* in the casino would have been enough to establish entitlement to profits, without the defendant's admission that the revue was a significant factor in attracting customers to the hotel.

triggering burden-shifting. In *Polar Bear*, the plaintiff provided expert testimony that specifically linked the infringing advertisement to the accused profits. *Polar Bear*, 384 F.3d at 712. And in *Andreas* the Court relied on extensive evidence of the infringement's importance to Audi's marketing campaign, finding among other things that the "infringement was the centerpiece of a commercial that essentially showed nothing but the TT coupe," and that "Audi enthusiastically presented the commercial to its dealers as an important and integral part of its launch of the TT coupe into the U.S. market." 336 F.3d at 796-97. Here Oracle cites no evidence that the infringement or the infringed files contributed anything to Android's success—because there is none.[2]

*Mackie* is far and away the most analogous to this case of any of the cited cases. If anything, the infringement here is less connected to Android's revenues than the art in *Mackie* was to the Seattle Symphony's revenues. If the *Mackie* photo was a needle in the brochure's haystack, Android contains thousands upon thousands of haystacks. The rangeCheck method is but nine lines in over 15 million lines of code for Android, RT 2179:19-23 (Astrachan), and the eight test files at issue never appeared on an Android phone, RT 1319:15-1320:6 (Mitchell), and thus could never have even remotely influenced a consumer to purchase a phone, much less to use any of the Google-hosted services (like search, advertising, and applications) that actually generated Android-related revenue for Google.

No case suggests that Oracle can simply note that the two files containing the nine-line rangeCheck method and the eight test files are somehow connected to Android, and then shift the burden to Google. Oracle must prove a causal nexus between the infringement and the Android-related revenues before those revenues become relevant in this case.

---

[2] Oracle also relies on *Cream Records, Inc. v. Joseph Schlitz Brewing Co.*, 864 F.2d 668 (9th Cir. 1989). *Cream Records*, however, deals with apportionment of infringer's profits once a causal nexus has been established. There is no suggestion in *Cream Records* that the defendant ever challenged the causal nexus between its infringement and the asserted profits. Nor could they; the profits in that case consisted of the specific payment the defendant received for producing the infringing product. *Id.* at 669.

6
MOTION IN LIMINE TO EXCLUDE GOOGLE'S ANDROID-RELATED REVENUES
Case No. 3:10-CV-03561 WHA

665358.01

**B.     The Court should exclude evidence of Google's Android-related revenues until Oracle proves a causal nexus between those revenues and Google's infringement, which Oracle cannot do.**

As Google argued in its Motion for Summary Judgment, *see* Dkt. 1125 at 8-11, Oracle cannot possibly prove a causal nexus between any of Android's revenues and either the eight test files that never appeared on an Android handset or a method compromising 0.00006% of Android's code. Oracle has disclosed no expert to prove this nexus, and there is no lay witness who could give any testimony linking the eight test files or the rangeCheck method to Android's revenues.

Given the steep, if not impossible, climb Oracle faces, at the very least the Court should preclude Oracle from introducing Google's revenues until it has succeeded in showing a causal nexus between those revenues and Google's infringement. Until such a nexus is proven, any probative value of Google's Android-related revenues is purely speculative, and thus of minimal value. On the other hand, disclosure of Google's Android-related revenues would be highly prejudicial to Google in two ways. First, throwing high numbers at the jury would prejudice the jury towards awarding high numbers to Oracle when the most likely outcome is that those numbers will not be relevant at all. Second, Google does not make its financial information regarding Android, or any specific units within Google, public. Public disclosure of Android financials would thus be highly prejudicial to Google's business. Until Oracle has proven a causal nexus between Google's infringement and Android's revenues, the Court should exclude those revenues as unfairly prejudicial, confusing, and a waste of time under FRE 403.

Throughout the case, Oracle has attempted to throw large numbers at the jury. Its first damages report requested damages in the billions, prompting the Court to accuse Oracle of "overreach[ing] in multiple ways—each and every overreach compounding damages ever higher into the billions." Dkt. No. 230 at 15. At the beginning of trial the Court specifically warned Oracle that "[t]his is not going to degenerate into an argument piece for large numbers when everyone in this courtroom knows that the cases boil down to a small number, perhaps very important, but small number of items of intellectual property. It is not Java against Android." RT 228:11-15. Despite the Court's warning, Edward Screven, one of Oracle's witnesses, blurted out

7

MOTION IN LIMINE TO EXCLUDE GOOGLE'S ANDROID-RELATED REVENUES
Case No. 3:10-CV-03561 WHA

665358.01

that Oracle had purchased Sun for $7.4 billion, and that it was worth paying that amount just for Java, prompting the Court to tell the jury that "the $7.4 billion number has nothing to do with this case. Disregard it." RT at 521:15-522:4 (Screven). Oracle's attempt to begin its damages phase with Google's Android-related revenue is simply more of the same. Oracle wants the jury to know Google's total Android-related revenues to increase the chances that the jury will award some significant amount of profits, even if Oracle cannot show any causal nexus. The Court should therefore exclude Google's Android-related revenues until Oracle has provided some evidence that these numbers are relevant.

Google's Android-related financial data is also not public and highly sensitive. The Court has consistently granted Google's motions to seal documents that contain Google's non-public Android-related financials. *See, e.g.*, Dkt. 1122, 1056, 935. The Court has recognized that public disclosure of this financial information "would cause harm to Google and place it at a competitive disadvantage." Dkt. 1122. The Court should not require that Google publicly disclose these documents, harming Google's business, when their relevance to the case remains purely speculative.

Furthermore, introducing Google's Android-related revenues before Oracle has proven a causal link between those revenues and Google's infringement would be a waste of time and confusing to the jury. If, as is likely, Oracle is never able to prove a connection between Google's infringement and Google's Android-related revenues, having witnesses testify as to those revenues would waste both the jury's and the Court's time. It would also confuse the jury to have spent significant time hearing evidence that likely, as a matter of law, will be irrelevant.

For all of these reasons, the Court should exclude evidence of Google's Android-related revenues as unfairly prejudicial, a waste of time, and confusing under FRE 403 until Oracle is able to establish a causal nexus between those revenues and Google's infringement.

### III. CONCLUSION

For the above reasons, Google requests that the Court exclude Google's Android-related revenues from phase 3 under FRE 402 because Oracle cannot prove a causal nexus between Google's infringement and Google's Android-related revenues. In the alternative, Google

requests that the Court exclude Google's Android-related revenues from phase 3 under FRE 402 and 403 until Oracle has sufficiently proven a causal nexus between Google's infringement and Google's Android-related revenues.

Dated:  May 14, 2012               KEKER & VAN NEST LLP

                                   By:   /s/ Robert A. Van Nest
                                         ROBERT A. VAN NEST

                                   Attorneys for Defendant
                                   GOOGLE INC.