# EXHIBIT A

# FILED UNDER SEAL PURSUANT TO THE PROTECTIVE ORDER

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

--------------------------
ORACLE AMERICA, INC., )
Plaintiff, )
vs. ) No. CV 10-03561
GOOGLE, INC., )
Defendant. )
--------------------------

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Videotaped Deposition of Andrew Rubin, taken at 633 Battery Street, San Francisco, California, commencing at 9:39 a m., Friday, April 27, 2012, before Ashley Soevyn, CSR 12019.

Reported by:
Ashley Soevyn, CSR. 12019
Job No. 143660
PAGES 1 - 80

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF ORACLE AMERICA, INC.:

BOIES, SCHILLER & FLEXNER LLP
BY: ALANNA C. RUTHERFORD, ESQ.
575 Lexington Avenue, 7th Floor
New York, New York 10022
(212) 446-2300
arutherford@bsfllp.com

FOR THE DEFENDANT GOOGLE, INC.:

KING & SPALDING
BY: SCOTT T. WEINGAERTNER, ESQ.
1185 Avenue of the Americas
New York, NY 10036-4003
(212) 556-2227
sweingaertner@kslaw.com

ALSO PRESENT:
AARON WATLEY, Videographer
SUSAN KIM, Google Litigation Department
RACHEL CALFLIN, Legal Assistant King & Spalding

Friday, April 27, 2012; San Francisco, California

---O0O---

THE VIDEOGRAPHER: Good morning. We are on the record. The time is 9:39 a m. on April 27th, 09:39:28 2012. This is the video-recorded deposition of Andrew Rubin. My name is Aaron Watley here with our court reporter Ashley Soevyn. We are here from Veritext National Deposition & Litigation Services at the request of counsel for plaintiff.

This deposition is being held at 710 Sansome Street, San Francisco, California. Caption of this case is Oracle America, Inc., versus Google, 09:39:57 Inc.

Please note that audio and video recording will be taking place unless all parties have agreed to go off the record. Microphones are sensitive and may pick up whispers, private conversations, and cellular interference. At this time, will counsel and all present please identify themselves for the record.

MS. RUTHERFORD: Alanna Rutherford, Boies, Schiller & Flexner for Oracle America.

MR. WEINGAERTNER: Scott Weingaertner of King & Spalding for Google.

THE VIDEOGRAPHER: Thank you. The witness

can be sworn in and we can proceed.

ANDREW RUBIN,

the witness, having been duly sworn, testified as follows:

EXAMINATION

BY MS. RUTHERFORD:

Q. Good morning, Mr. Rubin.
A. Good morning.
Q. Could you just state your name and title again for the record?
A. Sure. Andrew Rubin. I am SVP of mobile for Google.
Q. Thank you. When were you contacted by Dr. Cox to assist him in his report reinvestigations?
A. Allan Cox and I had a brief conversation on 09:40:57 the phone probably about four, five days ago.
Q. How long was that brief conversation?
A. Probably less than 30 minutes.
Q. Who else was on the line?
A. There were other people, but I didn't -- I didn't catch their names.
Q. Do you know why you were contacted by Dr. Cox?

A. I was there to, you know, answer his questions and make sure that he was well-informed about how we manage our costs on Android. 09:41:30
Q. Did you do anything to prepare for that phone call?
A. Nothing other than refer to a spreadsheet, Excel, on the exhibit.
Q. You are pointing to the document in front of you?
A. Yeah, I haven't reviewed this document, but I have a P&L that we shared with him. And we both had that on each side of the phone call. 09:41:58
Q. Was there any follow up after that phone call?
A. No.
Q. So you were not contacted again in any way?
A. No.
Q. Did you have any discussions with anybody prior to your conversation with Dr. Cox to prepare for that conversation?
MR. WEINGAERTNER: Going to object and instruct the witness not to answer questions regarding communications with counsel. 09:42:29
BY MS. RUTHERFORD:



Q. Did you have any conversations with anybody aside from counsel --
A. No --
Q. -- in preparation for that call?
A. -- I didn't.
Q. Have you reviewed Dr. Cox's report?
A. I have not.
Q. Were you told why you were meeting with Dr. Cox, aside from any conversations you had with counsel?
A. Yes, to, you know, to document the cost associated with developing Android.
Q. Do you know Android senior financial Aditya Agarwal? 09:42:59
A. Yes, I do.
Q. Do you work with him on a regular basis?
A. Yes.
Q. Do you believe that you're more fully able to respond to the questions about Android's expenses than Mr. Agarwal?
MR. WEINGAERTNER: Objection, form.
THE WITNESS: In certain areas. My -- my expertise is in the cost to develop Android, his expertise is in finance and accounting. 09:43:25
BY MS. RUTHERFORD:



Q. What accounting system is used to keep track of Android expenses?
A. I don't know.
Q. Do you use SAP, for example?
A. I don't know.
MR. WEINGAERTNER: Objection to form.
BY MS. RUTHERFORD:
Q. Who are the members of Android's accounting team?
MR. WEINGAERTNER: I'm going to refer counsel to the order that the Court issued, which basically imposed an instruction that the deposition is going to be limited to the subject of the interviews and information provided to the expert and its accuracy. 09:43:57
MS. RUTHERFORD: My understanding is Mr. Rubin's just testified that he relied on the spreadsheet. Let me ask it this way.
BY MS. RUTHERFORD:
Q. Who prepared the spreadsheet that you used to -- that you -- strike that.
Who prepared the spreadsheets that you discussed with Mr. Cox?
A. I don't know.
Q. You don't know? You just received them?



