MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (Bar No. 111664)
mjacobs@mofo.com
MARC DAVID PETERS (Bar No. 211725)
mdpeters@mofo.com
DANIEL P. MUINO (Bar No. 209624)
dmuino@mofo.com
755 Page Mill Road, Palo Alto, CA  94304-1018
Telephone: (650) 813-5600 / Facsimile: (650) 494-0792

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (Admitted *Pro Hac Vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Telephone: (914) 749-8200 / Facsimile: (914) 749-8300
STEVEN C. HOLTZMAN (Bar No. 144177)
sholtzman@bsfllp.com
1999 Harrison St., Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000 / Facsimile: (510) 874-1460
ALANNA RUTHERFORD (Admitted *Pro Hac Vice*)
arutherford@bsfllp.com
575 Lexington Avenue, 7th Floor, New York, NY 10022
Telephone: (212) 446-2300 / Facsimile: (212) 446-2350

ORACLE CORPORATION
DORIAN DALEY (Bar No. 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (Bar No. 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (Bar No. 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA  94065
Telephone: (650) 506-5200 / Facsimile: (650) 506-7114

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>                    Plaintiff,<br><br>        v.<br><br>GOOGLE, INC.<br><br>                    Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE AMERICA, INC.'S OPPOSITION TO GOOGLE'S MOTION IN LIMINE TO EXCLUDE ANDROID REVENUES**<br><br>Dept.:  Courtroom 8, 19th Floor<br>Judge:  Honorable William H. Alsup |

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

In the Copyright Act, Congress decided to require that an infringer account for its ill-gotten profits.  Found by a jury and by the Court to be a copyright infringer, Google has filed yet another motion, styled as a "motion *in limine*," in an attempt to be relieved of that burden altogether.  Google's motion to exclude Android financial evidence from Phase 3 of the trial merely rehashes the arguments in its unsuccessful motion for summary judgment.  Google's motion should be denied.

## I.  Google's "Motion *in Limine*" Is A Procedurally Improper and Legally Inadequate Re-Hash of Its Failed Motion for Summary Judgment.

The Court previously warned the parties not to bring "categorical motions and disguised summary judgment motions" as motions *in limine*.  (Order Regarding Pretrial Filings (Dkt. No. 384).)  Heedless of that admonition, Google has filed a motion *in limine* that is not just disguised as a summary judgment motion – it is actually cut and pasted from the summary judgment motion Google filed just two days ago.   This morning, the Court denied that motion from the bench, stating: "That is more properly brought as a Rule 50 motion after all the evidence is put into the record."  (RT at 3912:21-24.)  Google's "motion *in limine*" is little more than a reply brief on the summary judgment motion Google already lost.

In its summary judgment motion, Google argued that Oracle should not be allowed to present to the jury its infringer's profits case because Oracle supposedly cannot meet its burden of demonstrating a "causal nexus" between infringement and Android revenues.  The Court denied that motion.  In its *in limine* motion, Google argues that Oracle should not be allowed to present to the jury the portion of its infringer's profits case that includes Android revenues, because – again – Oracle supposedly cannot meet its burden of demonstrating a "causal nexus" between infringement and Android revenues.

As Google makes the exact same argument as before, its motion fails for the exact same reason as before.  "Causal nexus" does not mean what Google thinks it means.  (It does not even appear in the Copyright Act, although Google erroneously cites the Act for that proposition.  (*See* Dkt. No. 1146 at 3).)   In an effort to show that Oracle cannot establish the supposedly necessary causal nexus, Google repeats its argument that rangeCheck and the decompiled files represent a very small percentage of the total volume of code in Android.  But the amount of infringing material in the

1

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

defendant's product, be it great or small, does not matter to the plaintiff's burden under 17 U.S.C. § 504(b).  Once Oracle identifies revenues that are attributable to the product that exploits the infringing code, the Copyright Act puts the burden on <u>Google</u>, not Oracle, to separate out any portion of Android's "profit attributable to factors other than the copyrighted work."  17 U.S.C. § 504(b). There is no exception to this burden-shifting provision for small infringements.

