```
                                            Volume 25

                                            Pages 4266 - 4287

                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE WILLIAM H. ALSUP

ORACLE AMERICA, INC.,              )
                                   )
            Plaintiff,             )
                                   )
  VS.                              )  No. C 10-3561 WHA
                                   )
GOOGLE, INC.,                      )
                                   )
            Defendant.             )  San Francisco, California
_____)  May 17, 2012
```

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          MORRISON & FOERSTER
                            755 Page Mill Road
                            Palo Alto, California  94304
                    BY:  **MICHAEL A. JACOBS, ESQUIRE**
                         **KENNETH A. KUWAYTI, ESQUIRE**
                         **MARC DAVID PETERS, ESQUIRE**
                         **DANIEL P. MUINO, ESQUIRE**

                            BOIES, SCHILLER & FLEXNER
                            333 Main Street
                            Armonk, New York 10504
                    BY:  **DAVID BOIES, ESQUIRE**
                         **ALANNA RUTHERFORD, ESQUIRE**

(Appearances continued on next page)

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 Official Reporter - US District Court
                 Computerized Transcription By Eclipse

**APPEARANCES (CONTINUED):**

For Plaintiff:              BOIES, SCHILLER & FLEXNER
                            1999 Harrison Street, Suite 900
                            Oakland, California  94612
                       BY:  **WILLIAM FRED NORTON, ESQUIRE**
                            **STEVEN C. HOLTZMAN, ESQUIRE**


                            ORACLE AMERICA, INC.
                            500 Oracle Parkway
                            Redwood Shores, California  94065
                       BY:  **ANDREW C. TEMKIN, CORPORATE COUNSEL**
                            **DORIAN DALEY, GENERAL COUNSEL**


For Defendant:              KEKER & VAN NEST
                            633 Battery Street
                            San Francisco, California  94111-1809
                       BY:  **ROBERT ADDY VAN NEST, ESQUIRE**
                            **MATTHIAS ANDREAS KAMBER, ESQUIRE**
                            **EUGENE MORRIS PAIGE, ESQUIRE**
                            **CHRISTA MARTINE ANDERSON, ESQUIRE**
                            **MICHAEL S. KWUN, ESQUIRE**


                            KING & SPALDING LLP
                            1185 Avenue of the Americas
                            New York, New York 10036-4003
                       BY:  **BRUCE W. BABER, ESQUIRE**
                            **SCOTT T. WEINGAERTNER, ESQUIRE**


                            GOOGLE, INC.
                            1600 Amphitheatre Parkway
                            Mountain View, California  94043
                       BY:  **RENNY HWANG, LITIGATION COUNSEL**


Also Present:               **SAFRA CATZ, President and CFO**
                            Oracle Corporate Representative

                            **CATHERINE LACAVERA**
                            Google Corporate Representative

PROCEEDINGS

1                     P R O C E E D I N G S

2   MAY 17, 2012                              12:32 p.m.

3

4           (The following proceedings were held in open court,

5           outside the presence of the jury.)

6           THE CLERK:  Court is back in session.  Case 10-3561,

7   Oracle versus Google.

8           THE COURT:  Counsel, tell me when you're ready to

9   discuss the note from the jury.  We'll just pause until you're

10  ready.

11          (Brief pause.)

12          MR. VAN NEST:  I think we're ready your Honor to

13  discuss it.

14          THE COURT:  How about Oracle?  Is Oracle ready?

15          MR. JACOBS:  Yes, your Honor.

16          THE COURT:  So the note says -- from the foreperson

17  says:

18          "We are attempting to determine the scope of

19          meaning of the term "simulating execution of

20          the bytecodes..." in Patent '520.  Is the

21          existence of an example of the Android code

22          not functioning ("punting") when formatted in

23          a normal simulated execution setting

24          permitted to be taken as evidence that

25          Android's array initialization diverges from

PROCEEDINGS

1              the patented array initialization?"

2              All right.  What are the views of counsel?

3              **MR. JACOBS:**  First, an observation and then two

4    points.

5              The observation is that there appears to be some

6    confusion in the question with the inserted language "when

7    formatted in a normal simulated execution setting."  Because

8    I think the example that they are referring to with respect to

9    "punting" was Dr. Parr's testimony in which he asserted a null

10   pointer in the test and, therefore, it was not formatted in a

11   normal simulated execution setting.  It was an artificial

12   creation.  That's the observation.

