Volume 29

Pages 4362 - 4388

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

ORACLE AMERICA, INC.,              )
                                   )
            Plaintiff,             )
                                   )
  VS.                              )   No. C 10-3561 WHA
                                   )
GOOGLE, INC.,                      )
                                   )
            Defendant.             )   San Francisco, California
_____)   May 23, 2012

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          MORRISON & FOERSTER
                            755 Page Mill Road
                            Palo Alto, California  94304
                     BY:  **MICHAEL A. JACOBS, ESQUIRE**
                          **KENNETH A. KUWAYTI, ESQUIRE**
                          **MARC DAVID PETERS, ESQUIRE**
                          **DANIEL P. MUINO, ESQUIRE**

                            BOIES, SCHILLER & FLEXNER
                            1999 Harrison Street, Suite 900
                            Oakland, California  94612
                     BY:  **WILLIAM FRED NORTON, ESQUIRE**

(Appearances continued on next page)

Reported By:  Katherine Powell Sullivan, RPR, CRR, CSR #5812

**APPEARANCES (CONTINUED):**

**For Plaintiff:**            ORACLE AMERICA, INC.
                             500 Oracle Parkway
                             Redwood Shores, California  94065
                        BY:  **ANDREW C. TEMKIN, CORPORATE COUNSEL**
                             **DORIAN DALEY, GENERAL COUNSEL**

**For Defendant:**           KEKER & VAN NEST
                             633 Battery Street
                             San Francisco, California  94111-1809
                        BY:  **ROBERT ADDY VAN NEST, ESQUIRE**
                             **MATTHIAS ANDREAS KAMBER, ESQUIRE**
                             **EUGENE MORRIS PAIGE, ESQUIRE**
                             **CHRISTA MARTINE ANDERSON, ESQUIRE**
                             **DANIEL PURCELL, ESQUIRE**

**Also Present:**            **SAFRA CATZ, President and CFO**
                             Oracle Corporate Representative

                             **CATHERINE LACAVERA**
                             Google Corporate Representative

# P R O C E E D I N G S

**MAY 23, 2012**                                                    **9:42 A.M.**

            (The following proceedings were held in open court,

            outside the presence of the jury.)

            **THE COURT:**  Welcome back.  Please have a seat.

            Okay.  We have a note from the foreperson.

Foreperson says the following note:

            "Understanding that the '520 issue concerns

            patent protection for an array initialization

            feature, we have a question on the legal

            interpretation of the words 'simulating

            execution of the code' as found in the claim

            language.

            "Does that wording refer to looking at the

            actual static initialization of the array,

            for purposes of determining the existence or

            non-existence of simulated execution?"

            Okay.  What do counsel have to say?

            **MR. JACOBS:**  Your Honor, actually, I was going to

propose that we meet and confer with Google on -- to try that

out this time around.  You've come out each time, and we

haven't had a chance to talk.

            **THE COURT:**  I thought I had given you a chance.

            **MR. JACOBS:**  We were just trying -- frankly, trying

to decipher the question.  We don't understand the question.

PROCEEDINGS

1  We don't understand "looking at the actual" and "for purposes

2  of determining the existence or non-existence ..."

3          THE COURT:  Well, all right.  If you think giving you

4  a few moments would allow you to come up with a stipulated

5  response, I'm fine with that.  Is that what you're saying?

6          MR. JACOBS:  Yes.  I don't know whether it will, but

7  I would like to give it a try.

8          THE COURT:  How much time would you like?

9          MR. JACOBS:  Five minutes.

10          THE COURT:  Fine.  I'll be back.

11          (Recess from 9:43 to 9:52 a.m.)

12          THE COURT:  Okay.  Back to work.

13          MR. JACOBS:  We have a joint view and a joint

14  proposal.

15          THE COURT:  Wonderful.

16          MR. JACOBS:  Our joint view is, we do not understand

17  the legal interpretation question they are asking.  And, in

18  light of that, we think the best answer is to read to them the

19  claim language.  We would -- on our side, we would propose

20  reading Claim 1 and Claim 20.

