# EXHIBIT C



**ALM Properties, Inc.**
Page printed from: *The Recorder*

Back to Article

# Alsup Goes Fishing With Wide Net

In his search for paid-off tech-law pundits, the federal judge presiding over the Googacle case has taken a bold step. What sort of haul can he expect?

Scott Graham

2012-08-10 04:04:26 PM

SAN FRANCISCO — When U.S. District Judge William Alsup ordered Oracle Corp., Google Inc. and their counsel to disclose financial relationships with any bloggers, journalists and academics who've written about their smartphone megatrial, it set off a raft of questions among technology lawyers:

Does Alsup have the power to do that? What prompted him to issue this order on his own motion? And which authors are likely to be exposed as "shills" for the technology titans?

Although the answers were still unclear as of today, some rough outlines were starting to take shape. Alsup likely does have the power to require such disclosures, though perhaps only to the extent he can show an improper attempt at influencing the court or jury. The judge may have been motivated by a newspaper's report last month on paid punditry, or a dispute over pretrial publicity in another high-profile smartphone case.

As for who might be outed as an alleged "shill," much will be determined by how broadly the parties construe Alsup's order. One prominent blogger who's covered the case already disclosed a few months ago that he is a consultant to Oracle. Oracle, meanwhile, says it reads the order to include "indirect payments" to authors. If that's correct, the order would appear to cover someone like Jonathan Band, a Washington, D.C.-based copyright expert and lobbyist for Google-backed trade associations whose 2011 book *Interfaces on Trial 2.0* is cited in Google briefs.

Both Google and Oracle have said they will comply with the order, which requires the parties to identify by Aug. 17 "all authors, journalists, commentators or bloggers who have reported or commented on any issues in this case and who have received money (other than normal subscription fees) from the party or its counsel during the pendency of this action."

Even if limited to direct payments, the order could sweep up a large number of writers who have weighed in on the case, said Santa Clara University School of Law professor Eric Goldman. The technology law expert has written about the trial on his blog, which in turn generates modest revenues via Google AdSense, so he figures he could meet Alsup's definition.

"If the parties make the disclosures fully in compliance with the order, then we're going to have a ton of false positives,"

said Goldman. He worries that "could lead to a witch hunt mentality" while Alsup takes the disclosures under review.

**THIS ISN'T OVER**

It's unclear what prompted Alsup to issue his order. Neither party appears to have filed a motion for disclosure.

"The court is concerned that the parties and/or counsel herein may have retained or paid print or Internet authors, journalists, commentators or bloggers who have and/or may publish comments on the issues in this case," Alsup wrote in the one-page order issued Aug. 7, without saying what had led to his concern.

The timing of the order also surprised observers, coming more than two months after a jury rejected claims that Google's Android operating system had infringed Java programming language patents held by Oracle, and long after Alsup's denial of Oracle's copyright claims.

"Although proceedings in this matter are almost over," Alsup acknowledged, "they are not fully over yet and, in any event, the disclosure required by this order would be of use on appeal or on any remand to make clear whether any treatise, article, commentary or analysis on the issues posed by this case are possibly influenced by financial relationships to the parties or counsel."

Veteran IP attorney Neil Smith of Ropers Majeski Kohn & Bentley speculated on a couple of possible motivations. On July 27, *San Jose Mercury News* columnist Chris O'Brien published a provocative article about the "vast shadow army of law firms, public relations specialists, trade organizations, pundits, think tanks and academics" that dominate debate over Google, both for and against.

And in an April 18 blog post, Florian Mueller of FOSS Patents, who has written prolifically about *Oracle v. Google*, disclosed that Oracle is a consulting client of his. Mueller has been sharply critical of Alsup's copyright ruling. "The appeals court will have to decide whether a sweeping denial of copyrightability is in line with statutory law and case law," he wrote May 31.

Mueller's disclosure of his paid relationship with Oracle combined with the *Mercury News* article may have prompted Alsup to wonder what other writers are being paid by the litigants, Smith speculated.

Oracle claims it welcomes Alsup's order. "Oracle has always disclosed all of its financial relationships in this matter and it is time for Google to do the same," company spokeswoman Deborah Hellinger asserted shortly after Alsup issued his order. "We read this order to also include indirect payments to entities who, in turn, made comments on behalf of Google."

Given that the jury has already been discharged, Smith and other lawyers interviewed for this article — most of whom did not want to be named — wondered if Alsup's concern is a citation in a brief to an article or treatise written by a paid author. "Most skilled trial lawyers are sensitive to the ethics involved" and disclose such ties or forgo the citation, Smith said, but "sometimes they just don't know" about the financial relationship.

Because of Alsup's explicit reference to treatises, speculation has fallen on a couple of leading copyright scholars, William Patry and David Nimmer.

Patry, who works in house at Google, has indeed been cited in the briefs — by Oracle. "For a thorough analysis of *Lotus [v. Borlund]*, *Baker [v. Seldon]*, the relationship between Sections 101 and 102 [of the Copyright Act], and the central role of originality under *Feist [Publications v. Rural Telephone Service]*, Oracle recommends an article by the treatise author William Patry, currently Google's chief copyright counsel," Oracle states in its April 3 brief regarding copyright issues, signed by Morrison & Foerster partner Michael Jacobs.

