# EXHIBIT A

- 

- Have an account? Sign in New to Twitter? Join Today »
  - 
  - 

| Username or email | | Password | |
|---|---|---|---|

☐ Remember me  Sign in

Forgot password?
Already using Twitter via text message?

- Language:English
  - 
  - Bahasa Indonesia
  - Bahasa Melayu
  - Dansk
  - Deutsch
  - Español
  - Euskara
  - Filipino
  - Italiano
  - Magyar
  - Nederlands
  - Norsk
  - Polski
  - Português
  - Suomi
  - Svenska
  - Türkçe
  - català
  - français
  - Čeština
  - Ελληνικά
  - Русский
  - Українська мова
  - עִבְרִית
  - اردو
  - العربية
  - فارسی
  - हिन्दी
  - ภาษาไทย
  - 日本語
  - 简体中文
  - 繁體中文
  - 한국어

Search

- 

× 

[Close]

## Embed this Tweet

Add this Tweet to your website by copying the code below. <u>Learn more</u>

- <u>HTML</u>
- <u>Shortcode</u>
- <u>Link</u>

Alignment
None ⦿ Left ◯ Right ◯ Center ◯

Control position and text wrapping on the page.



**Tim Bray@timbray** 12 Aug 10

Speaking only for myself as an individual of course: Fuck Oracle.

- **Reply**
- **RetweetedRetweet**
- **Delete**
- **FavoritedFavorite**

- **575** Retweets
- **77** Favorites
- 

6:34 PM - 12 Aug 10via <u>Tweetie for Mac</u> · <u>Embed this Tweet</u>



12 Aug 10 **Tim Bray@timbray**

Speaking only for myself as an individual of course: Fuck Oracle.

**Expand Collapse**

- **Reply**
- **RetweetedRetweet**

- **Delete**
- **FavoritedFavorite**

# Don't miss any updates from Tim Bray Join Twitter today and follow what interests you!

Full name

Email

Password

Sign up

Text **follow timbray** to **40404** in <u>the United States</u>

- © 2012 Twitter
- <u>About</u>
- <u>Help</u>



## Direct messages

<u>New message</u>

×

**You don't have any messages yet.**

Direct messages are 140 characters, private, and can be sent to any user who follows you on Twitter.

Tip: you can send a message to anyone who follows you. <u>Learn more</u>

## **Direct messages** › with

×

Tweet text 

140  Send message

Are you sure you want to delete this message?

Delete message    Cancel

Tip: you can send a message to anyone who follows you. <u>Learn more</u>

## <u>Direct messages</u> › New

›



- 

Tweet text

140 [Send message]

Are you sure you want to delete this message?

[Delete message] [Cancel]

Tip: you can send a message to anyone who follows you. <u>Learn more</u>
[*Close*]

## Go to a person's profile



[*Close*]

## Retweet this to your followers?

[Cancel] [Retweet]
[*Close*]

## Are you sure you want to delete this Tweet?

[Cancel] [Delete]
[*Close*]

## Keyboard shortcuts

**Enter** Open Tweet details
**G F**   Go to user...
**?**     This menu
**J**     Next Tweet
**K**     Previous Tweet
**Space** Page down
**/**     Search

.     Load new Tweets

•

· **Add a location to your Tweets**

When you tweet with a location, Twitter stores that location. You can switch location on/off before each Tweet and always have the option to delete your location history. <u>Learn more</u>

| Turn location on | Not now |

•
•
•
• Turn off location

| Close |

## Profile summary

| Close |

## Your lists

| Close |

## Create a new list

List name

---

Description                   Under 100 characters, optional

---

Privacy
⦿ **Public** · Anyone can follow this list   ◯ **Private** · Only you can access this list

---

Save list
| Close |

| Close |

Close

## Sign up for Twitter & follow @timbray

## Sign in to Twitter

| | Full name |
| | Email |
| | Password |

Sign up

Username or email

Forgot your username?

Password

Forgot your password?

Sign in

☐ Remember me

Forgot password?
Already using Twitter via text message?

## Not on Twitter? Sign up, tune into the things you care about, and get updates as they happen.

Sign up »
Close

### Two-way (sending and receiving) short codes:

| Country | Code | For customers of |
|---|---|---|
| United States | 40404 | (any) |
| Canada | 21212 | (any) |
| United Kingdom | 86444 | Vodafone, Orange, 3, O2 |
| Brazil | 40404 | Nextel, TIM |
| Haiti | 40404 | Digicel, Voila |
| Ireland | 51210 | Vodafone, O2 |
| India | 53000 | Bharti Airtel, Videocon, Reliance |
| Indonesia | 89887 | AXIS, 3, Telkomsel, Indosat, XL Axiata |
| Italy | 4880804 | Wind |
| | 3424486444 | Vodafone |

» See SMS short codes for other countries

# EXHIBIT B

INTERNET ARCHIVE
WaybackMachine BETA

6 captures
16 Aug 10 - 15 May 11

OCT 
JAN 4 2011 
MAY 
2010   2011   2012

# Bruce Perens

# Oracle Sues Google For Infringing Java Patents

on 2010-08-13 00:24:54 UTC

Oracle has filed suit against Google, alleging that Google infringes patents on the Java Programming Language that Oracle purchased with its acquisition of Sun Microsystems. Java is the language used to implement the popular Android mobile-phone platform.

The industry standard Java language is available for free use, due to a patent grant made by Sun Microsystems before its acquisition by Oracle. It is used by many companies without payment of any royalties.

The *Java Language Specification* includes this patent grant language:

> Sun Microsystems, Inc. (SUN) hereby grants to you a fully paid, nonexclusive, nontransferable, perpetual, worldwide limited license (without the right to sublicense) under SUN's intellectual property rights that are essential to practice this specification. This license allows and is limited to the creation and distribution of clean room implementations of this specification that:
> (i) include a complete implementation of the current version of this specification without subsetting or supersetting;
> (ii) implement all the interfaces and functionality of the required packages of the Java 2 Platform, Standard Edition, as defined by SUN, without subsetting or supersetting;
> (iii) do not add any additional packages, classes, or interfaces to the java.* or javax.* packages or their subpackages;
> (iv) pass all test suites relating to the most recent published version of the specification of the Java 2 Platform, Standard Edition, that are available from SUN six (6) months prior to any beta release of the clean room implementation or upgrade thereto;
> (v) do not derive from SUN source code or binary materials; and
> (vi) do not include any SUN source code or binary materials without an appropriate and separate license

from SUN.

Given that, it's not clear what Oracle is after. Could it be that Google's Java implementation does not meet the above requirements? The text of Oracle's claim is not yet available.

Follow up: [See my next post "Oracle v. Google - Rationale Becoming More Clear.](#)

---

   

# EXHIBIT C

INTERNET ARCHIVE
Wayback Machine BETA

6 captures
16 Aug 10 - 15 May 11

OCT ◀   JAN 4 2011   MAY ▶
2010    2011    2012

# Bruce Perens

# Oracle v. Google Java Lawsuit - Rationale Becoming More Clear

on 2010-08-13 16:31:29 UTC

Oracle's Complaint is now online. It mentions a set of patents but doesn't discuss why Android would not be covered under Java patent grants previously made by Sun. However, I'm told that Android is indeed a *subset* of Java, and thus would not be covered by the grants, which insist that implementation meet a Java standard, be neither subset nor superset of Java functionality, and pass conformance tests.

Apparently, Android is missing AWT and Swing, as Google created its own user-interface toolkit. So, Android would not conform with Java Standard Edition nor Java Micro Edition, which both require AWT. Google loses Sun's patent grant through non-compliance with its requirements to follow the Java standard.

Why would Google have made technical decisions that cost it Sun's patent grant? It would have been easy enough to keep it.

I guess they weren't worried about being sued by Sun. They did share a major stockholder (Andy Bechtolsheim) with Sun, but Google probably thought they had enough patents in their portfolio to force Sun to cross-license if necessary. Would Google also be able to force Oracle into a cross-license? I suspect so.

I think future Android handset implementers will want to see a patent agreement in place or they'll want to see Google comply with the terms of the patent grant.

Java on the web doesn't seem to have the problems that Google built into Android, its users can stay within the patent grant without trouble.

   

Edit  Table of Contents



# EXHIBIT D

## Oracle-Google case shows patent system flaws

James Temple, Chronicle Columnist
Published 4:00 a.m., Wednesday, April 25, 2012

The big news out of the Oracle versus Google showdown on Monday was that one of Oracle's patents was brought back from the dead, put back into play after the U. S. Patent and Trademark Office reversed its earlier rejection.

But let's be clear: One zombie patent isn't the remarkable thing in this case. The remarkable thing is that, when the dust settles, five of the seven patents Oracle claimed that Google violated will likely be overturned because Google forced the patent office to take a second look.

Oracle filed the lawsuit in 2010, alleging Google infringed on patents and copyrights related to its Java programming language in developing the popular Android smart-phone software.

If only two of Oracle's patents hold up on review, that means the patent office got it right less than 30 percent of the time, an average we have every reason to believe is representative of the entire sector's patents. In fact, software patent holders lose nearly 90 percent of the time in litigation, Stanford law Professor Mark Lemley found in a research paper published last year.

### Invalid claims

Yet these overwhelmingly invalid patent claims have had dramatic impacts on the industry. They've allowed an entire sector of patent trolls to emerge with the sole aim of strong-arming companies into forking over licensing fees. They've forced tech giants to drop billions on legal fees or defensive patent portfolios, money that might have gone into research and development.

"It's approaching crisis levels," said James Bessen, a lecturer at Boston University School of Law and co-author of "Patent Failure." "In most industries, the patent system has become a disincentive to innovation."

Still, companies are left with little choice but to play the game and act as if all patents are legitimate. It's so expensive and time consuming to challenge them in court or through the patent office that most companies simply acquiesce to licensing fee demands. Or they buy up patents of their own in hopes of discouraging claims through a sort of mutually assured legal destruction. You sue me, I'll sue you.

Google is acquiring Motorola Mobility for $12.5 billion, a purchase largely geared to gain access to the company's trove of mobile and wireless patents. Microsoft spent more than $1 billion to buy nearly 1,000 patents from AOL. And Facebook announced plans Monday to purchase about 650 of Microsoft's newly acquired patents for $550 million. That's likely to provide ammunition in its legal battle with Yahoo, which filed a patent suit in March; Facebook responded with a countersuit several weeks later. It's one of dozens of patent cases now embroiling the online and mobile industries, as Apple, HTC, Kodak, Samsung, Motorola, LG and many others duke it out.

So how did we get here?

For starters, we have an overworked and underfunded patent office staff, said Gregory Aharonian, who performs research on behalf of companies challenging patent awards, in an earlier interview. Staff members routinely approve redundant, unoriginal or vaguely worded patents. They simply don't have the resources and motivation that a company like Google can bring to bear in digging up "prior art," or examples of the technology that precede and thus invalidate the patents.

There's a complicating factor when it comes to software patents. Since software - unlike, say, chemical compounds - can be described by different firms in completely different language, the only foolproof way for a company to ensure that it's not bumping up against existing patents is to hire attorneys to examine every one.

Since there are hundreds of thousands of software patents, with 40,000 new ones approved every year, one firm could easily spend hundreds of thousands of dollars to perform patent research on just one piece of software, said researchers Timothy Lee and Christina Mulligan in a summary of their recent paper on the tech blog Ars Technica.

"It's so difficult, in fact, that the vast majority of software developers don't even try" to perform that patent research, they wrote.

Another challenge is that the line has continually moved on what can be patented in technology, as a handful of Supreme Court decisions have applied steadily stricter standards. That has certainly nudged the system in the right direction, but it also leaves questionable patents on the books until they're individually challenged.

"There are a large number of software patents out there fueling litigation that resulted from a 10- or 15-year period when the issuance of software patents was too lax," said Tim Porter, Google's patent counsel, in an earlier interview.

But more of the industry's snarl of suits and countersuits results from an attitude shift among businesses themselves, said Colleen Chien, an assistant law professor at Santa Clara University focused on patents.

Up until the mid-1980s, tech companies had reached a sort of detente. They all knew they had unique inventions but frequently chose not to patent them or at least use their patents offensively, lest their competitors react in kind.

That all began to change as Texas Instruments and later IBM launched licensing and litigation campaigns after their core businesses stumbled. Companies stung by these licensing fees and lawsuits began to build up their portfolios and consider their own suits or licensing demands, Chien said.

In turn, the number of U.S. patent lawsuits tripled from the early 1990s to the present, according to research by Bessen and co-author Michael Meurer.

So where do we go from here?

A growing number of voices in the tech industry argue we should do away with software patents altogether, stressing that copyrights are adequate to protect and encourage innovation in the industry.

At the very least, we need a patent overhaul that goes beyond the America Invests Act passed last year. That reform handed additional money to the patent office to conduct thorough reviews and made it easier for companies to challenge issued patents, among other improvements. But it didn't address the issue at the heart of the failing patent system: The standards for technology patents.

### Other ideas

Lemley believes the courts should play a more active role by dismissing outlandish damage requests, forcing trolls to cough up attorney fees and narrowing the scope of patent claims from broad descriptions to specific explanations of how the technology works.

Bessen said Congress should tighten those standards, while significantly boosting application fees for patents, in an effort to discourage companies from seeking or holding on to frivolous patents.

"There's a cost to society of having that many patents, so there should be essentially a use tax," he said. "Many of these duplicate, garbage patents would not be renewed."

*James Temple is a San Francisco Chronicle columnist. Dot.commentary runs three times each week. Twitter: @jtemple.*
*jtemple@sfchronicle.com*

**Ads by Yahoo!**

**GTSO Smart Investment**
Rising Demand, Limited Resources - Stock Could Soar,
www.GTSOResources.com

**Could This Stock Triple?**
Why investing in water can lead to massive profits!
nycfinancialtimes.com/QWTR/

**President Lowers Mortgage**
If you owe under $729k you probably qualify for the Govt
www.MortgageRatesExperts.com

**Ads by Yahoo!**

© 2012 Hearst Communications Inc.

**HEARST** *newspapers*

# EXHIBIT E

## Google infringed Oracle copyrights, jury finds, but deals a blow to Oracle's quest for $1 billion

*By Brandon Bailey bbailey@mercurynews.com San Jose Mercury News*
*Posted:*

MercuryNews.com

SAN FRANCISCO -- A federal jury Monday delivered a messy split verdict in the trial over Google's (GOOG) popular Android mobile software, by finding that Google infringed copyrights held by tech rival Oracle (ORCL) but failing to answer a key question that Oracle needed to press its case for nearly $1 billion in damages.

The result was a blow to Oracle's quest for a share of profits in the world's leading smartphone operating system. And it put some of the most important issues of the case back in the hands of a judge to decide.

"You could say it's a setback for Oracle," said Edward Naughton, a Boston attorney who specializes in technology cases and has been following the trial closely. But he added, "The situation is still quite up in the air."

The closely watched case has pitted two of Silicon Valley's most powerful companies against each other in a rare courtroom showdown, in which the stakes are high for each side: Google, the Internet search giant, has based much of its plans for future growth on a strategy that relies on people using Android to access Google services on their smartphones and other mobile devices. Oracle, which is known for commercial software, wants to assert its rights and increase its revenue from Java, the widely used programming system that Oracle acquired when it bought Sun Microsystems two years ago.

After nearly a week of deliberation, jurors agreed that Google infringed Oracle's copyrights by copying a small amount of Java code in Android and by essentially mimicking the structure and organization of certain elements known as Application Programming Interfaces, or APIs.

Jurors also rejected some other infringement claims that were considered less important to the case. But on a key question, the jury was unable to reach a unanimous decision on Google's argument that using the APIs was permitted under the legal concept of "fair use," which allows using excerpts from a copyrighted work under limited circumstances that are beneficial to the public interest.

The API issue represents the bulk of damages that Oracle sought in the case. But since the "fair use" question is unresolved, U.S. District Judge William Alsup indicated in court that Oracle at this point may seek only a limited amount of damages -- not a share of Google's Android profits -- for nine lines of code that the jury agreed were copied from Java into two Android files.

Court order sought

Under the law, experts said, it appears Oracle could seek no more than $150,000. Oracle has

also said it would ask for a court order that could force Google to alter Android or pay a licensing fee; it was unclear how that would be affected by Monday's verdict.

Alsup, however, indicated Monday that he will consider motions from both sides that could drastically alter the case's outcome. While a Google attorney immediately moved for a mistrial on the API question -- arguing there can be no infringement if the jury did not resolve the "fair use" question -- Oracle attorneys have asked the judge to make his own determination that the "fair use" defense does not apply in the case.

And on another key point, Alsup has indicated he will make the final decision on whether APIs are protected by copyright, although he instructed the jury to assume they were, for their deliberations. That issue could have broad effect in the software industry, where APIs are widely used in a host of programs.

Second phase

The judge has not indicated when he will rule on those points. He ordered both sides to proceed Monday with the second phase of the case, which is focused on Oracle's allegations that Android also violated Java patents. The issue of damages won't be considered until a third phase of the trial.

If Alsup rules the APIs are not covered by copyright, that would hand a clear victory to Google, said Santa Clara University law professor Tyler Ochoa. But if Alsup decides that copyright applies, Ochoa said, Google may face an uphill battle in proving its "fair use" defense.

A typical example of "fair use" is quoting short excerpts in a review or scholarly article, Ochoa said, adding that the law discourages uses that undercut the value of the copyrighted work. Oracle contends Google's development of Android has essentially created a competitive alternative to Java and potentially cost Oracle some licensing fees.

Stanford law professor Mark Lemley, however, said it seems unlikely that the judge would rule against the "fair use" defense, because he would have to find that no reasonable jury would accept fair use. And in this case, the jury's impasse means at least some of the jury apparently did accept that defense.

In a statement after the verdict, a Google spokesman said, "Fair use and infringement are two sides of the same coin. The core issue is whether the APIs here are copyrightable, and that's for the court to decide. We expect to prevail on this issue and Oracle's other claims."

An Oracle spokeswoman, meanwhile, issued a statement that said: "The overwhelming evidence demonstrated that Google knew it needed a license" for using Java and that "every major commercial enterprise -- except Google -- has a license for Java."

Contact Brandon Bailey at 408-920-5022. Follow him at Twitter.com/brandonbailey.

# EXHIBIT F

View the mobile version of this page



BAY AREA

# Mixed Ruling in Oracle Google Infringement Case

by Cy Musiker | May 7, 2012 — 7:35 PM

A federal judge in San Francisco has called on two Silicon Valley heavyweights to file motions this week on whether to declare a mistrial in their billion-dollar court battle.

Yesterday a federal jury found that in developing its Android smart phone software, Google borrowed too freely from copyrighted material belonging to Oracle. But the jury deadlocked on whether that infringement is okay under what's called "fair use."

"The big questionmark," said Mark Lemley, a professor at Stanford Law School, "And the thing I think that could derail the process, is the jury's failure to come to a verdict on the fair use finding."

That copyright issue is key to Oracle's claim for close to a billion dollars in damages. The judge could still make his own ruling on that claim -- as Oracle wants him to do.

Both sides are also proceeding with the second phase of the trial -- on whether Google violated Oracle's patent rights.

# EXHIBIT G

- 
- Have an account? Sign in New to Twitter? Join Today »
  ○
  ○

| Username or email | | Password | |
|---|---|---|---|

☐ Remember me  Sign in

Forgot password?
Already using Twitter via text message?

- Language:English
  ○
  ○ Bahasa Indonesia
  ○ Bahasa Melayu
  ○ Dansk
  ○ Deutsch
  ○ Español
  ○ Euskara
  ○ Filipino
  ○ Italiano
  ○ Magyar
  ○ Nederlands
  ○ Norsk
  ○ Polski
  ○ Português
  ○ Suomi
  ○ Svenska
  ○ Türkçe
  ○ català
  ○ français
  ○ Čeština
  ○ Ελληνικά
  ○ Русский
  ○ Українська мова
  ○ עִבְרִית
  ○ اردو
  ○ العربية
  ○ فارسی
  ○ हिन्दी
  ○ ภาษาไทย
  ○ 日本語
  ○ 简体中文
  ○ 繁體中文
  ○ 한국어

Search

- 

× 

[ Close ]

## Embed this Tweet

Add this Tweet to your website by copying the code below. Learn more

- HTML
- Shortcode
- Link

Alignment
None ◯  Left ⦿  Right ◯  Center ◯

Control position and text wrapping on the page.

[ FollowFollowingUnfollowBlockedUnblockPendingCancel ]



**Mark Lemley**@**marklemley**7 May

Hard to see how **#Oracle** can win after this jury verdict; a mistrial on fair use unless the judge grants JMOL for **#Google**. **#Oraclevgoogle**

- **Reply**
- **RetweetedRetweet**
- **Delete**
- **FavoritedFavorite**

- **3** Retweets
- **1** Favorite



-

2:05 PM - 7 May 12via web · Embed this Tweet



7 May     **Mark Lemley**@**marklemley**

Hard to see how **#Oracle** can win after this jury verdict; a mistrial on fair use unless the judge grants JMOL for **#Google**. **#Oraclevgoogle**

**Expand Collapse**

- **Reply**
- **RetweetedRetweet**
- **Delete**
- **FavoritedFavorite**

# Don't miss any updates from Mark Lemley Join Twitter today and follow what interests you!

| | |
| --- | --- |
| | Full name |
| | Email |
| | Password |

Sign up

Text **follow marklemley** to **40404** in the United States

- © 2012 Twitter
- About
- Help



## Direct messages

New message
×

**You don't have any messages yet.**

Direct messages are 140 characters, private, and can be sent to any user who follows you on Twitter.

Tip: you can send a message to anyone who follows you. Learn more

## **Direct messages** › with

×

Tweet text 

140  Send message

Are you sure you want to delete this message?

Delete message   Cancel

Tip: you can send a message to anyone who follows you. Learn more

## Direct messages › New

›



Tweet text

140  Send message

Are you sure you want to delete this message?

Delete message   Cancel

Tip: you can send a message to anyone who follows you. Learn more

Close

## Go to a person's profile

Close

## Retweet this to your followers?

Cancel   Retweet

Close

## Are you sure you want to delete this Tweet?

Cancel   Delete

Close

## Keyboard shortcuts

**Enter** Open Tweet details
**G F**   Go to user...
**?**     This menu
**J**     Next Tweet
**K**     Previous Tweet
**Space** Page down

/       Search
.       Load new Tweets

- 

- ## Add a location to your Tweets

    When you tweet with a location, Twitter stores that location. You can switch location on/off before each Tweet and always have the option to delete your location history. Learn more

    [ Turn location on ]   [ Not now ]

- 
- [                                    ]
- 
- Turn off location

[ Close ]

## Profile summary



[ Close ]

## Your lists

[ Close ]

## Create a new list

List name  [                                    ]

Description  [                          ] Under 100 characters, optional

Privacy
◉ **Public** · Anyone can follow this list  ○ **Private** · Only you can access this list

Save list
[ Close ]



[ Close ]



Close

## Sign up for Twitter & follow @marklemley

## Sign in to Twitter

| | Full name |
| | Email |
| | Password |

Sign up

Username or email [                    ]

Forgot your username?

Password [                    ]

Forgot your password?

Sign in

☐ Remember me

Forgot password?
Already using Twitter via text message?

## Not on Twitter? Sign up, tune into the things you care about, and get updates as they happen.

Sign up »

Close

## Two-way (sending and receiving) short codes:

| Country | Code | For customers of |
|---|---|---|
| United States | 40404 | (any) |
| Canada | 21212 | (any) |
| United Kingdom | 86444 | Vodafone, Orange, 3, O2 |
| Brazil | 40404 | Nextel, TIM |
| Haiti | 40404 | Digicel, Voila |
| Ireland | 51210 | Vodafone, O2 |
| India | 53000 | Bharti Airtel, Videocon, Reliance |
| Indonesia | 89887 | AXIS, 3, Telkomsel, Indosat, XL Axiata |
| Italy | 4880804 | Wind |
| | 3424486444 | Vodafone |

» See SMS short codes for other countries

# EXHIBIT H

- 
- Have an account? Sign in New to Twitter? Join Today »
  - 
  - 

    | Username or email | | Password | |
    |---|---|---|---|
    | ☐ Remember me  Sign in | | | |

    Forgot password?
    Already using Twitter via text message?

- Language: English
  - 
  - Bahasa Indonesia
  - Bahasa Melayu
  - Dansk
  - Deutsch
  - Español
  - Euskara
  - Filipino
  - Italiano
  - Magyar
  - Nederlands
  - Norsk
  - Polski
  - Português
  - Suomi
  - Svenska
  - Türkçe
  - català
  - français
  - Čeština
  - Ελληνικά
  - Русский
  - Українська мова
  - עברית
  - اردو
  - العربية
  - فارسی
  - हिन्दी
  - ภาษาไทย
  - 日本語
  - 简体中文
  - 繁體中文
  - 한국어

Search

- •

× 

Close

## Embed this Tweet

Add this Tweet to your website by copying the code below. Learn more

- HTML
- Shortcode
- Link

Alignment
None ⦿ Left ○ Right ○ Center ○

Control position and text wrapping on the page.

