# EXHIBIT B

| From: | Reid P. Mullen <RMullen@kvn.com> |
|---|---|
| Sent: | Wednesday, August 05, 2015 10:19 PM |
| To: | Von der Ahe, Christina |
| Cc: | DALVIK-KVN |
| Subject: | RE: Revised Draft Supplemental Complaint |
| Attachments: | 762870994(1)_Draft Supplemental Complaint 08_04_2015.pdf |

Hi Christy – Following up on our conversation today, Google will agree not to oppose Oracle filing the attached supplemental complaint if Oracle removes paragraphs 24 and 25 from the attached.  Please let me know if you would like to discuss.  Thanks.

Reid

---

**From:** Von der Ahe, Christina [mailto:cvonderahe@orrick.com]
**Sent:** Tuesday, August 04, 2015 3:49 PM
**To:** Christa Anderson
**Cc:** DALVIK-KVN; Oracle/Google-OHS Only
**Subject:** Revised Draft Supplemental Complaint

Good afternoon Christa and team,

Attached please find a revised version of Oracle's draft supplemental complaint, as well as a redline reflecting the differences between this version and the version we sent you on July 6, 2015.  In the interest of avoiding unnecessary motion practice, we have revised this draft supplemental complaint in a way that we believe will alleviate your concerns regarding its filing.  Most notably, we have removed former paragraphs 1-5 and 18 altogether.  We have also modified former paragraphs 29-32 and the prayer for relief to more directly focus on matters post-dating the filing of Oracle's most recent amended complaint.

As you know, the Court has ordered Oracle to file its motion to supplement the complaint by this coming Thursday.  For that reason, we would appreciate your thoughts regarding the attached as soon as possible.

Additionally, there are a few other matters we would like to address with you, including the timing of an exchange of initial disclosures and the timing of further discovery requests.  Can you let me know whether you or Reid is available for a call on these topics in the next couple of days?

Best,
Christy



**CHRISTY VON DER AHE RAYBURN**
*Senior Associate*

ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255

tel +1-949-852-7741
fax +1-949-567-6710
mob +1-650-303-0528
cvonderahe@orrick.com
bio • vcard

www.orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON *pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**PLAINTIFF ORACLE'S [PROPOSED] SUPPLEMENTAL COMPLAINT**<br><br>**Dept.:  Courtroom 8, 19th Floor**<br>**Judge:  Honorable William H. Alsup** |

Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiff Oracle America, Inc. ("Oracle") hereby pleads this Supplemental Complaint.  This Supplemental Complaint adds to and is not intended to supersede any allegation of the Amended Complaint.

**SUPPLEMENTAL FACTS**

A.   **Google's Ongoing Infringement of Oracle's Copyrights in the Java Platform.**

1.   From and after October 28, 2010, Google has continued to infringe Oracle's copyrights in the Java platform.  Since then, Google has released six versions of Android:

- Gingerbread (released Dec. 2010);
- Honeycomb (released Feb. 2011);
- Ice Cream Sandwich (released Oct. 2011);
- Jelly Bean (released July 2012);
- KitKat (released Oct. 2013); and
- Lollipop (released Nov. 2014).

These six named Android releases comprise approximately 40 major and minor releases of Android.

2.   As with previous versions of Android, these six Android releases copy thousands of lines of source code from the Java platform, as well as the structure, sequence and organization ("SSO") of that platform as reflected in the 37 Java API packages.  The 37 Java API packages include: java.awt.font, java.beans, java.io, java.lang, java.lang.annotation, java.lang.ref, java.lang.reflect, java.net, java.nio, java.nio.channels, java.nio.channels.spi, java.nio.charset, java.nio.charset.spi, java.security, java.security.acl, java.security.cert, java.security.interfaces, java.security.spec, java.sql, java.text, java.util, java.util.jar, java.util.logging, java.util.prefs, java.util.regex, java.util.zip, javax.crypto, javax.crypto.interfaces, javax.crypto.spec, javax.net, javax.net.ssl, javax.security.auth, javax.security.auth.callback, javax.security.auth.login, javax.security.auth.x500, javax.security.cert, and javax.sql.  Just as before, this copying constitutes copyright infringement.

3.   Android will still not work without these Java API packages.

PLAINTIFF'S [PROPOSED]
SUPPLEMENTAL COMPLAINT
CV 10-03561 WHA

**B.**     **The Android Platform Continues to Change and Expand.**

4.     Since Oracle filed the Amended Complaint in October 2010, Android has become the most widely used mobile platform in the world.

        **1.**     **Evolution of the Android Experience.**

5.     While Android continues to be the mobile platform of choice for mobile phones and tablets, in its latest Android releases Google has made a concerted effort to expand Android's adoption into more non-handheld devices to make Android a truly ubiquitous platform.

6.     *Android Wear.*   Google is targeting Android for small-screen wearable devices, including watches. Google provides software libraries and support to manufacturers and software developers for wearable devices.

