KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **GOOGLE'S MEMORANDUM REGARDING LACHES** <br><br><br> Dept. Courtroom 8, 19th Fl. <br> Judge: Hon. William Alsup |

In its July 31, 2015 Second Case Management Order, ECF No. 1277, the Court requested that the parties brief the issue of whether laches could bar Oracle from recovering Google's profits attributable to the alleged infringement under 17 U.S.C. § 504(b). The answer is "yes." Laches can bar Oracle from recovering Google's profits or obtaining other equitable relief, such as an injunction. The Supreme Court recently held, in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), that disgorgement is an equitable remedy. Thus, laches can both bar a disgorgement claim at the outset of the case and limit the relief available at the remedy stage. *Id.*

In *Petrella*, the Court confirmed that "disgorgement of unjust gains" is "equitable relief," *id.* at 1978, and that laches may bar or limit all forms of equitable relief, including disgorgement of profits under Section 504(b). *Id.* at 1977-78. The Court also ruled that "a plaintiff's delay can *always* be brought to bear at the remedial stage, in determining appropriate injunctive relief, and in assessing the 'profits of the infringer attributable to the infringement.'" *Id.* at 1967 (quoting 17 U.S.C. § 504(b) (internal alterations omitted) (emphasis added)).

## I. ACTUAL DAMAGES AND DISGORGEMENT OF WRONGFUL PROFITS ARE DIFFERENT REMEDIES WITH DIFFERENT PURPOSES.

Section 504(b) of the Copyright Act provides for "two distinct monetary remedies—actual damages and recovery of wrongful profits." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707-08 (9th Cir. 2004). The plain language of the statute indicates that the two remedies are different and do not overlap. Section 504(b) states: "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, *and* any profits of the infringer that are attributable to the infringement *and are not taken into account in computing the actual damages.*" (Emphasis added). "Actual damages" compensate the copyright owner for the loss in the value of the copyright, and can, when appropriate, be measured by the value of a hypothetical license to the copyright or the copyright owner's lost profits. *See Polar Bear*, 384 F.3d at 708. "Profits of the infringer attributable to the infringement," on the other hand, represent the infringer's "unjust gains" from use of the copyrighted work. *Petrella*, 134 S. Ct. at 1967, 1978; *see also Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399-400 (1940) (discussing equitable nature of a claim for infringer's profits).

Oracle seeks both actual damages and disgorgement of Google's profits attributable to the alleged infringement. ECF No. 36 at 10-11, ¶ 47 and ¶ D; ECF No. 1288-1 at 7, ¶ C. Oracle's damages expert opined in early 2012 that Oracle was entitled to actual damages of between $35 and $136 million, and, separately, disgorgement of $824 million of Google's profits for alleged infringement through the end of 2011. ECF No. 785. Oracle's claim for actual damages is legal in nature, and laches "cannot be invoked" to bar alleged damages claimed within the three-year limitations period. *Petrella*, 134 S. Ct. at 1967. But Oracle's claim for disgorgement is equitable in nature, and laches can bar that relief entirely or limit it at the remedial stage. *Id.* at 1967.

## II. DISGORGEMENT OF PROFITS IS AN EQUITABLE REMEDY, AND THUS CAN BE BARRED IN WHOLE OR IN PART BY LACHES.

"Disgorgement of improper profits" is "traditionally considered an equitable remedy." *Tull v. United States*, 481 U.S. 412, 424 (1987); *see also Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) (noting that "we have characterized as equitable . . . actions for disgorgement of improper profits"); *Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-04500 CRB, 2012 WL 4068624, at *5 (N.D. Cal. Sept. 14, 2012) ("[D]isgorgement of profits . . . is a classic equitable remedy."). A claim for disgorgement is restitutionary—and thus equitable— because it seeks to return to the plaintiff the defendant's allegedly unjust or improper gains. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990); *Petrella*, 134 S. Ct. at 1967 n.1. "That the [Copyright Act] explicitly provides for such a remedy does not strip it of its equitable character." *Datatech*, 2012 WL 4068624 at *5; *accord* 4 M. Nimmer & D. Nimmer, Nimmer on Copyright ("Nimmer") § 14.03[E], at 14-64 (2014).

