ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE'S OPPOSITION TO MOTION TO PRECLUDE SUBMISSION OF WILLFULNESS TO JURY** <br><br> Date:  September 17, 2015 <br> Time:  8:00 a.m. <br> Dept.:  Courtroom 8, 19th Floor <br> Judge:  Honorable William H. Alsup |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 2

FACTUAL AND PROCEDURAL BACKGROUND ............................................................ 3

    A.    Oracle's Evidence That Google's Infringement Is Willful. ..................................... 3

    B.    Oracle's Proposed Verdict Question And Jury Instruction On Willfulness. ........... 5

        1.    Proposed Jury Verdict Question .................................................. 6

        2.    Existing Ninth Circuit Model Instruction 17.24 On Defendant's Profits .... 6

        3.    Oracle's Proposed Special Instruction ......................................... 6

ARGUMENT ..................................................................................................................... 7

I.    ORACLE IS ENTITLED TO A JURY VERDICT ON INFRINGER'S PROFITS............ 7

    A.    The Copyright Act Requires Submission Of Infringer's Profits To The Jury. ........ 7

    B.    The Seventh Amendment Also Requires Submission Of Infringer's Profits
        To The Jury. ....................................................................................... 9

II.    WILLFUL INFRINGEMENT MUST BE DECIDED BY A JURY BECAUSE IT CAN
    AFFECT THE CALCULATION OF INFRINGER'S PROFITS................................... 10

    A.    Section 504(b) Of The Copyright Act Of 1976 Adopted The Rule Of *Sheldon*.... 12

        1.    *Sheldon* Enshrined The Apportionment And Limited Deduction Rule. .... 12

        2.    Congress Adopted *Sheldon* In The 1976 Act. ............................. 13

    B.    Courts Have Long Prevented Deliberate Wrongdoers From Deducting
        Certain Fixed Expenses In Calculating A Profits Remedy. .................................. 17

    C.    Section 504(b) Has Been Repeatedly Interpreted To Permit The Limitation
        Of "Deductible" Expenses. ................................................................. 19

III.    PRACTICAL CONSIDERATIONS LIKEWISE DICTATE THAT THE JURY
    RENDER A VERDICT ON WILLFULNESS. .................................................... 23

IV.    ORACLE CANNOT BE COMPELLED TO AN EARLIER ELECTION OF
    REMEDIES.................................................................................. 24

CONCLUSION ................................................................................................. 25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

**Federal Cases**

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.,*
191 F.2d 99 (2d Cir. 1951) .................................................................................................. 13

*Allen-Myland, Inc. v. IBM Corp.,*
770 F. Supp. 1014 (E.D. Pa. 1991) ...................................................................................... 21

*Andreas v. Volkswagen of Am., Inc.,*
336 F.3d 789 (8th Cir. 2003) ................................................................................................. 9

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,*
501 U.S. 104 (1991) ............................................................................................................ 16

*Balsley v. LFP, Inc.,*
691 F.3d 747 (6th Cir. 2012) ................................................................................................. 9

*Bonner v. Dawson,*
404 F.3d 290 (4th Cir. 2005) ................................................................................................. 9

*Bridgeport Music, Inc. v. UMG Recordings, Inc.,*
585 F.3d 267 (6th Cir. 2009) ............................................................................................... 25

*Carter Prods., Inc. v. Colgate-Palmolive Co.,*
214 F. Supp. 383 (D. Md. 1963) .......................................................................................... 13

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) .............................................................................................................. 24

*Concrete Pipe & Prods. v. Constr. Laborers Pension Trust,*
508 U.S. 602 (1993) ............................................................................................................ 22

*Cotter v. Christus Gardens, Inc.,*
238 F.3d 420, 2000 WL 1871698 (6th Cir. 2000) ......................................................... 24, 25

*Dairy Queen, Inc. v. Wood,*
369 U.S. 469 (1962) ............................................................................................................ 13

*Data Gen. Corp. v. Grumman Sys. Support Corp.,*
36 F.3d 1147 (1st Cir. 1994) ................................................................................................. 9

*Dream Games of Ariz., Inc. v. PC Onsite,*
561 F.3d 983 (9th Cir. 2009) ............................................................................................... 24

*E. E. Bolles Wooden-Ware Co. v. United States,*
106 U.S. 432 (1882) ....................................................................................................... 17, 18

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) .................................................................................................... 8

*Feltner v. Columbia Pictures Television, Inc.,*
    523 U.S. 340 (1998) ........................................................................................ *passim*

*Folkens v. Wyland,*
    No. C-01-1241 EDL, 2002 WL 1677708 (N.D. Cal. July 22, 2002) .................................... 20

*Frank Music Corp. v. MGM, Inc.,*
    772 F.2d 505 (9th Cir. 1985) ................................................................................. 20

*Gaste v. Kaiserman,*
    863 F.2d 1061 (2d Cir. 1988) ................................................................................... 9

*Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co.,*
    95 F.2d 978 (6th Cir. 1938) .................................................................................. 13

*Great-W. Life & Annuity Ins. Co. v. Knudson,*
    534 U.S. 204 (2002) .............................................................................................. 8

*Guffey v. Smith,*
    237 U.S. 101 (1915) ............................................................................................ 18

*Hamil Am. Inc. v. GFI,*
    193 F.3d 92 (2d Cir. 1999) .................................................................................. 21

*Harper & Row Publ'rs v. Nation Enters.,*
    471 U.S. 539 (1985) ............................................................................................ 23

*Harper House, Inc. v. Thomas Nelson, Inc.,*
    No. CV 85-4225-PAR, 1987 WL 30581 (C.D. Cal. Aug. 28, 1987) .................................... 21

*Harris Mkt. Research v. Marshall Mktg. & Commc'ns, Inc.,*
    948 F.2d 1518 (10th Cir. 1991) ................................................................................ 9

*In re Hanford Nuclear Reserv. Litig.,*
    534 F.3d 986 (9th Cir. 2008) ................................................................................. 15

*Jarvis v. A & M Records,*
    827 F. Supp. 282 (D.N.J. 1993) ............................................................................. 21

*Kamar Int'l, Inc. v. Russ Berrie & Co.,*
    752 F.2d 1326 (9th Cir. 1984) ............................................................................... 20

*Kiva Kitchen & Bath, Inc. v. Capital Distrib. Inc.,*
    319 Fed. App'x. 316 (5th Cir. 2009) ........................................................................ 25

*L.A. News Serv. v. KCAL-TV Channel 9,*
    108 F.3d 1119 (9th Cir. 1997) ............................................................................... 23

- iii -

*L.A. News Serv. v. Reuters Televisions Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998).................................................................................. 24

*L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co.*,
277 U.S. 97 (1928) ....................................................................................... *passim*

*Liu v. Price Waterhouse LLP*,
No. 97 CV 3093, 2000 WL 1644585 (N.D. Ill. Oct. 30, 2000) ........................... 21

*Livingston v. Rawyards Coal Co.*,
L. R. 5 App. Cas. 33 (1880) ............................................................................... 17

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
658 F.3d 936 (9th Cir. 2011) ............................................................................. 23

*McRoberts Software, Inc. v. Media 100, Inc.*,
329 F.3d 557 (7th Cir. 2003).................................................................................. 9

*Mfrs. Techs., Inc. v. Cams, Inc.*,
728 F. Supp. 75 (D. Conn. 1989) ....................................................................... 21

*Miller v. Universal City Studios, Inc.*,
650 F.2d 1365 (5th Cir. 1981).............................................................................. 9

*Mills Music, Inc. v. Snyder*,
469 U.S. 153 (1985) ........................................................................................... 16

*Montgomery v. Noga*,
168 F.3d 1282 (11th Cir. 1999).............................................................................. 9

*Oracle Int'l Corp. v. SAP AG*,
No. C 07-1658 PJH, 2012 WL 11883865 (N.D. Cal. May 29, 2012)............... 21, 22

*Overton v. Health Communs., Inc.*,
2012 U.S. Dist. LEXIS 31871 (W.D. Wis. Mar. 9, 2012) ................................. 25

*Petrella v. MGM, Inc.*,
134 S. Ct. 1962 (2014) ......................................................................................... 9

*Pine River Logging & Imp. Co. v. United States*,
186 U.S. 279 (1902) ........................................................................................... 18

*Plain Jane, Inc. v. Lechters, Inc.*,
No. CIV.A. 95-2724, 1995 WL 608483 (E.D. La. Oct. 17, 1995) ....................... 21

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004)................................................................................. 9

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010) ............................................................................................. 9

*Ex parte Robinson*,
    86 U.S. 505 (1873) ................................................................................. 24

*Rubber Co. v. Goodyear*,
    76 U.S. 788 (1869) ................................................................................. 18

*Saxon v. Blann*,
    968 F.2d 676 (8th Cir. 1992) .................................................................. 21

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    309 U.S. 380 (1940) ......................................................................... *passim*

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    106 F.2d 45 (2d Cir. 1939) .............................................................. *passim*

