KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE AMERICA, INC.,

Plaintiffs,

v.

GOOGLE INC.,

Defendant.

Case No. CV 10-03561 WHA

**GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO PRECLUDE SUBMISSION OF THE ISSUE OF WILLFULNESS TO THE JURY ABSENT AN ELECTION OF STATUTORY DAMAGES**

Date: September 17, 2015
Time: 8:00 a.m.
Dept. Courtroom 8, 19th Floor
Judge: Hon. William Alsup

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. DISCUSSION ........................................ 4

A. Under the Copyright Act, willfulness is not relevant to an award of actual damages or disgorgement of profits under 17 U.S.C. § 504(b). ........................................ 4

B. Whether a category of expense is "deductible" within the meaning of Section 504(b) is a question of law for the Court to decide, not the jury. ........................................ 6

C. The Supreme Court's ruling in *Sheldon* does not support Oracle's position. ........................................ 7

D. The vestigial common law doctrines cited by Oracle are inapplicable and do not trump the plain language of the Copyright Act. ........................................ 9

E. Oracle's proposed verdict question and instruction on willfulness is unworkable in practice and unduly prejudicial to Google. ........................................ 10

F. If Oracle insists on pretending that it may elect statutory damages, the Court may hold a separate trial on that claim *after* Oracle makes such an election. ........................................ 12

G. The question of whether disgorgement of profits must be tried to a jury is not properly before the Court in this Motion. ........................................ 13

IV. CONCLUSION ........................................ 14

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Ciena Corp. v. Corvis Corp.*
210 F.R.D. 519 (D. Del. 2002) .......... 13

*Feltner v. Columbia Pictures T.V., Inc.;*
523 U.S. 340, 342 (1998).......... 14

*Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*
752 F.2d 1326 (9th Cir. 1984) .......... 7, 11

*L.P. Larson, Jr. Co. v. Wm. Wrigley, Jr., Co.*
277 U.S. 97 (1928).......... 9, 10

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*
40 F.3d 1007 (9th Cir. 1994) .......... 12

*Oracle Int'l Corp. v. SAP AG*
No. C 07-1658 PJH, 2012 WL 11883865 (N.D. Cal. May 29, 2012) .......... *passim*

*Petrella v. Metro-Goldwyn-Mayer, Inc.*
134 S. Ct. 1962 (2014).......... 14

*Schlothan v. Territory of Alaska*
276 F.2d 806 (9th Cir. 1960) .......... 7

*Sheldon v. Metro-Goldwyn Pictures Corp.*
106 F.2d 45 (2d Cir. 1939) ("*Sheldon I*") .......... 2, 9, 10

*Sheldon v. Metro-Goldwyn Pictures Corp.*
309 U.S. 390 (1940) ("*Sheldon II*").......... 2, 7, 8, 10

*Three Boys Music Corp. v. Bolton*
212 F.3d 477 (9th Cir. 2000) .......... 7, 9

*ZZ Top v. Chrysler Corp.*
70 F. Supp. 2d 1167 (W.D. Wash. 1999).......... 5, 6

**Federal Statutes**

17 U.S.C. § 101 *as amended* on August 24, 1912 .......... 8

17 U.S.C. § 504.......... *passim*

**Other Authorities**

Ann. Manual for Complex Litigation § 33.27 (Fourth).......... 13

Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rev. 705, 751 (2000) .......... 13

**I. INTRODUCTION**

Oracle has previously litigated—and lost—its groundless claim that a willful infringer is not entitled to deduct its expenses from its revenues under section 504(b) of the Copyright Act. As Chief Judge Hamilton held, willfulness is not relevant to actual damages or an award of profits under 17 U.S.C. § 504(b) because "Section 504(b) makes no distinction between willful and innocent infringers." *Oracle Int'l Corp. v. SAP AG*, No. C 07-1658 PJH, 2012 WL 11883865, at *2 (N.D. Cal. May 29, 2012). Oracle tries to revive that argument here by claiming that Chief Judge Hamilton got it wrong because she was "not presented" with the right historical argument and "the issue was mistakenly framed as an all-or-nothing rule that willful infringers are automatically precluded from deducting all expenses of every kind." Oracle's Opposition to Motion to Preclude Submission of the Issue of Willfulness to the Jury, ECF No. 1299 ("Opp.") at 22. Oracle now abandons its more aggressive claim of an "all-or-nothing" rule against deduction of overhead costs, adopting the fallback position that the jury "has *discretion* (but is not required) to deny fixed costs deductions to a willful infringer." *Id.* (emphasis in original). Oracle is still wrong. Its new argument is equally ungrounded in the language of the Copyright Act or case law. No matter whether it reframes the issue as a mandatory or discretionary rule, there is no reason to include a willfulness question on the verdict form, unless and until Oracle elects an award of statutory damages under 17 U.S.C. § 504(c).

