# EXHIBIT 7

## *PURE POWER BOOT CAMP, INC. v. WARRIOR FITNESS BOOT CAMP LLC*

08 Civ. 4810 (THK)

United States District Court for the Southern District of New York

December 24, 2010

**Reporter**

2010 Jury Instr. LEXIS 1405

PURE POWER BOOT CAMP, INC., PURE POWER BOOT CAMP FRANCHISING CORPORATION, PURE POWER BOOT CAMP JERICHO INC., and LAUREN BRENNER, Plaintiffs, - against - WARRIOR FITNESS BOOT CAMP LLC, ALEXANDER KENNETH FELL, RUBIN DARIO BELLARD, JENNIFER J. LEE, and NANCY BAYNARD, Defendants.

**Type:** Jury Instruction

## Title

 [*1] Jury Instructions

## Text

### I. <u>INTRODUCTION</u>

Members of the jury, we have now reached that point in the trial where you are about to enter your final function as jurors which, as you all appreciate, is one of the most important duties of citizenship in this country. You all have given very careful attention to the evidence, and I am confident you will act together with fairness and impartiality and reach a just verdict in this case.

First, I will describe the law to be applied to the facts as you find them to be established by the proof. Second, I will instruct you about the trial process, including the burden of proof. Third, I will give you instructions concerning evaluation of the evidence. The fourth and fifth sections of these instructions will relate to your deliberations.

### II. <u>THE LAW</u>

The law that governs this case has several facets. In an effort to assist you, your verdict in this case will be in the form of a series of questions to be answered by you in the jury room, principally by "Yes" or "No" answers. My law clerk will distribute this Special Verdict form to you now with the thought that it may help you to follow the instructions I am about [*2] to give you.

**[NEED FORM]**

There are two sets of claims in this case. The first set is brought by plaintiffs who I will refer to as the "Pure Power Plaintiffs" against the defendants who I will refer to as the "Warrior Fitness Defendants." There is a second set of claims brought by the Warrior Fitness defendants against the Pure Power Plaintiffs.

I will describe to you first the set of claims brought by Pure Power against Warrior Fitness. Then I will describe the claims brought by Warrior Fitness against Pure Power.

<u>Pure Power's Claims Against Warrior Fitness Defendants Breach of Contract Against Fell and Bellard</u>

To prevail on a breach of contract claim under New York law, a plaintiff must prove: (1) the existence of a valid contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.

Advanced *Mktg. Group, Inc. v. Bus. Payment Sys., LLC, 300 Fed. Appx. 48, 79 (2d Cir. 2008);Terwilliger v. Terwilliger, 206 F.3d 240, 245-6 (2d Cir. 2004).*

Pure Power seeks to recover damages for breach of contract. Pure Power claims that the Warrior Fitness Defendants Fell and Belliard, breached their [*3] employment agreement by: failing to devote their skills and best efforts to Pure Power and by disparaging and undermining the reputation of Pure Power; assisting a competitor of Pure Power while still employed at Pure Power; stealing and then disclosing confidential and commercially sensitive information, by using Pure Power's Intellectual Property (as defined under their employment agreements) in a competing business; competing directly with Pure Power within the length of time specified in their respective employment agreements; and soliciting Pure Power's customers. Pure Power asserts that employment was extended to Belliard and Fell, and the men were compensated for their employment, based on Belliard and Fell's promise to abide by the polices articulated in the employment agreement each had with Pure Power.

As to each Belliard and Fell, the burden is on Pure Power to prove that each of them signed their respective employment agreements and that the employment of Fell and Belliard was made in reliance on a promise that Belliard and Fell would abide by Pure Power's polices as articulated by their employment agreements.

Adapted from *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp., 393 N.Y.S.2d 350, 351 (1977);* [*4]  PJI 4:1.

Defendants assert that the contracts are not enforceable under New York law for a myriad of reasons including the fact that it is overbroad, an illegal restriction on trade, illegally seeks to restrict Belliard from working anywhere in the world for a competing facility for a period of ten years and is not designed to legitimately protect Plaintiffs' purported business interests. The non-compete also fails for lack of consideration and because Belliard was terminated when he attempted to resign. Defendants also assert that Fell did not sign a non-compete. **PLAINTIFFS DISPUTE THIS PARAGRAPH AS THE ENFORCEABILITY OF THE CONTRACT AND BLUE PENCILING IS AN ISSUE FOR THE COURT, NOT THE JURY AND THE FACTS ARE MISSTATED**

In order to find a breach of a covenant not to compete in a contract the covenant must be reasonable in scope and duration as to which I will instruct you further . You must weigh the need to protect the Pure Power's legitimate business interests against the employees' concern regarding the possible loss of livelihood, Under New York law, an employee's noncompete covenant must be "reasonable in time and geographic scope" and can only be enforced to the extent [*5]  necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique. *Estee Lauder Companies v. Batra, 430 F.Supp.2d 158, 177 (S.D.N.V. 2006)* (citing *Ticor Title Insurance Co. v. Cohen, 173 F..3d 63, 70 (2d Cir. 1999);Purchasing Assocs, v Weitz, 13 N.Y.2d 267, 272-73 (1963))* (citing *Purchasing Assocs. v. Weitz, 13 N.Y.2d 267, 272*"73, *246 N.Y.S.2d 600(1963))*.**INSERTED LANGUAGE NOT AGREED TO BY DEFENDANTS**

In addition, restrictive covenants that prohibit employees from obtaining employment in a vocation of their choosing are disfavored under New York law, and are enforced only to the extent necessary to protect the disclosure of any trade secrets. *See, e.g., Primo Enters. v. Bachner, 148 A.D.2d 350, 351, 59 N.Y.S.2d 320, 321* (1st Dep't 1989).

I instruct you that the duration of the covenants not to compete contained in the employment agreements at issue are too long.  [*6]  Accordingly, I instruct you that as a matter of law I have reduced the duration to three years [Defendants proposed charge that says that the restrictive covenant is not enforceable as it is too broad in duration amd geographic scope and should be blue penciled to a duration of _years.] Both parties join in the request to the Court that this issue be resolved by the Court prior to the time the jury is charged.

<u>Damages</u>

My charge to you on the law of damages must not be taken as an intimation that you should decide for Plaintiffs. It is for you to decide on the evidence presented and the rules of law I have given you whether Plaintiffs are entitled

to recover from Belliard and Fell for a breach of contract. If you decide Plaintiffs are not entitled to recover, or that the alleged contracts are not enforceable or lacked adequate consideration, your verdict will be for Belliard and Fell and you need go no further. Only if you decide that Plaintiffs are entitled to recover will you consider the measure of damages. **PLAINTIFFS DO NOT AGREE TO THE HIGHLIGHTED LANGUAGE**

A proper measure of damages for breaching of a covenant not to compete is the net profit which [*7] a plaintiff was deprived of by reason of a defendant's improper competition with a plaintiffs.

If you find that Plaintiffs have not lost profits or if such claims of lost profits are based upon undue speculation, you should not award damages to Plaintiffs.

*Earth Alterations, LLC v. Farrel, 800 N.Y.S.2d 744, 745* (2d Dep't 2005); *World Auto Parts, Inc. v Labenski, 689 N.Y.S.2d 582, 583* (4th Dep't 1999); *Pencom Sys., Inc. v. Shaprio, 598 N.Y.S.2d 212, 212* (1st Dep't 1993).

The proper measure for damages for breaching a nondisclosure agreement and non-solicitation agreement is "the amount that will place the nonbreaching party in the same position as if the contract had been fully performed, provided that the parties could, when they entered into the contract, have foreseen that such damages would probably result if the contract was breached."

*Cargill v. Sears Petroleum & Transport Co., 388 F. Supp. 2d 37, 71 (N.D.N.Y. 2005),* appeal dismissed by *163 Fed.Appx. 894* (Fed. Cir. Jan 17, 2006).

You may also award restitution damages for Defendants' violation of their non-disclosure agreement-meaning [*8] you can award damages to compensate Plaintiffs for Defendants' exploitation of their confidential information.

*Cargill v. Sears Petroleum & Transport Co., 388 F. Supp. 2d 37, 71 (N.D.N.Y. 2005);Y.J.D Rest. Supply Co. v. DIB, 98 Misc. 2d 462, 464, 413 N.Y.S.2d 835, 836 (N.Y. Sup. Ct. 1979).*

Breach of the Common Law Duty of Loyalty against Bellard, Fell, Lee and Bavnard

Pure Power, claims that the defendants, Belliard and Fell, breached their duty of loyalty to Pure Power. An employee has a duty to his employer to act in good faith and in the employer's best interests during his period of employment. A fiduciary owes his employer undivided and unqualified loyalty and may not act in any manner contrary to the interests of the employer.

Adapted *from Am. Bldg. Main. Co. of N.Y. v. Acme Prop. Services, 515 F. Supp. 2d 298, 312 (N.D.N.Y. 2007)* quoting *Phansalkar v. Anderson Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003)* quoting *W. Elec. Co. v. Brenner, 41 N.Y.2d 291, 295 (1977);* PJI 3:59.

A person acting in a fiduciary capacity is required to make truthful and complete disclosures [*9] to those to whom a fiduciary duty is owed and the fiduciary is forbidden to obtain an improper advantage at the other's expense.

Adapted from *Sokoloff v. Harriman Estates Devlp., 96 N.Y.2d 409, 416 (2001);Brenmer Indus., Inc. v. Hattie Carnegie Jewelry Enter., Ltd., 71 A.D.2d 597, 597* (1st Dep't 1979); PJI 3:59.

This requires that, while employed, the employee must exert his best efforts on behalf of the company and not compete with it or profit at its expense, or place his private interests in conflict with its interests. An employee does not breach his fiduciary duties by telling clients that he is thinking of leaving and going to a new business. Although an employee may make preparations to compete with his employer while still working for the employer, he may not do so at his employer's expense and may not use his employer's resources, time, facilities, or confidential information. Whether or not the employee has signed an agreement not to compete with the employer, the employee may not, while still employed, solicit clients of his employer to follow him, may not copy his employer's business records for his own use, may not charge expenses [*10] to his employer which were incurred while acting on behalf of his own interest, and may not actively divert the employer's business for his own personal benefit or the benefit of others.

2010 Jury Instr. LEXIS 1405, *10

Adapted from *Ashaland Mgmt. Incorp. v. Altair Invs. NA,* 869 N.Y.D.2d 465, 473 (1st Dep't 2008); *Calspan Corp. v. Piech, 458 N.Y.S.2d 211, 213* (4th Dep't 1982); PJI 3:59.

Pure Power claims that defendants, Belliard and Fell, did not act in good faith or in the best interests of Pure Power when each: failed to devote their skills and best efforts to Pure Power and by disparaging and undermining the reputation and facilities of Pure Power; secretly soliciting Pure Power's clients for Warrior Fitness's future business while still in Pure Power's employ and thereafter; misappropriating Pure Power's customer information for competitive use; disclosing confidential and commercially sensitive information, using Pure Power's Intellectual Property; soliciting Pure Power clients and employees; and; competing directly with Pure Power within the length of time specified in their employment agreements. Pure Power claims that as a result of Belliard and Fell's breach, Pure Power sustained [*11] damages. Belliard and Fell deny breaching their fiduciary duty to Pure Power and claim that Pure Power has proved no damages.

Defendants assert that Plaintiffs' business plan and non-compete agreements did not contain proprietary information and the documents were not ultimately used in the creation of Warrior. Defendants assert that there is also nothing in these documents which show that they are so special and unique that they qualify as a "trade secret." Defendants also assert that the information contained in the customer list does not qualify for protection because the contact information for Pure Power's customers can be readily identified.

Defendants assert that neither Fell nor Belliard solicited any of the Plaintiffs' customers and that Plaintiffs cannot introduce any evidence that any of its customers on the Plaintiffs' customer list actually switched from attending Pure Power to Warrior due to wrongful solicitation. .Although Belliard obtained Pure Power's customer list, Defendants did not use Pure Power's customer list and the list is not a trade secret. Plaintiffs cannot introduce any evidence that Defendants ever distributed or disseminated the allegedly misappropriated [*12] customer list.

Plaintiffs cannot present any evidence that Defendants prevented Plaintiffs' customers from patronizing and attending Pure Power. Any customer of Warrior remains fully capable of attending classes at Pure Power as well. ***PLAINTIFFS DO NOT AGREE TO THE HIGHLIGHTED LANGUA GE.***

Employees owe a fiduciary duty to their employers which prevent them from enriching themselves at the expense of their employer. If an employee enriches themselves at their employer's expense, the employee has breached their duty of loyalty to their employer.

*Freedom Call Foundation v. Bukstel, 2006 WL 845509,* at *17 (E.D.N.Y. Mar. 3, 2006); Alpine *Group, Inc. v. Johnson, 2002 WL 10495,* at *3 (S.D.N.Y. Jan 3, 2002); *Sadowy v. Sony, 496 F. Supp 1071, 1080 (S.D.N.Y. 1980).*

In New York, it is well established that a former employee is '"not free to exploit the same trade if the opportunity was facilitated by acts of preparing and disloyalty during his employment' and before his termination and 'by the breach of his obligation to use his best efforts in the interest of the employer.'" Such acts constitute a breach of fiduciary duty. [*13]

*Freedom Call Foundation v. Bukstel, 2006 WL 845509,* at *17 (E.D.N.Y. Mar. 3, 2006) *citing AGA Aktiebolag v. ABA Optical Corp., 441 F.Supp. 747, 754 (E.D.N.Y. 1977);see also Ashland Mgmt. Incorp. v. Altair Investments NA, 59 A.D.3d 97, 107* (1st Dep't 2008); *Nutronics Imaging, Inc. v. Danan, 1998 WL 426570,* at *2 (E.D.N.Y. Jun 10, 1998); *Q-Co. Indus., Inc. v. Hoffman, 625 F.Supp. 608, 617* (S.D.N.Y. Dec. 24, 1985).

When a person disparages a business while under a duty to act for its benefit, that person has breached its fiduciary duty to that business.

*Mandelblatt v. Devon Stories, Inc., 132 A.D.2d 162, 167-8* (1st Dep't 1987) (company stated a claim for breach of fiduciary duty against former consultant that disparaged its subsidiary while employed by the company).

Even in the absence of a contract not to solicit an employer's clients, an employee is not entitled to solicit customers by fraudulent means, by use of trade secrets or confidential information.

2010 Jury Instr. LEXIS 1405, *13

*Reed, Roberts Assoc. v. Strauman, 40 N.Y.2d 303, 306-308,* (1976), *rearg. denied 389 N.Y.S.2d 1027 (1976);* [*14] *Support Sys. Assocs., Inc. v Tavolacci, 522 N.Y.S.2d 604, 706-7* (2d Dep't 1987); Restatement (First) of Torts § 757, cmt. b (1939).

If you find that Belliard and Fell, did not breach their fiduciary duty to Pure Power, you need proceed no further.

If you find that Belliard and Fell did breach their fiduciary duty to Pure Power, you must then decide whether each man's breach was a substantial factor in causing Pure Power to sustain damages. If you find that it was not a substantial factor in causing Pure Power to sustain damages, you need proceed no further. If you find that Belliard and Fell's breach was a substantial factor in causing Pure Power to sustain damages, you must then decide the amount of damages Pure Power sustained.

Damages

As already instructed, if you find that Belliard and Fell breached a fiduciary duty, and that breach was a substantial factor in causing Pure Power to sustain damages, you will award Pure Power such an amount as you find to be the actual damages sustained for compensation and expenses that Pure Power paid to Belliard and Fell during the period of their disloyalty and either profits that Warrior Fitness obtained or Pure Power's [*15]  lost profits, loss of business. PJI 3:59 (modified); *Design Strategy, Inc. v. Davis, 469 F.3d 284, 300 (2d Cir. 2006);*

*Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 205 (2d Cir. 2003),Lamdin v. Broadway Surface Advertising Corp., 272 N.Y. 133, 137 (1936);Henderson v. Rep. Tech., Inc., 557 N.Y.S.2d 224, 225* (4th Dep't 1990); *TPL Assocs. v. Helmsley-Spear, Inc., 536 N.Y.S.2d 754, 757* (1st Dep't 1989).

