# EXHIBIT 8
# (PART 2 OF 3)

```
 1                    UNITED STATES DISTRICT COURT
 2                   NORTHERN DISTRICT OF CALIFORNIA
 3                          SAN JOSE DIVISION
 4
 5
     APPLE INC., A CALIFORNIA          )  C-12-00630 LHK
 6   CORPORATION,                      )
                                       )  SAN JOSE, CALIFORNIA
 7                 PLAINTIFF,          )
                                       )  APRIL 22, 2014
 8            VS.                      )
                                       )  VOLUME 11
 9   SAMSUNG ELECTRONICS CO., LTD.,    )
     A KOREAN BUSINESS ENTITY;         )  PAGES 2620-2873
10   SAMSUNG ELECTRONICS AMERICA,      )
     INC., A NEW YORK CORPORATION;     )
11   SAMSUNG TELECOMMUNICATIONS        )
     AMERICA, LLC, A DELAWARE          )
12   LIMITED LIABILITY COMPANY,        )
                                       )
13                 DEFENDANTS.         )
     _____)
14
15
16                   TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE LUCY H. KOH
17                UNITED STATES DISTRICT JUDGE
18
19
20                  APPEARANCES ON NEXT PAGE
21
22   OFFICIAL COURT REPORTERS:   LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
23
24
25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

                          UNITED STATES COURT REPORTERS

```
 1
 2      A P P E A R A N C E S:

 3      FOR PLAINTIFF            MORRISON & FOERSTER
        APPLE:                   BY:  HAROLD J. MCELHINNY
 4                                    RACHEL KREVANS
                                 425 MARKET STREET
 5                               SAN FRANCISCO, CALIFORNIA  94105

 6

 7                               WILMER, CUTLER, PICKERING,
                                 HALE AND DORR
 8                               BY:  WILLIAM F. LEE
                                 60 STATE STREET
 9                               BOSTON, MASSACHUSETTS  02109

10                               BY:  MARK D. SELWYN
                                 950 PAGE MILL ROAD
11                               PALO ALTO, CALIFORNIA  94304

12

13      FOR SAMSUNG:             QUINN, EMANUEL, URQUHART & SULLIVAN
                                 BY:  JOHN B. QUINN
14                                    WILLIAM PRICE
                                 865 S. FIGUEROA STREET, FLOOR 10
15                               LOS ANGELES, CALIFORNIA  90017

16                               BY:  VICTORIA F. MAROULIS
                                      KEVIN B. JOHNSON
17                               555 TWIN DOLPHIN DRIVE
                                 SUITE 560
18                               REDWOOD SHORES, CALIFORNIA  94065

19

20

21

22

23

24

25
```

1                    INDEX OF WITNESSES

2      DEFENDANTS'

3      **KENNETH PARULSKI**
            DIRECT EXAM BY MR. JOHNSON (RES.)          P. 2624
4           CROSS-EXAM BY MR. LEE                     P. 2627

5      **SANJAY RAO**
            DIRECT EXAM BY MR. CEDERBERG              P. 2645
6           CROSS-EXAM BY MR. LEE                     P. 2553

7      **JAMES KEARL**
            DIRECT EXAM BY MR. CEDERBERG              P. 2656
8           CROSS-EXAM BY MR. LEE                     P. 2669
            REDIRECT EXAM BY MR. CEDERBERG            P. 2677
9

10     PLAINTIFFS'

11     **TIM MILLET**
            DIRECT EXAM BY MS. TALLON                 P. 2687
12          CROSS-EXAM BY MR. JOHNSON                 P. 2701

13     **ROBERTO GARCIA**
            DIRECT EXAM BY MR. SELWYN                 P. 2703
14

15     **TRACEY MAZUR**
            BY DECLARATION                            P. 2716
16
       **JAMES STORER**
17          DIRECT EXAM BY MR. SELWYN                 P. 2718
            CROSS-EXAM BY MR. JOHNSON                 P. 2779
18
       **JAMES MACCOUN**
19          BY VIDEOTAPED DEPOSITION                  P. 2785

20     **TODD MOWRY**
            FURTHER DIRECT EXAM BY MS. KREVANS        P. 2787
21
       **MARK ALEXANDER SNOEREN**
22          FURTHER DIRECT EXAM BY MS. KREVANS        P. 2812
            FURTHER CROSS-EXAM BY MR. PAK             P. 2850
23
       **ANDREW COCKBURN**
24          FURTHER REDIRECT EXAM BY MR. MCELHINNY    P. 2859

25

2623

