IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC.,

    Plaintiff,

  v.

GOOGLE INC.,

    Defendant.

No. C 10-03561 WHA

**ORDER RE WILLFULNESS AND BIFURCATION**

## INTRODUCTION

In this copyright-infringement action, defendant moves to preclude submitting the issue of willfulness to the jury unless and until plaintiff elects to pursue statutory damages. For the reasons stated below, defendant's motion is **DENIED**. This order further addresses procedural matters related to the issue of willfulness.

## STATEMENT

Prior to this civil action, plaintiff Oracle America, Inc., acquired the copyrights in the programming platform known as Java. Defendant Google Inc. used Java to compose its Android operating system used in mobile devices. Using the Java language itself violated no copyright, all agree, and 95 percent or more of Android constituted an original work by Google. The remaining five percent has been the issue. The United States Court of Appeals for the Federal Circuit held that the remaining five percent infringed the structure, sequence, and organization of

37 packages of the Java Application Programming Interface. That court reversed a decision by this Court that had held the Java structure, sequence, and organization constituted a non-copyrightable "method of operation" within the meaning of Section 102(b) of the Copyright Act. It remanded the case for further proceedings on Google's fair use defense (and, Google contends, its equitable defenses) as well as Oracle's remedies, including injunctive relief and damages, which Oracle claims exceed one billion dollars.[1]

For the retrial, both parties intend to put on evidence that pertains to Google's state of mind at the time it incorporated the infringed elements of the Java platform into Android, inasmuch as Google's good or bad faith may be relevant to its fair use defense. For example, the court of appeals has already acknowledged that Google's claimed intent to achieve "interoperability" is relevant to the fair use analysis. *Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339, 1337–38 (Fed. Cir. 2014).

After the remand, the parties submitted a statement on issues to be resolved at trial. Although the parties agreed that Google's fair use defense and Oracle's remedies remained, Oracle contended that the issue of willfulness must be submitted to the jury inasmuch as a verdict on that issue would be necessary to the calculation of its damages. On the other hand, Google replied that willfulness remained irrelevant inasmuch as Oracle has not elected to receive statutory damages, an unlikely possibility in light of the large actual damages and profits Oracle seeks to recover. To tee this up, Google was allowed to file a motion to preclude submitting the issue of willfulness to the jury. This order follows full briefing and oral argument. The parties have also submitted supplemental memoranda, which confirmed that neither side is aware of evidence uniquely relevant to willfulness only (Dkt. Nos. 1304, 1306).

## ANALYSIS

The Copyright Act provides for two mutually-exclusive forms of monetary recovery: (i) actual damages and infringement profits and (ii) statutory damages. Section 504(b), which addresses actual damages and infringement profits, provides:

---

[1] The copyright appeal herein was taken to the Federal Circuit rather than the Ninth Circuit because the appeal included subsidiary patent issues which were then abandoned after the appeal was docketed.

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

As for statutory damages, Section 504(c) provides, in relevant part:

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

Section 504(c)(2) further allows the court in its discretion to increase the award of statutory damages up to $150,000 if the copyright owner "sustains the burden of proving, and the court finds, that infringement was committed willfully." Notwithstanding the "court finds" language, the Seventh Amendment provides a right to have a jury determine all issues pertinent to the award of statutory damages, including the amount itself. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998).

Although the Act does not offer any definition of willfulness, our court of appeals has found that a copyright infringer is willful for the purposes of statutory damages if it acted with "knowledge that [its] conduct constituted an act of infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335–36, n.3 (9th Cir. 1990).

Because Oracle is entitled to elect statutory damages "at any time before final judgment is rendered," both measures of damages now remain available in our case. Although willfulness is only directly mentioned by the Act with respect to statutory damages, Oracle insists that willfulness is also relevant to the measure of Google's profits as well, so a jury verdict on willfulness will be necessary regardless of Oracle's election of damages because, it argues, willful infringement would enlarge the recoverable measure of infringement profits. Google

3

responds that willfulness is not relevant to actual damages under Section 504(b), so the issue should not be submitted to the jury unless and until Oracle elects to receive statutory damages.

