Pages 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

ORACLE, INC.,                    )
                                 )
          Plaintiff,             )
                                 )
   VS.                           )    NO. C 10-03561 WHA
                                 )
GOOGLE, INC.,                    )
                                 )
          Defendant.             )
_____  )

                        San Francisco, California
                        Thursday, September 17, 2015

                **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                    ORRICK, HERRINGTON & SUTCLIFFE LLP
                    51 West 52nd Street
                    New York, New York 10019
              BY:   **PETER A. BICKS, ATTORNEY AT LAW**

                    ORRICK, HERRINGTON & SUTCLIFFE LLP
                    The Orrick Building
                    405 Howard Street
                    San Francisco, California  94105
              BY:   **ANNETTE L. HURST, ATTORNEY AT LAW**
                    **GABRIEL M. RAMSEY, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

1    **APPEARANCES**:   (CONTINUED)

2    For Defendant:
                        KEKER & VAN NEST LLP
3                       633 Battery Street
                        San Francisco, California  94111
4               BY:   **ROBERT A. VAN NEST, ATTORNEY AT LAW**
                      **CHRISTA M. ANDERSON, ATTORNEY AT LAW**
5                     **REID P. MULLEN, ATTORNEY AT LAW**
                      **DANIEL E. PURCELL, ATTORNEY AT LAW**
6
     For Rule 706 Expert, James R. Kearl:
7                       FARELLA, BRAUN & MARTEL LLP
                        Russ Building
8                       235 Montgomery Street
                        San Francisco, California  94104
9               BY:   **JOHN L. COOPER, ATTORNEY AT LAW**

10
     Also Present:          **MATTHEW SARBORARIA, ORACLE AMERICA, INC.**
11                          **RUCHIKA AGRAWAL, ORACLE AMERICA, INC.**
                            **RENNY HWANG, GOOGLE, INC.**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **Thursday - September 17, 2015**                              **9:09 a.m.** |

2                                P R O C E E D I N G S

3                                    ---000---

4          **THE CLERK:**  Calling Civil Case 10-3561, Oracle

5    America, Incorporated, versus Google, Incorporated.

6         Counsel, will you please step forward and make your

7    appearances.

8          **MR. BICKS:**  Good morning, Your Honor.  Peter Bicks

9    from Orrick for Oracle.

10         **THE COURT:**  Good morning.

11         **MR. BICKS:**  And Annette Hurst, my colleague, and Gabe

12   Ramsey is here.  Also from our client Matthew Sarboraria and

13   Ruchika Agrawal are here with us today.

14         **THE COURT:**  Wonderful.  Welcome to all of you.

15         **MR. VAN NEST:**  Good morning, Your Honor.  Bob Van Nest

16   for Keker & Van Nest for Google.  I'm here with Christa

17   Anderson --

18         **MS. ANDERSON:**  Good morning, Your Honor.

19         **MR. VAN NEST:**  -- Dan Purcell --

20         **MR. PURCELL:**  Good morning, Your Honor.

21         **MR. VAN NEST:**  -- Reid Mullen.

22         **MR. MULLEN:**  Good morning, Your Honor.

23         **MR. VAN NEST:**  And Renny Hwang is here from Google.

24   Good morning.

25         **THE COURT:**  Good morning.

1            **MR. COOPER:**  Good morning, Your Honor.  John Cooper is

2     here on behalf of Dr. Kearl, the Rule 706 expert.

3            **THE COURT:**  Thank you for coming today.  And, again,

4     the Court is very appreciative of Mr. Cooper who's doing all of

5     this *pro bono*.  You are great.

6            **MR. COOPER:**  Thank you.

7            **THE COURT:**  All right.  Everyone have a seat.

8        This is your motion, Mr. Van Nest, so I am totally up to

9     speed but I'll listen to whatever you have to say.

10            **MR. VAN NEST:**  Christa Anderson is going to handle

11     this motion, Your Honor.

12            **THE COURT:**  That's fine.  Ms. Anderson, your turn.

13            **MS. ANDERSON:**  Thank you, Your Honor.  Good morning.

14     Christa Anderson for Google.

15        Briefly, Your Honor, just to recap where we're at on this

16     motion, Google is here seeking an order from the Court

17     precluding the submission on the issue of willfulness to the

18     jury unless and until Oracle elects statutory damages in this

19     case.

20        Google made this motion for three reasons.  First of all,

21     willfulness is only relevant in these cases in situations where

22     the plaintiff has elected statutory damages.

23        In this case, as we've said in the papers --

24            **THE COURT:**  But, I mean, that's your position.

25            **MS. ANDERSON:**  Yes.

1     **THE COURT:**  But there is support for the -- some

2  support for the idea that even on actual damages, or profits is

3  really the -- infringer profits, that when it comes time to

4  deduct expenses, if it's willful conduct, you don't get to

5  deduct overhead.  So that's their position.  So you're glossing

6  over their whole point.

7     **MS. ANDERSON:**  Actually, Your Honor, I plan to get

8  right to it as I introduced our point, but I will jump right to

9  it in response to your question.

10     **THE COURT:**  All right.

11     **MS. ANDERSON:**  Your Honor, there is no support in the

12  Copyright Act and no binding cases, no authority for the notion

13  that in this -- in the Ninth Circuit that willfulness is

14  relevant in any situation where the plaintiff has elected to

15  pursue the actual damages prong.

16     Instead, the only situations where it is relevant is where

17  there is an election of statutory damages.  There have been

18  cases, including an Oracle case, *Oracle v. SAP*, in which Chief

19  Judge Hamilton recently explained why situations where, as

20  here, the plaintiff is seeking actual damages willfulness is

21  absolutely not relevant.  There is no authority in the

22  Copyright Act, and the authority on which some cases have

23  relied to make allusions to this doctrine is flawed both in

24  analysis and law.

25     This is a conclusion that wasn't just reached by Chief

1   Judge Hamilton in the *Oracle v. SAP* case.  It's the same

2   conclusion that was reached by the District of Washington in

3   the *ZZ Top* case recently explaining very clearly that in

4   Section 504(b) cases, actual damages cases as here, that

5   statute makes no distinction whatsoever between willful and

6   innocent infringers.

7        Similarly, the same conclusion was reached in the *Leonard*

8   case, a decision coming out of the District of Delaware in

9   2013.

10        In light of these decisions and in light of the recent

11   loss by Oracle in the *Oracle v. SAP* case on this issue, Oracle

12   now tries to change its argument yet again urging a newly

13   crafted discretionary rule not supported by any case law

14   suggesting that the jury could exercise some discretion whether

15   or not it wanted to allow certain deductible expenses.

16        There is no support in law whatsoever and, in fact, the

17   cases on which Oracle relies actually say that where the cases

18   come out suggesting that the deductible expense issue is

19   affected by willfulness, it's a flat-out rule.  It's not a

20   discretionary option for the jury.

21        So if the Court will allow me, I would like to just

22   highlight a few things that are important to this

23   consideration.

24        First, as I said, the Copyright Act is very clear.  The

25   word "willful" and the question of willfulness only appears

1   when it comes to a statutory damages election for relief.

2   There is no language in 504(b) relief suggesting that

3   willfulness is relevant.

4         Yet, Oracle here is suggesting that it can shoehorn this

5   issue of willfulness into the phrase "deductible expense."

6   Oracle's argument really presumes, counter to all rules of

7   statutory construction, that Congress didn't know how to use

8   the word "willful" when it meant to include it.  So right out

9   of the bat it contradicts statutory construction principles.

10        Unsurprisingly, there is not a single case that Oracle has

11   cited and no case that we're aware of that has ever held that a

12   jury has discretion to consider willfulness in weighing whether

13   or not it wants to apply a deductible expense.

14        There is no law whatsoever suggesting that.  This is a new

15   rule that Oracle is making up on the heels of the *Oracle v. SAP*

16   decision.

17        The reason why is because the question of deductible

18   expenses has always been treated by the law as a question of

19   law for the Court.  This is not a discretionary rule, and the

20   reason that Oracle is urging it here --

21              **THE COURT:**  It's for the jury, not for the Court.

22              **MS. ANDERSON:**  Right.

23              **THE COURT:**  You said for the Court.

24              **MS. ANDERSON:**  Right.  In case law, the question of

25   what is a deductible expense has always been a question of law

1   for the Court to decide.  Here, what Oracle is urging is it

2   should be treated as if it were a discretionary rule up to the

3   jury.

4        And the reason Oracle wants this, among other things, that

5   it wants to taint this trial with a question of willfulness

6   that is not permitted under the law, which invites the jury to

7   change sort of the tenor of the whole trial and to encourage

8   the jury to penalize Google when case law, including

9   Supreme Court authority cited by Oracle here, makes very clear

10  that if you're going to pursue a 504(b) form of relief, actual

11  damages, punitive purposes are not permitted.  It's the

12  compensatory statute is not allowed to go down the punitive

13  route.  That's in *Sheldon II*.

14       So this is a good point for me to turn to what is really

15  the primary authority that Oracle relies on in its briefing to

16  suggest that the jury has discretion to consider willfulness in

17  actual damages cases.

18       What Oracle has done here is attempt to conflate two

19  decisions, one I'll call *Sheldon I*, which is a Second Circuit

20  decision; and the second I'll call *Sheldon II*, which is the

21  appeal that ultimately went to the Supreme Court.

22       Oracle suggests in its briefing that there has been a

23  Supreme Court decision ruling on this issue deciding that the

24  question of willfulness is relevant to deductible expenses.

25  That is not the case.

1          *Sheldon II* did not address the question of deductible

2     expenses.   The *Sheldon II* decision, the Supreme Court decision,

3     was one in which there was a single question presented, whether

4     or not there should be apportionment.   And the apportionment

5     question was the focus of this Court's decision.   It was the

6     only question presented.   And it was that decision, finding

7     that apportionment was appropriate, that was, quote/unquote,

8     "enshrined" -- which is a word that Oracle uses in its

9     briefing -- that is what was enshrined in the Copyright Act.

10    Nothing about deductible expenses.

11         The Court in a single sentence at the end of the opinion

12    declined to address complaints by the petitioner about allowed

13    expenses, and the Court said, "Those are fact issues.   I don't

14    see any reason to disturb it," period.   No analysis, no

15    consideration whatsoever.

16         Moreover, what's notable about that sentence is the

17    sentence is talking about complaints by petitioner about

18    expenses that had been allowed.   It makes no reference

19    whatsoever to an expense that had been disallowed.   The income

20    tax expense, which is the expense that is the focus of Oracle's

21    arguments, the only one that raises this question of

22    willfulness, the only one that the court discussed is relevant

23    to willfulness or deliberate infringement.

24         So there is no support, no holding from the Supreme Court

25    for the notion that this deductible expense issue brings

 1    willfulness into this case.

 2         So what is Oracle relying on?  Well, it's turning again to

 3    findings by *Sheldon I*, the Second Circuit decision; and in the

 4    Second Circuit decision, the Court made findings including that

 5    a willful infringer cannot deduct income taxes.

 6         But the Second Circuit in *Sheldon I*, and this is a 1939

 7    case, the Second Circuit in *Sheldon I* relied for that rule on a

 8    1928 case called *LP Larson*, but that's a trade dress decision.

 9    It is not a Copyright Act decision.

10         And so that analysis is not something interpreting the

11    Copyright Act, it is not binding on this Court, and it

12    certainly was not affirmed by the Supreme Court in its decision

13    in *Sheldon II*.

14         For this reason, we submit, Oracle's argument suggesting

15    that this is something that's been decided absolutely is

16    without support.

17         The Ninth Circuit also has not sided with Oracle on this

18    issue.  There is no Ninth Circuit decision that has decided

19    this issue.  There have been a few decisions which have made

20    allusions to the fact that some courts have treated willfulness

21    as relevant to the question of certain deductible expenses; but

22    in each of those cases, those are statements made in dicta.  In

23    those cases the defendant was not found to be a willful

24    infringer.  The comments made were dicta and, in fact, Chief

25    Judge Hamilton and the court in Washington note that these are

1  comments made in decisions where there was not a willful

2  infringer involved.

3      And the Ninth Circuit in the appeal of *Oracle v. SAP* notes

4  that, although that appeal did not address this deductible

5  expense issue, the court in the Ninth Circuit makes a point to

6  say Oracle is relying heavily on dicta from the *Frank Music*

7  case.

8      So even there the law to which Oracle has pointed in this

9  case is not authority that should cause this Court to turn away

10  from the clear language in this Copyright Act, clear principles

11  of statutory construction, and very cogent and proper analysis

12  by, among others, Chief Judge Hamilton and other courts who

13  have found that willfulness is not an issue.  When you go the

14  504(b) route, it is not permitted under the statute.

15      And I'd be happy to respond to any questions, Your Honor.

16      **THE COURT:**  All right.  Okay.  Maybe I'll have some

17  later, but please have a seat and let's go to the other side.

18      **MS. ANDERSON:**  Thank you.

19      **MS. HURST:**  Your Honor, Annette Hurst for Oracle.

20      **THE COURT:**  Go ahead.

21      **MS. HURST:**  Your Honor, in at least seven cases that

22  we have supplied to the Court, jury instructions were approved

23  that took into effect the willfulness of the defendant in

24  determining deductions in the profits analysis.

25      Most recently in the *Williams* case in Los Angeles, the

1   Robin Thicke *Blurred Lines* song case, the Court instructed the

2   jury that it could disallow overhead deductions if the

3   defendant was found to be willful.

4        In the --

5             **THE COURT:**  I'm sorry.  What was the name of that

6   case?

7             **MS. HURST:**  Your Honor, that's *Williams versus*

8   *Bridgeport Music*.  Your Honor, all these cases are cited at

9   Docket 1306.

10            **THE COURT:**  And on appeal did -- what happened in that

11  case?

12            **MS. HURST:**  Your Honor, I don't know that an appeal

13  has been filed in that case; but, in any event, I doubt that

14  issue will be raised because the jury ultimately found

15  nonwillful infringement.  So I don't believe the matter will be

16  presented on appeal in that case, and this is true for each of

17  the cases.

18            **THE COURT:**  So did that -- who was the judge there?

19            **MS. HURST:**  Gosh.  One moment, Your Honor.

20                        (Pause in proceedings.)

21            **MS. HURST:**  Your Honor, I'm looking at the initials,

22  and they're JAK, and it's not coming immediately to mind.

23            **THE COURT:**  We'll think of it in a minute.

24            **MS. HURST:**  Your Honor, we will.

25            **THE COURT:**  All right.  But did anyone contest it in

1   that?

2          **MS. HURST:**   They did contest it in that case,

3   Your Honor.

4          **THE COURT:**   And so did that judge just use the model

5   instruction?

6          **MS. HURST:**   Your Honor, the Court augmented the model

7   instruction, and this is at Docket 1306-2.  We've supplied the

8   instruction that was given.  The Court modified the model

9   instruction to state, quote:  (reading)

10          "Overhead costs may not be deducted where a party's

11      infringement is willful," end quote.

12      Your Honor, in the other --

13          **THE COURT:**   Now, that's just a district judge talking.

14          **MS. HURST:**   It is, Your Honor.

15          **THE COURT:**   That has no real -- that's just if it's

16   persuasive.  And I have read these Ninth Circuit decisions,

17   Court of Appeals decisions, and I think the other side is

18   correct that there is no requirement in our circuit that

19   supports what you're saying.  There are district judges who've

20   done what you're saying, but is it correct that there's no

21   Court of Appeals decision?

22      I'm not saying that they've ruled it out either.  I just

23   don't think they've addressed it.

24          **MS. HURST:**   Your Honor, none of the Ninth Circuit

25   cases were appeals from the disallowance of overhead expense

1  deductions due to willfulness.  So in that sense, the Court is

2  correct and Google is correct, that it was not an expense was

3  deducted due to willfulness and then that matter was appealed.

4      In every case, though, the Court has taken pains to

5  repeatedly affirm that that scenario is still available.  *Three*

6  *Boys*, *Frank*, all of them, Your Honor.

7      And in noting that that scenario is available, numerous

8  courts all over the country have instructed juries that

9  overhead expenses may be disallowed or should be disallowed.

10      **THE COURT:**  Well, and even in the *Three Boys* case,

11  didn't the Ninth Circuit -- haven't they put it in terms of not

12  overhead but of income taxes?

13      **MS. HURST:**  Correct, Your Honor.

14      **THE COURT:**  So there's a huge difference between the

15  two.  Income taxes are a big item, but overhead would be huge.

16  So you're trying to get the whole thing.  You're trying to

17  knock out overhead, not just income taxes.

18      **MS. HURST:**  Correct, Your Honor.

19      **THE COURT:**  That's a big deal.  I don't think there's

20  any decision in the Court of Appeals that suggests that you

21  could knock out all overhead for a willful infringer --

22      **MS. HURST:**  Your Honor, I think *Frank* --

23      **THE COURT:**  -- even in dicta.

24      **MS. HURST:**  I think *Frank* supports that in dicta,

25  Your Honor.

1          **THE COURT:**  All right.  So let's see, read to me the

2     part that does support overhead.

3          **MS. HURST:**  Your Honor, as the Ninth Circuit put it in

4     *Oracle versus SAP* where the matter was raised on appeal, the

5     Ninth Circuit characterized Oracle's position as reliance on

6     dicta that, quote, "our case law precludes willful infringers

7     from deducting overhead costs," end quote.  That's 765 F.3d at

8     1096.

9          So in the Ninth Circuit decision in *Oracle* and *SAP*, the

10    Court understood that the dicta in *Frank* was about overhead

11    costs, not taxes, and characterized it as that.

12         What the Ninth Circuit did there was decline to address

13    the issue saying:  (reading)

14              "Because the second trial has not yet occurred and

15         evidence presented at trial may be relevant to any

16         ultimate ruling by the District Court, we decline to reach

17         the question."

18         The Court went further to note:  (reading)

19              "The District Court is free to reconsider its

20         decision in advance of or during a second trial if one

21         should occur."

22         So the Ninth Circuit went out of its way to signal to

23    Judge Hamilton there, Your Honor, that it was available to

24    refuse deductions for overhead costs, and the court

25    characterizes the dicta in *Frank* as about deducting overhead

1    costs, not just taxes, Your Honor.

2         THE COURT:  Do you have that part of the Ninth Circuit

3    decision there that I could see how that's phrased?

4         MS. HURST:  Your Honor, the district in -- thank you

5    to my colleagues -- the district judge in LA was Judge John

6    Kronstadt in the *Williams* case, Your Honor.

7         THE COURT:  All right.  Thank you.

8      On the *Oracle* in the Ninth Circuit, *Oracle v. SAP*, 765,

9    maybe one of my law clerks can go get it for me.

10        MS. HURST:  I can hand -- I have that portion of the

11   decision --

12        THE COURT:  That's what I'd like to see.

13        MS. HURST:  -- if you'd like me to hand it up.

14        THE COURT:  Yeah, please.

15        MS. HURST:  It's the marked portion, Your Honor.

16                   (Pause in proceedings.)

17        THE COURT:  This is so small.

18                   (Pause in proceedings.)

19        THE COURT:  Well, I'm just going to read it out loud,

20   and I don't see any part in here which has the spin that you

21   were giving it, which is you're telling me that the

22   Ninth Circuit has said basically that Judge Hamilton should go

23   your way.  I don't see that.

24      It just says to me that the Court of Appeals is not

25   reaching that issue and they might reach it after the second

1    trial; but you're telling me, no, that this is an available way

2    for Judge Hamilton to go.  "Available" is the term you used.

3    Where do you get that at in this paragraph?

4         MS. HURST:  Your Honor, where it rolls over to the

5    second page, the Court says the District Court is free to

6    reconsider its ruling in a second trial.

7         THE COURT:  Yeah.

8         MS. HURST:  Since the first ruling was to refuse

9    these -- you know, the rule that we're proposing, which is the

10   deductions can be limited, and say deductions cannot be

11   limited, then the court was clearly signaling it may be

12   appropriate on remand in a second trial for Judge Hamilton to

13   decide the other way; that is, that deductions can be

14   disallowed.

15        THE COURT:  It could be, though, that she would do

16   that and then it turns out later that's a mistake according to

17   the court.  I don't see how this can be read by anybody to mean

18   that the Court of Appeals is leaning one way or the other on

19   that issue.

20        MS. HURST:  And, Your Honor, my original -- the

21   Court's original question was whether any of the cases in the

22   Ninth Circuit, even in dicta, were about overhead costs, and

23   the answer to that question is yes, *Frank* --

24        THE COURT:  Okay.

25        MS. HURST:  -- *Frank* is about overhead and the

1   Ninth Circuit recognizes that in the *SAP* case.

2        **THE COURT:**  No, it's not.  Hand it back to me.  Wait.

3   That's not quite right either.

4        It says -- I wish I had bigger -- it says:  (reading)

5            "According to Oracle," so you left out that part,

6        "According to Oracle, however, our case law precludes

7        willful infringers from deducting overhead costs.  Oracle

8        relies heavily on dicta in *Frank Music,"* et cetera, paren,

9        and then there's a squid.  It says, quote, this is from

10       *Frank Music*, "A portion" -- a portion -- "of an

11       infringer's overhead properly may be deducted from gross

12       revenues to arrive at profits at least where the

13       infringement was not willful, conscious, or deliberate."

14       So that's the dictum that is cited to, and it's

15   conceivable that someday the Court of Appeals will, indeed,

16   rule your way and say that overhead should be disallowed for

17   willful infringement, but I don't know.  I don't see how you

18   can bring your inference out of that that the Ninth Circuit is

19   giving us a signal.

20       Anyway, okay.

21        **MS. HURST:**  Your Honor, if I may.

22        **THE COURT:**  All right.

23        **MS. HURST:**  Your Honor, numerous District Courts have

24   given this instruction:  The *Williams* case, *Pure Power, Classic*

25   *Concepts, Liu, Plain Jane, Banff and Harbor House*.  All over

the country, Los Angeles, New York, Illinois, Louisiana,
everywhere, and it makes sense to do that.  First of all, let's
just back up a step here.

     Your Honor, it is undoubtedly -- really not subject to
really much dispute that this was willful copyright
infringement.  Google knew the APIs were copyrighted.  Google
knew that Sun claimed copyright in the API.  They knew they
copied it, and they knew it -- they even knew it would harm
Sun.  They knew all of that, Your Honor.

     And then knowing all of that, they tried to conceal it;
and concealment, Your Honor, is always evidence of a guilty
mind.  They went out of their way to avoid demonstrating their
product to Sun's engineers and lawyers.  They scrubbed Java out
of the code.  They concealed it because they had no reasonable
alternative, and they were threatened.  It was an existential
threat, Your Honor.

     They viewed the potential loss of market share for search
advertising in the mobile space as an existential threat.  And
they described their own APIs as "half an ass."  And in 2010,
when faced with demands from Oracle that they take a license,
they said, quote, "The alternatives all suck."

     The evidence is --

          **THE COURT:**  Well, but what you're telling me is you've
got a plausible case on willfulness, but that's not at issue
here.  We're talking about assuming that there's willful

1    conduct, is that a basis for disallowing overhead.

2         **MS. HURST:**  Well, not just a basis for disallowing

3    overhead, Your Honor.  Willfulness is relevant to statutory

4    damages, infringer's profits, injunctive relief, and the

5    availability of equitable defenses.  Willfulness bars estoppel

6    and laches.

7         And as the Court has previously noted in this case, the

8    Court at an earlier time -- and certainly we've struggled to

9    make sure we mastered the record, Your Honor, so the Court may

10   well not recall all its prior comments -- but the Court has

11   previously noted that if willful infringement is found, there

12   are profound implications for a permanent injunction.  And this

13   was in July of 2011.

14        And that's really what this is about.  They want to avoid

15   a finding of willful infringement by a jury because that has a

16   wide-ranging effect across the case, Your Honor.  It's not just

17   about the deduction of infringer's profits.  It's also about

18   whether Oracle is entitled to permanent injunctive relief and

19   whether their affirmative defenses of estoppel and laches are

20   barred.

21        So, Your Honor, in light of that wide-ranging effect of

22   willful infringement, the question really is:  What is the

23   safer course of action here?  And the safer course of action,

24   as reflected in District Courts decisions time and again, is to

25   let the jury decide this.

1      Your Honor, Oracle, if nothing else, cannot be forced to

2  an earlier election on statutory damages.  That's clear.  The

3  statute says that it cannot.

4      **THE COURT:**  Maybe, but maybe we can make the jury --

5  one way to go, which is the way I'm thinking, is to bifurcate

6  because you are being so stubborn on damages.  Yes, you have a

7  statutory right, so we're going to -- in part two, we'll let

8  the jury decide all the damages issues on both standards, on

9  actual and statutory, and then you get to elect.  But that

10  means we're going to bifurcate.  We're going to have fair use

11  first.  If you lose on that, the case is over.

12      So I think you're trying to manipulate and play games here

13  with this statutory thing.  Everybody knows good and well

14  you're not going to go for statutory damages, but I can't

15  disregard what the statute says.

16      All right.  I've heard enough.  I need to turn to the

17  other -- I'm going to get an order out that deals with all of

18  your points.

19      I guess I should give Ms. Anderson a moment to rebut.

20      **MS. HURST:**  Your Honor, may I briefly address the

21  bifurcation point?

22      **THE COURT:**  No, you're not.  I'm going to bifurcate

23  because you are trying to put a huge burden on the jury, and

24  I'm going to do the right thing for the jury and the right

25  thing for the system, and we're going to bifurcate the first

 1  issue of fair use because you are making a monumental

 2  Frankenstein monster out of the damages part of the case, and

 3  we're going to spare the jury that if they rule for Google.

 4       Yes, Ms. Anderson?

 5       **MS. ANDERSON:**  I will make it extremely brief,

 6  Your Honor.

 7       One is, the Court's absolutely right on the *Frank Music*

 8  point.  That is quoting that case out of context.  And there is

 9  authority that Oracle is pointing to does not support the

10  notion all expenses can be --

11       **THE COURT:**  I'm going to let the jury decide

12  willfulness, but it will be in the second phase.

13       **MS. ANDERSON:**  Right.

14       **THE COURT:**  And they're going to decide both issues of

15  damages.  So that way we don't have to come back and retry the

16  case because Oracle after the fact decides it wants to go for

17  statutory or not.  The statute is pretty clear on that.

18       It's ironic that Oracle insists on the letter of the law

19  when it comes to that provision; but when it comes to the

20  letter of the law of what the damages statute says, they think

21  I can read all these things in there about willfulness, which

22  is not even in the statute.  So it's completely inconsistent.

23  I'm going to do the best I can with the case law.

24       What do you have to say, Ms. Anderson?  I need to move on.

25       **MS. ANDERSON:**  Thank you, Your Honor.  I think you

1   have the points.  Thank you.

2          **THE COURT:**  All right.  Have a seat.

3      Now, I want to solve this problem with Dr. Kearl while

4   we're here.  So, Mr. Cooper, come up here.

5      This case is going to go nowhere.  We're not going to set

6   a trial date or anything until we get Dr. Kearl completely

7   finished.  So it behooves you two to get Dr. Kearl -- get all

8   these problems with Dr. Kearl out of the way.

9      So where -- Mr. Cooper, I'm going to hear from you first.

10  What is the solution to this problem?

11         **MR. COOPER:**  Well, Your Honor, I believe the solution

12  to this problem is that it is a somewhat -- we've got a

13  conflict here between the courts.  We have delivered

14  Your Honor's orders, all of the orders, to Samsung and to

15  Apple, and Samsung and Apple agreed upon a redacted version,

16  which we thought -- Dr. Kearl and I thought -- would satisfy

17  the needs of the parties in this case.

18      Google has stipulated to the continued use of Dr. Kearl as

19  a 706 expert.  Apparently Oracle is taking some issue with

20  that.

21      And we will -- we delivered last night Your Honor's order

22  of yesterday to Mr. Christopher Price of Quinn Emmanuel, who's

23  counsel for Samsung.  I was scheduled to speak with him this

24  morning at 10:00.  I'm going to talk to him this afternoon.

25      We will deliver everything -- the sealing order, the

order -- this order, Your Honor's 9/16 order, and the

protective order in this case -- to them -- to Samsung.

And then we believe it will be appropriate, under the

protective orders -- under the protective order in this case

and the protective order in the *Apple versus Samsung* case --

for the parties to -- for Apple and Samsung and Oracle to reach

an agreement as to how these materials can be delivered

unredacted to Oracle in this case under the protective order.

Now, whether that occurs, whether that agreement occurs or

not, I don't have the authority to say that right now, but I

believe that is the way it should resolve.

**THE COURT:**  All right.  Let's hear from Oracle.

**MR. BICKS:**  Well, Your Honor, Peter Bicks.

I hope that's the case.  And from my perspective, I didn't

anticipate that this was going to present the complication it

apparently has.

When we were before the Court, our request I thought was

pretty reasonable, which was we would like to see a copy of the

report issued in this other case; and we were before Your Honor

and Your Honor said, "Please get them a copy of the report."

And we got a very heavily redacted version of it; and before we

can make a final call, we wanted to see the complete version.

We then got the protective order in that case when we had

the back and forth to try to get a complete copy, and the

protective order in the case before Judge Koh says that when

1   this material is subpoenaed by any court -- and Your Honor

2   issued an order -- and then it uses language "or subpoena or

3   any request," the party to whom it was issued -- right? -- that

4   was Dr. Kearl got the subpoena, he's to immediately give

5   written notice to every party in the case -- that's Apple and

6   Samsung -- and provide each party with an opportunity to move

7   for protective order regarding the production of produced

8   materials implicated by the subpoena.

9       So we look at that.  We thought if there was an issue --

10  and we thought given the tight protective order in this case,

11  we didn't anticipate or see that there should be one -- as is

12  customary in the cases I've dealt with, the parties -- i.e.

13  Samsung, if they had an issue, or Apple -- should have come to

14  this Court and said, "We've got a problem with this," and we

15  could sort it out.

16      We're trying to shortcut this, and I hope this will do it,

17  and I have complete confidence in counsel here and what the

18  Court has said, and I respect that.  Our goal is just to get

19  and see the details before we can make a final call on this,

20  not to protract it.

21      But the Court has seen the extent of the redactions.

22  They're voluminous.  It's not just a number or word.  It's full

23  pages completely blacked out.  And in a case of this magnitude,

24  we can't make a final call until we see that information.

25      So that's how we read the protective order, and we do read

1    it.  And it's common that in cases where a nonparty is

2    subpoenaed and they have an issue, they come to the court and

3    say that was the issue, and I'm hoping that could resolve it.

4        **THE COURT:**  Mr. Cooper, what's wrong with you making a

5    motion in front of Judge Koh to get permission from her to show

6    the entire report to counsel here under a protective order?

7        **MR. COOPER:**  We could do that, Your Honor, and we may

8    have to do that; but I believe that -- you know, Dr. Kearl is

9    not a party here.  Dr. Kearl is a Rule 706 expert appointed by

10   Your Honor.

11       We --

12       **THE COURT:**  He's in that case, though.  He's also a

13   witness in that case.

14       **MR. COOPER:**  He is in that case.  And he has said, as

15   we have reported to this Court, Dr. Kearl has no objection, no

16   concern whatsoever about producing his entire report in *Apple*

17   *v. Samsung* to these parties pursuant to the protective order.

18   And we will deliver -- we -- I have delivered and we will

19   deliver to Samsung the documents.

20       I believe that this is really an argument between Oracle

21   and Apple and Samsung.  This is -- and it is set up in

22   Your Honor's order of yesterday to bring that forward such that

23   Samsung will appear -- Samsung -- Your Honor has ordered

24   Samsung to have till September 24th to submit a supporting

25   declaration.

1    We believe that it is proper for Oracle to address this

2  with Samsung and Google in this court or maybe before Judge Koh

3  as well.

4    **THE COURT:**  I think it's got to be in front of

5  Judge Koh.  I can't -- I can't -- I don't -- I shouldn't say "I

6  can't," but I think it would be inappropriate for me to step on

7  her turf there.

8    So I think -- I frankly would be -- I believe the most

9  sympathetic way for it to be presented to her is a motion by

10  Mr. Kearl to her saying, "I'm in this position, Judge.  These

11  big, gigantic companies can't agree.  Please help me out.  Cut

12  through the BS and let me show this to Oracle."

13    **MR. COOPER:**  Pursuant to that protective order, but

14  then we have to also address the protective order in this case.

15    **THE COURT:**  I'll give you whatever you want.  What do

16  you want?

17    **MR. COOPER:**  I believe that both of the protective --

18  my personal belief -- I don't have the authority to say -- to

19  say anything, I'm working on it -- my personal belief is that

20  between Oracle and Samsung and Apple they should be able to

21  work out a production to attorneys' eyes only, highly

22  confidential, outside attorneys only, the unredacted version,

23  and that's what I'm working toward under both of the orders.

24    If we can't achieve that, we'll do it the hard way with

25  the motions, Your Honor.

1          **THE COURT:**  I'm going to rely completely on the

2    fantastic skill of Mr. John Cooper --

3          **MR. COOPER:**  Thank you.

4          **THE COURT:**  -- to get this problem solved.  I know

5    you're -- I won't say you're the absolute best lawyer in

6    California, but you're very close to that and if anybody can do

7    it, you can do it.

8          **MR. COOPER:**  Well, thank you very much for that kind

9    comment.

10        You said that Oracle and -- in this order Oracle and

11   Dr. Kearl shall advise the Court regarding the expected

12   timeline and completion of production.  I expect we should be

13   able to do that -- tomorrow is Friday -- I expect we should be

14   able to do that by the early part of next week depending upon

15   my conversations.

16         **THE COURT:**  All right.  I've got to go to the next

17   case.

18         **MR. BICKS:**  Thank you, Your Honor.

19         **THE COURT:**  All right.

20              (Proceedings adjourned at 9:47 a.m.)

21                     ---oOo---

22

23

24

25

1

2

3                    __CERTIFICATE OF REPORTER__

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Tuesday, September 22, 2015

8

9

10

11    _____

12          Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                     U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25