ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE'S STATEMENT REGARDING DR. KEARL'S LACK OF COMPLIANCE WITH THE COURT'S ORDER** <br><br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William H. Alsup |

1    The Court ordered Dr. James Kearl to "provide his expert report and testimony from the
2    *Apple v. Samsung* case to counsel . . . for evaluation" and required any motions to disqualify Dr.
3    Kearl be filed by September 10, 2015. ECF 1277 at 1. Dr. Kearl did not produce the reports and
4    his testimony. Instead, counsel for Samsung (not counsel for Dr. Kearl) produced redacted
5    versions of the reports and testimony that made it very difficult to understand the nature of Dr.
6    Kearl's analysis from the other case. Dr. Kearl's failure to produce the reports and testimony
7    underscores the prejudice to Oracle from a Court-appointed advisor who cannot be effectively
8    cross-examined, and the potential for significant jury confusion.

9    Nothing in the Court's order allowed Dr. Kearl to refuse to produce his reports and
10   testimony in their entirety. In this case, Dr. Kearl is an adjunct of the Court. It defies credulity
11   that he was retained as an expert in a case about Android and did not realize that he should
12   maintain his work for potential disclosure and review here. The redacted materials raise
13   significant concerns about Dr. Kearl's role as a Rule 706 expert and Oracle's ability to cross-
14   examine him. Part A, *infra*.

15   The Court also ordered the parties to discuss expanding Dr. Kearl's role into the *Daubert*
16   proceedings and how reports might be sequenced. ECF 1282. The complexity of the case has
17   been reduced, and Oracle believes a Rule 706 expert is no longer necessary. If the Court
18   nevertheless concludes that Dr. Kearl should participate in the *Daubert* proceedings, Oracle
19   proposes that Dr. Kearl's report be submitted after the other experts but prior to any *Daubert*
20   briefing. Part B, *infra*.

21   **A.    Dr. Kearl's Redacted Materials Raise Significant Concerns About His Role.**

22   At the Case Management Conference, counsel for Dr. Kearl represented to the Court that
23   he was an "independent expert" in the *Apple v. Samsung* case. July 30, 2015 Hrg. Tr. at 46.
24   Contrary to that representation, Dr. Kearl was not a court-appointed neutral expert in *Apple v.*
25   *Samsung*. He was retained by Samsung and was paid on the order of $340,000 to serve as an
26   expert for the Samsung entities in a case that was largely about Android. Declaration of Annette
27   L. Hurst ("Hurst Decl.") Ex. 2 (Kearl Corrected Rep.) at 3; Ex. 8 (Samsung Tr.) at 2677.
28   Now, Dr. Kearl has refused to produce unredacted versions of his reports, schedules and

- 1 -                ORACLE'S STATEMENT REGARDING DR.
                     KEARL'S NONCOMPLIANCE
                     CV 10-03561 WHA

1  deposition testimony.  Dr. Kearl's counsel claims that he does not "control" the contents of his
2  reports because of the protective order in the other case.  *Id.* Ex. 6 (John Cooper Email Dated
3  Sept. 9, 2015).  But the protective order in *Apple v. Samsung* had an explicit exception for orders
4  of the Court.  *Id.* Ex. 7 (*Apple v. Samsung* Protective Order) at ¶9(b).  This is the same Court, so
5  there was no right to refuse production.  Even if the Court is viewed as different for these
6  purposes because different judges are involved, there was a procedure in the other case for parties
7  to object.  The *Apple v. Samsung* protective order required one or more of the parties to come
8  forward and make a motion for protective order in order to avoid production in response to a third
9  party request.  *Id.* ¶14(a).  In his role as a retained expert for Samsung, Dr. Kearl fell within that
10 requirement.  *Id.* ¶2(d).  Samsung and Dr. Kearl did not have the unilateral right to engage in self-
11 help by withholding information from counsel for the parties and the Court.  The protective order
12 in this case permitted Samsung and Dr. Kearl to limit the disclosure, and indeed the documents
13 were marked "Attorneys' Eyes Only" in the form they were produced to us despite the redactions.
14 *See, e.g., id.* Exs. 2-5.

15    The heavy redactions prevent Oracle from evaluating how Dr. Kearl's analysis in *Apple v.*
16 *Samsung* may be relevant to his views here, or may reflect a commitment to an approach that
17 would have disqualified him had it been known when he was first appointed in this case.  The
18 redacted information is the meat of his reports: the actual royalty calculations that he performed.
19 For example, in determining what a reasonable royalty would be for one of the many patents
20 Kearl analyzed, he stated that "Tables 17a - 17f summarize these calculations, and indicate a
21 lump-sum royalty payment for the patent rights subject to the hypothetical negotiation would be
22 approximately $22.0 million."  *Id.* Ex. 2 (Kearl Corrected Rep.) at 40.  But tables 17a - 17f are
23 nearly entirely redacted, making it impossible to understand the basis for Dr. Kearl's approach to
24 the lump sum calculation.  Redactions obscure his calculations for the other patents in the same
25 way.  *See id.* Ex. 3 (Kearl Rep. Tables) at Tables 21a-21e, 22a-22e, 25a-25b, 26a-26b, 26d, 30,
26 32.  As one even more egregious example, the entirety of the document with the filename
27 KEARL01405 is redacted.  *See id.* Ex. 4 (KEARL01405.pdf).  There is no way to know whether
28 it contains relevant information.  Other documents, including portions of deposition testimony,

are also redacted.  *See id.* Ex. 5 (Excerpts of Dr. Kearl's Deposition Testimony).

Dr. Kearl did not notify Oracle or Google in advance of production of any objections to the Court's order to produce the reports and testimony in their entirety.  After reviewing the production, Oracle met and conferred about the issue, requesting that Dr. Kearl produce complete copies of his unredacted reports and schedules.  *See id.* Ex. 6 (Email Exchange Between Cooper and Hurst).  He declined to do so and pointed Oracle to counsel for the parties in the other case for compliance.  *Id*.  Oracle then requested that Dr. Kearl certify that he did not have the unredacted reports and schedules *in his possession.  Id.*  Yet twice counsel for Dr. Kearl, Mr. Cooper, deliberately evaded the question, asserting simply that Dr. Kearl did not "control" an unredacted copy of the reports with schedules.  *Id.*  Apparently counsel for Dr. Kearl is taking the view that he does not control any copies of the reports that are in his possession, and therefore will not produce them.  Thus, there is now a direct conflict between Dr. Kearl's role as a retained expert for Samsung, who is apparently instructing him not to produce a complete copy of his reports and testimony, and his role as an independent expert in this case where he has been ordered to do so.  Dr. Kearl failed to comply with the Court's order to produce his reports and testimony.  The end result has been delay and obfuscation of his analysis in *Apple v. Samsung*, and an inability on Oracle's part to fully assess the issue.

The redactions are thus wholly inappropriate.  The fact that Dr. Kearl stood by while his employer in the other case gave the parties redacted materials raises doubts about his role as a court-appointed neutral expert.  Those doubts are amplified by the misrepresentation that Dr. Kearl was an "independent expert" in *Apple v. Samsung* who "was Court appointed."  July 30, 2015 Hrg. Tr. at 46.  Far from it.  Dr. Kearl was retained by counsel to Samsung at a rate of $700/hr.  Hurst Decl. Ex. 2 (Kearl Corrected Rep.) at 3.  And he was paid at least $340,000 for his work.  *Id.* Ex. 8 (Samsung Tr.) at 2677.

Oracle's concerns go beyond just the redactions.  The Court explained when first discussing a Rule 706 expert that it wanted someone who cannot be "boxed [] in by representing somebody in a patent case where [he] took a position that is going to be hard to explain in this case and has sort of committed [him] to a position," Aug. 19, 2011 Hrg. Tr. at 23, and that the

1  expert should "have no conflicts," ECF No. 610 at 4.  *Apple v. Samsung* was about Android.
2  Samsung in its opening statement described the case as "an attack on Android," Hurst Decl. Ex. 8
3  (Samsung Tr.) at 358, and as "really about Apple versus Google's Android," *id.* at 367—a theme
4  that was picked up by the media.  *See* Shara Tibken, *Samsung: Apple's case 'is an attack on*
5  *Android'*, CNET (Apr. 1, 2014 12:15 PM PDT), http://www.cnet.com/news/samsung-apples-
6  case-is-an-attack-on-android/.

7  Because the case was about Android, it was also widely reported that Google indemnified
8  Samsung in material respects for its defense of that case.  *See, e.g.*, Joel Rosenblatt, *Google's*
9  *Stake in $2 Billion Apple-Samsung Trial Revealed*, BloombergBusiness (Apr. 22, 2014, 2:31 AM
10 EDT), http://www.bloomberg.com/news/articles/2014-04-22/google-indemnified-samsung-in-
11 apple-patent-trial-witness-says; Martyn Williams, *Google had secret pact with Samsung over*
12 *some Apple patent claims*, PCWorld (Apr. 22, 2014 3:52 PM), http://www.pcworld.com/article/
13 2146920/google-had-secret-pact-with-samsung-over-some-apple-patent-claims.html; Shara
14 Tibken, *Google agreed to pony up for Samsung's defense against Apple*, CNET (Apr. 22, 2014
15 2:50 PM PDT), http://www.cnet.com/news/google-agreed-to-pony-up-for-samsungs-defense-
16 against-apples-patent-infringement-claims/.  Ordinarily an insurer pays for counterclaims as well
17 when they are strategically valuable in reducing or avoiding a potential adverse judgment.  Here,
18 Dr. Kearl's approach in support of Samsung's counterclaims might well have been designed to
19 educate the jury about alternative methods of calculation for reasonable royalty claims.  Thus,
20 Oracle faces the prospect that Dr. Kearl's expenses were either reimbursed or subsidized in some
21 material respect by Google because he was part of a broader strategy of defending Android—and
22 that Dr. Kearl knows or suspects that is the case.

23 Cross-examination before the jury to elicit potential bias cannot solve any of these issues.
24 Dr. Kearl has the Court's imprimatur before the jury as "the Court's expert."  The complexity of
25 trying to bring another case into this one for purposes of cross-examination would result in
26 unnecessary jury confusion and delay.  Raising Dr. Kearl's work for Samsung in an Android-
27 related case would also add prejudice to Oracle, since it would appear that this Court had either
28 expressly or tacitly adopted an expert who is on the "Android side," in circumstances where an

expert is already likely to receive less scrutiny from the jury. *See* 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6302 (2015) ("[B]ecause of the expert's link to the court, a jury may fail to scrutinize his testimony to the same extent it would the testimony of party experts. Thus, the testimony of a court-appointed expert may undermine rather than promote accurate factfinding."). Oracle should not be forced to steer between this particular Scylla and Charybdis. Instead, the better approach would be to dismiss Dr. Kearl now to avoid any appearance of impropriety. At an absolute minimum, the Court should enforce its order for production of the *entire* reports (including the schedules) and deposition testimony now, and make a further reassessment of Dr. Kearl's proposed involvement after viewing the parties' expert reports, as the Court suggested it might do at the July 30 Hearing. July 30, 2015 Hrg. Tr. at 49-50.

### B.   Dr. Kearl's Role in *Daubert* Briefing

The Court further ordered that "[i]n the parties' briefs relating to any motions to disqualify Dr. Kearl, both sides shall also address the advisability of expanding Dr. Kearl's role to include offering his views on the methodologies of the parties' experts with regards to any future *Daubert* motions, including proposals for how Dr. Kearl's reports expressing such views should be sequenced in any *Daubert* briefing." ECF 1282. Though the Court also ordered Dr. Kearl to "submit a memorandum addressing this topic," *id.*, he stated little more than that he would be fine with "whatever sequence and format the Court prefers." ECF 1294 at 2.

The Court should not expand Dr. Kearl's role into the *Daubert* proceedings. Dr. Kearl is no longer necessary at all in this case, much less in an expanded position. The case has been narrowed to the copyright claim, and Dr. Kearl's role as a damages expert is unwarranted for revenue calculations that this Court previously viewed with little concern. July 21, 2011 Hrg. Tr. at 32 ("Android has a value; how do we determine what that value is? Well, one way you would do that is to look at the advertising, the benefits, the advertising revenue that is attributable to it.").

"Rule 706 should be invoked only in rare and compelling circumstances." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341, 1348 (Fed. Cir. 2009). A Rule 706 expert

1  should only be appointed when "necessary or significantly useful for the trier of fact to
2  comprehend a material issue in a case." *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1181 (E.D. Cal.
3  2011); *Jenkins v. Barnes*, No. 2:13-CV-0596 KJM, 2015 WL 5092721, at *1 (E.D. Cal. Aug. 28,
4  2015) (same).  And use of a Rule 706 expert is generally reserved for "complex scientific,
5  medical or technical matters," when they are used at all.  *Armstrong v. Brown*, 768 F.3d 975, 987
6  (9th Cir. 2014).  For example, one court concluded that an independent expert would be helpful in
7  a case that involved "contradictory evidence about an elusive disease of unknown cause." *Walker*
8  *v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999); s*ee also,*
9  *e.g.*, *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014) ("highly
10 technical material" related to endangered smelt); *McKinney v. Anderson*, 924 F.2d 1500, 1511
11 (9th Cir. 1991) ("the complexity of the scientific evidence" related to health effects on smoking);
12 *Monolithic*, 558 F.3d at 1344 (technical questions about "power inverter circuitry [patent] for
13 laptop computers").

14         It is extremely rare for courts to appoint their own expert economists to evaluate damages.
15 *Cf.* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 706.02[3] (Mark
16 S. Brodin, ed., Matthew Bender 2015) (damages is not among the seven types of "cases in which
17 experts have been appointed").  Dr. Kearl should not be added to that very short list.  Oracle's and
18 Google's experts testifying in the traditional adversary procedure will adequately present the
19 damages issue to the jury, and their reports will thoroughly present their methodologies to the
20 Court for *Daubert* scrutiny.  *Daubert* motions and damages analyses occur frequently in
21 copyright cases without the need for a Rule 706 expert.  Though in this case there are more zeroes
22 at the end of all the figures, a large claim in and of itself does not make the jury's job significantly
23 more complex where, as here, the legal rules are well established and are not in a state of flux as
24 was the law on patent damages at the time Dr. Kearl was originally appointed.

25         Now that the patent issues have been removed from the case, the damages analysis is
26 much less complex.  In November 2011, the Court explained that an important reason why the
27 damages question "was particularly involved" was that "[d]amages from patent infringement are
28 governed by different legal standards than damages from copyright infringement, [and] some

accused products and acts are relevant to both parts of the action." ECF No. 610 at 2.  This complication no longer exists on retrial.

     Should the Court nevertheless wish Dr. Kearl to play a role in *Daubert* proceedings, then the schedule should be adjusted to permit him to file his own report after the parties have completed all of their reports.  Dr. Kearl's report should identify and explain any issues that are properly characterized as *Daubert* issues in his report.  The parties should then be permitted a response.  The schedule for any *Daubert* motions to be filed by the parties should be adjusted to accommodate the need to depose Dr. Kearl on such issues, as well as all of the Rule 702 experts.  Indeed, the schedule for expert discovery and related motion practice may have to be lengthened in order to accommodate all of the depositions so that each damages expert has an opportunity to respond to any such critiques.

Dated: September 10, 2015

KAREN G. JOHNSON-MCKEWAN
ANNETTE L. HURST
GABRIEL M. RAMSEY
PETER A. BICKS
LISA T. SIMPSON
Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
    ANNETTE L. HURST

Attorneys for Plaintiff
ORACLE AMERICA, INC.