# EXHIBIT 2
## (PART 2 OF 21)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**C.  Relative Value Survey**



**D.  Analysis of the *Georgia-Pacific* Factors**

My full analysis of the *Georgia-Pacific* factors with respect to the '239 patent is contained in Appendix A.

---

[117] APLNDC630-0001233270.

[118] APLNDC0002117730.

36    *Corrected Expert Report of Dr. James R. Kearl*

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Tables 17a – 17f summarize these calculations, and indicate a lump-sum royalty payment for the patent rights subject to the hypothetical negotiation would be approximately $22.0 million.

In Table 18, I present a reasonableness check on my reasonable royalty. These estimates are based on the expert report of Christopher Vellturo, Apple's royalty expert in the VirnetX litigation.[125] That litigation also related to the Apple FaceTime feature, although as Dr. Vellturo points out, the patents at issue in that case related to a security feature of FaceTime, and thus the value of those patents was a small part of the overall value of FaceTime.[126] In that matter, Dr. Vellturo also concluded that a ███████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████

In the VirnetX matter, Dr. Vellturo also relied on the fact that owners of Apple computers sold prior to the release of OSX 10.7 (which included FaceTime at no additional charge) could obtain FaceTime as an aftermarket app, costing $0.99. Dr. Vellturo estimated ████████████████████ ████████████████████████████████[127] He applied this percentage to the cost of the app, to conclude that the average value per unit of FaceTime to users was ███ and he concluded that ███ was an appropriate per unit royalty rate in that case (which dealt with only a minor functionality of FaceTime.)[128] If I apply this royalty rate to the number of accused units in this matter, the lump-sum royalty is over ███████. This amount is clearly lower than would be the appropriate reasonable royalty in this matter.

---

[125] United States District Court for the Eastern District of Texas Tyler Division, Civil Action No. 6:10-CV-417, VirnetX, Inc., Plaintiff, vs. Cisco Systems, Inc., Apple Inc., Aastra USA, Inc., Aastra Technologies Ltd., NEC Corporation, and NEC Corporation of America, Defendants.

[126] APL630DEF-WHVX0000591883 (Vellturo Expert Report, pp. 159-162).

[127] APL630DEF-WHVX0000591883 (Vellturo Expert Report, pp. 140-142).

[128] ████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     KEARL01059

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## IX. VALUE OF THE '757 PATENT

### A. Qualitative Evidence

The product features accused under the '757 patent include iCloud, iTunes in the Cloud, iCloud PhotoStream, iTunes Home Sharing, iTunes Sync, iTunes Match, and iTunes WiFi Sync. These features, which work between different Apple devices a consumer may own, strengthen the Apple ecosystem and build customer loyalty. Moreover, iTunes Match, a subscription-based service for syncing music, costs $24.99 per year,[131] indicating demand for the accused syncing functionality. The importance of these syncing features can be seen in the marketing and promotional activities for both Apple and Samsung which promote their products by emphasizing services offering these functionalities.[132]

#### i. Apple and Third Party Documents

Apple views the ability of its customers to synchronize multimedia files across multiple devices as a contributor to the Apple ecosystem.[133]



---

[131] http://www.apple.com/itunes/itunes-match/ .

[132] Samsung's Objections and Responses to Apple's Twelfth Set of Interrogatories, p. 46, 49; TX1091:36.40-37:56 (ND Cal. 1)APLNDC630-0000853207-320; APL630DEFWH0004286935; APL630DEF-WH0004286936; APL630DEF-WH0004286937; SAMNDCA630-07395386; 5395-5396.

[133] Joswiak Deposition, pp. 104-109.

[134] Forstall Deposition, pp. 148, 154.

[135] Forstall Ex. 18, MAL-000071609, Samsung's Objections and Responses to Apple's Twelfth Set of Interrogatories, p. 46.

[136] APLNDC630-0001427061.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



---

[137] Forstall Deposition, p. 147.
[138] Tab 17, SAMNDCA630-07476725.
[139] APLNDC630-0001233246.
[140] APLNDC630-0001313222.
[141] APLNDC630-0000823672.
[142] APLNDC630-0001465383.
[143] APLNDC630-0000824319.
[144] APLNDC630-0001466238.
[145] APLNDC630-0000821410.
[146] APLNDC630-0001313222.

44   *Corrected Expert Report of Dr. James R. Kearl*

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



### ii.  Apple Advertising and Marketing Materials

Of the 140 Apple ads that were reviewed, three of these focused solely on syncing, while another three demonstrated syncing among other features. These demonstrate the ability to sync music, photos and videos, and use iCloud to sync to all devices.

Syncing, particularly the use of iCloud, has been a prominent feature in Apple's WWDC and Special Event conferences since the introduction of the iCloud at the June 2011 WWDC. In every conference since this introduction, Apple has highlighted iCloud and its various features for multiple products.[151]

---

[147] APLNDC630-0001233246.

[148] MAL-000061323.

[149] MAL-000065579.

[150] APLNDC630-0000831733.

[151] See Table 1e.