# ORACLE'S NOTICE OF MOTION AND MOTION TO DISQUALIFY THE RULE 706 EXPERT

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **NOTICE OF MOTION AND MOTION TO DISQUALIFY THE RULE 706 EXPERT** <br><br> Date: November 19, 2015 <br> Time: 8:00 a.m. <br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William H. Alsup |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT the following Motion to Disqualify the Rule 706 Expert will be heard on November 19, 2015 at 8:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable William H. Alsup presiding.  Plaintiff Oracle America, Inc. will and hereby does move to disqualify the Court's Rule 706 expert on the grounds that it is no longer appropriate for Dr. Kearl to serve as a neutral expert based on his work since the last trial, and that no other Rule 706 expert is needed in light of the reduced scope of the case.

This motion is based on the Notice of Motion and Motion to Disqualify the Rule 706 Expert, the following Memorandum of Points and Authorities, the Declaration of Peter A Bicks, the pleadings and papers on file in this action, and such other and further papers and argument presented prior to or at the hearing on the Motion.

Dated: October 15, 2015

*/s/ Peter A. Bicks*
PETER A. BICKS

Attorney for Plaintiff
ORACLE AMERICA, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

It is no longer appropriate for Dr. Kearl to serve as a neutral expert in this case. When he was hired by Samsung in *Apple v. Samsung*, he sided with Google in a highly-publicized case where the patents at issue involved technology that is part of Android. The case, still ongoing in this district, was effectively *Apple v. Google*: Google agreed to indemnify Samsung, the very same attorneys represented Google and Samsung, and Google had control and authority over Samsung's defense. And one of the issues in that case was whether, as Apple argued, Samsung used Dr. Kearl's analysis to give the jury a low damages number in an attempt to make all patents appear to have little value. Or, as Apple asked the jury, why else would Samsung pay experts $5 million to pursue a $6 million claim if not to try to devalue patents? Having an expert wear the hat of a neutral party in this case when he previously wore an Android hat is prejudicial to Oracle and risks injecting complications into the case that should be avoided.

Nor should the Court replace Dr. Kearl because a Rule 706 expert is no longer necessary in this case. The damages analysis will not have the same complexity now that the patent claims are out of the case. The parties' experts in the normal adversary process will sufficiently present the issues to the Court and the jury. If the Court nevertheless concludes that an expert is necessary to assist the Court in evaluating the reports of the parties' experts, the parties should jointly select a neutral expert who should not testify in front of the jury.

## ARGUMENT

### I.   It Is Inappropriate For Dr. Kearl To Remain As A Neutral Expert.

Because a Rule 706 expert is appointed by the Court, he must remain neutral throughout the proceedings. *See Students of California Sch. for the Blind v. Honig*, 736 F.2d 538, 549 (9th Cir. 1984) ("Rule 706 allows the court to appoint a neutral expert on its own motion."); *vacated on other grounds*, 471 U.S. 148, 149-50 (1985); *Gorton v. Todd,* 793 F. Supp. 2d 1171, 1177 (E.D. Cal. 2011) ("The Rule only allows a court to appoint a neutral expert."). This Court has also recognized a Rule 706 expert's neutrality, stating that the expert should provide a "neutral explanation and viewpoint," ECF 236 at 2, have "no conflicts," ECF 610 at 4, and be

1  "unimpeachable," ECF 350 at 23.

2  Since Dr. Kearl testified in *Apple v. Samsung*—not as a neutral expert but, as we now know, one hired by Samsung[1]—it is no longer appropriate for him to serve in this neutral role. Samsung is a leading Android device maker. And while Samsung was named as the defendant in *Apple v. Samsung*, Samsung argued that the case was "really about Apple versus Google's Android." *Samsung* Tr. 367.[2] This was not an offhand remark, it was one of Samsung's major, oft-repeated themes: "It's an attack on Android. It's an attack, it's an attack . . . It's the truth. It's an attack on Android, and that's what this case is." *Id.* at 358-59; *see also*, *e.g.*, *id.* at 372 ("A holy war on Android."); *id.* at 359 (Apple is "trying to limit consumer choice and to gain an unfair advantage over its one major competitor, Google's Android."); *id* at 3267 ("[W]e have a holy war with Google"). Samsung made this argument because the patents at issue dealt with software features that are in Google's Android, not hardware that is part of Samsung's equipment. *Id.* at 356-57. For example, one patent involved technology that allowed a user to run a search both on the internet and locally on the phone. *Id.* at 1929. Even *Apple's* counsel quoted an article describing the search ability as "an awesome feature for Android." *Id.* at 323.

On top of that, one of Samsung's main defenses was that Google's engineers are so skilled, they would never copy. *See, e.g.*, *id.* at 356 ("[The] accused features on [the Samsung] phone were developed independently by . . . the software engineers at Google . . . ."); *id.* at 368 (Google's engineers "don't need to copy Apple."); *id at* 370 ("the hard work and the ingenuity of the engineers at Google"); *id.* at 356 ("most sophisticated and creative minds in the smartphone industry"); *id.* at 368 ("they can do just about anything"); *id.* at 3258 ("brilliant engineers, [at] Google, right up the street"); *id.* at 3265 ("these independent geniuses at Google"). That defense made by the party who hired Dr. Kearl undermines his neutrality. In our case, it has already been determined that Google *did copy* thousands of lines of Oracle's code rather than create its

---

[1] *See* Declaration of Peter A. Bicks ("Bicks Decl.") Ex. 5 (Dr. Kearl *Apple v. Samsung* Corrected Expert Report) at 3.

[2] Citations to the trial transcript from *Apple v. Samsung* will be "*Samsung* Tr. __." *See* Bicks Decl. Ex. 1, 3-4. Citations to docket entries from that case will be "*Samsung* ECF __." *See* Bicks Decl. Ex. 3. The *Apple v. Samsung* docket number is 12-CV-00630-LHK (N.D. Cal.).

- 3 -

MOTION TO DISQUALIFY
THE RULE 706 EXPERT
CV 10-03561 WHA

libraries entirely from scratch.

Dr. Kearl argues that the *Apple v. Samsung* case's emphasis on Android is not relevant because Dr. Kearl was involved with Samsung's counterclaims against Apple, which meant his "analysis focused on the value of the asserted patents in the Apple products." ECF 1313 at 4. Accordingly, Dr. Kearl claims, "to the degree that a mobile operating system or platform was relevant, that operating system would have been the Apple iOS operating system and not Android." ECF 1313 at 4. But that point fails to appreciate Oracle's concerns with Dr. Kearl serving as a neutral expert. The issue is not whether his analysis specifically dealt with Android. A jury may well not appreciate that fine parsing of Dr. Kearl's role. The issue is that Dr. Kearl was on the Android/Google side of an extremely significant case, no matter whether he was on offense, defense, or special teams.

Indeed, Google was involved in that case even more than being a focal point of the trial. Google "agreed to indemnify Samsung," as one Google lawyer testified in a 30(b)(6) deposition. *Samsung* ECF 1920 at 13; *Samsung* Tr. 2785. As part of that indemnity, Google had the authority to "control the litigation and defense." *Samsung* ECF 1920 at 16; *see also id.* at 17 (noting that Google has "control and authority over the defense" of at least two of the patents at issue).

The Google-Samsung connection was so strong that Google and Samsung were even represented by the same attorneys in *Apple v. Samsung*. For some "third party" discovery issues, Google itself filed briefs, rather than acting through Samsung. *See, e.g.*, *Samsung* ECF 142. On the *Apple v. Samsung* docket, all the attorneys representing Google are also attorneys representing Samsung. *See Samsung* docket 12-CV-00630-LHK. There was effectively no difference between Samsung and Google.

Dr. Kearl nevertheless contends that he was not part of any "strategy of defending Android" because he was involved in Samsung's counterclaims against Apple. ECF 1313 at 4. This is at best a superficial approach. Apple laid bare the real strategy: that those counterclaims were a key part of Samsung's defense. Apple asked for over $2 billion in damages, *Samsung* Tr. 337. (It had just secured a $1 billion award against Samsung, *see Apple Inc. v. Samsung Electronics Co.*, 786 F.3d 983, 989 (Fed. Cir. 2015)). Samsung asserted patent counterclaims

1  and, based on Dr. Kearl's analysis, asked for only approximately $6 million. *Samsung* Tr. 3321.
2  Apple argued that Samsung was using Dr. Kearl to make all patents in the smartphone space seem
3  like they have a low value. Apple told the jury that it only made sense for Samsung to pay its
4  experts over $5 million to pursue a $6 million claim in one circumstance: "[I]f you're trying to
5  devalue patents, all patents." *Id.* at 3350-51; *see also id.* ("To devalue, to cheapen, to convince
6  you that patents are not worth that much."); *id.* at 343 ("They want you to believe that patents are
7  not worth much.").

8  Apple also suggested that Dr. Kearl artificially lowered his calculations, pointing to a part
9  of Dr. Kearl's report where he stated that "[t]he value that . . . users placed on Facetime [an
10 allegedly infringing Apple feature] is likely higher, and likely many times higher, than the $.99
11 amount I used in my calculations." *Samsung* Tr. 2673-74. █████████████████
12 ████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████
14 ████████████████████████████████████ *See* Bicks Decl. Ex. 5 (Dr. Kearl *Apple v.*
15 *Samsung* Corrected Expert Report) at Tables 17a-f. Samsung, for its part, told the jury that
16 Apple's "billion dollar numbers are completely unsupported," and that it would "show [the jury]
17 how properly to calculate a royalty," by demonstrating how "Dr. Kearl calculated these
18 damages." *Samsung* Tr. at 412. In other words, Samsung's lawyers directly offered Dr. Kearl's
19 analysis as a rebuttal approach on the Android claims, not just as an affirmative calculation on
20 Samsung's counterclaims.

21 Because Dr. Kearl was on the Android side of *Apple v. Samsung*, it is no longer proper for
22 him to serve as a neutral expert here. A Rule 706 expert is cloaked in the authority of the Court.
23 *Cf.* 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6302 (2015)
24 ("[B]ecause of the expert's link to the court, a jury may fail to scrutinize his testimony to the
25 same extent it would the testimony of party experts. Thus, the testimony of a court-appointed
26 expert may undermine rather than promote accurate factfinding."). Both Dr. Kearl and Samsung
27 appeared to recognize the power of a court endorsement. Of all the times that Dr. Kearl has
28 served as an expert witness, Samsung asked Dr. Kearl only about his role in *this case* during the

- 5 -

1  *Samsung* trial.  Dr. Kearl answered by highlighting that he was hired neither for a plaintiff nor for
2  a defendant, but for the Court in this case: "I've been an expert witness in a lot of cases, both for
3  plaintiffs and defendants.  But a few years ago, I was hired by Judge William Alsup of the
4  Northern District of California to be a court expert, to be his expert."  *Samsung* Tr. 2657.  During
5  closing statements, Samsung emphasized Dr. Kearl's neutrality in our case as a reason for his
6  reliability: "[He] even was retained by the court to serve as a neutral expert for the court in
7  another case." *Samsung* Tr. 3319.

8       Given Dr. Kearl's participation in Samsung/Google's defense, he should not remain as
9  this Court's expert.  Retaining him as a "neutral" expert is inviting real prejudice to Oracle and
10 confusion for the jury.  As previously discussed, Dr. Kearl's testimony at trial would force Oracle
11 to steer between Scylla and Charybdis.  *See* ECF 1311 at 5.  Normally, a party could cross-
12 examine an expert about his ties to the opposing side.  But because Dr. Kearl is the Court's
13 expert, that approach risks suggesting to the jury that the Court has in some way endorsed
14 Google's side.  And the jury may already be confused about why it's hearing from a third expert
15 on the damages issue.  The other option, not raising the *Apple v. Samsung* case at all, means not
16 being able to expose to the jury potential biases as would be possible with any other expert.

17      Dr. Kearl should no longer serve as a Rule 706 expert in this case.

18 **II.**     **A Rule 706 Expert Is No Longer Necessary.**

19      The Court should not appoint any Rule 706 expert to replace Dr. Kearl because—as
20 Oracle previously explained, *see* ECF 1311 at 5-7—a Rule 706 expert is no longer necessary
21 (though Oracle acknowledges that the Court previously stated that it would reevaluate the need
22 for a Rule 706 expert after the parties submit their expert damages reports, July 30, 2015 Tr. at
23 48-50).

24      "Rule 706 should be invoked only in rare and compelling circumstances."  *Monolithic*
25 *Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341, 1348 (Fed. Cir. 2009).  That appointment
26 is generally reserved for "complex scientific, medical or technical matters," *Armstrong v. Brown*,
27 768 F.3d 975, 987 (9th Cir. 2014); *see, e.g.*, *Walker v. Am. Home Shield Long Term Disability*
28 *Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) (involving "contradictory evidence about an elusive

1 disease of unknown cause").

2     The damages calculations are not as complex as they were when the patent claims were still in the case.  In November 2011, the Court explained that an important reason why the damages issue "was particularly involved" was that "[d]amages from patent infringement are governed by different legal standards than damages from copyright infringement, [and] some accused products and acts are relevant to both parts of the action." ECF 610 at 2.  This complication no longer exists.  Whatever may be said of the significantly more complex first trial, Oracle does not intend to assert "complicated damage theories" at the retrial.  *See* ECF 1321 at 13.  And the Court will be able to decide for itself once it has the opportunity to review the parties' expert reports.

**III.     A Rule 706 Expert Should Not Testify At Trial.**

    Even if the Court determines that it still requires a Rule 706 expert, the parties should jointly select a neutral expert who should not testify in front of the jury.  As Google previously explained:  "If the jury also hears testimony from a third, neutral expert, that will further complicate the jury's decision on damages.  Moreover, if the jury is aware that the Court's expert was appointed by the Court and is not a representative of the parties, that expert will have a powerful stamp of Court approval and objectivity that will lend a disproportionate weight to that expert's opinions and testimony." ECF 235 at 3.  Oracle agrees.  Any Rule 706 expert should not testify at the trial.

**CONCLUSION**

    Dr. Kearl should no longer serve as a Rule 706 expert in this case, and the Court should not appoint a new expert.

Dated: October 15, 2015

KAREN G. JOHNSON-MCKEWAN
ANNETTE L. HURST
GABRIEL M. RAMSEY
PETER A. BICKS
LISA T. SIMPSON
Orrick, Herrington & Sutcliffe LLP


By: */s/ Peter A. Bicks*
    PETER A. BICKS

Attorneys for Plaintiff
ORACLE AMERICA, INC.