KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY  10036
Tel:    (212) 556-2100
Fax:    (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **GOOGLE'S RESPONSE TO ORACLE'S MOTION TO DISQUALIFY THE RULE 706 EXPERT** <br><br> Date:         November 19, 2015 <br> Time:        8:00 a.m. <br> Dept.:        Courtroom 8, 19th Floor <br> Judge:       Hon. William Alsup <br><br> Date Filed: August 12, 2010 <br><br> Trial Date: May 9, 2016 |

Although the Court has discretion to decide whether to retain and how to use the Rule 706 damages expert, Dr. James Kearl, Oracle's motion to disqualify Dr. Kearl offers no legitimate basis for disqualification. Oracle's motion mischaracterizes the Court's stated reasons for appointing Dr. Kearl, wrongly downplays the tremendous complexity of the copyright damages analysis on retrial, and falls back on innuendo to accuse Dr. Kearl of being a partisan for Google and Android. Oracle appears to be concerned that Dr. Kearl's analysis might undercut its ability to lay claim to Google's alleged Android-related revenues, and complains that it would feel uncomfortable having to cross-examine a Court-appointed expert in front of the jury. But there is no reason whatsoever to think Dr. Kearl will favor Google, or do anything other than give honest testimony, and the risks of cross-examination apply equally to both sides.

### A. The damages issues remain complex and significant on retrial.

*First,* Oracle is wrong to argue, as it does without any analysis, that the damages issues on retrial will be simple, because Oracle lost on its patent claims in the first trial, leaving only copyright damages to be calculated the second time around. In reality, eliminating the patent claims did almost nothing to simplify the damages analysis. In Oracle's third and final damages report before the initial trial, its sole patent damages theory was a reasonable royalty in the form of a hypothetical license, which its expert Dr. Iain Cockburn calculated by starting with the parties' real-world negotiations in 2005 and 2006, making various adjustments, and applying the *Georgia-Pacific* factors to arrive at a final damages amount. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

By contrast, Oracle offered, and presumably continues to offer, not one but ***three*** separate theories of copyright damages. First, it sought the value of the same sort of hypothetical license as in the patent context. This one theory alone captures all the complexity of the patent damage analysis in the first trial, because hypothetical copyright and patent licenses are calculated in the same way. Dr. Cockburn's copyright license calculation followed the same process as his patent license calculation. But the copyright damages calculation does not stop with the hypothetical license. Second, Oracle also will assert a claim for its own lost profits. And third, Oracle seeks disgorgement of Google's allegedly wrongful Android-related profits. This last theory was easily

the most complex of any of the damages theories at play in the first trial and remains so on retrial. The disgorgement analysis first requires Oracle to identify an amount of revenue causally connected to the 37 API packages it alleges Google infringed; after that, Google must identify deductible costs associated with the revenue Oracle has identified, and then apportion the resulting Android-related profits to calculate the profits actually attributable to the 37 API packages at issue, as opposed to myriad other features of the Android platform. *See* 17 U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 710-12 (9th Cir. 2004). The sums involved in this calculation are likely to be far larger than the sums at issue on the other copyright damages theories; the calculations themselves require many moving parts, assumptions, and shifts of the burden of proof and production; and the parties' positions are likely to be very far apart.

### B. The Court's stated rationale for appointing a Rule 706 expert still applies.

*Second,* not only is the damages analysis no less complex now than during the initial trial, Oracle misreads the Court's prior orders when it argues the Court appointed Dr. Kearl largely because of concerns about the differences between patent and copyright damages. Mot. at 7.

- ***On July 5, 2011,*** the Court entered its first order regarding potential appointment of a Rule 706 damages expert. Oracle had recently served its first damages report, which claimed patent damages somewhere between ***$1.4 billion to $6.1 billion,*** [Dkt. 230 at 4], but made no attempt to quantify copyright damages. Accordingly, the Court's initial description of the need for a neutral expert referred only to "the large damages at issue." [Dkt. 195 at 1.]

- ***On July 27, 2011,*** the Court issued a further order regarding the Rule 706 expert, five days after striking Oracle's first damages report. [Dkt. 230 at 15-16.] The Court reasoned that a neutral expert "will be particularly useful because both sides have taken such extreme and unreasonable positions regarding damages in this action." [Dkt. 236 at 2:8-9.]

- Finally, the Court's ***November 9, 2011*** memorandum mentions several reasons justifying a Rule 706 expert. [Dkt. 610 at 2-3.] In addition to noting the differing patent and copyright damages standards, the Court cited the complex nature of the technology at issue, the fact that the alleged infringement involved only elements of products rather than products as a whole, the large damages sought by Oracle, and the gap between the parties' damages positions. [*Id.*]

All of these factors are still in play today. If anything, Oracle is likely to seek far more in damages than it sought in 2012, simply as a function of the passage of time and the continuing growth of Android. Oracle's 37 API packages are still technically complicated, requiring expert

2
GOOGLE'S RESPONSE TO ORACLE'S MOTION TO DISQUALIFY THE RULE 706 EXPERT
Case No. CV 10-03561 WHA

tutorials to explain to the jury.  Those API packages still make up a tiny percentage of Android, and their importance (or lack thereof) to Android will be the subject of vigorous dispute between the parties' percipient and expert witnesses.  Further, the parties have not yet completed fact discovery, much less submitted expert reports, so the Court is not yet in a position to evaluate the parties' damages positions.  The Court's rationale for appointing Dr. Kearl still stands.

### C. Oracle has no factual basis to argue that Dr. Kearl is biased toward Google.

*Third,* Dr. Kearl is best positioned to respond to the substance of Oracle's objection to his work for Samsung in *Apple v. Samsung,* but Oracle has provided no basis to claim that Dr. Kearl is biased toward Google or Android.  Oracle admits that Dr. Kearl's work on *Apple v. Samsung* had nothing to do with Apple's claims against Samsung or Android-based mobile phones.  Instead, Dr. Kearl worked only on Samsung's counterclaims against Apple, which related only to Apple's iOS platform, not Android.  By itself, that should end the discussion.

Instead, Oracle borrows its reasoning from Apple's closing argument (rather than citing to any evidence from that case).  According to Apple's lawyers, and now Oracle, Dr. Kearl deliberately took a dive on behalf of his own client by undercalculating Samsung's damages.  Apple's lawyers (and now Oracle) accused Dr. Kearl of doing this not to harm Samsung, but to devalue patents generally, and thus persuade the jury to lower a damages award to Apple.  Dr. Kearl can speak for himself, but Oracle offers no reason to believe Dr. Kearl was doing anything other than making an honest assessment of Samsung's potential patent damages.  In any event, this case involves copyrights, not patents, and a different legal damages framework.  Tellingly, it doesn't appear that any of Dr. Kearl's purportedly flawed opinions were excluded under *Daubert*.

Oracle also repeatedly warns that the jury in this case will be confused by Dr. Kearl's role in *Apple v. Samsung,* but given that Dr. Kearl's work there had nothing to do with Android or Google, it is Oracle that is trying to inject confusion into the proceedings.  The jury will not know about Dr. Kearl's work for Samsung unless one of the parties chooses to tell them about it.  Because Oracle's bias theory is so far-fetched, and Dr. Kearl's answer to Oracle's concern ("No, I didn't work on any Android-related patents") so obvious, Google doubts that cross-examination

on this issue would be productive.  If Oracle is truly concerned about jury confusion, it can move to exclude evidence of Dr. Kearl's work in *Apple v. Samsung.*

Oracle also wants to avoid having to cross-examine a Court-appointed expert.  Google has the same concern, but how to cross-examine Dr. Kearl will be a tactical issue that affects both parties equally.  Oracle offers no reason to think that Google's cross of Dr. Kearl would need to be any less pointed or aggressive than Oracle's.  For example, Oracle doesn't cite anything from Dr. Kearl's prior expert report or deposition to substantiate its suspicions.  As the Court may recall, prior to the first trial, both Google and Oracle moved to strike portions of Dr. Kearl's damages opinions. [Dkt. 891 (Apr. 10, 2012 Order resolving motions).]  Only Google's motion actually took issue with a substantive aspect of Dr. Kearl's analysis; Oracle's motion instead focused on whether either Google's expert or Dr. Kearl could rely on particular Google evidence.  *Id.* at 2-4 (Google motion); *id.* at 4-7 (Oracle motion).  Nothing about the actual history of this case suggests that Dr. Kearl is somehow biased toward Google.[1]

On this record, there is no reason to disqualify Dr. Kearl.  The Court should deny Oracle's motion, with all parties reserving their rights to bring *Daubert* motions challenging the substance of Dr. Kearl's work after he submits his expert report and sits for deposition.

Dated:  October 29, 2015              KEKER & VAN NEST LLP

                                       By:  */s/ Robert A. Van Nest*
                                            ROBERT A. VAN NEST
                                            Attorneys for Defendant
                                            GOOGLE INC.

---

[1] Oracle's assertion that Google agreed to indemnify Samsung and direct Samsung's defense is deliberately misleading.  As Oracle's evidence shows, Google made this agreement as to and participated in only Samsung's defense of certain of Apple's affirmative claims.  Dr. Kearl's work had nothing to do with those issues.  Google did not pay for or participate in litigation regarding Samsung's counterclaims against Apple, or ***any*** damages issues related to any party's claims—the only part of Apple v. Samsung on which Dr. Kearl worked.