ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>            Plaintiff,<br><br>    v.<br><br>GOOGLE INC.<br><br>            Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY THE RULE 706 EXPERT**<br><br>Date: November 19, 2015<br>Time: 8:00 a.m.<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

## ARGUMENT

The central facts here are not in dispute.  Dr. Kearl testified in a patent case involving Android software.  In that case, Google had control over litigating at least two of the patents. Google and Samsung were so inseparable, the same attorneys who represented Samsung also represented Google.  Whether the lawsuit was really an attack on Android, whether Dr. Kearl's analysis was intended to aid the Google/Samsung defense, and whether Google's developers were too skilled to ever resort to copying were all issues at trial.

Under these circumstances, Dr. Kearl should not be the Court's neutral expert.  And the Court need not replace him because the parties' experts will sufficiently present the damages issues to the jury through the normal adversary process.

I.    **Given The Undisputed Facts, Dr. Kearl Should No Longer Serve As A Rule 706 Expert.**

Google and Dr. Kearl's responses are telling more for what they do not say than for what they do.  Neither denies the key facts.  Google and Dr. Kearl do not dispute that:

- Apple sued Samsung based on certain software features that were in Google's Android, Mot. 3[1];

- Google agreed to indemnify Samsung for certain patents in the suit, and thus had a duty to pay litigation costs and a potential damages award, Mot. 4;

- Google was in control of litigating at least two patents in suit, Mot. 4.;

- Quinn Emanuel represented both Samsung and Google in *Apple v. Samsung*, Mot. 4;

- Samsung's oft-repeated theme during its opening statement and closing argument was that *Apple v. Samsung* was really *Apple v. Google*, Mot. 3;

- One of Samsung's main defenses against infringement was that Google's engineers are so skilled that they would never copy, Mot. 3;

- Apple was seeking over $2 billion in damages, while Samsung sought $6 million, Mot. 4-5;

---

[1] Oracle's Motion is ECF 1340.  Dr. Kearl's Response is ECF 1351.  Google's Response is ECF 1352.

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISQUALIFY
CV 10-03561 WHA

1   • Samsung argued that the way "Dr. Kearl calculated [$6 million in] damages" shows

2   that Apple's "billion dollar numbers are completely unsupported," Mot. 5;

3   • Dr. Kearl highlighted in the *Apple v. Samsung* case that he was hired in *this* case

4   neither for a plaintiff nor for a defendant but for the Court, Mot. 6;

5   • Samsung emphasized Dr. Kearl's neutrality in our case as a reason for his reliability,

6   Mot. 6. [2]

7

8   These undisputed facts show that Dr. Kearl should no longer serve as a neutral Rule 706

9   expert due to his connection to Google and Android in *Apple v. Samsung*. Dr. Kearl, however,

10   states he "did not side with Google" and his opinions "in no way concerned . . . Apple versus

11   Google." Kearl Resp. 2-3. Google adds that because "Dr. Kearl worked only on Samsung's

12   counterclaims[,] which related only to Apple iOS platform, not Android[,] that should end the

13   discussion." Google Resp. 3. But it does not.

14   *First*, Google was intimately involved in the case. Google was obligated to indemnify

15   Samsung for costs and damages; Samsung gave Google control over litigating at least two

16   patents; and the same lawyers represented Google and Samsung. That Quinn Emanuel

17   represented both Google and Samsung shows that the important strategic decisions—like

18   asserting counterclaims—likely served the best interests of both companies. Quinn's dual

19   representation also renders Google's argument that it did not "participate in litigation regarding

20   Samsung's counterclaims against Apple" unconvincing. *See id.* at 4. It would have been

21   impossible for Google's attorneys to participate in some parts of the litigation while only

22   Samsung's attorneys handled other parts. Google's attorneys were Samsung's attorneys.

23   *Second*, Dr. Kearl helped the Samsung/Google team by offering his analysis of Samsung's

24   counterclaims at trial. Google had two ways to lower Apple's damages, and thereby its liability:

25   _____

26   [2] The only fact Dr. Kearl calls into question is Apple's statement about why Samsung would pay
    its experts $5 million for a $6 million claim. Kearl Resp. 3. At trial, Dr. Kearl was present for
    the testimony of Samsung's other experts, and heard how much they were paid. *Samsung* Tr.

27   2671:14-20. Dr. Kearl was asked whether it was correct that "Samsung has paid, in total, about --
    more than $4 million … to their expert witnesses." *Id.* at 2671:21-23. Dr. Kearl responded:

28   "Yes." *Id.* at 2672:5.

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISQUALIFY
CV 10-03561 WHA

1   on defense, by undermining Apple's expert's analysis; and on offense, by convincing the jury that

2   smartphone patents are not worth much.  To execute the offensive strategy, Samsung

3   counterclaimed for $6 million to argue that Apple's $2 billion demand was overstated.  When Dr.

4   Kearl testified about Samsung's counterclaims, he also helped to defend Google.  In other words,

5   Samsung's offense was also Google's defense.

6         Dr. Kearl's work in *Apple v. Samsung* means that he can no longer fulfill the role the

7   Court prescribed for him.  The Court appointed Dr. Kearl to assist the jury by providing an "an

8   independent, professional view as opposed to the views of experts that are retained and paid for

9   by the competing sides."  ECF 350 at 5; *see also* ECF 236 at 2 ("neutral explanation and

10  viewpoint").  Because Dr. Kearl helped to defend Google, he can no longer provide such a view

11  to the jury.  Dr. Kearl was aware that the Court wanted a conflict-free expert and that he had to

12  disclose any close professional relationship with Google.  *See* ECF 350 at 32-38.  He did not do

13  that.  Indeed, it was Oracle, not Dr. Kearl, who brought this issue to the Court's attention.  ECF

14  1273 at 9.  And we now know that that Dr. Kearl was not "an independent expert," "Court

15  appointed," or "not your ordinary expert," in *Apple v. Samsung*.  ECF 1280 at 46.

16        Google suggests that Oracle should simply not raise the *Apple v. Samsung* issue at trial

17  because "[t]he jury will not know about Dr. Kearl's work for Samsung unless one of the parties

18  chooses to tell them about it."  Google Resp. 3.  But that's just the problem.  The combination of

19  Dr. Kearl's work in *Apple v. Samsung* and his status as an extension of the Court puts Oracle in

20  an impossible bind.  Oracle can raise the issue at trial, but that risks suggesting to the jury that the

21  Court has approved of Google's side.  In fact, Google itself warned that a Rule 706 "expert will

22  have a powerful stamp of Court approval . . . ."  ECF 235 at 2.  Dr. Kearl and Samsung even used

23  this Court's endorsement to bolster Dr. Kearl's credibility in *Apple v. Samsung*.  *See* Mot. 6.

24  Oracle's other option is to forgo raising the issue, which would mean Oracle could not present a

25  bias argument to the jury that it could for any normal expert hired by one of the parties.  On cross-

26  examination, Oracle will therefore face unique prejudice, a problem that does not "affect[] both

27  parties equally."  *See* Google Resp. 4.

28

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISQUALIFY
CV 10-03561 WHA

II.    **A Rule 706 Expert Is Not Necessary For The Jury To Understand The Damages Issues.**

The adversarial process is at the center of our legal system.  It is "grounded on the notion that truth will most likely be served" by the "forceful argument by both sides."  *United States v. Thompson*, 827 F.2d 1254, 1258 (9th Cir. 1987).  In short: "The adversary process helps us get at the truth."  *Id.* at 1259.  "Inquisitorial proceedings, where the judge takes an active role in ferreting out the truth . . . are decidedly alien to our way of thinking."  *Id.* at 1258.

Using a Rule 706 expert is an exception to the normal adversary process.  An extension of the Court is taking an active role in ferreting out the truth.  Unlike a technical advisor, a Rule 706 expert can be called to testify and relied on as an independent source of evidence.  *Fed. Trade Comm'n v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1213 (9th Cir. 2004).  Accordingly, the "use of Rule 706 should be reserved for exceptional cases in which the ordinary adversary process does not suffice."  *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341, 1348 (Fed. Cir. 2009) (quoting *In re Joint E. & S. Dists. Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. 1993)).  A court invoking this exception should therefore do so sparingly and with great care.  As Oracle previously explained, this is not the case for that exceptional procedure.  *See* Mot. 6-7; ECF 1329 at 5-7.

Google argues that the Court should still use a Rule 706 expert (Dr. Kearl or someone else), because the damages issues have some level of complexity.  Google Resp. 1.  But all Google has shown is that the *parties* should be permitted to put experts on the stand because those experts have "specialized knowledge [that] will help the trier of fact to understand the evidence."  Fed. R. Evid. 702(a).  Take, for example, Google's statement that the recovery of Google's profits is "the most complex of any of the damages theories at play" because it involves determining Google's revenue, costs, and an apportionment based on the profits that are attributable to the infringement.  Google Resp. 2.  That merely describes the infringer's profits analysis in any copyright case.  Google's own expert will counter the opinions of Oracle's expert on these "most complex" damages issues.

For the Court to appoint its own expert on top of the parties', the standard must be higher.

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISQUALIFY
CV 10-03561 WHA

Otherwise, a court would appoint an expert in any case where there is a party expert.  The fact that an issue has enough complexity that the jury would be aided by the parties' experts does not mean that the Court should also appoint its own expert and disrupt the traditional adversary process.  No Rule 706 expert is necessary.

## CONCLUSION

Dr. Kearl should not serve as a Rule 706 expert, and no expert should be appointed to replace him.

Dated: November 4, 2015

KAREN G. JOHNSON-MCKEWAN
ANNETTE L. HURST
GABRIEL M. RAMSEY
PETER A. BICKS
LISA T. SIMPSON
Orrick, Herrington & Sutcliffe LLP


By: */s/ Peter A. Bicks*
          PETER A. BICKS

Attorneys for Plaintiff
ORACLE AMERICA, INC.

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION TO DISQUALIFY
CV 10-03561 WHA