

ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

tel +1 415-773-5800
fax +1 415-773-5759
WWW.ORRICK.COM

Annette L. Hurst
(415) 773-4585
ahurst@orrick.com

November 9, 2015

Honorable William H. Alsup
United States District Judge
United States District Court for the
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Oracle America, Inc. v. Google Inc.,* Case No. 10-cv-03561
              Letter Motion to Compel Financial Information (per ECF Nos. 1277 ¶11 & 56)

Dear Judge Alsup:

Google's partial production of ten financial spreadsheets on November 3, 2015 does not moot Oracle's motion and does not satisfy Google's obligation to produce all relevant financial information requested by Oracle.[1]

During a meet and confer teleconference on September 29, 2015, the parties mutually identified financial information as a category of non-custodial information that could be produced in short order from readily identifiable document repositories and databases. I was present on behalf of Oracle during the September 29 meet and confer, but neither Ms. Anderson nor Mr. Van Nest participated. The meeting was not productive in resolving issues because the persons attending on behalf of Google did not have authority to resolve issues. I therefore requested twice, in writing, on September 29 and October 1, that either Ms. Anderson or Mr. Van Nest ("lead counsel") agree to meet and confer telephonically or in person in order to resolve this and other issues. Ms. Anderson repeatedly declined on their behalf. In making the second request on October 1, I cited that portion of the Court transcript where the parties had previously agreed to have regular meet and confer conferences with lead counsel present in order to be efficient in resolving discovery matters. Still, Google's lead counsel declined to participate.

Despite Google's claims to the contrary, we did discuss on September 29 and on subsequent meet and confers the nature of the financial documents that Oracle seeks. Oracle specifically requested that, in addition, to the standard P&L information and other regularly prepared spreadsheets, Google produce financial summaries that are prepared for executives and executive presentations. Google indicated that it would produce such documents (but has not). Google now complains that

---

[1] The ten documents Google produced are "Ads Product Area P&L" (Quarterly, Q1 2011-2015); "Adwords Revenue" (Monthly: Jan 2008 – Dec 2014); "AFS Revenue & TAC" (Monthly: Jan 2008 – Dec 2014); "Android Activations" (Monthly Jan 2008 – Sept 2015); "Display Revenues and TAC" (Quarterly: Q1 2011-Q2 2015); "G&A Expense (Unallocated)" (Quarterly: Q1 2009-Q2 2015); "Search Product Area P&L" (Quarterly: Q1 2011-Q2 2015); "Android Ad Revenues" (Quarterly: Q1 2012 – Q2 2015); "Android P&L" (Quarterly: Q1 2011 – Q2 2015); and "Google Search Mobile Revenue" (Monthly Jan 2008 – June 2015).



Hon. William H. Alsup
November 9, 2015
Page 2

Oracle first asked Google to provide a list of regularly-generated financial reports circulated to Google leadership during a November 5, 2015 meet and confer teleconference.  This is incorrect.  Oracle Request for Production No. 209, served September 8, 2015 and discussed during the parties' October 15, 2015 telephonic meet and confer, requests "DOCUMENTS sufficient to identify all GOOGLE dashboards, databases, data sources, data dictionaries, and regularly created reports related to ANDROID, MOBILE DEVICES, WEARABLES, AUTOMOTIVE PRODUCTS, IOT DEVICES, GOOGLE APPLICATIONS, GOOGLE ADVERTISING, and GOOGLE'S non-mobile business."

On the September 29 call (in which I participated) and for several weeks thereafter, Oracle repeatedly asked Google to provide a date certain for production of financial information, and each time Google assured us that it would be producing the requested documents.  But Google would not commit to any date certain for production, and when Google finally indicated that it would produce in "early November" it made no assurances as to what would be in that production.  Google thus left Oracle no choice but to seek relief from the Court.

During a meet and confer teleconference on November 5, 2015, Google represented that its financial production is now complete.  Far from it.  For starters, although Google continues to indicate that it is producing executive summaries of financials, it has yet to do so.  In addition, Google's November 3 production includes a spreadsheet listing unallocated General and Administrative Expenses incurred on a company-wide basis.  Yet Google has not produced documents sufficient to permit Oracle's experts to conduct a proper rebuttal expense allocation analysis concerning this data.  Without company-wide revenue reports across the period at a detailed P&L level, there is no basis to assess *causation*—a necessary element of expense apportionment.

Google takes the view that it can simply apply a straight proportion of company-wide expenses to revenue based on extremely high level revenue data available in its 10-K.  But such an approach does not demonstrate any causal link between the expenses and the relevant revenue.  Google did not produce the revenue data that goes with these expenses across the company.  Google must produce its P&L level reports so that Oracle's experts can prepare rebuttal reports that properly address the role of causation of expenses across the company.  Oracle is not bound by Google's method of apportionment, and is entitled to offer its own approach—but it can only do so if Google produces the necessary data.  If Google refuses to do so, then its own apportionment of company-wide expenses should be excluded.

Also, the documents Google has produced to date do not include data on revenue-per-search or data sufficient to calculate that figure (such as data on volume of searches, volume of clicks, revenue-per-click, etc.).  The revenue-per-search data is important to demonstrating the value of Android (and the infringement) to Google.  It is also important in assessing variable costs and therefore unit profitability associated with the generation of advertising revenue.  Given the relationship among Google's infringement, Android, and Google's search business, revenue-per-search is clearly a relevant data point for damages calculations.



Hon. William H. Alsup
November 9, 2015
Page 3

An additional example is Google's production of a document reflecting Traffic Acquisition Cost: it has produced the company-wide cost data but has not produced documents sufficient to permit specific calculation of Traffic Acquisition Cost by category of device or platform (i.e., desktop versus mobile, Android versus iOS). Again, Oracle requires this data to perform a rebuttal allocation of expenses associated with generating mobile advertising revenue.

As a final example, Google attempts to limit its production of financial data to that which it claims is "Android-related" (a concept about which the parties disagree) and further suggests that Oracle never raised the fact that it also seeks data on non-mobile and non-Android products. The parties indeed discussed Oracle's requests for exactly these sorts of documents in their meet and confers, and Oracle even sent Google a thorough written discussion of why these types of documents are relevant to this case. As noted above, such data is important for company-wide expense allocations. And as made clear by recent Google announcements, the concepts of "Android-related financial data" and "non-mobile data" are not mutually exclusive. Android is migrating to numerous other types of devices, including "internet of things" devices and the desktop. Oracle is entitled to financial data, including projections, related to the company's performance in these areas in order to address both fair use and damages.

Google is also incorrect when suggesting that Oracle has never mentioned Alphabet during the parties' meet-and confer on Interrogatory No. 31. Interrogatory No. 31 includes a definition of Google that includes Alphabet. Moreover, the parties met and conferred multiple times about the scope of production of documents within Alphabet's control (Oracle first raised this issue back in August 2015). In any event, it appears that Google has now abandoned its objection related to Alphabet.

Google's statement that Oracle never mentioned a need to promptly complete production of financial information in order to facilitate expert reports is wrong. Oracle raised the issue repeatedly and began its own production of financial data on October 7 for precisely this reason. Indeed, the parties negotiated a new set of deadlines set forth in a stipulation and proposed order for revised dates (recently entered by the Court) because, in part, Oracle had expressed this concern.

Respectfully submitted,

/s/ *Annette L. Hurst*

Annette L. Hurst
Counsel for Oracle America, Inc.