**Pages 1 - 9**

                  UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

ORACLE AMERICA, INC.,              )
                                   )
           Plaintiff,              )
                                   )
   VS.                             )      **NO. CV 10-3561-WHA**
                                   )
GOOGLE, INC.,                      )
                                   )
           Defendant.              )
_____)

                                   San Francisco, California
                                   Tuesday, November 10, 2015

                      **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                        ORRICK, HERRINGTON & SUTCLIFFE, LLP
                        405 Howard Street
                        San Francisco, CA  94105
                   BY:  **ANNETTE HURST, ATTORNEY AT LAW**
                        **ANDREW KIM, ATTORNEY AT LAW**

                        ORRICK, HERRINGTON & SUTCLIFFE, LLP
                        1000 Marsh Road
                        Menlo Park, CA  94025
                   BY:  **ROBERT URIARTE, ATTORNEY AT LAW**
                        **GABRIEL RAMSEY, ATTORNEY AT LAW**

                        ORRICK, HERRINGTON & SUTCLIFFE, LLP
                        51 West 52nd Street
                        New York, NY  10019
                   BY:  **LISA SIMPSON, ATTORNEY AT LAW**


Reported by:  Pamela A. Batalo, CSR 3593, RMR, FCRR
              Official Reporter

```
APPEARANCES CONTINUED:

For Plaintiff:
                    ORACLE AMERICA, INC.
                    500 Oracle Parkway
                    Redwood Shores, CA  94065
              BY:   RUCHIKA AGRAWAL, ATTORNEY AT LAW




For Defendant:
                    KEKER & VAN NEST, LLP
                    633 Battery Street
                    San Francisco, CA  04111
              BY:   DANIEL PURCELL, ATTORNEY AT LAW
                    CHRISTA ANDERSON, ATTORNEY AT LAW
                    ELIZABETH EGAN, ATTORNEY AT LAW
```

1   **Tuesday - November 10, 2015**                    **10:50 a.m.**

2                    **P R O C E E D I N G S**

3                         **---oOo---**

4        **THE CLERK:**  Calling CV 10-3561-WHA, Oracle America vs.

5   Google, Inc.

6        Counsel, can you please state your appearances for the

7   record.

8        **MS. HURST:**  Good morning, Your Honor.  Annette Hurst

9   on behalf of Oracle.

10       **THE COURT:**  Welcome.

11       **MR. PURCELL:**  Good morning, Your Honor.  Dan Purcell

12  here on behalf of Google, with my partner Christa Anderson and

13  our colleague, Beth Egan.

14       **THE COURT:**  Welcome.

15     How can I help you?

16       **MS. HURST:**  Your Honor, we have resolved a number of

17  issues on the motion, but there is one remaining -- one or two

18  remaining disputes.

19     The issue is the production of -- well, we had asked for a

20  list of financials in the motion in order to assess what

21  further things we thought should be produced, but I think we

22  can go straight to the further point of what we thought should

23  be produced, which is P&Ls for Google, all of Google's

24  businesses, Your Honor.

25     And the dispute here is over expense allocation related to

1     what expenses are allowed to be deducted against Android

2     revenues in the unjust enrichment calculation.

3          In response to interrogatory 31, Google produced last week

4     an unallocated expenses spreadsheet, and although we don't

5     understand exactly how they intend to allocate those expenses

6     based on our discussions, we anticipate that they will try to

7     do some straight-line proportion of Android revenues to the

8     firm's revenues and allocate a portion on that basis.

9          Your Honor, we believe that does not meet the test that's

10    already been laid out by the Court causally for the deduction

11    of expenses.

12         In the Court's order on overhead deduction, quoting the

13    *Kamar vs. Russ Berrie* case, the Court said that claimed

14    expenses must be, quote, of actual assistance in the

15    production, distribution, or sale of the infringing product.

16         Your Honor, we believe that in order to demonstrate a

17    causal relationship of those expenses to the Android revenue,

18    we need to see the performance of the entire firm and assess

19    that in order to tease out the presence or absence of a causal

20    relationship.

21         We will move to exclude, if they do on a straight

22    proportional basis, at *Daubert*, but, Your Honor, we would like

23    to be able to prepare our own rebuttal expense calculation, not

24    just rely on trying to exclude theirs.

25         And our experts look at, for example, published reports of

1   the other lines of business that appear to be extremely capital

2   and overhead intensive businesses in which Google has been

3   losing money, things such as moon shots, driverless cars, space

4   elevators, forays into healthcare and transportation, Google

5   Ventures Investing, Google Fiber, Life Sciences, Artificial

6   Brains.

7        These things can be very capital and overhead intensive

8   endeavors, and these unallocated expenses, if they're trying to

9   take expenses that are actually attributable to those losing

10  money lines of business and apply it against Android, we'd like

11  to be able to do that, but we can't without the firm-wide P&Ls,

12  Your Honor.

13       And so really what this is left to boil down to is a

14  dispute over whether they are required to produce their

15  company-wide P&Ls in order to get at these causation issues

16  related to overhead.

17            **THE COURT:**  Let me ask you, do these documents exist?

18            **MS. HURST:**  Yes, Your Honor.  We believe they do,

19  based on our meet and confer discussions.  We don't know

20  exactly what they're called.  That's why we asked for the list,

21  but we believe that they exist based on our discussions.

22            **THE COURT:**  Hold that thought.  Let me hear from the

23  other side for a moment.

24       If these exist, why can't you just produce them?

25            **MR. PURCELL:**  We don't believe they're relevant,

1    Your Honor.

2              THE COURT:  Come on.  Come on.

3              MR. PURCELL:  Well, so the --

4              THE COURT:  It's relevant to their argument.  It's not

5    relevant to your argument, but this is still America.  They get

6    to make their argument.  Maybe they lose.  I don't know.

7              MR. PURCELL:  What we have produced, we have produced

8    the P&Ls for --

9              THE COURT:  I asked you why you won't produce the

10   things you have.  You do have them.  You're stonewalling.  I'm

11   going to tell the jury you're stonewalling.

12             MR. PURCELL:  Well, if we're ordered to produce them,

13   we'll produce them.

14             THE COURT:  I think you should produce them.  I'm not

15   saying that this is going to lead to -- I don't want somebody

16   saying later we have to retry this case because Google

17   stonewalled or because Oracle stonewalled.  We're going to do

18   it one more time, so, yes, we're going to have more stuff

19   produced than probably is relevant, but there's no way I can

20   tell this now, whether it's relevant or not now.

21        They get a shot to look at it and see -- as counsel said,

22   tease out something and maybe they try to tease out too much

23   and it's just baloney, but they get a shot at it.  It's a

24   decent point that counsel has made.  They ought to be able to

25   look at your records and see if they can make their argument.

1          **MR. PURCELL:**  I understand Your Honor's ruling, and

2     we'll abide by it.

3          I do want to understand it a little bit.  So what I think

4     Oracle is asking for is essentially P&L documents for every

5     Google line of business for which such a document exists?

6          We've already produced them for Android.  We've produced

7     them for our search and our advertising segments, and we have

8     produced a category of documents, a chart showing unallocated

9     G&A expenses.  That's something that Google doesn't allocate

10    across its different lines of business.  It's things like real

11    estate costs.

12         The P&Ls do have specific costs specific to each of the

13    lines of business so there is an Android P&L with Android

14    revenue and Android costs.  I just want to be sure that we're

15    going to be responsive.

16         **THE COURT:**  I don't even know myself.  How am I

17    supposed to answer that question?  I'm just saying what I heard

18    is a reasonable point.

19         Now, you don't have any showstopper.  All you say is it's

20    not relevant.  But how --

21         **MR. PURCELL:**  Well -- and it -- well, I won't argue

22    further, Your Honor.

23         **THE COURT:**  I think it's relevant enough to make you

24    produce it.  Whether it's relevant enough to actually go to the

25    jury is a *Daubert* question.  But it's impossible for me or the

1    other side to be able to answer that question until they get

2    their hands on it and see what they can make out of it.

3        That's my view from 30,000 feet up.  If you want something

4    that's more detailed than that, I can't give it to you now.  I

5    think that has to wait until after we see how the data is

6    actually used.

7        Maybe you should keep track of how much it costs to

8    produce all of this.  If it turns out to be totally wasteful,

9    we'll make Oracle pay for the cost involved in ginning all this

10   up, but right now I'm not going to say that it deserves that.

11   But it may be I would say that later, that Oracle has got to

12   pay 50,000 or 500,000 or whatever it costs to go gin this up.

13   But for right now, Google -- but keep track of your expenses in

14   responding to this.

15           **MR. PURCELL:**  Yes, Your Honor.

16           **THE COURT:**  Now, if you don't -- on the Oracle side,

17   if you don't want to wind up paying for all that -- I don't

18   know, probably you're willing to take that gamble.  But it's

19   conceivable that at the end of the day, I would say you owe

20   them $500,000 for just the expense.  Probably is not that much.

21   Probably more like 50,000, but I think you should produce the

22   raw materials and let them do their best with whatever you

23   can -- with what they're requesting.  That's my view from

24   30,000 feet up.

25           **MR. PURCELL:**  We'll do that.

1          **THE COURT:**  Great.  Thank you.

2      Anything more I can help you with?

3          **MS. HURST:**  No further matters, Your Honor.

4          **THE COURT:**  All right.  Case over.  Or at least matter

5  today is over.  All right.

6                      (Proceedings adjourned at 10:59 a.m.)

7

8

9                      CERTIFICATE OF REPORTER

10          I certify that the foregoing is a correct transcript

11  from the record of proceedings in the above-entitled matter.

12

13  DATE:   Thursday, November 12, 2015

14

15  *Pamela A. Batalo*

    _____
16  Pamela A. Batalo, CSR No. 3593, RMR, FCRR
    U.S. Court Reporter

17

18

19

20

21

22

23

24

25