IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC.,

    Plaintiff,

  v.

GOOGLE INC.,

    Defendant.

No. C 10-03561 WHA

**ORDER DENYING ORACLE'S MOTION TO DISQUALIFY RULE 706 EXPERT**

## INTRODUCTION

In this copyright-infringement action involving an operating system for mobile devices, the Court appointed an expert under Rule 706, who, before the trial herein, testified in a separate case involving different parties. Although that litigation involved the same operating system, he gave no opinion on the operating system and testified only on issues uninvolved in the instant case. Based thereon, plaintiff moves to disqualify the Rule 706 expert from participating in this case. For the reasons stated below, plaintiff's motion is **DENIED**.

## STATEMENT

Plaintiff Oracle America, Inc., acquired copyrights in the programming platform known as Java. Defendant Google Inc. used Java to compose its Android operating system used in mobile devices. Using the Java language itself violated nothing, all agree, and 95 percent or more of Android constituted an original work by Google. The remaining five percent has become the issue. The United States Court of Appeals for the Federal Circuit held that the remaining five percent infringed Oracle's copyright in the structure, sequence, and organization of the Java Application Programming Interface, reversing a decision by this Court that had held

the Java structure, sequence, and organization constituted a non-copyrightable "method of operation" within the meaning of Section 102(b) of the Copyright Act. The Federal Circuit remanded the case for further proceedings on Google's fair use defense (and, Google contends, its equitable defenses) as well as Oracle's remedies, including injunctive relief and damages, which could amount to multiple billions of dollars because Oracle now claims additional damages based on the period since the first trial.[1]

Early on, the Court appointed an expert pursuant to Rule 706 "to testify before the jury at trial . . . and *not* [to serve] as a confidential advisor to the judge" regarding the issues of damages (for copyright and patent claims). A memorandum order detailed the need fo a Rule 706 expert (Dkt. No. 610 at 3): "[I]n light of the parties' extremely divergent views on damages and the unusual complexity of the damages aspect of this case, an independent economic expert was needed to aid the jury." After considering the recommendations of the parties, the Court selected Dr. James Kearl of Brigham Young University as the Rule 706 expert (Dkt. No. 374).

As required by Rule 706, an order described Dr. Kearl's assignment — "to provide an independent professional analysis and view to inform the jury, in the event liability is found, on the issue of damages on the claims asserted in this action" (Dkt. No. 413 at 1). That order also detailed, *inter alia*, the procedure for Dr. Kearl to review the relevant materials in the record, scheduled time for Dr. Kearl to prepare a report, provided that the parties could depose Dr. Kearl, and addressed Dr. Kearl's compensation for his work (*ibid.*).[2]

Dr. Kearl then produced an expert report (which will eventually be updated in light of intervening events). This case has not yet proceeded to the damages phase, so Dr. Kearl has not yet testified herein. Now that the case is back from the Federal Circuit, the parties intend to conduct a new round of damages studies, and the new schedule for the exchange of the parties' expert reports includes time for a new Rule 706 expert report, for a deposition of the Rule 706

---

[1] The copyright appeal herein was taken to the Federal Circuit rather than the Ninth Circuit because the appeal included subsidiary patent issues which were then abandoned after the appeal was docketed.

[2] A tentative order clarifying Dr. Kearl's assignment in light of the remand and the abandonment of the patent issues will follow shortly after this order issues. The parties and Dr. Kearl shall have an opportunity to comment on that tentative order.

expert, and for party rebuttals to the Rule 706 expert's report.  Dr. Kearl has also recently been asked to comment on any *Daubert* motions that the parties file.

*             *             *

The present disqualification motion pertains to Dr. Kearl's role as an expert in a separate action involving different parties, a role he took on after accepting the Rule 706 appointment in the instant case.  In 2012, Apple Inc. commenced a patent-infringement action against Samsung Electronics Co., Ltd. (and other Samsung entities).  *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-00630 (Judge Lucy H. Koh).  Neither Apple nor any Samsung entity is a party in the instant action, and neither Oracle nor Google was a party in *Apple v. Samsung*.  In that action, Apple claimed that certain software features in Samsung's mobile devices, which implemented a version of Google's Android operating system, infringed Apple's patents.  Apple sought over two billion dollars in damages from Samsung.  For its part, Samsung asserted counterclaims against Apple arising from Apple's implementation of certain features in its own devices, which ran Apple's iOS operating system.  Samsung sought six million dollars in damages.

Due to the Android connection, Google agreed to defend and indemnify Samsung as to certain aspects of its defense against Apple's affirmative claims but never agreed to pay (and did not pay) for any aspect of Samsung's affirmative case against Apple (Bicks Decl., Exh. 2). Both Google and Samsung retained counsel from the law firm of Quinn Emanuel Urquhart & Sullivan LLP throughout *Apple v. Samsung*, and Google filed briefs in that case in response to certain third-party discovery issues.  (Keker & Van Nest LLP, the law firm that represents Google in our case, had zero role in *Apple v. Samsung*.)

Samsung's counsel retained Dr. Kearl to serve as an expert economist "solely to value specific features of Apple products" and to evaluate the royalties Apple would have paid to Samsung for a hypothetical license of the Samsung's asserted patents (Kearl Decl. ¶ 2).  (Again, Apple products, at all material times, used an operating system different from Android.) Neither side asserted any copyright-infringement claims.  Dr. Kearl did not discuss Android or

1  Google in any of his work. With the exception of a brief explanation of his role in the instant
2  matter, Dr. Kearl did not discuss Android or Google in his testimony in *Apple v. Samsung*.[3]

3  In their opening statement in *Apple v. Samsung*, counsel for Samsung contended that
4  Apple's case was "an attack at Android" and that Google's engineers "don't need to copy
5  Apple" (Bicks Decl., Exh. 1 at 359, 370). They further stated that Apple had proposed "absurd"
6  damages calculations (*id.* at 377). Finally, referencing Samsung's affirmative claim, counsel
7  explained that they would "show [the jury] how properly to calculate a royalty" and referenced
8  the Samsung patents, Apple's infringement theory, and Dr. Kearl's methodology (*id.* at 412).

9  During Apple's cross-examination, Dr. Kearl acknowledged (as he had in his report)
10 that he used the price that Apple actually charged customers in its App Store ($0.99) for an
11 accused feature (Facetime) in his calculation of the royalty Apple would have paid in a
12 hypothetical license for Samsung's patent covering that feature, even though "the value that
13 [Apple] users placed on Facetime is likely higher, and likely many times higher" than the actual
14 amount paid by purchasers (Hurst Decl., Exh. 8, 1926, 2673–74).

15 At closing argument, counsel for Apple contended that Samsung had pursued its lower-
16 valued counterclaims merely in an attempt to downsize Apple's damages claim (Bicks Decl.,
17 Exh. 4 at 3350):

> You also now know that [Samsung] hired four experts, Dr. Schonfeld, Dr. Rao, Mr. Parulski, and Dr. Kearl, who in total were paid over $5 million — again, without what the lawyers have been paid — to pursue a $6 million claim.
>
> Does that make sense? Only in one circumstance, if you're trying to devalue patents, all patents.

---

[3] The Court has reviewed the full transcript of Dr. Kearl's trial testimony (Dkt. Nos. 1311-10, 1311-11). He made no mention of Android or Google with the exception of the brief reference to his role in this matter. Additionally, to rule on this motion, the Court asked Dr. Kearl to produce an unredacted copy of his report and testimony in *Apple v. Samsung* to the parties herein (Dkt. No. 1322). The parties herein, the parties in *Apple v. Samsung*, and Dr. Kearl entered into a protective agreement, and counsel for Samsung produced an unredacted copy of Dr. Kearl's report and his trial and deposition testimony to Oracle and Google. Oracle has only submitted ten pages of the report in support of its motion, and no mention of Android or Google appears in those pages. Oracle has not submitted any of Dr. Kearl's deposition testimony. The Court is confident that Oracle would have called attention to any reference to Android or Google in Dr. Kearl's report or his deposition testimony. Accordingly, this order can safely conclude that Dr. Kearl made no reference to Android or Google in his report or his testimony, with the exception of a brief reference to his role in this matter.

4

> And this was an intentional strategy. As Dr. Kearl testified during his quick testimony on damages, he used a $0.99 upgrade for Facetime in his analysis.
>
> But on cross-examination, he agreed that the actual value of Facetime was many, many times higher.
>
> Why would you use — why would you use an artificially low number? Only one reason. They're the plaintiff. Only one reason. To devalue, to cheapen, to convince you that the patents are not worth much.

Dr. Kearl now states, "I did not intentionally lower my damages estimates. I offered a well-supported and reasonable estimate of the reasonable royalties in light of the objective evidence of the value of the accused features and the availability of non-infringing substitutes" (Kearl Decl. ¶ 9).

Oracle moves to disqualify Dr. Kearl as biased in favor of Google. In any event, Oracle further contends that a Rule 706 expert is no longer necessary. Dr. Kearl, through his counsel, has filed a declaration explaining his work in *Apple v. Samsung*, although he stated he did not believe it appropriate to oppose Oracle's motion, inasmuch as he does not have an adversarial position vis-a-vis either party in this action. Google filed a response brief arguing that the Oracle's motion should be denied, although at oral argument on this motion counsel stated, "[o]ur position has always been that the Rule 706 expert decision is up to the Court. And we're willing to live with what the Court decides" (Dkt. No. 1382 at 19). This order follows full briefing and oral argument.

## ANALYSIS

Rule 706 provides, in pertinent part:

> (a) Appointment Process. On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.
>
> (b) Expert's Role. The court must inform the expert of the expert's duties. The court may do so in writing and have a copy filed with the clerk or may do so orally at a conference in which parties have an opportunity to participate. The expert:
>
>    (1) must advise the parties of any findings the expert makes;

5

      (2) may be deposed by any party;

      (3) may be called to testify by the court or any party; and

      (4) may be cross-examined by any party, including the party that called the expert.

### 1. DR. KEARL'S ROLE IN *APPLE V. SAMSUNG* DOES NOT UNDERMINE HIS NEUTRALITY HERE.

Rule 706 itself does not address the independence or neutrality of a court-appointed expert. Our court of appeals reviews the appointment of a Rule 706 expert for abuse of discretion. *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999). Neither the rule nor any decision from our court of appeals offers guidance for the exercise of that discretion in assessing a Rule 706 expert's independence, but several district courts in our circuit have described Rule 706 experts as "neutral." *See, e.g.*, *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1177 (E.D. Cal. 2011) (Judge Lawrence K. Karlton) ("The Rule only allows a court to appoint a neutral expert."). Often, the appointment of a Rule 706 expert is contrasted with the selection of an expert to be called by an advocate for either side. *See, e.g.*, *Hollis v. Sloan*, No. 08-2674, 2010 WL 4069336, at *1 (E.D. Cal. Oct. 18, 2010) (Judge Kendall J. Newman).

Throughout the process of selecting a Rule 706 expert in this matter, the Court sought candidates that could "provide a neutral explanation and viewpoint," that had "no conflicts," and that were "unimpeachable" to the extent that the candidate had not taken a position in a prior case that might "compromise [his] freedom of movement" here (Dkt. Nos. 236 at 2, 610 at 4, and 350 at 23). The parties jointly vetted Dr. Kearl for conflicts (and approved) before submitting his name for consideration (Dkt. No. 270). The Court held a hearing further vetting Dr. Kearl and one other candidate (Dkt. No. 350). Considerable effort went into the selection of Dr. Kearl.

At oral argument on this motion, counsel for Oracle proposed that a Rule 706 expert should be dismissed if his prior work presents an "appearance of impropriety," but counsel did not cite any authority as support. Only one decision has ever mentioned "appearance of impropriety," and that was in a dictum. The expert there, the judge found, had *not* indulged in

6

an appearance of impropriety. *See In re Silicone Gel Breast Implants Products Liability Litigation*, MDL No. 926, 1999 WL 34815588 (N.D. Ala. Apr. 26, 1999) (Chief Judge Sam C. Pointer).[4]

\*                              \*                              \*

Oracle has not pointed to a single statement ever made by Dr. Kearl in the Apple case (or elsewhere) relating to Android or Google, or one usable to impeach any position he may take here. Nor could it. Dr. Kearl's role was specifically limited to assessing the reasonable-royalty damages resulting *from Apple's alleged infringement of Samsung's patented inventions in Apple devices*. That analysis had no relationship to Android or to Google. In short, Dr. Kearl provided no opinion in *Apple v. Samsung* that compromises his neutrality in the instant case.

Oracle's argument reduces to the proposition that in the marketplace, Apple remains at war with Google and Samsung (both of whom use Android) and that by testifying at the request of Samsung's counsel, Dr. Kearl allied himself with Google. Google's agreement to defend and indemnify Samsung, Oracle posits, shows the alliance. This argument, to repeat, ignores the critical point that Dr. Kearl steered completely clear of Android and limited himself to consideration of Apple's implementation of Samsung's patented inventions. Google only provided financial assistance to Samsung's *defense* and provided no financial assistance to anyone in connection with the issues on which Dr. Kearl testified. Dr. Kearl only served as an expert as to Samsung's *counterclaims*.

Oracle also contends that Samsung only brought its counterclaims against Apple (and retained Dr. Kearl) as a foil to produce a low-ball study to contrast against Apple's affirmative

---

[4] There, the Rule 706 expert organized a conference sponsored in part by a defendant, participated in a professional meeting organized by a defendant, and discussed serving as a clinical investigator for a defendant. That decision held that those contacts did not "impair [the expert's] objectivity, impartiality, or neutrality . . . [or] result in any bias, conflict of interest, or, when the facts are known, any appearance of bias or conflict of interest." *Id.* at \*5. That holding rested on a consideration of "all of the relevant facts, not just those selected by a party." *Id.* at \*8.

7

damages claim.[5]  This type of speculation regarding litigation motives by counsel is too flimsy to impugn Dr. Kearl.  Whether or not Samsung intended its affirmative case to bolster its defense (and thereby to protect Google as indemnitor), that intention did not inform Dr. Kearl's work.  Again, Dr. Kearl did not opine on Apple's claims against Samsung or anything related to Android or Google.  Nor did he offer any opinion on the measure of damages for any copyright claims (neither side had alleged copyright infringement).

Nevertheless, Oracle contends that Dr. Kearl's involvement in the *Apple v. Samsung* case will place it between Scylla and Charybdis.  On the one hand, Oracle wishes to cross-examine Dr. Kearl about issues of bias.  On the other hand, Oracle purports to fear that the jury may then infer that the Court has endorsed Google's side by appointing an expert with alleged bias.  If this "problem" arises, the Court will solve it with an admonition to the jury.

After full consideration, the Court is firmly convinced that Dr. Kearl remains qualified to serve and will be neutral and fair in this matter and finds that Oracle has failed to supply grounds to the contrary.  The motion to disqualify is **DENIED**.

**2.    A RULE 706 EXPERT REMAINS NECESSARY.**

Oracle also contends that a Rule 706 expert is no longer necessary in this case because the damages calculations have been simplified now that Oracle is not asserting any patent claims.  It is true that the patent claims have fallen away, but the complexity of the damages issues remain monumental.

In the joint case management statement submitted after the reversal, Oracle noted that it seeks damages in an amount that includes "(1) Oracle's actual damages resulting from Google's infringing activity, including harm to Java, harm to Oracle's actual and potential business, and loss of licensing revenues; and (2) Google's profits attributable to the infringement, including all revenues derived directly or indirectly from the exploitation of all products containing the infringing material" (Dkt. No. 1273).  This could amount to multiple

---

[5] The jury found in Samsung's favor as to one of its two asserted patents and awarded damages in the amount of $158,400 — the amount of Dr. Kearl's estimate (*Apple v. Samsung*, Dkt. No. 1877 at 11 (May 2, 2014).).  The jury found in Apple's favor on the Samsung's other claim, which Dr. Kearl estimated at just over six million dollars.

8

billions of dollars. The fact that the patent claims have fallen away does not remove the need for the jury to understand the roles and relative importance of the accused items as elements of products, rather than entire products. The damages question remains complicated by the fact that the parties employ elaborate, nontraditional business models for the products at issue. Oracle's claim for Google's infringement profits is especially challenging because Google, not Oracle, bears the burden of proving the amount of its offset, if any, for "deductible expenses" it incurred in generating the revenues claimed (and proven) by Oracle. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. ___, 134 S.Ct. 1962, 1973 (2014). Indeed, the Court granted Oracle's recent discovery motion compelling Google to produce numerous internal profit and loss reports that Oracle intends to scour in order to rebut Google's arguments over deductible expenses (Dkt. No. 1372). Additionally, Oracle's claim for lost licensing revenues as a component of its actual damages may still rely on the same "hypothetical license" analysis proffered the first time around.

It is worth recalling here that Oracle's damages expert, Dr. Iain Cockburn, needed three tries before producing a viable damages study, and parts of his third faced successful challenges as well (Dkt. Nos. 230, 685, 785). Thus, the appointment of a Rule 706 expert proved prescient. Dr. Kearl's continued involvement will be useful both in assisting the jury in comprehending the complexity of the question of damages and in assisting the Court in navigating any *Daubert* issues that will arise with the parties' new damages studies. Accordingly, a Rule 706 expert remains appropriate in this case, subject to the remote possibility that after application of *Daubert* the surviving damage theories by both sides will be so uncomplicated that a Rule 706 expert will be unnecessary to assist the jury, a possibility the Court will consider before the trial gets under way.

**CONCLUSION**

Oracle's motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 23, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE