November 24, 2015

**VIA ECF**

The Honorable Donna M. Ryu
United States Magistrate Judge
Northern District of California
1301 Clay Street, Courtroom 4, 3rd floor
Oakland, CA  94612

      Re: *Oracle America, Inc. v. Google Inc.,* Case No. 3:10-cv-03561-WHA (N.D. Cal.),
         Joint Letter Regarding Oracle's Motion to Compel Google to Include Additional ESI
         Custodians

Dear Judge Ryu:

  Oracle respectfully requests the Court's assistance in compelling Google to include additional custodians in its ESI document production.  The parties have met and conferred telephonically several times, including on November 17, 2015, but were unable to resolve the issue.

  Fact discovery cut-off is set for December 16, 2015 and party expert discovery cut-off is March 6, 2016.  *See* Dkt. 1356 & 1334.  The last day to file dispositive motions is January 15, 2016.  A pretrial conference has been set for April 27, 2016, with trial tentatively set to commence on May 9, 2016.  *See* Dkt. 1333.

**Oracle's Statement**

  Even before the parties' agreed date for the exchange of custodian lists, Oracle provided Google with a list of 25 Google custodians (who had not been custodians in Phase 1) that Oracle thought should be include as part of Google's current ESI production.  On October 2, 2015, Google provided its list of custodians.  In sharp contrast to Oracle's proposed list which contained 81 Oracle custodians, Google's list contained only 20 Google custodians.  And Google's list ignored the new custodians identified by Oracle as likely to have relevant information.  The parties met and conferred and Google agreed to reconsider both Oracle's list of 25 and Google's previous list of approximately 89 custodians from Phase 1 to see if additional custodians should be added to Google's list.  Two weeks later, Google advised Oracle that out of those 114 people, it was prepared to add only 4 custodians (one of whom was on its initial disclosures and clearly should have been included in the first place).  After further discussions, Oracle narrowed its request for additional custodians and now seeks a Court order compelling Google to add the 22 custodians identified below to its list for ESI document production.

  Google's characterization of this case as a mere "retrial" is wrong.  Trial will proceed on Oracle's Supplemental Complaint, which alleges new Google infringement spanning several new products and markets.  Google complains that Oracle is seeking to double its custodian list, but that is simply because Google started with a deficient list in the first instance.  Google searched 89 custodians in the first trial and even with Oracle's additions the custodian count here will still be significantly lower.  And this is despite the fact that this trial covers nearly the same period of time and Google's expanding infringement, where the markets in which these products appear are of

utmost importance to the issue of fair use. The disputed custodians have information that is highly relevant to numerous issues in the case, including Google's continued infringement in the new versions of Android and related products, its actual and planned use for the infringing works, Google's fair use defense (which considers the market and the potential market for the works at issue), open source licensing issues, compatibility issues, and Oracle's claim for disgorgement. [1]

    Google has provided no valid reason for not including these 22 custodians. <u>Google in fact does not dispute that the requested custodians possess relevant information</u>. Indeed, it admits that they have information on each of the topics identified above. Nor does Google contend that these custodians' documents are not reasonably accessible because of undue burden or cost. Rather, the sole argument Google made during the parties' multiple meet-and-confer sessions is that the requested custodians have evidence that is "cumulative." But that is not a valid basis for refusing discovery. When asked during a meet-and-confer whether "cumulative" meant the custodians were duplicative – that is, they have the same documents that the custodians on the list will have – Google responded no, they are not duplicative. Google thus *de facto* admits that these custodians have relevant documents that would not otherwise be produced. There also is no question that adding these 22 custodians is proportional to the needs of the case: since the first trial, Google has greatly expanded its use of the infringing works and has received over ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓. Documents from these custodians fall squarely within the scope of discovery and should be immediately collected, searched, and produced. Fed. R. Civ. P. 26(b)(1), 26(b)(2)(A); *see also* Dkt. 26, ¶13 ("parties must search computerized files . . . if materials of the type to be produced might plausibly be expected to be found there").

    As detailed below, each of the 22 identified custodians was at Google during the time period that Google is proposing to search (after June 2011) and each is likely to have documents directly relevant and responsive to Oracle's document requests:[2]

    1. Daniel Berlin* – Android Software Engineer since 2006. Previously produced documents from this custodian show that he is knowledgeable about licensing and open source issues and thus relevant to Google's anticipated argument that the Java code was free to use without permission.

    2. Rafael Camargo – Technical and Engineering Lead. Given his position, he is likely to have documents related to the use of Java in the recent versions of Android and the installation and troubleshooting of components on Android devices which relates to the issue of compatibility.

    3. Eric Chu* – Director and Head of the Open Handset Alliance ("OHA") since 2007. He is likely to have relevant technology, business, and marketing documents. Google's interactions with the OHA are relevant to Google's fair use defense and issues that Google has raised concerning interoperability and compatibility.

---

[1] Oracle disagrees with Google's representation that it has produced all relevant financial documents. As Judge Alsup noted in granting Oracle's motion to compel earlier this month, Google "stonewalled" Oracle by refusing to produce relevant financial documents for many weeks. Google has yet to fully comply with Judge Alsup's order.

[2] Without direct access to the witnesses or their documents, Oracle is forced to asses potential relevance of these custodians based on publicly available information and information learned from the first phase of discovery. Witnesses marked with asterisks were already Google custodians in Phase 1 – Google has provided no reason why these witnesses would not have relevant documents this time around. Google broadly justifies its refusal to include custodians this time because certain custodians were not deposed or called as witnesses during the first trial. Just because a witness was not called on to testify previously does not mean that the witness does not have relevant documents.

Hon. Donna M. Ryu
November 24, 2015
Page 3

    4. Chris DiBona* – Director of Open Source since 2004. He appears to have information not only relevant to open source and GPL (which Google has made relevant), but also on porting code and newer versions of Java.

    5. Alan Eustace* – Until very recently, he was Senior VP of Knowledge and Engineering. During the first phase of this case, he possessed documents relating to important strategy decisions relating to Android. Because he remained in this position until recently, it is likely that he has similarly relevant documents concerning the more recent time period.

    6. Jennifer Ebbitt* – Director of New Business Development since 2007. She authored hundreds of relevant documents from phase 1, and there seems to be no reason why she is not relevant now. She appears to communicate directly with clients and potential partners and likely has knowledge about relationships with those partners relevant to Oracle's allegations of market harm.

    7. Amar Gandhi* – Group Project Manager for Android since 2006. He appears to have documents concerning licensing and use of Android, is part of the Android Leadership meetings and, as Project Manager, likely has documents relating to new Android projects and market plans.

    8. Vic Gundotra* – VP of Engineering and Social for Google until 2014. Gundotra appears to deal with Android's business partners, like Bloomberg, Tango, and Vodaphone. He also appears to be involved in marketing and mobile strategy. These topics are all relevant to market harm, including both defining those markets and identifying opportunities that have been diverted from Oracle.

    9. Maarten Hooft – Tech Program Manager for Android Engineering and responsible for the European launch of the G1, Nexus S, Galaxy Nexus, and Nexus 7 devices. It appears that he interfaced with hardware partners and likely has documents relevant to incompatibility issues. He also seems to focus on open source solutions, which are relevant to Google's anticipated argument that the Java code was free to use without permission.

    10. Omid Kordestani – Chief Business Officer of Google from 2014-2015 and Senior VP of Worldwide Sales and Business Development for Google from 1999-2009. In those roles, he likely has documents that are relevant to Android's developing market, Android market strategy and market harm relevant to the fourth fair use factor.

    11. Keva Nelson* – PM for Android since 2007 (and PM at Danger before that). Nelson interfaces with the Open Handset Alliance; those interactions are relevant to fair use because they deal with compatibility, fragmentation and open source matters.

    12. Andrew McFadden* – As an engineer at Google until 2014, McFadden played a role in the development of Android, including the use of the Java API packages in the code. He likely has documents concerning new Android products and the strategy for future Android products.

    13. Mario Queiroz* – VP of Product Management since 2005. He likely has relevant documents on marketing, advertising, partner relations and new product development. All of this is relevant to fair use and market harm.

    14. Jean-Baptiste Queru* – Lead of Android Open Source Project from 2007-2013. Google has indicated its intention to argue that its claimed ability to use Java in Android is grounded in open

Hon. Donna M. Ryu
November 24, 2015
Page 4

source code and its methods of distribution and use. As a result, Queru, as Lead of Android Open Source, is likely to have relevant documents on these issues.

    15. Nick Sears* – He was involved with Android product development, product marketing, account management, and business development until he left in 2013. Because he is also one of Android's co-founders, he likely has documents related to Android's marketing strategy, strategy for future Android products, and potential market harm to Java.

    16. Sridhar Ramaswamy – VP/SVP of Engineering at Google from 2005-2013, SVP of Ads and Commerce since 2013. Ads and commerce are highly relevant to Oracle's damages claim, as well as the issue of market harm.

    17. Jason Spero* – Director of Mobile from 2010-2011, then Head of Global Mobile Sales & Strategy from 2012-2014. He likely has many documents relevant to factor four of fair use regarding markets and potential markets, and on damages, specifically Google's profits derived from Android.

    18. Jonathan Rosenberg* – Senior VP of Products. He has documents relating to mobile advertising and its importance to Android and likely has more recent documents on new Android products.

    19. Karim Temsamani* – VP of Global Mobile from 2007 until 2012, and VP of New Products and Solutions from 2012 until 2013. In April 2011, The New York Times described him as Google's "head of mobile advertising" and quoted him as saying that "Google is essentially betting its future on [mobile advertising]." He will likely have relevant documents about Android's advertising profits and Android's role outside of mobile phones.

    20. Lorraine Twohill – Head of Marketing from 2009 until 2014; in 2014, she was promoted to Senior VP of Marketing. She is currently part of Google's management team and thus likely has documents about Android's marketing strategy, ad revenues, and Android's expansion into new products. All of this is relevant to damages and market harm.

    21. Susan Wojcicki* – Worked at Google from 1999 until 2014 and oversaw Google advertising and commerce, including AdWords, AdSense, and DoubleClick. As the Senior VP in this area, she most likely has documents about Android's high-level advertising and marketing strategy and advertising profits.

    22. Marc Vanlerberghe* – Director of Marketing for Android and Google Play from 2007-2013. He was relevant in the first Phase and remains relevant now on marketing issues and market harm.

*   *   *

    Google does not dispute that these custodians possess relevant documents. It does not contend that relevant documents would already be produced through other means. And it does not claim that the documents of the disputed custodians are inaccessible. In other words, these custodians represent a universe of admittedly relevant, accessible documents that would not otherwise be produced. This squarely falls within the scope of permissible discovery. Oracle respectfully requests the Court order Google to include these custodians in its ESI production.

**Google's Statement**

    Oracle represented to Judge Alsup that the discovery it sought to prepare for retrial of the remaining issues in this case was "targeted" additional fact and expert discovery, such that only a

1007797.01

Hon. Donna M. Ryu
November 24, 2015
Page 5

limited time period for fact discovery was necessary. In reliance on that representation Google agreed to and the Court ordered a short supplemental discovery period of four months. The parties have already received one extension to the fact discovery cutoff, and have been diligently working to collect and produce documents and complete all fact-witness depositions by the December 16 cutoff.

Google has selected 27 custodians most likely to have responsive non-privileged documents, as required by the parties' ESI Agreement. (Dkt. 67). In doing so, Google considered whether the custodian was a witness in the first trial with respect to issues that remain relevant, and whether a custodian is likely to have responsive documents in the time period post-June 15, 2011 given the custodian's tenure and position at Google and relevance to the case. Google has already begun a rolling production of those custodial documents, and the parties have begun scheduling depositions of the fact witnesses who were not deposed in the previous discovery period. But Oracle now asks in this motion that Google nearly double its already massive document-collection and production effort by searching millions of documents in the custodial files of **22 additional** current or former, employees most of whom have never been disclosed by either party, played no role at the last trial, and will play no role at this retrial. Google has considered Oracle's requests, and attempted multiple times to compromise with Oracle, without success. Google therefore seeks the Court's assistance in enforcing a reasonable, proportional scope to custodial document production in the supplemental fact discovery period that closes on December 16, 2015 – less than 4 weeks from now.

**First**, Oracle's demand to expand significantly the scope of document production contradicts the representations it made to the Court in the parties' Joint Status Report and the Case Management Conference. In preparation for the July 30, 2015 Case Management Conference, the parties presented proposed schedules for this retrial proceeding. (Dkt. 1273 at 12) Both Oracle's and Google's proposed schedules contemplated short periods for limited supplemental fact and expert discovery, and were premised on the joint representation that, "because this case has already proceeded to trial once, significant discovery has already been exchanged," and that only "**targeted additional discovery**" was needed to prepare this case for retrial. (Dkt. 1273 at 6:13-17) (emphasis added). To that end, the parties agreed to "work together to seek to reach a proposed discovery stipulation about the scope and nature of additional discovery (including possible numerical limitations on written discovery and temporal limitations on the subject of the additional discovery)." *Id.* at 6:18-21. The Court adopted Oracle's proposed schedule, which allowed for even shorter discovery period than Google's proposed schedule. (Dkt. 1277) The Court subsequently extended the discovery period by 12 days to the current deadline of December 16, 2015. (Dkt. 1356).

Moreover, Oracle's assertion that an increase in Google's revenues from 2011-2015 somehow requires a massive custodial document production misses the mark. Both parties agreed to produce financial documents from **non-custodial sources**. Google has already produced financial information from non-custodial sources for the 2011-present timeframe, including P&Ls for Android and all of Google's non-Android business lines (including Q3 2015 data where available) and other financial documents related to Google revenues, expenses and other metrics. Further, numerous periodic executive-level presentations, related both to Android and other Google business lines, have been produced as well. In short, the financial success of Android simply does not correlate to any additional **custodial** production of documents, when both parties are producing financial documents outside of a custodial/search term process pursuant to the parties' explicit

Hon. Donna M. Ryu
November 24, 2015
Page 6

agreement.[3]  Indeed, Oracle fails to identify any financial documents that it needs that have not already been produced from non-custodial sources.

**Second**, Oracle's list of 22 additional custodians is cumulative of the custodians already on Google's custodian list or of other non-custodial productions.  In meet and confer, Google offered to discuss with Oracle why Oracle's requested custodians were cumulative and did, in fact, provide several examples.  Oracle, however, argued that if a custodian had **any** non-duplicative documents, that custodian's documents must be searched.  Oracle is wrong.  The Federal and Northern District Rules provide for proportionality in ESI discovery.  As explained by *Swanson v. ALZA Corp.*, 12-04579-PJH 2013 WL 5538908 *2-3 (N. D. Cal., Oct. 7, 2013):

> The Northern District Guidelines advocate for the proportionality set forth in Rule 26(b)(2)(C) and 26(g)(1)(B)(iii).  Parties should consider factors that 'include the burden or expense of the proposed discovery compared to its likely benefit, and discovery requests for production of ESI should be reasonably targeted, clear, and as specific as practicable.'  (N.D. Cal. Guidelines ¶ 1.03.)

"On a motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:  (1) **the discovery sought is unreasonably cumulative or duplicative,** or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery in has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.' *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)); *see also* N.D. Cal. Guidelines 1.02 (1.02 (Cooperation) ("The Court notes that an attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.  Cooperation in reasonably limiting ESI discovery requests on the one hand, and in reasonably responding to ESI discovery requests on the other hand, tends to reduce litigation costs and delay.").

Oracle's refusal to reasonably limit its request to almost double Google's custodian list ignores that the parties have already undergone massive custodial document production efforts in the first trial, and, after producing millions of documents, learned that certain custodians' documents were minimally relevant and cumulative of other more highly relevant documents produced from other witnesses who were deposed and were trial witnesses.  For example, Google is producing documents from custodians who headed up the Android business line for the entire life of the Android product, all of whom were document custodians in the last trial, and most of whom were deposed and were trial witnesses in that trial:  Andy Rubin (former Senior VP of Mobile, head of Google's entire mobile business, deposed multiple times, and a trial witness), Hiroshi Lockheimer (Senior VP of Android, Chrome OS and Chromecast), Eric Schmidt (former Chairman of Google and current chairman of Alphabet Inc.), and Larry Page (former CEO of Google Inc. and current CEO of Alphabet Inc.).  Moreover, as a compromise, Google agreed to add Sundar Pichai, the current CEO of Google, as well as Henrique de Castro (former VP, Partner Business Worldwide for

---

[3] To the extent Oracle's argument is in reality a claim that because Oracle is seeking large damages the parties should be prepared to undergo massive, expensive and time consuming custodial document productions that argument is, again, contrary to the representation made at the CMC that led the Court to adopt a relatively short fact discovery period.

1007797.01

Hon. Donna M. Ryu
November 24, 2015
Page 7

Google) although Google believes both are cumulative of the previously mentioned custodians, if even relevant at all to the issues remaining in this lawsuit.

Nevertheless, Oracle still seeks additional custodians because of their role with regards to the Android product, including Rafael Camargo (who only joined Google in 2015), Eric Chu (who ceased having a role in Android in April 2012), Amar Gandhi (who moved off of Android in 2010), Maarten Hooft, Keva Nelson, Mario Queiroz, Jonathon Rosenberg, and Nick Sears. None of these custodians except Eric Chu were deposed in the first trial, and they are not listed on Oracle's Rule 26(a) disclosures, showing that at most they had marginally relevant, cumulative documents. With respect to Mr. Chu, Google offered to add him up until April 2012, since he was deposed in the prior discovery period (but was not a trial witness), however, Oracle was not willing to consider any compromise other than Google adding all 22 custodians.

Similarly, Google is producing sales and marketing documents from non-custodial sources in addition to searching the following custodians: Larry Page, Andy Rubin, Eric Schmidt, Hiroshi Lockheimer, Felix Lin, Patrick Brady, Billy Rutledge, Reto Meier and Fred Chung. Google offered to add Lorraine Twohill, Google's Senior VP of Marketing, and has already agreed to add Henrique de Castro from the sales side, *if* Oracle would consider withdrawing or reducing its request to add additional custodians that appear to be on Oracle's list due to their role in marketing and sales, such as Jennifer Ebbitt, Omid Kordestani, Nick Sears, Jason Spero, Karim Temsamani, and Marc Vanlerberghe. Moreover, Google is producing documents for Dan Morrill, who ran the Android Open Source Program; accordingly, it would be duplicative to collect and produce documents from Daniel Berlin, Chris DiBona, Keva Nelson, and Jean Baptiste Queru, whose relevance appears to be their role related to the Android Open Source Program.

Oracle also seeks to add custodians whose only arguable relevance appears to be related to communications with partner/developers. Again, Google is collecting and producing documents from the two heads of the Android Partner program for the 2011-2015 time period: Patrick Brady and Felix Lin. And Google is collecting and producing documents from Google's Developer Relations team: Billy Rutledge, Reto Meier and Fred Chung. Thus, Jennifer Ebbitt, Vic Gundotra, Maarten Hooft, Keva Nelson, Mario Queiroz and Nick Sears documents, if any, relating to communications with partners/developers would again be cumulative. None of these custodians played any role in the prior trial, and there is no reason to believe they will play a role in this retrial. Lastly, Oracle also seeks to add Susan Wojicki and Sridhar Ramaswamy because of their role as Senior VP of Ads for different time periods. Google, however, has already produced Ads-related financials from non-custodial sources. Again, Google was willing to discuss why, given the non-custodial production either Ms. Wojcicki or Mr. Ramaswamy's custodial documents should be searched; however, Oracle was not willing to discuss reducing its demands.

Google has repeatedly offered to compromise with Oracle on these issues. Google added 5 custodians at Oracle's request, all of whom Google believes are cumulative of other custodians, and/or will provide minimally relevant documents given that certain documents (such as financials and marketing documents) are being collected from non-custodial sources. In the parties' last meet and confer on November 17, 2015, Google offered several times to explain why each custodian that Oracle seeks to add to Google's list is cumulative of custodians already on Google's list. Oracle, however, stated it was not willing to reduce its demand for additional custodians any further, and

Hon. Donna M. Ryu
November 24, 2015
Page 8

stated that the parties simply view the scope of discovery in this case differently.

**Third**, Oracle incorrectly suggests that if Google searched for documents from a particular custodian in the last trial, that custodian must be included on Google's list for the retrial. But that makes no sense. The last trial was significantly larger in scope than the current retrial, and thus the scope of discovery in the last case was significantly broader than it is now. In addition to Google's fair use, equitable estoppel, and laches defenses, which are the only claims or defenses at issue in this retrial, discovery in the last trial covered Oracle's allegations that Google infringed hundreds of claims of seven different patents, Google's defenses of non-infringement and invalidity of those patents, and Google's additional defenses of waiver and implied license. Discovery in the last trial also covered all relevant facts that pre-dated the August 2011 discovery cutoff, including Sun's development and release of the Java programming language and the Java platform, Google's acquisition of Android Inc. and development of the Android platform, the extensive negotiation history between Sun and Google regarding a joint development partnership, Sun and Oracle's public comments regarding Android, and Google's continued development and release of newer versions of Android. The parties need not and should not revisit those issues in this limited supplemental discovery period. Rather, discovery now should focus on the claims at issue in this narrowed retrial, and be "targeted" to update the record with facts and events that occurred after the close of the last discovery, as Oracle represented to the Court at the July 30, Case Management Conference.

Oracle is wrong to suggest that this not a "mere retrial." Oracle is right only in the sense that this is just a *partial* retrial. Oracle has repeatedly conceded this point in representations to the Court. *See, e.g.*, Dkt. No. 1273 at 6:13-14 ("[A]s this case has already proceeded to trial once, significant discovery has already been exchanged . . . ."). And Oracle's supplemental complaint does not change that fact. Oracle explicitly told the Court that the supplemental complaint simply "tak[es] into account events that have occurred since the close of discovery before the first trial in this matter in April and May of 2012." Dkt. 1273 at 5:16-19. Because the parties agreed that the retrial would be narrower than the initial trial, the parties agreed to and the Court entered an expedited discovery schedule to allow the parties to update the record and proceed to the retrial.

Yet, despite this being a narrowed retrial, Oracle now tries to explode the scope of limited, expedited discovery by demanding that Google search the files of 17 custodians for whom Google previously searched and produced documents in the last discovery period but who played no role whatsoever at the last trial. If these witnesses had so little relevance to the broader initial copyright trial, it is plain that they can have no material relevance to the narrower scope of issues on retrial. Oracle responds with the generality that "[j]ust because a witness was not called on to testify previously does not mean that the witness does not have relevant documents," *supra* n.1, but offers no specifics or any connection to the scope of the initial copyright trial. For the record, the scope of the retrial will be significantly narrower than the last copyright trial—which, as noted above was only one phase of an anticipated three-phase trial on copyright, patents, and damages—because the original copyright trial involved evidence of copyrightability *and* infringement *and* fair use. Even then, only 12 Google fact witnesses testified at the last copyright trial, yet Oracle seeks to force Google to search and produce documents from a total of 49 custodians in this narrowed retrial (most of whom it was aware of and had custodial documents from but chose not to disclose, depose, or seek trial testimony from the last time). There is simply no way that Oracle legitimately intends to call at trial dozens of Google witnesses **in addition** to those witnesses who clearly will be

1007797.01

Hon. Donna M. Ryu
November 24, 2015
Page 9

called to testify again because of their role in the last trial.  Oracle's insistence on broad, unnecessary, and burdensome discovery is the single biggest threat to the parties' ability to complete fact discovery by December 16, 2015, as ordered by the Court.

For the foregoing reasons, Google requests that the Court deny Oracle's motion so that the parties can complete fact discovery on time and prepare this case for trial in May 2016.


Respectfully submitted,

/s/ Peter A. Bicks

Peter A. Bicks
Counsel for Oracle America, Inc.

KEKER & VAN NEST, LLP

/s/ Robert A. Van Nest

Robert A. Van Nest
Counsel for Google, Inc.


I attest that concurrence in the filing of this document has been obtained from each of the other Signatories to this letter.

/s/ Peter A. Bicks
_____

1007797.01