December 14, 2015

**VIA ECF**

The Honorable Donna M. Ryu
United States Magistrate Judge
Northern District of California
1301 Clay Street, Courtroom 4, 3rd floor
Oakland, CA  94612

        Re:    *Oracle America, Inc. v. Google Inc.,* Case No. 3:10-cv-03561-WHA (N.D. Cal.), Joint Letter Regarding Oracle's Motion to For Protective Order Re: Late-Noticed Third-Party Deposition

        Oracle respectfully requests a protective order pursuant to Federal Rule of Civil Procedure 32(a)(5) regarding a third-party deposition announced by Google for Ottawa, Canada with three business days' notice on the last day of fact discovery.  The parties have met and conferred telephonically, including on December 11, 2015, but were unable to resolve the issue.  Fact discovery cut-off is December 16, 2015, opening expert reports are due to be exchanged on January 8, 2016, and party expert discovery cut-off is March 6, 2016.  *See* Dkt. 1356 & 1334.  The last day to file dispositive motions is March 21, 2016.  A pretrial conference is set for April 27, 2016, with trial tentatively set for May 9, 2016.  *See* Dkt. 1333.

**Oracle's Statement**

        On December 10, Google informed Oracle that it would take the deposition of non-party witness IBM Corporation ("IBM") in Ottawa, Canada on December 16.  Federal Rule of Civil Procedure 32(a)(5) authorizes a party who is given less than 14 days' notice of a deposition to move for a protective order "requesting that [the deposition] not be taken or be taken at a different time or place."  Three business days' notice was provided for this deposition.  Oracle requests an order that the deposition not be taken at all, since fact discovery is about to close and there is no good cause to waive the discovery deadline to take this deposition on reasonable notice.

        On November 16, Google served a notice of a subpoena for documents and a deposition of IBM dated December 1.  The subpoena identified one deposition topic: "IBM's use of code derived from the Apache Harmony Project in IBM commercial products, including but not limited to Websphere, Lotus Notes, SameTime, Symphony, and Expeditor, and Tivoli."  Google then informed Oracle that no deposition would occur on that date.  No documents were produced to Oracle.  After silence from Google about whether IBM documents would be produced or the deposition would occur, Oracle finally contacted IBM itself on Tuesday, December 8.  IBM represented to Oracle that it had spoken with Google, that a few documents would be produced and that it did not believe there would be a deposition.  Then, suddenly, on Thursday, December 10, Google informed Oracle by e-mail that the deposition would take place after all—in Ottawa, Canada on the last day of discovery, Wednesday, December 16.  Google served an amended deposition notice and subpoena on Saturday, December 12.  After close of business on Friday, December 11, and after the meet and confer conference during which Ms. Hurst informed Google's counsel that

Hon. Donna M. Ryu
December 14, 2015
Page 2

she was at the airport and about to get on a plane, Google delivered physical copies of IBM's documents addressed solely to Ms. Hurst at Orrick's San Francisco office, did not copy anyone else on the transmittal letter as had been its standard practice prior to the delivery of these documents, did not advise Oracle that IBM's documents had been delivered after close of business, and did not respond to several inquiries over the weekend regarding when Google would provide a copy of IBM's documents.  Oracle was not aware of Google's production until Monday morning.

Oracle's trial counsel are not available to attend what amounts to a trial witness cross-examination of a non-party in Ottawa, Canada on the last day of fact discovery.  It is not even possible to get from San Francisco to Ottawa with a non-stop flight, and there are multiple depositions scheduled in the closing days of discovery.

Google's failure to provide adequate notice for the date and location of IBM's deposition warrants a protective order in and of itself.  "Courts generally have found that fewer than ten days is not reasonable." *Gordon v. Sonar Capital Mgmt. LLC*, 2015 U.S. Dist. LEXIS 32047, *5 (N.D. Cal. Mar. 15, 2015) (collecting cases); *see also* Fed. R. Civ. P. 34 (setting 14-day notice as threshold for entitlement to relief); *S.H. v. United States*, 2013 U.S. Dist. LEXIS 164703, *14 (E.D. Cal. Nov. 18, 2013) (deposition notices served three and five business days before the deposition date held "absurdly short notice"); *In re Stratosphere Corp. Sec. Litig.*, 183 F.R.D. 684, 687 (D. Nev. 1999) (six day notice held unreasonable); *TRI Invs., Inc. v. Aiken Cost Consultants, Inc.*, 2011 U.S. Dist. LEXIS 129013, *4 (W.D.N.C. Nov. 7, 2011) (six total days and four business days not reasonable notice).

The fact that Google's deposition of IBM would require international travel to the other side of North America makes Google's truncated notice even more unreasonable. *See Kellogg Co. v. FPC Flexible Packaging Corp.*, 2013 U.S. Dist. LEXIS 101580, *5 (W.D. Mich. July 22, 2013) (granting protective order under similar circumstances).  Google's failure to provide adequate notice for a deposition that requires significant travel is particularly problematic given that Google violated Civil Local Rule 30-1 by failing to make any attempt to ascertain Oracle's counsel's availability in scheduling IBM Corporation's deposition for the noticed date. *JSR Micro, Inc. v. QBE Ins. Corp.*, 2010 U.S. Dist. LEXIS 111317, *11 (N.D. Cal. Oct. 7, 2010) (court noted failure to comply with Civil Local Rule 30-1 in granting protective order).

Nor is there good cause to extend the discovery cutoff past December 16 to conduct this deposition at some later time.  The parties are finishing very large document productions, preparing final rounds of motions to compel on all outstanding written discovery, and working very hard to meet a January 8 deadline for disclosure of the initial round of expert reports.  Moreover, discovery has been open since July 31.  If the IBM deposition were important to Google, it would have taken more aggressive steps to ensure that a third-party deposition took place long before the last day of fact discovery.  Moreover, IBM is not listed as a witness in any of Google's Rule 26 disclosures, and it is not identified in response to any interrogatory as a party possessing relevant information for one of Google's defenses.  Google has not disclosed in its written discovery responses any theory of relevance of the documents or testimony requested from IBM.

In light of the complete absence of any mention of IBM in any of Google's discovery responses, during the parties' meet and confer teleconference Oracle requested a proffer of relevance of the IBM deposition.  Google said that it would prove that IBM had used Apache

Hon. Donna M. Ryu
December 14, 2015
Page 3

Harmony code in some of its products.  However, IBM's use of Apache Harmony code has nothing to do with whether Google's use of the JAVA API packages is a fair use.  *See Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1272 (11th Cir. 2014) ("even if we accept that the 10 percent-or-one-chapter approach represents a general industry 'best practice' for electronic reserves, this is not relevant to an individualized fair use analysis"); *L.A.Times v. Free Republic*, 2000 U.S. Dist. LEXIS 5669, *31 (C.D. Cal. Mar. 31, 2000) (unauthorized third party copying cannot support fair use defense).  In fact, Google's noticed deposition topic does not even seek information on whether IBM's purported use was authorized.  Clearly, authorized use by one party does not justify unauthorized use by another.

Google argues that because IBM's purported use of Apache Harmony code was discussed during the first trial in this matter, it is automatically relevant now.  But Google's argument ignores the intervening Federal Circuit opinion, which dramatically limited the relevancy of Google's "industry standards" argument.  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014) ("Google's industry standard argument has no bearing on the copyrightability of Oracle's work").  Indeed, the Federal Circuit in its opinion in this case confirmed that the only relevance of Google's "industry standard" argument is whether the 37 packages Google used in Android are somehow *necessary* for use of a language that, Google apparently contends, has become an industry standard.  *Id.* at 1376-77.  The subpoena to IBM regarding its use of Apache Harmony code in its products has nothing to do with that topic.  Nor could IBM's deposition, even if correctly noticed on the topic of what packages are purportedly necessary for use of the language, establish that unlicensed use of any portion of the Java API packages is necessary to utilize an industry standard language.  This is obviously a subject for expert testimony.  Individualized uses by particular companies do not demonstrate that anything is necessary for an "industry standard."  *See, e.g., Aziz v. Air India Ltd.,* 658 F. Supp. 2d 1144, 1155 (C.D. Cal. 2009) (evidence of isolated practices insufficient to establish industry standard); *R.R. Dynamics v. A. Stucki Co.*, 727 F.2d 1506, 1518 (Fed. Cir. 1984) ("three licenses relating to products entirely distinct from the patented product are insufficient here to establish an industry standard"); *Conti v. Sampson-Bladen Oil Co.*, 2014 Bankr. LEXIS 2877, *41 (Bankr. M.D.N.C. 2014) (citing *Lawson v. Ford Motor Co.*, 78 F.3d 30, 43 (2d Cir. 1996) for the proposition that one company's experience "is insufficient to show industry standard or practice"); *see also Pace Am., Inc. v. Elixir Indus.*, 2009 U.S. Dist. LEXIS 6281, *20 (N.D. Ill. 2009) (lay witness testimony and internet print out insufficient to establish industry practice); *Grant Heilman Photography, Inc. v. McGraw-Hill Cos.*, 28 F. Supp. 3d 399, 408-409 (E.D. Pa. 2014) (similar).

The deposition date and location violates the reasonable notice standard, and the deposition should not be rescheduled for a different date and time after December 16.  There is no good cause to waive the Rule 16 deadline for a non-party deposition where the parties are deeply engaged in meeting a series of significant deadlines, and where Google has never identified IBM as relevant to any of its defenses and has had months to conduct the deposition.  *See, e.g., Gerawan Farming v. Rehrig Pac. Co.,* 2013 U.S. Dist. LEXIS 39121, *13 (E.D. Cal. 2013) (no good cause where party waited until three weeks before the close of discovery for depositions)*; Dunfee v. Truman Capital Advisors, LP,* 2013 U.S. Dist. LEXIS 147592, *9 (S.D. Cal. 2013) (no good cause where counsel waited until eve of discovery cutoff to schedule out-of-town depositions that other party's counsel could not attend); *see also Ancora Techs., Inc. v. Apple Inc.*, 2015 U.S. Dist. LEXIS 134333, *7 (N.D. Cal. 2015) (additional third-party discovery at the close of discovery would cause prejudice).

Hon. Donna M. Ryu
December 14, 2015
Page 4

In light of Google's "absurdly short" notice, *S.H. v. United States*, 2013 U.S. Dist. LEXIS 164703, *14, the international travel involved, the fact that Google violated Civil Local Rule 30-1, the irrelevance of the testimony Google seeks to elicit from IBM and the parties' other obligations during December and January, the burden and expense imposed by Google's deposition of IBM outweighs any remote benefit.  For the foregoing reasons, Oracle requests that a protective order be granted specifying that the deposition of IBM Corporation not be taken.  Fed. R. Civ. P. 26, 32(a)(5).

**Google's Statement**

There is no basis to prevent IBM's deposition from proceeding.  In early November, at Oracle's suggestion, the parties adopted an omnibus approach to scheduling depositions in this case, identifying the witnesses each party sought to depose, and providing dates on a rolling basis as soon as witness availability could be confirmed.  On November 16, 2015, before a single deposition in this case had taken place, Google timely served Oracle with a Notice of Subpoena to IBM Corporation, which included the IBM subpoena as an attachment.  The subpoena to IBM stated that the deposition would take place on December 1, 2015 in New York, where IBM was served.  Oracle did not object to the deposition taking place on the East Coast, nor did Oracle indicate that it believed the subpoena was burdensome or that the topics were irrelevant to this case.

Since serving the IBM subpoena, Google and Oracle have conferred about when the IBM deposition would take place, while also conferring over the scheduling of approximately 20 depositions the parties sought to complete by December 16.  Up until last Thursday, Oracle negotiated with Google about when the IBM deposition might take place and never raised any objection to scheduling the deposition.  But once IBM provided a deposition date, Oracle feigned surprise and complained about its reasonableness.  Then, after Google repeatedly asked Oracle to suggest alternate dates to conduct the deposition—offering repeatedly to schedule the deposition after the close of discovery, as the parties have agreed for two other depositions—Oracle raised for the first time a relevance objection that it had never raised in writing either before or after the meet-and-confer call.  Oracle then compounded this about-face by failing to coordinate with Google with regard to filing this joint letter, providing its portion of the letter at 9:15 p.m. last night (a Sunday) and demanding that Google provide its portion by noon today.  *See* Dkt. 1366.

Google provided Oracle sufficient notice of the IBM deposition.  Google timely served Oracle with a notice of subpoena and, after working out a mutually agreeable deposition date with IBM, notified Oracle of that date immediately.  Oracle ignores that the very cases it cites state that whether notice is reasonable is a fact-specific inquiry considering the circumstances.  *See, e.g., Gordon v. Sonar Capital Mgmt. LLC*, 2015 U.S. Dist. LEXIS 32047 (N.D. Cal. Mar. 15, 2015); *In re Stratosphere Corp. Sec. Litig.*, 183 F.R.D. 684, 687 (D. Nev. 1999).  Further, courts consider reasonable notice **from the date the subpoena is served**, which here is November 16, 2015, not from the date that was ultimately negotiated for the deposition by the third party.  *In re Stratosphere Corp.*, 183 F.R.D. at 687 (six day notice from the date of service of the subpoena held unreasonable); *TRI Invs., Inc. v. Aiken Cost Consultants, Inc.*, 2011 U.S. Dist. LEXIS 129013, *4 (W.D.N.C. Nov. 7, 2011) (six total days and four business days from the date of service of the subpoena not reasonable notice); *see also, S.H. v. United States*, 2013 U.S. Dist. LEXIS 164703, *14 (E.D. Cal. Nov. 18, 2013) (expert

Hon. Donna M. Ryu
December 14, 2015
Page 5

deposition notices that were <u>first served</u> three and five business days prior to deposition found to be short notice). Here, the parties worked on a rolling basis to coordinate the scheduling on approximately 20 depositions within a three-week period before the close of discovery (excluding Thanksgiving), corresponding by email on over a dozen occasions and conferring in multiple phone calls during the same time period. In fact, Oracle expressly suggested that "[r]ather than everyone simply firing off notices left and right for days that may or may not work for the witnesses and counsel, we think it would productive for us all to get together with our calendars and the witnesses' schedules and try to work together to set an orderly schedule. This seems particularly necessary given the very short time period we are dealing with." Email from Lisa Simpson to Beth Egan dated November 4, 2015. Both parties understood that time was short, and both parties offered dates for witnesses that had almost no room for negotiation given the many depositions to be scheduled and the short time period to complete the depositions. Email from Simpson to Kamber on November 17, 2015 (providing deposition dates for Oracle witnesses and noting that "[a]s with your witnesses, many of these dates have very little flexibility.").

In the midst of conferring with regard to all scheduling issues relating to depositions, as Oracle concedes, Google sent a subpoena and deposition notice to IBM on November 16, 2015. That notice provided for a deposition date of December 1. Oracle repeatedly communicated with Google about the deposition date, but never raised any relevance objection or any objection to scheduling the deposition. Specifically, shortly before Thanksgiving, the parties communicated about whether the deposition would indeed proceed on the noticed date. Google informed Oracle that it would not, but that it "would confer with IBM next week." *See* Nov. 25, 2015 Email from Lisa Simpson to Matthias Kamber (addressing the IBM deposition date in particular); Nov. 25, 2015 Email from Matthias Kamber to Lisa Simpson (addressing omnibus deposition scheduling issues, including the IBM deposition). And Oracle knew—or should have known—that the deposition would have to be conducted sometime between December 1 and the close of fact discovery on December 16, absent an alternative arrangement by the parties approved by the Court. Relatedly, Oracle's claim that Google failed to comply with Civil Local Rule 30-1 is simply wrong. Civil Local Rule 30-1 provides that "[a] party noticing a deposition of a witness *who is not a party or affiliated with a party* must also meet and confer about scheduling, but may do so *after serving the nonparty witness with a subpoena*." (Emphases added.) As explained above, this is precisely what Google did.

In sum, Oracle's claim that a deposition date for IBM was out-of-the-blue and presumptively unreasonable is demonstrably false. Oracle has known about the topics for the IBM deposition for weeks, and knew that the deposition would have to take place in the final days of fact discovery. Despite this, Oracle never once followed-up with Google to express concern about the timing of the deposition. Oracle represents that it "contacted IBM itself on Tuesday, December 8," and that "IBM represented to Oracle that . . . it did not believe there would be a deposition." *Infra* at 1. But Oracle never bothered to inquire with Google whether the deposition would go forward or what the date or the location would be.

Google, on the other hand, acted reasonably and promptly in advising Oracle of the date of the deposition and providing documents to Oracle. On December 10, IBM's counsel first informed Google that IBM intended to present a witness for deposition in Ottawa, CA on December 16. Approximately one hour after learning of IBM's availability, Google informed Oracle of the deposition date. At about noon on December 11, Google first received IBM's document

Hon. Donna M. Ryu
December 14, 2015
Page 6

production in response to the subpoena.  Google immediately made arrangements to have it copied, and sent it to Oracle's counsel via hand delivery that same afternoon.  *See* Dec. 11, 2015 Letter from Raina Abaya to Annette Hurst.  The documents were delivered to Oracle's counsel's office at exactly 5:00 p.m. that afternoon, not "after the close of business" as Oracle misstates above.  *See also* Dec. 11, 2015 Email from Nationwide Legal LLC confirming that the documents were delivered and signed for at Oracle's counsel's offices.  More importantly, Oracle was well aware that the documents were on their way to its offices, because Google's counsel told Ms. Hurst exactly that in a meet-and-confer call on Friday afternoon.  At the beginning of the parties' call, Google's counsel stated:  "We just got the documents today, the CD is being copied right now, and you'll have the documents this afternoon."  (The parties have agreed to record all meet-and-confer calls, and Google would be happy to provide an audio or written transcript of the December 11 call, should the Court find it useful in resolving this dispute).  In light of these undisputed facts, Oracle's suggestion that it was unaware it had the documents by Friday is difficult to accept.[1]

In short, Google has worked in good faith and with due speed to give Oracle just as fair an opportunity to examine IBM as IBM has given Google.  Thus, neither party is prejudiced by the IBM deposition going forward on December 16.  Indeed, Oracle does not even argue that it would be prejudiced by the deposition.  As a non-party to this action, there is no basis to inconvenience IBM and delay—much less prevent—the deposition from proceeding on December 16.

Notwithstanding this background, Oracle complains of a lack of reasonable time.  Google sought to address that issue during a meet-and-confer call on December 11; counsel repeatedly asked what alternative dates Oracle proposed, and listed additional business days between the close of fact discovery and Christmas (Dec. 17, 18, and 21-23).  In response, Oracle refused to engage on scheduling issues and has yet to provide any alternative suggestion.  Indeed, Oracle's refusal to even confer with Google about additional dates for the IBM deposition violates Local Rule 30-1.  The failure to even discuss scheduling the deposition after the close of discovery demonstrates Oracle's lack of good faith on this issue.  Oracle itself has requested that Google agree to schedule two depositions after the close of discovery in order to accommodate one witness who is abroad in December as well as to complete service on a former Google employee whom Oracle seeks to depose.  As required, Google in good faith met and conferred with regard to both issues and has agreed to stipulate to schedule those depositions after the close of discovery (provided, of course, that the Court approves).  Google remains open to a compromise regarding timing, subject to witness availability, but Oracle has offered none and refused to even discuss the issue.  Instead, Oracle tries to excuse its refusal to attend the IBM deposition by suggesting it simply has too many other things to do related to the case.

As for the travel logistics, Oracle's complaints ring hollow.  Google was able to scramble and identify a member of its legal team to cover the deposition on short notice, requiring last-minute travel from San Francisco to Ottawa, CA just as Oracle complains it would have to do.  And, contrary to Google's San Francisco-based legal team, Oracle has numerous lawyers in New York who could conduct the deposition.  From the Orrick firm, lead trial counsel Peter Bicks and at least two other senior team members (both of whom have handled depositions) are based in New York

---

[1] Over the weekend, Google took steps to confirm that there had been no issues or complications with the hand-delivery to Oracle's counsel's office, and ultimately determined on Monday that Oracle's complaints about not receiving the documents on Friday were without basis.

Hon. Donna M. Ryu
December 14, 2015
Page 7

City, as are numerous lawyers from the Boies Schiller firm, which also represents Oracle. From New York, flights to Ottawa, CA are direct and take approximately one hour. Thus, it is ironic for Oracle to argue that "[t]he fact that Google's deposition of IBM would require international travel to the other side of North America makes Google's truncated notice even more unreasonable"; Oracle itself has put up one witness in New York, and intends to do so again in January for another witness, whereas Google has presented all of its witnesses in the Bay Area. Additionally, Judge Alsup's Supplemental Order (Dkt. 26) expressly states that counsel should not refuse to schedule a deposition based on the availability of particular counsel. Dkt. 26, ¶ 17 ("That some counsel may be unavailable shall not, however, be grounds for deferring or postponing a deposition if another attorney from the same firm or who represents a party with similar interests to that witness is able to attend."). The Court should roundly reject Oracle's suggestion that its massive legal team cannot find a single person to attend a half-day deposition in Ottawa, CA. Indeed, Oracle is taking only a *single* deposition this week, yet has more than a dozen lawyers working on this case.

Oracle's new-found relevance complaints do not change the analysis. For purposes of its fair use defense, Google has a right to develop evidence of how the Java APIs were used by Sun/Oracle and by others in the industry. Numerous courts have held that this evidence is relevant to the scope of copyright protection and to fair use. *See Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) ("Computer programs are, in essence, utilitarian articles—articles that accomplish tasks. As such, they contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility requirements and industry demands."); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993) (noting that "hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacture design standards, target industry practices and demands, and computer industry programming practices" may be relevant to the scope of copyright protection.); *Wall Data, Inc. v. L.A. City Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006) ("As we balance these factors, we bear in mind that fair use is appropriate where a 'reasonable copyright owner' would have consented to the use, *i.e.*, where the 'custom or public policy' at the time would have defined the use as reasonable."); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) ("Congress resisted attempts to narrow the ambit of [the fair use] inquiry by adopting categories of presumptively fair use, and it urged courts to preserve the breadth of their traditional ample view of the universe of relevant evidence" as to what does (and does not) constitute a fair use."); *see also Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000). The same evidence is also relevant to Google's equitable estoppel and laches defenses, both of which the Court has reserved judgment on until after the retrial. *See* Dkt. No. 1277 (Second Case Management Order) at 2.

Oracle's suggestion that this evidence is irrelevant rings especially hollow in light of the key role that this evidence played at the last trial, which included the fair use, equitable estoppel, and laches defenses that will be the subject of the retrial. Indeed, this Court has already rejected Oracle's attempts to exclude evidence regarding Oracle's and Sun's policies and practices with respect to APIs. Dkt. 676 (Omnibus Order on Motions in Limine for Pretrial Conference) at 7 ("Importantly, testimony and evidence regarding Oracle's and Sun's policies and practices after January 1, 2006, is **not excluded** even if those same policies and practices began before 2006.") (emphasis added)). And both parties presented evidence and argument on IBM's use of Apache Harmony code in the last trial. *See* Dkt. 1047 (Google's Proposed Findings of Fact and Conclusions of Law) at ¶¶ 48-50;

Hon. Donna M. Ryu
December 14, 2015
Page 8

Dkt. 1081 (Oracle's Responses to Google's Proposed Findings of Fact and Conclusions of Law) at ¶¶ 48-50.  In post-trial briefing, Oracle disputed Google's evidence on the issue of IBM's use of Apache Harmony code, arguing that "Google did not call any witness from IBM, or any witness who would have first-hand knowledge of whether IBM used Harmony code in any of its products." Dkt. 1081 at 1081.  Yet, Oracle now argues that the very evidence it suggested was lacking the last time around is irrelevant to this retrial.  Oracle's gamesmanship should be rejected.

Oracle's argument that the Federal Circuit's decision "dramatically limited the relevance of Google's 'industry standards' argument" is a *non sequitur* because the portions of that opinion cited by Oracle relate to *copyrightability*, not to fair use. *Oracle Am. Inc., v. Google Inc.*, 750 F.3d 1339, 1372 (Fed. Cir. 2014) ("Google's industry standard argument has no bearing on the *copyrightability* of Oracle's work.") (emphasis added)).  The Federal Circuit did not "dramatically limit" the scope of the evidence that is relevant to Google's fair use, equitable estoppel, or laches defenses.  Indeed, equitable estoppel and laches were not even at issue in the Federal Circuit appeal, and the Federal Circuit rejected Oracle's argument that it was entitled to judgment as a matter of law on Google's fair use defense.  *Id.* at 1377.

As to Oracle's point that IBM is not mentioned in Google's discovery responses to date, the reason is obvious:  Google only received the documents last Friday, and awaits a deposition before it can complete discovery so as to be able to provide accurate interrogatory responses.  For Oracle to claim otherwise puts the cart before the horse.  In any event, Oracle was well aware of the relevance of IBM's use of Apache Harmony due to the role it played in the first trial, and both parties have agreed that they need not specifically identify in their discovery responses facts or arguments addressed in the last trial.

In sum, Google believes that the IBM deposition can and should proceed on December 16, 2015, as scheduled (or at a mutually convenient time thereafter, if ordered by the Court).[2]

Respectfully submitted,


/s/ *Annette L. Hurst*                                   /s/ *Robert A. Van Nest*



Annette L. Hurst                                          Robert A. Van Nest
Counsel for Oracle America, Inc.              Counsel for Google Inc.

---

[2] Finally, Google provides this response on particularly short notice, with prejudice.  The parties met and conferred late on Friday, December 11, during which conversation Oracle made no statement as to the date on which it intended to file its motion.  Oracle then spent the weekend preparing its motion for a protective order and only provided its portion of a joint letter to Google at 9:15 pm on Sunday, December 13, 2015, demanding Google's response by noon the following day.  Google provided its response by 1:00 p.m. today, with the parties exchanging some further edits this afternoon and evening.

Hon. Donna M. Ryu
December 14, 2015
Page 9

     I attest that concurrence in the filing of this document has been obtained from each of the other Signatories to this letter.

/s/ Annette L. Hurst
_____