December 23, 2015

**VIA ECF**

The Honorable Donna M. Ryu
United States Magistrate Judge
Northern District of California
1301 Clay Street, Courtroom 4, 3rd floor
Oakland, CA  94612

        Re:    *Oracle America, Inc. v. Google Inc.,* Case No. 3:10-cv-03561-WHA (N.D. Cal.),
              Joint Letter Regarding Oracle's Motion to Compel Google to Produce 30(b)(6) Witness

Dear Judge Ryu:

    Oracle respectfully requests that the Court issue an order continuing Google's Rule 30(b)(6) deposition on three topics, Topics 2-4 (separate motions address two other topics).  The parties have met and conferred telephonically but were unable to resolve the issue.  We were notified at 11:53 p.m. that Google had not finished its revisions to its portion of the joint statement and would not be able to file tonight.  We anticipate that this motion can be refiled as part of a joint statement tomorrow, once Google has completed its revisions.

    Fact discovery cut-off was December 16, 2015; party expert discovery cut-off is March 6, 2016.  Dkts. 1356 & 1334.  Dispositive motions are due March 21, 2016.  A pretrial conference is scheduled on April 27, 2016, with trial tentatively set to commence on May 9, 2016.  Dkt. 1333.

**Oracle's Statement**

    Oracle requests that the Court compel Google to appear for further deposition with a *prepared* witness on the following Topics noticed by Oracle:

- <u>Topic 2</u>: "A comprehensive description of all plans, product roadmaps, strategies, functions, markets, devices, and goods or services now or in the future planned to be in any way associated with ANDROID and/or any part thereof."
- <u>Topic 3</u>: "Google Play Services, including the nature, purpose and operation of Google Play Services, your licensing, marketing, advertising, or distribution thereof, and any costs, expenses or revenue associated with Google Play Services."
- <u>Topic 4</u>: "All methods of distribution and/or licensing of ANDROID or its components, including all terms of any licenses or distribution agreements."

    Google waived all of its objections to Oracle's Rule 30(b)(6) deposition notice because it decided not to move for a protective order prior to the deposition.  *Charm Floral v. Wald Imps. Ltd.*, No. C10-1550-RSM, 2012 WL 424491, at **4-5 (W.D. Wash. Feb. 9, 2012) (holding that parties waive their objections to Rule 30(b)(6) notices by failing to so move for a protective order); *see JSR Micro, Inc. v. QBE Ins. Corp.*, No. C0903044PJHEDL, 2010 WL 1957465, at *2 (N.D. Cal. May 14, 2010) ("Defendant should have met and conferred with Plaintiff as to the meaning of those terms

Hon. Donna M. Ryu
December 23, 2015
Page 2

[in the Rule 30(b)(6) deposition notice] before unilaterally assigning meanings to them, or should have moved for a protective order."). Google cannot unilaterally assert "objections and then provide a witness that will testify only within the scope of its objections." *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 406 (E.D.N.C. 2014).

On November 16 and 30, Google notified Oracle that (i) Hiroshi Lockheimer, Senior Vice President of Android, would testify on, *inter alia*, Topics 2 and 3, (ii) Jonathan Gold, Finance Director, would testify on, *inter alia*, Topic 3, and (iii) Felix Lin, Director of Product Management, Chrome OS, would testify on, *inter alia*, Topics 3 and 4. Oracle deposed Messrs. Lockheimer, Gold, and Lin. By the end of each of these depositions, it was apparent that Google had not presented witnesses with adequate preparation to answer questions on the topics. In particular, though without limitation, Messrs. Lockheimer and Lin knew nothing about the revenue-generating aspects of Google's Android strategies, and Mr. Gold, who knew something about financials, knew nothing about the rest of Topic 3.

Rule 30(b)(6) requires that a person designated to represent a corporation "testify about information known or reasonably available to the organization." The Rule was enacted to prevent exactly the type of "bandying" that occurred here, where Oracle was faced with multiple witnesses designated on the same topic, dividing it into discrete parts and none of them ever answering a straight question. *See Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008) (Rule 30(b)(6) is a "discovery device employed by the examining party to avoid the 'bandying' by corporations where individual officers disclaim knowledge of facts clearly known to the corporation." (citation omitted)). Under Rule 30, Google had an obligation to sufficiently prepare its designee "whether from documents, past employees, or other sources," so that the designee could "answer fully, completely, unevasively, the questions posed." *Tamburri v. SunTrust Mortg. Inc.*, No. C-11-02899 JST (DMR), 2013 WL 1616106, at *3 (N.D. Cal. April 15, 2013) (citation omitted). Google ignored this obligation. In fact, these witnesses each testified that they did little to nothing to prepare for their depositions. Thus their depositions should be continued with a *prepared* witness. *Id.* at *6; *Great Am. Ins. Co.*, 251 F.R.D. at 538.

**First**, during Messrs. Lockheimer's, Gold's and Lin's respective depositions, it became clear that they were unprepared or unwilling to provide information. Not only were their answers inadequate, but documents produced subsequent to Mr. Lockheimer's deposition directly contradicted and called his testimony into question with respect to an important issue.

**Topic 2**. Topic 2 calls for knowledge of, *inter alia*, all strategies, markets and goods or services ever in any way associated with Android. Advertising is indeed a market and service that is, and has been since Android's inception, associated with Android. Advertising revenue sharing agreements between Google and its partners, and Google's strategies concerning such agreements, fall squarely within Topic 2.

After Google designated him, Oracle deposed Mr. Lockheimer on December 8. Mr. Lockheimer testified he worked at Google for nearly 10 years and was recently promoted to Senior Vice President. Lockheimer Depo. at 9:14-17; 14:17-21. Despite his experience and seniority, he failed to provide meaningful responses to any questions that implicated Google's Android-related revenues. Asked if Google shares Android- or mobile-related advertising revenues with its partners, Mr. Lockheimer testified: "Advertising revenue. Not exactly my area" and "that is something I'm not responsible for, so I don't know." *Id.* at 15:13-14; 16:25-17:1. Mr. Lockheimer apparently is "not even familiar if there's a[n] advertising revenue share agreement, per se." *Id.* at 17:15-17. After

Hon. Donna M. Ryu
December 23, 2015
Page 3

Mr. Lockheimer's deposition, Google produced several advertising revenue sharing agreements. Despite his claimed lack of knowledge on this subject, **Mr. Lockheimer is the signatory** on several of those revenue sharing agreements.  *See* GOOG-10000756 (Google Search Revenue Share Agreement, December 2014) and GOOG-10000176 (Android Search and Google Play Revenue Share Agreement for Mobile Operators, September 2013).  Mr. Lockheimer also identified the Google Business Development group as the group responsible for search revenue and revenue sharing agreements, and said they would have the information requested.  Lockheimer Depo. at 91:11-94:16.  Mr. Lockheimer was evasive and misleading about agreements he had signed, and also unprepared to answer as to agreements outside of his ken.

Mr. Lockheimer testified he is "not responsible for Search or advertising." *Id*. at 47:9-48:12. Mr. Lockheimer also claimed not to know that Google makes money through the sale of applications and digital content to Android users in the Play Store (despite the fact that a witness prepared to testify on this topic should have known this information).  Asked if "there [is] any strategy document at Google or strategy series of documents where people are internally writing down thoughts about Google's strategy for the future about how it's going to earn money that in any way discusses Android," Mr. Lockheimer stated, "I don't know." *Id*. at 63:25-64:7.  Asked if he had "heard of any plan or strategy or market for monetizing mobile search associated with Android," Mr. Lockheimer responded, "it's not my area of responsibility, so I would be guessing somewhat here … ." *Id*. at 55:16-56:5.  Lastly, asked if Google was "contemplating any plan or strategy for revenue sharing with or with respect to advertising or any other form of economic consideration flowing to the auto manufacturers in connection with their agreement to use Google applications in the Embedded Mode of Android Auto," Mr. Lockheimer again stated:  "I don't know." *Id*. at 109:9-15.  Unsurprisingly, Mr. Lockheimer did not speak with a single Google employee, other than in-house counsel, in preparation for his Rule 30(b)(6) deposition. *Id*. at 351:7-11.

These examples provide only some of the most glaring deficiencies[1] in Google's deposition testimony through Mr. Lockheimer.  In meet and confer, Oracle requested that Ornella Indonie, who was identified by Mr. Lin as the head of business development and someone knowledgeable about revenue, be produced for a day of deposition on Topics 2-4, and that is the relief Oracle seeks herein.  Ms. Indonie is also likely to be able to answer questions about Topic 5, so she could satisfy all of Oracle's concerns except for Topic 8.

**Topic 3**.  On December 11, Oracle deposed Mr. Gold on four topics, but he was Google's sole designee with respect to the "costs, expenses or revenue associated with Google Play Services" portion of Topic 3.  To prepare for all four topics, Mr. Gold met with Google's attorneys for "[a]pproximately four" hours and separately a Google financial analyst for a "[c]ouple hours."  Gold

---

[1] To further illustrate:  Mr. Lockheimer testified, "I don't know," or to similar effect, on over 162 occasions on basic questions relevant to Topic 2.  Lockheimer Depo. at 17:1, 17:17, 17:25, 18:13, 18:19, 20:15, 22:11, 28:17, 31:17, 32:18, 33:16, 33:24, 34:19, 35:3, 35:19, 48:8, 48:11, 49:7, 49:14, 51:9, 51:14, 53:14, 54:19, 55:1, 56:24, 60:10, 64:7, 77:7, 77:19, 78:10, 79:5, 81:5, 81:13, 81:16, 82:1, 82:13, 89:3, 90:11, 91:5, 91:22, 95:24, 96:10, 98:10, 99:3, 102:11, 108:17, 109:2, 109:15, 111:12, 112:25, 113:6, 116:14, 119:8, 122:11, 123:3, 125:9, 125:10, 126:24, 127:12, 127:19, 129:12, 130:5, 130:9, 132:13, 133:22, 133:23, 134:18, 135:1, 135:14, 136:4, 142:21, 143:7, 144:22, 147:11, 147:19, 148:5, 148:22, 149:7, 149:9, 153:8, 162:14, 166:5, 168:6, 179:4, 179:24, 180:9, 180:18, 180:24, 181:10, 181:25, 184:17, 185:2, 185:9, 185:23, 187:3, 187:4, 191:22, 194:24, 197:17, 197:21, 198:7, 198:16, 198:21, 199:3, 199:4, 199:22, 205:16, 208:17, 214:20, 215:7, 215:17, 217:20, 218:1, 218:2, 219:10, 219:15, 220:2, 221:7, 231:25, 237:10, 238:16, 238:18, 241:18, 241:22, 242:3, 254:19, 258:12, 264:9, 264:17, 265:2, 266:5, 283:23, 284:14, 284:18, 295:11, 296:11, 296:13, 302:3, 302:23, 305:21, 305:22, 307:22, 309:12, 322:10, 324:12, 326:10, 334:19, 334:20, 335:3, 336:10, 339:16, 342:5, 342:18, 344:3, 344:5, 346:20, 346:22, 353:24, 358:8, 360:9, 363:17, 363:19.

Hon. Donna M. Ryu
December 23, 2015
Page 4

Depo. at 137:8-23. Put otherwise, Mr. Gold spent just over an hour to prepare for each of four topics. Despite the clarity and narrowness of Topic 3, Mr. Gold, who has worked at Google for six years and is now Finance Director, *id.* at 139:15, was not prepared to testify on it. He testified that he "do[es]n't have a deep understanding of [Google Play Services]." *Id.* at 251:10. Mr. Gold testified also that he is "not aware of any revenue associated with Google Play [S]ervices," and whether there is a monetization strategy for it. *Id.* at 252:3-19. Three days later, Google produced Mr. Lin, but expressly limited his testimony to only the "licensing, marketing, advertising or distribution of Google Play Services," and not the costs, expenses or revenue associated with Google Play Services. *See* Lin Depo. at 61:12-22. Mr. Lin likewise could not answer the questions. Oracle requests that Google produce Ms. Indonie on this topic as well.

**Topic 4**. Oracle deposed Mr. Lin initially on Monday, December 14; because Google had produced documents over the weekend immediately before the deposition, the parties negotiated an agreement to take 4 hours of the deposition on Monday, and the remaining three hours on Friday. Mr. Lin has worked at Google for over six years and is now Director of Product Management for Android and Chrome OS. Lin First Depo. at 9:4-15. Mr. Lin was Google's sole designee for Topic 4, which required disclosure of information regarding the licensing and distribution of all Android products. Mr. Lin was not prepared to discuss this topic. He had only one meeting with Google's attorneys for "a few hours" and took "a quick look at a couple of agreements," meaning he "just skimmed" them and "didn't really look at the details." *Id.* at 64:5-9; 65:14-16. Not surprisingly, Mr. Lin did not have the requested information: (i) Mr. Lin did not know even "[w]hat types of revenues … Google share[s] with carriers" because he "ha[s]n't written the agreements," *id.* at 148:8-9, and (ii) Mr. Lin could not testify as to how Google decides to share revenues with carriers, OEMs or both "because it's not something [he] engage[s] in," and largely the business development team makes such decisions, *id.* at 153:12-22.

In his December 18 deposition session, necessitated by Google's late production of documents pertaining to Mr. Lin, Mr. Lin similarly could not provide adequate answers to questions squarely within Topic 4. Mr. Lin responded "I don't know," or to similar effect, when asked the following questions: (i) "What is the licensing model associated with Android Auto?" (ii) "What is the licensing model for Brillo[, which relates to Internet of Things devices]?" (iii) "[A]re there yet any agreements in place with respect to licensing and distribution of Brillo?" Lin Second Depo. at 220:11; 223:1-2; 236:22-237:1. Clearly, Google failed to properly prepare Mr. Lin on Topic 4, which called for testimony on, *inter alia*, "all terms of any licenses or distribution agreements" regarding Android or its components. Mr. Lin specifically identified Google's business development group as the relevant personnel with information about the topic; hence, Oracle's request during meet and confer that Ms. Indonie be produced on Topic 4.

**Second**, to the extent Google produced any relevant documents, Google's failure to produce them prior to the depositions here precluded Oracle from conducting a full examination on Topics 2, 3 and 4. Google's belated production violated Judge Alsup's Supplemental Order entered September 22, 2010, which states that, if materials for a deposition are not produced by the time of the deposition, the withholding party must bear expenses and re-produce the deponent for further examination as to any new materials relevant to that deponent. Dkt. 26 at 5.

**Topic 2**. Several days after Mr. Lockheimer's deposition, Google belatedly produced documents relevant to Topic 2, including: (i) several revenue-sharing agreements that Mr. Lockheimer himself signed but claimed no knowledge of during his deposition, and (ii) an additional

Hon. Donna M. Ryu
December 23, 2015
Page 5

volume of approximately 8,500 documents, many of which are relevant to Topic 2 and include new Android-related financial data that are far more detailed than the narrow set of documents Google forced Oracle to rely on during Mr. Lockheimer's deposition.

**Topic 3**. After Mr. Gold's deposition, Google belatedly produced documents relevant to Topic 3, including: (i) several slide decks concerning the use of Google Play Services, such as in Internet of Things devices running Android, and (ii) documents containing proposals to use Google Play Services to ensure compatibility across Android devices.

**Topic 4**. On December 16, on the last day of fact discovery, Google again produced additional documents relevant to Topic 4 that could not be processed and reviewed prior to the schedule second session of the Lin deposition on December 18. Documents produced on December 16 included: (i) a number of Mobile Application Distribution Agreements, and (ii) documents discussing certain revenue-sharing strategies applicable to certain Android partners.[2]

\*   \*   \*

In an attempt to resolve at once all of Google's outstanding discovery obligations – adequate testimonies on deposition Topics 2, 3, 4, 5 and 8, a response to Oracle's RFP No. 313, and testimony on Google's belatedly-produced financial documents – Oracle offered Google a compromise. Oracle requested 7 hours of testimony from Ms. Indonie for all five Topics and in lieu of RFP No. 313, and 3.5 hours of testimony from Mr. Gold on Google's financial documents. Rather than agreeing to this proposal, Google presented a take-it-or-leave-it offer of 6 hours, and more importantly, refused to agree to produce Ms. Indonie, offering yet a different witness that did not appear to have relevant knowledge on the Topics at issue. When Oracle indicated that it would consider accepting this offer of a different witness if Google agreed that the witness would be fully prepared on the Topics at issue, Google responded that the parties would not be able to reach an agreement, thus necessitating this and several other motions to compel.

For the foregoing reasons, Oracle respectfully requests that the Court issue an order continuing Google's Rule 30(b)(6) deposition on Topics 2, 3 and 4 with a witness fully prepared to testify on those topics for 7 hours.

**Google's Statement**

[still to come]

Respectfully submitted,

/s/ Annette L. Hurst
Annette L. Hurst
Counsel for Oracle America, Inc.

---

[2] All of these documents pertaining to Topics 2, 3 and 4 were responsive to document requests that were outstanding at the time of these depositions. *See, e.g.*, RFP Nos. 219, 267, 321.