December 24, 2015

**VIA ECF**
The Honorable Donna M. Ryu
United States Magistrate Judge
Northern District of California
1301 Clay Street, Courtroom 4, 3rd floor
Oakland, CA  94612

      Re:    *Oracle America, Inc. v. Google Inc.,* Case No. 3:10-cv-03561-WHA (N.D. Cal.),
               Joint Letter Regarding Oracle's Motion to Compel Google to Produce 30(b)(6) Witness

Dear Judge Ryu:

      Google hereby submits separately its responsive letter brief concerning Oracle's motion to compel further testimony relating to Rule 30(b)(6) Deposition Topics 2-4.  Dkt. 1406.  Although the parties had exchanged full letter briefs yesterday afternoon, Oracle served on Google a substantially revised version of its portion after 10 pm last night.  Google therefore informed Oracle that it would not be able to complete its review and response prior to the midnight deadline for filing, and—if Oracle nonetheless insisted on filling—Google would submit its portion today.

      Fact discovery cut-off was December 16, 2015; party expert discovery cut-off is March 6, 2016.  Dkts. 1356 & 1334.  Dispositive motions are due March 21, 2016.  A pretrial conference is scheduled on April 27, 2016, with trial tentatively set to commence on May 9, 2016.  Dkt. 1333.

**Google's Statement**[1]

      Oracle's motion to re-open the depositions of Google's Rule 30(b)(6) designees should be denied.  Google's designees on Topics 2, 3, and 4 were prepared to answer questions within the fair scope of the topics, and the mere fact that a witness could not respond to every question (when so many were either overly broad or outside the fair scope of the deposition), or did not provide an answer that Oracle would like, does not justify requiring additional testimony here.[2]

**Topic 2:**

      Oracle's 30(b)(6) Topic 2 is vastly overbroad, calling for a "comprehensive description of all plans, product roadmaps, strategies, functions, markets, devices, and goods or services now or in the future planned to be in any way associated with ANDROID and/or any part thereof."  Given the size of Google as a company, there is no employee who could recite a "comprehensive description" of *all* plans that might be "in *any* way associated with Android."  Indeed, Topic 2 is written so

---

[1] Google is cognizant of the Court's Order regarding page limits for letter briefs, Dkt. 1366; however, because the parties had, up until late yesterday evening, been planning to file a joint letter, Google's portion was drafted in keeping with the four-page-limit.  Furthermore, Oracle's motion is approximately five pages and relates to three separate topics, which could have been addressed via separate letter briefs.  Google's responsive portion is therefore of commensurate length.

[2] Oracle's argument that Google "waived" its objections to these Topics is both irrelevant and incorrect.  First, Google produced witnesses on the subject topics, notwithstanding its objections.  Second, Google met and conferred with Oracle and identified its concerns before the deposition, the approach counseled in the case of *JSR Micro, Inc. v. QBE Ins. Corp.*, No. C0903044PJHEDL, 2010 WL 1957465, at *2 (N.D. Cal. May 14, 2010) to which Oracle cites.

broadly that Oracle now claims that it covers subjects (such as Android's advertising revenue, revenue streams, and P&L statements) encompassed by other Rule 30(b)(6) topics; specifically, Topic 1[3], for which Google produced a different witness, Jon Gold, Android's Financial Director.[4] Given the overbreadth and duplicative nature of Topic 2, Google asserted objections to this topic, including that the Topic is "overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." Google's Amended 30(b)(6) Objections at 5.

Taking into account its identification of a different witness for Topic 1, and despite the breadth and vagueness of Topic 2, Google identified and produced the witness in the best position to respond: Mr. Hiroshi Lockheimer. Mr. Lockheimer has been an integral member of the Google Android team for almost a full decade, joining the team before Android was released in 2007. He has been personally and directly involved in its development, distribution, and strategy for all those years, and today is Senior Vice President with day-to-day responsibility for Android. Thus, Mr. Lockheimer has more than sufficient basis to respond to the bulk of questions concerning Android's plans and strategies. Indeed, when Oracle directed its questions to those areas, Mr. Lockheimer was able to respond to the queries. *See, e.g.*, Lockheimer Dep. at 16:7-20, 16:19-20, 45:20-24.

But instead of proceeding fairly with this Rule 30(b)(6) deposition, Oracle chose to (a) ask questions of the witness that would require recitation of broad categories of information from memory without showing the witness any documents, and (b) proceed with hours of questioning outside the scope of Topic 2. Contrary to Oracle's letter brief above, Mr. Lockheimer was not "evasive" or "misleading" in responding to Oracle's questioning. Instead the manner in which Oracle conducted the deposition seemed designed to ignore that Google had designated and produced another witness on revenue issues. For example, many of the questions directed to Mr. Lockheimer related to how Google makes money from Android, but Oracle understands full well that the Android platform itself is not revenue-generating. That is, Google provides Android for free as an open source platform, and generates revenue from **other** parts of its business for which Mr. Lockheimer is **not** responsible (*e.g.*, advertising).

With respect to these questions, which fall within Topic 1—not Topic 2—Google had designated Jon Gold, Director of Android Finance. Mr. Gold testified at length about how Google generates revenue from and calculates costs for Android devices. Indeed, Mr. Gold responded at length about Google's revenue-sharing agreements with its OEM and carrier partners. *See generally* Gold Dep. at 12-52 (discussion of revenue-sharing with Google partners, including revenue share percentage and magnitude of annual payments); *see also id.* at 130-31 (YouTube revenue sharing); *id.* at 150-55 (discussion of revenue-sharing with specific network and distribution partners); *id.* at 230-

---

[3] Topic 1 seeks a witness regarding Financial information related to Google since January 1, 2010, including: (a) the amount and type of all mobile and non-mobile revenue directly and indirectly attributable to Android, including advertising revenue, and how Google accounts for and calculates such revenue, (2) all costs that Google contends are to Android and how they are accounted (3) the existence and content of financial documents associated with Android (4) any financial projections or forecasts relating to Android, (4) all costs and/or all revenue share payments made to or received from mobile carriers and/or original equipment manufacturers ("OEMs"); and (5) all costs that Google has incurred (including without limitation all payments it has made) in connection with its agreement with Apple Inc. through which Apple Inc. directs search or other requests for information to Google. *See* Oracle's 30(b)(6) Notice..

[4] Mr. Gold testified as to how advertising revenue is attributed to Android, how the financial team produces its P&Ls, and Android-related revenue sharing agreements. *See* Gold Dep. at pp. 30-47; 62-83, 95-97 (Android P&L); 83-95, 97-107 (advertising revenue attributable to Android); 12-17; 25-28; 49-55,129-131,185-86, 196-99, 223-31 (revenue sharing agreements).

Hon. Donna M. Ryu
December 24, 2015
Page 3

31 (details of revenue-sharing agreements with specific mobile carriers). Because Oracle received from Mr. Gold all the information about Android-related revenues and costs that it sought and is entitled to, there is no basis for asking for more deposition time with Mr. Lockheimer.

Further, many of the questions asked of Mr. Lockheimer were well beyond the scope of Topic 2. These included queries about specific statements made by individuals previously deposed by Oracle (Lockheimer Dep. at 34-35); requesting a list of all companies Google has paid related to searches on Google devices (*id.* at 80-82); and demanding a speculative list of documents discussing future markets Google hopes to pursue in relation to Android (*id.* at 64-66). Such questioning outside the scope of Topic 2 took up hours of deposition time, calling for more than 70 "beyond the scope" objections. *See* Lockheimer Dep. at 28:20-21, 32:7, 32:17, 32:21, 33:2, 33:9, 33:15, 33:19, 33:23, 34:7, 34:12, 35:18, 43:12, 52:18, 127:17, 128:3, 128:20, 129:1, 135:12, 135:18, 138:25, 140:24, 141:9, 144:9, 169:23, 179:3, 186:23, 196:10, 198:10, 206:22, 207:17, 207:22, 208:4, 208:10, 208:16, 210:9, 211:1, 211:13, 212:5, 213:20, 213:25, 214:9, 214:19, 214:25, 215:16, 216:6, 216:16, 216:24, 217:16, 218:8, 218:15, 218:23, 219:9, 220:6, 225:1, 225:19, 227:1, 227:17, 227:22, 228:23, 229:3, 229:7, 229:12, 229:16, 229:22, 232:9, 233:1, 236:6, 237:16, 238:4, 238:13, 239:2, 239:24, and 244:17.

Oracle's complaint that Google produced several advertising revenue-sharing agreements after Mr. Lockheimer's deposition is similarly misplaced. As was the case with Android-related revenues and costs (Topic 1), Mr. Lockheimer was not designated as Google's 30(b)(6) witness on the topics that related to these agreements (Topics 3, 4, and 5). Instead, Felix Lin, Director of Android Partner Engineering —initially deposed on December 14, 2015—was designated as to those topics, and he was fully prepared to discuss the revenue-share agreements with partners to which Oracle now cites. Moreover, in response to Oracle's complaints about documents received shortly before Mr. Lin's deposition, Google agreed to produce Mr. Lin for an *additional* half-day deposition on December 18, 2015 to provide Oracle additional time to review these documents that Oracle claimed were potentially relevant to his deposition. Remarkably, Oracle then chose not to question Mr. Lin with regard to these agreements at his second deposition.

Notwithstanding the above, Google met and conferred in good faith with Oracle and offered additional testimony from witnesses who would be able to further address these topics in the areas Oracle appears most interested in pursuing. Specifically, Google offered to produce for an additional half day Mr. Jim Kolotourous, Director of Global Android Partnerships, and also offered to consider providing two additional hours with Mr. Gold. Dec. 21, 2015 Email from Anderson to Hurst. Oracle declined the offer to pursue this motion, which should be denied as to Topic 2.

**Topic 3:**

Next, Oracle seeks to re-depose Mr. Gold on the "costs, expenses or revenue associated with Google Play Services." There is nothing to add to his testimony. Fundamentally, Oracle appears not to understand what "Google Play Services" is. It is not a monetized or revenue-generating product. Google does not sell or charge for Google Play Services. It is a set of software tools (*i.e.*, a background service and client library) that allows developers to create applications that access Google services, such as by adding a Google Map to an application. https://developers.google.com/android/guides/api-client; *see also* Gold Dep. at 251:11-12 (Google Play Services is "an underlying set of services that make Google Play work."); *id.* at 255:7-8; *id.* at 255:13-14 ("It's the software component of Google Play. It's used to make Google Play do the things it does, but we're now getting into engineering – an engineering world that I don't know."). It is not part of the open source Android platform accused in this case.

As for revenues associated with Google Play Services, during his deposition, Mr. Gold clearly testified that "there is no revenue attributed to Google Play Services." *Id.* at 254:11-12. Neither developers nor phone manufacturers are charged a monetary fee to use Google Play Services. Mr. Gold also testified that he is familiar with the costs and expenses associated with Google Play Services (such as engineering development), and that any associated costs or expenses would be in the Android P&L (produced prior to Mr. Gold's deposition and about which Mr. Gold testified to during the deposition). *Id.* at 251:21-22, 253:11-25. Finally, Mr. Gold explained that he was not aware of any monetization strategy for Google Play Services, and that he did not think that "anyone is aware of one." *Id.* at 255:1-2. In short, Mr. Gold has already provided complete and accurate testimony regarding the "costs, expenses or revenue associated with Google Play Services," and also explained that no one else has additional information to provide. Accordingly, Oracle's motion concerning Topic 3 should be denied.

**Topic 4:**

Oracle's request to re-open Topic 4 should also be denied. Topic 4 sought testimony regarding the "methods of distribution and/or licensing of ANDROID or its components, including all terms of any licenses or distribution agreements." As Mr. Lin explained, Android is available for free at https://source.android.com/. Lin Dep., Day 2, at 195. Google even previewed this fact in its objections to Oracle's 30(b)(6) notice, stating that "Android is an open source software project, and Google distributes the source code for Android pursuant to a free and open license that allows third parties to make modifications to the Android source code that Google distributes." Google's Amended 30(b)(6) Objections. Mr. Lin—who leads Google's Android Partner Engineering team responsible for working with Google's Android OEM partners—was fully prepared to testify regarding Google's open-source licensing and distribution model for Android, including to Android OEM partners. Oracle is not entitled to anything more because there is nothing more to say.

Given the simplicity of Android's distribution and licensing model, and Mr. Lin's testimony about that model, the basis for Oracle's complaint as to Topic 4 is unclear. *First*, Oracle appears to be suggesting that Mr. Lin did not know of a *different* licensing or distribution model for use of Android in TVs or cars. That is because Google's model is no different here: Android is made freely available under open-source licenses, regardless of how the licensee chooses to use Android. *Second*, to the extent that Oracle suggests that Topic 4 covers agreements between third-party manufacturers of Android devices and still other, unnamed third parties, Oracle is wrong. Such third-party discovery is far outside the scope of Topic 4 and, no reasonable person would read the topic as written to include agreements to which Google isn't a party. *Third*, Oracle claims that Mr. Lin was unprepared to discuss "revenue sharing agreements concerning Android." Setting aside the fact that Oracle already deposed other knowledgeable witnesses (such as Patrick Brady) before the first trial in this case, Google disagrees that Mr. Lin was unprepared. Nonetheless, Google offered to produce Mr. Kolotourous to testify regarding any other relevant aspects of these agreements as a compromise during meet and confer. Oracle declined Google's proposed compromise.[5]

---

[5] Google notes that, under Judge Alsup's Order, it is under no obligation to "woodshed" an individual to testify on a particular topic, particularly where, as here, the topic is overbroad. *See* Dkt. 26 at § 23(c). Google does not intend to present case-in-chief evidence at trial on the topic of revenue sharing agreements, and therefore has no obligation to educate a witness on that topic. Nevertheless, Google has now offered two witnesses to address this topic.

Hon. Donna M. Ryu
December 24, 2015
Page 5

**Document Production**:

Finally, Oracle asserts that document production subsequent to the deposition offers an alternative basis for re-opening Topics 2, 3, and 4.  *First*, Oracle mischaracterizes Judge Alsup's Supplemental Standing Order.  The provision Oracle appears to be citing requires a party to re-produce a deponent for further examination *only if* "any objection to a request for materials is overruled and if the disputed request was due and pending at the time of a deposition."  *See* Dkt. 5 at § 18.  This provision is simply inapplicable here.  Google did not object to producing the documents to which Oracle refers.  Instead, as Oracle is aware, both parties have been producing documents on a rolling basis in this condensed discovery period while simultaneously completing depositions before the fact discovery cut off.  Neither party has had the benefit of the full production of every document prior to any deposition.  Indeed, Oracle produced over 2 million documents in the last two weeks of discovery alone—documents that Google did not have the benefit of reviewing in preparing for and taking many depositions, including 30(b)(6) depositions.

Moreover, Oracle did not request a postponement of Mr. Gold's deposition, despite knowing Google had not yet produced the additional Google Play Services documents cited.  Oracle did not even alert Google of its complaint until the morning of Mr. Gold's deposition.  Dec. 11, 2015 Email from Hurst to Purcell.  When possible, Google accommodated Oracle's timely requests for postponing depositions due to the timing of document production.  For example, Google agreed to split Mr. Lin's deposition over two days in order to allow Oracle to review additional documents (which Oracle declined to use at the second deposition).  Similarly, Google has offered to consider additional hours of deposition for Mr. Gold, or another appropriate witness, with respect to financial documents produced after Mr. Gold's deposition; Oracle declined that offer.  Dec. 21, 2015 Email from Anderson to Hurst.

For the foregoing reasons, Google submits that Oracle's motion for additional deposition testimony should be denied.

Respectfully submitted,

*/s/ Robert A. Van Nest*

Robert A. Van Nest
Christa M. Anderson
Daniel E. Purcell
Keker & Van Nest, LLP
Attorneys for Google Inc.