**KEKER & VAN NEST** LLP

633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
kvn.com

**Daniel Purcell**
(415) 773-6697
dpurcell@kvn.com

December 30, 2015

**VIA E-FILING AND HAND DELIVERY**

Honorable William Alsup
U. S. District Court, Northern District of California
Courtroom 8 - 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Oracle America, Inc. v. Google, Inc.*
      Case No. 3:10-cv-03561 WHA (N.D. Cal.)

Your Honor:

Google has complied fully with this Court's November 10, 2015 order regarding production of documents. During the hearing that day, the Court directed Google to produce profit and loss ("P&L") statements for its non-Android business lines, and Google produced *all* such P&Ls on November 20, 2015. Moreover, independent of that Order and as part of Google's document production, Google has also produced *at least 671* financial presentations and analyses regarding not only Android, but Google's other business lines—exactly the category of documents Oracle now complains that Google withheld. There is no basis for any sanction or any other relief here.

Oracle's motion misstates what happened at the November 10, 2015 discovery hearing, casually describing the Court's November 10, 2015 Order as "compelling Google to produce *financial documents* requested by Oracle." Oracle Ltr. Br. at 1 (emphasis added). That is neither what Oracle requested at the November 10 hearing, nor what the Court ordered. At the hearing, Oracle's counsel addressed and requested production of one category of documents only: "P&Ls for Google, all of Google's businesses." Nov. 10, 2015 Tr. at 3:23-24. Oracle never mentioned, much less asked for, some general (and broader) category of "financial documents." Indeed, the transcript makes clear that Oracle limited its request profit and loss statements. And Oracle was equally clear, and equally limited, about its rationale for needing the P&Ls: to allow its experts to analyze a Google "unallocated expenses spreadsheet." *Id.* at 4:3-8. Specifically, Oracle represented that its experts had to construct an analysis of Google's unallocated expenses to make sure make sure Google wasn't trying to attribute costs to Android "that are actually attributable" to "overhead intensive businesses in which Google has been losing money." *Id.* at 5:8-9, 5:2-4. When the Court ordered production of the P&Ls on that basis, Oracle told the Court it had "no further matters" to raise. *Id.* at 9:3. The Court ordered production of the non-Android P&Ls, all of which Google produced on November 20, 2015.

Honorable William Alsup
December 30, 2015
Page 2

Because the transcript of the hearing proves all of this beyond dispute, Oracle's argument almost instantly falls back on a discussion that happened outside the courtroom. Oracle demanded production of senior-executive-level non-Android presentations in an unauthorized November 9, 2015 reply letter to this Court—but only as part of a laundry list of other demands that it later abandoned, including demands for data on revenue per Google search on non-Android platforms and financials for Alphabet, Inc. When Oracle raised the issue of non-Android senior-executive-level presentations, along with many other issues, during the November 10 meet-and-confer session, Google explained its reasons for refusing to produce such documents. When it came time to present disputes to the Court for resolution, and apparently after weighing Google's counter-arguments, Oracle made a deliberate tactical decision to seek P&Ls only and stand mute on everything else raised in the November 9 letter and during the meet-and-confer discussion.

Next, Oracle insists that the "rationale" of the November 10 Order somehow requires Google to produce senior-executive-level presentations on non-Android business lines. Not so. Oracle persuaded the Court to order production of the P&Ls with a specific, targeted relevance argument—that its experts supposedly required the P&L data to allocate otherwise unallocated Google expenses. This relevance theory has nothing to do with periodic reviews of specific non-Android business lines, which in turn have nothing to do with unallocated G&A expenses. For example, a discussion of the product plans and finances of Google's Cloud business—which is unrelated to Android—is not relevant to figuring out what percentage of unallocated G&A should be attributed to Android. This has always been Oracle's sole relevance theory, beginning with the November 9 letter to the Court and throughout all meet-and-confer discussions.

Oracle is also wrong to contend that Google is relying only on a relevance objection. Google made clear during the November 10 meet-and-confer that it also objected to producing its senior-executive-level presentations for non-Android business lines because the vast majority of the content in those presentations relates to confidential future business and product planning. This content is not just far afield from the only issue with any relevance here—*i.e.,* how much of Google's revenue and costs is caused by the allegedly infringing lines of code in 37 Android API packages—but Google's product strategies are among its most competitively sensitive and closely-guarded information. Indeed, some Google business lines, such as its Cloud business providing enterprise solutions, compete directly with Oracle. In a November 12 email to Oracle, part of the chain attached hereto as **Exhibit A**, Google reiterated this concern, explaining that, had Oracle asked the Court to order production of senior-executive presentations generally, Google would have resisted production based on competitive sensitivity, not just relevance.

Oracle's motion also distorts Google's offer of compromise regarding these documents. Google offered to produce those documents after redacting its product and business plans, but leaving unredacted all the financial data and analysis Oracle claims to need. Oracle rejected Google's offer, and now it mischaracterizes that offer as involving blanket redactions of "unspecified discussions of 'non-Android' performance." But Google's offer has always been to leave unredacted (1) *any P&L data* (which Oracle already has, because Google has produced the P&Ls themselves); (2) *any discussion of the revenues and costs data* set forth in the P&L; and (3) *anything else related to Android*. Google has *always* offered to produce the analysis Oracle claims to need—anything showing whether "certain expenditures are not related to Android and

1015264

Honorable William Alsup
December 30, 2015
Page 3

so should not be deducted in a disgorgement calculation"—in unredacted form.

Attempting to justify its decision to wait until the eleventh hour to file this motion, Oracle claims that Google "tricked" it into thinking Google would produce the senior-executive presentations on non-Android business lines. But Google has always explicitly refused to produce unredacted versions of these documents—at meet-and-confer sessions prior to November 10, on November 10, and in all subsequent correspondence. *See* **Exhibit A** (email chain showing meet-and-confer between November 10 and November 20, 2015). Oracle's only basis for claiming "trickery" is counsel's statement that Google would investigate the extent of responsive documents; Oracle contends that a promise to investigate necessarily implied a promise to produce. This is not plausible. Google was obligated to and did investigate the extent to which such documents exist—among other reasons, to confirm they contain sensitive product information and prepare in the event Oracle moved to compel—but this does not imply any promise to produce. No reasonable lawyer would have interpreted Google's repeated "no, no, no" as a "yes."

Oracle also mischaracterizes the nature of the P&Ls Google has produced for all aspects of its business, not just Android, calling them "database dumps created at the direction of counsel." Like many large corporations in 2015, Google does not track its finances using a leather-bound ledger, entering individual payables and receivables with an ink pen. As is true with Oracle, Google's financial data are maintained in a commercial financial database, and it is this database that is used to generate the P&L reports that Google relies on and uses in the ordinary course of its business. All the P&Ls produced to Oracle in this case are the same reports, with the same revenue and cost data attributable to particular Google business lines, that Google uses in the ordinary course of its business. Google did prepare several of these reports for Oracle after being ordered to do so by the Court, but Oracle's suggestion that these are jury-rigged, made-for-litigation documents is false and unsupported by anything in the record.

Similarly, Oracle misstates facts about Google's financial document production. In addition to the P&Ls, Google has also produced all senior-executive-level business presentations for Android (as opposed to other business lines), completing that production on November 16, 2015. Further, as part of its ordinary custodial production Google has produced (including from the files of its most senior executives, including its past and present CEOs, and its financial designee witness) *at least 671* financial presentations regarding all its business lines, including but not limited to Android. Unlike the senior-executive business presentations, these 671 documents are focused on financial data, rather than providing broader overviews primarily devoted to future product planning. Although Google directed Oracle to this trove of documents during meet-and-confer sessions, Oracle's letter brief ignores the extent of Google's production.

Finally, because Google has complied with this Court's orders, there is no authority for any issue or preclusive sanction under Rule 37(b). *See Bair v. Cal. State Dept. of Transp.*, 867 F. Supp. 2d 1058, 1068 (N.D. Cal. 2012) (Alsup, J.), citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). Given the lengths Google has gone to propose a reasonable compromise on this tangential issue, any sanction would be unfair. Google stands ready to perform the compromise it offered, but submits that is the most Oracle deserves.
Respectfully submitted,

1015264

Honorable William Alsup
December 30, 2015
Page 4

KEKER & VAN NEST LLP

*/s/ Daniel Purcell*
Robert A. Van Nest
Christa M. Anderson
Daniel Purcell

Attorneys for Google Inc.

1015264