January 4, 2016

**VIA ECF**
The Honorable Donna M. Ryu
United States Magistrate Judge
Northern District of California
1301 Clay Street, Courtroom 4, 3rd floor
Oakland, CA  94612

      Re:    *Oracle America, Inc. v. Google Inc.,* Case No. 3:10-cv-03561-WHA (N.D. Cal.),
                Joint Letter Regarding Oracle's Motion to Compel Google to Produce 30(b)(6) Witness

Dear Judge Ryu:

      Oracle respectfully requests an order continuing Google's Rule 30(b)(6) deposition on four topics.  The parties have met and conferred but were unable to resolve their dispute.  Fact discovery cut-off was December 16, 2015; party expert discovery cut-off is March 6, 2016.  Dkts. 1356 & 1334.  Dispositive motions are due March 21, 2016.  A pretrial conference is scheduled on April 27, 2016, with trial tentatively set to commence on May 9, 2016.  Dkt. 1333.

Hon. Donna M. Ryu
January 4, 2016
Page 1

**Oracle's Statement**:  Oracle requests that the Court compel Google to appear for further deposition on four Rule 30(b)(6) topics where Google's designees were unprepared to testify and lacked the requisite information.  **Topic 2** seeks "[a] comprehensive description of all plans, product roadmaps, strategies, functions, markets, devices, and goods or services now or in the future planned to be in any way associated with ANDROID and/or any part thereof."  **Topic 3** seeks testimony regarding "Google Play Services, including the nature, purpose and operation of Google Play Services, your licensing, marketing, advertising, or distribution thereof, and any costs, expenses or revenue associated with Google Play Services."  **Topic 4** seeks testimony regarding "[a]ll methods of distribution and/or licensing of ANDROID or its components, including all terms of any licenses or distribution agreements."  **Topic 8** seeks testimony to establish "any payment…resulting from any assertion of intellectual property against ANDROID."  Oracle engaged in the Court-ordered renewed meet and confer and offered to resolve the dispute on these topics, but Google refuses to resolve these issues without coupling any agreement to other disputes already before the Court.

Topics 2-4 go to the heart of Google's business objectives and strategies for the Android platform, its components and derivatives such as Android TV, Android Wear, Android Auto, Brillo and Weave, all directly relevant to any claim of fair use as well as remedies issues.  *See, e.g., A&M Records v. Napster, Inc.,* 239 F.3d 1004, 1015; 1027-29 (9th Cir. 2001) ("repeated and exploitative copying of copyrighted works" relevant to fair use and remedies). Topic 8 seeks to confirm, for purposes of a hypothetical license calculation, reports that Google and/or its OEMs pay others significant license sums on a per-device basis—irrespective of the underlying IP asserted.  *See, e.g., Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 958 (N.D. Cal. 2014) (ruling, at *Daubert* phase, that expert could "analyze[] licenses and demands for the use of other patents she concluded were comparable…Although Apple…[may] question whether these other licenses and demands are indeed comparable, that ultimate question must be resolved by the jury, not this court.").  These topics are highly relevant, but in any event Google waived any objections to these topics by failing to timely procure a protective order. *Charm Floral v. Wald Imps. Ltd.*, 2012 WL 424491, at **4-5 (W.D. Wash. 2012) (objections to Rule 30(b)(6) notices waived by failing to move for a protective order); *JSR Micro, Inc. v. QBE Ins. Corp.*, 2010 WL 1957465, at *2 (N.D. Cal. 2010) (similar).  Google was not entitled to unilaterally assert "objections and then provide a witness that will testify only within the scope of its objections." *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 406 (E.D.N.C. 2014).

The deposition on these topics should be continued for two reasons.  First, the witnesses were unable to testify on the topics, and second, this lack of preparation was compounded by the late production of documents.  Google designated (i) Hiroshi Lockheimer, Sr. VP of Android, on Topics 2, 3 and 8, (ii) Jonathan Gold, Finance Director, on Topic 3, and (iii) Felix Lin, Director of Product Management, Chrome OS, on Topics 3 and 4.  None of the witnesses prepared for their depositions beyond a short meeting with counsel—they did not review the Company's business records or meet with any of its other employees.  *See* Lockheimer Depo. at 17:3-10 (met briefly with counsel); Lin Depo. Vol. 1 at 64:5-9; 65:14-16 (met briefly with counsel and skimmed a few documents); Gold Depo. at 137:8-23 (spent about an hour preparing for each topic).  Thus, the witnesses were unable to answer even basic questions at the heart of these topics despite Google's obligation to prepare them.  *See, e.g., Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008)(citation omitted); *Tamburri v. SunTrust Mortg. Inc.*, No. C-11-02899 JST (DMR), 2013 WL 1616106, at *3 (N.D. Cal. April 15, 2013) (citation omitted).

Compounding the prejudice from lack of witness preparation, Google produced numerous documents relevant to the four topics at issue *after* the depositions.  For example, Google produced

Hon. Donna M. Ryu
January 4, 2016
Page 2

approximately 8,500 documents after Mr. Lockheimer's Topic 2 deposition, including relevant Android-related business plans that are far more detailed than the narrow set of documents Oracle had during the deposition. Google also produced documents relevant to Topic 3 after Mr. Gold's deposition, including several slide decks concerning Google Play Services and use of Google Play Services to ensure compatibility across Android devices.[1] Pursuant to Judge Alsup's Supplemental Order, further deposition examination is warranted on late-produced documents. Dkt. 26 at 5.

Google's Topic 2 designee (Mr. Lockheimer) on plans and strategies for Android failed to provide meaningful responses to any questions that implicated Google's Android-related strategies for generating revenue. Asked if Google shares advertising revenues with its carriers or OEMs as a strategy for distributing the platform, Mr. Lockheimer testified: "Advertising revenue. Not exactly my area" (Lockheimer Depo. at 15:13-14); "[Ad revenue] is something I'm not responsible for, so I don't know" (*Id.* at 16:25-17:1); "[I'm] not even familiar if there's a[n] advertising revenue share agreement" (*Id.* at 17:15-17). But *after* Mr. Lockheimer's deposition, Google produced several advertising revenue sharing agreements on which **Mr. Lockheimer is the signatory.** Asked if he had "heard of any plan or strategy or market for monetizing mobile search associated with Android," Mr. Lockheimer responded, "it's not my area of responsibility, so I would be guessing..." *Id.* at 55:16-56:5. Asked if Google was "contemplating any plan or strategy for revenue sharing with or with respect to…auto manufacturers in connection with their agreement to use Google applications in the Embedded Mode of Android Auto," Mr. Lockheimer again stated: "I don't know." *Id.* at 109:9-15.[2] Google's statement below that it produced other witnesses to discuss Android revenue is a red herring; Oracle is entitled to testimony regarding Android-monetization *strategy*, which is distinct from the finance-oriented testimony provided by other Google witnesses.

Google created a shell game by designating three different witnesses on Topic 3, each of whom was unable to answer questions. For example, Messrs. Lockheimer and Lin knew nothing about any revenue-generating aspects of Google Play, and Mr. Gold, who knew something about financials, knew nothing about the rest of Topic 3. Thus, while finance Director Jonathan Gold was Google's sole designee with respect to the "costs, expenses or revenue associated with Google Play Services" portion of Topic 3, he testified that he "do[es]n't have a deep understanding of [Google Play Services]" (Gold Depo. at 251:10), and that he is "not aware of any revenue associated with Google Play [S]ervices," or even whether there is a monetization strategy for it (*Id.* at 252:3-19). Google produced Mr. Lin to testify on licensing aspects of Topic 3, but he didn't know whether Google shares revenue from the Google Play Store with mobile carriers. *See* Lin Depo. at 148:18-21. Mr. Lockheimer identified Google's Business Development Group as the source of knowledge on revenue and revenue sharing issues related to his topics. Rule 30(b)(6) was originally enacted to prevent exactly the type of "bandying" that occurred here, where Oracle was faced with multiple witnesses designated on the same topic, dividing it into discrete parts and none of them ever answering a straight question. *See Great Am. Ins. Co*, 251 F.R.D. at 538.

Felix Lin was Google's sole designee for Topic 4, and he could not answer significant questions on the core of the Topic regarding Google's strategy for Android distribution and new Android products for cars, televisions and the internet of things. Mr. Lin did not know "[w]hat types of revenues … Google share[s] with carriers" (*Id.* at 148:8-9), could not testify as to how Google decides to share revenues with carriers or OEMs "because it's not something [he] engage[s]

---

[1] These documents were responsive to outstanding RFPs 215, 216, 220, 221, 222, 316, 318, and 321.
[2] Lockheimer testified "I don't know" (or similar) over 162 times on questions relevant to his topics.

Hon. Donna M. Ryu
January 4, 2016
Page 3

in" (*Id.* at 153:12-22). Mr. Lin responded "I don't know," or to similar effect, when asked the following questions: (i) "What is the licensing model associated with Android Auto?" (ii) "What is the licensing model for Brillo [Internet of Things platform]?" (iii) "[A]re there yet any agreements in place with respect to licensing and distribution of Brillo?" (iv) "what is the licensing model for Android TV?" Lin Depo. Vol. 2 at 220:11; 236:22-237:1; 222:22-223:2. Like Mr. Lockheimer, Mr. Lin punted to Google's Business Development Group as the relevant source of this information on Topic 4. Inexplicably, Google never disclosed its Business Development Group or any of its personnel in its Rule 26 disclosures. While Google may wish to take the remarkable position at this retrial that Android produces no revenue, Oracle is still entitled to discovery on that contention. One can hardly come fully prepared to testify about plans, strategies, distribution and licensing of the platform without knowing how it and its components are being commercialized and monetized.

Finally, Mr. Lockheimer could not testify on Topic 8 requesting payments by Google or others in respect to IP assertions against Android because Google unilaterally narrowed that topic to assertions of "copyright" when on its face the topic requested assertions "of IP of any kind." In the Apple v. Samsung case, Samsung testified that it was being indemnified by Google. N.D. Cal. Case No. 12-cv-00630, ECF 1920 at 13. Press reports include assertions that Google's OEMs are paying up to $8 per unit to Microsoft in respect of its assertion of IP against Android. http://news.yahoo.com/microsoft-could-generate-8-8-billion-annually-android-173026034.html. Yet Mr. Lockheimer disclaimed any knowledge of any kind regarding written agreements reflecting payments with respect to intellectual property assertions against Android and couldn't identify any indemnification requests related to Android. Lockheimer Depo. at 237:4-10;245:21. Oracle's experts are entitled to include these other IP license data points in their valuation of Google's use of Oracle's IP. Google can argue they are not comparable, but it is for the jury to decide what assertions of IP are comparable, not Google by unilaterally restricting the scope of discovery.

**Google's Statement:** Oracle's motion to re-open the depositions of Google's Rule 30(b)(6) designees on Topics 2-4 and 8 should be denied. Google produced senior management witnesses, who were highly knowledgeable concerning the areas of Google's business pertaining to each topic and who testified for a total of approximately 20 hours. The fact that Oracle's overbroad and overlapping topics required Google to produce several witnesses to cover them is entirely appropriate under Judge Alsup's Orders, and Oracle's complaints in this motion result from Oracle persistently questioning witnesses outside the scope of the designated topic, not any lack of preparedness. Also, Google has not waived its objections to these overbroad topics; the relevant Order provides that "[i]f a notice includes an overbroad topic, the overbroad topic shall be unenforceable[.]" Dkt. 26, ¶ 23(a). Further, Google conferred with Oracle about its concerns with respect to Topic 8 before the deposition, as counseled in *JSR Micro, Inc. v. QBE Ins. Corp.*, 2010 WL 1957465, at *2 (N.D. Cal. May 14, 2010). Oracle's motion also ignores that, although Google was required to produce a witness knowledgeable on each topic, in this case, "there is no requirement under Rule 30(b)(6) for the organization to 'woodshed' or to 'educate' an individual to testify on the subject." *Id.* ¶ 23(c). Thus, as discussed more fully below, Oracle is entitled to no relief.

**Topic 2:** Topic 2 is vastly overbroad, calling for a "comprehensive description of all plans, product roadmaps, strategies, functions, markets, devices, and goods or services now or in the future planned to be in any way associated with ANDROID and/or any part thereof." Given Google's size, no employee could recite a "comprehensive description" of *all* plans that might be "in *any* way associated with Android." Nonetheless, Google produced the witness who could best respond: Mr. Hiroshi Lockheimer. Mr. Lockheimer has been an integral member of the Android team for almost

Hon. Donna M. Ryu
January 4, 2016
Page 4

a decade. Since before Android's release, he has been directly involved in its development and strategy, and today is Senior Vice President with day-to-day responsibility for the overall development of Android. Mr. Lockheimer testified for a full 7 hours and, when Oracle questioned him concerning Android plans and strategies, he responded to the queries. *See, e.g.*, Lockheimer Dep. at 16:7-20, 16:19-20, 45:20-24.

The testimony cited by Oracle shows that its complaint is that Mr. Lockheimer could not respond to questions on **other topics for which Google produced other witnesses**. **First**, Oracle now claims that Topic 2 covers subjects such as Android's advertising revenue, revenue streams, and P&L statements encompassed by Topic 1[3], for which Google produced Jon Gold, Android's Financial Director. Oracle ignores that Mr. Gold testified at length about how Google generates revenue from and calculates costs for Android. Indeed, Mr. Gold responded at length about Google's revenue-sharing agreements with its OEM and carrier partners. *See generally* Gold Dep. at 12-52; *see also id.* at 130-31; *id.* at 150-55; *id.* at 230-31. Because Oracle received from Mr. Gold Android-related revenues and costs information, there is no basis for asking for more deposition time with Mr. Lockheimer. And Oracle's questioning of Mr. Lockheimer (who was not testifying in his individual capacity) for hours on questions beyond the scope of any of the overly broad designated topics unsurprisingly resulted in his being unable to respond to all questions. Indeed, Oracle asked more than 70 questions beyond the scope of the topics.

**Second**, Oracle's complaint that Google produced several partner agreements after Mr. Lockheimer's deposition is similarly misplaced. Mr. Lockheimer was **not** designated to testify on topics related to these agreements (Topics 3-5); instead, Google designated Felix Lin, Director of Android Partner Engineering, on these topics. Mr. Lin was initially deposed on 12/14/15 and produced for an additional half day on 12/18/15 to permit Oracle time to review **these very documents**, and was prepared to discuss the revenue-share agreements with partners to which Oracle now cites. But Oracle chose not to question Mr. Lin about them. Moreover, Judge Alsup's Order does not require re-opening depositions due simply to the timing of document production. *See* Dkt. 26, ¶18. And, in fact, in this case both parties have been producing documents on a rolling basis (including Oracle's production of over 2 million documents in the final two weeks of discovery), such that neither party has had the benefit of complete productions before deposition.

**Topic 3:** The Court should deny Oracle's request to re-depose Mr. Gold on the "costs, expenses or revenue associated with Google Play Services" because Mr. Gold has already provided complete and accurate testimony on this issue. Mr. Gold clearly testified that "there is no revenue attributed to Google Play Services." Gold Dep. at 254:11-12. Mr. Gold also testified that he is familiar with the costs and expenses associated with Google Play Services (such as engineering development), and that any such costs or expenses would be in the Android P&L (produced prior to Mr. Gold's deposition and about which he testified). *Id.* at 251:21-22, 253:11-25. Finally, Mr. Gold explained that he was not aware of any monetization strategy for Google Play Services, and that he did not think that "anyone is aware of one." *Id.* at 255:1-2.

**Topic 4:** Topic 4 sought testimony regarding the "methods of distribution and/or licensing of ANDROID or its components," and yet Oracle complains that Mr. Lin was not knowledgeable concerning revenue issues and strategy, both areas outside the scope of this topic. Moreover, as Mr.

---

[3] Topic 1 seeks a witness regarding a comprehensive range of Google financial information including all mobile and non-mobile revenue, all Android costs, etc. *See* Oracle's 30(b)(6) Notice.

Hon. Donna M. Ryu
January 4, 2016
Page 5

Lin explained, Android is available for free under open source licenses at https://source.android.com/. Lin Dep., Day 2, at 195. The Android licensing model, therefore, is very simple—and public—and Oracle has been fully educated about it. Mr. Lin—who leads the team responsible for working with Google's Android OEM partners—was knowledgeable regarding Google's open-source "distribution and/or licensing of Android," given his day-to-day work. Additionally, contrary to Oracle's assertions, Mr. Lin not only met with counsel, but also reviewed representative revenue share, anti-fragmentation and mobile application development agreements, and spoke with the lead Google engineer who handles iOS agreements in preparation on Topic 4. *Id.* at 300:23-301:1; Day 1 at 63:22-65:3.

      **Topic 8:** Topic 8 broadly seeks testimony regarding any intellectual property enforcement **of any kind** against any one of hundreds of entities using Android. Because this Topic is not tethered at all to the accused technology (Java APIs) or to the type of intellectual property right asserted (copyright), Oracle fails to demonstrate that testimony on this topic is relevant or proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).[4] The only IP enforcement activities that could be relevant to this copyright case would be copyright infringement claims against portions of the Android operating system that are comparable to the aspects of Android that Oracle accuses in this case. Mr. Lockheimer was prepared to address that narrow issue, but Oracle chose not to question him as to enforcement of copyrights against Android. The answer to that query is succinct: Google is aware of no copyright suits asserted against Google concerning Android aside from the present lawsuit. Moreover, the purpose and character of the use of "others' IP" has no relevance to the first factor of the fair use inquiry, *i.e.*, the "purpose and character of the use." *See* 17 U.S.C. § 107. Instead, it is the alleged use in a tiny portion of the Android platform of a small portion of <u>Oracle's</u> Java-related copyrighted material that is the subject of the fair use inquiry. And Oracle's argument that settlement licenses of unrelated IP claims are relevant to the hypothetical negotiation and the fair market value of Oracle's copyrights is also incorrect. Instead, the licenses relevant to such analyses are constrained to those that are actually comparable (in technology and economic circumstances) to the parameters of the specific hypothetical negotiation at issue.[5]

      Notwithstanding the above, Google has offered a series of proposed compromises, including offering an additional 5 hours of deposition of Mr. Jim Kolotourous, Global Director of Android Partnerships, an additional hour of deposition of Mr. Gold (or an equivalent financial witness), and production of certain additional documents to collectively resolve all the pending motions against Google.

---

[4] Google conferred with Oracle regarding the overbroad scope of this topic by telephone and via follow up written correspondence.  *See* Dkt. 26 ¶ 23(a) discussed above. When Oracle declined to provide any clarification, Google expressly informed Oracle that Google would agree to provide a witness on the narrower (but still irrelevant) subject of copyright enforcement actions against Google concerning Android. *See also* Google Am. 30(b)(6) Obj. at 8. Oracle raised no objections and did not seek to further confer on the issue.

[5] *See, e.g., LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 79-81 (Fed. Cir. 2012); *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1320-21 (Fed. Cir. 2010); *see also* Dkt. No. 685. Moreover, relevance concerns are only heightened where, as here, the licenses sought are settlement licenses. *See, e.g., Laser Dynamics, Inc.,* 694 F.3d at 77-78 (noting that the "propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable").

Hon. Donna M. Ryu
January 4, 2016
Page 6

Respectfully submitted,

*Annette L. Hurst*                                              *Robert A. Van Nest*

Annette L. Hurst                                                Robert A. Van Nest
Counsel for Oracle America, Inc.                                Counsel for Google Inc.

    I attest that concurrence in the filing of this document has been obtained from each of the other Signatories to this letter.

*/s/ Annette L. Hurst*
_____