| | |
|---|---|
| 1 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | KAREN G. JOHNSON-MCKEWAN (SBN 121570) |
| 2 | kjohnson-mckewan@orrick.com |
| | ANNETTE L. HURST (SBN 148738) |
| 3 | ahurst@orrick.com |
| | GABRIEL M. RAMSEY (SBN 209218) |
| 4 | gramsey@orrick.com |
| | 405 Howard Street, San Francisco, CA  94105 |
| 5 | Tel: 1.415.773.5700 / Fax: 1.415.773.5759 |
| | PETER A. BICKS (*pro hac vice*) |
| 6 | pbicks@orrick.com |
| | LISA T. SIMPSON *pro hac vice*) |
| 7 | lsimpson@orrick.com |
| | 51 West 52nd Street, New York, NY  10019 |
| 8 | Tel: 1.212.506.5000 / Fax: 1.212.506.5151 |
| 9 | BOIES, SCHILLER & FLEXNER LLP |
| | DAVID BOIES (*pro hac vice*) |
| 10 | dboies@bsfllp.com |
| | 333 Main Street, Armonk, NY  10504 |
| 11 | Tel: 1.914.749.8200 / Fax: 1.914.749.8300 |
| | STEVEN C. HOLTZMAN (SBN 144177) |
| 12 | sholtzman@bsfllp.com |
| | 1999 Harrison St., Ste. 900, Oakland, CA  94612 |
| 13 | Tel: 1.510.874.1000 / Fax: 1.510.874.1460 |
| | ORACLE CORPORATION |
| 14 | DORIAN DALEY (SBN 129049) |
| | dorian.daley@oracle.com |
| 15 | DEBORAH K. MILLER (SBN 95527) |
| | deborah.miller@oracle.com |
| 16 | MATTHEW M. SARBORARIA (SBN 211600) |
| | matthew.sarboraria@oracle.com |
| 17 | 500 Oracle Parkway, |
| | Redwood City, CA 94065 |
| 18 | Tel: 650.506.5200 / Fax: 650.506.7117 |
| 19 | *Attorneys for Plaintiff* |
| | ORACLE AMERICA, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| Plaintiff, | **DECLARATION OF ANNETTE L. HURST RE: GOOGLE INC.'S MOTION FOR RECONSIDERATION [DKT. 1438]** |
| v. | |
| GOOGLE INC. | Dept:   Courtroom 8, 19th Fl. |
| Defendant. | Judge:  Hon. Donna M. Ryu |

DECL. OF ANNETTE L. HURST
CV 10-03561 WHA

I, Annette L. Hurst, declare as follows:

1. I am a partner at the law firm Orrick, Herrington & Sutcliffe LLP, counsel of record for Plaintiff Oracle America, Inc. ("Oracle") in this action. I have personal knowledge of the facts stated in this declaration except where stated as to information and belief. If called upon to testify competently hereto, I could and would do so.

2. Oracle's expert report of James Malackowski concerning copyright remedies is designated HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY under the Protective Order. The deposition transcript of Jonathan Gold is designated HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY under the Protective Order. Neither Mr. Van Nest nor anyone else representing Google contacted us in advance to inform us that they would be disclosing any contents of either of these documents at the hearing on January 14.

3. In meet and confer discussions between the parties encompassing a wide range of topics, including the necessity of production of agreements with third parties, Oracle has more than once identified the extraordinary sums of Android-related revenue as relevant both to fair use and monetary remedies. During these meet and confer conferences, the parties discussed their relative positions at length. During one such conference on December 11, 2015, I specifically explained Oracle's position, argued at the January 14, 2016 hearing, regarding the nexus between the amount of money Google pays to third parties and Oracle's remedies theories. Over time, Oracle has identified to Google multiple theories of relevance of agreements with third parties, including the first factor of fair use, disgorgement causation, hypothetical license and apportionment of profits.

4. The expert report of James Malackowski quantifies Android-related revenue and profits. As described by Mr. Van Nest at the hearing on January 14, that report also identifies Google's agreements with third parties for distribution of search services on mobile devices as a category of documents Mr. Malackowski would like to analyze. Mr. Malackowski has requested the information ordered by the Court after the January 14 hearing for use in his analysis. Oracle's economics expert on fair use also has requested the information ordered by the Court after the January 14 hearing for potential use in his analysis in connection with a report due on February 8.

1      5.      I anticipate that Oracle will offer evidence of revenue and profit calculations, and

2  payments to third parties for distribution of search services on mobile devices, as evidence in

3  support of its case in the trial of this matter relevant both to fair use and monetary remedies.  Trial

4  is currently set for May 9.  I also anticipate discussion of one or both of these pieces of

5  information in connection with *Daubert* motions, and perhaps other motions in limine and

6  summary judgment motions.

7      6.      Google described a risk factor in its 2004 10-K public report to the SEC (filed in

8  March 2005) as follows:

> More individuals are using non-PC devices to access the Internet, and versions of our web search technology developed for these devices may not be widely adopted by users of these devices.  The number of people who access the Internet through devices other than personal computers, including mobile telephones, handheld calendaring and email assistants, and television set-top devices, has increased dramatically in the past few years.  The lower resolution, functionality and memory associated with alternative devices make the use of our products and services through such devices difficult.  If we are unable to attract and retain a substantial number of alternative device users to our web search services or if we are slow to develop products and technologies that are more compatible with non-PC communications devices, we will fail to capture a significant share of an increasingly important portion of the market for online services.

17      7.      The arguments I made at the hearing on July 14 were directed to the Court in order

18  to respond to questions by the Court or assertions by Mr. Van Nest.  I did not bring the Gold

19  deposition transcript with me to the hearing.  I consulted that transcript only after Mr. Van Nest

20  made repeated assertions about its contents which did not jibe with my memory of what the

21  witness had said.  I then asked one of my colleagues to find the relevant pages for me in order to

22  respond.

23      8.      Oracle and Orrick were contacted by members of the press to comment on this

24  information after Google filed its motion to seal.  Although the Court had already denied

25  Google's motion to seal made at the hearing, neither Oracle nor any of Orrick's lawyers provided

26  any comment on the record, or discussion on background or off the record.  We did not supply

27  copies of the transcript to journalists, nor (despite requests) identify the court reporter from whom

28  a transcript could be ordered.  After leaving the courtroom, I have not discussed the information

- 2 -

DECL. OF ANNETTE L. HURST
CV 10-03561 WHA

1  disclosed during the hearing or the contents of the hearing transcript with anyone other than in a
2  privileged and confidential context.

3        9.     As I was leaving the courtroom on January 14, I observed that a journalist I
4  recognize from other matters, Mike Swift, was present in the courtroom.  Based on my research
5  online, I do not believe Mr. Swift published a story after the hearing.  Nor did I see any other
6  press reports about this in the days after the hearing.  The only press reports referencing this issue
7  that I have located are dated January 21, 2015, and describe Google's written motion to seal,
8  which was filed January 20, 2015.

9      I declare under penalty of perjury under the laws of the United States and the State of
10 California that the foregoing is true and correct.

12                                                                       */s/ Annette L. Hurst*
13                                                                       Annette L. Hurst