# EXHIBIT 12

ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE'S SUPPLEMENTAL RESPONSES TO GOOGLE'S SIXTH SET OF INTERROGATORIES** <br><br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William H. Alsup |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the parties' stipulation, Defendant Google Inc. ("Google"), through its attorneys, supplements its responses and objections to Plaintiff's Interrogatories to Defendant Google Inc., Set Five ("Plaintiff's Fifth Interrogatories"), served by Plaintiff Oracle America, Inc. ("Plaintiff" or "Oracle") on August 21, 2015 as follows.

**GENERAL OBJECTIONS**

1. Google responds generally that its investigation of the facts relevant to this litigation is ongoing. Google's responses herein are given without prejudice to Google's right to amend or supplement in accordance with Rule 26(e) of the Federal Rules of Civil Procedure, the Civil Local Rules, the Court's Case Management Orders, and any applicable Standing Orders.

2. Google generally objects to Plaintiff's Fifth Interrogatories, and the "Definitions and Instructions" related thereto, to the extent they are inconsistent with or impose obligations beyond those required by the Federal Rules of Civil Procedure, the Civil Local Rules, the Case Management Orders entered by the Court, and any applicable Standing Orders. In responding to each Interrogatory, Google will respond as required under Rule 33 of the Federal Rules of Civil Procedure.

3. Google generally objects to Plaintiff's Fifth Interrogatories to the extent they attempt to reopen discovery on issues, events, transactions, and/or occurrences that could have, and should have been addressed, if at all, prior to the original trial.

4. Google objects to the definition of the words "Google" "You" and "Your" in paragraph 1 of the Definitions of the Interrogatories as overly broad, unduly burdensome, vague, and ambiguous and because the definition seeks to expand the definition of "Google" to include all "predecessors, affiliates, successors, subsidiaries, divisions or parts thereof, parent holding companies, including without limitation, Alphabet, Inc., and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on its behalf." Such a definition of "Google" expands the definition beyond any reasonable or commonly accepted meaning of the term. Further, Google generally objects to Oracle's definitions of "Google," "You," and "Your" as overbroad and vague to the extent the definitions purport to include

1
DEFENDANT GOOGLE INC.'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET 5 (NOS. 26 – 37)
Case No. CV 10-03561 WHA

1003318

Alphabet, Inc., as Google's proposed reorganization has not yet been finalized.

5. Google generally objects to Oracle's definition of "Android" as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it includes "related public or proprietary source code, executable code, and documentation." Android is an open source software project, and Google distributes the source code for Android pursuant to a free and open source license that allows third parties to make modifications to the Android source code that Google distributes. Accordingly, Google objects to Oracle's definition of "Android" to the extent it purports to include software created, modified, and/or distributed by third parties and not Google. Similarly, Google objects to the term "GOOGLE ANDROID devices" as vague and ambiguous and further objects to the term as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it includes devices running Android software that are manufactured and sold by third parties, including without limitation any original equipment manufacturers, and not Google.

6. Google generally objects to Oracle's definitions of "Version" and "Versions" as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Android is an open source software project, and Google distributes the source code for Android pursuant to a free and open source license that allows third parties to make modifications to the Android source code that Google distributes. Accordingly, Google objects to Oracle's definition of "Version" to the extent it purports to include software created, modified, and/or distributed by third parties and not Google.

7. Google generally objects to Oracle's definition of "37 Java API Packages" as vague, ambiguous, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

8. Google generally objects to Oracle's definition of "Declaring Code" as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Google further objects that the term "code," as used in the definition, is vague and ambiguous, as it is unclear whether Oracle is referring to human-readable

2

DEFENDANT GOOGLE INC.'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
PLAINTIFF'S INTERROGATORIES, SET 5 (NOS. 26 – 37)
Case No.  CV 10-03561 WHA

1003318

source code or something else.  Google further objects to the definition of Declaring Code as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it purports to include anything other than the source code declarations that comprise the structure, sequence, and organization for the 37 Java API Packages that were the subject of the Question 1A on the Phase 1 Special Verdict Form in the prior trial in this action.

9. Google generally objects to Oracle's definition of "SSO" and "structure, sequence and organization" as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it purports to include anything other than the structure, sequence, and organization of the 37 Java API Packages that were the subject of the Question 1A on the Phase 1 Special Verdict Form in the prior trial in this action.

10. Google generally objects to Oracle's definition of "Java Platform" as vague, ambiguous and potentially overbroad.  When used in Google's responses, the phrase "Java Platform" shall have the meaning ascribed to that phrase in paragraph 9 of Oracle's Amended Complaint, filed in this Action on October 27, 2010 (ECF No. 36), including without limitation Java ME (Micro Edition), Java SE (Standard Edition), Java EE (Enterprise Edition), OpenJDK, and all versions thereof.

11. Google generally objects to Plaintiff's Fifth Interrogatories to the extent (a) they are not reasonably calculated to lead to the discovery of admissible evidence that is relevant to any claim or defense of any party; (b) they are unreasonably cumulative or duplicative; (c) they seek information that is obtainable from some other source that is more convenient, less burdensome, or less expensive; or (d) the burden or expense of the proposed discovery outweighs any likely benefit.

12. Google generally objects to Plaintiff's Fifth Interrogatories to the extent they seek information, documents, and/or things protected from discovery by the attorney-client privilege, the work product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection.  Nothing contained in Google's responses is intended to be, or in any

3
DEFENDANT GOOGLE INC.'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES, SET 5 (NOS. 26 – 37)
Case No. CV 10-03561 WHA

1003318

way shall be deemed, a waiver of any such applicable privilege or doctrine.

13. Google generally objects to Plaintiff's Fifth Interrogatories to the extent they request information, documents, and/or things not within the possession, custody, or control of Google, that are as readily available to Plaintiff as to Google, or that are otherwise in the possession of Plaintiff, on the grounds that such requests are unduly burdensome.

14. Google further objects to what Oracle has labeled as Interrogatory Nos. 26, 27, 28, 29, 30, 31, 32, 34 and 35 as improperly compound and containing multiple distinct sub-parts.

15. Google objects to each Interrogatory as premature to the extent it seeks expert testimony. Google will disclose such information at the time and in the manner contemplated by the Federal Rules of Civil Procedure, the Civil Local Rules, the Court's Case Management Orders, and any applicable Standing Orders in this case. Google also reserves the right to amend and incorporate expert opinion and testimony at the appropriate time.

16. Google incorporates by reference these General Objections into the specific objections and responses set forth below. While Google may repeat a General Objection for emphasis or some other reason, the failure to specifically refer to any General Objection does not constitute a waiver of any sort. Moreover, subject to the requirements of Rule 33 of the Federal Rules, Google reserves the right to alter or amend its objections and responses set forth herein as additional facts are ascertained and analyzed.

17. Google remains willing to meet and confer with respect to any of its objections to assist Plaintiff in clarifying or narrowing the scope of the requested discovery, and reserves the right to move for a protective order if agreement cannot be reached.

4
DEFENDANT GOOGLE INC.'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
PLAINTIFF'S INTERROGATORIES, SET 5 (NOS. 26 – 37)
Case No. CV 10-03561 WHA

1003318

developers, and architects using Oracle products, including Java products. Oracle invests in the "Java Magazine," which is published on a bi-monthly basis in digital and mobile formats. This digital publication is a source of knowledge about Java technology (*see* http://www.oracle.com/technetwork/java/javamagazine/index.html). Oracle has welcomed the entire Java community to become involved in the editorial process and contribute to the publication.

Moreover, Oracle has and continues to support other Java-related efforts, including the Java User Groups and Java.net, a home for the Java community to collaborate on and develop Java projects such as OpenJDK. Finally, Oracle has invested in campaigns around Java and developer forums such as in the form of web casts and developer conferences such as the Java One conference.

**INTERROGATORY NO. 23:**

State in detail the factual bases for your contention that Google's use of any aspect of the APIs-at-Issue does not constitute a "fair use" under 17 U.S.C. § 107.

**INTERROGATORY RESPONSE NO. 24:**

Oracle objects to this interrogatory as improperly compound and containing multiple distinct sub-parts. Oracle objects on the basis that Google bears the burden of proof of proving "fair use" under 17 U.S.C. § 107, and that this interrogatory improperly attempts to shift the burden of proof to Oracle. As Oracle's contentions are subject to ongoing discovery and expert analysis, Oracle objects to this interrogatory as premature. Oracle has not yet completed its investigation of the documents and facts relevant to the claims and defenses asserted in this action, and has not received relevant documents and information from Google or third parties. Accordingly, Oracle's response will be based on the information reasonably available to it at this time and Oracle will supplement its response as appropriate under the Federal Rules of Civil Procedure. Subject to these objections, Oracle responds as follows:

Google's use of Oracle's Java API Packages is not a fair use. Facts supporting this conclusion were set out in the previous trial in this matter and Oracle hereby incorporates and

refers Google to the previous trial and appellate record, including all admitted trial exhibits, all testimony and all trial court and appellate pleadings and briefing on this issue; facts supporting this contention also include:

- Google's use of Oracle's Java API Packages in Android is wholly commercial. Google concedes this. Google was desperate to extend its market dominance in search to mobile. Google intended to make billions off of Android and decided to use Oracle's copyrighted works to get to market as soon as possible.

- Google's use of Oracle's Java API Packages in Android is not transformative. Google copied the Oracle's Java declaring code and used it for the same purpose as in Java: to call upon pre-written packages of software. Google similarly copied the structure, sequence and organization of the Java API Packages into Android without alteration.

- Oracle's copyrighted work is creative. Google's "Java guru" explained that designing a package is "a noble and rewarding craft," where "creative[ity]" and "aesthetic[s] matter." As the district court concluded, "of course" this was "creative."

- Google copied at least 7,000 lines of declaring code from Oracle's Java API Packages. These lines of declaring code represent a substantial portion of the declaring code from those packages Google copied.

- Furthermore, Google copied the only code with any relevance to programmers: the declaring code. Google was not indiscriminate in its copying, it took "the good stuff from Java."

- Google's use of Oracle's Java API Packages had a disastrous effect on the market for the Java platform in the mobile and smartphone markets. Oracle was licensing Java in the mobile and smartphone markets when Google released Android, containing Oracle's copyrighted Java API Packages, free of charge. With Android, handset manufacturers, wireless carriers, and software vendors had a Java-friendly programming environment without licensing fees. Companies preferred not paying licensing fees that they would have had to pay had they licensed Java from Oracle. In other words, it was "pretty hard to compete with free."

- Android's lack of compatibility with Java also impacted the market for Java. By

- 19 -

ORACLE'S FIRST SUPPLEMENTAL RESP.
AND OBJ. TO GOOGLE'S SIXTH SET OF
INTERROGATORIES
CV 10-03561 WHA

1   design, Android programs are not compatible with the Java platform. As developers started
2   developing for Android, it damaged the "write once, run anywhere" proposition that is central to
3   Java.

4   • Google's Android platform, which it gives away free of charge, also impacted
5   other markets where Oracle historically licensed Java or potential markets for Java, including the
6   television, set top boxes, automobiles, household appliances, wearable devices, tablets, and media
7   players.

**FIRST SUPPLEMENTAL INTERROGATORY RESPONSE NO. 25:**

Oracle objects to this interrogatory as improperly compound and containing multiple distinct sub-parts. Oracle objects on the basis that Google bears the burden of proof of proving "fair use" under 17 U.S.C. § 107, and that this interrogatory improperly attempts to shift the burden of proof to Oracle. As Oracle's contentions are subject to ongoing discovery and expert analysis, Oracle objects to this interrogatory as premature. Oracle has not yet completed its investigation of the documents and facts relevant to the claims and defenses asserted in this action, and has not received relevant documents and information from Google or third parties. Accordingly, Oracle's response will be based on the information reasonably available to it at this time and Oracle will supplement its response as appropriate under the Federal Rules of Civil Procedure. Subject to these objections, Oracle responds as follows:

Google's use of Oracle's Java API Packages is not a fair use. Facts supporting this conclusion were set out in the previous trial in this matter and Oracle hereby incorporates and refers Google to the previous trial and appellate record, including all trial exhibits, all testimony and all trial court and appellate pleadings and briefing on this issue; facts supporting this contention also include:

• Google's use of Oracle's Java API Packages was in bad faith. Google understood that it was required to take a license in order to use someone else's intellectual property for commercial purposes but it simply refused to do so because it wanted control over the Java platform as implemented in mobile devices. Google's desire for control was particularly ill-

intended since that control was designed to cement and extend Google's dominant market position in search engine services.  Google's bad faith is further evidenced by the fact that it never obtained an opinion of counsel suggesting that its use was fair, nor do any of its other internal documents discussing its decision to use the Java platform in any way suggest that it ever believed its use without license and payment was fair.  Google has willfully infringed the copyrights in suit, which protect the Java Platform source code and documentation, as well as the sequence, structure, and organization of the Java API Packages at issue; the evidence of willful infringement demonstrates bad faith.  Oracle summarized its evidence that Google's infringement was willful and in bad faith in its August 20, 2015 Opposition to Motion to Preclude Submission of Willfulness to Jury (ECF Nos. 1299 through 1299-24), Oracle's September 1, 2015 Statement Regarding Willfulness Per ECF No. 1297 (ECF No. 1306), and Appendix A to the Statement Regarding Willfulness (ECF No. 1312).  Oracle directs Google to those submissions.

- Google has earned at least $31 billion dollars in revenue to date on Android through its sales of Android devices, through its licensing revenues earned from Android applications and digital content, and from search engine advertising on the Android platform.  Through all of that commercial activity, Android was dependent upon the Oracle Java API Packages, and yet Google has not taken a license nor paid Oracle a single cent for its commercial use.  It is simply unfair for one party to exploit another's intellectual property with enormous commercial benefit, not take a license for it, and not pay for it.

- Google concedes its use of the Java API Packages is commercial.  Google was desperate to extend its market dominance in search to mobile.  Google intended to make billions off of Android and decided to use Oracle's copyrighted works to get to market as soon as possible while it faced actual and potential competition from Microsoft, Yahoo!, Facebook, Apple and others.  Google's use has continued over time, even after the initiation of this lawsuit and after the Federal Circuit's opinion, to selectively take and use more of Oracle's copyrighted material from the Java API Packages and from newer versions of Java to improve Google's position with developers and in the market, which is a further commercial use.  Google's use of Oracle's Java

API Packages was not for educational, teaching, research, scholarship, criticism, comment, or news reporting purposes.

- Google's use of Oracle's Java API Packages in Android is not transformative. Google copied Oracle's Java declaring code and the structure, sequence and organization thereof and used it for exactly the same purpose as in Java: to provide familiar means to developers of calling upon pre-written packages of software.  Indeed, Google's documents expressly indicate that its purpose was to use code for developers that was "familiar" and "non-jolting."  Google used and uses the copyrighted works in Android to communicate and appeal to an audience of developers, the same purpose that the copyrighted works have been used and are used in Java.

- Oracle's copyrighted work is creative.  Google's "Java guru" explained that designing a package is "a noble and rewarding craft," where "creative[ity]" and "aesthetic[s] matter."  As the courts previously concluded, "of course" this was "creative."

- Google copied at least 7,000 lines of declaring code from Oracle's Java API Packages.  These lines of declaring code represent a substantial portion of the declaring code from those packages Google copied.  Google copied the structure, sequence and organization of the Java API Packages.  This structure, sequence and organization represents a substantial design aspect of the packages Google copied.

- Furthermore, Google copied the only code with any relevance to programmers: the declaring code.  Google was not indiscriminate in its copying, it took "the good stuff from Java." Google took this good stuff because "the alternatives all sucked."  Google copied the code that Google determined would be appealing to the audience of developers.  Google has continued to selectively include even more material from the Java API Packages in its newer versions of Android, and has included in Android even more material from newer versions of Java, selectively taking the material that is most desirable to Google.

- While the importance of Google's use of the Java API Packages is subject to ongoing expert analysis and therefore a complete answer to this interrogatory is premature until the service of expert reports, at present Oracle believes that the Java API Packages copied by

- 22 -

ORACLE'S FIRST SUPPLEMENTAL RESP.
AND OBJ. TO GOOGLE'S SIXTH SET OF
INTERROGATORIES
CV 10-03561 WHA

1  Google are central to Android and that the Android platform is highly dependent upon them. At a
2  minimum, as Google concedes, Android "does not work" without the Java API Packages.

3  • Google's use of Oracle's Java API Packages had a disastrous effect on the market
4  for the Java platform in the mobile and smartphone markets. Android can be characterized as the
5  Java platform plus the Linux operating system. The vast majority of lines of code in Android is
6  not code created by Google. Other companies were working on creating similar software
7  combinations, and Oracle was licensing Java in the mobile and smartphone markets when Google
8  released Android, containing Oracle's copyrighted Java API Packages, free of charge. Without
9  Android, the obvious choice for market participants trying to compete with Apple to create a
10 next-generation software stack for mobile devices would have been the Java platform. With
11 Android, handset manufacturers, wireless carriers, and software vendors had a Java-friendly
12 programming environment without licensing fees. Companies preferred not paying licensing fees
13 that they would have had to pay had they licensed Java from Oracle. In other words, it was "hard
14 to compete with free."

15 • Android's lack of compatibility with Java also impacted the market for Java. By
16 design, Android programs are not compatible with the Java platform. As developers started
17 developing for Android, it damaged the "write once, run anywhere" proposition that is central to
18 Java.

19 • Google's Android platform, which it gives away free of charge, has also
20 negatively impacted other markets where Oracle historically licensed Java or potential markets
21 for Java, as well as existing and potential markets, including the television, set top boxes,
22 automobiles, household appliances, printers, wearable devices, tablets, web browsers, game
23 consoles, media players, tablets, infotainment units, point-of-sale terminals, kiosks, industrial
24 automation systems, kiosks, other embedded device contexts and in connected "Internet of
25 Things" devices.

26 **INTERROGATORY NO. 24:**

27  To the extent you contend that Google may not deduct any expense (or category of

- 23 -

ORACLE'S FIRST SUPPLEMENTAL RESP.
AND OBJ. TO GOOGLE'S SIXTH SET OF
INTERROGATORIES
CV 10-03561 WHA

1  bringing the project under the auspices of Sun's and Oracle's approved OpenJDK licensing
2  structure, namely the GPLv.2 license that Google has refused to take.
3      Sun and Oracle engaged in repeated negotiations with Google, attempting to bring it into
4  compliance. But, Google refused to take a license from Sun or Oracle. Thus, Oracle filed the
5  present lawsuit against Google to enforce its copyrights against Google's unlicensed use of the
6  Java API Packages, and has actively maintained this lawsuit against Google to enforce its
7  copyrights since the case was filed. Oracle is unaware of any party other than Google that is
8  threatening Java compatibility, through widespread copyright infringement, and causing a
9  commercial threat to Oracle and causing injury to the Java ecosystem.
10     Oracle is undertaking a reasonable investigation that will enable it to respond to this
11 Interrogatory and will supplement its response after such reasonable investigation is complete.
12 Pursuant to Federal Rule of Civil Procedure 33(d), Oracle refers Google to the documents bates
13 labeled OAGOOGLE2000153977-157970, OAGOOGLE2000157971-166380.

16 Dated: November 12, 2015

KAREN G. JOHNSON-MCKEWAN
ANNETTE L. HURST
GABRIEL M. RAMSEY
PETER A. BICKS
LISA T. SIMPSON
Orrick, Herrington & Sutcliffe LLP

By: */s/ Gabriel M. Ramsey*
GABRIEL M. RAMSEY
Attorneys for Plaintiff
ORACLE AMERICA, INC.

# PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within-entitled action. My business address is Orrick, Herrington & Sutcliffe LLP, 777 South Figueroa St., Suite 3200, Los Angeles, CA 90017. On November 12, 2015, I served the following document(s):

**ORACLE'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO GOOGLE'S SIXTH SET OF INTERROGATORIES**

on the interested parties in this action by electronic service [Fed. Rule Civ. Proc. 5(b)] by electronically mailing a true and correct copy, pursuant to Google's counsel's email dated August 24, 2015, to the following listserv:

DALVIK-KVN@kvn.com

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

Executed on November 12, 2015 at Los Angeles, California

*/s/   Alyssa M. Caridis*
**Alyssa M. Caridis**