Pages 1 - 44

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
ORACLE AMERICA, INC.,          )
                               )
          Plaintiff,           )
                               ) NO. C 10-03561 WHA
   vs.                         )
                               )
GOOGLE INC.,                   )
                               )
          Defendant.           )
_____)
```

San Francisco, California
Tuesday, February 2, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff Oracle America, Inc.:
                    Orrick, Herrington & Sutcliffe LLP
                    The Orrick Building
                    405 Howard Street
                    San Francisco, CA  94105
                    1 (415) 773-5700
                    1 (415) 773-5759 (fax)
              **BY:  ANNETTE L. HURST**
                    **NATHAN SHAFFER**

For Plaintiff Oracle America, Inc.:
                    Oracle Corporation
                    500 Oracle Parkway M/S 5op768
                    Redwood Shores, CA  94065
                    (650) 506-0970
                    (650) 506-7114 (fax)
              **BY:  RUCHIKA AGRAWAL**

Reported By:  Lydia Zinn, CSR No. 9223, Official Reporter

**APPEARANCES**:

For Plaintiff Oracle America, Inc.:
                          Oracle USA, Inc. Legal Department
                          500 Oracle Parkway
                          Redwood Shores, CA  94065
                          (650) 506-0563
                   BY:  **DEBORAH KAY MILLER**

For Defendant Google, Inc.:
                          Keker & Van Nest
                          633 Battery Street
                          San Francisco, California  94111-1809
                          (415) 391-5400
                          (415) 397-7188 (fax)
                   BY:  **EUGENE MORRIS PAIGE**
                        **CHRISTA MARTINE ANDERSON**
                        **MATTHIAS ANDREAS KAMBER**

 1  Tuesday - February 2, 2016                          10:58 a.m.

 2                      **P R O C E E D I N G S**

 3                          ---o0o---

 4          **THE COURT:**  Be seated.

 5          **THE CLERK:**  Okay.  Calling Civil Action Number

 6  10-3561, Oracle America versus Google.  A hearing for a motion

 7  to strike is now on.  Counsel, can you please state your

 8  appearances for the record?

 9          **MS. HURST:**  Good morning, Your Honor.  Annette Hurst,

10  for Oracle.

11          **MS. ANDERSON:**  Good morning, Your Honor.

12  Christa Anderson, Gene Paige, Matthias Kamber, on behalf of

13  Google.

14          **THE COURT:**  Thank you.  Welcome.

15          **MS. ANDERSON:**  Thank you.

16          **THE COURT:**  Google has a motion, so go ahead.

17          **MR. PAIGE:**  Thank you, Your Honor.  Good morning.

18  And thank you for seeing us on this motion.

19      Your Honor, this is a limited retrial of a case that was

20  already tried to verdict on some issues.  And the cases that

21  Oracle cites in its brief are pleading cases relating to cases

22  that just started:  Complaints, 12(b)(6) motions.

23      That's not what we have here.  What we have here is a

24  remand from a trial in which there was a finding of copying,

25  although not a finding on fair use.  So no finding of

infringement as of yet as to Java 1.4 and Java 5 SE.  Those
were the -- those were the copyrighted works that were put into
the jury charge by the Court with Oracle's consent.  Java SE 6
was actually introduced into evidence at the first trial.  Both
the source code and the copyright registration were in
evidence, but they asked for a verdict on 1.4 and 5, and that's
what they got.

Now, when Oracle came here in July to discuss the shape of
the case on this retrial, they said to you, *We're going to try
fair use, we're going to try willfulness* -- we didn't agree
with that, but that was their position -- *and we're going to
try damages*; nothing about infringement of new works.

Now Oracle suggests now that it didn't know about
additional alleged infringement, but these works have been out
there for years.  Again, Java 6 was in the first trial;
introduced into evidence.  Java 7 came out in 2011, before the
first trial.  The materials they claim are infringing were
coming out as early as 2010, 2011; again, before the first
trial.  Oracle never said they'd discovered this new
infringement.

And when it then decided sometime in this case that it
discovered new infringement, it didn't come to the Court, it
didn't come to us and say, *It turns out we were wrong when we
said that no new works were identified in this Complaint* -- the
Supplemental Complaint.  *We actually have new works*, *Java SE 6*

1   *and Java SE 7, that are infringed.*

2       Instead what they did was start putting in a pleading on

3   November the 9th, saying that they're going to have something

4   that involves later editions of the Java SE platform.  And we

5   saw that.  And we wrote to them right away and we said, you

6   know, *What are you talking about?  This is not about Java 6.*

7   *This is not about Java 7.  This is about later versions of*

8   *Android against the things that were found to have been copied*

9   *in the first trial:  Java SE 1.4, and Java SE 5.*

10      And their response was just to say, *Well, you'll see it in*

11  *our expert reports.*

12      So, you know, this just came out in discovery; well

13  towards the end of discovery.  And there was never any sort of

14  suggestion that we would have a second infringement trial here.

15      Oracle's just telling you now that, *Well, when we said*

16  *'copyrights' in the Supplemental Complaint, we meant to include*

17  *the copyrights on Java SE 6 and Java SE 7.*

18      Of course, that's not what they said at the time.  They

19  said, *No new works are identified.*

20      And, of course, the language in the Amended Complaint in

21  October 2010 said "copyrights" in the Java platform --

22  plural -- because there are copyrights in the case.  There's

23  copyrights for Java 1.4.  There are copyrights for Java SE 5.

24      Now, this is a recipe for jury confusion.  The jury's

25  going to be told that as to 1.4 and 5, they don't need to

1  consider issues of infringement.  That's already been

2  determined by the first trial.  Instead, they're going to focus

3  on questions of fair use.

4       But as to Java SE 6 and Java SE 7, if they were allowed in

5  the case at this point, the jury would then be told, *Well, you*

6  *have to determine whether those are infringed*.  And the

7  infringement determination will require a comparison of the

8  works as a whole.  And, as Oracle itself says, there have been

9  things added to both Java and to Android over time.  So the

10 works as a whole are different than SE 5 -- SE 1.4 and SE 5.

11 And Google has a right to have the jury decide whether those

12 new works -- SE 6 and SE 7 -- are substantially similar to the

13 Android platform.

14      Now, the jury's going to be confused by this.  The jury is

15 also going to perhaps draw an adverse inference against Google.

16 Google's going to be in the position of having to explain why

17 it is that something that looks much the same, that a first

18 jury has already decided on, should be given due consideration

19 that you're entitled to in the question of copyright

20 infringement.

21      And then as to discovery we also have issues because, as

22 Your Honor might recall, when they asserted infringement of the

23 Java platform the first time around, they started out with 51

24 APIs that were allegedly infringed.  By the time we got to

25 trial, there were 37 of those APIs.

1      Why?

2      Because 14 of those APIs that are in the Java platform on

3  which they allegedly hold copyrights are APIs that Oracle does

4  not own; are APIs enforceable only by other entities, other

5  people.  So those 14 dropped out.  We don't know how many of

6  these new ones in Java SE 6 and Java SE 7 that were just

7  revealed in the expert reports on January 8th may, in fact, be

8  owned or enforceable by someone else only.

9      Now Oracle claims that Java SE 6 and 7 is relevant to fair

10  use, but it cites no cases suggesting that fair use is about a

11  work other than the infringed work.  And the infringed work at

12  this point is Java SE 5 -- 1.4 and SE 5; not 6 and 7.

13      Oracle claims that 6 and 7 are relevant to willfulness;

14  but as Your Honor knows, willfulness is something that's only

15  going to come in, if at all, in the second phase of the trial.

16  It's not something that we need to have in the first phase of

17  the trial at all.

18      Oracle claims that Java SE 6 and 7 are relevant to

19  equitable defenses, saying that because we didn't stop using

20  this right away after suit, somehow equitable defenses are

21  barred.  Well, we're still using whatever is in 1.4 and 5, as

22  well.  So that's no different for SE 6 and 7 than it is for 1.4

23  and 5.

24      And it can't explain why SE 6 and 7 would matter to the

25  trial of the case, in terms of remedies.  There's nothing in

```
1   their damages theory that suggests that 6 and 7 are somehow
2   different.  What they're saying is that the use of the 37 APIs
3   way back when is what caused them damage; not any particular
4   difference with respect to 6 and 7.  That's nothing in the
5   damages theory, so it's not a remedies question, either.
6        Unless the Court has any more questions -- or has any
7   questions, that's --
8        THE COURT:  Not yet.
9        Let's hear from the other side.
10       MR. PAIGE:  Thank you, Your Honor.
11       MS. HURST:  Good morning, Your Honor.
12       To be clear, what's been included in Oracle's expert
13  reports are only new infringement since the time of the last
14  verdict of Java 6 and 7.  So it's not in any way seeking to go
15  behind the earlier verdict to assert --
16       THE COURT:  But there's never been any jury finding
17  that 6 and 7 were infringed.
18       MS. HURST:  Certainly, Your Honor.  And the
19  Supplemental Complaint pleads an infringement claim.
20       THE COURT:  Yeah, but you said that there were not
21  going to be any new works.
22       MS. HURST:  Your Honor --
23       THE COURT:  Now you're -- wait.
24       MS. HURST:  I apologize.
25       THE COURT:  Please don't interrupt the Judge.  Have
```

 1  some respect.

 2          **MS. HURST:**  I apologize, Your Honor.

 3          **THE COURT:**  You told me there would be no new works.

 4  That turns out to be untrue.  Now you have you want to have an

 5  infringement trial where we ask the jury to decide whether 6

 6  and 7 have been infringed.  That's only way to get to where you

 7  want to be.  True?

 8          **MS. HURST:**  Your Honor, when I was here on July 30th,

 9  Oracle had no idea that Google had added new material from

10  Java 6 and 7 in the later versions of Android.  We had no idea,

11  Your Honor.

12          **THE COURT:**  Well, maybe we have a --

13      You know, I mean, let me --

14      There's a much cleaner way to deal with this.  We can roll

15  back the clock to the moment that that trial took place, and

16  try it on that set of facts and the circumstances then.  And

17  then all these new products by you and these new products by

18  Google would not be in play.

19      And what that means is, over there on the Google side,

20  that you're going to have to face another lawsuit downstream,

21  because it would not be fair for Google to say, *Oh, you can put*

22  *in* --

23      What are the names of -- all those ridiculous names?

24  Winterhaven or something.  I don't remember, but they all have

25  a --

1    You can't put those in play, your own products in play --

2  that's what you want to do -- and then limit them to just the

3  two:  That 1.4 and 5.0.  That's what you want to get away with

4  on your side, so that they don't get to use 6 and 7 anymore,

5  but we can just subtract them out of the case, too.

6    And we'll find out what should have happened on the

7  original trial, with the way the Federal Circuit say it should

8  have come down.  And then we'll have a -- there will still be a

9  huge trial, but we'll have a somewhat simpler thing, rather

10  than the God-awful multiplication of issues that Ms. Hurst

11  wants to foist onto the jury.

12    That's where I'm headed, is that we're going to roll back

13  the clock, and we're not going to do any of this new stuff.

14  We're going to go back to Day One.

15    So I'm going to give you both a chance to talk me out of

16  this.  Go ahead.

17        **MS. HURST:**  Your Honor, the --

18        **THE COURT:**  I think I was had.  I think I was misled

19  on the --

20    You may not have known, but you should have known.  And if

21  you didn't know, you shouldn't have made that representation to

22  me.  And then you tried to sneak it by them; sneak it by me,

23  too.  That's the way it looks.

24        **MS. HURST:**  Your Honor, I absolutely want to assure

25  the Court a thousand percent that that is not what happened.

```
 1          THE COURT:  Why don't you stand by what you told me,
 2   and say, Okay, Judge.  I made a mistake.  I told you that 6 and
 3   7 were not going to be in the case, and now I want to put them
 4   in the case; but since I have misrepresented something to you,
 5   Judge, I'm going to take it back.  We don't want that in the
 6   case after all.  That's the honorable thing to do.  That's what
 7   you should be doing.
 8          MS. HURST:  Your Honor, at the time we came here in
 9   July, Oracle had no idea.
10          THE COURT:  You said that a while ago.
11          MS. HURST:  I just want to assure you.
12          THE COURT:  You should have known.  These products
13   are out there on the market.  You could have reverse
14   engineered, and figured it out.
15          MS. HURST:  Your Honor, may I have a moment to
16   consult with Oracle regarding the Court's inquiry?
17          THE COURT:  You may have about five minutes.
18      But I want to say something to Google.  I know what you're
19   trying to get away with.  What are the names?  Come up here and
20   tell me what the names of all of those follow-on products are
21   that they always -- like Popsicle, and things.  What are those
22   names?
23          MR. PAIGE:  The new ones, Your Honor, are
24   Gingerbread, Ice Cream Sandwich, Jelly Bean, KitKat, Lollipop,
25   and Marshmallow.
```

```
 1          THE COURT:  All right.  So if we go down this path,

 2   you're going to have to litigate all of that later.  You're not

 3   going to get away with just having them -- the 1.4, and you

 4   roll that into just those two.  See, that's what you want to

 5   do.  You're perfectly happy to have the subsequent Google

 6   products go to trial, because you want to get immunized from 6

 7   and 7.

 8          MR. PAIGE:  Well, Your Honor, I mean the Supplemental

 9   Complaint was filed by Oracle seeking to bring those new

10   products into the case for, presumably, damages purposes.  They

11   didn't want to say that, you know, a new phone's being sold --

12          THE COURT:  Here's the other thing.  If I go down

13   that path and you lose, I am going to enjoin all of those other

14   products, anyway, because I'm going to assume -- me, as the

15   equitable Judge.  I don't have -- I can say, *Look.  You don't*

16   *get the right to* --

17       If they find infringement back on Day One, way back

18   then -- the jury -- then I'm going to put the burden on you to

19   show that those follow-on products are somehow so dramatically

20   different, that they should not be enjoined.

21       Now that's assuming that the product -- the requirements

22   for an injunction would be met:  Public interest, and all of

23   that.  I would have to go through that process, but I would not

24   want you to think for a moment that if we take those

25   Gingerbread plus out, that you're going to be immunized on an
```

1    injunction from those products.  That would not be necessarily

2    the way it would come down.

3        But my basic view here is:  You two have multiplied this

4    case.  It's going to be so hard for a jury to understand, to

5    begin with.  And now you want to start rolling in brand-new

6    infringement, brand-new -- putting all these additional things

7    in, making it so complicated.

8        I think we out to just go back to Day One.  And then the

9    day will eventually come where Ms. Hurst gets to try the case

10   all over again.  She might win on this one.  She might lose on

11   this one.

12       Let's say that it turns out that the jury goes for fair

13   use.  Will that somehow be *res judicata*?  I don't know.  Maybe

14   you have to go through the gauntlet twice over there on the

15   Google side.  I'm not going to decide that now.

16           **MR. PAIGE:**  Understood, Your Honor.  And --

17           **THE COURT:**  Your partner here wants to --

18           **MS. ANDERSON:**  May I?

19           **THE COURT:**  -- tell you that maybe you're in trouble.

20   What would you like to say?

21           **MS. ANDERSON:**  No, not at all.  Mr. Paige is not in

22   trouble, at all.

23       I just wanted to add a point, Your Honor, for Your Honor's

24   consideration.  I think that Google has tried really hard

25   throughout the management of this retrial to try to make things

1   work smoothly in the limited amount of time we had available.

2       And a big difference between the addition of these new

3   versions of Android and the attempt by Oracle to add in new

4   copyrighted works at the last minute is that from the inception

5   we have been willing to and have offered to stipulate that the

6   same aspects of those 37 Java APIs that were found to be used

7   in the first trial continue to be used in the newer version, so

8   it would not interrupt the trial of the case, so it would not

9   be confusing, so it would be smooth and understandable.   And

10   that is how we were able to manage, we thought, this very short

11   time frame.

12       **THE COURT:**   That's a generous step forward.   Okay.

13   So then you would be stuck with that.

14       But are you trying to say, then, that --

15       Let's say that you somehow won -- okay? -- at trial.   And

16   then they want to sue you on 7.0 for the very same products.

17   Would you then say, *Oh, no.  You can't do that.  That's -- you*

18   *had your chance, and you blew it*?

19       **MS. ANDERSON:**   Well, Your Honor, if -- if Oracle is

20   not allowed in this retrial to add in new copyrighted works,

21   which we believe they should not be allowed to -- and we're not

22   talking about Java 6, which we believe there is a clear waiver

23   on.

24       **THE COURT:**   Let's just stick with 7.

25       **MS. ANDERSON:**   Just talk about 7.   I mean, if Oracle

1 has the grounds to file a suit and they elect to do so, it

2 would happen in another case.  And that other case would have

3 its own considerations.  And if they asserted against the newer

4 versions --

5       **THE COURT:**  But are you going to somehow think:  *Oh,*

6 *well, we don't -- it's res judicata.  They should have asserted*

7 *that in the old case.  And they now can't go back and try two*

8 *bites at the apple*?

9       **MS. ANDERSON:**  I don't think it would be reasonable

10 if we were here telling Your Honor that they should not be

11 allowed to try Java 7 in this case; that we could then turn

12 around and say, you know, they're absolutely barred from

13 asserting Java 7.

14    That said, I don't know what the verdict will be in this

15 case.  And if there is an issue that somehow creates some kind

16 of estoppel effect in another litigation based on a result that

17 hasn't happened yet that we don't know, I certainly don't think

18 Google is foreclosed from raising that; but clearly we are

19 saying to Your Honor it's not fair at the last minute at the

20 end of discovery to go back on Oracle's word and say, *When we*

21 *said we weren't putting in new works, we really are, and we*

22 *want to make this trial a hodgepodge between something that had*

23 *been tried before, and something that hasn't been*.

24       **THE COURT:**  All right.  So let me make sure that I'll

25 modify -- I don't know if I should even modify this.

1     My initial inclination is not to put Gingerbread and all

2 of that into it at all, because that is not where we were with

3 the old jury.  I want to go back to the day and the moment that

4 the jury returned a verdict and pick it up the way it would

5 have gone down based on what the Federal Circuit decided that

6 would have been back then, with none of this new information.

7     To me that's the straightforward, even though complicated,

8 way to go.

9     Now, what I've -- the way I read your pleading was that

10 you're willing to roll in, for damages purposes, these five

11 subsequent products on the Google side, and litigate those as

12 to 1.4 and 5.0, but leave yourself open to a subsequent case

13 for 7.0.

14         **MS. ANDERSON:**   If Oracle believes that they have the

15 right to file that suit, then we realize that by taking this

16 position before Your Honor, that that is a possibility; but the

17 point is that there are -- there are defenses to copyright

18 infringement that have never been tried, and analyses of

19 whether or not there is a use that would constitute and fall

20 within copyright infringement that never happened in Trial One.

21         **THE COURT:**  I'm sorry.  Wait.  I didn't follow what

22 you said.

23         **MS. ANDERSON:**  Sure.

24         **THE COURT:**  Perfectly fine.  I just was back on a

25 prior sentence.  Say that last sentence again.  There were some

1   things --

2           **MS. ANDERSON:**  Right.  I apologize.

3           **THE COURT:**  There was something in the trial that --

4       Go ahead.

5           **MS. ANDERSON:**  Sure.  I apologize.  I won't do it

6   perfectly, but the last trial, Your Honor, there was a jury

7   verdict; a finding of use of the copyrighted works that the

8   jury felt constituted infringement.  And they checked that box

9   on two copyrighted works.  They made an analysis under Your

10  Honor's instructions that they felt it satisfied that standard.

11      That has never happened with respect to Java 7.

12          **THE COURT:**  I agree with that point.  Where does that

13  get you?

14          **MS. ANDERSON:**  Well, the difference that we're trying

15  to present to the Court here is that it's one thing when Oracle

16  said up front, *We're adding the new versions of Android*, and we

17  said up front, *Fine*.  You know, we'll stipulate that they are

18  using the same method headers that were tried in the first

19  case, so that becomes a nonissue for trial.  It's the same.  It

20  smoothly resolves these issues in one fell swoop.

21      But we realize that if Java 7 is excluded from this case

22  for an infringement-analysis purpose, then we -- obviously, if

23  Oracle has bases to sue on the other one, we'll obviously have

24  to deal with that at a later point.  But it's unfair to

25  prejudice the defendant from ever having a chance to have that

1  jury-verdict analysis on Java 7 in a way that wouldn't

2  prejudice Google, by having presented to the jury a hodgepodge

3  case, part of which is a retrial, part of which is supposedly a

4  new trial, which clearly would be influenced by the resolution

5  of the first trial.  And they would have instructions in that

6  regard.  And it would create a very difficult trial, from our

7  perspective, from the perspective of fairness.

8          **THE COURT:**  All right.  You wanted to go and talk to

9  your client for a moment, so why don't you do that?  Both sides

10  can do that if they want.

11         **MS. HURST:**  Thank you, Your Honor.

12         **MS. ANDERSON:**  Thank you, Your Honor.

13         **THE COURT:**  I'll just sit right here and wait.

14  (Pause in proceedings.)

15         **THE COURT:**  All right.  You want to resume?  What

16  would you like to say?

17         **MS. HURST:**  Thank you, Your Honor.

18     I would -- Oracle is willing to reserve its new claims for

19  infringement of 6 and 7.

20     I would like an opportunity to explain to the Court that

21  we did not in any way intend to mislead the court when we were

22  here in July.  Your Honor, we absolutely did not know that

23  there had been expanded infringement of 6 and 7.  We did

24  actually try to reach a stipulation.  That was the first thing

25  that Oracle did.  We sent a proposed stipulation.  And

1   unfortunately, Google -- it took them about a month to consider

2   it.  And in the meantime, we decided we had to go forward with

3   the code comparison.  And it was not until we undertook that

4   entirely new and complete code comparison in September and

5   October that Oracle learned of this.

6       We also thought we would proceed by stipulation,

7   Your Honor.  The problem was both that it took a long time for

8   them to respond, and that when they got back to us, the answer

9   was to limit the case in a way that we felt was unwarranted by

10  the Federal Circuit's decision.

11      So, Your Honor, it wasn't until we uncovered the evidence

12  in October really that we understood about this.  And then we

13  immediately answered in interrogatories that that was present,

14  but we did not give the total line-by-line comparisons until

15  the time of expert reports.  That was when we made a complete

16  disclosure.  We made a disclosure to them as soon as we knew

17  about this in discovery -- in fact discovery -- and then gave

18  them a complete disclosure in the expert reports on

19  January 8th.

20      So, Your Honor, I just want to assure the Court that this

21  was not something that Oracle knew when we came here in July.

22      We do think it would be important, Your Honor, for the

23  case to continue with Gingerbread through Marshmallow, as was

24  originally contemplated by the Supplemental Complaint; and that

25  that would be the fair and appropriate way to proceed with

1   respect to fair use and the other issues, Your Honor, resulting

2   in less duplication and confusion; but Oracle is willing to

3   reserve 6 and 7 if that is the Court's Order.

4          **THE COURT:**  Well, 6 there's an issue on, because it

5   was introduced at trial on there; but 7 I don't -- seems to me

6   you should be allowed to reserve on 7, because you can't be

7   denied your day in court on 7.  And maybe even on 6 you could

8   resurrect that one.  I don't know.  That's a different slightly

9   different issue.  So all right.  That's where I'm tentatively

10  headed.

11      Anything on your side you want to say?

12         **MS. ANDERSON:**  No, Your Honor.  I would just say that

13  I do hope parties can work to resolve that stip., because we

14  think it is important and helpful.  We did send our draft in

15  October, so we're ready to do it; to get the newer versions

16  cleaned up.

17         **THE COURT:**  All right.  Now I want to go to another

18  thing.  I -- that you all are bombarding me with.  I don't

19  intend to entertain summary-judgment motions and dispositive

20  motions.  Whose idea was that?

21      We had the Federal Circuit order me to give you a trial.

22  I'm going to give the trial.  And if the evidence shows that

23  Rule 50 should be granted at the end of the trial, okay.  I can

24  do that on the evidence at trial.

25      But you're trying to bombard me with a bunch of a

1  summary-judgment motions ahead of time.  This is not the way

2  we're going to do it.

3      The mistake got made because I was led into error at

4  trial.  So we're going to go right back to where we were, and

5  we're going to resume there.  But we're not going to go into a

6  bunch of summary-judgment motions.

7      Now, who was it that wanted the summary-judgment motions?

8          **MS. HURST:**  Your Honor, it was us.  We wanted to get

9  the equitable estoppel and laches issues resolved, if possible.

10         **THE COURT:**  You think I can do that on summary

11  judgment?

12         **MS. HURST:**  Yes, Your Honor, because based on the

13  findings by the prior jury and the Court's prior findings, and

14  the fact that no new evidence in support of those defenses

15  arose during this most recent fact discovery period, we thought

16  it would be appropriate for the Court to dispose of it before

17  trial.

18         **THE COURT:**  Well, I let that go to the jury before;

19  didn't I?

20         **MS. HURST:**  No, Your Honor.  There was an advisory

21  verdict.  It is for the Court.  And the advisory verdict was

22  against --

23         **THE COURT:**  Well, why can't I just let the jury hear

24  all of that?  What's wrong with that?

25         **MS. HURST:**  Well, Your Honor, there would be a

```
 1   Seventh Amendment issue in allowing a second jury to reëxamine
 2   those defenses, particularly when there's no new evidence that
 3   would entitle Google to relief.  In a --
 4        THE COURT:  Let me understand.  What's the harm in
 5   letting the jury hear it?  The jury's going to hear it.  The
 6   Seventh Amendment is satisfied if the jury decides the issues
 7   that are jury issues.  And if this is an issue for me to
 8   decide, I could decide that.
 9        MS. HURST:  Well, Your Honor, it injects the issue of
10   this quasi-license defense, which is confusing and prejudicial
11   to Oracle.  There is no license.  And the prior jury found that
12   there was no reliance that would satisfy.
13     And it's also confusing -- prejudicial to Oracle --
14   because the Supreme Court, in the meantime, has adopted a
15   standard for laches which makes absolutely clear that laches
16   could not possibly obtain here.  So for the jury to hear
17   evidence on defenses that, by definition, Google is not
18   entitled to is prejudicial -- unduly prejudicial to Oracle.
19     And it's also the undue consumption of time, Your Honor.
20   We have only two weeks for this trial.  There's an undue
21   consumption of time.  And you have evidence coming in under a
22   relevance standard, Your Honor, that should not otherwise be
23   available to Google.
24        THE COURT:  All right.  What do you have to say?
25        MS. ANDERSON:  Oh, I was just going to add,
```

1  Your Honor, that -- that almost exclusively the evidence that

2  Your Honor will be hearing relates to these equitable defenses

3  that Your Honor will decide are going to be introduced, we

4  believe, as part of the fair-use trial in any event.  It's not

5  going to be a loss of time.

6          **THE COURT:**  Has somebody listed what these items in

7  dispute are, or is this just another one of these big-firm,

8  abstract, hypothetical exercises where, when you really get

9  down to it, there's only one or two items in dispute?

10     I mean, this -- it's so hard on the poor Judge to try to

11 figure this out.  Give me the actual document number or witness

12 testimony that's going to be -- that's in dispute between the

13 two of you.

14         **MS. ANDERSON:**  Well, for the equitable defenses in

15 their entirety?

16         **THE COURT:**  Yeah.  Give me an item that you think --

17     Well, let me put the burden on Ms. Hurst.  Give me an item

18 of evidence that you think they're going to want to put into

19 evidence that you think should not be heard by the jury.

20         **MS. HURST:**  Yes.  I would say --

21         **THE COURT:**  A real item of evidence.

22         **MS. HURST:**  -- two things, Your Honor, at a minimum.

23     First --

24         **THE COURT:**  Okay.

25         **MS. HURST:**  -- the Schwartz blog, which the Court

1   carefully considered and almost excluded the last time around.

2       Second, all of the stuff about Apache Harmony.

3   Your Honor.

4           **THE COURT:**  What?

5           **MS. HURST:**  Apache Harmony, the nonprofit foundation

6   that, you know, tried to do a Java implementation.

7       All of that stuff is related to their equitable defenses.

8       And we believe the relevant and prejudice standard for

9   fair use would be very different on those items.

10          **THE COURT:**  All right.  So what's the name of that

11  guy?  Schwartz?

12          **MS. HURST:**  Schwartz.

13          **THE COURT:**  All right.  What do you see to the

14  Schwartz blog?

15          **MS. ANDERSON:**  Well, Your Honor, working just from

16  memory here, but the Schwartz blog is an official statement of

17  Sun.  In fact, they announced it publicly.  Your Honor made the

18  right decision in letting it in the first time.  It should come

19  in this time.  It's relevant to various --

20          **THE COURT:**  Did you prove that I almost didn't let it

21  in?  I don't remember that anymore.

22          **MS. ANDERSON:**  Yes, Your Honor.  His statements --

23          **THE COURT:**  So I almost didn't let it in?

24          **MS. ANDERSON:**  I don't remember whether there was --

25  I don't remember off the top of my head if there was a debate,

1    but I do remember there was ample testimony about Mr. Schwartz

2    and his statements on his official blog.

3            **THE COURT:**  Well, I remember the testimony.  Yes, I

4    do.

5       But Ms. Hurst said that I almost excluded it.

6           **MS. ANDERSON:**  I don't recall that, Your Honor, off

7    the top of my head.  I'd have to check.

8            **THE COURT:**  I don't remember it well enough to tell

9    you whether I did or not.  All right.  I do remember the

10   evidence, and it was something to the effect of how great

11   Android was.

12          **MS. ANDERSON:**  Exactly.  Welcoming, applauding it.

13           **THE COURT:**  Why shouldn't be that be part of the

14   fair-use consideration?

15          **MS. HURST:**  It has no relevance to any of the four

16   factors of fair use, Your Honor.

17          **THE COURT:**  Which factor does it relate to?

18          **MS. ANDERSON:**  It's relevant to the core of the test:

19   Is it reasonable under the circumstances?

20     It certainly was.  Not only was it reasonable in the way

21   that APIs are used in this industry; but Sun, itself,

22   immediately upon its release said, *It's not just reasonable.*

23   *It's great.  Thank you for releasing this.*

24          **THE COURT:**  Well, which of the four factors does it

25   tie into?

1        **MS. ANDERSON:**  Well, the nature and --

2     I don't have a four in front of me.

3     The nature and character of the use, first off.  I mean,

4  we have a history here.

5     Oh, thank you for the factors here.

6     Purpose and character of the use -- my apologies -- is the

7  first one.

8     And remember that the core of the test here is:  Is it

9  reasonable under the circumstances?  That is the core of the

10 test.

11        **THE COURT:**  Did the Court of Appeal -- did the

12 Federal Circuit rule that it agreed with Mr. Hurst, and say

13 *That should not come into evidence*?

14        **MS. ANDERSON:**  Not ruled upon by the Federal Circuit,

15 Your Honor.  I have no -- in fact, it wasn't an issue appealed

16 by Oracle.  And this is a matter where --

17        **THE COURT:**  The fair use was appealed?

18        **MS. ANDERSON:**  Right, but in terms of evidentiary --

19        **THE COURT:**  They set out what the standard was.

20        **MS. ANDERSON:**  Indeed, Your Honor, in terms of

21 challenging your -- I don't recall.  I would be happy to double

22 check.  I don't recall anything in the Federal Circuit opinion

23 reflecting the fact that Oracle challenged Your Honor's

24 evidentiary ruling concerning Mr. Schwartz's testimony or

25 statements.  I don't remember that being a subject.  I would be

1  happy to double check that for the Court, though.

2     But the bottom line here is both things -- Mr. Schwartz's

3  statements, including on his blog, which was the official

4  corporate statement of Sun, applauding Android.  For years he

5  did this.  And --

6          **THE COURT:**  So why doesn't that show transformative?

7  Isn't that one of the factors?

8          **MS. ANDERSON:**  Absolutely.  It's part of that, as

9  well, Your Honor.

10         **THE COURT:**  From that, couldn't the jury say that

11  somebody important at Sun, speaking on behalf of Sun, said

12  words that were close to saying it was transformative?  Why

13  isn't that -- why isn't that relevant?

14         **MS. HURST:**  Your Honor, that is directly within the

15  scope of where the Federal Circuit did carve back on Google's

16  case.  If there was one thing the Federal Circuit said about

17  fair use, it said that Google overreached in its claims that

18  there were transformativity, or whatever is the right word

19  here, and compatibility.  And, Your Honor, it would not be

20  appropriate, in light of the Federal Circuit's ruling, to take

21  a blog as some kind of evidence of transformation, which, in

22  any event, would be objective.

23         **THE COURT:**  It's a blog by your client.  You're -- by

24  Sun at the time.  Right?

25         **MS. HURST:**  Your Honor, it is.  And -- but the

content of that does not show transformation, especially when

one considers the timing of the blog post, which was just after

the announcement of the platform, and long before it had been

completed, implemented in products, and the market effects were

known.

**THE COURT:**  All right.  What's your answer on the

Apache thing, Ms. Anderson?

**MS. ANDERSON:**  Yes, Your Honor.  The other item of

evidence that Oracle cites is the Apache Harmony.  And the

reason that Oracle cites this is because -- and the reason that

Google has pointed to this in evidence, last trial, among other

things, is this is evidence of commercial use; that, you know,

one of Oracle's arguments here is that what Google did wasn't

fair and wasn't a fair use, because it was a commercial use of

admittedly free method headers that Oracle/Sun distributed for

free under OpenJDK.  And they've argued that what Google did

wasn't fair use because it was commercial.

And we say no.  In fact, Sun/Oracle applauded the

commercial uses by a host of organizations, which will be cited

in evidence -- and they are part of our expert reports in this

case -- that include Apache Harmony.  And so that was one of

the pieces --

**THE COURT:**  How do you get around --

Ms. Hurst says that the Federal Circuit took Google to

task on fair use for having overreached.

1      **MS. ANDERSON:**  Well, actually, I'm looking at the

2   Federal Circuit opinion here.  And --

3      **THE COURT:**  I got it right here.

4      **MS. ANDERSON:**  Yeah.  Just --

5      **THE COURT:**  What page should I look at?

6      **MS. ANDERSON:**  Well, just at the very beginning.  I'm

7   looking at -- my thing says -- it looks like it's page 17.

8   Hold on.  Ah.  Star 7.  Let's see.  Right before.  Right before

9   the full copyrightability discussion, where the Court's kind of

10  summarizing its opinion.

11      **THE COURT:**  What -- what -- all right.

12      **MS. ANDERSON:**  And I can't really tell from my copy

13  here what is the official page, but in the book that I believe

14  this came from, it was page 17.

15      **THE COURT:**  Well, help me find the part, Ms. Hurst --

16  I got the opinion right here -- where Google got taken to task.

17  I want to read that right now.

18      **MS. HURST:**  One moment, Your Honor.

19      **THE COURT:**  Okay.  So I'm at page 1,374.  So just

20  tell me the paragraph you think that's most on point.  I'll

21  read it out loud.

22      **MS. ANDERSON:**  Your Honor, because my pagination --

23  I'm under the section entitled "B.  Fair Use."  Is that

24  approximately where Your Honor's pointing to?

25      **THE COURT:**  Yeah.  That's where I am.

1          **MS. ANDERSON:**   Thank you.

2          **THE COURT:**   I'm looking for the paragraph that

3    Ms. Hurst says took Google to task.   And maybe there is one,

4    but let's focus on that paragraph.   And then I'll have some

5    follow-up questions.

6          **MS. HURST:**   Your Honor, I'm looking at page 60 of the

7    slip opinion, which is well into the fair-use discussion.

8        There's a paragraph at the end of the Court's setting out

9    of the legal standard that begins with the phrase, "On balance,

10   we find that due respect for the limit of our appellate

11   functions requires that we remand the fair-use question for a

12   new trial."

13       Later in that paragraph, Your Honor, the Court says,

14   "While Google overstates what activities can be deemed

15   transformative, under a correct application of the law, we

16   cannot say there are no material facts in dispute on question

17   of whether Google's use is transformative under a correct

18   reading of the law."

19          **THE COURT:**   Okay.

20          **MS. HURST:**   That was the overreaching, or actually,

21   to use the precise words of the Federal Circuit,

22   "overstatement" that I was referring to.

23          **THE COURT:**   All right.   So now can we divine what

24   they had in mind -- what the overstatement was -- by going back

25   and looking at the briefs?

1          I mean, in other words, if Apache was --

2          I don't know.  I mean, how do I know that they meant

3     Apache here?  Were you all at the oral argument?  Maybe it came

4     up at the oral argument.

5          **MS. ANDERSON:**  Your Honor, I think that it's not

6     clear from the opinion for sure, but I do think the essence of

7     the opinion by the Federal Circuit on the fair-use question is

8     the Court didn't think there was a sufficient record, and

9     remanded back to this Court for further consideration.

10         And -- and certainly the question of Apache Harmony and

11    the fact that there are a number of commercial applications of

12    use of the free Java APIs made available through OpenJDK is

13    part of the evidence for fair use.  And it certainly isn't

14    limited merely to the subject of transformation.

15         And so here we have a piece of evidence -- one of really

16    many, because, as the Court may remember, the parties submitted

17    findings of fact associated with these equitable defenses

18    around the time of the last trial.

19         **THE COURT:**  Wait a second.  I have a --

20         All right.  Finish your point.  I'll come back to it.

21         **MS. ANDERSON:**  I guess the point here is that trying

22    to come back to where we were on the question of whether or not

23    this was somehow -- burdened the trial in some way -- these

24    factors overlap very, very significantly with issues that

25    relate to estoppel, with issues that relate to laches.  And

1  there's nothing inefficient about the Court hearing live

2  testimony about them to make its decision.  And the Court may

3  never have to decide equitable defenses, at all, if the jury

4  finds fair use.

5      **THE COURT:**  Why, Ms. Hurst -- why shouldn't we

6  proceed by motion *in limine*, as opposed to summary judgment?  I

7  don't want to decide these equitable defenses on summary

8  judgment, and where -- that would be a whole new round of --

9      No.  We're not going to do that.  I'm just going to tell

10 you now we're not going to have summary-judgment motions.  And

11 we're going to have a limited number of pretrial motions *in*

12 *limine*, like six.  And then you could bring up, on the day of

13 trial -- you could bring at 7:30 in the morning.  We'll fight

14 it out in 15 minutes, whether or not there's some issue that's

15 got to be -- that's going to come up on that day, but that will

16 be -- so you will have many motions *in limine* as the trial goes

17 on.

18     But in real trials the lawyers don't need to know

19 everything, and, in fact, have no right to know everything,

20 prior to the opening statements.  They don't have a right to

21 know what every evidentiary ruling is going to be as the trial

22 unfolds.  They want to know, but they don't a have a right to

23 know.

24     And there's no practical way to run a trial if the Judge

25 is bombarded with dozens of motions *in limine*.  So I'm going to

1    say six.   You each get six motions *in limine*; not long ones.

2    Don't give me 30 pages on each one.   Five pages would be about

3    the normal length for the brief, and maybe a few pages for the

4    supplemental stuff.

5        But I think we don't need more summary-judgment motions.

6    It's just going to be a waste of time.   I know enough about the

7    case to know I think it would be highly unlikely that I would

8    grant any of this.   And if this turns out to be two weeks,

9    well, then maybe I'll give you two and a half weeks.   I don't

10   know.   We'll see, but if that's the problem, I --

11       But it does seem to me, looking through this fair-use

12   discussion, that this -- that at least the blog is going to

13   come into evidence on fair use, and maybe Apache.   I don't know

14   enough about Apache to tell you right now.

15       I've come back to something.   You -- are you trying to --

16   this JDK thing -- is that something that came into existence

17   after the first trial?

18       **MS. ANDERSON:**   OpenJDK has been available since 2007,

19   I believe, Your Honor.

20       **THE COURT:**   But I saw some announcement that you had

21   a backup.   Backup.   You could go to another -- you had a

22   different Android system in the wings, waiting to go.   Or what

23   did I read?   Something like that.

24       **MS. ANDERSON:**   Yes.   Well, there are newer versions

25   of Android that have been released and were published and made

```
 1  available to Oracle during this regular fact discovery.  And

 2  those versions do incorporate code that uses OpenJDK.

 3          THE COURT:  Well, maybe you don't get to use that at

 4  trial, because that's after the fact.

 5          MS. ANDERSON:  Well, Your Honor, actually it is

 6  relevant to what's happening here.

 7          THE COURT:  It could be relevant.  It could be

 8  relevant.

 9          MS. ANDERSON:  Well --

10          THE COURT:  But if you are trying to cut them off on

11  the 7.0, now you're trying to have it both ways.  You want to

12  work in your new stuff, but you don't want them to work in

13  their new stuff.

14          MS. ANDERSON:  Your Honor, actually we did discuss

15  this at length with Oracle's counsel.  And we let Oracle know

16  that to the extent they intended to accuse the newer versions

17  of Android of infringement, then we would have to seek

18  permission to amend our Answer to assert an affirmative-license

19  defense.  The parties basically agreed they would not accuse

20  those versions of infringement in this case, and we would

21  therefore not need to assert the affirmative license.

22          But we did make quite clear that, depending on the kinds

23  of arguments that are raised -- that appear to be being raised

24  by Oracle in this case, that the fact that Google is perfectly

25  able to create what is essentially, in Oracle's eyes, a
```

1   noninfringing alternative is certainly relevant to a host of

2   questions in this case, including but not limited to damages.

3   That is often the case, that a noninfringing alternative may

4   become relevant.

5          **THE COURT:**  It may also be very relevant to whether

6   an injunction would be issued, since it's so easy to do it.

7   Maybe we just enjoin it as soon as the verdict comes out.  If

8   you lose, then there may be an injunction immediately, because

9   of this very set of circumstances.

10         **MS. ANDERSON:**  Well, I'm sure if it is something that

11  Oracle raises, Your Honor will resolve that, certainly.

12         But the point is that because of the nature of the

13  arguments that have been raised in the case, the fact that

14  Sun/Oracle made available in 2007 OpenJDK -- and that came in

15  evidence in the first trial, and it's been available in part of

16  this --

17         **THE COURT:**  Wait a minute.  That was in the first

18  trial?

19         **MS. ANDERSON:**  Yes, absolutely.

20         **THE COURT:**  I asked you.  You said it was new.

21         **MS. ANDERSON:**  No, no, no.  There are two things,

22  Your Honor.  Let me just clear this up.

23         Back in 2007, I believe just within just two months of

24  Google's release of the first Android version, Sun/Oracle

25  released, for free, OpenJDK platform, which includes the method

headers at issue in this case.  And so, for free, back in 2007

and going forward, folks have been able to utilize that subject

to the GPL Version 2 license.  And that fact and that

discussion is something that's been -- that was talked about in

the first trial, and the parties have known about all along.

      The other thing that I was referring to is the fact that

for Android, recently -- I think it was Christmas Eve,

perhaps -- Google released newer versions of Android that

incorporate code licensed through OpenJDK.

          **THE COURT:**  All right.

          **MS. ANDERSON:**  And that's different.  So --

          **THE COURT:**  See, all right.  I'm not saying "Yes,"

and I'm not saying "No."

          **MS. ANDERSON:**  Of course.

          **THE COURT:**  But I am troubled that you would try to

keep out the new 7.0, but allow you yourself to use the Google

announcement on Christmas Eve.

          **MS. ANDERSON:**  Your Honor.

          **THE COURT:**  So I'm not saying you can't do that yet.

It may be that it's distinguishable, but there's a problem

there.  Remind me what JDK is, versus the other regular Java.

          **MS. ANDERSON:**  Well, there are a few different

Java-related platforms made available by Sun/Oracle.  And some

of them, such as the copyrighted works that were at issue in

the first trial, Oracle would say are platforms that they make

1   available subject to paid licenses for certain kinds of uses.

2   But then there's another Java platform called "OpenJDK"

3   that Sun/Oracle open sourced in 2007, which we made available

4   for free to the public for use, subject to the GPL Version 2

5   license for open sourcing, which is something that Your Honor

6   heard about early on in the last round, but probably is -- the

7   Court might need refreshers on that point.

8   But there are multiple Java platforms that have been made

9   available from time to time, and "OpenJDK" is the name of the

10  free one that's been around since '07, and that

11  Jonathan Schwartz talked about and testified about as -- as a

12  strategy that Sun was employing to make its stuff available for

13  free to encourage the use of Java in the world, which is why

14  Sun/Oracle is so thrilled that Android got released, because it

15  was yet another way to get the world to embrace Java, because

16  at the time Java was significantly on the decline.

17  And so that is why it was at issue and mentioned in the

18  first round.  That's why it's still around and at issue here.

19  And, as always in any case, design-around,

20  noninfringing-alternative discussions are always kind of raised

21  when you have this kind of case involving accusations against

22  technology.

23          THE COURT:  All right.  Let's go back a moment to the

24  first question.  What I would prefer would be -- I could do an

25  Order; and if that's what you want, I will.  But I would prefer

1  that you two meet and confer, and send up to me an order by

2  tomorrow that would take the spirit of what I said -- and maybe

3  even not necessarily exact words, but the substance of what I

4  said.  And -- but you might find ways that you could both agree

5  that it needs to be clarified.

6       But to say it again, I think what you're -- I would pick

7  up with this trial where we left off and where the

8  Federal Circuit said we should have gone on the record that

9  then existed, supplemented as you two have already stipulated

10  to, because you've stipulated to some ways to supplement the

11  record, and allow these Gingerbread Plus products to be a basis

12  for damages on the stipulation that they use all 37 APIs, but

13  leaving Google exposed to a new lawsuit on 7.0 and maybe 6.0.

14       Now, that's what I think I ruled, but you two may find

15  ways to improve upon the way I just said it.  And I would be

16  pleased to let you try to together to come up with a form of

17  order.

18            MS. ANDERSON:  Thank you, Your Honor.

19            THE COURT:  Could you do that?

20            MS. ANDERSON:  I believe we can work hard to get that

21  done, Your Honor.

22            THE COURT:  All right.  I want to tell you where we

23  are on the trial date.  I still have a criminal case.  I tried

24  to get them to move it up to the end of February, but they

25  refused.  And I -- so I still have that criminal case on your

1  date.  And I have to give priority to a criminal case.  And I

2  can't -- I thought about it asking you to move yours up to the

3  end of February, but I know what your answer would be.  There's

4  no way I could get you to do that, so I didn't ask you to do

5  that.

6       My guess is that the criminal case will plead out, but

7  that's only a guess, and I might be wrong.

8       So I just give you that heads-up, for what it's worth.

9            **MS. HURST:**  Thank you, Your Honor.

10      Your Honor, in order to avoid disputes among the parties

11  in the resolution of the proposed form of order, I just want to

12  make sure that the Court's order is that Gingerbread through

13  Marshmallow can be included for remaining issues in the case,

14  other than infringement.  In other words, we're not going to

15  bring a new infringement claim on 6 and 7; but to the extent

16  that those are relevant to fair use, not just damages, they

17  would be considered for fair use, as well.

18           **THE COURT:**  I assume so.  Right?

19           **MS. ANDERSON:**  I assume if they're in -- I would

20  assume to the extent it's relevant, then --

21           **THE COURT:**  So, well, there may be something --

22      Yes, I would say fair use, equitable defenses, anything

23  that would be relevant to litigating those.  In other words, I

24  think what Google is stipulating to say is that all of those

25  versions of Android will have been deemed to be infringing of

1  1.5 [sic] and -- sorry -- 1.4 and 5.0.  Right?

2          **MS. ANDERSON:**  With one clarification, Your Honor.

3  And I think that -- I think we all understand this, but because

4  the fair-use and other defenses are still in play, if we are

5  found, for example, to have made a fair use, we would not be

6  infringers.  So --

7          **THE COURT:**  That's right.  So it's infringement

8  subject to fair use.

9          **MS. ANDERSON:**  Right, or use of -- or use of the

10  method headers.  I mean, whatever language reflects the fact

11  that we have preserved our defenses, but -- but we're not

12  relitigating whether we're using those particular method

13  headers at issue and SSO at issue that were already litigated

14  the first time.

15          **THE COURT:**  Well, if the jury rules against Google

16  with all that information about Gingerbread and so forth in

17  there, I don't think you could come back and then say --

18          **MS. ANDERSON:**  Absolutely.

19          **THE COURT:**  -- then say, *Oh, wait a minute, Judge.*

20  *There's never been any finding that they infringe.*

21      I would -- I might -- for injunction purposes, for

22  example, I might feel obligated to enjoin all of those

23  products.

24          **MS. ANDERSON:**  (Nods.)

25          **THE COURT:**  All right.  When is our next hearing

 1  date?  Just so I'll -- I could --

 2          MS. HURST:  I think the pretrial conference is next;

 3  isn't it?  On April 27th, Your Honor.

 4          THE CLERK:  8:00 a.m. on April 27th.

 5          THE COURT:  I am thinking about -- but I may not do

 6  it, but I'm thinking about a one-and-a-half-hour tutorial for

 7  me to get me back up to speed on the technology.  And so I may

 8  send out -- and this doesn't have to be fancy.  I don't need

 9  experts.  The lawyers can do it.  But cartoons, you know, like

10  you see in the funny papers -- cartoons are very instructive

11  for me.  So I learn.  Cartoons are good.  Diagrams are good.

12          MS. HURST:  Your Honor, if I may, there was one other

13  issue about the scope of relief.  In its motion to strike,

14  Google sought to strike any reference at all to Java 6 and 7;

15  but there were compatibility tests and other matters that were

16  addressed in the expert reports that had only to do with fair

17  use, and not related to infringement.  And the compatibility

18  testing in particular, Your Honor, had to take place in a Java

19  6 and 7 environment, because that's the instructions that

20  Google gives for building the Android platform.  That was the

21  only way we could do the testing.

22      So, Your Honor, what we wanted to just make sure is that

23  the scope of the Order does --

24          THE COURT:  You're not trying to knock that out; are

25  you?

1          **MR. PAIGE:**  We are, Your Honor, because there's no

2   relevance of 6 and 7 to the case if they're not being used for

3   purposes of infringement.

4        Now, they could have run the Java SE 5 test on other

5   versions of Android if they wanted to.  I'm not sure what the

6   relevance of this compatibility testing is, but it's going to

7   be very confusing to the jury to hear about compatibility

8   testing with versions of Java that aren't, in fact, in the

9   case.

10          **THE COURT:**  Why is it, again, that you have to bring

11   up the 6 and 7?  I didn't quite get it.

12          **MS. HURST:**  Your Honor, the instructions for

13   compiling Android in those versions rely on Java 6 and 7.  So

14   in order to compile them and run the compatibility test, our

15   expert just made clear that it had done that properly by

16   following Google's instructions, which refer to 6 and 7.

17          **THE COURT:**  These are instructions in what, though?

18          **MS. HURST:**  On Google's websites about how to

19   download their code and compile it into a usable version.

20          **THE COURT:**  What's wrong with that?

21          **MR. PAIGE:**  I don't know why they couldn't have run

22   it against 5 compatibility test.

23          **THE COURT:**  Well, but your own instructions say you

24   run it against 6 or 7.  Right?

25          **MS. HURST:**  Yes.  You can't compile it with 5.  It

```
 1   only compiles --

 2          THE COURT:  You said, Ms. Hurst, that the Google

 3   instructions called out 6 and 7 specifically.

 4          MS. HURST:  To build the Android platform.  Yes,

 5   Your Honor.

 6          MR. PAIGE:  Which is different than the compatibility

 7   test, Your Honor.  Google didn't say anything about Oracle's

 8   compatibility test.  It says here's how you can build the

 9   Android version.  At that point, Oracle can run whatever

10   compatibility test it wants.  It can run its 5 test.  It can

11   run its 6 test.  It can run its 7 test.

12          THE COURT:  I don't know.  This is possibly -- I'm

13   not going to say "Yes" or "No" on this, but I am -- I'll just

14   say generally I am not ruling 6 and 7 categorically out.  I

15   think that would be -- there could be ways in which it should

16   come into evidence for limited purposes, but I'm not ruling it

17   in on any limited purposes.

18       But I don't want Google to go away doing the old trick of,

19   *Ah, the Judge has ruled in our favor on this point*, *and*

20   *therefore he must rule on every little thing in our brief*.  No,

21   I'm not doing that.  I don't know.  I haven't read all of your

22   brief.  Actually, I did read all of your brief, but I can't say

23   I remember it.  And just -- I agree with the thrust of your

24   point, and I'm not agreeing with every little nuance.

25          MR. PAIGE:  (Nods.)
```

```
 1            THE COURT:  So I'm not going to rule on that.  I'm
 2    just saying that I'm not categorically ruling 6 and 7 out for
 3    all purposes.
 4            MR. PAIGE:  Thank you, Your Honor.
 5            THE COURT:  So try to give me that draft order by
 6    noon tomorrow.  Can you do that, or do you need more time?
 7            MS. ANDERSON:  I think it would be great, Your Honor,
 8    if we had close of business, just to give us a little more
 9    time.
10            THE COURT:  Does that mean 5:00 o'clock, or does that
11    mean midnight?  5:00 o'clock is okay.
12            MS. ANDERSON:  Thank you.
13            MS. HURST:  Thank you, Your Honor.
14            MR. PAIGE:  Thank you, Your Honor.
15            THE COURT:  All right.
16    (At 11:59 a.m. the proceedings were adjourned.)
17    I certify that the foregoing is a correct transcript from the
18    record of proceedings in the above-entitled matter.
19
20    Lydia Zinn
21    _____  February 2, 2016
      Signature of Court Reporter/Transcriber    Date
22    Lydia Zinn
23
24
25
```