IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., | No. C 10-03561 WHA |
| Plaintiff, | |
| v. | |
| GOOGLE INC., | **RULING REJECTING JURY QUESTIONNAIRE** |
| Defendant. | |

The usual reasons given for using a jury questionnaire as part of voir dire are: (i) to save time; (ii) to allow for more accurate answers; (iii) to allow venire members the opportunity to disclose any embarrassing information in writing rather than in open court; and (iv) to avoid comments prejudicial to one party or another being blurted out during voir dire.

The joint questionnaire and procedure proposed by counsel, however, will not save time. At a minimum, it will add an extra day to the jury-selection procedure while the parties' neutral vendor collects, copies, and distributes the responses. The proposed questionnaire, moreover, includes vague questions that seem more likely to generate vague answers than accurate answers, which will lead to the need for verbal follow-up and consume even more time. And, given that this is not the kind of case in which prospective jurors are likely to be embarrassed by the questions at voir dire (such as might be true in a sexual harassment case), the information sought by the questionnaire could be adequately elicited during the normal oral voir dire procedure. With respect to the blurt-out problem, this order recognizes that the problem is a

plausible (but small) risk in this case. The proposed questionnaire is poorly designed and too vague to handle that risk. Even a better questionnaire would take more time than it would be worth.

The proposed questionnaire has at least two further disadvantages. One is that its use, if it really saved any time, would reduce the air time with the venire. In the Court's experience this verbal give and take is invaluable and allows us to size them up, for example as to the clarity of their answers, how well they listen, their proficiency with English, their personalities, timidity, tendency to dominate, ability to work with others, mental disorders, possible bias indicators, and so on. And, the verbal give and take engages the venire and tends to persuade them to serve (rather than find excuses to get out of service). Another disadvantage is that the loser on our eventual verdict will seek, if history is any guide, to impeach the verdict by investigating the jury to find some "lie" or omission during voir dire. The proposed questionnaire has so many vague questions that later it will be easy to argue that some response should have disclosed more or answered differently.

The Court suspects that a real reason the parties wish to use the proposed questionnaire and its two-day (or more) procedure is to get the names of prospective jurors and their places of residence so that they may conduct extended Internet investigations on the venire prior to the oral voir dire procedure, all in an effort by jury consultants to run demographics against the pool and rank the potential jurors. Evidently to that end, the parties jointly propose that the questionnaire would be distributed to prospective jurors on the morning of Monday, May 9, and returned to one party to then be copied by a neutral vendor. Oracle proposes that both sides would receive copies of the questionnaires "before noon" on the same day, while Google proposes they would receive the copies in the "afternoon" on that day. The prospective jurors would return home and then return another day to the courthouse for oral voir dire (which counsel unrealistically say would last one hour only). Google proposes that the oral voir dire occur on the morning of Tuesday, May 10, while Oracle proposes the morning of Wednesday, May 11. In the interim, counsel and their jury consultants (and perhaps the parties themselves)

2

would review the questionnaires and as counsel conceded upon questioning, conduct Internet searches on the venire having received the prospective jurors' names and places of residence via the questionnaire answers. Assuming arguendo that such Internet searches are permissible, the Court has no duty to facilitate it by dragging out the voir dire procedure.

In short, no questionnaire will be used. We will use the Court's usual voir dire procedure. We will use traditional safeguards to root out any bias. We will have a jury sworn in about three hours and then proceed to opening statements.

\*          \*          \*

Even with a normal voir dire procedure, it appears to the Court that both sides intend to email or text the names and places of residences of venire members as soon as they are called forward to waiting squads of Internet investigators, who will feed results to counsel table via reverse text or email. If the social media and other investigation conducted by counsel actually develops information which counsel wish to use during voir dire to examine a prospective juror, then counsel must be prepared themselves to confront the prospective juror with that information. Counsel should not expect the Court to invariably make the inquiry on their behalf and thereby relieve counsel of this exercise.

There is a greater than average risk that the loser in this case will seek to impeach the verdict by claiming a member of the jury answered falsely during the voir dire (even without a questionnaire). It would be unfair to make such a post-verdict accusation based upon information that was known to counsel through their social media and other investigation before jury selection ended or, for that matter, before the verdict. If a potential contradiction develops between voir dire answers versus the investigative material, counsel must bring this inconsistency to the attention of the judge before the jury is sworn (or if learned later, before the verdict) or bring it up directly with the prospective juror during voir dire. Failure to do so may well amount to waiver or an estoppel. Furthermore, counsel are hereby ordered to retain all information acquired during their investigations (and to note when it was acquired) as well as a record of what specific investigative steps were taken.

3

In some past cases, the Court has dealt with post-verdict challenges to juror answers to voir dire questions based on "new" information that turned out, in truth, to be "old" information known to counsel during voir dire but, for strategic reasons, not raised (until after the verdict). Preserving in full the information gathered by each side on the potential jury will help prevent any such tactic.

One final concern: We will go to some lengths to exhort the jury not to conduct Internet searches about the case or the lawyers. If and when it comes out, however, that the lawyers have been conducting Internet searches on the jury, the Court is concerned that continuing fidelity to the admonition to the jury to conduct no such searches will wane. It will be hard for them to understand why the lawyers can do to them what the jury cannot do to the lawyers (and the case). To eliminate this risk, the Court is considering imposing on both sides a ban on any and all Internet research on the jury prior to verdict. By **TUESDAY, MARCH 8 AT NOON**, please show cause why such a ban should not or may not be imposed.

In the same submission, both sides shall state the detailed specifics of how far the parties and/or law firms and/or their investigators may go under the law and/or the rules of professional conduct in accessing Facebook, LinkedIn, Twitter, and other social media accounts — as well as Google accounts — to gather information on prospective or actual jurors, including (without limitation) the full extent to which they may use investigators/lawyers with more detailed levels of privacy access than the general public. This should include as well analysis of the extent to which either side is allowed to review Google, Yahoo!, and/or other Internet searches conducted by prospective or actual jury members in order, for example, to analyze their politics, job searches, shopping habits, evening life, and/or personal interests. The responses are **NOT TO EXCEED TEN PAGES** (no attachments, no footnotes).

**IT IS SO ORDERED.**

Dated: March 1, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4