ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE INC.<br><br>　　　　　Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S RESPONSE TO THE COURT'S ORDER RE JURY INSTRUCTIONS & APPELLATE JURISDICTION (ECF NO. 1518)**<br><br>Trial: May 9, 2016 at 8:00 a.m.<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

## I. JURY INSTRUCTIONS

The Court has expressed its intention to instruct the jury on fair use by adapting the Federal Circuit's fair use opinion as closely as possible for the retrial, and has requested that the parties identify any deviations from that opinion they expect to request as part of the eventual instructions. To make the discussion as concrete as possible about the exact deviations from the Federal Circuit opinion that Oracle intends to propose, Oracle previews its proposed instructions herein. Where the proposed language does not come from the Federal Circuit opinion or this Court's prior orders, Oracle relies primarily upon Supreme Court precedent or the language of 17 U.S.C. § 107. Any deviations from the Federal Circuit's language are identified and discussed below. Oracle fully expects that additional instructions, for example, introductory instructions and instructions on damages, will also be needed and does not, by offering this language now, waive any objections or other revisions that may become necessary as the parties prepare comprehensive jury instructions pursuant to the Court's Guidelines For Trial And Final Pretrial Conference In Civil Jury Cases and under Rule 51 of the Federal Rules of Civil Procedure.

### A. Introductory Instruction

> All parties agree and it has been established that Google copied and distributed the copyrighted declaring code and structure, sequence and organization of the 37 Java API packages at issue into Android versions 1.0 through Marshmallow, including major and minor releases thereof. This constitutes copyright infringement unless Google carries its burden as to the defense of fair use. Google bears the burden of proof to establish fair use by a preponderance of the evidence. In determining whether Google's use of Oracle's works is a fair use, the factors to be considered shall include:

The first two sentences of this proposed introductory instruction come nearly verbatim from the Court's Tentative Trial Plan, although slightly reordered in an effort to make it easier to follow for the jury. ECF No. 1488, *as amended*, ECF No. 1506 ¶ 5. The third sentence is based on the Federal Circuit's decision, 750 F.3d 1339, 1372 (Fed. Cir. 2014) ("Fair use is an affirmative defense to copyright infringement and is codified in Section 107."), and the fourth sentence comes from the statute, 17 U.S.C. § 107 ("In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include ….").

### B.     Factor 1: Purpose And Character Of The Use

The first factor you must consider in determining whether Google's use is a fair use is the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.

This factor involves three issues: (1) whether the use serves a commercial purpose, (2) whether and to what extent Google's use is transformative, and (3) the propriety of Google's conduct in using Oracle's copyrighted works.

First, a use is commercial if the user stands to profit from the use of the copyrighted material. Google agrees that its use of the Java API packages is purely commercial. Google's purely commercial use of Oracle's copyrighted works weighs against a finding of fair use.

Second, a use is transformative if it adds something new, with a further purpose or different character, altering the original copyrighted material with new expression, meaning or message. The critical question is whether the new work merely supersedes the objects of the original material or instead adds something new. Uses for purpose of criticism, comment, or news reporting are examples of transformative uses. A use is transformative where it is made for purposes distinct from the purpose of the original material. A use is considered transformative only where a defendant changes the plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation. A use is not transformative where the defendant makes no alteration to the expressive content or message of the original work. Where the use is for the same intrinsic purpose as the plaintiff's, such use seriously weakens the claim of fair use.

Third, also relevant to the purpose and character of the use is the propriety of Google's conduct. Fair use requires that the party claiming its use was fair acted fairly and in good faith.

With only a few exceptions discussed below, this language is taken verbatim from the Federal Circuit opinion. 750 F.3d at 1374 ("The first factor in the fair use inquiry involves 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.'" (quoting § 107(1)); *id.* ("This factor involves two sub-issues: (1) whether and to what extent the new work is transformative, and (2) whether the use serves a commercial purpose" (quotation marks omitted)); *id.* at 1375 ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." (quoting *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985))); *id.* at 1376 (Google "*admittedly copied portions* of the API packages and did so for what were *purely commercial purposes*" (emphasis added); *id.* at 1374 ("A use is 'transformative' if it 'adds something new, with a further

purpose or different character, altering the first with new expression, meaning or message.'  The critical question is 'whether the new work merely supersedes the objects of the original creation or instead adds something new.'" (ellipsis and brackets omitted) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994))); *id.* ("This inquiry 'may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like.'" (quoting *Campbell*, 510 U.S. at 578-79)); *id.* ("A work is not transformative where the user 'makes no alteration to the *expressive content of message* of the original work.'" (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013))); *id.* at 1375 ("Where the use 'is for the same intrinsic purpose as the copyright holder's such use seriously weakens a claimed fair use.'" (ellipsis and brackets omitted) (quoting *Worldwide Church of God v. Phila. Church of God, Inc.*, 277 F.3d 1110, 1117 (9th Cir. 2000))).

The only portions of the proposed instruction that are not copied verbatim from the Federal Circuit's decision are:  (1) minor grammatical changes to accommodate the context; (2) the "weighs against" language regarding the effect of a commercial use—which comes from Ninth Circuit case law recognizing that commercial use of copyrighted material is presumptively unfair; and (3) the addition of the consideration of defendant's conduct, and whether defendant was acting in good faith, based on Supreme Court authority.

Ninth Circuit cases hold that commercial use weighs against fair use.  *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1113 (9th Cir. 1998) ("every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984))); *Leadsinger, Inc. v. BMG Music Publ'g.*, 512 F.3d 522, 531-32 (9th Cir. 2008) ("[C]ommercial use of copyrighted material is 'presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.'" (quoting *Sony*, 464 U.S. at 451)); *L.A. News Serv. v. Reuters Tele. Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998) (same).

The language concerning the propriety of defendant's conduct is taken from *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. at 562-63 ("Also relevant to the 'character' of the use is the propriety of the defendant's conduct.  Fair use presupposes good faith and fair

dealing."); *see also L.A. News Serv. v. K-Cal TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997).

### C.     Factor 2: Nature Of The Copyrighted Work

> The second factor you must consider in determining whether the use is fair is the nature of the copyrighted work. This factor turns on whether the work is informational or creative. Computer programs have both functional and expressive components. Where the functional components are themselves unprotected (such as they are dictated by considerations of efficiency or other external factors), those elements should be afforded a lower degree of protection than more traditional literary works. Creative expression falls within the core of the copyright's protective purposes. It is undisputed that Oracle's declaring code and the structure and organization of the Java API packages are both creative and original.

This language is all taken from the Federal Circuit opinion with only minor grammatical changes for context and clarity: 750 F.3d at 1375 ("The second factor—the nature of the copyrighted work—'calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.'" (quoting *Campbell*, 510 U.S. at 586)); *id.* ("Creative expression 'falls within the core of the copyright's protective purposes.'" (quoting *Campbell*, 510 U.S. at 586)); *id.* ("Because computer programs have both functional and expressive components, however, where the functional components are themselves unprotected (because, e.g., they are dictated by considerations of efficiency or other external factors), those elements should be afforded 'a lower degree of protection than more traditional literary works.'" (quoting *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526 (9th Cir. 1992))); *id.* ("This factor 'turns on whether the work is informational or creative.'" (quoting *Worldwide Church of God*, 227 F.3d at 1118)); *id.* at 1365 ("[I]t is undisputed here that the declaring code and the structure and organization of the API packages are both creative and original.")

### D.     Factor 3: Amount And Substantiality Of The Portion Used

> The third factor you must consider in determining whether a use is fair is the amount and substantiality of the portion used in relation to the copyrighted work as a whole. This factor is viewed in the context of the copyrighted work, not the infringing work. A taking may not be excused merely because it is insubstantial with respect to the infringing work. No infringer can excuse the wrong by showing how much of its work was not taken without authorization. In assessing this factor, you should consider both the quantity of the material used and the quality or importance of the material used.

With one exception discussed below, this text is taken verbatim from the Federal Circuit's opinion with linguistic modifications to make it more appropriate for the jury: 750 F.3d at 1375 ("The third factor asks the court to examine 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole.'" (quoting § 107(3))); *id.* ("Analysis of this factor is viewed in the context of the copyrighted work, not the infringing work.  Indeed, the statutory language makes clear that 'a taking may not be excused merely because it is insubstantial with respect to the *infringing* work.'  'As Judge Learned Hand cogently remarked, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate."'  In contrast, 'the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.'" (quoting *Harper & Row*, 471 U.S. at 565))).

Oracle has added the quantitative/qualitative distinction from the Supreme Court in the last sentence of the above instruction to provide additional explanation of the parameters of this factor for the jury.  *Campbell*, 510 U.S. at 587 ("[T]his factor calls for thought not only about the quantity of the materials used, but about their quality and importance, too."); *accord id.* ("In *Harper & Row*, for example, the Nation had taken only some 300 words out of President Ford's memoirs, but we signaled the significance of the quotations in finding them to amount to 'the heart of the book,' the part most likely to be newsworthy and important in licensing serialization.").

### E.    Factor 4: Effect On The Market

The fourth factor you must consider in determining whether a use is fair is the effect of Google's use upon the potential market for or value of Oracle's copyrighted works.  This is the single most important element of fair use.  Fair use is limited to copying by others which does not materially impair the marketability of the work which is copied.  This factor considers:

(1) the effect of Google's use upon the value of Oracle's copyrighted works;

(2) the effect of Google's use upon the potential market for Oracle's copyrighted works; and

(3) whether unrestricted and widespread conduct of the sort engaged in by Google would result in a substantially adverse impact on the potential market for Oracle's original works.

- 5 -

ORACLE'S RESPONSE TO ORDER RE JURY INSTRUCTIONS & APPELLATE JURISDICTION

> In considering this factor, you must take account not only of the harm to Oracle's original works but also of harm to the market for derivative works.

With the exception of the final sentence, the Federal Circuit's decision provides all of the substance for the proposed instruction:  750 F.3d at 1376 ("The fourth and final factor focuses on 'the effect of the use upon the potential market for or value of the copyrighted work.'") (quoting *Harper & Row*, 471 U.S. at 566)); *id.* ("The Supreme Court has said that this factor is 'undoubtedly the single most important element of fair use.'") (quoting *Harper & Row*, 471 U.S. at 566)); *id.* ("This factor reflects the idea that fair use 'is limited to copying by others which does not materially impair the marketability of the work which is copied.'") (quoting *Harper & Row*, 471 U.S. at 566-67)); *id.* ("It [the fourth factor] requires that courts 'consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original.'" (ellipsis omitted) (quoting *Campbell*, 510 U.S. at 590)).

The concept of harm to derivative works in the last sentence comes from the Supreme Court:  "This inquiry must take account not only of harm to the original but also of harm to the market for derivative works." *Harper & Row*, 471 U.S. at 568; *Campbell*, 510 U.S. at 593 ("Evidence of substantial harm to it [a derivative] would weigh against a finding of fair use, because the licensing of derivatives is an important economic incentive to the creation of originals." (footnote omitted)).

## II.  APPELLATE JURISDICTION

Any appeal in this retrial will return to the Federal Circuit.  The Federal Circuit's jurisdiction is governed by 28 U.S.C. § 1295(a)(1).  The operative version (before amended in 2011 by the America Invents Act) grants the Federal Circuit "exclusive jurisdiction" of an appeal where the district court's jurisdiction "*was* based, in whole or in part," on a patent claim.  28 U.S.C. § 1295(1)(1) (emphasis added).  Under the plain language of § 1295(a)(1), the Federal Circuit's appellate jurisdiction attaches when the district court's subject matter jurisdiction attaches, irrespective of what may happen later in the case.  That a district court's jurisdiction is determined

1  as of the time the suit was filed is also a long-established principle, well known to Congress at the
2  time of enactment.  *See, e.g.*, *Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428
3  (1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced,
4  such jurisdiction may not be divested by subsequent events."); *Minneapolis & St. Louis RR Co. v.*
5  *Peoria & Pekin Union RR Co.*, 270 U.S. 580, 586 (1926) ("The jurisdiction of the lower court
6  depends upon the state of things existing at the time the suit was brought."); *Anderson v. Watt*,
7  138 U.S. 694, 702-03 (1891) ("the [jurisdictional] inquiry is determined by the condition of the
8  parties at the commencement of the suit"); *Mollan v. Torrance*, 22 U.S. 537, 539 (1824) ("It is
9  quite clear that the jurisdiction of the Court depends upon the state of things at the time of the
10 action brought, and that after vesting, it cannot be ousted by subsequent events.").

11        Here, this Court's jurisdiction was based in part on claims arising under the Patent Act.
12 *See* ECF No. 1 (Compl.) ¶ 3; ECF No. 36 (Am. Compl.) ¶ 3.  In such cases the Federal Circuit has
13 routinely found jurisdiction (including in this case) to hear appeals raising no patent issues
14 whatsoever—because the district court's original subject matter jurisdiction was based, in part, on
15 a patent claim.  *See, e.g.*, 750 F.3d at 1353 ("Because this action included patent claims, we have
16 jurisdiction pursuant to 28 U.S.C. § 1295(a)(1)); *Jacobsen v. Katzer*, 535 F.3d 1373, 1377 (Fed.
17 Cir. 2008) (copyright-only appeal where patent claims were also asserted in the district court);
18 *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832, 837 (Fed. Cir. 1992) (same).

19        The Federal Circuit will have jurisdiction over any appeal from the retrial.

20 Dated: March 7, 2016                    Respectfully submitted,

21                                         Orrick, Herrington & Sutcliffe LLP

22                                         By: */s/ Annette L. Hurst*
                                               Annette L. Hurst
23
                                           Counsel for ORACLE AMERICA, INC.
24

- 7 -    ORACLE'S RESPONSE TO ORDER RE JURY
         INSTRUCTIONS & APPELLATE JURISDICTION