KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

KING & SPALDING  LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3521
Tel:     (404) 572-4600
Fax:     (404) 572-5100

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>GOOGLE INC.,<br><br>　　　　　Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**DEFENDANT GOOGLE INC.'S BRIEF ON FAIR USE JURY INSTRUCTION AND APPELLATE JURISDICTION**<br><br>Dept.:　　Courtroom 8, 19th Fl.<br>Judge:　　Hon. William Alsup |

Defendant Google Inc. respectfully submits this brief in response to the Court's February 26, 2016 Request For Briefing (ECF No. 1518).

## I.    THE FAIR USE JURY INSTRUCTION

As the Federal Circuit correctly acknowledged in its opinion, Ninth Circuit law governs the copyright issues in this action.  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1353 (Fed. Cir. 2014), *cert. denied,* 135 S.Ct. 2887 (2015).  Like the instructions on fair use given in the first trial – which Oracle did not challenge in the prior appeal and which the Federal Circuit did not discuss or criticize in any way – the Court's instructions should therefore accurately reflect Ninth Circuit law, as stated by the Ninth Circuit in its own opinions, as well as the statements made by the Federal Circuit regarding what that court believes the Ninth Circuit would hold.  However, the Federal Circuit's twelve-paragraph discussion of the legal principles relating to fair use, 750 F.3d at 1372-76, is incomplete and does not reflect several important Ninth Circuit fair use decisions relating specifically to computer software.  It would therefore not be appropriate for the Court to simply "adapt[] the fair-use opinion" in a way that is "not quite word for word, but very close to it" in drafting the jury charge.  ECF No. 1518.  Providing the jury with extended excerpts from the fair use section of the Federal Circuit decision would be more likely to produce confusion than clarity, and would not accurately or fully reflect the applicable governing Ninth Circuit law.

"[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) (internal quotations omitted).  As the Federal Circuit has explained, "[t]he district court need not use identical language to this court's opinions in its instructions." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004).  Similarly, the Ninth Circuit does "not require trial judges to use standard jury instructions or *specific language approved in prior cases*." *United States v. Pena-Ozuna*, 511 F.2d 1106, 1108 (9th Cir. 1975) (emphasis added).

The courts of appeals have occasionally cautioned district courts against "lift[ing] word for word from the *Federal Reporter* and insert[ing] into jury instructions." *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913 (2d Cir. 1984).  The reason is that most cases do not pass on "the propriety of a particular charge." *United States v. Cooper*, 577 F.2d 1079, 1082 n.4 (6th

Cir. 1978). In other words, juries are not the intended audience for legal opinions, and it is likely that extended legal quotations would confuse, rather than illuminate, the issues for the jury. The Ninth Circuit has affirmed the denial of irrelevant or confusing instructions, even when the instructions accurately state the law. *See, e.g.*, *United States v. Anderson*, 741 F.3d 938, 947 (9th Cir. 2013) (although "instruction had support in the case law," it "would have likely created confusion among persons without legal training"), *cert. denied,* 134 S.Ct. 1562 (2014).

Similar concerns exist here. After its twelve paragraphs of legal analysis, the "Fair Use" section of the Federal Circuit's opinion includes extensive discussion of the parties' arguments and the evidence of record of the first trial. *See* 750 F.3d at 1376-77 ("Oracle asserts"; "Google contends"; "Google argues"). Those statements are not appropriate for use in an instruction, *see, e.g.*, *Pierson v. Ford Motor Co.*, 2008 WL 7084522, at *7 (N.D. Cal. Aug. 1, 2008) ("The court will not approve argumentative instructions"), and could be misleading for the jury in the upcoming trial because the parties will offer new arguments and evidence at trial. *See Anderson*, 741 F.3d at 947 ("A district court may properly reject a misleading or confusing instruction.").

The Federal Circuit's legal discussion is also overly complex, repetitive, and occasionally not germane to the parties' disputes. *See Ragsdell v. S. Pac. Transp. Co.*, 688 F.2d 1281, 1283 (9th Cir. 1982) (per curiam) (rejecting "argumentative, too long and too repetitious to be given as written" instructions); *see also JJCO, Inc. v. Isuzu Motors Am., Inc.*, 492 Fed. Appx. 715, 717 (9th Cir. 2012) (affirming rejection of "cumulative, argumentative, not supported by the law, or not supported by the record" instructions). For example, the opinion refers to "parodic" and "other works that comment and criticize," which are not at issue here. *See* 750 F.3d at 1374. Although parodies may be examples of transformative works, that is of little value in a software case, which presents fundamentally different questions. Including that discussion in the charge, for example, could mislead the jury into believing that Android is not transformative because it is not a "parody" of Java. *See, e.g.*, *United States v. Ibarra-Pino*, 657 F.3d 1000, 1004 (9th Cir. 2011) (instruction on irrelevant issue "is not appropriate").

The Federal Circuit's discussion of fair use principles is also incomplete. In an earlier section of its opinion, the Federal Circuit discussed the leading Ninth Circuit software-related fair

use decisions in *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992), and *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000). The court characterized those decisions as "focused on fair use," 750 F.3d at 1369, and recognized that, under *Sega* and *Sony,* elements of computer software that are "dictated by considerations of efficiency" or "required by factors external to the program itself" require special treatment. 750 F.3d at 1370. The Federal Circuit also cited in that same section the landmark Second Circuit decision in *Computer Assocs Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992), and its teachings regarding the importance of, inter alia, "compatibility requirements," *id.*, and expressly recognized that Google's desire to leverage the existing knowledge of software developers familiar with the Java language was "relevant to the fair use inquiry." *Id.* at 1371-72.

These important issues relevant to fair use were discussed only in passing in the fair use section of the Federal Circuit's opinion; *Sony* and *Altai* were not even cited in the court's fair use discussion. *See id.* at 1372-77. And while the Federal Circuit expressly acknowledged that "reasonable jurors might find" the functional aspects of the Java API package elements and Google's position regarding interoperability relevant to fair use, *id.* at 1377, the court gave no guidance on how the jury should be instructed regarding those issues – especially as to the core packages that are "necessary for anyone to copy if they are to write programs in the Java language" and other "essential components of any Java language-based program." *Id.*

The Federal Circuit's opinion also does not take into account or consider fair use decisions since May of 2014. There is at least one such decision that has contained extensive discussion of fair use principles and that may be an appropriate source for crafting the fair use instruction in this case, namely the Second Circuit's decision in *The Authors Guild v. Google Inc.*, 804 F.3d 202 (2d Cir. 2015), *petition for cert. filed*, 84 U.S.L.W. 3357 (U.S. Dec. 31, 2015) (No. 15-849), in which Senior Circuit Judge Leval, a leading fair use scholar, wrote the court's opinion. That opinion made clear, for example, that the "ultimate, primary intended beneficiary" of the copyright laws is the public – not authors, 804 F.3d at 212, and that a commercial motivation on the part of the second user weighs against fair use only "in some circumstances" and must be considered together with the purpose of the use. *Id.* at 219.

Finally, the Federal Circuit's legal analysis occasionally uses language that could be construed to favor one party over another.  For example, the Federal Circuit quoted an opinion that refers to a "plagiarist" who "pirate[s]" another's work.  *See* 750 F.3d at 1375.  Use of those words in the instruction would be prejudicial to Google.

For at least these reasons, it would be confusing to the jury to provide an instruction that too closely mirrors or quotes too extensively from the Federal Circuit's fair use discussion.  Google recognizes that the Court must adhere to the Federal Circuit's direction to "revisit and revise its jury instructions on fair use consistent with this opinion so as to provide the jury with a clear and appropriate picture of the fair use defense." 750 F.3d at 1377.  The Court must do so, however,  in a manner that results in an instruction that accurately reflects current law.

Accordingly, Google proposes that preparation of the jury instructions should begin with the Ninth Circuit's model jury instruction on fair use, which properly reflects certain of the relevant and controlling principles of Ninth Circuit law, including the statutory fair use factors.  *See Gilbrook v. City of Westminster*, 177 F.3d 839, 860 (9th Cir. 1999) (affirming "district court's decision to use the standard jury instruction on conspiracy").  As the Court may recall from the first trial, however, the model instruction does not, for example, fully describe the factors (including the importance of whether the second work is transformative) or discuss how they relate to one another or how they may apply in this case.  The Court's prior instructions addressed these limitations of the model instruction.  Google therefore believes that the Court's instructions should be based on the instructions from the first trial, supplemented with the following principles regarding fair use drawn from controlling Ninth Circuit precedents (including *Sony*, *Sega* and other Ninth Circuit decisions), the Federal Circuit's opinion (the excerpts from which are shown in bold italics), and other recent fair use decisions.

As an initial matter, Google believes that the court's instructions should make clear that, while the jury must consider the four specific factors identified in section 107, those factors are nonexclusive and not exhaustive; the jurors can take and should into account any evidence or factors that they believe bear on whether Google's use of the SSO of the accused API packages was fair and advances the public interest or provides public benefit.  The instruction should also

make clear that no one factor is dispositive; that *all of the factors* and relevant evidence *must be considered and weighed together in light of the purpose of copyright, i.e., to promote the progress of science and the useful arts;* and that a finding of fair use is appropriate where a reasonable copyright owner would have consented to the use, i.e., where custom or public policy at the time would have defined the use as reasonable.

**<u>Factor 1</u>**:  *The first factor involves the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes.  This factor involves two sub-issues:  (1) whether and to what extent the new work is transformative; and (2) whether the use serves a commercial purpose.*

A new work *is transformative if it adds something new, with a further purpose or different character, altering the first with new expression, meaning or message* or incorporating the copied elements of the first work as part of a broader work.  *The critical question is whether the new work merely supersedes* the first work *or instead adds something new* to the first work; the new work need not change the elements of the original work in order for the new work to be transformative.  *New works are transformative when they use copyrighted material for purposes distinct from the purpose of the original material*.

*Analysis of the first factor also requires inquiry into the commercial nature of the use.*  The fact that a use is commercial does not preclude a finding of fair use, and the fact that the party making the use is a for-profit entity does not make the use a commercial use.  *The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use*, and a commercial motivation must be considered together with the purpose of the use.

**<u>Factor 2</u>**:  *The second factor is the nature of the copyrighted work.  This factor turns on whether the work* is factual, functional or *informational*, on the one hand, *or creative* (such as a work of fiction or fantasy), on the other hand, in view of the principle that *creative expression falls within the core of copyright's protective purposes.  Computer programs have both functional and expressive components.  Where the functional components are dictated by considerations of efficiency or other external factors, those elements should be afforded a*

*lower degree of protection than more traditional literary works. Thus, where purely functional elements exist in the work and it is necessary to copy the expressive elements in order to perform those functions, consideration of this second factor may support a finding that the use* of such elements *is fair.* As part of this factor, the jury may consider whether some or all of the elements used were *necessary* in order *to write programs in the Java language*, are *essential components of any Java language-based program*, or are necessary for reasons of technical or commercial compatibility and/or interoperability, which would weigh in favor of a finding that the use was fair.

**Factor 3**: *The third factor asks the jury to examine the amount and substantiality of the portion used in relation to the copyrighted work as a whole. Analysis of this factor is viewed in the context of the copyrighted work* as a whole, not the new work. *If the second user only* used *as much* of the copyrighted work *as is necessary for his or her intended use, then this factor will not weigh against him or her. The extent of permissible copying varies with the purpose and character of the use.* As with the second factor, the jury may consider in connection with this factor whether some or all of the portions used were *necessary* in order *to write programs using the Java language*, are *essential components of any Java language-based program*, or are necessary for reasons of technical or commercial compatibility and/or interoperability, which would weigh in favor of a finding that the use was fair.

**Factor 4**: *The fourth and final factor focuses on the effect of the use upon the potential market for or value of the copyrighted work. This factor reflects the idea that fair use is limited to copying by others which does not materially impair the marketability of the* copyrighted *work. It requires that the jury consider not only the extent of market harm caused by the particular actions of the* second user*, but also whether unrestricted and widespread conduct of the sort engaged in by the* second user *would result in a substantially adverse impact on the potential market for the original. Market harm is a matter of degree,* and a use can be a fair use even if it causes some market harm*. The importance of this factor will vary, not only with the amount of harm, but also with the relative strength of the showing on the other factors.* In considering market harm, the jury should exclude any harm caused by a transformative use,

which does not serve as a substitute for the original work.

Google believes that the above adheres to the language of section 107, the Federal Circuit's opinion, controlling precedents, and other relevant authorities. It also excludes aspects of the Federal Circuit's opinion that are argumentative, repetitive, and not germane to the issues.

## II.     APPELLATE JURISDICTION

Appellate jurisdiction in this case is governed by 28 U.S.C. § 1295(a)(1). That statute provides that the Federal Circuit has exclusive jurisdiction over any appeal from a final decision of a district court in any civil action arising under, inter alia, the Patent Act.

Section 1295 grants the Federal Circuit jurisdiction so long as any "well-pleaded" claim in the complaint arises under the patent laws, even if the suit contains claims that arise under other laws and even if the patent claims have been fully adjudicated. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc*., 535 U.S. 826, 830 (2002). Regardless of the issues that are appealed and whether they have any connection to the patent claims, "[t]he path of appeal is determined by the basis of jurisdiction in the district court, and is not controlled by the district court's decision or the substance of the issues that are appealed." *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1349-50 (Fed Cir. 1991) (Federal Circuit has appellate jurisdiction "even when the only issues remaining are not within [its] exclusive [jurisdiction]"); *accord, Breed v. Hughes Aircraft Co.*, 253 F.3d 1173, 1179 (9th Cir. 2001). The Federal Circuit would lose jurisdiction if Oracle's patent claims are dismissed without prejudice, in which case an appeal of the remaining non-patent claims would go to the Ninth Circuit. *See Nilssen v. Motorola, Inc*., 203 F.3d 782, 784–85 (Fed. Cir. 2000); *see also Krauser v. BioHorizons, Inc.*, 753 F.3d 1263, 1269 (Fed. Cir. 2014).

Under this case law and based on Oracle's claims as currently pleaded, any future appeal appears to be within the jurisdiction of the Federal Circuit, which will again be required to apply Ninth Circuit copyright law. The basis for this Court's jurisdiction is Oracle's 2010 Amended Complaint, which includes the patent claims that were finally adjudicated and disposed of as a result of the first trial and were not superseded or withdrawn by the 2015 Supplemental Complaint. The fact that those patent claims have been finally adjudicated does not alter the Federal Circuit's appellate jurisdiction under current case law.

DATED: March 7, 2016

KEKER & VAN NEST LLP

By: /s/ Robert A. Van Nest
ROBERT A. VAN NEST

Attorneys for Defendant
GOOGLE INC.