ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>   Plaintiff,<br><br>  v.<br><br>GOOGLE INC.<br><br>   Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S RESPONSE TO ECF NOS. 1523 AND 1526**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

**INTRODUCTION**

On March 1, 2016, the Court issued an order directing the parties to show cause why the Court should not "impos[e] on both sides a ban on any and all Internet research on the jury prior to verdict." ECF No. 1523. The Court further directed the parties to "state the detailed specifics of how far the parties and/or law firms and/or their investigators may go under the law and/or the rules of professional conduct in accessing Facebook, LinkedIn, Twitter, and other social media accounts." *Id*. On March 3, 2016, the Court issued a follow up order directing the parties to specifically state the extent to which counsel is permitted to access public tweets and the extent to which counsel is permitted to ask third party Twitter followers, Facebook friends, or LinkedIn connections of prospective jurors to provide information that is not publicly available. ECF No. 1526.

Oracle respects the privacy of prospective jurors and shares the Court's concern regarding unreasonable intrusion into the privacy of persons called to serve as jurors in this case. Oracle submits that use of proprietary resources to obtain information on prospective jurors—including the examples the Court identified, such as information related to use of Google accounts or Google search history information—would be improper. At the same time, the law imposes a duty on lawyers and the Court to take reasonable steps necessary to determine that a jury is composed of jurors who are fair, impartial, and unbiased. Courts and commentators are in general agreement that access to and use of publicly available information about prospective jurors as part of the voir dire process is consistent with selecting a fair and impartial jury. Accordingly, Oracle proposes that the Court advise prospective jurors that both sides may access and use publicly available information, and that any Internet searches related to prospective jurors will be limited to public information that is freely available to everyone. Oracle's positions with respect to the Court's specific inquiries are as follows:

- the Court has discretion to impose reasonable limits on Internet research on the venire and should do so for this case, but an absolute ban on all Internet research on jurors or prospective jurors prior to verdict would likely amount to an abuse of discretion;

- the parties should be permitted to conduct passive Internet searches for public information, including searches for publicly available demographic information, blogs,

- biographies, articles, announcements, public Twitter and other social media posts, and other such public information;

- any Internet research the parties conduct should not result in any communication to the juror or prospective juror as a result of the research, including, but not limited to Facebook "friend" requests, Twitter or Instagram "follow" requests, LinkedIn "connection" requests, or other forms of Internet or social media contact;

- in light of the Court's concerns and in respect for juror privacy, Oracle proposes the following restrictions on Internet searches related to jurors or prospective jurors:

    o any forms of juror research that include gathering information not readily available to the general public should be prohibited;

    o social media searches should be limited to information that is available to the public under the user's privacy settings; the parties, counsel, and their agents should not be permitted to access jurors' private social media accounts or Google accounts of any kind, to use levels of privacy access that are unavailable to the general public, or to review Google, Yahoo!, and/or other Internet searches, search data (even aggregate data) related to jurors or prospective jurors;

    o neither party should access any proprietary databases, services, or other such sources of information, including by way of example information related to jurors', prospective jurors', or their acquaintances' use of Google accounts, Google search history information, or any information regarding jurors' or prospective jurors' Gmail accounts, browsing history, or viewing of Google served ads;

    o social media searches should be limited to searches that will not result in any communication (including system-generated communications) to jurors or prospective jurors. For example, LinkedIn searches that would result in a LinkedIn notification of a profile view should not be conducted by either party; and

    o neither party should contact any third party acquaintance of a juror or prospective juror to obtain information. For example, the parties should not ask someone that follows a prospective juror's private social media account to disclose the content of that account and should not ask Facebook friends or LinkedIn connections of prospective jurors to access their more private levels of postings or to provide a list of any prospective juror's connections on those networks.

Oracle respectfully submits that its proposal for limited, passive Internet searches for public information strikes the appropriate balance between juror privacy and the parties' fundamental constitutional right to an impartial jury. Oracle's proposal is consistent with ethics opinions from the American Bar Association and several other organizations and is also consistent with the approach adopted by the U.S. District Court for the District of Idaho. *See* D. Idaho R. 47.2, *Social Media Juror Inquiries*, available at

http://www.id.uscourts.gov/Content_Fetcher/index.cfml/District_Local_Civil_Rule_47.2_2046.pdf?Content_ID=2046 (last visited March 7, 2016).

## DISCUSSION

**I.     Whether the Court May Impose an Absolute Ban on all Internet Searches**

The Constitution guarantees civil litigants a right to an impartial jury. *E.g., Warger v. Shauers*, 135 S. Ct. 521, 528 (2014). This right "goes to the very integrity of the legal system." *Gray v. Mississippi*, 481 U.S. 648, 668 (1987) (internal citation and quotations omitted). The "right to an impartial adjudicator, be it judge or jury, is among those constitutional rights so basic that their infraction can never be treated as harmless error." *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 487 (9th Cir. 2014) (citing *Gray*, 481 U.S. at 668, internal quotations omitted).

"[T]he right to an impartial jury carries with it the concomitant right to take reasonable steps designed to insure that the jury is impartial." *Ham v. South Carolina*, 409 U.S. 524, 532 (1973) (Marshal, J, concurring and dissenting in part) (citing *Groppi v. Wisconsin*, 400 U.S. 505, 509-511 (1971); *Sheppard v. Maxwell*, 384 U.S. 333, 357-363 (1966); *Johnson v. Louisiana*, 406 U.S. 356, 379 (1972); and *Swain v. Alabama*, 380 U.S. 202, 209-222 (1965)). These steps include the voir dire process itself and the right to prove up juror misconduct, among other procedural safeguards. *See Warger*, 135 S. Ct. at 529 (voir dire); *McDonough Power Equip, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) (establishing procedure for obtaining new trial based on juror misconduct during voir dire). District courts have broad discretion to control the voir dire process, but exercise of this discretion is "subject to the essential demands of fairness" and it is an abuse of discretion for a court to unreasonably limit voir dire. *See Darbin v. Nourse*, 664 F.2d 1109, 1114 (9th Cir. 1981) (citing *Aldridge v. United States*, 283 U.S. 308, 310 (1931)).

The Ninth Circuit has not addressed whether district courts have authority to impose blanket restrictions on all Internet research on jurors or prospective jurors prior to verdict, but judicial and ethics opinions from several jurisdictions suggest that such an absolute ban would be an abuse of discretion. *See Carino v. Muenzen*, 2010 N.J. Super. Unpub. LEXIS 2154, at *9-10 (App. Div. Aug. 30, 2010) (holding that trial court abused its discretion by ordering counsel not

to conduct Internet searches on prospective jurors during voir dire); *Sluss v. Commonwealth*, 381 S.W.3d 215, 226-227 (Ky. 2012) (adopting New York County Lawyers Association opinion permitting passive Internet searches and remanding case because party's lack of access to social media information "effectively precluded" full voir dire); *Burden v. CSX Transp., Inc.*, 2011 U.S. Dist. LEXIS 94809, at *25-26 (S.D. Ill. Aug. 24, 2011) (Internet searches for public information on jurors required by "reasonable diligence" standard); *see also Johnson v. McCullough*, 306 S.W.3d 551, 559 (Mo. 2010) (holding that attorneys have affirmative duty to conduct research regarding prospective jurors' litigation history); *United States v. Fumo*, 655 F.3d 288, 331-33 (3d Cir. 2011) (Nygaard, J, concurring in part) (courts and counsel have responsibility to inquire regarding social media use during voir dire).  As these authorities implicitly acknowledge, Internet research on jurors and prospective jurors is appropriate and indeed may even be required to satisfy counsel's duty of diligence in the digital age.  *Burden*, 2011 U.S. Dist. LEXIS 94809, at *25-26.

   The practice of permitting counsel to seek out information regarding prospective jurors in advance of trial is well established, *Commonwealth v. Allen*, 379 Mass. 564, 575 (Mass. 1980) (citing *inter alia* 3 W. Blackstone, Commentaries 355 (1778) (discussing practice under English jury system: "parties may have notice of the jurors, and of their sufficiency or insufficiency, characters, connections, and relations, that so they may be challenged upon just cause")), and federal courts have long countenanced this practice, *see United States v. White,* 78 F. Supp. 2d 1025, 1026 (D.S.D. 1999) (examining public records on voter registration, driver registration and property valuation, and driving down public streets to view the residences and neighborhoods of prospective jurors is permissible); *United States v. Falange*, 426 F.2d 930, 933 (2d Cir. 1970) (out-of-court research on prospective jurors held appropriate) (citing *United States v. Costello*, 255 F.2d 876, 884 (2d Cir. 1958)); *Dow v. Carnegie-Illinois Steel Corp.*, 224 F.2d 414, 431 (3d Cir. 1955) (countenancing use of paid investigators to conduct interviews of prospective jurors' acquaintances); *see also United States v. Kahre*, 2009 U.S. Dist. LEXIS 39477, at *6 (D. Nev. Apr. 20, 2009) (approving of use of pre-voir dire questionnaire that provided "an extraordinary amount of information about the venire").  The Ninth Circuit has countenanced the use of "jury

books," which sometimes include personal information on prospective jurors such as the prospective jurors' prior addresses, number of children, and even the occupation and address of prospective jurors' spouses. *See United States v. Payseur,* 501 F.2d 966, 974 (9th Cir. 1974); *Hamer v. United States*, 259 F.2d 274, 280 (9th Cir. 1958). The Ninth Circuit has also held that in exercising its discretion on voir dire, "the trial judge should keep uppermost in his mind the fact that the parties have the right to some surface information about prospective jurors which might furnish the basis for an informed exercise of peremptory challenges or motions to strike for cause based upon a lack of impartiality." *United States v. Baldwin*, 607 F.2d 1295, 1297 (9th Cir. 1979) (citations omitted).

Oracle's proposal for limited, passive Internet searches does not threaten any privacy interests because Oracle seeks only publicly available information needed to facilitate Oracle's right to an impartial jury. Oracle's proposal is limited to searching for information that is already public, such as information intentionally published on public blogs, Facebook, Twitter, or other public Internet forums. Such public research does not implicate the type of personal information that gives rise to privacy issues. *Compare Press-Enter. Co. v. Superior Court of California*, 464 U.S. 501, 513 (1984) (discussing prospective juror's privacy interest with respect to "deeply personal" information that might be explored on voir dire) *with Rosario v. Clark Cty. Sch. Dist.,* 2013 U.S. Dist. LEXIS 93963, at *16 (D. Nev. July 3, 2013) (no reasonable expectation of privacy for Twitter posts) *and Four Navy Seals & Jane Doe v. AP*, 413 F. Supp. 2d 1136, 1145 (S.D. Cal. 2005) ("there is no privacy for matter already in the public domain" such as photos posted on the Internet, citing *Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001) ("Users would logically lack a legitimate expectation of privacy in the materials intended for publication or public posting.")).

Given that federal courts have countenanced investigative approaches that are more in depth than passive Internet searches, and given that the parties' fundamental right to an impartial jury is at stake, a blanket order prohibiting passive Internet searches for non-private information would be unreasonable. Moreover, an order prohibiting all Internet research until a verdict issues impairs the parties' ability to discover and seek redress for potential juror misconduct that occurs

during trial. Cases in which jurors improperly post case-related comments on social media are increasingly common, *see, e.g., More from the #Jury Box: The Latest on Juries and Social Media,* 12 Duke L. & Tech. Rev. 64, 72 (2014) ("acts of misconduct have contributed to a growing body of case law about jurors and social media"), and unless such conduct is promptly discovered and addressed before deliberations commence, the parties may face severe prejudice. Any juror-related social media issues should be dealt with contemporaneously so that they can be corrected. The alternative—forcing the parties to try the case under a blanket ban on Internet searches and leaving them to conduct post-verdict investigations after the fact—creates the possibility of significant waste of resources, unnecessary prejudice to the parties, and practical challenges for the Court because of proof issues under Federal Rule of Evidence 606. *See United States v. Symington,* 195 F.3d 1080, 1086 (9th Cir. 1999) (discussing limits on trial court's investigative power after deliberations commence).

**II.     Scope of Permissible Research Under the Rules of Professional Responsibility**

California has not yet promulgated a rule regarding Internet research on jurors or prospective jurors, and the California State Bar has not issued a formal opinion on the matter. However, the California State Bar website directs counsel to formal opinions on the issue from the American Bar Association, the New York City Bar Association, and the Oregon State Bar. *See* State Bar of California Social Media Ethics Opinions webpage at http://ethics.calbar.ca.gov/Ethics/EthicsTechnologyResources/SocialMedia.aspx (last visited March 4, 2016)(linking to *Ass'n of the Bar of the City of N. Y. Comm. on Prof'l Ethics, Formal Op. 2012-2*, http://www.nycbar.org/ethics/ethics-opinions-local/2012opinions/1479-formal-opinion-2012-02; *Or. State Bar Ass'n, Formal Op. 2013-189*, https://www.osbar.org/_docs/ethics/2013-189.pdf (last visited March 4, 2016); and *ABA Standing Comm. on Ethics and Prof'l Responsibility*, Formal Op. 466, http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/formal_opinion_466_final_04_23_14.authcheckdam.pdf.

The ABA, New York City Bar Association, and Oregon State Bar opinions all state, with some variation, that a lawyer may conduct "passive" review of a juror's public presence on the

Internet. The ABA Opinion defines "passive review" as review of information that is available without making an access request where the juror is unaware that a website or social media account has been reviewed. Under both the ABA and New York City Bar Association standards, requesting access to a private area on a juror's electronic social media constitutes a prohibited communication. Under Oregon's standard, however, a lawyer or her agent may request access to private social media accounts if full disclosure is provided.

Of the three ethics opinions listed on the California State Bar's website, the New York City Bar Association's opinion is the most restrictive. Whereas the Oregon and ABA opinions do not view system-generated communications (such as a LinkedIn profile view notification) as improper, the New York City Bar Association classifies system-generated notifications as improper attorney-juror communications. Here, Oracle's proposal adheres to the most restrictive standard set forth in the New York City Bar Association opinion—in fact, Oracle's proposal is even more conservative, as Oracle's proposal excludes proprietary databases (such as private investigator databases) and other investigative tactics commonly used to conduct juror research. Oracle's proposal is also consistent with the District of Idaho's rule on research of juror social media. *See* D. Idaho R. 47.2.

## **CONCLUSION**

Oracle appreciates the Court's concern regarding the possibility that some jurors or prospective jurors might be more inclined to conduct Internet searches about the case if they learn that the parties are conducting Internet searches on the venire. However, Oracle believes that the Court can explain why the parties may use the Internet in ways that the jurors or prospective jurors cannot, and that reasonable jurors or prospective jurors will understand and accept the Court's explanation. Oracle submits that its proposal for limited, passive Internet searches—for public information only—strikes the appropriate balance among the parties' constitutional rights, the privacy interests of jurors or prospective jurors, and the Court's concerns.

| | | |
|---|---|---|
| Dated: March 8, 2016 | | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | By: | */s/ Peter A. Bicks* <br> PETER A. BICKS |
| | | Attorneys for Plaintiff <br> ORACLE AMERICA, INC. |