ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>          Plaintiff,<br><br>     v.<br><br>GOOGLE INC.<br><br>          Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S RESPONSE TO ECF NO. 1535**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

1  Oracle shares the Court's privacy concerns and appreciates the Court's careful attention to
2  the nuances of this issue. Oracle's primary concern is avoiding problems that can sometimes
3  arise during trial due to juror social media use. This case is highly publicized and has generated a
4  significant amount of commentary over the Internet. Accordingly, while Oracle will not use
5  Internet or social media searches on prospective jurors during voir dire, Oracle requests that the
6  Court, as it did during the previous trial, provide clear instructions to the jury regarding juror
7  Internet and social media use during trial and deliberations. *See Judicial Conference Committee*
8  *Model Instruction* located at http://www.uscourts.gov/news/2012/08/21/revised-jury-instructions-
9  hope-deter-juror-use-social-media-during-trial (last visited March 15, 2016).

10  After the jury is sworn, the parties have the right (and some courts suggest a
11  responsibility) to conduct limited, passive Internet searches for public social media posts in order
12  to monitor for potential misconduct. *See* ECF No. 1529 at 3:4-4:13; 6:1-12. As the New York
13  City Bar Association opinion on jury social media searches indicates, "courts are increasingly
14  called upon to determine whether jurors' social media postings require a new trial," and where a
15  lawyer discovers improper social media activity, she should immediately inform the Court. *See*
16  http://www.nycbar.org/ethics/ethics-opinions-local/2012opinions/1479-formal-opinion-2012-02
17  (last visited March 15, 2016).

18  Oracle hereby responds to the specific questions posed in the Court's Further Request for
19  Information re Proposed Social Media Searches (ECF No. 1535) as follows:

20  **Question 1:** To what extent will your investigators be merely members of the
21  general public versus having and logging onto Facebook accounts (and other social media
22  accounts) in conducting searches?

23  **Oracle's Response:** Neither Oracle nor anyone working with Oracle will log into any
24  social media accounts to conduct searches on jurors or prospective jurors at any time.

25  **Question 2:** In the past, Facebook's default privacy setting was to extend access
26  to "friends of friends." This means that if the investigator is a friend of a friend of a prospective
27  juror (and the juror has rested on that default setting or otherwise made his or her profile
28  accessible to friends of friends) then the investigator will be able to see personal information of

1   the prospective juror not otherwise public.  To what extent do you contend that you should be

2   allowed to exploit the fortuity of a friend of a friend circumstance? And, how would you even

3   know that access was being allowed on that basis rather than on a public basis?

4     **Oracle's Response:**  Oracle does not believe that the parties should be allowed to exploit

5   the fortuity of a friend of a friend circumstance.  Oracle's agreement not to conduct any logged-in

6   searches eliminates the potential circumstance contemplated by the Court's question.

7     **Question 3:**  The judge presumes that neither side would exploit a situation in

8   which the investigator is a direct "friend" of the prospective juror so as to access information

9   available only to direct friends of the prospective juror.  Please confirm (or deny) this assumption.

10    **Oracle's Response**:   Confirmed.

11    **Question 4:**  For each of your proposed investigators who will log into Facebook

12  (or other social media accounts), state their name and the number of friends they have established

13  on their Facebook accounts (or other quantifiable connections such as followers on Twitter).

14    **Oracle's Response:**   Not applicable.  See response to Question 1.

15    **Question 5:**  State how you intend to use Facebook (or other) information

16  regarding (i) political preferences of prospective jurors, (ii) their religious preferences, (iii) their

17  relationship status, (iv) their photographs, (v) books, movies, and other items they have "liked,"

18  (vi) their favorite quotes, (vii) their location "check-ins," and (viii) their postings.

19    **Oracle's Response:**   As described above, Oracle has agreed not to conduct social media

20  research on prospective jurors during voir dire, and therefore will not be gathering the

21  information identified by the Court for use during voir dire.  After the jury is sworn, also as

22  described above, Oracle seeks the Court's approval to conduct passive Internet searches for

23  public postings by jurors during and after trial for the narrow purpose of discovering possible

24  juror misconduct that should be brought to the Court's attention.   As stated above, Oracle will

25  not conduct any logged-in searches at any time.

26    **Question 6**:  Give at least three concrete examples of information you expect to

27  find on a prospective juror that would lead to a for-cause challenge that would be unlikely to

28  surface during normal voir dire.

**Oracle's Response:** Although Oracle does not intend to use social media information during voir dire and does not expect any jurors or prospective jurors to engage in misconduct, three concrete, real world examples of information that did not surface during normal voir dire but that surfaced due to Internet searches are (1) social media connections to a witness or party, *see Sluss v. Commonwealth*, 381 S.W.3d 215, 221-22 (Ky. 2012); (2) social media communications showing prejudice, *see Shaw v. State*, 139 So. 3d 79, 88 (Miss. Ct. App. 2013) (court removed juror due to improper social media messages discovered during trial); and (3) dishonest answers regarding personal history, *see United States v. Parse*, 789 F.3d 83, 89 (2d Cir. 2015) (Internet searches revealed that juror had answered dishonestly regarding criminal history and state bar membership).

Dated: March 17, 2016

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  */s/ Peter A. Bicks*
PETER A. BICKS

Attorneys for Plaintiff
ORACLE AMERICA, INC.