ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>　　　　　Plaintiff,<br>　　v.<br>GOOGLE INC.<br>　　　　　Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S MOTION IN LIMINE #1 - TO EXCLUDE EVIDENCE OF OPENJDK INCLUDING EXPERT TESTIMONY THEREOF**<br><br>Hearing: April 27, 2016 at 8:00 a.m.<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

**NOTICE OF MOTION, MOTION, AND STATEMENT OF RELIEF SOUGHT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that the following Motion *In Limine* to Exclude Evidence of OpenJDK Including Expert Testimony Thereof will be heard on April 27, 2016, at 8:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable William Alsup presiding.

Plaintiff Oracle America, Inc. will, and hereby does, move this Court to exclude evidence, argument, and testimony, including expert testimony, about OpenJDK that is premised upon the notion that Google could have used OpenJDK for Android in 2007 or any time thereafter.  This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the materials attached to the Declaration of Andrew D. Silverman (cited hereinafter as "Ex. __") that are being filed herewith; the record in this matter; and such other and further papers, evidence, and argument as may be submitted in connection with this Motion.

Dated: March 23, 2016                                        Orrick, Herrington & Sutcliffe LLP

                                                             By: */s/ Annette L. Hurst*
                                                                 Annette L. Hurst

                                                             Counsel for ORACLE AMERICA, INC.

# TABLE OF CONTENTS

Page

NOTICE OF MOTION, MOTION, AND STATEMENT OF RELIEF SOUGHT

TABLE OF AUTHORITIES .................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

  A.   Sun Releases An Open Source Version Of The Java SE Platform ............................. 2

  B.   Google Rejects OpenJDK For Android ....................................................................... 3

  C.   Google's Discovery Disclosures Regarding Anticipated Use Of OpenJDK ............... 5

  D.   After Discovery Closes, Google Announces Its Intention To Use OpenJDK ............. 6

  E.   Google Intends To Argue That Events In December 2015 Demonstrate What It Could Have Done In November 2007 ................................................................ 6

I.   THE COURT SHOULD EXCLUDE OPINIONS, EVIDENCE, AND ARGUMENT RELATED TO AN OPENJDK COUNTERFACTUAL ............................... 7

  A.   The OpenJDK Counterfactual Is Contrary To All The Evidence And Risks Significant Prejudice, Confusion, And Undue Consumption Of Time ....................... 7

  B.   Google's Reliance On Post-Fact-Discovery Events Prejudices Oracle ..................... 10

II.   GOOGLE'S OPEN-SOURCE ATTORNEY CANNOT OPINE ON CONTRACT INTERPRETATION OR SPECULATE ABOUT A COUNTERFACTUAL ............................................................................................................ 10

III.   THE COURT SHOULD NOT PERMIT GOOGLE TO EVISCERATE OPEN-SOURCE LICENSES BY ARGUING THAT ADOPTION OF SUCH A LICENSE SUPPORTS FAIR USE .......................................................................................... 12

CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000)..................................................................................................7

*Crow Tribe of Indians v. Racicot*,
87 F.3d 1039 (9th Cir. 1996)..................................................................................................11

*Dream Games of Ariz., Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009)....................................................................................................8

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997)..................................................................................................................7

*Jinro Am. Inc. v. Secure Invs., Inc.*,
266 F.3d 993 (9th Cir. 2001)..................................................................................................12

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)..................................................................................................................7

*Lifshitz v. Walter Drake & Sons, Inc.*,
806 F.2d 1426 (9th Cir. 1986)..................................................................................................9

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
795 F.3d 997 (9th Cir. 2015)..................................................................................................13

*Monotype Corp. PLC v. International Typeface Corp.*,
43 F.3d 443 (9th Cir. 1994)....................................................................................................11

*Tennison v. Circus Circus Enterps., Inc.*,
244 F.3d 684 (9th Cir. 2001)....................................................................................................9

*Transwestern Pipeline Co. v. 46.78 Acres, More or Less, of Permanent Easement Located in Maricopa Cnty.*,
No. 2:07-CV-02312 JWS, 2010 WL 1728936 (D. Ariz. Apr. 26, 2010)................................11

*United States v. Thinn*,
489 F. App'x 195 (9th Cir. 2012) .............................................................................................9

*Wall Data Inc. v. L.A. County Sheriff's Dep't*,
447 F.3d 769 (9th Cir. 2006)....................................................................................................8

**Statutes**

17 U.S.C. § 107..........................................................................................................................9

17 U.S.C. 201(d) ..................................................................................................................13

**Federal Rules of Rules**

Fed. R. Evid. Rule 402 ......................................................................................................2, 9

Fed. R. Evid. Rule 403 ...................................................................................................2, 8, 9

Fed. R. Evid. Rule 702 ......................................................................................................2, 8

Fed. R. Evid. Rule 703 ...........................................................................................................2

Fed. R. Evid. Rule 706 ...........................................................................................................6

**Other Authorities**

*Android – An Open Handset Alliance Project,* Internet Archive WaybackMachine,
    Nov. 14, 2007, *available at*
    http://web.archive.org/web/20071114114446/http://code.google.com/android/k
    b/licensingandoss.html (last visited March 23, 2016)................................................4

Eben Moglen & Mishi Choudhary, *Software Freedom Law Center Guide to GPL
    Compliance – 2nd Ed.,* Software Freedom Law Center, Oct. 31, 2014, *available
    at* https://www.softwarefreedom.org/resources/2014/SFLC-
    Guide_to_GPL_Compliance_2d_ed.html (last visited March 23, 2016)...................3

Emil Protalinski, *Google confirms next Android version will use Oracle's open-
    source OpenJDK for Java APIs,* Venturebeat, Dec. 29, 2015, *available at*
    http://venturebeat.com/2015/12/29/google-confirms-next-android-version-
    wont-use-oracles-proprietary-java-apis/ (last visited March 23, 2016) .....................6

*GNU General Public License, version 2, with the Classparth Exception,* Free
    Software Foundation, Inc., June 1991, *available at*
    http://openjdk.java.net/legal/gplv2+ce.html (last visited March 23, 2016) ...............3

*JDK 7,* OpenJDK, July 7, 2011, *available at*
    http://openjdk.java.net/projects/jdk7/ (last visited March 23, 2016) .........................2

*JDK8,* OpenJDK, March 18, 2014, *available at*
    http://openjdk.java.net/projects/jdk8/ (last visited March 23, 2016) .........................2

Narayan Kamath, *android platform libcore,* Google Git, Dec. 24, 2015, *available
    at* https://android.googlesource.com/platform/libcore/+/
    5d52b7f03d93f3baf03fe37e3d21812e5f9cd361 (last visited March 23, 2016).........6

*Opensource, Java FAQs,* Internet Archive Wayback Machine, Nov. 16, 20026,
    *available at* https://web.archive.org/web/20061116051402/http://www.sun.
    com/software/opensource/java/faq.jsp#g1 (last visited March 23, 2016)..................2

ORACLE'S MOTION IN LIMINE #1 REGARDING
EVIDENCE AND OPINION ABOUT OPENJDK

R. Paul, *Why Google chose the Apache Software License over GPLv2 for Android,* arstechnica, Nov. 6, 2007, *available at* http://arstechnica.com/uncategorized/2007/11/why-google-chose-the-apache-software-license-over-gplv2/ (last visited March 23, 2016) ...................................................1, 5

Stephen Shankland, *Google carves an Android path through open-source world,* CNet, May 22, 2008, *available at* http://www.cnet.com/news/google-carves-an-android-path-through-open-source-world/ (last visited March 23, 2016) .............................5

Sun Microsystems, *Sun Opens Java*, Nov. 13, 2006, *available at* https://web.archive.org/web/20061116045838/http://www.sun.com/2006-1113/feature/story.jsp (last visited March 23, 2016) ...............................................................2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

In 2007, Sun made its Java Platform, including the Java APIs, available under an open-source license. Google made an explicit decision not to use Sun's open source version of the Java Platform (known as "OpenJDK") because the license was incompatible with Google's commercial goals for Android. Google planned to distribute Android source code, but the OpenJDK license (GPL version 2 with Classpath Exception) would not permit OEM handset manufacturers to modify that source code and maintain those modifications as proprietary. Instead, OpenJDK's "viral" quality would require the OEMs to publish such modifications as part of the give-back provisions in GPL, and to license those modifications with the same requirements. Simply put, using OpenJDK would have required Android to be viral in the same way.

As Andy Rubin, Brian Swetland, Dan Bornstein, and the rest of the Android team recognized at the time, a GPL license would kill the launch of the Android platform because the OEMs would not accept it. The OEMs expected to keep their modifications proprietary as a form of handset competition. Launching Android was a very risky venture, and that was too big a risk. So Google did not use Sun's open-source license, and it did not adopt a GPL license itself. Google announced its decision regarding Android licensing on its corporate blog ("Why are you releasing the code under Apache License instead of GPLv2?") and linked to an accompanying article explaining the choice at a popular technical blog, *Ars Technica*.[1]

Sometime after May 2015, Google removed that blog entry and link from its Android developer website. A few months later, on December 24, 2015, Google declared publicly for the first time that it intended to adopt OpenJDK for Android. Google tried to inject into this case its intention to use OpenJDK as a license defense, but then withdrew it since Android N is not released yet and has not been accused. ECF No. 1458.

Then, starting on January 8, 2016, Google began systematically attempting to rewrite history: It served three separate expert reports claiming that because Google announced its

---

[1] http://arstechnica.com/ uncategorized/2007/11/why-google-chose-the-apache-software-license-over-gplv2/.

- 1 -  ORACLE'S MOTION IN LIMINE #1 REGARDING
EVIDENCE AND OPINION ABOUT OPENJDK

intention to adopt OpenJDK on Christmas Eve 2015, it could have adopted OpneJDK eight years and 3.8 billion handsets earlier in November 2007. Google offers a lawyer, an engineer, and an economist to make this claim, and every single one of them ignores what actually happened.

Allowing Google's experts to present a hypothetical world in which it exploited a license that it in fact rejected is prejudicial to Oracle. Google is using experts and hypotheticals to avoid cross-examination of its fact witnesses based on the decisions that Google *actually* did make. The jury might think that Google had a license even though it did not. Google statements at the tutorial on February 24 exacerbate the potential for confusion. And, it will require a trial-within-the-trial about whether Google would have taken an open-source license to the Java APIs in 2007-08, even though the record evidence is abundant that Google repeatedly rejected Sun's open-source licenses.

Oracle moves to exclude under FREs 402, 403, 702, and 703 all evidence, argument, and expert opinions about OpenJDK that is premised upon the notion that Google could have used OpenJDK for Android in 2007 or any time thereafter. Specifically, Oracle moves to exclude:

- Any suggestion that Android could have used or been based on OpenJDK;
- Any mention of a counterfactual scenario involving OpenJDK, such as OpenJDK as a non-infringing alternative to Google's use of the 37 Java API packages;
- Any evidence of Google's recent actions or purported plans to use OpenJDK in Android, such as Google's Christmas Eve 2015 publication of Android source code; and
- Any evidence or argument that because Google could have adopted OpenJDK, it did not harm the market for the commercial version of the Java SE platform.

**STATEMENT OF FACTS**

**A.    Sun Releases An Open Source Version Of The Java SE Platform**

On November 13, 2006, Sun announced open-source implementations of editions of the Java platform, including Java SE, called "OpenJDK."[2] Sun completed the release of OpenJDK in May 2007.[3] The Java SE OpenJDK class libraries are licensed under the GNU General Public License, version 2 with Classpath Exception ("GPLv2-CE").[4] Sun (now Oracle) has since

---

[2] https://web.archive.org/web/20061116045838/http://www.sun.com/2006-1113/feature/story.jsp

[3] *See* http://mail.openjdk.java.net/pipermail/announce/2007-May.txt.

[4] *See, e.g.*, https://web.archive.org/web/20061116051402/http://www.sun.com/software/opensource/java/faq.jsp#g1 ("JDK is licensed under the GPL version 2 with the Classpath exception").

- 2 -    ORACLE'S MOTION IN LIMINE #1 REGARDING
EVIDENCE AND OPINION ABOUT OPENJDK

released two subsequent versions of OpenJDK: OpenJDK 7 (2011) and OpenJDK 8 (2014).[5]

The GPLv2-CE is a copyleft license.[6] Generally speaking, copyleft refers to making software publicly available free of charge, and requiring any modifications to or extensions of that software also be made freely available to the public under the terms of the same copyleft license.[7] Copyleft, like GPLv2-CE, does not solely affect the software that was originally licensed; rather, it affects the reproduction and distribution of derivatives as well. It can require developers who modify the original code to make their own changes available under the terms of the copyleft license, depending, for example, on how the original code is used or modified and how the product containing the code is distributed. In the commercial context, this could mean requiring a company to make *its own otherwise proprietary code* available to the world free of charge under the terms of the copyleft license. This self-reinforcing attribute is sometimes known as the "viral" effect of copyleft licenses, because it "infects" all downstream code.

**B.    Google Rejects OpenJDK For Android**

Contemporaneous internal Google documents show that immediately after Sun announced OpenJDK in 2006, Google rejected its use *because of the open-source license.* For example, after acknowledging that Sun is offering OpenJDK with a "'link exception' to GPL," TX 155, Android Chief Andy Rubin concluded that "GPL license (sun's [sic] license) doesn;t [sic] work for us," TX 154. Other communications at the time confirm that Google viewed the OpenJDK license as unacceptable. *See* Ex. 13 ███████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████ As a senior Android software engineer testified at his deposition:

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

[5] *See* http://openjdk.java.net/projects/jdk7/; http://openjdk.java.net/projects/jdk8/

[6] The GPLv2-CE *is* the GNU General Public License ("GPL"), version 2, but includes a "special exception." http://openjdk.java.net/legal/gplv2+ce.html.

[7] https://www.softwarefreedom.org/resources/2014/SFLCGuide_to_GPL_Compliance_2d_ed.html

1  Ex. 14 (Swetland) 139:3-8 (emphasis added).

2  The problem with the OpenJDK license was the effect that it might have on the device makers or handset manufacturers, known as original equipment manufacturers or "OEMs," as well as on the mobile carriers. In contrast to the iPhone, which is a complete consumer device that Apple produces and sells to carriers, Android is only an operating system. Google licenses the operating system to OEMs, who design and build their own phones. To differentiate their Android devices from each other, OEMs make proprietary modifications and add proprietary programs to the operating system code. TX 230 ("The problem with GPL in embedded systems is that it's viral, and there is no way (for example) OEMs or Carriers to differentiate by adding proprietary works"); Ex. 15 ███████████████████████████████████████ ███████████████████████████████████████████████████████ Ex. 16 ███████████████████████████████████████████████████████ ███████████████████ Indeed, even two years after OpenJDK was released, Google's Chief Java Architect Joshua Bloch viewed even the suggestion of using OpenJDK in Android as ███████████████████ Ex. 17. Bloch explained that suggesting ██████ was ██████ in that it had been considered but ████████████████ ███████████████████████████████████████ Ex. 18 (Bloch) 206:14-21.

At the time Sun announced and released OpenJDK, Google was on its roadshow putting together the Open Handset Alliance and attempting to convince OEMs to adopt Android. *See, e.g.*, Ex. 19 ██████████████████████████████████████████████ Google knew that a copyleft license would not work for Android because "the entire purpose" of Google's approach to Android was "to let [OEMs] differentiate on top of it," so they could distinguish their Android phones from other OEMs' Android phones. TX 230. When Google announced Android and first made its developer kit available in November 2007, it assured the

- 4 -

ORACLE'S MOTION IN LIMINE #1 REGARDING
EVIDENCE AND OPINION ABOUT OPENJDK

world it was not using GPLv2.[8]  Google's explanation, found in an accompanying blog post at *Ars Technica*, was that OEM handset manufacturers needed to maintain proprietary code to compete.[9]

In 2008, Rubin again reiterated his view that Android could not be GPLed:

> The thing that worries me about GPL is this: suppose Samsung wants to build a phone that's different in features and functionalit[ies] than (one from) LG.  If everything on the phone was GPL, any applications or user interface enhancements that Samsung did, they would have to contribute back.  At the application layer, GPL doesn't work.

http://www.cnet.com/news/google-carves-an-android-path-through-open-source-world/.

### C. Google's Discovery Disclosures Regarding Anticipated Use Of OpenJDK

Google first referenced its desire to inject OpenJDK into this case in a November 12, 2015 supplemental response to an interrogatory requesting Google to identify all licenses it has taken in connection with the development or release of any version of Android.  Ex. 20 (No. 37).  Because no Android version using OpenJDK actually existed, Google later withdrew its request to add an OpenJDK-based licensing defense.  ECF No. 1458.

Google's only other references to OpenJDK in written discovery came at the end of fact discovery in response to interrogatories.  Ex. 21 (No. 39).  Google identified OpenJDK as a non-infringing alternative for damages and argued that its infringement could not have caused fragmentation harm in light of OpenJDK.  Ex. 21 (No. 40).  Tellingly, this was the first time in more than five years of litigation (including before and during the first trial) that Google offered the idea that it could have simply adopted OpenJDK, despite 30(b)(6) topics and an interrogatory.

During a 30(b)(6) deposition a week earlier, Google's representative testified that Google was ████████████████████████████████████████ and so he was unable to testify competently about Google's understanding of how OEMs would react to OpenJDK. Google's representative testified that Google ██████████████████████████████████

---

[8] https://web.archive.org/web/20071114114446/http://code.google.com/android/kb/licensingandoss.html.

[9] http://arstechnica.com/uncategorized/2007/11/why-google-chose-the-apache-software-license-over-gplv2/.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 25 (Ghuloum) 29:22-31:7; 35:15-37:10.[10]  Google's representative was also unable to provide testimony about why Google ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 13:8-18.

### D.  After Discovery Closes, Google Announces Its Intention To Use OpenJDK

After fact discovery closed, Google posted code purporting to be based on OpenJDK in its Android source code repository.[11]  Shortly thereafter, Google expressed its purported intention to include OpenJDK-based code for the 37 Java API packages in a future version of Android.[12]  To date, however, Google has not released an official version of Android based on OpenJDK code, and Oracle has not accused any OpenJDK-based version of Android of infringement in this case. Google has confirmed that it is not asserting a license defense based on OpenJDK at trial.  *See* ECF Nos. 1456, 1458.

### E.  Google Intends To Argue That Events In December 2015 Demonstrate What It Could Have Done In November 2007

At trial, Google intends to argue to the jury that it "could have" used the 37 Java API packages from OpenJDK in 2007, using Google's current claim that it is considering OpenJDK in 2016 as its only supporting evidence.  The Court's own Rule 706 Expert has rejected this idea:

> [I]t strikes me as important that Google has not undertaken this action until now. Given the amount of litigation risk it faced, if an OpenJDK license was as good as a 'regular' license to the asserted copyrights, and this could be accomplished for less than $100,000, I would have expected Google to have transitioned to an OpenJDK license much sooner.

Dr. Kearl Rpt. ¶ 45.  Nevertheless, Google plans to present this counterfactual scenario (1) to suggest that the copyrighted works at issue are available for anyone to use free of restrictions as well as free of charge, (2) to try to show lack of market harm by Android under fair use factor four, and (3) as a newly conceived non-infringing alternative for damages.  Google's hypothetical world rewrites what really happened in 2007, wishes away Google's own contrary contempora-

---

[10] Two business days before the deposition, Google produced a Google email discussing a future release of Android based on OpenJDK, referred to as ▇▇▇▇▇▇▇▇▇▇▇▇  As best as Oracle can tell, that is the *only* document that Google produced relating to this project.

[11] https://android.googlesource.com/platform/libcore/+/5d52b7f03d93f3baf03fe37e3d21812e5f9cd361.

[12] http://venturebeat.com/2015/12/29/google-confirms-next-android-version-wont-use-oracles-proprietary-java-apis/

neous evidence, and ignores the terms, conditions, and consequences of the OpenJDK license.

Google's expert opinions reveal how Google intends to misuse OpenJDK:

- Mr. Hall – An attorney who purports to interpret the GPLv2-CE license, apply that interpretation to Android's inchoate plan to use OpenJDK code maybe in 2016, and opine, *based on that analysis alone*, that Google could have implemented OpenJDK in 2007.
- Dr. Astrachan – Google's technical expert opines that Sun's decision to release OpenJDK "for free" caused harm to the potential market for the Java SE platform under the fourth fair use factor, without support or expertise in evaluating market harm, and despite his belief that he has not "taken a position … on whether harm has come, in my analysis." Ex. 24 (Astrachan Dep.) 182:9-10; *see* Astrachan Mot. In Limine at 6-9.
- Dr. Leonard – Google's damages expert relies on OpenJDK as a "non-infringing alternative," on (among other topics) disgorgement, without even so much as acknowledging this Court's order that non-infringing alternatives are irrelevant to disgorgement. ECF No. 632 at 7. Lacking any relevant expertise, Dr. Leonard also has no basis to testify about the meaning and legal effect of open-source licenses. *See Leonard* Mot. In Limine at 8-9.

Google also previewed at the recent February 24 tutorial the confusing statements that it seemingly intends to make about OpenJDK:

- Although OpenJDK was released before Android (May 2007 versus October 2008), Google told the Court during its mini-opening that "shortly *after* Google launched Android, Sun decided it would make its entire API set, including the implementing code, free and open." Feb. 24, 2016 Tr. 16:20-22.
- Ignoring the complex licensing restrictions that are part of OpenJDK, Google stated: "Like many other Sun developments, they simply released it. It's open. Anybody can use it. It's like Apache." *Id.* at 17:1-2.
- When asked by the Court about the differences between OpenJDK and the Java platform, Google ignored that use of OpenJDK is subject to the GPLv2-CE license. *Id.* 56:24-57:23.
- When the Court asked Google why it did not "use OpenJDK back then," Google ignored the record and responded, "Because, among other things, Google had already been investing in developing its own independent implementations of the Java APIs at issue or using other's implementations. It had already assembled an Android platform. It was getting ready to launch." *Id.* at 57:24-58:8.

I. **THE COURT SHOULD EXCLUDE OPINIONS, EVIDENCE, AND ARGUMENT RELATED TO AN OPENJDK COUNTERFACTUAL**

A. **The OpenJDK Counterfactual Is Contrary To All The Evidence And Risks Significant Prejudice, Confusion, And Undue Consumption Of Time**

It is impermissible for experts to rely upon counterfactuals that are refuted by the record evidence. An expert's opinion must "fit" the facts of the case. *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). A court must focus on the "reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant*." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). In other words, an expert cannot simply

1  offer a counterfactual that is directly contrary to the record evidence. *Concord Boat Corp. v.*
2  *Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (excluding expert opinion when indisput-
3  able record facts contradict or render the opinion unreasonable). Among other problems, a
4  contrary rule would permit a party to take a position through experts that its own witnesses could
5  never sustain, thereby undermining the ability of the opposing party to cross-examine fact
6  witnesses on whether the counterfactual world came to fruition and whether it was even realistic
7  under the circumstances. There is not a scintilla of evidence to suggest that Google would have
8  released Android under GPLv2-CE. Every single piece of evidence is to the contrary. Google's
9  experts cannot avoid the record in this fashion. Consistent with Rule 702 and *Daubert*, Google's
10 experts cannot be permitted to testify that, in their opinion, Google could have or would have
11 adopted OpenJDK for Android when Google released Android in 2007-08.

12 Moreover, evidence, argument, and opinions regarding OpenJDK should be excluded
13 under Rule 403 because any arguable probative value is substantially outweighed by a danger of
14 unfair prejudice, confusing and misleading the jury, and unduly wasting valuable trial time. Fed.
15 R. Evid. 403; *accord Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 782-783 (9th
16 Cir. 2006) (affirming exclusion of evidence regarding plaintiff's licensing of other software under
17 a different license because the evidence was irrelevant and unduly distracting). Google seeming-
18 ly intends to confuse the jury by introducing evidence that there was a license that would have
19 allowed Google to copy a version of the 37 Java API packages without paying a license fee, even
20 though Google did not actually take that license—and, indeed, explicitly rejected it as incompat-
21 ible with its business objective of promoting OEM adoption of the Android platform. Google's
22 strategy appears to seek to bootstrap a finding of fair use because a no-charge license was avail-
23 able, even though Google repeatedly rejected the substantial restrictions of that license. *See*
24 *Dream Games of Ariz. v. PC Onsite*, 561 F.3d 983, 993 (9th Cir. 2009) ("'Unfair prejudice' with-
25 in [the Rule 403] context means an undue tendency to suggest decision on an improper basis").

26 In particular, as revealed at the tutorial, Google aims to argue to the jury that there was a
27 "free" license and that Google could have taken the license in 2007 (based on Google's declared
28 intention to adopt an OpenJDK-based Android version in 2016). Not only is this wrong, but per-

- 8 -  ORACLE'S MOTION IN LIMINE #1 REGARDING
EVIDENCE AND OPINION ABOUT OPENJDK

mitting Google to argue that it could have based Android on OpenJDK in 2007 will take considerable trial time, requiring at least two additional expert witnesses—Google's open-source witness Andrew Hall and Oracle's rebuttal expert Gwyn Murray—as well as the introduction of voluminous and complex fact evidence, including a significant number of witnesses and documents.

For example, Google's suggestion that, technically speaking, it could have used OpenJDK code via the GPLv2-CE license in 2007 requires the jury to determine whether that was a realistic option for Google. That complicated question requires testimony and evidence about **(1)** the terms, conditions, and requirements of GPLv2-CE, **(2)** the technical details of how Google structures Android and modifies the Java code in Android, **(3)** whether those technical details trigger the viral conditions of GPLv2-CE requiring Google to release additional Android source code under GPLv2-CE, **(4)** the technical details of OEMs' differentiation of their devices and modifications of the Android code, **(5)** whether those technical details trigger the viral conditions of GPLv2-CE requiring the OEMs to release their proprietary modifications to the public under GPLv2-CE, **(6)** the consequences to the adoption of Android by OEMs (and carriers) if they had been required to release their modifications, and **(7)** the reasons Google rejected OpenJDK in 2007. Similarly, Google's contention that Sun made the 37 Java API packages available free of charge requires testimony and evidence about **(1)** the non-monetary conditions and obligations of the GPLv2-CE license, **(2)** the nature, history, and effect of open-source licensing (including that it does not waive copyright protection), **(3)** the reasons Sun chose to release an open-source version of the Java platform, and **(4)** why Sun chose the GPLv2-CE license.

Evidence should be excluded under Rules 402 and 403 where it would lead to a "mini-trial on issues collateral to the case." *United States v. Thinn*, 489 F. App'x 195, 196 (9th Cir. 2012); *accord Tennison v. Circus Circus Enterps., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001). That is especially true here where the evidence offers (at best) minimal probative value and its introduction is likely to confuse the jury to Oracle's prejudice, while distracting the jury from the relevant question of whether Google's copying was a fair use under 17 U.S.C. § 107. Because any probative value of OpenJDK is clearly "outweighed by the considerable amount of time its admission would consume and the confusion it would cause the jury," it should be excluded. *See Lifshitz v.*

ORACLE'S MOTION IN LIMINE #1 REGARDING
EVIDENCE AND OPINION ABOUT OPENJDK

1 *Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1431-1432 (9th Cir. 1986).

### B. Google's Reliance On Post-Fact-Discovery Events Prejudices Oracle

Google should also be precluded from bootstrapping backwards its purported decision to use OpenJDK in 2016 to what it would have done eight years ago. The timing and motivation for Google's post-fact-discovery "release" of the OpenJDK-based Android code is highly suspect. Certainly the timing of the "release" appears to be a litigation ploy. Not only is OpenJDK a brand new "alternative," never discussed before or during the first trial, but Google has not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Supra* at 5-6. Moreover, during discovery, Google resisted providing information about what it deemed to be "future products," produced only a single document regarding ▮▮▮ and did not search its own custodial documents for information or documents related to OpenJDK or ▮▮▮ *See supra* at 5-6 & n.3. By waiting until after fact discovery closed and withholding relevant materials during discovery, Google prevented Oracle from conducting discovery relating to Google's OpenJDK-based Android code, such as asking the OEMs about their positions on Google's use of OpenJDK in the Android core libraries. In any event, no released version of Android contains OpenJDK-based code. ECF No. 1451. Allowing Google to argue to the jury that it is currently using OpenJDK code is therefore inaccurate and misleading.

Furthermore, the commercial landscape relevant to Google's "use" of the OpenJDK packages *now* is profoundly different from *2007*. In 2007, Google was trying to convince the OEMs and carriers to adopt a brand new mobile platform. Google had little (if any) bargaining power to impose its will on the OEMs and carriers or force them to use code subject to unappealing licensing terms. By contrast, today after the sale of 3.8 billion Android devices worldwide, Google has significant bargaining power to influence the OEMs and carriers to accept license terms they otherwise would not. In short, what Google is doing now is no indication of what Google could or would have done nearly a decade earlier.

## II. GOOGLE'S OPEN-SOURCE ATTORNEY CANNOT OPINE ON CONTRACT INTERPRETATION OR SPECULATE ABOUT A COUNTERFACTUAL

Google hopes to call an attorney "expert" Andrew Hall to testify about his interpretation

- 10 -   ORACLE'S MOTION IN LIMINE #1 REGARDING EVIDENCE AND OPINION ABOUT OPENJDK

of the GPLv2-CE license and whether Google could have used OpenJDK-based code in Android in 2007.  *See, e.g.*, Ex. 6 (Hall Op. Rpt.) ¶¶ 27, 122.  Mr. Hall's testimony should be excluded.

**A.**  Mr. Hall's opinion is nothing more than contract interpretation, for which "[e]xpert opinion is not proper."  *Crow Tribe of Indians v. Racicot,* 87 F.3d 1039, 1045 (9th Cir. 1996).  Moreover, Mr. Hall's "interpretation" flouts even the most basic principles of contract interpretation.  Mr. Hall opines on the meaning of the GPLv2-CE license *without discussing all relevant license terms*.  *See, e.g.*, Ex. 6 (Hall Op. Rpt.) ¶ 60 (not discussing the license's language but opining that "the GPL-2.0-CE license has a copyleft effect on certain modifications to the licensed software but not linking software"); ¶ 118 (similarly not discussing license's language in opining that "the GPL-2.0-CE imposes a copyleft effect on distributed modifications to [only] the OpenJDK-based Java API packages").

**B.**  Mr. Hall's opinion that OpenJDK would have been a commercially viable option in 2007 is inadmissible because it is unsupported speculation.  During his deposition, Mr. Hall admitted that he has no specialized knowledge about how businesses approached open-source due diligence in the relevant time period, Ex. 22 at 173:4-174:23, and he therefore has no basis to opine what companies would have thought of copyleft compliance at that time.

Moreover, while Mr. Hall concludes that Google could have used OpenJDK for Android in 2007, he inexplicably did *not even consider asking* Google why *it chose not to do so*.  *Id.* at 223:5-20.  Nor did Mr. Hall speak to any OEMs or carriers to gauge their acceptance of OpenJDK (either now or in 2007).  *Id.* at 54:9-55:5.  This is significant because, in 2007-08, Google was concerned that OEMs and carriers would not accept Android code connected to a copyleft license.  *Supra* at 3-5.  Mr. Hall's subjective belief—based on his reading of a license without reference to significant terms and provisions—does not "represent a useable standard for opinion testimony which would assist the jury."  *Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 449 (9th Cir. 1994) (rejecting evidence where witness sought to rely on his own subjective understanding of industry standards); *Transwestern Pipeline Co. v. 46.78 Acres, More or Less, of Permanent Easement Located in Maricopa Cnty.*, No. 2:07-CV-02312 JWS, 2010 WL 1728936, at *3 (D. Ariz. Apr. 26, 2010) ("specialized knowledge" connotes "more than subjective belief or

unsupported speculation").

**C.** Mr. Hall lacks expertise to provide technical opinions. As an initial matter, the source code Google has purportedly integrated into Android today (OpenJDK 8) was developed and ultimately released in 2014, *supra* at 2, and therefore was not available in 2007. For this reason alone, Mr. Hall's speculation that Google could have done ten years ago what it says it has done today is a factual impossibility.

Further, in Paragraphs 84-92, 94-101, and 118-120 of his Opening Report (Ex. 6), Mr. Hall purports to describe technical aspects of Java programming that he contends are relevant to his opinions. It is well-established that an expert can offer an opinion only "so long as ... [it] has a reliable basis in the knowledge and experience *of his discipline*." *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) (quotation marks omitted). In his deposition, Mr. Hall conceded that his "experience with Java is solely from personal development, projects on [his] own time." Ex. 22 at 73:8-9. Mr. Hall did not take any courses in Java in college, *id*. at 74:12-75:18, and has no professional experience with Java, *id*. 73:8-9. In his ordinary law practice, though Mr. Hall may draw from his background, he confessed that he must confirm his understandings with technical experts. *Id*. 78:7-79:12. In other words, Mr. Hall does not possess the technical expertise to be an expert on technical issues—even in his own practice.

### III. THE COURT SHOULD NOT PERMIT GOOGLE TO EVISCERATE OPEN-SOURCE LICENSES BY ARGUING THAT ADOPTION OF SUCH A LICENSE SUPPORTS FAIR USE

Google's final argument regarding OpenJDK is that Google could not have harmed the market for the Java platform in smartphones because Sun gave that platform away for free under OpenJDK. This argument likewise should be precluded because it misleadingly ignores the substantial licensing restrictions of GPLv2-CE, has no support in fair-use cases, and would eviscerate the enforceability and adoption of open-source licenses.

Google apparently intends to argue that because Sun offered OpenJDK without charge, Google cannot have harmed the potential market for or value of Java SE in smartphones by distributing it widely without permission. This argument completely ignores both the effect of Google's distribution of the Java API packages without a license from Sun/Oracle and the very

ORACLE'S MOTION IN LIMINE #1 REGARDING EVIDENCE AND OPINION ABOUT OPENJDK

substantial restrictions that come with the GPLv2-CE license. Google is basically saying that it had the right to take the OpenJDK code, strip it of its license, and do whatever it wanted, simply because that version of the Java platform was offered free of charge. This is an outrageous contention, but also one that could easily confuse the jury given the variable use of the moniker "free software" in the open-source world. If Google is permitted to make this argument, then Oracle will be required to call one or more experts to explain the nature of open-source licensing and why this is simply not true. It is unduly consumptive of time, and it is prejudicial to Oracle to force it to use valuable trial time to refute a premise that is so blatantly misleading in nature.

Nor is there any support in the fair-use case law for an argument that availability of an open-source license somehow precludes a market for a commercially palatable one. Such a premise would be inconsistent with the divisibility of rights that is a hallmark of the 1976 Copyright Act. 17 U.S.C. § 201(d); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1002 (9th Cir. 2015). And it is directly refuted by the record evidence that Sun and later Oracle have successfully engaged in a dual licensing approach for a decade, and that Google repeatedly rejected the OpenJDK license when it chose to copy the 37 Java API packages without a license from Sun/Oracle. Again, the theory of Google's experts does not in any way "fit" the facts of the case.

Finally, as a matter of public policy, Google should not be permitted to argue that the adoption of an open-source license necessitates a favorable finding on factor four of fair use. The infringer cannot be permitted to avoid liability by pointing to a license that it did not take and to which it did not adhere.

**CONCLUSION**

For the foregoing reasons, this Court should preclude all evidence, argument, and testimony (including expert testimony) about OpenJDK that is premised upon the notion that Google could have used OpenJDK for Android in 2007 or any time thereafter or that Sun/Oracle offering OpenJDK or Google's purported decision to adopt OpenJDK means its use of Oracle's Java API packages was fair.

1  Dated: March 23, 2016            Respectfully submitted,

2                                    Orrick, Herrington & Sutcliffe LLP

3                                    By: */s/ Annette L. Hurst*
                                        Annette L. Hurst

4                                    Counsel for ORACLE AMERICA, INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28