ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE'S MOTION IN LIMINE #5 TO EXCLUDE GOOGLE'S SURVEY EXPERT, DR. SIMONSON** <br><br> Hearing:  April 27, 2016, 8:00 a.m. <br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William H. Alsup |

**NOTICE OF MOTION, MOTION, AND STATEMENT OF RELIEF SOUGHT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that the following Motion *In Limine* Regarding Google's Survey Expert, Dr. Simonson will be heard on April 27, 2016, at 8:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable William Alsup presiding.

Plaintiff Oracle America, Inc. will, and hereby does, move this Court to exclude from trial Google's survey expert Dr. Simonson, including his survey, analysis, opinions, and conclusions. This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the materials attached to the Declaration of Andrew D. Silverman (cited hereinafter as "Ex. __") that are being filed herewith; the record in this matter; and such other and further papers, evidence, and argument as may be submitted in connection with this Motion.

Dated: March 23, 2016

Orrick, Herrington & Sutcliffe LLP

By: */s/ Lisa T. Simpson*
Lisa T. Simpson

Counsel for ORACLE AMERICA, INC.

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION, MOTION, AND STATEMENT OF RELIEF SOUGHT

TABLE OF AUTHORITES ................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

INTRODUCTION ..................................................................................................................... 1

I.  DR. SIMONSON'S SURVEY AND OPINIONS SHOULD BE EXCLUDED ENTIRELY AS IRRELEVANT AND BASED ON FLAWED METHODOLOGY ............................................................................................................. 1

    A.  Google's Survey Should Be Excluded Because It Asks The Wrong Questions, To The Wrong People, At The Wrong Time, And Misinterprets The Results ........................................................................ 2

    B.  The Survey Should Be Rejected Because It Lacks Any Control Group ........................ 5

    C.  The Results Are Skewed Because They Include Pre-Test Respondents ........................ 6

II. DR. SIMONSON SHOULD NOT BE PERMITTED TO TESTIFY IN PHASE I ................. 7

CONCLUSION ......................................................................................................................... 7

# TABLE OF AUTHORITES

**Page(s)**

**Federal Cases**

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
    923 F. Supp. 2d 1245 (S.D. Cal. 2013)............................................................................6

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
    No. CV 96-3281 MMM, 2003 WL 22038700 (C.D. Cal. Aug. 8, 2003) ..................7

*CytoSport, Inc. v. Vital Pharm., Inc.*,
    894 F. Supp. 2d 1285 (E.D. Cal. 2012) ..........................................................................6

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    618 F.3d 1025 (9th Cir. 2010)..........................................................................................1

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
    No. C 12-03762 SI, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014) .........................3, 4

*Lanphere Enters., Inc. v. Jiffy Lube Int'l Inc.*,
    138 F. App'x 20 (9th Cir. 2005) ...............................................................................3, 5

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    No. CV 05-6838 CAS, 2013 WL 6535164 (C.D. Cal. Dec. 9, 2013)..............1, 3, 4

*Reinsdorf v. Skechers U.S.A.*,
    922 F. Supp. 2d 866 (C.D. Cal. 2013)......................................................................1, 4, 6

*ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*,
    No. CV-11-01056-PHX-NVW, 2014 WL 99017 (D. Az. Jan. 10, 2014)..................4

*Wendt v. Host Int'l, Inc.*,
    125 F.3d 806 (9th Cir. 1997)............................................................................................1

**Other Authorities**

Norman Bradburn, Lance Rips, and Steven Shevell, "Answering Autobiographical
    Questions: The Impact of Memory and Inference on Surveys," *Science* (1987),
    vol. 236, No. 4798.............................................................................................................4

Shari Diamond, Reference Guide on Survey Research, in *Reference Manual on
    Scientific Evidence* .........................................................................................................5

**Dr. Simonson Reports And Declarations In Other Matters**

Dr. Itamar Simonson Declaration, *Fox Broadcasting Co. v. DISH Network L.L.C.*,
    No. 2:12-cv-04520 (C.D. Cal. Sept. 19, 2014), ECF No. 437-21 ............................2

Dr. Itamar Simonson Expert Report, *Safe Auto Ins. Co. v. State Automobile Mut. Ins. Co.*, No. 2:07-cv-1121 (S.D. Oh. Oct. 27, 2008), 2008 Misc. Filings LEXIS 8685 .................................................................................... 1-2, 5

Dr. Simonson Expert Report, *Larin Corp. v. Alltrade, Inc.*, No. EDCV 06-1394 (C. D. Cal. Feb 15, 2009), 2008 Misc. Filings LEXIS 4724 ........................................................................................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In yet another attempt to re-write history, Google retained Dr. Itamar Simonson, who purported to construct an ex post facto survey of app developers in December 2015/January 2016 to try to explain why app developers *in 2007-09* may have decided to write apps for Android, even if Google had not copied the 37 Java API packages. But, In fact, Dr. Simonson's conclusions are completely contradicted by voluminous, contemporaneous evidence *from Google* explaining that Google copied the Java API packages to tap into the massive Java developer community so those Java developers could write all of the useful, quirky, and entertaining apps that would make Android popular with consumers. That is, Google's own documents show that Google's strategy for Android's success relied on app developers' attraction to the Java APIs; not Dr. Simonson's survey is both irrelevant and unreliable and should be excluded.

## I. DR. SIMONSON'S SURVEY AND OPINIONS SHOULD BE EXCLUDED ENTIRELY AS IRRELEVANT AND BASED ON FLAWED METHODOLOGY

Survey evidence, like all other evidence, must be relevant to be admissible. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1036 (9th Cir. 2010); *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). A survey that does not have a tendency to make a fact of consequence more or less probable should be excluded as irrelevant. *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS, 2013 WL 6535164, at *2 (C.D. Cal. Dec. 9, 2013). Moreover, "[u]nless survey evidence is conducted according to accepted principles, it is not admissible in the first instance." *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878 (C.D. Cal. 2013). Dr. Simonson has conceded as much in other cases.[1]

---

[1] "[I]t is well accepted that the results of surveys are contingent on the methodology being employed; if the method is flawed on key survey dimensions, the survey results become unreliable

### A. Google's Survey Should Be Excluded Because It Asks The Wrong Questions, To The Wrong People, At The Wrong Time, And Misinterprets The Results

Dr. Simonson has argued in other cases that contemporaneous company evidence is important and that survey opinions that are "inconsistent" with a company's "own assessments, testimony, and actions … lack any real scientific basis." Simonson *Fox* Report ¶ 21 (*supra* n.1). "When an expert relies on survey evidence that presumably disproves reality and the expectations and behavior of experts in the domain at issue, one needs to examine that survey evidence carefully." *Id.* ¶ 43. Yet Dr. Simonson sets out here to do just that: to try to disprove the voluminous, contemporaneous evidence from Google that reveals that Google copied the 37 Java API packages to (1) tap into the massive community of "6M Java developers worldwide," TX 158 at 10, (2) "enable all [those] Java developers to quickly leverage their skills to build great Android apps," TX 238 at 1, and (3) allow Google to "leverage not only existing developers, but applications as well" for Android, TX 21. Indeed, Google used the Java APIs as ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Ex. 19. Google's attempts to rewrite history here must be excluded as irrelevant and unreliable.

To assist it in analyzing Dr. Simonson's survey, Oracle retained Dr. Olivier Toubia, Professor of Business and Faculty Director of the Lang Center for Entrepreneurship at Columbia Business School. Dr. Toubia is an expert in marketing research, innovation, social networks, and behavioral economics. Dr. Toubia found numerous, independently fatal flaws that require exclusion of Dr. Simonson's survey and his conclusions. Specifically, the survey asks the wrong question, § I.A.1, to the wrong people, § I.A.2, far too long after the relevant time period, § I.A.3. Then Dr. Simonson misinterprets the results. § I.A.4.

**1. The wrong questions.** The survey asks developers ▬▬▬▬▬▬▬▬

---

and irrelevant." Simonson Rpt., *Safe Auto Ins. Co. v. State Automobile Mut. Ins. Co.*, No. 2:07-cv-1121 (S.D. Oh. Oct. 27, 2008), 2008 Misc. Filings LEXIS 8685 at ¶ 11; *accord* Simonson Decl., *Fox Broadcasting Co. v. DISH Network L.L.C.*, No. 2:12-cv-04520 (C.D. Cal. Sept. 19, 2014) ("Simonson *Fox* Report"), ECF No. 437-21 ¶ 67 ("a survey that fails to ask the right questions, relies on flawed measures, or leads respondents to choose among a biased set of options cannot provide relevant information").

ORACLE'S MOTION IN LIMINE #5 RE:
GOOGLE'S SURVEY EXPERT, DR. SIMONSON

███████████████████████████████████████ But, in 2007-09, when Android was first released, the apps market was in its infancy and no one knew if developing apps would be profitable. Today, the apps market is well established, and app developers know there is an opportunity to make a profit, which makes them more likely today to invest in new apps and a new platform than they would have in 2007-09. *See* Ex. 11 (Toubia Rpt.) ¶¶ 26-36. The survey therefore "fail[s]" to "approximate actual marketplace conditions." *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2014 WL 572290, at *4-5 (N.D. Cal. Feb. 11, 2014).

The systematic failure to ask the correct question is most evident in Dr. Simonson's conclusion. The question Dr. Simonson was trying to answer was ████████████████ ████████████████████████████████████ Ex. 9 (Simonson Rpt.) ¶ 14. The results, however, led Dr. Simonson to conclude that ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

Accordingly, the survey and Dr. Simonson's conclusion should be excluded for failure to even address the question he purports to answer. *See Lanphere Enters., Inc. v. Jiffy Lube Int'l Inc.*, 138 F. App'x 20, 24 (9th Cir. 2005) (affirming exclusion of survey because the responses provided only "marginal support" for expert's opinions); *Negrete*, 2013 WL 6535164, at *2 (excluding survey that does not make a fact "more or less probable than it would [otherwise] be").

**2. The wrong people.** The survey seeks to report the decision-making of developers who ████████████████████████████████████████████ But, of 152 respondents, *only 18 respondents* ██████████████████████████████ Ex. 11 (Toubia Rpt.) ¶¶ 24, 39. This means nearly 90% of respondents ███████████████████████████████████████ ████████████████████████████ *Id.* ████████████████████████████████████████ Of those 18, ***only one*** ████████████████████████████████████████████████████ ████████████████ Ex. 11 (Toubia Rpt.) ¶ 24.[2] Many of the respondents (including the

---

[2] Dr. Simonson *attempted* to limit the survey to respondents who ████████████████████ ███████████ However, his screening was far too broad, as he accepted those ████ ████████████████████████████████████████████████████████████ Ex. 9 (Simonson Rpt.) at Ex. E2 at 2 (QA3) (emphasis added). The ████████████ language sweeps in respondents who ████████████████████████████

- 3 -   ORACLE'S MOTION IN LIMINE #5 RE: GOOGLE'S SURVEY EXPERT, DR. SIMONSON

1   other 17 relevant Android app developers), in fact, ███████████████████ For

2   example, in response to why ████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████ Ex. 9 (Simonson Rpt.) Ex. I.  In re-

5   sponse to a similar question about ███████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████████

9   *Id.* Those respondents did ████████████████████████████████████████████████

10  *Only one respondent* out of 152 was a developer in 2007-09 █████████████

11  ████████████████████████████████████████████████████ The survey did not in-

12  clude the right people.

13       A survey is inadmissible if it fails to examine "the proper universe" of people. *Kwan*

14  *Software Eng'g*, 2014 WL 572290, at *4-5; *ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, No.

15  CV-11-01056-PHX-NVW, 2014 WL 99017, at *2 (D. Az. Jan. 10, 2015) (excluding survey that

16  "makes no attempt to show that survey respondents were representative"); *Reinsdorf v. Skechers*

17  *U.S.A.*, 922 F. Supp. 2d at 877 (excluding survey as flawed for, among other things, being di-

18  rected at an unrepresentative population).

19       **3. The wrong time.**  The survey suffers from another methodological flaw with respect to

20  timing.  The few respondents who began offering apps in the relevant time frame (2007-09) made

21  this decision 7-9 years ago.  Not only does common sense dictate that people are unlikely to re-

22  member the details of their decision-making process from that long ago without any memory aids,

23  well-accepted survey methodology discourages surveys that purport to study things that happened

24  that long ago due to the recall bias that results.  Ex. 11 (Toubia Rpt.) ¶¶ 21-25, 37.  A recent study

25

---

26  ███.  Dr. Simonson must have realized the problem, because after initial pretesting, he added a question about ███████████████████████████████████████████████████████████ Ex. 9

27  (Simonson Rpt. ) ¶ 22, which revealed that only 22% of respondents █████████████████████ *id.* ¶ 39.  Of the 18 respondents ███████████████████

28  ███████████ only *one* reported ██████████████████████████████████████ Ex. 9 (Simonson Rpt.) Ex. I (response of caseid 100461 to Question 11a).

- 4 -     ORACLE'S MOTION IN LIMINE #5 RE:
                 GOOGLE'S SURVEY EXPERT, DR. SIMONSON

of recall found that for personal events, 20% of "critical details," selected at the time of occurrence to be "certainly remembered," are irretrievable after 1 year, and 60% are irretrievable after 5 years. Norman Bradburn, Lance Rips, and Steven Shevell, "Answering Autobiographical Questions: The Impact of Memory and Inference on Surveys," *Science* (1987), Vol. 236, No. 4798, at 158. Tellingly, Dr. Simonson readily admits to not recalling the reasons for important career decisions he has made, such as to which journal he submitted articles on his CV, despite agreeing that those articles are "important to [his] career as an academic." Ex. 26 (Simonson Dep.) 19:25-20:2.

**4. Misinterprets the results.** Though Dr. Simonson interprets the survey results to mean that developers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ his survey says otherwise. The single largest driver of developer decisions, according to Dr. Simonson, is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 9 (Simonson Rpt.) ¶ 40. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This, however, *directly counters* Dr. Simonson's conclusion (based on the same survey results) that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Because the survey does not support Dr. Simonson's opinions, both should be excluded. *Lanphere Enters.*, 138 F. App'x at 24.

**B.    The Survey Should Be Rejected Because It Lacks Any Control Group**

Dr. Simonson's survey also fails to include a control question or group. It is a generally accepted principle that a survey that purports to measure causation must include a proper control. Shari Diamond, *Reference Guide on Survey Research*, in *Reference Manual on Scientific Evi-*

1  *dence* at 397-98.[3]  Here, Dr. Simonson attempts to measure ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Ex. 9 (Simonson

3  Rpt.) ¶¶ 9-12; Ex. 26 (Simonson Dep.) 128:17-129:3.  Without a control, Dr. Simonson cannot

4  determine if his survey results are accurate, or reflect confounding factors or a flawed survey de-

5  sign.  Diamond, *Reference Guide* at 397-98; Ex. 11 (Toubia Rpt.) at ¶¶ 44-47.  This error alone is

6  sufficient grounds to exclude Dr. Simonson's survey.  *Reinsdorf*, 922 F. Supp. 2d at 878 (exclud-

7  ing survey where it failed to use adequate controls); *CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F.

8  Supp. 2d 1285, 1291 (E.D. Cal. 2012) (excluding survey that did not control for respondents'

9  preexisting beliefs); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245,

10 1257-58 (S.D. Cal. 2013) (excluding survey for bias, observing that "the problem was exacerbat-

11 ed because [the expert] did not use a control to test the accuracy of his survey").

**C.    The Results Are Skewed Because They Include Pre-Test Respondents**

13  Contrary to generally accepted survey standards, Dr. Simonson included in his final re-

14 sults, the results from a pre-test of his survey.  This means that he already knew what those re-

15 spondents had said and then made the decision whether or not to include them in his final tally.

16 Dr. Simonson's pre-test respondents answered an earlier, draft version of the survey.  Ex. 9 (Si-

17 monson Rpt.) ¶ 22.  Pre-test results are meant to ascertain whether a survey is working properly;

18 the responses are not meant to be included in the final results.  Ex. 11 (Toubia Rpt.) ¶ 62.  If a re-

19 searcher means to include the pre-test responses, he or she must commit to the plan before run-

20 ning the survey.  Ex. 27 (Toubia Dep.) 163:18-164:1.  Here, however, Dr. Simonson's inclusion

21 of pre-test responses allowed him to artificially increase the response numbers and handpick the

22 results.  For example, though Dr. Simonson surveyed only 18 developers who ▓▓▓▓▓▓▓▓▓▓

23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that number would have been even lower (14) without pre-test

24 results.  And, though the total responses (152) is quite low, the number would have been even

---

[3] Dr. Simonson has himself stated that "one of the most basic survey principles is that it includes a proper control."  Simonson *Safe Auto* Rpt. ¶ 45.  He has criticized surveys that fail to include a control because it "makes its results uninterpretable and makes it impossible to test the conclusion that the reported 'findings' merely reflected the survey's flaws."  Report of Dr. Simonson, *Larin Corp. v. Alltrade, Inc.*, No. EDCV 06-1394 (C. D. Cal. Feb 15, 2009), 2008 Misc. Filings LEXIS 4724 ¶ 44.

ORACLE'S MOTION IN LIMINE #5 RE:
GOOGLE'S SURVEY EXPERT, DR. SIMONSON

1 lower (129) without pre-test respondents.  Even more significant, Dr. Simonson decided to in-
2 clude the pre-test results only *after* reviewing the responses of the main survey.  Thus, he knew
3 whether they would bolster his conclusion or not before including them.  Ex. 26 (Simonson Dep.)
4 181:17-22.  This violates basic survey practice, as it *allowed Dr. Simonson to alter **the results*** by
5 increasing his respondents, and thus their answers, by nearly 20%.  Ex. 11 (Toubia Rpt.) ¶ 62; Ex.
6 27 (Toubia Dep.) 165:1-166:2.

**II.    DR. SIMONSON SHOULD NOT BE PERMITTED TO TESTIFY IN PHASE I**

For the foregoing reasons, the survey should be excluded and Dr. Simonson should not be permitted to testify at trial.  At the very least, Dr. Simonson should not be permitted to testify in Phase I on fair use.  Under this Court's scheduling order, Google was required to serve expert reports on "Fair Use – All Factors" on January 8, 2016.  ECF Nos. 1334, 1356.  Dr. Simonson did not submit a report on January 8, 2016.  He instead submitted a report the next month at the deadline for rebuttal technical reports and Google's damages report.  *Id.*  Having failed to submit a report on fair use, Dr. Simonson should not be permitted to testify in Phase I on fair use.  *See Carson Harbor Vill., Ltd. v. Unocal Corp.*, No. CV 96-3281 MMM, 2003 WL 22038700, at *2 (C.D. Cal. Aug. 8, 2003) (striking late expert reports).

**CONCLUSION**

For the foregoing reasons, Dr. Simonson's survey should be excluded, and Dr. Simonson should not be permitted to testify at trial.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: March 23, 2016 | Respectfully submitted, |
| 3 | | Orrick, Herrington & Sutcliffe LLP |
| 4 | | By: */s/ Lisa T. Simpson*<br>        Lisa T. Simpson |
| 5 | | Counsel for ORACLE AMERICA, INC. |