KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>                Plaintiffs,<br><br>        v.<br><br>GOOGLE INC.,<br><br>                Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**DEFENDANT GOOGLE INC.'S MOTION IN LIMINE NO. 3 RE IRRELEVANT TESTIMONY INTENDED TO SUGGEST VIOLATION OF PRIVACY OR ANTITRUST LAWS**<br><br>Hearing:     April 27, 2016<br>Dept.          Courtroom 8, 19th Fl.<br>Judge:        Hon. William Alsup |

1038157

**MOTION AND RELIEF REQUESTED**

Google moves the Court *in limine* to preclude Oracle from introducing at trial improper and irrelevant evidence or argument incorrectly insinuating that Google is violating the jurors' privacy rights, privacy laws, and antitrust laws. This includes evidence or argument reflected in Oracle's expert reports relating to: (1) Google's purported collection, use and sale of user data; and (2) purported attempts by Google to "control" or "dominate" markets. Because such evidence and argument are both irrelevant to the issues the jury must decide and unfairly prejudicial to Google, Google respectfully requests the Court exclude it under Federal Rules of Evidence 402, 403 and 404. This motion is based on the following memorandum of points and authorities in support, the Declarations of Maya Karwande ("Karwande Decl.") and Edward Bayley ("Bayley Decl.") and accompanying exhibits, the entire record in this matter, and on such evidence as may be presented at the hearing of this motion.

**ARGUMENT**

Oracle's expert reports demonstrate that it intends to waste the jury's and Court's time on irrelevant testimony incorrectly and improperly insinuating that Google is violating the jury's privacy, privacy laws writ large, and antitrust laws. Any such evidence or argument at trial is not only irrelevant to the fair use issues in this case, but also transparently intended to inflame jurors and invite undue prejudice against Google. It should be excluded.

A.  **Oracle's proffered expert testimony regarding Google's use of cookies is irrelevant and improper.**

Several of Oracle's experts needlessly and misleadingly opine at length regarding a particular aspect of how Google improves search and ad results for some of its users by using "cookies"—small pieces of text sent to the browser by certain websites the user visits.[1] Oracle purports to offer this evidence to explain to the jury "Google's monetization model," whereby Google offers users its search services for free and serves paid ads alongside the search results. While Google's business model may be, at a high level, relevant to this case, the specific nuances

---

[1] Google's use of cookies complies with privacy laws and is disclosed and described fully on Google's website. *See* https://www.google.com/policies/technologies/cookies/.

of how Google refines search results and ads for its users are not. Indeed, Google's business model is comprehensible and sufficiently described for this lawsuit without any reference to "cookies"—as demonstrated by the following explanation by Iain Cockburn, Oracle's damages expert in the first trial:

> Search, a service that is free to the end user, is at the heart of Google's business. The model is simple: Google's search engine is effective, fast, and free, and Google has attracted many users. Instead of charging users for searching web pages, Google places advertisements on the pages listing results from those searches, and it then generates revenues from advertisers.

Karwande Decl., Ex. 4 ¶ 146 (Cockburn, 2/3/2012 Rpt.).

Oracle also offers this testimony to support an incorrect allegation that Google needed to "develop a mobile platform quickly" "before it lost the opportunity to dominate the mobile platform so that it could generate revenue from advertising." *See* Bayley Decl., Ex. C ¶¶ 66-73 (Kemerer, 1/8/2016 Rpt.). But Oracle does not offer any explanation for why testimony regarding the alleged collection and use of user data has any relevance to this theory. It does not.

In fact, the true and improper purpose of this testimony is revealed by the "expert opinion" of Dr. Adam Jaffe on this subject, who posits:

> Google first introduced ad targeting based on user search behavior in 2008. An article in the New York Times describing the introduction of Google's search-based targeting based on searches describes the public's contemporaneous concerns about Google's use of data. Customers were unclear how Google would use the large amount of information collected about them through their use of Google products.

> A key factor in the debate is what Google, with its vast scale, does or may do with the data it has. Google controls two-thirds of the search market. It runs by far the biggest advertising network. Its DoubleClick unit is the biggest provider of ad technology to publishers and advertisers. Its toolbar is installed in many browsers, including every new Dell computer. And Google Analytics is gathering information from millions of Web sites.

> Privacy and Google's use of user data continues to be a prominent issue in public policy.

Bayley Decl., Ex. D ¶ 78 (Jaffe, 2/8/2016 Rpt.). Google's use of user data, and any alleged "concerns" or "prominent issues in public policy" related to that use, have no relevance to the jury's determination of fair use in this case or to a determination of damages.

Notwithstanding this fact, Oracle's experts offer repeated and factually inaccurate

testimony in their reports about Google's purported collection, use and sale of user data:

- A key activity for Google is gathering data "signals" from its users. Users' data signals provide specific information such as geographic location, search query content and web browsing activities, all of which can be collected, organized and sold to third parties, including retailers, manufacturers, service providers, advertisers, market researchers, law enforcement, or any other party interested in understanding how users interact with their digital devices and interfaces. Bayley Decl., Ex. C ¶ 68 (Kemerer, 1/8/2016 Rpt.).

- Each such activity generates user data signals that can be collected, organized and sold for profit to third-parties. *Id.* ¶ 70.

- Google collects user data regarding search and other online behavioral preferences, which is used to improve Google products and to provide a variety of targeting options to its advertisers. Bayley Decl., Ex. A ¶ 69 (Jaffe, 2/8/2016 Rpt.).

- Google captures its users' online behavior and then derives significant revenue from selling ads. The advertisers are essentially paying for access to Google's users and for the user-targeting that is made possible through Google's data collection activities. *Id.* ¶ 72.

These are only a few examples. *See also* Bayley Decl., Ex. C ¶¶ 69, 71, 73, 77 (Kemerer, 1/8/2016 Rpt.).

As explained above, this testimony does not hav[e] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Thus, it is inadmissible. Fed. R. Evid. 402. Moreover, even assuming for sake of the argument that it is marginally relevant, any such evidence or argument must be excluded under Rule 403 because it would prejudice Google by (1) creating the improper inference that Google is a bad actor, (2) wasting time and (3) distracting from the key issues of fair use at trial. The risk of prejudice is particularly keen here, where many of the jurors may be Google and/or Android users, and thus may take such implications of wrong-doing personally. Further, many of the statements are not only inflammatory, but also flat out wrong, which will force Google to waste time conducting a mini-trial within the trial to rebut this irrelevant testimony. The risk of prejudice substantially outweighs any marginal probative value of this evidence and argument, making its admission improper under Rule 403. *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1001–1010 (9th Cir. 2001), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) (trial court abused its discretion by admitting improper

3

1038157

expert testimony which was likely to inflame the jurors' biases).

**B.**   **Oracle's testimony suggesting that Google's actions violate antitrust law should be excluded for similar reasons.**

For analogous reasons, Oracle's experts' proffered testimony incorrectly insinuating that Google violates antitrust law should also be excluded. In paragraph after paragraph, Oracle's experts, including Dr. Adam Jaffe, who emphasizes his experience in "antitrust and competition issues," make incorrect and gratuitous statements such as:

- [I]t was a strategic imperative for Google to address the competitive threat posed by other mobile phones and mobile platforms, and to extend Google's PC search and other advertising monetization engines to a Google-controlled mobile platform. Bayley Decl., Ex. A ¶ 24 (Jaffe, 2/8/2016 Rpt.).

- Google-owned products provide important control advantages. … Google-owned site traffic is completely within its own control to be monitored, monetized and protected in furtherance of its own long-term financial and strategic interests. *Id.* ¶ 91.

- Against a backdrop of consumers' shifting use from desktop to mobile and key mobile industry [] players positioning for market dominance, Google decided to embark on building a mobile application platform that it could control. *Id.* ¶ 143.

- Google had a four-phase strategy designed to protect Google's search business by building and controlling the ecosystem of the (then) future mobile market. *Id.* ¶ 155.

- To that end, by May of 2007, Google had achieved a great deal of control over its web traffic, as Google.com became the world's most-visited website. … As Google's Eric Schmidt's comments suggest, Google in 2007 had executed a playbook that resulted in a strongly positive feedback cycle where users led to advertising revenue, and advertising revenue lead to increased ability to invest and control the ecosystem. *Id.* ¶ 92.

- The emergence of mobile apps has created a competitive landscape to "own" user engagement on mobile devices. … In addition to new platforms, this app competition landscape presented a significant challenge to Google's control of mobile users' attention. *Id.* ¶ 117.

- By 2007, Google had achieved a formidable position of scale that the industry viewed as unstoppable. *Id.* ¶ 93.

These are just a few examples. This is not an antitrust case, and attempts to invite the jury to infer the violation of antitrust laws is both improper and very likely to confuse and prejudice the jury. All such testimony should be excluded under Rule 403.

DEFENDANT GOOGLE INC.'S MOTION IN LIMINE NO. 3 RE IRRELEVANT TESTIMONY
INTENDED TO SUGGEST VIOLATION OF PRIVACY OR ANTITRUST LAWS
Case No. 3:10-cv-03561 WHA

1038157

**C.      Oracle's allegations have no probative value unless used to support an improper and prejudicial inference of bad character.**

Because the testimony Google seeks to exclude by this motion does not have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, Fed. R. Evid. 401, the most likely inference the jury will draw from this testimony is that Google is a bad actor who infringes and deserves to be punished. Such an improper inference could be particularly damaging in this trial, where Google's fair use defense implicates concepts of "good faith and fair dealing" and the "propriety" of Google's conduct. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985). Federal Rule of Evidence 404 prohibits such proof by attack of character, and Rule 403 requires the Court to protect litigants against the risk of such improper and prejudicial character inferences if there is even a modest likelihood of unfair prejudice. Fed. R. Evid. 403 and 404; *see also United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) ("'Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.'") (citing *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

Accordingly, Google respectfully requests the Court exclude irrelevant testimony suggesting Google violated the jurors' privacy, privacy laws, or antitrust laws from all phases of the trial.

Dated: March 23, 2016                                   KEKER & VAN NEST LLP


                                                        By:    */s/ Christa M. Anderson*
                                                               ROBERT A. VAN NEST
                                                               CHRISTA M. ANDERSON
                                                               DANIEL PURCELL

                                                               Attorneys for Defendant
                                                               GOOGLE INC.

DEFENDANT GOOGLE INC.'S MOTION IN LIMINE NO. 3 RE IRRELEVANT TESTIMONY
INTENDED TO SUGGEST VIOLATION OF PRIVACY OR ANTITRUST LAWS
Case No. 3:10-cv-03561 WHA

1038157