1  KEKER & VAN NEST LLP
   ROBERT A. VAN NEST - # 84065
2  rvannest@kvn.com
   CHRISTA M. ANDERSON - # 184325
3  canderson@kvn.com
   DANIEL PURCELL - # 191424
4  dpurcell@kvn.com
   633 Battery Street
5  San Francisco, CA 94111-1809
   Telephone:    (415) 391-5400
6  Facsimile:    (415) 397-7188

7  KING & SPALDING  LLP
   BRUCE W. BABER (pro hac vice)
8  bbaber@kslaw.com
   1185 Avenue of the Americas
9  New York, NY 10036
   Telephone:    (212) 556-2100
10 Facsimile:    (212) 556-2222

11 Attorneys for Defendant
   GOOGLE INC.

12                 UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                 SAN FRANCISCO DIVISION

15

16 | ORACLE AMERICA, INC., | Case No.  3:10-cv-03561 WHA |

17 | Plaintiffs, | **GOOGLE'S OPPOSITION TO MOTION IN LIMINE #2 TO EXCLUDE EVIDENCE OF APACHE, APACHE HARMONY, AND GNU CLASSPATH** |

18 |       v. | |

19 | GOOGLE INC., | |

20 | Defendant. | |

Hearing:    April 27, 2016
Time:       8:00 a.m.
Dept.       Courtroom 8, 19th Fl.
Judge:      Hon. William Alsup

21

22

23

24

25

26

27

28

1047144.01

1

2

**I.      INTRODUCTION**

3              Oracle seeks to exclude all evidence of Apache Harmony, the Apache Software

4      Foundation, the Apache License, and GNU Classpath from trial, despite the fact that Oracle itself

5      introduced the bulk of evidence on these topics and repeatedly elicited testimony about them at

6      the first trial.  The reason it wishes to keep the jury from hearing this evidence is clear.  Despite

7      Oracle's present attempt to paint Apache Harmony as an outlaw and infringer because of its use

8      of Sun's so-called "declaring code," Sun did not take that position when Apache was making

9      available its own open-source re-implementation of the Java API packages at issue in this case.

10     Instead, Sun's CEO said that Apache Harmony was free to ship, so long as it did not call itself

11     Java.  RT 2035:13-16; Decl. of Mullen to MIL Opp. ("Mullen Decl."), Ex. 9 (TX 2341).  And

12     Sun publicly applauded the use of Apache Harmony code in commercial products distributed by

13     IBM.  Moreover, at the first trial, Oracle's lead counsel candidly admitted that "[w]hen Oracle

14     was trying to protect itself, as you heard from Oracle witnesses, against the decay of Sun, Oracle

15     was backing this independent implementation [Apache Harmony] as well."  RT 1121:17-20.

16             The evidence relating to Apache Harmony and GNU Classpath is straightforward and

17     critical to presenting a complete picture of the facts showing fair use.  Both Apache Harmony and

18     GNU Classpath did, openly and notoriously, what Google stands accused of doing here:  they

19     copied the so-called "declaring code" for Java APIs and paired it with their own implementing

20     code.  Indeed, many of Android's class libraries originated from the Apache Harmony project.

21     Although Sun refused to grant Apache Harmony a license that would allow it to brand its

22     implementation as Java compatible, Sun did not assert that Apache was an infringer because it

23     used API declaring code; quite the opposite, Sun's CEO said that Harmony could "ship today."

24     Oracle held the same viewpoint:  it supported Apache's right to create an independent

25     implementation of Java by re-implementing the Java SE APIs, and publicly urged Sun to grant

26     Apache Harmony a license permitting Apache to call its implementation Java.  Indeed, Oracle

27     was the driving force behind the letter to Sun "imploring Sun to provide Apache with an

28     unrestricted license." ECF 1552 at 2; *see* Mullen Decl., Ex. 10 (Lord Dep. Ex. 83).

              This is what Oracle wants to keep from the jury:  potent evidence about whether Sun and

OPPOSITION TO ORACLE'S MIL #2
Case No.  3:10-cv-03561 WHA

1047144.01

1   other leading companies in the industry, including Oracle itself, considered independent re-

2   implementations of APIs by projects like Apache Harmony to be legitimate.  Google does not

3   claim that this would give it a license, as Oracle asserts.  Instead, this evidence is highly relevant

4   to Google's fair use claim because it shows that the practice in the industry, notably including by

5   both Sun and Oracle, was to permit, encourage and support re-implementations of APIs when the

6   re-implementer wrote its own implementing code.  Though it undermines Oracle's position on

7   fair use, Oracle has not established that it is prejudicial.  Oracle says that this evidence would

8   confuse the jury; however, the only thing that the jury would find confusing is how Oracle could

9   now argue that Apache Harmony was effectively a willful infringer during a time at which Oracle

10  was one of Apache's strongest supporters.  This evidence is highly relevant and admissible, and

11  therefore Oracle's motion should be denied in its entirety.

12  **II.     EVIDENCE RELATING TO APACHE HARMONY WILL AID THE JURY IN UNDERSTANDING INDUSTRY CUSTOM AND PRACTICE**

13

14          **A.     Apache could and did distribute Apache Harmony without a TCK license**

        Oracle claims that Apache Harmony had to pass the TCK in order to distribute its re-

15  implementation.  That is not so and in fact contrary to the evidence of record.  Apache only

16  needed to do so if it wanted to be able to call Apache Harmony Java compatible.  RT 1975:25-

17  1977:3.  Indeed, Oracle's Mark Reinhold noted in 2010 that ███████████████████████

18  ████████████████████████████████████████████████████████████████

19  ███████████████████████████████████████   Mullen Decl., Ex. 11 (Reinhold

20  Dep. Ex. 1512).  Though Oracle's attorneys now claim, years later, that Sun's specification

21  license was for "declaring code," that term (unsurprisingly) is not used in the specification

22  license.[1]  Notably, Oracle cites no sworn testimony or document in support of its assertions

23  regarding the alleged consequences of distributing Apache Harmony without taking the TCK –

24  only the specification license itself.  And the specification license demonstrates that Sun did not

25  even consider the so-called "declaring code" to be "source code," because its grant of permission

26  to create "Independent Implementations" was only for implementations that did not "derive from"

27

28  _____

[1] Nor is the term "declaring code" found anywhere in TX 1045 (Mullen Decl., Ex. 12), even
though Oracle inserts that term in brackets as part of its quotation from that document.

1047144.01

1    or "include[] any of Sun's source code."  Mullen Decl., Ex. 13 (TX 610.1).  It would be

2    impossible to create such an implementation if the term "source code" included the method

3    declarations that are required to create a compatible implementation of Java SE.

4         Moreover, Oracle's suggestion that Apache Harmony did not distribute its source code is

5    incorrect: an IBM representative has provided sworn testimony that it used source code derived

6    from Apache Harmony in its IBM Java SE SDK.  Mullen Decl., Ex. 14 (Duimovich Dep. 38:12-

7    20).  Indeed, Sun publicly promoted IBM's use of Apache Harmony code in commercial

8    products.  At the 2009 JavaOne conference (hosted by Sun), IBM demonstrated Apache Harmony

9    and showed that "developers [could] generally expect that just about any Java module dropped

10   into Apache Harmony [would] work."  Mullen Decl., Ex. 15 (GOOG-10002049).  Moreover,

11   reports posted on Sun's corporate website expressly noted that "[t]he Apache Harmony project is

12   more than an exercise in Java runtime innovation for IBM.  According to [Craig] Hayman [IBM's

13   vice president of WebSphere software], Apache Harmony is in broad commercial use.  In fact,

14   IBM's Lotus Notes and SameTime, Symphony, and Expeditor are all built on a Harmony base."

15   *Id.*

16        Thus, evidence relating to Apache Harmony will not, as Oracle claims, require the jury to

17   "unravel" Sun's licensing.  It will, however, demonstrate that Sun did not consider declaring code

18   to be off-limits to those wishing to independently implement Java APIs, and that Apache

19   Harmony was in widespread commercial use as a result.  Oracle is free to introduce evidence of

20   its current position that Apache Harmony was a copyright infringer not shielded by principles of

21   fair use; however, it should not be permitted to exclude evidence that Sun, and Oracle before it

22   bought Sun, behaved in a manner that is inconsistent with, and undermines, that position.

23        **B.     Oracle proffered much of the evidence that it now seeks to exclude**

24        Though Oracle now claims that this evidence, so damaging to its position on fair use,

25   should be excluded, Oracle fails to note that it was the party that offered most of the evidence it

26   now seeks to exclude during the first trial.  Four of the five exhibits that Oracle seeks to exclude

27   were introduced by Oracle.  *See* Mullen Decl., Ex. 16 (TX 917, Apache open letter to Sun); *id.*,

28   Ex. 12 (TX 1045, Apache Software Foundation letter resigning from the JCP Executive

1   Committee); *id.*, Ex. 17 (TX 1047, Apache open letter to Sun and FAQs); and *id.*, Ex. 18 (TX

2   2347, letter to Sun regarding Apache).  Oracle also affirmatively elicited testimony relating to

3   Apache in direct examinations of multiple witnesses.  *E.g.*, RT 393:23-394:15; 522:9-530:24;

4   986:11-987:10; 2308:18-2309:7.

5          Despite eliciting much of the evidence relating to Apache Harmony in the first trial,

6   Oracle now seeks to bar *all* evidence relating to Apache.  Oracle points to a number of notes sent

7   by the jury to suggest confusion during deliberations.  But Oracle omits to mention that the

8   majority of the juror notes that it cites were submitted by the jury *during the presentation of*

9   *evidence* in response to the Court's invitation to submit questions.  Only one note mentioning

10  Apache came after the close of evidence, and it dealt only tangentially with Apache.  *See* ECF

11  1193 at 10.  Moreover, Oracle parses each jury note to inflate the number of questions posed.  For

12  example, it seems that Oracle counted five questions from the following query:  "What formal

13  communication did Sun have (i.e. revoke license?  Have Apache stop distributing?  Contact those

14  who acquired Apache to caution about use?)  If not, why not?  If so, when?"  But these are all

15  getting at one fundamental question:  what, if anything, did Sun do to stop Apache from

16  distributing Apache Harmony code?  The answer to that question is clear: Sun did not take action

17  to stop Apache from distributing Apache Harmony code.  It knew of and promoted the use of that

18  code in commercial products.  It only refused to give Apache a license that would allow it to call

19  the Apache Harmony project Java.

20  **III.     EVIDENCE RELATING TO APACHE HARMONY IS RELEVANT TO FAIR USE**

21         Section 107 of the Copyright Act lists several factors to be considered when determining

22  fair use:  (1) the purpose and character of the use, including whether such use is of a commercial

23  nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the

24  amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

25  (4) the effect of the use upon the potential market for or value of the copyrighted work.  *Sega*

26  *Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1521-22 (9th Cir. 1992).  The Ninth Circuit has held

27  that in balancing these factors, a court should "bear in mind" that "fair use is appropriate where a

28  'reasonable copyright owner' would have consented to the use, i.e., where the 'custom or public

4

1047144.01

1  policy' at the time would have defined the use as reasonable." *Wall Data Inc. v. L. A. Cty.*

2  *Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006) (quoting Subcomm. on Patents, Trademarks &

3  Copyrights of the Sen. Comm. on the Judiciary, 86th Cong., 2d Sess., Study No. 14, Fair Use of

4  Copyrighted Works 15 (Latman) (Comm. Print 1960)).

5         Evidence relating to Apache Harmony is just the sort of evidence of custom in the

6  industry that the Ninth Circuit has said should factor into a fair use inquiry.  The fact that Sun

7  knew of Apache Harmony's use of the Java SE declarations in combination with its own

8  implementing code and not only did not ask them to stop, but also actually took the position that

9  they were free to ship so long as they did not call themselves Java is powerful evidence that those

10 in the industry – including Sun – considered the re-implementation of APIs to be a fair use.

11        Evidence relating to Apache Harmony also bears on the fourth factor – the potential for

12 market harm.  Evidence that Sun believed, and indeed publicly affirmed, that Apache was free to

13 ship as long as it did not call itself Java goes directly to the fact that Sun did not view any adverse

14 impact from a re-implementation of the APIs as a cause of compensable market harm.

15        Finally, Oracle contends that this evidence is not relevant because it is not required to

16 pursue all alleged infringers.  But Google does not offer this evidence to argue a waiver; the point

17 is not that Sun needed to sue in order to retain its rights, but rather that Sun never even took the

18 position that use of the declarations was an infringement.  To the contrary, Sun said that Apache

19 Harmony was free to ship.  Certainly in assessing whether a reasonable copyright owner would

20 have consented to Google's use of the declaring code from the 37 API packages, the jury is

21 entitled to consider evidence regarding the industry custom to allow re-implementations of APIs,

22 so long as the re-implementer wrote its own implementing code.  Even if not dispositive of the

23 fair use inquiry, it is perhaps the best evidence available as to industry custom at the relevant

24 time, and therefore should be provided to the jury to aid in their deliberations on fair use.

25 **IV.    EVIDENCE RELATING TO APACHE HARMONY IS NECESSARY TO
          RESPOND TO CLAIMS OF COPYING BY ORACLE**
26
          Oracle has attempted to paint Google as a willful copyist, claiming that there are "a lot of
27
   indications of conscious guilt." RT 210:14.  Despite the fact that the question of copying was
28
   resolved by the first jury, and Oracle's acknowledgement in the motion itself that Google used

5

1047144.01

1    packages from Apache Harmony to create Android, ECF 1552 at 2, Oracle has suggested that it

2    might attempt to argue that Google copied Sun source code.  Against this backdrop, it is essential

3    that Google be permitted to offer evidence of how it actually obtained some of the implementing

4    code that it uses in Android – through open source projects like Apache Harmony.

## V.     EVIDENCE RELATING TO GNU CLASSPATH IS LIKEWISE MORE PROBATIVE THAN PREJUDICIAL

Oracle says little about why GNU Classpath should be excluded, noting without

explanation that GNU, which likewise employed declaring code copied from Java SE, was

distributed under a different license.[2]  This has nothing to do with the main point:  that Sun once

again did not say that GNU was infringing when it copied the declaring code at issue here.

Indeed, Oracle does not even claim that GNU Classpath had requested and been denied a license.

That is because Sun knew about, but did not do anything about, GNU Classpath.  RT 1972:8-

1973:8.  This was no doubt in part because "they were bringing more developers into Java."  *Id.*

## VI.    EVIDENCE RELATING TO THE APACHE LICENSE IS RELEVANT

It is factually true that Google drew initial versions of some of the implementing code

used in Android from the open source Apache Harmony project, which distributes its source code

under the Apache License, version 2.0.  *See* http://harmony.apache.org;

http://www.apache.org/licenses.  Oracle claims that "Apache could not grant such a license," ECF

1552 at 3, but that is incorrect:  Apache could absolutely grant a license to the implementing code

that it developed on its own and that Google used in part to create Android.  But Google does not

contend, and has not contended, that its license from Apache gives it any rights vis-à-vis

Sun/Oracle.  Oracle should not be permitted to exclude evidence based on a theory of the case

that Google has never espoused.

Finally, Oracle asks, without any supporting justification, that Google be barred from

saying that it distributes portions of Android under the open source Apache License.  Under

normal circumstances, Google would not anticipate a need to do more than to explain that it uses

a permissive open source license to distribute Android.  However, Oracle has put the question of

---

[2] Notably, the trial transcript that Oracle cites relating to the GPL license does not even mention GNU Classpath.

6

1047144.01

the specific licenses that are used to distribute Android in play in its expert reports by claiming

that the Apache License is incompatible with the license under which Oracle distributes

OpenJDK.  Accordingly, it will be necessary for Google to explain that it has selected the Apache

License for distributing many parts of Android and why it has done so in order to rebut Oracle's

arguments regarding supposed license incompatibility.

## VII.   CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court deny Oracle's

motion to preclude all evidence relating to Apache Harmony, the Apache Software Foundation,

the Apache License, and GNU Classpath.


Dated:  April 6, 2016                                         KEKER & VAN NEST LLP


                                                  By:    /s/ Robert A. Van Nest
                                                         ROBERT A. VAN NEST
                                                         CHRISTA M. ANDERSON
                                                         DANIEL PURCELL

                                                         Attorneys for Defendant
                                                         GOOGLE INC.