KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   (415) 391-5400
Facsimile:    (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:   (212) 556-2100
Facsimile:    (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>       Plaintiffs,<br><br>  v.<br><br>GOOGLE INC.,<br><br>       Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**DEFENDANT GOOGLE INC.'S OPPOSITION TO ORACLE'S MOTION IN LIMINE #3 REGARDING DR. ASTRACHAN**<br><br>Hearing:   April 27, 2016<br>Time:       8:00 a.m.<br>Dept.       Courtroom 8, 19th Fl.<br>Judge:     Hon. William Alsup |

I.     INTRODUCTION

Oracle does not even try to disguise that it seeks partial summary judgment, as evidenced by its request for relief: to preclude Dr. Astrachan and Google from advancing *any* fair use defense based on factor one.[1] Even more remarkable, although the Federal Circuit held that Google's arguments regarding transformation could not be resolved as a matter of law and *required* remanding for a jury trial, Oracle's motion asks the Court to resolve that issue itself. But Oracle's motion should be denied as to the first statutory factor because Google can demonstrate, under the proper test, that its use of the same declaring code and structure, sequence, and organization ("declarations/SSO") of the accused 37 Java SE API packages is transformative.

The Court should also deny Oracle's motion as to Dr. Astrachan's opinions that using the declarations/SSO fosters compatibility and interoperability for those developers familiar with the Java programming language. Here, too, the Federal Circuit expressly recognized the relevance of such evidence to the fair use inquiry based on Ninth Circuit law, including *Sega* and *Sony*. Because Oracle's motion incorrectly rests on the contrary premise, it should be denied.

Finally, the Court should reject Oracle's motion as to Dr. Astrachan's opinions regarding the fourth statutory factor (market harm). As is clear from his report, Dr. Astrachan's related opinions derive from his *technical* expertise; he neither claims to have economic expertise, nor purports to provide any market analysis that would warrant preclusion.

II.    ARGUMENT

    A.    **Oracle Provides No Basis in Law or Fact for Precluding Evidence and Argument In Support of Factor One (Commerciality and Transformation).**

        1.    **Transformation does not require changing the copied material itself.**

Oracle's motion rests on the mistaken premise that Google cannot, *as a matter of law*, prove transformation of the declarations/SSO of the 37 Java SE API packages. As the Federal Circuit reiterated, "[a] use is 'transformative' if it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.' The critical

---

[1] The Court has expressly admonished the parties to "NOT submit partial summary judgment motions disguised as motions *in limine*." ECF 1488 at 2.

question is 'whether the new work merely supersede[s] the object of the original creation . . . or instead adds something new.'"[2]  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).  Furthermore, the Federal Circuit acknowledged, "[c]ourts have described new works as 'transformative' when 'the works use copy-righted material for purposes distinct from the purpose of the original material.'"  *Id.* (quoting *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003)).  In short, transformation can result from the *addition* of material for a *different* purpose.

Applying these standards, there is no basis to preclude Google from arguing transformation.  As Dr. Astrachan explains in his report, Android *added something new* to the declarations/SSO because (a) the corresponding implementing code in Android is different and customized for the mobile environment; (b) they are incorporated into the Android Core Libraries, which include over 100 additional Android-specific APIs; and (c) the Android Core Libraries are integrated into a much larger smartphone platform created by Google.  *See* ECF 1563-4 ¶¶ 134-143.  Moreover, Android also uses the declarations/SSO of the 37 Java SE API packages for a *further purpose and different character* than the asserted works.  The asserted works—Java SE 1.4/5—target desktops and server computers, and their class libraries provide 166 API packages with functionality directed to that purpose.  But Android only used the declarations/SSO for 37 of those API packages for *purposes distinct from the purposes of the original material*: a smartphone platform.  *See id.*  In so doing, Android did not *supersede* the object of Java SE 1.4/5.  In fact, there is no allegation that Android has displaced Java SE (for desktops and servers), and Oracle's lost profits analysis does not rest on a single lost license as to those works.  All of this begs the question as to what basis Oracle has for moving *in limine* to exclude any argument by Google on the critical issue of transformation.

---

[2] This is the same standard Dr. Astrachan applied for purposes of his expert analysis.  *See* ECF 1563-4 ¶ 25 (quoting and citing *Campbell* for the same proposition); *see also* ¶¶ 133, 141, and 142 (echoing this legal standard in the analysis).

Oracle's legal argument incorrectly focuses on the misconception that the copyrighted material itself must be modified in order to claim transformation.[3] That is too myopic a view of the legal test; indeed, the test would collapse in on itself if one focused only on the copied material. Certainly the law is otherwise. For example, the Ninth Circuit has repeatedly held that thumbnail images of a copyrighted work are transformative. In *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2002), the issue was whether an internet search engine could display such thumbnail images, and—like Oracle—the copyright holder asserted that "because Arriba reproduced his *exact images* and added nothing to them, Arriba's use cannot be transformative." *Id.* at 818-19 (emphasis added). But the court concluded that "Arriba's use of the images serves a different function than Kelly's use—improving access to information on the internet versus artistic expression." *Id.* at 819. Thus, "[b]ecause Arriba's use is not superseding Kelly's use but, rather, has created a different purpose for the images, Arriba's use is transformative." *Id.*

Addressing similar issues in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), the Ninth Circuit again deemed thumbnail images in the context of internet search engines "highly transformative." Relying on *Campbell* and *Kelly*, the court found fair use because "Google uses Perfect 10's images in a new context to serve a different purpose." *Id.* at 1165. In so holding, the court explained that:

> The fact that Google incorporates the *entire* Perfect 10 image into the search engine results does not diminish the transformative nature of Google's use. As the district court correctly noted, we determined in *Kelly* that even making an *exact copy* of a work may be transformative so long as the copy serves a different function than the original work.

*Id.* (emphases added; citations omitted). In short, although in *Perfect 10* (and *Kelly*) the copyrighted work itself was not changed, its use in a different context still allowed it to be transformative. *Id.* Accordingly, even if Google did not change the declarations/SSO, as Oracle alleges, the fact that it used them for a distinct purpose, with different implementing code, and integrated alongside additional API packages and other framework components, demonstrates that Dr. Astrachan applies the correct legal standard for his analysis.

---

[3] "The relevant inquiry under the proper legal standard is changes made to the *expression* of the *original copied material*." ECF 1533-4 at 2 (emphases in original).

Other parallels in the law support this view. For example, the use of copyrighted material, unchanged, in a collage-type visual work has repeatedly been deemed transformative. *See Cariou v. Prince*, 714 F. 3d 694 (2nd Cir. 2013); *Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 611 (2d Cir. 2006).

Oracle's cited caselaw does not prove otherwise. To the contrary, *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't* explicitly supports the above principles. As explained in *Wall Data*, "[a] use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." 447 F.3d 769, 778 (9th Cir. 2006). In fact, this legal principle was quoted by the Federal Circuit in this case and by the Ninth Circuit in *Perfect 10*. *See Oracle Am.*, 750 F.3d at 1374; *Perfect 10*, 508 F.3d at 1165. And although the use of copyrighted material in *Wall Data* was not deemed to have been a fair use because the accused infringer there simply copied a full software program onto more computers than it was licensed to use, that does not square with the facts here. Android does not contain an exact copy of Java SE 1.4/5; it uses only the declarations/SSO for part of 37 Java SE API packages, with different implementing code, and for a purpose distinct from Java SE's purpose. For similar reasons, neither *Micro Star v. Formgen Inc.* nor *Storm Impact, Inc. v. Software of the Month Club* have any bearing on this case; those cases address compiling independent but complete software works onto CD. *See Micro Star*, 154 F.3d 1107 (9th Cir. 1998); *Storm Impact*, No. 95 C 2154, 1997 WL 566378 (N.D. Ill. Sept. 8, 1997). Here the issue is different: whether using non-contiguous lines of declaring code—not an operational sequence of implementing code—can constitute fair use.

Finally, given these legal standards, there is no basis to exclude Dr. Astrachan's opinions based on the test he applied for evaluating transformation. *See* ECF 1553-4 at 3-4. First, as noted above, Dr. Astrachan quoted the applicable law from *Campbell* and echoed it in his analysis. Second, the way Dr. Astrachan summarized the test in a perfectly fitting way; that is, he considered whether a use was "very similar to . . . or very different from an 'opening new horizons' as it were." *See id.* (citing Ex. 24 at 163:6-10). Contrary to Oracle's critique, that is precisely the analysis required by the Supreme Court, Federal Circuit, and Ninth Circuit.

### 2. Oracle falsely claims admissions by Dr. Astrachan.

Oracle next identifies purported admissions by Dr. Astrachan that the declarations/SSO do the "same thing" in Android as in Java. ECF 1553-4 at 2. Specifically, Oracle contends that:

> Dr. Astrachan expressly admits that the declaring code and structure, sequence, and organization that Google copied do the *same thing* in Android as they do in Java: "[T]he Java APIs serves the purpose of helping the user understand and use the software in the Java platform, it also, *to that same extent*, helps the user understand and use the software in the Android platform."

*Id.* (citing Ex. 24 (Astrachan) at 78:6-22 (emphasis in Oracle motion)). Remarkably, although characterized as an express admission by Dr. Astrachan, the quoted language is actually the *question* posed by Oracle's attorney, which related to whether APIs provide ways to understand and use software. *See* ECF 1566-7 at 77:22-25. Moreover, the *answer* by Dr. Astrachan was different:

> I think that's a complex statement that is basically true in the sense that knowing how the API is structured in Java will be -- will help in writing an Android program where the API is the same. But I want to make it, you know, clear that you need other things -- you need other knowledge to write something for the Android platform that you might not need in the Java platform. So with that small proviso, I think what you are saying is basically correct.

*Id.* at 78:13-22. And, in response to follow-up questioning, Dr. Astrachan explained that his answer related to *implementing code* and noted that there's a "fair similarity" in terms of the "functionality" of the 37 packages. *Id.* at 79:11-80:6. Thus, this "admission" is anything but.

In any event, the quoted language does not line up with the proposition. That is, a statement about helping the user understand the software in each platform does not preclude the possibility—and reality—that Android adds something new to the declarations/SSO and puts them to use for a different purpose, which are the critical inquiries with respect to transformation.

### 3. The Federal Circuit has expressly recognized that Google is entitled to present a fair use defense regarding transformation.

The third prong of Oracle's argument seeking to preclude Google from arguing transformation is similarly flawed. Here, Oracle implies that the Federal Circuit conclusively decided that arguments about Google having written its own implementing code, created its own virtual machine, and incorporated the packages into a smartphone platform cannot show transformation. ECF 1553-4 at 3. Quite the contrary. The Federal Circuit declined to resolve

this issue as a matter of law, and therefore remanded for a trial on fair use. *Oracle Am.*, 750 F.3d at 1376. In so doing, the Federal Circuit evaluated and rejected the same arguments Oracle makes in its motion, concluding that "we cannot say that there are no material facts in dispute on the question of whether Google's use is 'transformative . . . .'" *Id.* Thus, there is no basis for Oracle to contend that it should prevail on factor one as a matter of law.

### B. The Federal Circuit Has Recognized That Evidence Regarding Compatibility and Interoperability Is Relevant to Google's Fair Use Defense.

Oracle also improperly seeks to exclude other evidence that the Federal Circuit already deemed relevant to fair use. The Federal Circuit "expressly noted" that "Google's competitive desire to achieve commercial 'interoperability' . . . may be relevant to a fair use analysis." *Id.* at 1376-77; *see also id.* at 1371-72 (ruling that compatibility and interoperability did not bear on the issue of copyrightability, but might bear on fair use). To that end, the Federal Circuit acknowledged the relevance of such evidence under Ninth Circuit law such as *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992), and *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000). *See Oracle Am.*, 750 F.3d at 1369-70 and 1377.

Ignoring the Federal Circuit's explanation that reasonable jurors might find commercial interoperability "relevant to Google's fair use defense under the second and third factors of the inquiry," *id.*, that is precisely what Oracle moves to exclude. *See* ECF 1553-4 at 5-6 (noting that Oracle seeks to exclude expert testimony regarding compatibility and interoperability as it relates to factors two and three). Oracle is even so brash as to allege that such evidence contradicts the Federal Circuit's decision, when the opposite is true. *Id.*

Furthermore, contrary to Oracle's suggestion, Google's fair use arguments do not rest on the idea that the Java programming language requires all of the APIs.[4] Rather, Google contends that it was fair to implement the same, well-known APIs using the same names so as to satisfy

---

[4] The exception is, as Oracle recognizes in its motion brief, the fact that "62 declarations are required by a technical constraint of the Java *language*." ECF 1553-4 at 5 (underline added, italics in original) (citing the report of Oracle's technical expert, Dr. Douglas Schmidt). As to these essential APIs, the Federal Circuit noted that the issue of compatibility and interoperability was particularly important. *See Oracle Am.*, 750 F.3d at 1377.

developer expectations regarding the Java programming language as used for a mobile platform. As the Federal Circuit itself recognized, Google's argument relates not to compatibility with the Java platform or with the Java virtual machine, but to "the fact that software developers were already trained and experienced in using the Java API packages at issue." *Oracle Am.*, 750 F.3d at 1371. To that end, the Federal Circuit quoted this Court's finding that "as to the 37 Java API packages, 'Google believed Java application programmers would want to find the same 37 sets of functionalities in the new Android system callable by the same names as used in Java.'" *Id.* (quoting *Oracle Am., Inc. v. Google Inc.*, 872 F. Supp. 2d 974, 978 (N.D. Cal. 2012)).

Viewed against this backdrop, none of the opinions identified in Oracle's motion warrant exclusion—they all relate to whether and how it was fair for Google to use certain APIs to satisfy developer expectations based on compatibility and interoperability with the Java programming language. For example, Oracle seeks to exclude Dr. Astrachan's opinion that the APIs are integral to the Java language and "necessary to make effective use of" it. ECF 1553-4 at 5 (citing Ex. 3 (Astrachan Reply Rpt.) ¶ 24). As another example, Oracle takes issue with Dr. Astrachan's statement that "When Google chose the Java programming language . . . certain things naturally flowed from that decision—including using the method declarations from the Java APIs." *Id.* (citing Ex. 1 (Astrachan Op. Rpt.) ¶ 162). The remaining examples all relate to the fact that, in order to satisfy certain developer expectations, Android had to use the same declarations/SSO. *Id.* at 5-6 (citing Ex. 1 (Astrachan Reply Rpt.) ¶¶ 225, 237, 239, and 249). In short, the opinions Oracle asks the Court to exclude all relate to Google's argument that Android's use of the declarations/SSO of the 37 Java API packages provides some degree of compatibility and interoperability for those programmers familiar with the Java language and its interrelated APIs. Because the Federal Circuit has already recognized the potential relevance of such evidence to a jury deciding fair use, Oracle's motion should be denied.[5]

---

[5] Oracle's motion also seeks to preclude Dr. Astrachan and Google from claiming that the declarations/SSO are not a computer program. ECF 1553-4 at 6. As the motion concedes, however, Dr. Astrachan makes no such claim as part of his analysis for the re-trial; any related opinions addressed the issue of copyrightability, which is no longer at issue. *Id.* In fact, Oracle identifies no Astrachan opinions or other evidence offered by Google for purposes of the fair use re-trial that it seeks to exclude; thus, Oracle's motion should be denied as moot.

### C. Because Dr. Astrachan's Technical Opinions Related to Market Harm are Based on his Technical Expertise, There is No Basis for Excluding Them.

Oracle's efforts to exclude Dr. Astrachan's opinions related to fair use factor four (market harm) are disingenuous. To set up its argument, Oracle repeatedly quotes Dr. Astrachan's testimony that he is not an expert in economics, product markets, or consumer demand. ECF 1553-4 at 7. Setting aside the fact that Dr. Astrachan never suggested otherwise, his lack of expertise in these fields does not warrant excluding his relevant *technical* opinions.

Oracle's focus on Dr. Astrachan's lack of expertise on economic matters serves as a straw man to distract from his actual opinions on factor four. Those *technical* opinions are as follows:

- "Android is a different platform that is far more technically suited for mobile devices than Java SE," which had "technical flaws."[6] ECF 1563-4 (Astrachan Op. Rpt.) ¶ 257.

- OpenJDK made the APIs *and* implementing code available as open source, *id.* ¶ 258, without requiring licensees to use all of them to maintain compatibility, *id.* ¶¶ 258-60.

- The APIs in OpenJDK are the same as in Java SE 5, based on a computer script Dr. Astrachan wrote and ran to perform the comparison. *Id.* ¶¶ 261-63.

- Thus, OpenJDK made available the same declarations/SSO of the 37 Java API packages that Android uses, and allowed it to be used in the same way. *Id.* ¶¶ 265-66.

- Google could have used the OpenJDK code in 2007, as demonstrated by its use of that code today. *Id.* ¶¶ 264, 267.[7]

- Per the Classpath exception, the process of compilation and linking allows developers to link their applications to the 37 Java API packages from OpenJDK. *Id.* ¶¶ 268-69.

- Recent surveys show that Java is once again the most popular programming language, owing in large part to Android. *Id.* ¶ 270.

All told, Dr. Astrachan's technical opinions on factor four amount to these 14 paragraphs across six pages—and all of them are well within his area of expertise in computer science.

Ironically, Oracle's motion also seeks to preclude Dr. Astrachan from providing the very type of testimony that Oracle repeatedly sought to elicit. After having spent an inordinate amount

---

[6] In selectively quoting the prefatory language in ¶¶ 256-57, by which Dr. Astrachan simply segues into factor four and repeats the applicable legal principles, Oracle conspicuously stops the quote where Dr. Astrachan provides his underlying technical opinion. *See* ECF 1553-4 at 7.

[7] Oracle criticizes this opinion based on the incorrect assertion that Google considered and rejected Oracle's OpenJDK license for business reasons, *id.* at 9; however, that does not undermine Dr. Astrachan's *technical* opinion that Google could have used OpenJDK code.

of time establishing unremarkable admissions about Dr. Astrachan's lack of expertise in issues related to economics and market analysis, Oracle spent *ten minutes* questioning Dr. Astrachan regarding the "potential market" for Java SE in mobile phones. *See* Mullen Decl., Ex. 19 (Astrachan Dep.) at 146:21-154:19 (questioning from approximately 2:41:15 pm to 2:51:30 pm). Referring back to his prior testimony, Dr. Astrachan repeated that he was not an expert on potential markets, but tried his best to answer. Of course, had Dr. Astrachan given testimony favorable to Oracle on this issue, Oracle surely would not discount it for lack of expertise.

The remainder of Oracle's motion related to Dr. Astrachan's opinions related to factor four is a grab bag of disjointed complaints, none of which justify an *in limine* ruling. Having established that Dr. Astrachan is not an economist, Oracle complains that (1) Dr. Astrachan testified that he did not run any economic models or conduct an empirical analysis, ECF 1553-4 at 8; (2) failed to analyze Oracle's licenses for Java SE in the mobile space, *id.* at 9; and (3) did not analyze whether and to what extent the Kindle FireOS (which was never based on either Java ME or Java SE), somehow harmed the market for "the Java platform" generally, *id.* In other words, Oracle isn't seeking to preclude economic opinions that Dr. Astrachan does offer, but rather complaining about economic analyses he didn't do. But the fact that Dr. Astrachan did not undertake such analyses demonstrates that his opinions as to factor four are rooted not in any economic expertise, but rather his expertise in computer science—as demonstrated above.

Because the opinions Dr. Astrachan offers are based on his technical expertise and the record evidence, there is no legal basis to strike them. Conversely, because Dr. Astrachan does not hold himself out as an economist or provide economic opinions, Oracle cannot preclude him from testifying based on any purported failure to apply sound economic methodology.

### III. CONCLUSION

For the reasons stated above, Google respectfully requests that the Court deny Oracle's motion to preclude Google from contesting factor one, as well as precluding Dr. Astrachan from testifying on factors one through four as set forth in his reports and deposition.

Dated: April 6, 2016

KEKER & VAN NEST LLP

By: */s/ Robert A. Van Nest*
ROBERT A. VAN NEST
CHRISTA M. ANDERSON
DANIEL PURCELL

Attorneys for Defendant
GOOGLE INC.