# Exhibit 21

It is important to note that under the terms of § 504(b), unless such a forgone payment can be considered "actual damages," in some circumstances victims of infringement will go uncompensated. If the infringer's venture turned out to be unprofitable, the owner can receive no recovery based on the statutory award of the "infringer's profits." And in some instances, there will be no harm to the market value of the copyrighted work. The owner may be incapable of showing a loss of either sales or licenses to third parties. To rule that the owner's loss of the fair market value of the license fees that might have been exacted of the defendant does not constitute "actual damages" would mean that in such circumstances an infringer may steal with impunity. In the *Davis* case, the Appeals Court could not see reason why this should be so. Of course, if the terms of the statute compelled that result, the court's perception of inequity would make no difference; the statute would control. But in the court's view, the statutory term "actual damages" is broad enough to cover this form of deprivation suffered by infringed owners.

**(h) DETERMINING FAIR MARKET VALUE.**   The Appeals Court recognized in the *Davis* case that awarding the copyright owner the lost license fee can risk abuse. Once the defendant has infringed, the owner may claim unreasonable amounts as the license fee—to wit, Davis's demand for an award of $2.5 million. The law therefore exacts that the amount of damages may not be based on "undue speculation." (See *Abeshouse*, 754 F.2d at 470.) The question is not what the owner would have charged, but rather what is the fair market value. In order to make out a claim that one has suffered actual damage because of the infringer's failure to pay the fee, the owner must show that the thing taken had a fair market value. But if the plaintiff owner has done so, and the defendant is thus protected against an unrealistically exaggerated claim, the court could see little reason not to consider the market value of the uncollected license fee as an element of "actual damages" under § 504(b).

The court recognized also that finding the fair market value of a reasonable license fee may involve some uncertainty. But that is not sufficient reason to refuse to consider this as an eligible measure of actual damages. Many of the accepted methods of calculating copyright damages require the court to make uncertain estimates in the realm of contrary to fact. See 4 *Nimmer* § 14.02[A], at 14-9. A classic element of the plaintiff's copyright damages is the profits the plaintiff would have earned from third parties were it not for the infringement. See 4 *Nimmer* § 14.02[A], at 14-9 to 10. This measure requires the court to explore the counterfactual hypothesis of the contracts and licenses the plaintiff would have made absent the infringement and the costs associated with them. See *Fitzgerald Publ'g*, 807 F.2d at 1118 (actual damages measured by "the profits which the plaintiff might have earned were it not for the infringement"); *Stevens Linen Assocs. v. Mastercraft Corp.*, 656 F.2d 11, 15 (2d Cir. 1981) (same).

A second accepted method, focusing on the "infringer's profits," similarly requires the court to explore circumstances that are counterfactual. The owner's entitlement to the infringer's profits is limited to the profits "attributable to the infringement"—17 U.S.C. § 504(b). The court, therefore, must compare the defendant's actual profits to what they would have been without the infringement, and award the plaintiff the difference. Neither of these approaches is necessarily any less speculative than the approach that requires the court to find the market value of the license fee for what the infringer took. Indeed, it may be far less so. Many copyright owners are represented by agents who have established rates that are regularly paid by licensees. In such cases, establishing the fair market value of the license fee of which the owner was deprived is no more speculative than determining the damages in the case of a stolen cargo of lumber or potatoes. Given

the court's long-held view that in assessing copyright damages "courts must necessarily engage in some degree of speculation," some difficulty in quantifying the damages attributable to infringement should not bar recovery. See 4 *Nimmer* § 14.02[A], at 14-12 ("[U]ncertainty will not preclude a recovery of actual damages if the uncertainty is as to amount, but not as to the fact that actual damages are attributable to the infringement."); II Paul Goldstein, *Copyright* § 12.1.1, at 12:6 (second edition 2000) ("Once the copyright owner shows a connection between infringement and damage, uncertainty about the amount of damages will not bar an award."); *Szekely*, 242 F.2d at 269 (where "legal injury is certain ... [w]e should not allow difficulty in ascertaining precisely the value of the right destroyed, which difficulty arises largely from the destruction, to enable the infringer to escape without compensating the owner of the right").

**(i) COPYRIGHT INFRINGEMENT.**   Davis contended that it was improper for the district court to grant summary judgment on his copyright claims without first determining whether the defendant infringed his copyright. The complaint expressly sought "a declaratory judgment in favor of Mr. Davis against Gap, declaring" that the Gap had infringed Davis's copyright by its reproduction of his eyewear in its advertisement. The district court granted the defendant's motion for summary judgment on the basis of a variety of theories that had no bearing on the demand for declaratory relief. No doubt because of the confusing and prolix nature of the complaint, this aspect of the relief sought was overlooked. The existence of damages suffered is not an essential element of a claim for copyright infringement. See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (to establish a prima facie case of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original"); Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.01, at 13-6 (1999) ("Notably absent from this formulation of the *prima facie* case is damage or any harm to [the] plaintiff resulting from the infringement."). The owner of a copyright is thus entitled to prevail in a claim for declaratory judgment of infringement without showing entitlement to monetary relief. Insofar as the judgment dismissed the claim for declaratory relief without discussion, the Appeals Court was obliged to vacate the judgment and remand for consideration of that claim.

The decisions of this and other courts support the view that the owner's actual damages may include in appropriate cases the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer.

Although the Supreme Court has never directly addressed this question, it has suggested in the somewhat different context of a fair use analysis that a critical question is "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Nation Enters.*, 471 U.S. at 562.

In *Szekely*, a 1909 Act case, the court awarded such damages. A screenwriter sued a film distributor for damages based on its distribution of a film employing the plaintiff's screenplay. The plaintiff had contracted with a movie producer to sell the screenplay for $35,000. However, the producer encountered financial difficulties and failed to complete the purchase, leaving the ownership of the screenplay with the plaintiff. The production company nonetheless made the film using the plaintiff's screenplay. The screenwriter sued the distributor for infringement, and the distributor was held liable. The plaintiff's award of damages was based on the amount of the license fee the plaintiff would have been entitled to charge, calculated by reference to the contract the plaintiff had made with the production company. See *Szekely*, 242 F.2d at 268-69.