KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY  10036
Telephone:    212 556 2100
Facsimile:    212 556 2222

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 3:10-cv-03561 WHA <br><br> **GOOGLE'S RESPONSE TO ORACLE'S MOTION IN LIMINE #6 REGARDING RULE 706 EXPERT, PROFESSOR JAMES KEARL** <br><br> Date:     April 27, 2016 <br> Time:     8:00 a.m. <br> Dept.:    Courtroom 8, 19th Fl. <br> Judge:    Hon. Hon. William Alsup |

1    Google submits this response to Oracle's motion in limine number 6, ECF 1582-5,
2 because it contains inaccuracies that should be corrected for a fair discussion of these issues.
3    Oracle's motion to exclude Dr. Kearl's opinions misleads from its very first line, wrongly
4 asserting that Dr. Kearl's damages opinion in the prior trial "equates to roughly █████" 
5 when applied to the current case.  This is Oracle's attempt to make its current, multi-billion dollar
6 damages claims seem reasonable, but it grossly distorts the record.  In fact, Dr. Kearl previously
7 provided an opinion that "the reasonable royalty for the *total '2006 portfolio'* of Java ME *patents*
8 *and copyrights* is 20% of Android advertising revenues." ECF 850-6 (Kearl 3/28/12 Rpt. ¶20)
9 (emphasis added).  But that was based on a hypothetical licensing negotiation for a broad
10 Google/Sun partnership and now, of course, there are no more cognizable patent claims and no
11 "total 2006 portfolio" of Sun/Oracle IP at issue in this trial.  Only a narrow category of
12 copyrighted material (of that total portfolio) remains.  And as to these copyrights, in that same
13 report Oracle cites, Dr. Kearl at that time provided an opinion that "apportioned reasonable
14 royalty for the in suit copyrights [to] **0.4%** of Android revenues," *id*. ¶25, reflecting his
15 conclusion that the copyrighted works at issue here contribute—at most—just a small fraction of
16 value of the Android platform.  And, he pointed out (as he does now) that if "Android would have
17 been almost as fast and have [had] almost as many applications" without the accused intellectual
18 property, "the value of these patents and copyrights is relatively small." *Id*. ¶36.  With respect to
19 Oracle's prior claim for disgorgement of infringer's profits, Dr. Kearl provided no support in his
20 2012 report, concluding there was no "quantitative method to estimate the percent of Android
21 revenue or profit that is due to the alleged copyright infringement."  *Id.* ¶124.[1]
22    As for Oracle's discussion of Dr. Kearl's current re-trial report, Oracle challenges all three

---

[1] Indeed, Oracle's current disgorgement claim still relies on a string of unfounded legal and economic assumptions, including Oracle's assumption that because the allegedly infringing material is in Android, it necessarily causes some amount of Google's indirect profits. But, this is wrong, as a matter of economic analysis and law, and is the very reason that the Ninth Circuit requires plaintiff to demonstrate a causal nexus to the profits sought. ECF 1565 (Google MIL 6 at 8-16).  Indeed, courts more often deny claims for indirect profits than permit them. *See Univ. of Col. Found. , Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999).  Oracle also fails to recognize that the Ninth Circuit requires apportionment where, as here, Oracle admits that the remaining more than 99% of Android contributed to the claimed profits. ECF 1565 (Google MIL 6 at 18-19); ECF 1602-7 (Opp. to Oracle MIL 4 at 6-7).

1   disgorgement opinions, which range from (1) $0 if Google did not use the SSO/declarations and
2   had similar market success, to (2) ▮▮▮▮▮▮▮▮ if Android existed without the
3   SSO/declarations but was not as successful, to (3) ▮▮▮▮▮ if Google did not "pursue Android
4   at all." ECF 1583-6 (Kearl 3/21/16 Rpt. ¶¶9-11).  While Google separately addresses certain of
5   Dr. Kearl's opinions that lack factual support,[2] Google disagrees with Oracle's contention that his
6   methodology in using a counterfactual approach to disgorgement is improper.  As Google
7   explained in its opposition to Oracle's motion to exclude Dr. Leonard's opinions, courts routinely
8   consider as part of the section 504(b) causal nexus and apportionment analysis evidence of the
9   profits defendant would have earned in the absence of the infringement, using its "next best"
10  alternative. ECF 1602-7.[3]  Far from being impermissible, consideration of counterfactual
11  analyses is standard to determine causation for disgorgement. *Id.* at 2-8.  Drs. Leonard and Kearl
12  agree that apportionment can be accomplished via the very counterfactual analysis Oracle seeks
13  to exclude. ECF 1563-7 (Leonard Rpt. ¶¶ 182-96); ECF 1601-1 (Kearl Resp. at 18).

14       Oracle tries to bolster its criticism of the use of counterfactuals by selectively quoting
15  from Dr. Kearl's deposition, claiming that he "conceded that there *is no accepted method* by
16  which economists can apportion such synergies to avoid the infringer's retention of benefits."
17  ECF 1582-4 (Oracle MIL 6 at 3) (emphasis in original).  But he did no such thing.  In reality, at
18  the very end of Dr. Kearl's deposition, Oracle's lawyer posed a hypothetical and then asked,
19  "Isn't it true that the use of non-infringing alternatives allows the infringer to retain the value of
20  the synergies, **under those circumstances**?"  Dr. Kearl first responded, "That's a – an interesting
21  question," and then (in the only portion Oracle quotes) said, "you can't parcel out the contribution
22  of any single thing to the synergy, **at least not easily**."  Dr. Kearl further explained that, "it's a
23  hard question because it's unclear what . . . the counterfactual implies about – about the synergy.
24  I don't have anything else to say from that." Decl. of Karwande, Ex. 1 (Kearl Dep. 206:17-207-
25  10) (emphasis added).  This free-form speculation about a single, unclear hypothetical says
26  nothing about any "accepted method" of anything available to economists.  Ultimately, this

---

[2] Google addressed its issues with Dr. Kearl's analysis in conjunction with its motion in limine regarding Dr. Kearl's opinions, ECF 1584, and Google expressly preserves those arguments.
[3] Google incorporates those authorities and that analysis here by reference.

1   "synergy" argument is an improper distraction injected by Oracle for the very first time during
2   Dr. Kearl's deposition (after Oracle's submission of 4 opening and rebuttal damages expert
3   reports), and was raised by Oracle's counsel through a hypothetical question that was not tethered
4   to any actual facts in the record.  Dr. Kearl does not address it in his report and said nothing of
5   substance about it at his deposition—and Oracle has not even identified what such "synergies"
6   may be or cited any caselaw that supports this point.  In fact, the law is clear:  apportionment is
7   mandated where profits are attributable to factors other than infringement.  ECF 1602-7 (Opp. to
8   MIL 4 at 1, 6-7); ECF 1565 (Google MIL 6 at 18-19).  It says nothing about such hypothetical
9   "synergies." Oracle's bootstrapping of Kearl's response to a hypothetical– at deposition, and not
10  even address in his report– regarding synergies from two inputs (not .08% of code) into a
11  preclusive ruling of sound economic apportionment theories offered in this case must be rejected.

12          Finally, Oracle performs a sleight of hand to nearly *double* Dr. Kearl's highest number
13  and *triple* his mid-range, by conveniently embracing—yet completely distorting—his "no
14  Android" counterfactual but then deeming Dr. Kearl's recapture of the profits Google would have
15  made with advertising on non-Android mobile systems a "non-infringing alternative" in itself.
16  ECF 1582-4 (Oracle MIL 6 at 4-5 & n.7).  This approach is erroneous.  First, contrary to Oracle's
17  assertion, Dr. Kearl never presented a counterfactual where "Android would have failed …
18  causing Google to partner with Apple as a [NIA]." *Id*. at 1.  Instead, he considered an alternative
19  in which Google "[did] not pursue the Android project at all."  ECF 1583-6 (Kearl 3/21/16 Rpt.
20  ¶77).  He then explained that such a hypothetical requires deducting "the total Android
21  Engineering PM costs, Android Legal Costs, and Incremental Search and Advertising Expenses"
22  because "[i]f Google had not pursued the Android project at all, these costs would not have been
23  incurred." *Id*. ¶79.  Thus, Dr. Kearl's opinion that Google would have recaptured much of its
24  profits through increased revenue from iPhone users has nothing to do with a non-infringing
25  Android.  Second, even Oracle's own damages expert has conceded that Google would have
26  launched Android even without declarations/SSO.  *See* ECF 1584-4 at 377-78.  Third, and finally,
27  this appears to be an improper attempt after the close of expert discovery to add *more than* ■
28  ■ to the $8.8 billion damages claim Oracle proffered in its own expert reports.

3
RESPONSE TO ORACLE'S MIL #6
Case No. 3:10-cv-03561 WHA

1048500

| | |
|---|---|
| Dated: April 8, 2016 | KEKER & VAN NEST LLP |
| | By: /s/ Robert A. Van Nest |
| | ROBERT A. VAN NEST |
| | CHRISTA M. ANDERSON |
| | DANIEL PURCELL |
| | Attorneys for Defendant GOOGLE INC. |