ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br>            Plaintiff, <br><br>     v. <br><br> GOOGLE INC., <br><br>            Defendant. | Case No. CV 10-03561 WHA <br><br> **REPLY IN SUPPORT OF ORACLE'S MOTION IN LIMINE #3 REGARDING DR. ASTRACHAN** <br><br> Date:  April 27, 2016 at 8:00 am <br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William H. Alsup |

Oracle seeks to preclude Google from making arguments or introducing testimony about transformative use and compatibility that contradict both the law of this case and its own admissions, and also to exclude Dr. Astrachan's concededly unqualified economic testimony. Google mainly ignores Oracle's arguments, instead attacking straw-man positions and mischaracterizing its expert's proposed testimony.

## I. GOOGLE CANNOT ARGUE TRANSFORMATIVE USE.

Google asserts that it can prove transformation "under the proper test." Opp. 1. The proper test was set out in Oracle's Motion. Mot. 4 (collecting cases). The test Google proposes, by contrast, is contrary to the law of this case and is contradicted by every case Google cites. Google can only show "transformation" through a legally incorrect test, which is inadmissible and will serve only to confuse and mislead the jury while leading to further reversible error.

Google's first two arguments for transformative use are that "(a) the corresponding implementing code in Android is different and customized" and "(b) [Oracle's declaring code and SSO] are incorporated [with] … over 100 additional Android-specific APIs." Opp. 2. Simply *adding* to Oracle's work does not transform it: "A work is *not* transformative where the user makes *no alteration* to the *expressive content or message* of the *original work*." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) (emphasis altered) (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013)). Google has done nothing to demonstrate alteration in content and purpose of the declaring code and SSOs of the 37 packages—to the contrary, as demonstrated in Oracle's Motion, Dr. Astrachan and Google admit that the declaring code and SSO of the 37 API packages are the same in Java as in Android. Mot. 2-3.

Despite the law of this case and binding precedent from the Ninth Circuit, Google asserts that Oracle holds a "misconception that the copyrighted material itself must be modified in order to claim transformation." Opp. at 3. That is hardly a mistake; rather, it is exactly the legal standard. Mot. 2-3. It is Google who is mistaken: Every case Google cites involves defendants making significant modifications to the *original* work. For example, the thumbnail images in *Kelly* and *Perfect 10* were indexed and made searchable by associating new keywords with them in a large database, and the originals had been changed into "smaller, lower-resolution thumbnails"

1   that were modified to make it so "users are unlikely to enlarge the thumbnails and use them for
2   [the original's] artistic purposes because the thumbnails are of much lower-resolution than the
3   originals … making them inappropriate as display material." *Kelly v. Arriba Soft Corp.*, 336 F.3d
4   811, 815, 818 (9th Cir. 2002); *accord Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155
5   (9th Cir. 2007) (similar, relying on *Kelly*).  While Google implies that those cases found transfor-
6   mation for the "exact image," Opp. 3, the court never opined whether full-sized, higher-resolution
7   pictures were "transformative," *Kelly*, 336 F.3d at 822 (remanding on infringement of full-size
8   images); *Perfect 10*, 508 F.3d at 1159-60 (finding full-sized images not copied).[1]  These cases do
9   not support Google's assertion that "the use of copyrighted material, unchanged, … has repeated-
10  ly been deemed transformative." Opp. 4.

11        Google's attempt to distinguish controlling Ninth Circuit software cases falls flat.  Its
12  claim that the infringing works in *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir.
13  1998), were "complete software works" is wrong.  Opp. 4.  The game platform in *Micro Star v.*
14  *Formgen* was three components:  "the game engine, the source art library and the MAP files."
15  Micro Star distributed new MAP files, *i.e.*, a "series of instructions that tell the game engine (and
16  through it the computer) what to put where." 154 F.3d at 1110.  Micro Star distributed new MAP
17  files only, and Judge Kozinski rejected the claim of transformation, explaining that mere rear-
18  rangement could "hardly be described as transformative; anything but." *Id.* at 1113 n.6.[2]

19        Google's next argument is that "(c) the Android Core Libraries are integrated into a much
20  larger smartphone platform," whereas "Java SE 1.4/5[] target desktops and server computers."
21  Opp. 2.  This is both false and irrelevant.  It is false because Java SE is a software application

---

[1] Google's out-of-circuit authorities are no different. *See Cariou v. Prince*, 714 F.3d 694, 699 (2d Cir. 2013) (collages that "altered th[]e [original] photographs significantly"); *Blanch v. Koons*, 467 F.3d 244, 248 (2d Cir. 2006) (scanned image included "only the legs and feet," "discard[ed] the background[,]" "inverted the … legs," "added a heel to one of the feet[,] and modified the photograph's coloring"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609, 611 (2d Cir. 2006) (copyist "significantly reduced the size of the reproductions" making them "inadequate to offer more than a glimpse of their expressive value").

[2] *Wall Data Inc. v. L.A. County Sheriff's Department* was not about "simply cop[ying] a full software program onto more computers," Opp. 4.  The Sheriff first copied the software into "an entire suite" to create a platform, which was loaded as such "onto nearly all of the [Sherriff's Department's] computers." 447 F.3d 769, 779 (9th Cir. 2006).  "Such a use cannot be considered transformative." *Id.* at 778.

platform irrespective of the device in which it is implemented and because Java SE was licensed for use in mobile phones before Android.  *See* ECF No. 1560-7 (Jaffe Op. Rpt.) ¶¶ 308-311.  It is also false because it was also well known that mobile phones would eventually become powerful enough to run Java SE, and that SE would therefore become an appropriate platform for mobile devices.  In all respects, one of the "purposes" for Java SE at the time Google took the Java SE APIs was as a software application platform—exactly as it was used by Google.

Google's argument is also irrelevant because the declaring code and SSO of the 37 Java API packages serve exactly the same function in both Java SE and the Android platform irrespective of the particular implementation:  The purpose of the APIs is for developers to understand and use the implementing code.  ECF 1566-7 (Astrachan Depo.) 77:22-78:22.  Indeed, Google concedes that when a party that "mak[es] an *exact* copy of a work," like Google did of Java's declaring code and SSO, the copying can only "be transformative so long as *the copy serves a different* function than the original work."  Opp. 3 (emphasis added) (quoting *Perfect10*, 508 F.3d at 1165).  As explained in the Motion (at 2-3), Dr. Astrachan and Google (both in RFAs and 30(b)(6) testimony) concede that the declaring code and SSO serve the same purpose in Java and Android.  Google makes no effort to avoid its admissions.  *See* Opp. 5.  And, contrary to Google's selective reading of the deposition (Opp. 5), Dr. Astrachan said the exact same thing as Google already admitted.  Oracle asked if the Java APIs serve the same purpose in Android, and he twice agreed that it "is basically true" and "I think what you are saying is basically correct."  ECF 1566-7 (Astrachan Depo.) 78:6-22.  Google tries to avoid Dr. Astrachan's testimony by claiming "his answer related to *implementing code*," Opp. 5, but his very next answer stated:  "I don't think [my answer] is reflective of implementing code," ECF 1566-7 (Astrachan Depo.) 79:3-4.

Google is stuck with these admissions.  Dr. Astrachan's "*new horizons*" test is something he made up without any effort to comport with binding law.  He would find transformation without change to the original and with use for the same purpose.  *Any* copying, no matter how substantial, could be transformative under this test.  The Federal Circuit expressed its concern that Google had "overstate[d]" in its argument regarding transformation, and remanded to give Google one more chance.  Google failed the test.  The remand cannot justify permitting Google to

present irrelevant and prejudicial arguments to the jury based on legal theories already rejected.

**II.     GOOGLE CANNOT CLAIM "COMPATIBILITY" OR "INTEROPERABILITY."**

Up until his recent deposition, Dr. Astrachan took the position that "APIs are an abstraction," not software, ECF No. 1563-4 (Astrachan Op. Rpt.) ¶ 44, and that Google *had to* copy in order to use the Java programming language: "[T]he compatibility I discussed in my opening report was compatibility with the *Java programming language* …." ECF 1563-6 (Astrachan 3d Rpt.) ¶ 27.[3] Confronted with the Federal Circuit's directly contrary holding, Google now backtracks to claim it wants to argue "compatibility" and "interoperability" with "developer expectations." Opp. 6-7. The direct quotes from Dr. Astrachan's reports have nothing to do with developer expectations and everything to do with compatibility with the Java platform and Java language. In any event, this Court should accept Google's concession and preclude Google from claiming Android is compatible or interoperable with the Java platform. Moreover, it should also preclude Google from claiming "compatibility" or "interoperability" with "developer expectations"—whatever that means—because terms like "compatibility" and "interoperability" are suggestive of actual cross-platform use, which does not exist here. Tr. 2172:4-5 (Astrachan) ("[M]y definition for what it means to be compatible [is] that the same code runs on both platforms"); *see Oracle Am.*, 750 F.3d at 1371 (Android was "designed so that it would *not be compatible*").

Google's Opposition demonstrates the slippery impropriety of its argument. While Google claims it copied Java "to satisfy developer expectations"—a commercial goal—it bases its argument on purported technical reasons it had to copy:

- "[T]he APIs are integral to the Java *language* and '*necessary* to make effective use of it.'" Opp. 7 (emphasis added);

- "When Google chose the Java *programming language* … certain things naturally flowed from that decision—including using the method declarations from the Java APIs." *Id.* (emphasis added).

Both of these premises are contrary to the Federal Circuit's findings that Google did not have to

---

[3] Dr. Astrachan repeated his incorrect assertions that method declarations are not a computer program right up until the moment in his most recent deposition when he was provided with the correct definition under the Copyright Act. At that point, he changed his opinion. The entire first trial was premised upon Google's failure to provide its principal technical expert with a proper legal definition. Google does it again here, and will again lead the Court to error if not excluded.

copy the declaring code and SSO to use the Java language. Anybody could claim she needs to copy a work for economic success.[4] It is impossible to tell from one sentence to the next whether Google is talking about commercial reasons to copy or trying to revive rejected claims that it was forced to copy for technical reasons—or both. *Cf. Oracle Am.*, 750 F.3d at 1371 ("We find Google's interoperability argument confusing."). Google should not be permitted to use technical terms like "interoperability" and "compatibility" when Google and its technical expert admit there is no technical compatibility or interoperability. Mot. 5:13-17.

### III.  DR. ASTRACHAN IS UNQUALIFIED TO TESTIFY ON *MARKET HARM*.

Google concedes that Dr. Astrachan is "not an economist," did not "run any economic models or conduct an empirical analysis," and is not qualified to "provide economic opinions." Opp. at 8-9. Yet Google still claims he can talk about *market harm* and the *meaning* and *economic* suitability of license terms—none of which he is qualified to opine on. Google's selective quotations from (and rewordings of) Dr. Astrachan's reports cannot hide that he seeks to opine extensively on *economic* concepts, like whether Java SE and Android are in the same or different *markets* and the *potential market effect* of OpenJDK on the Java platform. Mot. 7-8 (quoting Dr. Astrachan's reports). The examples of Dr. Astrachan's supposed "technical" opinions are no such thing. Opp. 8. The first bullet is an opinion about the market presence and commercial market suitability of Java SE as a platform. The second, fourth, and sixth pertain to legal interpretations of a license agreement. *If* the fifth bullet point ignores economic factors, it is possibly a technical opinion. The seventh is a market opinion about popularity of the Java language. These opinions are not technical; they are economic and legal opinions even Dr. Astrachan admits he is unqualified to render. Mot. 8-9. Because factor four involves the *potential market*, Dr. Astrachan's testimony is of no use in light of the concession that he did not "undertake [economic] analyses." *Id.* His testimony on market harm must be excluded.

---

[4] *Sega* and *Sony* are of no use to Google. Each concerns intermediate copying to produce a product that is *actually technically compatible*. *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526 (9th Cir. 1992) (disassembly of *code* to create games *compatible* with platform); *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 598-99 (9th Cir. 2000) (same disassembly of *code* to create platform *compatible* with games). Neither has a thing to do with the *commercial* "fact that software developers were trained" in particular software.

Dated: April 11, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
      Annette L. Hurst

Counsel for ORACLE AMERICA, INC.