KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| ORACLE AMERICA, INC., | Case No. 3:10-cv-03561 WHA |
|---|---|
| Plaintiffs, | **GOOGLE INC.'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 4 RE: MARKET HARM** |
| v. | |
| GOOGLE INC., | Hearing:   April 27, 2016<br>Time:      8:00 a.m.<br>Dept.      Courtroom 8, 19th Fl.<br>Judge:     Hon. William Alsup |
| Defendant. | |

## I. INTRODUCTION

Oracle's opposition to this motion *in limine*, combined with Dr. Jaffe's deposition testimony, ultimately confirms the underpinnings for why this motion should be granted. Simply put, Dr. Jaffe's market harm opinions examine the wrong use and the wrong market effects. Under 17 U.S.C. § 107(4), evidence of market harm reflects proof of "the effect of **the use** upon the potential market for or value of **the copyrighted work**." 17 U.S.C. § 107(4) (emphases added). The relevant "use" in this case is Google's use of the SSO as reflected by the "declaring code" ("declarations/SSO") of the 37 Java SE API packages in Android. The relevant potential market in this case is the market for Java SE 1.4 and Java SE 5.0—the asserted copyrighted works—and, to a limited extent, their derivative works. ECF 1479.

Dr. Jaffe admitted in deposition—and Oracle does not dispute—that he [REDACTED]. That alone renders Dr. Jaffe's analysis of market harm inadmissible. Moreover, Dr. Jaffe testified that his [REDACTED] an analysis that goes beyond the market for the copyrighted works and is not tailored to "traditional, reasonable, or likely to be developed markets" for those works. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013). Thus, Dr. Jaffe's market harm opinions should be stricken.[1]

## II. ARGUMENT

### A. Dr. Jaffe's market harm opinions should be stricken because he considered the market effects of the use of Android in its entirety rather than the effect of the use of the infringing material (i.e., declarations/SSO) on the market.

Contrary to Oracle's arguments, the rule set forth in the *Arica* and *Wright* decisions is the proper test for what "use" must be examined in this case when determining any market harm. Specifically, where a defendant's work is comprised of not just infringing material but also

---

[1] Google disagrees with Oracle's characterization, ECF 1611, Opp. To MIL 4 ("Opp.") at 4:16-26, of the scope of this motion *in limine*. Because Dr. Jaffe applied the wrong standards in conducting his market harm analysis under 17 U.S.C. § 107(4) and failed to provide any appropriate sub-opinion, Google moves to exclude Dr. Jaffe's market harm opinion in its entirety.

1  meaningfully distinct, noninfringing material, "the relevant market effect is that which stems
2  *from defendant's use of plaintiff's 'expression,'* not that which stems from defendant's work as
3  a whole." *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) (emphasis added); *see
4  also Wright v. Warner Books, Inc.*, 953 F.2d 731, 739 (2d Cir. 1991). The court explained:

> As we recently stated in *Wright*, the relevant market effect is that which stems from defendant's use of plaintiff's "expression," not that which stems from defendant's work as a whole. *Wright*, 953 F.2d at 739. Defendant, after all, is perfectly entitled to create a competing work. The copyright statute simply constrains her from using plaintiff's original expression in doing so. Thus, in cases such as this *where a meaningful distinction may be drawn* between the infringing portions of defendant's work and the work as a whole, we need only consider the market effect of the infringing portions . . . . We find that these infringing aspects of *The Enneagram* will have a negligible effect on the market for *Interviews*. Where "marginal amounts of expressive content were taken from [plaintiff's] works . . . [i]mpairment of the market for these works is unlikely."

*Arica*, 970 F.2d at 1078-79 (emphasis added). Indeed, it would be inequitable for market harm to preclude a finding of fair use where the harm resulted from noninfringing aspects of the accused work in circumstances where, as here, the accused work has extensive unaccused aspects that contribute to its success and market effects. *See, e.g.*, ECF 1584-7 (Jaffe Dep. at 71:5-14) ("[REDACTED]") (emphasis added); ECF 1560-3 (Malackowski Dep. at 218:2-219:7) ("[REDACTED]"); *id.* at 220:18-221:14 ("[REDACTED]"); *id.* at 225:12-226:6 ([REDACTED]).

Oracle does not dispute that Dr. Jaffe's market harm analysis assesses only the alleged effect of the use of Android *in total* on the market, rather than any alleged effect of the use of the accused declarations/SSO. Opp. at 9:21-24. Dr. Jaffe never examined whether purported potential Java customers tried Android because it was a substitute for the 37 Java SE APIs, or whether that decision resulted from a multitude of other possible reasons relating to the non-infringing aspects of Android (or other market factors). *See* ECF 1560-2 (Jaffe Dep. 140:3-15) (admitting that he did not [REDACTED]

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); see also *Castle Rock Entm't, Inc. v. Carol Publ'g. Grp., Inc.*, 150 F.3d 132,
2  145 (2d Cir. 1998).

3  Instead, Oracle argues that *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539,
4  568 (1985) stands for the proposition that the harm to be considered is that "caused by the
5  defendant's infringing work" in total, not just the infringing part. Opp. at 7:3-4. But *Harper &*
6  *Row* is not a case where the *Arica* rule would come into play because the accused work (a "short"
7  2,250 word article) was derived almost *exclusively* from the infringed material. *Harper & Row*,
8  471 U.S. at 542-43 ("Mr. Navasky … hastily put together what he believed was 'a real hot news
9  story' composed of quotes, paraphrases, and facts ***drawn exclusively from the manuscript***," and
10 "attempted no independent commentary, research or criticism, in part because of the need for
11 speed if he was to 'make news' by 'publish[ing] in advance of publication of the Ford book.'")
12 (emphasis added).

13 As for the other cases cited by Oracle, none discusses the issue addressed by *Arica*, or
14 seeks to draw meaningful distinctions "between the infringing portions of defendant's work and
15 the work as a whole."[2] In contrast, there is no question this *is* a case where such meaningful
16 distinctions can be drawn. Android is a vast software platform of which the accused infringing
17 material is only a tiny part, and one that even Oracle's own experts acknowledge has achieved
18 success for reasons that are not due to use of the declarations/SSO. *See, e.g.*, Jaffe Dep. 61:2-10
19 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓), ECF 1584-7
20 (Jaffe Dep. at 71:5-14); ECF 1560-3 (Malackowski Dep. at 218:2-219:7, 220:18-221:14, 225:12-

---

[2] *Arica*, 970 F2d at 1078. *See, e.g.*, *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1113 (9th Cir. 1998) (no discussion of what use can or cannot be considered for purposes of determining market harm); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1481-82 (9th Cir. 1988) (same); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 631 (9th Cir. 2003) (same); *Castle Rock Entm't*, 150 F.3d at 145 (noting that accused work was a market substitute because it "borrows exclusively" from the asserted work); *Twin Peaks Prods. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1377 (2d Cir. 1993) (no discussion of what use can or cannot be considered for purposes of determining market harm); *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 69 (2d Cir. 1999) (noting that accused work, an abstract, was a simply a "rough translation" of plaintiff's asserted work, a news article, and therefore a superseding use); *Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc.*, 55 F. Supp. 2d 1113, 1124 (D. Nev. 1999) (no discussion of what use can or cannot be considered for purposes of determining market harm); *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992) (same); *Sony Computer Entmt v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir. 2000) (same).

226:6). Accordingly, the relevant legal question is whether Android's use of the declarations/SSO caused market harm—not whether the vast Android platform caused market harm. Because Oracle does not dispute that the latter is the subject of Dr. Jaffe's opinions, Opp. at 9:21-24, Dr. Jaffe's market harm opinions must be excluded.

Finally, in seeking to avoid application of the *Arica* rule here, Oracle argues that Android is "critically dependent" on the accused declarations/SSO because "Android would not function" if the material were removed from the platform. Opp. at 9:3-5. But this argument is specious—Android is a software platform and, unsurprisingly, if you remove any portion of code from the platform without adjustments, this is likely to impact the platform as a whole. This characteristic of the declarations/SSO is not unique as compared to other code in the platform. *See, e.g.*, Jaffe Dep. 74:16-25 (■); Schmidt Dep. 160:18-25.[3] And Oracle's argument that the use of the declarations/SSO was important in getting Android to market (Opp. at 8:10-20) is irrelevant—the *Arica* rule does not turn on why allegedly infringing material was used, but on whether a meaningful distinction can be drawn within the accused product between infringing and noninfringing portions.

**B.    Dr. Jaffe's market harm analysis also should be stricken as it broadly and improperly analyzes harm to the market for the entire "Java platform" without constraining that analysis to the copyrighted works at issue.**

Dr. Jaffe admitted in deposition that, when considering the question of market harm, he assessed "■," and that "■" Jaffe Dep. 99:14-100:13 (emphasis added). Dr. Jaffe also confirmed in deposition, contrary to Oracle's statements in its brief, that his ■ (Jaffe Dep. at 100:14-18).

---

[3] Google disputes Oracle's assertion that "Google copied for 'purely commercial purposes'." Opp. at 8:9-10.

Nor did Dr. Jaffe provide any sub-opinion relating to any supposed market harm to the market for only Java SE. *Id.* at 185:21-186:1. Dr. Jaffe further admits that, while he "███████████████ ███████████████████████████████████████████████████████████████," he considers "██████████████████████████████████████████████████████ ██████" and for this case he has "█████████████████████████████████████ ██████████████████████████████████████████████████████████████████." *Id.* at 107:1-20. In other words, Dr. Jaffe admitted that he ████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████.



     These facts render Dr. Jaffe's market harm opinions inadmissible. As discussed more fully in Google's filing on the fourth fair use factor (ECF 1627-1), courts have limited the markets for derivative works considered under the fourth factor to "traditional, reasonable, or likely to be developed markets." *Seltzer v. Green Day,* 725 F.3d 1170, 1179 (9th Cir. 2013) (quotation marks and citation omitted). Thus, the market for derivative works that the copyright owner is *unlikely* to develop or license are not relevant to the fourth factor. *Id; see also Blanch v. Koons,* 467 F.3d 244, 258 (2d Cir. 2006). Yet Dr. Jaffe has not limited his market effects analysis either to the market for Java SE or to "traditional, reasonable, or likely to be developed markets" under *Seltzer.* Instead, he acknowledges that he ████████████████████████████████████ ████████████████████████████████████, and therefore his opinions merely consist of the kind of speculative market harm evidence relating to markets for derivative works that is specifically barred by *Seltzer*.[4] Dr. Jaffe's market harm opinions must also be excluded for this reason.

---

[4] Oracle's citations to *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1180-81 (9th Cir. 2012) and *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000) are not contrary. In *Monge*, the facts showed the potential market for photos of the plaintiff was viable because the defendant had previously paid plaintiff to publish her photos in its magazine. 688 F.3d at 1168. Likewise, in *Worldwide Church of God*, the court found that the plaintiff "*ceased* distribution [of the asserted work] because the Church's position on various doctrines had changed," and noted that "[b]ecause the Church plans at some time to publish an annotated version of [the asserted work,] it is entitled to protection of its copyright." 227 F.3d at 1119, n.2 (emphasis added). The fact that courts decline to find fair use as a rule where the plaintiff chooses not to enter a particular market which is otherwise viable does not negate *Seltzer*'s requirement that potential markets be "traditional, reasonable, or likely to be developed."

Dated: April 11, 2016

KEKER & VAN NEST LLP

By: /s/ Robert A. Van Nest
ROBERT A. VAN NEST
CHRISTA M. ANDERSON
DANIEL PURCELL

Attorneys for Defendant
GOOGLE INC.