KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:   212 556 2100
Facsimile:    212 556 2222

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 3:10-cv-03561 WHA <br><br> **REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S MOTION IN LIMINE NO. 2 RE NEW PRODUCTS** <br><br> Date:     April 14, 2016 <br> Time:    8:00 a.m. <br> Dept.:    Courtroom 8, 19th Fl. <br> Judge:   Hon. Hon. William Alsup |

## I. ORACLE MUST SHOW COPYING BEFORE INTRODUCING EVIDENCE OF NEW PRODUCTS IN SUPPORT OF ITS FAIR USE CASE.

In the prior trial, the jury found that Google's use of the declarations/SSO from the 37 Java SE API packages would infringe Oracle's copyright in Java SE 1.4 and Java SE 5.0 subject to Google's fair use defense, on which it was unable to reach a verdict. In the upcoming trial, it will be the jury's duty to resolve the question of fair use on which the prior jury hung. The question of fair use therefore is necessarily limited to the uses that were considered by the first jury. Consistent with this procedural history, on February 5, 2016, this Court ordered that the only versions and implementations of Android at play in the trial would include those presented to the jury in the first trial, plus those upon which the parties had agreed: Android versions G through M.[1] ECF No. 1479. New Android implementations would not be included in the retrial. *Id.* The exclusion of such new products obviates the need to prove infringement in the midst of a remanded jury trial on the limited question of fair use. *See* Tutorial Hr'g Tr. 85:21-86:6, Feb. 24, 2016.

Although Oracle appeared to contend at the February 2016 hearing that evidence of new products could be introduced as purported evidence of market harm without first proving that the products used elements of Java SE 1.4 and Java SE 5.0, Hr'g Tr. 86:13-87:4, Oracle now concedes in its opposition brief that it is Oracle's burden to prove use of the copyrighted works. ECF 1612-3, Opp. to MIL 2 ("Opp.") at 1:16-20, n.1 and 5:4-6.[2] This is consistent with the statutory language for the market effect prong of the fair use statute, which looks at "the effect of *the use* upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4) (emphasis added). The authorities cited by Oracle are not to the contrary. *See, e.g., Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992) (market effect prong inquires whether "*copying* resulted" in "usurping the market") (emphasis added).

---

[1] Android version M was added pursuant to the parties' agreement and this Court's order on February 16, 2016. *See* ECF 1506.

[2] Oracle's concession that it must show copying before evidence of new products may be introduced to prove market harm applies equally to any attempt by Oracle to offer these products as evidence under factor 1 of "whether the copying was transformative." Opp. at 5:14-15.

With respect to proof of copying for the new products, Oracle also now concedes that its supposed proof as to Brillo is "more complicated,"[3] but claims that it "can prove *KitKat and Lollipop are on Android Auto, TV, and Wear* through a few minutes of technical expert testimony...." Opp. at 1, n.1 (emphasis added). It is not clear what Oracle means by this or other similar statements in its motion. For example, Oracle argues that "versions of Android" are "*used in . . .* non-handheld devices" such as Android Auto, TV and Wear. *Id.* at 2:15-18 (emphasis added); *see also* Opp. at 1:17-20 (stating that KitKat and Lollipop "are the Android versions running on Auto"). From Oracle's opposition, one might believe one could find the entire Android platform (including the 37 Java SE API packages at issue) *inside the car,* substituting for an alleged old world in which "Java" was inside the car. *See* Opp. at 4:15-19 (arguing "Java" was in "devices" such as "wearables, cars, set-top boxes, televisions, and a variety of others."). But that isn't necessarily the case.

For example, Oracle cites as proof of copying in Android Auto its experts' citation of developer documentation about programming the Android Auto *app*. Opp. at 1:19-20. But Oracle fails to recognize that the Android Auto *app* is an application that runs on an Android *phone*, not in the car. "The Android Auto app links new cars that support Android Auto to Android 5.0+ phones (Lollipop or Marshmallow)."[4] "When you connect your Android phone to the compatible vehicle or radio, Android Auto will display applications on the vehicle's screen." https://www.android.com/auto/. That is, when a consumer runs the Android Auto app *on an Android phone,* the screen in his or her Android Auto-compatible car *is used as the display.* Thus, when the Android Auto developer documentation refers to the need for Lollipop or Marshmallow, it is explaining that *the phone* must have one of those versions of Android running on it in order to run the app. Oracle's experts cite nothing that shows that the *car* (or any head unit in the car)

---

[3] Oracle has conceded that, even if it could prove that Brillo infringes (which Google disputes), the proof would be "complicated." Opp. at 1, n.1. Accordingly, Oracle has agreed not to raise Brillo at trial. *Id.* In light of Oracle's concession, all evidence related to Brillo, including purported evidence of market harm in products that Oracle claims rely on Brillo, should be excluded. *See, e.g.,* Jaffe Rebuttal Report at ¶¶ 388-390 (opining on Brillo and "Internet of Things"); Kemerer Opening Report at ¶¶ 18, 34, 56-60 (same) and Appendix O.

[4] https://play.google.com/store/apps/details?id=com.google.android.projection.gearhead; *see also* https://support.google.com/androidauto#topic=6348027.

needs to run any version of Android, or have any of the Java SE APIs.[5] This type of "complication," ignored by Oracle, shows why a plaintiff must actually prove the alleged infringement. It also a prime example of why the evidence relating to such new products should be excluded under Rule 403.

Finally, Oracle's argument that the trial would not be unduly complicated by addition of the new products ignores that the parties would also be required to introduce new and unique evidence regarding each such product. For example, Oracle argues that Android Auto is a "superseding use" of "Java" in a car. But considering whether Android "supersedes" "Java," or instead is a transformative use, will require different evidence than the question of transformation in smartphones or tablets. It is not enough for Oracle simply to allege that Java was once found in cars in some form and now Android is found in cars in some form. Likewise, Android Wear still requires a smartphone to enable most of the desired functionality and has its own set of APIs.[6] These issues, and others, would require unique evidence on Android Wear as well; it will not be enough for Oracle merely to say that it once allegedly put a microprocessor into a ring and so Android Wear supersedes "Java."

## II. ORACLE'S NOVEL THEORY OF "SECONDARY" MARKET HARM IS NOT SUPPORTED BY THE CASE LAW.

Having conceded that proof of copying is necessary to offer evidence of new products as proof of market harm, Oracle now contends that any such new products, irrespective of any copying, may be offered as evidence of so-called "secondary harm." According to Oracle, "[o]nce a consumer buys an Android phone or tablet, the user is that much more likely to buy Android

---

[5] To the contrary, the Android Auto software that gets installed *in the car* is the "Receiver Library." *See* http://arstechnica.com/cars/2015/07/android-auto-review-a-beautiful-but-beta-alternative-to-awful-oem-solutions/2/ ("The final part of Android Auto is the 'Receiver Library' which is the software that makes a car Android Auto-compatible and lives in the car infotainment system."). Although a car manufacturer could choose to implement the Receiver Library by installing Android in the car, it could just as well implement the library in QNX, a prevalent operating system for *cars. Id.*; *see also* http://www.androidheadlines.com/2015/01/ah-primetime-things-know-android-auto.html ("The first thing to remember is that cars with Android Auto are probably not running Android, but actually BlackBerry's QNX. … BB's QNX has been out for a while and many car firms have adopted it to run their infotainment systems. The Android Auto is designed to run on your Android phone and it will connect to the QNX that actually connects to your car's hardware….").

[6] *See* https://www.android.com/wear/; *see also* http://developer.android.com/wear/index.html.

1048552

TV, Auto, or Wear. Accordingly, penetration into these markets is an effect of Google's success with Android phone and tablets. Thus, the harm … is a consequence of Google's infringement, regardless of whether Android Auto, TV, or Wear infringes." Opp. at 6:22-7:2.

In support of this novel theory of "secondary" market harm under the fair use analysis, Oracle cites three cases: however, *not one of these cases even mentions fair use*, much less supports Oracle's theory. The portions of the cases relied upon by Oracle relate to disgorgement of *defendant's profits* and not determining any harm to *plaintiff's market*. Oracle's attempt to shoehorn these disgorgement cases into the fair use statute's market harm framework by equating defendant's profits with plaintiff's market harm, *see, e.g.,* Opp. at 7:11-12 (citing *Bucklew v. Hawkins* as "calculating defendant's profits and thus harm attributable to the infringement"), is erroneous. Defendant's profits are not a proxy for plaintiff's market harm. In summary, Oracle offers no support whatsoever for consideration of such attenuated "secondary" market harm in connection with the fair use analysis. Accordingly, any such speculative evidence of products "regardless of whether [they] infringe" should be rejected. Opp. at 6:25-7:2.

### III. EVIDENCE RELATING TO THE NEW PRODUCTS SHOULD BE EXCLUDED UNDER RULE 403.

Oracle seems to suggest that its burden to prove copying under the fourth factor is excused by the fact that the Supreme Court called the fourth factor "the single most important element" in *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 566 (1985). But even if the fourth factor were "the single most important element" *in this case*, that does not make evidence which is inadmissible or irrelevant under the fourth factor admissible or relevant. Moreover, Oracle's apparent contention that the fourth factor is the most important factor in every case ignores more recent Supreme Court precedent to the contrary. *See Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590 n.21 (1994) ("[m]arket harm is a matter of degree, and *the importance of this factor will vary*, not only with the amount of harm, but also with the relative strength of the showing on the other factors.") (emphasis added); *see also id.* at 569 ("The four statutory factors are to be explored and weighed together..."); *see also* Patry on Fair Use § 6:5 (discussing case law on this particular issue).

Second, in contrast to Oracle's representation, its damages expert, James Malackowski, did not merely state "that he did not calculate damages to include harm from Android implementations such as 'wearables, automotive, [and] televisions.'" Opp. at 9:20-23. Malackowski's claim, quoted in Google's motion in its entirety (ECF 1559, Google's MIL 2 at 3:3-8), was that "[his] calculation of Oracle's losses ***is conservative*** *in that it does not reflect **additional losses claimed by Oracle** which stem from Google's improper use of the Infringed Java Copyrights*…." (emphasis added). Such a statement is improper and prejudicial, because it invites the jury to calculate Oracle's damages based on "additional" products for which copying (and the appropriate damages analysis) has never been shown. And, as Google explained in its Motion, this risk of unfair prejudice would be particularly acute if the new products were also being offered as evidence of "market harm," which could confuse the jury by suggesting that these products are relevant to Oracle's damages.

## IV.     EVIDENCE OF THE NEW PRODUCTS SHOULD BE EXCLUDED BECAUSE IT WAS OFFERED AS PART OF AN UNRELIABLE MARKET HARM OPINION.

Evidence of these new products should also be excluded because it was offered as part of an unreliable and speculative market harm opinion by Oracle expert Dr. Adam Jaffe that Google has moved separately to exclude. *See* ECF 1560-15 (Google's MIL 4) and ECF 1633-1 (Reply Brief). First, Dr. Jaffe admitted in deposition—and Oracle does not dispute—that he did nothing to assess the effect of the ***use of the declarations/SSO*** on the market for the copyrighted works or their derivatives as required under 17 U.S.C. § 107(4) and related appellate authority. That fact is particularly salient here, where Oracle failed to account for how Android works in products like Android Auto, TV or Wear. Second, Dr. Jaffe testified that his market effects analysis broadly concerns the "Java platform"—an analysis that goes beyond the market for the copyrighted works and is not tailored to "traditional, reasonable, or likely to be developed markets" for those works. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013). The evidence of new products should be excluded on this basis as well.

Dated: April 12, 2016

KEKER & VAN NEST LLP

By: /s/ Robert A. Van Nest
ROBERT A. VAN NEST
CHRISTA M. ANDERSON
DANIEL PURCELL

Attorneys for Defendant GOOGLE INC.