KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY  10036
Telephone:    212 556 2100
Facsimile:    212 556 2222

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br>          Plaintiffs, <br><br>     v. <br><br> GOOGLE INC., <br><br>          Defendant. | Case No. 3:10-cv-03561 WHA <br><br> **GOOGLE INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF EXPERT REPORT AND TESTIMONY OF DR. JAMES R. KEARL** <br><br> Date:         April 27, 2016 <br> Time:         8:00 a.m. <br> Dept.:        Courtroom 8, 19th Fl. <br> Judge:       Hon. Hon. William Alsup |

GOOGLE INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF
EXPERT REPORT AND TESTIMONY OF DR. JAMES R. KEARL
Case No. 3:10-cv-03561 WHA

1049153.01

## I. INTRODUCTION

As detailed in its Motion to Strike, ECF 1583-3, Google submits that certain of Dr. Kearl's opinions do not meet a fundamental standard for admissibility—namely, that they be based on "facts or data in the case that the expert has been made aware of or personally observed," Fed. R. Evid. 703.  Google appreciates the difficult task before Dr. Kearl and respects the challenges he faces in his role as a court-appointed expert in this litigation.  Google believes, however, that his independence should not erode the requirement that all of his opinions have a sound factual basis and be supported by relevant literature as appropriate before they are submitted to the jury.  Anything less will not aid the factfinder and requires exclusion.  *See, e.g., Feduniak v. Old Republic Nat'l Title Co.*, No. 13-CV-02060-BLF, 2015 WL 1969369, at *4 (N.D. Cal. May 1, 2015) (excluding testimony under *Daubert* where expert applied methodology based on "assumptions for which he did not have sufficient rational bases"); *Palmisano v. Olin Corp.*, No. C-03-01607 RMW, 2005 WL 6777561, at *5 (N.D. Cal. July 5, 2005) (excluding testimony under *Daubert* where the expert "provide[d] little support for [the factual] premise" of his opinion and the facts in the record actually contradicted the premise); *see also Daubert v. Merrell Dow Pharm, Inc.,* 509 U.S. 579, 591 (1993) (proffered expert testimony should "aid the jury in resolving a factual dispute").

Google moved to strike three opinions of Dr. Kearl, in large part because they take Oracle's damages theories at face value even though those theories are not supported by competent evidence and are contradicted by market facts and economic studies in the record.  Dr. Kearl's Response to Google's Motion to Strike, ECF 1622-3, does nothing to alter Google's analysis or provide additional support for these challenged opinions.  Google's Motion to Strike, therefore, should be granted.

## II. ARGUMENT

### A. The Court should strike Dr. Kearl's opinions relying on the previously-stricken opinions of Drs. Shugan and Cockburn, who are neither witnesses nor designated as experts in this re-trial.

As discussed in Google's Motion to Strike ("Motion"), Dr. Kearl's "middle range" opinion relies in significant part on a conjoint study by Oracle's former expert, Dr. Steven

1

GOOGLE INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF
EXPERT REPORT AND TESTIMONY OF DR. JAMES R. KEARL
Case No. 3:10-cv-03561 WHA

1049153.01

Shugan, that this Court held was "an unreliable predictor of market share." ECF 785 at 14. The Court ordered that "the conjoint analysis' determination of market share is STRICKEN." *Id*. at 16. Despite this, Dr. Kearl premises some of his opinions here on that unreliable Shugan analysis, and on the opinions of another former Oracle expert, Dr. Iain Cockburn, who had relied on the stricken conjoint analysis. The Court similarly struck Dr. Cockburn's opinions. *Id* at 18.

Dr. Kearl forthrightly acknowledged in his report that reliance on these former Oracle experts may be improper given that "portions of the expert opinions in the previous litigation were ruled inadmissible by the Court." ECF 1583-6 (Kearl report) at n.105. And, in response to Google's Motion to strike his opinions that are premised on the stricken conjoint analysis, Dr. Kearl similarly responds by stating that "if [his] reliance on those analyses is improper, [his] discussion and opinions expressed in that section should be stricken." ECF 1622-3 (Response of Kearl) at 3. Accordingly, and for all the reasons discussed in Google's Motion, Dr. Kearl's opinions premised on expert analysis that this Court previously ruled as inadmissible should be stricken. *See* ECF 1583-3 (Mtn. to Strike) at 7-10.

**B.     Dr. Kearl's modification of Dr. Leonard's counterfactual model is not supported by the facts or the literature.**

Google challenged Dr. Kearl's modification of the model used by its expert, Dr. Gregory Leonard, which in turn applied economic analysis to Oracle's speculative damages theory that Android would have reduced market share if there had been fewer apps available on the platform. *See id*. at 10-12. Even though Oracle's theory is not supported by the facts or economic literature in the record, and is disproven by what actually occurred with regard to app availability in the years after Android was released, Dr. Leonard nevertheless performed a counterfactual analysis to test the impact of fewer apps on Android profits if, *arguendo*, Oracle's theory was right. In so doing, Dr. Leonard applied an economic model that is supported in the literature and found that because so many key apps would have been developed for Android whether or not Android had used the accused declarations/SSO (or even the Java language), even if Oracle's theory were correct (and it is not), the amount of infringers' profits would be relatively small—and not reach into the billions as Oracle asserts.

2
GOOGLE INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF
EXPERT REPORT AND TESTIMONY OF DR. JAMES R. KEARL
Case No. 3:10-cv-03561 WHA

1049153.01

Dr. Kearl adapted Dr. Leonard's model and ran several scenarios in which he excluded certain apps from Dr. Leonard's app inclusion criteria. However, Dr. Kearl did this without regard to the popularity or significance of the app removed. For example, under Dr. Kearl's scenario #3, apps like Facebook, Walmart, Yahoo and Skype would not have been developed for Android. ECF 1619-5 (Leonard Reply to Kearl Rpt.) at ¶26. But the evidence shows that developers use multiple platforms, know multiple languages, and can port apps from one platform to another at low cost. *Id.* Against this economic reality, it is inconceivable that companies like Facebook, which unquestionably have the resources and a strong financial incentive to create apps for popular platforms, would not have created an app for Android. Google, therefore, moved to strike these opinions.

In response to Google's motion to strike, Dr. Kearl admits that Dr. Leonard's approach is "plausible" but counters that it is "not clearly obvious." ECF 1622-3 (Kearl Response) at 5. He does not, however, cite to any countervailing economic literature that calls Dr. Leonard's model into question. He also does not address the real-world economic studies in the record that conclude that application developers move to a platform only after it has a proven, sustainable user base. *See* ECF 1583-3 (Mtn. to Strike) at 10; ECF 1584-11 and 1584-12 (Karwande Decl. Exs. 10 and 11). And, he does not confront the evidence demonstrating that, in the real world, there were very few Android applications until after the first successful Android phones were released in late 2009 (with only a few applications) and finally attracted a large number of users. *See* ECF 1583-16 (Leonard Rpt., Corrected 3/10/2016) at ¶¶163-164 and evidence cited therein.

Dr. Kearl's critique of Dr. Leonard's analysis, therefore, is unsupported by economic literature and not reasonably based on the evidence in the case. Dr. Kearl's opinions based on implausible assumptions, therefore, should be stricken.

**C.     Dr. Kearl's "No Android" counterfactual is not supported by the facts.**

Google moved to strike Dr. Kearl's hypothetical in which, in the words of his March 18 Report, "the next best non-infringing alternative is 'no Android.'" ECF 1583-6 (Kearl Rpt.) at ¶79. In other words, a scenario in which Google did "not pursue the Android project at all." *Id.* at ¶77. Google challenged this counterfactual for two reasons. First, there is not sufficient

3

GOOGLE INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF
EXPERT REPORT AND TESTIMONY OF DR. JAMES R. KEARL
Case No. 3:10-cv-03561 WHA

1049153.01

1  evidentiary support for this alternate reality, and, second, Dr. Kearl performs no apportionment
2  analysis under this scenario to determine what portion of Android's profits have an actual causal
3  nexus to the declarations/SSO of the 37 Java SE APIs.  *See* ECF 1583-3 (Mtn. to Strike) at 12-14.

4  Dr. Kearl responds to Google's challenge by stating that Oracle's experts have "take[n]
5  the position that absent infringement Android would either not have been developed or would
6  have been a complete market failure."  ECF 1622-3 (Kearl response at 7).  While it is true Oracle
7  expert Adam Jaffe speculated at deposition that "Android as we know it" would not have existed
8  without the declarations/SSO of the 37 Java SE API's, and Oracle expert James Malackowski
9  theorized in written submissions that there were "no commercially acceptable alternatives
10 available to Google" other than using the declarations/SSO of the 37 Java SE APIs, this does not
11 mean that a "no Android" counterfactual is sufficiently supported by evidence to permit an expert
12 to present a multi-billion dollar theory to the jury—especially when the theory seeks indirect
13 profits.  *See, e.g., Mackie v. Rieser,* 296 F.3d 909, 915 (9th Cir. 2002) ("a district court must
14 conduct a threshold inquiry into whether there is a legally sufficient causal link between the
15 infringement and subsequent indirect profits"); *Feduniak,* 2015 WL 1969369, at *4  (excluding
16 testimony under *Daubert* where expert applied methodology based on "assumptions for which he
17 did not have sufficient rational bases").  Here, even Oracle's chief damages expert, Mr.
18 Malackowski, had to admit at deposition that Google would have launched a smartphone platform
19 of some sort even without the allegedly-infringed material.  *See* ECF 1583-3 (Mtn. to Strike) at
20 13 (quoting Malackowski deposition testimony); ECF 1583-8 at 377:20-378:1 (Malackowski
21 testimony).  Dr. Kearl's "No Android" counterfactual opinion lacks necessary support and should
22 be stricken.  *Palmisano,* 2005 WL 6777561, at *5 (excluding testimony under *Daubert* where the
23 expert "provide[d] little support for [the factual] premise" of his opinion and the facts in the
24 record actually contradicted the premise).

25 Finally, Dr. Kearl does not respond at all to Google's motion to strike the "No Android"
26 opinions because they fail to apportion Google's Android-related profits between the infringing
27 activity—*i.e.*, use of the declarations/SSO of the APIs—and all the other valuable components of
28 the platform.  *See* ECF 1583-3 (Mtn. to Strike).  On that uncontroverted basis alone, Dr. Kearl's

4
GOOGLE INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF
EXPERT REPORT AND TESTIMONY OF DR. JAMES R. KEARL
Case No. 3:10-cv-03561 WHA

1049153.01

opinions concerning a "No Android" counterfactual must be struck. *See, Polar Bear Prods., Inc. v. Timex Corp.,*, 384 F.3d 700, 712 (9th Cir. 2004) (recognizing "the impropriety of awarding [plaintiff] all of [defendant's] profits on a record that reflects beyond argument that most of the these profits were attributable to elements other than the infringement.") (internal citation omitted); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826, 828-29 (9th Cir. 1985) ("where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements").

## III. CONCLUSION

For the foregoing reasons, and those set forth in the moving papers, the Court should grant Google's Motion to Strike Portions of Dr. Kearl's Expert Report and strike Dr. Kearl's opinions set forth at ¶¶ 9,11,70,71,72,73,77,78,79,103 of his report.

Dated: April 13, 2016.                                          KEKER & VAN NEST LLP

                                                                By:   s/ Robert A. Van Nest
                                                                      ROBERT A. VAN NEST
                                                                      CHRISTA M. ANDERSON
                                                                      DANIEL PURCELL

                                                                Attorneys for Defendant GOOGLE INC.

5
GOOGLE INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF
EXPERT REPORT AND TESTIMONY OF DR. JAMES R. KEARL
Case No. 3:10-cv-03561 WHA

1049153.01