KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY  10036
Telephone:    212 556 2100
Facsimile:    212 556 2222

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 3:10-cv-03561 WHA <br><br> **REPLY TO ORACLE AMERICA INC.'S OPPOSITION TO GOOGLE'S MOTION IN LIMINE NO. 6** <br><br> Date:        April 27, 2016 <br> Time:        8:00 a.m. <br> Dept.:       Courtroom 8, 19th Fl. <br> Judge:      Hon. William Alsup |

Oracle attempts to avoid controlling Ninth Circuit authority to claim $8.8 billion in indirect profits that Oracle's expert, James Malackowski, attributes to the *entire Android platform*, not to the allegedly infringing declarations/SSO of the 37 Java SE APIs. Oracle sidesteps the causal nexus requirement, claiming only a "reasonable association" exists between Android and Java, rather than a causal nexus between the advertising profits sought and *the allegedly infringing 0.08% of code.* Oracle justifies its overreach by conflating the alleged infringement with a "Java-based" Android, relying on misleading citations to evidence, and arguing that, because Google and others have profited from Android, Oracle also must be entitled to a slice of the pie. Oracle's expert then relies on a legal theory that is contrary to established Ninth Circuit law to opine that Oracle's slice is the *entire pie*. But Oracle's expert never tried to apportion the Android pie, and so cannot opine it is impossible to do so.

### A. Oracle ignores controlling Ninth Circuit authority requiring a threshold inquiry as to the causal nexus between the infringement and the indirect revenues sought.

Oracle concedes that the revenues it claims are indirect, yet brushes that distinction aside. Opp. at 7. However, "because the amount of profits attributable to the infringement in an indirect profits case is not always clear, 'we have held that a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered.'" *Polar Bear Prods. Inc. v. Timex Corp.* 384 F. 3d 700, 710 (9th Cir. 2004) (as amended); *see also, Mackie v. Rieser,* 296 F. 3d 909, 915 (9th Cir. 2002) (requiring "threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits"); *Univ. of Colo. Found, Inc. v. Am. Cyanamid Co.,* 196 F.3d 1366, 1375 (Fed. Cir. 1999) (citing Nimmer treatise for proposition that claims for indirect profits rarely succeed); Br. at 8-9.[1] Moreover, the required causal nexus is "between the **infringement** and the gross revenue." *Polar Bear*, 384 F.3d. at 711 (emphasis added); *see also Mackie,* 296 F. 3d at 915 (there must be "a legally sufficient causal link between **the infringement** and subsequent indirect profits.") (emphasis added).

Oracle first attempts to recast the causal nexus standard, arguing it is only required to

---

[1] Oracle relies on *Bucklew v. Hawkins, Ash, Baptie & Co. LLP,* 329 F.3d 923 (7th Cir. 2003) but *Bucklew* did not reject (or discuss) the distinction between direct and indirect profits, and, in fact, found a claim for indirect profits too speculative. *Id.* at 933.

show a "reasonable association" between the infringement and ad revenues. Opp. at 8. But, *Polar Bear* requires the "plaintiff to establish a **causal** connection between the infringement and the gross revenues reasonably associated with the infringement." *Polar Bear,* 384 F.3d at 715 (emphasis added). *Polar Bear* and *Mackie* cannot be interpreted to require anything less than a threshold showing of **causation** to avoid speculative claims for indirect profits. *Id.* at 710-15.

In addition, Oracle claims that showing a causal nexus to the product (here Android) that contains the infringement is sufficient. Opp. at 8. This too is wrong. In *Mackie,* the Ninth Circuit analyzed the causal nexus between infringing artwork included in the Symphony's promotional brochure, reasoning that even if plaintiff could show how many people subscribed because of the brochure, "such a rudimentary analysis cannot determine how many of those individuals subscribed *because of [the infringing art] work.*" 296 F.3d at 916 (emphasis added). The *Polar Bear* court examined the causal nexus between revenues and the infringing advertisement itself, discussing, for example, plaintiff's evidence that customers would have seen the *infringing advertisement* within the promotional materials when ordering the watch. 384 F.3d at 712.

Oracle further relies heavily on its interpretation of *Frank Music Corp. v. MGM, Inc.,* 772 F.2d 505 (9th Cir. 1985) ("*Frank I*"). Opp. at 8. But, as *Mackie* points out, "*Frank I* did not attempt to define specifically the requisites for recovery of indirect profits damages[,]" and "our discussion in *Frank I* of the relationship between causation principles and indirect profits damages was somewhat opaque[.]" *Mackie,* 296 F.3d at 914-15. Oracle's attorney argument cannot alter the causal nexus showing required by Ninth Circuit law. *Id.* at 914; *Polar Bear,* 384 F.3d at 711.[2] Oracle also continues to rely on the *Brocade* case, though indirect profits were not at issue, but rather profits from the direct sale of infringing code. Br. at 12-13.[3]

Rather than address causation, Oracle instead asserts that, because the declarations/SSO

---

[2] Oracle also argues that Google is conflating the causal nexus requirement with apportionment. Not so. It is Oracle's burden to establish the causal nexus exists in the first instance. After that causal nexus is established, it is defendant's burden to apportion the elements of profit attributable to factors other than the infringement. *Polar Bear*, 384 F.3d at 711.

[3] Oracle concedes that Malackowski performed the same analysis as in *Brocade.* Although that analysis might be sufficient for the direct profits claim in *Brocade,* it does not establish that the 0.08% of code at issue here *caused* Android users to conduct searches to generate revenues using Google's preexisting, independent ad and search technology. *Id.*

exist in the code, "the Android revenue streams are *reasonably associated* with the infringement." Opp. at 11-14 (emphasis added). Oracle's Appendix A is bereft of evidence that shows the declarations/SSO had a "causal effect" on the revenue Google received via the complex search and ad revenue stream that depends upon millions of Android users' search efforts, and independent, pre-existing search and ad technology. Br. at 14-16. And Malackowski undertook no such causal analysis. *Id.* at 4-5. Just as the plaintiff in *Polar Bear* failed to rely on "evidence establish[ing] that the infringement may have actually influenced the purchasing decisions of those that bought Timex's watches at retail stores or other outlets," *id*. at 714-15, Malackowski offers no basis to conclude that the declarations/SSO somehow caused customers to conduct searches or view or click on ads. *See Lowry's Reports, Inc. v. Legg Mason, Inc,* 271 F. Supp. 737, 752 (causal nexus speculative where "[t]he complex, variable, independent thought processes of hundreds of individual brokers intervene between the copying and any subsequent gain.").

Finally, Oracle waves away district court opinions that apply *Mackie* and *Polar Bear* and hold that mere "use" of software does not establish a causal nexus to a complex income stream. Br. at 14-16. The courts in *CSI, IBM* and *DaimlerChrysler* found no causal nexus between the complex revenue streams at issue and evidence in *Daimler* that the "source code was an essential component of a larger profit-generating process," in *IBM* that the infringing software was integral to defendant's operations, and in *CSI* that financial transactions flowed through the infringing software--evidence indistinguishable from that relied on by Oracle here. *Id.*

### B. Malackowski's "commingling approach" is contrary to controlling authority and unsupported by any analysis whatsoever.

Malackowski should not be permitted to opine (1) that his opinion to "apportion" all Android platform profits to Oracle is justified by a legal theory that is not the law, or (2) that further apportionment "is not possible" when he admittedly performed no analysis to determine whether it was or not.[4] *First,* Malackowski's opinion that awarding Oracle all profits attributable

---

[4] Oracle confusingly seeks to justify Malackowski's first step in apportionment (Opp. at 15-17) based on *Polar Bear*'s discussion concerning plaintiff's satisfaction of the causal nexus requirement. 384 F.3d at 713. Google did not move to strike this first apportionment step, and reserves its right to challenge that approach at trial. However, Malackowski cannot testify that **further apportionment** (which *Polar Bear* says is up to the defendant) is impossible.

3
REPLY TO ORACLE'S OPP. TO GOOGLE'S MOTION IN LIMINE NO. 6
Case No. 3:10-cv-03561 WHA

to the Android platform is "appropriate" under the "legal theory of commingling" is directly contrary to controlling Ninth Circuit authority and 17 U.S.C. § 504(b). Br. at 17-18. *Sheldon v. Metro-Goldwyn Pictures Corp.* 309 U.S. 390 (1940) and *Harper & Row Publ'rs. Inc. v. Nation. Enters.,* 471 U.S. 539 (1985) do not establish a separate "commingling" principle that supports misinforming the trier of fact about the statutory apportionment standard. Rather, this principle is the rationale that underlies the burden shifting in section 504(b). Br. at 17-18. Oracle does not cite a single case holding otherwise.

Tacitly conceding as much, Oracle shifts ground, asserting that Malackowski's opinion complies with *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir. 1985), which relied on *Sheldon* and section 504(b) to require apportionment "where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material." *Id.* at 828. As in *Cream Records,* Malackowski admits not all of the "platform contribution" profits are attributable to the infringement. Br. at 6. Yet, Oracle argues Malackowski may opine that "no further apportionment *is possible* because the evidence *does not suggest* some rational additional division." Opp. at 19 (bold emphasis added). But that is precisely what Malackowski should *not* be permitted to testify. After purportedly subtracting the contribution of Google's search/ad technology, Malackowski *performed no analysis at all* to determine whether further apportionment of the profits attributable to the Android platform is possible. Br. at 5-6, 19; ECF 1601-3 (Kearl Resp. to Dauberts at 18); *see also,* ECF 1564-6 (Mal. Rpt. ¶¶272, 285); ECF 1614-42 (Mal. Dep. 222:11-224:15).[5] Drs. Leonard and Kearl opine unequivocally that further apportionment is possible, and Malackowski has no basis, other than his "say so," to opine otherwise. ECF 1563-7 (Len. Rpt. at 28-99); ECF 1601-3 (Kearl Resp. to Dauberts at 18).

Oracle further relies on criticisms of Dr. Leonard's apportionment methods, the Court's prior orders striking various methodologies, and a single hypothetical question and answer in Dr.

---

[5] As Dr. Kearl commented, "Mr. Malackowski does opine that no further apportionment of Android revenue to the 37 Java APIs is possible (in addition to not being required). This is an economic opinion, and **he provides no methodology, implicit or explicit, or evidence of the type on which a damages expert would rely in support of this opinion.** . . .I believe that such an apportionment is possible, and involves comparing actual (with infringement) profits to the profits Google would have made without infringement (but-for profits)." ECF 1601-3 at 18. (emphasis added).

Kearl's deposition testimony.[6] However, Malackowski did not attempt to apportion the profits attributable to Android, did not rely on any "synergy" theory in his report, and Dr. Kearl firmly rejected Oracle's misinterpretation his testimony. ECF 1621-3 (Kearl Resp. to Oracle's MIL 6 at 4-6) ("use of a counterfactual to calculate disgorgement damages apportions all of the value of the synergy to the copyright owner and none to the infringer.").[7]

### C. Malackowski's estimate of Oracle's lost Java ME profits is unreliable.

As set forth in Google's opening brief, Malackowski's lost profit analysis of Java ME licensing revenues is unreliable. Oracle ignores that it must show that the infringing use of the declarations/SSO caused any harm to Java ME, a different work, which does not have the same set of 37 API packages. Br. at 22-25. Further, Malackowski uses a single forecast to project revenues 5 years beyond the forecast itself. *Id.* Even worse, he does so without analyzing evidence of actual lost licensing sales, considering other events that affected those revenues, such as the recession or Oracle's open source release of OpenJDK, or considering the different products and business models of Android and JavaME. *Id.* Dr. Kearl noted, "[w]ith regard to the causality, Mr. Malackowski is obscure about the relationship between Android and Java ME," and further faulted Malackowski's use of the 2008 forecast, stating, "[w]hat is not standard is to linearly extrapolate those contemporaneous forecasts far outside the range of those actual forecasts with no additional analysis or support." ECF 1601-3 (Kearl Resp. to Dauberts 19-20).[8]

---

[6] Oracle implies that, because Google used third party open source code for the Android OS, Oracle should receive the entire $8.8 billion in profits attributable to the entire Android platform. But Google's use is not rendered unfair because it used third party code. Malackowski admits that Oracle is only entitled to profits attributable to the claimed infringement (i.e. to the use of the declarations/SSO). ECF 1562-6 (Mal. Dep. at 218:7-12).

[7] After Google filed this motion, Oracle submitted Dr. Jaffe's purported reply report to Dr. Kearl, in which he opined concerning this hypothetical Q&A. Setting aside whether the Jaffe reply report is properly a reply to Dr. Kearl's report, Oracle cannot rely on Jaffe's opinions offered in that report on 3/28/16 to support Malackowski's lack of analysis. Malackowski did not rely on any such theory in his 2/29/16 Responsive Report when such opinions had to be disclosed under the Court's scheduling order. ECF 1509 (third round party expert reports due on 2/29/16).

[8] Finally, Oracle concedes that Malackowski does not quantify lost profits attributable to project Acadia, or otherwise analyze them; thus he cannot reliably testify that those supposed losses are "best measured by the apportioned Android profits attributable to the Infringed Java Copyrights." Opp. at 25, n. 23; *see also,* Br. at 25-26; ECF 1601-3 (Kearl Resp. to Dauberts at 21) ("Mr. Malackowski provides no analytical or evidentiary support linking Android profits, apportioned or not, to Sun's or Oracle's failure to develop a Java-based 'full stack' operating system."). Thus, Malackowski's opinion in ¶¶215-217 of his report and any similar opinions, should be stricken.

| | | |
|---|---|---|
| Dated:  April 13, 2016 | | KEKER & VAN NEST LLP |
| | By: | /s/ Robert A. Van Nest |
| | | ROBERT A. VAN NEST |
| | | CHRISTA M. ANDERSON |
| | | DANIEL PURCELL |
| | | Attorneys for Defendant GOOGLE INC. |