KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

KING & SPALDING  LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No.  3:10-cv-03561 WHA (DMR)<br><br>**SUPPLEMENTAL BRIEF RE ORACLE'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF OPEN JDK INCLUDING EXPERT TESTIMONY THEREOF**<br><br>Dept.          Courtroom 8, 19th Fl.<br>Judge:        Hon. William Alsup |

## I.    INTRODUCTION

As requested by the Court, Google submits this supplemental brief in response to Oracle's argument that Google should be precluded on the basis of discovery non-disclosure from arguing that Open JDK is relevant to multiple aspects of its fair use defense.  *See* Reply In Support of Motion in Limine #1Regarding Open JDK (ECF 1644) at 3-5.  Oracle's representations concerning the discovery responses at issue are incorrect, particularly in light of the parties' agreements governing discovery during these retrial proceedings.

## II.    DISCUSSION OF DISCOVERY RESPONSES AND AGREEMENTS

### A.    Oracle misstates the nature of the discovery response on which it bases its preclusion argument.

The premise of Oracle's preclusion argument is that Oracle propounded an interrogatory "asking for a complete explanation of Google's theory of fair use," ECF 1644 at 3:15, and that Google allegedly failed to identify all of the specific legal theories that make evidence of Open JDK relevant to fair use.  Oracle's premise is incorrect.  Oracle did not propound an interrogatory seeking all legal theories of relevance for each piece of evidence Google might offer at trial in support of its fair use defense.  Oracle propounded, and Google timely responded to, an interrogatory asking Google to identify the *factual bases* for its fair use defense.  The interrogatory propounded by Oracle stated in full:  "To the extent YOU contend that YOUR use of any aspect of the 37 JAVA API PACKAGES constitutes a fair use, state in detail the *factual bases for that contention*."  ECF 1566-5 (Ex. 21), No. 40 (emphasis added).

Google timely served a supplemental response to Oracle's Interrogatory No. 40 that included a lengthy bullet-point list of categories of facts supporting its fair use defense.  In particular, Google's response stated that "Sun's licensing practices did not preclude Google from using the SSO in Android. To the contrary, Sun/Oracle's business model was to *promote widespread and free use of the Java language and the associated APIs (including the SSO)* and to compete on implementations for those APIs (including the implementations of the 37 API packages)."  *Id.* at 13:15-20 (emphasis added).  Google also specifically identified Open JDK in a subsequent bullet point, explaining that "Sun/Oracle had already enabled the fragmentation of the

Java SE platform by giving away the SSO for free, and without any restrictions on fragmentation, through OpenJDK and the associated GPLv.2 with the Classpath Exception open source license, which does not require compatibility." *Id.* at 13:21-28.

Oracle now argues that, because Google's interrogatory response specifically referenced Open JDK in the context of a statement about "fragmentation," that Google cannot argue that Open JDK is relevant to any issue other than fragmentation.[1] *See* ECF 1644 at 3.  That argument misunderstands the nature of the interrogatory that Oracle propounded.  As noted above, the interrogatory asked Google to identify the "factual bases" in support of its fair use defense.  It did not ask for, and Google was not required to articulate, every possible legal theory of relevance tying each piece of evidence identified to a specific fair-use factor.  Google adequately identified Open JDK—both generally in terms of Sun's free (*i.e.,* open source) licensing practices and specifically–as being relevant to its fair use defense.  Nothing more was required by Oracle's interrogatory.

### B. Oracle ignores the agreement between the parties during discovery that did not require the parties to re-disclose material already disclosed in the prior trial record and briefing.

Oracle's preclusion argument also ignores the parties' agreement regarding incorporation in discovery responses of evidence adduced in the first trial.  Based on the above interrogatory response, Oracle seeks to prevent Google from arguing that Open JDK is relevant to any issue in this case other than fragmentation – specifically, Oracle tries to argue that Google cannot present OpenJDK as relevant to issues of (1) consent by the copyright owner (*Wall Data, Inc. v. LA Cnty. Sheriff's Dep't,* 447 F.3d 769, 778 (9th Cir. 2006) ("fair use is appropriate where a 'reasonable copyright owner' would have consented to the use")); (2) the published status of the copyrighted work (*Harper & Row Publishers Inc. v. Nation Enters.,*471 U.S. 539, 564 (1985) (a work's *un*published status is "a critical element of its 'nature.'"); and (3) the fourth factor in fair use of market harm (the effect of the use on the copyrighted work per 17 U.S.C. § 107(4)).  But Open JDK was discussed in numerous contexts by several witnesses during the last trial, in a

---

[1] Oracle "does not seek to preclude" Google from arguing that Android did not harm the market for the asserted works because Sun/Oracle, through Open JDK, enabled the same type of harm from fragmentation that Oracle accuses Google of causing in this case.  ECF 1644 at 16-19.

manner directly relevant to these other arguments, with no limiting instruction as to its relevance. Google properly incorporated this evidence from the prior trial into its response to Oracle's interrogatory on fair use during these retrial discovery proceedings, in the fashion that the parties previously agreed each other could do (at Oracle's suggestion), and as Oracle itself did in response to Google's contention interrogatory on fair use.

Open JDK was discussed by several witnesses at the last trial, many of whom Oracle itself called to testify.  Oracle's counsel addressed the potential far-reaching impact of Open JDK in his opening statement, acknowledging the fact that Oracle consented to make the copyrighted material at issue available on an open source basis, and published to the world by stating:  "And you may hear from Google, well, why is Sun – why is Oracle making such a big deal about this intellectual property?  They released it under the GPL.  They made it available under an open source basis."  TR at 207.  Oracle itself offered evidence of Open JDK to show that the SSO of the 37 API packages at issue in this case was available to Google (and the rest of the world) free of charge.  Oracle's then-CEO, Larry Ellison testified on direct examination to the fact of open publication, stating that, "all of the Java code is published.  So it's open – it's openly published so people can look at it.  And that's the notion of open source.  Anyone can read the source code."  TR at 292:8-10.  Mr. Ellison further testified on direct examination to facts supporting consent to the free use of the copyrighted material at issue under the OpenJDK license (which is therefore also directly relevant to the absence of market harm), stating:

Q:  Now, was a Java GPL open source license available to Google?

A. Absolutely.

TR at 293:2-4.  Another Oracle senior executive, Thomas Kurian, testified similarly on direct examination that, "Open JDK is the so-called reference implementation of Java.  It's implemented in an open source project called the Open JDK in which a number of companies participate . . . ."  TR at 369:9-13.  Furthermore, numerous Google witnesses, including Eric Schmidt, Andy Rubin, and Joshua Bloch, testified about Open JDK during the last trial.  At no point was the relevance of this testimony artificially circumscribed or limited to the argument that Oracle enabled fragmentation by making Open JDK available.

1050046.01

1    Despite the substantial evidence of Open JDK that came into the first trial, and the clear

2    relevance of that evidence to consent to the use, published nature of the work, and market harm,

3    Oracle argues that Google's interrogatory response requires that evidence of Open JDK can only

4    be used in this trial for the narrow purpose of demonstrating lack of harm from fragmentation

5    because that was the only place Open JDK was specifically mentioned in Google's interrogatory

6    response.  *See* ECF 1644 at 3.  But that argument ignores that the parties had agreed that each side

7    would be permitted to incorporate the prior trial record into their discovery responses, and that

8    Google in fact did so in response to Oracle's interrogatory regarding the factual bases for its fair

9    use defense.  ECF 1566-5 (Ex. 21) at 9:17-21 ("In support of this contention, Google reserves its

10   right to rely upon, and hereby incorporates by reference, all facts set forth in the previous trial

11   record in this matter, including all trial transcripts and trial exhibits, any deposition testimony and

12   exhibits preceding the previous trial, and any briefing, or exhibits identified in briefing, preceding

13   the previous trial.").

14   Google followed this approach in its discovery responses because the parties agreed to

15   allow each other to incorporate evidence from the prior trial record into their discovery responses,

16   so that the parties would not waste time and effort re-disclosing facts and evidence that were

17   already discussed in the last trial.  Indeed, Oracle itself is the one that suggested that approach,

18   and Oracle itself has utilized it in its own discovery responses, including its response to Google's

19   interrogatory on fair use.  In particular, in early September 2015, Google propounded an

20   interrogatory asking Oracle to "State in detail the factual basis for your contention that Google's

21   use of any aspect of the APIs-at-Issue does not constitute a 'fair use' under 17 U.S.C. § 107."

22   Google Interrogatory No. 23.  Oracle responded by stating in part:  "Google's use of Oracle's

23   Java API Packages is not a fair use.  Facts supporting this conclusion were set out in the previous

24   trial in this matter and Oracle hereby ***incorporates and refers Google to the previous trial and***

25   ***appellate record***, including all admitted trial exhibits, all testimony and all trial court and

26   appellate pleadings and briefing on this issue . . ."  (Emphasis added).  After Google raised issues

27   with Oracle's incorporation-by-reference, the parties met and conferred over the course of several

28   weeks and eventually reached an agreement, referred to as the "no surprises agreement," that

allowed a party to incorporate the prior trial record to avoid restating facts stated therein, but

required the part to identify any new facts upon which it intended to rely at the new trial.  The

genesis of this agreement is described in Google's October 22, 2015 email to Oracle:

> Oracle expressed concern [] about (1) the ability to respond to the interrogatories, reserving its right to rely on the previously developed record without undue burden, and (2) the level of granularity required in disclosing newly learned facts responsive to the interrogatories.  We previously proposed that Oracle respond to interrogatories such as Interrogatory 27 by identifying those portions of the trial transcript and exhibit list that it relied upon in the prior trial, and stating that it is unaware of any additional bases for its contention (if that is the case).  You expressed concern that identifying those portions of the record was unduly burdensome.  In light of that concern, we propose that Oracle respond by stating that it reserves its right to rely upon the trial record, deposition testimony and exhibits, and briefing or exhibits identified in briefing in this case, and then stating it is unaware of any additional bases for its contention (if that is the case).  If Oracle has learned of new facts that are not within the trial record, deposition testimony and exhibits and/or briefing or exhibits identified in briefing in this case (regardless of whether those facts relate to the pre-June 15, 2011 time period), we believe Oracle is obligated to identify at a minimum the categories of newly learned facts, witnesses who have knowledge of those facts, and any documents reflecting those facts.  This would include identification of documents and/or facts that were not relied on by any party at trial, in depositions, or in briefing in phase 1.

Ex. 1 (10/22/15 email from B. Egan).

Oracle's counsel summarized and confirmed its consent to this arrangement on November 2, 2015, stating: "Further, the parties mutually agreed that they may rely on all materials in the prior trial record, deposition testimony, exhibits and briefing or exhibits identified in briefing in this case without specifying exactly which material supports each point."  Ex. 2 (November 2, 2015 email from L. Simpson); see also Ex. 3 November 10, 2016 email from L. Simpson stating "Interrogatories: We agree to the "no surprises" proposal that we have been discussing, as articulated in detail in my email of November 2 – basically, the parties agree in responding to interrogatories to identify all new categories of information both from the new time period and from the old time period if it was not disclosed before.").

Accordingly, Google, like Oracle, incorporated into its interrogatory responses the prior trial transcripts and trial exhibits, and the deposition testimony and briefing, leading up to the last trial.  This approach was reasonable and consistent with the parties' agreement.  In light of the parties' agreement, Oracle cannot plausibly claim prejudice or that Google's interrogatory

response failed to adequately identify the fact that Open JDK was freely available for use by and published to anyone in the world, by consent of Oracle as an open source body of code, and that the fact of its free availability was available for the jury in the first trial to consider as relevant to any aspect of fair use, including market harm and the nature of the copyright work.

Moreover, Google's theory of relevance to market harm was properly disclosed in expert discovery. Google's damages expert, Dr. Gregory Leonard, timely submitted a reply to Oracle's expert reports on fair use in which he explained that "[b]y making its Java SE API packages available under an open-source license, Sun's OpenJDK project opened the door for any third party, or at least any third party with sufficient technical capability and resources, to use those Java SE API packages in a smartphone operating system." Feb. 29, 2016 Leonard Rep. ¶ 26. Dr. Leonard further opined that Google's alleged infringement is not responsible for "displacing" Java ME from the feature phone market—one of the claims underlying Oracle's allegations of "market harm"—because "[t]he same displacement would have occurred had Google, for example, used the OpenJDK versions of the declaring code and SSO of the 37 API packages at issue or used (only) C/C++ as the applications programming language." *Id.* ¶ 16.

Dated: April 14, 2016                                 KEKER & VAN NEST LLP


                                            By:    /s/ Robert A. Van Nest
                                                   ROBERT A. VAN NEST
                                                   CHRISTA M. ANDERSON
                                                   DANIEL PURCELL

                                                   Attorneys for Defendant
                                                   GOOGLE INC.

GOOGLE'S SUPPLEMENTAL BRIEF RE ORACLE'S MOTION IN LIMINE NO. 1
Case No.  3:10-cv-03561 WHA (DMR)

1050046.01