KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE INC.,<br><br>    Defendant. | Case No.  3:10-cv-03561 WHA (DMR)<br><br>**GOOGLE'S BRIEF REGARDING "NON-INFRINGING ALTERNATIVES" IN RESPONSE TO APRIL 14, 2016 REQUEST FROM COURT** |

## I. INTRODUCTION

Pursuant to the Court's request at the April 14, 2016, hearing, Google hereby submits this brief to address appellate authority that considers non-infringing alternatives as part of a disgorgement analysis under the copyright damages statute. As requested, Google addresses only Oracle's claim for disgorgement of infringer's profits, which is one of three measures of damages sought in this case. Oracle also seeks lost licensing profits and statutory damages.

Although Google has not found any Ninth Circuit decision that directly addresses the use of "non-infringing alternatives" in conjunction with a copyright disgorgement analysis, both the First and Fourth Circuit Courts of Appeal have approved of such an approach to evaluate a claim for disgorgement of a copyright infringer's profits. The Seventh Circuit has also indicated its approval of the approach in a discussion of non-infringing alternatives in considering disgorgement of infringer's profits.

Google is unaware of any appellate authority rejecting such an approach. Courts do not necessarily discuss "non-infringing alternatives" as such; rather, courts consider the causal inquiry under section 504(b) and, in so doing, evaluate counterfactuals to determine the requisite causation required by the statute. Certainly, the Ninth Circuit has repeatedly emphasized that section 504(b) "creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a **causal nexus** between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not **the result of** infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (emphasis added); *Mackie v. Rieser,* 296 F.3d 909, 914 (9th Cir. 2002) (same). Because of the equitable nature of apportionment, the Ninth Circuit has repeatedly declined to rule out any method of satisfying the requirement to apportion between infringing and non-infringing contributions to an infringer's profits that suggests a rational division of profits and is "reasonable and just." As the Ninth Circuit has explained, "[i]n cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment." *Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* 754 F.2d 826, 828-29 (9th Cir.

1985) (internal citation omitted); *see also Frank Music Corp. v. MGM, Inc.,* 772 F.2d 505, 518 (9th Cir. 1985) ("The district court was correct that mathematical exactness is not required. However, a reasonable and just apportionment of profits is required.") (citations omitted); *Polar Bear,* 384 F.3d at 712 (same); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1480 (9th Cir. 1988) (plaintiff "can receive only the profits attributable to the infringement").

Given that the Court has requested briefing on non-infringing alternatives, Google does not seek to explain here how Dr. Leonard's disgorgement analyses comply with section 504(b) and the above authorities. However, it is important to note that Oracle seeks to label all of Dr. Leonard's analyses as reliant on "non-infringing alternatives," even if these analyses simply use standard economic counterfactuals to measure the profits attributable to the alleged infringement. Google respectfully submits that ample authority supports this approach, and controlling law expressly approves (indeed requires) the consideration of evidence that provides a rational basis to apportion profits. This consideration ensures that the plaintiff is not awarded speculative profits that are not caused by, "attributable to" or "resulting from" the defendant's own efforts rather than the infringed work. *See*, *e.g.*, *Sheldon v. Metro-Goldwyn Pictures Corp.,* 309 U.S. 390, 408 (1940) ("equity is concerned with making a fair apportionment so that neither party will have what justly belongs to the other").

## II. MULTIPLE CIRCUITS APPROVE USE OF COUNTERFACTUALS IN A DISGORGEMENT ANALYSIS.

In *Data Gen. Corp. v. Grumman*, the First Circuit explicitly held that "the defendant can attempt to show that consumers would have purchased its product even without the infringing element." 36 F.3d 1147, 1175 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 n.2 (2010). Such a counterfactual, therefore, can be used to meet "defendant's burden under the apportionment provision of Section 504(b)" which "is primarily to demonstrate the absence of a causal link between the infringement and all or part of the profits claimed by the plaintiff." *Data Gen.,* 36 F.3d at 1175.

Similarly, in *Bonner v. Dawson*, the Fourth Circuit upheld a jury verdict awarding $10,707 in actual damages but no infringer's profits, relying on evidence defendants introduced

that the purchaser of a building would have gone forward with the purchase even if the building did not contain the infringing material but instead had a non-infringing façade.  404 F.3d 290, 295 (4th Cir. 2005).  The Fourth Circuit explained that "[o]nce Bonner met his burden under §504(b), it was incumbent on [defendants] to show that their profits were 'attributable to factors other than the copyrighted work." *Id.*  The Fourth Circuit concluded defendants did so, specifically pointing to defendants' evidence that the purchaser would have purchased the building "even if a different [non-infringing] façade had been used." *Id.*[1]

The Seventh Circuit, too, has indicated that use of counterfactuals is acceptable.  In *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 931-32 (7th Cir. 2003), the Seventh Circuit discussed the fact that the defendant "could have designed its own, non-infringing program that would have duplicated the essential—and noncopyrighted—features of [plaintiff's]" and thus it could have taken sales from plaintiff.  The Seventh Circuit explained that this argument was relevant both to actual damages and to show "infringer's profits that are due to those features of his work that do not infringe; those profits belong to the [infringer]." *Id*. at 931.  Judge Posner explained that the fact that defendants could have designed their own non-infringing program was relevant to the "essential distinction" in copyright law: a copyright owner can sue to recover infringer's profits that are due to the infringer being a more efficient producer in order to discourage infringement, but cannot recover profits due to features of the product that do not infringe.  *Id.*[2]

### III.  THE NINTH CIRCUIT HAS NEVER REJECTED A COUNTERFACTUAL APPROACH TO DISGORGEMENT AND REQUIRES A "REASONABLE AND JUST" APPORTIONMENT.

Although Oracle has argued that *Frank Music Corp. v. MGM, Inc.,* 772 F.2d 505 (9th Cir. 1985), "held…that NIAs have no probative value in disgorgement," ECF 1554-4 at 2:16-18

---

[1] *See also, Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003) (rejecting claim that profits were caused by defendant's use of Flying B logo "rather than some other logo"); *Walker v. Forbes,* 28 F.3d 409, 411 (4th Cir. 1994) (discussing defendant's evidence that other photos that could have been included were more valuable than infringing photo).

[2] Because the Court asked the parties to provide only appellate authority in this brief, Google notes that relevant district court opinions from the Southern District of New York, Eastern District of New York, and Northern District of California are discussed in Google's Opposition to Oracle's MIL4 (ECF 1602-7).

(Oracle MIL 4), that is not accurate. In *Frank*, the Ninth Circuit reversed the district court's apportionment because it did not provide "any reasoned explanation of or formula for its apportionment." *Id.* at 518. In seeking to defend the lower court's apportionment, the defendant argued that the show's continued success after the plaintiff's infringing music was omitted proved its relative unimportance. The Ninth Circuit rejected that argument, crediting other evidence, such as defendant's own testimony, that the music was a very important part of the show, and remanding with the instruction that the trial court should "fully explain on the record its reasons and the resulting method of apportionment it uses." *Id.* at 519. *Frank* does not establish, or even suggest, a general rule barring the use of non-infringing alternatives from disgorgement analyses under copyright law. In fact, the court declined to prescribe any particular approach—much less reject a counterfactual methodology—and emphasized that "[i]f the court finds that a reasonable nonspeculative formula cannot be derived, or that the amount of profits a reasonable formula yields is insufficient to serve the purposes underlying the statute, *then the court should award statutory damages.*" *Id.* (emphasis added).

Not only has the Ninth Circuit never adopted a categorical rule excluding evidence of a counterfactual or "non-infringing alternative," such a rule would be irreconcilable with its oft-repeated refusal to require a specific method of apportionment, but only a "reasonable and just apportionment" based on evidence supporting a rational division of profits. *Cream Records,* 754 F.2d at 828-29; *see also Frank Music*, 772 F.2d at 518 ("The district court was correct that mathematical exactness is not required. However, a reasonable and just apportionment of profits is required.") (citations omitted); *Polar Bear,* 384 F.3d at 712 (same); *Abend,* 863 F.2d at 1480 (same).[3]

This Court expressed concern in posing its hypothetical at the hearing that the purpose of disgorgement would be thwarted if consideration of counterfactuals is permitted. But litigants

---

[3] As the Fourth Circuit explained in *Walker v. Forbes,* "[t]he simplicity [of section 504(b)] masks fiendish difficulties concerning the calculation of [damages and infringer's profits]…and given the remarkable breadth of works eligible for copyright protection, and the numerosity of variables involved in determining loss and gain under each scenario, the experience of copyright damages has been one of a case-by-case assessment of the factor involved, rather the application of hard and fast rules." 28 F.3d at 412.

and courts cannot even reach the disgorgement and apportionment analysis until a copyright plaintiff has proven a causal nexus between the infringement and profits sought—the very purpose of requiring a causal nexus to indirect profits is to ensure that speculative indirect profit claims do not succeed.  *Polar Bear*, 384 F.3d at 703, 710 (reiterating "the principle that a plaintiff in a copyright infringement action must establish a sufficient causal connection between the infringement and the infringer's profits it seeks to recover" and noting that indirect profit claims involve "revenue that has a more attenuated nexus to the infringement"); *Mackie,* 296 F.3d at 914 (plaintiff "must establish the existence of a causal link before indirect profits damages can be recovered").  As the Federal Circuit has noted, indirect profit claims "rarely succeed." *Univ. of Colo. Found , Inc. v. Am. Cyanamid Co.,* 196 F.3d 1366, 1375 (Fed. Cir. 1999) (rejecting plaintiff's indirect profits claim and citing Nimmer treatise for proposition that claims for indirect profits rarely succeed).

Moreover, apportionment must ensure that both the infringer does not benefit from the infringement, and "avoid the one certainly unjust course of giving the plaintiffs everything, because the defendants cannot with certainty compute their own share." *Abend*, 863 F.2d at 1480. Tellingly, when the Supreme Court in *Sheldon v. Metro-Goldwyn Pictures Corp.,* 309 U.S. 390, 408 (1940) first held that apportionment of infringer's profits was appropriate, the Court directed that the apportionment need only be a "reasonable approximation," commenting that "equity is concerned with making a fair apportionment so that neither party will have what justly belongs to the other."

Dated:  April 15, 2016                           KEKER & VAN NEST LLP


                                                 By:   /s/ Robert A. Van Nest
                                                       ROBERT A. VAN NEST
                                                       CHRISTA M. ANDERSON
                                                       DANIEL PURCELL

                                                       Attorneys for Defendant
                                                       GOOGLE INC.