# REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

| | |
|---|---|
| 1 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|   | KAREN G. JOHNSON-MCKEWAN (SBN 121570) |
| 2 | kjohnson-mckewan@orrick.com |
|   | ANNETTE L. HURST (SBN 148738) |
| 3 | ahurst@orrick.com |
|   | GABRIEL M. RAMSEY (SBN 209218) |
| 4 | gramsey@orrick.com |
|   | 405 Howard Street, San Francisco, CA  94105 |
| 5 | Tel: 1.415.773.5700 / Fax: 1.415.773.5759 |
|   | PETER A. BICKS (*pro hac vice*) |
| 6 | pbicks@orrick.com |
|   | LISA T. SIMPSON (*pro hac vice*) |
| 7 | lsimpson@orrick.com |
|   | 51 West 52nd Street, New York, NY  10019 |
| 8 | Tel: 1.212.506.5000 / Fax: 1.212.506.5151 |
| 9 | BOIES, SCHILLER & FLEXNER LLP |
|   | DAVID BOIES (*pro hac vice*) |
| 10 | dboies@bsfllp.com |
|   | 333 Main Street, Armonk, NY  10504 |
| 11 | Tel: 1.914.749.8200 / Fax: 1.914.749.8300 |
|   | STEVEN C. HOLTZMAN (SBN 144177) |
| 12 | sholtzman@bsfllp.com |
|   | 1999 Harrison St., Ste. 900, Oakland, CA  94612 |
| 13 | Tel: 1.510.874.1000 / Fax: 1.510.874.1460 |
| 14 | ORACLE CORPORATION |
|   | DORIAN DALEY (SBN 129049) |
| 15 | dorian.daley@oracle.com |
|   | DEBORAH K. MILLER (SBN 95527) |
| 16 | deborah.miller@oracle.com |
|   | MATTHEW M. SARBORARIA (SBN 211600) |
| 17 | matthew.sarboraria@oracle.com |
|   | RUCHIKA AGRAWAL (SBN 246058) |
| 18 | ruchika.agrawal@oracle.com |
|   | 500 Oracle Parkway |
| 19 | Redwood City, CA 94065 |
|   | Tel: 650.506.5200 / Fax: 650.506.7117 |
| 20 | *Attorneys for Plaintiff* |
|   | ORACLE AMERICA, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| ORACLE AMERICA, INC., | | Case No. CV 10-03561 WHA |
| | Plaintiff, | **REPLY IN SUPPORT OF ORACLE'S MOTION IN LIMINE #7 TO EXCLUDE REPLY REPORT OF GOOGLE'S DAMAGES EXPERT, DR. GREGORY LEONARD** |
| v. | | |
| GOOGLE INC., | | Hearing: April 27, 2016, 8:00 a.m. |
| | Defendant. | Dept.: Courtroom 8, 19th Floor |
| | | Judge: Honorable William H. Alsup |

Google's response does not provide any legitimate basis for allowing Dr. Leonard to rely on new "evidence" of Google's expense deductions, or a new apportionment analysis, disclosed for the first time in Dr. Leonard's Reply.  Google bears the burden of proof on both of these issues, and Dr. Leonard should have presented all supporting evidence and analyses in his opening report on February 8.  The prejudice to Oracle created by these last-minute disclosures requires precluding Dr. Leonard from relying on them at trial.

I.  **DR. LEONARD SHOULD BE PRECLUDED FROM RELYING ON PREVIOUSLY UNDISCLOSED EVIDENCE OF GOOGLE'S EXPENSE ACCOUNTING**

Google spends much of its opposition discussing the substance of the opinions set forth in Dr. Leonard's February 8 report, which is not the subject of Oracle's Motion.  The instant motion does not seek to exclude any opinions or facts that were properly disclosed in Dr. Leonard's February 8 report, though Dr. Leonard's TAC calculation in that report is the subject of Oracle's Motion in Limine No. 4, which is already fully briefed and set for hearing this week.  *See* ECF Nos. 1554-4, 1656-3.  It is particularly unfair to allow Dr. Leonard to submit additional "evidence" in his Reply in response to Prof. Kearl's Report (to which no party would have a chance to respond) in order to support opinions that were already the subject of a motion *in limine* by Oracle.

Google argues that Dr. Leonard was simply "doublechecking" information.  Opp. 2.  The only thing Google cites in support is Dr. Leonard's self-serving statement.  Opp. 3; ECF No. 1619-5 (Leonard Reply Rpt.) ¶ 7.  And even if *Dr. Leonard* was previously aware of the new information, *see* Mot. 3-4 (listing new facts), the fact remains that he failed to disclose that information in his earlier report.  That failure violated the Court's scheduling order, which required Dr. Leonard to present all evidence supporting his expense deductions in that report. ECF Nos. 1334 (Stipulation) at 1-2 & 1356 (Order) & 1507 (stipulation to modify dates) & 1509 (Order).  Contrary to Google's suggestion (Opp. 2), Oracle does not contend that there is anything wrong with an expert relying on interviews with knowledgeable personnel, so long as those interviews are conducted in a timely manner and their contents disclosed in accordance with the agreed-to expert discovery schedule.  But Oracle does object to Dr. Leonard conducting an after-

- 1 -   REPLY RE ORACLE'S MOTION IN LIMINE #7 RE: GOOGLE'S DAMAGES EXPERT, DR. LEONARD

the-fact, private interview to find facts to shore up an opinion already the subject of a motion *in limine*, particularly where, as here, the information is then injected into a reply report, such that no party has an opportunity to respond.

A review of Dr. Leonard's February 8 report demonstrates that the information identified in Oracle's motion (at 3-4) is missing. Dr. Leonard only very briefly discussed the "Nature of Google's Accounting Practices," including costs and TAC, at paragraphs 24 and 25 of his report:[1]

> 24. The P&L statement for Android was compiled for the period from January 2008 through December 2015. The most recent Android P&L documents covering the period from 2011 to 2015 do not include Android Ads revenues, because, at some point during the relevant period, Google's Android business unit made the decision to include on the Android P&L only those revenues and costs earned from sales of hardware and Google Play applications and content, and to exclude advertising revenues and costs, which, as discussed above, are highly attenuated from Android in terms of a causal nexus. Nevertheless, Google maintains data regarding revenues and costs associated with advertising served on Android devices, and as described below, in my calculations I have included Andorid Ads revenues with the overall Android P&L model.
>
> 25. In addition, between the 2008-2010 P&Ls and the 2011-2015 P&L, the cost of sales categories were changed and instead organized according to respective business lines (i.e. Apps, Digital Content, and Hardware) as opposed to cost categories including TAC (when Google included Android Ads directly on the Android P&L in 2008 to 2010), CAC, Data Center, Network, SRE, and Other Cost of Sales.

ECF No. 1566-1, Ex. 4 (Leonard Op. Rpt.). Dr. Leonard's opinions regarding search TAC were set forth in paragraphs 32 and 33:

> 32. TAC stands for "traffic acquisition costs," and refers to the portion of ad revenue that Google pays to partners and websites. Google makes these payments under agreements with the partners and websites that allow or facilitate Google to reach users with advertisements. These payments are dependent on agreements between Google and third parties.
>
> 33. 

---
[1] Google also cites to ¶¶ 26-31 (Opp. at 2), but those paragraphs refer only to revenues, not TAC, expense accounting, or any of the new information regarding Google's accounting practices.

[REDACTED]

*Id.* Nowhere in these paragraphs (or anywhere else in his report) does Dr. Leonard disclose that "Google does not, in fact, include search ad TAC for Android in the line items on the Android P&L statement regarding digital content or app cost of sales" or that "search ad TAC for Android is included in the Google-wide Adwords TAC line." ECF No. 1619-5 (Leonard Reply Rpt.) ¶ 7. Further, while paragraph 32 indicates that Google pays TAC pursuant to agreements with third parties, Dr. Leonard does not disclose that "Google negotiates with each carrier or OEM separately on this issue" or that "there is no formula that governs [Google's] payment of search TAC on Android devices." *Id.* Nor did Dr. Leonard previously disclose that "the information contained in the 'Charts per Dkt 1436' document represents Google's gross revenue." *Id.* ¶ 8. This is all new information disclosed for the first time in Dr. Leonard's Reply to Prof. Kearl.

Google next argues that Dr. Leonard's late disclosure is somehow justified because, in Dr. Leonard's opinion, Mr. Malackowski misinterpreted how Google books its TAC. Opp. 2. But any uncertainty due to Google's inadequate recordkeeping should be resolved in Oracle's favor, not Google's. *See* 5-14 Nimmer on Copyrights § 14.03. It certainly doesn't justify allowing Dr. Leonard to rely on a late, private conversation with a fact witness regarding such highly contested issues or to provide such information for the first time in his Reply. Nor are the late disclosures justified by Dr. Leonard's vague answers at his deposition, as Google seems to suggest. *See* Opp. 3. If Dr. Leonard did not have adequate information to support a deduction for which Google bears the burden of proof at the time of his opening report, then Google must lose on that issue. Dr. Leonard cannot rehabilitate his opinion later through new evidence, such as through new interviews conducted well after the deadline for opening reports.

Google's argument that Dr. Leonard submitted his new evidence "in response" to Prof. Kearl's March 18 report (Opp. 4) is unavailing. Google knows it bears the burden of proof on its deductible expenses and was rightfully concerned that Dr. Leonard had not satisfied that burden in his February 8 report. But Dr. Leonard's attempt to inject new information into his Reply to support his original opinions violates the Court's scheduling order (ECF No. 1509), prejudices

- 3 -

REPLY RE ORACLE'S MOTION IN LIMINE #7 RE:
GOOGLE'S DAMAGES EXPERT, DR. LEONARD

Oracle (Mot. 5), and should be precluded under Fed. R. Civ. P. 37(c)(1) (Mot. 6). If such late disclosures were allowed, experts could always hold back evidence until it is too late for the opposing party to respond. *See* ECF No. 622 (Order) at 4.

Notably, Google does not suggest that it would be prejudiced if Dr. Leonard is precluded from relying on the late-disclosed information. Accordingly, there is nothing to weigh against the prejudice that Oracle would suffer if Dr. Leonard is allowed to rely on it. Mot. 5. That Google must present a fact witness to provide a foundation for Dr. Leonard's opinions (Opp. 4) does not open the door and allow him to rely on facts not disclosed in his February 8 report. Allowing experts to wait and rely on whatever evidence comes in at trial would promote unfettered sandbagging. *See* ECF No. 622 (Order) at 4. Dr. Leonard should be precluded from testifying about, or providing opinions based on, any "evidence" of Google's expense accounting that was not disclosed in his February 8 report.

## II.   DR. LEONARD'S BELATED SENSITIVITY TESTING SHOULD BE EXCLUDED

Google's opposition to Oracle's motion to exclude Dr. Leonard's late sensitivity analysis misses the point. Oracle's instant Motion does not seek to preclude Dr. Leonard from relying on the Kim econometric model (again, that is the subject of Oracle's Motion in Limine No. 4). Nor would Oracle have objected if Dr. Leonard had only challenged or critiqued Prof. Kearl's sensitivity analysis, which could have been permissible rebuttal. Rather, Oracle seeks to preclude Dr. Leonard from relying on his *own belated sensitivity analysis* set forth for the first time in his Reply. It is this point that Google essentially ignores.

Google argues that Oracle makes "vague, accusatory statements concerning the burden of proof on apportionment." Opp. 5. But this is not simply an accusation; it is an undebatable point of law. Ninth Circuit case law is clear: Section 504(b) of the Copyright Act requires that the infringer (*i.e.*, Google) bear the burden of proving apportionment. Mot. 4 (*citing Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711, 715 (9th Cir. 2004)). Dr. Leonard made it clear that he fully understood this burden in his February 8 report: "[O]nce the causal nexus is shown, the infringer *bears the burden of apportioning the profits* that were not the result of infringement." ECF No. 1566-1, Ex. 4 (Leonard Op. Rpt.) ¶ 11 (emphasis added).

One of the apportionment theories set forth in Dr. Leonard's February 8 report claims to apply the Kim econometric model to estimate the decrease in Android handset sales that would have occurred if there were fewer Android apps. *Id.* at ¶¶ 186-89. Accordingly, Dr. Leonard was required to present all of his analyses and evidence regarding application of the Kim model in that report so that Oracle would have a fair opportunity to fully respond. *See* ECF No. 622 at 4 (placing "a full up-front disclosure duty upon the party with the burden of proof on a given issue"). Dr. Leonard, however, failed to conduct a sensitivity analysis to ensure that his use of the Kim model was sound, as would typically be done by an econometrician. Mot. 2, 3. Subsequently, Prof. Kearl pointed out this flaw and provided a sensitivity analysis that adjusts for some, but not all, of the problems associated with Dr. Leonard's application of the Kim model. In response, Dr. Leonard first criticized Prof. Kearl's analysis. *See* ECF ECF No. 1619-5 (Leonard Reply Rpt.) ¶ 24-27. And that is not the subject of Oracle's instant Motion. *See* Mot. 6. What Dr. Leonard could not do was propose his own, new sensitivity analysis, which he nevertheless did. *Id*; ECF No. 1619-5 (Leonard Reply Rpt.) ¶ 28. That is *not* a "response;" it is analysis that should have been conducted and provided in his opening report.

It is too late for Dr. Leonard to provide in his Reply an entirely new analysis to support an issue on which Google undisputedly bears the burden of proof. If Dr. Leonard wanted to apply a sensitivity analysis to test his use of the Kim model, he needed to do so in his opening report. He should not be permitted to cure his failure at this late date, after Oracle's time to test and examine Dr. Leonard's analysis in discovery has long since passed.

## CONCLUSION

For the reasons stated above and in Oracle's Motion, Dr. Leonard should be precluded from testifying about or providing opinions based on previously undisclosed conversations with Mr. Gold or the sensitivity analysis set forth for the first time in his Reply Report.[2]

---

[2] Google apparently agrees that it is not a viable solution to conduct additional depositions or provide supplemental reports at this late date and does not suggest doing so.

| | | | |
|---|---|---|---|
| Dated: | April 18, 2016 | | Respectfully submitted, |
| | | | Orrick, Herrington & Sutcliffe LLP |
| | | By: | /s/ *Annette L. Hurst* |
| | | | Annette L. Hurst |
| | | | Counsel for ORACLE AMERICA, INC. |