IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., | No. C 10-03561 WHA |
| Plaintiff, | |
| v. | |
| GOOGLE INC., | **MODIFIED PROPOSED JURY INSTRUCTIONS ON FAIR USE** |
| Defendant. | |

Below please find a revised proposed instruction on fair use, modified after a review of counsel's comments. The Court thanks counsel for their input. Counsel will please meet and confer in person and try to agree on the below proposal or something close thereto, so as to minimize issues for appeal. Please submit your agreed-on version by **APRIL 28 AT NOON**. To the extent no agreement is reached, please state all objections to this proposal in briefs **NOT TO EXCEED TEN PAGES**. Each side may also reply to the objections in briefs also **NOT TO EXCEED TEN PAGES** by **MAY 2 AT NOON**.

Also, please meet and confer and agree on a paragraph to explain to the jury precisely what was (and was not) copyrightable and to explain what structure, sequence, and organization and declaring code mean, also due by **APRIL 28 AT NOON**.

\*           \*           \*

In this trial, all parties agree that the Android versions in question used aspects of Java 2 Standard Edition Version 1.4 and Java 2 Standard Edition Version 5.0, specifically using the declaring code and the structure, sequence, and organization of 37 Java API packages.

1   The pertinent Android versions were: 1.0, 1.1, Cupcake, Donut, Eclair, Froyo, Gingerbread,
2   Honeycomb, Ice Cream Sandwich, Jelly Bean, Kit-Kat, Lollipop, and Marshmallow. Even
3   though Google wrote (or legitimately acquired) its own implementing code for those 37 API
4   packages, all agree that Google's use of the declaring lines of code and the structure, sequence,
5   and organization of those 37 API packages constituted copyright infringement under the federal
6   Copyright Act of 1976 unless you find that Google has carried its burden as to the defense of
7   fair use. In other words, for purposes of this trial, all agree that Google used certain aspects of
8   copyrighted works, and the question remaining for you to decide is whether or not Google's use
9   was a fair use.

10       Now, I will explain what fair use means under the law.

11       One policy behind our copyright law, of course, is to protect the compositions of authors
12  from exploitation by others. When it applies, however, the right of fair use permits the use of
13  copyrighted works by others without the copyright owner's consent. The policy behind the
14  right of fair use is to encourage and allow the development of new ideas that build on earlier
15  ones, thus providing a counterbalance to the copyright policy to protect creative works. In
16  short, our copyright law seeks, on the one hand, to promote the progress of science and useful
17  arts by protecting artistic and scientific works while, on the other hand, to promote the progress
18  of science and useful arts by encouraging the development and evolution of new works building
19  on earlier ones. Since the doctrine of fair use is an equitable rule of reason, no generally
20  accepted definition is possible, and each case raising the question must be decided on its own
21  facts. And, in this dispute between Oracle and Google, that question falls to you for decision.

22       Under the Copyright Act of 1976, an author owns the exclusive right to use or to license
23  his or her writings or images or other copyrightable works with the important exception that
24  except anyone may make fair use of even a copyrighted work and may do so without anyone's
25  permission and without notice to anyone. Specifically, the Act states (and I will quote it
26  exactly):

> The fair use of a copyrighted work for purposes such as criticism,
> comment, news reporting, teaching (including multiple copies for
> classroom use), scholarship or research, is not an infringement of
> copyright. In determining whether the use made of a work in any

2

> particular case is a fair use the factors to be considered shall include —
>
> 1. The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> 2. The nature of the copyrighted work;
>
> 3. The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> 4. The effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all of the above factors.

I have just quoted for you the right of fair use exactly as enacted by Congress in 1976. In your deliberations, you must decide whether or not Google has met its burden in this trial to prove up that its copying was a fair use. Now I will further explain each of the four statutory factors.

The first statutory factor concerns the purpose and character of the accused use. This factor includes these issues: (1) whether and to what extent the accused use serves a commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which weighs in favor of fair use, and (2) whether and to what extent the accused work is "transformative," which supports fair use. Although the Act does not explicitly use the word "transformative," our Supreme Court has stated that the central purpose of the first statutory factor is to evaluate whether and to what extent the purpose and character of the accused work is transformative.

What does transformative mean? A use is transformative if it adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message. The critical question is whether the new work merely supersedes the objects of the original creation or instead adds something new. New works have been found transformative when they use copyrighted material for purposes distinct from the purpose of the original material. A use is considered transformative only where a defendant changes a plaintiff's

3

copyrighted work or uses a plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation. A work is not transformative where the user makes no alteration to the expressive content or message of the original work. The extent of transformation may vary from case to case. The greater the transformation, the more likely an accused use will be a fair use, and the less the transformation, the less likely an accused use will qualify as a fair use.

In evaluating the first statutory factor, the extent of the commercial nature of the accused use must be considered, as stated. In this case, all agree that Google's accused use was commercial in nature. Commercial use weighs against a finding of fair use, but even a commercial use may be found (or not found, as the case may be) to be sufficiently transformative that the first statutory factor, on balance, still cuts in favor of fair use. To put it differently, the more transformative an accused work, the more other factors, such as commercialism, will recede in importance. By contrast, the less transformative the accused work, the more other factors like commercialism will dominate.

Also relevant to the first statutory factor is the propriety of the accused infringer's conduct because fair use presupposes good faith and fair dealing. Where, for example, the intended purpose is to supplant the copyright holder's commercially valuable right of first publication, good faith is absent.

The second statutory factor is the nature of the copyrighted work. This factor recognizes that traditional literary works, such as fictional novels, are closer to the core of intended copyright protection than informational works, such as instruction manuals. Creative writing and expression lie at the very heart of copyright protection, so fair use is generally more difficult to establish for copying of traditional literary works than for copying of informational works or for using functional elements of a work such as computer software. The focus of this statutory factor is on how close the used material is to the core values of copyright protection. The less the used material implicates the core values of copyright protection, the more viable will be fair use and vice versa.

Computer programs and computer languages are not literary works; nevertheless they are protectable by copyright, as in this case. This is true not only for the exact line-by-line code but also for the structure, sequence, and organization of a program. In this case, it is undisputed that the declaring code and the structure, sequence, and organization of the 37 API packages at issue were sufficiently creative and original to qualify for copyright protection. The question for you, however, is whether the particular use made of them by Google was a fair use, and for that purpose you should consider the extent to which the used material were creative and original versus functional.

Even though a computer program performs functions and has functional elements, the structure, sequence, and organization of a computer program may be (or may not be) highly creative. When there are many possible ways to structure, sequence, and organize a program, the particular way chosen by a copyrighted program and even individual lines of declaring code may be (or may not be) highly creative. On the other hand, when the declaring code and the structure, sequence, and organization are dictated by functional considerations such as efficiency, compatibility, or industry standards, then less creativity is indicated and the core values of copyright protection are less implicated. When purely functional elements are embedded in a copyrighted work and it is necessary to copy associated creative elements in order to utilize those functional elements, then this circumstance also favors fair use.

In evaluating this, it may be useful for you to break down the 37 API packages into their component subroutines and subsubroutines and then identify the idea or core functional element of each. Google, of course, had the right to write its own original code to perform the various functions performed by the 37 API packages because no one can get a copyright on a general method of operation (other than to get a copyright on its specific implementation). Google, however, did not have the right to use the exact lines of declaring code and the overall structure, sequence, and organization of the 37 API packages, as copyrighted by Sun (and now owned by Oracle). This was true even though Google wrote (or had written for it) all of the implementing code for the 37 API packages. Because Google was free to use the Java programming language to write Android, you should consider the extent to which you find it was necessary for Google

5

to use any or all of the declaring code and structure, sequence, and organization of any of the 37 API packages to write in the Java language. Such a finding, to that extent only, would support fair use; to the extent you find it was not necessary, that finding would disfavor fair use. This consideration also bears on the third statutory factor, to which I will now turn.

The third statutory factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole, which concerns how much of the overall copyrighted work was used by the accused infringer. In addition, if the accused infringer used more than was reasonably necessary for the new work, then the excess use weighs against fair use. If, however, the accused infringer used only what was reasonably needed for its purpose, then this circumstance weighs in favor of fair use. The extent of permissible copying varies with the purpose and character of the use, which relates back to the first statutory factor.

In assessing this third statutory factor, both the quantity of the material used and the quality or importance of the material used should be considered. For purposes of this factor in our case, the "work as a whole" constitutes all of the compilable code associated with all of the 166 API packages (not just the 37) in the registered work, excluding the virtual machine.

The fourth and final statutory factor is the effect of the accused infringer's use on the potential market for or value of the copyrighted work. This factor militates against fair use if the accused use materially impairs the marketability or value of the copyrighted work. This is the single most important statutory factor, but it must be weighed with all other factors and is not necessarily dispositive. This factor takes into account whether the accused work is offered or used as a substitute for the original copyrighted work. This factor considers not only the extent of any market harm caused by the accused infringer's actions but also whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for the copyrighted work. Market harm to the value of the copyrighted work may be a matter of degree, and the importance of this factor will vary not only with the amount of harm shown, but also with the relative strength of the showing on the other factors.

In connection with the fourth statutory factor, the term "potential market for or value of" refers to the money value of the entire copyrighted work itself and licensing opportunities for the copyrighted work via derivative works. A derivative work is a work based upon one or more preexisting copyrighted works, such as a musical arrangement based on a book, or a dramatization based on a book, to name only two specifics, or any other form in which a work may be recast, transformed, or adapted. For example, a movie based on a book is a derivative work derived from the book, both protected by copyright, although the book owner's copyright interest extends only to that part of the movie using the original book. In this case, Oracle's copyright interest in Android extends only to the declaring code for the 37 API packages and their structure, sequence, and organization. For the fourth statutory factor, you should ultimately focus on whether, and if so, the extent to which the market for or value of works like that derivative use (or any other market for the copyrighted work or its derivatives) were prejudiced by the accused use in Android.

In evaluating the effect of an accused use on a potential market value, you should consider the market value of that work (or derivative work) *before* the accused use and *after* the accused use and compare the before and after to assess the approximate extent of any adverse impact. This comparison need not be done with arithmetical precision and, indeed, may be done on a qualitative and directional basis. In doing this, moreover, we ignore benefits from the use to the copyright owner outside the genre claimed to have been harmed. For example, an accused movie based on a book might actually increase sales of the book, but that benefit must be ignored in assessing the extent of prejudice to opportunities to license the book for a movie, for purposes of this statutory factor.

You have heard evidence of products, like Android, that include, in addition to the copyrighted matter at issue, numerous features and technology independent of the copyrighted matter. In making your evaluation under the fourth factor, you should assess the harm, if any, to the potential market for or value of the copyrighted work itself and to its licensing value for derivative works. The broader potential market for products that feature independent elements in addition to the copyrighted material and their successes and/or failures may be considered by

7

you only insofar as they shed light on the licensing or market value of the copyrighted work itself and its derivatives. For example, if an anthology of various California photographs wrongly included an image copyrighted by a particular photographer, the fourth statutory factor would weigh the harm, if any, to the market for the copyrighted image and the harm, if any, to the value of a potential license for that image for inclusion in a similar anthology. The fourth factor would not, however, give weight to the larger market for such anthologies except insofar as that larger market shed light on the more limited markets involving the copyrighted works. The success or failure of the larger anthology would not be the focus. The market for the specified copyrighted work and its derivatives would be the focus.

I have now completed my explanation of the four factors in the Act. You might ask, are we limited to these four factors? The Act states that the factors to be considered "include" the four statutory factors, but the Supreme Court has held that those four factors are not exclusive and you may consider any additional circumstances and evidence, pro or con, that, in your judgment, bear upon the ultimate purpose of the Copyright Act, including protection of authors and the right of fair use, namely, to promote the progress of science and useful arts.

It is up to you to decide whether all relevant factors, when considered fully and together, favor fair use or disfavor fair use. All of these factors must be explored, discussed, and evaluated by you. No single factor is dispositive. Your evaluation of all factors must be weighed together in light of the purpose of copyright, which as our Constitution states, is to promote the progress of science and useful arts. Some factors may weigh in favor of fair use and some against fair use, and you must decide, after giving the factors such weight as you find appropriate based on the evidence, whether or not, on balance, they predominate in favor of fair use.

Dated:   April 18, 2016.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8