ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>          Plaintiff,<br><br>     v.<br><br>GOOGLE INC.<br><br>          Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S SUMMARY MOTIONS IN LIMINE AS PER COURT ORDER ECF NO. 1488**<br><br>Hearing: April 27, 2016 at 8:00 a.m.<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GOOGLE INC.,<br><br>  Defendant. | Case No. 3:10-cv-03561 WHA<br><br>DEFENDANT GOOGLE INC.'S OPPOSITIONS TO ORACLE'S SUMMARY MOTIONS IN LIMINE AS PER COURT ORDER (ECF NO. 1488)<br><br>Dept.        Courtroom 8, 19th Fl.<br>Judge:       Hon. William Alsup |

DEFENDANT GOOGLE INC.'S OPPOSITION TO ORACLE'S
SUMMARY MOTIONS IN LIMINE AS PER COURT ORDER (ECF NO. 1488)
Case No. 3:10-cv-03561 WHA

1045830.04

# TABLE OF CONTENTS

Motion 1: Exclude evidence, reference, and comparison to total lines of code in
Android .................................................................................................................... 1

Motion 2: Exclude evidence of Sun/Oracle's ancient use of APIs, as per ECF No. 676 ............... 2

Motion 3: Exclude evidence that Sun/Oracle failed to develop its own Java
smartphone.............................................................................................................. 3

Motion 4: Exclude evidence and argument that copying was required to use Java
language................................................................................................................... 4

Motion 5: Preclude Google from claiming that it authored Android's non-infringing
code........................................................................................................................ 5

Motion 6: Exclude evidence suggesting that the Java APIs are not creative based on
constraints faced by Google, not Sun/Oracle .......................................................... 6

Motion 7: Exclude testimony that Java is a "standard" or "expected" in the industry ................. 7

Motion 8: Exclude testimony from Mr. Schwartz regarding existence of legal claim
by Sun .................................................................................................................... 8

Motion 9: Exclude November 5, 2007 Blog Post By Mr. Schwartz, TX 2352 ............................. 9

**Motion 1: Exclude evidence, reference, and comparison to total lines of code in Android**

The third fair-use factor, "the amount and substantiality of the portion used in *relation* to the *copyrighted work* as a whole," 17 U.S.C. § 107(3) (emphasis added), is, as the statute says, "viewed in the context of the copyrighted work, not the infringing work." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1375 (2014). "Indeed, the statutory language makes clear that 'a taking may not be excused merely because it is insubstantial with respect to the *infringing* work.'" *Id.* (quoting *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985)). As Judge Learned Hand famously explained: "[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Harper & Row*, 471 U.S. at 565 (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)). Google conceded as much: "Analysis of this [third] factor is viewed in the context of the copyrighted work as a whole, *not the new work*." ECF No. 1528 (Google's Resp. to Order re: Jury Instrs.) (emphasis altered); *cf.* Astrachan 3rd Rpt. ¶ 48 ("the relevant comparison is with the *copyrighted work*") (emphasis added).

Google should be precluded from introducing evidence and argument during Phase I that what it copied is insubstantial compared to *Android's* entire code base. *See* 2/24/2016 Hr. 13:8-12 (Google mini-opening: "[The copied APIs] were integrated with 168 Android libraries … they were placed in this stack to create the first ever smartphone platform that was open and free for people to use. 15 million lines of code, that's up and down the stack"); Astrachan 1st Rpt. ¶ 224 (the "declarations amount to … only 2.6% of the [Google] implementations at issue, 0.4% of the overall Android (Gingerbread) Runtime Core Libraries, and only 0.04% of the size of the entire Android source code").

The law on the third factor does not permit this line of argument. Evidence regarding the number of lines of code in Android or comparing the number of copied lines to the lines of code in Android or other Google products has no probative value during Phase I, and presents a substantial risk of misleading and confusing the jury and should be excluded under Rules 402 and 403 of the Federal Rules of Evidence. Even mentioning 15 million lines of Android code invites the jury to do exactly what the Federal Circuit and Google say is irrelevant and improper: measure Google's copying against non-infringing parts of Android.

**Opposition to Oracle Summary Motion 1**

Evidence that provides context for how the declarations/SSO of the 37 Java SE APIs ("declarations/SSO") are used in Android, including the overall number of lines of code in Android, is relevant to the fair use analysis in several respects. *First*, it is relevant to the first fair use factor, wherein courts often analyze how the allegedly infringing material was used in the greater context of defendant's work, including what was added to the allegedly infringing material. *See, e.g., Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) ("[a] use is 'transformative' if it 'adds something new, with a further purpose or different character…'"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 611 (2d Cir. 2006) (finding use of Grateful Dead posters transformative where defendant's book "combin[ed] them with a prominent timeline, textual material, and original graphical artwork, to create a collage of text and images on each page of the book."). This inquiry can include "[t]he extent to which unlicensed material is used in the challenged work." *See, e.g., id.* at 611 (finding it "relevant in the context of the *first-factor* fair use analysis" that "the images account for less than one-fifth of one percent of the book"). *Second*, this evidence is relevant to rebut any claim under the fourth fair use factor that Android's use of the declarations/SSO, as opposed to Android as a whole, caused market harm to Java SE 1.4 and 5.0. *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) ("the relevant market effect is that which stems from defendant's use of plaintiff's 'expression,' *not that which stems from defendant's work as a whole*.") (emphasis added). *Third*, Oracle has put such evidence at issue by claiming the declarations/SSO are central to the entire Android platform and more stable than other parts of the Android platform. *See* Kemerer 1/8/16 Rpt. ¶¶ 95-157. *Fourth,* this evidence is relevant to whether use of the declarations/SSO was "reasonable [] under the circumstances." Ninth Circuit Model Civil Jury Instruction 17.18 (2007). *Finally*, Oracle's motion invites this Court to do the very thing the Ninth Circuit has warned against: create bright-line rules and consider the enumerated fair use factors exclusive and exhaustive. *See, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1399 (9th Cir. 1997). Because this evidence is relevant to the fair use analysis for all of the foregoing (and other) reasons, the jury should be permitted to consider it.

**Motion 2: Exclude evidence of Sun/Oracle's ancient use of APIs, as per ECF No. 676**

The Court held before the first trial that Google could not introduce evidence and testimony of Sun/Oracle's historic use of APIs before 2006 because such use had no probative value. ECF No. 676 at 7-8.  Nevertheless, Google again proffers nearly identical testimony through the opinions of Google experts Drs. Astrachan and Cattell.  The Court's earlier order should be enforced.  This evidence should be excluded because it is irrelevant and of no assistance to the jury.

These old "APIs" that Drs. Astrachan and Cattell discuss concern Oracle's use, ***decades ago, in products completely unrelated to Java SE***, for example, (1) 22 one-word spreadsheet commands developed in 1979, (2) 13 one- and two-word commands from academic papers published in 1974 and 1976, (3) the Linux kernel system calls (which Android also uses), and (4) SQL (the structured query *language*).  Astrachan 1st Rpt. ¶¶ 281-305; Cattell Rpt. ¶ 50.  The ancient use of these commands is unrelated to Google's copying here of "the elaborately organized taxonomy of all the names of methods, classes, interfaces, and packages—the overall system of organized names—covering 37 packages, with over six hundred classes, with over six thousand methods."  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1351 (Fed. Cir. 2014).  This Court has already determined that Sun/Oracle is the author and owner of the 37 Java API packages at issue.  ECF No. 1165.  As a result, this evidence would serve no purpose but to confuse or inflame the jury.

Moreover, even if analogy were somehow appropriate, which it is not, neither Dr. Astrachan nor Dr. Cattell has a basis to analogize Oracle's use of these old "APIs" to Google's copying.  They do not opine whether (1) the cited "APIs" had been gifted to the public domain or (2) Oracle was licensed to use the APIs.  SQL, for example, was adopted as an ISO standard, meaning it may be available for use on more permissive terms than a proprietary platform, like Java SE.[1]  And, permitting their admission would necessitate Oracle's response to Google's charges that Oracle infringed those APIs, wasting time and distracting the jury with "a series of mini-trials" that have no value "for resolving the issues in this case."  *See Holland v. City of S.F.*, No. C10-2603 TEH, 2013 WL 1808866, at *1 (N.D. Cal. Apr. 29, 2013).

---

[1] *See* http://www.iso.org/iso/catalogue_detail.htm?csnumber=45498.

**Opposition to Oracle Summary Motion 2**

Now that the issues for phase 1 of this trial have been narrowed to fair use, Oracle cannot point to any unfair prejudice it would suffer from the introduction of its own admissions concerning implementation of APIs prior to 2006. This motion reflects one of Oracle's numerous improper attempts to use motions *in limine* to rewrite (or erase) history and present the jury with a one-sided story that is all Oracle's. For example, Oracle intends to tell the jury:

> *"Google chose to engage in a course of conduct that is in clear violation of the law."*
>
> *"Google knew that those APIs were protected property under the copyright laws of the United States. And they knew that they needed written permission in the form of a license."*
>
> Google *"knew the entire time that the APIs were protected and copyrighted and that copying without a license was not right."*

Feb. 24, 2016 Tr. 25:6-9; 29:13-16; 30:5-7. Yet, Oracle seeks to exclude every shred of evidence showing that it was not at all "clear" that Google needed permission to use the declarations/SSO, and that, in fact, reimplementing APIs and/or reusing method names was consistent with ***long-standing*** industry custom and was common practice for industry participants—including Sun/Oracle. In particular, pre-2006 evidence of industry actions regarding APIs, including those of Sun/Oracle, provides additional data points—contemporaneous with the development of Java and the copyrighted works—that the jury should consider in deciding whether Google's actions represented a radical and bad faith departure from industry custom or whether they were "reasonable [] under the circumstances." Ninth Circuit Model Civil Jury Instruction 17.18. Because the pre-2006 evidence makes a fact of consequence in this action more or less probable, it is relevant and should be admitted. Fed. R. Evid. 401. Indeed, Oracle has conceded the relevance of such evidence by offering its own extensive expert testimony, ***including pre-2006 evidence***, on past industry and Sun/Oracle practices regarding APIs. *See, e.g.*, Kemerer 2/8/16 Rpt. ¶¶ 145-170 (citing evidence throughout 1980s and 1990s), 201 (citing Sun actions in 2003). Oracle cannot have it both ways. If Oracle introduces purported evidence and argument that Google "chose" to act "in clear violation of the law," it would be manifestly unfair to bar Google from introducing evidence of Sun/Oracle's past actions that directly contradict that position.

1045830.04

**Motion 3: Exclude evidence that Sun/Oracle failed to develop its own Java smartphone**

Evidence and argument that Sun or Oracle failed to develop a smartphone is legally irrelevant to fair use.[1]  Factor four considers not just the effect on the market for the copyrighted work, but "the effect of the use upon the *potential market for* … the copyrighted work."  17 U.S.C. § 107(4).[2]  That the copyright holder does not compete selling its own product, or has even decided not to compete in the market, is irrelevant because factor four considers (1) harm in *potential* markets, (2) harm to *licensing* of the copyrighted work and its derivatives, and (3) interference with the copyright owner's decision to compete or not compete in the market.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994) (factor four considers "[t]he market for potential derivative[s]," including "those that creators of original works would in general develop or *license others to develop*"); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1180-81 (9th Cir. 2012) (finding "little doubt" of market harm even where plaintiff disavowed and "did not intend to sell" the copyrighted works because a "'potential market' … includes harm to derivative works."); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001) ("[L]ack of harm to an established market cannot deprive the copyright holder of the right to develop alternative markets for the works."); *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000) (rejecting that "author who had disavowed any intention to publish his work during his lifetime" could not prevail under factor four "first, because the relevant consideration was the potential market and, second, because he has the right to change his mind"); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1113 (9th Cir. 1998) ("Only [copyright owner] has the right to enter that market; whether it chooses to do so is entirely its business").

Factor four recognizes Oracle's right to protect its *licensing* business and the market for derivatives of its copyrighted works.  The jury is likely to be confused and misled by evidence or argument that Sun or Oracle did not sell its own smartphone.

---

[1] *See* Feb. 24, 2016 Tr. 10:5-11:6 (Google mini-opening:  "Sun itself tried to adapt the Java APIs for use in a smartphone, but failed."), Trial Tr. 272:4-5 (Google Opening) ("So Sun was never able to build a smart phone platform using Java."); Tr. 2521:23-25 (Google Closing) ("We'll talk in some detail about Sun's efforts to build a smart phone stack.  They were a failure."); Astrachan 1st Rpt. ¶ 152 ("Sun never brought a full stack mobile operating platform to market").

[2] Emphasis added unless otherwise indicated.

ORACLE'S SUMMARY MOTIONS IN LIMINE AS
PER COURT ORDER (ECF NO. 1488)

**Opposition to Oracle Summary Motion 3**

*First*, Oracle's motion to exclude evidence that Sun/Oracle failed to develop a Java SE smartphone ignores that Sun/Oracle's failures are highly probative of Android's transformative use of the declarations/SSO. Oracle has argued throughout this case that "[a]s the mobile industry took off, Sun was poised to take off with it." Jaffe 2/8/16 Rpt. ¶ 19. But this bit of historical fiction assumes that Sun was capable of taking off with the mobile industry. It was not. Whereas Sun/Oracle could not adapt the memory and resource intensive Java SE APIs to the demanding requirements of a smartphone platform, Android did—by transforming the declarations/SSO of a limited number of the Java SE APIs for use in the new and different context of a platform dedicated to handheld mobile computing. Tellingly, although Google made clear that Sun/Oracle's failures are evidence of Android's transformativeness, *see, e.g.*, Astrachan 1/8/16 Rpt. ¶ 152, Oracle's motion does not even address the relevance of this evidence to the first fair use factor.

*Second*, evidence of Sun/Oracle's capability to successfully use the Java SE APIs in the smartphone market is relevant under the fourth fair use factor, which evaluates "the effect of the use upon the potential market for … the copyrighted work." 17 U.S.C. § 107(4). Under Ninth Circuit precedent, the only relevant potential markets are "traditional, reasonable, or likely to be developed markets" for the copyrighted work. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013); *see also Wright v. Warner Books, Inc.*, 953 F.2d 731, 739 (2d Cir. 1991) (rejecting plaintiff's claim of a potential market to license use of a letter collection where plaintiff presented no evidence the project could actually go forward). Here, Sun/Oracle's failure to develop a successful smartphone using Java SE is probative evidence that the smartphone market was not a realistic potential market for Java SE. Indeed, Oracle has conceded the relevance of this evidence by pointing to the (ultimately failed) SavaJe phone in support of its market harm theory. Jaffe 2/8/16 Rpt. ¶ 334. This evidence is highly relevant, and neither prejudicial nor confusing. It should be admitted.

1045830.04

**Motion 4: Exclude evidence and argument that copying was required to use Java language**

The Federal Circuit found it "undisputed that … Google did not need to copy the structure, sequence, and organization of the Java API packages to write programs in the Java language." *Oracle Am.*, 750 F.3d at 1365.  "[N]othing in the rules of the Java language … required that Google replicate the same groupings."  *Id.* at 1361 n.7 (quoting ECF No. 1202 at 37); *accord id.* at 1361 ("[A]s the [district] court acknowledged, nothing prevented Google from writing its own declaring code, along with its own implementing code, to achieve the same result."); *id.* at 1368 ("[T]he declaring code could have been written and organized in any number of ways and still have achieved the same functions.").

Google should be precluded from offering evidence or argument, as it has indicated it intends to do, to contradict the Federal Circuit's decision and should not be permitted to argue that using the Java programming language requires using the Java API packages.  *See, e.g.*, Feb. 24, 2016 Tr. 38:17-18 (tutorial) ("Now, necessary for the use of languages like Java are something called APIs."); *id.* at 56:5-11 ("But the bottom line is Sun/Oracle teaches the world to use the free Java language and teaches them that to use it, you need to use these labels [APIs], this grammar approach, which is how we named these particular API labels for Android, because they are part and parcel and needed to use the Java language in this way …."); *id.* 15:8-12 ("The Java APIs are used with the language.  You can't do anything much useful without using the APIs. That's the whole point of using the Java programming language."); Astrachan Rpt. ¶¶ 61-63, 92, 162, 221, 237-39, 249 (opining that using Java language requires the 37 APIs); Cattell Rpt. ¶¶ 37-39.

Google cannot ignore what it lost on appeal.  Given the prior rulings, testimony or argument that Google was required to use the Java APIs as part of the language is irrelevant and should be excluded under Rules 402 and 403 of the Federal Rules of Evidence.  It should also be excluded under Federal Rules of Evidence 403 because it would be highly prejudicial to allow Google to submit evidence and argue that the Java language forced it to copy the 37 Java API packages when the Federal Circuit expressly held to the contrary.

**Opposition to Oracle Summary Motion 4**

Oracle argues that Google should be prevented from offering "testimony or argument that Google was required to use the Java APIs as part of the language." Mot. 4 at 22-24. While Oracle cites to the Federal Circuit opinion ("Opinion"), *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014), in support of its motion, in fact the Federal Circuit's findings directly contradict the relief sought here. ***First***, even the Opinion recognized that certain APIs in fact are necessary for use of the Java language. Those core API packages were the subject of testimony during the first trial and Oracle's own witnesses admitted that there was no meaningful way to use the Java language without use of these core API packages. *See, e.g.,* Trial Tr. 1274:16-24; 684:16-685:2, 679:12-21. Indeed, Oracle quotes the Opinion, but omits with ellipses, the Federal Circuit's acknowledgement that core packages in fact are necessary for use of the language. Compare Oracle Mot. 4 at 2-4 with Opinion at 1365 ("it is undisputed that—**other than perhaps as to the three core packages**—Google did not need to copy the structure, sequence, and organization of the Java API packages to write programs in the Java language.") (emphasis added). ***Second***, as for the other APIs, Oracle's motion is nothing but an alternatively phrased version of its motion (ECF No. 1553-4) challenging the testimony of Dr. Astrachan concerning evidence of interoperability and compatibility—*i.e.*, evidence of the reason that use of the declarations/SSO was necessary along with the language. As Google explains more fully in its opposition to that motion (which it incorporates here as well), the Federal Circuit "expressly noted" that "Google's competitive desire to achieve commercial 'interoperability'. . . may be relevant to a fair use analysis." Opinion at 1376-77. The Federal Circuit acknowledged that jurors may find commercial interoperability to be "relevant to Google's fair use defense under the second and third factors of the inquiry," *id.*, which is precisely what Oracle moves to exclude here. Furthermore, contrary to Oracle's suggestion, Google's fair use arguments do not rest on the idea that the Java programming language "requires" all of the APIs. Rather, as the Federal Circuit recognized, Google's argument relates to "the fact that software developers were already trained and experienced in using the Java API packages at issue." Opinion at 1371.

4

DEFENDANT GOOGLE INC.'S OPPOSITION TO ORACLE'S
SUMMARY MOTIONS IN LIMINE AS PER COURT ORDER (ECF NO. 1488)
Case No. 3:10-cv-03561 WHA

**Motion 5: Preclude Google from claiming that it authored Android's non-infringing code**

Google is fond of saying that it wrote all 15 million lines of code in Android except for the 13,000 lines of code it copied from the Java platform.  For example, during its mini-opening on February 24, 2016, Google claimed it "develop[ed] alternative versions of Java using the same API declarations and *writing [its] own implementing code*," which Google quantified as "15 million lines of code, that's up and down the stack."  Feb. 24, 2016 Tr. 13:6-12, 16:9-12; *accord id.* at 17:19-20 ("all of the source code, the implementing code was *unique* to Android").  Google's technical expert represented the same:  "Google once again took the smallest portion of the material … while writing its own implementing code."  Astrachan 1st Rpt. ¶ 19.

But Google did not write 15 million lines of implementing code.  It is undisputed, as Google's Android engineer testified in the first trial, that Android obtained much of its code from third parties and did not write it all itself.  *See, e.g.*, Tr. 1785:16-1786:6 (Bornstein, Tech Lead for Android) ("One of the bigger sources of code that we used was a project called Apache Harmony ....  Another source was actually a project called Bouncy Castle ….  There are a few other Open Source libraries that we used."); *id.* 1818:18-22 (Bornstein) ("[W]e did also acquire … source code from other preexisting packages, you know, from other preexisting libraries and the like ….").  In short, even the Android engineers concede that Google did not write all of the implementing code in Android.

Under Federal Rules of Evidence 402 and 403, Google should be precluded from claiming that it authored all of the code or even all of the implementing code in Android.  Google must prove what portion of the Android code it wrote itself before making any claims to have written the code in Android.  Blanket statements, that Google wrote all the code or all of the implementing code for Android when in fact it did not, will mislead the jury.  It is also prejudicial to Oracle for Google to claim that it wrote all the code or implementing code—when it did not—in order to suggest that it somehow did not copy the Java platform or infringe Oracle's copyrights in the Java platform.

**Opposition to Oracle Summary Motion 5**

*First*, as amply demonstrated by the exemplary testimony cited by Oracle, Google has never claimed that it authored all 15 million lines of code in the Android platform and Oracle cannot point to any testimony to the contrary. Oracle's purported quote of what Google "claimed" during its mini-opening simply misrepresents Google counsel's statements by juxtaposing two statements that were made pages apart in the record. Indeed, all of the testimony Oracle cited in its motion for the proposition that Google adapted open source libraries for some portion of Android implementing code was elicited by ***Google itself*** at trial on direct examination of Google engineer Dan Bornstein.

*Second*, and as explained by Mr. Bornstein in that testimony, in addition to writing much of the Android implementing code "from scratch," Google adapted source code obtained from open source projects like Apache Harmony for use in the context of Android's handheld mobile computing environment. Trial Tr. 1797:12-1798:16. Adapting this code for the Android code base required "making edits to [the open source files] to make them more appropriate to use in Android," and then "taking it, [and] integrating it into the code base." *Id.* at 1797:12-24. As the lead engineer for the team developing the source code implementations for Android's API packages, Mr. Bornstein testified that this project was "a lot of hard work" that went on for "years," from "2005 through 2007. And another very intense year after that before the first device was launched." *Id.* at 1798:11-16. Contrary to Oracle's suggestions, Google's development of the source code implementations was not a simple cut and paste exercise.

*Third*, the fact that Google used only the declarations/SSO of the 37 Java SE APIs and ***not Oracle's implementing code*** is relevant to show that Google's use was "reasonable [] under the circumstances" in light of the fact that reimplementation of APIs was a common and accepted practice in the computing industry. Ninth Circuit Model Civil Jury Instruction 17.18; *see also Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). Moreover, as further described in Google's Opp. to MIL No. 3 to exclude testimony of Owen Astrachan (incorporated herein), evidence of Google's customized implementation of the 37 Java SE APIs in a mobile environment is also relevant to show transformation.

**Motion 6: Exclude evidence suggesting that the Java APIs are not creative based on constraints faced by Google, not Sun/Oracle**

Factor two examines "the nature of the copyrighted work," i.e., Oracle's work.  17 U.S.C. § 107(2).  "This factor turns on whether the work is informational or creative," with "[c]reative expression fall[ing] within the core of the copyright's protective purposes."  *Oracle Am.,* 750 F.3d at 1375.  The Federal Circuit found it "undisputed … that the declaring code and SSO [structure, sequence, and organization] of the [Java] API packages are both creative and original," in part because "Oracle had unlimited options as to the selection and arrangement" of what Google copied.  *Id.* at 1361, 1365; *supra* at 3 (Google not required to copy to use Java language).

In the first trial and before the Federal Circuit, Google contended that the declaring code and structure, sequence, and organization of the Java API packages were not copyrightable because there were technical and commercial constraints that required Google to copy.  Google contends that if it had to copy the declaring code to use Java, the declaring code could not be original expression.  On remand, Google again advances the rejected argument that it was forced it copy:

- "When Google chose the Java programming language for Android, certain things naturally flowed from that decision …. [T]o the extent Google implemented functionality that was the same functionality already used by Java programmers, programmers would have expected Android to use the same method declarations," Astrachan 1st Rpt. ¶ 162;

- "In my opinion, had Google implemented none of the method declarations for the 37 API packages in Android, programmers would not have even recognized the platform as implementing the Java programming language…. [H]ad Google implemented different method declarations for the 37 API packages, programmers who had grown accustomed to programming in the Java language would have found it cumbersome to use the Java language when programming for the Android platform," *id.* ¶ 171; and

- "If Android required the use of different APIs to allow programmers to invoke the same functionality that is invoked by the Java APIs, that would be contrary to my expectations as a programmer writing in the Java programming language, and the expectations and demands of the programming community," Cattell 1st Rpt. ¶ 29.

The Federal Circuit rejected these arguments as wrong and irrelevant:  Java SE is highly creative; its authors had "unlimited" options available when they authored Java SE.  *Google's dsire* to capitalize on Java's popularity by using Java in Android has nothing to do with the creative nature of *Oracle's work*.  Google should not be permitted to contend or offer testimony, opinion, and evidence suggesting that constraints that Google claims it confronted when it decided to use Java in Android somehow diminishes the creative expression in the Java API packages.

**Opposition to Oracle Summary Motion 6**

Oracle's summary motion *in limine* 6 appears to be an attempt to constrain Google from offering any evidence or testimony that might favor fair use under the second factor of the fair use test. The theory of this motion appears to be that, because the declarations/SSO are sufficiently creative to pass the low bar of originality for copyrightability, no evidence may be submitted to the jury on the question of whether the work is more functional than creative for purposes of the second fair use factor. As support for its motion, Oracle cites to the Federal Circuit's statements that there was no dispute that the declarations/SSO were sufficiently creative to pass the minimum threshold to qualify for copyright protection under Section 102(a). *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1356 (Fed. Cir. 2014) (discussing evidence of originality in trial and briefing, and noting that "the parties agree that Oracle's API packages meet the originality requirement under Section 102(a)"). However, that bar of creativity and originality is "extremely low; even a slight amount will suffice." *Feist Publications Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). For a work to be original so as to qualify for copyright protection, it only must be "independently created by the author (as opposed to copied from other works), and ... [possess] at least some minimal degree of creativity." *Id.* But the evidence that Oracle seeks to exclude is expert testimony explaining why the declarations/SSO at issue are highly functional. *See* Mot. 6 at 15-22 (citing Astrachan and Cattell expert reports concerning the functional importance of the declarations/SSO). That evidence is highly relevant to the second factor of fair use—*i.e.*, whether the nature of the copyrighted work is more functional than creative in nature—and consistent with Ninth Circuit authority holding that "computer programs are, in essence, utilitarian articles." *See, e.g., Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), *as amended* (Jan. 6, 1993). Oracle cites no law supporting the conclusion that passing the threshold test for copyrightability means that the second factor of fair use is conclusively determined in favor of the copyrightholder; indeed to so hold would effectively eliminate this factor from consideration in the case of any copyrighted work. *See Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. 2007) ("Creativity for the purposes of fair use is harder to establish than threshold copyrightability"). Thus, Oracle's motion should be denied.

6

DEFENDANT GOOGLE INC.'S OPPOSITION TO ORACLE'S
SUMMARY MOTIONS IN LIMINE AS PER COURT ORDER (ECF NO. 1488)
Case No. 3:10-cv-03561 WHA

1045830.04

**Motion 7: Exclude testimony that Java is a "standard" or "expected" in the industry**

Oracle moves under Federal Rules of Evidence 402 and 403 to preclude reference that use of Java—either the language or the Java SE platform—is industry "standard" or is required to meet industry or developer "expectations" of "interoperability."  Industry standards, which permit interoperability with basic infrastructure, e.g., the cellular network, WiFi, and power outlets, are not at issue in this case.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1208 (Fed. Cir. 2014)) (WiFi and power outlets); *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1030-31 (9th Cir. 2015) (WiFi); *see* Astrachan 2d Dep. 54:25-55:4 (WiFi).

No industry standard requires use of Java SE in a smartphone.  *See* Astrachan 2d Dep. 60:14-17 ("I have not identified standard setting organizations"); *id.* 59:16-60:15 (Java SE is not required by any standard set by major organizations IEEE, ACM, ITU, or IETF.  Indeed, iPhones comply with many of the same standards as Android phones, but iOS does not rely on Java SE (nor is iOS written in the Java language).  The platforms are "interoperable" to the extent their devices connect to 3G/4G, WiFi, and Bluetooth or they can be plugged into the same USB port on a PC, charged from the same household power outlet, or play back the same MP3 file.  Yet the phones are *not* interoperable at the application level—an app written for iPhone will not run on the Android platform, just like an app for Android will not run on Java SE.  Yet, again and again, Google references "expectations," "standardization," and "compatibility."  Astrachan 1st Rpt. ¶ 88 (Android used the Java SE APIs for "standardization and compatibility"); *id.* ¶ 171 (using the APIs "was reasonable for … basic *compatibility* with the *conventions*  … and *expectations* of programmers for a mobile platform."); 2/24/2016 Hr. Tr. 80:17-18 ("the industry, that custom and public policy at the time defined the use as reasonable").

Smartphones do not need Java SE to meet industry standards, and "Google designed Android so that it would not be compatible with the Java platform."  *Oracle Am., Inc*, 750 F.3d at 1371.  Testimony regarding industry standard and developer expectations should be excluded because it will mislead the jury to believe use of Java SE is necessary for compatibility with basic infrastructure or that Android and Java SE are compatible when they are not or that Google's unlicensed copying from Java SE is somehow justified.

**Opposition to Oracle Summary Motion 7**

*First*, as demonstrated by the exemplary testimony cited in Oracle's motion, Google has never claimed that Java SE is "necessary for compatibility with basic infrastructure" or "an industry standard;" nor would it, since Google has likewise never claimed that Android is an implementation of Java SE. Rather, Google contends that it was fair to reimplement the declarations/SSO of the 37 Java SE APIs to satisfy developer expectations *regarding the Java programming language*. Indeed, the Federal Circuit recognized that Google's argument relates not to compatibility with basic infrastructure (or the Java platform), but to "the fact that software developers were already trained and experienced in using the Java API packages at issue." *Oracle Am., Inc. v. Google Inc.*, 750 F. 3d 1339, 1371 (Fed. Cir. 2014). To that end, the Federal Circuit quoted this Court's finding that as to the "37 Java API packages at issue, 'Google believed Java application programmers would want to find the same 37 sets of functionalities in the new Android system callable by the same names as used in Java.'" *Id.* at 1350. In fact, Google's argument is clearly demonstrated in the very testimony Oracle sought to exclude in its motion, Mot. 7 at 20-21, the key aspect of which was removed by Oracle's ellipses: that use of the APIs "was reasonable for … basic compatibility *with the conventions of the Java programming language* and expectations of programmers for a mobile platform." Astrachan 1/8/16 Rpt. ¶ 171.

*Second*, the premise for excluding all of this highly relevant evidence is that some form of the words "industry," "standard," "expectation," or "compatible" may arise in the context of "[i]ndustry standards[] which permit interoperability with basic infrastructure," which Oracle concedes "are not at issue in this case." Given the conceded irrelevance of this niche area of law to this case, it is highly unlikely that the jury—if even aware of such infrastructure issues—would import these concepts into the case. Further, in light of the remote risk of juror confusion, Oracle also fails to explain why the appropriate remedy for this hypothetical problem is to exclude large swaths of relevant fair use evidence, as opposed to Oracle clarifying this issue, if needed, by eliciting the brief testimony identified in Oracle's motion from Dr. Astrachan that "Java SE is not required by any standard set by major organizations IEEE, ACM, ITU, or IETF." Mot. 7 at 10-11. Because this motion is premised on a dubious hypothetical problem, it should be denied.

1    **Motion 8: Exclude testimony from Mr. Schwartz regarding existence of legal claim by Sun**

2         This Court should exclude under Rules 402, 403, 701, and 702 evidence, testimony, refer-

3    ence to, or argument based on (to use this Court's language) "spring gun" testimony, Tr. 2815:14-

4    15, from former Sun CEO Jonathan Schwartz, regarding the strength or existence of a legal claim

5    by Sun (now Oracle) against Google.  *See* Tr. 2002:5-7 (Schwartz testimony).

6         During the copyright phase of the first trial, Google asked Mr. Schwartz:  "Q. [A]s CEO

7    of Sun, did you make a decision not to pursue litigation against Google over Android?" and Mr.

8    Schwartz responded:  "A. Yes. *We didn't feel we had any grounds*."  *Id.* 2002:5-7 (emphasis add-

9    ed).  The Court described this testimony as "a completely volunteered statement that was not re-

10   sponsive to the question," that "implicated so much attorney-client material," that Google was

11   ordered not to reference the testimony.  Tr. 2816:5-21, 2818:14-15.  The Court explained that it

12   "believed that [the statement] should have never come in in the presence of the jury" and "would

13   have excluded that sentence in a heartbeat."  Tr. 2817:25-2818:3; Tr. 3167: 2-4 (The Court: "the

14   jury may remember it – it was dramatic testimony – and hold that against plaintiff.").  Moreover,

15   Mr. Schwartz as a *former* employee *cannot* decide whether to waive the corporation's privilege,

16   which is exclusively *Oracle's*.  *See United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996)

17   (corporation's privilege not waivable by former employee).

18        Finally, testimony from non-lawyers such as Mr. Schwartz about whether or not Sun had

19   a legal claim is irrelevant, prejudicial, and cannot possibly assist the jury, and thus should be ex-

20   cluded.  *First*, Mr. Schwartz was wrong.  The Federal Circuit has already held that Oracle has a

21   claim because the Java API packages are copyright-protected and Google infringed (subject to

22   fair use).  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014).  *Second*, Mr. Schwartz

23   acknowledged during his testimony that he is not a lawyer and not qualified to opine on legal

24   matters.  Tr. 2014:10-11 ("I don't think I'm qualified to speak as a lawyer.  I'm qualified to speak

25   as a leader of the business.").  *Third*, nor is Mr. Schwartz permitted to "give an opinion as to [his]

26   legal conclusion."  *See Actuate Corp. v. Aon Corp.*, No. C 10–05750 WHA, 2012 WL 2285187,

27   at *1 (N.D. Cal. June 18, 2012).  Mr. Schwartz's spring gun testimony should be excluded.

28

**Opposition to Oracle Summary Motion 8**

Former Sun CEO Jonathan Schwartz's statement that "[w]e didn't feel we had any grounds" to sue Google for use of the declarations/SSO is highly probative of fair use and reflects neither privileged communications nor improper legal opinion. It should be admitted.

*First*, this evidence is highly probative of fair use in phase 1. "[F]air use is appropriate where a 'reasonable copyright owner' would have consented to the use, i.e., where the 'custom or public policy' *at the time* would have defined the use as reasonable." *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). Mr. Schwartz's statement is prime evidence that the copyright owner, Sun, believed at that time that Google's use was reasonable and that Sun supported the use. The statement is also relevant to phase 2 *at least* because Oracle insists that willfulness is still an issue. Further, this statement is relevant to rebut Oracle's numerous intended assertions, further detailed in Google's opposition to Oracle's summary MIL 2, that Google "knew the entire time that the APIs were protected and copyrighted and that copying without a license was not right." *See, e.g.,* Feb. 24, 2016 Tr. 30:5-7. Although (as detailed below) Google disagrees that Mr. Schwartz's statement reflects privileged communications, even if it did, Oracle should not be allowed to open the door by asserting what Google and the industry "knew" was a permissible use under the law, and then claim directly contradictory statements made by its own CEO are protected by privilege. *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 241 (N.D. Cal. 2015) ("[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials."). *Second*, Google disagrees that Mr. Schwartz's statement necessarily reflects communications with Sun's legal counsel. Mr. Schwartz could, as a businessperson, easily arrive at the common sense view that Sun would have no grounds to sue Google for doing precisely what Sun actively encouraged the world to do—use the Java language and the declarations/SSO of the Java SE APIs. Further, Google can lay the foundation for the jury to show that Mr. Schwartz, as Sun's CEO, had full authority to decide that it was not in Sun's best interest to pursue litigation against Google as a business matter and that his decisionmaking was driven by business strategy, rather than any assessment by legal counsel of potential legal claims.

8

DEFENDANT GOOGLE INC.'S OPPOSITION TO ORACLE'S
SUMMARY MOTIONS IN LIMINE AS PER COURT ORDER (ECF NO. 1488)
Case No. 3:10-cv-03561 WHA

1045830.04

**Motion 9: Exclude November 5, 2007 Blog Post By Mr. Schwartz, TX 2352**

The Court should exclude from Phases I and II of the trial, under Federal Rules of Evidence 402 and 403, a blog entry by Jonathan Schwartz, TX 2352.  The blog entry was posted on November 7, 2007, *ten days before* any Android code was public, TX 3441.

The Schwartz post is irrelevant to fair use.  Without knowing what code was in Android, "[t]here was no way for [Sun/Oracle] to assess whether [Google's] use would be fair until they saw the final product."  *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 626 (9th Cir. 2003).  Sun could not even know if there was an infringement because it was possible that Google had taken a license.  *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517 (9th Cir. 1993) (infringement is copying "beyond the scope of a license").  Indeed, as Mr. Schwartz wrote in an internal email the day of the post, "my *assumption* is they're abiding by [Sun's] OSS [Open Source Software, i.e., GPL] licenses."  OAGOOGLE0004646098.  But, even two days later, Mr. Schwartz had to admit that he "ha[d] [no] clue what they're up to."  PX251.

The blog post is also irrelevant to Phase II.  The blog post pre-dates Android's actual release in 2008, came before Android even turned a profit or cost Sun or Oracle a deal with a licensee, and was made with "no clue" that Android would contain Oracle's work.  Thus, it has no probative value regarding whether Sun/Oracle actually lost profits because of Android.  Similarly, the blog post is irrelevant to apportionment, which considers "factors *in addition* to use of plaintiff's work."  *See Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 518 (9th Cir. 1985) (emphasis added).  Mr. Schwartz could not know what in Android was in addition to Java at the time.

Finally, the post was misused during the first trial.  Google wrongly claimed that it was published *after* Android's release, when it was not.  Tr. 244:20-245:10.  Significantly, Google recently implied the same again during its mini-opening.  Feb. 24, 2016 Tr. 10:11-15.  Moreover, three Google witnesses testified about the blog *even before* Mr. Schwartz testified.  Tr. 1029:8-9 (Morrill); Tr. 1823:17-1824:15 (Bornstein); Tr. 1199:18-1201:8 (Lee).  Those Google employees read portions of the blog to the jury and even opined on its meaning until they were cut off either by the Court *sua sponte* or by a sustained objection from Oracle.

The blog post is irrelevant, misleading, and susceptible of misuse.  It should be excluded.

**Opposition to Oracle Summary Motion 9**

Consistent with Oracle's other attempts to rewrite (or erase) history using motions *in limine*, this motion represents yet another effort to disclaim Jonathan Schwartz's actions and decisions during the years he was Sun's CEO. But Mr. Schwartz's actions and decisions, including the blog post, are highly relevant to all phases of this case. ***First,*** Mr. Schwartz's blog post is highly relevant to fair use in phase 1, *at least* willfulness in phase 2, and Google's equitable defenses in phase 3. In the November 2007 post, Mr. Schwartz, as Sun's CEO, offered "heartfelt congratulations to Google on the announcement of their new Java/Linux phone platform," said he was "pleased" Android would be a "Java based platform," and noted that Android "strapped another set of rockets" to Java. TX 2352. This blog post is just one of a string of statements by Sun/Oracle both before ***and after*** Android's release showing that Sun/Oracle supported Google's use of the declarations/SSO of the 37 Java SE APIs and that Sun/Oracle, and the industry, believed that Google's use was reasonable at that time. *See Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). For example, in May 2008, well after Android's release, Sun again stated in its "position on Google Android" that it was "pleased to have Google amplify the global momentum behind Java" and "welcome[d] Google to the community." TX 2259 at 10. And yet again, in June 2009, Oracle CEO Larry Ellison stated he was "flattered" Android was based on Java. TX 2041 at 10-11. ***Second,*** Oracle's claim that Schwartz's blog post is irrelevant because he didn't know "what code was in Android" simply ignores Schwartz's repeated testimony at trial (and other record evidence) that he knew Android would include the declarations/SSO of the Java APIs ***before*** it was officially released. *See, e.g.,* Trial Tr. 1983:22-24 ("Q. So you knew … Android would be based on … the Java APIs? A. Yes. As I stated in the first paragraph of this note. [TX 435 (April 27, 2006 email)]"); 1984:21-25 ("Q. Were you aware that Google was planning to use [Java language APIs] in its product? A. Yes. We were aware that they were—and I believe they had made statements to the effect that they were creating a Java Linux phone, so they were not subtle about it."); 1987:23-1989:7 (Q. I take it before the time that you wrote this email [TX 3441 (November 9, 2007 email)], you knew that Android would use…Java APIs as well? A. We knew because everyone in the industry knew.").

9

DEFENDANT GOOGLE INC.'S OPPOSITION TO ORACLE'S
SUMMARY MOTIONS IN LIMINE AS PER COURT ORDER (ECF NO. 1488)
Case No. 3:10-cv-03561 WHA

1    Dated: March 23, 2016                        Respectfully,

2                                                 Orrick, Herrington & Sutcliffe LLP

3                                                 By:  */s/ Lisa T. Simpson*
                                                      Lisa T. Simpson
4
                                                 Counsel for ORACLE AMERICA, INC.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28