ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   (415) 391-5400
Facsimile:   (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (*pro hac vice*)
bbaber@kslaw.com
1180 Peachtree Street
Atlanta, Georgia 30309
Telephone:   (404) 572-4600
Facsimile:   (404) 572-5100

ATTORNEYS FOR DEFENDANT
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**PARTIES' JOINT PROPOSED JURY INSTRUCTIONS**<br><br>Trial:  May 9, 2016 at 8:00 am<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

1

**TABLE OF CONTENTS**

2

Page

3

DISPUTED INSTRUCTION NO. 1: COPYRIGHTS AT ISSUE, COPYRIGHT
OWNER EXCLUSIVE RIGHTS, PRELIMINARY INSTRUCTION

4

5

    Offered By Oracle .................................................................................................. 1

6

    Offered By Google ................................................................................................. 4

7

DISPUTED INSTRUCTION NO. 2: COPYRIGHT DEFINED

8

    Response By Oracle .............................................................................................. 6

9

    Offered By Google ................................................................................................. 7

10

DISPUTED INSTRUCTION NO. 3: JAVA PROGRAMMING LANGUAGE

11

    Response By Oracle .............................................................................................. 8

12

    Offered By Google ................................................................................................. 9

13

DISPUTED INSTRUCTION NO. 4: COPYING FROM THIRD PARTY

14

    Offered By Oracle ............................................................................................... 10

15

    Response By Google ........................................................................................... 12

16

DISPUTED INSTRUCTION NO. 5: ISSUE TO BE DECIDED/FAIR USE
INTRODUCTORY INSTRUCTION

17

    Offered By Oracle ............................................................................................... 13

18

    Offered By Google ............................................................................................... 15

19

DISPUTED INSTRUCTION NO. 6: FAIR USE GENERALLY

20

    Response By Oracle ............................................................................................ 16

21

    Offered By Google ............................................................................................... 17

22

DISPUTED INSTRUCTION NO. 7: FAIR USE – BACKGROUND AND POLICY

23

    Response By Oracle ............................................................................................ 19

24

    Offered By Google ............................................................................................... 20

25

DISPUTED INSTRUCTION NO. 8: FAIR USE – STATUTORY LANGUAGE

26

    Response By Oracle ............................................................................................ 21

27

    Offered By Google ............................................................................................... 22

28

DISPUTED INSTRUCTION NO. 9: FAIR USE – FACTORS TO CONSIDER

     Response By Oracle ............................................................................................ 24

     Offered By Google .............................................................................................. 25

DISPUTED INSTRUCTION NO. 10: FAIR USE FIRST FACTOR

     Offered By Oracle ............................................................................................... 26

     Offered By Google .............................................................................................. 29

DISPUTED INSTRUCTION NO. 11: FIRST FACTOR – TRANSFORMATIVE

     Response By Oracle ............................................................................................ 30

     Offered By Google .............................................................................................. 31

DISPUTED INSTRUCTION NO. 12: FIRST FACTOR – COMMERCIAL USE

     Response By Oracle ............................................................................................ 33

     Offered By Google .............................................................................................. 34

DISPUTED INSTRUCTION NO. 13: FAIR USE SECOND FACTOR

     Offered By Oracle ............................................................................................... 35

     Offered By Google .............................................................................................. 36

DISPUTED INSTRUCTION NO. 14: FAIR USE THIRD FACTOR

     Offered By Oracle ............................................................................................... 39

     Offered By Google .............................................................................................. 40

DISPUTED INSTRUCTION NO. 15: FAIR USE FOURTH FACTOR

     Offered By Oracle ............................................................................................... 43

     Offered By Google .............................................................................................. 45

DISPUTED INSTRUCTION NO. 16: FAIR USE – ADDITIONAL FACTORS

     Response By Oracle ............................................................................................ 47

     Offered By Google .............................................................................................. 48

DISPUTED INSTRUCTION NO. 17: FAIR USE – CONSIDERATION OF FACTORS

     Response By Oracle ............................................................................................ 50

     Offered By Google .............................................................................................. 51

DISPUTED INSTRUCTION NO. 18: DERIVATIVE WORK

     Offered By Oracle ........................................................................................ 52

     Offered By Google ........................................................................................ 54

STIPULATED INSTRUCTION NO. 19: DAMAGES – INTRODUCTION ................................56

DISPUTED INSTRUCTION NO. 20: DAMAGES

     Offered By Oracle ........................................................................................ 57

     Offered By Google ........................................................................................ 58

DISPUTED INSTRUCTION NO. 21: ACTUAL DAMAGES

     Offered By Oracle ........................................................................................ 59

     Offered By Google ........................................................................................ 61

DISPUTED INSTRUCTION NO. 22: DAMAGES – LOST LICENSING REVENUE

     Response By Oracle ...................................................................................... 63

     Offered By Google ........................................................................................ 64

DISPUTED INSTRUCTION NO. 23: DEFENDANT'S PROFITS, INDIRECT PROFITS/ CAUSAL LINK

     Offered By Oracle ........................................................................................ 66

     Offered By Google ........................................................................................ 69

DISPUTED INSTRUCTION NO. 24: DAMAGES–DEFENDANT'S PROFITS – DEDUCTIONS, INDIRECT PROFITS/DEDUCTIONS

     Response By Oracle ...................................................................................... 72

     Offered By Google ........................................................................................ 73

DISPUTED INSTRUCTION NO. 25: DAMAGES – DEFENDANT'S PROFITS – ATTRIBUTION OTHER FACTORS, INDIRECT PROFITS

     Response By Oracle ...................................................................................... 75

     Offered By Google ........................................................................................ 76

DISPUTED INSTRUCTION NO. 26: DAMAGES--DEFENDANT'S PROFITS – WILLFULNESS

     Offered By Oracle ........................................................................................ 78

     Response By Google ...................................................................................... 79

DISPUTED INSTRUCTION NO. 27: STATUTORY DAMAGES

    Offered By Oracle ........................................................................................... 80

    Offered By Google ........................................................................................... 81

DISPUTED INSTRUCTION NO. 28: STATUTORY DAMAGES – WILLFUL INFRINGEMENT

    Offered By Oracle ........................................................................................... 83

    Offered By Google ........................................................................................... 84

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

**DISPUTED INSTRUCTION NO. 1**
**COPYRIGHTS AT ISSUE AND COPYRIGHT OWNER EXCLUSIVE RIGHTS**
**OFFERED BY ORACLE**

Oracle's copyrighted works at issue in this trial are: (1) Java 2 Standard Edition, Version 1.4 (TX 464), and (2) Java 2 Standard Edition, Version 5.0 (TX 475).  These works are copyright protected as computer programs.  [cC]omputer programs][, that is, are a-literary works under the Copyright Act, composed of a set of statements or instructions to be used directly or indirectly in a computer to bring about a certain result][.

Under the Copyright Act, the owner of copyright has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

Copyright is the exclusive right to copy. This right to copy includes the exclusive right[s] to:

(1) [[authorize, or make additional copies, or otherwise] reproduce the copyrighted work in [copies] [phonorecords]];

(2) [[recast, transform, adapt the work, that is] prepare derivative works based upon the copyrighted work];

(3) [distribute [copies] [sound recordings] of the copyrighted work to the public by [sale or other transfer of ownership] [or by [rental or lease or lending]];

1       (4) [perform publicly a copyrighted [literary work,] [musical work,] [dramatic work,]

2 [choreographic work,] [pantomime work,] [motion picture] [or] [specify other audiovisual

3 work]];

4       (5) [display publicly a copyrighted [literary work,] [musical work,] [dramatic work,]

5 [choreographic work,] [pantomime work,] [pictorial work,] [graphic work,] [sculptural work,]

6 [the individual images of a motion picture] [or] [specify other audiovisual work]]; and

7       (6) [perform a sound recording by means of digital audio transmission].

8     It is the owner of a copyright who may exercise [this] [these] exclusive right[s] to copy.

9 The term "owner" includes [the author of the work] [an assignee] [an exclusive licensee].In

10 general, copyright law protects against [production,] [adaptation,] [distribution,] [performance,]

11 [and display] of original elements substantially similar copies of the owner's copyrighted work

12 without the owner's permission.  An owner may enforce the[se] right[s] to exclude others in an

13 action for copyright infringement. [Even though one may acquire a copy of the copyrighted work,

14 the copyright owner retains rights and control of that copy, including uses that may result in

15 additional copies or alterations of the work.]

16     In this case, it has already been determined that Oracle owns the copyright on the works in

17 question and that Google infringes Oracle's copyrights unless Google establishes its affirmative

18 defense of fair use.

19

20 **Authority:**  17 U.S.C. § 106 (verbatim quote) ("Subject to sections 107 through 122, the owner

21 of copyright under this title has the exclusive rights to do and to authorize any of the following:

22 (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works

23 based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted

24 work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the

25 case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures

26 and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary,

27 musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural

28 works, including the individual images of a motion picture or other audiovisual work, to display

1   the copyrighted work publicly; and (6) in the case of sound recordings, to perform the

2   copyrighted work publicly by means of a digital audio transmission."); Ninth Circuit Manual of

3   Model Jury Instructions – Civil No. 17.1 (2007) (modified); *Oracle Am., Inc. v. Google Inc.*, 750

4   F.3d 1339, 1350 (Fed. Cir. 2014)) ("Oracle owns the copyright on Java SE and the API packages

5   …."); *id.* at 1354 ("[W]e conclude that the declaring code and the structure, sequence, and

6   organization of the 37 Java API packages are entitled to copyright protection."); *id.* at 1381

7   (same); *id.* at 1354 ("The Copyright Act provides protection to 'original works of authorship

8   fixed in any tangible medium of expression,' including 'literary works.'" (quoting 17 U.S.C.

9   § 102(a)); *id.* ("It is undisputed that computer programs—defined in the Copyright Act as 'a set of

10  statements or instructions to be used directly or indirectly in a computer in order to bring about a

11  certain result,' 17 U.S.C. § 101—can be subject to copyright protection as 'literary works.'"); *id.*

12  ("As literary works, copyright protection extends to computer programs." (quoting *Atari Games*

13  *Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832, 838 (Fed. Cir. 1992)); ECF No. 1488 (Tentative

14  Trial Plan) ("The jury will be told that all agree and it has been established that the Android

15  versions in play (Android 1.0, Android 1.1, Cupcake, Donut, Eclair, Froyo, Gingerbread,

16  Honeycomb, Ice Cream Sandwich, Jelly Bean, KitKat, [Lollipop,] and [Marshmallow], including

17  major and minor releases thereof) used the copyrighted declaring code and the structure,

18  sequence, and organization of the 37 Java API packages at issue and that this constituted

19  infringement unless Google carries its burden before our jury as to the defense of fair use."), *as*

20  *modified by* ECF No. 1506 ¶ 5.

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 1**

**PRELIMINARY INSTRUCTION  —  COPYRIGHT INFRINGEMENT**

The plaintiff, **Oracle America, Inc., which I will refer to as "Oracle" or the "plaintiff,"** owns [claims ownership of a] **certain** copyrights and seeks damages against the defendant, **Google Inc., which I will refer to as "Google" or the "defendant,"** for [copyright] infringement **of two copyrighted works, called the Java 2 Standard Edition (or "SE") versions 1.4 and 5.0.  I will refer to these two works as the "Asserted Works."  Google denies infringing the copyrights and, in this trial, contends that Google's use of what will be referred to as the "declaring code" and structure, sequence and organization, or "SSO," of 37 packages or portions of the Java SE Application Programming Interface, or "API," was what is known as a "fair use."**

To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.  **At the conclusion of the trial, I will provide you with written instructions that explain these legal terms in more detail.**

DEFINITION OF COPYRIGHT

**A copyright is a group of exclusive rights that belong to the owner of a copyright.**

The owner of a copyright has the **exclusive** right [to exclude]**, for a specific period of time,** to reproduce the work, prepare derivative works based on the work, or distribute the work covered by the copyright [any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time].

**A** copyrighted work can be a literary work, **a** musical work, **a** dramatic work, [pantomime, choreographic work, pictorial work,], **a** graphic work, [sculptural work,] **a** motion picture, **an** audiovisual work, **a** sound recording, **an** architectural work, **a** mask work [works] fixed in semiconductor chip products, or a computer program.

HOW COPYRIGHT IS OBTAINED

Copyright automatically exists in a work the moment it is fixed in any tangible or stable medium of expression.  **In the case of software, this could be expressed in source code or machine-readable code.**  The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work **and obtaining a certificate of registration**.

**The copyright registrations for the Asserted Works in this case were obtained by Sun Microsystems, Inc., which I will refer to as "Sun."  Sun changed its name to "Oracle America, Inc." when Oracle Corporation purchased Sun, but it is still the same legal entity, so Oracle is bound by Sun's actions, inaction and prior statements.  For purposes of the evidence you will hear, you should consider Sun and Oracle to be the same entity.**

### DEFENDANT'S BURDEN OF PROOF

**The issue that you will be asked to decide in this part of this case is whether Google's use in its Android mobile device operating system of the declaring code and SSO from the 37 Java SE API packages in the Asserted Works was a fair use.  If Google's use was a fair use, then there is no copyright infringement.**

**Google has the burden of proving by a preponderance of the evidence that its use was a fair use.  A preponderance of the evidence means that you must be persuaded, after weighing all of the relevant factors (about which I will instruct you later), that you believe the evidence shows that Google's use of the declaring code and SSO of the 37 Java SE API packages was a fair use.**

PRIMARY SOURCE:

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.0 (2007) (relevant

portions only; modified; modifications identified as additions in bold and deletions

stricken through)

1

**DISPUTED INSTRUCTION NO. 2**
**COPYRIGHT DEFINED**

2

3      Oracle does not offer an Instruction No. 2.  Oracle believes that Disputed Instruction

4  No. 2 is duplicative and unnecessary in light of Oracle's proposed Instruction No. 1.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 2**

**COPYRIGHT — DEFINED**

**A copyright is a group of exclusive rights that belong to the owner of a copyright. These rights** include the exclusive rights to:

      (1)    reproduce the copyrighted work in copies;

      (2)    prepare derivative works based upon the copyrighted work;

      (3)    distribute copies of the copyrighted work to the public by sale or other transfer of ownership; **and**

      (4)    display publicly **the** [a] copyrighted work.

**These exclusive rights are the property of a copyright owner.** [It is the owner of a copyright who may exercise [this] [these] exclusive right[s] to copy. The term "owner" includes [the author of the work] [an assignee] [an exclusive licensee].] In general, copyright law protects against the **reproduction and** distribution of **works that are** substantially similar [copies] **or virtually identical to** [of] the **copyright** owner's copyrighted work without the **copyright** owner's permission. **A copyright** [An] owner may enforce these **exclusive** rights in an action for copyright infringement.


PRIMARY SOURCE:

Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.1 (2007) (relevant

      portions only; modified; modifications identified as additions in bold and deletions

      stricken through)


AUTHORITIES:

17 U.S.C. § 106

**DISPUTED INSTRUCTION NO. 3**
**JAVA PROGRAMMING LANGUAGE**

Oracle does not offer an Instruction No. 3 on the "Java Programming Language."  The Court's proposed instruction already states that Google has been found to infringe Oracle's copyrights by copying the declaring code and the structure, sequence, and organization of the 37 Java API packages.  None of the instructions suggests that in this case Oracle asserts infringement of a copyright in the Java language.  No instruction about the Java programming language was given in the first trial, when the trial involved not only fair use by copyright infringement as well.  There is no reason to give an instruction about copyright in the Java programming language in this trial.

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 3**

**JAVA PROGRAMMING LANGUAGE**

You have heard testimony during the trial about the Java programming language.  There are no issues in this case regarding whether Google was free to use the Java language in Android and to allow developers to write programs for Android in the Java language.  Oracle asserts no claim that Google infringed any rights of Oracle in the Java programming language, which is free for all to use.

AUTHORITIES:

*Oracle Am. v. Google Inc.*, 750 F.3d 1339, 1353 (Fed. Cir. 2014) (hereinafter "Federal Circuit Opinion"), *cert. denied*, 135 S.Ct. 2887 (2015) ("It is undisputed that the Java programming language is open and free for anyone to use.")

**DISPUTED INSTRUCTION NO. 4**
**COPYING FROM THIRD PARTY**
**OFFERED BY ORACLE**

It is no defense to copyright infringement for a defendant to say that it copied from a third party who did not itself have a license to copy and distribute the plaintiff's work.  Apache did not have a license to copy and distribute Oracle's copyrighted works, and neither does Google.

**Authority:**  2 Nimmer on Copyright § 8.01[C] ("Furthermore, it is no defense even if defendant did copy from a third work rather than from plaintiff if such third work was itself an unauthorized copy of plaintiff's work."); *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("Secondly, a defendant may be liable where he copied with or without a license, from a third party, who in turn had copied from the plaintiff."); *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 199 n.5 (1931) ("If the copyrighted composition had been broadcast by Duncan with plaintiffs' consent, a license for its commercial reception and distribution by the hotel company might possibly have been implied.  But Duncan was not licensed; and the position of the hotel company is not unlike that of one who publicly performs for profit by the use of an unlicensed phonograph record.").

     **Google does not claim to have a license:**  ECF No. 1018 (Final Jury Instrs.) ¶ 30 ("Unless you find fair use … , Google had no right to copy any elements of the Java platform protected by copyright unless it had a written license to do so from Sun or Oracle or had a written sub-license to do so from a third party who had a license from Sun or Oracle conferring the right to grant such sub-licenses.  The burden would be on Google to prove it had any such express license or sublicense rights.  ***But in this trial it makes no such contention.***  Put differently, if Google claims a license from a third party, Google has the burden to prove that the third party itself had the proper right and authority from Sun or Oracle as to any of the copyrights owned by Sun or Oracle and used by Google, for Google could acquire from the third party no greater right than the third party itself had in the first place…." (emphasis added)); ECF No. 1203 (Findings of Fact and Conclusions of Law on Google's Equitable Defenses) ("reject[ing] on the merits" "Google's defenses of implied license and waiver"); ECF No. 1566-5 (Google First Supp. Resp. To Interrogs., No. 42) ("Google further states that it does not assert the defense of express license

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

as to any of the already-released versions of Android."); ECF No. 1458 (Order) (denying as moot

Google's request to supplement its answer because Oracle "has not accused any version of

Android containing the OpenJDK code" and that "moots [Google's] proposed license defense").

**PROPOSED JURY INSTRUCTION NO. 4**

**[COPYING FROM THIRD PARTY]**

Google does not believe an instruction on the subject covered by Oracle's proposed instruction number 4 is appropriate.  Google does not assert as a defense that it had a license from a third party or that it "copied from a third party."

**DISPUTED INSTRUCTION NO. 5**
**ISSUE TO BE DECIDED/FAIR USE INTRODUCTORY INSTRUCTION**
**OFFERED BY ORACLE**

Google has violated Oracle's copyrights in Java 2 Standard Edition, Version 1.4, and in Java 2 Standard Edition, Version 5.0, by copying the declaring code and the structure, sequence, and organization of the 37 Java API packages into all versions of Android from Android version 1.0 through Marshmallow, unless Google carries its burden as to the affirmative defense of fair use.  Google bears the burden of proving its defense of fair use by the preponderance of the evidence.

~~One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.~~

~~Defendant contends that defendant made fair use of the copyrighted work for the purpose of [criticism] [comment] [news reporting] [teaching] [scholarship] [research] [other purpose alleged]. The defendant has the burden of proving this defense by a preponderance of the evidence.~~

In determining whether Google's~~the~~ use ~~made of the~~ Oracle's work ~~was~~is a fair ~~use~~, you should consider the following factors:

**Authority**:  Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.18 (2007) (modified) (citing 17 U.S.C. § 107); 17 U.S.C. § 501(a) ("Anyone who ***violates*** any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an ***infringer*** of the copyright or right of the author, as the case may be." (emphasis added)); ECF No. 1488 ("The jury will be told that all agree and it has been established that the Android versions in play (Android 1.0, Android 1.1, Cupcake, Donut, Eclair, Froyo, Gingerbread, Honeycomb, Ice Cream Sandwich, Jelly Bean, KitKat, … Lollipop [and Marshmallow], including major and minor releases thereof) used the copyrighted declaring code and the structure,

1   sequence, and organization of the 37 Java API packages at issue and that this constituted

2   infringement unless Google carries its burden before our jury as to the defense of fair use."), *as*

3   *modified* ECF No. 1506 ¶ 5; *Oracle Am.*, 750 F.3d at 1372 ("Fair use is an affirmative defense to

4   copyright infringement and is codified in Section 107."); 17 U.S.C. § 107 ("In determining

5   whether the use made of a work in any particular case is a fair use the factors to be considered

6   shall include ….").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

1

2

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 5**

**ISSUE TO BE DECIDED**

3

4          **For purposes of** [In] this trial, **you must assume** [all parties agree] that the Android

5     versions in question used **the declaring code and the structure, sequence, and organization**

6     **(or "SSO") of 37** [certain aspects] of **the Java SE API packages in the Oracle copyrighted**

7     **works or "Asserted Works," which are** Java 2 Standard Edition Version 1.4 and Java 2

8     Standard Edition Version 5.0 [specifically using the declaring code and the structure, sequence,

9     and organization of 37 Java API packages].  The pertinent Android versions **are** [were]: 1.0, 1.1,

10    Cupcake, Donut, Eclair, Froyo, Gingerbread, Honeycomb, Ice Cream Sandwich, Jelly Bean, Kit-

11    Kat, Lollipop, and Marshmallow.

12         **The issue that you are asked to decide is whether** [In this trial, all agree that this use

13    constituted copyright infringement under the federal Copyright Act of 1976 unless you find that]

14    Google has carried its burden as to the right of fair use.  In other words, for purposes of this trial,

15    **the question for you to decide is whether or not Google's use of the declaring code and the**

16    **SSO of the 37 Java SE API packages was a fair use.**  [all agree that Google copied certain

17    aspects of copyrighted works and the question remaining for you to decide is whether or not

18    Google's use was a fair use.]

19

20    PRIMARY SOURCE:

21    ECF No. 1615 (Draft Fair Use Instructions) at 1-2 (modified; modifications identified as

22             additions in bold and deletions stricken through)

23

24

25

26

27

28

- 15 -          PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

1

**DISPUTED INSTRUCTION NO. 6**
**FAIR USE GENERALLY**

2

3      Oracle does not offer an Instruction No. 6 on "Fair Use Generally."  Oracle believes that

4  Disputed Instruction No. 6 is unnecessary, erroneous, prejudicial, and (to the extent not

5  erroneous) duplicative of other instructions.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 6**

**FAIR USE GENERALLY**

One who is not the owner of **a** [the] copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance **the purpose of copyright, which is to promote the progress of science and the useful arts** [the public interest].  Such use of a copyrighted work is called a fair use.  The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.  **If a use was a fair use, that is a complete defense to a claim of copyright infringement.**

Google [Defendant] contends that **it** [defendant] made fair use of the copyrighted work [for the purpose of _____].  **Google** [The defendant] has the burden of proving this defense by a preponderance of the evidence.

**Now, I will explain what fair use means under the law.**

PRIMARY SOURCE:

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.18 (2007) (modified; modifications identified as additions in bold and deletions stricken through)

AUTHORITIES:

17 U.S.C. § 107 ("the fair use of a copyrighted work . . . is not an infringement of copyright")

Federal Circuit Opinion, 750 F.3d at 1373 ("The Supreme Court has explained that all of the statutory factors "are to be explored, and the results weighed together, in light of the purpose[] of copyright," which is "[t]o promote the Progress of Science and useful Arts." *Campbell*, 510 U.S. at 578, 575 (internal citations omitted).")

*Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 578 (1994) ("Nor may the four statutory factors be treated in isolation, one from another.  All are to be explored, and the results weighed together, in light of the purposes of copyright.")

1  *Id.* at 575 ("From the infancy of copyright protection, some opportunity for fair use of

2  copyrighted materials has been thought necessary to fulfill copyright's very purpose, '[t]o

3  promote the Progress of Science and useful Arts. . . .'  U. S. Const., Art. I, § 8, cl. 8.")

4  ECF No. 1615 (Draft Fair Use Instructions) at 2.

1

**DISPUTED INSTRUCTION NO. 7**
**BACKGROUND AND POLICY**

2

3        Oracle does not offer an Instruction No. 7 on "Fair Use Background and Policy."  Oracle

4  believes that Disputed Instruction No. 7 is unnecessary, erroneous, prejudicial, and (to the extent

5  not erroneous) duplicative of other instructions.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 7**

**FAIR USE — BACKGROUND AND POLICY**

One policy behind our copyright laws, of course, is to protect the work of authors from exploitation by plagiarists and others. **An equally significant policy, however, is to encourage and allow the development of new ideas that build on earlier ones, thus providing a counterbalance to the copyright policy to protect creative works.** When it applies, [however,] the right of fair use permits the use of copyrighted works without the copyright owner's consent **or the payment of any money to the copyright owner**. [The policy behind the right of fair use is to encourage and allow the development of new ideas that build on earlier ones, thus providing a counterbalance to the copyright policy to protect creative works.] In short, our copyright laws seek [, on the one hand,] to promote the progress of science and **the useful arts** [art] by**, on the one hand,** protecting **original** artistic and scientific works while, on the other hand, encouraging the development and evolution of new works building on earlier ones.

PRIMARY SOURCE:

ECF No. 1615 (Draft Fair Use Instructions) at 2 (modified; modifications identified as additions in bold and deletions stricken through)

1

2

**DISPUTED INSTRUCTION NO. 8**
**STATUTORY LANGUAGE**

3

4

5

Oracle does not offer an Instruction No. 8.  Oracle believes that Disputed Instruction No. 8 is unnecessary and (as to the commentary before and after the statutory language) erroneous and prejudicial.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 8**

**FAIR USE — STATUTORY LANGUAGE**

Fair use is explained in the federal Copyright Act of 1976.  Under the Act, anyone may make fair use of a copyrighted work and may do so without anyone's permission and without **the payment of any royalties or other amounts to the copyright owner** [notice to anyone]. Specifically, the Act states (and I will quote it exactly):

> The fair use of a copyrighted work **. . .** for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship or research, is not an infringement of copyright.  In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include —
>
> 1.    The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> 2.    The nature of the copyrighted work;
>
> 3.    The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> 4.    The effect of the use upon the potential market for or value of the copyrighted work.
>
> [The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all of the above factors.]

I have just quoted for you the right of fair use exactly as enacted by Congress.  In your deliberations, you must decide whether or not Google has met its burden in this trial to prove [up] that its **use of the declaring code and SSO of the 37 Java SE API packages** [copying] was a fair use.

Now I will further explain each of the four factors **identified in the Copyright Act**.

PRIMARY SOURCE:

ECF No. 1615 (Draft Fair Use Instructions) at 2-3 (modified; modifications identified as

additions in bold and deletions stricken through)

1

**DISPUTED INSTRUCTION NO. 9**
**FACTORS TO CONSIDER**

2

3        Oracle does not offer an Instruction No. 9 regarding additional "Factors To Consider."

4   Oracle believes that Disputed Instruction No. 9 is unnecessary, erroneous, prejudicial, and (to the

5   extent not erroneous) duplicative of other instructions.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 9**

**FAIR USE — FACTORS TO CONSIDER**

In determining whether **Google's** [the] use [~~made of the work~~] was fair, you **must** [~~should~~] consider **each of the four** [~~the following~~] factors **identified in the statute that I just read to you, and you may consider additional factors that are relevant to whether Google's use of the declaring code and SSO was fair and advances the public interest or provides public benefit.  The first four of these factors, each of which you must consider, are the ones identified in the copyright statute.**

PRIMARY SOURCE:

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.18 (2007) (modified; modifications identified as additions in bold and deletions stricken through)

AUTHORITIES:

17 U.S.C. § 107 ("the factors to be considered shall include—")

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.18 (2007) ("[5.] *[insert any other factor that bears on the issue of fair use]*.") (emphasis in original)

Federal Circuit Opinion, 750 F.3d at 1373 ("Section 107 requires a case-by-case determination whether a particular use is fair, and the statute notes four nonexclusive factors to be considered.") (quoting *Harper & Row*)

*Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 549 (1985) ("Section 107 requires a case-by-case determination whether a particular use is fair, and the statute notes four nonexclusive factors to be considered.")

*Id.* at 560 ("The factors enumerated in the section are not meant to be exclusive: '[S]ince the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts.'  House Report, at 65.")

1
2

**DISPUTED INSTRUCTION NO. 10**
**FAIR USE FIRST FACTOR**
**OFFERED BY ORACLE**

3   The first factor you must consider in determining whether Google's use is a fair use is 1.

4   the purpose and character of the use, including whether such use is of a commercial nature or is

5   for nonprofit educational purposes;.

6   This factor involves three issues: (1) whether the use serves a commercial purpose,

7   (2) whether and to what extent Google's use is transformative, and (3) the propriety of Google's

8   conduct in using Oracle's copyrighted works.

9   First, a use is commercial if the user stands to profit from the use of the copyrighted

10   material. Google agrees that its use of the Java API packages is purely commercial. Google's

11   purely commercial use of Oracle's copyrighted works weighs against a finding of fair use.

12   Second, a use is transformative if it adds something new, with a further purpose or

13   different character, altering the original copyrighted material with new expression, meaning or

14   message. The critical question is whether the new work merely supersedes the objects of the

15   original material or instead adds something new. Uses for purpose of criticism, comment, or

16   news reporting are examples of transformative uses. A use is transformative where it is made for

17   purposes distinct from the purpose of the original material. A use is considered transformative

18   only where a defendant changes the plaintiff's copyrighted work or uses the plaintiff's

19   copyrighted work in a different context such that the plaintiff's work is transformed into a new

20   creation. A use is not transformative where the defendant makes no alteration to the expressive

21   content or message of the original work. Where the use is for the same intrinsic purpose as the

22   plaintiff's, such use seriously weakens the claim of fair use.

23   Third, also relevant to the purpose and character of the use is the propriety of Google's

24   conduct. Fair use requires that the party claiming its use was fair acted fairly and in good faith.

25

26   **Authority:**

27   **Commercial:** Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.18

28   (modified) (2007) (citing 17 U.S.C. § 107); *Oracle Am.*, 750 F.3d at 1374 ("The first factor in the

- 26 -                        PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

1   fair use inquiry involves 'the purpose and character of the use, including whether such use is of a

2   commercial nature or is for nonprofit educational purposes.'" (quoting 17 U.S.C. § 107(1)); *id.*

3   ("This factor involves two sub-issues: (1) whether and to what extent the new work is

4   transformative, and (2) whether the use serves a commercial purpose" (quotation marks omitted));

5   *id.* at 1375 ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use

6   is monetary gain but whether the user stands to profit from exploitation of the copyrighted

7   material without paying the customary price." (quoting *Harper & Row Publ'rs, Inc. v. Nation*

8   *Enters.*, 471 U.S. 539, 562 (1985))); *id.* at 1376 (Google "*admittedly copied portions* of the API

9   packages and did so for what were *purely commercial purposes*" (emphasis added)); *Micro Star*

10  *v. Formgen Inc.*, 154 F.3d 1107, 1113 (9th Cir. 1998) ("every commercial use of copyrighted

11  material is presumptively an unfair exploitation of the monopoly privilege that belongs to the

12  owner of the copyright." (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S.

13  417, 451 (1984))); *Leadsinger, Inc. v. BMG Music Publ'g.*, 512 F.3d 522, 531-32 (9th Cir. 2008)

14  ("[C]ommercial use of copyrighted material is 'presumptively an unfair exploitation of the

15  monopoly privilege that belongs to the owner of the copyright.'" (quoting *Sony*, 464 U.S. at

16  451)); *L.A. News Serv. v. Reuters Tele. Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998) ("While a

17  commercial use does not by itself preclude a defense of fair use, 'every commercial use of

18  copyrighted material is presumptively an unfair exploitation of the monopoly privilege that

19  belongs to the owner of the copyright.'" (quoting *Sony*, 464 U.S. at 451)).

20      **Transformation:** *Oracle Am.*, 750 F.3d at 1374 ("A use is 'transformative' if it 'adds

21  something new, with a further purpose or different character, altering the first with new

22  expression, meaning or message.'  The critical question is 'whether the new work merely super-

23  sedes the objects of the original creation or instead adds something new.'" (ellipsis and brackets

24  omitted) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994))); *id.* ("This

25  inquiry 'may be guided by the examples given in the preamble to § 107, looking to whether the

26  use is for criticism, or comment, or news reporting, and the like.'" (quoting *Campbell*, 510 U.S. at

27  578-79)); *id.* ("A work is not transformative where the user 'makes no alteration to the *expressive

28  content of message* of the original work.'" (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170,

1177 (9th Cir. 2013))); *id.* at 1375 ("Where the use 'is for the same intrinsic purpose as the copyright holder's such use seriously weakens a claimed fair use.'" (ellipsis and brackets omitted) (quoting *Worldwide Church of God v. Phila. Church of God, Inc.*, 277 F.3d 1110, 1117 (9th Cir. 2000))).

**Bad faith:** *Harper & Row Publ'rs, Inc.*, 471 U.S. at 562-63 ("Also relevant to the 'character' of the use is the propriety of the defendant's conduct.  Fair use presupposes good faith and fair dealing."); *L.A. News Serv. v. K-Cal TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) ("While the fact that KCAL had requested a license but had been refused one is not dispositive, the propriety of the defendant's conduct is relevant to the character of the use at least to the extent that it may knowingly have exploited a purloined work for free that could have been obtained for a fee." (internal citation and quotation marks omitted)).

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 10**

**FAIR USE — FIRST FACTOR**

The first factor **is** [~~concerns~~] the purpose and character of the use.

This factor includes two issues:  (1) whether and the [~~to what~~] extent **to which** the use serves a commercial purpose, which weighs against fair use, **as opposed to** [~~versus~~] a nonprofit educational purpose **or research or scholarship purposes**, which weigh in favor of fair use; and (2) whether and the [~~to what~~] extent **to which** the new work is "transformative," which supports fair use.  Although the Copyright Act does not explicitly use the word "transformative," our Supreme Court has decided that the central purpose of the first statutory factor is to evaluate whether and to what extent the [~~purpose and character of the~~] **new** [~~accused~~] work is transformative.

PRIMARY SOURCE:

ECF No. 1615 (Draft Fair Use Instructions) at 3 (modified; modifications identified as additions
      in bold and deletions stricken through)

AUTHORITIES:

17 U.S.C. § 107

Federal Circuit Opinion, 750 F.3d at 1374 (a "use is transformative if . . ."; "Courts have
      described new works as 'transformative' when . . ."; "A work is not transformative where
      . . . ")

1

2

**DISPUTED INSTRUCTION NO. 11**
**FIRST FACTOR - TRANSFORMATIVE**

3

4

5

6

Oracle does not offer an Instruction No. 11.  Oracle's Disputed Instruction No. 10 is a single, comprehensive, and unified instruction for the entire first fair use factor.  Oracle does not believe that a further, separate instruction on transformation is necessary.  Moreover, Google's proposed Disputed Instruction No. 11 is erroneous and prejudicial.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 11**

**FAIR USE — FIRST FACTOR — TRANSFORMATIVE**

What does transformative mean?

**A new work is transformative if it adds something new, with a further purpose or different character, altering the first work with new expression, meaning or message or incorporating the elements of the first work into a broader work. The critical question is whether the new work merely supersedes the first work or instead adds something new to the first work. The new work need not change the elements of the original work in order for the new work to be transformative.**

A new use is transformative if it is productive and employs the **elements of the copyrighted work** [quoted material] in a different manner or for a different purpose from the original, adding value over and above the original. By contrast, copying of copyrighted material that does little more than plagiarize the original in a manner that supersedes [the objects of] the original is not transformative. The extent of transformation will vary from case to case. The greater the transformation**,** the more likely an accused use will be a fair use and the less the transformation, the less likely an accused use will qualify as a fair use.

PRIMARY SOURCE:

ECF No. 1615 (Draft Fair Use Instructions) at 3 (modified; modifications identified as additions
        in bold and deletions stricken through)

AUTHORITIES:

Federal Circuit Opinion, 750 F.3d at 1374 ("A use is 'transformative' if it 'adds something new,
        with a further purpose or different character, altering the first with new expression,
        meaning or message.' *Id.* The critical question is 'whether the new work merely
        supersede[s] the objects of the original creation ... or instead adds something new.' *Id.*")
        (quoting *Campbell*)

*Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994) (use is transformative when it
"**adds something new**, with a further purpose or different character, altering the first with
new expression, meaning or message.") (emphasis added)

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012) (use transformative when it
incorporates elements of prior work "into a broader work")

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("The fact that Google
incorporates the entire Perfect 10 image into the search engine results does not diminish
the transformative nature of Google's use.  As the district court correctly noted, we
determined in *Kelly* that even making an exact copy of a work may be transformative so
long as the copy serves a different function than the original work.")

*Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006) (use can be
transformative where defendant changes plaintiff's work or uses it in a different context)

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2002) (finding use of "exact images"
transformative and fair use)

*Harper & Row*, 471 U.S. at 561 (recognizing that whether news article is a "productive use" is
"one factor in a fair use analysis")

*Sony Corp. v. Universal City Studios*, 464 U.S. at 455 n.40 (rejecting categorical test based on
whether use is "productive" but noting that the distinction between "productive" and
"unproductive" uses "may be helpful in calibrating the [fair use] balance.")

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013) (use is transformative if it "adds
value to the original—if the quoted matter is used as raw material, transformed in the
creation of new information, new aesthetics, new insights and understandings" and that
the addition of such value "is the very type of activity that the fair use doctrine intends to
protect for the enrichment of society.") (quoting P. Leval, *Toward a Fair Use Standard*,
103 HARV. L. REV. 1105 (1990))

1

2

**DISPUTED INSTRUCTION NO. 12**
**FIRST FACTOR – COMMERCIAL USE**

3

4

5

6

Oracle does not offer an Instruction No. 12.  Oracle's Disputed Instruction No. 10 is a single, comprehensive, and unified instruction for the entire first fair use factor.  Oracle does not believe that a further, separate instruction on commercial use is necessary.  Moreover, Google's proposed Disputed Instruction No. 12 is erroneous and prejudicial.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 12**

**FAIR USE — FIRST FACTOR — COMMERCIAL NATURE**

In evaluating the first factor, the extent of the commercial nature of the accused use must also be considered.  **Although, as stated above, the fact that the use is a** commercial use [, as stated,] weighs against a finding of fair use, [but] even a commercial use may be found (or not found, as the case may be) to be sufficiently transformative that the first factor, on balance, still weighs in favor of fair use.  To put it differently, the more transformative an accused work, the more other factors, such as commercialism, will recede in importance.  By contrast, the less transformative the accused work, the more other factors like commercialism will **become more important** [dominate].

PRIMARY SOURCE:

ECF No. 1615 (Draft Fair Use Instructions) at 3-4 (modified; modifications identified as
     additions in bold and deletions stricken through)

**DISPUTED INSTRUCTION NO. 13**
**FAIR USE – SECOND FACTOR**
**OFFERED BY ORACLE**

The second factor you must consider in determining whether the use is fair is 2. the nature of the copyrighted works;.  This factor turns on whether the works are informational or creative. Computer programs have both functional and expressive components.  Where the functional components are themselves unprotected (such as they are dictated by considerations of efficiency or other external factors), those elements should be afforded a lower degree of protection than more traditional literary works.  Creative expression falls within the core of the copyright's protective purposes.  It is undisputed that Oracle's declaring code and the structure and organization of the Java API packages are both creative and original.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.18 (2007) (modified) (citing 17 U.S.C. § 107); *Oracle Am.*, 750 F.3d at 1375 ("The second factor—the nature of the copyrighted work—'calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.'" (quoting *Campbell*, 510 U.S. at 586)); *id.* ("Creative expression 'falls within the core of the copyright's protective purposes.'" (quoting *Campbell*, 510 U.S. at 586)); *id.* ("Because computer programs have both functional and expressive components, however, where the functional components are themselves unprotected (because, e.g., they are dictated by considerations of efficiency or other external factors), those elements should be afforded 'a lower degree of protection than more traditional literary works.'" (quoting *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526 (9th Cir. 1992))); *id.* ("This factor 'turns on whether the work is informational or creative.'" (quoting *Worldwide Church of God*, 227 F.3d at 1118)); *id.* at 1365 ("[I]t is undisputed here that the declaring code and the structure and organization of the API packages are both creative and original.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 13**

**FAIR USE  —  SECOND FACTOR**

**NOTE:      Google submits this proposed instruction without prejudice to and
without waiving Google's position that the declaring code and
structure, sequence and organization of the 37 Java 2 SE API
packages at issue are not protected or protectible by copyright.**

The second factor **identified in the Copyright Act** is the nature of the copyrighted work.  This factor recognizes that traditional literary works, such as fictional novels**, songs or poems**, are closer to the core of intended copyright protection than informational works, such as instruction manuals.  Creative expression is at the very heart of copyright protection.  Fair use is generally more difficult to establish for copying of traditional literary works than for copying of informational works or using functional elements of a work such as computer software.

Although computer programs [~~and computer languages~~] are not literary works **like novels or poems**, [~~nevertheless~~] they may **nevertheless** be protected by copyright.  This is true not only for the line-by-line code but also for the structure, sequence, and organization of a program.  Even though a computer program performs functions and has functional elements, the structure, sequence, and organization of a computer program may be (or may not be) creative.  When there are many possible ways to structure, sequence, and organize a program, the way created by a copyrighted program may be (or may not be) innovative.  On the other hand, when the structure, sequence, and organization are dictated by functional considerations such as efficiency, compatibility, or industry standards, then **there is** less creativity **to protect** [~~is indicated~~] and the core values of copyright protection are less implicated.  When purely functional elements are embedded in a copyrighted work and it is necessary to copy associated creative or expressive elements in order to utilize those functional elements, then this circumstance favors fair use.

In sum, this factor focuses on how close the [~~copied~~] material **used by Google** is to the core values of copyright protection.  The less the [~~copied~~] material implicates the core values of copyright protection, the more viable will be fair use and vice versa.

1          **In connection with this factor, you may consider whether some or all of the elements**

2   **of the 37 Java SE API packages are necessary to write programs in the Java language, are**

3   **essential components of any Java language-based program, or promote compatibility**

4   **and/or interoperability with the Java language.  If you find that these considerations are**

5   **applicable, they would weigh in favor of a finding that the use was fair.**

6

7   PRIMARY SOURCE:

8   ECF No. 1615 (Draft Fair Use Instructions) at 4 (modified; modifications identified as additions

9          in bold and deletions stricken through)

10

11  AUTHORITIES:

12  Federal Circuit Opinion, 750 F.3d at 1371-72, 1376-77 ("Next, while we have concluded that it

13         was error for the trial court to focus unduly on the functional aspects of the packages, and

14         on Google's competitive desire to achieve commercial "interoperability" when deciding

15         whether Oracle's API packages are entitled to copyright protection, we expressly noted

16         that these factors may be relevant to a fair use analysis.  While the trial court erred in

17         concluding that these factors were sufficient to overcome Oracle's threshold claim of

18         copyrightability, reasonable jurors might find that they are relevant to Google's fair use

19         defense under the second and third factors of the inquiry. *See Sega*, 977 F.2d at 1524-25

20         (discussing the Second Circuit's approach to "break[ing] down a computer program into

21         its component subroutines and subsubroutines and then identif[ying] the idea or core

22         functional element of each" in the context of the second fair use factor: the nature of the

23         copyrighted work).  We find this particularly true with respect to those core packages

24         which it seems may be necessary for anyone to copy if they are to write programs in the

25         Java language. And, it may be that others of the packages were similarly essential

26         components of any Java language-based program.")

27  *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) ("To the extent that a

28         work is functional or factual, it may be copied, *Baker v. Selden*, 101 U.S. (11 Otto) 99,

- 37 -          PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

102-04, 25 L.Ed. 841 (1879), as may those expressive elements of the work that 'must necessarily be used as incident to' expression of the underlying ideas, functional concepts, or facts, *id.* at 104.")

*Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000) ("Thus, the fair use doctrine preserves public access to the ideas and functional elements embedded in copyrighted computer software programs.  This approach is consistent with the '"ultimate aim [of the Copyright Act], to stimulate artistic creativity for the general public good.'" *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975)))

*Computer Assocs Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 709-10 (2d Cir. 1992) ("a programmer's freedom of design choice is often circumscribed by extrinsic considerations such as (1) the mechanical specifications of the computer on which a particular program is intended to run; (2) compatibility requirements of other programs with which a program is designed to operate in conjunction; (3) computer manufacturers' design standards; (4) demands of the industry being serviced; and (5) widely accepted programming practices within the computer industry.")

**DISPUTED INSTRUCTION NO. 14**
**FAIR USE THIRD FACTOR**
**OFFERED BY ORACLE**

The third factor you must consider in determining whether a use is fair is 3. the amount and substantiality of the portion used in relation to the copyrighted works as a whole:. This factor is viewed in the context of the copyrighted works, not the infringing work. A taking may not be excused merely because it is insubstantial with respect to the infringing work. No infringer can excuse the wrong by showing how much of its work was not taken without authorization. In assessing this factor, you should consider both the quantity of the material used and the quality or importance of the material used.

**Authority:** Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.18 (2007) (modified) (citing 17 U.S.C. § 107); *Oracle Am.*, 750 F.3d at 1375 ("The third factor asks the court to examine 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole.'" (quoting 17 U.S.C. § 107(3))); *id.* ("Analysis of this factor is viewed in the context of the copyrighted work, not the infringing work. Indeed, the statutory language makes clear that 'a taking may not be excused merely because it is insubstantial with respect to the *infringing* work.' 'As Judge Learned Hand cogently remarked, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate."' In contrast, 'the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.'" (quoting *Harper & Row*, 471 U.S. at 565))); *Campbell*, 510 U.S. at 587 ("[T]his factor calls for thought not only about the quantity of the materials used, but about their quality and importance, too."); *id.* ("In *Harper & Row*, for example, the Nation had taken only some 300 words out of President Ford's memoirs, but we signaled the significance of the quotations in finding them to amount to 'the heart of the book,' the part most likely to be newsworthy and important in licensing serialization.").

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 14**

**FAIR USE — THIRD FACTOR**

The third factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole [, ~~which~~]. **This factor** concerns how much of the overall copyrighted work was used by the accused infringer. [~~In addition, if the accused infringer used more than was necessary for the new work, then this excess use weighs against fair use.~~] If [~~, however,~~] **you find that Google** [~~the accused infringer~~] used only what was reasonably needed for a transformative use, then this circumstance weighs in favor of fair use. **If, however, you find that Google used more than was reasonably necessary for the new work, then the excess use weighs against fair use.** The extent of permissible copying varies with the purpose and character of the use, which relates back to the first factor.

In assessing this third factor, both the quantity of the material used and the quality or importance of the material used should be considered. For purposes of this factor [~~in our case~~], **you should consider** the "work as a whole" **to include** [~~constitutes~~] all of the [~~compilable~~] code **included in each of the Asserted Works, including** [~~associated with~~] all of the 166 **Java SE** API packages in the **Asserted Works** [~~registered work~~] **(and not just the 37 packages at issue), as well as** [~~excluding~~] the virtual machine **and other elements that are part of the Asserted Works**.

**As with the second factor, you may consider in connection with this factor whether some or all of the portions used are necessary to write programs using the Java language, are essential components of any Java language-based program, or promote compatibility and/or interoperability with the Java language. If you find that these considerations are applicable, they would weigh in favor of a finding that the use was fair.**

1   PRIMARY SOURCE:

2   ECF No. 1615 (Draft Fair Use Instructions) at 4-5 (modified; modifications identified as

3       additions in bold and deletions stricken through)

4

5   AUTHORITIES:

6   Federal Circuit Opinion, 750 F.3d at 1376-77 ("Next, while we have concluded that it was error

7       for the trial court to focus unduly on the functional aspects of the packages, and on

8       Google's competitive desire to achieve commercial "interoperability" when deciding

9       whether Oracle's API packages are entitled to copyright protection, we expressly noted

10      that these factors may be relevant to a fair use analysis.  While the trial court erred in

11      concluding that these factors were sufficient to overcome Oracle's threshold claim of

12      copyrightability, reasonable jurors might find that they are relevant to Google's fair use

13      defense under the second and third factors of the inquiry. *See Sega*, 977 F.2d at 1524-25

14      (discussing the Second Circuit's approach to "break[ing] down a computer program into

15      its component subroutines and subsubroutines and then identif[ying] the idea or core

16      functional element of each" in the context of the second fair use factor: the nature of the

17      copyrighted work). We find this particularly true with respect to those core packages

18      which it seems may be necessary for anyone to copy if they are to write programs in the

19      Java language. And, it may be that others of the packages were similarly essential

20      components of any Java language-based program.")

21  *Campbell*, 510 U.S. at 586-87 (the enquiry with respect to the third factor "harkens back to the

22      first of the statutory factors, for, as in prior cases, we recognize that the extent of

23      permissible copying varies with the purpose and character of the use.")

24  *Id.* at 587-88 ("a dearth of transformative character or purpose" may be shown if substantial

25      portion of second work was copied verbatim)

26  *Nicholls v. Tufenkian Import/Export Ventures*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005) (one of

27      the purposes of the copyright deposit requirement is to provide "sufficient material *to*

28      *identify the work* in which the registrant claims a copyright.") (emphasis added)

1    *Data General Corp. v. Grumman Systems Support Corp.,* 36 F.3d 1147, 1162 (1st Cir. 1994) ("a key

2        purpose of the Section 408(b) deposit requirement is *to prevent confusion* about *which work*

3        *the author is attempting to register"* and protect under the registration) (emphases added)

4    *Harper House, Inc. v. Thomas Nelson, Inc., 5* F.3d 536, 1993 WL 346546 at 25 *2 (9th Cir. 1993)

5        (unpublished) (comparisons of individual portions (pages) of parties' works rather than the

6        entire works is "inappropriate and misleadingly prejudicial"; works must be compared *as a*

7        *whole")* (emphasis added).

8    *NXIVM Corp. v. The Ross Institute,* 364 F.3d 471, 481 (2d Cir. 2004) (fair use analysis under third

9        factor must be based on entire work and not individual "modules"; "If plaintiffs' argument

10       were accepted by courts — and, not surprisingly, plaintiffs cite no authority to support it —

11       the third factor could depend ultimately on a plaintiff's cleverness in obtaining copyright

12       protection for the smallest possible unit of what would otherwise be a series of such units

13       intended as a unitary work.")

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**DISPUTED INSTRUCTION NO. 15**
**FAIR USE FOURTH FACTOR**
**OFFERED BY ORACLE**

3       The fourth factor you must consider in determining whether a use is fair is 4. the effect of

4   the Google's use upon the potential market for or value of the copyrighted works:. This is the

5   single most important element of fair use. Fair use is limited to copying by others which does not

6   materially impair the marketability of the works that are copied. This factor considers:

7           (1) the effect of Google's use upon the value of Oracle's copyrighted works;

8           (2) the effect of Google's use upon the potential market for Oracle's copyrighted works;

9   and

10          (3) whether unrestricted and widespread conduct of the sort engaged in by Google would

11  result in a substantially adverse impact on the potential market for Oracle's original works.

12          In considering this factor, you must take account not only of the harm to Oracle's original

13  works but also of harm to the market for derivative works.

14

15

16  **Authority:**  Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.18 (2007) (modified)

17  (citing 17 U.S.C. § 107); *Oracle Am.*, 750 F.3d at 1376 ("The fourth and final factor focuses on

18  'the effect of the use upon the potential market for or value of the copyrighted work.'" (quoting

19  *Harper & Row*, 471 U.S. at 566)); *id.* ("The Supreme Court has said that this factor is

20  'undoubtedly the single most important element of fair use.'" (quoting *Harper & Row*, 471 U.S.

21  at 566)); *id.* ("This factor reflects the idea that fair use 'is limited to copying by others which does

22  not materially impair the marketability of the work which is copied.'" (quoting *Harper & Row*,

23  471 U.S. at 566-67)); *id.* ("It [the fourth factor] requires that courts 'consider not only the extent

24  of market harm caused by the particular actions of the alleged infringer, but also whether

25  unrestricted and widespread conduct of the sort engaged in by the defendant would result in a

26  substantially adverse impact on the potential market for the original.'" (quoting *Campbell*, 510

27  U.S. at 590)); *Harper & Row*, 471 U.S. at 568 ("This inquiry must take account not only of harm

28  to the original but also of harm to the market for derivative works."); *Campbell*, 510 U.S. at 593

- 43 -        <span style="font-variant:small-caps">Parties' Joint Proposed Jury Instructions</span>

1    ("Evidence of substantial harm to it [a derivative] would weigh against a finding of fair use, be-

2    cause the licensing of derivatives is an important economic incentive to the creation of

3    originals.").

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 15**

**FAIR USE  —  FOURTH FACTOR**

The fourth and final fair use factor **identified in the Copyright Act** is the effect of the accused infringer's use on the potential market for or value of the copyrighted work.  This factor **weighs** [~~militates~~] against fair use if the accused use materially impairs the marketability or value of the copyrighted work.  **In connection with** this factor**, you should** consider [~~considers~~] not only the extent of any market harm caused by **Google's** [~~the accused infringer's~~] actions but also whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by **Google** [~~the accused infringer~~] would result in a substantially adverse impact on the potential market for the copyrighted work.  This factor also takes into account whether the accused work is offered or used as a substitute for the original copyrighted work.  Market harm to the value of the copyrighted work may be a matter of degree, and the importance of this factor will vary not only with the amount of harm shown, but also with the relative strength of the showing on the other factors.

**A use can be a fair use even if it causes some market harm.  In considering market harm, you should not consider any harm caused by a transformative use, which does not serve as a substitute for the original work.**

**As was the case with respect to the third factor, your consideration of this factor should be in the context of the copyrighted work as a whole, that is, all of the code included in the Asserted Works, including all 166 Java SE API packages and the virtual machine and other elements that are part of the Asserted Works.**

PRIMARY SOURCE:

ECF No. 1615 (Draft Fair Use Instructions) at 5 (modified; modifications identified as additions in bold and deletions stricken through)

1   AUTHORITIES:

2   17 U.S.C. § 107

3   Federal Circuit Opinion, 750 F.3d at _____

4   *Campbell*, 510 U.S. at 591 ("when a commercial use amounts to mere duplication of the entirety

5       of an original, it clearly "supersede[s] the objects," *Folsom v. Marsh*, *supra*, at 348, of the

6       original and serves as a market replacement for it, making it likely that cognizable market

7       harm to the original will occur. *Sony*, *supra*, at 451. But when, on the contrary, the

8       second use is transformative, market substitution is at least less certain, and market harm

9       may not be so readily inferred.")

10   *The Authors Guild v. Google Inc.*, 804 F.3d 202, 224 (2d Cir. 2015) (Leval, J.) ("But the

11       possibility, or even the probability or certainty, of some loss of sales does not suffice to

12       make the copy an effectively competing substitute that would tilt the weighty fourth factor

13       in favor of the rights holder in the original. There must be a meaningful or significant

14       effect "upon the potential market for or value of the copyrighted work." 17 U.S.C. §

15       107(4)."), *cert. denied,* __ U.S.L.W. _____ (U.S. Apr. 18, 2016)

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DISPUTED INSTRUCTION NO. 16**
**FAIR USE – ADDITIONAL FACTORS**

2

3          Oracle does not offer an Instruction No. 16 regarding additional "Fair Use – Additional

4    Factors."  Oracle believes that Disputed Instruction No. 16 is erroneous, unnecessary, prejudicial,

5    and (to the extent not erroneous or prejudicial) duplicative of other instructions.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 16**

**FAIR USE  —  ADDITIONAL FACTORS**

The four factors identified in the Copyright Act are nonexclusive and not exhaustive. In considering whether Google has proven that its use was a fair use, you can and should take into account any evidence or additional factors that you believe bear on whether Google's use of the declaring code and SSO of the 37 Java SE API packages was a fair use, as long as any additional factors you consider are consistent with the purpose of the fair use doctrine and the copyright laws, that is promoting the progress of science and the useful arts.

Among the possible additional factors that you may, but are not required to, consider are:  (1) whether a reasonable copyright owner would have consented to the use; (2) whether custom or public policy at the time would have defined the use as reasonable; (3) whether the use by Google of the declaring code or SSO of the 37 packages at issue was similar to uses by other parties; and (4) whether the use by Google benefits the public.  Each of these additional factors may weigh in favor of a finding that Google's use was a fair use.

AUTHORITIES:

17 U.S.C. § 107 ("the factors to be considered shall include—")

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.18 (2007) ("[5.] *insert any other factor that bears on the issue of fair use]*.") (emphasis in original)

Federal Circuit Opinion, 750 F.3d at 1373 ("Section 107 requires a case-by-case determination whether a particular use is fair, and the statute notes four nonexclusive factors to be considered.") (quoting *Harper & Row*)

*Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 549 (1985) ("Section 107 requires a case-by-case determination whether a particular use is fair, and the statute notes four nonexclusive factors to be considered.")

1    *Id.* at 560 ("The factors enumerated in the section are not meant to be exclusive: '[S]ince the

2            doctrine is an equitable rule of reason, no generally applicable definition is possible, and

3            each case raising the question must be decided on its own facts.'  House Report, at 65.")

4    *Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006) (fair use

5            "appropriate where a 'reasonable copyright owner' would have consented to the use, i.e.,

6            where the 'custom or public policy' at the time would have defined the use as reasonable";

7            citing legislative history)

8    *Authors Guild,* 804 F.3d at 212 ("the ultimate, primary intended beneficiary of copyright is the

9            public")

10   *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 141 (2d Cir. 1998) ("The

11           ultimate test of fair use, therefore, is whether the copyright law's goal of 'promot[ing] the

12           Progress of Science and useful Arts,' U.S. Const., art. I, § 8, cl. 8, 'would be better served

13           by allowing the use than by preventing it.'") (quoting *Arica Inst., Inc. v. Palmer*, 970 F.2d

14           1067, 1077 (2d Cir. 1992)

1

2

**DISPUTED INSTRUCTION NO. 17**
**FAIR USE – CONSIDERATION OF FACTORS**

3

4

5

Oracle does not offer an Instruction No. 17 regarding additional "Fair Use – Consideration of Factors."  Oracle believes that Disputed Instruction No. 17 is erroneous, incomplete, prejudicial, and (to the extent not erroneous or prejudicial) duplicative of other instructions.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 17**

**FAIR USE  —  CONSIDERATION OF FACTORS**

It is up to you to decide how much weight to give each of the [~~statutory~~] factors **discussed above**, but you must consider all of **the factors identified in the Copyright Act** [~~them~~].  All of these factors must be explored, discussed, and evaluated by you.  No single factor is dispositive.  Your evaluation of all factors must be weighed together in light of the purpose of copyright, which**,** as our Constitution states, is to promote the progress of science and the useful arts.  Some factors may weigh in favor of fair use and some against fair use, and you must decide, after giving the factors such weight as you find appropriate based on the evidence, whether or not, on balance, they **favor a finding** [~~predominate in favor~~] of fair use.

It is up to you to weigh the four **statutory** factors **and any other factors you deem relevant** together to decide whether or not Google has carried its burden to establish fair use.

PRIMARY SOURCE:

Draft Fair Use Instructions (ECF No. 1615) at 5 (modified; modifications identified as additions in bold and deletions stricken through)

AUTHORITIES:

17 U.S.C. § 107 ("the factors to be considered shall include—")

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.18 (2007) ("[5.] [insert any other factor that bears on the issue of fair use].")

Federal Circuit Opinion, 750 F.3d at 1373 ("Section 107 requires a case-by-case determination whether a particular use is fair, and the statute notes four nonexclusive factors to be considered.") (quoting *Harper & Row*)

**DISPUTED INSTRUCTION NO. 18**
**DERIVATIVE WORK**
**OFFERED BY ORACLE**

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work. The term A "derivative work" refers to is a work based upon on one or more pre-existing works, such as a [translation,] [ musical arrangement], [dramatization, ] [fictionalization, ] [motion picture version, ] [sound recording, ] [art reproduction, ] [abridgement, ] [condensation] [, or any other form in which the pre-existing a work may be is recast, transformed, or adapted]. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work." Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

If the copyright owner exercises the right to [create] [allow others to create] a derivative work based upon the copyrighted work, this derivative work may also be copyrighted. Only what was newly created, such as the editorial revisions, annotations, elaborations, or other modifications to the pre-existing work, is considered to be the derivative work.

Copyright protection of a derivative work covers only the contribution made by the author of the derivative work. If the derivative work incorporates [pre-existing work by others] [work in the public domain], the derivative author's protection is [limited to elements added by the derivative author to the [pre-existing work of others] [public domain work]] [, or] [limited to the manner in which the derivative author combined the [pre-existing elements by other persons] [pre-existing elements in the public domain work] into the derivative work].

The owner of a derivative work may enforce the right to exclude others in an action for copyright infringement.

**Authority:** 17 U.S.C. § 101 (quoted verbatim) ("A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment,

1   condensation, or any other form in which a work may be recast, transformed, or adapted.  A work

2   consisting of editorial revisions, annotations, elaborations, or other modifications which, as a

3   whole, represent an original work of authorship, is a 'derivative work.'"); Ninth Circuit Manual

4   of Model Jury Instructions – Civil No. 17.13 (2007) (modified).

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 18**

**COPYRIGHT  —  DERIVATIVE WORK**

Under the copyright laws, a work is known as a "derivative work" if it is based on one or more pre-existing works.  Examples of derivative works are translations, musical arrangements, dramatizations, fictionalizations, motion picture versions, sound recordings, art reproductions, abridgements, condensations, recastings or adaptations of a pre-existing work.

Not all works that include some elements of a pre-existing work are necessarily derivative works.  In order to be a "derivative work" of the pre-existing work, the new work must be based in whole or in substantial part upon the pre-existing work and must incorporate portions of the pre-existing work that are covered by the copyright in the pre-existing work.

The copyright in a derivative work extends only to the new material contained in the derivative work, as distinguished from any material from the pre-existing work that is included in the derivative work.

AUTHORITIES:

17 U.S.C. § 101 (definition of "derivative work")

17 U.S.C. § 103(b) ("The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.")

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.13 (2007) (modified)

*Micro Star v. Formgen*, 154 F.3d 1107, 1110 (9th Cir. 1998) ("To narrow the statute to a manageable level, we have developed certain criteria a work must satisfy in order to qualify as a derivative work.  One of these is that a derivative work must exist in a 'concrete or permanent form,' *Galoob*, 964 F.2d at 967 (internal quotation marks omitted), and must substantially incorporate protected material from the preexisting work, *see Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984)").

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

1    *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("The little available authority

2          suggests that a work is not derivative unless it has been substantially copied from the prior

3          work.")

4    *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1079 (9th Cir. 2000) ("We agree with Nimmer that

5          '[t]he reference to "preexisting works" in this definition, as compared with the reference

6          to "preexisting materials" in the definition of a "compilation" implies that a derivative

7          work, unlike a compilation, must incorporate that which itself is the subject of copyright.'

8          1 NIMMER § 3.01, at 3-3 n.10.")

9    1 *Nimmer On Copyright* § 3.01  ("It follows then, that any work based in whole, or in substantial

10         part, upon a pre-existing (or 'underlying') work, if it satisfies the requirements of

11         originality discussed below and is not itself an infringing work, will be separately

12         copyrightable.") (footnotes omitted)

13   1 *Nimmer On Copyright* § 3.01  ("It should be noted, however, that the term derivative work in a

14         technical sense does not refer to all works that borrow in any degree from pre-existing

15         works.  A work is not derivative unless it has substantially copied from a prior work.")

16         (footnotes omitted)

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 19**

**DAMAGES  —  INTRODUCTION**


I will now instruct you about the measure of damages for Oracle's copyright claim.

**DISPUTED INSTRUCTION NO. 20**
**DAMAGES**
**OFFERED BY ORACLE**

Having rejected Google's defense of fair useIf you find for the plaintiff on the plaintiff's copyright infringement claim, you must now determine the plaintiff'sOracle's damages. The plaintiffOracle is entitled to recover the actual damages suffered as a result of the infringement. In addition, the plaintiffOracle is also entitled to recover any profits of the defendantGoogle attributable to the infringement, to the extent you did not account for those profits in determining actual damages. The plaintiffOracle must prove damages by a preponderance of the evidence.

**Authority:** Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.22 (Damages) (modified); Stipulated Jury Instr. No. 51, ECF No. 539 at 149.

## GOOGLE'S PROPOSED INSTRUCTION NO. 20

## DAMAGES — INTRODUCTION

**Oracle** [~~The plaintiff~~] is entitled to recover **any** [~~the~~] actual damages **it** suffered as a result of **Google's** [~~the~~] infringement.  In addition **to its actual damages, if any, Oracle** [~~the plaintiff~~] is also entitled to recover any profits of **Google** [~~the defendant~~] **that are** attributable to the infringement**, to the extent you do not account for those profits in determining actual damages**.

**Oracle** [~~The plaintiff~~] must prove **its** damages by a preponderance of the evidence.

**The purpose of an award of damages and/or profits is to provide compensation to the copyright owner, and not to impose a penalty on the infringer**.

PRIMARY SOURCE:

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.22 (2007) (modified; modifications identified as additions in bold and deletions stricken through)

AUTHORITIES:

17 U.S.C. § 504(a)

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 391 (1940) ("The purpose is thus to provide just compensation for the wrong, not to impose a penalty by giving the copyright proprietor profits which are not attributable to the infringement")

**DISPUTED INSTRUCTION NO. 21**
**ACTUAL DAMAGES**
**OFFERED BY ORACLE**

Oracle ~~The copyright owner~~ is entitled to recover the actual damages suffered as a result of the infringement. Actual damages in the form of lost profits are the amount that Oracle would have accrued but for Google's infringement.  Oracle has the burden of proof by a preponderance of the evidence to show certainty in the fact of damage and a reasonable approximation of the amount of damages. ~~means the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work. That amount also could be represented by the lost license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's work.~~

**Authority:**  Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.23 (2007) (modified); 5 Nimmer on Copyright § 14.02[A][1] ("[T]he plaintiff's damages may be said to equal the profits that the plaintiff might have accrued but for the defendant's infringement."); *Palmer v. Conn. Ry. & Lighting Co.*, 311 U.S. 544, 561 (1941) ("Certainty in the fact of damage is essential. Certainty as to the amount goes no further than to require a basis for a reasoned conclusion." (citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406-08 (1940))); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("'[D]amages are not rendered uncertain because they cannot be calculated with absolute exactness,' yet, a reasonable basis for computation must exist." (quoting *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927))), *superseded by statute on other grounds as stated in DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) ("Under § 504(b), actual damages must be suffered 'as a result of the infringement' …."); *id.* ("actual damages" can include, among other things, "lost license and renewable fees and

lost profits"); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 827 (9th Cir. 1985) (affirming district court award's award of actual damages in the amount of "the value of a license" for the copyrighted work based on evidence that the defendant's infringement lost the plaintiff an "opportunity to license" the work); *id.* at 827-28 ("Since defendants' unauthorized use destroyed the value of the copyrighted work for this purpose [licensing], plaintiff was entitled to recover that value as damages.").

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 21**

**DAMAGES — ACTUAL DAMAGES**

**A** [~~The~~] copyright owner **whose rights have been infringed** is entitled to recover **any** [~~the~~] actual damages **it** suffered as a result of the infringement.  Actual damages means the amount of money adequate to compensate the copyright owner for **any** [~~the~~] reduction **in** [~~of~~] the fair market value of the copyrighted work caused by the infringement.  The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work.  That amount also could be represented by the **plaintiff's** lost **profits, which is the amount of profits the plaintiff would have earned absent the defendant's unauthorized use of the plaintiff's work** [~~license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's work~~].

**To be entitled to an award of actual damages, Oracle must establish with reasonable probability (1) that Google's infringement caused it to lose revenue, and (2) the amount of that lost revenue.  You may not make an award of actual damages that is unduly speculative.  If you conclude that Oracle would have incurred increased expenses related to its damages, such as increased overhead costs, you must deduct those expenses when calculating Oracle's actual damages.**

PRIMARY SOURCE:

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.23 (2007) (modified; modifications identified as additions in bold and deletions stricken through)

AUTHORITIES:

17 U.S.C. § 504(b)

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) ("As the Seventh Circuit noted, '[i]t is not improper for a jury to consider either a hypothetical lost license

1   fee or the value of the infringing use to the infringer to determine actual damages,

2   provided the amount is not based on "undue speculation."'  *McRoberts Software*, 329 F.3d

3   at 566.")

4   *Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir. 1983) ("When a plaintiff contends that lost sales

5   revenue would have been all profit, the contention is sufficiently improbable to require

6   him to come forward with substantiating evidence")

1
2

**DISPUTED INSTRUCTION NO. 22**
**DAMAGES – LOST LICENSING REVENUE**

3

    Oracle does not offer an Instruction No. 22 regarding additional "Damages – Lost

4

Licensing Revenue."  Oracle believes that Disputed Instruction No. 22 is erroneous, unnecessary,

5

prejudicial, and (to the extent not erroneous or prejudicial) duplicative of other instructions.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 22**

**DAMAGES — LOST LICENSING REVENUE**

Oracle also seeks to recover as damages licensing revenue from products other than the two Asserted Works (which are Java 2 SE 1.4 and Java 2 SE 5.0) that Oracle claims it lost as a result of Google's infringement, such as licensing revenue for its Java ME or J2ME product. Oracle may only recover such damages if it proved by credible evidence a relationship between the Asserted Works and such other products and that there was a necessary, immediate and direct causal connection between the lost licensing revenue from the other products and Google's infringement. In other words, the lost Java ME or J2ME licensing revenues must be proven to be directly attributable to Google's use of the declaring code and SSO of the 37 Java SE API packages of the Asserted Works. Oracle may also recover such damages only if it also proved the specific amount of such lost licensing fees.

AUTHORITIES:

*Cohen v. United States*, 100 Fed. Cl. 461, 481-82 (Ct. Cl. 2011) ("As set forth in Sunset Lamp, plaintiff's burden of proof to recover actual damages for lost sales of non-infringed items is as follows:

> Plaintiff will have to demonstrate by credible evidence a relationship between sales of non-infringed [works] and sales of the infringed [works], and further show which sales were prevented as a result of defendant['s] infringement. The requirement [is] that the amount of damages allegedly suffered by the plaintiff bear a "necessary, immediate and direct causal connection" to the infringement . . . . Furthermore, [plaintiff] will need to show that amount specifically rather than rely on speculation. If there is no evidence to establish the amount of such damages, proof merely that there were such damages will not support an award. *Zenith Elecs. Corp. v. WH-TV Broad. Corp.,* 395 F. 3d 416, 420 (7th Cir. 2005) (rejecting a party's "internal projections, which rest on its say-so rather than statistical analysis" as a basis for damages claim)"

1

2   *TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732-33 (10th Cir. 1993) (rejecting damages

3       expert opinion that "failed to demonstrate any basis for concluding that another

4       individuals' opinion on a subjective financial prediction was reliable")

5   *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.,* 249 F. Supp. 2d 622, 695 (E.D. Pa. 2003),

6       *amended* 268 F. Supp. 2d 448 (rejecting damages expert's reliance on projection by

7       plaintiff, who had incentive to inflate predicted financial success)

8   *Polar Bear,* 384 F. 3d at 710 ("It is too speculative to say that Timex's failure to pay a modest

9       license fee was the cause of Polar Bear's business failure.")

10  *TAS Distrib. Co. v. Cummins Engine Co.,* 491 F.3d 625, 633 (7th Cir. 2007) ("as a general rule,

11      expected profits of a new commercial business" or new product lines "are considered too

12      uncertain, speculative and remote to permit recovery")

13  *MindGames, Inc. v. Western Pub. Co.,* 218 F.3d 652, 658 (7th Cir. 2000) ("Damages must be

14      proved, and not just dreamed"), *cert. denied,* 531 U.S. 1126, 121 S. Ct. 882 (2001)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 23**
**DEFENDANT'S PROFITS**
**OFFERED BY ORACLE**

In addition to actual damages, Oracle~~the copyright owner~~ is entitled to any profits of Google~~the defendant~~ attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

Oracle has the burden to show by a preponderance of evidence that each item of revenue it seeks is reasonably associated with the infringement. If Oracle has met its burden, then Google has the burden to demonstrate by a preponderance of the evidence its deductible expenses and the elements of profits attributable to factors other than the copyrighted works. ~~You may make an award of the defendant's profits only if you find that the plaintiff showed a causal [relationship] [nexus] between the infringement and the [profits generated indirectly from the infringement] [defendant's gross revenue].~~

Deductible expenses are those expenses incurred by Google that actually helped to produce the revenue at issue. Google's ~~The defendant's~~ profit is determined by ~~[deducting]~~ [subtracting] ~~all~~ deductible expenses from the ~~defendant's gross~~ revenue reasonably associated with the infringement.

~~The defendant's gross revenue is all of the defendant's receipts from the [use] [sale] of a [[product] [work]] [[containing or using the copyrighted work] [associated with the infringement]]. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.~~

~~Expenses are all [operating costs] [overhead costs] [and] production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.~~

Unless you find ~~that~~ a portion of the profits reasonably associated with the infringement are ~~from the [use] [sale] of a [product] [work] containing or using the copyrighted work~~ is attributable to factors other than Oracle's ~~use of the~~ copyrighted works, all of the profits ~~is~~ are to be attributed to the infringement. What is required is not mathematical exactness but only a reasonable approximation. If the evidence is sufficient to provide a fair basis of division to

1   apportion the profits that are due to factors other than the infringing elements, you should

2   apportion the profits between those attributable to the infringing elements and those attributable

3   to other factors.   The defendant has the burden of proving the [portion] [percentage] of the profit,

4   if any, attributable to factors other than [copying] [infringing] the copyrighted work.

5

6

7   **Authority:**  Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.24 (2007)

8   (modified); 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover … any profits of the

9   infringer that are attributable to the infringement and are not taken into account in computing the

10   actual damages.  In establishing the infringer's profits, the copyright owner is required to present

11   proof only of the infringer's gross revenue, and the infringer is required to prove his or her

12   deductible expenses and the elements of profit attributable to factors other than the copyrighted

13   work."); *Polar Bear Prods., Inc.*, 384 F.3d at 715 ("[I]t nevertheless remains the duty of the

14   copyright plaintiff to establish a causal connection between the infringement and the gross

15   revenue ***reasonably associated*** with the infringement." (emphasis added)); *id.* at 711

16   (Section 504(b) sets up a "two-step framework": "1) the copyright claimant must first show a

17   causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is

18   shown, the infringer bears the burden of apportioning the profits that were not the result of

19   infringement."); *id.* at 712 ("The standard is straightforward: a copyright plaintiff is bound to no

20   more and no less than its statutory obligation to demonstrate a causal nexus between the

21   infringement and the profits sought."); ECF No. 1321 (Willfulness Order) at 6 ("It is true that

22   *Google has the burden to prove that its claimed deductible expenses actually helped generate the*

23   *revenue sought by the copyright owner*." (emphasis added)); *id.* at 9 (explaining that "all other

24   categories of deductible expenses [besides income taxes] will be allowed, even for a 'deliberate

25   plagiarist,' so long as it is proven they contribute to generating the infringement revenue"); *id.*

26   at 5 ("Nevertheless, [*L.P. Larson, Jr., Co. v. William Wrigley, Jr. Co.*, 277 U.S. 97 (1928)] found

27   that even if a willful infringer was entitled to deduct the expenses that were necessary to produce

28   the infringing product from his gross revenue, 'it did not follow that it should be allowed what it

paid for the chance to do what it knew it had no right to do."); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985) ("[A] deduction for overhead should be allowed only when the infringer can demonstrate that the overhead expense was of actual assistance in the production, distribution, or sale of the infringing product." (quotation marks, brackets omitted)); *id.* ("Nonetheless, the defendant bears the burden of explaining, at least in general terms, how claimed overhead actually contributed to the production of the infringing work."); *id.* at 518 ("The burden of proving apportionment, (i.e., the contribution to profits of elements other than the infringed property), is the defendant's."); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940) ("what is required is not mathematical exactness but only a reasonable approximation."); *id.* at 402 ("apportionment of profits can be had where it is clear that all the profits are not due to the use of the copyrighted material, *and the evidence is sufficient to provide a fair basis of division* so as to give to the copyright proprietor all the profits that can be deemed to have resulted from the use of what belonged to him." (emphasis added)); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985) ("where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment." (quotation marks omitted)).

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 23**

**DAMAGES — DEFENDANT'S PROFITS —**

**INDIRECT PROFITS / CAUSAL LINK**

> **NOTE:** **Google submits its proposed instructions 23, 24 and 25 without prejudice to and without waiving Google's position that disgorgement of profits is an equitable remedy that should be determined by the Court rather than a jury.**

In addition to **any award of** actual damages, **Oracle** [the copyright owner] is **also** entitled to any profits [of the defendant] attributable to the infringement **earned by Google**.  You may not include in an award of profits any amount that you took into account in determining actual damages.

**Oracle does not seek to recover for any profits of Google generated by the sale of the Android operating system, which would be called "direct profits."  Instead, Oracle seeks as award of what are called "indirect profits," which are profits generated from the sales of products or services other than the Android operating system itself.**

You may make an award of **Google's indirect** [the defendant's] profits **that Oracle claims are attributable to the infringement** only if you find that **Oracle proved** [the plaintiff showed] **that there was** a causal **link or nexus** [[relationship] [nexus]] between the infringement and the **gross revenue of Google from which Oracle seeks to recover Google's profits** [[profits generated indirectly from the infringement] [defendant's gross revenue]].  **In other words, Oracle must, as a threshold issue, prove that the claimed revenues earned by Google were caused, at least partially, by the use in Android of the declaring code and SSO of the 37 Java SE API packages.**

**Oracle's proof on this issue cannot be based on speculation.  Oracle cannot carry its burden by showing only that the declaring code and SSO of the 37 Java SE API packages were included in Android; it must demonstrate, through evidence, that the amount of profits earned by Google increased because of the use of the declaring code and SSO of the**

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

**37 Java SE API packages.  Oracle must prove, in other words, that because of the presence in Android of the declaring code and SSO of the 37 Java SE API packages, Google earned profits that it otherwise would not have earned.  Oracle cannot recover profits earned by Google that are only remotely and speculatively attributable to the presence of the declaring code and SSO.**

PRIMARY SOURCE:

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.24 (2007) (modified; modifications identified as additions in bold and deletions stricken through)

AUTHORITIES:

17 U.S.C. § 504(b)

*Harper & Row*, 471 U.S. at 567 ("once a copyright holder establishes with reasonable probability the existence of a causal connection between the infringement and a loss of revenue, the burden properly shifts to the infringer to show that this damage would have occurred had there been no taking of copyrighted expression.")

*Polar Bear*, 384 F.3d at 711 ("As we elaborated in *Mackie*, however, because the amount of profits attributable to the infringement in an indirect profits case is not always clear, 'we have held that a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered.'  *Mackie*, 296 F.3d at 914.  'When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner.'  4 NIMMER ON COPYRIGHT § 14.03, 14-34; see also *Frank I*, 772 F.2d at 517 ("a court may deny recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement").")

*Mackie v. Rieser,* 296 F.3d 909, 914 (9th Cir. 2002) ("Nevertheless, in our prior decisions, we have held that a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered.")

1    *Id.* at 915 ("Although our discussion in *Frank I* of the relationship between causation principles

2    and indirect profits damages was somewhat opaque, our holding strongly implied that a

3    district court must conduct a threshold inquiry into whether there is a legally sufficient

4    causal link between the infringement and subsequent indirect profits.")

5    *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985) ("a court may

6    deny recovery of a defendant's profits if they are only remotely or speculatively

7    attributable to the infringement.")

8    *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985) ("where it

9    is clear, as it is in this case, that not all of the profits are attributable to the infringing material,

10    the copyright owner is not entitled to recover all of those profits merely because the infringer

11    fails to establish with certainty the portion attributable to the non-infringing elements.  'In

12    cases such as this where an infringer's profits are not entirely due to the infringement, and the

13    evidence suggests some division which may rationally be used as a springboard it is the duty

14    of the court to make some apportionment.'  *Orgel v. Clark Boardman Co.*, 301 F.2d 119, 121

15    (2d Cir. 1962).")

16    *Oracle Corp. v. SAP AG,* 765 F. 3d 1081, 1087 (9th Cir. 2014) ("'[A] plaintiff in a § 504(b) action

17    must establish [a] causal connection' 'between the infringement and the monetary remedy

18    sought.'") (citation omitted)

19

20

21

22

23

24

25

26

27

28

1

**DISPUTED INSTRUCTION NO. 24**
**DAMAGES – DEFENDANT'S PROFITS – DEDUCTIONS**

2

3          Oracle does not offer an Instruction No. 24.  Oracle's Disputed Instruction No. 23 is a

4   single, comprehensive, and unified instruction for infringers' profits.  Google's proposed

5   Disputed Instruction No. 24 is also erroneous and prejudicial.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 24**

**DAMAGES — DEFENDANT'S PROFITS —**

**INDIRECT PROFITS / DEDUCTIONS**

**NOTE:** **Google submits its proposed instructions 23, 24 and 25 without prejudice to and without waiving Google's position that disgorgement of profits is an equitable remedy that should be determined by the Court rather than a jury.**

**If you find that Oracle has proven that there was a causal link between the infringement and any gross revenues earned by Google, you should determine the amount of Google's profit that you may award to Oracle by starting with the gross revenue that Oracle has proved was caused by the infringement, and then subtracting the expenses incurred by Google in producing that revenue.**

**Google's** [The defendant's] gross revenue is all of **its** [the defendant's] receipts from the use **or** sale of **the products or services as to which Oracle has proven the causal link** [[[product] [work]] [[containing or using the copyrighted work] [associated with the infringement]].  **Oracle** [The plaintiff] has the burden of proving **the amount of Google's** [the defendant's] gross revenue by a preponderance of the evidence.

**The** expenses **to be subtracted from that gross revenue** are all operating costs, overhead costs, and production costs incurred in generating the [defendant's] revenue.  Google [The defendant] has the burden of proving **the amount of its deductible** [the defendant's] expenses by a preponderance of the evidence.

PRIMARY SOURCE:

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL No. 17.24 (2007) (modified; modifications identified as additions in bold and deletions stricken through)

1  AUTHORITIES:

2  17 U.S.C. § 504(b)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**DISPUTED INSTRUCTION NO. 25**
**DAMAGES – DEFENDANT'S PROFITS – ATTRIBUTION OTHER FACTORS**

3

    Oracle does not offer an Instruction No. 25.  Oracle's Disputed Instruction No. 23 is a

4

single, comprehensive, and unified instruction for infringers' profits.  Google's proposed

5

Disputed Instruction No. 25 is also erroneous and prejudicial.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 25**

**DAMAGES — DEFENDANT'S PROFITS —**

**INDIRECT PROFITS / ATTRIBUTION TO OTHER FACTORS**

**NOTE:**   **Google submits its proposed instructions 23, 24 and 25 without prejudice to and without waiving Google's position that disgorgement of profits is an equitable remedy that should be determined by the Court rather than a jury.**

Google [~~The defendant~~] **also** has the burden of proving **by a preponderance of the evidence** the portion of the profit, if any, **that is** attributable to factors other than **its infringement of** [~~infringing~~] the copyrighted work.  **To the extent that Google proves that some of its profits are attributable to factors other than the declaring code and SSO of the 37 Java SE API packages, you should not include those profits in any award.  Where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, Oracle is not entitled to recover all of those profits merely because Google fails to establish with certainty the portion attributable to the non-infringing elements.  If the evidence suggests some division that may rationally be used to make a reasonable and just approximation of the portion of the profits that are due to factors other than the infringing elements, it is your duty to apportion the profits as between those profits attributable to the infringing elements (if any) and those profits attributable to other factors.  You may only award as damages to Oracle the portion attributable to the use of the declaring code and SSO of the 37 Java SE API packages.**

[~~Unless you find that a portion of the profit from the [use] [sale] of a [product][work] containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.~~]

PRIMARY SOURCE:

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.24 (2007) (modified; modifications identified as additions in bold and deletions stricken through)

AUTHORITIES:

17 U.S.C. § 504(b)

*Cream Records,* 754 F.2d at 828-829 ("where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements. 'In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.' *Orgel v. Clark Boardman Co.*, 301 F.2d 119, 121 (2d Cir. 1962).")

*Frank Music,* 772 F.2d at 518 ("The district court was correct that mathematical exactness is not required. However, a reasonable and just apportionment of profits is required.")

*Polar Bear,* 384 F.3d at 712 (citing *Cream Records'* quotation of *Sheldon* as requiring only a "reasonable approximation")

*Abend v. MCA, Inc.*, 863 F. 2d 1445, 1480 (9th Cir. 1988) ("[Plaintiff] can receive only the profits attributable to the infringement."; "We likewise recognize that courts cannot be expected to determine with "mathematical exactness" an apportionment of profits. We require only a "reasonable and just apportionment.")

*Polar Bear,* 384 F.3d at 708 ("recoverable profits must be 'attributable to infringement.'") (quoting 17 U.S.C. § 504(b))

**DISPUTED INSTRUCTION NO. 26**
**DEFENDANT'S PROFITS – WILLFULNESS**
**OFFERED BY ORACLE**

I have instructed you that deductible expenses are those expenses incurred by Google that actually helped to produce the revenues at issue, and that Google has the burden of proving its expenses by a preponderance of the evidence.  In deciding whether or not to deduct operating or overhead expenses proven by Google in making the infringer's profits calculation, you may take into account whether or not Google is a willful infringer.  If you find that Google is a willful infringer, you may choose not to deduct some or all of Google's operating or overhead expenses associated with Android.  The purpose of disallowing such deductions is to prevent willful infringers from using the benefits derived from another's copyrighted material to subsidize other operations of the company, and to ensure that a willful infringer does not benefit in any way from the infringement.


**Authority:**  Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.36, Comment (2007) (modified) ("Generally, deductions of defendant's expenses are denied where the defendant's infringement is willful or deliberate.").  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) ("A portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate.") (citing *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331 (9th Cir. 1984) and *Sammons v. Colonial Press*, 126 F.2d 341, 351, 350 (1st Cir. 1942)).  *See also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000) ("non-willful infringers [may be allowed to] deduct the income taxes and management fees that they paid relating to the infringing song.").  *Williams v. Bridgeport Music*, No. LA CV13-06004 JAK (C.D. Cal.) (jury instruction filed at ECF 1306-3).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED JURY INSTRUCTION NO. 26**

**DAMAGES — DEFENDANT'S PROFITS — WILLFULNESS**

Google does not believe an instruction on the subject covered by Oracle's proposed instruction number 26 is appropriate.  Google does not seek to deduct income taxes or excess profits taxes in calculating profits, and the instruction is therefore improper and unnecessary.

AUTHORITIES:

ECF No. 1321 (Sept. 18, 2015 Order Re Willfulness And Bifurcation) at 11-12

**DISPUTED INSTRUCTION NO. 27**
**STATUTORY DAMAGES**
**OFFERED BY ORACLE**

Having rejected Google's fair use defense, Oracle is also entitled to ~~If you find for the plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages. The plaintiff seeks~~ a statutory damage~~s~~ award, established by Congress for ~~[[the work infringed] [~~each work infringed~~]]~~. ~~Its~~ The purpose of statutory damages is to penalize the infringer and deter future violations of the copyright laws.

The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude ~~was~~ is infringed.

~~[However, if you find the infringement was innocent, you may award as little as $200 for each work innocently infringed.]~~

~~[~~However, if you find the infringement ~~was~~ is willful, you may award as much as $150,000 for each work willfully infringed.~~]~~

**Authority:** Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.25 (2007) (modified) (citing 17 U.S.C. § 504(c)); 17 U.S.C. § 504(c)(1) ("Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just…."); *id.* § 504(c)(2) ("In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."); ECF No. 51 (Google Answer) (not pleading an innocent copying defense).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 27**

**DAMAGES — STATUTORY DAMAGES**

**Under the Copyright Act, Oracle may also recover, instead of an award of actual damages and/or profits, an award of statutory damages in an amount determined by Congress for each work infringed.** [If you find for the plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages. The plaintiff seeks a statutory damage award, established by Congress for [[the work infringed] [each work infringed]]. **The** [Its] purpose **of an award of statutory damages** is to penalize the infringer and deter future violations of the copyright laws.

**Subject to the exceptions I will describe in a moment,** the amount you may award as statutory damages **must be** [is] not less than $750, nor more than $30,000, for each work **that** [you conclude] was infringed. **In determining the amount of statutory damages to award within this range, you should be guided by what you believe is just in this case, considering the nature of Google's infringement and the circumstances of the infringement. Because Oracle has proven infringement of two different works, namely Java 2 SE versions 1.4 and 5.0, Oracle is entitled to two awards of statutory damages, one for each work.**

However, if you find the infringement was innocent, you may award as little as $200 for each work innocently infringed. [However,] If you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

**For purposes of awarding statutory damages, you may find Google's** [An] infringement [is considered] **to be** innocent **if Google** [when the defendant] has proved [both of the following elements] by a preponderance of the evidence that **it** [the defendant] was not aware that its [acts] **use in Android of the declaring code and SSO of the 37 Java 2 SE API packages** constituted infringement of **Oracle's** [the] copyrights, and [the defendant] **that it** had no reason to believe that its **use in Android of the declaring code and SSO of the 37 Java 2 SE API packages** [acts] constituted an infringement of **Oracle's** [the] copyrights.

1

2   PRIMARY SOURCE:

3   NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.25 (modified;

4       modifications identified as additions in bold and deletions stricken through)

5   NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.26 (modified;

6       modifications identified as additions in bold and deletions stricken through)

7

8   AUTHORITIES:

9   17 U.S.C. § 504(c)

10  NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.25 Comment (citing

11      *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) for proposition that

12      trier of fact must be guided by "what is just in the particular case, considering the nature

13      of the copyright, the circumstances of the infringement and the like" restrained only by the

14      qualification it be within the prescribed maximum or minimum)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

**DISPUTED INSTRUCTION NO. 28**
**WILLFUL INFRINGEMENT**
**OFFERED BY ORACLE**

~~An~~ Google's copyright infringement is considered willful if Oracle proves ~~when the plaintiff has proved~~ both of the following elements by a preponderance of the evidence:

1. Google ~~the defendant engaged in acts that~~ infringed the copyright to one or more of Oracle's copyrighted works; and

2. Google either ~~the defendant~~ knew ~~that those~~its acts infringed the copyright or Google's actions were the result of reckless disregard for, or willful blindness to, Oracle's copyrights.

**Authority:** Ninth Circuit Manual of Model Jury Instructions – Civil No. 17.27 (2007) (modified); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."); *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) ("We have explained that a finding of 'willfulness' in the copyright context can be based on either 'intentional' behavior or merely 'reckless' behavior, and that to prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." (internal citation, quotation marks, and brackets omitted)); *id.* ("To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights."); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) ("The term 'willful' as used in copyright infringement case … can be based on either intentional behavior or merely reckless behavior." (quotation marks omitted)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GOOGLE'S PROPOSED JURY INSTRUCTION NO. 28**

**DAMAGES — STATUTORY DAMAGES — WILLFULNESS**

**You should consider the issue of willfulness only in connection with Oracle's request for an award of statutory damages.**

**For purposes of awarding statutory damages,** a copyright owner proves **that** an **infringement** [~~infringer~~] was willful if it shows **that** the infringer acted with knowledge that its conduct constituted an act of infringement.  **In other words, you may find Google's infringement to be willful only if you find that Oracle proved that Google knew, at the time it included in Android the declaring code and SSO of the 37 Java SE API packages, that the use was an infringement of Oracle's copyrights.**

PRIMARY SOURCE:

ECF No. 1321 (Sept. 18, 2015 Order Re Willfulness And Bifurcation) at 12 (modified;
 modifications identified as additions in bold and deletions stricken through)

AUTHORITIES:

NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS – CIVIL NO. 17.27 (2007) ("the
 defendant knew that those acts infringed the copyright")

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335–36, n.3 (9th Cir. 1990) ("Neither
 the Copyright Act or its legislative history defines 'willful.'  However, '[i]t seems clear
 that as here used "willfully" means with knowledge that the defendant's conduct
 constitutes copyright infringement.'  3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* §
 1404[B], at 14-40.2-.3 (1989).")

1

2     Dated: April 20, 2016                              ORRICK, HERRINGTON & SUTCLIFFE LLP

3

4                                                  By:    /s/ Andrew D. Silverman

5                                                        KAREN G. JOHNSON-MCKEWAN
                                                        ANNETTE L. HURST
6                                                       GABRIEL M. RAMSEY
                                                        PETER A. BICKS
7                                                       LISA T. SIMPSON

8                                                       Attorneys for Plaintiff
                                                        ORACLE AMERICA, INC.
9

10    Dated:  April 20, 2016                             KEKER & VAN NEST LLP

11

12                                                 By:    /s/ Robert A. Van Nest
                                                        ROBERT A. VAN NEST
13                                                      CHRISTA M. ANDERSON
                                                        DANIEL PURCELL

14                                                     Attorneys For Defendant
                                                        GOOGLE INC.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Andrew D. Silverman, am the ECF User whose ID and password are being used to file the **PARTIES' JOINT PROPOSED JURY INSTRUCTIONS**.  I hereby attest that Bruce W. Baber, one of the counsel for Google Inc., has concurred in this filing.

Date:  April 20, 2016                              */s/ Andrew D. Silverman*