ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>                    Plaintiff,<br><br>        v.<br><br>GOOGLE INC.<br><br>                    Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S MEMORANDUM OF POINTS AND AUTHORITIES REGARDING DISPUTED JURY INSTRUCTIONS**<br><br>Trial Date: May 9, 2016<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

# TABLE OF CONTENTS

Page

**INTRODUCTION & GENERAL OBJECTIONS** ...................................................... 1

I.     DISPUTED INSTRUCTION NO. 1: COPYRIGHTS AT ISSUE AND EXCLUSIVE RIGHTS OF COPYRIGHT OWNERS ...................................... 1

II.    DISPUTED INSTRUCTION NO. 2: COPYRIGHT DEFINED ...................................... 3

III.   DISPUTED INSTRUCTION NO. 3: JAVA PROGRAMMING LANGUAGE ............ 4

IV.   DISPUTED INSTRUCTION NO. 4: COPYING FROM THIRD PARTIES ................ 5

V.    DISPUTED INSTRUCTION NO. 5: FAIR USE INTRODUCTORY INSTRUCTION/ISSUE TO BE DECIDED ...................................................... 7

VI.   DISPUTED INSTRUCTION NO. 6: FAIR USE GENERALLY ............................... 9

VII.  DISPUTED INSTRUCTION NO. 7: BACKGROUND AND POLICY ...................... 11

VIII. DISPUTED INSTRUCTION NO. 8: STATUTORY LANGUAGE ............................ 13

IX.   DISPUTED INSTRUCTION NO. 9: FACTORS TO CONSIDER ............................ 14

X.    DISPUTED INSTRUCTION NO. 10: FAIR USE FACTOR ONE ........................... 16

XI.   DISPUTED INSTRUCTION NO. 11: FIRST FACTOR - TRANSFORMATIVE ...... 20

XII.  DISPUTED INSTRUCTION NO. 12: COMMERCIAL USE ................................... 27

XIII. DISPUTED INSTRUCTION NO. 13: SECOND FACTOR ...................................... 29

XIV. DISPUTED INSTRUCTION NO. 14: THIRD FACTOR ......................................... 34

XV.  DISPUTED INSTRUCTION NO. 15: FOURTH FACTOR ...................................... 36

XVI. DISPUTED INSTRUCTION NO. 16: ADDITIONAL FACTORS ........................... 40

XVII. DISPUTED INSTRUCTION NO. 17: CONSIDERATION OF FACTORS ............... 44

XVIII. DISPUTED INSTRUCTION NO. 18: DERIVATIVE WORK .................................. 44

XIX. STIPULATED INSTRUCTION NO. 19: DAMAGES – INTRODUCTION .............. 45

XX.  DISPUTED INSTRUCTION NO. 20: DAMAGES (INTRODUCTION) ................... 45

XXI. DISPUTED INSTRUCTION NO. 21: ACTUAL DAMAGES .................................. 45

XXII. DISPUTED INSTRUCTION NO. 22: LOST LICENSING REVENUE .................... 49

XXIII. DISPUTED INSTRUCTION NO. 23: DEFENDANT'S PROFITS ........................... 51

XXIV.    DISPUTED INSTRUCTION NO. 24: DEFENDANT'S PROFITS – INDIRECT
         PROFITS/DEDUCTIONS ................................................................................... 60

XXV.     DISPUTED INSTRUCTION NO. 25: DEFENDANT'S PROFITS – INDIRECT
         PROFITS/ATTRIBUTION TO OTHER FACTORS ...................................................... 61

XXVI.    DISPUTED INSTRUCTION NO. 26: WILLFULNESS FOR INFRINGER'S
         PROFITS/DEDUCTIONS ................................................................................... 63

XXVII.   DISPUTED INSTRUCTION NO. 27: STATUTORY DAMAGES ............................. 63

XXVIII. DISPUTED INSTRUCTION NO. 28: WILLFUL INFRINGEMENT ........................ 64

**CONCLUSION**............................................................................................................. 66

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001).........................................................................27, 37

*Authors Guild v. Google Inc.*,
   804 F.3d 202 (2d Cir. 2015).............................................................................15, 43

*In re Barboza*,
   545 F.3d 702 (9th Cir. 2008)..................................................................................65

*Big Seven Music Corp. v. Lennon*,
   554 F.2d 504 (2d Cir. 1977)...................................................................................50

*Bouchat v. Baltimore Ravens Ltd. P'Ship*,
   619 F.3d 301 (4th Cir. 2010)..................................................................................26

*Buck v. Jewell-La Salle Realty Co.*,
   283 U.S. 191 (1931).................................................................................................5

*Cadence Design Sys., Inc. v. Avant! Corp.*,
   125 F.3d 824 (9th Cir. 1997)..................................................................................66

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ...................................................................... *passim*

*Cohen v. United States*,
   100 Fed. Cl. 461 (2011) .........................................................................................50

*Cohen v. United States*,
   105 Fed. Cl. 733 (2012) .........................................................................................50

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*,
   754 F.2d 826 (9th Cir. 1985)................................................................49, 55, 56, 57

*Cream Records, Inc. v. Joseph Schlitz Brewing Co. (Cream II)*,
   864 F.2d 668 (9th Cir. 1989)........................................................................52, 56, 57

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
   109 F.3d 1394 (9th Cir. 1997)................................................................................39

*Elvis Presley Enters., Inc. v. Passport Video*,
   349 F.3d 622 (9th Cir. 2003)....................................................................... *passim*

*Evergreen Safety Council v. RSA Network Inc.*,
   697 F.3d 1221 (9th Cir. 2012)................................................................................66

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991) ................................................................30

*Fisher v. Dees*,
  794 F.2d 432 (9th Cir. 1986) ..................................................16

*Folsom v. Marsh*,
  9 F. Cas. 342 (C.C.D. Mass. 1841) (Story, J.) ..............................*passim*

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985).................................................46, 48, 63

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989)................................................55, 56, 58

*Gaylord v. United States*,
  678 F.3d 1339 (Fed. Cir. 2012)..................................................49

*Harper & Row*,
  471 U.S. .........................................................................49

*Harper & Row Publ'rs v. Nation Enters.*,
  471 U.S. 539 (1985) .......................................................*passim*

*Historical Research v. Cabral*,
  80 F. 3d 377 (9th Cir. 1996).....................................................66

*Hunter v. Cnty. of Sacramento*,
  652 F.3d 1225 (9th Cir. 2011)..................................................59

*Iowa State Univ. Research Found. v. ABC*,
  621 F.2d 57 (2d Cir. 1980)......................................................15

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
  752 F.2d 1326 (9th Cir. 1984)..................................................63

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003)..................................................23, 24

*L.A. News Serv. v. CBS Broadcasting*,
  305 F.3d 924 (9th Cir. 2002)....................................................22

*L.A. News Serv. v. KCAL-TV Channel*
  9, 108 F.3d 1119 (9th Cir. 1997).........................................17, 18, 35

*L.A. News Serv. v. Reuters Tele. Int'l, Ltd.*,
  149 F.3d 987 (9th Cir. 1998)..................................................29, 35

*L.A. News Serv. v. Tullo*,
  973 F.2d 791 (9th Cir. 1992)....................................................14

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ......................................................................................60

*Leadsinger, Inc. v. BMG Music Publ'g.*,
   512 F.3d 522 (9th Cir. 2008) ..............................................................................29, 35

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
   658 F.3d 936 (9th Cir. 2011) ..............................................................................65, 66

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002) ......................................................................................62

*Mazer v. Stein*,
   347 U.S. 201 (1954) ..............................................................................................12, 16

*MGM Studios, Inc. v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) .......................................................................3

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ............................................................................29, 37

*Mirage Ed., Inc. v. Albuquerque A.R.T. Co.*,
   856 F.2d 1341 (9th Cir. 1988) ....................................................................................38

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164 (9th Cir. 2012) .......................................................................... *passim*

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
   40 F.3d 1007 (9th Cir. 1994) ......................................................................................61

*Oddo v. Ries*,
   743 F.2d 630 (9th Cir. 1984) ......................................................................................25

*Oracle Am., Inc. v. Google Inc.*,
   750 F.3d 1339 (Fed. Cir. 2014) ........................................................................ *passim*

*Oracle Am., Inc. v. Google Inc.*,
   Nos. 2013-1021, -1022 (Fed. Cir.) ..............................................................................17

*Orgel v. Clark Boardman Co.*,
   301 F.2d 119 (2d Cir. 1962) ........................................................................................57

*Palmer v. Conn. Ry. & Lighting Co.*,
   311 U.S. 544 (1941) ....................................................................................................46

*Peer International Corp. v. Pausa Records, Inc.*,
   909 F.2d 1332 (9th Cir. 1990) ............................................................................65, 66

*Perfect10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ....................................................................23, 24, 29

*Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l,*
    533 F.3d 1287 (11th Cir. 2008).........................................................................................10, 43

*Petrella v. MGM, Inc.,*
    134 S. Ct. 1962 (2014) ...........................................................................................................3

*Polar Bear Prods., Inc. v. Timex Corp.,*
    384 F.3d 700 (9th Cir. 2004)......................................................................................... *passim*

*Pye v. Mitchell,*
    574 F.2d 476 (9th Cir. 1978)...................................................................................................5

*Religious Tech. Ctr. v. Netcom On-Line Comm.,*
    923 F. Supp. 1231 (N.D. Cal. 1995) (Whyte, J.) ...................................................................17

*Sammons v. Colonial Press,*
    126 F.2d 341 (1st Cir. 1942) .................................................................................................63

*Sega Enters. Ltd. v. Accolade, Inc.,*
    977 F.2d 1510 (9th Cir. 1992)...............................................................................................28

*Seltzer v. Green Day, Inc.,*
    725 F.3d 1170 (9th Cir. 2013).....................................................................................23, 24, 25

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
    106 F.2d 45 (2d Cir. 1939), *aff'd* 309 U.S. 390 (1940) ..........................................................55

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
    309 U.S. 390 (1940)........................................................................................................46, 54

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
    60 S. Ct. 681 (1940) ..............................................................................................................57

*Sony BMG Music Sony Entm't v. Tenenbaum,*
    672 F. Supp. 2d 217 (D. Mass. 2009) ................................................................................ *passim*

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984) .......................................................................................................19, 24, 29

*Stewart v. Abend,*
    495 U.S. 207 (1990) .......................................................................................................21, 35, 37

*Sunset Lamp Corp. v. Alsy Corp.,*
    749 F. Supp. 520 (S.D.N.Y. 1990).........................................................................................50

*Taylor v. Meirick,*
    712 F.2d 1112 (7th Cir. 1983)...............................................................................................49

*Three Boys Music Corp. v. Bolton,*
    212 F.3d 477 (9th Cir. 2000).......................................................................................55, 56, 57

*Tolliver v. McCants*,
    684 F. Supp. 2d 343 (S.D.N.Y. 2010), aff'd, 486 F. App'x 902 (2d Cir. 2012)........................3

*United States v. Crawford*,
    372 F.3d 1048 (9th Cir. 2004) (en banc)................................................................18

*United States v. Davis*,
    332 F.3d 1163 (9th Cir. 2003)..............................................................................18

*United States v. Ibarra-Pino*,
    657 F.3d 1000 (9th Cir. 2011)..............................................................................47

*Universal Pictures Co. v. Harold Lloyd Corp.*,
    162 F.2d 354 (9th Cir. 1947)................................................................................46

*Wall Data, Inc. v. L.A. County Sheriff's Department*,
    447 F.3d 769 (9th Cir. 2006)....................................................................... *passim*

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
    704 F.3d 668 (9th Cir. 2012)................................................................................65

*Williams v. Bridgeport Music*,
    No. LA CV13-06004............................................................................................63

**Federal Statutes**

17 U.S.C. ............................................................................................................58

17 U.S.C. § 101.............................................................................................38, 44

17 U.S.C. § 106...................................................................................... *passim*

17 U.S.C. § 106(2) ...............................................................................25, 37, 38

17 U.S.C. § 106(4)-(5) .................................................................................2, 37

17 U.S.C. § 107........................................................................................ *passim*

17 U.S.C. § 301...................................................................................................42

17 U.S.C. § 501(a) ...............................................................................................8

17 U.S.C. § 504(b) ................................................................................... *passim*

28 U.S.C. § 1498(b) ..........................................................................................50

Copyright Act ........................................................................................... *passim*

Indeed, the Copyright Act ..................................................................................30

**Regulations**

Oracle Op. Br., Nos. 2013-1021, -1022 ...........................................................................................17

Order Adopting ECF 1334 ...............................................................................................................53

**Constitutional Provisions**

U.S. Const. Article I, § 8, cl. 8 ...............................................................................................12, 16

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

**INTRODUCTION & GENERAL OBJECTIONS**

As per the Court's standing order, Oracle has proposed as few substantive jury instructions as possible.  In total, Oracle has proposed fourteen (14) jury instructions.  Each instruction quotes (to the greatest extent possible) Supreme Court decisions, the Federal Circuit's decision in this case, and binding Ninth Circuit authority.  On other matters, such as damages, which the Federal Circuit did not directly address, Oracle's instructions again are near verbatim quotes from binding authority.  Such instructions ensure that the jury is advised precisely on what the law is, without any risk that paraphrasing or summarizing those quotations will build bias (even unintentional bias) or error into the instruction.

Google, by contrast, proposes twenty-eight (28) instructions.  Nearly none of Google's proposed instructions are taken verbatim from binding precedent or statutes.  Instead, nearly all of Google's instructions are Google's own take (either by paraphrase or complete rewriting) of the Ninth Circuit Model Instruction, out-of-circuit appellate and district court cases, treatises, and decisions from the Supreme Court, Federal Circuit, and Ninth Circuit.  As detailed below, each instruction proposed by Google builds in bias in favor of Google and in favor of a finding jury fair use, a prejudice against Oracle and copyright protection, and errors (both large and small).  Oracle catalogs and discusses all of this at length below.  Oracle points out, however, that when the parties exchanged proposed jury instructions, Google did not provide Oracle the authorities supposedly in support of Google's instructions, as Oracle provided to Google.  During a meet-and-confer, counsel for Google agreed to provide that authority upon specific request, but, to the extent that Google relies on additional or different authorities than it identified in the meet-and-confer, Oracle reserves its rights to respond to those authorities.

## I.   DISPUTED INSTRUCTION NO. 1: COPYRIGHTS AT ISSUE AND EXCLUSIVE RIGHTS OF COPYRIGHT OWNERS

Both parties offer a proposed instruction for Disputed Instruction No. 1.  Oracle's first proposed disputed instruction identifies the works at issue, states that they are copyrighted protected (which the Federal Circuit held), and explains the exclusive rights of copyright owners.  Disputed Instr. No. 1 (Oracle).  Nothing more is needed.  Google, by contrast, offers several

1   incomplete instructions as well as instructions on topics irrelevant to the issues that the jury will

2   be asked to decide.[1]

3      **A.**  Google proposes an incomplete definition of copyright that omits numerous important

4   rights codified at 17 U.S.C. § 106.  Section 106 grants the copyright owner "the exclusive right[]

5   to do *and to authorize*," i.e., authorize another to do, "any of the following …." 17 U.S.C. § 106

6   (emphasis added).  Google's proposed instruction excludes the right of a copyright owner to auth-

7   orize others to do.  This right is critical.  Authors and publishers depend upon this understanding

8   of § 106, as they often do not commercialize works by themselves.  For example, J.K. Rowling

9   did not write the Harry Potter screenplays or produce the films by herself.  But she and her

10   publisher had every expectation that the right to license others to do so was part of the value of

11   her works.  The exclusive right to authorize others is not hypothetical or irrelevant in this case; it

12   was a significant part of Sun's, and now Oracle's, business model.

13      Google's proposed instruction also omits other exclusive rights contained in § 106, such

14   as the right to display and to perform the copyrighted work publicly.  17 U.S.C. § 106(4)-(5).

15   Those exclusive rights should be included for the completeness of the description of the full

16   bundle of rights afforded by copyright protection.  Moreover, if, as Google proposes below, the

17   jury should weigh the policy benefits of copyright protection versus fair use, the jury must be

18   presented the entire scope of copyright protection.  Nevertheless, Google's proposed instruction is

19   one of just many attempts (detailed below) to narrow the scope and policy rationales for copyright

20   protection.  Google's definition of copyright also omits the right for a copyright owner to sue in

21   order to protect its rights.

22      In short, Google's proposed instruction is an incomplete, misleading definition of copy-

23   right.  It is also largely duplicative of Google's second proposed instruction.  Disputed Instr. No.

24   2 (Google).  The Court need not instruct the jury twice on this topic, and certainly should not

25

---

26   [1] It is unclear whether Google's "preliminary instruction" is meant to be a pre-instruction given to
the jury at the start of the trial or instruction given to the jury at the conclusion of the trial when

27   the jury is charged.  As explained in Oracle's Trial Brief, filed concurrently with this brief, Oracle
supports pre-instructing the jury at the beginning of the trial on fair use by reading the jury the

28   fair use statute.  Oracle nevertheless would and does object to the *content* of Google's Proposed
Instruction No. 1 for the reasons explained in the text.

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1    exclude vital exclusive rights of copyright owners when defining the rights of copyright owners.

2        **B.**  Google's preliminary instruction also includes an instruction on how copyright is

3    obtained.  While such an instruction may have had some utility in the first trial when evidence

4    about copyrightability was admitted and the jury had to determine infringement (separate from

5    fair use), no such instruction is required now.  Oracle's work *is copyright protected*.  The Federal

6    Circuit put this issue to rest.  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1348, 1354, 1381

7    (Fed. Cir. 2014).  The jury should be instructed simply that Oracle's work is copyright protected

8    and then the rights that such copyright protection entails, all as Oracle proposes in its first

9    instruction.  *See* Disputed Instr. No. 1 (Oracle).

10        **C.**  In proposing a "preliminary instruction" on "how copyright is obtained," Google

11    attempts to sneak an instruction about how "Oracle is bound by Sun's actions, inaction and prior

12    statements."  Disputed Instr. No. 1 (Google).  This is improper.  It has nothing to do with how a

13    copyright is obtained, and is an attempt to argue laches and equitable estoppel to the jury, which

14    are issues for the Court to decide in Phase III.  *See* ECF No. 1488 (Tentative Trial Plan) at 3.

15    Sun's actions and statements to enforce its copyrights with respect to third parties are not relevant

16    to fair use, and Google has cited no authority to support its proposed instruction.  *Petrella v.*

17    *MGM, Inc.*, 134 S. Ct. 1962, 1967, 1976 (2014) (not "incumbent on copyright owners … to

18    challenge each and every actionable infringement"); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F.

19    Supp. 2d 1197, 1225 (C.D. Cal. 2007) ("no rule in copyright ... that a copyright holder is bound to

20    pursue either all infringers or none at all"); *Tolliver v. McCants*, 684 F. Supp. 2d 343, 349

21    (S.D.N.Y. 2010) ("[T]he failure to demand compensation for third party use of the [work] in no

22    way indicates that Plaintiff intended for Defendant to believe or gave Defendant reason to believe

23    that he could [infringe]."), aff'd, 486 F. App'x 902 (2d Cir. 2012).  The instruction is a

24    transparent attempt to put in the jury's mind the concept of "inaction" and "prior statements" by

25    Sun that have no bearing on fair use.  *See* ECF No. 1552 (Apache MIL) at 4-6; ECF No. 1653

26    (Apache Reply) at 3-5.  It is also the subject of a pending motion *in limine*.  *Id.*

27    **II.**      **DISPUTED INSTRUCTION NO. 2: COPYRIGHT DEFINED**

28        Only Google offers a proposed instruction for Disputed Instruction No. 2.  Oracle believes

1  that Oracle's proposal for Disputed Instruction No. 1 provides the jury the necessary information

2  on the topics covered in Google's proposed Instruction No. 2.

3       Specifically, Oracle proposes in Disputed Instruction No. 1 that the Court read the jury the

4  statutory provision enshrining the exclusive rights of the copyright owner.  *See* Disputed Instr.

5  No. 1 (Oracle) (quoting 17 U.S.C. § 106).  Google's Proposed Instruction No. 2, like its Proposed

6  Instruction No. 1, paraphrases § 106, omitting critical rights of copyright owners.  *Supra* 1-2.

7       In addition, the paragraph at the conclusion of its proposed instruction (after Google para-

8  phrases § 106) also omits important information and includes other irrelevant information.

9  Google's proposed instruction states that "copyright law protects against the reproduction and

10  distribution of works," but omits that copyright protection includes exclusive rights to prepare

11  derivative works, perform, and display the copyrighted work.  While some of those exclusive

12  rights are listed above in Google's instruction, it is misleading to exclude them in the summary

13  paragraph after the list, especially when exclusive rights, such as preparing derivative works m

14  are critical copyright protections at issue in this case.

15       It is also unnecessary to introduce to the jury complex concepts like "substantial similar-

16  ity" and "virtual identi[ty]" that are irrelevant at this stage of the case now that infringement has

17  already been determined.

18       **C.**  Finally, if the Court is going to instruct the jury about the exclusive rights of copyright

19  owners, as both parties agree that the Court should, then the Court should also take the opportun-

20  ity to instruct the jury that the Oracle works at issue *are copyright protected*.  *See* Disputed Instr.

21  No. 1 (Oracle); *see also Oracle Am.*, 750 F.3d at 1348, 1354, 1381.  This takes an entire topic off

22  the table for the jury, and leaves the jury to decide the issues before it—namely, fair use,

23  willfulness, and damages.

24  **III.    DISPUTED INSTRUCTION NO. 3: JAVA PROGRAMMING LANGUAGE**

25       Only Google proposes an instruction for Disputed Instruction No. 3.  Oracle submits that

26  there is no need to present the jury with Google's proposed instruction regarding the Java pro-

27  gramming language.  It is confusing and prejudicial.  Oracle expects that the Court will instruct

28  that Google has been found to infringe Oracle's copyrights by copying the declaring code and the

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

SSO of the 37 Java API packages.  ECF No. 1615 (Court's Prop. Instr.) at 2; ECF No. 1488 (Tentative Trial Plan) at 2; *accord* Disputed Intr. No. 5 (Oracle) (Fair Use Intro.).  No one intends to suggest that that Oracle asserts infringement of a copyright in the Java language in this case.  Tellingly, no instruction about the Java programming language was given in the first trial, *see* ECF No. 1018 (Final Jury Instrs.), when the trial involved not only fair use but copyright infringement as well.  Thus, there is no reason to give an instruction about copyright in the Java programming language in this trial.  Indeed, if such an instruction were even to be considered, to make it more balanced, the Court should also instruct that the Java APIs are not part of and are distinct from the Java programming language, are protected by copyright, and are not "free for all to use."

## IV.   DISPUTED INSTRUCTION NO. 4: COPYING FROM THIRD PARTIES

Only Oracle proposes an instruction for Disputed Instruction No. 4.  This is the only proposed instruction that only Oracle offers.  Oracle offers this instruction to make sure that the jury is not confused in the event that Oracle's Motion *In Limine* #2 Regarding Apache, Apache Harmony, the Apache License, and GNU is not granted and Google presents evidence that it copied Oracle's work from other sources.  *See* ECF No. 1552 (Oracle MIL #2).

**A.**  Specifically, if Google is permitted to interject into the trial evidence regarding the use of Sun/Oracle's work by third parties and Google's copying from those third parties, it is critical that the jury be instructed that it is "no defense to copyright infringement for a defendant to say that it copied from a third party who did not itself have a license to copy and distribute the plaintiff's work."  Disputed Instr. No. 4 (Oracle).  There can be no dispute about the law.  2 Nimmer on Copyright § 8.01[c] ("[I]t is no defense even if defendant did copy from a third work rather than from plaintiff if such third work was itself an unauthorized copy of plaintiff's work."); *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("Secondly, a defendant may be liable where he copied with or without a license, from a third party, who in turn had copied from the plaintiff."); *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 199 n.5 (1931) (no defense for defendant to rely on a third party's use when the third party did not have the copyright owner's permission).

Indeed, before the first trial, Google proposed the following instruction on this topic:

1    "[Google] cannot excuse what would otherwise be copyright infringement by claiming that it cop-

2    ied … with or without a license, from a third party, who in turn had copied from Oracle."  ECF

3    No. 539 (Prop. Instr. No. 18) at 60.  Though Oracle's proposed instruction uses much simpler

4    language and sentence structure, the ultimate legal point is the same:  It is no defense for Google

5    to claim it copied from a third party if the third party did not have Sun/Oracle's permission.

6        **B.**  The proposed instruction is necessary if the Court denies Oracle's Motion *in Limine* #2

7    Regarding Apache, Apache Harmony, the Apache License, and GNU.  ECF No. 1552 (Oracle

8    Mot.).   If the Court grants Oracle's motion, the jury will not have heard superfluous evidence

9    about Apache Harmony, and thus it will be unnecessary to instruct the jury that "Apache did not

10   have a license to copy and distribute Oracle's copyrighted works, and neither does Google."

11   Disputed Instr. No. 4 (Oracle).

12       If Google is permitted to introduce evidence about Apache Harmony, however, it will be

13   necessary to instruct the jury (as the Court did in the first trial) that it is no defense to infringe-

14   ment that Google copied from Apache Harmony.  As the Court pointed out during the charging

15   conference in the first trial:  "I think that there is a risk that the jury is going to think that you

16   [Google] somehow had permission, because you [Google] had the license from Harmony."  Tr.

17   2422:1-3.  This was because Google had complicated the issue:  "[W]e don't [co]ntend that that's

18   a defense in this case.  It's just not true that we don't have a license."  Tr. 2420:1-3.  Google's

19   point was not that Apache had a license and so Google's copying was licensed.  Rather, Google's

20   argument was that it had a license from Apache, and while that license was not "a defense in this

21   case" because Apache did not have a license from Sun, Google nevertheless insisted on making

22   that point.  As the Court explained earlier in the trial:  "[I]f somebody is out there possibly

23   misusing, like Apache possibly was -- I don't know that they were, but if there was a debate over

24   Apache and you just start using what Apache put out there, how can you say that that absolves

25   you of any wrongdoing?  You step into their shoes.  If Apache was in the wrong, then you step

26   into their shoes.  I don't get that argument."  Tr. 1112:18-25.  Harkening back to that statement,

27   the Court concluded at the charging conference that it needed "to protect against a misimpression

28   off-track reasoning, and the off-track reasoning would be that you had some kind of permission

1   and it was okay to use it." Tr. 2422:8-14.  Accordingly, the Court added an instruction, similar to

2   what Oracle proposes here, that "[t]he burden would be on Google to prove it had any such

3   express license … [b]ut in this trial [Google] makes no such contention."  ECF No. 1018 (Final

4   Jury Instr.) ¶ 30.

5        If Google is permitted to present evidence regarding Apache Harmony, an instruction such

6   as the one proposed here by Oracle will be required.

7   **V.     DISPUTED INSTRUCTION NO. 5: FAIR USE INTRODUCTORY**
        **INSTRUCTION/ISSUE TO BE DECIDED**
8

9        Both parties propose an instruction for Disputed Instruction No. 5.  Oracle's proposed

10  instruction advises the jury that it has already been determined that Google copied Oracle's work

11  in all of the Android versions at issue and then segues to the fair use factors to be considered.  *See*

12  Disputed Instr. No. 5 (Oracle).  Google's proposed instruction, by contrast, asks the jury merely

13  to "assume" that the Android versions at issue use Oracle's copyrighted work, and introduces the

14  defense of fair use, but then takes four more introductory instructions before getting to the actual

15  statutory factors.  *See* Disputed Instr. No. 5 (Google).

16       **A.**  The jury in the first trial found that Google "infringed" by copying elements of Java 2

17  Standard Edition ("SE"), Version 1.4, and Java 2 SE, Version 5.0.  ECF No. 1089 at 1.  The

18  Federal Circuit then found as fact that "Google copied the declaring source code from the 37 Java

19  API packages verbatim, inserting that code into parts of its Android software," and that Google

20  "copied the 'structure, sequence, and organization' or 'SSO' of the 37 packages," and "reinstated

21  the jury's infringement verdict." 750 F.3d 1339, 1350-51, 1381 (Fed. Cir. 2014).  There is no dis-

22  pute—nor could there be—that Google's newest versions of Android at issue (through Marsh-

23  mallow) also copy the declaring code and the SSO of the 37 Java API packages.  Google conced-

24  ed as much in response to Oracle's requests for admission in discovery and did not disagree with

25  code comparison analysis from Oracle's code-comparison expert showing that Oracle's declaring

26  code and SSO is in the newest versions of Android.  ECF No. 1488 at 2 (Tentative Trial Plan), *as*

27  *amended* ECF No. 1506 (Follow-Up Order) ¶ 5.  Thus, subject to Google proving its affirmative

28  defense of fair use, Google has "violate[d]" some of Oracle's exclusive rights as a copyright

1    owner, and is therefore an "infringer of the copyright."  17 U.S.C. § 501(a).

2        **B.**  It is therefore contrary to the facts in this case and the Federal Circuit's mandate to in-

3    struct the jury merely that it "must *assume* that the Android versions in question used the declar-

4    ing code and structure, sequence, and organization ('SSO') of 37 of the Java SE API packages."

5    Disputed Instr. No. 5 (Google).  There is nothing to assume.  A previous jury found this fact,

6    Oracle's experts demonstrated it, Google admits it, and the Federal Circuit and this Court have

7    also so found.  Google's waters down the instruction and leaves the jury with the impression that

8    Google may not have copied Oracle's code in Android, but rather that there is some agreement or

9    phasing of issues that requires the jury simply to "assume" that Google copied.  Such an

10   impression is wrong, is prejudicial to Oracle, and flies in the face of the Federal Circuit's

11   mandate.

12       So, too, does Google's proposal that the instruction say only that Google "used" Oracle's

13   code, rather than copying it.  The jury found that Google "infringed" and the Federal Circuit

14   found that Google "copied."  Any instruction short of that again prejudices Oracle by making it

15   seem as though the more than 11,000 lines of Oracle code in Android ended up there by happen-

16   stance.  That is not the case.  "Google concedes that it *copied* the declaring code verbatim" and

17   thus "*copied* the sequence and organization of the packages."  *Oracle Am.*, 750 F.3d at 1356 (em-

18   phasis added, quotation marks omitted). The declaring code and the SSO of the Java platform are

19   available in the *Java Specification* (protected by a license) that is available on the internet, and,

20   during the first trial, Android's chief engineer admitted that Google pored over the *Specification*

21   as Google was copying, Tr. 982:22-983:12, 984:25-985:18; TX 30 (Noser Statement of Work) at

22   6-8 (listing 30+ Java API packages that Google contracted Noser to implement based on "the

23   Java library specification" with the instruction that "API changes should be avoided if possible").

24   It is not a sufficient jury instruction to state only that Android "used" the declaring code and SSO.

25   Disputed Intr. No. 5 (Google).  Google copied.  And, as discussed below, that is relevant to fair

26   use.  *See* Disputed Instr. No. 10.

27       **C.**  Finally, the Court was correct to propose that Google's admitted copying "consti-

28   tute[s] copyright infringement ... unless you find that Google has carried its burden as to the

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1   [affirmative defense] of fair use."  ECF No. 1615 (Court's Prop. Instrs.) at 2; *accord* ECF No.

2   1488 (Tentative Trial Plan) at 2.  As opposed to what Google proposes, the Court's proposed in-

3   struction is consistent with the Federal Circuit's mandate that the "jury's infringement verdict" be

4   "reinstate[d]."  *Oracle Am.*, 750 F.3d at 1381.  "Fair use is an affirmative defense," *id.* at 1372,

5   for which Google, "as the defendant[,] bears the burden of proof."  *Monge v. Maya Magazines,*

6   *Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).  As this Court rightly recognized, with the infringe-

7   ment verdict reinstated, Google has infringed "unless … Google has carried its burden … of fair

8   use."  ECF No. 1615 at 2.

9   **VI.    DISPUTED INSTRUCTION NO. 6: FAIR USE GENERALLY**

10          Only Google proposes an instruction for Disputed Instruction No. 6.  This is one of four

11   introductory instructions that Google proposes on fair use before getting to the statutory fair use

12   factors themselves.  Oracle proposes no instruction for Disputed Instruction No. 6, nor does

13   Oracle propose an instruction for Disputed Instructions 7, 8, or 9. Such instructions are

14   unnecessary.

15          Each "introductory" instruction by Google is an attempt to bias and precondition, and thus

16   prejudice, the instructions in favor of fair use and in favor of a defense verdict.  Oracle proposes

17   an introductory paragraph based on the Court's guidance that directs the jury that Google has

18   copied the declaring code and the SSO of the 37 Java API packages, which constitutes infringe-

19   ment unless Google proves its affirmative defense of fair use.  By contrast, that Google proposes

20   so many prefatory instructions—only ostensibly about fair use—before instructing the jury on the

21   actual fair use factors demonstrates the extent to which Google aims to obtain a defense verdict

22   on grounds other than the statutory fair use factors.

23          **A.**  The first such instruction is Disputed Instruction No. 6, which Google labels as "Fair

24   Use Generally."  No such instruction is necessary.  This Court should reject such an instruction,

25   as it did in its own proposed instructions.  ECF No. 1615 at 1-2.

26          **B.**  Google's gloss is that fair use should be described in terms of "reasonableness" and

27   implied "consent" from the copyright owner.  Nothing in the statute supports Google's reading,

28   so Google turns to the Model Instruction and to *dicta* in *Wall Data, Inc. v. L.A. County Sheriff's*

1    *Department*, 447 F.3d 769, 778 (9th Cir. 2006).  As this Court has already held in this case,

2    "Model instructions have no authoritative force whatsoever."  ECF No. 1321 (Order re Willful-

3    ness & Bifurcation) at 8 (rejecting Oracle's argument seeking enforcement of the Model instruc-

4    tions).  That leaves Google only with *Wall Data*.  As Oracle has explained repeatedly, *see* ECF

5    No. 1666 (Oracle Resp. to Google Critique) at 1-2 (collecting citations), the language Google

6    relies on in *Wall Data* is *dicta*, completely untethered to the court's decision.  The Ninth Circuit

7    observed that courts should "bear in mind" whether "a 'reasonable copyright owner' would have

8    consented," 447 F.3d at 778, but the Ninth Circuit then proceeded (as all courts do) to analyze fair

9    use under the four statutory factors (and no others), and concluded based on those statutory

10   factors that since "none militate in favor of the [defendant's] fair use defense[,] [w]e therefore

11   hold that the [defendant] is not entitled to a fair use defense," *Wall Data*, 447 F.3d at 783.

12       Moreover, as the Supreme Court has explained, "reasonableness" and "implied consent" is

13   *not* the test for fair use; rather, those concepts are merely the historic, common law justification

14   for fair use prior to its codification into statute.  *Harper & Row Publ'rs v. Nation Enters.*, 471

15   U.S. 539, 550 (1985) (common law "fair use doctrine was predicated on the author's implied

16   consent"); *accord Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533

17   F.3d 1287, 1308 n.23 (11th Cir. 2008) (reasonableness and implied consent refer "to the doctrinal

18   underpinnings of fair use in a sort of 'hypothetical consent' by a rational author to a particular

19   kind of use").

20       As the Supreme Court explained in *Campbell v. Acuff-Rose Music, Inc.*, the "essence" of

21   the fair use inquiry "'look[s] to the nature and objects of the selections made, the quantity and

22   value of the materials used, and the degree in which the use may prejudice the sale, or diminish

23   the profits, or supersede the objects, of the original work.'"  *Campbell v. Acuff-Rose Music, Inc.*,

24   510 U.S. 569, 576 (1994) (quoting *Folsom v. Marsh*, 9 F. Cas. 342, 348 (C.C.D. Mass. 1841)

25   (Story, J.)).  This, the Supreme Court explained is the "central purpose" of the fair use inquiry,

26   not reasonableness or implied consent.  *Id.* at 579.  Indeed, reasonableness and implied consent

27   were used because it was understood that it was *not* reasonable and consent would *not* be implied

28   to use another's work for commercial gain to the harm of the author's original work:  "[I]t is as

1    clear[] that if he thus cites the most important parts of the work, with a view, not to criticize, but

2    to supersede the use of the original work, and substitute the review for it, such a use *will be*

3    *deemed in law a piracy*." *Harper & Row*, 471 U.S. at 550 (emphasis added) (quoting *Folsom*, 9

4    F. Cas. 344-45). At common law, "the fair use doctrine ha[d] *always precluded* a use that

5    '*supersedes the use of the original*.'" *Id.* (emphasis added) (quoting *Folsom*, 9 F. Cas. 344-45).

6         **C.** As evidenced by Oracle's proposed instructions on fair use (Disputed Instr. Nos. 10,

7    13-15 (Oracle)), no introductory instruction on principles and policies of fair use is needed.

8    Nevertheless, if the Court is going to instruct the jury on the background principles of fair use at

9    common law, then (as explained above) fairness and fidelity to the law dictates that the Court

10   instruct that fair use was "always precluded" at common law when the defendant's use

11   superseded the copyright holder's use because the common law did not view a commercial,

12   superseding use as reasonable.

13   **VII.    DISPUTED INSTRUCTION NO. 7: BACKGROUND AND POLICY**

14        Only Google proposes an instruction for Disputed Instruction No. 7. This is Google's

15   second prefatory fair use instruction, this one about what Google labels "background and policy."

16   Oracle proposes no such instruction and submits that this Court should reject Google's proposed

17   instruction for numerous reasons, including that there is no uniform "policy behind the right of

18   fair use," Dispute Instr. No. 7 (Google), and Google does not present one. There is no indication

19   where the language in the instruction Google proposes originates, and when asked during the

20   meet and confer Google cited only to the Court's initial proposed instruction, ECF No. 1615,

21   which this Court has since modified. ECF No. 1688.

22        **A.** As stated in Oracle's critique of the Court's proposed instructions, Congress made

23   clear in codifying fair use in § 107 that there is no unified theory of fair use: "Although the

24   courts have considered and ruled upon the fair use doctrine over and over again, no real definition

25   of the concept has ever emerged. Indeed, since the doctrine is an equitable rule of reason, *no*

26   *generally applicable definition is possible*, and each case raising the question must be decided on

27   its own facts." S. Rep. at 62 (emphasis added).

28        **B.** Moreover, the proposed instruction is far too narrow and one-sided in favor of Google

- 11 -

1    in characterizing copyright as "protecting original works" against "plagiarists," and fair use is

2    meant to encourage "development of new ideas that build on earlier ones."  Disputed Instr. No. 7

3    (Google).  The Copyright Act protects against more than just counterfeiting.  17 U.S.C. § 106.

4    Copyright protection (not just fair use) "promotes" progress.  U.S. Const. art. I, § 8, cl. 8.  As the

5    Supreme Court has explained:  "The economic philosophy behind the clause empowering

6    Congress to grant patents and copyrights is the conviction that encouragement of individual effort

7    by personal gain is the best way to advance public welfare through the talents of authors and

8    inventors in 'Science and useful Arts.'"  *Mazer v. Stein*, 347 U.S. 201, 219 (1954).  Expressly

9    explaining the economic rationale for copyright protection in terms as strong as the economic

10   rationale for fair use is absolutely essential to ensure a fair and balanced instruction.  Similarly,

11   any instruction about policy must explain the economic consequences of permitting a party (es-

12   pecially one with the resources of Google) to copy another's work without permission or compen-

13   sation.  The economic ramifications of piracy must be presented to the jury along with the econ-

14   omic rationales for copyright protection, especially if the policies behind copyright protection and

15   fair use are going to be explicitly made part of the jury instructions, as Google proposes, Disputed

16   Intr. No. 9 (Google); *but see infra* 12-13, 15-16 (explaining why policy rationales should not be

17   included).

18         **C.**  All that said, while the above is absolutely necessary for anything close to a balanced

19   instruction, Oracle submits that any instruction about policy justifications for copyright protection

20   and fair use is inherently unfair and prejudicial.  This is because the policy justification for fair

21   use is direct incentive:  *When properly applied to uses that are actually fair uses*, fair uses permits

22   progress by allowing authors to build on other authors.  By contrast, the policy rationale for copy-

23   right protection is an indirect incentive:  Copyright protection encourages authors by affording

24   them economic protection after they have created their works, thereby incentivizing creation.

25   Though this economic rational is enshrined in the Constitution, art. I, § 8, cl. 8, it does not at first

26   glance appear to stack up equally with the more direct promotion of progress though fair use.

27         **D.**  Finally, such resort to policy encourages the jury to go outside the record and facts in

28   this case and speculate about the consequences of its verdict in other situations. The jury should

1    not do that.  It should decide this case based on the facts, arguments, and law in this case.

2    Nothing else.  Oracle's proposed instructions ensure a verdict based on this case; Google's

3    proposed instructions push the jury to render a verdict outside the facts of this case.  That is

4    improper and cannot be countenanced.

5    **VIII.   DISPUTED INSTRUCTION NO. 8: STATUTORY LANGUAGE**

6          Only Google proposes an instruction for Disputed Instruction No. 8, regarding the unnec-

7    essary and prejudicial commentary before and after quoting the statute for fair use.  Oracle pro-

8    poses no such instruction.

9          **A.**  Google proposes, whenever possible, to introduce the concept of money, royalties, and

10   payments to the copyright owner into the instructions.  *See, e.g.*, Disputed Instr. No. 7 (Google)

11   ("or the payment of any money to the copyright owner") No. 8 ("the payment of any royalties or

12   other amounts of the copyright owner").  There is no basis for interjecting those concepts into the

13   jury instructions, particularly into instructions just about liability and not damages.  Such an

14   instruction is also prejudicial to Oracle because it makes it appear as though the only real right at

15   issue in this case is the right to "payment of any royalties," which is not only incorrect but

16   unfairly paints Oracle's claim as solely about money which is false.

17         **B.**  Google proposes reading the jury the entire statutory provision on fair use.  If the

18   Court chooses to do so, there is certainly no warrant to *also* introduce fair use through the two

19   introductory instructions Google proposes, *see* Disputed Instr. Nos. 6-7 (Google), and then to

20   summarize fair use again before reading the statute, *id.* No. 8.  The preamble to the statute tells

21   the jury what it needs to know about fair use:  "The fair use of a copyrighted work for purposes

22   such as criticism, comment, news reporting, teaching (including multiple copies for classroom

23   use), scholarship or research, is not an infringement of copyright.  In determining whether the use

24   made of a work in any particular case is a fair use the factors to be considered shall include —

25   …."  17 U.S.C. § 107.  The preamble does not need a pre-preamble adding Google's gloss that

26   "anyone may make fair use of a copyrighted work and may do so without anyone's permission

27   and without the payment of any royalties or other amounts to the copyright owner."  *Id.*  That is

28   not what § 107's preamble says, and injecting it into a jury instruction makes the instruction

1    unbalanced in favor of Google.

2        **C.**  Finally, Google again tries to white-wash the jury's previous verdict of infringement

3    and the Federal Circuit's factual findings that Google copied by instead proposing an instruction

4    that instructs only on "its [Google's] use" of the declaring code and the SSO of Oracle's Java API

5    packages.  As explained (at 7-8), the Federal Circuit's found that Google "copied" Oracle's work.

6    That is a far more accurate instruction than passively referring generically to Google's "use."

7    **IX.    DISPUTED INSTRUCTION NO. 9: FACTORS TO CONSIDER**

8        Only Google proposes an instruction for Disputed Instruction No. 9.  This is Google's

9    fourth and final pre-instruction on fair use before getting to the statutory factors.  Oracle proposes

10   no such instruction because no instruction is needed.  Google's proposed instruction advises the

11   jury that in addition to considering the four statutory fair use factors, the jury "may [also] consider

12   additional factors that are relevant to whether Google's *use* of the declaring code and SSO was

13   *fair* and *advances the public interest or provides public benefit*."  Disputed Instr. No. 9 (Google)

14   (emphasis added). There are a multitude of problems with Google's proposal.

15       **A.**  As discussed above, Google's instruction minimizes Google's copying by referring to

16   it as "use," in contravention of the jury's verdict and the Federal Circuit's factual findings.

17       **B.**  Google's proposal would instruct the jury to "consider additional factors" beyond "the

18   ones identified in the copyright statute."  While the four "factors are not necessarily the exclusive

19   determinants of the fair use inquiry … [t]he statutory factors do, however, provide *substantial*

20   *guidance* to courts undertaking the proper fact-specific inquiry."  *Harper & Row*, 471 U.S. at 588

21   (Brennan, J., dissenting) (emphases added); *L.A. News Serv. v. Tullo*, 973 F.2d 791, 796 (9th Cir.

22   1992) (the four factors identified by Congress are "'*especially relevant*' in determining fair use"

23   (emphasis added)).  As the history of the fair use doctrine and its codification in the Copyright

24   Act suggest, "while fair use is an elastic inquiry, it is not infinitely so."  *Sony BMG Music Sony*

25   *Entm't v. Tenenbaum*, 672 F. Supp. 2d 217, 226 (D. Mass. 2009).  The "essence" of the fair use

26   inquiry "'look[s] to the nature and objects of the selections made, the quantity and value of the

27   materials used, and the degree in which the use may prejudice the sale, or diminish the profits, or

28   supersede the objects, of the original work.'"  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569,

1   576 (1994) (quotation marks omitted).  It is those factors—all of which are encompassed in the

2   four statutory factors—that the jury should consider.  *See Harper & Row*, 471 U.S. at 549 ("The

3   statutory formulation of the defense of fair use in the Copyright Act reflects the intent of

4   Congress to codify the common-law doctrine."); *accord Iowa State Univ. Research Found. v.*

5   *ABC*, 621 F.2d 57, 60 (2d Cir. 1980) (while the fair use analysis "depends on an examination of

6   the facts … [e]volution of the doctrine" has culminated in the "four commonly recognized factors

7   that have traditionally been consulted in fair use cases" (citations and quotation marks omitted)).

8          **C.**  The factors that Google proposes for the jury to consider are impermissible.  For

9   example, Google's proposal that the jury consider whether Google's copying was "fair"—not

10  whether it was a fair use, but whether it was "fair"—is not supported by the case law.  Instruc-

11  tions about "fair[ness]" untethered to the statute invite the jury to consider fairness based on its

12  own personal (and potentially prejudicial) views and to render a verdict that has nothing to do

13  with the defense of "fair use" or even copyright law.  Moreover, the fair use "analysis is not some

14  open-ended referendum on 'fairness,' as [Google] would have it, but an effort to measure the

15  purpose and effects of a particular use against the incentives for literary and artistic creation that

16  drive copyright protections."  *Sony BMG Music Entm't*, 672 F. Supp. 2d at 226.

17         **D.**  Google also proposes that the jury should "consider … whether Google's use …

18  advances the public interest or provides public benefit."  Disputed Instr. No. 8 (Google).  This

19  again invites the jury to consider its own personal views of Google and Android, completely

20  divorced from copyright considerations.  This is prejudicial to Oracle, as the jury's verdict may

21  well reflect nothing more than the jury's views about the public benefits of smartphones generally

22  and Google's business model of not charging consumers directly.  Moreover, Google cites no

23  binding authority for this instruction.  To Oracle's knowledge, the Supreme Court, Ninth Circuit,

24  and Federal Circuit have not found fair use based on "advancing the public interest or providing

25  public benefit."  The only authority Google has previously cited is *dicta* from an out-of-circuit

26  case.  ECF No. 1661 (Google's Critique of Court's Prop. Instr.) at 3 (citing *Authors Guild v.*

27  *Google Inc.*, 804 F.3d 202, 212 (2d Cir. 2015)).

28         **E.**  Any instruction about policy must detail the public policy benefits of copyright

- 15 -

1    protection, including fostering the development of new creative works.  As the Constitution sets

2    forth:  "To promote the Progress of Science and useful Arts, by securing for limited Times to

3    Authors and Inventors the exclusive Right to their respective Writings and Discoveries."  U.S.

4    Const. art. I, § 8, cl. 8.  Put another way, granting copyrights to "secur[e]" "exclusive" terms of

5    protection for "Authors" for "their respective Writings" was determined by the Founders to be

6    necessary to "promote the Progress of Science and useful Arts."  *Id.*; *accord Mazer*, 347 U.S. at

7    219.  Though Google seeks to make "public interest" and "public benefit" critical components of

8    the fair use inquiry, Google omits a balanced and thorough explanation of the economic rationales

9    for copyright protection and the economic consequences of permitting piracy of copyrighted

10   works, *supra* 12-13, even though Google provides the policy rationales for fair use.  *See* Disputed

11   Intr. No. 7 (Google).  While an even and balanced description of the policy rationales and

12   justifications for copyright protection and fair use must both be included for an instruction about

13   policy to have any chance of being fair, because copyright protection is by its nature an indirect

14   incentive to promote progress, any instruction that emphasizes policy is likely to be heavily

15   skewed toward fair use and thus impermissibly prejudicial to Oracle.  *Supra* 12.

16   **X.    DISPUTED INSTRUCTION NO. 10: FAIR USE FACTOR ONE**

17        Both parties propose an instruction for Disputed Instruction No. 10 regarding the first fair

18   use factor.  Oracle's proposed instruction contains the entirety of the instruction necessary for

19   factor one.  Disputed Instr. No. 10 (Oracle).  By contrast, Google's Disputed Instruction No. 10 is

20   an introductory instruction fair use factor one before several additional instructions about factor

21   one.  Disputed Instr. No. 10 (Google).

22        **A.**  Google proposes an instruction for the first factor that has only "two issues":

23   commercial use and transformation.  This is incorrect.  Factor one has three components.  As the

24   Supreme Court explained in *Harper & Row*:  "Also relevant to the 'character' of the use is 'the

25   propriety of the defendant's conduct.'"  471 U.S. at 562 (quoting 3 Nimmer § 13.05[A] at 13-72).

26   "Fair use presupposes good faith and fair dealing."  *Id.* (quotation marks omitted); *see also Fisher

27   v. Dees*, 794 F.2d 432, 436-37 (9th Cir. 1986) ("The principle invoked is sound.  Because fair use

28   presupposes good faith and fair dealing, courts may weigh the propriety of the defendant's con-

duct in the equitable balance of a fair use determination." (quotation marks omitted)).  Though the Supreme Court did not consider bad faith in *Campbell*, *Campbell* did not abrogate *Harper & Row*'s earlier consideration of the defendant's bad faith.  Even several years after *Campbell*, the Ninth Circuit continued to consider "the propriety of the defendant's conduct."  *L.A. News Serv. v. KCAL-TV Channel* 9, 108 F.3d 1119, 1122 (9th Cir. 1997) (quotation marks omitted) ("Unlike the circumstances in *Campbell*, nothing in this record suggests that [defendant] requested a license 'in a good faith effort to avoid this litigation'"); *accord Religious Tech. Ctr. v. Netcom On-Line Comm.*, 923 F. Supp. 1231, 1244 n. 14 (N.D. Cal. 1995) (Whyte, J.) ("the court will treat bad faith as merely one aspect of the first factor").  Bad faith cuts against fair use and must be considered.

**B.**  The jury should be instructed that Google's copying was for purely commercial purposes.  Google has conceded, repeatedly, and the Federal Circuit has found that Google's use was purely commercial.  Specifically, the Federal Circuit found that "Google … *admittedly copied portions of the API packages …. for what were purely commercial purposes.*"  *Oracle Am.*, 750 F.3d at 1376 ("it is undisputed that Google's use of the API packages is commercial").  The Federal Circuit's factual findings were premised, at least in part, on judicial admissions from Google before this Court and in the Federal Circuit.  At oral argument in the Federal Circuit, Google agreed its copying was entirely commercial:

> JUDGE O'MALLEY: But for purpose and character, though, you don't dispute that it was entirely a commercial purpose.
>
> VAN NEST: No.

Oral Arg., *Oracle Am., Inc. v. Google Inc.*, Nos. 2013-1021, -1022 (Fed. Cir.) at 1:02:54-1:03:00, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2013-1021.mp3; *see also* Feb. 24, 2016 Tr. 28:7-16 (playing this portion of the oral argument recording for the Court).

This is consistent with Google's statement to this Court during the trial in 2012:

> I mean, again, the fact that it's a commercial use is not in dispute.  Nobody is claiming that Google created Android as part of a charitable mission.  The evidence is pretty clear that they created it to provide a platform on which other Google product[s] could do better.

1   Tr. 1418:15-20 (Google's counsel); *see also* Oracle Op. Br., Nos. 2013-1021, -1022 (Fed. Cir.) at

2   69-70 (quoting this language to the Federal Circuit).  Google's statements to this Court and to the

3   Federal Circuit during oral argument are judicial admissions, *United States v. Crawford*, 372 F.3d

4   1048, 1055 (9th Cir. 2004) (en banc), and "are binding on both the parties and the court," *United*

5   *States v. Davis*, 332 F.3d 1163, 1168 (9th Cir. 2003).

6         Not only does Google's proposal fail to instruct the jury that Google's copying was purely

7   for commercial reasons, Google's instruction leaves open the possibility that Google's copying

8   may not have been commercial at all.  Google proposes to instruct the jury to consider "*whether*

9   and, if so, the extent to which the use serves a commercial purpose …."  Disputed Instr. No. 10

10   (Google) (emphasis added).  This allows for the jury to conclude that Google's copying was not

11   for commercial reasons at all.  This is erroneous.  As explained, Google has conceded its copying

12   was for purely and entirely commercial purposes.

13         Moreover, the fact that Google does not directly charge consumers for its product is irrele-

14   vant as a matter of law.  As the Supreme Court has explained:  "The crux of the profit/nonprofit

15   distinction is *not* whether the sole motive of the use is monetary gain but whether the *user stands*

16   *to profit from the exploitation* of the copyrighted material without paying the customary price."

17   *Oracle Am.*, 750 F.3d at 1375 (emphasis added) (quoting *Harper & Row*, 471 U.S. at 562).  As

18   the Ninth Circuit explained in finding copying for a broadcast news telecast commercial even

19   though consumers do not pay for the news but rather the news is supported by the sale of adver-

20   tising (like Android):  "By the same token, KCAL is a for-profit company that is engaged in a

21   commercial enterprise that also gathers, and then (indirectly) 'sells' news.  It, therefore, 'stands to

22   profit from exploitation of the copyrighted material without paying the customary price.'"  *L.A.*

23   *News Serv.*, 108 F.3d at 1121 (emphasis added) (quoting *Harper & Row*, 471 U.S. at 562).

24        **C.**  Google's proposed instruction also places too much weight and emphasis on transfor-

25   mation.[2]  The entire final sentence of Google's proposed instruction No. 9 is to elevate the impor-

26

---

[2] Section 107 does not use the term "transformative," nor does it contain any language suggesting that transformation is a relevant factor.  Oracle understands that the Supreme Court, Federal Cir-

27   cuit, and Ninth Circuit have all recognized that transformation is part of the first factor.  However, Oracle hereby preserves the argument that transformative use is not a relevant factor for fair use.

28   In addition, Oracle hereby preserves its argument that the decisions (including in the Supreme

1    tance of transformation over the rest of the analysis.  This is not accurate or evenhanded, it has no

2    support in the case law or the Copyright Act, and is prejudicial to Oracle.

3         It is not accurate to instruct the jury that the "central purpose" of the fair use inquiry is

4    transformation or to elevate that consideration over what is explicitly stated in the statute (i.e.,

5    whether the use is "commercial").  Disputed Instr. No. 10 (Google).  The fourth factor ("the effect

6    of the use upon the potential market for or value of the copyrighted work") "is undoubtedly the

7    single most important element of fair use."  *Oracle Am.*, 750 F.3d at 1376 (quoting *Harper &*

8    *Row*, 471 U.S. at 566).  It is the fourth factor that "reflects the idea that fair use 'is limited to

9    copying by others which does not materially impair the marketability of the work which is

10   copied.'"  *Id.* (quoting *Harper & Row*, 471 U.S. at 566-67).  Thus, the Supreme Court has advised

11   that "to negate fair use[,] one need only show that if the challenged use 'should become wide-

12   spread, it would adversely affect the *potential* market for the copyrighted work.'"  *Harper &*

13   *Row*, 471 U.S. at 568 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417,

14   451 (1984)).

15        The "central purpose" language comes from *Campbell*.  510 U.S. at 579.  There, *Campbell*

16   explained that "[t]he central purpose of this [fair use] inquiry is to see, in Justice Story's words,

17   whether the new work merely 'supersedes the objects' of the original creation or instead adds

18   something new, with a further purpose or different character, altering the first with new expres-

19   sion, meaning, or message."  510 U.S. at 579 (quoting *Folsom*, 9 F. Cas. at 348).  The critical

20   inquiry on this issue is whether the defendant's use is a superseding use:  "As Justice Story's

21   hypothetical illustrates, the fair use doctrine has *always precluded* a use that 'supersedes the use

22   of the original.'"  *Harper & Row*, 471 U.S. at 550 (quoting *Folsom*, 9 F. Cas. 344-45).  "[I]t is as

23   clear, that if he thus cites the most important parts of the work, with a view, not to criticize, but to

24   supersede the use of the original work, and substitute the review for it, such a use *will be deemed*

25   *in law a piracy*."  *Id.* (emphasis added) (quoting *Folsom*, 9 F. Cas. 344-45).

26        It also places too much emphasis on "transformation" to say that "our Supreme Court has

27

28   Court, Ninth Circuit, and Federal Circuit) stating what it means to be transformative are incorrect
     because those definitions risk swallowing the right to prepare derivative works, which is explicit-
     ly granted in that Copyright Act.

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

decided that the central purpose …."  Disputed Instr. No. 10 (emphasis added).  The jury is likely

to take reference to the views of the Supreme Court as particularly significant and thus afford

even more weight to "transformation."  None of the other instructions specify the origin of the

instruction as the Supreme Court.[3]  This instruction should not either because of concern of the

likely prejudicial effect of such an instruction.

## XI.     DISPUTED INSTRUCTION NO. 11: FIRST FACTOR - TRANSFORMATIVE

Only Google proposes an instruction for Disputed Instruction No. 11 about transformative

use.  Oracle proposes instead a single, comprehensive instruction for factor one that contains a

description of each of the three sub-issues in factor one.  Disputed Instr. No. 10 (Oracle).  No

separate, additional instruction on transformation is required.  Rather, as Oracle has proposed, the

jury can and should be instructed on transformation in a single, unified instruction about factor

one.  It is not necessary to separate the instruction into multiple parts, and, indeed, separating

them is prejudicial in that it contributes to Google's attempts to elevate transformation to its own

separate and determinative factor.

As for the substance of "transformation," the Federal Circuit, relying on the Supreme

Court, defined transformation as follows:

> A new work is transformative if it adds something new, with a further purpose or
> different character, altering the first with new expression, meaning or message.
> The critical question is whether the new work merely supersedes the objects of the
> original creation or instead adds something new.

750 F.3d at 1374 (quoting in large part *Campbell*, 510 U.S. at 579).  This is the Supreme Court's

summary definition of transformation, and Oracle quotes it verbatim in its proposed instruction.

Disputed Inst. No. 10 (Oracle).  Google seems to largely agree with that instruction.  *See* Disput-

ed Instr. No. 11 (Google).  Nevertheless, without explanation or support or acknowledgment of

any modification, Google's proposed instruction deviates from the Supreme Court's definition in

---

[3] For example, the instruction on the third factor could say that "our Supreme Court has decided that you must consider not only the numerical amount of the copying but also the qualitative significance of the copying."  The instruction on the fourth factor could say that "even though the Copyright Act does not explicitly refer to copying by others, our Supreme Court has decided that in addition to considering the effect that Google's use has had on the market or value of the copyrighted work, it is 'important' for you to consider the ramifications if copying akin to Google's became 'widespread' and unrestricted."  (Quoting *Harper & Row*, 471 U.S. at 568).  Such instructions would be necessary to balance reference to the Supreme Court factor one.

critical respects.  Google's proposed instruction begins:

> A new work is transformative if it adds something new, with a further purpose or different character, altering the first **work** with new expression, meaning or message **or incorporating the elements of the first work into a broader work**. The critical question is whether the new work merely supersedes **the first work** or instead adds something new **to the first work**.  **The new work need not change the elements of the original work in order for the new work to be transformative.**

Disputed Instr. No. 11 (Google) (bolded language added by Google).  Each additional element of "transformation" proposed by Google is erroneous and prejudicial to Oracle.

  ***Incorporating elements into a broader work.***  There is no support for transformative use being simply "incorporating the elements of the first work as a part of a broader work."  Google's proposed instruction is not the law; nor could it be.  If it were true that adding a work to a broader work constituted transformative fair use, copyright law would be rendered ineffective because *any* copyrighted work could be added to a larger work and thus, under Google's definition, be a fair use.  For example, it would be permissible for a plagiarist to take an entire book or article or short story of someone else's, copy it verbatim into her larger book or article, and claim transformation simply because the first work is incorporated into a "broader work."  It would similarly be transformative to take an artist's drawing or painting or photograph and include it in a larger collection in a book or exhibit.  Under Google's reading, the Supreme Court wrongly decided *Harper & Row*.  There, The Nation copied a few hundred words from President Ford's memoir, constituting "13% of the infringing article." 471 U.S. at 565.  But, under Google's view of the law, The Nation simply incorporated parts of Ford's memoir into a larger work and thus its infringement should have been a permissible transformative use.  Similarly under Google's reading, the Supreme Court got it wrong in *Stewart v. Abend*.  There the defendant copied portions of the copyright holder's story "constitut[ing] only 20% of the motion picture's story line." *Stewart v. Abend*, 495 U.S. 207, 238 (1990).  Under Google's definition of transformation, incorporating that 20% into a larger motion picture directed by Alfred Hitchcock and starring Jimmy Stewart should have been a transformative use.  However, the Supreme Court in *Stewart*, as it did several years earlier in *Harper & Row*, concluded *as a matter of law* that the defendant's

1  copying was not a fair use.

2  Google did not identify what authorities (if any) support its proposals. At the meet and

3  confer, Google cited for support only *Monge v. Maya Magazines*, 688 F.3d 1164, involving the

4  unlicensed publication in a tabloid of wedding pictures of plaintiff-celebrities. In *Monge*, the

5  Ninth Circuit did not find that the defendant's copying was transformative because the photos

6  were incorporated into a magazine edition. The Ninth Circuit did not find transformation at all.

7  688 F.3d at 1174-76. Thus, the holding in *Monge* is of no assistance to Google.

8  Instead, Google relies on an isolated statement in *Monge* that the defendant "did not trans-

9  form the photos into a new work, as in *Campbell*, or incorporate the photos into a broader work,

10  as in [*L.A. News Serv. v.*] *CBS Broadcasting*[, 305 F.3d 924 (9th Cir. 2002)]." 688 F.3d at 1176.

11  Contrary to Google's proposed instruction, this was *not* a statement about the meaning of

12  transformation—far from it. In *CBS Broadcasting*, the Ninth Circuit *rejected* the argument that

13  the defendant had transformed a video clip of the famous beating of Reginald Denny during the

14  Los Angeles riots simply by incorporating it into a larger work. 305 F.3d at 938-39.

> [I]t does not appear that Court TV's use of the video clip was transformative.
> Merely plucking the most visually arresting excerpt from LANS's nine minutes of
> footage cannot be said to have added anything…. Here, simply extracting the clip
> of the Denny beating and juxtaposing it with a clip from Denny's testimony up-
> dates, but does not change, the purpose of depicting the attack on Denny—its
> newsworthiness.

19  *Id.* at 939. The court acknowledged that there was a "better claim" for transformation for includ-

20  ing the clip into a "video montage … following editing for dramatic effect" because "develop-

21  ment of the montage at least plausibly incorporates the element of creativity beyond mere

22  republication." *Id.* at 939. Significantly, however, there too, even with modifications like edit-

23  ing, the Ninth Circuit still rejected transformation and found the first factor favored the plaintiff.

24  Accordingly, Google has *no support* for its instruction that incorporating a work into a

25  broader work is transformative.

26  ***Not changing elements of the original work.*** Google also adds to the Supreme Court's

27  explanation of transformation that the copyist's work "need not change the elements of the

28  original work in order for the new work to be transformative." This runs directly counter to the

1   Federal Circuit's decision *in this case* that "[a] work is *not transformative* where the user makes

2   *no alteration* to the *expressive content or message* of the original work."  *Oracle Am.*, 750 F.3d at

3   1374 (first two emphases added) (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th

4   Cir. 2013))).  This language could not be clearer:  a use is not transformative if the copyist does

5   not alter the expression copied from the original work.  And, yet, Google's proposed instruction is

6   diametrically contrary.

7         When asked for authority in support of Google's instruction, Google said *Perfect10, Inc.*

8   *v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th

9   Cir. 2003), and *Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013).

10        *Seltzer* provides no support, as it is the origin of the quotation in the Federal Circuit's

11   opinion that alteration of the original work is *necessary* for the new work to be transformative.  In

12   *Seltzer*, a photographer took a photograph "of a weathered, slightly defaced, and torn poster"

13   plastered on walls in Los Angeles as street art of the plaintiff's image of a "screaming, contorted

14   face." 725 F.3d at 1173-74.  During a video displayed during rock concerts, the photograph of the

15   plaintiff's artwork is displayed, but the artwork is "modified, … by adding a large red 'spray-

16   painted cross over the middle of the screaming face" and "chang[ing] the contrast and color and

17   add[ing] black streaks running down the right side of the face." *Id.* at 1174.  In concluding that

18   the use was transformative, the Ninth Circuit emphasized that the use was "not simply a quotation

19   or a republication." *Id.* at 1176.  While the artist's work had "nothing" to do with religion, the

20   defendant's use was for "a street-art focused music video about religion and especially about

21   Christianity." *Id.* at 1176-77.  Accordingly, the defendant's use "conveys new information, new

22   aesthetics, new insights and understandings that are plainly distinct from those of the original

23   piece," which the plaintiff "acknowledged as much."  The Ninth Circuit concluded that the use

24   was transformative because it "alter[ed] … the expressive content or message of the original

25   work." *Id.* at 1177 (emphasis omitted).

26        *Kelly* and *Perfect10* similarly provide no support as both of those cases involve significant

27   modifications to the original work.  For example, the thumbnail images in *Kelly* and *Perfect 10*

28   were indexed and made searchable by associating new keywords with them in a large database,

1    and the originals had been changed into "smaller, lower-resolution thumbnails" that were modi-

2    fied so "users are unlikely to enlarge the thumbnails and use them for [the original's] artistic

3    purposes because the thumbnails are of much lower-resolution than the originals … making them

4    inappropriate as display material."  *Kelly*, 336 F.3d at 815, 818; *accord Perfect 10*, 508 F.3d at

5    1155 (similar, relying on *Kelly*).  Those cases did not involve an exact copy without alteration.

6    Indeed, in each case, the court never reached whether full-sized, higher-resolution pictures were

7    "transformative," *Kelly*, 336 F.3d at 822 (remanding on infringement of full-size images); *Perfect

8    10*, 508 F.3d at 1159-60 (finding full-sized images not copied).

9         ***"Productive."***  Google's proposed instruction would instruct the jury that "[a] new use is

10   transformative if it is *productive* …."  Disputed Instr. No. 11 (emphasis added).  This is an incor-

11   rect statement of the law.  Neither the Supreme Court, Federal Circuit, nor Ninth Circuit uses

12   "productive" to define transformative use, and, in fact, the concept of a "productive use" as trans-

13   formative has been specifically rejected by the Supreme Court.  *Campbell* specifically rejected

14   use of that term by citing *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417

15   (1984), as an example where the use was not transformative.  510 U.S. at 579.  *Sony* similarly

16   rejected use of the term "productive," stating that "[t]he statutory language does not identify any

17   dichotomy between productive and nonproductive [copying], but does require consideration of

18   the economic consequences of copying."  464 U.S. at 455 n.40 (rejecting the court of appeals' use

19   of the term "productive" as "erroneous").

20        When Oracle asked counsel during the meet-and-confer to provide the authority for

21   "productive" as the standard for transformation, Google listed a host of authorities—hoping one

22   would support its instruction.  None do.  For example, counsel cited the Supreme Court's decision

23   in *Sony*, but, as just explained, *Sony* rejected that transformation is about productive use, and the

24   Supreme Court reaffirmed that principle in *Campbell* when it explained that *Sony* is not a case

25   about transformative use.

26        Google's counsel also referred Oracle to *Harper & Row* and *Seltzer v. Green Day*.

27   *Harper & Row* does not discuss transformative use because there, like here, the copyist took

28   portions of the copyright owner's work and copied them verbatim without changing the copied

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1    expression.  There was no reason to consider transformative use.  Nevertheless, Google says that

2    *Harper & Row* supports it because *Harper & Row* says:  "The fact that an article arguably is

3    'news' and therefore a productive use is simply one factor in a fair use analysis."  471 U.S. at 561.

4    *Harper & Row* does not tie this to transformation; instead it is a reference to the preamble of

5    § 107, which lists several possible fair uses, such as "criticism, comment, *news reporting*, teach-

6    ing (including multiple copies for classroom use), scholarship, or research."  17 U.S.C. § 107

7    (emphasis added).  Google does not claim, nor could it, that Android is "criticism, comment,

8    news reporting, teaching, scholarship, or research."  It is a commercial product.

9         Google's other citation was to *Seltzer v. Green Day*, block quoting a portion of a law re-

10   view article by Judge Leval.  725 F.3d at 1176.  Needless to say, Judge Leval's article does not

11   control here.  Moreover, though the word "productive" appears in *Seltzer*'s quotation of the law

12   review article, the decision never again refers to "productive."  Instead, it is another part of the

13   quotation—particularly apt in this case—that Seltzer relies upon:  "A quotation of copyrighted

14   material that merely repackages or republishes the original is unlikely to pass the test; in Justice

15   Story's words, it would merely 'supersedes the objects' of the original."  *Id.*  It was because the

16   defendant's use in *Seltzer* was "not simply a quotation or a republication" that made the use there

17   transformative.  *Id.*  In any event, to somehow read *Seltzer* as adding a "productivity" component

18   to transformation would be contrary to the Supreme Court's decisions in *Sony* and *Campbell*.

19        ***"Adding value over and above the original."***  It is also incorrect and confusing to refer to

20   transformative use as any use "adding value."  Dispute Instr. No. 11.  "A use is 'transformative' if

21   it 'adds something new, with a further purpose or different character, altering the first with new

22   expression, meaning or message.'"  *Oracle Am.*, 750 F.3d at 1374 (quoting *Campbell*, 510 U.S. at

23   579).  It is not about "added value."  A "distinct" purpose is critical.  *Id.*  Otherwise, "transforma-

24   tive" will swallow the exclusive right to exploit derivatives under 17 U.S.C. § 106(2).  A deriva-

25   tive is a work that is based upon an earlier work with added material and added value, such as in

26   the form of an adaptation to a different medium.  *Oddo v. Ries*, 743 F.2d 630, 634 n.5 (9th Cir.

27   1984) (a derivative work "include[s] new material added").  Accordingly, "productive" or "adding

28   value" is not a basis for distinguishing lawful fair use from unlawful infringement of the exclusive

1    right to create a derivative work.  Any instruction on transformation should distinguish between

2    transformation that is entitled to protection (such as news reporting, criticism, commentary,

3    parody) and transformation that "supplants" or "supersedes" the derivative work right.  *See*

4    *Oracle Am.*, 750 F.3d at 1374 (discussing *Campbell* and examples in the preamble).

5          Additionally, as both the Supreme Court and Federal Circuit have held:  "The critical

6    question is 'whether the new work merely supersede[s] the objects of the original … or instead

7    adds something new.'"  750 F.3d at 1374 (quoting *Campbell*, 510 U.S. at 579).  But, as the

8    Federal Circuit explains, to be transformative the defendant must "use [the] copyrighted material

9    for purposes distinct from the purposes of the original material."  *Id.* (quoting *Elvis Presley*

10   *Enters., Inc. v. Passport Video*, 349 U.S. 622, 629 (9th Cir. 2003)).  That is why the Federal

11   Circuit explains that the fair use "inquiry 'may be guided by the examples given in the preamble

12   to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the

13   like.'"  *Id.* (quoting *Campbell*, 510 U.S. at 578-79).  In each of those examples, the copyrighted

14   work is used for a distinct purpose, such as criticism or comment.

15         ***"Different manner."***  Google's proposed instruction also introduces the concept of use in

16   a "different manner."  Disputed Instr. No. 11 (Google).  The phrase "different manner" comes

17   from an out-of-circuit decision referenced in the Federal Circuit decision as a "*see also*" in a

18   string cite, *Oracle Am.*, 750 F.3d at 1374 (citing *Bouchat v. Baltimore Ravens Ltd. P'Ship*, 619

19   F.3d 301 (4th Cir. 2010)).  If "different manner" is meant to mean the same as "different pur-

20   pose," the use of "different manner" is duplicative, unnecessary, and unfairly tilts the instruction

21   in favor of Google by providing multiple similar terms in order to maximize the possibility that

22   the jury will find one apt.  If, however, "different manner" is meant to have a different meaning

23   than "different purpose," then the phrase finds no support in the Ninth Circuit.  In fact, it suggests

24   once again that simply using a work unchanged as part of something bigger is fair use.  A set

25   forth above, that is not the test.

26         ***"Little more than plagiarism."***  It is not evenhanded, fair, or balanced to instruct in lofty

27   and general terms the definition of transformation, on the one hand, and to define what is not

28   transformative as "little more than plagiarism."  Disputed Instr. No. 11 (Google).  "Little more

than plagiarism" is *not* the test for what is not transformative.  Transformation requires "real, substantial" modification of the original work, "not merely the facile use of scissors[] or extracts of the essential parts[] constituting the chief value of the original work."  *Elvis Presley Enters.*, 349 F.3d at 628-29.  Accordingly, even something that is much more than just close to "plagiarism" may still be found to be not transformative.  It is legally erroneous to imply otherwise.

   ***Merely supersedes the objects of the original.***  Google's instruction also downplays the "critical question" of whether the use "merely supersedes or adds something new."  Disputed Instr. No. 11 (Google) ("[plagiarism] in a *manner that supersedes*" (emphasis added)).   A use is not fair use if it "supersede[s] the objects[] of the original work."  *Campbell*, 510 U.S. at 576. The inquiry "focuses on whether the new work merely replaces the object of the original creation," *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001), because "fair use is 'limited to copying by others which does not materially impair the marketability of the work which is copied,'" *Oracle Am., Inc.*, 750 F.3d at 1376 (quoting *Harper & Row*, 471 U.S. at 566-67).  This is the standard and is required by Supreme Court precedent and the law of this case.

   Google similarly overstates the law on transformation when it proposes to instruct the jury that the "greater the transformation, the more likely an accused use will be a fair use ...."  Disputed Instr. No. 11 (Google).  While prevailing on a factor (or even a subfactor) increases that party's odds of prevailing on fair use, that does not distinguish transformation from any other factor.  Moreover, providing such an instruction and then not doing so for each and every other component of the fair use inquiry connotes to the jury that transformation is the most important factor—and even potentially dispositive.  It is not, and it is error to suggest otherwise to the jury.

   Finally, it is noteworthy that Google flips the order of commerciality and transformation. In Disputed Instruction No. 10, above, Google identifies the "two issues" for factor one as commerciality and transformation, in that order.  Yet, Google flips the order and proposes instructing the jury on transformation before commerciality.  That is confusing and does not make logical sense.

## XII. DISPUTED INSTRUCTION NO. 12: COMMERCIAL USE

   As with transformative use, only Google proposes a separate, independent instruction on

1   commercial use.  Disputed Instr. No. 12 (Google).  Oracle's comprehensive instruction on factor

2   one includes an instruction on commercial use.  *See* Disputed Instr. No. 10 (Oracle).  All of the

3   elements of factor one should be addressed in the same instruction, just as both parties propose for

4   all of the other factors.  Presenting the jury a comprehensive, unified instruction on the first factor

5   ensures that one element of one factor is not improperly elevated over any other factor or sub-

6   factor.

7        The instruction on commercial use should direct a finding in Oracle's favor that Google's

8   use is "purely" or "entirely" commercial.  As discussed above (at 17), the Federal Circuit found

9   "it is undisputed that Google's use of the API packages is commercial."  *Oracle Am.*, 750 F.3d at

10  1376.  Indeed, "Google … *admittedly* copied portions of the API packages …. for what were

11  purely commercial purposes."  *Id.* (emphasis added); *supra* 17-18.  The jury should be so

12  instructed.

13       In addition, Google's proposed instruction is unfairly favors Google and prejudices

14  Oracle.  Google proposes instructing the jury that transformation can diminish the "importance"

15  of commercial use without a corresponding instruction that the extent of commercial use can

16  diminish the importance of other factors.  The defendant's commercial use must be weighed

17  against transformation.  It is erroneous to say that it is only the extent of transformation that

18  figures into the analysis.

19       Indeed, the Supreme Court has recognized that the degree of commerciality may outweigh

20  other aspects of fair use.  *See Campbell*, 510 U.S. at 585 ("The use, for example, of a copyrighted

21  work to advertise a product, even in a parody, will be entitled to less indulgence under the first

22  factor of the fair use enquiry than the sale of a parody for its own sake, let alone one performed a

23  single time by students in school").  As Google's proposed instruction suggests about transforma-

24  tion, so too "the commercial nature of a use is a *matter of degree, not an absolute*."  *Sega Enters.*

25  *Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992) (emphasis added).  "[T]he degree to

26  which the new user exploits the copyright for commercial gain—as opposed to incidental use as

27  part of a commercial enterprise—affects the weight we afford commercial nature as a factor."

28  *Elvis Presley Enters*, 349 F.3d at  627.  Thus, the jury should be instructed that an entirely

1   commercial use can diminish the significance of any transformation.  *See, e.g.*, *Perfect 10*, 508

2   F.3d at 1167 ("weigh[ing]" commercial versus transformative use); *Monge*, 688 F.3d at 1183

3   (same).  Moreover, as the Ninth Circuit has repeatedly recognized, "every commercial use of

4   copyrighted material is presumptively an unfair exploitation of the monopoly privilege that

5   belongs to the owner of the copyright." *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1113 (9th

6   Cir. 1998) (quoting *Sony Corp. of Am.*, 464 U.S. at 451); *Leadsinger, Inc. v. BMG Music Publ'g*.,

7   512 F.3d 522, 531-32 (9th Cir. 2008) (same).

8       It is no answer to say that the Supreme Court eliminated the irrebuttable presumption that

9   commercial use is not a fair use in *Campbell*, 510 U.S. at 591.  *Campbell* was decided in 1994,

10  and the Ninth Circuit has since explained that "[w]hile a commercial use does not by itself

11  preclude a defense of fair use, 'every commercial use of copyrighted material is presumptively an

12  unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.'" *See,*

13  *e.g.*, *L.A. News Serv. v. Reuters Tele. Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998) (quoting *Sony*,

14  464 U.S. at 451); *accord Micro Star*, 154 F.3d at 1113 (decided in 1998).

15  **XIII.   DISPUTED INSTRUCTION NO. 13: SECOND FACTOR**

16      Both parties propose an instruction on Disputed Instruction No. 13 regarding the second

17  fair use factor.  Oracle's proposed instruction quotes the controlling law and relevant application

18  of that law precisely from the Federal Circuit's decision.  Google's proposed instruction does not.

19  Google's proposed instruction builds bias into the instruction in Google's favor.  Google's

20  instruction is not evenhanded or balanced; it prejudicially tilts the law against Oracle.

21      **A.**  Both parties agree that "[c]reative expression falls within the core of the copyright's

22  protective purposes."  Disputed Instr. No. 13 (Oracle); Disputed Instr. No. 13 (Google) ("Creative

23  expression is at the very heart of copyright protection").  Significantly, however, Google's

24  proposed instruction omits the critical point from the Federal Circuit that "computer programs

25  have both functional and expressive components." *Oracle Am.*, 750 F.3d at 1375.  It is not

26  evenhanded to propose an instruction that says that creative expression is at the heart of copyright

27  protection, and then fail to instruct the jury that computer programs contain creative expression.

28      **B.**  Google's reference to "innovative," Disputed Instr. No. 13 (Google), is incorrect.  The

1    proper term in copyright is "original" or "creative." *Oracle Am.*, 750 F.3d at 1365.  "Original, as

2    the term is used in copyright, means only that the work was independently created by the author

3    (as opposed to copied from other works), and that it possesses at least some minimal degree of

4    creativity.'" *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991)).  No

5    "novelty" is required; any "creative spark" is sufficient, "no matter how crude [or] humble." *Id.*

6        **C.**  Google's proposed instruction that "the structure, sequence, and organization of a

7    computer program may be (or may not be) creative," Disputed Instr. No. 13 (Google), has already

8    been rejected by the Federal Circuit.  The Federal Circuit found in this case that "it is *undisputed*

9    here that the declaring code and the structure and organization of the API packages are both

10   *creative and original*."  *Oracle Am.*, 750 F.3d at 1365 (emphasis added).  Based on that factual

11   finding, the jury should be instructed that the elements of the Java platform that Google copied

12   are "creative," *id.*, and "entitled to copyright protection," *id.* at 1348.

13       Similarly, Google's proposed instruction states that "computer programs … may be

14   protected by copyright."  Disputed Instr. No. 13.  This ignores the critical fact that, in this case,

15   the Federal Circuit has already held that Oracle's works *are* copyright protected.  *Oracle Am.*,

16   750 F.3d at 1348, 1354, 1381.  It misleads the jury to state only that computer programs may be

17   copyright protected, when it has been found that the computer programs *at issue in this case* are

18   copyright protected.

19       Relatedly, there is *no reason* to instruct the jury that "computer programs are not literary

20   works like novels or poems."  Disputed Instr. No. 13 (Google).  Indeed, the Copyright Act

21   protects computer programs *as literary works*.  *Oracle Am.*, 750 F.3d at 1354.  It is sufficient to

22   instruct the jury, as Oracle proposes, that functional components are entitled to lower degree of

23   protection, Disputed Instr. No. 13 (Oracle), which distinguishes computer works from novels or

24   poems without unduly biasing the instruction by making it seem as though copyright protection

25   for computer programs is unusual or insubstantial.

26       Google's proposed instruction suggests to the jury that copyright protection for computer

27   programs is less robust, even when the protection is for the creative expression within the

28   computer program.  For example, Google's proposed instruction reads:  "Fair use is generally

- 30 -

1   more difficult to establish for copying of traditional literary works than for copying of informa-

2   tion works or using functional elements of a work *such as computer software*."  Disputed Instr.

3   No. 13 (Google).  An evenhanded instruction, such as the one Oracle proposes, would inform the

4   jury that "'[w]here functional components are themselves unprotected (such as they are dictated

5   by considerations of efficiency or external factors), those elements should be afforded a lower

6   degree of protection than more traditional literary works.'"  Disputed Instr. No. 13 (quoting

7   *Oracle Am.*, 750 F.3d at 1375). Singling out computer software specifically as Google does in its

8   instruction is unjustified.  Oracle's instruction already states factor two is not as strong for

9   informational works and functional elements of a work.  Specifically identifying computer soft-

10  ware titles the balance of the instruction in favor of Google and to prejudice Oracle.

11      **D.**  It is improper to instruct the jury that "[f]air use is generally more difficult to establish

12  for … using functional elements of a work *such as a computer software*."  Disputed Prop Instr.

13  No. 13 (Google).  *Functional* elements are entitled to less deference under factor two, but that

14  does not mean, and the jury should not be instructed, that "*fair use* is generally more difficult" for

15  such works.  Indeed, the expressive elements of a work, what the Federal Circuit found to be

16  protectable here, are entitled to full protection even though they are part of a computer program; it

17  is prejudicial to suggest otherwise to the jury.

18      **E.**  It is misleading and inaccurate to discuss just the "structure, sequence, and organiza-

19  tion" of the programs or API packages.  Disputed Instr. No. 13 (Google).  Google did not just

20  copy the structure, sequence, and organization, and it is not just the structure, sequence, and or-

21  ganization of the API packages that is copyright protected.  The Federal Circuit "conclude[d]"

22  that *both* "the declaring code and the structure, sequence, and organization of the 37 Java API

23  packages are entitled to copyright protection."  *Oracle Am.*, 750 F.3d at 1354.  In addition to the

24  structure, sequence, and organization of the API packages, "Google concedes that it copied the

25  declaring code verbatim."  *Id.* at 1356; ECF No. 1018 (Final Jury Instr.) ¶ 19 ("Google agrees that

26  the structure, sequence and organization of the 37 accused API packages in Android is substan-

27  tially the same as the structure, sequence and organization of the corresponding 37 API packages

28  in Java."); ECF No. 1488 (Tentative Trial Plan) (Google "agrees" each accused version of An-

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1   droid uses the declaring code and the structure, sequence, and organization of the API packages).

2   **F.**   Finally, Google proposes to instruct the jury that the jury should consider whether

3   "some or all of the elements of the 37 Java SE API packages are necessary to write programs in

4   the Java language, are essential components of any Java language-based program, or promote

5   compatibility and/or interoperability with the Java language."  Disputed Instr. No. 13.  This

6   instruction is unnecessary and improper because Google has recently represented to the Court that

7   it is not arguing that it was required to copy as a technical matter to write programs in the Java

8   programming language, and the Federal Circuit found that Google was *not* required to copy the

9   37 Java API packages to write in the Java programming language.

10   At last week's hearing on Oracle's motion *in limine* regarding Dr. Astrachan, Google

11   stated that it was not making any arguments that Google's copying was necessary or essential for

12   writing an operating system or programs in the Java programming language.  4/13/2016 Tr. at

13   100:2-3 ("This has nothing to do with necessity, and the argument is not that the [Java APIs] are

14   absolutely necessary."); *id.* at 106:11-13 ("We're not saying [copying the Java APIs is] a techni-

15   cal requirement.  That is true.  We agree with [Oracle].  We agree with the Federal Circuit that it

16   is not a technical requirement."); *id.* at 107:16-20 ("The Court: That heading that says 'Are neces-

17   sary for basic compatibility with the Java programming language,' that comes pretty close to say-

18   ing that it's required; right?  [Google]: *He will not be testifying about the heading*, Your Honor. I

19   think that may be a shorthand." (emphasis added)).  Instead, at the hearing, Google said its argu-

20   ment was limited to commercial compatibility, which Google defined as meeting Java developer

21   expectations.  Nevertheless, Google's proposed instruction is *not* about *developer expectations*; it

22   is entirely about technical interoperability and compatibility with the Java language.

23   As mentioned above in the quotations from Google at the hearing, Google recognizes that

24   the Federal Circuit held that copying the 37 Java API packages was not required as a technical

25   matter.  Indeed, the Federal Circuit found:

26   • "Indeed, the court found that … '*nothing* in the rules of the Java language ... *required* that
     Google replicate the same groupings,'" 750 F.3d at 1361 n.7 (emphasis added) (quoting

27   ECF No. 1202 at 37).

28   • "[A]s the court acknowledged, *nothing* prevented Google from writing its own declaring

- 32 -

1

code, along with its own implementing code, to achieve the same result," *id.* at 1361 (emphasis added);

2

3

- "As the district court acknowledged, Google could have structured Android differently and could have chosen different ways to express and implement the functionality that it copied. Specifically, the court found that 'the very same functionality could have been offered in Android without duplicating the exact command structure used in Java.' The court further explained that Google could have offered the same functions in Android by 'rearranging the various methods under different groupings among the various classes and packages.' … [T]he declaring code could have been written and organized in any number of ways and still have achieved the same functions," *id.* at 1368 (quoting ECF No. 1202 at 6-7).

4

5

6

7

These findings were essential to the Federal Circuit's holdings rejecting Google's merger and

8

"method of operation" arguments. *Id.* at 1361 (rejecting merger because "nothing prevented

9

Google from writing its own declaring code"); *id.* at 1365 (rejecting Google's method-of-

10

operation argument, in part, because "Google did not need to copy the structure, sequence, and

11

organization of the Java API packages to write programs in the Java language").[4]

12

Google has suggested previously that while the Federal Circuit closed the door as a factual

13

matter on Google's contention that it had to copy to use the Java language, the Federal Circuit

14

endorsed a separate instruction about "Google's desire to leverage the existing knowledge of soft-

15

ware developers familiar with the Java language and achieve commercial interoperability." *See*

16

ECF No. 1661 (Google's Critiq. of Ct.'s Prop. Instrs.) at 4. But the Federal Circuit did no such

17

thing. In discussing the second factor, the Federal Circuit explained: "Thus, where the nature of

18

the work is such that *purely functional elements* exist in the work and it is *necessary to copy* the

19

expressive elements in order to *perform those functions*, consideration of this second factor argu-

20

ably supports a finding that the use is fair." *Oracle Am.*, 750 F.3d at 1375 (emphasis added).

21

That statement is *not* about developer expectations; it is about *technical* compatibility and interop-

22

23

24

25

26

27

28

---

[4] The Federal Circuit did leave open the possibility that some few elements of the 37 packages could be necessary to programming in the Java language: "[I]t is undisputed that—other than perhaps as to the three core packages—Google did not need to copy the structure, sequence, and organization of the Java API packages to write programs in the Java language." *Id.* at 1365. On remand, Oracle's technical experts have concluded that no more than 62 declarations within the three packages—not three packages in their entirety—may be necessary, and Google has agreed with that analysis. 4/13/2016 Tr. 99:2-8 (Google: "There are a small number of classes and methods where there is agreement that they are a necessary part of the Java language specification …. 62 I believe"). However, as Google admitted at last week's hearing, Google is *not* making any such argument about copying due to technical requirements. Instead, Google's argument is limited to its theory of "commercial interoperability" with "developer expectations."

1   erability, which the Federal Circuit foreclosed through its factual findings.  *Supra* 32-33.

2   Similarly, when the Federal Circuit discusses interoperability two pages later in its opinion, while

3   applying the law it identified two pages earlier, the court says that if it was "necessary for anyone

4   to copy … to write programs in the Java language," that could be relevant to fair use.  *Id.* at 1377

5   (acknowledging possible relevance of packages that are "essential components of any Java

6   language-based program").  But Google has disavowed those sorts of arguments, making only

7   arguments about developer expectations that have no relevance to fair use under the Federal

8   Circuit's decision.

9   **XIV.   DISPUTED INSTRUCTION NO. 14: THIRD FACTOR**

10          Both parties propose an instruction for Disputed Instruction No. 14.  Oracle again quotes

11  directly from the Federal Circuit and the Supreme Court.  Google, by contrast, again distorts its

12  proposed instruction in its favor by avoiding direct quotation from controlling authority and

13  expressly and improperly incorporating "transformative use" into the third factor.  Disputed Instr.

14  No. 14 (Google).

15          **A.**  There is no authority for importing transformative use into the third factor and

16  suggesting that it drives whether the amount of copying is appropriate or not in this case.  When

17  asked during the meet and confer for the authority for such an instruction, Google pointed to

18  *Campbell*, 510 U.S. at 586-88, but *Campbell* says no such thing.  *Campbell* does "recognize that

19  the extent of permissible copying varies with the purpose and character of the use," *id.* at 586-87,

20  but that is a far cry from allowing factor one to coopt factor three.  As *Campbell* explicitly

21  acknowledged, the facts of its case differed from the typical case, and differ dramatically from the

22  facts here, because the purpose of the use in *Campbell* was *parody*.  So, whereas in *Harper &*

23  *Row* (a case much more similar to the instant matter), the Court "signaled the significance of the

24  quotations in finding them to amount to 'the heart of the book,' the part most likely to be news-

25  worthy and important in licensing serialization," the rule was different in *Campbell* because the

26  accused work was a parody:  "Copying does not become excessive in relation to parodic purpose

27  merely because the portion taken was the original's heart."  *Id.* at 587-88 ("Parody's humor, or in

28  any event its comment, necessarily springs from recognizable allusion to its object through

1  distorted imitation…..  When parody takes aim at a particular original work, the parody *must be*

2  *able to conjure up at least enough of that original* to make the object of its critical wit

3  recognizable." (emphasis added, quotation marks omitted)).  Such a consideration has no applica-

4  tion whatsoever here – Android is not a parody, nor does Google claim that it was taking any part

5  of the Java APIs to comment on them.  Similarly, the Supreme Court in its other fair use

6  decisions and the Ninth Circuit does not consider transformation as part of its analysis of the third

7  factor.  *See, e.g.*, *Harper & Row*, 471 U.S. at 564-65; *Stewart*, 495 U.S. at 238; *Monge*, 688 F.3d

8  at 1178-80 (not discussing transformation in factor three); *Elvis Presley Enters.*, 349 F.3d at 630

9  (same); *Leadsinger*, 512 F.3d at 531 (same); *Wall Data*, 447 F.3d at 780 (same); *L.A. News Serv.*

10 *v. Reuters Tele. Int'l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998) (same); *KCAL-TV Channel 9*, 108

11 F.3d at 1122 (same); *Sony Computer Entm't*, 203 F.3d at 607.

12      In any event, if *Campbell's* mention of factor one means that "the purpose and character

13 of the use" must be considered for factor three, 510 U.S. at 586-87—which Oracle submits is

14 incorrect—then the *entirety* of factor one must be considered, including the commercial nature

15 and purpose as well as transformation and bad faith, so that the jury can consider commercial,

16 transformative, and bad faith use of the plaintiff's work.  Limiting the instruction as Google

17 proposes to only the transformative nature and purpose from factor one—which is to say, the only

18 element of factor one that could potentially support a defendant's claim of fair use—unfairly and

19 erroneously biases the instruction in favor of Google.

20      **B.**  Finally, Google seeks to import into the instruction on the third factor the same in-

21 struction it proposed on the second factor: "you may consider … whether some or all of the por-

22 tions used are necessary to write programs using the Java language, are essential components of

23 any Java language-based program, or promote compatibility and/or interoperability with the Java

24 language."  Disputed Instr. No. 14 (Google).  For all the reasons discussed on this portion of the

25 instruction in Disputed Instr. No. 13, *supra*, which Oracle incorporates by reference here,

26 Google's proposed instruction is incorrect and prejudicial to Oracle and should not be given to the

27 jury.  Moreover, Google provides no reason whatsoever for why this instruction would be appro-

28 priate for factor three.  As explained (at 32-34), Google did not need to copy all of the declaring

1    code and the entire structure, sequence, and organization of the 37 Java API packages to write

2    programs in the Java language.  If, as Google proposes, a finding "that Google used more than

3    was reasonably necessary for the new work … weighs against fair use," Disputed Instr. No. 13

4    (Google), factor three must favor Oracle as a matter of law.

5    **XV.    DISPUTED INSTRUCTION NO. 15: FOURTH FACTOR**

6            Both parties propose an instruction for Disputed Instruction No. 15 on the fourth fair use

7    factor.  As laid out plainly in Oracle's proposed instruction, the fourth factor considers three types

8    of market effects: (1) the effect of a defendant's use upon the value of the copyright holder's

9    copyrighted work and its derivatives; (2) the effect of the defendant's use upon the potential

10   market for the copyright holder's copyrighted work and its derivatives; and (3) whether

11   unrestricted and widespread copying of the sort engaged in by the defendant would have a

12   substantially adverse impact on the potential market for the copyright holder's copyrighted work

13   and its derivatives.  Disputed Instr. No. 14 (Oracle).

14           Google's instruction, by contrast, (1) ignores harm to derivative works, a critical

15   component of the fair use analysis, particularly on the fourth factor, (2) omits the importance of

16   the fourth factor to the fair use analysis as a whole, and (3) adds several additional elements to the

17   instruction that have no place in the instruction.

18           **A.**  The most glaring problem with Google's proposed instruction is that it omits harm to

19   the actual or potential market for or value of works that are *derivatives* of the copyrighted works

20   at issue.  *See* Disputed Instr. No. 14 (Google).  The value of a copyrighted work includes the

21   entire bundle of rights associated with the work under § 106.  Section 106 grants the owner of a

22   work the "exclusive rights" to reproduce, prepare derivative works, distribute, and publicly

23   perform and display works.  17 U.S.C. § 106.  Section 106 grants the owner the exclusive right

24   not only to do these things herself, but also to authorize others to do them.  *Supra* 2.  Thus, when

25   the fourth factor considers "value," it must include consideration of not only the right of

26   reproduction under § 106(1), but also the rest of these exclusive rights.  It must include not only

27   the right to do these things oneself, but also to license others to do them.  The value of the work

28   includes the right to make derivative works, § 106(2), the right to decide how and whether to

- 36 -

1    publish and distribute the work, § 106(3), the right to publicly display and perform, § 106(4) &

2    (5), and the right to authorize anyone else to do these things, § 106.

3         Indeed, three of the four Supreme Court cases on fair use in the modern era have been

4    concerned with protection of the right to prepare derivative works.  *Campbell*, 510 U.S. at 593

5    ("Evidence of substantial harm to it [a derivative] would weigh against a finding of fair use, be-

6    cause the licensing of derivatives is an important economic incentive to the creation of origin-

7    als."); *Harper & Row*, 471 U.S. at 568 ("If defendant's work adversely affects the value of any of

8    the rights in the copyrighted work (in this case the adaptation and serialization right) the use is not

9    fair" (quotation marks, brackets omitted)); *Stewart*, 495 U.S. at 238 (unfair use "adversely affects

10   the story owner's adaptation rights").  As those cases demonstrate, the Supreme Court has

11   repeatedly made clear that harm to derivative works must be considered under factor four:  "This

12   inquiry must take account not only of harm to the original but also of harm to the market for der-

13   ivative works."  *Harper & Row*, 471 U.S. at 568; *Campbell*, 510 U.S. at 587 ("The facts bearing

14   on this factor will also tend to address the fourth, by revealing the degree to which the parody

15   may serve as a market substitute for the original or potentially licensed derivatives"); *accord id.*

16   ("The enquiry must take account not only of harm to the original but also of harm to the market

17   for derivative works."); *see also Micro-Star v. Formgen, Inc.*, 154 F.3d 1107, 1113 (9th Cir.

18   1998) ("Only [copyright owner] has the right to enter that market; whether it chooses to do so is

19   entirely its business"); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001)

20   ("Moreover, lack of harm to an established market cannot deprive the copyright holder of the

21   right to develop alternative markets for the works.").

22        Nevertheless, Google's proposed instruction does not instruct the jury to consider harm to

23   works that are derivatives of the Java SE 1.4 and 5.0 copyrighted works.  The omission of harm to

24   derivative works is particularly prejudicial in this case for two reasons.  First, the Federal Circuit

25   has already found that "Sun was licensing a derivative version of the Java platform for use on

26   mobile devices: the Java Micro Edition ('Java ME')" and that "Oracle licensed Java ME for use

27   on feature phones and smartphones."  *Oracle Am.*, 750 F.3d at 1350.  "Android," the Federal

28   Circuit held, "is a software platform that was designed for mobile devices and competes with Java

1    in that market." *Id.*; *see also* ECF No. 1629-4 (Oracle Br. on Factor Four) at 4-10 (presenting

2    evidence of harm to Oracle's copyrighted works and derivatives thereof).

3         Second, Oracle's exclusive right to make and distribute derivatives includes the right to

4    make and sell Android, as Android is a derivative of the Java SE platform.  A derivative work is

5    any work that incorporates a sufficient amount of the original to be infringing were it made with-

6    out permission.  *Mirage Ed., Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343 (9th Cir.

7    1988); *see* 17 U.S.C. § 101 (defining "derivative work"); *see also* 1 Nimmer § 3.01, at 3-3.

8    Google copied the declaring code and the structure, sequence, and organization of the 37 Java

9    API packages into the Android operating system, which has been found by a jury and the Federal

10   Circuit to infringe.  Android itself violates Oracle's exclusive right under § 106(2) to prepare and

11   distribute derivative works, such as Android.  17 U.S.C. § 106(2).

12        **B.**  As the Supreme Court has recognized, "this [fourth fair use] factor is 'undoubtedly the

13   single most important element of fair use.'"  *Oracle Am.*, 750 F.3d at 1376 (quoting *Harper &*

14   *Row*, 471 U.S. at 566).  As the Federal Circuit explained:  "This factor reflects the idea that fair

15   use 'is limited to copying by others which does not materially impair the marketability of the

16   work which is copied.'"  *Oracle Am.*, 750 F.3d at 1376 (quoting *Harper & Row*, 471 U.S. at

17   566-67).  Google's proposed instruction does not instruct the jury on the importance of this factor,

18   and even minimizes the factor by suggesting the primacy of transformation, Disputed Instr. No.

19   15 (Google), and explicitly advising the jury that it is "to decide how much weight to give each of

20   the factors" without any instruction about their relative weights, Disputed Instr. No. 17 (Google).

21   *See also* Disputed Intr. No. 15 (the fourth factor "will vary … with the relative strength of the

22   showing on the other factors").

23        This is error.  The Court should instruct the jury, as Oracle proposes, that factor four is

24   "the single most important element of fair use."  Disputed Instr. No. 15 (Oracle).  Though it is

25   true that *Campbell* does not repeat the "single most important element" statement from *Harper &*

26   *Row*, *Campbell* certainly does not overrule *Harper & Row* on this point.  Moreover, the Federal

27   Circuit's decision in this case, handed down long after *Campbell*, said that the fourth factor is the

28   most important factor.  *Oracle Am.*, 750 F.3d at 1376.  Similarly, the Ninth Circuit has repeatedly

1   stated that the fourth factor is the most important, even long after *Campbell*.  *See, e.g.*, *Monge*,

2   688 F.3d at 1180; *Elvis Presley Enters.*, 349 F.3d at 630.  Those decisions are controlling here.

3       **C.**  Google proposes to instruct the jury that "[a] use can be a fair use even if it causes

4   some market harm."  Disputed Instr. No. 15 (Google).  There is no need to provide such an

5   instruction, which biases the entire instruction by diminishing the importance of market harm to

6   the prejudice of Oracle.  There are four factors and the jury will be instructed on each with no

7   suggestion that any one is dispositive.

8       However, the jury should be told that factor four is "the single most important," and it

9   "reflects the idea that fair use is limited to copying by others which does *not materially impair the*

10  *marketability of the work which is copied*."  *Oracle Am.*, 750 F.3d at 1376 (quotation marks

11  omitted).  As the Supreme Court as recognized, fair use has "always precluded a use" that impairs

12  the marketability of the original work by "'supersed[ing]'" it in the marketplace.  *Harper & Row*,

13  471 U.S. at 550 (quoting *Folsom*, 9 F. Cas. at 345).  Accordingly, the Supreme Court instructs

14  that "*to negate fair use* one need only show that if the challenged use should become widespread,

15  it would adversely affect the potential market for the copyrighted work."  *Id.* at 568 (emphasis

16  altered) (quotation marks omitted).

17      In addition, the Supreme Court and the Ninth Circuit have emphasized that a defendant

18  cannot prevail under factor four unless *the defendant* presents favorable evidence about the lack

19  of an effect on the market.  In *Campbell*, the Supreme Court remanded in part because the

20  defendants had presented no evidence on market harm.  510 U.S. at 593-94.  "Since fair use is an

21  affirmative defense, [the defendants] must bring forward favorable evidence about relevant

22  markets.  Given their failure to submit evidence on this point … we conclude that 'it is impossible

23  to deal with the fourth factor except by recognizing that a silent record on an important factor

24  bearing on fair use disentitles the proponents of the defense[]' … to relief from the preliminary

25  injunction."  *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir.

26  1997) (brackets omitted) (quoting *Campbell*, 510 U.S. at 594)); *accord Campbell*, 510 U.S. at 590

27  & n.21 ("Since fair use is an affirmative defense, its proponent would have difficulty carrying the

28  burden of demonstrating fair use without favorable evidence about relevant markets.…  Even

1    favorable evidence, without more, is no guarantee of fairness.").

2          There is no reason or basis (let alone authority) for Google's proposed instruction that a

3    use can be fair even if there is "some market harm."  Disputed Instr. No. 15 (Google).

4          **D.**  In that same paragraph, Google again tries to inappropriately import its arguments

5    about transformation into factor four.  Google proposes that the Court instruct the jury that it

6    "should not consider any harm caused by a transformative use, which does not serve as a substi-

7    tute for the original work."  Disputed Instr. No. 15 (Google).  It is hard to comprehend what

8    Google is requesting, but it seems to be a request that the jury be instructed that the market harm

9    caused by a transformative work does not count in factor four or, even more error-ridden, that if

10   the jury finds a work to be transformative, the jury should not consider the fourth factor at all.

11   This would appear to be a reference to *Campbell*, which said something very different from what

12   Google proposes.  In *Campbell*, the Supreme Court explained that market harm from "a lethal

13   parody, like a scathing theater review, [that] kills demand for the original, … does not produce a

14   harm cognizable under the Copyright Act."  510 U.S. at 591-92.  That is inapposite here.

15   Android is not a parody; it is not a theater review that informs potential audience members that

16   the show is lousy; and it is not a criticism of the Java platform that reduces demand for the

17   product.  That is the kind of harm that the Supreme Court meant when it was discussing harm that

18   is not cognizable under the Copyright Act; that is harm caused by something other than replace-

19   ment in the marketplace.  There is therefore no basis to present the jury with a confusing instruc-

20   tion that suggests that some market harm should be taken into account while other market harm

21   should not be, when that latter market harm is not at all at issue in this case.

22   **XVI.  DISPUTED INSTRUCTION NO. 16: ADDITIONAL FACTORS**

23         Only Google proposes an instruction for Disputed Instruction No. 16.  Google again

24   proposes still more "additional factors" that it argues the jury should consider.  Disputed Instr.

25   No. 16 (Google). This instruction is an incorrect statement of the law and is prejudicial.  Oracle

26   does not submit an instruction for Disputed Instruction No. 16 because none is needed.

27         **A.**  As discussed above, though the statutory factors are not exclusive they provide sub-

28   stantial guidance, and no more is needed.  *Supra* 14-15.  The "essence" of the fair use inquiry

1    "'look[s] to the nature and objects of the selections made, the quantity and value of the materials

2    used, and the degree in which the use may prejudice the sale, or diminish the profits, or supersede

3    the objects, of the original work.'"  *Campbell*, 510 U.S. at 576 (quotation marks omitted).  Those

4    factors are encompassed in the four statutory fair use factors.  *Harper & Row*, 471 U.S. at 549.

5        **B.**  Before identifying several specific factors, Google proposes advising the jury that it

6    can consider any "additional factors that [it] believe[s] bear on … fair use, as long as any addi-

7    tional factors [the jury] consider[s] are consistent with the purpose of the fair use doctrine and the

8    copyright laws."  Disputed Instr. No. 16 (Google).  This invites the jury to consider a host of

9    issues that potentially have no bearing under the law on whether Google's copying was a fair use.

10   It is an especially prejudicial instruction in this context where Gogle would have the Court

11   explain the "purpose of the fair use doctrine" in detail while narrowly explaining the purpose of

12   copyright law as preventing plagiarism.  *Supra* 12-13, 15-16.  That Google's proposal instructs

13   the jury to consider the purpose of fair use and "copyright laws," rather than copyright *protection*,

14   proves the point.  Google has not proposed an evenhanded instruction for the jury to consider

15   both sides, but rather has built in bias into the proposed instruction.  This is not a neutral

16   explanation of the law designed to achieve an unbiased verdict.  The jury should not be invited to

17   consider an open-ended, undefined list of factors.  Google provides no authority for a court

18   actually providing such an open-ended instruction to a jury.

19       **C.**  Google's proposed specific factors fair no better.  Google cites no case that adopts any

20   of its proposed factors *as factors*—and for good reason.  Those considerations, to the extent they

21   are relevant, are already part of the fair use inquiry.

22       Google confirmed during the meet-and-confer that the only authority it claims supports its

23   first three additional factors is *Wall Data*, 447 F.3d at 778.  *Wall Data* says in *dicta* that courts

24   should "bear in mind" whether "a reasonable copyright owner would have consented … i.e.,

25   where the custom and public policy … would have defined the use as reasonable."  447 F.3d at

26   778 (quotation marks omitted).  *Wall Data* does not treat this as a factor (much less multiple

27   factors) nor does *Wall Data* explain how any of these considerations factor into the fair use

28   analysis.  Indeed, *Wall Data* never returns to the issue at all as it analyzes the defendant's use

under the four statutory factors.  This is not surprising.  Whether a reasonable copyright owner

would have consented and whether there was a custom or public policy at the time is not a factor;

it is an explanation of common law justification for fair use.  *Harper & Row*, 471 U.S. at 550

(common law "fair use doctrine was predicated on the author's implied consent").  Instructing the

jury on these common law justifications separate from the four statutory factors is error because

"[t]he statutory formulation of the defense of fair use in the Copyright Act reflects the intent of

Congress to codify the common-law doctrine."  *Harper & Row*, 471 U.S. at 549.  There is no

reason to instruct the jury on these topics because the common law basis for fair use has already

been codified in § 107.

Google's instruction on a reasonable copyright owner's consent is misleading, biased, and

erroneous because it only presents *half* of the common law rationale for fair use.  Fair use at com-

mon law "*always* precluded a use that supersedes the use of the original."  *Harper & Row*, 471

U.S. at 550 (emphasis added, quotation marks and brackets omitted).  At common law, a reason-

able copyright owner's consent never would have been implied for a commercial work that

competed against it in the marketplace.  *Id.*  Taking "the most important parts of the work … to

supersede the use of the original work … w[ould] be deemed in law a piracy," not a fair use.  *Id.*

(quoting *Folsom*, 9 F. Cas. at 344-45).

Similarly, Google's proposed instruction about "custom or public policy" fails because

there is no uniformed policy for fair use and thus no grounds to instruct the jury about public

policy.  ECF No. 1663 at 1; *see also* 17 U.S.C. § 301 (Copyright Act preempts other laws).

Google's proposed instruction is an attempt to turn fair use into an open-ended inquiry into

reasonableness and fairness and opens the door to Google arguing its equitable defenses to the

jury.  Google has repeatedly characterized it as such in hearings before this Court.  *See, e.g.*,

2/2/16 Tr. at 25:18-19 (arguing that "the core of the test" for fair use is: "Is it reasonable under

the circumstances?"); 2/24/16 Tr. 11:20-23 ("But in general, fair use is a use which was

reasonable under the circumstances …."); *id.* 51:4-7 ("[W]hen you're looking at copyright, when

you're looking at fair use, is it reasonable under the circumstances at hand?").  That is incorrect.

The fair use "analysis is not some open-ended referendum on 'fairness,' as [Google] would have

1    it, but an effort to measure the purpose and effects of a particular use against the incentives for

2    literary and artistic creation that drive copyright protections." *Sony BMG Music Entm't*, 672 F.

3    Supp. 2d at 226; *accord Peter Letterese & Assocs.*, 533 F.3d at 1308 n.23 (rejecting that in

4    "determining whether a use is fair, one should look to the actual past conduct of the copyright

5    owner to determine whether consent may be implied").

6    　　Google proposes that "use … similar to uses by other parties" supports fair use, Disputed

7    Instr. No. 16, but supplies *no authority whatsoever* in support.  When asked at the meet-and-

8    confer, Google admitted that there was no specific support for such a factor but instead that it was

9    just a more specific example of Google's second proposed additional factor "custom or public

10   policy."  There is no basis for any of these supposed factors, and certainly no justification for

11   breaking up a single sentence of *dicta* and stating it in several different ways, thereby misleading

12   the jury into thinking that these are distinct and separate factors for its consideration. In fact, it

13   appears that Google broke this point into as many separate factors as it could in hopes of persuad-

14   ing the Court of including at least one; but none is appropriate.

15   　　Finally, Google's proposal that the jury consider "benefits [to] the public," relies on out-

16   of-circuit authority.  *Authors Guild v. Google Inc.*, 804 F.3d 202, 212 (2d Cir. 2015).  More sig-

17   nificantly, the instruction "whether the use by Google benefit the public" invites considerations

18   unrelated to copyright about Google and Android.  Such an instruction could lead the jury to

19   consider irrelevant matters such as the jury's preference for Android smartphones or the jury's

20   appreciation for Google's business model of not charging consumers directly for its products,

21   such as search, map, Youtube, books, etc.  This would be highly prejudicial to Oracle.

22   　　And, at a minimum, any instruction that suggests that the jury should consider public

23   policy justifications must be accompanied by the detailed public policy justifications and benefits

24   of copyright protection, which all of Google's proposed instructions omit.  Instructing the jury to

25   decide the case on public policy grounds is erroneous, but to do so having provided only a one-

26   sided, unbalanced description of the public policy rationale for fair use biases the instruction in

27   favor of fair use and Google, to Oracle's prejudice.

28

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1  **XVII.  DISPUTED INSTRUCTION NO. 17: CONSIDERATION OF FACTORS**

2         Only Google proposes an instruction on Disputed Instruction No. 17.

3         As discussed (at 18, 38-39), the fourth "factor is 'undoubtedly the single most important

4  element of fair use.'"  *Oracle Am.*, 750 F.3d at 1376 (quoting *Harper & Row*, 471 U.S. at 566).  It

5  is error to instruct the jury that it can weigh the factors however it chooses without instructing the

6  jury that the fourth factor is the single most important.  Yet Google's proposed instruction, does

7  not propose to instruct the jury on the relative importance of the fourth factor.  Disputed Instr. No.

8  17 (Google)

9         Moreover, as discussed above (at 15-16), it is biased and prejudicial to instruct the jury to

10  consider public policy rationales without providing an evenhanded explanation of the rationale

11  for copyright protection—not just for fair use.

12  **XVIII. DISPUTED INSTRUCTION NO. 18: DERIVATIVE WORK**

13         Both parties propose an instruction on Disputed Instruction No. 18 regarding the defini-

14  tion of a "derivative work."  Such an instruction is necessary because the effect of Google's in-

15  fringement on the actual and potential market for and value of a derivative work is an important

16  element of the factor four analysis.  *Supra* 12, 15-16.  Moreover, the definition of derivative work

17  and the exclusive right of copyright owners to prepare derivative works is relevant to defining

18  transformative use in a way that does not eliminate the copyright owner's right to create

19  derivative works.  *See* ECF No. 1663 (Oracle Critiq.) at 1.  Accordingly, Oracle proposes that the

20  Court read the jury the definition of "derivative work" from § 101 of the Copyright Act.

21  Disputed Instr. No. 18 (Oracle).

22         Google, by contrast, proposes a definition of derivate work that is a combination of the

23  Model Instruction, § 101, § 103, Ninth Circuit law, and treatise chapters.  Google's instruction

24  includes information far beyond the scope of the case and thus risks confusing the jury about

25  irrelevant topics.  For example, Google proposes to instruct the jury that "[t]he *copyright* in a

26  derivative work extends only to the new material contained in the derivative work, as distinguish-

27  ed from any material from the pre-existing work that is included in the derivative work."  Disput-

28  ed Instr. No. 18.  Copyright protection has been determined; copyrightability is no longer at issue.

- 44 -

1     In particular, factor four considers harm to the market for derivative works, not harm to specific

2     portions of the derivative work.  *See Campbell*, 510 U.S. at 593 ("Evidence of substantial harm to

3     it [a derivative] would weigh against a finding of fair use, because the licensing of derivatives is

4     an important economic incentive to the creation of originals."); *Harper & Row*, 471 U.S. at 568

5     ("If defendant's work adversely affects the value of any of the rights in the copyrighted work (in

6     this case the adaptation and serialization right) the use is not fair" (quotation marks, brackets

7     omitted)).  Instructing the jury on what is copyrightable about a derivative work is not relevant to

8     the issues for the jury to decide.

9     **XIX.   STIPULATED INSTRUCTION NO. 19: DAMAGES – INTRODUCTION**

10          The parties stipulate to Instruction No. 19.

11    **XX.    DISPUTED INSTRUCTION NO. 20: DAMAGES (INTRODUCTION)**

12          Both parties propose an instruction for Disputed Instruction No. 20.  Oracle's proposed

13    instruction copies verbatim from the parties' stipulated instruction from the first trial, ECF 539

14    (Prop. Instrs.) at 149, with the exception that Oracle selected a variation of one of the two

15    proposed bracketed options (both of which were acceptable to Google before the first trial).

16    Google now proposes an instruction with minor word changes ("the" to "any") that differ from

17    what the parties previously stipulated.  The parties previously agreed that Oracle's proposed

18    instruction is an accurate statement of the law, and the Court should adopt it.

19    **XXI.   DISPUTED INSTRUCTION NO. 21: ACTUAL DAMAGES**

20          Both parties propose an instruction for Disputed Instruction No. 21.  Oracle seeks the

21    profits it lost because Google copied the heart of the Java platform and used what it copied to

22    compete directly with the Java platform and its derivatives in the market.  Oracle lost significant

23    profits as its licensing partners switched from the Java platform to Android.  Oracle's proposed

24    instruction on actual damages therefore pertains to the legal rules governing a claim for lost

25    revenue due to the defendant's infringement.  By contrast, Google's proposed instruction pertains

26    to multiple *other possible actual damages theories* that Oracle does not advance.  Google's

27    proposed instruction is needlessly confusing and unnecessary to the jury.

28          **A.**  Oracle's proposed instruction accordingly restates, largely verbatim, the burden of

1  proof on damages, which the Ninth Circuit applies to copyright cases:  "Oracle has the burden of

2  proof by a preponderance of the evidence to show certainty in the fact of damage and a reason-

3  able approximation of the amount of damages."  *See Frank Music Corp. v. Metro-Goldwyn-*

4  *Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985) ("In a copyright action …. uncertainty as to the

5  *amount* of damages will not preclude recovery, uncertainty as to the *fact* of damages may."

6  (emphasis added)) (citing *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 369, 350

7  (9th Cir. 1947) (same), and M. Nimmer on Copyright § 14.02); *see also Palmer v. Conn. Ry. &*

8  *Lighting Co.*, 311 U.S. 544, 561 (1941) ("Certainty in the fact of damage is essential.  Certainty

9  as to the amount goes no further than to require a basis for a reasoned conclusion." (citing

10  *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406-08 (1940))).  Oracle's instruction is

11  a complete statement of the law and fully encompasses the legal theories raised by the parties.

12      **B.**  Most of the first paragraph of Google's proposed instruction is about "fair market

13  value" and a hypothetical license.  That is not the theory of actual damages that Oracle is

14  pursuing.  As discussed above, Oracle's claim for actual damages is based on lost licensing

15  revenue from actual and potential licensees as a result of Google's infringement.

16      Accordingly, the language proposed by Google from *Wall Data* is not relevant to the

17  damages theory Oracle is pursuing.  Indeed, *Wall Data* was a software licensing case, where it

18  was undisputed that the defendant, who had licensed the software on some number of computers,

19  could have bought "licenses for *each* of the computers on which the software was loaded, or

20  [negotiated] a less restrictive license."  447 F.3d at 779 (emphasis added).  The theory in *Wall*

21  *Data* was a hypothetical license about how much the buyer (defendant) would have been willing

22  to pay and the copyright holder (plaintiff) would have been willing to take to grant the defendant

23  a license for software for all of the defendant's computers.  *Wall Data* was thus about the price

24  for a license between the plaintiff and the defendant, where they had a history of successful

25  licensing.  That sort of analysis has no bearing here where Oracle does *not* seek recovery based

26  on a hypothetical license negotiation to determine how much Google would have paid Oracle and

27  how much Oracle would have been willing to accept from Google for a license that permitted

28  Google to do what it did.  In fact, as the evidence shows, Oracle would not have been willing to

1   license the Java APIs to *anyone* for use in a platform such as Android that is *incompatible* with

2   the Java platform.  *See, e.g.*, TX 565 at 2 ("If Google is still using Java … then they have to come

3   for a license with us - and will need to be *compatible*" (emphasis added)).

4          Nor does the instruction taken from *Wall Data*, where the "Sheriff's Department is a

5   government agency that does not compete with Wall Data," 447 F.3d at 779, take into account the

6   facts of this case, where Google not only copied without authorization, but it used what it copied

7   to compete in the market directly with the original work, Java SE, and its derivatives.  An

8   "instruction on [an] irrelevant issue is 'not appropriate.'"  ECF 1528 (Google Brief re Jury Instrs.)

9   at 2 (quoting *United States v. Ibarra-Pino*, 657 F.3d 1000, 1004 (9th Cir. 2011)).  An instruction

10  for a damages theory that Oracle does not pursue is an instruction about an irrelevant issue and

11  therefore is not appropriate.  Oracle's proposed instruction correctly omits the portions of the

12  model instruction that are irrelevant to the actual damages theory that it is pursuing.

13         **C.**  Google proposes a second paragraph in its instruction that is misleading, is unsupport-

14  ed by the model instructions, and misstates the law.  The first sentence in Google's proposed

15  second paragraph would instruct:  "To be entitled to an award of actual damages, Oracle must

16  establish with reasonable probability (1) that Google's infringement caused it to lose revenue, and

17  (2) the amount of that lost revenue."  Google's proposed instruction is duplicative of the causa-

18  tion language proposed by both parties for Disputed Instruction No. 20, which states "Oracle is

19  entitled to recover any actual damages it suffered *as a result of* Google's infringement."  Adding

20  additional causal language in later instructions will cause the jury to believe—incorrectly—that

21  Oracle bears a heightened burden on actual damages when it does not.

22         Relatedly, there is no basis for instructing the jury that its damages award cannot be

23  "unduly speculative."  Disputed Instr. No. 21 (Google).  It is more than sufficient to advise the

24  jury of the proper standard: "certainty in the fact of damage" and "reasonable approximation of

25  the amount of damages."  Disputed Instr. No. 21 (Oracle).  There is no need to add that the

26  certainty of damage or the reasonable approximation of the amount of damages cannot be

27  "unduly speculative."  Such an instruction suggests that there is undue speculation, which biases

28  the instruction against a damages award to Oracle's prejudice.

Google proposes that the jury be instructed that "Oracle must establish with *reasonable probability* (1) that Google's infringement caused it to lose revenue, and (2) the amount of that lost revenue." Disputed Instr. No. 21. The term "reasonable probability" comes from the Supreme Court's decision in *Harper & Row*, 471 U.S. at 567, but not in the manner or context in which Google uses it. The full quotation from *Harper & Row* is: "[O]nce a copyright holder establishes with **reasonable probability** *the existence of a causal connection between the infringement and a loss of revenue, the burden properly shifts to the infringer to show that this damage would have occurred had there been no taking of copyrighted expression*," *Id.* This formulation accords with the Ninth Circuit's, which requires "a causal link between the infringement and the monetary remedy sought … akin to tort principles of causation and damages," *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). Taken as a whole, the *Harper* standard is indistinguishable from the Ninth Circuit's "causal link" standard, and gives no support to Google's separate proposed instruction regarding the reasonable probability of the fact and amount of lost revenue. Google's instruction is also unclear as to what standard applies to the "amount of lost revenue." It is incorrect to apply the same standard to the *fact* of damage (loss of revenue) and the *amount* of damages, when it is clear that the amount of damages need only be shown through "reasonable approximation." *Frank Music*, 772 F.2d at 513. And Google's instruction fails to clarify that it is *Google's burden* under *Harper* to establish that Oracle's revenues would have been lost absent infringement, and even suggests wrongly that the burden is Oracle's.

**D.** The final sentence Google proposes for this instruction is: "If you conclude that Oracle would have incurred increased expenses related to its damages, such as increased overhead costs, you must deduct those expenses when calculating Oracle's actual damages." Disputed Instr. No. 21. This instruction amounts to little more than an endorsement of the opinion of Google's damages expert, Dr. Leonard, regarding deduction of expenses from Oracle's profits. *See* ECF 1563-7 (Leonard Op. Rpt.) p. 140 (arguing for deduction of expenses). Requiring Oracle to prove what its expenses would have been reflects a concept that has never been applied by the Ninth Circuit as far as Oracle can tell, and is drawn instead from non-binding, out-of-

1    circuit authority, *Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir. 1983), that predates and direct-

2    ly conflicts with the Supreme Court's requirement that Oracle show only a "loss of *revenue*," and

3    "the burden properly shifts to the infringer to show that this damage would have occurred had

4    there been no taking of copyrighted expression." *Harper & Row*, 471 U.S. at 567. Because

5    Google's instruction omits this burden-shifting approach, it is an incorrect statement of law and

6    will lead to error.

7         The Court should adopt Oracle's proposed instruction, which is precisely tailored to the

8    disputed issues in this case and quotes verbatim from binding authority.  Google's proposed

9    instruction should be rejected because it misstates the law, cherry picks isolated phrases from the

10   case law, and misleads the jury on the correct burden of proof.

11   **XXII.  DISPUTED INSTRUCTION NO. 22: LOST LICENSING REVENUE**

12        Only Google proposes an instruction for Disputed Instruction No. 22.  Oracle does not

13   propose an Instruction No. 22 because it is unnecessary in light of Oracle's proposed instruction

14   in Disputed Instruction No. 21.  The same standard applicable to Oracle's actual damages claim

15   applies to lost licensing revenue; indeed, lost licensing revenues are a form of actual damages,

16   making an additional instruction duplicative and confusing.  *See Gaylord v. United States*, 678

17   F.3d 1339, 1343 (Fed. Cir. 2012) (including "lost sales, *lost opportunities to license*, or

18   diminution in the value of the copyright" under § 504(b) actual damages standard (emphasis

19   added)); *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 827–28 (9th Cir. 1985)

20   (awarding *actual damages* for lost licensing opportunity).  There is no basis in the statute or

21   applicable case law to deviate from the Ninth Circuit's causal nexus formulation:  "Under §

22   504(b), actual damages must be suffered 'as a result of the infringement,'" which is established

23   by a "causal link between the infringement and the monetary remedy sought."  *Polar Bear*

24   *Prods.*, 384 F.3d at 708; *see supra* 45-49.

25        Google's proposed instruction, limiting Oracle's recovery to "damages if it proved by

26   credible evidence a relationship between the Asserted Works and such other products and that

27   there was *a necessary, immediate and direct causal connection* between the lost licensing revenue

28   from the other products and Google's infringement," Disputed Instr. No. 22 (Google) (emphasis

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1   added), finds no support whatsoever in Ninth Circuit authority—and Google does not contend

2   otherwise.  The Ninth Circuit requires a showing of only a "causal link between the infringement

3   and the remedy sought," *Polar Bear*, 384 F.3d at 708, which the Supreme Court formulates as "a

4   reasonable probability the existence of a causal connection between the infringement and a loss of

5   revenue," *Harper & Row*, 471 U.S. 539, 567 (1985).

6        When asked during the meet-and-confer for the source of the "necessary, immediate and

7   direct causal connection" language, Google pointed Oracle to *Cohen v. United States*, 100 Fed.

8   Cl. 461, 481-82 (2011), a case against the government brought in the Court of Federal Claims

9   where damages are limited to "recovery of [the plaintiff's] reasonable and entire compensation,"

10  28 U.S.C. § 1498(b).  *See also Cohen v. United States*, 105 Fed. Cl. 733, 753 (2012) (statutory

11  damages limited to $750 under § 1498(b)).

12       Further, the language Google quotes from *Cohen* is originally from *Sunset Lamp Corp. v.

13  Alsy Corp.*, 749 F. Supp. 520, 524–25 (S.D.N.Y. 1990), a case discussing the standard of proof

14  required to recover as copyright damages lost sales of non-infringed and ***non-*derivative works**.

15  That has no bearing here, where the Federal Circuit already held that Java ME is a *derivative

16  work*.  *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1350 (Fed. Cir. 2014) ("Sun was

17  licensing a derivative version of the Java platform for use on mobile devices: the Java Micro

18  Edition ('Java ME').").  Moreover, the language upon which Google relies from *Sunset Lamp* is

19  actually borrowed from contract damages.  749 F. Supp. at 524–25 (citing *Big Seven Music Corp.

20  v. Lennon*, 554 F.2d 504, 509 (2d Cir. 1977)).

21       That Oracle's damages include damages from Java ME, a derivative of Java SE, does not

22  change the standard for damages.  *Harper & Row* was itself a case about harm to a derivative

23  work.  The damages discussed by the Supreme Court were to the serialized form of President

24  Ford's memoir.  Nevertheless, the Supreme Court applied the same causal standard that applies to

25  the original copyrighted work.  471 U.S. at 568-69.  And, just like the excerpted, serialized form

26  of President Ford's memoir that was damaged by The Nation's infringement, Google's infringe-

27  ment of Java SE caused harm to an excerpted, derivative of Java SE: Java ME.

28       There is no basis for damages based on harm to a derivative to require heightened proof,

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1   such as Google's proposal that lost "licensing revenues must be proven to be *directly attributable*

2   to Google's use of the declaring code and the SSO of the 37 Java SE API packages," and Oracle

3   can "recover such damages *only if* it also proved the *specific amount of such lost licensing fees*."

4   The Supreme Court in *Harper & Row* required no such additional proof.  Rather, Oracle's Pro-

5   posed Disputed Instruction No. 21 sets forth the standard in the Ninth Circuit:  "The copyright

6   owner is entitled to recover the actual damages suffered by him or her as a result of the infringe-

7   ment."  The Court should reject Google's attempt to apply a heightened damages requirement,

8   and should instead adopt Oracle's Proposed Instruction No. 21 for all type of actual damages

9   because Oracle's proposed instruction accurately states the law in the Ninth Circuit that all types

10  of actual damages are subject to the same "causal link" requirement, not some heightened

11  standard depending on which work's licensing revenues are lost.

12  **XXIII. DISPUTED INSTRUCTION NO. 23: DEFENDANT'S PROFITS**

13          Both parties propose an instruction for Disputed Instruction No. 23.  The parties agree that

14  the first paragraph of Ninth Circuit Model Instruction No. 17.33 should be used with minor

15  modification.  Following the first paragraph, Oracle proposes a single instruction on Defendant's

16  Profits that incorporates the law on disgorgement in an easy-to-follow manner.  Google's pro-

17  posed instructions on infringer's profits, confusingly spread out over three separate instructions,

18  severely overreach as they are incorrect on the law and prejudice Oracle by misstating Oracle's

19  damages theories.  Each of Google's proposed instructions contradicts binding Supreme Court or

20  Ninth Circuit precedent and the statute enacted by Congress in that each of Google's instructions

21  attempts to place the burden of proof on Oracle for matters on which the burden is squarely on

22  Google.  At times, Google even tries to make predetermined findings of fact, usurping the jury's

23  role in determining the extent of Google's wrongful profits.  The Court should stick to the Ninth

24  Circuit's words, quoted in large part in Oracle's proposed instruction, and reject Google's repeti-

25  tive, confusing, and incorrect proposals, which will only lead the jury into error.

26          The burden-shifting approach outlined in 17 U.S.C. § 504(b) reflects a careful allocation

27  of evidentiary burdens, and, relatedly, a careful allocation of risk in the event a party is unable to

28  meet its assigned burden, which Oracle's instruction, largely taken verbatim from Ninth Circuit

1    and Supreme Court authority, reflects § 504(b)'s balance.  Google's instruction should be rejected

2    because it will not serve to accurately instruct the jury on the law.

3         Section 504(b) and its interpreting case requires an instruction that specifically instructs

4    the jury on shifting burdens of proof, and the consequences that arise when a party fails to meet

5    its burden.

6         **First**, under § 504(b) the plaintiff bears the burden "1) to establish a causal connection

7    between the infringement and the gross revenue *reasonably associated* with the infringement."

8    *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 715 (9th Cir. 2004) (emphasis added).  Mr.

9    Malackowski established in his first report that Google's "gross revenues" "reasonably

10   associated" with Android, the *infringing use*, are approximately $40 billion.  $40 billion is very

11   conservative, because it is limited to only four types of revenue: 1) ad revenue, 2) hardware

12   revenue, 3) app revenue, and 4) digital content, which excludes significant Android-related

13   revenues from sources such as YouTube advertising.  Google's damages expert Dr. Leonard and

14   the Court's 706 expert do not dispute that Android's gross revenues are at least $40 billion.  *See*

15   ECF 1582-7 (Kearl Rpt.) Ex. 2 (Dr. Kearl's comparison of Mr. Malackowski and Dr. Leonard's

16   gross revenue figures).  Oracle could have stopped here; it met its burden.  *See, e.g.*, *Polar Bear*,

17   384 F.3d at 715; *see also Cream Records, Inc. v. Joseph Schlitz Brewing Co. (Cream II)*, 864

18   F.2d 668, 669 (9th Cir. 1989) ("the copyright owner is required to present proof only of the

19   infringer's *gross revenue*" (emphasis added)).  But Oracle did not stop here.  Mr. Malackowski

20   further deducted Google's costs from each of the four gross revenue streams considered and

21   identified Google's Android-related *profits*, reducing the amount in dispute from $40 billion to

22   $19.9 billion.  ECF 1560-13 (Malackowski 2d Rpt.) ¶ 279 (Corrected).

23        **Second**, once the copyright holder identifies "the gross revenue reasonably associated

24   with the infringement," *Polar Bear*, 384 F.3d at 715, the *infringer*, here Google, "bears the

25   burden of apportioning the profits that were not the result of infringement," *id.* at 711.  Where the

26   plaintiff claims a number *less than gross revenues*—as is the case with Oracle's reliance on Mr.

27   Malackowski's *profits* figure—"primary responsibility for further apportionment of profits"

28   remains with the infringer.  *Id.* at 713 (noting that although Polar Bear only sought 43% of

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1    Timex's profits, Timex still bore the burden to offer evidence supporting a further deductions).  In

2    an attempt to meet its burden, Google's damages expert Dr. Leonard offered several profits

3    figures based on 1) impermissible consideration of several non-infringing alternatives, and 2) a

4    simple apportionment ratio based on counting lines of code without an accompanying qualitative

5    analysis.  *See generally* ECF 1554-7 (Leonard Op. Rpt).  Because Google has the burden on

6    deductions and apportionment, Oracle had the opportunity to *rebut* Dr. Leonard's deduction and

7    apportionment analysis.  ECF 1334 (Stip. & Prop. Sched. Order); ECF 1356 (Order Adopting

8    ECF 1334).  In rebuttal, Mr. Malackowski identified flaws in Dr. Leonard's analysis, and put

9    forward his opinion that after the proper deduction of expenses and an apportionment between the

10   value of the Android platform and value associated with Google Search, Google's *profits* from

11   Android "reasonably associated" with Google's infringement are $8.8 billion.  Mr. Malackowski

12   also opines, in his expert opinion, that Dr. Leonard erred by attempting to apportion, using non-

13   infringing alternatives and counting lines of code, because Mr. Malackowski would not "have

14   further subdivided the value between the Infringed Java Copyrights and the Google contribution"

15   because Java code was "of vital importance to the Android Platform" and "Google's

16   commingling makes it extremely difficult to separate out items of value."  ECF 1560-13

17   (Malackowski 2d Rpt.) ¶ 285.

18       The damages experts' opinions precisely correspond with the burden-shifting approach

19   established in § 504(b) and Ninth Circuit precedent such as *Polar Bear*:

20   • Oracle's Threshold Burden:  Mr. Malackowski's identification of $40 billion in gross
     revenues causally linked to the infringement satisfies Oracle's threshold burden to show "the
21   gross revenue reasonably associated with the infringement."  *Polar Bear*, 384 F.3d at 715.
     Mr. Malackowski's $19.9 billion dollar figured, also offered as part of Oracle's *threshold
22   case*, does nothing to change the fact that Google still bears the "primary responsibility for
     further apportionment" and showing deductible expenses.  *Id.* at 713.
23

24   • Google's Burden to Show Deductions and Apportionment:  Google's attempt to meet its
     burden on deductions and apportionment of infringer's profits is through Dr. Leonard's
25   opinions, wherein he attempts to deduct certain expenses, ECF 1554-7 (Leonard Op. Rpt.) Ex.
     1a.4.  Dr. Leonard does not assign discrete values to various aspects of the Android platform
26   that infringe (i.e., the 37 Java API packages) and that do not infringe (e.g., the Dalvik virtual
     machine, the Linux kernel); he bases his "apportionment" analysis on non-infringing
27   alternatives, *id.* ¶¶ 175-196, and a simple line-by-line counting of code, *id.* ¶¶ 200-202.

28   • Oracle's Rebuttal of Google's Deductions and Apportionment:  As allowed by the parties'

stipulated agreement, ECF 1334, which was adopted by the Court, ECF 1356, Mr. Malackowski offered a second *rebuttal report* (incorrectly labeled a "reply") in "Rebuttal to [Dr. Leonard's] Deductible Expenses & Apportionment Report," ECF 1334 at 3. Mr. Malackowski offers opinions *rebutting* Dr. Leonard's opinions, and further opines in rebuttal that a correct methodology would result in finding $8.8 billion of Google's *profits* (not gross revenues) are "reasonably associated" with the infringing use after expenses are deducted (something on which Google bears the burden of proving). ECF 1560-13 (Malackowski 2d Rpt.) ¶¶ 272-305. Mr. Malackowski further opines that it would be inappropriate, in his expert opinion, to attempt to assign portions of the $8.8 billion profit figure amongst specific components within the Android stack (e.g., the Dalvik machine, Linux Kernel, and 37 copied API packages), something that Dr. Leonard does not attempt to do, either. *Id.* ¶ 272.

With the burdens established by the statute clear, and the expert testimony each side intends to offer in support of their respective burdens also clear, the remaining question is what happens, under the law, when one party or the other fails to meet its assigned burden under the statute. At the threshold, the jury could find that Mr. Malackowski's $19.9 billion *profits* figure (already reduced, which benefits Google from $40 billion in Android-derived *gross revenue*) is not "reasonably associated with the infringement" under *Polar Bear*, 384 F.3d at 715. Although this is highly unlikely because neither Dr. Leonard nor Dr. Kearl question this figure, if the jury so-found, it would award Oracle none of Google's profits.

But if the jury finds that Oracle has met its threshold burden under § 504(b) to show "gross revenues," the question becomes what happens if Google fails to meet its burden. In other words, the remaining question is which party bears the risk that the jury finds that the evidence is *not* "sufficient to provide a fair basis of division" between the infringing and non-infringing aspects of the infringing work. *Sheldon v. Metro-Goldwyn Pictures Corp.* 309 U.S. 390, 402 (1940). The Supreme Court has answered this exact question more than once: "With respect to apportionment of profits flowing from a copyright infringement, this Court has held that an infringer who commingles infringing and noninfringing elements must abide the consequences, unless *[the infringer]* can make a separation of the profits so as to assure to the injured party all that justly belongs to him," *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 567 (1985)) (quoting *Sheldon*, 309 U.S. 390, 406 (1940)). The Ninth Circuit agrees: "We will not accept the experts' testimony at its face value; we must make an award which by no possibility shall be too small. It is not our best guess that must prevail, but *a figure which will favor the*

1   *plaintiffs in every reasonable chance of error.*"  *Frank Music Corp. v. Metro-Goldwyn-Mayer*

2   *Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*,

3   106 F.2d 45, 51 (2d Cir. 1939), *aff'd* 309 U.S. 390, 406 (1940)) (emphasis added); *id.* ("In

4   performing the apportionment, *the benefit of the doubt must always be given to the plaintiff*, not

5   the defendant.").  Thus, under the standard set by the Supreme Court and applied by the Ninth

6   Circuit, if the jury finds Google has not met its burden "to prove [its] deductible expenses and the

7   elements of profit attributable to factors other than the copyrighted work," § 504(b), the jury can

8   award Google's gross revenues "reasonably associated with the infringement" to Oracle, *Polar*

9   *Bear*, 384 F.3d at 715.

10         Despite the clear language of § 504(b), which places on the plaintiff a burden only to

11   prove gross revenues, and *Harper & Row*'s admonition that "infringer who commingles

12   infringing and noninfringing elements must abide the consequences," 471 U.S. at 567, the Ninth

13   Circuit recognizes that a work that commingles infringing and non-infringing elements cannot

14   lead to the recovery of 100% of gross revenues that are "reasonably associated" with the

15   infringing work when both infringing and noninfringing elements contribute to profitability.  *See*

16   *Cream Records, Inc. v. Jos. Schlitz Brewing Co. (Cream I)*, 754 F.2d 826, 828–29 (9th Cir. 1985)

17   ("where an infringer's profits are not entirely due to the infringement, and the evidence suggests

18   some division which may rationally be used as a springboard it is the duty of the court to make

19   some apportionment.").  This exception has been fleshed out over the years, and it is now clear

20   that "a jury verdict apportioning less than 100% of the profits but more than the percentage

21   estimates of [the defendant's] experts does not represent clear error."  *Three Boys Music Corp. v.*

22   *Bolton*, 212 F.3d 477, 487 (9th Cir. 2000).[5]

23         *Cream* involved a commercial to sell beer.  The beer seller hired an ad agency, which

24   created a commercial that infringed 10 notes of a song.  754 F.2d at 828.  The commercial was

25   10% of the beer company's advertising budget, and the plaintiff conceded that only a small

26   fraction of the company's total sales were attributable to the commercial and the beer company

27   _____

28   [5] *Three Boys* apportioned to an infringing song, for which copying was vigorously contested
    through a battle of experts,

offered no evidence on deductions or apportionment.  *Id.*  The court, sitting as trier of fact, considered the plaintiffs claim for 1.37% of profits and awarded less than that.  *Id.*  The Ninth Circuit affirmed because trier of fact may apportion based on "the extent to which the [work] infringed upon the copyright and the importance of the copyrighted material to the effectiveness of the [infringing work]" in order to award "a reasonable approximation" of infringer's profits attributable to the infringing elements.  *Id.* at 829.  When the case came back to the Ninth Circuit four years later, it was a different story because the plaintiff sought the profits of the advertising agency, and it was clear that the gross revenues of the advertising agency were equal to the amount it was paid to make the commercial.  *Cream II*, 864 F.2d at 669.  Again, the agency offered no evidence on deductions or apportionment, but this time when the district court, as trier of fact, awarded a small percentage of profits, the Ninth Circuit reversed.  *Id.* at 669.  The difference was that, unlike the sales of beer, the fee received by the ad agency meant the court was "dealing with profits derived entirely from the infringing work."

In a much more recent case, the Ninth Circuit clarified the rule from the *Cream* cases. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000).  There, the court held that a jury award "apportioning less than 100% of the profits but more than the percentage estimates of [the defendant's] experts does not represent clear error," so long as the jury is adequately instructed on the statutory burden of proof.  *Id.* at 487.  In other words, the jury starts its apportionment at 100% of the infringing works *profits* (profits were established in the record, like this case and the *Cream* cases), and can apportion down from there, with the *floor* constituting the amount established by the defendant's apportionment evidence.  *See id.*  It would be fine for the jury to start at the floor and work up, too.  All that is required is *some apportionment* that falls within that range.

Applying the *Cream* cases and *Three Boys* to the parties' proffered witness evidence yields a range for a proper jury award that starts just shy ("less than 100%") of Mr. Malackowski's *profits* (not gross revenues) number of $19.9 billion figure.  *Id.* (affirming jury apportionment of 28% of album profits to song, and 66% of song profits to infringing elements over defendant's expert's estimates of 5-10% and 10-15%, respectively); *Frank Music Corp. v.*

*Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1549-50 (9th Cir. 1989) (awarding 75% of profits to plaintiff where infringing elements were 6-10% of infringing work); *accord Sheldon v. Metro-Goldwyn Pictures Corp.*, 60 S. Ct. 681 (1940) (affirming award of 20% of box office receipts where testimony supported a maximum award of 12% of receipts); *see Orgel v. Clark Boardman Co.*, 301 F.2d 119, 122 (2d Cir. 1962) (affirming allocation of "50% of the profits to the infringing material, although that makes up but approximately 35% of the defendants' complete work.").  It is also notable, that the expert opinions agree that Android's gross revenues are $40 billion, which revenue solely attributable to the infringing work.  The record thus far puts this case into the *Cream II* category, where the only revenues at issue were attributable to the infringing work, "the correct base for calculating profits attributable to the infringement[.]" *Cream II*, 864 F.2d at 669.  Giving full credit to the record in this case, a jury award that exceeds Mr. Malackowski's rebuttal apportionment of $8.8 billion would likely lack sufficient evidentiary support; *however*, under *Three Boys* and the *Cream* cases, an award of the *full* $8.8 billion dollars, which is itself $11.1 billion *less than* Google's total Android profits, and is a number that assigns 55% of Android profits to "factors other than the copyrighted work" falls well within the permissible range, which extends from "less than 100% of the profits but more than the percentage estimates of [Google's] expert[.]"  *Three Boys*, 212 F.3d at 487.

With these principles in mind, Oracle respectfully proposes that its instruction is an accurate and complete statement of the law that should be adopted over Google's proposal for the following reasons.

**A.**  Oracle's proposed instruction, requiring "a causal relationship between the copyright infringement and Google's gross revenue," quotes verbatim from *Polar Bear*, 384 F.3d 714 n.10, and thus accurately captures the "causal nexus" requirement of 17 U.S.C. § 504(b), which the Ninth Circuit makes clear applies equally to "direct" and "indirect" profits:

> [17 U.S.C.] § 504(b) creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement …. The standard is straightforward: a copyright plaintiff is bound to no more and no less than its statutory obligation to demonstrate a causal nexus between the infringement and the profits sought.

1    *Polar Bear*, 384 F.3d at 711-12 (quotations and citations omitted).  The issue addressed in *Polar*

2    *Bear* was not whether it is proper to apply the same causal nexus requirement to direct and

3    indirect profits—indeed, the statute makes no such distinction—it was whether the *proof* offered

4    by the plaintiff satisfied the singular statutory causal nexus requirement as applied to indirect

5    profits.  In other words, because the jury has one test to apply—whether Oracle established "a

6    causal relationship between the infringement and the profits generated indirectly from such

7    infringement," *id.* at 714 n.10—for all profits sought by Oracle, there is no need to differentiate

8    between "direct" and "indirect" profits.  Differentiating between "direct" and "indirect" profits

9    falsely suggests that different standards exist depending on the type of profits, that "indirect"

10   profits are subject to a higher standard for recovery under § 504(b).  Oracle's proposed instruction

11   eliminates this unnecessary ambiguity, and applies the same causal nexus requirement approved

12   in *Polar Bear* to all of Google's gross revenues attributable to the infringement.  Oracle's

13   instruction also completely and accurately explains the burden shifting approach outlined in 17

14   U.S.C. § 504(b), which assigns Google the burden of proving both 1) deductible expenses and 2)

15   profits attributable to factors other than infringement.  Google's alternate proposals contained in

16   Google's Disputed Instructions 24 and 25.  *See infra* 61-63.

17         Google, on the other hand, falsely claims in its second paragraph that "Oracle does not

18   seek to recover for … 'direct profits.'"  To the contrary, Oracle's position is that *all* of the profits

19   it seeks are "direct profits" consisting of "profits from Google's sales of mobile devices contain-

20   ing the infringing code, sales of apps and content dependent upon the infringing platform, and

21   advertising revenue generated as a result of the infringing platform."  ECF 1613-4 (Oracle's Opp.

22   to Google's MIL #6) at 7.  There can be no dispute—and indeed, Google has not disputed—that

23   Google's own sales of mobile devices containing the infringing code and Google's own sale of

24   apps and content that depend on the infringing platform are direct infringement.  Google has only

25   disputed whether advertising revenue is "direct" or "indirect," but, as Oracle explained in its

26   opposition to Google's motion *in limine* against Mr. Malackowski, Google itself describes these

27   Android revenues as "direct."  Android's P&L statements listed advertising revenue from

28   Android, that is until Google decided in the middle of this litigation to remove advertising

1    revenue from the Android P&Ls.  Moreover, Google's CEO has described the very purpose of

2    Android as to profit from advertising.  *See id.* at 7, 13.  Google's attempt to predetermine in jury

3    instructions whether Oracle seeks "direct" versus "indirect" profits also usurps the jury's job,

4    which is to decide in the first instance whether Oracle has met its burden of showing Google's

5    "gross revenues" "attributable to the infringement," 17 U.S.C. § 504(b), and effectively takes

6    Google's revenues from device, app, and content sales off the table.  The final jury instructions

7    should not differentiate between "direct" and "indirect" profits—the statute makes no such

8    distinction, and the same causal nexus test applies to both.  As Google concedes:  "[J]ury

9    instructions must fairly and adequately cover the issues presented, must correctly state the law,

10   and must not be misleading."  ECF 1528 (Google Br. re: Fair Use Instrs.) 1 (quoting *Hunter v.*

11   *Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011)).

12          **B.**   Google's second and third paragraphs are wrong because they place the burden of

13   apportioning between infringing and non-infringing uses on *Oracle* instead of Google.  17 U.S.C.

14   § 504(b) states that "the *infringer* is required to prove … the elements of profit attributable to

15   factors other than the copyrighted work."  The Ninth Circuit agrees:  "[O]nce the causal nexus is

16   shown [by Oracle], the *infringer* bears the burden of apportioning the profits that were *not the*

17   *result of infringement*."  *Polar Bear*, 384 F.3d at 711 (emphasis added); *see also* ECF 685 (Order

18   on MIL) at 9 ("Under copyright law, the burden is on Google to allocate Android profit based on

19   the copyrights in suit versus other non-infringing contributions.").  Google's proposed instruction

20   flips this burden, stating incorrectly that "Oracle must, as a threshold issue, prove that the claimed

21   revenues … were caused, at least partially, by the use in Android of the declaring code and SSO

22   of the 37 Java SE API packages."  Google itself knows this is wrong; it later concedes in Disput-

23   ed Instruction No. 25 that "Google also has the burden of proving by a preponderance of the

24   evidence the portion of the profit, if any, that is attributable to factors other than its infringement

25   of the copyrighted work."  The Court should reject Google's erroneous and contradictory

26   proposed instructions.

27          **C.**   Google's third proposed paragraph is wrong for the additional reason that it is a

28   restatement of patent law's "entire market value rule" (EMVR), which has no applicability to the

unique burden-shifting approach in copyright.  *See* 17 U.S.C. § 504(b).  Comparing EMVR with Google's proposed instruction shows that they are identical.  "The entire market value rules requir[es] that the patentee ... must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatent-ed features, and such evidence must be reliable and tangible, and not conjectural or speculative." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (quotation marks omitted).  Google's proposed instruction would require Oracle to "demonstrate, through evidence, that the amount of profits earned by Google increased because of the use of the declar-ing code and SSO of the 37 Java SE API packages … [and] that because of the presence in An-droid of the declaring code and SSO of the 37 Java SE API packages, Google earned profits that it otherwise would not have earned … that are [not] only remotely and speculatively attributable to the presence of the declaring code and SSO."  Moreover, contrary to patent law where the plaintiff bears the burden to apportion, in the copyright context it is the defendant's burden under § 504(b) to apportion between infringing and non-infringing aspects of a work.  *See Polar Bear*, 384 F.3d at 712-13 ("[The copyright holder] was not required to apportion the gross profit figure …. Under § 504(b), the primary responsibility for further apportionment of profits fell to [the infringer].");  *see Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("where infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff.").  As Google argued prior to the first trial, "there is significant potential for juror confusion—and legal error—when the law on [copyright and patent] diverges" and where a concept "under copyright law is different … under patent law." ECF 535 (Google's MPA on Jury Instrs.) at 58.

The jury should be instructed as Oracle proposes.  Google's proposed instruction misstates the law applicable to copyright damages, confuses the factual theories at issue in this suit, and impermissibly imports concepts from patent law that are contrary to the laws in copyright.

## XXIV. DISPUTED INSTRUCTION NO. 24: DEFENDANT'S PROFITS – INDIRECT PROFITS/DEDUCTIONS

Only Google proposes an instruction for Disputed Instruction No. 24.  Oracle does not

1    propose a version of this instruction because the approach taken by the Ninth Circuit Model

2    Instructions, which provide for a single instruction applicable to infringer's profits, will be the

3    most helpful to the jury and the most readily understood.  The approach taken by Google serves

4    only to repeat (or sometimes contradict) concepts already proposed in Google's prior instruction,

5    risking the possibility that repeated repetition of issues will lead the jury to believe that Oracle

6    must meet its same evidentiary burden more than once.  This will confuse the jury, and prejudice

7    Oracle by suggesting to the jury it is to consider multiple times whether Oracle has satisfied its

8    threshold burden of proof.

9           The potential for juror confusion under Google's proposed instruction is apparent.  This

10   proposal offers an incorrect formulation on the causal link, by incorrectly instructing the jury to

11   determine the "gross revenue that Oracle *has proved was caused by* the infringement."  That is

12   not the standard.  The Ninth Circuit requires only that Oracle "proffer *some evidence* that the

13   infringement *at least partially caused* the profits that the infringer generated as a result of the

14   infringement."  *Polar Bear Prods.*, 384 F.3d at 711 (emphasis added) (brackets and ellipses

15   omitted) (quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002)).  Google additionally

16   defines "gross revenues" for the first time in this proposed instruction, despite the fact that the

17   jury was to determine a causal link between "gross revenues" and "infringement" in the prior

18   proposed instruction.  Thus, Google is forced to again repeat its proposed causal link standard in

19   the second paragraph, but this formulation differs from the one just proposed by Google in

20   Disputed Instruction No. 23, taking the jury back to square one with no indication of which

21   standard is correct or how they differ in application.

22          Google's confusing and incorrect approach should be rejected.  The Court should use a

23   single instruction, following the model approach, as Oracle proposes.

24   **XXV.   DISPUTED INSTRUCTION NO. 25: DEFENDANT'S PROFITS – INDIRECT
            PROFITS/ATTRIBUTION TO OTHER FACTORS**
25

26          Only Google proposes an instruction for Disputed Instruction No. 25.  Oracle does not

27   propose a version of instruction number 25 because the legal standard will be clearer for the jury

28   if all issues related to infringer's profits are presented in a single instruction, per the Ninth

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1    Circuit's model instruction approach.  9th Cir. Model Instruction No. 17.33.

2            Google's proposed instruction is also misleading and should be rejected because it fails to

3    incorporate long-standing blackletter law on copyright apportionment.  Google proposes language

4    that strongly suggests that the jury should *speculate* in conducting an apportionment analysis if

5    Google fails to meet its burden:  "Google is not required to establish with certainty the portion

6    attributable to the non-infringing elements or to other factors …. it is *your duty* to apportion the

7    profits as between those profits attributable to the infringing elements (*if any*) and those profits

8    attributable to other factors."  (Emphasis added).

9            Google's proposed instruction also strikes at the heart of the burden-shifting approach

10   discussed at length with regard to Disputed Instruction No. 23, *supra*.  Google's proposed final

11   sentence, which states "You may only award as damages to Oracle the portion attributable to the

12   use of the declaring code and SSO of the 37 Java SE API packages," 1) shifts the burden of proof

13   onto Oracle to prove apportionment, and 2) shifts the risk of error onto Oracle as well.  Both are

14   squarely Google's to bear.  First, Google has the burden to prove apportionment.  It is in the

15   statute, and the Ninth Circuit leaves no room for doubt.  Second, where Google fails to meet its

16   burden on apportionment, the floor for a profits allocation is "some division which may rationally

17   be used as … to make some apportionment."  *Cream I*, 754 F.2d at 829.  In a situation where

18   Google fails to meet its burden, such evidence would likely be Mr. Malackowski's apportionment

19   opinion—but the jury should not be invited to apportion further if it lacks sufficient evidence

20   supporting a lower award.  Finally, Google's proposed instruction contradicts venerable case law

21   such as *Harper & Row*, 471 U.S. at 567, and *Frank Music*, 886 F.2d at 1549, which place the risk

22   squarely on the infringer (not to mention that statute's risk-allocating shifting burden of proof).

23           For the foregoing reasons, Oracle should be permitted to argue that it is entitled to an

24   award it believes the evidence supports of $8.8 billion, which reflects a significant allocation to

25   Google's expenses and non-infringing elements of Android, and falls well-within the range of

26   awards found acceptable by the Ninth Circuit.  The jury instructions given by the Court should

27   allow this appropriate and permissible argument.

28

## XXVI. DISPUTED INSTRUCTION NO. 26: WILLFULNESS FOR INFRINGER'S PROFITS/DEDUCTIONS

Only Oracle proposes an instruction for Disputed Instruction No. 26.  Oracle proposes this instruction because "[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate." *Frank Music Corp.*, 772 F.2d at 515 (citing *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331 (9th Cir. 1984), *Sammons v. Colonial Press*, 126 F.2d 341, 351, 350 (1st Cir. 1942)).  Based on this authority, the district court in *Williams v. Bridgeport Music*, No. LA CV13-06004 JAK (C.D. Cal.) issued a jury instruction that the defendant could only deduct overhead expenses from its gross revenues if the defendant's infringement was not willful.. *See* ECF 1306-3 (Excerpt of Jury Instrs.); *see also* Ninth Cir. Model Instr. 17.36.

This Court has previously determined that the limitation on deductions for willful infringement applies only to income taxes paid by the infringer.  ECF 1321 (Order on Willfulness and Bifurcation) at 4-13.  Accordingly, Oracle proposes this instruction to preserve its position that, in the event Google's infringement is found to be willful, the jury should be instructed *not* to deduct Google's overhead expenses, without limitation to income taxes paid, from an award of infringer's profits.

## XXVII.       DISPUTED INSTRUCTION NO. 27: STATUTORY DAMAGES

Both parties propose an instruction for Disputed Instruction No. 27 regarding statutory damages.  Oracle's proposed instruction on statutory damages closely tracks the Ninth Circuit's Model Instruction No. 17.25.  Oracle's primary proposed change (other than explanatory language to make the instruction clear to the jury) is to strike the innocent infringement instruction because Google has not pleaded such a defense.  *See* ECF No. 51 (Google Answer).  Google has therefore waived any such defense.

Moreover, Google's internal documents demonstrate that Google was not and could not be an innocent infringer.  *See, e.g.*, ECF 1306-1 (Oracle's Appx. of Willfulness Evid.) (collecting evidence).  For instance, there are numerous internal statements from Google, prior to Android's release, that show beyond doubt that Google knew its actions to constitute copyright infringe-

1   ment.  *See, e.g.*, TX 7 (Andy Rubin in October 2005: "We'll pay Sun for the license and the

2   TCK…. If Sun doesn't want to work with us, we have two options:  1) Abandon our work … or

3   2) Do Java anyway and defend our decision, perhaps making enemies along the way");  TX 18

4   (Rubin in March 2006: "Java.lang apis are copyrighted …. [S]un … own[s] the brand and ip[,]").

5   There is therefore no basis for the jury to find that Google's infringement was innocent, which

6   would require finding, as Google concedes in its proposed instruction, that Google "had no reason

7   to believe that its use in Android of the declaring code and SSO of the 37 Java 2 SE API packages

8   constituted an infringement of Oracle's copyrights."

9        For the same reasons, Google's proposed instruction should be rejected.  Nearly half of

10  Google's instruction is dedicated to innocent infringement, but there is no legal basis for such an

11  instruction when Google has never pleaded a defense of innocent infringement to statutory

12  damages, and the record in this case is indisputable that Google's infringement was not innocent.

13       Google's proposed instruction is also highly misleading, and designed to inform the jury

14  that Oracle is entitled to statutory damages "*instead of* an award of actual damages and/or

15  profits."  Disputed Instr. No. 27 (Google) (emphasis added).  The jury has no need to know that.

16  And instructing the jury on this could lead the jury to alter its awards without any basis in law or

17  fact for doing so.  For example, the jury could decide to award nothing for actual and disgorge-

18  ment damages under the incorrect belief that it need only award statutory damages "instead of"

19  and award nothing for actual damages and disgorgement.  Oracle is entitled to a determination on

20  all three types of damages, and then to elect which remedy or remedies.

21       There is no need or basis for instructing the jury about a legal matter that will be decided

22  after the jury concludes its work.  *See* ECF 1321 (Order on Willfulness) at 12-13 (Oracle is

23  allowed "to elect statutory damages 'at any time before final judgment is rendered'").

24  **XXVIII.**       **DISPUTED INSTRUCTION NO. 28: WILLFUL INFRINGEMENT**

25       Both parties propose an instruction on the standard for willful infringement.  Oracle's

26  proposed instruction quotes verbatim the standard for willfulness applied repeated by the Ninth

27  Circuit:  "To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the

28  defendant was actually aware of the infringing activity, or (2) that the defendant's actions were

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS

1   the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Louis*

2   *Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011); *Washington Shoe*

3   *Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) ("We have explained that a

4   finding of 'willfulness' in the copyright context can be based on either 'intentional' behavior, or

5   merely 'reckless' behavior, and that to prove 'willfulness' under the Copyright Act, the plaintiff

6   must show (1) that the defendant was actually aware of the infringing activity, or (2) that the

7   defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright

8   holder's rights." (internal citation, quotation marks, and brackets omitted)); *id.* ("To prove

9   willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it

10  was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability

11  that it was infringing plaintiffs' copyrights."); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008)

12  ("The term 'willful' as used in copyright infringement case … can be based on either intentional

13  behavior, or merely reckless behavior." (quotation marks omitted)).

14          **A.**  Despite the unambiguous language from the Ninth Circuit, Google proposes an in-

15  struction where willfulness requires that "Google *knew*, at the time it used in Android the declar-

16  ing code and SSO of the 37 Java SE API packages, *that the use was an infringement of Oracle's*

17  *copyrights*."  Disputed Instr. No. 28 (Google) (emphasis added) (willfulness requires "that the

18  infringer *acted with knowledge* that its *conduct constituted an act of infringement*" (emphasis

19  added)).  For support, Google cites the Ninth Circuit Model Instruction, adopted in 2007, *before*

20  the Ninth Circuit stated the standard for willfulness in *Louis Vuitton Malletier*, *Washington Shoe*

21  *Co.*, and *Barboza*.  As this Court has observed, the Ninth Circuit Model Instruction is not law,

22  ECF No. 1321 (Order re Willfulness & Bifurcation) at 8 ("Model instructions have no authorita-

23  tive force whatsoever."), especially in the face of binding contrary Ninth Circuit precedent.

24          Google also cites this Court's earlier description of the standard for willfulness and a

25  footnote in an old Ninth Circuit case.  ECF No. 1321 (Order re Willfulness & Bifurcation) at 12.

26  This Court's earlier description of the standard—when the standard for willfulness was not at

27  issue (only the legal consequences of a finding of willfulness)—cannot take precedence over clear

28  Ninth Circuit authority.  Similarly, the footnote in *Peer International Corp. v. Pausa Records*,

1    *Inc.*, 909 F.2d 1332, 1335-36, n.3 (9th Cir. 1990), is not binding.  The Ninth Circuit found that

2    defendant did know that that it was infringing because the plaintiff revoked the license and

3    defendant's conduct continued unabated.  *Id.* at 1335-36.  Because the plaintiff had met the higher

4    standard for willfulness, the Ninth Circuit could assume the district court's higher standard and

5    did not need to decide the actual standard for willfulness.  In any event, since *Peer International*,

6    the Ninth Circuit has expressly stated that willfulness can be proven either through defendant's

7    knowledge or through the "defendant's reckless disregard for, or willful blindness to, the

8    copyright holder's rights."  *Louis Vuitton Malletier*, 658 F.3d at 944.

9         **B.**   Google is also incorrect that willfulness is relevant only to statutory damages.  As

10   Oracle briefed at length, ECF No. 1290 (Oracle Br. on Laches), certain expenses are not

11   deductible if a defendant's infringement was willful.  The Court agreed that some expenses, such

12   as income tax, are indeed not deductible when the defendant's infringement is willful, ECF No.

13   1321 at 11, and Google has agreed not to claim such a deduction, ECF No. 1350 (Google Stip.).[6]

14        **C.**   Moreover, a jury verdict on willfulness is nevertheless still important for the Court, as

15   it considers matters such as Google's equitable defenses, Oracle's request for an injunction, and

16   Oracle's request for attorneys' fees.  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d

17   1221, 1228 (9th Cir. 2012) ("[L]aches does not apply in cases of willful infringement."); *Cadence*

18   *Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (injunction); *Historical*

19   *Research v. Cabral*, 80 F. 3d 377, 379 (9th Cir. 1996) (attorneys' fees).

20                                    **CONCLUSION**

21        For the foregoing reasons, the Court should adopt Oracle's Proposed Jury Instructions,

22   filed concurrently with this memorandum of points and authorities.

23

24

25

26

27

---

28   [6] The Court held that other expenses are deductible even if Google's infringement was willful.
     ECF No. 1321.  Oracle hereby preserves its right to appeal that decision.  *See* ECF No. 1299
     (Oracle's Opp. to Google's Mot. To Preclude Willfulness).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  April 20, 2016

Respectfully submitted,

*/s/ Lisa T. Simpson*

Lisa T. Simpson

Counsel for Oracle America, Inc.

ORACLE'S MEMORANDUM
RE: DISPUTED JURY INSTRUCTIONS