KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY  10036
Telephone:  212 556 2100
Facsimile:   212 556 2222

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 3:10-cv-03561 WHA (DMR) <br><br> **GOOGLE'S BRIEF REGARDING (1) THE PROPRIETY OF *IN CAMERA* REVIEW AND (2) EVIDENCE INDICATING THAT OPENJDK WAS A VIABLE OPTION FOR ANDROID** <br><br> Dept.:  Courtroom 8, 19th Fl. <br> Judge:  Hon. William Alsup |

At the hearing on April 19, 2016, the Court directed Google to file a five-page brief addressing two questions: "(1) Should the Court conduct *in camera* review of Google's privilege log entries relating to OpenJDK? (2) What evidence would indicate to a jury that JDK was a viable option?" *See* Minute Order (ECF 1687). The Court further directed Google to submit "any emails or memoranda reflecting OpenJDK as a legal contender." *Id.*

With respect to the first question, Google submits that *in camera* review is unnecessary. With respect to the second question, at trial Google intends to present evidence that, once released, OpenJDK was a viable option that Google could have adopted for the 37 Java SE API packages at issue in this case, including testimony not only from Andy Rubin and other Android team members, but also from Simon Phipps, who was Sun's Chief Open Source Officer when Sun released OpenJDK. Google documents, including the documents attached hereto as Exhibits A-C (discussed below) confirm that the Android team understood that if Sun released the Java SE API libraries as open source with a "linking exception" to the GNU General Public License, that would allow use of those libraries in Android. Testimony from Android engineering director Anwar Ghuloum and Google's open source licensing expert Andrew Hall will confirm that Google was readily able to switch to the OpenJDK class libraries in 2015, and provide ample basis for a finding that Google could have done so before Android launched.

I.  **There is no need for an *in camera* review of documents identified by Oracle from Google's privilege log.**

In opposition to Oracle's motion *in limine* #1, Google explained that evidence from 2006 and 2007 cited by Oracle in its motion did not reflect that Google was concerned about licensing issues related to using the OpenJDK class libraries in Android. *See* Opp. (ECF 1603) at 7-9. In its reply brief in support of its motion, Oracle argued that 96 entries from Google's 2011 privilege log show that "advice was sought about this very issue." *See* Reply (ECF 1644-3) at 2 & n.2.[1]

The descriptions for the majority of these entries do not relate to legal advice regarding the use of OpenJDK class libraries in Android. No less than 45 of the privilege log entries are for

---

[1] Citing "ECF No. 1385-1, Entries 858-860, 871, 877-878, 947, 1097-1100, 3510, 3547-3548, 3560-3561, 4376-4382, 4715, 4717-4719, 4721, 5850-5852, 10025-10029, 10034, 10044, 10076-10078, 12216, 13489-13494, 13500-13505, 13508-13510, 13552, 13563-13575, 13585-13590, 14186-14188, 14208, 14215-14218, 15578, 15814-15818, 21089, 29769, 29773-29774, 29789."

1

GOOGLE'S BRIEF REGARDING (1) IN CAMERA REVIEW AND (2) EVIDENCE ABOUT OPENJDK
Case No. 3:10-cv-03561 WHA (DMR)

documents described as seeking or reflecting advice of counsel about "contributing to" OpenJDK or "OpenJDK contributions."[2]  Google's *contributions to* OpenJDK have nothing to do with the licensing terms for *using* OpenJDK in Android.  An additional 9 entries are for documents described as seeking or reflecting advice of counsel about the "OpenJDK Community TCK License Agreement"[3]—again, not use of OpenJDK in Android.

Google attorneys have nonetheless reviewed *all* of the documents associated with the 96 privilege log entries cited by Oracle. Only *one* email thread, from 2009, has anything to do with the use of OpenJDK in Android.  This one email thread implicates 20 of the entries from the privilege log,[4] including the email that the log describes as seeking "advice of counsel re use of OpenJDK licensing in Android and mixing of GPL and Apache licensed code."[5]  One of these documents (Entry 13585) is a document that was *produced* in the litigation—the 2009 email from Joshua Bloch to Jesse Wilson that Oracle cited in its motion *in limine*.[6]  *See* Silverman Decl. (ECF 1563), Exh. 17.  The remaining 19 privilege log entries for emails in this thread actually comprise only six unique emails, each of which was collected from different sources up to four times, thus resulting in 19 privilege log entries.  To the extent that the Court orders any *in camera* inspection, these six unique emails are the ones that the Court should review.

That said, no *in camera* review is warranted.  As officers of the court, attorneys presenting a matter to a court have an ethical duty to "employ . . . such means only as are consistent with truth" and "not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law."  Cal. Rule Prof. Conduct 5-200(A)-(B).  Without disclosing the substance of the documents corresponding to the 96 privilege log entries, counsel can and does represent that these documents do not raise any ethical concerns about any of the arguments or evidence that Google

---

[2] ECF No. 1385-1 (manually filed electronic document), Entries 3510, 4379-82, 10034, 13489-94, 13500-05, 13508-10, 13552, 13563-75, 14186-88, 14215-18.

[3] *Id.,* Entries 947, 1097-1100, 10076-78, 12216.

[4] *Id.,* Entries 4715, 4717-19, 4721, 10025-29, 10034, 10044, 10076-10078, 12216, 13489-13494, 13500-13505, 13508-13510, 13552, 13585-90, 29769, 29773-74, 29789.

[5] *Id.,* Entry 4715.

[6] This document was inadvertently included on the privilege log notwithstanding that it was produced to Oracle. Its inclusion on the privilege log cannot have prejudiced Oracle, given that the email actually was produced.

has raised or will raise in this case, including in its opposition to Oracle's motion *in limine* #1.

Cases authorizing *in camera* review of privileged documents typically arise in the context of a challenge to the privilege. *See United States v. Zolin,* 491 U.S. 554, 572 (1989) (assertion of crime-fraud exception to claim of privilege); *In re Grand Jury Investigation,* 974 F.2d 1068, 1074 (9th Cir. 1992) (extending *Zolin* to *in camera* review for other circumstances in which a party challenges an assertion of privilege). Where a party challenging an assertion of privilege shows that there is a "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials" could reveal evidence establishing that the materials are not protected by privilege, the Court has broad discretion to decide whether *in camera* review is warranted, taking into account the particular facts and circumstances presented. *Zolin,* 491 U.S. at 572; *see also In re Grand Jury Investigation,* 974 F.2d at 1074-75.

The Ninth Circuit has also approved *in camera* review in other circumstances. *See Fed. Sav. & Loan Ins. Corp. v. Ferm,* 909 F.2d 372, 374-75 (9th Cir. 1990) (approving use of *in camera* review of fee statements notwithstanding assertion of privilege). The court noted, however, that it was not authorizing "indiscriminate judicial scrutiny of attorney client relationships." *Id.* at 375. Here, where the Court has already concluded that any challenge to Google's privilege log is untimely, Order (ECF 1420) at 2 ("Oracle's instant request to contest seventeen thousand entries [from Google's 2011 privilege log] . . . is beyond the pale."), and where counsel has represented that the documents corresponding to the cited privilege log entries raise no ethical concerns with arguments or evidence that have been or will be presented, there is no need for *in camera* review.

## II. Trial evidence will allow the jury to find that Google could have used the OpenJDK class libraries in Android.

At trial, Google intends to present testimony that, once released, OpenJDK was a viable option that Google could have adopted for the 37 Java SE API packages at issue in this case. Google anticipates that this will include testimony from Andy Rubin and other Android team members—and also testimony from Simon Phipps, who was Sun's Chief Open Source Officer when Sun released OpenJDK. Mr. Phipps can testify to the uses of OpenJDK that Sun *expected,* and the uses that Sun *told* the world were allowed. *See* Mullen Decl. (ECF 1608), Exh. 1 ("Free

3

and Open Source Java FAQ" from November 16, 2006) at 11 (noting that "JDK" class libraries would be released under the "GPLv2 + Classpath exception" license) & 13 (noting that there is no requirement that products made using JDK be compatible with the Java specification).

The documents attached hereto confirm that the Android team understood that if Sun released open source class libraries with a "linking exception" (such as the Classpath exception) to the GNU General Public License, that would mean that the libraries could be used in Android. On November 12, 2006, on the "android-team" mailing list at Google, Andy Rubin replied to an email from Cedric Beust commenting "GPL… <sigh>" in response to Sun's news that it would be releasing its Java technologies under open source licensing terms. *See* Exh. A. Mr. Rubin noted, "[t]hey say they will be announcing a '*link exception*' as well." *Id.* (emphasis added). He further explained, "in the best case, *it could mean we can use their libs* and even vm, if any of it is good." *Id.* (emphasis added). In a further email to the team mailing list less than two hours later, Mr. Rubin specifically identified the link exception as the "classpath exception," and noted that this limited "the software that the GPL covers." *See* Exh. B. Meanwhile, in response to the first email, Steve Horowitz (an Android team member) asked Mr. Rubin what a link exception is, and Mr. Rubin described a "link exception" by explaining that "GPL [i.e. without a link exception] is viral through link" but that "Sun will offer a rider that says that linking with their libs will not trigger the viral nature of GPL." *See* Exh. C. Horowitz replied, "Fascinating… *so that might work for us then.*" *Id.* (emphasis added).

Documents that were cited in the briefing of Oracle's motion *in limine* #1 are consistent with this understanding. *See, e.g.,* Silverman Decl. (ECF 1563), Exh. 13 (including Nov. 13, 2006 email contrasting Classpath exception for "SE" with "GPL-only" license for "ME"); Mullen Decl. (ECF 1608-6), Exh. 6, TX 155 (including November 12, 2006 email in which Andy Rubin notes, "I have been advised that Sun will offer a 'link exception' to GPL so that you can link your app with their class libraries *and not have copy-left force you to open source your app*.") (emphasis added); TX 230 (Aug. 11, 2007 email from Andy Rubin noting that Sun has a different license for its open source SE class libraries, and referring to "viral" issues with Sun's VM and with its ME class libraries).

4
GOOGLE'S BRIEF REGARDING (1) IN CAMERA REVIEW AND (2) EVIDENCE ABOUT OPENJDK
Case No. 3:10-cv-03561 WHA (DMR)

1052178.01

Moreover, Android engineering director Anwar Ghuloum will offer testimony that in 2015 Google *actually did* the engineering work necessary to switch to the OpenJDK class libraries, an effort that was largely completed by a single engineer in approximately six months, and likely could have been completed in half that time with another full-time engineer working on the project.  Dr. Ghuloum will further testify to the many reasons that the Android codebase is much more complicated today than it was before—for example, because it now targets many different CPUs.  Along with expert testimony from Google's open source licensing expert Andrew Hall, this will be more than ample grounds for a finding by the jury that Google could have used the OpenJDK class libraries in Android when it launched.

### III.     Conclusion

For the foregoing reasons, Google believes that *in camera* review is unnecessary, and that the trial evidence will provide strong support for a finding by the jury that Google could have used the OpenJDK class libraries in Android for the 37 Java SE API packages at issue.

Dated:  April 21, 2016                                              KEKER & VAN NEST LLP

                                                                    By:   /s/ Michael S. Kwun
                                                                          ROBERT A. VAN NEST
                                                                          CHRISTA M. ANDERSON
                                                                          DANIEL PURCELL

                                                                          Attorneys for Defendant GOOGLE INC.