ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE INC.<br><br>        Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S ADDITIONAL RESPONSE TO REQUEST FOR BRIEFING RE ADMISSIBILITY OF PRIOR STATEMENTS IN CASE, ECF 1730**<br><br>Trial Date: May 9, 2016<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William Alsup |

If the Federal Circuit intended to permit the parties to relitigate the issue of copyright infringement and its factual underpinnings, it would have granted Google's request for a new trial on infringement. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1377 n.17 (Fed. Cir. 2014) ("Google argues that, if we allow it to retry its fair use defense on remand, it is entitled to a retrial on infringement as well. We disagree."). But the Federal Circuit ruled against Google's position on copyrightability, reinstated the jury's infringement verdict, and denied Google's request for a new trial. *See id.* at 1381. The Federal Circuit made numerous factual findings along the way. But Google now seeks to undo those findings—Google would have no reason to "preserve[] its position that the SSO/declarations are not protected by copyright law" if it did not intend to make a *new record* on *copyrightability* at the retrial for a second chance to appeal. ECF 1709 (Jnt. Prop. Pretrial Or.) 3 n.1. But the record on copyrightability is closed, and Google cannot raise copyrightability *again* on appeal. The Federal Circuit's decision is binding on the parties and the Court, and Google should face the consequences rather than try again to lead the Court into error.

There is also no reason to allow Google to argue both sides of the coin—telling the Federal Circuit one thing on appeal and the jury another on remand. Statements made to the Court and to the Federal Circuit that rise to the level of a judicial admission are binding against the party making the statements, and Google's attempt to escape its unequivocal admissions made for purposes of the infringement portion of the case now that infringement has been decided should not be countenanced.

## I. THE FEDERAL CIRCUIT OPINION CONTAINS BINDING LAW OF THE CASE

### A. The Court Should Not Permit Google to Relitigate Copyrightability

If Google is right that the "Federal Circuit statements are not law of the case and do not estop the parties from disputing them," ECF 1727-1 at 2, one has to wonder what the point of the appeal was. It appears that Google wants to use the retrial as a forum to criticize and build an evidentiary record against the Federal Circuit's copyrightability holding by introducing evidence and building a record on discrete issues already considered and rejected by the Federal Circuit, all under the guise of "fair use":

| Originality / Creativity ||
|---|---|
| Google's Proffered Evidence | Federal Circuit's Findings |
| *Compare* | *With* |
| • "The rules and naming conventions in the Java Language Specification constrain the choices for Java API element names and how they are organized." 1563-4 (Astrachan Op. Rpt.) p. 65.<br><br>• "As a result, any good API design will have naming rules like the Java API naming rules contained in the Java Language Specification, which result in names that are functional and primarily dictated by efficiency concerns." *Id.* ¶ 179.<br><br>• "Because the names of the 37 API packages are short, fragmentary, and descriptive, they reflect only marginal creativity." *Id.* ¶ 182. | • "[T]he district court specifically found that the API packages are both creative and original, and Google concedes on appeal that the originality requirements are met." *Oracle Am.*, 750 F.3d at 1356.<br><br>• "[T]here can be 'creativity and artistry even in a single method declaration.'" and "Because Oracle 'exercised creativity in the selection and arrangement' of the method declarations when it created the API packages and wrote the relevant declaring code, they contain protectable expression that is entitled to copyright protection." *Id.* at 1363. |
| Merger ||
| Google's Proffered Evidence | Federal Circuit's Findings |
| *Compare* | *With* |
| • "Google intends to offer evidence that its use of the declarations/SSO of the APIs helped Android to achieve a degree of compatibility and interoperability with the Java language." ECF 1727-1 at 5.<br><br>• "[T]he 37 Java SE API packages are *necessary* for basic compatibility with the Java programming language[.]" ECF 1563-6 (Astrachan Reply Rpt.) 10 (emphasis added).<br><br>• "[T]he names and parameters of the APIs *must be the same* for many reasons … the Android platform is compatible with and provided the functionality of the Java language APIs at issue, and necessarily uses the same API names and organization in order to do so[.]" ECF 1563-4 (Astrachan Op. Rpt.) ¶ 250 (emphasis added). | • "This was not a situation where Oracle was selecting among preordained names and phrases to create its packages." *Oracle Am.*, 750 F.3d at 1361.<br><br>• "[A]s the [district] court acknowledged, nothing prevented Google from writing its own declaring code, along with its own implementing code, to achieve the same result." *Id.*<br><br>• "In such circumstances [as found by the district court], the chosen expression simply does not merge with the idea being expressed." *Id.*<br><br>• *Id.* at 1361 n.7 (finding merger impossible where factual record showed "that there were myriad ways in which the API packages could have been organized."). |

| Merger (cont'd) ||
|---|---|
| <ul><li>"[O]ne small portion, [the declaring code] which is *required* to be the same for purposes of compatibility and interoperability[.]" *Id.* ¶ 249 (emphasis added).</li><li>"As a result, any good API design will have naming rules like the Java API naming rules contained in the Java Language Specification, which result in names that are functional and primarily dictated by efficiency concerns." *Id.* ¶ 179.</li></ul> | |
| **Short Phrases** ||
| <u>Google's Proffered Evidence</u> | <u>Federal Circuit's Findings</u> |
| *Compare*<ul><li>"Because the names of the 37 API packages are short, fragmentary, and descriptive, they reflect only marginal creativity." ECF 1563-4 (Astrachan Op. Rpt.) at p. 68.</li><li>"[I]t is my opinion that any similarity between the names of elements (such as package, class and method names) in the method declarations of these APIs in the Java and Android platforms reflects functional considerations …." ECF 1563-4 (Astrachan Op. Rpt.) ¶ 18.</li></ul> | *With*<ul><li>"[T]here can be 'creativity and artistry even in a single method declaration.'" *Oracle Am.*, 750 F.3d at 1363.</li><li>*Id.* (finding that API packages "contain protectable expression that is entitled to copyright" "[b]ecause Oracle 'exercised creativity in the selection and arrangement' of the method declarations when it created the API packages and wrote the relevant declaring code[.]" (quoting *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 840 (Fed. Cir. 1992))).</li></ul> |
| **Structure, Sequence, and Organization** ||
| <u>Google's Proffered Evidence</u> | <u>Federal Circuit's Findings</u> |
| *Compare*<ul><li>"[T]he Android platform is compatible with and provided the functionality of the Java language APIs at issue, and *necessarily uses* the same API names *and organization* in order to do so." ECF 1563-4 (Astrachan Op. Rpt.) ¶ 250 (emphasis added).</li><li>"The rules and naming conventions in the Java Language Specification constrain the choices for Java API element names *and how they are organized*." *Id.* at p. 65 (emphasis added).</li></ul> | *With*<ul><li>*Oracle Am.*, 750 F.3d at 1365 (relying on Google's concession that it "*copied* portions of Oracle's declaring source code verbatim." (emphasis added)).</li><li>*Id.* (relying on that fact it was "undisputed here that the declaring code and the structure and organization of the API packages are both creative and original" and that "Google did not need to copy the structure, sequence, and organization of the Java API packages to write programs in the Java language.").</li></ul> |

| **Structure, Sequence, and Organization (cont'd)** | |
|---|---|
| • "[I]t is my opinion … that any similarity between the *organization of elements* in the implementations of these APIs in the Java and Android platforms also reflects functional considerations." *Id.* ¶ 18 (emphasis added). | • *Id.* at 1367 (relying on the Court's conclusion that "although the SSO is expressive, it is … also functional"). <br> • "Google could have structured Android differently and could have chosen different ways to express and implement the functionality that it copied." *Id.* at 1368 (citing ECF 1202). <br> • "*Given the [district] court's findings* that the SSO is original and creative, and that the declaring code could have been written and organized in any number of ways and still have achieved the same functions, we conclude that Section 102(b) does not bar the packages from copyright protection just because they also perform functions." (emphasis added). *Id.* |

But as Google concedes, law of the case arises from "issues that were actually decided, either explicitly or by necessary implication…." ECF 1727-1 at 4 (quoting *Ford Motor Co. v. United States*, 809 F.3d 1320, 1324 (Fed. Cir. 2016) (emphasis altered). The fact of the matter is that the Federal Circuit relied on findings made by this Court, made some of its own factual findings based on undisputed portions of the record and the parties' admissions, and reinstated the jury's infringement verdict (another factual finding). The Federal Circuit further denied Google's request for a new trial on infringement, *Oracle Am.*, 750 F.3d at 1377 n.17, and the Supreme Court denied certiorari, 135 S. Ct. 2887 (2015). Google thus concedes that the "upcoming trial will not address the issue of copyrightability[.]" ECF 1705-1 (Google Trial Br.) at 8 n.12. On this record, Google's claim that the "Federal Circuit clearly remanded the fair use issue with a clean evidentiary slate" is not correct. ECF 1727-1 at 1.[1] Google does not and cannot cite a case to support what it wants to do here: introduce evidence on issues that directly contradict the factual bases of an appellate court holding on remand when the same appellate court expressly

---

[1] Oracle and Google agree that in the fair use portion of its decision, the Federal Circuit made no factual findings that would constitute law of the case because it expressly found the factual record insufficient to come to a conclusion. Both parties likewise agree that the Federal Circuit's statement of legal principles is binding law of the case. ECF 1727-1 at 4; ECF 1726 at 5.

rejected a request for a retrial on those very issues.  If Google is permitted to go down this road, it will result in conflict with the Federal Circuit's mandate (and the mandate's factual predicate) and result in error.

Moreover, fair use is an "affirmative defense" that "presumes that unauthorized copying has occurred, and is instead aimed at whether the defendant's use was fair." *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985)).  As this Court has recognized, the posture of this case is "infringement subject to fair use," i.e., the former is a predicate of the latter.  Feb. 2, 2016 Tr. 40:7-8.  Google agreed:  "Right, or use of – or use of the method headers.  I mean, whatever language reflects the fact that we have preserved our defenses, but – *but we're not relitigating whether we're using those particular method headers at issue and SSO at issue that were already litigated the first time*." *Id.* 40:9-14 (emphasis added).  Google's present position—that the Federal Circuit "remanded … with a clean evidentiary slate"— directly contradicts what it represented to the Court and ignores the factual issues "actually decided, either explicitly or by necessary implication," by the Federal Circuit in its infringement holding—the predicate finding to fair use.

Take as further example Google's ever-changing argument related to "compatibility" and "interoperability" with the Java Programming Language. *See* ECF 1727-1 at 5 ("Likewise, while Google will not dispute that the Android platform is not compatible with any specific Java platform, ECF 1711, Google intends to offer evidence that its use of the declarations/SSO of the APIs *helped Android to achieve a degree of compatibility and interoperability with the Java language.*"  (emphasis added) (citing *Oracle Am.*, 750 F.3d at 1371-72)).  The Federal Circuit considered Google's claim that its copying was necessitated by characteristics of the Java programming language—three times—and rejected the argument (along with Google's related factual claims)—three times.  *See Oracle Am.*, 750 F.3d at 1353, 1364, 1376.

First, with respect to copyrightability, the Federal Circuit agreed with this Court in rejecting Google's scenes a faire argument that "because programmers have become accustomed to and comfortable using the groupings in the Java API packages, those groupings are so

- 5 -

ORACLE'S ADD'L RESP. TO REQ. FOR BRIEFING
RE ADMISSIBILITY OF PRIOR STMTS.
CV 10-03561 WHA

1   commonplace as to be indispensable to the expression of an acceptable programming platform."
2   *Oracle Am.*, 750 F.3d at 1363.  The Federal Circuit rejected this gloss on compatibility,
3   explaining that Google misunderstood the doctrine, and failed to meet its evidentiary burden
4   anyway: "[T]he scenes a faire doctrine identifies and excludes from protection … expression
5   whose creation '*flowed naturally* from considerations external to the author's creativity.'  It is this
6   showing the trial court found Google failed to make, and Google cites to nothing in the record
7   which indicates otherwise."  *Id.* at 1364 (emphasis added) (internal citations omitted); *see also*
8   1563-4 (Astrachan Op. Rpt.) ¶ 271 ("developers typically write code and software interfaces so
9   that they are efficient, and comport with industry demands and widely accepted practices…. The
10  selection, arrangement and organization of the APIs at issue reflect these practices.").  Now on
11  remand, Google seeks to have its technical expert, Dr. Astrachan, call the Federal Circuit's
12  copyrightability holding into question by offering, purportedly as a fair use opinion, the testimony
13  that "[w]hen Google chose the Java programming language for Android, certain things *naturally*
14  *flowed* from that decision—including using method declarations from the Java APIs to the extent
15  that functionality is incorporated into the new platform.  That is, to the extent that Google
16  implemented functionality that was the same as functionality already used by Java programmers,
17  programmers would have expected Android to use the same method declarations." ECF 1563-4
18  (Astrachan Op. Rpt.) ¶ 162.  This new "evidence" is indistinguishable from the evidence the
19  Federal Circuit held insufficient to support Google's scenes a faire argument.
20       Second, not content with building up the record on the already-rejected scenes a faire
21  doctrine, Google additionally tries to go behind the Federal Circuit's factual finding rejecting the
22  notion that use of the Java language required use of the Java API packages:  "it is also undisputed
23  that Google could have written its own API packages using the Java language. Google chose not
24  to do that. Instead, it is undisputed that Google copied 7,000 lines of declaring code and generally
25  replicated the overall structure, sequence, and organization of Oracle's 37 Java API packages."
26  *Oracle Am.*, 750 F.3d at 1353.[2]  Just two weeks ago, Google represented that Dr. Astrachan

---

[2] To the extent *any* declarations are technically required for use of the Java programming language, the parties agree that 62 declarations (out of thousands) contained in three API

ORACLE'S ADD'L RESP. TO REQ. FOR BRIEFING
- 6 -                     RE ADMISSIBILITY OF PRIOR STMTS.
CV 10-03561 WHA

*would not* offer testimony on compatibility: "You will not hear an opinion from him, and they can't show you one, where he is saying there is a technical requirement that certain APIs have to be there." Apr. 13, 2016 Tr. 107:13-15. When the Court asked about the "heading that says [the copied API packages] '[a]re *necessary* for *basic compatibility* with the Java programming language'" in Dr. Astrachan's reply report, ECF 1563-6 at 10, Google represented, "[Dr. Astrachan] will not be testifying about the heading, Your Honor. I think that may be a shorthand," Apr. 13, 2016 Tr. 107:16-20 (emphasis added), before going on to explain that Dr. Astrachan does indeed intend to testify that Google's copying was required by the Java language: "That's the point. If you want *compatibility*, you *have to use the same names*. If you want to come up with your own names, of course, then you *give up compatibility*," *id.* at 108:11-14 (emphasis added).

Third, in its present filing, Google again raises compatibility with the Java language: "Likewise, while Google will not dispute that the Android platform is not compatible with any specific Java platform," Google reserves the right, contrary to the Federal Circuit, "to offer evidence that its use of the declarations/SSO of the APIs helped Android to achieve a degree of *compatibility and interoperability* with the Java language." ECF 1727-1 at 5 (emphasis added). Oddly, Google cites to a portion of the Federal Circuit opinion that *rejected Google's compatibility argument* for a third time, saying, "While Google repeatedly cites to the district court's finding that Google had to copy the packages so that an app written in Java could run on Android, it cites to no evidence in the record that any such app exists and points to no Java apps that either pre-dated or post-dated Android that could run on the Android platform." *Oracle Am.*, 750 F.3d at 1371. The Federal Circuit further rejected any basis for *technical* compatibility or interoperability, holding that the record showed not a technical requirement (as Google argued on appeal and argues again now), but a "competitive objective" where "Google wanted to capitalize on the fact that software developers were already trained and experienced in using the Java API packages at issue …. Google's interest was in accelerating its development process by

---

packages (out of 37 copied API packages) are required by the language. Apr. 13. 2016 Tr. 99:2-5 (Google); *id.* 102:19-22 (Oracle).

'leverag[ing] Java for its existing base of developers.'" *Id.* at 1371-72.  The Federal Circuit then clarified what kind of compatibility is relevant to fair use in its explanation of the second factor: "[W]here the nature of the work is such that *purely functional elements* exist in the work and it is *necessary to copy* the expressive elements in order to *perform those functions*, consideration of this second factor arguably supports a finding that the use is fair." *Oracle Am.*, 750 F.3d at 1375 (emphasis added).  If Google wants to argue it copied from the 37 Java API packages for the commercial objectives of saving money on development costs, accelerating its time to market, and capturing Sun's investment in the Java developer community, it should say so.  But Google's *competitive objective* has nothing to do with the *functional necessity* that may be relevant to fair use, and it makes no sense to let Google conflate its purely commercial reasons for copying with concepts like "compatibility" and "interoperability" that the Federal Circuit expressly rejected.

Contrary to its representations to the Court, Google is seeking to relitigate the copyrightability portion of the case, and to have the retrial that was expressly denied by the Federal Circuit. *Oracle Am.*, 750 F.3d at 1377 n.17.  This is exactly the sort of mischief the law of the case/rule of mandate doctrine is intended to prevent, and exactly why the authorities cited in Oracle's opening brief on this issue apply fully.  ECF 1726 at 1-5.  Google should not be permitted to inject unnecessary evidence on already decided issues into the remanded trial, and this is a prime example of why both parties should be held to the Federal Circuit's findings in the copyrightability phase.

**B.   Evidence *Consistent with* Judicial Admissions and Admitted Facts Should Be Admissible At Trial**

Oracle does not contest as a general matter that some evidence related to any admitted facts or judicial admissions should be admissible (given general admissibility pursuant to the FREs).[3]  Oracle agrees with Google that evidence on the *extent* of factor one sub-issues commerciality, transformation, and Google's bad faith (or conduct) are necessary to assist the

---

[3] Google's brief prematurely responded to the Court's questions regarding the proposed factoids before the parties' could meet and confer on the issue, *see* ECF 1711 at 2 (asking the parties to agree, if possible).  Oracle filed its response today at Noon, ECF 1733, as directed, and incorporates that response in full here.

1  jury in balancing these sub-issues in order to reach a conclusion on factor one.  *See* ECF 1727-1

2  at 5 ("Google intends to offer evidence … to show that … transformative use outweighs any

3  commercial nature of the use."); *see, e.g.*, *Monge*, 688 F.3d at 1177 ("Maya's minimal

4  transformation of the photos is substantially undercut by its undisputed commercial use."); *Wall*

5  *Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 779 (9th Cir. 2006) ("the commercial aspect

6  of the Sheriff's Department's use was not 'of minimal significance.'").

7  What should not be permitted, however, is introduction of evidence and argument that

8  undermines the basic premise of admissions—otherwise, deeming a fact admitted is not worth

9  much in the first place, and the policies underlying estoppel by judicial admission discussed in

10  Oracle's opening brief are evaded.  *See* ECF 1726 at 5-7.  For instance, it does not make sense to

11  find as an admitted fact that "it is undisputed that Google's use of the API packages is

12  commercial," ECF 1727-1 at 3, and then allow Google to argue anyway that Android is given

13  away for free, and is thus not a commercial use, *see id.* at 5 ("Google intends to offer evidence

14  that Android is free…."); 2/24/2016 Tr. 50:8-11 (Tutorial) ("I can tell you that, obviously,

15  Android is used in many non-commercial ways all the time.  Android is offered for free.  Google

16  doesn't sell Android.  It is offered for free for use for anyone."); *see also* ECF 1719 (Req. for Br.

17  on Prior Stmts.) ("shouldn't counsel be held to their word?").

18  Likewise, evidence related to admitted or stipulated facts must be relevant.  For instance,

19  it makes little difference that Java ME "was never licensed for use in modern smartphones," as

20  Google incorrectly and misleadingly claims, when the relevant time period is nearly 10 years ago

21  when Google made its decision to copy, and a time when the record shows Java ME was licensed

22  by the major smartphone manufacturers, exclusive of Apple's iPhone, which had only been

23  introduced that year.  With these caveats, Oracle agrees that evidence related to judicial

24  admissions and admitted facts should be admitted.

25  **C.  Applying Law of the Case is not Procedurally Difficult**

26  Google's concern that objections based on the Federal Circuit's opinion and the parties'

27  past judicial admissions will be unworkable at trial has no merit, and is another excuse to escape

28  the Federal Circuit's decision during the retrial.  Most objections to evidence foreclosed by the

- 9 -

ORACLE'S ADD'L RESP. TO REQ. FOR BRIEFING
RE ADMISSIBILITY OF PRIOR STMTS.
CV 10-03561 WHA

1  Federal Circuit's decision will be based on relevance—as Google concedes, the "upcoming trial
2  will not address the issue of copyrightability[.]" ECF 1705-1 (Google Trial Br.) 8 n.12.  And the
3  point of briefing the issue now, *before the upcoming trial*, is to put the parties on notice as to the
4  scope of permissible evidence in light of the procedural posture of the case.  To the extent Google
5  is truly concerned, the parties can easily arrive at a shorthand that will leave the jury unaware of
6  the Federal Circuit's decision, similar to the reference to "prior sworn testimony" the parties
7  agree should be used when testimony from the first trial becomes an issue at the upcoming retrial.
8  ECF 1709 (Joint [Proposed] Pretrial Order) at 7.

## II. PRIOR FACTUAL CONCESSIONS OF COUNSEL MAY BE ADMITTED INTO EVIDENCE IF COUNSEL TAKES INCONSISTENT POSITIONS

Google asserts that factual concessions of counsel cannot be admitted into evidence because: (1) Google confirmed it will not dispute the commercial nature of its use of the 37 Java API packages; (2) statements of counsel at oral argument are neither evidence nor judicial admissions; and (3) procedural complexity will ensue because the parties will comb through the years-long record in this case looking for instances of inconsistent argument.  ECF 1727-1 at 6-10.  These assertions have no merit.

Google's confirmation that it "will not dispute the commercial nature of its use of the declarations and SSO," *id.* at 7, does not dispose of the question whether factual concessions Google made at oral argument or in briefs should be admitted into evidence.  Mr. Van Nest's concession before the Federal Circuit about commerciality is not merely that Google does not dispute commerciality; it was a clear, deliberate, and unambiguous "***no***" to a circuit judge's question whether Google disputes that the purpose and character of its use of the 37 API packages was "***entirely*** a commercial purpose."  ECF 1726 at 9-10 (providing this exchange in full along with citations) (emphasis added); *see supra* at 9 (discussing how commerciality is a question of degree, hence "entirely" is an essential and meaningful adverb, not just argument); *see also* ECF 1733 at 1-2 (Oracle briefing on "commercial" factoid).  Moreover, commerciality is not the only judicial admission Oracle seeks to admit.  Oracle also seeks to admit two other factual concessions contained in Google's *certiorari* brief to the Supreme Court: (1) Google copied the

- 10 -

ORACLE'S ADD'L RESP. TO REQ. FOR BRIEFING
RE ADMISSIBILITY OF PRIOR STMTS.
CV 10-03561 WHA

1    APIs that are most important for mobile and (2) Android is not compatible with Java. *See id.* at

2    10.

3          Both Supreme Court and Ninth Circuit precedent holds that concessions like these are

4    judicial admissions. Oracle cited *six* such cases specifically holding that concessions made in

5    *oral argument* or in *briefs* constitute binding judicial admissions. *See id.* at 7-8 (citing, *inter alia*,

6    *Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880), which holds that oral concessions are binding).

7    Google's failure to recognize the weight of this authority is unavailing (*see* ECF 1727-1 at 7): the

8    Ninth Circuit's Model Jury Instruction informing a jury that attorney statements at trial are not

9    evidence is not only dwarfed by the cases Oracle cites, it is also irrelevant, as described more

10   fully below. Google unsuccessfully attempts to distinguish other cases Oracle cites—which hold

11   that such concessions may be used as evidence—by claiming these cases relate solely to *written*

12   advocacy. *Id.* at 8. Courts do not distinguish between written and oral concessions, and Google

13   provides no explanation for why such a distinction would be meaningful. Regardless, Oracle

14   cited in its submission on this issue numerous cases holding that concessions in *oral argument* or

15   in *briefs* are admissible as evidence. *See* ECF 1726 at 9 (citing, *inter alia*, *United States v.*

16   *McKeon*, 738 F.2d 26, 30-33 (2nd Cir. 1984), which holds that oral concessions are admissible).

17         Google wrongly asserts that admitting clear and unambiguous concessions by counsel into

18   evidence would be bad public policy because both sides would scour the years-long record in this

19   case to find inconsistent statements of counsel in prior briefs or hearings. ECF 1727-1 at 9.

20   Courts consistently rely on counsel, who know their cases inside and out, to concede facts (*i.e.*, to

21   narrow the universe of facts at issue) so that courts can focus on what is actually disputed or

22   material. *See, e.g.*, *Oscanyan*, 103 U.S. at 263 ("…the admissions of counsel, as to matters to be

23   proved, are constantly received and acted upon."). When such concessions are "deliberate, clear

24   and unambiguous," counsel should be held to their word. *MacDonald v. Gen. Motors Corp.*, 110

25   F.3d 337, 340 (6th Cir. 1997). This does not mean that the parties can or should comb through

26   the entire record of this case in an attempt to identify "possibly contradictory argument," as

27

28

Google claims it could do regarding the Lindholm email. ECF 1727-1 at 9.[4] Instead, it simply means that, where counsel has *conceded* a material *fact* on behalf of the client (not merely *argued* something), counsel may not later disclaim that concession by taking an inconsistent factual position.[5] Otherwise, when it behooved them, litigants could "play[] 'fast and loose with the courts.'" *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (discussing judicial estoppel).

Dated: April 26, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
Annette L. Hurst

Counsel for ORACLE AMERICA, INC.

---

[4] Google's example of purportedly inconsistent argument between Oracle's prior and current counsel about the Lindholm email is irrelevant. Oracle's counsel never *conceded* any fact in this regard. And Google does not have a clean slate on the Lindholm issue anyhow, having argued in the first trial, "there are declarations before this Court where Mr. Lindholm made clear several times that *he had never engaged in a patent infringement analysis with respect to the Android platform ever with regard to any patent*. So that would be highly misleading …" Tr. (C. Anderson) 2827:23-2828:3 (emphasis added); *compare with* ECF 1555 (Google's Rejected MIL #5) 1 (Google seeking to "show that the statements by Mr. Lindholm concern Oracle's assertions of **patent—not copyright**—infringement" (emphasis original)).

[5] It is for this reason that the Model Jury Instructions are inapposite: they do not contemplate an attorney conceding a fact before the court; rather, they contemplate attorney argument to the jury about facts elicited from documents or witnesses. *See* Model Civil Jury Instruction 1.7.