KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:     (415) 397-7188

KING & SPALDING  LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3521
Tel:    (404) 572-4600
Fax:    (404) 572-5100

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GOOGLE INC.,<br><br>  Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**DEFENDANT GOOGLE INC.'S RESPONSE REGARDING MODIFIED PROPOSED JURY INSTRUCTIONS ON FAIR USE (ECF NO. 1688)**<br><br>Dept.:    Courtroom 8, 19th Fl.<br>Judge:    Hon. William Alsup |

Defendant Google Inc. ("Google") respectfully submits this response to the requests contained in the Court's Modified Proposed Jury Instructions On Fair Use.  ECF No. 1688.

In its April 19 Order, the Court directed the parties to meet and confer in person and try to agree on the Court's modified proposed fair use instructions and, if the parties could not agree, to state all objections in a brief.  As counsel reported during the pretrial conference on April 27, the parties have met and conferred, and have reached agreement on a number of changes to the Court's modified proposed instructions.  The parties are filing separately a joint statement regarding those agreed revisions.

## I. Google's Objections to the Modified Instructions

Google objects to the Court's modified instructions in the following respects.[1]

### A. The "propriety of the accused infringer's conduct"

Google objects to the inclusion in the jury instructions of the paragraph beginning on line 15 of page 4 regarding the "propriety of the accused infringer's conduct" and "good faith."

In its exhaustive review of the principles of fair use law that it deemed applicable in this case, the Federal Circuit made clear that the first fair use factor "involves *two* sub-issues," namely whether the new work is transformative and whether the use serves a commercial purpose. *Oracle Am. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) (emphasis added).  The Federal Circuit clearly considered *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539 (1985), in its careful review of fair use precedent—and it did not identify any issue of "good faith" as relevant to the first factor in this case.  The Federal Circuit did so even though the Court in *Harper* said that, in view of the facts of that case, the "propriety of the defendant's conduct" was relevant.  Despite its "detailed examination of fair use," 750 F.3d at 1374, and its direction to this Court to provide the jury on remand with "a clear and appropriate picture of the fair use defense" and to do so "consistent with this opinion," *id.* at 1377, the Federal Circuit did not use either the phrase "good faith" or the word "propriety" anywhere in its opinion.

The reason for this omission by the Federal Circuit is apparent:  *Harper & Row* involved

---

[1] Google discusses herein its significant, substantive objections to the Court's modified proposed instructions.  Google reserves its suggestions for specific wording or other more minor modifications to the Court's proposed instructions.

an ***unpublished*** work of which the defendant had obtained a "purloined copy" and had published the excerpts of President Ford's memoirs based on the unauthorized, temporary possession of that purloined copy. *Harper*, 471 U.S. at 542 (a "purloined manuscript" from "an undisclosed source"); *id*. at 543 ("unidentified person secretly brought a copy" of manuscript to The Nation; editor "knew that his possession of the manuscript was not authorized"); *id*. at 563 ("knowingly exploited a purloined manuscript"). The *Harper* Court emphasized numerous times in its opinion that the work at issue was an unpublished work—the Court used the word "unpublished" no fewer than 25 times in its opinion, including in each of the first two sentences of the opinion. And the *Harper* Court recognized that unpublished works have historically received special protection, particularly with respect to the right of first publication, *id.* at 550-52, and that the unpublished status of a work should "figure prominently in fair use analysis." *Id.* at 553.

For these reasons, the conduct of the defendant in *Harper*—which had knowingly made use of an unauthorized, "purloined copy" of an unpublished work—was relevant to its fair use defense. There are no comparable facts regarding Google's conduct. Google used publicly-available specifications for the Java SE API packages that had been published widely by Sun and were freely available, that Sun had encouraged programmers to learn and use as part of the Java language, that Sun had allowed others (including GNU Classpath and Apache) to use to create independent implementations, and that Google believed could—like other open API specifications—be used to create an independent implementation. Google did not "secretly" obtain an "unauthorized" or "purloined" copy of the API specifications in any respect; its conduct was as far removed from using a purloined copy of an unpublished work as can be imagined. The language from *Harper* regarding the "propriety of the defendant's conduct" is therefore inapplicable in this case and should not be included in the Court's instructions.

Even *Nimmer On Copyright*, the authority cited by the *Harper* Court on this issue, agrees—especially in light of the Court's subsequent decision in *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994). As Nimmer points out, the Court in *Campbell* "retreated" from its stance in *Harper*, stating that "Even if good faith *were* central to fair use, 2 Live Crew's actions do not necessarily suggest that they believed their version was not fair use." *Nimmer On*

*Copyright* § 13.05[A][1][d] (quoting *Campbell*, 510 U.S. at 585 n.18) (emphasis Nimmer's). As the *Campbell* Court stated:

> Finally, regardless of the weight one might place on the alleged infringer's state of mind, we reject Acuff-Rose's argument that 2 Live Crew's request for permission to use the original should be weighed against a finding of fair use. Even if good faith were central to fair use, 2 Live Crew's actions do not necessarily suggest that they believed their version was not fair use; the offer may simply have been made in a good-faith effort to avoid this litigation. If the use is otherwise fair, then no permission need be sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use.

510 U.S. at 585 n.18. Based on this language, Nimmer concludes that "an inquiry into defendant's state of mind does not necessarily belong in the fair use calculus." *Nimmer On Copyright* § 13.05[A][1][d]; *accord*, P. Leval, Toward a Fair Use Standard, 103 HARV. L. REV. 1105, 1126-27 (1990) (identifying good faith as a "false factor" that "divert[s] the [fair use] inquiry from the goals of the statute," "produces anomalies," and "adds to the confusion surrounding the doctrine"; stating that the fair use inquiry "should focus not on the morality of the secondary user, but on whether her creation claiming the benefits of the doctrine is of the type that should receive those benefits" and that "no justification exists for adding a morality test").

The other authorities cited by Oracle in support of its request for a "good faith" instruction on the first factor, ECF No. 1707 at 16-17, do not support the request. *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986), is a pre-*Campbell* decision in which the court concluded that the plaintiffs "failed to identify any conduct of [the defendant] that is sufficiently blameworthy," found that the defendant's use of the plaintiff's song after having been refused permission did not show bad faith, 794 F.2d at 437, and affirmed a summary judgment of fair use. *Id*. at 440. In *Los Angeles News Service v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997), the Ninth Circuit's language on this issue—post-*Campbell*—was limited and guarded: it stated that the propriety of the defendant's conduct is relevant on the first fair use factor but only "at least to the extent that it may ***knowingly have exploited a purloined work*** for free that it could have obtained for a fee." (emphasis added). The Ninth Circuit, in other words, has recognized that it is only facts like those in *Harper*, involving a "purloined work," that make the defendant's conduct relevant to a fair use analysis. Finally, Judge Whyte's decision in *Religious Tech Ctr. v. Netcom On-Line Comm.*, 923 F. Supp. 1231 (N.D. Cal. 1995), is consistent with the above authorities. In

*Religious Tech*, Judge Whyte (citing *Nimmer*) noted that *Campbell* "hardly endorses the good faith requirement," 923 F. Supp. 1244 n. 14, and, consistent with the limited nature of the "good faith" inquiry, considered whether the defendant had obtained copies of the plaintiff's works "through deceit," in "some unlawful or illegitimate manner," or "in an improper manner." Absent any allegation of such conduct—and there is none in this case—good faith has no place in the fair use calculus and the jury should not be told to consider it.

No court has identified "good faith" as a separate, third inquiry under the first fair use factor. As drafted (and as requested by Oracle), the Court's modified instructions could easily suggest to jurors that "good faith" is as important to the inquiry under the first factor as transformativeness and commerciality. That would be unprecedented and inconsistent with the authorities cited above, and inconsistent with the Federal Circuit's opinion and direction. And the language of the Court's modified instruction is in any event inapplicable, as it refers to good faith being absent where, "for example, the intended purpose is to supplant the copyright holder's commercially valuable right of first publication." ECF 1688 at 16-18. While such an instruction may have been appropriate in *Harper*—where an unpublished work was at issue—it would only confuse our jury, as there are no issues relating to any "right of first publication."

### B. A work need not change the original work to be transformative.

The Court's modified proposed instructions include a statement that a use "is transformative only where a defendant ***changes a plaintiff's copyrighted work*** or uses a plaintiff's copyrighted work in a different context ***such that the plaintiff's work is transformed into a new creation***." ECF 1688 at 3-4 (emphases added). This language is incorrect as a matter of law and should not be included in the jury instructions.

One need look no further than *Sony Corp. v. Universal City Studios*, 464 U.S. 417 (1984), for clear precedent that no change in the plaintiff's work need be made for a use to be a fair use. In *Sony*, the evidence showed that the recorders at issue were used for the purpose of reproducing the entire works that were broadcast; there is no suggestion in the Court's decision that the broadcast works were changed in any way or transformed in any respect. 464 U.S. at 450-51. The home time-shifting in *Sony* was nonetheless confirmed to be a fair use. *Id.* at 455-56.

1    While *Sony* did not discuss transformativeness per se, there can be no debate that the
2    outcome in *Sony* would have been the same under current fair use jurisprudence. The Ninth
3    Circuit, moreover, has considered this precise issue more than once—and has consistently ruled
4    that, as it "determined in *Kelly*," "even making an exact copy of a work may be transformative so
5    long as the copy serves a different function than the original work." *Perfect 10, Inc. v.
6    Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007); *see also Kelly v. Arriba Soft Corp.*, 336
7    F.3d 811, 818-19 (9th Cir. 2002) (finding use of "exact images" transformative and fair use).

8    The Ninth Circuit has gone farther, moreover, and has specifically recognized that a work
9    may be transformative *either* when it transforms the first work "into a new work" *or* incorporates
10   the first work "as part of a broader work." *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176
11   (9th Cir. 2012). As the Court is aware, the Federal Circuit quoted this specific language from
12   *Monge* in its detailed fair use analysis. *Oracle Am.*, 750 F.3d at 1374. It therefore recognized
13   that this language from *Monge* was relevant in this case.

14   Recent additional authority on fair use confirms this conclusion. In *The Authors Guild v.
15   Google Inc.*, 804 F.3d 202, 214 (2d Cir. 2015), *cert. denied*, __ U.S.L.W. __ (U.S. Apr. 18, 2016),
16   Judge Leval stated succinctly that "a transformative use is one that communicates something new
17   and different from the original *or expands its utility*, thus serving copyright's overall objective of
18   contributing to public knowledge."

19   The language proposed by Google in its proposed instruction number 11—which
20   recognizes both that a new work is transformative when it "incorporates the elements of the first
21   work into a broader work" and that the new work "need not change the elements of the original
22   work in order for the new work to be transformative," ECF No. 1703 at 31-32—is therefore
23   proper. This language is, moreover, consistent with the language from *Campbell* that the Federal
24   Circuit quoted and that the Court recently added to its instructions at the request of both parties,
25   namely that a work is transformative "if it adds something new" and that the "critical question" is
26   whether the new work "merely supersedes" the original or "instead adds something new." ECF
27   No. 1688 at 3, lines 24-27; *see Oracle Am.*, 750 F.3d at 1374 (quoting *Campbell*, 510 U.S. at
28   579). Without clarifying that the defendant can add something new without changing the

elements of the original work, the Court's instructions may well confuse the jury.

The proper focus of transformativeness is not on the "expressive content or message" of the portions of the first work that are used by the defendant and whether *those portions* have been changed or not; the focus is on the two works as a whole, i.e., does the defendant's new work alter or add "new expression, meaning or message" to what was used from the first work, such that *the new work*—not the portions of the new work that were used from the first work—is transformative when compared to the first work. *Campbell*, 510 U.S. at 578-79 ("central purpose" of the transformativeness inquiry is "whether and to what extent *the new work* is transformative") (emphasis added). The Federal Circuit appreciated this distinction as well; it stated, quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013), that a work is not transformative where the user makes no alteration to the expressive content *of the original work*." *Oracle Am.*, 750 F.3d at 1374 (emphasis added). This language does not require that any changes or alteration to the elements of the original work used by the defendant, or that the original work be changed into a "new creation," and makes clear that the relevant comparison of the "expressive content" is between the original work and the new work as a whole.

Google submits that it is important for the Court to clearly instruct the jury on transformativeness. In order to do so in a manner that is consistent with both Supreme Court precedent and the Federal Circuit's opinion, the Court should, in view of the above, both remove the language stating that alteration of the elements of the first work is required and add the "broader work" and "need not change" language contained in Google's proposed instruction.

### C.     An adequate definition of "derivative work"

Google also objects to the Court's modified instructions on the grounds that they fail to adequately and fully instruct the jury on what will be an important issue, namely, what a "derivative work" is under the copyright laws. The instructions, on page 7, contain a one-sentence definition of derivative work that is based on the statutory definition contained in 17 U.S.C. § 101. The jury will need additional guidance on this issue, however, in order to properly and fairly consider the relevance of the evidence that will be presented by Oracle.

As the Court knows, the Supreme Court in both *Harper* and *Campbell* stated that the

1  inquiry under the fourth factor must take into account "harm to the market for derivative works,"
2  *Campbell*, 510 U.S. at 590; *Harper*, 471 U.S. at 568, and the Court recently added language
3  regarding derivative works to the instructions based on these authorities, at Oracle's request.  As
4  the Court also knows, Oracle has recently pointed to all sorts of alleged uses for and alleged
5  potential markets for Java ME (also called "J2ME") as part of its arguments on the fourth factor,
6  as well as in connection with its damages claims.
7  　　　In order for this evidence to be relevant on either the fourth fair use factor or on damages,
8  however, Oracle must prove that "Java ME" is in fact a derivative work, under the copyright
9  laws, of the Asserted Works in suit, namely ***Java 2 SE versions 1.4 and 5.0***.  The term
10  "derivative work" under the copyright laws has a very specific meaning that has been well-
11  developed in the case law, and the status of one work as a claimed derivative work of another
12  must be proven.  It is simply not enough to say "Java is Java and all Java software is derivative of
13  all other Java software, so Java ME should be treated as a derivative work—for fair use analysis
14  purposes—of the two specific Java SE 1.4 and 5.0 works in suit."  That is precisely the improper
15  type of "all of Java against all of Android" broad-brush approach that Oracle has frequently taken
16  throughout this lawsuit and that the Court has recognized as improper.  Tr. (4/17/2012) at 227
17  (THE COURT:  Let me say a few things first about this.  This trial is not Java against Android.
18  This trial is not about all of Java."); *id.* at 228 ("It is not Java against Android. . . . you may not
19  leave the impression that this case is all of Java against all of Android.  It is not.")
20  　　　The derivative work issue is a very specific one.  For Oracle's evidence regarding Java
21  ME to be relevant, one or more specific, identified versions of Java ME must be derivative
22  works—within the meaning of the statutory definition—of one or both of the Asserted Works and
23  must be derivative works with respect to the elements of the 37 Java SE API packages used in
24  Android.
25  　　　Google's proposed instruction on derivative works, ECF 1703 at 54-55, has two critical
26  aspects.  First, the proposed instruction correctly instructs the jury that not all works that include
27  some elements of a pre-existing work qualify as derivative works of that pre-existing work; the
28  second work must "be based ***in whole or in substantial part*** upon the pre-existing work and ***must***

*incorporate portions of the pre-existing work that are covered by the copyright* in the pre-existing work." (emphases added). *Micro Star v. Formgen*, 154 F.3d 1107, 1110 (9th Cir. 1998) ("in order to qualify as a derivative work . . . [the] work . . . must substantially incorporate protected material from the preexisting work"); *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("The little available authority suggests that a work is not derivative unless it has been substantially copied from the prior work."); *see also Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1079 (9th Cir. 2000) ("a derivative work, unlike a compilation, must incorporate that which itself is the subject of copyright"); 1 *Nimmer On Copyright* § 3.01 (derivative work must be based "in whole, or in substantial part" on the pre-existing work; work is not derivative "unless it has substantially copied from a prior work").

Second, the proposed instruction tells the jury, in accordance with the plain language of Section 103(b) of the Copyright Act, 17 U.S.C. § 103(b), that the copyright in a derivative work "extends only to the new material contained in the derivative work, as distinguished from any material from the pre-existing work that is included in the derivative work." This portion of the instruction is important because the jury will need to determine, as noted above, whether an identified version of Java ME contains portions of Java 2 SE 1.4 or 5.0 that were new in one of those two specific editions of Java 2 SE and are therefore protected by the copyrights in those works. If not, "Java ME" simply does not qualify as a derivative work of either Java 2 SE 1.4 or 5.0, just as Java ME cannot qualify as a derivative work of Java 2 SE 1.4 or 5.0 if the API elements that are common to Java 2 SE, Java ME, and Android predated Java 2 SE 1.4 and 5.0, i.e., if they were included in and therefore protected by earlier versions of Java 2 SE as opposed to versions 1.4 or 5.0. If that is the case—and it almost surely is for many of the common, core package API elements that were included in the early versions of both Java 2 SE and Java ME that predated the Asserted Works—then there is no basis for Java ME to be considered to be a derivative work of either of the two works in suit. The statutory definition requires that a work can only be a derivative work of a "pre-existing work," i.e., of one that existed before the claimed derivative work was created. 17 U.S.C. § 101 (definition of "derivative work").

Oracle's complaint that Google's proposed instruction "includes information far beyond

the scope of the case and thus risks confusing the jury about irrelevant topics," ECF No. 1707 at 44, is therefore incorrect. Oracle has chosen to attempt to introduce into this case significant issues relating generally to "Java ME" on the premise that Java ME is a "derivative work" under the copyright laws. That premise must be proven, not assumed, and the jury may need to decide whether some or all of Oracle's evidence and arguments regarding Java ME have a proper basis. To do that, the jury will need an adequate and complete instruction regarding the definition of a derivative work.

### D.     The fourth fair use factor

Google appreciates the Court's desire to give the jury adequate guidance on the fourth fair use factor regarding market harm, and that the issue is a complex one. The Court's modified instructions, however, now contains a first paragraph on the fourth factor that summarizes the necessary principles, ECF No. 1688 at 6, lines 16-27, followed by three additional paragraphs, *id.* at 7, line 1 to 8, line 9, that Google believes have significant potential to confuse the jury. For example, the instructions now refer to comparisons of the "market value" of the Asserted Works before and after the accused use "on a qualitative and directional basis," *id.* at 7, lines 14-22, and refer to "Oracle's copyright interest in Android." *Id.* at 7, lines 8-9. These concepts will not necessarily apply to the evidence the jury will hear and it will therefore be difficult for the jury to derive benefit from these paragraphs of the instructions. And Oracle has no "copyright interest in Android" whatsoever if Google's use was a fair use.

Google submits that the first paragraph of the Court's modified instructions on the fourth factor gets the job done—or nearly so. The Court has added to that paragraph language about derivative works, as Oracle requested in its critique of the Court's original draft instructions, and has also added language regarding the relative importance of the fourth factor, also as requested by Oracle. Google's proposed instruction number 15 on the fourth factor, ECF No. 1703 at 45, also recognizes that a use can be fair even if it causes some market harm, that harm caused by a transformative use that does not serve as a substitute for the original work is not cognizable under the fourth factor, and that the relevant "work" for purposes of the fourth factor is the work as a whole. With those additions and an adequate definition of "derivative work," the instructions will

9
GOOGLE'S RESPONSE REGARDING MODIFIED PROPOSED FAIR USE INSTRUCTIONS
Case No. 3:10-cv-03561 WHA

provide the jury with simpler instructions on the fourth factor that are consistent with the Federal Circuit's one-paragraph discussion of this factor.  *Oracle Am.*, 750 F.3d at 1376.

### E. Other objections

The foregoing are Google's primary substantive objections to the Court's modified instructions.  Google continues to believe, however, that a number of other portions of the Court's modified instructions should also be changed.

Google cannot agree that the instructions should say that "all agree" that Google's use of the declaring code and SSO "constituted copyright infringement" unless Google carries its burden as to fair use.  ECF 1688 at 2, lines 4-7.  Google has equitable defenses that have not yet been decided and, more importantly, Google must be allowed to continue to preserve for further appellate review the copyrightability issue that has, for purposes of the present trial, been resolved by the Federal Circuit.  In the event of future appellate proceedings, Google will be able to raise the copyrightability issue if necessary—especially in view of the fact that Oracle argued, in opposition to Google's petition for certiorari, that the Supreme Court should not grant certiorari because the case was still in an interlocutory posture since fair use had not yet been decided. More specifically, Oracle argued to the Supreme Court in 2014 that the Court should deny cert on the copyrightability issue at that time because "this Court could benefit from a fully developed fair-use record."  Oracle Brief In Opposition, No. 14-410 (U.S. Dec. 8, 2014) at 37.

Google continues to believe that the instructions with respect to transformativeness should continue to include references to whether a work is "productive" and "adds value," *see* ECF No. 1678 at 2—as the Court's original draft instructions properly did.  Google further submits that the Court's instructions should include an instruction, consistent with the parties' stipulation, *see* ECF No. 1709 at 4-5, specifically to the effect that the Java programming language is "open and free for anyone to use."  *See* ECF No. 1703 at 8 (Google Proposed Instruction No. 3); ECF No. 1704 at 1-2.  Finally, Google also believes, for the reasons Google stated in its memorandum in support of its proposed instructions, that the reference in the instructions to "notice," ECF No. 1688 at 2, line 25, is inappropriate and may confuse the jury.  *See* ECF No. 1704 at 3.

DATED: April 28, 2016

KEKER & VAN NEST LLP

By: /s/ Robert A. Van Nest
    ROBERT A. VAN NEST

Attorneys for Defendant
GOOGLE INC.