| | |
|---|---|
| 1 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|   | KAREN G. JOHNSON-MCKEWAN (SBN 121570) |
| 2 | kjohnson-mckewan@orrick.com |
|   | ANNETTE L. HURST (SBN 148738) |
| 3 | ahurst@orrick.com |
|   | GABRIEL M. RAMSEY (SBN 209218) |
| 4 | gramsey@orrick.com |
|   | 405 Howard Street, San Francisco, CA 94105 |
| 5 | Tel: 1.415.773.5700 / Fax: 1.415.773.5759 |
|   | PETER A. BICKS (*pro hac vice*) |
| 6 | pbicks@orrick.com |
|   | LISA T. SIMPSON (*pro hac vice*) |
| 7 | lsimpson@orrick.com |
|   | 51 West 52nd Street, New York, NY 10019 |
| 8 | Tel: 1.212.506.5000 / Fax: 1.212.506.5151 |
| 9 | BOIES, SCHILLER & FLEXNER LLP |
|   | DAVID BOIES (*pro hac vice*) |
| 10 | dboies@bsfllp.com |
|   | 333 Main Street, Armonk, NY 10504 |
| 11 | Tel: 1.914.749.8200 / Fax: 1.914.749.8300 |
|   | STEVEN C. HOLTZMAN (SBN 144177) |
| 12 | sholtzman@bsfllp.com |
|   | 1999 Harrison St., Ste. 900, Oakland, CA 94612 |
| 13 | Tel: 1.510.874.1000 / Fax: 1.510.874.1460 |
|   | ORACLE CORPORATION |
| 14 | DORIAN DALEY (SBN 129049) |
|   | dorian.daley@oracle.com |
| 15 | DEBORAH K. MILLER (SBN 95527) |
|   | deborah.miller@oracle.com |
| 16 | MATTHEW M. SARBORARIA (SBN 211600) |
|   | matthew.sarboraria@oracle.com |
| 17 | RUCHIKA AGRAWAL (SBN 246058) |
|   | ruchika.agrawal@oracle.com |
| 18 | 500 Oracle Parkway, |
|   | Redwood City, CA 94065 |
| 19 | Tel: 650.506.5200 / Fax: 650.506.7117 |
| 20 | *Attorneys for Plaintiff* |
|   | ORACLE AMERICA, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| Plaintiff, | **ORACLE'S OBJECTION TO THE COURT'S MODIFIED PROPOSED JURY INSTRUCTION ON FAIR USE (ECF NOS. 1688 & 1716)** |
| v. | |
| GOOGLE INC. | |
| Defendant. | Trial: May 9, 2016 at 8:00 a.m. |
| | Dept.: Courtroom 8, 19th Floor |
| | Judge: Honorable William Alsup |

ORACLE'S RESPONSE TO COURT'S MODIFIED &
ADJUSTED PROPOSED JURY INSTRUCTIONS

Oracle submits this response and objections to the Court's proposed instruction on fair use. ECF Nos. 1688, 1716. The parties met and conferred in person, and were unable to agree on the wording of the instruction, except as described in the parties' separate joint submission.

**GENERAL OBJECTIONS**

A jury instruction should inform the jury of the law to be applied to the facts in a neutral, evenhanded manner, without leading the jury in one direction or the other. This proposed instruction does not do that. Oracle thus objects to the instruction on two principal grounds. First, in various instances the instruction does not accurately reflect the law of copyright or fair use. Second, the instruction is generally slanted in favor of a finding of fair use, which will improperly influence the jury.

In the Specific Objection section below, Oracle cites the particular passages of the instruction to which it objects and the basis for the objection. By way of example, at 5:1, the instruction states "[c]omputer programs … are not literary works." In fact, computer programs are literary works under the Copyright Act. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1354 (Fed. Cir. 2014); 17 U.S.C. §§ 101, 102; The Computer Software Copyright Act of 1980, 94 Stat. 3015; Copyright Office Circular 61 at 3 ("computer programs are literary works").

An example of the slanted nature of the instruction is at 4:9-13. The instruction states that "[c]ommercial use weighs against a finding of fair use." That instruction is then diluted by lengthy qualifications that suggest the jury should find that Google's commercial use of the copyrighted code is not that important. The instruction does not otherwise imply that commercial use is dispositive, and thus there is no reason to instruct that commercial use is not dispositive—and certainly no reason to do so twice ("To put it differently, …"). The ultimate effect of the lengthy qualifications following the instruction that "[c]ommercial use weighs against a finding of fair use" is to minimize, if not eliminate, any effect of Google's admittedly commercial use.

A further example of the slanted nature of the instruction is the Court's insertion in the concluding paragraph of the *dicta* from *Wall Data, Inc. v. Los Angeles County Sheriff's Department*, 447 F.3d 769, 778 (9th Cir. 2006), referring to "custom or public policy." ECF No. 1716 (Ct. Revision of Prop. Instr.). That statement was not the holding of *Wall Data*; nor was it rele-

vant to the holding. To Oracle's knowledge, no appellate court has adopted "custom or public policy" as a binding principle of fair use law since Congress codified fair use in § 107. Yet the instruction elevates it to a position of utmost importance by telling the jury (as one of the last things it hears about fair use) that as it balances the statutory factors it must evaluate whether "a reasonable copyright owner would have consented to the use." The instruction thus forges new law in a manner designed to lead the jury toward a finding of fair use.

Finally, the proposed instruction attempts to do far too much to manage the jury's deliberations and to comment on the law. Rather than simply providing the jury with the law and—when an issue is undisputed or subject to a binding factual finding or party admission—a direction on a particular matter, the proposed instruction contains commentary that is unnecessary and likely confusing to the jury. It is unnecessary and prejudicial to inform the jury that fair use is an "important" exception, Instr. 2:23, or that the "Supreme Court" was the body that found transformation a relevant consideration, Instr. 3:20. Oracle is not asserting a claim over the Java programming language, but the instruction states that "Google was free to use the Java programming language to write Android." Instr. 5:1, 5:27-28. The proposed instruction suggests that "it may be useful for you [the jury] to break down the 37 Java API packages into their component subroutines and subsubroutines and then identify the idea or core functional element of each." Instr. 5:19-21. But the Federal Circuit already held that the declaring code and the SSO of the 37 Java API packages are copyrightable and infringed, absent a finding of fair use. The instruction does not inform the jury why they should engage in any exercise to "break down" the API packages, and indeed no such exercise is required given the appellate court's holding.

Oracle submits that the Court should adopt Oracle's proposed instructions, which principally quote verbatim from binding authority without additional commentary. If the Court chooses not to do so, Oracle objects to the proposed instruction, hereby incorporates its prior objections, ECF Nos. 1527, 1663, 1703, 1707, and reserves all its rights.

### **SPECIFIC OBJECTIONS**

***Preamble.* 1.** The Court should not instruct the jury that "Google wrote (or legitimately acquired) its own implementing code for those 37 API packages …." Instr. 2:3-4 ("Even though

1  Google wrote (or legitimately acquired) its own implementing code for those 37 API packages
2  ….").  This statement should be deleted.  This is an example of unnecessary editorial comment on
3  the evidence that slants the instruction toward fair use.  It has been determined that Google copied
4  the declaring code and the SSO of the 37 Java API packages and that the declaring code and that
5  the SSO are copyright protected.  *Oracle Am.*, 750 F.3d at 1348, 1354, 1356, 1381; ECF Nos.
6  1488 (Tentative Trial Plan), 1506 (Follow-Up).  Nevertheless, in the paragraph intended to inform
7  the jury what Google copied and infringed unless fair use is found, the instruction minimizes
8  Google's copying by informing the jury that "Google wrote (or legitimately acquired) its own im-
9  plementing code …."  This is incorrect (or, at least, misleading) and unnecessary.  The Federal
10 Circuit reinstated the first jury's verdict that Google infringed when Google copied the declaring
11 code even if it used other implementing code.  750 F.3d at 1356 (discussing "non-literal copying
12 with respect to the entirety of the SSO"), 1381 ("reinstat[ing] the jury's infringement verdict").
13 Moreover, there is no reason to give the jury an instruction about Google legitimately writing or
14 acquiring its own implementing code.  Not only has that fact not been proven, the net effect is to
15 diminish Google's infringement, slanting the instruction toward Google and fair use.

16      **2.**  It is too narrow to emphasize the policy rationale for copyright laws as simply "protect-
17 [ing]" against "exploitation," while stating that "[t]he policy behind the right of fair use is … de-
18 velopment of new ideas that build on earlier ones [stated twice] … providing a counterbalance to"
19 copyright protection, Instr. 2:11-19.  This is especially prejudicial when the jury is instructed that
20 the statutory factors must be balanced in light of "promot[ing] the progress of science and useful
21 arts."  Instr. 8:18-20.  Moreover, there is no unified policy for fair use.  ECF No. 1663 at 1.

22      **3.**  The Court should not instruct the jury that fair use is an "important" exception.  Instr.
23 2:22-25.  It has no bearing on the jury's deliberation and slants the instruction in favor of fair use.

24      ***Transformation.***  **1.**  It is not accurate to instruct the jury that the "central purpose" of the
25 first factor is transformation, Instr. 3:20-23.  The "central purpose" language in *Campbell* defines
26 the "central purpose" of the transformative investigation, not the entire first factor:

27 > The central purpose of this investigation is to see, in Justice Story's words, whe-
> ther the new work merely 'supersedes the objects' of the original creation or
28 > instead adds something new with a further purpose or different character, altering

- 3 -  ORACLE'S RESPONSE TO COURT'S MODIFIED &
ADJUSTED PROPOSED JURY INSTRUCTIONS

> the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative."

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (quoting *Folsom v. Marsh*, 9 F. Cas. 342, 348 (C.C.D. Mass. 1841)). The "investigation" is the one that "asks" about "transformative." *Id.* Moreover, even within transformation, *Campbell* is clear that the central purpose is whether "the new work merely supersedes" the original. *Id.* This is the *critical inquiry* because "the fair use doctrine has *always precluded* a use that 'supersedes the use of the original.'" *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 550 (1985) (emphasis added) (quoting *Folsom*, 9 F. Cas. 344-45). Accordingly, it is not "transformation" that is the central purpose of the first factor; rather the central purpose of the transformation inquiry is whether the infringement is a commercial substitute for the original work. The sentence in the proposed instruction should be deleted because it is incorrect, and, as written, it prejudices the jury in favor of fair use.

**2.** The court should not instruct the jury without qualification that a work is transformative if the "plaintiff's work is transformed into a new creation," Instr. 3:28-4:2. Such a broad definition of transformation would swallow the copyright holder's exclusive right to prepare derivative works. 17 U.S.C. §§ 101 (defining "derivative work), 106(2) (exclusive right to prepare derivative works). The Supreme Court and Ninth Circuit hold that copying, even into a new creation, is infringement and not transformative. *Stewart v. Abend*, 495 U.S. 207, 238 (1990) (adapting a book to a movie); *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 628-29 (9th Cir. 2003) (using video and audio clips in documentary). Accordingly, any instruction on transformation must preserve the copyright holder's exclusive right to prepare derivative works.

***Commercial use.*** As discussed (at 1), the jury should be instructed that Google's use was *entirely* commercial and that commercial use weighs against fair use, period. The rest of the instruction minimizes and obscures that simple point, biasing the instruction in favor of fair use.

The instruction is also erroneous. It focuses only on the extent of transformation in weighing transformation versus commercial, but the Supreme Court recognizes that the degree of commerciality may outweigh other aspects of fair use. *See Campbell*, 510 U.S. at 585 ("The use, for example, of a copyrighted work to *advertise a product*, even in a parody, will be entitled to

less indulgence under the first factor of the fair use enquiry than the sale of a parody for its own sake, let alone one performed a single time by students in school" (emphasis added)).  "[T]he degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise—affects the weight we afford commercial nature as a factor." *Elvis Presley Enters*, 349 F.3d at 627.  Thus, the jury should be instructed that an entirely commercial use can diminish the significance of any transformation.  Moreover, as the Ninth Circuit has repeatedly recognized, "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *See, e.g.*, *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1113 (9th Cir. 1998) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)).

**Bad faith.**  The Court was correct to modify its proposed instruction to include the concept of bad faith from *Harper & Row*, 471 U.S. at 562-63.  The example proposed in the instruction (right to first publication) is likely to confuse the jury, since it is not at issue.  A more apt example would be where a license is denied and the defendant copies anyway.  *See L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997).

**Factor two.**  **1.**  Computer programs *are* literary works.  *Supra* 1; *contra* Instr. 5:1.

**2.**  It biases the instruction to instruct the jury that it is easier to demonstrate fair use for "copying of … functional elements of a work *such as computer software*."  Instr. 4:21-24 (emphasis added).  There is no need to instruct the jury about the functionality of computer programs when the following paragraphs already do.

**3.**  The instruction creates a false dichotomy by setting up "creative and original versus functional," Instr. 5:5-8, in this case where the work at issue has both creative and functional elements.  The Federal Circuit already found that the declaring code and SSO contain creative expression protected by copyright, despite the fact that the platform also has functional elements.  This is not an either/or test as the instruction suggests.

**4.**  The proposed instruction states that "[w]hen purely functional elements are embedded in a copyrighted work and it is necessary to copy associated creative elements in order to utilize those functional elements, then this circumstance favors fair use."  Instr. 5:16-18.  For complete-

ness and balance, the instruction should also provide the inverse: Copying creative expression that is not necessary to perform the functions cuts against fair use. In addition, consistent with the Federal Circuit's decision, Oracle proposes changing "are embedded in a copyrighted work" to the simpler term used by the Federal Circuit: "exist in a copyrighted work." 750 F.3d at 1375.

**5.** Oracle respectfully submits that the entire paragraph (at 5:19-6:4) should be deleted as unnecessary, prejudicial, and confusing. Specifically, instructing the jury on the Abstraction-Filtration test is unnecessary and likely to create jury confusion. The Federal Circuit already has held that what Google copied is copyrightable expression and the first jury found that Google infringed. The instructions should not import the Abstraction-Filtration analysis into fair use. Doing so invites the jury to ignore those settled determinations and come to its own conclusion on what is and is not copyrightable and infringed (without regard to fair use). Moreover, telling the jury that it "may be useful to break down" the APIs seems guaranteed to create jury confusion.

In addition, as explained (at 2-3), there is no need to instruct the jury that Google writing its own implementing code was permissible. Instr. 5:21-23. It is also unnecessary and confusing to interject the issue of "method of operation," when the Federal Circuit has held that the elements the declaring code and SSO are *not* methods of operation. 750 F.3d at 1365-68. It is also improper and prejudicial to instruct as to whether Google had to copy to use the Java language. The Federal Circuit said it did not, and suggesting this rejected idea should be a part of both factors two *and* three, Instr. 6:3-4, is prejudicial and weights the instructions in favor of fair use.

*Factor three.* This factor should expressly state that the jury may not consider Android as a whole when looking to the quantity of what was copied; the comparison must be to the Java platform, the copyrighted work. Also, the instruction at 6:9-10 ("If, however, the accused infringer used only what was reasonably needed for its purpose, then this circumstance weighs in favor of fair use.") is not the law and should be deleted. If anyone could copy as much as needed for "their purpose"—even an entirely illegitimate purpose—the fair use exception would swallow the whole of copyright protection.

*Factor four.* **1.** The proposed instruction states that the effect on the value of the copyrighted work looks to the "money value" of the work. Oracle has found no case that describes

1   harm to the value of the copyrighted work in that way.  Rather, as the Supreme Court explains:

2   "If the defendant's work adversely affects *the value of any of the rights in the copyrighted work*

3   … the use is not fair."  *Harper & Row*, 471 U.S. at 568 (emphasis added, quotation marks omit-

4   ted).  Those "rights in the copyrighted work" are the exclusive rights under § 106, such as the

5   right to exploit the work through copies, distribution, and licensing as well as prepare and exploit

6   derivatives of the work.  Similarly, Oracle is aware of no case where the court required anything

7   along the lines of a monetary valuation of the effect of the infringement in actual or potential

8   markets—particularly for potential markets where the copyright holder is not yet competing.

9         **2.**  The instruction is also confusing in mentioning in the same context (1) the harm to the

10  market for derivative works and (2) Android being a derivative work.  Though it is true that

11  Google infringes, in part, because Android is an unauthorized derivative of the Java platform, the

12  harm analysis under factor four focuses on the actual and potential market for authorized deriva-

13  tives based on the copyrighted work.  Injecting the reference to Android as a derivative work

14  suggests to the jury that its harm analysis should be focused on Android.  This risk of confusion is

15  particularly prejudicial to Oracle because of the importance of factor four. The Court should

16  instruct the jury that factor four considers the effect of Google's use on the actual and potential

17  market for the copyrighted work (the Java platform) and Oracle's own and licensed derivatives.

18  *See* ECF No. 1703 (Oracle's Prop. Instr. No. 15) at 43.

19        **3.**  The Court should also provide the jury with a definition of derivative work, rather than

20  several examples that are not close analogies to this case.  Oracle proposed such an instruction,

21  taken verbatim from the Copyright Act's definition of the "derivative works."  ECF No. 1703

22  (Oracle's Prop. Instr. No. 18) at 52.  Without a proper definition of derivative work that the jury

23  can apply to this case, the jury cannot fully consider the market harm under factor four.

24        **4.**  The Court's explanation of actual and potential market harm, Instr. 7:14-17, is inaccur-

25  ate.  As the Supreme Court has explained:  "Actual present harm need not be shown ….  Nor is it

26  necessary to show with certainty that future harm will result.  What is necessary is a showing by a

27  preponderance of the evidence that *some* meaningful likelihood of future harm exists.  If the

28  intended use is for commercial gain, that likelihood may be presumed."  *Sony Corp. of Am.*, 464

U.S. at 451. In instructing the jury that it must perform a before and after analysis, the instruction ignores the fact that a copyright owner cannot always show before-and-after harm in a potential market because the potential market was one in which the copyright holder was not yet competing.[1] The same is true for examination of the harm if infringement akin to the defendant's becomes "unrestricted and widespread." *Campbell*, 510 U.S. at 590 (quotation marks omitted).

**5.** Oracle also objects that the Court's extended analogy (at 8:2-9) is complicated, confusing, and unlikely to assist the jury. Oracle proposes omitting and replacing with a reference to the definition of derivative works that Oracle proposed. *Supra* 7; ECF No. 1703 at 52.

*Weighing the factors.* **1.** In the final paragraph, when the Court instructs the jurors to weigh the factors and decide "whether or not, on balance, they predominate in favor of fair use," Instr. 8:20-22, the Court should instruct the jury that the burden is on Google to prove by a preponderance of the evidence that the factors must predominate in favor of fair use in order for the jury to return a verdict of fair use; if Google does not prove fair use by a preponderance of the evidence, then the jury must reject fair use and return a verdict for Oracle.

**2.** Oracle objects to the Court's addition of a quote from *Wall Data* in the final paragraph regarding whether a "reasonable copyright owner would have consented" or whether the use would have been considered reasonable based on "custom or public policy." This single sentence in *Wall Data* is unexplained *dicta*. After the proposed quoted sentence, the Ninth Circuit never returned to the concept, nor made any attempt to apply it. *See* 447 F.3d at 783. In fact, the Ninth Circuit *affirmed* the *exclusion* of evidence about use of the work by other customers, use of other Wall Data works, and Wall Data's various other licenses, finding that evidence irrelevant, unduly consumptive of time, confusing, and prejudicial. 447 F.3d at 781-82. Significantly, the Federal Circuit also made no reference to this quotation or this concept in its decision. 750 F.3d at 1377.

Indeed, the only appellate case to address this "reasonable consent" language explicitly

---

[1] Indeed, potential market harm can exist even when the copyright holder is not in and has no intention of entering the market for the work. *See Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1180-81 (9th Cir. 2012) ("little doubt" of market harm even where plaintiff "did not intend to sell" the works); *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000) (potential market harm even where "author … disavowed any intention to publish his work during his lifetime"). The copyright holder has "the right to enter th[e] market; whether it chooses to do so is entirely its business." *Formgen*, 154 F.3d at 1113.

rejected it. In *Peter Letterese & Associates, Inc. v. World Institute of Scientology Enterprises, International*, 533 F.3d 1287, 1308 & n.23 (11th Cir. 2008), the Eleventh Circuit held that the district court's creation of an additional "consent factor" that "permeated its evaluation of the four factors" was "incorrect, both in terms of logic and in precedent." The court explained:

> The case law and Congressional history speak of fair use as "predicated on the author's implied consent to 'reasonable and customary' use," [citing *Harper & Row*], but we understand such language to refer more to the doctrinal underpinnings of fair use … and not to suggest that in determining whether a use is fair, one should look to the actual past conduct of the copyright owner to determine whether consent can be implied.

But that is exactly what the proposed instruction invites the jury to do—consider Sun's and Oracle's past conduct to justify Google's repeated attempts to use "reasonableness," "custom," and "consent," as justifications to create sideshows, such as Apache Harmony, GNU Classpath, and OpenJDK. *See, e.g.*, ECF No. 1602-4 (Google Apache Opp.) at 1, 4-6; ECF No. 1603 (Google OpenJDK Opp.) at 1, 4-5; 2/2/16 Tr. at 25:18-19; 2/24/16 Tr. 11:20-23; *id.* 51:4-7.[2]

There is also no indication in the instruction, or in *Wall Data*, of how much is required for a "custom." To date, Google has pointed to two examples: Apache Harmony and GNU. Even putting aside the specific reasons why neither is an example of unlicensed commercial copying accepted by Sun, two does not make a custom. Google seeks to use "custom" to justify why Google did not need to comply with Oracle's licensing contracts. In the analogous context of a party seeking to use parol evidence to evade contract terms through allegations of custom, "custom" requires a strong showing of *such universal practice* that the supposed custom has acquired *the force of law*. *Jones v. Robertson*, 180 P.2d 929, 932, 225 (Cal. Dist. Ct. App. 1947) ("'Custom' is defined in Ballentine's Law Dictionary as 'Something which has by its universality and antiquity acquired the force and effect of law, in a particular place or country, in respect to

---

[2] Significantly, the effect of Google's argument is to eviscerate open-source licensing. Under Google's theory, it would be fair use for anyone to copy the copyright holder's work if the copyright holder had open-sourced the work and allowed others to use it under the terms of an open-source license. Under those circumstances, according to Google's argument, any copyist could claim that a reasonable copyright owner would consent to copying and that there exists a custom and practice of copying without monetary compensation to the copyright owner. *See* ECF No. 1551-3 (Oracle OpenJDK MIL) at 12-13; ECF No. 1644-3 (Oracle OpenJDK Reply) at 4-5 (quoting, *inter alia*, *Jacobsen v. Katzer*, 535 F.3d 1373, 1378 (Fed. Cir. 2008) (open-source licenses "provide creators of copyrighted materials a means to protect and control their copyrights")).

- 9 -   ORACLE'S RESPONSE TO COURT'S MODIFIED & ADJUSTED PROPOSED JURY INSTRUCTIONS

the subject matter to which it relates; general practice, judicially noticed without proof.'").[3]

Further, it is error to instruct the jury about "reasonable copyright owner consent" in a case like this where Google could afford a license, the parties negotiated for a license, and, when they did not reach an agreement, Google copied anyway and used Oracle's copyrighted works in a commercial product to make billions of dollars and shut Oracle out of the market. *See Harper & Row*, 471 U.S. at 557 (observing defendant did not have "any actual necessity for circumventing the copyright scheme"). Here, where Sun/Oracle refused to license under the terms Google desired because of concern about how it would affect Sun/Oracle's business, the "refusal[] to grant permission to license should ordinarily be honored." Gordon, *Fair Use as Market Failure: A Structural & Economic Analysis of the* Betamax *Case and its Predecessors*, 82 Columbia L. Rev. 1600, 1601, 1609, 1634 (1982). The consent of a reasonable copyright owner should come into play only when "the copyright owner … refuse[d] to license out of a desire unrelated to the goals of copyright—notably, a desire to keep certain information from the public," which is not the case here. *Id.*; *accord id*. at 1613.

Finally, the placement of the instruction—in the concluding paragraph—is highly prejudicial because it signals to the jury that reasonable consent, custom, or public policy should be its ultimate focus, not the statutory factors. The instruction is worded in a way to lead the jury to a particular conclusion—"bear in mind that fair use is appropriate …." The instruction is tantamount to telling the jury that they can impose their own views on what is "reasonable" and reach a conclusion based on those views, regardless of the four statutory factors or the evidence. Including this dicta from *Wall Data* will irrevocably taint the proceedings with material error.

## CONCLUSION

Oracle objects to the proposed instruction and urges the Court to adopt Oracle's.

---

[3] *United States of Am. for the Use of Union Bldg. Materials Corp. v. Haas & Haynie Corp.*, 577 F.2d 568, 573-74 (9th Cir. 1978) ("It is well settled that in order to be bound by trade custom, it must be shown that the custom is so generally known that the parties may be presumed to have known of it."); RESTATEMENT (SECOND) OF CONTRACT § 221 com. b (1981) ("The more general and well-established a usage is, the stronger is the inference that a party knew of or had reason to know of it")); *see also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) ("an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker" requires "that the relevant practice is so widespread as to have the force of law" (quotation marks omitted)); *Strother v. Lucas*, 37 U.S. 410, 445-46 (1838) (defining "custom").

- 10 -  ORACLE'S RESPONSE TO COURT'S MODIFIED & ADJUSTED PROPOSED JURY INSTRUCTIONS

Dated: April 28, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Lisa T. Simpson*
Lisa T. Simpson

Counsel for ORACLE AMERICA, INC.