IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC.,

    Plaintiff,

  v.

GOOGLE INC.,

    Defendant.

No. C 10-03561 WHA

**ORDER *IN LIMINE* RE ORACLE'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF APACHE HARMONY AND GNU CLASSPATH**

## INTRODUCTION

Plaintiff's motion *in limine* to exclude all evidence of Apache Software Foundation, Apache Harmony, Google's distribution of Android under the "Apache License," and GNU Classpath is **DENIED** as to evidence regarding Apache. The Court, however, reserves its ruling on evidence regarding GNU Classpath until it has received and reviewed a written offer of proof on GNU Classpath and Oracle's written response as requested by this order.

## STATEMENT

At all material times, the Apache Software Foundation was a non-profit organization that focused on "open, collaborative software development projects" (TX 1047 at 1). It called one of its projects, "Apache Harmony," an open-source, independent implementation of Java SE (Standard Edition) (*id*. at 1, 3; Trial Tr. at 522). Harmony contained, among other things, class libraries for the 37 APIs at issue in this case (Trial Tr. at 396–97). Starting about 2005, Apache made the source code for Harmony publicly available to download from its website (*id*. at 561).

1    At some point after 2005, Google downloaded the code at issue herein from Harmony for use in the Android platform (*id*. at 1684, 1688). Google chose Harmony because of Apache's open-source license, which permitted developers to modify the software code, without having to submit the modifications back to Apache (*id*. at 1506–07, 1697).

Sun (now Oracle) offered different types of licenses for the Java programming platform. One such license was a specification license, which permitted developers like Apache to view the specifications (not the source code) for Java so that they could build their own version of Java (*id*. at 293–94). Sun also required developers like Apache to get a license for a test compatibility kit or "TCK," which they were required to pass to ensure that their versions of Java were compatible with the standard edition of Java (*id*. at 294, 376–77).

Starting in 2006, Apache attempted to obtain a license from Sun for a TCK or JCK ("Java compatibility kit") for Harmony to "demonstrate its compatibility with the Java SE specification, as required by Sun's specification license" (TX 917 at 1).[1]

Sun offered Apache a license for a TCK/JCK, but with a "field-of-use restriction" (*ibid*.). A field-of-use restriction "is a restriction that limits how a user can use a given piece of software, either directly or indirectly" (TX 1047 at 4). Sun's field-of-use restriction required Apache to limit the use of Harmony to desktop computers or servers — *i.e.*, not mobile devices (Trial Tr. at 524–25).

Apache disagreed with Sun's field-of-use restriction (TX 1047 at 5). On April 11, 2007, Apache sent Sun an open letter, requesting a TCK/JCK license unencumbered by a field-of-use restriction (*id*. at 2). Apache explained that Sun's field-of-use restriction contradicted the "basic principles of open source licensing" and prevented distribution under "any open source license," including Apache's own license (*ibid*.).

---

[1] The parties dispute whether Harmony could have been distributed in absence of a TCK license. Oracle argues that Apache could not have distributed Harmony, irrespective of whether or not it wanted to call itself Java-compatible, unless it obtained a TCK license and passed the TCK (Pl.'s Br. at 1–2; Pl.'s Reply at 3). Google contends that Apache could have distributed Harmony because Harmony was based on Apache's own source code; it simply could not have called itself Java-compatible without a TCK license and passing the TCK (Def.'s Opp. at 1–3). This dispute cannot be resolved *in limine*. Possibly, it will be subject to a Rule 50 motion after the evidence at trial.

2

The dispute between Apache and Sun became known to other members of the open-source community. On June 22, 2007, various members of the open-source community including Google and Oracle (before it acquired Sun) sent a letter to Sun, requesting that Sun release a TCK/JCK license to Apache without a field-of-use restriction (TX 2347 at 1).

Sun never agreed to Apache's request for a TCK/JCK license with no field-of-use restriction (Trial Tr. at 527). Harmony was eventually shut-down (after Google adopted its code for Android) (*id*. at 530).

## ANALYSIS

Oracle seeks to exclude all evidence regarding Apache and GNU Classpath on the grounds that the evidence is not relevant to Google's fair use defense or any equitable defense and that the presentation of the evidence will result in juror confusion and would be unduly time-consuming.

**1. THE APACHE STORY IS RELEVANT TO WILLFULLNESS AND FAIR USE.**

Given that Oracle is accusing Google of willful copyright infringement, Google is entitled to present to the jury the story of how it acquired the software code in question, including its downloading of the 37 APIs in question from Apache's website. At a minimum, therefore, the Apache story is relevant to Google's defense against Oracle's charge of willfulness.

At least to some extent, the Apache story is also relevant to the defense of fair use.

In *Wall Data, Inc. v. Los Angeles County Sheriff's Department*, 447 F.3d 769, 773–74 (9th Cir. 2006), a Sheriff's department purchased a certain number of licenses for defendant's copyrighted software but installed the software on more computers than had been licensed. In determining whether the use was fair, our court of appeals stated: "As we balance these factors, we bear in mind that fair use is appropriate where a 'reasonable copyright owner' would have consented to the use, *i.e.*, where the 'custom or public policy' at the time would have defined the use as reasonable." *Id*. at 778 (quoting Subcomm. on Patents, Trademarks & Copyrights of the Sen. Comm. on the Judiciary, 86th Cong., 2d Sess., Study No. 14, Fair Use of

3

Copyrighted Works 15 (Latman) (Comm. Print 1960)). The court concluded that the use was not fair after balancing the four statutory factors. 447 F.3d at 777–82.

Oracle is correct that our court of appeals in *Wall Data* did not specifically rely upon evidence of custom in its analysis of the specifics of that case and that the statement quoted above is a dictum. Nevertheless, our court of appeals made the statement regarding the relevance of custom and Oracle is wrong to ask this Court to ignore the statement. Indeed, the legislative history on fair use summarized the various tests for fair use as follows:

> [I]mportance of the material copied or performed from the point of view of the reasonable copyright owner. In other words, would the reasonable copyright owner have consented to the use? At times, custom or public policy defines what is reasonable.

Latman, Study No. 14, Fair Use of Copyrighted Works, at 15 (1958).

Oracle does not dispute the importance of the 1960 legislative history in interpreting the 1976 Act. During the April 19, 2016 hearing, Oracle's counsel argued that the 1960 legislative history was part of the legislative history of the Act. *See* Dkt. 1722 at 136 (Ms. Hurst: "It took more than 20 years to develop the legislative history for the 1976 Copyright Act.").

Furthermore, as the Ninth Circuit stated in *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1993), the "statutory factors are not exclusive. Rather, the doctrine of fair use is in essence 'an equitable rule of reason.'" (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)). As Oracle itself states in its critique of this court's proposed instructions on fair use, "since the doctrine is an equitable rule of reason, *no generally applicable definition is possible*, and each case raising the question must be decided on its own facts ." Dkt. 1663 at 1 (emphasis in original).[2]

On a different point, as Oracle itself insists, in *Harper & Row Publishers, Inc.*, 471 U.S. at 562, the Supreme Court observed that "[a]lso relevant to the 'character' of the use is 'the propriety of the defendant's conduct'" and that "'[f]air use presupposes 'good faith' and 'fair dealing.'" Oracle cannot accuse Google of bad faith without letting Google show good faith.

---

[2] Moreover, this Court has searched for, and, has not found, any decision in this Circuit concluding that evidence regarding a custom cannot be considered in determining whether a use is fair.

4

Google proffers that at the time in question, it was an accepted practice that the header lines in the APIs could be copied freely without a license so long as the copier used its own implementing code and, in the case of Java, did not call itself Java. If this proves true, this would certainly mitigate Oracle's charge of bad faith and willful acquisition and use and explain why Google might have believed that it needed no license whatsoever from Sun to use the Apache Harmony APIs.

So, at least to some extent, the Apache story bears upon whether or not there was a custom and practice in favor of the kind of use made by Google. One caveat: it is problematic (from Google's point of view) that Google knew of Sun's field-of-use restriction, so it is not entirely clear how the Apache story will establish custom and practice within the meaning of *Wall Data*. Accordingly, the Court will listen carefully to the evidence as it is presented and at some point may restrict further evidence regarding custom under Rule 403, but the Court is not yet prepared to say that balance favors exclusion altogether.

### 2. THE BALANCE UNDER RULE 403 DOES NOT WEIGH IN FAVOR OF TOTAL EXCLUSION OF THE APACHE STORY.

Oracle's concern over juror confusion, as evident by juror notes in the prior trial, is well-taken. To reduce juror confusion from the outset, the Court will instruct the jury, during the presentation of the evidence, that Google could acquire no greater Java license rights by using Harmony than Apache had in the first place.

### 3. GNU CLASSPATH.

Google did not acquire anything from GNU Classpath, so the GNU Classpath story has less probative value. Before a decision on GNU Classpath will be made, Google must submit a written and specific offer of proof addressing these points:

1. Did anyone at Google, in making the decision to rely on Harmony, actually refer to any custom or practice? If so, give the particulars (witnesses and documents).

2. Did anyone at Google, in making the decision to rely on Harmony, actually refer to GNU Classpath? If so, give the particulars (witnesses and documents).

5

3. Google must lay out its offer or proof (by witnesses and documents) with specific testimony and quotes showing how GNU Classpath established a custom that it was permissible to copy Java declaring code for the APIs so long as the new work had new implementing (source) code and did not call itself Java.

4. Did Sun know of this custom or practice? Give specifics and how it will be proven.

5. Any other evidence on GNU Classpath that Google will present.

This offer of proof is due in **TWO CALENDAR DAYS** and Oracle's response in **TWO CALENDAR DAYS** thereafter. Meanwhile, until a ruling, no reference to GNU Classpath will be made in the presence of the jury. No page limits are imposed but please be reasonable.

## CONCLUSION

Oracle's motion is **DENIED** as to evidence regarding Apache. The Court reserves its ruling on evidence regarding GNU Classpath for the reasons stated in this order.

**IT IS SO ORDERED.**

Dated: April 28, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6