# EXHIBIT D

```
1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4

5     -------------------------

6   ORACLE AMERICA, INC.,       )

7              Plaintiff, )

8        vs.                 ) No. CV 10-03561

9   GOOGLE, INC.,               )

10             Defendant. )

11    -------------------------

12

13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15      Videotaped Deposition of TIM LINDHOLM, taken

16      at 333 Twin Dolphin Drive, Redwood Shores,

17      California, commencing at 9:56 a.m., Wednesday,

18      September 7, 2011, before Ashley Soevyn,

19      CSR No. 12019.

20

21

22

23

24

25   PAGES 1 - 115
```

Page 1

**Page 98**

1  preserve TCK implementation revenue" --
2     A.  Uh-huh.
3     Q.  -- "defend franchise against fragmentation,
4  which is the main threat for long-term erosion."
5  Did you write that?
6     A.  I don't remember writing it, but it
7  sounds -- it's in this e-mail.
8     Q.  So that was what you understood to be one
9  of Allen's motivations in the negotiation,
10 correct?
11        MS. ANDERSON:  Objection, form.
12        THE WITNESS:  So I don't remember writing
13 this.  And I will point out that I'm saying, "Allen
14 presumably wants", so I think I was speculating
15 even -- even -- even back then, as to what Allen --
16 what Allen's considerations were.
17 BY MR. NORTON:
18    Q.  But when you wrote an e-mail to Mr. Rubin
19 and Mr. Minor, talking about Sun and things to keep
20 in mind, you would have given your best
21 understanding of Sun's perspective, wouldn't you?
22        MR. LISI:  Objection, form.
23        MS. ANDERSON:  Objection, form.
24        THE WITNESS:  I think what I would write
25 depends on the context on which it was written.  If

**Page 99**

1  I dashed something off or if I -- and I don't recall
2  the context in which this was written at all, so I
3  can't really vouch for the quality of the opinions.
4  BY MR. NORTON:
5     Q.  But these are the opinions you expressed to
6  Mr. Rubin at the time?
7     A.  This is the e-mail that I apparently
8  wrote.
9     Q.  All right.  And in the e-mail that you
10 wrote, you also wrote in the same paragraph, but
11 towards the end, last sentence reads, "We do not
12 want to turn this into a negotiation for buying the
13 Java franchise itself with Sun, even compensating
14 for the risk of its loss".  While Sun probably --
15    A.  Which paragraph are we?
16    Q.  It's in the same paragraph the way it
17 begins, "Allen, presumably".  But I'm now reading
18 the last two sentences to you.
19    A.  Okay, I'm going to get something to be able
20 to track that.  I write long sentences.  Okay.
21 Okay.  I see that now.  I see --
22    Q.  And you wrote, "We do not want to turn this
23 into a negotiation for buying the Java franchise
24 itself from Sun, even compensating for the risk of
25 loss.  While Sun probably will contemplate that, the

**Page 100**

1  price would be high."  Did you write that?
2     A.  Again, it's in this e-mail.
3     Q.  Was that your view at the time?
4     A.  I don't -- I don't actually remember what
5  my -- I don't remember the details of my view at the
6  time.
7     Q.  Did you try to figure out what the price
8  would be?
9         MS. ANDERSON:  Objection, form.
10        THE WITNESS:  Definitely not.  I -- I --I
11 don't have any background in doing that sort of
12 thing.  This is an engineer's speculating, if
13 anything.
14        MR. NORTON:  Let's mark Exhibit 532.
15        (Exhibit 532 marked for identification.)
16        MS. ANDERSON:  State on the record that
17 Exhibit 532 is a document with respect to which
18 Google has objected as being privileged on
19 attorney-client, work product grounds.  Objected to
20 its production, but was compelled under court order
21 to produce this document because the Court had
22 concluded that an order of the document was not
23 subject to privilege.  This is an issue that is --
24 that Google continues to object to and reserves all
25 rights on appeal with respect to that ruling.  And,

**Page 101**

1  therefore, we understand it's being marked in this
2  deposition pursuant to the fact that the Court had
3  issued that order, but we want to restate our
4  objections here, given the importance of this issue
5  to Google.
6         THE WITNESS:  Do I get that note back?
7         MS. ANDERSON:  And while I'm -- I also want
8  to say, I just want to make sure, this transcript
9  needs to be designated highly confidential under the
10 terms of the protective order, until we've had a
11 chance to do other designations, that's it.
12        MR. NORTON:  Okay.
13        MS. ANDERSON:  Okay.  That's it.
14 BY MR. NORTON:
15    Q.  Mr. Lindholm --
16    A.  Yes.
17    Q.  -- you've seen Exhibit 532 before?
18    A.  Yes, I have.
19    Q.  It's an e-mail from you to Mr. Rubin,
20 Mr. Grove, Mr. Lee, and Mr. -- and yourself,
21 correct?
22    A.  Well, specifically, it's to Andy and Ben
23 Lee, cc'd to Dan and myself.
24    Q.  And you see the body of the e-mail?
25    A.  I do see the body of the e-mail.

**Page 102**

1  Q. You sent this e-mail on August 6, 2010; is
2  that right?
3  A. I believe that to be true.
4  Q. Would you please begin reading at, "Hi,
5  Andy." And read the entire e-mail out loud for the
6  record.
7  MS. ANDERSON: Objection. We state all of
8  our objections and preserve our right on appeal.
9  You may read the face of this e-mail.
10  THE WITNESS: Okay. Well, can I begin with
11  "Attorney work product, Google confidential", which
12  is also in the e-mail. And it goes, "Hi, Andy, this
13  is a short pre-read for the call at 12:30. In Dan's
14  earlier e-mail, he didn't give you a lot of context
15  for the visceral reaction that we got. What we have
16  actually been asked to do by Larry and Sergei, is to
17  investigate what technical alternatives exist to
18  Java, or Android and Chrome. We've been over a
19  bunch of these and think that they all suck. Think
20  they all suck. We conclude that we need to
21  negotiate a license for Java under the terms we
22  need. That said, Allen Eustace said that the threat
23  of moving off Java hit Safra Katz hard. We think
24  there's value in the negotiation to put forward a
25  most credible alternative, the goal being to get

**Page 103**

1  better terms and price for Java. It looks to us
2  that Obj-C provides the most credible alternative in
3  this context, which should not be confused with us
4  thinking we should make the change. What we're
5  looking for from you are reasons why you hate this
6  idea, whether you think this is a nonstarter for
7  negotiation purposes and whether you think there is
8  anything we missed in our understanding of the
9  option. Tim and Dan".
10  Q. Thank you. So when you wrote, "We've been
11  asked to investigate what technical alternatives
12  exist for Java and Android and Chrome, can you tell
13  me what technical alternatives you looked at?
14  MS. ANDERSON: Objection. Instruct the
15  witness not to answer on the grounds of
16  attorney-client privilege or work product to the
17  extent responding to the question requires you to
18  reveal work that you did at the direction of counsel
19  or communications you had with counsel for Google in
20  confidence.
21  THE WITNESS: So the investigation and the
22  technical alternatives was strictly done on the
23  request of counsel, was done with the understanding
24  of the work product. So outside of -- outside of
25  those things covered by -- by that situation, there

**Page 104**

1  were no -- there were no investigations.
2  BY MR. NORTON:
3  Q. For the record, my question was not so
4  limited. When you wrote, "We've been over a bunch
5  of these and think they all suck". Who thought
6  "they all sucked"?
7  MS. ANDERSON: Objection, form. And also
8  caution the witness and instruct him not to answer
9  to the extent responding to the question would
10  require you to reveal a separate communication with
11  Google counsel or require you to reveal work you did
12  at the direction of Google counsel, as part of the
13  investigation.
14  THE WITNESS: So -- so the we -- the going
15  over what we thought about them was entirely done on
16  the direction of Google counsel. There was no such
17  work being done independently, not being done under
18  the direction of counsel. So I don't think I can
19  answer anything there.
20  BY MR. NORTON:
21  Q. What were the specific alternatives that
22  you have investigated for Android?
23  MS. ANDERSON: Objection, form. And also
24  objection on the basis of attorney-client,
25  work-product privilege. To the extent responding to

**Page 105**

1  this question would require you to reveal
2  communications with Google counsel in confidence or
3  work done under the direction of Google counsel, I
4  instruct you not to answer on the grounds of
5  privilege.
6  THE WITNESS: Once again, the work we --
7  the work we did on this was entirely done under the
8  direction of counsel. There was no work done
9  outside of that or for any other purpose, so I
10  cannot answer that question either.
11  BY MR. NORTON:
12  Q. What were the technical alternatives you
13  investigated to Java for Chrome?
14  MS. ANDERSON: Objection, form. Also
15  object on the basis attorney-client, work-product
16  privilege. Instruct the witness not to answer to
17  the extent responding would require you to reveal
18  communications with Google's counsel in confidence
19  or work that you did at the direction of Google.
20  THE WITNESS: Again, the work that we did
21  relating to Chrome was entirely done under the
22  direction of counsel and was work product. We -- we
23  did no such work outside of direction of counsel on
24  alternatives to Chrome.
25  BY MR. NORTON: