KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>            Plaintiffs,<br><br>     v.<br><br>GOOGLE INC.,<br><br>            Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**DEFENDANT GOOGLE INC.'S MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS**<br><br>Trial:       May 9, 2016<br><br>Dept.      Courtroom 8, 19th Fl.<br>Judge:    Hon. William Alsup |

DEFENDANT GOOGLE INC.'S MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS
RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838

## MOTION AND RELIEF REQUESTED

Under Federal Rules of Evidence ("FRE"), as well as relevant orders and case law, defendant Google Inc. ("Google") seeks to exclude *in limine* expert testimony offered by Oracle America Inc. ("Oracle") consisting of its experts' recitation of Oracle's preferred version of disputed facts. This motion is based on this memorandum, the entire record in this matter, and such evidence as may be presented at the hearing of this motion. This case concerns a host of disputed facts that the jury will need to resolve, including without limitation (a) Sun's historic practices regarding the declarations/SSO of the APIs at issue, (b) the import of statements made by Sun/Oracle representatives concerning Android and Java, (c) the facts surrounding Google's use of the declarations/SSO in Android, (d) the relationship between the feature phone and smartphone markets, and (e) the relative importance of various factors at play in those markets. The Federal Rules of Evidence (including Rules 402, 403, 602, 701, 702 and 703) and this Court's Orders will govern the permissible scope of witness testimony.

Under FRE 703, "[w]hile an expert must of course rely on facts or data in formulating an expert opinion, [] an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Highland Capital Mgmt., L.P. v. Schneider,* 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)) (citation omitted); *accord Fujifilm Corp. v. Motorola Mobility LLC,* 2015 WL 1265009, *27 (N.D. Cal. Mar. 19, 2015). Nor can an expert usurp the role of the lay jury regarding credibility determinations and interpretation of evidence. *Highland Capital,* 379 F. Supp. 2d at 469. As this Court's orders establish: "experts lacking percipient knowledge should avoid vouching for the credibility of witnesses, i.e., **whose version of the facts in dispute is correct**…. This will make clear that the witness is not attempting to make credibility and fact findings…." ECF 56 ¶ 12 (emphasis added); *see also* Judge Willaim Alsup's Trial Guidelines in Civil Jury Cases, ¶ 16 ("Another recurring problem is the retained expert who seeks to vouch for the credibility of fact witnesses and/or to vouch for one side's fact scenario.").

Notwithstanding these principles, Oracle's experts seek to offer extensive testimony that is nothing more than Oracle's preferred interpretation of a host of disputed facts. These experts lack any percipient witness knowledge of this material, and therefore the testimony is not within

1

DEFENDANT GOOGLE INC.'S  MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838

the parameters of Federal Rules of Evidence 602 and 701. This testimony also is not proper under Federal Rules of Evidence 702 and 703, as it merely seeks to make credibility determinations or draw inferences within the jury's province.  Accordingly, for the reasons set forth below, Google respectfully requests that Oracle's experts be precluded from offering expert testimony that is nothing more than a recitation of a preferred version of disputed facts.

## I. EXPERTS MAY NOT TESTIFY TO A SPOON-FED FACTUAL NARRATIVE OR OPINE ON ISSUES WITHIN THE PROVINCE OF THE LAY JURY.

As this Court has commented, "[o]ne of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion." *Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 WL 2323856, at *1 (N.D. Cal. May 22, 2008).  Although FRE 703 permits an expert to rely upon facts to form his or her opinion, an expert cannot testify "solely for the purpose of constructing a factual narrative based upon record evidence." *Highland Capital,* 379 F. Supp. 2d at 469 (citation omitted); *accord Fujifilm,* 2015 WL 1265009 at *27; *Johns v. Bayer Corp.,* 2013 WL 1498965 *28 (S.D. Cal. April 10, 2013).  Moreover, "[i]t is certainly true that expert testimony that 'simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge . . . is inadmissible.'" *United States v. Pac. Gas & Elec.,* 2016 WL 1640462, at *2 (N.D. Cal. April 26, 2016) (quoting *Highland Capital,* 379 F. Supp. 2d at 468-69) ("*PG&E*").

As explained recently by Judge Henderson in *PG&E*:

> Such evidence is more properly presented through percipient witnesses and documentary evidence. It is likewise true that expert testimony must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help. In other words, experts should not be permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence.

*Id.* at *2 (internal citations and quotation marks omitted).

Applying these principles, courts do not permit experts to testify as to inferences that should be drawn by the jury, or to "'simply rehash otherwise admissible evidence about which he

2
DEFENDANT GOOGLE INC.'S  MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838

has no personal knowledge.'" *Id.* at *2 (quoting *Highland Capital,* 379 F. Supp. 2d at 468-69) (holding expert could not testify to narrative about which he has no personal knowledge or opine as to corporate intent); *see also,* ECF 56 ¶ 12 ("To head off a recurring problem, experts lacking percipient knowledge should avoid vouching for the credibility of witnesses, i.e., whose version of the facts in dispute is correct."); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 757575, *27 (N.D. Cal. Feb. 20, 2015)  (granting motion to strike portions of expert report that were "replete with observations and inferences that jurors are perfectly capable of making for themselves without [expert] assistance…").

Oracle argues in its summary opposition that, under FRE 703, experts may base their opinions "on facts that are not yet admitted into evidence or facts that are even inadmissible" so long as "experts in the particular field would reasonably rely on those kinds of facts" or if "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." ECF 1697 (Oracle Opp. to Summay MIL #1).  Oracle argues that "[e]ven testimony based on an 'untested and partisan foundation' is allowed if a witness with first-hand knowledge is subject to cross-examination," quoting this Court's opinion in *Therasense*:

> The traditional and correct way to proceed is for a foundational witness to testify firsthand at trial to the foundational fact … and to be cross-examined. Then the expert can offer his or her opinion on the assumption that the foundational fact is accepted by the jury. The expert can even testify before the foundation is laid so long as counsel represents in good faith that the foundational fact will be laid before counsel rests.

*Therasense,* 2008 WL 2323856, at *2.

Oracle ignores, however, that an expert cannot present a specific partisan version of facts **as his or her expert opinion**, nor can an expert opine as to inferences to be drawn from evidence that are within the province of the jury.  *See supra.*  As detailed below, Oracle's experts consistently overstep the well-established boundaries of expert opinion to present a narrative of spoon-fed facts under the guise of expert opinion, repeatedly and pervasively interpreting witness testimony and record evidence on issues squarely within the jury's province.  These opinions are impermissible under the Federal Rules of Evidence and should be stricken.

3
DEFENDANT GOOGLE INC.'S  MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838

**A.    Dr. Kemerer's pervasive opinions interpreting what "Google needed," "Google recognized," or "Google wished" are not permissible.**

Oracle's expert Dr. Kemerer violates the above principles throughout his reports: (1) he opines repeatedly as to the corporate "state of mind" of Google and Sun/Oracle, and (2) he constructs a narrative of facts based on Oracle's interpretation of potential record evidence with no percipient knowledge or additional expert analysis. *See, e.g.,* ECF 1570-3 (Kemerer 1/8/16 Rpt. ¶¶ 66, 94) ("Google needed to develop a mobile platform quickly" and "Google recognized the value of leveraging a large community of Java developers").[1]  Dr. Kemerer does not merely rely on a partisan version of facts for the foundation of his analysis—the partisan facts **are** his supposed expert analysis.

For example, Dr. Kemerer's opinion that the Java APIs were "critical to getting Android to market quickly" is based solely on his interpretation of witness testimony and documents, all of which is the province of the jury. *Id.* ¶ 78.  Dr. Kemerer claims that "there is evidence that the value that **Google wished** to leverage was the familiarity with the expression of the declaring code and SSO" and that "there is **significant evidence from Google itself** that its adoption of the Java APIs was critical to getting Android to market quickly." *Id.* ¶¶ 77-78 (emphasis added).  Dr. Kemerer then quotes from Google emails, documents, and witness testimony in the ensuing paragraphs, conducting no expert analysis whatsoever. *Id.* ¶¶ 79-93.  He concludes his interpretation of the cited evidence by stating "[i]n summary, and as noted by the Court of Appeals, Google recognized the value of leveraging the large community of Java developers.  By using the familiar Java APIs Google both attracted more developers to the Android platform and made the work of those developers easier, thus further accelerating the development and acceptance of the Android platform." *Id.* ¶ 94.  Dr. Kemerer does not rely on these facts to offer an opinion – he simply presents this interpretation of testimony and documents as an opinion.

---

[1] In the hearing on April 20, 2016, the Court stated that Mr. Malackowski's testimony with regard to whether "Google knowingly" took certain actions would be impermissible.  Apr. 20, 2016 Hr'g Tr. at 89:3-4.  Dr. Kemerer's testimony as to Google's motives, intentions and knowledge is impermissible for the same reason.

4

DEFENDANT GOOGLE INC.'S  MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838

Dr. Kemerer's presentation of Oracle's interpretation the record in the guise of expert opinion permeates his report. *Id.* ¶¶ 14, 224 ("Google viewed the open source licensing options for Java as unacceptable"), p. 19 ("Google recognized that the code and structure, sequence and organization of the 37 Java API packages would be valuable to Google"), ¶ 213 ("Google was aware when it first decided to base Android on Java [] that Sun (and now Oracle) worked hard to minimize any potential for Java fragmentation."); ¶ 216 ("There is evidence that Google was and continues to be aware that its incompatible use of the 37 Java APIs in Android fragmented Java."). With respect to the open source alternatives, Dr. Kemerer states: "'it is my opinion that Google did not want [to] take such a license because important potential device manufacturer partners likely would not risk accepting code encumbered by this type of license," *id.* ¶ 164, and "[a]dditional documents show that Google was not willing to accept the 'open source' license that Sun offered for Java, which is called the GPL v.2 license with Classpath exception." *Id.* at ¶ 165.

Presumably, Oracle will argue that all parties' experts rely on documents and witness testimony as the basis for their opinions. That is true, but it is equally true that "expert testimony that 'simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge . . . is inadmissible.'" *Id.* at *1. Entire putative opinions set forth in Dr. Kemerer's reports are nothing more than a recitation of otherwise potentially admissible evidence that is subject to differing interpretations.[2] Dr. Kemerer did not rely on these facts in order to conduct some further analysis—he merely opines as to a particular interpretation of the facts, and thus seeks to usurp the jury's role as the trier-of-fact.[3] Dr. Kemerer does not rely on these facts as foundational facts to perform an expert analysis. Instead, Dr. Kemerer offers testimony as to

---

[2] *See also, e.g.,* Kemerer's opinions that "Google needed to develop a mobile platform quickly" (Kemerer Rpt. ¶¶ 66-73), "Google would not accept licensed alternatives" (*id.* ¶¶ 160-72), "Google Recognized that Android is Incompatible with Java" (*id.* ¶¶ 195-207), and Google's awareness of the harm resulting from fragmentation (*id.* ¶ 213).

[3] Aside from the impermissible recitation and interpretations of factual evidence, Dr. Kemerer's supposed "stability" and "centrality" analyses are also subject to a pending *motion in limine*, because he neither performed nor had the expertise to supervise those analyses. Thus, Dr. Kemerer serves as the mouthpiece not only for Oracle's version of the factual evidence, but also for Oracle's litigation driven "scientific" analyses as well.

5
DEFENDANT GOOGLE INC.'S MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838

what Google "did not want" and what "Google was willing to accept"—merely based on his recitation of documents and witness testimony. *Id.* ¶¶ 166-72 (interpreting witness testimony and Google documents). Such testimony is improper and should be stricken.[4] Oracle of course may seek to prove its interpretation of the documents and testimony cited in Dr. Kemerer's report via witness testimony and documentary evidence admitted in trial. But, it is the province of **the jury** to evaluate Google emails and witness testimony and reach a conclusion with regard to what Google "wished" or Google "recognized."

> **B.    Dr. Jaffe impermissibly opines as to the parties' intentions and knowledge, and further offers impermissible opinions that are nothing more than Oracle's interpretation of testimony and documents.**

Oracle's expert Dr. Jaffe's supposed fair use opinions suffer from the same flaw. Like Dr. Kemerer, Dr. Jaffe does not simply rely on documents and witness testimony to supply foundational facts for an expert analysis. Instead, he also offers Oracle's version of the documents and witness testimony as his purported expert opinion. For example, Dr. Jaffe's summary conclusions purport to opine as to Google's knowledge and motives. ECF 1571-1 (Jaffe 1/8/16 Rpt. ¶¶ 10, 11) ("Google executives acknowledged these risks and set a path to establishing a mobile ecosystem under the control of a Google application platform called Android,"); ("Google instead chose to without authorization copy the Java API packages and integrate them into its Android platform in the same way as their original use without authorization and to build Android's business at Sun's and now Oracle's great expense."). Moreover, in Dr. Jaffe's **90 pages** of background facts, Dr. Jaffe spends over a dozen pages reciting Oracle's spin on Google documents and Google witness testimony concerning "Google's Conduct": Google's need to expand its mobile presence, Android's development in 2005-2006, Android's business strategy, and Google's supposed copying of the 37 Java APIs "without a license or permission." *Id.* ¶¶ 132-69. Dr. Jaffe's statements regarding "[t]he time-to-market

---

[4] *See Highland Capital,* 379 F. Supp. 2d at 469 (striking expert testimony that "interjects his opinion as to the state of mind and knowledge possessed by defendants and non-parties to this action, … and speculates as to how obtaining information concerning the McNaughton/Jones merger affected the Schneiders' actions"); *PG&E,* 2016 WL 1640462, at *2-3 (striking expert testimony as to corporate intent).

6
DEFENDANT GOOGLE INC.'S MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838

advantage, []was paramount to Google, as cited by Andy Rubin" (¶ 163); "Google's willingness to knowingly copy Oracle's Java API packages and commercialized the Java-based Android platform without reference to the intellectual property rights of Oracle" (¶1 64); "Google was well aware of its obligation to obtain a license and of the litigation risk in its conduct" (¶ 165); and "Google determined that such rapid entry and adoption could not be achieved without Java" (¶ 172) are but a few examples of Dr. Jaffe offering what is nothing more than lawyer argument under the guise of expert testimony.  Even once Dr. Jaffe finally reaches his purported fair use opinions, he opines throughout his analysis of each factor as to Google's (and Sun/Oracle's) motives and knowledge based on Oracle's preferred interpretation of documents and witness testimony.[5]

None of the above is expert analysis; it is simply Oracle's lawyers speaking through an expert.  These opinions do not assist the trier of fact, but seek to usurp the jury's role.  *Fujifilm*, 2015 WL 757575, at *27 (striking portions of expert report that were "replete with observations and inferences that jurors are perfectly capable of making for themselves without [expert] assistance").  As Judge Henderson commented in *PG&E,* when prohibiting expert testimony concerning corporate intent, "[d]istrict courts must be careful to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves." *PG&E,* 2016 WL 1640462, at *2-3 (citation omitted).

### C. Mr. Malackowski also offers "opinions" that are nothing more than a recitation of Oracle's interpretation of facts.

Mr. Malackowski, Oracle's damages expert, also crosses the line between relying on foundational facts in order to offer an expert analysis and opining that a certain version of facts is true.  In Mr. Malackowski's Opening Report, he provides over 25 pages of "opinion" concerning Google's mobile business strategy.  ECF 1578-1, ¶¶ 111-78.  This opinion testimony is replete with Mr. Malackowski's interpretation of Google witness testimony and potential record evidence, and nothing more.  Mr. Malackowski provides a factual narrative concerning Google's acquisition of Android, license negotiations with Sun, and the supposed market window for the

---

[5] *E.g., id.*, ¶¶ 197, 205-211, 213-216, 225-226.

7
DEFENDANT GOOGLE INC.'S  MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS
RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838

mobile industry. *Id.* Yet Mr. Malackowski's narrative is not the foundation for his actual damages analysis, but a mouthpiece to present Oracle's version of the facts to the jury.

For example, Mr. Malackowski opines as to Google's concern with not getting locked out of the market (*id.* ¶ 125), and that Google faced a critical market window (*id.* ¶ 126) based solely on his interpretation of testimony and documents. Similarly, Mr. Malackowski's narrative concerning Google's "intention to create third-party developer ecosystem," Google's recognition of "the importance of attracting independent software developers to the Android platform" and thus Google's "need" for developers to create apps for the Android market is simply a partisan narrative based on Mr. Malackowski's interpretation of documents and testimony. ECF 1578-1, (Malackowski Rpt. ¶¶ 129-34).[6] Mr. Malackowski does not rely on these "facts" to analyze the supposed market window in any manner, nor does he perform any expert evaluation with respect to Oracle's theory that Google needed apps in order to get users. Thus, his opinions on these issues are nothing more than an impermissible narrative of spoon-fed "facts."[7]

## CONCLUSION

Google of course recognizes all experts in this case have relied on foundational facts to support their opinions, or to perform additional expert analyses. But Oracle's experts consistently offer partisan factual narratives in the guise of expert opinion, and impermissibly interpret testimony and documents, a task that is squarely within the province of the jury. This risks stamping Oracle's interpretation of fundamental factual disputes with the imprimatur of expert opinion. For the above reasons, Google respectfully requests such testimony be stricken.

---

[6] Mr. Malackowski, like Dr. Kemerer and Dr. Jaffe, also provides opinions concerning Google's motives and Google's knowledge, interpreting testimony and documents within the province of the jury. *E.g.,* ECF 1571-9 (Malackowski Reply at ¶18 ("Google knowingly assumed the risk of its failure to obtain a license"), ¶ 130 ("Google's motivation is substantial")). Google understands the Court has already indicated such testimony is not proper. *See supra n. __.*

[7] Like Oracle's other experts, Dr. Toubia also improperly provides opinions concerning Google's motives and knowledge. *See* ECF 1563-12 ¶¶ 27, 29-33. For example, Dr. Toubia opines based on his review of Google documents that "Accordingly, Google's 'strategy' was to '[l]everage Java for its existing base of developers.'" ¶ 32. In addition. Dr. Toubia opines as to the "relevant" market window, even though that time period was dictated by counsel. *See* ECF 1608-28. These portions of Dr. Toubia's report should be struck, and he should not be allowed to testify regarding whether a critical "window of opportunity" existed and other facts related to that time period.

8
DEFENDANT GOOGLE INC.'S MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838

| | | |
|---|---|---|
| Dated: April 29, 2016 | | KEKER & VAN NEST LLP |
| | By: | */s/ Robert A. Van Nest* |
| | | ROBERT A. VAN NEST |
| | | CHRISTA M. ANDERSON |
| | | DANIEL PURCELL |
| | | Attorneys for Defendant |
| | | GOOGLE INC. |

9
DEFENDANT GOOGLE INC.'S MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY THAT IS RECITATION OF A PREFERRED VERSION OF DISPUTED FACTS
Case No. 3:10-cv-03561 WHA

1054838