1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.<br><br>Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S FULL MOTION IN LIMINE REGARDING SUMMARY MOTION IN LIMINE #2: ANCIENT USE OF OTHER APIS**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William Alsup |

21
22
23
24
25
26
27
28

**NOTICE OF MOTION, MOTION, AND STATEMENT OF RELIEF SOUGHT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that the following Full Motion *in Limine* Regarding Summary Motion in Limine #2:  Ancient Use of Other APIs will be heard on a date and time set by the Court, in Courtroom 8, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable William Alsup presiding.

Plaintiff Oracle America, Inc. will, and hereby does, move this Court to exclude evidence from trial related to Oracle's use of elements of third-party software under Federal Rules of Evidence 402, 403, 702, and 703.  This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the materials attached to the Declaration of Andrew D. Silverman (cited hereinafter as "Ex. __") that are being filed herewith; the record in this matter; and such other and further papers, evidence, and argument as may be submitted in connection with this Motion.


Dated: April 29, 2016                                    Orrick, Herrington & Sutcliffe LLP

                                                         By:  */s/ Andrew D. Silverman*
                                                              Andrew D. Silverman

                                                         Counsel for ORACLE AMERICA, INC.

**INTRODUCTION**

Google does not dispute that it copied over 11,000 lines of declaring code and the overall structure, sequence, and organization of Oracle's 37 Java API packages consisting of thousands of individual elements and complex, intricate relationships.  Instead, Google argues that its decision to copy (without a license) the heart of the Java SE platform should be excused because Oracle also copied:  (1) Sun distributed a product called OpenOffice.org Calc that it acquired from a company (StarDivision) that had developed the product in the 1980s using 22 single-word spreadsheet function names that are common mathematical terms and abbreviations used in prior spreadsheets, (2) Oracle's database software uses 13 one- and two-word commands from a programming language called SEQUEL (the forerunner of SQL) that was gifted to the public in two academic papers published in the late 1970s, and (3) Sun once had a compatibility interface in its OpenSolaris operating system that enabled programs written for the paradigmatic example of open source (the Linux kernel) to run on OpenSolaris.  None of these examples are comparable to what Google copied for Android:  "the 'overall system of organized names—covering 37 packages, with over six hundred classes, with over six thousand methods.'"  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1351 (Fed. Cir. 2014) (quoting ECF 1202).  As Google itself has said, it is "confusing and misleading [to] use … the term 'API' to discuss products and services not at issue in this case."  ECF 1557 (Google MIL #1) 1.  They certainly don't show that Google's conduct was "long-standing industry custom and was common practice for industry participants."  *See* ECF 1696 (Google's Summ. Opp.) at 7 (emphasis omitted).

The expert testimony Google proffers to support its argument lacks foundation.  Dr. Astrachan and Dr. Cattell did not investigate whether the elements they accuse Oracle of copying are in the public domain and free for all to use without a license (unlike the Java APIs).  They also have no idea if Oracle was authorized or licensed by the copyright holder to implement these elements.  Indeed, some of the examples Google puts at issue have been *adjudicated uncopyrightable*.

The Court excluded similar testimony up through 2006 from the first trial, and for good reason, and that prior ruling should be enforced.  ECF 676 at 6-7.  Indeed, it is clear now that the

1  proffered testimony is based on speculation and faulty assumptions, and thus should be excluded

2  even without the temporal limitation adopted previously.  Oracle would be irreparably prejudiced

3  by allowing Google to accuse it of copyright infringement through the testimony of technical

4  experts with no legal training who lack foundation to testify that Oracle copied other copyright

5  protected APIs in a similar manner to Google's unauthorized copying here.  Google's experts

6  have no basis to testify that Oracle copied any APIs without legal authorization, and their

7  speculative testimony will not assist the jury.  Moreover, admitting such evidence will require

8  Oracle to respond, wasting time and distracting the jury with "a series of mini-trials" that have no

9  value "for resolving the issues in this case."  *See Holland v. City of S.F.*, No. C10-2603 TEH,

10  2013 WL 1808866, at *1 (N.D. Cal. Apr. 29, 2013).

**ARGUMENT**

**I.      Evidence Of Oracle's Alleged "Copying" Is Irrelevant And Will Mislead The Jury**

13            The Java API packages Google copied are available under three different licenses:  1) the

14  open-source GNU General Public License version 2 with Classpath Exception, 2) the

15  Specification with TCK license, and 3) a commercial license.  *See Oracle Am*, 750 F.3d at 1350.

16  When Google decided to copy over 11,000 lines of code from the Java platform and replicate the

17  SSO of the Java API packages, Google was well aware of Oracle's licensing scheme, but Google

18  decided not to take any of the available licenses, choosing instead to "[d]o Java anyway and

19  defend our decision, perhaps making enemies along the way."  TX 7.

20            None of the examples identified by Drs. Astrachan and Cattell comes anywhere close to

21  the type of copying Google committed here, and neither expert offers any factual basis for his

22  claim that Oracle's use of the identified elements was unauthorized.  *Guidroz-Brault v. Mo. Pac.*

23  *R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) ("Rule 702 requires that expert testimony … not

24  include unsupported speculation and subjective beliefs.").  Nor has Google pointed to a single

25  internal document or testimony of a fact witness suggesting that Google thought it was allowed to

26  copy the APIs from Java because Oracle or Sun had copied elements of OpenOffice.org, SQL, or

27  OpenSolaris.  The documents show just the opposite:  Google knew the Java APIs were

28  copyrighted and knew it needed a license.  TX 18 ("Java.lang apis are copyrighted"); TX 1 at 9

ORACLE'S FULL MIL RE SUMMARY MIL #2:
ANCIENT USE OF OTHER APIS
CV 10-03561 WHA

(Google "[m]ust take [a] license from Sun.").  The three isolated instances of non-comparable "copying" also are not probative of industry custom because proving a "custom" requires a strong showing of *such universal practice* that the supposed custom has acquired *the force of law*.  *See* ECF 1744 (Oracle Resp. to Modified Instrs.) at 9-10 & n.3 (collecting authorities).

**A.    Google's Spreadsheet Example Has No Application Here and Google Presents No Evidence That Their Use Was Not Authorized**

Dr. Astrachan first claims that the use of common spreadsheet function names in a product named OpenOffice.org Calc shows that it is common to re-implement APIs without permission. ECF 1563-4 (Astrachan Op. Rpt.) ¶ 282.  OpenOffice.org Calc uses 22 of the same function names as VisiCalc, the first electronic spreadsheet, released in the late 1970s.  *Id.*

The copyrightability of the VisiCalc function commands discussed by Dr. Astrachan was litigated decades ago, and a court determined that the function names are not copyrightable. *Lotus Dev. Corp. v. Paperback Software Int'l*, 740 F. Supp. 37, 67 (D. Mass. 1990) (this case was prior to the other *Lotus* case the Court will recall).  *Lotus* held that the commands themselves were *not* copyrightable, though "the menu structure, taken as a whole—including the choice of command terms, the structure and order of those terms, their presentation on the screen" was copyrightable.  *Id.* at 68.[1]  By contrast, the Federal Circuit has held that the declaring code of the 37 Java API packages *is* copyrightable because it is creative and expressive.  *Oracle Am.*, 750 F.3d at 1363.  And as in *Lotus*, the structure, sequence, and organization of the APIs is also protected.  *Id.* at 1368.

Dr. Astrachan does not contend that OpenOffice.org Calc used the hierarchy, taxonomy, or menu structure of VisiCalc, which *Lotus* found protectable.  Instead, Dr. Astrachan describes Oracle's use of 22 individual function names (i.e., the function command terms found uncopyrightable) many of which can be found in a standard dictionary.  ECF 1563-4 (Astrachan Op. Rpt.) ¶ 284 (listing names such as AVERAGE, ERROR, and SUM).  Others are common mathematical abbreviations.  *Id.* (listing ACOS for arccosine, ASIN for arcsine, COS for cosine, LN for natural log, TAN for tangent).  It is highly misleading and prejudicial for Google to claim

---

[1] This copyrightability holding is what led Lotus to file the more famous *Lotus v. Borland*.

ORACLE'S FULL MIL RE SUMMARY MIL #2:
ANCIENT USE OF OTHER APIS
CV 10-03561 WHA

through Dr. Astrachan that OpenOffice.org Calc's use of uncopyrightable names from a product developed decades ago is somehow comparable to Google's decision to disregard Oracle's licenses and copy the declaring code and SSO of the 37 Java API packages that have already been found to be copyright protected.

Next, Dr. Astrachan has no support for his claim that Sun made the decision to use the spreadsheet function names without permission. In his deposition Dr. Astrachan admitted that he just assumed they did not have permission, and that his assumption could be wrong:

> Q. Did you do any research to see whether there was permission given to Oracle or Sun to use these APIs?

> A. I didn't do research, but I'm reasonably confident that no agreement was made with Visicalc, for example, to include those method names, because I don't think – from Oracle or Sun, between StarOffice and OpenOffice. I don't – *I'm assuming* they did not talk to the originators of Visicalc. *That's an assumption. I could be wrong.*

Ex. E (9/9/2011 Astrachan Dep.) 289:19-290:9. Dr. Astrachan's speculative testimony on spreadsheet function names that were determined to be uncopyrightable is not admissible and must be excluded.

### B.   Google Cannot Show That One- And Two-Word SQL Commands Are Copyrightable Or That Oracle's Use Was Unauthorized

Some of the SQL commands discussed by Drs. Astrachan and Cattell are in the public domain as single words in the English language—e.g., "WHERE," "COUNT," "SUM," "HAVING," "CURSOR," and "DELETE." ECF 1563-4 (Astrachan Op. Rpt.) ¶¶ 299-305; Ex. A (Cattell Rpt.) ¶¶ 31, 50. The rest are common phrases that no one has asserted copyright claims over: "SELECT FROM," "GROUP BY," "ORDER BY," and "INSERT INTO." Additionally, the commands were published in two academic papers, wherein the authors stated, "We emphasize that System R is a vehicle for research in database architecture, and is not planned as a product." *See* Ex. B [1976 article]. Despite these clear indications that the ideas and commands described in the papers have always been in the public domain, Dr. Astrachan and Dr. Cattell misleadingly claim they are proprietary.

Moreover, nowhere do Drs. Astrachan or Cattell suggest that Oracle used more than 13

1    individual commands, let alone an intricate SSO or *thousands* of creative elements such as what

2    Google copied.  Drs. Astrachan and Cattell should not be allowed to testify that Oracle's use of

3    the 13 commands—which no one has asserted copyright claims over, and are in the public

4    domain—justifies Google's decision to copy over 11,000 lines of code from the Java platform.

5          **C.     Google Cannot Show That Use Of The Linux Process And System Calls Was
                      Unauthorized**

6

7          The final example of Oracle's supposed copying involves two aspects of the Linux kernel:

8    the kernel system calls and the Linux process identification format.  These elements created

9    actual compatibility between OpenSolaris operating system and existing programs written for the

10   Linux operating system.  ECF 1563-4 (Astrachan Op. Rpt.) ¶¶ 288-298.  OpenSolaris was an

11   open-source product.  Using open source code from one project (Linux) in another open-source

12   project such as OpenSolaris is perfectly acceptable *so long as the licensing requirements of the*

13   *original project are met.*[2]  Dr. Astrachan makes no effort to analyze whether OpenSolaris

14   generally, or the BrandZ product specifically, were licensed in a manner that was compatible with

15   the Linux license, nor is he qualified to perform the legal analysis necessary to make such a

16   determination.  Ex. C (3/14/16 Astrachan Dep.) 29:10-13 ("I am not sure how the law works in

17   terms of trying to force compliance with a[n open-source] licensed piece of software …. I'm not a

18   lawyer, and I'm not sure how that works.").  Significantly, Dr. Astrachan does even consider, for

19   instance, that the first paragraph of the Linux license disclaims copyright protection over the

20   Linux system calls.  Ex. F.  Finally, Dr. Astrachan has no idea whether Oracle received

21   permission from the Linux copyright holder to implement portions of the Linux kernel in

22   OpenSolaris.  Dr. Astrachan's opinions are again based on pure speculation.  *See* ECF 1564-4

23   (Astrachan Op. Rpt.) ¶¶ 288-298.

24                                              * * *

25

26   [2] Google's failure to comply with OpenJDK's licensing requirements, for example, means that
     Google's use of OpenJDK in Android is unlicensed and unauthorized.  Google has no basis to say
27   one way or the other if Oracle's OpenSolaris product complied with the Linux kernel license.
     Proving up compliance with the Linux license will create the same sort of sideshow already
28   created by Google's new claims regarding OpenJDK.

ORACLE'S FULL MIL RE SUMMARY MIL #2:
ANCIENT USE OF OTHER APIS
CV 10-03561 WHA

In summary, each of the examples Google cites as "evidence" that APIs are commonly re-implemented in the industry has no relevance to Google's decision to copy the Java API packages. The "copied" elements that Drs. Astrachan and Cattell cite are likely not copyrightable in the first place, and neither expert has the knowledge or expertise necessary to determine whether Oracle's use of these elements was legally permissible. These unfounded and speculative opinions are probative of nothing, and inadmissible under FREs 702 and 703.

The evidence and testimony should also be excluded under FRE 402 and 403 as irrelevant and highly prejudicial. In addition to adducing no evidence that establishes any similarity between the examples Google's experts point to and the copyrighted works Google copied here, Google has presented no evidence that Google relied on Oracle's use of elements from VisiCalc, SQL, or Linux when it copied the Java API packages into Android. This opinion evidence is nothing more than ginned up, litigation-inspired attorney argument presented by using an expert and his credentials as a mouthpiece. And yet, though the probative value of Google's claims is nonexistent, the risk of prejudice is particularly substantial because the examples involve purported copying by Sun and Oracle, which the jury is likely to unduly weight. Finally, admission of such evidence will necessarily require mini-trials where Oracle is forced to introduce evidence explaining why its prior conduct was not an infringement and how it differs from Google's copying here. This will turn the trial into a trial about supposed historic infringements by Oracle rather than Google's infringement, which is the actual focus of the trial.

## II.    GOOGLE SHOULD NOT BE PERMITTED TO USE 22-YEAR OLD CONGRESS-IONAL TESTIMONY ALREADY EXCLUDED FROM THE FIRST TRIAL

In its recent exhibit disclosures, Google identifies Eric Schmidt's 1994 congressional testimony related to the copyrightability of APIs. Dr. Schmidt's testimony was made before the Java Platform was released, and the Court previously excluded this evidence in its entirety. ECF 676 at 7; *see also* ECF 665 (Oracle's MIL Re Other APIs) 4-7. The prior order excluding this evidence should be enforced.

## CONCLUSION

This Court should enforce its previous order and exclude Google's proposed evidence.

Dated: April 29, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Andrew D. Silverman*
Andrew D. Silverman

Counsel for ORACLE AMERICA, INC.