ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>            Plaintiff,<br><br>    v.<br><br>GOOGLE INC.<br><br>            Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S MOTION IN LIMINE REGARDING SUMMARY MOTION IN LIMINE #4: COPYING NOT REQUIRED TO USE THE JAVA LANGUAGE**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William Alsup |

1

**NOTICE OF MOTION, MOTION, AND STATEMENT OF RELIEF SOUGHT**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE

3  that the following Motion *in Limine* Regarding Summary Motion In Limine #4: Copying Not

4  Required To Use The Java Language will be heard at a date and time to be set by the Court, in

5  Courtroom 8, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco,

6  California, the Honorable William Alsup presiding.

7

Plaintiff Oracle America, Inc. will, and hereby does, move this Court to exclude evidence

8  and argument that Google (1) was required to copy the declaring code and SSO of the 37 Java

9  API packages because they were technically necessary to program in the Java language and (2)

10  was required to copy the declaring code and SSO of the 37 Java API packages to achieve

11  compatibility or interoperability with Java.  This Motion is based on this Notice of Motion and

12  Motion; the Memorandum of Points and Authorities below; the record in this matter; and such

13  other and further papers, evidence, and argument as may be submitted in connection with this

14  Motion.

15

16  Dated:        April 29, 2016                      Orrick, Herrington & Sutcliffe LLP

17                                                    By: */s/ Andrew D. Silverman*

18                                                         Andrew D. Silverman

19                                                    Counsel for ORACLE AMERICA, INC.

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2      The Federal Circuit concluded as part of its copyrightability holding that Google did not

3  need to copy the declaring code or SSO of all of the 37 Java API packages to program in the Java

4  language.  This holding was so explicit that Google has, in briefs and at argument before this

5  Court, disclaimed its own expert Dr. Astrachan's opinions that copying was necessary to program

6  in Java.  Google therefore should not be able to introduce evidence, testimony, or argument at

7  trial that Google was compelled to copy the 37 Java API packages to use the Java language.

8      Though the Federal Circuit and the parties all agree that Google did not have to copy all

9  37 Java API packages, the Federal Circuit did leave open the possibility that some portion of

10  three of the packages may be required to use the Java language.  On remand, the parties have

11  refined that figure to portions of the declaring code of 62 classes and interfaces identified in the

12  Java Language Specification, all contained within the three packages referenced by the Federal

13  Circuit.  To simplify matters for trial, Oracle has offered to excise those portions of the 62 classes

14  and interfaces from trial by stipulating that Google's copying of those portions (and only those

15  portions) was a fair use.  To date, Google has not agreed to this stipulation that would streamline

16  issues and allow the parties to conform their evidence and opinions to the issues actually in play.

17      Having failed (thus far) to reach an agreement, Oracle instead must file this motion.

18  There is no dispute that Google did not need to copy the more than 11,000 lines of code it copied

19  from the 37 Java API packages to use the Java programming language.  Indeed, no Google expert

20  has analyzed whether any part of the 37 Java API packages, besides the aforementioned portions

21  of the 62 classes and interfaces, was a part of the Java language specification or necessary to Java

22  programming.  Accordingly, Google should be precluded from offering any evidence or argument

23  that it had to copy the 37 Java API packages because of technical necessity.

24      Recognizing that arguing technical necessity is foreclosed, Google has retreated to the

25  creative, but irrelevant and manufactured, position that copying was required to achieve *compati-*

26  *bility and interoperability* with (1) the Java language and (2) the Java development community

27  (*i.e.*, developer expectations).  To the extent Oracle can figure out this argument, it appears to be

28  that copying was "required" because developers were familiar and comfortable with the declaring

ORACLE'S MOTION IN LIMINE THAT COPYING IS
                 NOT REQUIRED TO USE THE JAVA LANGUAGE

1  code and SSO of the 37 Java API packages and would want Android to have the same thing.

2  Such a novel fair use argument, if accepted, would open the door to widespread unauthorized

3  copying whenever doing so would make the otherwise infringing work more successful. That is

4  not the law and has no foundation in this Court's or the Federal Circuit's decisions about compat-

5  ibility and interoperability, as Google claims. Moreover, Google's argument has the potential to

6  mislead the jury into thinking that Google's copying was by technical necessity when all agree it

7  was not. Accordingly, Google should be prohibited from offering evidence or argument that it

8  copied the 37 Java API packages to achieve compatibility or interoperability with Java.

9  **I.    GOOGLE RENOUNCED ITS POSITION THAT COPYING WAS NECESSARY
        TO USE THE JAVA LANGUAGE BUT DID NOT ACCEPT A STIPULATION**

10

11          The Federal Circuit concluded that copying the 37 Java API packages was not required to

12  program in the Java language. "Indeed, the court found that … 'nothing in the rules of the Java

13  language … required that Google replicate the same groupings.'" *Oracle Am., Inc. v. Google,*

14  *Inc.*, 750 F.3d 1339, 1361 n.7 (Fed. Cir. 2014) (quoting ECF No. 1202 at 37); *see also id.* at 1361

15  ("[A]s the court acknowledged, nothing prevented Google from writing its own declaring code,

16  along with its own implementing code, to achieve the same result.").[1]

17          Although it was not necessary for Google to copy the over 11,000 lines of declaring code

18  and the overall SSO of the 37 Java API packages, the parties agree that portions of declaring code

19  from 62 classes and interfaces within three of the 37 Java API packages are actually part of the

20  Java language specification. ECF 1553-4 (Oracle MIL #3 re: Astrachan) at 5; 4/13/2016 Tr. 99:2-

21  8 (Google: "There are a small number of classes and methods where there is agreement that they

22  are a necessary part of the Java language specification …. 62 I believe."). Google agrees that

23  beyond this small portion of three packages, no other part of the declaring code or SSO of the 37

24  Java API packages is part of the Java language specification. 4/13/2016 Tr. at 106:11-13 ("We

25  agree with the Federal Circuit that it is not a technical requirement."). Furthermore, Google

26

27  [1] These findings were essential to the Federal Circuit's holdings rejecting Google's merger and "method of operation" arguments. *Id.* at 1361 (rejecting merger because "nothing prevented Google from writing its own declaring code"); *id.* at 1365 (rejecting Google's method-of-opera-

28  tion argument, in part, because "Google did not need to copy the structure, sequence, and organization of the Java API packages to write programs in the Java language").

ORACLE'S MOTION IN LIMINE THAT COPYING IS
NOT REQUIRED TO USE THE JAVA LANGUAGE

would have no basis to disagree because its experts, including its technical expert Dr. Astrachan, never analyzed whether copying any other part of the 37 Java API packages was required to make use of the Java programming language.[2]

Google has repeatedly represented to this Court that its "fair use arguments do not rest on the idea that the Java programming language 'requires' all of the APIs."  ECF 1696 (Google Opp. Summary MILs) at 4; ECF 1605 (Google Opp. to MIL #3 re: Astrachan) at 6.  Google made the following representations to the Court at the hearing on motions *in limine* on April 13, 2016:

- "This has nothing to do with necessity, and the argument is not that these [Java APIs] are absolutely necessary," 4/13/2016 Tr. at 100:2-3;

- "We're not saying [copying the Java APIs is] a technical requirement.  That is true.  We agree with [Oracle].  We agree with the Federal Circuit that it is not a technical requirement," *id.* at 106:11-13;

- "[The Court (about the Astrachan report)]:  That heading that says 'Are necessary for basic compatibility with the Java programming language,' that comes pretty close to saying that it's *required*; right?  [Google]:  *He will not be testifying about the heading, Your Honor.*  I think that may be a shorthand," *id.* at 107:16-20 (emphases added).

These are clear, deliberate, unambiguous statements, and Google should be held to its word: Google's expert Dr. Astrachan (and any and all other Google witnesses) should not be permitted to testify along the lines of the disavowed language in Dr. Astrachan's report that copying the 37 Java API packages was required to program in Java.  *See, e.g.*, Astrachan Reply Rpt. ¶ 24 ("[T]he 37 Java SE API packages are *integral* to the *Java programming language* and accordingly *necessary* to *make effective use* of the *Java programming language*." (emphasis added)).

To simplify matters for trial, Oracle formally proposed a stipulation on April 28[3] that would excise from the case the declaring code of the relevant portions of the 62 classes and interfaces in the three packages and memorialized Google's renunciation of its position that its copying was necessary to use the Java language as to all of the other elements in the Java platform that Google copied.[4]  To date, Google has not agreed to this stipulation.

---

[2] The Federal Circuit found it "undisputed that—other than perhaps as to the three core packages—Google did not need to copy the structure, sequence, and organization of the Java API packages to write programs in the Java language."  *Oracle Am.*, 750 F.3d at 1365.

[3] Oracle orally proposed the stipulation a day earlier at the final pretrial conference.

[4] In light of the parties' agreement on the 62 classes and interfaces as of the 4/13/2016 MIL hearings, Oracle respectfully requests that the Court permit the parties to update and conform their expert reports to account for the parties' agreement on those 62 classes and interfaces.

ORACLE'S MOTION IN LIMINE THAT COPYING IS
NOT REQUIRED TO USE THE JAVA LANGUAGE

## II.    GOOGLE'S REMAINING NONTECHNICAL COMPATIBILITY/INTEROPER-ABILITY ARGUMENTS ARE NONSENSICAL AND LEGALLY BASELESS

Having abandoned its argument that copying was necessary to *use* the Java language, Google retreats to vague arguments that copying was necessary (1) to "achieve a degree of compatibility and interoperability with the *Java language*," ECF 1727-1 (Google Br.) at 5, and (2) "to make Android 'interoperab[le] and compatib[le]'" with the *Java development community*, ECF 1696 (Google Opp. Summary MILs) at 4.  Both claims are nonsensical and legally baseless.

Google has not explained what it means to be compatible or interoperable with a language (rather than program or platform compatibility).  The statement seems designed to allow Google to introduce testimony on any number of topics that may misleadingly suggest to the jury that it copied to achieve technical compatibility/interoperability with the Java platform or Java program-ming language, even though Google represented to this Court at hearing that Dr. Astrachan will *not* testify that the 37 APIs are "necessary for basic compatibility with the Java programming language."  4/13/2016 Tr. 107:16-20.  Having disavowed any argument about technical compati-bility with the language when called out about it by the Court, Google has yet to explain in any coherent way what its argument really is, and Google should not be permitted to confuse the jury by making this argument at trial.  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (district court is "supposed to screen the jury from unreliable nonsense opinions").

Google's alternative compatibility/interoperability argument fares no better.  Google intends to argue to the jury that copying the 37 Java API packages was necessary—"along with the language"—to make Android "interoperab[le] and compatib[le]" with the *Java development community*.  It appears that Google's position is that Google's copying was a fair use because it made its product more desirable to Google's targeted audience of Java developers.  If such a defense were valid, it would destroy copyright property rights entirely, because copying a work would be more likely a fair use the more popular the work becomes.  That cannot be.  *See Oracle Am.*, 750 F.3d at 1372 ("Google cites no authority for its suggestion that copyrighted works lose protection when they become popular, and we have found none.").  Otherwise, plagiarists could appropriate the exclusive rights of copyright owners (*i.e.*, to make derivate works) by copying the

1    elements of an original work that make that work popular, such as the characters in a book or

2    movie or videogame, to create an unauthorized new work.  *See Micro Star v. Formgen Inc.*, 154

3    F.3d 1107, 1109-14 (9th Cir. 1998) (not fair use to create unauthorized sequel to videogame).

4          This compatibility/interoperability argument finds no support in the Federal Circuit's

5    decision.  The Federal Circuit labeled Google's argument "confusing," explained that the argu-

6    ment has nothing to do with actual, *technical* compatibility/interoperability itself, and character-

7    ized it instead as regarding "capitaliz[ing] on the fact that software developers were already train-

8    ed and experienced in using the Java API packages at issue."  *Oracle Am.*, 750 F.3d at 1371-72.

9          Google tries to support its argument by plucking out of context a single statement: "com-

10   mercial interoperability [may] be 'relevant to Google's fair use defense under the second and

11   third factors of the [fair use] inquiry.'"  ECF 1696 (Google Summary MIL Opp.) at 11 (quoting

12   *Oracle Am.*, 750 F.3d at 1376-77).  This is *not* what the Federal Circuit said.  In discussing the

13   second fair use factor, the Federal Circuit explained: "Thus, where the nature of the work is such

14   that *purely functional elements* exist in the work and it is *necessary to copy* the expressive ele-

15   ments in order to *perform those functions*, consideration of this second factor arguably supports a

16   finding that the use is fair."  *Oracle Am.*, 750 F.3d at 1375 (emphasis added).  The full context of

17   the Federal Circuit's statement about "commercial 'interoperability'" makes plain that the Federal

18   Circuit is discussing technical interoperability:

19           Next, while we have concluded that it was error for the trial court to focus *unduly*
     on the **functional aspects** of the packages, and on Google's competitive desire to
20   *achieve commercial "interoperability"* when deciding whether Oracle's API pack-
     ages are entitled to copyright protection, we expressly noted that these factors may
21   be relevant to a fair use analysis.  While the trial court erred in concluding that
     these factors were sufficient to overcome Oracle's threshold claim of copyrighta-
22   bility, reasonable jurors might find that they are relevant to Google's fair use
     defense under the second and third factors of the inquiry.  *See Sega [Enters. v.*
23   *Accolade, Inc.*, 977 F.2d 1524-25 (9th Cir. 1993)] (discussing the Second Circuit's
     approach to "break[ing] down a computer program into its component subroutines
24   and subsubroutines and then identif[ying] the idea or *core functional element* of
     each" in the context of the second fair use factor: the nature of the copyrighted
25   work).  We find this particularly true with respect to those core packages which it
     seems **may be necessary for anyone to copy if they are to write programs in the**
26   **Java language**.  And, it may be that others of the packages were **similarly**
     **essential components** of **any Java language-based program**.

27

28   *Id.* at 1376-77 (emphasis altered).  As the context demonstrates, "commercial 'interoperability'"

1    pertains to the possible technical necessity to copy to write programs in the Java language.

2    If the Federal Circuit's plain language is not evidence enough that it is discussing techni-

3    cal compatibility, the citation to *Sega* is a dead giveaway, since *Sega* is a case about reverse-en-

4    gineering so Accolade's videogames would technically be compatible with (i.e., run on) Sega's

5    game console. 977 F.2d at 1522-23.   *None* of the copied code in *Sega* was used in the allegedly

6    infringing product, *id.* at 1522-23, and so the copying could not possibly have had anything to do

7    with *user expectations*.  The facts here are very different.  Google copied the declaring code and

8    SSO of the Java APIs into Android, the infringing product, and then released an *in*compatible

9    product containing Oracle's copyrighted work to the public.  *Oracle Am.*, 750 F.3d at 1350-51.

10    Google emphasizes the Federal Circuit's use of the term "commercial 'interoperability,'"

11    but this term does not helpful Google's argument.  The term is a reference to an earlier statement

12    by the Federal Circuit that "a defendant's desire 'to achieve compatibility is a *commercial* and

13    competitive objective which does not enter into the issue of whether particular ideas and

14    expressions have merged.'"  *Id.* at 1371 (quoting *Apple Computer, Inc. v. Franklin Computer*

15    *Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983)).  That case, too, was about technical compatibility.

16    Google is free to offer evidence that it copied to attract and exploit the Java developer

17    community, but it cannot introduce evidence and testimony that its copying was necessary for

18    *compatibility* or *interoperability*.  Non-technical compatibility/interoperability is irrelevant under

19    the Federal Circuit's decision and Ninth Circuit cases.  Permitting Google to introduce such

20    evidence will only confuse and mislead the jury while providing no probative value whatsoever.

21                                                    **CONCLUSION**

22    For the foregoing reasons, this Court should exclude evidence and testimony that Google

23    copied (1) out of technical necessity, (2) to achieve compatibility/interoperability with the Java

24    language, or (3) to create compatibility/interoperability with the Java development community.

25    Whatever the outcome of this motion, the Court should grant leave to update and conform expert

26    reports to reflect the parties' agreement as to the portions of the declaring code in the 62 classes

27    and interfaces identified in the Java Language Specification.

28

ORACLE'S MOTION IN LIMINE THAT COPYING IS
NOT REQUIRED TO USE THE JAVA LANGUAGE

1

Dated: April 29, 2016

2

Respectfully submitted,

3

Orrick, Herrington & Sutcliffe LLP

4

By: */s/ Andrew D. Silverman*
Andrew D. Silverman

5

Counsel for ORACLE AMERICA, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S MOTION IN LIMINE THAT COPYING IS
NOT REQUIRED TO USE THE JAVA LANGUAGE