**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., | No. C 10-03561 WHA |
| Plaintiff, | |
| v. | |
| GOOGLE INC., | **FINAL PRETRIAL ORDER** |
| Defendant. | |

**FOR GOOD CAUSE** and after four *in limine* hearings and a final pretrial conference, the following constitutes the final pretrial order and rulings on most motions *in limine*:

1. This case shall go to a **JURY TRIAL** on **MAY 9, 2016**, at **7:30 A.M.**, and shall continue from **7:30 A.M. TO 1:00 P.M.**, Monday through Friday, excluding holidays, until completed. The jury will deliberate according to a schedule to be determined by them.

2. The issues to be tried shall be those set forth in the joint proposed pretrial order except to the extent modified by order *in limine*. This final pretrial order supersedes all the complaint, answer, and any counterclaims, cross-claims, or third-party complaints, *i.e.*, only the issues expressly identified for trial remain in the case.

3. Rulings on most motions *in limine* are summarized below, and memorandum opinions will follow.

4. Except for good cause, each party is limited to the witnesses and exhibits disclosed in the joint proposed final pretrial order, less any excluded or limited by an order

*in limine*. Materials or witnesses used solely for impeachment need not be disclosed and may be used, subject to the rules of evidence.

5.   Any stipulated facts must be read orally to be included in the record.

6.   A jury of **TEN PERSONS** shall be used. The procedure for disseminating and reviewing juror questionnaires and voir dire is set forth in the Court's Final Jury Selection Plan (Dkt. No. 1710). That order and the final version of the questionnaire are appended hereto.

7.   With respect to Oracle's request to reconsider and dispense with bifurcation, this order maintains the plan to bifurcate; however, as the case proceeds in the first phase, there is some chance that the Court will decide to collapse all evidence into one proceeding but preserve phased arguments, deliberations, and verdicts (such that the fair use verdict would be rendered first to be followed by further argument and deliberations on damages if Google's fair use defense were rejected). It is unlikely that the Court will pursue this alternative but, conceivably, circumstances will warrant the modification as the first phase develops. Subject only to that possibility, the jury trial will proceed in two phases with phase one concerning fair use and phase two concerning damages and willfulness. Due to the respective burdens of proof, Google shall present evidence first in phase one, and Oracle will present evidence first in phase two. The jury will be instructed on the phased structure of the trial.

8.   Each side shall have **SIXTY MINUTES** for opening statements during phase one. Oracle shall make the first opening statement. The opening statements in phase one may address both fair use and damages. The amount of time for closings and for openings during phase two will be determined at a later date.

9.   Each side shall have **FIFTEEN HOURS** to examine witnesses (counting direct examination, cross-examination, re-direct examination, re-cross examination, etc.) during phase one, and **FIVE HOURS** during phase two. Any time remaining from phase one may be banked for use during phase two. Opening statements and closing arguments shall not count against the limit. Attorney John Cooper's direct examination of Professor James Kearl shall not count against the limit; however, any cross-examination of Professor Kearl by the parties shall count. If, despite being efficient, non-duplicative, and non-argumentative in the use of the allotted

time, one side runs out of time and it would be a miscarriage of justice to hold that side to its limit, then more time may be allotted.

10. Post verdict, some additional time will be allowed for the judge to hear evidence on Google's equitable defenses and Oracle's equitable remedies. The entirety of the trial record will be usable for this purpose as well. This phase will only be reached if Google loses in the fair use phase.

11. The parties shall follow the Court's current *Guidelines for Trial and Final Pretrial Conference*, separately provided and available on the Internet at http://www.cand.uscourts.gov, which guidelines are incorporated as part of this order. Additionally, the parties shall comply with the procedure set forth in the Order Re Rolling, Written Notice of Next Seven Witnesses, dated April 2, 2012 (Dkt. No. 851).

12. Experts may, but are not required to, observe any parts of the trial.

13. It is counsel's responsibility to figure out how the JuryPC works and to ensure it is properly prepared before the jury begins its deliberations. Counsel should review the information available at http://cand.uscourts.gov/jurypc.

14. Both sides shall please keep in mind the importance of providing young attorneys with opportunities to examine witnesses at trial.

### ORDER RE MOTIONS *IN LIMINE*

This part of the final pretrial order covers eleven motions *in limine*. Oral argument occurred on all of the motions, with the exception of the motion regarding Dr. Simonson, over five hearings, including the final pretrial conference. Memorandum opinions further addressing the reasoning for all motions will issue, but the essence of the rulings is now set forth for the benefit of counsel.

Oracle's seventh motion *in limine* regarding Dr. James Leonard's report replying to Professor Kearl's report is hereby **DENIED**. The following motions *in limine* are **GRANTED IN PART** as follows (and otherwise **DENIED**).

### 1. ORACLE'S MIL NO. 1 REGARDING OPENJDK.

Google may offer evidence of OpenJDK as a non-infringing alternative to meet Oracle's claim of lost profits and Oracle's claim of any market harm (to the copyrighted works and their derivatives) under the fourth fair use factor. Similarly, Google may offer evidence that the availability of OpenJDK to the public (subject to compliance with applicable license terms), rather than Google's alleged infringement, caused any alleged lost profits or market harm. Since Oracle argues that Google was desperate to make the window for the mobile market and had no alternative other than to infringe, Google may meet this argument by trying to show that OpenJDK was a viable alternative. Google, however, may not offer OpenJDK as a non-infringing alternative for purposes of disgorgement of Google's profits.

Google may not, moreover, offer argument or testimony that the public availability of OpenJDK demonstrates the published nature of the copyrighted works, or that the availability of OpenJDK indicates Sun's or Oracle's consent to Google's unlicensed use of the 37 APIs. Additionally, Google may not refer to or offer evidence of the 2015 implementation of OpenJDK in Android N unless and until Oracle suggests to the jury that Google never actually implemented OpenJDK in Android. (Oracle can avoid opening that door by limiting that point to the position that Google never implemented OpenJDK "back at the time," meaning 2007–08.)

### 2. ORACLE'S MIL NO. 2 REGARDING APACHE, APACHE HARMONY, AND GNU CLASSPATH.

Oracle's motion *in limine* to exclude all evidence of Apache Software Foundation, Apache Harmony, Google's distribution of Android under the "Apache License," and GNU Classpath is **DENIED** as to evidence regarding Apache. The Court, however, reserves its ruling on evidence regarding GNU Classpath until it has received and reviewed Google's written offer of proof on GNU Classpath as detailed in the order on this motion issued on April 28.

### 3. ORACLE'S MIL NO. 3 REGARDING DR. OWEN ASTRACHAN.

Dr. Owen Astrachan must clearly state that Android is *not* compatible or interoperable with the Java platform and that Google had no technical need to copy the declaring code and SSO in order to use the Java programming language, with the exception of the three core API

4

packages that the Federal Circuit acknowledged may be technically necessary for use of the Java programming language (including sixty-two declaring lines within three core API packages that *all* agree *were* technically necessary to use the language). Astrachan must further clarify that his testimony only relates to compatibility with the conventions and expectations of developers using the Java programming language. Astrachan may not offer testimony based on the headings in his report. Astrachan may not offer economic conclusions regarding the effect of Android on the *market* for any aspect of the Java platform. Specifically, paragraph 256, the first sentence of paragraph 258, and the first sentence of paragraph 270 are stricken, and Astrachan may not offer testimony based thereon.

Astrachan may not offer testimony regarding his "understanding" that "transformativeness" means "opening new horizons," although he may testify as to his opinion that Android opened new horizons.

**4.   ORACLE'S MIL NO. 4 REGARDING DR. GREGORY LEONARD.**

Dr. Gregory Leonard may not offer testimony regarding non-infringing alternatives for the purpose of calculating Google's profits attributable to the accused infringement for the purposes of disgorgement or to rebut Oracle's causal nexus case. Leonard may address non-infringing alternatives to rebut Oracle's contentions regarding its own profits it would have realized absent infringement. Leonard may also address the non-infringing alternative of using OpenJDK to meet Oracle's argument that Google had no alternative to copying the 37 APIs in order to meet a limited market opportunity.

Leonard may not offer any testimony based on the Kim model. This also excludes any testimony relying on the "diversion ratio" that he derived from his use of the Kim model.

**5.   ORACLE'S MIL NO. 5 REGARDING DR. ITAMAR SIMONSON.**

Dr. Itamar Simonson must make clear that his survey was directed at the factors that developers consider *in general* when determining which platform to develop for, and he may not offer any conclusion about whether that general proposition is specifically applicable to 2007–08. Simonson may not opine about the meaning that survey respondents attributed to the ambiguous and overlapping terms "popularity," "established user base," or "market demand."

5

Simonson must adjust his testimony to reflect only the conclusions in his survey *without* the inclusion of pre-testing results.

Google may not offer Simonson's testimony in its case-in-chief on fair use.

### 6. ORACLE'S MIL NO. 6 AND GOOGLE'S MIL NO. 7 REGARDING PROFESSOR JAMES KEARL.

Professor James Kearl's testimony regarding non-infringing alternatives is hereby limited in the same manner as Leonard's. Similarly, Kearl may not offer testimony regarding the Kim model. Finally, Kearl may not offer testimony regarding the non-infringing alternative scenario in which Google launches no form of Android at all.

### 7. GOOGLE'S MIL NO. 2 REGARDING NEW PRODUCTS.

Oracle may not offer any evidence regarding Android Wear, Android Auto, Android TV, or Brillo. Google also may not make any reference to those implementations. Nor may it argue for the inference that Android constituted a transformative use of the copyrighted works based on its potential to extend into those product categories.

### 8. GOOGLE'S MIL NO. 3 REGARDING DR. ADAM JAFFE.

Dr. Adam Jaffe may not offer testimony based on the effect of the above-excluded new products. Because Jaffe has offered no opinions regarding the effect of the accused works in those product categories, his testimony regarding those categories must be limited to harm that would result from widespread copying akin to Google's.

### 9. GOOGLE'S MIL NO. 6 REGARDING MR. JAMES MALACKOWSKI.

Google has not persuaded the Court that Oracle's evidence is insufficient to persuade a jury of a causal connection between the accused infringement and James Malackowski's initial proffer of $29 billion from all ad and search revenue from Android devices as a matter of law; however, this is without prejudice to a Rule 50 motion directed at that issue.

Malackowski may not offer testimony about the "legal theory of commingling" or opine about his understanding of the law of disgorgement or apportionment. Further, Malackowski may not offer testimony regarding whether further apportionment is possible. Nor may he opine that it is appropriate to award the entire value of the "platform contribution" to Oracle

because the allegedly infringing APIs were the *sine qua non* of Android or, as he refers to them, "gating items."

Additionally, due to the burden shifting involved in disgorgement, the Court orders Oracle to offer Malackowski's apportionment analysis and his critique of Leonard's and Kearl's apportionment opinions only *after* they have offered their own apportionment opinions at trial (yes, this will mean he must appear twice).

Malackowski may offer conclusions about lost profits based on the 2007–08 Sun forecast only through 2011 (which a prior order already approved). He must adjust his total lost profits calculations accordingly. Malackowski may not opine that it would be appropriate to use the forecast to project revenue growth beyond 2011.

Malackowski may not offer any testimony suggesting that Oracle's lost profits due to the failure of Project Acadia can be measured in any way based on Google's profits from Android or otherwise state that the lost profits attributable thereto are "best measured by the apportioned Android profits attributable to the Infringed Java Copyrights" (Malackowski Rpt. ¶¶ 215, 217).

**IMPORTANT *IN LIMINE* RULINGS FOR BOTH SIDES, ALL WITNESSES**

Under no circumstances shall any witness, expert or otherwise, purport to tell the jury what the law is or what they understand the law to be without prior approval of the judge, and under no circumstance can any witness characterize someone else's intent or willfulness (unless the witness heard the someone else admit the intent).

A denial of a motion *in limine* is without prejudice to further discrete objections not fairly within the swath of the denial. Be very aware that a party who wins an order *in limine* excluding evidence sometimes opens the door to its admission anyway. If one side gets evidence excluded under Rules 402 or 403, that side may *not* argue to the jury that the other side presented no (or limited) evidence on that point.

The foregoing rulings are controlling. The Court reserves the authority, on its own motion, to modify these rulings if further evidence or circumstances warrant such a

7

modification as the trial develops.  Counsel, however, may not ask the Court for such a modification without going through the formality of a motion for reconsideration.

**EXTENT TO WHICH PRIOR FACTUAL FINDINGS ARE NOW IMMUTABLE**

In its trial brief (Br. 1), Oracle requests that certain facts referenced by the court of appeals be deemed accepted for purposes of trial and read as an instruction to the jury at the end of the case.  Most of them concern Google's conduct and include such things as Android "competes with Java in [the mobile devices] market" and "Google designed Android so that it would *not* be compatible with the Java platform."  (Oracle refuses, however, to admit as true some of the adverse factoids in the same opinion of the court of appeals, creating an appearance of "cherry picking.")

The court of appeals drew heavily (but not exclusively) on the findings of fact made by the district court on the copyrightability issue, an issue for the bench rather than a jury.  Now, however, we are about to present the fair use issue to a jury.  Both sides are entitled to make their factual presentations to the jury on the fair use factors without being bound by earlier findings by the district court (whether or not recited as background or relied on by the appellate court to reverse as to copyrightability) — except to the extent now stated.

By definition, to begin with, the copyrightability holding in no way turned on Google or Android facts.  Copyrightability turned only on the copyrighted work, not the accused work.  Therefore, although the appellate copyrightability holding did fix as immutable those facts necessary to that holding, it cannot by itself be used in any way to establish "facts" regarding Google or Android.  Oracle's trial brief is wrong in stating otherwise.

By contrast, the other holding by the court of appeals *did* involve Google and the accused work, Android.  This was the holding on a second issue, a holding *rejecting* Oracle's attempt on appeal to secure an appellate ruling that Google's use of the code at issue in Android was not a fair use as a matter of law.  The court of appeals recited enough of the law of fair use and enough of the factual record to show that issues of fact remained for a jury.  That court then stated that a jury should weigh and balance the evidence and factors rather than an appellate

court. For that reason, it rejected Oracle's view that the factual record foreclosed fair use as a matter of law.

Since the court of appeals rejected Oracle's bid and found that disputed facts remain, it is hard to see how any "fact" was necessary to or immutably determined by that holding. Google succeeded in showing disputed issues of fact, and any further disputed fact issues now will only serve to reinforce the appellate remand for a jury trial. Therefore, there is nothing in the "law of the case" rule or the "rule of mandate" that has locked Google into any particular factoid insofar as the fair use issue is concerned.

The same is true for "judicial estoppel," but for a different reason. The rule of judicial estoppel bars a party from making a representation to a court, inducing the court *to rely on it* to grant (or deny) relief, and then after the favorable ruling, trying to wiggle off the representation in an attempt to have it both ways. Here, none of the proffered factoids was advanced by Google *and relied on* by the court of appeals for purposes of its fair use ruling. To take one important example, Google prevailed on appeal *in spite of, not because of*, Google's answer at oral argument that it "did not dispute" that Android was commercial in nature. While that statement was noted in the appellate decision, it was not relied upon for the holding, much less relied on to benefit Google. Put differently, when something is "not disputed" on appeal and the "not disputing" party wins anyway (on that issue), it is hard to see, for purposes of judicial estoppel, why it should be treated differently from a concession "solely for purposes of argument." If Android had been presumed commercial in nature "for the sake of argument," for example, the court of appeals would plainly have ruled that a jury trial on fair use was necessary anyway. And, if Android had not been deemed purely commercial after all, there would have been all the more reason for the same holding (remand for a trial on fair use). So, contrary to Oracle, judicial estoppel does not apply.

Nevertheless, this order HOLDS that the essence of the concession made by Google before the Federal Circuit at oral argument constituted a "judicial admission" because it was a deliberate, clear and unambiguous admission, even though oral. *American Title Ins. Co. v.*

9

*Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (extent of judicial admission, if any, in trial court's discretion). Still, we must be mindful of what was admitted. Here is the exchange:

> Judge O'Malley: But for purpose and character, though, you don't dispute that was entirely a commercial purpose?
>
> Attorney Van Nest: No.

And, at the 2012 trial, Attorney Van Nest stated:

> I mean, again, the fact that it's a commercial use is not in dispute. Nobody is claiming that Google created Android as part of a charitable mission. The evidence is pretty clear that they created it to provide a platform on which other Google products could do better (Tr. 1418).

The foregoing demonstrates and the jury will be admonished that "It is not in dispute in this case that Google's use of the copyrighted material was for a commercial use." For now, the word "entirely" will be left out as argumentative, hyperbolic, and unduly prejudicial. Since we are concerned with a judicial admission, the Court has discretion to decide how much of the colloquy deserves in fairness to be written in stone. If it develops that Google pursues a line of evidence and/or argument unreasonably at war with the commercial concession, then the word "entirely" may possibly be inserted into the instruction. Oracle, of course, can still try to show that the only purpose was commercial.

In light of this ruling, and for the foregoing reasons, the recording and transcript of the oral argument will be excluded under Rule 403. One additional reason is that doing otherwise would place trial counsel in the position of arguing their own credibility or having to take the stand to give explanatory testimony.

To circle back to the appellate holding regarding copyrightability, this order RULES that any facts *necessary* to that appellate holding should be deemed established for all purposes. One of those facts, as requested in Oracle's trial brief, is that the declaring code, also known as the header code, for the 37 APIs as well as their structure, sequence and organization were creative and original enough to qualify for copyright protection. To define this for the jury, it will be necessary to recite the standard for creativity and originality needed to obtain a copyright. *Feist Pub., Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 345 (1991). Contrary to Google (Br. 3), Google simply cannot argue for fair use purposes, to take one example, that the declaring code

and SSO at issue were not creative. By contrast, the degree of creativity over and above that threshold, if any, is a matter still in play for purposes of the second fair use factor.

In its recent supplemental brief (Docket No. 1726), Oracle went beyond its original list (in its trial brief) of facts sought to be deemed established and raised several more, this time on issues concerning the extent to which Android, in order to use the Java programming language, needed to copy the declaring code and structure, sequence and organization of the 37 APIs. On this latest set, Oracle seems to be overreaching since even the appellate court recognized that at least three of the 37 APIs might have been necessary to write in the Java programming language and that the jury could take this into account in evaluating fair use. Oracle's latest set comes too late to sort out in the final pretrial order. The Court will listen to the evidence as it comes in and consider whether or not any of the items should be declared established and immutable, the guiding principles being that neither side may contradict a fact necessary to the copyrightability holding of the appellate court — nor may either side overstate the scope of any such necessary fact. Counsel shall meet and confer and submit an agreed-on statement of established facts in line with the foregoing by **NOON ON MAY 13**. Judge Sallie Kim has graciously agreed to mediate this conference. Please contact her chambers immediately.

**IT IS SO ORDERED.**

Dated: April 29, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE