# Exhibit 2

Page 1

1               UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                SAN FRANCISCO DIVISION

4

   _____

5                                 )

   ORACLE AMERICA, INC.,          )

6                                 )

           Plaintiff,             )

7                                 )

       vs.                        )Case No.:

8                                 )3:10-cv-03561-WHA

   GOOGLE, INC.,                  )

9                                 )

           Defendant.             )

10 _____)

11

12

13

14     VIDEOTAPED DEPOSITION OF CHRIS KEMERER, Ph.D.

15              San Francisco, California

16              Thursday, March 3, 2016

17                    Volume 1

18

19

20

21

22

23   Reported by:

     RACHEL FERRIER, CSR No. 6948

24

25   Job No. CS2265292

1    Q   Okay.  This is one of the scripts that your team
2  used to calculate package change across the Java SE
3  versions; true?
4    A   That's what Appendix C is labeled, yes.
5    Q   All right.  And do you see lines 18 through
6  line 265 contain a list of API packages that we have
7  been talking about during this case?
8    A   Yes, I see that list.
9    Q   All right.  And this is the list that your team
10  studied for purposes of its analysis of stability in
11  APIs; right?
12   A   Yes.  I expect it to be at least part of the
13  analysis, yes.
14   Q   Do you know where this list came from?
15   A   No.
16   Q   There appears to be 247 independent APIs listed
17  between lines 18 and 265 on this Appendix C.
18       Do you know whether Java has 247 APIs?  And I
19  should be specific, Java SE?
20   A   No, I don't believe so.
21   Q   All right.  Well, let's take a look at Appendix G
22  of your opening report where you discuss what's
23  contained in Java SE 5.
24   A   I'm sorry, page number?
25   Q   Sure.

1       Appendix G starts on page 154 of your opening
2  report?
3    A   Okay.  I have that.
4    Q   All right.  Does it sound right to you that
5  Java SE 5 has about 166 APIs?
6    A   Short of counting them, that sounds approximately
7  correct.
8    Q   Okay.  So does having looked at your Appendix G
9  and the appendix we were looking at before to your reply
10  report -- do you have any explanation for why the number
11  of APIs contained in the analysis for the script that
12  analyzed stability contained about 247 APIs?
13   A   No, I don't.
14   Q   Who would you ask to find that out?
15   A   That would be the same answer as I gave to the
16  earlier similar question.
17   Q   Ask the technical team?
18   A   Yes.
19   Q   Okay.  Let's talk a little bit about some of the
20  statements in your report on the subject of copying.
21       In your report -- and it appears in the opening
22  report, starting at about paragraph 61, and in other
23  places throughout your opinions, you refer to the notion
24  that Google copied thousands of lines of code and the
25  SSO.

1       Do you recall that?
2    A   Yes, I have that paragraph in front of me.
3    Q   Okay.  And when you say that Google copied lines
4  of code in the SSO, specifically, what do you mean by
5  that?
6    A   It's my understanding that this was
7  established -- and it's part of the Court of Appeals
8  findings -- that copying took place and that the
9  declaring code of the 37 packages at issue and their SSO
10  was copied from Java SE 5.
11   Q   And that was the basis for your statements in
12  your report?
13   A   I understood that from the Court of Appeals, but
14  also I've read the report and discussed with
15  Mr. Zeidman, who has also done an independent analysis
16  of copying.
17   Q   Have you given me the bases for your statements
18  about copying by Google?
19       MR. RAMSEY:  Objection; form.
20       THE WITNESS:  I -- I thought I just did so.
21  Maybe I don't understand your question.
22  BY MS. ANDERSON:
23   Q   I just want to make sure that I have exhausted
24  the bases for your statements that Google copied lines
25  of code in SSO.

1       Have you given me all your bases?
2    A   Oh.  Yes, I believe I have.
3    Q   Thank you.
4       Do you consider yourself to have expertise in the
5  subject of open-source licensing?
6    A   My opening sentence, of course, has to be the
7  standard:  I am not a lawyer.  And the question of
8  licensing, at some level, is a legal question, so I am
9  not here to offer a legal opinion on open-source
10  licensing.
11       What I have done in my reports is I've offered an
12  opinion from the business perspective.  I have, you
13  know, familiarity with software contracts, again, from
14  the point of view of a manager of software development,
15  and, of course, I've read the license at issue in this
16  case.  I've also read the reports of Mr. Hall and
17  Ms. Murray in forming my opinions and also
18  contemporaneous statements, particularly made by the
19  business leaders at Google.
20   Q   Do you consider yourself to have expertise in the
21  subject of open-source licensing?
22   A   I believe I have an informed opinion based on my
23  background in the software business, but not a legal
24  opinion.
25   Q   When you say you believe you have an informed

47 (Pages 182 - 185)

Page 214

1 and software that were discussed in your deposition?
2     MS. ANDERSON:  Objection; leading.
3     THE WITNESS:  No, I have no such doubts.
4 BY MR. RAMSEY:
5   Q  And what is your -- what is the reason why you
6 have no doubts about the scripts and programs discussed
7 on the record today?
8   A  Twofold, primarily.
9     One, I've met and worked with the people who
10 wrote the programs, and I believe them to be competent.
11 And, two, although I've approached this whole task in a
12 similar way that I would approach a research paper that
13 I would be writing -- and I try to document the steps
14 I've taken so that the reader can follow along my
15 analysis and understand what I've done -- I also know
16 that -- and it seems like an odd way to think about it,
17 but the benefit of this being a legal proceeding and
18 being an adversarial proceeding is that when I put the
19 full script as an appendix to my reports, I know that
20 there will be experts on the Google side who will want
21 to read those, and that sort of serves as another check
22 for you.  If someone's going to find a mistake, I know
23 that the other side is highly motivated to try to find
24 such a mistake, if an error did exist, so the
25 combination of my confidence in the people that I've

Page 215

1 worked with and the fact that an adversary has had an
2 opportunity or multiple opportunities to look at these
3 scripts increases my confidence that they were done
4 accurately.
5   Q  Were members of your technical team software
6 engineers, to your understanding?
7     MS. ANDERSON:  Objection; leading.
8     THE WITNESS:  To my understanding, yes.  In
9 particular, I mentioned earlier Mohammed, who attended
10 my alma mater, Carnegie Mellon University, and -- and
11 his background is in software engineering.
12     MR. RAMSEY:  All right.  Thank you.  No further
13 questions.
14     MS. ANDERSON:  No questions.  Thank you.
15     THE VIDEOGRAPHER:  This concludes today's
16 videotaped deposition of Dr. Chris Kemerer.
17     We are off the record at 3:57 p.m.  Thank you.
18         (TIME NOTED:  3:57 P.M.)
19
20
21
22
23
24
25

Page 216

1     I, CHRIS KEMERER, Ph.D., do hereby declare
2 under penalty of perjury that I have read the foregoing
3 transcript; that I have made any corrections as appear
4 noted, in ink, initialed by me, or attached hereto; that
5 my testimony as contained herein, as corrected, is true
6 and correct.
7     EXECUTED this _____ day of _____,
8 2016, at _____, _____.
9       (City)          (State)
10
11 _____
12     CHRIS KEMERER, Ph.D.
13     VOLUME 1
14
15
16
17
18
19
20
21
22
23
24
25

Page 217

1
2
3
4     I, the undersigned, a Certified Shorthand
5 Reporter of the State of California, do hereby certify:
6     That the foregoing proceedings were taken before
7 me at the time and place herein set forth; that any
8 witnesses in the foregoing proceedings, prior to
9 testifying, were placed under oath; that a verbatim
10 record of the proceedings was made by me using machine
11 shorthand which was thereafter transcribed under my
12 direction; further, that the foregoing is an accurate
13 transcription thereof.
14     I further certify that I am neither financially
15 interested in the action nor a relative or employee of
16 any attorney or any of the parties.
17     IN WITNESS WHEREOF, I have this date subscribed
18 my name.
19
20 Dated:  March 4, 2016
21
22
23 _____
24     RACHEL FERRIER
25     CSR No. 6948

55 (Pages 214 - 217)