KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone:     (404) 572-4600
Facsimile:     (404) 572-5100

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>        Plaintiffs,<br><br>   v.<br><br>GOOGLE INC.,<br><br>        Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**DEFENDANT GOOGLE INC.'S REPLY TO ORACLE'S OBJECTION (ECF NO. 1744) TO THE COURT'S MODIFIED PROPOSED JURY INSTRUCTION ON FAIR USE (ECF NO. 1688)**<br><br>Dept.:    Courtroom 8, 19th Fl.<br>Judge:   Hon. William Alsup |

In accordance with the schedule set forth in the Court's April 19, 2016 Modified Proposed Jury Instructions On Fair Use (ECF No. 1688), defendant Google Inc. ("Google") respectfully submits the following reply to Oracle's Objection To The Court's Modified Proposed Instructions (ECF No. 1744).

Oracle's objections to the Court's proposed modified instructions seek to deprive the jury of information about the overall concept of fair use that, as proposed by the Court, would likely be especially helpful to the jury, i.e., by advising the jury—consistent with ample authority and in simple, easy to understand language—that a finding of fair use is appropriate where "a reasonable copyright owner would have consented to the use." Oracle's objections also ask the Court to cherry-pick in the worst way, by truncating language used by the Supreme Court and the Federal Circuit to include only the portions of sentences that are favorable to Oracle. In addition, Oracle's objections reflect, in several places, a misunderstanding of the copyright concept of "derivative work" that, if imported into the instructions, would be both incorrect and hopelessly confusing to the jury. The objections are also replete with argument regarding issues as to which the parties have already agreed, as reflected in their April 28 joint filing that identified certain modifications to the proposed instructions as to which they are in agreement, subject to the Court's approval. ECF No. 1746. Finally, Oracle complains repeatedly and incorrectly about alleged imbalance in the instructions, and argues that the instructions as a whole are "generally slanted in favor of a finding of fair use." ECF No. 1744 at 1.

Virtually all of Oracle's objections lack merit. Subject to the relatively few issues raised by Google in its April 28 response regarding the modified proposed instructions, ECF No. 1743, the issues addressed in the parties' joint April 28 filing, ECF No. 1746, and a small number of other issues addressed herein, the instructions as a general matter fairly lay out for the jury the applicable principles of fair use, with appropriate guidance and explanation to assist the jury in properly reaching a verdict. Oracle's complaint that the instructions are "slanted" is nothing more than a failure to appreciate that, as the Federal Circuit recognized, *Oracle Am. v. Google Inc.*, 750 F.3d 1339, 1376-77 (Fed Cir. 2014), the jury can properly find that Google's use was fair based on the facts of this case and correct instructions as to the law.

**I.     The "Reasonable Copyright Owner" Language**

Oracle takes issue with the Court's decision, as reflected in the Court's April 22 Adjustments To Fair-Use Instruction, ECF No. 1716, to include in the instructions the language from the Ninth Circuit's *Wall Data* decision to the effect that "As we balance these factors, we bear in mind that fair use is appropriate where a 'reasonable copyright owner' would have consented to the use, i.e., where the 'custom or public policy' at the time would have defined the use as reasonable." *Wall Data v. L.A. County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006). The *Wall Data* court cited in support of its statement only Professor Latman's study on fair use that is part of the legislative history of the 1976 Copyright Act. The statement, however, enjoys considerably greater support than that in the fair use case law.

First, the *Wall Data* decision in 2006 was not the first time the Ninth Circuit spoke about the importance in fair use analysis of the concept of a "reasonable copyright owner." In *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000), the court included a lengthy passage in its opinion regarding this concept—and did so based on, and consistent with, the Supreme Court's prior discussion of the same point in *Harper & Row*. 227 F.3d at 1116 (citing *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 549-50 (1985)). After reciting the statutory factors in Section 107, the *Worldwide Church* court quoted from *Harper* at length, including the *Harper* Court's quotation of Professor Latman's study, which "summarized" pre-1976 Act fair use law as:

> ***turning on*** the "importance of the material copied or performed from the point of view of the reasonable copyright owner. ***In other words, would the reasonable copyright owner have consented to the use?***"

*Id*. at 1116 (emphases added) (quoting *Harper*, 471 U.S. at 549-50). The Ninth Circuit also recognized, as the *Harper* Court had, that the "common-law background of the fair use doctrine illuminates the consideration of the factors Congress incorporated into § 107" and that the "statutory formulation of the defense of fair use in the Copyright Act reflects the intent of Congress to codify the common-law doctrine." *Id.*

This principle is therefore one that is both well-grounded and well-entrenched in fair use case law; it cannot be dismissed as a "single sentence" of "unexplained *dicta*" from *Wall Data*, as

Oracle suggests.  ECF No. 1744 at 1-2.

Oracle also misconstrues the facts of the Eleventh Circuit decision that it mischaracterizes as "the only appellate case to address this 'reasonable consent' language explicitly."  ECF No. 1744 at 8-9.  In *Peter Letterese and Assocs., Inc. v. World Institute of Scientology Enters., Inc.*, 533 F.3d 1287 (11th Cir. 2008), the Eleventh Circuit considered a fair use finding by the district court that had "explicitly adopted" a fifth factor that it described as "the copyright owner's ***actual consent*** to the use of the copyrighted material" and had explained that the facts relating to actual consent "permeated" its evaluation of the four statutory factors.  533 F.3d at 1308 (emphasis added).  The Eleventh Circuit criticized the district court's analysis not because of any reference by the district court to a "***reasonable*** copyright owner" or even "***reasonable*** consent," but because "the existence of ***actual consent*** negates the necessity of conducting a fair use analysis in the first place, as the existence of a license is an independent affirmative defense to a claim of copyright infringement."  *Id.* (emphasis added).  The Eleventh Circuit recognized—as the *Harper* Court and Ninth Circuit have done—that the language in Professor Latman's study relates to the "doctrinal underpinnings of fair use."  *Id.* at 1308 n.23.  After conducting its own evaluation of the fair use factors, the Eleventh Circuit concluded that the defendants in *Peter Letterese* were entitled to summary judgment on fair use as to certain of their uses but not others.  *Id.* at 1318.  But nowhere in its opinion did the *Peter Letterese* court even refer to the "reasonable copyright owner" language specifically; that phrase does not appear in the opinion.

Given the complexity of the fair use analysis and the balancing and weighing of multiple factors that the jury will need to undertake, Google believes that a synthesis such as the "reasonable copyright owner" language is especially helpful to the jury.  It is a well-recognized principle of fair use law, and one that both the Supreme Court and the Ninth Circuit have identified as an appropriate and correct "summary" of fair use principles.  It helps to tie together all of the factors, and—as Professor Latman himself recognized—does so in a way that uses everyday language that the jurors will understand.  As Professor Latman stated in his original report:

> Accordingly, it is believed that for purposes of analysis, ***the criteria of fair use may conveniently be distilled even further, without danger of oversimplification.*** In fact, the tests may perhaps be summarized by: importance of the material copied or performed from the point of view of the reasonable copyright owner. ***In other words, would the reasonable copyright owner have consented to the use?*** At times, custom or public policy defines what is reasonable.

A. Latman, Fair Use of Copyrighted Works at 15 (1958), reprinted at 12 *Nimmer On Copyright II*, Copyright Law Revision Study 14 (emphases added).

The Court should therefore retain the "reasonable copyright owner" language in the instructions and will not be "forg[ing] new law" by doing so. *See* ECF No. 1744 at 2.

**II.     Oracle's Cherry-Picking**

Oracle raises a number of complaints about what it calls the Court's failure to present the relevant law to the jury in a balanced way. Yet Oracle supports its arguments with truncated statements that, if given the way Oracle prefers, would present the law to the jury in an unbalanced way.

The most glaring example of Oracle's cherry-picking is its assertion that, under *Campbell*, the "central purpose is whether 'the new work merely supersedes' the original." ECF No. 1744 at 4. This is, of course, a woefully incomplete recitation of the *Campbell* Court's statement; it is only half of the complete sentence. As the Court is aware and the modified instructions correctly reflect, the *Campbell* Court stated that:

> The central purpose of this investigation is to see, in Justice Story's words, whether the new work merely "supersede[s] the objects" of the original creation, . . . ***or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.***

*Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994) (emphasis added; citations omitted). The *Campbell* Court clearly identified this inquiry—which helps to define transformativeness—as the central focus of the inquiry with respect to the first statutory factor, and the Court's modified instructions provide exactly this dichotomy and additional explanation to the jury in the succeeding paragraph. The Federal Circuit, in fact, truncated this statement in the opposite way; it stated, quoting *Campbell*, that a use "is 'transformative' if it 'adds something new, with a further purpose or different character, altering the first with new expression, meaning

or message.'" *Oracle Am.,* 750 F.3d at 1374.[1] And when it restated the broader language from *Campbell*, the Federal Circuit stated the proposition as follows: "The critical question is 'whether the new work merely supersede[s] the objects of the original creation ... or instead adds something new.'" *Id.* (ellipsis in original). There is no basis for Oracle's proposed rewriting of the Supreme Court's or the Federal Circuit's analysis of this issue to say that "the central purpose of the transformation inquiry is whether the infringement is a commercial substitute for the original work." ECF No. 1744 at 4.

Oracle's complaint appears to be that the proposed instructions allow for the possibility that a commercial use may nonetheless be transformative and a fair use. That, however, was a critical part of the Court's analysis in *Campbell*. In *Campbell*, the Court took issue with the fact that the Court of Appeals:

> immediately cut short the enquiry into 2 Live Crew's fair use claim by confining its treatment of the first factor essentially to one relevant fact, the commercial nature of the use. The court then inflated the significance of this fact by applying a presumption ostensibly culled from *Sony*, that "every commercial use of copyrighted material is presumptively . . . unfair. . . ." *Sony*, 464 U. S., at 451. In giving virtually dispositive weight to the commercial nature of the parody, the Court of Appeals erred.

*Id.* at 583-84. The *Campbell* Court squarely rejected the notion that "commerciality carrie[s] presumptive force against a finding of fairness," *id.* at 584, and ruled that *Sony* justified no such "hard evidentiary presumption." *Id.* Yet Oracle continues to cite cases such as *Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998), that refer to commercial uses as being "presumptively unfair" based on *Sony,* ECF No. 1744 at 5. The Supreme Court put this proposition to rest in *Campbell.* After *Campbell*, commerciality is not "conclusive," nor does it carry "presumptive force"; it is "rather a fact to be 'weighed along with other[s] in fair use decisions.'" *Campbell*, 510 U.S. at 585.

Again, the Federal Circuit agrees. The only comments the Federal Circuit made regarding

---

[1] Oracle's refusal to accept that a work may be transformative because it adds something new to the elements of the prior work is also illustrated by Oracle's complaints about the instructions' reference to the fact that Google used the declaring code and SSO of the 37 Java SE API packages with implementing code that it wrote or legitimately acquired from other sources. ECF No. 1744 at 2-3. This accurate statement is not improper "unnecessary editorial comment," as Oracle says; it is highly relevant and helps the jury to focus on exactly what is at issue for them to decide—and what is not.

1 the admittedly commercial nature of Google's use were that, under *Harper*, the fact that a use is
2 commercial "tends to weigh against a finding of fair use" and that, under *Campbell*, "[T]he more
3 transformative the new work, the less will be the significance of other factors, like
4 commercialism." *Oracle Am.*, 750 F.3d at 1375.[2] The Court's modified instructions tell the jury
5 precisely that and explain the concept in a neutral and balanced way. Contrary to Oracle's
6 claims, the instructions do not in any way "dilute" these correct principles with "lengthy
7 qualifications," nor do they "minimize" commerciality or suggest that it is "not that important."
8 *See* ECF No. 1744 at 1.

### III. Oracle's Misunderstanding of "Derivative Work"

As Google explained in its response regarding the Court's fair use instructions, ECF No. 1743 at 6-9, a "derivative work," under the Copyright Act, is one that is "based ***in whole or in substantial part*** upon [a] pre-existing work" and "incorporate[s] portions of the pre-existing work that are covered by the copyright in the pre-existing work." (emphasis added). Oracle's objections reflect that Oracle believes that any work that includes minor elements of a prior work coupled with substantial amounts of additional material is a "derivative work." That is not the law.

As an initial matter, Oracle mixes apples and oranges. Oracle confuses its broad-brush claim that "Android is an unauthorized ***derivative of the Java platform***," ECF No. 1744 at 7 (emphasis added), with the relevance to the fourth fair use factor of true derivative works (if any) of the two Asserted Works, i.e., Java 2 SE versions 1.4 and 5.0. Whether Android incorporates enough of the two Asserted Works to be considered to have been based "in whole or in substantial part" on the Asserted Works is beside the point. The relevant issue is whether Android is likely to harm any foreseeable derivative work based in whole or in substantial part on the protected elements of Java 2 SE versions 1.4 or 5.0. The evidence is clear that neither Sun

---

[2] The *Campbell* Court's statement emphasizes that transformativeness may be more significant than commercialism—and the *Campbell* Court later added, quoting *Harper*, that the commercial nature of a use is a separate factor that tends to weigh against fair use but is only that, and that the "force of that tendency will vary with the context." *Campbell*, 510 U.S. at 585. These statements stand in stark contrast to Oracle's unsupported statement that "the degree of commerciality may outweigh other aspects of fair use." ECF No. 1744 at 4.

nor Oracle ever developed a smartphone operating system like Android—whether a derivative work based on Java 2 SE versions 1.4 or 5.0 or not—and that Oracle abandoned any attempts to do so.

As a result, Oracle's complaints that the Court's modified instructions "would swallow the copyright holder's exclusive right to prepare derivative works," ECF No. 1744 at 4, are, to say the least, exaggerated.  Oracle seems to recognize that, for fair use purposes, the only relevant derivative works are "authorized derivatives based on the copyrighted work" and "Oracle's own and licensed derivatives."  *Id*. at 7.  Nothing in the Court's modified instructions is inconsistent with that principle.

Oracle's further complaints regarding the instructions on transformativeness suffer from the same misunderstanding.  The language of the instructions about when a plaintiff's work "is transformed into a new creation," *see* ECF No. 1744 at 4, is fully consistent with *Campbell*.  Oracle's arguments to the contrary are based on its misunderstanding of the law on derivative works.  And Oracle suggests no specific way for the Court to modify the instructions to "preserve the copyright holder's exclusive right to prepare derivative works."  *Id*. at 4.  No such modification is necessary.[3]

### IV.     Oracle's Continuing Incorrect Arguments

Oracle also continue to urge the Court to include inappropriate language in the instructions.  The most significant of these is Oracle's continued arguments regarding whether alleged "bad faith" is a proper consideration under the first factor.  ECF No. 1744 at 5.  For the reasons explained in Google's response to the modified instructions, ECF No. 1743 at 1-4, such an instruction is improper and fails to recognize the reasons for the language used by the Court in *Harper*, i.e., that *Harper* involved a "purloined copy" of **an unpublished work**.  *Harper*, 471 U.S. at 542, 543, 563.  Oracle's argument on this issue also ignores the Court's subsequent language in *Campbell* and the analysis of both Nimmer and Judge Leval regarding the irrelevance of this

---

[3] For the reasons explained in Google's response to the modified instructions, ECF No. 1743 at 6-9, however, it is necessary for the instructions to contain an adequate definition of "derivative work," i.e., one that tells the jury more than just that a derivative work is one that is based upon one or more pre-existing works"—which is all that Oracle suggests.  *See* ECF No. 1744 at 7, 8; ECF No. 1703 at 52.

1   issue.  *See* ECF No. 1743 at 2-3.

2   In view of the fact that no instruction relating to "bad faith" is proper, Oracle's complaint
3   about the Court's proposed example, *see* ECF No. 1744 at 5, is moot.  As the parties noted in
4   their joint filing regarding the modified instructions, however, the parties are in agreement that
5   "there are no issues in this case regarding unpublished works" and that the instructions need not
6   contain any reference to unpublished works.  ECF No. 1746 at 1.

7   **V.     Oracle's Irrelevant Issues**

8   As noted above, Oracle raises in its objections a number of changes to which Google has
9   agreed, subject to the Court's approval.  *See* ECF No. 1746.  These include: (1) the issues raised
10  by Oracle on page 2 of its objections regarding the reference on page 5 of the instruction to
11  "component subroutines and subsubroutines," (2) the issues raised on page 8 of Oracle's
12  objections regarding the analogy that appears on page 8 of the Court's instructions, and (3) the
13  issue raised on page 6 of the objections regarding the relevant comparison for purposes of the
14  third statutory fair use factor.  The parties have agreed in their joint statement that the instructions
15  should include a sentence reading: "Analysis of this factor is viewed in the context of Oracle's
16  copyrighted works, namely Java 2 Standard Edition Versions 1.4 and 5.0, not Android."  ECF No.
17  1746 at 1.[4]

18  Google also does not disagree with Oracle's suggestions that the two references to the
19  Supreme Court could be removed from the instructions or modified.  While Google does not
20  agree that it is either "unnecessary" or "prejudicial" to advise the jury that it was the Supreme
21  Court that has recognized the importance of transformativeness notwithstanding the absence of
22  that term in Section 107 (or that the jury may consider factors other than the four listed in Section
23  107), the language could be modified so that the jury does not get the misimpression that the
24  Supreme Court has made those determinations in this case.

25  Google acknowledges that computer programs are registered as "literary works" on the

---

[4] On Oracle's second complaint regarding the third factor, Google would not object if the Court changed the language from "used only what was reasonably needed for its purpose" to "used only what was reasonably needed for a transformative use"—which is language that Google suggested in its proposed instruction 14.  *See* ECF No. 1703 at 40.

8
GOOGLE'S REPLY TO ORACLE'S OBJECTION TO MODIFIED FAIR USE INSTRUCTIONS
Case No. 3:10-cv-03561 WHA

Copyright Office forms. *See Oracle Am.*, 750 F.3d at 1354. But as both the Federal Circuit and the Ninth Circuit have recognized, they can and should be distinguished from "more traditional literary works." *Id.* at 1375 (quoting *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526 (9th Cir. 1992)). The proposed instructions cover this issue in the second paragraph on page 5 of the modified instructions. To address Oracle's complaint more clearly, Google suggests (as it did in its proposed instructions, ECF No. 1703 at 36) that the sentence regarding "computer programs and languages" be revised to read "Although computer programs are not traditional literary works like fictional novels, songs or poems, they may nevertheless be protected by copyright."

Finally, as noted above, the parties agree that the jury should receive an instruction on the definition of "derivative work." *Compare* ECF No. 1744 at 7 *with* ECF No. 1743 at 6-9. The parties disagree as to whether Oracle's proposed instruction is sufficient or whether Google's proposed instruction—with which Oracle has not substantively disagreed—more accurately states the relevant law that the jury needs to understand.

### VI. Oracle's More Minor Quibbles

Oracle raises a host of issues regarding, in some instances, specific words that appear in the modified instructions. Oracle's complaints are in many cases trivial and unsupportable to the extent Oracle suggests that the specific language rises to the level of error.

Oracle, for example, complains that the modified instructions refer to fair use as an "important" exception to the exclusive rights of a copyright owner. ECF No. 1744 at 3. That, however, is how the Ninth Circuit has referred to fair use. *See Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 806 (9th Cir. 2003) ("The fair use exception recognizes this important limitation on the rights of the owners of copyrights.").

Oracle also continues to complain about the inclusion in the instructions of language regarding the Java programming language. ECF No. 1744 at 2. Both this Court and the Federal Circuit have recognized the importance of this issue to the fair use analysis in this case, *see Oracle Am.*, 750 F.3d at 1377, and it is therefore important to continue to include in the instructions that "Google was free to use the Java programming language to write Android." ECF No. 1688 at 5. The statement is both important in its own right and important for the jury to have

1  in mind as it considers both the necessity of using certain of the API packages and the other fair
2  use factors as they relate to Google's use of the declarations/SSO of the 37 Java 2 SE packages.
3  The Federal Circuit further recognized the relevance of these issues—and that they must be
4  considered in the context of the language being free for all to use—when it stated that "filtration
5  analysis" of the various packages "has not yet occurred."  *Oracle Am.*, 750 F.3d at 1377.
6  Oracle's complaint that instructing the jury on this issue is "unnecessary" and confusing, ECF
7  No. 1744 at 6, is baseless.

DATED:  May 2, 2016            KEKER & VAN NEST LLP

                               By:  /s/ Robert A. Van Nest
                                    ROBERT A. VAN NEST

                               Attorneys for Defendant
                               GOOGLE INC.