ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>       Plaintiff,<br><br>   v.<br><br>GOOGLE INC.<br><br>       Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S RESPONSE TO GOOGLE'S RESPONSE (ECF NO. 1743) TO THE COURT'S MODIFIED PROPOSED JURY INSTRUCTION ON FAIR USE**<br><br>Trial: May 9, 2016 at 8:00 a.m.<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William Alsup |

Pursuant to the Court's Order (ECF No. 1688), Oracle submits this response to Google's response to the Court's modified proposed jury instruction on fair use, ECF No. 1743 (Google's Resp. ("G.Resp.")). Oracle has already filed its response and objections to the Court's proposed modified jury instruction, ECF No. 1744, and the parties have met and conferred and agreed on several alterations to the Court's proposed instructions, ECF No. 1746. Oracle disagrees with Google response to the Court's proposed fair use instruction, as explained below.

## I. THE DRAFT INSTRUCTION CORRECTLY INCLUDES BAD FAITH AS RELEVANT TO FACTOR ONE

The Supreme Court explained in *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985) (quotation marks omitted), that "the propriety of the defendant's conduct" is relevant to the first fair use factor ("'character' of the use") because "[f]air use presupposes good faith and fair dealing." "Fair use," the Court explained, "distinguishes between a true scholar and a chiseler who infringes a work for personal profit." *Id.* at 563 (quotation marks omitted). In that case, the Court observed that, "[u]nlike the typical claim of fair use, The Nation cannot offer up even the fiction of consent as justification." *Id.* That was so, in part because The Nation had an opportunity "to bid for the right of abstracting excerpts" of President Ford's memoir, but failed to obtain the rights and so The Nation obtained a "purloined" copy instead. *Id.*

Those facts *are* "comparable facts regarding Google's conduct," G.Resp. 2. Google not only had an opportunity to obtain a license but did, in fact, negotiate for a license, and then chose to copy without permission after the licensing negotiations broke down. In the words of Android Chief Andy Rubin (to Google's President of Products Larry Page): Google chose to "[d]o Java anyway and defend our decision, perhaps making enemies along the way." TX 7.

Moreover, just as in *Harper & Row*, Google obtained an impermissible copy of the copyright holder's work. As discussed in the Apache briefing and argument, all agree that Apache did not have a license to distribute the Apache Harmony code containing Sun/Oracle's declaring code. ECF Nos. 1552 (Apache MIL) at 1-2, 1653 (Apache Reply) at 1-3. If Apache had a license to distribute the code, Google would have claimed an express license defense, which it does not. ECF No. 1602-5 (Google Apache Resp.) at 2 ("Google does not claim that this would give it a

license …."); ECF No. 1566-5 (Ex. 21 at 17) (Google admits that it "does not assert the defense of express license"); Trial Tr. 2420:1-3 ("[W]e don't [co]ntend that [express licensing] that's a defense in this case."). Indeed, as Google's public and private correspondence acknowledge, Google knew that Apache did not have a license that allowed it to distribute Harmony, which is why Google publicly urged Sun to grant Apache the unencumbered license—something that Sun refused to do. *See* TX 2347 (Open Letter to Sun re: Apache); TX 405 (email to Google CEO) ("Sun puts field-of-use restrictions in the Java SE TCK licenses which prohibit Java SE implementations from running on anything but a desktop or server. These restrictions prevent Apache Harmony from independently implementing Java SE … not to mention Android (though that's water under the bridge at this point).").[1]

Google contends that despite the clear language in *Harper & Row*, the propriety of the defendant's conduct is not relevant to the purpose and character of the defendant's use. For support, Google relies on a treatise and a law review article by a Second Circuit judge. G.Resp. 2-3. But this Court need look no further than binding Ninth Circuit precedent. *See, e.g.*, *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1173 n.6 (9th Cir. 2012) ("In evaluating the 'purpose and character' factor, we apply 'the general rule that a party claiming fair use must act in a manner generally compatible with principles of good faith and fair dealing.'" (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 n.8 (9th Cir. 2007))); *L.A. News Serv. v. K-CAL TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) ("While the fact that KCAL had requested a license but had been refused one is not dispositive, the propriety of the defendant's conduct is relevant to the character of the use at least to the extent that it may knowingly have exploited a purloined work for free that could have been obtained for a fee." (internal citation and quotation marks omitted)); *Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986) ("[t]he principle invoked is sound" that "bad conduct should bar [the defendant's] use of the equitable defense of fair use"). Moreover, though Google cites to Nimmer, it omits Nimmer's statement that "[o]ne frequent factor recognized by

---

[1] Google's other basis for distinguishing *Harper & Row* is that the manuscript there was unpublished. While that fact made the case against fair use even stronger, 471 U.S. at 554, nothing in *Harper & Row* suggests that bad faith is relevant only when the copied work is unpublished. As discussed below, Ninth Circuit precedent proves the contrary.

- 2 -   ORACLE'S RESPONSE TO GOOGLE'S RESPONSE
RE: MODIFIED PROPOSED JURY INSTRUCTIONS

courts relevant to the 'character' of the use is the propriety of the defendant's conduct." 4 *Nimmer on Copyright* § 13.05[A][1][d].

Google is wrong that *L.A. News Service* was "limited and guarded." G.Resp. 3. The Ninth Circuit held the defendant's copying was in bad faith because it did not request a license "in a good faith effort to avoid this litigation," but instead "obtained a copy of the tape from another station, directly copied the original, superimposed its logo …, and used it for the same purpose for which it would have been used had it been paid for." That is very similar to the situation here. *Supra* 2.

Google also tries to distinguish *Fisher* as pre-dating the Supreme Court's decision in *Campbell* in 1994, but the timing is irrelevant. The other Ninth Circuit cases cited above that consider bad faith as part of the first factor are all post-*Campbell*, including *Monge* from 2012, *Perfect10* from 2007, and *L.A. News Service* from 1997. In any event, *Campbell* does not claim to overrule *Harper & Row*, and nothing in *Campbell* can be read as overruling *Harper & Row*. Google cites a footnote where the *Campbell* Court notes that, based on the facts of the case, "regardless of the weight one might place on the alleged infringer's statement of mind …., we reject Acuff-Rose's argument that 2 Live Crew's request for permission to use the original should be weighed against a finding of fair use." G.Resp. 3 (quoting 510 U.S. 585 n.18). That does not overrule *Harper & Row*; it simply states that the facts in *Campbell* do not support a claim of bad faith, "regardless of the weight" accorded the infringer's statement of mind. Similarly, contrary to Google's argument, it is irrelevant that the Court in *Campbell* said that "*[e]ven if good faith were central to fair use*, 2 Live Crew's actions do not necessarily suggest that they believed their version was not fair use …." *Id.* (emphasis added) (quoting 510 U.S. at 585 n.18). No one here suggests that Google's bad faith should be "central" to the fair use analysis. *Id.* This Court's proposed instruction, for example, does not make bad faith "central" to factor one, much less to fair use overall. Rather, it makes bad faith one element of the analysis. ECF No. 1688 at 4; *see also* ECF No. 1703 (Parties' Joint Prop. Instrs.) at 26-28 (Oracle's Prop. Instr.). In any event, *Campbell* is a far different case. There, in a case involving a parody where consent is rarely granted, 510 U.S. at 592, the Court found that "2 Live Crew's actions do not necessarily suggest

- 3 -  ORACLE'S RESPONSE TO GOOGLE'S RESPONSE
RE: MODIFIED PROPOSED JURY INSTRUCTIONS

that they believed their version was not fair use; the offer may simply have been made in a good-faith effort to avoid litigation." *Id.* at 585 n.18. The same cannot be said here: Google negotiated for a license its documents show it knew it needed and then chose to copy and make enemies when it didn't get the license it wanted.

Google cites to what it calls the Federal Circuit's "exhaustive review" of fair use and argues that since the Federal Circuit did not discuss bad faith, this Court cannot instruct on it. G.Resp. 1. This is a curious argument coming from Google, as Google insists this Court instruct the jury on a variety of issues that are not in the Federal Circuit's decision. *See, e.g.*, ECF No. 1703 (Parties' Prop. Instrs.) at 25, 31, 48, 51 (Google's Prop. Instrs. Nos. 9, 11, 16, 17).[2]

## II. TRANSFORMATION REQUIRES CHANGE TO THE ORIGINAL WORK

Google objects to the Court's proposed instruction that "'a use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses a plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation.'" G.Resp. 4 (quoting ECF No. 1688 at 3-4). Google argues that the instruction "is incorrect as a matter of law" because "[a] work need not change the original to be transformative." *Id.* Google is mistaken.[3] That the later work must change the earlier work is repeated in the Federal Circuit's decision. "A work is not transformative where the user 'makes no alteration to the *expressive content or message* of the original work." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014) (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013)). "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work …." *Id.* (quoting *Perfect10*, 508 F.3d at 1165). Google may not like the statements from the Federal Circuit and Ninth Circuit, but that does not make them "incorrect."

Google supports its argument by citing the Supreme Court's decision about Betamax VCRs in *Sony Corp. v. Universal City Studios*, 464 U.S. 417 (1984). But *Sony* is inapposite, as

---

[2] One instruction Google proposes to add beyond the Federal Circuit's decision is the *dicta* in *Wall Data*. That *dicta* will be addressed more fully in Oracle's response to Google's proffer on Apache and GNU, filed later today.

[3] Oracle does agree that the Court should not instruct the jury, without qualification, that a use is transformative if the "plaintiff's work is transformed into a new creation." ECF No. 1744 (Oracle's Resp. & Objs.) at 4. Such a broad statement of transformative use, without limitation, would undermine critical exclusive rights of copyright owners and is contrary to precedent. *Id.*

Google is forced to acknowledge. G.Resp. 5 ("*Sony* did not discuss transformativeness per se …."). Indeed, *Sony* was not a case about transformative use. Rather, the Supreme Court found fair use because (1) the use was not commercial since people were recording TV shows at home for their own personal use at a more convenient time and (2) the copyright holder had not shown any "meaningful likelihood" of market harm. *Sony*, 464 U.S. at 449-51.

Without *Sony*, Google falls back to *Perfect10* and *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003). G.Resp. 5. As explained in Oracle's Brief re: Disputed Jury Instructions, ECF No. 1707 at 22-24, incorporated herein by reference, *Kelly* and *Perfect10* similarly provide no support as both of those cases involve significant modifications to the original work. For example, the thumbnail images in *Kelly* and *Perfect 10* were indexed and made searchable by associating new keywords with them in a large database, and the originals were changed into "smaller, lower-resolution thumbnails" that were modified so "users are unlikely to enlarge the thumbnails and use them for [the original's] artistic purposes because the thumbnails are of much lower-resolution than the originals … making them inappropriate as display material." *Kelly*, 336 F.3d at 815, 818; *Perfect 10*, 508 F.3d at 1155 (similar). Those cases did not involve an exact copy without alteration, used for the same purpose. Indeed, in each case, the court never reached whether full-sized, higher-resolution pictures were "transformative," *Kelly*, 336 F.3d at 822 (remanding on full-size images); *Perfect 10*, 508 F.3d at 1159-60 (finding full-sized images not copied).

Google also proposes that the Court add that a use is transformative if it "incorporates the elements of the first work into a broader work." G.Resp. 5 (quoting its proposed instruction). But Google does not address any of the points made in Oracle's brief responding to Google's proposed instruction, ECF No. 1707 at 21-23, incorporated herein by reference, that Google's proposed instruction is not supported by the caselaw and, in fact, is contrary to Supreme Court and Ninth Circuit authority holding defendant's copying to not be fair use, even when the defendant has incorporated the plaintiff's work into a broader work. If it were true that "incorporating the elements of the first work into a broader work" is a transformative use, copyright law would be rendered ineffective because *any* copyrighted work could be included in a larger work and thus, under Google's definition, be a fair use. For example, it would be permissible for a plagiar-

ist to take an entire book or article or short story, copy it verbatim into her larger book or article, and claim transformation. Moreover, under Google's reading, the Supreme Court wrongly decided *Harper & Row* because The Nation copied a few hundred words from President Ford's memoir, constituting "13% of the infringing article." 471 U.S. at 565. Similarly, according to Google's reading, the Supreme Court wrongly decided *Stewart v. Abend* in finding no fair use for a motion picture of which "20% of the motion picture's story line" came from the copyright owner's book. 495 U.S. 207, 238 (1990).

Google's reliance on *Monge*, 688 F.3d at 1176, is misplaced. In *Monge*, the Ninth Circuit did not find that the defendant's copying was transformative because the photos were incorporated into a magazine. The Ninth Circuit did not find transformative use at all. 688 F.3d at 1174-76. Still, Google relies on an isolated statement in *Monge* that the defendant "did not transform the photos into a new work, as in *Campbell*, or incorporate the photos into a broader work, as in [*L.A. News Serv. v.*] *CBS Broadcasting*[, 305 F.3d 924 (9th Cir. 2002)]." 688 F.3d at 1176. This was *not* a statement about the meaning of transformation—far from it. In *CBS Broadcasting*, the Ninth Circuit *rejected* that the defendant transformed a video clip of the famous beating of Reginald Denny during the Los Angeles riots simply by incorporating it into a larger work:

> [I]t does not appear that Court TV's use of the video clip was transformative. Merely plucking the most visually arresting excerpt from LANS's nine minutes of footage cannot be said to have added anything…. Here, simply extracting the clip of the Denny beating and juxtaposing it with a clip from Denny's testimony updates, but does not change, the purpose of depicting the attack on Denny—its newsworthiness.

305 F.3d at 939. The court acknowledged that there was a "better claim" for transformation for including the clip into a "video montage … following editing for dramatic effect" because "development of the montage at least plausibly incorporates the element of creativity beyond mere republication." *Id.* at 939. Significantly, however, there too, even with modifications like editing, the Ninth Circuit still rejected transformation and found the first factor favored the plaintiff.

Google argues that a use is transformative if it "alter[s] ***or add[s]*** 'new expression, meaning or message," G.Resp. 6 (emphasis added), but cites no authority that supports the emphasized proposition. As the Federal Circuit explained: "A work is not transformative where the user

- 6 -

'makes no alteration to the *expressive content or message* of the original work." 750 F.3d at 1374 (quoting *Seltzer*, 725 F.3d at 1177).[4] Similarly, in *Campbell*, the Court asked "whether the new work merely supersedes the objects of the original creation or instead adds something new with a *further purpose* or *different character*, *altering the first* with new expression, meaning, or message." 510 U.S at 579 (emphasis added; quotation marks omitted). In each, the Supreme Court and Ninth Circuit inquired into whether the defendant altered the original—not simply added to it.

Finally, Google argues that the Court should modify its instruction to add that a transformative use is a "productive" use, G.Resp. 10—even though the Court recently removed that language after Oracle objected, *see* ECF Nos. 1663 at 2-3, 1707 at 24-26. Google does not respond to Oracle's arguments, instead citing to out-of-circuit authority that transformation "expands [the] utility" of the original work, whatever that means. G.Resp. 5 (quotation marks omitted). Such a definition of transformation (similar to the "broader work" definition) will inevitably swallow the exclusive rights afforded copyright owners. Nearly any new work can be said to expand the utility of the original. Such an instruction provides no useful guidance to the jury, though it may mislead the jury into improperly considering Android's utility separate and apart from any relevance to copyright or fair use. The Court was right to remove "productive" from its instruction based on similar objections by Oracle, and Google provides no persuasive reason to reconsider.

### III. GOOGLE ARGUES FOR AN UNNECESSARILY COMPLEX AND ERRONEOUS DEFINITION OF DERIVATIVE WORK

The parties agree that the Court should instruct the jury on the definition of derivative work. Oracle proposed a definition taken directly from the statutory definition. ECF No. 1703 (Parties' Joint Prop. Instr.) at 52. Google's proposed instruction, *id.* at 54, is a hodgepodge from the Model Instruction, § 101, § 103, Ninth Circuit law, and a treatise. Oracle objects to Google's proposed instruction for the reasons stated in its brief on disputed jury instructions, ECF No. 1707

---

[4] In *Seltzer*, the work was a poster of a painting of a screaming, contorted face. 725 F.3d at 1173. The defendant's work was a music video for a rock band in concert where the copyrighted image on the poster was "modified" by using a photo of a "weathered, slightly defaced, and torn poster," "adding a large red 'spray-painted' cross over the middle of the screaming face," altering "the contrast and color[,] and add[ing] black streaks running down the right side of the face." *Id.* at 1174. The Ninth Circuit found that the use was transformative because it was "not simply a quotation or a republication," but rather the alterations transformed a work about "youth culture, skateboard culture, and insider/outsider culture" to one "about religion." *Id.* at 1176-77.

at 44-45, incorporated herein by reference. Specifically, Google's instruction risks confusing the jury by introducing matters beyond the scope of its inquiry. For example, Google proposes to instruct the jury that "[t]he copyright in a derivative work extends only to the new material contained in the derivative work, as distinguished from any material from the pre-existing work that is included in the derivative work." ECF No. 1703 at 54. The jury need not determine the scope of copyright protection of derivative works. Factor four considers broadly "harm to the market for derivative works," not harm to only the portion of the derivative work that is independently copyright protected from the original work. *Harper & Row*, 471 U.S. at 568 (considering harm to "adaptation and serialization right[s]," not just the independently copyrightable elements of an adaptation or serialization (brackets omitted)).

Google's explanation of derivative works (at 8) is difficult to follow, but Google appears to use its definition of derivative work to sow confusion about factor four and to relitigate copyrightability of Java SE 1.4 and 5.0. *First*, Google suggests that elements in the 37 Java packages that in Java SE 1.4 and 5.0 may not be protected in those versions if they were in earlier versions of Java SE. G.Resp. 8. But the Federal Circuit has held that Java SE 1.4 and 5.0, including the declaring code and the SSO of the 37 Java API packages, are copyright protected, so any such argument by Google is foreclosed. As to derivatives of Java SE 1.4 and 5.0, Google's proposed instruction is about the copyrightability and copyrightable scope of the derivative works ("copyright in a derivative work extends only to the new material contained in the derivative," ECF No. 1703 at 54 (Google Prop. Instr. No. 18)). Derivative works are relevant here only in assessing market harm under the fourth factor, which does not call for the parsing that Google proposes.

*Second*, Google contends that Oracle must show that what makes Java ME a derivative of Java SE are the elements in the 37 Java API packages that Google copied in Android. *Id.* In other words, Google argues that the 37 Java API packages must be in Java SE, Java ME, and Android. *Id.*; *accord* G.Resp. 7 (any derivative works at issue "must be derivative works with respect to the elements of the 37 Java SE API packages used in Android"). Google provides no authority for that instruction, and Oracle is not aware of any. Oracle's proposed instruction, by contrast, which quotes verbatim from the Copyright Act's definition, provides the jury a

definition that requires that the derivative work be "based upon one or more preexisting works." ECF No. 1703 at 52 (Oracle's Prop. Instr. No. 18). That is the correct definition of derivative.

*Third*, contrary to Google's proposed instruction, nothing in *Harper & Row*, *Campbell*, or *Stewart* says that the only harm to derivative works under the fourth factor that matters is harm to the specific elements found in the original work, the derivative work, and the copied work. Nor would that make any sense. The fourth factor considers harm to derivatives because "the licensing of derivatives is an important economic incentive to the creation of originals." *Campbell*, 510 U.S. at 593. There is nothing that says the harm must be to the parts of the derivative work that were copied by defendant. The inquiry simply looks at "harm to the market for derivative works." *Id.* at 590.

## IV. THE FOURTH FACTOR INSTRUCTION SHOULD BE MODIFIED BUT NOT DELETED TO THE EXTENT GOOGLE PROPOSES

The parties agree that there are certain revisions to the proposed instruction on the fourth factor that should be made, ECF No. 1746, though Google goes too far when it says that three of the four paragraphs on the fourth factor should be deleted, G.Resp. 9. Google does not object to much of the instruction in those paragraphs, in particular it takes no issue with the irrelevance of "benefits from the use to the copyright owner outside the genre claimed to be harmed." ECF No. 1688 (Prop. Instr.) at 7:18-22. This instruction should remain.

Android is a derivative work of Java SE 1.4 and 5.0, and the jury is entitled to consider how Android harmed the market for the copyrighted works and derivatives thereof. Still, Oracle agrees that there is a potential for jury confusion by referring to Android as a derivative work while, at the same time, instructing the jury to take into account harm to derivative works. ECF No. 1744 (Oracle Resp.) at 7.[5] The instruction should be clarified to avoid possible confusion.

Oracle also agrees that an instruction that characterizes market harm based on the "market value" of the work "*before* the accused use and *after* the accused use," Prop. Instr. at 7:14-17, is not an accurate recitation of the market harm analysis under factor four. *See* ECF No. 1744

---

[5] Google's claim that "Oracle has no 'copyright interest in Android' whatsoever if Google's use was a fair use" is exactly why Google's proposed definition of transformation is so problematic; it risks eliminating the exclusive right of copyright holders to make and prepare derivative works.

(Oracle Resp. & Objs.) at 7-8.

Google proposes adding to the instruction that "[a] use can be fair even if it causes some market harm" and that the jury "should not consider any harm caused by transformative use, which does serve as a substitute for the original work," ECF No. 1703 (Parties' Joint Prop. Instrs.) at 45 (Google Prop. Instr.). *See* G.Resp. 9. Again, Google proposes an instruction without addressing any of the points raised by Oracle in its brief on disputed jury instructions, ECF No. 1707 at 39-40, incorporated herein by reference. In short, Google's proposed instruction is prejudicial, biased, and inconsistent with the Federal Circuit's ruling: "This [fourth] factor reflects the idea that fair use 'is limited to copying by others which does not materially impair the marketability of the work which is copied." 750 F.3d at 1376 (quoting *Harper & Row*, 471 U.S. at 566-67). "[T]o negate fair use one need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work." *Harper & Row*, 471 U.S. at 568. Similarly, Google's proposed instruction takes no account of its burden to show a lack of market harm, ECF No. 1707 at 39-40 (collecting authorities). And, Google's proposed instruction erroneously and prejudicially imports inapposite argument about transformation into the fourth factor that are entirely inapposite in this case. *Id.*

## V. GOOGLE'S COPYING OF THE DECLARING CODE AND SSO

Google argues that it cannot agree to an instruction that says "all agree" that Google's copying is copyright infringement unless fair use. Oracle would not oppose changing "all agree" to "it has been found" or "it has been determined" or stating that "Google has violated Oracle's copyrights unless …." or "Google has infringed Oracle's copyrights unless …." ECF No. 1703 at 13 (Oracle Prop. Instr.). Oracle cannot accept Google's proposal that the jury should be instructed to "assume" the accused Android versions use the declaring code and SSO of the 37 Java API packages. *Id.* at 15 (Google Prop. Instr.). No assumption is necessary. Google did copy the declaring code and the SSO of the 37 Java API packages and inserted them into Android. The first jury found as much; as did the Federal Circuit. Google admitted the same as to the new Android versions during discovery. Accordingly, the jury should not be given a watered down instruction that it should "assume" Google's copying.

ORACLE'S RESPONSE TO GOOGLE'S RESPONSE
RE: MODIFIED PROPOSED JURY INSTRUCTIONS

| | | |
|---|---|---|
| 1 | Dated: May 2, 2016 | Respectfully submitted, |
| 2 | | Orrick, Herrington & Sutcliffe LLP |
| 3 | | By: */s/ Lisa T. Simpson* |
| 4 | | Lisa T. Simpson |
| 5 | | Counsel for ORACLE AMERICA, INC. |