IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC.,

    Plaintiff,

  v.

GOOGLE INC.,

    Defendant.

No. C 10-03561 WHA

**MEMORANDUM OPINION RE GOOGLE'S MOTION *IN LIMINE* NO. 2 REGARDING NEW PRODUCTS**

## INTRODUCTION

In this copyright infringement action, the accused infringer seeks to exclude evidence relating to new implementations of its software platform that are not accused herein. The final pretrial order **GRANTED** defendant Google Inc.'s motion and ruled that evidence regarding Android Wear, Android Auto, Android TV, and Brillo would be excluded from the forthcoming trial. Now this memorandum explains the reasoning for that decision.

## STATEMENT

Plaintiff Oracle America, Inc., commenced this action against defendant Google Inc. in 2010, asserting claims that certain versions of Google's Android operating system infringed its copyrights in Java 2 Standard Edition versions 1.4 and 5.0. The case proceeded to trial and the jury found that Google infringed Oracle's copyrights but did not infringe its patents. The jury deadlocked on Google's fair use defense. The undersigned granted Google's motion for judgment as a matter of law, holding that the declaring code and the SSO of the 37 API packages were not entitled to copyright protection. The Court of Appeals for the Federal

1  Circuit reversed and remanded the case for further proceedings regarding Google's fair use
2  defense and Oracle's damages.
3      During the pendency of the appeal, Google's Android business expanded significantly.
4  Not only did Anrdoid gain more users, applications, and developers, but it also released
5  modified implementations and derivatives of Android for use in numerous device categories,
6  including wearable devices with small screens (Android Wear), dashboard interfaces in cars
7  (Android Auto), television sets (Android TV), and everyday devices with Internet connectivity,
8  such as household appliances or medical sensors, that comprise the so-called "Internet of
9  Things" (Brillo).
10      Google now moves to exclude evidence of Android Auto, Android TV, Android Wear,
11  and Brillo from the trial on remand, which will evaluate Google's fair use defense and, failing
12  that, Oracle's remedies.  This order follows full briefing and oral argument.

**ANALYSIS**

14      When this case returned on remand, Oracle sought to file a supplemental complaint for
15  the limited purpose of adding allegations concerning market harm and damages resulting from
16  new versions of Android released in the time since the first trial.  Oracle's supplemental
17  complaint, which Google did not oppose, alleged, *inter alia*, that Google had launched new
18  versions of Android for phones and tablets and expanded Android's adoption into new device
19  categories such as wearable devices, televisions, automobiles, and household appliances (Supp.
20  Compl. ¶¶ 5–9).
21      After the parties served their initial expert reports, Google moved to strike references in
22  Oracle's expert reports to additional versions of the Java platform that Oracle had not addressed
23  in any of the operative pleadings.  After a hearing on that motion, the Court ruled that this case
24  would proceed only with the versions of Java SE and Android addressed in the first trial plus
25  the Gingerbread, Honeycomb, Ice Cream Sandwich, Jelly Bean, KitKat, and Lollipop versions
26  of Android that had been released since the first trial, which Google had agreed would be
27  subject to the prior jury's adverse finding of infringement and which Oracle identified in its
28  supplemental complaint.  (The parties later stipulated to add the Marshmallow version of

Android, which Google released after Oracle filed its supplemental complaint.) The order on Google's motion to strike expressly held, "[a]mong possibly others, our trial will *not* include implementations of Android in Android TV, Android Auto, Android Wear, or Brillo. Nevertheless, if Oracle prevails at the trial and if an injunction is warranted, the equitable remedy might extend beyond the versions expressly in play in the trial pursuant to the ordinary scope of equitable relief" (Dkt. No. 1479 at 2).

In light of the prior order on the new implementations of Android, Google's second motion *in limine* seeks to exclude evidence of Android TV, Android Auto, Android Wear, and Brillo, as well as expert testimony about those products. Oracle contends that evidence of those products is relevant to the first fair use factor, which considers "the purpose and character of the use." 17 U.S.C. 107(1). Specifically, Oracle contends that Google's use of Android in new product categories in which Oracle already licensed derivatives of the copyrighted works demonstrates that Android was not a transformative use of the declaring code and SSO of the 37 API packages under the first fair use factor because it served the same function as Oracle's derivative works. Oracle also contends that evidence of the new products is relevant to the fourth fair use factor, which considers "the effect of the use upon the potential market for or value of the copyrighted work," because Oracle allegedly lost licensing revenue in those markets due to competition from Android. 17 U.S.C. 107(4).

Thus, Oracle argues, if it is unable to present evidence of Google's entrance into new product markets, the jury may overestimate the transformative nature of Android and underestimate the effect of Android on the market for Oracle's copyrighted works. Not so.

The issue in the first phase of this limited retrial is whether Google's use of 37 API packages from Java 2 SE 1.4 and 5.0 in its implementations of Android in phones and tablets constituted a fair use. There has been no determination that the implementations of Android in other product categories infringe, and the jury will not be asked to consider that question in our trial. Similarly, there will be no analysis of whether those new implementations constituted fair use (assuming they infringe). The market effect attributable to works that are not the subject of this action is irrelevant to the fair use analysis of the accused works. Similarly, any evidence

3

that the new implementations of Android superseded the copyrighted works (thus undermining transformativeness) has no bearing on whether the accused works superseded the copyrighted works.

Oracle cites *Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.*, 772 F.2d 505, 510 (9th Cir. 1985), for the position that the fourth fair use factor may consider "the consequence of Google's infringement, regardless of whether Android Auto, TV, or Wear infringe[]" (Pl.'s Opp. to Def.'s MIL No. 2 at 7). There, the accused infringer used the copyright owner's music in a ten-act revue but later removed the infringing act from the show. The accused infringer saw no decrease in revenue after removing the infringing act and thus contended its profits could not be attributable to the infringement. *Frank Music* held that the fact that the infringing act could be omitted without appreciable effect did not establish that the act was unimportant to the interest in the revue.

*Frank Music* did not involve fair use at all. Nor did it concern the copyright owner's actual damages. It concerned disgorgement of the accused infringer's profits attributable to the infringement. Here, Oracle seeks to introduce *de novo* evidence of harm in an entirely different set of product markets where there has been no determination that it suffered any harm in those markets due to the original implementations of Android at issue in this action. Neither *Frank Music* nor the plain language of Section 107 can be read to reach that far.

Oracle also cites Judge Richard Posner's decision in *Bucklew v. Hawkins, Ash Baptie & Co., LLP*, 329 F.3d 923, 933 (7th Cir. 2003), for the position that the calculation of the harm attributable to the infringement "will sometimes require tracing those profits into another [non-infringing] product." Like *Frank Music*, *Bucklew* concerned disgorgement, not fair use. Moreover, the tracing contemplated in *Bucklew* is not analogous to our case. In *Bucklew*, Judge Posner offered the example of an accused infringer that offered a verbatim copy of a book for free to anyone who paid $25 for a bookmark with a market value of fifty cents. In such a case, he noted, there may be a need to determine whether an accused infringer had shifted his profits to sales of a separate noninfringing product. Here, there is no indication that Google

4

launched its new products in an attempt to conceal the harm its initial Android products caused to the potential markets for Java 2 SE 1.4 and 5.0.  Thus, *Bucklew* offers Oracle no support.

Oracle contends that it could demonstrate that the implementations of Android in these new products also include the 37 API packages at issue in a three to five page motion for summary judgment, so their inclusion in this case will not require a mini-trial.  Oracle will be free to sue on these new products in the future, but for now we already have a long list of infringing products to impose on our jury and a line must be drawn somewhere to cabin the universe under consideration.  At all events, those new products remain irrelevant to consideration of whether Google's initial implementation of the declaring code and SSO of the 37 API packages constituted a fair use.  Oracle also contends that it would be odd to require it to present evidence of potential harm in the markets occupied by these new products regarding the fourth fair use factor when it has evidence of actual harm.  The strangeness of such evidence does not result from the exclusion of these implementations of Android, but rather from Oracle's attempt to draw in attenuated examples of market harm in product categories unaffected by the works accused herein.  Thus, limiting Oracle's contentions of harm in those markets to the effect of copying like Google's "if it should become widespread" is appropriate. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984).

Google also may not refer to those implementations of Android or otherwise argue for the inference that the use of the declaring code and SSO of the 37 API packages was transformative because of the potential to reach those product categories.

Oracle will be free to sue on those new products in a future trial after they have been shown to infringe.

## CONCLUSION

For the reasons stated above, the final pretrial order **GRANTED** Google's motion to exclude any evidence or expert testimony relating to Android Wear, Android Auto, Android TV, Brillo, or any other new implementations of Android in devices other than phones or tablets.

Dated:   May 2, 2016.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5