United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC.,

    Plaintiff,

  v.

GOOGLE INC.,

    Defendant.

No. C 10-03561 WHA

**MEMORANDUM OPINION RE ORACLE'S MOTION *IN LIMINE* NO. 1 REGARDING DR. OWEN ASTRACHAN**

## INTRODUCTION

In this copyright infringement action, the copyright owner seeks to exclude portions of the testimony of the accused infringer's technical expert on issues related to fair use and seeks partial summary judgment that the accused infringer's use was not transformative. The final pretrial order **GRANTED IN PART AND DENIED IN PART** plaintiff Oracle America, Inc.'s motion, ruling that Dr. Owen Astrachan may not offer testimony regarding his "understanding" that "transformativeness" means "opening new horizons," that he must be clear that his references to compatibility and interoperability relate only to the expectations and conventions of Java developers, and that he must not offer conclusions regarding the economic effect of Android on the market for Java. Now this memorandum opinion explains the reasons.

## STATEMENT

Plaintiff Oracle America, Inc., acquired the copyrights in Java 2 Platform, Standard Edition Version 1.4 and Java 2 Platform, Standard Edition Version 5.0, two versions of a

computer programming platform primarily for use on desktop computers from Sun Microsystems, Inc.

Our defendant Google Inc. copied the exact names and functions of 37 of the Application Programming Interface packages from Java 2 SE 1.4 and 5.0 and arranged them according to the same structure, sequence, and organization in its own operating system for mobile devices called Android. Although Google copied the names, functions, and SSO of those 37 API packages (by copying the headers for the methods and classes known as "declaring code"), it used different code to implement the functions of the 37 API packages in Android. That is, of the 37 API packages that Google replicated, 97 percent of the code therein was not copied from Oracle's copyrighted works.

Oracle commenced this action against Google in 2010, asserting claims that Google's Android operating system infringed its copyrights in Java 2 SE 1.4 and 5.0. The case proceeded to trial, and the jury found that Google infringed Oracle's copyrights but did not infringe its patents. The jury deadlocked on Google's fair use defense. The undersigned granted Google's motion for judgment as a matter of law, holding that the declaring code and the SSO of the 37 API packages were not entitled to copyright protection. The Court of Appeals for the Federal Circuit reversed and remanded the case for further proceedings regarding Google's fair use defense and Oracle's damages.

Oracle now moves to exclude portions of the testimony of Dr. Owen Astrachan, Google's expert on technical issues relating to fair use. Oracle also seeks partial summary judgment that Google's use was not transformative. This order follows full briefing and oral argument. (The Court held five hearings on the parties' motions *in limine* for a total of more than twenty hours of oral argument.)

## ANALYSIS

District courts are charged as the gatekeepers who evaluate the admissibility of expert opinion testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Rule 702 of the Federal Rules of Evidence permits a court to admit expert testimony that is (1) based upon

sufficient facts or data, (2) the product of reliable principles and methods, and (3) delivered by a witness who has applied the principles and methods reliably to the facts of the case. The admissibility of expert testimony turns on "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 591 (1993). The proponent of expert testimony has the burden of demonstrating its admissibility. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Oracle seeks to preclude Astrachan and Google in general from offering evidence or argument regarding whether Google's use of the declaring code and SSO from 37 API packages from Java constituted a "transformative" use. Oracle also seeks to exclude portions of Astrachan's testimony relating to whether Google needed to copy the 37 API packages to use the Java language and relating to the effect of Google's alleged infringement on the market for the copyrighted works. Each argument is addressed in turn.

### 1. TRANSFORMATIVENESS.

Oracle argues that Google cannot demonstrate that its use of the declaring code and SSO of the 37 API packages in Android is transformative because Google "ma[d]e no alteration to the expressive content or message of the original work." *Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339, 1374 (Fed. Cir. 2014). Google responds that by incorporating the declaring code and SSO into a smartphone operating system, it added new meaning to the copied portions of the original work (a feat that Oracle had failed to accomplish on its own).

On a nearly identical record to that before us now, the Federal Circuit concluded:

> [T]he parties disagree on whether [Google's] use is "transformative." Google argues that it is, because it wrote its own implementing code, and incorporated the packages into a smartphone platform. For its part, Oracle maintains that Google's use is not transformative because: (1) "[t]he same code in Android . . . enables programmers to invoke the same pre-programmed functions in exactly the same way," and (2) "Google's use of the declaring code and packages does not serve a different function from Java." While Google overstates what activities can be deemed transformative under a correct application of the law, we cannot say that there are no material

3

> facts in dispute on the question of whether Google's use is "transformative," even under a correct reading of the law. As such, we are unable to resolve this issue on appeal.

*Id.* at 1376. As did the court of appeals, this Court finds that there remains a dispute of fact as to the extent to which Google's use of the declaring code and SSO were transformative, and Astrachan's testimony regarding Google's incorporation of that code into a smartphone platform may help the jury resolve that dispute. Thus, as stated in the final pretrial order, Oracle's motion to exclude all evidence of transformativeness (really a motion for partial summary judgment in disguise) is **DENIED**.

Oracle contends that Astrachan applied an inaccurate standard when determining whether Google's use of the declaring code and SSO from the 37 API packages was transformative. Specifically, at his deposition, Astrachan testified (Astrachan Dep. at 163):

> I did not apply a specific test, but rather tried to understand this use as very similar to, in which case it wouldn't be transformational, or very different from an "opening new horizons" as it were. And those are words that I'm using now to try to convey the kinds of things I thought about in indicating that I believe this is transformational.

This does not purport to tell the jury what "test" to use under the law. In fact, it says no test was applied by Astrachan. Instead, Astrachan characterizes what Android did as opening a new horizon. The jury will be instructed on the proper scope of transformativeness under the law, and Astrachan's expert technical opinion about the alleged innovativeness of Google's addition of numerous features to the copied elements of Java 2 SE 1.4 and 5.0 may be helpful to the jury, notwithstanding his novel terminology (which did not appear in his opening report).

Astrachan will *not* be permitted to not offer testimony regarding his understanding of the law, *i.e.*, that "transformativeness" means "opening new horizons." Nevertheless, Astrachan *may* testify as to his belief that Android opened new horizons, which testimony could help the jury in assessing transformativeness.

4

### B.   NEED TO COPY.

The Federal Circuit expressly noted that "Google's competitive desire to achieve commercial 'interoperability' . . . may be relevant to a fair use analysis." *Oracle Am. v. Google, Inc.*, 750 F.3d 1339, 1376–77 (9th Cir. 2014). Similarly, it noted, "Google's interest was in accelerating its development process by leveraging Java for its existing base of developers. Although this competitive objective may be relevant to the fair use inquiry, we conclude that it is irrelevant to the copyrightability of Oracle's declaring code and organization of the API packages." *Id.* at 1372. Nevertheless, Oracle seeks to exclude the portions of Astrachan's testimony opining that Google needed to copy the declaring code and structure, sequence, and organization of the 37 API packages in order to achieve goals of interoperability. Specifically, Oracle takes issue with the following opinions offered by Astrachan:

- "[T]he 37 Java SE API packages are integral to the Java programming language and accordingly necessary to make effective use of the Java programming language" (Astrachan Reply Rpt. ¶ 24).

- "When Google chose the Java programming language . . . certain things naturally flowed from that decision — including using the method declarations from the Java APIs" (Astrachan Rpt. ¶ 162).

- "[T]he names and parameters of the APIs must be the same for many reasons . . . the Android platform is compatible with and provided the functionality of the Java language APIs at issue, and necessarily uses the same API names and organization in order to do so" (*id.* ¶ 250)

- "[E]ach implementation must include exactly the same method declaration, including all the elements of the declaration, . . . in order to be compatible" (*id.* ¶ 225).

- "In the Oracle JDK 1.5 implementation on the right, the first part of the first line of the implementation is the same as the Android implementation on the left . . . . Again, this similarity is required for compatibility" (*id.* ¶ 237).

- "The method name, return type, and parameter type . . . are again identical as they must be for compatibility and interoperability" (*id.* ¶ 239).

- "[O]ne small portion, [the declaring code] is required to be the same for purposes of compatibility and interoperability" (*id.* ¶ 249).

Oracle contends that because nothing in the rules of the Java language required Google to replicate the declaring code and the SSO in order to use the Java programming language (with

5

the exception of the core API packages identified by the Federal Circuit, including the 62 classes that *all* agree *were* necessary to use the Java language), Astrachan's opinions above are foreclosed as a matter of law. Similarly, Oracle notes that the Federal Circuit found "Google designed Android so that it would not be compatible with the Java platform, or the [Java Virtual Machine] specifically." *Oracle*, 750 F.3d at 1371. Thus, Oracle contends, Astrachan should not be permitted to testify that Google in fact needed to copy the declaring code and SSO of the 37 API packages in order to use the Java language or to serve the purpose of compatibility with the Java platform.

Google responds that Oracle has mischaracterized Astrachan's opinions. Astrachan summarized his conclusion as finding "that using the method declarations from the 37 API packages was reasonable for ensuring basic compatibility with the conventions of the Java programming language and expectations of programmers for a mobile platform" (Astrachan Rpt. ¶ 171). He did not opine as to compatibility with the Java *platform*, nor did he assert that any copying was necessary solely to enable use of the Java language. Contrary to Oracle, Astrachan's report does not contradict the findings of the Federal Circuit. The Federal Circuit particularly noted that beyond the core packages necessary to write programs in the Java language, "it may be that others of the packages were similarly essential components of any Java language-based program." *Oracle*, 750 F.3d at 1377.

Nevertheless, Astrachan must be clear about the scope and character of his opinion in order to avoid inviting the jury to draw any inferences contrary to the Federal Circuit's decision. Astrachan must clearly state that Android is *not* compatible or interoperable with the Java platform and that Google had no technical need to copy the declaring code and SSO in order to use the Java programming language, with the exception of the three core libraries addressed in the Federal Circuit opinion (which include sixty-two classes that *all* agree *were* technically necessary to use the language). Astrachan must further clarify that his testimony only relates to the compatibility with the conventions and expectations of developers using the Java programming language. Finally, Astrachan may not offer testimony based on the headings in his

6

report, which address "compatibility" and "interoperability" without regard to the limitations of those characteristics addressed above.

To the extent stated above, Oracle's motion to exclude his testimony regarding compatibility and interoperability is **GRANTED.**

### 3. ECONOMIC ANALYSIS.

Finally, Oracle seeks to exclude Astrachan's analysis of the fourth fair use factor because Astrachan is a technical expert, not an economics expert. The bulk of Astrachan's analysis of the fourth factor pertained to his field of expertise. For example, he opined that there was no technical barrier to Google's use of OpenJDK when it first launched Android and that the number of Java developers has increased over time because developers can use the Java language to create Android applications (Astrachan Rpt. ¶¶ 264, 270). Nevertheless, Astrachan did reach conclusions about the economic effects of certain events. Specifically, he opined that "Android is not a substitute for Java SE because that Java platform targets a substantially different market" (*id.* ¶ 256). Similarly, he stated, even if "Android could have had some effect on the potential market for Java, the effect would have come about as a result of Sun/Oracle's own actions" (*id.* ¶ 258). Finally, he concluded that "[t]here is evidence that Android positively affected the market for Java" (*id.* ¶ 270).

These particular opinions appear to be inferences about economic issues based on Astrachan's understanding of the technical differences between the copyrighted works and Android. Consistent with his lack of expertise in the field of economics, those conclusions were unsupported by any economic analysis. Indeed, Oracle notes that Astrachan failed to consider certain facts that might be relevant in any economics analysis such as the financial details of Oracle's licenses or the circumstances of a failed negotiation to implement Java SE in a tablet.

As stated, the bulk of Astrachan's opinion regarding the fourth fair use factor comprises useful expert analysis regarding the technical similarities and differences between Android and Java SE, the technical details of OpenJDK, and the interest of programmers in writing for Java. Nevertheless, Astrachan is not qualified to offer conclusions about the economic effects of

7

certain events. Accordingly, paragraph 256, the first sentence of paragraph 258, and the first sentence of paragraph 270 of Astrachan's report are hereby stricken, and any testimony based thereon is hereby excluded.

## CONCLUSION

For the reasons stated above, and as stated in the final pretrial order, Oracle's first motion *in limine* is **GRANTED IN PART AND DENIED IN PART**. Astrachan must be clear about the scope of his compatibility and interoperability conclusions. The following portions of Astrachan's report are stricken and any testimony based thereon excluded:

- Paragraph 256.
- The first sentence of paragraph 258.
- The first sentence of paragraph 270.
- The headings of his report.

Astrachan must be clear about the scope and character of his opinion in order to avoid inviting the jury to draw any inferences contrary to the Federal Circuit's decision. Astrachan must clearly state that Android is *not* compatible or interoperable with the Java platform and that Google had no technical need to copy the declaring code and SSO in order to use the Java programming language, with the exception of the three core libraries addressed in the Federal Circuit opinion (which include sixty-two classes that *all* agree *were* technically necessary to use the language). Astrachan must further clarify that his testimony only relates to the compatibility with the conventions and expectations of developers using the Java programming language. Finally, Astrachan may not offer testimony based on the headings in his report, which address "compatibility" and "interoperability" without regard to the limitations of those characteristics addressed above.

Dated: May 2, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8