ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. <br><br> Plaintiff, <br> v. <br> GOOGLE INC. <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE'S RESPONSE TO GOOGLE'S PROFFER RE: GNU (ECF No. 1767) AND COURT'S ORDER RE: OPEN SOURCE CUSTOM (ECF No. 1768)** |

**INTRODUCTION**

Google's proffer makes clear that it has no evidence that when it decided to copy Sun/Oracle's declaring code and SSO without a license, it relied on any understanding that it was customary to do so. That is because there is no custom. Google's proffer also shows that it did not rely on any belief that GNU Classpath or Apache Harmony's unlicensed copying was permissible. It was not, and Google knew it. Google tries to create a fiction of custom by repeatedly pointing to its *own* decision to copy. But Google's infringement is not a custom.

Because Google cannot show that it relied on either custom or the supposed permissibility of GNU Classpath and Apache Harmony when it made its decision to copy, its evidence on those topics are not probative of lack of willfulness. The Court should therefore be prepared to "restrict further evidence regarding custom under Rule 403" during the trial. *See* ECF No. 1748 at 5. The Court should also exclude evidence of GNU Classpath, as Oracle requested in its Motion in Limine #2. Finally, if Google's proffer is the best evidence of custom Google has to offer, the Court should not instruct the jury to consider custom as it is not supported by the facts of this case.

**I.   GOOGLE'S PROFFER DOES NOT ANSWER THE COURT'S QUESTIONS**

Evidence of custom can be dangerous. It was customary for some time to download music for free from Napster. Just last year, it was estimated that the season finale of HBO's Game of Thrones was illegally downloaded 14.4 million times, making it the most downloaded TV show for the fourth year in a row.[1] The top ten most illegally downloaded TV show episodes from last year totaled 48.5 million downloads. *Id.* Copyright infringement becoming widespread does not turn it into fair use. Indeed, widespread use that "would adversely affect the potential market for the copyrighted work" negates fair use. *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 568 (1985). To the extent custom plays any role at all in fair use it must be limited and not ensnare widespread copying that would adversely affect the markets for or value of the copyrighted work.

Moreover, because the notion of "custom" that Google relies on is based on implied consent, it should not include competing uses. Google's proffer cites *Wall Data*'s dicta that: "As we

---

[1] https://torrentfreak.com/game-of-thrones-most-pirated-tv-show-of-2015/

balance these factors, we bear in mind that fair use is appropriate where a 'reasonable copyright owner' **would have consented** to the use, i.e., where the 'custom or public policy' at the time would have defined the use as reasonable." *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) (emphasis added) (quoting Subcomm. on Patents, Trademarks & Copyrights of the Sen. Comm. on the Judiciary, 86th Cong., 2d Sess., Study No. 14, Fair Use of Copyrighted Works 15 (Latman) (Comm. Print 1960)).  Google itself ties its custom arguments to what a reasonable copyright owner would consent to.  ECF No. 1776 at 2.

But neither Google nor *Wall Data* discuss what a reasonable owner would *not* consent to.  That answer is supplied in the very next sentences of the legislative history showing that a reasonable copyright owner would not consent to a competing use: "It is well within the bounds of reasonableness for the copyright owner to consider important a use which competes with his own work.  A use having such an effect undermines the very basis of his quasimonopolistic protection."  As the Supreme Court explained, fair use at common law "*always* precluded a use that 'supersedes the use of the original.'"  *Harper & Row*, 471 U.S. at 550 (emphasis added, brackets omitted) (quoting *Folsom v. Marsh*, 9 F. Cas. 342, 344-45 (C.C. Mass.).  At common law, a reasonable copyright owner's consent never would have been implied for a commercial work that competed against it in the marketplace.  *Id.*  Taking "the most important parts of the work … to supersede the use of the original work … w[ould] be deemed in law a piracy," not a fair use.  *Id.* (quoting *Folsom*, 9 F. Cas. at 344-45).  That Android competes with the Java Platform negates the relevance of custom.  *Cf.* Tr. 2322:12 (Catz) ("It's pretty hard to compete with free.").

Moreover, at the time of the study cited in *Wall Data*, there was a debate surrounding whether to list customary uses such as criticism and news reporting in the statute.  *Supplementary Register's Report on the General Revision of the U.S. Copyright Law*, Ch.2, §C (1965) (discussing the history of proposed fair use statutes and recommending the fair use provision state only: "Notwithstanding the provisions of section 106, the fair use of a copyrighted work is not an infringement of copyright.").  Congress ultimately listed six specific reasonable and customary uses in the preamble, rather than leaving the issue for the courts to decide.  17 U.S.C. § 107 ("for purposes such as criticism, comment, news reporting, teaching (including multiple copies for class-

room use), scholarship, or research.")  Once Congress chose to identify specific customary uses, it is not proper for courts to add new customary uses as if Congress had adopted the more general form of the statute that it in fact rejected.

Google's "custom and public policy" argument is, in reality, an attempt to use parol evidence to avoid contract terms that Google did not want to abide.  Specifically, Sun, and now Oracle, provided a license to use the declaring code and write new implementing code—i.e., the Specification license.  TX 610.1.  Google did not want to comply with the provisions requiring it to build a compatible implementation, not add (superset) or subtract (subset) packages from the class library, and pass the TCK containing field-of-use restrictions for mobile devices.  Having failed to take and comply with the terms of the Specification license, Google seeks to avoid key contract terms through reliance on purported industry standard, custom, and usage.  Such tactics are barred under long-settled precedent.  "[W]here the terms of the contract are expressly and directly contrary to the precise subject matter embraced in the custom or usage, parol evidence of that custom or usage is not admissible." *Ermolieff v. R.K.O. Radio Pictures*, 19 Cal. 2d 543, 550-51 (1942).  Here, as explained in the briefing on Apache, the terms of the Specification license are crystal clear—and Google does not contend otherwise.  *See* ECF Nos. 1552 at 1-2, 1653 at 2.

Moreover, even if parol evidence were admissible, "a party to a contract may be bound by a custom not inconsistent with the terms of the contract, even though he is ignorant of the custom, if that custom is of such general and universal application that he may be conclusively presumed to know of the custom." *Miller v. Germain Seed & Plant Co.*, 193 Cal. 62, 69, 222 P. 817, 819 (1924).  Google's proffered evidence is—at best—two examples, each of which fails on its own merits.  But even accepting, arguendo, both of Google's examples, two examples hardly demonstrates the sort of general and universal application required to show a custom that would permit a party to circumvent stated licensing terms.

Yet setting aside the limited possible relevance of custom, Google did not answer the Court's questions.  Instead, it dumped over 30 citations on the Court without any context or explanation.  Indeed, Google's proffer is striking for what it lacks:  Google's evidence does not show that "anyone at Google, in making the decision to rely on Harmony, actually referred to any

- 3 -

ORACLE'S RESPONSE TO GOOGLE'S PROFFER
RE: GNU AND COURT'S ORDER RE: OPEN
SOURCE CUSTOM

custom or practice" or "to GNU Classpath." ECF No. 1748 at 5 (questions 1 and 2). Nor does Google explain "how GNU Classpath established a custom" of copying declaring code and SSO without a license or "how it will be proven" that Sun knew of such a custom. *Id.* at 6 (questions 3 and 4).

      **A.**      **Did anyone at Google, in making the decision to rely on Harmony, actually refer to any custom or practice?**

            **1.**      **Google's evidence does not show that anyone at Google referred to any custom or practice when deciding to use Harmony.**

None of Google's evidence shows that it relied on a belief that there was a custom of copying declaring code and SSO without a license when it decided to use portions of Apache Harmony. Not a single cited document or piece of testimony shows any aspect of Google's decision making process. The evidence does not come close to an "in house memo from Google that says something like this: We are going to use Harmony from Apache. It uses the identical Java APIs that we're interested in and uses the identical headers, but with different implementing code, but that's okay because it's customary to use -- carry those over." 4/27/2016 Hr'g Tr. 71:10-15.

The answer to the Court's first question is therefore "No." Nobody referred to any custom or practice when making the decision to use Apache Harmony. The reason for that is simple: there is no custom.

**Andy Rubin (Proffer at 3)**. Rubin's testimony was only that "industry stories" and "folklore … around Nintendo" formed his personal belief that "API's are not copyrightable." Folklore and unspecified stories do not create an industry custom. And more importantly, before litigation began, Rubin wrote in an email that "Java.lang apis are copyrighted," directly contradicting that testimony. TX 18.

**Thomas Kurian (Proffer at 3-4)**. Kurian's testimony reflects the undisputed fact that Apache was not licensed. That does not show any custom. And Rubin's statement to Kurian that Google did not need a license does not show reliance on anything, much less reliance on custom.

**Bob Lee (Proffer at 4).** Bob Lee's testimony is that someone *else* told him "there's lots of precedent for this." That is hearsay, and provides no actual examples of any custom. There is no way to know, for example, if that unknown "precedent" included accepting a license like the

- 4 -

ORACLE'S RESPONSE TO GOOGLE'S PROFFER
RE: GNU AND COURT'S ORDER RE: OPEN
SOURCE CUSTOM

1  Specification License or if a "clean-room implementation" would eliminate use of the declaring
2  code and SSO.

3  **Dan Bornstein (Proffer at 4)**.  Google points to no actual testimony, only what it *expects*
4  Bornstein to testify.  Moreover, Google's Rule 26 disclosures do not mention that Bornstein will
5  testify to reliance on the permissibility of Harmony or any industry custom.  Neither does
6  Google's Final Pretrial Conference Witness List.  *See* ECF No. 1709-3 at 2.  Mr. Bornstein
7  should not be permitted to testify about matters for which he was never disclosed.

8  **TX 200 (Proffer at 5)**.  This document does not mention Apache Harmony at all, much
9  less any part of Google's decision making process to use Apache Harmony.  At most, it shows
10 Google considering an infringing use of GNU Classpath.  The email's author also suggests using
11 GNU Classpath *by taking a license*.  TX 200 ("Classpath is licensed under GPL+Exception").  It
12 does not show any custom of copying the declaring code and SSO without a license.

13 **TX 2765 (Proffer at 5)**.  This document shows that *Google* provided Noser (a company it
14 hired to work on Android) with a list of packages it wanted, based in part on GNU Classpath and
15 Apache.  Google's own conduct does not create a custom.  Moreover, the document does not
16 show that Google thought its copying was legal or even customary.

17 **TX 2341 (Proffer at 5)**.  A quote from *Sun's* CEO does not show that *Google* relied on
18 any custom.  Moreover, as Oracle explained in its Apache Motion in Limine Reply (ECF No.
19 1653), Google ignores the next sentence of the article: "That is technically true, but Apache offi-
20 cials said that to do so with the TCK restrictions in place would actually go against the Apache
21 Software license." TX 2341.  "The TCK restrictions" are explained in the sentence preceding
22 Google's quote, which Google also, again, omits: "Apache said certain 'fields of use' restrictions
23 regarding the TCK were preventing it from adopting Sun's technology for use in Harmony."  *Id*.
24 That context is critical: Sun could only ship Harmony *if* it accepted the license restrictions and
25 passed the TCK.

26  **2.  Google did not rely on custom because none exists.**
27  Google has no evidence that it relied on any custom of unlicensed copying of declaring
28  code and SSO because no such custom exists.  Apache knew that Harmony's and Android's

ORACLE'S RESPONSE TO GOOGLE'S PROFFER
RE: GNU AND COURT'S ORDER RE: OPEN
SOURCE CUSTOM

copying were both illegal: "So, we are, in fact, infringing on the spec lead [i.e. Sun's] copyright if we distribute something that has not passed the TCK and *we know that*. This makes us *already* doing illegal things (in fact, Android using Harmony code is illegal as well)." TX 5046 at 2.[2]

Like Apache, Google also knew it was impossible to create an unlicensed open source version of the Java API Packages, as Apache had attempted. Andy Rubin, the head of Android at Google, wrote in an email: "I don't see how you can open [source] java without sun, since they own the brand and ip." TX 18. He further explained, as discussed above, that "Java.lang apis are copyrighted." *Id.* And a Google Senior Staff Software Engineer testified that he knew when he was at Andy Rubin's previous company Danger (between 2000 and 2004) that "Sun claimed copyright on the method signatures." Tr. 951:11-12 (Swetland). If Google thought its copying of declaring code was part of a custom that everyone thought was permitted in the industry, Rubin would have had no reason to instruct: "[D]ont demonstrate to any [S]un *employees or lawyers*." TX 29 (emphasis added).

At a minimum, Google knew that it could not use Harmony code on mobile devices. An internal email to Google's CEO explained long before Android's release: "Sun puts field-of-use restrictions in the Java SE TCK licenses which prohibit Java SE implementations from running on anything but a desktop or server. *These restrictions prevent Apache Harmony from independently implementing Java SE … not to mention Android* (*though that's water under the bridge at this point*)." TX 405 (emphasis added).

The Java Community Process[3] even considered a proposal in 2005 to pronounce copying declaring code either fair use or not fair use. GOOGLE-13-00033994. But it never reached a de-

---

[2] Apache also discussed a post from Sun discussing IP issues related to Apache Harmony. http://markmail.org/message/mt2wn4m3onvvoho4. That post explained: "[A]n incompatible implementation is not entitled to use the Java SE IP. This applies even if the incompatible implementation avoids use of any Java brands or Java trademarks. Having an incompatible implementation call itself "fred" does not magically resolve the IP issues!" https://svn.java.net/svn/jdk~svn/trunk/www/jse_ip_issues.html

[3] The Java Community Process is a "community of programmers and companies and individuals who, as a group, make contributions and develop Java." Tr. 302:21-22. Its Executive Committee "governs and decides the future of Java." Tr. 302:24-25.

1   cision.  That the JCP considered but never resolved the fair use issue demonstrates that there was
2   not, and is not, a custom of copying declaring code.
3        That is why Sun had a license specifically covering declaring code and SSO: the Specifi-
4   cation License.  TX 610.1.  It does not make sense that Sun would put license restrictions on cop-
5   ying declaring code and SSO if everyone in the industry believed no license was necessary.  It
6   makes less sense that companies would accept that license, including Apache itself.  *See* OA-
7   GOOGLE0004632503 at 2 (Apache email to Sun: "Through Apache Harmony, the ASF [Apache
8   Software Foundation] entered into the specification license in good faith."); TX 917 (complaining
9   that Sun would not allow Apache "to demonstrate compatibility with the Java SE 5 specification,
10  *as required by the Sun specification license for Java SE 5.*") (emphasis added).  And if Google
11  believed unlicensed copying of declaring code and SSO is permissible, it would not impose re-
12  strictions on copying *its own* declaring code.  For example, Google's terms and conditions for its
13  AdWords APIs in 2005 (TX 5250) stated:

> The AdWords API and the AdWords Specifications are, as applicable, the intellectual property and proprietary information of Google. Your right to use, copy and to retain your copy of the AdWords API and the AdWords API Specifications is contingent on your full compliance with this AdWords API Agreement.

17      No custom of copying declaring code and SSO without a license exists, and that is why
18  there is no evidence that Google relied on it.

19      **B.    Did anyone at Google, in making the decision to rely on Harmony, actually refer to GNU Classpath?**

20      Not one scrap of Google's evidence shows that when Google decided to rely on Harmony,
21  it referred to GNU Classpath.
22      **Andy Rubin (Proffer at 6)**.  Rubin testified that "GNU Classpath was another example of
23  someone doing what Apache Harmony was doing."  Rubin merely describes what GNU
24  Classpath is.  This testimony has nothing to do with any decision to use Harmony.
25      **Andrew McFadden** (**Proffer at 6)**.  McFadden only testified that Google decided *not* to
26  use GNU Classpath libraries.  Proffer at 6.  ("[W]e decided that wasn't going to work").  In fact,
27  omitted from Google's proffer is McFadden's testimony that GNU Classpath was a "non-starter

because of the GPL licensing." McFadden Depo. 37:13-14. The testimony Google cites does not even mention Apache Harmony, much less any reliance on GNU Classpath when deciding to use Harmony.[4]

**Documents (Proffer at 7).** The four documents Google cites at best only show that *Google* decided to look at code from GNU Classpath, if they show anything at all. Again, they do not show any reliance when making the decision to use Harmony. And as noted above, Google's own conduct cannot create a custom.[5] It is telling that the best contemporaneous documents Google could find to show that it relied on a belief that GNU Classpath's copying was permissible are code change logs that do not mention any belief or reliance on "custom" or anything else.

The answer to the Court's question is that Google only referred to GNU Classpath in deciding *not* to copy its declaring code and SSO. In addition to what is discussed above, when Google instructed Noser on what Noser could copy, it included Apache Harmony but did not include GNU Classpath. TX 2765 at 20. The reason was GNU Classpath's licensing terms. Dan Bornstein received an email asking whether "it is allow[ed] to 'copy' the JavaDocs [specifying the declaring code] from Classpath." GOOGLE-02-00077133. Bornstein responded: "Absolutely not. The Classpath code – including the comments – is covered by an incompatible license." *Id.* Problems with the licensing terms would not have been an actual problem if Google thought it could simply copy the declaring code and SSO without a license.

### C. How does GNU Classpath establish a custom that it was permissible to copy Java declaring code and SSO?

Google flooded the Court with numerous documents and testimony showing the exact same fact: that GNU Classpath did not have a license. (And many of the documents have no relevance, because they refer to, for example, the virtual machine or development tools like Eclipse. *See* Proffer at 10). It is important to remember that GNU Classpath was not a commercial endeavor. Google repeating the existence of GNU Classpath over and over again in a brief does not

---

[4] Nor has Google submitted any evidence that Android was derived or based on GNU Classpath, thereby foreclosing any attempt by Google to make any implied license argument based on GNU Classpath.

[5] Additionally, Google provides no citation for its "multiple PERFORCE change logs." Proffer at 7.

1  create a custom of copying declaring code without a license for a commercial purpose, as Google
2  did in this case.  Nor does Sun/Oracle's choice not to sue GNU Classpath for its noncommercial
3  use show any custom of copying declaring code without a license.  As the Supreme Court ex-
4  plained, it is not "incumbent on copyright owners … to challenge each and every actionable in-
5  fringement."  *Petrella v. MGM, Inc.*, 134 S. Ct. 1962, 1976 (2014).

6  There is nothing wrong with allowing non-profits like GNU to tinker with the code.  But
7  when Sun learned that an entity in Korea was using GNU Classpath "commercially and not just
8  as a research project," Sun "immediately engaged" and enlisted the "government[s]" of "the
9  United States and South Korea" to stop the commercial infringement.  Smith Dep. at 238:2-239:9;
10 *see also* TX 5246 (Email to Korean entity: "[I]t is beyond a shadow of a doubt, that using the
11 GNU Classpath derivative work to develop the WIPI Specification will not avoid copyright in-
12 fringement.  I would like to finally note that Sun's decision on whether to take action against
13 GNU … is orthogonal to our IPR claims.").  And that is just one example.  But Oracle does not
14 need to sue each and every small non-commercial entity that uses GNU Classpath in order to
15 maintain its rights.  Oracle may not even catch each and every small entity using GNU Classpath.
16 Google's evidence will create confusion, mislead the jury, and burden Oracle with having to ex-
17 plain the stark contrast between random GNU Classpath users and Google's Android with its
18 massive commerciality.

19 Moreover, Oracle stopped both GNU Classpath and Apache without the need for litiga-
20 tion.  Oracle created its own open source version of Java, OpenJDK, under the same license as
21 GNU Classpath, the GPLv2 with Classpath Exception.  "The reason for [GNU Classpath's] exist-
22 ence simply disappeared when Sun released OpenJDK under GPL" because "once Sun released
23 OpenJDK under GPL, then open source programmers had a GPL version they could use."  Tr.
24 531:17-20.  Similarly, "IBM and Intel, who were the primary contributors of the source code in
25 Apache Harmony … moved their source code contributions to OpenJDK."  Tr. 403:9-11.

26 Accordingly, the answer to the Court's question is that GNU Classpath does not establish
27 a custom that it was permissible to copy the declaring code and SSO.

28

**D.     Did Sun know of this custom or practice?**

If the evidence Google presents is relevant at all, it only shows the undisputed fact that Sun was aware of GNU Classpath. As discussed above, GNU Classpath did not create a custom on its own, and Sun/Oracle were within their rights not to sue a non-profit but rather take action only when GNU Classpath spread to commercial uses.

But Google's evidence shows something else as well: that it will present documents that say the words "GNU Classpath" in a way that will confuse the jury. Exhibit 7620, for example, shows a project that *accepted Sun's open source license*. Proffer at 13; TX 7620 (IcedTea project … is based on OpenJDK). But because it mentions GNU Classpath, Google proffers it as evidence of custom, and will do so again before the jury.

## II.    GOOGLE DID NOT COMPLY WITH SUN'S OPEN SOURCE REQUIREMENTS

The Court additionally ordered Oracle to address the Court's concerns that it "understood open-source to still have licensing restrictions, which included, if you downloaded the open-source code, (i) donating back to the open-source public all improvements by the downloader, and (ii) not selling for profit your own version of what you downloaded." ECF No. 1768. In particular, the Court asked whether "these conditions [are] part of the open-source custom." *Id.*

The Court is correct that open source software has licensing restrictions. But there is no "customary" open source license. For example, the Open Source Initiative lists over 75 different open source licenses on its website, each with different requirements.[6]

Sun/Oracle selected the General Public License Version 2 with Classpath Exception ("GPLv2+CE") as its open source license for the Java class libraries.[7] Two important provisions of that license are what the Court mentioned in its order: (1) donating back and (2) not charging a fee for source code. But it also contains a third important requirement: that any modifications and improvements must be released *under the same license*. Take, for example, the hypothetical Developer Adam who accepts the GPLv2+CE license in order to make modifications to OpenJDK source code. When he distributes that code in his product, he must license those modifications

---

[6] https://opensource.org/licenses/alphabetical

[7] http://openjdk.java.net/legal/gplv2+ce.html

1 under the same GPLv2+CE license (that has the "same license" requirement). So when Develop-
2 er Beth wants to make modifications to Adam's code, she must also accept Adam's GPLv2+CE
3 license. She too, therefore would be required to distribute her new modifications under the
4 GPLv2+CE license. In this way, the license and its requirements are maintained for all "down-
5 stream users" of OpenJDK.

Google did not comply with this "same license" requirement. It licenses Android under a completely different license than Sun/Oracle's open source license which does not have a contribution back requirement. Google's license, the Apache License, "is not compatible with GPL version 2."[8] *See also* Tr. 1747:18-19 ("We couldn't technically merge licenses. It would have been a conflict to merge these two licenses."); ECF No. 1713-1 (documents and testimony showing Google rejecting Sun/Oracle's license). That was a conscious decision by Google, because it recognized that the OEMs—Google's downstream users—would *not* want to release their changes to the public.[9] In this way, OEMs can attempt to gain an advantage over each other by differentiating their code.

So while there is no "custom" of open source license requirements, Google did not comply with the open source license requirements that Sun/Oracle selected.

## CONCLUSION

Google's proffer does not demonstrate any evidence of a custom of copying declaring code and SSO, much less a reliance on any belief that GNU Classpath's copying was permissible. Accordingly, evidence of GNU Classpath should be excluded.

---

[8] http://www.gnu.org/licenses/license-list.en.html#GPLCompatibleLicenses

[9] http://arstechnica.com/uncategorized/2007/11/why-google-chose-the-apache-software-license-over-gplv2/

- 11 -

ORACLE'S RESPONSE TO GOOGLE'S PROFFER
RE: GNU AND COURT'S ORDER RE: OPEN
SOURCE CUSTOM

| | |
|---|---|
| Dated: May 2, 2016 | Respectfully submitted,<br><br>Orrick, Herrington & Sutcliffe LLP<br><br>By: */s/ Gabriel M. Ramsey*<br>      Gabriel M. Ramsey<br><br>Counsel for ORACLE AMERICA, INC. |