IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC.,

    Plaintiff,

v.

GOOGLE INC.,

    Defendant.

No. C 10-03561 WHA

**PENULTIMATE JURY INSTRUCTION ON FAIR USE**

Below please find a near-final instruction on fair use, modified after a review of counsel's second round of critiques (and replies). The Court thanks counsel for their input. By **NOON ON MAY 4**, counsel may file a further critique limited to three pages per side (but counsel may rest if they wish on their prior critiques). In light of the many pages of objections previously filed, the three-page limit aspires to concentration on the most critical points.

The Court will pre-instruct the jury. The final instructions at the end of phase one will be changed to reflect the way the case comes in and/or for clarifications. Counsel should *not* claim later they tried their cases in reliance on the exact pre-instructions, for they are subject to change. For the time being, no reference will be made to "custom" in the fair use instruction until such time as a sufficient factual predicate for one is shown.

\*        \*        \*

In this trial, it has already been established that the Android versions in question used aspects of Java 2 Standard Edition Version 1.4 and Java 2 Standard Edition Version 5.0,

specifically using the declaring code and the structure, sequence, and organization of 37 Java API packages. The pertinent Android versions were: 1.0, 1.1, Cupcake, Donut, Eclair, Froyo, Gingerbread, Honeycomb, Ice Cream Sandwich, Jelly Bean, Kit-Kat, Lollipop, and Marshmallow. Even though the Java programming language was freely usable by Google and others, Google's use of the declaring lines of code and the structure, sequence, and organization of those 37 API packages constituted copyright infringement under the federal Copyright Act of 1976 unless you find that Google has carried its burden as to the defense of fair use. In other words, for purposes of this trial, it has already been established that Google used certain aspects of copyrighted works, and the question remaining for you to decide is whether or not Google's use was a fair use. There is no contention, however, that Google copied the implementing code for the 37 APIs. The point of contention is over the declaring lines of code for each method within the 37 APIs, also known as the header lines, which Google concededly used in Android, as well as the structure, sequence, and organization of these 37 APIs.

Now, I will explain what fair use means under the law.

One policy behind our copyright law, of course, is to protect the compositions of authors from exploitation by others. When it applies, however, the right of fair use permits the use of copyrighted works by others without the copyright owner's consent. The policy behind the right of fair use is to encourage and allow the development of new ideas that build on earlier ones, thus providing a counterbalance to the copyright policy to protect creative works. Since the doctrine of fair use is an equitable rule of reason, no generally accepted definition is possible, and each case raising the question must be decided on its own facts. And, in this dispute between Oracle and Google, that question falls to you for decision.

Under the Copyright Act of 1976, an author owns the exclusive right to use or to license his or her writings or images or other copyrightable works with the statutory exception that anyone may make fair use of even a copyrighted work and may do so without anyone's permission and without notice to anyone. Specifically, the Act states (and I will quote it exactly):

> The fair use of a copyrighted work for purposes such as criticism, comment, news reporting, teaching (including multiple copies for

2

classroom use), scholarship or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include —

    1.    The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

    2.    The nature of the copyrighted work;

    3.    The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

    4.    The effect of the use upon the potential market for or value of the copyrighted work.

I have just quoted for you the right of fair use exactly as enacted by Congress in 1976. In your deliberations, you must decide whether or not Google has met its burden in this trial to prove that its copying was a fair use. Now I will further explain each of the four statutory factors.

The first statutory factor concerns the purpose and character of the accused use. This factor includes these issues: (1) whether and to what extent the accused use serves a commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which weighs in favor of fair use, and (2) whether and to what extent the accused work is "transformative," which supports fair use. Although the Act does not explicitly use the word "transformative," the courts uniformly hold that the first statutory factor calls for an evaluation whether and to what extent the purpose and character of the accused work is transformative.

What does transformative mean? A use is transformative if it adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message rather than merely superseding the objects of the original creation. New works have been found transformative when they use copyrighted material for purposes distinct from the purpose of the original material. A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or, where the copyrighted elements remain unchanged from the original, a defendant uses them in a different context such that the original work is transformed into a new creation. A work is not transformative where the user makes no alteration to the expressive content or message of the original work. The extent of

3

transformation may vary from case to case. The greater the transformation, the more likely an accused use will be a fair use, and the less the transformation, the less likely an accused use will qualify as a fair use.

In evaluating the first statutory factor, the extent of the commercial nature of the accused use must be considered, as stated. In this case, all agree that Google's accused use was commercial in nature but disagree over the extent. Commercial use weighs against a finding of fair use, but even a commercial use may be found (or not found, as the case may be) to be sufficiently transformative that the first statutory factor, on balance, still cuts in favor of fair use. To put it differently, the more transformative an accused work, the more other factors, such as commercialism, will recede in importance. By contrast, the less transformative the accused work, the more other factors like commercialism will dominate.

Also relevant to the first statutory factor is the propriety of the accused infringer's conduct because fair use presupposes good faith and fair dealing. Where, for example, the intended purpose is to supplant the copyright holder's commercially valuable right of first publication, good faith is absent. Under the law, if the use is otherwise fair, then no permission need be sought or granted. Thus, seeking or being denied permission to use a work does not weigh against a finding of fair use.

The second statutory factor is the nature of the copyrighted work. This factor recognizes that traditional literary works are closer to the core of intended copyright protection than informational works, such as instruction manuals. Creative writing and expression lie at the very heart of copyright protection, so fair use is generally more difficult to establish for copying of traditional literary works than for copying of informational works. The focus of this statutory factor is on how close the used material is to the core values of copyright protection. The less the used material implicates the core values of copyright protection, the more viable will be fair use and vice versa.

In this case, it is undisputed that the declaring code and the structure, sequence, and organization of the 37 API packages at issue were sufficiently creative and original to qualify for copyright protection. "Original," as the term is used in copyright, means only that the work

4

was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. The extent to which the 37 API elements in question here involved greater creativity than the minimum required to obtain copyright is disputed and is open for you to examine. That is, you should consider the extent to which the used material were creative and original versus functional.

Even though a computer program performs functions and has functional elements, the structure, sequence, and organization of a computer program may be (or may not be) highly creative. When there are many possible ways to structure, sequence, and organize a program, the particular way chosen by a copyrighted program and even individual lines of declaring code may be (or may not be) highly creative. On the other hand, when the declaring code and the structure, sequence, and organization are dictated by functional considerations such as efficiency, compatibility, or industry standards, then less creativity is indicated and the core values of copyright protection are less implicated. When purely functional elements are embedded in a copyrighted work and it is necessary to copy associated creative elements in order to utilize those functional elements, then this circumstance also favors fair use. Conversely, copying creative expression that is not necessary to perform the functions cuts against fair use.

Google, of course, had the right to write its own code to perform any function it wished because no one can get a copyright on a general method of operation (other than to get a copyright on its specific implementation for that function). Unless it was a fair use, however, Google did not have the right to use the exact lines of declaring code and the overall structure, sequence, and organization of the 37 API packages, as copyrighted by Sun (and now owned by Oracle). Because Google was free to use the Java programming language to write Android, you should also consider the extent to which you find it was necessary for Google to use any or all of the declaring code and structure, sequence, and organization of any of the 37 API packages to write in the Java language. Such a finding, to that extent only, would support fair use; to the extent you find it was not necessary, however, that finding would disfavor fair use. This consideration also bears on the third statutory factor, to which I will now turn.

5

The third statutory factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole, which concerns how much of the overall copyrighted work was used by the accused infringer. Analysis of this factor is viewed in the context of Oracle's copyrighted works, namely Java 2 Standard Edition Versions 1.4 and 5.0, not Android. The fact, if true, that a substantial portion of an infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to whoever seeks to profit from marketing someone else's copyrighted work. Wholesale copying does not preclude fair use per se but copying an entire work militates against a finding of fair use. If the secondary user only copies as much as is necessary for a transformative use, then this factor will not weigh against him or her. The extent of permissible copying varies with the purpose and character of the use, which relates back to the first statutory factor.

In assessing this third statutory factor, both the quantity of the material used and the quality or importance of the material used should be considered.

The fourth and final statutory factor is the effect of the accused infringer's use on the potential market for or value of the copyrighted work. This factor militates against fair use if the accused use materially impairs the marketability or value of the copyrighted work. This is the single most important statutory factor, but it must be weighed with all other factors and is not necessarily dispositive. This factor considers whether the accused work is offered or used as a substitute for the original copyrighted work. This factor considers not only the extent of any market harm caused by the accused infringer's actions but also whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for the copyrighted work. Market harm to the value of the copyrighted work may be a matter of degree, and the importance of this factor will vary not only with the amount of harm shown, but also with the relative strength of the showing on the other factors.

In connection with the fourth statutory factor, the term "potential market for or value of" refers to the value of the entire copyrighted work itself and licensing opportunities for the copyrighted work via derivative works. A derivative work is a work based upon one or more

preexisting copyrighted works, such as a musical arrangement based on a book, or a dramatization based on a book, to name only two specifics, or any other form in which a work may be recast, transformed, or adapted. In this case, the copyrighted works in suit are Java 2 Standard Edition Versions 1.4 and 5.0, so the only derivatives that count are those derived from those two works.

In making your evaluation under the fourth factor, you should assess the harm, if any, to the potential market for or value of the copyrighted work itself and to its licensing value for derivative works. The broader potential market for products that feature independent elements in addition to the copyrighted material and their successes and/or failures may be considered by you only insofar as they shed light on the licensing or market value of the copyrighted work itself and its derivatives. In doing this, moreover, we ignore benefits from the use to the copyright owner outside the genre claimed to have been harmed.

Actual present harm need not be shown. Nor is it necessary to show with certainty that future harm will result. What is necessary is a showing by a preponderance of the evidence that some meaningful likelihood of future harm exists. If the intended use is for commercial gain, that likelihood may be presumed except where the second use is transformative because in cases of transformation, market substitution is at least less certain and market harm may not be so readily inferred.

I have now completed my explanation of the four factors in the Act. You might ask, are we limited to these four factors? The Act states that the factors to be considered "include" the four statutory factors, and the law holds that those four factors are not exclusive and you may consider any additional circumstances and evidence, pro or con, that, in your judgment, bear upon the ultimate purpose of the Copyright Act, including protection of authors and the right of fair use, namely, to promote the progress of science and useful arts.

It is up to you to decide whether all relevant factors, when considered fully and together, favor fair use or disfavor fair use. All of these factors must be explored, discussed, and evaluated by you. No single factor is dispositive. Your evaluation of all factors must be weighed together in light of the purpose of copyright, which as our Constitution states, is to

1  promote the progress of science and useful arts.  Some factors may weigh in favor of fair use and
2  some against fair use, and you must decide, after giving the factors such weight as you find
3  appropriate based on the evidence, whether or not, on balance, Google has shown by a
4  preponderance of the evidence that they predominate in favor of fair use.

Dated:  May 3, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE