1  KEKER & VAN NEST LLP
   ROBERT A. VAN NEST - # 84065
2  rvannest@kvn.com
   CHRISTA M. ANDERSON - # 184325
3  canderson@kvn.com
   DANIEL PURCELL - # 191424
4  dpurcell@kvn.com
   633 Battery Street
5  San Francisco, CA 94111-1809
   Telephone:    (415) 391-5400
6  Facsimile:    (415) 397-7188

7  KING & SPALDING  LLP
   BRUCE W. BABER (pro hac vice)
8  bbaber@kslaw.com
   1180 Peachtree Street, N.E.
9  Atlanta, Georgia  30309
   Telephone:    (404) 572-4600
10 Facsimile:    (404) 572-5100

11 Attorneys for Defendant
   GOOGLE INC.
12

13             UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

15             SAN FRANCISCO DIVISION

16 ORACLE AMERICA, INC.,                    Case No.  3:10-cv-03561 WHA

17          Plaintiffs,                     **GOOGLE INC.'S OPPOSITION TO
                                            ORACLE'S MIL 2 RE: ORACLE'S USE
18       v.                                 OF APIS**

19 GOOGLE INC.,                             Trial Date: May 9, 2016
                                            Dept:       Courtroom 8, 19th Fl.
20          Defendant.                      Judge:      Hon. William Alsup

21

22

23

24

25

26

27

28

GOOGLE INC.'S OPP. TO ORACLE'S MIL 2 RE ORACLE'S USE OF APIS
Case No.  3:10-cv-03561 WHA

1055734

## I. INTRODUCTION

Google's proffered testimony about Oracle's own reimplementation of APIs and Dr. Eric Schmidt's Congressional testimony should not be excluded.  The custom and practice of the industry at the time of Google's reimplementation of the declarations/SSO will be front and center in the retrial because it is relevant to fair use and because Oracle claims that Google knowingly, willfully, and in bad faith violated the law.  Google will defend that charge in part by showing that the industry custom and practice of the time was that the declarations/SSO could be freely used.  This Court has already stated that evidence of such industry custom and practice is relevant to Google's claim of fair use.  *See* ECF 1748 at 3 (citing *Wall Data Inc. v. L. A. Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006)).  The Court so held because fair use may be "appropriate where a 'reasonable copyright owner' would have consented to the use, i.e., where the 'custom or public policy' at the time would have defined the use as reasonable."  *Wall Data*, 447 F.3d at 769, 778.  Evidence of Sun/Oracle's *own* conduct at the time of the creation of the relevant declarations/SSO and in the years leading up to Google's reimplementation is definitely helpful.  It is highly probative of the state of the industry, and relevant to the jury's assessment of what a reasonable copyholder would expect and accept.

Oracle's motion *in limine* to exclude evidence of Sun/Oracle's conduct is part and parcel of its broader assault on evidence of industry custom and practice at the time of Google's reimplementation.  In addition to this MIL, Oracle has also tried to exclude evidence of Apache Harmony and GNU Classpath.  ECF 1552.  The Court should not countenance Oracle's campaign to deprive the jury of relevant and reliable evidence regarding the state of industry custom and practice.  Such evidence is highly probative, and there is no danger of prejudice, juror confusion, or wasted time.  *See* Fed. R. Evid. 402, 403.

## II. EVIDENCE OF CUSTOM AND PRACTICE REGARDING THE APIS IS HIGHLY PROBATIVE AND NOT UNDULY PREJUDICIAL OR COMPLEX

### A. The posture of this case has changed since the first trial.

When Oracle first moved to exclude evidence of its own API reimplementation and Dr. Schmidt's Congressional testimony, it focused primarily on the relevance of the evidence to the

GOOGLE INC.'S OPP. TO ORACLE'S MIL 2 RE ORACLE'S USE OF APIS
Case No.  3:10-cv-03561 WHA

1055734

1    copyrightability question.  *See* ECF 665 at 2 ("The Court's recent order on the copyright claims in

2    this case highlights the need to analyze specific elements of the works at issue when determining

3    copyrightability.").  The Court granted Oracle's motion and excluded such evidence.  ECF 676 at

4    6-7.

5           Unlike in the 2012 trial, the new jury will need to consider only one issue in the first phase

6    of trial: whether Google's use of the declarations/SSO was fair use.  Now that the issues have

7    been narrowed, evidence of industry custom and practice is more relevant than ever.

8           Oracle plans to argue that Google knowingly and willfully infringed Oracle's copyright:

9           ***"Google chose to engage in a course of conduct that is in clear violation of the
10          law."***

11          ***"Google knew that those APIs were protected property under the copyright laws
            of the United States. And they knew that they needed written permission in the
12          form of a license."***

13          Google ***"knew the entire time that the APIs were protected and copyrighted and
            that copying without a license was not right."***

14   Feb. 24, 2016 Tr. 25:6-9; 29:13-16; 30:5-7.

15          ***"Google knew that the Java 'apis are copyrighted,' TX 18, and that it '[m]ust
            take [a] license from Sun.'"***
16
            ***"Google knew from the start that the Java API packages are copyright protected
17          and that it needed a license."***

18          ***"In short, from 2005 until litigation in 2010, Google always knew it '[m]ust take
            a license from Sun.'"***
19

20   ECF 1708, Oracle's Trial Brief, at 22, 35, 41.

21          Oracle's own contentions demonstrate its insistence on injecting arguments about

22   Google's alleged bad faith.  In this context, Google should be permitted to defend itself by

23   introducing highly relevant evidence of industry custom and practice from Sun/Oracle itself.

24          Further, any risk of additional complexity or delay does not carry the same weight it might

25   have had in the 2012 trial.  The first jury had to navigate a much broader legal and factual

26   landscape.  This jury will be focused on the fair use factors.  Google will present distinct

27   evidentiary examples regarding the custom and practice of reimplementation of the APIs, and

28   Oracle will have ample opportunity to attack the weight of that evidence.  Accordingly, the

GOOGLE INC.'S OPP. TO ORACLE'S MIL 2 RE ORACLE'S USE OF APIS
Case No.  3:10-cv-03561 WHA

1055734

1    evidence should not be excluded.

2    **B.      Oracle's own copying is highly probative of industry custom and practice.**

3    Google intends to defend against Oracle's charge of knowing and willful infringement by,

4    *inter alia,* putting on evidence that its use of the declarations/SSO was consistent with industry

5    custom and practice.  Sun/Oracle's own conduct with respect to reimplementation of third parties'

6    APIs is one example of those practices.  The evidence that Oracle seeks to exclude is relevant to

7    the jury's consideration of whether Google's actions represented a radical and bad faith departure

8    from industry custom or whether they were "reasonable [] under the circumstances." Ninth

9    Circuit Model Civil Jury Instruction 17.18.

10   By moving to exclude evidence of industry custom and practice, Oracle seeks to have its

11   cake and eat it too.  On the one hand, Oracle wants to argue that Google *knew* it was acting

12   unlawfully when it used the declarations/SSO.  On the other hand, Oracle does not want Google

13   to present evidence that as of 2006, it was reasonable for Google to think using the

14   declarations/SSO was permissible.  Oracle's position is untenable.  In this fair use retrial,

15   evidence of industry custom and practice is highly relevant, and Sun/Oracle's own practices are

16   probative.  Given that Oracle will seek to introduce purported evidence and argument that Google

17   "chose" to act "in clear violation of the law," it would be manifestly unfair to bar Google from

18   introducing evidence of Sun/Oracle's past actions that directly contradict that position.  Oracle

19   cannot have it both ways.

20   Oracle argues that its own copying of APIs is different because its reimplementations of

21   VisiCalc, SQL, and Linux APIs have supposedly not been found to involve copyrighted

22   materials.  ECF 1755 at 3.  Oracle misses the point.  Google is not trying to somehow re-litigate

23   copyrightability by pointing to other instances of reimplementations.  Rather, Google seeks to

24   establish the industry practice leading up to Google's use of the declarations/SSOs in order to

25   show that Google was operating in good faith.  As the company that created the Java platform,

26   Sun/Oracle's own behavior is highly relevant to then-existing practices.  The relevance of

27   Sun/Oracle's actions does not turn on a showing that third parties asserted copyrights over the

28   APIs Sun/Oracle copied, but rather on a showing that Oracle did in fact copy.

3

1055734

1    Further, Oracle's argument suffers from 20/20 hindsight. Oracle ignores the fact that at

2  the time of Google's reimplementations, both Google and Sun (like the industry at large) believed

3  that it was permissible to reimplement APIs so long as no implementing code was copied. That

4  reasonableness of Google's belief is in informed by industry custom and practice generally, and,

5  in particular, Sun's actions. The history of this case makes clear that any alleged impropriety of

6  Google's actions could not possibly have been obvious at the time. Oracle's argument that its

7  own behavior was different because of the Federal Circuit's much-later ruling is an *ex post facto*

8  justification that sweeps aside the facts on the ground at the time.

9    Oracle also argues that the evidence of Sun/Oracle's reimplementations is not relevant

10 because it predates Google's reimplementation of the APIs. But the further back in time the

11 reimplementations were carried out, the longer the established custom and practice existed.

12 Oracle points to no change of circumstances or new information disseminated between its own

13 reimplementations and Google's reimplementation that changed or altered what was already well

14 accepted industry custom and practice. Indeed, Oracle offers its own extensive expert testimony,

15 ***including pre-2006 evidence***, on past industry and Sun/Oracle practices regarding APIs. *See,*

16 *e.g.*, ECF 1560-11 (Kemerer 2/8/16 Rpt.) ¶¶ 145-170 (citing evidence throughout 1980s and

17 1990s), ¶ 201 (citing Sun actions in 2003).

18   Further, the general practice of reimplementation of APIs (beyond Java) is relevant to the

19 custom across the programming industry. As Dr. Astrachan opined, "re-implementation of APIs

20 is a common practice across languages and platforms." ECF 1563-4, ¶ 272. Dr. Cattell

21 concurred: "Re-implementing APIs is commonplace in the computing industry, and has long been

22 consistent with custom and practice in the computing industry." ECF 1614-12 (Cattell Rpt.) ¶ 31.

23 The Sun/Oracle reimplementations are probative evidence of this industry-wide practice.

24   Oracle also raises the false specter of a mini-trial on whether (1) its conduct was "an

25 infringement," and (2) "how it differs from Google's copying here." ECF 1755 at 6. As to the

26 first point, there will be no need for Oracle to defend itself, because Google's experts do ***not***

27 opine that Sun/Oracle's reimplementations of APIs constituted infringement and Google does ***not***

28 intend to argue that Sun/Oracle's implementations were unlawful. *See* ECF 1563-4 (Astrachan

4

1055734

1   Op. Rpt.), ¶¶ 281-305; ECF1614-12 (Cattell Rpt.) ¶ 31.  Rather, Google plans to present evidence

2   of a custom and practice of API reimplementation, of which Sun/Oracle's own conduct is a

3   significant example.  As to the second point, Google agrees that Oracle is free to dispute Google's

4   evidence of industry custom and practice, including by distinguishing its own reimplementations.

5   But it does not follow that Google should be prohibited from introducing such highly relevant

6   evidence.

7          By moving to exclude evidence of Apache Harmony, GNU Classpath, and Sun/Oracle's

8   own API reimplementations, Oracle seeks to portray Google's actions as being outside the

9   mainstream of industry custom and practice.  That is not true, and the jury should be permitted to

10  consider evidence of industry custom and practice, including Sun/Oracle's own conduct.  Oracle

11  cannot point to any unfair prejudice it would suffer from the introduction of its own actions

12  concerning reimplementation of APIs prior to 2006.

13  **III.   DR. SCHMIDT'S TESTIMONY BEFORE CONGRESS IS HIGHLY RELEVANT
        AND NOT UNDULY PREJUDICIAL**
14

15         Google also submits that Dr. Schmidt's testimony before Congress should not be

16  excluded.  Dr. Schmidt, in his capacity as Sun's CTO, testified to Congress in 1994,

17  contemporaneous with Sun's first announcement that it was working on Java. Apr. 24, 2012 Trial

18  Tr. at 1473:9-11 (Schmidt) (Java was announced in 1994).  Dr. Schmidt testified that "interface

19  specifications" are distinct from code, and should be freely disseminated.  ECF 263-7 (TX 2887).

20  Although the first formal release of Java was in 1996, the work on the APIs began "several years

21  earlier." Apr. 19, 2012 Trial Tr. at 687:21-24 (Reinhold).  Sun/Oracle's views about whether

22  copyright law should prohibit the re-implementation of interfaces, as reflected in sworn testimony

23  from its CTO to Congress in 1994, is therefore highly relevant to the issues in this trial.

24         In particular, the new posture of this case makes this evidence more relevant than it was in

25  the first trial.  The testimony involves sworn statements by Sun's then-CTO about industry

26  customs and practice regarding the permissibility of using APIs.  At the time that Dr. Schmidt

27  testified, Sun/Oracle's Java development was well underway and would be publicly released soon

28  thereafter.  Dr. Schmidt's Congressional testimony reflected expectations of the community

5

1055734

1    regarding use of the APIs.  Sun/Oracle's message that APIs could be freely reimplemented is

2    highly relevant evidence as to what a reasonable copyright holder would have condoned.   In

3    addition, the fact that Google's CEO in 2006 (Dr. Schmidt) was fully aware of Sun's

4    longstanding position on APIs goes directly to good faith and lack of willfulness.

5          Oracle previously argued that the statements predated Google's work by too much, and

6    did not address Java APIs specifically.  Oracle's argument might be more compelling if it could

7    point to some industry change regarding API reimplementation that occurred between 1994 and

8    2006.  Because Oracle has put forth no such evidence, there is no risk of juror confusion, and

9    Google should be able to argue that going as far back as 1994, and extending through at least

10   2006, Sun/Oracle itself believed that the APIs could be freely used.  Moreover, while Dr.

11   Schmidt's statements may refer to APIs generally, rather than Java-specific APIs, the statements

12   are broad and intended to generally state Sun's position about the open nature of *all* APIs.[1]

13   **IV.    CONCLUSION**

14         By moving to exclude evidence of its own reimplementations, as well as of Apache

15   Harmony and GNU Classpath, Oracle seeks to rewrite history.  Oracle wants the jury to believe

16   that Google must have known something in 2006 that in fact is still an open legal question, *i.e.*,

17   that the reimplementation of the declarations/SSO was somehow improper.  Oracle wants to

18   impute this knowledge to Google to prevent Google from establishing that it acted in good faith.

19   But just because evidence of custom and practice may hurt Oracle does not mean it's irrelevant or

20   prejudicial.  If Oracle wants to explore at trial any differences between the APIs that it itself

21   reimplemented and the declarations/SSO at issue in this case, Oracle is free to do so.  The jury

22   may then consider what impact those differences have (if any) on its determination of whether

23   Google acted in good faith in 2006.

24         Evidence of Oracle's own API reimplementations shows the industry custom and practice,

25   and should not be excluded.

26   _____
     [1] Google recognizes that Dr. Schmidt's testimony specifically refers to a belief that APIs are not
27   *copyrightable.*  Google submits that regardless of the specific legal basis he articulated, the crux
     of Dr. Schmidt's testimony is that he believed that it was proper to reimplement APIs, and that
28   this evidences a custom and policy in place at the time that Google reimplemented the
     declarations/SSOs.

1055734

1

2   Dated:  May 3, 2016                                KEKER & VAN NEST LLP

3
                                            By:    s/ Robert A. Van Nest
4                                                  ROBERT A. VAN NEST
                                                   CHRISTA M. ANDERSON
5                                                  DANIEL PURCELL

6                                                  Attorneys for Defendant
                                                   GOOGLE INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE INC.'S OPP. TO ORACLE'S MIL 2 RE ORACLE'S USE OF APIS
Case No.  3:10-cv-03561 WHA

1055734