1    ORRICK, HERRINGTON & SUTCLIFFE LLP
     KAREN G. JOHNSON-MCKEWAN (SBN 121570)
2    kjohnson-mckewan@orrick.com
     ANNETTE L. HURST (SBN 148738)
3    ahurst@orrick.com
     GABRIEL M. RAMSEY (SBN 209218)
4    gramsey@orrick.com
     405 Howard Street, San Francisco, CA  94105
5    Tel: 1.415.773.5700 / Fax: 1.415.773.5759
     PETER A. BICKS (*pro hac vice*)
6    pbicks@orrick.com
     LISA T. SIMPSON (*pro hac vice*)
7    lsimpson@orrick.com
     51 West 52nd Street, New York, NY  10019
8    Tel: 1.212.506.5000 / Fax: 1.212.506.5151

9    BOIES, SCHILLER & FLEXNER LLP
     DAVID BOIES (*pro hac vice*)
10   dboies@bsfllp.com
     333 Main Street, Armonk, NY  10504
11   Tel: 1.914.749.8200 / Fax: 1.914.749.8300
     STEVEN C. HOLTZMAN (SBN 144177)
12   sholtzman@bsfllp.com
     1999 Harrison St., Ste. 900, Oakland, CA  94612
13   Tel: 1.510.874.1000 / Fax: 1.510.874.1460

14   ORACLE CORPORATION
     DORIAN DALEY (SBN 129049)
15   dorian.daley@oracle.com
     DEBORAH K. MILLER (SBN 95527)
16   deborah.miller@oracle.com
     MATTHEW M. SARBORARIA (SBN 211600)
17   matthew.sarboraria@oracle.com
     RUCHIKA AGRAWAL (SBN 246058)
18   ruchika.agrawal@oracle.com
     500 Oracle Parkway,
19   Redwood City, CA 94065
     Tel: 650.506.5200 / Fax: 650.506.7117
20
     *Attorneys for Plaintiff*
     ORACLE AMERICA, INC.
21
                    UNITED STATES DISTRICT COURT
22
                  NORTHERN DISTRICT OF CALIFORNIA
23
                       SAN FRANCISCO DIVISION
24
     ORACLE AMERICA, INC.              | Case No. CV 10-03561 WHA
25                 Plaintiff,          |
           v.                          | **ORACLE'S OPPOSITION TO GOOGLE'S
26                                     | MOTION IN LIMINE RE EXPERT
     GOOGLE INC.                       | TESTIMONY OF DISPUTED FACTS**
27                 Defendant.          | Trial:  May 9, 2016, 8:00 a.m.
                                       | Dept.: Courtroom 8, 19th Floor
28                                     | Judge: Honorable William Alsup

**INTRODUCTION**

In an attempt to avoid the implications of its own documents, Google takes issue with Oracle's experts relying on those documents and other record evidence in informing their opinions and analyses as required by *Daubert*.  Google seeks to exclude portions of the reports of four Oracle experts because, according to Google, they (1) "opine as to inferences to be drawn from evidence" by speaking to an entity's subjective intent or (2) "present a specific partisan version of facts *as his or her expert opinion.*"  Mot. at 3 (emphasis added).  But Oracle's experts do not speak to any person or entity's state of mind, nor do they offer any facts—partisan or otherwise—*as* their expert opinion.  Instead, in *every single paragraph* with which Google takes issue, the experts base their opinions on foundational record facts (accompanied by citations to the record evidence) and sometimes summarize those record facts when explaining their opinions or conducting their expert analysis.

*Daubert* requires experts to base their opinions on evidence—Google has, in fact, moved to exclude Oracle's experts for purportedly failing to do so.  Having previously complained that Oracle's experts relied on too few facts, Google now complains that Oracle's experts have relied too much on too many.  The gravamen of Google's motion is, first, that experts cannot bypass the laws of evidence by presenting facts as opinion, an issue this Court addressed at length in *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2037732, at *4 (N.D. Cal. May 12, 2008) ("*Therasense I*").  As explained below, nothing comes close to that here.  In accord with *Therasense I*, Oracle's experts "point" to the evidence on which they base their expert opinions—nothing more.  *Id.*  Second, Google argues, experts cannot bypass the role of the factfinder by telling the jury how it should understand evidence, an issue this Court also addressed, this time in *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008) ("*Therasense II*").  As explained below, this is not happening either.  Oracle's experts do not and will not tell the jury what they should think about evidence nor opine on any entity or person's subjective state of mind.

ORACLE'S OPP. TO GOOGLE'S MIL RE EXPERT
TESTIMONY OF DISPUTED FACTS

# I.    PROF. KEMERER'S OPINIONS PROCEED IN THE TRADITIONAL AND CORRECT WAY

Google seeks to exclude certain of Prof. Kemerer's opinions because, according to Google, he purportedly (1) opines on Google's or others' "state of mind" and (2) constructs a narrative of facts—without expert analysis—that favors Oracle's interpretation of the record. Mot. at 4.  Google's arguments are meritless.

Prof. Kemerer has 30 years' experience teaching and conducting research regarding software measurement and metrics and the economics of software at institutions such as MIT. *See* Kemerer Op. Rpt. App'x B.  He is currently jointly appointed at the Katz Graduate School of Business (in Information Systems) and the School of Information Sciences at the University of Pittsburgh, and serves as a professor of Software Engineering at Carnegie Mellon University.  *See id.*  Based on his extensive experience and expertise in software economics and metrics, Prof. Kemerer offers four primary opinions.  These four opinions *do not* rely on divining any person or entity's subjective state of mind, and every single fact in his reports that Google takes issue with serves as an assumed basis for these four expert opinions.

First, Prof. Kemerer opines about the business advantages a company in Google's position could gain from copying the 37 Java API packages.  This opinion is based on his examination of record evidence related to the smartphone market, including licensing schemes.  Kemerer Op. Rpt. ¶¶ 61-94, 160-82; Kemerer 2d Rpt. ¶¶ 106-117.  Prof. Kemerer summarizes this record evidence in statements like "Google needed to develop a mobile platform quickly."[1]  *See* Mot. at 4.  This analysis of the smartphone market does not require him to determine Google's or anyone else's actual state of mind.  *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs., LLC*, 691 F. Supp. 2d 448, 467 (S.D.N.Y.2010) (expert may opine on "what investors would customarily assume" so long as he "refrains from opining on the actual state of mind of the Plaintiffs"); *Therasense I*, 2008 WL 2037732, at *4  (when experts "point to evidence

---

[1] Each example Google cites of Prof. Kemerer supposedly opining as to corporate intent is, upon closer examination, merely his summary of record evidence.  *See, e.g.*, Kemerer Op. Rpt. p. 56, Heading B ("Google Recognizes that Android is Incompatible with Java") (quoted by Mot. at 5 n.2).  And, as described more fully below, Prof. Kemerer consistently cites this record evidence in service of his expert opinions.

1    bearing on these issues, such as a deposition admission or smoking-gun memo to file," this is not

2    speaking to subjective intent and knowledge); *Georges v. Novartis Pharm. Corp.*, No. CV 06-

3    05207 SJO VBKX, 2013 WL 5217198, at *15 (C.D. Cal. Apr. 4, 2013) (expert with knowledge

4    about scientific information available at the time could offer opinions on the adequacy of drug

5    labels, which is not opining on corporate intent); *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp.

6    2d 420, 443 (E.D.N.Y. 2011) (same).  Instead, the jury can decide for itself whether the

7    foundational facts themselves speak to the state of mind.[2]

8         Nor is Prof. Kemerer merely parroting facts about the smartphone market without

9    accompanying expert analysis.  Prof. Kemerer seeks to use his experience and expertise in

10   software measurement and management, and the economics of software adoption and markets, to

11   aid the jury in understanding the importance of the 37 Java API packages to Google's Android

12   platform.  He arrives at his opinions through consideration of market conditions, which requires

13   him to identify and discuss record documents and facts, such as software licenses, and to describe

14   how companies developed, protected, used, and monetized software during the time period

15   relevant to this case.  As one example, Prof. Kemerer cites extensive record evidence (Op. Rpt.

16   ¶¶ 65-94) to show how the general "feedback loop of API stability"—a phenomenon he has

17   observed during his 30 years of "studying the adoption of software process innovations and the

18   measurement of object-oriented software" (*id.* ¶¶ 62-64)—was manifest in this particular case.

19        Forming opinions in his area of expertise based on foundational facts is the "traditional

20   and correct way to proceed"; it is *not* offering partisan facts *as* his opinion.  *Therasense II*, 2008

21   WL 2323856, at *2 (experts offer opinions "on the assumption that the foundational fact is

22   accepted by the jury").  The jury is free to accept or reject these foundational facts, and if Google

23   believes Prof. Kemerer relies only on favorable facts while ignoring unfavorable ones—which he

24   does not—it may address this on cross examination.  *See Daubert v. Merrell Dow Pharm., Inc.*,

25   509 U.S. 579, 587, 596 (1993) (Rule 702 codifies a liberal admissibility standard; "[v]igorous

26   cross-examination" and "presentation of contrary evidence" are traditionally used to attack weak

27

28   ------
     [2] At trial, Prof. Kemerer will *not* offer any opinion as to any person or entity's actual state of mind.

ORACLE'S OPP. TO GOOGLE'S MIL RE EXPERT
TESTIMONY OF DISPUTED FACTS

testimony).  Oracle's experts should not be penalized merely because there is so much documentary evidence that is adverse to Google.[3]

Prof. Kemerer's other three opinions—which are based on empirical analyses—are equally orthodox.  To arrive at his second primary opinion, he conducts an empirical analysis of the copied APIs to quantify their stability.  Based on this analysis, he concludes that the copied API packages gave Android greater stability earlier, attracting developers to write apps, which attracted consumers to Android, which then attracted more developers.  Kemerer Op. Rpt. ¶¶ 96-125; Kemerer 2d Rpt. ¶¶ 78-105.[4]  Third, Prof. Kemerer assesses empirically the centrality of the copied Java API classes by comparing how often they are called upon by other classes as compared to non-copied classes, and opines that the copied classes play a highly valuable role in Java and in Android.  Kemerer Op. Rpt. ¶¶ 141-157; Kemerer 2d Rpt. ¶¶ 28-51.  Finally, Prof. Kemerer worked with Oracle's other technical expert, Prof. Schmidt, to analyze and detail the numerous ways in which Android is incompatible with Java—in particular the 37 API packages at issue.  *See* Kemerer Op. Rpt. ¶ 217; *see also id.* ¶¶ 183-220.  Conducting such empirical analyses to come to an opinion, and pointing out record documents that inform and corroborate this opinion, is the quintessential role of an expert.  *See Therasense I*, 2008 WL 2037732, at *4; *Therasense II*, 2008 WL 2323856, at *2.  Again, Google is free to cross examine Prof. Kemerer about the facts on which he does or does not rely, and the jury is free to accept or reject those foundational facts.

## II.    PROF. JAFFE'S AND MR. MALACKOWSKI'S OPINIONS PROCEED IN THE TRADITIONAL AND CORRECT WAY

Google attacks the opinions of Oracle's experts Prof. Jaffe and Mr. Malackowski for the same reasons it attacks the opinions of Prof. Kemerer.  *See* Mot. at 6-8.  Google's arguments fail

---

[3] Had Prof. Kemerer not recited the foundational facts on which his opinions are based, Google no doubt would have sought to exclude his opinions on that basis, as it attempted to do with other Oracle experts.  *See, e.g.*, ECF 1565 (Google MIL #6 re Malackowksi) (seeking to exclude Mr. Malackowski because he purportedly conducts no analysis in support of his causal claim).

[4] Google's assertion that Prof. Kemerer's opinion that the Java APIs were "'critical to getting Android to market quickly' is based *solely* on his interpretation of witness testimony and documents" is therefore demonstrably false.  *See* Mot. at 4 (emphasis added).

1   for the same reasons.  These experts' opinions do not rely on divining the state of mind of persons

2   or entities, nor do they merely parrot partisan record facts without expert analysis.

3         Prof. Jaffe, an economist, offers an expert opinion on whether and to what degree

4   Google's copying of the 37 Java API packages was commercial, whether or not Google's use was

5   transformative based on a market substitution analysis, whether and to what degree Google's use

6   resulted in market harm to Java SE 1.4 and 5.0 and derivatives thereof, and whether these factors

7   weigh in favor or against fair use.  Contrary to Google's assertion, he does *not* recite "90 pages of

8   background facts"—putting "Oracle's spin on Google documents"—without tying those facts to

9   an "expert analysis."  Mot. at 6-7.  In service of his fair use opinions, Prof. Jaffe comprehensively

10  examines record documents to illustrate how the economic concepts of network goods and

11  platform economics apply in this particular case.  Jaffe Op. Rpt. ¶¶ 32-94.  Also in service of his

12  fair use opinions, he reviews documents and testimony to analyze the parties' business models, as

13  well as the evolution of the mobile phone market.  *Id.* ¶¶ 95-188.  This background is *critical* to

14  his fair use opinions, *see id.* ¶ 195 ("Using the economic framework described above, in this

15  section I analyze the purpose and character of Google's use of the Java API packages and find

16  that this factor weighs against fair use."), which are fact intensive and *require* an understanding of

17  the purpose and nature of Google's use of the 37 Java API packages as well as any market harm

18  suffered as a result of that use.  *See Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (fair use

19  arguments are "often sophisticated and fact-intensive, and must be crafted with a good deal of

20  thought and effort") (citation omitted).  Nothing about this is "Oracle's lawyers speaking through

21  an expert."  Mot. at 7.  Rather, Prof. Jaffe's opinions will aid the jury in understanding the

22  economic aspects of fair use.  Finally, Prof. Jaffe *does not* speak to any person or entity's state of

23  mind; the only paragraphs Google accuses are *summaries* of record facts.  Mot. at 6 (citing Jaffe

24  Op. Rpt. ¶¶ 10, 11).[5]

25        Mr. Malackowski's opinions on damages are equally valid.  Google avers that Mr.

---

26  [5] If Prof. Jaffe had not delved into the record evidence as he did, Google no doubt would have
    complained that his fair use opinions were factually unsupported.  Once again it appears that
27  Google's real beef is that the vast majority of record documents support Oracle's claims, and
    Oracle's experts use these documents in formulating their opinions on these documents, as they
28  must.

ORACLE'S OPP. TO GOOGLE'S MIL RE EXPERT
TESTIMONY OF DISPUTED FACTS

1    Malackowski interprets "Google witness testimony and potential record evidence" about

2    Google's acquisition of Android, license negotiations with Sun, and the market window for

3    mobile while relying on none of these facts for his damages analysis.  Mot. at 7-8.  But Mr.

4    Malackowski, an accountant and IP licensing and damages expert, *does* rely on these foundational

5    facts to reach his damages opinions.  For example, Mr. Malackowski relies on these facts to prove

6    a causal link between Google's copying and Android ad revenue: if Google's desktop search

7    platform did not make the jump to mobile during the closing window of opportunity (as identified

8    by Google's own documents and witnesses), then it would miss out on a lot of money in ad

9    revenue.  *See* Malack Op. Rpt. ¶ 20 ("Several key considerations underlying my opinions are as

10   follows: … The opportunity, presented by infringing the Java Copyrights, to tap into the Java

11   developer community and to more quickly get the Android platform to market during a critical

12   'mobile window.'"); *id.* ¶¶ 125-26, 229-31.  Also contrary to Google's assertions (at 8), Mr.

13   Malackowski's causal nexus opinion relies on documents—and the empirical analysis of Prof.

14   Kemerer—regarding how the 37 Java API packages enabled faster programming and access to

15   more developers.  *See id.* ¶¶ 225-28, 129-34.  Relying on explicit statements in documents from

16   the opposing side or on analyses of other disclosed experts to reach an opinion within one's

17   expertise is the "traditional and correct way to proceed," *Therasense II*, 2008 WL 2323856, at *2,

18   not "spoon feeding," as Google alleges.  Mot. at 8.  Finally, Mr. Malackowski *does not* speak to

19   any person or entity's state of mind; the only paragraphs Google accuses are *summaries* of record

20   facts.  *See* Mot. at 8 n.6 (citing Malack. Reply Rpt. ¶¶ 18, 130).

21         In sum, Prof. Jaffe and Mr. Malackowski each point to the foundational facts on which

22   they base their opinions, and their opinions do not rely on divining the state of mind of persons or

23   entities.[6]  *See Pension Comm.*, 691 F. Supp. 2d at 467; *Therasense I*, 2008 WL 2037732, at *4;

24   *Therasense II*, 2008 WL 2323856, at *2.  Again, the jury is free to reject the foundational facts on

25   which these experts rely, and if Google believes these experts ignore harmful facts then Google

26

27

---

28   [6] At trial, Prof. Jaffe and Mr. Malackowski will *not* offer any opinion as to any person or entity's
     actual state of mind.

1   may take it up on cross examination.  *See Daubert*, 509 U.S. 579 at 596.[7]

2   **III.   THE PORTIONS OF ORACLE'S EXPERT REPORTS GOOGLE OBJECTS TO**
    **ARE NO DIFFERENT THAN GOOGLE'S EXPERT REPORTS**

3

4           Google attempts to mischaracterize Oracle's expert reports by taking statements out of

5   context to argue that they demonstrate the experts are merely reciting facts and opining on

6   subjective intent.  But the same thing could be said about statements from Google's expert

7   reports.  For example, Google's experts repeatedly speak to the intent or knowledge of persons or

8   entities, even when not summarizing evidence, *e.g.*:

9       •   "This began when Sun made the Java language, documentation, and API
            implementation available at no charge in 1996, apparently with the *intent* to ensure
10          that programmers throughout the industry knew and had internalized the Java
            language, including these APIs," Astrachan Op. Rpt. ¶ 158 (emphasis added);
11

12      •   "Based on public statements by Sun around the time of OpenJDK's release, the impact
            on the market for Java by releasing OpenJDK as a free, open-source implementation
            of Java SE was very much *intentional* on Sun's part," *id.* ¶ 266 (emphasis added);
13

14      •   "Mr. Schwartz also publicly stated at the 2006 Java One conference that Sun
            *understood and intended* that actual or potential competitors of Sun could use
15          OpenJDK to create products that competed with Sun's own offerings," *id.* (emphasis
            added);

16      •   "In 2014, Apple introduced an entirely new programming language called Swift as an
            applications programming language for iOS devices, with the ultimate *intention* of
17          replacing Objective C in that role," Leonard Op. Rpt. ¶ 119 (emphasis added);

18      •   "All else equal, carriers *want* to offer a wide variety of handsets to appeal to a broad
            range of customers," *id.* ¶ 90 (emphasis added);
19

20      •   "The displacement started (at least) with the iPhone and would have increased over
            time whether or not Android existed because feature phones did not offer the product
            characteristics that *end users wanted*," Leonard 2nd Rpt ¶ 16 (emphasis added).
21

22   Moreover, Google's experts base their opinions on "facts" that are contradicted by the record

23   evidence and/or Federal Circuit factual findings:

24      •   "[T]he 37 Java SE API packages are integral to the Java programming language and
            accordingly necessary to make effective use of the Java programming language,"

25   _____
    [7] In a footnote, Google moves to strike portions of Dr. Toubia's expert report for opining on (1)
26   state of mind and (2) the window of opportunity, which Google declares was dictated by counsel.
    Mot. at 8 n.7.  Google's contentions are meritless.  Dr. Toubia will not opine on any person or
27   entity's state of mind.  Further, Dr. Toubia relies on the testimony of Android executive Andy
    Rubin, not statements of counsel, for the foundational window-of-opportunity fact.  Toubia Rpt.
    ¶ 29.  This foundational fact is relevant to Dr. Toubia's criticism of the timeframe of Dr.
28   Simonson's survey, which Dr. Toubia believes renders the survey irrelevant.  *Id.* ¶ 34.

1      Astrachan Reply Rpt. ¶ 24;

2      • "When Google chose the Java programming language ... certain things naturally flowed
          from that decision—including using method declarations from the Java APIs," Astrachan
3          Op. Rpt. ¶ 162;

4      • "[T]he names and parameters of the APIs must be the same for many reasons ... the
          Android platform is compatible with and provided the functionality of the Java language
5          APIs at issue, and necessarily uses the same API names and organization in order to do
          so," *id.* ¶ 250;
6
       • "I have seen no evidence that the programming that went into the allegedly copyrighted
7          material reflects any higher level of ingenuity than the programming that went into the
          other parts of Android," Leonard Op. Rpt. ¶ 198;
8
       • "Therefore, I conclude that Google could have implemented the OpenJDK class libraries
9          for the 37 API packages at issue starting in May 2007 and not caused any delay in the
          November 2007 Android announcement and release of the SDK," *id.* ¶ 176.
10

11    In the Court's Guidelines for Trial, the Court made clear that experts may not "vouch for the

12    credibility of fact witnesses and/or to vouch for one side's fact scenario." ¶ 13.  The Court's

13    guidelines further provide (*id.*):

14          Qualified experts, of course, are always welcome to testify concerning relevant
             scientific principles, professional standards, specialized facts known within a
15          trade or discipline and the like.  They are also welcome to apply those principles
             and standards to various assumed fact scenarios. This is so even if an opinion is
16          given on the "ultimate issue."  But they should not try to vouch for one side's fact
             scenario, i.e., witness believability.
17

18    Oracle's reports were prepared with this very notion in mind.  The Court again made clear in the

19    Pretrial Order that "under no circumstance can any witness characterize someone else's intent or

20    willfulness (unless the witness heard the someone else admit the intent)."  ECF 1760 at 7.

21    Orrick's experts will follow the Court's orders and guidelines.  The Court should reject Google's

22    attempts to strike entirely permissible and proper expert testimony based on trumped up and

23    incorrect claims.

24                                    **CONCLUSION**

25          For the foregoing reasons, Google's motion should be denied.

26

27

28

ORACLE'S OPP. TO GOOGLE'S MIL RE EXPERT
TESTIMONY OF DISPUTED FACTS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:       May 3, 2016                          Respectfully submitted,

                                                                  Orrick, Herrington & Sutcliffe LLP

                                                          By:  */s/ Vickie Feeman*
                                                                  Vickie Feeman

                                                                  Counsel for ORACLE AMERICA, INC.

ORACLE'S OPP. TO GOOGLE'S MIL RE EXPERT
                                                                                                       TESTIMONY OF DISPUTED FACTS