United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | No. C 10-03561 WHA <br><br> **ORDER ON GOOGLE'S MOTION *IN LIMINE* NO. 1 REGARDING DR. CHRIS F. KEMERER'S DEFINITION OF API** |

**INTRODUCTION**

In this copyright infringement action involving Java and Android, defendant moves to exclude the report and testimony of plaintiff's expert on damages. For the following reasons, the motion is **DENIED IN PART**.

**STATEMENT**

Oracle proffers Dr. Chris F. Kemerer's expert report and opinions to show whether and to what extent Google's copying of the declaring code and structure, sequence, and organization (SSO) of 37 Java Application Programming Interface packages affected the Java and Android platforms (Kemerer Rpt. ¶ 1). Kemerer concluded in relevant part to this motion that Google's copying is critical to Android's success, and has negatively impacted Oracle's business, due to the "stability" and "centrality" of the 37 Java API packages at issue (*id.* ¶¶ 12–13, 15).

Google objects to Kemerer's report and opinions as to stability and centrality, and to his definition and usage of the term "API." This order addresses only the latter objection. A supplemental order on the admissibility of Kemerer's stability and centrality opinions is forthcoming.

**ANALYSIS**

Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. District courts have wide discretion in striking the balance under this rule. *United States v. Smith*, 61 F.3d 914, 914 (9th Cir. 1995); *United States v. Mohamed*, 410 F. Supp. 2d 913, 917 (S.D. Cal. Jan. 26, 2005) (citing *United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985)).

1. **KEMERER'S DEFINITION AND USAGE OF THE TERM "API."**

Google objects to what it characterizes as Kemerer's conflation of two different definitions of the term "API." According to Google, the first definition of API used by Kemerer — which is accurate and relevant to this case — is the declaring code and SSO of the Java API packages at issue (*see* Kemerer Dep. at 67). The second definition of API used by Kemerer is a general description of "tools" or "mechanism[s]" to "access some other resource" (*see id.* at 67, 68). This second definition is based on an "API economy business model" that is different from how APIs have been described "in the context of this lawsuit" (*see id.* at 67). In light of these different possible definitions of "API," Google argues, Kemerer's use of the term "throughout his report without making any material distinction between [the two definitions]" amounted to "deliberate conflation of these concepts . . . intended to mislead jurors into believing that the API declarations/SSO at issue in this case are generally proprietary in the same fashion as implementing code or [other resources] accessed through APIs." In other words, Google's objection is essentially that, because the term "API" has been used as shorthand in this case to refer to the specific declaring code and SSO copied by Google, Kemerer's opinions about proprietary value and industry customs as to APIs *in general* might inflate the jury's perception of the value of the copied declaring code and SSO. Thus, Google contends, Kemerer's opinions

2

about the API economy in general should be excluded as more prejudicial than probative under Federal Rule of Evidence 403.

Oracle responds that Kemerer's report was "crystal clear" about what Google actually copied, as contrasted with the broader definition of APIs in general. Oracle further argues that to the extent that Kemerer discusses industry customs relating to APIs in general, it is only to rebut claims by Google's own experts that copying at least the declaring code from APIs is an established norm in the computing industry. The reasoning of this rebuttal is ostensibly that, since APIs *in general* help developers and programmers avoid "having to write their own code from scratch," and "[c]ontrol of APIs and other software development tools . . . encourages innovation and investment by companies like Sun and Oracle to create new software," Google's experts are incorrect in claiming that industry norms freely permit or expect even partial unlicensed copying of APIs (*see* Kemerer Rpt. ¶ 30; Def.'s MIL #1 at 7–8).

This order agrees with Google that the value of APIs as programming and developing tools *in general* does not speak directly to the *specific* value of the declaring code and SSO copied by Google. Nor would industry expectations as to licensing or copying norms for APIs *in general* be dispositive of such expectations as to *specific* declaring code and SSO. However, Google has not presented specific evidence that Kemerer *intentionally* obfuscated this distinction to mislead the jury into inflating the value of the declaring code and SSO at issue. Nor has Google offered any other explanation, aside from nebulous assertions of "unfair prejudice" and "irrelevan[ce]," as to how testimony about industry norms relating to APIs in general would be so misleading to the jury as to warrant exclusion.

To the extent that Kemerer refers to APIs in general as "intellectual property" or suggests they are protectable proprietary tools, Oracle correctly observes this definition simply reflects the Federal Circuit's holding that the declaring code and SSO of APIs are copyrightable. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1381 (Fed. Cir. 2014). There is thus nothing inherently misleading in this definition. Moreover, as Oracle notes in its opposition, Kemerer readily admits — and acknowledges throughout his report — that this case involves Google's copying of the specific declaring code and SSO of 37 Java API packages

3

(*see, e.g.*, Kemerer Rpt. ¶¶ 1, 13, 31–50).  The parties also agree that Kemerer opines as to industry norms relating to APIs in general only to support the proposition that APIs in general are not readily available — i.e., that unlicensed copying of APIs is not an accepted industry custom.  These limitations on the scope of Kemerer's testimony mitigate the prejudicial effect asserted by Google.

This order acknowledges, however, that some possibility of misleading or confusing the jury still remains simply because the term "API" is used in this case both generally, and as shorthand for the declaring code and SSO copied by Google.  Although this imprecise terminology, and its accompanying risk of confusion, are not unique to Kemerer's report and opinions, his report and opinions are not free of such defects either.  This order therefore considers whether Kemerer's opinions as to APIs *in general* are sufficiently relevant and probative of issues in the case to be admissible under Federal Rule of Evidence 403.

Evidence of the proprietary value of, and industry norms related to, APIs in general is relevant to issues in this case in two ways.  *First*, Kemerer's report explains why both declaring code and SSO are "important in realizing the value of the Java API packages" in general (Kemerer Rpt. ¶¶ 25–26).  Evidence of the value of APIs in general is therefore probative, albeit not dispositive, of the value of the specific declaring code and SSO copied by Google.  Kemerer's testimony as to the former is more probative than prejudicial, as long as he clearly identifies how he is using the term "API" and does not inappropriately conflate the value of APIs in general with the specific value of the declaring code and SSO at issue.

*Second*, testimony regarding industry norms for APIs in general would only be misleading if it precipitated incorrect conclusions about *different* industry norms specific to the copied declaring code and SSO.  However, Google provided no evidence — and did not even suggest — that industry norms for declaring code and SSO differ in any significant way from industry norms for APIs in general.  Thus, since Google's own experts opine about industry norms to show that copying the declaring code and SSO of APIs is acceptable *in general*, Kemerer may rebut such testimony by opining that industry norms as to APIs in general would not accept unlicensed copying.  This testimony is appropriate within the context of a "battle of

4

the experts" and is not more prejudicial than probative. If, however, Kemerer's testimony at trial is imprecise or inappropriately conflates APIs in general with the specific declaring code and SSO copied by Google, Google may object at that time.

Google's motion as to Kemerer's definition and usage of the term "API" is therefore denied without prejudice to further objections Google may raise at trial.

## CONCLUSION

For the foregoing reasons, Google's motion *in limine* is **DENIED IN PART**. A supplemental order on the admissibility of Kemerer's stability and centrality opinions is forthcoming.

**IT IS SO ORDERED.**

Dated: May 3, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE