ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>GOOGLE INC.,<br>                    Defendant. | Case No. CV 10-03561 WHA<br>**ORACLE'S [PROPOSED] MOTION IN LIMINE RE RODERIC CATTELL**<br>Trial: May 9, 2016<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

**NOTICE OF MOTION, MOTION, AND STATEMENT OF RELIEF SOUGHT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that the following Motion *in Limine* Regarding Roderic Cattell will be heard on a date and time set by the Court, in Courtroom 8, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable William Alsup presiding.

Plaintiff Oracle America, Inc. will, and hereby does, move this Court to exclude Dr. Cattell from testifying at trial pursuant to Federal Rules of Evidence 402, 403, 702, and 703.  This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the materials attached to the Declaration of Robert L. Uriarte (cited hereinafter as "Ex. __") that are being filed herewith; the record in this matter; and such other and further papers, evidence, and argument as may be submitted in connection with this Motion.

Dated:  May 4, 2016                                Orrick, Herrington & Sutcliffe LLP

                                                   By:  */s/ Gabriel M. Ramsey*
                                                        Gabriel M. Ramsey

                                                   Counsel for ORACLE AMERICA, INC.

## INTRODUCTION

Google intends to put computer scientist Roderic Cattell on the stand to tell the jury that he thinks it is always fair use to copy anything called an "API" without permission. Dr. Cattell's opinion does not qualify as admissible expert testimony and should be excluded entirely. Dr. Cattell does not have a specific opinion about the propriety of copying the 37 Java API packages at issue in this case.[1] As Google's counsel explained at the final pretrial conference: "[H]is report does not speak specifically to the Java APIs. He speaks more generally about the understanding of computer scientists, about APIs generally." 4/27/16 Tr. at 99:23-25. Dr. Cattell did not analyze the thousands of lines of declaring code or the SSO of the 37 Java API packages in forming the opinions in his Report. Ex. 2, Cattell Depo. at 42:16-23. Dr. Cattell has no knowledge of the current or historic API licensing practices of Sun, Oracle, or Google, and he did not review any API licenses at all in preparing his Report. *Id.* at 57:8-12; 138:13-17; 153:10-19; 176:8-14. Nor did Dr. Cattell conduct any formal analysis of the market for the copyrighted works in preparing his expert report. *Id.* at 94:24-95:2. And Dr. Cattell has no specialized knowledge of the legal standard governing fair use. *Id.* at 13:21-24 ("I'm not an expert [on] the law…my arguments are based on…what I know about computer scientists"). Although he purports to speak for all computer scientists' expectations about fair use of APIs, Dr. Cattell did not even *attempt* to carry out any empirical analysis of their views.

Dr. Cattell cannot offer any competent expert opinion in this case; he wants to testify about *policy arguments* rooted solely in his personal view that APIs should not be subject to any copyright protection at all. *Id.* at 18: 4-11. This testimony would be extremely prejudicial since the Federal Circuit has already held that the declaring code and SSO of the 37 Java API packages are copyrightable. Dr. Cattell fails the *Daubert* test and should be excluded from testifying under Federal Rules of Evidence 701, 702, 703, 403, and 401.

**I.   DR. CATTELL'S OPINION THAT COMPUTER SCIENTISTS THINK COPYING APIS IS ALWAYS FAIR USE IS NOT ADMISSIBLE**

Dr. Cattell plans to testify that "[computer scientists] expectations would be [that] it

---

[1] During the Pretrial Conference, the Court asked: "Is [Dr. Cattell] going to say that it was allowed to copy all header lines in 166 APIs with no license whatsoever?" Dr. Cattell's deposition establishes that the answer to this question is "no." Cattell Depo. at 213:10-16.

1   would be fair use to—to use an API and re-implement it." Ex. 2. at 15:18-25.  Assuming

2   *arguendo* that expectations of "computer scientists" are relevant to any issue before the Court,[2]

3   Dr. Cattell cannot possibly give any admissible expert opinion on this topic.

4       *First,* Dr. Cattell cannot opine that it has ever been a generally accepted practice to copy

5   proprietary APIs without authorization; rather, Dr. Cattell conceded in deposition that there is a

6   debate in the software developer community about whether it is permissible to copy APIs without

7   authorization from the copyright holder. *Id.* at 115:9-116:9 (Q: "and there are some people…in

8   the software community that say … copying of [API declarations] is not fair use?" A: "Yes.").

9   Dr. Cattell conceded, for example, that prior to the instant dispute, it was widely known in the

10  software developer community that Microsoft asserted control over its Windows APIs. *Id.* at

11  30:4-31:3.  Yet Dr. Cattell did not conduct any survey to ascertain the prevailing views (if any)

12  about API copying in the industry and did not conduct a single interview of any software devel-

13  oper in preparing his expert report—apparently because Google instructed him not to. *Id.* at 23:6-

14  9; 92:21-23.  Asked about his specific awareness of views within the *Java* community regarding

15  copying the 37 Java API packages, Dr. Cattell responded: "All I can say is most people I know

16  don't think they should be copyrightable and thinks [sic] that it should be fair use." *Id.* at 22:23-

17  25.  Dr. Cattell's anecdotal impressions are not admissible expert testimony.  *See Monotype Corp.*

18  *PLC v Int'l Typeface Corp.*, 43 F.3d 443, 449 (9th Cir. 1994) ("opinion … based on a moral code

19  of the industry and [industry participant's] own beliefs as to certain typefaces" excluded).

20      Dr. Cattell did not use any legitimate research methodology to assess whether software

21  developers expect that copying APIs is fair use.  He testified that while some developers believe

22  that they *should* be able to freely use APIs, those same developers do *not* all have the belief that

23  they actually *can* do so. Ex. 2 at 155:15-158:4.  Moreover, Dr. Cattell has not done any empirical

24  research to measure the amount and degree to which developers believe that they are actually able

25  to reuse and re-implement the APIs. *Id.* ("I haven't done any empirical research …."). Dr.

26  Cattell was unable to point to any specific conversations, interviews, surveys, or empirical data in

27

28  ---
    [2] Oracle maintains that Google's "custom" arguments are legally erroneous and factually baseless for the reasons previously stated.  *See, e.g.*, ECF Nos. 1744, 1785.

support of his opinions.  Dr. Cattell merely stated vaguely and implausibly that the grounds for his opinions include every single conversation, email, and scrap of paper he has read during the course of his career as an engineer (*id*. at 21:14-22:7); however, he did not attach *a single* document to his opinion to substantiate his views.[3]

The only "research" Dr. Cattell did to prepare his report consisted of "some Google searches … trying to figure out—looking for some examples historically" of API copying.  *Id.* at 154:2-9.  No qualified expert—or reasonable business person for that matter—would rely solely on a few Google searches to ascertain whether it is permissible to copy proprietary source code without permission or whether most software developers believe they are free to do so.  *See* ECF No. 1782 (conducting detailed analysis of survey methodology and limiting expert testimony due to methodological flaws).  Indeed, Dr. Cattell testified that software developers will "go find an expert on the licensing world" in forming their views on when it is permissible to copy APIs that are subject to a license.  *Id*. at 205:10-206:1.  This testimony is directly contrary to Google's suggestion that there is a universal developer view that APIs are free to copy, and it accentuates why Dr. Cattell's *ad hoc* Google searches and personal ideological views are not admissible.

**Second,** Dr. Cattell is not qualified to opine on whether copying APIs is considered fair use in the software industry because any such opinion is outside the scope of his discipline as an engineer and computer scientist.  *See Jinro Am., Inc. v. Secure Invs., Inc*., 266 F.3d 993, 1001, 1004 (9th Cir. 2001) (error to admit private investigator's testimony regarding Korean law, business practices, and modus operandi).  Dr. Cattell has no specialized knowledge about API licensing practices or the legal standard governing fair use.  Ex. 2 at 13:21-24 ("I'm not an expert … on the law").  Asked about Sun's specification license, for example, Dr. Cattell testified: "I can't comment on the Specification License."  *Id.* at 58:5-12.  He further testified that he did not analyze any Google API licenses or open-source API licenses in preparing his report.  *Id.* at 138:3-17; 206:10-207:22.  Dr. Cattell simply "expounded on … what computer scientists[] would think about the elements of fair use" based on his lay understanding of the term fair use.  *Id.* at

---

[3] The substance of the "Materials Considered" section of Dr. Cattell's Report is one sentence: "This report is based on my professional experience and training, and my specialized knowledge of the matters set forth in this report."  Ex. 1, Cattell Report ¶ 27.

- 3 -

ORACLE'S [PROPOSED] MOTION IN LIMINE
RE: RODERIC CATTELL

1  15:9-14.

## II. DR. CATTELL'S OPINION ABOUT HISTORIC COPYING OF SQL, ODMG, BIOS, LINUX, AND WINE APIS IS NOT ADMISSIBLE

Dr. Cattell's expert report provides five examples of APIs that Dr. Cattell speculates have been copied without permission: IBM BIOS, UNIX, SQL, ODMG common database API, and WINE.  Dr. Cattell's analysis regarding these APIs fails at the outset because Dr. Cattell is unaware of whether these APIs are even copyrighted, Ex. 2 at 121:11-15, and because Dr. Cattell conceded that the these APIs are different than the 37 Java API packages in ways that are material to the jury's fair use analysis: "they may not even have method declarations" at all, *id*. at 38:14-15.  There is "too great an analytical gap" between Dr. Cattell's examples and the thousands of lines of copyright-protected declaring code and SSO in this case.  *See GE v. Joiner*, 522 U.S. 136, 146 (1997); *see also Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 782-783 (9th Cir. 2006) (excluding "custom"" evidence regarding software not at issue in the case).

Moreover, Dr. Cattell cannot possibly testify that the APIs discussed in Dr. Cattell's Report *might even be* comparable to the 37 Java API packages because he did not do any comparative analysis between them and the 37 Java API packages.  Ex .2 at 161:1-25.  This fact is fatal to Dr. Cattell's opinion.  *See Monotype*, 43 F.3d at 449 (affirming exclusion of report because "Berlow's opinions have little basis when made without an actual comparison" to works at issue).  In any event, Dr. Cattell's deposition testimony makes clear that the API examples discussed in his report fail the "fit" test.  *E.g.*, *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591 (1993).

**SQL APIs.**  When asked if he did any comparative analysis of the SQL APIs to the 37 Java API packages, Dr. Cattell testified "I don't know what I would compare there, the number of lines or the -- whether they use methods or procedures, or whatever – it's sort of – apples and oranges."  Ex. 2 at 161:20-25.  Dr. Cattell's concession about the SQL APIs is a quintessential example of bad-fit expert evidence that should be disregarded.  *See, e.g., Siegel v. Warner Bros. Entm't, Inc.*, 2009 U.S. Dist. LEXIS 66115, at *30-33 (C.D. Cal. July 8, 2009) (expert conceded opinion was based on analysis of copyrighted works that were "two different animals"; court rejected opinion as "truly comparing apples to oranges").

**ODMG Common Database APIs.** Dr. Cattell concedes that the ODMG was a group of companies that came together and expressly agreed that "what they contributed" to the API under development, an API called "OQL," "would be shared and open." Ex. 2 at 84:2-12. Additionally, Dr. Cattell concedes that there is no universal practice of companies coming together to make their APIs open and to share freely with each other. *Id*. at 85:2-8 ("Yes, sometimes they do. Sometimes they don't."). His opinion on this example is inapt and invites jury confusion.

**IBM BIOS APIs**. Dr. Cattell's deposition testimony establishes that his opinions regarding historical copying of BIOS APIs do not pass the fit test for three reasons. First, Dr. Cattell does not know whether the BIOS APIs are copyrighted. Ex. 2 at 120:23-121:15. Second, Dr. Cattell testified that he is unaware of any direct copying of the BIOS APIs by any unauthorized party. Ex. 2 at 32:6-21 ("it's my understanding they did a clean room implementation, in which nobody who wrote the code had seen any of IBM's code"). Third, Dr. Cattell testified that, unlike this case, the purpose of re-implementing the BIOS APIs was to achieve technical interoperability with IBM's platform. *Id*. at 34:11-14 ("Q: So in the context of BIOS, an application written for the IBM computer would run on the IBM clone computers and vice versa? A. Yes.").

**Linux APIs**. Dr. Cattell opines that the creators of the Linux APIs re-implemented APIs that were originally in UNIX. But Dr. Cattell does not know whether the UNIX APIs were copyrighted. *Id*. at 121:11-15. Moreover, Dr. Cattell does not know whether the UNIX APIs were re-implemented in Linux before or after a standards-setting body (POSIX) made the UNIX APIs a formal public standard. *Id*. at 151:25-153:3. Nor does Dr. Cattell know what the applicable license for the UNIX APIs says about copying the APIs. *Id*. at 153:10-19.

**WINE APIs**. Dr. Cattell testified that the WINE APIs were developed in a "[c]leanroom, … where they didn't look at the source code." *Id*. at 155:5-7. He stated that, based on his awareness of the WINE API development, "it sounds very cautious to me." *Id*. at 155:25-156:1. Indeed, Dr. Cattell does not believe that the WINE API involved any copying at all. *Id.* at 156:2-7 (Q: "Can you identify any API in Wine that was copied from copyrighted Microsoft code?" A. "Copyrighted source code for the implementation; no, I would be very surprised if there was.").

# CONCLUSION

For the reasons stated, Dr. Cattell should not be permitted to testify at trial.


Dated: May 4, 2016                                          Respectfully submitted,

                                                            Orrick, Herrington & Sutcliffe LLP

                                                            By: */s/ Gabriel M. Ramsey*
                                                                Gabriel M. Ramsey

                                                            Counsel for ORACLE AMERICA, INC.