IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC.,

    Plaintiff,

  v.

GOOGLE INC.,

    Defendant.

No. C 10-03561 WHA

**ORDER RE GPLv.2+CE, OPENJDK, GNU CLASSPATH, AND CUSTOM**

    In November 2006, Sun announced a plan to release an open-source implementation of the Java platform called OpenJDK, to include a virtual machine and libraries of code with new implementations of the Java API, including the 37 at issue herein. Significantly, for OpenJDK, Sun also allowed a more permissive license. Instead of the General Public License Version 2, Sun allowed OpenJDK to be used under the General Public License Version 2 with Classpath Exception. The phrase "with Classpath Exception" is the key phrase.

    This exception disposed of some of the requirement imposed on licensees to contribute back to the public all of the licensee's follow-on code developed with OpenJDK. This meant that companies like Google could use OpenJDK, reimplement its API, make that source code public and license OEMs to use it to "link" to their own programs in "executable" form. Provided the OEMs' new programs did no more than "link" to the OpenJDK code as implemented in Android (and provided the OEMs did not further modify the Java APIs), the OEMs would not have to contribute their proprietary code back to the public — or so Google contends with at least plausible support.

Oracle disputes the leniency of the Classpath Exception. More to the immediate point, Oracle correctly observes that Google considered this very option at the time in question and rejected it because Google feared its OEMs would worry over whether the Classpath Exception really got around the give-back-to-the-public feature of the General Public License Version 2, a bedrock feature of the open-source concept. OEMs wanted to keep their versions of Android proprietary. Since Google rejected OpenJDK at the time, Oracle insists that Google cannot now go back and "re-write history," so Oracle wants no mention made of OpenJDK before the jury.

The overall evidence, however, will support the inference that at the time Google rejected a switch to Open JDK, Google believed it would have an easier time selling its OEMs on Android via Apache than selling them on Android via OpenJDK, evidently because Google believed the little it was using from the 37 Java APIs — the declaring lines and the taxonomy of their structure, sequence, and organization — was uncopyrightable in the first place (or was fair game under fair use). The Federal Circuit has since rejected Google's premise. Had Google known that back then, it could have backed up and tried the OpenJDK route and tried to sell that option to the OEMs — or so at least one plausible view of the evidence suggests.

Timing also seems to have been a factor. That is, by the time Google considered and rejected OpenJDK, Google had already gone down the Apache path, so momentum and inertia worked against a switch — or so a reasonable jury could find.

Trials regularly require us to "revisit history" to assess what would have happened and what would have happened had a defendant done it right or had a plaintiff had its fair shot at a market window. Oracle itself seeks in this very case to "re-write history" via its claim that but for Android it would have made many hundreds of millions in the smartphone market.

Google will be allowed to show that an alternative and viable avenue open for Android development at the relevant time was OpenJDK under the GPLv.2+CE. This would at least be relevant to show that the vast profits Sun/Oracle claim were lost due to Android via Apache would have been lost anyway to Android via OpenJDK. The supposed problems raised by Oracle with this scenario are no more problematic than the fantastic premises behind Oracle's claim to have lost vast profits.

On the fourth fair use factor, OpenJDK is relevant as well to show that the harm to Java from fragmentation as well as to the market value of the copyright was caused by Sun's own decision to release OpenJDK with the Classpath Exception.

Google also contends that the release of OpenJDK indicates that Sun and Oracle actually consented to Google's use of the declaring code and SSO of 37 API packages from Java SE. This falls flat. To the extent OpenJDK is indicative of consent to use, it is only indicative of consent *subject to its applicable license terms*. Google may *not* offer OpenJDK as evidence that Sun or Oracle *consented* to Google's use of the declaring code and SSO despite its failure to comply with GPLv.2+CE.

Given that OpenJDK is at least relevant to the fourth fair use factor, this order need not consider further possible grounds for relevance. OpenJDK is possibly relevant in other ways. (But it is *not* relevant to disgorgement, for reasons elsewhere stated.)

Although Google will be allowed to prove that OpenJDK was a viable alternative for Android when it was under development, Google will not be allowed to introduce evidence that in 2015, only a few months ago, and well after the events in question, Google released an OpenJDK version of Android (called Android N). While normally this would have been welcomed evidence, Google released this new version very shortly before discovery closed and many years after the litigation began. This last-minute announcement smacks of a litigation gimmick. Oracle was denied a fair opportunity to vet the new project. Google should have done this early enough to give Oracle a full and fair chance to investigate it rather than jamming Oracle at the last minute. While a limited inspection occurred and a tad of discovery occurred, this was too much to lay on Oracle too late in the process. It was just not fair and was prejudicial. So, all evidence regarding the 2015 implementation of OpenJDK for Android is excluded.

Oracle should take care, however, not to open the door. If Oracle suggests to the jury that, as a technical or engineering matter, Google could not have used OpenJDK for Android, then Oracle will open the door to the 2015 development. Oracle will, however, still be free to argue that OEMs and carriers would have resisted it due to the very reason Google gave at the

3

1  time (OEMs having to contribute proprietary software back to the public). Arguments like that
2  will not open the door. And, Oracle can argue that "if it was so viable, how come Google never
3  did it back then when it mattered?" This will not open the door to 2015.

4  All objections to the qualifications of Andrew Hall are **OVERRULED**.

              *                              *                              *

6  With respect to Google's "custom" issue, the Court is not quite ready to exclude all such
7  evidence. It is true that Google's recent proffer (Dkt. No. 1795) seemed like a "mish-mash"
8  that by itself would not rise to the level of a custom within the meaning of *Wall Data*. It is
9  further true that although Google sprinkles its argument and proffer with references to "open
10 source," the open source community itself has defined its customs via its various versions of the
11 General Public License, the most pertinent of which is Version 2 with Classpath Exception.
12 Notably, however, Google rejected that custom and went with Apache/Harmony. Can
13 Apache/Harmony's license be said to be a "custom"? This is not clear. Google is fond of
14 allusions to random free and open "copying of APIs" without license by software developers.
15 The Court is not quite ready to exclude this for two reasons. *First*, Oracle's motion to exclude
16 Roderic Cattell (on this very issue) just arrived and has not been resolved and will not be
17 resolved prior to the opening statements. *Second*, Oracle is accusing Google of bad faith and
18 willfulness. Even if the "mish-mash" doesn't rise to the level of a custom under *Wall Data*,
19 Google's employees are at least entitled to explain their thinking at the time, all to show their
20 lack of willfulness and bad faith. At least this much — their thought process — will be allowed
21 up to a point to be defined by Rule 403. What *others* outside Google thought and did regarding
22 copying APIs is one step removed and will receive stricter scrutiny. So, for now, Oracle's
23 motion on ancient APIs and the custom evidence is **DENIED**.

24 In this connection, the only relevance of the GNU Classpath project is the same
25 relevance of OpenJDK, as set forth above. That is, the GNU version of the 37 Java APIs
26 became available (in 2002) under the GPLv.2+CE and would have posed a fragmentation
27 problem for Java and would have presented another (plausibly arguable) viable avenue for

4

Android. Beyond that, evidence regarding the GNU Classpath project will be excluded under Rule 403.

**IT IS SO ORDERED.**

Dated: May 5, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE