ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC. <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE'S OBJECTION TO THE TESTIMONY OF SIMON PHIPPS** |

**INTRODUCTION**

Google has portrayed Simon Phipps as its "custom" White Knight who will ride in to finally provide support for Google's position that its unlicensed copying was part of an industry practice. But Phipps' deposition testimony from this past Saturday demonstrates that he can add nothing to the "mish mash" Google previously proffered. Not only does he lack knowledge of a single commercial entity that used the Java APIs without a license, he also confirmed that it was Sun's practice to make the APIs available *only* pursuant to a license. At best, Phipps speculates that if he conducted research he might be able to find someone that used the Java APIs without a license. But Phipps is not an expert witness and thus should not be permitted to fill the gaps in his personal knowledge. Moreover, Phipps' personal subjective belief that *app programmers* should be able to freely use APIs to write apps is irrelevant to whether a custom of *platform developers* copying the Java APIs existed. Phipps' irrelevant testimony can only serve to confuse the jury and should be excluded.

At a minimum, Phipps should not be permitted to conduct "research" to fill in the gaps in his deposition testimony. Nor should Phipps, as a fact witness, be permitted to opine on foreign copyright law, when he himself states he is not a copyright expert.

**I.   PHIPPS LACKS PERSONAL KNOWLEDGE AND SHOULD BE EXCLUDED UNDER FRE 602**

Under FRE 602, a witness must have "personal knowledge of the matter." The rule "requires any witness to have sufficient memory of the events such that she is not forced to fill the gaps in her memory with hearsay or speculation." *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) (internal quotation marks and brackets omitted). But Phipps has no personal knowledge.

**A.   Phipps Lacks Knowledge of Any "Custom" of Unlicensed Copying**

The Court advised Google that to testify on custom, Phipps "should know the facts so that he doesn't stumble over the facts." 4/27/16 Hr'g Tr. at 94:3-5. Yet a two-hour deposition revealed that Phipps knows no facts supporting Google's "custom or practice" assertion:

- *No Knowledge of API Owners Making APIs Available Without a License*
  **Q.** So can you identify for me any owner of any API during the 2005-2007 time frame who made their APIs available without a license?

  **A.** I would need to perform research to give you an accurate answer to that question. (Phipps Depo 31:23-32:5)[1]

- *No Knowledge of Anyone Using APIs in Violation of a License*
  **Q.** Can you identify, sir, any entity during the 2005-2007 time frame who used someone else's copyrighted APIs in violation of a license?

  **A.** I could not think of an answer to that question.
  (*Id.* at 32:22-33:2)[2]

- *No Knowledge of Anyone Using APIs Without A License*
  **Q.** But as you sit here, you cannot identify any facts that would indicate that there was -- there was any entity who used someone else's copyrighted APIs without a license during the time period we're discussing, right?

  **A.** I reiterate that I'm telling you that within this deposition I cannot give you that information because it would require research which I have not been asked to perform.
  (*Id.* at 33:14-23)

- *No Knowledge of Anyone Using Java APIs Without A License Commercially*
  **Q.** Mr. Phipps, during the time period 2005 through 2007, can you point to any instance when an entity used the Java APIs in a commercial product without taking a license from Sun?

  **A.** I believe it would be possible to do that with research, yes.
  (*Id.* at 56:9-15)[3]

- *No Knowledge of Anyone Using Java API Re-Implementations Commercially*
  **Q.** Can you cite a single example of an entity who has used a reimplementation of the Java APIs for commercial purposes outside the context of a license?

  **A.** I believe it would be possible to find such an entity, but in this deposition I cannot do so without research.
  (*Id.* at 99:6:16)

---

[1] Simon Phipps' deposition is Exhibit A to the Declaration of Matthew Bush.

[2] *See also id.* at 33:4-9 ("**Q.** You can't identify any?  **A.** Well, I'd have -- the question that you're asking me is a question that is quite complicated, and it would require research to look through cases to understand what the behavior of specific companies, what -- and entities was.")

[3] *See also id.* at 77:24-78:10 ("**Q.** Cite me during the time period 2005 through 2007 any entity who used the Java APIs in a commercial product without taking a license." "**A.** At this point I would need to go and perform research, as I told you the last time you asked the question."); *id.* at 78:11-17 ("**Q.** So you don't have any facts you can tell me right now?"  "**A.** As you didn't ask me in advance to perform research in order to prepare for that question, I can't cite you any data.").

1  If copying declaring code was such a pervasive custom, one would expect Google's key
2  custom fact witness to have examples readily available.

### B. Phipps' Admission that Sun Required a License Shows No "Custom" of Unlicensed Copying Exists

If anything, Phipps demonstrated what Oracle has been saying all along: Google's claimed custom does not exist and Google's representation of what Phipps would testify to could not be correct because there is a licensing scheme at Sun; a scheme which Apache was following. 4/27/16 Hr'g Tr. 95:25-96:1 (Oracle re: Phipps' proposed testimony).

Phipps testified that Sun made the APIs available *only* pursuant to a license: "**Q.** Isn't it true that while you were at Sun, that Sun made the declaring code and SSO of the Java APIs only available for use through a license?" "**A.** I think that would be -- that would be a good general statement, but it would require analysis to work out exactly how it was true in each case." Phipps Depo 55:7-15. He also said: "[P]rior to us [Sun] making Java available as open source, the only way that somebody would have been able to get ahold of Java would have been through a download that was subject to a -- the -- a license for the binary that they were downloading." *Id.* at 39:12-17.

In particular, Phipps testified that APIs were available under one of three licensing schemes: the commercial license, the specification license, and OpenJDK's GPLv.2-CE license. *Id.* 47:1-49:21.[4]

On Apache Harmony, Phipps acknowledged that "Apache had secured a specification license." *Id.* at 92:25-93:1. Accordingly, he agreed that it "sounds reasonable" that "Harmony is *not* an example of someone using the Java APIs without a license." *Id.* at 82:11-19 (emphasis added).[5]

---

[4] At times, Phipps mentioned a "fourth way," which was making the Java APIs available to the "Debian community *under a license*." *Id.* at 39:25-40:1 (emphasis added); *see also id.* at 49:18-25.

[5] This may explain why Google evaded the Court's pointed question on whether Phipps would testify that Apache did or did not have a license: "COURT: One of the key questions is going to be could Apache do this at all without a license. Is he going to answer that question? MR. KWUN: If he's asked that question, I am sure he will answer that question." 4/27/16 Hr'g Tr. at 93:23-94:2.

- 3 -

ORACLE'S OBJECTION TO THE
TESTIMONY OF SIMON PHIPPS

1    Phipps also confirmed that Sun did not permit commercial entities to copy GNU

2  Classpath.  *See* ECF No. 1786 at 9 (Proffer Response).  Phipps read an email that states: "[I]t is

3  beyond a shadow of a doubt, that using the GNU Classpath derivative work to develop the WIPI

4  Specification will not avoid copyright infringement."  TX 5246 (Bush Decl. Ex. B).  He con-

5  firmed that this email "indicates that Mr. Kim's organization, whichever it is, should expect to be

6  infringing copyright if they used GNU Classpath."  Phipps Depo 96:22-25.

7    Accordingly, not only does Phipps lack personal knowledge of any custom or practice of

8  unlicensed copying, his testimony actually demonstrates the absence of such a custom.

9  **II.    PHIPPS' PERSONAL VIEWS ON APP PROGRAMMER EXPECTATIONS
         SHOULD BE EXCLUDED UNDER FRE 403**
10

11    At best, Phipps would provide general and conclusory statements that a programmer

12  should not have to worry about licensing while writing an app.  Phipps stated:  "[A] programmer

13  will always want to make sure that the work that they finally create is not in breach of anyone's

14  copyright.  And so they'll want to make sure they have licenses, but at the time that you're writ-

15  ing the program, the -- the function declarations you make at the top end, whatever programming

16  language you use, [is] not the point at which that's a concern for you."  Phipps Depo 28:10-18.

17  But on follow up, Phipps readily agreed that someone down the road in the development of that

18  product, likely the distributor of the software, would have to worry about licensing before that

19  product was complete:  "**Q:**  So if one views the practice within the software industry during this

20  time period, 2005 through 2007, there was an expectation, as far as you know, that a license at

21  some point would be required, correct?  **A.**  A copyright license, yes."  *Id.* at 23:10-15.  Pro-

22  grammers' expectations when writing code are irrelevant if the code is eventually licensed.

23    Phipps' testimony on "using" declaring code is also confusing and misleading.  There are

24  two different groups of people that could be said to "use" declaring code:  Platform developers re-

25  implementing APIs and app programmers using APIs to write applications.  Platform developers

26  re-implement APIs by copying the declaring code verbatim and writing their own implementing

27  code.  But app programmers do *not* copy the declaring code verbatim.  They "use" APIs by writ-

28  ing different code called a "call."  ECF No. 1202 (Copyrightability Decision) at 10 ("'calls'[are]

- 4 -

ORACLE'S OBJECTION TO THE
TESTIMONY OF SIMON PHIPPS

1  the commands that invoke the methods."). Google did not simply use method calls the way an
2  app programmer would, but instead copied the declaring code to re-implement the Java APIs.
3  Accordingly, the custom Google must prove in order to be at all probative to its fair use defense is
4  a custom of *platform developers* re-implementing APIs without a license. Phipps' testimony pro-
5  vides no relevant evidence on that score, because his testimony relates to *app programmers* call-
6  ing methods in their apps: "I would not expect there to be a restriction on including any of these
7  *function calls* in my program." Phipps Depo 44:7-8 (emphasis added). Testimony about app
8  programmers (even assuming, *arguendo*, that it showed a custom for app programmers) says
9  nothing about platform developers similarly situated to Google.

10  Phipps' testimony is also irrelevant because it is based "first on [his] own personal expec-
11  tations" of whether copying APIs should be permissible. *Id.* at 24:4-6. Even though he admitted
12  that he alone cannot form a "custom" (24:15-23), Phipps maintained his stance, stating that his
13  expectations "would be more likely to reflect an industry-wide custom, yes." *Id.* at 24:7-13. But
14  his personal expectation is based on his personal view on "copyrightability of APIs" which is
15  "definitely that APIs *should not* be considered copyrightable." *Id.* at 73:17-19 (emphasis added).
16  Phipps' personal belief on what the law *should* be has no bearing on this case. All Phipps' testi-
17  mony would do is expose the jury to his personal view on copyright law in an important case,
18  along with an invitation to ignore the law in this case.

19  **III. PHIPPS SHOULD NOT BE PERMITTED TO PROVIDE IMPROPER EXPERT TESTIMONY.**
20  
21  Google tries to camouflage expert testimony in the guise of a lay witness. "[T]estimony
22  that a witness prepares, as opposed to testimony of what a witness observes" is "expert testimo-
23  ny." *Hynix Semiconductor Inc. v. Rambus Inc.*, 2009 WL 230039, at *11 (N.D. Cal. Jan. 27,
24  2009) (Whyte, J.); s*ee also* FRE 702 (testimony "in the form of an opinion" based on "specialized
25  knowledge"). Unlike a lay witness, an "[e]xpert witnesses may rely on inadmissible hearsay in
26  forming their opinions, so long as it is of a type reasonably relied upon by experts in their field."
27  *United States v. Cazares*, 788 F.3d 956, 977 (9th Cir. 2015); FRE 703.
28  Phipps cannot conduct "research" before he testifies at trial in order to "fill the gaps in

- 5 -

ORACLE'S OBJECTION TO THE
TESTIMONY OF SIMON PHIPPS

[his] memory with hearsay." *Whittemore*, 776 F.3d at 1082.  This is not permissible for fact witnesses.  It would also be sandbagging.  The whole purpose of the eleventh hour deposition was to give Oracle an opportunity to explore Phipps' knowledge of "custom."  It would be unfair for him to gain that knowledge only after his deposition and right before trial, without Oracle having an opportunity to examine his opinions, analysis, and conclusions and rebut them with Oracle's own expert testimony.

Even putting the "research" issue aside, testimony on industry practice and what app programmers think about copyrights is an expert opinion based on specialized knowledge.  He even stated that determining whether "Sun made the declaring code and SSO of the Java APIs only available for use through a license" would "require analysis."  Phipps Depo 55:7-14.  This is quintessential expert testimony.  That is why Google already has an expert—Roderic Cattell—who explained: "Google has engaged me to provide *expert testimony* about … industry practices regarding APIs."  ECF No. 1824-2 (Cattell Report) at 1 (emphasis added).  Yet Phipps has never prepared an expert report; nor was he properly disclosed by Google as an expert.  He therefore cannot provide expert testimony.  *See* FRCP 26(a)(2).

Phipps should also not be permitted to opine on foreign law.  Phipps stated that "in Europe I do not believe APIs are copyrightable," Phipps Depo 70:2-4, and further testified that "I would like to see America follow the practice of Europe in not associating copyright with APIs," *id.* at 70:21-22.  But the "basic mode of proving foreign law" is "expert testimony."  *Universe Sales Co. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999).  Testifying about what the law of copyright is or is not in Europe (a topic on which there is robust disagreement), would be undisclosed expert testimony, that Phipps himself acknowledges he is not qualified to provide.  When asked about whether the APIs at issue *in this case* are copyrighted, Phipps responded: "So I'm not an expert in copyright law."  Phipps Depo. 35:10-11.  In any event, testimony about foreign law is irrelevant to this trial.  The Court will provide the jury the law, based on the statute enacted by the United States Congress and interpreted by the courts.  What view Europe takes on *copyrightability*—not even the issue at trial—offers no probative value and only risks confusing and misleading the jury to Oracle's prejudice.

**CONCLUSION**

The Court should exclude the testimony of Simon Phipps.

Dated: May 9, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Lisa T. Simpson*
Lisa T. Simpson

Counsel for ORACLE AMERICA, INC.