KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

KING & SPALDING  LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone:     (404) 572-4600
Facsimile:     (404) 572-5100

Attorneys for Defendant
GOOGLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>            Plaintiffs,<br><br>    v.<br><br>GOOGLE INC.,<br><br>            Defendant. | Case No.  3:10-cv-03561 WHA<br><br>**GOOGLE'S OPPOSITION TO ORACLE'S MOTION IN LIMINE RE RODERIC CATTELL**<br><br>Trial Date: May 9, 2016<br>Dept:        Courtroom 8, 19th Fl.<br>Judge:       Hon. William Alsup |

1057821

## I.     INTRODUCTION

Oracle has moved to exclude all testimony from Dr. Roderic Cattell, a *percipient* witness with extensive personal knowledge of relevant facts from his over 30 years working at Sun Microsystems, for most of that time as a Sun Distinguished Engineer.  Dr. Cattell was timely disclosed as a fact witness on Java, APIs, and the asserted works, but he also prepared an expert report out of an abundance of caution.  *See* Decl. of Kate Lazarus in Support of Opposition, Ex. A (Second Amended Supp. Disclosures) at 2; *see also* Ex. B (Nov. 25, 2015 email from Simpson to Kamber).  Oracle makes a sweeping request to bar Dr. Cattell from testifying entirely, but offers no basis to exclude Dr. Cattell's percipient testimony based on his personal knowledge, nor could it.  Regardless of whether Dr. Cattell testifies as an expert, there is no basis to prevent him from testifying as a fact witness—especially about his experience working with APIs at Sun.

Dr. Cattell also clearly meets the requirements for testifying as an expert here.  He has the "scientific, technical, [and] other specialized knowledge" to help the jury understand the use of APIs and industry understandings about APIs.  *See* Fed. R. Evid. 702.  "Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994).  Decades of relevant industry experience are sufficient to establish the requisite foundation of "knowledge, skill, and experience." *Id.*  "Experience alone—or experience in conjunction with other knowledge, skill, training or education—may [] provide a sufficient foundation for expert testimony."  Fed. R. Evid. 702, advisory committee's note.  Sun itself long recognized Dr. Cattell's expertise, specifically acknowledging the "valuable assistance and technical advice" it received from him in the preface to the Java Language Specification.  *See* Lazarus Decl. Ex. C (TX 984) at xxii. Because Dr. Cattell has decades of relevant computer science experience, and offers opinions within the scope of that experience that bear directly on the issues in this case, Oracle's motion to exclude his testimony should be denied.

## II.     DR. CATTELL SHOULD BE PERMITTED TO TESTIFY AS A FACT WITNESS

Google disclosed Dr. Cattell as both a fact and expert witness.  See Lazarus Decl. Exs. A & B; ECF 1709-3 (Rule 26(a) disclosures) at 8 ("Dr. Cattell may offer fact and expert testimony

about Application Programming Interfaces ('APIs'), including what APIs are, why APIs and the
re-implementation of APIs are important, and industry practices regarding APIs.").  Therefore, at
a minimum, Dr. Cattell should be permitted to testify as a percipient witness regarding matters
within his personal knowledge.

Dr. Cattell's extensive industry experience gives him personal knowledge about Sun's
practices with respect to APIs (including Java APIs), as well as the expectations and practices of
computer scientists.  Dr. Cattell has been working in the field of computer science since he
received his BS in Computer Science in 1974.  ECF 1824-2 (Cattell Rpt.) ¶ 4.  He received a
Ph.D in Computer Science in 1978.  *Id.* ¶ 5.  Following his employment at Xerox PARC, in 1984
Dr. Cattell joined Sun Microsystems, where he worked for over twenty years.  *Id.* ¶ 9.  He was
first an Engineering Manager, then a Second-Level Manager, and from 1988 to 2007 a
Distinguished Engineer.  Dr. Cattell specializes in database systems.  Dr. Cattell served as a
deputy to Sun's Software CTO and as the chief architect for Sun's Database Technology Group,
and he worked on a reference implementation of the JDBC API for connecting from Java to
relational databases.  *Id.* ¶¶ 21-22.  The JDBC API was originally created as part of the Java EE
("Enterprise Edition") platform, for which Dr. Cattell was the initial architect.  *Id.* ¶ 18.  Today,
however, it is also part of the Java SE platform, consisting of two Java API packages asserted in
the present lawsuit – java.sql and javax.sql.[1]  Based on his work on the JDBC APIs, Dr. Cattell is
deeply familiar with Sun's practices regarding APIs, including with respect to the asserted Java
APIs packages.

Witnesses may testify to facts within their own personal knowledge.  Indeed, in the prior
trial, the Court overruled an objection to Oracle CEO Larry Ellison's trial testimony about the
technical details of an application framework written by another company, on the ground that Mr.
Ellison vouched that those technical details were within his personal knowledge:

Q. Now, is it necessary to use the Java APIs that Sun has created in order to use
the Java programming language?

A. Absolutely not.

[1] *See* http://docs.oracle.com/javase/1.5.0/docs/guide/jdbc/.

1057821

1    MR. VAN NEST: Objection, Your Honor. Calls for expert testimony.

2    THE COURT: Do you know the answer to the question?

3    THE WITNESS: Yes, Your Honor.

4    THE COURT: From personal knowledge?

5    THE WITNESS: Yes, Your Honor.

6    THE COURT: Overruled. Please answer.

7    THE WITNESS: There's a company in the UK that built its own Java
     environment. And they used the Java programming language, but they created
8    their own set of APIs, prewritten programs. And that other environment is called
     Spring.
9
     So Spring uses the Java programming language, but it doesn't use the Sun-created
10   APIs. They have their own set of APIs and their own set of prewritten programs.

11   Trial Tr. at 290:15-291:6.

12        Dr. Cattell's decades of industry experience, including his years as a Sun Distinguished

13   Engineer, provides the basis for percipient witness testimony about the use of APIs, his own

14   understandings, and the actions taken by industry participants.  Further, Dr. Cattell's personal

15   knowledge about the plaintiff's own approach to API re-implementation is highly probative of

16   Google's fair use, good faith, and lack of willfulness.  *See* Trial Tr. 1933:7-16 (Court orders that

17   Sun's statements are party admissions).  Oracle's sweeping attempt to preclude all testimony

18   from Dr. Cattell, without providing any basis to exclude his fact testimony, should be denied.

19   **III.   DR. CATTELL SHOULD BE PERMITTED TO TESTIFY ABOUT HOW APIS
             WORK AND THE PRACTICES AND EXPECTATIONS OF COMPUTER
20           SCIENTISTS**

21        While Google believes Dr. Cattell is a percipient witness who will testify to facts within

22   his personal knowledge, to the extent that the Court deems some of his testimony to be expert

23   opinion, he should still be allowed to testify as an expert because he is one.  That is why Dr.

24   Cattell, out of an abundance of caution, prepared an expert report.  Dr. Cattell will offer testimony

25   about APIs, "including what APIs are, why APIs and the re-implementation of APIs are common,

26   and industry practices regarding APIs."  *See* ECF 1824-2, ¶ 2.

27        In addition to his above-described experience at Sun, Dr. Cattell has worked with

28   computer scientists and developers outside of Sun through his participation in several preeminent

industry groups and projects.  For example, Dr. Cattell was Sun's representative at the SQL

Access Group (in which Oracle was a participant).  The purpose of the group was to establish an

API for connecting from Java to relational databases.  *Id.* ¶ 15.  Dr. Cattell was also Sun's

representative to the Object Management Group.  Dr. Cattell contributed to the design of a

number of APIs as a member of that group.  *Id.* ¶ 16.  Dr. Cattell also participated in the Java

Community Process, the formal, Sun-sponsored but community-based program for developing

standard Java technical specifications, reference implementations of those specifications, and

related test suites.  The JCP included many members that did not work for Sun/Oracle.  As Dr.

Cattell put it, "in over 40 years, I was privy to what people's opinions were in various companies

and forums."  ECF 1824-3 (Cattell Depo. Tr.) at 23:11-13.

Therefore, as a result of his education and lengthy and distinguished career in software

development, Dr. Cattell has the "scientific, technical, or other specialized knowledge will help

the trier of fact to understand" the use of APIs and industry expectations about APIs.  Fed. R.

Evid. 702.  In contrast, Oracle's expert, Dr. Kemerer, purports to offer opinion testimony about

industry norms for APIs, but has not even programmed in any significant way since 1979, and has

never programed in Java.  ECF 1570-4 (Kemerer Reb. Rpt.) at 72-76; ECF 1562-1 (Mar. 3., 2016

Depo. Tr.) 34:21-35:5.  If Dr. Kemerer's opinions are admissible, certainly Dr. Cattell's must be.

In providing expert testimony, Dr. Cattell may rely on his personal experience, and need

not have prepared formal research or studies for purposes of this litigation.  As the Supreme Court

has explained, for some cases, "the relevant reliability concerns may focus upon *personal*

*knowledge or experience*."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (emphasis

added).  "[T]there are many different kinds of experts, and many different kinds of expertise."  *Id.*

Where an expert's testimony is not "contingent upon a particular methodology or technical

framework," it is proper for a court to rely on the expert's "experience, training, and education" in

determining that his testimony is sufficiently reliable.  *Hangarter v. Provident Life & Accident*

*Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004).  Accordingly, Oracle's repeated charge that Dr.

Cattell did not conduct any "empirical research" in preparing his report is unavailing; Dr. Cattell

properly relies on his own knowledge, skills, and experience.

Judge Whyte recently denied a similar motion in *Radware, Ltd. v. F5 Networks, Inc.*, No. 13-CV-02024-RMW, 2016 WL 590121 (N.D. Cal. Feb. 13, 2016).  There, the plaintiff argued that defendant's expert was not qualified to testify regarding "alternatives to link load balancing" because he "performed no study or analysis of link load balancing."  *Id.* at *20.  In response, the defendant cited the expert's "20 years of experience in the networking field."  *Id.*  The court concluded that the expert had "sufficient industry experience to offer opinions on ISP load balancing functionalities and how enterprises use such functionalities."  *Id.*  The court further rejected the plaintiff's challenge to the reliability of the expert's opinions because he employed "no discernible methodology."  *Id.*  The defendant explained that the expert's opinions were "based on personal observations and experience."  *Id.*  The court quoted *Kumho* for the proposition that "'no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.'"  *Id.* (citing *Kumho*, 526 U.S. at 156).  The court found that the expert properly based "his opinions on his experience in the networking industry, and that he had explained how he reached his conclusions."  *Id.* at *21.  Like the defendant's expert in *Radware*, Dr. Cattell bases his expert opinions on his extensive industry experience.

Oracle brushes aside Dr. Cattell's extensive qualifications by mischaracterizing the nature of his opinions and testimony.  Oracle argues that Dr. Cattell has no "knowledge of the current or historic API licensing practices of Sun, Oracle, or Google, and he did not review any API licenses in preparing his Report" and "no specialized knowledge about API licensing practices or the legal standard governing fair use."  ECF 1824 at 1, 3.  That is a red herring; Dr. Cattell is not a lawyer or a licensing expert, and has not purported to offer any legal opinions or conclusions of law.  Nowhere in his report does Dr. Cattell opine about licensing terms, copyright law, or directly about fair use.[2]  Rather, Dr. Cattell offers wholly non-legal testimony about the nature of APIs and how programmers use them, based on his extensive experience in the field.  His opinions are limited to the actual practices regarding of the APIs in the industry, and Oracle's attempt to recast him as an unqualified legal expert is an irrelevant distortion.

---

[2]  Dr. Cattell's testimony offers facts relevant to the jury's determination of whether Google's use is fair, but he does not purport to state an opinion on the ultimate legal issue.

1057821

**IV.     DR. CATTELL SHOULD BE PERMITTED TO TESTIFY ABOUT OTHER APIS**

Oracle also argues that Dr. Cattell should not be permitted to testify regarding the use of APIs from other languages and databases.  ECF 1824 at 4-5.  Oracle's motion is yet another front in its unsuccessful battle to portray Google as an outlier and a willful infringer and block evidence that Google acted in good faith and consistent with industry practice in re-implementing the 37 Java SE API packages.  Oracle has even gone so far as to seek to exclude evidence of the re-implementation of *the same Java APIs at issue here* through the GNU Classpath project and Apache Harmony, as well as Sun's own re-implementation of APIs.  ECF 1552, 1785.  The Court denied these motions.  ECF 1748, 1829.  Now Oracle tries to prevent Dr. Cattell from informing the jury about other computer scientists' and programmers' re-implementation of APIs.  But this testimony will be helpful to the jury, and Dr. Cattell is qualified to opine about it.

First, Oracle's charge that Dr. Cattell doesn't know whether all these APIs are copyrighted is irrelevant.  Again, Dr. Cattell proposes to testify from personal knowledge about widespread re-implementation of APIs by industry participants.  He is *not* offering any testimony on legal issues or offering legal conclusions.  His opinions are about the practices and expectations of computer scientists and programmers, not about what lawyers may have thought.

Second, for the reasons outlined above, Dr. Cattell's testimony about other APIs should not be excluded on the grounds that he "did not do any comparative analysis." ECF 1824 at 4.  Dr. Cattell's opinions are not based on empirical studies, but rather on his own decades' of work in the field.  Here, Oracle is talking out of both sides of its mouth.  Oracle's expert Dr. Kemerer offers general testimony of the "industry norms for APIs in general" that is not based on any empirical research, and the Court has declined to exclude this testimony.  *See* ECF 1806 at 4-5 (finding Dr. Kemerer's opinions on industry norms appropriate within a "battle of the experts").  Dr. Cattell's expert opinion is grounded in 40 years of actual industry experience and is far more probative than Dr. Kemerer's assembled quotations.  ECF 1570-4 (Kemerer Reb. Rpt.) ¶¶ 55-86.

Third, the discussion of other APIs in Dr. Cattell's report will be helpful to the jury.  This Court has already stated its preference to defer deciding whether to admit evidence of other developers' uses of APIs until the context is clearer.  *See* ECF 1829 at 4.  Google urges the Court

1057821

to stay that course until Dr. Cattell takes the stand, because the context will demonstrate that his testimony is not just relevant but highly probative. The jury has been instructed that "fair use presupposed good faith and fair dealing." ECF 1828 at 4. In its opening statement, Oracle claimed that "Google acted outside business acceptable conduct," Google "knew it needed a license," and "everybody else took a license."[3] Thus, Google must be permitted to present evidence that it acted in good faith and in a manner consistent with prevailing practices with respect to API reimplementation, including the Java SE declarations/SSO at issue here, all of which support Google's belief that its own use would be improper. Programmers re-implement the APIs that Dr. Cattell discusses in the same way that they re-implement the 37 Java SE API packages, and this practice provides an important context for the re-implementations at issue. Indeed, Oracle has put forth expert opinions about Google and other companies' conduct with respect to other APIs, thus conceding the relevance of APIs beyond the accused declarations/SSO from the 37 Java SE API packages. *See* ECF 1570-4 (Kemerer Reb. Rpt.) § VII(D); Lazarus Decl. Ex. D (Schmidt Reb. Rpt.) ¶¶ 208-16. Testimony about APIs from BIO, Unix, SQL, ODMG and WINE will demonstrate a pervasive industry practice of API re-implementation from a variety of software projects, and help the jury understand the facts at issue.

## V.    CONCLUSION

The same day that Oracle requested permission to move to exclude the opinions in Dr. Cattell's report, it objected to the testimony of Google fact witness Dr. Joshua Bloch (who testified at length during the first trial) on the basis that he did not file an expert report. *See* ECF 1815. Oracle's "heads I win, tails you lose" tactics are burdensome and meritless. Dr. Cattell's opinions about use of the APIs and computer scientists' expectations are properly based on his considerable knowledge, skill, and experience, and therefore should be admitted. Regardless of whether he is permitted to offer expert opinions, Dr. Cattell should be permitted to testify as a percipient witness.

---

[3] Google provides these quotations without the benefit of the trial transcript.

Dated:  May 10, 2016

KEKER & VAN NEST LLP

By:   /s/ Robert A. Van Nest
ROBERT A. VAN NEST
CHRISTA M. ANDERSON
DANIEL PURCELL

Attorneys for Defendant
GOOGLE INC.

GOOGLE'S OPPOSITION TO ORACLE'S MOTION IN LIMINE RE RODERIC CATTELL
Case No.  3:10-cv-03561 WHA (DMR)

1057821