1    KEKER & VAN NEST LLP
     ROBERT A. VAN NEST - # 84065
2    rvannest@kvn.com
     CHRISTA M. ANDERSON - # 184325
3    canderson@kvn.com
     DANIEL PURCELL - # 191424
4    dpurcell@kvn.com
     633 Battery Street
5    San Francisco, CA 94111-1809
     Telephone:    (415) 391-5400
6    Facsimile:    (415) 397-7188

7    KING & SPALDING  LLP
     BRUCE W. BABER (pro hac vice)
8    bbaber@kslaw.com
     1180 Peachtree Street, N.E.
9    Atlanta, Georgia  30309
     Telephone:    (404) 572-4600
10   Facsimile:    (404) 572-5100

11   Attorneys for Defendant
     GOOGLE INC.

12                      UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                       SAN FRANCISCO DIVISION

15

16   ORACLE AMERICA, INC.,                Case No.  3:10-cv-03561 WHA

17              Plaintiffs,               **GOOGLE INC.'S RESPONSE TO
                                          COURT'S FURTHER REQUEST RE IBM
           v.                             WITNESS DUIMOVICH**
18
     GOOGLE INC.,                         Dept.        Courtroom 8, 19th Fl.
19                                        Judge:       Hon. William Alsup
                Defendant.
20

21

22

23

24

25

26

27

28

1058661

1    Pursuant to the Court's oral request this morning for further briefing, Google provides the

2  following response regarding the relevance of the testimony of IBM employee John Duimovich.

3  From the very first words in its opening statement, Oracle has accused Google in this trial of

4  acting outside the bounds of business acceptable conduct.  The deposition testimony of IBM's

5  corporate designee, John Duimovich, regarding IBM's own re-implementations to the Apache

6  Harmony open source project directly contradicts this assertion and is therefore highly relevant to

7  Google's case.

8    Mr. Duimovich testified that IBM was a major contributor to the Apache Harmony open

9  source project.  And as counsel for Oracle readily conceded at oral argument this morning, IBM

10 *never had a license*—even under the agreement Oracle submitted to the Court—to create its own

11 re-implementations of the Java APIs at issue and contribute those implementations to the Apache

12 Harmony Project under the Apache 2.0 license, the same license as used in Android.  The most

13 logical interference from IBM's conduct is that IBM itself believed that it its re-implementation

14 of the Java APIs in Apache Harmony was in accordance with acceptable business practice and did

15 not require a license.

16    Contrary to Oracle's arguments, a broadly-worded license agreement between IBM and

17 Sun—which relates to the use of Sun's implementations of the Java APIs and the accompanying

18 documentation—does not render all evidence relating to IBM's involvement in Apache Harmony

19 irrelevant as a matter of law.  Indeed, even under Oracle's strained reading of the license (which

20 Google disputes) that IBM's *use of Apache Harmony* was licensed, other testimony from Mr.

21 Duimovich regarding IBM's overall participation in Apache Harmony would still be relevant to

22 custom and practice for the reasons stated above.  Moreover, regardless of whether IBM's use of

23 Apache Harmony was licensed, evidence that IBM shipped commercial products containing

24 Apache Harmony code is directly relevant to meet Oracles arguments to the jury at the last trial

25 that Apache Harmony was never used in commercial products.

26    Accordingly, Google should be allowed to present Mr. Duimovich's highly-relevant

27 deposition testimony to the jury.

28

1

GOOGLE'S FURTHER RESPONSE RE IBM WITNESS DUIMOVICH
Case No.  3:10-cv-03561 WHA

1058661

I.      **MR. DUIMOVICH'S TESTIMONY REGARDING IBM'S CONTRIBUTIONS TO HARMONY IS RELEVANT TO WHETHER GOOGLE'S CONDUCT CONSTITUTED BUSINESS ACCEPTABLE CONDUCT.**

At his deposition, Mr. Duimovich testified that IBM re-implemented several of the Java SE class libraries and contributed those Java class libraries to the Apache Harmony Project:

Q. What portions of the Apache Harmony Project did IBM design and create?

A. We contributed a bunch of the core class libraries, Java class libraries, and we contributed the VM interface for interfacing to arbitrary virtual machines.

Duimovich Depo. at 34:2-7.

As counsel for Oracle conceded this morning, the IBM-Sun license that Oracle now relies on does not include a right to sublicense (except for sharply limited purposes not relevant here). OAGOOGLE0029214829 (Technology License and Distribution Agreement ["TLDA"]) at § 2.1(a).  IBM made substantial code contributions to Apache Harmony under an open source license despite these purported restrictions, as did Intel.  *See* Duimovich Depo. at 34:2-7, 56:19-57:11.

Sun was fully aware that IBM and Intel were contributing their own open source implementations of the Java class libraries to Apache Harmony.  Indeed, when IBM announced its contributions to the Apache Harmony project, Sun's Chief Open Source officer at the time, Simon Phipps, sent an email sent to others within Sun observing that "IBM bootstraps Apache Harmony."  TX7578.  Oracle's witness Henrik Stahl likewise testified that at the time of its acquisition of Sun, Oracle was aware that IBM and Intel were "commercial supporters" of the Apache Harmony Project.  Stahl Depo. at 94:14-17.[1]

Moreover, Mr. Duimovich testified that not only was Sun fully aware that IBM had made contributions to Apache Harmony, but that Sun had provided IBM and the Apache Software Foundation a public platform in 2009 at Sun's main Java conference, JavaOne, to promote Harmony as a viable open source implementation of the Java platform.  Duimovich Depo. at

---

[1] Oracle's 30(b)(6) corporate designee on Sun/Oracle's knowledge of Apache Harmony was unprepared to testify on that topic, stating that had he no knowledge of Apache Harmony beyond a high level understanding of the Sun-Apache TCK dispute.  Smith Depo. at 229:7-231:18.

1058661

1   94:13-95:22.  As reflected in an article taken from Sun's website and used with Mr. Duimovich at

2   his deposition, IBM announced at JavaOne 2009 that Apache Harmony was a "free, open-source

3   implementation of Java SE," and that "IBM's development model is to collaborate deeply on

4   innovative open source projects that may be suitable for the enterprise, such as Apache Harmony .

5   . . ."  TX 7327 at 9.[2]

6        Thus, prior to its acquisition by Oracle, Sun fully understood that IBM was contributing

7   unlicensed open source code that used declarations created by Sun, but had implementations

8   created by IBM, and did nothing to stop it.  And that's because such open source re-

9   implementations were consistent with business acceptable conduct.  Mr. Duimovich's testimony

10  is therefore relevant and admissible on the issues of fair use and willfulness.

11  **II.    MR. DUIMOVICH'S TESTIMONY REGARDING IBM'S COMMERCIAL USE
          OF APACHE HARMONY IS RELEVANT TO REBUT ORACLE'S PRIOR
12        POSITION THAT APACHE HARMONY WAS NEVER IN COMMERCIAL USE.**

13        In addition to IBM's contributions to Apache Harmony being relevant to show that

14  Google was engaging in business acceptable conduct, Mr. Duimovich's testimony is also

15  necessary to meet Oracle's arguments following the last trial that "Google did not call any

16  witness from IBM, or any witness who would have first-hand knowledge of whether IBM used

17  Harmony code in any of its products."  Dkt. 1081 at ¶¶ 48-50.  Indeed, during the last trial, Oracle

18  solicited testimony from at least witnesses to suggest that Google was the ***only company*** that had

19  ever used Apache Harmony code in commercial product:

20        Q: Are you aware of any commercial uses of Apache Harmony other than the
          packages of class libraries that are in Android.
21
          A: I am not.
22

23  RT at 403:7-9 (Re-Direct of Thomas Kurian).

24        Q: Are you aware of any commercial implementations of Apache Harmony in the
          world today?
25
          A: Only Android.
26

27  _____
[2] Mr. Duimovich testified at his deposition that he had helped prepare this presentation at
28  JavaOne 2009, that he had attended the presentation in person, and that he could confirm that the
article's description of the presentation was accurate.  Duimovich Depo. at 94:13-95:22.

3

GOOGLE'S FURTHER RESPONSE RE IBM WITNESS DUIMOVICH
Case No.  3:10-cv-03561 WHA

1058661

1    RT at 530:22-24 (Direct of Edward Screven[3]).

2    Mr. Duimovich's deposition testimony directly contradicts this prior testimony of Oracle

3    witnesses.  Mr. Duimovich testified that Apache Harmony shipped with, and continues to be used

4    with, IBM commercial products.  Again, Sun was fully aware of this fact.  In the very same

5    article discussed above and used with Mr. Duimovich at his deposition, IBM's Tim Ellison

6    expressly told the Sun and the rest of the audience at JavaOne that "Apache Harmony is in broad

7    commercial use" and that "IBM's Lotus Notes and SameTime, Symphony, and Expeditor are all

8    built on a Harmony base."  TX 7327 at 9.

9           The Court should not allow Oracle to have it both ways.  Having argued to the jury that

10   Google's purported commercial use of Apache Harmony was not business acceptable conduct,

11   Google must be allowed to respond with highly-probative evidence that Apache Harmony was

12   also in commercial use by IBM.  While Oracle is free to argue to the jury, as it did during the last

13   trial, that IBM's conduct should be distinguished from Google because of the existence of a prior,

14   separate license agreement between IBM and Sun, such arguments go to the weight of the

15   evidence regarding IBM's commercial use of Apache, not its admissibility.

16   **III.    IBM-SUN LICENSE AGREEMENT SUPPORTS GOOGLE'S POSITION
17            REGARDING BUSINESS ACCEPTABLE CONDUCT.**

18          Finally, the language of the IBM license that Oracle now cites is consistent with Google's

19   own position a license was necessary only to be able to use the implementation source code for an

20   API, not for the individual declarations (i.e. "declaring code") or their structure, sequence, and

21   organization (i.e. "SSO").  While Oracle characterized Exhibit A to the IBM-Sun license

22   agreement as comprising only the "Technology" licensed under the agreement, the title of the

23   exhibit is in fact "DESCRIPTION OF TECHNOLOGY AND DOCUMENTATION."  *See*

24   OAGOOGLE0029214859.  That is, Exhibit A describes ***both*** the "Technology" being licensed

25   under the agreement, as defined in section 1.45,[4] and the "Documentation"—*i.e.*, the English

26   language written explanations—which is defined separate and apart from the "Technology":

27   _____

[3] Oracle has indicated that it intends to call Mr. Screven during the fair use phase of this trial.

28   [4] *See* OAGOOGLE0029214828.

GOOGLE'S FURTHER RESPONSE RE IBM WITNESS DUIMOVICH
Case No.  3:10-cv-03561 WHA

1058661

> 1.15 "Documentation" means hardcopy and/or softcopy versions of *Specifications and other printed materials* and any updates thereto which *Sun provides for use with the Technology* and which are more particularly identified in Exhibit A.

OAGOOGLE0029214826 (emphasis added).  Thus, the reference to the "Java API Specification" in Exhibit A cited by Oracle does not refer to Source Code[5] at all, but to Documentation intended to be used with source code licensed under the agreement.  Indeed, not only does the term "Java API Specification" fall under the heading "Documentation" in Exhibit A—as compared to the three prior headings in Exhibit A labeled "Technology"—the definition of "Specification" in the agreement makes it abundantly clear that the term refers only to written descriptions of functionality, not the source code containing the declarations themselves:

> 1.42 "Specification" means a *written description of* the applicable interfaces or functions.

 OAGOOGLE0029214828 (emphasis added).  The "Java API Specification" also explicitly describes the Specifications as being in "ASCII" and "Frame" formats, *i.e.,* not in source code form.  OAGOOGLE0029214862.

By contrast, the list of the licensed "Technology" (as defined in the agreement) refers to the source code of entire API packages as being covered by the license—*i.e.*, to files containing not just declarations but also implementations.  *See* OAGOOGLE0029214859.  Indeed, on page 4 of the Exhibit A, in discussing classes associated with the "JavaOS Runtime Interpreter," the agreement refers to the "JavaOS *Implementation*" of those classes.  OAGOOGLE0029214862 (emphasis added).

Just as an author may seek to assert a copyright over the description of the functionality of the various APIs in a book about the Java APIs, Sun granted IBM a license to, at most, Sun's own English language "*written description of* the applicable interfaces or functions" of the Java APIs.  OAGOOGLE002d9214828.  Sun did not purport to grant a license over the declarations, because such a license was not required at the time under the applicable standards of business acceptable conduct.

---

[5] As counsel for Oracle noted to the Court, the agreement separately defines "Source Code" as constituting "human readable, in whole or in party, of the Technology," *i.e.*, not the Documentation.  OAGOOGLE0029214828.

1058661

1

## IV.     CONCLUSION

2          For the reasons set forth above, the Court should allow Google to play to deposition

3    testimony of John Duimovich.

4    Dated:  May 10, 2016                                        KEKER & VAN NEST LLP

5

6                                                        By:    s/ *Robert A. Van Nest*
                                                               ROBERT A. VAN NEST
7                                                              CHRISTA M. ANDERSON
                                                              DANIEL PURCELL
8
                                                              Attorneys for Defendant
9                                                              GOOGLE INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S FURTHER RESPONSE RE IBM WITNESS DUIMOVICH
Case No.  3:10-cv-03561 WHA

1058661