KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:      (415) 397-7188

KING & SPALDING  LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone:     (404) 572-4600
Facsimile:      (404) 572-5100

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>            Plaintiffs,<br><br>      v.<br><br>GOOGLE INC.,<br><br>            Defendant. | Case No.  3:10-cv-03561 WHA<br><br>**GOOGLE'S RESPONSE TO ORACLE'S OBJECTION TO THE TESTIMONY OF SIMON PHIPPS**<br><br>Trial Date: May 9, 2016<br>Dept:         Courtroom 8, 19th Fl.<br>Judge:       Hon. William Alsup |

## I. INTRODUCTION

As Oracle made clear in its opening statement, it intends to argue that Google's conduct was outside the bounds of "acceptable" business conduct. Decl. of Kwun in Support of Google's Resp. to Oracle Obj. to Testimony of Phipps ("Kwun Decl."), Ex. 1 at 251:22, 258:21. Simon Phipps, Sun's Chief Open Source Officer during the relevant time period, whose job, as his title implies, was to know and understand industry custom and practice regarding open source issues, offers highly relevant evidence -- based on his own personal engagement with these issues -- that squarely rebuts Oracle's contention that Google acted in bad faith and contrary to "acceptable" business conduct. Because his knowledge is undeniably relevant and admissible, Google respectfully submits that Mr. Phipps should be permitted to explain these industry practices to the jury.

Mr. Phipps worked for Sun for ten years and was Sun's Chief Open Source Officer when Sun made the decision to release OpenJDK. As such, Mr. Phipps is intimately familiar with Sun's open source business strategy, including: (1) Sun's knowledge that the release of OpenJDK would allow forks, even incompatible forks to Java SE; (2) Sun's decision not to include license terms that prevented incompatible forks; (3) Sun's decision not to include license terms that prohibited commercial uses of Java; (4) Sun's decision to use the Classpath Exception for the Java SE APIs; and (5) why Sun did not attempt to stop open source implementations like GNU Classpath and Apache Harmony.

On these topics, Mr. Phipps is the textbook case of a percipient witness. He was at the table when Sun made these critical decisions and therefore he has direct and personal knowledge as to the reasons Sun made these decisions. And, contrary to Oracle's claims, he is not being offered as an expert witness on industry custom.[1] His testimony comes not from an analysis of industry custom, but rather his own personal knowledge of Sun's and other company's business practices. Moreover, his testimony is highly relevant as it speaks directly to the industry custom and practice – as Sun knew it to be – regarding re-implementations of APIs. Therefore, Google

---

[1] In addition, Google does not intend to elicit Phipps' opinions as to the applicability of any foreign laws on copyright in this trial, and thus Oracle's objections to his testimony on these grounds are not on point. ECF 1852 at 6 (Oracle's Obj. to the Testimony of Phipps).

1
GOOGLE'S RESPONSE TO ORACLE'S OBJECTION TO THE TESTIMONY OF SIMON PHIPPS
Case No.  3:10-cv-03561 WHA

1058743.03

respectfully submits that this Court should overrule Oracle's objection to the testimony of Mr. Phipps and allow him to testify as to these critical issues.

## II.   MR. PHIPPS WILL OFFER RELEVANT AND ADMISSIBLE EVIDENCE.

### A.   Mr. Phipps has personal knowledge of the industry custom and practice of re-implementing APIs

As explained above, Google offers Mr. Phipps solely as a fact witness. His knowledge regarding industry custom and practice comes directly from his actions and experience as a programmer himself and a ten year employee at Sun, including his work duties as Sun's Chief Open Source Officer. Mr. Phipps testified in detail regarding how his personal experiences informed his understanding of industry custom. For example, Mr. Phipps testified " I believe that it's – that as a programmer, which I have been a programmer in the past, I would not give a second thought about the existence of a license for function declarations that I'm putting at the top of a program." Kwun Decl., Ex. 2 at at 19:14-18. Indeed, Mr. Phipps testified that he used declarations to write a compiler as part of his electrical engineering coursework and was never advised to take a license to the declarations he used. *Id.* at 25:17-25. Further, Mr. Phipps explained that his testimony was based on his own personal observations. *Id.* at 23:17-24:3 (describing that his testimony is based on his "observed practices of software developers … at conferences" people he "observed at Sun," and "customers"). And, specifically, with regard to his work as a Sun executive, Mr. Phipps testified:

> And the advantage I had at Sun was of working in the open source community, where I had visibility into a number of other projects to see what their practices were. And at no point do I recall seeing an example which would suggest that my personal practice was in some way unusual.

*Id.* at 26:13-18. Mr. Phipps certainly has the requisite personal knowledge to testify as to his understanding and observations of the way in which leading industry players re-implemented APIs.

GOOGLE'S RESPONSE TO ORACLE'S OBJECTION TO THE TESTIMONY OF SIMON PHIPPS
Case No.  3:10-cv-03561 WHA
1058743.03

### B. Mr. Phipps offered reliable and relevant testimony regarding industry custom and practice of re-implementing APIs

Contrary to Oracle's assertions, Mr. Phipps offered compelling evidence regarding the industry custom and practice in general and Sun's practices, in particular. For example, Mr. Phipps testified.

> Q State in your own words what you think the practice was at that point in time [2005-2007].
>
> A. A programmer would expect to be able to declare any functions that they would later have included by linking or by a dynamic reference in their program, and they would use those function declarations *without regard to license because they would not expect to need a license to use the declaration*, although they might expect to need it or they should expect to need a license to the implementation later on when the program is linked.

*Id.* at 22:13-23 (emphasis added). When asked to provide what "hard core facts" he was relying on to testify that the practice in the industry is to use APIs without being subject to license terms, Mr. Phipps cited the Software Foundation's Apache HTTP Server Project ("HTTPD"), "the most widely used web server on the Internet," and explained:

> When declarations are made at the top of the file to indicate which functions are going to be used by the program, there are not, next to those declarations, any comments or repetition of copyrightable -- copyright ownership or license terms associated with the function declarations, which indicates that the programmers are not concerned about the ownership of those specific parts of the program; whereas, they're very scrupulous to ensure that copyright terms and licenses for the parts of the program that are within the file are rehearsed. I would have expected that if there was a concern about the licenses for the function declarations, that the programmers involved would have some concern to document the way in which they are complying with the license terms.

*Id.* at 75:23-76:14.

Because Mr. Phipps' testimony does not fit Oracle's theory of the case, Oracle takes snippets of it entirely out of context in an effort to paint Mr. Phipps as lacking personal knowledge. In particular, Oracle cites to testimony in which Mr. Phipps states that he would need to do research to answer certain questions as evidence that he does not have personal knowledge about industry custom. As demonstrated above, however, Mr. Phipps has a great deal of personal

3
GOOGLE'S RESPONSE TO ORACLE'S OBJECTION TO THE TESTIMONY OF SIMON PHIPPS
Case No. 3:10-cv-03561 WHA

1058743.03

knowledge about industry practice with respect to reimplementation of APIs. Moreover, a careful review of the transcript reveals that he answered the questions, but just not in a way that suits Oracle's purposes.

> Q. While you were employed by Sun, did you understand that the use of the APIs was subject to license terms?
>
> A Well, the difficulty I have with the question is that you insist on continuing to talk about the use of APIs. An API is useless without an implementation. The license generally applies to the implementation. So the use of this with regard to license terms is going to refer to the overall use of it with regard to creating an implementation. I would not expect there to be a restriction on including any of these function calls in my program.

*Id.* at 43:14-16; 43:25-44:8. Likewise, when asked if he conducted a survey about industry custom, Mr. Phipps testified that he had no need to do a survey, because the custom was "observable in every programming – in every project that one encountered. *Id.* at 25:11-13.

**C.  Phipps' Testimony Demonstrates that Sun was aware of, and its practices were consistent, with industry custom**

With regard to Sun's own practices, Mr. Phipps explained that Sun was fully aware of projects like Apache Harmony and GNU Classpath and developed an explicit business strategy to grow the market for Java by open sourcing it. For example, Mr. Phipps made it clear that Sun knew that the GNU Classpath was "a project to create an independent implementation of the Java class libraries" and that he does not recall anyone from GNU ever seeking "authorization" to pursue the project. *Id.* at 89:7-13.

Moreover, Mr. Phipps testified that "making sure it was possible to use Java on open source platforms…was one of our [Sun's] business priorities" (*Id.* at 60:5-7) and that Jonathan Schwartz, Sun CEO at the time, "encouraged him from the beginning of his tenure as CEO to go and work on improving Sun's reputation within the open source community." *Id.* . at 104:7-11. Indeed, Mr. Phipps explained that Sun offered Java without a commercial license, on an open source basis, even prior to the release of OpenJDK. Mr. Phipps testified that Sun "made the -- the Java platform available for Linux to the Debian community in the interim period while we -- between when we said that we would release Java as open source and when we actually released

OpenJDK, which I think was 2007." *Id.* at 59:5-9.  Mr. Phipps further testified that open sourcing Java to the Debian community (a group of software developers who produce one of the most important GNU/Linux distributions) was not done for research purposes.  Rather, it was to be used commercially.  *Id.* at 60:1-3.  Mr. Phipps' testimony about Sun's practices is corroborated by the public FAQs that accompanied the release of OpenJDK in which Sun explicitly states that it expects "great new ideas and valuable research to come from forks to the platform" and that "One of our primary goals in this move was to grow the *Java* market, benefiting everyone -- platforms, ISVs, OEMs, customers of every type as the reach and richness of the *Java* market grows.").  *See* Kwun Decl., Ex. 3 at  2; 9 (TX 7722) (emphasis added).

As his testimony makes clear, Mr. Phipps has sufficient first-hand knowledge of Sun's business practices to credibly testify regarding Sun's practices of allowing independent implementations of APIs.

### D.     Mr. Phipps did not "admit" that Sun required a license to use APIs

Again, by taking his testimony out of context, Oracle tries to argue that Mr. Phipps admitted that Sun required a license to use the Java SE APIs.  Mr. Phipps admitted no such thing.  As explained above, Mr. Phipps testified repeatedly that he did not believe that anyone needed a license to use an API.  Instead, his testimony about licenses involved licenses only for the *implementations* of the APIs or for the Java platform *as a whole*.  For instance, when asked if it was correct that "there was a practice at Sun during the time you were there to make the declaring code and APIs available through a commercial license," Mr. Phipps responded only, "I'm aware that the Java platform was being made available to licensees." Kwun Decl. Ex. 1 at 38:6-12.  And Mr. Phipps was very careful to explain that "Well, the ***APIs didn't need a license***, but the platform, as a whole, was subject to license terms, and the API is a part of the platform when the whole thing is licensed together."  *Id.* at 52:1-4 (emphasis added).

### E.     Google is entitled to question Mr. Phipps on other topics within his personal knowledge

In its final pretrial conference witness list, Google summarized the substance of Mr. Phipps's trial testimony as:

5
GOOGLE'S RESPONSE TO ORACLE'S OBJECTION TO THE TESTIMONY OF SIMON PHIPPS
Case No.  3:10-cv-03561 WHA

1058743.03

> Mr. Phipps is expected to testify about Sun's open source policies and practices, Sun's release of Java technologies as open source, and in particular OpenJDK, and Sun's policies and practices regarding third-party implementation of its APIs. He also may testify concerning documents on the exhibit list that were either authored or received by him

ECF 1709-3 at 4:25-5:2.  Nowhere in Oracle's Objection does it provide a basis for excluding this testimony in its entirety.

## III.   CONCLUSION

Mr. Phipps' testimony is admissible and highly relevant to Google's argument that it did not act in bad faith.  Indeed, his testimony helps to establish that Google acted in accord with industry custom.  As a former high ranking executive during the time that Sun made the decision to open source Java, Mr. Phipps is ideally situated to explain to the jury Sun's contemporaneous understanding of the industry custom regarding re-implementing APIs and Sun's business objectives in releasing OpenJDK under the Classpath Exception.  Consequently, Google respectfully submits that Mr. Phipps should be permitted to testify.

Dated:  May 10, 2016                                         KEKER & VAN NEST LLP

                                                              By:   s/Michael S. Kwun
                                                                     ROBERT A. VAN NEST
                                                                     CHRISTA M. ANDERSON
                                                                     DANIEL PURCELL

                                                                     Attorneys for Defendant
                                                                     GOOGLE INC.