ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>            Plaintiff,<br><br>      v.<br><br>GOOGLE INC.<br><br>            Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S MOTION TO STRIKE PORTIONS OF DR. BLOCH'S TESTIMONY**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William Alsup |

**NOTICE OF MOTION AND MOTION**

Google elicited testimony from Dr. Joshua Bloch on direct examination that Google previously agreed and the Court previously ordered Google not to elicit, after Oracle filed an objection to the proposed testimony several days earlier.  This testimony by Dr. Bloch included undisclosed expert analysis that Google represented to the Court was performed by Dr. Bloch *in 2012 during this litigation*; but Google presented the analysis to the jury as if Dr. Bloch had performed it while he was at Sun between 1996 and 2004, before he left to join Google.  The testimony was contrary to Google's representation to this Court during the hearing about Oracle's objections to this very testimony.

Oracle therefore moves this Court to strike this testimony by Dr. Bloch as it violates Google's agreement and the Court's order not to adduce such testimony and because it is undisclosed expert testimony.  Oracle respectfully requests consideration of this motion on Monday, May 16, 2016 at 7:30 AM so any corrective instruction can be provided to the jury before Google rests its case.

**DISCUSSION**

On May 11, the Court discussed with the parties Oracle's objection that portions of Dr. Bloch's testimony amounted to expert testimony that Google had failed to disclose as required under Rule 26(a)(2)(C).  ECF No. 1815 (Oracle's Objection).  In response to questioning from the Court, Google represented that Dr. Bloch performed the analysis at issue for litigation during the first trial in 2012.  Google further represented that it would not elicit any such testimony from Dr. Bloch on direct examination.  The Court accepted Google's representation and ordered Google not to get into the subject on direct examination.  Nevertheless, during direct examination of Dr. Bloch, Google elicited testimony on the very subject it promised and was ordered to avoid.  In addition, in order to address objections regarding expert testimony, Google adduced testimony that suggests that Dr. Bloch performed his analysis while still at Sun in the early 2000s, contrary to its representation to this Court that such analysis was performed for trial in this case in 2012.

The relevant colloquies speak for themselves and are provided in full below:

---

**THE COURT:** So on Bloch, the other side, Oracle, give me just one -- don't give me a speech. I don't have time for a speech. Just give me one example of something you think he's going to say that should have been disclosed.

**MS. HURST:** He performed an analysis of technical constraints of the APIs by the language, and *he offered an opinion that because there were certain constraints in the 62 classes, an additional 175 classes are constrained*. There was no report, there was no explanation of how the analysis was performed or the method used. There's --

**THE COURT:** Wait a minute. Wait a minute, he did this way back then?

**MS. HURST:** Yes. He testified at trial to what I just described, but there was no testimony then and there was no further disclosure during this phase of the case. There has never been a report.

**THE COURT:** My question wasn't very clear.

Did he do this way back in the '90s -- or, I'm sorry -- the 2005 time period during the events in question, or did he do this for preparation for the litigation?

**MS. HURST:** Your Honor, my belief is it was an analysis performed for litigation.

**THE COURT:** What is the answer on your side?

**MR. KAMBER:** It was during trial in response to Dr. Reinhold's testimony about TX 1062.

**THE COURT:** Do you plan to use that again?

**MR. KAMBER:** *We don't plan to elicit that testimony*, but if it comes up, they've indicated that they plan to cross-examine him on a similar subject matter, at which point they would open the door --

**THE COURT:** *Well, that part is true. If you avoid the subject on direct, then there is no problem. But if they then open the door on cross, they've invited the problem. That's clear-cut. But then if you're not going to get into it on direct -- okay.* Give me another example of something that you're afraid they're going to bring up on direct.

**MS. HURST:** That's the main one I'm concerned about, Your Honor.

**THE COURT:** Isn't this moot now?

**MR. KAMBER:** We always thought it was moot, Your Honor.

**THE COURT:** *I'm going to order you not to get into that 62 plus more on direct examination.*

**MR. KAMBER:** *Understood Your Honor*. Thank you.

**MS. HURST:** Got it.

May 11, 2016 Tr. 446:12-448:7 (emphasis added).

---

**Q [BY MR. KAMBER].** Let me direct your attention, Dr. Bloch, to there is page 35, again, of the document. There is a Section 1.3. Do you see that on your screen?

**A.** I do.

1     **Q.** It says "Relationship to predefined classes and interfaces." Do you see that?

2     **A.** I do.

3     **Q.** And the second sentence here says: (reading)

4     "In particular, some classes have a special relationship with the Java programming language."

    Do you see that?

5     **A.** Uh-huh.

6     **MS. HURST:** Objection, Your Honor. This is getting into that expert testimony we discussed the other morning. It may be that he worked on it at the time, but this is still a matter of specialized knowledge. There was no report. No opportunity --

8     **THE COURT:** As long as he sticks to the past tense and what happened back then, overruled, but you cannot start using the present tense because you were not designated as an expert. So as a result, you can explain what you did back then and why you did it. If you worked on this book, if this is a book you worked on, okay. But you've got to stick to the past tense. All right?

11     **THE WITNESS:** Very good.

    **THE COURT:** All right. Counsel, stick to the past tense. Objection overruled.

12     **MR. KAMBER:** Thank you, Your Honor.

13     **Q.** Dr. Bloch, to what extent was it your understanding when you were working on Java SE 5 that there were certain classes that have a special relationship with the Java programming language?

15     **A.** I was intimately aware of that fact because I wrote some of those classes.

16     **Q.** And can you explain to the jury what you mean by --

17     **THE COURT:** No. What you meant.

    **MR. KAMBER:** What you meant.

18     **Q.** What your understanding was -- let me start over, Your Honor.

19     Can you please explain to the jury what your understanding was with respect to classes having a special relationship to the Java programming language?

20     **MS. HURST:** Your Honor, past tense does not solve the 702 specialized knowledge problem. This is going to drive a truck through Rule 26.

21     **THE COURT:** I'm sorry. I'm sorry. But this is the rule, and we happen to have a case where the percipient witnesses -- meaning fact witnesses -- the fact witnesses themselves happen to have specialized knowledge and skill. Just like if you had a case that involved doctors and a misdiagnosis or something, all of the percipient people would be very well skilled in medicine, and I can't stop them from talking about their art. This objection is overruled. You would be correct if he veers off into present-day opinions; but if he's giving opinions on what he actually thought and did back at the time in question, it is fair game. Objection overruled. Please answer the question.

26     **THE WITNESS:** All right. So as I -- do you want to ask the question one more time?

27     **BY MR. KAMBER:**

28     **Q.** I'll try if I can remember it, Dr. Bloch. To what extent was it your

understanding when you were working on Java SE that there were certain classes and packages that had a special relationship to the Java programming language?

**A.** Right. Yes. So I -- I understood this to be true. For example, remember before I was talking about that for-each function that I added to the -- not function, but the construct that I added to the language that let you kind of iterate over a whole collection and, you know, like capitalize all the words or whatever.

In order to do this, that collection has to implement a class called java.lang.iterable, and so that class is actually mentioned in this manual here. I can't tell you the page number offhand, but it's in here. I know because I wrote the prose and I gave it to Gilad.

And then in order to do its work, the language has to call a method called iterator on this iterable class, and it returns an object of type iterator.

So that's another class that you absolutely need in order to implement the Java language as specified in this book. You can't do it without that class. And, interestingly, that class isn't even mentioned in this book. It's what is called an indirect dependency. So the class iterable is mentioned in this book, and you need it to implement this language, and you need the class iterator to implement the class iterable.

So there are actually plenty of classes that are mentioned in this book that you need to implement the Java language. *There are about 60 of those, and they bring in a bunch of indirect dependencies. So you need 177 classes at least just to implement the language, and they contain thousands of methods.*

May 13, 2016 Tr. 982:18-986:10 (emphasis added).

## CONCLUSION

On direct examination, Google elicited testimony of Dr. Bloch that Google agreed and the Court ordered Google not to elicit ("I'm going to order you not to get into that 62 plus more on direct examination."). Moreover, Dr. Bloch's testimony that this analysis was his understanding when he was at Sun working on Java SE is contrary to Google's representation to this Court that Dr. Bloch performed the analysis years later, during this litigation, after Dr. Bloch had left Sun ("It was during trial in response to Dr. Reinhold's testimony about TX 1062.").

The questioning and testimony was improper and should be stricken. Specifically, Oracle requests that the Court strike from the record the testimony of Dr. Bloch on Tr. 982:18-986:10. In addition, Oracle requests that the Court instruct the jury that some of Dr. Bloch's testimony has been struck, and that the jury should disregard Dr. Bloch's testimony regarding the dependency of certain packages and classes on the Java language. Finally, Oracle requests that the Court order any and all other relief that the Court deems justified.

Dated: May 14, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
Annette L. Hurst

Counsel for ORACLE AMERICA, INC.

- 5 -

ORACLE'S MOTION TO STRIKE PORTIONS OF DR. BLOCH'S TESTIMONY