KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188

KING & SPALDING  LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3521
Tel:   (404) 572-4600
Fax:   (404) 572-5100

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>            Plaintiffs,<br><br>     v.<br><br>GOOGLE INC.,<br><br>            Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**DEFENDANT GOOGLE INC.'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING RE WILLFULNESS AND BAD FAITH BEFORE FEDERAL CIRCUIT DECISION (ECF NO. 1880)**<br><br>Dept.:    Courtroom 8, 19th Fl.<br>Judge:   Hon. William Alsup |

Defendant Google Inc. ("Google") respectfully submits this response to the Court's Request for Briefing re Willfulness and Bad Faith Before Federal Circuit Decision.  ECF No. 1880.

**INTRODUCTION**

Ninth Circuit law holds that a defendant in a copyright case cannot be found to be a willful infringer unless it acts "with knowledge that [its] conduct constitutes copyright infringement."  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012), quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 956-57 (9th Cir. 2001).  Consistent with this rule, the Ninth Circuit has held that a defendant that prevails at an initial stage of the case and in whose favor a judgment is entered is "entitled to rely on" the judgment and cannot be found to be a willful infringer during the time period in which that judgment is in effect.  *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1330 (9th Cir. 1984).  The logic of *Kamar* applies regardless of the test that governs a claim of willfulness:  a party cannot be acting with knowledge that its conduct constitutes infringement or with reckless disregard for or willful blindness to, the copyright owner's rights once the issue has been adjudicated in the party's favor.

Ninth Circuit law goes farther, however, and also holds that continued use of a work even after notice of the plaintiff's claim of infringement "does not constitute willfulness so long as [the defendant] believes reasonably, and in good faith, that he or she is not infringing."  *Evergreen Safety*, 697 F.3d at 1228, citing *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (en banc), *cert. denied*, 520 U.S. 1156 (1997), *Danjaq*, 263 F.3d at 959, and 4 *Nimmer on Copyright* § 14.04 (rev. ed. 2012).  A good faith belief that the defendant is not infringing can be shown by, e.g., a belief that the defendant's "copying constituted fair use," and the reasonableness of that belief can be confirmed as a matter of law by the objective fact that "[f]air use is one of the most unsettled areas of the law."  *Princeton Univ. Press*, 99 F.3d at 1392.  This is especially true in circumstances in which there is the "potential for reasonable disagreement" ***as demonstrated by the proceedings in the case***.  *Id.*

The facts of this case demonstrate beyond doubt that there is no basis for a viable claim of willfulness, either during the time this Court's judgment in favor of Google on the declaring code

1  and SSO issues was extant or even prior to that time. This Court's decision on copyrightability
2  demonstrates that the issue of copyrightability was at least "unsettled" prior to the Court's 2012
3  decision. And on fair use, the first jury could not decide the issue and the Federal Circuit held not
4  only that Google's fair use defense could not be determined as a matter of law, but that, for
5  example, Google's use of the declaring code and SSO could be found to be transformative "under
6  a correct reading of the law." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1376 (Fed. Cir.
7  2014).

8       Because there was plainly the potential for "reasonable disagreement" regarding
9  copyrightability prior to 2012 and there is that same potential even today as to fair use, Oracle's
10 willfulness claim is unfounded. These issues, however, are all issues of law that it would be
11 impossible for the jury to decide. The Court should therefore, at a minimum, provide the jury
12 with the information necessary for the jury to properly consider the reasonableness of Google's
13 belief that it was not infringing Oracle's copyrights.

14     **I.    Ninth Circuit Law on Willfulness**

15      Ninth Circuit law on willfulness in the copyright context is clear. The Ninth Circuit has
16 long recognized that willfulness under the Copyright Act means that an accused infringer acted
17 "with knowledge that [its] conduct constitutes copyright infringement." *Peer Int'l Corp. v. Pausa*
18 *Records, Inc.*, 909 F.2d 1332, 1335-36 n.3 (9th Cir. 1990), quoting *Nimmer On Copyright*
19 § 1404[B]. An accused infringer may refute a charge of willfulness by establishing its "good
20 faith belief in the innocence of its conduct" and "that it was reasonable in holding such a belief."
21 *Id.* at 1336. This Court recognized the applicability of the *Peer Int'l* test in its September 18,
22 2015 Order Re Willfulness And Bifurcation. ECF No. 1321 at 12. That ruling is and has been
23 the law of the case in this action for the past eight months.

24      The Ninth Circuit reaffirmed this articulation of the willfulness standard in *Danjaq LLC v.*
25 *Sony Corp.*, 263 F.3d 942 (9th Cir. 2001). The *Danjaq* Court stated:

26         Thus, for purposes of the willfulness exception to laches, just as for the
    willfulness augmentation of statutory copyright damages, the term 'willful' refers
27     to conduct that occurs 'with knowledge that the defendant's conduct constitutes
    copyright infringement.'
28

263 F.3d at 957-58, citing *Columbia Pictures Television v. Krypton Broad.*, 106 F.3d 284, 293 (9th Cir. 1997) (internal quotation marks and citation omitted), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Television*, 523 U.S. 340 (1998) and Nimmer § 14.04[B][3] at 14-53 (Dec. 2000) (defining willful infringement).

Applying this standard, the Court in *Danjaq* found that the evidence was "insufficient as a matter of law" to demonstrate willfulness, *id.* at 958, even though the defendant's conduct, as alleged by the plaintiff, was not "beyond reproach." *Id.* The defendant in *Danjaq* had "simply no way . . . to know that [the plaintiff] was laying claim to" a cinematic iteration of the James Bond character before the infringement suit was filed.

The Ninth Circuit again reaffirmed this test for willfulness in *Evergreen Safety*. In *Evergreen Safety*, the Court restated the standard, citing *Danjaq*, and stated that willfulness "does not exist" where, for example, the accused works "were produced under color of title, such as a reasonable belief that the infringer possesses a license or implied license." *Evergreen Safety*, 697 F.3d at 1228. The *Evergreen Safety* Court went on to say:

> Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness ***so long as one believes reasonably, and in good faith, that he or she is not infringing***. *See Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1392(6th Cir. 1996) (en banc), cert. denied, 520 U.S. 1156, 117 S.Ct. 1336, 137 L.Ed.2d 495 (1997) ("[W]e cannot say that the defendants' belief that their copying constituted fair use was so unreasonable as to bespeak willfulness."); *see also Danjaq*, 263 F.3d at 959;  4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04 (Matthew Bender rev. ed. 2012) ("[O]ne who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes.") (footnotes omitted).

*Id.* (emphasis added).

The Ninth Circuit's citation of and reliance on the Sixth Circuit's en banc decision in *Princeton University Press* is significant. *Princeton University Press* was a case involving the sale of "coursepacks" by a commercial copyshop. *Princeton Univ. Press*, 99 F.3d at 1383. The district court found that the defendant's use of the "copyrighted works of scholarship" was not a fair use, and found the infringement to be willful. *Id.* The Sixth Circuit, sitting en banc, affirmed as to fair use but reversed the district court on willfulness, vacated the damages award, and remanded as a result of the willfulness issue.

In analyzing the willfulness issue, the Sixth Circuit quoted at length from *Nimmer On Copyright*:

> Willfulness, under this statutory scheme, has a rather specialized meaning. As Professor Nimmer explains,
>
> "In other contexts ['willfulness'] might simply mean an intent to copy, without necessarily an intent to infringe.  It seems clear that as here used, 'willfully' means with knowledge that the defendant's conduct constitutes copyright infringement.  Otherwise, there would be no point in providing specially for the reduction of minimum awards in the case of innocent infringement, because any infringement that was nonwillful would necessarily be innocent.  This seems to mean, then, that one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." Melville B. Nimmer & David Nimmer, 3 *Nimmer on Copyright* § 14.04[B][3] (1996).

99 F.3d at 1392.

The *Princeton University Press* court further found that the "reasonableness" of the accused infringer's belief that it is not infringing "is ***essentially a question of law***," and that "the issue is ***whether the copyright law supported the plaintiffs' position so clearly*** that the defendants must be deemed as a matter of law to have exhibited a reckless disregard of the plaintiffs' property rights." *Id.* (emphases added).  The court then noted that "[f]air use is one of the most unsettled areas of the law.  The doctrine has been said to be 'so flexible as virtually to defy definition.'" *Id.*, quoting *Time Inc. v. Bernard Geis Assoc.*, 293 F.Supp. 130, 144 (S.D.N.Y. 1968).  Looking to the proceedings in the case before it, the *Princeton University Press* court concluded that:

> ***The potential for reasonable disagreement here is illustrated by the forcefully argued dissents and the now-vacated panel opinion.***  In the circumstances of this case, we cannot say that the defendants' belief that their copying constituted fair use was so unreasonable as to bespeak willfulness.

*Id.* (emphasis added).

Finally, Ninth Circuit law also recognizes the common-sense proposition that an accused defendant that obtains a judgment in its favor on the claim of infringement cannot be accused of willful infringement during the time period in which that judgment is extant.  As Google discussed in its response to the Court's proposed statement to the jury regarding the prior trial and

appeal, ECF No. 1884 at 3-4, the Ninth Circuit decision in *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1330 (9th Cir. 1984), establishes that an accused infringer is "entitled to rely on" such a judgment even if, as here, it is later set aside.

In *Kamar,* the district court initially entered judgment in favor of the defendant on both invalidity and non-infringement grounds. The Ninth Circuit reversed and remanded on both validity and infringement. *Id.* at 1328. On remand, the district court found infringement but found that the defendant did not act willfully. *Id.*

In reviewing the relief awarded on remand, the Ninth Circuit affirmed the district court's holding that the defendant's sales of the accused infringing products "immediately following the first judgment do not count as infringements after notice." *Id.* at 1330. The court noted that the first judgment found the accused stuffed animals to be noninfringing and that the defendant "***was entitled to rely on the judgment at that time***." *Id.* (emphasis added). The court remanded for reconsideration of the damages award, but limited the district court's reconsideration to sales in the time period after the defendant received notice but before the first judgment. *Id.* at 1330-31.

The reason for this holding is plain. Under Ninth Circuit law, this court's 2012 judgment was a final judgment for all purposes, including preclusion. *Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2006). Until the decision was reversed by the Federal Circuit, it bound both Google and Oracle, and Google was entitled to rely on the Court's conclusion that Oracle's claimed copyright did not cover the declarations or the SSO of the 37 packages. *See, e.g.*, *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988) ("[I]n federal courts . . . the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided"). Between the district court's 2012 decision and the Federal Circuit's 2014 reversal, Google could not have "known" that its actions were infringing because, as a matter of law, it was not engaging in infringing activity during the pendency of the appeal. *See Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012); *Rice v. Dep't of Treasury*, 998 F.2d 997, 999 (Fed. Cir. 1993).

Based on *Peer Int'l*, *Evergreen Safety*, *Danjaq*, the Ninth Circuit's citation with approval of *Princeton University Press*, and *Kamar*, the law in the Ninth Circuit is that (1) there can be no

1  claim of willfulness with respect to a time period in which the accused infringer was the
2  beneficiary of a judgment in its favor; (2) willfulness cannot be shown when an accused infringer
3  has a reasonable, good faith belief that its conduct is not infringing; and (3) the reasonableness of
4  that belief is, at least in certain circumstances, a question of law for the Court.

## II.     Application of Ninth Circuit Law to This Case

Just as the "forcefully argued dissents and the now-vacated panel opinion" in *Princeton University Press* demonstrated the reasonableness of the defendant's belief that its use was a fair use and that its conduct was therefore not infringing, so too do this Court's copyrightability decision in 2012 and the Federal Circuit's decision as to fair use demonstrate as a matter of law the reasonableness of Google's belief that it is not infringing the copyrights in the Asserted Works.

As an initial matter, the record demonstrates that the Google executives responsible for Android held the belief that it was permissible for Google to use the declarations in the 37 API packages—and that Sun agreed with that belief. As Mr. Schmidt testified:

> Q. At the time that Google built Android using the Java APIs, was it your understanding that that was permissible to do as long as you wrote your own implementing code?
>
> A. That is correct.
>
> Q. What was that understanding based on at the time?
>
> A. Well, business advice, [and] many years of experience in the industry.

Tr. 5/10/2016 at 361:24-362:5 (Schmidt).

> Q. Based on your discussions with Mr. Schwartz, and his comments to you, did you feel you had a good understanding of what was permissible from Sun's perspective?
>
> A. I did.
>
> Q. And what was that?
>
> A. That our approach was appropriate and permitted.
>
> Q. And what understanding, if any, did you have at the time as to whether or not your use of the APIs in Android was consistent with Sun's business practices?

> A. Well, because of my own history, I -- I had a long history with this, and I was quite sure this was all permissible.

Tr. 5/10/2016 at 378:8-378:18 (Schmidt).

Google's Mr. Rubin testified similarly:

> Q. During your time with the Android team, Mr. Rubin, to what extent did you have an opinion, if at all, as to whether your team was free to use API declarations and organization for the Java APIs as part of the development of the platform?
>
> A. I mean, we didn't think there was any problem with us using the API declarations for the development of Android.

Tr. 5/11/2016 at 639:2-639:7 (Rubin).

> Q. What, Mr. Rubin, did you believe, if anything, about your ability to use declarations for Java APIs in Android?
>
> A. I mean, we -- we started the whole development effort believing that it was fine to do. That's why we invested so much time and resources in it.
>
> Q. Would you explain to the jury, please, why you thought it was fine to do that?
>
> A. It was just my understanding as a computer scientist about how open source works and how to build systems that were interoperable.

Tr. 5/12/2016 at 728:22-729:6 (Rubin).[1]

---

[1] Mr. Bornstein of Google held the same belief:

> Q. Again back at the time you were working on the Android team at Google, did you have a view as to whether or not you were free to use declarations for Java APIs?
>
> A. Yeah.
>
> Q. What was your view?
>
> A. I thought that the -- that Java declarations were A-okay to be used.
>
> Q. Why was that?
>
> A. Because I had seen at the time many -- many examples of a programming language coming along published by or built by one set of people, and a different set of people come along and do a new implementation of that language and inevitably you use, you know, the same declarations.

Tr. 5/13/206 at 1089:9-1089:21 (Bornstein).

7

1    Finally, the beliefs of these Google witnesses were consistent with the views and business

2 practices of Sun at the time.  In Mr. Schwartz's words:

> Q.  Did Sun promote the Java APIs along with the language?
>
> A.  Yes.
>
> . . . .
>
> Q.  And were the APIs marketed by Sun along with the language; in other words, as free and open?
>
> A.  Absolutely, yes.
>
> . . . .
>
> Q.  And were the APIs made free and open like the language at that time?
>
> A.  Absolutely, yes.
>
> . . . .
>
> Q. Tell the jury what open APIs meant at that time.
>
> A. So the strategy, which had been the strategy long before I joined Sun, was we agree on APIs, on these open APIs; we share them; and then we compete on implementations.

Tr. 5/11/2016 at 500:-500:10, 500:21-500:23, 501:8-501:10, 501:20-501:23 (Schwartz).

> Q.  Mr. Schwartz, during your tenure at Sun, all the way up to the very end, was there ever a time where the Java APIs were considered proprietary to Sun?
>
> A. No, never.

Tr. 5/11/2016 at 506:10-506:13 (Schwartz).

> Q. What was the practice at Sun during your tenure -- during your tenure there, with respect to third parties who used the APIs with their own implementations?
>
> A. There was nothing we could do to stop it. It was completely -- you know, it was fair.  It's what they were -- they weren't asking us to put our logo on it, and they weren't asking us to call it Java or bless or endorse it.

Tr. 5/10/2016 at 508:22-509:3 (Schwartz).[2]

*Copyrightability.* As to copyrightability, this Court expressly recognized in its May 31, 2012 order that "No law is directly on point" on the issues of "whether the elements replicated by Google from the Java system were protectable by copyright in the first place." ECF No. 1202 at 3. The Court characterized this legal issue as "the more difficult question," *id.* at 15, and stated that:

> No court of appeals has addressed the copyrightability of APIs, much less their structure, sequence and organization. Nor has any district court.

*Id.* at 19. The Court also concluded that "the trend of the copyright decisions [since *Johnson Controls* decision in 1989] has been more cautious," *id.* at 32, and that "the Ninth Circuit decisions in *Sega* and *Sony*, although not on all fours, are close analogies." *Id.* at 39.

Although the Federal Circuit reversed this Court's holding as to copyrightability, even that court acknowledged at the outset of its analysis that "the application of copyright law in the computer context is often a difficult task." *Oracle Am.*, 750 F.3d at 1354. The Federal Circuit also recognized that the application of Section 102(b) of the Copyright Act to computer software presents issues as to which "the devil is in the details" and—more importantly—that:

> Circuit courts have struggled with, and disagree over, the tests to be employed when attempting to draw the line between what is protectable expression and what is not.

*Id.* at 1357 (citing *Whelan* and *Lotus*). Finally, the Federal Circuit also confirmed that the Ninth Circuit had not addressed "the precise issue" of whether "a set of commands to instruct a computer to carry out desired operations may contain expression that is eligible for copyright protection." *Id.* at 1367. And the Supreme Court also indicated that Google's petition for certiorari was potentially meritorious, as it requested the Solicitor General to submit a brief expressing the views of the United States, Order, No. 14-410 (U.S. Jan. 12, 2015), and did not

---

[2] Mr. Schwartz also testified, Tr. 5/11/2016 at 520:17-20, that Sun held this same view with respect to Apache Harmony:

> Q. Did Sun do anything to interfere with Apache making the Harmony product available?
> A. There was nothing we could do. And there's nothing we did.

9

deny the petition until June 29, 2015.[3]

More recently, the Court has expressed its concern about this issue as follows:

> THE COURT: You just want the jury to think that the law has been crystal clear from the day the country was founded that these APIs were copyrightable, and --
>
> MR. BICKS: Your Honor --
>
> THE COURT: Okay. That's what the Federal Circuit said, but I don't think that has been so clear. In fact, I know it hasn't been clear, but it is clear now.
>
> MR. BICKS: Yeah.
>
> THE COURT: As of the date of the Federal Circuit decision, new ballgame; but in the old ballgame, it was up for grabs.

Tr. 5/12/2016 at 717:12-717:22.

> THE COURT: No question about that. The Federal Circuit made that very clear; but prior to that, the law was exactly the opposite in this case for two years; and then prior to that -- you know, ***I'm not going to tell the jury this part, but there really was no law on this point.*** It was just, as one of the witnesses said, folklore because ***no one had ever brought this kind of case before***.
>
> MR. BICKS: ***Right***.

Tr. 5/13/2016 at 932:12-932:19 (emphasis added).

Google's belief that its use of the declarations of the Java API packages was permissible was not an afterthought on Google's part, and there is no basis to question that Google's belief was reasonable and held in good faith. In its November 10, 2010 Answer to Oracle's Amended Complaint, ECF No. 51,[4] Google asserted as its Tenth Defense that the elements of the works asserted by Oracle were "not protectable by copyright" and as its Twelfth Defense that Google's

---

[3] To the extent there is any lingering doubt regarding the absence of guidance on the copyrightability issue prior to this case, the Solicitor General acknowledged in the Brief of the United States as Amicus Curiae in the Supreme Court that, if the Supreme Court had granted certiorari, it would have been a case "for the Court to address, ***for the first time***, the application of copyright principles to computer programs." Brief of the United States, No. 14-410 (U.S. May 26, 2015) ("U.S. Brief") at 22 (emphasis added).

[4] Google's Answer to Oracle's Amended Complaint, ECF No. 51, was Google's first response to Oracle's copyright claim. At the time Google filed its Answer to Oracle's initial Complaint, ECF No. 32, Google filed a motion to dismiss the copyright claim, ECF No. 33, which resulted in Oracle amending that claim in the Amended Complaint. ECF No. 36; *see also* ECF Nos. 40, 42, 44, 45.

1    use was a fair use. *Id.* at 10-11.  Google also raised the copyrightability issues in Google's

2    August 1, 2011 motion for summary judgment on the copyright claim, ECF No. 260 at 12-19—

3    which the Court granted in part.  ECF No. 433.

4          In view of the above, and this Court's and the Federal Circuit's confirmation that there

5    was no clear precedent on the copyrightability issue before this Court's ruling in 2012, Oracle

6    cannot as a matter of law contend that Google's good faith belief regarding whether it was

7    permissible to use the Java API declarations was not reasonable.

8          ***Fair Use.***  The same is true—and perhaps even more so—with respect to Google's belief

9    that its use in Android of the Java API declarations is a fair use.

10         First, the jury in the 2012 trial was unable to reach a verdict as to fair use, which

11   demonstrates convincingly that reasonable minds could differ on fair use even after hearing all the

12   evidence.  And the Court denied Oracle's post-trial motion for judgment as a matter of law on fair

13   use, reflecting the same conclusion.  ECF No. 1119.

14         Second, the Federal Circuit decision confirmed the reasonableness of Google's good faith

15   belief that it has a viable fair use defense to Oracle's claim.  The Federal Circuit soundly rejected

16   Oracle's request that the appellate court find no fair use as a matter of law, and emphasized that

17   the Ninth Circuit *Sony* and *Sega* decisions, on which both Google and this Court had relied in

18   analysis of the copyrightability issues, were "fair use cases" and "focused on fair use."  *Oracle*

19   *Am.*, 750 F.3d at 1369.  The appellate court specifically found, moreover, that "the functional

20   aspects of the [API] packages" and Google's "competitive desire to achieve commercial

21   'interoperability'" were potentially "relevant to a fair use analysis," *id.* at 1376-77, and that

22   "reasonable jurors might find that they are relevant to Google's fair use defense under the second

23   and third factors of the inquiry."  *Id.* at 1377.

24         Third, there has ***to date*** still been no determination of Google's fair use defense by any

25   jury, judge or appellate panel—other than the decisions by this Court and by the Federal Circuit

26   that Google is entitled to a jury trial on that defense and that, e.g., Google's use may be found to

27   be transformative "under a correct reading of the law."  *Oracle Am.*, 750 F.3d at 1376.  Like

28   Google's copyrightability defense, the fair use defense is not an afterthought, and was included

1   both in Google's 2010 answer and its 2011 motion for summary judgment.  *See* ECF No. 51
2   at 11; ECF No. 260 at 19-22.  And as with the copyrightability issue, the Government's brief in
3   the Supreme Court confirms the reasonableness of Google's belief.  The Government argued that
4   the "important concerns about the effects that enforcing [Oracle's] copyright could have on
5   software development . . . are better addressed through [Google's] fair-use defense, which will be
6   considered on remand," U.S. Brief at 10, and that "it may be sensible to distinguish between
7   declaring code and implementing code for other copyright-law purposes (such as fair use[)]." *Id.*
8   at 15; *see also id.* at 17 ("The general concerns that [Google] raises are substantial and
9   important"; "legitimate concerns with interoperability and lock-in effects are far better addressed
10  through the fair-use doctrine").

11      Google's good faith belief that its use is a fair use—which it has asserted since the earliest
12  days of this litigation—is, as a matter of law, reasonable.

13  **III.    Possible Contrary Authority**

14      In its order, the Court asked the parties to "include decisions, pro and con, not just those
15  on your side."  ECF No. 1880; *see also* Tr. 5/13/206 at 929:20-929:22 ("And don't just cite the
16  ones that help you.  Cite the ones that go against you and help me understand if they're
17  distinguishable so that I can have the full advantage of this.").

18      Google has not identified any authorities that contradict the propositions that, in a
19  copyright case, an accused infringer that obtains a judgment in its favor cannot be found to be a
20  willful infringer during the period in which the judgment is extant, as established by *Kamar*, and
21  that the reasonableness of an accused infringer's good faith belief that it is not infringing may be
22  determined as a matter of law based on objective legal principles rather than any subjective facts.

23      Google notes, however, that Oracle has cited cases for the proposition that willfulness for
24  purposes of a statutory damages award in a copyright case can be established through the
25  alternative standard of "reckless disregard" and/or "willful blindness."  *See, e.g.*, ECF No. 1703 at
26  83 (Oracle Proposed Instruction No. 28); ECF No. 1707 (Oracle Brief) at 64-66.  The authorities
27  cited by Oracle do not change the above analysis.

28      First, although Oracle argues that *Peer Int'l* is no longer good law, ECF No. 1707 at

65-66, it has been the law of this case in this action since September of 2015 that the *Peer Int'l* test is applicable. Order Re Willfulness And Bifurcation, ECF No. 1321 at 12 ("a copyright owner proves an infringer was willful if it shows the infringer acted with 'knowledge that [its] conduct constituted an act of infringement.'").

Second, none of the cases cited by Oracle are factually similar, and none purports to alter the Court's re-affirmance of the *Peer Int'l* test in *Danjaq* in 2001 or in *Evergreen Safety* in 2012. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011), was a contributory infringement / counterfeiting case against parties that hosted websites selling counterfeit goods. The Court's discussion of willfulness in *Louis Vuitton* was in the context of a contributory infringement claim, for which alternative willfulness tests may be appropriate. There is no contributory infringement claim in this case. The discussion of the defendant's conduct and the willfulness issue in *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012), was part of a discussion of personal jurisdiction—not damages. And the court in *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008), was considering an appeal from a bankruptcy court decision in which the issue was whether acts of willful copyright infringement are "willful injuries" in the context of § 523(a)(6) of the Bankruptcy Code. However, the Court's acknowledgement that a "reckless" standard may apply under the Copyright Act was expressly premised with the caveat that such a standard was one that "our sister circuits have clearly recognized." 545 F.3d at 707-08. No Ninth Circuit decisions on the willfulness standard were cited. And none of the cases cited by Oracle cast any doubt on the Ninth Circuit's holding in *Kamar* that an adjudicated non-infringer cannot be accused of willful infringement during the period in which it enjoys a judgment in its favor, or the cases recognizing that the reasonableness of an infringer's good faith belief may be established as a matter of law based on objective factors.

Whatever the test for willfulness may be, moreover, the Ninth Circuit's discussion of the above issues has been broad enough to cover any alternative articulation of willfulness. In *Danjaq*, for example, the Court found that the evidence was "insufficient as a matter of law" and that "a jury ***could not find willful infringement***" when there was no notice of infringement before

13
GOOGLE'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING RE WILLFULNESS
Case No. 3:10-cv-03561 WHA

the litigation began and no evidence that the defendant acted with knowledge that its conduct constituted copyright infringement. *Danjaq*, 263 F.3d at 958 (emphasis added). Similarly, in *Evergreen Safety*, the Court stated that "[w]illfulness ***does not exist***" where the accused infringer has a reasonable belief that it is not infringing and continued use even after notice "***does not constitute willfulness*** so long as one believes reasonably, and in good faith, that he or she is not infringing." *Evergreen Safety*, 697 F.3d at 1228 (emphases added). Finally, the Sixth Circuit, in its *Princeton University Press* decision that has been cited with approval by the Ninth Circuit, specifically included in its articulation of the issue a reference to "reckless disregard"; it stated that the question of law at issue was "whether the copyright law supported the plaintiffs' position so clearly that the defendants must be deemed as a matter of law to have exhibited a reckless disregard of the plaintiffs' property rights." *Princeton University Press*, 99 F.3d at 1392. And it answered that question in the negative, based on the proceedings in the action before it, i.e., the "forceful dissents" and the vacated panel decision that initially reversed the summary judgment on fair use that the full court later affirmed. *See* 99 F.3d at 1383.

In its objection to the Court's proposed statement to the jury, Oracle also cited two unpublished out-of-circuit district court decisions for the alleged principle that a "trial court's initial decision in the defendant's favor does not demonstrate good faith or rebut evidence of bad faith on remand." ECF No. 1874 at 5. The two decisions cited by Oracle, however, are both patent cases, and the law on willfulness in patent cases is governed by different standards that are in flux. Those decisions are not relevant in light of the Ninth Circuit's clear ruling on this issue in *Kamar*—which was, like this case, a copyright case.

Finally, Oracle also cited several cases for the proposition that a reversed judgment is a "nullity." ECF No. 1874 at 5-6. While a reversed or vacated judgment is no longer effective and the cases cited by Oracle stand for the unremarkable proposition that such a judgment is of no further force and effect, none of the cited cases addresses the issue of whether the prior decision may appropriately bear on the parties' conduct and state of mind ***while the prior decision was extant***. *Kamar* and *Princeton University Press* make clear that, in this context, the prior decision is not only relevant, it is dispositive with respect to any claim of willful infringement while the

1  initial judgment was outstanding.

### IV. Relief Requested

As the Court has recognized, it may be appropriate to "have an instruction along the lines of what the Ninth Circuit approved in the [*Kamar*] case." Tr. 5/13/2016 at 932:20-932:22. And as the Ninth Circuit implicitly recognized in similar circumstances in *Kamar* and the Sixth Circuit expressly stated in *Princeton University Press*, this issue—whether the accused infringer's belief that it was not infringing is reasonable—is "essentially a question of law." *Princeton University Press*, 99 F.3d at 1392.

In order to avoid the potential "manifest injustice" of leaving "the impression with the jury that the law has been clear from day one and there never was any judgment to the contrary," Tr. 5/13/2016 at 930:4-930:8, the Court should at least add to its proposed statement to the jury regarding the prior proceedings a sentence to the effect that the law regarding these issues was unsettled prior to May of 2012. More specifically, Google requests that the following statement be added to the end of the first paragraph of the revised proposed statement that Google submitted as Exhibit A to ECF No. 1884:

> Prior to May of 2012, the law regarding the issues in this case was unsettled.

For the reasons stated in Google's initial response to the Court's proposed statement, ECF No. 1884, and herein, Google continues to believe that it is appropriate and necessary for the Court to provide that statement, with the above addition, to the jury in view of the prejudicial and misleading arguments and examination of witnesses in which Oracle has persisted.

DATED: May 15, 2016

KEKER & VAN NEST LLP

By: /s/ Robert A. Van Nest
    ROBERT A. VAN NEST

Attorneys for Defendant
GOOGLE INC.