1   ORRICK, HERRINGTON & SUTCLIFFE LLP
    KAREN G. JOHNSON-MCKEWAN (SBN 121570)
2   kjohnson-mckewan@orrick.com
    ANNETTE L. HURST (SBN 148738)
3   ahurst@orrick.com
    GABRIEL M. RAMSEY (SBN 209218)
4   gramsey@orrick.com
    405 Howard Street, San Francisco, CA  94105
5   Tel: 1.415.773.5700 / Fax: 1.415.773.5759
    PETER A. BICKS (*pro hac vice*)
6   pbicks@orrick.com
    LISA T. SIMPSON (*pro hac vice*)
7   lsimpson@orrick.com
    51 West 52nd Street, New York, NY  10019
8   Tel: 1.212.506.5000 / Fax: 1.212.506.5151

9   BOIES, SCHILLER & FLEXNER LLP
    DAVID BOIES (*pro hac vice*)
10  dboies@bsfllp.com
    333 Main Street, Armonk, NY  10504
11  Tel: 1.914.749.8200 / Fax: 1.914.749.8300
    STEVEN C. HOLTZMAN (SBN 144177)
12  sholtzman@bsfllp.com
    1999 Harrison St., Ste. 900, Oakland, CA  94612
13  Tel: 1.510.874.1000 / Fax: 1.510.874.1460

14  ORACLE CORPORATION
    DORIAN DALEY (SBN 129049)
15  dorian.daley@oracle.com
    DEBORAH K. MILLER (SBN 95527)
16  deborah.miller@oracle.com
    MATTHEW M. SARBORARIA (SBN 211600)
17  matthew.sarboraria@oracle.com
    RUCHIKA AGRAWAL (SBN 246058)
18  ruchika.agrawal@oracle.com
    500 Oracle Parkway,
19  Redwood City, CA 94065
    Tel: 650.506.5200 / Fax: 650.506.7117

20  *Attorneys for Plaintiff*
    ORACLE AMERICA, INC.

21                UNITED STATES DISTRICT COURT

22              NORTHERN DISTRICT OF CALIFORNIA

23                  SAN FRANCISCO DIVISION

| | |
|---|---|
| 24  ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| 25          Plaintiff, | **ORACLE'S RESPONSE TO COURT'S REQUEST (ECF NO. 1880) FOR BRIEFING RE WILLFULNESS AND BAD FAITH BEFORE FEDERAL CIRCUIT DECISION** |
| 26          v. | |
| 27  GOOGLE INC. | Dept.: Courtroom 8, 19th Floor |
| 28          Defendant. | Judge: Honorable William Alsup |

**INTRODUCTION**

Oracle respectfully submits that the jury may not and should not consider the Court's copyrightability decision—nor any other "law in the case" prior to the Federal Circuit's 2014 decision or after—to evaluate Google's willfulness or bad faith.[1] *First*, Google did not disclose the Court's 2012 copyrightability decision or any other "law in the case" as a basis for its fair use and damages contentions.  Throughout this case, Google never argued or identified any evidence or testimony—expert or percipient—showing that Google relied on the Court's 2012 decision or any other "law in the case" when it decided whether to copy.  Nor could it:  Google explicitly disclaimed any advice of counsel defense, and the parties agreed that the jury should not hear about this case's procedural history, whether from the Court or the parties.  Even if Google could offer such evidence, it would need to *prove* reliance on the Court's decision.  It is implausible that Google's top business executives simply read this Court's decision and decided on a course of action without consulting its attorneys (in-house or outside counsel).  Accordingly, to prove reliance, Google must offer the communications from its lawyers about this Court's decision as well as otherwise privileged analyses of Google's chances of winning on appeal, before the Supreme Court, and again on remand, all to assess whether Google really did rely on the Court's decision.  Google has offered no such evidence and instead has maintained privilege over all attorney communications.

*Second*, such information is irrelevant.  The standard for willfulness and bad faith in copyright law is *subjective*.  By contrast, evidence of the state of the law regarding copyright-ability at most may be relevant to whether an infringer's actions were *objectively* reasonable, which is irrelevant to willfulness and bad faith.  Moreover, Oracle has not found a single case where a court on remand has instructed the jury as to prior procedural history for purposes of determining willfulness or bad faith—even in cases with procedural postures similar to this one.  Instead, numerous courts in copyright and patent cases have found willfulness on remand after initial decisions for the defendant were reversed.  Further, throughout this case, both parties have

---

[1] ECF No. 1880 ("An issue for us in this follow-on trial is whether and to what extent the jury may consider the *law in the case* prior to the 2014 holding by the Federal Circuit in evaluating willfulness and bad faith by Google during that period.") (emphasis added).

1   consistently represented—with full knowledge of the Court's 2012 decision, the Federal Circuit's

2   2014 decision, and the repeated releases of new versions of Android—that there is no theory that

3   justifies breaking up the case into different time periods.

4          *Third*, even if the Court's 2012 decision or any other "law in the case" were relevant to

5   Google's willfulness and bad faith, the issue would be one for the Court to decide, not the jury.

6   The jury is not qualified to determine the state of the law.  Oracle has not found any case where a

7   court instructed the jury in the manner this Court has proposed here.  To do so would invite a

8   mistrial and would cause the jury to sit as judges on the state of the law at all relevant times over

9   the past 10 years, even though the state of the law is not within the province or expertise of the

10  jury.  Indeed, even where legal issues are relevant to willfulness (such as in patent cases), the

11  legal component is always decided by the court, not the jury.

12         In short, such an instruction is irrelevant, unnecessary, and prejudicial, as it would taint

13  the jury and effectively direct a verdict that Google's copying was reasonable given the supposed

14  uncertainty in the law, and thus "fair."  Oracle is mindful, however, that the Court has expressed

15  concerns about potential jury confusion and suggested that there are "ways even now for Oracle

16  to agree to scale back its arguments and to cure this problem," so the Court need not "give an

17  instruction" to the jury.  Trial Tr. 935:22-936:4.  Oracle is therefore willing to stand on only

18  evidence of pre-May 2012 conduct by Google in order for Oracle to show willfulness.

19  **I.      GOOGLE NEVER DISCLOSED ANY PRE-2014 "LAW IN THE CASE" AS A**
**         BASIS FOR ITS FAIR USE AND DAMAGES CONTENTIONS, NOR CLAIMED**
20  **         IT RELIED ON THIS COURT'S 2012 DECISION**

21         *Lack of disclosure.*  Google did not disclose the Court's 2012 copyrightability decision

22  nor any other "law in the case" as a basis for its fair use and damages contentions.  Specifically,

23  Google did not mention the Court's 2012 decision or any other "law in the case" in response to

24  Oracle's interrogatory requesting the bases for any fair use contention.  Google's First Suppl.

25  Resp. and Obj. to Oracle's Interrogs., Set 6, No. 40 at 9-15.  Further, Google has not once

26  identified any evidence, argument, or testimony that shows that it relied on the Court's 2012

27  decision or any other "law in the case."  No expert has opined on the temporal demarcations

28  bounding when Google could, and could not have been, willful.  Even assuming such defenses

ORACLE'S  RESPONSE RE
WILLFULNESS & BAD FAITH

1   were cognizable and that Google was free to pursue them upon remand, Google declined to do so

2   and cannot undo that strategic decision now in the middle of trial.

3         To the contrary, Google *agreed with Oracle* that the Court *should not* inform the jury

4   about the prior trial or appeal:  "The parties agree that the Court need not and should not inform

5   the jury regarding the procedural history of the case….  The Court should not reference the prior

6   trial or appeal."  ECF No. 1709 at 7.[2]  As this was an agreement by both parties, the Court should

7   not undo the agreement without the assent of both parties.  That Google is the only party willing

8   to undo the agreement is a red flag that Oracle would be substantially prejudiced by an instruction

9   along the lines that the Court is contemplating.  *See* ECF No. 1874 (Oracle Br. re: Instruction on

10  Proc. History) at 1-6.  No jury is likely to return anything but a defense verdict on a question like

11  fair use after it learns that *any* trial judge, let alone the presiding one, thought the declaring code

12  and SSO were not copyright protected and that a previous jury could not reach a result on fair use.

13        If Google wanted to put on witnesses to testify that Google performed a legal analysis—

14  before or after the Court's 2012 decision—and concluded that the declaring code and SSO were

15  not copyrightable or that it was an open question, then that is a strategy Google could have

16  pursued.  Instead, Google explicitly disclaimed any advice of counsel defense, stating:  "Google

17  admits that it is not currently asserting an advice of counsel defense" to Oracle's claim of willful

18  infringement.  Google's First Suppl. Resp. and Obj. to Oracle's Requests For Admission, Set

19  Two, No. 274 at 29-30.  Google made the strategic decision not to assert an advice of counsel

20  defense either because it did not have advice of counsel that would support it or because Google

21  did not want to waive the privilege associated with asserting such a defense.  Whatever the

22  reason, Google cannot now claim to have relied on the advice of counsel as a way to rebut

23  Oracle's claim of willfulness.

24        Google must have performed the same calculation in choosing not to interject a similar

25  defense based on reliance on the Court's copyrightability decision.  In order to show that Google,

26

27  _____

    [2] Oracle is fully aware that the Court prepared its own Final Pretrial Conference Order which
    does not include this agreement of the parties.  *See* ECF No. 1760.  Oracle's point is simply that
28  the parties agreed not to get into the procedural history of the case.  That was also the Court's
    view in its Tentative Trial Plan, ECF No. 1488 at 2, with regard to the prior jury verdict.

in fact, relied on the Court's copyrightability decision, it would almost certainly have to show that its lawyers reviewed the decision and advised the business executives at Google that they could continue to pursue new, otherwise-infringing versions of Android. This would require Google to waive its attorney-client privilege with regard to any and all analyses that its lawyers performed regarding the Court's copyrightability decision and Google's chances on appeal and in the Supreme Court as well as attorney-client and work-product materials from throughout the appeal assessing Google's chances of prevailing. Absent that evidence, it would be impossible for this Court, Oracle, or the jury to assess whether Google actually relied on this Court's decision or rather believed it might lose on appeal and chose to proceed in the face of that risk.

Therefore, even if Google were allowed now (well past the 12th hour) to interject such a defense, Google would be compelled to waive its privilege. This is because the mere *existence* of the Court's 2012 decision does not prove Google relied on it (which might otherwise tend to negate willfulness). It is possible that Google's counsel advised caution after the 2012 decision because Google was unlikely to prevail on appeal, which would actually tend to *support* willful-ness. Further, to give the jury the complete picture, Oracle must then be entitled to discovery or at least examine Google witnesses relating to, for example, Google's analyses of its chances of winning on appeal, before the Supreme Court, and again on remand. And if Google claimed to rely on "law in the case" dating to the time it decided to copy, then Google will have essentially waived the entire privilege, making it all fair game.

**Failure to sub-divide case into different time periods.** As discussed in Oracle's previous brief on the topic, "[t]he effect of a reversal of a judgment is to nullify it completely and to leave the case standing as if such judgment had never been rendered." ECF No. 1874 at 5 (ellipses omitted) (collecting cases and quoting *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 188 n.2 (3d Cir. 2007)). Accordingly, ever since the case was remanded, the parties have proceeded with the fair use, willfulness, and damages case in agreement that all of the Android versions at issue rise and fall together. Google has never suggested that some Android versions may be a fair use and others not, that some Android versions may be willful infringement and others not, or that Oracle is entitled only to damages for some versions of

1    Android and not others.  That is not how the case has been litigated, and it would be manifestly

2    unfair to change the rules and the parties' understanding now—in the middle of trial.

3          Indeed, throughout the remand proceedings, both parties have consistently represented—

4    with full knowledge of the Court's 2012 decision, the Federal Circuit's 2014 decision, and the

5    releases of new versions of Android falling on both sides of those decisions—that there is no

6    theory that justifies breaking up the case into different time periods.  For example, in their

7    Responses to the Court's Order Re Damages Studies, the parties each represented that the

8    damages and fair use theories in the case did *not* require segmenting the infringement period or

9    requiring the jury to consider different time periods.  ECF No. 1364 (Oracle); ECF No. 1362

10   (Google).  The parties' proposed verdict forms also contemplate a single continuous fair use,

11   damages, and willfulness period by asking for only one response on each, instead of dividing the

12   case into separate time periods.  *See, e.g.*, ECF Nos. 1700-1 (Oracle), 1700-2 (Google).

13         This joint treatment of infringement as continuous is also evident in the parties' arguments

14   to the Court regarding jury instructions, none of which (a) request an instruction that separates out

15   certain Android versions or certain periods of time with regard to fair use, willfulness or damages

16   or (b) object to the Court's proposed fair use instruction for not separating out certain Android

17   versions or certain periods of time.  *See* ECF Nos. 1488, 1615, 1688, 1716, 1790, 1828 (Court's

18   proposed instructions that the Android versions in play all infringe unless fair use); ECF No. 1703

19   (Joint Proposed Jury Instructions, which do not separate out into different instructions various

20   Android versions); ECF Nos. 1661, 1678, 1703, 1743, 1776, 1813 (Google Proposed Jury

21   Instructions, which do not object to the Court's proposal to present the same instruction on all

22   Android versions); ECF Nos. 1707, 1527, 1663, 1679, 1744, 1777, 1814 (same as to Oracle's

23   Proposed Jury Instructions).

24         Because the parties have never litigated this case by separating out and individually an-

25   alyzing fair use for each version of Android, the Court should not interject into the jury delibera-

26   tions through an instruction the possibility that the various versions of Android should be analyz-

27   ed differently depending on when they were released.  Moreover, any instruction that contem-

28   plates dividing the case into time periods (i.e., prior to May 2012, May 2012 to May 2014, and

ORACLE'S  RESPONSE RE
WILLFULNESS & BAD FAITH

1    June 2014 to December 2015) must indicate that there were versions of Android that came out

2    *after* the Federal Circuit reversed, so that Oracle can present evidence that Google continued to

3    release versions of Android containing the infringing code in willful disregard of the Federal

4    Circuit's decision.  To present the full scope of Google's willful infringement in that context,

5    Oracle should be permitted to introduce evidence that Google copied not just from Java SE 1.4

6    and 5.0 but also from Java SE 1.6 and Java SE 1.7, which the Court previously disallowed.

7    **II.    THE COURT'S 2012 DECISION AND OTHER PRE-2014 "LAW IN THE CASE"
         IS IRRELEVANT TO GOOGLE'S WILLFULNESS OR BAD FAITH**

8

9        ***Subjective willfulness standard.***  The standard for willfulness and bad faith in copyright

10   cases is subjective; there is no threshold objective reasonableness component as in patent law. [3]

11   *Compare Los Angeles News Serv. v. KCAL-TV Channel 9,* 108 F.3d 1119, 1122 (9th Cir. 1997)

12   ("'[T]he propriety of the defendant's conduct' is relevant to the character of the use at least to the

13   extent that it may knowingly have exploited a purloined work for free that could have been

14   obtained for a fee."); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,* 658 F.3d 936, 944 (9th

15   Cir. 2011) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the

16   defendant was actually aware of the infringing activity, or (2) that the defendant's actions were

17   the result of reckless disregard for, or willful blindness to, the copyright holder's rights.") *with*

18   *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.,* 682 F.3d 1003, 1005 (Fed. Cir.

19   2012) (detailing two step willfulness inquiry in which patentee must show (1) "that the infringer

20   acted despite an objectively high likelihood that its actions constituted infringement of a valid

21   patent" and (2) "that this objectively-defined risk ... was either known or so obvious that it should

22   have been known to the accused infringer.").[4]  In this copyright case, it is for the jury to decide,

23   with reference to actual facts that go to Google's knowledge and intent, whether Google was

24   _____

[3] Google cites *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (en banc), for the proposition that willfulness can also be an objective standard in a copyright case.  ECF No. 1896.  That case is inapposite for many reasons.  First, that is not the law in the Ninth Circuit.  Second, both parties invited use of the objective standard:  The plaintiff did not assert bad faith, but instead argued the defendant's was objectively *unreasonable*.  *Id.* at 1392.  Third, the defendant revealed the content of discussions with his attorney, and claimed he read case law on fair use.  *Id.* at 1384.  None of this is present in the instant case.

[4] The Supreme Court is currently reviewing this standard.  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 356 (2015); *Stryker Corp. v. Zimmer, Inc.*, 136 S. Ct. 356 (2015).

ORACLE'S  RESPONSE RE
WILLFULNESS & BAD FAITH

willful when it decided to copy the declaring code and SSO of the 37 Java API packages. *See* ECF No. 1803 at 1 (Court's Order on Expert Testimony) ("The mental state of the characters in our story on trial is for the jury to decide, never for experts to speculate about."). Google has not asserted that it relied on advice of counsel or the Court's decision, and thus the state of the law at the time Google acted is irrelevant in this case.[5]

**Courts have found willfulness on remand.** In both copyright and patent cases, trial courts have found willfulness on remand even after an initial decision for the defendant was reversed on appeal. *See, e.g.*, *Situation Mgmt. Sys., Inc. v. Lamoco Consulting, LLC*, No. 06-11557-RGS, 2011 WL 1226114, at *5 (D. Mass. Mar. 30, 2011) (finding willful copyright infringement on remand even after the defendant first prevailed in district court only to lose on appeal), *on remand from Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 57, 60-61, 62 (1st Cir. 2009). And in the patent context, where the state of the law can be relevant to the objective prong of willfulness, there are *numerous* cases in which the defendant's infringement was found to be willful on remand even where, as in this case, the defendant first prevailed in the district court, only to lose on appeal. *See, e.g.*, *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, No. CIV.A. 01 C 6934, 2008 WL 4643428, at *1 (N.D. Ill. Oct. 20, 2008), *on remand from* 355 F.3d 1361, 1362-63 (Fed. Cir. 2004) (2-1 decision); *Odetics, Inc. v. Storage Tech. Corp.*, 14 F. Supp. 2d 800, 801-02 (E.D. Va. 1998) (erroneous claim construction), *on remand from* 116 F.3d 1497, 1507 (Fed. Cir. 1997), *aff'd* 185 F.3d 1259 (Fed. Cir. 1999); *Jenn-Air Corp. v. Penn Ventilator Co.*, 394 F. Supp. 665, 667, 676-77 (E.D. Pa. 1975), *on remand from* 464 F.2d 48, 49 (3d Cir. 1972). These willfulness findings on remand are particularly striking given that the objective prong of willfulness in patent cases must be proved by *clear and convincing* evidence. *See Bard Peripheral*, 682 F.3d at 1005. In fact, the trial court on remand in *AIA Engineering Ltd. v. Magotteaux International S/A*, No. 3:09-CV-00255, 2012 WL 4442665, at *1-2, *6-7 (M.D. Tenn. Sept. 21, 2012), *aff'd* 530 F. App'x 959 (Fed. Cir. 2013), specifically stated the defendant could be objectively willful—despite the court's own prior invalidity decision—given the

---

[5] This may be different if Google had offered an "advice of counsel" defense, but, as discussed above, Google disclaimed any such defense and never disclosed reliance on this Court's 2012 decision or any other case law.

1    evidence at trial. *See also Advanced Display Sys., Inc. v. Kent State Univ.*, No. 3-96-CV-1480-

2    BD, 2002 WL 1489555, at *1-2, 8 (N.D. Tex. July 10, 2002) (same).

3         There are patent cases in which willfulness was not found on remand. However in each of

4    these cases the trial court based its decision on the advice of counsel defense or on the *objective*

5    prong—not once did a court inform the jury of the case's procedural history so the jury could

6    determine whether it believed the defendant's infringement was willful based on the state of the

7    law or the district court's earlier decision. *See, e.g.*, *Solvay, S.A. v. Honeywell Specialty*

8    *Materials LLC*, 827 F. Supp. 2d 358, 365-66 (D. Del. 2011); *Uniloc USA, Inc. v. Microsoft Corp.*,

9    640 F. Supp. 2d 150, 177 (D.R.I. 2009) (objective prong), *aff'd in part, rev'd in part*, 632 F.3d

10   1292 (Fed. Cir. 2011); *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d

11   636, 643-44 (D. Del. 2008); *Franklin Elec. Co. v. Dover Corp.*, No. 05-C-598-S, 2007 WL

12   5067678, at *8 (W.D. Wis. Nov. 15, 2007); *see also Universal Athletic Sales Co. v. Am. Gym*,

13   480 F. Supp. 408, 414 (W.D. Pa. 1979) (advice of counsel).[6]

14        ***Google's reliance on* Kamar *is misplaced.*** Google asserts, incorrectly, that *Kamar*

15   *International, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1329 (9th Cir. 1984), stands for

16   the proposition that Google cannot have acted willfully or in bad faith between this Court's 2012

17   copyrightability decision and the Federal Circuit's decision. ECF No. 1884 at 3-4. The *Kamar*

18   language Google relies on has nothing whatever to do with willfulness or bad faith. In fact, in

19   *Kamar*, the trial court's erroneous copyrightability decision *did not* factor into the Ninth Circuit's

20   willfulness analysis at all.

21        The *Kamar* language Google seizes upon has to do with whether a defendant has "notice"

22   of infringement—a term of art under the 1909 Copyright Act—after a favorable trial court ruling.

23   The 1909 Act imposed a certain cap on statutory damages unless the infringement took place

24   *after* the defendant received notice of infringement allegations, such as through service of process

25   or other written notice. *Id.* at 1329. The defendant in *Kamar* did not actually copy the plaintiff's

26
_____

27   [6] Oracle could identify only one unfavorable copyright case on this issue. In *Jarvis v. K2 Inc.*,
     No. C03-1265Z, 2008 WL 630008, at *6 n.6 (W.D. Wash. Mar. 5, 2008), the court noted in dicta
     in a footnote (on remand after a bench trial) that, "in light of the divergent rulings in this case,"
28   the *court* would not have found willfulness. *Jarvis* is not about a jury instruction and does not
     support that the jury should learn of divergent rulings in the case.

work, as Google did here; rather, the defendant sold stuffed animals that it purchased from Korean manufacturers "who claimed them as original designs." *Id.* at 1328.  This fact, combined with the notice provision, caused the court to separate damages into three groups:  pre-notice sales (sales before the lawsuit), post-notice sales (sales after the lawsuit), and sales occurring after the district court erroneously held that the toys were neither infringing nor copyrightable. *Id.* at 1329-31.  The court found that the defendant's infringement after the district court's decision did "not count as infringement *after notice*" because the defendant "was entitled to rely on the judgment at that time." *Id.* at 1330 (emphasis added).

This conclusion about notice under the old Copyright Act does not help Google's willful-ness argument: *Kamar* itself held that notice is not the same thing as willfulness, and it analyzed the two issues separately.[7] *Id.* at 1331.  Further, the court affirmed the district court's finding of no willfulness, even as to the period of time the defendant had notice after the filing of the complaint, because the defendant in *Kamar* completely changed its behavior thereafter (it only *inadvertently* sold a few toys after the start of the suit). *Id.*  As to the period of time after the trial court's erroneous decision, the court made no specific finding on willfulness; in fact, the trial court's erroneous decision *did not* factor into the court's willfulness analysis at all. *Id.*  Google, by contrast, *intentionally copied* Oracle's IP and continues to *deliberately* sell products containing the 37 Java API packages long after it knew that Sun and then Oracle objected.  *Kamar* does not protect Google from a willfulness finding.  Finally, *Kamar* involved a bench trial; no jury was ever instructed about the district court's earlier decision or the court of appeals' reversal.

**The law was clear.**  Respectfully, Oracle submits that Google could not have relied on advice of counsel because the law was clear well before 2012 that works such as the declaring code and structure, sequence, and organization of software packages were copyright protected.  The Federal Circuit broke no new ground in reaching its decision.

---

[7] *Princeton Univ. Press*, 99 F.3d at 1392, a case Google relies on heavily in its recent brief on this issue, ECF No. 1896, also makes clear that willfulness is different from notice: "Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing."

1   It has been beyond dispute that computer programs are copyrightable since Congress

2   added "computer program[s]" to 17 U.S.C. § 101 through the Computer Software Copyright Act

3   of 1980, 94 Stat. 3015, enacted to implement the National Commission on New Technological

4   Uses of Copyrighted Works ("CONTU") study.  As to the declaring code, there was never any

5   dispute that it was "creative and original."  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1365

6   (Fed. Cir. 2014).  The question then was simply one of merger:  whether the creative expression

7   of the declaring code merged with the idea of the code itself.  Based on this Court's factual

8   findings that "nothing prevented Google from writing its own declaring code … to achieve the

9   same result," the Federal Circuit relied on precedents from the 1980s, 1990s, and early 2000s to

10  hold that the expression in the declaring code did not merge because the Oracle developers had so

11  many options available to them when they were writing the code.  *Id.* at 359-62 (collecting cases).

12  As to the structure, sequence, and organization, the Federal Circuit applied a similar

13  analysis to conclude that the SSO was "original and creative," *id.* at 1363, and that the SSO was

14  not a method of operation because the expression of the SSO did not merge with its idea and

15  function, *id.* at 1365-68 (collecting cases).  In reaching that conclusion, the Federal Circuit relied

16  on the definition of computer program in the Copyright Act, the legislative history of the

17  Copyright Act, the CONTU Report, and decisions regarding copyright protection for the SSO of

18  computer programs from the 1980s.

19  Finally, the Federal Circuit held that *Sega v. Accolade* and *Sony v. Connectix* were

20  completely inapposite because those cases were fair use cases irrelevant to the threshold question

21  of copyrightability.  *Oracle Am.*, 750 F.3d at 1368-72.

22  While the precise question of copyright protection for APIs might not have been litigated,

23  courts had long held that source code and the SSO of computer programs are copyrightable.

24  From there, questions of merger, scenes a faire, short phrases, and method of operation were all

25  governed by traditional modes of copyright analysis that had been well-settled for decades.

26  Despite this Court's copyrightability decision, Oracle respectfully submits that it was not unclear

27  under prevailing copyright law whether the declaring code and SSO of the 37 Java API packages

28  were copyright protected.

1

2

**III.    ORACLE HAS NOT OPENED THE DOOR TO THE COURT PROVIDING THE CONTEMPLATED INSTRUCTION**

3     The parties' agreement that the procedural history of the case is off limits can only be

4  overridden if "either party opens the door to such evidence or argument, and [only] after prior

5  clearance with the Court."  ECF No. 1709 (Joint [Proposed] Final Pretrial Order) at 7.  Neither

6  party has opened the door by discussing the procedural history of this case in front of the jury,

7  and Google does not argue that the door has been opened.  And as the Court has already informed

8  the parties, the Court is of the view (contrary to Google's position) that an instruction is not yet

9  required.  Trial Tr. 935:24-936:4.

10     Google instead asserts it is unfairly prejudiced by statements relating to Google's contin-

11  ued release of new versions of Android even though Google knew better.  *See* ECF No. 1884 at

12  1-2.  Google first complains that Oracle's opening stated that "Google kept coming out with new

13  what they call flavors" and that the "[n]ew versions of Android, each time using these APIs, even

14  though they knew that they shouldn't be doing that.  Gingerbread, Honeycomb, Ice Cream

15  Sandwich, Jelly Bean."  Trial Tr. 277:1-5.  Such statements do not unfairly prejudice Google.  It

16  is undisputed that each of those versions (Gingerbread, Honeycomb, Ice Cream Sandwich, Jelly

17  Bean, and others) contains Oracle's copyrighted works.  Indeed, the Court has already so

18  instructed the jury.  There is nothing prejudicial about Oracle stating that each version of Android

19  at issue contains infringing material and thus is infringing unless Google proves fair use.

20     The same goes for the only other type of statement about which Google complains.

21  During the cross examination of Google's Eric Schmidt, Oracle's counsel asked: "Q: And did you

22  take any steps, after this lawsuit got filed in August 2010, to take out of the mobile devices on the

23  market any code or anything relating to those API packages?  A: I'm not aware of any in that time

24  period."  *See* ECF No. 1884 (Google Br.) at 2 (quoting Trial Tr. 394:15-18).  This exchange is not

25  prejudicial at all, as the question and answer focus on (1) the time period immediately after this

26  suit was filed in August 2010, long before this Court's copyrightability decision, and (2) the

27  devices *on the market* at the time.

28

ORACLE'S RESPONSE RE
WILLFULNESS & BAD FAITH

**IV.    EVEN IF PRE-2014 "LAW IN THE CASE" WERE RELEVANT, THIS IS AN ISSUE FOR THE COURT TO DECIDE, NOT THE JURY**

Even if the Court's 2012 decision or any other "law in the case" were relevant to Google's willfulness and bad faith, the issue would be one for the Court to decide, not the jury.  As detailed above, Oracle is not aware of a court *ever* instructing the jury in the manner of the Court's proposed instruction.  Google asserts that, in light of *Kamar*, a court instruction about the 2012 copyrightability decision is warranted, citing in support *Waco International, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523 (5th Cir. 2002).  ECF No. 1884 at 3-4.  But *Kamar* has no application here, as the case involved a bench trial and says nothing about instructing a jury.  *Waco International* is similarly inapposite.  There, the trial court mentioned certain facets of the procedural history of the case to the entire *venire—not* the petit jury—during *voir dire*.  *Waco Int'l*, 278 F.3d at 528.  This procedural history involved an *ex parte* seizure that was highly probative to a claim the jury had to decide:  whether the plaintiff had acted in bad faith by obtaining an *ex parte* seizure order against the defendant.  *Id.* at 529.  While the trial court revealed more than it needed to, the Fifth Circuit concluded the trial court did not err because the procedural statements were *made during voir dire* and because the plaintiff did *not object* to these statements or ask for clarification.  *Id.* at 529-30.

Here, as Oracle explained in its earlier brief on the topic, if the Court instructs the jury as to its 2012 copyrightability decision, it would result in a mistrial.  *See* ECF No. 1874 at 1-2.  The Court's instruction would interject the Court as a fact witness into the trial, which is prohibited under Federal Rule of Evidence 605.  The proposed instruction stating that the Court originally held the API packages were not copyrightable would likely lead the jury to conclude erroneously that Google's use must have been fair.  That is not the law, and it would be tremendously prejudicial to Oracle.  Indeed, the Court need look no further than Google's exuberant support of an instruction on this topic to know that the result of the instruction is entirely one-sided.

Moreover, it is blackletter law that legal questions are for the court and factual questions are for the jury.  Asking the jury to determine "legal facts," such as whether the law was sufficiently unclear that Google acted reasonably, is not a question that the jury is institutionally

capable of answering.  *Cf. Elder v. Holloway*, 510 U.S. 510, 516 (1994) (rejecting the concept of "legal facts" about the state of the law in the context of qualified immunity and holding that the state of the law is a "question of law, not one of 'legal facts'").  That is why in patent cases the objective prong of willfulness is for the court to decide and the subjective prong is generally for the jury to decide.  *See Bard*, 682 F.3d at 1006-08.  The alternative is chaos, where the parties argue case authority to the jury in an attempt to persuade the jury of what the law was at the relevant time.  It certainly would not be permissible for Oracle to submit to the jury as evidence of willfulness the case law that Oracle contends showed at every point in time from when Google chose to copy until the Federal Circuit's decision in 2014 that Google's copying was clearly an infringement.  It should not be permissible for the Court to do the same through an instruction about its previous decision in the case or, as Google proposes, an explicit statement that the law was "unclear" or "unsettled" at points throughout the litigation.

The standard in copyright cases is reckless disregard or willful blindness to a copyright holder's rights.  *Supra* 6.  Though not identical, the copyright standard is perhaps somewhat analogous to the subjective prong in patent cases, which is entirely left to the jury.  The jury is never instructed on legal matters, like the state of the law, in assessing willfulness under the subjective prong.  Nevertheless, if the Court believes that Google could not have willfully infringed as to certain versions of Android *as a matter of law based on the law at the time*, the Court may be able to render such a decision (after full briefing) after the jury renders its verdict in Phase II, where willfulness will be at issue and Oracle will have an opportunity to present its entire case on willfulness.[8]

In any event, regardless of the Court's views on that issue, the jury cannot be asked to decide whether the law was sufficiently clear when Google chose to copy.  Because the state of the law at the time is not a matter for the jury, providing such an instruction only risks improperly turning the Court into a fact witness, unnecessarily confusing the jury, and irreparably prejudicing Oracle to the point of requiring a mistrial and a third trial in this matter.

---

[8] Oracle cautions, however, that the Federal Circuit's decision quite strongly demonstrates through its reliance on traditional copyright principles that the law was clear that the declaring code and SSO were copyrightable before 2012.  *Supra* 9-10.

ORACLE'S RESPONSE RE
WILLFULNESS & BAD FAITH

1

**CONCLUSION**

2

For the foregoing reasons, the Court should not instruct the jury as to this case's

3

procedural history.

4

5

Dated:        May 16, 2016                           Respectfully submitted,

6

Orrick, Herrington & Sutcliffe LLP

7

By: */s/ Lisa T. Simpson*

8

Lisa T. Simpson

9

Counsel for ORACLE AMERICA, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S RESPONSE RE
WILLFULNESS & BAD FAITH