## Google Inc.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

accordance with EITF Issue No. 98 3, *Determining Whether a Nonmonetary Transaction Involves Receipt of Productive Assets or of a Business*. The total purchase price for the four acquisitions was $56.0 million and consisted of cash payments of $22.0 million and the issuance of 170,601 fully vested shares of the Company's Class A common stock and fully vested options to purchase 16,373 shares of the Company's Class A common stock valued at $22.5 million, and unvested options to purchase 87,840 of the Company's Class A common stock valued at $7.1 million. In addition, the total purchase price includes 36,185 shares of the Company's Class A common stock generally issuable upon the attainment of certain performance milestones and valued at $4.4 million. Management determined that this consideration was part of the purchase price in accordance with EITF Issue No. 98 3, *Accounting for Contingent Consideration Paid to the Shareholders of an Acquired Enterprise in a Purchase Business Combination*. The total purchase price was allocated as follows (in thousands):

| | |
|---|---|
| Goodwill | $35,376 |
| Developed technology | 14,561 |
| Customer contracts and other | 1,500 |
| Net liabilities assumed | (4,161) |
| Deferred stock-based compensation | 3,906 |
| Deferred tax liabilities | (6,555) |
| Purchased-in-process research and development | 11,343 |
| Total | $55,970 |

Purchased in process research and development of $11.3 million was expensed upon acquisition because technological feasibility had not been established and no future alternative uses existed. That amount is included in research and development expenses on the accompanying consolidated income statement and is not deductible for tax purposes.

Goodwill includes but is not limited to the synergistic value and potential competitive benefits that could be realized by the Company from the acquisitions, any future products that may arise from the related technology, as well as the skilled and specialized workforce acquired. The goodwill amount is not deductible for tax purposes.

The developed technology, customer contracts and other intangible assets have a weighted-average useful life of 3.4 years from the date of acquisition. The amortization of these intangibles is not deductible for tax purposes.

The Company recorded $5.4 million of deferred stock-based compensation for the value of 16,175 restricted shares of the Company's Class A common stock and the intrinsic value of 87,840 unvested options to purchase the Company's Class A common stock, issued in conjunction with the acquisitions. The deferred stock-based compensation will be amortized to compensation expense on an accelerated basis over the related vesting periods of one to five years, contingent upon each individual's continued employment with the Company.

Cash consideration of $10.0 million may be paid to certain former employees of an acquired company contingent upon their continued employment with the Company and their attainment of certain performance milestones. The Company will recognize this amount as expense as the milestones are attained. As of December 31, 2004, no such milestones had been attained.

*Other Acquisitions*

During the year ended December 31, 2004, the Company entered into various agreements to purchase patents and other technologies. The total purchase price of these acquisitions of intangible assets was $56.8

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169806

Trial Exhibit 3211 Page 95 of 129

Google Inc.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

million which included cash payments and a long-term payable of $18.3 million and $10.0 million. The remaining amount of $28.5 million relates to certain intangible assets obtained in the settlement of certain disputes with Yahoo (see Note 5).

### Note 5. Settlement of Disputes with Yahoo

On August 9, 2004, the Company and Yahoo entered into a settlement agreement resolving two disputes that had been pending between them. The first dispute concerned a lawsuit filed by Yahoo's wholly-owned subsidiary, Overture Services, Inc., against the Company in April 2002 asserting that certain services infringed Overture's U.S. Patent No. 6,269,361. In its court filings, the Company denied that it infringed the patent and alleged that the patent was invalid and unenforceable.

The second dispute concerned a warrant held by Yahoo to purchase 3,719,056 shares of the Company's stock in connection with a June 2000 services agreement. Pursuant to a conversion provision in the warrant, the Company in June 2003 issued 1,229,944 shares to Yahoo. Yahoo contended it was entitled to a greater number of shares, while the Company contended that it had fully complied with the terms of the warrant.

As part of the settlement, Overture dismissed its patent lawsuit against the Company and has granted the Company a fully-paid, perpetual license to the patent that was the subject of the lawsuit and several related patent applications held by Overture. The parties also mutually released any claims against each other concerning the warrant dispute. In connection with the settlement of these two disputes, the Company issued to Yahoo 2,700,000 shares of Class A common stock. The Company used the $85.00 per share price of the initial public offering to arrive at total settlement consideration of $229.5 million.

The Company engaged a third party valuation consultant to assist management in the allocation of the value of the settlement consideration and the determination of the useful lives of the capitalized assets. The following table provides management's allocation of the settlement consideration (in thousands):

| | |
|---|---|
| Non-recurring portion of settlement of disputes with Yahoo | $201,000 |
| Intangible assets | 28,500 |
| Total consideration | $229,500 |

In the year ended December 31, 2004, the Company recognized the $201.0 million non-recurring charge related to the settlement of the warrant dispute and other items. The non-cash charge associated with these shares was required because the shares were issued after the warrant was converted. The Company realized a related income tax benefit of $82.0 million. The Company also capitalized $28.5 million related to certain intangible assets obtained in this settlement.

### Note 6. Goodwill and Other Intangible Assets

The changes in the carrying amount of goodwill for the year ended December 31, 2004, are as follows (in thousands):

| | |
|---|---|
| Balance as of January 1, 2003 | $ — |
| Goodwill acquired during year | 87,442 |
| Balance as of December 31, 2003 | 87,442 |
| Goodwill acquired during year | 35,376 |
| Balance as of December 31, 2004 | $122,818 |

86

Google Inc.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

Information regarding the Company's acquisition-related intangible assets that are being amortized is as follows (in thousands):

|  | As of December 31, 2003 | | |
| --- | --- | --- | --- |
|  | Gross Carrying Amount | Accumulated Amortization | Net Carrying Value |
| Developed technology | $20,917 | $ 5,514 | $15,403 |
| Customer contracts and other | 4,100 | 1,389 | 2,711 |
| Total | $25,017 | $ 6,903 | $18,114 |

|  | As of December 31, 2004 | | |
| --- | --- | --- | --- |
|  | Gross Carrying Amount | Accumulated Amortization | Net Carrying Value |
| Patents | $55,055 | $ 9,118 | $45,937 |
| Developed technology | 37,973 | 14,402 | 23,571 |
| Customer contracts, patents and other | 4,800 | 3,239 | 1,561 |
| Total | $97,828 | $ 26,759 | $71,069 |

Patents, developed technology, customer contracts and other have weighted-average useful lives of 3.3, 2.4 and 1.0 years.

Amortization expense of acquisition-related intangible assets for the year ended December 31, 2004 was $19.9 million.

Estimated amortization expense for acquisition-related intangible assets on the Company's December 31, 2004 consolidated balance sheet for the fiscal years ending December 31, is as follows (in thousands):

| 2005 | $32,537 |
| --- | --- |
| 2006 | 19,286 |
| 2007 | 13,240 |
| 2008 | 6,006 |
|  | $71,069 |

### Note 7. Property and Equipment

Property and equipment consist of the following (in thousands):

|  | As of December 31, | |
| --- | --- | --- |
|  | 2003 | 2004 |
| Information technology assets | $204,417 | $504,127 |
| Furniture and fixtures | 6,803 | 11,974 |
| Leasehold improvements | 7,677 | 17,617 |
| Construction in process | 42,940 | 49,350 |
| Total | 261,837 | 583,068 |
| Less accumulated depreciation and amortization | 73,582 | 204,152 |
| Property and equipment, net | $188,255 | $378,916 |

Google Inc.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

### Note 8. Commitments and Contingencies

*Capital Leases*

Equipment financed under capital lease agreements is included in property and equipment and the related amortization is included in depreciation and amortization expense. The cost of assets financed under the capital lease was $15.0 million at December 31, 2003 and 2004. The related amortization expense was $4.1 million, $5.0 million and $4.3 million during 2002, 2003 and 2004 and accumulated amortization was $9.8 million and $14.0 million at December 31, 2003 and 2004. The equipment leases have payment terms of 36 months.

*Operating Leases*

During 2003, the Company entered into a nine year sublease agreement for its headquarters in Mountain View, California. According to the terms of the sublease, the Company will begin making payments in April 2005 and payments will increase at 3% per annum thereafter. The Company recognizes rent expense under this arrangement on a straight line basis. The lease terminates on December 31, 2012, however, the Company may exercise two five year renewal options at its discretion. The Company has an option to purchase the property for approximately $172.4 million, which is exercisable in 2006. In connection with the lease, the Company has a letter of credit which requires it to maintain $9.0 million of cash and investment securities as collateral. This required collateral effectively expired in April 2004. As a result, it is classified as other current assets, which is included in "prepaid revenue share, expenses and other assets" on the accompanying consolidated balance sheets. At December 31, 2003 and December 31, 2004, the Company was in compliance with its financial covenants under the lease.

In addition, the Company has entered into various non-cancelable operating lease agreements for certain of its offices and data centers throughout the U.S. and for international subsidiaries with original lease periods expiring between 2005 and 2016. The Company is committed to pay a portion of the buildings' operating expenses as determined under the agreements. Certain of these arrangements have free or escalating rent payment provisions. The Company recognizes rent expense under such arrangements on a straight line basis. Rent expense was $3.7 million, $9.8 million and $27.1 million in 2002, 2003, and 2004.

At December 31, 2004, future payments under capital leases and minimum payments under non-cancelable operating leases with a remaining term greater than one-year are as follows over each of the next five years and thereafter (in thousands):

|  | Capital Leases | Operating Leases |
|---|---|---|
| 2005 | $1,991 | $ 21,306 |
| 2006 | — | 27,334 |
| 2007 | — | 29,611 |
| 2008 | — | 29,654 |
| 2009 | — | 28,917 |
| Thereafter | — | 98,976 |
| Total minimum payments required | 1,991 | $235,798 |
| Less amounts representing interest | 89 |  |
| Minimum future payments of principal | 1,902 |  |
| Current portion | 1,902 |  |

88

Table of Contents

### Google Inc.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

The above minimum payments at December 31, 2004 under non-cancelable operating lease commitments and the above rent expense amounts do not include amounts related to certain non-cancelable service contracts for our data centers. The non-cancelable commitments under these service contracts at December 31, 2004 are included below under purchase obligations.

*AdSense Agreements*

In connection with AdSense revenue share agreements, the Company is periodically required to make non-cancelable guaranteed minimum revenue share payments to a small number of its Google Network members over the term of the respective contracts. Under some of the Company's contracts, these guaranteed payments can vary based on the Google Network members achieving defined performance terms, such as number of advertisements displayed or search queries. In some cases, certain guaranteed amounts will be adjusted downward if the Google Network members do not meet their performance terms and, in some cases, these amounts will be adjusted upward if they exceed their performance terms. In all of these AdSense agreements, if a Google Network member were unable to perform under the contract, such as being unable to provide search queries, as defined under the terms of that agreement, then the Company would not be obligated to make any non-cancelable guaranteed minimum revenue share payments to that member.

*Purchase Obligations*

Additionally, the Company had $70.5 million of other non-cancelable contractual obligations and $32.7 million of open purchase orders for which it had not received the related services or goods at December 31, 2004. The Company has the right to cancel these open purchase orders upon 10 days notice prior to the date of delivery. The majority of these purchase obligations are related to data center operations. These non-cancelable contractual obligations and open purchase orders amounts do not include payments the Company may be obligated to make based upon vendors achieving certain milestones.

*Letters of Credit*

At December 31, 2004 and associated with several leased facilities, the Company has unused letters of credit for $14.4 million and related compensating cash balances of $11.1 million as included in "prepaid revenue share, expenses and other assets" in the accompanying consolidated balance sheets. At December 31, 2004, the Company was in compliance with its financial covenants under the letters of credit.

*Indemnifications*

While the Company has various guarantees included in contracts in the normal course of business, primarily in the form of indemnities, these guarantees do not represent significant commitments or contingent liabilities of the indebtedness of others. Accordingly, the Company has not recorded a liability related to indemnification provisions.

*Rescission Offer*

Certain shares issued and options granted prior to the initial public offering under the Company's 1998 Stock Plan, 2003 Stock Plan, 2003 Stock Plan (No. 2) and 2003 Stock Plan (No. 3) may not have been exempt from registration or qualification under federal securities laws and the securities laws of certain states. As a result, the Company made a rescission offer to the holders of these shares and options in November 2004. The offer expired in December 2004. No holders of these shares and options accepted the Company's offer. If this rescission offer had been accepted, the Company could have been required to make aggregate payments to the

89

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169810

Trial Exhibit 3211 Page 99 of 129

Google Inc.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

holders of these shares and options of up to approximately $28.3 million. Federal securities laws do not provide that a rescission offer will terminate a purchaser's right to rescind a sale of stock that was not registered as required. Although no offerees accepted the rescission offer, the Company may continue to be liable for this amount under federal and state securities laws. However, management believes there is only a remote possibility that the Company would be liable under any future claims for damages made by the holders of these shares and options. As a result, management does not believe that any such claims would have a material effect on the Company's results of operations, cash flows or financial position. See Note 14.

*Magazine Article*

Information about the Company has been published in an article appearing in the September 2004 issue of Playboy Magazine and entitled "Playboy Interview: Google Guys." This article includes quotations from Larry and Sergey, and has been reprinted by a number of news media outlets. The Company does not believe that its involvement in the Playboy Magazine article constitutes a violation of Section 5 of the Securities Act of 1933. However, if the Company's involvement were held by a court to be in violation of the Securities Act of 1933, the Company could be required to repurchase the shares sold to purchasers in its initial public offering at the original purchase price, plus statutory interest from the date of purchase, for a period of one year following the date of the violation. The Company would contest vigorously any claim that a violation of the Securities Act occurred. Management believes there is only a remote possibility that the ultimate outcome with respect to any such claim that might be made would materially adversely affect the operating results, financial position or liquidity of the Company. See Note 14.

*Other Legal Matters*

Certain companies have filed trademark infringement and related claims against us over the display of ads in response to user queries that include trademark terms. The outcomes of these lawsuits have differed from jurisdiction to jurisdiction. Courts in France have held the Company liable for allowing advertisers to select certain trademarked terms as keywords. The Company is appealing those decisions. The Company is also subject to two lawsuits in Germany on similar matters where the courts held that the Company is not liable for the actions of its advertisers prior to notification of trademark rights. The Company is litigating or recently has litigated similar issues in other cases in the U.S., France, Germany and Italy. Adverse results in these lawsuits may result in, or even compel, a change in this practice which could result in a loss of revenues, which could harm the Company's business.

From time to time, the Company may also become a party to other litigation and subject to claims incident to the ordinary course of business, including intellectual property claims (in addition to the trademark matters noted above), labor and employment claims, breach of contract claims, and other matters.

Although the results of litigation and claims cannot be predicted with certainty, the Company believes that the final outcome of the matters discussed above will not have a material adverse effect on the Company's business, results of operations or financial condition. Regardless of the outcome, litigation can have an adverse impact on the Company because of defense costs, diversion of management resources and other factors.

**Note 9.  Redeemable Convertible Preferred Stock Warrant**

As a part of an AdSense agreement entered into during 2002, the Company issued to a Google Network member a fully vested warrant to purchase 7,437,452 shares of convertible preferred stock. As a result of a redemption feature of the warrant, its fair value was classified outside of stockholders' equity. During the year ended December 31, 2004, the warrant was fully exercised by its holder through a cash payment of $21.6 million.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169811

Trial Exhibit 3211 Page 100 of 129

Google Inc.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

### Note 10. Stockholders' Equity

*Initial Public Offering*

In August 2004, the Company received approximately $1,161.1 million in net proceeds from the closing of an initial public offering of its Class A common stock.

*Convertible Preferred Stock*

Upon completion of the initial public offering, each share of convertible preferred stock automatically converted into one share of Class B common stock.

*Class A and Class B Common Stock*

The Company's Board of Directors has authorized two classes of common stock, Class A and Class B. The Company had authorized 6,000,000,000 and 3,000,000,000 shares and at December 31, 2004 there were 95,542,010 and 178,980,030 shares legally outstanding of Class A and Class B common stock. The rights of the holders of Class A and Class B common stock are identical, except with respect to voting. Each share of Class A common stock is entitled to one vote per share. Each share of Class B common stock is entitled to ten votes per share. Shares of Class B common stock may be converted at any time at the option of the stockholder and automatically convert upon sale or transfer to Class A common stock.

At December 31, 2003 and December 31, 2004 there were 115,986,783 and 30,269,249 shares of Class A and Class B common stock reserved for future issuance, as presented in the following table:

|  | December 31, 2003 | December 31, 2004 |
|---|---|---|
| Outstanding convertible preferred stock | 71,662,432 | — |
| Outstanding options to purchase Class A and Class B common stock | 17,363,122 | 18,000,279 |
| Options to purchase, and shares of, Class A and Class B common stock available for grant and issuance | 5,440,155 | 4,663,748 |
| Warrants to purchase Class B common stock | 1,294,308 | — |
| Warrants to purchase convertible preferred stock | 8,239,284 | — |
| Unvested shares related to options granted and exercised subsequent to March 21, 2002 to purchase Class A and Class B common stock | 11,987,482 | 7,605,222 |
| Total Class A and Class B common stock reserved for future issuance | 115,986,783 | 30,269,249 |

*Stock Plans*

The Company maintains the 1998 Stock Plan, the 2000 Stock Plan, the 2003 Stock Plan, the 2003 Stock Plan (No. 2) and the 2003 Stock Plan (No. 3), the 2004 Stock Plan and plans assumed through acquisitions which are collectively referred to as the "Stock Plans." Under the Company's Stock Plans, incentive and nonqualified stock options or rights to purchase Class A and Class B common stock may be granted to eligible participants. Options must generally be priced to be at least 85% of the Class A or Class B common stock's fair market value at the date of grant (100% in the case of incentive stock options). Options are generally granted for a term of ten years. Initial options granted under the Stock Plans generally vest 25% after the first year of service and ratably each month over the remaining 36 month period contingent upon employment with the Company on the date of vest. Additional options granted under the Stock Plans generally vest 20% after the first year of service and ratably each month over the remaining 48 month period contingent upon employment

Table of Contents

Google Inc.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

with the Company on the date of vest. Typically, options may be exercised prior to vesting. Sales of stock under stock purchase rights are made pursuant to restricted stock purchase agreements. There are 11,013,013 shares of Class A and Class B common stock outstanding and subject to repurchase related to the Stock Plans at December 31, 2004. Of this total, 3,407,791 and 7,605,222 shares are related to options granted through and after March 21, 2002, in accordance with EITF 00 23, respectively. The Company has also issued restricted stock units ("RSUs") and restricted shares under its Stock Plans. An RSU award is an agreement to issue shares of the Company's stock at the time of vest. RSU awards to date vest ratably each quarter over a 16 quarter period contingent upon employment with the Company on the date of vest. Restricted shares have been issued primarily in connection with business acquisitions and typically vest contingent upon the attainment of certain performance milestones and employment with the Company on the date of vest.

The following table summarizes the activity under the Company's Stock Plans:

|  | | Options Outstanding | | |
|---|---|---|---|---|
|  | Shares Available for Grant | Number of Shares | | Weighted-Average Exercise Price |
| Balance at December 31, 2001 | 8,477,528 | 16,815,528 | $ | 0.28 |
| Additional options authorized | 14,400,000 | — | | — |
| Options granted | (14,980,716) | 14,980,716 | $ | 0.30 |
| Options exercised | — | (8,520,668) | $ | 0.28 |
| Options canceled | 351,100 | (351,100) | $ | 0.30 |
| Options repurchased | 557,772 | — | $ | 0.25 |
| Balance at December 31, 2002 | 8,805,684 | 22,924,476 | $ | 0.29 |
| Additional options authorized | 16,034,880 | — | | — |
| Options granted | (19,846,158) | 19,846,158 | $ | 2.65 |
| Options exercised | — | (13,145,075) | $ | 0.54 |
| Options canceled | 274,955 | (274,955) | $ | 1.50 |
| Options repurchased | 170,794 | — | $ | 0.29 |
| Balance at December 31, 2003 | 5,440,155 | 29,350,604 | $ | 2.47 |
| Additional options authorized | 6,531,143 | — | | — |
| Options granted | (4,775,058) | 4,775,058 | $ | 85.95 |
| Options exercised | — | (8,033,820) | $ | 1.67 |
| Options canceled | 1,750 | (486,341) | $ | 4.30 |
| Options expired | (2,422,510) | — | | — |
| Balance at December 31, 2004 | 4,775,480 | 25,605,501 | $ | 24.41 |

The number of options outstanding at December 31, 2003 and 2004 includes 11,987,482 and 7,605,222 of options granted and exercised subsequent to March 21, 2002 that are unvested at December 31, 2003 and 2004, in accordance with EITF 00 23, *Issues related to the accounting for stock compensation under APB Opinion No. 25 and FASB Interpretation No. 44*. Also, the number of shares available for grant does not include a total of 111,732 restricted shares and restricted stock units granted during the year ended December 31, 2004.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169813

Trial Exhibit 3211 Page 102 of 129

Google Inc.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

The following table summarizes additional information regarding outstanding and exercisable options at December 31, 2004:

| | Options Outstanding | | | | | Options Exercisable | |
|---|---|---|---|---|---|---|---|
| Range of Exercise Prices | Total Number of Shares | Unvested Options Granted and Exercised Subsequent to March 21, 2002 | Number of Shares | Weighted-Average Remaining Life (Years) | Weighted Average Exercise Price | Number of Shares | Weighted Average Exercise Price |
| $0.01–$9.00 | 20,267,084 | 7,194,215 | 13,072,869 | 7.7 | $ 2.32 | 12,806,847 | $ 2.31 |
| $10.00–$19.79 | 1,104,177 | 298,889 | 805,288 | 9.0 | $ 10.96 | 761,732 | $ 10.86 |
| $20.00–$28.27 | 789,629 | 74,700 | 714,929 | 9.2 | $ 21.52 | 655,004 | $ 21.30 |
| $31.09–$39.57 | 385,468 | 28,993 | 356,475 | 9.3 | $ 34.21 | 343,550 | $ 34.20 |
| $42.39–$42.39 | 46 | — | 46 | 9.1 | $ 42.39 | 46 | $ 42.39 |
| $50.00–$50.00 | 137,750 | 2,000 | 135,750 | 9.4 | $ 50.00 | 128,700 | $ 50.00 |
| $60.00–$65.00 | 272,375 | 4,675 | 267,700 | 9.5 | $ 61.87 | 253,575 | $ 61.97 |
| $80.00–$85.00 | 992,220 | 1,750 | 990,470 | 9.6 | $ 82.31 | 923,795 | $ 82.44 |
| $117.84–$117.84 | 204,170 | — | 204,170 | 9.7 | $117.84 | — | — |
| $131.08–$137.08 | 140,860 | — | 140,860 | 9.8 | $135.63 | — | — |
| $140.49–$140.90 | 302,600 | — | 302,600 | 9.8 | $140.60 | — | — |
| $164.00–$169.98 | 209,282 | — | 209,282 | 9.9 | $168.88 | 572 | $164.00 |
| $172.50–$179.96 | 375,585 | — | 375,585 | 9.9 | $176.91 | — | — |
| $185.97–$186.30 | 209,065 | — | 209,065 | 9.9 | $186.10 | — | — |
| $191.67–$192.90 | 215,190 | — | 215,190 | 9.9 | $191.89 | — | — |
| $0.01–$192.90 | 25,605,501 | 7,605,222 | 18,000,279 | 8.2 | $ 24.41 | 15,873,821 | $ 10.20 |

*Warrants to Purchase Class B Common and Preferred Stock*

During 2004, all outstanding warrants to purchase Class B common and preferred stock were fully exercised by their holders through total cash payments of $21.9 million and by cashless means. The Company ultimately issued 9,522,316 shares of Class B common stock under these transactions. These amounts include the exercise of a redeemable preferred stock warrant to purchase 7,437,452 shares of preferred stock through a cash payment of $21.6 million (see Note 9). No warrants to purchase Class A or Class B common stock were outstanding at December 31, 2004.

**Note 11. 401(k) Plan**

The Company has a 401(k) Savings Plan (the "401(k) Plan") that qualifies as a deferred salary arrangement under Section 401 (k) of the Internal Revenue Code. Under the 401(k) Plan, participating employees may elect to contribute up to 60 % of their eligible compensation, subject to certain limitations. The Company matches employee contributions up to $2,200. Employee and Company contributions are fully vested when contributed. The Company contributed approximately $663,000, $1.7 million and $4.4 million during 2002, 2003 and 2004, respectively.

**Note 12. Income Taxes**

Income before income taxes included income (loss) from foreign operations of approximately $500,000, $(6.5) million and $(42.3) million for 2002, 2003 and 2004.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169814

Trial Exhibit 3211 Page 103 of 129

Table of Contents

Google Inc.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

The provision for income taxes consisted of the following (in thousands):

|  | Year Ended December 31, | | |
|---|---|---|---|
|  | 2002 | 2003 | 2004 |
| Current: | | | |
| Federal | $74,081 | $187,686 | $215,503 |
| State | 19,683 | 52,336 | 68,004 |
| Foreign | 1,367 | 965 | 1,581 |
| Total | 95,131 | 240,987 | 285,088 |
| Deferred: | | | |
| Federal | (8,504) | 712 | (18,310) |
| State | (1,368) | (693) | (15,663) |
| Foreign | — | — | — |
| Total | (9,872) | 19 | (33,973) |
| Provision for income taxes | $85,259 | $241,006 | $251,115 |

The reconciliation of federal statutory income tax rate to the Company's effective income tax rate is as follows (in thousands):

|  | Year Ended December 31, | | |
|---|---|---|---|
|  | 2002 | 2003 | 2004 |
| Expected provision at federal statutory rate, 35% | $64,720 | $121,329 | $227,582 |
| State taxes, net of federal benefit | 11,905 | 33,568 | 34,022 |
| Stock based compensation expense | 7,572 | 79,764 | 97,561 |
| Disqualifying dispositions of incentive stock options |  |  | (36,221) |
| Deferred tax assets on non-qualified stock options |  |  | (78,858) |
| Foreign rate differential | — | 3,249 | 16,370 |
| In process research and development | — | 4,066 | 3,970 |
| Federal research credit utilization | (1,528) | (2,433) | (6,317) |
| Other individually immaterial items | 2,590 | 1,463 | (6,994) |
| Provision for income taxes | $85,259 | $241,006 | $251,115 |

94

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169815

Trial Exhibit 3211 Page 104 of 129

Table of Contents

Google Inc.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

*Deferred Tax Assets*

Deferred income taxes reflect the net effects of temporary differences between the carrying amounts of assets and liabilities for financing reporting purposes and the amounts used for income tax purposes. Significant components of the Company's deferred tax assets and liabilities are as follows (in thousands):

|  | As of December 31, | |
|---|---|---|
|  | 2003 | 2004 |
| Deferred tax assets: |  |  |
| Net operating loss carryforwards | $ 482 | $ 48 |
| Deferred compensation | 5,661 | 68,242 |
| State taxes | 15,947 | 6,090 |
| Deferred revenue | 775 | 2,046 |
| Accruals and reserves not currently deductible | 4,684 | 15,574 |
| Tax credits | 291 | — |
| Other | 28 | — |
| Total deferred tax assets | 27,868 | 92,000 |
| Deferred tax liabilities: |  |  |
| Depreciation | (15,778) | (46,076) |
| Identified intangibles | (8,223) | (9,885) |
| Other | (272) | (4,986) |
| Total deferred tax liabilities | (24,273) | (60,947) |
| Net deferred tax assets | $ 3,595 | $ 31,053 |

The American Jobs Creation Act of 2004 (the Act), enacted on October 22, 2004, provides for a temporary 85% dividends received deduction on certain foreign earnings repatriated during either 2004 or 2005. The Company did not elect this provision in 2004; therefore the period during which the qualifying distributions can be made is 2005. The deduction would result in an approximate 5.25% federal tax rate on the repatriated earnings. To qualify for the deduction, the earnings must be reinvested in the United States pursuant to a domestic reinvestment plan established by the Company's chief executive officer and approved by the Company's board of directors. Certain other criteria in the Act must be satisfied as well.

No provision has been made for federal income taxes on $4.9 million of gross cumulative unremitted earnings through December 31, 2004 of the Company's foreign subsidiaries since the Company plans to indefinitely reinvest all such earnings. If these earnings were distributed to the U.S. in the form of dividends or otherwise, then the Company would be subject to U.S. income taxes (subject to an adjustment for foreign tax credits) on such earnings.

At December 31, 2004, the Company had state net operating loss carryforwards of approximately $837,000.

**Note 13. Information about Geographic Areas**

The Company's chief operating decision-makers (i.e., chief executive officer and his direct reports) review financial information presented on a consolidated basis, accompanied by disaggregated information about revenues by geographic region for purposes of allocating resources and evaluating financial performance. There are no segment managers who are held accountable for operations, operating results and plans for levels or components below the consolidated unit level. Accordingly, the Company considers itself to be in a single reporting segment and operating unit structure.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169816

Trial Exhibit 3211 Page 105 of 129

Case 3:10-cv-03561-WHA   Document 1915-12   Filed 05/17/16   Page 12 of 19

## Google Inc.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

Revenues by geography are based on the billing address of the advertiser. The following table sets forth revenues and long-lived assets by geographic area (in thousands):

|  | Year Ended December 31, | | |
|---|---|---|---|
|  | 2002 | 2003 | 2004 |
| Revenues: |  |  |  |
| United States | $341,570 | $1,038,409 | $2,119,043 |
| International | 97,938 | 427,525 | 1,070,180 |
| Total revenues | $439,508 | $1,465,934 | $3,189,223 |

|  | As of December 31, | | |
|---|---|---|---|
|  | 2002 | 2003 | 2004 |
| Long-lived assets: |  |  |  |
| United States | $ 55,009 | $ 267,348 | $ 552,857 |
| International | 87 | 43,876 | 67,029 |
| Total long-lived assets | $ 55,096 | $ 311,224 | $ 619,886 |

### Note 14. Subsequent Events

*Rescission Offer*

In January 2005, without admitting or denying the Securities and Exchange Commission's (SEC) findings that it violated federal securities laws related to the issuance of certain shares and options prior to the initial public offering under the Company's 1998 Stock Plan, 2003 Stock Plan, 2003 Stock Plan (No. 2) and 2003 Stock Plan (No. 3), the Company and its General Counsel consented to an order from the SEC that it cease and desist from violating or causing violations of federal securities laws. This consent resolves all of the SEC's concerns arising from its inquiry into this matter. In addition, in January 2005, without admitting or denying that it violated California state securities laws related to the issuance of certain shares and options under the foregoing stock plans, the Company consented to an order from the California Corporations Commissioner (California Commissioner) that it desist and refrain from the further offer or sale in the State of California of securities, unless and until qualification has been made under the law, or unless the Company is otherwise exempt from qualification. This consent resolves all of the California Commissioner's concerns arising from its inquiry into this matter. See Note 8.

*Magazine Article*

In January 2005, the Securities and Exchange Commission confirmed that it would not proceed with any enforcement action against the Company with respect to any possible violation of Section 5 of the Securities Act of 1933 in relation to the Company's involvement in an article appearing in the September 2004 issue of Playboy Magazine and entitled "Playboy Interview: Google Guys." See Note 8.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169817

Trial Exhibit 3211 Page 106 of 129

Table of Contents

### ITEM 9. CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL DISCLOSURE

Not applicable.

### ITEM 9A. CONTROLS AND PROCEDURES

*(a) Evaluation of disclosure controls and procedures.*

Our management, with the participation of our chief executive officer and chief financial officer, evaluated the effectiveness of our disclosure controls and procedures pursuant to Rule 13a-15 under the Securities Exchange Act of 1934 as of the end of the period covered by this Annual Report on Form 10-K. The evaluation included certain internal control areas in which we have made and are continuing to make changes to improve and enhance controls. In designing and evaluating the disclosure controls and procedures, management recognized that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives. In addition, the design of disclosure controls and procedures must reflect the fact that there are resource constraints and that management is required to apply its judgment in evaluating the benefits of possible controls and procedures relative to their costs.

Based on that evaluation, our chief executive officer and chief financial officer concluded that our disclosure controls and procedures are effective to provide reasonable assurance that information we are required to disclose in reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms, and that such information is accumulated and communicated to our management, including our chief executive officer and chief financial officer, as appropriate, to allow timely decisions regarding required disclosure.

*(b) Changes in internal control over financial reporting.*

There were no changes in our internal control over financial reporting that occurred during the period covered by this Annual Report on Form 10-K that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

Since 2003 we have invested significant resources to comprehensively document and analyze our system of internal control over financial reporting. We have identified areas requiring improvement, and we are in the process of designing enhanced processes and controls to address issues identified through this review. Areas of improvement include streamlining and standardizing our domestic and international billing and other processes, further limiting internal access to certain data systems and continuing to improve coordination and communication across business functions. We plan to continue this initiative as well as prepare for our first management report on internal control over financial reporting, as required by Section 404 of the Sarbanes-Oxley Act of 2002 for the annual period ending December 31, 2005, which may result in changes to our internal control over financial reporting.

### ITEM 9B. OTHER INFORMATION

Not applicable.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169818

Trial Exhibit 3211 Page 107 of 129

## PART III

### ITEM 10. DIRECTORS AND EXECUTIVE OFFICERS OF THE REGISTRANT

The information required by this item concerning our directors, compliance with Section 16 of the Securities and Exchange Act of 1934 and our code of ethics that applies to our principal executive officer, principal financial officer and principal accounting officer is incorporated by reference to the information set forth in the sections entitled "Election of Directors," "Section 16(a) Beneficial Ownership Reporting Compliance" and "Election of Directors—Corporate Governance Matters—Code of Conduct" in our Proxy Statement for our 2005 Annual Meeting of Stockholders to be filed with the Securities and Exchange Commission not later than 120 days after the fiscal year ended December 31, 2004.

The information required by this item concerning our executive officers is set forth in Part I, Item 1— "Business" of this Annual Report on Form 10-K.

### ITEM 11. EXECUTIVE COMPENSATION

The information required by this item is incorporated by reference to the information set forth in the sections entitled "Election of Directors—Director Compensation" and "Executive Compensation" in the Proxy Statement.

### ITEM 12. SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The information required by this item is incorporated by reference to the information set forth in the sections entitled "Security Ownership of Certain Beneficial Owners and Management" and "Equity Compensation Plan Information" in the Proxy Statement.

### ITEM 13. CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS

The information required by this item is incorporated by reference to the information set forth in the section entitled "Certain Transactions" in the Proxy Statement.

### ITEM 14. PRINCIPAL ACCOUNTING FEES AND SERVICES

The information required by this item is incorporated by reference to the information set forth in the section entitled "Ratification of Appointment of Independent Registered Public Accounting Firm—Accounting Fees" in the Proxy Statement.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169819

Trial Exhibit 3211 Page 108 of 129

Table of Contents

## PART IV

**ITEM 15. EXHIBITS AND FINANCIAL STATEMENT SCHEDULES**

(a)

### 1. Consolidated Financial Statements

The following documents are filed as part of this Annual Report on Form 10-K:

| | |
|---|---|
| Report of Ernst & Young LLP, Independent Registered Public Accounting Firm | 66 |
| Financial Statements | |
|     Consolidated Balance Sheets | 67 |
|     Consolidated Statements of Income | 68 |
|     Consolidated Statements of Redeemable Convertible Preferred Stock Warrant and Stockholders' Equity | 69 |
|     Consolidated Statements of Cash Flows | 72 |
|     Notes to Consolidated Financial Statements | 73 |

### 2. Financial Statement Schedules

The following financial statement schedule is filed as part of this Annual Report on Form 10-K:

    Schedule II: Valuation and Qualifying Accounts

All other schedules have been omitted as they are not required, not applicable, or the required information is otherwise included.

#### Schedule II: Valuation and Qualifying Accounts

| Allowance for Doubtful Accounts and Sales Credits | Balance at Beginning of Year | Charged to Expenses/ Against Revenue | Write-Offs Net of Recoveries | Balance at End of Year |
|---|---|---|---|---|
| | | (In thousands) | | |
| Year ended December 31, 2002 | $ 1,560 | $ 7,024 | $ (6,287) | $ 2,297 |
| Year ended December 31, 2003 | $ 2,297 | $ 6,106 | $ (3,733) | $ 4,670 |
| Year ended December 31, 2004 | $ 4,670 | $ 5,387 | $ (6,095) | $ 3,962 |

Note: Additions to the allowance for doubtful accounts are charged to expense. Additions to the allowance for sales credits are charged against revenues

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169820

Trial Exhibit 3211 Page 109 of 129

## Table of Contents

### 3. Exhibits.

| Exhibit Number | | Description | Form (Incorporated by reference herein) | Date |
|---|---|---|---|---|
| 3.01 | | Third Amended and Restated Certificate of Incorporation of Registrant as filed August 24, 2004 | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 9, 2004 |
| 3.02 | | Amended and Restated Bylaws of Registrant, effective as of August 24, 2004 | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 9, 2004 |
| 4.01 | | Investor Rights Agreement dated May 31, 2002 | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 4.01.1 | | Amendment to Investor Rights Agreement dated August 17, 2004 | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 18, 2004 |
| 4.02 | | Specimen Class A Common Stock certificate | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 18, 2004 |
| 4.03 | | Specimen Class B Common Stock certificate | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 18, 2004 |
| 10.01 | | Form of Indemnification Agreement entered into between Registrant, its affiliates and its directors and officers | Registration Statement on Form S-l, as amended (File No. 333-114984) | July 12, 2004 |
| 10.02 | ♥ | 1998 Stock Plan, as amended, and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.03 | | 1999 Stock Option/Stock Issuance Plan, as amended, and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.04 | ♥ | 2000 Stock Plan, as amended, and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.05 | | 2003 Stock Plan, as amended, and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.06 | | 2003 Stock Plan (No. 2) and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.07 | | 2003 Stock Plan (No. 3) and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.08 | ♥ | 2004 Stock Plan | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.08.1 | ♥* | 2004 Stock Plan – Stock Option Agreement | | |
| 10.08.2 | ♥* | 2004 Stock Plan – Restricted Stock Unit Agreement | | |
| 10.09 | | Google Technology Sublease Agreement dated July 9, 2003 by and between Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.1 | | Amendment No. 1 to Sublease dated November 18, 2003 by and between Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.2 | | Amendment No. 2 to Sublease dated December 17, 2003 by and between Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.3 | | Landlord-Subtenant Agreement dated July 9, 2003 by and among WXIII/Amphitheatre Realty, L.L.C., Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.4 | | Second Amendment to Commercial Lease dated July 9, 2003 by and among WXIII/Amphitheatre Realty, L.L.C., Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169821

Trial Exhibit 3211 Page 110 of 129

## Table of Contents

| Exhibit Number | | Description | Form (Incorporated by reference herein) | Date |
|---|---|---|---|---|
| 10.09.5 | | Amendment to Commercial Lease dated April 19, 2001 by and among the Goldman Sachs Group, Inc., Silicon Graphics, Inc. and Silicon Graphics Real Estate, Inc. | Registration Statement on Form S-1, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.6 | | Lease between the Goldman Sachs Group, Inc. and Silicon Graphics, Inc. dated December 29, 2000 | Registration Statement on Form S-1, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.7 | | Nondisturbance and Attornment Agreement between Registrant and WXIII/Amphitheatre Realty, L.L.C. | Registration Statement on Form S-1, as amended (File No. 333-114984) | April 29, 2004 |
| 10.10 | † | Amended and Restated License Agreement dated October 13, 2003 by and between The Board of Trustees of the Leland Stanford Junior University and Registrant | Registration Statement on Form S-1, as amended (File No. 333-114984) | August 16, 2004 |
| 10.10.1 | | License Agreement dated July 2, 2001 by and between The Board of Trustees of the Leland Stanford Junior University and Registrant | Registration Statement on Form S-1, as amended (File No. 333-114984) | August 18, 2004 |
| 10.11 | ♥ | Employment Agreement dated March 14, 2001 by and between Eric Schmidt and Registrant | Registration Statement on Form S-1, as amended (File No. 333-114984) | August 9, 2004 |
| 10.12 | | 2003 Equity Incentive Plan and form of stock option agreement | Registration Statement on Form S-1, as amended (File No. 333-114984) | July 26, 2004 |
| 10.13 | | Lifescape Solutions, Inc. 2001 Stock Plan and form of stock option agreement | Registration Statement on Form S-8 (File No. 333-119282) | September 24, 2004 |
| 10.14 | | Picasa, Inc. Employee Bonus Plan | Registration Statement on Form S-8 (File No. 333-119378) | September 29, 2004 |
| 10.15 | | Keyhole, Inc. 2000 Equity Incentive Plan and form of stock option agreement | Registration Statement on Form S-8 (File No. 333-120099) | October 29, 2004 |
| 10.16 | ♥ | 2005 Senior Executive Bonus Plan | Current Report on Form 8-K | February 18, 2005 |
| 21.01 | * | List of subsidiaries of Registrant | | |
| 23.01 | * | Consent of Ernst & Young LLP, Independent Registered Public Accounting Firm | | |
| 24.01 | * | Power of Attorney (incorporated by reference to the signature page of this Annual Report on Form 10-K) | | |
| 31.01 | * | Certification of Chief Executive Officer pursuant to Exchange Act Rules 13a-14(a) and 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2003 | | |
| 31.02 | * | Certification of Chief Financial Officer pursuant to Exchange Act Rules 13a-14(a) and 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2003 | | |
| 32.01 | ‡ | Certifications of Chief Executive Officer and Chief Financial Officer pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2003 | | |

♥ Indicates management compensatory plan, contract or arrangement.
† Confidential treatment has been granted for portions of this exhibit.
* Filed herewith.
‡ Furnished herewith.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169822

Trial Exhibit 3211 Page 111 of 129

Table of Contents

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the Registrant has duly caused this Annual Report on Form 10-K to be signed on its behalf by the undersigned, thereunto duly authorized, on March 30, 2005.

GOOGLE INC.

By:   /s/   ERIC E. SCHMIDT

Eric E. Schmidt
Chairman of the Executive Committee and
Chief Executive Officer

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that each person whose signature appears below constitutes and appoints Eric E. Schmidt and George Reyes, jointly and severally, his or her attorney-in-fact, with the power of substitution, for him or her in any and all capacities, to sign any amendments to this Annual Report on Form 10-K and to file the same, with exhibits thereto and other documents in connection therewith, with the Securities and Exchange Commission, hereby ratifying and confirming all that each of said attorneys-in-fact, or his or her substitute or substitutes, may do or cause to be done by virtue hereof.

Pursuant to the requirements of the Securities Exchange Act of 1934, this Annual Report on Form 10-K has been signed below by the following persons on behalf of the Registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/ ERIC E. SCHMIDT<br>Eric E. Schmidt | Chairman of the Executive Committee and Chief Executive Officer *(Principal Executive Officer)* | March 30, 2005 |
| /s/ GEORGE REYES<br>George Reyes | Chief Financial Officer *(Principal Financial and Accounting Officer)* | March 30, 2005 |
| /s/ SERGEY BRIN<br>Sergey Brin | President of Technology, Assistant Secretary and Director | March 30, 2005 |
| /s/ LARRY PAGE<br>Larry Page | President of Products, Assistant Secretary and Director | March 30, 2005 |
| /s/ L. JOHN DOERR<br>L. John Doerr | Director | March 30, 2005 |
| /s/ MICHAEL MORITZ<br>Michael Moritz | Director | March 30, 2005 |
| /s/ K. RAM SHRIRAM<br>K. Ram Shriram | Director | March 30, 2005 |

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169823

Trial Exhibit 3211 Page 112 of 129

**Table of Contents**

| Signature | Title | Date |
|---|---|---|
| /s/ JOHN L. HENNESSY  <br>John L. Hennessy | Director | March 30, 2005 |
| /s/ ARTHUR D. LEVINSON  <br>Arthur D. Levinson | Director | March 30, 2005 |
| /s/ PAUL S. OTELLINI  <br>Paul S. Otellini | Director | March 30, 2005 |

103

Oracle America v. Google  
3:10-cv-03561-WHA

GOOGLE-03169824

Trial Exhibit 3211 Page 113 of 129