## Table of Contents

| Exhibit Number | | Description | Incorporated by reference herein Form | Date |
|---|---|---|---|---|
| 3.01 | | Third Amended and Restated Certificate of Incorporation of Registrant as filed August 24, 2004 | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 9, 2004 |
| 3.02 | | Amended and Restated Bylaws of Registrant, effective as of August 24, 2004 | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 9, 2004 |
| 4.01 | | Investor Rights Agreement dated May 31, 2002 | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 4.01.1 | | Amendment to Investor Rights Agreement dated August 17, 2004 | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 18, 2004 |
| 4.02 | | Specimen Class A Common Stock certificate | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 18, 2004 |
| 4.03 | | Specimen Class B Common Stock certificate | Registration Statement on Form S-l, as amended (File No. 333-114984) | August 18, 2004 |
| 10.01 | | Form of Indemnification Agreement entered into between Registrant, its affiliates and its directors and officers | Registration Statement on Form S-l, as amended (File No. 333-114984) | July 12, 2004 |
| 10.02 | ♥ | 1998 Stock Plan, as amended, and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.03 | | 1999 Stock Option/Stock Issuance Plan, as amended, and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.04 | ♥ | 2000 Stock Plan, as amended, and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.05 | | 2003 Stock Plan, as amended, and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.06 | | 2003 Stock Plan (No. 2) and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.07 | | 2003 Stock Plan (No. 3) and form of stock option agreement | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.08 | ♥ | 2004 Stock Plan | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.08.1 | ♥* | 2004 Stock Plan – Stock Option Agreement | | |
| 10.08.2 | ♥* | 2004 Stock Plan – Restricted Stock Unit Agreement | | |
| 10.09 | | Google Technology Sublease Agreement dated July 9, 2003 by and between Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.1 | | Amendment No. 1 to Sublease dated November 18, 2003 by and between Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.2 | | Amendment No. 2 to Sublease dated December 17, 2003 by and between Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.3 | | Landlord-Subtenant Agreement dated July 9, 2003 by and among WXIII/Amphitheatre Realty, L.L.C., Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.4 | | Second Amendment to Commercial Lease dated July 9, 2003 by and among WXIII/Amphitheatre Realty, L.L.C., Silicon Graphics, Inc. and Registrant | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.5 | | Amendment to Commercial Lease dated April 19, 2001 by and among the Goldman Sachs Group, Inc., Silicon Graphics, Inc. and Silicon Graphics Real Estate, Inc. | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.6 | | Lease between the Goldman Sachs Group, Inc. and Silicon Graphics, Inc. dated December 29, 2000 | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |
| 10.09.7 | | Nondisturbance and Attornment Agreement between Registrant and WXIII/Amphitheatre Realty, L.L.C. | Registration Statement on Form S-l, as amended (File No. 333-114984) | April 29, 2004 |

## Table of Contents

| Exhibit Number | | Description | Incorporated by reference herein | |
|---|---|---|---|---|
| | | | Form | Date |
| 10.10 | † | Amended and Restated License Agreement dated October 13, 2003 by and between The Board of Trustees of the Leland Stanford Junior University and Registrant | Registration Statement on Form S-1, as amended (File No. 333-114984) | August 16, 2004 |
| 10.10.1 | | License Agreement dated July 2, 2001 by and between The Board of Trustees of the Leland Stanford Junior University and Registrant | Registration Statement on Form S-1, as amended (File No. 333-114984) | August 18, 2004 |
| 10.11 | ♥ | Employment Agreement dated March 14, 2001 by and between Eric Schmidt and Registrant | Registration Statement on Form S-1, as amended (File No. 333-114984) | August 9, 2004 |
| 10.12 | | 2003 Equity Incentive Plan and form of stock option agreement | Registration Statement on Form S-1, as amended (File No. 333-114984) | July 26, 2004 |
| 10.13 | | Lifescape Solutions, Inc. 2001 Stock Plan and form of stock option agreement | Registration Statement on Form S-8 (File No. 333-119282) | September 24, 2004 |
| 10.14 | | Picasa, Inc. Employee Bonus Plan | Registration Statement on Form S-8 (File No. 333-119378) | September 29, 2004 |
| 10.15 | | Keyhole, Inc. 2000 Equity Incentive Plan and form of stock option agreement | Registration Statement on Form S-8 (File No. 333-120099) | October 29, 2004 |
| 10.16 | ♥ | 2005 Senior Executive Bonus Plan | Current Report on Form 8-K | February 18, 2005 |
| 21.01 | * | List of subsidiaries of Registrant | | |
| 23.01 | * | Consent of Ernst & Young LLP, Independent Registered Public Accounting Firm | | |
| 24.01 | * | Power of Attorney (incorporated by reference to the signature page of this Annual Report on Form 10-K) | | |
| 31.01 | * | Certification of Chief Executive Officer pursuant to Exchange Act Rules 13a-14(a) and 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2003 | | |
| 31.02 | * | Certification of Chief Financial Officer pursuant to Exchange Act Rules 13a-14(a) and 15d-14(a), as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2003 | | |
| 32.01 | ‡ | Certifications of Chief Executive Officer and Chief Financial Officer pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2003 | | |

♥ Indicates management compensatory plan, contract or arrangement.
† Confidential treatment has been granted for portions of this exhibit.
* Filed herewith.
‡ Furnished herewith.

EX-10.08.01 2 dex100801.htm 2004 STOCK PLAN - STOCK OPTION AGREEMENT

Exhibit 10.08.01

US Stock Option Agreement

# GOOGLE INC.

## 2004 STOCK PLAN

## STOCK OPTION AGREEMENT

Unless otherwise defined herein, the terms defined in the 2004 Stock Plan shall have the same defined meanings in this Stock Option Agreement.

I. <u>NOTICE OF STOCK OPTION GRANT</u>

[Optionee's Name and Address]

You have been granted an option to purchase Common Stock of the Company, subject to the terms and conditions of the Plan and this Option Agreement, as follows:

| | |
|---|---|
| Grant Number | _____ |
| Date of Grant | _____ |
| Vesting Commencement Date | _____ |
| Exercise Price per Share | $ _____ |
| Total Number of Shares Granted | _____ |
| Total Exercise Price | $ _____ |
| Type of Option: | \_\_\_\_\_ Incentive Stock Option |
| | \_\_\_\_\_ Nonstatutory Stock Option |
| Term/Expiration Date: | _____ |

<u>Vesting Schedule:</u>

This Option shall be exercisable, in whole or in part, in accordance with the following schedule:

25% of the Shares subject to the Option shall vest twelve months after the Vesting Commencement Date, and 1/48[th] of the Shares subject to the Option shall vest each month thereafter, subject to the Optionee continuing to be a Service Provider on such dates.

1

Termination Period:

This Option may be exercised for three months after Optionee ceases to be a Service Provider. Upon the death or Disability of the Optionee, this Option may be exercised for twelve months after Optionee ceases to be a Service Provider. In no event shall this Option be exercised later than the Term/Expiration Date as provided above.

## II. AGREEMENT

A. Grant of Option.

The Plan Administrator of the Company hereby grants to the Optionee named in the Notice of Grant attached as Part I of this Agreement (the "Optionee") an option (the "Option") to purchase the number of Shares, as set forth in the Notice of Grant, at the exercise price per share set forth in the Notice of Grant (the "Exercise Price"), subject to the terms and conditions of the Plan, which is incorporated herein by reference. Subject to Section 18(c) of the Plan, in the event of a conflict between the terms and conditions of the Plan and the terms and conditions of this Option Agreement, the terms and conditions of the Plan shall prevail.

If designated in the Notice of Grant as an Incentive Stock Option ("ISO"), this Option is intended to qualify as an Incentive Stock Option under Section 422 of the Code. However, if this Option is intended to be an Incentive Stock Option, to the extent that it exceeds the $100,000 rule of Code Section 422(d) it shall be treated as a Nonstatutory Stock Option ("NSO").

B. Exercise of Option.

(a) Right to Exercise. This Option is exercisable during its term in accordance with the Vesting Schedule set out in the Notice of Grant and the applicable provisions of the Plan and this Option Agreement.

(b) Method of Exercise. This Option is exercisable by delivery of an exercise notice (the "Exercise Notice"), which shall state the election to exercise the Option, the number of Shares in respect of which the Option is being exercised (the "Exercised Shares"), and such other representations and agreements as may be required by the Company pursuant to the provisions of the Plan. The Exercise Notice shall be completed by the Optionee and delivered to the Stock Administration Team of the Company. The Exercise Notice shall be accompanied by payment of the aggregate Exercise Price as to all Exercised Shares. This Option shall be deemed to be exercised upon receipt by the Company of such fully executed Exercise Notice accompanied by such aggregate Exercise Price.

No Shares shall be issued pursuant to the exercise of this Option unless such issuance and exercise complies with Applicable Laws. Assuming such compliance, for income tax purposes the Exercised Shares shall be considered transferred to the Optionee on the date the Option is exercised with respect to such Exercised Shares.

Method of Payment.

Payment of the aggregate Exercise Price shall be by any of the following, or a combination thereof, at the election of the Optionee:

2. cash; or

3. check; or

4. consideration received by the Company under a formal cashless exercise program implemented by the Company in connection with the Plan; or

5. to the extent permitted by the Administrator, delivery of a properly executed exercise notice together with such other documentation as the Administrator and the broker, if applicable, shall require to effect an exercise of the Option and delivery to the Company of the sale proceeds required to pay the Exercise Price.

2

C. Non-Transferability of Option.

This Option may not be transferred in any manner otherwise than by will or by the laws of descent or distribution and may be exercised during the lifetime of Optionee only by the Optionee. The terms of the Plan and this Option Agreement shall be binding upon the executors, administrators, heirs, successors and assigns of the Optionee.

D. Term of Option.

This Option may be exercised only within the term set out in the Notice of Grant, and may be exercised during such term only in accordance with the Plan and the terms of this Option Agreement.

E. Tax Obligations.

(a) Withholding Taxes. Optionee agrees to make appropriate arrangements with the Company (or the Parent or Subsidiary employing or retaining Optionee) for the satisfaction of all Federal, state, local and foreign income and employment tax withholding requirements applicable to the Option exercise. Optionee acknowledges and agrees that the Company may refuse to honor the exercise and refuse to deliver Shares if such withholding amounts are not delivered at the time of exercise.

(b) Notice of Disqualifying Disposition of ISO Shares. If the Option granted to Optionee herein is an ISO, and if Optionee sells or otherwise disposes of any of the Shares acquired pursuant to the ISO on or before the later of (1) the date two years after the Date of Grant, or (2) the date one year after the date of exercise, the Optionee shall immediately notify the Company in writing of such disposition. Optionee agrees that Optionee may be subject to income tax withholding by the Company on the compensation income recognized by the Optionee.

F. Entire Agreement; Governing Law.

The Plan is incorporated herein by reference. The Plan and this Option Agreement constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company and Optionee with respect to the subject matter hereof, and may not be modified adversely to the Optionee's interest except by means of a writing signed by the Company and Optionee. This agreement is governed by the internal substantive laws, but not the choice of law rules, of California.

G. NO GUARANTEE OF CONTINUED SERVICE.

OPTIONEE ACKNOWLEDGES AND AGREES THAT THE VESTING OF SHARES PURSUANT TO THE VESTING SCHEDULE HEREOF IS EARNED ONLY BY CONTINUING AS A SERVICE PROVIDER AT THE WILL OF THE COMPANY (AND NOT THROUGH THE ACT OF BEING HIRED, BEING GRANTED AN OPTION OR PURCHASING SHARES HEREUNDER). OPTIONEE FURTHER ACKNOWLEDGES AND AGREES THAT THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREUNDER AND THE VESTING SCHEDULE SET FORTH HEREIN DO NOT CONSTITUTE AN EXPRESS OR IMPLIED PROMISE OF CONTINUED ENGAGEMENT AS A SERVICE PROVIDER FOR THE VESTING PERIOD, FOR ANY PERIOD, OR AT ALL, AND SHALL NOT INTERFERE WITH OPTIONEE'S RIGHT OR THE COMPANY'S RIGHT TO TERMINATE OPTIONEE'S RELATIONSHIP AS A SERVICE PROVIDER AT ANY TIME, WITH OR WITHOUT CAUSE.

By your signature and the signature of the Company's representative below, you and the Company agree that this Option is granted under and governed by the terms and conditions of the Plan and this Option Agreement. Optionee has reviewed the Plan and this Option Agreement in their entirety, has had an opportunity to obtain the advice of counsel prior to executing this Option Agreement and fully understands all provisions of the Plan and Option Agreement. Optionee hereby agrees to accept as binding, conclusive and final all decisions or interpretations of the Administrator upon any questions relating to the Plan and Option Agreement. Optionee further agrees to notify the Company upon any change in the residence address indicated below.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169829

Trial Exhibit 3211 Page 118 of 129

| OPTIONEE: | GOOGLE INC. |
|---|---|
| _____ | _____ |
| Signature | By |
| _____ | _____ |
| Print Name | Title |
| _____ | |
| Residence Address | |
| _____ | |

4

EX-10.08.2 3 dex10082.htm 2004 STOCK PLAN - RESTRICTED STOCK UNIT AGREEMENT

Exhibit 10.08.2

## GOOGLE INC.

## 2004 STOCK PLAN

### RESTRICTED STOCK UNIT AGREEMENT

**I. NOTICE OF GRANT**

Unless otherwise defined herein, the terms defined in the 2004 Stock Plan will have the same defined meanings in this Notice of Grant.

**Name:**      ("Participant")

**Address:**

The Participant has been granted Restricted Stock Units ("**RSUs**"). Each RSU represents the right to receive one Share, subject to the terms and conditions of the Plan and this Restricted Stock Unit Agreement ("**Agreement**"), as follows:

Grant Number: _____

Date of Grant: _____

Vesting Commencement Date: _____

Number of RSUs: _____

Vesting Schedule:

[[ADD SCHEDULE], subject to the Participant continuing to be a Service Provider through each vesting date.]

**II. AGREEMENT**

   1. <u>Grant of the RSUs</u>. As set forth in the Notice of Grant, the Company has granted the Participant RSUs. However, unless and until the RSUs will have vested, the Participant will have no right to the payment of any Shares subject thereto. Prior to actual payment of any Shares, such RSUs will represent an unsecured obligation of the Company, payable (if at all) only from the general assets of the Company.

   2. <u>Vesting of RSUs</u>. Subject to Section 4, the Participant will vest in the RSUs in accordance with the vesting schedule set forth in the Notice of Grant; *provided, that,* in the event Participant ceases to be a Service Provider, the Participant's right to vest in the RSUs and to receive the Shares related thereto will terminate effective as of the date that Participant ceases to be a Service Provider and the Participant will have no further rights to such unvested RSUs or the related Shares.

   3. <u>Issuance of Shares</u>. No Shares shall be issued to the Participant prior to the date on which the RSUs vest. After any RSUs vest and subject to the terms of this Agreement, the Company shall promptly cause to be issued (either in book-entry form or otherwise) to the Participant or the Participant's beneficiaries, as the case may be, Shares with respect to such vested RSUs. No fractional Shares shall be issued under this Agreement.

1

4. <u>Administrator Discretion; Leave of Absence</u>. The Administrator, in its discretion, may accelerate the vesting of the balance, or some lesser portion of the balance, of the RSUs at any time, subject to the terms of the Plan. If so accelerated, such RSUs will be considered as having vested as of the date specified by the Administrator. [The Participant's rights with respect to the RSU in the event of a leave of absence or a change in the Participant's regularly scheduled hours of employment (other than a change due to termination of employment) will be affected in accordance with the Company's applicable employment policies or the terms of any agreement between the Participant and the Participant's employer with respect thereto.]

5. <u>Death of Participant</u>. Any distribution or delivery to be made to the Participant under this Agreement will, if the Participant is then deceased, be made to the administrator or executor of the Participant's estate. Any such administrator or executor must furnish the Company with (a) written notice of his or her status as transferee, and (b) evidence satisfactory to the Company to establish the validity of the transfer and compliance with any laws or regulations pertaining to said transfer.

6. <u>Taxes</u>.

(a) <u>Generally</u>. The Participant is ultimately liable and responsible for all taxes owed in connection with the RSU, regardless of any action the Company or any of its Subsidiaries takes with respect to any tax withholding obligations that arise in connection with the RSU. Neither the Company nor any of its Subsidiaries makes any representation or undertaking regarding the treatment of any tax withholding in connection with the grant or vesting of the RSU or the subsequent sale of Shares issuable pursuant to the RSU. The Company and its Subsidiaries do not commit and are under no obligation to structure the RSU to reduce or eliminate the Participant's tax liability.

(b) <u>Payment of Withholding Taxes</u>. Notwithstanding any contrary provision of this Agreement, no Shares will be issued to the Participant, unless and until satisfactory arrangements (as determined by the Administrator) will have been made by the Participant with respect to the payment of any taxes which the Company determines must be withheld with respect to the RSUs. The Administrator, in its sole discretion and pursuant to such procedures as it may specify from time to time, may satisfy such tax withholding obligations, in whole or in part, by withholding otherwise deliverable Shares having an aggregate Fair Market Value sufficient to (but not exceeding) the minimum amount required to be withheld. In addition and to the maximum extent permitted by law, the Company has the right to retain without notice from salary or other amounts payable to the Participant, cash having a value sufficient to satisfy any tax withholding obligations that cannot be satisfied by the withholding of otherwise deliverable Shares.

7. <u>Changes in Shares</u>. In the event that any dividend or other distribution (whether in the form of cash, Shares, other securities, or other property), recapitalization, stock split, reverse stock split, reorganization, merger, consolidation, split-up, spin-off, combination, repurchase, or exchange of Shares or other securities of the Company, or other change in the corporate structure of the Company affecting the Shares occurs such that an adjustment is determined by the Administrator (in its sole discretion) to be appropriate in order to prevent dilution or enlargement of the benefits or potential benefits intended to be made available under this Award, the Administrator may, in such manner as it shall deem equitable or appropriate in order to prevent the diminution or enlargement of any such benefits or potential benefits, make adjustments to this Award, including adjustments in the number and type of Shares Participant would have received upon vesting of the RSUs; *provided, however*, that the number of Shares into which the RSUs may be converted shall always be a whole number.

8. <u>Rights as Stockholder</u>. Neither the Participant nor any person claiming under or through the Participant will have any of the rights or privileges of a stockholder of the Company in respect of any Shares deliverable hereunder unless and until certificates representing such Shares (which may be in book entry form) will have been issued and recorded on the records of the Company or its transfer agents or registrars, and delivered to the Participant (including through electronic delivery to a brokerage account). After such issuance, recordation and delivery, the Participant will have all the rights of a stockholder of the Company with respect to voting such Shares and receipt of dividends and distributions on such Shares.

9. <u>No Effect on Employment</u>. The transactions contemplated hereunder and the vesting schedule set forth in the Notice of Grant do not constitute an express or implied promise of continued employment for any period of time.

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169832

Trial Exhibit 3211 Page 121 of 129

10. <u>Award is Not Transferable</u>. Except to the limited extent provided in Section 5 above, this Award of RSUs and the rights and privileges conferred hereby will not be transferred, assigned, pledged or hypothecated in any way by the Participant (whether by operation of law or otherwise) and will not be subject to sale under execution, attachment or similar process, until the Participant has been issued the Shares. Upon any attempt by the Participant to transfer, assign, pledge, hypothecate or otherwise dispose of this Award, or any right or privilege conferred hereby, or upon any attempted sale under any execution, attachment or similar process, this Award and the rights and privileges conferred hereby immediately will become null and void.

11. <u>Entire Agreement</u>. This Agreement, subject to the terms and conditions of the Plan and the Notice of Grant, represents the entire agreement between the parties with respect to the RSUs.

12. <u>Binding Agreement</u>. Subject to the limitation on the transferability of this Award contained herein, this Agreement will be binding upon and inure to the benefit of the heirs, legatees, legal representatives, successors and assigns of the parties hereto.

13. <u>Additional Conditions to Issuance of Certificates for Shares</u>. The Company shall not be required to issue any certificate or certificates for Shares hereunder prior to fulfillment of all the following conditions: (a) the admission of such Shares to listing on all stock exchanges on which such class of stock is then listed; (b) the completion of any registration or other qualification of such Shares under any state or federal law or under the rulings or regulations of the Securities and Exchange Commission or any other governmental regulatory body, which the Administrator shall, in its absolute discretion, deem necessary or advisable; (c) the obtaining of any approval or other clearance from any state or federal governmental agency, which the Administrator shall, in its absolute discretion, determine to be necessary or advisable; and (d) the lapse of such reasonable period of time following the date of vesting of the RSUs as the Administrator may establish from time to time for reasons of administrative convenience.

14. <u>Plan Governs</u>. This Agreement is subject to all terms and provisions of the Plan. In the event of a conflict between one or more provisions of this Agreement and one or more provisions of the Plan, the provisions of the Plan will govern.

15. <u>Administrator Authority</u>. The Administrator will have the power to interpret the Plan and this Agreement and to adopt such rules for the administration, interpretation and application of the Plan as are consistent therewith and to interpret or revoke any such rules. All actions taken and all interpretations and determinations made by the Administrator in good faith will be final and binding upon the Participant, the Company and all other interested persons. No member of the Administrator will be personally liable for any action, determination or interpretation made in good faith with respect to the Plan or this Agreement.

16. <u>Captions</u>. Captions provided herein are for convenience only and are not to serve as a basis for interpretation or construction of this Agreement.

17. <u>Agreement Severable</u>. In the event that any provision in this Agreement will be held invalid or unenforceable, such provision will be severable from, and such invalidity or unenforceability will not be construed to have any effect on, the remaining provisions of this Agreement.

18. <u>Notice of Governing Law</u>. This Agreement will be governed by the internal substantive laws, but not the choice of law rules of the State of California.

19. <u>Employee Data Privacy</u>.

(a) Participant hereby explicitly and unambiguously consents to the collection, use and transfer, in electronic or other form, of your personal data as described in this document by the Company for the exclusive purpose of implementing, administering and managing Participant's participation in the Plan.

(b) Participant understands that the Company holds certain personal information, including, but not limited to, name, home address and telephone number, date of birth, social insurance number or other identification number, salary, nationality, job title, any Shares or directorships held in the Company, details of all entitlement to Shares

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169833

Trial Exhibit 3211 Page 122 of 129

awarded, canceled, exercised, vested, unvested or outstanding in Participant's favor, for the purpose of implementing, administering and managing the Plan ("**Data**").

(c) Participant understands that Data may be transferred to any third parties assisting in the implementation, administration and management of the Plan, that these recipients may be located in Participant's country or elsewhere, and that the recipient's country may have different data privacy laws and protections than Participant's country. Participant understands that he or she may request a list with the names and addresses of any potential recipients of the Data by contacting Participant's local human resources representative.

(d) Participant authorizes the recipients to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing Participant's participation in the Plan, including any requisite transfer of such Data as may be required to a broker or other third party. Participant understands that Data will be held only as long as is necessary to implement, administer and manage Participant's participation in the Plan. Participant understands that Participant may, at any time, view Data, request additional information about the storage and processing of Data, require any necessary amendments to Data or refuse or withdraw the consents herein, in any case without cost, by contacting in writing Participant's local human resources representative. Participant understands, however, that refusing or withdrawing consent may affect Participant's ability to participate in the Plan. For more information on the consequences of the refusal to consent or withdrawal of consent, Participant understands that he or she may contact Participant's local human resources representative.

4

By your signature and the signature of the Company's representative below, you and the Company agree that this Award of Restricted Stock Units is granted under and governed by the terms and conditions of the Plan and the Agreement.

| PARTICIPANT: | GOOGLE INC. |
|---|---|
| _____ | _____ |
| Signature | By |
| _____ | _____ |
| Print Name | Title |
| Date: _____, 2004 | Date: _____, 2004 |

5

EX-21.01 4 dex2101.htm LIST OF SUBSIDIARIES OF REGISTRANT

Exhibit 21.01

**Google Inc.,
a Delaware corporation**

List of wholly-owned subsidiaries

- Google Australia Pty Ltd
- Google Canada Corporation
- Google France SARL
- Google Germany GmbH
- Google (Hong Kong) Limited
- Google Online India Private Limited
- Google Ireland Holdings Limited
- Google Ireland Limited
- Google Italy S.r.l
- Google Japan Inc.
- Google Korea, LLC
- Google Netherlands BV
- Google Netherlands Holdings BV
- Google Spain S.L.
- Google Sweden AB
- Google Switzerland GmbH
- Google UK Limited
- Google International LLC, a Delaware Limited Liability Company
- Google LLC, a Delaware Limited Liability Company
- Applied Semantics, Inc., a California Corporation
- Ignite Logic, Inc., a Delaware Corporation
- Kaltix Corporation, a Delaware Corporation
- Keyhole, LLC, a Delaware Limited Liability Company
- Neotonic Software Corporation, a California Corporation
- Orkut.com LLC, a Delaware Limited Liability Company
- Picasa LLC, a Delaware Limited Liability Company
- Where2 LLC, a Delaware Limited Liability Company
- Zipdash, Inc., a Delaware Corporation

EX-23.01 5 dex2301.htm CONSENT OF ERNST & YOUNG LLP, INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

Exhibit 23.01

CONSENT OF ERNST & YOUNG LLP,
INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

We consent to the incorporation by reference in the Registration Statements (Form S-8 Nos. 333-120099, 333-119378, 333-119282 and 333-117715) of Google Inc. of our report dated January 28, 2005 with respect to the consolidated financial statements and schedule of Google Inc., included in this Annual Report (Form 10-K) for the year ended December 31, 2004.

/s/   ERNST & YOUNG LLP

San Jose, California
March 25, 2005

EX-31.01 6 dex3101.htm CERTIFICATION OF CEO PURSUANT TO EXCHANGE ACT RULES 13A-14(A) AND 15D-14(A)

Exhibit 31.01

## CERTIFICATION

I, Eric E. Schmidt, certify that:

1. I have reviewed this annual report on Form 10-K of Google Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;

    (b) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: March 30, 2005

/S/   ERIC E. SCHMIDT
Eric E. Schmidt
Chairman of the Executive Committee and
Chief Executive Officer

Oracle America v. Google
3:10-cv-03561-WHA

GOOGLE-03169838

**Trial Exhibit 3211 Page 127 of 129**

EX-31.02 7 dex3102.htm CERTIFICATION OF CFO PURSUANT TO EXCHANGE ACT RULES 13A-14(A) AND 15D-14(A)

Exhibit 31.02

**CERTIFICATION**

I, George Reyes, certify that:

1. I have reviewed this annual report on Form 10-K of Google Inc.;

2. Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    (a) Designed such disclosure controls and procedures or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;

    (b) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    (c) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: March 30, 2005

/s/   GEORGE REYES
George Reyes
Chief Financial Officer

EX-32.01 8 dex3201.htm CERTIFICATIONS OF CEO AND CFO PURUSANT TO 18 U.S.C SECTION 1350

**Exhibit 32.01**

**CERTIFICATION OF CHIEF EXECUTIVE OFFICER AND CHIEF FINANCIAL OFFICER**

**PURSUANT TO
18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2003**

 I, Eric E. Schmidt, certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2003, that the Annual Report of Google Inc. on Form 10-K for the fiscal year ended December 31, 2004 fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that information contained in this Form 10-K fairly presents in all material respects the financial condition and results of operations of Google Inc.

Date: March 30, 2005

By: /s/ ERIC E. SCHMIDT
Name: Eric E. Schmidt
Title: *Chairman of the Executive Committee and Chief Executive Officer*

 I, George Reyes, certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2003, that the Annual Report of Google Inc. on Form 10-K for the fiscal year ended December 31, 2004 fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that information contained in this Form 10-K fairly presents in all material respects the financial condition and results of operations of Google Inc.

Date: March 30, 2005

By: /s/ GEORGE REYES
Name: George Reyes
Title: *Chief Financial Officer*