transfer instructions for such Stockholder. Such stockholder represents that if on the Closing date Buyer tenders payment to such Stockholder with respect to any note held by such Stockholder set forth on Exhibit D equal to the amount of principal and interest payable as of the date hereof with respect to such note (including the amount payable assuming the Acquisition occurs) as set forth on Exhibit D plus any additional interest that may accrue from the date hereof through the Closing, then such note shall be fully paid and cancelled.

## ARTICLE IV

### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to the Company and the Stockholders that the statements contained in this Article IV are true and correct.

4.1     Organization and Standing of Buyer. Buyer is a corporation duly organized, validly existing and in good standing under the laws of Delaware. Buyer has all requisite corporate power and authority necessary to enable it to own and operate its properties and to conduct its business as now being conducted and presently proposed to be conducted.

4.2     Authority; Valid and Binding Agreement. Buyer has all requisite corporate power and authority to enter into this Agreement and each of the agreements contemplated hereby and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by Buyer of this Agreement and each of the agreements contemplated hereby and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate action on the part of Buyer and no further Corporate action is required. This Agreement and each of the agreements contemplated hereby has been duly executed and delivered by Buyer and, assuming the due authorization, execution and delivery of the other parties hereto and thereto, constitute the valid and binding obligations of Buyer, enforceable against Buyer in accordance with its terms.

4.3     Conflict. The execution and delivery by Buyer of this Agreement and each of the agreements contemplated hereby does not, and the consummation of the transactions contemplated hereby and thereby will not, breach, conflict with, or result in any violation of or default under (with or without notice or lapse of time, or both), or give rise to a right of termination, cancellation or acceleration of any obligation or to the loss of any benefit under, or result in the creation or imposition of any Lien of any nature whatsoever upon any of the properties or assets of Buyer, under any provisions of: (i) any loan or credit agreement, note, bond, mortgage, indenture, lease, deed of trust, agreement, contract, commitment, license, franchise, permit, understanding, instrument or obligation or other arrangement to which Buyer is a party or by which Buyer or any of its properties or assets may be bound or affected; or (ii) the Certificate of Incorporation or the bylaws or other constitutive or governing documents of Buyer.

-28-

CONFIDENTIAL                                                                 Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00303955

Trial Exhibit 1004, Page 34 of 82

ARTICLE V

CONDUCT PRIOR TO THE EFFECTIVE TIME

5.1     Conduct of the Company.  During the period from the date of this Agreement and continuing until the earlier of the termination of this Agreement or the Closing, the Company agrees to operate the business of the Company (except to the extent that Buyer shall provide its prior written consent) in the usual, regular and ordinary course in substantially the same manner as heretofore conducted.  The Company agrees to pay the debts and Taxes of the Company when due, to pay or perform other obligations when due, and use their reasonable best efforts to (a) preserve intact the Company's present business organizations, (b) keep available the services of the Company's present officers and key employees and (c) preserve the Company's relationships with customers, suppliers, distributors, licensors, licensees, joint venture partners and others having business dealings with it.  The Company agrees to notify Buyer promptly of any event or occurrence which would be a breach of any of the representations and warranties of the Company set forth under this Agreement.  The Company agrees not to take any of the following actions without the prior written consent of Buyer, which consent may not be unreasonably withheld or delayed:

(a)     make any expenditures or enter into any commitment or transaction exceeding $50,000 individually or $100,000 in the aggregate or any commitment or transaction of the type described in Section 2.14 hereof;

(b)     (i) sell, license or transfer to any person or entity any rights to any Intellectual Property of the Company or enter into any agreement with respect to any Intellectual Property of the Company with any person or entity or with respect to any Intellectual Property of any person or entity, (ii) buy or license any Intellectual Property or enter into any agreement with respect to the Intellectual Property of any person or entity, or (iii) enter into any agreement with respect to the development of any Intellectual Property with a third party;

(c)     enter into or amend any Contract pursuant to which any other party is granted marketing, distribution, development or similar rights of any type or scope with respect to any products or technology of the Company or enter into any other Contract which would have been required to have been disclosed on Schedule 2.12 had such contract been entered into prior to the date hereof, unless otherwise permitted by this Article V;

(d)     amend or otherwise modify (or agree to do so), or violate the terms of, any of the Contracts set forth or described in the Schedule of Exceptions;

(e)     commence or settle any litigation other than for collection of debts in the ordinary course of business;

(f)     declare, set aside, or pay any dividends on or make any other distributions (whether in cash, stock or property) in respect of any Company Common Stock, or split, combine or reclassify any Company Common Stock or issue or authorize the issuance of any other securities in respect of, in lieu of or in substitution for shares of Company Common Stock, or repurchase, redeem

-29-

or otherwise acquire, directly or indirectly, any shares of Company Common Stock (or options, warrants or other rights exercisable therefore);

(g) issue, grant, deliver or sell or authorize or propose the issuance, grant, delivery or sale of, or purchase or propose the purchase of, any shares of capital stock of the Company or any securities convertible into, or subscriptions, rights, warrants or options to acquire, or other agreements or commitments of any character obligating it to issue or purchase any such shares or other convertible securities, except for the issuance of up to 310,000 shares of Company Common Stock as determined in the discretion of the Board of Directors of the Company, provided that (A) any such issuance of shares of Company Common Stock shall be made to natural persons only and in compliance with federal and state securities laws and (B) each recipient of such shares of Company Common Stock shall, as of the time he, she or it receives such shares, execute a counterpart signature page to this Agreement agreeing to be bound by this Agreement as a Stockholder for all purposes hereunder;

(h) cause or permit any amendments to the Company's Organizational Documents;

(i) acquire or agree to acquire by merging or consolidating with, or by purchasing any assets or equity securities of, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets which are material, individually or in the aggregate, to the Company's business;

(j) sell, lease, license or otherwise dispose of any of its properties or assets, including the sale of any accounts receivable of the Company except for sales of products in the ordinary course of business;

(k) incur any indebtedness or guarantee any indebtedness or issue or sell any debt securities or guarantee any debt securities of others;

(l) grant any loans to others or purchase debt securities of others or amend the terms of any outstanding loan agreement;

(m) grant any severance or termination pay (in cash or otherwise) to any employee;

(n) adopt any plan which would have been required to be disclosed in Schedule 2.17(a) or amend any Benefit Plan, enter into any employment contract, pay or agree to pay any special bonus or special remuneration to any director or employee, increase the salaries, wage rates, or other compensation of its employees;

(o) pay, discharge or satisfy, in an amount in excess of $50,000 in any one case, or $100,000 in the aggregate, any claim, liability or obligation (absolute, accrued, asserted or

CONFIDENTIAL                                   Oracle America v. Google, 3:10-cv-03561-WHA            GOOGLE-00303957

Trial Exhibit 1004, Page 36 of 82

unasserted, contingent or otherwise), other than the payment (when due), discharge or satisfaction (when due) in the ordinary course of business;

(p) make or change any material election in respect of Taxes, adopt or change any accounting method in respect of Taxes, enter into any closing agreement, settle any material claim or assessment in respect of Taxes, file any material Tax Return or any amended Tax Return, or consent to any extension or waiver of the limitation period applicable to any claim or assessment in respect of Taxes;

(q) hire or terminate any employees (other than the termination of any employee for cause after notice to and consultation with Buyer), or encourage any employees to resign from the Company;

(r) enter into any new leases, including but not limited to real estate and equipment leases;

(s) enter into any transaction not in the ordinary course of business without the express written approval of Buyer; or

(t) take, or agree in writing or otherwise to take, any of the actions described in Sections 5.1(a) through Section 5.1(t) hereof, or any other action that would (i) prevent the Company from performing, or cause the Company not to perform, its covenants hereunder or (ii) cause or result in any of its representations and warranties contained herein being untrue or incorrect, *provided, however*, that the prior written consent of Buyer shall not be required for the acceleration of all outstanding unvested Company Common Stock immediately prior to the Closing, to which Buyer hereby expressly consents.

5.2 No Solicitation. Until the earlier of (a) the Closing Date, or (b) the date of termination of this Agreement pursuant to the provisions of Section 8.1, the Company, and the Principal Stockholders shall not, nor shall the Company permit, encourage, authorize or direct, as applicable, any of the Company's officers, directors, employees, agents, representatives or affiliates (any of such persons a "**Representative**") (or encourage, authorize or direct any of the Stockholders), to, directly or indirectly: (i) solicit, knowingly or recklessly encourage, initiate or participate in any inquiry, negotiations or discussions, or enter into any agreement, with respect to any offer or proposal to acquire all or any material part of the Company's businesses, properties or assets, or any amount of Company Common Stock (whether or not outstanding), other than as permitted in this Agreement, whether by acquisition, purchase of assets, tender offer, license or otherwise, or effect any such transaction, (ii) disclose any non-public information to any person other than Buyer concerning the Company's businesses, technologies or properties, or afford to any person or entity other than Buyer access to its properties, technologies, books or records, or (iii) assist or cooperate with any person to do any of the foregoing. The Company shall immediately cease and cause to be terminated any such contacts or negotiations with any individual or entity relating to any such transaction or business combination. In the event that the Company or any of its Affiliates receive, directly or indirectly, prior to the Closing or the termination of this Agreement in accordance with Section 8.1, any offer, proposal, or request, directly or indirectly, of the type

-31-

referenced in clause (i) above, or any request for disclosure or access as referenced in clause (ii) above, the Company shall immediately notify Buyer thereof, including information as to the identity of the offeror or the party making any such offer or proposal and the specific terms of such offer or proposal, as the case may be, and such other information related thereto as Buyer may reasonably request. Any breach of this Section 5.2 by any Representative or Principal Stockholder shall be deemed to be a breach of this Section 5.2 by the Company and the Principal Stockholders. The parties hereto agree that irreparable damage would occur in the event that the provisions of this Section 5.2 were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed by the parties hereto that Buyer shall be entitled to seek an injunction or injunctions to prevent breaches of the provisions of this Section 5.2 and to enforce specifically the terms and provisions hereof in any court of the United States or any state having jurisdiction, this being in addition to any other remedy to which Buyer may be entitled at law or in equity.

5.3   No Transfer. No Stockholder shall sell, transfer, assign or hypothecate the shares of Company Common Stock held by it (except to Buyer pursuant to the terms hereof) without the prior written consent of Buyer.

## ARTICLE VI

## ADDITIONAL AGREEMENTS

6.1   Access to Information. The Company shall afford the Buyer and its accountants, counsel and other representatives, reasonable access during the period from the date hereof and prior to the Closing to (i) all of its properties, books, contracts, commitments and records, (ii) other information concerning the business, properties and personnel (subject to restrictions imposed by applicable law) of the other party as such party may reasonably request. No information or knowledge obtained in any investigation pursuant to this Section 6.1 shall affect or be deemed to modify any representation or warranty contained herein or the conditions to the obligations of the parties to consummate the transactions contemplated by this Agreement and the other agreements contemplated hereby in accordance with the terms and provisions hereof and thereof.

6.2   Confidentiality. The Company and each Stockholder agrees that the terms, conditions and existence of this Agreement, and, after the Closing, all information concerning the businesses and affairs of the Company that is not already generally available to the public, shall be treated as the Buyer's confidential information and that no reference to the terms, conditions or existence of this Agreement or to activities pertaining thereto or concerning the businesses and affairs of the Company after the Closing may be made by Company or any Stockholder without the prior written consent of Buyer, except: (i) after the Closing, Stockholder may disclose the contents of any press release issued by Buyer concerning the Acquisition; (ii) as required by any court or other governmental body; (iii) as otherwise required by law; (iv) to its legal counsel, tax and financial advisors; (v) in confidence, in connection with the enforcement of this Agreement or rights under this Agreement; and (vi) to the extent Stockholder is an employee of Buyer after the Closing, Stockholder may disclose that Stockholder is an employee of Buyer, and Stockholder may make disclosures solely to the extent required to satisfy Stockholder's duties as an employee of Buyer (but

CONFIDENTIAL                                                                Oracle America v. Google, 3:10-cv-03561-WHA        GOOGLE-00303959

Trial Exhibit 1004, Page 38 of 82

subject to the proprietary information and invention assignment agreement to be entered into between such Stockholder and Buyer). Without limiting the foregoing, neither the Company nor any Stockholder shall issue any statement or communication to any third party (subject to the exceptions set forth in the preceding sentence) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the consent of Buyer. In the event Company or a Stockholder must disclose the confidential information of Buyer pursuant to the order or requirement of a court or other governmental body, the Company or such Stockholder, as the case may be, shall provide prompt notice thereof to Buyer to allow Buyer to obtain a protective order, and the Company or such Stockholder, as the case may be, shall also use its reasonable efforts to obtain a protective order, assist Buyer in obtaining a protective order or otherwise prevent public disclosure of such information. On or after the Closing, Buyer may in its sole discretion issue a press release announcing or otherwise publicly disclose the Closing of this Agreement and the transactions contemplated hereby. If Company or any Stockholder breaches any of its obligations with respect to confidentiality or use of Buyer's confidential information hereunder, Buyer shall be entitled to seek equitable relief to protect its interest therein, including injunctive relief, as well as money damages.

6.3     Consents. The Company and the Stockholders shall use commercially reasonable efforts to obtain all necessary consents, waivers and approvals with respect to the transactions contemplated by this Agreement under any Contract.

6.4     Reasonable Efforts. Subject to the terms and conditions provided in this Agreement, each of the parties hereto shall use its reasonable efforts to take promptly, or cause to be taken, all actions, and to do promptly, or cause to be done, and to assist and cooperate with the other parties in doing, all things necessary, proper or advisable to consummate and make effective, as expeditiously as reasonably possible, the transactions contemplated by this Agreement and the other agreements contemplated hereby including using reasonable efforts to accomplish the following: (a) the taking of such reasonable acts as are necessary to cause the conditions precedent set forth in Article VII to be satisfied; (b) the obtaining of all necessary actions or non-actions, waivers, consents, approvals, orders and authorizations from Governmental Authorities and the making of all necessary registrations, declarations and filings (including registrations, declarations and filings with Governmental Authorities, if any) and the taking of such reasonable steps as may be necessary to avoid any suit, claim, action, investigation or proceeding by any Governmental Authority; (c) the obtaining of all necessary consents, approvals or waivers from third parties; (d) the defending of any suits, claims, actions, investigations or proceedings, whether judicial or administrative, challenging this Agreement or any of the agreements contemplated hereby or the consummation of the transactions contemplated hereby or thereby, including seeking to have any stay or temporary restraining order entered by any court or other Governmental Authority vacated or reversed; and (e) the execution or delivery of any additional instruments necessary to consummate the transactions contemplated by, and to fully carry out the purposes of, this Agreement and the other agreements contemplated hereby. In connection with and without limiting the foregoing, each of the Company and its respective Board of Directors shall, if any state takeover statute or similar statute or regulation is or becomes applicable to this Agreement or any of the transactions contemplated by this Agreement, use reasonable efforts to ensure that the transactions contemplated by this

-33-

Agreement may be consummated as promptly as practicable on the terms contemplated by this Agreement and otherwise to minimize the effect of such statute or regulation on this Agreement and the transactions contemplated hereby.

6.5     Notification of Certain Matters.  Each party hereto shall give prompt notice to the other party hereto (either Buyer or the Company and the Stockholders, as appropriate) of: (a) the occurrence or non-occurrence of any event, the occurrence or non-occurrence of which is likely to cause any representation or warranty of such party contained in this Agreement to be untrue or inaccurate in any material respect at or prior to the Closing, and (b) any failure of such party to comply with or satisfy, in any material respect, any covenant, condition or agreement to be complied with or satisfied by it hereunder; *provided, however,* that the delivery of any notice pursuant to this Section 6.5 shall not (i) limit or otherwise affect any remedies available to the party receiving such notice or (ii) constitute an acknowledgment or admission of a breach of this Agreement.  No disclosure pursuant to this Section 6.5, however, shall be deemed to amend or supplement the Schedule of Exceptions or prevent or cure any misrepresentations, breach of warranty or breach of covenant.

6.6     280G Approval.  If Section 280G applies to the Company and of any payments or benefits under this Agreements or the agreements contemplated hereby may constitute a Section 280G Payment, as soon as reasonably practicable after the execution of this Agreement, the Company shall submit to the Stockholders for approval (in a manner satisfactory to Buyer), by such number of stockholders as is required by the terms of Section 280G(b)(5)(B) of the Code, any payments and/or benefits that may separately or in the aggregate, constitute "parachute payments," within the meaning of Section 280G(b)(2) of the Code (**"Section 280G Payments"**) (which initial determination shall be made by the Company and shall be subject to review and approval by Buyer), such that such Section 280G Payments shall not be deemed to be Section 280G Payments, and prior to the Closing, the Company shall deliver to Buyer certification that (a) a stockholder vote was solicited in conformance with Section 280G of the Code and the regulations promulgated thereunder and the requisite stockholder approval was obtained with respect to any Section 280G Payments that were subject to the stockholder vote, or (B) that the stockholder approval of Section 280G Payments was not obtained and as a consequence, that such payments and/or benefits shall not be made or provided to the extent they would cause any amounts to constitute Section 280G Payments, pursuant to the waivers of those payments and/or benefits duly executed by the affected individuals prior to the stockholder vote.

6.7     Acknowledgement; Release of Claims.  Each Stockholder hereby acknowledges and agrees that, immediately prior to the Closing, such Stockholder beneficially owns the shares of Company Common Stock set forth opposite such Stockholder's name on Schedule 1.1.  Stockholder, on his or her own behalf, and on behalf of his or her respective heirs, family members, executors, agents and assigns, hereby fully and forever releases and discharges the Company and Buyer and their respective officers, directors, consultants, agents, investors, stockholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns, from, and agrees not to sue the foregoing parties concerning, any claim, duty, obligation, cause of action, suit, judgment, debt, demand, cost, compensation, attorneys fees or other liability or expense relating to

-34-

CONFIDENTIAL                                                                    Oracle America v. Google, 3:10-cv-03561-WHA           GOOGLE-00303961

Trial Exhibit 1004, Page 40 of 82