such Stockholder's equity ownership in the Company except for such as relate to Buyer's obligations under this Agreement. Each Stockholder acknowledges that he or she has been advised and is familiar with the provisions of California Civil Code Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Each Stockholder, being aware of said code section, agrees to expressly waive any rights he or she may have thereunder, as well as under any other statute or common law principles of similar effect.

6.8     Consent to Domain Name Assignment. Buyer hereby consents for all purposes hereunder to the transfer, prior to the Closing, of all right, title and interest in and to the domain name "Android.com" from the Company to Andrew E. Rubin.

6.9     Release of Claims. The Company shall use commercially reasonable efforts to obtain a release of claims from each John Kim and Andrew K. Turk in a form reasonably satisfactory to Buyer.

ARTICLE VII

CONDITIONS TO THE ACQUISITION

7.1     Conditions to Obligations of Each Party to Effect the Acquisition. The respective obligations of the Stockholders, the Company and Buyer to effect the Acquisition and to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction at or prior to the Closing of the following condition:

(a)     No Injunctions or Restraints; Illegality. No Governmental Entity shall have enacted, issued, promulgated, enforced or entered any statute, rule, regulation, executive order, decree, injunction or other order (whether temporary, preliminary or permanent) and no other legal or regulatory restraint or prohibition shall be in effect, in either case, which has the effect of making the Acquisition illegal or otherwise preventing the consummation of the Acquisition.

7.2     Additional Conditions to Obligations of the Company and the Stockholders. The obligations of the Company and the Stockholders to effect the Acquisition and to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction at or prior to the Closing of each of the following conditions, any of which may be waived, in writing, exclusively by the Company:

(a)     Representations and Warranties. Each representation and warranty of Buyer were true, correct and complete when made and (i) with respect to the representations and warranties of Buyer that are qualified as to materiality, such representations and warranties shall be true, correct

-35-

and complete on and as of the Closing as though such representations and warranties were made on and as of the Closing, except for those representations and warranties that refer to facts existing at a specific date, which shall be true, correct and complete as of such date and (ii) with respect to the representations and warranties of Buyer that are not qualified as to materiality, such representations and warranties shall be true, correct and complete in all material respects on and as of the Closing as though such representations and warranties were made on and as of the Closing, except for those representations and warranties that refer to facts existing at a specific date, which shall be true, correct and complete in all material respects as of such date.

(b)  Agreements and Covenants.  Buyer shall have performed and complied in all material respects with all agreements and covenants required by this Agreement to be performed and complied with by Buyer prior to or as of the Closing.

7.3  Conditions to the Obligations of Buyer.  The obligation of Buyer to effect the Acquisition and to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction at or prior to the Closing Date of each of the following conditions, any of which may be waived, in writing, exclusively by Buyer:

(a)  Representations and Warranties.  Each representation and warranty of the Stockholders and the Company were true, correct and complete when made and (i) with respect to the representations and warranties of the Stockholders and the Company that are qualified as to materiality or Company Material Adverse Effect, such representations and warranties shall be true, correct and complete on and as of the Closing as though such representations and warranties were made on and as of the Closing, except for those representations and warranties that refer to facts existing at a specific date, which shall be true, correct and complete as of such date and (ii) with respect to the representations and warranties of the Stockholders and the Company that are not qualified as to materiality or Company Material Adverse Effect, such representations and warranties shall be true, correct and complete in all material respects on and as of the Closing as though such representations and warranties were made on and as of the Closing, except for those representations and warranties that refer to facts existing at a specific date, which shall be true, correct and complete in all material respects as of such date.

(b)  Agreements and Covenants.  The Stockholders and the Company shall have performed and complied in all material respects with all agreements and covenants required by this Agreement required to be performed and complied with by the Stockholders and the Company prior to or as of the Closing.

(c)  Third Party Consents.  The Stockholders and the Company shall have received all necessary consents, waivers and approvals with respect to the transactions contemplated by this Agreement under any Contract (if any) in a form of consent, waiver or approval (as the case may be) reasonably acceptable to Buyer.

(d)  Note Consents.  The Company shall have obtained and provided to the Buyer all consents, waivers and approvals necessary such that the notes set forth Schedule 2.6 may be prepaid by Buyer after the Closing.

-36-

CONFIDENTIAL                                    Oracle America v. Google, 3:10-cv-03561-WHA        GOOGLE-00303963

Trial Exhibit 1004, Page 42 of 82

(e) <u>No Company Material Adverse Effect</u>. There shall not have occurred any event or condition of any character that has had or could reasonably be expected to have a Company Material Adverse Effect.

(f) <u>Offer Letters</u>. Each of the employees of the Company offered employment by Buyer shall have executed and delivered to Buyer an offer letter and Buyer's standard proprietary information and invention assignment agreement (each in form and substance satisfactory to Buyer) and such other documentation as is required by Buyer's standard human resources policies, and such agreements shall be in full force and effect.

(g) <u>Director and Officer Resignations</u>. Buyer shall have received the resignations, effective as of the Closing, of each director and officer of Company.

(h) <u>Section 280G Approval</u>. If Section 280G of the Code applies to the Company, with respect to any payments or benefits that may constitute a Section 280G Payment, the stockholders of the Company shall have approved, pursuant to the method provided for in the regulations promulgated under Section 280G of the Code, any such Section 280G Payments or shall have disapproved such payments, and, as a consequence, no Section 280G Payments shall be paid or provided for in any manner and Buyer and its subsidiaries shall not have any liabilities with respect to any Section 280G Payments.

(i) <u>FIRPTA Compliance</u>. Buyer shall have received from the Company a properly executed notice in a form reasonably acceptable to Buyer for purposes of satisfying Buyer's obligations under Section 897 and 1445 of the Code, together with written authorization for Buyer to deliver such notice to the IRS on behalf of the Company after the Closing.

(j) <u>Documents for Escrow Agent</u>. Each Stockholder shall have delivered to Buyer such documentation as the Escrow Agent may reasonably require, which, for an individual Stockholder shall include a photocopy of such Stockholder's driver license, passport or other government-issued photo identification card and for a non-individual Stockholder shall include a photocopy of the charter documentation for such Stockholder, certified by the applicable state or other jurisdiction of organization, if applicable.

(k) <u>Lease Modification</u>. The Company shall have executed an agreement with its landlord(s) either (i) terminating all Leases, which agreement(s) shall be in a form reasonably satisfactory to Buyer or (ii) providing for the sublease of all properties subject to all Leases for the entire term of each such Leases, which agreement(s) shall be in a form satisfactory to Buyer (the agreement(s) entered into pursuant to clause (i) or (ii) hereof shall be referred to herein as the "**Lease Modification**").

(l) <u>Noncompetition Agreements</u>. Each Principal Stockholder shall have executed and delivered to Buyer a Noncompetition Agreement, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Noncompetition Agreements**").

-37-

(m) <u>Legal Opinion</u>. Buyer shall have received a legal opinion from O'Melveny & Myers LLP, legal counsel to the Company, substantially in the form attached hereto as <u>Exhibit B</u>.

(n) <u>Net Equity Adjustment</u>. On the day prior to the Closing Date, Buyer shall have received from the Company a calculation of the Adjusted Net Equity in accordance with Section 1.1(b).

(o) <u>Excess Expenses</u>. At least one day prior to the Closing Date, Buyer shall have received from the Company a calculation of the Excess Expenses in accordance with <u>Section 1.10</u>.

(p) <u>Revised Schedule 1.1</u>. Prior to the Closing, Buyer shall have received from the Company a revised <u>Schedule 1.1</u> hereto showing, as of the Closing, all of the Stockholders of the Company, the domicile addresses of each and the classes and number of shares of capital stock of the Company held by each.

(q) <u>Revised Exhibit D</u>. Prior to the Closing, Buyer shall have received from the Company a revised <u>Exhibit D</u> hereto containing a list of all of the notes payable by the Company (other than the Google Note) as of the Closing including (A) the amount of principal and interest payable as of the Closing (including the amount payable assuming the Acquisition occurs) and (B) wire-transfer instructions for each noteholder listed thereon.

(r) <u>Collection of Original Notes</u>. In anticipation of Buyer prepaying all of the notes set forth on <u>Exhibit D</u> hereto on or shortly after Closing (but with no obligation to do so), Buyer shall have received from the Company the original executed copy of each note set forth on <u>Exhibit D</u> for the purpose of canceling the same.

(s) <u>Form W-9 or Form W-8</u>. Each holder of a note set forth on <u>Exhibit D</u> hereto shall have delivered to Buyer a completed and executed Form W-9 or Form W-8, as applicable.

(t) <u>Termination of Obligations and Restrictions in Respect of Company Common Stock</u>. Any and all agreements imposing obligations on any holder of Company Common Stock (in such holder's capacity as such) or restrictions upon shares of Company Common Stock, including, without limitation, voting agreements, right of first refusal restrictions, repurchase rights and market standoff agreements, shall be terminated.

(u) <u>All Stockholders Party to This Agreement</u>. Each holder of capital stock of the Company as of immediately prior to the Closing shall be a party to this Agreement as a Stockholder.

(v) <u>Officer Certificate of the Company</u>. Buyer shall have received a certificate, validly executed by Chief Executive Officer of the Company for and on its behalf, to the effect that, as of the Closing, the conditions to the obligations of Buyer set forth in Sections 7.3(a) through 7.3(v) have been satisfied (unless otherwise waived in writing in accordance with the terms hereof).

(w) <u>Certificate of Secretary of Company</u>. Buyer shall have received a certificate, validly executed by the Secretary of the Company, certifying as to (i) the terms and effectiveness of

-38-

the Organizational Documents and the good standing of the Company, and (ii) the valid adoption of resolutions of the Board of Directors of the Company (whereby the Acquisition and the transactions contemplated thereby were unanimously approved by the Board of Directors) and (iii) execution of this Agreement by all Stockholders.

## ARTICLE VIII

### TERMINATION, AMENDMENT AND WAIVER

8.1   Termination.  Except as provided in Section 8.2, this Agreement may be terminated and the Acquisition abandoned at any time prior to the Closing:

(a)   by mutual written consent of the Company, a majority in interest of the Stockholders and Buyer;

(b)   by Buyer or the Company if: (i) there shall be a final, non-appealable order of a court of competent jurisdiction in effect preventing consummation of the Acquisition, or (ii) there shall be any statute, rule, regulation or order enacted, promulgated or issued or deemed applicable to the Acquisition by any Governmental Entity that would make consummation of the Acquisition illegal;

(c)   by Buyer, upon a breach of any representation, warranty, covenant or agreement on the part of the Company or any Stockholder set forth in this Agreement, or if any representation or warranty the Company or any Stockholder shall have become untrue, in either case such that the conditions set forth in Section 7.3(a) would not be satisfied as of the time of such breach or as of the time such representation or warranty shall have become untrue, *provided* that if any such inaccuracy in the Company's or any Stockholder's representations and warranties or breach by the Company or any Stockholder is curable by the Company or such Stockholder through the exercise of reasonable efforts, then Buyer may not terminate this Agreement under this Section 8.1(c) prior to the end of a ten (10) business day period following such breach (or inaccuracy arising), provided the Company or such Stockholder continues to exercise reasonable efforts to cure such breach (it being understood that Buyer may not terminate this Agreement pursuant to this Section 8.1(c) if such breach by the Company or such Stockholder is cured prior to the end of such period);

(d)   by the Company and a majority in interest of the Stockholders upon a breach of any representation, warranty, covenant or agreement on the part of Buyer set forth in this Agreement, or if any representation or warranty of Buyer shall have become untrue, in either case such that the conditions set forth in Section 7.2(a) would not be satisfied as of the time of such breach or as of the time such representation or warranty shall have become untrue; *provided* that if any such inaccuracy in Buyer's representations and warranties or breach by Buyer is curable by Buyer through the exercise of its reasonable efforts, then the Company may not terminate this Agreement under this Section 8.1(d) prior to the end of a ten (10) business day period following such breach (or inaccuracy arising), provided Buyer continues to exercise reasonable efforts to cure such breach (it being understood that the Company and such Stockholders may not terminate this

-39-

Agreement pursuant to this Section 8.1(d) if such breach by Buyer is cured prior to the end of such period);

(e) by Buyer if the Closing shall not have occurred on or before August 1, 2005, by reason of the failure of any condition precedent under Section 7.3 hereof (unless the failure results primarily from Buyer itself breaching any representation, warranty, or covenant contained in this Agreement);

(f) by the Company if the Closing shall not have occurred on or before August 1, 2005, by reason of the failure of any condition precedent under Section 7.2 hereof (unless the failure results primarily from the Company or any Stockholder breaching any representation, warranty, or covenant contained in this Agreement); or

(g) by Buyer, if a Company Material Adverse Effect shall have occurred after the date of this Agreement.

(h) Effect of Termination. In the event of termination of this Agreement as provided in Section 8.1 hereof, this Agreement shall forthwith become void and there shall be no liability or obligation on the part of Buyer, the Company or the Stockholders or their respective officers, directors, employees, agents, consultants, representatives or stockholders (in their respective capacities as such), if applicable; *provided* that each party hereto shall remain liable for any breach of this Agreement prior to its termination; and *provided further*, that, the provisions of Sections 1.10 (Expenses), 6.2 (Confidentiality), Article X and this Section 8.2 shall remain in full force and effect and survive any termination of this Agreement pursuant to the terms of this Article VIII.

8.2 Amendment. Prior to the Closing, the parties hereto may amend this Agreement at any time by execution of an instrument in writing signed on behalf of the party against whom enforcement is sought. On or after the Closing, Buyer, the Company and the Stockholders may amend this Agreement at any time by execution of an instrument in writing signed on behalf of the party against whom enforcement is sought. Notwithstanding the foregoing, any amendment hereto executed by the Stockholder Agent shall be deemed effective against and shall bind all Stockholders. Notwithstanding anything herein to the contrary, Escrow Agent may execute and deliver this Agreement at any time on or after the date of this Agreement and prior to the Closing. The effective date of the execution of this Agreement by the Escrow Agent shall be the date set forth beneath the signature of the Escrow Agent. Notwithstanding anything herein to the contrary, this Agreement may be amended solely with the consent of Buyer for the purpose of adding additional Stockholders as parties hereto.

8.3 Extension; Waiver. At any time prior to the Closing, Buyer, on the one hand, and the Company and the Stockholders, on the other hand, may, to the extent legally allowed, (a) extend the time for the performance of any of the obligations of the other party hereto, (b) waive any inaccuracies in the representations and warranties made to such party contained herein or in any document delivered pursuant hereto, and (c) waive compliance with any of the agreements or conditions for the benefit of such party contained herein. At any time on or after the Closing, Buyer

CONFIDENTIAL                                              Oracle America v. Google, 3:10-cv-03561-WHA       GOOGLE-00303967

Trial Exhibit 1004, Page 46 of 82

and the Company, on the one hand, and the Stockholders, on the other hand, may, to the extent legally allowed, (i) extend the time for the performance of any of the obligations of the other party hereto, (ii) waive any inaccuracies in the representations and warranties made to such party contained herein or in any document delivered pursuant hereto, and (iii) waive compliance with any of the agreements or conditions for the benefit of such party contained herein. Any agreement on the part of a party hereto to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such party. Notwithstanding the foregoing, any extension or waiver hereto executed by the Stockholder Agent shall be deemed effective against and shall bind all Stockholders.

## ARTICLE IX

### SURVIVAL OF REPRESENTATIONS AND WARRANTIES; INDEMNIFICATION

9.1     Survival of Representations and Warranties. The representations and warranties of the Company and the Stockholders contained in this Agreement (including in the Company Disclosure Schedule) shall survive for a period of two (2) years following the Closing Date; *provided, however,* that (i) the representations and warranties set forth in Section 2.2 (Authority), Section 2.8 (Taxes), Section 2.6 (Financial Information), Section 2.11 (Intellectual Property and Related Matters) and Section 2.16 (Certain Employee Matters) shall survive until the expiration of the applicable statutes of limitations and (ii) the representations and warranties set forth in Section 2.5 (Company Capitalization) and Article III and any breach of a representation or warranty resulting from fraud or willful breach shall not terminate (the matters set forth in clauses (i) and (ii) are referred to herein as the "**Special Indemnities**"). The representations and warranties of Buyer contained in this Agreement shall terminate as of the Closing.

9.2     Indemnification.

(a)     (i) The Company and the Stockholders jointly and severally shall indemnify, defend and hold harmless Buyer and its employees, directors, officers, representatives and affiliates, including the Company after the Closing (each an "**Indemnified Party**" and collectively, the "**Indemnified Parties**") from and against, and pay or reimburse, as the case may be, the Indemnified Parties for, any and all losses, claims, liabilities, damages, deficiencies, taxes, costs and expenses, including the reasonable fees and expenses of attorneys, accountants and other professionals (each a "**Loss**" and collectively "**Losses**") paid, incurred, accrued or sustained by the Indemnified Parties, or any one of them, directly or indirectly, arising out of or relating to (A) any breach or inaccuracy of a representation or warranty of the Company pursuant to this Agreement or any schedule, exhibit, or certificate delivered pursuant to the terms hereof; (B) any breach or any failure to fulfill, perform or comply with any covenant or agreement made by the Company under this Agreement or any schedule, exhibit, or certificate delivered pursuant hereto; (C) any claims brought by Employees who were or are terminated prior to or as of the Closing; (D) any inaccuracy in the calculation of the Net Equity Shortfall; and (E) any Excess Expenses not deducted from the Closing Purchase Price that are paid by Buyer.

-41-

CONFIDENTIAL                    Oracle America v. Google, 3:10-cv-03561-WHA         GOOGLE-00303968

Trial Exhibit 1004, Page 47 of 82

(ii) Each of the Stockholders, severally and not jointly, shall indemnify, defend and hold harmless the Indemnified Parties for Losses paid, incurred, accrued or sustained by the Indemnified Parties, or any one of them, directly or indirectly, arising out of or relating to (A) any breach or inaccuracy of a representation or warranty of such Stockholder pursuant to this Agreement or any schedule, exhibit, or certificate delivered pursuant hereto; and (B) any breach or any failure to fulfill, perform or comply with any covenant or agreement made by such Stockholder under this Agreement or any schedule, exhibit, or certificate delivered pursuant hereto.

(b) Order of Claims. The amount of any Losses shall be recoverable by Buyer:

(i) first, through recourse to the Escrow Fund in accordance with Section 9.3;

(ii) second, if the Escrow Period has expired and/or the Escrow Fund has been exhausted, then Buyer may (A) proceed against the Indemnifying Parties directly and/or (B) offset any Losses against one or more Milestone Payments (an "**Offset**").

(c) Limitations. After the Closing and subject to the remainder of this Section 9.2(c), Buyer's remedies against the Stockholders for claims arising under this Agreement shall be limited to the indemnification available under this Article IX. No Non-Principal Stockholder shall be liable to one or more Indemnified Parties for Losses in an amount in excess of the aggregated consideration actually paid to such Non-Principal Stockholder by Buyer hereunder; *provided, however*, that nothing in this Agreement shall limit an Indemnified Party's right to recover for Losses from a Non-Principal Stockholder based on or resulting from any willful breach or any willful failure to fulfill, perform or comply with any covenant or agreement made by such Non-Principal Stockholder under this Agreement or any schedule, exhibit, or certificate delivered pursuant hereto. No Principal Stockholder shall be liable to one or more Indemnified Parties for Losses in an amount in excess of the aggregated consideration actually paid to such Principal Stockholder by Buyer hereunder; *provided, however*, that nothing in this Agreement shall limit an Indemnified Party's right to recover for Losses from a Principal Stockholder based on or resulting from (A) fraud, willful breach or intentional misrepresentation, (B) any willful breach or any willful failure to fulfill, perform or comply with any covenant or agreement made by such Principal Stockholder under this Agreement or any schedule, exhibit, or certificate delivered pursuant hereto or (C) any breach or any failure to fulfill, perform or comply with any covenant or agreement made by such Principal Stockholders pursuant to his Noncompetition Agreement. There shall be no right to indemnification unless and until Officer's Certificates identifying aggregate Losses in excess of $100,000 (the "**Threshold**") have been delivered to the Stockholder Agent; *provided, however*, that in the event the aggregate amount of Losses for which the Indemnified Parties are seeking indemnification exceeds the Threshold, such parties may recover the full amount of such Losses; *provided, further* that claims for Losses with respect to the following shall not be subject to the Threshold: (A) any inaccuracy in the calculation of the Net Equity Shortfall, (B) any Excess Expenses not deducted from the Closing Purchase Price that are paid by Buyer or (C) any breach or any failure to fulfill, perform or comply with any covenant or agreement breach under this Agreement or any schedule, exhibit, or certificate delivered pursuant hereto.

-42-

(d) Tax Benefit. If the Stockholders' indemnification obligation under this Article IX arises in respect of an adjustment which makes allowable to Buyer, any of its Affiliates or, effective upon the Closing, the Company, any deduction, amortization, exclusion from income or other allowance (a "**Tax Item**") that currently reduces the taxes payable of any such entity in the year of the payment (the amount of such reduction attributable to such Tax Item, a "**Tax Benefit**") which would not, but for such adjustment, be allowable, then any indemnification payment by the Stockholders to Buyer shall be an amount equal to (x) the amount otherwise due but for this subsection (d), minus (y) the Tax Benefit.

(e) Indemnification as Adjustment to Closing Purchase Price. The parties agree that any indemnification payments made pursuant to this Agreement shall be treated for tax purposes as an adjustment to the Closing Purchase Price, unless otherwise required by applicable Law.

9.3 Claims for Indemnification.

(a) Officer's Certificate. Claims for indemnity pursuant to this Article IX by an Indemnified Party shall be made by the delivery of an Officer's Certificate (as defined below) to the Stockholder Agent (as defined in Section 9.4) and the Escrow Agent. For the purposes hereof, "**Officer's Certificate**" shall mean a certificate signed by any officer of Buyer: (i) stating that an Indemnified Party has in good faith paid, sustained, incurred or accrued, or anticipates that it will have to pay, sustain, incur or accrue Losses and (ii) specifying in reasonable detail the facts pertinent to such indemnification claim and the individual items of Losses included in the amount so stated and the section of this Agreement under which such claim arises and, in the case of anticipated Losses, the basis for such anticipated liability.

(b) Objection Notice. The Stockholder Agent may make a written objection (an "**Objection Notice**") to any claim for indemnification. The Objection Notice shall be delivered to Buyer and Escrow Agent within 15 days after delivery of the Officer's Certificate to the Stockholder Agent. If the Stockholder Agent fails to deliver an Objection Notice in such 15-day period, the Indemnified Party shall provide a second notice to the Stockholder Agent and Escrow Agent which shall include a copy of the original Officer's Certificate (the "**Second Notice**"). The Stockholder Agent may deliver an Objection Notice with respect to the claim(s) for indemnification in the Second Notice, and such Objection Notice shall be delivered to Buyer and Escrow Agent within 15 days after delivery of the Second Notice. The amount objected to by a Stockholder Agent in any Objection Notice is referred to as a "**Disputed Amount**."

(c) Recovery for Losses. If the Stockholder Agent fails to timely deliver an Objection Notice after delivery of the Second Notice as provided for in Section 9.3(b), upon the expiration of the 15-day period for delivery of the Objection Notice after the Second Notice, such failure to so object shall be an irrevocable acknowledgment by the Stockholder Agent and the Stockholders that the Indemnified Parties are entitled to the full amount of the claim for Losses set forth in such Officer's Certificate, and the Escrow Agent shall deliver to Buyer funds held in the Escrow Fund equal to the Losses specified in such Officer's Certificate, to the extent available (and, to the extent funds are not available, the Stockholders, subject to Section 9.2(b), shall be liable for the Losses directly to the Indemnified Parties).

-43-

(d) <u>Resolution by the Parties</u>. The Stockholder Agent and Buyer shall, for a period of not less than 30 days, attempt in good faith to resolve any claim for indemnification to which an Objection Notice is made. If the parties are able to resolve any such claim for indemnification, they shall prepare and sign a memorandum setting forth such agreement (a "**Resolution Notice**") and deliver the same to the Escrow Agent. Escrow Agent shall be entitled to rely on the Resolution Notice, and, promptly after receipt of the Resolution Notice, shall deliver to Buyer funds held in the Escrow Fund in accordance with the terms of the Resolution Notice.

(e) <u>Arbitration</u>. If Buyer and the Stockholders are unable to resolve a claim for indemnification to which an Objection Notice has been made before the expiration of the period set forth in <u>Section 9.3(d)</u>, after delivery (as such period may be extended by mutual agreement between the parties), the Stockholder Agent or Buyer may demand arbitration of the matter unless the amount of the Loss is at issue in pending litigation with a third party, in which event arbitration shall not be commenced until such amount is ascertained or both parties agree to arbitration, and in either such event the matter shall be settled by arbitration conducted by one arbitrator mutually agreeable to Buyer and the Stockholder Agent. In the event that, within 30 days after submission of any dispute to arbitration, Buyer and the Stockholder Agent cannot mutually agree on one arbitrator, then, within 15 days after the end of such 30 day period, Buyer and Stockholder Agent shall each select one arbitrator. The two arbitrators so selected shall select a third arbitrator. If Stockholder Agent does not select an arbitrator during this 15 day period, then the parties agree that the arbitration will be conducted by one arbitrator selected by Buyer. Any such arbitration shall be held in Santa Clara County, California, under the rules then in effect of the American Arbitration Association. The arbitrator(s) shall determine how all expenses relating to the arbitration shall be paid, including without limitation, the respective expenses of each party, the fees of each arbitrator and the administrative fee of the American Arbitration Association. The arbitrator or arbitrators, as the case may be, shall set a limited time period and establish procedures designed to reduce the cost and time for discovery while allowing the parties an opportunity, adequate in the sole judgment of the arbitrator or majority of the three arbitrators, as the case may be, to discover relevant information from the opposing parties about the subject matter of the dispute. The arbitrator or a majority of the three arbitrators, as the case may be, shall rule upon motions to compel or limit discovery and shall have the authority to impose sanctions, including attorneys' fees and costs, to the same extent as a competent court of law or equity, should the arbitrators or a majority of the three arbitrators, as the case may be, determine that discovery was sought without substantial justification or that discovery was refused or objected to without substantial justification. The decision of the arbitrator or a majority of the three arbitrators, as the case may be, as to the validity and amount of any claim in such Officer's Certificate shall be final, binding, and conclusive upon the parties to this Agreement. Such decision shall be written and shall be supported by written findings of fact and conclusions that shall set forth the award, judgment, decree or order awarded by the arbitrator(s). Within 30 days of a decision of the arbitrator(s) requiring payment by one party to another, such party shall make the payment to such other party. Judgment upon any award rendered by the arbitrator(s) may be entered in any court in Santa Clara County, California having jurisdiction or the Northern District of California.

CONFIDENTIAL                    Oracle America v. Google, 3:10-cv-03561-WHA     GOOGLE-00303971

Trial Exhibit 1004, Page 50 of 82