# Exhibit 14

**Noser Engineering AG ("Noser") Professional Services Agreement**

## 1.   DEFINITIONS.

**1.1** "Google Material" means the computer system(s), software, the target platform, the Specifications as listed in the SOW, third party product(s), databases and data, documentation, proprietary or Confidential Information of Google, interfaces or other code owned or developed by Google, which Google provides to Noser for use in the performance of the Project.

**1.2** " Material" means any Google Software(s) and related documentation, specifications, any additions or alterations thereto, any proprietary or Confidential Information of  or its licensors, any and all interfaces or other software code, deliverables, specifications, documentation, and other materials, together with all Ideas, concepts, know-how, techniques, inventions, Modifications, discoveries or improvements, which are owned, created or developed by Google, or Noser for Google in furtherance of this Agreement, either prior to, in the course of, or after Noser's performance of the Project services.

**1.3** "Project" means the Google Material and Deliverables, which are provided by either party as specified in the Statement of Work.

**1.4** "Deliverables" means all works of authorship, whether in hard copy or electronic form, including but not limited to programs, program listings, programming tools, designs, analyses, reports, manuals, supporting materials, test results, recommendations and drawings to be provided by Noser to Google pursuant to the terms of this Agreement and any SOW (defined below) issued hereunder. In all events, the Deliverables will be developed based on Google Material.

**1.5** "Documentation" means, but is not limited to, any and all data other than Deliverables, whether in hard copy or electronic form, including reports, designs, analyses, computer programs, user manuals and other supporting material, summaries, literature, test results, recommendations or drawings generated by or its subcontractor(s) in the course of providing Services under this Agreement and any SOW hereunder, including all work-papers and other materials generated in the course of performance of Services and preparation of Deliverables.

**1.6** "Statement of Work" ("SOW") means the document(s) agreed upon by Noser and Google which defines the Google Material and Project services to be performed under this Agreement, and the Deliverables, to be provided, all listed in the SOW and thereafter attached in the form of an attachment(s) to this agreement.

**1.7** "Methodology" means's Noser's proprietary methodologies for delivery of consulting services to Google during the course of the Project.

**1.8** "Modification" means any alteration or addition made to Google Material by Noser which is developed from Google's proprietary information, know-how and expertise, whether to correct errors, provide temporary patches, improve performance, add a function or feature, maintain operating system and data base system compatibility, or otherwise.

## 2.   SERVICES

**2.1** Noser will provide to Google the Project services and Material under this Agreement, as set forth in the Statement of Work or "Project" (which can be used interchangeably). Additional or subsequent services may be provided hereunder by execution of a new sequentially-numbered Statement of Work as an attachment.

**2.2** Acceptance Procedure.  Upon completion of any work or Deliverable requiring Acceptance, Noser shall promptly provide a complete copy thereof to Google.   At Google's request, Noser will demonstrate to Google the functionality of the work completed or Deliverable and shall provide Google with assistance in any additional review and testing of such Deliverable in accordance with any applicable acceptance criteria and test suites and shall be established and agreed by the parties in the Statement of Work. Upon accepting any work or Deliverable submitted by Noser, Google shall provide to Noser a written acceptance of such work or Deliverable.  If Google, in its reasonable discretion, determines that any submitted Deliverable does not meet the acceptance criteria mutually agreed upon by the parties in the SOW Google shall have the time frames established in the SOW after Noser's submission of the work or Deliverable ("Acceptance Period") to give written notice thereof to Noser specifying the deficiencies in detail.  Noser shall submit a revised piece of work or Deliverable to Google within the agreed timeframe for revisions after receiving such notice from Google.  After completing any such cure, Noser shall resubmit the Deliverable for review and testing as set forth above. This resubmission and retesting procedure will be repeated until Google accepts the applicable work or Deliverables or terminates this Agreement, in Google's sole, but reasonable discretion.

**2.3** Warranty. For a period of eighteen (18) months after acceptance Noser warrants that the Deliverables will perform the functions, and comply

Confidential Rev 03/07                                      1



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392198

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# TRIAL EXHIBIT 2765

CASE NO. 10-03561 WHA
DATE ENTERED _____
BY _____
DEPUTY CLERK

in all material respects with the specifications in the SOW when operated on the appropriate hardware/operating system environment.

2.4 Personnel. Noser reserves the right to (a) determine the assignment of personnel performing hereunder, or (b) replace or reassign such personnel. No person performing services on behalf of Noser hereunder shall be restricted or prevented from performing services for others that are similar to the services provided under this Agreement.

2.5 If services will be performed on Google's premises, Noser's personnel will conform to Google's reasonable work hours, holiday schedules and security procedures.

2.6 If dissatisfied with the performance of Noser personnel, Google may request the removal of such personnel from the Google site. If Noser agrees there is reasonable cause for such removal, shall replace such person with a substitute person possessing reasonably equivalent skill or experience.

## 3. CLIENT'S RESPONSIBILITIES.

3.1 Google shall coordinate and manage its employees, contractors or agents to ensure no delays are caused thereby in the performance of the Project. Google shall be responsible for, and Noser may rely upon, the accuracy, timeliness and completeness of all data, reports and other information supplied by Google.

3.2 Google will make available to Noser its personnel who will work with and will perform those activities described as the responsibility of the Google in the Statement of Work.

3.3 Google will provide such office space, furnishings and telephone service at Google's facilities as necessary for Noser to provide the Project Services.    will have access to such space as needed, but will comply with the reasonable, generally applicable safety and access practices of the Google with respect to the Google's offices. Google shall inform Noser of Google's normal security and safety procedures and practices. Google will provide the Google Material specified in the Statement of Work, if any other services, facilities, accommodations or assistance reasonably requested by Noser. The Google represents and warrants to Noser that, to the best of Google's knowledge, all facilities provided by the Google hereunder comply with and will be maintained in compliance with all applicable laws.

3.4 Google will provide licenses to any software or technology necessary for the performance of the Project.

3.5 Failure by Google to comply with these requirements listed in this Section 3 or others in the sections below may result in delay of delivery, or change in the cost of the Deliverables or change in the cost of the Deliverables as determined by Noser and agreed by Google.

## 4. TERMS OF PAYMENT / FEES.

Google shall pay Four Million Dollars ($4,000,000) on the schedule set forth in the SOW. Such payments are subject to the delivery and acceptability requirements set forth in this Agreement and SOW.

4.1 Noser will issue invoices for Services as defined in the Agreement and SOW due and payable within thirty (30) days of the date of invoice. Failure to make agreed payments shall give Noser to suspend work, or terminate the SOW if overdue payments are not made after 30 days written notice to Google.

4.2 Google will also be billed for Noser 's actual costs relating to travel and living expenses incurred during performance of the Project.   Travel and living expenses include, but are not limited to airfare, mileage, parking, tolls, lodging, auto rental and reasonable meals.

4.3 Taxes. Service Fees are net of, and Google shall pay, all sales, use, transfer, value-added tax or other taxes, whether federal, state, provincial, local, or otherwise which are levied or imposed upon the services performed, except those based solely on the net income of . If Google is required to withhold taxes, imposts, customs, levies or other similar payments ("Tax"), Google shall (i) gross-up the total payment for the Project to provide the same amount after such Tax as it would have received without the imposition of such Tax, and (ii) maintain complete records of all amounts withheld and paid along with receipts received from government authorities and shall promptly furnish such materials to.

## 5. OWNERSHIP.

5.1 Google owns and retains all right, title and interest to and in the Google Material. Google hereby grants to a non-exclusive, nontransferable license to use the Google Material only as necessary to perform the Project Services in accordance with the Statement of Work In addition, upon payment of all fees due Noser hereunder, Google shall have the sole and exclusive ownership of the work completed under the SOW and this Agreement. Noser agrees that any Deliverables shall, upon payment therefore, be works made for hire to the extent permitted by applicable law, and that Google shall retain all copyright, patent, trade secret,

Confidential Rev 03/07                    2

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392199

**Trial Exhibit 2765 Page 2 of 32**

trademark and any other intellectual property rights ("**Intellectual Property Rights**") in the Deliverables. In the event that any of the Deliverables do not qualify as works made for hire, Noser hereby assigns to Google at no additional consideration all right, title and interest and all Intellectual Property Rights in such Deliverables and all extensions and renewals thereof. Noser agrees to execute a written assignment of such rights in the Deliverables to Google and any other documents or instruments useful or necessary for Google to establish, preserve, perfect or enforce its Intellectual Property Rights in the Deliverables if so requested by Google. In the event Noser fails to execute and deliver such documents and instruments promptly upon Google's request and reasonable payment for its services, Google is hereby authorized and appointed attorney-in-fact of and for Noser to make, execute and deliver any and all such documents and instruments, it being understood that such power is coupled with an interest. Noser hereby agrees not to assert at any time, and otherwise waives, any "moral rights" that Noser may have in the Deliverables, and Noser hereby assigns to Google all moral rights therein.

## 6.   CONFIDENTIALITY.

6.1 It is expected that the parties may disclose to each other certain information which may be considered confidential and trade secret information ("Confidential Information"). Confidential Information shall include: (a) the Source Materials and the Open Handset Distribution (until publicly released); (b) Confidential Information disclosed by either party in writing that is marked as confidential at the time of disclosure; or (c) Confidential Information disclosed by either party in any other manner and is identified as confidential at the time of disclosure and is also summarized and designated as confidential in a written memorandum delivered to the receiving party within thirty (30) days of the disclosure.

6.2 Confidential Information shall not include information which: (a) is or becomes public knowledge through no fault of the recipient; (b) was in the receiving party's possession before receipt from the party providing such Confidential Information; (c) is rightfully received by the receiving party from a third party without any duty of confidentiality; (d) is disclosed to a third party by the party providing the Confidential Information without a duty of confidentiality on the third party; (e) is independently developed by the other party without use of any Confidential Information disclosed hereunder; (f) is disclosed under operation of law; or (g) is disclosed with the prior written approval of the party providing such Confidential Information.

6.3 Except as otherwise specified herein, the disclosing party shall retain all Intellectual Property Rights in any Confidential Information disclosed to the other party. The parties agree, both during the term of this Agreement and for a period of five (5) years after termination or expiration of this Agreement to hold each other's Confidential Information in confidence and to protect the disclosed Confidential Information by using the same degree of care to prevent the unauthorized use, dissemination or publication of the Confidential Information as they use to protect their own confidential information of a like nature. The parties agree not to make each other's Confidential Information available in any form to any third party except as otherwise required to exercise the licenses granted in this Agreement or to use each other's Confidential Information for any purpose other than the implementation of this Agreement. Each party agrees to restrict disclosure of the Confidential Information to those of its employees who have a "need to know" and to take all reasonable steps to ensure that Confidential Information is not disclosed or distributed by its employees in violation of the provisions of this Agreement.

6.4 In addition, notwithstanding the above, each party may use the residuals from the other party's Confidential Information. The term "residuals" as used in this paragraph shall mean the Confidential Information in nontangible form (i.e., not in written or other documentary form, including tape or disk) which may be retained by those employees of Noser or Google who have had access to the other's Confidential Information including ideas, concepts, know-how, or techniques contained therein. Neither party shall have any obligation to limit or restrict the assignment of such employees or to pay royalties for any work resulting from the use of residuals.

6.5 Each party acknowledges that the other party is in the software development business. Except as specifically set forth in this Agreement, nothing in this Agreement shall be construed to preclude either party from developing, using, marketing, licensing, and/or selling any independently developed software which has the same or similar functionality as Noser Technology or the Google Products, or any other products, so long as such activities do not infringe the Intellectual Property Rights of the other party. Additionally, nothing in this Agreement shall be construed to limit Google's right to obtain services or software programs from other sources, to prohibit either party from acquiring and marketing competitive materials, to restrict Google from making, having made, using, marketing, leasing, licensing, selling or otherwise disposing of any products or services whatsoever,


HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392200

**Trial Exhibit 2765 Page 3 of 32**

nor to limit Google's right to deal with any other vendors, suppliers, contractors or customers.

## 7. CHANGE ORDERS.

Any modification to the scope of the SOW requested by either party including but not limited to requirements that are likely to increase the number of hours to be provided by or likely to increase 's expenses shall be processed as follows: The party submitting the change order will provide its request in writing to the other party, which will evaluate each request and submit an appropriate written response within three (3) business days following receipt of the request whether they agree to implement the changes at the cost stated in the change order request. An approved change order request will be formalized in an Amended Schedule A signed by both parties.

## 8. DELAY EVENTS.

Google's failure to perform any of its responsibilities hereunder, including prompt review of Deliverables to determine if they are acceptable under a Project, which results in a delay of the performance of the Project or in any additional costs ("Delay Event"), shall give rise to one or more of the following remedies which may exercise, in whole or in part: (i) Suspend work under the Project without liability or penalty; (ii) Submit a change order for any additional cost or delay; (iii) Charge Google for reasonable re-deployment fees and costs incurred by    including, without limitation, mobilization, demobilization, restart, retraining and transportation costs; [Acceptable to leave (iii) in provided we can agree on hourly rates by job level and specify in this Exhibit] (iv) Postpone milestone or delivery dates as necessary for Google to cure or remove the Delay Event; or (v) Provide notice of termination of the Agreement pursuant to Section 9.4 below. Failure by Google to comply with these requirements listed in this Section 2 or others in the sections below may result in delay of delivery, or change in the cost of the Deliverables as determined by Noser and agreed by Google

## 9. TERM AND TERMINATION.

9.1    This Agreement shall commence on the Effective Date and shall continue in effect until completion of all Projects, unless earlier terminated as set forth in this Agreement. The minimum Term shall be for one (1) year.

9.2    Google or Noser may terminate this Agreement if the other party breaches its obligations under this Agreement, provided that the breaching party is given thirty (30) days written notice prior to the proposed termination, during which the breaching party fails to either correct the breach to the reasonable satisfaction of the other or, if the

default cannot reasonably be cured within 30 days, commence remedial steps to cure the default.

9.3    Either party may terminate this Agreement at any time upon thirty (30) days prior written notice due to: (a) termination or cessation of the business of the other party; (b) filing of a voluntary or involuntary bankruptcy, receivership, or similar proceeding with respect to the other party; (c) the other party becomes insolvent or makes an assignment for the benefit of its creditors, or (d) merger, purchase, transfer, or other acquisition of substantially all of Google's assets or a controlling interest of Google's outstanding stock entitled to vote.

9.4    Noser may terminate this Agreement immediately should Google's fail to pay undisputed invoice amounts after 30 days written notice of such overdue amounts.

9.5    Google may terminate this Agreement for any or no reason upon forty-five (45) days' notice to Noser, however termination shall not relieve Google of its obligation to pay any amounts due Noser under this Agreement, and the SOW.

9.6    Except in the event of breach by Noser, in the event of termination by either party for any reason, Google shall pay for milestones as set forth in the Statement of Work that have been accepted as of the effective date of such termination.

9.7    Noser may, after thirty (30) days' written notice to Google, suspend the Project under this Agreement without liability, until all past due amounts have been paid in full.

9.8    In the event of termination or expiration of this Agreement, in whole or in part, any sublicense granted by Google or its sublicensees prior to such expiration or termination under the terms of this Agreement shall survive and continue. Without limiting the generality of the foregoing, (i) Google may continue to exercise the rights and licenses granted hereunder for a period of up to eighteen (18) months after termination or expiration; and (ii) Google may continue to exercise the rights and licenses granted hereunder as necessary to provide maintenance and technical support for sublicensees.

## 10. GENERAL INDEMNIFICATION.

10.1    Noser shall indemnify and hold Google, its employees, agents, and contractors harmless from and against any and all losses, expenses and claims (including those of third parties) for death, personal injury, or property damage caused by the negligence or willful misconduct of arising out of the performance of the Project.

## 11. INFRINGEMENT INDEMNIFICATION

Confidential Rev 03/07        4

Noser shall, at Noser's expense, indemnify, defend and hold Google and its directors, officers, employees, agents, Distributors and Sublicensees harmless from and against any and all liabilities, losses, damages, costs and expenses (including reasonable attorneys fees) incurred by Google in connection with any claim that the Deliverables implemented by Noser infringe an Intellectual Property Right of any third party, provided that: (a) Google promptly notifies Noser in writing of the claim; and (b) at Noser's request, Google provides Noser with all reasonable assistance, information and authority to perform the foregoing. The parties agree that this right of indemnity shall not apply to any Google Material or Google supplied code, or open source code which is specified by Google in the SOW or which is contained in any work product or Deliverables.

Noser will not enter into a settlement agreement without Google's written consent, which consent will not be unreasonably withheld.

Noser shall have no liability for any claim of infringement to the extent such infringement is caused by modifications made by Google to the work or Deliverables and the unmodified Deliverables do not infringe the third party's Intellectual Property Rights.

In the event the Deliverables are held or are believed by Noser to infringe the Intellectual Property Rights of a third party, Noser shall have the option, at its expense to: (a) modify the Deliverables to be non-infringing while retaining full functionality and equivalent performance; or (b) obtain for Google, at no additional cost to Google, a license to continue using the Deliverables.

Failure to comply with the obligations described in this Section 11 shall constitute a material breach of this Agreement.
.

## 12. LIMITATION/REMEDIES.

12.1    Noser's sole liability under Section 2 shall be to re-perform any service which fails to conform to the specified standard in the SOW. Google must submit any warranty claim hereunder to Noser within 90 days from the date of completion of the Project giving rise to the claim. EXCEPT AS EXPRESSLY SET FORTH HEREIN, MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, WITH REGARD TO THE PROJECT OR THE PROJECT MATERIAL, INCLUDING OF ANY KIND OR NATURE, INCLUDING WITHOUT LIMITATION IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

12.2    EXCEPT FOR LIABILITY UNDER SECTION 11 ABOVE OR BREACH OF SECTION 6 (CONFIDENTIALITY): (i) NEITHER PARTY SHALL

Confidential Rev 03/07          5

HAVE ANY LIABILITY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO RELIANCE, COVER, OR LOSS OF ANTICIPATED PROFITS, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; AND (ii) NEITHER PARTY'S LIABILITY FOR DAMAGES RELATING IN ANY WAY TO THIS AGREEMENT OR THE CONDUCT OF THE PARTIES IN FURTHERANCE HEREOF UNDER ANY LEGAL THEORY, WHETHER CONTRACT, TORT, PRODUCT LIABILITY, BREACH OF IMPLIED DUTY, OR OTHERWISE SHALL EXCEED THE AMOUNTS PAID BY GOOGLE TO NOSER UNDER THIS AGREEMENT.

## 13. GENERAL PROVISIONS

13.1    Independent Contractor. Both parties certify that is an independent contractor in relation to Google, and shall not be considered an agent or servant of Google. It is agreed that shall have the right to control the details of its Project. Google and agree that in no respect shall any employee of be an employee of Google.

13.3    Entire Agreement. This Agreement is the exclusive statement of the terms and conditions between the parties with respect to the matters set forth herein, and supersedes all prior agreements, negotiations, representations, tender documents, and proposals, written and oral. Variance from, or additions to, the terms and conditions of this Agreement in any purchase order or other written notification from Google shall be of no effect.

13.4    Amendment; Waiver. All modifications to this Agreement must be in writing and signed by both parties. Failure or delay of either party to exercise any right or remedy hereunder shall not constitute a waiver of rights or remedies under this Agreement.

13.5    Severability. If any provision of this Agreement is held unenforceable or inoperative by any court of competent jurisdiction, either in whole or in part, the remaining provisions shall be given full force and effect to the extent not inconsistent with the original terms of this Agreement.

13.6    Governing Law. This Agreement, and all matters arising out of or relating to this Agreement, shall be governed by the laws of the State of California and shall be deemed to be executed in Mountain View, California. Any legal action or proceeding relating to this Agreement shall be instituted in a state or federal court in Santa Clara County, California. Google and Noser agree to submit to the jurisdiction of, and agree that venue is proper in, these courts in any such legal action or proceeding.

13.7   Dispute Resolution. The Parties will attempt to settle any claim or controversy relating to this Agreement through negotiation in good faith and a spirit of mutual cooperation.

13.8   Assignment. Except for an assignment by Google or Noser to any parent corporation, affiliate, Subsidiary or successor in interest to Google or Noser, neither party may assign any rights, duties, obligations or privileges under this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld. A change in control or ownership shall be deemed to be an assignment under this Section.

13.9   Notices. Notices and communications required by this Agreement shall be in writing and may be delivered in person, by courier, transmitted by facsimile, or mailed prepaid first class, return receipt required, to the respective parties at the address listed herein or other address most recently designated in writing. Notices directed to shall be sent "Attention: Legal Department".

13.10  Export Assurance. The parties agree to comply fully with all laws and regulations to assure that the Deliverables or any direct product thereof, is not exported, directly or indirectly, in violation of law. Upon Google's request, Noser shall advise Google of all relevant export classifications of the Deliverables and shall promptly advise Google of any changes with respect to such classification.

13.11  Force Majeure. Neither party shall be liable to the other for failure or delay in the performance of a required obligation if such failure or delay is caused by riot, fire, flood, explosion, earthquake or other natural disaster, government regulation, or other similar cause beyond such party's control, provided that such party gives prompt written notice of such condition and resumes its performance as soon as possible, and provided further that the other party may terminate this Agreement if such condition continues for a period of one hundred eighty (180) days.

13.12  Publicity. Except as set forth herein, neither party shall disclose to any third party any details of this Agreement, or even the fact of its existence, without the specific prior written approval of the other party, which approval shall not be unreasonably withheld, or as required by law in order to enforce its rights under this Agreement. Nothing in this Agreement confers upon Noser any right to use Google's trademarks, trade names or service marks in connection with any product, service, promotion or publication

13.13  Sections 5, 6, 9.5, 12, 13.1 and 13.6 shall survive the expiration or termination of this Agreement.

Signed on behalf of Google Inc.:

Name: _ALAN EUSTACE – Sr. VP-ENG_
Date: _4/19/07_

Signed on behalf of Noser Engineering AG:

Name: _Gerhard Hol_
Date: _5/07/07_



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY      Oracle America v. Google, 3:10-cv-03561-WHA      GOOGLE-00392203

Trial Exhibit 2765 Page 6 of 32



# Statement Of Work

| | |
|---|---|
| Customer | Google Inc.<br>Mr. Andy Rubin<br>1600 Amphitheatre<br>Mountain View |
| Author | Ernest Durelle and Daniel Diez, Noser Engineering AG |
| Document Number | 07019-ANG-001D-001F |
| Date | March 28, 2007 |
| Release Date | March 28, 2007 |
| Target Audience | Mr. Andy Rubin, Google Inc. |



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392204



The SOW has been approved by the following authorized representatives:

| Noser Engineering AG (Noser) | Google Inc. (Google) |
|---|---|
| 19 April 2007, Winterthur, Switzerland | 19 April 2007, Mountain View, CA |
| Print or Type Name<br><br>Gerhard Moll | Print or Type Name<br><br>ALAN EUSTACE |
| Title<br><br>CEO | Title Sr. VP-ENGINEERING |
| Signature | Signature |

This SOW represents Confidential Information according to the Agreement to which this SOW is attached between Google and Noser, and may only be used in accordance with said Agreement. Should the parties fail to execute said Agreement, then the information contained in this SOW and all software, hardware or documentation delivered to Google thereunder shall be covered by the terms of the Nondisclosure Agreement signed by the parties on 03/28/07

Headquarters:

Noser Engineering AG
Talackerstrasse 99
8404 Winterthur
Switzerland



© Noser Engineering AG          March 28, 2007 / Noser-Google SOW 4-19-07 (final)          Page 2 of 9

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392205



**Change Control Record**

| Version | Date | Changes | Changer |
|---|---|---|---|
| Initial Document | March 28, 2007 | | |



© Noser Engineering AG        March 28, 2007 / Noser-Google SOW 4-19-07 (final)        Page 3 of 9

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY        Oracle America v. Google, 3:10-cv-03561-WHA        GOOGLE-00392206

Trial Exhibit 2765 Page 9 of 32



## Introduction

This SOW:

- Describes the responsibilities of Noser and the Project Services to be provided by Noser to Licensee pursuant to the Agreement to which this SOW is attached, and will be made a part thereof, executed between the parties, and for payment made by Google in exchange for such Project Services.

- Describes the responsibilities of Google.

- Details the related schedule.

- Does not include any additional features not contained in this SOW or its references, in particular upgrades to later versions of the Software or of the Target Platform.

## Description of Project Services

### Prerequisites

Google will deliver:

- Current existing and stable codebase, including associated documentation.
- Device hardware and software.
- Configurations (rule-set for PMD and configuration file for FindBugs)
- Detailed minimum list of packages, classes, and libraries, which will be defined in terms of GNU Classpath project, Apache Harmony, and other existing open source libraries. This is the specification.
- The application: javac (one or more versions for testing purposes)

### Coding Guidelines

- Java code will be written to the standard Java coding conventions, with the explicit requirement that no hard tabs appear in the source code.
- C code will be written using effectively the same conventions (4 spaces per indentation level, open braces on the same line as their associated statement prefix, no space between a function name and an open parenthesis, etc.).
- Java code will use the Java language as compiled by javac using the JDK 1.5 release, with the exceptions that runtime annotations may not be used and finally blocks must be limited in size to five lines of code.
- Every file will have a header comment summarizing its content. (In the case of a Java class, this will be the javadoc class comment.) Every class, field, method, global variable and function will have a comment in standard javadoc/doxygen form describing its purpose.
- Methods and functions will include a @param tag describing each parameter, a @return tag describing any non-void return value, and an @exception tag for each exception that can be expected to be thrown.
- All names (of classes, fields, methods, functions, etc.) will be written in English (American-style spelling and grammar), as will all comments and documentation.



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392207



**Importation and Reuse of Existing Code**

At Noser's discretion, Noser may choose to use any or all of the following strategies to arrive at a working, complete, and compliant source base:

- Reuse and improve the code delivered by Google upon the inception of the project.
- Import and improve code from the Apache Harmony project (<http://harmony.apache.org/>) or from Bouncy Castle (<http://www.bouncycastle.org/>).
- Import and improve code from any other open source project, with prior approval from Google. Noser will use sources as stated above or any other as they become available.
- Write new code.

**Testing / Acceptance Criteria**

- The coding guidelines and code importation guidelines (above) will have been followed in code written by Noser.

- The combination of the Google VM with the delivered class libraries will be able to run the following applications without error:
    - o   javac as delivered by Google
    - o   headless eclipse

- To measure and compare efficiency, the following model is proposed:

    1. Pure Java Code (functionality that will only exist in the J2SE libraries) — The class libraries — minus classes that interact tightly with the VM — must be ported to another VM with mature class libraries and be demonstrated to run with effectively identical or superior efficiency compared to that other VM's original class libraries.

    2. Wrapped Functionality (functionality that will be available from both Google-specific libraries and the J2SE libraries, e.g. AWT) – Efficiency will be demonstrated by a test application that will run against Google APIs (non-J2SE) and against the J2SE class libraries on the same device with no noticeable degradation in performance.

    3. VM-specific Functionality (functionality that exists in the Google VM and will be invoked from the J2SE libraries) – This scenario entails testing the efficiency of Google's VM code through direct calls from the J2SE libraries. These tests are not relevant for the efficiency of the J2SE libraries.

    Each class will fall under one of these models [subject to agreement by Google and Noser]

    Additionally Noser will use a benchmark suite to continually test each version of the J2SE libraries. Benchmark details will be developed and agreed to by Noser and Google.

- Every class to be delivered (that directly implements part of the specification) must have one or more associated JUnit (<http://www.junit.org/>) test classes in a form compatible with JUnit 3.8.1. The test class(es) for a given specified class must include at least one nontrivial test method for each public or protected method or constructor of that class, and each such test method must pass when run on the target device.



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392208



- All Java code must pass the FindBugs (<http://findbugs.sourceforge.net/>) and PMD (<http://pmd.sourceforge.net/>) tools with no warnings, or, if there are warnings, each one will be explicitly justified in writing (subject to Google acceptance), in an appropriately named text file at the top of the source code directory hierarchy.

  Java code accepted from an open source project (e.g. Harmony) that already presents warnings, would be an acceptable justification.

## Package / Library List

### Java Library

The following packages are defined as part of the Java library specification. Google is interested in compatibility with J2SE 1.5 (as released under the GNU Public License) . Google will deliver, as explained above, a "detailed minimum list of classes and methods to be implemented." All effort will be made to use pre-existing system functionality..

The libraries will support the available implementations for the codecs and other basic libraries:

java.lang

java.lang.ref

java.lang.reflect

java.io

java.math

java.net

java.text

java.nio.*

java.util.logging

java.util.prefs

java.util.regex

java.util

java.util.jar

java.util.zip

java.awt.image.renderabl



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392209

Trial Exhibit 2765 Page 12 of 32



java.awt.* in support of image rendering (not UI)

java.awt.image

javax.imageio.*

java.security

java.security.acl

java.security.cert

java.security.interfaces

java.security.spec

javax.net

javax.sound.*

javax.xml

javax.transaction.*

javax.crypto

javax.crypto.interfaces

javax.crypto.spec

javax.net.ssl

javax.security.cert

java.sql

javax.sql

**Http Client Library**

**Introduction**

Java implementation of the Http client library for the Android platform. This library should implement this basic mechanism: A client making a request will implement the EventHandler interface in a class, and instantiate a Request object, giving it details retrieved from a URI object (scheme, hostname, port, path, and so on). Request and EventHandler are two primary classes/interfaces of Android Browser's low-level HTTP interface.

- The Java implementation could use either a single thread non-blocking I/O, or could use blocking I/O plus a thread pool.



© Noser Engineering AG                March 28, 2007 / Noser-Google SOW 4-19-07 (final)            Page 7 of 9

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY            Oracle America v. Google, 3:10-cv-03561-WHA            GOOGLE-00392210

Trial Exhibit 2765 Page 13 of 32



- The APIs should implement an interface capable of connection reuse and connection pipelining.

- API changes should be avoided if possible.

**Miscellaneous Requirements**
1. Proxy support: The library must support making requests through proxy servers.

2. SSL: The library must support connections to SSL servers, and report errors via codes defined in EventHandler.java

3. Multiple connections: The client must be able to make requests to multiple servers simultaneously (by instantiating multiple Request objects).

4. Error recovery: The library must implement and generate the necessary Exceptions to properly handle inadvertent and intentional server and transport errors

**Acceptance**
The Java HTTP library should be tested with the current Android Browser and have APIs as specified above along with comparable performance to the current HTTP library.

**Services and Payment Schedule**

Prioritization of deliverables will be set upon agreement between Google and Noser (and are reflected below*).

These are the working blocks. Payments for the Project Services will be as set forth below, subject to Google's acceptance under requirements set forth in the Agreement and this SOW:

> **Category 1 Libraries:**
> lang
> io, nio, and net
> HTTP-client
> text util, math, and regex
>
> **Category 1 Schedule:**
> Mid June 2007 – Alpha Release: $250,000
> End of July 2007 – Beta Release: $500,000
> End of August – Final Release: $1,250,000
>
> **Category 2 Libraries:**
> awt and image
> security crypto and permission
> logging, sound, xml, sql, prefs, and transaction
>
> **Category 2 Schedule:**
> End of June – Alpha Release: $250,000
> End of August 2007 – Beta Release: $500,000
> End of September – Final Release: $1,250,000



© Noser Engineering AG                March 28, 2007 / Noser-Google SOW 4-19-07 (final)        Page 8 of 9

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA        GOOGLE-00392211



*Dates above assume execution of SOW agreement on 4/13. A day for day slip will apply for every day after 4/13 that the SOW is not signed.

A detailed planning of deliverables will be made available after the SOW is accepted and the contract is sign.



© Noser Engineering AG                March 28, 2007 / Noser-Google SOW 4-19-07 (final)                Page 9 of 9

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392212

**Trial Exhibit 2765 Page 15 of 32**



# Statement Of Work

| | |
|---|---|
| Customer | Google Inc.<br>Mr. Andy Rubin<br>1600 Amphitheatre<br>Mountain View |
| Author | Ernest Durelle and Daniel Diez, Noser Engineering AG |
| Document Number | 07019-ANG-001D-001F |
| Date | March 28, 2007 |
| Release Date | March 28, 2007 |
| Target Audience | Mr. Andy Rubin, Google Inc. |



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY        Oracle America v. Google, 3:10-cv-03561-WHA        GOOGLE-00392204



The SOW has been approved by the following authorized representatives:

| Noser Engineering AG (Noser) | Google Inc. (Google) |
|---|---|
| 19 April 2007, Winterthur, Switzerland | 19 April 2007, Mountain View, CA |
| Print or Type Name<br><br>Gerhard Moll<br><br>Title<br><br>CEO<br><br>Signature | Print or Type Name<br><br>ALAN EUSTACE<br><br>Title   Sr. VP-ENGINEERING<br><br>Signature |

This SOW represents Confidential Information according to the Agreement to which this SOW is attached between Google and Noser, and may only be used in accordance with said Agreement. Should the parties fail to execute said Agreement, then the information contained in this SOW and all software, hardware or documentation delivered to Google thereunder shall be covered by the terms of the Nondisclosure Agreement signed by the parties on 03/28/07

Headquarters:

Noser Engineering AG
Talackerstrasse 99
8404 Winterthur
Switzerland



© Noser Engineering AG                March 28, 2007 / Noser-Google SOW 4-19-07 (final)                Page 2 of 9

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392205

Trial Exhibit 2765 Page 17 of 32



**Change Control Record**

| Version | Date | Changes | Changer |
|---|---|---|---|
| Initial Document | March 28, 2007 | | |



© Noser Engineering AG        March 28, 2007 / Noser-Google SOW 4-19-07 (final)        Page 3 of 9

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY        Oracle America v. Google, 3:10-cv-03561-WHA        GOOGLE-00392206



## Introduction

This SOW:

- Describes the responsibilities of Noser and the Project Services to be provided by Noser to Licensee pursuant to the Agreement to which this SOW is attached, and will be made a part thereof, executed between the parties, and for payment made by Google in exchange for such Project Services.

- Describes the responsibilities of Google.

- Details the related schedule.

- Does not include any additional features not contained in this SOW or its references, in particular upgrades to later versions of the Software or of the Target Platform.

## Description of Project Services

### Prerequisites

Google will deliver:

- Current existing and stable codebase, including associated documentation.
- Device hardware and software.
- Configurations (rule-set for PMD and configuration file for FindBugs)
- Detailed minimum list of packages, classes, and libraries, which will be defined in terms of GNU Classpath project, Apache Harmony, and other existing open source libraries. This is the specification.
- The application: javac (one or more versions for testing purposes)

### Coding Guidelines

- Java code will be written to the standard Java coding conventions, with the explicit requirement that no hard tabs appear in the source code.
- C code will be written using effectively the same conventions (4 spaces per indentation level, open braces on the same line as their associated statement prefix, no space between a function name and an open parenthesis, etc.).
- Java code will use the Java language as compiled by javac using the JDK 1.5 release, with the exceptions that runtime annotations may not be used and finally blocks must be limited in size to five lines of code.
- Every file will have a header comment summarizing its content. (In the case of a Java class, this will be the javadoc class comment.) Every class, field, method, global variable and function will have a comment in standard javadoc/doxygen form describing its purpose.
- Methods and functions will include a @param tag describing each parameter, a @return tag describing any non-void return value, and an @exception tag for each exception that can be expected to be thrown.
- All names (of classes, fields, methods, functions, etc.) will be written in English (American-style spelling and grammar), as will all comments and documentation.



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392207

**Trial Exhibit 2765 Page 19 of 32**



**Importation and Reuse of Existing Code**

At Noser's discretion, Noser may choose to use any or all of the following strategies to arrive at a working, complete, and compliant source base:

- Reuse and improve the code delivered by Google upon the inception of the project.
- Import and improve code from the Apache Harmony project (<http://harmony.apache.org/>) or from Bouncy Castle (<http://www.bouncycastle.org/>).
- Import and improve code from any other open source project, with prior approval from Google. Noser will use sources as stated above or any other as they become available.
- Write new code.


**Testing / Acceptance Criteria**

- The coding guidelines and code importation guidelines (above) will have been followed in code written by Noser.
- The combination of the Google VM with the delivered class libraries will be able to run the following applications without error:
    - javac as delivered by Google
    - headless eclipse
- To measure and compare efficiency, the following model is proposed:

    1. Pure Java Code (functionality that will only exist in the J2SE libraries) — The class libraries — minus classes that interact tightly with the VM — must be ported to another VM with mature class libraries and be demonstrated to run with effectively identical or superior efficiency compared to that other VM's original class libraries.

    2. Wrapped Functionality (functionality that will be available from both Google-specific libraries and the J2SE libraries, e.g. AWT) – Efficiency will be demonstrated by a test application that will run against Google APIs (non-J2SE) and against the J2SE class libraries on the same device with no noticeable degradation in performance.

    3. VM-specific Functionality (functionality that exists in the Google VM and will be invoked from the J2SE libraries) – This scenario entails testing the efficiency of Google's VM code through direct calls from the J2SE libraries. These tests are not relevant for the efficiency of the J2SE libraries.

    Each class will fall under one of these models [subject to agreement by Google and Noser]

    Additionally Noser will use a benchmark suite to continually test each version of the J2SE libraries. Benchmark details will be developed and agreed to by Noser and Google.

- Every class to be delivered (that directly implements part of the specification) must have one or more associated JUnit (<http://www.junit.org/>) test classes in a form compatible with JUnit 3.8.1. The test class(es) for a given specified class must include at least one nontrivial test method for each public or protected method or constructor of that class, and each such test method must pass when run on the target device.



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392208

**Trial Exhibit 2765 Page 20 of 32**



- All Java code must pass the FindBugs (<http://findbugs.sourceforge.net/>) and PMD (<http://pmd.sourceforge.net/>) tools with no warnings, or, if there are warnings, each one will be explicitly justified in writing (subject to Google acceptance), in an appropriately named text file at the top of the source code directory hierarchy.

  Java code accepted from an open source project (e.g. Harmony) that already presents warnings, would be an acceptable justification.

## Package / Library List

### Java Library

The following packages are defined as part of the Java library specification. Google is interested in compatibility with J2SE 1.5 (as released under the GNU Public License) . Google will deliver, as explained above, a "detailed minimum list of classes and methods to be implemented." All effort will be made to use pre-existing system functionality..

The libraries will support the available implementations for the codecs and other basic libraries:

java.lang

java.lang.ref

java.lang.reflect

java.io

java.math

java.net

java.text

java.nio.*

java.util.logging

java.util.prefs

java.util.regex

java.util

java.util.jar

java.util.zip

java.awt.image.renderabl



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392209

**Trial Exhibit 2765 Page 21 of 32**



java.awt.* in support of image rendering (not UI)

java.awt.image

javax.imageio.*

java.security

java.security.acl

java.security.cert

java.security.interfaces

java.security.spec

javax.net

javax.sound.*

javax.xml

javax.transaction.*

javax.crypto

javax.crypto.interfaces

javax.crypto.spec

javax.net.ssl

javax.security.cert

java.sql

javax.sql


**Http Client Library**


**Introduction**

Java implementation of the Http client library for the Android platform. This library should implement this basic mechanism: A client making a request will implement the EventHandler interface in a class, and instantiate a Request object, giving it details retrieved from a URI object (scheme, hostname, port, path, and so on). Request and EventHandler are two primary classes/interfaces of Android Browser's low-level HTTP interface.

- The Java implementation could use either a single thread non-blocking I/O, or could use blocking I/O plus a thread pool.



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392210

Trial Exhibit 2765 Page 22 of 32



- The APIs should implement an interface capable of connection reuse and connection pipelining.

- API changes should be avoided if possible.

**Miscellaneous Requirements**
1. Proxy support: The library must support making requests through proxy servers.

2. SSL: The library must support connections to SSL servers, and report errors via codes defined in EventHandler.java

3. Multiple connections: The client must be able to make requests to multiple servers simultaneously (by instantiating multiple Request objects).

4. Error recovery: The library must implement and generate the necessary Exceptions to properly handle inadvertent and intentional server and transport errors

**Acceptance**
The Java HTTP library should be tested with the current Android Browser and have APIs as specified above along with comparable performance to the current HTTP library.

**Services and Payment Schedule**

Prioritization of deliverables will be set upon agreement between Google and Noser (and are reflected below*).

These are the working blocks. Payments for the Project Services will be as set forth below, subject to Google's acceptance under requirements set forth in the Agreement and this SOW:

    **Category 1 Libraries:**
    lang
    io, nio, and net
    HTTP-client
    text util, math, and regex

    **Category 1 Schedule:**
    Mid June 2007 – Alpha Release: $250,000
    End of July 2007 – Beta Release: $500,000
    End of August – Final Release: $1,250,000

    **Category 2 Libraries:**
    awt and image
    security crypto and permission
    logging, sound, xml, sql, prefs, and transaction

    **Category 2 Schedule:**
    End of June – Alpha Release: $250,000
    End of August 2007 – Beta Release: $500,000
    End of September – Final Release: $1,250,000



HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY    Oracle America v. Google, 3:10-cv-03561-WHA    GOOGLE-00392211

**Trial Exhibit 2765 Page 23 of 32**



*Dates above assume execution of SOW agreement on 4/13. A day for day slip will apply for every day after 4/13 that the SOW is not signed.

A detailed planning of deliverables will be made available after the SOW is accepted and the contract is sign.



© Noser Engineering AG          March 28, 2007 / Noser-Google SOW 4-19-07 (final)          Page 9 of 9

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392212

**Trial Exhibit 2765 Page 24 of 32**



# Statement Of Work

## Code Integration in February 08

| | |
|---|---|
| Customer | Google Inc.<br>Ms. Peisun Wu<br>1600 Amphitheatre<br>Mountain View |
| Author | Daniel Brüngger, Noser Engineering AG |
| Document Number | Noser-Google SOW Code Integration Feb 08 01-29-08 |
| Date | January 29, 2008 |
| Release Date | January 29, 2008 |
| Target Audience | Ms. Peisun Wu, Google Inc. |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY                    Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392213

noser

The SOW has been approved by the following authorized representatives:

| Noser Engineering AG (Noser) | Google Inc. (Google) |
|---|---|
| January 29, 2008, Winterthur, Switzerland | January 29, 2008, Mountain View, CA |
| Print or Type Name<br><br>Daniel Brüngger<br><br>Title<br><br>General Manager<br><br>Signature<br><br>D. Brüngger | Print or Type Name<br><br>Rubin<br><br>Title<br><br>DIRECTOR<br><br>Signature |



This SOW represents Confidential Information according to the Agreement to which this SOW is attached between Google and Noser, and may only be used in accordance with said Agreement. Should the parties fail to execute said Agreement, then the information contained in this SOW and all software, hardware or documentation delivered to Google thereunder shall be covered by the terms of the Nondisclosure Agreement signed by the parties on 03/28/07

Headquarters:

Noser Engineering AG
Talackerstrasse 99
8404 Winterthur
Switzerland

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392214

noser

Change Control Record

| Version | Date | Changes | Changer |
|---|---|---|---|
| Initial Document | January 29, 2008 | | Db |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392215

noser

## Introduction

This SOW:

- Describes the responsibilities of Noser and the Project Services to be provided by Noser to Licensee pursuant to the Agreement to which this SOW is attached, and will be made a part thereof, executed between the parties, and for payment made by Google in exchange for such Project Services.

- Describes the responsibilities of Google.

- Details the related schedule.

## Description of Project Services

### Prerequisites, Coding Guidelines, Testing / Acceptance Criteria

- The prerequisites, the coding guidelines and the testing / acceptance criteria as listed in the S.O.W. for the core libraries, signed April 19, 2006, apply.

### List of Tasks

- A team of two engineers will work in Mountain View to integrate the libraries into the Android code base and support the Android team.

  Jörg Pleumann
  Urs Grob

## Services and Payment Schedule

Prioritization of deliverables will be set upon agreement between Google and Noser.

Engineering Services: 170$ per hour. Estimated time for this SOW is four weeks for each Noser engineer based on a 40 hour week.

Expenses: Google will also be billed for Noser's actual costs relating to travel and living expenses. Estimated travel and living expenses for Urs and Jörg: USD$5,000 combined

Noser will issue invoices for Services on a monthly basis.

**Maximum Payment Amount.** Notwithstanding anything else in the Agreement to the contrary and unless otherwise agreed upon in writing by Google, Google's maximum liability for all Services under this SOW shall not exceed $60,000.

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY          Oracle America v. Google, 3:10-cv-03561-WHA          GOOGLE-00392216



# Statement Of Work

## Code Integration in February 08

| | |
|---|---|
| Customer | Google Inc.<br>Ms. Peisun Wu<br>1600 Amphitheatre<br>Mountain View |
| Author | Daniel Brüngger, Noser Engineering AG |
| Document Number | Noser-Google SOW Code Integration Feb 08 01-29-08 |
| Date | January 29, 2008 |
| Release Date | January 29, 2008 |
| Target Audience | Ms. Peisun Wu, Google Inc. |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY      Oracle America v. Google, 3:10-cv-03561-WHA      GOOGLE-00392213

noser

The SOW has been approved by the following authorized representatives:

| Noser Engineering AG (Noser) | Google Inc. (Google) |
|---|---|
| January 29, 2008, Winterthur, Switzerland | January 29, 2008, Mountain View, CA |
| Print or Type Name<br>Daniel Brüngger | Print or Type Name<br>RubiN |
| Title<br>General Manage | Title<br>DIRECTOR |
| Signature<br>D. Bris | Signature |



This SOW represents Confidential Information according to the Agreement to which this SOW is
attached between Google and Noser, and may only be used in accordance with said Agreement.
Should the parties fail to execute said Agreement, then the information contained in this SOW and all
software, hardware or documentation delivered to Google thereunder shall be covered by the terms of
the Nondisclosure Agreement signed by the parties on 03/28/07

Headquarters:

Noser Engineering AG
Talackerstrasse 99
8404 Winterthur
Switzerland

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES
ONLY     Oracle America v. Google, 3:10-cv-03561-WHA     GOOGLE-00392214

noser

**Change Control Record**

| Version | Date | Changes | Changer |
|---|---|---|---|
| Initial Document | January 29, 2008 | | Db |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY        Oracle America v. Google, 3:10-cv-03561-WHA        GOOGLE-00392215



## Introduction

This SOW:

- Describes the responsibilities of Noser and the Project Services to be provided by Noser to Licensee pursuant to the Agreement to which this SOW is attached, and will be made a part thereof, executed between the parties, and for payment made by Google in exchange for such Project Services.

- Describes the responsibilities of Google.

- Details the related schedule.

## Description of Project Services

### Prerequisites, Coding Guidelines, Testing / Acceptance Criteria

- The prerequisites, the coding guidelines and the testing / acceptance criteria as listed in the S.O.W. for the core libraries, signed April 19, 2006, apply.

### List of Tasks

- A team of two engineers will work in Mountain View to integrate the libraries into the Android code base and support the Android team.

  Jörg Pleumann
  Urs Grob

## Services and Payment Schedule

Prioritization of deliverables will be set upon agreement between Google and Noser.

Engineering Services: 170$ per hour. Estimated time for this SOW is four weeks for each Noser engineer based on a 40 hour week.

Expenses: Google will also be billed for Noser's actual costs relating to travel and living expenses. Estimated travel and living expenses for Urs and Jörg: USD$5,000 combined

Noser will issue invoices for Services on a monthly basis.

**Maximum Payment Amount.**   Notwithstanding anything else in the Agreement to the contrary and unless otherwise agreed upon in writing by Google, Google's maximum liability for all Services under this SOW shall not exceed $60,000.

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY        Oracle America v. Google, 3:10-cv-03561-WHA        GOOGLE-00392216