1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC.,

        Plaintiff,                           No. C 10-03561 WHA

  v.

GOOGLE INC.,

        Defendant.

_____/

**FINAL CHARGE TO THE JURY (PHASE ONE)**
**AND SPECIAL VERDICT FORM**

1.

Members of the jury, it is now my duty to instruct you on the law that applies to the issue of fair use.  A copy of these instructions will be available in the jury room for you to consult as necessary.

It is your duty to determine the facts from all the evidence in the case.  To those facts, you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath promising to do so at the beginning of the case.  In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions or into anything the Court may have said or done as suggesting what verdict you should return — that is a matter entirely up to you.

2.

The evidence from which you are to decide what the facts are consists of:

1.    The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2.    The exhibits which have been received into evidence;

3.    The sworn testimony of witnesses in depositions and other proceedings, read into evidence;

4.    Any facts to which the lawyers have stipulated.  You must treat any stipulated facts as having been conclusively proved;

5.    Answers to interrogatories and requests for admission read to you during trial; and

6.    Any facts that I have instructed you must be treated as having been established.

2

3.

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may explain the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.  You should base your decision on all of the evidence regardless of which party presented it.

4.

In reaching your verdict, you may consider only the types of evidence I have described.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the evidence as you remember it differs from the way the lawyers have stated it, your memory of it controls.

2.  A suggestion in a question by counsel or the Court is not evidence unless it is adopted by the answer.  A question by itself is not evidence.  Consider it only to the extent it is adopted by the answer.

3.  Objections by lawyers are not evidence.  Lawyers have a duty to their clients to consider objecting when they believe a question is improper under

United States District Court

For the Northern District of California

3

the rules of evidence.  You should not be influenced by any question, objection, or the Court's ruling on it.

4.      Testimony or exhibits that have been excluded or stricken, or that you have been instructed to disregard, are not evidence and must not be considered.  In addition, some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

5.      Anything you may have seen or heard when the Court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

5.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  Nor does it depend on which side called witnesses or produced evidence. You should base your decision on all of the evidence regardless of which party presented it.

6.

You are not required to decide any issue according to the testimony of a number of witnesses, which does not convince you, as against the testimony of a smaller number or other evidence, which is more convincing to you.  The testimony of one witness worthy of belief is sufficient to prove any fact.  This does not mean that you are free to disregard the testimony of any witness merely from caprice or prejudice, or from a desire to favor either side.  It does mean that you must not decide anything by simply counting the number of witnesses who have testified on the opposing sides.  The test is not the number of witnesses but the convincing force of the evidence.

7.

A witness may be discredited or impeached by contradictory evidence or by evidence that, at some other time, the witness has said or done something or has failed to say or do something that is inconsistent with the witness' present testimony.  If you believe any witness

United States District Court
For the Northern District of California

4

1  has been impeached and thus discredited, you may give the testimony of that witness such

2  credibility, if any, you think it deserves.

8.

4  Discrepancies in a witness' testimony or between a witness' testimony and that of other

5  witnesses do not necessarily mean that such witness should be discredited.  Inability to recall

6  and innocent misrecollection are common.  Two persons witnessing an incident or a transaction

7  sometimes will see or hear it differently.  Whether a discrepancy pertains to an important matter

8  or only to something trivial should be considered by you.

9  However, a witness you think is willfully false in one part of his or her testimony is to

10  be distrusted in others.  You may reject the entire testimony of a witness who willfully has

11  testified falsely on a material point, unless, from all the evidence, you believe that the

12  probability of truth favors his or her testimony in other particulars.

9.

14  In determining what inferences to draw from evidence you may consider, among other

15  things, a party's failure to explain or deny such evidence.

10.

17  You may have heard from a witness that there was a prior trial in this case.  It is true that

18  there was a prior trial.  We have heard evidence in this trial of a prior proceeding, which is the

19  earlier trial that occurred in this case.  Do not speculate about what happened in the prior trial.

20  No determination on fair use was made one way or the other in that trial.  It is up to you, the

21  jury, to determine fair use based on the evidence you have heard in this trial and my instructions

22  of the law.

11.

24  In this case, members of the jury, you have heard two types of witnesses.  *First*, you

25  have heard fact witnesses.  These are people who were part of the story on trial and have

26  testified to the facts they experienced firsthand.  *Second*, you have heard expert witnesses.

27  Unlike fact witnesses who were part of the story on trial, the various expert witnesses have been

28

5

**United States District Court**
For the Northern District of California

1    retained by both sides after-the-fact to testify to opinions based on their specialized training or

2    experience.  To take an example from a more routine case, in a traffic case, a fact witness is

3    someone who saw or heard the accident or was part of it, whereas an expert witness is someone

4    like an accident reconstruction specialist who offers an opinion of the car's speed based on skid

5    marks.

6                                                     12.

7            In deciding the facts in this case, you may have to decide which testimony to believe and

8    which testimony not to believe.  You may believe everything a witness says, or part of it or

9    none of it.  In considering the testimony of any witness, you may take into account:

10           1.      The opportunity and ability of the witness to see, hear, or know the things

11   testified to;

12           2.      The quality of the memory of the witness;

13           3.      The manner of the witness testifying;

14           4.      The interest of the witness in the outcome of the case and any bias or prejudice;

15           5.      Whether other evidence contradicted the testimony of the witness;

16           6.      The reasonableness of the witness' testimony in light of the evidence; and

17           7.      Any other factors that bear on believability.

18                                                   13.

19           With respect to expert witnesses, the main reason we allow their testimony is because

20   they may have specialized training and experience with insights that may help the jury

21   understand a field of specialized knowledge and how it applies to the case at hand.  Usually,

22   these witnesses are paid by their respective sides in litigation.  Two important caveats for

23   experts are as follows:

24           No expert witness should ever vouch for which side's fact scenario is

25           correct.  No retained expert was present at the events in question.  None has

26           firsthand knowledge.  Experts may rely on particular documents and testimony

27           and may make an assumption that the document or testimony is correct and then

28                                                     6

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

give an opinion based on that assumption, but the opinion is only as good as the factual assumption and that foundational fact question is always for you, the jury, to resolve, not for the experts. Put differently, experts should not invade the province of the jury by purporting to tell the jury which side's fact version is true.

Similarly, no expert witness should attempt to tell the jury what someone had in mind or was thinking. The mental state and intent of the characters in our story on trial is for you to decide, not for the experts to decide. It is, however, permissible for experts to quote testimony or documents and then to assume that the statements therein were accurate and then based thereon to apply their expertise to render an opinion.

14.

With this in mind, I will now suggest to you some further inquiries for your evaluation of the testimony of experts.

    1.    To what extent, if at all, has the expert witness overstepped his or her role and tried to usurp the function of the jury by vouching for the truth of one side's witnesses versus the other or by giving opinion on the mental state of the characters involved in the case?

    2.    To what extent is the expert witness' opinion actually anchored in his or her specialized knowledge and training as opposed to just partisan argument, which you are just as qualified to make or reject as him or her?

    3.    To what extent is the expert witness' opinion supported by facts you find have been independently proven?

    4.    To what extent is the opinion contradicted by the facts?

    5.    To what extent has the expert witness relied upon a source of factual information that is biased?

7

United States District Court

For the Northern District of California

6.      To what extent has the expert witness "cherry picked" the factual record to highlight material helpful to his or her opinion while downplaying the facts that undercut his opinion?

7.      To what extent has the expert witness forthrightly conceded points versus stubbornly refused to concede a point you think he or she should?

8.      To what extent has the expert witness been influenced by money compensation paid by the side presenting him or her?

These are merely considerations.  It is always up to you, the jury, to decide how much weight to give, if any, to any testimony or evidence, including from expert witnesses.

15.

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, or officers performed within the scope of authority.

You have heard testimony that Oracle Corporation bought Sun Microsystems, Inc., in 2010 and changed the name of the corporation from "Sun Microsystems, Inc." to "Oracle America, Inc."  This means that Sun and Oracle America, the plaintiff in this case, are the same legal entity.

16.

In these instructions, I will often refer to a party's "burden of proof."  Let me explain what that means.  When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.  To put it differently, if you were to put the evidence favoring a plaintiff and the evidence favoring a defendant on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip somewhat toward its side.  If the party fails to meet this burden, then the party with the burden of proof loses on that issue.  Preponderance of the evidence basically means "more likely than not."

8

United States District Court

For the Northern District of California

17.

If you find that Google carried its burden of proof as to fair use, your verdict should be for Google.  If you find that Google did not carry its burden of proof, your verdict should be for Oracle.

18.

I will now remind you of some important established facts regarding the copyrighted works at issue in this case.

The Java platform is a software application platform that is used to write and to run programs in the Java programming language.  The Java programming language is free and available to use without permission from anyone.  The Java platform includes, among other things, the Java Virtual Machine and the Java API packages.  "API" stands for "Application Programming Interface."

What is at issue in this case are the Java API packages, which are sets of prewritten computer programs used to perform common computer functions without a programmer needing to write code from scratch.  These prewritten computer programs assist developers in writing applications.  These prewritten programs are organized into packages, classes, and methods.  An API package is a collection of classes.  Each class contains methods and other elements.

The packages, classes, and methods are defined by declaring code.  The declaring code is the line or lines of source code that introduce, name, and specify the package, class, or method.  The declaring code allows programmers to understand and make use of the prewritten programs in the API packages to write their own programs.

The declaring code for the packages, classes, and methods reflects the structure, sequence, and organization (or "SSO") for the Java API packages.  The SSO specifies the relationships between and among the elements of the Java API packages and also organizes the classes, methods, and other elements in the package.  The term structure, sequence, and

9

1    organization is a concept used by lawyers and courts in connection with copyright.  It is not a

2    term used by computer scientists.

3         Each individual method performs a specific function.  The declaring code for a method

4    is sometimes referred to as the "method declaration," "header," or "signature."  The declaring

5    code for a method tells the programmer the information the method needs (the inputs) to

6    perform the desired function.

7         Each method also contains implementing code.  The implementing code provides step-

8    by-step instructions that tell the computer how to perform the function specified by the

9    declaring code.  The declaring code and the SSO of the 37 Java API packages at issue are

10   protected as part of the overall work protected by copyrights owned by Oracle.  The copyright

11   protection does not extend to the idea of organizing functions into packages, classes, and

12   methods, but the copyright protection does cover the SSO as expressed in the 37 Java API

13   packages.

14                                            19.

15        Sun developed the Java programming language and made it free for all to use.  Sun

16   further developed the copyrighted Java API library of prewritten code, including implementing

17   code, to carry out more advanced functions and made it available for all to use with a license,

18   although the question for you to decide is the extent to which, if at all, the declaring code and

19   SSO may be copied without a license under the statutory right of fair use.  Anyone using the

20   Java programming language may write their own library of prewritten programs to carry out

21   various common functions.  They may even write their own library to cover the same functions

22   as covered by the copyrighted works.  This is because copyright protects a particular set of

23   words or expression, but it does not and cannot cover ideas or functions.  However, even in

24   writing their own programs to carry out the same functions, Java programmers may not begin

25   their methods, classes, or packages with the identical line (or lines) of declaring code as used in

26   the copyrighted works — unless such use of the declaring lines constitutes a fair use.  Nor may

27

28                                            10

they organize their methods into the same packages and classes as in the copyrighted works —

unless to do so qualifies as fair use.

20.

Now, I will turn to the law that applies to this case.  In this trial, it has already been

established that the Android versions in question used aspects of Java 2 Standard Edition

Version 1.4 and Java 2 Standard Edition Version 5.0, specifically using the declaring code and

the structure, sequence, and organization of 37 Java API packages.  The pertinent Android

versions are:  1.0, 1.1, Cupcake, Donut, Eclair, Froyo, Gingerbread, Honeycomb, Ice Cream

Sandwich, Jelly Bean, Kit-Kat, Lollipop, and Marshmallow.  Google's use of the declaring lines

of code and the structure, sequence, and organization of those 37 API packages constituted

copyright infringement unless you find that Google has carried its burden as to the defense of

fair use.  In other words, for purposes of this trial, it is a given, already established, that Google

used certain aspects of copyrighted works, and the question remaining for you to decide is

whether or not Google's use was a fair use.  There is no contention, however, that Google

copied the implementing code for the 37 API packages.  The point of contention is over the

declaring lines of code within the 37 API packages, also referred to as declarations or header

lines, which Google concededly used in Android, which reflect the structure, sequence, and

organization for the Java API packages.

21.

Now, I will explain what fair use means under the law.

One policy behind our copyright law, of course, is to protect the compositions of

authors from exploitation by others.  When it applies, however, the right of fair use permits

the use of copyrighted works by others without the copyright owner's consent.  The policy

behind the right of fair use is to encourage and allow the development of new ideas that build

on earlier ones, thus providing a counterbalance to the copyright policy to protect creative

works.  Since the doctrine of fair use is an equitable rule of reason, no generally accepted

11

**United States District Court**
For the Northern District of California

definition is possible, and each case raising the question must be decided on its own facts. And, in this dispute between Oracle and Google, that question falls to you for decision.

22.

Under the Copyright Act, an author owns the exclusive right to use or to license his or her writings or images or other copyrightable works with the statutory exception that anyone may make fair use of even a copyrighted work and may do so without anyone's permission and without payment of money to anyone. Specifically, the Act states (and I will quote it exactly):

> The fair use of a copyrighted work for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include —
>
>     1.    The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
>     2.    The nature of the copyrighted work;
>
>     3.    The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
>     4.    The effect of the use upon the potential market for or value of the copyrighted work.

I have just quoted for you the right of fair use exactly as enacted by Congress. As you just heard, the statute includes several examples of some types of uses that may be found to be fair uses, but that list is not exhaustive or exclusive. In your deliberations, you must decide whether or not Google has met its burden in this trial to prove that its copying was a fair use. Now I will further explain each of the four statutory factors.

23.

The first statutory factor concerns the purpose and character of the accused use. This factor includes these issues: (1) whether and to what extent the accused use serves a commercial purpose, which weighs against fair use, versus a nonprofit educational purpose, which weighs in favor of fair use, and (2) whether and to what extent the accused work is

12

"transformative," which supports fair use.  Although the Act does not explicitly use the word "transformative," our courts uniformly hold that the first statutory factor calls for an evaluation whether and to what extent the purpose and character of the accused work is transformative.

24.

What does transformative mean?  A use is transformative if it adds something new, with a further purpose or different character, altering the first use with new expression, meaning, or message rather than merely superseding the objects of the original creation.  New works have been found transformative when they use copyrighted material for purposes distinct from the purpose of the original material.  A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or, where the copyrighted elements remain unchanged from the original, a defendant uses them in a different context such that the original work is transformed into a new creation.  A work is not transformative where the user makes little or no alteration to the expressive content or message of the original work and uses it in the same or similar context.  The extent of transformation may vary from case to case.  The greater the transformation, the more likely an accused use will qualify as a fair use, and the less the transformation, the less likely an accused use will qualify as a fair use.

25.

To qualify as transformative, the material copied need not be modified in the new work, so long as the material and the context in which the material is used qualifies as transformative under the test stated above.  In this case, Google contends that it used the exact lines of declaring code at issue and their SSO together with new implementing code (and additional technology) as part of a new platform for mobile devices.  Oracle contends that Sun was already using, licensing, and adapting the copyrighted works in mobile and other devices.  It is up to you to decide the extent to which Google's use qualifies as transformative under the test stated above, but you may not disqualify it from being transformative merely because the declaring code and SSO were carried over without change.  On the other hand, even if you find that the

13

accused use was transformative, you must weigh that and the extent of the transformativeness

against the commercial purpose of the use and its extent, which I will now discuss.

26.

In evaluating the first statutory factor, the extent of the commercial nature of the

accused use must be considered.  In this case, all agree that Google's accused use

was commercial in nature but disagree over the extent.  Commercial use weighs against a

finding of fair use, but even a commercial use may be found (or not found, as the case may be)

to be sufficiently transformative that the first statutory factor, on balance, still cuts in favor of

fair use.  To put it differently, the more transformative an accused work, the more other factors,

such as commercialism, will recede in importance.  By contrast, the less transformative the

accused work, the more other factors like commercialism will dominate.

27.

Also relevant to the first statutory factor is the propriety of the accused infringer's

conduct because fair use presupposes good faith and fair dealing.  Where, for example, the

intended purpose is to supplant the copyright holder's commercially valuable right of first

publication, good faith is absent.  In evaluating the question of the propriety of Google's

conduct, meaning good faith or not, you may only consider evidence up to the commencement

of this lawsuit on August 12, 2010, and may not consider events thereafter.  Your decision as to

fair use, however, will govern as to all versions of Android at issue in this case, regardless of

their date of issue.  Again, in evaluating good faith or not, you should limit your consideration

to events before August 12, 2010, and disregard any evidence you have heard after that date.

This evidence cut-off date applies only to the issue of good faith or not.

In evaluating the extent to which Google acted in good faith or not, you may take into

account, together with all other circumstances, the extent to which Google relied upon or

contravened any recognized practices in the industry concerning re-implementation of API

libraries.

14

United States District Court

For the Northern District of California

You have heard evidence concerning the possibility of Google seeking a license from Oracle.  Under the law, if the accused use is otherwise fair, then no permission or license need be sought or granted.  Thus, seeking or being denied permission to use a work does not weigh against a finding of fair use.

Similarly, you have heard evidence about various licenses from the Apache Foundation, the Apache Harmony Project involving Java, and the General Public License.  These are relevant in some ways, but Google concedes it had no license from Sun or Oracle, and it is important to remember that Google makes no claim that its use was pursuant to a license from Sun or Oracle, directly or indirectly.  Instead, Google claims that its use was a fair use and therefore required no license at all.

28.

The second statutory factor is the nature of the copyrighted work.  This factor recognizes that traditional literary works are closer than informational works, such as instruction manuals, to the core of intended copyright protection.  Creative writing and expression lie at the very heart of copyright protection, so fair use is generally more difficult to establish for copying of traditional literary works than for copying of informational works.  The focus of this statutory factor is on how close the used material is to the core values of copyright protection. The less the used material implicates the core values of copyright protection, the more viable will be fair use and vice versa.

29.

In this case, it is undisputed that the declaring code and the structure, sequence, and organization of the 37 API packages at issue were sufficiently creative and original to qualify for copyright protection.  "Original," as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works) and that it possesses at least some minimal degree of creativity.  The extent to which the 37 API packages in question here involved greater creativity than the minimum required to obtain copyright is disputed and is open for you to examine.  That is, you should consider the extent to which the

United States District Court

For the Northern District of California

1    used materials were creative versus functional.  The more creative the work, the more this factor

2    disfavors fair use, and the more functional the work, the more this factor favors fair use.

3                                                        30.

4         Even though a computer program performs functions and has functional elements, the

5    structure, sequence, and organization of a computer program may be (or may not be) highly

6    creative.  When there are many possible ways to structure, sequence, and organize a program,

7    the particular way chosen for a copyrighted program and individual lines of declaring code may

8    be (or may not be) highly creative.  On the other hand, when the declaring code and the

9    structure, sequence, and organization are dictated by functional considerations such as

10   efficiency, compatibility, or industry standards, then less creativity is indicated and the core

11   values of copyright protection are less implicated.  When purely functional elements are

12   embedded in a copyrighted work and it is necessary to copy associated creative elements in

13   order to utilize those functional elements, then this circumstance also favors fair use.

14   Conversely, copying creative expression that is not necessary to perform the functions cuts

15   against fair use.

16                                                       31.

17        Google, of course, had the right to write its own code to perform any function it wished

18   because no one can get a copyright on a general method of operation (other than to get a

19   copyright on its specific implementation for that function).  Unless it was a fair use, however,

20   Google did not have the right to use the exact lines of declaring code and the overall structure,

21   sequence, and organization of the 37 API packages, as copyrighted by Sun (and now owned

22   by Oracle).

23                                                       32.

24        Because Google was free to use the Java programming language to write Android,

25   you should also consider the extent to which you find it was necessary for Google to use any or

26   all of the declaring code and structure, sequence, and organization of any of the 37 API

27   packages to write in the Java language.  Such a finding, to that extent only, would support fair

28                                                        16

use; to the extent you find it was not necessary, however, that finding would disfavor fair use. It is established that 170 lines of code at issue are technically necessary to use the Java programming language. Those 170 lines of declaring code are listed in Trial Exhibit 9223. Because that declaring code is necessary to use the language, it is established that Google's use of the declaring code in Trial Exhibit 9223 was a fair use. It is for you to determine the extent to which other additional declaring code beyond those lines identified in Trial Exhibit 9223 either was or was not necessary for use of the Java programming language. To the extent you find they were not necessary, you still must consider whether their use was (or was not) a fair use in light of the statutory factors for fair use. This consideration also bears on the third statutory factor, to which I will now turn.

33.

The third statutory factor is the amount and substantiality of the portion used in relationship to the copyrighted work as a whole, which concerns how much of the overall copyrighted work was used by the accused infringer. Analysis of this factor is viewed in the context of Oracle's copyrighted works, namely Java 2 Standard Edition Versions 1.4 and 5.0. For this factor, the total number of lines in Android is irrelevant. The fact, if true, that a substantial portion of an infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to whoever seeks to profit from marketing someone else's copyrighted work. Wholesale copying does not preclude fair use per se but it militates against a finding of fair use. Even a small part may be qualitatively the most important part of a work. If, however, the secondary user only copies as much as is necessary for a transformative use, then this factor will not weigh against him or her. The extent of permissible copying varies with the purpose and character of the use, which relates back to the first statutory factor.

In assessing this third statutory factor, both the quantity of the material used and the quality or importance of the material used should be considered.

17

United States District Court

For the Northern District of California

34.

The fourth and final statutory factor is the effect of the accused infringer's use on the potential market for or value of the copyrighted work. This factor militates against fair use if the accused use materially impairs the marketability or value of the copyrighted work. This is the single most important statutory factor, but it must be weighed with all other factors and is not necessarily dispositive. This factor considers whether the accused work is offered or used as a substitute for the original copyrighted work. This factor considers not only the extent of any market harm caused by the accused infringer's actions but also whether unrestricted and widespread use of the copyrighted materials of the sort engaged in by the accused infringer would result in a substantially adverse impact on the potential market for the copyrighted work. Market harm to the value of the copyrighted work may be a matter of degree, and the importance of this factor will vary not only with the amount of harm shown, but also with the relative strength of the showings on the other factors.

35.

In connection with the fourth statutory factor, the term "potential market for or value of" refers to the value of the entire copyrighted work itself and licensing opportunities for the copyrighted work and its derivative works. A derivative work is a work based in whole or in substantial part upon one or more preexisting copyrighted works, such as a musical arrangement or dramatization based on a book, to name only two specifics, or any other form in which a work may be recast or adapted. In this case, the copyrighted works in suit are Java 2 Standard Edition Versions 1.4 and 5.0, so the only derivative works that count are those derived from those two works.

36.

In making your evaluation under the fourth factor, you should assess the harm, if any, to the potential market for or value of the copyrighted work itself and to its licensing value for it and its derivative works. You may consider the broader potential market for products that feature independent elements in addition to the copyrighted material and their successes and/or

18

United States District Court

For the Northern District of California

1    failures only insofar as they shed light on the licensing or market value of the copyrighted work

2    itself and its derivative works.  In doing this, moreover, you must ignore benefits from the use

3    to the copyright owner outside the genre claimed to have been harmed.

4                                                      37.

5          Actual present harm need not be shown.  Nor is it necessary to show with certainty that

6    future harm will result so long as some meaningful likelihood of future harm exists to the

7    market value of the copyrighted work or the licensing value for the copyrighted work and its

8    derivative works in traditional, reasonable, or likely to be developed markets.  If the intended

9    accused use is for commercial gain, that likelihood may be presumed except where the second

10   use is transformative because in cases of transformation, market substitution is at least less

11   certain and market harm may not be so readily inferred.

12                                                     38.

13         I have now completed my explanation of the four factors in the Act.  You might ask, are

14   we limited to these four factors?  The Act states that the factors to be considered "include" the

15   four statutory factors, and the law holds that those four factors are not exclusive and you may

16   consider any additional circumstances and evidence, pro or con, that, in your judgment, bear

17   upon the ultimate purpose of the Copyright Act, including protection of authors and the right

18   of fair use, namely, to promote the progress of science and useful arts.

19                                                     39.

20         It is up to you to decide whether all relevant factors, when considered fully and together,

21   favor or disfavor fair use.  All of these factors must be explored, discussed, and evaluated by

22   you.  No single factor is dispositive.  Your evaluation of all factors must be weighed together in

23   light of the purpose of copyright, which as our Constitution states in enumerating the legislative

24   power of Congress, is to promote the progress of science and useful arts.  Some factors may

25   weigh in favor of fair use and some against fair use, and you must decide, after giving the

26   factors such weight as you find appropriate based on the evidence and my instructions, whether

27

28                                                     19

United States District Court

For the Northern District of California

or not, on balance, Google has shown by a preponderance of the evidence that they predominate in favor of fair use.

40.

When you begin your deliberations, you should elect one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.  Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.  It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

I will give you a special verdict form to guide your deliberations.

41.

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.  When you go into the jury room, the Clerk will bring in to you the trial exhibits received into evidence to be available for your deliberations. The Clerk will also provide you with an index to them.

42.

As I noted before the trial began, when you retire to the jury room to deliberate, you will have with you the following things:

1.    All of the exhibits received into evidence;

2.    Indices of the exhibits, one in chronological order, one in order of exhibit number, and one index of the exhibits shown in video depositions.

20

**United States District Court**
For the Northern District of California

3.      A work copy of these jury instructions for each of you;

4.      A work copy of the verdict form for each of you;

5.      An official verdict form; and

6.      A cart with a computer which holds exhibits that exist only in electronic form.

When you recess at the end of a day, please place your work materials in the brown envelope provided and cover up any easels with your work notes so that if my staff needs to go into the jury room, they will not even inadvertently see any of your work in progress.

43.

A court security officer will be outside the jury-room door during your deliberations. If it becomes necessary during your deliberations to communicate with me, you may send a note through the officer, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the Court.

44.

You have been required to be here each day from 7:45 A.M. to 1:00 P.M.  Now that you are going to begin your deliberations, however, you are free to modify this schedule within reason.  For example, if you wish to continue deliberating in the afternoons after a reasonable lunch break, that is fine.  The Court does, however, recommend that you continue to start your deliberations by 8:00 A.M.  If you do not reach a verdict by the end of today, then you will resume your deliberations tomorrow and thereafter.

21

1   It is very important that you let us know via the officer what hours you will be

2   deliberating so that the lawyers may be present in the courthouse at any time the jury is

3   deliberating.

4   45.

5   You may only deliberate when all of you are together.  This means, for instance, that in

6   the mornings before everyone has arrived or when someone steps out of the jury room to go to

7   the restroom, you may not discuss the case.  As well, the admonition that you are not to speak to

8   anyone outside the jury room about this case still applies during your deliberation.

9   46.

10   Once you render a verdict on the fair use question, we may proceed to the shorter and

11   final phase of the trial on damages issues, depending on your answer to the fair use question.

12   This would still be within the June 10 end date stated earlier.  Please do not allow any desire to

13   complete trial sooner to influence your thinking.  Once you render your verdict on the fair use

14   issue, it will be final and may not be re-visited or modified during the second phase.

15   47.

16   After you have reached a unanimous agreement on a verdict, your foreperson will fill in,

17   date and sign the verdict form and advise the Court that you have reached a verdict.  The

18   foreperson should hold onto the filled-in verdict form and bring it into the courtroom when the

19   jury returns the verdict.  Thank you for your careful attention.  The fair use issue is now in your

20   hands.  You may now retire to the jury room and begin your deliberations.

21

22

23   Dated:   May 23, 2016.

24   _____
     WILLIAM ALSUP
     UNITED STATES DISTRICT JUDGE

25

26

27

28

22

*United States District Court*
For the Northern District of California