ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>            Plaintiff,<br><br>    v.<br><br>GOOGLE INC.<br><br>            Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER LIMITING MR. MALACKOWSKI'S LOST PROFITS OPINION, ECF NO. 1798**<br><br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William Alsup |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that Plaintiff Oracle of America, Inc. hereby moves for reconsideration of the Court's May 3, 2016 Order on Google's Motion *in Limine* #6 Regarding Oracle's Damages Expert James Malackowski on the basis that (1) new material facts emerged at trial that should alter the Court's ruling regarding Mr. Malackowski's lost profits opinion and (2) the Court did not consider material facts that show Mr. Malackowski's lost profits opinion does not suffer from the purported flaws the Court identified.  Any hearing on this motion will be held at a time the Court shall order.

This Motion is based on the following memorandum of points and authorities in support; the declaration of Robert T. Keele and accompanying exhibits; and the record in this matter.

Dated: May 23, 2016                                        Orrick, Herrington & Sutcliffe LLP

                                                    By: *Annette L. Hurst*
                                                         Annette L. Hurst

                                                    Counsel for ORACLE AMERICA, INC.

ORACLE'S MOTION FOR RECONSIDERATION OF
LOST PROFITS ORDER

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Oracle seeks reconsideration of a narrow part of the Court's May 3, 2016 Order on Google's Motion *in Limine* #6 Regarding Oracle's Damages Expert James Malackowski, in particular, the Court's limitation of Mr. Malackowski's use of an ordinary course Java ME licensing revenue forecast.  Although the Court permitted Mr. Malackowski to use the forecast to estimate lost profits from 2009-2011, the Court precluded him from using it to estimate lost profits for 2012-2015.  ECF No. 1798 at 13.

The Court should grant Oracle's motion to reconsider because new material facts emerged at trial that should alter the Court's ruling regarding Mr. Malackowski's use of the forecast.  Most notably, Sun's chairman, Scott McNealy, told Google that an Android platform using Sun's technology would "submarine" Sun's licensing revenue, and Andy Rubin quantified this submarine effect at roughly $100 million in annual Java ME licensing revenue.  This estimated $100 million loss in annual revenue, when added back in to the loss profits calculation over the four excluded years (2012-2015), strongly supports Mr. Malackowski's original $475 million lost profit estimate.

The Court should also grant the motion because, respectfully, the Court did not consider material facts that show Mr. Malackowski's opinion does not suffer from the purported flaws the Court identified.  The Court erroneously concluded that Mr. Malackowski did not: (1) perform any analysis regarding whether Oracle underperformed relative to the forecast due to market shifts or other events unrelated to Google's alleged infringement, nor (2) offer any analysis to support extending the growth projections five years beyond the end of the forecast.  *Id.* at 13.  However, Mr. Malackowski did in fact consider other factors that may have impacted Java ME licensing revenue when settling on a very conservative 8% growth rate, and he offered analysis to support extending the growth projections through 2015.

Finally, Oracle was reasonably diligent in filing this request just days after the first phase of trial ended and before the damages phase has begun.

ORACLE'S MOTION FOR RECONSIDERATION
OF LOST PROFITS ORDER

## I.      LEGAL STANDARD

Under Local Rule 7–9(b), granting a motion for reconsideration is proper when the moving party has shown (1) "reasonable diligence in bringing the motion" and (2), *inter alia*, "the emergence of new material facts," or a "manifest failure by the Court to consider material facts" before it.  L.R. 7–9(b); *see also Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1366 (N.D. Cal. 2007) (reciting this standard).

## II.     MATERIAL FACTS HAVE EMERGED AT TRIAL THAT SUPPORT MR. MALACKOWSKI'S LOST PROFITS OPINION

Although the damages phase of the trial has not yet begun, several key pieces of evidence emerged in the fair use phase that demonstrate Mr. Malackowski's lost profits opinion is reliable and should be reinstated.  This evidence shows that top Google employees knew the effect Google's actions would have on Sun's licensing revenues in the mobile space.  It was *entirely foreseeable* to Mr. Rubin and others at Google that an unlicensed Android would cause significant harm to Sun, especially to Sun's Java ME licensing revenues.  It is unsurprising, then, that this is exactly what happened.  The evidence adduced at trial includes:

- Andy Rubin, the founder of Android, testified that Sun in January 2006 was "prepared to walk away from a $100M annual J2ME licensing business" to partner with Google's Android in the mobile space, which was "a huge step for Sun" and "very important for Android and Google."  Tr. 780:16-781:24 (referencing TX 14).

- Google CEO Eric Schmidt testified that Sun Chairman Scott McNealy wrote to him about the proposed Sun/Android deal, saying "I'm worried about how we're going to replace the revenue. This is likely to submarine."  Trial Tr. 354:3-4 (discussing TX 205).

- Eric Schmidt testified: "So I read this as he [Schwartz] would like to do a deal. He has some revenue that he might lose if he does our deal, and he wants to make sure that he gets that revenue from us."  Trial Tr. 354:9-11.

- Mr. Rubin acknowledged that if Google and Sun agreed to a deal on Android, Google would have to "compensate[] Sun for current business risk." If Google earned money on "services running on open source Java/Linux mobile platform or derivatives, Google will revenue share with Sun."  Tr. 787:16-24 (discussing TX 339) (Mr. Rubin responded "That was one of the many proposals, yes" to this question about this document).

- Mr. Rubin testified that he understood how pervasive Sun's Java was in mobile phones at the time, acknowledging: it had "phenomenal momentum in 2004," "it was a billion installed base as of December 2005," "635 handset models," "180 deployments worldwide," "612 million units shipped."  Trial Tr. 789:6-790:3 (referencing TX 134).

- Mr. Rubin again testified that Sun had "a hundred million dollars a year of revenue at stake."  Trial Tr. 795: 18-20 (Rubin responded "[a]t stake" to this question).

- Oracle CEO Safra Catz testified that "many of those customers that we used to license to to [sic] take a copy, to take a licensed copy like Samsung or ZTE or Motorola, just different licensees, BlackBerry, etc., they don't need a license -- they don't take a license from us anymore because they use Android, which is free, and they end up using Android instead of actually paying us for a copy of -- of our software." Trial Tr. 1356:3-9.

This evidence alone shows that it was reasonable for Mr. Malackowski to extend Sun's growth projections through 2015. Mr. Malackowski, using Sun's ordinary course Java ME revenue projection, concluded that the infringing Android platform cost Sun/Oracle $475 million in Java ME licensing profit from 2009-2015. Malackowski 1st Rpt. ¶ 203. The Court permitted Mr. Malackowski to use the projections to calculate lost profits only through 2011, for a resulting $85 million, leaving roughly $390 million in lost profits for the remaining four years that the Court excluded. ECF No. 1798 at 13. But this $390 million in lost profits over a four year period is consistent with the testimony of fact witnesses at trial.

For example, Sun's chairman told Google that an Android platform using Sun's technology would "submarine" Sun licensing revenue. Mr. Rubin quantified this submarine effect at roughly $100 million in lost annual Java ME licensing revenue, which would equal approximately $85 million in lost profit per year, or $340 million over a four year period.[1] Thus, the trial testimony of Google's witnesses shows that Mr. Malackowski's projection of $390 million in lost profits for the four excluded years 2012-2015 is within the ballpark of what Google's witnesses predicted would be lost.

**III.  THE COURT DID NOT CONSIDER MATERIAL FACTS**

The Court did not consider several material facts that would have alleviated the Court's concern with Mr. Malackowski's use of the 2007/2008 projection. ECF No. 1798 at 12. Accordingly, the Court erroneously concluded that Mr. Malackowski did not: (1) "perform any analysis regarding whether Oracle underperformed relative to the forecast due to market shifts or other events unrelated to Google's alleged infringement," nor (2) "offer any analysis to support extending the growth projections five years beyond the end of the forecast." *Id.* at 13. But Mr. Malackowski did both of these things.

---

[1] Java ME licensing incremental expenses consistently ran at about 15%. *See* Malackowski 1st Rpt. ¶ 203.

ORACLE'S MOTION FOR RECONSIDERATION
OF LOST PROFITS ORDER

**Market and Other Factors Unrelated to Google's Infringement.** Mr. Malackowski addressed a variety of factors other than the infringement that could have contributed to Sun/Oracle losing Java ME licensing profits.  For example, Mr. Malackowski:

- Showed that the mobile industry was insulated from the recession.  Malackowski 2nd Rpt. ¶ 194 (citing, *inter alia*, The Economist).

- As further evidence of this fact, cited various studies indicating that the number of mobile subscribers grew at an annual rate of 7.6% from 2008-2014.  *Id.* ¶ 196.

- As further evidence of this fact, noted that the number of mobile device internet users grew 37.4% from 2011-2012.  *Id.* ¶ 195.

- Demonstrated that other Java-related factors that could affect profits, such as the purported stagnation of Java, were not meaningful factors at all.  *Id.* ¶¶ 188-91.

- Analyzed whether the trend toward smartphones from feature phones could have affected licensing revenues, and concluded this may have had some, but minimal, effect compared to Android, which drastically reduced the price gap between smartphones and feature phones.  *Id.* ¶¶ 200-05.

- Accounted for other possible non-Android factors by choosing a conservative growth rate that was, for example, 61% less than Sun's highest projected annual (overall) Java billings growth from 2009 to 2014.  Malackowski 1st Rpt. ¶ 189; *see also id.* Ex. 12.8 (Sun's overall Java projected growth rate from 2009-2014 was 8.0-13.6% per year).

In sum, Mr. Malackowski established that his use of the projected 8.3% annual growth rate was conservative because mobile was growing fast despite the recession, Sun-related issues had minimal impact, Android was looming, and because, as described further below, Mr. Malackowski considered several other actual and projected growth indicia that provided confirmatory context for this rate.

**Analysis that Supports Extending the Growth Projections Beyond 2011.**  Mr. Malackowski did not simply pluck a growth rate from a single Sun document and extrapolate that rate beyond the timeframe of the forecast.  In over 12 single-spaced pages, he identified, described, and analyzed relevant correspondence, other agreements and forecasts, and actual numbers to support extending the growth rate beyond 2011.  To point out just a few pieces of evidence analyzed by Mr. Malackowski:

*Correspondence regarding effect of open sourcing Java ME*

- Internal correspondence from Tim Lindholm to Mr. Rubin discussing impact to Sun revenue states: "for the risk of its loss…the price would be high" as "[t]hey fear an open source J2ME alternative will over time take the money out of the market for them."

ORACLE'S MOTION FOR RECONSIDERATION
OF LOST PROFITS ORDER

Malackowski 1st Rpt. ¶ 181.

- On October 11, 2005, Mr. Rubin passed on Sun executive Alan Brenner's concerns that an open source "J2ME VM" will make "licensing enforceability impossible for Sun, causing a loss of revenue." *Id.*

- In 2006, Jonathan Schwartz spoke with Sergey Brin who acknowledged that he understood an open source Java ME would have a "severely negative impact on our [Sun's] revenue streams." *Id.*

- Even after negotiations with Google broke down, Google employees indicated that a licensing arrangement between Sun and Google was important to protecting Sun's licensing business as Sun's entire business model would collapse "[I]f Apache or anyone else develops Java code that the rest of us can use freely instead of paying money to Sun…" *Id.*

*Other Forecasts*

- Using the only other forecast available would double the lost profits estimate, because the projected growth rate is greater. *Id.* ¶ 187:

*Actual Numbers*

- By 2010, Sprint, Verizon, AT&T and T-Mobile decreased their investment in Java ME; Sun FY2011 presentation indicated Android would eliminate more than $45M or close to 50% of Java ME in the subsequent eighteen months. Malackowski 1st Rpt. ¶ 190.

- Ms. Catz testified that Android had "a very negative impact" on the profitability of the Java business: "Companies like Samsung that would license $40 million contract were down to – would be licensing a million dollars," and Amazon stopped licensing Java for its "Kindle Fire" tablet. Trial Tr. 1359:5-24.

*Other Confirmation*

- Jeet Kaul, a former Sun employee, testified in deposition that Sun could lose "a billion dollars" based on projections of $250 to $300 million per year in annual Java revenue over three to four years. Malackowski 1st Rpt. ¶ 181.

- Java Architect Dr. Mark Reinhold confirmed the growth rates used in the lost profits calculation. Ex. A (Malackowski Depo.) 20:1-12.

- Java ME was enabled on 80% of worldwide handsets prior to the launch of Android. Malackowski 2nd Rpt. ¶ 183.

- Oracle personnel thought Mr. Malackowski's 8% growth rate was "grossly understating the expectations of Java" and that "the 8 percent growth rate was way too low"; "[t]heir only criticism of what [Mr. Malackowski] had done" was that he "was underestimating significantly the growth rate." Ex. A (Malackowski Depo.) 275:21-276:3.

In sum, Mr. Malackowski considered causes beyond the infringement on Java ME licensing

revenue when settling on a very conservative 8% growth rate, and he offered ample analysis to

ORACLE'S MOTION FOR RECONSIDERATION
OF LOST PROFITS ORDER

support extending the growth projections through 2015.[2]

## IV.     ORACLE WAS DILIGENT IN BRINGING THIS MOTION

Oracle makes this request just days after the first phase of trial ended and before the damages phase has begun.  Because evidence adduced during the first phase of trial is a primary basis for making this request, Oracle was reasonably diligent in making it.


Dated:          May 23, 2016                              Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: *Annette L. Hurst*
Annette L. Hurst

Counsel for ORACLE AMERICA, INC.

---

[2] In fact, Mr. Malackowski's future projection of lost profits is far more supported, and palatable, than Dr. Leonard's use of a single document to project TAC backwards in time.  Dr. Leonard's TAC estimate is particularly suspect because Google had *actual TAC numbers* he could have used instead of extrapolating backwards from a single document.  *See* ECF No. 1656-3 (Oracle's Reply in Support of MIL #4 re Dr. Leonard) at 5 ("Instead, Dr. Leonard—who either had full access to Google's books and records or should be excluded if he did not—*estimated* TAC.").