# Exhibit A

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1          UNITED STATES DISTRICT COURT
2         NORTHERN DISTRICT OF CALIFORNIA
3             SAN FRANCISCO DIVISION
4  ORACLE AMERICA, INC.,
5      Plaintiff,
6        vs.              Case No. 3:10-cv-03561-WHA
7  GOOGLE, INC.,
8      Defendant.
   _____
9
10
11
12
13    *HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY*
14         PURSUANT TO THE PROTECTIVE ORDER
15      VIDEO DEPOSITION OF JAMES MALACKOWSKI
16             San Francisco, California
17            Wednesday, March 17, 2016
18                    Volume I
19
20
21
22  REPORTED BY:
23  REBECCA L. ROMANO, RPR, CSR No. 12546
24  JOB NO. 2265299
25  PAGES 1 - 385

Veritext Legal Solutions
800-567-8658                                      973-410-4040

1      Q.   What information did you gather from
2  Dr. Reinhold that you used in your report?
3      A.   I would say two areas of information
4  primarily.  One related to his experience in the
5  growth rate of the marketplace, and, in particular,
6  confirmation of the growth rates that I used in my
7  calculation of Java ME lost profits.
8           I did also speak to Mr. Reinhold
9  regarding the Java licensing rate cards as part of
10 my investigation in your response to your earlier
11 question about the available information and
12 consideration of constructive license.
13     Q.   Any other information Dr. Reinhold
14 conveyed to you that you used in preparation of
15 your report?
16     A.   I believe in the case of Dr. Reinhold,
17 there are actually specific footnote references in
18 the report that tie back to those conversations.
19          From memory, without looking at the
20 report, I don't recall anything more specifically,
21 but I would defer to those footnotes.
22     Q.   The next person that you mentioned in
23 your report as having spoken to is
24 Michael Ringhofer, the vice president of
25 Worldwide Java Business.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 275

1          MS. HURST:  Object to the form.
2          THE DEPONENT:  My discussions with Oracle
3  personnel were to confirm the selection of the
4  projection that I used for the reason that I was
5  using it.  We had this essential conversation.
6      Q.   (By Mr. Purcell)  Did you ask them
7  whether you ought to use the best-estimate forecast
8  in Exhibit 1579?
9      A.   No.  I think I told them, it was my
10 conclusion that I'm going to use that, did they
11 concur with that, are there any issues that would
12 be raised with that.
13     Q.   Did you show them the best-estimate
14 forecast in Exhibit 1579, and ask them about the
15 pros and cons of using one versus the other?
16     A.   We had the document, yes.
17     Q.   Did you show it to them and ask them
18 which one was the more appropriate forecast to use?
19     A.   Effectively, yes.  I can't tell you that
20 I used those exact words.
21     Q.   And so why did they tell you that you
22 should use Exhibit 1578, rather than Exhibit 1579?
23     A.   Because they concurred with my
24 interpretation of the documents.  They actually, to
25 be direct, thought that my interpretation of the

1   documents was grossly understating the expectations
2   of Java; and that, in particular, the 8 percent
3   growth rate was way too low.
4        Q.   Did you ask them why the projection was
5   the Java ME licensing revenue would decline in
6   fiscal 2012, in Exhibit 1579?
7        A.   Well, we discussed the fact that it
8   included the assessment of competition including
9   Android.
10       Q.   So they told you that, they told you that
11  the best-estimate forecast included the effect of
12  competition from Android?
13       A.   Again, I -- I don't want to stretch in my
14  recollection to your question, so I -- I will try
15  to be as fair as possible.  I don't know that we
16  had that exact conversation.  I know we had the
17  conversation over the work that I had done and the
18  conclusions that I had reached to verify that the
19  approach I was taking was the best approach.
20            They confirmed that that was the best
21  approach.  Their only criticism of what I had done
22  was that I was underestimating significantly the
23  growth rate.
24       Q.   Did you ask them why the Java licensing
25  revenue was protected to decline in fiscal 2012, in

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 385

1    I, Rebecca L. Romano, a Certified Shorthand
2    Reporter of the State of California, do hereby certify:
3        That the foregoing proceedings were taken before me
4    at the time and place herein set forth; that any
5    witnesses in the foregoing proceedings, prior to
6    testifying, were administered an oath; that a record of
7    the proceedings was made by me using machine shorthand
8    which was thereafter transcribed under my direction;
9    that the foregoing transcript is true record of the
10   testimony given.
11       Further, that if the foregoing pertains to the
12   original transcript of a deposition in a Federal Case,
13   before completion of the proceedings, review of the
14   transcript [ ] was [X] was not requested.
15       I further certify I am neither financially
16   interested in the action nor a relative or employee of
17   any attorney or any party to this action.
18       IN WITNESS WHEREOF, I have this date subscribed my
19   name.
20
21   Dated:  March 17, 2016
22
23   _____
         Rebecca L. Romano, RPR,
24       CSR. No 12546
25

Veritext Legal Solutions
800-567-8658                                          973-410-4040