ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE'S OBJECTION TO EXHIBIT 2B OF GOOGLE EXPERT DR. GREGORY LEONARD'S OPENING EXPERT REPORT AND OPINIONS BASED THEREON** <br><br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William Alsup |

**INTRODUCTION**

In an attempt to bolster his unsupported opinion that the infringed 37 Java APIs were not important to the success of Android, Dr. Leonard "just sort of print[ed] out [a] spreadsheet" given to him by unidentified "people at Google." Ex. B, Leonard Depo. 192:15-16, 192:24-25. This spreadsheet became Exhibit 2b to Dr. Leonard's opening report on damages. *Id.* 191:22-192:25. Exhibit 2b contains, in one column, "a list of apps that appeared in the daily top 100 download lists for both Android and iOS during the period 2012 to 2013," and, in a second column, "whether each app was written in Java or C/C++." Leonard 1st Rpt. ¶ 76; *see also* Ex. A, Leonard 1st Rpt. Ex. 2b.[1] Exhibit 2b serves as the primary basis for several of Dr. Leonard's opinions that Google did not benefit from using the 37 Java APIs.

Dr. Leonard should not be permitted to rely on such spoon-fed analysis provided by unidentified people at Google, his client. When asked about Exhibit 2b at his deposition, Dr. Leonard could provide no information about how it was made, or even who made it. And he did *nothing* to verify the information he was given. All he did was "print[] their spreadsheet just to provide the information" in his report. Ex. B, Leonard Depo. 193:25-194:2. Such parroting of analysis, facts, and opinions from biased sources is precisely what courts are tasked with keeping out of the courtroom. The Court should exclude Dr. Leonard's Exhibit 2b as well as all opinions that rely on it.

**I.     GOOGLE SPOON-FED EXHIBIT 2B TO DR. LEONARD**

    **A.     Expert Testimony Is Inadmissible Where an Expert Merely Parrots What Is Spoon-Fed by the Client or the Lawyers**

Expert witness testimony must rest "on a reliable foundation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). As codified in Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) *the expert's scientific, technical, or other specialized knowledge* will help the trier of fact to

---

[1] In one paragraph of his report, Dr. Leonard attempts to pass off Exhibit 2b as his own work. Leonard 1st Rpt. ¶ 115 ("I determined whether the Android version of each app was written in Java or C++."). Yet he admits in a different paragraph in that same report, and in his deposition, that unidentified "Google personnel" provided the information to him. *Id.* ¶ 76; *accord* Ex. B, Leonard Depo. 192:11-16.

understand the evidence or to determine a fact in issue; (b) the testimony *is based on sufficient facts or data*; (c) the testimony *is the product of reliable principles and methods*; and (d) the expert has *reliably applied the principles and methods to the facts of the case.*

Fed. R. Evid. 702 (emphasis added). "One of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion." *Therasense, Inc. v. Becton, Dickinson & Co.*, Nos. C 04-02123 WHA, 2008 WL 2323856, at *1 (N.D. Cal. May 22, 2008); *see also Geo. M. Martin Co. v. All. Mach. Sys. Int'l, LLC*, No. C 07-00692 WHA, 2008 WL 2008638, at *1 (N.D. Cal. May 6, 2008) ("Expert did not conduct survey. Instead, it was spoon-fed to expert by counsel and client. Usage is fact-based, not for expert opinion. Important factual points should not be proven through experts spoon-fed by wholly biased sources."). Opinions based on spoon-fed facts that the expert does not even verify do not meet the foundational requirements of Rule 702.

### B. The Court Should Exclude Exhibit 2b and All Opinions Relying Thereon Because It Was Spoon-Fed to Dr. Leonard

Exhibit 2b was spoon-fed to Dr. Leonard. When asked about his Exhibit 2b at his deposition, Dr. Leonard did not know who at Google had identified the language in which each app was written. He did not know how that identification was made or what materials were considered in making that identification. He did not know whether Google produced in this litigation the information used to make the identification, nor did he do anything to verify the information he was given. All he did was "print[] their spreadsheet just to provide the information." Ex. B, Leonard Depo. 193:24-194:2. This exchange is provided in relevant part below (191:25-194:2):

> Q. Now, what is Schedule 2b?
> A. Schedule 2b gives a list of applications and the -- basically, whether they were developed using the NDK, the SDK, or unknown.
> Q. And NDK is what?
> A. NDK is called the Native Development Kit. It's Android -- it's support, basically, for developing an application in C++.
> Q. And what is SDK?
> A. SDK is the -- is the development kit for people who want to develop applications in Java.
> Q. All right. Now, how do you know for Schedule 2b whether these applications

1 were developed using the NDK, SDK, or one of the other options that are listed here?

2 A. Ultimately, I heard from people at Google.

3 Q. Okay. And is that reflected in your note to Schedule 2b that says, "Programming languages are identified by Google?"

4 A. Yes.

5 Q. And where did they identify that?

6 A. They produced a -- a spreadsheet that gave the indications. In a way, this is just sort of printing out that spreadsheet.

7 Q. Who produced that spreadsheet?

8 A. The people at Google did.

Q. Which people?

9 A. I'm not -- I can't recall at this point which individual did it.

10 Q. What analysis did they perform?

11 A. My understanding is they do keep track of -- of how applications are developed. And so they consulted that.

12 Q. How do they keep track of it?

13 A. I don't know the details of that.

Q. What did they consult?

14 [Objection]

15 THE DEPONENT: I think they have internal information that they're looking at.

16 Q. Were those documents produced in this case?

A. I don't know.

17 Q. Did you do anything to verify this information?

18 A. I wouldn't say that I verified each one of these, no. That's why I was asking Google to provide that information.

19 Q. And that's why you printed their spreadsheet?

20 A. No. I printed their spreadsheet just to provide the information.

21 Exhibit 2b, and all opinions that depend upon it, fail each of the four Rule 702

22 requirements. First, the opinions are based on spoon-fed facts rather than "the expert's scientific,

23 technical, or other specialized knowledge." Fed. R. 702(a). The opinions are not "based on

24 sufficient facts or data" because Dr. Leonard has no idea how the information was generated or

25 on what it was based. Fed. R. Evid. 702(b). The opinions are not the "the product of reliable

26 principles and methods." Fed. R. Evid. 702(c). Relying on unverified information from a biased

27 source with no knowledge of how it was prepared is not the type of rigorous analysis one would

28 expect from an expert. Moreover, unknown people at Google, who have every incentive to reach

1  particular results, used unknown "principles and methods" to produce Exhibit 2b.  For the same

2  reason, Dr. Leonard cannot know whether the unknown Google employees "reliably applied" any

3  "principles and methods" in creating his Exhibit 2b.

4        Dr. Leonard should not be permitted to rely on Exhibit 2b as a basis for his expert

5  opinions.  Dr. Leonard, for example, relies on Exhibit 2b as an input for a regression analysis to

6  determine whether Java helped Android developers develop apps more quickly.  Leonard 1st Rpt.

7  ¶ 115.  He concluded from his regression analysis that "the data are not consistent with the claim

8  that Java makes Android app development easier."  *Id.*  Because the Exhibit 2b inputs to his

9  analysis are unreliable, so too is the output.

10        Dr. Leonard also relies on Exhibit 2b for his opinion that Java was unimportant to the

11  Android app ecosystem.  The only basis for this opinion is Exhibit 2b itself: "Of the 188 apps on

12  the list for which the language can be determined, 162 were written in C/C++."  Leonard 1st Rpt.

13  ¶ 76.  Again, because the underlying facts come from an unknown source and cannot be tested or

14  verified, this opinion is unreliable.

15        Google also should not be permitted to use Dr. Leonard as a mouthpiece to inject the

16  untested, unverified hearsay "facts" contained in Exhibit 2b into this case.  Oracle was unable to

17  test the veracity of those facts during fact discovery because Google did not produce the

18  spreadsheet or the underlying data during that portion of the case.  Oracle never laid eyes on

19  Exhibit 2b until it appeared in Dr. Leonard's report well after the close of fact discovery.  And

20  Oracle could learn nothing about the reliability of the information during expert discovery

21  because Dr. Leonard had no knowledge as to how Exhibit 2b was generated.  For the same

22  reasons, Oracle will be unable to test at trial the truth of the facts asserted through Exhibit 2b,

23  which appears to have been prepared by Google solely for purposes of litigation and spoon-fed to

24  Dr. Leonard as a way of bypassing the Federal Rules of Evidence prohibition against hearsay and

25  the disclosure requirements of the Federal Rules of Civil Procedure.

26        This Court has in at least two other cases struck such spoon-fed facts and analysis from an

27  expert's opinion when they come unverified from a potentially biased source.  *Therasense, Inc.*,

28  2008 WL 2323856, at *1 (striking "spoon-feeding of client-prepared and lawyer-orchestrated

'facts' to a hired expert who then 'relies' on the information to express an opinion"); *Geo. M. Martin Co.*, 2008 WL 2008638, at \*1 ("Expert did not conduct survey. Instead, it was spoon-fed to expert by counsel and client. Usage is fact-based, not for expert opinion. Important factual points should not be proven through experts spoon-fed by wholly biased sources."). And in this case, the Court previously chastised Google for doing the same thing it is doing here: spoon-feeding its expert a spreadsheet that "no one seems to know much about the pedigree of" and that it was clear no one could vouch for. Ex. C, 5/03/2012 Hearing Tr. 2715:25-2719:25. The Court should do the same here and strike Exhibit 2b and any testimony and opinions relying on it.

## II.   SCHEDULE 2B IS UNRELIABLE FOR ADDITIONAL REASONS

Exhibit 2b is also an unreliable basis for Dr. Leonard's opinions because it does not "fit" the facts of this case. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) (rejecting expert opinion that was inconsistent with the facts of the case); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir. 2000) (same). The app data used in Exhibit 2b are from 2012-2013, well after the time Android had reached "escape velocity," TX 5167 at 2; indeed, after the first trial in this case. That timeframe is irrelevant to Oracle's contention that Google needed the Java APIs during the *2007-2009 period* when Android was fledgling and vulnerable. Dr. Leonard's reliance on Exhibit 2b thus fails to rebut Oracle's claim regarding the Java APIs' importance. As Dr. Kearl noted, app availability *ex ante* is what drove acceptance of the Android platform, and Exhibit 2b focuses on what apps were important *ex post*. *See* ECF No. 1625-3 n.5. Exhibit 2b also is misleading, given the question Dr. Leonard is trying to address, because the list of apps it contains is not a representative selection of apps: almost all of the apps appear to be games, which are by nature more likely to be written in C++ than other apps. *See* Ex. D, Rutledge Depo. 34:16-22; 75:11-15. For these additional reasons, Dr. Leonard should not be permitted to use or rely upon Exhibit 2b at trial.

## CONCLUSION

For the reasons set forth above, the Court should exclude Dr. Leonard's Exhibit 2b to his opening report and all testimony and opinions relying in whole or in part on this Exhibit.

| | |
|---|---|
| Dated: March 24, 2016 | Respectfully submitted, |
| | Orrick, Herrington & Sutcliffe LLP |
| | By: */s/ Vickie Feeman* |
| | Vickie Feeman |
| | Counsel for ORACLE AMERICA, INC. |