Volume 11

Pages 2229 - 2264

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

ORACLE AMERICA, INC.,               )
                                    )
            Plaintiff,              )
                                    )
  VS.                               )   No. C 10-3561 WHA
                                    )
GOOGLE, INC.,                       )
                                    )
            Defendant.              )
_____)   San Francisco, California
                                        Tuesday, May 24, 2016


**_TRANSCRIPT OF PROCEEDINGS_**

**_APPEARANCES_**:

**For Plaintiff:**              ORRICK, HERRINGTON & SUTCLIFFE LLP
                               The Orrick Building
                               51 West 52nd Street
                               New York, New York 10019
                        BY:  **PETER A. BICKS, ESQUIRE**
                             **LISA T. SIMPSON, ESQUIRE**

                               ORRICK, HERRINGTON & SUTCLIFFE LLP
                               777 South Figueroa Street, Suite 3200
                               Los Angeles, California  90017-5855
                        BY:  **GEOFFREY GAVIN MOSS, ESQUIRE**
                             **MICHELLE O'MEARA, ESQUIRE**


(Appearances continued on next page)


Reported By:  Katherine Powell Sullivan, CSR #5812, RMR, CRR
              Official Reporter - U.S. District Court

```
 1   APPEARANCES (CONTINUED):

 2   For Defendant:          KEKER & VAN NEST
                             633 Battery Street
 3                           San Francisco, California  94111-1809
                        BY:  ROBERT A. VAN NEST, ESQUIRE
 4                           CHRISTA M. ANDERSON, ESQUIRE
                             DANIEL PURCELL, ESQUIRE
 5                           EUGENE MORRIS PAIGE, ESQUIRE
                             STEVEN P. RAGLAND, ESQUIRE
 6
                             KING & SPALDING LLP
 7                           1185 Avenue of the Americas
                             New York, New York 10036-4003
 8                      BY:  BRUCE W. BABER, ESQUIRE

 9

10   Also Present:           Dew Chung
                             System Technology Administrator
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **Tuesday - May 24, 2016**                        **7:30 a.m.** |
| 2 | P R O C E E D I N G S |
| 3 | ---000--- |
| 4 | (The following proceedings were held in open court, |
| 5 | outside the presence of the jury:) |
| 6 | **THE COURT:** Welcome. |
| 7 | **MR. VAN NEST:** Good morning, Your Honor. |
| 8 | **MR. BICKS:** Good morning, Your Honor. |
| 9 | **THE COURT:** Be seated, please. |
| 10 | All right. I made a mistake on the time for Google. My |
| 11 | law clerk failed to read my notes correctly. Google used 873 |
| 12 | minutes, by my clock, leaving 27. |
| 13 | **MR. VAN NEST:** Thank you, Your Honor. |
| 14 | **THE COURT:** What did I give you on -- |
| 15 | **MR. VAN NEST:** You gave us 17. |
| 16 | **THE COURT:** I don't know how that happened. So that |
| 17 | was a mistake. |
| 18 | I think I'm correct on the other side. 883. So 883 would |
| 19 | be seven minutes left. So the Oracle calculation, I believe, |
| 20 | was correct. But the -- I made a mistake on the Google side. |
| 21 | All right. What else did you want to take up? |
| 22 | **MR. VAN NEST:** Thank you, Your Honor. |
| 23 | Two things. These are both related to a potential damages |
| 24 | phase. We have resolved the Dr. Reinhold issue by allowing him |
| 25 | to testify and asking Your Honor to read this very short |

PROCEEDINGS

 1  instruction to jurors related to that.  The parties have agreed

 2  to that.

 3       (Document handed to the Court.)

 4            **THE COURT:**  Just a moment.

 5       (Pause)

 6            **THE COURT:**  Fine.  Okay.  You're in agreement?

 7            **MR. BICKS:**  Yes.

 8            **THE COURT:**  All right.  We will do that.

 9            **MR. VAN NEST:**  The other issue, Your Honor, pertains

10  to trying to simplify a damages phase if we need one.

11       And Google is willing to offer a stipulation limited to

12  this damages phase, if one occurs, to simplify issues for the

13  jury.

14       The stipulation would be that if and when Oracle ever

15  elects a statutory damage remedy, we would agree that the

16  amount to be paid is the maximum under the statute, which would

17  be $150,000 per copyrighted work, for a total of $300,000.

18       The stipulation would be without prejudice to people

19  putting on evidence after the damages phase, in a phase three

20  remedies phase or for attorneys' fees.  But the idea of it is

21  to take out a lot of the clutter that's in the damages phase

22  now, as a result of this so-called election.

23       By that I mean, we wouldn't have willfulness evidence or

24  argument in phase two.  We would focus on the numbers and the

25  damages.  And Google would be bound, if -- if there is an

1  election at any time by Oracle, we agree that they can elect

2  and they get the full amount, which would obviate the need to

3  prove willfulness in the damages phase, and greatly simplify

4  the jury task, and greatly simplify the questions on the form,

5  and greatly simplify the evidence.

6        **THE COURT:**  All right.  What does Oracle say to that?

7        **MR. BICKS:**  Can I -- Your Honor, can I have an

8  opportunity to evaluate it?  This is the first -- he just

9  mentioned it to me a couple of seconds ago.

10       **MR. VAN NEST:**  I'm not asking for their stipulation,

11 Your Honor.  It would be -- this would be unilateral on

12 Google's part.

13     I certainly have no problem with Mr. Bicks evaluating it.

14 And I hadn't mentioned it to him before this morning.  But it's

15 not something I'm asking them to stipulate to.  It's something

16 that we're offering --

17       **THE COURT:**  -- a motion that all of those issues be

18 taken away based on the provisos that you stipulated to.

19     I don't know.  This is brand-new to me.

20     So, Mr. Bicks, when you get a chance -- when can you

21 respond on this?

22       **MR. BICKS:**  Can we have until tomorrow morning?

23       **THE COURT:**  I think so, yeah.  I think so.  Because

24 it's unlikely that we're going to get a verdict today, in my

25 judgment.  But who knows.

**PROCEEDINGS**

1    We haven't even taken in the computer cart yet because I

2    haven't gotten both sides to tell me it's okay.  So you should

3    know that the computer cart is not in there.  The two

4    lawyers -- one lawyer on each side has not yet told us it's

5    ready to go.

6          **MR. BICKS:**  I understand we're working on that, Your

7    Honor.

8          **MR. VAN NEST:**  This is all about loading source code.

9    This is kind of crazy.

10         **THE COURT:**  I don't understand why we're doing that.

11         **MR. VAN NEST:**  I don't either.

12         **THE COURT:**  We overloaded the system so much that our

13   computer broke.

14    Why are we putting source code on there?  Do we expect the

15   jury to read source code?  I never knew that was going to

16   happen.

17    Anyway, the computer cart is not in there because I

18   believe Oracle is responsible for those exhibits having

19   overloaded our system.  And we can't take it in there until

20   you -- I understand you're working on some fix, separate drive.

21    You're going to make it so complicated that the jury can't

22   use it.

23         **MR. VAN NEST:**  Could we put it in there now, without

24   that on there, and just get it so they have it to start?

25         **THE COURT:**  I'm not going to put it in there unless

 1  both sides agree.  I would be willing to bring the jury out

 2  here and explain what's going on.  But I'm not willing to send

 3  in stuff that is not agreed to.

 4         MR. VAN NEST:  In other words, my point is, I don't

 5  see any way in the world the jurors are going to read source

 6  code.  And our paralegals were here until all hours yesterday

 7  while they were trying to load it.  It doesn't make any sense.

 8         MR. BICKS:  Your Honor, I confess what I'm about to

 9  say, I'm not an expert on this, but I gather it's been solved.

10  And here's a hard drive that just needs to be plugged in.  And

11  I think Ms. O'Meara told me we solved the problem; I gather,

12  coordinated with them.

13         THE COURT:  Is that agreed to?

14         MR. VAN NEST:  That's fine with us.

15         THE COURT:  All right.  So if I just send that thing

16  into the --

17         MR. BICKS:  I think so, yeah.

18         THE COURT:  So the jury is going to know how to use

19  it?  Is there an index anywhere of what's on the drives, for

20  the jury to look at?

21         MR. BICKS:  I believe so.

22         THE COURT:  You know or you believe?

23         MR. BICKS:  Well, let me check.

24         THE COURT:  I'm okay with this.  But I want you to

25  understand that the jury right now could come back with a

 1   verdict.  They don't have to look at a thing.

 2           **MR. BICKS:**  Right.

 3           **THE COURT:**  And if they come back with a verdict

 4   against one of you two, you cannot try to set it aside on the

 5   ground that the computer cart wasn't in there yet.  They have

 6   the right to say, "We're ready to go.  We don't need any

 7   computer.  We don't need to see anything more.  Here's our

 8   decision."

 9       They're a statutory body.  That's their right, even though

10   most juries would want to see everything or at least possibly

11   see everything and discuss it.

12       But I'm a little irritated that you lawyers are dragging

13   this out.  So --

14           **MR. VAN NEST:**  We're perfectly -- we agreed to it day

15   one.  I don't see a reason for it, but we agreed to it.  They

16   just haven't been able to load it.

17           **THE COURT:**  Hand the thing you both have agreed to, to

18   the clerk.  And then one of you describe it on the record what

19   it is you're handing to her.

20           **MR. BICKS:**  Yes.  It's marked, Your Honor, as Trial

21   Exhibit -- it's 9106 to 9111.  And it's a hard drive with a --

22           **THE COURT:**  All right.  We will send it into the jury

23   room with the cart.

24       Dawn, is the cart -- do both sides agree the cart is ready

25   to go in?

 1              **MR. VAN NEST:**  Yes.

 2              **MR. BICKS:**  Yes.

 3              **THE COURT:**  Okay.  So, Dawn, you can take it in with

 4     that.  You don't need to say a thing.  Just say, "Here's the

 5     cart and a hard drive," and let them figure it out.  But don't

 6     do that until we have finished up here.

 7         So, okay.  How else can I help the lawyers?

 8              **MR. BICKS:**  Could I just ask a question, Your Honor,

 9     for your thoughts, as we're thinking about the opening for the

10     damages phase, the thoughts on the role that Dr. Kearl is going

11     to play and whether or not he's someone we should be addressing

12     in our opening.

13              **THE COURT:**  It's up to you.

14         My plan is for the two sides to present their experts,

15     then Dr. Kearl to be presented by attorney Cooper.  And then

16     you all get to cross-examine him, and possibly even bring your

17     own experts back to rebut him.  That could even be possible.

18         So if you want to address him in your openings, that's

19     fine.

20              **MR. BICKS:**  Okay.  Thank you.

21              **MR. VAN NEST:**  Your Honor, related to that, I think

22     Your Honor is going to receive a letter this morning from

23     Mr. Cooper, that we've all agreed to.

24         He's asked -- he's asking for not 24-hour notice, but

25     next-day notice on starting a damages phase.  What he's saying

PROCEEDINGS

```
 1   is, if a verdict comes in on a Tuesday, then I'd like to have
 2   at least the knowledge that we won't start the damages phase
 3   until Wednesday, the next morning.  If it comes in on
 4   Wednesday, we won't start until Thursday.
 5       We're fine with that.  That's what he's asking.  And he's
 6   going to send a letter in to Your Honor today, I think, along
 7   those lines, that the parties --
 8           THE COURT:  So if we got a verdict at 9:00 a.m., he
 9   wants us to waste the rest of the day?
10           MR. VAN NEST:  That's what he's suggesting, to get
11   Dr. Kearl --
12           THE COURT:  I'm not sure I will agree to that.
13       Fine.  He can send the letter.  Maybe we'll agree with
14   that.
15           MR. VAN NEST:  It's up to Your Honor.
16       I wanted you to know we're fine with it, both sides.  And
17   we expect it to come in.
18       Can I have just a moment with counsel?
19           THE COURT:  Uh-huh.
20       (Pause)
21           MR. VAN NEST:  I don't think we have anything else,
22   Your Honor.
23           THE COURT:  All right.  Dawn, can you go ahead and
24   take that cart and the -- what is that thing called, the hard
25   drive.
```

1          THE CLERK:  Right.  I also have the physical exhibits.

2     So all of it will be going in now.

3          THE COURT:  So the physical exhibits aren't in there

4     yet either?

5          THE CLERK:  No, because I wanted to make sure all the

6     sleeves were in with the thumb drives.

7          THE COURT:  Have the lawyers vetted it?

8          MR. VAN NEST:  Yes.

9          THE COURT:  Both sides have vetted the exhibits?

10         MR. VAN NEST:  Yes.

11         THE COURT:  All right.

12         MR. VAN NEST:  Thank you, Your Honor.

13         THE COURT:  Have the instructions gone in, and the

14     verdict form?

15         THE CLERK:  Yes.

16         THE COURT:  Okay.

17         MR. VAN NEST:  Thank you.

18         THE COURT:  I guess that's it.  Right?

19         MR. VAN NEST:  That's it.

20         THE COURT:  Okay.

21         MR. BICKS:  Thank you.

22     (Proceedings in recess during jury deliberations.  7:41 to

23     11:06 a.m.)

24     (The following proceedings were held in open court,

25     outside the presence of the jury:)

1          **THE COURT:**  Let's come to order now.

2      Here is the problem:  The clerk took the computer, court

3  electronic computer system, into the jury room.  And the

4  foreperson eventually replied that it didn't work.

5      What did they say?  What was the exact words, as best you

6  can recall?

7          **THE CLERK:**  They asked the CSO to come out and get me.

8      I went to the door.  They advised me that they were unable

9  to open whatever the documents were that have supposedly been

10 placed on the PC.

11         **THE COURT:**  On the PC or on the --

12         **THE CLERK:**  It's a jury PC, is how we refer to it.

13         **THE COURT:**  So they could not open any of it?

14         **THE CLERK:**  Just specific files.  The source code

15 files.  9100 through --

16         **THE COURT:**  Those are the ones that they could or

17 could not open?

18         **THE CLERK:**  They could not open those specific ones.

19     The others, apparently, I don't know.  I didn't ask about

20 opening any other ones.  But those were the ones specifically

21 they could not open.

22     They did not tell me they tried all of them.  They just

23 said "source code."

24         **MR. BABER:**  Your Honor.

25         **THE COURT:**  Yes.

1          **MR. BABER:**  I thought Oracle said this morning the

2    9100s were the ones on the external drive, not the ones on the

3    computer itself.

4          **MS. O'MEARA:**  There are some on both.

5          **MR. BABER:**  The 9100s?

6      (Counsel conferring out of hearing of the court reporter.)

7          **THE COURT:**  You better come up here.  The court

8    reporter won't be able to hear you.

9          **MR. BABER:**  I don't know, Your Honor, because I

10   haven't been involved in any of this loading.

11         But from what I understood this morning, what Oracle said,

12   I thought, was that 623, which I think is the whole big source

13   code platform work, is on the computer; but they had moved to

14   the external drive the 9100 series.

15         **THE CLERK:**  Partial.

16         **MR. BABER:**  Partial.  Then I'm --

17         **THE CLERK:**  9106 through 9111 is on the hard drive.

18         **MR. BABER:**  Those are the ones the jury can't open?

19         **THE CLERK:**  I don't know specifically.  Just they

20   won't open.

21         **THE COURT:**  It's not like an interrogation where we

22   quiz them on exactly what happened.

23         All right.  So, anyway, so you heard what the clerk -- so

24   then the clerk called up our IT guy, Dew Chung.

25         So tell us, can you tell us what you think the problem is?

1   Get over here close enough so that they can hear you and the

2   court reporter can take down what you say.

3        **MR. CHUNG:**  I'm not sure what the jury is supposed to

4   do with these files.  It's just a bunch of source code.  So

5   they're not videos or audio files.

6        I'm not sure --

7        **THE COURT:**  Okay.  That's a different question.  We'll

8   come to that in a minute.

9        I thought there was supposed to be a video file.  I didn't

10  know it was source code files.  Be that as it may, are you able

11  to open the source code files?

12       **MR. CHUNG:**  They're just program files.  So you can

13  look at the files, but you just can't do anything with them.

14       **THE COURT:**  Wait a minute.  The clerk told me that you

15  couldn't even open them and that you needed some kind of

16  special program, which is not on there, in order to access

17  them.

18       So that's not correct?  Or is that correct?

19       **MR. CHUNG:**  It's just the system files.

20       **THE COURT:**  What?

21       **MR. CHUNG:**  I'm not sure why it's on the computer in

22  the first place.

23       **THE COURT:**  Because the case has something to do with

24  source code.  Maybe the jury wants to look at it.  I don't

25  know.  The lawyers put it into evidence.

PROCEEDINGS

```
 1         MR. CHUNG:  Let's --

 2         THE COURT:  Are you able to access the source code?

 3         MR. CHUNG:  You can open and look at the file -- I

 4   mean, you can browse through the files.

 5         MR. BABER:  That's what they're supposed to be able to

 6   do, is open the file and see the source code, and scroll down

 7   through it if they want to.

 8         MR. CHUNG:  You can browse through the folders, but

 9   that's about all.  I mean --

10         MR. BABER:  And there are also supposed to be a couple

11   of short videos.

12         THE COURT:  We've got you right here.  Show us some of

13   the source code.  We've got the machine here.  Let's see if you

14   can make it work.

15         MR. CHUNG:  They can browse through the folders.

16         MR. BABER:  623.

17      (Counsel confer with the court's System Technology

18   Administrator Dew Chung.)

19         THE COURT:  The court reporter will not take down all

20   you over there mumbling with each other.  She can't hear.

21      (Counsel confer with the court's System Technology

22   Administrator Dew Chung.)

23         THE COURT:  You have to remember this is going to the

24   Court of Appeals.

25         MR. CHUNG:  Sure.
```

PROCEEDINGS

 1          **THE COURT:**  This court reporter has to take down your

 2    words, Dew.  So say it clearly now.  What's the problem?

 3          **MR. CHUNG:**  The problem is the files are hidden within

 4    a lot of folders.  And they need a reader to read these code.

 5    So we have to associate the reader to these code, which we just

 6    did.

 7          **THE COURT:**  Is that easy or hard?

 8          **MR. CHUNG:**  It's easy as long as they can browse

 9    through the files.

10          **THE COURT:**  Well, how come -- if it's so easy, how

11    come they couldn't do it?

12          **MR. CHUNG:**  Well, it's very hidden in a structure of

13    folders.  So they have to browse to the files and navigate

14    through the folders.

15          **MR. BABER:**  If I could just explain a little bit, Your

16    Honor.

17       Okay.  And you do it, because I don't want to touch it;

18    right.  Just click on this one.

19       There is one folder.  You open it up on the desktop or on

20    the drive.  There's a folder which says "623"; right.  623 is

21    the big exhibit with all the source code for the whole Java

22    platform.

23       When you open it up, there's a folder.  You open that up,

24    there's another folder.  You open that up, there's four more

25    folders.  And they've got to pick the right one.

PROCEEDINGS

1    So then you pick the one you want.  And then there's 12

2    more folders.  You keep on going, folder to folder to folder to

3    folder, to find the specific file of source code.  At least in

4    this exhibit.

5         **THE COURT:**  That's not the way it normally works.  The

6    way it normally works, in a simpler case, is they can click on

7    the videotape of the claimant playing tennis instead of being

8    in a wheelchair.

9         **MR. BABER:**  I think the videotapes are -- go back out

10   to the main menu of the drive listing.  Just click on one of

11   the videos and see if the video comes up.  You can see the

12   video clip.  Those work fine.

13   (Video playing)

14        **THE COURT:**  So those work as they should?

15        **MR. BABER:**  I'm sorry, Your Honor?

16        **THE COURT:**  The video work, the one you just clicked

17   on, worked as it should?

18        **MR. BABER:**  Exactly.

19        **THE COURT:**  So which is the one that's the problem?

20        **MR. BABER:**  Well, it looks like in this index there's

21   four videos, one Excel spreadsheet, and then seven folders that

22   presumably have source code in them.

23        **THE COURT:**  The same problem for all seven folders?

24        **MR. BABER:**  Click on one of these 9100, please.

25   Okay.  That one we opened, you have 2, 4, 6, 8, 10, 12,

1    14, 16, 18, 20 -- 20 or so folders and another file of some

2    unknown type.  I can't even tell you what it is.  So if I

3    wanted to look at a source code file that's in here, I would

4    have to just start opening folders to see where it might be.

5           THE COURT:  All right.  We have two choices here.  We

6    can -- assuming we're going to send this into the jury room at

7    all, we can send in detailed instructions so that they can get

8    at the source code.  You lawyers would have to agree on that

9    step by step.  Type it up, and we'll send that in.

10          I suppose, alternatively, we could have the jury come back

11   out and Dew could do a demonstration of how to do it.  I think

12   that's a little irregular there, in the middle of their

13   deliberations now, if we bring them out to give them a tutorial

14   on how to work our equipment when it's our own fault.

15          You lawyers should not have done this to the jury.  You

16   should have tested it out yourselves, to see what the problems

17   were.

18          Or we can just say to the jury forget everything that's on

19   the machine, we give up.

20          MR. BABER:  The videos are on there, too, Your Honor.

21          THE COURT:  I know you've got videos on there.

22          You all have sabotaged the system so bad that I don't know

23   what to do.

24          Let me hear from the lawyers.  What are your solutions?

25          MS. ANDERSON:  Your Honor, for Google, the source code

**PROCEEDINGS**

1  aren't files that we put in evidence.  These are materials that

2  Oracle moved in on Monday morning.

3      We're perfectly fine if the Court prefers that this not go

4  to the jury because of the complications of it.  But, you know,

5  we weren't the ones who moved that in evidence.

6          **THE COURT:**  I'm sorry, you were or you weren't?

7          **MS. ANDERSON:**  Google did not move in those huge

8  source code files.  These were things Oracle moved in Monday

9  morning.

10          **MR. MOSS:**  They were part of a stipulation, Your

11  Honor.  ECF 1901.  So the parties agreed this would be part of

12  the record.  And we can give instructions --

13          **THE COURT:**  You know what you can do?  You can go

14  print it out.  That would be part of the record.  You can print

15  out 15 million lines of code.  You have no absolute right to

16  put it on the court and overload the court system like that.

17          **MR. MOSS:**  I understand, Your Honor.

18      We can give the jury direct and specific instructions on

19  how to access the particular files at issue in this case; make

20  it easy for the jury.

21          **THE COURT:**  You can write that out?

22          **MR. MOSS:**  Absolutely, Your Honor.

23          **THE COURT:**  The instructions need to say that the

24  source code is complicated.  Here are the steps, A, B, C, D.

25  And then for the videos it's simple; just click on the icon.  I

**PROCEEDINGS**

 1  think something like that ought to be said.

 2      All right.  Let me hear -- here's what I think should be

 3  done.  Let me make sure the Google side hears me.

 4      We write out clear-cut instructions for the source code

 5  and then everything else.  And then we send that back into the

 6  jury room.  All right.

 7      Does that work?

 8          **MS. ANDERSON:**  We'll work on some language, Your

 9  Honor.  We can work on some language together.

10          **MR. MOSS:**  That will work.

11          **THE COURT:**  You need to get going on it because what

12  if they come back with a verdict?  And somebody is going to

13  say, "Well, they didn't look at my video."

14          **MR. MOSS:**  We'll get to work right now.

15          **MS. ANDERSON:**  We'll do it right now.

16          **THE COURT:**  Both sides are at fault here for not

17  having made the system -- in fact, I told you at the final

18  pretrial conference you had to pay attention to this computer

19  problem.

20      Okay.  I'm going to let you go work on the problem.  And

21  please let Dawn know when you have some language.  And then we

22  will reconvene.

23      Please stay handy.  Don't go too far.

24          **MR. MOSS:**  Thank you, Your Honor.

25          **MS. ANDERSON:**  We'll be right here, Your Honor.

1    Thanks.

2          (Proceedings in recess from 11:22 a.m. to 12:12 p.m.)

3          (The following proceedings were held in open court,

4    outside the presence of the jury:)

5              THE COURT:  Be seated, please.

6          So let's first deal with the computer.  Do we have it

7    ready to go into the jury room with instructions that both

8    sides agree to?

9              MS. ANDERSON:  Yes, Your Honor.

10         So the parties worked out some instructions for the

11   computer.  But one thing we did observe, in working this out

12   together, is that Exhibit 4108 is on the computer but should

13   not be.  The official copy is a printed copy that we understand

14   is in the jury room.

15         And so I think both parties agree 4108 should come off the

16   computer.

17             THE COURT:  How do you do that?  I don't know how to

18   make it come off.

19             MR. MOSS:  We can just delete it, Your Honor.  From a

20   technological, it's easy to do.  And the parties agree we can

21   just delete it.

22             THE COURT:  Both sides agree?

23             MS. ANDERSON:  Yes, with the assistance of the Court's

24   technology person.

25             THE COURT:  Dew, give them a hand and delete that

PROCEEDINGS

1    exhibit.

2            **MR. MOSS:**  Thank you, Your Honor.

3            **MS. ANDERSON:**  We are printing a copy of the

4    instructions the parties thought would be acceptable.

5        Would you like us to read it to you?

6            **THE COURT:**  You shouldn't have your name on it.

7            **MS. ANDERSON:**  We're printing a blank one for you.

8    Printing a clean, blank one for you, Your Honor.

9            **MR. MOSS:**  And 4108 is now removed from the computer.

10           **THE COURT:**  I think it works.  I mean, I take your

11   word that it works.

12           **MS. ANDERSON:**  Thank you, Your Honor.

13           **MR. MOSS:**  Your Honor, the source code file should

14   open in a form the jurors understand.

15           **THE COURT:**  Look over there and see.

16       Dew, did you take that exhibit off?

17           **MS. ANDERSON:**  Not yet.

18           **MR. CHUNG:**  Yes, Judge.  I removed that.

19           **MS. ANDERSON:**  Oh, it's --

20           **MR. MOSS:**  Yeah.

21           **MS. ANDERSON:**  And out of the deleted folders as well?

22           **MR. CHUNG:**  Yes, I emptied the recycling bin.

23           **MS. ANDERSON:**  Thank you so much.

24           **MR. CHUNG:**  You're welcome.

25           **MR. MOSS:**  Appreciate it.

PROCEEDINGS

1          **THE COURT:**  Have you read these instructions?

2          **MR. CHUNG:**  No, I haven't.

3          **THE COURT:**  Read them real quickly and tell me if you

4     think they're going to work.

5          Meanwhile, have the lawyers looked at this other note from

6     the jury?

7          **MR. BICKS:**  Yes, I have, Your Honor.

8          **THE COURT:**  I'll read it out loud.

9          Ms. Yasumoto, who is our lawyer and also our foreperson,

10    asked the following question:

11             "Can jurors take their handwritten notes, notepads,

12         home with them each night?"

13    I think the answer should be yes.

14         **MR. BICKS:**  Right.  We had talked about that with the

15    Court before.

16         **THE COURT:**  Any objection?

17         **MS. ANDERSON:**  Your Honor --

18         **MR. BICKS:**  No.

19         **MS. ANDERSON:**  -- Google objects.  We think the jurors

20    should deliberate together and consider these issues together.

21    So we would object to --

22         **THE COURT:**  That's not deliberating.  Just reading

23    your own notes is not deliberating.

24         **MS. ANDERSON:**  Well, they are now in the deliberation

25    phase.  And their consideration of the issues, in our view,

1    should be done together as a group, as a full jury.

2       So our proposal is the answer to those questions should be

3    "No."

4       **THE COURT:**  So you're saying that when they come to

5    court each morning and are waiting for everyone to show up,

6    they can't even look at their own notes?

7       **MS. ANDERSON:**  Well, I don't think that was one of

8    their questions.

9       **THE COURT:**  It wasn't one of their questions, but if

10   you're not going to let them read their notes at home, why

11   would you let them read their notes before they start in the

12   mornings?

13      **MS. ANDERSON:**  Well, if they pose that question, Your

14   Honor, I think we will, of course, consider it.  But the

15   questions they've posed now are questions that really raise

16   questions of deliberations.  And they should be considering

17   these issues and discussing them and evaluating them together

18   as a jury.

19      **THE COURT:**  Do you have authority for your position?

20      **MS. ANDERSON:**  Not off the top of my head, Your Honor.

21   I would be happy to look for that.

22      **THE COURT:**  Let me give you the second question.

23      "Can the jurors review trial exhibits on their own if

24      they arrive early or want to stay late?"

25      **MS. ANDERSON:**  Our view, Your Honor, is the same as to

**PROCEEDINGS**

 1    all of the three questions posed.  The answer should be no to

 2    these jurors, to assure that they deliberate together.

 3          **THE COURT:**  All right.

 4       What's your view, Mr. Bicks?

 5          **MR. BICKS:**  I think on 2, I think we would have a

 6    similar view to that, Your Honor.

 7       I just thought on the notes, we had already discussed that

 8    with the Court and the jury.  And we said that they could take

 9    their notes home with them.  And we had already -- we had

10    already discussed that issue.

11       The Court had already told them they could take them home

12    over the weekend.  And so I thought on 1 we would stick with

13    what we talked about.

14       On 2, I think we did agree that when it comes to the

15    exhibits they should be deliberating together.

16          **THE COURT:**  All right.  We'll come back to that one.

17          **MR. BICKS:**  Yep.

18          **THE COURT:**  Number 3:  Take the jury instructions home

19    with them each night?

20          **MS. ANDERSON:**  And, again, Your Honor, we think they

21    should deliberate together.  So our proposal is they should be

22    told "no," to assure they deliberate together.

23          **MR. BICKS:**  And I think we would agree with that.

24          **THE COURT:**  Well, all right.  I want to come back to

25    this for a second.

**PROCEEDINGS**

1    So you two both said "no" on numbers 2 and 3.  And then on

2  the handwritten notes you say they should not -- you say,

3  Google, don't take them home at night.

4    And, you know, it's not even evidence.  It's just their

5  own handwritten notes.

6         MS. ANDERSON:  Understand, Your Honor.  However, they

7  are now in the phase of the case where they are deliberating

8  the questions of the case.  They should do it together.

9    And having the notes at home with them may invite them to

10 engage in the deliberation process separately from their fellow

11 jurors.

12         THE COURT:  No, no.  I mean, that would be wrong.  I

13 would tell them not to do that.  I have told them not to do

14 that.

15   What they would do is read their notes silently at home so

16 that they can better understand what the evidence was.  They

17 wouldn't be deliberating with anyone else.

18         MS. ANDERSON:  Well, it --

19         THE COURT:  What if they think about the case while

20 they're driving home?  They think about it.  Are you going to

21 prevent them from doing that?

22         MS. ANDERSON:  Of course not, Your Honor.

23         THE COURT:  I'm very suspicious.  You must think

24 you're going to lose this case.

25         MS. ANDERSON:  No, Your Honor.

1          **THE COURT:**  Really, I think this is shocking.

2          **MS. ANDERSON:**  Well, Your Honor, we think it's very

3     important.  And this principle of jurors deliberating together

4     is a very important one.

5          **THE COURT:**  I'm going to give you an example with a

6     different jury in another case that had a lot of documents.

7     One day, I eventually learned, the jury devoted the entire day

8     to silently everyone got a chance to read any document they

9     wanted.  They didn't talk about the documents.  They --

10    somebody said, Give me Exhibit 31.  Give me Exhibit 5320.

11         So each of them got to read whatever they wanted.  And

12    then later, the next day, they would bring up whatever they

13    thought was important.  But they didn't talk about each one

14    that they read.  They each got to read whatever they wanted to

15    read from the exhibits.

16         Now, under your view of what deliberations are, that would

17    be bogus.  They couldn't do that.

18         **MS. ANDERSON:**  Your Honor, I think both parties agree

19    here that, for example, bringing home the jury instructions

20    would not be a good idea, given the deliberative process.  And

21    I don't see any meaningful distinction between preventing the

22    jury from doing that and preventing them from bringing home

23    their notes.

24         Because the principle at issue here is when they are

25    deliberating in their mind how they want to come out in this

1   case, they should be doing it together.  And I think that

2   having detailed notes at home, that they're going over outside

3   of the presence of their fellow jurors, invites separate

4   deliberations.  And that's our concern.

5          **THE COURT:**  Well, I can tell them not to deliberate

6   with anyone else.  They know that.

7       This is one of the best juries in the history of our

8   courthouse.  They've been here early.  They're not going to

9   deliberate with somebody else.  That is a fallacious argument.

10      What you don't want them to be able to do is read their

11  notes, go back through their notes.

12         **MS. ANDERSON:**  That's not the issue, Your Honor.

13      And the point of having jurors deliberate together is so

14  they have the benefit of each other's views as they come to a

15  conclusion as a jury.  And going over it alone in detail, which

16  is what those notes will invite, encourages the potential for a

17  problem with the deliberative process.  That's our concern.

18      It's the same reason why Oracle doesn't want to have them

19  bring home the legal instructions.  It's the same principle.

20         **MR. BICKS:**  Well, just to be clear, I'm just trying to

21  be consistent and fair.

22      We discussed the notes already with the Court.  And we

23  said it was okay for the jurors to have their notes and to look

24  at them.  And yesterday the jury -- they started their

25  deliberations yesterday; right?  So what happened last night?

1          We told them they could take their notes home.  And that's

2     what everybody said.  Seemed to be a common sense idea, what

3     happened during the case.  And now we're changing the rules.

4     And I don't see that it makes a lot of sense to do that.

5          **THE COURT:**  Okay.  I want to say something about this.

6          The lawyers must remember that the jury is a statutory

7     body.  And they -- it's not just some handpicked dream team

8     that you lawyers get to work on.

9          They have a statutory duty to decide the case.  And

10    however they want to do it, as long as they don't get

11    extraneous information, and they come to a unanimous verdict,

12    that's their -- they don't have to deliberate at all.  They

13    could go in there and say, "Everyone is going to read the

14    documents for the next three days, and then we'll vote."  And

15    if they all vote the same way, they don't have to say a word to

16    each other.

17         It's up to the jury to decide how they deliberate.  It's

18    true, judges give them guidance; try to tell them not to be a

19    holdout, so forth; listen to the other jurors.  Of course, we

20    say all of those things.

21         But the jury is a statutory body that has the right to

22    decide how it's going to -- they could go in there and not

23    deliberate at all, and say, "Let's take a straw vote.  And then

24    everyone who's for Oracle raise your hand or not raise your

25    hand."  And let's say it happens to be unanimous right off the

PROCEEDINGS

1   bat.  That's as good a verdict as if they deliberate for three

2   weeks.  It's as good a verdict.  It's up to them how they want

3   to go about doing their job.

4        So for us now to -- it's true, they're being courteous in

5   asking us.  But I feel, as a judge, a responsibility to respect

6   the role of the jury and not hamstring them just because the

7   lawyers both agree that we should.

8        So here's what I want to do:  I'm going to tell them, For

9   the time being, don't do any of these things because the

10  lawyers can't agree or the -- I don't know if I'll tell them

11  that.  I'm just going to say, Don't do any of these things, and

12  I'll give you an answer in the morning.

13       But overnight you have to brief this.  And the fact that

14  you two agree on number 2 and 3 does not matter, because I feel

15  a duty to protect the integrity of the jury process.

16       So you need to come up with some case law.

17            MR. BICKS:  Can I just ask the Court, I mean, have you

18  seen in your experience that they take jury instructions home?

19  I just honestly haven't seen that before.

20            THE COURT:  I don't think anyone has ever asked.  I

21  assume they have.  Why shouldn't they?  We give them to them to

22  look at.

23       What is the harm in letting them read jury instructions at

24  home so they can better understand them?

25       If it really would lead to them talking it out with some

 1   member of the family, I accept that.  That would be a problem.

 2   But this jury will not do that.  And you always have that risk.

 3   And you tell them not to do it.  I believe they will honor

 4   that.

 5          **MR. BICKS:**  I mean, that would be -- when you

 6   mentioned it, because I have never seen this, that would be my

 7   instinct of concern, if you take the jury instructions home,

 8   you know, the natural instinct is you want to talk to people

 9   about it.  But I hear what you're saying.

10          **THE COURT:**  Anyway, by midnight tonight you have to

11   file your briefs.  Because I'm on the verge of telling them

12   they can do all three of these things.  The fact that you

13   stipulate doesn't mean I'm not going to do it.

14      For the moment, I'm going to say -- do we have copies of

15   this?

16          **THE CLERK:**  Yes.  The parties have been given copies.

17          **THE COURT:**  I'm going to write the following out:

18          "Please don't do this yet.  I'll advise tomorrow."

19      How that's that?

20          **MS. ANDERSON:**  That's fine.  Thank you, Your Honor.

21          **THE COURT:**  Is that fine with you, Mr. Bicks?

22          **MR. BICKS:**  Yes.

23          **THE COURT:**  "Please do not do this yet.  I will advise

24   tomorrow."

25      Dawn, can you show this to counsel.  What is today?  Show

 1   this to counsel and let them approve that.  And then I will

 2   have you take that in.

 3        (Counsel confer off the record.)

 4             **MR. BICKS:**  Looks good.

 5             **MS. ANDERSON:**  Looks good.  Thank you, Your Honor.

 6             **THE COURT:**  All right.  So, now, let's go back to the

 7   computer.

 8        Is it ready to go in?

 9             **MS. ANDERSON:**  Do we have the --

10             **MR. PAIGE:**  It's being revised, Your Honor.  A couple

11   of typos to take care of.

12             **MR. MOSS:**  The computer is ready.

13             **MS. ANDERSON:**   The computer is ready.

14             **THE COURT:**  Dew, did you think the instructions are

15   clear enough?

16             **MR. CHUNG:**  These instructions should be able to help

17   the jurors to navigate and access the source code.  So these

18   instructions looks fine to me.

19             **THE COURT:**  Looks fine to you?

20             **MR. CHUNG:**  Yeah.

21             **THE COURT:**  Okay.  Thank you.  Then let's -- where is

22   your final copy?

23             **MR. MOSS:**  I believe it's printing, Your Honor.

24             **THE COURT:**  I don't see the printer.

25             **MR. PAIGE:**  We put it downstairs, Your Honor.

**PROCEEDINGS**

 1          **THE COURT:**  Okay.  Well, I would like to wind this up.

 2     I don't want to leave it hanging.  So I want to sit right here

 3     until we get the computer part working.

 4          Why don't we just cut and paste with the scissors?  Use

 5     the one you gave me.  I could just snip it right now, and we'll

 6     go copy it.  Put a handwritten change in there.

 7          Ms. Simpson is looking like it would be sinful to do that.

 8          What's wrong with that, Ms. Simpson?

 9          **MS. SIMPSON:**  Industrious idea.

10          **MR. RAGLAND:**  The problem is, it takes two elevators

11     to get where the printer is.

12          **MS. ANDERSON:**  If we had a Sharpie, I could --

13          **THE CLERK:**  I can cut and paste it.  I can reprint it

14     from the email.  I will just go ahead and cut and paste and put

15     it onto Word --

16          **MS. ANDERSON:**  That's the thing that had --

17          (Pause)

18          **THE CLERK:**  Okay.  You've got a copy.

19          **MS. ANDERSON:**  I've got the --

20          **THE CLERK:**  The numbers.  Okay.  Here, I have the

21     document.

22          **THE COURT:**  Do you have --

23          **MS. ANDERSON:**  We were fixing it for Your Honor.

24          **THE COURT:**  Is it already fixed?

25          **MS. ANDERSON:**  It's not fixed.

1           THE CLERK:  So here --

2           MR. MOSS:  It's a markup, Your Honor.

3           MS. ANDERSON:  There was a numerical typo between 72

4   and 75.  It should just be one number.  So down at the bottom

5   we wrote the correct numerical number.

6       Thank you.

7           THE CLERK:  And the number is at the bottom of the

8   page?

9           MS. ANDERSON:  That's the correct order, yeah.  It's

10  just numerical, the way it should be in that list of exhibits.

11          MR. RAGLAND:  I think we have the hard copy.

12          MS. ANDERSON:  We've got success here.

13          THE COURT:  Have both sides looked at it now?

14          MS. ANDERSON:  Yes.

15      Thank you very much.

16          THE COURT:  All right.  Let's --

17          MR. MOSS:  This looks fine, Your Honor.

18          THE COURT:  Give Dawn one to make part of the record.

19          MS. ANDERSON:  Okay.

20          THE COURT:  And then, Dawn, you and Dew take the

21  little cart, wheel it back to the jury room along with the

22  other -- are you taking the other note in?

23          THE CLERK:  Yes.

24          THE COURT:  Wheel in the computer thing.  And that

25  problem, we hope, is done.

1      Okay.  Anything more right now?

2           **MR. MOSS:**  No, Your Honor.

3           **MS. ANDERSON:**  I think that's it, Your Honor.

4           **THE COURT:**  Please file your briefs by midnight,

5      because I feel like you're intruding on the prerogatives of the

6      jury by both agreeing to make them do something that whoever

7      loses this case is then going to claim they didn't do a good

8      job because they didn't understand the instructions because you

9      wouldn't let them take them home at night.

10      I don't know.  It just -- it's just not -- I think you're

11      not being fair to the jury.  So you ought to think about this

12      and let me know by midnight.

13      Here, I'll give you another example.  What if under your

14      proposal there's only one copy of a hard-copy exhibit.  So is

15      one person -- they can't all read it at the same time.  Only

16      one person can read it.  What are the others supposed to do in

17      the meantime?  Read another document?  Well, if they're all

18      going to read different documents, they might as well read them

19      before they start talking.

20      And you can't stop them from thinking about the case as

21      they're driving home.  They'll be thinking about it.  Maybe

22      waking up at 2:00 a.m., like all of you have been doing, and

23      making a note to yourself.  "Oh, this is a good point."  You

24      wouldn't even let them do that.

25           **MS. ANDERSON:**  Your Honor, we're only addressing the

1   three.  But we will be happy to look and see if there's

2   authority on this to bring to the Court's attention as well.

3              **THE COURT:**  I think the problem is more profound than

4   just the three questions that they've asked, because we have to

5   answer those three questions by reference to what they can do

6   otherwise.  And you should think through a coherent strategy of

7   what it is that a statutory body like a jury is entitled to do.

8              **MS. ANDERSON:**  We will do that, Your Honor.

9              **THE COURT:**  For the moment, we told them no.  But I

10  think we should be telling them yes on all three of these

11  things.

12       Okay.  Are we done not for today but for right now?

13             **MS. ANDERSON:**  Yes.  Thank you, Your Honor.

14             **THE COURT:**  All right.  Thank you.

15       (At 12:34 the proceedings were in recess, while jury

16  deliberations continue.)

17                             -   -   -   -

18                  **CERTIFICATE OF REPORTER**

19       I certify that the foregoing is a correct transcript

20  from the record of proceedings in the above-entitled matter.

21  DATE:   Tuesday, May 24, 2016

22

23                    *Katherine Sullivan*

24       _____

25            Katherine Powell Sullivan, CSR #5812, RMR, CRR
                        U.S. Court Reporter