ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>          Plaintiff,<br>     v.<br><br>GOOGLE INC.<br><br>          Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S REPLY IN SUPPORT OF ITS RULE 59 MOTION FOR A NEW TRIAL**<br><br>Date: August 18, 2016 at 8:00 a.m.<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William Alsup |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   MARSHMALLOW/CHROME OS REQUIRES A NEW TRIAL ..................................... 1

    A.   Marshmallow/Chrome OS Is "Completely Different" From ARC/Welder ............ 2

    B.   Because Android Marshmallow Was An Accused Work At Trial, Orders Excluding Evidence Of Other Products Are Irrelevant ........................................... 3

    C.   Google's Discovery Misconduct Prejudiced Oracle At Trial ................................. 4

    D.   Google Offers No Explanation For Its 30(b)(6) Testimony .................................... 6

II.  EVIDENCE OF ANDROID'S HARM TO ORACLE'S MARKETS WAS IMPROPERLY LIMITED TO JUST MOBILE PHONES AND TABLETS .................... 7

III. MAZZOCCHI EVIDENTIARY RULINGS PREJUDICED ORACLE ............................. 9

IV.  BIFURCATING THE TRIAL PREJUDICED ORACLE .................................................. 12

V.   ERRONEOUS EXCLUSION OF KEY DOCUMENTS PREJUDICED ORACLE ......... 13

    A.   Google Offers Only Speculation To Rebut Uncontroverted Evidence That *Sun* Claimed Android Infringed Before The Suit Was Filed ................................ 13

    B.   Google Ignores That The Business Records Exception Makes Admissible Key Oracle Market Harm Documents .................................................................... 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aktiebolag v. Andrx Pharms.*,
   695 F. Supp. 2d 21 (S.D.N.Y. 2010) .................................................................................... 7

*Alameda Books, Inc. v. City of L.A.*,
   631 F.3d 1031 (9th Cir. 2011) ........................................................................................... 12

*Allflex USA, Inc. v. Avid Identification Sys., Inc.*,
   No. CV-06-1109-SGL, 2009 WL 8591843 (C.D. Cal. Oct. 30, 2009) ................................ 3

*Am. Modern Home Ins. Co. v. Gallagher*,
   No. 06CV1157, 2008 U.D. Dist. LEXIS 9523 (S.D. Cal. Feb. 7, 2008) ............................ 11

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ............................................................................................................ 5

*Davis v. Alaska*,
   415 U.S. 308 (1974) .......................................................................................................... 12

*Harper & Row Publ'rs, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) ............................................................................................................ 5

*Jones v. Aero/Chem Corp.*,
   921 F.2d 875 (9th Cir. 1990) ..................................................................................... 1, 3, 5

*Manning v. City of Auburn*,
   953 F.2d 1355 (11th Cir. 1992) .......................................................................................... 7

*Miller v. Fairchild Indus., Inc.*,
   885 F.2d 498 (9th Cir. 1989) ............................................................................................ 13

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164 (9th Cir. 2012) ............................................................................................ 5

*Oracle Am., Inc. v. Google Inc.*,
   750 F.3d 1339 (Fed. Cir. 2014) .......................................................................................... 7

*Pau v. Yosemite Park*,
   928 F.2d 880 (9th Cir. 1991) ............................................................................................ 10

*Rosebrock v. Beiter*,
   CV 10-01878, 2011 U.S. Dist. LEXIS 61758 (C.D. Cal. May 26, 2011) ......................... 11

*Ruvalcaba v. City of L.A.*,
   64 F.3d 1323 (9th Cir. 1995) .............................................................................................. 9

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
　　464 U.S. 417 (1984) ............................................................................................................5

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,
　　576 F.3d 1040 (9th Cir. 2009) ...........................................................................................15

*United States v. Crawford*,
　　239 F.3d 1086 (9th Cir. 2001) ...........................................................................................11

*United States v. Mazzarella*,
　　784 F.3d 532 (9th Cir. 2015) .............................................................................................12

*United States v. Parris*,
　　243 F.3d 286 (6th Cir. 2001) .............................................................................................11

*United States v. Presley*,
　　No. CR07-5058BHS, 2008 U.S. Dist. LEXIS 7841 (W.D. Wash. Jan. 16,
　　2008) ..................................................................................................................................11

*Wagner v. Cty. of Maricopa*,
　　747 F.3d 1048 (9th Cir. 2013) ....................................................................................13, 14

*Wharf v. Burlington N.R.R. Co.*,
　　60 F.3d 631 (9th Cir. 1995) .................................................................................................3

**Statutes**

17 U.S.C. § 107(4) ...........................................................................................................................5

**Rules**

Fed. R. Civ. P. 403 ........................................................................................................................12

Fed. R. Evid. 803(3) .....................................................................................................................14

Fed. R. Evid. 803(6) .....................................................................................................................15

**Other Authorities**

William W. Schwarzer, *Cal. Prac. Guide: Fed. Civil Proc. Before Trial* § 8:1720
　　(The Rutter Group 2015) .....................................................................................................7

Oracle is entitled to a new trial because evidence was improperly withheld in discovery and excluded from trial and because the trial on fair use was unfairly separated from damages and willfulness.  As discussed below, Google's opposition does nothing to undermine Oracle's request for a new trial.  Google's opposition often ignores the crux of Oracle's arguments, failing to address the prevailing legal standards and the prejudice Oracle suffered at trial.  This Court should grant Oracle's motion for a new, unbifurcated trial.

## I.    MARSHMALLOW/CHROME OS REQUIRES A NEW TRIAL

Google does not contest any of the underlying facts that Oracle relied on in its Motion to establish each of the elements for a new trial due to discovery misconduct.  Under the authority both sides agree controls, Oracle must show 1) "the verdict was obtained through … misconduct," 2) Oracle was "prevented [from] … fully and fairly presenting [its] case," and 3) Oracle was diligent in discovery while Google had knowledge or possession of information that it withheld.  *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878-79 (9th Cir. 1990); Opp. 6.

There is no dispute that information related to Google's Marshmallow/Chrome OS product was responsive to multiple discovery requests but nevertheless was withheld from discovery.  This alone is enough to establish misconduct.  *See Jones*, 921 F.2d at 879 (withholding discovery is misconduct whether intentional or merely accidental); Mot. 5-7.  Google does not contest Oracle's diligence in seeking information about Google's plans to put Marshmallow onto laptops and desktops.  Google does not disagree that it possessed information about Marshmallow/Chrome OS all along and that Google had been "secret[ly]" "working on [Marshmallow/Chrome OS]," yet did not disclose that information to Oracle.  Mot. 7 (quoting ECF No. 1998-9 (Ex. J) at 0:18-0:26).  Nor does Google dispute the evidence that an *accused* implementation of Android (Marshmallow)—which all agree contains nearly 11,500 lines of declaring code from Java SE 1.4 and 5.0, Tr. 1494:15-16 (stipulation of copying)—is being installed in millions of desktop and laptop PCs that compete for market share with computers running Java SE.  This evidence directly refutes Google's argument to the jury that "Android is not a substitute [because] Java SE is on personal computers; Android is on smartphones."  Tr. 2124:6-7 (Google Closing).

Instead, Google argues without citation to authority that "there was no reason, much less a

1  duty" to produce the requested information.  Opp. 1-2, 11.  The excuses Google offers fall flat.

2  Google had been working on Marshmallow/Chrome OS for months █████████ before

3  trial, and ██████████████ had been planning for Marshmallow/Chrome OS's release.  Mot.

4  6-7.  Google offers no explanation why it did not disclose this information ██████████,

5  in discovery responses and depositions in November and December, in supplemental responses

6  owed to Oracle in January and February, before the Court's *in limine* order on May 2, 2016, or

7  any other time prior to Google's May 19, 2016 announcement.

   **A.   Marshmallow/Chrome OS Is "Completely Different" From ARC/Welder**

9  Google concedes that though Oracle "sought discovery into *all* Google products incorpor-

10 ating the asserted 37 Java SE API packages at issue," Google chose not to disclose Marshmal-

11 low/Chrome OS.  Opp. 3 (emphasis added).  Google argues that its failure to disclose is not

12 misconduct because it disclosed a completely different product, ARC, with substantially different

13 functionality.  Opp. 3-4.  Google characterizes Marshmallow/Chrome OS as merely an "update"

14 of ARC, Opp. 2, but this contradicts Google's own public statements that ARC is "completely

15 different[]" from Marshmallow/Chrome OS, with "no connecting points between" the two, Mot. 3

16 (quoting ECF No. 1998-2 (Ex. C)).  In order to port Android apps to Chrome OS via ARC, engin-

17 eers must re-write the apps; otherwise, the apps will not run.  ECF No. 1995-6 (Ex. G) 197:4-11.

18 Indeed, many of the "over a million [Android] applications," *id.* at 196:21, "especially the Google

19 Play store," will not run on ARC, ECF No. 1998-9 (Ex. J) at 3:02-10.  By contrast, with

20 Marshmallow/Chrome OS, "most" of the over one million Android apps made available by

21 Google through its Google Play store "will work out of the box" on Marshmallow/ Chrome OS

22 "without any … changes."  *Id.* (Ex. J) 3:46-3:51, 11:04-11:06.  There is also a critical difference

23 between the product Google disclosed (ARC) and what it did not (Marshmallow/Chrome OS):

24 Significantly, unlike ARC, Marshmallow/Chrome OS contains "the whole Marshmallow API,"

25 *id.* (Ex. J) 9:24-27, which Google concedes copies the declaring code and SSO of the 37 Java SE

26 API packages, *see* ECF No. 1950 (Jury Instrs.) ¶ 20.

27 Google argues in opposition that it did not disclose the requested relevant information in

28 discovery because it unilaterally decided other information about ARC was close enough.  Such

- 2 -

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION FOR A NEW TRIAL

self-help is not permitted under the Federal Rules of Civil Procedure.  Google does not stand on any objection to Oracle's discovery.  Rather, Google concedes that it intentionally decided to withhold Marshmallow/Chrome OS from discovery.  Such conduct requires a new trial.  *Jones*, 921 F.2d at 879; *Wharf v. Burlington N. R.R.*, 60 F.3d 631, 638 (9th Cir. 1995) (reversing denial of new trial despite uncertainty that withheld evidence would affect the verdict).

### B. Because Android Marshmallow Was An Accused Work At Trial, Orders Excluding Evidence Of Other Products Are Irrelevant

Google argues that because the Court limited the evidence at trial to infringement of Java SE 1.4 and 5 by all versions of Android through Marshmallow, Google must have been permitted to selectively respond to and supplement responses to Oracle's discovery requests.  Google's argument fails for a number of reasons.

First, fact discovery closed on December 16, 2015, a month and a half before the Court issued its February 5, 2016 order limiting the scope of trial, ECF No. 1479, and six months before the Court's May 2, 2016 related *in limine* order, ECF No. 1781.  The 30(b)(6) depositions also occurred before the February 5, 2016 order.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ECF No. 1995-13 (Ex. S).  Google was therefore obligated to disclose Marshmallow/Chrome OS in discovery, as well as in supplemental disclosures before February 5 and further in disclosures prior to the Court's *in limine* ruling one week before the trial in May 2016.  *See Allflex USA, Inc. v. Avid Identification Sys., Inc.*, No. CV-06-1109-SGL, 2009 WL 8591843, at *4 (C.D. Cal. Oct. 30, 2009); Mot. 7.  It was improper for Google to withhold Marshmallow/Chrome OS from discovery in the hope it would win *in limine* relief later.  Google's unilateral decision usurped the function of the jury to decide whether use of an accused product, Android version Marshmallow, in laptops and desktops defeats Google's defense of fair use.

Second, the timing of the Court's February and May orders about Android Auto, TV, Wear, and Brillo is not the only thing that makes those orders inapposite.  Those orders should not have excluded from trial Android Marshmallow depending upon which device Marshmallow could be or was loaded.  Marshmallow was very much a part of the trial.  *See* ECF No. 1506 at 2

- 3 -

("Marshmallow shall be added to the named versions of Android to be in play at the trial."). As discussed above (at 1-2), Marshmallow/Chrome OS contains all of the APIs of Android Marshmallow, including nearly 11,500 lines of Oracle's declaring code and the SSO of 37 of Oracle's Java SE API packages. Tr. 316:15-22 (Court pre-instructing jury that "it has already been established that [Marshmallow] used … the declaring code and [SSO] of 37 Java API packages"); Tr. 1494:15-16 (reading stipulation regarding Google's copying to jury). By Google's own agreement, Android Marshmallow—no matter whether it is on phones, tablets, or computers—infringes unless Google's copying was a fair use. ECF No. 1950 (Final Jury Instrs.) ¶ 20.

Third, Google's argument that Marshmallow/Chrome OS would have been used at trial in the same manner as ARC lacks merit. ARC was not Android; it "couldn't pass Google's own Android Compatibility Test Suite," and an entire class of Android apps "wouldn't work with ARC." ECF Nos. 1998-2 (Ex. C) at 2 & ECF 1998-6 (Ex. G) at 196:22-23 (ARC never expanded past a "tiny, little subset" of Android apps). ARC was not a complete platform, but "an add-on plug-in … that you install" on Chrome OS. ECF No. 1998-24 (Ex. V) at 176:11-12. ▓▓▓▓ ECF No. 1998-6 (Ex. G) at 197:17-24 ▓▓▓▓). Because ARC is not Android, it had little relevance to Google's New Products motion and did not serve as a direct rebuttal to Google's claim at trial that "Android is not a substitute [because] Java SE is on personal computers; Android is on smartphones." Mot. 4 (citing Tr. 2124:6-7 (closing) and Tr. 309:23-310:4 (opening)). Marshmallow/Chrome OS, by contrast, would have been much more directly significant at trial because it is the "full Android stack" with "the whole Marshmallow API," ECF 1998-9 (Ex. J) 9:22-9:27, including the 37 Java API packages and thus all of Oracle's copyrighted declaring code and SSO. Had Oracle known about Marshmallow/Chrome OS and been able to use it at trial, it would have conclusively rebutted one of Google's core trial themes.

### C. Google's Discovery Misconduct Prejudiced Oracle At Trial

Google's expansion of Android through Marshmallow/Chrome OS to computers directly refutes Google's key theme on the fourth and most important fair use factor by showing that An-

1  droid is not limited to smartphones and will instead harm Oracle in a traditional market for Java
2  SE: personal computers.  The fourth factor considers harm to the actual or potential market for the
3  copyrighted work.  17 U.S.C. § 107(4); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464
4  U.S. 417, 451 (1984); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1181 (9th Cir. 2012).

5       Google concedes that Chrome OS "do[es]n't support Java" and thus that each Chrome OS
6  computer sold takes market share from operating systems that support Java SE, like Windows and
7  Mac OSX.  Mot. 4; *see* Opp. 10-11.  That Google is using Android Marshmallow as an app
8  platform on laptops and desktops instead of Java SE shows that Android is a "market replace-
9  ment" and Google's copying is therefore not a fair use.  *Campbell v. Acuff-Rose Music, Inc.*, 510
10 U.S. 569, 591 (1994) ("a commercial use … [that] serves as a market replacement" weighs
11 against fair use under factor four).  Moreover, the potential impact of Marshmallow/Chrome OS
12 on Java SE in this traditional market for Java SE is huge.  Not only is Chrome OS the #2 most
13 popular selling PC operating system in the US, its popularity is only increasing with consumers,
14 in schools, and with businesses.  Mot. 5.  Because Marshmallow/Chrome OS is certain to com-
15 pete with and harm the market for and value of Java SE, Google's copying therein is not a fair
16 use.  *See Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 566-67 (1985) ("Fair use
17 … is limited to copying by others which does not materially impair the marketability of the work
18 which is copied"). Oracle was therefore greatly prejudiced that it could not make those points to
19 the jury due to Google's failure to disclose Marshmallow/Chrome OS in discovery.

20      Google responds not about the fourth factor but about the first.  Google argues that even if
21 the jury had been informed about Marshmallow/Chrome OS, it reasonably could have accepted
22 Google's transformative argument.  Opp. 9.  Google's argument misunderstands the standard for
23 a new trial.  "[W]hen the case involves the withholding of information called for by discovery,
24 the party need not establish that the result in the case would be altered" to succeed on a new trial
25 motion.  *Jones*, 921 F.2d at 879.  A showing that the material merely has "*likely worth*" as trial evi-
26 dence" (or even would have "value as a tool for obtaining meaningful discovery") entitles the
27 movant to a new trial.  *Id.* (emphasis added).  As shown above, Chrome OS had at least "likely
28 worth" to factor four and may well have further persuaded the jury that Android is not actually

- 5 -

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION FOR A NEW TRIAL

1  transformative because it is used in the same contexts and for the same purposes as Java SE.

2  Indeed, Dr. Astrachan, the only technical expert Google offered at trial, testified that
3  Android includes "libraries [that] are designed specifically for the mobile platform, which is a
4  different platform from where the 37 [Java SE] API packages came from," *i.e.*, personal comput-
5  ers. Tr. 1228:20-22. As we now know, Dr. Astrachan's testimony was contrary to the evidence
6  Google withheld in discovery; Google is now installing "the whole Marshmallow API," including
7  those packages that are supposedly mobile specific, onto millions of laptops and desktops, ECF
8  No. 1998-9 (Ex. J) at 9:24-27. The same reasoning applies to Dr. Astrachan's testimony regard-
9  ing the supposedly mobile-specific implementing code, Tr. 1229:13-14, which Google is planning
10 to install onto laptops and desktops by the millions.

11 Evidence that Google intends to use Android on laptops and desktops in place of Java SE
12 is also contrary to the testimony of Google's economist Dr. Leonard that "the two products are on
13 very different devices … Java SE is on personal computers. Android … is on smartphones." Tr.
14 1898:2-4. Google fails to explain why Marshmallow/Chrome OS was not relevant to this critical
15 expert testimony that Google relied on in closing argument. Tr. 2124:6-7 ("Android is not a
16 substitute. Java SE is on personal computers; Android is on smartphones"). Evidence about
17 Marshmallow/Chrome OS would have proven key testimony from Google's only two testifying
18 experts in Phase One to be demonstrably false—as well as substantially supporting Oracle's case
19 on factors one and four. In short, the significance of the withheld evidence cannot be overstated.

20  **D.  Google Offers No Explanation For Its 30(b)(6) Testimony**

21 Finally, critically, Google offers no explanation why its witnesses failed to disclose during
22 discovery Google's plan to bring Android Marshmallow to Chrome OS, or why Google's
23 30(b)(6) witness testified that
24 " Mot. 6-7 (collecting record citations). Rather,
25 Google attempts to deflect the problem, saying it "is not *replacing* Chrome OS with the Android
26 operating system; instead, the Android application framework is being … run[] on top of the
27 existing Chrome OS stack." Opp. 5 (emphasis and quotation marks omitted).
28 What is clear is that

- 6 -

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION FOR A NEW TRIAL

1    Google knows when it started working on Marshmallow/Chrome OS, and it knows why it with-

2    held information regarding the project from discovery.  Yet Google does not offer a single declar-

3    ant to explain why pre-trial disclosure was not possible, relying instead only on attorney say so.

## II.   EVIDENCE OF ANDROID'S HARM TO ORACLE'S MARKETS WAS IMPROPERLY LIMITED TO JUST MOBILE PHONES AND TABLETS

There is no dispute that a massive amount of evidence of harm to the actual and potential markets for Java SE and its derivatives was barred from the jury after those markets were dismissed from the Supplemental Complaint and excluded *in limine*.  Mot. 7-14; *see* Opp. 12.  Google does not take issue with Oracle's conclusion that its own fair use case "was significantly undermined" as a result.  Mot. 10; *see* Opp. 12-13.  In fact, Google says nothing about any of the evidence catalogued in Oracle's Motion (at 10-14).  Rather, Google argues that allowing evidence of harm to markets other than mobile phones and tablets would violate the Federal Circuit's mandate.  Opp. 12-13.  But the Federal Circuit's mandate simply "remand[ed] Google's fair use defense for *further proceedings consistent with this decision*."  *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1381 (Fed. Cir. 2014) (emphasis added).  Allowing evidence of harm in those markets—even if they did require proof of infringement, which they did not—is *consistent* with that mandate.

Google's argument also ignores both the purpose of supplementing complaints generally and the procedural history of the Supplemental Complaint in this case.  Google wrongly suggests that "[t]he Court rejected Oracle's attempt to broaden the scope of the retrial."  Opp. 13.  That is not so.  This Court granted in full Oracle's *unopposed* motion to supplement its complaint.  In that motion, Oracle explained that "[t]he purpose of a supplemental pleading is to bring the action 'up to date' and to set forth new facts affecting the controversy that have occurred since the original pleading was filed."  ECF No. 1287 at 4 (citing William W. Schwarzer, *Cal. Prac. Guide: Fed. Civil Proc. Before Trial* § 8:1720 (The Rutter Group 2015); *Manning v. City of Auburn*, 953 F.2d 1355, 1359-1360 (11th Cir. 1992)).  Oracle explained that "[a] supplemental pleading is an appropriate way to update a case after an appeal to account for further infringement and related damages."  *Id.* (citing *Aktiebolag v. Andrx Pharms.*, 695 F. Supp. 2d 21, 26 (S.D.N.Y. 2010)).

1  That the case could and would be broadened with new facts and new markets without violating
2  the Federal Circuit's mandate was uncontroversial; when Oracle moved, Google did not oppose,
3  and the Court accepted the Supplemental Complaint.

4  Google next argues that Oracle somehow "conflate[d] specific products like 'Brillo' with
5  the versions of Android that are used in smartphones and tablets and which were the subject of
6  the first trial." Opp. 14. Google does not identify any other product that Oracle supposedly con-
7  flated with the versions of Android used on smartphones and tablets. The jury's verdict in the
8  first trial was not limited to phones and tablets; the jury found that the accused versions of An-
9  droid infringe, irrespective of the device or product in which they are installed. By Google's
10 agreement, the new Android versions also copy Oracle's declaring code and SSO and infringe
11 just as those versions at issue in the first trial did, subject to fair use. *Supra* 4. In any event, if
12 Google thought there was a problem with the allegations in the Supplemental Complaint, it
13 should have moved under Rule 12 to dismiss or for a more definite statement. Google filed no
14 such motion, choosing not even to seek leave to answer or to admit or deny the allegations in the
15 Supplemental Complaint.

16 Google also argues that "Oracle would still need to prove infringement."[1] Opp. 14. But
17 infringement by the accused Android versions (up through Marshmallow) *had been shown*
18 *already*, and all that was left was to show that the same versions were being used in these other
19 markets. That would not have been difficult to show—or controversial. Google itself does not
20 dispute that "[i]n all of the … markets [in Oracle's Rule 59 Motion], Android contains the 37
21 Java API packages," nor does Google dispute that "there's now one Android [Software Develop-
22 ment Kit] for all form factors." Mot. 14; *see* Opp. 14-15. That means the same thousands of lines
23 of copied code are performing the same functions in Android in every market, not just the phone
24 and tablet market.[2] All that said, even if infringement were an open question (which it was not),

---

[1] Google also rehashes its argument based on out-of-circuit precedent attempting to narrow the meaning of the word "use" under factor four. Opp. 13-14 (citing *Wright* and *Arica*). But the Court did not rely on that argument in its Order, ECF No. 1781, and rejected Google's narrow reading of factor four based on those cases in a related *in limine* order, ECF No. 1832 at 6-7.

[2] To moot Google's concern, Oracle had offered to show the accused versions of Android in various products through a very short summary-judgment motion, *see* ECF No. 1612-3 at 1 n.1; ECF No. 1461 at 1, but the Court declined.

- 8 -

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION FOR A NEW TRIAL

1  as Oracle explained in its opposition to Google's "New Products" motion *in limine*, harm in those
2  other markets was a consequence of Google's infringement in phones and tablets, as network and
3  ecosystem effects led consumers to purchase other products that interact with the infringing
4  phones and tablets they had already purchased.  *See* ECF No. 1612-3 at 1, 5-7.

5  Finally, though Google relies heavily on a district court's authority to manage cases, dis-
6  missing uncontested portions of an accepted pleading and carving up a plaintiff's case through *in*
7  *limine* orders, thus preventing the plaintiff from showing the full extent of the harm caused by the
8  defendant's conduct is not case management.  Market harm is the most important fair use factor.
9  Excluding such a large amount of market harm evidence severely prejudiced Oracle.  According-
10 ly, a new trial is warranted.  *See* Mot. 1 (citing *Ruvalcaba v. City of L.A.*, 64 F.3d 1323, 1328 (9th
11 Cir. 1995) (erroneous evidentiary ruling that prejudices movant requires new trial)).

### III.  MAZZOCCHI EVIDENTIARY RULINGS PREJUDICED ORACLE

Oracle's motion raised four independent arguments why the Court's treatment of Mr. Mazzocchi's testimony and email requires a new trial: **(1)** The most critical part of the email— "This makes us *already* doing illegal things (in fact, Android using Harmony code is illegal as well)"—should not have been redacted, Mot. 15-17; **(2)** Oracle was prejudiced by what the Court has recognized as an error in precluding Oracle from using the Mazzocchi email in its opening statement, Mot. 17-18; **(3)** the critical portion of the email should have been unredacted after Mr. Mazzocchi falsely testified that he did not believe Apache was "doing any illegal things," Mot. 18-19; and **(4)** Oracle should have been permitted to examine Mr. Mazzocchi on his current employment at Google to show bias in his present testimony, Mot. 19.  Google addresses only the first and fourth arguments, never disputing the errors in precluding Oracle from using the Mazzocchi email in its opening or that Mr. Mazzocchi's testimony under Google's questioning put at issue his views that Harmony and Android are, in his words, illegal.

All these limitations on Oracle's use of critical evidence and important testimony substantially prejudiced Oracle.  *See* Mot. 15, 17-19.  The prejudice to Oracle was particularly evident when Google's counsel explicitly argued during closing that "[t]here isn't a single document from anyone … anywhere … that says Google was wrong or it was somehow a violation to use [the

- 9 -

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION FOR A NEW TRIAL

1    declaring code from the 37 API packages]." Mot. 15 (quoting Tr. 2197:18-20). There was such a
2    document, but the relevant content had been kept from the jury. Google's false statement, made
3    at the end of the case, no doubt left a misleading impression on the jury that impacted the verdict.
4        Google argues that there was no prejudice because the redacted Mazzocchi statement was
5    cumulative of other evidence. Opp. 18-19. First, this does not address Google opening the door
6    during its examination of Mr. Mazzocchi, which led him to say that Apache was not doing illegal
7    things when he thought otherwise at the time. Second, the Mazzocchi email is not cumulative
8    because there is nothing like it in the record. The evidence Google cites, with one exception,
9    discusses *Apache's* conduct, but the critical redacted sentence said that "**Android** using Harmony
10   code is illegal." The Court recognized from the first day of trial that this email was an "important
11   document," Tr. 12:15-17, that directly contradicted a central theme of Google's defense.
12   Excluding such powerful evidence, on a core issue underpinning Google's defense, likely
13   impacted the verdict. *Pau v. Yosemite Park,* 928 F.2d 880, 888 (9th Cir. 1991).
14       Google argues there was no prejudice because the Court should have excluded all of the
15   Mazzocchi evidence on the ground that Oracle failed to disclose Mazzocchi as a witness. Opp.
16   16. This is nonresponsive and ignores that the Court already rejected this argument in light of its
17   earlier decision to allow Simon Phipps to testify for Google on undisclosed topics. ECF No.
18   1875. The Court never made a finding of any discovery violation by Oracle or prejudice to
19   Google, both of which are prerequisites to exclusionary sanctions under Rule 37(c)(1).[3] Similar-
20   ly, the Court already overruled Google's arguments that the Mazzocchi evidence was hearsay and
21   irrelevant. The focal point of Google's case was that there was an "industry custom" of copying
22   Java APIs without a license and everyone believed such copying was permissible. Mot. 15, 17
23   (collecting Google's trial statements). Oracle offered the Mazzocchi evidence for the non-
24   hearsay purpose of showing Mr. Mazzocchi's *belief* about the illegality of such copying within
25   Harmony, itself the centerpiece of Google's "industry custom" argument.
26       Google argues the Court did not err in *sua sponte* redacting the critical statement in the

---

[3] Moreover, Google's *and* Oracle's disclosures identified custodians and former directors of Apache (which includes Mr. Mazzocchi). And, regardless of Rule 26(a) disclosures, Mr. Mazzocchi still could testify as an authenticating witness. *See* ECF No. 1862 (Oracle Br.) at 6-7.

- 10 -  
ORACLE'S REPLY IN SUPPORT OF ITS  
MOTION FOR A NEW TRIAL

1  Mazzocchi email that Harmony and Android are illegal—a statement Google itself never sought
2  to redact—because Mr. Mazzocchi is not a lawyer. Opp. 17. This argument does not stand to
3  reason considering that Google elicited testimony from Mr. Mazzocchi that he did not believe
4  Apache was doing illegal things. Once Google elicited that testimony, Oracle should have been
5  permitted to rebut it with Mr. Mazzocchi's own contrary email. Mot. 18.

6  In addition, Oracle did not seek to offer the redacted portion of the Mazzocchi email for
7  the truth of the statement that Google's copying in Android was *actually illegal*, but rather to
8  rebut Google's purported evidence that the industry *universally believed* that such copying was
9  permissible. Moreover, Oracle established a foundation for Mr. Mazzocchi's lay opinion about
10 his perceptions, Mot. 16-17 (collecting testimony). *See Am. Modern Home Ins. Co. v. Gallagher*,
11 No. 06CV1157 JAH(RBB), 2008 U.S. Dist. LEXIS 9523, at *23 n.9 (S.D. Cal. Feb. 7, 2008)
12 ("Honschopp's lay opinion is properly presented to support his belief of what he might have done
13 under different circumstances and does not render a legal conclusion."); *Rosebrock v. Beiter*, CV
14 10-01878 SJO (SSx), 2011 U.S. Dist. LEXIS 61758, at *7-8 (C.D. Cal. May 26, 2011) (testimony
15 about witness's own personal beliefs admissible over legal conclusion objection); *see also United*
16 *States v. Parris*, 243 F.3d 286, 289 (6th Cir. 2001) (district court did not err in permitting lay
17 witness testimony that he believed defendant's tax scheme was illegal).[4]

18 Google argues that the excluded portion of the Mazzocchi email would have been unduly
19 prejudicial, but Google does nothing more than parrot this Court's conclusion that the sentence in
20 the email was "too inflammatory." Google does not address—and thus concedes—that "inflam-
21 matory" is not the test; the test is whether the statement would "entice the jury to decide the case
22 on an improper basis," Mot. 16 (quoting *United States v. Presley*, No. CR07-5058BHS, 2008 U.S.

---

[4] The lone case Google cites in support of its foundation argument, *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001), supports Oracle. In *Crawford*, the district court permitted a lay witness for the University of California to testify to the UC's understanding of the term "affiliated organization," a legal term of art under the UC's policies regarding disposition of property. The Ninth Circuit upheld the district court's ruling because the witness's testimony was not used to answer the ultimate legal question, but was instead "based on his experience with UCLA's policies, how UCLA used the term 'affiliated organization.'" *Id.* at 1091. Here, as in *Crawford*, Oracle sought to offer evidence about Mr. Mazzocchi's *understanding* based on his experience as an Apache Director; Oracle did not intend to offer Mr. Mazzocchi's email as evidence on the ultimate question of whether Google's copying was unlawful.

- 11 -

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION FOR A NEW TRIAL

1  Dist. LEXIS 7841, at *3-4 (W.D. Wash. Jan. 16, 2008)). The statement that "Android using Har-
2  mony code is illegal" is a far cry from the types of evidence typically excluded for being unduly
3  prejudicial, Mot. 16 (collecting cases). Rule 403 permits the exclusion of evidence only when its
4  "probative value is substantially outweighed by … unfair prejudice." Google does not dispute
5  that it emphasized repeatedly to the jury that everyone thought it was permissible to copy the
6  declaring code without a license, Mot. 15, 17 (collecting statements), and the redacted statement
7  from the Mazzocchi email would have been crucial to rebutting that argument.

8  Finally, Google argues that the Court was right to preclude the jury from learning that Mr.
9  Mazzocchi works at Google. Opp. 17. Mr. Mazzocchi's email was a damning indictment of
10 Harmony and Android, and Oracle had the right to explain to the jury why Mr. Mazzocchi, who
11 should have been a neutral witness, was so hostile to Oracle on the stand. The fact that Mr.
12 Mazzocchi works for Google tends to show his bias and thus should have been admitted. *See*
13 *United States v. Mazzarella*, 784 F.3d 532, 538 (9th Cir. 2015) ("It is potential impeachment evi-
14 dence to suggest that a government witness has a bias—here, seeking government employment—
15 that might color the witness's testimony"); *Davis v. Alaska*, 415 U.S. 308, 318 (1974) (trial court
16 erred because "counsel was unable to make a record from which to argue why Green might have
17 been biased or otherwise lacked that degree of impartiality expected of a witness at trial"); *see
18 also Alameda Books, Inc. v. City of L.A.*, 631 F.3d 1031, 1039-1040 (9th Cir. 2011) (witnesses
19 who "were closely associated with a party to the litigation" had "obvious bias…relating to their
20 close association and apparent financial interest.").[5] Precluding reference to Mr. Mazzocchi's
21 current employment was erroneous and prejudicial. This Court should order a new trial.

22 **IV.   BIFURCATING THE TRIAL PREJUDICED ORACLE**

23 Google does not contest that bifurcation was "inefficient and confusing," "unnecessary to
24 protect the jury," "ran the risk of increasing how long the jury would be required to serve," or that

---

[5] Google is wrong that Oracle "abandoned" its argument regarding evidence of Mr. Mazzocchi's bias. Oracle did not challenge the Court's instruction that the Mazzocchi emails show the state of mind of somebody within the Apache project, but that instruction had nothing to do with the issue of Mr. Mazzocchi's pro-Google bias. After Mr. Mazzocchi testified that he changed his mind about the issues discussed in his emails after he wrote them, Oracle strenuously argued that it must be able to elicit testimony regarding Mr. Mazzocchi's subsequent employment with Google to show *why* Mr. Mazzocchi changed his tune. Tr. 1728:20-1731:9 (Sidebar).

1  important market harm evidence never made it to the jury because it was relegated to the "dam-
2  ages phase." Mot. 19-20; *see* Opp. 24-25.  Instead, Google argues that Oracle agreed in 2012 to a
3  bifurcated trial.  That, of course, was *before* the Federal Circuit's decision; *before* the remand;
4  *before* Oracle argued repeatedly, and at every turn, that trial of fair use, willfulness, and damages
5  should *not* be bifurcated; and *before* the parties agreed last summer to a single-phase trial.  *See*
6  Mot. 19 (collecting filings); ECF No. 1273 (Jnt. Status Rpt.) at 12 ("The parties agree that there
7  should be a single jury trial on all remaining issues.").  Significantly, after the remand, Google
8  never cited this pre-appeal stipulation in response to any of Oracle's repeated filings, and the
9  Court never relied on that stipulation in deciding to bifurcate the trial.

10 As Oracle explained in its Motion (at 20), the evidentiary prejudice to Oracle from the
11 bifurcation included that testimony from its damages expert, Mr. Malackowski, was relegated to
12 Phase Two even though that testimony was relevant to the fourth fair use factor.  Specifically, Mr.
13 Malackowski would have testified that Java ME revenues and profits were going up for years,
14 including into the smartphone era, and that those expected revenues began to decline after
15 Android was released and achieved critical mass.  This evidence would not only have shown
16 market harm but it would have rebutted Google's key argument that Java ME was already
17 predicted to "tailspin" before Android.  Fair use, damages, and willfulness were so intertwined,
18 bifurcation was not appropriate in this instance.  *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498,
19 511 (9th Cir. 1989).  Bifurcation prejudiced Oracle on fair use and requires a new trial.

20 **V.     ERRONEOUS EXCLUSION OF KEY DOCUMENTS PREJUDICED ORACLE**

21          **A.     Google Offers Only Speculation To Rebut Uncontroverted Evidence That *Sun*
                     Claimed Android Infringed Before The Suit Was Filed**
22

23 The uncontroverted evidence shows that *Sun*, not Oracle, represented in an official filing
24 before the EU that Android was an "*unauthorized derivative work of Java SE.*"  TX 5295 at 39.
25 Google offered no evidence to refute that Sun authored this statement, nor did Google challenge
26 the testimony of Oracle CEO Safra Catz that corroborated Sun's authorship.  As this Court obser-
27 ved, such an out-of-court statement is admissible to show the declarant's (Sun's) state of mind.
28 Tr. 1309:1-17, 1314:8-9.  The Court erred by excluding this crucial evidence as hearsay when

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION FOR A NEW TRIAL

1  Oracle offered it as proof of Sun's state of mind. Mot. 21-22 (discussing *Wagner v. Cty. of*
2  *Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013)).

3  Faced with this uncontroverted evidence, Google speculates about who was in control of
4  Sun at the time Sun made the statement to the EU. Opp. 21. This post-hoc, lawyer-created spec-
5  ulation cannot trump the document's own words or uncontroverted percipient witness testimony
6  that Sun made this statement, not Oracle. Google tries to distinguish *Wagner*, Opp. 21, but the
7  state-of-mind exception to hearsay, Fed. R. Evid. 803(3), applies with even greater force here
8  than in *Wagner*. There, the only evidence that the declarant made the statement at issue was the
9  hearsay statement itself. *Wagner*, 747 F.3d at 1052. Here, Ms. Catz's percipient testimony *inde-*
10 *pendently verified* that Sun was the declarant. Tr. 1302:8-14, 1313:17-25. Oracle proffered drafts
11 of the agreement as additional corroboration. Tr. 1338:10-20. While Google makes much of the
12 purported last-minute production of these drafts, such arguments are a sideshow. Oracle never
13 offered the drafts into evidence, and Google had every opportunity to test Oracle's assertion that
14 Sun was the declarant by questioning Ms. Catz regarding her testimony and TX 5295 itself.

15 The exclusion of TX 5295 critically weakened Oracle's case. Google's primary theme
16 was that its use was fair because Sun believed the 37 Java API packages were free and open and
17 that Oracle manufactured this suit after acquiring Sun. Mot. 22-23 (citing trial record). TX 5295
18 provides documentary evidence refuting this theme, showing unambiguously that *Sun* believed
19 that Google's copying was *not* fair, but an unauthorized taking. With TX 5295 excluded, the jury
20 was left with the misimpression that Oracle "cooked up" this lawsuit after purchasing Sun. This
21 prejudice to Oracle requires a new trial.

22  **B.   Google Ignores That The Business Records Exception Makes Admissible Key Oracle Market Harm Documents**
23

24 Google asserts, without any evidentiary support (Opp. 23), that three Oracle documents
25 detailing how Android superseded Java ME, TX 5961, 6431, and 6470, are not business records.
26 Despite every opportunity to question Oracle witnesses about the documents, Google has offered
27 no evidence that these documents are unreliable or are mere "internal propaganda." Instead,
28 Google simply labels the documents as self-serving and unreliable because they support Oracle's

- 14 -

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION FOR A NEW TRIAL

1  case, are PowerPoints, and were created either before or after this suit was filed. Opp. 23-24.

2  Such lawyer arguments are not enough under the Federal Rules of Evidence to preclude admis-

3  sion of business records, otherwise the business record exception, Fed. R. Evid. 803(6), would

4  cease to exist and a party would never be able to admit its own documents in support of its case.

5  That is not the law and Google cites no authority supporting its approach to keeping out evidence.

6      The test is not whether a document supports the proponent's case, has a certain file

7  extension (such as .doc, .pdf, or .ppt), or a certain date of creation. Rather, the business record

8  exception looks to whether the document was created and kept in the ordinary course of business,

9  as a regular business practice, by people with knowledge of the information reported therein.

10  Fed. R. Evid. 803(6). Oracle's CEO testified—and its former head of worldwide sales Neal

11  Civjan *would have* testified, if allowed—that these documents met the test under Rule 803(6)

12  because they were created and kept in the ordinary course, as a regular practice, by people with

13  knowledge. Mot. 23-24 (collecting citations). This uncontroverted testimony establishes the

14  foundation for this important hearsay exception, and the Court erred by concluding otherwise.

15  *See* Mot. 24-25 (citing *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th

16  Cir. 2009)). Google never addresses any of these foundation facts or testimony.

17      Google's Rule 50(b) opposition illustrates how prejudicial the exclusion of these docu-

18  ments was to Oracle. Though Google argues here that there was no prejudice because the

19  witnesses could testify from their knowledge about the content, in its Rule 50(b) brief (filed con-

20  temporaneously with its Rule 59 opposition), Google chastises Oracle because "Oracle introduced

21  *no* documentary evidence of lost sales [and] [i]nstead, Oracle relied solely on witness testimony

22  [that] the jury was free to discount …." ECF No. 2010 at 8. That Oracle relied on witness testi-

23  mony, rather than documentary evidence, was a consequence of the improper exclusion of these

24  critical business records from the trial. As even Google's own arguments reveal, Oracle was

25  greatly prejudiced by the exclusion of these documents. A new trial is required.

## CONCLUSION

27      For the reasons above and in Oracle's Motion, this Court should grant Oracle a new trial.

28

| | | |
|---|---|---|
| 1 | Dated: July 27, 2016 | Respectfully submitted, |
| 2 | | |
| 3 | | Orrick, Herrington & Sutcliffe LLP |
| 4 | | By: */s/ Peter A. Bicks* |
| | | Peter A. Bicks |
| 5 | | Counsel for ORACLE AMERICA, INC. |

- 16 -

ORACLE'S REPLY IN SUPPORT OF ITS
MOTION FOR A NEW TRIAL