ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. <br><br> Plaintiff, <br> v. <br><br> GOOGLE INC. <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE'S REPLY IN SUPPORT OF ITS RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Date: August 18, 2016 at 8:00 a.m. <br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William Alsup |

**TABLE OF CONTENTS**

Page

I. NO REASONABLE JURY COULD FIND FOR GOOGLE ON FACTOR ONE ............. 1
    A. Google's Use Is Entirely Commercial. .................................................................. 1
    B. Google's Use Is Not Transformative. ................................................................... 2
        1. Google's verbatim copying for the same purpose is not transformative. ... 2
        2. Google's arguments are legally irrelevant and factually inaccurate. .......... 3
    C. Good Faith Does Not Favor Fair Use, But Bad Faith Weighs Against It. .............. 5
II. NO REASONABLE JURY COULD FIND FACTOR TWO FAVORS GOOGLE .......... 5
    A. The Declaring Code And SSO Are Both Highly Creative. ..................................... 5
    B. Google Is Attempting To Relitigate Copyrightability. ........................................... 6
III. GOOGLE HAS NOT MET ITS BURDEN ON FACTOR THREE ................................. 7
    A. Google Copied A Qualitatively Significant Amount From Java. .......................... 8
    B. Google Concedes That It Copied A Quantitatively Substantial Amount. .............. 9
    C. Google Does Not Dispute That Its Purpose Was Market Competition. ................. 9
IV. GOOGLE HAS NOT MET ITS BURDEN ON FACTOR FOUR ................................. 10
    A. Android Caused Harm To Java Through Market Competition............................ 11
    B. Java ME Is A Derivative Of Java SE 1.4 And 5.0. ............................................... 12
    C. Google Ignores Uncontroverted Evidence Of Market Substitution. ..................... 13
    D. Android Harmed Java In the Market For Developers. ......................................... 13
    E. Google Has No Colorable Response To Widespread Conduct Evidence. ............. 13
V. MISCELLANEOUS OTHER FACTORS DO NOT SUPPORT FAIR USE .................. 14
    A. Google's Use Does Not Promote The Purposes Of Copyright. ............................ 14
    B. Google Did Not Copy Out Of Technical Necessity. ............................................ 15
CONCLUSION ................................................................................................................ 15

ORACLE'S REPLY IN SUPPORT OF ITS RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004, 1016 (9th Cir. 2001) ........................................................................... 10

*Abend v. MCA, Inc.*,
   863 F.2d 1465 (9th Cir. 1988) ....................................................................................... 1

*Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*,
   803 F.3d 1032 (9th Cir. 2015) ....................................................................................... 7

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ................................................................................................ 2, 14

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998) ..................................................................................... 3, 10

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
   109 F.3d 1394 (9th Cir. 1997) ........................................................................... 8, 10, 15

*Elbert v. Howmedica, Inc.*,
   143 F.3d 1208 (9th Cir. 1998) ..................................................................................... 14

*Elvis Presley Enters. Inc. v. Passport Video*,
   349 F.3d 622 (9th Cir. 2003) ......................................................................................... 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ....................................................................................................... 7

*Fisher v. Dees*,
   794 F.2d 432 (9th Cir. 1986) ......................................................................................... 5

*Gaylord v. United States*,
   595 F.3d 1364 (Fed. Cir. 2010) ..................................................................................... 1

*Harper & Row Publ'rs, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) .............................................................................................. passim

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ......................................................................................... 8

*Mazer v. Stein*,
   347 U.S. 201 (1954) ..................................................................................................... 14

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ................................................................................ passim

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ............................................................................................ passim

*Oracle Am., Inc. v. Google Inc.*,
    750 F.3d 1339 (Fed. Cir. 2014) ............................................................................................ passim

*Perfect 10, Inc. v. Amazon.com, Inc.*
    508 F.3d 1146 (9th Cir. 2007) ....................................................................................................2

*Sony Computer Entm't Am., Inc. v. Bleem, LLC*,
    214 F.3d 1022 (9th Cir. 2000) ....................................................................................................8

*Sony Computer Entm't, Inc. v. Connectix Corp.*,
    203 F.3d 596 (9th Cir. 2000) ...............................................................................................7, 15

*Steinberg v. Columbia Pictures Indus., Inc.*,
    663 F. Supp. 706 (S.D.N.Y. 1987) .............................................................................................3

*Stewart v. Abend* ..............................................................................................................................1

*TMTV, Corp. v. Mass Prods., Inc.*,
    645 F.3d 464 (1st Cir. 2011) ......................................................................................................3

**Statutes**

17 U.S.C. § 101 ................................................................................................................................3

17 U.S.C. § 106(a)(2) .......................................................................................................................3

**Constitutional Provisions**

U.S. Const. Article I, § 8, cl. 8 .......................................................................................................14

Google repeatedly turns a blind eye to Oracle's arguments, the facts, and the law. Only by ignoring what it doesn't like can Google purport to dispute that Oracle is entitled to judgment as a matter of law. Neither this Court's 50(a) ruling nor the Federal Circuit's opinion precludes granting Oracle's motion. Oracle filed its 50(a) motion at the close of Google's case, and so did not present the full record to the Court. Similarly, the record before this Court now has significantly more evidence that Google's copying was not a fair use than the record before the Federal Circuit. Properly considered, there is no question that Google's copying was not a fair use.

## I.   NO REASONABLE JURY COULD FIND FOR GOOGLE ON FACTOR ONE

### A.   Google's Use Is Entirely Commercial.

In its 50(a) opposition, "Google d[id] not contest Android's commercial nature." ECF No. 1935 at 2. Now, Google argues that "the jury reasonably could have found that Google's use was *not* entirely commercial." Opp. 3; *but see Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014). Google claims the jury could have concluded that Android is not commercial because it is freely available. Opp. 3. Yet Google cites no evidence to support that conclusion and does not dispute any of the evidence Oracle cited that Google's open-source model was part of its commercial strategy. Mot. 2. Nor does Google address that "[t]he crux of the profit/non-profit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material." *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Under *Harper & Row*, the jury could not legally have concluded that Google's use was anything but entirely for commercial purposes.

Google posits that the jury "may have determined that there was not a sufficient connection between Android-related revenues and the declarations/SSO." Opp. 4. But any such conclusion would be irrelevant because the proper analysis under factor one looks to the infringing work as a whole, not some apportioned version of it. In *Stewart v. Abend*, the Supreme Court considered the *film's* gross revenues under factor one, despite the fact that the film contained 20% infringing material. 495 U.S. 207, 237-38 (1990) (citing *Abend v. MCA, Inc.*, 863 F.2d 1465, 1468 (9th Cir. 1988) ("The [film's infringing] re-release generated over $12 million in revenue.")); *Gaylord v. United States*, 595 F.3d 1364, 1374 (Fed. Cir. 2010) (finding gross stamp revenues of $17

1  million to be commercial even though $5.4 million were attributable to the infringing material).

2  Commerciality is not concerned with attributing exact dollar amounts between infringing and

3  non-infringing aspects of the infringing work; it is enough that the defendant "is motivated by

4  profits, and in fact profited from the [infringement]." *Monge v. Maya Magazines, Inc.*, 688 F.3d

5  1164, 1177 (9th Cir. 2012). Google has made billions of dollars off of Android. There can be no

6  dispute that Google's use was entirely commercial, strongly weighing against fair use.

### B. Google's Use Is Not Transformative.

#### 1. Google's verbatim copying for the same purpose is not transformative.

There is no question that Google copied thousands of lines of declaring code verbatim, and in doing so also copied the SSO of the Java API packages. *Oracle Am.*, 750 F.3d at 1356 ("Google concedes that it copied the declaring code verbatim."). Google plays word games by saying its copying was not "mere 'verbatim' copying" because there are other aspects of Android that it did not copy from Oracle. Opp. 5. That is irrelevant. "[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Oracle Am.*, 750 F.3d at 1375 (quotation marks omitted).

Google admits, as it must, that making exact copies may be transformative only "so long as the copy serves a different function than the original work." Opp. 4 (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007)). Yet Google does not dispute that the copied Java API packages in Android serve *the same function* as their counterparts in the Java platform. This Court has found the same: "[O]f course, the copied declarations serve the same function in both works." ECF No. 1988 (50(a) Order) at 14. Google tries to dismiss its verbatim copying as irrelevant because "[t]he words copied will always be the same (or virtually so) in a copyright case." Opp. 4. But the Supreme Court has rejected Google's argument, explaining that verbatim copying, such as in this case, "may reveal a dearth of transformative character or purpose under the first factor." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 587 (1994). And Google's premise is wrong; many cases involve substantially similar works without necessarily verbatim copying. *See, e.g.*, *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998) (rejecting argument that the accused works were "not derivative works because they do

- 2 -  ORACLE'S REPLY IN SUPPORT OF ITS RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW

not, in fact, incorporate any of [the copyrighted work's] protected expression.").[1]

### 2. Google's arguments are legally irrelevant and factually inaccurate.

Google does not meaningfully grapple with any of Oracle's arguments demonstrating that Google's points are legally irrelevant and factually inaccurate. *See* Mot. 6-8.

***Google Selected Certain Lines To Copy.*** Oracle's motion explained (at 6) that excerpting a work is not transformative as a legal matter and cannot be transformative here where Sun had already selected portions of the Java SE API packages for a mobile platform (i.e., Java ME). Google does not respond to either point, asserting instead merely that the jury could have found Android transformative because "Google selected 37 out of 166 Java SE API packages." Opp. 5. Copying 37 chapters of a 166-chapter book does not make the plagiarist's work transformative. Excerpting is making an "abridgement" or "condensation," *i.e.*, a derivative work, 17 U.S.C. § 101, which only the copyright owner has the right to do, *id.* § 106(a)(2). Google cites no authority that excerpting a work is or can be transformative. Such a verdict by the jury would not be legally permissible.

***Other Code In Android.*** It is legally irrelevant that Google "implemented [the] declarations" with other implementing code. Mot. 7. Google has no response, other than to simply repeat that it "implemented [the] declarations." Opp. 6. And Google completely ignores that it copied the Java interfaces, which contain only declaring code and no implementing code. Mot. 7 (citing testimony). Thus, Google's explanation—that it only copied declaring code but wrote its own implementing code—is inaccurate; sometimes, there was no implementing code. Rather, copying the interfaces (with no implementing code) confirms that Google copied to replicate the design of the Java API packages. *Id.*

Similarly, it does not matter if Google "combined the declarations/SSO with new Google-created or open-source libraries designed for a mobile platform." Opp. 6. As the Court has rec-

---

[1] *See also Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998) (*Seinfeld* quiz book infringes TV show because they contained the same "characters and events."); *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F. Supp. 706, 712 (S.D.N.Y. 1987) (infringement based on a "striking stylistic relationship" between two posters); *TMTV, Corp. v. Mass Prods., Inc.*, 645 F.3d 464, 470 (1st Cir. 2011) ("Infringement can occur where—without copying a single line—the later author borrows wholesale the entire backdrop, characters, interrelationships, genre, and plot design of an earlier work.").

ognized, "Piracy as well as fair use both will almost always involve using the copyrighted material as part of a larger work. This consideration does not help distinguish between allowed uses versus disallowed uses." ECF No. 1780 (Order Rejecting Prop. Instr.) at 3; *see also Micro Star*, 154 F.3d at 1113 n.6 (combining infringing files "can hardly be described as transformative; anything but"). Google offers no response to the Court's holding or the applicable law.

*Copying In A Smartphone.* Google's argument that its verbatim copying was transformative because smartphones represent a new context falls flat. Google all but ignores undisputed evidence that Java API packages were in smartphones years before Android's release, like Danger's Sidekick/Hiptop, SavaJe, Blackberry, and Nokia devices. Android co-founder Andy Rubin testified that Danger smartphones were "[m]ore or less" the same as "the modern Android and iPhones" with "a lot of the same functionality." Tr. 620:5-13 (Rubin); *id.* 887:22-24 (Danger included "the Java 2 SE APIs for Hiptop"). Rubin testified that, with Android, Google was "targeting the same industry with similar products" as Sun. Tr. 844:21-22. Google points out only that Dr. Jaffe said that SavaJe wasn't "great." Opp. 8. That says nothing about SavaJe's similarity to Android with respect to smartphone features or other characteristics. And it says even less about other Java smartphones' similarity to Android. And, lest we forget, Android wasn't great when it came out, either: "Android in 2009" was "lame." Tr. 589:1-2 (Schwartz).

Significantly, Google does not contest that Android is not a new context because a smartphone is a computer—a mobile computer with substantial processing power. Mot. 7. If Java SE was for computers, Android was therefore no different. It merely superseded Java.

*Android Distributed As Open Source.* Oracle's motion explained (at 8) that increased public access is irrelevant to transformation: "Any copyright infringer may claim to benefit the public by increasing public access to the copyrighted work." *Harper & Row*, 471 U.S. at 569. Google ignores *Harper & Row*, stating in direct contradiction that distributing Android as open source makes Android transformative because "open source adoption spread it across the globe." Opp. 7. But anyone can copy another's work and give it away for free. That does not make it transformative. In any event, open source here cannot be transformative because "Oracle open sourced Java through Open JDK *before* Google released Android." Mot. 8.

- 4 - ORACLE'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

**C.     Good Faith Does Not Favor Fair Use, But Bad Faith Weighs Against It.**

Google's opposition argues that its industry custom and practice argument—including all evidence related to Sun's supposed reimplementation of APIs decades ago, Apache Harmony and GNU Classpath—is relevant only to the good faith/bad faith sub-factor of fair use. Opp. 9. This emphasis on industry custom is an attempt to prove Google's good faith in the face of overwhelming contemporaneous evidence of Google's bad faith infringement, Mot. 8-10.

In any event, good faith does not support fair use. A finding that "[the defendant's] actions do not amount to an abuse of the good faith and fair dealing underpinnings of the fair use doctrine" simply means that "[a]pplication of the defense is *not foreclosed*." *Monge*, 688 F.3d at 1173 n.6 (emphasis added, quotation marks omitted); *accord Harper & Row*, 471 U.S. at 562 ("Fair use presupposes good faith and fair dealing."). Despite this clear statement of law, Google claims good faith can weigh in its favor by pointing to *Fisher v. Dees*, 794 F.2d 432, 436-37 (9th Cir. 1986). Opp. 9. *Fisher*, like *Monge*, said that "*bad conduct* should bar [the] use of the equitable defense of fair use." 794 F.2d at 436. While "courts may weigh the propriety of the defendant's conduct in the equitable balance of a fair use determination," *id.*, that weighing is only against fair use. Nowhere does *Fisher* say good faith supports fair use. Nor could it. Good faith does not trump other factors: *i.e.*, that the use was for commercial purposes, caused market harm, and superseded the original. That is the focus of fair use. *Harper & Row*, 471 U.S. at 550. Thus, even if Google could have presented evidence sufficient to support a finding of good faith (which it cannot), this sub-factor would only be neutral.

Because Google's use was commercial and not transformative, a reasonable jury adhering to the law could only have concluded that factor one favors Oracle and disfavors fair use.

**II.    NO REASONABLE JURY COULD FIND FACTOR TWO FAVORS GOOGLE**

**A.     The Declaring Code And SSO Are Both Highly Creative.**

The Federal Circuit found copyright protection for both the declaring code and the SSO. *Oracle Am.*, 750 F.3d at 1348. Google's opposition addresses only the declaring code. Google does not dispute that the SSO of the Java packages is highly creative, the product of "a whole bunch" of "design principles." Tr. 971:8-10 (Bloch). The undisputed record is that "API *design*

- 5 -

ORACLE'S REPLY IN SUPPORT OF ITS RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    is a noble and rewarding craft," Tr. 1007:18-20; TX 624 at 47; "an art, not a science" where the
2    author "[s]trive[s] for beauty," TX 877 at 2.  *See also* Mot. 11-13.

3    Google's only factual response with respect to the SSO is to claim that the SSO and declaring code are "equivalent for purposes of understanding functionality." Opp. 14.  But the SSO and method declarations are distinct, with each constituting a separate and independently copyrightable aspect of Java SE. *Oracle Am.*, 750 F.3d at 1348.  "The declaring code for a method tells the programmer the information the method needs (the inputs) to perform the desired function," whereas "[t]he SSO specifies the relationships between and among the elements of the Java API packages, and also organizes the classes, methods and other elements in the package." ECF No. 1846 (Stip. Copyrightability Stmt.).  Combining and analyzing the declaring code and SSO as though they are a single, equivalent component of the work should therefore be rejected because it is contrary to both the Federal Circuit's decision and parties' binding factual stipulation.

Though Google purports to argue that the declaring code is not creative, the evidence it cites does not support its arguments.  Much of the testimony Google cites from Dr. Astrachan focuses on method names.  *See* Mot. 11.  That Dr. Astrachan could "understand what the 'method would do simply on its names and inputs and outputs,'" Opp. 14, just means that the method's declaring code effectively *expresses* the purpose of the method.  Nor is it relevant that "a computer *language* has a certain set of rules and is 'completely inflexible.'" *Id.*  There are still many ways to creatively express something within the rules of a computer language.  Otherwise, no code would be creative.  Google also points to testimony that declaring code should be "as short as possible but no shorter." *Id.*  But that just shows the creative choices and judgments that go into writing declaring code.  The same advice could be given for writing a brief.  The undisputed testimony is that the declaring code taken as a whole is highly creative.

**B.    Google Is Attempting To Relitigate Copyrightability.**

The rest of Google's factor two argument is that "choices about which classes and methods to include in the packages and how to order them" cannot "constitute creative expression." Opp. 15.  But the Supreme Court has said the opposite:  The "selection and arrangement" of the elements of a work, including "in what order to place them[] and how to arrange the[m]," can

- 6 -

ORACLE'S REPLY IN SUPPORT OF ITS RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW

1  demonstrate the creative "expression" of the author.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
2  499 U.S. 340, 348, 349 (1991).  Google says such "kinds of selection and arrangement decisions
3  do not establish creativity," Opp. 15, but *Feist* holds that original "selection and arrangement" can
4  in fact be creative, expressive, and "eligible for copyright protection."  499 U.S. at 349.

5       As is evident from Google's cases and arguments, Google is improperly attempting to get
6  around the Federal Circuit's decision and relitigate copyrightability.  *Bikram's Yoga*, which
7  Google relies upon, is a copyrightability case.  In *Bikram's*, the Ninth Circuit concluded only that
8  the specific work at issue was not copyright protected because of its particular characteristics.
9  The court explained that "the medical and functional considerations at the heart of the Sequence
10 *compel* the very selection and arrangement of poses and breathing exercises" and that such a re-
11 quired "strict order" was too constrained and lacking in originality to be copyrightable.  *Bikram's*
12 *Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1042 (9th Cir. 2015).  The same
13 cannot be said of the API packages.  The Federal Circuit concluded that Google has not shown
14 that "the groupings and code chosen for the 37 Java API packages were driven by external factors
15 or premised on features that were either commonplace or essential to the idea being expressed."
16 *Oracle Am.*, 750 F.3d at 1364.  Based on the facts of this case, the Java API packages were not
17 constrained at creation, are copyrightable, and are highly expressive and creative.  Mot. 11-13.

18 **III.  GOOGLE HAS NOT MET ITS BURDEN ON FACTOR THREE**

19       Google concedes that the third factor "must consider 'whether the amount of the work
20 used was reasonable in relation to the purpose of the copying.'"  Opp. 16 (quotation marks omit-
21 ted).  The purpose must be "a legitimate one," and the amount of copying must not exceed what is
22 *necessary* for that legitimate purpose.  *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d
23 596, 607 (9th Cir. 2000).  If it does, this factor weighs against fair use as a matter of law.  *Monge*,
24 688 F.3d at 1179 (exceeding legitimate news reporting weighs against fair use).  Google concedes
25 its copying was not based on technical necessity.  Opp. 15-17.  Instead, Google argues that it cop-
26 ied to appeal to Java SE's existing fan base by encouraging them to migrate their "programming
27 knowledge" from Java SE to Android.  Opp. 17.  That is straightforward market competition—
28 competing for Java programmers whose apps create demand for the Java platform—and Google

cites no authority that such is a legitimate purpose for copying.[2]

The cases Google cites in its attempt to escape its prior admissions of copying are inapposite because they involve permissible purposes: parody and comparative advertising. Opp. 16 (citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 804 (9th Cir. 2003) (parody); *Sony Computer Entm't Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1024 (9th Cir. 2000) (comparative advertising)). In those cases where there is a legitimate purpose, "the extent of permissible copying varies with the purpose and character of the use." *Mattel*, 353 F.3d at 803-04. Where a use is for permissible reasons, courts "do not require … works to take the absolute minimum amount of the copyrighted work possible." *Id.* Here, however, Google did not copy for a permissible purpose, and thus its copying cannot be justified based on the amount of its copying.

### A. Google Copied A Qualitatively Significant Amount From Java.

Google does not dispute that the declaring code it copied is at least "equally important" as the implementing code. Opp. 17 (citing Tr. 1475:11-15 (Reinhold)). But the testimony cited by Google is also incomplete; Dr. Reinhold was careful to distinguish between those who write API packages, called "API developers," and the *application* developers who use the API packages. "[I]f you're an application developer, then declaring code is … relatively more important." Tr. 1455:14-19 (Reinhold). For app developers, the declaring code is the focal point of the API—the part app developers learn and use, Tr. 1455:20-24 (Reinhold), and the "nexus" between the app developer and the implementing code, Tr. 997:11 (Bloch). Mot. 15. If, as Google concedes, the declaring and implementing code are *at least* equally important, then when Google copied only the declaring code but copied the implementing code from elsewhere, it still copied *at least* half the value of the code in the infringed Java SE API packages. Such a qualitatively valuable taking weighs against fair use. *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402-03 (9th Cir. 1997) (copying the "expressive core" weighs against fair use).

Google argues incorrectly that there is no authority that the qualitative value of the code

---

[2] With no identified legitimate purpose, whether this factor *could* weigh in favor of fair use under some other set of facts is irrelevant. But even so, it is blackletter law in the Ninth Circuit, and the law of this case, that "[i]f the secondary user only copies as much as is necessary for his intended use, then this factor *will not weigh against him or her.*" *Oracle Am.*, 750 F.3d at 1375-76 (emphasis added, quotation marks omitted); ECF No. 1950 (Jury Instr.) ¶ 33 (same).

- 8 - ORACLE'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

should be considered "independently" of the "size of the copyrighted work." Opp. 16. But that is the holding of *Harper & Row*. 471 U.S. at 564 (finding the third factor weighs against fair use even though, "[i]n absolute terms, the words actually quoted were an insubstantial portion" of the original). *Harper & Row* found qualitative significance in quotations amounting to 0.15% of the original.[3] *The Nation* used snippets from President Ford's memoir as the "focal points" for its readers interspersed amongst large amounts of original text, *id.* at 566, much as Google uses Java declaring code as the focal point for app developers interspersed throughout a platform containing other code, *see id.* at 570-579 (appendix reproducing article with the copied snippets in bold, interspersed throughout the article). *The Nation*'s copying was not fair use. Neither is Google's.

### B. Google Concedes That It Copied A Quantitatively Substantial Amount.

Google does not dispute that it copied "approximately 11,500 lines of declaring code from Java SE." Opp. 16. Google concedes this amounts to at least 0.23% of the total lines of code in Java SE overall and 0.4% of the code in the 37 Java SE API packages at issue. *Id.* Google does not dispute that the 37 copied Java API packages constitute 22.2% of the 166 Java SE API packages in the Java SE platform. *See* Tr. 1452:23-24 (Reinhold). By any of these measures, Google copied more than enough to find that factor three weighs against fair use as a matter of law. *See, e.g.*, *Harper & Row*, 471 U.S. at 566; *Elvis Presley Enters. Inc. v. Passport Video*, 349 F.3d 622, 625 (9th Cir. 2003) (30-second clips).

### C. Google Does Not Dispute That Its Purpose Was Market Competition.

Google does not dispute or even address the evidence that Google copied Java SE because it was "one of those accelerants" that would help Android "win" in the market. Mot. 16-18. Google needed Java SE because "the work that a developer would have to go through to learn something completely new … was just out of [the] question." *Id.* Nor does Google offer any answer to the authority holding such purposes to be illegitimate and impermissible under a proper fair use analysis. *See, e.g.*, *Micro Star*, 154 F.3d at 1113 (copying a "story's unique setting, characters, [and] plot" to appeal to the story's fans is not fair use); *accord* Mot. 18-21 (collecting

---

[3] Google incorrectly argues that the excerpts in *Harper & Row* were a "contiguous" quote. Opp. 17. The 300 words, out of 200,000 overall, were selected in fragments from 53 different locations in the text of President Ford's memoir. 471 U.S. at 586 n.11 (Brennan, J., dissenting).

authority). Copying to capture the "core" of another's work "to avoid the drudgery [of] working up something fresh" is not a fair use. *Dr. Seuss Enters.*, 109 F.3d at 1401-02.

Google claims that it copied to help developers "make effective use of the language" because "developers … would expect … a rich suite of APIs." Opp. 16. These arguments fail because where copying is not *necessary*, and alternatives exist, the third factor weighs against fair use—even where the alternatives are less effective or less desirable. *Monge*, 688 F.3d at 1179. There is no evidence that Google was locked into using the Java SE APIs in order to make a smartphone or use the Java language; in fact, the evidence is the opposite. "[I]t's a crucial point that [the 37 Java API packages] weren't really necessary for Google to do what it did [with Android]." Tr. 1903:24-1904:1 (Leonard); Tr. 1270:6-9 (Astrachan) (Google "engineers could have used a completely different set of APIs" in Android). Google copied simply for business reasons.

There is also no evidence to support Google's argument that copying helped achieve "inter-system consistency" between users. Opp. 17. Android is *in*compatible with Java SE. 1231:8-10 (Astrachan). When a developer switches from Java SE to Android, he or she has to learn over 100 API packages that are not included in Java SE and write new programs because the programs do not work across platforms. *Id.* 1231:15-25. Google's "inter-system consistency" argument is instead about copying those aspects of Java SE that are popular with developers in order to attract them away from Java SE to Android. That is not a fair use. *See Micro Star*, 154 F.3d at 1113; *accord Castle Rock Entm't*, 150 F.3d at 143-44 (copying to "satiate *Seinfeld* fans' passion" and thereby tap into the show's fan base is not fair use).

IV.   **GOOGLE HAS NOT MET ITS BURDEN ON FACTOR FOUR**

On the fourth and most important factor, Google does not dispute that where the "intended use is for commercial gain," as Google concedes is true for Android, "the likelihood of market harm may be *presumed*." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001) (emphasis added, quotation marks omitted); *accord* ECF No. 1981 (Jury Instr.) ¶ 37. Google also does not dispute that Android is a "competing platform" that caused Oracle to lose "control over [a] market." Opp. 17. In the face of direct evidence of market competition and harm, Google ignores the evidence and claims none exists. Worse still, though Google bears the

1  burden of showing that "unrestricted and widespread conduct of the sort engaged in by the

2  defendant" would not "result in a substantially adverse impact on the potential market for the

3  original," *Oracle Am.*, 750 F.3d at 1376 (quotation marks omitted), Google cites to *no affirmative*

4  *evidence whatsoever* that refutes the widespread harm testified to by numerous witnesses.  Mot.

5  24-25 (collecting evidence).  Any reasonable jury would find that factor four weighs heavily

6  against fair use.

7          **A.**     **Android Caused Harm To Java Through Market Competition.**

8      Google concedes that Android caused direct market harm to Java SE in the e-reader

9  market, and Google does not dispute "Oracle CEO Safra Catz's testimony that Amazon switched

10  to Android [from Java SE] for the Kindle Fire because [Android] was free."  Opp. 18; *see Harper*

11  *& Row*, 471 U.S. at 568 (no fair use where secondary use "directly competed for a share of the

12  market"); *Oracle Am.*, 750 F.3d at 1376 ("fair use is limited to copying by others which does not

13  materially impair the marketability of the work which is copied." (quotation marks omitted)).

14      Ms. Catz also testified that Amazon used Android as bargaining leverage to negotiate a

15  97.5% discount to use Java SE in the Kindle Paperwhite.  Tr. 1359:20-1360:15.  Google's only

16  response is that OpenJDK *could have* caused the same harm that Android caused.  But it did not.

17  Amazon switched from Java SE to Android, not OpenJDK, and then used Android, not

18  OpenJDK, to negotiate against Oracle.  Moreover, the undisputed evidence was that OpenJDK,

19  although available, was not suitable for commercial use, Tr. 1410:8-15 (Screven), which is why

20  the record contains no instance of any company using OpenJDK commercially.

21      The rest of Google's opposition is predicated on fact that Java SE is, in part, licensed in

22  desktop and laptop computers.  Opp. 18.  Of course, Java SE is in desktops and laptops.  It is also

23  in phones (smart and feature) and e-readers, markets where Java SE lost market share to Android.

24  Google ignores testimony from its own witness that Danger sold millions of Java SE-based smart-

25  phones.  Mot. 4-5.  Google likewise has no answer for testimony that Java SE or a derivative was

26  in all the smartphones on the market when Android launched (except iPhones), including phones

27  by Samsung, LG, Panasonic, Sony Ericsson, and RIM/Blackberry.  Tr. 1667:10-19 (Brenner); Tr.

28  1622:15-17 (Civjan).  Nor does Google respond to the testimony that Google "viewed Sun as a

competitor" because both were "targeting the *same* industry with *similar* products," Tr. 844:13-22 (Rubin) (emphasis added), and that Sun "was certainly frustrated that we had a new competitor" when Google launched Android, Tr. 590:20 (Schwartz).  Google also fails to acknowledge Dr. Jaffe's testimony that the first Android phone and a Java-based phone on the market at the time competed against each other; they both "had color touchscreens," "full keyboards," and, "like Coke and Pepsi, [though] they weren't identical … they [did] have very significantly similar features." Tr. 1768:10-15.  Google's internal documents also confirm that Android was competing in the market for feature phones and superseding them in the market.  *See* TX 1061 at 16 (Google strategy was to go "down-market to feature phones"); TX 6446 ("[m]ost feature phone users are expected to become Android phones users"); *accord* Tr. 1902:2 (Leonard) ("Smartphones certainly displaced feature phones").  Google does not address this evidence in its opposition.  *See* Opp. 19-20.  Thus, even if there were a cognizable difference between feature- and smartphone markets, Android competes and harms Oracle in both.  In light of this evidence of direct market harm, no reasonable jury could find that factor four weighs in favor of fair use.[4]

**B.   Java ME Is A Derivative Of Java SE 1.4 And 5.0.**

Google's claim that Java ME is not a derivative of Java SE 1.4 and 5.0 is not credible.  The operative facts are undisputed:  Java ME was first released as a subset of a predecessor version of Java SE in 2000, a couple of years prior to Java SE 1.4's release.  Opp. 18 (citing Tr. 1668:13-19 (Brenner)).  Then, in 2004 Java ME was updated with "the new material" from Java SE 1.4.  Tr. 1669:20-24 (Brenner).  A similar update occurred when Java SE 5.0 was released.  *Id.* 1669:11.  Java ME was "regularly update[d] … to track the development of Java SE." *Id.* 1669:15-16.  Google's own expert Dr. Astrachan testified on this very clearly:  "Q. So the infringed packages, some of them were also in Java ME, isn't that true?  A. It is true that some of

---

[4] Against evidence of actual harm to Sun/Oracle licensing, Google argues Sun's licensing regime permitted Google to copy wholesale from the Java SE platform in order to create a competing platform.  This is a non-infringement argument that attempts to circumvent the earlier jury verdict and the Federal Circuit's mandate.  *See also* ECF No. 1950 (Final Jury Chrg.) ¶ 27 ("Google makes no claim its use was pursuant to a license").  Moreover, Mr. Schwartz testified that compatibility was important to Sun's business, and Sun required companies to "pass a series of tests and compatibility kits that would allow [Sun] to say [a third-party implementation] is compatible" for a fee.  Tr. 507:5-9.  Mr. Schwartz correctly worried that Google would not submit Android to Sun's compatibility requirements, thereby "fork[ing]" Java.  TX 1055.

these 37 packages are in Java ME." Tr. 1939:13-15. He testified that "there were 11 of the Java SE packages at issue in this case in ME CDC … [a]nd there were four of the 37 Java packages [in the] CLDC version of Java ME." Tr. 1940:16-1941:7. Java ME "substantially incorporate[s] protected material from" Java SE 1.4 and 5.0, and no reasonable jury could conclude otherwise.

### C. Google Ignores Uncontroverted Evidence Of Market Substitution.

Google's claim that Android is not a market substitute for Java SE and Java ME ignores unrebutted evidence of direct market competition between Android and Java SE and its derivatives. Mot. 21-24. Moreover, Google is wrong to try to distinguish between harm in smartphone and feature phone markets. Fair use is not limited to the economic concept of market substitution as described by Dr. Leonard. *See, e.g.*, Tr. 1893:10-14. Rather, fair use is concerned with uses that "supplant" the original work. *Harper & Row*, 471 U.S. at 566-68; *accord Monge*, 688 F.3d at 1182 (use that "serves as a market replacement" is not a fair use). Android "displaced" Java-based phones (smart and feature) in the market and thus is not a fair use. Tr. 1902:2 (Leonard).

### D. Android Harmed Java In the Market For Developers.

Google's waiver argument is meritless. Oracle argued in its 50(a) motion that "the evidence at the close of Google's case shows that Google used Java to compete for developers with Sun." ECF No. 1914 at 19. Diverting Java developers was relevant under factor four because "[m]arket competition is not a cognizable purpose under the first factor, and cannot justify Google's copying under factor three." *Id.* Oracle made the same argument in its reply: "Direct market harm need not be monetary, and the fourth factor recognizes any harm that may 'impair the copyright holder's ability to obtain the rewards that Congress intended him to have.'" ECF No. 1960 at 13. Google's only argument on the merits is that developers learn multiple languages over time. Opp. 22. This is true, but irrelevant. Google was beyond out of time and needed a product supported by apps that would attract consumers. Mot. 9. Google could not wait for developers to learn something new, which is why Google misappropriated Oracle's work to attract those developers. *Id.* No reasonable jury could find that competition for developers is a fair use.

### E. Google Has No Colorable Response To Widespread Conduct Evidence.

Oracle asserted in its Rule 50(a) motion that fair use considers "whether unrestricted and

widespread conduct of the sort engaged in by the defendant … would result in a substantially adverse impact on the potential market for the original." ECF No. 1914 at 20 (quoting *Oracle Am.*, 750 F.3d at 1376 and *Campbell*, 510 U.S. at 590-91). In its Rule 50(a) motion, Oracle expressly argued that Google failed to submit "*any* favorable evidence about relevant markets" to satisfy its evidentiary burden on the considerations applicable to the fourth fair use factor, including widespread use. *Id.* at 23 (emphasis added); *see also id.* at 21. Nothing precludes Oracle from, on 50(b), citing evidence from its own case-in-chief that Oracle "wouldn't have a business" if everyone engaged in conduct like Google's *after* Oracle moved for judgment pursuant to Rule 50(a) is immaterial. Tr. 1363:1-3 (Catz). In a Rule 50(b) motion, "[t]he record should be taken as it existed when the trial was closed." *Elbert v. Howmedica, Inc.*, 143 F.3d 1208, 1209 (9th Cir. 1998). On this important issue, Google cites no evidence rebutting Ms. Catz's testimony.

## V.   MISCELLANEOUS OTHER FACTORS DO NOT SUPPORT FAIR USE

### A.   Google's Use Does Not Promote The Purposes Of Copyright.

Copyright protection is based on the "economic philosophy … that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in 'Science and useful Arts.'" *Mazer v. Stein*, 347 U.S. 201, 219 (1954) (quoting U.S. Const. art. I, § 8, cl. 8). Both parties' CEOs testified that copyright protection is critical for their business. Tr. 390:1-22, 1352:14-1353:14. If copying like Google's is permissible, that would be the end of innovation (*i.e.*, progress in Science). Tr. 1354:10-18 (Catz). No reasonable jury could conclude Google's plagiarism promotes the purposes of copyright.

Google's argument that inter-system consistency could support fair use is wrong. Inter-system consistency is a commercial purpose that makes the secondary product more successful because that product can build off support for the first product. There is no justification in fair use law for such copying. Indeed, inter-system consistency is the equivalent of arguing that because one work has become popular, others should be permitted to copy identifiable aspects of the work in order to capture its fan base. Under such a rule, copying the characters and unique settings of a book, such as *Harry Potter*, to write an unauthorized sequel would be fair use because *Harry Potter* fans expect consistency between the first novel in a series and its sequels.

But copying a "story's unique setting, characters, [and] plot" is not fair use. *Micro Star*, 154 F.3d at 1113 (finding sequel to computer program that copied protected expression was not fair use).

The same is true of Java SE's creative and highly valuable declaring code and SSO. Copying those aspects that are popular with Java app developers (the fan base) in order to create a derivative work popular with those same programmers is not a fair use. *Dr. Seuss Enters.*, 109 F.3d at 1396, 1401 (copying "the most famous and well recognized" aspects of a work "to get attention" or "to avoid the drudgery in working up something fresh" is not a fair use (quotation marks omitted)); *cf. Oracle Am.*, 750 F.3d at 1372 ("Google was free to develop its own API packages and to 'lobby' programmers to adopt them" without copying).[5]

### B. Google Did Not Copy Out Of Technical Necessity.

It was Google's burden to conduct a filtration analysis to identify portions of the Java SE API that are "unprotected or functional elements," *Connectix*, 203 F.3d at 599, in order to separate unprotected elements of the Java SE API from those protected by copyright. *Oracle Am.*, 750 F.3d at 1377 (inviting filtration analysis on remand). Google did not conduct such an analysis. The only analysis in the record identifying *any* element of the Java SE API that is dictated by the Java programming language is Dr. Reinhold's, which identified 170 lines of declaring code that are predefined by the Java language. Tr. 1442:24-1443:12 (reading stipulation regarding 170 lines of code); TX 9223 (listing required 170 lines); Tr. 1269:13 (Astrachan) (agreeing that Google's copying beyond the 170 lines "wasn't a requirement in the [Java] language"). Google has not and cannot identify a single piece of evidence that suggests any additional amount of code was copied from the Java SE platform in order to use the Java programming language or that anyone believed that copying any code besides those 170 lines of code was technically necessary. It was Google's burden to show it was "necessary" to copy Java SE in order to use the Java language, *see Connectix*, 203 F.3d at 603, and it has not met that burden.

### CONCLUSION

The Court should grant Oracle judgment as a matter of law.

---

[5] Nor is it relevant that "'Android was a part of [the] transformation' in the mobile phone industry." Opp. 24. As the iPhone proves, all the advantages of smartphones can be achieved without infringing Oracle's copyrights. Google's copying was not necessary to transform the market.

Dated: July 27, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Peter A. Bicks*
      Peter A. Bicks

Counsel for ORACLE AMERICA, INC.