**ORRICK, HERRINGTON & SUTCLIFFE LLP**
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

**BOIES, SCHILLER & FLEXNER LLP**
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

**ORACLE CORPORATION**
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
500 Oracle Parkway, Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>                    Plaintiff,<br><br>          v.<br><br>GOOGLE INC.<br><br>                    Defendant. | Case No. CV 10-03561 WHA<br><br>**PLAINTIFF ORACLE AMERICA, INC.'S OPPOSITION TO MOTION FOR FINDING OF CIVIL CONTEMPT AND FOR SANCTIONS**<br><br>Date:      September 22, 2016 at 8:00 a.m.<br>Dept.:    Courtroom 8, 19th Floor<br>Judge:   Honorable William Alsup |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................................... 2

    A.    The "Apple Information" ................................................................................. 2

    B.    The "Google Information" ............................................................................... 4

    C.    Subsequent Use Of The Information Ordered Produced By Judge Ryu ................ 5

ARGUMENT .................................................................................................................................. 6

II.    CONTROLLING LEGAL STANDARDS ................................................................. 6

III.    GOOGLE'S MOTION FAILS TO ESTABLISH A PROTECTIVE ORDER
VIOLATION ................................................................................................................ 7

    A.    Paragraph 5 Of the Court's Order Exempts Statements In Court ......................... 7

    B.    Google Agrees That No Advance Notice Was Required From Oracle ................. 9

    C.    Remedial Provisions In The Protective Order Are Inapplicable ........................ 10

        1.    The Protective Order And Undisputed Facts Required No Action
With Respect To The Public ................................................................. 10

        2.    Oracle Was Not Required To Take Action With The Court .................... 11

IV.    GOOGLE FAILS TO MEET THE HIGH BURDEN REQUIRED TO PROVE
CONTEMPT ............................................................................................................. 12

    A.    Disagreements Regarding Application Of The Protective Order Confirm
That A Contempt Citation Is Not Appropriate ..................................................... 12

    B.    Google Cites No Supporting Authority ............................................................... 13

V.    ORACLE AND ITS COUNSEL AT ALL TIMES ACTED IN GOOD FAITH ............. 14

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Adams v. Albertson*,
   2012 WL 1636064 (N.D. Cal. May 9, 2012) .............................................................7

*Apple, Inc. v. Samsung Elecs. Co.*,
   2014 U.S. Dist. LEXIS 11778 (N.D. Cal. Jan. 29, 2014) .......................................14

*Beam Sys. Inc. v. Checkpoint Sys., Inc.*,
   No. CV95-4068-RMT 1997 U.S. Dist. LEXIS 8812 (C.D. Cal. Feb. 5, 1997) ........13

*Biovail Labs., Inc. v. Anchen Pharms., Inc.*,
   463 F. Supp. 2d 1073 (C.D. Cal. 2006).................................................................13

*Bradford Techs., Inc. v. NCV Software.com*,
   No. C 11-40621 EDL, 2013 U.S. Dist. LEXIS 1592 (N.D. Cal. Jan. 3, 2013)........14

*Colaprico v. Sun Microsystems, Inc.*,
   1994 U.S. Dist. LEXIS 21853 (N.D. Cal. Aug. 22, 1994)......................................14

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993)...............................................................................6, 15

*In re Dyer*,
   322 F.3d 1178 (9th Cir. 2003)...............................................................................12

*Fair Housing of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002)...................................................................................7

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir. 1983)..................................................................................14

*Harmston v. City & County of S.F.*,
   2008 U.S. Dist. LEXIS 9622 (N.D. Cal. Jan. 29, 2008) .........................................14

*Imageware, Inc. v. U.S. W. Commc'ns*,
   219 F.3d 793 (8th Cir. 2000).............................................................................6, 12

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
   2012 U.S. Dist. LEXIS 63974 (N.D. Cal. May 7, 2012) ........................................14

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*,
   No. 12cv01424 CAB (RBB), 2014 WL 3942200 (S.D. Cal. Aug. 11, 2014)............6

*O'M & Assocs., LLC v. Ozanne*,
   No. 10-cv-2130, 2011 WL 2160938 (S.D. Cal. June 1, 2011) .................................15

*Riel v. Ayers*,
    No. CIV, S-01-0507 LKK/KJM, 2010 WL 3835798 (E.D. Cal. Sept. 30, 2010).....................14

*Stone v. City & Cnty. of S.F.*,
    968 F.2d 850 (9th Cir. 1992)...........................................................................................6

*United States v. Saccoccia*,
    433 F.3d 19 (1st Cir. 2005) ....................................................................... 12-13

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
    689 F.2d 885 (9th Cir. 1982).................................................................................6, 13

**Rules**

Fed. R. Civ. P. 37 ...........................................................................................1, 2, 7, 15

**Other Authorities**

7 James Wm. Moore et al., *Moore's Federal Practice* § 37.51[7][b] (3d ed. 2013) ..............6, 7, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Google's Motion for Civil Contempt and for Sanctions (the "Motion") is unprecedented. The confidential information was discussed in pre-hearing briefing, and Google then mischaracterized the contents of the information at oral argument.  The statements Google now complains about were responsive to Google's arguments and were made during an open court hearing in response to probing questions from Magistrate Judge Ryu, principally during an on-the-fly rebuttal of mischaracterizations made by Google's counsel.  Google cites no case in which contempt was found for statements made in court in violation of a protective order, let alone statements responsive to the other party's arguments.

Google has failed to satisfy its burden to meet the elevated requirements necessary for proving civil contempt by clear and convincing evidence and cites no facts that would support sanctions under FRCP 37(b)(2), which similarly requires "extreme circumstances" and a level of bad faith and willfulness that is not present here.  Google fails to show that the Protective Order was violated, and certainly has not shown a violation by clear and convincing evidence.  Google concedes that Oracle did not anticipate that specific revenue information would be referenced at the January 14, 2016 hearing, and thus the provision of the Protective Order that requires advance notice of an expected use of confidential information did not apply and was not violated.

Google's motion identifies two pieces of information it claims were improperly disclosed: (1) "Apple Information" and (2) "Google Information."  At the January 14 hearing, Google only raised the Apple Information, and did not raise issues regarding the Google Information.  As to the Apple Information, Judge Ryu did not grant Google's request to seal in real time and then denied Google's request in the written order that followed.  Nevertheless, Google now argues that Ms. Hurst should be held in contempt for disclosing (1) information that Judge Ryu twice declined to seal and (2) information whose disclosure Google did not even object to at the time.  Such a circumstance cannot support a contempt citation, which requires substantial proof of a clear violation of an unambiguous order and that the Court resolve all doubts in favor of the accused party.  No matter how they are analyzed, the facts of this case do not constitute clear and convincing evidence of contempt.  Nor do they amount to the extreme circumstances required for

an award of sanctions under FRCP 37(b)(2).

**FACTUAL BACKGROUND**

A.     THE "APPLE INFORMATION"

Google's advertising revenue share payments generally, and to Apple in particular, formed a significant part of this case. Oracle's economist Dr. Jaffe analyzed Google's revenue sharing arrangements with other mobile platform providers, with a particular focus on Apple, and opined that, *inter alia*, ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ██████ ECF No. 1560-7 (Jaffe 2/8 Report) ¶¶ 260-273; ECF No. 1560-9 (Jaffe 2/29 Report) ¶¶ 36-38, 54-55. The Court-appointed expert, Dr. Kearl, opined that Google's █████████ ████████████████████████████████ would indicate that the infringement generated profits. Hurst Decl. Ex. C[1] (Kearl 3/23/16 Depo.) at 116:16-120:8; ECF No. 1582-7 (Kearl 3/18/16 Rpt.) ¶¶ 23-33. Oracle's damages expert, Mr. Malackowski, calculated the Platform Contribution Factor based upon Google's payment percentages to Apple and other mobile platform providers. ECF No. 1560-13 (Malackowski 2/29/16 Rpt.) ¶¶ 17, 281-294; *id.* Ex. 7.6; Ex. B (Malackowski Depo.) at 207:7-208:21. Google's expert, Dr. Leonard, largely agreed with this approach to apportionment, taking further deductions. ECF No. 1563-7 (Leonard 3/10/16 Rpt.) ¶¶ 63-65. The Court also relied upon the Platform Contribution Factor in assessing causation and apportionment related to the *Daubert* motions regarding the damages reports. ECF No. 1798 (Order Re Malackowski) at 8-12, 14; ECF No. 1784 (Order Re Leonard) at 13-14.

None of that crucial analysis was possible on January 14. Oracle, through Ms. Hurst, sought to compel production of the data that formed the basis for these analyses. At that time, discovery was closed, opening expert reports had been exchanged, and the deadlines for rebuttal expert reports were looming. Oracle was seeking information that its experts needed for trial.

---

[1] All "Ex." citations herein are to Exhibits to the Hurst Declaration unless otherwise noted.

1   The January 14, 2016 hearing concerned a motion to compel Google to produce the agreements

2   reflecting this revenue sharing data and to provide a witness prepared to testify about such

3   agreements.  ECF No. 1404 (Jnt. Disc. Br.); 1/14/16 Hr'g Tr. at 2:22-3:23.  The only revenue

4   share data with respect to non-Android platform providers Google had produced was one 30(b)(6)

5   witness who testified the estimated Apple percentage at a point in time.  Ex. A (Gold 12/11/15

6   Depo.) at 13:1-19:7, 226:25-267:14.  Beyond a few vague details, the witness did not know the

7   terms of the Apple agreement for the relevant time period, and Google designated no witness on

8   agreements with other entities.  *Id.* at 14:2-19:7; Hurst Decl. ¶ 2; *see* ECF No. 1404.

9        In its opposition letter brief, ECF No. 1404, Google argued that it should not be required

10  to produce the requested data at all because it was insufficiently relevant to the case, *id.* at 4-6, or

11  alternatively, that the motion was moot due to the production of a sliver of the requested

12  information: the aforementioned limited and general deposition testimony regarding the estimated

13  Apple percentage at a point in time, *id.* at 6-7.

14       During the hearing, Judge Ryu inquired about the revenue share information Google had

15  provided already to explore whether Oracle needed additional information.  *See, e.g.*, 1/14/16

16  Hr'g Tr. at 2:24-3:14.[2]  Google's counsel argued that Oracle "has everything [it] needs" including

17  the "percentage of the revenue [] shared" "from 2008, and probably forward."  *Id.* at 17:1-11.

18  Google's counsel stated that the revenue sharing information Oracle sought with respect to Apple

19  had already been provided in the 30(b)(6) deposition cited in Google's letter brief.  *See, e.g.*, *id.*

20  at 16:14-20, 17:1-11, 20:3-16, 26:20-21, 29:10-13.  Google's counsel, Mr. Van Nest, asserted that

21  Ms. Hurst's statements to the contrary were "absolutely not true," and stated that the information

22  had already been provided in a 30(b)(6) deposition.  *Id.* at 20:3-16.  Neither side had provided the

23  Court with excerpts of the deposition transcript as part of the briefing of the motion.

24       To assist the Court, Ms. Hurst asked a colleague to open the transcript on his laptop and

25  check the testimony.  Hurst Decl. ¶ 7.  The transcript confirmed that the witness had given

26  testimony only as to a limited understanding of the Apple percentage, not the complete year-by-

27  year information Mr. Van Nest stated was disclosed.  Ex. A (Gold 12/11/15 Depo.) at 13:1-15:25,

28  ――――――――――
[2] *See also* 1/14/2016 Hr'g Tr. at 3:24-25, 5:4-8, 5:17-18, 12:1-6, 16:4-7, 19:4-5, 20:6-12, 21:16-21, 21:24-25, 24:16-23, 26:7-16, 27:23-28:4, 28:14, 28:21.

1   18:14-19:7.  To correct Mr. Van Nest's inaccurate statements to the Court, and to explain why

2   Oracle needed additional information in admissible form, Ms. Hurst explained that the witness

3   had limited his testimony to what the Google revenue-share percentage with Apple had been "at

4   one point in time" to which Mr. Gold had testified.  1/14/16 Hr'g Tr. at 29:10-25.

5          Oracle, as Google now concedes, had no reason to anticipate that Google would raise the

6   precise contents of Mr. Gold's 30(b)(6) deposition at the hearing.  *See* Mot. 11 n.8; *see* Hurst

7   Decl. ¶ 8.  Indeed, Google was arguing against producing *additional* information that Oracle

8   sought, claiming it was irrelevant.  What had already been provided was not, Oracle thought, athe

9   principal issue.  But based on Mr. Van Nest's assertions, Oracle referred to the deposition

10  transcript to ensure that the Court had accurate information as part of a discussion that *Google*

11  initiated.  Given the comments by Google's counsel, it was not effective or appropriate to argue

12  about who was right about the contents of the deposition transcript when it could be readily

13  verified.  Ms. Hurst read the transcript to the Court in the heat of an argument to put to rest the

14  dispute about the deposition, and did not think to censor her response.  Hurst Decl. ¶¶ 6-9.

15         After Ms. Hurst read the portion of the transcript to which Mr. Van Nest had referred in

16  his argument, Mr. Van Nest objected and requested a sealing order.  1/14/16 Hr'g Tr. at 29:23-

17  30:18.  In response to the Court's inquiry, Ms. Hurst correctly stated that the transcript was

18  labeled confidential.  *Id.* at 30:8-10.  Judge Ryu then declined Google's request, noted that "some

19  of the stuff is going to come out," and stated that she would consider Google's request further.

20  *Id.* at 30:5-31:3.  That was the end of the discussion.  *Id.* at 31:4.  The next week, the Court

21  denied Google's request to seal that portion of the transcript.  ECF No. 1434 at 2.

22         **B.      THE "GOOGLE INFORMATION"**

23         Google also now objects to disclosure of Android revenue and profit numbers that it did

24  *not* address at the January 14 hearing, which it calls "Google Confidential Information."  This

25  information came up in response to the Court's request that Ms. Hurst "explain" how the

26  requested information "would play into apportionment of profits," which was part of a broader

27  inquiry regarding Oracle's damages analysis. 1/14/16 Hr'g Tr. at 3:21-25.  Ms. Hurst referred to

28  gross estimates for revenue and profits associated with Android as part of the explanation that the

ORACLE'S OPPOSITION TO MOTION FOR FINDING
OF CIVIL CONTEMPT AND FOR SANCTIONS

1    Court requested, and then later in response to a question from the Court regarding the relevance

2    of this information to fair use issues.  *Id.* at 4:1-8:1.  Google did not object to or express any

3    concern about the disclosure of the Google Information at the hearing.  Oracle and its counsel did

4    not comment in the media, or publicly discuss either the Apple or Google information following

5    the hearing, although identical numbers were part of May's trial.  Hurst Decl. ¶ 10.

6         On January 19, 2016 Google's counsel wrote to Oracle's counsel requesting that Oracle

7    join in a request to seal portions of the transcript.  Before Oracle could respond, the Court issued

8    an order that day denying Google's earlier request to seal.  ECF No. 1434 at 2.  Google thereafter

9    filed a motion for reconsideration of the ruling denying its motion to seal the "Apple Confidential

10   Information," and also filed its first motion to seal the "Google Confidential Information."  *See*

11   ECF Nos. 1440 & 1441.  Oracle did not oppose the relief requested in Google's motions, and

12   stated that Oracle took no position on the requests.  *See* ECF Nos. 1442 & 1478.  The Court

13   thereafter issued an order two months after the January 14 hearing granting the majority of

14   Google's requests to seal.  ECF No. 1541 (dated March 21, 2016).

15        C.        SUBSEQUENT USE OF THE INFORMATION ORDERED PRODUCED BY JUDGE RYU

16        Judge Ryu ultimately ordered disclosure of Google's payments to mobile providers with

17   the identity of those providers masked, with the protection for Oracle that Google could not rely

18   upon Oracle's inability to identify the mobile providers in any way in attacking Oracle's use of

19   the information.  ECF No. 1436 (Order Re MTC).  As noted above, this data became central in

20   the discussion of the economics and damages experts.  Google's damages expert actually relied

21   on Google's internal Apple revenue share number to apportion Android-related ad revenue.  ECF

22   No. 1563-7 (Leonard 3/10/16 Rpt.) ¶¶ 63-65.  Oracle's expert discussed the significance of the

23   Apple payments in his reports, and relied upon a weighted average of all mobile platform revenue

24   sharing payments to derive his Platform Contribution Factor.[3]

25        During *Daubert* and *in limine* proceedings, the parties and the Court publicly discussed

26   Google Information that had been previously designated confidential under the Protective Order.

27   *See, e.g.*, 4/19/2016 Hr'g Tr. at 94:17-95:11 (discussing Android's overall revenues, profits, and

28   _____

[3] Revenue share such as the Apple Information would have been presented during the damages
phase.  *See, e.g.*, ECF No. 1798 at 9:9-12 (permitting use of revenue share data).

1  revenue sharing percentage), 131:11-14 (Android's revenues and profits); 4/20/2016 Hr'g Tr. at

2  68:16-20, 70:1-4 (discussing Android revenue and profits); ECF No. 1784 (MIL Ord. Re Dr.

3  Leonard) at 4 (Android's profits); ECF No. 1798 (Ord. Re Malackowski) at 2-4 (Android

4  revenues, profits, and revenue sharing figures).  None of these hearings were sealed, and

5  proceedings were consistently open to the public.  The Court subsequently denied Google's

6  request to exclude, among other things, the Google Information, ECF No. 1773, and at trial

7  Android revenue information was the subject of testimony and argument in open court during the

8  liability phase, *e.g.*, Trial Tr. 251:23-252:8; 1777:5-14, 2140:17-20.

9  **ARGUMENT**

10  **II.**    **CONTROLLING LEGAL STANDARDS**

11      "The standard for finding a party in civil contempt is well settled:  The moving party has

12  the burden of showing by clear and convincing evidence that the contemnors violated a specific

13  and definite order of the court."  *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (quotation

14  marks omitted).  There can be no contempt when the order is "ambiguous" or when there is

15  "doubt or uncertainty in the minds of those to whom it is addressed."  *Vertex Distrib., Inc. v.*

16  *Falcon Foam Plastics, Inc.,* 689 F.2d 885, 889, 891 (9th Cir. 1982).  The moving party must

17  demonstrate that the party accused of contempt (1) "violated the court order, (2) beyond

18  substantial compliance, (3) not based on a good faith and reasonable interpretation of the order,

19  (4) by clear and convincing evidence."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,

20  10 F.3d 693, 695 (9th Cir. 1993) (reversing sanctions order).  "'[T]echnical or inadvertent

21  violations . . . will not support a finding of civil contempt.'"  *Stone v. City & Cnty. of S.F.*, 968

22  F.2d 850, 857 (9th Cir. 1992) (ellipses in original).

23      Contempt citations inflict serious reputational injuries and thus should not be imposed

24  lightly.  To meet the controlling legal requirements, contempt must "be clear and certain."

25  *Imageware, Inc. v. U.S. W. Commc'ns*, 219 F.3d 793, 797 (8th Cir. 2000).  "Any doubts" whether

26  the requirements are "met in a particular case must be resolved in favor of the party accused of

27  civil contempt."  *M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, No. 12cv01424 CAB (RBB), 2014

28  WL 3942200, at *4 (S.D. Cal. Aug. 11, 2014) (quoting 7 James Wm. Moore et al., *Moore's*

1   *Federal Practice* § 37.51[7][b], at 37-109 (3d ed. 2013)).

2          The standard for imposing sanctions under Rule 37(b)(2) is similarly rigorous.  A court

3   has authority to impose sanctions under Rule 37(b)(2) when a party "fails to obey an order to

4   provide or permit discovery."  Even when a party has violated an order, "[i]n the Ninth Circuit,

5   [Rule 37] sanctions are appropriate only in 'extreme circumstances' and where the violation is

6   'due to willfulness, bad faith, or fault of the party.'"  *Fair Housing of Marin v. Combs*, 285 F.3d

7   899, 905 (9th Cir. 2002); *see also Adams v. Albertson*, 2012 WL 1636064, at *1 (N.D. Cal. May

8   9, 2012) ("Rule 37 sanctions are appropriate in extreme circumstances where violations are due to

9   willfulness, bad faith, or fault of the party.").

10  **III.    GOOGLE'S MOTION FAILS TO ESTABLISH A PROTECTIVE ORDER VIOLATION**

11         This Court's Order adopting the Protective Order only subject to certain conditions casts

12  substantial doubt on whether the Protective Order applies to statements made in open court

13  hearings.  ECF No. 68 ¶ 5 ("Any confidential materials used openly in court *hearings* or trial will

14  not be treated in any special manner *absent a further order.*" (emphasis added)).  Even ignoring

15  the Court's conditions, the Protective Order *at most* required advance notice to Google *if* Oracle

16  reasonably expected to use confidential material at the January 14 hearing.  ECF No. 66, ¶ 5.2(b).

17  Both sides agree that Oracle *did not* anticipate the disclosure.  Mot. 11, n.8 ("Google accepts …

18  [that Oracle's counsel] did not expect in advance of the hearing to disclose the information."); *see*

19  Prot. Ord. ¶ 5.2(b) (requiring advance notice to ensure "only authorized individuals … are

20  present.").  Google's motion fails to establish a violation of the Protective Order.

21         **A.      PARAGRAPH 5 OF THE COURT'S ORDER EXEMPTS STATEMENTS IN COURT**

22         Beyond boilerplate provisions, Google's motion fails to cite single provision in the

23  Protective Order that it claims was violated by a disclosure of information at the January 14

24  hearing, and Google's argument relies instead on provisions that apply once a *violation has*

25  *occurred*.  Google cannot cite a term that was violated because none exists, as this Court's orders

26  and statements make clear and the parties' consistent practice confirms.

27         The Court's order approving the Protective Order was "subject to … conditions," which

28  included a condition in Paragraph 5 that "[a]ny confidential materials used openly in court

1    hearings or trial will not be treated in any special manner absent a further order." ECF No. 68 ¶

2    5. Paragraph 4 of the Court's Order also emphasizes "public access" to the court proceedings.

3    Indeed, throughout the litigation, this Court has emphasized that "the United States of America

4    and the public own this courtroom" and that "we cannot run a public trial and constantly be

5    excusing people from the courtroom." *See, e.g.*, 2/24/16 Hr'g Tr. at 6:2-25; 4/19/2016 Hr'g Tr. at

6    7:12-13 ("The public has a right to see what goes on in their District Courts.").

7         The understanding that the Protective Order does not apply to statements made in court

8    hearings or trial is consistent with the parties' approach to pretrial *Daubert* and *in limine* practice,

9    outlined above. Confidential information was discussed publicly at the 2/24/2016 tutorial hearing

10   and during the *Daubert* and *in limine* hearings, but the courtroom was not sealed and confidential

11   information was not treated differently from other material. The Court's order and statements had

12   made clear that where a public hearing called for confidential information, the information was

13   not subject to special treatment.[4]

14        The information Google identifies in its motion was disclosed in a public court hearing

15   where the topic of the hearing called for discussion of material designated confidential under the

16   Protective Order. The parties filed a joint discovery letter brief laying out the issue for the

17   hearing, and both sides understood that confidential information related to Google's revenue

18   sharing agreements with third parties was the issue for the hearing. ECF No. 1404. In fact,

19   Google's portion of the statement cited the specific deposition excerpts from the Gold deposition

20   that Google now complains it lacked notice would be discussed. *Id.* at 7 (citing Gold 12/11/15

21   Depo. at 13:1-16:23 (discussing Google's revenue sharing arrangement with Apple)). And it was

22   Google's counsel that raised the same deposition testimony seven times at the January 14 hearing

23   before Oracle was compelled to respond with accurate information. 1/14/16 Hr'g Tr. at 16:14-16

24   ("Our 30(b)(6) witness [Mr. Gold] outlined the revenue sharing percentage."), 16:14-16, 17:1-5,

25   ---
     [4] Nor can the text of the Protective Order be read to apply to public court hearings. The purpose
     of advance notice of expected use of Protected Material is "so that the other parties can ensure

26   that only authorized individuals . . . are present at those proceedings." ECF No. 66 ¶ 5.2(b).
     Google could have asked to seal the courtroom, but it did not do so even though its papers and

27   argument put the relevant information at issue. Google likely did not seek to close the courtroom
     because doing so requires that information be of a "compelling nature." *See* ECF No. 68, ¶ 4

28   ("Only social security numbers, names of juveniles, home addresses and phone numbers, and
     trade secrets of a compelling nature (like the recipe for Coca Cola, for example) will qualify.").

ORACLE'S OPPOSITION TO MOTION FOR FINDING
OF CIVIL CONTEMPT AND FOR SANCTIONS

1   17:17-19, 20:3-11, 20:13-16, 29:10-13.  Google's counsel also responded to Oracle's counsel's

2   general statements by stating:  "That's not true.  That's absolutely not true."  *Id.* at 20:7-8.

3   Oracle's counsel needed to respond to Judge Ryu with what was true.

4         Because Google cannot show a violation of the Protective Order, its motion *assumes* a

5   violation rather than *demonstrates* a violation occurred.  Mot. 8.  Google cites no section of the

6   Protective Order that was actually violated, but proceeds to charge Oracle with failing to take

7   remedial measures purportedly required by the Protective Order anyway.  The only provision of

8   the Protective Order that might apply to a public hearing is Paragraph 5.2(b), which Google

9   concedes was not violated and cites only in footnotes.  *See* Mot. 3 n.2, 11 n.8.  Nor does Google's

10  motion address the Court's order adopting and *modifying* the parties' proposed Protective Order,

11  although the applicability of the Court's order was briefed before, as Google is well aware.  ECF

12  No. 68; ECF Nos. 1442 at 2, 1478 at 2.  Google's failure to establish a Protective Order violation,

13  including by failing to address or even cite the Court's order adopting and modifying the

14  Protective Order, is dispositive.  Google's motion should be denied on this basis alone.  As set

15  forth below, Google's other arguments lack merit.

16        **B.      GOOGLE AGREES THAT NO ADVANCE NOTICE WAS REQUIRED FROM ORACLE**

17        Google concedes that Oracle's counsel did not anticipate disclosing confidential

18  information at the January 14 hearing, Mot. 11 n.8, but argues that Oracle should have given

19  advance warning anyhow, Mot. 10.  Oracle could not have given notice of a disclosure it did not

20  anticipate.  Certainly Oracle could not have anticipated that Mr. Van Nest would claim

21  incorrectly that information "from 2008, and probably earlier forward" had been disclosed,

22  1/14/16 Hr'g Tr. at 17:5-6, in light of Mr. Gold's actual testimony, which was vague and limited

23  to one point in time, Ex. A (Gold 12/11/15 Depo.) at 19:2-7.

24        Google had notified Oracle that the deposition excerpts from Mr. Gold's deposition would

25  be relevant to the January 14 hearing.  ECF No. 1404 at 7 (Google: "Oracle ignores the fact that

26  Google also designated another 30(b)(6) witness …, Mr. Gold, who testified about Google's

27  revenue share percentages with *Apple* and mobile carriers, and even directed Oracle to the

28  specific P&L statement that contains such revenue."  (citing Gold 12/11/15 Depo. at 12:17-16:14)

1   (emphasis added)).  If Google did not want the deposition discussed at the hearing, it should not

2   have mischaracterized its contents at the hearing.  Google's counsel referenced the deposition

3   seven times, and put the exact content of the deposition at issue before Oracle mentioned it even

4   once.  1/14/16 Hr'g Tr. at 16:14-16, 16:14-16, 17:1-5, 17:17-19, 20:3-11, 20:13-16, 29:10-13.

5   Moreover, Google's counsel argued to Judge Ryu that Ms. Hurst had inaccurately described the

6   testimony.  *Id.* at 20:3-8.  That Oracle had a duty under the Protective Order or otherwise to notify

7   Google that it planned to respond to Google's arguments does not seem reasonable.

8          The terms of the Protective Order provide Google no support.  Paragraph 5.2(b) of the

9   Protective Order provides:  "Parties shall give the other parties notice if they *reasonably expect* a

10  deposition, hearing or other proceeding to include Protected Material so that the other parties can

11  ensure that only authorized individuals who have signed the 'Acknowledgment and Agreement to

12  be Bound' (Exhibit A) are present at those proceedings."  ECF No. 66 ¶ 5.2(b) (emphasis added).

13  Google planned to rely on confidential information at the January 14 hearing, gave no advance

14  warning, made no effort to exclude unauthorized individuals from the courtroom, and sought no

15  prophylactic relief.  Instead, Google referenced the information repeatedly, mischaracterized the

16  testimony, claimed Oracle's counsel's statements were untrue, and now contends that Oracle was

17  wrong to respond.

18         For Oracle's part, the specific statements in question were made in the course of the back-

19  and-forth argument at the January 14 hearing, in response to questions from the Court, and to

20  correct inaccurate statements by Google's counsel.  Oracle did not intend nor did its counsel

21  reasonably expect that Oracle's arguments at the hearing would include Protected Material.  Hurst

22  Decl. ¶¶ 3-4, 8.  Thus, it is clear under the plain language of the key provision of the Protective

23  Order (¶ 5.2(b)) that there was no violation on Oracle's part.

24     **C.     REMEDIAL PROVISIONS IN THE PROTECTIVE ORDER ARE INAPPLICABLE**

25            **1.     THE PROTECTIVE ORDER AND UNDISPUTED FACTS REQUIRED NO
                        ACTION WITH RESPECT TO THE PUBLIC**
26

27         Citing Paragraph 12 of the Protective Order, and even though multiple Google

28  representatives attended the hearing, Google argues that Ms. Hurst violated the Protective Order

1   because she "kept to herself" that that the public was present.  *See* Mot. 8, 9, 10-11.  Google's

2   team could see for themselves that the public was present in the courtroom.

3        Google asserts that Oracle's counsel was obligated under ¶ 12 of the Protective Order to

4   "immediately notify" Google of a reporter's presence, inform the reporter of the terms of the

5   Protective Order, and request that the reporter execute an Acknowledgment and Agreement to be

6   Bound by the Protective Order.  Mot. 8.  Google's argument is predicated on the unproven claim

7   that a violation of the Protective Order had occurred.  Not only was there no violation, but

8   Oracle's counsel had no reason to believe there had been a violation.  In any event, at the time

9   Google contends that Oracle's counsel should have been asking a reporter to sign the Protective

10  Order, ECF No. 66 ¶ 12, the Court had just rejected Google's request to seal the transcript.  At

11  that time, Oracle had no reason to take any remedial steps and certainly was not required to

12  impose the Protective Order upon a journalist.

13            **2.**       **ORACLE WAS NOT REQUIRED TO TAKE ACTION WITH THE COURT**

14       Google also claims that Oracle's counsel should be held in contempt because she and

15  others purportedly did not fully cooperate in its requests that information be sealed.  As Google

16  acknowledges, however, Oracle never opposed any request to seal or motion for reconsideration

17  after the motion to seal was denied.  To the contrary, Oracle "took no position" with respect to the

18  requests.  *See* ECF Nos. 1442 & 1478.[5]  Oracle took no position on Google's motions because the

19  information Google sought to seal was not Oracle information and thus Oracle had no basis to

20  argue it was confidential.  The Protective Order does not require Oracle to join or stipulate to a

21  motion.  *See* Mot. 4-5, 8-10.  Oracle did not oppose or hinder Google's motion to seal and to seek

22  reconsideration of its motion to seal, which the Court initially denied.[6]

23       Though Google relies on ¶ 12 of the Protective Order, nothing in that Order contemplates

24  or requires remedial measures *directed at the Court*, such as a motion to seal.  There can be no

25  unauthorized disclosure to the Court.  *See* ECF No. 66 ¶¶ 7.2(d), 7.3(d) (authorizing disclosure to

26  "the court and its personnel").  Nor is there any requirement to notify Google of a disclosure to

27  _____

[5] Google "state[d] no position" as to information designated by Oracle.  *E.g.,* ECF No. 1560 at 4.

28  [6] Moreover, Google included attacks against Oracle and its counsel that Oracle could not possibly have joined.  *See, e.g.*, ECF No. 1438 at 2 ("Oracle improperly disclosed" information).

the Court (¶ 12(a)), or to "retrieve all unauthorized copies [from the Court]" (there were no copies to retrieve) (¶ 12(b)), or to inform the Court of the terms of the Protective Order (¶ 12(c)), or request the Court to execute the Acknowledgment and Agreement to be Bound (¶ 12(d)).  ECF No. 66 ¶ 12.  Accordingly, Oracle complied with the Protective Order.  It did not oppose or attempt to hinder Google's motion to seal or reconsideration of the motion's denial at any point.

## IV.   GOOGLE FAILS TO MEET THE HIGH BURDEN REQUIRED TO PROVE CONTEMPT

There was no violation of the Protective Order, and Google has presented no legal or factual basis for concluding that "clear and certain" contempt occurred, *Imageware, Inc.*, 219 F.3d at 797, especially since "[a]ny doubts" on that point must be resolved in favor of Oracle, *M. Seven Sys. Ltd.*, 2014 WL 3942200, at *4; 7 *Moore's Federal Practice* § 37.51[7][b], at 37-109.

In this case there is at least substantial doubt regarding the application of the Protective Order to statements in open court when there was no obligation to give notice under ¶ 5.2(b), and the confidential information was in pre-hearing briefing.  Moreover, the facts and circumstances, including Google's failures to object, the Court's rejection of Google's requests to seal, and the manner in which the statements at issue came up at the January 14 hearing, all show that there is no clear and convincing evidence of contempt.  Google's inability to cite any directly supportive legal authority, or any case in which a party has sought a finding of contempt based on similar statements made in open court, also fatally undercuts its claim for contempt.

### A.   DISAGREEMENTS REGARDING APPLICATION OF THE PROTECTIVE ORDER CONFIRM THAT A CONTEMPT CITATION IS NOT APPROPRIATE

Even assuming, *arguendo*, there was a violation of the Protective Order, Google has failed to meet its burden to establish by clear and convincing evidence a specific and definite violation of an unambiguous order.  *See Dyer*, 322 F.3d at 1190-91.  Courts have repeatedly rejected findings of civil contempt when a reasonable interpretation of the language of the order at issue would not cover the accused conduct.  Indeed, numerous decisions finding contempt have been reversed precisely on that basis.  *See, e.g., Imageware*, 219 F.3d at 797 (reversing contempt finding because "a reasonable person could have read the order as a whole" not to prohibit party's conduct); *United States v. Saccoccia*, 433 F.3d 19, 29 (1st Cir. 2005) (reversing contempt finding

1   because "the Order, when issued, could have been interpreted in various ways"); *see also Vertex*,

2   689 F.2d at 891 (finding no contempt where parties' "interpretation was not unreasonable");

3   *Biovail Labs., Inc. v. Anchen Pharms., Inc.*, 463 F. Supp. 2d 1073, 1080-81 (C.D. Cal. 2006)

4   (denying contempt motion based on protective order where provision could be reasonably

5   interpreted as not covering the accused conduct).

6          These cases establish that contempt cannot be based on an order susceptible to two

7   reasonable readings, one of which does not cover the accused conduct.  Here, there is at least

8   substantial doubt regarding the application of the Protective Order to statements made at a court

9   hearing, when there was no requirement or ability to give advance notice under ¶ 5.2(b).  The

10  hearing had not been closed, and ¶ 5 of the Court's Order approving the Protective Order

11  governed.  ECF No. 68.  The statements made in court during the back-and-forth of argument

12  were directly relevant to the issues and arguments raised by Google, responsive to Judge Ryu's

13  questions, and necessary to correct inaccurate statements made by Google's counsel, which

14  Oracle had no reason to expect would be made.  Hurst Decl. ¶¶ 6-9.

15         The absence of clear and convincing evidence of a violation of contempt is underscored

16  by additional facts.  First, as discussed above, Google *itself* did not object to the disclosure of

17  what it now calls the "Google Confidential Information," and cannot now use it as a springboard

18  for holding Oracle's counsel in contempt.  Judge Ryu twice declined to seal the Apple

19  Information, and there is no question the statements were relevant to the issues being argued.

20         **B.     GOOGLE CITES NO SUPPORTING AUTHORITY**

21         As noted above, Google cites no case in which (1) any court has based a contempt citation

22  on a protective order violation arising out of a statement made at a hearing in open court, or

23  (2) anyone even attempted to obtain such relief.  Nor does Google cite any case in which an

24  attorney was found to have violated a protective order based on a statement made in court.

25         Instead, Google cites a handful of cases that it characterizes as "similar" to this one.  *See*

26  Mot. 14 & n.10.  The cases cited by Google are anything but "similar."  The conduct in those

27  cases is starkly different from the facts of this case.  In *Beam Sys. Inc. v. Checkpoint Sys., Inc.*,

28  No. CV95-4068-RMT (AJWx) 1997 U.S. Dist. LEXIS 8812 (C.D. Cal. Feb. 5, 1997), for

1   example, the parties' protective order required that any person selected by plaintiffs to serve as a

2   consultant or testifying expert, and to whom defendants' proprietary software and related

3   materials would be disclosed, be "independent."  The court found that plaintiffs violated the

4   protective order and imposed sanctions on them because they disclosed defendants' proprietary

5   software to an expert that had done hundreds of thousands of dollars' worth of business with

6   plaintiffs and thus was not independent.  Similarly, the court in *Bradford Techs., Inc. v. NCV*

7   *Software.com*, No. C 11-40621 EDL, 2013 U.S. Dist. LEXIS 1592 , at *20-21 (N.D. Cal. Jan. 3,

8   2013), held plaintiff and his attorneys in contempt and imposed sanctions on them after plaintiff's

9   attorneys admitted they breached the parties' protective order by turning over defendants'

10  "attorneys' eyes only" source code to defendants' direct competitor, the plaintiff.  The other

11  decisions cited in the Motion are equally inapposite.[7]

12          The absence of authority resembling this case is unsurprising given case law addressing

13  public access to hearings.  *See, e.g., Riel v. Ayers*, No. CIV, S-01-0507 LKK/KJM, 2010 WL

14  3835798, at *4 (E.D. Cal. Sept. 30, 2010) ("there is a presumption of public access to civil

15  proceedings"); *see also* ECF No. 540 ("The United States district court is a public institution, and

16  the workings of litigation must be open to public view.  Pretrial submissions are a part of trial.");

17  4/19/2016 Hr'g Tr. at 7:6-23 (denying Google's motion to maintain revenue information under

18  seal during trial); 2/24/2016 Hr'g Tr. at 5:19-6:25 ("… I can't say never, but possibly one, maybe,

19  document in the whole case would ever be so important that we'd have to clear the courtroom. So

20  this miscellaneous stuff about proprietary information, especially if it's more than a year old,

21  come on.  Don't do that.  We're not going to clear the courtroom over and over again.").

22  **V.     ORACLE AND ITS COUNSEL AT ALL TIMES ACTED IN GOOD FAITH**

23          Oracle acted under a good faith and reasonable interpretation of the Court's order

_____

24  [7] *See Harmston v. City & County of S.F.*, 2008 U.S. Dist. LEXIS 9622  (N.D. Cal. Jan. 29, 2008)
    (finding contempt for disclosing materials outside of court proceedings); *Colaprico v. Sun*
25  *Microsystems, Inc.*, 1994 U.S. Dist. LEXIS 21853 (N.D. Cal. Aug. 22, 1994) (finding contempt
    for failing to return confidential documents or certify their destruction following close of
26  litigation); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir. 1983) (affirming
    civil contempt and sanctions based on failure to return documents as required by protective
27  order); *Apple, Inc. v. Samsung Elecs. Co.*, 2014 U.S. Dist. LEXIS 11778 (N.D. Cal. Jan. 29,
    2014) (finding contempt where information was used against litigant's direct competitor); *Life*
28  *Techs. Corp. v. Biosearch Techs., Inc.*, 2012 U.S. Dist. LEXIS 63974 (N.D. Cal. May 7, 2012)
    (finding contempt where source code was disclosed to direct competitor).

1   adopting and modifying the Protective Order.  *Dual-Deck*, 10 F.3d at 695 ("[A] person should not

2   be held in contempt if his action appears to be based on a good faith and reasonable interpretation

3   of the court's order." (quotation marks and brackets omitted)).  Oracle did not "obstruct"

4   Google's efforts to seal, or do anything to further disseminate the information.  *See id.*

5   ("Substantial compliance with the court order is a defense to civil contempt … not vitiated by a

6   few technical violations." (quotation marks omitted)); Hurst Decl. ¶ 10.[8]  No further disclosure of

7   information occurred.  Hurst Decl. ¶ 10; *see O'M & Assocs., LLC v. Ozanne*, No. 10-cv-2130,

8   2011 WL 2160938, at *5 (S.D. Cal. June 1, 2011) (rejecting contempt and Rule 37 sanctions on

9   substantial compliance where "much financial information ha[d] been produced" and Plaintiff

10   "wrongfully disclosed one item of confidential information.").  Given Google's concession that

11   no advance notice was required, Mot. 11 n.8, any unanticipated disclosure at the January 14

12   hearing was at worst a technical violation of the Protective Order because Google knew the

13   subject matter of the hearing, had itself cited the confidential information in its briefing, and made

14   claims about the contents of the information in open court.  *See Dual-Deck*, 10 F.3d at 695.

15      The lengths to which Google is willing to stretch in its attempt to obtain a contempt

16   citation are further illuminated by its implication that the statements in question were gratuitous

17   and ill-intentioned.  That suggestion, which was more explicit in Google's prior filings and

18   covered in the media,[9] is refuted by the transcript of the January 14 hearing.  *See pages 3-5 above.*

19                                        **CONCLUSION**

20      The relief sought by Google is unprecedented.  The Motion falls short of the clear and

21   convincing evidence required by law, and there is no basis for any conclusion that Oracle or its

22   counsel acted in bad faith.  Google's motion should be denied.

23

_____

24   [8] The Motion's claim that Ms. Hurst sought to obstruct the sealing motion by noting that there
      had been media reports regarding payments to Apple is wrong.  Mot. 4.  There *were* prior reports

25   of the Apple revenue number (which Google does not deny).  *See, e.g.,* Greg Sterling, *Financial
      Analyst Affirms Google's $1 Billion In "Default Search" Payments to Apple*, Search Engine Land

26   (Feb. 11, 2013, 7:25 PM), http://searchengineland.com/financial-analyst-affirms-googles-1-
      billion-in-default-search-payments-to-apple-148255.  Second, Google's counsel made explicitly

27   clear that he was *not asking to seal the record on that point*.  *See* Jan. 14, 2016 Tr. at 30:12-18.
      [9] *See* ECF No. 1457 (Google's Précis Re Sanctions) at 2 (referencing Oracle's counsel's

28   "improper disclosure," "wrongdoing," "refus[al] to take responsibility for the violation," and
      "profound disregard for this Court's Protective Order.").

Dated: August 8, 2016

KAREN G. JOHNSON-MCKEWAN
ANNETTE L. HURST
GABRIEL M. RAMSEY
PETER A. BICKS
LISA T. SIMPSON
ROBERT P. VARIAN
Orrick, Herrington & Sutcliffe LLP


By: _____ */s/ Robert P. Varian* _____
       Robert P. Varian
       Attorneys for Plaintiff
       ORACLE AMERICA, INC.