KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone:    404-572-4600
Facsimile:    404-572-5100

KING & SPALDING LLP
JOSEPH R. WETZEL - # 238008
jwetzel@kslaw.com
101 Second Street, Suite 2300
San Francisco, California 94105
Telephone:    415-318-1200
Facsimile:    415-318-1300

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GOOGLE INC.,<br><br>　　　　　Defendant. | Case No. 3:10-cv-03561 WHA<br><br>**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A FINDING OF CIVIL CONTEMPT AND FOR SANCTIONS**<br><br>Date:　　September 22, 2016 at 8:00 a.m.<br>Dept.:　　Courtroom 8, 19th Fl.<br>Judge:　　Hon. William Alsup |

**INTRODUCTION**

Oracle's opposition to Google's motion for civil contempt and sanctions frames two clear issues for the Court's consideration:

(1) whether an attorney entrusted with confidential information of other parties and/or third parties under a protective order may disclose that information in open court, regardless of who is present, as long as the disclosure is purportedly being directed to the Court; and

(2) whether, after having made such a disclosure, the attorney can refuse to cooperate in efforts to limit the further dissemination of the confidential information that she or he disclosed in open court.

Oracle's opposition makes clear that Oracle believes that "yes" is the correct answer to both of these questions. Google believes that the only proper answer to both questions is "no"—and that any other answer to either question is fundamentally inconsistent with the language of the Court's model protective order that is at issue on this motion. For protective orders to serve their intended and necessary purposes, attorneys who receive confidential information under such orders must be held to a standard of scrupulous adherence to their terms. There can be no room for debate regarding whether a disclosure is permitted or regarding the obligations of counsel in the event of a prohibited disclosure, and the Protective Order in this case leaves no such room.

Oracle's opposition contains a lengthy but irrelevant discussion of why Oracle believes that Ms. Hurst's disclosures at the January 14 hearing before Judge Ryu were "appropriate" and/or "necessary." ECF 2026 at 2-5, 13. Oracle also engages in improper attempts to shift to Google responsibility for Oracle's actions. *E.g., id.* at 8 n.4. But, at its core, Oracle's opposition is based on the position that the Protective Order permits an attorney to disclose protected, confidential information of other parties in open court, without advance notice, regardless of who may be present in the courtroom at the time, if the disclosure is purportedly directed to the Court. Oracle even argues that the Protective Order is subject to differing interpretations in this regard—and that there can be no finding of contempt because there is

1

"substantial doubt" regarding the applicability of the Protective Order to in-court statements. *Id*. at 7, 12, 13.  Oracle refuses to acknowledge the clear language of the Protective Order that forecloses these arguments and, relying on its denial that any violation occurred, argues that no remedial steps were therefore necessary.

Oracle's position strikes at the heart of the safeguards that a protective order provides to both parties and non-parties whose confidential information is produced during discovery in accordance with its terms.  While the Protective Order in this case—like the Court's model order—clearly permits disclosures to the Court, it also clearly and unambiguously provides in more than one provision that protected information may be disclosed ***"only"*** to persons identified in the order.  Oracle's counsel's disclosures were made to the Court and, at the same time, to all persons present in the courtroom—and Oracle's counsel has confirmed that at least one reporter was present at the hearing.  ECF 1442-1 (Hurst Decl.) at 3, ¶ 14.  Under any plausible reading of the Protective Order, Oracle's counsel disclosed confidential information to someone who was not in one of the categories of persons to whom she was permitted to disclose the information.  There can be no serious question that the disclosures violated the Protective Order.  The Protective Order clearly provides that protected information may be disclosed *only* to the categories of persons identified in the order.

Oracle's position therefore fails as an objective matter.  Based on the plain language of the Protective Order, it is simply not reasonable for counsel to believe that she or he can make disclosures *at any time* to persons not entitled to receive protected information.  Oracle raises a similarly-misguided argument to the effect that paragraph 5 of the Court's December 20, 2010 Order approving the stipulated protective order, ECF 68 (the "Approval Order"), "exempts" in-court disclosures from the Protective Order.  ECF 2026 at 7-9.  That paragraph of the Approval Order only addresses whether protected information loses its protected status *after* it is "used openly in court hearings or trial," and plainly contemplates consideration by the Court, prior to such use, of whether any the information should be "used openly" and, if so, whether any further protection is appropriate thereafter.  It is not susceptible to the reading Oracle advances, namely that an attorney in possession of protected information may freely disclose

1  that information in a hearing and thereby strip the information of its protection, and that any
2  such disclosure is not subject to the provisions of the Protective Order.
3        Oracle's position also fails as a subjective matter.  Oracle argues that it is "a reasonable
4  interpretation" of the Protective Order that any and all disclosures to the Court are "exempt"
5  from the provisions of the order and that Oracle's counsel entertained "doubt and uncertainty"
6  regarding the Protective Order.  But Oracle provides no evidence whatsoever that Ms. Hurst or
7  any of Oracle's other counsel so interpreted the Protective Order or had any such doubt or
8  uncertainty either at the time of her disclosure or thereafter, when Google requested Oracle's
9  cooperation in limiting the dissemination of the protected information that she had disclosed.
10        Google's motion raises no issues regarding whether an attorney may disclose protected
11  information to the Court or regarding the circumstances in which or reasons why an attorney
12  may do so.  The motion is addressed to the disclosure—prohibited by the Protective Order—of
13  protected information to individuals to whom disclosure is ***not*** permitted, and the
14  consequences of such disclosures.  It is irrelevant to the motion whether Ms. Hurst's
15  disclosures, if they had been made only to Judge Ryu, were appropriate in the context of the
16  issues being discussed at the hearing.  Even if the disclosures to the Court were necessary
17  (which they were not) and germane to the subject being discussed with Judge Ryu, the way in
18  which Ms. Hurst made the disclosures—in open court, without advance notice, to an audience
19  that included the media—violated the Protective Order.  And Oracle's failure thereafter to
20  promptly consent to the sealing of the transcript and to join in Google's motions to reconsider
21  and seal was inconsistent with the requirements of the Protective Order.

## ARGUMENT AND CITATION OF AUTHORITIES

### I. Ms. Hurst's Disclosures Violated the Protective Order.

24  Section 7 of the Protective Order, ECF 66, governs "access to and use of protected
25  material."  Paragraph 7.1 of the order specifies that "Such Protected Material [disclosed or
26  produced by another party or a non-party] may be disclosed [by a Receiving Party] ***only*** to the
27  categories of persons and under the conditions described in this Order."  *Id.* at 9, ¶ 7.1
28  (emphasis added).  Paragraph 7.3 speaks specifically to the disclosure of information

3
GOOGLE'S REPLY IN SUPPORT OF MOTION FOR CIVIL CONTEMPT AND SANCTIONS
Case No. 3:10-cv-03561 WHA

designated "Highly Confidential – Attorneys' Eyes Only." It provides that "[u]nless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' or 'HIGHLY CONFIDENTIAL – SOURCE CODE' *only* to" the six specified categories of recipients identified in paragraphs 7.3. *Id.* at 10, ¶ 7.3 (emphasis added).

As Google argued in its motion, ECF 2014 at 11, Ms. Hurst's disclosures violated both paragraph 7.1 and 7.3. Neither members of the media nor members of the public are included in the categories of permitted recipients under section 7 of the Protective Order.

Oracle nonetheless argues that "[b]eyond boilerplate provisions, Google's motion fails to cite a single provision in the Protective Order that it claims was violated." ECF 2026 at 7. Paragraphs 7.1 and 7.3 are hardly "boilerplate provisions." They are the core provisions of the Protective Order, which limit the persons to whom other parties' protected information may be disclosed.[1] Oracle does not dispute that Ms. Hurst disclosed both the Apple Confidential Information and the Google Confidential Information to at least one member of the media, that both categories of information were designated Highly Confidential at the time of Ms. Hurst's disclosure, or that the transcript of the hearing—if it was made public and not filed under seal—would make the protected, Highly Confidential information available to the public.

Oracle's primary defense to Google's motion rests on its assertion that the Protective Order is ambiguous and that paragraph 5 of the Court's order approving the Protective Order in effect renders the Protective Order a nullity for any statements made in open court. The Protective Order and the Court's approval order are not ambiguous on these issues. The Protective Order does not say that protected information may be disclosed "to the court and anyone else who may be present at the time of a disclosure to the court." Just as it would not permit an attorney in possession of other parties' highly confidential information to disclose that information in a meeting at which both qualified outside experts (who are eligible to

---

[1] Paragraph 7.2 of the Protective Order plays the same role with respect to information designated "Confidential." It similarly restricts disclosure of designated information "only to" specified groups of individuals.

receive such information) and business employees of her client (who are not eligible) are present, the Protective Order imposes on counsel an obligation to be aware at all times of the persons to whom she or he is potentially disclosing protected information.[2]  The Protective Order, plainly and simply, says that protected information may be disclosed *only* to individuals in the categories listed, and it contains no exception for disclosures made in open court.

Paragraph 5 of the Court's Approval Order also does not immunize Oracle's counsel's disclosures.  That paragraph, in its entirety, reads as follows:

> 5.  Any confidential materials used openly in court hearings or trial will not be treated in any special manner absent a further order.

ECF 68 at 2, ¶ 5.  Oracle suggests that this sentence means that "Any confidential materials may be used openly in court at any time, regardless of who is present, and notwithstanding any provisions of the Protective Order that limit use or disclosure of such materials."  It neither says nor means any such thing.  As a matter of plain English, this sentence addresses whether, absent a further order, confidential materials will be entitled to special treatment *after* they have been "used openly in court hearings."  It says nothing about whether such materials may or should be "used openly" in the first place, or the procedures that may or should be followed *before* such open use is permitted to occur.  And it plainly is not a carte blanche license to disclose any and all confidential information in hearings without any potential consequences.

If Oracle's interpretation of paragraph 5 of the Approval Order was correct, the protections of the Protective Order would be eviscerated, and it would be within the power of any person in possession of protected information to make the information public at any hearing.  Such a result is not contemplated by either the Protective Order or the Approval Order.  If accepted by the Court, Oracle's argument would render the Protective Order and others like it (when accompanied by an order containing paragraph 5 of the Approval Order) a

---

[2]  The Protective Order contains no exceptions for disclosures made "in the heat of an argument," ECF 2026 at 4, "in response to probing questions" from the court, *id*. at 1, "during an on-the-fly rebuttal," *id*., or "during the back-and-forth of argument."  *Id.* at 13.  And it also contains no exceptions for an attorney's failure to "think to censor her response," *id*. at 4, after having consulted a deposition transcript that she knew was designated confidential.

1   nullity whenever counsel sets foot in the courtroom.

2   **II.     Oracle Offers No Factual Basis For Its "Reasonable Interpretation" Claim.**

3   Oracle repeatedly asserts in its opposition that it was Ms. Hurst's and Oracle's

4   "reasonable interpretation" of the Court's Approval Order, read together with the Protective

5   Order, that the Protective Order was irrelevant to disclosures made at hearings. *E.g.,* ECF

6   2026 at 12, 14. Oracle further asserts that the Court's Order is "susceptible to two reasonable

7   readings," *id.* at 13, and that there is "substantial doubt" regarding whether the Protective

8   Order applies "to statements made at a court hearing." *Id.* Based on these assertions, Oracle

9   argues that there should be no finding of contempt because Oracle and its counsel acted "in

10  good faith." *Id.* at 14-15.

11  For the reasons stated above, Google disagrees with Oracle's claim that the Court's

12  orders are ambiguous. Even if the orders were arguably ambiguous, however, Oracle's

13  "reasonable interpretation" arguments are unsupported by any factual materials. Ms. Hurst

14  submitted with Oracle's opposition her third declaration regarding these issues, ECF 2027—

15  but nowhere in any of her three declarations has she stated that she interpreted the Protective

16  Order or the Approval Order as Oracle now argues. And Ms. Hurst is the only Oracle lawyer

17  who has submitted a declaration on any relevant fact issue. No other Oracle lawyer involved

18  in Oracle's failure to consent promptly to the sealing of the transcript has submitted any

19  support for the claim that no corrective actions were required under the Protective Order

20  because of a "reasonable interpretation" that no violation had occurred in the first place or their

21  alleged "understanding" that "the Protective Order does not apply to statements made in court

22  hearings."[3] ECF 2026 at 8.

23  **III.    Oracle's Claims of Good Faith Are Unavailing.**

24  Oracle incorrectly claims that this Court cannot make a finding of contempt or impose

---

[3]  Oracle also argues that there can be no finding of contempt when there is "doubt or uncertainty" in the minds of the persons to whom a court order is addressed. ECF 2026 at 6. But Oracle provides no evidence whatsoever regarding any claimed "doubt" or "uncertainty" on the part of Ms. Hurst, her co-counsel or Oracle regarding what was required of them under the Protective Order.

sanctions because Oracle and its counsel purportedly acted in good faith.  ECF 2026 at 14-15.  As the Ninth Circuit has stated, "there is no good faith exception to the requirement of obedience to a court order."  *In re Dual-Deck Video Cassette Recorder Antitrust Lit.*, 10 F.3d 693, 695 (9th Cir. 1993); *Stone v. City & Cnty. of S.F.*, 968 F.2d 850, 856 (9th Cir. 1992) ("Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense.")  While a party's claimed "good faith and reasonable interpretation" of a court order may be relevant to the imposition of sanctions, Oracle's purported interpretation of the court's orders is, as discussed above, neither reasonable nor supported by any competent evidence.

Oracle and its counsel, moreover, did act willfully and in bad faith and were at fault when, following Ms. Hurst's disclosures, they failed to take simple actions that could have mitigated the damage caused by Ms. Hurst's disclosures.  *See In re Dyer*, 332 F.3d 1178, 1192 (9th Cir. 2003) (affirming finding of contempt based on failure to remedy automatic stay violation).  They could have promptly responded to Google's request that Oracle agree to Google's motion to seal the transcript, and they could have consented to Google's motions to reconsider and seal when they were filed.[4]  Ms. Hurst could have responded directly and without qualification to Judge Ryu's question regarding whether the information was subject to the Protective Order, and could have promptly advised Google and the Court that she recognized at least one member of the media who was present when she made her disclosures.  *See generally* ECF 2014 at 8-10.  Oracle and Ms. Hurst took none of these steps.

### IV.     Oracle Proffers Several Irrelevant Arguments and Distractions.

Oracle's opposition contains numerous arguments, assertions and excuses that are not relevant to the issues before the Court on Google's motion.

First, Oracle attempts to explain at length why Ms. Hurst's disclosures were justified or

---

[4] Oracle suggests, ECF 2026 at 5, that it was considering Google's request that Oracle join Google in asking Judge Ryu to seal the transcript when Judge Ryu entered her initial order denying Google's oral request to seal—which came after Ms. Hurst's suggestion, 1/14/2016 Tr. at 30:12-13, that the Apple Confidential Information was already public.  Judge Ryu's order, ECF 1434, was docketed at 3:30 p.m. on January 19, and the transcript was not made available until 4:34 p.m. the next day.  ECF 1437.  Given the speed with which Judge Ryu ordered the transcript sealed following the parties' January 21 filings, ECF 1444, it is likely that she would have sealed the transcript if the parties had filed a joint request on January 20.

1 appropriate, and repeatedly characterizes Google's arguments on January 14 as
2 "mischaracterizations," "inaccurate" and/or incorrect. *E.g.,* ECF 2026 at 1, 4, 9, 10, 13. This
3 has nothing to do with the issues before the Court.

4 To be clear, the issue is not whether counsel may share protected information with the
5 Court when it is necessary and appropriate to do so. The issue is whether counsel can do so
6 freely, without advance notice, and without any consequences if persons not permitted access
7 to protected information are also present at the time counsel does so. As Google noted in its
8 motion, there are many ways in which counsel can share protected information during a
9 hearing while still safeguarding the confidentiality of the information and not making a public
10 disclosure. ECF 2014 at 11. And Google believes that the Protective Order requires that such
11 safeguards be utilized whenever possible. It is simply inconsistent with the Protective Order
12 and with counsel's obligations under the Protective Order to say that counsel "did not think to
13 censor her response," ECF 2026 at 4, and that, having made an unauthorized disclosure, she
14 and her co-counsel and client had no obligation to cooperate in limiting the damaging effects
15 of the disclosure.

16 Second, Oracle makes additional arguments intended to suggest that Google is at fault
17 for Oracle's counsel's disclosures and the damage resulting therefrom. Oracle suggests, for
18 example, that Google disclosed the confidential information at issue in the parties' pre-motion
19 filings. ECF 2026 at 8. Google did no such thing, and Oracle points to no such disclosure in
20 the pre-motion papers or otherwise. Citing to or referring generally to a deposition or its
21 subject matter is plainly not a disclosure of the specific confidential information testified to by
22 the witness. Nor did Google give "notice" of any kind to Oracle that the substance of Mr.
23 Gold's deposition testimony would be disclosed at the hearing. *See id.* at 9.[5]

24 Third, Oracle points to the fact that, at later hearings in this case, information that was
25 initially designated as confidential by Google was discussed in open court. ECF 2026 at 5-6.

---

[5] Oracle also attempts to improperly shift the burden to Google and argues, for example, that Google "could have asked to seal the courtroom." ECF 2016 at 8 n.4. Absent any advance notice that Oracle's counsel might publicly disclose highly confidential information, there was no reason for Google to do so.

1  As the case moved towards trial, the parties continually re-assessed the confidentiality of
2  information, in some cases based on guidance from the Court.  That development does not in
3  any way justify the disclosure of specific confidential information at a time when the party that
4  produced that information was not willing to have it made public in connection with a
5  discovery dispute.

6  Oracle also asserts arguments based on the Court's preference that information used at
7  trial or on dispositive motions be made public.  *Id.* at 7-8.  Those arguments are equally
8  inapplicable, as the disclosures to the media in Judge Ryu's courtroom did not occur at trial or
9  in the context of a dispositive motion.  As the Ninth Circuit has recognized, the confidentiality
10 considerations relevant to a discovery motion—like the one Judge Ryu was hearing—are
11 different from those at trial.  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th
12 Cir. 2006) (distinguishing between the "good-cause" standard for sealing information
13 submitted in connection with a discovery dispute from the "compelling reason" standard
14 applicable to sealing information submitted in connection with pretrial or trial proceedings);
15 *see also* Fed.R.Civ.P. 26(c) ("good cause" standard).

16 **V.  Oracle Relies on Inapplicable Authorities**

17 Oracle cites in its opposition a number of decisions from other circuits, decisions from
18 other district courts and treatise authors to support its arguments.  Oracle largely ignores the
19 Ninth Circuit law cited by Google, including the Ninth Circuit's recognition of counsel's and
20 their clients' duties to take "all reasonable steps" within their power to comply with court
21 orders—failing which a contempt citation is proper.  *In re Dual-Deck Video Cassette Recorder*
22 *Antitrust Lit.*, 10 F.3d 693, 695 (9th Cir. 1993).

23 Oracle also criticizes Google's motion as "unprecedented."  ECF 2026 at 1, 15.  If
24 Google's motion is unprecedented, the reason is the cavalier attitude of Oracle and its counsel
25 toward their obligations under the Protective Order to the Court and to the parties whose
26 confidential information is subject to the order.  It is rare indeed for an attorney to simply stand
27 up in open court and disclose information protected by a protective order.  And it is perhaps
28 rarer still for that attorney, her co-counsel and her client, when reminded of the confidential

nature of the information, to quibble with whether the information is public or not and to then fail to join in attempts to seal the information.

## CONCLUSION

Oracle does not dispute that the highly confidential information of Apple and Google disclosed by Ms. Hurst became news based on her disclosure; that Google was forced to expend significant resources to prevent further dissemination of the transcript; and that at least one third party filed a motion for protective order based, at least in part, on the fact that Ms. Hurst had disclosed confidential information in open court without any ruling authorizing or permitting her to do so.  None of these elements is necessary for a finding of contempt to be made or for sanctions to be imposed.  But they all confirm the seriousness and potential implications of the conduct of Oracle's counsel.

Because the Protective Order in this case is based on the Court's model order, its provisions have been adopted and are in place in numerous protective orders in this district. Because this case has attracted significant media attention, the Court's ruling on this motion will be of widespread significance.  Because of the importance of protective orders to the discovery and litigation processes, the answers to the two questions posed above must in both instances be no:  (1) an attorney entrusted with confidential information of other parties and/or third parties under a protective order may *not* disclose that information in open court, regardless of who is present, as long as the disclosure is being directed primarily to the Court; and (2) after having made such a disclosure, the attorney can *not* refuse to cooperate in efforts to limit the further dissemination of the confidential information that she or he disclosed in open court.

For the reasons stated above and in Google's motion, Google respectfully requests that Oracle and its counsel be found to have violated the Protective Order; that Google be awarded its fees and costs incurred as a result of the violations, in an amount to be established following the Court's ruling on this motion; and that the Court grant such other or further relief as it deems appropriate.

KING & SPALDING LLP

By:   /s/ *Bruce W. Baber*
       Bruce W. Baber

Counsel for Defendant GOOGLE INC.