ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 211600)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. CV 10-03561 WHA |
| Plaintiff, | **DECLARATION OF ANNETTE L. HURST PER ECF 2036** |
| v. | |
| GOOGLE INC. | |
| Defendant. | |

I, Annette L. Hurst, declare as follows:

1.      I am a member of the State Bar of California and admitted to practice before this Court.  I am a partner at the law firm Orrick, Herrington & Sutcliffe LLP, counsel of record for Plaintiff Oracle America, Inc. ("Oracle").  I am familiar with the events, pleadings and discovery in this action and, if called upon as a witness, I could and would testify competently to the matters stated herein of my own personal knowledge.

**History Regarding Discovery Supplementation**

2.      In order to make a full inquiry as required by the Court, I have reviewed records of the discovery history in this case including discovery papers and numerous emails, and I conferred with my colleagues and with Oracle.  Broadly speaking, there were two periods of fact discovery in this case—one prior to the first trial, and a second after the remand, including supplementation of the complaint, prior to the second trial.  I refer to these herein as "phase one" and "phase two" discovery.

3.      With regard to the written discovery first served by Google during phase two, I have found no instance and am aware of none where Oracle failed to supplement that discovery pursuant to Rule 26(e) by reason, in whole or in part, of one or more rulings by the Court.  We never even discussed with Google's counsel any limitation on the duty to supplement phase two discovery.

4.      With regard to the written discovery first served by Google during phase one, Oracle supplemented its responses pursuant to Rule 26(e) during phase two with respect to everything except the requests that were solely relevant to the patent claims upon which adverse judgment had already been entered against Oracle.  As described herein, the parties were unable to agree to any comprehensive stipulation regarding limitations on the duty to supplement the phase one discovery responses, so Oracle supplemented the phase one copyright-related discovery pursuant to Rule 26(e) and took the position that Google was required to do so as well.

5.      Oracle also supplemented its initial disclosures and its document production on an ongoing basis both before and after the discovery cutoff in the phase two discovery.  Oracle even supplemented its document production to include new materials after the February 5, 2016 Order

DECL. OF ANNETTE L. HURST
CASE NO. CV 10-03561 WHA

1   upon which Google relies to limit the scope of the case. The history of these events is described

2   in more detail as follows.

3       6.      On July 23, 2015, the parties filed a Joint Status Report (ECF No. 1273) in which

4   they agreed to supplement initial disclosures under Rule 26(e); each side further stated its

5   intention to demand supplemental document productions of the other based on requests served in

6   phase one in addition to serving additional new discovery. There was discussion of the scope of

7   discovery at the Case Management Conference on July 30, 2015, but the Court's Case

8   Management Order of July 31, 2015, ECF No. 1277, did not address the issue. After that Order,

9   the parties continued to negotiate about the scope of discovery.

10      7.      During August and September 2015, Oracle and Google negotiated both with

11  respect to supplementation of responses served prior to the first trial and the scope of new

12  discovery served during phase two. On September 10, 2015, my colleague Christina von der

13  Ahe sent an email to Google's counsel Reid Mullen that stated, among other points, the

14  following:

> Oracle's position is that the parties have an ongoing duty, under Rule
> 26(e) of the Federal Rules of Civil Procedure, to supplement their
> responses to prior discovery requests. *See, e.g., Johnson v. United
> Parcel Serv., Inc.*, 236 F.R.D. 376, 378 (E.D. Tenn. 2006) (excluding
> documents from a retrial because the plaintiff failed to meet the
> ongoing duty of supplementation that continued into the retrial
> discovery period); *Merch. Transaction Sys., Inc. v. Nelcela, Inc.*, No.
> CV 02-1954PHXMHM, 2009 WL 2355807, at *10 (D. Ariz. July 28,
> 2009) (duty to supplement extends into second phase of bifurcated
> trial); *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*,
> 272 F.R.D. 350, 358 (W.D.N.Y. 2011) ("The duty to supplement
> continues even after the discovery period has closed."). While
> Oracle is willing to negotiate with Google to limit that ongoing duty
> for the purposes of the trial on fair use, Oracle is not willing to give
> up: (1) its right to request targeted supplementation where it
> determines that something should have been produced or disclosed
> previously; or (2) its right to challenge Google's prior privilege log.

24      8.      After numerous written and oral communications, while the parties agreed that no

25  further answers to patent discovery were required, the parties were unable to agree to any

26  comprehensive stipulation regarding the duty to supplement the copyright-related phase one

27  discovery responses. Accordingly, on November 2, 2015, my colleague Lisa Simpson sent an

28  email to Google's counsel, Reid Mullen, stating, among other things: "From the outset, Oracle

DECL. OF ANNETTE L. HURST
CASE NO. CV 10-03561 WHA

has taken the position that the parties have an ongoing obligation under the Federal Rules to supplement their discovery responses.  As we have discussed at length, this means going back and making sure that all responses to the prior served discovery that remains relevant are complete and up to date."

9.      The following day, November 3, 2015, I emailed counsel for Google, Reid Mullen, and again confirmed Oracle's position, stating that in light of the parties' inability to reach a mutually agreeable stipulation, "Oracle therefore intends to default to the requirements of the FRCP and governing case law regarding supplementation.  We expect Google to do the same." All of these communications concerned the obligation to supplement discovery from before the first trial and the appeal.

10.      At no time did the parties even *discuss* limiting or otherwise altering the duty to supplement the phase two discovery responses as required by Rule 26(e), and I never would have agreed to excuse Google of its obligation to correct responses that had become materially incomplete or inaccurate.

11.      Oracle behaved in accordance with its understanding that there was no limit on the duty to supplement any copyright-related discovery.  Oracle supplemented its copyright-related interrogatory responses from phase one discovery.  In addition, while phase two fact discovery closed on December 16, 2015, both parties supplemented written discovery responses and document productions after that date, as described below.

12.      Google made at least twenty-four document productions after the close of fact discovery, starting on December 21, 2015 and continuing to May 10, 2016.  Google's document productions after the December 16, 2015 discovery cutoff exceeded 75,000 pages.  Google further served supplemental privilege logs on January 19, 2016 and February 29, 2016, and supplemented its Rule 26(a) disclosures on January 27, 2016.

13.      For its part, on December 18, 2015, Oracle served supplemental responses to Requests for Admission and Requests for Production.  On December 22, 2015, Oracle served additional supplemental responses to Requests for Admission.  On February 29, 2016 Oracle served supplemental Rule 26(a) disclosures.  Oracle made supplemental productions of

1   documents on March 8, 2016 and April 5, 2016.

2         14.    Google has argued that the Court's February 5, 2016 Order Re Google's Motion to

3   Strike, ECF No. 1479, restricted the scope of the claims in a fashion justifying limited

4   supplementation.  Oracle continued to supplement discovery after that Order.  In particular,

5   Oracle made a March 8, 2016 supplemental document production of a Java license agreement

6   with Amazon that had been recently executed for Amazon's Kindle line of e-readers.  At that

7   time, we were uncertain whether e-readers were in or out of the case.

8         15.    Rule 26(e) supplementation again arose between the parties on the eve of trial, and

9   Google responded by supplementing its document production.  On May 3, 2016, I wrote an email

10  to Google's counsel, Christa Anderson, stating:  "Pursuant to Rule 26(e), Oracle hereby demands

11  that Google produce the final 2015 P&L figures for Android, and the final Android-based

12  advertising revenues for 2015."  Google's counsel, Dan Purcell, responded, did not object to Rule

13  26(e) supplementation, and wrote back on May 4, 2016, "Annette and John [Cooper], I wanted to

14  update you on Annette's request for supplementation.  We are gathering the updated materials

15  and will produce them this week, hopefully tomorrow.  Thanks."  On May 5, 2016, Google

16  produced financial documents that were not available at the close of fact discovery on December

17  16, 2015.  Google produced additional documents reflecting 2015 Android financial information

18  on May 10, 2016.  After that, Oracle supplemented its expert reports to reflect calculations based

19  on the new information.

20        ***Jones v. Aero/Chem Corp.***

21        16.    At the August 17, 2016 hearing, I used the term "evidentiary hearing" twice.

22  8/17/2016 Hr'g Tr. 33:22, 39:18-19.  I also referred to Google's failure in its opposition to the

23  new trial motion to submit any "admissible evidence" of the nature or timing of its new

24  combined Chrome/Android system.  *Id.* at 50:25-51:6.

25        17.    I made these references to an "evidentiary hearing" based on my understanding of

26  the procedural facts and holding in *Jones v. Aero/Chem Corp.*, 921 F.2d 875 (9th Cir. 1990).  In

27  *Jones*, the trial court held a hearing on the new trial motion.  *Id.* at 877.  At that hearing, the

28  parties discussed the issue of possible discovery misconduct.  *Id.*  The trial court suggested

DECL. OF ANNETTE L. HURST
CASE NO. CV 10-03561 WHA

1    holding a subsequent hearing on the discovery issue, and contemplated taking testimony.  *See id.*

2    at 877 & n.2 ("'The District Court initially indicated that a hearing would be held and testimony

3    obtained to determine the nature and degree of culpability of those persons involved in this

4    aberration of justice, however, no such hearing was ever allowed.'") (quoting Appellants' Brief).

5        18.    The trial court in *Jones* never held the subsequent hearing.  It was this failure to

6    hold a subsequent hearing specific to the issue of discovery misconduct that resulted in the

7    reversal:  "It does not appear that the district court considered the alleged misconduct in deciding

8    Jones' Rule 59 motion; the district court did not hold a hearing to determine whether there had

9    been misconduct, either knowing or accidental, nor did it make findings on this issue.  We

10   therefore remand to the district court for appropriate proceedings to determine whether Jones can

11   meet her burdens under the Rule 60(b)(3) standard as applied to this Rule 59 motion."  *Id.* at

12   879.

13       19.    It cannot be that the Ninth Circuit in *Jones* reversed and remanded because of a

14   failure to hold a hearing on the motion for a new trial, because a "hearing on the motion" was

15   actually held.  *Id.* at 877.  What the district court had not done was hold its contemplated hearing

16   where evidence could be presented in order to determine whether there was discovery

17   misconduct.  Thus, the Ninth Circuit remanded so the district court could have "appropriate

18   proceedings" to determine, in fact, whether there had been discovery misconduct and whether it

19   was "knowing, deliberate or intentional."  *Id.* at 879.

20       20.    The taking of evidence in some admissible form is required by application of the

21   holding in *Jones* regarding the standard under Rule 60(b)(3) as applied to Rule 59, particularly in

22   light of the facts at hand.  As noted, the trial court in that case had already suggested the taking

23   of testimony.  More importantly, in order to address the Rule 60(b)(3) issue, a court has to make

24   findings on whether there was misconduct *and* whether or not it was intentional.  The Ninth

25   Circuit in *Jones* described the applicable standard as follows:  "The court in *Anderson* found

26   misconduct within the meaning of Rule 60(b)(3) because plaintiffs demonstrated (1) they

27   exercised diligence in their discovery requests, (2) defendant knew, or was charged with

28   knowledge, of the missing document, and had constructive (if not actual) possession of it; and

- 5 -

DECL. OF ANNETTE L. HURST
CASE NO. CV 10-03561 WHA

1   (3) defendant did not divulge the document's existence." *Id.* at 879.  The Ninth Circuit also

2   indicated that "knowing, deliberate or intentional" misconduct could, by itself, give rise to

3   "substantial interference" with the ability of plaintiff to fully and fairly present her case.  *Id.* at

4   877, 879.

5         21.    In the case at bar, the only way for Oracle to present evidence of Google's

6   knowledge in light of its "secret" development of the new Android capability on Chrome OS is

7   to either take discovery or to otherwise summon witnesses for cross-examination.  The

8   information is entirely within Google's control.  The date when Google started working on its

9   new version of Chrome with Android, that for the first time proposes to make Android widely

10  available on all Chrome OS devices, is not public information.  Google's first intention and its

11  plan for working on this new software also are not public information.  What Google knew, and

12  when Google knew it, is entirely within the purview of Google.  What Google made, and when

13  Google made it, is entirely within the purview of Google.

14        22.    It is also entirely within Google's exclusive knowledge and control whether it

15  *deliberately* withheld this information, and whether it did so knowing that its discovery

16  responses were false and/or incomplete in light of its plans and its new software.  Oracle asked

17  the questions in its phase two discovery.  Oracle asked Google to admit that what it has now

18  done is exactly what Google had intended—that it intended to make Android available on

19  desktops and laptops.  Google denied it.  Oracle asked Google in interrogatories to identify all of

20  its uses for Android and the 37 API packages.  Google did not disclose the existence of its plan

21  for this new software that would make a new version of Chrome OS running Android on all of

22  its desktops and laptops.  Oracle also asked Google to produce for inspection all of its source

23  code that would make use of Android and the 37 API Packages.  Although Google identified

24  ARC, Brillo, and even the not-yet-released Android N that it claimed to be developing using

25  OpenJDK, Google did not identify or produce this new Chrome/Android software.

26        23.    Google's responses to these written discovery requests became false and/or

27  materially incomplete in light of Google's intentions, plans and development of its new software.

28  The Court asked why I stated that *Jones* requires discovery or an evidentiary hearing.  The only

- 6 -

means for Oracle to obtain evidence of Google's state of mind in failing to disclose this information, as required by *Jones*, is to confront the responsible parties.  That can only be done by taking discovery of Google or by otherwise summoning witnesses for cross-examination.  If the failure to disclose was a knowing or deliberate one, then that fact alone may be sufficient to warrant a new trial under *Jones*.  Moreover, it is not just Ms. Anderson or Keker & Van Nest's state of mind that matters, although they are certainly relevant.  There were numerous people at Google involved in discovery in this case, including in-house lawyers, engineers, and executives.

24.     I cannot think of any means whereby the Court could make findings on whether there was discovery misconduct and whether it was intentional without some consideration of admissible evidence from competent witnesses, whether that evidence is submitted in advance of or at a hearing.  Google is the only party with access to that evidence.  Accordingly, I stated at the hearing and I continue to believe that under the standard set forth in the *Jones* case, the Court must permit the taking of testimony on the issue of discovery misconduct—as had initially been proposed by the trial court in that case.

**Exhibits**

25.     Attached as Exhibit 1 is a true and correct copy of the transcript of the deposition of Felix Lin, Volume I dated December 14, 2015 and Volume II dated December 18, 2015, which is being filed under seal pursuant to the protective order in this case.

26.     Attached as Exhibit 2 is a true and correct copy of the transcript of the deposition of Hiroshi Lockheimer, dated December 8, 2015, which is being filed under seal pursuant to the protective order in this case.

27.     Attached as Exhibit 3 is a true and correct copy of a blog post titled "From Chrome Apps to the Web," dated August 19, 2016, obtained from the website address http://blog.chromium.org/2016/08/from-chrome-apps-to-web.html.

28.     Attached as Exhibit 4 is a true and correct copy of the transcript for the video that is attached to the Bush Declaration as Exhibit F, ECF No. 1998-5.  The transcript was obtained from https://www.youtube.com/watch?v=yDy1WWUdlY8, the Youtube.com site hosting the video, and was intended to be filed as Exhibit F-1 to the Bush Declaration but was mistakenly

DECL. OF ANNETTE L. HURST
CASE NO. CV 10-03561 WHA

1   omitted.  *See* ECF No. 1997-1 (Bush Decl.).

2           I declare under the penalty of perjury that the foregoing is true and correct.

3           Executed this 25th day of August, 2016 in San Francisco, CA.

4

5

6                                               */s/ Annette L. Hurst*
                                                Annette L. Hurst

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF ANNETTE L. HURST
CASE NO. CV 10-03561 WHA