# Exhibit 19

# Raina M. Abaya

| | |
|---|---|
| **From:** | Sarah B. Faulkner |
| **Sent:** | Monday, November 09, 2015 1:48 PM |
| **To:** | 'Simpson, Lisa T.'; Beth Egan; Reid P. Mullen |
| **Cc:** | Oracle/Google-OHS Only; DALVIK-KVN |
| **Subject:** | RE: Oracle v. Google:  Meet and Confer Follow Up |

Dear Lisa,

I write in response to your email of Thursday, October 22, 2015, which was a follow up to our discussion on Friday, October 16, 2015.  In our meet and confer on October 16, 2015, we discussed 45 of Oracle's RFPs, including 209, 211, 213, 214, 218, 219, 220, 221, 227, 229, 230, 232, 234, 235, 236, 237, 238, 239, 240, 241, 243, 244, 249, 251, 252, 254, 258, 271, 272, 273, 276, 277, 280, 281, 282, 283, 289, 290, 296, 297, 298, 299, 300, 301.  In that discussion, we clarified the scope of a number of RFPs, including at least 272, 282, and 289, and Google will supplement its responses to these RFPs accordingly.

Moreover, in meet and confer, Google identified a number of overarching issues that affect the scope of multiple RFPs, and we requested a further explanation from you as to Oracle's position regarding why the documents Oracle seeks with respect to those categories of information are relevant or likely to lead to the discovery of admissible evidence in the coming re-trial.  Thank you for the additional information you provided in your email as to these overarching issues; we respond to your positions below.

Requests re: Future Products
As discussed on our call, Google believes that the scope of RFPs relating to future products, e.g., 211, 219, and 220, is overbroad to the extent these RFPs seek documents relating to future products. Google continues to disagree that the production of documents relating to Google's future products is likely to lead to the discovery of admissible evidence in this case.  However, in the spirit of compromise and in an attempt to avoid unnecessary motion practice, subject to its already stated objections, Google will collect and produce relevant executive presentations and product plans that reflect Google's plans with respect to future mobile products.  Google will supplement its response to these RFPs accordingly.

Requests re: Projected Revenues
Oracle also propounded numerous requests that seek various categories of financial documents.  As discussed in meet and confer, these requests are overbroad to the extent they seek documents relating to Google's projected future revenues, e.g. RFPs 219, 220, 221, 230, 234, 235, 236, 237, 238, 239, 251.  Discovery relating to projected revenues will not lead to the discovery of admissible evidence in this case.  We are now 10 years beyond the date of the hypothetical negotiation, so any recent revenue projection is irrelevant to a hypothetical license.  For the same reason, the logic of Judge Ryu's order – even if it applied to copyright damages – would not apply here.  Google's revenue projections are also not relevant to Oracle's lost profits claim, which will stand or fall based on evidence of Oracle's own products, services, and business capacity. Further, Judge Alsup's January 9, 2012 Order made clear that post-verdict damages will be based only on the jury's findings regarding pre-verdict damages, not on Google's projected or actual future revenues.  We also disagree that revenue projections would lead to the discovery of admissible evidence with regard to the market harm prong of the fair use defense or bad faith.

Nevertheless, in the spirit of compromise and in an attempt to avoid motion practice, subject to Google's already stated objections, Google will produce from non-custodial sources responsive, non-privileged documents maintained in the ordinary course of business reflecting projected revenues for Google's mobile business.  Google will supplement its responses accordingly.

Requests re "network effects"
In meet and confer and in your email dated October 22, you clarified that in RFPs 232, 240, 244 and 254, Oracle is seeking documents describing or quantifying indirect effects Android has on Google's business.  Subject to its already stated

1

objections, Google has already produced non-privileged, responsive documents from non-custodial sources maintained in the ordinary course of business reflecting the revenues, profits, and costs related to Android, to the extent such documents exist. Relatedly, Google tracks advertising revenue related to Android, and, as stated above, documents related to those effects have been produced. Google does not otherwise quantify or track in the ordinary course of business any other such "network effects" related to Android. Google will supplement its response accordingly.

Requests re: Google's non-mobile, non-Android business
Google does not agree that documents relating to Google's non-mobile, non-Android business are relevant to this case, and therefore the scope of RFPs such as 209, 249, 251, 252 – to the extent they relate to non-mobile unrelated to Android -- is over broad. On our meet and confer conference of October 16, 2015, you argued that Judge Ryu's August 23, 2011 order decided this issue. In that order, however, which related to Oracle's requests for Google's "non-mobile data and financial projections," Judge Ryu stated unequivocally that "Oracle has made absolutely no showing that the alleged infringement of certain Java class libraries is causally connected to Google's advertising revenues. Oracle's copyright damage argument is therefore too speculative to support these discovery requests."

Despite this finding in Judge Ryu's order, Oracle continues to assert that the order supports, rather than undercuts, its position. We disagree. Although a plaintiff may under certain circumstances recover indirect profits in a copyright infringement matter, the causal link you describe in your email is far too speculative (as noted by Judge Ryu) to support the discovery you are requesting in these RFPs relating to Google's non-mobile business. You also point to Judge Alsup's July 22, 2011 order. But that order only allowed Oracle to "base its damages model on then-expected advertising revenue so long as apportionment is done," because "[t]he relationship between Android and Google's advertising revenues would have been known to the parties at the time of the hypothetical negotiation." That order is not a perpetual carte blanche requiring production of all of Google's financial documents relating to its non-mobile business. Further, as noted above, subject to its already stated objections, Google has produced non-privileged, responsive documents from non-custodial sources maintained in the ordinary course of business reflecting the revenues, profits, and costs related to Android, to the extent such documents exist. And, as noted above, Google does not otherwise track in the ordinary course of business any other financial metrics related to Android.

I note that your request for production of pre-June 15, 2011 documents for Henrique de Castro has been addressed in other correspondence.

Requests re: Mobile devices not running Android
Certain of Oracle's RFPs, e.g. 221, 227, 238, 241, 243, and 258, request a wide range of information relating to mobile devices not running Android. Google's primary concern here is with the breadth of the requests. Google disagrees with Oracle's claim that such information is relevant to fair use. However, Google understands that certain non-Android mobile financials and other information may be relevant to damages. Thus, subject to its already stated objections, Google will produce non-privileged, responsive documents from non-custodial sources maintained in the in the ordinary course of business that relate to mobile devices not running Android, including financials showing revenue, mobile strategy documents and mobile marketing documents.

Number of Ads served
During the meet and confer of October 16, 2015, you stated that Oracle believes the number of ads served on Android devices is relevant to the fair use analysis and damages. Google disputes that this information is relevant to the damages analysis under copyright law, which, depending on the theory at issue, requires proof of (1) Oracle's own lost profits; (2) the hypothetical licensing negotiation between Sun and Google in 2005; or (3) an apportionment of Google's Android-related profits attributable to the copyrighted material at issue. Even assuming (without conceding) that the information Oracle seeks could be tangentially relevant to damages, that limited relevance would be dwarfed by the burden of gathering this data. Further, Google has already produced the revenue generated from ads served on Android devices.

We will consider a further explanation for why the number of ads served is relevant to fair use.

Request for Production 290

As discussed on our meet and confer call, Google offered to produce non-privileged, responsive documents, to the extent such documents exist, for the latter part of Oracle's request no. 290: "DOCUMENTS related to any analysis or discussion of the ability, feasibility, or advisability of removing or replacing the 37 JAVA API PACKAGES or SSO from ANDROID." In your email of October 22, 2015, Oracle rejected this narrowing, reiterating its request that Google provide documents responsive to the entire request. Google continues to believe this request is overbroad. Oracle has only alleged infringement of 37 specific Java method headers, not the entire Java Platform. Google requests that Oracle appropriately narrow the request.

Request for Production 249
During the meet and confer, we expressed concern about the extremely overbroad nature of this RFP, which purports to request every document "related to" any statement in any Google public financial statement. No proposed narrowing was offered, other than to suggest Oracle would like to see "briefing books." Google continues to object to this RFP as so overbroad that no meaningful search can be made for responsive documents. Please propose a narrowed version of this request.

Lastly, we note that although you said you would get back to us with respect to certain RFPs, for example 237, 297-300 and 301, we have not yet received a response. With respect to other RFPs on which we have reached agreement, Google already has or is preparing for production of those documents. Further, we note that with respect to RFPs that require the search of custodial data, we expect that any remaining issues with regard to scope of those requests will be resolved in the resolution of search terms.

Best,
Sarah

---

**From:** Simpson, Lisa T. [mailto:lsimpson@orrick.com]
**Sent:** Thursday, October 22, 2015 3:18 PM
**To:** Beth Egan; Reid P. Mullen
**Cc:** Oracle/Google-OHS Only; DALVIK-KVN
**Subject:** Oracle v. Google: Meet and Confer Follow Up

Dear Beth and team:

We write to follow up on various meet and confer issues that we have been discussing over the past couple of weeks.

**Pre-2011 Custodians and Search Terms**: We have provided you with comprehensive information that makes clear the relevance of the custodians whose pre-2011 documents we are seeking – despite the fact that this information in entirely within your knowledge. Given the involvement that the named custodians had in the decisions Google was making at the time it acquired Sun, for example, Google has no excuse for not having searched these custodians the first time around if it was operating consistent with its discovery obligations. We have provided a limited set of search terms, only one of which was not run last time, and have narrowed our request to an entirely reasonable and doable search. We have now discussed this issue at length. As set forth in Annette's email to Ed of yesterday, we would like an answer by the end of the week as to whether Google will agree to search these custodians for pre-2011 documents or not or we will raise this issue with Judge Alsup.

**Google custodians**: As you indicated in our meet and confer last week, we were expecting to received Google's refined list of custodians yesterday. We need to move forward on the discovery plan ASAP. Oracle is already preparing to search the custodians that it has identified as likely to have information responsive to Google's requests and we do not think we should delay the process any further given the looming discovery deadline. Please provide your custodian list ASAP or we will have to raise this issue with Alsup as well.

**Google's Privilege Log Documents:** Please advise as to when we can expect the production of the improperly withheld, non-privileged documents identified in Annette's prior emails.

**Production of Brillo, ARC Welder and financial documents**: You indicated that you would get us a firm date for production of these materials by early this week but have not.  Please let us know immediately when we can expect these materials.  Obviously, they are important to our experts' work.

**Google's Interrogatory Responses**:  You indicated on our call last week that we would have supplemental rog responses to Interrogatories 30, 34, and 36 this week – we have not received them.  Please provide those supplemental responses immediately.

## Google's RFA Responses:

270:  You have now supplemented this response to indicate that Google derives profits from advertising.  We note that although the request specifically asks about profits, you have not revised your statements with respect to Google Play and direct to consumer sales of hardware, sticking with your original formulation of revenue.  Does that mean that it is Google's position that it derives no profits from these additional activities? Again, we reiterate our request for a fully supplemented answer that addresses profits – the request is clear.

271:  We understand that your issue with this RFA is that the definition of Java Platform includes "Java programming language".  Oracle is prepared to remove "java programming language" from the definition of Java Platform in its requests for purposes of this RFA.  Please advise whether with this clarification, Google can supplement its answer to this RFA.

272:  This request, we understood, has the same concerns as 271.  We agree to modify the definition of Java Platform for this request as well.  Please advise whether Google will now supplement its response.

275 and 276 – The responses to these requests remain ambiguous.  The ambiguity arises from the clause "some, but not all" – the question it raises is this:  is that clause merely intended to indicate Google's position that it did not copy **all** the declaring code from the 37 packages OR by this clause is Google trying to indicate that it decided to copy some of the declaring code before November 7 and decided to copy other of the declaring code after November 7.  We believe, after discussions with you, that it is the former, but we request a supplemental response that makes that clear.


## Google's Response to RFPs:

On our call we discussed the 40-plus requests where Google has indicated in response that it needs to meet and confer in order to understand the scope of the request.  As we discussed those requests, there were a number of broad objections made by Google that were recurring.  Below we set forth in further detail our response to several of those objections with the expectation that this will satisfy your concerns as to these issues and we can agree to move forward with production of documents.  We also address some of the more specific requests that we indicated we would get back to you on:

**Future Products and Projections** (RFP Nos. 211, 219, 220, 229, 230, 234, 235, 236, 237, 239)
Documents relating to Google's future product plans and revenue projections are highly relevant to this case.  Specifically, how Google plans to use Android in the future is relevant to the fourth fair use factor, because it will indicate how, whether, and to what extent Google intends to use Android to compete further with Java in Java's historical, intended, and potential markets.  Similarly, documents relating to Google's planned future revenue are relevant to the size and scope of the actual and potential markets under that same factor.  The extent of Google's intended use of Java in Android in future products is also relevant to the bad faith analysis because it demonstrates Google's ongoing willful infringement and expansion of that infringement.  Finally, the revenues that Google plans to earn from further use of Java in Android in future products is information that our damages experts are entitled to review to assist in their assessment of harm.  During the meet-and-confer, you expressed concern over Google producing information about future products.  The Protective Order provides ample protection for the production of sensitive documents, including by designating documents Attorneys' Eyes Only.  Accordingly, confidentiality is not an appropriate ground to withhold relevant information.

**Indirect Profits, Non-Mobile Business and Devices Not Running Android** (RFP Nos. 209, 218, 221, 227, 232, 238, 241, 243, 244, 249, 251, 252, 258)

As requested specifically in RFP 232, the indirect revenues and profits that Google derives from Android will be a part of the calculation of damages in this case. As set forth in *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004), a plaintiff may recover indirect profits in a copyright infringement matter if that plaintiff "establish[es] a causal relationship between the infringement and the profits generated indirectly from such infringement." Without the Java APIs, there was no Android. For this reason, many of the network effects that Android's success has had on other areas of Google's business are also attributable to Java, and are thus a part of the damages calculation.

In addition, documents reflecting metrics relating to the success of Google's non-mobile business, including the impact of Android on that business, are also highly relevant to this case. To the extent Google's release of Android has positively impacted Google's non-mobile business, that fact also will be relevant to the damages calculation. In addition, data concerning Google's valuation of the distribution of its search on non-Android devices (such as the documents requested in Request No. 221), is directly relevant to showing the benefit that Google received by its head start in the mobile business—a head start largely occasioned by use of the Java API packages at issue. Google's overall benefit from Android will also be relevant to fair use, because it will show that the purpose and character of Google's use of Java in Android was commercial and motivated by a desire to improve Google's business across the board. It will also be relevant to bad faith and Google's motivation for using the Java APIs.

Documents relating to Google's revenue and other benefits derived from devices not running Android are similarly relevant to this matter. Oracle is entitled to compare the benefits Google receives from devices running Android to the benefits it receives from devices that do not run Android. This information will be relevant to the first fair use factor, because it will show that the purpose and character of Google's use of Java in Android is commercial and the fourth factor, as it shows the nature of the market. This information will also be relevant to damages, because it will show with specificity the extent to which the Android operating system itself, as opposed to Google's applications, contributes to Google's revenues.

During the meet-and-confer, you mentioned that a prior discovery order in this matter indicated that metrics relating to the success of Google's non-mobile business were *not* relevant to Oracle's copyright claim. That order looked solely at relevance to damages (not fair use), and ignores everything that happened since August 23, 2011. Both the expert reports served after that date and the documents and testimony demonstrated such a causal link. Indeed, Google's own technical expert Dr. Astrachan admitted that Android would not work without the purloined code. Google's President of Mobile and Platforms, Henrique de Castro, declared at Google's 2010 Mobile Summit that Google would be "out of business in 10 years" if it did not succeed in the mobile market. No Java APIs, no Android. No Android, no Google. This kind of but-for causal link more than satisfies the legal requirements under copyright law. And Judge Alsup recognized that advertising revenues were properly included in the copyright damages analysis. *See* ECF No. 230, 7/22/2011 Order at 9:14-10:2. Moreover, Oracle's expert reports served before the first trial describe that Google chose to use Java in Android in order to go-to-market faster, and that the speed with which Google was able to go-to-market with Android directly impacted the adoption and success of Android, which in turn assisted Google's non-mobile business. Indeed, that is exactly what Mr. De Castro expressed in his speech at the Google mobile summit in 2010. We expect that other documents he created will reflect a similar view, but of course Google did not produce his documents—and as you know, we are now requesting them. It is apparent from the few documents we do have that Google viewed Android as critical to its overall success. Oracle is entitled to other documents discussing Google's strategy for non-Android search.

**Alternatives to Java** (RFP No. 290)
Oracle continues to demand that Google produce documents responsive to the entirety of this request, and not simply documents responsive to the last few lines of this request. The entirety of this request seeks documents relevant to the first, third and fourth fair use factors and to damages. Documents relating to alternatives to using the Java Platform—whether the alternative is a substitute platform or removal of the 37 Java API Packages—are relevant to assessing the substantiality and importance of the copied work. For example, feasibility evaluations on potential substitute platforms could indicate how important the use of the Java Platform and the 37 Java API Packages were (and are) to the development of Android. The notorious Lindholm email that Google tried to shield

with improper claims of attorney-client privilege is a prime example.  In that email, Mr. Lindholm discusses the possibility that Google might pretend to Oracle it would use Obj-C rather than Java.  Beyond Mr. Lindholm's work, did Google evaluate Obj-C, C, C++ or any other alternative?  Clearly the Court already considers this subject matter to be highly relevant.

These documents will likely also be relevant to the purpose and character of the use, in that they will show that Google's use of the 37 Android packages was not transformative.  These documents are also relevant to market harm as related to the availability of options in the market and the definition of the market generally.

We look forward to your response to the above matters,
Lisa



**LISA T. SIMPSON**

ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142

tel +1-212-506-3767
fax +1-212-506-5151
lsimpson@orrick.com
bio • vcard

www.orrick.com

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.