# Exhibit 20

## DALVIK:  FURTHER MEET AND CONFER

### DATE:  December 9, 2015

**Participants:**

**Participants (KVN):  Ed Bayley and Steven Ragland**

**Participants (ORRICK):  Rob Uriarte**

**Participants (OTHER): Unknown woman's voice**

| SPEAKER | TEXT |
|---|---|
| Rob Uriarte | I think where we're at is – um - we're ready to move unless we can compromise on the ESI queries and just to be clear, your last email, if I'm reading it correctly, I think you're saying that Google's position is just an all or nothing compromise, so either we agree to the terms that you're gonna run or we have to file a motion. Is that – am I reading that email right? |
| Ed Bayley | No, I think what I was saying in my email is that we've had a number of back and forth where we've negotiated on terms and you've – we thought we'd come to a position where, you know, the parties are in their final positions (unintelligible) Oracle's offer of a new revision to what they're proposing, and then we decide whether or not we can accept any of these. So, just as a primary point, as I said, _____, said "we are now close to close of facts recovery. Not gonna be able to run in any additions in terms and produce documents beyond what has already been – for any of these new terms I've just been offered now. And so, our position is just – we're at this late stage. We've run the terms and tried to do everything to see where we are and whether or not – you know- how reasonable and how responsive they are and there are a handful that we could accept, but only if it comes with an agreement that, this is it, this is done. You're not going to file a motion. Right? We're kind of at the end of our offers of compromises. We're definitely going to run this term, or we're willing to run the terms as a compromise. At this point, unless there's any way that there isn't going to be a dispute left if we agree to run these terms, then we're not really in any position to accept it at this stage because we're already past the point of no return, so to speak. |
| Rob Uriarte | So, initially there was a set of uh 72 terms, I believe. So- |
| Ed Bayley | Well – it depends on how you do the counting. We offered 32 terms, you added 72 terms, 32 of which were just rewrites of our initial 32. |
| Rob Uriarte | Sure so what I'm trying to get at is, I think we have reached agreement on certain terms where either we propose revisions or you propose revisions that reduce the hit count significantly and I think we're in agreement on those.  And I'm just trying to make sure that the good work that we've done on those terms isn't gonna fall apart based on what we're gonna start talking about right now, which is the remaining 33 requests that are still |

| SPEAKER | TEXT |
|---------|------|
| | in dispute. |
| Ed Bayley | No, I don't mean to give that impression. We're moving forward with our – we haven't had the luxury of waiting for the court to resolve anything on our (unintelligible), but we've had to move forward with the understanding that the compromise will be accepted at some point, just because we have to have these documents reviewed. But now we're kind of past that point, so unless we have an agreement that as long as we run these additional terms, that you've now proposed for the first time, uh, and that's gonna resolve this, that we're not going to go forward and get started on trying to run these because there's – we're already past the point of no return on getting this done by December 16. So, I was just making the point that unless there's actually some room for us to actually resolve here on the call today, that if we run these terms, you're not going to file a motion and we're not going to be agreeing to run anything additional from the call. |
| Rob Uriarte | Okay – but we're only talking about the – |
| Ed Bayley | We're talking about the terms that you sent on Monday. |
| Rob Uriarte | Cool.  And the terms that weren't included in that list on Monday are terms where we've already reached an agreement so - |
| Ed Bayley | Yeah, I mean, we've certainly offered it as our compromise.  We haven't agreed that these are, you know, proper terms. We've agreed as our compromise that if you were to agree to these terms we would – we'll agree to run them. It's still our position that these are compromise terms that we're running. We're only happy to run them now because we're not so close down to the wire in discovery.  But, this is the long way of saying, we are moving forward with these terms, but they are these terms that we've accepted since our initial proposals, but we're not taking the position that we have already fulfilled an agreement on that because these were part of our compromise proposal in order to resolve this dispute. So we are moving forward on running those terms (unintelligible). |
| Rob Uriarte | Okay, cool.  And so just to confirm: when we get off the call I'll send you a list of what I think that set of terms is – and if I'm wrong – |
| Ed Bayley | Yeah, it's in our emails, but, if you want to send a confirming email, you can. |
| Rob Uriarte | Okay cool. So then turning to the live disputes that we have. What is the best way to do this? Should we just mark down – are there any off the bat that you guys are willing to make a compromise on? |
| Male voice 3(?) | I think that one goes to Steven |
| Male voice 4 (Steven?) | I think the question first is sort of a gating question for you all – is that – is your position that unless we agree to run the additional 30 whatever terms there are that you all proposed on Monday, you're going to move? And if that's the case, if that's your position, we oughta do it or you move, then I think we can be done with this call because that's not |

| SPEAKER | TEXT |
|---------|------|
| | a position we're going to agree to. |
| Rob Uriarte | Yeah, we're not that – we're not that black and white on this. It's not like, if you don't agree to run every single one we're going to move, if you agree to run most of them, and most of the ones that are important, then I think we can – we're certainly prepared to compromise. |
| Steven(?) | Then why don't you identify the ones that are most important ones and then if those are ones that we think we might be able to do, then we have something to talk about. Otherwise, we can move onto other things. |
| Rob Uriarte | I'd really like to just to get your position on whether you're going to run these. |
| Steven(?) | The problem is that we've now been talking for weeks about going that way and there's never an end to it. There's additional terms, additional terms, additional terms, additional terms, and so what would be more helpful, I think, is sort of your final – if this were a negotiation about a resolution, what's your final best, and either we do that or we don't. Because this is sort of death by a thousand cuts. We keep trying to compromise thinking we're making progress and then, there's another whole list of terms and so that's the frustration here with a week left to go before discovery cutoff. |
| Rob Uriarte | Yeah, there will be no extra terms.  Let's just run through and a yes no for each one and if it looks like there are – you know – there's room for compromise then we'll do that. |
| Steven(?) | The problem though is – again, and what I'm trying to do is reap some resolution on this. And it seems that – that seems a very elusive thing where I thought we were having final changes of terms but the goalposts seem to keep moving. So the problem is that if we go through and say, as a part of a compromise we might go run this or that term, then that again moves the goalposts. What I'd like to know is are – why don't we do this: are there specific terms on this list that absolutely Oracle believes are you must run this or we'll move on it. If settled, please identify those, and then we can go from there. |
| Rob Uriarte | But I already sent you – so we've already whittled down – we abandoned a bunch of queries, we've modified a bunch of queries, so I don't – we gave you the last offer. So now you're asking us to negotiate against ourselves and start eliminating our own requests. I don't think that's the right way to go.  Let's just run – there's not that many – let's just run through and you can – the other thing about this is if we do need to move you're going to need to explain the basis for your position, so I don't think the way that you propose to proceed makes sense.  Let's just run through it. |
| Ed Bayley | Now hold on - I I think it makes perfect sense, because I _____ our position at the beginning of this call, is, if it is your position that you are not changing – that you are not backing off any of these terms, that you're going to move unless we agreed to all of these terms, then there's really nothing for us to talk about.  We've been compromising for weeks and if there's going to be a motion at this point, we're not going to make any |

3

| SPEAKER | TEXT |
|---|---|
|  | further compromises unless it resolves the motion in its entirety.  I'm happy to explain our positions as to each of these, but I'm not going to go through and offer compromises on things aren't actually going to resolve anything, because you're going to move forward.  So maybe a way to shortcut this, because there is at least one issue which I think is – could be enough to kind of figure out where the parties are going to end up here – but you've identified three terms that result in a high number of hits that you said in your email on Monday that Google has to go back in and craft new search terms for.  So I'm going to tell you on this call, that we are not crafting any new search terms the week before close of fact discovery.  And if it is your position that we have to or you're going to move, then on those three terms, then I don't think there's anything more for us to talk about. |
| Rob Uriarte | Okay well, when we get to those terms, maybe we can talk about what you're producing or what you will produce, and maybe there's not dispute there. So - |
| (multiple voices talking at once) | Unintelligible |
| Steven Ragland | Why don't you answer the question that was posed? And then – I mean – we're trying to make this the most efficient call possible so we can all get back to other work, including getting documents out as quickly as possible.  So – that's a gating question.  I'd like to get an answer to it. |
| Rob Uriarte | All right, let's go to it.  Which term are you referring to? |
| Ed Bayley | So these are the terms that you've identified as requiring Google to craft terms, so I'm going to scroll down, and- |
| Rob Uriarte | I think 22 is the first one I've got, Android was in 25, Vodaphone or Cingular, that's the start of the queries. |
| Ed Bayley | Yeah, so this is the term forty-two. Yeah. |
| Rob | So, what have you produced regarding Android business with these entities? |
| Ed Bayley | We're producing on a custodial basis, the _____ and the right share agreements and the anti-fragmentation agreements for set – on a non-custodial basis that are responsive to some of these RFPs that you've identified here subject to our objections. |
| Rob Uriarte | So you're not producing any custodial documents? |
| Ed Bayley | The custodial documents that we're producing – so I can go through these RFPs one by one, but I will say on a custodial basis, of the – then again, sticking with search term 42, you've identified 8 different RFPs here, so of those 8 RFPs, we're producing on a custodial basis two of them, for 257, we're producing custodial documents based on search term 11, and for 265, we are producing custodial documents based on search term 17. |

4

| SPEAKER | TEXT |
|---|---|
| | |
| Rob Uriarte | Okay. So 11 and 17 for the custodial productions on those? |
| Ed Bayley | And for non-custodial productions we're collecting agreements, we're collecting documents from public – and we're directing to public sources in response to 258.  We are producing custodial sources including both agreements and you know, Google's website developer type things like that. |
| Rob Uriarte | Okay.  Have you already produced any of that stuff that we might be able to look at some exemplars or you haven't produced it yet? |
| Ed Bayley | We've produced some.  I couldn't tell you sitting here on this call what exactly we've produced yet. |
| Rob Uriarte | Okay. All right, well I can say that I don't think that this is a deal breaker so let's keep going.  The next one is Android – it's the one that starts _____ and 25 vehicle or car. |
| Ed Bayley | Uh, yeah so it's 46.  You've identified – I think it may be the same, 8 terms and for this one we are producing in response to RFP 257 – well – just – for everyone's sake this is being recorded, the RFPs he's identified are 219, 229, 237, 257, 265, 267 and 268.  In response to RFP 257 we are producing custodial documents using search term 11 and in response to RFP 265 we are producing documents _____ search term 17.  And just so we're clear, because the numbers, I'm sure, have changed over time.  So for 17 it's the term "Android within 10 of (Java within 10) is compatible or incompatible or developer or developers" etc.  That's 17. I think that lines up with the number we have for this, to make that clear. |
| Rob Uriarte | Okay.  Next, okay so again, I don't think that's a deal breaker and I guess, same question, can you please tell me what you've produced already on that or no? |
| Ed Bayley | No.  Well, hold on – let me- |
| Steven Ragland | And while he's looking into that, let me ask when you say it's not a deal breaker, does that mean, okay you accept the fact that we don't need to craft terms?  That we're done with that – that you're not pressing forward on that one? |
| Rob Uriarte | It means that we're willing to compromise on this stuff ending the rest of this conversation.  So if, for example, you're going to run everything and these are the only three things that we have in dispute, I don't think we want to take the court's time with it.  But if you're gonna stonewall us on all of the requests, then yeah, this will be something we'll have to do about. |
| Steven Ragland | Wow, aside from the loaded line stonewall, which I think is completely inaccurate, um, it |

| SPEAKER | TEXT |
|---|---|
| | just would be helpful – okay – so what are the other terms – so I think it would be helpful to know which are the – again – there must be something off this list that's a deal breaker for you all, but we just identified two that were for us, so now – quid pro quo. |
| Rob Uriarte | I'm entitled to your position on this stuff so I'm going in the order you asked.  Now we're on this term that starts with maps or search or calendar. |
| Steven Ragland | Yep. |
| Ed Bayley | So for this one, these are all documents to the extent we're producing from custodial sources so for the 6 RFPs here, we're either pointing to public sources or collecting from non-custodial sources, I should say. |
| Rob Uriarte | Okay, so for the custodial productions on the apps, what term can we look to on that? |
| Ed Bayley | You mean for 49? |
| Rob Uriarte | Yeah, I think that's the one that starts with maps or search. |
| Ed Bayley | Yeah, so what I'm saying here is we're not – we haven't agreed to produce documents relating to just specific apps on a custodial basis.  The specific categories of documents relating to apps that we've agreed to produce on a non-custodial basis, but, you know, we're talking about Google applications in the abstract.  That only has marginal relevance to this case and these are search terms that are also resulting in millions of documents.  The RFPs – we've pointed to each of them – you know we've only – we're only planning to produce on a non-custodial basis and collect them on a non-custodian basis. |
| Rob Uriarte | So only non-custodial – |
| Ed Bayley | I mean, I can walk through each RFP if you want (unintelligible something like "save us time.") |
| Rob Uriarte | No, I don't think that's necessary.  So, in terms of our requests that ask for information related to distribution of Google applications, you're only producing on a non-custodial basis? |
| Ed Bayley | Yes.  So it would be things like, agreements with partners about those distributions. |
| Rob Uriarte | Okay.  Thanks.  Again, I don't think that's a deal breaker so let's jump to the top.  We propose Android within 10 of strategy or roadmap or plan or vision and we included here finance and business limitations then – um where are we on that? |
| Ed Bayley | So, on this one, again, with all the caveats that I've put out at the beginning of this call, assuming we can come to a holistic agreement that resolves it, and with the understanding that any additional documents collected by these revisions will be produced after |

| SPEAKER | TEXT |
|---|---|
| | December 16, you know, that is a term that we may be able to come to a compromise on. |
| Rob Uriarte | Okay.  And just for the record, if you tell me this was something – like if you wanted to say we're willing to compromise on this one – I'm not going to take that as a done deal.  I realize it's got to be a package deal for the purposes of this call so, I understand your position on that.  This is one where compromise (unintelligible).  Um, next term. |
| Ed Bayley | This is another one where again, depending on the timing, because this one still has a significant number of hits, but I think it's also one that we're willing to compromise on. |
| Rob Uriarte | Cool.  Next term starts Android and - and then it's got the API packages. |
| Ed Bayley | Yeah so, this is another one where assuming we can come to some kind of an agreement, we'd be willing to compromise on this one. |
| Rob Uriarte | Great.  Next term is Android within 10 of ad or ads or advertising and the variable _____. |
| Ed Bayley | Uh yeah, this is another one where we'd be willing to compromise but depending on the timing because it still has a significant number of hits.  But we'd be willing to compromise. |
| Rob Uriarte | Great.  And then the next one, I tried to address – you mentioned that the word "value" was bringing in a lot of noise to I tried to craft a request that didn't include the word value.  Did that do the trick?  Android as in 25 valued, value or valuation? |
| Ed Bayley | No.  This one is still problematic.  We're not going to be able to compromise on this one. |
| Rob Uriarte | Okay.  Can you tell me if you're producing non-custodial documents on Android valuations? |
| Ed Bayley | Uhm, no – well, are you talking about a response to the RFPs you identified? |
| Rob Uriarte | Yes. |
| Ed Bayley | With respect to the RFPs we've identified, we are producing those – each of those RFPs are being produced on a custodial basis. |
| Rob Uriarte | Okay. |
| Ed Bayley | Or, at least my notes here aren't – the notes here identify the ones that we – it only works the other way around. It only identifies ones that we're only producing on a non-custodial basis.  It's possible we may be doing additional custodial collections for some of these but I can't tell.  But certainly, we're doing search terms for each of these. |
| Rob Uriarte | Okay.  All right, next term Oracle or Java within 20 harm or harms – see that term? |

| SPEAKER | TEXT |
|---|---|
| Ed Bayley | Yeah.  So this is another one where we'd be willing to compromise.  We can come to an agreement. |
| Rob Uriarte | Cool.  Next up, is the one that's Android and market share or sales, etc. |
| Ed Bayley | This is one we are – we'd be willing to compromise if we can come to an agreement. |
| Rob Uriarte | Cool.  Next term, Android and competes and iOS or Windows or Java. |
| Ed Bayley | This one is still problematic. |
| Rob Uriarte | Okay.  Next, Java class library or Java application, etc. |
| Ed Bayley | This one we'd be willing to compromise on if we can come to an agreement. |
| Rob Uriarte | Great.  The following term is similar. |
| Ed Bayley | Yeah, it's the same answer.  We'd be willing to compromise if we can come to an agreement. |
| Rob Uriarte | That takes us to Android within 10 of 4 for fragmentation or fragments. |
| Ed Bayley | Yeah that's still problematic.  The fragment issue – there's – it's all crap. |
| Rob Uriarte | Okay.  Next, Android within 20, Java within 20. |
| Ed Bayley | This is another one where depending on the timing, we'd be – you know – because of the numbers on here, we'd be willing to compromise. |
| Rob Uriarte | Okay.  Next term, infringe or intellectual property or IT within 30. |
| Ed Bayley | Again, depending on the timing for production after December 16, we would be willing to compromise on this term. |
| Rob Uriarte | Cool.  Next term, unlicensed within 20, use. |
| Ed Bayley | This is one we'd be willing to compromise on if we can come to an agreement. |
| Rob Uriarte | Great.  Unauthorized use or infringed within 10 copyright. |
| Ed Bayley | So, I think this one you haven't offered any additional terms, and I think our position still stands on this one.  We're not going to change from our last position. |
| Rob Uriarte | Okay. |

| SPEAKER | TEXT |
|---|---|
| | |
| Ed Bayley | But, I'm happy to discuss any of the RFPs if you want to discuss those. |
| Rob Uriarte | Uh what, I guess, yeah, my question would be what are you producing by way of custodial documents on this? |
| Ed Bayley | Okay, so for – let me just walk through them.  So you've identified 4 RFPs here for 271.  We're producing documents in response to 19 Android and ((API or application or programming interface, within 50 of copyright.  For 262 we're producing response to 16, Android within 10 of 4 for fragmentation.  That's the same for 263.  277 is we're producing custodial documents _____ term 24, authorized use or infringe within 10 of copyright and value, etc. |
| Rob Uriarte | Okay.  Next term. |
| Ed Bayley | Next term, again, you know, you haven't offered any new term.  We're not inclined to change our terms.  In response to the RFPs, you've identified 266, which we are producing custodial documents in response to 18 – uh term 18, Oracle and infringe or copyright or license or acquired.  And obviously some of these are going to change – you know –depending on whatever agreement we come to.  280 – uh RFP 280, we're producing documents in response to term 25, Android and Java or Oracle within 10 of lawsuit. |
| Rob Uriarte | I think we're good on this one. |
| Ed Bayley | Okay.  Then there's a couple more that we're doing on a non-custodial basis. |
| Rob Uriarte | Okay – I think we're good there.  Um, for the next one, Android or Java and API or APIs etc. |
| Ed Bayley | Sorry I'm lost – can you give me the number.  I got lost.  We're at 36? |
| Rob Uriarte | Um, sorry I'm looking at – |
| Ed Bayley | _____ API or APIs or _____ |
| Rob Uriarte | Yes. |
| Ed Bayley | Within 30 of Chrome, Brillo, Archwelder, etc.? |
| Male voice | Yep. |
| Ed Bayley | So this one's still problematic.  We're not going to be willing to compromise on that one.  Do you want me to walk through the RFPs? |
| Male voice | Yeah, just – if you just know what non-custodial documents you're producing on those, |

| SPEAKER | TEXT |
|---|---|
| | that would be _____. |
| Ed Bayley | So for 219 we're producing on a non-custodial basis, these are, you know, _____ documents, I believe, I know that one by heart by now.  224 is, we're actually producing on a custodial basis, that's search term 3, Android within 10 of advertise and ROI or return on investment.  232, we're producing on a non-custodial basis.  237 we're producing on a non-custodial basis subject to our objections re scope.  And then, same for 244.  246 we're producing on a custodial basis in response to search term 7, Android within 10 of ad or ads or advert and grow or increase.  251 again, producing on a non-custodial basis subject to scope – objections on scope, and then 252, I don't believe we have an agreement on that.  256, we'll produce on a custodial basis, search term 10, Android and market share or sales within 10 of mobile within in 5 search or advert or ad or ads or device.  And 258 we're directing to public sources. |
| Rob Uriarte | Okay. |
| Woman's voice | Sorry, can you repeat 219? |
| Ed Bayley | 219 we're producing on a non-custodial basis.  We're collecting and producing _____ documents. |
| Woman's voice | Subject to any limitation? |
| Ed Bayley | Uh, subject to limitations in our objections.  Uh, this one is kind of fluid because there's a portal _____, so we have, you know, we're producing a lot more subject to that order on the executive presentation when they would be in our responses-subject to what's in our responses and the court's order we're producing documents on a non-custodial basis in response to _____. |
| Woman's voice | Okay. |
| Male voice | Okay so the next one is archwelder or Android run time for Chrome, etc. and Java or Android or Chrome. |
| Ed Bayley | Uh, yes.  So we're not – you haven't offered any new terms we're not agreeing to accept on this call – that the new term for the RFPs you've identified we are – uh 19 covered 224.  We are producing on a custodial basis in response to term 3.  Android with intended advertising and ROI or return on investment.  232 we're producing on a non-custodial basis.  237 non-custodial basis subject to objections.  244 again, that one I think we're – we have objections on that one of scope as to non-mobile. Uh, I'm not sure how that affects the archwelder of these other ones but, 246 we're producing on a custodial basis in response to search term 7, which is Android within 10 of ad or ads or advert in _____ or increase within 25 variables or IOT or internet _____ or auto_____.  251 we're collecting on a custodial basis.  252, I don't think we have an agreement on that one.  256, we're producing in response to search term 10 which is |

| SPEAKER | TEXT |
|---|---|
| | Android and market share or sales within 10 of mobile within 5 or search or advert or ad or ads or device.  And then 268, public sources. |
| Rob Uriarte | Am I correct that this term is only bringing back 614 documents? |
| Ed Bayley | Uh, that's right. So, uh, again, it's the (???Desk 5000 patch term??) so, again, this might be one that if _____ entirely is subject to timing.  We may be able to compromise on this one, but we're not willing to do so unless it's something that's going to be final/final. I mean, we still think it's duplicative of, you know, some of these other terms that you have that all relate to the RFP's we've identified.  But, given the head count, depending whether or not we can come to a final agreement, maybe to come to some kind of compromise, but we're not going to add it to our existing compromise that we're doing right now. |
| Rob Uriarte | Okay.  Cool, thanks.  Next term is Android within 10 of desktop or laptop. |
| Ed Bayley | Yeah, I think this term is still problematic.  We also – I'll just say it's still problematic. |
| Rob Uriarte | But I think if I understand our discussions, I think that you are producing non-custodial documents that will talk about Android strategies for the desktop and laptop. |
| Ed Bayley | Uh, we're certainly producing non-custodial documents that talk about current products and plans.  I don't know – I can't – I don't know if we have any agreements to product on a non-custodial basis about future product plans.  I think that was an open meet and confer issue that never got resolved.  As my understanding. |
| Rob Uriarte | So what do you mean by future because as I understand it, like, this work is already underway and there's already press and public statements by Google about what's going on, so in our view, that's not really a future product, that's something that's currently in development and parts of it are already _____, as I understand. |
| Ed Bayley | Wow, if it's a released product, then certainly that would fall into something that would be collected.  If it's solely related to, you know, something that's being planned out in the future that hasn't been released yet, um, we're not as far as I know collecting and producing those non-custodial documents on that level. |
| Rob Uriarte | Okay.  Um, next term is Skyhook or Sky Wireless. |
| Ed Bayley | Yeah, we're not producing this one.  I still have the relevant objections _____ hasn't really satisfied me that any of these terms are relevant.  It clearly hasn't satisfied me as to anything regarding Skyhook or Sky Wireless and Sky _____ is also – that document does not establish to me that these documents are responsive to any of your RFPs.  So I can – you know, I can tell you that 219 we're producing on a non-custodial basis and for 224 we are producing custodially in response to search term 3, |

| SPEAKER | TEXT |
|---|---|
| | Android with intent of advertise and ROI or return on investment, etc. |
| Rob Uriarte | So, I guess, um, setting aside the Sky Hook pieces – we've seen documents that were produced last time discussing the Sky team as it relates to Android so I'm just trying to understand what the basis is for not producing them this time. |
| Ed Bayley | Well, I guess I don't – I don't know what the relevance of Sky Team is to the remaining issues in this case. |
| Rob Uriarte | Okay. So we already talked about uh, Android within 25 of Vodaphone.  The next term would be Core within 10 of code or libraries or APIs etc. |
| Ed Bayley | Yes. So uh, we're – the term is still problematic.  I still have issue with the relevancy of the stage of the case in where we are – uh – we are producing on a custodial basis uh in response to the each of the RFPs we've listed here for 290, we're producing on a custodial basis using the term 28, Java or Java cross-libraries, within 50 of alternative or substitutes.  For 291, we're producing response to term 29, Android and third within 3 of party and 3 of development and _____.  For 223 we're producing in response to term 2, Android and _____sure or yadda yadda yadda. 264 and 265 we're producing in addition from outside custodial sources from in response to term 17, Android within 10 of Java within _____ of compatible or incompatible or developer or developers… |
| Rob Uriarte | So is this term bringing back a lot of noise – is that – or a big volume of hits or something? |
| Ed Bayley | Yes.  It's a big volume of hits with a lot of noise. Um, in terms of things that are actually responsive to the RFPs you've identified. |
| Rob Uriarte | Okay.  So I think that takes us down to the term that starts with Android or Java and developer. |
| Ed Bayley | Yes, so you haven't called for new terms so I'm just going to respond to the RFP points. 220, we're producing subject to our objections on a non-custodial basis.  223 we are producing documents on a custodial basis – hold on – sorry – in addition to pointing you to public sources, we're collecting on a non-custodial basis in response to term 2.  That's the Android and brochure.  We're also in response to RFP 226, we're producing in response to term 4, Android and all the package names within 10 of success or impact or recognition or familiar.  265 we are pointing you to our developer site, and we're also producing on a custodial basis based on term 17, Android within 10 of Java within 10 of compatible or incompatible or developer or developers.  280 we are producing on a custodial basis in response to term 25, Android and Java or Oracle within 10 of lawsuit or litigation or sue.  In 290, we're producing on a custodial basis in response to term 28, Java or Java cross-libraries etc within 50 of alternative or substitute.  And 291 we're producing on a custodial basis in response to term 29, Android and third within part 3 of party within 3 of _____ and success. |

| SPEAKER | TEXT |
|---|---|
|  |  |
| Rob Uriarte | Okay.  So the next term I think we just need to confirm that you're producing non-custodial presentations on this stuff.  This is the term that starts studies, or study of presentation, etc. within 25 of Android or mobile or IOT. |
| Ed Bayley | Yes. |
| Rob Uriarte | Okay. |
| Ed Bayley | I mean, we're collecting response to RFP 219 strategy – high-level strategy presentations in response to that RFP.  I don't know if you have an RFP identified for that one, but if that's what you're referring to, yes, that's what we're doing. |
| Rob Uriarte | Okay.  That takes us to the term that starts Android or mobile or wear or autos etc within 30 market share. |
| Ed Bayley | Uh, yes.  So, you haven't offered a new term so I'm just going to run through the RFPs.  215 and 219 we're producing on a non-custodial basis.  244 as well, subject to our objections on the mobile.  255 uh, we are producing on a custodial basis in response to term 9, that's Oracle or Java within 10 of harm, harmed, or harming, and Android. |
| Rob Uriarte | How is that um, I mean I can see how that would capture some responsive documents, but this is fundamentally about Android's market share so-just – are you limiting what you're producing on this stuff to documents that actually mention Oracle or Java? |
| Ed Bayley | Well, I guess, my question for you is, is there an RFP that you are saying is directed for custodial documents relating to market share for these products?  And if so, I can look and I can give you a more targeted response as to what we're doing. |
| Rob Uriarte | Okay, I mean, our RFPs aren't – don't delineate between custodial or non-custodial. |
| Ed Bayley | Sure sure - So I guess then, setting aside the custodial/non-custodial point, do you have an RFP in mind that you believe captures – outside of high level strategy documents which we're producing, uh, you know documents relating to market share, like generally? |
| Rob Uriarte | Yeah, for sure.  I'm just going to mark a note for this one.  Okay, let me, I'll follow up with you on that one. And by the way, I anticipate getting a response to you this evening.  And then if need be, the joint letter shortly thereafter. So, but, I wanted to take a little bit of time to circle up with my team and make sure that – cause it seems like we're actually pretty close here.  I appreciate this effort and I think we might be able to work something out.  I'm hopeful that we can, so let's just press on.  We just have a couple left here. |
| Ed Bayley | Okay, I'll wait for my final comments until we get through the rest.  So we are now at- |
| Rob Uriarte | Oracle or Sun or Java within 30, license or fair use or board. |

| SPEAKER | TEXT |
|---|---|
| Ed Bayley | Yeah, so, you haven't offered new terms here so I'm just going to go straight to the RFPs. Uh, 284, we're producing on non-custodial basis.  288 we are producing on a custodial basis in response to term 18, Oracle and infringe or copyright or license or expire within 10 of Java.  290, that is RFP 290, we're producing custodially in response to term 28, Java or Java plus libraries, etc. within 50 of alterative or substitute.  292 we're producing on a custodial basis in response to term 17, _____ within 10 of Java within 10 of compatible or incompatible, etc. |
| Rob Uriarte | Okay.  Um, Next, unauthorized or without or not etc and Android or Java. |
| Ed Bayley | Yep.  So, again, no new terms so I'll just walk through the RFPs— |
| Rob Uriarte | Can I just ask – so it seems like your position is that if we didn't tweak a term, that you're just taking a blanket stand that you're not going to run it, regardless of how many documents it's bringing back. |
| Ed Bayley | Well, we have – |
| Rob Uriarte | You know, I mean, look, I don't want to derail this, I think we're making good progress here, but I'm just – I don't understand that. Especially for something that's bringing back, you know, 30,000 documents, not a ton.  So, |
| Ed Bayley | Well, you know, we had a call last week and you know, we had issues beyond just numbers of documents for some of these.  Um, you know, this one is it's so producing given what we've looked at – and this is especially one where we've offered another term that's much more targeted and much more successful in getting responsive hits.  You know, we're not willing to just fix up 30,000 documents because 30,000 documents (unintelligible) disagree.  I'm willing to compromise in order to get us to the end, but I'm only willing to go so far and I think I told you how far we're willing to go.  As far as I'm concerned, we've already talked about this term for hits and we haven't been able to figure out anything that we can come to a compromise on. We thought we were at a final _____ on that and then you came back with additional terms which we had to consider.  We didn't go through and consider all the ones we've already not agreed to and we're going to stand on them.  Depending on what you may come back with tomorrow, again, this is the first time – I thought this was going to be the final call, but now it sounds like you need to go back to your team.  If you want me to go back to my team, and inquire about this one, I can, but I'm not – I don't think it's proper – |
| Rob Uriarte | I get it, and I know we're running out of time but so here's my concern.  This is – I think reasonable minds can look at both of the terms we propose and see that they're both relevant to issues in the case.  I'm just concerned when I see your term only bringing back 251 documents, and I think that is not a deduced number. Correct me if I'm wrong. Less than 250 documents on a topic that says, unauthorized use of Android or Java seems like something is amiss. But maybe if you can give me some confidence that we're going to |

14

| SPEAKER | TEXT |
|---------|------|
|  | get materials discussing unauthorized use of Android or Java – |
| Ed Bayley | I need – the problem is that you have your term – it isn't limited to unauthorized use of Android and Java.  You have a term where those words unauthorized and the words Android appear somewhere in the documents.  And what I'm telling you is, our term, which actually does go toward capturing what you're looking for which is documents that actually relate to discussions of authorized or unauthorized uses of Java are captured by our terms.  Your terms do not successfully capture those documents.  It captures a large swathe of non-responsive documents and certainly when compared to the RFPs – the search term you proposed in our view does not adequately capture that.  And I'm not trying to be difficult here, it's just – I mean we've got to draw the line somewhere. |
| Rob Uriarte | Yeah I know— |
| Ed Bayley | We've done our best on this one. |
| Rob Uriarte | I would propose, I guess, to just increase the proximity, like the within 10, to increase that by some amount.  You guys know better than we do what hits are coming back but I don't want this to be a hang up, so, I understand your position on it.  I think we can go to the next term.  And this is the one that starts off with _____ |
| Ed Bayley | Yeah, so again, we think our term is more than adequate for what we've proposed.  In terms of the RFPs, I don't know if we discussed the RFPs for the last term.  Do you want to or do you want to move on? |
| Rob Uriarte | It looks like there's substantial overlap so why don't you just run through the terms on this one. |
| Ed Bayley | Okay.  Yeah, I think they are overlapped. So for 271, I'm just going to do this quickly, on a custodial basis we're doing term 19, that's Android and API or application program names, within 50 of copyright.  RPF 266's responsive to term 18, 259 is in response to term 13.  262 and 263 is in response to term 16, that's the Android _____ with fragmentation.  276 is in response to term 23.  And 222 is in response to term 1.  And by term 1 I mean the closed _____, that's the strategy or model and Android within 5 of closed _____(unintelligible).  And then 289 is in response to term 27.  290 is term 28. |
| Rob Uriarte | Okay.  The next is the legal balance of that list _____ CPO domain. |
| Ed Bayley | Yeah.  And I mean this is – I can walk through all these RFP letters again but I think our main objection here is a relevance objection.  These are third party conversations on, uh, listserve that some Googlers and some Oracle posted a number of – and so, just to walk through the numbers.  RFP 271 is response to term 19. RPF 266 is term 18.  RFP 259 is term 13. RFP 262 and 263 is term 16.  RFP 276 is term 23.  And 222 is term 1. |

| SPEAKER | TEXT |
|---|---|
| Rob Uriarte | And are those terms capturing emails from this domain? |
| Ed Bayley | Uh, are you asking me if we've used this domain as a custodian? Or— |
| Rob Uriarte | Uh, sorry, I'm just asking – I'm trying to figure out, is this really worth fighting over because you just told me some other terms that you've run that you think respond to these RFPs and so I'm just trying to – are those terms you've just recited, are they capturing documents from this – with this email domain in it? |
| Ed Bayley | Uh, I can tell you, I didn't look at the documents, but there are some emails from this domain captured within the production.  Whether they're captured by these terms, I have no idea.  These terms are directed at RFPs not any strict search term that you're proposing.  I'm not saying I'm refusing to produce documents that have these domains, but it has to be responsive and we're not going to agree to a term that's just directed at this domain. |
| Rob Uriarte | Okay, what if we added in a modifier that was and Android or Java? |
| Steve or Ed (can't tell) | The problem is, again, we need to get the closure on this and not keep testing and testing and running things and running things. In _____ we explained why _____ is unreasonable, and either you stand on it being reasonable or not, and we move on. |
| Rob Uriarte | Yeah but I'm just trying to limit it – I don't think you need to do any additional testing.  It's only bringing back 1800 documents, and that's not de-duped, so if we added a modifier, then in all likelihood that will drop it below 1000 documents.  That seems like something that, you know, if we agree to everything else, this shouldn't be a hang-up. |
| Ed Bayley or Steve | But then that's just playing the hit count game which, I mean, something could return 10 documents and still not be a good term because those 10 documents are not relevant. |
| Rob Uriarte | Right but we would hate to – but we wouldn't want to go to court on a motion to compel over 10 documents.  It would just make sense for everyone to just produce them.  I get it, I mean, I'd propose an additional compromise.  If your answers are not willing to consider it, that's fine, we can move on. |
| Ed Bayley | Sorry, I do need to hurry on this stuff because they're gonna – four secretaries having to stay here to work late, also. |
| Rob Uriarte | I think we're there.  Last two terms, um, this is another one where we didn't propose a new term but it's only bringing back 686 documents so I would hope that we could just compromise on it and put this one to bed. |
| Ed Bayley | I mean, I'm not for the same reason as before.  This term doesn't have any, you know, as far as I can tell, any of the RFPs you've identified. |

| SPEAKER | TEXT |
|---|---|
| | |
| Rob Uriarte | What if we add um an and Android or Java modifier to this term?  Your proposal is and Android, what if we just add Java to that? |
| Ed Bayley | Um, if you want to throw that into the proposal you send back, we'll certainly consider it. |
| Rob Uriarte | Okay.  And then last one is specification or sets within 20 license, etc.  And if you recall, I thought we were close to a deal on this one before, and we proposed to add and Android or Java and you said you thought that might be the trick and you'd go back to your team about it. |
| Ed Bayley | Yeah and I think for this one, this is one where uh, subject to – I mean, I'm having a lot of trouble seeing the relevance of this one.  Honestly, the RFPs you've identified don't appear to relate to specification and I'm not exactly sure what you're getting at with the specification – how that aligns with your RFPs.  Can you tell me on this call?  Which of these RFPs do you believe line up with specifications and why? |
| Rob Uriarte | Specification license and violate or enforce or sue and Android or Java.  So an email talking about whether the license to use the specification and whether that would be a violation.  I mean, this is pretty straightforward, I think. |
| Ed Bayley | Well, I guess – before I can agree to this I need to know if we go and collect these documents or review them, what am I reviewing them for?  What is – are you just talking about – is all you're looking for – is a discussion of the Java specification license as it relates to Android within Google?  I mean, I'm not sure if you've requested that in any of your RFPs, but I wanted to know what it is that you think is the relevant category of documents. |
| Rob Uriarte | I think that's the core of it.  The core of it is specifications – talking about the specifications license and violations or lawsuits or Android or Java in that context.  Yeah, I think that's right. |
| Ed Bayley | Okay.  Well, I'll put that down as a category.  If you want to propose it as part of whatever final compromise, we'll consider it, but, I'm not – sitting here today, I'm not inclined to unless _____ to get a deal done. |
| Rob Uriarte | Okay.  So I think where we're at, I think we're actually pretty close.  We will get back to you tonight on whether we can forego – so there's a set of requests where you've said that you will not run them and that there's not room for compromise on them.  So I think, I just have to make sure that we're okay accepting that position.  And then if you'll agree to run the rest, then I think we're – we'll be able to get to a deal.  I just need a couple hours to internalize this and then we'll get back to you tonight. |
| Ed Bayley | Okay, and just so we're clear.  You understand that, you know, in order to run and produce these additional terms, we're looking at a production after the close of fact |

| SPEAKER | TEXT |
|---|---|
| | discovery? |
| Rob Uriarte | Yes. |
| Steve | And that if we're going to agree to do that as part of the agreement, it would have to be that you couldn't use that after the fact discovery production as any basis to reopen any depositions. |
| Rob Uriarte | Okay, let me take that – I mean, I think that makes sense but I need to confirm.  I mean, if there's something that should have been produced before a deposition and it wasn't, then that's the problem I see. |
| Steve | Well, again, - any good lawyer can make an argument that any document should have been produced before deposition.  So that sort of the problem.  We can't make an agreement, you know, late date, now we have less than a week before the close of fact discovery, and then have that lead to a prejudice to us because it's _____ perhaps extending it so far _____ close of fact discovery is a convenient to reopen deposition, so that has – |
| Rob Uriarte | That's not our – yeah, we don't – that's not what we envision happening here.  But on the other hand, good cause is good cause if we need to move for relief under the scheduling order and the same goes for you all.  I get it, I get your position.  I understand the apprehension and I can assure you that that's not our intent.  But I need to talk to my team about that. |
| Ed Bayley | Okay |
| Steve | And now, I think this can be a very brief comment, but, at 4:42, 18 minutes before the call started, you sent over a list of – I haven't been able to read it all but it looks like more than a dozen RFPs on which you want to meet and confer and say you're going to move to compel if we can't reach a compromise.  I mean, we haven't even had a meet and confer on it and we obviously aren't going to do that right now on things you just raised for the first time barely an hour ago. |
| Rob Uriarte | Yeah so I don't think you've been involved in some of these calls, but all – with the exception of a handful, all of the RFPs listed in my email are RFPs that we've previously met and conferred on.  And, I think the only – the one other thing that we needed to address on this call was just the – separate and aside from the ESI issue that we've just discussed – it's your position that you will not produce any documents custodial or otherwise dealing with what you're referring to as future products or projections – then that is something that we're keyed up for a motion on now.  Because we talked about that before we were assigned to Judge review and she has this requirement of having to file within five days of a meet and confer so, on the issue of future products, I think we understand your final position is that you're not producing any documents, and I think that keys up a motion now. |
| Steve | I don't know – (unintelligible) accurate.  But I mean – (voices talking at once) – You, you |

| SPEAKER | TEXT |
|---|---|
| | have more background so why don't you go. |
| Ed Bayley | Sure, I was just going to say, you know, that the problem from Steve and my perspective is that we are not necessarily – we had set up a call to talk about search terms and obviously were prepared to do that.  We haven't – we weren't able to get Beth or Sarah on the line who I know were the people involved in negotiating these objections on the RFPs.  And again, it wasn't until 8 minutes before the phone call that there were these additional objections that you wanted to take action on so we're just not in a position today.  I mean, we can certainly reach out to Beth and get something set up for tomorrow or whenever she's available to do that. But we're just not in a position here today to talk about these things.  I know there was discussion about pre2011 documents that was going on recently but it sounds like you're objections on these RFPs are much broader than that. And so if that's the case then we need to have a more full discussion with the people who are involved to make sure that we're all on the same page as _____.  Because it's not clear to me— |
| Rob Uriarte | Yeah and just to clear up – and I can see how it would be confusing but – first off, yeah, let's try and set up a call for tomorrow on this stuff but what we the reason I sent you these lists of RFPs is that in the event we need to move to compel on the ESI issue, the basis for that motion will be these RFPs. |
| Ed Bayley | I see, okay.  Well, you know – |
| Steve | That doesn't make – I don't understand that.  Because – |
| Ed Bayley | Yeah, I'm -- |
| Steve | That doesn't – I mean – the (2-3 voices talking at once, unintelligible) – it doesn't seem to me, and I'm aware of the pre-June 2011 discussions, which I understand that hasn't yet been closed out, that's still being discussed as to my understanding, but I'm not aware of any meet and confer as to the agreements to produce or limitations on the scope of production in response to RFPs – I'm not aware of any meet and confer on that in my mind it was raised the first time today and (background noise, unintelligible). |
| Rob Uriarte | So what I guess that I'm saying is that, for example, email communications and documents (background noise on phone line, unintelligible) use of Java, Android, Brillo, Archweller etc.  If you won't agree to run the terms that we think are required to bring those documents back, then we'll file a motion to compel production of documents responsive to the applicable RFPs.  (background noise, fade out).  There are a couple in here at the top of the chart that have to do with other issues so we can set up a call for that tomorrow.  But (background noise, unintelligible) that we will file a motion to compel production of documents and (background noise, unintelligible) whatever ESI dispute there is and whatever RFPs _____ remaining. |
| Steve | I think that would be improper because throughout all of these discussions we've talked about terms we're running as far as (background noise, unintelligible) |

| SPEAKER | TEXT |
|---|---|
| Rob or Ed (can't tell) | (background noise, unintelligible) |
| Steve | Are you walking Ed or somebody? We're getting a lot of |
| Ed Bayley | Yeah, that's me, sorry.  I'm going to see if I can – I had to leave. |
| Steve | No worries. |
| Rob Uriarte | So anyways, Steve, I didn't catch everything you were saying but |
| Steve | What I was saying was that, you know, throughout our discussions on the ESI issue, we've emphasized that all of this, and the agreements around terms, is all subject to our objections to the RFPs and that's never led to any attempt by Oracle to discuss the substance of our objections or anything like that.  And so, that discussion, I mean, I think we need to have that discussion before there's any motion to compel based on the objections of the RFPs because we have not had that conversation.  You all haven't attempted to have that conversation until, to my knowledge, until today.  And we're happy to have it, but I just want to be clear that if there's am option to compel based on objection to RFPs separate from the search terms which we emphasized were subject to our objections, then I think that's not proper.  We need to have a discussion. |
| Rob Uriarte | Yeah, and just to be clear, we have discussed most of these RFPs in the past and you weren't involved in those conversations but anyways we'd be happy to do it again.  Let's try and set something up for tomorrow.  And hopefully we'll have to talk about tomorrow a few straggler RFPs so we can get to a deal on the ESI stuff. |
| Steve | All right, so, as far as, yeah, I'm not sure schedule-wise – so I think that probably Beth or Sarah will get back to you on this request for the RFP discussion.  And we'll just monitor email as best we can. |
| Rob Uriarte | Cool.  All right, I think that's it. |
| Steve | All right. |
| Rob Uriarte | All right thanks. |
| Steve | Thanks, bye. |
| Ed Bayley | Thanks guys. Bye. |