1   KEKER & VAN NEST LLP
    ROBERT A. VAN NEST - # 84065
2   rvannest@kvn.com
    CHRISTA M. ANDERSON - # 184325
3   canderson@kvn.com
    DANIEL PURCELL - # 191424
4   dpurcell@kvn.com
    633 Battery Street
5   San Francisco, CA 94111-1809
    Telephone:    (415) 391-5400
6   Facsimile:    (415) 397-7188

7   KING & SPALDING LLP
    BRUCE W. BABER (pro hac vice)
8   bbaber@kslaw.com
    1180 Peachtree Street, N.E.
9   Atlanta, Georgia  30309
    Telephone:    (404) 572-4600
10  Facsimile:    (404) 572-5100

11  Attorneys for Defendant
    GOOGLE INC.

12                          UNITED STATES DISTRICT COURT

13                        NORTHERN DISTRICT OF CALIFORNIA

14                             SAN FRANCISCO DIVISION

15

16  ORACLE AMERICA, INC.,                    Case No.  3:10-cv-03561 WHA

            Plaintiffs,                      **DECLARATION OF CHRISTA M.**
17                                           **ANDERSON IN RESPONSE TO COURT**
        v.                                   **ORDERS ECF 2052 & 2053**
18
    GOOGLE INC.,
19
            Defendant.                       Dept.      Courtroom 8, 19th Fl.
20                                           Judge:     Hon. William Alsup

21

22

23

24

25

26

27

28

DECLARATION OF CHRISTA M. ANDERSON IN RESPONSE TO COURT ORDERS ECF 2052 & 2053
Case No.  3:10-cv-03561 WHA

1113616.01

1  I, Christa M. Anderson, declare as follows:

2      1.      I am a partner in the law firm of Keker & Van Nest LLP, counsel to Google Inc.

3  ("Google") in the present case.  Unless otherwise stated, I have personal knowledge of the facts

4  set forth herein, and if called to testify as a witness thereto could do so competently under oath.

5      2.      I submit this declaration in response to the Court's Request for Response (ECF

6  2052), requiring submission of a sworn response to the Declaration of Annette Hurst, outside

7  counsel for Oracle in this case.  *See also* Further Request for Response (ECF 2053).[1]

8  **I.      RESPONSE TO MS. HURST'S DECLARATION**

9      **A.      Oracle's supplementation of discovery after fact discovery closed**

10      3.      Fact discovery in this case closed on December 16, 2015.  Ms. Hurst's declaration

11  appears to imply that Oracle diligently or comprehensively supplemented all of its discovery

12  responses after the close of fact discovery and up to and through the fair use retrial that began

13  almost six months later on May 9, 2016.  *See* ECF 2043 (Declaration of Annette L. Hurst Per

14  ECF 2036) ¶¶ 13-14.  That implication is incorrect.  Oracle never supplemented any of its

15  interrogatory responses after the close of fact discovery.  Oracle also never supplemented any of

16  its responses to Google's requests for admissions ("RFAs") after December 22, 2015, when it

17  supplemented eight RFA responses to moot a motion to compel that Google had indicated it

18  intended to file.  I address in paragraphs 5 and 6 below certain instances in which Oracle failed to

19  supplement or amend its interrogatory and RFA responses.

20      4.      Ms. Hurst's declaration also appears to imply that Oracle significantly or diligently

21  supplemented its document production after the close of discovery and up through the retrial.  *See*

22  Hurst Decl. ¶¶ 13-14.  That is incorrect.  Setting aside four privileged documents that Ms. Hurst

23  does not mention but Oracle belatedly produced during the middle of the trial, RT 1327:5-13, our

24  records reflect that Oracle produced only three documents (16 pages in total) after the close of

25  discovery in this case.  On March 8, 2016, Oracle produced two Java license amendments

26

27  _____

[1] I note that, at the same time Ms. Hurst submitted her sworn declaration, Oracle submitted an
unauthorized brief (ECF 2044) that re-argued its motion for a new trial.  Because it was not
28  requested by the Court's Order, I do not address here the arguments that Oracle made in its
unauthorized brief but we can prepare a supplemental responsive brief should the Court so desire.

1

1113616.01

1   between Oracle and Amazon for the Amazon Kindle line of products, signed March 4, 2016,

2   which Oracle placed on its trial exhibit list and referenced at trial.  RT 1359:16-1360:15 (Oracle

3   witness Catz testifying that Oracle gave Amazon a discount to secure a new Java license deal for

4   the Amazon Kindle Paperwhite); *see also* RT 1775:18-22 (Oracle expert witness Jaffe testifying

5   that the discount Oracle allegedly gave to Amazon constituted market harm).  On April 5, 2016,

6   Oracle "produced" a single public document that it had used earlier that day to refresh the

7   recollection of one of its witnesses during a deposition.  Our records reflect that Oracle did not

8   supplement its production with *any* other documents during the approximately six-month period

9   between the close of discovery and the start of trial.

10          5.      In regard to specific responses that Oracle did not supplement after the close of

11  fact discovery, Oracle never supplemented its interrogatory responses to identify the Java licenses

12  with Amazon referenced above.  Google's Interrogatory No. 34 asked Oracle to "describe in

13  detail all licensing activities" relating to the asserted copyrights, including "identification of all

14  persons or entities with whom Oracle has negotiated, offered to negotiate, or execute a license a

15  license" to the asserted copyrights.  Oracle never supplemented its response at any time after the

16  close of fact discovery, despite its own admission that it entered into a Java licenses with Amazon

17  for the Amazon Kindle in March 2016.  Nor did Oracle supplement its response to Google's

18  Interrogatory No. 23, which asked Oracle to "[st]ate in detail the factual bases for your contention

19  that Google's use of any aspect of the APIs-at-Issue does not constitute a 'fair use' under 17

20  U.S.C. § 107."  As another example, Oracle never supplemented after the close of fact discovery

21  its production of financial figures for its Java SE and Java ME businesses responsive to Google's

22  RFP No. 166.  Nor did Oracle ever supplement after fact discovery its response to Interrogatory

23  No. 35 asking about Oracle's ongoing efforts (if any) to license the Java APIs for use in mobile

24  phones, even though it stated in its response to Interrogatory No. 35 that ▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮   and that it would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮

28

2

DECLARATION OF CHRISTA M. ANDERSON IN RESPONSE TO COURT ORDERS ECF 2052 & 2053
Case No.  3:10-cv-03561 WHA

1113616.01

1    6.    Oracle also did not amend a response to a request for admission that proved to be

2    incorrect, which is what Oracle (incorrectly) accuses Google of doing in Oracle's motion for a

3    new trial.  *See* ECF 2037 (8/17/2016 Hrg. Tr.) at 36:19-21 (Ms. Hurst: "And they never

4    supplemented after December 16th, Your Honor, at any point in time after discovery closed. They

5    didn't change the request for admission.").  For example, in December 2015, ▮▮▮▮▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Yet, a few months later, in response to questioning

8    from the court during argument on a motion *in limine*, Ms. Hurst stated the opposite:  "That's

9    correct, Your Honor. ME had – is a subset of the SE packages."  ECF 1722  (4/19/2016 Hrg. Tr.)

10   at 25:5-6.  Oracle never changed its RFA response to square with Ms. Hurst's concession, and at

11   trial Oracle itself elicited testimony from Oracle and Google witnesses that Java ME contains a

12   subset of Java SE:

13        Q. And, sir, is it also true that Java ME is a subset of Java SE?

14        A. There are editions to the Java ME that aren't part of Java SE
          because it runs on feature phones and embedded devices. But, in
15        general, it's a subset.

16   RT at 1273:1-5 (Ms. Hurst questioning Google expert witness); *id.* at 1438:5-7 (Oracle witness

17   testifying in response to question from Ms. Hurst that "Java ME is a subset of Java SE, a standard

18   subset of Java SE that allows people to have write once, run anywhere on smaller devices.").

19        7.    Ms. Hurst declares that there has never been an instance where Oracle failed to

20   supplement discovery "by reason, in whole or in part, of one or more rulings by this Court."

21   Hurst Decl. ¶ 3.  While it is unclear how Ms. Hurst is interpreting the quoted language, I note that

22   (1) on February 5, 2016 the Court issued an order (ECF 1479) limiting the May 2016 retrial to

23   uses of Android in smartphones and tablets, and (2) after that point, Oracle never supplemented

24   its response to Google's Interrogatory No. 25, which asked Oracle to "identify any efforts" to

25   build Java products or license Java for use in products in the "market for web browsers, wearable

26   devices (e.g., watches), televisions, media players, gaming consoles, in-car displays, or household

27   appliances (e.g., refrigerators, microwaves, washing machines, and air conditioners.)."  Nor did

28

3

1113616.01

1    Oracle produce any additional documents regarding its more recent efforts to license Java in any

2    of these new markets during the time between the Court's February 5 order and the May 9 retrial.

3         8.      Ms. Hurst declares that "Oracle continued to supplement discovery" after the

4    Court's February 5, 2016 Order, and "[i]n particular, Oracle made a March 8, 2016 supplemental

5    document production of a Java license agreements with Amazon that had been recently executed

6    for Amazon's Kindle line of e-readers."  Hurst Decl. ¶ 14.  As noted above, Oracle appears to

7    have produced the Amazon agreements because it affirmatively intended to rely on them at trial

8    to try to show alleged market harm.  *See* ¶ 4 *supra*.  Oracle did not supplement its production with

9    any other Java license agreements for any other products during the approximately six months

10   between the close of the fact discovery and the start of trial.  *Id.*  Nor did it supplement its

11   interrogatory responses to describe any *negotiations* or *offers* to negotiate a license to Java during

12   that time period, or any other *efforts* to license Java during that time period.  *See* ¶¶ 5 & 7 *supra*.

13        **B.      Discussion of *Jones v. Aero/Chem Corp.*, 921 F.2d 875 (9th Cir. 1990)**

14        9.      I have reviewed the *Jones* case and Ms. Hurst's discussion of it at the oral

15   argument on Oracle's motion for a new trial.  I do not agree with Ms. Hurst's conclusion that

16   *Jones* requires this Court to hold an evidentiary hearing before it can deny Oracle's motion.  In

17   fact, the phrase "evidentiary hearing" does not appear in the Ninth Circuit's opinion.

18        10.     In *Jones*, the Ninth Circuit held that "[t]he test to be applied when discovery

19   misconduct is alleged in a Rule 59 motion must be borrowed from cases interpreting Rule

20   60(b)(3)." *Id.* at 878.  The Ninth Circuit found that the district court failed to apply that legal

21   standard in ruling on plaintiff's Rule 59 motion.  *Id.* at 879 ("It does not appear the district court

22   considered the alleged misconduct in deciding Jones' Rule 59 motion."); *see also id.* at 878 n.2

23   (noting that "the Rule 60(b)(3) standard was not expressly called to the district court's attention").

24   The Ninth Circuit therefore "remand[ed] to the district court for appropriate proceedings to

25   determine whether Jones can meet her burdens under the Rule 60(b)(3) standard as applied to this

26   Rule 59 motion."  *Id.* at 879.

27        11.     Ms. Hurst suggests that the Ninth Circuit remanded the *Jones* case to the district

28   court because the district court had failed to hold an evidentiary hearing.  Hurst Decl. ¶ 18.

4

DECLARATION OF CHRISTA M. ANDERSON IN RESPONSE TO COURT ORDERS ECF 2052 & 2053
Case No.  3:10-cv-03561 WHA

1113616.01

1    However, the Ninth Circuit remanded the case to the district court because the district court had

2    applied an incorrect legal standard, not because it had failed to hold an evidentiary hearing.  921

3    F.2d at 878.  Notably, the Ninth Circuit did not order the district court to hold an evidentiary

4    hearing or take testimony.

5           12.    Ms. Hurst argues that "[t]he taking of evidence in some admissible form is

6    required by application of the holding in *Jones* . . . ."  Hurst Decl. ¶ 20.  I do not agree with Ms.

7    Hurst's argument for the reasons stated above.  The holding from *Jones* delineates the legal

8    standard for ruling on a Rule 59 motion based on alleged discovery misconduct; it does not create

9    a procedural requirement that the district court hold an evidentiary hearing or take evidence "in

10   some admissible form" whenever a party alleges discovery misconduct in a Rule 59 motion.

11          13.    Ms. Hurst declares that "the only way for Oracle to present evidence of Google's

12   knowledge in light of its 'secret' development of the new Android capability on Chrome OS is to

13   either take discovery or otherwise summon witnesses for cross-examination."  Hurst Decl. ¶ 21.

14   It is unclear what "knowledge" Ms. Hurst is referring to.  Google collected and produced

15   documents to Oracle during the discovery period that described the existing App Runtime for

16   Chrome ("ARC") functionality and Google's plans to create a new version of ARC referred to

17   internally at Google as "ARC++."  As explained in my prior declaration, the documents produced

18   to Oracle during discovery contain the information that Oracle now alleges (incorrectly) was

19   withheld, including:

20        • Google's plan to "make all public Android APIs available to ARC apps and work
            in a similar way or fail gracefully."  ECF 2047-3 (8/25/16 Anderson Decl.) ¶ 10;
21          ECF 2047-4 (Ex. 3).

22

23        • Google's proposed architecture for ARC++, which was designed to "provide[] an
            Android runtime on Chrome OS devices, running alongside Chrome OS."  8/25/16
24          Anderson Decl. ¶ 15; ECF 2047-7 (Ex. 6).

25        • Google's work on ARC++, which "runs Android in an isolated container inside
            Chrome OS."  8/25/16 Anderson Decl. ¶ 18; ECF 2047-10 (Ex. 9).
26

27        • Google's goal for ARC++, which was to "Provide Chrome OS users with Play
            Android apps on Chrome OS" and "Enable entire Android app ecosystem for
28          Chrome OS devices built in 2015 and beyond." 8/25/16 Anderson Decl. ¶¶ 16-17,
            ECF 2047-8 & 9 (Exs. 7-8).

1113616.01

1    Google also provided deposition testimony on this issue.  *See* 8/25/16 Anderson Decl. ¶¶ 12-13,

2    41, ECF 2047-5 & 6 (Exs. 4-5).  This information was provided during the discovery period, and

3    so was not kept "secret" from Oracle.

4          14.    Ms. Hurst declares that "Google did not disclose the existence of its plan for this

5    new software that would make a new version of Chrome OS running Android on all of its

6    desktops and laptops."  Hurst Decl. ¶ 22.  That is incorrect for two reasons.  First, as explained in

7    more detail in my first declaration, Google disclosed extensive evidence of its plans to run

8    Android apps on Chrome OS, including documents explaining that "ARC++ runs Android in an

9    isolated container inside Chrome OS."  8/25/16 Anderson Decl. ¶ 18; ECF 2047-10 (Ex. 9).

10   Second, as explained in more detail in my prior declaration, I am informed and believe that the

11   runtime for (the Marshmallow version of) Android that can be run inside of Chrome OS does not

12   include the Linux Kernel at the bottom of the Android stack, and does not include the Application

13   Framework layer at the top of the stack.  *Id.* ¶ 23.

14         **C.     Discussion of the parties' negotiations regarding treatment of pre-2012
              discovery responses**
15

16         15.    Ms. Hurst's declaration purports to summarize the parties' meet-and-confer

17   discussions regarding supplementation of discovery responses served in connection with the 2012

18   (not the 2015) trial ("phase one" discovery).  Hurst Decl. ¶¶ 3-11.  As an initial matter, I note that

19   these discussions are not relevant to Oracle's Rule 59 motion because Oracle does not accuse

20   Google of failing to supplement discovery responses served in <u>phase one</u>.  Rather, Oracle's

21   motion is premised on a complaint about supplementation of responses to discovery served ***after***

22   the case had been remanded for a retrial on fair use in August 2015 ("phase two" discovery).

23         16.    And even assuming counterfactually that these supplementation discussions were

24   relevant, Ms. Hurst's description of the meet-and-confer discussions contains factual errors.

25   Throughout the late summer and fall of 2015, the parties discussed several issues regarding the

26   scope of discovery including whether and to what extent the parties should either (a) supplement

27   responses to discovery served prior to the 2012 trial in this case, or (b) serve new discovery

28   requests targeted to the issues in the retrial.  The parties also discussed whether they should be

DECLARATION OF CHRISTA M. ANDERSON IN RESPONSE TO COURT ORDERS ECF 2052 & 2053
Case No.  3:10-cv-03561 WHA

1113616.01

1   permitted to redo phase-one discovery by requesting in phase two documents that were or could

2   have been requested in phase one.  Google took the position that the parties should serve new

3   discovery requests that were targeted to the issues in the retrial rather than review the hundreds of

4   phase-one discovery requests to try to determine which requests remained relevant to the fair use

5   retrial, and that the parties should not be permitted to seek in phase two information that was or

6   could have been sought in phase one.  Oracle initially appeared to agree with that position,

7   subject to certain limited exceptions, and the parties exchanged a draft stipulation to that effect.

8   But, in late October 2015—approximately six weeks before the December 16, 2015, close of fact

9   discovery—Oracle reversed course and demanded that the parties supplement all responses to

10   discovery served in phase one of the case, in addition to responding to the new discovery requests

11   that each party had already propounded.  Oracle also continued to demand that Google

12   supplement privilege logs served in 2011 and 2012.  Google disagreed, and the parties met and

13   conferred again in an attempt to reach a compromise.

14          17.     Google agreed to allow Oracle to redo specified and limited phase-one *document*

15   discovery in exchange for Oracle's agreement that the parties would not be required to produce

16   additional phase-one documents or supplement phase-one responses to written discovery.

17   Oracle's counsel summarized that compromise in a November 10, 2015 email, stating that,

18   subject to the parties reaching agreement on two issues regarding *document* production, "we will

19   not seek additional supplementation from the pre-2011 time period."  The parties also agreed that

20   a party's response to additional interrogatories propounded in phase two need not repeat

21   information previously disclosed in phase-one, as reflected in the same November 10, 2015

22   email.  Subsequently, the parties reached agreement on the outstanding document production

23   issues.  The only significant issue with respect to phase-one discovery that was not resolved by

24   the parties' negotiated compromise was Oracle's motion to compel with respect to Google's

25   phase-one privilege log, which Judge Ryu and this Court denied.  ECF 1394 (Judge Ryu denying

26   Oracle's motion to compel); ECF 1420 (this Court denying Oracle's request for relief from Judge

27   Ryu's order).

28          18.     I further note that Ms. Hurst's suggestion that Oracle supplemented all of its

DECLARATION OF CHRISTA M. ANDERSON IN RESPONSE TO COURT ORDERS ECF 2052 & 2053
Case No.  3:10-cv-03561 WHA

1113616.01

1    phase-one discovery responses during the phase two discovery period ending December 16, 2015,

2    *see* Hurst Decl. ¶ 4, is incorrect.  Oracle never supplement any of its RFA responses from phase

3    one at any point in phase two discovery or after phase two discovery closed.  And Oracle did not

4    supplement ***all*** of its "copyright-related" phase-one interrogatory responses during phase two, as

5    Ms. Hurst suggests.  *See* Hurst Decl. ¶ 11.  Rather, Oracle supplemented only ***some*** of its

6    copyright-related interrogatory responses from phase one, not all of them.  For example, Oracle

7    never supplemented its response to phase-one Interrogatory No. 19, which asked Oracle to

8    "Describe any contributions by Oracle Corporation or Oracle America Inc. to Java that would

9    have caused the value of Java to increase since Oracle Corporation acquired Sun Microsystems,

10   Inc."  Moreover, Oracle never supplemented ***any*** interrogatory response (from phase one or phase

11   two) after the close of fact discovery on December 16, 2015.  *See ¶* 3 *supra*.

12   **II.     RESPONSE TO THE COURT'S FURTHER REQUEST FOR RESPONSE**

13          19.     In response to the Court's Further Request for Response (ECF No. 2053), our

14   office has reviewed the briefing regarding Google's Motion in Limine #2 regarding New Products

15   and the related hearing transcript.  *See* ECF 1559, 1612-3, 1643, 1682 (4/14/16 MIL hearing) at

16   111-133. We have found no references to implementations of Android on desktops or laptops in

17   that briefing and transcript.  Oracle failed to reference those implementations despite having

18   access to the complete ARC source code and despite having knowledge, through both documents

19   produced in discovery and testimony elicited in depositions, that Google had created and

20   marketed functionality to allow Android apps to run on Chrome OS (ARC) and that Google was

21   working on technology that would "[e]nable [the] entire Android app ecosystem for Chrome OS

22   devices built in 2015 and beyond" (ARC++).  ¶ 13 *supra*.  Indeed, Oracle argued in its expert

23   reports that "[t]his means Google is now using Android to occupy the original, traditional market

24   of the Java Platform."  8/25/16 Anderson Decl. ¶ 47.

25

26

27

28

DECLARATION OF CHRISTA M. ANDERSON IN RESPONSE TO COURT ORDERS ECF 2052 & 2053
Case No.  3:10-cv-03561 WHA

1113616.01

1    I declare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct to the best of my knowledge.

3        Executed this 9th day of September, 2016 at Martinez, California.

4

5

6                                    By: _____
                                          CHRISTA M. ANDERSON
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

1113616.01