JOHN L. COOPER  (State Bar No. 050324)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor, San Francisco, CA 94104
Tel: 415.954.4400 / Fax: 415.954.4480
jcooper@fbm.com

Attorneys for Rule 706 Expert, James R. Kearl

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC.<br><br>Defendant. | Case No. 10-CV-03561-WHA<br><br>**RESPONSE OF DR. JAMES R. KEARL, RULE 706 EXPERT, TO ORACLE'S MOTION IN LIMINE #6 REGARDING RULE 706 EXPERT**<br><br>Date: April 27, 2016 at 8:00 am<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

Filed: April 8, 2016

Case 3:10-cv-03561-WHA   Document 2084   Filed 04/20/17   Page 2 of 8

Response of Dr. James R. Kearl, Rule 706 Expert, to Oracle's Motion
in Limine #6 Regarding Rule 706 Expert                                              April 8, 2016

## I.     Summary of Oracle's Objections

Oracle objects to all of my disgorgement opinions that rely on an analysis of non-infringing alternatives. As part of this objection, Oracle asserts that I agree that the use of non-infringing alternatives allows the infringer to retain all of the synergy benefits from infringement. Oracle also objects to my supposed resolving in Google's favor the amount of the disputed Traffic Acquisition Costs.

## II.    Non-Infringing Alternatives

I have discussed in my report and in my comments on Oracle's Motion in Limine directed at Dr. Leonard why I believe that consideration of But-For or counterfactual alternatives is <u>economically</u> correct in a disgorgement damages analysis.[1] But as I note in both places, whether relying on specified non-infringing alternatives of the sort that Dr. Leonard uses in his "bottom up" analysis as a way of characterizing But-For or counterfactual alternatives is permissible in determining disgorgement damages is a legal, not economic, matter. I

---

[1] Ex. A to the Declaration of Dr. James R. Kearl (all Exhibits referenced herein will be attached to the Declaration of Dr. James R. Kearl) (Expert Report of Professor James R. Kearl, corrected March 21, 2016), ¶¶ 35-36: "I do not have a position on the legal issue of whether non-infringing alternatives can be considered in a disgorgement analysis, and if so, which alternatives are allowed to be considered. However, as an economist it seems sensible to allow (indeed, to require) consideration of the next best non-infringing alternative. If the measure of disgorgement damages is the profits attributable to the infringement, then this naturally seems to call for an apportionment of the total profits of the infringing product between those that are due to the infringement and those that are due to other factors. And this apportionment seems to naturally call for a But-For analysis and a specification of a noninfringing alternative." See also Professor James R. Kearl, Rule 706 Expert, Response to Motions in Limine and Daubert Challenges filed April 6, 2016 (Dkt. 1601), pp. 5-6: "Economics can contribute to an analysis of the incremental contribution of the 37 Java APIs to Android profits if apportionment is legally required. An economic approach to determining the incremental contribution of the 37 Java APIs would typically start by asking the degree to which Android profits would be lower if Google had not copied the 37 Java APIs into Android. Whether this is legally permissible is a matter for the court, but the approach would be consistent with standard economic and damages methodologies. As a matter of economics, it would be difficult to determine the contribution to profits of the copyrighted material used in a larger work if one could not ask what would be the profits of the larger work absent use of the copyrighted material."

Case 3:10-cv-03561-WHA   Document 2084   Filed 04/20/17   Page 3 of 8

Response of Dr. James R. Kearl, Rule 706 Expert, to Oracle's Motion
in Limine #6 Regarding Rule 706 Expert                                April 8, 2016

also note that an economic approach to determining the incremental contribution of the 37 Java APIs would typically start by asking the degree to which Android profits would be lower if Google had not copied the 37 Java APIs into Android and that, as a matter of economics, it would be difficult to determine the contribution to profits of the copyrighted material used in a larger work if one could not ask what would be the profits of the larger work absent use of the copyrighted material.

In three of his challenged approaches Dr. Leonard focused on what would happen to Android profits if Google could have, or would have, done something specific in lieu of copying the 37 Java APIs. I opine about each of these three approaches, but I also note that there is nothing in economics that requires any of these three approaches (each of which is based on a specified non-infringing alternative that Dr. Leonard asserts was available to Google at the time it allegedly infringed the 37 Java APIs) in determining the share of Android profits that are attributable to the 37 Java APIs.[2] If Dr. Leonard's damages opinions based on these three specific non-infringing alternatives that he assumes were (or are) available to Google are stricken by the Court, so too should my analysis of these three non-infringing alternatives.[3]

---

[2] Professor James R. Kearl, Rule 706 Expert, Response to Motions in Limine and Daubert Challenges filed April 6, 2016 (Dkt. 1601), p. 6: "Dr. Leonard goes a step beyond this in three of his challenged approaches in that he focuses on what would happen to Android profits if Google could have, or would have, done something specific in lieu of copying the 37 Java APIs. In two of these approaches, his analysis relies on specific mitigating actions that Dr. Leonard assumes were available to Google. Specifically, in addition to assuming that Google could have provided an applications platform in Android that used other APIs, Dr. Leonard assumes that Google could have undertaken actions to counteract the adverse effects of using other APIs. Whether this additional step is legally permissible is a matter for the court, but there is nothing in economics that requires this additional step in determining the share of Android profits that are attributable to the 37 Java APIs as Dr. Leonard's other approaches to apportionment demonstrate."

[3] In this regard, in my Corrected Expert Report dated March 21, 2016 (Ex. A), I write:

> "In the initial phase of this case, I had the advantage that the Court had ruled on Daubert and like motions before I submitted my report,

Case 3:10-cv-03561-WHA   Document 2084   Filed 04/20/17   Page 4 of 8

*Response of Dr. James R. Kearl, Rule 706 Expert, to Oracle's Motion*
*in Limine #6 Regarding Rule 706 Expert*                               April 8, 2016

Oracle also challenges my use of the Kim model because it relies on "some unidentified" non-infringing alternative.[4] As I note in my discussion of Dr. Leonard's use of the Kim model, the alternatives considered are those available to consumers, not Google: it is Android phone users who can choose to do something different if their phones are less valuable because they have fewer (or no) Java-based apps.[5] In relying on the Kim model to estimate But-For profits, however, Dr. Leonard is implicitly assuming (and implicitly asserting that it is Oracle's claim) that Google would have provided an applications platform in Android that did not use the 37 Java APIs, but that its doing so would have reduced the apps available to consumers, thereby reducing the attractiveness of Android. If this implicit assumption is legally impermissible in the apportionment part of a disgorgement analysis, then Dr. Leonard's reliance on the Kim model as well as my use of the Kim model are impermissible.

## III.  Synergy

Oracle is incorrect that I agree that the use of NIAs permits an infringer to retain all of the value of the synergies, and that there is no accepted method by which economists can

---

*which narrowed my opinions to matters still before the Court. Because of the accelerated schedule in this phase, my report will be submitted before Daubert and like challenges and it may be that matters in other expert reports on which I opine in this report will be excluded by the Court. In such cases, I would expect that sections or paragraphs that correspond to specific exclusions will be dropped from this version of my report."* fn. 9.

*"I present analysis of disgorgement damages below based on the various non-infringing alternatives posited by Dr. Leonard. Obviously, should the Court instruct that this approach is legally impermissible, then I would remove this portion of the report."* pp. 7-8.

[4] Oracle's Motion in Limine #6 Regarding Rule 706 Expert, Professor James Kearl (Dkt. 1582), p. 4, lines 10 and 11.

[5] Professor James R. Kearl, Rule 706 Expert, Response to Motions in Limine and Daubert Challenges filed April 6, 2016 (Dkt. 1601), p. 7: "The alternatives considered are those available to consumers, not Google: it is Android phone users who can choose to do something different if their phones are less valuable because they have fewer (or no) Java-based apps."

Case 3:10-cv-03561-WHA   Document 2084   Filed 04/20/17   Page 5 of 8

*Response of Dr. James R. Kearl, Rule 706 Expert, to Oracle's Motion*
*in Limine #6 Regarding Rule 706 Expert*                                                                                                          April 8, 2016

apportion the infringer's synergies to avoid the infringer's retention of benefits.[6]  The portion of my deposition testimony that Oracle references is:

> *Q. You've talked about an output produced by complements. Does that sometime involve the possibility that two inputs will create synergies that is more than the sum of their parts?*
>
> *A. Sure.*
>
> *Q. And so, for example, if you have input J and input A, and the resulting product is J plus A, plus synergies, then by combining the two inputs you've created more value --*
>
> *MR. RAGLAND: Objection to form.*
>
> *Q. (By Ms. Hurst) -- is that right?*
>
> *A. Correct.*
>
> *Q. Is it true that the use of non-infringing alternatives allows the infringer to retain the value of the synergies, under those circumstances?*
>
> *MR. RAGLAND: Objection to form.*
>
> *THE DEPONENT: That's a -- an interesting question. The -- the fundamental problem is that if you have synergies, they're attributed to the jointness and, therefore, you can't parcel out the contribution of any single thing to the synergy, at least not easily. The -- and to the degree that a counterfactual -- claim to do that, then it would -- you know, then -- then it would be claiming too much. It's -- it's a hard question because it's unclear what -- what the -- the counterfactual*

---

[6] Oracle's Motion in Limine #6 Regarding Rule 706 Expert, Professor James Kearl (Dkt. 1582), p. 3: "Prof. Kearl also agrees with Oracle that the use of NIAs permits an infringer to retain all of the value of synergies—that is, the benefits created when infringing and non- infringing inputs are combined to create a success larger than the expected sum of their parts."

*Response of Dr. James R. Kearl, Rule 706 Expert, to Oracle's Motion*
*in Limine #6 Regarding Rule 706 Expert*   April 8, 2016

*implies about -- about the synergy...*[7]

The issue is this: suppose you have two inputs, A and J, with values of V(A) and V(J), respectively.[8]  If you combine the two inputs into (A+J), the value of these inputs combined – denoted V(A+J) – could be greater than the sum of the value of A and the value of J:

$$V(A+J) > V(A) + V(J)$$

or

$$V(A+J) = V(A) + V(J) + S, \text{ where } S > 0.$$

This is a way of defining a synergy, S: the value of the whole is more than the sum of the value of each part.

Assume that a product with the combined inputs of A and J infringes the copyrights of input J. The "actual" (with infringement) profits would be V(A+J). The "NIA" (or But-For or counterfactual) profits would be V(A). Determining disgorgement damages (D) involves subtracting the counterfactual profits from the actual profits:

$$D = V(A+J) - V(A)$$

or

$$D = [\, V(A) + V(J) + S \,] - [\, V(A) \,]$$

and it follows that

---

[7] Ex. B (Deposition of James R. Kearl, March 23, 2016), pp. 206:4-207:8.

[8] V(A) and V(J) could, for example, be the profits earned from employing only A or only J, respectively. While this example was from Oracle's counsel, and not myself, I presume that A is Android and J is Java.

$$D = V(J) + S.$$

Thus, use of a counterfactual to calculate disgorgement damages apportions <u>all</u> of the value of the synergy to the copyright owner and <u>none</u> to the infringer.

The "problem" that I alluded to in my deposition is that if we flip this process and subtract V(J) from V(A+J), all of the value of the synergies is attributed to input A, and none to the input, J. More generally, in calculating disgorgement this way, the value of the synergy is attributed to the input that is removed from the joint product. As I stated in my deposition, the fundamental theoretical economic problem is that if you have synergies you cannot easily parcel out the contribution of any single input to the synergy. However, in practice, when performing a counterfactual to estimate the contribution of infringed intellectual property to a larger product, the effect is to attribute all of the synergies to the infringed intellectual property.

## IV.   Traffic Acquisition Costs (TAC)

Oracle objects to my "opinion" that Dr. Leonard is correct regarding the disputed amount of Android-related Traffic Acquisition Costs (TAC). Oracle however misstates my position. As I noted in my report:

> *"Upon reviewing available materials, including the deposition of Jonathan Gold that Mr. Malackowski cites, it would appear that Mr. Malackowski may have been mistaken. As this is a fact issue, I will defer to the Court and jury to decide. For the purposes of my analyses in this report, however, I will use Dr. Leonard's approach. Should the jury decide that Mr. Malackowski is correct that Android Search Ad Traffic Acquisition Costs are recorded in the "Apps" and "Digital Content" cost line items of the Android P&Ls, I will adjust my analysis to reflect this.*[9]

---

[9] Ex. A (Expert Report of Professor James R. Kearl, corrected March 21, 2016), ¶ 28.

*Response of Dr. James R. Kearl, Rule 706 Expert, to Oracle's Motion*
*in Limine #6 Regarding Rule 706 Expert* April 8, 2016

Thus, I do not intend to offer an opinion on post-2011 Android TAC amounts. I view this as a fact issue, and intend to provide a damages estimate consistent with the resolution of the dispute between Oracle and Google over TAC by the Court or the jury.[10]

Respectfully submitted this 8th day of April, 2016

*/s/ James R. Kearl*
_____
J.R. Kearl

---

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

*/s/ John L. Cooper*
John L. Cooper

---

[10] As I note in my response to Oracle's MIL directed at Dr. Leonard, if Mr. Malackowski is incorrect and Dr. Leonard is correct with regard to TAC, and if Google has met its burden in proving its costs, then I would estimate TAC in the years when Google doesn't separately track it using the methodology set forth by Dr. Leonard.