# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

_____

|  |  |  |
|---|---|---|
| ORACLE AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV-03561-WHA |
| | ) | |
| GOOGLE, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

**EXPERT REPORT OF**
**PROFESSOR JAMES R. KEARL**

**(CORRECTED March 21, 2016)**

March 18, 2016



**Subject to Protective Order – Highly Confidential**

**Attorney's Eyes Only**

Expert Report of Professor James R. Kearl (Corrected)

March 18, 2016                                                Charles River Associates

_____

### 8.1.5   Next Best Non-Infringing Alternative #5: Do Not Develop Android at All

77. Mr. Malackowski and Professor Jaffe conclude that another non-infringing alternative from Google would have been to not pursue the Android project at all. Mr. Malackowski concludes that the total profits Google has made from Android total $22.6 billion. He then uses a 36% apportionment factor to arrive at his disgorgement damages estimate of $8.8 billion.[112] Mr. Malackowski does not attempt to calculate the But-For profits that Google would have made without Android, and argues that consideration of But-For alternatives in a disgorgement analysis is inappropriate.

78. Dr. Leonard does not explicitly consider this non-infringing alternative in his disgorgement alternatives, although he does calculate the difference in Actual Google Profit (with Android) and But-For Google profit (without Android) in his Exhibit 1a.3. He concludes that the incremental profit that Google has received, from having Android, is $7.7 billion.

79. As noted above, I believe that the correct economic method to calculate the profits attributable to the infringement is to compare actual profits to But-For profits under the next best non-infringing alternative. Thus, if the next best non-infringing alternative is "no Android" I would perform a calculation identical to that in Dr. Leonard's Exhibit 1a.3.[113] In performing this calculation, I believe Dr. Leonard is correct to deduct the total Android Engineering PM costs, Android Legal Costs, and Incremental Search and Advertising Expenses. If Google had not pursued the Android project at all, these costs would not have been incurred.

---

[112] Responsive Expert Report of James E. Malackowski (Corrected) February 29, 2016, Figures 12 and 13.

[113]  Dr. Leonard's Exhibits 1a.3 and 1b (iPhone Recapture Adjustment) are presented here as Exhibits 5a and 5b.

_____

Subject to Protective Order - Highly Confidential

Attorney's Eyes Only

Expert Report of Professor James R. Kearl (Corrected)

March 18, 2016                                                          Charles River Associates

any advantage to Google, I would recommend a disgorgement award of $0, and not the amounts of $32.4 million or $56.3 million offered by Dr. Leonard.[140]

103.  In the event that the jury concludes the use of the 37 Java APIs was not essential to Android, but did increase the market success of Android, the apportionment task becomes more difficult. But if the jury concludes that the effect is fully measured by a decrease in market share then as noted above, the numbers range between $2.08 billion and $3.51 billion.

### 10.3.  The 2006 Sun/Google Negotiation

104.  In the previous phase of this litigation, the damages analyses focused heavily on the licensing negotiations between Sun and Google. In this current phase of the litigation these negotiations have barely been mentioned. I understand that Oracle is not seeking as a damages remedy a lost license fee. Therefore, the amount Sun would have been willing to accept to license the subject copyrights to Google may be irrelevant. However, it is notable that the amounts of damages at play now (under some non-infringing alternative scenarios) are large relative to the amount that Sun was apparently willing to accept to license all Java intellectual property.

105.  I also note that the approaches taken by the experts in this current phase of litigation are different from the first round of expert analysis made in the previous round of Oracle v. Google litigation addressed in my 2012 report. As such, this report addresses only the current approaches put forth by Dr. Leonard, Mr. Malackowski and Professor Jaffe.

---

[140] Expert Report of Dr. Gregory K. Leonard, February 8, 2016, Exhibit 3e.

Subject to Protective Order - Highly Confidential

Attorney's Eyes Only

Expert Report of Professor James R. Kearl (Corrected)

March 18, 2016                                                                                    Charles River Associates

Respectfully submitted this 21st day of March, 2016

_____

J.R. Kearl