HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1  UNITED STATES DISTRICT COURT
2  NORTHERN DISTRICT OF CALIFORNIA
3  SAN FRANCISCO DIVISION
4  ORACLE AMERICA, INC.,
5     Plaintiff,
6     vs.              Case No. 3:10-cv-03561-WHA
7  GOOGLE, INC.,
8     Defendant.
   _____
9
10
11
12
13  *HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY*
14     PURSUANT TO THE PROTECTIVE ORDER
15     VIDEO DEPOSITION OF JAMES MALACKOWSKI
16        San Francisco, California
17        Wednesday, March 17, 2016
18              Volume I
19
20
21
22  REPORTED BY:
23  REBECCA L. ROMANO, RPR, CSR No. 12546
24  JOB NO. 2265299
25  PAGES 1 - 385

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 91

1  some of the other technical issues that you rely on
2  in support of your causal nexus conclusion.  One of
3  them is your conclusion that Android would not work
4  if the SSO and declaring code were removed.
5          Is it fair to say, that's an input to
6  your causal nexus analysis?
7      A.   I think it is an input, both as described
8  in my report and based upon my experience.  In
9  particular, I would reference my experience in the
10 Brocade A10 case, and the language of Judge Grewal
11 in that case, where he specifically cites to the
12 notion, a very equivalent notion, as an indication
13 to consider in a causal nexus -- and, frankly, in
14 reference to my causal nexus -- opinion.
15     Q.   Is there any other portion of the Android
16 operating system that if it were removed, the OS
17 would not work?
18     A.   Yes.
19     Q.   What other portions of Android would
20 disable the system if they were removed?
21     A.   That's more of a technical question.  I
22 do understand that there would be other portions --
23 you know, more than one, frankly -- that, if
24 removed, would disable the system.
25     Q.   For instance, if the Linux kernel were

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 92

1   taken out of Android, Android wouldn't work, would
2   it?
3          A.    I -- I think that's fair.  And as I
4   considered this issue, there's a chart that's been
5   used in trial that is sort of a block diagram that
6   sets forth all of the contributions to the Android
7   platform and list the Java technology as part of
8   the core of that diagram.
9               So, yes, there would be other things, but
10  I think what the technical experts have concluded
11  is that, as it relates to Android as developed, the
12  APIs at issue are clearly central and core.  They
13  are not trivial.  And, as I have concluded, they
14  are a contribution to the profits that were earned.
15         Q.    You, in fact, concluded they are a
16  100 percent contribution to the profits that were
17  earned, correct?
18         A.    No, not at all.  I make substantial
19  apportionment in my analysis to the platform; and
20  then ultimately to a subset of that, based on
21  profitability.
22         Q.    Yes, but you assign 100 percent of the
23  contribution of the platform to the 37 APIs,
24  correct?
25         A.    Not true.  If I were to assign -- if I

1     A.    No, I did not.
2     Q.    How would one go about analyzing that
3  issue?  If you wanted to do a second or third level
4  apportionment, what you would -- what you would
5  want to see?
6     A.    At that level, which is based upon our
7  conversation, which is a technical level, that's
8  outside the core of my area of expertise.  I would
9  seek the counsel of the technical experts.
10    Q.    What information would you, as a damages
11 quantifier, find persuasive in order to enable you
12 to do a second level apportionment between all the
13 implementing code in the Android core libraries and
14 the structure, sequence, and organization, on the
15 other hand, of 37 API packages?
16          MS. HURST:  Object to the form.
17          THE DEPONENT:  To the extent that there
18 was a detailed technical analysis that was
19 confirmed by the business records of the case,
20 that's the type of information I would find
21 persuasive.  I can't tell you that I would find it
22 persuasive per se, because we're speaking
23 hypothetically, but that's the type of thing that I
24 would look to.
25    Q.    (By Mr. Purcell)  What type of detailed

Page 377

1   record at 6:23 p.m.  This marks the beginning of
2   Media No. 7 in the deposition of James Malackowski.
3       Q.   (By Mr. Cooper)  Mr. Malackowski, please
4   refer to paragraphs 192 to 199 of your -- of your
5   reply report.  And this is just for -- to put it in
6   context.
7            Would the recession have had some impact
8   on Java ME revenues?
9       A.   Yes, but for a recession they would have
10  been greater.  But I think using, again, the very
11  conservative growth rate that I did in recognition
12  of the fact that the mobile industry was perhaps
13  the only industry that was, relatively speaking,
14  isolated from the effects of the recession, I
15  believe that my analysis is accurate.  But clearly,
16  but for recession, it would have been even more.
17      Q.   Is it your testimony that your estimate
18  did take into account the magnitude of the impact?
19      A.   Yes, qualitatively.
20      Q.   Now, Mr. Malackowski, would Android, in
21  some form, exist if Google had not used the SSOs
22  and the declaring code of the 37 Java APIs?
23      A.   So, to some extent, that's speculative.
24  But given the importance to Google to reach the
25  mobile marketplace, and their fear of being locked

1  out, I'm sure they would have attempted something.
2  What that is, I don't know.  Its measure of
3  success, I don't know.  Whether it would have been
4  launched in time to meet the window, I doubt it.
5      Q.  Mr. Malackowski, are your estimates of --
6  estimates of lost profit and disgorgement additive
7  in determining the amount you believe the court
8  should award Oracle, or is it your estimate of
9  disgorgement partially duplicative of your estimate
10 of lost profits?
11     A.  That is a very good fourth question.
12         And they are overlapping.  I suspect that
13 there is -- I believe that there is part of the
14 lost profits calculation that is not duplicative of
15 the disgorgement calculation.  But if asked and if
16 disgorgement is, in fact, awarded, I would not
17 expect the trier of fact to add on top of it my
18 lost profits calculation.
19         MR. COOPER:  Given the fact that if I
20 follow up, you'll accuse of me asking you a fifth
21 question, I'm not asking -- I'm not following up.
22 I'm done.
23         THE DEPONENT:  Thank you, sir.
24
25 /////