KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

KING & SPALDING  LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No.  3:10-cv-03561 WHA <br><br> **GOOGLE'S OPPOSITION TO MOTION IN LIMINE #2 TO EXCLUDE EVIDENCE OF APACHE, APACHE HARMONY, AND GNU CLASSPATH** <br><br><br> Hearing:   April 27, 2016 <br> Time:      8:00 a.m. <br> Dept.      Courtroom 8, 19th Fl. <br> Judge:     Hon. William Alsup |

## I. INTRODUCTION

Oracle seeks to exclude all evidence of Apache Harmony, the Apache Software Foundation, the Apache License, and GNU Classpath from trial, despite the fact that Oracle itself introduced the bulk of evidence on these topics and repeatedly elicited testimony about them at the first trial.  The reason it wishes to keep the jury from hearing this evidence is clear.  Despite Oracle's present attempt to paint Apache Harmony as an outlaw and infringer because of its use of Sun's so-called "declaring code," Sun did not take that position when Apache was making available its own open-source re-implementation of the Java API packages at issue in this case.  Instead, Sun's CEO said that Apache Harmony was free to ship, so long as it did not call itself Java.  RT 2035:13-16; Decl. of Mullen to MIL Opp. ("Mullen Decl."), Ex. 9 (TX 2341).  And Sun publicly applauded the use of Apache Harmony code in commercial products distributed by IBM.  Moreover, at the first trial, Oracle's lead counsel candidly admitted that "[w]hen Oracle was trying to protect itself, as you heard from Oracle witnesses, against the decay of Sun, Oracle was backing this independent implementation [Apache Harmony] as well."  RT 1121:17-20.

The evidence relating to Apache Harmony and GNU Classpath is straightforward and critical to presenting a complete picture of the facts showing fair use.  Both Apache Harmony and GNU Classpath did, openly and notoriously, what Google stands accused of doing here:  they copied the so-called "declaring code" for Java APIs and paired it with their own implementing code.  Indeed, many of Android's class libraries originated from the Apache Harmony project.  Although Sun refused to grant Apache Harmony a license that would allow it to brand its implementation as Java compatible, Sun did not assert that Apache was an infringer because it used API declaring code; quite the opposite, Sun's CEO said that Harmony could "ship today."  Oracle held the same viewpoint:  it supported Apache's right to create an independent implementation of Java by re-implementing the Java SE APIs, and publicly urged Sun to grant Apache Harmony a license permitting Apache to call its implementation Java.  Indeed, Oracle was the driving force behind the letter to Sun "imploring Sun to provide Apache with an unrestricted license." ECF 1552 at 2; *see* Mullen Decl., Ex. 10 (Lord Dep. Ex. 83).

This is what Oracle wants to keep from the jury:  potent evidence about whether Sun and

other leading companies in the industry, including Oracle itself, considered independent re-implementations of APIs by projects like Apache Harmony to be legitimate. Google does not claim that this would give it a license, as Oracle asserts. Instead, this evidence is highly relevant to Google's fair use claim because it shows that the practice in the industry, notably including by both Sun and Oracle, was to permit, encourage and support re-implementations of APIs when the re-implementer wrote its own implementing code. Though it undermines Oracle's position on fair use, Oracle has not established that it is prejudicial. Oracle says that this evidence would confuse the jury; however, the only thing that the jury would find confusing is how Oracle could now argue that Apache Harmony was effectively a willful infringer during a time at which Oracle was one of Apache's strongest supporters. This evidence is highly relevant and admissible, and therefore Oracle's motion should be denied in its entirety.

## II.   EVIDENCE RELATING TO APACHE HARMONY WILL AID THE JURY IN UNDERSTANDING INDUSTRY CUSTOM AND PRACTICE

### A.   Apache could and did distribute Apache Harmony without a TCK license

Oracle claims that Apache Harmony had to pass the TCK in order to distribute its re-implementation. That is not so and in fact contrary to the evidence of record. Apache only needed to do so if it wanted to be able to call Apache Harmony Java compatible. RT 1975:25-1977:3. Indeed, Oracle's Mark Reinhold noted in 2010 that Google would not object to changes in the terms for the TCK license that Oracle relies upon here because it was using Apache Harmony but "was not claiming Android to be compatible." Mullen Decl., Ex. 11 (Reinhold Dep. Ex. 1512). Though Oracle's attorneys now claim, years later, that Sun's specification license was for "declaring code," that term (unsurprisingly) is not used in the specification license.[1] Notably, Oracle cites no sworn testimony or document in support of its assertions regarding the alleged consequences of distributing Apache Harmony without taking the TCK – only the specification license itself. And the specification license demonstrates that Sun did not even consider the so-called "declaring code" to be "source code," because its grant of permission to create "Independent Implementations" was only for implementations that did not "derive from"

---

[1] Nor is the term "declaring code" found anywhere in TX 1045 (Mullen Decl., Ex. 12), even though Oracle inserts that term in brackets as part of its quotation from that document.

2
OPPOSITION TO ORACLE'S MIL #2
Case No. 3:10-cv-03561 WHA

1047144

or "include[] any of Sun's source code." Mullen Decl., Ex. 13 (TX 610.1). It would be impossible to create such an implementation if the term "source code" included the method declarations that are required to create a compatible implementation of Java SE.

Moreover, Oracle's suggestion that Apache Harmony did not distribute its source code is incorrect: an IBM representative has provided sworn testimony that it used source code derived from Apache Harmony in its IBM Java SE SDK. Mullen Decl., Ex. 14 (Duimovich Dep. 38:12-20). Indeed, Sun publicly promoted IBM's use of Apache Harmony code in commercial products. At the 2009 JavaOne conference (hosted by Sun), IBM demonstrated Apache Harmony and showed that "developers [could] generally expect that just about any Java module dropped into Apache Harmony [would] work." Mullen Decl., Ex. 15 (GOOG-10002049). Moreover, reports posted on Sun's corporate website expressly noted that "[t]he Apache Harmony project is more than an exercise in Java runtime innovation for IBM. According to [Craig] Hayman [IBM's vice president of WebSphere software], Apache Harmony is in broad commercial use. In fact, IBM's Lotus Notes and SameTime, Symphony, and Expeditor are all built on a Harmony base." *Id.*

Thus, evidence relating to Apache Harmony will not, as Oracle claims, require the jury to "unravel" Sun's licensing. It will, however, demonstrate that Sun did not consider declaring code to be off-limits to those wishing to independently implement Java APIs, and that Apache Harmony was in widespread commercial use as a result. Oracle is free to introduce evidence of its current position that Apache Harmony was a copyright infringer not shielded by principles of fair use; however, it should not be permitted to exclude evidence that Sun, and Oracle before it bought Sun, behaved in a manner that is inconsistent with, and undermines, that position.

**B. Oracle proffered much of the evidence that it now seeks to exclude**

Though Oracle now claims that this evidence, so damaging to its position on fair use, should be excluded, Oracle fails to note that it was the party that offered most of the evidence it now seeks to exclude during the first trial. Four of the five exhibits that Oracle seeks to exclude were introduced by Oracle. *See* Mullen Decl., Ex. 16 (TX 917, Apache open letter to Sun); *id.*, Ex. 12 (TX 1045, Apache Software Foundation letter resigning from the JCP Executive

3
OPPOSITION TO ORACLE'S MIL #2
Case No. 3:10-cv-03561 WHA

1047144

Committee); *id.*, Ex. 17 (TX 1047, Apache open letter to Sun and FAQs); and *id.*, Ex. 18 (TX 2347, letter to Sun regarding Apache). Oracle also affirmatively elicited testimony relating to Apache in direct examinations of multiple witnesses. *E.g.*, RT 393:23-394:15; 522:9-530:24; 986:11-987:10; 2308:18-2309:7.

Despite eliciting much of the evidence relating to Apache Harmony in the first trial, Oracle now seeks to bar *all* evidence relating to Apache. Oracle points to a number of notes sent by the jury to suggest confusion during deliberations. But Oracle omits to mention that the majority of the juror notes that it cites were submitted by the jury *during the presentation of evidence* in response to the Court's invitation to submit questions. Only one note mentioning Apache came after the close of evidence, and it dealt only tangentially with Apache. *See* ECF 1193 at 10. Moreover, Oracle parses each jury note to inflate the number of questions posed. For example, it seems that Oracle counted five questions from the following query: "What formal communication did Sun have (i.e. revoke license? Have Apache stop distributing? Contact those who acquired Apache to caution about use?) If not, why not? If so, when?" But these are all getting at one fundamental question: what, if anything, did Sun do to stop Apache from distributing Apache Harmony code? The answer to that question is clear: Sun did not take action to stop Apache from distributing Apache Harmony code. It knew of and promoted the use of that code in commercial products. It only refused to give Apache a license that would allow it to call the Apache Harmony project Java.

### III.     EVIDENCE RELATING TO APACHE HARMONY IS RELEVANT TO FAIR USE

Section 107 of the Copyright Act lists several factors to be considered when determining fair use: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1521-22 (9th Cir. 1992). The Ninth Circuit has held that in balancing these factors, a court should "bear in mind" that "fair use is appropriate where a 'reasonable copyright owner' would have consented to the use, i.e., where the 'custom or public

policy' at the time would have defined the use as reasonable." *Wall Data Inc. v. L. A. Cty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006) (quoting Subcomm. on Patents, Trademarks & Copyrights of the Sen. Comm. on the Judiciary, 86th Cong., 2d Sess., Study No. 14, Fair Use of Copyrighted Works 15 (Latman) (Comm. Print 1960)).

Evidence relating to Apache Harmony is just the sort of evidence of custom in the industry that the Ninth Circuit has said should factor into a fair use inquiry. The fact that Sun knew of Apache Harmony's use of the Java SE declarations in combination with its own implementing code and not only did not ask them to stop, but also actually took the position that they were free to ship so long as they did not call themselves Java is powerful evidence that those in the industry – including Sun – considered the re-implementation of APIs to be a fair use.

Evidence relating to Apache Harmony also bears on the fourth factor – the potential for market harm. Evidence that Sun believed, and indeed publicly affirmed, that Apache was free to ship as long as it did not call itself Java goes directly to the fact that Sun did not view any adverse impact from a re-implementation of the APIs as a cause of compensable market harm.

Finally, Oracle contends that this evidence is not relevant because it is not required to pursue all alleged infringers. But Google does not offer this evidence to argue a waiver; the point is not that Sun needed to sue in order to retain its rights, but rather that Sun never even took the position that use of the declarations was an infringement. To the contrary, Sun said that Apache Harmony was free to ship. Certainly in assessing whether a reasonable copyright owner would have consented to Google's use of the declaring code from the 37 API packages, the jury is entitled to consider evidence regarding the industry custom to allow re-implementations of APIs, so long as the re-implementer wrote its own implementing code. Even if not dispositive of the fair use inquiry, it is perhaps the best evidence available as to industry custom at the relevant time, and therefore should be provided to the jury to aid in their deliberations on fair use.

### IV.  EVIDENCE RELATING TO APACHE HARMONY IS NECESSARY TO RESPOND TO CLAIMS OF COPYING BY ORACLE

Oracle has attempted to paint Google as a willful copyist, claiming that there are "a lot of indications of conscious guilt." RT 210:14. Despite the fact that the question of copying was resolved by the first jury, and Oracle's acknowledgement in the motion itself that Google used

5

packages from Apache Harmony to create Android, ECF 1552 at 2, Oracle has suggested that it might attempt to argue that Google copied Sun source code. Against this backdrop, it is essential that Google be permitted to offer evidence of how it actually obtained some of the implementing code that it uses in Android – through open source projects like Apache Harmony.

## V. EVIDENCE RELATING TO GNU CLASSPATH IS LIKEWISE MORE PROBATIVE THAN PREJUDICIAL

Oracle says little about why GNU Classpath should be excluded, noting without explanation that GNU, which likewise employed declaring code copied from Java SE, was distributed under a different license.[2] This has nothing to do with the main point: that Sun once again did not say that GNU was infringing when it copied the declaring code at issue here. Indeed, Oracle does not even claim that GNU Classpath had requested and been denied a license. That is because Sun knew about, but did not do anything about, GNU Classpath. RT 1972:8-1973:8. This was no doubt in part because "they were bringing more developers into Java." *Id.*

## VI. EVIDENCE RELATING TO THE APACHE LICENSE IS RELEVANT

It is factually true that Google drew initial versions of some of the implementing code used in Android from the open source Apache Harmony project, which distributes its source code under the Apache License, version 2.0. *See* http://harmony.apache.org; http://www.apache.org/licenses. Oracle claims that "Apache could not grant such a license," ECF 1552 at 3, but that is incorrect: Apache could absolutely grant a license to the implementing code that it developed on its own and that Google used in part to create Android. But Google does not contend, and has not contended, that its license from Apache gives it any rights vis-à-vis Sun/Oracle. Oracle should not be permitted to exclude evidence based on a theory of the case that Google has never espoused.

Finally, Oracle asks, without any supporting justification, that Google be barred from saying that it distributes portions of Android under the open source Apache License. Under normal circumstances, Google would not anticipate a need to do more than to explain that it uses a permissive open source license to distribute Android. However, Oracle has put the question of

---

[2] Notably, the trial transcript that Oracle cites relating to the GPL license does not even mention GNU Classpath.

the specific licenses that are used to distribute Android in play in its expert reports by claiming that the Apache License is incompatible with the license under which Oracle distributes OpenJDK.  Accordingly, it will be necessary for Google to explain that it has selected the Apache License for distributing many parts of Android and why it has done so in order to rebut Oracle's arguments regarding supposed license incompatibility.

## VII. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court deny Oracle's motion to preclude all evidence relating to Apache Harmony, the Apache Software Foundation, the Apache License, and GNU Classpath.

Dated:  April 6, 2016                                    KEKER & VAN NEST LLP

                                              By:   /s/ Robert A. Van Nest
                                                    ROBERT A. VAN NEST
                                                    CHRISTA M. ANDERSON
                                                    DANIEL PURCELL

                                                    Attorneys for Defendant
                                                    GOOGLE INC.