KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Attorneys for Defendant
GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>            Plaintiffs,<br><br>      v.<br><br>GOOGLE INC.,<br><br>            Defendant. | Case No.  3:10-cv-03561 WHA<br><br>**GOOGLE'S RESPONSE REGARDING THE FOURTH FAIR USE FACTOR (ECF NO. 1598)**<br><br>Dept.     Courtroom 8, 19th Fl.<br>Judge:    Hon. William Alsup |

The Court has requested memos from the parties addressing whether "the fourth fair use factor, which considers 'the effect of the use upon the potential market for or value of the copyrighted work,' focuses on *the potential market for or value of the copyrighted work itself* as opposed to *uncopyrighted hypothetical products that might have included elements of the copyrighted work in an alternate universe*." Request for Response Re Fourth Fair Use Factor (ECF No. 1598) (emphasis added). The Court has further requested a summary of "specific evidence that will be presented on this specific question." *Id.*

The short answer is that for purposes of this case, the fourth fair use factor is the effect of Google's use of the declarations/SSO from the 37 Java SE API packages on the potential market for or value of *Java SE 1.4 and Java SE 5.0* (the copyrighted works at issue), and that this does not include harm to uncopyrighted hypothetical products (that might have included some of the declarations/SSO from the 37 Java SE API packages) that were not part of the traditional, reasonable, or likely to be developed market for Java SE 1.4 and Java SE 5.0. To explain why this is so, Google will first discuss cases addressing the fourth factor generally, then apply this law to the Court's specific question, including a summary of the types of evidence Google expects to present on this issue.

That evidence will show that the market for smartphones was not a traditional, reasonable or likely to be developed market for Java SE. Sun and Oracle's efforts to enter that market were utterly unsuccessful. Further, Java ME—which is not even one of the copyrighted works at issue—was never intended for the smartphone market, and smartphone manufacturers and consumers have no use for Java ME for *that* reason, not because of Google's use of declarations/SSO from Java *SE* API packages. Moreover, harms that resulted from Sun's own failure to invest in its Java platforms cannot be attributed to Google's use. Finally, because Sun chose to release an open source version of Java SE months *before* Android launched, any purported harm to the market for Java SE must be based on *differences* between Google's use and the use allowed by the royalty-free OpenJDK license – and the declarations/SSO are the *same* for Android and OpenJDK. Accordingly, the evidence thus will show that the fourth fair use factor favors Google, not Oracle.

## I. FOURTH FAIR USE FACTOR GENERALLY

The fourth fair use factor is "the effect of the use upon the potential market for or value of *the copyrighted work.*"  17 U.S.C. § 107(4) (emphasis added).  The Federal Circuit, in the prior appeal in this case, quoted the Supreme Court's statement that the fourth factor reflects the idea that fair use generally "is limited to copying by others which does not materially impair the marketability of *the work which is copied.*"  *Oracle Am., Inc. v. Google Inc.,* 750 F.3d 1339, 1376 (Fed. Cir. 2014) (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 566-67 (1985)) (emphasis added).  Though in 1985, the Supreme Court said that this factor is "the single most important element of fair use," *Harper & Row,* 471 U.S. at 566, it more recently explained that "[m]arket harm is a matter of degree, and the importance of this factor will vary, not only with the amount of harm, but also with the relative strength of the showing on the other factors." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590 n.21 (1994).

Because the fair use inquiry relates to the rights an author has under the Copyright Act, the potential markets for the asserted work that are considered for purposes of the fourth factor must "be confined to those uses within the Copyright Act's grant of rights in Sections 106 and 106A, as limited by Sections 107 to 122."  4 Patry on Copyright § 10:151.  One of those rights is the right to prepare derivative works, 17 U.S.C. § 106(2), and thus the market for derivative works of the asserted work can potentially be considered.  *Harper & Row,* 471 U.S. at 568.  But because fair use is an affirmative defense, it has application only if the defendant's use could otherwise be found to infringe.  Thus, if the very use in which the defendant has engaged is considered to be in the market for derivatives of the asserted work, the fourth factor becomes circular.  *See Ringgold v. Black Ent. Television, Inc.,* 126 F.3d 70, 81 (2d Cir. 1997).  To avoid this "danger of circularity," courts have limited the markets to be considered under the fourth factor to "'traditional, reasonable, or likely to be developed markets.'"  *Id.* (quoting *Am. Geophysical Union v. Texaco Inc.,* 60 F.3d 913, 930 (2d Cir. 1994)); *see also Seltzer v. Green Day,* 725 F.3d 1170, 1179 (9th Cir. 2013) (adopting "traditional, reasonable, or likely to be developed" limitation from *Ringgold*).  Thus, for example, the market for derivative works that the copyright owner is *unlikely* to develop or license is not relevant to the fourth factor.

*Campbell,* 510 U.S. at 592. Google notes that its Motion *in Limine* No. 4 to Exclude Market Harm Testimony from Expert Report of Dr. Adam Jaffe (ECF. No. 1561) also addresses the proper scope of evidence under the fourth fair use factor, and thus that the Court may want to consider the briefing on that motion, as well.

Similarly, the fourth fair use factor is not concerned with "harm" to interests not protected by the Copyright Act. For example, a copyright owner might want to exercise control over a market for its copyrighted goods, but copyright law "does not confer such a monopoly." *Sony Computer Ent. v. Connectix Corp.,* 203 F.3d 596, 607 (9th Cir. 2000). To the contrary, "an attempt to monopolize the market by making it impossible for others to compete runs counter to the statutory purpose of promoting creative expression and cannot constitute a strong equitable basis for resisting the invocation of the fair use doctrine." *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1523-24 (9th Cir. 1993). Instead, where a defendant's use is transformative and does not merely supplant the copyright owner's work, the fourth factor will favor the defendant *even if its use results in economic loss to the copyright owner. Sony,* 203 F.3d at 607.

And where a defendant's work is comprised of far more than just the allegedly infringing material, "the relevant market effect is that which stems *from defendant's use of plaintiff's 'expression,'* not that which stems from defendant's work as a whole." *Arica Inst., Inc. v. Palmer,* 970 F.2d 1067, 1078 (2d Cir. 1992) (emphasis added); *see also Wright v. Warner Books, Inc.,* 953 F.2d 731, 739 (2d Cir. 1991) (holding that the "effect on the market must be attributable to the [alleged infringement]"). In *Arica,* the Second Circuit held that a jury could find that three passages from the allegedly infringing work were substantially similar to passages from the copyrighted work. 970 F.2d at 1073-74. The court further held that the plaintiff's decision to apply nine labels to the nine points on a figure (which choice was also made by the defendant) was copyrightable, even though the labels and the figure, considered separately, were not copyrightable. *Id.* at 1076-77. In considering the fourth fair use factor, the court concluded that the defendant's work could well compete with the copyrighted work, but that the fourth factor nonetheless favored fair use. *Id.* at 1078. "Defendant, after all, is perfectly entitled to create a competing work." *Id.* For purposes of the fourth fair use factor, the issue was not simply whether

the works compete, but whether the *defendant's infringing use* caused harm. Considering just "the three passages and the decision to combine the labels with the enneagram figure," the court concluded there would be only "a negligible effect on the market" for the copyrighted work. Because only "marginal amounts" of the plaintiff's expressive content were copied, "[i]mpairment of the market for these works is unlikely." *Id.* (quoting *Wright,* 953 F.3d at 739).

In short, not all economic harms are relevant to the fourth fair use factor analysis. Instead, "[t]he fourth factor disfavors a finding of fair use only when the market is impaired because the quoted material serves the consumer as a substitute, or, in Story's words 'supersede[s] the use of the original.'" Pierre N. Leval, *Toward a Fair Use Standard,* 103 Harv. L. Rev. 1105, 1125 (1990) (quoting *Folsom v. Marsh,* 9 F.Cas. 342 (C.C.D. Mass. 1841)). To "affect the market for the original in a way cognizable under this factor," the use must "substitute for it." *Campbell,* 510 U.S. at 591; *see also Authors Guild, Inc. v. HathiTrust,* 755 F.3d 87, 99 (2d Cir. 2014) ("The only market harms that count are the ones that are caused because the secondary use serves as a substitute for the original, not when the secondary use is transformative (as in quotations in a book review)."). Where a defendant's use diminishes the market's opinion of the original—for example, a critical review, or a scathing parody—that economic impact is not part of the fourth factor analysis. *Fisher v. Dees,* 794 F.2d 432, 437-38 (9th Cir. 1986).

## II. APPLICATION OF THE FOURTH FAIR USE FACTOR IN THIS CASE AND THE EVIDENCE THAT WILL BE PRESENTED ON THIS ISSUE

In this case, the copyrighted works are Java SE 1.4 and Java SE 5.0. Order re Google's Mot. to Strike (ECF No. 1479) at 1. ("SE" stands for "Standard Edition," and refers to Oracle's Java platform for *desktop computers.* Trial Tr. at 365:22-24 (Kurian); *see also id.* at 386:18-19.) The fourth fair use factor therefore looks at the effect of Google's use on the potential market for or value of *Java SE 1.4 and Java SE 5.0. See* 17 U.S.C. § 107(4). This factor can include consideration of the effect on the market for derivative works of Java SE 1.4 and Java SE 5.0, but only to the extent that the evidence shows that such markets are "traditional, reasonable, or likely to be developed." *Seltzer,* 725 F.3d at 1179. Oracle has not shown any such evidence, and thus cannot argue purported market harm based on "uncopyrighted hypothetical products that might have included elements of the copyrighted work in an alternate universe." Request for Response

Re Fourth Fair Use Factor (ECF. No. 1598).

Moreover, in the prior trial, the jury found that Google's use of the declarations/SSO from the 37 Java SE API packages in certain versions of Android would infringe Oracle's copyrights in Java SE 1.4 and Java SE 5.0, subject to Google's defense of fair use, on which it was unable to reach a verdict. In the upcoming trial, it will be the jury's duty to resolve the question of fair use on which the prior jury hung. The question of fair use therefore is necessarily limited to the uses that were previously adjudicated and found to have been copied. The Court has already held that "our trial will *not* include implementations of Android in Android TV, Android Auto, Android Wear, or Brillo." Order re Google's Mot. to Strike (ECF No. 1479) at 2. Because the prior jury did *not* consider the extent to which the declarations/SSO are used by Google in Android TV, Android Auto or Android Wear, the jury should not consider the alleged effect of such uses on the potential market for or value of Java SE 1.4 and Java SE 5.0. (The same is true for Brillo, but Oracle no longer seeks to make Brillo part of the retrial. *See* Oracle's Opp. to Google's MIL #2 (ECF No. 1612-3) at 1 n.1.)

### A. Alleged harm to a market that Sun and Oracle were demonstrably unable to enter with Java SE is irrelevant to the fourth fair use factor.

Google's use cannot substitute for a hypothetical use of Java SE that Oracle was unable to bring to market. *Seltzer,* 725 F.3d at 1179. Google will present evidence and testimony from Sun/Oracle that its own efforts to enter the smartphone market failed. *See, e.g.,* TX 2044 ("Project Java Phone"); Trial Tr. at 1908:24-1915:18 (Gering) (Sun never brought a product to market based on SavaJe technology; Sun's Project Daneel, which would have integrated a Sun virtual machine into Android, never made it to market). Oracle was never able to bring a "full-stack" mobile platform to the market. *See, e.g.,* Tr. at 1912:11-13 (Gering), 1939:11-12 (Rizvi). Google expects that witnesses such as Oracle Vice President for Product Management Henrik Stahl and Vice President for Worldwide Java Business Mike Ringhofer will offer similar testimony, including testimony by Mr. Ringhofer that he is unaware of any particular model of phone in which Android has replaced Java.

Indeed, the evidence will show that Android succeeded in part because it created a *new* market rather than competing with Java SE. For example, Google's expert Dr. Astrachan will

5

1  testify that Java SE and Android have different technical features, which address different
2  technical needs.  Google also anticipates that witnesses such as Oracle Senior Principal
3  Technologist and Product Manager Terrence Barr will confirm that the efforts of companies like
4  Google and Apple transformed the mobile market, and that iOS and Android were transformative.
5  Google expects that Oracle witnesses such as Mr. Stahl will confirm that Google had to invest
6  significant time and resources in order to build a mobile phone software stack, and that Oracle
7  intentionally chose not to undertake such an effort.

8  And because Oracle cannot rely on alleged harm to the smartphone market, given that the smartphone market was not a "traditional, reasonable, or likely to be developed" market for Java SE, *Seltzer,* 725 F.3d at 1179, neither can it rely on alleged harms that are several further steps away in a speculative causal chain that supposedly resulted from Google's entry into the smartphone market.  Oracle argues that Android's popularity—in the *smartphone* market—has allowed it make Android TV, Android Auto, and Android Wear popular, too.  *See* Oracle's Opp. to Google's MIL #2 (ECF No. 1612-3) at 6.  Again, the Court has already rule that "our trial will *not* include" these implementations.  Order re Google's Mot. to Strike (ECF No. 1479) at 2.  Moreover, these uses do not merely supplant Java SE— Java SE does not have comparable products on the market, and evidence does not suggest that creation of such products using Java SE would be likely to be developed.  (Google will address some of Oracle's erroneous assumptions in this regard in its reply in support of its motion *in limine* #2.)  Moreover, Android TV, Android Auto, and Android Wear are possible only because of Android's substantial and transformative creation of a complete mobile stack.  And economic harm caused by a transformative use is not relevant to the fourth fair use factor.  *See Sony.,* 203 F.3d at 607-08 (finding that the fourth factor favored the defendant where the market harm argued by the copyright owner was due to "legitimate competit[ion]" by a transformative use).

**B.     Alleged harm to the market for Java ME is irrelevant to the fourth fair use factor.**

Oracle cannot rely on harm to a market for a different work, Java ME.  Unsurprisingly, the prior jury did not find that Google infringed Java ME, because Oracle did not assert infringement of Java ME.  Instead, *Java SE 1.4 and Java SE 5.0* are the copyrighted works at issue, and thus

6

GOOGLE'S RESPONSE RE FOURTH FAIR USE FACTOR (ECF NO. 1598)
Case No.  3:10-cv-03561 WHA

1048115

the fourth fair use factor considers the harm to the market for *those* works, not to the market for Java ME.  Moreover, because the issue is whether Google's use of the declarations/SSO from the *37 Java SE API packages* is fair, any consideration of harm to the market for derivative works should focus on the harm to derivative works *for the declarations/SSO from the 37 Java SE API packages.*  Oracle's Chief Corporate Architect Edward Screven testified that the set of class libraries in Java ME is very different from the set of class libraries in Java SE.  *See* Trial Tr. at 536:8-13 (Screven).

Furthermore, any harm to the market for Java ME is due to changes in what the consumers want, not due to Android's use of the declarations/SSO.  Mr. Screven testified that Java ME was designed for devices that could not run Java SE.  *Id.* at 536:5-7.  He also testified that *today* smartphone manufacturers and customers are not interested in Java ME because smartphones are far more capable than the devices targeted by Java ME.  *Id.* at 541:3-6.  Google expects that other Oracle witnesses, such as Mr. Ringhofer, will offer similar testimony.

**C.      Harm that was caused by Oracle's own failure to invest in Java is irrelevant, because such harm was not caused by Google's use.**

The evidence will further show that Sun failed to invest in Java.  *See, e.g.,* TX 3508 at 3 (Sun presentation noting, "Sun's leadership around Java is perceived as stagnant, and Java is considered legacy.").  Google anticipates that Oracle witnesses such as Mr. Barr will confirm that even before Android launched, Sun's mobile Java strategy was failing, and Sun needed to evolve its strategy.  Google expects to elicit testimony from Oracle witnesses that the types of phones demanded by consumers was in transition, and that Sun's mobile Java strategy was not well-suited to the new smartphone world that was emerging.  Google also anticipates that Oracle witnesses such as Mr. Stahl will also testify that Java ME was best suited for low-powered phones such as feature phones, that the market moved away from feature phones to smartphones, but that Oracle did not make the significant investment that would be necessary to allow Java ME to keep up with this change as consumers moved from feature phones to smartphones.

**D.      Google cannot have harmed the market for Java SE by engaging in uses of the declarations/SSO that are allowed by the OpenJDK license.**

Google will call its open source licensing expert Andrew Hall, as well as Sun/Oracle

7
GOOGLE'S RESPONSE RE FOURTH FAIR USE FACTOR (ECF NO. 1598)
Case No.  3:10-cv-03561 WHA

1048115

1    witnesses such as former Sun Chief Open Source Officer Simon Phipps, to testify about

2    OpenJDK.  This evidence will show that months *before* Android launched, Sun chose to publish

3    an open source version of Java SE, called OpenJDK, that includes *all* of the declarations/SSO at

4    issue in this case; that the OpenJDK license is royalty-free; that licensees are free to "subset" or

5    "superset" the Java SE APIs; that Sun knew that the "copyleft" effect of the license did not extend

6    to software that merely "links" with the OpenJDK class libraries; and that Sun's business plan

7    was to compete by monetizing "Java branded" versions of the Java SE platform.

8    In short, Google will establish that any alleged "harm" (if any exists) from its use of the

9    declarations/SSO would be no different from the "harm" to Java SE already invited by Sun itself,

10   *months before Google launched Android.*  To the extent that Android had an effect on the market

11   for Java SE beyond that self-inflicted harm, such effect must be due to features Android does *not*

12   share in common with Java SE and OpenJDK—harm that would not be cognizable under the

13   fourth fair use factor, because it necessarily would need to be due to expression *other* than what is

14   freely licensed in OpenJDK.  *Arica,* 970 F.2d at 1078.

15       **E.    Google will establish that its use is highly transformative, that the declarations/SSO are highly functional, and that it used only a small amount of Java SE that is necessary to ensure that developers can write software code using in the Java programming language in the manner to which they are accustomed.**

18   As the Supreme Court noted in *Campbell,* the importance of the fourth factor will vary

19   with the relative strength of the showing on the other fair use factors.  510 U.S. at 590 n.21.

20   Accordingly, Google's showing on the other fair use factors is relevant to the jury's consideration

21   of the fourth fair use factor.  Because the Court asked the parties to summarize the evidence that

22   will be presented on the *specific* issue of market harm, Google will not summarize the showing it

23   expects to make on the other fair use factors, but merely notes that its showing on the other fair

24   use factors will have an indirect bearing on consideration of the fourth fair use factor.  In

25   particular, "[t]he more transformative the new work, the less will be the significance of other

26   factors, like commercialism, that may weigh against a finding of fair use." *Id.* at 579; *see also*

27   *Oracle Am.,* 750 F.3d at 1375; *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 818 (9th Cir. 2003);

28   *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1166 (9th Cir. 2007) (all citing *Campbell*).

Dated: April 11, 2016                                   KEKER & VAN NEST LLP

                                    By:   /s/ Robert A. Van Nest
                                           ROBERT A. VAN NEST
                                           CHRISTA M. ANDERSON
                                           DANIEL PURCELL

                                           Attorneys for Defendant
                                           GOOGLE INC.