KEKER & VAN NEST LLP
ROBERT A. VAN NEST - # 84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

KING & SPALDING LLP
BRUCE W. BABER (pro hac vice)
bbaber@kslaw.com
1185 Avenue of the Americas
New York, NY  10036
Telephone:     212 556 2100
Facsimile:     212 556 2222

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 3:10-cv-03561 WHA <br><br> **GOOGLE INC.'S OPPOSITION TO ORACLE AMERICA, INC.'S MOTION IN LIMINE NO. 7** <br><br> Date:          April 27, 2016 <br> Time:         8:00 a.m. <br> Dept.:         Courtroom 8, 19th Fl. <br> Judge:        Hon. William Alsup |

Oracle's motion to strike two aspects of Dr. Gregory Leonard's reply report to Dr. James Kearl's Rule 706 expert report should be denied. Dr. Leonard's report was timely under this Court's orders (as Oracle concedes) and the opinions at issue directly address issues raised in Dr. Kearl's report, and thus were properly provided in Dr. Leonard's reply report.

*First,* Oracle's complaint that Dr. Leonard relied on new support for his calculation of Traffic Acquisition Costs ("TAC") is wrong. In his opening report, Dr. Leonard relied on Google's profit and loss statements (P&Ls) and conversations with, as well as the deposition testimony of, Jonathan Gold, Google's 30(b)(6) witness on financial matters. Dr. Leonard testified in his deposition concerning both his TAC calculation and his reliance on Mr. Gold. He further testified that Mr. Malackowski had misinterpreted Google P&Ls in calculating TAC. After Dr. Kearl pointed out that he too believed that Mr. Malackowski was mistaken, Dr. Leonard submitted his reply report, in which he stated that he had "doublechecked" with Mr. Gold and confirmed his original understanding of Google P&Ls. Oracle thus relies upon its own expert's misinterpretation of witness testimony to manufacture confusion where none exists. Tellingly, Oracle omits discussion of Dr. Leonard's opening report or his deposition testimony in an effort to claim prejudice. But there is none. Even if Dr. Leonard's reference to this confirming conversation were stricken, Dr. Leonard's TAC calculation, and the basis for it, remains the same.

*Second,* Dr. Leonard's opinions in response to Dr. Kearl's sensitivity analyses were within the scope of a proper reply report as set forth in the Court approved schedule. ECF 1509. In his opening report, Dr. Leonard utilized a model developed by Dr. M.J. Kim to estimate the market share loss Google allegedly would have suffered under Oracle's speculative theory that Android would have had fewer apps, and thus fewer users and less revenue. Dr. Kearl agreed that the Kim model is the type of model typically relied upon by economists, and useful in this case. He conducted "sensitivity analyses" using the Kim model to estimate Google's alleged market share loss assuming different factual premises about app availability. As provided for in this Court's scheduling order, Dr. Leonard provided opinions criticizing Dr. Kearl's analyses in a timely reply to Dr. Kearl's report. ECF 1619-5 (Len. Reply Rpt. to Kearl). If Dr. Kearl testifies concerning his sensitivity analyses, Dr. Leonard should be permitted to offer those opinions in response.

## I. DR. LEONARD DISCLOSED HIS CALCULATION OF TAC AND THE BASIS FOR IT IN HIS OPENING REPORT.

In its Motion in Limine No. 4, Oracle seeks to preclude Dr. Leonard's calculation of TAC in order to eliminate $1.8 billion in Google's costs, based on Oracle's expert's own error in interpreting Google P&Ls. ECF 1602-7 at 13-14. Now, Oracle argues that Dr. Leonard "waited to seek and disclose key information about Google's expenses accounting" in order to strike Dr. Leonard's reference to "doublechecking" information with Mr. Gold. ECF 1619-3 ("Opp") at 4. As set forth below, Oracle's motion is without any foundation whatsoever.

As Oracle admits, Google timely served Dr. Leonard's damages report on February 8, 2016. ECF 1509; ECF 1563-7 (Len. Rpt.). In that report, Dr. Leonard set forth his opinion and calculations regarding Google's TAC, and his reliance on conversations with, and the deposition testimony of, Jonathan Gold. ECF 1563-7 (Len. Report ¶¶32-33 & fns. 39-43; Ex. 1d). Dr. Leonard's calculation of TAC for Android is in Exhibit 1d, which cites the Google P&Ls he relied on and states "[b]ased on conversations with Jonathan Gold, Google Finance Director…[.]" *Id.* He also relied on Mr. Gold for his understanding of the categories reported on Android's P&Ls and on Google's advertising P&Ls, which he cited to in his report as the basis for his calculation of TAC. *Id.*, ¶¶24-31. In fact, Oracle expressly admits in defense of its own expert's reliance on interviews that "[i]t is common practice, encouraged by courts, for experts to discuss damages evidence with knowledgeable personnel." ECF 1613-4 (Oracle Opp. to Google MIL6 at 23-24, n.21 (citing *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 709 (9th Cir. 2004)).

In his Rebuttal Report, Mr. Malackowski also relied on Google P&Ls, but misinterpreted how Google books its TAC. ECF 1560-13 (Mal. Reb. ¶¶65-72). Specifically, Mr. Malackowski erroneously interpreted Mr. Gold's testimony to mean that search advertising TAC was accounted for in the Android P&L under apps and digital content costs of sales, and thus he opined that Dr. Leonard "substantially overstates Android-related TAC." *Id*. Both Dr. Leonard and Mr. Malackowski testified in their depositions regarding their differing understandings of whether TAC for Ad Search (the supposed disputed item) is accounted for in the Android P&L (it is not).

Specifically, Dr. Leonard testified that Mr. Gold was the person he talked to at Google

1  regarding financial matters. Karwande Decl. to MIL7, Ex. A (Len. Dep. at 168:7-11). He also

2  testified that he relied in part on Mr. Gold to derive his calculation of TAC. ECF 1619-9 (Len.

3  Dep. 217:23-218:15). And when asked at his deposition "How is Mr. Malackowski's calculation

4  of TAC wrong?" Dr. Leonard responded that:

> A. Well, I think his claim is that the --the -- the TAC for search is somehow already in the line items for -- under cost of sales for digital content and apps, I think, and that therefore when, you know, I've done a TAC calculation and it included some for search, that it's overstated. But, I mean, it's just he's wrong about that. The payments that are included under digital content and apps to partners are not for the types of things we were talking about before. It's when a user, for instance, pays for an app and then --but has it billed through his carrier statement. So that's the only thing that's included there.
>
> And, of course, if you think about it, it just doesn't make any -- Mr. Malackowski's claim doesn't make any sense. Why would the TAC for search be reported in the cost of sales on the Android P&L and have the revenue that's associated with that TAC be reported on the ad P&L, which is, you know, where it is? And the answer is, well, it's wrong, because the ad -- I mean, the TAC is also on the ad P&L. And I describe how to -- to tease that out in my exhibits. And on top of that, you know -- further, I talked to Google about this, and -- and, you know, that's -- the way I did it is consistent with what I just said and inconsistent with the way Mr. Malackowski did it.

*Id.* (Len. Dep. 214:8-215:14). Oracle fails to inform the Court that it specifically questioned Dr. Leonard about his TAC calculation and his disagreement with Mr. Malackowski's calculation.

Dr. Kearl then served his report on March 18, 2016, after the depositions of Dr. Leonard and Mr. Malackowski. ECF 1509; ECF 1583-6 (Kearl Rpt.). Dr. Kearl commented that while the experts agreed "how to estimate Android-specific AdSense and Display TAC, there is disagreement over the estimation of Android Search ad TAC." ECF 1583-6 (Kearl Rep. ¶27 & Ex. 1). He further commented that "it would appear that Mr. Malackowski may have been mistaken" in his interpretation of Mr. Gold's testimony, and therefore Dr. Kearl used Dr. Leonard's calculation. *Id.*, ¶28 & Ex.1. Google timely served Dr. Leonard's reply report to Dr. Kearl's report on March 28, 2016. ECF 1509; ECF 1619-5. In his report, directly in response to the issue raised by Dr. Kearl, Dr. Leonard commented that both he and Dr. Kearl correctly interpreted Mr. Gold's testimony, stating that:

> I have **doublechecked** with Jonathan Gold of Google to confirm the following. First, Google does not, in fact, include search ad TAC for Android in the line items on the Android P&L statement regarding digital content or app cost of sales. In fact, only revenue sharing payments related to digital content or app purchases are

3

OPP. TO ORACLE'S MOTION IN LIMINE NO. 7
Case No. 3:10-cv-03561 WHA

1048659

>included in the digital content and app cost of sales. Second, search ad TAC for Android is included in the Google-wide Adwords TAC line, as I stated in the Leonard Report. Third, Google may pay the carrier, the OEM, or neither the carrier nor the OEM TAC for search ads served through an Android device, depending on the contractual arrangements with the relevant carrier and OEM. Google negotiates with each carrier and OEM separately on this issue, and there is no formula that governs its payment of search TAC on Android devices.

ECF 1619-5 (Len. Reply to Kearl, ¶¶6-8) (emphasis added).

It is evident that Dr. Leonard in no way changed his opinion or the TAC calculation disclosed in his opening report, or the basis for that opinion. The fact that Dr. Leonard confirmed his original analysis in response to an issue raised by Dr. Kearl, and timely disclosed his opinion based on this confirmation, did not violate this Court's orders. Oracle's citations to cases that address late disclosed evidence are simply inapposite. And, Oracle's unsupported assertions that "Dr. Leonard did nothing to verify Google's accounting records" and is "acting as a mouthpiece for late information" are frivolous, given that Dr. Leonard was deposed regarding the basis for his disagreement with Mr. Malackowski's TAC calculation. Similarly, Oracle's assertion that Dr. Kearl criticized Dr. Leonard mischaracterizes the record. In fact, Dr. Kearl commented in response to Oracle's MIL 4 that "Dr. Leonard's approach to estimating Android TAC in years when Google didn't separately report it is consistent with the approach taken in analogous situations by damages experts." ECF 1601-3 (Kearl Resp. to Dauberts at 13-14).[1]

Finally, as pointed out in Google's Opposition to Oracle's MIL 4, the only supposed "uncertainty" that Oracle identifies is Oracle's own expert's misinterpretation of Mr. Gold's testimony. ECF 1602-7 at 13-14. As this Court has made clear, Mr. Gold will need to testify at trial to lay the foundation for Dr. Leonard's opinion concerning the TAC deduction and Google P&Ls; thus, there is no basis to strike Dr. Leonard's reliance on a conversation in which he "doublechecked" information disclosed in his report and deposition. *See Therasense, Inc. v. Becton, Dickinson & Co.,* 2008 WL 2323856 at *2 (N.D. Cal. May 22, 2008) (Alsup, J.) ("The traditional and correct way to proceed is for a foundational witness to testify first-hand at trial to the foundational fact . . . and to be cross-examined. Then the expert can offer his or her opinion

---

[1] Dr. Kearl further notes that whether TAC is included in certain Android P&L categories is a factual dispute. *Id.* But assuming Dr. Leonard is correct factually (which he is), his methodology is appropriate, and Dr. Kearl would use it as well. *Id.*

on the assumption that the foundational fact is accepted by the jury.").

## II. DR. LEONARD'S RESPONSE TO DR. KEARL'S SENSITIVITY ANALYSES IS PROPER AND TIMELY UNDER THE COURT'S SCHEDULE.

Oracle also seeks to preclude Dr. Leonard's opinions submitted (as Oracle admits) in a timely manner in his reply report to Dr. Kearl. Oracle's gamesmanship should not be permitted. The parties agreed to the schedule set forth in ECF 1509, which necessarily contemplated rebuttal reports to Dr. Kearl on March 28—after the March 16 deadline to complete the party experts' depositions. ECF 1507, 1509. Oracle's experts, Mr. Malackowski and Dr. Jaffe, submitted rebuttal reports on March 28, just as Dr. Leonard did, and Oracle's experts extensively addressed Dr. Kearl's "sensitivity analyses" under the Kim model. Malackowski Reply to Dr. Kearl, ¶¶87-102; Jaffe Reply to Dr. Kearl, ¶¶30-33.[2] Oracle's motion should be denied on that basis alone. Additionally, Oracle's vague, accusatory statements concerning the burden of proof on apportionment and failure to provide programs or data do not bear any relation to Oracle's request to exclude the opinions and analyses provided in Dr. Leonard's reply report to Dr. Kearl.

In his opening report, Dr. Leonard relied on Dr. Kim's "structural model of consumer demand for both smartphones and their compatible apps" to examine "the differential impact of an individual app on smartphone demand." ECF 1584-12 at 27 (M.J. Kim, *Essays on the Economics of the Smartphone and Application Industry*); ECF 1563-7 (Len. Rpt. ¶¶185-196 & cited exhibits). Dr. Leonard produced **all** of the data and analyses he relied upon to use to the Kim model. What Oracle appears to complain of now, is that Oracle does not have the data **Dr. Kim** used to create the model. *See* Malackowski Reply to Kearl, ¶93 (claiming that "Professor Kearl recognized that the use of the Kim model is limited because the Kim data and the Kim model are not available to him (or to Dr. Leonard), so that the Kim model cannot be tested."). But, as both Dr. Kearl and Dr. Leonard have commented, economists routinely rely on the models and results developed by other economists. ECF 1601-3 (Kearl Resp. to Dauberts at 8-9) ("The Kim model is consistent with standard and widely used econometric methods. Likewise, the use of an

---

[2] Pursuant to the Court's orders, Google has not submitted the reply reports to Dr. Kearl served by Dr. Jaffe or Mr. Malackowski, as those reports were not the subject of a *Daubert* motion, since both reports were served after the March 23 deadline for *motions in limine* including *Daubert* motions. Should the Court wish to review those reply reports, Google will submit them.

1  econometric model to predict the effect of a counterfactual change in an attribute is standard and
2  widely used methodology."); ECF 1619-5 (Len. Rep. to Kearl at ¶¶39-42).[3] As noted above, Dr.
3  Leonard provided the inputs he used and the data he generated from using the Kim model.
4  However, Oracle does not want to apportion the profits attributable to the Android platform, so its
5  experts did not use that information.

6  Dr. Kearl, however, found the Kim model useful, and selected alternative inputs to run
7  through the Kim model in order to test the sensitivity of the model to those inputs. ECF 1582-7
8  (Kearl Rpt. ¶¶12, 61-72). Dr. Kearl re-ran the Kim model but assumed that the certain categories
9  of applications would not be available, including: (1) also available on iOS, and written in the
10 Objective C language for that platform, (2) developed by a developer who also created apps for
11 iOS; and/or (3) developed by a developer who also created Android apps in a non-Java language
12 (such as C++), using Android's Native Development Kit (NDK). *Id.*

13 In rebuttal, and as provided for in the scheduling order, Dr. Leonard criticized Dr. Kearl's
14 sensitivity analyses, because Dr. Kearl made input adjustments that were not grounded in market
15 evidence. ECF 1619-5 (Len. Rep. to Kearl, ¶¶24-28, Exs. 1a-1d).[4] Dr. Leonard pointed out in
16 detail why Dr. Kearl's criteria are not supported in the economic literature, and he re-ran Dr.
17 Kearl's analysis with different criteria in order to demonstrate why, in Dr. Leonard's opinion, Dr.
18 Kearl's analysis is not reliable. *Id.* This is quintessential reply material. As noted above, Oracle's
19 experts also commented on Dr. Kearl's sensitivity analyses under the Kim model in reports
20 submitted by those experts. Malackowski Reply to Dr. Kearl, ¶¶87-102; Jaffe Reply to Dr. Kearl,
21 ¶¶30-33. All three experts' reports were necessarily submitted on March 28 after the experts were
22 deposed, because that is the schedule the parties agreed to and the Court ordered. ECF 1507,
23 1509. If the Court permits Dr. Kearl (or Oracle's experts) to testify regarding the sensitivity
24 analyses, then certainly Dr. Leonard's critique of those analyses should not be excluded.

---

[3] Oracle's and Mr. Malackowski's claim that the Kim model has not been "tested" also has no basis. The Kim model was part of Dr. Kim's Ph.D. dissertation, which was approved by prominent University of Minnesota economists. ECF 1619-5 (Len. Rep. to Kearl at ¶47, fn. 79).

[4] As set forth in Google's Motion in Limine re Dr. Kearl, the economic evidence does not support the adjustments Dr. Kearl made in using the Kim model. ECF 1584 at 10-11. Moreover, in Dr. Kearl's response to Google's Motion, Dr. Kearl admits that Dr. Leonard's approach in his opening report is "plausible" but counters that it is "not clearly obvious." ECF 1622-3 (Kearl Resp. to Google MIL at 5).

Dated: April 14, 2016

KEKER & VAN NEST LLP

By: /s/ Robert A. Van Nest
ROBERT A. VAN NEST
CHRISTA M. ANDERSON
DANIEL PURCELL

Attorneys for Defendant GOOGLE INC.