# EXHIBIT 5

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4

    ORACLE AMERICA, INC.
 5      Plaintiff,
 6          vs.            Case No. 3:10-cv-03561-WHA
 7   GOOGLE, INC.,
 8      Defendant.
    _____
 9
10
11
12   HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
13         PURSUANT TO THE PROTECTIVE ORDER
14
15   VIDEO DEPOSITION OF GREGORY K. LEONARD, Ph.D.
16              San Francisco, California
17              Friday, March 11, 2016
18                     Volume I
19
20
21
22   REPORTED BY:
23   REBECCA L. ROMANO, RPR, CSR No. 12546
24   JOB NO. 2241706
25   PAGES 1 - 405
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4
    ORACLE AMERICA, INC.
 5      Plaintiff,
 6          vs.            Case No. 3:10-cv-03561-WHA
 7   GOOGLE, INC.,
 8      Defendant.
    _____
 9
10
11
12
13          DEPOSITION OF GREGORY K. LEONARD, Ph.D.,
14   taken on behalf of the Plaintiff, at
15   405 Howard Street, 10th Floor, San Francisco,
16   California, commencing at 9:14 a.m., Friday,
17   March 11, 2016, before Rebecca L. Romano,
18   Certified Shorthand Reporter No. 12546
19
20
21
22
23
24
25
                                                Page 2
```

```
 1   APPEARANCES OF COUNSEL:
 2
 3   For the Plaintiff:
 4        ORRICK, HERRINGTON & SUTCLIFFE, LLP
 5        BY:  ANNETTE L. HURST
 6        BY:  ROBERT KEELE
 7        BY:  ANDREW KIM
 8        Attorneys at Law
 9        The Orrick Building
10        405 Howard Street
11        San Francisco, California 94105-2669
12        (415) 773-4585
13        ahurst@orrick.com
14        rkeele@orrick.com
15        akim@orrick.com
16   and
17        BY:  ALYSSA CARIDIS
18        Attorney at Law
19        777 South Figueroa Street
20        Suite 3200
21        Los Angeles, California 90017-5855
22        (213) 629-2020
23        acaridis@orrick.com
24
25   /////
```

Page 3

```
 1   APPEARANCES OF COUNSEL (cont'd)
 2
 3   For the Plaintiff:
 4        ORRICK, HERRINGTON & SUTCLIFFE, LLP
 5        BY:  AYANNA LEWIS-GRUSS
 6        BY:  HANNAH JUNKERMAN
 7        Attorneys at Law
 8        51 West 52nd Street
 9        New York, New York 10019-6142
10        (212) 506-5000
11        alewisgruss@orrick.com
12        hjunkerman@orrick.com
13
14   For the Defendant:
15        KEKER & VAN NEST LLP
16        BY:  DANIEL PURCELL
17        Attorney at Law
18        633 Battery Street
19        San Francisco, California 94111
20        (415) 773-6697
21        dpurcell@kvn.com
22
23
24
25   /////
```

Page 4

```
 1   APPEARANCES OF COUNSEL (cont'd)
 2
 3   For James Kearl:
 4        FARELLA BRUAN + MARTEL LLP
 5        BY:  JOHN L. COOPER
 6        Attorney at Law
 7        Russ Building
 8        235 Montgomery Street
 9        San Francisco, California 94104
10        (415) 954-4400
11        jcooper@fbm.com
12
13
14
15
16
17
18   ALSO PRESENT:
19        Robert McSorley, Ocean Tomo Consultant
20        Brandon Miller, Videographer
21
22
23
24
25   /////
```

Page 5

```
1                         INDEX
2   DEPONENT                                      EXAMINATION
3   GREGORY K. LEONARD, Ph.D.                           PAGE
    VOLUME I
4
5                 BY MS. HURST                            12
6                 BY MR. COOPER                          334
7
8                        EXHIBITS
9   NUMBER                                              PAGE
10                     DESCRIPTION
11  Exhibit 5143    Expert Report of
12                  Gregory K. Leonard, Ph.D.;           34
13
14  Exhibit 5144    PowerPoint, Google
15                  Introduction to Android
16                  May 2015,
17                  GOOG-00130338 -
18                  GOOG-00130386;                      104
19
20  Exhibit 5145    Email 3/30/2007,
21                  GOOGLE-02-00298859;                 138
22
23  Exhibit 5146    Email String,
24                  GOOGLE-01-00028498 -
25                  GOOGLE-01-00028499;                 152
```

```
 1                    EXHIBITS (cont'd)
 2    NUMBER                                              PAGE
 3                    DESCRIPTION
 4    Exhibit 5147    Regulation (EC) No 139/2004
 5                    Merger Procedure 13/02/2012,
 6                    37 Pages;                            246
 7
 8    Exhibit 5148    PowerPoint, State of the
 9                    (Mobile) Developer 2015,
10                    GOOG-00105585 -
11                    GOOG-00105764;                       261
12
13    Exhibit 5149    Form S-1 Danger, Inc.;               266
14
15    Exhibit 5150    Expert Report of
16                    Gregory K. Leonard, Ph.D.,
17                    Revised 10/24/2011;                  279
18
19    Exhibit 5151    Appeals from the United
20                    States District Court for
21                    the Northern District of
22                    California in No. 10-CV-3561,
23                    Judge William H. Alsup,
24                    69 Pages;                            297
25    /////
```

```
1                       EXHIBITS (cont'd)

2    NUMBER                                              PAGE

3                       DESCRIPTION

4    Exhibit 5152    Email 7/24/2005,

5                    GOOGLE-01-00017154;                  316

6

7    Exhibit 5153    Email 1/3/2006,

8                    GOOGLE-01-00019511 -

9                    GOOGLE-01-00019513;                  319

10

11   Exhibit 5154    PowerPoint, Google - A

12                   Discussion with CMCC,

13                   3/28/2007

14                   GOOGLE-01-00025376 -

15                   GOOGLE-01-00025433;                  322

16

17   Exhibit 5155    Email String,

18                   GOOGLE-04-00055169 -

19                   GOOGLE-04-00055171.                  325

20

21   Native Capture  Timestamps 11:57 a.m. -

22                   12:26 p.m.

23

24

25   /////
```

```
 1            PREVIOUSLY MARKED EXHIBITS

 2    NUMBER                                         PAGE

 3    Trial Exhibit 1                                 303

 4

 5    Trial Exhibit 7                                 306

 6

 7    Trial Exhibit 207                               301

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    /////
```

1    San Francisco, California; Friday, March 11, 2016

2                        9:14 a.m.

3                        ---o0o---

4

5            THE VIDEOGRAPHER:  Good morning.  We are

6    on the record at 9:14 a.m., on March 11th, 2016.

7    This is the video-recorded deposition of

8    Dr. Gregory Leonard.  My name is the

9    Brandon Miller, here with court reporter,

10   Rebecca Romano.  We are here from

11   Veritext Legal Solutions.

12           This deposition is being held at

13   405 Howard Street, Tenth Floor,

14   San Francisco, California.  The caption of this

15   case is Oracle America, Incorporated, versus

16   Google, Incorporated; Case No. C:10-03561-WHA.

17           Please note that audio and video

18   recording will take place unless all parties agree

19   to go off record.  Microphones are sensitive, and

20   may pick up whispers, private conversations, and

21   cellular interference.

22           I am not related to any party in this

23   action, nor am I financially interested in the

24   outcome in any way.

25           At this time will attorneys introduce

```
 1   themselves.
 2              MS. HURST:  Good morning.  My name is
 3   Annette Hurst, from Orrick, for Oracle America.
 4   With me this morning are my colleagues, Andrew Kim;
 5   Ayanna Lewis-Griss; Robert Keele; Alyssa Caridis;
 6   Hannah Junkerman; and from Ocean Tomo,
 7   Robert McSorley.
 8              MR. COOPER:  I'm John Cooper.  I'm with
 9   Farella Braun + Martel.  I represent
10   Dr. James Kearl, who is Judge Alsup's Rule 706
11   expert, and Dr. Kearl is here with me.
12              MR. PURCELL:  I'm Dan Purcell from
13   Keker & Van Nest, representing Google.
14              THE VIDEOGRAPHER:  Thank you.
15              You may now swear in the witness.
16              THE REPORTER:  If you could raise your right
17   hand for me, please.
18              THE DEPONENT:  (Complies.)
19              THE REPORTER:  You do solemnly state,
20   under penalty of perjury, that the testimony you
21   are about to give in this deposition shall be the
22   truth, the whole truth and nothing but the truth?
23              THE DEPONENT:  I do.
24
25   /////
```

Page 11

1  know, represent more than their actual lost
2  profits.
3         Because, No. 1, you know, Android would
4  have existed in some form with -- in the
5  but-for world, which really meant a lot of that loss
6  would have happened anyway.
7         Apple would have -- or iPhone would have
8  been bigger, and so it's -- it would have captured
9  some of that anyway.
10        And then plus just this idea that, you
11 know, I mean, the forecast obviously doesn't take
12 into account anything that was known as of when the
13 forecast was made.
14        I mean, sorry, it doesn't take into
15 account things that would happen in the future that
16 were unknown as of 2008.  But there were a lot of
17 things that happened, such as, you know, the iPhone
18 actually did a lot better than people were
19 predicting.  There was a financial crisis of 2008,
20 2009.
21        So it just -- it just seems to me that
22 all those reasons are -- really undercut the
23 approach that -- that he used.
24        Does that -- is that an answer to the
25 question?

Page 385

1     Q.    Yeah.
2           Oracle's experts argue that Java ME has
3  been directly displaced in many uses by Android.
4  And setting that aside was a potential bridge to
5  the smartphone and tablet areas.
6           My question is, what economic evidence or
7  analysis or principles suggest to you that neither
8  of these makes sense?
9     A.    Could I ask you to repeat it just so I
10 have it in mind again.
11    Q.    Let me ask the reporter to read it back.
12    A.    Oh, sure.
13          (Record read as follows:
14          "QUESTION:  Oracle's experts argue
15          that Java ME has been directly
16          displaced in many uses by Android.
17          And setting that aside was a
18          potential bridge to the smartphone
19          and tablet areas.
20             "My question is, what economic
21          evidence or analysis or principles
22          suggest to you that neither of these
23          makes sense?")
24          MS. HURST:  And I'm just going to object
25 to the extent that's beyond anything disclosed in

Page 386

1   the reports.
2           THE DEPONENT:  So I think the two things,
3   if I understood it, was, one that just a
4   displacement of Java ME -- and I mean, I think
5   there, the issue is, again, what would -- you know,
6   what would the but-for world really have looked
7   like?
8           In my view, Android would have existed in
9   some form.  If Android is going to be very
10  important to Google, it would have existed in -- in
11  some form, and -- and, therefore, a lot of the
12  displacement would have happened anyway.
13          And even if Android wasn't there, you
14  know, again, the world was moving to smartphones.
15  Java ME was really a -- was used on feature phones.
16  It just wouldn't be able to compete with the iPhone
17  or whatever other smartphones were out there, and
18  as a consequence, again, it was going to decline.
19          So in terms of the displacement, I think
20  the displacement would have happened in the but-for
21  world, and thus, the alleged infringement is not
22  causal of that.
23          So that's, I guess, the first thing.
24          The second thing is I think -- are you
25  asking would Java ME have been a bridge to some

1  sort of smartphone presence for --
2       Q.   (By Mr. Cooper)  Yes.
3       A.   -- Sun?
4            Okay.  Well, I think there we've got the
5  fact that Sun was -- had plenty of opportunities
6  to -- to do that.  And they -- you know, and I go
7  through this in my report.
8            And they just, you know, failed.  They
9  acquired Savage.  You know, they weren't able to do
10 anything with it successfully.  There's a lot of
11 testimony about that which I go through in my
12 report.
13           So I just don't see that -- and, again,
14 Java ME, it's not like it can be used in a
15 smartphone.  So it's not like there was a --
16 Android blocked that, because it was just never
17 going to happen.
18           So -- and so I don't see how it would
19 have been a bridge to anything.
20           To really compete, they would have had to
21 have had a complete mobile stack.  And, again, they
22 tried that with Savage and other things and were
23 just never successful.
24           So from my point of view, that's what is
25 really -- leads me to conclude, on the second

Page 388

1  point, that it wasn't going to be a bridge to
2  anything.
3      Q.   Dr. Leonard, please refer to
4  paragraph 209.
5      A.   Okay.
6      Q.   In that paragraph you cite reasons why
7  Java ME forecasts were too optimistic.
8           What economic evidence or analysis or
9  principles do you suggest -- or suggest to you that
10 this is the case?
11     A.   Okay.  Well, so if you -- for instance,
12 if you'll look at forecasts about iPhone sales as
13 of the same time, they substantially understated
14 what iPhones sales ended up being.
15          So since iPhones are displacing -- you
16 know, along with other smartphones, are displacing
17 feature phones, that suggests that the forecasts of
18 feature phones, basically, sales that -- or
19 licensing that Sun had made were almost certainly
20 too optimistic.
21          Because, you know, iPhone turned out to
22 do better than they -- than anyone had thought,
23 and, therefore, they were going to necessarily do
24 worse, I think.
25          Secondly, I think we -- I talk about the

Page 389

```
 1   2008 financial crisis that -- again, that was not
 2   anticipated at the time they did the forecast.
 3   But, you know, I mean, these -- these products do
 4   have an income elasticity demand, so you would
 5   expect then that actual sales would have been
 6   affected by that relative to the -- relative to the
 7   forecasts.
 8             Let's see.  Let me see if there's
 9   anything else.
10             I mean, I think the -- the -- I don't
11   think that this was really anticipated either, is
12   that, you know, as I mentioned, if you look at the
13   amount of licensing they were doing per feature
14   phone, so just, you know, just not worrying about
15   whether they lost revenues because of feature phone
16   losses, but just conditioning on the number of
17   feature phones and asking how they were doing per
18   feature phone, that dropped off a lot.
19             I don't think that they anticipated that.
20   And -- but -- and yet it really can't be attributed
21   to -- to Android or smartphones because, you know,
22   Android is not used on feature phones.
23             So I think -- I'm not sure what caused
24   that exactly, except I suspect it has to do with,
25   you know, the fact that -- that Java ME was -- you
```

Page 390

1  know, the platform was increasingly stagnant and
2  just was less and less attractive over time.
3          And it doesn't seem to me that they took
4  that into account -- well, or that it happened, you
5  know, more rapidly than they were anticipating when
6  they formed those forecasts.
7      Q.  Now, Dr. Leonard, in paragraph 209, you
8  state the principle or the opinion that the proper
9  way -- and I'm at the top of page 101.
10         You say, "The proper way to calculate
11 lost profit damages is to look at what actually
12 happened, not what was forecasted to happen, and
13 is" -- "and to isolate the effect, if any, that the
14 alleged infringement actually had on Oracle's
15 Java ME."
16         Now, my question is, does this mean that
17 it's your opinion that a but-for world approach is
18 economically inappropriate for lost profit
19 determinations -- determination?
20     A.  No.  I think I'm something else entirely.
21         I'm saying to come up with the
22 but-for world, you start with the actual world and
23 then undo the effect of the infringement.
24         When you do that, you account for every
25 other factor that occurred in the actual world

Page 391

1    I, Rebecca L. Romano, a Certified Shorthand
2    Reporter of the State of California, do hereby certify:
3    That the foregoing proceedings were taken before me
4    at the time and place herein set forth; that any
5    witnesses in the foregoing proceedings, prior to
6    testifying, were administered an oath; that a record of
7    the proceedings was made by me using machine shorthand
8    which was thereafter transcribed under my direction;
9    that the foregoing transcript is true record of the
10   testimony given.
11   Further, that if the foregoing pertains to the
12   original transcript of a deposition in a Federal Case,
13   before completion of the proceedings, review of the
14   transcript [ ] was [X] was not requested.
15   I further certify I am neither financially
16   interested in the action nor a relative or employee of
17   any attorney or any party to this action.
18   IN WITNESS WHEREOF, I have this date subscribed my
19   name.
20
21   Dated: March 14, 2016
22
23   *[signature: Rebecca L. Romano]*
24       Rebecca L. Romano, RPR,
25       CSR. No 12546

Page 405