ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 10-03561 WHA <br><br> **ORACLE'S MOTION IN LIMINE #6 REGARDING RULE 706 EXPERT, PROFESSOR JAMES KEARL** <br><br> Date: April 27, 2016 at 8:00 am <br> Dept.: Courtroom 8, 19th Floor <br> Judge: Honorable William H. Alsup |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that the following Motion *in Limine* Regarding Rule 706 Expert, Professor James Kearl, will be heard on April 27, 2016, at 8:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8, 19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable William Alsup presiding.

Plaintiff Oracle America, Inc. will, and hereby does, move this Court to exclude portions of the opinions and testimony of the Court's Rule 706 Expert, Prof. James Kearl, on the ground that Professor Kearl's analysis, conclusions, and methodology are inconsistent with the law.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the materials attached to the Declaration of Andrew D. Silverman (cited hereinafter as "Ex. __") that are being filed herewith; Oracle's Motion in Limine #1 To Exclude Evidence of OpenJDK Including Expert Testimony Thereof, ECF Nos. 1551-3, 1551-4; Oracle's Motion in Limine #4 Regarding Google's Damages Expert, Dr. Gregory Leonard, ECF Nos. 1554-3, 1554-4; the previously submitted Declaration of Andrew D. Silverman In Support of Oracle's Motions In Limine, ECF No. 1566, and exhibits attached thereto, ECF Nos. 1556-1 through 1556-12, the record in this matter; and such other and further papers, evidence, and argument as may be submitted in connection with this Motion.

Dated: March 30, 2016                                  Orrick, Herrington & Sutcliffe LLP

                                                       By: */s/ Annette L. Hurst*
                                                           Annette L. Hurst

                                                       Counsel for ORACLE AMERICA, INC.

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION

TABLE OF AUTHORITIES ................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

INTRODUCTION .......................................................................................................................1

I.   PROF. KEARL'S TESTIMONY DEMONSTRATES THE IMPROPRIETY OF USING NON-INFRINGING ALTERNATIVES IN DISGORGEMENT OF PROFITS ANALYSIS ...........................................................................................................2

II.  TO THE EXTENT THEY RELY UPON NON-INFRINGING ALTERNATIVES, PROF. KEARL'S OPINIONS SHOULD BE EXCLUDED ...............................................4

III. PROF. KEARL'S OPINIONS ON TAC SHOULD BE EXCLUDED .............................5

CONCLUSION ............................................................................................................................5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   No. C 10-3428 PSG, 2013 WL 831528 (N.D. Cal. Jan. 10, 2013) ............................................. 3

*Bucklew v. Hawkins, Ash, Baptie & Co.*,
   329 F.3d 923 (7th Cir. 2003) ..................................................................................................... 2

*Frank Music Corp. v. MGM Inc.*,
   886 F.2d 1545 (9th Cir. 1989) ........................................................................................... 2, 3, 5

*Harper & Row Publ'rs, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) ................................................................................................................... 3

*Hebert v. Lisle Corp.*,
   99 F.3d 1109 (Fed. Cir. 1996) ................................................................................................... 4

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) .................................................................................................. 2, 3

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
   309 U.S. 390 (1940) ................................................................................................................... 3

**Statutes**

17 U.S.C. § 504(b) ............................................................................................................................ 2

**Other Authorities**

Fed. R. Evid. 401 ............................................................................................................................. 4

Fed. R. Evid. 402 ............................................................................................................................. 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In his first report in this case, Prof. Kearl concluded that Oracle's damages in the form of a hypothetical lost licensing opportunity were best measured by an ongoing 20% royalty on gross advertising revenues, which, in light of Android's success, now equates to roughly ▓▓▓▓.[1] ECF No. 850-6 (3/28/12 Kearl Rpt. ¶¶ 20, 104-105 & Table 2); Ex. 2 (Kearl Depo.) 174:23-177:3.  This time around, Oracle is not claiming hypothetical lost license damages, but instead has limited its claim to actual damages in the form of lost profits from diminished licensing revenue connected with sales of Java-based phones, as well as disgorgement of infringer's profits. For disgorgement, Prof. Kearl this time provides an upper-bound calculation even larger than his earlier number—$7.7 billion—for the scenario in which the jury finds Android would not have been successful but for its use of Oracle's infringed works.  *Id.* 182:9-18; Ex. 1 (3/18/16 Kearl Rpt.) ¶ 9.  This number is similar in range to the figure offered by Oracle's damages expert, James Malackowski—$8.8 billion.[2]

Prof. Kearl's current three disgorgement calculations rely in whole or in part on non-infringing alternatives ("NIAs"), Ex. 1 (Kearl Rpt.) ¶¶ 9-11:

- **$7.7 billion** if Android would have failed but for Oracle's infringed IP, causing Google to partner with Apple as a non-infringing alternative;
- **$2.08-$3.51 billion** if counterfactual Android, using an unidentified non-infringing alternative, had been less successful than actual Android; and
- **Approximately $0** if counterfactual Android, using an unidentified non-infringing alternative, had been just as successful as actual Android.

The Court has already held that using NIAs in copyright disgorgement of profits is improper, holding that NIAs have "nothing to do with [disgorgement]."  ECF No. 632 at 7; *see also* ECF No. 1554-4 (Oracle MIL #4) at 1-4 (collecting authorities that NIAs are improper for copyright disgorgement).  Because Prof. Kearl's second and third calculations ($2.08-$3.51 billion and $0)

---

[1] All damages experts in this case agree that gross Android revenues are ▓▓▓▓▓▓, and advertising revenues account for ▓▓▓▓▓ of that total.  *See* Ex. 1 (Kearl Rpt.) Ex. 2.

[2] There is an accounting disagreement regarding traffic acquisition cost expenses, which, if resolved in Oracle's favor, would increase Prof. Kearl's number by ▓▓▓▓▓, to a total of ▓▓▓▓▓—*more* than Mr. Malackowski's disgorgement figure.  Ex 2 (Kearl Depo.) 184:1-24.

- 1 -     ORACLE'S MOTION IN LIMINE #6 RE:
RULE 706 EXPERT, PROF. JAMES KEARL

rely entirely on NIAs, they should be entirely excluded. Prof. Kearl's first calculation is not entirely dependent upon NIAs, but uses an NIA deduction. That deduction should be excluded.

Finally, Prof. Kearl's opinion on traffic acquisition costs ("TAC") should be excluded. Prof. Kearl admits the TAC evidence is incomplete and contradictory (as Google refused to produce relevant data). But, contrary to law, Prof. Kearl resolves doubts in Google's favor, rather than Oracle's. Prof. Kearl's ▓▓▓▓▓ deduction in his first two calculations must be excluded.

**I.   PROF. KEARL'S TESTIMONY DEMONSTRATES THE IMPROPRIETY OF USING NON-INFRINGING ALTERNATIVES IN DISGORGEMENT OF PROFITS ANALYSIS**

The Copyright Act creates a two-step framework for disgorgement: (1) the copyright owner presents proof of the infringer's gross revenue "reasonably associated" with the infringement and (2) the infringer then has the burden to present proof of deductible expenses and the elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711, 715 (9th Cir. 2004). In performing apportionment in the second step, doubts are resolved in favor of the copyright holder. *Frank Music Corp. v. MGM Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("*Frank Music II*"). Judge Posner has explained the purpose of disgorgement of copyright infringer's profits: "Copyright infringement[,] unlike patent infringement[,] is an intentional tort, and by forcing the infringer to disgorge his profit should it exceed the copyright owner's loss[,] the law discourages infringement and encourages the would-be infringer to transact with the copyright owner rather than 'steal' the copyrighted work." *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 931 (7th Cir. 2003).

Prof. Kearl recognizes the problems with use of NIAs. Using NIAs to calculate unjust enrichment leads to both overinclusive and underinclusive results compared to the statutory framework of "disgorgement of profits." It is overinclusive because it would require disgorgement of the defendant's avoided costs even if there is no profit at all. Ex. 2 (Kearl Depo.) 189:22-190:8. It is underinclusive where, as here, the infringer argues that use of NIAs justifies retention of *all* the profits based on the theory that it had a perfectly good and costless substitute (thus driving the "value" of the IP to zero). *Id.* at 190:9-21; Ex. 1 (Kearl Rpt.) ¶ 10; *see* ECF No. 1554-4 (Oracle MIL #4) at 4 n.3 (collecting Dr. Leonard's articles arguing the same). The idea that Google simp-

ly could have used OpenJDK, in particular, is egregiously inconsistent with the factual record, and thus a bad "fit" that must be excluded. *See* ECF No. 1551-4 (Oracle MIL #1) at 3-8. Prof. Kearl repeatedly agreed with Oracle that Dr. Leonard's reliance upon OpenJDK to retain all profits is inconsistent with Google's "revealed preferences" in the real world at the time decisions were actually made. Ex. 2 (Kearl Depo.) 57:7-22, 162:7-163:4; *see* Ex. 1 (Kearl Rpt.) ¶¶ 44-45.

Prof. Kearl also agrees with Oracle that the use of NIAs permits an infringer to retain all of the value of synergies—that is, the benefits created when infringing and non-infringing inputs are combined to create a success larger than the expected sum of their parts. Ex. 2 (Kearl Depo.) 206:4-207:18. Retention of synergies undermines the value of the copyright by permitting the infringer to retain benefits from a wrongful act. *See Polar Bear*, 384 F.3d at 708. Prof. Kearl also conceded that there *is no accepted method* by which economists can apportion such synergies to avoid the infringer's retention of benefits. Ex. 2 (Kearl Depo.) 207:23-208:10 ("[T]he fundamental problem is that if you have synergies, they're attributed to the jointness and, therefore, you can't parcel out the contribution of any single thing to the synergy, at least not easily."); *see also* Ex. 3 (Supp. Jaffe Supp. Rpt.) ¶¶ 9, 21-24. This is exactly why the copyright law on apportionment has long resolved doubts in favor of the plaintiff, *Frank Music II*, 886 F.2d at 1549, and has instead used the commingling approach adopted by Mr. Malackowski to avoid permitting the defendant to retain such benefits. *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 567 (1985) ("With respect to apportionment of profits flowing from a copyright infringement, this Court has held that an infringer who commingles infringing and noninfringing elements 'must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him.'" (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406 (1940))); *see also* Ex. 3 (Jaffe Supp. Rpt.) ¶ 24.[3]

---

[3] Prof. Kearl argues that positing Android's failure in the absence of infringement is "in effect" an NIA. Ex. 1 (Kearl Rpt.) ¶¶ 9, 16-17. While the economic "effect" may arguably be the same, the legal test is different. Removing the plaintiff's code from the infringing product and testing the result to demonstrate failure is a technical experiment to show causation. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *6 (N.D. Cal. Jan. 10, 2013) ("Brocade's burden was only to provide non-speculative evidence that but for the 145 lines of infringing code A10 would not have received the profits from the product in which it used the infringing code."). An expert improperly crosses the NIA line by *replacing* the infringing code with something that was not there—*i.e.*, an alternative that does not infringe.

**II.   TO THE EXTENT THEY RELY UPON NON-INFRINGING ALTERNATIVES, PROF. KEARL'S OPINIONS SHOULD BE EXCLUDED**

Because NIAs are irrelevant to disgorgement as a matter of law, *see* ECF No. 632 at 7, neither Prof. Kearl nor any other witness should be permitted, directly or indirectly, to rely on NIAs, testify about them, or refer to them at trial in connection with disgorgement. Fed. R. Evid. 401, 402; *see Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories.").

Prof. Kearl's $2.08-$3.51 billion and $0 disgorgement calculations are explicitly based on NIAs and should be excluded. Ex. 1 (Kearl Rpt.) ¶¶ 10, 11. Prof. Kearl's $2.08-$3.51 billion range relies, as Dr. Leonard's alternative bottom-up approach does, on the availability of some unidentified NIA which, had it been used, would have resulted in a less successful Android. *Id.* ¶¶ 11, 56. Prof. Kearl arrives at $2.08 billion after concluding that this less successful Android would have 13.55% less market share. *Id.* ¶¶ 72-73.[4] The $3.51 billion calculation proceeds much like Prof. Leonard's ▓▓▓▓ NIA calculation, which also relies on the flawed Kim model, except that Prof. Kearl's Scenario 3 corrects some of the shortcomings in Leonard's use of the model. *Id.* ¶ 70, Ex. 4a.1 (item 2c); *see id.* ¶¶ 61-70; ECF No. 1566-1 (Leonard 3/10/16 Corr. Rpt.) ¶¶ 89-94.[5] Prof. Kearl's "approximately $0" calculation similarly relies on an unidentified NIA which, had it been used, would have resulted in a counterfactual Android that is just as successful as the actual Android. Ex. 1 (Kearl Rpt.) ¶ 10. Each of these should be excluded.

Prof. Kearl's $7.7 billion calculation relies, in part, on NIAs that should be excluded. This figure calculates profit if Google had not built Android (or it failed) and Google partnered with Apple instead. *Id.* ¶¶ 9, 78, Ex. 5a; ECF No. 1566-1 (Leonard 3/10/16 Corr. Rpt.) ¶¶ 50-52 & Ex. 1a3. Prof. Kearl arrives at $7.7 billion by subtracting ▓▓▓▓ that Google supposedly would have earned *had it partnered with Apple* from Android's total current profits, ▓▓▓▓

---

[4] Prof. Kearl takes this 13.55% directly from Dr. Steven Shugan's conjoint analysis contained in Prof. Iain Cockburn's report, which was also excluded in the last trial. ECF No. 785 at 16.

[5] Prof. Kearl criticizes this model because it (1) focuses on only the top apps and (2) does not address the core of Oracle's allegations that the *quantity* of available apps affects mobile platform success. *Id.* ¶ 65; *see* Ex. 3 (Jaffe Supp. Rpt.) ¶¶ 28-33. Oracle addressed other serious problems with this model in its MIL #4 regarding Dr. Leonard, ECF No. 1554-4 at 6-7. These flaws are an additional and independent basis for exclusion of this calculation.

■[6] Ex. 1 (Kearl Rpt.) Ex. 5a. This ■ deduction is an NIA and should be excluded.[7]

### III.   PROF. KEARL'S OPINIONS ON TAC SHOULD BE EXCLUDED

Prof. Kearl asserts that a "clear understanding of Google's TAC payments is very important in calculating damages," and yet admits the record "lack[s] … clarity with regard to sources of TAC" and TAC data. Ex. 1 (Kearl Rpt.) ¶ 25. Google refused to produce relevant TAC data, and should not benefit from exploiting its own refusal to produce. *See* ECF No. 1554-4 (Oracle MIL #4) at 10.[8] Yet Prof. Kearl resolves doubts in favor of Google, even though doubts in apportionment should be resolved in Oracle's favor. *Frank Music II*, 886 F.2d at 1549. Prof. Kearl's deduction of ■ in TAC using assumptions favorable to Google should be excluded, increasing Prof. Kearl's first two calculations by ■ Ex. 1 (Kearl Rpt.) ¶¶ 28-33 & Ex. 1.

### CONCLUSION

Accordingly, the above-discussed portions of Prof. Kearl's opinions should be excluded.

Dated: March 30, 2016                    Respectfully submitted,

                                        Orrick, Herrington & Sutcliffe LLP

                                        By: */s/ Annette L. Hurst*
                                            Annette L. Hurst

                                        Counsel for ORACLE AMERICA, INC.

---

[6] For further discussion of the deduction, *see* ECF No. 1554-4 (Oracle MIL #4) at 7.

[7] Prof. Kearl's $2.08-$3.51 billion calculations also include an "iPhone offset," which should be excluded for the same reason. *Id.* Ex. 4c.2, 4g.

[8] Oracle filed a motion to compel on this topic, and Google was ordered to produce only limited, non-identifying information with the requirement that "Google shall not be permitted to exploit" Oracle's lack of information that Google otherwise refused to produce. ECF No. 1436 ¶ 6.