ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>GOOGLE INC.,<br><br>        Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S OPPOSITION TO GOOGLE'S MOTION IN LIMINE #2 RE: NEW ANDROID PRODUCTS**<br><br>Date: April 27, 2016 at 8:00 am<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .......................................................................................................................1

BACKGROUND .........................................................................................................................2

ARGUMENT ...............................................................................................................................3

I. PRECLUDING ORACLE FROM SHOWING THE FULL EXTENT OF SUBSTITUTION AND MARKET HARM PREJUDICES ORACLE AND RISKS REVERSIBLE ERROR REQUIRING A THIRD TRIAL .......................................................3

    A. The Fourth Factor Requires Consideration Of This Critical Evidence ...........................3

    B. Google's Superseding Use In Cars, TVs, And Wearables Prove Android Is Not Transformative Under Factor One ............................................................................5

II. ANDROID AUTO, TV, AND WEAR ARE RELEVANT TO MARKET HARM, EVEN IF ORACLE IS NOT ALLOWED TO SHOW THEY USE ONE OF THE ADMITTEDLY INFRINGING VERSIONS OF ANDROID .................................................5

III. AT A BARE MINIMUM, FACTOR FOUR CONSIDERS HARM IN POTENTIAL MARKETS THAT REQUIRES NO REFERENCE WHATSOEVER TO ANY ADDITIONAL INFRINGING PRODUCTS BY GOOGLE ..........................................................7

IV. THE RISK OF PREJUDICE DOES NOT SUBSTANTIALLY OUTWEIGH THE PROBATIVE VALUE OF ORACLE'S FULL MARKET HARM EVIDENCE ..................9

CONCLUSION ............................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*,
    329 F.3d 923 (7th Cir. 2003)..................................................................................................7

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.*,
    887 F.2d 399 (2d Cir. 1989)....................................................................................................7

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)..................................................................................................4, 5, 7, 8

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985)..............................................................................................6, 7

*Harper & Row Publ'rs, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985)..................................................................................................2, 3, 7, 8

*L.A. News Serv. v. KCAL-TV Channel 9*
    109 F.3d 1119 (9th Cir. 1997)................................................................................................8

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012)............................................................................................7, 8

*Oracle Am., Inc. v. Google Inc.*,
    750 F.3d (Fed. Cir. 2014).......................................................................................................5

*Sega Enters. Ltd. v. Accolade, Inc.*,
    997 F.2d 1510 (9th Cir. 1992)................................................................................................4

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*,
    447 F.3d 769, 774-75 (9th Cir. 2006) ....................................................................................8

**Statutes**

17 U.S.C. § 107(4) .........................................................................................................................3

**Other Authorities**

Fed. R. Evid. 403, Advisory Committee's notes ............................................................................9

*The History of Java Technology,* Oracle America, Inc., *available at*
    http://www.oracle.com/technetwork/java/javase/overview/javahistory-index-
    198355.html (last visited April 6, 2016) ................................................................................4

**INTRODUCTION**

Google's attempt to arbitrarily limit Oracle's evidence on fair use is fundamentally misguided and ignores the findings that have already been made in this case. Android is not a phone; it is not a tablet; it is not a TV; it is not a wearable. Android is an operating system. And as such, it has wide-ranging uses on multiple devices, which include (but are not limited to) phones. The law of fair use requires consideration of all of those "uses"—as Google admits, Mot. 1. Indeed, that is how Oracle pleaded its Supplemental Complaint. Oracle accused the major and minor releases of Android of infringement and, to support Oracle's rebuttal to Google's fair use defense, provided examples of how those Android versions are used.

This Court has already determined: "[A]ll agree and it has been established that the Android versions in play [Android 1.0 through Marshmallow] … used the copyrighted declaring code and the structure, sequence, and organization of the 37 Java API packages at issue and that this constituted infringement unless Google carries its burden before our jury as to the defense of fair use." ECF Nos. 1488 at 2, 1506 ¶ 5. With those Orders, this Court established and Google agrees that those Android versions—including KitKat and Lollipop—infringe unless Google's copying was a fair use. Google does not dispute, nor could it, that Android Auto, TV, and Wear use KitKat and Lollipop. Google's official Android developer websites instruct developers to use the software development kit for Android API Level 20 (KitKat) and API Level 21 (Lollipop) to develop apps for those devices. This is because those are the Android versions running on Auto, TV, and Wear.[1] *See* Ex. 6 (Zeidman Rpt.) ¶ 29; Ex. 11 (Schmidt 3d Rpt.) ¶ 52 n.30.[2] Accordingly, there is no need for a full-blown infringement trial to show copying on those devices.

Even setting that aside, the Court should deny Google's motion because the evidence is critical for analyzing fair use. Direct substitution of Android for the Java platform in some devices proves that Google's use of the 37 Java API packages is not transformative under factor one and demonstrates market harm under factor four. Factor four is a broad inquiry that takes into

---

[1] Oracle can prove KitKat and Lollipop are on Android Auto, TV, and Wear through a few minutes of technical expert testimony or through a short (3-5 page) summary-judgment motion. By contrast, Google has emphasized the more complicated proof for Brillo. 2/26/16 Tr. at 84:20-85:8. Oracle disagrees, but it will agree not to raise Brillo at this trial.

[2] "Ex. __" refers to exhibits to the Silverman declaration being filed concurrently with this brief.

- 1 -   ORACLE'S OPPOSITION TO GOOGLE'S MOTION
IN LIMINE #2 RE: NEW ANDROID PRODUCTS

1  account past, present, and future market harm. There is no authority in the statute to limit that
2  harm or draw the line arbitrarily at certain kinds of harm. The Supreme Court instructs that the
3  fourth factor "must take account not only of harm to the original but also of harm to the market
4  for derivative works." *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 568 (1985).
5  The Java SE platform and its derivatives have been in a variety of markets for years. They were
6  created, in part, for TV set-top boxes, and have been in TVs since 2006, cars since 2000, and
7  wearables since 1998. At the very least, these are potential markets that the statute requires be
8  examined for harm. If Oracle is precluded from presenting the full extent of its market harm, the
9  jury may wrongly conclude that the market harm is merely a fraction of what it is in actuality. On
10 this most important factor, the prejudice to Oracle cannot be overstated.

## BACKGROUND

Upon remand, Oracle filed an unopposed motion to supplement its complaint to add allegations of infringement by new "versions of Android" as well as new products that "Google is also targeting Android toward …, including wearables, televisions, automobiles, and household appliances." ECF No. 1287 at 3. The Court granted Oracle's motion, ECF No. 1289, and accepted Oracle's Supplemental Complaint, which alleges infringement by new "versions of Android," and pleads that those new versions are *used in* "mobile phones and tablets" and "non-handheld devices," such as "Android Wear," "Android TV," Android Auto," and "Other Android devices," ECF No. 1292 ¶¶ 1, 5-9. Google did not move to dismiss or answer.

During discovery, Oracle presented the expert report of Prof. Jaffe. Prof. Jaffe explained that, prior to Android, "Java was the pre-eminent software application platform for seamless interaction between devices … and applications." Jaffe Op. Rpt. ¶ 19.[3] Prof. Jaffe documented, in detail, the markets where the Java SE platform and its derivatives were already competing or were planning to compete. *Id.* ¶ 319. Those established and future markets include: mobile phones; other handheld mobile devices like tablets and e-readers; wearables; automobiles; voice over internet protocol devices; home entertainment, such as Blu-Ray players, televisions, set-top boxes, and gaming applications and consoles; GPS systems; vending machines; printers; house-

---

[3] "Jaffe Op. Rpt" refers to Jaffe Corrected Opening Report, March 9, 2016, ECF Nos. 1560-7, -8.

hold appliances; cameras; and payment terminals and other point-of-sale systems. *See id.* ¶¶ 318-430. Prof. Jaffe detailed the "significant, ongoing and future harm" that Android has, is, and will continue to inflict on the actual and potential markets for "the copyrighted works," *id.* ¶ 321. He also documented numerous examples of substitution of Android for the Java platform in certain markets, which he found significant to factor one.

Google moved to strike portions of Oracle's technical expert reports (not Prof. Jaffe's) regarding Google's infringement of new *Oracle* works (Java SE 6.0 and 7.0) not identified in the Supplemental Complaint. The Court issued an order specifying what *Java* versions Oracle could allege to be infringed and what *Android* versions it could allege to be infringing. The Court said the trial would not include infringement by Android Auto, TV, or Wear. ECF No. 1479 (Order) at 2. Though the Court excluded Java SE 6 and 7 for infringement purposes, it indicated that Java 6 and 7 may be relevant to "other issues" such as fair use. *Id.* Android Auto, TV, and Wear similarly are highly relevant to fair use, even if excluded for other infringement purposes.

**ARGUMENT**

Google raises two arguments for excluding all evidence regarding Android Auto, TV and Wear. Google's primary argument (that those uses have been removed from the case and cannot be raised at trial) is discussed at length below and fails under the facts and pleadings in this case as well as statutory, Supreme Court, and Ninth Circuit authority. Google's second argument (that Oracle can present market harm only to "the copyrighted works: Java SE 1.4 and 5.0," Mot. 2), is argued "more fully" by Google in its Motion In Limine #4 and fully addressed in Oracle's response thereto. It suffices to say here: The Supreme Court holds that factor four must consider "harm to the original" and its "derivative works," *Harper & Row*, 471 U.S. at 568; thus Oracle's market harm evidence involves harm to Java SE 1.4 and 5.0 and to its derivatives, like Java ME.

I. **PRECLUDING ORACLE FROM SHOWING THE FULL EXTENT OF SUBSTITUTION AND MARKET HARM PREJUDICES ORACLE AND RISKS REVERSIBLE ERROR REQUIRING A THIRD TRIAL**

   A. **The Fourth Factor Requires Consideration Of This Critical Evidence**

The fourth fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The Supreme Court explains that this factor

- 3 -        ORACLE'S OPPOSITION TO GOOGLE'S MOTION
IN LIMINE #2 RE: NEW ANDROID PRODUCTS

1  is "undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.
2  Indeed, fair use "is limited to copying by others which does not materially impair the mar-
3  ketability of the work which is copied." *Id.* 566-67.  The Ninth Circuit has stated that if the de-
4  fendant's "copying resulted" in "usurping the market, … all other considerations might be
5  irrelevant." *Sega Enters. Ltd. v. Accolade, Inc.*, 997 F.2d 1510, 1523 (9th Cir. 1992).

6  The fourth factor considers multiple elements of harm to the work and its derivatives:
7  harm in present markets, harm in potential markets, harm to the value of the work, and "whether
8  unrestricted and widespread conduct of the sort engaged in by the defendant would result in a
9  substantially adverse impact on the potential market for the original." *Campbell v. Acuff-Rose*
10 *Music, Inc.*, 510 U.S. 569, 590 (1994).  The evidence Google seeks to exclude is critical; it shows
11 harm to current and potential markets for and value of Java SE 1.4 and 5.0 and their derivatives.

12 Oracle will present evidence of the actual and potential markets for its copyrighted works
13 to show market harm, as permitted under the Copyright Act and Supreme Court case law.  Those
14 markets are wide-ranging inasmuch as the Java platform serves as a software platform for interac-
15 tion between devices and applications.  While phones are an important market, other devices have
16 used the Java platform for just as long.  It was first demonstrated in the 1990s on a handheld con-
17 troller for TVs,[4] and a few years later in a wearable Java Ring, Jaffe Op. Rpt. ¶ 367.  Java was
18 used in numerous industries and devices, such as phones, e-readers, wearables, cars, set-top box-
19 es, televisions, and a variety of others.  *Id.* ¶¶ 301-02, 320-430.  These define the "markets for the
20 copyrighted work" as relevant for the fourth factor.

21 Google does not dispute that Oracle may present evidence about harm to certain markets,
22 such as phones and e-readers, but Google draws an arbitrary line that precludes Oracle from pre-
23 senting harm to the Java platform in other markets such as televisions, automobiles, and wear-
24 ables.  Google cites no case authorizing such an arbitrary cut off of the relevant market harm, and
25 Oracle is not aware of any.  Permitting Oracle to present only a subset of its market harm evi-
26 dence will lead the jury to underestimate the market harm to the Java platform and possibly return
27 an erroneous verdict based on an incomplete record.  The harm to these other markets is just as

---

[4] http://www.oracle.com/technetwork/java/javase/overview/javahistory-index-198355.html

- 4 -   ORACLE'S OPPOSITION TO GOOGLE'S MOTION
IN LIMINE #2 RE: NEW ANDROID PRODUCTS

1  real as to phones, and Oracle must be able to present its entire harm story on this critical factor.

2  Aware that no authority supports its arbitrary line drawing, Google argues instead that Or-
3  acle's harm evidence will require proof of infringement and thus complicate the trial and unduly
4  consume trial time. Mot. at 2. Google's focus is misplaced. Oracle would merely have to prove
5  that Android Auto, TV, and Wear use Android KitKat or Lollipop because the Court has already
6  determined those versions of Android infringe unless Google proves fair use. ECF Nos. 1488 at
7  2, 1506 ¶ 5. Despite extensive discovery, including depositions where witnesses were asked
8  about Android Auto, TV, and Wear, Google has not disputed, and its own instructions to Android
9  developers prove, that Android Auto, TV, and Wear use Android KitKat and Lollipop, and Ora-
10 cle's technical experts have confirmed it in their reports. *Supra* at 1. Oracle can present the nec-
11 essary evidence in a matter of moments or, if permitted, on summary judgment.

### B. Google's Superseding Use In Cars, TVs, And Wearables Prove Android Is Not Transformative Under Factor One

This evidence is also essential on factor one, which considers, among other things, wheth-er the copying was transformative. A "supersed[ing]" use is not transformative. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d at 1339, 1374 (Fed. Cir. 2014) (quoting *Campbell*, 510 U.S. at 579). Oracle should be permitted to present evidence that the Java platform, including the 37 Java API packages, was already in cars, TVs, and wearables and that Android Auto, TV, and Wear super-seded (i.e., replaced) the Java platform in those markets. Because the Java platform and its deriv-atives was in these markets before Android, Google's use "is for the same intrinsic purpose," which "seriously weakens [its] claimed fair use." *Id.* at 1375 (quotation marks omitted).

### II. ANDROID AUTO, TV, AND WEAR ARE RELEVANT TO MARKET HARM, EVEN IF ORACLE IS NOT ALLOWED TO SHOW THEY USE ONE OF THE ADMITTEDLY INFRINGING VERSIONS OF ANDROID

Even assuming, *arguendo*, that Oracle is not permitted to prove that Android Auto, TV, and Wear use one of the versions of Android that the Court has already established infringes but for fair use, Android Auto, TV, and Wear are still relevant to market harm because they illustrate the overall Android ecosystem that has adversely impacted the market for the Java copyrighted works at issue and their derivatives.

As Prof. Jaffe explains: Android functions as an ecosystem; its products build upon each other, creating a larger and larger network of consumer products. Jaffe Op. Rpt. ¶¶ 11-12, 24, 27, 44-45, 155-58; *see generally id.* ¶¶ 33-52 (discussing network and platform effects). That was Google's goal with Android from the beginning. As Google's "Android Strategy" documents reveal, the first step was building an ecosystem through a "Leading SW [Software] Platform," followed by "Multiple OEMs/Devices," and eventually "New Monetizable Services." TX 1061 (*cited by* Jaffe Op. Rpt. ¶¶ 155-58). The purpose of the Android platform was to "create a positive feedback loop" (what Google calls a "Value Circle"), Jaffe Op. Rpt. ¶ 157, with Android at the very "center of all your devices," *id.* ¶ 256 (quoting (GOOG-00251037, -1039)) (Google presentation titled: "Android: the center of all your devices") (Google's strategy: "We want a user's Android device to be the center of their digital world."). As Google's 30(b)(6) witness testified: "[T]he purpose of Android TV," for example, is "to expand the Android ecosystem to additional form factors that are relevant to Android." Ex. 10 (Kolotouros Depo.) 68:18-25. Expanding beyond "phones and tables," Google's representative explained, "is important" for "Android to be successful." *Id.* 75:4-14; *accord id.* 181:3-18 (failure with "Android Wear … might drive[] [users] away from Android as an ecosystem as a whole and not want to consider Android for a smartphone or tablet or TV purchase").

Critically, "[t]he mobile device serves as the key gateway" to the rest of the Android devices. Jaffe Op. Rpt. ¶ 257.[5] So, for example, an Android phone or tablet interfaces with an Android watch, so the two devices can share notifications and other data. Android Auto has an Android phone or tablet interface that links the user to Android Auto. Android TV is linked to an Android phone or tablet so the user can control the television either at home or on the road. Once a consumer buys an Android phone or tablet, the user is that much more likely to buy Android TV, Auto, or Wear. Accordingly, penetration into these markets is an effect of Google's success with Android *phones and tablets*. Thus, the harm to the Java copyrighted works and their deriva-

---

[5] *Accord id.* ¶¶ 254-59; *see also* Ex. 10 (Kolotouros Depo.) 227:17-228:10 ("I believe [Google's prevailing goal] would be to provide the most robust possible ecosystem and experience for the smartphone or mobile phone industry and associated or extended form factors so that OEM participants and ODM participants and SoCs and carriers and users can all thrive and succeed on top of or in connection with the Android ecosystem.").

- 6 - ORACLE'S OPPOSITION TO GOOGLE'S MOTION
IN LIMINE #2 RE: NEW ANDROID PRODUCTS

tives in these additional markets is a consequence of Google's infringement, regardless of whether Android Auto, TV, or Wear infringes.

Contrary to the out-of-circuit authorities Google cites, Mot. at 2, this Circuit has held that the Copyright Act encompasses this type of secondary harm. In *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, the defendants infringed by using the plaintiff's copyrighted music in their show. 772 F.2d 505, 510 (9th Cir. 1985). Even after the infringing material was removed, the Ninth Circuit held that defendants still owed the plaintiff a portion of the profits because the infringement was "important in the first instance" by "contribut[ing] to establishing the show's initial popularity." *Id.* at 518. Thus, the court considered harm that extended beyond the initial infringing work. *See also Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 933 (7th Cir. 2003) (Posner, J.) (calculating defendant's profits and thus harm attributable to the infringement "will sometimes require tracing those profits into another [non-infringing] product").

Similarly, a copyright plaintiff's recovery may include the value of "enhanced good will or market recognition" to the defendant and the defendant's infringing as well as non-infringing products. *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 407 (2d Cir. 1989). Android's foray into phones and tablets enhanced Google's image and goodwill in new markets in which it was not a player, such as embedded devices. Oracle should be permitted to trace that good will from Google's infringement in Android on phones and tablets to Google's other products and assess the harm to Java in the markets for those other products.

### III. AT A BARE MINIMUM, FACTOR FOUR CONSIDERS HARM IN POTENTIAL MARKETS THAT REQUIRES NO REFERENCE WHATSOEVER TO ANY ADDITIONAL INFRINGING PRODUCTS BY GOOGLE

Factor four "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but *also whether unrestricted and widespread conduct of the sort engaged in by the defendant* would *result in a substantially adverse impact on the potential market* for the original [work]." *Campbell*, 510 U.S. at 590 (emphasis added, alteration and quotation marks omitted). This alone is sufficient "to negate fair use." *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1182 (9th Cir. 2012) (quoting *Harper & Row*, 471 U.S. at 568). Oracle can address both of these categories of harm without reference to Google's auto, TV, and

wear products, if the Court insists, provided that Oracle is permitted to present evidence of its own markets and the *potential* for harm in those markets.[6]

To show harm to potential markets, Oracle would present evidence of what markets the Java SE platform and its derivatives are already in or may enter, and present evidence about the harm that would befall those products if copying akin to Google's was permitted in those markets. The Ninth Circuit has engaged in just such analysis. In *Wall Data Inc. v. L.A. County Sheriff's Department*, the defendant exceeded the terms of its software license by using "hard drive imaging" to copy the software onto nearly twice as many computers as covered by the license. 447 F.3d 769, 774-75 (9th Cir. 2006). In evaluating harm to the potential market, the Ninth Circuit looked beyond the defendant's act and held that "widespread use of hard drive imaging in excess of one's license could seriously impact the market for Wall Data's product." *Id.* at 781-82. In *L.A. News Service v. KCAL-TV Channel 9*, though the case involved only a single act of using copyrighted footage without authorization, the Ninth Circuit again found potential market harm beyond the single act because "[w]ere this to happen more broadly, it no doubt would adversely affect LAN's creative incentives." 108 F.3d 1119, 1123 (9th Cir. 1997). Finally, in *Monge*, involving a tabloid's unauthorized publication of the celebrity-plaintiffs' wedding photos, the Ninth Circuit found market harm, in part, because if conduct similar to defendants became "widespread," it would "undermine the ability of celebrities to market images of themselves" and "create incentives to pirate intellectual property." 688 F.3d at 1182.

The analysis of harm to the potential market in these cases focuses on "unrestricted and widespread conduct *of the sort engaged in by the defendant*," not necessarily the effect of defendant's particular infringement on the copyrighted work. *Campbell*, 510 U.S. at 590 (emphasis added). In *Harper & Row*, for example, while the defendant's copying infringed Harper & Row's copyright in President Ford's memoir, the Supreme Court considered the "broader perspective" where publishing "extensive prepublication quotations from an unreleased manuscript without the

---

[6] Of course, Oracle notes the oddity that would come with this approach. Instead of offering the actual and tangible evidence that it has of harm, in this scenario Oracle would be offering evidence of likely harm in these potential markets. Such evidence is certainly permitted, and is often all that is available, but in this case where the passage of time has offered actual evidence, it seems an odd approach to instead resort only to the hypothetical.

- 8 -
ORACLE'S OPPOSITION TO GOOGLE'S MOTION
IN LIMINE #2 RE: NEW ANDROID PRODUCTS

copyright owner's consent" is permitted writ large, and held that such a world would be "a major inroad on copyright that must be prevented." 471 U.S. at 569 (quotation marks omitted). Following the Supreme Court's lead, Oracle can show the presence of the Java SE platform (and its derivatives) in numerous markets, trends in those markets, and the effects on those markets of widespread competitors engaging in copying similar to Google's.[7]

Though Oracle must be permitted to present evidence about the actual and potential markets for the Java platform and its derivatives and the consequence of widespread infringement on those markets, even apart from any reference to Google, this should not be mistaken for Oracle's agreement that it need not present evidence of the harm from Google's competition in these markets. This latter evidence is substantially more probative and is critical to Oracle's case on market substitution (factor one) and market harm (factor four). Its exclusion is hugely prejudicial.

## IV.   THE RISK OF PREJUDICE DOES NOT SUBSTANTIALLY OUTWEIGH THE PROBATIVE VALUE OF ORACLE'S FULL MARKET HARM EVIDENCE

Google's risk of prejudice argument is premised on two falsities. First, Google contends that the evidence of Google's harm to the actual and potential markets for the copyrighted works is of "minimal relevance," Mot. 2, even though the Supreme Court and the Ninth Circuit call it the most important factor. Moreover, as explained above, Oracle's presentation of its full case on the first and fourth factors will not unduly consume substantial (or even much) trial time.

Second, Google claims that the jury may "believe that these products are relevant to Oracle's damages." Mot. 2. But, Google ignores Oracle's damages expert's explicit statement (even though Google quotes it) that he did not calculate damages to include harm from Android implementations such as "wearables, automotive, [and] televisions." Mot. 3 (quoting ECF No. 1560-12 (Malack. Op. Rpt.) ¶ 218). There is no risk of jury confusion, and any possible risk can be cured by "a limiting instruction" on damages. Fed. R. Evid. 403 Advisory Committee's notes.

## CONCLUSION

For the foregoing reasons, Google's motion should be denied in its entirety.

---

[7] Google's actual competition in those markets with infringing products would also rebut any argument Google made that such potential market harm is not realistic, if Google opened the door.

Dated: April 6, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Lisa T. Simpson*
    Lisa T. Simpson

Counsel for ORACLE AMERICA, INC.