# Exhibit 37

# Filed Under Seal

HIGHLY CONFIDENTIAL

Page 1

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3            SAN FRANCISCO DIVISION

4    ORACLE AMERICA, INC.,

5        Plaintiff,

6          vs.          Case No. 3:10-cv-03561-WHA

7    GOOGLE, INC.,

8        Defendant.

    _____

9

10

11

12

13            *HIGHLY CONFIDENTIAL*

14       PURSUANT TO THE PROTECTIVE ORDER

15    VIDEO DEPOSITION OF JAMES R. KEARL, Ph.D.

16           San Francisco, California

17           Wednesday, March 23, 2016

18                Volume I

19

20

21

22    REPORTED BY:

23    REBECCA L. ROMANO, RPR, CSR No. 12546

24

25    Job No. CS2276036

HIGHLY CONFIDENTIAL

Page 205

1   unit royalty in 2008 or 2009 -- I can't remember
2   which is year -- of .0 -- .08 cents per handset.
3        So I think we derive this -- I don't
4   think it's an explicit royalty in the license, but
5   I think we derived it by backing out what -- what
6   the royalty had to have been, given the number of
7   units sold and the revenues that they got.
8        Q.   Do you -- do you know what percentage of
9   any price erosion in Java that may -- that has
10  occurred since 2009 is due to the iPhone as opposed
11  to the Android?
12       A.   No.
13       Q.   But would you agree that at least some
14  portion of that is likely due to the iPhone?
15       A.   Well, I -- I wouldn't agree that -- to an
16  opinion that it's likely.  I -- I don't know
17  whether it's likely or not.  I mean, is it
18  possible?  Sure.
19       I suppose this goes to the issue of which
20  is the closest substitute.  Something that looks
21  like more a phone with Java ME on it, which is
22  Android, or Apple, which looks very different.
23  But, sure, there could have been some effect.
24       MR. RAGLAND:  That is all I have.
25       MS. HURST:  Okay.  I apologize.  I have

HIGHLY CONFIDENTIAL

Page 206

1   one quick follow-up.
2        FURTHER EXAMINATION
3   BY MS. HURST:
4        Q.   You've talked about an output produced by
5   complements.
6        Does that sometime involve the
7   possibility that two inputs will create synergies
8   that is more than the sum of their parts?
9        A.   Sure.
10       Q.   And so, for example, if you have input J
11  and input A, and the resulting product is J plus A,
12  plus synergies, then by combining the two inputs
13  you've created more value --
14       MR. RAGLAND:  Objection to form.
15       Q.   (By Ms. Hurst)  -- is that right?
16       A.   Correct.
17       Q.   Is it true that the use of non-infringing
18  alternatives allows the infringer to retain the
19  value of the synergies, under those circumstances?
20       MR. RAGLAND:  Objection to form.
21       THE DEPONENT:  That's a -- an interesting
22  question.
23       The -- the fundamental problem is that if
24  you have synergies, they're attributed to the
25  jointness and, therefore, you can't parcel out the

HIGHLY CONFIDENTIAL

Page 207

1   contribution of any single thing to the synergy, at
2   least not easily.  The -- and to the degree that a
3   counterfactual -- claim to do that, then it
4   would -- you know, then -- then it would be
5   claiming too much.
6        It's -- it's a hard question because it's
7   unclear what -- what the -- the counterfactual
8   implies about -- about the synergy.
9        I don't have anything else to say from
10  that.
11       MS. HURST:  Let me ask one follow-up.
12       Q.   (By Ms. Hurst)  Is there anything about
13  Dr. Leonard's use of the Kim model that attempts to
14  account for and allocate synergies as between the
15  input Java and the rest of the -- the Android
16  platform?
17       MR. RAGLAND:  Objection to form.
18       THE DEPONENT:  No.
19       MS. HURST:  No further questions.
20       MR. COOPER:  Okay.  For clarity, I take
21  it the deposition is over?
22       MS. HURST:  From my perspective, you bet.
23       MR. COOPER:  Okay.
24       MR. RAGLAND:  That is correct.
25       MR. COOPER:  Okay.  Thank you.

HIGHLY CONFIDENTIAL

Page 208

1        THE VIDEOGRAPHER:  This concludes the
2   testimony given by Dr. James Kearl.  The three
3   original discs will be retained by Veritext.  We're
4   off the record at 3:23 p.m.
5        (TIME NOTED:  3:23 p.m.)
6
7
8
9             ---o0o---
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25