1  ORRICK, HERRINGTON & SUTCLIFFE LLP
   KAREN G. JOHNSON-MCKEWAN (SBN 121570)
2  kjohnson-mckewan@orrick.com
   ANNETTE L. HURST (SBN 148738)
3  ahurst@orrick.com
   GABRIEL M. RAMSEY (SBN 209218)
4  gramsey@orrick.com
   405 Howard Street, San Francisco, CA 94105
5  Tel: 1.415.773.5700 / Fax: 1.415.773.5759
   PETER A. BICKS (*pro hac vice*)
6  pbicks@orrick.com
   LISA T. SIMPSON (*pro hac vice*)
7  lsimpson@orrick.com
   51 West 52nd Street, New York, NY 10019
8  Tel: 1.212.506.5000 / Fax: 1.212.506.5151

9  BOIES, SCHILLER & FLEXNER LLP
   DAVID BOIES (*pro hac vice*)
10 dboies@bsfllp.com
   333 Main Street, Armonk, NY 10504
11 Tel: 1.914.749.8200 / Fax: 1.914.749.8300
   STEVEN C. HOLTZMAN (SBN 144177)
12 sholtzman@bsfllp.com
   1999 Harrison St., Ste. 900, Oakland, CA 94612
13 Tel: 1.510.874.1000 / Fax: 1.510.874.1460

14 ORACLE CORPORATION
   DORIAN DALEY (SBN 129049)
15 dorian.daley@oracle.com
   DEBORAH K. MILLER (SBN 95527)
16 deborah.miller@oracle.com
   MATTHEW M. SARBORARIA (SBN 211600)
17 matthew.sarboraria@oracle.com
   RUCHIKA AGRAWAL (SBN 246058)
18 ruchika.agrawal@oracle.com
   500 Oracle Parkway,
19 Redwood City, CA 94065
   Tel: 650.506.5200 / Fax: 650.506.7117

20 *Attorneys for Plaintiff*
   ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., | Case No. CV 10-03561 WHA |
| Plaintiff, | **ORACLE'S RESPONSE TO GOOGLE'S MOTION TO STRIKE TESTIMONY OF JAMES R. KEARL** |
| v. | |
| GOOGLE INC., | Date: April 27, 2016 at 8:00 am |
| Defendant. | Dept.: Courtroom 8, 19th Floor<br>Judge: Honorable William H. Alsup |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................................1
ARGUMENT........................................................................................................................................2
    I.    BOTH SIDES AGREE PROF. KEARL'S THIRD WAY SHOULD BE EXCLUDED. ........................................................................................................2
    II.   GOOGLE'S CHERRY-PICKING IS IMPROPER AND MISLEADING. ........................5
CONCLUSION....................................................................................................................................5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Frank Music Corp. v. MGM, Inc.*,
    772 F.2d 505 (9th Cir. 1985) ............................................................................................... 4

**INTRODUCTION**

Prof. Kearl offers three disgorgement numbers. ECF No. 1584-2 (Kearl Rpt.) ¶¶ 9-11. The top number—$7.7 billion (or $9.5 billion if the TAC accounting dispute is resolved in Oracle's favor)—is in the range of Oracle's number, confirming the reliability of Oracle's estimate (albeit on a different theory). The bottom number—$0—is close to Google's number, but Prof. Kearl simultaneously rejects it as implausible in light of Google's revealed preferences. Prof. Kearl's third number—in the middle—is a $2.08-$3.51 billion range based on opinions this Court previously excluded as unreliable or legally improper, from a witness whom no one expects to testify (Dr. Shugan), and which both sides seek now to exclude. For purposes of discussion, we call these the "Oracle Number," "Google Number," and "Third Way," respectively.

Oracle moved to exclude the Google Number and the Third Way as entirely dependent upon non-infringing alternatives ("NIAs") and the Oracle number insofar as it relies on NIAs. ECF 1582-4 (Kearl Daubert) at 4-5. Oracle's motion was based on the principle, previously adopted by this Court, that consideration of NIAs in disgorgement of profits analysis is improper. Google, in contrast, moves to exclude the numbers it doesn't like on "insufficient evidence" grounds—the Oracle Number and the Third Way. This cherry-picking is only the beginning: Google also seeks to selectively *seal* Prof. Kearl's Oracle Number and the Third Way so that the public hears only about the Google Number. *See* ECF 1596 at 2 (seeking to seal ¶ 9 ($7.7 billion) and ¶ 11 ($2.08-$3.51 billion) of Prof. Kearl's report but not ¶ 10 ($0)). This brazen effort to manipulate the jury pool in the run-up to trial is especially ill-considered when Prof. Kearl expressly rejected the OpenJDK theory on which Google's zero number is based.

Despite Prof. Kearl's best efforts to come up with a Third Way, the spirit of which Oracle appreciates, the method cannot survive scrutiny and both sides agree that the Third Way must go.[1] Without it, Prof. Kearl adds nothing for the trier of fact. In the Follow-Up to the Tentative Trial Plan, the Court indicated that whether Prof. Kearl will testify about damages is a "decision [that] will be made closer to the actual event." ECF 1506 ¶ 7. Respectfully, that time is now in light of

---

[1] The Third Way is also entirely unworkable insofar as it relies upon the opinions of Dr. Shugan, Oracle's former expert witness whom it has no intention of calling at this trial.

the parties' motions.  Prof. Kearl's Oracle Number is consistent with Oracle's $8.8 billion, and is in fact *much* larger than Oracle's $8.8 billion if the Court excludes his improper use of NIAs.[2]  Presumably Rule 706 experts do not often offer a number larger than the Plaintiff intends to offer.  Prof. Kearl's Google Number—which he openly rejects in his report and deposition as based on theories inconsistent with the evidence—is otherwise consistent with Google's lowest estimate.  Without the insupportable Third Way, Prof. Kearl's testimony adds nothing to the choices that the parties will present, especially when his analysis is based upon a methodology that is inconsistent with the law of the Ninth Circuit and this case.

## ARGUMENT

### I.  BOTH SIDES AGREE PROF. KEARL'S THIRD WAY SHOULD BE EXCLUDED.

Both sides agree that Prof. Kearl's Third Way should not be offered to the jury insofar as it is based on damages methodologies that this Court already excluded.  *See* Mot. at 7-10.  Indeed, Oracle consistently takes this position about the Court's prior orders.  It is particularly important that the Court adhere to its prior orders on damages.  Oracle, at least, planned its entire damages presentation around the assumption that this Court's prior orders meant what they said.  Oracle retained experts and pursued new methodologies to ensure compliance with existing court orders and case law.  As the Court previously said it will not give "do-overs" on damages this time around, it would be particularly prejudicial were the Court to reverse itself on these prior orders.

Google, on the other hand, cherry-picks the prior orders it seeks to enforce.  While seeking to exclude Prof. Kearl's Third Way on the ground that it impermissibly relies upon Dr. Shugan's conjoint analysis, Google simultaneously bases most of its disgorgement opinions on "the existence of non-infringing alternatives"—*also* a damages methodology the Court excluded.  ECF 632 at 7; *see generally* ECF 1554-4 (Leonard Daubert) at 1-4; ECF 1582-4 (Kearl Daubert) at 4-5.  Google offers no explanation why what is good for the goose is not good for the gander.

Google also seeks to exclude the upper end of the Third Way because Prof. Kearl's adjustments of Dr. Leonard's (flawed) Kim model regressions are (1) "implausible and

---

[2] Prof. Kearl's $7.7 billion number becomes $14.2 billion when NIAs are removed, and $16 billion when TAC is also properly deducted.  See ECF 1582-4 (Kearl Daubert) at 4-5 ($7.7 + $6.5 partner with Apple NIA + $1.8 TAC).

unsupported" as they rely upon a causal "chain of events" that never "actually occurred" and (2) contradicted by a few academic studies. Mot. at 10-12. Pause a moment and contemplate that objection: Google, who bases its entire disgorgement estimate on NIAs—which are by definition events in an "alternative world that didn't happen," Ex. 1 (Leonard Depo.) 43:18-44:7—is objecting to Prof. Kearl's Third Way on exactly the same basis.[3] Though Oracle appreciates the irony, the jury will be unfairly confused trying to follow such contradictions.

While Oracle maintains its objection to the use of NIAs and the Kim model (*see* ECF 1554-4 (Leonard Daubert) at 1-4; ECF 1582-4 (Kearl Daubert) at 4-5), it nonetheless notes that were they admissible, then Prof. Kearl's adjustments to them would not only be proper but necessary. The record is replete with evidence of causation. *See* ECF 1613-4 (Opp. to Malack. Daubert) at 4-7, 11-15 (citing evidence that the infringement was intended to and did increase Google's device, app, digital content, and ad revenues); ECF 1613-7 (collecting evidence of causation).[4] The studies Google cites do not even address the evidence and theory on which Prof. Kearl's $3.51 billion calculation is based. Ex. 2 (Kearl Depo.) at 70:24-72:7 (Prof. Kearl explaining why he finds the Bresnahan and Kim papers inapposite); ECF No. 1564-2 (Jaffe 2nd Rpt.) ¶¶ 70-95 (describing why these same papers are inapposite).[5] Moreover, it is extremely poor form for Google to attack Prof. Kearl's adjustments of Dr. Leonard's Kim model estimates when more fundamental adjustments were impossible *because Dr. Leonard* chose to rely upon a model for which he failed to obtain and make available the underlying data. *See* Ex. 2 (Kearl

---

[3] Google also distorts the applicable legal standards in its motion, especially the interpretation of the causation and apportionment standards. *See* Mot. at 3-5. In addition, Google incorrectly characterizes the revenues at issue in this case as "indirect." *Id.* Oracle addressed these issues in its opposition to Google's *Daubert* motion against Mr. Malackowski. ECF 1613-4 at 7-11.

[4] Moreover, this Court already concluded that the hardware, apps, and advertising revenues in the gross amounts are attributable to Google's infringement. ECF 685 at 2, 9, 13 (refusing to disturb Dr. Cockburn's inclusion of hardware, applications, and advertising revenue streams in his disgorgement analysis during the first phase of the case).

[5] *See also* Ex. 2 (Kearl Depo.) 61:7-62:11 (discussing two reasons why the *ex-post* platform-popularity-drives-apps proposition is flawed and is not "helpful in analyzing that contention": (1) which apps are the best is unknowable *ex ante*; hence successful platforms need lots of apps so that the best apps can rise to the top; (2) platforms that cannot accommodate consumers' heterogeneous preferences (i.e. avalanche apps for backcountry skiers) through offering many apps will not be as successful); *id.* 79:8-81:14 (Prof. Kearl citing indirect market evidence that the number of available apps both *ex ante* and *ex post* is important).

Depo.) 105:4-13 ("It's literally impossible to test whether the parameters that come out of the Kim model that Leonard relied upon are sensitive to anything.  We don't know the data.  We didn't even know all of the Kim model parameters.  Surprisingly, one of the key parameters he has to get by email from -- from Kim.  So there's a -- a bit of a disadvantage here.").

Google's assertion here is absurd: that the quantity of apps was irrelevant to whether a new mobile platform was successful in *2007-2009* based on statements in several academic papers focused on a *different post-2010 question* in the face of mountains of contemporaneous Google evidence to the contrary.  Mot. at 10.  Even if this assertion were correct, it would still be irrelevant to disgorgement damages under Ninth Circuit precedent.  The defendant in *Frank Music Corp. v. MGM, Inc.* attempted to make a similar argument, only with *actual evidence* that the infringing work was just as successful when the infringing elements were removed two years after introduction.  772 F.2d 505, 510 (9th Cir. 1985).

In *Frank*, the MGM Grand Hotel illegally performed scenes from plaintiff's musical "Kismet" in a theatrical show.  *Id.*  Two years later, after defendants removed the infringing scenes, the show "suffered no decline in attendance and the hotel received no complaints."  *Id.* at 518.  The trial court permitted recovery of multiple revenue streams anyway, based upon a causal nexus showing that the MGM used such shows to enhance its hotel and gaming revenues.  *Id.* at 517.[6]  The Ninth Circuit affirmed this recovery, rejecting defendants' argument that the show was just as successful when the infringing scenes were removed:  "Just because one element could be omitted and the show goes on does not prove that the element was not important in the first instance and did not contribute to establishing the show's initial popularity."  *Id.* at 518.  What Google's assertion does not address is the thrust of this *Frank* holding:  Just because Google believes the 37 API packages could be removed *now* or could have been removed in *2010* without consequence does not mean they were "not important in the first instance and did not contribute to establishing [Android's] initial popularity."

---

[6] This causal nexus showing is similar to the evidence in this case:  For example, Google executives have admitted that they pursued Android to earn ad and other revenues.  Ex. 3 (Eric Schmidt Depo.) 11:9-15.  In fact, the causal connection here is far stronger, because the revenues Oracle seeks to recover were realized *on the infringing work* (Android), while the gaming and hotel revenues in *Frank* were earned separately from the infringing work (the show).

- 4 -　　ORACLE'S RESPONSE TO GOOGLE'S MOTION
TO STRIKE TESTIMONY OF JAMES R. KEARL

1  **II.   GOOGLE'S CHERRY-PICKING IS IMPROPER AND MISLEADING.**

Google cherry-picking the numbers it challenges, paired with its unprincipled redaction of Prof. Kearl's non-zero numbers but not Google's Number ($0), is improper.  Google already filed Oracle's $8.8 billion number on the docket.  (ECF No. 1571-8 (Ex. G to the Bayley Decl.) at 7).  Redacting Prof. Kearl's numbers in the same range—which are based on the same information that underlies Oracle's $8.8 billion—can only be an attempt to create a false public impression that Prof. Kearl agrees with Google's position.  Remarkably, Google's misleadingly redacted briefs on damages also seem to keep making it into the press.

Such impermissible efforts to influence the jury pool are particularly inappropriate when Prof. Kearl repeatedly criticized the *basis* for Google's near-zero damages number as "not credible."  Prof. Kearl expressly rejected Dr. Leonard's theory that Google should owe in disgorgement damages no more than the cost of its cheapest alternative to the infringed 37 API packages, a purported $85,000 to implement OpenJDK.  *See, e.g.*, Ex. 2 (Kearl Depo.) at 57:16-22 ("Dr. Leonard comes up with this very low estimate in the JDK case of $85,000.  And my observation was simply, if Google could have, at any point in the last nine years, resolved this issue by spending $100,000 [sic], it probably would have done so.  And that it didn't do so suggests that this is probably not a credible estimate."); Kearl Rpt. ¶ 45 (finding Dr. Leonard's OpenJDK alternative economically implausible because if Google could implement it for $85,000 it would have already done so).[7]

**CONCLUSION**

Despite Prof. Kearl's best efforts, the Third Way is inadmissible and the other two numbers add nothing for the trier of fact.  Prof. Kearl should not testify.  In all events, Google should not be able to cherry-pick the Google Number while excluding the Oracle Number and the Third Way.

---

[7] Prof. Kearl also criticizes Dr. Leonard's other low-cost NIAs as implausible. Kearl Rpt. ¶¶ 49-51 (criticizing Dr. Leonard's "train developers" alternative as relying on assumptions that are "highly unlikely"); *id.* ¶ 55 (same as to the "subsidize app development" alternative); *see generally* Ex. 2 (Kearl Depo.) 62:16-21 ("Well, if the evidence at trial is you didn't need a large number of apps, and Google was prescient and could pick a small number of apps that drove its thing, and that they weren't relying on the 37 APIs, then – then damages are small.").

Dated: April 8, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
Annette L. Hurst

Counsel for ORACLE AMERICA, INC.