ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA 94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY 10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY 10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA 94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE AMERICA, INC.,

Plaintiff,

v.

GOOGLE INC.,

Defendant.

Case No. CV 10-03561 WHA

**ORACLE'S REPLY IN SUPPORT OF MIL #6 RE: PROF. KEARL**

Date: April 27, 2016 at 8:00 am
Dept.: Courtroom 8, 19th Floor
Judge: Honorable William H. Alsup

Prof. Kearl offers three disgorgement numbers, each of which the parties have moved to exclude: the "Oracle Number," the "Google Number," and the "Third Way."

For its part, Oracle moved to exclude the Google Number and the Third Way as entirely dependent upon non-infringing alternatives ("NIAs") and the Oracle Number insofar as it relies on NIAs. Mot. 4-5. Google moved to exclude the Oracle Number and the Third Way for insufficient evidence. Prof. Kearl's response to Oracle's motion largely justifies it. Google objects to Oracle's motion, apparently because Oracle would put an end to both Dr. Leonard and Prof. Kearl's violation of this Court's order against using NIAs, and Oracle would put an end to Google's cherry-picking of Prof. Kearl's opinions. While Oracle appreciates Prof. Kearl's effort in coming up with the Third Way, the opinion is based on an undisclosed and untested econometric model that cannot be countenanced under Federal Rule of Evidence 703. Prof. Kearl's opinions should be excluded.[1]

## I. PROF. KEARL'S RESPONSE CONFIRMS THAT NIAS VIOLATE THE STATUTE AND SHOULD BE EXCLUDED

As this Court suggested when it previously struck Google's use of NIAs in disgorgement, ECF 632 at 6-7, permitting use of NIAs undermines disgorgement's two goals of (1) ensuring the infringer does not benefit from the infringement and (2) deterring would-be infringers. *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). Prof. Kearl's algebra relating to "synergies" is proof of NIAs' pernicious effects in violation of § 504(b). Prof. Kearl demonstrates that NIAs *ensure* that an *infringer benefits* from its wrongful act. ECF No. 1621-3 (Kearl Resp. to Oracle MIL #6 ("K.Resp.")) at 6 (employing NIAs "flip[s]" the counterfactual equation by subtracting the "value" of the infringed input only, attributing any synergies to the infringer and none to the copyright owner, thereby leaving the infringer to profit from the synergies). Google claims that the concept of "synergies" is a "distraction" without relevance to this

[1] Google argues that Oracle incorrectly stated Prof. Kearl's damages opinion from *before the first trial*. *See* ECF No. 1623-1 (Google Resp. to Oracle MIL #6 ("G.Resp.")) at 1. Google is wrong. Prof. Kearl's report estimated damages based on a hypothetical license theory at 20% of gross Android revenues "*for any single item of intellectual property in the portfolio*," which equates today to roughly $5.78 billion. ECF No. 850-6 (3/28/12 Kearl Rpt.) ¶¶ 104-05; ECF 1582-8 (Kearl Depo.) 174:23-177:3.

case. G.Resp. 2-3. Not so. Prof. Kearl's discussion of synergies is an economic restatement of the process of separating or apportioning in a situation, like here, where the defendant has "commingled" infringing and non-infringing elements in a single product. *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 567 (1985). In short, when a product's infringing and non-infringing elements combine to create value greater than the sum of their parts (i.e., a synergy), apportionment becomes more difficult because the apportionment must be done in such a way as to ensure that the infringer is not the one that retains the benefits of the synergy and thus benefits from its wrongful act.[2]

Google's strategy to avoid the conclusion that NIAs violate the statute is to confuse. Oracle's proposition was simple: Parties can perform technical experiments to assess the effect of the infringing attribute on the overall product, but they cannot *replace* the infringing attribute. Oracle addresses Google's argument in detail in its concurrently filed reply in support of its motion regarding Dr. Leonard (at 1-3). In short, NIAs and but-for technical experiments simply are not the same thing. Prof. Kearl recognized the line between the two, and noted that Dr. Leonard crosses it: "Dr. Leonard goes a step beyond [the but-for world] in three of his challenged approaches in that he focuses on what would happen to Android profits if Google could have, or would have, done something specific in lieu of copying the 37 Java APIs." ECF No. 1601-3 (Kearl Resp. to Oracle MIL #4) at 6.

***Google Number.*** Prof. Kearl acknowledges that his Google Number is based on NIAs and should be excluded if NIAs are impermissible, and that Dr. Leonard's three bottom-up apportionment opinions should be too. K.Resp. 2. Prof. Kearl also concludes that the experts in this case, including himself, lack the expertise to accurately measure damages using these three apportionment theories. Specifically, Prof. Kearl states that the three previously discussed NIAs assert that the "37 Java APIs w[ere] important because [they] lowered the cost of app development." ECF 1622-3 (Kearl Resp. to Google MTS) at 5. After noting that the parties disagree

[2] Prof. Kearl clarifies that he believes, as a theoretical matter, that counterfactuals (distinct from NIAs) permit economists to apportion synergies to avoid an infringer's retention of benefits. K.Resp. 3-4; *see* G.Rsp. 2. However, Oracle's point is the same: *In practice*, constructing and estimating such counterfactuals reliably and within the law—at least in this case—is very difficult, as evidenced by the experts' repeated failures. *See* ECF 1613-4 (Malack. Opp.) at 18-22.

about the magnitude of this reduction, he concludes that "I do not have the expertise to determine the magnitude of the reduction in app development costs, and I do not believe that Mr. Malackowski or Dr. Leonard does either." *Id.* at 6.

***Third Way*.** Prof. Kearl's Third Way also relies on an NIA. This approach goes beyond positing a but-for world of non-infringement by positing Android's continued existence, requiring *use of some unspecified NIA* (because without the infringement Android would not function). Professor Kearl agrees that this is an "implicit assumption" in his Third Way, and agrees if such NIAs are impermissible, then both his opinion and Dr. Leonard's must be stricken. K.Resp. 3.

***Oracle Number.*** As explained (Mot. 4), Prof. Kearl reaches his $7.7 billion figure by subtracting from Android's total profits (of $14.2 billion) the $6.5 billion Prof. Kearl calculates Google would have earned had it partnered with Apple.[3]

## II. PROF. KEARL'S USE OF THE KIM MODEL MUST BE EXCLUDED

Federal Rule of Evidence 703 requires that an expert's opinion be based upon facts personally observed "or made known" to the expert. Fed. R. Evid. 703. While Rule 703 permits expert opinion based on hearsay, it does not permit expert opinion based on *the unknown.* The Kim model does not satisfy this standard, because the facts—the data used to construct the model—are not "known to" either Dr. Leonard or Prof. Kearl. While Prof. Kearl's Third Way tries to correct Dr. Leonard's erroneous assumptions in the Kim model, the fact remains that neither expert can test the model or know its capabilities. Prof. Kearl forthrightly acknowledges this limitation: "I am unable to address certain facets of Dr. Leonard's work because the data used to estimate the Kim model are not available to test." Kearl Rpt. ¶ 65 n.99. As Prof. Kearl notes: "Whether Dr. Leonard's reliance on an econometric model that he did not estimate and that neither he nor any other expert in this case can test is at the *Daubert* threshold [and] is a matter for the court." ECF 1601-3 (Kearl Resp. to Party MILs) at 10-11. The answer is that

---

[3] Google claims that Oracle's critique of Prof. Kearl's Oracle Number is an attempt to increase Mr. Malackowski's disgorgement number. That is not so. If Prof. Kearl's $6.5 billion NIA-based deduction for Google partnering with Apple is stricken, Prof. Kearl's calculation must increase—whether Prof. Kearl endorses the number under those circumstances, Oracle has already expressed its doubts that the Court would condone it. ECF 1625-3 (Oracle Resp. To Google MTS Prof. Kearl). Prof. Kearl's calculation, whatever it is, is Prof. Kearl's calculation—not Oracle's. Oracle does not propose to change Mr. Malackowski's calculation.

Rule 703 prohibits such expert testimony because the bases of the opinion are not known to anybody when the underlying data was not disclosed or tested. *See, e.g.*, *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629 (W.D. Wash. 2011). To remedy Google's expert's failure to obtain and produce the missing data, Oracle tried to contact Dr. Kim to request such a disclosure, and she failed to respond. She lives in Korea. There is no way to obtain the data.

Prof. Kearl's Third Way should be excluded for the additional and independent reason that the Kim model is a poor "fit" for this case, ECF 1554-4 (Oracle MIL #4) at 5-7, as Prof. Kearl himself recognizes, K.Resp. 3. *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1332 (Fed. Cir. 2014) (reversing admission of expert opinion based on theorem when expert did not establish "that the premises of the theorem actually apply to the facts of the case at hand").

First, the Kim model focuses on the wrong time period—the post-2010 world when Android had already "reached escape velocity." GOOGLE-26-00025769 at 770. Prof. Kearl acknowledged this major problem: "Dr. Leonard does not appear to have investigated the stability of the Kim parameter estimates across time and he provides no evidence suggesting that the response of consumers would be similar in the earlier period to what Dr. Kim estimated it to be in the latter period." ECF 1601-3 (Kearl Resp. to Party MILs) at 9. The model therefore does not even address the question it seeks to answer: how much Android's market share would be reduced had it launched without the 37 API packages. *See In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 980 (C.D. Cal. 2012) (expert opinion unreliable because expert excluded relevant time period from data set, thereby not accounting for "fundamental change in marketplace dynamics"); *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 743 (3d Cir. 1994) ("Rule 702's helpfulness standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. For example, in order for animal studies to be admissible to prove causation in humans, there must be good grounds to extrapolate from animals to humans, just as the methodology of the studies must constitute good grounds to reach conclusions about the animals themselves." (quotations marks omitted)).

Second, Prof. Kearl (and Dr. Leonard) uses the model to posit a counterfactual world of non-infringement, yet the model uses post-2010 data that is *affected by* the infringement. This is

also a huge problem; it is like an antitrust economist trying to benchmark while using only data that was affected by the conspiracy. *Cf. Live Concert Antitrust Litig.*, 863 F. Supp. 2d at 980.

Third, as Prof. Kearl concludes, the model seeks to answer the wrong question. For example, Dr. Leonard's use of it "focuses on the availability of Top 100 apps," and hence does not address the point that the 37 API packages "allowed a much larger number of miscellaneous apps . . . to be available quicker," thus permitting Android to succeed during the small window of opportunity. Kearl Rpt. ¶ 65; *see also* ECF 1625-3 (Oracle Resp. to Google MTS Prof. Kearl) at 3.

The Kim model should be excluded. If it is deemed admissible, it should only be admitted if Prof. Kearl's corrections are implemented. *See id.*

## III. PROF. KEARL'S TAC DEDUCTIONS SHOULD BE EXCLUDED

Prof. Kearl acknowledges that he could not evaluate the parties' positions on deduction of expenses, saying that it is a factual issue and that he will adjust his analysis accordingly. K.Resp. 6-7. Google had the burden of proof on its own deductible expenses, had access to all the data it needed, and was ordered by the Court to produce every scrap of financial data. Yet Google did not produce data sufficient to verify its own expenses. This is not difficult. Google paid revenue sharing and that number is a known number. Google accounted for it on its books, and that decision can be traced through the P&Ls that Google printed out for use in this litigation from its "Hyperion" system. Dr. Leonard must have had full access to anything he wanted from Google, or he should be disqualified. Yet Dr. Leonard "estimated" TAC, failed to confirm Google's actual expenses, and cannot account for the content of Google's litigation-based financial printouts. Prof. Kearl should not be endorsing Dr. Leonard's approach under such circumstances. Google had the burden of proof, and it failed with respect to this very large expense category.

Accordingly, and for the reasons explained in Oracle's motion, Prof. Kearl's $1.8 billion TAC deductions in his Third Way and Oracle Number should be excluded. *See* Mot. 5.

## CONCLUSION

Each of Prof. Kearl's numbers is legally erroneous, and both parties agree that the Third Way should be excluded. As explained in Oracle's Response to Google's Motion to Strike Prof. Kearl (ECF No. 1625-3), Prof. Kearl should not testify.

Dated: April 13, 2016

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
Annette L. Hurst

Counsel for ORACLE AMERICA, INC.