ORRICK, HERRINGTON & SUTCLIFFE LLP
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
405 Howard Street, San Francisco, CA  94105
Tel: 1.415.773.5700 / Fax: 1.415.773.5759
PETER A. BICKS (*pro hac vice*)
pbicks@orrick.com
LISA T. SIMPSON (*pro hac vice*)
lsimpson@orrick.com
51 West 52nd Street, New York, NY  10019
Tel: 1.212.506.5000 / Fax: 1.212.506.5151

BOIES, SCHILLER & FLEXNER LLP
DAVID BOIES (*pro hac vice*)
dboies@bsfllp.com
333 Main Street, Armonk, NY  10504
Tel: 1.914.749.8200 / Fax: 1.914.749.8300
STEVEN C. HOLTZMAN (SBN 144177)
sholtzman@bsfllp.com
1999 Harrison St., Ste. 900, Oakland, CA  94612
Tel: 1.510.874.1000 / Fax: 1.510.874.1460

ORACLE CORPORATION
DORIAN DALEY (SBN 129049)
dorian.daley@oracle.com
DEBORAH K. MILLER (SBN 95527)
deborah.miller@oracle.com
MATTHEW M. SARBORARIA (SBN 211600)
matthew.sarboraria@oracle.com
RUCHIKA AGRAWAL (SBN 246058)
ruchika.agrawal@oracle.com
500 Oracle Parkway,
Redwood City, CA 94065
Tel: 650.506.5200 / Fax: 650.506.7117

*Attorneys for Plaintiff*
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>GOOGLE INC.,<br><br>                    Defendant. | Case No. CV 10-03561 WHA<br><br>**ORACLE'S RESPONSE AND OBJECTION TO ECF No. 2036** |

1       Google perpetrated a fraud on the jury and on this Court.  The witness testimony elicited

2 by Google and Google's own closing argument, post-trial briefs, and uncorrected discovery

3 responses all stated that Android did not run on laptops and desktops.  It was Google's main

4 argument regarding market harm and transformation.  On May 16, 2016, Google's expert Dr.

5 Leonard testified shortly after 9:20 a.m. that "Android has not superseded Java SE" because "the

6 two products are on very different devices.  As I just mentioned, Java SE is on personal compu-

7 ters. Android, on the other hand, is on smartphones."  Tr. 1898:2:4; Tr. 1885:20.  Unbeknownst to

8 Oracle, shortly after 11 a.m. that same day, Google announced that it had "integrated [the]

9 Android framework into Chrome OS" to run on laptops and desktops.  Ex. F; Ex. 4.[1]

10       Only Google knows for how long it intended to write this software that would permit it to

11 put Android and all Android applications on laptops and desktops.  That was information clearly

12 relevant to Oracle's effort to rebut Google's fair use defense.  Google's failure to correct what

13 were or what became inaccurate discovery responses on the topic violated Rule 26(e).  Oracle

14 suffered prejudice from its inability to use the information in the litigation.  Google's conduct was

15 inexcusable.  A declaration from Ms. Anderson is not sufficient to address this discovery

16 misconduct.  Oracle is entitled to get to the bottom of Google's misconduct, the true facts, and

17 whether Google's failure to correct its discovery responses was knowing, deliberate or

18 intentional.  Oracle is also entitled to a new, *fair*, trial.

19 **I.      GOOGLE FAILED TO COMPLY WITH RULE 26(e)'S REQUIREMENT TO**
20        **CORRECT AND MAKE COMPLETE ITS DISCOVERY RESPONSES.**

21       Google argued at the hearing that its "responses were all appropriate and accurate and

22 reflected the state of discovery during the discovery period."  8/17/2016 Hr'g Tr. 46:9-11.  But

23 the plain language of Rule 26(e)(1) requires that a party "must supplement or correct its

24 disclosure or response … in a timely manner if the party learns that in some material respect the

25 disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1); *see also Imax Corp.*

26 *v. Cinema Techs., Inc.*, 152 F.3d 1161, 1166 n.6 (9th Cir. 1998) ("[Rule] 26(e) imposes a duty on

---

27 [1] All lettered exhibits are exhibits to the Declaration of Matthew L. Bush in support of Oracle's
Rule 59 Motion for a New Trial.  *See* ECF No. 1997-1.  All numbered exhibits are exhibits to the
28 Declaration of Annette Hurst filed concurrently herewith.

a party to 'supplement or correct' their interrogatory responses under certain circumstances, such as … if 'the response is in some material respect incomplete or incorrect.'").  The rule specifically applies to responses to requests for admission, interrogatories and document requests. Fed. R. Civ. P. 26(e)(1).

Rule 26(e) was amended in 1993 in order to "broaden[] the duty to supplement" so that a party must "supplement 'or correct' earlier disclosures or discovery responses to 'include information thereafter acquired.'"  Wright and Miller, 8A *Fed. Prac. & Proc. Civ.* § 2049.1 (3d ed.).  As courts have recognized, Rule 26(e) creates a "duty to supplement and correct disclosures and responses [that] is a continuing duty….  [I]f … additional information becomes known …, this information must be disclosed and no additional interrogatories are necessary to obtain this information."  *Allflex USA, Inc. v. Avid Identification Sys., Inc.*, No. CV-06-1109-SGL, 2009 WL 8591843, at *4 (C.D. Cal. Oct. 30, 2009) (quotation marks omitted); *see also* 6-26 Moore's Federal Practice - Civil § 26.131 ("[I]f after answering interrogatories, additional information becomes known to the answering party, this information must be disclosed and no additional interrogatories are necessary to obtain this information.").  That duty "continues even after the discovery period has closed."  *Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011); *accord Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001) (concluding that the plaintiff had "a continuing duty to disclose information … even after discovery closed.").

After remand during the second phase of discovery, Oracle asked about Google's plans to put Android on desktops and laptops and all of its uses of Android.  Google let stand numerous materially inaccurate discovery responses that failed to disclose its Chrome OS/Android integration:

**RFA No. 281 (Ex. O)**

- Oracle Request
  "Admit that GOOGLE intends to use some or all of ANDROID, including DECLARING CODE and SSO from the 37 JAVA API PACKAGES, to create a platform that runs on desktops and laptops."

- Google's Response
  "Google denies this request for admission."

- Supplemental Response That Should Have Been Served
  Admitted.  "We're building a whole new platform to run Android apps on Chromebooks."
  Ex. J-1 at 4.

### RFA 254, 264 (Ex. N)

- Oracle Request
  "Admit Chrome OS contains DECLARING CODE" and "replicates the SSO of the 37
  JAVA API PACKAGES."

- Google's Response
  "Google denies this request for admission."

- Supplemental Response That Should Have Been Served
  Admitted.  Chrome OS "ha[s] the 37 Java API SSO [and] declarations."  8/17/2016 Hr'g
  Tr. 62:14-15.

### Interrogatory 26-29 (Ex. P)

- Oracle Interrogatories
  "For each VERSION of ANDROID developed or released by GOOGLE since October 27,
  2010, identify all ANDROID code that contains or replicates code from the 37 JAVA API
  PACKAGES, including any DECLARING CODE or any other code contained in the
  JAVA PLATFORM."  *See also id.* (Interrogatory 27: same for "any software" containing
  declaring code; Interrogatory 28-29: same for SSO).

- Google's Response
  Cupcake to Marshmallow; ARC; ARC Welder; Brillo; GMS applications and
  documentation; unreleased versions of Android incorporating OpenJDK

- Supplemental Response That Should Have Been Served
  Also Chrome OS

## II.   NO COURT ORDER RELIEVED GOOGLE OF ITS DUTY TO SUPPLEMENT.

Google argued at the hearing that "[n]o party had a duty to supplement discovery about
matters beyond the scope of the trial."  8/17/2016 Hr'g Tr. 46:7-8.  That argument does not
address Google's duty to *correct* materially inaccurate discovery responses.  Rule 26(e) imposes a
duty to "correct" discovery responses that are "incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)-
(e)(1)(A).  It was not permissible for Google to create the false impression that Google did not
"intend[] to use some or all of Android, including declaring code and SSO from the 37 Java API
packages to create a platform that runs on desktops and laptops," when the truth was just the
opposite.

Moreover, Google's argument is wrong because it focuses only on what Google
erroneously considers to be the scope of the infringement claim at trial.  The scope of discovery is
not so limited.  Rule 26(b) provides a party with the right to obtain "any nonprivileged matter that

1    is relevant to any party's claim *or defense*."[2]  Even if the Court excluded from the trial Oracle's

2    infringement allegations about laptops and desktops, laptops and desktops were still relevant for

3    Oracle to rebut Google's *defense* contending that its copying was a fair use.[3]  That relevance is

4    amply demonstrated by the testimony and argument that Google sponsored on this very topic.

5         For the first and fourth fair use factors, Google's counsel and witnesses expressly based

6    their arguments on Android's absence from the laptop and desktop market.

7                    **Dr. Gregory Leonard (On DIRECT by Google)**

8    Q. Did you reach an opinion as to whether or not Android had superseded Java SE
     in the market?

9    A. I have.

10   Q. Can you please tell the jury what that opinion is.

11   A. It has not superseded -- Android has not super[s]eded Java SE.

     Q. Do you have reasons for reaching that opinion? If so can, you explain them?

12   A. Yes, I have two reasons.

13   ***The first is that the two products are on very different devices. As I just***
     ***mentioned, Java SE is on personal computers. Android, on the other hand, is***
14   ***on smartphones.*** (Tr. 1897:18-1898:4)

15                              ◆──────────◆

16                    **Dr. Owen Astrachan (On DIRECT by Google)**

17   Q. Now is the Android platform compatible or intraoperative with the Java SE
     platform?

18   A. No, it's not. We talked about how the Java SE is designed for laptop and
     desktop computers, and an application written for those would use likely the 37
19   API packages and their implementations, but maybe the hundred-plus more that
     were there for a desktop or laptop computer.

20   So if it used all those API packages, the declaring code and implementing code to
     run on a desktop or laptop, we wouldn't expect it to run on a mobile device
21   because it wouldn't use all those API packages.

22   ***And similarly, if we wrote an application that ran an Android***, it would -- it
     might use some of those 37 independent implementations in the packages, but it
23   might use the accelerometer and the location services, and if it used those, those

24   ─────────────────
     [2] The previous versions of Rule 26(b) was even broader during much of the discovery period.
25   Prior to December 1, 2015, Rule 26(b) defined the scope of discovery as all "[r]elevant
     information" even if not admissible at trial "if the discovery appears reasonably calculated to lead
     to the discovery of admissible evidence."
26
     [3] Even apart from fair use, Android on laptops and desktops could have been subject to an
27   injunction, as this Court recognized.  *See* ECF No. 1781 at 2 ("Nevertheless, if Oracle prevails at
     the trial and if an injunction is warranted, the equitable remedy might extend beyond the versions
     expressly in play in the trial pursuant to the ordinary scope of equitable relief.") (quoting ECF
28   No. 1479 at 2).

ORACLE'S RESPONSE AND
OBJECTION TO ECF NO. 2036

new libraries that were designed specifically for the Android platform, *it wouldn't work on your desktop or laptop computer*. So in general, those platforms aren't compatible. (Tr. 1231:8-25)

Q.  What's your opinion on Dr. Schmidt's explanation of the purpose of the Java API packages in Java SE and in the Android platform?

A. I think that Professor Schmidt missed the context in which the APIs are being used.

And the purpose of an API is to create an application in the context. *For example, to create an application that runs on the Android platform or on a desktop or laptop. So that context is key for understanding the purpose of an API.* (Tr. 1931:18-1932:1)

◆———————◆

**Google Closing**

Android is not a substitute. Java SE is on personal computers; Android is on smartphones.  (Tr. 2124:6-7)

If you are buying a personal computer, you want to buy a personal computer or desktop. You don't go out and look for Android or any smartphone. (Tr. 2124:7-9)

This [fourth] factor considers whether the new work is a substitute for the old. That's the key to this factor. Whether the accused work, that's the -- that's Android, is offered or used as a substitute for the original work.

*Well, you now know that that is certainly not true. Java SE is intended, always was, for desktops and servers.* That's what we're showing here. That's what Java SE is all about. Desktops and servers. You haven't heard any testimony, none, that there's been harm to Oracle in these markets. Nobody came in here and said, "Oh, we're suffering in our desktop or server market." Nothing. Not even an effort to prove that. (Tr. 2122:10-21)

◆———————◆

**Google's  Rule 50(a) Opposition**

In creating Android, Google incorporated the declarations/SSO of the 37 API packages into an entirely new context. Dr. Bloch testified that *a smartphone entails a unique platform very different from desktops and servers*. (ECF No. 1935 at 5)

[B]ecause the evidence shows that *Android devices constitute a different category from those devices running either Java SE* or Java ME, a reasonable jury could find that Android's use of the declarations/SSO at issue does not harm any actual or potential market for Java SE. (ECF No. 1935 at 20)

The Court accepted and relied upon this argument.  In fact, the Court's order denying Oracle's Rule 50(a) motion as to Java SE relies *exclusively* on Google's argument that Java SE was intended for desktops and servers and Android was intended for smartphones: "With respect

1  to Factor Four, our jury could reasonably have found that use of the declaring lines of code

2  (including their SSO) in Android caused no harm to the market for the copyrighted works, which

3  were for desktop and laptop computers."  ECF No. 1988 at 17.  Moreover, this was also critical to

4  the determination that Android might be found transformative.  *Oracle Am., Inc. v. Google Inc.*,

5  750 F.3d 1339, 1374 (Fed. Cir. 2014) ("The critical question is whether the new work merely

6  supersede[s] the objects of the original creation." (quotation marks omitted)).

7        Yet all of this evidence and argument regarding Android not being on laptops and

8  desktops was misleading and untrue.  Java SE and Android are *not* "on very different devices."

9  Tr. 1898:2-3 (Leonard).  Both were announced as available on laptops and desktops within

10  minutes of that testimony.  In light of Chrome OS, "creating an application on the Android

11  platform" is *not*, contrary to Dr. Astrachan's testimony, "a different context than creating an

12  application on the laptop or desktop computer."  Tr. 1265:10-12 (Astrachan).  An application for

13  Android will now run on Chrome OS laptops/desktops.  In light of Chrome OS, it is not true, as

14  Google said in its closing, that "[i]f you are buying a personal computer," then "[y]ou don't go

15  out and look for Android."  Tr. 2124:7-9.  Now with Chrome OS, you can do just that.  Nor is it

16  true that "Android does not threaten to harm any valid 'potential market' for the copyrighted

17  work."  ECF No. 1935 at 19.  Android is now taking aim at the traditional Java SE market.

18        Google's unilateral decision to withhold all information on the complete integration of

19  Android with Chrome OS created a deeply misleading view of the case for both the jury and the

20  Court, substantially interfering with Oracle's right to a fair trial.

21  **III.  ORACLE NEVER EXCUSED GOOGLE'S DUTY TO SUPPLEMENT THE
22  DISCOVERY AT ISSUE.**

23        Counsel suggested that the "understanding of the parties" was that supplementation was

24  not necessary.  8/17/2016 Hr'g Tr. 46:14.  No such understanding existed, as detailed in the

25  accompanying declaration of Annette Hurst.  The parties never even discussed limiting the duty

26  to supplement answers to discovery requests propounded in the post-remand discovery period,

27  and Oracle certainly would never have agreed to permit Google to avoid correcting what had

28  become false responses.

**IV.    DISCLOSURE OF ARC WAS NO SUBSTITUTE FOR DISCLOSURE OF THE NEW SOFTWARE PORTING ALL OF ANDROID TO CHROME OS.**

Google argued at the hearing that Oracle was not prejudiced by Google's failure to disclose Android on Chrome OS because Google disclosed ARC.  A simple hypothetical demonstration of the difference in cross-examining the witnesses based on ARC and based on this new software belies this contention.  Imagine Oracle confronting the assertions of Drs. Leonard and Astrachan that Android does not work on laptops or desktops with the information that had been disclosed about ARC.  They would have quickly testified that ARC was an experiment, that it permitted only a relative few Android applications to run on Chrome OS, and (based on Google's RFA response) that Google unequivocally did *not* intend to make Android run on laptops and desktops.

Now imagine that cross-examination with the types of information Oracle has learned from recent news reports.  Drs. Leonard and Astrachan, you just testified that Android does not run on personal computers, but that's incorrect isn't it?  Isn't it true that Google has announced that Android will run on Chromebook laptops and Chromebox desktops?  (Yes.)  Isn't it true that *all* Android applications will now run on these laptops and desktops?  (Yes.)  Isn't it true that developers can now use Android to develop applications for Chrome-based laptops and desktops? (Yes.)  The evidence the jury heard about transformation, substitution and threatened market harm would have been fundamentally different.[4]

Counsel for Google stated at the hearing that Android on Chrome OS is really "ARC++" and is simply an "updated version of ARC."  8/17/2016 Hr'g Tr. 46 19-20; *see also id.* at 69:21 ("updated version").  But Google's public demonstrator at its developer conference I/O said exactly the opposite, and so did *ArsTechnica*.  At I/O, Google called it "a whole new platform." Ex. J-1 at 4.  *ArsTechnica* reported based on its interview with Google's engineering director:

---

[4] Google also argued that Oracle did not suffer prejudice on the ground that Oracle's expert Dr. Jaffe "didn't do anything to figure out if Java SE [as opposed to Java ME] was really hurt." 8/17/2016 Hr'g Tr. 53:7-8.  That begs the question.  Google prevented Dr. Jaffe from having all the relevant information regarding potential harm to Java SE.  Had Dr. Jaffe known about Google's Chrome OS plans, he could have evaluated it.

ORACLE'S RESPONSE AND
OBJECTION TO ECF NO. 2036

The real shocker here is that this release of Google Play on Chrome OS is *not based on ARC*.  Zelidrag Hornung, the engineering director of Chrome & Android, filled us in on the details:  "We have redone this completely differently.  There are *no connecting points between the two* projects (ARC and today's announcement) from an implementation perspective."  ARC wasn't good enough, so *Google started over from scratch.* (Ex. C at 2.)

The Court asked counsel, "Is it true the witnesses would have come back and said, 'Yeah, but it [ARC] didn't work'?"  8/17/2016 Hr'g Tr. 61:22-23.  Counsel responded: "No."  *Id*. at 61:24.  The Court later asked whether ARC "was a failure in experiment."  *Id.* at 68:25.  Counsel again responded: "No."  But Head of Android and Chrome OS Hiroshi Lockheimer in his deposition testified of ARC that "You can think of it as an experiment of sorts."  Ex. 2 (Lockheimer Depo) at 197:20-21.  ARC was not made publicly available but instead required "close cooperation" between the ARC team and a few app developers.  *Id.* at 196:25-197:11.  Lockheimer explained that there were only "about 100 or so applications that run on ARC" which is a "tiny, little subset" of the "over a million applications in Google Play."  *Id.* at 196:16-23.  A program as basic as Microsoft Word, "which is available on Android, if you take that and try to run it in ARC, won't run."  *Id.* at 195:25-2.  As the *ArsTechnica* article pointed out:  "ARC couldn't pass Google's own Android Compatibility Test Suite."  Ex. C. at 2.  As Google said when demonstrating its "whole new platform," ARC "had some challenges for developers."  Ex. J-1 at 3-4.  "Access to some of the system resources were restricted," "[s]ome apps didn't work great ... especially the Google Play Store," and  "some of the features that are critical for developers, like in-app payments, required extra work on [the developers'] behalf."  *Id.* at 4.

Marshmallow/Chrome OS does not suffer those same problems:  With the "new model [Android on Chrome OS], there is virtually no work that an Android Developer needs to do with their app.  They just publish it to the Play Store and it just works," according to a Google Engineer.  Ex C. at 2.  For the first time, "Chrome OS will now be home to more than 1.5 million Android apps."  *Id.* at 3.

## V.   ORACLE IS ENTITLED TO INVESTIGATE DISCOVERY MISCONDUCT.

Oracle is entitled to evidence regarding Marshmallow Android/Chrome OS and Google's failure to disclose it.  A declaration from Google's counsel "explaining why the discovery

1    responses … were not updated, including the full extent to which counsel knew Google's

2    intention to launch a full version of Marshmallow … for Chrome OS" (ECF No. 2036) *is not*

3    *sufficient*.  The duty to supplement "applies whether the corrective information is learned *by the*

4    *client or by the attorney*."  Rule 26 1993 Committee Notes (emphasis added)*; accord* Wright and

5    Miller, 8A *Fed. Prac. & Proc. Civ.* § 2049.1 (3d ed.) ("The Committee Note to the 1993 revision

6    made it clear that the duty exists if the new information is acquired by the attorney or the party.");

7    *Allflex USA, Inc.*, 2009 WL 8591843, at *4 (duty to supplement exists even if the "party's

8    attorney does not know about the updated information").

9          What Google's lawyers knew and when they knew it is certainly necessary to the inquiry,

10   but it is not sufficient.  *Jones v. Aero/Chem Corp.* requires consideration of whether the failure to

11   disclose was "knowing, deliberate or intentional."  921 F.2d 875, 879 (9th Cir. 1990).  To answer

12   that question, Oracle requires discovery from *Google*, not just Google's counsel.  "Where the

13   documents have been intentionally withheld," then "the documents themselves may constitute

14   clear and convincing proof" regarding prejudice.  *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926

15   (1st Cir. 1988) (*cited by Jones*, 921 F.2d at 879).  Moreover, Oracle "may be able to benefit from

16   a presumption" that Google "substantial[ly] interfere[d]" with Oracle's case if Oracle "can

17   demonstrate the misconduct was sufficiently knowing, deliberate or intentional."  *Jones*, 921 F.2d

18   at 879.  Under *Jones*, the Court needs to hold a "hearing" to make "findings" on issues such as

19   "whether there had been misconduct, either knowing or accidental."  *Id.; see Hausman v. Holland*

20   *Am. Line-U.S.A.*, No. CV13-0937 BJR, 2016 WL 51273, at *2 (W.D. Wash. Jan. 5, 2016)

21   (finding that evidentiary hearing was warranted based on affidavit suggesting discovery

22   misconduct, holding hearing, and vacating verdict and judgment based on testimony at hearing);

23   *Wharf v. Burlington N. R.R. Co.*, 60 F.3d 631, 637 (9th Cir. 1995) (ordering a new trial after the

24   district court held an evidentiary hearing).

25         The need for discovery is especially pronounced since Google's 30(b)(6) witnesses denied

26   any intention to put Android on Chrome OS when asked.  Google has never explained this—not

27   in its Rule 59 Opposition and not at the August 17 hearing.  *See* ECF No. 2019 at 6-7.  Felix Lin,

28   a Group Product Manager with responsibility over Chrome OS, Ex. 1 (Lin Depo) at 9:16-21, was

ORACLE'S RESPONSE AND
OBJECTION TO ECF NO. 2036

Google's 30(b)(6) witness regarding "[a]ll methods of distribution … of ANDROID or its components," Ex. R at 7 (Topic 4); Ex. 1 (Lin Depo) at 62:3-23.  The following exchange occurred in his deposition:

> Q.  Have you discussed or considered within Google folding Chrome OS into some unified operating system with Android such that Chrome OS would no longer be a stand-alone operating system?
> A. Absolutely not.  (Ex. 1 at 25:9-13)

Yet that was exactly what Google did, since the latest version of Chrome OS will now include Android.  Going forward, Chrome OS and Android will be unified.  And Google even announced this week that it is consolidating its position and will no longer make Chrome applications available on other operating systems.  Ex. 3 (http://blog.chromium.org/2016/08/from-chrome-apps-to-web.html).

Oracle also took the deposition of Hiroshi Lockheimer, who is the "head of Android, Chrome OS, and Chromecast."  Ex. 2 (Lockheimer Depo) at 23:14-15.  He reports directly to Sundar Pichai, Google's CEO.  *Id.* at 26:13-17.  He was Google's 30(b)(6) witness regarding "all plans, product roadmaps, strategies, functions, markets, devices, and goods or services now or in the future planned to be in any way associated with ANDROID and/or any part thereof."  Ex. R at 7 (Topic 2); Ex. 2 (Lockheimer Depo) at 8:20-23; 10:5-8.  He testified that "Chrome OS is not Android related."  Ex. 2 at 192:14.

All necessary information is exclusively within Google's knowledge and control, and Oracle needs that information in admissible form from *Google*.  Keker & Van Nest is certainly relevant, but its knowledge is not a substitute for discovery of Google.

## CONCLUSION

The Court should order Google to submit to discovery regarding Google's failure to disclose its integration of Android with Chrome OS, and should schedule a further *Jones v. Aero/Chem* hearing.

1    Dated: August 25, 2016

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
      Annette L. Hurst

Counsel for ORACLE AMERICA, INC.