PAGES 1 - 49

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ORACLE AMERICA, INC., | ) | **REDACTED** |
| | ) | |
| PLAINTIFF, | ) | NO. C-10-3561 WHA (DMR) |
| | ) | |
| VS. | ) | THURSDAY, JANUARY 14, 2016 |
| | ) | |
| GOOGLE, INC., | ) | OAKLAND, CALIFORNIA |
| | ) | |
| | ) | JOINT DISCOVERY LETTER BRIEF |
| DEFENDANT. | ) | |
| _____ | ) | |

**BEFORE THE HONORABLE DONNA M. RYU, MAGISTRATE JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**      ORRICK, HERRINGTON & SUTCLIFFE LLP
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105
BY:  ANNETTE L. HURST, ESQUIRE
ROBERT L. URIARTE, ESQUIRE
ANDREW KIM, ESQUIRE

**FOR DEFENDANT:**     KEKER & VAN NEST
633 BATTERY STREET
SAN FRANCISCO, CALIFORNIA 94111
BY:  ROBERT VAN NEST, ESQUIRE
STEVEN P. RAGLAND, ESQUIRE
MAYA KARWANDE, ESQUIRE

**REPORTED BY:**      DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
OFFICIAL COURT REPORTER

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
1    THURSDAY, JANUARY 14, 2016                    11:57 A..M.

2                       P R O C E E D I N G S

3         THE CLERK:  CALLING CIVIL 10-3561 WHA ORACLE AMERICA,

4    INCORPORATED VERSUS GOOGLE, INCORPORATED.

5       PLEASE STATE YOUR APPEARANCES, COUNSEL.

6         MS. HURST:  GOOD MORNING, YOUR HONOR.  ANNETTE HURST

7    FOR ORACLE.  AND WITH ME TODAY ARE ROBERT URIARTE AND ANDREW

8    KIM.

9         THE COURT:  GOOD MORNING.

10        MR. VAN NEST:  GOOD MORNING, YOUR HONOR.  BOB VAN

11   NEST OF KEKER & VAN NEST FOR GOOGLE.  AND I'M HERE WITH STEVEN

12   RAGLAND AND MAYA KARWANDE.

13        THE COURT:  GOOD MORNING.

14      I THINK A FEW MORE OF YOU SHOWED UP THAN CHECKED IN.

15   LET'S MAKE SURE MS. GARCIA HAS ALL OF YOUR APPEARANCES,

16   MR. VAN NEST.

17        MR. VAN NEST:  I THINK SHE HAS A BUSINESS CARD FROM

18   MR. RAGLAND AND A BUSINESS CARD FROM MS. KARWANDE.

19        MS. HURST:  I THINK IT'S MY FAULT, YOUR HONOR.

20   MR. KIM DID NOT CHECK IN AND HE'S NOT PLANNING TO APPEAR.

21   HE'S WITH US THIS MORNING.

22        THE COURT:  OKAY.  GOOD MORNING, EVERYONE.  WE ARE

23   HERE ON ORACLE'S DISCOVERY MOTION.

24      MS. HURST, I'M GOING TO SUMMARIZE WHAT I THINK ORACLE'S

25   ARGUMENT IS ON RELEVANCE TO DAMAGES.  YOU TELL ME IF I'VE GOT
```

1    IT RIGHT.

2        ORACLE BELIEVES THAT GOOGLE'S SEARCH DISTRIBUTION

3    AGREEMENTS WITH THIRD PARTIES IS RELEVANT TO ORACLE'S DAMAGE

4    ANALYSIS BECAUSE ORACLE WANTS TO USE THAT INFORMATION TO

5    DEVELOP THE HYPOTHETICAL LICENSE NEGOTIATION MODEL WITH

6    RESPECT TO AN INPUT AROUND THE VALUE TO GOOGLE OF CONTROL OF

7    THE ANDROID PLATFORM.

8        SO ORACLE SAYS CONTROL OF THE ANDROID PLATFORM WAS VERY

9    VALUABLE TO GOOGLE.  AND ONE WAY WE CAN GET AT THAT VALUE FOR

10   PURPOSES OF PLUGGING INTO THE NEGOTIATION IS TO LOOK AT THE

11   DEALS THAT GOOGLE WAS ENTERING INTO NON -- WITH NON-ANDROID

12   PLATFORMS WHERE THEY HAD TO SHARE REVENUE OR OTHER FORMS OF

13   COMPENSATION.

14       IS THAT BASICALLY WHAT THE ARGUMENT IS?

15       **MS. HURST:**  THAT IS ONE OF OUR ARGUMENTS, YOUR HONOR.

16   THAT THEORY RELATES ALSO TO APPORTIONMENT OF PROFITS AND HOW

17   TO VALUE THE ROLE THE PLATFORM PLAYS IN APPORTIONMENT.

18       AND, YOUR HONOR, WE ALSO HAVE OTHER RELEVANT THEORIES

19   RELATED TO THE FIRST FACTOR OF FAIR USE AND DISGORGEMENT

20   CAUSATION IN GENERAL.

21       **THE COURT:**  WE WILL GET TO THAT IN A MOMENT, BUT I

22   WANTED TO MAKE SURE I UNDERSTOOD THE DAMAGE ANALYSIS.

23       **MS. HURST:**  YES.

24       **THE COURT:**  EXPLAIN HOW THIS WOULD PLAY INTO

25   APPORTIONMENT OF PROFITS.

1      **MS. HURST:**  YOUR HONOR, WHAT THE 37 JAVA API'S

2   ENABLED GOOGLE TO DO WAS TO CREATE THE ANDROID PLATFORM.  AND

3   IT ENABLED GOOGLE TO DO THAT AT A VERY SPECIFIC MOMENT IN

4   TIME, WHICH WAS A CRITICAL WINDOW OF OPPORTUNITY FOR GOOGLE.

5      THE CONSUMERS WERE CONVERGING ON THE MOBILE MARKET AND

6   THEY WERE IN A SPACE RACE WITH APPLE.  THEY WERE LITERALLY

7   NECK IN NECK WITH THE IOS PLATFORM COMING OUT.

8      NOW, WHAT WE NEED TO DO IN APPORTIONING PROFITS IS TO

9   UNDERSTAND OF ALL THE PROFITS THAT THEY MADE ASSOCIATED WITH

10  ANDROID SINCE IT WAS RELEASED, A FIGURE WHICH WE THINK IS

11  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

12  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

13  VALUE OF THE PLATFORM AND CORRESPONDINGLY THEN TO THE API'S

14     THEY ARE ON GOING TO COME AND SAY, WELL, ALL THAT PROFIT

15  IS REALLY, YOU KNOW, GOOGLE'S BRAND, IT'S THIS, IT'S THAT,

16  IT'S ALL THESE OTHER FACTORS.  AND WE NEED TO RESPOND TO THAT

17  AND WE NEED TO HAVE A GOOD RESPONSE TO THAT.  WE RECOGNIZE

18  THAT.

19     SO WHAT, JUST TAKING APPLE AS AN EXTENDED ANALOGY, YOUR

20  HONOR, WHAT THAT LETS US SHOW IS, WHEN GOOGLE HAS TO GO PAY

21  FOR SEARCH, AND LET'S JUST TAKE IT ON A PER DEVICE BASIS, YOUR

22  HONOR.  LET'S SAY ON A PER IOS DEVICE BASIS, THEY'RE EARNING

23  $8 A DEVICE.  THIS IS JUST HYPOTHETICAL.  I AM MAKING IT UP

24  FOR PURPOSES OF DISCUSSION.

25     AND THEY ARE PAYING APPLE $1 OR $2.  PROBABLY, LET'S SAY

```
1    $2.  THEN WHAT WE KNOW IS THE VALUE OF ACCESS TO THE PLATFORM,

2    THE PLATFORM IS GIVING THEM A QUARTER OF THE VALUE.  THAT

3    ABILITY TO ACCESS IS GIVING THEM A QUARTER OF THE VALUE.

4          THE COURT:  OKAY.  SO THIS WOULD WEIGH INTO THE

5    APPORTIONMENT OF PROFITS AT THE VALUATION OF THE PLATFORM

6    LEVEL.

7          MS. HURST:  EXACTLY.

8          THE COURT:  NOT AT THE VALUATION OF THE API'S.

9          MS. HURST:  RIGHT.  AND THERE MAY NOT BE A LOT OF

10   DAYLIGHT THERE WHEN YOU LOOK AT ALL THE CIRCUMSTANCES.

11         THE COURT:  OKAY.

12         MS. HURST:  AND THE ROLE THAT THIS WAS THE LAST

13   CRITICAL PIECE, YOU KNOW, THE LAST INCH OF THE LAST MILE OF

14   DELIVERY TO THE CUSTOMERS.

15      BUT IN ANY EVENT, IT'S A GOOD ANALOG FOR VALUING THE

16   PLATFORM PIECE.

17         THE COURT:  YOU ALSO RAISED THE FAIR USE ISSUE.  WHAT

18   IS THE RELEVANCE TO FAIR USE?

19         MS. HURST:  SO, YOUR HONOR, THE FAIR USE FIRST FACTOR

20   IS THE ONE I'M GOING TO FOCUS ON.  THE PURPOSE AND CHARACTER

21   OF THE USE.

22         THE COURT:  I THINK WE ALL KNOW IT'S COMMERCIAL.

23         MS. HURST:  WELL, WE ASSUME THAT, BUT THEY ARE

24   FIGHTING IT.  AND I HAVE HAD WITNESS AFTER WITNESS COME TO

25   DEPOSITION, YOUR HONOR, AND SAY, OH, I DON'T KNOW HOW WE MAKE
```

```
1    MONEY FROM ANDROID.  WE DON'T MAKE ANY MONEY FROM ANDROID.

2    OUR PURPOSE IN CREATING ANDROID WAS TO DELIGHT THE WORLD'S

3    CONSUMERS AND TO BRING THE INTERNET TO THE WORLD.  WITNESS

4    AFTER WITNESS, YOUR HONOR.

5        AND EVEN IF THEY WEREN'T FIGHTING THE FACT OF

6    COMMERCIALITY, THE THING ABOUT THE FAIR USE ANALYSIS IS THAT

7    IT IS A BALANCING ANALYSIS.  AND ON THE FIRST FACTOR, THERE

8    ARE TWO SEPARATE INQUIRIES.

9        AND FOR A MOMENT, YOUR HONOR, IF YOU WILL INDULGE ME, I

10   WILL TALK ABOUT INTRA FACTOR BALANCING, JUST BALANCING THE

11   DIFFERENT ASPECTS OF THE FIRST FACTOR.

12       THEY WANT TO COME AND SAY, WELL, THE CHARACTER OF THE USE

13   DOMINATES THE JURY'S INQUIRY.  IT'S TRANSFORMATIVE.  SUN

14   SCREWED UP.  THEY NEVER COULD HAVE MADE THIS.  WE WILL HAVE

15   LOTS OF EVIDENCE TO THE CONTRARY, BUT IN ANY EVENT, THEY WANT

16   TO SAY THE TRANSFORMATIVE NATURE SHOULD PREDOMINATE IN THE

17   JURY'S INTRA FACTOR BALANCING OF THE FIRST FACTOR.

18       WE WANT TO SAY, LOOK AT THE EXTRAORDINARY MAGNITUDE OF

19   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

20   IN PROFIT.  AND, FOR PURPOSES OF THIS VERY SPECIFIC

21   DISCUSSION, THE KNOWLEDGE THAT IT CANNOT BE EXCLUDED, CANNOT

22   BE LOCKED OUT FROM THE WORLD'S MOBILE CONSUMERS.

23       AND THAT'S WHAT WE ARE REALLY TALKING ABOUT HERE.  THIS

24   WAS A COMMERCIAL PURPOSE IN THE ABSOLUTELY TRADITIONAL SENSE

25   OF COMMERCIAL; DISTRIBUTION, YOUR HONOR.
```

1      BECAUSE GOOGLE IS AN ADVERTISING COMPANY.  IT'S NOT A JET

2    PACK COMPANY OR A SPACE ELEVATOR COMPANY OR A DRIVERLESS CAR

3    COMPANY.  IT SELLS ADVERTISING.  AND THE CONTENT IT DELIVERS

4    TO GET PEOPLE TO PARTICIPATE IN THAT ADVERTISING MARKET IS ITS

5    SEARCH SERVICES.  THERE ARE OTHERS, MAPS AND THE LIKE, BUT

6    PRIMARILY IT'S SEARCH SERVICES.  GOOGLE HAS TO BE ABLE TO

7    DELIVER THAT CONTENT TO SELL THE ADVERTISING.  THAT IS A CORE

8    COMMERCIAL PURPOSE OF GOOGLE.

9      AND WHAT ANDROID ENABLED IT TO DO AND WHAT THOSE 37 JAVA

10   API'S ENABLED IT TO DO, BECAUSE AS YOU WILL RECALL,

11   MR. LINDHOLM SAID SO SUCCINCTLY, THE ALTERNATIVES ALL SUCK.

12   WHAT THOSE 37 JAVA API'S ENABLED AT THAT SPECIFIC MOMENT IN

13   TIME WHEN IT WAS A SPACE RACE WITH APPLE WAS THE KNOWLEDGE

14   THAT THEY COULD NOT BE LOCKED OUT BY MICROSOFT, FACEBOOK,

15   YAHOO, AND APPLE, AND THAT THEY WOULD BE ABLE TO DELIVER THEIR

16   CORE BUSINESS, SEARCH SERVICES AND THE ADVERTISING ASSOCIATED

17   WITH IT.

18      THIS IS A COMPELLING COMMERCIAL PURPOSE.  IT IS NOT, WE

19   WANT TO DELIGHT THE WORLD'S USERS.  IT IS NOT, OH, WE'RE JUST

20   A TECHNOLOGY COMPANY, DON'T BE EVIL.  IT IS, WE ARE EARNING

21   BILLIONS AND BILLIONS AND BILLIONS OF DOLLARS AND WE DON'T

22   WANT TO PAY SUN AND LATER ORACLE A SINGLE PENNY OF THAT.

23   DESPITE THAT ENORMOUS COMMERCIAL PURPOSE, OH, LOOK, WE WERE

24   TRANSFORMATIVE, WE SHOULD WIN ON FAIR USE.

25      THE JURY IS ENTITLED TO MAKE THAT RELATIVE COMPARISON,

```
1    YOUR HONOR.

2              THE COURT:  WHAT PERIOD OF TIME IS COVERED BY YOUR

3    DISCOVERY REQUEST?

4              MS. HURST:  YOUR HONOR, IT IS NOT LIMITED ON ITS

5    FACE, BUT I WOULD LIMIT IT.  I WOULD OFFER TO LIMIT IT IN THE

6    FOLLOWING WAYS.

7         I WOULD OFFER TO LIMIT IT TO AGREEMENTS FOR THE PAYMENT,

8    REVENUE SHARING IS PROBABLY THE BETTER TERM HERE, PAYMENTS

9    ASSOCIATED WITH THE DISTRIBUTION OF GOOGLE'S SEARCH SERVICES

10   ON NON-ANDROID MOBILE PLATFORMS.

11        THAT IS MOST CONSISTENT WITH BOTH OUR FAIR USE AND OUR

12   TIMING WINDOW OF DAMAGES THEORIES AS THEY HAVE BEEN DEVELOPED

13   IN THE CASE.

14             THE COURT:  HOW DOES THAT TRANSLATE INTO A TEMPORAL

15   SCOPE.  AM I MISSING SOMETHING?

16             MS. HURST:  WELL, YOUR HONOR, THERE WERE MOBILE

17   PLATFORMS BEFORE ANDROID AND IOS.  SO IT WOULD GO ALL THE WAY

18   BACK TO WHATEVER THAT FIRST AGREEMENT WOULD BE WHERE THEY

19   MIGHT HAVE BEEN PAYING VERIZON TO GET A SEARCH APP ON A

20   VERIZON FEATURE PHONE.

21        I DON'T KNOW EXACTLY WHAT IT WOULD BE IN REALITY BASED ON

22   THAT REQUEST, BUT IT WOULD PROBABLY BE SOMETIME IN THE 2003 TO

23   2004 TIME PERIOD WOULD BE MY SUSPICION.

24             THE COURT:  WHY WOULD IT BE JUST FOR NON-MOBILE?  AM

25   I MISSING SOMETHING?
```

1          **MS. HURST:**  I SAID MOBILE NON-ANDROID, YOUR HONOR.

2          **THE COURT:**  THANK YOU.  MOBILE NON-ANDROID.  THAT

3     MAKES SENSE.

4        SO GOOGLE HAS OBJECTED ON A NUMBER OF GROUNDS.  ONE OF

5     THEM IS THAT ORACLE DOESN'T NEED INFORMATION ABOUT NON-MOBILE,

6     AND IT SOUNDS LIKE YOU AGREE WITH THAT.

7          **MS. HURST:**  I WILL, FOR PURPOSES OF GETTING THIS

8     DONE, YOUR HONOR, WE'LL LIMIT IT TO MOBILE.

9          **THE COURT:**  OKAY.  LET'S FOCUS ON TEMPORAL SCOPE.

10    AND LET'S TALK ABOUT THE HYPOTHETICAL LICENSE.  WHY DOES

11    ORACLE NEED ANYTHING AFTER 2006?

12         **MS. HURST:**  WELL, YOUR HONOR, THIS IS NOT A PATENT

13    CASE.  SO THAT'S THE FIRST THING I WANT TO SAY.  AND I WANT TO

14    SAY IT VERY STRONGLY.  THIS IS NOT A REASONABLE ROYALTY

15    HYPOTHETICAL NEGOTIATION.  IT IS A FAIR MARKET VALUATION.

16       AND A FAIR MARKET VALUATION IS NOT CONDUCTED BY, AS IN THE

17    REASONABLE ROYALTY ANALYSIS OF PATENT, PICKING SOME BENCHMARK

18    THAT'S AT A SPECIFIC POINT IN TIME WHEN THE INFRINGEMENT

19    ENSUES AND THEN, YOU KNOW, DEVIATING FROM THAT SPECIFIC

20    BENCHMARK BASED ON 22 *GEORGIA-PACIFIC* FACTORS.  THAT'S NOT

21    SUPPOSED TO BE WHAT HAPPENS HERE.

22       INSTEAD, THE FAIR MARKET VALUATION CONSIDERS BOTH THE

23    VALUE OF THE COPYRIGHTED WORK AND THE VALUE OF THE USE.  AND

24    THE VALUE OF THE USE, YOUR HONOR, STRETCHES OUT OVER TIME.

25    THAT, AND IT IS ALLOWED TO, WHEN YOU'RE DOING A FAIR MARKET

```
 1    VALUATION, CONSIDER VALUATION OVER TIME.

 2            THE COURT:  ARE YOU SAYING THAT THERE WILL BE NO

 3    HYPOTHETICAL NEGOTIATION OF A LICENSE?  THIS IS AN ENTIRELY

 4    DIFFERENT --

 5            MS. HURST:  THAT IS WHAT I AM SAYING, YOUR HONOR,

 6    YES.

 7            THE COURT:  WHAT AUTHORITIES ARE YOU USING TO --

 8                    (SIMULTANEOUS COLLOQUY.)

 9            MS. HURST:  YOUR HONOR, I WOULD SAY THE *SAP* AND

10    *ORACLE* CASE IN THE NINTH CIRCUIT.  THE *K2* AND *JARVIS* CASE IS

11    PROBABLY THE ONE BEFORE *ORACLE* AND *SAP* THAT IS THE BEST

12    ARTICULATION OF THIS.  IT TALKS ABOUT THE OBJECTIVE NATURE OF

13    THE FAIR MARKET VALUATION APPROACH AND HOW IT LOOKED AT A LOT

14    OF OTHER AGREEMENTS BETWEEN THE PARTIES AND OTHER AGREEMENTS

15    THAT THE PLAINTIFF HAD IN THE INDUSTRY AT VARIOUS TIMES.

16        YOUR HONOR, IT'S KIND OF LIKE A REAL ESTATE THING IN A

17    CERTAIN WAY.  YOU PICK A WHOLE BUNCH OF COMPS AND YOU CAN ALSO

18    LOOK AT STRUCTURES OF TRANSACTIONS LIKE IS THIS LIKE A

19    SUBLICENSING APPROACH AND WHAT ARE THE PERCENTAGES ASSOCIATED

20    WITH THIS.

21        THERE ARE A VARIETY OF DIFFERENT WAYS OF GOING AT FAIR

22    MARKET VALUATION.  IT IS NOT THE SAME THING AS A PATENT

23    REASONABLE ROYALTY *GEORGIA-PACIFIC* ANALYSIS.

24            THE COURT:  YOUR CLIENT'S VALUATION WILL THEN NOT

25    FOCUS ON A PARTICULAR POINT IN TIME.  IS THAT FAIR TO SAY?
```

1          **MS. HURST:**  YOUR HONOR, SO WE DON'T HAVE THIS DATA.

2     AND TO DATE, YOU KNOW, OUR DAMAGES EXPERT HAS NOT YET OFFERED

3     A HYPOTHETICAL LICENSE APPROACH BECAUSE THEY DON'T WANT TO

4     FINALIZE AN ANALYSIS UNTIL THEY HAVE ALL THE DATA.

5          AND THAT'S PART OF THE PROBLEM WITH THE FAIR MARKET

6     VALUATION IS THAT IT'S DIFFICULT TO DECIDE WHAT'S THE BEST

7     APPROACH UNTIL YOU HAVE ALL THE DATA.

8          SO WE ARE KIND OF STUCK IN LIMBO RIGHT NOW.  I DON'T WANT

9     TO REPRESENT TO THE COURT SOMETHING MORE THAT'S GOING TO

10    HAPPEN IN TRUTH WHEN I DON'T KNOW THE ANSWER TO THAT, BUT THAT

11    IS THE EXPECTED APPROACH.  IT'S TO -- THEY ARE LOOKING AT

12    SUBLICENSING APPROACHES.  THEY ARE LOOKING AT RELATIVE

13    PLATFORM VALUATION APPROACHES.

14         I WOULD SAY THIS TO DISTILL IT DOWN, YOUR HONOR.  THE

15    HYPOTHETICAL LICENSE AND COPYRIGHT AS A FAIR MARKET VALUE

16    APPROACH IS PROBABLY MORE APPROXIMATE TO THE APPORTIONMENT

17    PIECE OF THE PROFITS THAN IT IS TO WHAT YOU WOULD THINK OF IN

18    A PATENT CASE.

19         **THE COURT:**  OKAY.

20         IF I AM HEARING YOU CORRECTLY, I THINK -- WELL, LET ME PUT

21    THIS IN CONTEXT.  GOOGLE IS OBJECTING TO THIS, TO ANYTHING

22    PAST 2006 BECAUSE THEY ARE ARGUING THAT FOR VALUATION, YOU

23    LOOK ONLY AT THE -- WHAT A NEGOTIATION WOULD HAVE LOOKED LIKE

24    AT THE TIME THE INFRINGEMENT BEGAN.

25         **MS. HURST:**  RIGHT.

```
1            THE COURT:  I THINK WHAT YOU'RE SAYING, MS. HURST, IS

2    YOUR CLIENT'S EXPERTS ARE LOOKING AT A NUMBER OF THINGS, AND

3    YOU MAY PROPOSE DIFFERENT MODELS TO GET AT DIFFERENT PARTS OF

4    THE VALUATION.  SOME MIGHT BE CENTERED ON A HYPOTHETICAL

5    NEGOTIATION MODEL AND SOME MIGHT BE CENTERED ON SOMETHING

6    ELSE.  IS THAT WHAT YOU'RE SAYING?

7            MS. HURST:  YES, YOUR HONOR.  AND THE SOMETHING ELSE

8    IS REALLY THE VALUE OF THE USE, TO BE REALLY SHARP FOR THE

9    COURT.  IT'S THE VALUE OF THE USE, WHICH IS -- YOU KNOW, I

10   DON'T WANT TO GET INTO AN EXTENDED PATENT ANALOGY BECAUSE I AM

11   THE ONE SAYING IT DOESN'T APPLY.  BUT IF WE HAD TO PICK

12   SOMETHING, IT WOULD BE MORE LIKE "THE BOOK OF WISDOM", LIKE

13   WHAT REALLY HAPPENED.  RIGHT?

14       AND THE VALUE OF THE USE IS SUPPORTED AS AN ELEMENT BY THE

15   CASES THAT I'VE DESCRIBED AND ALSO BY THE FORM JURY

16   INSTRUCTION ON ACTUAL DAMAGES IN THE NINTH CIRCUIT JURY

17   INSTRUCTIONS, YOUR HONOR.  THE ONE ON, YOU KNOW, USING LICENSE

18   VALUE TO CALCULATE ACTUAL DAMAGES.

19       LET ME JUST PAUSE THERE FOR A MOMENT AND SAY THIS IS --

20   IT'S A THEORY OF ACTUAL DAMAGES.  IT'S NOT A THEORY OF A

21   STATUTORY MINIMUM THE WAY REASONABLE ROYALTY IS.  RIGHT?  SO

22   THERE'S JUST A DIFFERENT CONGRESSIONAL FRAMEWORK THERE THAT WE

23   ARE DEALING WITH.  RIGHT?  AND COPYRIGHT, THE STATUTORY

24   MINIMUM IS STATUTORY DAMAGES.  IT'S THAT RANGE THAT WE ALL

25   KNOW ABOUT.  THAT'S THE COMPARABLE ANALYSIS TO REASONABLE
```

```
1    ROYALTY.

2        WHAT WE HAVE HERE IS A THEORY OF ACTUAL DAMAGES, WHICH IS,

3    IN EFFECT, A CONSTRUCTIVE LICENSE.  AND THAT IS VALUED NOT

4    JUST ON THIS GEORGIA-PACIFIC APPROACH, BUT ALSO THE VALUE OF

5    THE USE.  AND THAT PHRASE "THE VALUE OF THE USE" IS USED IN

6    THE FORM INSTRUCTION AS WELL, YOUR HONOR.  THE NUMBER OF WHICH

7    I AM NOT REMEMBERING RIGHT NOW.  IT'S EITHER 17 -- 1728, MAYBE

8    1733.

9            THE COURT:  OKAY.  THANK YOU.  THAT'S ALL I HAVE GOT

10   RIGHT AT THE MOMENT.  LET ME TURN TO GOOGLE.

11           MS. HURST:  MAY I?

12           THE COURT:  YES.

13           MS. HURST:  THANK YOU, YOUR HONOR.

14           THE COURT:  ALTHOUGH, IF THINGS GET GOING, I'M GOING

15   TO ASK --

16           MS. HURST:  YOU KNOW WHAT?  THEN I WILL JUST STAY UP

17   HERE THEN, YOUR HONOR.  I WILL STAY RIGHT UP HERE, YOUR HONOR.

18   THANK YOU.

19           THE COURT:  IT'S A LOT EASIER FOR OUR COURT REPORTER

20   AND, FRANKLY, I CAN HEAR YOU BETTER AS WELL.

21       OKAY.  MR. VAN NEST.

22           MR. VAN NEST:  THANK YOU, YOUR HONOR.

23           THE COURT:  THE ARGUMENTS IN GOOGLE'S PART OF THE

24   LETTER SEEM TO LOOK AT PROBLEMS WITH CAUSAL LINK, WHICH I

25   THINK IS NOT BEFORE ME AT THE MOMENT.  THAT'S GOING TO COME UP
```

```
1    IN A DAUBERT MOTION.  WE ARE REALLY LOOKING AT DISCOVERY AIMED

2    AT DEVELOPING THIS CONTROL MODEL AND THE VALUE OF CONTROL TO

3    ANDROID.  WHY --

4              MR. VAN NEST:  HERE'S --

5              THE COURT:  ARE YOU ARGUING THAT ORACLE HAS TO PROVE

6    THAT IT'S GOING TO HAVE A SUFFICIENT CAUSAL LINK AND KIND OF

7    ALLOCATION AND CAUSATION THEORIES BEFORE THEY GET TO

8    DISCOVERY?

9              MR. VAN NEST:  NO.  NO, YOUR HONOR.  NOT AT ALL.  I

10   APPRECIATE THE CHANCE TO APPEAR BEFORE YOU TODAY.

11        THE ARGUMENTS I HEARD FROM COUNSEL, OF COURSE, ARE VERY

12   DIFFERENT THAN WHAT WAS IN THEIR PAPERS AND VERY DIFFERENT

13   FROM WHAT'S IN THEIR EXPERT REPORT.  SO I WANT TO FRAME UP

14   WHAT WE THINK IS WRONG HERE.

15        THEIR BASIC ARGUMENT IN THE LETTER THEY SENT YOU WAS THAT

16   WE NEED THIS FOR THE HYPOTHETICAL NEGOTIATION.  AND, OF

17   COURSE, YOU ALREADY STRESSED OUT THAT THIS AGREEMENT IS LATER

18   IN TIME.  THE HYPOTHETICAL NEGOTIATION WAS IN '06, '07.

19        THEY HAVE ABANDONED THAT IN THEIR EXPERT REPORT.  THEY ARE

20   NO LONGER SEEKING TO PROVE DAMAGES BASED ON A HYPOTHETICAL

21   LICENSE.  SO THAT'S OUT.

22              THE COURT:  CAN I JUST STOP YOU FOR A MOMENT?

23              MR. VAN NEST:  YEAH.

24              THE COURT:  DOES THAT MEAN THAT SINCE YOU FILED THE

25   JOINT LETTER, THERE'S ALREADY BEEN AN EXPERT REPORT?
```

1          **MR. VAN NEST:**  YES, THERE WAS.  IT WAS FILED ON

2     JANUARY 8TH.  JUST LAST WEEK.

3          SO IN THEIR EXPERT REPORT, YOUR HONOR, THERE ARE TWO

4     THEORIES OF DAMAGES.  ONE IS LOST PROFITS.  LOST PROFITS THEY

5     SAY, WELL, WE WERE GOING TO LICENSE JAVA, AND WE HAD ALL THESE

6     GREAT PROJECTIONS, AND THEN ANDROID CAME ALONG, AND BOOM, WE

7     DIDN'T HIT OUR PROJECTIONS SO THAT MUST BE ANDROID'S FAULT.

8          THEY ARE NOT SEEKING TO TIE THIS DISCOVERY TO THAT.  IT'S

9     NOT RELEVANT TO THAT.  IT HAS NOTHING TO DO WITH THAT.  SO AS

10    TO THAT THEORY THAT'S -- THERE'S NO QUESTION THESE ARE OUTSIDE

11    OF THAT.  AND SO THEY ARE LOOKING AT THE SECOND THEORY.

12         THE SECOND THEORY IS DISGORGEMENT.  NOW, ON DISGORGEMENT,

13    THEY SAY, WELL, WE ARE ENTITLED TO THE ENTIRETY OF THE ANDROID

14    REVENUES MINUS THE COST, AND THEY DON'T DO AN APPORTIONMENT,

15    THEY ARE WAITING FOR US TO DO THAT.

16         THEY HAVE NEVER BEFORE ARGUED THAT THIS INFORMATION THEY

17    WANT NOW IS RELEVANT TO APPORTIONMENT.  THAT'S BRAND NEW

18    TODAY.  NOT IN THE PAPERS, NOT ANYWHERE ELSE.

19         WHY IS THAT NUTS?  BECAUSE WHAT THEY ARE ASKING FOR IS NOT

20    THE REVENUES THAT WE EARNED FROM THE APPLE RELATIONSHIP, THEY

21    HAVE THAT.  IT'S NOT THE NATURE OF THAT AGREEMENT.  THEY KNOW

22    THAT.  THEY ARE ASKING FOR THE SPECIFIC TERMS OF THE

23    APPLE/GOOGLE AGREEMENT.  BUT, OF COURSE, THE APPLE/GOOGLE

24    AGREEMENT HAS NOTHING TO DO WITH ANDROID.  IT HAS NOTHING TO

25    DO WITH THE JAVA API'S.  THE APPLE PLATFORM IS NOT A JAVA

```
1    PLATFORM.  THE 37 JAVA API'S HAVE NOTHING TO DO WITH OUR APPLE

2    AGREEMENT.  THAT APPLE/GOOGLE AGREEMENT HAS NOTHING TO DO WITH

3    ANDROID.

4            THE COURT:  I UNDERSTAND THAT.

5            MR. VAN NEST:  THAT'S THE --

6            THE COURT:  WHAT MS. HURST EXPLAINED IS THAT THIS

7    INFORMATION IS GOING TO PROVIDE A COMPARISON POINT.

8        SO SHE'S -- HER CLIENT IS GOING TO DERIVE VALUE BY LOOKING

9    AT WHAT GOOGLE HAD TO PAY WHEN IT WASN'T IN CONTROL.

10           MR. VAN NEST:  WHAT SHE'S ASKING IN HER MOTION IS THE

11   SPECIFIC TERMS OF THE APPLE/GOOGLE AGREEMENT AND OTHER

12   NON-ANDROID DISTRIBUTION AGREEMENTS.  THAT'S WHAT WE ARE

13   OBJECTING TO.

14       SHE KNOWS WHAT WE PAID BECAUSE I'VE GOT A HANDFUL OF

15   DOCUMENTS THAT SHOW THAT.  SHE KNOWS WHAT THE DEAL IS.  OUR

16   30(B)(6) WITNESS OUTLINED THE REVENUE SHARING PERCENTAGE.  SHE

17   HAS A DOCUMENT WHICH WE PRODUCED WHICH HAS THE MONTHLY

18   REVENUES OFF THIS DEAL EVERY MONTH FROM JANUARY 2008 FORWARD.

19       AND WE ARE NOT OBJECTING TO GIVING THEM FINANCIAL

20   INFORMATION.  WE HAVE DONE THAT.

21       WHAT SHE'S ASKING AND WHAT WE ARE OBJECTING TO IS SHE

22   WANTS THE AGREEMENT ITSELF, ALL THESE AGREEMENTS WHICH ARE

23   HIGHLY SENSITIVE, AND SHE WANTS ALL THE AGREEMENTS AND SHE

24   WANTS A DISCUSSION OF ALL OF THE TERMS IN ALL OF THE

25   AGREEMENTS.
```

1    WHAT SHE ALREADY HAS -- IF WHAT SHE WANTS TO SAY IS THIS

2    GENERAL ATMOSPHERIC POINT THAT THE PLATFORM IS VALUABLE AND

3    THAT SHOULD BE FACTORED INTO APPORTIONMENT, SHE HAS EVERYTHING

4    SHE NEEDS TO DO THAT.  SHE KNOWS WHAT PERCENTAGE OF THE

5    REVENUE IS SHARED.  SHE KNOWS WHAT THE TOTAL REVENUES WERE.

6    SHE KNOWS THAT FROM 2008, AND PROBABLY EARLIER FORWARD.  SHE

7    HAS DOCUMENT AFTER DOCUMENT WHERE WE DISCUSS OUR RELATIONSHIP

8    WITH APPLE, AND THE REVENUES THAT FLOW FROM THAT, THE SHARING

9    THAT FLOWS FROM THAT, THE STRATEGY OF THAT, THE MONTHLY

10   REVENUES FROM THAT.  AND WE'RE NOT OBJECTING TO PROVIDING IT.

11   WE HAVE ALREADY DONE THAT.

12   WHAT SHE'S NOW ASKING IS NOT LOGICALLY RELATED TO WHAT SHE

13   SAYS SHE WANTS TO PROVE.  SHE WANTS TO PROVE THAT THE PLATFORM

14   WAS VALUABLE.  NOW, WE MAY DISPUTE THAT.  BECAUSE, OF COURSE,

15   THIS PLATFORM AT APPLE IS A VERY DIFFERENT FROM AN ANDROID

16   PLATFORM, BUT OKAY.

17   IF SHE'S TRYING TO PROVE SOME GENERIC CONCEPT OF PLATFORM

18   VALUE, OKAY FINE.  SHE HAS MORE THAN ENOUGH INFORMATION RIGHT

19   NOW TO DO THAT AND SHE HAS TWO MORE DEPOSITIONS COMING UP AT

20   THE END OF THIS MONTH FROM ADDITIONAL FINANCIAL AND

21   RELATIONSHIP FOLKS WHERE SHE CAN PRESUMABLY ASK MORE ABOUT IT.

22   WHAT WE ARE OBJECTING TO IS SPECIFIC.  WE OBJECT TO

23   TURNING THE AGREEMENTS OVER.  WE DON'T WANT TO GET INTO FIGHTS

24   WITH APPLE OR ANYBODY ELSE.  THEY'LL BE IN HERE SEEKING A

25   PROTECTIVE ORDER.  THEY'LL BE IN HERE -- BECAUSE THEY HAVE

```
1    RIGHTS UNDER THESE AGREEMENTS TOO.  IT'S CONFIDENTIAL FROM

2    THEIR STANDPOINT AND GOOGLE'S.  IT'S THE TERMS OF THESE

3    AGREEMENTS.  AND THEY HAVE NOTHING TO DO WITH ANY ARGUMENT

4    SHE'S ARTICULATED.

5         THE COURT:  OKAY.  MS. HURST, A COUPLE OF THINGS.

6         FIRST OF ALL, I DIDN'T REALIZE THERE WAS AN INTERVENING

7    EXPERT REPORT.  I KNOW IT'S NOT FILED.  I'M NOT ASKING THAT

8    YOU PROVIDE IT, AT LEAST AT THIS POINT.

9         BUT I WILL SAY THAT IN THE JOINT LETTER, ORACLE WAS REALLY

10   FOCUSING ON THE NOTION OF THE HYPOTHETICAL LICENSE.  IS IT

11   TRUE THAT THAT'S NOT REALLY PART OF THE EXPERT REPORT THAT WAS

12   FILED LAST WEEK?

13        MS. HURST:  YOUR HONOR, IT'S TRUE BECAUSE WE DON'T

14   HAVE THE DATA TO DO IT.  AND THIS MOTION IS PART OF THAT.  AND

15   THE OTHER PENDING MOTION AND THE ADDITIONAL DISCOVERY IS ALL

16   PART OF THAT.

17        FURTHERMORE, YOUR HONOR, THEY HAVE NOT IN ANY WAY

18   REPRESENTED THAT THEY ARE GOING TO EXCLUDE HYPOTHETICAL

19   LICENSE AS PART OF THEIR REBUTTAL DAMAGES REPORT.

20        THE COURT:  OKAY.

21        MS. HURST:  SO WE HAVE TWO DIFFERENT PROBLEMS HERE.

22   IF I MIGHT ADDRESS SOME OF THE ASSERTIONS ABOUT WHATEVER --

23        THE COURT:  HOLD ON.

24        MR. VAN NEST:  MAY I RESPOND BRIEFLY TO THAT?

25        THE COURT:  NO.  HOLD ON.
```

```
1          WE HAVE A COURT REPORTER.  I HAVE TO MAKE SURE THAT I'M

2     BEING A GOOD TRAFFIC COP HERE BECAUSE HER JOB IS HARD ENOUGH

3     AS IT IS.

4          WHAT I WANT TO HEAR, MS. HURST, IS WHY YOUR CLIENT NEEDS

5     THE GRANULAR DATA.

6          MS. HURST:  YOUR HONOR, WE MADE AN OFFER THAT WOULD

7     HAVE OBVIATED THE NEED FOR GRANULAR DATA.  WHAT WE SAID WE

8     NEEDED WAS THE COMMERCIAL TERMS OF THE AGREEMENT.

9          AND THAT WE DO NOT, ABSOLUTELY DO NOT HAVE IN ANY

10    ADMISSIBLE FORM.  BECAUSE WE HAVE ASKED WITNESS AFTER WITNESS

11    ABOUT IT, AND THEY HAVE BEEN UNABLE TO SAY.  THAT WAS THE

12    TOPIC 5 OF THE 30(B)(6) DEPOSITION.  WE ASKED OTHERS TOO IN

13    CASE WE HIT UPON SOMEBODY WHO KNEW.

14         WHAT I MEAN BY THE COMMERCIAL TERMS IS, WHAT DOES IT

15    COVER?  LIKE IF IT WAS A LICENSE, YOUR HONOR, WHAT WAS THE

16    LICENSE TECHNOLOGY.  RIGHT?  WHAT DOES IT COVER AND WHAT ARE

17    THE ECONOMIC TERMS THAT ARE AGREED WITH ASSOCIATED WITH THAT.

18         WE DON'T HAVE ANY -- WE DON'T HAVE IN ANY ADMISSIBLE FORM

19    THAT I'M AWARE OF, AND THIS IS THE FIRST I'VE HEARD OF THE

20    ASSERTION OF DOCUMENTS PRODUCED SHOWING WHAT THE EXACT SHARING

21    PERCENTAGE OF REVENUES.  I'VE CHECKED WITH MY TEAM; THEY DON'T

22    KNOW WHAT THEY ARE TALKING ABOUT NOW.

23         THE KEKER TEAM HAS BEEN PRODUCING DOCUMENTS UP UNTIL LAST

24    NIGHT.  SO IF SOMETHING NEW HAS CAME IN, I AM UNAWARE OF IT.

25         BUT PUTTING THAT ASIDE, YOUR HONOR, WE ABSOLUTELY DON'T
```

1      HAVE THAT IN AN ADMISSIBLE FORM.

2              **THE COURT:**  ALL RIGHT.

3              **MS. HURST:**  SO WHEN I WAS GIVING YOU THE ANALOGY

4      ABOUT, YOU KNOW, IF IT'S $2 ON AN $8 DEVICE, WE DON'T HAVE

5      THAT.

6              **THE COURT:**  OKAY.  THAT'S WHAT I WANTED TO HEAR.

7              **MR. VAN NEST:**  THAT'S NOT TRUE.  THAT'S ABSOLUTELY

8      NOT TRUE.

9          OUR 30(B)(6) ON FINANCIAL INFORMATION TOLD THEM WHAT THE

10     REVENUE SHARE PERCENTAGE WAS POINT BLANK.  I HAVE THE

11     TESTIMONY.

12             **THE COURT:**  REVENUE SHARE AS A PERCENTAGE OF?

13             **MR. VAN NEST:**  OF THE -- THE APPLE SHARE AS A

14     PERCENTAGE OF THE TOTAL REVENUE.  THAT WAS STATED IN A

15     30(B)(6) DEPOSITION BY OUR, ONE OF OUR FINANCIAL WITNESSES.

16     SO THEY HAVE THAT.

17         WHAT I WOULD LIKE TO SAY TOO, YOUR HONOR, MAYBE YOU SHOULD

18     TAKE A LOOK AT MALAKOWSKI (PHONETIC).  HE NEVER EVEN PRETENDS

19     TO DO A HYPOTHETICAL LICENSE.  HE NEVER SAYS THAT HE NEEDS

20     THIS FOR THAT PURPOSE.  HE SAYS HE NEEDS IT -- HE ACTUALLY

21     DISCUSSES THE APPLE IN THESE OTHER NON-ANDROID AGREEMENTS, AND

22     HE SAYS HE NEEDS THEM FOR A PURPOSE TOTALLY DIFFERENT FROM

23     ANYTHING THAT MS. HURST SAID THIS MORNING.  HE DOESN'T SAY

24     ANYTHING ABOUT APPORTIONMENT.  HE DOESN'T SAY ANYTHING ABOUT

25     COMMERCIAL USE.  WHAT HE TALKS ABOUT IS ESTABLISHING A NEXUS

1    BETWEEN MOBILE PLATFORM CONTROL AND ADVERTISING REVENUES.

2    OKAY?  THAT'S WHAT HE'S TALKING ABOUT.

3        THE REASON HE'S NEVER GOING TO DO A HYPOTHETICAL LICENSE

4    ANALYSIS IS THAT JUDGE ALSUP TOLD 'EM LAST TIME, IF THEY WANT

5    TO DO THAT THEY HAVE TO START AT A HUNDRED MILLION.  AND THEY

6    ARE NOT SATISFIED WITH THAT STARTING POINT.  HE SAID EVEN

7    THOUGH THE LAST GOOGLE OFFER WAS 28 MILLION, HE WANTS THEM TO

8    START OR SUGGEST THEY START AT A HUNDRED.  AND THEY WANT

9    BILLIONS, NOT HUNDREDS OF MILLIONS.

10       THERE IS NOTHING IN THIS REPORT ABOUT ANY HYPOTHETICAL

11   LICENSE AND THERE'S NOTHING IN WHICH MALAKOWSKI SAYS THAT HE

12   NEEDS THIS FOR HYPOTHETICAL LICENSE.  HE'S SIMPLY NOT DOING

13   IT.

14            **THE COURT:**  OKAY.  LET'S NOT FOCUS ON THAT RIGHT AT

15   THIS MOMENT.

16       LET'S LOOK AT WHAT MS. HURST SAID SHE NEEDS IT FOR, WHICH

17   IS TO MAKE A COMPARISON BETWEEN THE REVENUES THAT GOOGLE COULD

18   MAKE THROUGH ANDROID PLATFORM VERSUS THE REVENUE IT HAD TO

19   SHARE WHEN IT WAS USING NON-ANDROID PLATFORM.

20       MAYBE I'M NOT SAYING THAT RIGHT.  LET ME ASK YOU TO SAY

21   IT.  WHAT IS THE EQUATION WE WANT TO PLUG INTO.

22            **MS. HURST:**  THE VALUE THAT THE PLATFORM PLAYS IN

23   GENERATING THE ADVERTISING AND OTHER ASSOCIATED REVENUE.

24            **THE COURT:**  WHAT ARE THE DATA INPUTS YOU NEED TO GET

25   TO THAT?

22

```
1            MS. HURST:  WELL, THE ONES THAT WE ARE ASKING FOR FOR

2    PURPOSES OF TODAY, AND THERE ARE OTHERS AS WELL THAT WE HAVE

3    BEEN ASKING FOR, AND WE HAVE ACQUIRED SOME, AND THERE ARE MORE

4    DEPOSITIONS COMING, AS MR. VAN NEST POINTED OUT, IS THE

5    REVENUE SHARING AND EXACTLY WHAT IT COVERS.

6            AND LET ME GIVE AN EXAMPLE OF SOME DIFFERENCES THAT WE

7    HAVE SEEN ON WHAT THE KIND OF REVENUE SHARING AGREEMENTS THAT

8    THEY HAVE MIGHT COVER.  IT MIGHT COVER, FOR EXAMPLE, AN APP

9    DEVELOPER GETS 70 PERCENT OF THE REVENUE ON ITS APP IN A STORE

10   AND GOOGLE TAKES 30 PERCENT.

11           IT MIGHT COVER A WIRELESS CARRIER, YOU KNOW, JUST THE

12   NETWORK, AND THEY AGREED TO SHARE A CERTAIN PERCENTAGE OF

13   REVENUES WITH WIRELESS CARRIERS.

14           THERE'S ALL SORTS OF DIFFERENT WAYS THEY HAVE AGREED TO

15   SHARE REVENUES AND WHAT THAT COVERS.  IT MIGHT COVER AN

16   APPLICATION.  IT MIGHT COVER THE CARRIER AGREEING TO RUN THEIR

17   PHONES ON ITS NETWORK.  IT MIGHT COVER WHAT'S CALLED A SEARCH

18   ENTRY POINT.  SO IF THE COURT'S FAMILIAR AT ALL WITH AN IOS

19   DEVICE, YOU CAN SWIPE DOWN ON THE HOME SCREEN WITH YOUR THUMB

20   AND GET A SEARCH BOX THERE.  IT MIGHT COVER SEARCH BOXES.  IT

21   MIGHT COVER APPS.  IT MIGHT BE THE GOOGLE SEARCH APP OR THE

22   GOOGLE MAPS APP.

23           THESE ARE ALL THE DIFFERENT THINGS THAT THESE AGREEMENTS

24   COVER.  AND WE JUST NEED TO KNOW WHAT IT'S COVERING WHEN THEY

25   ARE AGREEING TO SHARE REVENUE BECAUSE THAT INFORMS THE
```

```
1    ANALYSIS OF HOW RELEVANT IT IS TO THE PLATFORM VERSUS OTHER

2    THINGS.  AND SO --

3          THE COURT:  CAN YOU NARROW YOUR REQUEST SO THAT IT'S

4    EXCLUDING CERTAIN KINDS OF AGREEMENTS?

5          MS. HURST:  WELL, WE'VE EXCLUDED NON-MOBILE AND WE'VE

6    EXCLUDED, YOU KNOW, THE ORIGINAL SCOPE OF RFP FOR DISCUSSIONS

7    AND, YOU KNOW, THINGS THAT AREN'T AN ACTUAL AGREEMENT.  I'M

8    NOT SURE I CAN GO MUCH FURTHER THAN THAT, YOUR HONOR.

9       I MEAN, IT'S FOR THE DISTRIBUTION OF SEARCH, OBVIOUSLY.

10   IT'S NOT JUST ANY OLD AGREEMENT.

11         THE COURT:  DO YOU NEED TO KNOW WHO GOOGLE'S

12   CONTRACTING WITH?

13         MS. HURST:  I MEAN IF IT'S A PLATFORM PROVIDER, IT'S

14   OBVIOUSLY MUCH MORE RELEVANT.

15         THE COURT:  WHAT IF --

16         MS. HURST:  AND I THINK THAT'S THE WAY WE ASKED IT,

17   IT WAS NON-ANDROID OPERATING SYSTEMS.  SO THAT'S PROBABLY

18   PRETTY LIMITED TO BEGIN WITH.

19      I DON'T IMAGINE THERE ARE SO MANY AGREEMENTS FOR

20   DISTRIBUTION ON NON-MOBILE.  NOW WE HAVE LIMITED IT TO MOBILE

21   NON-ANDROID OPERATING SYSTEMS PLATFORMS ECOSYSTEMS.  THERE

22   PROBABLY AREN'T THAT MANY OPTIONS FOR THAT.

23         THE COURT:  YOU'RE LIMITING IT NOW TO MOBILE

24   NON-ANDROID PLATFORM PROVIDERS.

25         MS. HURST:  YEAH.  THAT'S ESSENTIALLY WHAT THE
```

```
 1    REQUEST WAS EXCEPT FOR THE MOBILE PIECE.

 2            THE COURT:  WITHIN THAT WORLD, DO YOU NEED TO KNOW

 3    WHO THE THIRD PARTY IS?

 4            MS. HURST:  YOU KNOW, YOUR HONOR, AS LONG AS GOOGLE'S

 5    NOT GOING TO ARGUE THAT IT'S NOT COMPARABLE FOR SOME REASON

 6    RELATED TO THE IDENTITY OF THAT PARTY, THEN WE COULD PROBABLY

 7    GET AWAY WITH SAYING, OKAY, HERE WAS THE TERM.  IT COVERED

 8    THIS.  THEY GOT -- THIS WAS THE REVENUE SPLIT.  AND HERE'S HOW

 9    MUCH REVENUE THERE WAS AND HERE'S HOW MUCH WAS PAID.  IN OTHER

10    WORDS, A CHART, IF THE COURT'S DIRECTING -- MOVING ME IN THAT

11    DIRECTION.

12            THE COURT:  MR. VAN NEST?

13        MR. VAN NEST:  WHAT I'M HAVING TROUBLE WITH -- I

14    APPRECIATE YOUR HONOR'S EFFORT TO NARROW THIS.  IT'S FAR

15    NARROWER THAN WE HAVE BEEN TOLD EARLIER.

16            THE COURT:  BEFORE YOU LAUNCH, LET ME JUST SAY, WHAT

17    I'M HEARING IS THAT THE INFORMATION PROVIDED BY GOOGLE TO DATE

18    DOESN'T REALLY GET AT WHAT THEY NEED FOR THE DAMAGE ANALYSIS

19    BECAUSE IT'S -- THE INFORMATION PROVIDED IS IN A TOO GENERAL A

20    FORM, AND MAYBE SUBJECT TO HAIR SPLITTING AT TRIAL.

21        SO SOUNDS LIKE THEY MAY NEED SOME MORE DETAILED

22    INFORMATION, BUT MAYBE WE CAN GET THERE WITHOUT COMPROMISING

23    GOOGLE OR ITS THIRD-PARTY CONTRACTUAL PARTNER'S PRIVACY.

24            MR. VAN NEST:  MAYBE WE CAN.  AND IF WHAT WE ARE NOW

25    TALKING ABOUT IS FINANCIAL INFORMATION RATHER THAN SPECIFIC
```

1    DEAL TERMS, I WOULD BE WILLING TO DISCUSS THAT WITH THE

2    CLIENT.  THAT'S WHAT I SEEM TO BE HEARING.

3           **THE COURT:**  WHAT SHE WANTS IS FOR EACH CONTRACT, WHAT

4    TECHNOLOGY IS COVERED AND WHAT ARE THE ECONOMIC TERMS COVERED

5    BY IT.  SO --

6           **MR. VAN NEST:**  THAT'S DIFFERENT.  RIGHT?  THAT'S VERY

7    DIFFERENT.

8        WHAT I'M SAYING IS, FIRST OF ALL, THIS APPORTIONMENT

9    ARGUMENT IS BRAND NEW.  NEVER BEEN MADE BEFORE IN ALL OF OUR

10   DISCUSSIONS.

11          **THE COURT:**  OKAY.  BUT --

12          **MR. VAN NEST:**  LET ME REACT TO IT.

13       IF IT'S ABOUT APPORTIONMENT, THEN I'M NOT SURE -- WHAT'S

14   AT ISSUE IN THE CASE IS THE VALUE OF THE 37 API'S, AND THE

15   CAUSAL LINK BETWEEN THEM AND ANY GOOGLE REVENUES.

16       GOOGLE SEARCH IS NOT ACCUSED OF INFRINGEMENT.  GOOGLE ADS

17   ARE NOT ACCUSED OF INFRINGEMENT.  THOSE ARE DIFFERENT PRODUCTS

18   THAT ARE MADE AVAILABLE ON A VARIETY OF PLATFORMS, MOBILE AND

19   NON-MOBILE, AND WHY THAT WOULD BE SOMETHING COMPARABLE.  TO

20   ME, THEY HAVE ALL THE INFORMATION ABOUT WHAT HAPPENS WITH

21   ANDROID AND THE VARIOUS WAYS -- THE VARIOUS AGREEMENTS AND

22   REVENUES THAT FLOW FROM ANDROID.

23       WHY THEY WOULD BE ABLE TO USE WHAT WE DO WITH GOOGLE

24   SEARCH, WHICH IS A DIFFERENT PRODUCT NOT ACCUSED OF

25   INFRINGEMENT, OR WHAT WE DO WITH GOOGLE ADS, WHICH IS A

```
 1    DIFFERENT PRODUCT NOT ACCUSED OF INFRINGEMENT, TO ME, EVEN

 2    HEARING IT FOR THE FIRST TIME, IT MAKES ABSOLUTELY NO SENSE.

 3         THE COURT:  THAT'S DAUBERT.  OKAY?

 4       MY UNDERSTANDING IS THE ARGUMENT WILL BE THAT WE NEED TO

 5    HAVE SOME WAY OF VALUING ANDROID CONTROL.  THAT'S WHAT ORACLE

 6    IS SAYING.

 7       AND ONE WAY OF LOOKING AT THAT IS SEEING WHAT THEY DON'T

 8    HAVE CONTROL.  THAT'S THE BASIC IDEA.  WHETHER IT PLUGS INTO

 9    APPORTIONMENT OR SOME OTHER KIND OF DAMAGE THEORY, I GET THAT

10    BASIC IDEA.  I ALSO UNDERSTAND YOUR CLIENT'S CONCERNS.

11       MY QUESTION TO YOU, MR. VAN NEST, WAS IS THERE A WAY IN

12    WHICH YOUR CLIENT CAN PROVIDE THOSE TWO PIECES OF

13    INFORMATION -- FOR EACH CONTRACT, WHAT IS THE LICENSE

14    TECHNOLOGY COVERED AND WHAT ARE THE ECONOMIC TERMS, WITHOUT

15    REVEALING WHO THE CONTRACTING PARTY IS ON THE OTHER SIDE AND

16    ONLY FOR MOBILE NON-ANDROID PLATFORM PROVIDERS.

17         MR. VAN NEST:  I THINK, YOUR HONOR, I'M RELUCTANT TO

18    DO THAT.  BUT I THINK THAT WE MIGHT BE ABLE TO DO THE SAME

19    THING IN A DIFFERENT WAY.

20       WHAT SHE'S TRYING TO GET AT IS WHAT'S THE VALUE?  HOW MUCH

21    REVENUE IS BEING SHARED.  RIGHT?  THEY KNOW THAT FOR APPLE.

22         THE COURT:  WELL THEY --

23         MR. VAN NEST:  BUT I THINK -- I THINK IF WE ARE

24    LIMITING IT TO OTHER MOBILE PLATFORM PROVIDERS, THAT'S ONLY

25    PROBABLY TWO OR THREE OTHERS, I THINK THAT THE INFORMATION
```

```
1    ABOUT THE REVENUES THAT ARE SHARED, THAT FACT ALONE, THAT'S

2    WHAT THEY ARE REALLY TALKING ABOUT.

3        ALL THEY WANT TO SAY IS, YOU GIVE UP LET'S SAY, YOU GIVE

4    UP 50 PERCENT OF YOUR REVENUE OR 20 PERCENT, WHATEVER

5    HYPOTHETICAL PERCENT, YOU GIVE THAT UP TO GET ON THIS

6    PLATFORM.  AND, THEREFORE, THAT INFORMS SOMETHING AS TO

7    APPORTIONMENT.

8        IN TERMS OF THAT NUMBER FOR THESE MOBILE NON-ANDROID

9    PLATFORM FOLKS, I CERTAINLY WOULD BE WILLING TO TALK TO GOOGLE

10   ABOUT WHETHER WE CAN PROVIDE THAT, WHICH IS ALL THEY NEED TO

11   MAKE THE ARGUMENT SHE'S DISCUSSING.

12       WHAT WE ARE NOT WANTING TO GET INTO IS TURNING OVER THE

13   AGREEMENTS OR GOING THROUGH ALL THE SPECIFIC TERMS IN OUR

14   VARIOUS PARTNER, PLATFORM PARTNER AGREEMENTS.  THAT'S WHAT WE

15   HAVE OBJECTED TO AND THAT'S WHERE WE WANT TO DRAW THE LINE.

16       BUT IF -- WHAT I AM NOW HEARING IS, WHAT THEY REALLY NEED

17   IS A LITTLE MORE OF A BLUNT INSTRUMENT.  HOW MUCH ARE YOU

18   SHARING AND -- OF WHAT YOU EARN, AND WE'RE GOING TO TAKE THAT

19   AND GIVE IT TO MALAKOWSKI, AND HE'S GOING TO DO SOMETHING WITH

20   IT.

21       I THINK AT THAT LEVEL, I WOULD BE PREPARED TO TALK TO

22   GOOGLE ABOUT WHETHER WE COULD DO THAT.

23           THE COURT:  THE DEVIL IS IN THE DETAILS, AND I WILL

24   HEAR FROM YOU IN A MOMENT, MS. HURST.

25       BUT LET'S SAY YOU DID IT IN CHUNKS LIKE THAT.  HERE'S THE
```

```
1    REVENUE FROM APPLE, HERE'S THE REVENUE FROM YAHOO, WHATEVER

2    THE OTHERS ARE.  WOULD GOOGLE THEN FOREGO ANY REBUTTAL

3    AROUND -- THAT LOOKS AT THAT INFORMATION AS BEING TOO GENERAL?

4    SO THAT INFORMATION --

5              MR. VAN NEST:  SURE.

6              THE COURT:  INCLUDING --

7              MR. VAN NEST:  SURE.

8              THE COURT:  -- I THINK THAT SHOULDN'T HAVE BEEN

9    INCLUDED BECAUSE THEY WEREN'T COMPARABLE.

10             MR. VAN NEST:  SURE.  WELL, WE MAY ARGUE NONE OF

11   THESE ARE COMPARABLE, BUT NOT BASED ON SOME LEVEL OF -- THAT

12   YOU DIDN'T KNOW THIS TERM, OR YOU DIDN'T KNOW THAT TERM, YOU

13   DIDN'T KNOW THAT TERM.  SURE.

14             THE COURT:  MS. HURST, WOULD THAT DO IT?

15             MS. HURST:  YOUR HONOR, HONESTLY, I DON'T KNOW

16   EXACTLY WHAT WE ARE TALKING ABOUT RIGHT NOW.

17      IF WHAT WE ARE TALKING ABOUT IS JUST GENERAL EXPENSE AND

18   REVENUE CATEGORIES, THAT'S NOT GOING TO DO IT.  WE NEED

19   SOMETHING MORE THAN ALL THIS DATA LUMPED IN TOGETHER.  AND I'M

20   LOOKING AT --

21             THE COURT:  WHY?

22             MS. HURST:  WELL, THE CHART THAT WE WERE TENTATIVELY

23   SPIT BALLING A MOMENT AGO, I THINK IS WHAT WE NEED.  BECAUSE

24   IT SHOWS THE VALUE THAT INDIVIDUAL PLATFORMS CAN CONTRIBUTE TO

25   THE DISTRIBUTION OF SEARCH SERVICES.
```

```
1        ANDROID IS AN INDIVIDUAL PLATFORM.  IT'S NOT SOME BIG

2   OVERARCHING CATEGORY.  AND IT MAY BE THAT THE PERCENTAGES

3   VARY --

4        MR. VAN NEST:  I'M NOT TALKING ABOUT LUMPING THEM

5   TOGETHER, YOUR HONOR.  MAYBE MS. HURST MISUNDERSTOOD.

6        I'M NOT TALKING ABOUT LUMPING THE PLATFORMS TOGETHER.

7        THE COURT:  I HEARD YOU SAY THERE'S MAYBE THREE OR

8   FOUR, FOUR OR FIVE, AND YOU WILL GIVE THEM SEPARATE NUMBERS

9   FOR THIS PLATFORM -- FOR APPLE AND FOR OTHERS --

10        MR. VAN NEST:  THEY WOULD GET -- THEY WOULD GET THE

11   COMPARABLE INFORMATION -- THEY KNOW HOW MUCH MONEY GOOGLE

12   EARNS IN THIS APPLE/GOOGLE DISTRIBUTION DEAL.  THEY KNOW THE

13   PERCENTAGE OF REVENUE THAT IS SHARED WITH APPLE.

14        THAT'S WHAT I'M TALKING ABOUT.  I'M TALKING ABOUT GIVING

15   THEM THAT INFORMATION FOR ANY OTHER MOBILE NON-ANDROID

16   PLATFORM PROVIDER.  MICROSOFT, FOR EXAMPLE.

17        MS. HURST:  WE DON'T KNOW THE DEAL.  I WANT TO MAKE

18   SURE APPLE IS NOT GETTING EXCLUDED FROM THIS BY WHAT MR. VAN

19   NEST IS SAYING.

20        WE DON'T HAVE THE DATA IN ADMISSIBLE FORM ON APPLE.  WE

21   HAVE SOME VAGUE -- THEY OBJECTED BEFORE THE LAST DEPOSITION.

22   THEY SAID THEY WEREN'T GOING TO PRODUCE A WITNESS ON THIS.

23   MR. GOLD CAME, AND HE SAID, I KNOW BITS AND PIECES OF IT.  I

24   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

25   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.
```

```
1            THE COURT:  LET'S SAY THAT --

2            MR. VAN NEST:  COULD I ASK -- EXCUSE ME, YOUR HONOR.

3    THESE NUMBERS ARE CONFIDENTIAL.  SO I WOULD ASK THAT THAT

4    PORTION OF HER REMARKS BE SEALED.

5        THAT PERCENTAGE SHE JUST STATED, THAT SHOULD BE SEALED.

6    WE ARE TALKING HYPOTHETICALS HERE.  THAT'S NOT A PUBLICLY

7    KNOWN NUMBER.

8            THE COURT:  IS THAT TRUE?

9            MS. HURST:  IT'S IN A DEPOSITION THAT'S CONFIDENTIAL,

10   YOUR HONOR.  YES.

11           MR. VAN NEST:  EITHER SEAL IT --

12           MS. HURST:  THERE'S BEEN A LOT OF PUBLIC REPORTS THAT

13   GOOGLE PAYS APPLE A BILLION DOLLARS A YEAR.  SO, YOU KNOW --

14           THE COURT:  I WILL ASK OUR COURT REPORTER TO JUST

15   MAKE A NOTE THERE.  I'LL TAKE A LOOK AT IT.  I WILL CONSIDER

16   YOUR REQUEST.

17           MR. VAN NEST:  THANK YOU, YOUR HONOR.  IT'S THE

18   PERCENTAGE THAT I'M COMPLAINING ABOUT.  IT'S THE PERCENTAGE.

19           THE COURT:  RIGHT.  AND THERE MAY BE THINGS THAT ARE

20   CONFIDENTIAL IN THE RECORD, BUT NOT NECESSARILY CONFIDENTIAL

21   AT A TRIAL.

22           MR. VAN NEST:  SURE.  THAT'S RIGHT.

23           THE COURT:  AT SOME POINT SOME --

24           MR. VAN NEST:  MAYBE SO.

25           THE COURT:  -- SOME OF THE STUFF IS GOING TO COME
```

```
 1    OUT.  OKAY?

 2        I'M NOT PROMISING I WILL SEAL IT, BUT I PROMISE TO TAKE A

 3    LOOK.

 4             MR. VAN NEST:  THANK YOU.

 5             THE COURT:  I DO HAVE ONE MORE MATTER BEHIND YOU, SO

 6    I WANT TO MOVE IT ALONG.

 7        LET'S SAY MR. VAN NEST IS ABLE TO DELIVER WHAT HE JUST

 8    DESCRIBED, SEPARATE INFORMATION FOR EACH MOBILE NON-ANDROID

 9    PLATFORM PROVIDER, INCLUDING APPLE, GIVING THE PERCENTAGE --

10             MR. VAN NEST:  OF REVENUE SHARE.

11             THE COURT:  -- OF REVENUE SHARE AND WHAT ELSE?

12             MR. VAN NEST:  AND THE TOTAL REVENUES EARNED.

13             THE COURT:  OKAY.  AND LET'S SAY THAT GOOGLE IS GOING

14    TO AGREE TO AUTHENTICATE IT SO THAT YOU CAN USE IT.  DOES THAT

15    TAKE CARE OF IT?

16             MS. HURST:  I THINK WE NEED TO KNOW JUST WHAT IT

17    COVERS IN ADDITION TO THOSE POINTS, YOUR HONOR.  I AM NOT

18    TRYING TO BE DIFFICULT, BUT IS IT A SEARCH BOX?  IS IT THE

19    SEARCH WIDGET?  WHAT IS IT THAT'S COVERED?  AND THEN WE ARE

20    GOOD.

21             THE COURT:  CAN THAT BE A LIST OF THINGS COVERED --

22             MS. HURST:  SURE.  ABSOLUTELY.

23             MR. VAN NEST:  THAT'S WHERE THE RABBIT GOES IN THE

24    HAT, YOUR HONOR.  THEY DON'T NEED THAT.  WHAT THEY'RE SAYING

25    IS, THERE'S A PLATFORM, APPLE OR RIM.
```

```
1            THE COURT:  LET ME ASK HER WHY SHE NEEDS IT.

2            MS. HURST:  YOUR HONOR, THAT IS, THAT IS THE ARGUMENT

3    THEY ARE GOING TO MAKE LATER ABOUT THOSE THINGS AREN'T

4    CAUSALLY LINKED.  WE'RE NOT THERE YET.

5            THE COURT:  THEY PROMISED THEY ARE NOT GOING TO MAKE

6    THAT ARGUMENT.

7            MS. HURST:  NO, NO.  THEY ARE GOING TO MAKE THAT

8    ARGUMENT.  I PROMISE YOU.  I PROMISE YOU THEY ARE.  THEY'RE

9    ALREADY MAKING IT.  MR. VAN NEST MAKING IT RIGHT NOW AS A

10   REASON FOR NOT GIVING THE LIST.

11           THE COURT:  HOLD ON.  I HEARD YOU SAY OTHERWISE,

12   MR. VAN NEST.

13           MR. VAN NEST:  SHE PUT A DIFFERENT WORD AROUND IT

14   "CAUSALLY LINKED".  OF COURSE I'M GOING TO ARGUE THAT NONE OF

15   THIS IS CAUSALLY LINKED TO THE 37 API'S.

16       WHAT I SAID TO YOUR HONOR WAS, WOULD I ARGUE THAT YOU

17   CAN'T LOOK AT THESE BECAUSE THEY DON'T TAKE INTO ACCOUNT

18   DIFFERENCES IN THE TERMS OF THE AGREEMENTS.  AND I SAID FINE

19   AS TO THAT.  THAT'S WHAT I SAID.

20       IN OTHER WORDS, I CAN'T GET UP AND SAY, WELL, YOU CAN'T

21   USE THAT BECAUSE YOU DIDN'T KNOW THAT THE RIM AGREEMENT HAS

22   THIS PARTICULAR TERM OR THE MICROSOFT HAS THAT PARTICULAR

23   TERM.  I'M AGREEING THAT I CAN'T MAKE THAT ARGUMENT IF ALL I'M

24   PROVIDING IS THE TOP LINE REVENUE AND REV SHARE.

25           THE COURT:  DO YOU ALSO AGREE YOU WON'T BE ARGUING
```

33

```
1   THAT IT'S A BAD COMPARISON OR A BAD CAUSAL LINK BECAUSE THIS
2   TRANCHE OF REVENUE WRITTEN (SIC) LARGE FOR THIS PROVIDER
3   COVERS SEARCH AND TOOLBAR AND ET CETERA, ET CETERA, AND SOME
4   OF THOSE SHOULDN'T BE IN THIS ANALYSIS?
5       BECAUSE IF THAT'S TRUE, THEN I THINK SHE NEEDS TO GET THE
6   INFORMATION --
7               MR. VAN NEST:  IT --
8               THE COURT:  -- TO BE READY TO COMBAT THAT.
9               MR. VAN NEST:  AS LONG AS I'M NOT FORECLOSED FROM
10  ARGUING THAT THESE NON-ANDROID PLATFORMS ARE NOT COMPARABLE
11  BECAUSE THEY HAVE NOTHING TO DO WITH JAVA OR THE API'S, AS
12  LONG AS I CAN MAKE THAT ARGUMENT.  I DON'T INTEND TO ARGUE --
13  AS LONG AS I CAN ARGUE THAT SEARCH ITSELF IS NOT COMPARABLE
14  AND THE ADS ARE NOT COMPARABLE, I'M FINE.  I DON'T NEED TO
15  MAKE FINE DISTINCTIONS BETWEEN AND AMONG THE PRODUCTS THAT ARE
16  NOT ANDROID.  THAT'S FINE.
17      I JUST NEED TO BE ABLE TO SAY THAT SEARCH ITSELF IS A
18  TOTALLY DIFFERENT PRODUCT AND IT'S GOOD FOR REASONS UNRELATED
19  TO THEIR API'S.  AND THAT ADS ARE A TOTALLY DIFFERENT PRODUCT
20  AND THEY'RE GOOD FOR REASONS UNRELATED TO THE API'S.  I NEED
21  TO MAKE THAT ARGUMENT, OF COURSE.
22      BUT WHAT I'M SAYING IS, I'M NOT GOING TO GET UP AND SAY,
23  WELL, THE NUMBERS THEY ARE GIVING YOU ON RIM SHOULD BE
24  IRRELEVANT BECAUSE IT INCLUDES THIS TOOLBAR AND NOT THAT
25  TOOLBAR.
```

34

```
1          I AGREE THAT IF I CAN GET AGREEMENT FROM THE CLIENT TO

2     PROVIDE THIS INFORMATION, THEN WE WOULD FOREGO THAT ARGUMENT.

3          THE COURT:  WHAT YOU ARE PRESERVING ARE VERY HIGH

4     LEVEL GENERALIZED ARGUMENTS THAT HAVE TO DO WITH DISCOUNTING

5     ANY --

6          MR. VAN NEST:  RIGHT --

7          THE COURT:  -- LINK TO A PARTICULAR NON-ANDROID

8     MOBILE PLATFORM OR THIS IS SOMEHOW LINKED TO SEARCH.

9          MR. VAN NEST:  RIGHT.  SEARCH --

10         THE COURT:  OR ADS --

11         MR. VAN NEST:  THESE OTHER PRODUCTS.  THAT'S RIGHT.

12         MS. HURST:  WE WANT TO PROVE THAT LINK.  WE WANT TO

13    USE THIS INFORMATION IN PART TO PROVE THAT LINK.  AND THE LIST

14    OF WHAT IT COVERS AND WHAT THEY ARE WILLING TO SHARE REVENUE

15    ON STRONGLY REINFORCES THAT CAUSAL LINK WHEN THEY DO IT ON

16    ANOTHER PLATFORM AND WHEN THEY DO IT ON ANDROID.

17         SO I NEED THE LIST, YOUR HONOR NOT JUST TO BE ABLE TO

18    RESPOND TO SOMETHING THEY ARE GOING TO SAY, BUT BECAUSE WE

19    HAVE MULTIPLE PURPOSES FOR WANTING THIS INFORMATION.

20         THE COURT:  SO I'M NOT COMPLETELY UNDERSTANDING WHY

21    YOU NEED IT.

22         MS. HURST:  WELL, YOUR HONOR, FOR US TO AFFIRMATIVELY

23    PROVE THE CAUSAL LINK, WE WANT TO SHOW THAT ALL THESE THINGS

24    ARE TIED TOGETHER.  AND THE REVENUE THAT COMES IN ON ONE END

25    FLOWS -- THE CAUSATION OF THAT FLOWS THROUGH, OR MAYBE THE
```

```
1    PYRAMID IS THE BETTER ANALOGY HERE, FLOWS FROM THE TOP TO THE

2    BOTTOM.  AND THEY'RE TRYING TO CUT IT OUT AT EVERY LEVEL ALONG

3    THE WAY.

4        I JUST HEARD MR. VAN NEST REINFORCE THAT'S ABSOLUTELY WHAT

5    HE WANTS TO DO.  HE WANTS TO SAY, OKAY, THE CAUSAL CHAIN STOPS

6    HERE ON, YOU KNOW, THE SEARCH WIDGET.  IT STOPS HERE ON MAPS.

7        WE WANT TO SAY WE'RE THE FOUNDATION.  AND WE ABSOLUTELY

8    WERE THE FOUNDATION.  IT'S CLEAR FROM THE EVIDENCE THEY NEVER

9    WOULD HAVE GOTTEN THIS THING TO MARKET AND THEY WOULD HAVE

10   MISSED THEIR WINDOW.

11       BUT TO SHOW THE CAUSAL LINK PART OF THIS, WHAT IT MEANS TO

12   BE EXCLUDED FROM THAT CONTROL, WHAT IT MEANS TO LOSE THAT

13   POSITION AND BE LOCKED OUT OF A PLATFORM, WE NEED TO SHOW THAT

14   WHEN THEY ARE PAYING, THEY ARE PAYING FOR ALL OF THESE THINGS

15   OR LESS THAN ALL OF THEM.  THAT IS RELEVANT TO THE ANALYSIS.

16           MR. VAN NEST:  THAT REALLY DOESN'T MAKE ANY SENSE TO

17   ME, YOUR HONOR --

18           THE COURT:  HOLD ON.

19       WHAT IF THE INFORMATION WERE TO BE PROVIDED FOR EACH

20   NON-ANDROID MOBILE PLATFORM BUT WITHOUT A NAME ATTACHED TO IT?

21           MS. HURST:  THAT'S OKAY -- WELL, WAIT A MINUTE.

22   WITHOUT -- I'M SORRY.  I CERTAINLY THOUGHT WE HAD ALREADY

23   AGREED TO WITHOUT THE NAME OF THE COUNTER PARTY.

24           THE COURT:  CORRECT.

25           MS. HURST:  YES.
```

1          **THE COURT:**  WELL, SO THIS MAY BE THE REVENUES FROM

2    APPLE, BUT YOU ARE NOT GOING TO KNOW IT'S FROM APPLE.

3          **MS. HURST:**  YES.  I THOUGHT WE AGREED TO THAT, YOUR

4    HONOR.  YES.

5          **THE COURT:**  SO, IN OTHER WORDS, A CHART, I AM NOT

6    TALKING ABOUT DOCUMENTS, BUT WE ARE NOW DOWN TO A CHART THAT

7    WOULD LIST OUT FOR EACH OF THE CONTRACT PARTNERS WHO ARE

8    MOBILE NON-ANDROID PLATFORM PROVIDERS, WHICH WE THINK ARE JUST

9    A HANDFUL; YOU DON'T HAVE TO LIST THE NAME, BUT YOU WOULD LIST

10   THE TOTAL -- THE REVENUE SHARE AND THE TOTAL REVENUE, AND THE

11   LIST OF SERVICES OR TECH THAT ARE COVERED BY THE AGREEMENT BUT

12   WITHOUT A NAME.

13         **MR. VAN NEST:**  IT'S THAT THIRD PART THAT I AM

14   OBJECTING TO THAT I THINK WE WOULD WANT TO STAND ON.

15       BECAUSE, AGAIN, TO MAKE THE ARGUMENT THAT SHE WANTS TO

16   MAKE -- THE MALAKOWSKI REPORT WE HAVE.  THE ARGUMENT THEY DO

17   MAKE IS THAT ALL OF THE AD REVENUES ARE ATTRIBUTABLE TO THESE

18   37 JAVA API'S --

19         **THE COURT:**  THIS IS DISCOVERY, MR. VAN NEST.

20         **MR. VAN NEST:**  UNDERSTAND.  BUT WHY THEY NEED TO KNOW

21   THE SPECIFIC TERMS -- IF THEIR ARGUMENT IS WHAT THEY SAY IT

22   IS, THAT ALL THIS AD REVENUE THAT'S COMING FROM GOOGLE SEARCH

23   AND ADS IS ATTRIBUTABLE TO THE 37 API'S AND THAT THE CONTROL

24   OF THE PLATFORM IS VALUABLE, RIGHT, BECAUSE YOU ARE WILLING TO

25   PAY A LOT, WHAT I'M OFFERING TO PROVIDE IS ALL THE INFORMATION

```
1    THEY WOULD NEED TO MAKE THAT ARGUMENT.

2         THEY DON'T BREAK IT DOWN THAT WAY IN THEIR REPORT.

3    THERE'S NO -- MALAKOWSKI DOESN'T BREAK THINGS DOWN IN THAT

4    SENSE.  HE'S BASICALLY SAYING HERE'S ALL THE AD REVENUE, AND

5    HERE'S WHAT THE HARDWARE SELLS FOR, AND HERE'S WHAT THE

6    CONTENT SELLS FOR.

7         I DON'T UNDERSTAND WHY THEY WOULD NEED THE SPECIFIC TERMS

8    OF THESE AGREEMENTS.

9              THE COURT:  WELL, I'M PICTURING FIVE PIECES OF PAPER

10   IF THERE'S FIVE CONTRACTING PARTIES.  ONE PIECE OF PAPER SAYS

11   HERE'S THE REVENUE SHARE, HERE'S THE TOTAL REVENUE, AND HERE

12   ARE THE SERVICES, JUST ONE LIST, COVERED BY ALL OF THOSE

13   CONTRACTS.  IT DOESN'T SAY HOW MANY -- HOW MUCH OF THE REVENUE

14   SHARE IS CONNECTED TO A PARTICULAR TYPE OF COVERAGE SERVICE.

15   IT'S --

16             MR. VAN NEST:  THAT'S WHY I AM SAYING WITHOUT -- IT

17   DOESN'T MAKE SENSE TO PROVIDE THE LIST -- THE WHOLE ARGUMENT

18   THEY ARE MAKING IS THAT YOU GET GOOGLE SEARCH AND GOOGLE ADS

19   ON ANDROID AND ON OTHER PLATFORMS.  AND THOSE ARE VALUABLE.

20   AND WE NEED TO PROVE THAT YOU'RE WILLING TO PAY MONEY FOR

21   THE -- SHARE REVENUE THAT THOSE PRODUCTS CREATE ON THESE OTHER

22   PLATFORMS.

23        I'M SAYING OKAY.  FINE.  BUT WHY THEY -- WE'LL PROVIDE --

24   WHAT WE'RE PROVIDING WILL ALLOW THEM TO MAKE THAT ARGUMENT.

25   THEY CAN SAY, LOOK, THE AVERAGE REVENUE SHARE ACROSS THESE
```

```
 1    PLATFORMS IS X.  AND LOOK AT THIS ONE, IT'S Y.  AND LOOK AT
 2    THIS ONE, IT'S Z.  AND LOOK AT THIS ONE, IT'S X.
 3        SO THEY'RE PAYING A LOT, THIS WILL BE THEIR ARGUMENT, THEY
 4    ARE PAYING A LOT FOR THE RIGHT TO BE ON THE PLATFORM.  THAT
 5    MEANS THAT PLATFORM CONTROL IS IMPORTANT.
 6        THE SPECIFIC TERMS THAT WE HAVE WITH EACH OF OUR PARTNERS
 7    IS COMPLETELY IRRELEVANT TO THAT AS LONG AS THEY ARE GETTING
 8    THE ECONOMIC FACTS WHICH ARE HOW MUCH IS EARNED AND -- WHICH
 9    THEY PROBABLY KNOW NOW BECAUSE THEY HAVE ALL -- BY THE WAY,
10    THEY HAVE ALL OF OUR NON-ANDROID P&L'S AS WELL.  BUT THEY
11    PROBABLY HAVE THAT, BUT THEY DON'T HAVE THE REVENUE SHARE
12    NUMBERS FOR THESE.  AND THEY ARE ARGUING -- I'M NOT SURE WHY
13    THE APPLE NUMBER ALONE DOESN'T MAKE THE ARGUMENT.
14            THE COURT:  OKAY.  SO LET ME GET A QUICK ANSWER FROM
15    YOU ONE MORE TIME MS. HURST.
16            MS. HURST:  YOUR HONOR --
17            THE COURT:  HOLD ON.
18        YOU'RE ASKING FOR VERY GENERALIZED INFORMATION IN A WAY.
19    SO A REVENUE SHARE AND REVENUE NUMBER AND A LIST OF SERVICES
20    THAT ISN'T OTHERWISE DIFFERENTIATED.
21        WHAT DOES THAT GET YOU IN YOUR CAUSAL LINK ARGUMENT?  HOW
22    ARE YOU GOING TO ARGUE THAT?
23            MS. HURST:  WELL, YOUR HONOR, WHAT I WOULD SAY IS THE
24    FACT THAT THEY SHARE REVENUE BROADLY FOR ALL OF THESE THINGS
25    SHOWS THAT THE PLATFORM IS NOT DIFFERENTIATED AND THAT, IN
```

```
1    EFFECT, THE FACT THAT THEY HAVE THESE LITTLE WIDGETS DOESN'T
2    MATTER.  I MEAN, YES, THEY HAVE DIFFERENT WAYS OF KIND OF
3    COMMERCIALIZING IT WITH ONE WIDGET VERSUS ANOTHER, BUT AT THE
4    END OF THE DAY WHAT MATTERS IS THE PLATFORM.
5           MR. VAN NEST:  THAT'S MY ARGUMENT.  I'M AGREEING WITH
6    THAT.  I THINK WE ARE IN AGREEMENT.  I'M NOT SURE --
7           MS. HURST:  ALL RIGHT.  IF -- I MEAN --
8           MR. VAN NEST:  SHE WANTS A LIST OF SERVICES.  THE
9    LITTLE WIDGETS DON'T MATTER.  SHE WANTS TO KNOW WHAT WE PAY
10   BROADLY TO BE ON THE PLATFORM FOR ALL OF OUR SERVICES,
11   WHATEVER SERVICES WE PROVIDE.  YOU CAN DETERMINE FROM PUBLIC
12   RECORDS, I SUPPOSE, WHAT SOME OF THESE SERVICES ARE, BUT WHAT
13   I'M TALKING ABOUT IS WHAT THE SPECIFIC TERMS ARE FOR EACH ONE
14   OF THESE.
15          THE COURT:  I'M NOT REALLY SEEING HOW -- THE
16   IMPORTANCE OF THAT LEVEL OF DETAIL, MS. HURST.
17          MS. HURST:  I'M MORE WORRIED ABOUT THE ARGUMENTS THAT
18   ARE GOING TO BE MADE LATER.  AND I'M JUST THINKING FOR A
19   MOMENT, YOUR HONOR.  BECAUSE I'VE HEARD -- WE BOTH HAVE HEARD
20   SOME NEW THINGS THIS MORNING.
21      AS LONG AS THIS IS NOT A WAY -- LET ME SAY THIS:  AS LONG
22   AS THIS IS NOT A WAY TO EXCLUDE ANYBODY WITH A NON -- WITH A
23   MOBILE NON-ANDROID PLATFORM WHO'S RECEIVING A REVENUE SHARE,
24   I'LL LIVE WITH IT.
25      IN OTHER WORDS, AS LONG AS -- WE DON'T KNOW THE LIST AND
```

```
1    THEN THEY USE THE LIST TO EXCLUDE SOMEBODY.  AS LONG AS I CAN

2    GET RID OF THAT SCENARIO, I'LL LIVE WITH IT.

3         THE COURT:  YOU'RE SAYING AS LONG AS THIS DEFINITION

4    OF MOBILE NON-ANDROID PLATFORM PROVIDERS COVERS WHO YOU THINK

5    IT SHOULD COVER?

6         MS. HURST:  RIGHT.  WELL, I DON'T KNOW WHO IT IS, ALL

7    OF THEM, BUT AS LONG AS IT COVERS EVERYTHING THAT THEY MIGHT

8    BE REVENUE SHARING ON THOSE PLATFORMS, AS LONG AS WE GET THE

9    TERMS FOR EVERYTHING THAT THEY ARE SHARING.

10        IN OTHER WORDS, WHAT I DON'T WANT TO HAVE HAPPEN IS,

11   THERE'S NO ENTRY ON THE CHART FOR HYPOTHETICAL PLATFORM

12   PROVIDER C BECAUSE THE ONLY THING THEY HAVE A REVENUE SHARE

13   DEAL ON FOR THAT PLATFORM PROVIDER IS A SEARCH WIDGET.  RIGHT?

14   THAT SHOULD BE INCLUDED.

15        THE COURT:  UNDERSTOOD?

16        MR. VAN NEST:  I THINK SO.  I'M NOT SURE WHAT SHE'S

17   WORRIED ABOUT.

18        THERE'S ONLY -- IF WE ARE TALKING ABOUT PLATFORM PROVIDERS

19   THAT ARE MOBILE, THERE'S MICROSOFT, THERE'S RIM, THAT'S SORT

20   OF ABOUT IT.  I'M NOT SURE WHO ELSE WE ARE TALKING ABOUT.

21        MS. HURST:  OVER TIME THERE'S A NUMBER MORE THAN

22   THAT.  AND GOOGLE HAS BEEN AROUND FOR A WHILE AND IT'S BEEN

23   PAYING TO GET DISTRIBUTION FOR A WHILE.  SO IN THE PAST, THERE

24   MAY HAVE BEEN MORE.  THERE'S NOKIA, THERE'S, YOU KNOW,

25   MOTOROLA BEFORE THEY ACQUIRED IT.  I MEAN, THERE'S A NUMBER
```

1    OF -- I DON'T KNOW WHAT EXISTS.  I JUST WANT TO MAKE SURE THAT

2    NOTHING GETS LEFT OUT.

3         **MR. VAN NEST:**  I'M NOT ANTICIPATING THAT.  WHEN SHE

4    SAYS "EXCLUDED", I THINK SHE MEANS EXCLUDED FROM DISCOVERY.

5         I AM GOING TO ARGUE, AS I SAID, THAT NONE OF THIS STUFF IS

6    RELEVANT AND IT DOESN'T SHOW ANYTHING, APPORTIONMENT OR

7    OTHERWISE.  I AM RESERVING ALL MY RIGHTS TO ARGUE THAT IT'S

8    IRRELEVANT EXCEPT FOR SAYING IT'S NOT RELEVANT BECAUSE YOU

9    DIDN'T HAVE THIS TERM OR THAT TERM, THAT PART.

10        **THE COURT:**  AND YOU ALSO ARE NOT GOING TO ARGUE THAT

11   THIS IS NOT A GOOD COMPARISON TO APPLE AS OPPOSED TO SOME

12   OTHER NON-ANDROID PROVIDER BECAUSE YOU'VE AGREED TO NOT GIVE

13   THE NAMES, RIGHT?  BY --

14        **MR. VAN NEST:**  I'M NOT PROVIDING NAMES.  THAT'S

15   RIGHT.

16        **THE COURT:**  RIGHT.  SO BY -- AND THAT MEANS YOU'RE

17   NOT GOING TO BE -- YOU'RE AGREEING TO NOT MAKE ARGUMENTS BASED

18   ON DIFFERENTIATION BETWEEN PROVIDERS WHEN YOU DIDN'T PROVIDE

19   THE NAMES.

20        **MR. VAN NEST:**  I THINK THAT'S RIGHT, YOUR HONOR.

21   HOWEVER, HOWEVER, I THINK THERE'S GOING TO BE ARGUMENT IN THE

22   TRIAL AND PROBABLY IN THE EXPERT REPORTS ABOUT APPLE, BECAUSE

23   THEY ALREADY HAVE A LOT OF INFORMATION ABOUT APPLE, INCLUDING

24   THE REV SHARE AND SO ON.

25        SO I WANT TO BE ARGUING THAT APPLE IS WHAT IT IS BECAUSE

```
1    OF THINGS APPLE DID, NOT BECAUSE OF THINGS THESE 37 API'S DID,

2    AND ALL THAT.  BUT AM I GOING TO ARGUE THAT SOME NUMBER THEY

3    PICKED OUT IS IRRELEVANT BECAUSE THEY HAVEN'T IDENTIFIED WHO

4    IT IS?  OR BECAUSE -- NO, I CAN'T ARGUE THAT.

5         THE COURT:  OR BECAUSE APPLE IS DIFFERENT FROM RIM

6    AND SO WE -- THIS IS EVEN FURTHER --

7         MR. VAN NEST:  OKAY.  YEAH.  I DON'T THINK SO.  I

8    THINK -- THEY ARE DIFFERENT BECAUSE THE THINGS WE SHARE ARE

9    DIFFERENT.  IT'S -- RIGHT.  THAT'S WHAT YOU ARE GETTING AT.  I

10   AGREE WITH THAT.

11      AT THAT LEVEL THEN, IF I CAN -- IF THERE'S A WAY OF

12   PROVIDING THIS INFORMATION AND THIS INFORMATION EXISTS,

13   CERTAINLY THE REV SHARE INFORMATION EXISTS, I WILL ENDEAVOR TO

14   DO THAT.

15        THE COURT:  OKAY.  HERE'S WHAT I'M GOING TO ORDER THE

16   PARTIES TO DO.  YOU ARE GOING TO DO A BETTER JOB OF PUTTING

17   TOGETHER A PROPOSED ORDER -- WELL, PROPOSED ORDER.  YOU CAN

18   FRAME IT AS A STIPULATION OR AS A PROPOSED ORDER.  EITHER WAY

19   I AM ORDERING IT.  OKAY?

20      SO GOOGLE IS GOING TO BE PROVIDING INFORMATION FOR EACH

21   MOBILE NON-ANDROID PLATFORM PROVIDER THAT HAS THE REVENUE

22   SHARE FOR THAT PROVIDER, THE TOTAL REVENUE, AND THEN A LIST OF

23   THE SERVICES THAT ARE COVERED BY THE AGREEMENT.

24      GOOGLE DOES NOT HAVE TO NAME WHO THE PROVIDER IS IN ORDER

25   TO PROTECT THE COMPETITIVE INFORMATION OF THEIR CONTRACTING
```

```
1    PARTNER, BUT GOOGLE HAS AGREED THAT IT WILL NOT ARGUE ABOUT

2    DIFFERENCES BETWEEN THE PLATFORM PROVIDERS AS A BASIS OF

3    REBUTTING ORACLE'S DAMAGE ANALYSIS, AND THEY ALSO ARE NOT

4    GOING TO BE -- WELL, THAT IS THE CONCESSION.

5         MR. VAN NEST:  THAT'S NOT FAIR.  THAT IS NOT WHAT --

6    IF I'M PROVIDING A LIST OF THE SERVICES, THEN I SHOULD BE

7    ALLOWED TO ARGUE THE DIFFERENCES.

8         MY POINT WAS, IF I DON'T --

9         THE COURT:  MAYBE I DIDN'T SAY THIS RIGHT.

10        IF YOU ARE NOT GOING TO NAME THIS IS THE APPLE NUMBER AND

11   THIS IS THE RIM NUMBER, THEN YOU CAN'T ARGUE THAT, GEE, RIM IS

12   A WHOLE DIFFERENT SITUATION THAN APPLE BECAUSE YOU DIDN'T SAY

13   WHICH ONE IS WHICH.

14        MR. VAN NEST:  RIGHT.  BUT WHAT I THOUGHT WE WERE

15   TALKING ABOUT, WHAT I WAS OBJECTING TO PROVIDING, YOUR HONOR,

16   IS NOT THE REV SHARE, NOT THE REVENUE, BUT THE LIST OF

17   SERVICES ON EACH PLATFORM.

18        AND I SAID IF I DON'T HAVE TO PROVIDE THAT, THEN

19   OBVIOUSLY -- AND THAT'S -- BUT YOUR PROPOSED ORDER, I HAVE TO

20   PROVIDE THAT I THOUGHT YOU JUST --

21        THE COURT:  CORRECT.  YOU HAVE TO PROVIDE THAT.  AND

22   YOU ARE NOT GIVING UP YOUR ABILITY TO ARGUE DIFFERENTIATIONS

23   ON THOSE PARTICULAR SERVICES, BUT --

24        MR. VAN NEST:  I WOULD RATHER GIVE THAT UP AND NOT

25   HAVE TO PROVIDE THE LIST, IN ALL CANDOR.  THAT'S WHAT WE ARE
```

```
1    REALLY OBJECTING TO IS THE DETAILS --

2              THE COURT:  I AM -- I'M SORRY.

3              MR. VAN NEST:  BECAUSE I THOUGHT WE ESTABLISHED THAT

4    THEY DON'T REALLY NEED THAT TO MAKE THE POINT THEY WANT TO

5    MAKE AS LONG AS THEY HAVE THE, YOU KNOW, THE REV SHARE AND THE

6    REVENUE INFORMATION.

7              THE COURT:  I GOT AHEAD OF MYSELF.  LET ME JUST BACK

8    UP A BIT.

9                   (PAUSE IN THE PROCEEDINGS.)

10             THE COURT:  MS. HURST, YOU AGREED THAT YOUR CLIENT --

11   WELL, LET ME PUT IT BACK ON YOU.  WHAT IS YOUR CLIENT WILLING

12   TO LIVE WITH?

13             MS. HURST:  I THINK I WOULD HAVE TO CONSULT WITH MY

14   CLIENT TO ACTUALLY ANSWER THAT QUESTION AS PHRASED, YOUR

15   HONOR, BUT I REALIZE I'M HERE, AND I'M THE ONE WHO'S GOT TO

16   SPEAK.  OKAY?

17             THE COURT:  RIGHT.  THAT WE JUST TALKED ABOUT, JUST

18   SO I AM NOT MISFRAMING THIS.

19             MS. HURST:  I AM LISTENING TO THIS, AND I HAVE A VERY

20   HIGH DEGREE OF CONCERN THAT WITHOUT THE LIST OF SERVICES, IT'S

21   GOING TO BE HARD TO FRAME WHAT THEY ARE NOT ALLOWED TO ARGUE.

22   AND IT IS GOING TO BE VIRTUALLY UNENFORCEABLE.

23        AND SO I'M STRUGGLING WITH THAT BECAUSE I HEARD THE COURT

24   SAY THAT -- THE PART CONNECTED WITH IDENTITY, AND THAT MADE

25   SENSE, RIGHT?
```

1          **THE COURT:**  RIGHT.

2          **MS. HURST:**  I'M TRYING TO FIGURE OUT WHAT THE

3   COMPARABLE PIECE IS IF THE LIST OF SERVICES DID NOT HAVE TO BE

4   PROVIDED.

5          **THE COURT:**  RIGHT.

6          **MS. HURST:**  RIGHT?  AND SO I WOULD IMAGINE THAT THEY

7   MIGHT WANT TO ARGUE, WELL, THAT HIGHER PERCENTAGE IS NOT

8   COMPARABLE BECAUSE WE HAD ALL THESE APPS ON THERE.  RIGHT?

9   AND THEY ARE GOING TO WANT TO ARGUE, WELL, YOU KNOW, THAT ONE

10  IS NOT COMPARABLE BECAUSE IT HAD ONLY THE ONE THING ON IT.  I

11  DON'T KNOW HOW WE ARE EVER GOING TO ENFORCE THAT.

12         **MR. VAN NEST:**  RATHER THAN TRY TO TAKE THIS ON THE

13  FLY, BECAUSE IT'S ALL NEW FROM THE BRIEFING, WHY DON'T YOU --

14  WHY DON'T WE DO SOME MEETING AND CONFERRING.

15      I THINK, I THINK WE CAN COME TO A STIPULATION THAT

16  RESTRICTS MY ABILITY TO ARGUE BASED ON WHAT THEY'RE GIVING UP

17  IN TERMS OF DETAIL.  I THINK WE CAN DO THAT.

18         **THE COURT:**  THAT'S THE CONCEPT, BUT --

19         **MR. VAN NEST:**  THAT'S THE IDEA.

20         **THE COURT:**  BUT IF IT DOESN'T WORK, THEN YOU ARE

21  COMING BACK AND I WILL CERTAINLY CONSIDER MAKING YOU LIST OUT,

22  AT A MINIMUM, LIST OUT SERVICES.

23      SO SEE IF YOU CAN COME UP WITH A WAY TO AVOID THAT BUT

24  GIVING ORACLE APPROPRIATE PROTECTION FROM ARGUMENTS COMING

25  FROM GOOGLE.

```
1          MR. VAN NEST:  I THINK WE CAN REACH AGREEMENT ON

2    THAT.  AT LEAST WE'LL TRY.

3          MS. HURST:  YOUR HONOR, MAY I INQUIRE AS -- THAT

4    WOULD BE HELPFUL TO THIS NEGOTIATION.

5       IF GOOGLE WILL REPRESENT THAT IT IS NOT GOING TO PRESENT

6    ANY HYPOTHETICAL LICENSE CALCULATION ASSOCIATED WITH ANYTHING.

7          MR. VAN NEST:  WELL, I'M NOT GOING TO REPRESENT THAT,

8    YOUR HONOR.  BUT THAT HAS NOTHING TO DO WITH THIS ARGUMENT.

9          THE COURT:  I DON'T SEE WHY HE NEEDS TO DO THAT.

10         MS. HURST:  WELL, YOUR HONOR, BECAUSE THE GRANULARITY

11   OF THE INFORMATION THAT WE ARE TALKING ABOUT HERE IS -- SO FAR

12   WE HAVEN'T -- I GUESS I SHOULD SAY IT ANOTHER WAY.

13      IF WE DON'T, THEY DON'T EITHER.  THAT WOULD BE THE

14   REPRESENTATION.

15         MR. VAN NEST:  IF --

16         THE COURT:  IF THEY DON'T GET THE GRANULARITY, THEN

17   YOU SHOULDN'T BE ABLE TO ARGUE WITH THAT LEVEL OF GRANULARITY.

18         MR. VAN NEST:  FOR THESE NON-MOBILE PROVIDERS?  I

19   WOULD CERTAINLY CONSIDER DISCUSSING THAT WITH HER.  THAT

20   DOESN'T SHOCK ME OR ANYTHING LIKE THAT.

21      BUT SHE ASKED ME WOULD I REFRAIN FROM MAKING A PARTICULAR

22   DAMAGES ARGUMENT, AND THERE'S NO REASON FOR ME TO DO THAT.

23         THE COURT:  I THINK THE WAY YOU STATED IT MAKES

24   SENSE; THAT IF YOU DON'T GET THAT GRANULARITY FOR THIS --

25         MR. VAN NEST:  PORTION.
```

1          **THE COURT:**  -- BODY OF INFORMATION, THEN THEY CAN'T

2     ARGUE IT IN ANY WAY.

3          **MR. VAN NEST:**  I THINK THAT'S RIGHT.  THAT'S THE

4     CONCEPT, AND I THINK WE CAN WORK THAT OUT.

5        WE CERTAINLY WOULDN'T BE USING NON-MOBILE DISTRIBUTION

6     AGREEMENTS TO PROVE A HYPOTHETICAL NEGOTIATION EITHER BECAUSE

7     WE ARE TALKING ABOUT AGREEMENTS THAT ARE LONG AFTER THE

8     NEGOTIATION.

9          **THE COURT:**  TO PROVE UP YOUR PART OF THE CASE OR TO

10    ATTACK?

11         **MR. VAN NEST:**  EITHER.  YEAH.

12         **MS. HURST:**  I JUST -- OKAY.  THE DEVIL IS IN THE

13    DETAILS HERE, YOUR HONOR.  I APPRECIATE THE COURT'S TIME AND

14    FACILITATING THIS DISCUSSION, AND WE WILL MAKE EVERY EFFORT TO

15    TURN THIS TENTATIVE CHART INTO AN AGREEMENT OR A PROPOSED

16    ORDER, OR COMPETING PROPOSED ORDERS, WHATEVER IT IS.

17         **THE COURT:**  WELL, IT'S GOING TO BE -- YES, I GUESS

18    THAT'S RIGHT.  IF IT'S COMPETING PROPOSED ORDERS, YOU ARE

19    PROBABLY GOING TO COME BACK IN.

20       WHAT'S HAPPENED IS THINGS HAVE SHIFTED SINCE YOU FILED THE

21    LETTER.  WE ARE ALL GETTING NEW INFORMATION.  I'M GOING TO --

22    IF YOU ARE NOT ABLE TO REACH AGREEMENT, MS. HURST, YOU'RE

23    GOING TO PUSH FOR FURTHER DETAIL, I'M GOING TO HAVE TO HAVE A

24    MUCH BETTER UNDERSTANDING OF HOW THAT'S GOING TO PLUG IN AND

25    WHY IT'S NECESSARY TO ORACLE'S CASE.  SO --

1          **MS. HURST:**  MY FEAR IS ABOUT WHAT GOOGLE IS GOING TO

2     DO IN RESPONSE TO ORACLE'S CASE RIGHT NOW MORE THAN ORACLE'S

3     PRODUCTION, YOU KNOW, THE STUFF THAT ORACLE AFFIRMATIVELY --

4     WHERE WE ARE NOW.  SO --

5          **THE COURT:**  LET'S DO A QUICK TURN AROUND.  HOW

6     QUICKLY CAN YOU GET SOMETHING BACK TO THE COURT?

7          **MS. HURST:**  TOMORROW AT NOON?

8          **MR. VAN NEST:**  OH, NO, I DON'T THINK SO.  I THINK IT

9     WOULD TAKE A LITTLE LONGER THAN THAT.

10          **THE COURT:**  IT'S GOING TO BE A QUICK TURNAROUND.

11          **MR. VAN NEST:**  CAN WE DO IT BY -- MONDAY IS A -- CAN

12     WE DO IT BY SOMETIME ON TUESDAY SO I HAVE TIME TO CONSULT WITH

13     GOOGLE AND FIGURE OUT WHAT WE HAVE AND DON'T HAVE?

14          **THE COURT:**  YOU ALL HAVE PHALANXES OF LAWYERS WORKING

15     ON THIS.  AND THIS IS A JUDGE ALSUP CASE, AND I KNOW YOU'VE

16     GOT DEADLINES, AND SO THIS NEEDS TO MOVE QUICKLY.

17       I'M GOING TO ASK YOU TO CONTACT YOUR CLIENT, MR. VAN NEST,

18     ON THIS RIGHT AWAY AND GET SOMETHING TOGETHER BY -- WHAT IS

19     THE CLOSE OF DISCOVERY?

20          **MS. HURST:**  IT'S CLOSED.

21          **THE COURT:**  SORRY.  OF --

22          **MS. HURST:**  OF EXPERT DISCOVERY?

23          **THE COURT:**  YES.

24          **MS. HURST:**  WITH THE DR. CURL DISCOVERY, IT'S

25     MID-MARCH, YOUR HONOR.

```
1            MR. VAN NEST:  YEAH, IT'S MID-MARCH.  AND THERE ARE

2    NO DEPOS SCHEDULED UNTIL THE END OF THIS MONTH.

3            MS. HURST:  WE ARE TRYING TO FINISH UP FACT

4    DISCOVERY, YOUR HONOR.  AND WE DO HAVE A DEADLINE THAT CAME

5    OUT OF RESOLVING THE OTHER MOTIONS FOR DOING THAT.  AND

6    THERE'S A WHOLE 'NOTHER DEPOS THAT NEED TO BE SCHEDULED

7    BASICALLY NEXT WEEK.

8        SO IF WE CAN GET THIS RESOLVED, THEN WE CAN WRAP THAT IN

9    AND BE DONE.  ONE MORE AND THEN WE'RE DONE.

10           MR. VAN NEST:  SO WHAT I PROPOSE, YOUR HONOR, WAS

11   SOMETIME ON TUESDAY.

12           THE COURT:  ARE YOUR FOLKS NOT WORKING THIS WEEKEND?

13           MR. VAN NEST:  PROBABLY NOT.

14           THE COURT:  REALLY.

15           MR. VAN NEST:  PROBABLY NOT.

16           THE COURT:  9:00 O'CLOCK ON TUESDAY MORNING HAVE

17   SOMETHING TO THE COURT.  OKAY?

18           MR. VAN NEST:  OKAY.

19           MS. HURST:  THANK YOU, YOUR HONOR.

20           MR. VAN NEST:  THANK YOU.

21           THE COURT:  THANK YOU.

22               (PROCEEDINGS CONCLUDED AT 1:03 P.M.)

23

24

25
```

1

2

3                    **CERTIFICATE OF REPORTER**

4          I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

5   UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

6   CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

7   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

8

9                    *Diane E. Skillman*

10              DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

11                  SATURDAY, JANUARY 16, 2016

12

13

14

15

16

17

18

19

20

21

22

23

24

25