A. That's right.
Q. Who did you receive the spreadsheets from? 09:44:29
A. My attorneys.

[redacted]

Q. You keep pointing to that exhibit, so let's just introduce it.

(Exhibit TX1079 marked for identification.)

BY MS. RUTHERFORD:

Q. All right. You have before you Exhibit 1079. Would you just verify that that's the spreadsheet that you've been discussing that you reviewed with Dr. Cox? 09:45:29

A. This is -- well, let's see. There is many pages here and I think there's actually different spreadsheets here. So let's review it for a second.

Q. Okay. 09:45:59

A. It's an "I" chart. This is -- I mean, it seems to be kind of some of the same data, but it's not in the exact form, probably just because of the way it was printed. For example, my spreadsheet had the names of tabs for one of these reports, and this doesn't have it. 09:46:27

Q. You were looking at that spreadsheet on a computer; is that correct?

MR. WEINGAERTNER: Objection to form.

THE WITNESS: I looked at a version of this spreadsheet that was projected on the screen from a computer because the numbers are really small. And, um, I'm trying to figure out if this is just one spreadsheet or more than one spreadsheet. I don't -- I don't know if this is the identical document that I reviewed. I guess that's my conclusion. 09:46:50

MS. RUTHERFORD: Okay. Counsel, if it's not the identical document, we ask that you produce that.

MR. WEINGAERTNER: We believe it's the identical document.

THE REPORTER: I'm sorry, I kind of couldn't hear you.

MR. WEINGAERTNER: We believe it's the identical document.

BY MS. RUTHERFORD:

[redacted]

[redacted]

[redacted]

Q. Could you explain what the accounting system is?

MR. WEINGAERTNER: Objection, form.

THE WITNESS: I don't have -- I'm not an accountant, so I don't have the depth of detail on what the accounting system is. We discussed earlier, I don't know the name of the accounting system or software they use. 09:49:58

BY MS. RUTHERFORD:

Q. Do you know the methodology?

A. I -- as I understand it, it's standard accounting procedures.

Q. Google doesn't have its own procedures for how it divides, for example, overhead?

MR. WEINGAERTNER: Objection, form.

THE WITNESS: I don't know.

Page 13

BY MS. RUTHERFORD:
Q. You don't know.

Page 15

BY MS. RUTHERFORD:
Q. Okay. You mentioned in your trial 09:53:57 testimony that Android purchased a small company called Visual Design. Would you amortize the cost of that acquisition?
MR. WEINGAERTNER: I'm going to object to the extent that that exceeds the Judge's order, which limits the questioning to the intervenors, the information provided to the expert, its accuracy. To the extent the question goes beyond that, I instruct you not to answer.
THE WITNESS: I'm not familiar with that company.

Page 14

Page 16

MS. RUTHERFORD: I thought you mentioned it in your trial testimony, Visual Design, no? 09:54:28
A. I know they bought a company called Visual Design.
Q. Okay. Well, we heard during trial that you hired Noser to work on behalf of Android?
A. Yes.

Page 21

project and was free for use.

Q. And because you made a distinction, Android

Page 22

generates revenue through advertising business, correct?

MR. WEINGAERTNER: Objection to form.

THE WITNESS: Android contributes to 10:00:59 advertising revenue.

BY MS. RUTHERFORD:

MR. WEINGAERTNER: Objection to the form of the question and to the extent it calls for testimony outside of the discussion with Dr. Cox or the accuracy of the numbers in the exhibit.

MR. WEINGAERTNER: Well, let's not be argumentative. I'm just -- 10:01:30

MS. RUTHERFORD: All right.

MR. WEINGAERTNER: -- making an objection for the record, Counsel.

MS. RUTHERFORD: Okay. Thank you.

Page 23

Page 24



Page 29

correctly, so I'll move on to a new one and I'll come back to that one. If you can turn to the last page of Exhibit 1079.

A. Okay. 10:10:25

Page 31

Page 30

Page 32

Page 49
Page 51
Page 50
Page 52

Page 53
Page 55
Page 54
Page 56

Page 61

MS. RUTHERFORD: You can take your break.
MR. WEINGAERTNER: Thank you.
THE VIDEOGRAPHER: The time is 10:46 a.m. We are off the record. 10:46:36
(Recess taken.)
THE VIDEOGRAPHER: The time is 11:05 a.m. We are back on the record.
BY MS. RUTHERFORD:

Page 62

Page 63

Page 64

BY MS. RUTHERFORD:
Q. Okay. Turning to -- again, to the second page, which is ending in Bates number 804 in Exhibit 1079.
A. Yes. 11:09:28
Q. Could you explain to me what this page is?
A. I'm sorry, Exhibit 8 -- exhibit ending in 804?

Page 73

[redacted]

Page 74

[redacted]

Page 75

[redacted]

Page 76

[redacted]

MS. RUTHERFORD: Okay. Thank you.

THE VIDEOGRAPHER: This concludes today's deposition and tape one of the deposition of Andrew Rubin. We are off the record at 11:24 a.m.