In its Opposition to Google's summary judgment motion, Oracle pointed out that numerous appellate cases—including *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985); *Cream Records, Inc. v. Joseph Schlitz Brewing Co.*, 864 F.2d 668 (9th Cir. 1989); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789 (8th Cir. 2003); and *Davis v. The Gap, Inc.*, 246 F.3d 152 (2nd Cir. 2001)—establish that the relevant causal nexus in an indirect-profits case is between the infringing product (here, Android) and the revenues, not between the copyrighted code  and the revenues.  (*See* Dkt. No. 1135 at 4–12.)   Accordingly, every appellate case to consider this issue has shown that, if the infringing product generates revenue, it does not matter how small the infringement is as compared to the infringing product.  The burden of apportionment is on the infringer.  (*See id.*)

In addition to Frank, Cream, Andreas, and Davis, in *Bergt v. McDougal Littell*, 661 F.Supp.2d 916 (N.D. Ill. 2009), for example, the plaintiff met its burden by establishing defendant's gross revenues from the sales of an approximately 1,250 page textbook that reproduced his copyrighted painting on one page.  *Id.* at 927–28.  The court explained that the plaintiff's "failure to present a buyer whose decision to buy the textbook was solely made on the inclusion of the painting is immaterial in both direct and indirect profit cases to initially establish [defendant's] gross revenue." *Id.* at 928 n.8.  Rather, it was the defendant's burden to show that none of the revenue it received from the sale of the textbook was due to the use of plaintiff's painting.  *Id.* at 929.  Indeed, both parties' experts admitted that in neither of their experience had a single painting been the basis of the decision to buy a textbook, yet the court denied defendant's motion for summary judgment on infringer's profits, based on nothing more than the testimony of plaintiff's experts that photographs, images, and illustrations are one of several things that would be a basis for choosing a textbook.  *Id.* at 928-29. *See also Ordonez-Dawes v. Turnkey Prop., Inc.*, (S.D. Fla. Apr. 22, 2008) (sufficient nexus between defendant's gross revenues from the sale of three homes where the homes sold after

2

B O I E S , S C H I L L E R & F L E X N E R L L P

O A K L A N D , C A L I F O R N I A

1    publication of an advertisement that included three of plaintiff's copyrighted photographs).  The

2    burden then shifts to the infringer to prove … that some or all of that revenue is attributable to factors

3    other than infringement of the copyrighted work").

4         Google claims that *Mackie v. Rieser*, a case decided two years before the Ninth Circuit's

5    decision in *Polar Bear* and on which the *Polar Bear* court expressly relied, supports its interpretation

6    of the Copyright Act.  Google is wrong.  In *Mackie*, the infringed work, a photograph of the

7    plaintiff's street art, was incorporated as part of a montage in a direct mailing that promoted a

8    symphony series for the Seattle Symphony.  296 F.3d 909, 912 (9th Cir. 2002).  The street art

9    photograph appeared in page twelve, directly following a page that contained information about the

10   symphony's "Pops" series.  *Id.*  There was no other connection between the street art and the Pops

11   performances, yet Mackie claimed profits for the entire 1996-97 Symphony season, as well as future

12   seasons, not just for Pops performances but for <u>all</u> performances.  *Id.* at 913.  The connection between

13   the infringement and the revenues was therefore quite indirect; the infringing component was not

14   incorporated into the revenue-generating work, and Mackie claimed profits not only from the series

15   that may have been promoted by the infringement, but for unrelated series as well.   The Ninth

16   Circuit held that before Mackie could collect those indirect profits, he had to demonstrate that "the

17   infringing acts had an effect on profits."  *Id.* at 915.

18        *Mackie* is nothing like this case.  The profits here are not indirect.  Android actually

19   incorporates rangeCheck, and Google's experts have admitted that the decompiled files have value to

20   Android.  Oracle is aware of no case in which profits were considered "indirect" when the infringing

21   work, which generated the revenues, actually contains the copies and actually benefitted from the

22   infringement.  There is simply not as attenuated a nexus between the infringement and the revenues

23   as there was in *Mackie*.  In fact, Mackie's own expert had admitted that he "could not 'understand'

24   how it would be possible to establish a causal link between the Symphony's infringing use of 'The

25   Tango' and any Pops series revenues generated through the inclusion of the collage in the direct-mail

26   literature."  *Id.* at 916.  There is no such admission here.

27        Moreover, the standard *Mackie* announced, and *Polar Bear* applied, is not as stringent as

28   Google argues.  There must simply be a showing, even in a case where profits are extraordinarily

3

attenuated from the infringement, that the infringing acts "had an effect" on revenues. *Id.* at 915. There is no requirement that Oracle prove, to a certainty, that Android earned revenues because of rangeCheck and the decompiled files; indeed, *Polar Bear* made crystal clear that there is no such requirement. *Polar Bear*, 384 F.3d at 715 ("there is no requirement that Polar Bear put Timex customers on the witness stand to testify that they purchased watches because of Timex's use of 'PaddleQuest' images.").

First, Google claims that *Frank Music* must not apply to this case, but Google's attempt to distinguish *Frank Music* on its facts simply shows how on point that case is.

First, Google claims that the ratio of rangeCheck lines to Android lines is smaller than the ratio of *Kismet* minutes to *Hallelujah Hollywood* minutes. But nothing in either of the Ninth Circuit's opinions in *Frank Music* suggests that the relative quantity of infringing to non-infringing material would have any bearing at all on the causal-nexus inquiry. In fact, the Ninth Circuit expressly rejected this type of tallying when it considered the district court's apportionment of profits (where the burden was on the defendant):

> If the district court relied exclusively on a quantitative comparison and failed to consider the relative quality or drawing power of the show's various components, it erred.

*Frank Music*, 886 F.2d at 1548. Google cannot wave away *Frank Music* with a comparison that the court never endorsed, and in fact discouraged.

Google also attempts to distinguish *Frank Music* by claiming that the defendant there admitted that the infringement enhanced its revenues. But the very passage that Google quotes shows that, at best, Google stands in the same shoes as MGM. Google points out that the defendants in *Frank Music* admitted that the hotel and gaming operations of the hotel were "materially enhanced by the popularity of the hotel's entertainment[, including] 'Hallelujah Hollywood[.]" *Frank Music I*, 772 F.2d at 517 (emphasis added). The defendant never admitted that Kismet enhanced its revenues, only that its entire entertainment program, including the entire revue that included Kismet, did. *Id.* Here, of course, Google has made the exact same admission: it admitted that Android materially enhanced its revenues. (Schmidt at RT 1456:10-19, 1458:9-1459:3 (admitting, among other things,

that Android covers its costs and a "whole bunch more").)  Google has no grounds on which it can distinguish *Frank Music*.

Otherwise, Google's cut-and-paste brief adds nothing new to the arguments the Court has already considered and rejected.  Oracle has already addressed those arguments and the relevant case law in detail.  (*See* Dkt. No. 1135 at 4–12; *see also* Dkt. No. 1106 (May 8, 2012, brief outlining these issues).  Oracle incorporates those briefs by reference.

## II.     The Proper Vehicle For Google's Argument Is A Rule 50 Motion Directed at the Evidence – Not a Motion in Limine to Exclude Evidence.

The Court has now admonished Google <u>twice</u> that the proper vehicle for its arguments is a Rule 50 motion after the evidence is in.  (RT at 3721:17-19; RT at 3912:21-24.)  Instead, Google slaps a new label on an old argument, and asks the Court not to let the evidence in at all.

## III.    Oracle Will Present Evidence At Trial That Meets Its Burden on Causal Nexus

For the reasons stated above and in Oracle's prior briefs, the plaintiff's burden to show a causal nexus is not as great as Google claims, and proof of causal nexus is not foreclosed merely because the copying is small compared to the financial success of the infringing product.  (*See* Dkt. No. 1135 at 4–12.  *See also Cream Records*, 864 F.2d 668 (infringer's profits available for infringed ten notes), *Andreas*, 336 F.3d 789 (infringer's profits available for an infringed thirty three-word phrase), *Frank Music*, 864 F.2d 668 (infringer's profits available for six minutes of "tribute" songs).  It does not matter how many lines of code the files contain, nor does it matter how those numbers of lines compare to Android.  It is sufficient to show that Android itself exploits the infringed code.

Moreover, although Oracle need not prove any particular amount of revenues attributable to the infringement, Oracle will offer evidence that Google's infringement of the code files has contributed meaningful value to Android.  TimSort and ComparableTimSort, the files that the jury found infringed, were "much, much faster" than the existing sort functions in Android; Bloch bragged that "Seeing a speed up 20 times faster was not uncommon.  I've seen things even more than that and, you know, twice as fast is a good sort of overall estimate if you average everything." (Bloch at RT 812:19-813:3.)  In fact, when he wanted to be added to the Android team, Bloch wrote

ORACLE'S OPPOSITION TO GOOGLE'S MOTION IN LIMINE RE: ANDROID REVENUES
CASE NO. CV 10-03561 WHA

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1    an email to Andy Rubin and tried  to prove his value specifically by boasting about the performance

2    benefits that TimSort delivers:  "I am currently working on a drop-in replacement for Harmony's sort

3    function, which has demonstrated a huge (up to 20X) performance improvement on G1 hardware. . . .

4    This will be my first contribution to Android."  (TX 184.)  In his deposition, Bloch admitted that

5    TimSort's performance enhancements could be expected to affect user experience of an Android

6    device.  (Bloch Dep. 163:8-164:19.)  Further, the exact copying of rangeCheck itself was important to

7    TimSort because Bloch wanted to be sure that rangeCheck threw the exact same exceptions that users

8    of Java would be familiar with  (Bloch Dep. 181:7-182:11.)

9         Oracle has not yet had an opportunity to prove these facts at trial, as Phase 3 is, and has

10   always been, the proper place to discuss the value of what Google took.  The jury is entitled to infer,

11   from this evidence and more, that TimSort contributed value to Android, and that the only way to

12   achieve the performance enhancement as quickly as needed was to copy rangeCheck.  Moreover,

13   Google engaged in willful copyright infringement, and even knowingly permitted former Sun

14   employee Bloch to work simultaneously on Java and Android, despite the fact that Google

15   recognized a "conflict" in doing so.  (TX 1060.)  The jury should be able to infer from the fact that

16   Google – a company that claims it prides itself on its ethics, its commitment to the Java community,

17   and its commitment to the protection of intellectual property – engaged in such willful and reckless

18   conduct that it saw value in the copyrighted code it obtained as a result.  (*See also* Oracle's

19   Opposition (Dkt. No 1135 at 15–16) (describing these, and other, facts from which the jury could

20   infer value).

21        Similarly, the decompiled "test" files—which are not test files in Java—are not valueless to

22   Google, even if, as Google insists, they are not currently present on phones.  Even if they are test files

23   in Android, Dr. Mitchell explained why this does not mean they are unimportant: "testing is a very

24   important part of the software development.  It's expensive.  And software companies want to do it

25   correctly so that the code that they ship is bug free and usable to their customers." (Mitchell at RT

26   1330:15–24.)  Google developers would have benefitted from these decompiled files because, if

27   indeed they are test files, "if this helped them test other code they were developing, and speed up and

28   lessen the cost of testing and quality assurance, then that would have a big value to them." (Mitchell

6

at RT 1330:25-1331:5.)  Even Google's expert, in his deposition, stated that software testing is "a very important component of developing software" and that "I think most people would agree that testing software and having files specifically for testing is good engineering practice."  (Astrachan Dep. Tr. 160:3–17.)

The jury should also be able to infer value from Google's willful infringement, including the fact that Google knew that the Noser engineers were "super shady" (TX 281), that Sun put obvious copyright notices on all of its files (*see, e.g.*, TX 623.2), and that Google still makes the files available on the public Android code repository that it owns and controls.  (Bornstein at RT 1832:3-10.)  (*See also* Oracle's Opposition to Google's Motion for Summary Judgment (Dkt. No. 1135 at 16–17) (describing these, and other, facts from which the jury could infer value).  Indeed, Noser's flat-fee contracts actually may have given them an incentive to cheat.  (*See* TX 30, 70, 74 (Noser statements of work).)

Google also ignores the fact that the purpose of the disgorgement provision of the Copyright Act is to make copying "worthless" to the infringer.  *Bucklew v. Hawkins, Ash, Baptie & Co.*, LLP., 329 F.3d 923, 933 (7th Cir. 2003) ("Remember that the purpose of allowing suit for the infringer's lost profits is to make infringement worthless to the infringer.").  Neither copying rangeCheck nor the decompiled files was worthless to Google.

## IV.    There Is No Undue Prejudice to Google In Allowing Oracle to Present Its Infringer's Profits Case.

The only ostensible prejudice that Google identifies is that it might have to disclose its non-public Android financial statements – some of which are already in evidence.  That a defendant's revenues will be offered into evidence is, under the Copyright Act, a natural and inevitable consequence of engaging in copyright infringement.  Moreover, the Court has told both parties "[t]he mere fact that it revealed something about your finances, that's nothing. Come on. The public can see that all day long."  (RT 5:23-6:16)  If Google believes, after the close of evidence, that there is no causal nexus, then it may move for judgment as a matter of law at that time.

## V.    Conclusion

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1  Many months ago, the Court reminded the parties that "Motions *in limine* made at this stage

2  must be ripe, not premature or dependent upon the way evidence develops at trial."  (Order

3  Regarding Pretrial Filings (Dkt No. 384).)  Google was told unambiguously that it would have to wait

4  until the close of evidence to bring this motion.  Unsatisfied with that ruling, Google then repackaged

5  the exact same arguments into a motion *in limine*.  The Court should not entertain this attempt to

6  resurrect a denied motion.

7

8  Dated: May 14, 2012                         BOIES, SCHILLER & FLEXNER LLP

9                                              By:  *Steven C. Holtzman*
                                                    Steven C. Holtzman

10                                             *Attorneys for Plaintiff*
11                                             ORACLE AMERICA, INC.