13             Two points.

14             Number one, the example went to proving that -- or

15   the example that -- the experiment that Dr. Parr did went to

16   proving that stack -- the stack was not used in Android.  That

17   is legally irrelevant as there is no requirement in the claims

18   that the stack be used.  There is in other claims such a

19   requirement, but there is no requirement in the asserted

20   claims.

21             And, secondly, the specification does speak to how

22   the simulating execution function works when a bytecode other

23   than those that are listed as stack array initialization

24   bytecodes is encountered, and it's not inconsistent with -- in

25   fact, it's consistent with simulating an array.

PROCEEDINGS

1            So in Column 5, Line 44:

2            "Any bytecodes other than those listed above

3            are not recognized.  The appearance of other

4            bytecodes beyond those described above

5            indicates that the clinit method performs

6            functionality in addition to statically

7            initializing an array.  In this case the

8            clinit cannot be optimized.  If a bytecode is

9            not recognized, the preloader considers it

10           unsuitable for optimization (or play

11           execution) and processing continues to Step

12           316."

13           So the specification is clear that if something is

14  dropped in that is not a bytecode that the clinit method would

15  ordinarily emit, then there is an exception taken and something

16  else happens.  That's consistent with what happened in the

17  experiment, not inconsistent with the requirement to simulate

18  execution of an array in the asserted claims.

19           **MR. VAN NEST:**  I'm not sure why we would get into all

20  that, your Honor.  I think the simple answer to the question is

21  "Yes, you should give it the weight you think it deserves."

22           I mean, the answer is clearly "Yes."  They are asking

23  if the existence of an example of the code not functioning,

24  i.e. punting, is permitted to be taken as evidence that

25  Android's array initialization diverges from the patented array

PROCEEDINGS

1   initialization.

2         That's certainly what Dr. Parr testified.  He said

3   the fact that you have punting in the parseNewarray suggests

4   that it's pattern matching, not simulated execution.

5         So, I mean, I think the simple answer -- we're not

6   going to get into telling them what it means or what it should

7   mean, but they can certainly take it into account and give it

8   the weight they think it deserves.  I think that's the only --

9   the only proper answer to the question.  Fairly straightforward

10  I think.

11        **THE COURT:**  The question is asking not a legal

12  question.  It's not asking about the meaning of the

13  instructions.  It's asking about how to evaluate the evidence

14  concerning how Android works.

15        Specifically, they want to know if the existence of

16  this example can be taken as evidence that the Android array

17  initialization diverges from the patented array initialization.

18  That's a fact question.  That's not a legal question.

19        They are asking us to tell them how to weigh the

20  evidence.  That's not a proper thing to do at this stage.  It's

21  not asking about the law.

22        Now, if you two would like to -- if you both agree.

23  I'll only on do it if you both agree.  We bring the jury out

24  here and you each get a five-minute argument in front of the

25  jury, supplemental argument on this point to try to answer

PROCEEDINGS

1  their question based on the evidence in the record.  I would

2  let you do that, as long as you both stipulate it's okay.

3          But that's really what they are asking for here, is

4  some kind of supplemental argument.  And that's not the --

5  that's not the proper role of this kind of a question.

6          So my inclination would be to -- well, before I tell

7  you what my inclination on exactly how to answer this, which is

8  going to be a non-answer, it would be to ask you if you want to

9  do a five-minute explanation to the jury on this point.  Each

10 side gets five minutes.  I'm not ordering that.  If you both

11 said, "Great, we'll do it," then, fine, I think that might help

12 the jury on this point; but if you don't agree, then we're not

13 going to do it.

14         (Discussion held off the record

15          amongst counsel.)

16     **MR. JACOBS:**  Your Honor, I think we can shortcut

17 this.  We would prefer that the Court give the guidance the

18 Court was intending to give and not do a five-minute argument

19 on the fly.

20     **MR. VAN NEST:**  Your Honor, if you're going to -- if

21 we're not going to have a supplemental argument, I would at

22 least -- I understand your Honor's point, but I think we at

23 least want to let them know that, you know, they should take

24 all the evidence into account.

25         We don't want to suggest that anything is out of

PROCEEDINGS

1  bounds, in other words.  What they are asking is are they

2  permanent permitted to take something as evidence.

3          **THE COURT:**  That's not what they are asking.  You're

4  putting a spin on it.  They are asking whether or not they are

5  permitted to be taken as evidence that Android's array

6  initialization diverges from the patented array.

7          If I were to say "yes" to that, then they would take

8  that to mean, well, then the judge is telling us rule for

9  Google.  There is no way I'm going to do that.

10          **MR. VAN NEST:**  Fair enough.

11          **THE COURT:**  I'm going to say:

12          "Your question is one that goes to the weight

13          of the evidence and how to evaluate it.  That

14          is for you to have decide and not for the

15          Court to give you further guidance on."

16          That's what I'm going to say.  Does anyone want to

17  object to the form of that?

18          **MR. VAN NEST:**  No.

19          **MR. JACOBS:**  Not to the form, your Honor.

20          **THE COURT:**  What is your objection?

21          **MR. JACOBS:**  Substantive.

22          **THE COURT:**  What is it?

23          **MR. JACOBS:**  That it is legally irrelevant, this

24  evidence.

25          **THE COURT:**  Well, it's too bad.  That's in the

PROCEEDINGS

1   record.  It's in the record.  You didn't object to it.  You

2   don't get in evidentiary objections at this point.

3           MR. JACOBS:  I understand, your Honor, but I think

4   we're reading the question as a whole.  They are starting out

5   with:

6               "We're attempting to determine the scope of

7               the meaning of the term..."

8           And they have given us an evidentiary question.  I

9   guess I should further note that the claim, Claim 1, for

10  example, says:

11              "Compiling source code in the experiment is

12              not the output of a compiler."

13          So that's -- as a legal matter, that's why this

14  experiment is irrelevant.

15          THE COURT:  Well, you don't want to do the

16  five-minute supplemental argument to explain all of that.  You

17  just want to lard the record with some objection for the Court

18  of Appeals.  I'm sorry, I don't buy that.

19          MR. VAN NEST:  Would you mind reading it again?

20          THE COURT:  Yes.  I'll say:

21              "Your question goes to the weight of the

22              evidence and how to evaluate it.  That is for

23              you to decide and not for the Court to give

24              you further guidance on at this point."

25          MR. VAN NEST:  That's fine, your Honor.  We don't

PROCEEDINGS                                                    1275

1   have any objection to that.

2           **THE COURT:**  Let's bring back the jury and I will

3   instruct them.  All right?

4           While we're waiting, at 2:00 I have a civil calendar.

5   If we get a note, I will interrupt that to deal with this case.

6   So we'll have a number of hearings.  You're free to stay or

7   not, as you wish, but if a note comes out, we will pause the

8   civil calendar, bring you all back and deal with the note from

9   the jury before.  So your case, in other words, gets priority

10  is what I'm trying to say.

11          **MR. VAN NEST:**  How long does your calendar normally

12  run, your Honor?

13          **THE COURT:**  It will go to 2:00 to 3:00 and at 3:00

14  are the CMC's.

15          (Jury enters courtroom at 12:47 p.m.)

16          **THE COURT:**  Okay.  Thank you.

17          **THE CLERK:**  Please be seated.

18          **THE COURT:**  All right.  We got your note.  Thank you

19  for your note.  I will read it so you have it in context.  This

20  is from the foreperson, 12:25.

21          "We are attempting to determine the scope of

22          the meaning of the term "simulating execution

23          of the bytecodes" in Patent '520.  Is the

24          existence of an example of the Android code

25          not functioning ("punting") when formatted in

```
 1                 a normal simulated execution setting

 2                 permitted to be taken as evidence that

 3                 Android's array initialization diverges from

 4                 patented array initialization."

 5                 That was your question.

 6            Now, I need to say that there are things I can give

 7    you further guidance on, such as if you were to ask a question

 8    specific to one of my instructions.  Then usually -- I can't

 9    say always, but usually I would try to answer the question that

10    is tied in to my instructions.

11                 This question, though, is asking.

12                 "Is the existence of an example of the

13                 Android code not functioning when formatted

14                 in a normal simulated execution setting

15                 permitted to be taken place as evidence that

16                 Android's array initialization diverges from

17                 the patented array initialization."

18            Now, I have previously told you what was evidence in

19    the case and what's not evidence in the case, and you have

20    instructions on all of that.  I'm not going to repeat that.

21    You have -- I've already told what you is evidence in the case

22    and what you can consider.

23                 Here is my answer to the question as you have framed

24    it.

25                 Your question is one that goes to the weight of the
```

 1  evidence and how to evaluate it.  That is for you to decide and

 2  not for the Court to give you further guidance at this point in

 3  time.

 4          So I'm sorry, but that is the best answer I can give

 5  you with respect to the way you have framed the question.

 6          Please go back to the jury room and continue your

 7  deliberations.

 8          **THE CLERK:**  Please rise.

 9          (Jury exits courtroom at 12:50 p.m.)

10          **THE CLERK:**  Please be seated.

11          **THE COURT:**  While I have you here is there anything

12  else?

13          **MR. VAN NEST:**  No, your Honor.

14          **MR. JACOBS:**  No, your Honor.

15           Actually, timing on the JMOL oppositions.  I think

16  they are currently due at 5:00 p.m.

17          **THE COURT:**  Good.

18          (Laughter.)

19          **MR. JACOBS:**  If that suits you, I think we can make

20  that deadline.  If it didn't matter to the Court and we had a

21  couple more hours to polish, I think that would result --

22          **THE COURT:**  I will give you -- I will extend it even

23  more.  How much time do you really need?

24          **MR. JACOBS:**  I think -- this evening, 9:00,

25  10:00 p.m.

```
 1              THE COURT:  How about midnight?

 2              MR. JACOBS:  Fine, your Honor.

 3              THE COURT:  Midnight, okay.

 4              MR. VAN NEST:  Thank you, your Honor.

 5              THE COURT:  Okay.  Stand by.

 6              (Whereupon there was a recess in the proceedings

 7               from 12:52 p.m. until 1:53 p.m.)

 8              THE COURT:  Okay.  We're on the record.  We have

 9   another note.  It says:

10              "We request transcript of a portion of

11              Dr. Mitchell's testimony be read to us.  The

12              testimony concerns the topic of pattern

13              matching versus simulated execution and

14              occurred late on May 9 and again early on

15              May 10."

16              So I think you should be able to isolate the relevant

17   parts and agree on them and then we can bring the jury in and

18   read those parts.

19              Let me hear from you if you agree that you can try

20   and do that.  Let me know when that's done and I will interrupt

21   the law and motion calendar to bring the jury out and we will

22   do that.

23              MR. VAN NEST:  We will try to do that, your Honor.

24   That's what you want to know?

25              THE COURT:  That's what I want to know.  Do you think
```

```
 1   on both sides we will be able to do that?

 2              MR. JACOBS:  Yes, your Honor.

 3              THE COURT:  Here is what I suggest.  Why don't I send

 4   in -- how long do you think it's going to take you to get that

 5   done?

 6              MR. JACOBS:  Probably 10 minutes.

 7              MR. VAN NEST:  I would think it may take a little

 8   longer.  I would think we would need 20 to 25 minute maybe, to

 9   be safe.

10              Do you want to give us a time to come back in?

11              THE COURT:  Why don't you come back at 2:20 and let

12   me know if you've reached -- now, you need to have an exact

13   agreement.  And then, of course, the court reporter is the one

14   who is going to read it.

15              So can we go off the record now and I will get

16   started with my law and motion calendar a little early so

17   somebody is here on those cases.

18              (Whereupon there was a recess in the proceedings

19               from 1:55 until 2:09 p.m.)

20              THE COURT:  All right.  We're going to go ahead.  The

21   court reporter will take this down.

22              It's in Oracle America versus Google.  Note from

23   Jennifer Michaels says:

24              "I'm sick.  Can I get a sick day without

25               being discharged?  Sorry."
```

1          **MR. VAN NEST:**  Bob Van Nest for Google.

2          Your Honor, we conferred briefly, and we think it

3     would be appropriate to dismiss the jury for the day in hopes

4     that Ms. Michaels will feel better in the morning and be able

5     to resume deliberations.  They have been deliberating now for

6     several hours; 10, 12 hours.

7          **THE COURT:**  Well, that's possibly one interpretation

8     of this, but I think she means tomorrow.

9          **MR. VAN NEST:**  I don't know what she means, but I

10    think even if she meant tomorrow, that would be appropriate.

11         **THE COURT:**  Why is that?

12         **MR. VAN NEST:**  Because they have already invested 12,

13    14 hours of deliberations with her.

14         **THE COURT:**  Yes, but I believe they can reach a

15    verdict by tomorrow.  And you don't need to have 11.  We only

16    need six, and that's -- we don't have any guarantee she'll be

17    well by Monday.

18         **MR. VAN NEST:**  Shouldn't we at least find out what

19    she wants?  You may be right.  Maybe she just wants the rest of

20    the day off.  I'm not sure from the note.

21         **THE COURT:**  That's a good point.  Do you agree?

22         **MR. JACOBS:**  Yes, your Honor.

23         **THE COURT:**  All right.  Let's bring in Ms. Michaels.

24         (Juror Michals enters the courtroom.)

25         **THE COURT:**  Please be seated.

```
 1              Ms. Michals, thank you for your note.  I'm sorry to
 2  hear that you're sick.  You said:
 3              "Can I get a sick day without being
 4              discharged."
 5              Do you mean today?  You want to leave just for today
 6  and be back here today?
 7              JUROR MICHALS:  I just need -- I feel like if I had
 8  Friday, then I could get over this cold enough where I'm not
 9  contaminating anybody.
10              THE COURT:  What do you have?
11              JUROR MICHALS:  I think it's a cold.
12              THE COURT:  When did you come down with this?
13              JUROR:  This morning or last night.  This morning I
14  woke up with it.
15              THE COURT:  I don't know the answer to whether it's
16  a -- it's a question of whether or not you should be discharged
17  or not.  And I'm not saying "yes" or "no" to that.
18              But you're not actually asking to be discharged?
19              JUROR MICHALS:  No, no.
20              THE COURT:  You're not asking -- so I might wind up
21  just saying, if you -- well, I need to ask you this.
22              Are you able to do your job?  In other words, are you
23  in a mental enough fit shape to think and deliberate?
24              JUROR MICHALS:  I believe so.  I just didn't want to
25  get everyone else sick because you asked about that at the very
```

 1  beginning.

 2          But I am coughing, sneezing and I have a cold.  And I

 3  want to take a nap and go to sleep.  I'm tired.

 4          THE COURT:  What are the odds if we took the rest of

 5  the day off and came back in the morning, you might have --

 6          JUROR MICHALS:  That will help.

 7          THE COURT:  You might bounce back overnight.

 8          JUROR MICHALS:  It's a cold.  It's a virus.  It's got

 9  to run its course.  It will help.

10          THE COURT:  You're a nurse, right?

11          JUROR MICHALS:  Yeah.

12          THE COURT:  You know about these things.

13          JUROR MICHALS:  Yeah.

14          THE COURT:  What are the odds?

15          (Laughter.)

16          JUROR MICHALS:  I do kids.

17          THE COURT:  I would say that right now the odds

18  aren't good, but maybe tomorrow.  You know yourself better than

19  we do.

20          JUROR MICHALS:  I think if I had a day of rest and

21  the weekend, I think I would be excellent.

22          THE COURT:  Of course, but that means --

23          JUROR MICHALS:  The whole world has to stop.

24          THE COURT:  That means we give up on the chance to

25  get a verdict by this week, and that involves 10 other people.

PROCEEDINGS

1  So I have to take that into account.

2        I don't want you to speak for them or for anyone

3  else.  I'm just telling you what the general issue is there.

4        But if this was a matter of -- you think they are

5  good odds you would feel better enough to push on and soldier

6  on tomorrow, then I'm much more sympathetic to that idea.  If

7  you're telling me you need all the way to Monday, I'm not

8  saying no.  I would want to talk it over with the lawyers.

9        But I really am trying to find out what it is that

10 you think, what the options here are.

11        **JUROR MICHALS:**  I think the afternoon of napping

12 would help immensely.  I'm not going to say I'm going to be

13 better, but I could power on through, because I would like to

14 have a verdict.

15        **THE COURT:**  Any questions that the lawyers have?

16        **MR. JACOBS:**  No, your Honor.

17        **MR. VAN NEST:**  No, your Honor.

18        **THE COURT:**  All right.  Why don't you go back in the

19 jury room.  I have an idea, and I'm going to run it by the

20 lawyers.

21        (Juror Michals exits the courtroom.)

22        **THE COURT:**  She doesn't sound good.

23        Here is what I suggest we do.  We bring in the jury,

24 take the rest of the day off, hope she's better in the morning.

25        But if she's not feeling up to it, we tell her it's

1  okay to call in and say she's too sick to go forward and we

2  discharge her tomorrow morning.  That's what I recommend.

3           **MR. VAN NEST:**  I think that will work, your Honor.

4           **MR. JACOBS:**  Agreed, your Honor.

5           **MR. VAN NEST:**  See how she feels tomorrow.

6        **THE COURT:**  So if she is good enough to go forward

7  tomorrow, great.  If she's not, we discharge her to go forward

8  with the other 10.

9        Agreed?

10          **MR. VAN NEST:**  Agreed.

11          **MR. JACOBS:**  Agreed.

12       (Jury enters the courtroom at 2:28 p.m.)

13       **THE COURT:**  Okay.  Welcome back and have a seat,

14  please.

15       So by now you know that Ms. Michals is not feeling

16  too good.  She has been hanging out at the hospital too much

17  and picked up somebody's cold, which we're sorry for.

18       Here is what we're going to do.  It's sort of a

19  complicated plan.  We're going to let you take the rest of the

20  day off so that Ms. Michals can go home and get some rest.

21  We're going to hope, keep our fingers crossed, that she feels

22  up to going forward tomorrow.  If she does not, very high

23  likelihood we will discharge her and you 10 would go forward

24  without her.  Okay?

25       On the other hand, if she's able to make it, great.

PROCEEDINGS

1   Then we just go forward as normal.

2           So the 10 of you, all of you should try to be here

3   and continue, continue on tomorrow.  Please be here.  We are

4   going to go forward tomorrow no matter what.  The only question

5   is whether or not Ms. Michals is up to it.

6           This is one of those situations where there is a

7   possible inconvenience to the 10 of you if we took tomorrow

8   off, because then we would be giving up the opportunity to

9   possibly finish this verdict this week.  Although if we don't

10  finish it this week, that's fine.  We would continue into next

11  week anyway, but, you know, that is a possibility.  And I think

12  it would be an inconvenience to the 10 of you to just take

13  tomorrow off.  So that's my judgment as to the best way to

14  handle this.

15          Now, two things.  Ms. Michals, we do hope you will be

16  well enough to participate because you made a big investment in

17  this case.  We want to see you finish it all the way to the

18  end.

19          If you are just unable to do that, please call us in

20  time tomorrow so that we will know.  You should call Dawn.  I

21  think you have her phone number.  So that will be the way that

22  we would go.  And if we get that message that you just can't

23  make it in, then we will give you the word that you will be

24  discharged on account of sickness and then we will go forward

25  with the other 10 of you.

```
 1              Now, we -- now, as for the other 10 of you, all of
 2   you really, all of you really, once you leave here today please
 3   don't deliberate any more.  Just go home.  Get a fresh start in
 4   the morning.  And no more deliberating or speculating or
 5   whatever.  And that's the best I think we can do to get our way
 6   through this.
 7              So any questions about that plan?
 8              (All jurors respond negatively.)
 9              THE COURT:  Anything the lawyers want me to add or
10   subtract?
11              MR. JACOBS:  No, your Honor.
12              MR. VAN NEST:  I don't believe so, your Honor.
13              THE COURT:  We're going to use this extra time to
14   find those passages you wanted us to read back to you.  It
15   takes some time.  The lawyers have been working on it, but
16   we're not there yet.  It's not as easy as just punching it up
17   on the button.  It usually takes anywhere from 30 minutes to an
18   hour, and we just haven't finished it yet.
19              So this little shorter day will give us the
20   opportunity, maybe first thing in the morning to be ready to
21   read that back to you as you have requested.
22              All right?  So we can now let you go.  Please
23   remember all the my admonitions.
24              Ms. Michals, we are keeping our fingers crossed.  So
25   all of rest of you wash your lands like crazy.  I don't want
```

1  you to come down with something, okay?

2          (Laughter.)

3          **THE COURT:**  Have a good day.  Thank you.

4          (Jury exits the courtroom at 2:32 p.m.)

5          **THE COURT:**  Okay, be seated.

6          So you lawyers please help me out and try to figure

7  out what -- what readbacks we will read back tomorrow.

8          **MR. VAN NEST:**  We're working on that, your Honor.

9          **THE COURT:**  See you in the morning.

10         (Whereupon at 2:23 p.m. further proceedings

11          in the above-entitled cause were adjourned

12          pending jury verdict.)

13                          - - -

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

I, DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 10-3561 WHA, ORACLE AMERICA, INC. vs GOOGLE, INC. were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Thursday, May 17, 2012