21          MR. VAN NEST:  That's fine.

22          MR. JACOBS:  And then maybe with some emphasis on the

23  prepositions may help them, a little bit, understand the claim

24  language.

25          THE COURT:  What good is that going to do?  You're

1  asking them to reframe their question?  Your agreed upon

2  response is to say, we don't understand the question?

3          **MR. VAN NEST:**  No.  I think after reading it we

4  thought Your Honor would say, it's for you to decide whether

5  under these -- under these terms, whether under these claims

6  whether the accused features contain all elements, or whatever.

7  That's the idea.

8          I'm not sure this is really a legal question that

9  they're asking, or whether they've figured out a way to try to

10 get some help on facts.  You've told them a number of times how

11 to ask questions, and they figured that out, that if they say

12 "legal interpretation" they might get an answer, and if they

13 don't they won't.  But it's not clear to either of us what they

14 are really asking on this particular limitation.

15         **THE COURT:**  Well, let me give you my thought because

16 I thought you would have a better stipulated response than

17 that.

18         **MR. JACOBS:**  Sorry, Your Honor.

19         **THE COURT:**  The first paragraph of the question does

20 exactly what I told them to do.  They zeroed in on a legal

21 issue, which is, what does simulating execution of the code

22 mean?  That's good.  They are focusing on the meaning of the

23 claim language.  And then they say, does that -- or the

24 foreperson says:

25         "Does that wording refer to looking at the

1              actual static initialization of the array,

2              for purposes of determining the existence or

3              non-existence of simulated execution?"

4         Now, to my mind, if you look at the claim, the claim

5    starts off by saying a method, dot dot dot, for statically

6    initializing an array comprising the steps of.  And then

7    there's five steps.  The middle one is the one simulating

8    execution.

9         But the bottom line of what you are trying to arrive

10   at after you do the five steps is to initialize the array.  So

11   you're only halfway through it when you get to the simulating

12   execution step.  And at the end of all five steps, that's when

13   you have the initialized array.

14        So if they're asking -- which seems to me probably

15   they are -- does that wording refer to looking at the actual

16   static initialization of the array, no, because that couldn't

17   possibly have occurred yet because that's the end result of

18   these five steps, not -- you don't have that until you get to

19   the end.  You don't have that halfway through.

20        That's what I'm seeing here.

21        MR. PAIGE:  Your Honor, I think that's actually not

22   right.

23        THE COURT:  Why not?

24        MR. PAIGE:  The third step of the claim involves

25   simulating the execution to see what the array would look like

PROCEEDINGS

1    were those steps taken.  And the final step is creating an

2    instruction that does create such an array.  But there is no

3    actual static array in the bytecode.  You need to perform the

4    steps set forth in the bytecode in order to see what sort of

5    array would result if those were actually executed.

6            And so you do, in the third step, need to do

7    something to figure out what the array is going to look like

8    that you create an instruction for in the fourth step, and that

9    you actually execute on a virtual machine in the fifth step.

10           So it's not true you don't have the actual static

11   initialization of the array until the final step.  You need to

12   find it in step three in order to create the fourth step, the

13   instruction in the fourth step, and in order to have the fifth

14   step work where it runs through and creates the array at the

15   end of the day.

16           **MR. JACOBS:**  I think another way to address this,

17   Your Honor, that gets closer to what you both are saying, would

18   be to emphasize the language in the third step:

19               "Simulating execution of the bytecodes

20               without executing the bytecodes to identify

21               the static initialization of the array by the

22               pre-loader."

23           The confusion in their question is this "looking at."

24   Is "looking at" meant to be a proxy for "identify"?  Or is it

25   meant to be, as the Court is suggesting, the actual static

1  initialization of the array at the last step?  And that's

2  where -- that's the confusion that I think is lurking here.

3         **MR. PAIGE:**  And I think, Your Honor, both sides agree

4  that the purpose of the simulation of execution is to identify

5  the static array.

6         I think Claim 20 might make it even more clear, which

7  I think is the language they're looking at.  If you compare the

8  actual quoted words, the quoted words they have in the question

9  are from Claim 20, quote, simulating execution of the code,

10  quote/end quote; whereas, Claim 1 is simulating execution of

11  the bytecodes.

12         So it seems like they are looking at Claim 20 rather

13  than Claim 1.  But they both have the same purpose.  You'll see

14  the end of Claim 20 says "simulating execution of the code to

15  identify the static initialization of the array."

16         **THE COURT:**  Assuming we are looking at 20, what is

17  your proposal?

18         **MR. PAIGE:**  I believe that both sides agree that the

19  purpose of the "simulating execution of the code" is to

20  identify the static initialization of the array.

21         **MR. JACOBS:**  But I think I would -- rather than add

22  additional wording to this, I think we're in agreement that the

23  way to answer the question is to give them the claim language

24  again.

25         **THE COURT:**  So you're saying the purpose of the

PROCEEDINGS                                    4370

 1  simulating step is to identify the static initialization?

 2          **MR. PAIGE:**  That's correct.

 3          **THE COURT:**  And then you're thinking that maybe they

 4  got it reversed, that it's somehow -- that simulating the

 5  execution -- in order to satisfy simulating execution, you

 6  somehow have to identify the static initialization?

 7          **MR. PAIGE:**  The question might be whether any

 8  simulated execution is germane for purposes of the claims, or

 9  whether the simulated execution must be for purposes of

10  identifying the static initialization of the array.  And the

11  answer to that is the latter.

12          **THE COURT:**  All right.  So what I'm going to do is

13  focus on number 20, read them that language, and then say, As

14  we understand the question, the simulating execution of the

15  code step is for the purpose of then identifying the static

16  initialization of the array.

17          **MR. JACOBS:**  Just a minute, Your Honor.

18          **THE COURT:**  Agreed?

19          **MR. PAIGE:**  That's correct, Your Honor.

20          **MR. VAN NEST:**  That's fine, Your Honor.

21          **MR. JACOBS:**  Your Honor, I think that would -- let me

22  suggest an additional clarification for them that's consistent

23  with what the Court said at the outset, which is that the

24  actual -- because this word "actual" is in there -- that the

25  actual static initialization of the array comes in the fifth

PROCEEDINGS

 1   step.

 2          **THE COURT:**  Well, but I'm looking at Claim 20.  There

 3   is no fifth step there.  You're right, I was earlier looking at

 4   11.  But it does say -- have the phrase "bytecode" in there.

 5          **MR. JACOBS:**  I think we're overreading the fact that

 6   "byte" is not present in their question.  It's possible that

 7   they're looking at claim --

 8          **THE COURT:**  Well, all right.  On the assumption that

 9   they are looking at 1, what is your point now?

10          **MR. JACOBS:**  The point would be to state, as the

11   Court said at the outset, that the actual static initialization

12   of the array that occurs -- that's referenced in their question

13   occurs in the fifth step.

14          **MR. PAIGE:**  I think that's both wrong and confusing

15   to the jury, Your Honor.

16          They will create an instruction that -- in step 4,

17   that is then interpreted to actually perform the static

18   initialization of the array in step 5.  But, clearly, you don't

19   look at the subsequent steps in order to perform the third

20   step.  The third step requires -- this is talking about Claim

21   1, not Claim 20, which is perhaps a different kettle of fish.

22   You don't look to what eventually results in order to figure

23   out how you get there in step 3.  You do the simulated

24   execution to determine what would happen if the bytecodes were

25   actually executed in order to identify the static

PROCEEDINGS                                    4372

1   initialization of the array.  Then you create an instruction

2   that would do the same thing, in step 4, and you run that

3   instruction on the virtual machine in step 5.

4            I think the jury will be befuddled if we tell them

5   that, in fact, we're talking about looking at something that

6   happens two steps down the road in order to perform step 3.  It

7   doesn't make any sense.

8            To be sure, the -- the instruction created in step 4

9   and run in step 5 should give you the same thing as you find in

10  step 3 when you identify the static initialization of the

11  array.

12           **THE COURT:**  What do you make of the word "actual"?

13  That's the word that -- actual versus simulated, I think, is

14  what --

15           **MR. PAIGE:**  Here's what I make of it, Your Honor.

16  When they say "actual," they're referring to what would result

17  if you were to go and do these steps one after the other.  It's

18  a bit of a confusing thing because the bytecode itself will not

19  contain an actual static initialization of the array in the

20  sense that it has in the source code a nice, neat curly bracket

21  with 1, 2, 3, 4 in it.  It will have a number of steps: dup

22  push push store, dup push push store.

23           And when those are performed, they result in properly

24  initialized static array.  But they don't -- static array

25  itself doesn't exist there, just the steps used to create it in

```
 1   the bytecode, which is what they are looking at.

 2           MR. JACOBS:  So let me sum it up, Your Honor, how I

 3   would suggest this be handled.

 4           Read back the question.  Say to them, the question

 5   may be asking whether simulating execution of the code is for

 6   the purpose of identifying the static initialization of the

 7   array.  The answer to that question is yes.  The question may

 8   be asking whether in order to find simulated execution one

 9   needs to be looking at the actual static initialization of the

10   array.  The answer to that is no, because actual initialization

11   of the array doesn't come until the fifth step.

12           THE COURT:  What was -- how do you get to yes in that

13   first branch?

14           MR. JACOBS:  If the wording is -- if the question is

15   asking, does simulating execution of the code, is that for the

16   purpose of identifying the static initialization of the array,

17   the answer is yes.

18           THE COURT:  All right.  You've given me some ideas,

19   both of you.  Thank you.  I'm going to bring the jury in and

20   once again give it my best shot.

21           MR. JACOBS:  Thank you, Your Honor.

22           THE COURT:  Ask them, please, to bring their handout.

23           (Jury enters at 10:07 a.m.)

24           THE COURT:  Okay.  Thank you.  Welcome back.

25           We have your note about 40 minutes ago.  Here's what
```

PROCEEDINGS                                                    4374

1   the note says:

2          "Understanding that the '520 issue concerns

3          patent protection for an array initialization

4          feature, we have a question on the legal

5          interpretation of the words 'simulating

6          execution of the code' as found in the claim

7          language.

8          "Does that wording refer to looking at the

9          actual static initialization of the array,

10         for purposes of determining the existence or

11         non-existence of simulated execution?"

12         I'll repeat the last question:

13         "Does that wording refer to looking at the

14         actual static initialization of the array,

15         for purposes of determining the existence or

16         non-existence of simulated execution?"

17         Before I answer that question, let me just say that

18  it wasn't clear to us whether you were referring to Claim 1 or

19  to Claim 20.  And, in the future, it would help us to know

20  which claim you're referring to.  Or if you want to say both,

21  that's fine.

22         But the quote "simulating execution of the code" is

23  found in 20.  Number 1 says "simulating execution of the

24  bytecode."  So you can see there's a difference in wording.

25         So I want to start with number 20, which has this --

1    it says:

2              "Wherein, the simulating step includes the

3              step of simulating execution of the code to

4              identify the static initialization of the

5              array."

6              And what I need to make clear here -- I think this is

7    possibly responsive to your question -- is that the simulating

8    execution of the code step is for the purpose of identifying

9    the static initialization of the array.

10             All right.  So you simulate in order to identify the

11   static initialization.  That's what is being -- that's the

12   syntax, so to speak, of number 20.

13             Now I want to go back to number 1 claim because it's

14   possible you were talking about number 1, and we misunderstood.

15   So I will give you a response on number 1.  Number 1 is --

16   starts off saying:

17             "A method in a data processing system for

18             statically initializing an array comprising

19             the steps of ..."

20             Then there are five limitations or five steps.  And

21   note the way that it starts off, a method for statically

22   initializing an array comprising the steps of.

23             So there are five steps.  And you don't actually get

24   to the actual static initialization until you do all five of

25   these steps.  That's what the method is.

PROCEEDINGS

```
 1            And your question calls out "actual static
 2   initialization of the array."  Your question says:
 3            "Does that wording refer to looking at the
 4            actual static initialization of the array,
 5            for purposes of determining the existence or
 6            non-existence of simulated execution?"
 7            So if you're referring to claim number 1, by the time
 8   you get to the third step, which is the simulating execution
 9   step, you're only halfway through the five steps, so you don't
10   yet have the actual static initialization yet.  Possibly, this
11   is not what you were asking.  But if I'm reading your question
12   right, it would not be possible for you to look at the actual
13   initialization because it doesn't yet exist yet, because that's
14   what happens at the end of step 5.
15            The purpose of step 3 is to simulate what you're
16   eventually going to put into the array.  But -- so it simulates
17   execution of the bytecodes of the clinit method against memory
18   without executing them.  It simulates them without executing
19   them, in order to identify the static -- for the purpose of
20   identifying the static initialization of the array.  So it's
21   for the purpose of.
22            I don't know if that helps you or not.  That's the
23   way I read your question.  And if you think I haven't really
24   answered your question then, of course, you can send out
25   another one.
```

```
 1              You were right on target when you -- when you asked

 2    me what is the meaning of this phrase in the claim language,

 3    that is a good way to ask the question because that's a legal

 4    question.

 5              And I've consulted with the lawyers, and we're not a

 6    hundred percent sure that what I've just said is going to

 7    answer your questions.  But if it doesn't, then you can draft

 8    another question to follow on.

 9              You're looking over there like I didn't really answer

10    your question.

11              (Laughter)

12         THE COURT:  And I'm sorry, but that's the best I can

13    do because I don't understand it any better.  That's the best I

14    can do with the way you wrote it out.  So there we go.

15              Please continue on with your deliberations.

16              (Jury out at 10:15 a.m.)

17         THE COURT:  All right.  Anything anyone wants to put

18    on the record?

19         MR. JACOBS:  No, Your Honor.  Nothing.

20         THE COURT:  Nothing?  All right.  Good.  Anything

21    more that -- any other business we can do while I've got you

22    here?

23         MR. VAN NEST:  I don't think so, Your Honor.  We have

24    briefs due tomorrow at noon, I believe.

25         THE COURT:  Well, today.
```

PROCEEDINGS                                            4378

```
 1              MR. VAN NEST:  Today.  Today at noon and tomorrow, I
 2   believe, also.
 3              THE COURT:  Right.  And I'm looking forward to
 4   reading them.  Except the ones tomorrow I'll be a little late,
 5   but the ones today I'm going to get right on time and start
 6   reading them.  I'm very anxious to know what you're saying,
 7   both sides are saying on those questions.
 8              MR. VAN NEST:  Did you say you're going to get the
 9   ones tomorrow late?
10              THE COURT:  I will.  But I'm not going to give you an
11   extension.  They are going to have to be faxed to me because I
12   will not be in the building.  But I will be in the building
13   when you file your ones today.  But the ones tomorrow I'll
14   probably get like dinner time.  I will get them, but I just
15   won't get them -- please don't use this as an occasion to ask
16   for an extension.
17              MR. VAN NEST:  I wasn't going to do that.  I didn't
18   understand your comment, but now I do.
19              THE COURT:  That's my comment.  I'm anxious to read
20   those, too, but I won't read them as soon as they are hot off
21   the press, unfortunately, because I'm not going to be in the
22   building at noon tomorrow.
23              MR. VAN NEST:  Fair enough.
24              THE COURT:  All right.  Thank you.  I'll --
25              MR. JACOBS:  Thank you.
```

```
 1              THE COURT:  I'll let you know when the next note

 2    comes out.

 3              (Proceedings in recess from 10:16 to 10:52 a.m.)

 4              THE COURT:  All right.  Please be seated.

 5              I've heard a rumor that the jury has a verdict, but I

 6    haven't seen the note myself.

 7              Yes, they say they have a unanimous verdict.

 8              I'm going to bring the jury in and receive it unless

 9    somebody has a better plan.

10              MR. VAN NEST:  I don't think so, Your Honor.

11              THE COURT:  All right.  Let's do that.

12              Just for the lawyers' benefit, based on our prior

13    conversations, I may need, before I discharge the jury -- I

14    mean, depending on -- I may need to have a conversation with

15    you lawyers to make sure it's okay.  I'm not going to do that

16    until all of you agree.  All right?

17              MR. VAN NEST:  All right.

18              (Jury enters at 10:53 a.m.)

19              THE COURT:  Please be seated.

20              Mr. Thompson --

21              FOREMAN THOMPSON:  Yes.

22              THE COURT:  -- is it true that you have a unanimous

23    verdict?

24              FOREMAN THOMPSON:  Yes, we have, Your Honor.

25              THE COURT:  Have you signed and dated the form?
```

PROCEEDINGS                                          4380

```
 1              FOREMAN THOMPSON:  Yes, I have.

 2              THE COURT:  Please hand it to the marshal.  She will

 3   hand it to me.  We will go through the same process as before.

 4              I will look at it solely as to form.  If it looks

 5   like it's in the right form, I will hand it to the clerk to

 6   read.  And then each of you need to listen carefully, to make

 7   sure that the verdict as read is your individual verdict, and

 8   then we will poll you, by that I mean one at a time, to ask

 9   that question, is it your individual verdict, just like we did

10   before.

11              Okay?  All right?

12              (Jurors respond affirmatively.)

13              THE COURT:  All right.  This will be handed to the

14   clerk to read.

15              THE CLERK:  Okay.  Thank you.

16              In the case of Oracle America, Inc. versus Google

17   Inc., Special Verdict Form.

18              Question 1:

19              "Has Oracle proven by a preponderance of the

20              evidence that Google infringes claim 11, 27,

21              29, 39, 40, or 41 of United States patent

22              number RE38,104?"

23              Answer:

24              "Claim 11:  No (Not proven).

25              "Claim 27:  No (Not proven).
```

```
 1              "Claim 29:  No (Not proven).

 2              "Claim 39:  No (Not proven).

 3              "Claim 40:  No (Not proven).

 4              "Claim 41:  No (Not proven)."

 5         Question 2:

 6              "Has Oracle proven by a preponderance of the

 7         evidence that Google infringes claim 1 or 20

 8         of United States patent number 6,061,520?

 9              "Claim 1" answer:  "No (Not Proven).

10              "Claim 20:  No (Not proven)."

11         Question 3:

12              "Has Oracle proven by clear and convincing

13         evidence that Google willfully infringed one

14         or more claim of an asserted patent?"

15         No answer.  No response.  Not applicable.

16         Signed and dated by Greg Thompson, foreperson,

17  May 23rd, 2012.

18              THE COURT:  All right.  There was no need to answer

19  Question 3 on account of the answers to 1 and 2.

20              Let's poll the jury to make sure that the verdict is

21  unanimous.

22              THE CLERK:  Yes, Your Honor.

23         Jimmy Chau, is the verdict read your verdict?

24              JUROR MR. CHAU:  Yes.

25              THE CLERK:  Thank you.
```

PROCEEDINGS                                          4382

```
 1                   Ronald Rutherford, is the verdict read your verdict?
 2           JUROR MR. RUTHERFORD:  Yes.
 3           THE CLERK:  Daniel Liu, is the verdict read your
 4  verdict?
 5           JUROR MR. LIU:  Yes.
 6           THE CLERK:  Christina Cheng, is the verdict read your
 7  verdict?
 8           JUROR MS. CHENG:  Yes.
 9           THE CLERK:  Julie Chiu, is the verdict read your
10  verdict?
11           JUROR MS. CHIU:  Yes.
12           THE CLERK:  Steven Hotvedt, is the verdict read your
13  verdict?
14           JUROR MR. HOTVEDT:  Yes.
15           THE CLERK:  Thank you.
16           Greg Thompson, is the verdict read your verdict?
17           FOREMAN THOMPSON:  Yes.
18           THE CLERK:  Patricia Pearlman, is the verdict read
19  your verdict?
20           JUROR MS. PEARLMAN:  Yes.
21           THE CLERK:  Thank you.
22           Elisabeth Hostynek, is the verdict read your verdict?
23           JUROR MS. HOSTYNEK:  Yes.
24           THE CLERK:  Okay.
25           Megan Gallo, is the verdict read your verdict?
```

1                **JUROR MS. GALLO:**  Yes.

2                **THE CLERK:**  Okay.  Your Honor, the verdict is

3    unanimous.

4                **THE COURT:**  All right.  The verdict will be entered

5    in the records of the Court.

6                We, again, thank you for your hard work in this case.

7                Now, I want you to sit right there for a moment.  I

8    need to consult with the lawyers at the sidebar as to what our

9    next step is.  So please just bear with me for a moment.  We'll

10   have a sidebar conference.

11               (The following proceedings were held at sidebar.)

12               **THE COURT:**  Under your stipulations, one of which is

13   not yet public, but does this now mean that we can discharge

14   the jury and there's no need for the jury on damages of any

15   type?  Is that correct?

16               **MR. JACOBS:**  Yes.

17               **MR. VAN NEST:**  Yes.

18               **THE COURT:**  And on those two items for which the

19   decompiled -- the rangeCheck, is that to be tried to the bench,

20   is that the way I understand it now, the damages?

21               **MR. JACOBS:**  That depends on what happens next on the

22   copyrightability --

23               **THE COURT:**  Oh, yes.

24               **MR. JACOBS:**  -- and future progress on the API

25   copying issue.

1        **MR. VAN NEST:**  But it wouldn't be tried to this jury,

2   in any event.

3        **THE COURT:**  In any event, this jury can be discharged

4   at this time?

5        **MR. VAN NEST:**  They can, yes.

6        **MR. JACOBS:**  Correct, Your Honor.

7        **THE COURT:**  So both of you agree to that, so I'm

8   going to now discharge the jury; tell them that their work is

9   done; thank them for that.

10       And then we go on to the next step, right?

11       **MR. VAN NEST:**  Yes, Your Honor, that's right.

12       Did you have in mind saying anything to them about

13  the fact that they don't have an obligation to talk to anybody?

14  I'm worried that the media is going to be descending on these

15  people.

16       **THE COURT:**  I'm going to tell them that they have a

17  right to do what they want to do, but to be very careful in

18  what they say and make sure it's accurate because it could lead

19  to an evidentiary hearing.  That's what I always say in these

20  circumstances.

21       **MR. VAN NEST:**  Would you also consider saying they

22  don't have any obligation to talk to anybody?

23       **THE COURT:**  Of course.  I always say that.

24       **MR. VAN NEST:**  Okay.  That's fine.  We think that

25  should be emphasized because they are going to be besieged by

 1  people, and I think coming from you that they have no

 2  obligation to talk to anybody --

 3          **THE COURT:**  I'll say that on the public record.  But

 4  I also want to thank them individually, as I will once I

 5  discharge them.  I don't talk about the case.  I never can do

 6  that.  But I will tell them -- I'll repeat what I just said.

 7          **MR. VAN NEST:**  Okay.

 8          **THE COURT:**  All right.

 9          **MR. VAN NEST:**  Thank you.

10          **THE COURT:**  Okay.

11          (Sidebar concluded.)

12          **THE COURT:**  All right.  You will remember when we

13  started this case that there were going to be three phases.

14  And we've now completed two of those three phases.  However,

15  because of the verdicts that have been rendered and also

16  because of certain agreements and stipulations reached between

17  the parties on certain of the items in the copyright phase, the

18  lawyers are now -- we are now in a position where there is no

19  further work for you to do in this case.  And, therefore, I am

20  in a position today to terminate your service and to discharge

21  you from any further obligations to serve as jurors in this

22  case.  So I'm sure you will be pleased to hear that.

23          First, though, before I officially discharge you, I

24  want to say a couple of things.  You will be relieved from the

25  obligation and the duty not to talk with anyone.  I've told you

```
 1  time and again not to talk with anyone.  And you are now going

 2  to be free to do that, if you wish.

 3       I will say to you that you have the absolute right to

 4  refuse to talk to anyone, including the press, including these

 5  lawyers, including anyone.

 6       What you have done in the jury room you can treat as

 7  totally private, and it is nobody else's business.  Or if you

 8  want to talk about it, you can.

 9       If you do talk about it, please be accurate because

10  if you're not accurate sometimes that leads to an evidentiary

11  hearing because one side or the other tries to do what is known

12  as impeaching the verdict.

13       And so I want you to be careful about what you say so

14  that you don't inadvertently say something inaccurate.  Or it

15  might get reported inaccurately, even if you say it accurately.

16  So be mindful that this is not -- this is something where

17  probably you're going to be besieged by members of the press or

18  the lawyers, and just be careful.  If you're going to say

19  anything at all, be accurate.  That's my best advice to you.

20       All right.  Now, I want to back up and go to what is

21  in my heart for a moment.  This has nothing to do with the

22  verdict that you have rendered because that's always up to you.

23  One thing I -- completely up to you.  Whichever way you come

24  out on the record, I respect it.  It's not my job to say it's

25  good or bad.  It is your job to make the decision.  And you've
```

1    now done that.

2           And I want to say, I haven't had a jury in a civil

3    case -- I have had them in criminal cases go longer -- but in

4    12, almost 13 years on the bench this is the longest trial,

5    civil trial, I've ever been in.  And you really -- you all have

6    been a superb jury to be here as many days and make the

7    sacrifice that you have made.

8           This great country is a great country.  And one of

9    the reasons for that is because of the sacrifice people like

10   you make, good citizens willing to come in and do this.  It's

11   an amazing process for me to watch.  And I am honored to have

12   been the judge in the case to have a jury like this.

13          So I thank you for your service on behalf of the

14   country, on behalf of the U.S. District Court.

15          Whenever you are done and you turn in your badges

16   with Dawn in a minute, I'm going to come back and give you an

17   individual shake of the hand and sendoff.  I won't talk about

18   this case because I have further work to do in this case.  I

19   can't do that.  But I can at least thank you individually for

20   your service, and then you'll be on your way.

21          There's no further need for you in this case.  I know

22   that comes as a surprise to you, probably, but your long six

23   weeks of hard work is now at an end.

24          With the thanks of the U.S. District Court, you are

25   now discharged from further service.

1          Please go back in the jury room, and I'll be in there

2   in just a few moments to catch up with you and send you on your

3   way.  Thank you.

4          **THE CLERK:**  All rise.

5          (Jury dismissed at 11:04 a.m.)

6          **THE COURT:**  All right.  Please be seated.

7          The Rule 50 motions are still pending.  I don't know

8   that we need to do anything at this point.

9          Anything more you want to take up at this point?

10          **MR. VAN NEST:**  I don't believe so, Your Honor.

11          **THE COURT:**  I expect by next week I will have a

12   ruling for you on the copyrightability issue.  I can't promise

13   you that, but that would be my rough guess.  It would be

14   sometime next week.  And then we need to have a case management

15   conference downstream over where we go next.  All right?

16          **MR. JACOBS:**  Yes, Your Honor.

17          **MR. VAN NEST:**  Yes, Your Honor.

18          **THE COURT:**  Okay.  We will be in adjournment then.

19   Thank you.

20          **MR. VAN NEST:**  Thank you, Your Honor.

21          **MR. KAMBER:**  Thank you, Your Honor.

22          (At 11:06 a.m. the proceedings were adjourned.)

23                        - - - - -

24

25

## CERTIFICATE OF REPORTER

I, KATHERINE POWELL SULLIVAN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 10-3561 WHA, **Oracle America, Inc., vs. Google, Inc.,** were reported by me, certified shorthand reporter, and was thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings at the time of filing.


_____/s/ Katherine Powell Sullivan_____

Katherine Powell Sullivan, CSR #5812, RPR, CRR
U.S. Court Reporter


Wednesday, May 23, 2012