Oracle cites *Nimmer on Copyright* in the same brief. But Nimmer, a University of California law professor who is of counsel at Irell & Manella, is part of the SAP litigation team that's locked in a bitter fight with Oracle over a $1.3 billion jury verdict in a separate case. So it seems doubtful Oracle would be a client of his.

Google, meanwhile, cites Stanford law professor Paul Goldstein's *Goldstein on Copyright* in its trial brief. But Goldstein is of counsel at Morrison & Foerster — lead counsel for Oracle.

**THE INDIRECT APPROACH**

The copyright briefing does include a citation that looks as if it might meet Alsup's criteria — if Oracle's "indirect payment"

gloss is factored in. Google's April 3 copyright liability trial brief, signed by Keker & Van Nest partner Robert Van Nest, "recommends that the court consult Jonathan Band & Masanobu Katoh, *Interfaces on Trial 2.0* (MIT Press 2011)." That book "provides a comprehensive overview of domestic and foreign cases addressing interoperability," states the brief. "Chapters 1 and 2 are particularly relevant to the present case."

Band is a Washington, D.C., attorney and lobbyist who acknowledged in a 2006 article, "[Google and Fair Use](#)," that he represents trade associations that include Google in their membership. A search of a federal lobbying database indicates Band received $70,000 in fees over the past 18 months from NetCoalition, a trade association committed to "an open and consumer-oriented competitive environment." Google, Yahoo Inc. and Amazon Inc. are among its members. Band also represents the Computer & Communications Industry Association, whose members include both Google and Oracle, and he has written an *amicus curiae* brief for the Library Copyright Alliance advocating a fair use exception for Google's digitization of library books.

Band and Katoh, who is executive vice president at Intellectual Ventures, don't keep their viewpoint a secret. "Although we attempt to present contentious issues in a balanced manner, the reader should be forewarned that we are hardly objective observers" in the debate over copyright and digital technology, they write in Chapter 1 of *Interfaces on Trial 2.0*. "Rather, we have devoted significant time and energy over the past 20 years to advocating the views of developers of interoperable software."

Band worked at Morrison & Foerster for 20 years before leaving to start his own practice in 2005, so he and his work are probably familiar both to Oracle lead counsel Jacobs of MoFo and Alsup, who worked at MoFo for most of the 1980s and '90s before taking the bench.

In his 41-page order rejecting Oracle's copyright infringement claims, Alsup cited briefly to Nimmer and two other academics, but not to Band's book.

Band said in an email that his book was accepted for publication in the fall of 2009, "before Oracle completed its purchase of Sun [Microsystems] and more than a year before Oracle sued Google." He added that Google is not a direct client of his.

**IS IT CONSTITUTIONAL?**

When Alsup issued his order, the immediate reaction from some legal experts was that enforcing it could run afoul of the First Amendment. "All judges should order this," Santa Clara's Goldman tweeted, "but is it constitutional?"

Because both Google and Oracle have said they'll comply, the answer may not come in this case. But Ropers' Smith said he wouldn't be surprised if Alsup's order catches on with other jurists, such as U.S. District Judge Lucy Koh of San Jose who's been wrestling with publicity issues in the Apple/Samsung jury trial over smartphone and tablet patents.

If such orders do become common, a case could be made against them, said Sheppard Mullin Richter & Hampton partner James Chadwick.

Chadwick, who represents media and Internet companies in First Amendment and IP litigation, points to the U.S. Supreme Court ruling *Citizens United v. Federal Election Commission*, which held that corporations have a constitutional right to spend money on political messaging, and *[Perry v. Schwarzenegger](#)*, 591 F.3d. 1147, in which the Ninth Circuit ruled that compelling proponents of the Proposition 8 ban on same-sex marriage to reveal internal campaign communications would violate their associational rights.

Absent some compelling need, those rights would likely trump a judge's curiosity about how litigants might be attempting to shape public opinion, Chadwick said. On the other hand, "if a court were concerned that it or the jury had actually relied upon some treatise or article that was nominally written by a third party but that was actually written by one of the parties, I could see how that might justify disclosure,"

Other lawyers wondered about the order's potential sweep, pointing out that any number of law firms that represent one of the tech giants in other cases might have published a client alert or a blog item referring to developments in the case. Under a strict reading of Alsup's order, it could be argued such relationships must be disclosed.

One lawyer in the case has already filed his disclosure, and his response hints at a possible narrowing of the order. Farella Braun & Martel partner John Cooper, who was appointed by Alsup to represent the court's own damages expert witness, filed a statement Aug. 8 saying that neither he, his firm nor the expert had paid anyone "to publish" anything about the case.

Santa Clara's Goldman said that interpretation may not comply with the express wording of the order. "The order wants disclosure of anyone who has (1) gotten money from a party, and (2) covered the case," he said in an email. "The order does not ask for only the disclosure of people who have covered the case "because" they got money from a party.

"I would not be surprised if Oracle and Google both made the same limiting interpretation," he added. "At that point, it's up to Judge Alsup to decide if he really meant what he said."



Copyright 2012. ALM Media Properties, LLC. All rights reserved.