FollowFollowingUnfollowBlockedUnblockPendingCancel

 **Mark Summerfield**@patentology 23 May

**#Oracle** v **#Google** foreman reveals that jury was deadlocked 9-3 in favour of Google on **#copyright** fair use http://www.theverge.com/2012/5/23/3039284/oracle-google-jury-deadlocked-favor-google-fair-use … via **@verge**

Retweeted by **Mark Lemley**

- **Reply**
- **RetweetedRetweet**
- **Delete**
- **FavoritedFavorite**

3:43 PM - 23 May 12via Tweet Button · Embed this Tweet

23 May  **Mark Summerfield**@patentology

**#Oracle** v **#Google** foreman reveals that jury was deadlocked 9-3 in favour of Google on **#copyright** fair use http://www.theverge.com/2012/5/23/3039284/oracle-google-jury-deadlocked-favor-google-fair-use … via **@verge**

Retweeted by **Mark Lemley**
**Expand Collapse**

- **Reply**

- **RetweetedRetweet**
- **Delete**
- **FavoritedFavorite**

# Don't miss any updates from Mark Lemley Join Twitter today and follow what interests you!



Text **follow marklemley** to **40404** in the United States

- © 2012 Twitter
- About
- Help

## Direct messages

New message
×

**You don't have any messages yet.**

Direct messages are 140 characters, private, and can be sent to any user who follows you on Twitter.

Tip: you can send a message to anyone who follows you. Learn more

## Direct messages › with

×



Tweet text

140 Send message

Are you sure you want to delete this message?

Delete message   Cancel

Tip: you can send a message to anyone who follows you. Learn more

## Direct messages › New

›





Tweet text

140   Send message

Are you sure you want to delete this message?

Delete message   Cancel

Tip: you can send a message to anyone who follows you. Learn more

Close

## Go to a person's profile



Close

## Retweet this to your followers?

Cancel   Retweet

Close

## Are you sure you want to delete this Tweet?

Cancel   Delete

Close

## Keyboard shortcuts

**Enter** Open Tweet details
**G F**   Go to user...
**?**     This menu
**J**     Next Tweet
**K**     Previous Tweet
**Space** Page down

/    Search
.    Load new Tweets

-

· **Add a location to your Tweets**

When you tweet with a location, Twitter stores that location. You can switch location on/off before each Tweet and always have the option to delete your location history. Learn more

[ Turn location on ]   [ Not now ]

-
-
-
- Turn off location

[ Close ]

## Profile summary

[ Close ]

## Your lists

[ Close ]

## Create a new list

List name [                    ]

Description [                    ] Under 100 characters, optional

Privacy
⦿ **Public** · Anyone can follow this list  ◯ **Private** · Only you can access this list

Save list
[ Close ]

[ Close ]



Close

## Sign up for Twitter & follow @marklemley

## Sign in to Twitter

Full name

Email

Password

Sign up

Username or email

Forgot your username?

Password

Forgot your password?

Sign in

☐ Remember me

Forgot password?
Already using Twitter via text message?

## Not on Twitter? Sign up, tune into the things you care about, and get updates as they happen.

Sign up »

Close

## Two-way (sending and receiving) short codes:

| Country | Code | For customers of |
|---|---|---|
| United States | 40404 | (any) |
| Canada | 21212 | (any) |
| United Kingdom | 86444 | Vodafone, Orange, 3, O2 |
| Brazil | 40404 | Nextel, TIM |
| Haiti | 40404 | Digicel, Voila |
| Ireland | 51210 | Vodafone, O2 |
| India | 53000 | Bharti Airtel, Videocon, Reliance |
| Indonesia | 89887 | AXIS, 3, Telkomsel, Indosat, XL Axiata |
| Italy | 4880804 | Wind |
| | 3424486444 | Vodafone |

» See SMS short codes for other countries

# EXHIBIT I



<u>Nighthawks</u> ①②③④
8 Fallacies  bio  Standards

It was the
3rd party JavaScript ⌄
on  IE7 in Japan ⌄
with
slow page load times ⌄

Stop guessing,
we'll show you.

Get Started
Now!

◎ New Relic.

**Books Worth Reading**

Whole Earth
Discipline: An ...
Stewart Brand (Ha...
**$2.57**
*Scary and hopeful at the same
time. Not at all a gr...*

THE
MASTER
SWITCH
TIM WU
The Master Switch:
The Rise and Fall of
Information Em...
Tim Wu (Hardcov...
**$16.90**

Newton's Clock: Chaos



# On a New Road

**All**    <u>Java</u>

« <u>Cynical chuckles</u> | <u>Main</u> | <u>Quite the firestorm</u> »

## The shit finally hits the fan....                    Thursday August 12, 2010

Oracle finally <u>filed a patent lawsuit against Google</u>. Not a big surprise.
During the integration meetings between Sun and Oracle where we
were being grilled about the patent situation between Sun and
Google, we could see the Oracle lawyer's eyes sparkle. Filing patent
suits was never in Sun's genetic code. Alas....



I hope to avoid getting dragged into the fray: they only picked one of
my patents (<u>RE38,104</u>) to sue over.

<u>Comments[126]</u>                                                    <u>Share</u>

### C O M M E N T S :

Oh crap. So you knew bits of this when you left Oracle right after the acquisition? We can feel with
you. It is a pity to see what Oracle does with this great language. Java definitely helped the
adoption of Android for many developers. I hope this somehow turns out to be a bad nightmare
and just wears off after opening my eyes :(

Posted by **atla** on August 12, 2010 at 11:56 PM PDT <u>#</u>

It's all about money...

Posted by **<u>Adrian</u>** on August 13, 2010 at 12:01 AM PDT <u>#</u>

With Oracle, everything is always about money. It is the only metric they know.

Posted by **James Gosling** on August 13, 2010 at 12:09 AM PDT <u>#</u>

I'd just like asking you about this issue because read your last entry about LPOD. Why did you
sold sun to it ?

Posted by **meverdadero** on August 13, 2010 at 12:10 AM PDT <u>#</u>

Begun the clone wars have

Posted by **Sakuraba** on August 13, 2010 at 12:34 AM PDT <u>#</u>

With recent Oracle action, Java programming language will be neglected by young and smart
programmers. Google and Android does have impact to Java popularity recently. With this suit,
other companies or communities with great ideas and expertise will stop using Java. Sigh...

Posted by **hadrian** on August 13, 2010 at 12:35 AM PDT <u>#</u>

To be fair, what would you do if you where Oracle ? If this does end up bad, as in no more java for



in the Solar System
Ivars Peterson (P...
**$0.02**



Four Fish: The Future
of the Last Wild Food
Paul Greenberg (H...
**$16.61**



Freakonomics: A
Rogue Economist
Explores the Hidden
Side of ....
Steven D. Levitt, ...
**$10.19**

**1** 2 >
amazon.com
Get Widget          Privacy

**RECENT**

Working crazy hard
More job postings!
Looking for a senior electrical engineer
Meltdown Averted
OvG: It's finally (almost) over.
ForgeRock is hiring
Comments around Oracle v Google
My attitude on Oracle v Google
Oracle v Google
Piccard vs. the Sea Monster
So close!
Almost to Hawaii
Having an unreasonable amount of fun
They're off!
Surfing big waves
They're on their way!
Cool robot video
Steve Jobs on Hewlett Packard
I've run out of adjectives
Too Soon



Thanks, Wikipedia.

**CALENDAR**

« August 2012

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| --- | --- | --- | --- | --- | --- | --- |
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | **21** | **22** | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |  |

google, it'd make other open source projects kick into gear . Plus, google isn't what it started out being and neither is Sun

Posted by **urssur** on August 13, 2010 at 12:37 AM PDT #

After recently buying a book, I am now reconsidering if I should get my SJCP.. . I liked Sun, but stuff like this gives me no reason to like Oracle. It wouldn't surprise me if Oracle ramped up the cost for certification in the future. I never imagined that this could happen, but laughably, Microsoft is now a more ethical company than Sun. I feel sorry for all you blokes who worked for Sun in the past, and for those who still do. It really is time for the community to pull together all their resources and work towards completely obsoleting Oracle's products.

Posted by **Andy** on August 13, 2010 at 12:44 AM PDT #

This is worth checking out as well: http://www.theregister.co.uk/2010/08/13/oracle_sues_google. Oracle ought to thank Google for keeping the Java language relevant, instead of trying to stifle very welcome innovation. (The Davlik VM, designed to allow multiple instances efficiently, is surely what the JVM should have been.) Given that Sun didn't complain, and that they waited until now, I hope it gets thrown out.

Posted by **Rob Dickens** on August 13, 2010 at 01:35 AM PDT #

It's nothing to be ashamed of. Not a fault of Sun, not yours. Oracle and idea of patenting software is to blame. And of course the lawyers ;)

Posted by **Hubert ??picki** on August 13, 2010 at 01:43 AM PDT #

Surely the shits hit the java fans those days. This is another proof of the crap of software patents. Fortunately, they are not recognized in Europe (yet). Mobiles are THE platform where new dev will happen and make our industry go on. A new cycle has already started. As said @didierGirard , this certainly endangers java in the cloud too. Hell, it took some much years to have a cool free java server hosting, hope it will not be shut down too. Now I want to win the lottery and not bother any more about I.T Jerome BATON

Posted by **Wadael** on August 13, 2010 at 01:52 AM PDT #

No one can stop the evolution! Oracle like a child who got a new game and dunno what to do with it, after all Google also has lawyers :)

Posted by Mina R Waheeb on August 13, 2010 at 02:29 AM PDT #

FIGHT FIGHT FIGHT FIGHT FIGHT!!!!!!

Posted by Radin on August 13, 2010 at 02:31 AM PDT #

In other news, I'm delighted that there are plans afoot for OpenSolaris to become a true community effort. Even if it means that the pace of development is massively slowed down, it beats being beholden to this company that seemingly does not know how to innovate, only to acquire. I for one refuse to have inferior alternatives forced upon me by Oracle.

Posted by Dave on August 13, 2010 at 02:44 AM PDT #

To be fair, that patent should never have been granted, especially not as late in the comp sci game as 1992.

Posted by Maarten on August 13, 2010 at 02:45 AM PDT #

Happy now that I stood by my moral and ethical code and let my Sun Partner agreement terminate and refuse to sign up with Oracle. Not a company I want to be associated with.

Posted by Sean Clarke on August 13, 2010 at 02:49 AM PDT #

James did you get any major offers from major companies?

Posted by Anthonio on August 13, 2010 at 02:59 AM PDT #

Happy that I didn't sign up for JavaOne this year. James, hope to see you at JAOO in October! Can I have a picture taken with you? ;)

## Today

**All** | Java

## NAVIGATION

Nighthacks
Weblog
Login

Posted by **sys** on August 13, 2010 at 03:27 AM PDT #

I think that Oracle is not good, but Google is also worst. I develop on Android since they released their first crappy SDK and I really hate the google policy...

Posted by **Davide Perini** on August 13, 2010 at 03:34 AM PDT #

If filing patent suits was never in Sun's DNA, why did they bother applying for patents in the first place?

Posted by **jfruh** on August 13, 2010 at 03:34 AM PDT #

@ jfruh - to use them in defense only, for example the ZFS - NetApp lawsuit.

Posted by **Dave** on August 13, 2010 at 03:46 AM PDT #

I'm very worried about the Free Java ecosystem now, and all the Runtimes that use the OpenJDK (and/or the GNU Classpath and Harmony) codebase. Are all of us going to be sued any time soon?

Posted by **Mario Torre** on August 13, 2010 at 03:50 AM PDT #

Trust me, this will not be the end of lawsuit again Google by Oracle. As long as they continue using Java, there's bound to be more on the way.

Posted by **Helen Neely** on August 13, 2010 at 03:53 AM PDT #

I am no backer of softwarepatents. But Google did screw with the very spirit if Java; compatibility. Google willfully created Dalvik, an incompatible Java run-time, in order to weasel out of compatibility tests and license fees. Google did this in order to be able to cherry pick the good stuff from Java (developer mind-share, existing frameworks and great tools) without having to care about compatibility or costs. Just try getting any AOP or mocking tools to run on Dalvik. Oracle might have done it for the wrong reasons, but Google should not be surprised.

Posted by **Fredrik Olsson** on August 13, 2010 at 04:13 AM PDT #

I'm very worried about the Free Java ecosystem now, and all the Runtimes that use the OpenJDK (and/or the GNU Classpath and Harmony) codebase. Are all of us going to be sued any time soon?

Posted by **Mario Torre** on August 13, 2010 at 05:14 AM PDT #

I think Oracle is slowly killing their community. They screwed up OpenSolaris, they now going to screw up all over the places other open software. But they will fail. Then regret big time.

Posted by **BM** on August 13, 2010 at 05:22 AM PDT #

@Helen, but Dalvik never claimed to be a JVM and Google have taken pains (probably for legal reasons) to say exactly that. Programmers might happen to program using Java language but the end result is something which is expressly not Java. I expect Google didn't use the JVM boils down to numerous factors including licensing, money, performance, inability / refusal by Sun / Oracle to provide required features plus a desire to &quot;own&quot; the platform or at least ensure Sun didn't have fingers all over it. At this stage I think Google probably made the right decision for themselves and Android. I love Java but I haven't seen a decent implementation in a phone yet. My owning feeling is this lawsuit is just a land grab and I'm not surprised if Google file a countersuit based on a raft of patents that Sun / Oracle have infringed. Eventually matters will be settled the way they usually are with a cross licensing agreement and some money under the table.

Posted by **Adam Lock** on August 13, 2010 at 05:23 AM PDT #

What Oracle does not get is that also programming languages live and die by their reputations. Executing actions like this will seriously damage the Java's future as widely used language/platform. I also had been considering getting SJCP this fall. I am now regrettably feeling quite a bit worse about that idea. Might use my time better focusing on something else, for instance C++ or Python.

Posted by **mehmoomoo** on August 13, 2010 at 05:50 AM PDT #

I think most people who may program in Java won't notice any consequences and thus won't change their behavior.

Posted by **yman** on August 13, 2010 at 06:01 AM PDT #

ESR put up a blog post (http://esr.ibiblio.org/?p=2443) suggesting that this suit was done by proxy for Apple. Do you think this is plausible?

Posted by **Ronald Lovejoy** on August 13, 2010 at 06:43 AM PDT #

Bye Java. Hello Html5 and Silverlight. It was a nice time.

Posted by **J** on August 13, 2010 at 06:51 AM PDT #

[Trackback] O James Gosling, que não tem poupado críticas à Oracle desde que saiu da Sun (em seu penúltimo post

Posted by **Confluence: André Costa** on August 13, 2010 at 06:53 AM PDT #

<quote>With Oracle, everything is always about money. It is the only metric they know. </quote> And with Sun it was the one metric they didn't know, and look where it got them.

Posted by **Mark** on August 13, 2010 at 06:55 AM PDT #

Yet more evidence that software should not be patentable.

Posted by **TW Andrews** on August 13, 2010 at 06:56 AM PDT #

[Trackback] yeah! this story has entered the popular today section on popurls.com

Posted by **=== popurls.com === popular today** on August 13, 2010 at 07:20 AM PDT #

Is it time to start talking about intellectual property tax yet? CA could use the dough. :-)

Posted by **Charles Durrett** on August 13, 2010 at 07:24 AM PDT #

Oracle is beginning to behave like an evil looking glass, I hope this is not a portend of a future in which we all get held to ransom by an organization which refuses to cooperate with a community of users? Its times like these that I am amazed the Sun ever shone, not too worried though, because Open Source will prevail and the world will be free again. Out of the darkness a new champion will emerge. Just don't expect it to be any of the dominant players.

Posted by **ubuntupunk** on August 13, 2010 at 07:25 AM PDT #

I guess Oracle became jealous of Apple for displacing them as the most evil empire in IT and wants their position back :)

Posted by **Daniel Serodio** on August 13, 2010 at 07:26 AM PDT #

James - you should take a job at Google! Oracle just made a lot of Java developers their enemy. Sad.

Posted by **Peter Frandsen** on August 13, 2010 at 07:41 AM PDT #

I'm glad to see the start of slow death of java.

Posted by **Knodi** on August 13, 2010 at 07:47 AM PDT #

This is just bluster and protecting trademarks etc. There is no way that this will fly. In any case, Google problem have a truck load of patents that they can swap.

Posted by **John** on August 13, 2010 at 07:54 AM PDT #

I think it is time to abolish software patents

Posted by **Gerd** on August 13, 2010 at 08:01 AM PDT #

Should inspire some good Duke scenes.

Posted by **Barry Kreiser** on August 13, 2010 at 09:07 AM PDT #

@James grow some balls please.

Posted by **James Gosling** on August 13, 2010 at 09:14 AM PDT #

Oracle is right. Google is wrong. Google SCREWED with Java big time. Google took Java, compiled Java code into Java bytecode, then translated that into Dalvik bytecode to run on the Dalvik virtual machine. Then Google avoided calling its language Java. Thus Google avoided having to license Java IP from Sun. Google created a work-around for Java Mobile Edition (which is NOT GPL'd). Google screwed Java and Sun. And now Google is going to pay Oracle for its sins. Sure, Google has lawyers. But Oracle has lawyers too and Oracle is better at suing others than Google has been. Oracle is the second largest software company in the world - second only to Microsoft. It makes lots of money. And it plays to big business. Believe it when it sues Google.

Posted by **James Katt** on August 13, 2010 at 09:21 AM PDT #

I guess everyone is right, Sun never would have done this. Funny, though, Sun basically went out of business. I guess Darwin wins when your genetic code kills you? Sun's policies, real winners across the board.

Posted by **ahamilton** on August 13, 2010 at 09:32 AM PDT #

using cheap tricks to avoid paying license worked well with Sun, that went belly up for that reason. Oracle lawsuit merely brings normality to an unfair situation relative to honest Java licensees.

Posted by **db admin** on August 13, 2010 at 11:40 AM PDT #

Now Nokia laughs at the criticism its not using Android..Go MeeGo

Posted by **Boffa** on August 13, 2010 at 03:55 PM PDT #

I see it purely as a means to an end (they are probably already in talks). JavaFX and other new and old Oracle tech on Android (the fastest growing OS on the planet, period). Watch out for the happy happy joy joy announcements.

Posted by **tahubbard** on August 13, 2010 at 04:00 PM PDT #

Since the first days of last year, I was thinking: What will be the &quot;gain&quot; for the en user of JAVA RTE and the community with such &laquo;fussion&raquo;? Now we are having the answers!

Posted by **Galo E. Villarán M.** on August 13, 2010 at 04:00 PM PDT #

So Larry is pissed off about Mark Hurd being forced out. He calls his mate, Steve Jobs : &quot;I'm in the mood of kicking somebody's ass&quot;. Steve Jobs: &quot;You know, we have this issue of Android growing faster and iPhone&quot;. :-)

Posted by **alphageek** on August 13, 2010 at 04:41 PM PDT #

Reminds me of the SCO vs. Linux lawsuit. Lots of attention, 7 or so years of debating, no outcome and certainly no impact for the end-users (after all, nobody seriously wants to lose those that bring the money).

Posted by **Bachi** on August 13, 2010 at 04:52 PM PDT #

Is this just an attack on Java usage or is this an attack on JVM usage? The difference to me, as a scala user, is immense. It looks like they are going after the VM (Dalvik). Neither is acceptable but, since everyone else is trying to assess their culpability here, this could help me to decide if I should be sticking with the JVM (I likey HotSpot and the threading model) or shift to something else.

Posted by **dave** on August 13, 2010 at 05:00 PM PDT #

This lawsuit will only bring oracle down in the long run ! Thank heavens no one can claim c++ !!

Posted by **Samson Koshy** on August 13, 2010 at 05:01 PM PDT #

This is a systemic problem of the USPTO which will end up killing innovation and hurting the consumer and free markets, see Kedrosky and Feld regarding the Supreme Court's recent lost opportunity (Bilski v. Kappos): http://tinyurl.com/336c3t2

Posted by **B** on August 13, 2010 at 05:10 PM PDT #

I guess I don't understand most of the posts here. Everything being done by Oracle is legal and within their right. A reasonable analogy is that you build your home in a flood plain. When the river crests and you have shit in your basement, you can only blame you. Java was a Sun thing from the beginning and nothing is ever free. When you look at your Microsofts, Apples, Nokias, etc, give them credit for building their houses out of brick on the top of a mountain.

Posted by **Anonymous Coward** on August 13, 2010 at 05:17 PM PDT #

Java has done many damages to the programming as a whole and the programming comunity. To programming, since all the open source collectivity efforts thrown behind a language that is no longer free could have been used to create a better C++ or a new patent-free language altogether To the programming community because helped create a zillion of under paid javoids that pretend to know programming. Disdain and disgust, I saw this coming and I'm glad of it.

Posted by **Roberto** on August 13, 2010 at 05:18 PM PDT #

I wonder if this has anything to do with Mark Hurd's friendship with Larry? Hurd before he was fired from HP just bought Palm WebOS. Palm WebOS is Linux with a custom user interface just like Android is. The legal action would have started before Hurd's departure from HP and can only help WebOS.

Posted by **sys2** on August 13, 2010 at 05:48 PM PDT #

I never liked the Java version of App Engine. The Python version scales better and is less complicated. That said Java has paid the majority of the bills in my career.

Posted by **Nick Bauman** on August 13, 2010 at 06:36 PM PDT #

James, it's sad to see you side with Oracle on this one. You state: &quot;Oracle is right. Google is wrong.&quot; - you sound like George Bush and the axis of evil!No where have you given any hat tip to the millions of developers who write code in Java to help people. You were great for striving to get people off of the Microsoft choke hold with 'write once run anywhere' and not having to worry about garbage collection, etc. But Google is doing the world a tremendous favor with Android that Sun didn't have the ability to do. Providing a viable alternative to the Apple mobile computing jailhouse that is iOS. The patents cited are a joke, and don't represent much in the way of inventiveness. &quot;Method And Apparatus For Preprocessing And Packaging Class Files&quot; - 5,966,702 &quot;Controlling Access To A Resource&quot; - 6,192,476. Is this kind of like a parent putting a cookie jar on the top shelf... I mean common! (post cont'd below)

Posted by **satori singularity** on August 13, 2010 at 07:07 PM PDT #

(cont'd) These are not that inventive, and don't warrant side swiping a company that is trying to bring freedom to mobile computing. The potential benefits to having a smart phone ecosystem that developers can actually develop the next wave of software that helps the whole world. The main thing Google is doing is leveraging the 6.5 million Java developers, that invested their own time to participate in the Java ecosystem. James, I have spent my entire career working in Java, but I'm seriously wanting to bail ship for the FOSS promise. You saw the sparkle in the Lawyers eyes when they grilled you over the patent issues with Sun and Google. Was that guy dreaming of a better world for all, or wondering if his legal fees would pay for a bigger hummer than his neighbor has. I salute Larry for making a 95% donation of his damn near trillion dollar fortune...but if he really wants to help the world, fire his legal team and get down to the business of competing on merit.

Posted by **satori singularity** on August 13, 2010 at 07:09 PM PDT #

@satori singularity, I think the post you're referring to is posted by another James.

Posted by **satrac** on August 13, 2010 at 07:31 PM PDT #

Considering Sun's goals of protecting JAVA and their win over Microsoft, what was Google thinking? They were the exception because their do no evil mantra? Very irresponsible decision on Google's part. Now Oracle will charge a license fee on every Android phone. It's Google's own immaturity and maybe arrogance that caused this.

Posted by **Singer** on August 13, 2010 at 09:28 PM PDT #

Hmm - unfortunate though this is for Java, this could eventually be a big boost for Go.

Posted by **Joe Beets** on August 13, 2010 at 10:07 PM PDT #

What does this mean? Will all open source projects be shut down? E.g. eclipse, hibernate, etc.?

Posted by **Gautam** on August 13, 2010 at 10:47 PM PDT #

This is pretty bad. I feel like I'd be just as well off going with C# at this point.

Posted by **Julian** on August 13, 2010 at 10:56 PM PDT #

Sigh. If Google is using IP Oracle bought from Sun, then Google should pay to use it or stop using it. The courts will decide. (Joe Beets does deserve some sort of award for the silliest comment. Yup, Joe, it's the end of the world.)

Posted by **Bob Foster** on August 14, 2010 at 12:31 AM PDT #

When Dalvik was announced I remember laughing out loud at the barefaced cheek of what Google did. Credit where it's due; nobody can deny that Android beats the hell out of any J2ME/Blackberry/etc phone ever produced or even vaguely promised (JavaFX anyone?) The open availability of such a quality embedded OS is a huge benefit to... well, everyone except Sun. Still, screw you, Larry Ellison. You have enough money to not be coming round here causing trouble.

Posted by **Rich Aplin** on August 14, 2010 at 01:40 AM PDT #

i belive this case only happen for america's company, which america implement software patent. i am not software patent fans, and our country is not support this.

Posted by **Frans Thamura** on August 14, 2010 at 02:21 AM PDT #

Considering how google responded to Sun's people which were concerned about Dalvik at the time (and the fact that they probably discovered it by he medias like everyone else), I think we can safely say that google kind of stole what they wanted from Java without even thanking Sun. They are in this situation because of their own arrogance. They ought to be in this mess now. If they had thought about working with Sun at the time rather than acting like they did, they would be safe now.

Posted by **Hervé Girod** on August 14, 2010 at 02:23 AM PDT #

If you look at the list of patents it seems natural for Oracle to sue Microsoft over .NET technologies. All Sun's patents use Java just as illustration, and the claims apply to .NET as well.

Posted by **Yaroslav** on August 14, 2010 at 02:40 AM PDT #

As sad as it is, I think it just proves how Software patents will always be used to sue, sooner or later. Stuff like &quot;Genetic Code&quot; isn't worth anything. Sad to see how the Sun goes down, but when Oracle bought Sun it was clear that this would happen. Sad for all the good people who worked hard on some really great technology.

Posted by **Michael Stum** on August 14, 2010 at 02:49 AM PDT #

@Yaroslav -- Sun and Microsoft settled their lawsuit; it is possible that this included cross-licensing of patents such as these and others owned by MS that Sun could have been infringing on.

Posted by **hoopskier** on August 14, 2010 at 02:55 AM PDT #

Acutally, @Yaroslav, amend my response... looks like Sun used alleged patent infringements in .NET to ward off MS alleging OpenOffice infringments:

http://jonathanischwartz.wordpress.com/2010/03/09/good-artists-copy-great-artists-steal/

Posted by **hoopskier** on August 14, 2010 at 03:03 AM PDT #

well, the fact is .. all these just made developers hate Oracle more.. life would be better for all, if google just acquired sun from the start. in fact, i hope Oracle start thinking the benefit of more people and existing developers will collaborate with Googlers. They really push Java adoption alot. Suing will just benefit the &quot;lawyers&quot; either win or lose, and spoilt Oracle reputation in long run.. man... I love Java, cant imagine would migrate to other language just because of this.. If more companies are like Google, Spring (Vmware).. Java will continue to innovate and improve with time.. for now and forever..... think from bigger picture

Posted by **cometta** on August 14, 2010 at 03:15 AM PDT #

Oracle turns out to be the biggest nemesis of OpenSource, acquiring popular open source companies just to destroy them. They should get ouragious response from anyone that believes in open source. Hopefully this patent shit never hits Europe.

Posted by **Joe** on August 14, 2010 at 04:47 AM PDT #

This is a very expected move from Oracle, I wonder how far they will get. I am reconsidering continuing with Java, as I am thinking that it is no more secure, maybe something like Python and other &quot;free&quot; programming languages are much more safe :)

Posted by **Amanj** on August 14, 2010 at 05:14 AM PDT #

I think it's time that good guys comes together and create new JAVA. James, you ought to lead this otherwise, whole community die.

Posted by **Bhupendra Shah** on August 14, 2010 at 05:20 AM PDT #

Its so sad that Oracle is attacking Google over something that benefits the community in general. Google managed to create what Sun could not create. A full platform that sat on top of a well-designed stack that was fit for purpose, memory efficient, and extensible across multiple devices. Sun and Oracle were not competitors. This was not in competition with J2ME as J2ME development had essentially stopped. Android carried the Java torch forward and donated the code to the community in the name of Openness which benefits everyone equally (not especially Google). Software patents need to be sorted out. Sometimes there is only one way to invent the wheel and argueably obvious given a short amount of time. A company swooping in and buying a few bits of paper there were intended for defense then blackmailing other companies with it, not cool. Blackmail is a crime but software patent blackmail, that's food for the lawyers.

Posted by **Chris A** on August 14, 2010 at 05:39 AM PDT #

@hoopskier: the patents which Oracle used against Google were filed *after* Microsoft/Sun in 2001 settlement, i.e. .NET is still vulnerable (I'll have to research the OpenOffice case). This is very important, patents are not Java specific, Java is used just as an illustration. Moreover, iPhone's iOS uses several core ideas which are covered by these parents (and so does pretty much every other modern OS including MeeGo). In the end I'd expect Google lawyers will find prior art and thus dismiss all 6 patents.

Posted by **Yaroslav** on August 14, 2010 at 06:01 AM PDT #

Suddenly the Parrot VM is looking quite attractive. Maybe Perl 6, too... Java, on the other hand, is starting to look like C#, Objective C, and all the other languages behind paywalls -- mad, bad, and dangerous to know.

Posted by **András Salamon** on August 14, 2010 at 07:47 AM PDT #

I don't know if you read the news that OpenSolaris is officially dead. -_- JavaME is dead, JavaFX who know, I'm going mad, I can't belive that my loved &quot;white company (Sun)&quot; has been kicked off in this way...

Posted by **Davide Perini** on August 14, 2010 at 08:30 AM PDT #

Wow! I cannot say I am surprised. Whatever happens between Oracle and Google, I do hope

some good will come out of it. Google has done a lot for Java, Oracle has to respect that. I also respect that Oracle is the new steward of Java. My solutions are: Cross licensing agreement, Oracle can join the Open Handset Alliance, Google can join the Java Community Process, fix the infringment and encumberences on the Dalvik VM, if proven or agreed. Everyone play nice and fair. If this is the desired or anticipated outcome, then I think Java is seriously crippled and weakened as future prospect. The next 12 months are going to stellar.

Posted by **Peter Pilgrim** on August 14, 2010 at 08:52 AM PDT #

This is a terribly sad news and so are similar idiocy software patents had brought - that have been great topics during lunch and dinner these days. Know what, Java API Doc was always ugly looking (the blue/purple color scheme) to me, but I miss it these days. Whatever we see now (Oracle's) is worse. I like my Sun's Java certifications but I don't see a good reason to pursue my last one to associate myself with detestable Oracle.

Posted by **Yuen-Chi Lian** on August 14, 2010 at 09:16 AM PDT #

Everyone should think about playing *nice* and *fair*. If this is **NOT** the desired or anticipated outcome, then I think Java is seriously crippled and weakened as future prospect. The next 12 months are going to stellar. Somehow I think Android will keep on going, because too much moment and investment in it. That Android tablet computer is arriving soon at a consumer store near you in a couple of months or so. Whether there is a decline in Java or sudden interest again, the crown jewel are the Virtual Machine. I think that is what Oracle are disputing in truth. The Sun/Oracle JVM is definitely proven and hotspot rules on desktop computers! Dalvik is getting there with Froyo Android 2.2 or mobile and embedded devices and so there is now a dispute on the platform. The language at the end of the day does not quite matter, as much as the performance, function and deployability of the Virtual Machine.

Posted by **Peter Pilgrim** on August 14, 2010 at 09:35 AM PDT #

-Google created a work-around for Java Mobile Edition- And what's the problem ? Everybody hates J2ME. Google purpose a new modern way to develop mobile application to replace the old buggy J2ME that nobody wants. RIM does the same thing with the Blackberry Java SDK. (but it's compatible with J2ME)

Posted by **Mathieu Poussin** on August 14, 2010 at 09:55 AM PDT #

If the JVM is the crown jewel, then why not consider other VMs that are not encumbered the way Oracle's VM seems to be? In addition, the JVM fails to incorporate much of the progress in systems over the last 20 years: see Allison Randal's talk at the 2008 JVM Language Summit for some compelling performance claims.

Posted by **András Salamon** on August 14, 2010 at 10:25 AM PDT #

There is no nice and fair in Oracle president mouth. this company is so f** closed in terms of innovation. For Oracle, innovation is acquired. It is not built in or DNA. Take a look at what this company did with the tremedous potential of BEA, and see it what is means 2.5 years after, that is just disconcerting. Weblogic products are dead.... take a $8.5b acquisition and get the milk of the fat cow for $750M/year that makes the worst ROI of the IT history (except HP tries in software)... so come back to our Java suit, Oracle pay for a major asset and now NEEDS to make money with it, so they can PRETEND Sun is profitable. While talking patents if you want make it big, start by suing the one who can pay... so good to start with Infinite money company a.k.a Google !! don't spend your time with second hands..... This all thing s**s.

Posted by **Stephan** on August 14, 2010 at 10:29 AM PDT #

giving openoffice, virtualbox, mysql, java, solaris, and so forth to a company like oracle was the worst thing happening to the internet and the IT industry since the raise of the apple-hype-closed distribution-ways religion.

Posted by **omg** on August 14, 2010 at 10:33 AM PDT #

It is time for the world to look ahead of JAVA. James - do u wanna lead the way :)

Posted by **Vic** on August 14, 2010 at 12:29 PM PDT #

If Sun had done a good job with Java, Java wouldn't have to end up with a mess like this. I think that Sun should be one to be blamed. Sun had all the opportunities and times to get Java right on the web, desktop and phones but Sun failed to deliver. The CEO could simply walk away with a nice package and blame on bad economics. It's our developers being impacted the most. After 10 years of being hard core Java fan, it's time to move on to some thing else. Java has no future.

Posted by **Jack Trusell** on August 14, 2010 at 01:36 PM PDT #

Its important that we send a clear message to Oracle and any like minded company to not turn into patent trolls (there are enough of them already). I think the strongest possible message would be if plenty of big (and even more small) OSS projects strip out support for any Oracle products in their next release. http://pooteeweet.org/blog/1806

Posted by **Lukas** on August 14, 2010 at 01:45 PM PDT #

Good comments. A really upsetting thing to do from Oralcaeda. Jabbing a dagger into open source. On the other hand what license is there on the Dalvik? Was the Google development really a response to a failing Sun? At the universities there was a strong shy away from Java after The Acquisition (movie title, patented by Oracle). Seriously, it is always useful and interesting to learn new languages. Perhaps it should be made much easier and useful than it is to let small communities develop their own language.

Posted by **sammoes** on August 14, 2010 at 03:15 PM PDT #

To Mr. James Gosling, Why don't you join your hands with Google and support these Millions of Java Developers and Java Platform. I have been a Java developer since 2000, Java has changed me and gave me light in my life. Like me many people benefited by your thinking. I had respect for oracle, not now. I feel that JAVA platform is in Monkey's Hand. We will wait for some Good news to hear from you. Thanks, JAVA MAN

Posted by **JAVA MAN** on August 14, 2010 at 07:43 PM PDT #

This Oracle thing was expected; we all felt less than confortable when Oracle became the custodian of Oracle but I did not imagine it would be this bad. Oracle's gated community, its Redwood Chores country club, sees the vast adoption of Java by the open source community, and by Google, as a competitor to proprietary software. Why Google did not see this coming and bought Sun, even if just for Java, and sell the hardware to Fujitsu, HP or IBM; it is cheaper than law suits. What next for Java developers; I went and browsed the Go site and after few minutes I came disappointed; Go did not jump at me as a language that will replace Java; is it C#, not for me, is it Clojure or Sacala, wait these are Java also; is it Haskell or Erlang; this Oracle thing is upsetting and confusing; I hope jag et al can provide some insight as to the future for 20-years of Java.

Posted by **J.F. Zarama** on August 14, 2010 at 11:20 PM PDT #

If I write a LISP-AIX-binary to C++ Windows-Converter, I break the rules? Google converts Java Bytecode to Dalvik bytecode. It's so much work to do that, that Sun &quot;thought&quot;: nobody will ever do that, so we can reap the benefits. It's &quot;Posix Unix&quot; all over again! &quot;Nobody will create a cheap unix for X86, we can ask for horrendous prices ad infinitum!&quot; &quot;What, Linux destroyed our market(share)? That's not ok! There must be rules to protect our slow, outdated business? Ah, yes! Patents!&quot; If Google refuses to buy in and goes the whole nine yards, it will invalidate all the patents. And then counter sue Oracle for their numerous clustering/bigtable patents and require Oracle to stop selling databases :)

Posted by **Thomas** on August 14, 2010 at 11:44 PM PDT #

What a load of rubbish is being written here with folks talking about the death of Java. Just because Oracle is going after Google, a company who shafted Sun in the first place and is now reaping rewards. Why would you think people would stop using Java, do you think people will throw away their investments of time, effort and money? The only folks that might do that are some of the people ranting on here. Time to grow up and move on.

Posted by **OracleStaffer** on August 15, 2010 at 12:45 AM PDT #

@OracleStaffer Why would you think people would stop using Java? They said it that they will stop using Java - do not you see? If you see - do not ask.

Posted by **maniek** on August 15, 2010 at 01:03 AM PDT #

If I use garbage collection in C++, is that infingement?

Posted by **admin** on August 15, 2010 at 01:52 AM PDT #

you oracle staffer - go to hell

Posted by **maniek** on August 15, 2010 at 02:15 AM PDT #

Java in Sun era is not Java in Oracle era. Oracle is definitely not community minded. Redwood shores HQ is full of project managers spending budgets coming from database business - extracting it from milk accounts that is how oracle treats its customer base - to try to enrich product porfolio. And because there are not so many things a company can do, they fail (in terms of revenue, but you don't see it because ORCL does not break down its revenues per products lines). So it is time for us - technologists - to take the power back and stack up our applications and products on open technologies and languages. Be sure our CxOs will appreciate !

Posted by **Stephan** on August 15, 2010 at 02:38 AM PDT #

@maniek - you oracle staffer - go to hell very good maniek - very impressive, you did really well there, that told me didn't it?

Posted by **OracleStaffer** on August 15, 2010 at 05:06 AM PDT #

the jdk can not download now

Posted by **s3051024** on August 15, 2010 at 06:26 AM PDT #

@OracleStaffer, because giving Java to Oracle is the worst thing that could happen ? Because nobody like Oracle ? Because Oracle only want money ? Because Oracle don't like Open Source ? Because almost all enterprise products bought by Oracle are dead (Weblogic..) ? Oracle killed Java as they killed OpenSolaris. Bye bye Oracle, hello Microsoft

Posted by **Mathieu Poussin** on August 15, 2010 at 07:35 AM PDT #

At Sun, I occasionally had to do damage control with the developer community because of well-intentioned ineptitude, and I was comfortable with doing that because it really was just that. I am glad I left Oracle before having to live through through this. Whether the suit has merit or not (I'd expect the desired outcome is a per-phone royalty on Android), it sticks a fork in the eye of anyone depending on open source implementations of Java, as they now must assume they are legally exposed. -Tim

Posted by **Tim Boudreau** on August 15, 2010 at 07:43 AM PDT #

Tim Boudreau: I have to wonder if the damage will be worse, for as Brian Proffitt noted, 'SCOracle' (as he put it) has 'weaponized' Java which seriously changes the rules of the game. We know where their use of Java as a weapon is starting but we have no idea where it'll end. For that matter, it'll probably be a long time before we even have an idea of the scope of their likely future actions. For example, if Google settles quickly, who's next? If Google fights tooth and nail, that along could drag out for years (well, unless and until Oracle goes nuclear by seeking a fast track import ban from the US International Trade Commission).

Posted by **Lina Inverse** on August 15, 2010 at 08:36 AM PDT #

@Mathieu Poussin: Kids hates JavaME. JavaME was the first incarnation of a wonderful powerful incredibly cool technology for mobile phones. My software runs on more than 2000 different phone model with a single JAR file. Can you tell the same for any other mobile software running on a different technology? I must admit that JavaME should be refreshed (I'm so sad that no one have intantion to do that), but be sure that JavaME is enough for the 95% of the apps published on the Android Market. PS: I'm desperately seeking any news on JavaME tech, I can't find news anywhere... Oracle told us some times ago that it has the intention to merge the JavaSE API with the JavaME API but is this something for this century? I can't belive that the most widely adopted

technology for mobile phones will be kicked off in this way.

Posted by **Davide Perini** on August 15, 2010 at 09:57 AM PDT #

Oracle should know what happens if it's damaging FOSS communities. Even if its action is legal, it may not mean it's ethical. A new word came up to my mind: Oraclettel, meaning &quot;I am mad&quot; in Japanese, as a proper name for the company. Another one might be Oracless as a slogan to boycott their products against their acts on damaging FOSS communities and culture.

Posted by **anone** on August 15, 2010 at 10:00 AM PDT #

One solution.. fork Java from Oracle implementation. Turn, any code portion with possible have legal problem, write a new and free code. Even the name &quot;Java&quot; should be changed, because it was owned by Oracle/Sun.

Posted by **teknokrasi** on August 15, 2010 at 10:19 AM PDT #

sorry if i'm saying obvious, rude or stupid things. i think that there might be a solution for this problem by &quot;overriding&quot; the rewrite step in RE38104. 0. for each code block create a copy of the same size covered with the following opcodes: i: [goto orig+i] that means that if the PC is in the &quot;copy&quot; it will immidiately jump back to the the &quot;orig&quot;. 1. the code interpreter function would use the &quot;copy&quot; area to store interpreted code and avoid rewriting the original bytecode (a copy of the original memory + offset) 2. the &quot;rewrite&quot; branch will execute the new location only if it was &quot;rewritten&quot;. though ugly and double the memory this is not breaking the patent. is it a real workaround?

Posted by **nati** on August 15, 2010 at 01:47 PM PDT #

@OracleStaffer I do not want to swear on someones blog

Posted by **Maniek** on August 15, 2010 at 02:00 PM PDT #

I took a look at all of the patents referenced in the lawsuit. They all have at least one of these problems: 1) They were filed years after prior-art was published in the literature, or products were being sold using the technology. 2) They do not pass the newer standards for novelty, non-obviousness, etc. Take a look at RE38,104, the FORTH system is one such example of prior-art (which has all or most of the elements described in the patent.) In addition, Sun signed a cross agreement with Google that they would not sue each other for patent infringement on a Linux platform-- and this agreement is still binding even though Oracle bought Sun. Oracle is in breach of contract. This will end just like the SCO vs. Linux lawsuit, and will have similar long term consequences for Oracle. Nothing will come of it except F.U.D., and people will stop buying Oracle products. This is really a bone-headed play by Larry Ellison-- I thought he was smarter than that.

Posted by **NYDB** on August 15, 2010 at 03:51 PM PDT #

By suing Google, Oracle has tainted Java worse than British Petroleum poisoned the Gulf Coast.

Posted by **Alexander Tavrovsky** on August 15, 2010 at 03:52 PM PDT #

More power to Python.

Posted by **Dmitry c.** on August 15, 2010 at 10:15 PM PDT #

Oracle is DEAD, well, not too much to miss, SQL is crap and dead any way. BigTable everyone!

Posted by **Anton** on August 16, 2010 at 01:46 AM PDT #

@Yaroslav: you're right. .NET infringes all these patents as well. Moreover, Linux and thus MeeGo ALSO infringe these ridiculous patents (there is so much prior art that all these patents need to be dismissed).

Posted by **Mike** on August 16, 2010 at 01:52 AM PDT #

just ask Oracle to fire all their lawyers and hire 'better programmers' like google if they are serious about innovation. ask them make better web, no war.

Posted by **cometta** on August 16, 2010 at 02:26 AM PDT **#**

What everyone here is forgetting is that Oracle is the financial success it is because it throws around its weight. This is a walk in the park for a company created by Larry Ellison. Anyone remember the law suit Mr. Ellison won over his japanese mansion?? On another point Oracle's customers are traditionally conservative old school businesses. They have money to spend and they couldn't care less about &quot;the community&quot;. Just take a look at Oracle's ADF framework, its a piece of rubbish compared to what is available in the community but customers are still skilling up in it and learning it because it is apart of the Oracle ecosystem. If you looked at this objectively Oracle is fully within its right to protect its patents. Google should have applied for a licence in the first place. Maybe Sun would be in a different position if it had enforced its patents?

Posted by **Ducati Dude** on August 16, 2010 at 09:53 AM PDT **#**

Oracle did something really stupid, piss off developers and hasten the move toward open source. Oracle is sweating IBM big time and they should. Google has nothing to worry about as they did a clean build of Java. Sounds like greed begets greed with lawyers wasting everyone's time while pocketing Larry's money. Hubris anyone?

Posted by **Robert Moran** on August 16, 2010 at 10:58 AM PDT **#**

What's the future of OpenJDK now?

Posted by **93.104.87.230** on August 16, 2010 at 12:40 PM PDT **#**

Why not a new &quot;lawyer free&quot; language to replace Java using the community model of Apache? Rock solid products that can be trusted to be lawyer proof.

Posted by **Engineer** on August 16, 2010 at 01:32 PM PDT **#**

I find it interesting that OracleStaffer gets all defensive about programmers when it is mostly programmers that are in this forum (you really need to broaden your horizons beyond your cubicle). It occurs to me that Oracle will only succeed in increasing the consumers cost of the systems running Java. While coders have strong opinions (as we have seen above) the ultimate decision is made with the dollar. Thus if Oracle's legal maneuvering increases the overall cost of Java implementations too much, the market will simply stop voting for it with their $$. Business, not programming, drives the market and the content of our products.

Posted by **JCL** on August 16, 2010 at 01:47 PM PDT **#**

&quot;My software runs on more than 2000 different phone model with a single JAR file&quot; @DavidePerini Is it the Hello World Program you are talking about? &quot;Do you think that if just one software &quot;FPC BENCH&quot; runs properly on most handsets all other software developersa are lying?

Posted by **Jalaj Jha** on August 17, 2010 at 03:04 AM PDT **#**

Why the board sold Sun to Oracle ? Why Sun bought MySQL for 1bn ? Why Oracle, not SUN, sue Google ? JS cannot save this sinking ship, so made Sun as attractive as possible to Oracle. He got package and goodbye. He should already know the consequence we saw today. But why ? It's all about Jonathan's personal interest. He should be responsible for all this shit.

Posted by **wilson** on August 17, 2010 at 10:02 AM PDT **#**

Well, I am not happy about Oracle's move either, buuuut... didn't Sun sue Microsoft to prevent the fragmentation of Java with you being one of the prime witnesses? As a matter of fact, Google's &quot;Java&quot; is not really Java which any Android developer will notice rather quickly. As such, Google fragmented Java. Of course, it would be rather naive to believe that protecting Java is Oracle's reason to sue, but one can always pretend.

Posted by **Daniel** on August 17, 2010 at 11:26 AM PDT **#**

Google should have resolved this problem before. They had the money. They just ignored the problem. Google and Oracle are the same... every big company wants money... That's the point! They can't scream now... They knew what was coming...

The shit finally hits the fan.... : On a New Road

Posted by **Eduardo** on August 17, 2010 at 01:10 PM PDT [#](#)

POST A COMMENT:

**Comments are closed for this entry.**

# EXHIBIT J



Nighthawks | 1 | 2 | 3 | 4 |
8 Fallacies | bio | Standards



# On a New Road

**All** _Java_

« Oracle v Google | Main | Comments around... »

| | |
|---|---|
| **My attitude on Oracle v Google** | **Saturday April 28, 2012** |

[ Update: he fixed the article to put me on the same side as Scott ]

In Dan Farber's recent article on CNET titled "Oracle v. Google: Ex-Sun execs on opposite sides" he got my position on the case totally backwards and totally misinterpreted my comments. Just because Sun didn't have patent suits in our genetic code doesn't mean we didn't feel wronged. While I have differences with Oracle, in this case they are in the right. Google totally slimed Sun. We were all really disturbed, even Jonathan: he just decided to put on a happy face and tried to turn lemons into lemonade, which annoyed a lot of folks at Sun.

Comments[41]                                                         Share

## C O M M E N T S :

Thats a better way of doing business than burning Google's house down, with the lemons.

Posted by **Patrick McFarland** on April 28, 2012 at 09:46 PM PDT #

@Patrick Is it? Sun went out of business. We have to wait to see what will happen to Oracle.

Posted by **Daniel Jackson** on April 29, 2012 at 01:50 AM PDT #

Well, it still is better to try and see if you can get real Java working on Android than spending time and money on trying to stop it. So, yes, lemonade please.

Posted by **Tom** on April 29, 2012 at 03:53 AM PDT #

After ME, Sun failed to innovate and continue Java heritage on mobile. Google did something not all revolutionary but at least something that can keep java on mobile although technically it may not exacly be java. I understand Sun did not have resources, again I understand oracle is not all so interested to be leader in mobile but if those two are not interested in java on mobile, why stop Google. I respect the copyrights and patents (not exactly software patents) but i would be paying google to push android more if i were sun/oracle. Either way sun/oracle's java is already left out in mobile world and google's success will keep more developers focused on java.

Posted by **Murat Yener** on April 29, 2012 at 06:50 AM PDT #

So, James, do you have a position on the copyrightability of APIs?

Posted by **Frank Ch. Eigler** on April 29, 2012 at 06:50 AM PDT #

Lot of &quot;end justifies the means&quot; thinking in the comments. Yes you invented Java, yes it's your idea, but you are a moron and not using it properly so this justifies me stealing it from you. That's not Science, people. That's what they do at Black Mesa.

Posted by **Combustible Lemon** on April 29, 2012 at 09:34 AM PDT #

James What's your comment on copyrights of API's.Please Explain.

Posted by **Santosh** on April 29, 2012 at 09:56 AM PDT #

So Apache made you feel wronged?? Their license allows you to use part of the code in



Whole Earth Discipline: An ...
Stewart Brand (Ha...
$2.57
Scary and hopeful at the same time. Not at all a gr...

The Master Switch: The Rise and Fall of Information Em ...
Tim Wu (Hardcov...
$16.90

Newton's Clock: Chaos in the Solar System
Ivars Peterson (P...
$0.02

Four Fish: The Future of the Last Wild Food
Paul Greenberg (H...
$16.89

Freakonomics: A Rogue Economist Explores the Hidden Side ...
Steven D. Levitt, ...
$10.13

1 2 >
amazon.com
Get Widget                 Privacy

**RECENT**

Working crazy hard
More job postings!
Looking for a senior electrical engineer
Meltdown Averted
OvG: It's finally (almost) over.
ForgeRock is hiring
Comments around Oracle v Google
My attitude on Oracle v Google
Oracle v Google
Piccard vs. the Sea Monster
So close!
Almost to Hawaii
Having an unreasonable amount of fun
They're off!
Surfing big waves
They're on their way!
Cool robot video
Steve Jobs on Hewlett Packard
I've run out of adjectives
Too Soon



Thanks, Wikipedia.

**CALENDAR**

« August 2012

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     | 1   | 2   | 3   | 4   |
| 5   | 6   | 7   | 8   | 9   | 10  | 11  |

&quot;incompatible&quot; way regarding &quot;Java&quot;. Please tell us how you felf about Apache.

Posted by **Peter Frandsen** on April 29, 2012 at 11:08 AM PDT #

I hope Oracle wins, not regarding the &quot;copyright on APIs&quot;, but because Google doesn't respect copyright in general. As for Apache, ASL stands for the Apache Slavery License doesn't it? Large corporations encourage you to use the ASL instead of the GPL so that they can make money using the code, whereas the developer can hardly make any money writing it. Just my 2 cents...

Posted by **Bruno Lowagie** on April 29, 2012 at 12:03 PM PDT #

Copyrighting the definition of APIs, function and class names, header files? That's taking American IP insanity to a whole new level. People with this mindset probably also would think that human languages and alphabets should be put under a copyright and that everybody who writes a letter or talks to another human being should have to pay license fees. I sure hope that Oracle loses this one for the greater good of all of us. And also to make this very clear, I firmly believe that software patents are another American IP abomination that needs to be abolished once and for all. You have copyright laws to protect real products. That ought to be enough protection for anyone.

Posted by **Winfried Maus** on April 29, 2012 at 01:44 PM PDT #

Android was a good thing that happened to Java. Oracle trying to copyright APIs? A bad thing. But this from technology POV. Regarding the legality of it, I have no idea.

Posted by **Rui** on April 29, 2012 at 03:29 PM PDT #

Android is not a good thing which happened to Java. I had to port a big Java app which I knew very well to Android, and it was a nightmare. Deficient and buggy tools, buggy implementation, no consistency at all in the specific android API. It was developed in a hurry and it shows. in fact the best thing that could happen to google is if they lose and are obliged to adhere to the standard. They won't be able to maintain the mess they're in with their implementation for very long, and in the meantime Oracle Java is still evolving, and now it is very quickly.

Posted by **Herve** on April 29, 2012 at 04:20 PM PDT #

IMO Google played foul play with Android, wronging SUN (Oracle) and Apple (were he still alive, Steve Jobs would have chosen Larry's side). No matter who wins in the Oracle vs. Google case, there will be damage. What is our greatest fear: getting hit by collateral damage, or accepting that Google can get away with almost anything?

Posted by **Bruno Lowagie** on April 30, 2012 at 12:48 AM PDT #

Why should Oracle prevail? When Oracle is showing that there is code and/or APIs in Android that are copied from JavaTM how is that any different than copying from OpenJDK? Surely the only legitimate complaint that can be made is a GPL violation, for which the standard practice is to give the offender an opportunity to repair the problem before court action. And of course the GPL grants the needed patent licenses. So really, what's the beef?

Posted by **Jim White** on April 30, 2012 at 02:23 AM PDT #

&quot;You don&rsquo;t have to do exact copies, e.g., you could use science.sqrt() as your method rather than math.sqrt()&quot; What will happen if Oracle manages to pull this API crap out?

Posted by **Luiz** on April 30, 2012 at 05:08 AM PDT #

The question is, does anyone in the Google-vs-Oracle fight care about SUN? We all know that this whole thing is just Oracle trying to make a few billions from Google. Java was always free - now all of a sudden it's patented and people need to pay for it (of course, those people must have billions of dollars to be &quot;eligible&quot; of this penalty first).

Posted by **Fadi El-Eter** on April 30, 2012 at 06:11 AM PDT #

You are one of the best things that happened after Wozniak, Steve Jobs(no tech) Ken ,Linus Torvalds but here my 2 cents, Why didn;t you guys went ahead tried something like android did with java. You know what i feel when one creates a PL it intent is to make the best application and android is an appliocation (OS) but still . Now what oracle is doing is not right either.

Posted by **Sameer Kulkarni** on April 30, 2012 at 09:37 AM PDT #

| | | | | | | |
|---|---|---|---|---|---|---|
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | **21** | 22 | 23 | **24** | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

**Today**

**All**  Java

**NAVIGATION**

Nighthacks
Weblog
Login

Biggest mistake that happened to JAVA was not android but you let go off Java to one of the greediest CEO after MS . When you trade with .... well well haven't you heard merchant of venice .. I feel so stupid and naive.. all these years i thought no one can use sue anyone when they use JAVA but fact is they are open but closed like Apple and MS.

Posted by **Sameer Kulkarni** on April 30, 2012 at 09:42 AM PDT  #

Many Google Fans think that Sun/Oracle should be happy if Google let Java become popular - even Google folk at Sun... Maybe they should be happy if Amazon folk at Google...

Posted by **Nobody** on April 30, 2012 at 09:47 AM PDT  #

Can't say I agree. J2ME was a disaster in so many ways. Android, despite its flaws, is a huge improvement in APIs, usability, consistency and adoption over J2ME. I'd normally agree with you in principle, but the difference in mobile development between J2ME and Android is so huge that it's clear the ends justified the means here. If only Sun had actually been effective about pushing the platform, Google would not have needed to make Android. Any flaws people point to in Android pail in comparison to the multi-device, slow-performance, unintegrated mess that J2ME was. Android has a lot of what's great about Java, but on a platform in which apps usually work, perform well, and can do interesting things. Android apps have attractive UI widgets that normal people can figure out. J2ME had a great golf game on my Symbian phone. Beyond that, I remember that seeing the Java logo on my phone meant that it would soon grind to a halt.

Posted by **Matt** on April 30, 2012 at 10:08 AM PDT  #

It's unfortunate you feel that way James as the only thing Google copied were method signatures - which is absurd to even think they can be copyrightable. Looking back I wish Google had never selected Java and just used C++ or some other language. Android is the only reason why there is even a resurgence in Java. Once Google's Go language matures I hope they switch over to it and be done with this archaic and limiting language.

Posted by **Cal** on April 30, 2012 at 10:23 AM PDT  #

@Daniel Jackson: Its better than a perpetual testing initiative.

Posted by **Patrick McFarland** on April 30, 2012 at 10:49 AM PDT  #

Not sure why you're getting so many Goog fanboys in your comments... I for one totally agree with you, James. Shame that the big G thinks it is always above the rules that apply to everyone else.

Posted by **Harry** on April 30, 2012 at 10:50 AM PDT  #

My sentiments exactly, James.

Posted by **Jon Kannegaard** on April 30, 2012 at 11:23 AM PDT  #

It was nasty, however, I'd have to side with Google on this one. It's up to Oracle to prove infringement, but a bunch of the architects from Sun were poached by Google. It was up to Oracle to defend the rights of their buy with Sun and all of the IP that came with it. I don't think they were prepared totally.... I liken it to the difference between Fruit Whirls (Kroger Brand Cereal) and Fruit Loops (Kellogs). We know Kroger copied the idea, just made it more affordable to all. Fruit Whirls have all of the looks and the flavor, but it's not Fruit Loops.

Posted by **BigMixxx** on April 30, 2012 at 11:43 AM PDT  #

Absolutly agree&hellip; exacly the same sentiment&hellip; a lot of angry people from Google but that is only because they fail to understand what really happened. Sun should had done this. Not Oracle. I like to see Google pay for what they knew they had to license. Jonathan just avoided conflict - to the point of not having a profitable quater/year. A happy face is all Jonathan ever wanted. We were all wronged and Google knows it. But winning at all cost (even at fracmenting the ecosystem) is more important to them when they were so back behind.

Posted by **Ramses Moya** on April 30, 2012 at 11:46 AM PDT  #

It's so sad to see how ungrateful Google is. After Sun had helped them in the early days through a donation they haven't even acted fair by getting license for the JVM. They just took a move from Microsoft's book and created Dalvik to avoid paying anything to Sun. And all that because they wanted complete 'control' ... How else could they create their crappy undocumented APIs they change at each new major release every 6 months, breaking compatibility with previous ones. It would have been highly unlikely that royalties from Android could have sustained Sun but the way in which Google acted shows their lack of character. On the other hand Mr. Schwartz appears to

be a real gentleman and good natured person, not having started any legal actions even in the critical situation in which Sun was. Thank you James and all the true engineers at Sun for the rich heritage you left for us! (and for getting us out of the dark ages of programming)

Posted by **Crisp** on April 30, 2012 at 01:07 PM PDT #

Are you people out of your minds here? Despite that Google's move was negative for Sun, they were completely in their right to do it. Otherwise we should be defending poor AT&amp;T because Linux and GNU copied their OS. C++ has plenty of implementations and interoperability is fine (they mostly abide to the standards now) so why is it a problem with Java if there are many versions?

Posted by **Jose Goruka** on April 30, 2012 at 01:51 PM PDT #

Quite honestly, I am really disappointed with the way big companies like these are fighting against each other and causing hindrance to the world of innovation. If google cant do it nobody else would dare to do it in future for such innovations.

Posted by **Java Developer** on April 30, 2012 at 01:54 PM PDT #

Mr. Gosling, how do you feel about Samba &quot;sliming&quot; Windows networking, or OpenBoot &quot;sliming&quot; Forth, or OEL &quot;sliming&quot; Linux, or SunOS &quot;sliming&quot; BSD, or BSD &quot;sliming&quot; System V? Or, for that matter, javax.xml sliming Xerces? I trust that, if Oracle receives a favorable decision re: API copyright, that they'll no longer be shipping all that infringing compatibility nonsense? If I can't implement the producing side of a documented API without permission, I'm either quitting the industry or I'm taking myself and my services to a country that's not an IP banana republic.

Posted by **Jonathan** on April 30, 2012 at 02:14 PM PDT #

I think Java is a big reason Oracle bought Sun, and yeah, it's a tip off when a company has to tell you they don't intend to do evil.

Posted by **Marianne Mueller** on April 30, 2012 at 03:40 PM PDT #

Nothing good resulted from the fragmentation of Unix, etc. This has always been wrong, and it is not an excuse for Android doing the same to Java.

Posted by **albedo** on April 30, 2012 at 03:51 PM PDT #

Lets say judge ordered Android to switch to &quot;real Java&quot;. Who will update their firmware and what will happen to millions of titles? There should be a good meeting in oracle questioning what exactly went wrong with j2me.

Posted by **Ilgaz** on April 30, 2012 at 07:50 PM PDT #

Google made a point about not wanting to work with a bunch of D grade engineers from Sun. I can see why they thought that way.

Posted by **Cal** on April 30, 2012 at 10:06 PM PDT #

Gosling seems to have a self-serving view of IP law. When Sun took some liberties with RISC patents, Gosling thought that the lawsuits were absurd because all RISC meant was that &quot;if you make something simpler, it will be faster.&quot; I am sure John Cocke, who won every engineering award under the sun for RISC, appreciated that dumbed down characterization of RISC by someone who knew better. Now that the shoe is on the other foot, with a much more ambiguous IP licensing structure in Java, Google is clearly in the wrong. They may be in the wrong, but no less than Sun was in the wrong with RISC.

Posted by **Sam** on April 30, 2012 at 10:46 PM PDT #

Mr. Gosling--thanks for the clarification of your viewpoint in this matter. It will be interesting to see how this plays out in the courts.

Posted by **Huntress** on May 01, 2012 at 06:40 AM PDT #

Some thoughts: 1.) Sun released the source code under GPL v2. The purpose of GPL is to allow others to take the code and release back to the community any further developments on it. 2.) Sun's restrictions arise from their separate TCK License. Neither Apache nor Google are subject to this license. 3.) As a matter of law, the restrictions imposed by the TCK License may be in violation of the General Public License (in letter and spirit) under which the Java source code was released.

Posted by **Manoj** on May 01, 2012 at 08:21 AM PDT #

The GPL license includes the copyleft provisions, simply stated any IP resulting from original must be re-incorporated back into the whole. Google refuses to do this with Android. Google has made a legal distinction between the code that runs the Galaxy Nexus and the their open source releases. Google claimed in recent court filing that the code running Galaxy Nexus is a &quot;trade secret&quot;. That's still a violation under GPL terms. GPL is actually very restrictive about how IP can be used.

Posted by **Tim** on May 01, 2012 at 03:31 PM PDT #

Be that as it may, Google's 'slimy' behavior still doesn't justify this lawsuit from Oracle which could have extremely far reaching consequences and not for the better. I mean copyrighting APIs? What a joke.

Posted by **James** on May 02, 2012 at 06:02 AM PDT #

It's a bit sad what's been happening with Java over the years. (Sun) Oracle is in the right here, but looking at it practically Google has a point. The ends just don't justify the means, they never do, just explain them. I was thinking, when the dust has settled down a bit, would it make sense to &quot;get the old band together&quot; and have you, Josh Bloch and some brilliant engineers turn Java 8 into a proper desktop/webtop Java?

Posted by **Timo Kinnunen** on May 02, 2012 at 08:01 AM PDT #

Its really obvious Google knew what they were doing was wrong and through their arrogance decided to go for it thinking maybe nothing would happen. Only an Android fanboy doesn't see this.

Posted by **Darwin** on May 02, 2012 at 08:55 AM PDT #

## POST A COMMENT:

**Comments are closed for this entry.**

# EXHIBIT K





Nighthawks | 1 | 2 | 3 | 4
8 Fallacies | bio | Standards

# On a New Road

**All**   Java

« ForgeRock is hiring | Main | Meltdown Averted »

**OvG: It's finally (almost) over.**          **Wednesday May 23, 2012**

The patent part of the case is finally over, with Google acquitted on (almost) all counts.. The happy part for me is that despite having been on the witness list and gone through a bunch of prep work with lawyers, I didn't actually have to testify. Despite all the furor that went into this one, it went out with a wimper. Court cases are never about right and wrong, they're about the law and what you can convince a jury of. For those of us at Sun who felt trampled-on and abused by Google's callous self-righteousness, I would have preferred a different outcome - not from the court case as much as from events of years past.



Comments[35]                                                    Share

## COMMENTS:

&quot;Google's callous self-righteousness&quot; ... how about &quot;Oracle's stunning idiocy&quot;?

Posted by **lamont** on May 23, 2012 at 08:23 PM PDT #

I don't see what was idiotic about Oracle's case. As the past few posts on this blog show, Sun/Oracle felt quite wronged and were probably justified in pursuing this lawsuit.

Posted by **kinkfisher** on May 23, 2012 at 08:49 PM PDT #

@kinkfisher: I think that's a funny comment: &quot;Sun/Oracle felt quite wronged and were probably justified in pursuing this lawsuit.&quot; In what way are they justified? I think it's clear to most sane people they weren't legally justified. When someone does something you don't like, you try and sue them, even if the law pretty clearly says you're out in left field? Everyone thinks every other lawsuit is inappropriate (except their own).

Posted by **bwm** on May 23, 2012 at 08:58 PM PDT #

You would prefer that APIs are copyrightable? And don't you see that this case has hugely damaged Java?

Posted by **Pete Austin** on May 23, 2012 at 09:37 PM PDT #

Google might have been morally (or even technically) wrong, but the larger problem is that software patents are damaging the tech industry. If the great people like yourself are unable to look past bitter disagreements and stand up for what really matters, then the lawyer have already won.

Posted by **Lex** on May 23, 2012 at 10:18 PM PDT #

Court cases are always about right and wrong you sore loser. Oracle lost. Because their case was weak, weak, weak. I mourn the day Oracle got their grubby hands on Java.

Posted by **Livers** on May 23, 2012 at 11:25 PM PDT #

What was the difference with Microsoft case? AFAIK, they were creating their own JVM, with their own extensions. What changed since then?

---

**Books Worth Reading**



Whole Earth Discipline: An ...
Stewart Brand (Ha...
**$2.57**
Scary and hopeful at the same time.  Not at all a gr...

The Master Switch: The Rise and Fall of Information Em...
Tim Wu (Hardcov...
**$16.90**

Newton's Clock: Chaos in the Solar System
Ivars Peterson (P...
**$0.02**

Four Fish: The Future of the Last Wild Food
Paul Greenberg (H...
**$16.89**

Freakonomics: A Rogue Economist Explores the Hidden Side of ...
Steven D. Levitt, ...
**$10.13**

1  2  >

amazon.com
Get Widget                    Privacy

## RECENT

Working crazy hard
More job postings!
Looking for a senior electrical engineer
Meltdown Averted
OvG: It's finally (almost) over.
ForgeRock is hiring
Comments around Oracle v Google
My attitude on Oracle v Google
Oracle v Google
Piccard vs. the Sea Monster
So close!
Almost to Hawaii
Having an unreasonable amount of fun
They're off!
Surfing big waves
They're on their way!
Cool robot video
Steve Jobs on Hewlett Packard
I've run out of adjectives
Too Soon



Thanks, Wikipedia.

## CALENDAR

« August 2012
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| --- | --- | --- | --- | --- | --- | --- |
|     |     |     | 1   | 2   | 3   | 4   |
| 5   | 6   | 7   | 8   | 9   | 10  | 11  |

Posted by **Roberto Liffredo** on May 23, 2012 at 11:32 PM PDT #

Microsoft called their implementation 'Java', that's the difference.

Posted by **JJ** on May 24, 2012 at 12:13 AM PDT #

@Roberto Liffredo Since the Microsoft case, Sun has open sourced Java.

Posted by **Raymanunique** on May 24, 2012 at 12:37 AM PDT #

It's the moment for Lava...

Posted by **zetucu** on May 24, 2012 at 01:15 AM PDT #

Classic quote from a juror about Oracle's case... He said he was waiting for the steak, and all he got was the parsley.... The image I think of when I look back at this case will be of a plate cover being lifted by the fancy waiter and the disappointed look on the diners face with a bubble forming above his head with the words, Is that it?

Posted by **Peter** on May 24, 2012 at 01:35 AM PDT #

&quot;For those of us at Sun who felt trampled-on and abused by Google's callous self-righteousness&quot; Though not abused and trampled on enough to stop you working for them?

Posted by mcbi4kh2 on May 24, 2012 at 03:56 AM PDT #

Thanks to Oracle's fumblings I will be avoiding Java going forward. They want to have their cake and eat it too much. Goodness knows what they will do with MySQL.

Posted by **Andre** on May 24, 2012 at 04:01 AM PDT #

Hopefully, Oracle must repay taxpayers for the court costs of this frivolous blunder. If they had succeeded, this could have backfired severely and set a dangerous precedent for the entire open source community. What would be next, IBM buying the Apache Foundation and going after 90% of the net for licensing fees? I applaud the jury.

Posted by **Mike** on May 24, 2012 at 04:04 AM PDT #

Deja vu. Somehow reminds me of SCO vs IBM

Posted by **Invisible** on May 24, 2012 at 04:14 AM PDT #

Nothing Sun had going, not JavaFX, nor JME, could could even close to rivaling iOS. Thanks to Google, for all practical purposes, Java is now flourishing again and a healthy competitive smartphone business is blooming. How you, as the originator of Java, can be disappointed with that, can only be explained by prior expectation (influence, money, saving Sun etc.). The right thing would've been for Sun to have submitted Java as not just eventually open source, but also as an open standard for anyone to implement, incl. Apache. As far as I can recall, Sun was doing poorly way before Android came into play, in spite of the $1.6bn injection in 2004 from Microsoft. If Google had biggy-bagged on Xamarin Mono rather than Apache JDK, would you've felt equally? We are probably many wondering, what specific actions Google took, that were so horrible to Sun?

Posted by **Casper Bang** on May 24, 2012 at 04:31 AM PDT #

Google did little more than take the terms that your former employers allowed. As computer scientists, this case has shown what many of us have clamored for years--software is math. You can't patent math. And when it gets into court with an informed jurist and an open-minded jury, software patents don't hold up. I know it will deflate some egos in our community, but that deflation will allow us to innovate again.

Posted by **JM in SA** on May 24, 2012 at 04:33 AM PDT #

&quot;Court cases are never about right and wrong, they're about the law and what you can convince a jury of.&quot; Why don't you just be honest and straightforward (you are a software developer...) and instead say &quot;I am a sore loser&quot;

Posted by **F** on May 24, 2012 at 07:23 AM PDT #

Just because you don't agree with it doesn't make it idiotic. Sun invested billions in development of Java, and more importantly, many billions more in marketing to make Java as popular as it is. They then give it away from free (as in beer and later speech) and only make some money from

12  13  14  15   16  17  18
19  20  **21**  22   23  **24** 25
26  27  28  29   30  31

**Today**

**All**   Java

**NAVIGATION**

Nighthacks
Weblog
Login

licensing the JVM on embedded devices. Google then swoops in, hijacks it to get all those hard-earned developers onto its new, incompatible platform for embedded devices - the one area where Sun made direct money off Java - and refuses to share with Sun, claiming it's not Java. Really! Sun obviously feels wronged, and you think this is meritless? Sun's mistake was in open sourcing its crown jewels without retaining enough control. (Ironically, something that Amazon is doing to Google with Android. Luckily for Google, they make money off selling ads, not technology.)

Posted by **kinkfisher** on May 24, 2012 at 08:25 AM PDT #

Google spread Java to millions of devices and Oracle owns Java and is doing a good effort of advancing the technology. Obviously, they have overlapping interests and should be cooperating rather than being stuck in a court room with each other.

Posted by **Smartypants** on May 24, 2012 at 08:30 AM PDT #

Check it out, the guy who invented java, can't make a web page that handles &quot;quotes&quot; correctly.

Posted by **F** on May 24, 2012 at 09:04 AM PDT #

kinkfisher, remember that it was Sun who refused to grant Apache Harmony status as Java - they talk the talk, but were not ready to walk the walk. So in a sense, Android is not Java, because it uses Apache's Harmony, which specifically Sun made sure could never be called Java. Also, Oracle was on Apache's side in this matter... until they bought Sun that is, then they changed 180 degrees (or 3.1415... radians).

Posted by **Casper Bang** on May 24, 2012 at 09:51 AM PDT #

Re: walking the walk, I definitely agree that Sun's 'open sourcing' of Java was only really a marketing move, exactly as 'Android is open' is for Google. But I can't blame Sun for wanting to keep some control over their huge in investment in Java (ditto for Google/Android). As such, Sun didn't let Harmony, a competing implementation, qualify to be a real Java. Sun's mistake was in not keeping enough control, which let Google find a way around them.

Posted by **kinkfisher** on May 24, 2012 at 02:21 PM PDT #

<quote>... a different solution ... </quote> I also would have preferred a 'standard' java working on all platforms, including mobile, open source and all. Too bad Sun/Oracle were not able to provide that.

Posted by **Jan** on May 24, 2012 at 02:32 PM PDT #

As one of the people who worked in the Sun/Oracle JVM group for almost a decade, I can say that the Patent portion of the suit *might* have had merit, and I can certainly see that taking it to trial was valid legal strategy, even thought Oracle eventually lost. However, the copyright portions of the suit were, and still are, completely crap. Period. There's no justification for the copyright claim, and the API claim is pure drivel, even in the current pro-IP legal framework we're stuck in. I can't see the judge ruling that the APIs are protectable, which effectively invalidates even that small victory for Oracle.

Posted by **Erik** on May 24, 2012 at 03:40 PM PDT #

Android made Java relevant in the mobile space. But then, Google doesn't use Java on Android so it's really a non starter. It's also upsetting, James, that you would support a company that would even attempt to copyright method signatures. That is the lowest form of bottom feeders there is.

Posted by **xen** on May 24, 2012 at 09:27 PM PDT #

Should the graphic accompanying the article be changed by having gun pointing back at his own head sutitled with Oracle?

Posted by **Peter** on May 25, 2012 at 02:15 AM PDT #

I understand James, If I put myself in his position java was his baby an in a way google took it from him. I think the real problem Sun had was there business model, monetizing from a language was never gonna work specially now days were languages are open source. James I loved Sun and is was very sad to see it go down. Having said that I think Android is the best thing it could had happen to Java, java was stuck and it was dieying in the client side , and if it wasn't for what they did today java will not exist in the mobile it will have gone with symbian and BB, running only on servers and not thanks to oracle but thanks to open-source community that had made so much great java libraries. I think the right path will have been that google have bought sun and then do

android.I think google should buy java from oracle, is the only company I think is qualified to be the stewards of java, they have the right people to make it move forward and will fully open-source it.

Posted by **Gabriel Guerrero** on May 25, 2012 at 06:24 AM PDT #

Google had broken java in the sense of &quot;Write once run anywhere&quot;, you can't write java and have it run on android. You need Google's VM. Then again Sun/Oracle never really had anything worth it for running on mobile... J2ME ...? gimme a break. I think once phones become strong enough to run the regular JavaVM without the need of Dalvik then it'll change completely.

Posted by **George H** on May 25, 2012 at 07:21 AM PDT #

Though I understand the pain, Sun did the right thing by not sueing. The worst thing that could have happened to both Oracle and Java is that Oracle would have won. The API copyright and patent claims are outrageous and would cause huge precedents for other bs lawsuits. No one wants to use the technology of a bully. Combine that with the terrible mobile/desktop execution of Java Sun/Oracle, and the fragmentation caused by Sun itself in deciding mobile needed an incompatible Java ME, and limiting SE with bs field-of-use clauses. Basically, Google had a choice to do Java, not piss you guys off, or, actually have any chance of success...

Posted by **Peter** on May 25, 2012 at 09:31 AM PDT #

The only thing I wanted out of this was for the case to focus on asking Google to allow Android support Java truly and not about money and power. The case was not fought for the community but for money I guess. Android is growing and Oracle needs to lay ego aside and find a way to work with Google to boost the Java ecosystem in mobile

Posted by **DJ** on May 26, 2012 at 02:53 AM PDT #

Does this mean that I can implement Microsoft's Win32 API on Linux without violating any copyrights?

Posted by **Mike** on May 26, 2012 at 05:11 PM PDT #

To me this is another clear example where capitalism and human happiness don't seem to have much to do with each other. To my understanding, patents were originated to encourage investment in research and development. With this court case, patents seem to now encourage lawyers spending... @JM in SA: Why is being a software developer a sore looser?. Or a better question may be: what's not a sore loose? @Smartypants Google this: &quot;En casa del herrero, cuchillo de palo&quot;

Posted by **Software companies in Perth** on May 26, 2012 at 07:40 PM PDT #

Plus, What's going on? A civil jury to decide whether compilation techniques infringe certain software patents? I've been coding for 16 years. I've read the patents a few times and i still don't understand what they are about....

Posted by **Software companies in Perth** on May 26, 2012 at 07:48 PM PDT #

Google in future will ask people to code direct dalvik language - which will be a sister language of Java. This will keep on changing and finally - java will be killed and even Java EE- will be Dalvik EE. may be judges- purposefully allowed some stealing to happen- after all it was open source. Open source=steal my code. Don't expect - one exposes source code and others don't steal it.

Posted by **tendulkar** on May 28, 2012 at 10:23 AM PDT #

## POST A COMMENT:

**Comments are closed for this entry.**

# EXHIBIT L



PSST! HEY ARS READERS! LOOKING FOR A TECH JOB? SEARCH WIRED JOBS TODAY. WIRED SEARCH JOBS

🏠 Main Menu ▾   My Stories: 25 ▾   Forums   Subscribe Now        Search   🔍   Log In

# LAW & DISORDER / CIVILIZATION & DISCONTENTS

## Judge: Google didn't follow "show your shills" order

Oracle admitted that it paid blogger Florian Mueller; Google was more vague.

by **Joe Mullin** - Aug 20 2012, 11:35am PDT

LAWSUITS   WEB CULTURE   49

US District Judge William Alsup, who oversaw the *Oracle v. Google* lawsuit, is concerned that paid bloggers or other types of writers may have influenced the court—and he wants Google to try a little harder to come up with a list of any writers it may have paid.

Google produced a general list of "types" of people and organizations that get money from the search giant and would have been in a position to comment on the case if they chose to. That list includes universities, specific grant recipients, Google employees, and even bloggers who participate in Google's advertising program. However, "neither Google nor its counsel has paid any individuals or organizations within those categories to report or comment on any issues in this case," the search giant wrote in a court document filed Friday.

That isn't good enough for Alsup, who wrote that as it stands, Google hasn't complied with his order. Google *did* comply, in Alsup's view, by disclosing that it had paid one blogger: Florian Mueller, a self-styled patent expert frequently quoted in the press. Mueller disclosed the relationship himself in April, albeit at the end of a long blog post. Oracle says it never paid Mueller to write blog posts about the case.

And it's not a small thing, in the judge's view. "Just as a treatise on the law may influence the courts, public commentary that purports to be independent may have an influence on the courts and/or their staff if only in subtle ways," opines Alsup in today's order [PDF]. "If a treatise author or blogger is paid by a litigant, should not that relationship be known?"

In its response, Oracle lawyers not only disclosed paid blogger Mueller, they also happily took a shot at Google's claims of transparency. They argue that it's Google, not Oracle, who pays a shadowy "network of influencers" including trade organization CCIA.

Alsup doesn't seem to have bought into any conspiracy theories yet, but he would like Google to give the list-making a better shot. Consultants and employees who commented on the trial count; universities, big organizations, and bloggers who just use Google advertising software clearly don't, he said. "Oracle managed to do it," he noted.

### ORACLE V. GOOGLE 

**Oracle, Google still bickering over paid shills long after trial**

**With anti-shill order, Google/Oracle judge enters "uncharted territory"**

**"Name your shills," judge orders Oracle, Google**

**Google submits $4 million bill for costs in Oracle lawsuit**

**Oracle accepts $0 in damages from Google, moves toward appeal**

View all…



PSST! HEY ARS READERS! LOOKING FOR A TECH JOB? SEARCH ARS JOBS TODAY.


arstechnica   SEARCH JOBS

### TOP FEATURE STORY 

 

FEATURE STORY (3 PAGES)
**PC laptop buying guide—back to school edition**

We wade through minuscule differences between laptops so you don't have to.

by **Andrew Cunningham** - Aug 22 2012, 6:00am PDT   116

### STAY IN THE KNOW WITH 

 

### LATEST NEWS 


**Here come the inflate-a-bots: iRobot's AIR blow-up bot prototypes**


**License plates scanned at border, data shared with car insurance group**


**Mars rover passes its first driving test**

## READER COMMENTS   49



**Joe Mullin** / Joe Mullin has been covering technology law for five years, with a special interest in copyright and patent litigation. Currently, he has a reporting fellowship at the Investigative Reporting Program at UC Berkeley.

 Follow @joemullin

← OLDER STORY   |   NEWER STORY →

## YOU MAY ALSO LIKE ◢

**DOWN THE MEMORY HOLE**

### Apple attempts to scrub controversial "Genius" ads from the Internet

### Ubisoft boss: free-to-play a natural reaction to high piracy rates

**PUBLIC SHAMING**

### German firm threatens to publish IP addresses of alleged porn pirates

ARS JOBS ◢    powered by **monster**+

**Software Test Engineer**
WA-Redmond, We are looking for an experienced STE to support our software test team. This is a long …

**CNO Analyst/Programmer**
MD-Hanover, MD-11-0003: CNO Analyst/Programmer Location: Hanover, MD Clearance Required: TOP SECRET …

**Senior C# Developer w/ Strong Database Design**
TX-Irving, Senior C# Developer w/ Strong Database Design DETAILS Location: Irving, TX Position Type:…

See more job listings

**SITE LINKS**

About Us
Advertise with us
Contact Us
Reprints

**SUBSCRIPTIONS**

Subscribe to Ars

**MORE READING**

RSS Feeds
Newsletters

**CONDE NAST SITES**

Reddit
Wired
Vanity Fair
Style
Details

Visit our sister sites

Subscribe to a magazine



VIEW MOBILE SITE

© 2012 Condé Nast. All rights reserved
Use of this Site constitutes acceptance of our **User Agreement** (effective 3/21/12) and **Privacy Policy** (effective 3/21/12)
**Your California Privacy Rights**
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Condé Nast.

Ad Choices▷

# EXHIBIT M



🏠 Main Menu ▾ | My Stories: 25 ▾ | Forums | Subscribe Now | Search | 🔍 | Log In

# LAW & DISORDER / CIVILIZATION & DISCONTENTS

## Oracle, Google still bickering over paid shills long after trial

### And Oracle says Google isn't telling the whole story.

by Timothy B. Lee - Aug 17 2012, 4:00am PDT

ANDROID | INTELLECTUAL PROPERTY | MOBILE COMPUTING | 21

On the orders of Judge William Alsup, Google and Oracle have filed documents detailing their financial ties to journalists, bloggers, and others who have commented on their legal battle. There are no smoking guns.

Only one commentator, blogger Florian Mueller, seems to fit the spirit of Judge Alsup's order. Oracle acknowledged that it is a client of Mueller's, though the database firm insists that "he was not retained to write about the case." Mueller disclosed the relationship back in April.

Both sides acknowledge that numerous individuals fit the letter of Judge Alsup's order—including, it should be noted, your correspondent, who was working as an engineering intern at Google the summer Oracle filed its lawsuit. But Oracle argues that Google is the larger offender on this score:

> Much of the copyright and fair use commentary that occurred outside of the courtroom before and during the pendency and trial of this case was instigated by Google or its direct or indirect representatives... Google maintains a network of direct and indirect "influencers" to advance Google's intellectual property agenda. This network is extensive, including attorneys, lobbyists, trade associations, academics, and bloggers, and its focus extends beyond pure intellectual property issues to competition/antitrust issues... Oracle believes that Google brought this extensive network of influencers to help shape public perceptions concerning the positions it was advocating throughout this trial.

Oracle singles out two specific individuals as examples: it notes that Ed Black of the Google-supported Computer and Communications Industry Association has written about the copyrightability of APIs, and that Jonathan Band, author of a book cited by Google in its court filings, has financial ties to the search giant.

For its part, Google listed several categories of individuals who have received money from Google—universities, trade associations, users of Google's advertising networks, Google employees and vendors, and expert consultants—and asked the judge for further guidance about whether it needed to produce lists of people in each category.

The responses seem to underscore the impracticality of Judge Alsup's original order. The goal of

### ORACLE V. GOOGLE ⬏

**Judge: Google didn't follow "show your shills" order**

**With anti-shill order, Google/Oracle judge enters "uncharted territory"**

**"Name your shills," judge orders Oracle, Google**

**Google submits $4 million bill for costs in Oracle lawsuit**

**Oracle accepts $0 in damages from Google, moves toward appeal**

View all…


PSST! HEY ARS READERS! ⬏

LOOKING FOR A TECH JOB? SEARCH ARS JOBS TODAY.

 SEARCH JOBS

## TOP FEATURE STORY ⬏



FEATURE STORY (3 PAGES)

### PC laptop buying guide—back to school edition

We wade through minuscule differences between laptops so you don't have to.

by Andrew Cunningham - Aug 22 2012, 6:00am PT | 115

## STAY IN THE KNOW WITH ⬏

    

## LATEST NEWS ⬏


**Here come the inflate-a-bots: iRobot's AIR blow-up bot prototypes**


**License plates scanned at border, data shared with car insurance group**


**Mars rover passes its first driving test**

greater transparency is laudable. But if Google and Oracle had taken it literally, the result could easily have been hundreds of names, most of whom had only a tenuous connection to the software companies. If Judge Alsup wants the order to actually achieve its intended goal, he's going to have to be more specific about which kinds of financial ties need to be disclosed.

**Update**: A CCIA spokesman sent the following comment.

> CCIA has publicly held our position on the copyrightability of APIs since Oracle (and Sun) was a member of our association and Google was not (we also ran the Open Source and Industry Alliance). Furthermore, Google is one of many paying members and is clearly disclosed on our website. We frequently take positions at odds with individual members when we don't agree with their underlying policy stances.
>
> As to Jon Band (who can speak for himself), he wrote the original edition of *Interfaces on Trial* in 1995, a year before Google existed. The referenced book, *Interfaces on Trial 2.0*, was written before Oracle acquired Sun.

## READER COMMENTS  21

 **Timothy B. Lee** / Timothy covers tech policy for Ars, with a particular focus on patent and copyright law, privacy, free speech, and open government. His writing has appeared in Slate, Reason, Wired, and the New York Times.

Follow @binarybits

← OLDER STORY    |    NEWER STORY →

## YOU MAY ALSO LIKE

**DOWN THE MEMORY HOLE**

### Apple attempts to scrub controversial "Genius" ads from the Internet



### Ubisoft boss: free-to-play a natural reaction to high piracy rates

**PUBLIC SHAMING**

### German firm threatens to publish IP addresses of alleged porn pirates

### ARS JOBS

powered by **monster**

**Jr. Documentum Developer (Shruti)**
NJ-Hopewell, Hi, Currently I have a Jr. Documentum Developerposition from one of my client. Below is...

**Project Manager**
AZ-Phoenix, Description: Responsible for planning, directing and coordinating Sharepoint COE project...

**Firmware Developer**
VA-Herndon, VA-12-0034 Firmware Engineer Location: Herndon, VA Clearance required: None; Candidates ...

See more job listings

Oracle, Google still bickering over paid shills long after trial | Ars Technica

SITE LINKS

About Us
Advertise with us
Contact Us
Reprints

SUBSCRIPTIONS

Subscribe to Ars

MORE READING

RSS Feeds
Newsletters

CONDE NAST SITES

Reddit
Wired
Vanity Fair
Style
Details

Visit our sister sites

Subscribe to a magazine



VIEW MOBILE SITE

© 2012 Condé Nast. All rights reserved
Use of this Site constitutes acceptance of our User Agreement (effective 3/21/12) and Privacy Policy (effective 3/21/12)
Your California Privacy Rights
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Condé Nast.

Ad Choices

# EXHIBIT N



PSST! HEY ARS READERS! LOOKING FOR A TECH JOB? SEARCH WIRED JOBS TODAY. WIRED SEARCH JOBS

Main Menu ▾    My Stories: 25 ▾    Forums    Subscribe Now      Search     Log In

# LAW & DISORDER / CIVILIZATION & DISCONTENTS

## With anti-shill order, Google/Oracle judge enters "uncharted territory"

Lawyers question wisdom of Judge Alsup's order but see few legal problems.

by **Timothy B. Lee** - Aug 7 2012, 4:10pm PDT

**INTELLECTUAL PROPERTY**   43



📷 TangoPango

Two legal experts have told Ars Technica that Judge William Alsup's new order forcing Google and Oracle to name their paid advocates is highly unusual—but neither could pinpoint any specific constitutional problems.

"I've never seen an order like this. I'm not sure this order is legitimate. I think we're in uncharted territory," said Eric Goldman, a respected legal scholar and the author of a popular technology law blog.

"I can't say it's impossible that there are some constitutional issues here, but I'm struggling to figure out what they would be," said Paul Alan Levy, an attorney at Public Citizen who specializes in online free

### ORACLE V. GOOGLE

Judge: Google didn't follow "show your shills" order

Oracle, Google still bickering over paid shills long after trial

"Name your shills," judge orders Oracle, Google

Google submits $4 million bill for costs in Oracle lawsuit

Oracle accepts $0 in damages from Google, moves toward appeal

PSST! HEY ARS READERS!

LOOKING FOR A TECH JOB? SEARCH ARS JOBS TODAY.

ars technica   SEARCH JOBS

### TOP FEATURE STORY ⌐



FEATURE STORY (3 PAGES)

**PC laptop buying guide—back to school edition**

We wade through minuscule differences between laptops so you don't have to.

by **Andrew Cunningham** - Aug 22 2012, 6:00am PT   116

### STAY IN THE KNOW WITH ⌐

    ✉ 

### LATEST NEWS ⌐

 **Here come the inflate-a-bots: iRobot's AIR blow-up bot prototypes**

 **License plates scanned at border, data shared with car insurance group**

 **Mars rover passes its first driving test**

speech cases.

View all…

"If the judge tried to issue an order to the writers, it would raise much more serious potential questions than issuing an order to the parties. Parties are often required to disclose their financial relationships to the extent that they might bear on issues such as recusal," he added. "People who file amicus briefs are required to disclose whether they had a financial relationship with the party."

But Goldman and Levy both worried that the way the order was drafted could undermine its purpose.

"It would be a lot more logical if the judge thought the litigants were trying to sway the jury or the judge while the case was proceeding," Goldman said. But the order was issued only after most of the important decisions have already been made.

Goldman also pointed out that Judge Alsup's order is extraordinarily broad. Anyone who has written about the Google/Oracle case and received money from either party would have to be listed in the firms' disclosures. Goldman says that, since he gets a small amount of money from the Google ads on his blog, he could theoretically be included on Google's list. (I might also be included on Google's list, since I was wrapping up a summer internship at Google when the lawsuit was filed back in August 2010. I wasn't writing about the case then, however.)

"I wonder if it produces too much information," Levy said. If taken literally, Google and Oracle could produce an extraordinarily long list of names, most of whom have only tangential connections to the software giants. Levy notes that the firms are not required to give details on how and why the funds were provided—the kind of context that would be needed to figure out which relationships raised ethical questions.

## Improper influences

Alsup seems set on addressing a growing problem in the world of punditry: nominally independent commentators who are secretly in the pay of interested parties. "There are a lot of people on Oracle's payroll and Google's payroll who are industry pundits. Any of those could have triggered his concern," Goldman told us.

But it's not clear that Alsup's broadly worded order is an appropriate or effective remedy for that problem. The judicial process is deliberately engineered to be insulated from outside pressures, including those from the press. So even if we make the plausible assumption that media coverage of the case has been slanted by corporate cash, that doesn't necessarily mean the slanted coverage would affect the outcome of the legal process.

One real concern comes from instances where an "independent" news article, study, or other work is cited by parties to a court case, and the need to require disclosure of financial relationships there seem much stronger. But in its current form, Judge Alsup's order seems unnecessarily broad.

If the order stands, Google and Oracle will have to name names by August 17.

READER COMMENTS  43

 **Timothy B. Lee** / Timothy covers tech policy for Ars, with a particular focus on patent and copyright law, privacy, free speech, and open government. His writing has appeared in Slate, Reason, Wired, and the New York Times.

Follow @binarybits

← OLDER STORY  |  NEWER STORY →

YOU MAY ALSO LIKE

### DOWN THE MEMORY HOLE
**Apple attempts to scrub controversial "Genius" ads from the Internet**

 **Ubisoft boss: free-to-play a natural reaction to high piracy rates**

### PUBLIC SHAMING
**German firm threatens to publish IP addresses of alleged porn pirates**

## ARS JOBS ◢  powered by monster

**Engineering Director**
VA-Alexandria, Job Description Job Title: Engineering Director Department: Engineering Reports to: C…

**Software Test Engineer**
WA-Redmond, We are looking for an experienced STE to support our software test team. This is a long …

**Process Production Engineer - Chemicals**
IL-Joliet, Outstanding opportunity with a company who is performing at a very high level. They are p…

See more job listings

## SITE LINKS

**About Us**
**Advertise with us**
**Contact Us**
**Reprints**

## SUBSCRIPTIONS

**Subscribe to Ars**

## MORE READING

**RSS Feeds**
**Newsletters**

## CONDE NAST SITES

**Reddit**
**Wired**
**Vanity Fair**
**Style**
**Details**

Visit our sister sites

Subscribe to a magazine



VIEW MOBILE SITE

© 2012 Condé Nast. All rights reserved
Use of this Site constitutes acceptance of our **User Agreement** (effective 3/21/12) and **Privacy Policy** (effective 3/21/12)
**Your California Privacy Rights**
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Condé Nast.

**Ad Choices**

# EXHIBIT O



PSST! HEY ARS READERS! | LOOKING FOR **A TECH JOB?** SEARCH ARS JOBS TODAY.


SEARCH JOBS

🏠 Main Menu ▾   My Stories: **25** ▾   Forums   Subscribe Now   Search   🔍   Log In

# LAW & DISORDER / CIVILIZATION & DISCONTENTS

## "Name your shills," judge orders Oracle, Google

Judge is concerned that parties may be paying those who write about the case.

by **Timothy B. Lee** - Aug 7 2012, 12:54pm PDT

`81`

With the epic legal battle between Google and Oracle winding down, Judge William Alsup today made an unusual demand: the parties need to tell the court who its paid advocates are.

Alsup is worried that Google and Oracle may have "retained or paid print or internet authors, journalists, commentators, or bloggers who have and/or may publish comments on the issues in this case." The information could "be of use on appeal or on any remand to make clear whether any treatise, article, commentary, or analysis on the issues posed by this case are possibly influenced by financial relationships to the parties or counsel."

We know of at least one blogger who fits the description: Florian Mueller of the FOSS Patents blog disclosed in April that he counts Oracle as a client. If Oracle and Google comply with the order, we may discover that others involved in the public debate are on the take from one of the parties in the case.

But it's not clear that such an order is consistent with the Constitution. At least one legal scholar, Eric Goldman of Santa Clara University, has questioned whether the order is constitutional. Read more in-depth comments from experts on the constitutionality of this order here.

Th full text of the order is below:

> The Court is concerned that the parties and/or counsel herein may have retained or paid print or internet authors, journalists, commentators or bloggers who have and/or may publish comments on the issues in this case. Although proceedings in this matter are almost over, they are not fully over yet and, in any event, the disclosure required by this order would be of use on appeal or on any remand to make clear whether any treatise, article, commentary or analysis on the issues posed by this case are possibly influenced by financial relationships to the parties or counsel. Therefore, each side and its counsel shall file a statement herein clear identifying all authors, journalists, commentators or bloggers who have reported or commented on any issues in this case and who have received money (other than normal subscription fees) from the party or its counsel during the pendency of this action. This disclosure shall be filed by noon on Friday, August 17, 2012. It is so ordered.

### ORACLE V. GOOGLE 

**Judge: Google didn't follow "show your shills" order**

Oracle, Google still bickering over paid shills long after trial

With anti-shill order, Google/Oracle judge enters "uncharted territory"

Google submits $4 million bill for costs in Oracle lawsuit

Oracle accepts $0 in damages from Google, moves toward appeal

View all…

PSST! HEY ARS READERS!

LOOKING FOR **A TECH JOB?** SEARCH ARS JOBS TODAY.




SEARCH JOBS

## TOP FEATURE STORY 


FEATURE STORY (3 PAGES)

**PC laptop buying guide—back to school edition**

We wade through minuscule differences between laptops so you don't have to.

by **Andrew Cunningham** - Aug 22 2012, 6:00am PD

`117`

## STAY IN THE KNOW WITH

   

## LATEST NEWS ◢


**Here come the inflate-a-bots: iRobot's AIR blow-up bot prototypes**


**License plates scanned at border, data shared with car insurance group**


**Mars rover passes its first driving test**

READER COMMENTS  `81`

 **Timothy B. Lee** / Timothy covers tech policy for Ars, with a particular focus on patent and copyright law, privacy, free speech, and open government. His writing has appeared in Slate, Reason, Wired, and the New York Times.

Follow @binarybits

← OLDER STORY | NEWER STORY →

## YOU MAY ALSO LIKE

**DOWN THE MEMORY HOLE**

**Apple attempts to scrub controversial "Genius" ads from the Internet**



**Ubisoft boss: free-to-play a natural reaction to high piracy rates**

**PUBLIC SHAMING**

**German firm threatens to publish IP addresses of alleged porn pirates**

### ARS JOBS    powered by monster

**SR Marketing Engineer NSPP - Outdoor Power Products**
FL-Orlando, JOB TITLE: Senior Marketing Engineer ( Non System Power Products) - NSPP Lake Mary / Orl...

**SAP Cash mgmt, SAP Treasury & Risk, SAP Bank Commun Mgmt**
NE-Omaha, CONTACT VIDYA II vidya@apollotechsolutions.com II 571-934-7144 Job Details: Title : SAP Ca...

**Senior Help Desk**
WI-Cudahy, Description: Position Title: Help Desk III Scheduled Hours: Full Time (8:00-5:00PM) Repor...

See more job listings

## SITE LINKS

About Us
Advertise with us
Contact Us
Reprints

## SUBSCRIPTIONS

Subscribe to Ars

## MORE READING

RSS Feeds
Newsletters

## CONDE NAST SITES

Reddit
Wired
Vanity Fair
Style
Details

Visit our sister sites

Subscribe to a magazine



VIEW MOBILE SITE

© 2012 Condé Nast. All rights reserved
Use of this Site constitutes acceptance of our **User Agreement** (effective 3/21/12) and **Privacy Policy** (effective 3/21/12)
**Your California Privacy Rights**
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Condé Nast.

Ad Choices

# EXHIBIT P



PSST! HEY ARS READERS! LOOKING FOR A TECH JOB? SEARCH WIRED JOBS TODAY. WIRED SEARCH JOBS

🏠 | Main Menu ▾ | My Stories: 25 ▾ | Forums | Subscribe Now | Search 🔍 | Log In

# LAW & DISORDER / CIVILIZATION & DISCONTENTS

## *Oracle v. Google* judge asks for comment on EU court ruling

The ruling was that some aspects of programming languages can't be copyrighted.

by **Timothy B. Lee** - May 3 2012, 4:15pm PDT

65

📷 Photograph by Romain Guy

The copyright phase of the *Oracle v. Google* trial is winding down. While the world waits for a jury verdict on the facts, the judge overseeing the case is wrestling with the complexities of the law. Oracle has argued that the "structure, sequence and organization" of the Java API is eligible for copyright protection, while Google disagrees.

On Thursday, Judge William Alsup asked each party to submit a 20-page brief answering a series of 13 in-depth questions about the Java API and the relevant precedents. Among other things, he asked the parties to weigh in on the implications of this week's EU court decision that allowing functional characteristics of programming languages to be copyrighted would "monopolize" ideas.

Some of Judge Alsup's comments in the courtroom in recent days suggested that he is skeptical of Oracle's position.

"If someone were to give you an assignment and say, 'Go write a guide book on how to drive from San Francisco to Monterey,' and everybody could sit down and write their own two-page thing on that, there would be some similarities. But the idea is not protected," Alsup said in court last Friday.

"Implementations are not derivative works. They are independent works, that simply start with the idea of the specification," he argued. "When somebody looks at a specification, and says, this is the input, and these are the outputs... programmers each use their own creativity" to implement it. This line of argument may lead Alsup to conclude that the "sequence, structure, and organization" of APIs are not copyrightable.

Indeed, some of the questions Alsup raised in his Thursday memo pressed further on this point. "Is the input-output (i.e., argument and return) scheme of a method copyrightable?" he asked. "For example, can someone copyright the function of inputting an angle and outputting the cosine of that angle? If someone has a copyright on a particular program to find cosines, does that copyright cover all other implementations that perform the identical function (input = angle, output = cosine)?"

Alsup also asked about the significance of a precedent that Oracle has cited repeatedly. The United States Court of Appeals for the Seventh Circuit—whose rulings Judge Alsup is not necessarily bound to follow—found that some aspects of a dental taxonomy are eligible for copyright protection. Alsup

### ORACLE V. GOOGLE

Judge: Google didn't follow "show your shills" order

Oracle, Google still bickering over paid shills long after trial

With anti-shill order, Google/Oracle judge enters "uncharted territory"

"Name your shills," judge orders Oracle, Google

Google submits $4 million bill for costs in Oracle lawsuit

View all…

PSST! HEY ARS READERS! LOOKING FOR A TECH JOB? SEARCH ARS JOBS TODAY. ars technica SEARCH JOBS





## TOP FEATURE STORY



FEATURE STORY (3 PAGES)

### PC laptop buying guide—back to school edition

We wade through minuscule differences between laptops so you don't have to.

by **Andrew Cunningham** - Aug 22 2012, 6:00am PDT

119

## STAY IN THE KNOW WITH



## LATEST NEWS

**NECROMANCY**

**Black Isle Studios makes a mysterious comeback (in name, at least)**



**Here come the inflate-a-bots: iRobot's AIR blow-up bot prototypes**



**License plates scanned at border, data shared with car insurance group**

asked the parties to weigh in on whether the Seventh Circuit's reasoning has been endorsed by Alsup's own Ninth Circuit Court. And he probed whether the reasoning of that case applies to the "structure, sequence, and organization" of the Java APIs.

Finally, Alsup probed the argument that cloning the Java APIs was necessary to achieving compatibility between Java and the Android APIs. Java and Android are not designed to directly interoperate. "What exactly are the parties referring to?" he asked. "Is it 'compatibility' with programmers who write in the Java programming language? Or compatibility with pre-existing programs? If so, approximately what percent of pre-existing programs written for the Java platform are compatible with Android? Is it compatibility with the TCK? Or Java virtual machine? Or java compiler?"

The judge gave Google and Oracle a week to submit responses.

**Update:** The jury has gone home for the night, but it may be at a standstill even when it returns. Late in the day, the jury sent the judge a question: "What happens if we can't reach a unanimous decision and people are not budging?" Judge Alsup encouraged the jury to try to reach a consensus on as many points as possible. He suggested that if the jury was not able to reach a verdict on all of the copyright issues, the court would continue with the patent phase of the trial. The jury will continue its deliberations tomorrow.

*Joe Mullin, on location at the courthouse, contributed reporting for this story.*

  READER COMMENTS 65

 **Timothy B. Lee** / Timothy covers tech policy for Ars, with a particular focus on patent and copyright law, privacy, free speech, and open government. His writing has appeared in Slate, Reason, Wired, and the New York Times.

Follow @binarybits

← OLDER STORY    |    NEWER STORY →

YOU MAY ALSO LIKE ◢

 **Mars rover passes its first driving test**

DOWN THE MEMORY HOLE
**Apple attempts to scrub controversial "Genius" ads from the Internet**

 **Ubisoft boss: free-to-play a natural reaction to high piracy rates**

ARS JOBS ◢    powered by monster

**Desktop Support/Jr. Admin**
VA-Charlottesville, Vaco Technology is seeking qualified candidates for a Desktop Support/Jr. Admin ...

**SOFTWARE QUALITY ASSURANCE ANALYST**
WI-Madison, Amphion is looking for a bright, energetic and motivated Software Quality Assurance Anal...

**Server Administrator Team Lead**
NJ-Lyndhurst, Our client, a prestigious Healthe Care Center, is actively seeking a Server Administra...

See more job listings

## SITE LINKS

About Us

Advertise with us

Contact Us

Reprints

## SUBSCRIPTIONS

Subscribe to Ars

## MORE READING

RSS Feeds

Newsletters

## CONDE NAST SITES

Reddit

Wired

Vanity Fair

Style

Details

Visit our sister sites

Subscribe to a magazine



VIEW MOBILE SITE

© 2012 Condé Nast. All rights reserved

Use of this Site constitutes acceptance of our **User Agreement** (effective 3/21/12) and **Privacy Policy** (effective 3/21/12)

**Your California Privacy Rights**

The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Condé Nast.

Ad Choices

# EXHIBIT Q

Have an account

**Ars Technica**
@arstechnica

"Name your shills," judge orders Oracle, Google arstechnica.com/tech-policy/20... by @binarybits

Reply Retweet Favorite

| 20 RETWEETS | 6 FAVORITES |
|---|---|

12:54 PM - 7 Aug 12 via Ars tweetbot · Embed this Tweet

**John Rockefeller** @Rocky1138 7 Aug
@arstechnica @binarybits Thought that said Name Your Shits. Woulad been way cooler
Details

## Don't miss any updates from Ars Technica

Join Twitter today and follow what interests you!

Sign up

Text **follow arstechnica** to **40404** in the United States

© 2012 Twitter About Help



# EXHIBIT R



# EXHIBIT S



Have an account

**Timothy B. Lee**
@binarybits

I received Google money in grad school but have gotten no Google money since becoming a full-time journalist. I've never taken Oracle money.

Reply Retweet Favorite

**1**
RETWEET

6:13 PM - 7 Aug 12 via web · Embed this Tweet

**kjkorri** @alascanvs 7 Aug
@binarybits any Lycos or Geocities money for the parking meters?
Details

## Don’t miss any updates from Timothy B. Lee

Join Twitter today and follow what interests you!

Text **follow binarybits** to **40404** in the United States

Sign up

# EXHIBIT T



# EXHIBIT U



Timothy B. Lee
@binarybits

Follow

More from @paulalanlevy on Judge Alsup's shill order: "Absent a compelling explanation, it doesn't make sense to me." pubcit.typepad.com/clpblog/2012/0 ...

← Reply  ⇄ Retweet  ★ Favorite

3:41 PM - 8 Aug 12 via web · Embed this Tweet

**Don't miss any updates from Timothy B. Lee**
Join Twitter today and follow what interests you!

Full name          Email          Password

Text **follow binarybits** to **40404** in the United States

© 2012 Twitter   About   Help

# EXHIBIT V

News (http://allthingsd.com/category/news/?mod=atdnav)       Reviews (http://allthingsd.com/category/reviews/?mod=atdnav)

Mobile (http://allthingsd.com/category/mobile/?mod=atdnav)       Media (http://allthingsd.com/category/media/?mod=atdnav)

Social (http://allthingsd.com/category/social/?mod=atdnav)       Enterprise (http://allthingsd.com/category/enterprise/?mod=atdnav)

Commerce (http://allthingsd.com/category/commerce/?mod=atdnav)       Voices (http://allthingsd.com/category/voices/?mod=atdnav)

Conferences (http://allthingsd.com/conferences/?mod=atdnav)       Video (http://allthingsd.com/video/?mod=atdnav)

Jobs (http://www.fins.com/allthingsd-jobs/)

View by Writer (http://allthingsd.com/about/)

Trending – Polaroid Z2300: Modern Take on a Classic Camera (http://allthingsd.com...20120823-polaroid-z2300-modern-take-on-a-classic-camera/?...)   Follow @ATDPreview



# Arik Hesseldahl (http://allthingsd.com/author/arik/)

ethics statement    bio    e-mail (mailto:arik@allthingsd.com)    RSS (http://allthingsd.com/author/arik/feed/)    Subscribe    9k

Follow @ahess247

Recent Posts by Arik Hesseldahl

# Google: No Paid Bloggers Here, Your Honor

AUGUST 17, 2012 AT 1:50 PM PT

Tweet    Like    Share    Share

Print (http://allthingsd.com/?p=242701&ak_action=printable)



To investors who want to retire comfortably.

If you have a $500,000 portfolio, download the guide by *Forbes* columnist and money manager Ken Fisher's firm. It's called **"The 15-Minute Retirement Plan."**

Click Here to Download Your Guide!

FISHER INVESTMENTS®



I have no idea what you're talking about... ...So heres a cat eating a leaf.

**LATEST VIDEO**

View all videos » (http://allthingsd.com/video/)

(http://allthingsd.com/20120817/google-no-paid-bloggers-here-your-honor/no-idea-feature/)Remember how last week the judge in the all-but-concluded case of Oracle vs. Google ordered the two companies to disclose whom, if anyone, they might have been paying to write about the case (http://allthingsd.com/20120807/judge-orders-google-and-oracle-to-disclose-who-they-paid-to-write-about-java-trial/)? Yeah, that.

So anyway, today was the deadline for the companies to drop their filings, and, well, here they are. Short answer: Oracle reiterated what it said before, that it had retained the patent law blogger Florian Mueller (http://www.blogger.com/profile/13298342449544124176), he of Foss Patents (http://www.fosspatents.com/), as a paid consultant in the case, though this wasn't exactly news since Mueller and Oracle had both already disclosed the relationship

How a $1 iPhone App Made Millions for Two Brothers (06:28) (/video/?video_id=17900AFA-C956-46C1-9E7F-4571BD10E929)

Search »

(http://www.fosspatents.com/2012/04/oracle-v-google-trial-evidence-of.html). It also mentioned an Oracle corporate blogger who wrote about the case while it was going on.

Google for its part appears to have shrugged. "Neither Google nor its counsel has paid an author, journalist, commentator or blogger to report or comment on any issues in this case. And neither Google nor its counsel has been involved in any *quid pro quo* in exchange for coverage of or articles about the issues in this case."

That statement more or less sums up Google's position, though it goes on to say that it doesn't quite understand what the judge is asking for.

The end of Oracle's filing provides a clue. It names Ed Black (http://www.ccianet.org/Ed-Black), president and CEO of the Computer and Communications Industry Association, of which Google has long been a paid member (http://www.ccianet.org/index.asp?bid=11), and Jonathan Band (http://www.policybandwidth.com/), author of the book "Interfaces on Trial 2.0 (http://mitpress.mit.edu/catalog/item/default.asp?ttype=2&tid=12598)," which Google referenced in some of its presentations in court.

Says Oracle: "Google maintains a network of direct and indirect 'influencers' to advance Google's intellectual property agenda. This network is extensive, including attorneys, lobbyists, trade associations, academics, and bloggers, and its focus extends beyond pure intellectual property issues to competition/antitrust issues. … Oracle believes that Google brought this extensive network of influencers to help shape public perceptions concerning the positions it was advocating throughout this trial."

**Update:** I've just heard from Daniel O'Connor, the Senior Director of Public Policy & Government Affairs at the CCIA, and he reminds me that the organization has long had a staked-out position on the copyrightability of APIs — which was a key issue in the trial — since the days when Oracle and Sun Microsystems were members of the organization and Google was not.

**Another update:** And now I've received a statement from Band:

> I am a registered lobbyist for NetCoalition and the Computer & Communications Industry Association, trade associations whose members include Google. Oracle until recently also was a member of CCIA. I do not represent Google.
>
> The book cited in Google's brief, Interfaces on Trial 2.0, was accepted for publication by MIT Press in the fall of 2009, before Oracle completed its purchase of Sun Microsystems, and approximately a year before Oracle sued Google. As the book clearly indicates, much of it is based on articles I authored or co-authored prior to 2005, while I was a partner at Morrison & Foerster, the firm that now represents Oracle in this litigation. Several of my co-authors were also Morrison & Foerster lawyers.
>
> The book advances the same policy perspective as the first volume, Interfaces on Trial, which was published in 1995, when I was a partner at Morrison & Foerster. In the Acknowledgements section of that volume, we thank Michael Jacobs (the Morrison & Foerster partner who signed the Oracle filing) and several other then-Morrison & Foerster partners for their contribution to our understanding of copyright law. Both books are available for free download at http://www.policybandwidth.com/interfaces-2-0 (http://www.policybandwidth.com/interfaces-2-0).
>
> It should be noted that the policy perspective we articulated in both books was shared by Sun Microsystems, and, at that time, by Oracle. Sun and Oracle not only were members of the CCIA, but were also members of the American Committee for Interoperable Systems and the European Committee for Interoperable Systems, groups that advocated positions consistent with those taken by Google in this case.

There you have it. We'll see what presiding Judge William Alsup says about this in the coming days. I've embedded the two filings below.

First, Google's filing.

GOOG-1237-main (http://www.scribd.com/doc/103160126/GOOG-1237-main)

FEATURED POSTS | FEATURED REVIEWS



How to Become an App Store Millionaire: Make a Hit App, and Don't Make Anything Else (http://allthingsd.com/20120823/how-to-become-an-app-store-millionaire-make-a-hit-app-and-dont-make-anything-else/?mod=ATD_featured_posts_widget)

Peter Kafka in Media



PayPal Trumps Square's Deal With Starbucks by Partnering With Discover (http://allthingsd.com/20120822/paypal-trumps-squares-deal-with-starbucks-by-partnering-with-discover/?mod=ATD_featured_posts_widget)

Tricia Duryee in Commerce



Ringside as Apple and Samsung Go Into the Final Round (http://allthingsd.com/20120821/apple-and-samsung-go-into-the-final-round/?mod=ATD_featured_posts_widget)

John Paczkowski in Mobile

View all today's news » (http://allthingsd.com)



(http://ad.doubleclick.net/click;h=v8/3cdb/0/0/%2a/e;258762725;1-0;0:64023762;3823-300/100:49642447/49635595/1;u=null**null**300x100;~okv;u=null**null**300x100/into-mobile/register/?mod=atd_dmobile2012explore_onlinead300x100)

> The very powerful and the very stupid have one thing in common. Instead of changing their views to fit the facts, they try to change the facts to fit their views.
>
> — Kim Dotcom, in an open letter to Hollywood, written from house arrest in New Zealand

JOB LISTINGS (http://www.fins.com/allthingsd-jobs?reflink=djm_modulewsj_widgetjobs_atdnews&cobrand=ATD) (http://www.fins.com/?reflink=djm_modulewsj_widgetjobs_atdnews&cobrand=ATD)

VP of Sales - Mobile Advertising (http://sales-jobs.fins.com/Jobs/248234/VP-of-Sales-Mobile-Advertising?reflink=djm_modulewsj_widgetjobs_jobsatdnews&cobrand=ATD)
**Startup in Mobile Advertising Space** - Los Angeles, CA
New York City, NY
Raleigh, NC

NBMBAA - Brand Marketing Internship Profile (Interns Only) (http://sales-jobs.fins.com/Jobs/170305/NBMBAA-Brand-Marketing-Internship-Profile-Interns-Only?reflink=djm_modulewsj_widgetjobs_jobsatdnews&cobrand=ATD)
**Coca-Cola** - Career Fair & Conference

Business Development Manager (w/m) ad interim (http://europe-jobs.fins.com/Jobs/230384/Business-Development-Manager-w-m-ad-interim?reflink=djm_modulewsj_widgetjobs_jobsatdnews&cobrand=ATD)



**Robert Half** - Rhein-main Gebiet, DE

Financial Representative (http://sales-jobs.fins.com/Jobs/255188/Financial-Representative?reflink=djm_modulewsj_widgetjobs_jobsatdnews&cobrand=ATD)
**Thrivent Financial** - Morristown, NJ
Princeton Jct, NJ
Toms River, NJ

VIEW MORE JOBS » (http://www.fins.com/allthingsd-jobs)

EMPLOYERS & RECRUITERS » (http://recruiter.fins.com/PartnerLanding.aspx?ATD=1&reflink=reflink=djm_modulewsj_widgetjobs_atdnews&cobrand=A

POST A JOB (http://recruiter.fins.com/PartnerLanding.aspx?ATD=1&cobrand=ATD&reflink=djm_modulewsj_widgetjobs_postatdnews)

- Download
- Share
- Embed

1
of 4

And now Oracle's.

Oracle Response to Aug. 7 Order (http://www.scribd.com/doc/103160112/Oracle-Response-to-Aug-7-Order)



- Download
- Share
- Embed

1
of 3

**Tagged with:** Android (http://allthingsd.com/tag/android/), Google (http://allthingsd.com/tag/google/), Java (http://allthingsd.com/tag/java/), lawsuits (http://allthingsd.com/tag/lawsuits/), litigation (http://allthingsd.com/tag/litigation/), Oracle (http://allthingsd.com/tag/oracle/), Sun Microsystems (http://allthingsd.com/tag/sun-microsystems/)

**Install Windows Live Now**
Secure Download. Instant Install. Download Latest Version Now!
windows-live-messenger.soft32.com

**Java Updates (Best)**
Repair Windows & Boost Your PC. Download Repair Tool - Takes 1 Minute!
ErrorsFixer.com/Microsoft

**Find The Best Cell Phones**
Looking to compare cell phones? Find the best here!
CellMobileDirect.com

**Eco friendly hosting**
ComputeQloud servers runs on 100% renewable energy from clean sources
GreenQloud.com

## We recommend

**LTE iPhone Could Bring Sprint "To Its Knees" (http://allthingsd.com/20120319/lte-iphone-could-bring-sprint-to-its-knees/)**

**Oh, Snap: Kodak Says Apple Is Just Playing Spoiler With Patent Claim (http://allthingsd.com/20120518/oh-snap-kodak-says-apple-is-just-playing-spoiler-with-patent-claim/)**

**Java Trial Judge Slaps Google Over Disclosure Order (http://allthingsd.com/20120820/java-trial-judge-slaps-google-over-disclosure-order/)**

**Microsoft Updates SkyDrive Web Site, Adds Android App (http://allthingsd.com/20120814/microsoft-updates-skydrive-web-site-adds-android-app/)**

**Apple: Samsung Didn't Live Up to Its Standards Obligations (http://allthingsd.com/20120817/apple-samsung-didnt-live-up-to-its-standards-obligations/)**

## From around the web

Content from Sponsors What's this?

**6 Markets that Will Rule the Next Decade (http://www.businesswithoutborders.com/industries/others-industries/the-decade-of-the-civets/)** (Business Without Borders)

**Buffett Sells 3 American "Darlings" (http://moneymorning.com/ob/buffett-sells-3-american-darlings/)** (Money Morning)

**Why You Should Cancel Your Cell Phone Contract (http://www.dailyfinance.com/2009/10/21/savings-experiment-drop-the-cell-phone-contract/)** (Daily Finance)

**$100,000 income: No big deal anymore (http://www.bankrate.com/finance/personal-finance/100-000-income-no-big-deal-anymore-1.aspx)** (Bankrate.com)

**Innocent Of Speeding? In MA, You'll Pay Up Anyway (http://www.thecarconnection.com/news/1066464_innocent-of-speeding-in-ma-youll-pay-up-anyway)** (TheCarConnection.com)

---

## 10 comments

0 Stars ▾

 Leave a message...

Discussion ▾    Community ▾     ⚙ ▾

 **GiggityGoldStar** · 6 days ago
"Neither Google nor its counsel has paid an author, journalist, commentator or blogger to report or comment on any issues in this case."

..."in this case" is key. So who are they paying and why?
3 ▲ | 1 ▾ | Reply · Share ›

　　 **Digital Iconoclast** · 6 days ago · parent
　　that's a start, but to this eye, they appear to have actually answered a narrow version of the question. 'quid pro quo' appears to be one limited hangout (yes, Nixonian) and, "outside of regular subscriptions" was in the original order. Just how many "regular subscriptions" does Google have?

　　Notice that they didn't say "any person outside of our pr staff." But, why answer a broader question than was asked?
　　1 ▲ | 1 ▾ | Reply · Share ›

　　　　 **demodave** · 5 days ago · parent
　　　　Indeed, trial lawyers are paid to answer only the question asked and no others, and only if there is no possible way to avoid answering the question!
　　　　0 ▲ | ▾ | Reply · Share ›

 **Flitzy** · 6 days ago
Google has no paid bloggers? Does that mean that the Techcrunch staff works for free?
0 ▲ | 6 ▾ | Reply · Share ›

　　 **lttiam** · 6 days ago · parent
　　Why would google pay techcrunch to write glowing things about apple and negative things about itself?
　　4 ▲ | 1 ▾ | Reply · Share ›

 **Snoggler** • 5 days ago • parent

all of the blogs, you pick TC? they're among the most negative on anything Google...I actually thought you were being sarcastic.....

1 ∧ | 1 ∨ • Reply • Share ›

 **Flitzy** • 5 days ago • parent

Techcrunch is pretty slanted toward Google, though. I suppose I could have said Engadget, Verge, or TWiT but either way the point is valid.

0 ∧ | 4 ∨ • Reply • Share ›

 **Snoggler** • 5 days ago • parent

no, either way it's not valid. TC is biased AGAINST google. Of all of the media, you actually think TC favours Google? it makes people wonder if you read these blogs at all. Note Ittiam's reply, TC is famous for being Apple fanboys, and ever since the rise of android, they're very negative on google.

2 ∧ | 1 ∨ • Reply • Share ›

 **Flitzy** • 5 days ago • parent

**@Snoggler:** So writing glowing reviews of Google Plus, Google Play, their new ISP service, and other articles that look as if they're written as press releases for Google is called "being biased against Google"?

What is this? Opposite world?

0 ∧ | 3 ∨ • Reply • Share ›

 **Snoggler** • 9 hours ago • parent

**@Flitzy:** you kidding? glowing review of gplus? TC was the first one to declare Google has a social problem, and Google doesn't get social.

0 ∧ | ∨ • Reply • Share ›

---

**ALSO ON ALL THINGS DIGITAL**                                    What's this?  ✕

**HP Wins Key Ruling in Itanium Lawsuit With Oracle**

0 • 7 comments • 22 days ago

 **KV** — If Oracle, as a company, cannot keep its legal obligations or consider the well being of its custom...

**What Happens Now in the HP-Oracle Lawsuit Over Itanium?**

0 • 3 comments • 20 days ago

 **Polaris Silvertree** — I think you are mischaracterizing the decline of UNIX. I don't know if I'd call it as the "world tur...

**Someone Is Getting Really Nervous About HP's Debt**

0 • 6 comments • a month ago

**ArrowSmith** — Good thing Microsoft's future is unlatched from HP.

---

AllThingsD.com is a Web site devoted to news, analysis and opinion on technology, the Internet and media. But it is different from other sites in this space. It is a fusion of different media styles, different topics, different formats and different sources. Read more » (http://allthingsd.com/about/)

About Us » (http://allthingsd.com/about/)

Contact Us » (http://allthingsd.com/contact/)

Register to Comment » (http://allthingsd.com/signup/)

Comments Policy » (http://allthingsd.com/comments/)

FAQ » (http://allthingsd.com/faq/)

Terms of Service » (http://allthingsd.com/terms/)

Privacy Policy - UPDATED 10/18/2011 » (http://allthingsd.com/privacy/)

Your Ad Choices » (http://allthingsd.com/privacy/#ad_choices)

Cookies Policy » (http://allthingsd.com/trackingcookies/)

Advertise With Us » (http://allthingsd.com/advertise/)

Send a Tip » (http://allthingsd.com/tips/)

Daily Newsletter » (http://allthingsd.com/subscribe/#email)

Subscribe to more **AllThingsD** content »

Featuring the most influential figures in technology, unscripted and upfront. More » (http://allthingsd.com/conferences/d10/)
(http://allthingsd.com/conferences/d/d10/)

**Follow us on Twitter:**

**RSS Feeds**

(http://allthingsd.com/subscribe/)



(http://allthingsd.com/mobile/iphone/)

© 2005-2012 Dow Jones & Company Inc. (http://www.dowjones.com/) | All Rights Reserved. (http://allthingsd.com/terms/) | Powered by WordPress.com VIP (http://vip.wordpress.com/)

# EXHIBIT W



# American Committee for Interoperable Systems' Amicus Brief

No. 94-2003

IN THE

SUPREME COURT OF THE UNITED STATES

OCTOBER TERM, 1995

———————

LOTUS DEVELOPMENT CORPORATION,

Petitioner,

v.

BORLAND INTERNATIONAL, INC.,

Respondent.

———————

On Writ of Certiorari to the United States

Court of Appeals for the First Circuit

———————

**BRIEF AMICI CURIAE OF**

**AMERICAN COMMITTEE FOR INTEROPERABLE SYSTEMS**

**AND**

**COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION**

**IN SUPPORT OF RESPONDENT**

———————

EDWARD J. BLACK
COMPUTER & COMMUNICATIONS INDUSTRY ASSOC.
666 Eleventh Street, N.W.
Washington, DC 20001
(202) 783-0070

PETER M.C. CHOY
Counsel of Record
AMERICAN COMMITTEE FOR INTEROPERABLE SYSTEMS
2550 Garcia Avenue
Mountain View, CA 94043
(415) 336-2482

PAUL GOLDSTEIN
STANFORD LAW SCHOOL
Stanford, CA 94305
(415) 723-0313

December 8, 1995

Attorneys for Amici

---

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF AMICI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I. THE FIRST CIRCUIT'S DECISION FALLS SQUARELY WITHIN THE MAINSTREAM OF RECENT SOFTWARE COPYRIGHT DECISIONS, AND THUS IS CONSISTENT WITH THIS COURT'S DECISION IN FEIST . . . . . 7

    II. LOTUS MISREADS THE FIRST CIRCUIT'S OPINION . . . . . 12

    III. THE FIRST CIRCUIT CORRECTLY CONCLUDED THAT COPYRIGHT PROTECTION DOES NOT EXTEND TO THE LOTUS 1-2-3 COMMAND STRUCTURE . . . . . 15

        A. Lotus Understates the Functionality of the 1-2-3 Command Structure . . . . . 16

        B. The First Circuit Correctly Recognized that Compatibility Considerations Effectively Limited the Alternatives Available to Borland . . . . . 20

        C. Judge Boudin Correctly Identified the Adverse Consequences of Extending Copyright Protection to the 1-2-3 Command Structure . . . . . 23

        D. Lotus and Its Amici Grossly Exaggerate the Adverse Consequences, If Any, of the First Circuit's Decision . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

---

# TABLE OF AUTHORITIES

## CASES

*In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994), *cert. denied*, 115 S. Ct. 1176 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir. 1983), *cert. dismissed*, 464 U.S. 1033 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*Baker v. Selden*, 101 U.S. 99 (1879) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) . . . . . . . . . . . . . . . . . . . . 11

*Campbell v. Acuff-Rose Music, Inc.*, 114 S. Ct. 1164 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2nd Cir. 1992) . . . . . . . . . . . . . . . . . . . . *passim*

*Diamond v. Diehr*, 450 U.S. 175 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335 (5th Cir. 1994), *opinion supplemented on denial of reh'g en banc*, 46 F.3d 408 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . 11

*Engineering Dynamics, Inc. v. Structural Software, Inc.*, 46 F.3d 408 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 22

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) . . . . . . . . . . . . . . . . . . . . *passim*

*Gates Rubber Co. v. Bando American, Inc.*, 798 F. Supp. 1499 (D. Colo. 1992), *aff'd in part, vacated in part*, 9 F.3d 823 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gates Rubber Co. v. Bando Chem. Indus. Ltd.*, 9 F.3d 823 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 11

*Lotus Dev. Corp. v. Borland Int'l, Inc.*, 799 F. Supp. 203 (D. Mass 1992), *rev'd*, 49 F.3d 807 (1st Cir.), and *cert. granted*, 116 S. Ct. 39 (1995) . . . . . . . . . . . . . . . . . . . . 22

*Lotus Dev. Corp. v. Borland Int'l, Inc.*, 831 F. Supp. 223 (D. Mass. 1993), *rev'd*, 49 F.3d 807 (1st Cir.), and *cert. granted*, 116 S. Ct. 39 (1995) . . . . . . . . . . . . . . . . . . . . 18

*Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807 (1st Cir.), *cert. granted,* 116 S. Ct. 39 (1995) . . . . . . . . . . . . . . . . . . . . *passim*

*Morrissey v. Procter & Gamble Co.*, 379 F.2d 675 (1st Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Qualitex Co. v. Jacobson Prod. Co.*, 115 S. Ct. 1300 (1995) . . . . . . . . . . . . . . . . . . . . 21

*Plains Cotton Coop. Ass'n v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256 (5th Cir.), *cert. denied*, 484 U.S. 821 (1987) . . . . . . . . . . . . . . . . . 8

*Sega Enter. Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 11, 21

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Whelan Associates, Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222 (3d Cir. 1986), *cert. denied*, 479 U.S. 1031 (1987) . . . . . . . . . . . . . . . . . . . . *passim*

**STATUTES & REGULATIONS**

17 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . 5

17 U.S.C. § 102(a) . . . . . . . . . . . . . . . . . . . . 29

17 U.S.C. § 102(b) . . . . . . . . . . . . . . . . . . . . *passim*

35 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . 29

35 U.S.C. § 103 . . . . . . . . . . . . . . . . . . . . 29

35 U.S.C. § 112 . . . . . . . . . . . . . . . . . . . . 29

60 Fed. Reg. 28,778 (1995) . . . . . . . . . . . . . . . . . . . . 28

**OTHER AUTHORITIES**

J. Band and M. Katoh, *Interfaces on Trial* (1995) . . . . . . . . . . . . . . . . . . . . 5, 21

R. Frank and P. Cook, *The Winner-Take-All Society* (1995) 28

M. Knell, *Microsoft Fights for Intuit*, The Boston Herald, Apr. 28, 1995 . . . . . . . . . . . . . . . . . . . . 18

P. Menell, *An Analysis of the Scope of Copyright Protection for Application Programs*, 41 Stan. L. Rev. 1045 (1989) . . . . . . . . . . . . . . . . . . . . 24

C. Morris and C. Ferguson, *How Architecture Wins Technology Wars*, Harv. Bus. Rev. (Mar./Apr. 1993) . . . . . . . . . . . . . . . . . . . . 18

M. Nimmer and D. Nimmer, *Nimmer On Copyright* (1995) 8

President's Information Infrastructure Task Force, *Global Information Infrastructure: Agenda for Cooperation* (U.S. Government Printing Office, Washington, D.C., Feb. 1995) . . . . . . . . . . . . . . . . . . . . 24

G. Saloner, *Economic Issues in Computer Interface Standardization*, 1 Econ. Innov. New. Tech. 135 (1990) . . . . . . . . . . . . . . . . . . . . 27

J. Sandberg and G. Hill, *Microsoft Probe Spurs Subpoenas Tied to Internet*, Wall St. J., Dec. 4, 1995 . . . . . . . . . . . . . . . . . . . . 7

J. Sandberg, *Sun and Netscape Are Forming Alliance Against Microsoft on Internet Standard,* Wall St. J., Dec. 4, 1995. . . . . . . . . . . . . . . . . . . . . 7

U.S. Congress, *Office of Technology Assessment, Finding a Balance: Computer Software, Intellectual Property, and the Challenge of Technological Change*, OTA-TCT-527 (U.S. Government Printing Office, Washington, D.C., May 1992) . . . . . . . . . . . . . . . . . . . . 6, 19

F. Warren-Boulton, K. Baseman & G. Woroch, *Copyright Protection of Software Can Make Economic Sense,* 12 Computer Law. 10 (Feb. 1995) . . . . . . . . . . . . . . . . . . . . 27

# BRIEF AMICI CURIAE OF AMERICAN COMMITTEE FOR INTEROPERABLE SYSTEMS AND COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION IN SUPPORT OF RESPONDENT

The American Committee for Interoperable Systems and the Computer & Communications Industry Association submit this brief as *amici curiae* and respectfully request that the Court affirm the decision below. The letters of consent of Petitioner and Respondent are being filed with this brief.

## INTEREST OF AMICI

The American Committee for Interoperable Systems ("ACIS") is an informal organization of companies that develop innovative software and hardware products that interoperate with computer systems developed by other companies.[1] Computer & Communications Industry Association ("CCIA") members participate in many sectors of the computer and telecommunications industry and range in size from small entrepreneurial firms to the largest in the industry. [2] Collectively, ACIS and CCIA members generate revenues in excess of $180 billion and employ over one million people.

ACIS and CCIA believe that computer programs deserve effective intellectual property protection to give developers sufficient incentive to create new programs. At the same time, ACIS and CCIA are concerned that the improper extension of copyright law will impede innovation and inhibit fair competition in the computer industry. ACIS and CCIA seek the application of legal standards that will effectuate copyright law's fundamental aims by ensuring authors "the right to their original expression," but also encouraging competitors "to build freely upon the ideas and information conveyed by a [copyrighted] work." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991).

Neither ACIS, CCIA, nor their members have a direct financial interest in the outcome of this litigation. However, reversal of the First Circuit's decision would have serious anti-competitive consequences for ACIS and CCIA members and the computer industry as a whole. Specifically, extending copyright protection to elements necessary for interoperability would inhibit the ability of ACIS and CCIA companies to develop innovative, competitive products. ACIS and CCIA are filing this brief in order to address the important intellectual property and competition law policy issues at stake in this case.

## SUMMARY OF ARGUMENT

The decisive issue in this case is whether copyright law can protect the rules that enable two elements of a computer system to work together. To be sure, Lotus and its amici talk about other matters: the protectability of a computer program's user interface; the protectability of source code; and the claimed methodological flaws in the First Circuit decision. But, boiled down to its essence, the only question for decision by this Court is whether copyright can protect the rules that enable one computer program to connect with another.

This brief first addresses Lotus' mistaken claim that, at odds with other circuits, the First Circuit fashioned a special copyright rule for software. In fact, the First Circuit followed the rule applied in other circuits - a rule mandated by this Court for over a century, from Baker v. Selden, 101 U.S. 99 (1879) to *Feist* - that requires a thinner scope of copyright protection for utilitarian literary works than for novels and plays. The brief next rebuts Lotus' assertion that the First Circuit found separable expression in its command structure, but withheld protection from this expression because it was included in an unprotectable method of operation. Lotus misreads the First Circuit's decision. The First Circuit found no separable expression; rather, it held that the expression had *merged* with the method of operation.

The brief then turns to the decisive issue in this case: the protectability of interface specifications, and not the protectability of the great bulk of program elements that, under the First Circuit's decision and this Court's rulings, will continue to be protected by copyright. The 1-2-3 command structure is more than a user interface; it is the interface between the Lotus program and programs "referred to as 'macros' " that are written by users at their own considerable expense for execution in connection with the 1-2-3 program. Because the 1-2-3 command structure provides the template for the macros and because the macros are the key to compatibility, the First Circuit, consistent with holdings in other circuits, ruled that those elements necessary to macro compatibility are not protected by copyright. This ruling will not harm innovation; indeed, by promoting competition, in products that differ - transform - the original, it will lead to increased innovation.

## ARGUMENT

Unlike traditional literary works such as novels and plays that stand alone and do not need to interact with any other work, computer programs never function alone; they function only by interacting with the computer environment in which their developers place them. This environment is absolutely unforgiving. Unless the computer program conforms to the precise rules for interacting with the other elements of the system, no interaction between the program and the system is possible. As a consequence, no matter how much better or cheaper the new program is, it will not enjoy a single sale if it cannot interoperate in its intended environment. If the developer of one part of the environment can use copyright law to prevent other developers from writing programs that conform to the system of rules governing interaction within the environment -interface specifications, in computer parlance - the first developer could gain a patent-like monopoly over the system without ever subjecting it to the rigorous scrutiny of a patent examination. Lotus seeks to use copyright in exactly this manner.[3]

Neither the Lotus Brief to this Court nor the briefs of its two amici [4] explain what is really at stake in this case, or why Lotus' position has so little support in the software industry. Indeed, the briefs of Lotus and its amici leave the misimpression that the few companies supporting the Petitioner do so out of concern that the First Circuit's decision will undermine their ability to keep others from copying their code, i.e., the actual lines of "instructions" used "n a computer to bring about a certain result." 17 U.S.C. § 101 (definition of computer program); see, e.g., AIPLA Brief at 13; Lotus Brief at 49.

ACIS and CCIA members rely on the copyright law to prevent unauthorized copying of the protectable expression contained in their code. Had the First Circuit's opinion called into question the protection of code, Lotus would have support from far more than the four companies that have filed a brief on its behalf. In truth, there is no expectation in the industry that the First Circuit's decision will endanger the scope of copyright protection for code in any respect.

Lotus and its few amici press this case not out of concern for code copying, but rather in an effort to extend the copyright law to prevent the emergence of compatible products that compete with their own. This case is about whether competitors can introduce compatible products that emulate, as they must, interface specifications, the rules that form the "external design" of a program.[5] This case is an attempt by a few companies who are the "first comers" to particular markets to use copyright law to preclude competitors from using the same *external* design, even though it is implemented in *wholly original* program code.

ACIS and CCIA believe such compatibility, or interoperability as it is sometimes called, is beneficial to both the industry and to the public. A program is compatible or interoperable with another program when it can interact with other programs in the same way as the first program. Borland's Quattro Pro program is compatible with Lotus 1-2-3 because it interacts with other programs in the same way - both programs can run "on top of" the same operating system (MS DOS) and both programs execute the same application macros written by users and other third-parties. Compatibility is achieved by conforming to the rules that the developer establishes as a "socket" to enable another program to "plug into" it. Extending copyright to such rules has economic consequences far broader than what was contemplated by Congress in protecting the instructions used in a sector to bring about a certain result. In concrete terms, reversal of the First Circuit's decision would threaten a large and vibrant sector of the U.S. software industry that depends on its ability to interoperate with computer systems developed by other firms. Copyright protection for interface

specifications would lead to monopolies within each product market in the industry. Indeed, unprecedented economic concentration would result if one firm succeeds in asserting proprietary control over a critical interface specification in the information superhighway.[6]

## I. THE FIRST CIRCUIT'S DECISION FALLS SQUARELY WITHIN THE MAINSTREAM OF RECENT SOFTWARE COPYRIGHT DECISIONS, AND THUS IS CONSISTENT WITH THIS COURT'S DECISION IN *FEIST*.

Lotus devotes much of its argument to proving the obvious: that computer programs are literary works under the Copyright Act and, as such, are governed by the same principles as other literary works. Lotus suggests that by considering the 1-2-3 command structure's utilitarian nature, the First Circuit somehow departed from congressional intent and from precedent in other circuits. Lotus Brief at 18. Lotus fails to mention, however, that although all literary works are governed by the same principle - specifically the idea/expression distinction embodied in Section 102(b) of the Copyright Act - this principle dictates that utilitarian works receive a thinner scope of protection than works such as novels or plays. Indeed, this Court explicitly recognized this point in *Feist*.

The appellate software copyright decisions since *Feist* all acknowledge that utilitarian works enjoy only a thin scope of protection. Yet, prior to *Feist*, the courts headed in the opposite direction. Dicta in one of the earlier decisions, *Whelan Associates, Inc. v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222 (3d Cir. 1986), *cert. denied*, 479 U.S. 1031 (1987), signaled extremely broad protection. The *Whelan* court defined the unprotectable idea in the program at issue to be "to run a dental laboratory in an efficient way," 797 F.2d at 1238 n.34, while the protectable expression was "the manner in which the program operates." *Id.* at 1239. Subsequent courts and commentators interpreted the *Whelan* dicta as drawing the line between idea and expression at a very high level of abstraction, suggesting the availability of copyright protection for virtually everything in a computer program except the most general statement of its function.[7] Indeed, some courts and commentators refer to a "*Whelan* rule" that a computer program contains but one idea.[8] *Id.*

Courts in other circuits quickly rejected the approach taken in *Whelan's dicta*. The Court of Appeals for the Fifth Circuit recognized that although computer programs are literary works, they are utilitarian and thus are strictly constrained by factors external to the program, such as industry standards. *Plains Cotton Coop. Ass'n v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1262 (5th Cir.), *cert. denied*, 484 U.S. 821 (1987). Accordingly, the *Plains Cotton* court explicitly "decline[d] to embrace *Whelan*." Id.

The rejection of *Whelan* accelerated after the *Feist* decision. Thus, the Court of Appeals for the Second Circuit in *Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 705 (2nd Cir. 1992) observed that "*Whelan*'s general formulation that a program's overall purpose equates with the program's idea is descriptively inadequate."

The Second Circuit also challenged the two justifications the *Whelan* opinion had given for drawing the idea/expression line at a high level of abstraction. First, the *Whelan* court had observed that computer programs are "literary works," and that copyright in other types of literary works is infringed if competitors use the works' structure and organization. The *Altai* court acknowledged that computer programs were "literary works," but at the same time recognized the "essentially utilitarian nature of a computer program," and emphasized that, "compared to aesthetic works, computer programs hover even more closely to the elusive boundary line described in Section 102(b)." *Id.* at 704.

Second, the *Whelan* court had noted that "among the more significant costs in computer programming are those attributable to developing the structure and logic of the program" and that protecting the structure and logic "would provide the proper incentive for programmers by protecting their most valuable efforts ...." *Whelan*, 797 F.2d at 1237. The *Altai* court rejected *Whelan*'s incentive-based justification for broad copyright protection as having "a corrosive effect on certain fundamental tenets of copyright doctrine." *Altai,* 982 F.2d at 712. The Second Circuit explained that [t]he interest of the copyright law is not in simply conferring a monopoly on industrious persons, but in advancing the public welfare through rewarding artistic creativity, in a manner that permits the free use and development of non-protectable ideas and processes. *Id.* at 711.

Significantly, the two foregoing points flowed directly from this Court's decision in *Feist*. With respect to the argument that a computer program is a literary work, the Court made clear that merely calling a work a "literary work" does not determine the scope of its copyright protection and that not all literary works are entitled to the same scope of protection: "the copyright in a factual compilation is thin"; "[t]his Court has long recognized that the fact/expression dichotomy limits severely the scope of protection in fact-based works." *Feist*, 499 U.S. at 349, 350. Similarly, with respect to the incentive-based justification, "*Feist* teaches that substantial effort alone cannot confer copyright status on an otherwise uncopyrightable work .... Thus, *Feist* implicitly undercuts the *Whelan* [incentive based] rationale ...." *Altai*, 982 F.2d at 711.

*Whelan's dicta* had led some lower courts to conclude wrongly that "the idea-expression distinction is somewhat diluted in analysis applied in infringement cases concerning computer programs." *Gates Rubber Co. v. Bando American, Inc.*, 798 F. Supp. 1499, 1510 (D. Colo. 1992), aff'd in part, vacated in part, 9 F.3d 823 (10th Cir. 1993). In contrast, the *Altai* court correctly recognized that because "[t]he essentially utilitarian nature of a computer program ... complicates the task of distilling its idea from its expression," *Altai*, 982 F.2d at 704, the idea/expression dichotomy must be applied in software copyright cases with great rigor and extreme care.

Every appellate software copyright decision since *Altai* agrees with its fundamental teachings: although computer programs are

literary works protected by copyright, and often require great expense and effort to develop, as utilitarian works they are entitled to "thinner" protection than novels or plays; and to ensure that they do not receive too much protection, the courts must closely scrutinize the works at issue and apply the idea/expression dichotomy meticulously. See, e.g., *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832, 839 (Fed. Cir. 1992); *Apple Computer, Inc. v. Microsoft Corp.*, 25 F.3d 1435, 1439 (9th Cir. 1994), *cert. denied*, 115 S. Ct. 1176 (1995); *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1347 n.12 (5th Cir. 1994), *opinion supplemented on denial of reh'g en banc*, 46 F.3d 408 (5th Cir. 1995); *Gates Rubber Co. v. Bando Chemical Indus. Ltd.*, 9 F.3d 823, 836 (10th Cir. 1993); *Sega Enter. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992).

Underlying these appellate decisions is not only this Court's decision in *Feist*, but a long line of Supreme Court decisions cautioning against the improper extension of the patent laws via copyright law or state law. As the Court stated in *Baker v. Selden*, 101 U.S. 99, 102 (1879), "[t]o give the author of the book an exclusive property in the art described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public." More recently, this Court in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989), condemned state law protection for inventions left by the Patent Act in the public domain: "the Federal patent laws have embodied a careful balance between the need to promote innovation and the recognition that imitation and refinement through imitation are both necessary to invention itself and the very lifeblood of a competitive society." The software copyright appellate decisions, by refusing to treat software functionality as protected expression, avoid upsetting this careful balance. See, e.g., *Atari*, 975 F.2d at 839.

The First Circuit's decision falls squarely within this body of case law. Judge Boudin's concurring opinion clearly recognized that software, although a literary work, receives a different scope of protection from novels, plays, and films: "Utility did not bar copyright (dictionaries may be copyrighted), but it alters the calculus." *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 820 (1st Cir.), *cert. granted*, 116 S. Ct. 39 (1995). Further, Judge Boudin does not "erect special judicial barriers to protection" of software. DEC Motion for Leave to File Amicus Curiae Brief at 3. Rather, like the other circuit court decisions cited above, he believed that Congress intended courts to apply Section 102(b) of the Copyright Act in a case-by-case manner, and the thinner protection for software, like the thinner protection for other utilitarian literary works such as dictionaries, flows directly from Section 102(b). He also recognized that failure to apply Section 102(b) strictly in software copyright cases would cause copyright to infringe the jurisdiction of the patent laws.

Further, both Judge Stahl's and Judge Boudin's opinions reflect a thorough consideration of the program element at issue and its relationship to its environment, in an effort to understand on which side of the idea/expression divide it should fall. This willingness to grapple with complex technology, rather than succumb to the temptation of superficial understanding, makes the First Circuit's decision a model other courts should follow.

## II. LOTUS MISREADS THE FIRST CIRCUIT'S OPINION.

In addition to faulting the First Circuit for finding that copyright accords software thinner protection than novels and plays, Lotus attacks the First Circuit's application of Section 102(b) to the facts of this case. Lotus contends that the First Circuit agreed with the district court below that the Lotus 1-2-3 command structure contained expression separable from its ideas and functionality, but that the First Circuit nonetheless refused to extend copyright protection to this expression because it was part of the program's method of operation. The First Circuit committed this error, Lotus claims, by relying on a flawed definition of "method of operation," which led it to take a "dangerous and improper shortcut in applying § 102(b)." Lotus Brief at 18; AIPLA Brief at 7.

The linchpin of this argument is Lotus' view that the First Circuit conceded that the command structure contained separable expression. In fact, the First Circuit made no such concession. To be sure, it stated that "the Lotus developers made some expressive choices in choosing and arranging the Lotus command terms ...." 49 F.3d at 816. But the First Circuit made it quite clear that these expressive choices had merged with the command structure. Thus, two sentences after its reference to Lotus' expressive choices, the First Circuit stated that "[i]f specific words are essential to operating something, then they are part of a 'method of operation' and, as such, are unprotectable." *Id.* (emphasis supplied).

Similarly, in its discussion of the VCR analogy, the First Circuit stated that "the Lotus command terms are not equivalent to the labels on the VCR's buttons, but are instead equivalent to the buttons themselves." *Id.* at 817. Pursuing this thought, the court stated that "[u]nlike the labels on a VCR's buttons, which merely make operating a VCR easier by indicating the buttons' functions, the Lotus menu commands are essential to operating Lotus 1-2-3." *Id.* (emphasis supplied). The First Circuit underscored its conclusion that the developers' expressive choices had merged with the command structure, the method of operating the program, by citing the First Circuit's venerable decision in *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 678 79 (1st Cir. 1967), for the proposition that "[w]hen there are a limited number of ways to express an idea ... the expression 'merges' with the idea and becomes uncopyrightable." 49 F.3d at 818 n.13 (emphasis supplied).

Because it concluded that the expressive terms had merged with the command structure, the question before the First Circuit - and the real question before this Court - was whether the command structure itself was protected expression or unprotected idea.[9] Lotus and its amici suggest that by not applying the *Altai* abstraction-filtration-comparison test, the First Circuit failed to assess properly whether the command structure should receive copyright protection. See Lotus Brief at 40; AIPLA Brief at 7. This argument, too, is predicated on a misreading of the First Circuit's opinion.

The First Circuit reasoned that the *Altai* test might be "misleading" if applied here because it could cause the identification of expression at a low level of abstraction while obscuring the fact that the expression may be an essential part of the method of operation at a higher level of abstraction. The First Circuit's reasoning is sound where, as here, there is verbatim copying of a specific element; further abstraction would simply reveal similarities at progressively more detailed levels, while deconstructing the overall system into which the sub-elements had merged. In this case, one would end up with hundreds of identical terms, without any sense that those terms were an essential part of a larger whole. Nonetheless, it is important to note that the First Circuit did not dispense with all three steps of the *Altai* test, just the first one - abstraction. It still performed the critical second step - filtration - on the command structure. As the next section of the brief explains, the First Circuit performed the filtration step properly.

## III. THE FIRST CIRCUIT CORRECTLY CONCLUDED THAT COPYRIGHT PROTECTION DOES NOT EXTEND TO THE LOTUS 1-2-3 COMMAND STRUCTURE.

Lotus properly states that "Section 102(b) requires courts to attempt to separate the purely functional attributes of computer programs from the particular expression chosen by the programmer to accomplish or to provide that functionality." Lotus Brief at 38. A few sentences later, Lotus restates this proposition as follows: "the expression is protected by copyright if it is only one of numerous possibilities for providing the same functionality." *Id.* at 39.

These two statements get right to the heart of the matter: Lotus and the First Circuit have different meanings for the phrase "same functionality." For Lotus, a command structure with the "same functionality" as the 1-2-3 command structure is one that offers "exactly the same selection of functions as does 1-2-3" but with different terms in a different sequence. *Id.* at 41. For the First Circuit, a command structure with the "same functionality" as the 1-2-3 command structure is one that is completely 1-2-3 compatible. If Lotus' definition of "same functionality" is correct, then the 1-2-3 command structure is but one of many ways of expressing the same functionality. Conversely, if the First Circuit's definition of "same functionality" is correct, then the 1-2-3 command structure is essential to achieving the same functionality. Thus, the core inquiry before this Court, and the issue on which this case turns, is whether compatibility is a functional characteristic. Below, we will explain why compatibility unquestionably is a functional characteristic unprotected by copyright. But before we do so, we must explain the nature of the product at issue.

### A. Lotus Understates the Functionality of the 1-2-3 Command Structure.

Most plaintiffs in copyright infringement cases tend to exaggerate the significance of their work in an effort to magnify the work's expressive quality. Here, by contrast, Lotus down plays the nature of its command structure in an effort to minimize the structure's inherent functionality. Throughout their briefs, Lotus and its amici repeatedly refer to the 1-2-3 command structure as a "user interface" which "communicate[s] the product's underlying functionality to users in a clearly organized presentation." Lotus Brief at 9 (citations omitted).

The command structure, however, has a second function which Lotus relegates to footnotes but which in fact is critical to both the Lotus product and this case: it functions as the interface between the spreadsheet program and "macros," which are programs written by users with the 1-2-3 commands. It is this program-to-program interface function that is of primary concern to ACIS and CCIA.

A consideration of the various kinds of programs that run on modern computers will clarify this function of the command structure. All computers must run an "operating system" program, which is the fundamental program that instructs the computer how to operate, how to manage its resources, and how to run other programs. *Altai*, 982 F.2d at 698. Common operating systems include Windows 95 for IBM-compatible personal computers and UNIX for workstations. The operating system serves as a "platform" for "application programs" such as word processing programs, database programs, multimedia games, or, as in this case, spreadsheet programs. Application programs must conform precisely to the functional requirements - the interface specification - of the operating system, or else the applications will not work properly.

Although Lotus 1-2-3, taken as a whole, is an application program, it assumes some of the characteristics of an operating system with respect to the user written application programs - the macros - that attach to it. In other words, Lotus 1-2-3 serves as a platform upon which the macros run. The command structure defines the rules for interaction between the 1-2-3 macros and the Lotus platform, and thus acts as an interface specification. Put differently, the command structure provides the syntax and semantics of the communication between a 1-2-3 macro and the Lotus platform.

Many Lotus users have invested substantial time and resources developing libraries of highly complex customized macros appropriate to their business needs. Indeed, the Lotus users collectively have invested far more resources in the development of their macros than Lotus ever invested in the development of Lotus 1-2-3. Lotus claims that its programmers "spent hundreds of hours over a period of many months" developing the 1-2-3 command structure. Lotus Brief at 9. Lotus users, in contrast, collectively have spent thousands, if not millions, of hours over many years writing their macros. Because of their investment in the macros, the Lotus users are "locked-in" to the Lotus environment: as they expand their operations, they simply will not purchase spreadsheet programs developed by a Lotus competitor such as Borland unless the Borland spreadsheet can also execute their macros.

The most basic form of macro compatibility requires the Borland platform to have the ability to translate the macro's instructions into instructions intelligible to the Borland platform, and vice versa. Because the set of instructions used by the macro is a subset of Lotus' commands, the Borland platform had to translate those instructions from the macros by means of a file that exactly replicated

the Lotus 1-2-3 command structure's syntax and semantics. Borland calls this file the "Key Reader."[10] *Lotus v. Borland*, 49 F.3d at 811-12.

Complete macro compatibility, however, requires more than just the ability to run existing macros. Users of the Borland platform must be able to correct errors in the macros, and modify the macros to address new problems. Because the macros are constructed out of Lotus commands, the user of the Borland platform can debug or modify the macros only if the platform can display the commands on the terminal and only if the platform can understand the Lotus commands keyed in by the user. Thus, to perform the debugging and modification functions essential for complete macro compatibility, the Borland platform must reproduce the Lotus command structure. *Id.* at 811 n.3.

Programmers view an interface specification such as the 1-2-3 command structure as part of the external design of a program. As the Office of Technology Assessment noted,

> [p]rograms have an external design or interface - the conventions for communication between the program and the user or other programs. The external design is conceptually separate from the program code that implements the interface (the internal design). It specifies the interactions between the program and the user or other programs, but not how the program does the required computations. There are typically many different ways of writing a program to implement the same interface.

OTA Report at 26. Using copyright jargon, it can accurately be said that the interface specification is the "system" or "method of operation" that is "expressed" by the program code.

In this case, the 1-2-3 command structure was the interface specification for the Lotus spreadsheet. Lotus designed its program so that macros had to be written with the terms and sequence of the command structure in order to operate with the 1-2-3 program. Borland subsequently entered the market seeking to compete against Lotus for the business of users who had already written macros which used the command structure as an interface specification. In order to run these third party macros, Borland adopted the same interface specification (the command structure) but implemented that specification in its own wholly original code.

**B. The First Circuit Correctly Recognized that Compatibility Considerations Effectively Limited the Alternatives Available to Borland.**

Unlike the district court below, the First Circuit appreciated the importance of macro compatibility, and this appreciation strongly influenced the First Circuit's perception of the command structure: "That the Lotus menu command hierarchy is a 'method of operation' becomes clearer when one considers program compatibility." 49 F.3d at 817. After observing that a user-written 1-2-3 macro could not operate with an incompatible spreadsheet program, the First Circuit concluded: "As the Lotus menu command hierarchy serves as the basis for Lotus 1-2-3 macros, the Lotus menu command hierarchy is a 'method of operation.' " *Id.* at 818.

Lotus nonetheless contends that Borland sought to be compatible with the 1-2-3 macros "for commercial reasons, not as a technical necessity." Lotus Brief at 12. This argument echoes the suggestion of the Court of Appeals for the Third Circuit over a decade ago that compatibility was a "commercial and competitive objective which does not enter into the somewhat metaphysical issue of whether particular ideas and expressions have merged." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983), *cert. dismissed*, 464 U.S. 1033 (1984).

More recently, however, other circuits have replaced "metaphysical distinctions" with "practical considerations." *Altai*, 982 F.2d at 706. They understand that software copyright issues do not arise in a vacuum, but in a particular commercial context that as a practical matter restricts a programmer's range of possible expression. In other words, these courts have acknowledged that a work's commercial context helps define the boundary between idea and expression.[11] Thus, the Second Circuit in *Altai* recognized that

> a programmer's freedom of design choice is often circumscribed by extrinsic considerations such as (1) the mechanical specifications of the computer on which a particular program is intended to run; (2) compatibility requirements of other programs with which a program is designed to operate in conjunction; (3) computer manufacturers' design standards; (4) demands of the industry being serviced; and (5) widely accepted programming practices within the computer industry.

982 F.2d at 709-10 (emphasis supplied, citations omitted). The Second Circuit ruled that copyright does not protect program elements dictated by such external factors, including compatibility. *Id.*

The Federal Circuit in *Atari*, citing *Altai*, stated that "[t]he court must filter out as unprotectable ... expression dictated by external factors (like the computer's mechanical specifications, compatibility with other programs, and demands of the industry served by the program) ...." 975 F.2d at 839. Likewise, the Ninth Circuit in *Sega* expressly recognized that computer programs "contain many logical, structural, and visual display elements that are dictated by ... external factors such as compatibility requirements and industry demands. In some circumstances, even the exact set of commands used by the programmer is deemed functional rather than creative for purposes of copyright." 977 F.2d at 1524 (citations omitted).[12]

*Lotus v. Borland* presents one of those circumstances in which "the exact set of commands used by the programmer is deemed functional" because it is essential for compatibility between the macro and the platform. The fact that Borland could theoretically have created a spreadsheet program incompatible with the 1-2-3 macros (and ultimately did so in 1992) is irrelevant. The critical point is that *within* the 1-2-3 environment, users and would-be competitors have no alternative to the 1-2-3 command structure.

## C. Judge Boudin Correctly Identified the Adverse Consequences of Extending Copyright Protection to the 1-2-3 Command Structure.

In his concurring opinion, Judge Boudin observed that "[i]f Lotus is granted a monopoly on this pattern, users who have ... devised their own macros are locked into Lotus ...." 49 F.3d at 821. Judge Boudin further observed that granting a monopoly over a standard would have the additional undesirable effect of blocking development of a later, superior product:

> Apparently, for a period Lotus 1-2-3 has had such sway in the market that it has represented the *de facto* standard for electronic spreadsheet commands. So long as Lotus is the superior spreadsheet - either in quality or in price - there may be nothing wrong with this advantage.

> But if a better spreadsheet comes along, it is hard to see why customers who have learned the Lotus menu and devised macros for it should remain captives of Lotus because of an investment in learning made by the users and not by Lotus. Lotus has already reaped a substantial reward for being first; assuming that the Borland program is now better, good reasons exist for freeing it to attract old Lotus customers: to enable the old customers to take advantage of a new advance ....

*Id.* at 821.

ACIS and CCIA believe that Judge Boudin's reasoning applies to all interface specifications. The extension of copyright protection to such interface specifications would be wrong as a matter of copyright law, and would effectively eliminate competition in operating systems, or any software product that functions as a platform for other software products.

Such a broad monopoly would have serious implications for consumer welfare.[13] In the absence of competition during the effective lifespan of the product, the first developer would have little incentive to develop more innovative and less costly products. These negative consequences would be compounded by the fact that the personal computer revolution, and recent major improvements in communications technology, have produced an overwhelming need for interconnection between different elements of computer systems. Within a given large corporation, literally thousands of personal computers and workstations scattered across the globe need to interact with each other and with the company's mainframes. Moreover, with the advent of the Global Information Infrastructure, different firms will need to exchange vast quantities of data through their computers.[14] Copyright protection for interface specifications would lock users into a particular operating system or network software environment, and would inhibit the transfer of data between users with different computing environments.

It should be stressed that compatible products are not mere "clones" that offer only the same functionality as the products of the first comer, but at a lower price. While compatible products must offer at least the same functionality, they typically offer additional functionalities not found in the first comer's products. Borland's Quattro Pro is an excellent example of this transformation. While Quattro Pro included a 1-2-3 mode to enable compatibility with 1-2-3 macros, it also offered users a native Borland mode completely different from 1-2-3. Moreover, even in the 1-2-3 mode, Quattro Pro inserted additional commands not present in the 1-2-3 command structure.

The compatible products developed by ACIS and CCIA members all add value to consumers in a similar manner. They compete with the first comers' products not only in terms of price (indeed, sometimes the compatible products may be more expensive), but also in terms of innovation. In this respect, compatible developers' use of preexisting interface specifications is a transformative use of the sort accredited by this Court in *Campbell v. Acuff-Rose Music, Inc.*, 114 S. Ct. 1164 (1994).

Some ACIS and CCIA companies are small start-ups with a handful of employees. Others are Fortune 500 companies. All need to interoperate with the computer systems developed by other firms in order to reach the market for their new products, which push the technological envelope. Reversal of the First Circuit's decision threatens to wipe out this vital sector of the U.S. software industry that has helped maintain our leadership position in global markets.

## D. Lotus and Its Amici Grossly Exaggerate the Adverse Consequences, If Any, of the First Circuit's Decision.

Lotus states that "[t]he First Circuit's decision effectively nullifies the copyright protection Congress enacted for the expression in computer programs." Lotus Brief at 42. Lotus reaches this breathtaking conclusion by pursuing the following reasoning: "If, as the First Circuit held, anything that can be defined as part of a method of operation is ineligible for copyright protection, then by the same logic virtually everything in a computer program - source code no less than textual menus on the screen - is unprotected." *Id.* at 18. As discussed above, the critical flaw in Lotus' reasoning is that the First Circuit did not hold that anything that can be defined as part of a method of operation is ineligible for copyright protection; rather, it held that anything that is an *essential* part of a method of operation is ineligible for copyright protection. The word "essential" makes all the difference in the world; it signals

merger of idea and expression.

The First Circuit found that the selection and arrangement of the individual terms and menus had merged with the 1-2-3 command structure. The analysis then shifted to whether the command structure, taken as a whole, received copyright protection. The court concluded that it did not, in large measure because of its macro compatibility functionality.

Contrary to Lotus' assertion, the First Circuit's decision leaves many original program elements protected. A program's actual lines of code, and the structure of the code, remain protected to the extent they are not essential to achieving specific functionality. Here, Borland could achieve 1-2-3 compatibility using completely different code. Similarly, many features of a program's screen displays remain protected. Indeed, one can even imagine menu commands that might receive protection. If a menu had fanciful icons instead of words, for example, the individual icons might receive protection.

The Information Technology Industry Council, in its brief *amicus curiae* in support of Lotus' petition for a writ of *certiorari*, argued that the First Circuit's ruling "contains no limiting principle by which to differentiate the aspects of a program that are copyrightable from those that are not protectable." ITIC Brief at 11. In fact, the First Circuit's decision does contain such a limiting principle: those elements essential for programs to achieve the same functionality do not receive copyright protection. The First Circuit further holds that because compatibility is a functional characteristic, those elements necessary to achieve compatibility do not receive copyright protection. If these limiting principles are not clear enough from the face of the First Circuit's decision, then this Court should announce them unambiguously.

Lotus doubtlessly will complain that even a ruling restricted to compatibility elements will diminish software firms' incentive to innovate. To be sure, this ruling will increase the competition faced by first comers. But this competition will merely prevent first comers from appropriating the returns on the users' substantial investment in developing their own programs and files based on the first comers' products.[15]

Further, economists have demonstrated that in markets with strong network externalities, such as the market for software, the first comer reaps enormous competitive advantages from the establishment of a *de facto* standard interface specification.[16] Copyright should not compound this "winner takes all" result by locking the gateway to competition.

Lotus argues that antitrust law, rather than copyright law, should address the first comer's anticompetitive behavior. Lotus Brief at 47. A copyright, however, is a legal monopoly created by the Copyright Act, and the appropriate scope of that monopoly should be determined in the first instance by reference to the checks and balances contained in the Copyright Act itself, rather than the Sherman Act.

In any event, Lotus will still have ample incentive to develop improved versions of 1-2-3 as well as new products. As noted above, copyright will protect its implementation of programs that conform to the 1-2-3 command structure or other interface specifications that it develops in the future.

Moreover, Lotus can seek patent protection for its command structures. In *Diamond v. Diehr*, 450 U.S. 175 (1981), this Court opened the gates to software patents. Recent Federal Circuit decisions have pushed the gates open even further. E.g., *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994).[17] Under the evolving case law, many aspects of computer interfaces, including many command structures such as the one at issue here, may be patentable subject matter. Indeed, even before the above legal developments, companies were able to obtain utility patents on menu command hierarchies. J.A. 842-46, 856-63 (portions of U.S. Patent Nos. 4,989,141 and 4,611,306).

If interface specifications were protected under the copyright laws, the public would not have the same safeguards against overbroad monopolies that exist under the Patent Act. The sole requirement for a copyright is that it be an original, expressive work of authorship. 17 U.S.C. § 102(a). By contrast, an invention must satisfy the novelty requirements of 35 U.S.C. § 102 and the non-obviousness requirements set forth in 35 U.S.C. § 103. Furthermore, the specification must contain a sufficiently detailed description of the invention to enable one skilled in the relevant art to practice it, and must disclose the best mode contemplated by the inventor for carrying out the invention. 35 U.S.C. § 112. If a patent applicant must satisfy these standards to obtain a 20-year monopoly on a method of operating a computer, it is difficult to understand why that same inventor should obtain copyright protection in the same subject matter for 75 years or longer, without even satisfying those standards.

ACIS and CCIA members rely on copyright protection for many aspects of computer programs, and consider it sufficient for its intended purposes.

ACIS and CCIA members also frequently obtain patents when warranted. This includes hardware and software processes such as the "selection and arrangement of executable operations." ACIS and CCIA are deeply concerned, however, that a software company might obtain patent-like protection for functional characteristics of software that do not meet the rigorous standards of patentability, merely by claiming a copyright. The First Circuit's refusal to allow Lotus to employ copyright law to obtain a *de facto* patent is consistent with this Court's refusal to allow Bonito Boats to employ Florida state law to obtain a *de facto* patent.

# CONCLUSION

In order to achieve compatibility with macros written by the third-party users, it was necessary for Borland to use the words of the 1-2-3 command structure, and to display those words on the computer screen. In using these words, Borland reproduced only the minimum portions of Lotus 1-2-3 necessary to achieve macro-compatibility, and nothing more. Creators of computer programs such as Borland should not be prevented by copyright law from using as much of another program's utilitarian methods of operation as is necessary to enable their programs to work with other programs. This is needed to ensure interoperability across computer systems and networks, and interoperability is needed to promote consumer welfare on the terms contemplated by the Copyright Act. The First Circuit correctly recognized the force of these principles in the applicable law. Under the First Circuit's holding, copyright will provide a secure basis for continued innovation and competition in the software industry.

For the above reasons, the decision of the First Circuit should be affirmed. This Court should hold that because compatibility is a functional characteristic, those program elements necessary to achieve compatibility do not receive copyright protection.

---

## FOOTNOTES

1. ACIS members include Accolade, Inc., Advanced Micro Devices, Amdahl Corporation, America Online, Inc., AT&T Global Information Systems, Broderbund Software, Inc., Bull HN Information Systems, Inc., Chips and Technologies, Inc., Clearpoint Research Corporation, Color Dreams, Inc., Comdisco, Inc., Emulex Corporation, Forecross Corporation, The Fortel Group, Fujitsu Systems Business of America, Inc., Hitachi Data Systems, ICTV, Insignia Solutions, Integrated Documents Applications Corp., Johnson-Laird, Inc., Landmark Systems Corporation, LCS/Telegraphics, MidCore Software, Inc., New York Systems Exchange, Inc., Octel Communications Corporation, Phoenix Technologies, Ltd., Plimoth Research Inc., QAD Inc., Seagate Technology, Inc., Software Association of Oregon, Storage Technology Corporation, Sun Microsystems, Inc., Tandem Computers, Inc., 3Com Corporation, Trilium Consumer Electronics, Inc., Western Digital Corporation, and Zenith Data Systems Corporation. (The Software Association of Oregon consists of over 550 software development firms, firms in associated industries, and individuals professionally involved in software development.)*(return to text)*

2. CCIA members include Amdahl, AT&T, Bell Atlantic, Cambridge Technology Partners, Charles River Data Systems, Datum, Inc., Formation, Fujitsu Network Switching, Hitachi Data Systems, InterCAP Graphic Systems, Leasing Solutions, Northern Telecom, NYNEX, Okidata, Storage Technology Corporation, Summa Four, Inc., Sun Microsystems, Inc., Tandem Computers, Inc., TSI International Software Ltd., and ViON Corporation.*(return to text)*

3. IBM (Lotus' parent) and *amicus* Intel both have also used copyright law to protect and extend their market power. *See* J. Band and M. Katoh, *Interfaces on Trial* (1995) at 26-28, 35-39.*(return to text)*

4. The American Intellectual Property Law Association ("AIPLA") Brief is hardly a brief "in support of neither party." AIPLA Brief at 1. It makes virtually the same arguments as the Lotus Brief and the joint Digital Equipment, Gates Rubber, Intel and Xerox brief ("DEC Brief"). This comes as no surprise, given that one of the law firms on the AIPLA brief represents a party that would benefit from a reversal of the First Circuit's decision in a case pending in the Eleventh Circuit, *Mitek Holdings, Inc. v. Arce Engineering Co.*, No. 94-5262 (11th Cir. filed Nov. 30, 1994) (appeal from 864 F. Supp. 1568 (S.D. Fla. 1994)).*(return to text)*

5. U.S. Congress, Office of Technology Assessment, *Finding a Balance: Computer Software, Intellectual Property, and the Challenge of Technological Change*, OTA-TCT-527 (U.S. Government Printing Office, Washington, D.C., May 1992) ("OTA Report") at 26.*(return to text)*

6. *See, e.g.*, J. Sandberg and G. Hill, *Microsoft Probe Spurs Subpoenas Tied to Internet*, Wall St. J., Dec. 4, 1995; J. Sandberg, *Sun and Netscape Are Forming Alliance Against Microsoft on Internet Standard*, Wall St. J., Dec. 4, 1995.*(return to text)*

7. *See, e.g.*, 3 M. Nimmer & D. Nimmer, *Nimmer On Copyright*, § 13.03[F] (1995); *Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 705 (2nd Cir. 1992).*(return to text)*

8. The *Whelan* court also held that copyright protects the expression in the non-literal elements of a computer program. This holding, a simple restatement of the fundamental copyright principle that copyright protects original expression in works of authorship, is non-controversial and has been readily accepted by other courts.*(return to text)*

9. Prior to the Argument section of its Brief, Lotus appears to agree with this formulation of the issue: "It is the copyrightability of the overall combination of words and menus in the 1-2-3 menu command hierarchy, viewed as a whole, and not any individual menu command ... viewed in isolation, that is at issue in this case." Lotus Brief at 6 (footnote omitted)*(return to text)*

10. In this context, it is worth noting that Microsoft's spreadsheet product Excel at one time also had a file like Borland's Key Reader which permitted 1-2-3 macro compatibility. Lotus did not challenge Microsoft in court, but instead permitted Microsoft's product to remain compatible with 1 2 3 while Borland was precluded by court injunction from offering a compatible product. *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 831 F. Supp. 223, 229-30, 234 (D. Mass. 1993), *rev'd*, 49 F.3d 807 (1st Cir.), and *cert. granted*, 116 S. Ct. 39 (1995). The reason Excel ultimately eclipsed Lotus 1-2-3 is a further demonstration of the significance of interface

specifications and compatibility: Microsoft introduced a new operating system (Windows), migrated the installed base of computer users from the old operating system (DOS) to the new one (Windows), and released a Windows-compatible version of Excel before providing Lotus with sufficient interface information to permit the release of 1-2-3 for Windows. See C. Morris and C. Ferguson, *How Architecture Wins Technology Wars*, Harv. Bus. Rev. (Mar./Apr. 1993). Indeed, Lotus vociferously complained to the Antitrust Division of the Department of Justice about Microsoft's conduct in manipulating the forces of the free market to achieve a monopoly. See, e.g., M. Knell, *Microsoft Fights for Intuit*, The Boston Herald, Apr. 28, 1995, at 23.*(return to text)*

11. See *Interfaces on Trial* at 87-90. In the trademark context, this Court has explained that "'a product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article,' that is, if exclusive use of the feature would put competitors at a significant non-reputation related disadvantage." *Qualitex Co. v. Jacobson Products Co.*, 115 S. Ct. 1300, 1304 (1995) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n.10 (1982)).*(return to text)*

12. See also *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 46 F.3d 408, 410 (5th Cir. 1995), *supplementing opinion*, 26 F.3d 1335 (5th Cir. 1994) (copyright protection should not "extend to the manufacturing of computer hardware so as to deter achieving compatibility with other models"). The district court below stated that these appellate decisions simply stood for the proposition that copyright allows a new comer software developer to replicate the design of the first comer's "plug" in order to plug his software into the first comer's "socket," but that copyright nonetheless prohibits the new comer from replicating the design of the "socket" in order to satisfy the demand for additional outlets. *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 799 F. Supp. 203, 212 13 (D. Mass. 1992), rev'd, 49 F.3d 807 (1st Cir.), and *cert. granted*, 116 S. Ct. 39 (1995). The district court reached this metaphysical conclusion by reasoning that the socket was created before the programs with the compatible plugs. The precise order of creation, however, should make little difference; if copyright does not protect the design of the plug, it surely does not protect the design of the socket. Moreover, even if the socket was actually constructed before the plugs, the socket and the plug obviously were designed at the same time so as to fit into one another.*(return to text)*

13. *See, e.g.,* P. Menell, *An Analysis of the Scope of Copyright Protection for Application Programs*, 41 Stan. L. Rev. 1045, 1082, 1097 n.281 (1989).*(return to text)*

14. See President's Information Infrastructure Task Force, *Global Information Infrastructure: Agenda for Cooperation* (U.S. Government Printing Office, Washington, D.C., Feb. 1995) at 14-16.*(return to text)*

15. See F. Warren-Boulton, K. Baseman & G. Woroch, *Copyright Protection of Software Can Make Economic Sense*, 12 Computer Law. 10, 23 (Feb. 1995)*(return to text)*

16. See G. Saloner, *Economic Issues in Computer Interface Standardization*, 1 Econ. Innov. New. Tech. 135, 140 (1990):

> Because of the compatibility and network benefits, all else equal, a new user prefers a vendor with a larger total installed base of users. Thus installed bases have a tendency to be self-perpetuating: they provide the incentive for the provision of products (software and hardware) that is compatible with that in the installed based which in turn attracts new users to the installed base further swelling its ranks and increasing the incentive for the provision of even more complementary products.

See also *United States v. Microsoft Corp.*, 56 F.3d 1448, 1452 (D.C. Cir. 1995); R. Frank and P. Cook, The *Winner-Take-All Society* (1995).*(return to text)*

17. See also U.S. Patent and Trademark Office, *Proposed Examination Guidelines for Computer-Implemented Inventions*, 60 Fed. Reg. 28,778 (1995).*(return to text)*

---

Respectfully submitted,

EDWARD J. BLACK
COMPUTER & COMMUNICATIONS INDUSTRY ASSOC.
666 Eleventh Street, N.W.
Washington, DC 20001
(202) 783-0070

PETER M.C. CHOY
Counsel of Record
AMERICAN COMMITTEE FOR INTEROPERABLE SYSTEMS
2550 Garcia Avenue
Mountain View, CA 94043
(415) 336-2482

PAUL GOLDSTEIN
STANFORD LAW SCHOOL
Stanford, CA 94305
(415) 723-0313

December 8, 1995

Attorneys for Amici

---

## Document Location: *Software Industry Issues*
## (http://www.http://www.aimnet.com/~software/industry_issues/home)

*This document, in it's orginal form, is a public record. However, Software Industry Issues has converted it to HTML format. We request that this file not be copied unless it is left completely intact, including the document location credit, or unless permission is granted by us to do otherwise.*

---

*For sponsorship information, requests, or comments email to:* **kaye@ix.netcom.com**

Back to Software Industry Issues Home Page

---

*Page maintained by Kaye Caldwell, kaye@ix.netcom.com. Created: 12/12/95 Updated: 12/24/95*