7.     *Android TV.*   Google is also targeting Android development on the largest screens in the house. Google partners with manufacturers to make Android available on various televisions, media players, and gaming consoles. Google also provides support for software developers targeting their apps for televisions.

8.     *Android Auto.*   Google, as a founding member of the Open Automotive Alliance, partners with automotive manufacturers and other technology companies to bring Android to in-car displays. Google also provides support to software developers interested in developing for Android Auto.

9.     *Other Android devices.*   Android is also starting to show up in other household appliances, such as refrigerators, microwaves, washing machines, and air conditioners.

10.     *Google Play.*   Google has also reimagined Android's digital storefront. In March 2012, Google replaced the Android Market with Google Play, a single location that sells apps, television shows, movies, music, books, newspapers, and magazines for Android users to download and use on Android devices. Google Play boasts over 1.5 million apps, 18 million songs, 5 million books, and 2,000 publications.

**2.**    **Android Becomes the Dominant Mobile Platform.**

11.    Since the filing of the Amended Complaint in late 2010, Android has experienced significant growth in the phone and tablet markets.  Between 2011 and 2014, Android's mobile phone market share has increased, by some estimates, from nearly 40 percent to more than 80 percent.  *See* http://www.gartner.com/newsroom/id/1622614 (forecasting 38.5 percent market share for Android in 2011) (dated April 7, 2011); http://www.gartner.com/newsroom/id/2944819 (83.1 percent market share for Android in 2014) (dated December 15, 2014).  Android's share of the tablet market has also experienced incredible growth, rising from a 20 percent market share in 2011 to nearly 70 percent in 2014.  *See* http://www.gartner.com/newsroom/id/1626414 (reporting Google's tablet market share as 20 percent in 2011) (dated April 7, 2011); https://gigaom.com/2014/11/25/the-global-tablet-market-is-slowing-down-says-idc/ ("Android, mirroring its success on smartphones, is still the dominant tablet operating system, accounting for 68 percent of the market—16 percent higher than last year.") (dated November 25, 2014).

12.    There are now over one *billion* active monthly Android users and more than 8,000 devices running versions of Android.

13.    The use of Android has also increased considerably.  In 2011, users downloaded 10 billion Android applications from Android Market on a catalog of over 300,000 applications.  As of today, however, users have downloaded more than 50 billion applications from Google Play on a catalog of more than 1.5 million apps.

14.    Android use is also up as measured by advertising. By some accounts, Android is now the top mobile advertising platform as measured by total advertising revenue (46 percent market share) and by traffic (65 percent market share).  *See* http://www.cnet.com/news/android-finally-beats-ios-in-mobile-ad-sales/ (reporting Android has three times the market share of mobile ad traffic as compared to its nearest competitor, iOS) (dated May 5, 2015).

**C.**    **Android Continues to Support Google's Revenue Generation.**

15.    Android's explosive growth gives Google an expanded platform on which it can support its core revenue generator: advertising.

PLAINTIFF'S [PROPOSED]
SUPPLEMENTAL COMPLAINT
CV 10-03561 WHA

16.     Between 2010 and 2014, Google's annual total revenue more than doubled from an already staggering $29 billion to $66 billion. The majority of this revenue came from advertising. Google's annual net income also increased substantially over this time period, from $8.5 billion to $14.4 billion.

17.     Mobile search and advertising represent an increasingly important part of Google's revenue generation. Google claims the majority of the search queries it processes in the United States come from mobile devices. In addition, Google's advertising rates for mobile continue to grow, even while non-mobile advertising rates decrease.

18.     The Android platform plays a key role in generating Google's mobile advertising revenue. Google provides software libraries and services for the Android platform that facilitate mobile advertising. Google's Chrome web browser comes pre-installed with Android, and Google is the default search engine for the browser. Android devices also come with Google search pre-loaded. Each of these mechanisms helps Google control mobile advertising.

19.     Android also helps Google generate revenue from other sources, including from the Google Play store. Google receives a cut of the purchase price for paid Android apps and in-app purchases sold through Google Play. Google also receives revenue for licensing other Android-compatible digital content such as television shows, movies, music, books, newspapers, and magazines sold through Google Play. Simply put, acquiring more users has meant more usage of the Google Play store and more money for Google.

20.     With an ever-expanding installed base of devices running Android and increasing penetration of new and diverse markets, Google has maintained its dominance in the search business and will continue to reap enormous profits from both its direct and indirect exploitation of the infringing code.

**D.     Google Is Destroying the Market for Java as a Mobile Platform.**

21.     The infringing Android operating system has, in the time since the first trial, come into widespread use, as outlined above, and has achieved a dominant market share of the world's mobile devices, with some estimating that Android is now on more than 80 percent of

PLAINTIFF'S [PROPOSED]
SUPPLEMENTAL COMPLAINT
CV 10-03561 WHA

1    smartphones.  None of these releases of Android would work without the infringing Java code.

2        22.    Although all of these new Android versions are dependent upon the infringing

3    Java code, applications written for these new Android versions are not compatible with the Java

4    platform, because they do not run on the Java platform or on devices implementing the Java

5    platform.  Similarly, applications written for the Java platform do not run on the versions of

6    Android made available since October 2010.  Accordingly, given the widespread dominance

7    Android has achieved with its continued unauthorized use of the 37 Java API packages over the

8    past few years, Android has now irreversibly destroyed Java's fundamental value proposition as a

9    potential mobile device operating system by breaking the "write once, run anywhere" principle on

10   which Java was built.

11       23.    Google's increasing domination of the mobile device market with Android and its

12   continuing failure and refusal to make Android compatible with the Java platform has destroyed

13   the potential value of a licensed derivative version of the Java platform in the mobile device

14   market.

15       24.    Upon information and belief, Google has continued to refuse to make Android

16   compatible with the Java platform, at least in part, because if Android applications were

17   compatible with the Java platform, then another mobile OS provider could use the Java platform

18   to create a mobile operating system compatible with those applications.  If such a provider could

19   attract users to a new mobile operating system capable of running both Android and Java

20   applications, then Google would face a fundamental threat to its dominance in the market for

21   search engine advertising, because it would not be able to direct users to its search engine.

22       25.    Google, unlike Oracle, is not dependent upon revenues from the platform itself,

23   because its real goal is to continue capturing search engine advertising revenues.  Google is

24   therefore able to offer at no charge what Oracle has worked hard to build and maintain, and in the

25   process to destroy the value of the Java platform in a market that has become the most lucrative

26   of this generation.

27

28

## COUNT IX

### (Copyright Infringement)

26.     Oracle hereby restates and realleges the allegations set forth in paragraphs 1 through 25 above and incorporates them by reference.

27.     Oracle owns copyrights in the Java platform.  These copyrights encompass the SSO and declaring code for the 37 Java packages.

28.     Google copied the SSO and declaring source code for the 37 Java packages into its Android software.  Google has done this for all versions of Android, including those that were released or became widely used after the filing of the Amended Complaint in October 2010. These versions of Android include Gingerbread, Honeycomb, Ice Cream Sandwich, Jelly Bean, KitKat, and Lollipop.

29.     Google reproduces and distributes Android to hardware manufacturers and software developers, including those in the mobile device, television, and automotive markets, with the intent that these manufacturers and developers further reproduce and distribute Android to other developers and end-users.  Through these activities, Google seeks to expand the reach of Android by encouraging the development and use of software on the platform.  Google's Android distributions include Oracle's copyrighted materials from the 37 Java packages.  Such use is not licensed.  Thus, Google has induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing and assisting others to copy and distribute infringing works.

30.     On information and belief, Google's direct and indirect infringements have been and continue to be knowing and willful.

31.     Google's reproduction and distribution of the Oracle's copyrighted materials from the 37 Java Packages violate Oracle's exclusive rights under 17 U.S.C. § 106.

32.     Google has realized and will continue to realize unjust profits, gains, and advantages as a proximate result of its infringement.

PLAINTIFF'S [PROPOSED]
SUPPLEMENTAL COMPLAINT
CV 10-03561 WHA

33.     Oracle is entitled to an injunction restraining Google from engaging in any further such acts in violation of the United States copyright laws.  Unless Google is enjoined and prohibited from infringing Oracle's copyrights and inducing others to infringe Oracle's copyrights, Google will continue to intentionally infringe and induce infringement of Oracle's copyrights.

34.     As a direct and proximate result of Google's direct and indirect willful infringement, Oracle has suffered, and will continue to suffer, monetary loss to its business, reputation, and goodwill.  Oracle is entitled to recover from Google, in amounts to be determined at trial, the damages Oracle sustained and will sustain, and any gains, profits, and advantages obtained by Google as a result of its infringement.

## PRAYER FOR RELIEF

A.     Entry of judgment holding Google liable for infringement of the Java platform copyrights at issue in this litigation;

B.     An order permanently enjoining Google, its officers, agents, servants, employees, attorneys and affiliated companies, its assigns and successors in interest, and those persons in active concert or participation with it, from continued acts of infringement of the Java platform copyrights;

C.     An order awarding Oracle its actual damages resulting from Google's continued infringement, as well as Google's profits attributable to the continuing infringement to the extent not duplicative of actual damages, together with prejudgment and post-judgment interest;

D.     An order awarding Oracle its costs and attorney's fees under 17 U.S.C. § 505; and

E.     Any and all other legal and equitable relief as may be available under law and which the court may deem proper.

## JURY DEMAND

Oracle demands a jury trial for all issues so triable.

Dated: August ___, 2015                        KAREN G. JOHNSON-MCKEWAN
                                               ANNETTE L. HURST
                                               PETER A. BICKS
                                               LISA T. SIMPSON
                                               Orrick, Herrington & Sutcliffe LLP


                                               By: _____
                                                     ANNETTE L. HURST
                                                     Attorneys for Plaintiff
                                                     ORACLE AMERICA, INC.

PLAINTIFF'S [PROPOSED]
SUPPLEMENTAL COMPLAINT
CV 10-03561 WHA