In *Petrella*, the Supreme Court reiterated that a claim for disgorgement of an alleged copyright infringer's profits under Section 504(b) of the Copyright Act was an equitable claim, and, therefore, could be barred in whole or in part by the equitable defense of laches. 134 S. Ct. at 1967 n.1, 1977-78. Plaintiff Paula Petrella claimed that defendant MGM's iconic movie *Raging Bull* infringed her copyrights in a related screenplay. *Id.* at 1970-71. Plaintiff sought actual damages, disgorgement of MGM's profits, and an injunction against further infringement. *Id.* at 1968, 1978. The district court granted MGM's motion for summary judgment based on

2

966665

laches and denied plaintiff any form of relief, and the Ninth Circuit affirmed. *Id.* at 1972-73.

The Supreme Court reversed, holding that laches "cannot be invoked to preclude adjudication of a claim for ***damages*** brought within the three-year window" of Section 504(b). *Id.* at 1967 (emphasis added). But the Court also clarified that laches *is* available as a defense to claims for ***equitable relief***. *Id.* at 1978. In delineating the scope of the laches defense, the Court distinguished between the two types of monetary relief—actual damages and profits—available under Section 504(b) of the Copyright Act. *Id.* at 1967-68. The Court explained that, "[l]ike other restitutional remedies, recovery of profits is not easily characterized as legal or equitable," but that "***[g]iven the protean character of the profits-recovery remedy, we regard as appropriate its treatment as equitable in this case***." *Id.* at 1967 n.1 (emphasis added) (internal quotations and citations omitted). Thus, because the profits-recovery remedy is equitable in nature, the Court ruled that laches can in "extraordinary circumstances" bar that relief completely at the outset of the case, and "can always be brought to bear at the remedial stage . . . in assessing the 'profits of the infringer . . . attributable to the infringement." *Id.* at 1966-67 (quoting 17 U.S.C. § 504(b)). The Court ultimately found that the facts in *Petrella* did not present the type of extraordinary circumstances that could bar a disgorgement claim completely, though it stated that "[s]hould Petrella ultimately prevail on the merits, the District Court, in determining appropriate injunctive relief and assessing profits, may take account of her delay in commencing suit." *Id.* at 1978.

As commentators and the lower courts have recognized, *Petrella* "place[d] recovery of profits squarely on the equitable side of the ledger." 3 Nimmer, § 12.06[B][3][d][i], at 12-160.4; *see also Lambert Corp. v. LBJC Inc*. No. 2:13-CV-00778-CAS, 2014 WL 2737913, at *5 (C.D. Cal. June 16, 2014) (noting that, under *Petrella*, laches can be brought to bear in assessing the profits of the infringer). Before *Petrella*, the Ninth Circuit suggested in dicta in a case arising under the 1909 Copyright Act that a claim for accounting of profits was legal, not equitable. *See Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 (9th Cir. 1977) (remanding for an assessment of profits by the court rather than a jury), *superseded by statute* in 17 U.S.C. § 504(b). But the *Krofft* dicta has now been definitively rebuked by the Supreme Court's conclusion in *Petrella* that an accounting of profits is an equitable remedy.

966665

Oracle, like the plaintiff *Petrella*, seeks disgorgement of profits attributable to the alleged infringement (in addition to a permanent injunction and destruction of all copies of Android). ECF No. 36 at 10-11, ¶ 47 & ¶ D; ECF No. 1288-1 at 5-6. That is an equitable remedy, and therefore laches is available as a defense in whole or in part. *Petrella*, 134 S. Ct. at 1967.

### III. LACHES CAN BE APPLIED TO BAR ORACLE'S DISGORGEMENT CLAIM—AND THE OTHER EQUITABLE RELIEF IT SEEKS—IN WHOLE OR IN PART.

Laches requires Google to show by a preponderance of the evidence that (1) Sun/Oracle delayed in filing a lawsuit for an unreasonably long and inexcusable period of time; and (2) Google has been or will be prejudiced due to Sun/Oracle's delay. *SeeDanjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). Both requirements are met here.

As early as September 2005, Sun knew that Google intended to invest a significant amount of resources into building a mobile platform supporting the Java language and APIs. *See* TX 617 (September 19, 2005 email from Andy Rubin at Google to Leo Cizek at Sun stating, "If Sun doesn't want to partner with us to support this initiative, we are fine releasing our work and not calling it Java."). In November 2007, Google publicly released the Android Software Development Kit ("SDK") as an open-source platform, which prompted Sun's CEO to proclaim that Google had "just strapped another set of rockets to the [Java] community's momentum." TX 2352. And in June 2009, after Oracle announced its acquisition of Sun, Oracle's then-CEO Larry Ellison publicly praised Google at the largest Java developer conference in the world, stating that Oracle was "flattered by Android" and expected to "see lots of Java devices" "from our friends at Google." TX 2939. Throughout this period, Google continued to invest significant amounts of time, money, and goodwill into Android by hiring engineers, creating Android applications, working with partners to bring Android phones to market, and then improving Android by releasing new versions and expanding it to new products. *See* ECF No. 989 at 1715:2-1717:25.

Sun/Oracle's delay presents the type of "extraordinary circumstances" that the *Petrella* Court stated could bar entirely a claim for equitable relief. Despite having full knowledge of Google's use of the structure, sequence, and organization ("SSO") of the 37 Java API packages, Sun/Oracle not only failed to assert an infringement claim, it openly applauded and encouraged

4

GOOGLE'S MEMORANDUM REGARDING LACHES
Case No. CV 10-03561 WHA

966665

1  Google's use of the SSO for years. It was not until August 2010, nearly five years after learning
2  of Android, and almost three years after Google announced Android and released the SDK, that
3  Sun/Oracle belatedly sued Google, claiming that Android infringed its copyrights. Sun/Oracle's
4  conduct was unreasonable and inexcusable, and prejudicial to Google. Oracle should not benefit
5  from that delay. *See Danjaq*, 263 F.3d at 951 ("[I]t is inequitable for the owner of a copyright,
6  with full notice of an intended infringement, to stand inactive while the proposed infringer spends
7  large sums of money in its exploitation, and to intervene only when his speculation has proved a
8  success.") (quoting *Haas v. Leo Feist, Inc.,* 234 F. 105, 108 (S.D.N.Y. 1916) (Hand, J.)).

Though the *Petrella* Court declined to bar entirely the plaintiff's long-delayed equitable claim in that case, it cited with approval two lower-court copyright cases where laches was applied to periods of delay significantly shorter than Sun/Oracle's delay in this case. 134 S. Ct. at 1978 (citing *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227 (6th Cir. 2007) (eighteen month delay), and *New Era Publ'n Int'l v. Hentry Holt & Co.*, 873 F.2d 576, 584-85 (2d Cir. 1989) (two-year delay)). In *Chirco*, the Sixth Circuit barred the plaintiff from seeking destruction of houses built using an allegedly infringing architectural design because doing so would "work an *unjust* hardship upon the defendants or upon innocent third parties." 474 F.3d at 236 (emphasis in original). Similarly, an injunction or destruction of Android phones would be an unjust hardship on innocent third-party purchasers, handset manufacturers, carriers, and others members of the Android community. And disgorgement of hundreds of millions of dollars would be an unjust hardship on Google in light of its continued investment in new Android versions and products and Sun/Oracle's repeated instances of public encouragement of Android.

Even if Sun/Oracle's conduct did not meet the "extraordinary circumstances" standard—which it does—laches still would be relevant to the equitable relief Oracle seeks. "[A] plaintiff's delay can *always* be brought to bear at the remedial stage, in determining appropriate injunctive relief, and in assessing the 'profits of the infringer . . . attributable to the infringement.'" *Petrella*, 134 S. Ct. at 1967 (quoting 17 U.S.C. § 504(b) (internal alterations omitted) (emphasis added)). Thus, for these reasons, the Court should defer ruling on the merits of Google's laches defense until after it has heard all of the evidence at trial, as it previously indicated. ECF No. 1277 at 2.

966665

| | | |
|---|---|---|
| Dated: August 11, 2015 | | KEKER & VAN NEST LLP |
| | By: | */s/ Robert A. Van Nest* |
| | | ROBERT A. VAN NEST |
| | | CHRISTA M. ANDERSON |
| | | DANIEL PURCELL |
| | | Attorneys for Defendant |
| | | GOOGLE INC. |