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    81 F.2d 49 (2d Cir. 1936) ....................................................................... 12

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
    562 F.2d 1157 (9th Cir. 1977) ......................................................... 10, 13

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) .................................................................................. 8

*Stenograph L.L.C. v. Bossard Assocs., Inc.*,
    144 F.3d 96 (D.C. Cir. 1998) ................................................................... 9

*Stromberg Motor Devices Co. v. Detroit Trust Co.*,
    44 F.2d 958 (7th Cir. 1930) .................................................................... 13

*Stromberg Motor Devices Co. v. Zenith-Detroit Corp.*,
    73 F.2d 62 (2nd Cir. 1934) ..................................................................... 13

*Swofford v. B & W, Inc.*,
    336 F.2d 406 (5th Cir. 1964) .................................................................. 10

*Telecom Technical Servs. Inc. v. Rolm Co.*,
    388 F.3d 820 (11th Cir. 2004) .................................................................. 9

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ...................................................... 19, 20, 22

*Walker v. Reister*,
    102 U.S. 467 (1880) ............................................................................... 18

*William A. Graham Co. v. Haughey*,
    646 F.3d 138 (3d Cir. 2011) ..................................................................... 9

*ZZ Top v. Chrysler Corp.*,
    70 F. Supp. 2d 1167 (W.D. Wash. 1999) ........................................ 21, 22

**State Cases**

*Belton v. Briggs,*
    4 S.C. Eq. (4 Des. Eq.) 465 (1814) ....................................................... 18

*Dellet v. Whitner,*
    15 S.C. Eq. (Chev. Eq.) 213 (1840) ..................................................... 18

*Martin v. Evans,*
    20 S.C. Eq. (1 Strob Eq.) 350 (1847) ................................................... 18

*Pittsburgh & W. Va. Gas Co. v. Pentress Gas Co.,*
    100 S.E. 296 (W. Va. 1919) ........................................................... 18, 19

**Constitutional Provisions**

U.S. Const. amend. VII ................................................................... 9

**Federal Statutes**

17 U.S.C. § 101, as amended August 24, 1912 ..................................... 14

17 U.S.C. § 504 ................................................................... *passim*

**Other Authorities**

9th Cir. Manual of Model Jury Instructions (Civil) .................... 6, 11, 20, 23

John W. Salmond, *Observations on Trover and Conversion,*
    21 L. Q. Rev. 43 (1905) ................................................................. 18

Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* (2015) ...................................... 21

Ralph S. Brown, Jr., *Study No. 23: The Operation of the Damage
Provisions of the Copyright Law* (Mar. 1958) ...................................... 16

Register of Copyrights, *Report on the General Revision of the U.S.
Copyright Law* (July 1961) ...................................... 16

William F. Patry, *Patry on Copyright* (2015) ...................................... 10, 11

William S. Strauss, *Study No 22: The Damage Provisions of the Copyright
Law* (Oct. 1956) ...................................... 16

## INTRODUCTION

Google is a willful infringer.  Google copied and distributed without authorization Sun/Oracle's 37 Java API Packages (and RangeCheck and the eight decompiled files, for that matter).  Google knew full well that this was copyrighted material, that it needed to take a license, and that its failure to do so subjected it to legal liability.  Indeed, Google's employees were instructed to conceal the scope of the infringement for as long as possible as they "scrubbed the js" from Android.  At no point did anyone inside Google ever suggest that its unauthorized copying was "fair use"—nor does it have an opinion of counsel justifying its actions.

Google simply didn't care that it was willfully infringing Sun's (and later Oracle's) copyrights.  Sun was weak and Google needed to get to market with a mobile solution.  When Oracle acquired Sun, Google again had the chance to do the right thing—and this time it faced an opponent that was not hemorrhaging revenue and watching its market capitalization drop through the floor.  At that point, Google's executives candidly acknowledged that they needed the Java API Packages, because "the alternatives all suck."  Google believed it would be "out of business in 10 years" if it did not succeed in mobile.  Still, Google did not do the right thing and take a license.  Google stands alone among large companies who commercially exploit the Java Platform without complying with the license terms.

Now Google wants to escape any meaningful consequence for its actions.  Google argues that the only consequence of a deliberate wrongdoing that earned it many billions of dollars in profit, severely harmed the Java Platform, and allowed Google to maintain a dominant market share in the search engine advertising market, is the difference between $75,000 and $150,000 in statutory damages.  Google tries to convince this Court that it simply makes no difference at all that it knowingly and deliberately took the property of another in violation of the law while earning untold billions in the process.

Google is utterly wrong.  Willfulness does matter—even when the infringement is on an epic scale.  It matters because for hundreds of years, at law and equity, the courts have consistently recognized that conscious wrongdoers must be deprived of any benefit whatsoever from their knowing choice to disobey the law.  The trier of fact has *always* had the discretion, at

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

1    law and at equity, to take into account conscious wrongdoing when accounting for profits.  The

2    Supreme Court has repeatedly affirmed that rule in numerous contexts, the rule has been applied

3    for decades in all types of intellectual property cases, and Congress legislated that rule when it

4    explicitly adopted the rationale of one of those Supreme Court copyright cases, *Sheldon v. Metro-*

5    *Goldwyn Pictures Corp.*, 309 U.S. 390 (1940), in Section 504(b) of the 1976 Copyright Act.  The

6    jury is entitled to consider it here.  Accordingly, Oracle proposes herein both a verdict and a jury

7    instruction that properly address this issue.

8                                    **SUMMARY OF ARGUMENT**

9            As Google concedes, Oracle is entitled to a jury on its damages claim, including its claim

10   for Google's profits attributable to the infringement.  Part I, *infra*.

11           Oracle is also entitled to have the jury render a verdict whether Google is a willful

12   infringer, and if so, determine whether any or all fixed expense deductions should be disallowed

13   in the accounting of Google's profits.  Hundreds of years of common law legal history, Supreme

14   Court precedent, and the legislative history of the 1976 Copyright Act all require this

15   interpretation of the phrase "deductible expenses" in Section 504(b) of the Act.  Google's Motion

16   to Preclude Submission of Willfulness to the Jury Absent an Election of Statutory Damages, ECF

17   No. 1284 ("Motion" or "Mot."), not only ignores this history it also completely misses the point.

18   Oracle's position is not that *all* expenses are disallowed, or even that all fixed expenses are

19   *automatically* disallowed.  Rather, the law has always been that the trier of fact has the discretion

20   to consider deliberate wrongdoing in its damages analysis.  Part II, *infra*.

21           Moreover, the evidence that supports Oracle's claim of willfulness is the exact same

22   evidence that will prove that Google's bad faith counts against fair use.  The jury will hear all of

23   the same evidence in the liability phase of the case, and the legal standard for bad faith in the fair

24   use context is virtually the same as that for willful infringement.  There is no way to treat

25   willfulness as a "separate" issue:  It would require significant duplication and be a waste of the

26   jury's time to do so.  Part III, *infra*.

27           Nor can Google avoid a verdict on willfulness by forcing Oracle to give up its right to

28   statutory damages prior to the entry of judgment in direct contravention of Section 504.  The only

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

1   court to have addressed this issue refused to force such an early election because it would violate

2   the Copyright Act.  Section 504 is a specific statute that supersedes any more general statutes or

3   rules regarding the timing of case events.  Part IV, *infra*.

### FACTUAL AND PROCEDURAL BACKGROUND

### A.   <u>Oracle's Evidence That Google's Infringement Is Willful.</u>

As Google's 10-K reported at the end of 2005, Google's business model of relying on search engine advertising from browsers used on personal computers was in jeopardy as "[t]he number of people who access the Internet through devices other than personal computers, including mobile telephones . . . , has increased dramatically in the past few years."  TX 3215 at 65.  The stakes could not have been higher:  "[I]f we are slow to develop products and technologies that are more compatible with non-PC communications devices, we will fail to capture a significant share of an increasingly important portion of the market for online services."  *Id.*  With that backdrop, Google looked to Sun so that it could make the Java Platform the cornerstone of Google's mobile operating system, thereby capitalizing upon the Java Platform's huge existing worldwide developer base.  TX 158 at 10 ("Strategy:  Leverage Java for its existing base of developers," of which there are "6M Java developers worldwide").

From the outset, Google knew it needed a license.  Internal Google correspondence acknowledged that "***Java.lang apis are copyrighted***."  TX 18 (emphasis added).  And since "[S]un . . . own[s] the brand and ip[,]" "***[S]un gets to say who they license the tck to***[.]"  *Id.* (emphasis added).  A 2005 internal Google presentation about "[k]ey strategic decisions" for Android concluded that Google "[m]ust take [a] license from Sun[.]"  TX 1.  Google deemed such a license "critical[.]"  TX 17.  This conclusion was repeated over and over again in internal Google emails.  *See, e.g.*, TX 7 (10/11/2005:  "My proposal is that we take a license . . . .  We'll pay Sun for the license and the TCK."); TX 12 (12/20/2005:  "[E]ither a) we'll partner with Sun as contemplated in our recent discussions or b) we'll take a license"); TX 230 (8/11/2007:  "Sun chose GPL for this exact reason so that companies would need to come back to them and take a direct license and pay royalties"); TX 405 (5/30/2008 email to Google chairman and then CEO:  "Sun has been . . . playing licensing games with Java SE in order to keep it off phones and protect

1  their Java ME licensing revenues.  Sun puts field-of-use restrictions in the Java SE TCK licenses

2  which prohibit Java SE implementations from running on anything but a desktop or server.  These

3  restrictions prevent Apache Harmony from independently implementing Java SE . . . not to

4  mention Android (though that's water under the bridge at this point).").

5  　　　　But even as Google entered negotiations with Sun, Google had already contemplated what

6  it would do if it could not reach an agreement.  In October 2005, before the negotiations even got

7  off the ground, Andy Rubin, Google's head of Android, told Google co-founder Larry Page:  "If

8  Sun doesn't want to work with us, we have two options: 1) Abandon our work . . . – or – 2) Do

9  Java anyway and defend our decision, perhaps making enemies along the way[.]"  TX 7.  And by

10  August 2006, Google had made its decision (though negotiations with Sun were ongoing):  "[W]e

11  are building a java based system: that decision is final[.]"  TX 23.

12  　　　　Having selected option #2—"Do Java anyway[,] . . . perhaps making enemies along the

13  way[,]" TX 7—Google was aware of the consequences and should be held accountable for its

14  business decisions.  An internal Google email acknowledged that "Sun . . . won't be happy when

15  we release our stuff[.]"  TX 207.  And though Google was sufficiently worried about being sued,

16  Tr. 1559:20-23 (Google Chairman and former CEO, Eric Schmidt), Google's contemporaneous

17  internal emails explain why it went ahead.  It was not because Google did not know it needed a

18  license but rather because its own work was not nearly good enough to get it into the mobile

19  market quickly.  As one email indelicately put it:  "[R]egarding Java class libraries[,] [o]urs are

20  half-ass at best.  We need another half of an ass."  *See, e.g.*, TX 215.

21  　　　　Aware of the risk of litigation, Google tried to avoid it, not by taking a license, but by

22  engaging in a deliberate policy to conceal its infringement.  In November 2007 and again in

23  August 2009, Google advised its programmers to remove the word "Java" from its code.  In

24  Google's words, its programmers were told to "scrub the J word" from its code.  TX 233; *accord*

25  TX 26.  In advance of the JavaOne conference in 2008, where Google planned to introduce

26  Android to the Java community, Google directed its people operating the booth to "answer direct

27  developer questions about Android" and to demonstrate Android on a "[o]ne-on-one only" basis.

28  TX 29.  Google's instructions were explicit and left no doubt as to Google's real motive:

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

1    "*[D]on[']t demonstrate to any [S]un employees or **lawyers**.*"  *Id.* (emphasis added).  A year later,

2    Google was still trying to avoid "inadvertently stir[ring] anything up for Android[.]"  TX 1029.

3    Instead, Google decided to "step away" from the negotiating table with Sun "and only respond

4    further if Sun chases after us."  *Id.*

5         Google's deceptive strategy failed.  In April 2009, Sun met with Google and informed

6    them that the parties would need to "fix[] . . . the fact that regarding Android there was no

7    commercial use license; and, as we understood it, Android was shipping an incompatible version

8    of Java, commercially."  Tr. 1071:23-1073:9.  As Google continued to dodge Sun, Oracle

9    acquired Sun and itself explored Google's need to take a license to the Java Platform.  Tr.

10   2309:13-2310:11, 2322:1-16 (Oracle's CEO testifying about Oracle's multiple efforts to persuade

11   Google to take a license).  In turn, Google's co-founders ordered its engineers to investigate

12   alternatives to using Sun's packages.  TX 10.  By now, the blunt response from within Google is

13   well known to this Court:  The alternatives to Java "all suck."  *Id.*  "*[W]e need to negotiate a

14   license for Java[.]*"  *Id.* (emphasis added).

15        Yet, Google did not obtain that license, and Oracle had no choice but to sue.  And never

16   once in any internal document authored throughout this five-year period between 2005 and 2010

17   did Google indicate that it believed its unauthorized use was justified because it was a "fair use."

18   Nor did Google obtain an opinion of counsel justifying its continuing infringement.  Even after

19   Oracle sued in August 2010 and Google faced the unambiguous prospect that all future

20   infringement was willful infringement, Google did not change its ways.  Google neither took a

21   license nor stopped its unauthorized use of the Java API Packages.  The reason was clear.  A loss

22   of the Android developer community was an existential threat:  "[I]f we miss the 'mobile

23   window,'" then for Google—one of the largest and most profitable companies in the world—

24   "***we'll be out of business in 10 years[.]***"  TX 370 (emphasis added).

25        **B.     Oracle's Proposed Verdict Question And Jury Instruction On Willfulness.**

26        Oracle proposes the following jury verdict question and special instruction to address

27   willfulness.  Oracle also provides the existing model instruction on infringer's profits for context.

28

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

### 1.   Proposed Jury Verdict Question

Has Oracle proven by a preponderance of the evidence that
Google's copyright infringement was willful?

### 2.   Existing Ninth Circuit Model Instruction 17.24 On Defendant's Profits

**17.24 COPYRIGHT—DAMAGES—DEFENDANT'S PROFITS**
**(17 U.S.C. § 504(b))**

In addition to actual damages, the copyright owner is entitled to any profits of the defendant
attributable to the infringement.  You may not include in an award of profits any amount
that you took into account in determining actual damages.

You may make an award of the defendant's profits only if you find that the plaintiff showed
a causal [relationship] [nexus] between the infringement and the [profits generated indirectly
from the infringement] [defendant's gross revenue].

The defendant's profit is determined by [deducting] [subtracting] all expenses from the
defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the [use] [sale] of a
[[product] [work]] [[containing or using the copyrighted work] [associated with the
infringement]].  The plaintiff has the burden of proving the defendant's gross revenue by a
preponderance of the evidence.

Expenses are all **[operating costs] [overhead costs]** [and] production costs incurred in
producing the defendant's gross revenue.[1]  The defendant has the burden of proving the
defendant's expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the [use] [sale] of a [product] [work]
containing or using the copyrighted work is attributable to factors other than use of the
copyrighted work, all of the profit is to be attributed to the infringement.  The defendant has
the burden of proving the [portion] [percentage] of the profit, if any, attributable to factors
other than [copying] [infringing] the copyrighted work.

### 3.   Oracle's Proposed Special Instruction

Oracle proposes the following form of the relevant paragraph in Model Instruction 17.24

(highlighted above):  "Expenses are all **production, operating and overhead** costs incurred in

producing the defendant's gross revenue.  The defendant has the burden of proving the

defendant's expenses by a preponderance of the evidence."

Oracle proposes the following additional special instruction so that the jury knows

whether and how to take willfulness into account in its profits analysis.

---

[1] As this Court is aware, the bracketed text in the model instruction denotes language that is
variable depending on the circumstances of the particular case.  The emphasized bracketed
language in Model Instruction 17.24 indicates that the deduction of fixed expenses may be proper
or improper depending upon the circumstances of the case—exactly Oracle's position.

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

1

**DEFENDANT'S PROFITS—WILLFULNESS**

2

I have instructed you that expenses are all production, operating and overhead costs incurred in producing Google's gross revenue from Android, and that Google has the burden of proving its expenses by a preponderance of the evidence.  In deciding whether or not to deduct operating or overhead expenses proven by Google in making the infringer's profits calculation, you may take into account whether or not Google is a willful infringer. If you find that Google is a willful infringer, you may choose not to deduct some or all of Google's operating or overhead expenses associated with Android.  The purpose of disallowing such deductions is to prevent willful infringers from using the benefits derived from another's copyrighted material to subsidize *other* operations of the company, and to ensure that a willful infringer does not benefit in any way from the infringement.

3

4

5

6

7

8

**ARGUMENT**

9

Oracle is entitled to a jury verdict on whether Google's infringement is willful for two

10

independent reasons.  Infringer's profits is a question for the jury.  Because infringer's profits

11

must go to the jury, so too does willfulness.  Willfulness is relevant to determining which, if any,

12

of the defendant's fixed expenses are "deductible expenses."  And, practical concerns militate in

13

favor of consideration of willfulness during a single-phase trial of liability and damages.  The

14

very same evidence will be heard for willfulness and fair use.

15

Apart from infringer's profits, Oracle's possible election of statutory damages provides an

16

independent reason why the question of willfulness must be submitted to the jury.  Google cannot

17

force Oracle to an election before entry of judgment.

18

I.      **ORACLE IS ENTITLED TO A JURY VERDICT ON INFRINGER'S PROFITS.**

19

Oracle is entitled to an award of "actual damages . . . and any profits of the infringer that

20

are attributable to the infringement[.]"  17 U.S.C. § 504(b).  Oracle's monetary remedies must be

21

determined by the jury both because the Copyright Act fairly provides for a jury trial on

22

infringer's profits, and because there is a constitutional right to a jury trial on infringer's profits

23

under the Seventh Amendment.  Google has never contended otherwise.  *See* Mot. at 1:6-10

24

("Google's profits attributable to the alleged infringement" is one of the "issues left for the jury").

25

A.      <u>**The Copyright Act Requires Submission Of Infringer's Profits To The Jury.**</u>

26

In *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998), the Court

27

considered whether the Copyright Act provides a jury trial for statutory damages awardable under

28

Section 504(c).  The Court concluded there was no statutory right to a jury trial for statutory

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

1    damages because Section 504(c) refers to the "court" as the actor providing that remedy.  *Id.* at

2    345-47.  In so deciding, the Court compared Section 504(c) with Section 504(b)—at issue here—

3    noting the significance of the absence of the words "the court" in 504(b): "In contrast, the

4    Copyright Act does not use the term 'court' in the subsection addressing awards of actual

5    damages and profits, see § 504(b), which generally are thought to constitute legal relief."  *Id.* at

6    346.  Because "[t]he word 'court' in this context appears to mean judge, not jury[,]" *id.*, it was

7    "not possible" to construe Section 504(c) to require a jury trial on statutory damages.  *Id.* at 345;

8    *but cf. id.* at 355 (instead finding a constitutional right to a jury trial for statutory damages).

9           Here, we have the opposite situation.  Because Congress did not use the word "court" in

10   Section 504(b), Congress intended the jury to decide the remedies in Section 504(b), not the

11   judge.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses

12   certain language in one part of the statute and different language in another, the court assumes

13   different meanings were intended.").  In fact, Section 504(b) is the only civil remedy provision in

14   the Copyright Act that does not use the word "court."  *See Feltner*, 523 U.S. at 346.  Reading the

15   remedial provisions of the Copyright Act as a whole, it is therefore apparent that Section 504(b)

16   presents questions for the jury.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120,

17   133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must

18   be read in their context and with a view to their place in the overall statutory scheme.").

19          Moreover, Section 504(b) explicitly requires that "profits of the infringer" be decided in

20   conjunction with "actual damages":

21          The copyright owner is entitled to recover the actual damages suffered by him or her
            as a result of the infringement, and any profits of the infringer that are attributable to
22          the infringement and are not taken into account in computing the actual damages.

23   Actual damages, such as "money damages[,] are, of course, the classic form of *legal* relief"

24   determined by the jury.  *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210

25   (2002).  That Section 504(b) explicitly requires that the damages and infringer's profits

26   calculations not result in duplication confirms the statutory right to a jury trial.

27          Indeed, it would not make sense to put a jury remedy and a court remedy in a set of

28   calculations that are interdependent.  Once a jury puts a number on actual damages, it may be

impossible for the court to later determine what aspects of infringer's profits were already taken into account in the jury's calculation.  The statute requires the same decisionmaker who calculates actual damages—the jury—to determine infringer's profits.[2]  In light of *Feltner*, the question of infringer's profits has been decided by juries in every regional circuit in the country.[3]

**B.      The Seventh Amendment Also Requires Submission Of Infringer's Profits To The Jury.**

The Seventh Amendment also requires that the jury determine infringer's profits.  The Seventh Amendment provides:  "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."  U.S. Const. amend. VII.  The jury right applies "not only to common-law causes of action, but also to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty."  *Feltner*, 523 U.S. at 348 (quotation marks omitted).  "To determine whether a statutory action is more analogous to cases tried in courts of law than to suits tried in courts of equity or admiralty, . . . [a court must] examine both the nature of the statutory action and the remedy sought."  *Id.*

As Oracle explained in its laches brief (ECF No. 1290), infringer's profits have a "protean character."  *Petrella v. MGM, Inc.*, 134 S. Ct. 1962, 1967 n.1 (2014).  "[R]ecovery of profits is not easily characterized as legal or equitable," because "it is an amalgamation of rights and

---

[2] The Copyright Act providing for a jury trial for infringer's profits is the best reading of the statute, but it does not even need to be.  To avoid a "constitutional question," a jury trial is provided for by statute if it is "fairly possible" to read the statute to permit a jury trial.  *Feltner*, 523 U.S. at 345.  Interpreting the Copyright Act to provide a jury trial right for infringer's profits easily satisfies that low bar.

[3] *See, e.g.*, *Balsley v. LFP, Inc.*, 691 F.3d 747, 771 (6th Cir. 2012); *William A. Graham Co. v. Haughey*, 646 F.3d 138, 141 (3d Cir. 2011); *Bonner v. Dawson*, 404 F.3d 290, 291 (4th Cir. 2005); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 703 (9th Cir. 2004); *Telecom Tech. Servs. Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir. 2004); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 565-69 (7th Cir. 2003); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 792 (8th Cir. 2003); *Montgomery v. Noga*, 168 F.3d 1282, 1293 (11th Cir. 1999); *Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d 96, 103 (D.C. Cir. 1998); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1170 (1st Cir. 1994), *abrogated by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010); *Harris Mkt. Research v. Marshall Mktg. & Commc'ns, Inc.*, 948 F.2d 1518, 1524 (10th Cir. 1991); *Gaste v. Kaiserman*, 863 F.2d 1061, 1069 (2d Cir. 1988); *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1375 (5th Cir. 1981).

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

1    remedies drawn from both systems."  *Id.*  For the reasons previously set forth, infringer's profits

2    must be considered both a legal and equitable remedy in this case.  ECF No. 1290 at 2-3.  But, in

3    all events, when addressing the question of whether a jury trial right exists, the Supreme Court

4    has made clear that it considers profits "legal relief."  *Feltner*, 523 U.S. at 346.

5        The Ninth Circuit gave the same answer to the question even before *Feltner* in *Sid &

6    Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1175 (9th Cir.

7    1977).  There, the court explained that while the infringer's profits remedy is "a creature of

8    equity," its equitable aspects are derived from "'a rule of administration and not of jurisdiction.'"

9    *Id.*  "The court of equity awarded compensatory damages incidental to an injunction to avoid

10   multiplicity of suits and not because the jury lacked competence."  *Id.*  In other words, "equity

11   courts had no jurisdiction over a claim for defendant's profits unless jurisdiction was

12   independently established[.]"  6 William F. Patry, Patry on Copyright § 22:149 (2015).  Thus,

13   "'[t]o continue the past practice is to convert an administrative rule into a jurisdictional one so as

14   to deprive the parties of a jury on what is basically a money claim for damages based on a charge

15   of . . . infringement.'"  *Sid & Marty*, 562 F.2d at 1175.  Accordingly, the Ninth Circuit concluded

16   there is "a right to a jury trial" for infringer's profits under the Seventh Amendment.  *Id*; *see also*

17   *Swofford v. B & W, Inc.*, 336 F.2d 406, 410-11 (5th Cir. 1964) (finding a constitutional right to a

18   jury for infringer's profits); Patry on Copyright § 22:149 (same).

19   **II.    WILLFUL INFRINGEMENT MUST BE DECIDED BY A JURY BECAUSE IT
            CAN AFFECT THE CALCULATION OF INFRINGER'S PROFITS.**
20

21       Section 504(b) provides that "[i]n establishing the infringer's profits, the copyright owner

22   is required to present proof only of the infringer's gross revenue, and the infringer is required to

23   prove his or her deductible expenses and the elements of profit attributable to factors other than

24   the copyrighted work."  The question is what qualifies as "deductible expenses" in any given

25   situation.  Section 504(b) itself does not offer a definition.  Under long-established common law,

26   a finding of willfulness can affect which expenses are "deductible."  And, because the jury

27   determines the amount of awardable profits, it must also determine whether or not infringement

28   was willful and consider that determination in calculating infringer's profits.

Here it is important to pause for a moment and note what Oracle's position is *not*. It is *not* Oracle's position here, contrary to Google's mischaracterization (Mot. at 3, 4), that *all* expense deductions of any kind are disallowed because of willfulness. It is *not* Oracle's position here, contrary to Google's misstatement (*id.* at 3-5), that all operating or overhead expense deductions *must* be disallowed because of willfulness. Rather, it is Oracle's position, as set out in its proposed jury instruction, *supra*, that the jury is entitled to consider *whether it should disallow deduction of some or all operating and overhead expenses* because Google is a willful infringer. This result is expressly contemplated by the Ninth Circuit Model Jury Instructions and supported by more than a century of case law and the legislative history of the 1976 Copyright Act. And, this rule has the salutary purpose of disincentivizing infringement, as noted by ***Google's in-house copyright expert*** William Patry:

> The lack of an adequate disincentive to infringe through mere disgorgement of profits is a more serious issue. For nonwillful infringers, no such disincentive is presumably required since the infringement was not motivated by a desire to reap where one hasn't sown. For willful infringers, though, some take a calculated risk that they will not be caught, but that if they are, the only penalty will be to pay back profits while still deducting the costs of the infringement: not much of a disincentive. Under such circumstances, denying deductions is scant warning to others that the penalty for not negotiating is not worth the price, but even if a warning is possible, to be effective, the penalty would have to be commonly, if not uniformly, applied. (Patry on Copyright §22:143)

As elaborated below, the common law history, the case law under the Copyright Act of 1909 Act, the legislative history of the Copyright Act of 1976, and case law decided since passage of the 1976 Act, all establish that where infringement is willful, the trier of fact may exclude certain fixed expenses as deductible expenses for the purposes of computing infringer's profits. Nothing about the absence of the word "willful" from Section 504(b) in 1976 altered this long course or congressional intent—indeed, the focus on the presence or absence of the word "willful" for these purposes is simply misguided. The key phrase is "deductible expenses," and it is clear from hundreds of years of legal history that what counts as "deductible" often depends on whether the defendant was a knowing bad actor.

**A.**      **Section 504(b) Of The Copyright Act Of 1976 Adopted The Rule Of *Sheldon*.**

   **1.**      ***Sheldon* Enshrined The Apportionment And Limited Deduction Rule.**

In 1940, the Supreme Court considered the case *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390 (1940) ("*Sheldon II*").  In the *Sheldon* case, the plaintiff owned the copyright in a play.  *Id.* at 397.  The defendant had seen the play and wished to obtain the rights to make it into a motion picture, but negotiations fell through.  *Id.*  Defendant proceeded, without authorization, to reproduce the structure and organization of the play in a successful movie.  *Id.*; *see also Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 50-53 (2d Cir. 1936).  Defendant's use of the structure and organization of the play was found to be infringing and not a fair use.  *Sheldon II*, 309 U.S. at 397-98; *see also Sheldon*, 81 F.2d at 53-56.  The defendants had "deliberately lifted the play[,]" their "borrowing was a deliberate plagiarism[,]" and an accounting of defendants' profits was ordered.  *Sheldon II*, 309 U.S. at 396-98.

The Supreme Court affirmed the Second Circuit's decision apportioning infringer's profits between infringing and non-infringing sources and denying the defendants a fixed expense deduction on the basis that defendants were willful infringers.  *Id.* at 409.  The Court emphasized the goal of "just compensation[,]" *id.* at 399, found that in determining statutory profits remedies it was appropriate to employ pre-existing principles developed in equity, *id.* at 401, and cited approvingly earlier Supreme Court precedent permitting the disallowance of certain fixed expenses—namely, income tax payments, *id.* at 405-06 (citing *L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co.*, 277 U.S. 97 (1928)).  The Court found "no ground for disturbing the . . . [Second Circuit's] conclusions" regarding "deductions allowed in the computation of the net profits[,]" which "involve questions of fact which have been determined below upon the evidence[.]" *Id.* at 409.  Thus, the Court did not refuse *all* deductions of expenses, but held that production costs were deductible even while overhead costs were not.  *Id.*

The underlying Second Circuit opinion in *Sheldon* afforded the trier of fact great latitude in determining whether infringers, who are found to be "conscious wrong-doer[s]," are permitted to deduct operating or overhead expenses such as income taxes paid.  *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939) (Hand, J.) ("*Sheldon I*") (citing *L.P. Larson*, 277

1   U.S. at 97).  Specifically, *Sheldon I* explained:

2       The plaintiffs' first objection is to the master's allowance as a credit of the income
        taxes paid by the defendants.  He allowed them because he thought that the
3       defendants were not deliberate plagiarists; otherwise the case would have fallen
        within the ruling of the Supreme Court in *L.P. Larson, Jr., Co. v. Wm. Wrigley,*
4       *Jr., Co.*, 277 U.S. 97, 48 S. Ct. 449, 72 L. Ed. 800; *Goodyear Tire & Rubber Co.*
        *v. Overman Cushion Tire Co.*, 6 Cir., 95 F.2d 978, 985. *See, also, Stromberg*
5       *Motor Devices Co. v. Detroit Trust Co.*, 7 Cir., 44 F.2d 958; *Stromberg Motor*
        *Devices Co. v. Zenith-Detroit Corp.*, 2 Cir., 73 F.2d 62.  From what we have
6       already said regarding the defendants' guilt, it appears that the master was wrong.
        It does indeed seem somewhat arbitrary to distinguish this from other expenses
7       necessary to the business; yet on the other hand the distinction illustrates that in
        dealing with a conscious wrong-doer, courts do not feel obliged for consistency's
8       sake to take one extreme or the other.

9   *Id.*  In so holding, the Second Circuit recognized there were no categorical rules regarding deduc-

10  tion of "expenses necessary to the business," instead emphasizing that the trier of fact determines,

11  case-by-case, the nature of the claimed deductions and whether the infringer was willful.  *Id.*

12      Other intellectual property cases, during and after that time period, are consistent with the

13  rulings in *Sheldon I* and *Sheldon II* limiting deductions for willful infringers.  In the copyright

14  case *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 106 (2d Cir. 1951), the Second

15  Circuit found that deduction of income tax in determining profits was inappropriate given

16  defendant's willful infringement.  *See also L.P. Larson*, 277 U.S. at 97 (trade dress infringement);

17  *Stromberg Motor Devices Co.*, 44 F.2d at 965-66 (patent); *Stromberg Motor Devices Co.*, 73 F.2d

18  at 65 (patent); *Goodyear Tire & Rubber Co.*, 95 F.2d at 985 (patent); *Carter Prods., Inc. v.*

19  *Colgate-Palmolive Co.*, 214 F. Supp. 383, 403-04, 406 (D. Md. 1963) (patent infringement and

20  misappropriate of trade secrets).

21      Then, following the Supreme Court's decision in 1962 confirming that juries are fully

22  equipped to determine the issues encompassed in an "accounting" of infringer's profits, *Dairy*

23  *Queen, Inc. v. Wood*, 369 U.S. 469, 478-79 (1962), the Ninth Circuit found that, in copyright

24  cases, it was appropriate for juries to determine the issues entailed in calculating infringer's

25  profits, *Sid & Marty*, 562 F.2d at 1174-75.

26          **2.      Congress Adopted *Sheldon* In The 1976 Act.**

27      The 1976 Act was not a sea change in the law.  Google's argument boils down to the

28  notion that Section 504(c) of the Copyright Act regarding statutory damages says "willfulness"

- 13 -

1   but Section 504(b) regarding actual damages and infringer's profits does not.  But that is no

2   different than the prevailing Copyright Act at the time of *Sheldon* and its progeny.  As

3   demonstrated below, Section 101(b) of the 1909 Act (as amended in 1912) provides for actual

4   damages, infringer's profits, and statutory minimum damages (called "in lieu" damages under the

5   1909 Act).  And just like the 1976 Act, only the statutory damages portion of the 1909 Act

6   expressly distinguishes between willful and non-willful infringement in the statute itself.

7   Specifically, in the 1909 Act, where the infringement was not willful—which is to say, if the

8   defendant was "not aware" of the infringement and the infringement was "not reasonably

9   foreseen"—the statutory damages were half the size.  The same is true under the 1976 Act:

10  Where the infringement was not willful, the statutory damages are half the size.

| 1909 Copyright Act codified at 17 U.S.C. § 101, as amended August 24, 1912 | 1976 Copyright Act 17 U.S.C. § 504 |
|---|---|
| That if any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable: . . . (b)  To pay to the copyright proprietor such **damages** as the copyright proprietor may have suffered due to the infringement, as well as all the **profits which the infringer shall have made from such infringement**, and in proving profits the plaintiff shall be required to prove sales only and the defendant shall be required to prove every element of cost which he claims, **or in lieu of actual damages and profits such damages as to the court shall appear to be just**, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated, but in the case of a newspaper reproduction of a copyrighted photograph such damages shall not exceed the sum of two hundred dollars nor be less than the sum of fifty dollars, and in the case of the infringement of an undramatized or nondramatic work by means of motion pictures, **where the infringer shall show that he was not aware that he was infringing, and that such infringement could not have been reasonably foreseen**, such damages shall | (b) Actual Damages and Profits.—  The copyright owner is entitled to recover the actual **damages** suffered by him or her as a result of the infringement, and any **profits of the infringer that are attributable to the infringement** and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. (c) **Statutory Damages.**— (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work. |

| | |
|---|---|
| not exceed the sum of one hundred dollars; and in the case of an infringement of a copyrighted dramatic or dramatico-musical work by a maker of motion pictures and his agencies for distribution thereof to exhibitors, **where such infringer shows that he was not aware that he was infringing a copyrighted work, and that such infringements could not reasonably have been foreseen**, the entire sum of such damages recoverable by the copyright proprietor from such infringing maker and his agencies for the distribution to exhibitors of such infringing motion picture shall not exceed the sum of five thousand dollars nor be less than two hundred and fifty dollars, and such damages shall in no other case exceed the sum of five thousand dollars nor be less than the sum of two hundred and fifty dollars, and shall not be regarded as a penalty. But the foregoing exceptions shall not deprive the copyright proprietor of any other remedy given him under this law, **nor shall the limitation as to the amount of recovery apply to infringements occurring after the actual notice to a defendant**, either by service of process in a suit or other written notice served upon him. . . ." | (2) **In a case where the** copyright owner sustains the burden of proving, and the court finds, that **infringement was committed willfully, the court in its discretion may increase the award of statutory damages** to a sum of not more than $150,000. . . ." |

Accordingly, it simply cannot be—as Google posits—that the presence of the term "willful" only in the provision of the 1976 Act regarding statutory damages means willfulness is irrelevant for actual damages and infringer's profits. Were it so, the *Sheldon* decisions never could have found that willfulness was relevant under the 1909 Act's provision governing infringer's profits since, like the 1976 Act, the 1909 Act only expressly contemplated willfulness with regard to statutory damages. That the *Sheldon* decisions (and others) found willfulness relevant to infringer's profits *a fortiori* means that Google's theory about the meaning of the 1976 Act cannot be true. The 1976 Act did nothing to disturb the venerable common law doctrine already established. *See In re Hanford Nuclear Reserv. Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008) ("Congress is presumed to 'legislate against a backdrop of common-law adjudicatory principles'" and thus "'courts may take it as given that Congress has legislated with an expectation that the [common law] principle will apply except when a statutory purpose to the contrary is evident.'"

1    (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991))).

2          When drafting the Copyright Act of 1976, Congress was aware of the existing case law,

3    and *Sheldon I* and *Sheldon II* in particular.  Study No. 22, an October 1956 report authorized by

4    Congress and prepared by the Copyright Office addressed "The Damage Provisions of

5    Copyright" and detailed the history of *Sheldon* through the district court, Second Circuit and

6    Supreme Court.  *See* William S. Strauss, *Study No 22: The Damage Provisions of the Copyright*

7    *Law* 5-7 (Oct. 1956).  Then, Study No. 23, a March 1958 report, also authorized by Congress and

8    prepared by the Copyright Office, addressed the actual operation of the proposed copyright

9    damages statute.  Ralph S. Brown, Jr., *Study No. 23: The Operation of the Damage Provisions of*

10   *the Copyright Law* (Mar. 1958).  That report recognized explicitly that in calculating infringer's

11   profits there may be "difficulties, not peculiar to this field, of allocating overheads or other joint

12   costs" and cited the Second Circuit's opinion in *Sheldon I.  Id.* at 72 & n.15.

13         The Copyright Office's July 1961 Copyright Revision Report again recognized the

14   common law history of limiting expense deductions and therefore recommended against

15   enumerating specific appropriate deductible costs, accepting the common law modes of handling

16   the issue:  "The courts have sometimes had difficulty in determining the elements that are

17   properly deductible as costs.  This seems essentially a problem of accounting inherent in the

18   situation and not peculiar to copyright cases.  We believe it would be impracticable to attempt any

19   statutory specification of deductible costs."  Register of Copyrights, *Report on the General*

20   *Revision of the U.S. Copyright Law* 102 (July 1961).  The Supreme Court has long recognized

21   that these Copyright Office reports are authoritative legislative history in the interpretation of the

22   1976 Act.  *See Mills Music, Inc. v. Snyder*, 469 U.S. 153, 159 (1985).

23         Thus, the drafters of Section 504(b) knew about, and were satisfied with, the common law

24   handling of expense deductions and with *Sheldon* in particular.  Google ignores this legislative

25   history, arguing facilely that Section 504(b) of the Copyright Act of 1976 does not use the word

26   "willful" in discussing deductible expenses.  The presence or absence of the word "willful" in the

27   statute is irrelevant to the determination of what constitutes "deductible expenses" because there

28   is no formula in the statute for determining deductible expenses.  Congress deliberately made a

1  decision to leave that concept flexible in the statute as it had been for many years.  In short, the

2  1976 Act did nothing to change the long legal tradition of how juries and judges consider what

3  expenses should be deducted in calculating infringer's profits; to the contrary, Congress explicitly

4  confirmed its intention to retain that flexibility with its adoption of *Sheldon*.

5  **B.     Courts Have Long Prevented Deliberate Wrongdoers From Deducting**
   **Certain Fixed Expenses In Calculating A Profits Remedy.**

6

7  *Sheldon I* and *II* were no aberration.  For hundreds of years of common law history, courts

8  have disallowed fixed expenses incurred by deliberate wrongdoers.  *Sheldon*, for example, relied

9  upon an even earlier Supreme Court decision (*L.P. Larson*), involving trade dress infringement.

10  *Sheldon I*, 106 F.2d at 53.  Justice Holmes' pronouncement in *L.P. Larson* likewise was not the

11  first time the Court addressed the subject.  In 1882, the Court explicitly addressed the concept of

12  prohibiting a wrongful actor, but not an innocent one, from recouping costs—noting that the

13  doctrine arose from even earlier English jurisprudence.

14  > [I]f a man furtively, and in bad faith, robs his neighbor of his property, and
   > because it is underground is probably for some little time not detected, the court

15  > of equity in this country will struggle, or I would rather say, will assert its
   > authority, to punish the fraud by fixing the person with the value of the whole of

16  > the property which he has so furtively taken, and making him no allowance in
   > respect of what he has so done, as would have been justly made to him if the

17  > parties had been working by agreement.  But when once we arrive at the fact that
   > an inadvertence has been the cause of the misfortune, then the simple course is to

18  > make every just allowance for outlay on the part of the person who has so
   > acquired the property . . . .

19

20  *E. E. Bolles Wooden-Ware Co. v. United States*, 106 U.S. 432, 434 (1882) (quoting *Livingston v.*

21  *Rawyards Coal Co.*, L. R. 5 App. Cas. 33 (1880)).  The Court recognized that while some courts

22  in the United States had adopted a milder rule, "[t]here seems to us to be no doubt that in the case

23  of a willful trespass the rule as stated above is the law of damages both in England and in this

24  country . . . ." *Id.* at 434-35.

25  What emerges is that factfinders can, if they choose, disallow fixed expense deductions.

26  The rationale is to deter the actions of willful trespassers.  In *Wooden-Ware*, the Court refused to

27  allow deduction of expenses claimed by defendant in bringing to market timber stolen from land

28  of the U.S. government.  The Court explained that "[t]o establish any other principle in such a

case as this would be very disastrous to the interest of the public" in that it "give[s]
encouragement and reward to the wrong-doer." *Wooden-Ware* was an action in "trover"—i.e. a
common-law *legal* cause of action to recover the value of personal property that has been
wrongfully disposed of by another. *See* John W. Salmond, *Observations on Trover and
Conversion*, 21 L. Q. Rev. 43, 51 (1905); *accord Walker v. Reister*, 102 U.S. 467, 469 (1880)
(trover is an action "at common law"). These principles in trover actions at law seeking to deter
wrongdoers came to be applied broadly. *E.g., Belton v. Briggs*, 4 S.C. Eq. (4 Des. Eq.) 465, 472-
74 (1814) (refusing wrongful property occupier a deduction for clearing the land, although it was
"troublesome and costly," because occupier's act was "an unwarranted act of doubtful benefit" to
the property owner and the claimant "knew that the title to the land was in dispute"); *Martin v.
Evans*, 20 S.C. Eq. (1 Strob Eq.) 350, 355 (1847) ("advantage" of being a "bona fide possessor—
'one who supposes himself to be the rightful proprietor'—is . . . that Chancery will permit him to
set off the value of any lasting, permanent improvements against the account for rents and
profits" (quoting *Dellet v. Whitner*, 15 S.C. Eq. (Chev. Eq.) 213, 229 (1840))).

The *Wooden-Ware* rationale of limiting expense deductions by willful wrongdoers was
repeatedly reaffirmed by the Court in both legal and equitable actions. *See, e.g.*, *Rubber Co. v.
Goodyear*, 76 U.S. 788 (1869) ("'Profit' is the gain made upon any business or investment, when
both the receipts and payments are taken into account. The rule is founded in reason and justice.
It compensates one party and punishes the other . . . . The controlling consideration is, that he
shall not profit by his wrong. A more favorable rule would offer a premium to dishonesty, and
invite to aggression. The jurisdiction of equity is adequate to give the proper remedy . . . and the
severity of the decree may be increased or mitigated according to the complexion of the conduct
of the offender."); *Pine River Logging & Imp. Co. v. United States*, 186 U.S. 279, 292-95 (1902)
("We regard the rule laid down in the *Woodenware Case*, that an intentional trespasser, or a
purchaser from him, shall have no credit for the labor he may have expended upon the property at
the time of its conversion, as an eminently proper and wholesome one."); *Guffey v. Smith*, 237
U.S. 101, 109, 118-19 (1915) (deductions disallowed in an accounting of defendant's actions
"cannot be regarded as anything less than a wilful [sic] taking and appropriation"); *Pittsburgh &*

1   *W. Va. Gas Co. v. Pentress Gas Co.*, 100 S.E. 296, 297-98, 300 (W. Va. 1919) (holding

2   defendants, who were deemed to be willful trespassers on the land, were not entitled to any credit

3   for money expended by them in producing or marketing the oil which they sold from the lands).

4   Against this backdrop, Justice Holmes made his pronouncement on behalf of the Court in

5   *L.P. Larson.*  The Court prohibited the deduction of federal income and excess profit taxes in

6   computing a willful trade dress infringer's profits noting "in a case of what has been found to

7   have been one of conscious and deliberate wrongdoing, we think it just that the further deduction

8   should not be allowed."  *L.P. Larson*, 277 U.S. at 100.  Justice Holmes explained:  "It would be

9   unjust to charge an infringer with the gross amount of his sales without allowing him for the

10  materials and labor that were necessary to produce the things sold, but it does not follow that he

11  should be allowed what he paid for the chance to do what he knew that he had no right to do."  *Id.*

12  In other words, where infringement is willful, the trier of fact is entitled to disallow fixed

13  expenses in order to deter willful infringement and to prevent a willful infringer from using its

14  infringement to subsidize the costs of its business as a whole.

15  *Sheldon* followed *L.P. Larson*, and in doing so confirmed hundreds of years of common

16  law legal history.  Congress adopted that history in the 1976 Act when it adopted *Sheldon*.

17  Numerous courts interpreting Section 504(b) have since confirmed the rule.

18      **C.      Section 504(b) Has Been Repeatedly Interpreted To Permit The Limitation Of**
           **"Deductible" Expenses.**
19

20  The case law under Section 504(b) has continued this longstanding tradition of deterring

21  conscious wrongdoers by limiting their expense deductions.  Google too quickly and cursorily

22  dismisses clear Ninth Circuit and other authority recognizing this longstanding doctrine.  The jury

23  should be asked whether Google is a willful infringer, and if it finds that Google is a willful

24  infringer, should be instructed that it may take that into account in considering whether to allow

25  the deduction of operating or overhead costs.

26  First, most recently, in *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000), in

27  assessing infringer's profits under Section 504(b), the Ninth Circuit relied on *L.P. Larson*—the

28  case that succinctly stated the deterrence rationale of the doctrine at issue—finding that "[t]he

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

1   Supreme Court held that willful infringers could not deduct income taxes, but it left open the

2   possibility that non-willful infringers could deduct their income taxes from the infringing profits."

3   *Id.* at 487.  The Ninth Circuit was explicitly *following* this clear and long-standing Supreme Court

4   precedent and accepted the principle that willful infringers could be precluded from deducting

5   income tax.  The only question in dispute in *Three Boys* was how much latitude to give non-

6   willful infringers with regard to deducting such taxes, when the result might operate as something

7   of a windfall to the defendant.  The Ninth Circuit found that "[w]e uphold the district court's

8   decision to allow non-willful infringers to deduct income taxes."  *Id.* at 488.  There can be no

9   doubt that the Ninth Circuit found that the determination of willfulness or the lack thereof was

10  relevant to calculating infringer's profits.

11       Second, in *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505 (9th Cir. 1985), decided under

12  the 1909 Act, the Ninth Circuit observed that "[a] portion of an infringer's overhead properly may

13  be deducted from gross revenues to arrive at profits, at least where the infringement was not

14  willful, conscious, or deliberate."  *Id.* at 515 (citing *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752

15  F.2d 1326, 1331 (9th Cir. 1984)).  *Kamar* recognized the rule of *Sheldon* and noted that it does

16  "not disallow all overhead; it also does not necessarily apply to less than 'deliberate plagiarism.'"

17  752 F.2d at 1331; *see also Folkens v. Wyland*, No. C-01-1241 EDL, 2002 WL 1677708, at *7

18  (N.D. Cal. July 22, 2002) (following *Frank, Sheldon* and *Kamar*, finding the question of

19  willfulness relevant to deduction of income tax).  All of this authority supports Oracle's position

20  that fixed expense deductions may be disallowed by the trier of fact when an infringer is willful.

21  The comments to the Ninth Circuit's Model Jury Instructions confirm this approach.  *See* 9th Cir.

22  Manual of Model Jury Instructions (Civil), Cmt. to Instr. 17.27 ("[A] finding of willfulness can

23  also be made in connection with an assessment of defendant's profits, even though reference to

24  willful infringement is made only in connection with statutory damages.").

25       "When infringement is found to be willful, the district court should give extra scrutiny to

26  the categories of overhead expenses claimed by the infringer to insure that each category is

27  directly and validly connected to the sale and production of the infringing product.  Unless a

28  strong nexus is established, the court should not permit a deduction for the overhead category."

1   *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 107 (2d Cir. 1999); *see also Saxon v. Blann*, 968 F.2d 676,

2   681 (8th Cir. 1992) ("[o]verhead may not be deducted from gross revenues to arrive at profits

3   when an infringement was deliberate or willful"); *Liu v. Price Waterhouse LLP*, No. 97 CV 3093,

4   2000 WL 1644585, at *6 (N.D. Ill. Oct. 30, 2000) (jury instruction prohibited "any deductions for

5   overhead" if infringement was willful); *Plain Jane, Inc. v. Lechters, Inc.*, No. CIV.A. 95-2724,

6   1995 WL 608483, at *6, *8 (E.D. La. Oct. 17, 1995) (jury's finding that infringement was willful

7   would entitle it to refuse to "deduct any of defendants' indirect expenses[,]" (i.e., "income taxes

8   and overhead costs"); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294-95 (D.N.J. 1993) ("it is a

9   question of fact whether these defendants did in fact act willfully[;]" "if a defendant's conduct is

10  willful, overhead may not be deducted"); *Allen-Myland, Inc. v. IBM Corp.*, 770 F. Supp. 1014,

11  1025 n.19 (E.D. Pa. 1991) (recognizing courts had "held that an infringer may not deduct that

12  portion of its overhead expenses that are specifically linked to the infringing activity where the

13  infringement was willful"); *Mfrs. Techs., Inc. v. Cams, Inc.*, 728 F. Supp. 75, 84 (D. Conn. 1989)

14  (defendant's "taxes" and "overhead or 'allocated expenses'" not deductible because infringement

15  was willful); *Harper House, Inc. v. Thomas Nelson, Inc.*, No. CV 85-4225-PAR, 1987 WL

16  30581, at *8-9 (C.D. Cal. Aug. 28, 1987), *rev'd on other grounds*, 889 F.2d 197 (9th Cir. 1989)

17  (not plain error to instruct jury "to ignore overhead deductions upon a finding of willfulness");

18  5 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 14.03[C][2]-[3] (2015).

19      The two district court opinions upon which Google relies, *ZZ Top v. Chrysler Corp.*, 70 F.

20  Supp. 2d 1167 (W.D. Wash. 1999) and *Oracle International Corp. v. SAP AG*, No. C 07-1658

21  PJH, 2012 WL 11883865 (N.D. Cal. May 29, 2012), do not change that.  Neither of those cases

22  stands up to *Sheldon*, the Ninth Circuit authorities, and the weight of the long legal history.  As

23  discussed at length above, longstanding decisional authority demonstrates that willfulness is

24  relevant in determining what fixed expenses are deductible.  And though *Sheldon I* and *Sheldon II*

25  were decided under the 1909 Act, the relevant language in the 1909 Act and the 1976 Act is all-

26  but identical for present interpretive purposes.

27      Without doctrinal support, Google engages in sleight-of-hand with its argument that

28  willfulness is only mentioned in one place so it cannot be taken into account in any other.  The

1    phrase "deductible expenses" is not so unambiguous and explicit that it defies any resort to

2    legislative history for interpretation.  *See Concrete Pipe & Prods. v. Constr. Laborers Pension*

3    *Trust*, 508 U.S. 602, 627 (1993) ("[W]e turn, as we would in the usual case of textual ambiguity,

4    to the legislative purpose as revealed by the history of the statute.").  Rather, it is exactly the kind

5    of verbal chameleon where legislative history is appropriate.  *See id.*  And that history is clear:

6    Congress intended to adopt the rule of *Sheldon*—providing for apportionment and limiting

7    deductions for willful infringers.  Judge Hamilton was not presented with this legislative history

8    in the cursory *in limine* briefing and opinion in the *SAP* case.  2012 WL 11883865.  Nor did

9    Judge Hamilton have the opportunity to consider the lengthy common law history behind the rule

10   limiting deductions by conscious wrongdoers.  Indeed, the opinion did not even consider the

11   Ninth Circuit's *Three Boys Music* opinion, which recognized the Supreme Court's articulation of

12   the rule in *L.P. Larson*.

13        Further, in *SAP* the issue was mistakenly framed as an all-or-nothing rule that willful

14   infringers are automatically precluded from deducting all expenses of every kind, and Judge

15   Hamilton correctly found that there was not such a rule.  *See SAP*, 4:07-cv-01658-PJH, Pl.'s

16   Mots. *in Limine*, ECF No. 1145, at 15-16; Defs.' Opp'ns to Mots. *in Limine*, ECF No. 1156, at

17   15.  Neither party discussed at any length the rule of *Sheldon*, or *L.P. Larson*, the legislative

18   history, or the long common law history of the principle at issue, under which the trier of fact has

19   *discretion* (but is not required) to deny fixed cost deductions to a willful infringer.  Similarly, in

20   *ZZ Top*, the court did not consider any of the history set forth above, and the decision was prior to

21   the Ninth Circuit's *Three Boys Music* opinion.  That court also framed the question as whether

22   there was an *automatic* disallowance of all overhead deductions.  *ZZ Top*, 70 F. Supp. 2d at 1168-

23   69.  Again, that is not Oracle's position here.  *Supra* at 11.  Indeed, *ZZ Top* recognized that "the

24   *Frank Music* opinion leaves open the possibility that overhead deductions *may be* precluded

25   where the infringement is intentional."  *Id.* at 1169 (emphasis added).

26        The jury in this case is entitled to consider whether to disallow some or all fixed expense

27   deductions.

28

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

### III.   PRACTICAL CONSIDERATIONS LIKEWISE DICTATE THAT THE JURY RENDER A VERDICT ON WILLFULNESS.

Google suggests that willfulness can be tried "in a separate phase in front of the same jury, after liability and actual damages and disgorgement of profits have been decided[.]"  Mot. at 7. But that makes no sense, even apart from the expense deduction issue discussed above.  There is a complete overlap in the evidence that will be presented on willfulness and the "bad faith" element of fair use.  The bad faith character of Google's use counts against Google in the fair use analysis. "Fair use presupposes good faith and fair dealing."  *Harper & Row Publ'rs v. Nation Enters.*, 471 U.S. 539, 562 (1985) (quotation marks omitted).  Accordingly, "the propriety of the defendant's conduct is relevant to the character of the use at least to the extent that it may knowingly have exploited a purloined work for free that could have been obtained for a fee."  *Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) (quotation marks omitted); *see also* 9th Cir. Manual of Model Jury Instructions (Civil), Cmt. to Instr. 17.18.  Similarly, "[t]o prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."  *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (quotation marks omitted).

This Court has already acknowledged this overlap in evidence during the previous copyright infringement trial, suggesting that the parties include the issue of willfulness on the copyright liability jury verdict form in the prior Phase 1.  Tr. 1367:10-1368:2 ("[T]he jury is hearing all these documents about we need a license and so forth, [and] it does go to willfulness").  Indeed, the evidence of bad faith and willfulness will be exactly the same: all the internal emails and documents showing that Google knew it needed a license, but decided to copy the code anyway.  Google has repeatedly said that it does not intend to rely upon any later-acquired opinion of counsel.  *See, e.g.*, Tr. 1367:10-1368:2.  Because the same evidence that proves willfulness will be offered by Oracle in opposition to Google's claim of fair use and Oracle will explicitly argue to the jury that Google acted in "bad faith," trying the issues simultaneously presents no "risk of prejudice to Google[.]"  Mot. at 7.  Rather, it would be

1    inefficient and burdensome to the jury to hear all of this evidence once in the context of fair use

2    and then again in the context of a separate willfulness proceeding.

3        Moreover, as Oracle explained in the Joint Supplemental Submission, willfulness bears on

4    numerous other matters at issue in this case, including Oracle's request for a permanent

5    injunction, attorneys' fees, and as a dispositive answer to Google's laches defense.  *See* ECF No.

6    1276 at 1-2 (collecting authorities).  Though it is for the Court to decide each of those issues, a

7    jury's finding of willfulness will be of substantial assistance to the Court.

8    **IV.    ORACLE CANNOT BE COMPELLED TO AN EARLIER ELECTION OF
         REMEDIES.**

9

10       Finally, the Court asked the parties to address, in their willfulness briefs, "whether the

11   Court, in the exercise of its case management authority, can set a deadline for Oracle to elect

12   statutory vs. actual damages."  ECF No. 1277 at 1.  The Court cannot.  The exercise of the

13   inherent power of federal district courts can be limited by statute and rule because such courts

14   were created by Congress.  *Ex parte Robinson*, 86 U.S. 505, 510-11 (1873) ("[T]hese courts were

15   created by act of Congress.  Their powers and duties depend upon the act calling them into

16   existence, or subsequent acts extending or limiting their jurisdiction."); *Chambers v. NASCO,*

17   *Inc.*, 501 U.S. 32, 47 (1991) ("It is true that the exercise of the inherent power of lower federal

18   courts can be limited by statute and rule, for 'these courts were created by act of Congress.'").

19       Section 504(c) clearly provides that a copyright owner may elect to recover statutory

20   damages "at any time before final judgment is rendered."  The courts have interpreted this

21   language broadly, relying on it to find that a copyright owner may elect to recover statutory

22   damages: (1) "even after a jury has returned a verdict on liability and an award of actual

23   damages," *Feltner*, 523 U.S. at 347 n.5; (2) even after final judgement, appeal, and remand, *L.A.*

24   *News Serv. v. Reuters Telvision Int'l, Ltd.*, 149 F.3d 987, 995 n.8, *Cotter v. Christus Gardens,*

25   *Inc.*, 238 F.3d 420, 2000 WL 1871698, at *4-9 (6th Cir. 2000); and (3) regardless of whether the

26   plaintiff has used the copyrighted work illegally, *Dream Games of Ariz., Inc. v. PC Onsite*, 561

27   F.3d 983, 990-92 (9th Cir. 2009).

28       At least one court has refused an attempt to force an earlier election based on the clear

1    statutory language of Section 504(c) in a context very similar to that here.  In *Overton v. Health*

2    *Communications, Inc.*, No. 10-cv-701-wmc, 2012 U.S. Dist. LEXIS 31871 (W.D. Wis. Mar. 9,

3    2012), the defendant sought to force the plaintiff to elect between statutory and actual damages,

4    while the plaintiff claimed that he had a right to have the jury render alternative verdicts on the

5    two remedies.  The court decided in favor of the plaintiff, reasoning:

6        [T]he plain language of 17 U.S.C. § 504(c)(1) unambiguously allows a plaintiff to
         elect statutory or actual damages "at any time before final judgment is rendered."
7        Moreover, the U.S. Supreme Court held definitively in *Feltner v. Columbia
         Pictures Television, Inc.*, 523 U.S. 340, 118 S. Ct. 1279, 140 L. Ed. 2d 438
8        (1998), that the Seventh Amendment provides the right to jury trial on all issues
         pertinent to an award of statutory damages in a copyright infringement action.  *Id.*
9        at 347-48.  Requiring [the plaintiff] to elect before trial, or even just before jury
         deliberations, among the two forms of damage would arguably frustrate the
10       statute, or the Supreme Court directive, or both.

11   *Id.* at *2-3 (footnote omitted).  Thus, the plain language of the statute and relevant case law

12   indicate that the Court may not force Oracle to elect its remedy at any time prior to final judgment

13   in this matter.  *Cf. Kiva Kitchen & Bath, Inc. v. Capital Distrib. Inc.*, 319 Fed. App'x 316, 320

14   (5th Cir. 2009) (preserving plaintiff's right to election of remedies by requiring the jury to render

15   alternative verdicts); *Cotter*, 2000 WL 1871698 (same); *Bridgeport Music, Inc. v. UMG

16   *Recordings, Inc.*, 585 F.3d 267, 273 (6th Cir. 2009) (district court required alternative verdicts).

17          Google does not challenge the clear meaning of Section 504(c) or address this relevant

18   case law.  Instead, Google states simply that "Google is unaware of any case directly addressing

19   this issue."  Mot. at 7.  Google then argues that, while the Court may not be able to set a deadline

20   for Oracle to elect statutory damages, the Court can order that willfulness be tried "in a separate

21   phase in front of the same jury, after liability and actual damages and disgorgement of profits

22   have been decided—and only if Oracle, at that time, elects to receive an award of statutory

23   damages . . . ."  *Id.*  Google's proposal is impractical and inefficient, because—as set out above—

24   the relevant evidence will have to be heard during the liability phase in any event.

25                                        **CONCLUSION**

26          For the reasons articulated above, the question whether or not Google willfully infringed

27   Oracle's copyrighted works should be determined by the jury in a single-phase trial and the jury

28   should be entitled to take account of that willful infringement in its damages analysis.

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA

1

2     Dated: August 20, 2015                    KAREN G. JOHNSON-MCKEWAN
                                                ANNETTE L. HURST
3                                               GABRIEL M. RAMSEY
                                                PETER A. BICKS
4                                               LISA T. SIMPSON
                                                Orrick, Herrington & Sutcliffe LLP
5

6                                               By: */s/ Annette L. Hurst*
                                                     ANNETTE L. HURST
7
                                                Attorneys for Plaintiff
8                                               ORACLE AMERICA, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION RE SUBMISSION OF
WILLFULNESS TO JURY
CV 10-03561 WHA