Oracle concedes that nothing in the text of the Copyright Act allows for consideration of willfulness in connection with actual damages or disgorgement. Opp. at 13-14. But Oracle argues that the term "deductible expenses" in Section 504(b) is a "verbal chameleon," *id.* at 22:5, whose definition may change depending on whether the jury finds willful infringement, even though the statute never mentions willfulness. Despite purporting to rely on "more than a century of case law" (*id.* at 11), however, ***Oracle fails to cite a single case*** in which a jury was instructed that it has discretion to interpret the term "deductible expenses" by allowing or disallowing deduction of certain costs depending on whether the infringement was "willful." What constitutes a deductible expense under 17 U.S.C. § 504(b) is a question of law for the court, not the jury, to decide. *SAP*, 2012 WL 11883865 at *2.

In its search for any relevant authority, Oracle repeatedly mischaracterizes the Supreme Court's ruling in *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390 (1940) ("*Sheldon II*"), which expressly declined to reach the issue of whether a willful infringer may deduct expenses. Indeed, to the extent *Sheldon II* addressed willfulness at all, it held that willfulness does ***not*** affect the recovery of disgorged profits. *Id.* at 405-06. Oracle's Opposition conflates the Supreme Court's opinion with the Second Circuit's opinion in *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45 (2d Cir. 1939) ("*Sheldon I*"), but *Sheldon I* deals only with the limited question of whether willful infringers may deduct income taxes—not expenses—from gross revenues. Google has never claimed a deduction for income taxes in its expert reports in this case, so *Sheldon I* and the other out-of-circuit authorities cited by Oracle are irrelevant.

Oracle's proposed rule—that a jury has discretion to disallow a deduction of overhead expenses upon a finding of willfulness—is not only wrong on the law, but unworkable in practice. Oracle offers no explanation for whether or how a jury should be guided in its exercise of that discretion, and there is none. Providing the jury with such unbounded discretion based on willfulness invites error by encouraging the jury to impose the sort of improper penalty that the Copyright Act and Supreme Court case law forbids.

The Court has the case management authority to order that any willfulness question associated with such a statutory damages claim be tried in a separate phase, if necessary, after liability, actual damages, and disgorgement of profits have been resolved. This approach minimizes the risk of prejudice and confusion, and will not result in any inefficiency. As Oracle itself suggests, much of the evidence relating to intent overlaps with fair use so the jury would have already heard and considered the evidence when and if it needs to consider a statutory damages claim. Furthermore, a willfulness phase is unlikely to be necessary because Oracle almost certainly will not elect to recover statutory damages after the jury has resolved the liability, actual damages, and disgorgement of profits issues.

## II. BACKGROUND

Oracle devotes several pages of its brief to arguing facts it contends support willfulness. Opp. at 3-5. But those alleged facts have no bearing on the legal question of whether a

willfulness question belongs on the verdict form, which it does not. Moreover, Oracle's argument mischaracterizes the undisputed evidence from the first trial.

It is undisputed that the pre-lawsuit discussions between Google and Sun did not address the structure, sequence, and organization ("SSO") of the Java API packages or the use of the "declaring code." *See* ECF No. 1202 (Order re Copyrightability of Java API) at 5-6. Rather, the discussions addressed one of two proposed plans: (1) the possibility of Google taking a license from Sun to adapt to a smartphone the entire Java platform, including all of the implementing code and the "Java" brand, or (2) the possibility of Google and Sun joining in a co-development partnership deal under which Java technology would become part of the Android platform. *Id.* The parties never once discussed Google licensing the API packages' SSO or the related "declaring code."

Oracle's references to documents regarding Google's alleged need for a license, Opp. at 3-4, relate to the two potential plans noted above, neither of which ever came to fruition. Instead, Google spent years building Android from the ground up, using only the portions of the APIs that Google—and others in the industry, including Sun itself—believed were not protected by copyright and could be freely and fairly used. *See, e.g.*, ECF No. 1064, Transcript of Proceedings ("TR") (Schwartz) at 2004:9-14 ("[T]he Open Source Community was free to create products, just as Oracle and IBM had created Linux. You know, Google and others would go off and create, you know, different handsets. They were independent implementations that may have used portions of our ideas, but so long as they didn't use our code proper, they did nothing wrong."); *see also id.* at 1991:20-1992:1 (Schwartz) ("Q: Now following the announcement and the posting of your blog, did you continue to make supportive comments in the market about Android?" A. Yes, because there would be no point in standing up and saying, you know 'They are doing something wrong.' ***We didn't think they were doing anything wrong***. We didn't like it, but we weren't going to stop it by complaining about it.") (emphasis added)).

Furthermore, Oracle's suggestion that the evidence shows that Google "engag[ed] in a deliberate policy to conceal its infringement" Opp. at 4, bears no relationship to the facts in the case. Indeed, for years, Sun knew that Google intended to invest a significant amount of

resources into building a mobile platform supporting the Java language and APIs. *See* TX 617 (Sept. 19, 2005 email from Andy Rubin at Google to Leo Cizek at Sun stating, "If Sun doesn't want to partner with us to support this initiative, we are fine releasing our work and not calling it Java."). Sun's then-CEO Jonathan Schwartz testified that he and "everyone in the industry," knew that Android would support use of the Java programming language and that Android would use the names and organization of the Java API packages. ECF No. 1064, TR (Schwartz) at 1989:2-7.

Sun and Oracle not only knew about Android, they openly praised it. In November 2007, Google publicly released the Android Software Development Kit ("SDK") as an open-source platform, prompting Sun's CEO to proclaim that Google had "just strapped another set of rockets to the [Java] community's momentum." TX 2352. After Oracle announced its acquisition of Sun, Oracle's then-CEO Larry Ellison praised Google at the largest Java developer conference in the world, stating that Oracle was "flattered by Android" and expected to "see lots of Java devices" "from our friends at Google." TX 2939. And of course, this Court agreed with Google in the first trial that the elements of the Java API packages used by Google were not copyrightable—underscoring the fact that there is no willful infringement here. ECF No. 1202.

In view of the foregoing, there should be no reasonable dispute that, even if willfulness were somehow relevant to an issue in this case—and it is not—Google's alleged infringement could not be willful as a matter of law.

## III. DISCUSSION

### A. Under the Copyright Act, willfulness is not relevant to an award of actual damages or disgorgement of profits under 17 U.S.C. § 504(b).

The Copyright Act authorizes two mutually exclusive forms of monetary recovery for copyright infringement. 17 U.S.C. § 504(a). A copyright owner is entitled to ***<u>either</u>***: (i) an award of "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages," under Section 504(b); ***<u>or</u>***, at the copyright owner's election, (ii) "an award of statutory damages for all infringements involved in the action, with respect to any one work, . . .

in a sum of not less than $750 or more than $30,000 as the court considers just," under Section 504(c). Only the statutory-damages provision, Section 504(c), grants discretion to adjust the amount of damages that may be recovered based on a finding of willfulness. *Id.* § 504(c)(2). Section 504(b), by contrast, limits the copyright holder's recovery to his or her actual damages and any additional profits of the infringer attributable to the infringement—no more, no less.

The Copyright Act's choice-of-remedies scheme is clear and unambiguous. "The language of § 504(c) shows that where Congress intended to punish willful infringement by authorizing different remedies depending on the defendant's culpability, it clearly knew how to do so." *SAP*, 2012 WL 11883865 at *1-*2; *see also ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167, 1168 (W.D. Wash. 1999) ("If an infringer were not permitted to deduct all costs incurred in generating the gross revenues, including overhead costs, the copyright owner would be awarded more than just profits and the infringer would not only be deprived of whatever benefit it derived from the infringement, as was the apparent intent of Congress, but would also suffer affirmative punishment."). Accordingly, as Chief Judge Hamilton correctly held in *SAP*, a finding of willfulness does not, and cannot, affect the amount of actual damages or profits attributable to the alleged infringement under Section 504(b). *SAP*, 2012 WL 11883865 at *1-*2.

In view of Chief Judge Hamilton's opinion, Oracle seeks to re-frame its argument on the effect of willfulness. Oracle now argues that the jury "has *discretion* (but is not required) to deny fixed costs deductions to a willful infringer." Opp. at 22 (emphasis in original). This is a sharp departure from the position Oracle took during the original trial in this case, when it argued, unequivocally, that that the jury should be instructed "not to deduct Google's overhead if it finds that the infringement was willful." *See, e.g.*, ECF No. 538 at 94 (Oracle Memorandum of Law ISO Disputed Jury Instructions). Indeed, as Oracle now concedes, that argument was wrong. Opp. at 22 (stating that "Judge Hamilton correctly found that there was not such a rule" that

"willful infringers are automatically precluded from deducting all expenses of every kind.").[1]

Oracle's revised argument fails for the same reasons its original argument failed: it has no support in the Copyright Act, and the only courts within this Circuit to squarely address it have rejected Oracle's position. Having conceded that Chief Judge Hamilton's rejection of an absolute bar on deductions is correct, Oracle attempts to undermine the basis for her conclusion that Section 504(b) does not distinguish between willful and non-willful infringers by arguing that Chief Judge Hamilton did not consider the relevant authorities. Opp. at 22. But the same counsel that represented Oracle in the *SAP* case represents Oracle in this case, and as Google explained in its Motion,[2] Chief Judge Hamilton considered and rejected the very same Ninth Circuit Model Jury Instructions, comments, and case law authorities on which Oracle relies in support of its "new" position. *SAP*, 2012 WL 11883865 at *2.

Chief Judge Hamilton did not consider the purported "rule" that Oracle asserts here—*i.e.*, that a jury "has *discretion* (but is not required) to deny fixed cost deductions to a willful infringer," Opp. at 22 (emphasis in original)—because no such rule exists. In fact, Oracle ***fails to cite a single case*** in which a jury was instructed that it has discretion to decide whether to allow or disallow the deduction of certain costs depending on whether the infringement was "willful."

**B. Whether a category of expense is "deductible" within the meaning of Section 504(b) is a question of law for the Court to decide, not the jury.**

In constructing its new argument that a jury has discretion to allow or disallow deduction of expenses, Oracle relies on the premise that the term "deductible" in Section 504(b) is ambiguous, a "verbal chameleon." *See* Opp. at 10-11, 21-22. Oracle fails to explain why the term is ambiguous at all and cites no support for its proposition. Even assuming the term is ambiguous, there is no support for the notion that a jury, as opposed to the Court, must resolve the

[1] Given Oracle's concession that Chief Judge Hamilton was correct in ruling that there is no categorical rule precluding deductions based on a finding of willfulness, Oracle cannot in good faith assert, as it does at page 21 of its Opposition, that the out-of-circuit authorities applying a categorical rule ***are a correct statement of the law***. The rule that willful infringers may not deduct overhead expenses is not the law in the Ninth Circuit. *SAP*, 2012 WL 11883865 at *1-*2; *ZZ Top*, 70 F. Supp. 2d at 1169.

[2] Motion to Preclude Submission of the Issue of Willfulness to the Jury Absent an Election of Statutory Damages, ECF No. 1284 ("Mot.") at 6 n.6.

ambiguity. "The interpretation of a statute presents a question of law." *Schlothan v. Territory of Alaska*, 276 F.2d 806, 815 (9th Cir. 1960). Accordingly, courts in the Ninth Circuit, including Judge Hamilton in *SAP*, have repeatedly held that the determination of what constitutes a proper deductible expense is a question for the court. *SAP*, 2012 WL 11883865 at *2 ("To the extent that the parties dispute which categories of expenses can be deducted (assuming defendants meet their burden of proof), ***that is a matter for the court, not the jury, to decide***.") (emphasis added); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984) (holding that overhead expenses are deductible under Section 504(b) so long as "the infringer can demonstrate [that the overhead expense] was of actual assistance in the production, distribution or sale of the infringing product."); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487-88 (9th Cir. 2000) (holding that offsets against future taxes as part of a net operating loss are not deductible under Section 504(b)). Not surprisingly, Oracle cites no authority holding that the meaning of the term "deductible expense" is a question for the jury to resolve on an ad hoc, case-by-case basis.

### C. The Supreme Court's ruling in *Sheldon* does not support Oracle's position.

Oracle contends that the rule it now asks this Court to adopt—the so-called "*Sheldon* rule"—was "enshrined" in copyright law (but not the text of the Copyright Act) in the Supreme Court's decision in *Sheldon II*, 309 U.S. 390. Opp. at 12. But *Sheldon II* did not address the types of expenses that are deductible from an infringer's gross revenues to arrive at an award of disgorged profits. To the contrary, as the decision's opening paragraph makes clear, *Sheldon II* concerns only the separate issue of whether an infringer's profits, once calculated, may properly be apportioned so that the copyright owner may only collect such profits actually attributable to the infringement:

> ***The questions presented are whether, in computing an award of profits against an infringer of a copyright, there may be an apportionment*** so as to give to the owner of the copyright only that part of the profits found to be attributable to the use of the copyrighted material as distinguished from what the infringer himself has supplied, and, if so, whether the evidence affords a proper basis for the apportionment decreed in this case.

*Sheldon II*, 309 U.S. at 396 (emphasis added).[3] The Supreme Court answered the question in the affirmative, finding that an apportionment should be applied in claims for profits under the 1909 Copyright Act, provided "the evidence is sufficient to provide a fair basis of division" of the infringer's profits actually attributable to the infringement. *Id.* at 401-402. Far from creating a rule regarding what expenses may or may not be "deductible," the Court ***expressly declined to address*** complaints regarding deductions raised by the petitioner, noting only that the complaints themselves (without articulating what they were) raised questions for the district court. *Id.* at 409.

To the extent that *Sheldon II* addressed willfulness at all, the Supreme Court held that a copyright defendant's status as a willful infringer ***does not affect*** the recovery of disgorged profits:

> Petitioners stress the point that respondents have been found guilty of deliberate plagiarism, but we perceive no ground for saying that in awarding profits to the copyright proprietor as a means of compensation, the court may make an award of profits which have been shown not to be due to the infringement. ***That would be not to do equity but to inflict an unauthorized penalty***. . . . Where there is a commingling of gains, [the infringer] must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him. When such an apportionment has been fairly made, the copyright proprietor receives all the profits which have been gained through the use of the infringing material ***and that is all that the statute authorizes and equity sanctions***.

*Id.* at 405-06 (emphases added). Furthermore, contrary to the mischaracterization in Oracle's Opposition, the legislative history for the 1976 Copyright Act cited by Oracle contains no discussion of willfulness or its effect on the calculation of disgorged profits. The legislative history mentions deductions merely to make the non-controversial observation that "allocating overheads or other joint costs" between infringing and non-infringing conduct can be "difficult[]." *Study No. 23: The Operation of the Damages Provisions of the Copyright Law* (Mar. 1958).

In short, *Sheldon II* does not support Oracle's argument that a finding of willfulness is

[3] Congress expressly incorporated this ***rule of apportionment***—not deductions—from *Sheldon II* into the Copyright Act of 1976. *Compare* Section 101(b) of the 1909 Copyright Act, 17 U.S.C. § 101(b), *as amended* on August 24, 1912 (authorizing recovery of "*all the profits* which the infringer shall have made from such infringement") (emphasis added) *with* 17 U.S.C. § 504(b) (authorizing recovery of "*profits* of the infringer *that are attributable to the infringement*") (emphasis added).

necessary to compute an award of disgorged profits. In stylizing its argument as the "*Sheldon* rule," Oracle seeks to improperly conflate the ***Supreme Court's*** ruling regarding the appropriate allocations of costs in *Sheldon II* with the ***Second Circuit's*** non-binding dicta regarding the calculation of disgorged profits in *Sheldon I*. *See* Mot. at 5.

*Sheldon I* is not binding on this Court, and, in any event, does not support the rule Oracle proposes here. While Oracle describes the decision as "afford[ing] the trier of fact great latitude in determining whether [willful] infringers . . . are permitted to deduct operating and overhead expenses, such as income taxes paid," Opp. at 12, the court in *Sheldon I* actually cited to a 1928 ***trade dress case***, *L.P. Larson, Jr. Co. v. Wm. Wrigley, Jr., Co.*, 277 U.S. 97 (1928), for the proposition that a court cannot allow, as a matter of law, a deduction of income taxes where the court finds the infringement to be willful. *Sheldon I*, 106 F.2d at 53. And although the Ninth Circuit has never directly addressed the question, it has suggested in dicta that *L.P. Larson* gives no discretion to courts to allow a willful infringer to deduct income taxes. *Three Boys Music*, 212 F.3d at 487-88 ("The Supreme Court held that willful infringers ***could not deduct income taxes*** . . . from the infringing profits.") (emphasis added). In other words, to the extent any principle on the relevance of willfulness can be divined from the Second Circuit's decision in *Sheldon I*, it is exactly the sort of "all-or-nothing rule" that Oracle expressly disavows here. Opp. at 11, 22.

Even if the Ninth Circuit's decision in *Three Boys Music* does bar income tax deductions by willful copyright infringers as a matter of law, Google has never claimed in its expert reports in this case any deduction for income taxes. Expert Report of Dr. Alan J. Cox, *as revised on* Oct. 21, 2011 and Nov. 25, 2011, at 31-33 & Ex. 3a. Thus, to the extent Oracle contends that a verdict question on willfulness is necessary to determine whether Google may deduct its income taxes, that issue is not yet before the Court.

**D. The vestigial common law doctrines cited by Oracle are inapplicable and do not trump the plain language of the Copyright Act.**

As a fallback position, Oracle's argues that its proposed rule of copyright law is supported by "hundreds of years of common law history" (*e.g.*, "trover actions"). Opp. at 17-19. Yet none of the cases cited by Oracle supports a rule that juries at common law had discretion to prohibit

constructive trustees from deducting overhead expenses. And even if Oracle were correct that such a rule existed outside the copyright context, the Supreme Court in *Sheldon II* held that it would be improper to import such rules wholesale into copyright law, because it would necessarily "inflict an unauthorized penalty." 309 U.S. at 405; *see also id.* 405-06 ("To call the infringer a trustee ex maleficio merely indicates '***a mode of approach and an imperfect analogy*** by which the wrongdoer will be made to handover the proceeds of his wrong.'") (quoting *L.P. Larson*, 277 U.S. at 99) (emphasis added); *Sheldon I*, 106 F.2d at 51 (refusing to import into the copyright context the "harsh rule" prohibiting "a constructive trustee, who consciously misappropriates the property of another," from recovering his actual expenses).

None of the cases cited by Oracle[4] suggests, let alone requires, that a question of willfulness must be submitted to the jury under Section 504(b).

**E. Oracle's proposed verdict question and instruction on willfulness is unworkable in practice and unduly prejudicial to Google.**

Oracle's proposed rule granting juries unguided discretion to deduct certain expenses based on a finding of willfulness is legally unprecedented, and would be unworkable in practice and prejudicial to Google, as is evident from Oracle's exemplary jury instruction[5] (Opp. at 7).

In its jury instruction, Oracle asks to instruct the jury that it "***may*** take into account whether or not Google is a willful infringer." *Id.* (emphasis added). But Oracle's instruction ***provides no guidance to the jury on how to take willfulness into account*** other than by saying that it "may choose not to deduct some or all of Google's operating or overhead expenses associated with Android." *Id.* Oracle's open-ended instruction raises more questions than it

---

[4] Oracle also argues, as it did in *SAP*, that the comments in the Model Instructions support its position. Opp. at 20. However, as Chief Judge Hamilton correctly observed, "the Ninth Circuit [did not] adopt the Model Instructions as authoritative statements of the law [and] [e]ven less should a 'Comment' to a Model instruction be considered an authoritative statement of the law." *SAP*, 2012 WL 11883865 at *2. In any event, the Model Ninth Circuit Jury Instructions do not actually contain anything resembling the special instruction proposed by Oracle this case, and the sole instruction on willfulness is limited to claims for statutory damages. Mot. at 6 n.6.

[5] Despite Oracle's eagerness to raise this issue, the Court's Case Management Order did not invite the parties to propose verdict form questions or jury instructions. ECF No. 1277. Because Google does not believe the Court intends to decide disputes over jury instruction language prior to the pre-trial phase, Google declines to respond to Oracle's language with its own proposal and reserves the right to offer its own competing jury instructions and brief the relevant issues at the appropriate time.

answers: How should the jury decide whether or not it should take willfulness into account? If the jury does take willfulness into account, how does willfulness determine whether or not to limit the deduction of any operating and/or overhead expenses? If a jury does decide to limit expenses, how does it know whether to limit "some" or "all" expenses? Or to limit operating expenses but not overhead, or vice-versa? Under Oracle's proposed instruction—and its purported unfettered discretionary rule of limiting deductions in general—the jury is left to guess at the answer to each of these questions. That cannot be the law.

In addition to leaving the jury without guidance as to how to exercise its discretion, Oracle's instruction would also confuse the jury into exercising its discretion in a manner contrary to the law of the Ninth Circuit and Oracle's own proposed rule. On the one hand, Oracle's instruction states that the purpose of disallowing deductions is "to prevent willful infringers from using the benefits derived from another's copyrighted material to subsidize *other* operations of the company" Opp. at 7 (emphasis in original). On the other hand, Oracle asks the Court to instruct the jury that it may nonetheless refuse to "deduct some or ***all*** ***. . . expenses associated with Android***." *Id.* (emphasis added). These two principles are contradictory. If Google carries its burden of establishing that its claimed overhead expenses "[were] of actual assistance in the production, distribution or sale of the infringing product," *i.e.* are "associated with Android," then those expenses are deductible under Ninth Circuit law. *Kamar*, 752 F.2d at 1332.

Moreover, despite relying on cases discussing the deduction of fixed overhead expenses and/or income taxes,[6] Oracle's proposed instruction purports to disallow deductions of both overhead expenses *and operating expenses*. Opp. at 7. The only support offered by Oracle for including both "overhead" and "operating expenses" in its instruction is the presence of both terms in brackets in the Ninth Circuit's Model Instruction. *See id.* at 6 n.1 ("The emphasized bracketed language in Model Instruction 17.24 indicates that the deduction of fixed expenses may be proper or improper depending upon the circumstances of the case—exactly Oracle's

[6] Notably, Oracle's proffered instruction does not even identify income taxes—which is neither an operating cost nor fixed overhead—as an expense the jury may decline to deduct. Opp. at 7.

position."). Oracle's logic is flawed on its face. As the remaining text of the instruction demonstrates, the bracketed language in the Model Instruction reflects *alternative* terms or phrases (*i.e.*, use one or the other) that a court may select from to convey the *same or similar concept* to the jury; they are not *options* for jury to select or ignore entirely. *See id.* at 6 (". . . [deducting] [subtracting] . . ."; ". . . [product] [work] . . ."; ". . . [portion] [percentage] . . ."; etc.).

Viewed as a whole, Oracle's proposed instruction appears purposefully designed to mislead the jury into believing that it can, and should, ***affirmatively punish*** Google for copyright infringement. Of all the remedies available to a copyright owner, only statutory damages, which Oracle has not elected (and surely will not elect), are intended to serve any punitive purposes. *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) (an award of statutory damages under Section 504(c) serves "punitive and deterrent purposes," which are "completely different purposes than actual damages"); *SAP*, 2012 WL 11883865 at *2. Oracle cannot circumvent the clear statutory framework of 17 U.S.C. § 504 by inventing a rule that would give juries unbounded discretion to punish alleged willful infringers.

### F. If Oracle insists on pretending that it may elect statutory damages, the Court may hold a separate trial on that claim *after* Oracle makes such an election.

There should be little doubt that Oracle has *no intention* of abandoning its current request for more than a billion dollars in actual damages and profits in exchange for, at most, $150,000 in statutory damages for each of the two copyrighted versions of the Java platform at issue in this case. *See* 17 U.S.C. § 504(c). As a result, the Court has the case management authority to protect the jury from deliberating over irrelevant questions on the verdict form by ordering that willfulness be tried, if necessary, in a separate phase in front of the same jury, after liability and actual damages and disgorgement of profits have been decided. Mot. at 6-9. Indeed, as demonstrated by Oracle's proposed jury instruction—which appears purposefully designed to mislead the jury and prejudice Google—the exercise of the Court's case management authority to protect the jury is especially appropriate in this case.

Oracle does not contest either of these points in its Opposition. Opp. at 23-25. Instead, it simply argues that trying before the same jury its statutory damages claim—a claim Oracle ***does***

***not even attempt*** to suggest that it may one day pursue—would be a waste of time, because the relevant evidence in both phases would likely be the same. This argument misses the point. As Google will explain in the memorandum to be filed on September 1, the same evidence on which it intends to rely to demonstrate its good faith will also be relevant and admissible in a subsequent trial on Oracle's claim for willfulness and statutory damages.

But an overlap in evidence between fair use and willfulness counsels *in favor* of, not against, having the same jury decide statutory damages in a separate phase. If Oracle elects to seek statutory damages and a separate trial proves to be necessary—an outcome that has very little, if any, chance of actually occurring—the jury need not hear duplicative evidence to decide the issue at hand. By contrast, if—as is almost certain—Oracle does not elect to seek statutory damages, the jury will have been spared from having to deliberate over irrelevant questions of willfulness and the amount of statutory damages, allowing the jurors to properly focus on the pertinent issues. *Cf.* Ann. Manual for Complex Litigation § 33.27 (Fourth) ("Bifurcation of a patent jury trial or a phased trial considering major issues separately can sometimes assist in properly focusing the jury's attention"); *see also Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (noting that phasing a trial can "enhance jury decision making in two ways: (1) by presenting the evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at any particular time." (quoting Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rev. 705, 751 (2000))).

**G. The question of whether disgorgement of profits must be tried to a jury is not properly before the Court in this Motion.**

Finally, in accordance with paragraph 1 of the Court's Second Case Management Order, ECF No. 1277, Google's Motion is limited to (i) whether the Court should preclude submitting the issue of willfulness to the jury in connection with Oracle's damages claim under 17 U.S.C. § 504(b), and (ii) whether the Court has the case management authority to set a deadline for Oracle to elect to receive a statutory damages award. By spending a significant portion of its Opposition arguing that Oracle has a right to a jury trial on its claim for disgorged profits (and by requesting the Court adopt specific jury instructions on that question), Oracle improperly seeks a preemptive

decision on the distinct and disputed issue of whether Oracle has a Seventh Amendment right[7] to a jury trial on its claim for disgorged profits following the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014). In its Opposition, Oracle takes certain language from Google's Motion out of context to suggest Google does not dispute that Oracle has a right to a jury trial on this issue. That is incorrect. To be clear, and as is evident from Google's separate submission regarding the equitable defense of laches, ***Google does not concede that Oracle has a right to a jury trial on its claim for disgorgement of profits***, which the Supreme Court characterized in *Petrella* as an equitable remedy. ECF No. 1291 at 2-4.

However, because Oracle's argument falls well outside the scope of Google's Motion and the Court's Order, Google will not respond to it in this Reply. Google welcomes the opportunity to brief this issue in full as part of a separate motion, if and when the Court desires.

## IV. CONCLUSION

For the foregoing reasons, Google requests that the Court preclude the submission of a willfulness question to the jury during the liability or damages phases of this case absent an election of statutory damages by Oracle.

Dated: August 27, 2015

KEKER & VAN NEST LLP

By: */s/ Robert A. Van Nest*
ROBERT A. VAN NEST
CHRISTA M. ANDERSON
DANIEL PURCELL

Attorneys for Defendant
GOOGLE INC.

[7] In its Opposition, Oracle argues that Congress intended to provide a statutory right to a jury trial in Section 504(b) based on the absence of the word "court," which is used only in subsection 504(c). Opp. at 7-8. Setting aside its own refusal to recognize this canon of statutory construction with respect to the term "willful," *id.* at 13-14, Oracle's argument is irreconcilable with the Supreme Court's ruling in *Feltner v. Columbia Pictures T.V., Inc.*, which held that the entire statute, including subsection 504(b), "is silent" as to whether a copyright owner has a right to a jury trial. 523 U.S. 340, 342 (1998); *see also id.* at 346 ("These phrases, ***like the entire statutory provision***, make no mention of a right to a jury trial or, for that matter, to juries at all.") (emphasis added).