For breaches of fiduciary duty which are unrelated to breaches of the restrictive covenant, it is the employer's choice to calculate damages either by an accounting of the disloyal employee's gain or a calculation of what the employer would have made had the employee not breached his duty of loyalty.

*Western Elec. Co. v. Brenner, 392 N.Y.S.2d 409, 412 (1977),* citing Restatement, Agency 2d, § 421A, Comment on Clause [c]; *Gomez v. Bicknell, 756 N.Y.S.2d 209, 214* (2d Dep't 2002) (distinguishing measure of damages for breach of covenant not to compete where employer must prove its own loss of profits).

Aiding and Abetting Breach of Loyalty [*16]

Pure Power also alleges that Lee and/or Baynard aided and abetted Belliard and/or Fell in breaching their duty of loyalty owed to Pure Power. In order to find that Lee and/or Baynard aided and abetted Bellaird and/or Fell, you must first find that Belliard and/or Fell owed and breached a duty of loyalty to Pure Power. If you do not find that Fell and/or Belliard breached any duty to Pure Power, you need proceed no further. If you find that there was a breach of duty, you must then decide whether Lee and/or Baynard knew that Belliard and Fell had a fiduciary obligation to Pure Power. Pure Power is not required to show that either Lee or Baynard intended harm,. The second element is "that the defendant knowingly induced or participated in the breach"; and the third element is "that plaintiff suffered damage as a result of the breach." *In re Sharp Intern. Corp., 403 F.3d at 49 -50;Kaufman, 307 A.D.2d at 125, 760 N.Y.S.2d 157;Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir.2000);S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 847-48 (2d Cir.1987);Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir.1986).* [*17] If you find that neither Lee nor Baynard had any knowledge of a duty owed to Pure Power you need proceed no further. If you find that Lee and/or Baynard knew that Belliard and/or Fell should not have engaged in the conduct that constituted the breach, you must determine whether Lee and/or Baynard knowingly induced or participated in the breach. If Lee or Baynard either induced Bellaird and Fell to breach their duty to Pure Power or knowingly participated in such breach-then you must find for Pure Power.

A person induces a breach if they entice or persuade another person to commit the breach.

A person knowingly participates in a breach of fiduciary duty when she provides "substantial assistance" to the primary violator. Substantial assistance is found when someone affirmatively assists or helps conceal a breach fiduciary duty.

2010 Jury Instr. LEXIS 1405, *17

*Adapted from* Sharp Intn'l v. Corp v. State St. Bank & Trust Co., 403 F.3d 43, 49-51 (2d Cir. 2005;; Monaghan v. Ford Motor Co., 897 N.Y.S.2d 482, 485 (2d Dep't 2010); Kaufman v. Cohen, 125, 760 N.Y.S.2d 157, 169 (1st Dep't 2003).

Examples of Breach of Loyalty

Employees owe a fiduciary duty to their [*18]  employers which prevent them from enriching themselves at the expense of their employer. If an employee enriches themselves at their employer's expense, the employee has breached their duty of loyalty to their employer.

Freedom Call Foundation v. Bukstel, 2006 WL 845509, at *17 (E.D.N.Y. Mar. 3, 2006); Alpine Group, Inc. v. Johnson, 2002 WL 10495, at *3 (S.D.N.Y. Jan3, 2002); Sadowy v. Sony, 496 F. Supp 1071, 1080 (S.D.N.Y. 1980).

In New York, it is well established that a former employee is "'not free to exploit the same trade if the opportunity was facilitated by acts of preparing and disloyalty during his employment' and before his termination and 'by the breach of his obligation to use his best efforts in the interest of the employer.'" Such acts constitute a breach of fiduciary duty.

Freedom Call Foundation v. Bukstel, 2006 WL 845509, at *17 (E.D.N.Y. Mar. 3, 2006) citing AGA Akliebolag v. ABA Optical Corp., 441 F.Supp. 747, 754 (E.D.N.Y. 1977);see also Ashland Mgmt. Incorp. v. Altair Investments NA, 59 A.D.3d 97, 107 (1st Dep't 2008); Nutronics Imaging, Inc. v. Danan, 1998 WL 426570, [*19]  at *2 (E.D.N.Y. Jun 10, 1998); Q-Co. Indus., Inc. v. Hoffman, 625 F.Supp. 608, 617 (S.D.N.Y. Dec. 24, 1985).

When a person disparages a business while under a duty to act for its benefit, that person has breached its fiduciary duty to that business.

Mandelblatt v. Devon Stories, Inc., 132 A.D.2d 162, 167-8 (1st Dep't 1987) (company stated a claim for breach of fiduciary duty against former consultant that disparaged its subsidiary while employed by the company).

Even in the absence of a contract not to solicit an employer's clients, an employee is not entitled to solicit customers by fraudulent means, by use of trade secrets or confidential information.

Reed, Roberts Assoc. v. Strauman, 40 N.Y.2d 303, 306-308, (1976), *rearg. denied*389 N.Y.S.2d 1027 (1976);Support Sys. Assocs., Inc. v Tavolacci, 522 N.Y.S.2d 604, 706-7 (2d Dep't 1987); Restatement (First) of Torts § 757, cmt. b (1939). ***DEFENDANTS DO NOT AGREE WITH THE HIGHLIGHTED LANGUAGE.***

Damages for Breach of Loyalty

My charge to you on the law of damages must not be taken as an intimation that you should decide [*20]  for Plaintiffs. It is for you to decide on the evidence presented and the rules of law I have given you whether Plaintiffs are entitled to recover from Belliard and/or Fell. If you decide Plaintiffs are not entitled to recover, your verdict will be for Belliard and/or Fell and you need go no further. Only if you decide that Plaintiffs are entitled to recover will you consider the measure of damages. A proper measure of damages for breaching of a covenant not to compete is the net profit which a plaintiff was deprived of by reason of a defendant's improper competition with a plaintiffs.

Earth Alterations, LLC v. Farrel, 800 N.Y.S.2d 744, 745 (2d Dep't 2005); World Auto Parts, Inc. v Labenski, 689 N.Y.S.2d 582, 583 (4th Dep't 1999); Pencom Sys., Inc. v. Shaprio, 598 N.Y.S.2d 212, 212 (1st Dep't 1993).

For breaches of fiduciary duty that are unrelated to breaches of a restrictive covenant, it is the employer's choice to calculate damages either by an accounting of the disloyal employee's gain or a calculation of what the employer would have made had the employee not breached his duty of loyalty.

Western Elec. Co. v. Brenner, 392 N.Y.S.2d 409, 412 (1977), [*21]  citing Restatement, Agency 2d, § 421A, Comment on Clause [c]; Gomez v. Bicknell, 756 N.Y.S.2d 209, 214 (2d Dep't 2002) (distinguishing measure of damages for breach of covenant not to compete where employer must prove its own loss of profits).

2010 Jury Instr. LEXIS 1405, *21

Damages for breach of an employee's fiduciary duty also include compensation and expenses that an employer paid to the defendant during the period of the disloyalty and breach as well as profits that defendant obtained. However the employer is not entitled to repayment of compensation during periods of loyalty.

*Design Strategy, Inc. v. Davis, 469 F.3d 284, 300 (2d Cir. 2006);Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 205 (2d Cir. 2003),Lamdin v. Broadway Surface Adver. Corp., 272 N.Y. 133, 137 (1936);Henderson v. Rep. Tech., Inc., 557 N.Y.S.2d 224, 225* (4th Dep't 1990); *TPL Assocs. v. Helmsley-Spear, Inc., 536 N.Y.S.2d 754, 757* (1st Dep't 1989).

Punitive Damages for Breach of Loyalty

Employees can be liable for punitive damages relating to their breach of duty by as a result of their "diversion of assets to a [*22]  secretly created competitive organization."

*Wrap-n-Pack, Inc. v. Kaye, 528 F. Supp. 2d 119, 126 (E.D.N.Y. 2007)* quoting *Don Buchwald & assoc, Inc. v. Rich, 723 N.Y.S.2d 8, 8* (1st Dep't 2001).

"Putative damages are allowable in tort cases such as this breach of fiduciary duty so long as the very high threshold of moral culpability is satisfied,"

*Id.* (internal quotations omitted); *Paz Systems, Inc. v. Dakota Group Corp., 514 F.Supp.2d 402, 410 (E.D.N.Y. 2007).PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.*

In addition to actual damages as we just discussed, the law permits the jury under certain circumstances to award a plaintiff punitive or exemplary damages in order to deter a defendant and others from breaching their duty of loyalty. In order to award such punitive damages, you must find from a preponderance of the evidence that defendants' conduct in breaching their duty was willful and deliberate.

An act is willfully done if it is done knowingly, voluntarily and intentionally, and not because of mistake or accident.

If you find that defendants' breaches of loyalty were willful, you may award, if you [*23]  deem it proper to do so, such sum as you deem appropriate. You must keep in mind that the purpose of awarding punitive or exemplary damages is not as compensation to plaintiff for wrong done, but to punish a wrongdoer for some extraordinary conduct and to serve as an example or warning to others not to engage in such conduct. You also may award punitive damages against certain defendants and not all defendants if you find that the conduct of certain defendants was willful and the conduct of others was not willful. Defendants assert that in light of Plaintiffs' bad faith and wrongful acts in violating federal law by stealing 546 of Defendants' emails, forging Fell's signature to his alleged non-compete agreement, committing trespass, sending spies to Warrior, and menacing Defendants' business by making false reports concerning drug activity at Warrior, advertising for Pure Power outside of Warrior's facility, and attempting to make false reports concerning Warrior's facility with the Department of Buildings, Plaintiffs have no basis to seek punitive damages. ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE***

Unjust Enrichment against All Defendants

When a person has obtained [*24]  money or property from another under such circumstances that in good conscience it should not be retained, the law imposes a duty to repay or return it.

The Plaintiffs claim that they expended a significant amount of money in developing the business materials, concepts and/or proprietary information stolen from for Pure Power. The Plaintiffs claim that the Defendants misappropriated these business materials and concepts and/or proprietary information from Pure Power without the Plaintiffs' authorization and without compensating Plaintiffs.

However, Defendants assert that the business plan and non-compete agreements did not contain proprietary information and the documents were not ultimately used in the creation of Warrior. There is also nothing in these

documents which show that they are so special and unique that they qualify as a "trade secret." The information contained in the customer list does not qualify for protection because the contact information for Pure Power's customers can be readily identified. ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***

The Plaintiffs have the burden of proving the facts on which they base their claims. If you find that the Defendants [*25]   were enriched by misappropriating Plaintiffs' business materials, concepts and/or proprietary information from Pure Power, you must decide for Plaintiffs.

If you find that the Defendants did not misappropriate Plaintiffs' business materials, concepts and/or proprietary information then you must decide for the Defendants.

A claim for unjust enrichment will not stand where there exists available contractual remedies based upon an allegedly explicit contract. *Apfel v. Prudential-Bache Sec, Inc., 81 N.Y.2d 470, 616 N.E.2d 1095, 600 N.Y.S.2d 433 (N.Y. 1993).* Thus, if you find that Defendants are liable for breach of contract you cannot also find that defendants are liable for unjust enrichment for the same acts that also constitute a breach of contract. You may find that the Defendants have been unjustly enriched by wrongful acts that do not constitute breach of contract.

If you decide for Plaintiffs, the amount that they can recover depends on the blameworthiness of the Defendants' conduct. As a general rule, a conscious wrongdoer, or someone who takes action despite a known risk that their conduct could be violating the rights of the owner, will be required to disgorge [*26]  all of their gains. This includes gains that are not a direct result of the initial act of misappropriation but rather a consequence of the misappropriation.

On the other hand, should you find that the Defendants conduct was innocent or merely negligent; they will only be liable for the direct benefit they received from their wrongful conduct. A direct benefit may be measured, where such a measurement is available and appropriate.

Adapted from PJI 4:2; Restatement (Third) of Restitution and Unjust Enrichment § 43 (2010).

<u>Common Law Unfair Competition Against All Defendants</u>

Plaintiffs have also brought unfair competition claims against the Defendants. The essence of a claim for unfair competition is the misappropriation of a commercial advantage belonging to another. Central to this cause of action is that Defendants acted in bad faith. Bad faith is a term used by lawyers that requires more than bad judgment or negligence. It requires a person to consciously commit a wrong because of a dishonest purpose; stated differently a person must have done something "underhandedly" or with "ill will". n1 [*27]

While relief from the infringement of a trademark or trade name does not require a showing that Defendants acted with fraudulent intent to compete unfairly, the question of the Defendants' intent becomes important where, as an alternative to showing confusion or a likelihood of confusion, Plaintiffs seek to instead show that Defendants' use of Pure Power's word, feature, or symbol was with the wrongful intent to capitalize on the goodwill and business established by Pure Power.

To determine whether Defendants acted unfairly to capitalize on good will and business established by Pure Power, you may examine whether the Defendants committed voluntary wrongful acts-actual confusion or deception does not need to be shown. Rather, the inquiry would be whether or not the imitation was calculated to deceive or confuse - not whether actual confusion resulted from Defendants' actions. Therefore, if you find that Defendants acted wrongful in an attempt to confuse the public, by capitalizing on the good will and business of Pure Power, then you must rule for Pure Power. If you do not find this, you must then consider the second scenario that I am about to explain.

If you determine that Plaintiffs' [*28]  demonstrated that Defendants likely caused confusion between Pure Power and Warrior Fitness, or that the two facilities could be mistaken for each other, then you must rule for Plaintiffs.

2010 Jury Instr. LEXIS 1405, *28

In this case Plaintiffs claim that Defendants acted with bad faith when they spoke badly about Pure Power to clients, damaged the Pure Power facility, misappropriated both the labors and expenditures of Pure Power, as well as Pure Power's concepts, Trade Dress and other proprietary information. Plaintiffs also claim that Defendants' acts have caused confusion to the public and/or deceived prospective Pure Power clients in regards to the origin of Warrior Fitness, and that such confusion has harmed Pure Power.

On the other hand, Defendants claim that Warrior Fitness does not emulate Pure Power in any way that can cause confusion, that there is no likelihood of or actual confusion, that it is not an indoor obstacle and confidence course based a marine design but instead is a boot-camp styled gym, modeled after the experiences that Belliard and Fell had during their time as Marines. The Defendants further assert that Warrior Fitness has different equipment and teaching styles as compared to that of [*29]  Pure Power. Defendants also assert that the name "Warrior Fitness" was chosen because Belliard and Fell own the gym are both "warriors" as former marines. In addition, Defendants assert that Plaintiffs do not have protectable trade dress. Plaintiffs copied their allegedly unique concept, design, and layout directly from the United States military and Plaintiffs have already conceded that they cannot stop Defendants from operating their own boot camp gym. Plaintiffs' purported trade dress is also not consistent among its facilities ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***

It is up to you to decide whether the acts complained of are fair or unfair by analyzing all the facts and testimony presented to you during the course of this trial, as well as the law I just provided to you. Testimony and facts you should consider when making your determination include the character and circumstances of the businesses and the nature of the alleged unfair practices.

N.Y. Jur. 2d *Trade Regulation* §§ 196, 198 (2010) (modified).

<u>Conduct of the Defendants</u>

The Court assumes that everyone must be understood to have intended the consequences of his or her own deliberate [*30]  acts, and the intent to deceive can be inferred from all of the circumstances surrounding the use of a trade name or trade dress which it finds to be confusingly similar to one already established.

N.Y. Jur. 2d *Trade Regulation* § 198 (2010) (modified).

<u>Standard for Confusion</u>

When determining whether Warrior Fitness caused market confusion, you must determine whether the similarities between Warrior Fitness and Pure Power would mislead the ordinary observer. This does not mean that you find for Warrior Fitness if an ordinary observer could point out the differences between it and Pure Power when examining the facilities in a side by side comparison. Because people who purchase gym memberships must rely upon their memory when selecting a gym, they arc unable to compare gyms in a side by side fashion like one could with a product on a supermarket shelf. Therefore, if you find that a person - relying on their memory - could confuse the two facilities, then you must rule in favor of Pure Power. R. Callmann on Unfair Competition, Trademarks, and Monopolies § 21:15 (Westlaw) (4th ed. 2010); *Gotham Silk Hosiery v. Reingold, 210 N.Y.S. 38, 39* (1st Dep't 1925). [*31] ***DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE.***

<u>Damages</u>

The measure of damages in a case of unfair competition is the amount which the Plaintiff would have made <u>but for</u> the defendant's wrong, and not the profits received by the defendants. *Suburban Graphics Supply Corp v. Nagle, 5 AD.3d 663, 774 N.Y.S.2d 160,163-64* (2d Dep't 20(4) (citing Michel Cosmetics v. 'I 'irkas, *282 N.Y. 195,200, 6 N.E.2d  16;McRoberts  Protective  Agency  v.  Lansdell  Protective  Agency,  61  A.D.2d  652,  655,403  N.Y.S.2d 511;Bruno Co.* v, *Friedberg, 21 A.D.2d 336, 341,250 N.Y.S.2d 187)* (emphasis added)..

Future lost profits can also be awarded, using approximation, but only if you can make such an approximation on reliable factors and not do so by unduly speculating. You should not consider the profits received by the defendant when awarding damages for common law unfair competition.

2010 Jury Instr. LEXIS 1405, *31

Adapted from *Suburban Graphics Supply Corp. v. Nagle, 1AA* N.Y.S.2d 160, 163 (2d Dep't 2004).

Punitive Damages for Breach for Unfair Competition Claims

Punitive damages are also available for unfair competition claims. In order to award [*32] punitive damages you must find that Defendants' conduct "constituted gross, wanton or willful fraud or other morally culpable conduct to an extreme degree."

*Getty Petroleum Corp. v. Island Transp., 878 F.2d 650, 657 (2d Cir. 1989)*cert. denied,*490 U.S. 1006 (1989)* (internal quotations and citations omitted).

Defendants assort that in light of Plaintiffs' bad faith and wrongful acts in violating federal law by stealing 546 of Defendants' emails, forging Fell's signature to his alleged non-compete agreement, committing trespass, sending spies to Warrior, and menacing Defendants' business by making false reports concerning drug activity at Warrior, advertising for Pure Power outside of Warrior's facility, and attempting to make false reports concerning Warrior's facility with the Department of Buildings, Plaintiffs have no basis to seek punitive damages., ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***

Statutory Trade Dress Infringement Against all Defendants, Including Claims Under GBL § 360,

Another of Pure Power's claims in this case can be classified generally as a trade dress infringement claim. This claim is asserted [*33] based on the Federal Statute called the Lanham Act, and is also part of Pure Power's Unjust Enrichment, Common Law Unfair Competition and Violation of GBL § 360, et. seq. claims. The elements of those claims as they relate to trade dress are essentially the same as under the federal statute so I address all trade dress claims together but I will point out the differences between them.

Trade dress refers to the total image, design, appearance or look of a product, package or even a place of business. Trade dress may include features such as the size, shape, color, texture and graphics, artifacts and other elements of decoration, colors, floor plan, and particular sales techniques. It is the non-functional physical detail and design of the trade dress at issue indicating or identifying the source of the product or service and distinguishing it from those of others.

It is settled law that restaurants, pool halls, wine stores, billiard parlors, gas stations and other kinds of establishments may have a total visual appearance that constitutes protectable trade dress. This includes features such as decor, menu, layout, style of service, equipment used, servers' uniforms and other features [*34] reflecting by total image of the establishment.

Adapted from *Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992);Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 70 (2d Cir. 1994),*cert. denied.*115 S. Ct. 1252 (1995);Stormy Clime Ltd. v. Progroup, Inc., 809 F.2d 971, 974 (2d Cir. 1987);LeSportsac, Inc. v. Kmart Corp., 754 F.2d 71, 75 (2d Cir. 1985);Fuddruckers, Inc. v. Doc.'s B.R. Others, Inc., 826 F. 2d 837, 841 (9th Cir. 2001);Best Cellars Inc. v. Grape Finds At Dupont, Inc., 90 F.Supp. 2d 431 (S.D.N.Y. 2000);Clicks Billiards, Inc. v Six Shooters, 251 F.3d 1252 (9th Cir. 2001);Esso Standard Oil Co. v. Bazerman et al., 99 F. Supp. 983* (E.D.N. Y., 1951). ***DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE.***

Pure Power's trade dress claim is that the overall appearance of the interior of its facility having the combination of features enumerated on is protectable. Pure Power's trade dress is registered with the United States Patent and Trademark Office, under Registration No. 3580542. I instruct you [*35] that the trade dress of Pure Power's facility may be protected only if the overall appearance of the Pure Power facility having this combination of features is protectable. That depends, under Federal law, on whether the trade dress is inherently distinctive or if it has acquired a secondary meaning in the marketplace.

Adapted from *Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992);Knitwaves, Inc. v. Lollylogs Ltd., 71 F.3d 996 (2d Cir. 1995);Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 70 (2d Cir. 1994),*cert. denied,*115 S. Ct. 1252 (1995).*

False Designation of Origin Claim

Under the Federal statutory trade dress claim any person who makes commercial use of any word, term name or symbol or combination thereof (i.e., trade dress), or any false designation of origin, or false or misleading description of fact which is likely to cause confusion or to deceive as to the origin, affiliation, connection or association with another person or as to the origin, sponsorship or approval of his commercial activities by another person, is liable to any person who is or is likely to be damaged by [*36] the use of the trade dress, false designation of origin or false description.

Trade Dress Infringement - Elements of Proof

Under Pure Power's trade dress Federal claims, Pure Power has the burden of proving each of the following by a preponderance of the evidence:

1.  Pure Power began to use its claimed trade dress prior to defendant's use of its trade dress;

2.  Defendant began to use its trade dress in an area where Pure Power was offering its services;

3.  Defendant's use of its trade dress was without the consent of Pure Power;

4.  Pure Power's trade dress is non-functional;

5.  Pure Power's trade dress is inherently distinctive or has acquired secondary meaning.

6.  Defendant's trade dress is likely to cause confusion among ordinary purchasers as to the source of Pure Power's and defendant's services.

I instruct you that Pure Power is the owner of U.S. Trademark Registration No. 3,508,542 which is a registration for its trade dress . As a matter of law, the registration is prima facie evidence of the validity of the trade dress as a trademark and of Pure Power's exclusive right to use that trade dress.

Unfair Competition

Plaintiff's [*37]  New York state unfair competition claim is based on the alleged likely confusion generated in the marketplace by consumers of defendant's services believing that they are being provided by Pure Power or sponsored or approved by Pure Power.

The law of unfair competition serves to protect the public from being misled as to the nature, quality and source of the services they buy, and also protects the property rights of a business to identify itself and its services to the public. The essence of the wrong consists of the sale of the services of one vendor for those of another. Therefore if you find that the defendants committed trade dress infringement you must find that they engaged in unfair competition with Pure Power.

*Hanover Star Milling Co v. D.D. Metcalf,* 2400 S. 403, 412-413 (1916); *American Footwear Corp. v. General Footwear Co., 609 F.2d 655, 664 (2d. Cir. 1979).*

Functionality

Trade dress protection extends only to design features that are not functional; functional features are those that are essential to the use or purpose or an article of place of business,

*Qualitiex Co. v. Jacobson Prods. Co., Inc., 514 U.S. 159, 165 (1995);* [*38] *Inwood Laboratories, Inc. v. Ives Laboratory, Inc., 456 U.S. 844, 850 (1982).*

The fact that individual elements of the trade dress are functional, however, does not necessarily mean that the trade dress as a whole is functional; rather functional elements that are separately unprotectable can be protected together as part of a trade dress. *Le Sportsac, Inc. v. K. Mart Corp., 754 F.2d 71, 76 (2d Cir. 1985).*

Therefore, the focus is not on the individual elements, but rather on the overall visual impression that the combination and arrangement of these elements create. *Click Billiards, Inc. v. Six Shooters, Inc., 251 F.3d 1252, 1259 (9th Cir. 2001).*

Inherent Distinctiveness

In determining whether the trade dress of Pure Power's facility is protectable, you should first consider whether the trade dress is inherently distinctive. A trade dress is inherently distinctive if the overall design, having this combination of features, is such that customers and prospective customers who might use such a facility are likely to regard that appearance as indicating primarily that the services provided in a facility having the appearance are [*39] provided by a particular source, even without regard to whether that design has been advertised or otherwise associated with a particular company through the manner in which it has been presented to the marketplace. This is to be distinguished, for example, from buyers and prospective buyers thinking of the appearance as simply a style of exercise facility that would be provided by a number of different sources. *Kruger Int'l, Inc. v. Nightingale, Inc., 915 F. Supp. 595, 603 (S.D.N.Y. 1996)*

In deciding this question, there are a number of factors that you should consider.

First, you should take into account whether the overall appearance of Pure Power's exercise facility having this combination of features, is striking or unusual. If the appearance is striking or unusual, people are more likely to regard it as indicating a facility operated by a particular source than if it is commonplace or an insignificant variation on other designs used by other facilities.

Second, you should consider whether the combination of features of the Pure Power facility is the sort of combination of features that people are likely to regard as indicating that facilities with this appearance [*40] are provided by a particular source as opposed, for example, to being part or parcel of a conventional exercise facility.

The third factor you should consider is how likely it is that the primary significance of the combination of features of Pure Power's trade dress that make it unusual, if you think it is unusual, is to identify the source of the services provided in such a facility. In other words, when people look at exercise facilities with the combination of features used in Pure Power's trade dress, are they likely to think that the appearance of the facility, taking into account all of their particular features, primarily indicates that the services provided these come from a particular company? Or, are they likely to regard the design as perhaps desirable, but something that is not uniquely associated with a single source?

If, on considering all of these factors and all of the evidence in this case, you conclude that Pure Power has proved, by a preponderance of the evidence, that the overall appearance of Pure Power's trade dress is such that customers and prospective customers of the facility are likely to regard that appearance as indicating primarily that the services [*41] provided there come from a particular source, you will find that Pure Power's trade dress is inherently distinctive, and therefore are a protectable trade dress. Otherwise, you must go on to consider whether the Pure Power trade dress has acquired a secondary meaning in the marketplace.

Adapted from *Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992);* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 13 cmt. e (1995); see *Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996 (2d Cir. 1995);Duraco Prods. v. Joy Plastic Enter.. Ltd., 40 F.3d 1431 (3d Cir. 1994);Seabrook Foods. Inc. v. Bar-Well Foods, Ltd., 568 F.3d 1342, 1344 (C.C.P.A. 1977).*

Secondary Meaning

The expression "secondary meaning" means that the appearance or trade dress of a commercial establishment such as a restaurant or exercise facility through use, may come to be uniquely associated with a single source even if the trade dress itself is not inherently distinctive. In other words, if people seeing a facility with a particular trade dress would conclude, given not only the appearance, but all of the circumstances relating to the history of

the [*42] services provided, that the services came from a particular source, then that trade dress has which is called secondary meaning. This does not mean that consumers actually must know the name of the source, but the primary significance of the trade dress must be to identify the source of the product rather than the product itself.

*Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992);* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 13 cmt. e (1995); *Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118 (1938);*815 *Tonawanda Steel Corp.v. Fays Drug Co., Inc., 842 F.2d 643, 647 (2d Cir. 1988).*

The factors for determining whether Pure Power's trade dress has acquired a secondary meaning in the marketplace under Federal law are (1) the extent to which Pure Power has advertised its services, the appearance of its facility, and the manner in which it has done so; (2) the extent to which Pure Power has been successful in selling its services in such a facility; (3) the extent and the nature of any unsolicited media coverage focusing on the facilities' distinctive look; (4) whether and to what extent the Defendants or others attempted [*43] to copy Pure Power's trade dress; and (5) the length of time that Pure Power has used its trade dress and whether its use has been substantially exclusive.

Adapted from *Centaur Comms, Ltd. v. A/S/M Comms, Inc., 830 F.2d 1217, 1221-1223, 1225, 1228 (2d Cir. 1987);Merriam-Webster, Inc. v. Random House, Inc., 26 U.S.P.Q.2d 1161 (S.D.N.Y. 1993);* Burton, *Jury Instructions In Intellectual Property Cases,* § 30:55:51; *Best Cellars Inc. v. Grape Finds at Dupont, Inc., 90 F.Supp. 2d 431, 451 (S.D.N.Y. 2000).*

I remind you that no single factor is determinative and every element need not be proved. In essence, you may consider all the evidence which would lead you to believe, or not to believe, that consumers have come to associate the Pure Power trade dress at issue in this case with a single source. If you find that Pure Power has proved by a preponderance of the evidence that its trade dress identifies services that originate with a single source (even if the source name is not known) then secondary meaning has been established.

*George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 23 U.S.P.Q.2d 1351 (2d Cir. 1992);* [*44] *Thompson Medical Co., Inc. v. Pfizer, Inc., 753 F.2d 208, 217 (2d Cir. 1985);* Burton, *Jury Instructions In Intellectual Property Cases,* § 30:30:02.

If you find that Defendants deliberately attempted to copy Pure Power's trade dress in order to capitalize on Pure Power's good will, that fact supports a finding that the Pure Power trade dress has acquired secondary meaning.

*Merriam-Webster, Inc. v. Random House, Inc., 26 U.S. P.Q. 2d 1161 (S.D.N.Y. 1993);Centaur Comms Ltd. V. A/S/M Comms, Inc., 830 F.2d 1217, 1228 (2d Cir. 1987).*

If you find that Pure Power has established by a preponderance of the evidence either that its trade dress is inherently distinctive or that it has acquired a secondary meaning, then you will have found that the Pure Power's trade dress is protectable under Federal law. If you find instead that Pure Power has failed to establish that the trade dress is protectable because it is neither inherently distinctive nor has it acquired a secondary meaning in the marketplace, then you have found that the trade dress is not protectable under Federal law and you must find for defendants.

Secondary Meaning [*45]  - New York Law

Under Plaintiffs' New York law of unfair competition, however, Plaintiffs are not required to prove secondary meaning in order to obtain relief from infringing trade dress.

*Perfect Fit Indus, Inc. v. Acme Quilting Co., Inc., 618 F.2d 950, 952 (2d Cir. 1980);Florence Mfg. Co. v. J.C Dowd & Co., 178 F. 73, 75 (2d Cir. 1910).*

Relief has been granted under New York law to insure that one may not misappropriate the results of the skill, expenditure and labors of a competitor. New York law grants relief on the theory of the misappropriation of a

property right or a commercial advantage of another, particularly where the defendant's conduct has involved a clear attempt to profit at the expense of plaintiff. Under New York law such conduct has been deemed to be unfair competition despite the fact that plaintiffs' trademark or trade dress has not acquired secondary meaning.

*Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774 (2d Cir. 1964),* cert. denied, *380 U.S. 913(1965)*

Likelihood of Confusion

If you find that Pure Power's trade dress is protectable under Federal law or New York [*46]  law then you must consider whether ordinary and prudent consumers were likely to be confused as to the source of Warrior Fitness' services. That is, will such consumers likely be confused into believing that, because of the overall appearance of the Warrior Fitness facility, Warrior Fitness' services were provided, sponsored by, approved or authorized by Pure Power.

Confusion - Factors

There are a number of factors you should consider in making the determination whether there is likely to be confusion as to the origin of the Warrior Fitness' services based on its facilities' appearance.

1. First, you should consider the distinctiveness or lack of distinctiveness of the Pure Power trade dress that you found protectable and the extent to which Pure Power's services provided in facilities having that trade dress are recognized as coming from a single source.

2. Second, you should consider any physical similarity between the protectable trade dress of Pure Power and the overall appearance of Warrior Fitness' facility.

3. The third factor is the proximity or closeness of the services provided by both parties in the marketplace.

4. The fourth factor is the quality [*47]  of Pure Power's services.

5. The fifth factor is whether there is any direct evidence of actual confusion among consumers.

6. The sixth factor is the level of sophistication of the typical consumer of fitness or exercise training services and whether it was such that the consumers were likely to distinguish between Warrior Fitness' services and Pure Power's services.

7. A seventh factor that you should consider in determining whether there is likely confusion is whether the Defendants acted in good faith or bad faith in creating and offering its services in its facility.

*Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495* (2d Cir.), *cert. denied,* *368 U.S. 820 (1961);George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532 (2d Cir. 1992).*

I will now explain each of these factors in greater detail.

Factor No. 1 - Distinctiveness of the Trade Dress

The first factor I mentioned is the distinctiveness or lack of distinctiveness of the Pure Power's trade dress and, under Federal law, the extent to which Pure Power's services are associated with a single source based on that trade dress. This means that [*48]  you can consider, among the other evidence you think relevant, the extent to which people recognize the Pure Power trade dress and associate it with a single source.

If you find that an appreciable number of consumers will associate it with a single source, then this factor weighs in favor of Pure Power. On the other hand, if you find that the Pure Power trade dress is not associated with a single source, then this factor, under Federal law, weighs in favor of the defendants.

Again under New York law this concept of secondary meaning is not applicable.

Factor No. 2 - Similarity of Trademarks and Trade Dress

2010 Jury Instr. LEXIS 1405, *48

The second factor that you are to consider is the extent, if any, to which the overall appearance of the Warrior Fitness facility is similar to Pure Power's trade dress. The test of consumer confusion is not whether the products or facilities can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general overall impression. *RJR Foods, Inc. v. White Rock Corp., 603 F.2d 1059, 1060 (2d. Cir. 1979).*

If you find that there is substantial similarity between the trade dress of Pure Power and Warrior Fitness,  [*49]  then this factor weighs in Pure Power's favor. If you find that there is no substantial similarity, or only a general similarity, then this factor weighs in favor of the defendants.

Factor No. 3 - Proximity in the Marketplace

The third factor is the proximity of the parties' services in the marketplace and the extent to which they appeal to the same universe of purchasers. In considering this factor, you may take into account the kinds of customers to which Pure Power and the Defendants sell their respective services, the prices at which they sell them, and any other factors which in your judgment bear upon whether prospective customers may be confused. The closer you find these services to be in the marketplace, the more this factor weighs in favor of Pure Power The more disparate you find these services, the more this factor weighs in favor of defendants.

Factor No. 4 - Quality of the Defendants' Services

The fourth factor you should consider in determining whether there was likely to be confusion is the quality of the Warrior Fitness services. If you find that there is a marked difference in quality between the Pure Power services and the Warrior Fitness services, then [*50]  this factor weighs in favor of Warrior Fitness.

Factor No. 5 - Evidence of Actual Confusion

The fifth factor to consider is whether there is any direct evidence of actual confusion among consumers. Actual confusion means that people actually believed that the Warrior Fitness services and/or facility were from the same source as Pure Power's services and facility or were sponsored or approved by Pure Power.

In considering this factor, you may consider specific instances of confusion, if any, that Pure Power has proved, including who was confused or deceived and the nature of any confusion experienced.

Generally, specific instances of actual confusion weigh in favor of Pure Power and little or no evidence of actual confusion weighs in favor of the defendants.

Factor No, 6 - Sophistication of the Consumers

The sixth factor you should consider in determining whether there was a likelihood of confusion is the sophistication of the consumers in the relevant market. Sophistication in this context does not mean the education or training of the customer. Rather, it means the ability of the customer to distinguish between the Warrior Fitness trade dress and that of Pure Power.  [*51]  If you find that consumers do not have the level of sophistication that would lead them to make that distinction, then this factor weighs in favor of Pure Power. If you find that they do have this level of sophistication, this weighs in favor of defendants.

Factor No. 7 - Existence of Good Faith or Bad Faith

The seventh factor that you should consider in determining whether there is a likelihood of confusion is whether the defendants acted in good or bad faith in creating, designing and adopting the Pure Power facilities' overall appearance or trade dress.

If you find that the defendants intended to confuse consumers by adopting their facilities' overall appearance and trade dress to use in providing their services, or that the defendants intentionally copied Pure Power's trade dress, then this would constitute evidence of bad faith. If you find that the defendants acted in bad faith, then this is

significant evidence of likelihood of confusion and would weigh in Pure Power's favor. ***DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE.***

Balancing the Factors

You may find that some of these factors favor Pure Power while other factors favor the defendants. In determining [*52] whether there was likely confusion, you must consider and weigh all of the factors that I have just described to you, as well as any other factors that you think are helpful. No one factor is determinative of whether there was confusion. Different factors may weigh more heavily than others, depending on your consideration of the facts and circumstances of this case. *See* Nikon Inc. v. Ikon Corp., 987 F.2d 91, 96 (2d Cir. 1993).

An Appreciable Number

Let me say also a word about what I mean in saying that Pure Power must prove, by a preponderance of the evidence, that an appreciable number of ordinarily prudent consumers were likely to be confused. Proof that only a few people were likely to be confused is not enough. On the other hand, it is up to you to decide, if you find that there was likely to be confusion, whether the number of people likely to be confused was appreciable.

Ordinarily Prudent Consumers

I have used the phrase "ordinarily prudent consumers." In using that phrase, I mean people who shop with ordinary care and attentiveness. Ordinarily prudent consumers are neither overly attentive not overly inattentive.

Intent or Knowledge as Evidence [*53] of Confusion

There is one other point that I want to make to you about the defendants' intent and knowledge insofar as it bears on the issue of confusion. If you find that the defendants adopted their trade dress knowing or believing that people were likely to think that their facility was provided by Pure Power, or sponsored or associated with it then you may, conclude from that fact alone that confusion occurred.

Paddington Corp. v. Attiki Importers & Distrib., 996 F.2d 577, 586-87 (2d Cir. 1993); 2 J. McCarthy, *McCarthy on Trademarks* § 23.32[2].

Such conscious imitation of a plaintiffs' trade dress supports at least a presumption that the similarity will cause consumer confusion.

RJR Food, Inc. v. White Rock Corp., 603 F.2d 1058, 1060;Harold F. Ritchie, Inc. v. Chesebrough-Ponds, Inc., 281 F.2d 755, 758-759 (2d Cir. 1960).

Under New York law, when a second comer in a market has for no reason he can assign, plagiarized the "make up" of an earlier comer, even if he adds difference that he thinks **will** prevent diversion, New York courts are content to accept his "forecast" that he is likely to succeed in [*54] causing confusion, ***DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE.***

Am. Chicle Co. v. Topps Chewing Gum, Inc., 208 F. 2d 560, 563 (2d Cir. 1944)(J. Hand), *cert. denied,*323 U.S. 715 (1944).

Intent - Willful Deception

An intention to compete or an intention to imitate Pure Power's trade dress alone is not sufficient to establish willful deception. Willful deception exists only if the defendants not only copied the trade dress, but deliberately intended to cause confusion as to the source of sponsorship or association of their services with Pure Power.

In considering whether the defendants deliberately intended to create confusion as to source, you may take into account the entire manner in which the Warrior Fitness facility was designed and constructed in terms of its overall appearance and any other relevant evidence. In sum, you should consider the overall presentation of the facility.

2010 Jury Instr. LEXIS 1405, *54

Intent - Corporate Party's Agents and Employees

I instruct you also - and this applies to all questions relating to the knowledge, belief, or intent of the defendants - that a corporation may act only through its agents or employees. Any [*55] agent or employee of a corporation may bind the corporation by his or her acts and declarations made while the agent or employee is acting within the scope of his or her authority delegated by the corporation or within the scope of his or her duties as an employee or agent of the corporation. I instruct you that the knowledge or intent of an agent or employee may be attributed to the corporation if the agent or employee is acting with the knowledge of the corporation or within the scope of the agency or employment. 3 Devitt, Blackmar & Wolff § 71.09.

Scope of Confusing Similarity

A competitive business, once found to have committed an act of unfair competition, may thereafter be required to keep a safe distance away from the margin line even if that requirement involves a handicap as compared with those who have not disqualified themselves. *U.S. v. Leo's, Inc., 371 U.S. 38, 53 (1962);Broderick Boscom Rope Co. v. Manoff, 41 F.2d 353, 354 (6th Cir. 1930).*

Therefore the phrase "confusingly similar" may be construed so broadly as to prohibit the use not only of the defendant's originally selected trade dress but also efforts by the defendant to [*56] retain at least part of the goodwill originally misappropriated from plaintiff.

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 705 (5thCir. 1981);Kentucky Fried Chicken Corp. v. Diversified Packaging, 549 F.2d 368, 3901 (5th Cir. 1977).*

Pure Power's New York Law Trade Dress Claims

As I mentioned before, plaintiff asserts that the use of Warrior Fitness' accused trade dress constitutes unfair competition and trade dress infringement under the common law of New York. By common law I simply mean the law of New York State as developed by court decisions as opposed to laws enacted by New York State Legislature. Unfair competition in this context is intended to protect against any attempt to misappropriate by deception or confusion the results of the skill, expenditures and labors of another.

If you concluded earlier that plaintiffs' trade dress was not infringed by defendants because plaintiff's trade dress had not acquired secondary meaning under Federal law, plaintiffs may still prevail on their New York State unfair competition claim if you find that defendants have in bad faith misappropriated the labors and expenditures [*57] of plaintiff with the intent to benefit from plaintiff's goodwill and there exists a likelihood of confusion as to the source of defendants' services. Plaintiff need not prove that its trade dress has acquired meaning to prevail on this claim.

Adapted from: *Imagineering Inc. v. Van Klassens Inc., 31 U.S.P.Q.2d 1119 (S.D.N.Y. 1994),affd34 U.S.P.Q.2d 1526 (Fed. Cir. 1995);Ttipledge Prods, Inc. v. Whitney Res. Ltd. 735 F. Supp 1154 (S.D.N.Y 1990)* Burton, Jury Instructions In Intellectual Property Cases, § 30:27:41.

New York State Trademark Dilution

Additionally, you must separately consider whether defendants have engaged in dilution of Pure Power's trade dress rights under New York General Business Law § 368-d. You must make such a finding if you determine that defendants' behavior created a likelihood of injury to plaintiff's business reputation or of dilution of the distinctive quality of plaintiffs' trade dress. New York General Business Law § 368-d.

The New York antidilution statute applies to competitors and non competitors, and explicitly does not require plaintiff to prove likelihood of consumer confusion as [*58] to source. N.Y.S.G.B.L. § 368-d; *Deere & Co. v. MTD Prods, Inc., 41 F.3d 39 (2d Cir. 1994).*

The interest protected by this section is the selling power that a distinctive trade dress with favorable associations has engendered for a product or service in the mind of the consuming public.

2010 Jury Instr. LEXIS 1405, *58

*Sally Gee Inc. v. Myra Hogan, 699 F.2d 622 (2d Cir. 1983).*

Dilution is the adverse effect upon the value of a senior user's mark or trade dress and refers to the loss of distinctiveness of the trade dress, and a weakening of the trade dress' propensity to bring to mind a particular service, resulting from the junior user's continuing use of similar trade dress.

*Spring Mills, Inc. v. Ultracashmere House, Ltd., 532 F.Supp. 1203 (S.D.N.Y. 1982);Olympic Prison v. U.S. Olympic Comm., 489 F.Supp. 1112 (S.D.N.Y. 1980).*

Damages

Under the Lanham Act there are two types of monetary recovery which you the jury can provide to a prevailing plaintiff. They are:

1. An award to the plaintiff of the defendants' profits; or

2. An award to the plaintiff measured by its actual business damages and losses caused by the defendants' [*59] wrongful conduct, including plaintiffs' own lost profits.

Authority: Cited from *Merriam-Webster, Inc. v. Random House, Inc., 26 U.S.P.Q.2d 1161 (S.D.N.Y. 1993);* Burton, *Jury Instructions In Intellectual Properly Cases,* § 30:80:01.

If you, the jury, find that Warrior Fitness infringed Pure Power's trade dress or unfairly competed with Pure Power and you also found that any one of the following three situations to be supported by a preponderance of the evidence, the you may properly award Pure Power defendants' profits from their sale of Warrior Fitness' services using the:

1.   that defendants unjustly benefitted from their use of the Pure Power trade dress;

2.   that Pure Power sustained damages as a result of defendants' use of Pure Power trade dress; or

3.   that defendants willfully intended to deceive or cause confusion by their use of the Pure Power trade dress.

To receive an award of defendants' profits, Pure Power need not prove that it has lost any sales as a result of defendants' infringement.

See, *15 U.S.C. § 1117,Brooks Bros. v. Brooks Clothing of California, Ltd., 60 F. Supp. 442 (S.D. Cal. 1945),* [*60] aff'd, 1548 F.2d 798 (9thCir. 1947);*Mater Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117 (9thCir. 1968);Foremost-McKesson, Inc. v. Trojan Distrib. Co., Inc.* CA No.C-71-1153 RHS (N.D. Cal. 1973); Burton, *Jury Instructions In Intellectual Property Cases,* § 30:82:13.

There are three purposes for which you may make an award of defendants' profits:

1.   to compensate Pure Power for its injury;

2.   to prevent unjust enrichment on the part of Warrior Fitness from their unlawful actions, if any; and

3.   to deter willful infringement if you find the defendants acted willfully and violated Pure Power's rights.

If you determine such an award is appropriate, then you should award Pure Power defendants' net profits from their importation and sale of their services.

In proving a dollar amount with respect to defendants' profits, Pure Power need only prove the dollar amount of sales of Warrior Fitness' services. Defendants bear the burden of proving any deduction, and no deduction may be allowed for any costs unless proven by the defendants by a preponderance of the evidence. If you find that defendants failed to meet their burden [*61]  of establishing their costs, then you must award Pure Power the full amount of defendants' sales.

2010 Jury Instr. LEXIS 1405, *61

*Merriam-Webster, Inc. v. Random House, Inc., 26 U.S.P.Q.2d 1161 (S.D.N.Y. 1993);* Burton, Jury Instructions In Intellectual Property Cases, § 30:82:31.

Any doubt as to the computation of deductible costs or profits is to be resolved in favor of plaintiff.

*Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966 (2d Cir. 1985).International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749 (2d Cir. 1996);George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532* (2d Cir.), *cert. denied.113 S.Ct. 510 (1992).*

Under the Lanham Act's grant of discretion, it is proper to estimate lost profits of the Plaintiff, even where the infringer lost money, because the Plaintiff should not be prejudiced by Defendant's inefficiency.

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738 (2d Cir. 1985).*

Punitive Damages

In addition to actual damages as we just discussed, the law permits the jury under certain circumstances to award a plaintiff punitive [*62]  or exemplary damages in order to deter a defendant and others from committing infringing acts. In order to award such punitive damages, you must find from a preponderance of the evidence that defendants' conduct was willful and deliberate.

An act is willfully done if it is done knowingly, voluntarily and intentionally, and not because of mistake or accident.

If you find that defendants' infringing acts were willful, you may award, if you deem it proper to do so, such sum as you deem appropriate. You must keep in mind that the purpose of awarding punitive or exemplary damages is not as compensation to plaintiff for wrong done, but to punish a wrongdoer for some extraordinary conduct and to serve as an example or warning to others not to engage in such conduct. You also may award punitive damages against certain defendants and not all defendants if you find that the conduct of certain defendants was willful and the conduct of others was not willful.

Burton, *Jury Instructions in Intellectual Properly Cases,* § 30:83:01.

Defendants assert that in light of Plaintiffs' bad faith and wrongful acts in violating federal law by stealing 546 of Defendants' emails, forging Fell's signature [*63]  to his alleged non-compete agreement, committing trespass, sending spies to Warrior, and menacing Defendants' business by making false reports concerning drug activity at Warrior, advertising for Pure Power outside of Warrior's facility, and attempting to make false reports concerning Warrior's facility with the Department of Buildings, Plaintiffs have no basis to seek punitive damages..

In determining the amount of punitive damages reasonably necessary to punish defendants, you may consider testimony as to their net worth. However, it is the defendants' burden to show by a preponderance of the evidence that their financial circumstances warrant a limitation of the award.

Source: *Smith v. Lightning Bolt Prods, Inc., 861 F.2d 363, 373 (2d Cir. 1988).*

Therefore, before you can limit an award of punitive damages based on a finding that a higher amount would result in financial ruin to a defendant, that defendant must show, by a preponderance of the evidence, that the award would have such an effect.

Finally, the defendants in this Action are joint tortfeasors and are jointly and severally liable for any damages awarded herein. Joint and several liability was designed [*64]  so that a plaintiff does not have the burden of proving which share of the injury each of the defendants was responsible for. defendants have the burden of denying all liability or proving that the injury is divisible and how the damages should be apportioned among them. 1 J.D. Lee and B.A. Lindahl, *Modern Tort Law Liability and Litigation,* § 19.02-19.04 (Rev. Ed. 1994).

2010 Jury Instr. LEXIS 1405, *64

Copyright Infringement Against All Defendants

We turn now to the claim by Pure Power that Warrior Fitness has infringed the copyrights in certain of Pure Power's documents including its operation manual, startup manual, Business Plan and Camp Brochure.

The Nature of Copyright

In General

"Copyright" is the name for the protection that the law extends to an author of an original work against the unauthorized appropriation of that work by others. You are probably accustomed to hearing the word "author" used for writers. But under the copyright law, any creator of an original work is referred to as the author. That is the term we use in the copyright law for the creator of an original work.

*Baxter v. MCA, Inc., 812 F.2d 421, 2 U.S.P.Q2d 1059 (9th Cir. 1987);Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 54, 222 U.S.P.Q 951 (2d Cir. 1984).* [*65]

Constitutional Basis for a Copyright

The authority for the copyright laws is contained in the United States Constitution, which grants Congress the right to make laws giving an author control over the uses which someone else makes of his or her work.

The Constitution also states that the purpose of the copyright laws is, "to promote the progress of science and the useful arts."

The framers of our Constitution believed that individuals would be encouraged and should be encouraged to pursue creative work, which would then benefit all of us, and that this could be done if the law gave them a limited or reasonable monopoly over uses which could be made of their works.

The control which authors exercise over their works is limited in a number of ways. For example an author cannot own a work in perpetuity. Copyright is, therefore, limited by duration of time.

*U.S. Constitution, Art. I 8; Mazer v. Stein, 347 U.S. 201, 219 (1954);Rosemont Enterprises. Inc. v. Random House, Inc., 366 F.2d 33 (2d Cir. 1966),cert denied,385 U.S. 1009 (1967);*Meerpool v. Nizer, 560 F,2d 1061 (2d Cir. 1977),*Cert. denied,* [*66] *434 U.S. 1013 (1978);Roy Export Co. v. Columbia Broadcasting System. Inc., 503 F.Supp. 1137, 208 U.S.P.Q. 580 (S.D.N.Y. 1980), 673 F.2d 1045, 215 U.S.P.Q. 289 (2d Cir. 1982).*

Copyrightable Works

Copyright protection is granted under the Copyright Law to original works of authorship fixed in any tangible medium of expression. This includes literary works, pictorial, graphic and sculptural works. Thus, just like the author of a book, any author who creates a new written work, such as a business plan, an operations or startup manual - or even an advertising brochure - has the exclusive ownership of his original expressions against all persons, except one who independently creates the same or similar design.

*17 U.S.C. § 102.Roy Export Co. v. Columbia Broadcasting System, Inc., 503 F.Supp, 1137, 208 U.S.P.Q. 580 (S.D.N.Y. 1980), 673 F.2d 1045, 215 U.S.P.Q. 289 (2d Cir. 1982).*

Definition of Copyright

A copyright is the grant of the exclusive right to copy. The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, or using the work covered by the copyright [*67] for a specific time.

The copyrighted work must be original.

A copyright owner may enforce the right to exclude others from copying the copyrighted work in a copyright infringement action.

The term "derivative work" means any form of the originally copyrighted work of the author in which the original material is used as in an abridgment or condensation or in which it is recast, transformed or adapted, or which consists of editorial revisions, elaborations or other modifications even where such changes themselves represent an original work of authorship.

*11 U.S.C.A. § 103*(b), *Stewart v Abend, 495 U.S. 207 (1990);* Federal Jury Practice And Instructions, Fifth Ed., Vol 33 §§ 160.01, 160.02, 160.42

Elements of Plaintiffs' Copyright Infringement Claim

In order to prevail on its copyright infringement claim Pure Power must prove that:

1.  Pure Power is the author and/or owner of the three copyrighted works it is asserting in this case;

2.  the works are original; and

3.  Warrior Fitness infringed the copyrighted works by copying it.

To prove infringement Pure Power must show that Warrior Fitness copied the works [*68]  (or one or more of them) or that it has access to the copyrighted works and that there are substantial similarities between Warrior Fitness' works and Pure Power's.

How Copyright Is Obtained

Copyright automatically exists in a work the moment it is created. The owner of the copyright may register the copyright by delivery to the Copyright Office of the Library of Congress a copy of the copyrighted work. After a determination that the material deposited constitutes copyrightable subject matter and that the legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a Certificate of Registration. *17 U.S.C. § 408.*

Ownership of Copyright

Pure Power's Certificates of Registration are what is called prima facie evidence of the element of ownership. That means, if there is no evidence against Pure Power on that element, the registration alone would be sufficient to establish that element.

*Aldon Accessories Ltd. v. Speigel, Inc., 738 F.2d 548, 222 U.S.P.Q. 951 (2d Cir. 1984).*

Employer Owns Copyright in Employee's Work

Where an employee creates something as part of his duties under this [*69]  employment, whatever he creates is his employer's property unless there is an express agreement to the contrary.

*Zahler v. Columbia Pictures Corp., 180 Cal. App 2d 582 4 Cal. Rptr. 612 (1960);Nelson v. Radio Corporation of Am., 148 F.Supp. 1 (1957).*

You are to determine whether Pure Power's documents were created by an "employee" of Pure Power. If those documents were created by an employee, then the copyrights for them are the exclusive property of Pure Power. **_DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE._**

*Community for Creative Non-Violence v. Reid, 490 U.S. 730, 742 n.8, 743, 751-52 (1989).*

Originality

2010 Jury Instr. LEXIS 1405, *69

Originality is independent creation or individuality of expression rather than novelty. Originality of even the slightest degree, even if it amounts to no more than rearrangement of age-old ideas is sufficient.

*Fred Sanford v. CBS Records, 594 F.Supp. 713, 225 U.S.P.Q. 136 (N.D. Ill. 1985).*

The level of originality and creativity that must be shown is minimal, only an unmistakable dash of originality need be demonstrated; high standards of uniqueness in creativity are dispensed [*70] with.

*Wiessman v. Freeman, 868 F.2d 1313, 1321* (2d Cir.), *cert. denied,493 U.S. 883 (1989).*

Under the copyright law, originality means that the work was independently created by the author and not copied from other works. Pure Power's work might resemble other works, but if the author conceived his or her work or at least significant parts of it independently, then that work is original.

To find for Pure Power on this element you must find that its copyrighted documents were independently conceived by Pure Power or one of its employees, and not simply copied from some preexisting source. The author may look at other works for ideas or for inspiration, but if the author copies the other works, the author's work is not original, and he or she may not obtain a lawful copyright; or the copyright, if it is obtained, is not to be considered a valid copyright.

However, the work need not be completely, entirely original. It may include or incorporate elements taken from prior works, even from works in the public domain. If the author has done more than simply copy them, for example by recombining existing works, such work may still be protected by [*71] copyright. If you find that Pure Power's work involves variations on existing works, then the copyright protection extends, but only to the elements of the work that are original in Pure Power's documents.

*Test Publications, Inc. v. Dural Tel. Service Co., 499 U.S. 340, 344-45;Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548, 222 U.S.P.Q. 951 (2d Cir. 1984).*

Testimony Offered

Pure Power contends that its copyrighted documents are original and Warrior Fitness contends they are not. Lauren Brenner testified that she created the documents which were new creations based on other documents but including new text and reorganization.

If you believe her testimony, you may properly find that the documents at issue are original.

*Aldon Accessories Ltd. v. Speigel, Inc., 738 F.2d 548, 222 U.S.P.Q. 951 (2d Cir. 1984).*

Prima Facie Evidence

Pure Power has introduced in evidence Certificates of Registration of Claim of Copyright, These certificates create a presumption that Pure Power's copyrighted documents are original and copyrightable.

*Miller v. Universal City Studios, Inc., 200 U.S.P.Q. 232 (S.D. Fla. 1978).* [*72]

Works Including Old Matter

The copyright laws protect not only original works but also reproductions of works in the public domain in different adaptations, arrangements or mediums of expression, and such protection extends to the old and new matter in combination.

*Allegrini v. DeAngelis, 59 F.Supp. 248 (1944)aff'd,149 F.2d 815 (3d Cir. 1945)*

Copyright Validity

2010 Jury Instr. LEXIS 1405, *72

Warrior Fitness contends that Pure Power's documents incorporate features of some undisclosed preexisting works and that Pure Power withheld information about such preexisting works from the Copyright Office.

Assuming you find that the creator of Pure Power's documents was influenced by some preexisting works, such borrowing of ideas does not deprive Pure Power's works of their presumption of copyright validity. It is not necessary for an author to acknowledge to the Copyright Office sources of influence. Absent intent to defraud and prejudice, inaccuracies in a copyright registration do not bar actions for infringement.

*Apple Computer Inc. v. Microsoft Corp., 759 F.Supp. 1444, 1454,* reconsideration granted on other grounds, *779 F.Supp. 133 (N.D. Cal. 1991).* [*73]

In a copyright application there is no need to disclose preexisting works if there has been no copying of protectable expression from such works.

Declaration of Register of Copyrights, filed in *Ashton-Tote Corp. v. Fox Software, Inc., 760 F.Supp. 831 (CD. Cal. 1990),* rescinded by Order dated *April 18, 1991, 1991 U.S. Dist. LEXIS 6577.*

Only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid and thus incapable of supporting an infringement action.

*Eckes v. Card Prices Update, 736 F.2d 859 (2d Cir. 1984).*

Infringement

Section 101(b) of Title 17 of the United States Code states, in part:

> If any person shall infringe the copyright in any work protected under the copyright laws of the United States, such person shall be liable;

to the copyright owner for all damage suffered, and to pay profits from sales made by the infringer.

*Celebrity, Inc. v. A & B Instrument Co., 573 F.2d 11, 197 U.S.P.Q. 523 (10th Cir. 1978),* cert. denied, *200 U.S.P.Q. 64 (1978).* [*74]

Copying

A plaintiff cannot win unless it can prove that its work was copied. How does a plaintiff go about establishing such proof? Copying can, of course, be proved by the admission of the copier, someone who takes the stand and say "Oh, yes, I was an employee of the defendants in a particular case and I was told to create this work, and the way I did it is by copying. I copied the plaintiff's document." That is one way in which it could be proved.

In this case one of defendant's witnesses admitted making an electronic copy of Pure Power's documents. But most frequently proof of that nature is not available in copyright cases.

In this case Warrior Fitness also contends that what ultimately was contained in its printed materials was not material copied from Pure Power's documents. In such situations circumstantial evidence is often resorted to in copyright cases in an effort to show that copying has occurred. What circumstantial evidence would mean here is the proof of facts that would support a logical inference that copying must have taken place. Among the significant circumstances for you to consider in considering this kind of question, are these issues:

1. Did the accused [*75]  copier have access to the Plaintiffs' work, i.e. did Warrior Fitness have access to Pure Power's documents?

2010 Jury Instr. LEXIS 1405, *75

2. Are there similarities between the Warrior Fitness documents and Pure Power's copyrighted documents? If so, are those similarities of such nature that suggest an improbability that such similarity could have occurred without copying?

If you find, considering all those circumstances, that there is a greater likelihood that copying has taken place, after considering all of these circumstances, Pure Power has sustained its burden of proof on that particular issue. There is no fixed rule about how strong the proof on any of those elements or questions must be for you to infer that copying took place.

As with all circumstantial evidence, you must use your common sense. That is what circumstantial evidence is all about: common sense. The strength required of any one element or the strength of the proof on any one of those questions depends in a way on the strength of the others. If the degree of similarity between the two works is overwhelming and the similar elements are of such an unusual or distinct nature that it is unlikely that someone else would have dreamed them up on [*76]  his own or arrived at them in any way other than by copying, and if there is no apparent other source for those similar elements than the plaintiff's work, a strong case of copying would be made by reason of those similarities, even without very convincing proof of the defendant's access to the plaintiff's work.

On the other hand, the more convincing the proof of access by the assumed copier to the plaintiff's work, the less impressive the similarities have to be to support a conclusion of copying. You should consider these and all other logically relevant circumstances in deciding whether you find that the defendant copied the plaintiff's work.

Whether you so find is a matter of applying your common sense to all the circumstantial evidence and asking yourself what it adds up to.

*Aldon Accessories Ltd. v. Speigel, Inc., 738 F.2d 548, 222 U.S.P.Q. 951 (2d Cir. 1994).*

Access Defined

Access means proof sufficient to show that the defendants or whoever created the defendants' accused documents had a reasonable opportunity to view the plaintiffs' work. The plaintiffs need not show that whoever produced the defendants' work actually saw the Plaintiffs' work,  [*77]  nor does it have to show that some particular channel of communication existed through which the work was shown. To show access it is sufficient to show that the defendants had the opportunity to copy the plaintiffs' work.

*Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548, 222 U.S.P.Q. 951 (2d Cir. 1984).*

Here, the Warrior Fitness Defendants have admitted access. Thus, Pure Power need prove only "substantial similarity."

Literal Copying Not Required

Analytic dissection of parts of works for purposes of rigid side-by-side comparison to show copying and copyright infringement is neither necessary nor proper. The proper focus in determining copying and copyright infringement falls upon the "scope and extent of similarities between the items being considered rather than merely considering any dissimilarities which may be discerned."

*Transgo, Inc. v. Ajac Transmissions Parts Corp., 751 F.2d 1040, 225 U.S.P.Q. 458 (9th Cir. 1985).*

Unconscious Plagiarism Constitutes Infringement

You are instructed that "unconscious plagiarism" is just as actionable as deliberate plagiarism, and in order for you to rule for the plaintiffs, it is [*78]  not necessary for you to find that defendants, deliberately and/or consciously intended to pirate or plagiarize plaintiffs' copyrighted documents.

2010 Jury Instr. LEXIS 1405, *78

*Sheldon v. M.G.M., 81 F.2d 49 (2d Cir. 1936).*

Substantial Portion Copied

You should ask yourself whether the ordinary reasonable person would find the total impact and effect of Warrior Fitness' work are substantially similar to plaintiffs' copyrighted documents.

"Substantial similarity" depends on the response of the ordinary reasonable observer to the works. It does not depend on expert testimony or analysis of specific, objective similarity or dissimilarity. The test is subjective.

There is no exact "yardstick" for measuring the extent to which two works are substantially similar. It is not necessary that the works be identical or exact copies of each other to meet this standard. Adding new material to the work does not in and of itself prevent substantial similarity.

In comparing plaintiffs' and defendants' documents to determine whether there has been copyright infringement, you must consider and compare the contents of each of the works as a whole. That is, you must not simply focus on isolated elements [*79] of each work to the exclusion of the other elements, combinations of elements and expressions therein.

*Harper House Inc. v. Thomas Nelson Publishers, Inc., 4 U.S.P.Q.2d 1897 (CD. Cal. 1987),*rev'd and remanded,*889 F.2d 197, 12 U.S.P.Q.2d 1779 (9th Cir. 1989).*

Ordinary Observer Test

The test of infringement is whether the accused work is so similar to the plaintiffs' documents that an ordinary reasonable person would conclude that the defendants unlawfully appropriated the plaintiffs' protectable expression by taking material of substance and value. The ordinary observer test, in application, must take into account that the Copyright laws preclude appropriation of only those elements of the work that are protected by the copyright. When the alleged infringing work is not a duplicate of the copyrighted work, a determination of whether protected elements have been taken requires an analysis of the differences and similarities between the two works. In making this analysis, you must decide whether the accused work has captured the total concept and feel of the copyrighted work. *Roulo v. Russ Berrie & Co., Inc., 886 F.2d 931, 12 U.S.P.Q.2d 1423 (7th Cir. 1989).* [*80]

Presumption of Unlawful Copying

If you find there is a substantial identity between Warrior Fitness' documents and Pure Power's documents, there is a presumption of unlawful copying if the defendants are the later authors. The burden of going forward with the evidence, under such circumstances, is on the defendants. In the absence of an explanation by defendants adequately accounting for such similarities, plaintiffs are entitled to a decree of copyright infringement.

*Miller Studio, Inc. v. Pacific Import Co., Inc., 146 U.S.P.Q. 388, 390* (.D.N.Y. 1965); *Monogram Models, Inc. v. Industro-Motive Corp., 492 F.2d 1281, 181 U.S.P.Q. 425 (6th Cir. 1974),*cert. denied,*183 U.S.P.Q. 321 (1974).*

Innocent Infringer

I advise you further that if a defendant receives from an unauthorized copier of a plaintiff's copyrighted work and the defendant herself is unaware that the material she received was copied from plaintiff's copyrighted work, the defendant's innocence does not protect her from liability. The defendant is liable, nonetheless.

*Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548, 222 U.S.P.Q. 951 (2d Cir. 1984).* [*81]

It is not necessary for a defendant to have a specific intent to copy.

*Mister B. Textiles, Inc. v. Woodcrest Fabrics, Inc., 523 F.Supp. 21 (S.D.N.Y. 1981).*

2010 Jury Instr. LEXIS 1405, *81

A defendant who sees or is shown a document created by another party should ask who owns the rights in what it is openly copying. Failure to do so shows a reckless disregard of the consequences. Moreover, knowledge or lack of it is no defense to liability.

*Peter Pan Fabrics, Inc. v. Dan River Mills, Inc., 295 F.Supp. 1366* (S.D.N.Y.), *aff'd,*415 F.2d 1007 (2d Cir. 1969).

Willful Infringement

If you conclude that Warrior Fitness has infringed plaintiffs' copyrights (or any one of them), then you must determine whether it has done so willfully. An act is done willfully when a defendant intends to do it and knows the nature of the act, when it is done deliberately.

*Harper House Inc. v. Thomas Nelson Publishers, Inc., 4 U.S.P.Q.2d 1897 (CD. Cal 1987),*rev'd and remanded,*889 F.2d 197, 12 U.S.P.Q.2d 1779 (9th Cir. 1989).*

You are not bound to believe any statements of good or honest intention on the part of any of the defendants,  [*82] employees or agents, if you find and believe from a preponderance of all the evidence in the case that such defendant, employees or agents acted in willful and deliberate violation of the plaintiffs' rights.

*Barsha v. M.G.M., 32 Cal. App,2d 556, 562, 90 P.2d 371 (1939).*

Damages

Damages in General

In considering the issue of Pure Power's damages, you should determine the amount you find to be just and reasonable in light of the evidence. Damages must not be based on mere speculation or guess. However, the law does not require that a plaintiff prove the exact amount of its damages, and defendants are to bear the risk of any uncertainty which their conduct has created. If you find that defendants did not retain accurate or complete records, defendants are to bear the risk of any uncertainty they have caused and any doubts caused by them are to be resolved in favor of plaintiff.

*Harper House Inc. v. Thomas Nelson Publishers, Inc., 4 U.S.P.Q.2d 1897 (CD. Cal 1987),*rev'd and remanded,*889 F.2d 197, 12 U.S.P.Q.2d 1779 (9th Cir. 1989).*

An officer of a corporation is personally liable for copyright infringement, trade [*83]  dress infringement and unfair competition if the officer is a "moving active, conscious force behind the defendant's infringement.

*Bambu Sales, Inc. v. Sultana Crackers, Inc., 683 F. Supp. 899, 913 (E.D.N.Y. 1988).*

As to claims under New York State law, New York law provides that a corporate officer who participates in a tort, even if it is in the course of his duties, may be held to be individually responsible.

*National Survival Game v. Skirmish, USA, Inc., 603 F.Supp 339, 341 (S.D.N.Y. 1985).*

Scope of Damages

I charge you that if you find that Warrior Fitness has infringed Pure Power's copyrights on its documents Pure Power is entitled to damages.

In computing damages to be assessed, the following factors may be taken into consideration:

1.   The innocence or the deliberateness of defendants' copying.

2.   The activities of the defendants after their having received written notice of infringement.

3.   The profits of defendants from their use of the infringing documents.

4.   The profits lost by the plaintiffs relating to plaintiffs' loss of potential sales.

*Monogram Models, Inc. v. Industro-Motive Corp., 492 F.2d 1281, 181 U.S.P.Q. 425 (6th Cir. 1974),* [*84] *cert. denied,183 U.S.P.Q. 321 (1974).*

<u>Compensatory Damages</u>

If you find that Warrior Fitness is liable for copyright infringement, Pure Power is entitled to all of the damages, if any, suffered as a result of the infringement, plus any profits of Warrior Fitness that Pure Power has proven are attributable to the infringing use of its work, which are not already included in computing Pure Power's actual damages.

Thus, if the actual damage suffered by Pure Power by way of either lost profits or the diminution of the value of its copyrights are less than Warrior Fitness' actual profits, Pure Power may then also recover the difference between its lost profits and Warrior Fitness' actual profits.

*Nimmer on Copyrights,* Vol. 3 (1992) § 14.02, p. 14-10. Harper House Inc. v. Thomas Nelson Publishers, Inc., 4 U.S.P.Q,2d 1897 (CD. Cal 1987),*rev'd and remanded,889 F.2d 197, 12 U.S.P.Q.2d 1779 (9th Cir. 1989).*

<u>Diminution in Value of Material Used</u>

In arriving at any such actual damages you may take into consideration the reasonable value, if any, to Warrior Fitness of its use of Pure Power's documents.

*Harper House Inc. v. Thomas Nelson Publishers, Inc., 4 U.S.P.Q.2d 1897 (CD. Cal 1987),* [*85] *rev'd and remanded,889 F.2d 197, 12 U.S.P.Q.2d 1779 (9th Cir. 1989).*

<u>Defendants' Profits</u>

To prove Warrior Fitness' profits, Pure Power need only prove the dollar amount of sales made by the Warrior Fitness.

From that figure, Warrior Fitness may deduct a variety of direct costs of operating their business. However, defendants bear the burden of proving the amount of these costs and no deduction may be allowed for any of these costs unless proven by a preponderance of the evidence.

However, if you find that the Warrior Fitness' infringement is willful, then defendants are not entitled to any deduction for overhead.

Any doubt as to the computation of deductible costs or profits is to be resolved in favor of plaintiff.

*Harper House Inc. v. Thomas Nelson Publishers, Inc., 4 U.S.P.Q.2d 1897 (C.D. Cal 1987),rev'd and remanded,889 F.2d 197, 12 U.S.P.Q.2d 1779 (9th Cir. 1989).*

**Effect of Instructions as to Damages**

The fact that I have instructed you on the proper measure of damages should not be considered as an indication of any view of mine as to which party is entitled to your verdict in this case. Instructions as to [*86]  the measure of damages are given only for your guidance, in the event that you should find in favor of Pure Power on the question of liability in accord with the instructions which I have given you.

<u>Conversion against Bellard and Fell</u>

"According to New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. This includes a denial or violation of the plaintiff's

dominion, rights, or possession over her property. It also requires that the defendant exclude the owner from exercising her rights over the goods."

*Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-4 (2d Cir. 2006)* (internal citations and quotations omitted).

That was a rather dense expression of the law so I am going to explain it piece by piece. First, in order to be found responsible for conversion you must decide whether Belliard and Fell, took Brenner's book and handwritten notes accompanying the book, or any other property belonging to Plaintiffs. If you find that Belliard and Fell did not take her book or notes or other property, then you must decide in favor of the Defendants.  [*87]

If you find that Belliard or Fell did take the book, notes or other property, you must then decide if such taking was not authorized by Brenner. If you find that Brenner authorized Belliard and Fell to take Brenner's book or notes, then you need proceed no further and should rule in favor of Defendants.

Should you find that Belliard and Fell took the book, notes or other property without Brenner's permission, then you must decide whether doing so was to the exclusion of Brenner's exclusive right to the book, notes or other property.

The Destruction of Property: Dominion and Control

"The element of dominion or control may be satisfied by a showing that the defendant intentionally destroyed the property."

*Jim Henson Productions, Inc. v. John T. Brady & Assocs., Inc., 867 F.Supp. 175, 191 (S.D.N.Y.1994)citing Veeco Instr., Inc. v. Candido, 334 N.Y.S.2d 321 (Sup. Ct. N.Y. Co. 1972).*

Fell and Belliard deny that they took or destroyed Brenner's book or notes relating to the book or that the book had any value.

To the Exclusion of the Plaintiff

If you find that Belliard and/or Fell took or destroyed Brenner's book which included her [*88]  notes and the employee agreements and files, then you must decide whether their actions in doing so excluded Brenner from exercising her rights over the book and or notes.

While courts have found that retaining copies of documents belonging to a plaintiff do not exclude a plaintiff from exercising her rights over documents, courts have also ruled that taking copies of documents are conversion when the original documents go missing and therefore cannot be replaced.

*Comprehensive Community Development Corp. v. Lehach, 223 A.D.2d 399, 399* (1st Dep't 1996) (copies of patient records); *Traveltown, Inc. v. Gerhardt Investment Group, 856 F.Supp. 256, 258 (N.D.N.Y. 1984)* (distinguishing its case, where copies of blueprints were available, from other cases where only one embodiment of the blueprints were stolen).

Damages

The owner of personal property which is lost, injured, or destroyed by the wrongful act of another is entitled to recover from the wrongdoer damages for the amount that will compensate the owner for the actual losses she sustained, provided such loss is the natural, reasonable, and proximate result of the wrongful act. If personal [*89] property is destroyed, the plaintiff is entitled to recover its value, which ordinarily is its market value, together with interest, N.Y. Jur. 2d *Damages* § 81 (2010) (modified).

Property with No Market Value

"The usual measure of damages for conversion is the value of property at the time and place of the conversion, plus interest. If the property is a type that is dealt in on the market, then the measure of its value is generally determined by reference to the market price.

. . . .

The absence of market price does not necessarily preclude a determination of value for the purpose of recovering damages from a [wrongdoer] where there is some alternative rational means of ascertaining value. The primary underlying objective in such instances is the compensation of the injured party for [her] losses."

*Traveltown, Inc. v. Gerhardt Investment Group, 856 F.Supp. 256, 258 (N.D.N.Y. 1984)*(internal citations and quotations omitted).

Courts in New York have allowed plaintiffs to recover for damages, in the absence of a readily ascertainable market value, for the following converted items:

-author's manuscripts;

-author's screen play;

-attorney's [*90]  collection of legal books, and;

-a composer's musical manuscript.

Adapted from 16 N.Y. Prac; Law of Torts, § 21:94 (2010); *Newman v. Clayton, 133 F.2d 465, 466 (2d Cir. 1942);Wood v. CunardS.S. Co., 192 F. 293 (2d Cir. 1911);Szekely v. Eagle Lion Films, Inc., 140 F.Supp. 843, 849-50 (S.D.N.Y. 1956);MacGregor v. Watts, 5 N.YS.2d 525, 526* (2d Dep't 1938).

In instances where someone has converted, destroyed, or lost the only embodiment of a document that did not have an ascertainable market price, courts have fashioned awards based on evidence of the estimated reproduction cost-meaning the Court examined how much time and effort it would take to restore a plaintiff to the position she formally occupied, before the conversion had taken place.

For example, one Court determined that after its former employer converted programming data, the appropriate award of damages was an award for the costs of programming hours required to reproduce the material.

*Veeco Instruments, Inc. v. Candida, 70 Misc. 333;334 N.Y.S.2d 321 (Sup. Ct. Nassau Co. 1972).*

Another court made an award [*91]  based on the reasonable worth of the time and effort it would take to replace a musician's manuscript.

*Newman v. Clayton, 133 F.2d 465, 466 (2d Cir. 1942).*

While another court rendered damages based on the monetary value it assigned to the time and effort needed to replace a lost manuscript on Greek grammar. *Wood v. Cunard S.S. Co., 192 F. 293 (2d Cir. 1911).*

Punitive Damages

Even in instances where courts have only awarded "nominal damages"-meaning a court awarded a very small amount of money to a plaintiff because while the plaintiff proved their claim, they did not suffer any economic harm-the courts allow that same plaintiff to collect "punitive damages"-which do not compensate the plaintiff for her loss but instead focus on the circumstances with which the defendant committed the acts.

Adapted from *Colavito v. New York Donor Network, 438 F.3d 214, 232 (2d Cir. 2006);*Brooklyn Union Gas Co. v. Diggs, 2003 WL 42106, at *11 (N.Y. City Civ. Co. Jan. 2, 2003) citing *Cush-Crawford v. Adchem Corp., 271 F.3d 352, 357-58 (2d Cir. 2001).*

Punitive damages are appropriate for a tort, like [*92]  conversion, so long as the conduct complained of was not aimed at defeating a contract but instead was a wrong independent of any contract between the parties. Therefore, you must determine if Belliard and/or Fell's theft and destruction of Brenner's book and notes and was an

independent wrong. If it was an independent wrong, then you may consider my next instructions. If it was not an independent wrong then you shall not award any punitive damages.

*MacQuesten General Contracting v. HCE, Inc., 296 F.Supp.2d 437 447 (S.D.N.Y. 2003)* citing *New York Univ. v. Continental Ins. Co., 87 N.Y. 2d 308, 316 (1995).*

If you find that the theft and destruction of Brenner's book, notes and files was an independent wrong, you then must decide the whether Belliard and/or Fell's conduct towards Brenner was egregious, malicious, intentional or deliberate, outrageous, or was done with such conscious disregard to Brenner's rights that it was willful and wanton.

Adapted from *Jones v. Dana, 2006 WL 1153358,* at *31 (S.D.N.Y. May 2, 2006); *Swersky v. Dreyer and Traub, 219 A.D.2d 321, 328* (1st Dep't 1996).

When a defendant displays [*93]  "wanton dishonesty as to imply a criminal indifference towards civil obligations" an award of punitive damages is appropriate as such conduct reflects a "high degree of moral turpitude."

Brooklyn Union Gas Co. v. Diggs, 2003 WL 42106, at *11 (N.Y. City Civ. Co. Jan. 2, 2003)(internal citations omitted).

Defendants assert that in light of Plaintiffs' bad faith and wrongful acts in violating federal law by stealing 546 of Defendants' emails, forging Fell's signature to his alleged non-compete agreement, committing trespass, sending spies to Warrior, and menacing Defendants' business by making false reports concerning drug activity at Warrior, advertising for Pure Power outside of Warrior's 'facility, and attempting to make false reports concerning Warrior's facility with the Department of Buildings, Plaintiffs have no basis to seek punitive damages.,

### ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***

It is for you to decide whether Belliard and/or Fell's dealings with Brenner were sufficiently reprehensible to warrant punitive damages. If you find Belliard and/or Fell's conduct sufficiently reprehensible, then you should decide for Brenner,

Defamation [*94]  Against Lee

This is an action to recover damages for defamation. Defamatory statements "tend to expose a person to hatred, contempt or aversion, or induce an evil or unsavory opinion" of the defamed person. It is up to you, the jury, to decide whether Brenner has been defamed.

*Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997).*

Statements regarding a person's professionalism or business, if defamatory, are slanderous per se.

Joyce v. Thompson Wignore & Gilly LLP, 2008 WL 2329277, at *12-13 (S.D.N.Y. June 3, 2008); *Chiavarelli v. Williams, 681 N.Y.S.2d 276, 277* (1st Dep't 1998).

Slander is a form of oral defamation. Plaintiffs are pursuing a claim against Lee for "slander per se," Under New York Law, three elements are required to prove slander per se. Those three elements are: an oral defamatory statement of fact; regarding plaintiff, and; published to a third party by defendant.

Adapted Weldy v. Piedmont Airlines, Inc., 985 F,2d 57, 61-62 (2d Cir. 1993) citing 2 N.Y. PJI 104-105 (Sup. 1991); *Henneberry v. Sumitomo Corp. of Am., 2005 WL 991772,* * 15-19 (S.D.N.Y. Apr. 27, 2005).

Each [*95]  element must be proved by a fair preponderance of the evidence. What does "a fair preponderance of the credible evidence" mean? The credible evidence means the testimony or exhibits that you find to be worthy of

2010 Jury Instr. LEXIS 1405, *95

belief. A preponderance means the greater part of such evidence. That does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase refers to the quality of the evidence, that is, its convincing quality, the weight and the effect that it has on your mind. The law requires that, in order for Plaintiffs to sustain their burden of proof as to each element, the evidence that supports their claim must appeal to you as more nearly representing what took place than that opposed to Lee's claim. If it does not, or if it weighs so evenly that you are unable to say that there is a preponderance on either side, then you must decide the question in favor of Lee. If the evidence favoring the Plaintiffs' claim as to any element outweighs the evidence opposed to it, then you must decide in favor of Plaintiffs.

Adapted from _Zaidi v. United Bank, Ltd., 194 Misc.2d 1, 747,_ at *4, _747 N.Y.S.2d 268_ (Sup. Ct. N.Y.  [*96]  Co. May 2, 2002) citing _Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749 (1985);_ PJI 3:34B (modified).

In this action, Brenner alleges that Lee told various individuals including Christine Maddock, on multiple occasions while running with Maddock, and in the presence of other Pure Power clients at Pure Power, that Brenner hated homosexuals, treated all of her employees like garbage, was a loose cannon and that Brenner terminated C.J. Raimondi because he was a homosexual. Specifically, Lee told Maddock that "Lauren fired C.J. because he was gay." Lee allegedly also told Maddock and others that Brenner was lying when Brenner told others that Defendants stole Plaintiffs' property and that Lee's name was on the lease that Warrior Fitness obtained.

The first question for you to decide is whether Lee's statements were defamatory. A statement is defamatory if it tends to expose the plaintiff to public hatred, contempt, ridicule or disgrace-that is, if it would tend to lead the average person in the community to form an evil or bad opinion of Brenner. A statement is also defamatory if it tends to discredit Brenner in the conduct of her occupation, profession,  [*97]  trade or office.

Not every unpleasant or uncomplimentary statement is defamatory. A statement that is merely unpleasant, offensive or embarrassing, or that hurts the Brenner's feelings, is not necessarily defamatory. Statements of opinion cannot be considered defamatory.

Because language often has different meanings, the law imposes upon Plaintiffs the burden of proving that the statement about which Brenner complains would in fact be understood by the average person as defamatory. Here, Plaintiffs allege that Lee, described Brenner, the owner of a fitness facility in Chelsea, as a homophobic business owner that fired one of her employees because he was gay. Lee also called Brenner a loose cannon and told others that Brenner was lying when she Pure Power clients that Defendants stole from her business and that Lee is a signatory to the lease for Warrior Fitness. Lee asserts that even if she did tell people that Brenner does not like homosexuals, and that she fired C.J. Raimandi, it does not matter because those statements are statements of opinion or are true. Further, while Lee admits that she is a signatory on the Warrior Fitness lease, she denies that the Defendants stole any [*98] property from Brenner or Pure Power and that Lee denied being a signatory on the Warrior Fitness lease because it is a private person and did not want her private financial affairs, especially those with her then boyfriend, becoming public knowledge.

The second element that Plaintiffs must prove is that the statement referred to Brenner.

The third element that plaintiff must prove is that Lee published the statement, that is, that Lee's statements were heard by some person or persons other than Brenner.

If you find that Lee's statement that "Lauren fired C.J. because he was gay" was not heard by someone other than Brenner, then you need proceed no further and report to the Court. If you find that Lee's statement was heard by someone other than Brenner, then you must consider the remaining elements of Plaintiffs' case.

Adapted from PJI 3:34B (modified).

Truth as a Defense to Defamation

2010 Jury Instr. LEXIS 1405, *98

Lee claims that even if she did make the oral statements she is charged with making, those statements are in fact, true. Truth is a complete defense to an action for slander no matter how much harm is done by the statement and the burden is on Lee to prove that each of her statements,  [*99]  when made, were true.

*Dec v. Auburn Enlarged School Dist, 672 N.Y.S.2d 591, 593* (4th Dep't 1998).

To establish a defense of truth, Lee must prove that the statement as a whole was true. It is not sufficient that a part of the statement was true. This does not mean, however, that every word in every sentence need be proved true. Minor inaccuracies in the statement may be disregarded in determining whether the statement is true.

PJI 3:33 (modified).

You will find from the evidence presented what the truth was and then compare that with the oral statements which you find were made by Lee, taking that statement according to the ordinary meaning of the words. If you find that a statement was false, then your finding will be for the Plaintiffs on this issue. If you find that the statement was true, then your finding will be for Lee on this issue.

PJI 3:33 (modified)

Damages (Per Se)

I am now going to instruct you on the law of damages. The fact that I instruct you on the law of damages must not be taken as an indication that you should decide for Plaintiffs. You will decide on the evidence presented and the rules of law that I have given you whether Plaintiffs'  [*100]  are entitled to recover from Lee.

If you decide that Plaintiffs are entitled to recover, you will award an amount as, in the exercise of your good judgment and common sense, you decide is fair and just compensation for the injury to Brenner's reputation and the humiliation and mental anguish in her public and private life which you decide was caused by Lee's statement.

*Sharon v. Time, Inc. 599 F.Supp. 538, 586 (S.D.N.Y.1984)* citing *Gerz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)* (libel); PJI 3:29 (modified).

Presumed damages "are not limited to out-of-pocket loss but, rather, also include impairment of reputation and standing in the community, personal humiliation and mental anguish and suffering." Meaning you should consider the nature of Lee's statement made about Brenner, the extent to which the statement was circulated, the tendency of the statement to injure a person such as Brenner, and all of the other facts and circumstances in the case.

*Van-Go Transp. Co. v. New York. City Bd. Of Educ, 971 F. Supp. 90, 100 (E.D.N.Y. 1997);*see also PJI 3:29 (modified).

If a statement is defamatory per se, injury is assumed.  [*101]  In such a case, even where the plaintiff can show no actual damages at all, a plaintiff who has otherwise shown defamation may recover at least nominal damages. These damages cannot be proved with mathematical accuracy. Fair compensation may vary, ranging from one dollar, if you decide that there was no injury, to a substantial sum if you decide that the injury was substantial.

Adapted from Van-Go *Transp. Co., Inc. v. New York City Bd. of Educ., 971 F.Supp. 90, 100 (E.D.N.Y.1997);* see, e.g., *Suckenik v. Levitt, 177 A.D.2d 416, 416, 576 N.YS.2d 258* (1st Dep't 1991); PJI 3:29 (modified).

Tortious Interference with Prospective Economic Advantage against All Defendants

In order to prevail on their claims for tortious interference with prospective economic advantage, a plaintiff must prove the existence of a profitable business relationship; a defendant's interference with that relationship; a defendant's use of dishonest, unfair, improper or wrongful means, and; damage to the business relationship.

2010 Jury Instr. LEXIS 1405, *101

*Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994);*PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F,2d 266, 269 (2d Cir. 1987), [*102] abrogated on other grounds by *Hannex Corp. v. GMI, Inc., 140 F.3d 194, 206 (2d Cir. 1998).*

"[T]he tort usually involves interference with a business relationship not amounting to a contract."

*Volvo N. Am. Corp. v. Men's Intn'l Prof'l Tennis Counsel, 857 F.2d 55, 74 (2d Cir. 1988).*

Instead, "[i]nterference with a plaintiff's business relations with a third party can be found if the plaintiff had a 'reasonable expectancy of a contract' with the third party, which can result from 'mere negotiations.'"

Six W. Retail Acquisition, Inc. v. Sony Theater Mgmt. Corp., 2000 WL 264295, at *31 (S.D.N.Y. 2000) citing *Strapex Corp v. Metaverpa N.A., 607 F. Supp. 1047, 1050* (S.D.N.Y.) (quoting *Morse v. Swank, Inc., 459 F. Supp. 660, 667 (S.D.N.Y. 1978).*

"If the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct."

*Alusit Ltd. v. Aluglas of Penn., 1990 WL 209422,* at *9 (S.D.N.Y. Dec. 4, 1990) (internal citations omitted).

In this case, Plaintiffs have [*103] alleged that as a result of Defendants' wrongful and criminal actions, Pure Power has lost at least 72 known clients to Warrior Fitness.

Plaintiffs allege that through these alleged wrongful and illegal actions, Pure Power lost existing customers who did not renew their memberships, as well as potential customers to Warrior Fitness. Furthermore, Plaintiffs allege that both Brenner and Pure Power have lost standing in the community due to Lee's alleged defamation against Brenner, and the Defendants statements regarding Plaintiffs and the Pure Power facilities (and Defendants physical damages to Pure Power's facility) were designed to undermine the Plaintiffs. Plaintiffs also assert that Pure Power's ability to franchise and attract investors has been significantly impaired by Defendants' wrongful actions. Defendants claim that while they did have Brenner's business plan in their possession-as well as Pure Power's client list and data-Defendants never used any of these materials to benefit Warrior Fitness. Defendants also deny infringing on any of Pure Power's intellectual property and never solicited Pure Power's customers. Further, Defendants claim that they did not interfere with [*104] any of Pure Power's prospective economic advantages because the customers that Pure Power lost to Warrior Fitness simply preferred Warrior Fitness's facilities and instructors to those found at Pure Power and the customers could have legitimately chose their facility. Defendants also assert that Plaintiffs have not lost any contracts or business relationships as a result of defendants' alleged conduct.

Damages

As stated before, damages are an essential element to this claim. One who is liable to another for tortiously interfering with a prospective economic advantage, must show damages in at least one of the following ways: the pecuniary loss of the benefits of the relationship; the consequential losses for the interference caused, and the emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference. Adapted from Restatement (Second) Torts, § 774A (1979).

Tortious Interference with Contract against Lee and Baynard

In order to prevail on their claims for tortious of interference with contract, Plaintiffs must prove: the existence of a valid contract; that Lee and/or Baynard had knowledge about the contract; that [*105] Lee and/or Baynard intentionally and improperly caused Fell and/or Belliard to breach their respective contracts, and; that Plaintiffs' were damaged because of Lee and/or Baynard's actions.

Adapted from *White Plains Coat & Apron Co., Inc. v. Cintas Corp., 8 N.Y.3d 422, 426-7 (2007);*Antonios A. Alevizopoulos &*Assocs, Inc. v. Comcast Intn'l. Holdings, Inc., 100 F. Supp. 2d 178, 186)*(S.D.N.Y.2002).

As stated, Lee and/or Baynard must have actual knowledge of the contract. This means that they had to have actual awareness of the contract, but their knowledge only needs to be of the existence of the contract, not of its detailed terms.

Adapted from *Don Kind Prods., Inc. v. Douglas, 742 F.Supp. 741, 775 (S.D.N.Y. 1992)* citing *Guard-Life Corp. v. Parker Hardware Mfg. Corp., 428 N.Y.S.2d 628, 634 (1980);* Restatement (Second) of Torts § 776, comment [i] (1970); PJI 356.

<u>Economic Interest Defense</u>

Lee and Baynard have the burden of establishing that they were justified in causing the breach of contract. In order to decide whether Lee and Baynard's conduct was justified, you should consider the nature of the [*106] rights interfered with, the relationship between Lee and/or Banyard and the parties to the contract, and the interests that Lee and/or Baynard sought to protect, in other words, whether defendant Lee and/or Baynard's interest is equal to or superior to Plaintiffs interest.

*Foster v. Churchill, 642 N.Y.S.2d 583, 613-14 (1996).*

You must also consider whether Plaintiffs established that Lee and/or Bayanrd acted with malice or used wrongful or illegal means. If you find that Lee and/or Bayanrd acted with malice or used wrongful means, and all of the other elements of this action are met, then you will find for the Plaintiffs on this issue as well. If you find that Lee and/or Baynard did not act with malice and Lee and/or Bayanrd did not use wrongful means, then you will find for Lee and/or Baynard on this issue.

*Harris v. Allstate Ins. Co., 83 F.Supp.2d 423, 433 (S.D.N.Y. 2002)* citing *Foster v. Chruchill, 642 N.Y.S.2d 583, 613-14 (1996).*

<u>Damages</u>

As stated before, damages are an essential element to this claim. One who is liable to another for tortiously interfering with a contract, must show damages in at least one of [*107] the following ways: the pecuniary loss of the benefits of the contract; the consequential losses for which the interference caused, and; emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

Adapted from Restatement (Second) Torts, § 774A (1979).

Further "[i]n an action against a third party for tortious interference . . . , the elements of damages would be those recognized under the more liberal rules applicable to tort actions."

*Purgess v. Sharrock, 33 F.3d 134, 142 (2d Cir. 1994)* citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 197, 428 N.Y.S.2d 628, 636 (1980)* (citing Restatement, Torts 2d § 774A, comment [c].).

<u>Counter Claims by Warrior Fitness Against Pure Power</u>

That concludes the questions related to claims by plaintiff Pure Power against the Warrior Fitness. I turn now to the claims brought by Warrior Fitness against Pure Power.

<u>Violations of the Stored Communications Act Against Plaintiffs and Third-Party Defendants</u>

Defendants/Counterclaim Plaintiffs ("Defendants") have sued Plaintiffs/Counterclaim Defendants ("Plaintiffs") [*108] and Third-Party Defendants under the Stored Communications Act, *18 U.S.C. § 2707* et. seq. ("SCA").

The SCA prohibits anyone to intentionally access an electronic communication service, or obtain an electronic communication while it is still in electronic storage, without authorization.

Case 3:10-cv-03561-WHA   Document 1306-9   Filed 09/01/15   Page 36 of 45

Page 35 of 44
2010 Jury Instr. LEXIS 1405, *108

The SCA prohibits unauthorized access of Defendants' email accounts.

This Court has already determined that one or more Plaintiffs and/or Third-Party Defendants committed four independent violations of the SCA when they accessed two of Fell's personal email accounts, Fell's Warrior Fitness' corporate email account, and Jennifer Lee Fell's corporate account without the authorization of Fell or Lee. n2

Defendants allege that Plaintiffs and Third-Party Defendants hacked into Defendants' email accounts. As further alleged, Plaintiffs and Third-Party Defendants, without Defendants' consent, obtained Defendant [*109] Fell's and Lee's personal and corporate email account passwords, and accessed, obtained, read, downloaded, printed, and showed to Pure Power's clients and Pure Power's counsel e-mails sent and received by Defendants.

You shall determine which party or parties, among Plaintiffs and Third-Party Defendants, accessed the email accounts and violated the SCA. n3

<u>Violations of the Stored Communications Act Against Plaintiffs and Third-Party Defendants</u>

You shall determine which parties, among Plaintiffs' and Third-Party Defendants are liable for the four violations of the SCA.

<u>Joint and Several Liability</u>

If you cannot determine who among Plaintiffs and Third-Party Defendants accessed Defendants' email accounts and committed four violations of the SCA, you must find Plaintiffs and Third-Party Defendants jointly and severally liable. ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUA GE.***

<u>Vicarious Responsibility</u>

An employer is responsible for the act of its employee if the act is in [*110]  furtherance of the employer's business and is within the scope of the employee's authority.

An act is within the scope of an employee's authority if it is performed while the employee is engaged generally in the performance of his or her assigned duties or if the act is reasonably necessary or incidental to the employment. The employer need not have authorized the specific act in question. n4

If you determine that Brenner and/or, Lorenzi, committed violations of the SCA while acting within the scope of their employment and in furtherance of the business of Pure Power Boot Camp, Inc., Pure Power Boot Camp Franchising Corporation, or Pure Power Boot Camp Jericho, Inc. ("Entities"), you must also find this Entity or Entities liable for the violations of the SCA. n5

 [*111]

If you find that Dumas was an employee of Plaintiffs and was acting within the scope of her employment and in furtherance of the business of Pure Power Boot Camp, Inc., Pure Power Boot Camp Franchising Corporation, or Pure Power Boot Camp Jericho. Inc. ("Entities"), you must also find the plaintiff Entity or Entities liable for the violations of the SCA. n6 ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***

**Damages**

Punitive Damages

<u>Violations of the Stored Communications Act Against Plaintiffs and Third-Party Defendants</u>

If you determine that Defendants have established by a preponderance of the evidence that Plaintiffs' and/or Third-Party Defendants' violations of the SCA were "willful" or "intentional", you may but are not required to award

Case 3:10-cv-03561-WHA   Document 1306-9   Filed 09/01/15   Page 37 of 45

Page 36 of 44
2010 Jury Instr. LEXIS 1405, *111

punitive damages against Plaintiffs and Third-Party Defendants. n7
 [*112]

The purpose of punitive damages under the SCA is not to compensate Defendants but to punish Plaintiffs and/or Third-Party Defendants for willful and intentional acts and therefore to discourage Plaintiffs and Third-Party Defendants and others from acting in a similar way in the future.

An act is intentional when it is done knowingly, voluntarily and intentionally and not because of mistake or accident.

An act is willful when it demonstrates conscious and utter disregard of its effects on rights of others. n8

Plaintiffs contend that under the circumstances of this case and given Defendants' bad an award of putative damages are not warranted. ***DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE.*** An act is intentional when it is done deliberately with knowledge of Defendants' rights, and with the intent to interfere with those rights.

An act is willful when it demonstrates conscious and utter disregard of its effects on rights of others. n9 ***PLAINTIFFS DISPUTE THE HIGHLIGHTED*** [*113]  ***LANGUAGE.*** In reporting your verdict, you will state the amount, if any, awarded by you as punitive damages to Defendants.

<u>Violations of the New York Labor Law Against Plaintiffs</u>

Defendants have also sued Plaintiffs for the violations of the New York Labor Law. Defendants claim that Plaintiffs failed to compensate Defendants Fell and Belliard for all time worked while employed at Pure Power. Defendants also claim that Plaintiffs forced Fell and Belliard to work off the clock for time spent outside of teaching classes at Pure Power, but still performing mandatory work-related duties on behalf of Plaintiffs. Further, Defendants claim that Plaintiffs were obligated to pay Defendants Fell and Belliard for all hours worked, not just for hours spent teaching classes. n10 Plaintiffs contend that not only were Fell and Belliard paid for all time worked but they actually claimed and received pay for time they actually did not work. Plaintiffs also assert that Belliard and Fell were never [*114]  required to perform any unpaid work and in fact, should repay Plaintiffs for the period of time Belliard and Fell said they were working but in reality were scheming to steal Plaintiffs' business, soliciting Plaintiffs' customers and damaging the Pure Power facilities and otherwise breaching their duties of loyalty as employees.

Finally, Plaintiffs contend that Defendants Fell and Belliard are exempt employees not entitled to overtime pay.

<u>Violations of the New York Labor Law Against Plaintiffs</u>

If you find that Defendants Fell and Belliard were not compensated by Plaintiffs for all hours worked at Pure Power, you must find for Defendants. If you find that Defendants Fell and Belliard were compensated by Plaintiffs for all hours worked at Pure Power, you must find for Plaintiffs.

**Damages**

Violations of The New York Labor Law

<u>Against Plaintiffs</u>

If you decide that Defendants Fell and Belliard are not entitled to recover [*115]  from Plaintiffs, you need not consider damages. Only if you decide that Defendants Fell and Belliard are entitled to recovery will you consider damages.

If you decide that Defendants Fell and Belliard were not compensated for all hours worked by Plaintiffs, you may award Defendants Fell and Belliard the amount of such underpayments. If you find that Defendants Fell and Belliard worked more than 40 hours a week and were not compensated for overtime at the wage rate of one and

2010 Jury Instr. LEXIS 1405, *115

one-half times Defendants Fell's and Belliard's regular rate, you must find for Defendants. n11 If you find that Defendants Fell and Belliard worked more than 40 hours a week and were compensated by Plaintiffs for overtime, you must find for Plaintiffs.

The "overtime" means time worked in excess of 40 hours per week. n12
 [*116]

The "regular rate" is the amount that Defendants Fell and Belliard were "regularly paid for each hour of work." n13

You may also award Defendants Fell and Belliard costs and reasonable attorneys' fees. n14

Unless Plaintiffs prove a good faith basis to believe that the underpayment of Defendants Fell and Belliard compensation in compliance with the law, an additional amount as liquidated damages equal to twenty-five percent of the total of such underpayments shall be awarded to Defendants Fell and Belliard. n15 ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE.***

Violation of New York's [*117]  Civil Rights Law, §§ 50-51 For The Unauthorized Use of Images in Advertising Against Plaintiffs

Defendants have sued Plaintiffs under the Civil Rights Law, §§ 50-51 for the unauthorized use of Defendants' pictures or images in advertising.

The Civil Rights Law prohibits a person to use another person's image within the state of New York for purposes of advertising or trade without his written consent. n16

Defendants claim that Plaintiffs have used, and continue to use the images of Defendants Fell and Belliard on Pure Power advertisements. Defendants further allege that Plaintiffs have never asked for, nor received permission from Fell or Belliard to use their likenesses on these advertisements, and that Plaintiffs have continued to use the images of Fell and Belliard after they were no longer employed by Plaintiffs. As a result, Defendants contend that Plaintiffs have retained [*118]  the benefits of these advertisements without compensating Fell and Belliard for use of their likenesses.

Plaintiffs contend that any use of Belliard and Fell's images was authorized. In addition, Plaintiffs contend that use of an image where only Defendants' back are visible is not a violation of the statute. The purpose of Civil Rights Law, §§ 50-51 is to:

> protect[] against the appropriation of a plaintiff's name or likeness for defendants benefit. Thus, it creates a cause of action in favor of any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without written consent".
>
> . . . .
>
> The statute is designed to protect a person's identity, not merely a property interest in his or her "name", "portrait" or "picture", and thus it implicitly requires that plaintiff be capable of identification from the objectionable material itself. That is not to say that the action may only be maintained when plaintiff's face is visible in the advertising copy. Presumably, by using the term "portrait" the Legislature intended a representation which includes a facial reproduction, either artistically or by photograph,  [*119]  but if we are to give effect to all parts of the statute, it applies also to the improper use of a "picture" of plaintiff which does not show the face. Manifestly, there can be no appropriation of plaintiff's identity for commercial purposes if he or she is not recognizable from the picture and a privacy action could not be sustained, for example, because of the nonconsensual use of a photograph of a hand or a foot without identifying features."

*Cohen v. Herbal Concepts, Inc., 63 N.Y.2d 379, 383-384, 472 N.E.2d 307, 308-09 (N.Y. 1984)*(internal citations and quotations omitted).

Defendants must by the preponderance of evidence to prove that Plaintiffs used Defendants Fell and Belliard images without their written consent and that the images of their backs were recognizable within the state of New York for purposes of advertising or trade.

<u>Violation of New York's Civil Rights Law, §§ 50-51 For The Unauthorized Use of Images In Advertising Against Plaintiffs</u>

If you find that Plaintiffs knowingly used Defendants Fell and Belliard's identifiable image or picture without their written consent and within the state of New York for purposes of advertising or [*120]  trade, you must find for Defendants.

The words "picture" or "image" are not limited to photographs but include any representation of Defendants Fell and Belliard (for example a sculpture or mannequin).

If Defendants' written consent was procured by fraud or misrepresentation, Defendants are not barred from recovery under the New York Civil Rights Law. n17

**Damages**

<u>Violation of New York's Civil Rights Law, §§ 50-51 For The Unauthorized Use Of Images In Advertising Against Plaintiffs</u>

<u>Compensatory Damages</u>

If you decide that Defendants Fell and Belliard are not entitled to recover from Plaintiffs, you need not consider damages. Only if you decide that Defendants Fell and Belliard are entitled to recovery will you consider damages.

If you find that Defendants Fell and Belliard are entitled to recover from Plaintiffs, you must render a verdict in a sum of money that will justly and fairly compensate Defendants [*121]  Fell and Belliard for the fair market value of the use of Defendants Fell's and Belliard's picture or image and its value to Plaintiffs.

The total of the amounts you award as fair compensation for each of those items will be your verdict, if you find for Defendants Fell and Belliard.

These damages are called compensatory damages because they intended to compensate Defendants for the injury done by the violation of their rights.

Compensatory damages must be awarded upon proof of a violation of the statute. n18

In reporting your verdict, you will state the amount, if any, awarded by you as compensatory damages to Defendants.

<u>Punitive Damages</u>

In addition, Defendants [*122]  are seeking punitive damages. Punitive damages are allowed to punish Plaintiffs who knowingly use the picture or image of another in violation of the Civil Rights Law and to discourage Plaintiffs and others from similar violations of the law.

If you find that Plaintiffs used Defendants Belliard's and Fell's pictures or images kpowing that Defendants Fell and Bel Hard did not consent to that use, you may award Defendants punitive damages.

The burden of proving knowing use is upon Defendants. ***PLAINTIFFS DISPUTE THE HIGHLIGHTED LANGUAGE - "where punitive damages are claimed under the privacy statute, relevant facts may be offered enabling the jury properly to assess the amount of the damages to be awarded including evidence indicating a lack of malice or of intention to injure the plaintiff . . . .  Good faith or its absence, mistake or knowing***

*impertinence, and consent or its absence are all matters which a jury might be allowed to consider one way or the other in assessing exemplary damages." See NYJUR DEFAM § 363. DEFENDANTS DISPUTE THE HIGHLIGHTED LANGUAGE*

In arriving at your decision as to the amount of punitive damages you should consider the following factors:  [*123]

1. The nature and reprehensibility of what Plaintiffs did. That would include the character of the wrongdoing and Plaintiffs' awareness of what harm the conduct caused or was likely to cause. In considering the amount of punitive damages to award, you should weigh this factor heavily.

2. The actual and potential harm created by Plaintiffs' conduct. The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by Defendants, and to the compensatory damages you awarded to Defendants.

3. Plaintiffs' financial condition and the impact your punitive damages award will have on Plaintiffs. n19

In reporting your verdict, you will state the amount, if any, awarded by you as punitive damages.

### III. TRIAL PROCESS

Ladies and gentlemen, I have described to you the law to be applied to the facts as you find them in this case. Now I will instruct you about the trial process, beginning with the burden of proof.

Burden [*124]  of Proof-Preponderance of the Evidence

For each of the claims brought by Pure Power against Warrior Fitness Defendants, Pure Power has the burden of establishing all the elements of each of its claims, including damages, by a preponderance of the evidence. Likewise, for the claims brought by Warrior Fitness against Pure Power, Warrior Fitness has the burden of establishing all the elements of each of its claims by a preponderance of the evidence. The concept of proof beyond a reasonable doubt does not apply to a civil case such as this and you should put it out of your mind.

To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of which side may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence [*125]  on a given issue is evenly divided between the parties - that it is equally probable that one side is right as it is that the other side is right - then you must decide that issue against the party having this burden of proof. On the other hand, the party with the burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof - that what the party claims is more likely true than not true - then that element will have been proved by a preponderance of evidence.

If you conclude that the plaintiff has failed to establish its claims by a preponderance of the evidence, you must decide those claims against plaintiff.

*Stuart v. Collins,* 389 F.Supp.827, 200 U.S.P.Q. 657 (S.D.N.Y. 1980).

Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.

2010 Jury Instr. LEXIS 1405, *125

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision ought to be or as to whether or not the plaintiff has proved [*126]  its case.

I also instruct you that you are to draw no inference from the fact that upon occasion I asked questions of certain witnesses. Those questions were intended only for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

Conduct of Counsel

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

Role of the Court

Now, as I have told [*127]  you, it is my duty to instruct you as to the law and it is your duty to accept these instructions of law and apply them to the facts as you determine them. That is so whether or not you agree with the law as it was given to you. Moreover, if any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

All Persons Equal Before the Law

This case should be considered and decided by you as an action between parties of equal standing in the community, of equal worth, and holding the same or similar situations in life. Individuals and corporations stand equal before the law and are entitled to the same fair trial at your hands.

Consider Each Defendant Separately

Although there are a number of defendants in this action, it does not follow from that fact alone that if one is liable, both are liable. Each defendant is entitled to fair consideration and is not to be prejudiced by the fact that you find against the other, if in fact you do so find.

## IV, EVALUATION OF EVIDENCE

What Is and Is Not Evidence

The evidence in this case is the sworn testimony of the witnesses, including [*128]  the deposition testimony that was read to you, the exhibits received in evidence, and the stipulations between counsel.

By contrast, arguments by lawyers are not evidence because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls. The question of a lawyer is not to be considered by you *as* evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Remember that you are not to consider statements that I struck or told you to disregard. That stricken or excluded testimony is not evidence and may not be considered [*129]  by you in rendering your verdict.

2010 Jury Instr. LEXIS 1405, *129

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Direct and Circumstantial Evidence

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he or she knows by virtue of his or her own senses - something he or she has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you [*130] cannot see whether or not it is raining. So you have no direct evidence of whether or not it is raining. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

Witness Credibility

You have had the opportunity to observe the witnesses. It is up to you to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of each witness' testimony.

It must be clear to you by now that you are being called upon to resolve certain factual issues raised by the parties in the face of different pictures painted by both sides. In making the judgment about [*131] the true facts, you should scrutinize carefully all of the testimony of each witness, the circumstances in which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies? You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which the witness testified, the accuracy of the witness' memory, the witness' candor or lack of candor, the witness' intelligence, the reasonableness and probability of the witness' testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible evidence.

In other words, what you must try to do in deciding credibility is to size up a witness in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember [*132] that you should use your common sense, your good judgment and your own life experience.

Impeachment of Witness

2010 Jury Instr. LEXIS 1405, *132

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony he or she gave during the trial.

You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while on the stand. Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either [*133] side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Where the witness is a party to the case, and by such statement, or other conduct, admits some fact or facts against his interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

A witness may be discredited or impeached by contradictory evidence; or by evidence that some other time the witness has said or done something, or has failed to say or do something which is inconsistent with the witness' present testimony.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or [*134] an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Falsus in Uno Falsus in Omnibus

If you believe any witness has been discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown to have knowingly testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars and you may, but are not required to, reject all the testimony of that witness or give it, or any part of it, such credibility as you may think it deserves.

3 Devitt, Blackmar and Wolff 1173.04.

Interest in Outcome

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances the witness' own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should [*135] bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness' interest has affected testimony.

2010 Jury Instr. LEXIS 1405, *135

<u>All Available Evidence Need Not Be Produced</u>

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

You are not to rest your decision on what some absent witness who was not brought in might have testified to, or what he or she might not have testified to. To the extent I have indicated, however, you may infer that that evidence might be unfavorable to the party who could have produced it and did not. At [*136] the same time, no party has an obligation to present cumulative testimony.

## V. DELIBERATION OF THE JURY

**Duty To Deliberate/Unanimous Verdict**

You now will return to decide the case. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the answers to the questions I have posed for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your answers to each question must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Let me remind you, ladies and gentlemen, that any notes you may have taken during the trial are for your personal use only. You each may consult [*137] your own notes during deliberations, but any notes you may have taken are not to be relied upon during deliberations as a substitute for your collective memory. Your notes should be used as memory aids but should not be given precedence over your independent recollection of the evidence. If you did not take notes, you should rely on your own independent recollection of the proceedings and you should not be influenced by the notes of other jurors. I emphasize that notes are not entitled to any greater weight than the recollection or impression of each juror as to what the testimony may have been.

*United States v. Rhodes,* _631 F.2d 43, 46 (5th Cir. 1980)._

Again, each of you must make your own decision about the proper answer to each question based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

<u>Selection of Foreperson</u>

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

The foreperson will send out [*138] any notes and, when the jury has reached a verdict, he or she will notify the Marshal that the jury has reached a verdict.

**Special Verdict**

The Special Verdict form that each of you has consists of questions concerning the important issues in this case. You should answer every question except where the verdict form indicates otherwise. Please do not add anything that is not called for by the verdict form.

**Return of Verdict**

2010 Jury Instr. LEXIS 1405, *138

After a unanimous decision has been reached, you will record your answers on one copy of the verdict form. The foreperson will fill in the form. Then each juror will sign the bottom of it and advise the Marshal that a verdict has been reached. Do not give the verdict form to the Marshal. The foreperson should place it in an envelope and bring it with you when you return to the courtroom.

I will stress that each of you should be in agreement with the verdict which is announced in court. Once your verdict is announced by the foreperson in open court and officially recorded, it ordinarily cannot be revoked.

Communications Between Court and Jury

If during your deliberations you want me to discuss further some of the instructions on the law that I have [*139] given you, the foreperson should send out a note through the Marshal in a sealed envelope asking for anything you may wish to hear again.

If you wish to have testimony read to you, it can be done, but I ask you to do so only when you have exhausted your collective recollection and are certain that you need it. If you do need to have testimony read, then I ask you to state precisely in your note what you want.

We will be sending the exhibits into the jury room with you.

If you communicate with the Court before reaching a verdict, you must never indicate in a note to the Court how you are divided.

Juror Oath

You are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.