```
1                       INDEX OF EXHIBITS

2                                    MARKED      ADMITTED

3       PLAINTIFF'S

4       253                                      2732
        248                                      2733
5       254                                      2735
        249                                      2736
6       257                                      2739
        294                                      2770
7       227, 228 & 229                           2785
        102                                      2832
8

9

10      DEFENDANTS'

11      391A                                     2667

12

13      JOINT

14      22                                       2624
        24                                       2675
15      23                                       2722
        40B                                      2771
16

17

18

19

20

21

22

23

24

25
```

KEARL01714

```
 1      STIPULATION TO READ IN.
 2             THE COURT:  OKAY.  GIVE US ONE MINUTE TO GET SET UP,
 3      PLEASE.
 4          (PAUSE IN PROCEEDINGS.)
 5             THE COURT:  OKAY.  THE JURORS ALL HAVE A PHOTO?
 6             THE CLERK:  UM-HUM.
 7         RAISE YOUR RIGHT HAND, PLEASE.
 8         (DEFENDANTS' WITNESS, JAMES KEARL, WAS SWORN.)
 9             THE WITNESS:  I DO.
10             THE CLERK:  WOULD YOU HAVE A SEAT, PLEASE.
11         PULL THE MICROPHONE TOWARDS YOU AND STATE YOUR NAME,
12      PLEASE, AND SPELL IT.
13             THE WITNESS:  JAMES RUSSELL KEARL, K-E-A-R-L.
14             THE COURT:  ALL RIGHT.  TIME IS 9:49.
15         GO AHEAD, PLEASE.
16             MR. CEDERBERG:  YES, I'D LIKE TO READ A STATEMENT,
17      STIPULATION FROM THE JOINT AMENDED PRETRIAL STATEMENT AND
18      PROPOSED ORDER.  ON PAGE 6, ITEM 14, SAMSUNG'S LAWSUIT INFORMED
19      APPLE OF ALL OF SAMSUNG'S ASSERTED PATENTS ON APRIL 18TH, 2012.
20             THE COURT:  GO AHEAD, PLEASE.
21                            DIRECT EXAMINATION
22      BY MR. CEDERBERG:
23      Q.   DR. KEARL, WHAT DO YOU DO FOR A LIVING?
24      A.   I'M A PROFESSOR OF ECONOMICS AT BRIGHAM YOUNG UNIVERSITY,
25      AND A SENIOR CONSULTANT WITH CHARLES RIVER ASSOCIATES.
```

DIRECT KEARL                                                    2657

1     Q.   CAN WE PUT UP SDX 3920.
2          AND WHAT IS THIS?
3     A.   THIS IS A BRIEF BIO.
4     Q.   OKAY.  I NOTICE ON THE -- ON YOUR BRIEF BIO AT THE BOTTOM,
5     IS THAT YOUR EDUCATIONAL BACKGROUND?
6     A.   YES.  I HAVE A PH.D. IN ECONOMICS FROM M.I.T., AND I DID A
7     POSTDOC IN LAW AND ECONOMICS AT THE HARVARD LAW SCHOOL.
8     Q.   AND THE THIRD BULLET POINT DOWN SAYS AUTHOR.  HAVE YOU
9     WRITTEN ANYTHING?
10    A.   I HAVE PUBLISHED TWO BOOKS IN ECONOMICS AND A NUMBER OF
11    ARTICLES IN THE LEADING ECONOMICS JOURNALS.
12    Q.   AND THE SECOND BULLET POINT FROM THE BOTTOM SAYS EXPERT
13    WITNESS, AND IT SAYS RULE 702, COURT, ORACLE V. GOOGLE
14    LITIGATION.
15         CAN YOU TELL THE JURY WHAT THAT ROLE WAS?
16    A.   I'VE BEEN AN EXPERT WITNESS IN A LOT OF CASES, BOTH FOR
17    PLAINTIFFS AND DEFENDANTS.  BUT A FEW YEARS AGO, I WAS HIRED BY
18    JUDGE WILLIAM ALSUP OF THE NORTHERN DISTRICT OF CALIFORNIA TO
19    BE A COURT EXPERT, TO BE HIS EXPERT.
20         THE -- ORACLE HAD ITS OWN DAMAGES EXPERT, AND GOOGLE HAD
21    ITS DAMAGES EXPERT, AND JUDGE ALSUP WANTED AN INDEPENDENT
22    EXPERT REPRESENTING THE COURT.
23    Q.   OKAY.  HAVE YOU -- AND WHAT IS YOUR AREA OF EXPERTISE?
24    A.   APPLIED MICROECONOMICS AND THE ESTIMATION OF LEGAL
25    DAMAGES.

1          MR. CEDERBERG: YOUR HONOR, WE TENDER DR. KEARL AS AN
2    EXPERT ON ECONOMICS FOR PURPOSES OF CALCULATING DAMAGES.
3          MR. LEE: NO OBJECTION, YOUR HONOR.
4          THE COURT: ALL RIGHT. HE'S SO CERTIFIED.
5      GO AHEAD, PLEASE.
6    BY MR. CEDERBERG:
7    Q.   OKAY. WHAT WERE YOU ASKED TO DO IN THIS MATTER?
8    A.   I WAS ASKED TO ESTIMATE THE REASONABLE ROYALTY DAMAGES
9    THAT SHOULD BE PAID TO SAMSUNG FOR APPLE'S INFRINGEMENT OF TWO
10   PATENTS, THE '239 PATENT AND THE '449 PATENT.
11   Q.   WHEN YOU DID THIS ANALYSIS, DID YOU MAKE ANY ASSUMPTIONS?
12   A.   I ASSUMED THAT THE PATENTS WERE BOTH VALID AND BOTH
13   INFRINGED.
14   Q.   OKAY. LET'S START WITH THE '239 PATENT.
15       CAN YOU PUT UP SDX 3922.
16       OKAY. AND CAN YOU DESCRIBE TO THE JURY WHAT YOU
17   UNDERSTOOD THE ACCUSED FEATURES TO BE IN THE ACCUSED PRODUCTS?
18   A.   SURE. YOU'VE HEARD THIS FROM THE TECHNICAL EXPERTS, BUT
19   THE ACCUSED FEATURES ON THE '239 PATENT ARE THE USE OF FACETIME
20   TO TRANSMIT VIDEO CALLS OVER A CELLULAR CONNECTION; AND THEN
21   THERE ARE TWO OTHER, ONE TO TAKE VIDEO AND TRANSMIT IT TO
22   ANOTHER DEVICE VIA E-MAIL; AND THE THIRD ONE IS TO TAKE VIDEO
23   AND TRANSFER IT TO ANOTHER DEVICE VIA TEXT MESSAGE.
24        THE IPHONE 4 IS ACCUSED UNDER THE SECOND AND THIRD. THE
25   IPHONE 4S AND 5 ARE ACCUSED UNDER THE FIRST -- ALL THREE

1      FEATURES.
2      Q.   AND WHO ORIGINALLY OWNED THE '239 PATENT?
3      A.   IT WAS OWNED ORIGINALLY BY VOCI, WHICH IS --
4      Q.   OKAY.  IS THAT VIDEO OVER CELL?  IS THAT THE NAME OF THE
5      COMPANY?
6      A.   IT IS.
7      Q.   AND HOW DID SAMSUNG ACQUIRE IT?
8      A.   SAMSUNG PURCHASED THE PATENT -- I'M SORRY -- PURCHASED THE
9      PATENT IN SEPTEMBER OF 2010.
10     Q.   AND FOR HOW MUCH?
11     A.   $2.3 MILLION.
12     Q.   NOW LET'S GO TO THE '449 PATENT.
13          CAN SDX 3923 BE PLACED UP.
14          AND WHAT DID YOU UNDERSTAND THE FEATURES AND THE ACCUSED
15     PRODUCTS TO BE THERE?
16     A.   THE ACCUSED FEATURE IN THIS CASE IS THE DISPLAY OF THE
17     NUMBER OF PHOTOS OR VIDEOS IN, NEAR THE TITLE IN THE ALBUM, AND
18     THE ACCUSED PRODUCTS ARE THE IPHONES 4, 4S, AND 5, AND THE IPOD
19     TOUCH, FOURTH AND FIFTH GENERATION.
20     Q.   CAN YOU TELL THE JURY WHAT APPROACH YOU DEVELOPED IN ORDER
21     TO ESTIMATE WHAT THE REAL REASONABLE ROYALTY DAMAGES WOULD BE?
22     A.   SURE.  YOU'VE HEARD THE GEORGIA-PACIFIC FACTORS FROM OTHER
23     WITNESSES.  I APPLIED THE GEORGIA-PACIFIC APPROACH.  THERE ARE
24     15 FACTORS.
25          FACTOR 15 SUGGESTS A HYPOTHETICAL NEGOTIATION BEFORE

1    INFRINGEMENT, AND FACTORS 1 THROUGH 14 THEN FRAME AND INFORM
2    HOW YOU THINK ABOUT THAT HYPOTHETICAL NEGOTIATION.  AND THAT'S
3    THE APPROACH THAT I TOOK.
4    Q.   WITH REGARD TO THE HYPOTHETICAL NEGOTIATION THAT YOU
5    DEVELOPED AS YOUR MODEL, WHO WERE THE PARTICIPANTS IN THAT
6    NEGOTIATION?
7    A.   INFRINGEMENT OCCURS BEFORE THESE PATENTS ARE SOLD, SO IN
8    THE '239 PATENT, THE PARTIES WOULD BE APPLE AND THE OWNER OF
9    THE PATENT AT THE TIME, VOCI; AND FOR THE '449 PATENT, IT WOULD
10   BE APPLE AND THE OWNER OF THE PATENT AT THE TIME, HITACHI.
11   Q.   WHY DID YOU CONCLUDE THAT THE REASONABLE ROYALTY DAMAGES
12   THAT YOU CALCULATED THAT SAMSUNG'S ENTITLED TO?
13   A.   SAMSUNG PURCHASED BOTH OF THOSE PATENTS AND IT OWNED THEM
14   DURING THE RELEVANT DAMAGES PERIOD.
15   Q.   OKAY.  HAVE YOU DEVELOPED AN OPINION BASED UPON YOUR
16   ANALYSIS OF THE REASONABLE ROYALTY DAMAGES RESULTING FROM THE
17   INFRINGEMENT OF THOSE TWO PATENTS?
18   A.   I HAVE.
19   Q.   MAY SDX 3942 BE PLACED IN FRONT OF THE WITNESS.
20        OKAY.  AND WHAT DOES THIS SHOW?
21   A.   I ESTIMATE THAT THE REASONABLE ROYALTY DAMAGES FOR THE
22   '239 PATENT FOR THE THREE FEATURES TOGETHER, THAT IS, PUT
23   TOGETHER, IS $6,067,788; AND THAT THE REASONABLE ROYALTY FOR
24   THE '449 PATENT FOR THE SINGLE FEATURE IS $158,400.
25   Q.   OKAY.  CAN WE PUT UP SDX 3925.

1      IN ARRIVING AT YOUR DAMAGES OPINION, WHAT MATERIALS DID
2   YOU REVIEW AND ANALYZE AND RELY ON?
3   A.    THERE WAS AN ENORMOUS AMOUNT OF INFORMATION FROM APPLE,
4   FROM THIRD PARTY SOURCES, PUBLICLY AVAILABLE INFORMATION.
5         IN THE CATEGORIES THAT I SUGGESTED IN THIS DEMONSTRATIVE,
6   I REVIEWED ALL OF THAT INFORMATION, OR HAD MY STAFF REVIEW IT,
7   AND CONCLUDED FROM THAT THAT PARTICULARLY THE FACETIME USE WAS
8   VERY IMPORTANT TO APPLE, THAT APPLE ADVERTISED IT, IT TALKED
9   ABOUT IT A LOT.
10        THE OTHER TWO FEATURES WERE TALKED ABOUT LESS, BUT WERE
11  TALKED ABOUT BY APPLE.
12        THE '449 FEATURE, THE NUMBER OF THE ALBUMS, WAS NOT REALLY
13  NOTED IN THESE DOCUMENTS, SO IT WAS A USEFUL FEATURE, BUT NOT
14  AS IMPORTANT AS THE FACETIME AND THE FEATURES IN THE '239
15  PATENT.
16  Q.    UNDER ALL THOSE MATERIALS THAT YOU REVIEWED, DID YOU
17  REVIEW APPLE'S -- A VIDEO OF APPLE'S JUNE 7TH, 2010 LAUNCH
18  EVENT OF THE IPHONE 4?
19  A.    I DID.
20  Q.    MAY SDX 3928 BE PLACED ON THE SCREEN.
21        CAN YOU TELL US WHAT THAT IS?
22  A.    SURE.  THIS IS A SCREEN SHOT FROM THAT VIDEO.  AT THIS
23  CONFERENCE, STEVE JOBS ANNOUNCES THE IPHONE 4, AND -- WITH A
24  LOT OF FANFARE, HE ANNOUNCES FACETIME, A FEATURE OF THAT PHONE.
25        HE THEN DEMONSTRATES THE FEATURE BY MAKING A CALL TO

1   TONY IVES USING FACETIME, AND AFTER THAT, HE'S COMMENTING ON
2   SORT OF WHAT THE FEATURE WILL BE, OR WHAT THEY HOPE THE FEATURE
3   BECOMES.
4        SO HE SAYS THAT THE FEATURE IN 2010 WILL BE WI-FI ONLY,
5   BUT THAT APPLE ANTICIPATES OR HOPES THAT IT CAN BECOME FACETIME
6   OVER CELLULAR AS WELL.
7   Q.   DID APPLE EVENTUALLY MAKE FACETIME AVAILABLE OVER
8   CELLULAR?
9   A.   IT DID.  TWO YEARS LATER AT A JUNE CONFERENCE, IT
10  ANNOUNCED IOS 6, AN OPERATING SYSTEM THAT MADE FACETIME OVER
11  CELLULAR POSSIBLE.
12  Q.   CAN WE PUT UP SDX 3930, PLEASE.
13  A.   THIS IS A SCREEN SHOT FROM THAT VIDEO THAT I REVIEWED.
14  AGAIN, IN JUNE OF 2012, SCOTT FORSTALL, WHO WAS THEN THE
15  VICE-PRESIDENT FOR TECHNOLOGY FOR APPLE, INDICATES -- YOU CAN
16  READ THE QUOTE, BUT HE SAYS THAT FACETIME IS A TERRIFIC WAY TO
17  HAVE VIDEO CALLS, BUT IT HAS THIS ONE LIMITATION, IT'S ONLY
18  AVAILABLE OVER WI-FI, AND THAT HE'S HERE TO ANNOUNCE THAT
19  THERE'S A NEW FEATURE -- OTHER FEATURES WERE ANNOUNCED AS
20  WELL -- BUT IT WAS THIS FEATURE IN WHICH IOS 6 WOULD ENABLE
21  FACETIME OVER CELLULAR.
22  Q.   OKAY.  CAN WE PUT UP SLIDE SDX 3938.
23       AND I WANT TO WALK THE JURY THROUGH THE METHODOLOGY YOU
24  USED TO GET THOSE DAMAGE NUMBERS.  CAN YOU JUST GIVE US AN
25  OVERVIEW OF WHAT THAT IS?

DIRECT KEARL                                                            2663

```
 1    A.   SURE.  IN ORDER TO DERIVE A REASONABLE ROYALTY, I -- THERE
 2         WERE FIVE STEPS.
 3              THE FIRST OF THE STEPS IS THAT APPLE, IN THE NEGOTIATION,
 4    WOULD BE WILLING TO PAY MORE IF IT SOLD LOTS OF UNITS THAT
 5    INCORPORATED THE INFRINGING, AND LESS IF IT SOLD FEWER.  SO I
 6    USED THE NUMBER OF INFRINGING UNITS DERIVED FROM APPLE
 7    FINANCIAL DOCUMENTS.
 8              BUT APPLE, IN THE HYPOTHETICAL NEGOTIATION, WOULDN'T BE
 9    WILL TO PAY FOR ALL OF THOSE UNITS IF IT THOUGHT ONLY PART OF
10    THE PEOPLE WHO HAD THE INFRINGING FUNCTIONALITY WOULD BE USING
11    IT, SO I ADJUSTED THAT DOWNWARD BY THE USAGE RATE.
12    Q.   WHERE DID YOU GET THE USAGE RATE?
13    A.   I GOT THE USAGE RATE FROM DR. RAO'S SURVEY.
14    Q.   NOW WE'RE DOWN TO THE THIRD CIRCLE THERE THAT SAYS $.99
15         MAC FACETIME APP.  WHAT'S THAT?
16    A.   I HAVE A QUANTITY, AND NOW I HAVE TO GIVE A DOLLAR VALUE
17         TO THAT QUANTITY.  APPLE ACTUALLY SOLD FACETIME AS AN APP FOR
18         THE MAC FOR $.99, SO I USED THAT MARKET PRICE FOR FACETIME AS A
19         WAY OF MONETIZING THE QUANTITY.
20    Q.   AS A TRAINED ECONOMIST, DID YOU REVIEW THIS EVIDENCE OF
21         DEMAND FOR THAT FACETIME APP AT THE PRICE OF $.99?
22    A.   SURE.  APPLE PUT THIS UP.  MR. JOBS INDICATED THAT, WHEN
23         HE ROLLED OUT THE IPHONE 4, THAT THE NUMBER ONE DEMAND FOR MAC
24         USERS WAS FACETIME ON THE MAC.  WHEN THEY FINALLY MADE IT
25         AVAILABLE, ABOUT 900,000 PAID APPS WERE DOWNLOADED FOR THE MAC.
```

KEARL01754

DIRECT KEARL                                                                    2664

1           FOR THE FIRST FOUR WEEKS AFTER IT WAS ANNOUNCED, IT WAS
2      THE NUMBER ONE DOWNLOAD, PAID DOWNLOAD, FOR MACS.
3           AND FOR 31 WEEKS IN THE NEXT 18 MONTHS OR SO, IT WAS IN
4      THE TOP 10 OF PAID DOWNLOADS FOR THE MAC.
5      Q.   OKAY.  NOW, USING YOUR METHODOLOGY, YOU'VE BEEN WALKING US
6      THROUGH THE FACETIME PART OF THE PATENT.
7           NOW WE'RE AT THE RELATIVE VALUE.  WHAT DID YOU HAVE TO DO
8      SPECIAL FOR THE FACETIME PORTION?
9      A.   WELL, IT TURNS OUT THAT ON THE IPHONE, YOU CAN MAKE
10     FACETIME CALLS EITHER BY WI-FI OR YOU CAN MAKE THEM BY
11     CELLULAR.
12          WI-FI IS NOT ACCUSED OF INFRINGING THE PATENT, CELLULAR
13     IS.  SO I NEEDED TO APPORTION THE $.99 BETWEEN THE VALUE THAT
14     CONSUMERS PUT ON WI-FI, THE CELLULAR -- FACETIME OVER WI-FI
15     VERSUS FACETIME OVER CELLULAR.
16          AND TO DO THAT, I USED THE RELATIVE VALUE SCORES DERIVED
17     FROM DR. RAO'S SURVEY.
18          IT TURNS OUT THAT WHEN YOU CALCULATE THIS, THAT THE
19     RELATIVE VALUE IS ABOUT HALF, THAT IS, PEOPLE PUT ABOUT HALF
20     THE VALUE ON FACETIME OVER WI-FI AND ABOUT HALF THE VALUE ON
21     FACETIME OVER CELLULAR.
22          SO THE FOURTH CIRCLE, TIMES THE THIRD CIRCLE, IS ABOUT
23     $.50.
24     Q.   OKAY.  AND WITH THE OTHER TWO FEATURES THAT WE SAW ON THE
25     '239 PATENT, HOW DID YOU MONETIZE THEM?

KEARL01755