### 1. WILLFULNESS AND INFRINGEMENT PROFITS.

To repeat, Section 504(b), which entitles a copyright owner to its actual damages and infringement profits, makes no mention of willfulness. The Act specifically provides that it is the copyright owner's burden to present proof of the infringer's gross revenue from the infringing product, and it is the infringer's burden to prove its "deductible expenses" and the elements of its profits "attributable to factors other than the copyrighted work." Oracle argues that willfulness bars an infringer, in calculating its expenses, from deducting overhead expenses that would be deductible in a case of innocent infringement.

The idea that certain expenses could not be deducted in the calculation of a willful copyright infringer's profits first arose in *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45 (2d Cir. 1939). There, the Court of Appeals for the Second Circuit reviewed a district court decision awarding a playwright the entire profits from a film that incorporated portions of that playwright's work. The profits had been calculated by a special master, whose findings were adopted by the district court. The court of appeals found — contrary to both the special master and the district court — the infringement at issue had been "deliberate plagiarism," given that the infringer had plainly "lifted the play," as evidenced in a "step by step tracking" of the infringer's work when compared to the copyright owner's work. The court of appeals considered that finding as it reviewed the damages calculations and ruled the copyright holder was not entitled to the profits that the infringer could prove were attributable to factors other than the exploitation of the copyrighted work. It held, however, that the special master erred in allowing the infringer to deduct its income taxes from its revenue in light of the deliberate nature of the infringement (*id.* at 53):

> From what we have already said regarding the defendants' guilt, it appears that the master was wrong. It does indeed seem somewhat arbitrary to distinguish this from other expenses necessary to the business; yet on the other hand the distinction illustrates that in dealing with a conscious wrong-doer, courts do not feel obliged for consistency's sake to take one extreme or the other.

4

That conclusion rested on an earlier decision of the Supreme Court in *L.P. Larson, Jr., Co. v. William Wrigley, Jr., Co.*, 277 U.S. 97 (1928), in which the plaintiff brought claims at common law for trade dress infringement and unfair competition (before the Lanham Act). The plaintiff sought the infringer's profits as damages. The infringer sought to deduct the "federal income and excess profits taxes" that it had already paid from its gross revenues in the calculation of the plaintiff's award. Although the Supreme Court noted that a plaintiff seeking to make an infringer "its agent or trustee ex maleficio and to demand the profits made by the agent," it also held that the plaintiff "must take the burden with the benefit and can have no more than the agent made in fact." *Id.* at 99. Nevertheless, *Larson* found that even if a willful infringer was entitled to deduct the expenses that were necessary to produce the infringing product from his gross revenue, "it [did] not follow that [it] should be allowed what [it] paid for the chance to do what [it] knew [it] had no right to do." Accordingly, the infringer was not entitled to a deduction for its federal income and excess profits taxes. That conclusion was reinforced by the fact that the plaintiff would have to pay a tax on the recovery from the litigation anyway, and such a duplicate deduction should be avoided in the case of "conscious and deliberate wrongdoing." *Id.* at 100. *Larson* only addressed the question of whether the infringer "should be allowed to deduct the federal income and excess profits taxes from the profits with which it is to be charged." *Id.* at 99. The lower court had allowed deductions for advertising, interest on invested capital, and depreciation, which were not raised at the Supreme Court. *L.P. Larson, Jr., Co. v. William Wrigley, Jr., Co.*, 20 F.2d 830, 832 (7th Cir. 1927).

*Sheldon* found that because the infringement was willful, the infringer got deductions for "only such factors that were bought and paid for; the actors, the scenery, the producers, the directors and the general overhead," in creating the infringing work, to the exclusion of factors that did not contribute to the creation of the work such as "the effect of their standing in reputation in the industry . . . ." *Sheldon*, 106 F.2d at 51. The Supreme Court ultimately affirmed *Sheldon* but only addressed the issue of apportionment of the profits according to which profits were attributable to the infringed work. It expressly declined to address the issue of which expenses could be deducted. *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390,

1  405 (1940). The description of infringement profits in Section 504(b) of the 1976 Act was based
2  on similar language in the 1909 Act. Therefore, this order presumes that case law like *Sheldon*
3  continues to have applicability.[2]

4  Oracle argues that *Sheldon* has evolved to permit a jury to consider whether to disallow
5  some or all of a willful copyright infringer's fixed overhead expenses as deductions in the
6  calculation of its profits. It is true that Google has the burden to prove that its claimed
7  deductible expenses actually helped generate the revenue sought by the copyright owner.
8  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. ___, 134 S. Ct. 1962, 1973 (2014).
9  Nevertheless, an examination of the decisional law on this issue finds no authoritative support
10  for altering the calculus of "deductible expenses" where the infringement at issue was willful,
11  except as to income and excess profits taxes. Our court of appeals has indicated that a deduction
12  for income tax and excess profits taxes should be disallowed where the infringement is willful,
13  as now explained.

### A.   *Sheldon* in the Ninth Circuit.

Our court of appeals has examined *Sheldon* only via dicta.

*Kamar International, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331 (9th Cir. 1984),
addressed a copyright owner's argument that *Sheldon* stood for the "proposition that a court may
automatically deny a willful infringer any deduction of overhead expenses." *Kamar* found that
the district court erred in finding the infringer was not willful for the purposes of statutory
damages but further held that the infringer's conduct did not rise to the level of "deliberate
plagiarism" contemplated by *Sheldon*. *Kamar* did not fully define deliberate plagiarism, noting
only that it involved a sense of "intent or moral blame." *Ibid. Kamar* went on to hold that
*Sheldon* could not be read to "disallow all overhead," as the copyright owner in *Kamar*

---

[2] Oracle has also cited numerous aspects of the legislative history leading to the 1976 Copyright Acts to demonstrate that *Sheldon* survived the adoption of the 1976 Act. For example, a 1958 report authorized by Congress and prepared by the Copyright Office noted the difficulty in apportioning overhead in the calculation of an infringer's profits, and cited *Sheldon* as an example of the challenges of apportionment. Ralph S. Brown, Jr., *Study No. 23: The Operation of the Damages Provisions of the Copyright Law* 71–72 (May 1958). In 1961, the Copyright Office recommended against a statutory enumeration of deductible costs, and instead recommended maintaining the approach that had developed in the courts. Register of Copyrights, *Report on the General Revision of the U.S. Copyright Law* 102 (July 1961). None of those reports addressed willfulness.

6

contended, and that *Sheldon* did "not necessarily apply to less than 'deliberate plagiarism.'" *Ibid. Kamar* did not discuss income or excess profits tax deductions.

In *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985), the district court had determined, and our court of appeals then agreed, that the infringement at issue was not "conscious and deliberate." Thus, the accused was entitled to deduct its overhead because "a portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate." *Id.* at 515 (citing *Kamar*, 752 F.2d at 1331). Because the infringement was not willful, the statement "at least where the infringement was not willful," was a dictum for our immediate purposes.

In *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000), our court of appeals reviewed a district court decision that allowed two non-willful infringers to deduct income taxes in the calculation of profits but did not allow such a deduction for a willful infringer. Citing to *Larson*, the Supreme Court's earlier trade dress decision, *Three Boys* stated "[t]he Supreme Court held that willful infringers could not deduct income taxes, but it left open the possibility that non-willful infringers could deduct their income taxes from the infringing profits." *Ibid.* That question went unresolved in *Three Boys* because the willful infringer had never paid income tax on the infringement profits in the first place (but instead used its income tax liability as an offset on its parent company's net operating loss carry-forward). Because the determinative factor was that no income tax had been paid, rather than the willfulness of the infringer, the apparent endorsement of the rule that a willful infringer may not deduct income taxes in *Three Boys* was dictum. Nevertheless, that decision remains the clearest indication of how our court of appeals would address our key issue, namely, that a willful infringer would not be permitted to deduct its income or excess profits taxes attributable to the revenues sought to be recovered as its profits under Section 504(b).

Turning to district court decisions in our circuit, Oracle cites a decision on a motion for a new trial, which reviewed an instruction to the jury that the accused could not deduct any overhead expenses if the jury found willfulness. *Harper House, Inc. v. Thomas Nelson, Inc.*, No. C 85-4225 (C.D. Cal. Aug. 28, 1987) (Judge Pamela Rymer), *rev'd on other grounds*,

7

889 F.2d 197 (9th Cir. 1989). That decision found the infringer's objections to the instruction unavailing because it had not raised that objection prior to the charge to the jury and, in fact, the instruction had been a joint proposal (moreover, the district court found its instruction had not been plain error). The reversal became anchored in errors pertaining to the instructions on copyrightability. *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 208 (9th Cir. 1989).

Finally, in *Oracle International Corp. v. SAP AG*, No. C 07-1658, 2012 WL 11883865 (N.D. Cal. May 29, 2012) (Chief Judge Phyllis Hamilton), Oracle filed a motion *in limine* seeking to preclude all evidence of the accused's deductible expenses, given that it had conceded the issue of willfulness. Oracle cited, as it does here, the Ninth Circuit Manual of Model Jury Instructions which, in Comment 17.27, stated "[g]enerally, deductions of defendant's expenses are denied where the defendant's infringement is willful or deliberate" (citing *Kamar*, 752 F.2d at 1331 and *Frank Music*, 772 F.2d at 515). Chief Judge Hamilton rejected Oracle's argument, noting that the language of Section 504(b) (regarding infringement profits) makes no distinction between willful and non-willful infringers, whereas Section 504(c) (regarding statutory damages) does so expressly. The model jury instructions, she added, had no binding effect (plainly, they do not). *Kamar* constituted mere dictum, she recognized. Accordingly, Oracle's motion to preclude evidence of any overhead deductions failed. The jury was ultimately instructed that "[e]xpenses are all operating costs, overhead costs, and production costs incurred in producing Defendant's gross revenue." *Id.*, ECF No. 1005 (Nov. 23, 2010). There was no instruction giving the jury any discretion to disallow certain deductible expenses based on willfulness. On appeal, the decision to allow evidence of deductions went unaddressed, but the appellate decision noted that Oracle's argument in favor of preclusion of the deductions relied heavily on the dicta in *Frank Music*. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1096 (9th Cir. 2014).

Model instructions in our circuit are drafted by a committee of lawyers and district judges who often delegate the job to a small subcommittee, sometimes a subcommittee of one, and in no way represent the official view of our court of appeals. Model instructions have no authoritative force whatsoever.

8

\*              \*              \*

In sum, our court of appeals has not explicitly found that even federal income or excess profits taxes should be precluded as deductible expenses in calculating a willful copyright infringer's profits. Nevertheless, this order finds that the most likely outcome in our circuit will be that such taxes will be disallowed for a "deliberate plagiarist," but all other categories of deductible expenses will be allowed, even for a "deliberate plagiarist," so long as it is proven they contributed to generating the infringement revenue.

### B. *Sheldon* in Other Circuits.

Oracle also points to several decisions from other circuits.

*First*, Oracle cites *Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99, 106 (2d Cir. 1951), but notes that decision was consistent with *Sheldon* in that it was limited to income taxes and did not stand for an expansion of *Sheldon*. There, the Second Circuit decided that in light of the defendants' "[o]pen and unabashed piracy," evidenced by their use of a false copyright label, the defendants were not entitled to deduct their income taxes from their gross revenues, contrary to the determination of the district court. No other deductions were disputed at either the district court or appellate level.

The Sixth Circuit, in a design patent case, examined the purpose of *Sheldon*'s disallowance of income taxes for willful infringers and posited that income tax should not be deductible regardless of willfulness. *Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166 (6th Cir. 1980). Specifically, that decision noted that a plaintiff must pay taxes on whatever judgment it is awarded through infringement litigation, so allowing an infringer to deduct its taxes in the calculation of that judgment would effectively result in a double taxation on the sum the plaintiff ultimately receives. Awarding pre-tax profits, the Sixth Circuit found, "assures that the profit to the wrongdoer is fully extracted." *Id*. at 1171. Because patent law made no distinction between willful and non-willful infringers, the defendant was not entitled to deduct its income taxes on the revenues from the infringing product, even though the infringement was not "conscious and deliberate."

The Second Circuit has disagreed with *Schnadig* and has held that the disallowance of an income tax deduction is limited to willful infringers in the context of copyright infringement. *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 567 (2d Cir. 1994),

The Second Circuit, in *Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999), addressed a district court's decision to outright deny all overhead deductions to a willful infringer. The appellate decision found that *Sheldon* should not be abandoned "in favor of a hard and fast rule denying all overhead deductions to willful infringers," but rather, in order to prevent willful infringers from "subsidiz[ing] the sale of legitimate goods with the sale of infringing goods by passing part of its fixed cost on to the copyright holder," the infringer must show a "strong nexus" rather than merely a "sufficient nexus" between a claimed deductible expense and the revenues sought to be recovered. That decision did not offer guidance as to the distinction between those standards, nor did it offer any reason that the law should be any less discerning in relieving a copyright owner from subsidizing a non-willful infringer's legitimate activity as compared to a willful infringer or vice versa.

Our court of appeals has not adopted (or rejected) the "strong nexus" test set forth in *Hamil*. In our circuit, *Kamar* held that overhead expenses should be deducted "only when the infringer can demonstrate it was of actual assistance in the production, distribution or sale of the infringing product," which it held was a question of fact. *Kamar* did not posit a stricter standard for allowing deductions based on an infringer's willfulness. 752 F.2d at 1332.

Oracle cites decisions from other circuits and district courts that have instructed juries to disallow deductions at their discretion beyond income taxes for willful infringers, albeit without any specific instructions for the exercise of that discretion. Ultimately, every single decision that Oracle cites for that proposition relies on the dicta discussed above, or an entry in a treatise that, itself, relies thereon. *E.g.*, *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (citing the dictum in *Frank Music*, 772 F.2d at 515). At oral argument, Oracle specifically discussed *Williams v. Bridgeport Music, Inc.*, No. 13-06004, ECF No. 322 at Jury Instruction No. 38 (C.D. Cal. Mar. 10, 2015) (Judge John Kronstadt), in which the jury was instructed that "[o]verhead costs may not be deducted where a party's infringement is willful." The copyright holder advocated

10

1 for that instruction by citing *Three Boys*, *Frank Music*, *Kamar*, and the model jury instructions.
2 No appeal was taken.

3     In sum, although there is a substantial body of decisions supporting a disallowance of a
4 deduction of income and excess profits taxes in calculating a willful infringer's profits, the
5 decisions that expand that disallowance to other categories of overhead expenses are problematic
6 and unpersuasive.

### C.     Deductions of Overhead Expenses at Common Law.

8     Oracle further points to common law actions to disallow deductions of all overhead
9 expenses in the calculation of a willful infringer's profits. Specifically, Oracle cites *E.E. Bolles*
10 *Wooden-Ware Co. v. United States*, 106 U.S. 432, 434 (1882), a trover action wherein the
11 Supreme Court required defendant who had sold timber stolen during a willful trespass onto
12 government land to pay a judgment for "the value of the whole of the property," without any
13 allowance for the expenses he would have been allowed to deduct had he been working with the
14 government by agreement. A contrary rule would "give encouragement and reward to the
15 wrong-doer." That principle was reaffirmed in subsequent decisions at common law. *E.g.*, *Pine*
16 *River Logging & Imp. Co. v. United States*, 186 U.S. 279, 292–95 (1902). Oracle argues that the
17 Supreme Court reached its decision in *Larson* against the backdrop of the principles of the
18 common law of trover and, as such, that decision should be understood to permit a trier of fact to
19 disallow fixed expenses in order to deter willful infringement and to avoid allowing an infringer
20 to use its infringement to subsidize its non-infringing business.

21     Our court of appeals has never resorted to the federal common law of trover as a
22 yardstick for remedies under the Copyright Act. This order will not start such a trend.

### D.     Summary.

24     In light of the above, this order finds the best statement of the law is that an infringer who
25 has been shown by the copyright owner to have been a willful, conscious, and deliberate
26 plagiarist, in a sense of moral blame, of the copyrighted material may not deduct any income
27 taxes or excess profits taxes from its gross revenues in the calculation of its infringement profits.
28

No decision has yet addressed whether deductions for analogous state taxes should be disallowed in addition to federal taxes. This order finds that the rationale for disallowing federal income and excess profits taxes in *Sheldon* and subsequent decisions must be extended to exclude from a willful infringer's deductions of such taxes when levied by bodies other than the federal government. Otherwise, all other overhead deductions will be allowed regardless of willfulness, to the extent Google proves the claimed expenses were "of actual assistance in the production, distribution or sale of the infringing product." *Kamar*, 752 F.2d at 1332.

Google notes that throughout this litigation it "has never claimed a deduction for income taxes in its expert reports in this case" (Def.'s Reply at 2). Nevertheless, it is not presently bound by that position. Thus, although this order finds a jury must render a verdict on willfulness in order to determine whether Google may deduct its income and excess profits taxes in the calculation of its profits, it is plausible that Google could obviate that particular issue by stipulating that it will not seek a deduction for its income or excess profits taxes — subject however, to the important procedural ruling next considered.

### 2. WILLFULNESS AND STATUTORY DAMAGES.

The parties do not dispute the role of willfulness in the calculation of statutory damages. Section 504(c) plainly provides that a copyright owner that proves an infringer's conduct was willful is entitled to a damages award of up to $150,000 per work infringed, up from the standard maximum of $30,000. In this context, a copyright owner proves an infringer was willful if it shows the infringer acted with "knowledge that [its] conduct constituted an act of infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335–36, n.3 (9th Cir. 1990). Although the Act does not specifically require a jury trial on the issue of willfulness or the damages award, the Supreme Court has held that the Seventh Amendment requires a jury trial on the measure of damages under Section 504(c). *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998).

The issue here is whether willfulness must be submitted to the jury regardless of its relevance to Oracle's claimed damages under Section 504(b), in case Oracle should elect to receive statutory damages, however unlikely that may be. The parties agree, and the Court is

convinced, that the statutory language of Section 504(c), which allows a plaintiff to elect statutory damages "at any time before final judgment is rendered," prevents the Court from compelling Oracle to elect its measure of damages early on.

In order to reduce the burden on the jury, this order now rules that the issues of damages and willfulness will be presented to the jury only if the jury rejects the fair use defense. If the jury sustains Google's fair use defense, we will all be saved the burden of sorting through Oracle's multiple and complicated damage theories. If the defense is rejected, the same jury will hear the damages evidence for both brands of damages and any further willfulness evidence not previously presented. The jury will then make a finding on willfulness and render a verdict on *both* damages possibilities. This bifurcation is the best way to minimize the uncertainties and burdens flowing from Oracle's insistence on saving both alternatives to the last possible moment. If the jury finds no willfulness, then Oracle's contention that more than taxes should be disallowed will become moot and a retrial on that issue will be completely avoided.

## CONCLUSION

For the reasons stated above, Google's motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 18, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE